# EXHIBIT 5

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: TAXOTERE (DOCETAXEL)                    MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                               SECTION "H" (5)

THIS DOCUMENT RELATES TO
*Wanda Stewart v. Sandoz Inc., et al.*
Civil Case No. 2:17-cv-10817

### DEFENDANT SANDOZ INC.'S SECOND SUPPLEMENTAL ANSWERS AND OBJECTIONS TO TRIAL POOL PLAINTIFF WANDA STEWART'S INTERROGATORIES AND REQUESTS FOR PRODUCTION

Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure and Case Management Order No. 7, Defendant Sandoz Inc. ("Sandoz") hereby answers, responds, and objects to Plaintiff's Interrogatories ("Answers") and Requests for Productions ("Responses") as follows.  As discovery in this matter is ongoing, Sandoz reserves the right to amend, supplement, modify or change its Answers and Responses.

### PRELIMINARY STATEMENT

Plaintiff's Interrogatories and Requests for Production of Documents arise from product liability cases consolidated in MDL 2740 for coordinated pretrial proceedings pursuant to 28 B.SC. § 1407, before the Honorable Jane T. Milazzo in the United States District Court for the Eastern District of Louisiana. The action involves FDA-approved prescription chemotherapy medications known by the brand name, Taxotere®, or the generic name docetaxel - the active ingredient in Taxotere®. The entity that holds the original New Drug Application (NDA) for Taxotere® is Sanofi-Aventis U.S. LLC ("Sanofi"). Sanofi's NDA for Taxotere®, NDA No. 020449, was approved by the FDA on May 14, 1996.

Plaintiff alleges that she was prescribed docetaxel by her physician to treat breast cancer, and that she subsequently sustained "persistent," "irreversible" and/or "permanent" hair loss. (*See generally* Master Long Form Compl.) Plaintiff does not allege that docetaxel was ineffective in her treatment of breast cancer. Nor does she claim that Defendants, including Sandoz, failed to disclose the risk of hair loss, which is a well-known and common side effect of docetaxel. Plaintiff alleges only that she was not told that hair loss might persist, be irreversible and/or be permanent.

Sandoz is a licensed pharmaceutical company that specializes in generic and biosimilar medicines. Pursuant to section 505(b)(2) of the Federal Food, Drug, and Cosmetic Act (the "Act"), Sandoz submitted NDA No. 201525 for Docetaxel Injection. Section 505(b)(2), which was added to the Act through the Drug Price Competition and Patent Term Restoration Act of 1984 (commonly known as the Hatch-Waxman Amendments), provides a unique pathway for FDA approval of a new drug. Section 505(b)(2) expressly permits an applicant to submit an NDA that relies, in part, on information or data that was not developed by or for the applicant. Thus, pursuant to section 505(b)(2), in approving an NDA, the FDA is permitted to rely on literature or studies submitted in an application for another drug and on the FDA's own findings of safety and efficacy for a previously approved drug product.

In seeking FDA approval of docetaxel through this abbreviated pathway, Sandoz indicated to the FDA in its NDA No. 201525 for Docetaxel Injection that it intended to rely on nonclinical and clinical studies conducted for and submitted with the NDA for Sanofi's Reference Listed Drug ("RLD"), Taxotere®, and to rely on the FDA's findings of safety and effectiveness for that drug. As described in its NDA, Sandoz did not perform any nonclinical or clinical studies for Docetaxel Injection, as Sandoz was expressly permitted to rely on the

information collected for the RLD in obtaining section 505(b)(2) approval. Sandoz further advised the FDA that the RLD used for the basis of its 505(b)(2) NDA submission was "Taxotere® (docetaxel) Injection Concentrate, NDA No. 020449, marketed by Sanofi-Aventis" and that the "active ingredient, route of administration, and indications for Sandoz' Docetaxel Injection, are the same" as the RLD. Sandoz' NDA for Docetaxel Injection was approved by the FDA on June 29, 2011, for use as recommended in the agreed-upon product labeling. As a section 505(b)(2) NDA holder, and in contrast to an RLD holder, Sandoz does not employ sales representatives to market or promote Docetaxel Injection based on its features or therapeutic benefits. Rather, Sandoz offers contracts, based purely on pricing, for a portfolio of products, one of which is Docetaxel Injection, to the procurement offices of hospital pharmacies or the corporate offices of pharmacies and has utilized its Institutional Generic Sales Force for this purpose since late 2015. Sandoz does not advertise, promote or share promotional materials for its Docetaxel Injection and does not sell directly to health care providers or oncology clinics.

## **RESERVATION OF RIGHTS**

In answering these Interrogatories and responding to these Requests, Sandoz does not waive the right to challenge the relevancy, materiality, and admissibility of the information or materials provided, or to object to the use of the information or materials in any subsequent proceeding or trial in this action. Sandoz is engaged in the continuing investigation of the matters inquired about in the Interrogatories and Requests. The Answers and Responses herein are believed to be accurate as of the date made and are based upon information and materials presently available. Accordingly, Sandoz reserves the right to amend, supplement, modify, or change its Answers and Responses as investigation and discovery continue, should additional responsive information or materials be discovered during its investigation. Further, any Answers

3

and Responses Sandoz provides to these Interrogatories and Requests does not waive Sandoz' rights to assert additional objections as necessary.

