UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>*Wanda Stewart v. Sandoz Inc.*<br>Civil Case No. 2:17-cv-10817 | MDL No. 2740<br><br>Section: N(5)<br><br>JUDGE JANE TRICHE MILAZZO<br><br>MAG. JUDGE NORTH |

**DEFENDANT SANDOZ INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE SELECT OPINIONS <u>OF DEFENSE EXPERT ELGIDA VOLPICELLI, M.D.</u>**

**GREENBERG TRAURIG, LLP**
Lori G. Cohen
R. Clifton Merrell
Evan C. Holden
Terminus 200
3333 Piedmont Road, N.E., Suite 2500
Atlanta, Georgia 30305
(678) 553-2100

*Counsel for Defendant Sandoz Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

APPLICABLE LEGAL STANDARD ........................................................................................... 2

ARGUMENT .................................................................................................................................. 3

    I.     PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE DR. VOLPICELLI IS HIGHLY QUALIFIED TO OPINE ON GENERAL CAUSATION. ............................................................................................................ 3

    II.    PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE DR. VOLPICELLI'S OPINIONS ARE RELIABLE. ........................................... 5

        A.    Dr. Volpicelli's General Causation Opinions are Based Upon a Reliable Methodology ................................................................................ 5

        B.    Dr. Volpicelli Is Not Required to Undertake a Bradford Hill Analysis ........................................................................................................ 10

        C.    Dr. Volpicelli Does Not Base Her Opinions on Any of Sandoz's Other Experts ........................................................................................... 13

CONCLUSION ............................................................................................................................ 14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Allen v. Takeda Pharms. N. Am., Inc. (In re Actos® (Pioglitazone) Prods. Liab. Litig.)*,
MDL No. 6:11-md-2299, 2014 U.S. Dist. LEXIS 1681 (W.D. La. Jan. 7, 2014) ................................................................................................................................ 11

*Allstate Ins. Co. v. Plambeck*,
802 F.3d 665 (5th Cir. 2015) ................................................................................... 3, 7

*Burst v. Shell Oil Co.*,
120 F. Supp. 3d 547 (E.D. La. 2015) .......................................................................... 8

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .................................................................................................... 2

*Doe v. Ortho-Clinical Diagnostics, Inc.*,
440 F. Supp. 2d 465 (M.D.N.C. 2006) ..................................................................... 11

*Goodman v. Harris County*,
571 F.3d 388 (5th Cir. 2009) ...................................................................................... 4

*Huss v. Gayden*,
571 F.3d 442 (5th Cir. 2009) ...................................................................................... 2

*Konrick v. Exxon Mobil Corp.*,
No. 14-524, 2016 U.S. Dist. LEXIS 13478 (E.D. La. Feb. 2, 2016) ........................ 12

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) .................................................................................................... 2

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*,
174 F. Supp. 3d 911 (D.S.C. 2016) .......................................................................... 11

*In re Neurontin Mktg.*,
612 F. Supp. 2d 116 (D. Mass. 2009) ...................................................................... 11

*Pipitone v. Biomatrix, Inc.*,
288 F.3d 239 (5th Cir. 2002) .............................................................................. 2, 6, 7

*Schulenberg v. BNSF Ry. Co.*,
911 F.3d 1276 (10th Cir. 2018) .................................................................................. 8

*United States v. Ala. Power Co.*,
730 F.3d 1278 (11th Cir. 2013) .................................................................................. 8

*United States v. Wen Chyu Liu*,
716 F.3d 159 (5th Cir. 2013) ...................................................................................... 4

*Wagoner v. Exxon Mobil Corp.*,
813 F. Supp. 2d 771 (E.D. La. 2011) ....................................................................... 11

*Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*,
  521 F.3d 790 (7th Cir. 2008) ................................................................................................8

*Wilson v. Woods*,
  163 F.3d 935 (5th Cir. 1999) ................................................................................................4

## Other Authorities

Black's Law Dictionary (9th ed. 2009) ........................................................................................8

Black's Law Dictionary (10th ed. 2014) ......................................................................................8

Fed. R. Evid. 702 ................................................................................................................1, 2, 3

Fed. R. Evid. 702(a) .....................................................................................................................2

**DEFENDANT SANDOZ INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE SELECT OPINIONS OF DEFENSE EXPERT ELGIDA VOLPICELLI, M.D.**

Defendant Sandoz Inc. ("Sandoz"), pursuant to Federal Rule of Evidence 702, respectfully submits its Memorandum of Law in Opposition to Plaintiff's Motion to Exclude Select Opinions of Defense Expert Elgida Volpicelli, M.D. For the reasons set forth below, Plaintiff's motion should be denied in its entirety.

