UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>*Wanda Stewart v. Sandoz Inc.*<br>Civil Case No. 2:17-cv-10817 | MDL No. 2740<br><br>Section: N(5)<br><br>JUDGE JANE TRICHE MILAZZO<br><br>MAG. JUDGE NORTH |

**DEFENDANT SANDOZ INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE SELECT OPINIONS <u>OF DEFENSE EXPERT NICOLE ROGERS, M.D.</u>**

**GREENBERG TRAURIG, LLP**
Lori G. Cohen
R. Clifton Merrell
Evan C. Holden
Terminus 200
3333 Piedmont Road, N.E., Suite 2500
Atlanta, Georgia 30305
(678) 553-2100

*Counsel for Defendant Sandoz Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

APPLICABLE LEGAL STANDARD ................................................................................. 2

ARGUMENT ........................................................................................................................ 3

    I.    PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE DR. ROGERS IS HIGHLY QUALIFIED TO OPINE ON GENERAL CAUSATION. ............................................................................................ 3

    II.    PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE DR. ROGERS' OPINIONS ARE RELIABLE. ...................................................... 5

        A.    Dr. Rogers' General Causation Opinions are Based Upon a Reliable Methodology ............................................................................ 5

        B.    Dr. Rogers Is Not Required to Undertake a Bradford Hill Analysis ........ 10

        C.    Dr. Rogers Does Not Base Her Opinions on Any of Sandoz's Other Experts ............................................................................................ 14

CONCLUSION ...................................................................................................................... 14

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

APPLICABLE LEGAL STANDARD ................................................................................. 2

ARGUMENT ........................................................................................................................ 3

    I.    PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE DR. ROGERS IS HIGHLY QUALIFIED TO OPINE ON GENERAL CAUSATION. ............................................................................................ 3

    II.    PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE DR. ROGERS' OPINIONS ARE RELIABLE. ...................................................... 5

        A.    Dr. Rogers' General Causation Opinions are Based Upon a Reliable Methodology ............................................................................ 5

        B.    Dr. Rogers Is Not Required to Undertake a Bradford Hill Analysis ........ 10

        C.    Dr. Rogers Does Not Base Her Opinions on Any of Sandoz's Other Experts ............................................................................................ 14

CONCLUSION ...................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. Takeda Pharms. N. Am., Inc. (In re Actos® (Pioglitazone) Prods. Liab. Litig.)*,
   MDL No. 6:11-md-2299, 2014 U.S. Dist. LEXIS 1681 (W.D. La. Jan. 7, 2014) ................................................................................................................................12

*Allstate Ins. Co. v. Plambeck*,
   802 F.3d 665 (5th Cir. 2015) ....................................................................................3, 9

*Burst v. Shell Oil Co.*,
   120 F. Supp. 3d 547 (E.D. La. 2015) ...........................................................................8

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) .....................................................................................................2

*Doe v. Ortho-Clinical Diagnostics, Inc.*,
   440 F. Supp. 2d 465 (M.D.N.C. 2006) ......................................................................12

*Goodman v. Harris County*,
   571 F.3d 388 (5th Cir. 2009) .......................................................................................4

*Huss v. Gayden*,
   571 F.3d 442 (5th Cir. 2009) .......................................................................................2

*Konrick v. Exxon Mobil Corp.*,
   No. 14-524, 2016 U.S. Dist. LEXIS 13478 (E.D. La. Feb. 2, 2016) .........................13

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) .....................................................................................................2

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*,
   174 F. Supp. 3d 911 (D.S.C. 2016) ............................................................................12

*In re Neurontin Mktg.*,
   612 F. Supp. 2d 116 (D. Mass. 2009) .................................................................11, 12

*Pipitone v. Biomatrix, Inc.*,
   288 F.3d 239 (5th Cir. 2002) ...............................................................................2, 6, 9

*Schulenberg v. BNSF Ry. Co.*,
   911 F.3d 1276 (10th Cir. 2018) ...................................................................................8

*United States v. Ala. Power Co.*,
   730 F.3d 1278 (11th Cir. 2013) ...................................................................................8

*United States v. Wen Chyu Liu*,
   716 F.3d 159 (5th Cir. 2013) .......................................................................................4

