UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>*Wanda Stewart v. Sandoz Inc.*<br>Civil Case No. 2:17-cv-10817 | MDL No. 2740<br><br>Section: N(5)<br><br>JUDGE JANE TRICHE MILAZZO<br><br>MAG. JUDGE NORTH |

**REPLY IN SUPPORT OF MOTION TO EXCLUDE OR
<u>LIMIT OPINIONS OF DR. DAVID B. ROSS</u>**

**GREENBERG TRAURIG, LLP**
Lori G. Cohen
R. Clifton Merrell
Evan C. Holden
Terminus 200
3333 Piedmont Road, N.E., Suite 2500
Atlanta, Georgia 30305
(678) 553-2100

*Counsel for Defendant Sandoz Inc.*

ACTIVE 54289811v6

## TABLE OF CONTENTS

I.   PLAINTIFFS FAILS TO ESTABLISH THAT DR. ROSS IS QUALIFIED TO RENDER OPINIONS AND TESTIMONY IN THIS MATTER. .....................................2

II.  DR. ROSS'S OPINIONS ARE UNRELIABLE AND SHOULD BE EXCLUDED. ..................................................................................................................3

    A.   Plaintiff Does Not Deny that Dr. Ross Disregarded Pertinent Information In Order to Reach a Conclusion-Driven Opinion. ....................................................3

    B.   Dr. Ross Relies on Other Experts' Conclusions and Support to an Improper Extent, Including Failing to Verify those Opinions................................6

    C.   Plaintiff Ignores this Court's Prior Ruling to Argue that Dr. Ross Should Be Permitted to Rely on Labeling Requirements Outside the United States. .........7

III. PLAINTIFF FAILS TO SUFFICIENTLY REBUT THAT DR. ROSS'S OPINIONS ARE IRRELEVANT AND DO NOT FIT THE CASE...................................8

IV.  DR. ROSS'S GENERAL CAUSATION OPINIONS WILL MISLEAD AND CONFUSE THE JURY. ................................................................................................9

V.   DR. ROSS'S LEGAL OPINION TESTIMONY IS NOT HELPFUL. .............................10

CONCLUSION ................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Pa. Eng'g Corp.*,
   102 F.3d 194 (5th Cir. 1996) ................................................................................................. 9

*Burst v. Shell Oil Co.*,
   120 F. Supp. 3d 547 (E.D. La. 2015) ..................................................................................... 8

*Carlson v. Bioremedi Therapeutic Sys., Inc.*,
   822 F.3d 194 (5th Cir. 2016) ................................................................................................. 2

*Cleveland v. United States*,
   457 F.3d 397 (5th Cir. 2006) ................................................................................................. 3

*Deutz Corp. v. City Light & Power, Inc.*,
   Case No. 1:05-cv-3113, 2009 WL 2986415 (N.D. Ga. Mar. 21, 2009) ................................. 6

*Fosmire v. Progressive Max Ins. Co.*,
   277 F.R.D. 625 (W.D. Wash. 2011) ...................................................................................... 6

*Meridia Prods. Liab. Litig. V. Abbot Labs.*,
   447 F.3d 861 (6th Cir. 2006) ................................................................................................. 7

*Moore v. Ashland Chem. Inc.*,
   151 F.3d 269 (5th Cir. 1998) ................................................................................................. 4

*Ridings v. Maurice*,
   No. 15-00020-CV-W-JTM, 2020 WL 1264178 (W.D. Mo. Mar. 16, 2020) .......................... 7

*Smith v. Goodyear Tire & Rubber Co.*,
   495 F.3d 224 (5th Cir. 2007) ................................................................................................. 3

*Specht v. Jensen*,
   853 F.2d 805 (10th Cir. 1988) ............................................................................................. 10

*U.S. v. Tran Trong Cuong*,
   18 F.3d 1132 (4th Cir. 1994) ................................................................................................. 6

*United States v. Hicks*,
   389 F.3d 514 (5th Cir. 2004) ................................................................................................. 5

*Washington v. Armstrong World Industries, Inc.*,
   839 F.2d 1121 (5th Cir. 1988) ............................................................................................... 8

*Wilson v. Woods*,
   163 F.3d 935 (5th Cir. 1999) ................................................................................................. 2

*Wright v. Williamette Indus., Inc.*,
   91 F.3d 1105 (8th Cir. 1996) ................................................................................................. 9

**Statutes**

21 U.S.C. § 321(g) ........................................................................................................... 10

