UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>*Wanda Stewart v. Sandoz Inc.*<br>Civil Case No. 2:17-cv-10817 | MDL No. 2740<br><br>Section: N(5)<br><br>JUDGE JANE TRICHE MILAZZO<br><br>MAG. JUDGE NORTH |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE OR LIMIT
<u>OPINIONS OF DR. LINDA D. BOSSERMAN</u>**

**GREENBERG TRAURIG, LLP**
Lori G. Cohen
R. Clifton Merrell
Evan C. Holden
Terminus 200
3333 Piedmont Road, N.E., Suite 2500
Atlanta, Georgia 30305
(678) 553-2100

*Counsel for Defendant Sandoz Inc.*

**TABLE OF CONTENTS**

I. DR. BOSSERMAN'S SPECULATION ABOUT PLAINTIFF'S AND HER ONCOLOGIST'S UNDERSTANDING OF THE DOCETAXEL LABEL AND REACTIONS TO HYPOTHETICAL DIFFERENT LABELING SHOULD BE EXCLUDED. ..................................................................................................3

II. DR. BOSSERMAN MAY NOT PARROT DR. FEIGAL'S GENERAL CAUSATION CONCLUSION AS AN UNSUPPORTED PREDICATE TO HER OWN OPINIONS. ...................................................................................................6

III. DR. BOSSERMAN'S REGULATORY/LABELING OPINIONS ARE INADMISSIBLE. ..................................................................................................8

IV. DR. BOSSERMAN SHOULD BE PRECLUDED FROM TESTIFYING ABOUT ONLINE PREDICTIVE TOOLS NOT USED BY PLAINTIFF'S ONCOLOGIST. ........................................................................................................8

CONCLUSION ................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Barber v. United Airlines, Inc.*,
17 Fed.Appx. 433 (7th Cir. 2001) ................................................................................. 5

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Secs. (USA) L.L.C*,
752 F.3d 82 (1st Cir. 2014) ........................................................................................... 5

*E.E.O.C. v. Freeman*,
778 F.3d 463 (4th Cir. 2015) ........................................................................................ 5

*Fraley v. Am. Cyanamid Co.*,
589 F. Supp. 826 (D. Colo. 1984) ................................................................................ 4

*Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urban Dev.*,
639 F.3d 1078 (D.C.Cir. 2011) ..................................................................................... 5

*Hunt v. McNeil Consumer Healthcare*,
297 F.R.D. 268 (E.D. La. 2014) ................................................................................... 6

*Oliver v. Covidien LP*,
No. CV 19-12377, 2020 WL 3452650 (E.D. La. June 24, 2020) ................................. 5

*Stafford v. Wyeth*,
411 F. Supp. 2d 1318 (W.D. Okla. 2006) ..................................................................... 4

*Stahl v. Novartis Pharm. Corp.*,
283 F.3d 254 (5th Cir. 2002) ........................................................................................ 5

*In re TMI Litig.*,
193 F.3d 613 (3d Cir.1999) .......................................................................................... 6

*Willett v. Baxter Int'l, Inc.*,
929 F.2d 1094 (5th Cir. 1991) ...................................................................................... 5

# REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE OR LIMIT OPINIONS OF DR. LINDA D. BOSSERMAN

Plaintiff's Opposition to Sandoz's Motion to Exclude or Limit Opinions of Linda D. Bosserman, M.D. (the "Opposition" or "Opp.") fails to squarely address the reasons detailed by Sandoz that Dr. Bosserman's opinions should be excluded, and instead obfuscates the issues presented by Sandoz with irrelevant argument and mischaracterization. Throughout the Opposition, Plaintiff misleadingly suggests that Dr. Bosserman will not offer opinions that are clearly laid out in her expert report and/or are necessary predicates to opinions that she will offer.[1]

Most obviously, Dr. Bosserman disclaims offering any case-specific opinions, despite her clear and repeated statements about what Plaintiff's oncologist, Dr. McCanless, could have discussed with Plaintiff if Sandoz's labelling had included different warning information regarding a supposed risk of permanent chemotherapy-induced alopecia (PCIA). Plaintiff's attempts to characterize that testimony as "proper communication of risks and benefits" by a "reasonable oncologist" are unavailing. The only relevant testimony is what Plaintiff's oncologist, Dr. McCanless, would have done with a different warning and, because he is available to testify, Dr. Bosserman's speculative opinions are unnecessary, irrelevant, and risk confusing the jury.