## SPECIFIC OBJECTIONS ON SCOPE OR FORM

1.     Sandoz objects to each Interrogatory and Request as overly broad, unduly burdensome, and in violation of Rule 26(g)(1)(B), including but not limited to Interrogatories and Requests that seek "any," "every," and "all" information that refers, relates to, or concerns a particular Interrogatory or Request. Plaintiff's request for "any," every," and "all" information on an issue is unduly burdensome, and Sandoz' discovery obligations are limited by principles of reasonableness and proportionality. *See, e.g.*, *Braun v. Medtronic Sofamor Danek, Inc.,* 2013 WL 30155, at * 13 (D. Utah Jan. 2, 2013) (court deemed Plaintiff's interrogatory requesting "any and all" agreements with physicians regardless of the medical device at issue as overbroad).

2.     Sandoz objects to these Interrogatories and Requests to the extent they seek information or materials prepared in anticipation of litigation or protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges and immunities. Inadvertent production or revelation of any protected information or documents will not constitute a waiver of any privilege or any other ground for objection to discovery of the protected information contained therein and will not waive the right of Sandoz to object to the use of the information or documents during any proceeding in this action. *See* Federal Rule of Evidence 502 and Pretrial Order No. 49 (Electronically Stored Information Protocol, hereinafter "ESI Protocol").

## OBJECTIONS TO DEFINITIONS

1.     Sandoz objects to any "definition" that attempts to expand or alter its obligations in responding to discovery.

4

2.      Sandoz objects to the definitions of the terms "ALOPECIA" or "HAIR LOSS" to be defined as "the loss of human hair, whether temporary, permanent or unknown (unless a difference is apparent in context of a particular interrogatory), on a part of the body and includes terms used to identify, describe, or quantify the diminution, impairment, or loss of hair." This definition is vague and ambiguous, and seemingly involves alopecia attributable to causes other than chemotherapy. It also explicitly includes temporary hair loss (hair loss is a common, well-known side effect of chemotherapy treatment) and labeled terms not cognizable as a legal injury. It is also far from clear what other "terms used to identify, describe, or quantify the diminution, impairment, or loss of hair" Plaintiff intends to include in her Interrogatories and Requests.

3.      Sandoz objects to the definition of the terms "YOU, "YOUR," and "DEFENDANT" to be defined as "Sandoz, Inc., as well as parents, subsidiaries, affiliates, partners, directors, officers, employees, servants, agents, attorneys, joint ventures, third-party contractors, or other representatives, including all corporations and affiliated entities." Accordingly, where the terms "YOU, "YOUR," and "DEFENDANT" are used in these Interrogatories and Requests, Sandoz will limit its Answers and Responses to the party-Defendant, Sandoz Inc. consistent with the applicable law. In addition, Sandoz objects to these definitions to the extent that it would call for Sandoz to provide information not within its knowledge. Sandoz objects that the definition is unduly burdensome in purporting to require it to inquire of all of the individuals encompassed in the definitions in answering and responding to these Interrogatories and Requests. In addition, Sandoz objects to these definitions to the extent that they seek information or material that is protected from disclosure by the attorney-client privilege, work product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.

4.      Sandoz objects to the definition of the term "COMMUNICATION" to be defined as "any oral, written, spoken, or electronic transmission of information including meetings, discussions, conversations, telephone calls, memoranda, letters, emails, text messages, postings, instructions, conferences, or seminars or any other exchange of information between YOU and any other person or entity" to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery authorized by applicable law. Sandoz also objects to the definition to the extent it would require Sandoz to extract or recover electronic or magnetic data that is inaccessible or would require extraordinary costs and efforts to retrieve. Sandoz further objects that the definition is overly broad to the extent it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection. Moreover, documents will be produced according to the ESI Protocol, which dictates various aspects of the scope, format, and manner of production.

5.      Sandoz objects to the definitions of the terms "RELATING TO," "relate to," "relating, "referring to," "refer to," "regarding," "concerning," or "concern," to be defined as "evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, RELATING TO, referring to in any way or manner, or in any way logically or factually connecting with the matter described in that paragraph of these interrogatories, including documents attached to or used in the preparation of or concerning the preparation of the documents" to the extent they seek discovery that is inconsistent with or enlarges the scope of permissible discovery authorized by applicable law, fail to identify the documents sought with

"reasonable particularity" by type and category, and seek information tangentially implicating subjects without regard to relevance and proportionality.

6.      Sandoz objects to the definition of the term "STUDY" to be defined as "research, analysis, examination, inspection or investigation (including clinical investigations), or other activity by which data or information is acquired for the purpose of analysis or understanding;" including "studies that have been completed and studies still in progress regardless of whether such activity took place within or outside the United States;" and should include "information and data acquired from such STUDY regardless of the stated or original purpose of the STUDY" as unduly burdensome, overbroad, and not proportional to the needs of the case. Sandoz further objects that the definition is overly broad to the extent it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.