## INTRODUCTION

Plaintiff Wanda Stewart ("Plaintiff")'s Motion to Exclude Select Opinions of Defense Expert Elgida Volpicelli, M.D. (the "Motion") seeks to exclude Dr. Volpicelli's opinion on general causation—i.e., whether docetaxel can cause permanent or persistent hair loss. (Motion at 1). Specifically, Plaintiff takes issue with Dr. Volpicelli's opinion that "[t]here is no scientifically-valid evidence that docetaxel is a cause of persistent alopecia or that it causes persistent alopecia at a higher rate than other chemotherapy medications." (Motion at 4 n.1; *see also* Pl. Ex. A, Volpicelli Expert Report at 58). In support of exclusion under *Daubert* and its progeny, Plaintiff argues that Dr. Volpicelli is not qualified to offer these opinions on general causation, and that she has not set forth a reliable methodology for these opinions. (Motion at 1).

Yet Plaintiff's Motion—containing *less than 4 pages of argument*—lacks any sound basis for excluding the general causation opinions of Dr. Volpicelli. As set forth below, Dr. Volpicelli is eminently qualified to provide her general causation opinions. Further, Dr. Volpicelli's expert report and deposition testimony contain thorough discussion of the reliable grounds for her general causation opinions, including, but not limited to, Dr. Volpicelli's many years of experience as a

practicing dermatopathologist and her in-depth review of the literature on hair loss and PCIA[1] in particular. Plaintiff's Motion should therefore be denied in its entirety.

## APPLICABLE LEGAL STANDARD

The admissibility of expert opinion testimony is governed by the Federal Rules of Evidence. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 587 (1993). In accordance with those rules, trial judges must serve as gatekeepers to the admission of scientific testimony. *See id.* at 589. This gatekeeping function applies not only to "scientific" testimony, but also to testimony based on "technical" and "other specialized" knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

An expert witness must satisfy three prerequisites before his or her opinion can be admitted. *See Daubert*, 509 U.S. at 589-90; *accord Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 & n.9 (5th Cir. 2002). First, the expert witness must be adequately qualified by virtue of his or her specialized "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Nonetheless, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

Second, the expert's opinion must be relevant such that it assists "the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702(a). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (citation omitted).

Third, the scientific or technical opinion must be reliable. *See Daubert*, 509 U.S. at 591-92. Although the *Daubert* Court identified several factors that may bear on a judge's determination

---

[1] Sandoz uses this term and the related abbreviation for ease of reference, as it is used in Plaintiff's Motion and was used by her counsel at the depositions of these experts; however, in doing so, Sandoz does not concede in any way that hair loss following chemotherapy is permanent or persistent or is necessarily caused by chemotherapy itself as opposed to some other factor.

2

of the reliability of an expert's testimony,[2] those factors are neither definitive nor exhaustive. *See Kumho Tire Co.*, 526 U.S. at 150; *accord Pipitone*, 288 F.3d at 244. This Court therefore "has broad discretion in its gatekeeping function under Federal Rule of Evidence 702, and an expert witness's testimony (and its reliability) may be based on [their] personal and professional experience and [their] own observation." *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 678 (5th Cir. 2015).

## ARGUMENT

**I.     PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE DR. VOLPICELLI IS HIGHLY QUALIFIED TO OPINE ON GENERAL CAUSATION.**

In a cursory paragraph, Plaintiff asserts that Dr. Volpicelli's general causation opinions must be excluded because Dr. Volpicelli is not qualified to provide them. (Motion at 4-5). To the contrary: Dr. Volpicelli is well-qualified to offer an opinion on whether docetaxel causes permanent or persistent hair loss, and has the requisite education, experience, and training to do so. Plaintiff's Motion must therefore be denied.