*Wagoner v. Exxon Mobil Corp.*,
   813 F. Supp. 2d 771 (E.D. La. 2011) ........................................................................11

*Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*,
 521 F.3d 790 (7th Cir. 2008) ............................................................................................. 8

*Wilson v. Woods*,
 163 F.3d 935 (5th Cir. 1999) ............................................................................................. 4

**Other Authorities**

Black's Law Dictionary (9th ed. 2009) ..................................................................................... 8

Black's Law Dictionary (10th ed. 2014) ................................................................................... 8

Fed. R. Evid. 702 ............................................................................................................. 1, 2, 3

Fed. R. Evid. 702(a) ................................................................................................................. 2

**DEFENDANT SANDOZ INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE SELECT OPINIONS OF DEFENSE EXPERT NICOLE ROGERS, M.D.**

Defendant Sandoz Inc. ("Sandoz"), pursuant to Federal Rule of Evidence 702, respectfully submits its Memorandum of Law in Opposition to Plaintiff's Motion to Exclude Select Opinions of Defense Expert Nicole Rogers, M.D. For the reasons set forth below, Plaintiff's motion should be denied in its entirety.

## INTRODUCTION

Plaintiff Wanda Stewart ("Plaintiff")'s Motion to Exclude Select Opinions of Defense Expert Nicole Rogers, M.D. (the "Motion") seeks to exclude Dr. Rogers' opinion on general causation—i.e., whether docetaxel can cause permanent or persistent hair loss. (Motion at 1). Specifically, Plaintiff takes issue with Dr. Rogers' opinions that: (1) "it has not been established that docetaxel can cause permanent or persistent alopecia, or that it does so at a higher rate than other medications"; and (2) "docetaxel in general cannot cause permanent hair loss in any person." (Motion at 1). In support of exclusion under *Daubert* and its progeny, Plaintiff argues that Dr. Rogers is not qualified to offer these opinions on general causation, and that she has not set forth a reliable methodology for these opinions. (Motion at 1).

Yet Plaintiff's Motion—containing only four pages of argument—lacks any sound basis for excluding the general causation opinions of Dr. Rogers. As set forth below, Dr. Rogers' expert report and deposition testimony contain thorough discussion of her suitable qualifications and the reliable grounds for her general causation opinions, including, but not limited to, Dr. Rogers' many years of experience as a practicing dermatologist specializing in hair loss and her in-depth review

of the literature on hair loss and permanent chemotherapy induced alopecia ("PCIA")[1] in particular. Plaintiff's Motion should therefore be denied in its entirety.

## APPLICABLE LEGAL STANDARD

The admissibility of expert opinion testimony is governed by the Federal Rules of Evidence. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 587 (1993). In accordance with those rules, trial judges must serve as gatekeepers to the admission of scientific testimony. *See id.* at 589. This gatekeeping function applies not only to "scientific" testimony, but also to testimony based on "technical" and "other specialized" knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

An expert witness must satisfy three prerequisites before his or her opinion can be admitted. *See Daubert*, 509 U.S. at 589-90; *accord Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 & n.9 (5th Cir. 2002). First, the expert witness must be adequately qualified by virtue of his or her specialized "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Nonetheless, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

Second, the expert's opinion must be relevant such that it assists "the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702(a). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (citation omitted).

Third, the scientific or technical opinion must be reliable. *See Daubert*, 509 U.S. at 591-92. Although the *Daubert* Court identified several factors that may bear on a judge's determination

---

[1] Sandoz uses this term and the related abbreviation for ease of reference, as it is used in Plaintiff's Motion and was used by her counsel at the depositions of these experts; however, in doing so, Sandoz does not concede in any way that hair loss following chemotherapy is permanent or persistent or is necessarily caused by chemotherapy itself as opposed to some other factor.

2

of the reliability of an expert's testimony,[2] those factors are neither definitive nor exhaustive. *See Kumho Tire Co.*, 526 U.S. at 150; *accord Pipitone*, 288 F.3d at 244. This Court therefore "has broad discretion in its gatekeeping function under Federal Rule of Evidence 702, and an expert witness's testimony (and its reliability) may be based on [their] personal and professional experience and [their] own observation." *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 678 (5th Cir. 2015).