21 U.S.C. § 321(p) ........................................................................................................... 10

21 U.S.C. § 355-1(b) ....................................................................................................... 10

21 U.S.C. § 505(b)(1) ...................................................................................................... 10

**Other Authorities**

21 C.F.R. § 201.57(c)(6) ............................................................................................. 9, 10

21 C.F.R. § 201.57(c)(7) ............................................................................................. 9, 10

Fed. R. Evid. 702(a) ........................................................................................................... 6

## REPLY IN SUPPORT OF MOTION TO EXCLUDE OR LIMIT
## OPINIONS OF DR. DAVID B. ROSS

Plaintiff completely fails to rebut the arguments set forth in Sandoz' Motion regarding Dr. Ross's lack of qualifications, unreliable methodology, and the lack of "fit" in his opinions. Tacitly recognizing this, in her Opposition to Defendant Sandoz's Motion to Exclude Expert Testimony of David B. Ross, M.D., Ph.D, M.B.I. ("Opposition"), Plaintiff limits Dr. Ross's testimony, stating that he is "not offering any opinions on medical or legal causation," and that "his opinions relate to Sandoz's duty to warn and its failure to do so." (*See* Opp. at p. 3). Specifically, Plaintiff offers Dr. Ross to opine on: (1) "the regulatory obligations of drug manufacturers for products approved under Section 505(b)(2) of the Food, Drug, and Cosmetic Act (FDCA)," and (2) "whether Sandoz met those regulatory obligations with respect to the warnings, precautions, and/or adverse even listings in its U.S. docetaxel labels about the risk of permanent chemotherapy induced alopecia (PCIA) at the time its docetaxel was administrated to [Plaintiff] in June 2014." (*See* Opp. at p. 2).

But, as set forth in the Motion, Dr. Ross is neither qualified to render such opinions nor is his methodology sufficient to put such opinions before the jury. Dr. Ross failed to review critical Sandoz regulatory documents in coming to his opinions, and improperly relied on other experts, without independently verifying their conclusions. Moreover, Dr. Ross is not qualified and did not use a reliable methodology in coming to his general causation conclusion, disguised as a regulatory opinion, that there was "reasonable evidence of a causal association" between docetaxel and permanent hair loss.[1] Therefore, this Court should grant the Motion.

---

[1] Plaintiff asserts that Dr. Ross's opinions should be permitted as this "Court previously instructed Sanofi in *Earnest*, '[o]n cross examination, [Sandoz] can make clear to the jury that "reasonable evidence of a causal association" [or "some basis to believe there is a causal relationship"] is distinct from medical or legal causation.'" Opp. at p. 3. But, in context, that quote further illustrates why Dr. Ross's opinions should be excluded. Specifically, the Court first required the proposed expert—who was *not* Dr. Ross—to have "considered the seven factors that the FDA uses in determining whether there is 'reasonable evidence of a causal association'" and also found that the proposed expert was "qualified and used a reliable methodology in forming his opinion." Doc. 8153 at p. 5. As set forth in the Motion and herein, Plaintiff has failed to satisfy its burden that Dr. Ross undertook an appropriate analysis to establish that

1

I.  **PLAINTIFFS FAILS TO ESTABLISH THAT DR. ROSS IS QUALIFIED TO RENDER OPINIONS AND TESTIMONY IN THIS MATTER.**

In the Opposition, Plaintiff's overarching argument is that Dr. Ross is qualified because his "academic training and practical experience fall precisely in the field in which he will testify in this case." (*See* Opp. at p. 6; *see* generally Opp. at pp. 5-8). But evaluating Dr. Ross's training and experience, as set forth in his Expert Report and testimony at his deposition, makes apparent that his testimony should be excluded because he is "not qualified to testify in a particular field or on a given subject.'" *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (citing *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)).

First, Plaintiff asserts, without support, that because Dr. Ross worked at the FDA 15 years ago he is "intimately familiar with the pharmacovigilance responsibilities of drug manufacturers." (*See* Opp. at p. 6). In making this statement, Plaintiff fails to acknowledge Dr. Ross's own testimony that he did not recall "hav[ing] anything to do with any revisions to any regulations pertaining to 505(b)(2)." (*See* Mot. Ex. C (08/27/20 Ross Dep.) at p. 176). Nor did he ever "sign[] off on any 505(b)(2)" while he was at the FDA and could not quantify how much time he spent dealing with 505(b)(2)s as "there were relatively few in that era." (*See* Mot. Ex. C (08/27/20 Ross Dep.) at pp. 191, 193). Further, for the "few" 505(b)(2)s with which he was involved, Dr. Ross admitted that he was never a primary reviewer of an oncology NDA, and was involved only at a "secondary or tertiary level." (*See* Mot. Ex. C (08/27/20 Ross Dep.) at p. 137).