Relatedly, Dr. Bosserman's opinion that "proper communication to the physician would more likely than not have been included in the physician-patient discussion about PCIA" assumes, without analysis, methodology, or support, that Dr. Feigal's general causation conclusion is correct (i.e. that there is a heightened risk of PCIA with docetaxel as opposed to other chemotherapy

---

[1] Notably, however, Plaintiff concedes that Dr. Bosserman will not offer several categories of opinion, including testimony about how Plaintiff's oncologist would have responded to a different hair loss warning, general causation, or regulatory issues. *See* Opp. at pp. 1-2. Plaintiff also failed to oppose Sandoz's request to exclude several categories of opinions Dr. Bosserman has disclaimed, including dermatology or dermatopathology, neuropathy or neurotoxicity, FDA and compliance with FDA regulations, docetaxel as a product, the adequacy of Sandoz's docetaxel label, including what should have been on the label, and/or Sandoz's promotion or sales of docetaxel. *See* Mot. at p. 11. Any opposition is waived and Dr. Bosserman may not offer any opinions in those areas.

1

drugs). In offering her opinions, Dr. Bosserman parrots that conclusion repeatedly, referring to the supposed PCIA risk as "well-known" and "established" and "documented," in a transparent effort to reinforce Dr. Feigal's general causation conclusion to a jury, without subjecting it to further scrutiny or cross-examination. Plaintiff claims she may rely on Dr. Feigal's "increased risk, general causation opinion" in support of her opinion that PCIA should be discussed with docetaxel patients, because "there is no rule… that one expert cannot rely on another's opinion." (*See* Opp. at p. 13). But, Dr. Bosserman's statements are not even supported by Dr. Feigal's analysis; they are completely inappropriate coming from Dr. Bosserman who has no independent basis to offer them. They should be excluded for all the reasons set forth in Sandoz's Motion.

As to other testimony that should be excluded, rather than submit reasoned opposition to Sandoz's arguments, Plaintiff simply assures the Court that Dr. Bosserman is not offering opinions that are clearly contemplated by her Expert Report. Indeed, Plaintiff's Opposition is itself internally contradictory regarding what opinions Dr. Bosserman is offering. In perhaps the most striking example, Plaintiff states that Dr. Bosserman should be permitted to opine about "what information [regarding PCIA] was or was not available at the time of Ms. Stewart's treatment" (*See* Opp. at p. 13) just two pages after claiming that Dr. Bosserman "does not intend to offer testimony about what Sandoz knew or, or when it knew it" (*See* Opp. at p. 11). Again, Plaintiff argues that Dr. Bosserman may rely on Dr. Feigal's "increased risk, general causation opinion" in support of her own statements; but, Dr. Feigal does not offer any opinion about what Sandoz knew about a supposed PCIA risk or even what information was available to Sandoz about that supposed risk and she expressly disclaimed any such opinions in her deposition.

In short, Plaintiff's opposition expends substantial energy trying to reframe Dr. Bosserman's opinions to hide that they are largely unsupported, irrelevant to the actual issues in

2

Ms. Stewart's case, and intended improperly to bolster Dr. Feigal's general causation opinions and Dr. Ross' regulatory opinions to the jury. All of the opinions at issue in Sandoz's Motion should, accordingly, be excluded.