7.      Sandoz objects to the definition of the term "TEST" to be defined "as every kind of examination, experiment, scientific analysis, or other inquiry or undertaking seeking to develop or acquire information or data. It should include information and data acquired from such TESTs regardless of the stated or original purpose of the TEST. The term is intended to include TESTs that have been completed and TESTs still in progress regardless of whether such activity took place within or outside the United States;" including "information from the following documents: the protocol for the conduct of the TEST or STUDY; a statement of the conditions under which the TEST or STUDY was intended to be conducted; a statement of the conditions under which the TEST or STUDY was actually conducted; documents requesting that the TEST or STUDY be performed; documents ordering that the TEST or STUDY be performed; documents containing the original raw TEST or STUDY data; documents containing

7

the written TEST or STUDY report and all attachments thereto; documents containing the TEST or STUDY specifications, including the pass-fail criteria; every summary, abstract, analysis, compilation, including evaluation or interpretation of the TEST or STUDY; and all investigators or entities, universities, and laboratories involved in the testing" as unduly burdensome, overbroad, and not proportional to the needs of the case. Sandoz further objects that the definition is overly broad to the extent it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.

8.      Sandoz objects to the definition of the term "FDA" to be defined as "the United States Department of Health & Human Services, United States Food & Drug Administration, any Committee, subcommittee, or advisory committee thereto, and any person, employee, or agent acting as a representative thereof" to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery authorized by applicable law. The term "FDA," for example, would never reasonably implicate a purported "agent" of a subcommittee or any member of FDA's outside advisory committees, nor does such definition allow Sandoz to identify responsive documents.

9.      Sandoz objects to the definition of the term "FOREIGN REGULATORY BODY" to be defined as "any organization, including regulatory bodies or authorities, in any country (or other jurisdictional entity such as the European Union) other than the United States that regulates prescription drugs such as "TAXOTERE" to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery authorized by applicable law and is not proportional to the needs of the case. Sandoz further objects because conduct occurring outside the United States is not relevant to this litigation.

10.     Sandoz objects to the definitions of the terms "IDENTIFY" or "Identity" to be defined as "the person's or entity's full name, present or last known address, telephone numbers, and email addresses" and instructs "[w]hen referring to a natural person, the present or last known place of employment must also be provided," and that "[o]nce a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person" or "when referring to STUDIES, the term 'IDENTIFY' or 'identity' means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) authors(s), addressee(s) and recipient(s); (v) its present location; (vi) the name and address of the custodian; (vii) for documents stored electronically, such as in a computer, PDA, or other type of portable electronic device, provide the location of the electronic device on which the documents is located, the computer program by which the document was created, and the computer program on which the document currently exists; and (viii) the Bates stamp number assigned to such document" as being overly broad to the extent that the definition and instruction are inconsistent with or enlarge the scope of permissible discovery under the applicable law and/or applicable local rules, are not proportional to the needs of the case, and to the extent that the definition and instruction would require Sandoz to extract or recover data that is inaccessible or would require extraordinary costs and efforts to retrieve. Sandoz further objects that the definition is overly broad to the extent it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.

11.     Sandoz objects to the definition of the term "PERSON" to be defined as "any natural person, as well as any business, corporate, legal, or governmental entity or association,"

to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery authorized by applicable law and is not proportional to the needs of the case. In addition, Sandoz objects to this definition to the extent that it would call for Sandoz to provide information not within its knowledge. Sandoz objects that the definition is unduly burdensome in purporting to require it to inquire of all encompassed in the definitions in answering these Interrogatories and Requests. In addition, Sandoz objects to this definition to the extent that it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.

12. Sandoz objects to the use of the connectives "and" and "or" disjunctively and conjunctively as unduly burdensome and overbroad to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules.

13. Sandoz objects to the use of the singular including the plural and vice versa as unduly burdensome and overbroad to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules.

## <u>OBJECTIONS TO INSTRUCTIONS</u>

1. Sandoz objects to Instruction No. 1 to the extent that it purports to require it to inquire of its "employees, representatives, agents, and attorneys." The Instruction renders these Interrogatories and Requests overly broad and unduly burdensome. Sandoz also objects to the extent that this Instruction seeks information or material that is protected from disclosure by the

attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.

2.      Sandoz objects to Instruction No. 2, which purports to require explanation of any inabilities to respond, to the extent that it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules.

3.      Sandoz objects to Instruction No. 3, which purports to require a continuing obligation to respond, to the extent that it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules.

4.      Sandoz objects to Instruction No. 4, which purports to require production of documents that "relates in whole or in part to the Relevant Time Period or to events or circumstances during such Relevant Time Period, even though dated, prepared, generated, or received prior to or after the Relevant Time Periods" as this Instruction refers to a vague and ambiguous time frame that is in no way defined in Plaintiff's discovery requests. Furthermore, this Instruction seems to require production of documents outside the so-called Relevant Time Period.