To begin with, Dr. Volpicelli is a board-certified dermatopathologist. (*See, e.g.*, Ex. A (Volpicelli Expert Report) at 2 and Exhibit A; *see also* Ex. B. (Volpicelli Dep.) at 10:22-24.) After graduating from Albert Einstein College of Medicine, Dr. Volpicelli completed an Anatomic Pathology residency, Surgical Pathology Fellowship, and Soft Tissue Fellowship at Brigham and Women's Hospital/Dana-Farber Cancer Institute/Harvard Medical School. Volpicelli Expert Report at 2. Today, Dr. Volpicelli is the Director of Dermatopathology and Surgical Pathology at Stamford Hospital, a teaching affiliate of Columbia University. (Volpicelli Expert Report at 2).

---

[2] Those factors include: (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community. *Daubert*, 509 U.S. at 592-94.

3

She is actively involved in teaching dermatology and dermatopathology to Columbia medical students, internal medicine residents, and surgery residents at Stamford Hospital. (Volpicelli Expert Report at 3). As part of her role teaching residents, she often sees patients with dermatologic disorders, and assist the treating medical team with diagnosing and forming clinical treatment plans. (Volpicelli Report at 3).

In addition to her extensive dermatopathology experience, Dr. Volpicelli also has significant training in clinical dermatology (Volpicelli Dep. at 11:4-11). During her residency and fellowship, she saw dermatology patients, including over 100 patients during her fellowship alone. (Volpicelli Dep. at 199:17-201:6). She still sees dermatology patients today, since there is no inpatient dermatology team at Stamford Hospital. (Volpicelli Dep. at 201:7-18). As part of the team that treats patients with hair loss and alopecia, Dr. Volpicelli works closely in her practice with dermatologists. (Volpicelli Dep. at 197:14-199:5). Dr. Volpicelli sees, on average, approximately one alopecia biopsy per week. (Volpicelli Dep. at 13:4-16). All of this renders Dr. Volpicelli qualified to provide general causation opinions in this case. *See United States v. Wen Chyu Liu*, 716 F.3d 159, 168-69 (5th Cir. 2013) ("[A]n expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight." (citations omitted)).

Despite Dr. Volpicelli's clear qualifications, Plaintiff nevertheless argues that Dr. Volpicelli is not qualified to opine on whether docetaxel causes permanent or persistent hair loss because "[s]he is not an epidemiologist," "biostatistician," or "statistician." (Motion at 4). Epidemiologists, biostatisticians, and statisticians are clearly not the only experts who may be qualified to render an opinion on docetaxel's effect on hair, and whether docetaxel can cause permanent or persistent hair loss, and Plaintiff provides no support for the puzzling proposition

4

that they are.³ Indeed, Plaintiff's own general causation expert, Dr. Feigal, is an oncologist and thus does not fit within any of Plaintiff's categories of "qualified experts" either. (Motion at 4-5) (arguing "Dr. Volpicelli is a dermatologist. She is not an epidemiologist" or "a biostatistician or a statistician," and does not have "the education or training necessary to collate information from various scientific data points" to form general opinions as to "increased risk" of PCIA from docetaxel). That this is so only highlights the intellectual dishonesty behind Plaintiff's attempt to curtail Dr. Volpicelli's general causation testimony—which she is eminently qualified to provide—by categorizing such opinions as "biostatistical" or "epidemiological," as this argument would necessarily exclude Dr. Feigal's testimony as well.

Given Dr. Volpicelli's extensive medical education, training, and experience in dermatology and dermatopathology, Dr. Volpicelli is well-qualified to opine on whether the use of a particular medication such as docetaxel may cause persistent hair loss—a cutaneous or dermatological side effect—in patients. (*See* Volpicelli Dep. at 202:16-204:2). Her testimony should thus be admitted in full.

**II.     PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE DR. VOLPICELLI'S OPINIONS ARE RELIABLE.**

   **A.     Dr. Volpicelli's General Causation Opinions are Based Upon a Reliable Methodology**

Plaintiff argues that Dr. Volpicelli's general causation opinions are not reliable because "they were not formulated using adequate (or any) methodology." (Motion at 5-7). In so arguing, Plaintiff misrepresents Dr. Volpicelli's report and testimony, and stretches *Daubert* admissibility

---

³ Plaintiff instead cites to *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999), and *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009), for the unremarkable proposition that expert testimony is only admissible if the expert is qualified to provide it. (Motion at 4-5). While this is true—*see supra* Applicable Legal Standard—neither *Wilson* nor *Goodman* stands for the proposition that a board-certified dermatologist is not qualified to opine about hair loss.