## ARGUMENT

**I.     PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE DR. ROGERS IS HIGHLY QUALIFIED TO OPINE ON GENERAL CAUSATION.**

In a cursory paragraph, Plaintiff asserts that Dr. Rogers' general causation opinions must be excluded because Dr. Rogers is not qualified to provide them. (Motion at 5). To the contrary: Dr. Rogers is well-qualified to offer an opinion on whether docetaxel causes permanent or persistent hair loss. Plaintiff's Motion must therefore be denied.

To begin with, Dr. Rogers is a board-certified dermatologist. (*See, e.g.*, Ex. A (Rogers Expert Report) at 1 & Exhibit A). Dr. Rogers owns her own private practice, Hair Restoration of the South, which is "dedicated exclusively to the treatment of hair loss" of all types. (*See* Ex. B (Rogers Dep.) at 9:15–23; *see also* Rogers Expert Report at 2). As part of Dr. Rogers' job diagnosing patients' hair loss, she must be familiar with the various medications, medical conditions, and other factors that cause hair loss, which Dr. Rogers explained in detail in her expert report as well as her deposition in this case. (*See, e.g.*, Rogers Expert Report at 11–12). Additionally, Dr. Rogers is an Assistant Clinical Professor of Dermatology at Tulane University

---

[2] Those factors include: (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community. *Daubert*, 509 U.S. at 592-94.

3

School of Medicine, where she lectures on a variety of topics pertaining to hair loss, including hair loss types, causes, and treatments. (Rogers Expert Report at 2 and Exhibit A).

Dr. Rogers is a well-known expert on hair loss; she has authored many publications, and has had numerous invited speaking engagements and media appearances concerning hair loss issues. (*Id*.). Dr. Rogers also reviews and summarizes articles for various dermatologic publications, and conducted an extensive review of the literature on hair loss, and PCIA specifically, in connection with her evaluation of this case. (*See* Rogers Expert Report at 2, 27–31 & nn.44–63; Rogers Dep. at 48:20–24, 61:17–22). All of this renders Dr. Rogers qualified to provide general causation opinions in this case. *See United States v. Wen Chyu Liu*, 716 F.3d 159, 168-69 (5th Cir. 2013) ("[A]n expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight." (citations omitted)).

Despite Dr. Rogers' clear qualifications, Plaintiff nevertheless argues that Dr. Rogers is not qualified to opine on whether docetaxel causes permanent or persistent hair loss because "[s]he is not an epidemiologist" and "[s]he is not a biostatistician or a statistician." (Motion at 5). Epidemiologists, biostatisticians, and statisticians are not the only experts who may be qualified to provide an opinion on docetaxel's effect on hair, and Plaintiff provides no support for the puzzling proposition that they are.[3] Indeed, Plaintiff's own general causation expert, Dr. Feigal, is an oncologist and thus does not fit within any of Plaintiff's categories of "qualified experts" either. (Motion at 5) (arguing "Dr. Rogers is a dermatologist. She is not an epidemiologist" or "a biostatistician or a statistician," and does not "possess[] the education or training necessary to

---

[3] Plaintiff instead cites to *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999), and *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009), for the unremarkable proposition that expert testimony is only admissible if the expert is qualified to provide it. (Motion at 5). While this is true—*see supra* Applicable Legal Standard—neither *Wilson* nor *Goodman* stands for the proposition that a board-certified dermatologist is not qualified to opine about hair loss.

4

collate information from various scientific data points" to form general opinions as to "increased risk" of PCIA from docetaxel). That this is so only highlights the intellectual dishonesty behind Plaintiff's attempt to curtail Dr. Rogers' general causation testimony—which she is eminently qualified to provide—by categorizing such opinions as "biostatistical" or "epidemiological," as this argument would necessarily exclude Dr. Feigal's testimony as well.

Given Dr. Rogers' extensive medical education, training, and experience in dermatology, and specifically the diagnosis and treatment of hair loss, and her research on hair loss and PCIA, Dr. Rogers is well-qualified to opine on whether use of a particular medication such as docetaxel may cause persistent hair loss—a cutaneous or dermatological side effect—in patients. Her testimony should thus be admitted in full.