Second, Plaintiff concedes that Dr. Ross "did not recall having been involved in regulatory work specifically on Taxotere, or the labeling of a chemotherapy product with respect to alopecia while at the FDA" and "does not treat permanent alopecia in his patients, nor is involved in the

---

there was "reasonable evidence of a causal association" and Dr. Ross is neither qualified nor used a reliable methodology in forming his opinion.

2

decision making as to his patients who are undergoing chemotherapy," but states that he still is qualified to opine in this case. (*See* Opp. at pp. 7-8). The case law does not support such a statement. Instead, the law is clear that an expert must be qualified to testify as to the subject matter at issue. *See, e.g., Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 226-27 (5th Cir. 2007) (district court properly excluded testimony of a polymer scientist because he was not "a tire expert"); *Cleveland v. United States*, 457 F.3d 397, 406 (5th Cir. 2006) (expert qualified in internal medicine not qualified to testify on "the standard of care for diagnosing congestive heart failure in the emergency room" because there was no evidence that this standard of care was "identical to its diagnosis in the field of internal medicine"). Dr. Ross is not qualified to testify in this litigation, and, accordingly, his testimony should be excluded.

## II.  DR. ROSS'S OPINIONS ARE UNRELIABLE AND SHOULD BE EXCLUDED.

Even if Plaintiff can overcome Dr. Ross's lack of qualification, the Opposition fails to address adequately that his opinions are based on unreliable methodology—including the failure to review the most pertinent documents—and, accordingly, his opinions should be excluded.

### A.  Plaintiff Does Not Deny that Dr. Ross Disregarded Pertinent Information In Order to Reach a Conclusion-Driven Opinion.

In the Opposition, Plaintiff does not deny that Dr. Ross failed to "review certain 'pertinent information,' including Sandoz['s] FDA submissions regarding docetaxel and communications between Sandoz and FDA regarding labeling and docetaxel" but instead argues, without legal support, that this is an issue for cross-examination. (*See* Opp. at pp. 8-9). To be clear, Dr. Ross failed to review the documents for Sandoz' docetaxel that underlie his opinion: (i) Sandoz' NDA submission or supporting documentation; (ii) the FDA approval letter; (iii) any testing or clinical studies by Sandoz; (iv) any FDA correspondence with Sandoz regarding any labeling prior to approval. (*See* Mot. Ex. C (08/27/20 Ross Dep.) at pp. 90, 96, 97, 101). This is not an issue for

3

"cross-examination" but goes directly to the basis and reliability of Dr. Ross's opinions.

Plaintiff also asserts that Dr. Ross failure to consider this "pertinent information" (*See* Opp. at p. 12), is of no concern as this information bears "little, if any relevance to Dr. Ross's opinions about Sandoz's independent obligations and failure to update its docetaxel label." Plaintiff's argues are without merit as Dr. Ross cannot bring forth a supported and reliable opinion without review of sufficient facts or data to support his opinion; the failure to do so renders an expert's opinion unreliable and subject to exclusion. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276-77 (5th Cir. 1998). Further, Plaintiff does not sufficiently explain how Dr. Ross can analyze Sandoz's regulatory compliance, much less whether there was any newly acquired information to require a labeling change, without the pertinent documentation. (*See* Opp. at pp. 11-12).

Plaintiff instead refers to Dr. Ross having relied on "his education, training, knowledge and experience" and performing "a comprehensive review of relevant FDA Guidances, statues, and regulations to assess the obligations of NDA holders" (*See* Opp. at p. 9), but none of this provides any basis for reliability *in this case*. Plaintiff also argues that some of Dr. Ross' sworn testimony related to an "incomplete" reliance list. Dr. Ross's concessions — made under oath regarding materials he failed to review and not corrected in an errata — cannot be fixed with an updated list of materials.  Dr. Ross plainly conceded he had not reviewed FDA submissions and Sandoz documents, including the Sandoz NDA submission and Sandoz communications with the FDA regarding the labeling, and testified they were not important to his review.  (*See* Mot. at pp. 9-12).  Plaintiff cannot escape the fact that Dr. Ross failed to review critical submissions, all of which were necessary to analyze whether there was newly acquired information following approval of Sandoz's NDA.  No expert could determine what "newly acquired" information was provided following approval without reviewing what was provided prior to approval.