I. **DR. BOSSERMAN'S SPECULATION ABOUT PLAINTIFF'S AND HER ONCOLOGIST'S UNDERSTANDING OF THE DOCETAXEL LABEL AND REACTIONS TO HYPOTHETICAL DIFFERENT LABELING SHOULD BE EXCLUDED.**

Dr. Bosserman's expert report expressly offers the following speculative opinions which she now claims are not case-specific:

- "information concerning the risk of PCIA with the use of Taxotere from the 505(b)(2) Sandoz defendant… would more likely than not have been included in the decision and process of informed consent in a real and substantial way" (*See* Mot. Ex. B (Bosserman Expert Report) at p. 66);

- "[Dr. McCanless] answered with information based on the common understanding that docetaxel risks were for temporary hair loss" (*Id*.);

- "Dr. McCanless was not aware of the PCIA risk associated with docetaxel when he prescribed the TAC regimen for Ms.Stewart" (*Id*. at p. 59);

- "If Dr. McCanless has been informed of the PCIA risk, he could have disclosed that to Ms. Stewart" (*Id*. at p. 62);

- "Both Dr. McCanless and Ms. Stewart after discussions and review of the provided docetaxel handouts believed that any hair loss associated with Taxotere would be temporary" (*Id*.); and,

- "Accurate disclosure of the documented docetaxel PCIA risk… would have allowed for an equally effective systemic therapy regimen choice from the NCCN category 1 and preferred options" (*Id*. at p. 67).

In *Earnest*, this Court stated, "[b]ecause Plaintiff's treating physician . . . is available to testify, Dr. Bosserman will not be allowed to opine on the facts of [Plaintiff's] case." (Doc. 7807 at pp. 4-6). Each of the excerpts above is clearly and directly tied to the facts of Plaintiff's case. Indeed, Dr. Bosserman references Plaintiff and her oncologist by name, discusses their decision-

3

making, and offers speculation as to how that decision making might have changed if Sandoz had communicated different information about a supposed PCIA risk.

In her Opposition, Plaintiff strains to claim that these are not "case specific" opinions, to avoid the impact of the Court's ruling in *Earnest*. Plaintiff is wrong — how Plaintiff and her prescribing oncologist would have reacted to different warning information is plainly case-specific and should be excluded for the same reasons such opinions were excluded in *Earnest*. Her opinions are entirely speculative and will not assist the jury. Mischaracterizing her testimony as general opinions about the "standard of care" for informed consent discussions changes nothing, because expert testimony about how a "reasonable physician" would have responded to a different label is irrelevant. *See Stafford v. Wyeth*, 411 F. Supp. 2d 1318, 1322 (W.D. Okla. 2006) (testimony about what a "reasonable physician" would do is irrelevant to learned intermediary analysis); *Fraley v. Am. Cyanamid Co.*, 589 F. Supp. 826, 828 (D. Colo. 1984) ("The acts of the treating physician, not the average or 'reasonable' physician, are the acts relevant to proximate cause. One must prove what that particular physician would have done").

Here, Plaintiff's efforts to mischaracterize Dr. Bosserman's opinions as general, and not case-specific, is even more disingenuous (but necessary), in light of Dr. Bosserman's selective review of the case-specific record. Sandoz's Motion identifies the relevant first-hand testimony from Dr. McCanless, Ms. Stewart and Ms. Stewart's mother that contradict Dr. Bosserman's speculation and which she ignored in formulating her opinions. *See* Mot. at pp. 7-8 (Dr. McCanless would not have changed warning or recommendation; he continues to give the same warning today); *id*. at p. 9 (Dr. Bosserman chose not to review Wanda Stewart's deposition).

Plaintiff's Opposition ignores Sandoz's arguments regarding this obviously biased approach, suggesting instead that Sandoz is faulting Dr. Bosserman for not considering case-