5.      Sandoz objects to Instruction No. 5 to the extent that it purports to require it to identify documents withheld on the grounds of privilege. The Instruction renders these Requests overly broad and unduly burdensome. Sandoz also objects to the extent that this Instruction seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection. To the extent that Plaintiff's Instruction is inconsistent with or beyond the scope of the ESI Protocol, Sandoz objects and defers to the ESI Protocol.

## SPECIFIC ANSWERS AND OBJECTIONS TO INTERROGATORIES

**Interrogatory No. 1:**

Identify every person or entity against whom YOU may attempt to attribute fault or liability at a hearing of trial of this matter for the damages identified by Ms. Stewart in this litigation.

**ANSWER:**

To the extent this Interrogatory seeks discovery into matters calling for expert opinions, additional documents and information responsive to this Interrogatory may be adduced in expert discovery and Sandoz refers Plaintiff to forthcoming expert disclosures and reports, to be issued in accordance with the schedule set forth in Case Management Order No. 14 – Trial Scheduling Order. Sandoz states that further information responsive to this Interrogatory, if any, may be found in Plaintiff's medical records and transcripts of all depositions taken or to be taken in this matter. Sandoz further states that Plaintiff's claims are barred, and/or reduced by alternative causes for the damages claimed, including the fault of Plaintiff and/or another manufacturer of the docetaxel product taken by Plaintiff other than Sandoz, if any.

Beyond this, Sandoz objects to this Interrogatory on the basis it exceeds the scope of permissible discovery and seeks to improperly shift Plaintiff's burden of proof of product identification onto Sandoz. Amended Pretrial Order No. 22 requires each Plaintiff to submit a complete and verified Plaintiff Fact Sheet ("PFS") to be accompanied by all responsive documents in Plaintiff's possession within seventy-five (75) days of the date the case is docketed in this MDL. The PFS contains questions related to the identification of the Taxotere/docetaxel/docefrez ("docetaxel") infused and to the production of records to identify the manufacturer of the docetaxel infused. *See* Pretrial Order 18, Attachment 1. Sandoz further objects to this Interrogatory as premature because investigation and discovery in this matter are ongoing, the parties have yet to take the depositions of all of Plaintiff's treating physicians,

Sandoz has not received all medical records regarding the care and treatment of Plaintiff in this case, and expert discovery has not yet concluded. Sandoz also objects to this Interrogatory to the extent it calls for a legal conclusion. Finally, Sandoz objects to this Interrogatory to the extent it seeks information or materials protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privileges and immunities.

**SUPPLEMENTAL ANSWER:**

To the extent this Interrogatory seeks discovery into matters calling for expert opinions, additional documents and information responsive to this Interrogatory may be adduced in expert discovery and Sandoz refers Plaintiff to forthcoming expert disclosures and reports, to be issued in accordance with the schedule set forth in Case Management Order Nos. 14 and 14D (or any subsequently entered Orders supplementing or amending the same). Sandoz states that further information responsive to this Interrogatory, if any, may be found in Plaintiff's medical records and transcripts of all depositions taken or to be taken in this matter, particularly the depositions of Plaintiff and Plaintiff's treating physicians, which are all equally available to Plaintiff. Sandoz further states that Plaintiff's claims are barred, and/or reduced by alternative causes for the damages claimed, including potentially the fault of Plaintiff.

Beyond this, Sandoz objects to this Interrogatory on the basis it exceeds the scope of permissible discovery and is premature because investigation and discovery in this matter are ongoing, the parties have yet to take the depositions of all of Plaintiff's relevant treating physicians, Sandoz has not received all medical records regarding the care and treatment of Plaintiff in this case, and expert discovery has not yet concluded. Sandoz also objects to this Interrogatory to the extent it calls for a legal conclusion. Finally, Sandoz objects to this

Interrogatory to the extent it seeks information or materials protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privileges and immunities.

**SECOND SUPPLEMENTAL ANSWER:**

**To the extent this Interrogatory seeks discovery into matters calling for expert opinions, additional documents and information responsive to this Interrogatory may be adduced in expert discovery and Sandoz refers Plaintiff to forthcoming expert disclosures and reports, to be issued in accordance with the schedule set forth in Case Management Order Nos. 14 and 14D (or any subsequently entered Orders supplementing or amending the same). Sandoz states that further information responsive to this Interrogatory, if any, may be found in Plaintiff's medical records and transcripts of all depositions taken or to be taken in this matter, particularly the depositions of Plaintiff and Plaintiff's treating physicians, which are all equally available to Plaintiff. Sandoz further states that Plaintiff's claims are barred, and/or reduced by alternative causes for the damages claimed, including potentially the fault of Plaintiff.**

**Additionally, based on further communications with counsel for Plaintiff, Sandoz understands that Plaintiff is also asking in this Interrogatory that Sandoz identify any party or third party whom Sandoz may argue at trial is at fault for any purported failure to update the docetaxel label. Given that interpretation of this Interrogatory, Sandoz further responds that, at this time, it is not aware of any party or third party whom it reasonably expects to suggest to the jury is at fault regarding any allegations or claims made with respect to the docetaxel label. Sandoz specifically objects to Plaintiff's characterization of a "failure to update the label" in this request, and expressly denies any defect in the docetaxel label or any wrongdoing whatsoever on Sandoz' part. Sandoz**

expressly reserves the right to amend or supplement this Answer as investigation and discovery continue, and to introduce argument and evidence concerning compliance with FDA regulations, guidance, and practice, including applicable labeling requirements.