5

standards beyond recognition. Because Dr. Volpicelli's opinions are, in fact, based on a wholly sound and reliable methodology, Plaintiff's Motion must be denied.

Dr. Volpicelli's expert report and deposition testimony make clear that her opinion regarding general causation is based on her background, training, and experience in dermatology and dermatopathology, as well as her in-depth review of the literature regarding PCIA. Dr. Volpicelli's expert report clearly states that her opinions are "based on the materials and literature [she] ha[s] reviewed in connection with this litigation, [her] knowledge of medical and scientific information reasonably relied upon by members of [her] profession, as well as [her] education, training, knowledge, and experience." (Volpicelli Expert Report at 1; *see also* Volpicelli Dep. at 202:16-204:2) ("Taking into consideration the extensive education, training that I've done, to this extent, the extensive review of the literature, the details that I know in terms of the literature, and specifically as it pertains to PCIA, I consider myself an expert in this topic [hair loss and alopecia]"). Dr. Volpicelli's report explains that "[c]itations to specific reference material . . . are offered in th[e] report, where [she] believe[s] it necessary to cite a specific source; otherwise, [her] opinions are derived from a combination of reference sources, [her] own clinical experience, and general medical knowledge." (Volpicelli Expert Report at 1).

Dr. Volpicelli's report also states that she considered an extensive list of materials, which are identified at Exhibit B to her report. (*See* Volpicelli Expert Report at 1 and Exhibit B). Indeed, Dr. Volpicelli's reliance list contains 9 pages of books, articles, and other publications relating to hair loss, including PCIA, that Dr. Volpicelli reviewed in forming her opinions in this case. (*Id.*). All of this forms a sufficiently reliable basis for Dr. Volpicelli's opinions under *Daubert* and its progeny. *See, e.g., Pipitone*, 288 F.3d at 247 (because "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience," the Fifth

6

Circuit "has upheld the admission of expert testimony where it was based on the expert's specialized knowledge, training, experience, and first-hand observation while supported by solid evidence in the scientific community" (citations omitted)).

From this reliable basis, Dr. Volpicelli concluded, based on her extensive review, that "[t]here is no scientifically-valid evidence that docetaxel is a cause of persistent alopecia or that it causes persistent alopecia at a rate higher than other chemotherapy medications." (Volpicelli Expert Report at 58). Dr. Volpicelli states in her report that "[t]here is no established definition in the literature for persistent alopecia that occurs after chemotherapy, nor is there a defined set of clinical or pathological diagnostic criteria for persistent alopecia following chemotherapy." (Volpicelli Expert Report at 26). Dr. Volpicelli explained why the medical and scientific articles cited by Plaintiff and Plaintiff's experts on the issue of docetaxel and PCIA are insufficient to show a causal link between docetaxel and PCIA. (Volpicelli Expert Report at 41). Specifically, Dr. Volpicelli criticized extensively Plaintiff's experts' "stem cell theory," which they claim explains a mechanism for how docetaxel causes PCIA. (Volpicelli Expert Report at 32). In addition, Dr. Volpicelli explained why the key literature relied on by Plaintiff and her experts do not establish a causal connection between docetaxel and PCIA. (*See* Volpicelli Expert Report at 34-41).

Plaintiff further contends that "when asked about evidence-based medical literature that was diametrically opposed to her opinion, [Dr. Volpicelli] simply stated, without any methodological justification, that she did not agree with it." (Motion at 5). Plaintiff ignores, however, that this testimony was during redirect examination by counsel for Sandoz. Plaintiff's counsel had the opportunity to explore Dr. Volpicelli's justification for her disagreement with UptoDate (Motion at 5 n.2), but chose not to. Additionally, Dr. Volpicelli discussed at length in

7

her deposition her review and assessment of the literature underlying her general causation opinion, and stated in detail (and on multiple occasions) what she relied on to reach her conclusion. (*See* Volpicelli Dep. at 47:13-56:21). And, in any event, Dr. Volpicelli is entitled to provide her assessment of the body of relevant literature and how it informs her opinions in this case, based also on her background and experience. *See Pipitone*, 288 F.3d at 247; *Allstate Ins. Co.*, 802 F.3d at 678.