## II.     PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE DR. ROGERS' OPINIONS ARE RELIABLE.

### A.     Dr. Rogers' General Causation Opinions are Based Upon a Reliable Methodology

Plaintiff argues that Dr. Rogers' general causation opinions are not reliable because "they were not formulated using adequate (or any) methodology." (Motion at 5-8). In so arguing, Plaintiff misrepresents Dr. Rogers' report and testimony, and stretches *Daubert* admissibility standards beyond recognition. Because Dr. Rogers' opinions are, in fact, based on a wholly sound and reliable methodology, Plaintiff's Motion must be denied.

Dr. Rogers' expert report and deposition testimony make clear that her general causation opinion is rooted in her extensive background, training, and experience in the diagnosis and treatment of hair loss, as well as her in-depth review of the medical literature on PCIA. Specifically, Dr. Rogers' expert report clearly states that her opinions are "based on the materials and literature [she] ha[s] reviewed in connection with this litigation, [her] knowledge of medical and scientific information reasonably relied upon by members of [her] profession, as well as [her]

5

education, training, knowledge, and experience." (Rogers Expert Report at 1; *see also* Rogers Dep. at 51:22–52:2 ("A. You know, I have informed my opinions of this case from a number of different sources. Obviously, you know, my own training, my own education, and my experience treating, you know, thousands of patients with hair loss.")).

Dr. Rogers' report further explains that "[c]itations to specific reference material . . . are offered in th[e] report, where [she] believe[s] it necessary to cite a specific source; otherwise, [her] opinions are derived from a combination of reference sources, [her] own clinical experience, and general medical knowledge." (Rogers Expert Report at 1). In addition, Dr. Rogers' report states that "[her] opinions in this matter have been informed by [her] review of the materials identified in Exhibit B" to her report, which contains an extensive list of reliance materials that includes literature on PCIA as well as docetaxel. (Rogers Expert Report at 2 and Exhibit B thereto). Indeed, Dr. Rogers' reliance list is comprised in large part of literature: 32 pages of the 40-page reliance list consist of books, articles, and other publications on hair loss—including PCIA—that Dr. Rogers reviewed in forming her opinions in this case. (Rogers Expert Report at Exhibit B). This alone forms a sufficiently reliable basis for Dr. Rogers' opinions under *Daubert* and its progeny. *See, e.g., Pipitone*, 288 F.3d at 247 (because "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience," the Fifth Circuit "has upheld the admission of expert testimony where it was based on the expert's specialized knowledge, training, experience, and first-hand observation while supported by solid evidence in the scientific community" (citations omitted)).

In her report, Dr. Rogers concluded, based on her extensive review, that "[t]here is no scientific or medical literature that establishes that Taxotere/docetaxel either specifically causes permanent or persistent hair loss or that it does so at a higher rate than other medications." (Rogers

6

Expert Report at 30). Dr. Rogers explained that the medical and scientific articles cited by Plaintiff and Plaintiff's experts on the issue of docetaxel and PCIA consist of a small number of case reports that fail to establish that the reported persistent alopecia was caused by docetaxel as opposed to "a) other chemotherapy drugs used in combination with Taxotere/docetaxel, b) [] other medications, such as aromatase inhibitors, and/or c) [] other causes, such as androgenetic alopecia or CCCA." (Rogers Expert Report at 30). Dr. Rogers provided citations to a select set of three case reports exemplifying these issues. (Rogers Expert Report at 30 & nn.58–60).

Additionally, Dr. Rogers discussed at length in her deposition her assessment of the literature underlying her general causation opinion, stating, for example:

> You know, I think -- I believe that patients who have been reported in the medical literature with PCIA have a lot of other confounding things going on, and, you know, at the top of the list, their inherent hair characteristics, you know, plays an important role. You know, did they have genetically very fine, thin hair to begin with? Number two, what is their inheritance pattern? You know, did they have a personal or a family history of androgenetic alopecia and could that be a presenting or confounding factor in how they responded to hair loss? Absolutely. You know, what are the other things that were included in their chemotherapeutic regimen, what other chemotherapy drugs were they taking and what endocrine therapies were they taking? And I just -- I don't think at this point we have enough information specifically targeting one -- or explaining one particular cause for patients who have these more longstanding presentations of alopecia after chemotherapy.