Finally, Plaintiff argues that unless there is evidence that "Sandoz proposed, and the FDA disapproved of, labeling that warns of PCIA, the allegedly 'pertinent information' cited by Sandoz bears little, if any relevance to Dr. Ross's opinions about Sandoz's independent obligations and failure to update its docetaxel label." (*See* Opp. at pp. 11, 12). Plaintiff suggests Sandoz has the burden of stating what information was provided to the FDA that Dr. Ross failed to review. But Plaintiff's argument is flawed as it attempts to shift the burden to Sandoz, when it is *the Plaintiff* that must establish Dr. Ross used a reliable methodology in coming to his opinions. *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004) ("[t]he proponent of expert testimony … has the burden of showing that the testimony is reliable.). It was Dr. Ross's obligation to review Sandoz submissions to the FDA and evaluate the information and its bearing on the Sandoz labeling. He failed to do so.[2] In addition, Plaintiff suggests that Dr. Ross cited in his report newly acquired information that required inclusion in the Sandoz labeling. But Dr. Ross does not use the phrase "newly acquired information" a single time in his expert report. Nor did Dr. Ross make any assessment of what information cited in his report was in fact "newly acquired". Without such an analysis, his opinion is meaningless in determining whether that information necessitated a labeling change. Plaintiff further argues that the information supplied by Sandoz to the FDA is immaterial to the labeling. But communications between the FDA and Sandoz are critically important in evaluating the reasonableness of the Sandoz labeling and its compliance with FDA regulations and guidance. Dr. Ross's failure to assess these submissions and communications reflects his flawed and unreliable methodology.

---

[2] Plaintiff's reliance on her Opposition to Sandoz's Motion for Summary Judgment on Preemption Grounds (*See* Opp. at p. 11), is without merit as set forth in Sandoz's Reply in Support of Motion for Summary Judgment on Preemption Grounds, which is herein incorporated and adopted as if fully set forth in this reply.

5

### B. Dr. Ross Relies on Other Experts' Conclusions and Support to an Improper Extent, Including Failing to Verify those Opinions.

Plaintiff concedes that Dr. Ross is not an expert in "epidemiology, biostatistics, pharmacology, or toxicology, and is not providing an expert opinion on these specific topics" and therefore "made his independent regulatory assessment by, in part, reasonably relying on a multi-disciplinary team of experts." (*See* Opp. at p. 12). Plaintiff asserts that Dr. Ross is not "simply parroting" these experts, even though she admits that Dr. Ross "didn't independently verify or seek to reproduce those opinions." (*See* Opp. at pp. 12-13). It is Dr. Ross's failure to "independently verify or seek to reproduce those opinions" that is improper. *Deutz Corp. v. City Light & Power, Inc.*, Case No. 1:05-cv-3113, 2009 WL 2986415 at *6 (N.D. Ga. Mar. 21, 2009) (expert cannot "simply parrot the opinions of other experts" or use another expert's report "as substantive evidence of one of his ultimate conclusions").

And, while it is not unheard of for a regulatory expert to "reasonably rely upon the analysis and conclusions of experts" in other specialties (*See* Opp. at pp. 13-14), the issue here, which Plaintiff does not address in her Opposition, is two-fold. First, each of the expert reports that Dr. Ross relies upon were prepared for the purposes of litigation, and, thus, are inherently unreliable. *See U.S. v. Tran Trong Cuong*, 18 F.3d 1132, 1143 (4th Cir. 1994) (reports specifically prepared for litigation are "by definition" not the type of evidence reasonably relied upon by experts); *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 630 (W.D. Wash. 2011) (Federal Rules of Evidence "do not permit an expert to rely upon opinions developed by another expert for purposes of litigation without independent verification of the underlying expert's work"). Second, Dr. Ross cannot draw reliable causation opinions by copying the opinions of others as his opinions do not constitute the type of "scientific, technical, or other specialized knowledge" that will assist the jury. Fed. R. Evid. 702(a). Dr. Ross stated that he did not "try[] to reproduce what they had done"

6

and thus made no attempt to verify their conclusions. (*See* Mot. Ex. D (08/31/20 Ross Dep.) at pp. 252, 254). Such naked reliance is impermissible. Further, Dr. Ross's own testimony confirms that he "relied on [other experts'] reports and their conclusions," and conceded that he did not rely on Dr. Madigan's report that was prepared for and served in this case, but instead relied on a prior expert report, in a case in which Sandoz is not a party and did not read those expert's depositions. (*See* Mot. Ex. D (08/31/20 Ross Dep.) at pp. 65, 67, 254). It is these concessions that render Dr. Ross's reliance on other experts categorically unreliable as the foundation for any regulatory opinions regarding Sandoz, and specifically whether Sandoz was aware of newly acquired information sufficient to permit a CBE label change.