4

specific information. But that is precisely the point: Dr. Bosserman cannot elect to review only the deposition testimony that is helpful to her predetermined conclusions and then claim that her opinions are not case-specific to avoid the impact of her cherry-picking. *E.E.O.C. v. Freeman*, 778 F.3d 463, 469 (4th Cir. 2015); *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Secs. (USA) L.L.C*, 752 F.3d 82, 92 (1st Cir. 2014); *Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, 639 F.3d 1078, 1086 (D.C.Cir. 2011); *Barber v. United Airlines, Inc.,* 17 Fed. Appx. 433, 437 (7th Cir. 2001). Further, because the jury will hear directly from Dr. McCanless and Ms. Stewart about the treatment decision-making and alternatives, Dr. Bosserman's opinions are irrelevant. *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 266 (5th Cir. 2002) ("the plaintiff must show that this failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury") (citing *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1099 (5th Cir. 1991) ("the plaintiff must show that a proper warning would have changed the decision of the *treating physician*, i.e. that but for the inadequate warning, the treating physician would not have used or prescribed the product") (emphasis added)); *accord Oliver v. Covidien LP*, No. CV 19-12377, 2020 WL 3452650, at *3 (E.D. La. June 24, 2020) (same)

In short, Dr. Bosserman should not be permitted to mislead or confuse the jury with her irrelevant speculation about what could have happened in an alternative universe with a different label when the record evidence shows that Dr. McCanless would not have changed anything in his approach to counseling Ms. Stewart. This Court should exclude all Dr. Bosserman's opinions about what Dr. McCanless and Ms. Stewart understood or might have done or considered, including potential alternative treatments that could have been discussed.

## II. DR. BOSSERMAN MAY NOT PARROT DR. FEIGAL'S GENERAL CAUSATION CONCLUSION AS AN UNSUPPORTED PREDICATE TO HER OWN OPINIONS.

As set forth in Sandoz's Motion and in the passages quoted above, Dr. Bosserman's opinions about informed consent discussions necessarily presume that docetaxel carries a heightened risk of PCIA. Throughout her Expert Report, Dr. Bosserman repeatedly refers to the association between docetaxel and PCIA as "well-known" and "established" (*See* Mot. Ex. B (Bosserman Expert Report) at pp. 44, 46) and intends to opine that Sandoz "failed to timely and accurately warn physicians of the established risk of PCIA." *Id*. at p. 68.

Despite those clear statements that assume a "heightened risk" of PCIA associated with docetaxel, Plaintiff fatuously claims that Dr. Bosserman is not offering a "general causation" opinion. In Plaintiff's formulation, Dr. Bosserman is not *offering* an opinion when she parrots Dr. Feigal's general causation conclusion as though it were accepted fact, so she does not need to support that conclusion with any analysis, methodology, or basis in literature. But her untested repetition of a disputed conclusion is precisely why Dr. Bosserman should not be permitted to offer opinions that necessarily presume general causation is proven: if Dr. Bosserman is permitted to relay to the jury the numerous statements in her Expert Report that presume a heightened risk of PCIA with docetaxel, jurors naturally will assume that heightened risk is proven and Plaintiff will have succeeded in using Dr. Bosserman's testimony to bolster Dr. Feigal's unreliable methodology and conclusions.

Plaintiff's Opposition ignores *Hunt v. McNeil*, in which this Court confirmed that an expert may not blindly rely on the opinions and conclusions of other experts without first testing their reliability and methodology. *Hunt v. McNeil Consumer Healthcare*, 297 F.R.D. 268, 275 (E.D. La. 2014) (citing *In re TMI Litig.*, 193 F.3d 613, 716 (3d Cir.1999). Just like the plaintiff's general causation expert in that case, Dr. Bosserman here has simply adopted another expert's conclusion

6

and inserted it throughout her Expert Report and deposition testimony as a necessary predicate to her own opinion.[2]  Specifically, it is impossible for Dr. Bosserman to opine that Sandoz "failed to timely and accurately warn physicians of the established risk [of PCIA]" or otherwise refer to a "known" or "established" PCIA risk without first adopting Dr. Feigal's conclusion that there is a "known" or "established" risk about which Sandoz could have warned.  And, as confirmed by *Hunt* and the other decisions Plaintiff ignores, an expert may not adopt another expert's conclusions without some independent analysis and assessment.