Beyond this, Sandoz objects to this Interrogatory on the basis it exceeds the scope of permissible discovery and is premature because investigation and discovery in this matter are ongoing, the parties have yet to take the depositions of all of Plaintiff's relevant treating physicians, Sandoz has not received all medical records regarding the care and treatment of Plaintiff in this case, and expert discovery has not yet concluded. Sandoz also objects to this Interrogatory to the extent it calls for a legal conclusion. Finally, Sandoz objects to this Interrogatory to the extent it seeks information or materials protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privileges and immunities.

**Interrogatory No. 2:**

Identify every witness who may testify as to such fault or liability at a hearing or trial of this matter, stating the factual and legal basis for and substance of that testimony.

**ANSWER:**

To the extent this Interrogatory seeks discovery into matters calling for expert opinions, additional documents and information responsive to this Interrogatory may be adduced in expert discovery and Sandoz refers Plaintiff to forthcoming expert disclosures and reports, to be issued in accordance with the schedule set forth in Case Management Order No. 14 – Trial Scheduling Order. Sandoz states that further information responsive to this Interrogatory, if any, may be found in Plaintiff's medical records and transcripts of all depositions taken or to be taken in this matter. Sandoz further identifies Plaintiff Wanda Stewart.

Beyond this, Sandoz objects to this Interrogatory on the basis it exceeds the scope of permissible discovery and seeks to improperly shift Plaintiff's burden of proof of product identification onto Sandoz. Amended Pretrial Order No. 22 requires each Plaintiff to submit a complete and verified PFS to be accompanied by all responsive documents in Plaintiff's possession within seventy-five (75) days of the date the case is docketed in this MDL. The PFS contains questions related to the identification of the Taxotere/docetaxel/docefrez ("docetaxel") infused and to the production of records to identify the manufacturer of the docetaxel infused. *See* Pretrial Order 18, Attachment 1. Sandoz further objects to this Interrogatory as premature because investigation and discovery in this matter are ongoing, the parties have yet to take the depositions of all of Plaintiff's treating physicians, Sandoz has not received all medical records regarding the care and treatment of Plaintiff in this case, and expert discovery has not yet concluded. Sandoz also objects to this Interrogatory to the extent it seeks information or materials protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privileges and immunities.

**SUPPLEMENTAL ANSWER:**

To the extent this Interrogatory seeks discovery into matters calling for expert opinions, additional documents and information responsive to this Interrogatory may be adduced in expert discovery and Sandoz refers Plaintiff to forthcoming expert disclosures and reports, to be issued in accordance with the schedule set forth in Case Management Order Nos. 14 and 14D (or any subsequently entered Orders supplementing or amending the same). Additionally, Sandoz states that information regarding witnesses whom Sandoz may call to testify at a hearing or at trial may be found in the Preliminary Witness List served by Sandoz on November 21, 2019, or any subsequent supplemental or amended versions thereof. Sandoz states that further information

responsive to this Interrogatory, if any, may be found in Plaintiff's medical records and transcripts of all depositions taken or to be taken in this matter. Sandoz further identifies Plaintiff Wanda Stewart.

Beyond this, Sandoz objects to this Interrogatory on the basis it exceeds the scope of permissible discovery and is premature because investigation and discovery in this matter are ongoing, the parties have yet to take the depositions of all of Plaintiff's treating physicians, Sandoz has not received all medical records regarding the care and treatment of Plaintiff in this case, and expert discovery has not yet concluded. Sandoz also objects to this Interrogatory to the extent it seeks information or materials protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privileges and immunities.

**SECOND SUPPLEMENTAL ANSWER:**

**To the extent this Interrogatory seeks discovery into matters calling for expert opinions, additional documents and information responsive to this Interrogatory may be adduced in expert discovery and Sandoz refers Plaintiff to forthcoming expert disclosures and reports, to be issued in accordance with the schedule set forth in Case Management Order Nos. 14 and 14D (or any subsequently entered Orders supplementing or amending the same). Additionally, Sandoz states that information regarding witnesses whom Sandoz may call to testify at a hearing or at trial may be found in the Preliminary Witness List served by Sandoz on November 21, 2019, or any subsequent supplemental or amended versions thereof. Sandoz states that further information responsive to this Interrogatory, if any, may be found in Plaintiff's medical records and transcripts of all depositions taken or to be taken in this matter. Sandoz further identifies Plaintiff Wanda Stewart.**

Additionally, based on further communications with counsel for Plaintiff, Sandoz understands that Plaintiff is also asking in this Interrogatory for information about witnesses who may testify as to any party or third party whom Sandoz may argue at trial is at fault for any purported failure to update the docetaxel label. Given that interpretation of this Interrogatory, Sandoz further responds that, at this time, it is not aware of any party or third party whom it reasonably expects to suggest to the jury is at fault regarding any allegations or claims made with respect to the docetaxel label. Sandoz specifically objects to Plaintiff's characterization of a "failure to update the label" in this request, and expressly denies any defect in the docetaxel label or any wrongdoing whatsoever on Sandoz' part. Sandoz expressly reserves the right to amend or supplement this Answer as investigation and discovery continue, and to introduce argument and evidence concerning compliance with FDA regulations, guidance, and practice, including applicable labeling requirements.