Plaintiff asserts Dr. Volpicelli's general causation opinions are "wholly *ipse dixit*" and unreliable because Dr. Volpicelli fails to provide "any explanation of her methodology or analysis on this topic." (Motion at 5). Contrary to Plaintiff's claims, Dr. Volpicelli testified in great detail about her analysis of the relevant literature and how she specifically applied it to Plaintiff's case to reach her specific causation opinion that Plaintiff's hair loss was not caused by docetaxel. (*See* Volpicelli Dep. at 47:13-56:21).[4] Indeed, Dr. Volpicelli testified as follows:

> Q. At the time that you were doing your work, did you believe that taxanes can cause PCIA?
>
> A. **Based on my extensive review of the literature, I can confidently say that to date there is no scientific evidence that establishes that docetaxel can cause alopecia.**
>
> Q. All right. And was that your opinion as you were doing your work in this case, that docetaxel does not cause permanent or long-term alopecia?
>
> A. I don't think so much. I would not consider that as an opinion per se, rather this is really what's available in the literature, and **I'm relying on the scientific literature to make that comment.** . . .

---

[4] Plaintiff cites to *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 551 (E.D. La. 2015), in support of this argument, which states the general rule that an expert's *ipse dixit* is inadmissible. But Dr. Volpicelli's general opinions—which rest on a scientifically sound and reliable basis, based on her extensive literature review, credentials, and years of experience—are far from the sort of conclusory, unproven statements that qualify as *ipse dixit*. *See, e.g, Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1283 n.3 (10th Cir. 2018) (*ipse dixit* "is roughly translated as 'he himself said it' and refers to a dogmatic and unproven statement" (citing Black's Law Dictionary (10th ed. 2014))); *United States v. Ala. Power Co.*, 730 F.3d 1278, 1285 n.6 (11th Cir. 2013) (*ipse dixit* "is '[s]omething asserted but not proved.'" (citing Black's Law Dictionary (9th ed. 2009))); *Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791 (7th Cir. 2008) (likening *ipse dixit* to "nothing but a bottom line" supplied by an expert (citation omitted)).

8

Q. I'm trying to ask, as you were doing your work as you've described it regarding Ms. Stewart, at the same time you were doing that work and today it's your opinion that taxanes cannot cause PCIA, correct?

      MS. COHEN: Objection. Form.

A. **It is my opinion that based on the literature to date, there is no scientific evidence that docetaxel causes persistent alopecia following chemotherapy.**

BY MR. GOMEZ:

Q. All right. And you agree -- you know, I know it's based upon a scientific literature and evidence, it's your belief that as you sit here today that taxanes cannot cause PCIA, correct?

      MS. COHEN: Objection to form.

A. Based on the scientific evidence -- and I'm sorry if I'm repeating myself over and over again, but I'll reiterate what I already said. **Based on scientific evidence, causality between docetaxel and alopecia has not been established, and neither has a mechanism, an actual scientific mechanism for how docetaxel or any chemotherapy in general might potentially cause persistent alopecia following chemotherapy. That hasn't been established either.**

BY MR. GOMEZ:

Q. In terms of the case reports that you've read, it's your opinion that taxanes did not cause the PCIA in those case reports?

      MS. COHEN: Objection to form.

A. **So those case reports are observations. You cannot infer causality based on observation.**

BY MR. GOMEZ:

Q. And so you, looking at the case reports, don't believe that there's evidence that the taxanes caused the PCIA in those cases, correct?

A. **So first I want to emphasize that in those case reports taxanes, whether it was Taxol or Taxotere/docetaxel, were given as part of a regimen, and not as the sole therapy. That's number one. Number two, again, I want to reiterate that you cannot make inferences to causality based on case reports and observational studies. You would need a prospective study with an adequate control group.**

(Volpicelli Dep. at 53:9-56:21) (emphasis added).

9

Dr. Volpicelli's detailed testimony above belies Plaintiff's contention that she "failed to demonstrate her application of the methodology she purportedly relied on, or any detail of her analysis to conclude that docetaxel cannot cause permanent or persistent alopecia." (Volpicelli Expert Repot at 5). Thus, Dr. Volpicelli's opinions and testimony are reliable and fully admissible.