(Rogers Dep. at 46:24–47:23). When attempting to expound upon her opinions further, Plaintiff's counsel interrupted Dr. Rogers:

> Q. Okay. Here, let me say it another way. You understand that docetaxel can cause permanent hair loss in some patients? Yes or no?
>
> MS. COHEN: Objection to form.
>
> A. I've seen reports implicating docetaxel, but when you look at those reports, they're small case studies, they're letters to the editor –
>
> BY MR. GOMEZ:
>
> Q. Let me stop you there.

7

(Rogers Dep. at 61:24–62:10). Still, Dr. Rogers testified, "[M]y views of docetaxel and all of the other medications have really been . . . very informed by the process of researching the medical literature." (Rogers Dep. at 63:7–11). To this end, Dr. Rogers opined:

> Docetaxel from . . . reports . . . potentially causing longstanding hair loss in other patients, . . . is potentially similar to other chemotherapeutic drugs in the literature, like busulfan, like Taxol, like cyclophosphamide, . . . that there could be patients who are more susceptible to longstanding hair effects after treatment with . . . these medications. But again, we can't predict who that's going to be and when that's going to happen, and . . . there's not enough evidence in the medical literature to establish docetaxel alone as causing permanent chemo-induced alopecia.

(Rogers Dep. at 74:2–17). When questioned further, Dr. Rogers continued to demonstrate that her scientifically sound opinions are based, in part, on medical literature:

> Q. Okay. And so do you believe as you sit here today as an expert in this case that docetaxel can cause longstanding hair loss in some patients?
>
> MS. COHEN: Objection to form.
>
> A. You know, I -- it has been implicated obviously in the medical literature and in patients who may be more susceptible based on their hair loss characteristics, patients who are also on endocrine therapies, you know, they may present with longstanding hair loss after having taken docetaxel. But again, you know, a temporal association does not imply causation, and, you know, you have to rule out all the other possible confounding factors.

(Rogers Dep. at 74:19–75:10).

Despite this, Plaintiff contends that Dr. Rogers failed to cite any literature in support of her opinion on whether docetaxel causes permanent or persistent hair loss, aside from the three articles specifically cited in her report as mentioned above, and asserts Dr. Rogers' opinions are *ipse dixit*. (Motion at 4).[4] But Dr. Rogers' opinions are plainly based on her in-depth review of all of the

---

[4] Plaintiff cites to *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 551 (E.D. La. 2015), in support of this argument, which states the general rule that an expert's *ipse dixit* is inadmissible. But Dr. Rogers' general opinions—which rest on a scientifically sound and reliable basis, based on her extensive literature review, credentials, and years of experience—are far from the sort of conclusory, unproven statements that qualify as *ipse dixit*. *See, e.g, Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1283 n.3 (10th Cir. 2018) (*ipse dixit* "is roughly translated as 'he himself said it' and refers to a dogmatic and unproven statement" (citing Black's Law Dictionary (10th ed. 2014))); *United States v. Ala. Power Co.*,

literature cited by Plaintiff's experts and the books, articles, and other publications listed in the reliance list provided with her report. (*See* Rogers Expert Report at 2 and Exhibit B). While Plaintiff apparently would have liked Dr. Rogers to list each of those publications in her report and again at her deposition, doing so would have been unduly burdensome and would have been duplicative of the reliance list provided with her report. Unsurprisingly, Plaintiff provides no case law to support this peculiar proposition. Nothing set forth by *Daubert* or its progeny requires Dr. Rogers to repeat the entire list of materials reviewed in each instance where she discusses them in her report and deposition testimony to render her opinions reliable. Instead, Dr. Rogers is entitled to summarize her assessment of the entire body of relevant literature and how it informs her opinions in this case, based also on her background and experience. *See Pipitone*, 288 F.3d at 247; *Allstate Ins. Co.*, 802 F.3d at 678.