      **C.**     **Plaintiff Ignores this Court's Prior Ruling to Argue that Dr. Ross Should Be Permitted to Rely on Labeling Requirements Outside the United States.**

Completely ignoring that this Court in *Earnest* granted a motion in limine that "evidence … regarding what any foreign regulatory bodies required" was inadmissible (Dkt. 8201 at p. 5), Plaintiff continues to argue that Dr. Ross should be permitted to testify that "available foreign data and labeling and regulatory documents, including information in regulatory submissions from Sandoz itself, are the type of sources that Sandoz was required to study and be aware of as part of its U.S. pharmacovigilance obligations." (*See* Opp. at p. 15). Further, Plaintiff fails to acknowledge that foreign drug labeling is a product of different regulatory standards and decisions from FDA's and that foreign labeling determinations are not relevant to the FDA regulations and requirements governing labeling changes in the United States. (*See* Mot. Ex. D (08/31/20 Ross Dep.) at p. 383). *Ridings v. Maurice*, No. 15-00020-CV-W-JTM, 2020 WL 1264178 (W.D. Mo. Mar. 16, 2020); *see also Meridia Prods. Liab. Litig. V. Abbot Labs.*, 447 F.3d 861, 867 (6th Cir. 2006).

Plaintiff also does not address that Dr. Ross does not know exactly what information was submitted to the European Union and, important to his conclusion, he did not know if the

7

information that was submitted to the European Union was information that the FDA already had. (*See* Mot. Ex. D (08/31/20 Ross Dep.) at pp. 379-380). Based on Dr. Ross's own testimony, he has no knowledge as to what the FDA knew and can only offer his speculation, which is not appropriate to offer as expert testimony to the jury. *Washington v. Armstrong World Industries, Inc.*, 839 F.2d 1121, 1122–23 (5th Cir. 1988) (trial court did not err by excluding an expert's opinion that was speculative). Therefore, such opinions should be excluded.

### III. PLAINTIFF FAILS TO SUFFICIENTLY REBUT THAT DR. ROSS'S OPINIONS ARE IRRELEVANT AND DO NOT FIT THE CASE.

While Plaintiff asserts that Dr. Ross's opinions are relevant "to the failure to warn claims at issue in this litigation" (*See* Opp. at pp. 16-17), her Opposition fails to address sufficiently the issues raised in the Motion. First, Plaintiff dismisses the fact that her prescribing physician never reviewed the Sandoz labeling, and relied entirely on the Sanofi taxotere labeling, as a non-issue as "Dr. Ross is not opining on case-specific issues." (*See* Opp. at p. 17). But this argument misses the point as all testimony must be relevant to the facts at issue *in this case*. *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 550 (E.D. La. 2015) ("[t]he question here is whether the reasoning or methodology 'fits' the facts of the case and will thereby assist the trier of fact to understand the evidence"). Because Plaintiff's treating physician did not review Sandoz's labeling, Dr. Ross's methodology in reviewing and opining about alleged inadequacies in the Sandoz labeling are not relevant to the case. Second, Plaintiff argues that "Dr. Ross's reliance on internal Sanofi documents and Sanofi foreign labeling are equally unavailing," because "Dr. Ross relies only on documents and information available to Sandoz." (*See* Opp. at p. 17). First, much of the internal Sanofi documents relied on by Dr. Ross, either directly, or indirectly through other experts who relied on those Sanofi documents, are in fact internal Sanofi documents that Sandoz would not have access to. Those documents include the internal Sanofi adverse event database as well as

8

internal Sanofi analyses of whether docetaxel causes permanent hair loss. In Dr. Ross relying on Dr. Madigan and other experts in concluding that Sandoz had "reasonable evidence of a causal association" between docetaxel and permanent hair loss, Dr. Ross is imputing knowledge of Sanofi internal analyses to Sandoz. Sanofi's knowledge as to permanent hair loss is not relevant to Sandoz, and thus his methodology is flawed. Finally, as to Dr. Ross's reliance on Sandoz foreign labeling and core data sheet, Plaintiff again ignores that this Court previously granted a motion in limine in the Barbara Earnest case that Sanofi foreign labeling and foreign regulatory actions were inadmissible. (Dkt. 8201 at p. 5). Plaintiff's silence on this point continues to speak volumes. For these reasons, Dr. Ross's opinions must be excluded for failing to "fit" the Wanda Stewart case.