Here, Dr. Bosserman repeatedly confirmed in her deposition that she has not done any causation analysis or undertaken any effort to verify or test Dr. Feigal's conclusions that are predicate to her own opinions.  (*See* Mot. Ex. C (Bosserman Dep.) at pp. 81-85, 216-217).  It is not enough that she is "clearly aware" of Dr. Feigal's opinions, as Plaintiff urges.  Rather, she must have some independent basis for believing them to be true and correct, particularly where she intends to reiterate that disputed conclusion to the jury.

Plaintiff dismisses Dr. Bosserman's deposition testimony as an effort to "drag Dr. Bosserman into areas outside of her expertise." (*See* Opp. at p. 10).  To the contrary, the testimony confirmed that Dr. Bosserman has no basis to opine that there is a "known" or "established" risk or otherwise offer any opinion that is fundamentally premised on a heightened risk of PCIA associated with docetaxel. Indeed, Dr. Bosserman would not even answer whether she had looked at the underlying articles on which Dr. Feigal based her opinion, repeating her deposition mantra "that is not my area."  *Id*. at pp. 216, 225.  Plaintiff cannot simultaneously maintain that Dr. Bosserman is not affirmatively offering a general causation opinion and, as such, should not be

---

[2] Unlike the expert in *Hunt v. McNeil* and other plaintiff experts in this litigation, Dr. Bosserman does not appear to have plagiarized wholesale passages from Dr. Feigal's report.  Rather, Plaintiff's Opposition concedes that Dr. Bosserman reviewed Dr. Feigal's report in reaching her own opinions and "is clearly aware" of Dr. Feigal's conclusions, so though that is all the foundation required for an expert to opine. (*See* Opp. at p. 10).

7

subject to cross examination on Dr. Feigal's shoddy foundation or unsupportable methodology, while also urging that she be allowed to parrot Dr. Feigal's ultimate conclusion to the jury. Plaintiff cannot have it both ways: the law requires that, if an expert is adopting another expert's rationale, she must first vet that opinion and be able to support it with proper foundation and testable analysis. Dr. Bosserman should be precluded at trial from offering any opinion that presumes a heightened risk of PCIA associated with docetaxel and/or refers to it as "known" or established" or otherwise to suggest that Sandoz failed to warn of a known or established risk.

### III. DR. BOSSERMAN'S REGULATORY/LABELING OPINIONS ARE INADMISSIBLE.

Plaintiff has submitted no substantive opposition to Sandoz's Motion with respect to her regulatory/labeling opinions, other than her conclusory assertion that "she does not intend to offer testimony about what Sandoz knew, or when it knew it." (*See* Opp. at p. 11). As set forth in the Motion and above, however, Dr. Bosserman's Expert Report expressly includes an opinion that "Sandoz failed to timely and accurately warn physicians of the established risk of PCIA." (*See* Mot. Ex. B (Bosserman Expert Report) at p. 68. She also has opined that "the 505(b)(2) manufacturers had not disclosed the well-known risks of PCIA with docetaxel from the Sanofi trial… which led to the European FDA label update." *Id.* at p. 46. Those are inherently regulatory and/or labeling opinions. By failing to oppose Sandoz's Motion on this point, Plaintiff has conceded that Dr. Bosserman should not be permitted to offer such opinions at trial. This Court should formalize that concession.

### IV. DR. BOSSERMAN SHOULD BE PRECLUDED FROM TESTIFYING ABOUT ONLINE PREDICTIVE TOOLS NOT USED BY PLAINTIFF'S ONCOLOGIST.

As Sandoz's motion made clear, and consistent with this Court's ruling in *Earnest* (Doc. 7807 at p. 6), Dr. Bosserman should not be permitted to apply "online predictive tools" as a back door to case-specific opinions about treatment alternatives available to Ms. Stewart's oncologist.

Dr. Bosserman ostensibly intends to discuss those online predictive tools in order to support her opinion that "there were non-docetaxel, category 1, equally effective regimens available to [Plaintiff] and her physician which would have avoided the established PCIA risk of docetaxel." (*See* Mot. Ex. B (Bosserman Expert Report) at pp. 51-55, 61). But, as Plaintiff tacitly concedes in referencing the NCCN Practice Guidelines, that document is what oncologists actually look to for identifying appropriate regimens to treat a patient. There is simply no need to risk confusing the jury by allowing for Dr. Bosserman to discuss online models such as Predict!, which do not list alternative chemotherapy regimens. The only thing Dr. Bosserman's models address is the relative benefit of a third-generation chemotherapy, as opposed to an earlier-generation regimen or no chemotherapy.