Beyond this, Sandoz objects to this Interrogatory on the basis it exceeds the scope of permissible discovery and is premature because investigation and discovery in this matter are ongoing, the parties have yet to take the depositions of all of Plaintiff's treating physicians, Sandoz has not received all medical records regarding the care and treatment of Plaintiff in this case, and expert discovery has not yet concluded. Sandoz also objects to this Interrogatory to the extent it seeks information or materials protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privileges and immunities.

**Interrogatory No. 3:**

Identify and describe the factual and medical basis for every alternative cause of Ms. Stewart's HAIR LOSS that YOU may offer at a hearing or trial in this matter, including:

a. any product use or medical condition for the alleged alternative cause of her HAIR LOSS;

b. the start date of alleged alternate medical cause of her HAIR LOSS;

c. the start date of alleged product use alternate cause of her HAIR LOSS; and

d. if the alternate cause of her HAIR LOSS is not alleged to be due to product use or a medical condition, the start of her HAIR LOSS and the precipitating condition.

**ANSWER:**

To the extent this Interrogatory seeks discovery into matters calling for expert opinions, additional documents and information responsive to this Interrogatory may be adduced in expert discovery and Sandoz refers Plaintiff to forthcoming expert disclosures and reports, to be issued in accordance with the schedule set forth in Case Management Order No. 14 – Trial Scheduling Order. Sandoz states that further information responsive to this Interrogatory, if any, may be found in Plaintiff's medical records and transcripts of all depositions taken or to be taken in this matter. Sandoz further refers Plaintiff to the broad body of publicly available scientific and medical literature which contains information regarding alternative causes of hair loss. It is commonly known, based on such widely available literature, that hair loss may be caused by several factors or conditions, including, but not limited to, age, genetics, hormones, dietary or vitamin deficiencies, stress, trauma, autoimmune disorders, infection or bacteria, illness or disease, hair care or treatment, various medications including other chemotherapy drugs, as well as other medical conditions.

Beyond this, Sandoz objects to this Interrogatory as premature because investigation and discovery in this matter are ongoing, the parties have yet to take the depositions of all of Plaintiff's treating physicians, Sandoz has not received all medical records regarding the care and treatment of Plaintiff in this case, and expert discovery has not yet concluded. Sandoz also objects to this Interrogatory to the extent it seeks information or materials protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privileges and immunities.

19

**SUPPLEMENTAL ANSWER:**

To the extent this Interrogatory seeks discovery into matters calling for expert opinions, additional documents and information responsive to this Interrogatory may be adduced in expert discovery and Sandoz refers Plaintiff to forthcoming expert disclosures and reports, to be issued in accordance with the schedule set forth in Case Management Order No. 14 – Trial Scheduling Order. Sandoz states that further information responsive to this Interrogatory, if any, may be found in Plaintiff's medical records and transcripts of all depositions taken or to be taken in this matter. Sandoz further refers Plaintiff to the broad body of publicly available scientific and medical literature which contains information regarding alternative causes of hair loss. It is commonly known, based on such widely available literature, that hair loss may be caused by several factors or conditions, including, but not limited to, age, genetics, hormones, dietary or vitamin deficiencies, stress, trauma, autoimmune disorders, infection or bacteria, illness or disease, hair care or treatment, various medications including other chemotherapy drugs, as well as other medical conditions.

Based on investigation and discovery to date, Plaintiff was administered other chemotherapy medications, including Adriamycin (doxorubicin) and Cytoxan (cyclophosphamide) from June 2014 through September of 2014, and was prescribed aromatase inhibitors, including Arimidex (anastrozole) and Femara (letrozole), beginning in 2015. In addition to other factors that may be identified in further discovery, the forgoing medications may have caused or contributed to Plaintiff's alleged hair loss.

Beyond this, Sandoz objects to this Interrogatory as premature because investigation and discovery in this matter are ongoing, the parties have yet to take the depositions of all of Plaintiff's treating physicians, Sandoz has not received all medical records regarding the care and

treatment of Plaintiff in this case, and expert discovery has not yet concluded. Sandoz also objects to this Interrogatory to the extent it seeks information or materials protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privileges and immunities.

**Interrogatory No. 4:**

Identify and describe the factual and medical basis for any claim YOU may make that Ms. Stewart's HAIR LOSS was caused in whole or in part by one or more chemotherapy medicine identified in the Plaintiff Fact Sheet.