### B. Dr. Volpicelli Is Not Required to Undertake a Bradford Hill Analysis

Next, Plaintiff argues that Dr. Volpicelli needed to do a statistical analysis and apply the Bradford Hill criteria in order to opine on general causation. (Motion at 5-7). As Plaintiff's counsel has elsewhere in this litigation, Plaintiff here attempts to flip the burden of proof on causation on its head by arguing Dr. Volpicelli must undertake a Bradford Hill causation analysis before offering her general causation opinions that opinion that "[t]here is no scientifically-valid evidence that docetaxel is a cause of persistent alopecia or that it causes persistent alopecia at a higher rate than other chemotherapy medications." (Motion at 4 n.1).

First, it is worth repeating who has the burden of proof in this case, which Sandoz is necessarily entitled to challenge through its experts:

> Plaintiff has the burden of proof. You have the burden of proof on causation and the defendants have to challenge that. Now, I think [defendants] have to have a good faith basis for the challenge[,] . . . but I think [defendants are] going to have to be able to question your experts about other chemotherapy drugs that were prescribed to [Plaintiff] and whether or not those caused permanent alopecia and I'm not going to preclude them from -- from challenging your causation experts.

Ex. C (September 5, 2019 Hearing Transcript) at 34:8-40:19; *see also* MDL Doc. No. 8201 at 2 [Order and Reasons re: MIL to Exclude Evidence of Unrelated Medical Conditions Familiar Medical History of Cancer, and Unrelated Medication Usage]. In other words, it is *Plaintiff's* burden to prove, through the Bradford Hill criteria or another reliable methodology, that docetaxel causes permanent or persistent hair loss. It is not Dr. Volpicelli's role to affirmatively prove the existence or nonexistence of a causal relationship between docetaxel and permanent or persistent

10

hair loss. Rather, Dr. Volpicelli is merely challenging Plaintiff's ability to carry *her* burden of proving causation, by commenting in these opinions that the literature—a critical piece of Plaintiff's burden—does not in fact establish causation as Plaintiff says it does. Dr. Volpicelli need not go through each of the Bradford Hill factors and affirmatively disprove causation; instead, it is enough, for purposes of challenging Plaintiff's showing of causation, that Dr. Volpicelli demonstrates that the literature cited by Plaintiff simply does not show what Plaintiff says it shows. Dr. Volpicelli points out flaws and shortcomings in the literature—such as the lack of controlled, randomized studies and the presence of confounding factors, among others—to support that opinion.

Second, Dr. Volpicelli need not perform a statistical analysis or a formal Bradford Hill analysis to offer an opinion on general causation, and Plaintiff cites to no case that says she must. Dr. Volpicelli is not an epidemiologist and is not offering an epidemiological opinion to which Bradford Hill traditionally applies. Moreover, "in the context of a general causation challenge, failure to satisfy the Bradford Hill criteria does not doom admission under *Daubert*." *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 804 (E.D. La. 2011) (quoting *In re Neurontin Mktg.*, 612 F. Supp. 2d 116, 133 (D. Mass. 2009)). Indeed, the Bradford Hill criteria are not a "litmus test of general causation." *In re Neurontin Mktg.*, 612 F. Supp. 2d at 133; *see also Allen v. Takeda Pharms. N. Am., Inc. (In re Actos® (Pioglitazone) Prods. Liab. Litig.)*, MDL No. 6:11-md-2299, 2014 U.S. Dist. LEXIS 1681, at *23 n.27 (W.D. La. Jan. 7, 2014) (noting "there is no formula or algorithm that can be used to assess whether a causal influence is appropriate based on [the Bradford Hill] guidelines," and "one or more factors may be absent or present even when a true causal relationship exists"). A systematic review of the literature that is complete and not cherry picked—as Dr. Volpicelli performed in this case—is a valid, reliable methodology for determining

11

general causation. *See Doe v. Ortho-Clinical Diagnostics, Inc.*, 440 F. Supp. 2d 465, 472 (M.D.N.C. 2006); *see also In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, 174 F. Supp. 3d 911, 929–33 (D.S.C. 2016) (discussing requirements for a literature review to constitute a reliable methodology, including that the literature search be complete and neutral and that the expert consider all relevant literature, not just that which is favorable to their position).