Furthermore, if Plaintiff had any questions regarding the particular articles Dr. Rogers relied upon in reaching her general causation opinions, or the articles to which she generally referred and summarized at her deposition, Plaintiff's counsel could have and should have asked Dr. Rogers to specifically identify those articles at her deposition. Indeed, Plaintiff failed to ask Dr. Rogers about any literature or articles, or her reliance list, nor did Plaintiff mark any such documents as exhibits at Dr. Rogers' deposition. By seeking to have Dr. Rogers affirmatively, and without request, specifically enumerate each publication relied upon in each instance where she has discussed her general opinions, Plaintiff attempts to impose a standard that is not required by *Daubert*, and is, in practice, unrealistic. It is enough that Dr. Rogers has described the literature

---

730 F.3d 1278, 1285 n.6 (11th Cir. 2013) (*ipse dixit* "is '[s]omething asserted but not proved.'" (citing Black's Law Dictionary (9th ed. 2009))); *Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791 (7th Cir. 2008) (likening *ipse dixit* to "nothing but a bottom line" supplied by an expert (citation omitted)).

relied upon in reaching her general causation opinion, both in her report and at her deposition, and has provided a specific list of all of those materials as an exhibit to her report.[5]

Similarly, Plaintiff argues that Dr. Rogers' testimony concerning the confounding factors found in the literature is mere "conjecture" because Dr. Rogers "guessed without evidence that patients in these unnamed studies might have had some of these other causes to explain their permanent hair loss." (Motion at 6). But Dr. Rogers need not speculate as to the presence of confounders in those cases; rather, as Dr. Rogers testified, the fact that confounding factors potentially existed and were not adequately controlled for in each of those cases provided a sufficient basis for Dr. Rogers' conclusion that docetaxel alone was not established as the cause of hair loss in any case. (*See, e.g.*, Rogers Dep. at 74:19–75:10).

### B.   Dr. Rogers Is Not Required to Undertake a Bradford Hill Analysis

Next, Plaintiff argues that Dr. Rogers needed to do a statistical analysis and apply the Bradford-Hill criteria in order to opine on general causation. (Motion at 6-8). As Plaintiff's counsel has elsewhere in this litigation, Plaintiff here attempts to flip the burden of proof on causation on its head by arguing Dr. Rogers must undertake a Bradford Hill causation analysis before offering her general causation opinions opining that (1) "it has not been established that docetaxel can cause permanent or persistent alopecia, or that it does so at a higher rate than other medications"; and (2) "docetaxel in general cannot cause permanent hair loss in any person[1]." (Motion at 1).

---

[5] Plaintiff contends, in a footnote to her Motion, that Dr. Rogers' testimony should be limited to specific causation opinions only, based on an isolated statement made at her deposition concerning the scope of her opinions. (Motion at 5 n.2). But Dr. Rogers' expert report clearly contains opinions on general causation, which Dr. Rogers also discussed in detail at her deposition, as discussed herein. Dr. Rogers, in fact, confirmed at her deposition that the majority of her report concerns general issues and general opinions, before reaching her case-specific assessment. (*See* Rogers Dep. at 225:13–24). Thus, this argument is without merit.

[1] Dr. Rogers did not offer in her report any opinion that docetaxel "cannot cause permanent hair loss in any person." When asked by Plaintiff's counsel at her deposition "do you believe that docetaxel can cause **permanent** hair loss in any person?" she answered that she did not. Dr. Rogers has never personally diagnosed "permanent" chemotherapy-induced alopecia, because she has "never been able to make a diagnosis that was -- that the[] [patients'] hair was -- that their hair loss was permanent and that [she] could not improve upon it." (Rogers Dep. Tr. 52:15–18.)  An accurate summary of Dr. Rogers' general causation opinion is that certain chemotherapy drugs, including doxorubicin,

First, it is worth repeating who has the burden of proof in this case, which Sandoz is necessarily entitled to challenge through its experts:

> Plaintiff has the burden of proof. You have the burden of proof on causation and the defendants have to challenge that. Now, I think [defendants] have to have a good faith basis for the challenge[,] . . . but I think [defendants are] going to have to be able to question your experts about other chemotherapy drugs that were prescribed to [Plaintiff] and whether or not those caused permanent alopecia and I'm not going to preclude them from -- from challenging your causation experts.