**IV.  DR. ROSS'S GENERAL CAUSATION OPINIONS WILL MISLEAD AND CONFUSE THE JURY.**

Plaintiff states that "Dr. Ross is not offering any opinions on medical or legal causation" despite his purported opinions as to whether there is "reasonable evidence of a causal association" or "some basis to believe there is a causal relationship" to warrant Sandoz updating its warnings. (*See* Opp. at p. 18). In the Opposition, Plaintiff fails to address that: (i) Dr. Ross is not qualified to render such an opinion as he did not conduct an analysis of this purported relationship, and instead relied on the conclusions of others (*See, e.g.,* Mot. Ex. C. (08/27/20 Ross Dep.) at p. 67); (ii) even if Dr. Ross was qualified to do so, any testimony as to general causation from Dr. Ross would be inappropriate because Dr. Ross has not done a methodologically sound analysis as to "whether a causal relationship underlies a statistically significant association between an agent and a disease" – indeed, he has conducted no causation analysis at all; and (iii) Dr. Ross's causation opinions rely on 21 C.F.R. § 201.57(c)(6) and 21 C.F.R. § 201.57(c)(7), which are not determinative on the issue of general causation as "agencies' threshold of proof is reasonably lower than that appropriate in tort law." *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 198 (5th Cir. 1996) (quoting *Wright v.*

9

*Williamette Indus., Inc.*, 91 F.3d 1105, 1107 (8th Cir. 1996). Accordingly, to allow Dr. Ross to opine as to causation or "reasonable evidence of a causal association" would mislead and confuse the jury as the standard applied in the regulatory setting is different than that of general causation.

## V. DR. ROSS'S LEGAL OPINION TESTIMONY IS NOT HELPFUL.

In an attempt to avoid exclusion of Dr. Ross's legal conclusions and interpretations, Plaintiff frames Dr. Ross's improper legal opinions as "testimony on FDA regulations and Sandoz's compliance with these regulations." (*See* Opp. at p. 18). But, as set forth in the Motion, this is a distinction without a difference. In her Opposition, Plaintiff fails to acknowledge that much of Dr. Ross's Report restates the text of various provisions and asserts said provisions are applicable to § 505(b)(2) NDA holders of docetaxel. *See, e.g.*, Mot. Ex. B (Ross Expert Report) at ¶ 27 (restating the text of 21 C.F.R. § 201.57(c)(6) and 21 C.F.R. § 201.57(c)(7)); ¶ 33 (identifying 21 U.S.C. § 321(g) and 21 U.S.C. § 321(p) as the definitions for "drug" and "new drug"); ¶ 41 (quoting 21 U.S.C. § 505(b)(1) for the requirements for "submitting an NDA to market a drug in the US"); ¶ 45 (quoting 21 U.S.C. § 355-1(b) for the definition of "new safety information"). That is not a "compliance opinion" that requires expert testimony as this Court is capable of reading and applying federal law without an expert, and in fact, Dr. Ross's testimony invades the authority of the Court to do so. *Specht v. Jensen*, 853 F.2d 805, 809-10 (10th Cir. 1988) (emphasis added). Dr. Ross's legal opinions add nothing to the case, and should be excluded.

## CONCLUSION

For all the foregoing reasons, Sandoz respectfully requests that the Court exclude or limit opinions of Dr. Ross as set forth above.

Dated:  December 22, 2020                             Respectfully submitted,

**GREENBERG TAURIG, LLP**

          /s/ *Lori G. Cohen*
Lori G. Cohen
R. Clifton Merrell
Evan C. Holden
Terminus 200
3333 Piedmont Road, N.E., Suite 2500
Atlanta, Georgia 30305
(678) 553-2100
(678) 553-2386 (facsimile)
CohenL@gtlaw.com
MerrellC@gtlaw.com
HoldenE@gtlaw.com

*Attorneys for Sandoz Inc.*

11

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2020, a copy of the foregoing document was served on all counsel of record via CM/ECF.

/s/ *Lori G. Cohen*
Lori G. Cohen