In this case, however, both Dr. Bosserman and Sandoz's oncology expert, Dr. Reddy, agree on the relative benefit of a third-generation chemotherapy regimen for a patient like Ms. Stewart and that such a regimen was an important component of her treatment. *Compare*, Mot. Ex. B (Bosserman Expert Report) at pp. 12, 51 and Opp. Ex. B (Reddy Expert Report); *see also*, Mot. Ex. C (Bosserman Dep.) at pp. 125-126 (third generation regimen with a taxane "would give her the best chance of having the least chance of recurrence"). And, while Plaintiff attempts to make an issue of Dr. Reddy's references to the Predict! tool, Dr. Reddy used that tool only to confirm Dr. Bosserman's conclusions as to the significant benefit of a third-generation chemotherapy regimen to a patient with Ms. Stewart's cancer presentation. As was made clear in their respective depositions, Dr. Reddy and Dr. Bosserman agree that such a regimen was a necessary component of Plaintiff's treatment.[3] In short, despite Plaintiff's suggestion to the contrary, the Predict! model

---

[3] Dr. Reddy (and Sandoz's other oncology expert Dr. Foote) each also testified unequivocally that, given Ms. Stewart's unique presentation, medical history, and characteristics, the TAC regimen she received was the optimal third-generation regimen for her treatment and superior to an AC-Taxol alternative. *See* Ex. A (Reddy Dep) at pp. 105-106

offers no insight about *which* third generation chemotherapy regimen was best for Ms. Stewart and Drs. Reddy, McCanless and Bosserman all agree that a third-generation regimen was needed.

Further, Dr. McCanless testified in his deposition about his considerations prior to selecting Ms. Stewart's treatment regimen and he did not consider Predict! or other online tools in making his decision. Likewise, the NCCN Guidelines speak for themselves as to which chemotherapy regimens were supported by Category 1 evidence of safety and efficacy. Accordingly, Dr. Bosserman's testimony about online "predictive" tools should be excluded.

## CONCLUSION

Dr. Bosserman's proffered opinions are largely irrelevant speculation about what could have happened if Sandoz's label had been different at the time of Ms. Stewart's treatment or how a hypothetical reasonable oncologist would have responded to that hypothetical different label. None of that testimony is relevant or helpful for a jury. Instead, it is being offered in a transparent effort to bolster the testimony of Plaintiff's general causation expert, Dr. Feigal, whose conclusions are unsupportable by her flawed methodology. Rather than offer new insight or analysis, Dr. Bosserman simply parrots those conclusions as accepted fact and then, when challenged, disclaims offering them at all. This Court should not allow her to do so and Sandoz respectfully requests that the Court exclude or limit opinions of Dr. Bosserman, as set forth in detail in Sandoz's Motion.

Dated: December 22, 2020                                       Respectfully Submitted:

**GREENBERG TRAURIG, LLP**

/s/ *Lori G. Cohen*
Lori G. Cohen
R. Clifton Merrell
Evan C. Holden
Terminus 200

---

and Opp. Ex. B (Reddy Expert Report) at p. 27; Ex. B (Foote Dep) at pp. 108-109 and Opp. Ex. C (Foote Expert Report) at pp. 22-25.

3333 Piedmont Road, N.E., Suite 2500
Atlanta, Georgia 30305
(678) 553-2100
(678) 553-2386 (facsimile)
CohenL@gtlaw.com
MerrellC@gtlaw.com
HoldenE@gtlaw.com

*Attorneys for Sandoz Inc.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on December 22, 2020, a copy of the foregoing document was served on all counsel of record via CM/ECF.

/s/ *Lori G. Cohen*
Lori G. Cohen