**ANSWER:**

Sandoz incorporates by reference its Answer to Interrogatory No. 3.

**SUPPLEMENTAL ANSWER:**

Sandoz incorporates by reference its Supplemental Answer to Interrogatory No. 3. Sandoz further states that the handouts and literature regarding Adriamycin (doxorubicin) and Cytoxan (cyclophosphamide) that Plaintiff received from her oncologist and produced at and discussed during her deposition disclose risks including hair loss.

**Interrogatory No. 5:**

If you contend that the Docetaxel product taken by Ms. Stewart was manufactured by someone other than YOU, identify that manufacturer and state the factual basis for such contention.

**ANSWER:**

Sandoz incorporates by reference its Answer to Interrogatory No. 1.

**SUPPLEMENTAL ANSWER:**

Sandoz states this Interrogatory exceeds the scope of permissible discovery and seeks to improperly shift Plaintiff's burden of proof of product identification onto Sandoz. Amended Pretrial Order No. 22 requires each Plaintiff to submit a complete and verified Plaintiff Fact Sheet ("PFS") to be accompanied by all responsive documents in Plaintiff's possession within

seventy-five (75) days of the date the case is docketed in this MDL. The PFS contains questions related to the identification of the Taxotere/docetaxel/docefrez ("docetaxel") infused and to the production of records to identify the manufacturer of the docetaxel infused. *See* Pretrial Order 18, Attachment 1. Subject to and without waiving those objections, Sandoz states that Plaintiff has produced a signed statement from her oncology provider and records of her chemotherapy treatment that identify Sandoz' docetaxel as the docetaxel product used, and Sandoz is not aware of any information or documents that would refute these documents at this time.

### SPECIFIC RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION

**Request No. 1:**

For every person or entity identified in response to Interrogatory No. 1, produce all DOCUMENTS that YOU believe support such a finding of fault or liability.

**RESPONSE:**

To the extent this Interrogatory seeks discovery into matters calling for expert opinions, additional documents and information responsive to this Interrogatory may be adduced in expert discovery and Sandoz refers Plaintiff to forthcoming expert disclosures and reports, to be issued in accordance with the schedule set forth in Case Management Order No. 14 – Trial Scheduling Order. Sandoz states that further information responsive to this Request, if any, may be found in Plaintiff's medical records and transcripts of all depositions taken or to be taken in this matter and that are equally available to Plaintiff.

Beyond this, Sandoz objects to this Request on the basis it exceeds the scope of permissible discovery and seeks to improperly shift Plaintiff's burden of proof of product identification onto Sandoz. Amended Pretrial Order No. 22 requires each Plaintiff to submit a complete and verified PFS to be accompanied by all responsive documents in Plaintiff's possession within seventy-five (75) days of the date the case is docketed in this MDL. The PFS

contains questions related to the identification of the Taxotere/docetaxel/docefrez ("docetaxel") infused and to the production of records to identify the manufacturer of the docetaxel infused. *See* Pretrial Order 18, Attachment 1. Sandoz further objects to this Request as premature because investigation and discovery in this matter are ongoing, the parties have yet to take the depositions of all of Plaintiff's treating physicians, Sandoz has not received all medical records regarding the care and treatment of Plaintiff in this case, and expert discovery has not yet concluded. Sandoz further objects to this Request to the extent it calls for a legal conclusion. Finally, Sandoz objects to this Request to the extent it seeks information or materials protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privileges and immunities.

**SUPPLEMENTAL RESPONSE:**

To the extent Interrogatory No. 1 – and therefore this Request – seek discovery into matters calling for expert opinions, additional documents and information responsive to this Request may be adduced in expert discovery and Sandoz refers Plaintiff to forthcoming expert disclosures and reports, to be issued in accordance with the schedule set forth in Case Management Order Nos. 14 and 14D (or any subsequently entered Orders supplementing or amending the same). Sandoz states that further documents and information responsive to this Request, if any, may be found in Plaintiff's medical records and transcripts of all depositions taken or to be taken in this matter, and particularly the transcripts of the depositions of Plaintiff and Plaintiff's treating physicians, which are equally available to Plaintiff.

Beyond this, Sandoz objects to this Request on the basis it exceeds the scope of permissible discovery and is premature because investigation and discovery in this matter are ongoing, the parties have yet to take the depositions of all of Plaintiff's treating physicians, Sandoz has not received all medical records regarding the care and treatment of Plaintiff in this

23

case, and expert discovery has not yet concluded. Sandoz further objects to this Request to the extent it calls for a legal conclusion. Finally, Sandoz objects to this Request to the extent it seeks information or materials protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privileges and immunities.