Dr. Volpicelli conducted a thorough search of the literature on PCIA, including its association with docetaxel and other chemotherapy drugs. (*See, e.g.*, Volpicelli Dep. Tr. 45:14-46:13; Volpicelli Rep. at Exhibit B.) Dr. Volpicelli approached her research and analysis objectively and did not cherry pick articles to support any preconceived opinions on general causation. (*See, e.g.*, Volpicelli Dep. Tr. 45:14-46:13.) Dr. Volpicelli's reliance list includes a nearly complete, if not exhaustive, set of the literature on PCIA, including all publications relied upon by Plaintiff's experts, many of which are discussed in detail in Dr. Volpicelli's report. (Volpicelli Rep., pp. 26-46 and Exhibit B.) Notably, Plaintiff does not, and cannot, point to any specific articles, data, or other evidence that she believes prove causation—and thus contradict Dr. Volpicelli's opinions—or that she asked Dr. Volpicelli about specifically and believes Dr. Volpicelli did not adequately consider or could not explain. Dr. Volpicelli searched and reviewed the totality of the scientific and medical literature on PCIA, and she discusses her assessment of and conclusions from the literature at length in her report and deposition testimony. (*See, e.g.*, Volpicelli Rep., pp. 26-46; Volpicelli Dep. Tr. 46:15-47:12.) Dr. Volpicelli's fulsome and objective review of the literature is a scientifically sound as well as reliable methodology for reaching an opinion on general causation.

Third, even if a formal Bradford Hill analysis were necessary—and it is not—Dr. Volpicelli's methodology satisfies the Bradford Hill criteria even though those criteria are not specifically laid out in her report. *See Konrick v. Exxon Mobil Corp.*, No. 14-524, 2016 U.S. Dist. LEXIS 13478, at *13 (E.D. La. Feb. 2, 2016) ("The Bradford Hill criteria are: (1) temporal relationship; (2) strength of the association; (3) dose-response relationship; (4) replication of findings; (5) biological plausibility; (6) consideration of alternative explanations; (7) cessation of exposure; (8) specificity of the association; and (9) consistency with other knowledge.") From Dr. Volpicelli's report and deposition testimony, it is clear that Dr. Volpicelli considered the Bradford Hill factors as she reviewed the literature on PCIA and came to her conclusions regarding general causation. For example, Dr. Volpicelli considered and discussed the lack of a temporal association of hair loss with docetaxel alone, as well as the absence of any strong association between docetaxel and hair loss in the literature. (*See, e.g.*, Volpicelli Dep. Tr. 82:11-15.) Dr. Volpicelli also identified various alternative explanations for hair loss in the literature, and discussed those in the context of her prior knowledge and experience. (*See, e.g.*, Volpicelli Rep., pp. 34-35.) Thus, even if Dr. Volpicelli were not relying on another accepted methodology, such as a systematic review of the literature, to support her opinions on general causation, her opinions would nevertheless pass methodological muster under Bradford Hill and therefore are entirely reliable and admissible.

    **C.**    **Dr. Volpicelli Does Not Base Her Opinions on Any of Sandoz's Other Experts**

Finally, Plaintiff argues Dr. Volpicelli should not be permitted to opine on general causation to the extent she "relied on another one of Sandoz's retained experts' analyses or opinions regarding whether or not docetaxel generally causes permanent or persistent alopecia." (Motion at 6). Dr. Volpicelli did not rely upon or even review the opinions of any other Sandoz

13

expert in preparing her report in this case. (*See, e.g.*, Volpicelli Dep. 206:22-207:21; *see also* Volpicelli Expert Report at Exhibit B). Thus, this argument is without merit.

Dr. Volpicelli's general causation opinion, contained in her report and discussed at her deposition in this case, is based on her extensive experience and in-depth review and analysis of literature, which are more than sufficient grounds to offer reliable opinions that will assist the jury on the issue of general causation. Plaintiff's Motion must therefore be denied.

## CONCLUSION

For the foregoing reasons, Sandoz requests this Court to deny Plaintiff's motion in its entirety.

Dated: December 11, 2020  Respectfully submitted,

**GREENBERG TRAURIG, LLP**

/s/ Lori G. Cohen
Lori G. Cohen
R. Clifton Merrell
Evan C. Holden
Terminus 200
3333 Piedmont Road, N.E., Suite 2500
Atlanta, Georgia 30305
(678) 553-2100
(678) 553-2386 (facsimile)
CohenL@gtlaw.com
MerrellC@gtlaw.com
HoldenE@gtlaw.com

*Attorneys for Sandoz Inc.*

14

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2020, a copy of the foregoing document was served on all counsel of record via CM/ECF.

/s/ Lori G. Cohen
Lori G. Cohen