Ex. C (September 5, 2019 Hearing Transcript) at 34:8-40:19; *see also* MDL Doc. No. 8201 at 2 [Order and Reasons re: MIL to Exclude Evidence of Unrelated Medical Conditions Familiar Medical History of Cancer, and Unrelated Medication Usage]. In other words, it is *Plaintiff's* burden to prove, through the Bradford Hill criteria or another reliable methodology, that docetaxel causes permanent or persistent hair loss. It is not Dr. Rogers' role to affirmatively prove the existence or nonexistence of a causal relationship between docetaxel and permanent or persistent hair loss. Rather, Dr. Rogers is merely challenging Plaintiff's ability to carry *her* burden of proving causation, by commenting in these opinions that the literature—a critical piece of Plaintiff's burden—does not in fact establish causation as Plaintiff says it does. Dr. Rogers need not go through each of the Bradford Hill factors and affirmatively disprove causation; instead, it is enough, for purposes of challenging Plaintiff's showing of causation, that Dr. Rogers demonstrates that the literature cited by Plaintiff simply does not show what Plaintiff says it shows. Dr. Rogers points out flaws and shortcomings in the literature—such as the lack of controlled, randomized studies and the presence of confounding factors, among others—to support that opinion.

---

cyclophosphamide, and docetaxel, are associated with reports of persistent or longstanding alopecia in the literature, but that causation has not been established. (Rogers Rep., pp. 28–30, 58, 75; Rogers Dep. Tr. 61:17–22, 74:2–17, 151:22–152:17.).

11

Second, Dr. Rogers need not perform a statistical analysis or a formal Bradford-Hill analysis to offer an opinion on general causation, and Plaintiff cites to no case that says she must. Dr. Rogers is not an epidemiologist and is not offering an epidemiological opinion to which Bradford Hill traditionally applies. Moreover, "in the context of a general causation challenge, failure to satisfy the Bradford Hill criteria does not doom admission under *Daubert*." *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 804 (E.D. La. 2011) (quoting *In re Neurontin Mktg.*, 612 F. Supp. 2d 116, 133 (D. Mass. 2009)). Indeed, the Bradford Hill criteria are not a "litmus test of general causation." *In re Neurontin Mktg.*, 612 F. Supp. 2d at 133; *see also Allen v. Takeda Pharms. N. Am., Inc. (In re Actos® (Pioglitazone) Prods. Liab. Litig.)*, MDL No. 6:11-md-2299, 2014 U.S. Dist. LEXIS 1681, at *23 n.27 (W.D. La. Jan. 7, 2014) (noting "there is no formula or algorithm that can be used to assess whether a causal influence is appropriate based on [the Bradford Hill] guidelines," and "one or more factors may be absent or present even when a true causal relationship exists"). A systematic review of the literature that is complete and not cherry picked—as Dr. Rogers performed in this case—is a valid, reliable methodology for determining general causation. *See Doe v. Ortho-Clinical Diagnostics, Inc.*, 440 F. Supp. 2d 465, 472 (M.D.N.C. 2006); *see also In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, 174 F. Supp. 3d 911, 929–33 (D.S.C. 2016) (discussing requirements for a literature review to constitute a reliable methodology, including that the literature search be complete and neutral and that the expert consider all relevant literature, not just that which is favorable to their position).

Dr. Rogers conducted a thorough search of the literature on PCIA, including its association with docetaxel and other chemotherapy drugs. (*See, e.g.*, Rogers Dep. Tr. 48:20-22, 63:7-11, 73:10-12, 74:2-8; *see also* Rogers Rep. at Exhibit B.) Dr. Rogers approached her research and