**SECOND SUPPLEMENTAL RESPONSE:**

**To the extent Interrogatory No. 1 – and therefore this Request – seek discovery into matters calling for expert opinions, additional documents and information responsive to this Request may be adduced in expert discovery and Sandoz refers Plaintiff to forthcoming expert disclosures and reports, to be issued in accordance with the schedule set forth in Case Management Order Nos. 14 and 14D (or any subsequently entered Orders supplementing or amending the same). Sandoz states that further documents and information responsive to this Request, if any, may be found in Plaintiff's medical records and transcripts of all depositions taken or to be taken in this matter, and particularly the transcripts of the depositions of Plaintiff and Plaintiff's treating physicians, which are equally available to Plaintiff.**

**Additionally, based on further communications with counsel for Plaintiff, Sandoz understands that Plaintiff is also asking in this Request that Sandoz provide documents concerning any party or third party whom Sandoz may argue at trial is at fault for any purported failure to update the docetaxel label. Given that interpretation of this Interrogatory, Sandoz further responds that, at this time, it is not aware of any party or third party whom it reasonably expects to suggest to the jury is at fault regarding any allegations or claims made with respect to the docetaxel label. Sandoz specifically objects to Plaintiff's characterization of a "failure to update the label" in this request, and expressly**

denies any defect in the docetaxel label or any wrongdoing whatsoever on Sandoz' part. Sandoz expressly reserves the right to amend or supplement this Response as investigation and discovery continue, and to introduce argument and evidence concerning compliance with FDA regulations, guidance, and practice, including applicable labeling requirements.

Beyond this, Sandoz objects to this Request on the basis it exceeds the scope of permissible discovery and is premature because investigation and discovery in this matter are ongoing, the parties have yet to take the depositions of all of Plaintiff's treating physicians, Sandoz has not received all medical records regarding the care and treatment of Plaintiff in this case, and expert discovery has not yet concluded. Sandoz further objects to this Request to the extent it calls for a legal conclusion. Finally, Sandoz objects to this Request to the extent it seeks information or materials protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privileges and immunities.

<u>Request No. 2:</u>

Produce every DOCUMENT that supports any claim you make that the Docetaxel product taken by Ms. Stewart was manufactured by someone other than YOU.

<u>RESPONSE:</u>

Sandoz refers Plaintiff to Plaintiff's medical records produced in this litigation and transcripts of all depositions taken or to be taken in this matter and that are equally available to Plaintiff.

Beyond this, Sandoz objects to this Request as premature because investigation and discovery in this matter are ongoing, the parties have yet to take the depositions of all of Plaintiff's treating physicians, Sandoz has not received all medical records regarding the care and treatment of Plaintiff in this case, and expert discovery has not yet concluded.

**SUPPLEMENTAL RESPONSE:**

Sandoz states this Request exceeds the scope of permissible discovery and seeks to improperly shift Plaintiff's burden of proof of product identification onto Sandoz. Amended Pretrial Order No. 22 requires each Plaintiff to submit a complete and verified Plaintiff Fact Sheet ("PFS") to be accompanied by all responsive documents in Plaintiff's possession within seventy-five (75) days of the date the case is docketed in this MDL. The PFS contains questions related to the identification of the Taxotere/docetaxel/docefrez ("docetaxel") infused and to the production of records to identify the manufacturer of the docetaxel infused. *See* Pretrial Order 18, Attachment 1. Subject to and without waiving those objections, Sandoz states that Plaintiff has produced a signed statement from her oncology provider and records of her chemotherapy treatment that identify Sandoz' docetaxel as the docetaxel product used, and Sandoz is not aware of any information or documents that would refute these documents at this time.

**Request No. 3:**

Produce all medical records you may allege support a claim of alternative medical, product use, or other precipitating cause of Ms. Stewart's HAIR LOSS.

**RESPONSE:**

Sandoz incorporates by reference its Response to Request No. 1.

**SUPPLEMENTAL RESPONSE:**

Sandoz incorporates by reference its Response and Supplemental Responses to Request No. 1. In addition to and without waiving the objections and responses stated therein, Sandoz refers Plaintiff to the medical records that Plaintiff has produced in this case, which are equally available to her, and to the medical records that Sandoz has collected from Plaintiff's healthcare providers and made available to Plaintiff and her counsel.

26

Dated:  February 20, 2020

Respectfully submitted,

 /s/ *Evan C. Holden*
Evan C. Holden*
Lori G. Cohen*
R. Clifton Merrell*
**GREENBERG TRAURIG, LLP**
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
Telephone: (678) 553-2100
Facsimile: (678) 553-2212
E-Mail: holdene@gtlaw.com
E-Mail: cohenl@gtlaw.com
E-Mail: merrellc@gtlaw.com
* Admitted Pro Hac Vice

Deborah B. Rouen
E. Paige Sensenbrenner
**ADAMS AND REESE, LLP**
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone: 504-581-3234
Facsimile: 504-5-0210
E-Mail: debbie.rouen@arlaw.com
E-Mail: paige.sensenbrenner@arlaw.com

***Counsel for Defendant Sandoz Inc***.

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of February, 2020, the foregoing, **DEFENDANT SANDOZ INC.'S SECOND SUPPLEMENTAL ANSWERS AND OBJECTIONS TO TRIAL POOL PLAINTIFF WANDA STEWART'S INTERROGATORIES AND REQUESTS FOR PRODUCTION**, was electronically submitted to lead and liaison counsel in the captioned matter.


*/s/ Evan C. Holden*