12

analysis objectively and did not cherry pick articles to support any preconceived opinions on general causation. (*See, e.g.*, Rogers Dep. Tr. 50:13-51:5; *see also* Rogers Rep. at Exhibit B.) Dr. Rogers' reliance list includes a nearly complete, if not exhaustive, set of the literature on PCIA, including all publications relied upon by Plaintiff's experts, many of which are discussed in detail in Dr. Rogers' report. (Rogers Rep., pp. 25-31 and Exhibit B.) Notably, Plaintiff does not, and cannot, point to any specific articles, data, or other evidence that she believes prove causation—and thus contradict Dr. Rogers' opinions—or that she asked Dr. Rogers about specifically and believes Dr. Rogers did not adequately consider or could not explain. Dr. Rogers searched and reviewed the totality of the scientific and medical literature on PCIA, and she discusses her assessment of and conclusions from the literature at length in her report and deposition testimony. (*See, e.g.*, Rogers Dep. Tr. 46:24-47:23, 61:17-22, 74:2-17, 87:18-88:8.) Dr. Rogers' fulsome and objective review of the literature is a scientifically sound as well as reliable methodology for reaching an opinion on general causation.

Third, even if a formal Bradford Hill analysis were necessary—and it is not—Dr. Rogers' methodology satisfies the Bradford Hill criteria even though those criteria are not specifically laid out in her report. *See Konrick v. Exxon Mobil Corp.*, No. 14-524, 2016 U.S. Dist. LEXIS 13478, at *13 (E.D. La. Feb. 2, 2016) ("The Bradford Hill criteria are: (1) temporal relationship; (2) strength of the association; (3) dose-response relationship; (4) replication of findings; (5) biological plausibility; (6) consideration of alternative explanations; (7) cessation of exposure; (8) specificity of the association; and (9) consistency with other knowledge.") From Dr. Rogers' report and deposition testimony, it is clear that Dr. Rogers considered the Bradford Hill factors as she reviewed the literature on PCIA and came to her conclusions regarding general causation. For example, Dr. Rogers considered and discussed the lack of a temporal association of hair loss with

13

docetaxel alone, as well as the absence of any strong association between docetaxel and hair loss in the literature. (*See, e.g.*, Rogers Rep., pp. 29-30; Rogers Dep. Tr. 46:24-47:23, 74:2-17.) Dr. Rogers also identified various alternative explanations for hair loss in the literature, and discussed those in the context of her prior knowledge and experience. (*See, e.g.*, Rogers Rep., pp. 29-30; Rogers Dep. Tr. 46:24-47:23.) Thus, even if Dr. Rogers were not relying on another accepted methodology, such as a systematic review of the literature, to support her opinions on general causation, her opinions would nevertheless pass methodological muster under Bradford Hill and therefore are entirely reliable and admissible.

### C. Dr. Rogers Does Not Base Her Opinions on Any of Sandoz's Other Experts

Finally, Plaintiff argues Dr. Rogers should not be permitted to opine on general causation to the extent she "relied on another one of Sandoz's retained experts' analyses or opinions regarding whether or not docetaxel generally causes permanent or persistent alopecia." (Motion at 7). Dr. Rogers did not rely upon or even review the opinions of any other Sandoz expert in preparing her report in this case. (*See, e.g.*, Rogers Dep. at 238:2–15; *see also* Rogers Expert Report at Exhibit B). Thus, this argument is without merit.

Dr. Rogers' general causation opinion, contained in her report and discussed at her deposition in this case, is based on her extensive experience and in-depth review and analysis of literature, which are more than sufficient grounds to offer reliable opinions that will assist the jury on the issue of general causation. Plaintiff's Motion must therefore be denied.

### CONCLUSION

For the foregoing reasons, Sandoz requests this Court to deny Plaintiff's motion in its entirety.

| | |
|---|---|
| Dated: December 11, 2020 | Respectfully submitted,<br><br>**GREENBERG TRAURIG, LLP**<br><br>/s/ Lori G. Cohen<br>Lori G. Cohen<br>R. Clifton Merrell<br>Evan C. Holden<br>Terminus 200<br>3333 Piedmont Road, N.E., Suite 2500<br>Atlanta, Georgia 30305<br>(678) 553-2100<br>(678) 553-2386 (facsimile)<br>CohenL@gtlaw.com<br>MerrellC@gtlaw.com<br>HoldenE@gtlaw.com<br><br>*Attorneys for Sandoz Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2020, a copy of the foregoing document was served on all counsel of record via CM/ECF.

/s/ Lori G. Cohen
Lori G. Cohen