UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>*Wanda Stewart v. Sandoz Inc.*<br>Civil Case No. 2:17-cv-10817 | MDL No. 2740<br><br>Section: N(5)<br><br>JUDGE JANE TRICHE MILAZZO<br><br>MAG. JUDGE NORTH |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE OR LIMIT
<u>OPINIONS OF DR. ELLEN G. FEIGAL</u>**

**GREENBERG TRAURIG, LLP**
Lori G. Cohen
R. Clifton Merrell
Evan C. Holden
Terminus 200
3333 Piedmont Road, N.E., Suite 2500
Atlanta, Georgia 30305
(678) 553-2100

*Counsel for Defendant Sandoz Inc.*

**TABLE OF CONTENTS**

I.   DR. FEIGAL'S *EARNEST* TESTIMONY REVEALED WHY HER GENERAL CAUSATION OPINIONS MUST BE EXCLUDED ........................................................... 1

    A.   Dr. Feigal Completely Fails to Meet Her Burden to *Disprove* Potential Alternative Causes. ..........................................................................................................................2
    B.   Dr. Feigal's Analysis Fails to Satisfy Five Bradford Hill Criteria ..........................3
    C.   Dr. Feigal Utterly Failed to Consider Obvious Potential Alternative Causes Disclosed By Her Own Investigation ......................................................................4

II.  DR. FEIGAL'S SPECULATIVE OPINIONS REGARDING A "KNOWN RISK" AND/OR "AVAILABLE INFORMATION" ARE UNSUPPORTED. ............................. 6

III. DR. FEIGAL'S INFORMED CONSENT AND RISK/BENEFIT OPINIONS ARE SPECULATIVE AND UNSUPPORTABLE. ................................................................... 8

IV.  PLAINTIFF HAS NOT OPPOSED SANDOZ' MOTION AS TO OTHER AREAS OF TESTIMONY DR. FEIGAL HAS DISCLAIMED ................................................... 10

CONCLUSION .................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Bard IVC Filters Prods. Liab. Litig.*,
  MDL No. 15- 2641, 2018 WL 495187 (D. Ariz. Jan. 22, 2018) ................................................8

*Burst v. Shell Oil Co.*,
  2015 WL 3755953 (E.D. La. 2015), *aff'd*, 650 F. App'x 170 (5th Cir. 016) .............................6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 569 (1993) ...................................................................................................................6

*In re Diet Drugs Prods. Liab. Litig.*,
  No. MDL 1203, 2001 WL 454586 (E.D. Pa. Feb. 1, 2001) .......................................................9

*Houston-New Orleans, Inc. v. Page Eng'r Co.*,
  353 F. Supp. 890 (E.D. La. 1972) ..............................................................................................2

*Johnson v. Arkema, Inc.*,
  685 F.3d 452 (5th Cir. 2012) .....................................................................................................9

*Konrick v. Exxon Mobil Corp.*,
  No. 14-cv-524, 2016 WL 439361 (E.D. La. Feb. 4, 2016), *aff'd*, 670 F. App'x
  222 (5th Cir. 2016) .....................................................................................................................6

*Lassiegne v. Taco Bell Corp.*,
  202 F. Supp. 2d 512 (E.D. La. 2002) .........................................................................................6

*Nelson v. Biogen Idec, Inc.*,
  No. 12-cv-7317, 2018 WL 1960441 (D.N.J. Apr. 26, 2018) .....................................................9

*Pipitone v. Biomatrix, Inc.*,
  288 F.3d 239 (5th Cir. 2002) .....................................................................................................2

Plaintiff's Opposition to Sandoz's Motion to Exclude or Limit Opinions of Dr. Ellen G. Feigal ("Opposition" or "Opp.") fails to address the clearly-articulated reasons that Dr. Feigal's general causation opinion should be excluded and, instead, relies on this Court's prior order accepting Dr. Feigal as an expert, while ignoring Dr. Feigal's subsequent admissions that have revealed precisely the reasons this Court should revisit its prior ruling. As to other areas, Plaintiff simply insists that Dr. Feigal is not offering opinions that are clearly laid out in her Expert Report and/or were offered during her deposition. The Court should look past Plaintiff's unsupported arguments and exclude Dr. Feigal's opinions for the reasons set forth in Sandoz's motion.

Most importantly, this Court should exclude Dr. Feigal's general causation opinions because her *Earnest* trial and subsequent deposition testimony revealed fundamental flaws in her general causation analysis that render her application of the Bradford Hill methodology completely unreliable. Indeed, Dr. Feigal's own admissions directly contradict her ability to reach the bottom-line general causation conclusion she seeks to advance, here. Plaintiff's Opposition spends countless pages reciting Dr. Feigal's qualifications and experience with clinical trial design as though that could somehow paper over her hopelessly flawed analytical approach. They fail to do so, and her general causation opinions should be excluded.

**I.  DR. FEIGAL'S *EARNEST* TESTIMONY REVEALED WHY HER GENERAL CAUSATION OPINIONS MUST BE EXCLUDED**

Dr. Feigal has now given testimony before this Court that makes explicit that she <u>cannot</u> satisfy <u>at least five of the nine</u> Bradford Hill criteria in support of her conclusion that docetaxel, <u>to the exclusion of other possible causes</u> is responsible for permanent alopecia in breast cancer patients. Plaintiff's Opposition argues that this Court accepted Dr. Feigal as a general causation expert in the *Earnest* case and, because her Bradford Hill methodology is unchanged, the same result is appropriate here. But, of course, Sandoz is not Sanofi and Dr. Feigal has no basis for her

1

opinions that information that may have been available to Sanofi was available to any other manufacturer. More importantly, Plaintiff's argument ignores the Court's prior concern that "her report was less than clear on the analysis underlying her general causation opinion" (Rec. Doc. 8094 at p. 8), as well as her subsequent testimony which laid bare the critical flaws in Dr. Feigal's application of that methodology to available evidence. Considered in its totality, it is clear that Dr. Feigal's conclusions are unsupported. In light of her testimony and admissions, the Court's prior analysis must be reconsidered. It is one thing for a causation expert to cite a reliable methodology; it is another inquiry entirely whether she has applied it in a reliable and supportable way. Dr. Feigal has failed to satisfy that second, critical, requirement.

    **A.**    **Dr. Feigal Completely Fails to Meet Her Burden to *Disprove* Potential Alternative Causes.**

As a preliminary matter, it is necessary to reiterate the nature of the general causation opinion that Dr. Feigal is offering. Dr. Feigal's opinion is not only that docetaxel is capable of causing permanent chemotherapy induced alopecia (PCIA); it is that docetaxel *alone* is capable of causing that effect and/or that the medical literature and scientific evidence demonstrate a *substantially greater* risk of PCIA with docetaxel than with other breast cancer medications, including those used in Ms. Stewart's treatment. In order to reach such a conclusion, Dr. Feigal should have applied the Bradford Hill methodology to rule out other breast cancer medications (particularly those administered concurrently or in close sequence to docetaxel) as possible causal agents. Indeed, that is her burden under the law. *Houston-New Orleans, Inc. v. Page Eng'r Co.*, 353 F. Supp. 890, 896 (E.D. La. 1972) ("circumstantial evidence [of causation] must exclude other reasonable hypotheses with a fair amount of certainty"); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 n.5 (5th Cir. 2002) ("[T]he plaintiff may prove causation by establishing 'with reasonable certainty that all other alternatives are impossible'"). Dr. Feigal has not even endeavored to do so.

**B.     Dr. Feigal's Analysis Fails to Satisfy Five Bradford Hill Criteria**

As this Court previously acknowledged, important criteria in the Bradford Hill analysis include: (1) temporal relationship, (2) strength of the association, (3) biologic plausibility, (4) specificity of the association, and (5) consideration of alternative explanations. Prior testimony in this litigation, none of which is addressed in Plaintiff's opposition, demonstrates that Dr. Feigal cannot satisfy those criteria, the negation of any one of which should be fatal to her conclusions.

The Bradford Hill criteria of "specificity" requires that the studied effect be *specific* to the exposure to the investigated chemical — i.e., here, that there are no other exposures to which docetaxel patients' alleged persistent hair loss could be attributed. (*See* Ex. A (1965 Hill, AB "The Environment and Disease: Association or Causation") at p. 297).

As this Court is aware and as Dr. Feigal's own Table 2 makes plain, in the TAX316 trial, 16 patients on the FAC arm (patients who received a 5-Fluorouracil-Adriamycin-Cyclophosphamide regimen and not docetaxel) developed permanent alopecia. Dr. Feigal conceded in the *Earnest* trial that either or both of the Cyclophosphamide or Adriamycin could have been the cause of those patients' permanent alopecia. Numerous other studies relied upon by Dr. Feigal similarly recorded permanent alopecia in patients who were never treated with docetaxel and Dr. Feigal has admitted as much. (Ex. B (01/11/19 Feigal Dep.) at 596:21 (anecdotal reports with Adriamycin, AC and AC-Taxol regimens) and Mot. Ex. D (*Earnest* Trial Testimony) at 1231:9-15 (more reports with Adriamycin and Cyclophosphamide if broken out individually) and 1236:16-22). It is simply not possible for Dr. Feigal to conclude that the Bradford Hill criteria of "specificity" is satisfied with respect to docetaxel, when there are numerous other exposures in both Plaintiff's case and in every study patient to whom she refers in her Table 2.

3

Similarly, in Plaintiff's case and in a very substantial number of the plaintiffs treated with a "docetaxel regimen" on Dr. Feigal's Table 2, docetaxel was administered contemporaneously with Adriamycin and cyclophosphamide, as she has conceded. (Mot. Ex. D (*Earnest* Trial Testimony) at 1219:14-24). The "temporality" prong of the Bradford Hill analysis requires that the observed effect follows close in time to the studied exposure. For each of the Table 2 study participants who received a combination regimen, their hair loss followed as closely in time to their exposure to those other drugs as it did their exposure to docetaxel. Again, it is impossible for Dr. Feigal to reliably and scientifically conclude that the "temporality" prong of the Bradford Hill analysis is satisfied as to docetaxel without concluding that it is equally satisfied as to those other medications. Yet, that is precisely what she purports to do.

The same is true of the "biologic plausibility" and "strength of association" criteria. Dr. Feigal cannot identify any basis in fact or logic for concluding that those criteria are satisfied for docetaxel to any greater degree than they are satisfied for the other medications to which the study participants were exposed. (Mot. Ex. D (*Earnest* Trial Testimony) at 1238:1-8). In short, for Dr. Feigal to conclude that these four Bradford Hill criteria are satisfied as to docetaxel, based on the studies in her Table 2, she necessarily needs to recognize that they are satisfied as to Adriamycin, Cyclophosphamide, and the aromatase inhibitors like Letrozole and Anastrozole.

### C. Dr. Feigal Utterly Failed to Consider Obvious Potential Alternative Causes Disclosed By Her Own Investigation

Ultimately, that the four foregoing criteria are equally satisfied for docetaxel and multiple other medications should feed into the final Bradford Hill criteria: consideration of alternatives. As set forth in the Motion, Dr. Feigal testified that the "key legs of the stool" of her causation conclusion were the Table 2 studies, the randomized controlled studies comparing a docetaxel regimen to a non-docetaxel regimen (i.e. TAX316 and GEICAM 9805) and Sanofi's

4

pharmacovigilance database. (Mot. Ex. C (09/01/20 Feigal Dep.) at 160:14-161:13). Despite having evidence of PCIA with other medications, and despite her admissions in *Earnest* that either Adriamycin or cyclophosphamide could be causative, Dr. Feigal did not attempt to review randomized controlled studies comparing hair loss in Adriamycin regimens to non-Adriamycin regimens, or cyclophosphamide regimens to non-cyclophosphamide regimens and she did not review pharmacovigilance data for either drug. (Mot. Ex. C (09/01/20 Feigal Dep.) at 191:22-193:16). Similarly, one study identified in her Table 2 showed virtually identical numbers of reported cases of permanent alopecia after those endocrine therapies as are reported for the taxanes (docetaxel *and paclitaxel*). (*Id.* at 234:22-239:11; *see also* Ex. C (09/01/20 Feigal Dep. Ex. 19)). Dr. Feigal did not do any further investigation to determine whether a causal conclusion could be supported as to the aromatase inhibitors, either.

Dr. Feigal and Plaintiff's counsel repeatedly have insisted, as they do in their Opposition, that no breast cancer treatment or other potential cause "consistently demonstrates a safety signal, as docetaxel does" and that "anecdotal reports with non-docetaxel chemotherapy drugs do not rise to the level of a causal association." (*See* Opp. at p. 14). That is a fundamental component of Dr. Feigal's general causation conclusion. But, it is unsupportable. Dr. Feigal has not done the analysis needed to state whether the evidence supports a causation conclusion as to any other drug, because that was not the question she was asked to investigate. *See* Mot. at pp. 9-10; Mot. Ex. C (09/01/20 Feigal Dep.) at pp. 135-136, 304. She cannot turn a blind eye to evidence that might contradict her conclusion and then proclaim that it does not exist.

Ultimately, Dr. Feigal has no basis for her conclusion that the evidence supporting a causal association with PCIA is *stronger* as to docetaxel, because she has not done an equivalent analysis as to the other medications and has no basis to opine regarding how strong causation evidence is

5

for those drugs. That is precisely the type of "cherry picking" that courts forbid. *Konrick v. Exxon Mobil Corp.*, No. 14-cv-524, 2016 WL 439361, at *13 (E.D. La. Feb. 4, 2016), *aff'd*, 670 F. App'x 222 (5th Cir. 2016); *Burst v. Shell Oil Co.*, 2015 WL 3755953, at *13 (E.D. La. 2015), *aff'd*, 650 F. App'x 170 (5th Cir. 016). Contrary to Plaintiff's arguments in the Opposition, Dr. Feigal's *Earnest* and deposition testimony following the Court's prior ruling revealed with greater clarity that *Konrick* is applicable — Dr. Feigal not only limited the scope of her research, she also failed to conduct an equivalent analysis for potential causes supported by anecdotal evidence warranting further review. That is a failure of her methodology and renders her conclusions unreliable.

In sum, Dr. Feigal may have begun with a reliable methodology, but she has applied it in an unscientific way. Her use of the Bradford Hill methodology neither fits the facts of this case nor acknowledges all the available evidence to which it should have been applied. Her opinions, therefore, are unreliable and should be excluded. *Daubert*, 509 U.S. at 591; *see also Lassiegne v. Taco Bell Corp.*, 202 F. Supp. 2d 512, 515 (E.D. La. 2002) ("The Court must also determine whether the expert's reasoning or methodology 'fits' the facts of the case and whether it will thereby assist the trier of fact to understand the evidence...").

**II.     DR. FEIGAL'S SPECULATIVE OPINIONS REGARDING A "KNOWN RISK" AND/OR "AVAILABLE INFORMATION" ARE UNSUPPORTED.**

Plaintiff's Opposition also attempts to reframe Dr. Feigal's opinions and commentary that PCIA was a "known risk" of docetaxel as part of her opinions on the general standard of care for communicating risk and benefit information. (*See* Opp. at pp. 7-8). But the Opposition acknowledges that her opinions are far broader and "include the evidence available to Sandoz, including what could have been communicated to patients like Ms. Stewart." *Id*. There is a vast gulf between the "general standard of care" testimony that this Court has allowed and Dr. Feigal's

6

totally unsupported musings about what information was "available to Sandoz" or what Sandoz "could have communicated" to Ms. Stewart, through her oncologist. The latter must be excluded.

Dr. Feigal has conceded that she has no basis to opine on what any particular manufacturer "should have or could done" with respect to its docetaxel labeling. (Mot. Ex. C (09/01/20 Feigal Dep.) at pp. 90, 302-304). She has similarly disavowed any opinions about the adequacy of Sandoz's docetaxel labelling. (*Id*. at 89:12-16). More pointedly, Dr. Feigal has expressly disclaimed having any opinion about when Sandoz was aware of a supposed risk of PCIA with docetaxel, deferring to other experts on that question. (*Id*. at 90:19-91:11). She is not aware of any internal Sandoz's document showing its awareness of a supposed risk of PCIA associated with docetaxel and she is not aware whether Sandoz did an analysis of the FAERS database similar to the one she relied upon in testifying about Sanofi's awareness in the *Earnest* case. (*Id*., at 96:10-97:3). Dr. Feigal cannot simply parrot opinions she previously gave as to Sanofi — it is critical to recognize that Sandoz is a different entity, with different information available to it. Dr. Feigal's cookie cutter approach to describing a "known" risk is nonsensical when viewed in that context.

Further, Dr. Feigal has conceded that risk information is communicated to a patient by their prescribing physician who learns that information from the prescribing information (i.e., the label). (*See* Opp. at p. 9). As such, the only way that Sandoz could have communicated a risk would have been by amending its docetaxel label. But, Dr. Feigal has disclaimed any opinion that Sandoz's prescribing information should have been different with respect to persistent alopecia and she has no basis to opine on whether or when Sandoz supposedly was aware of a risk of permanent alopecia and cannot even opine whether Sandoz was aware of a supposed "safety signal" in public databases. Yet, she urges this court to allow her to opine that Sandoz "should" have communicated a "known" risk (i.e., should have amended its labeling). She has no basis for such testimony.

7

## III.  DR. FEIGAL'S INFORMED CONSENT AND RISK/BENEFIT OPINIONS ARE SPECULATIVE AND UNSUPPORTABLE.

Plaintiff's Opposition asks this Court to permit speculative (and, if Dr. Bosserman is not excluded, cumulative) testimony theorizing about how prescribing oncologists might have changed their risk-benefit counseling if Sandoz had added one word (permanent) to over 18,000 words in its docetaxel label.  Plaintiff completely ignores the substance of Sandoz's Motion, which seeks to exclude Dr. Feigal's testimony because she has precisely zero experience prescribing docetaxel or counseling patients on its risks and benefits, and, as such, has no foundation on which she could base any opinion on how those discussions should be modified if the label were different.

Plaintiff concedes that she will be offering Dr. Bosserman as an expert to testify regarding "how dissemination [of risk benefit information] works, generally, in the patient-physician relationship during shared decision-making." (*See* Opp. at p. 11).  They simultaneously want Dr. Feigal to opine that a supposed risk of PCIA should have been included in such discussions, "to allow for more informed decisions."  Neither this Court nor a jury needs to hear from both Drs. Feigal and Bosserman about the "general standard of care" for informed consent discussions or whether a supposed risk of PCIA associated with docetaxel should be included in such a discussion.  The proposed testimony is cumulative and unhelpful.

More importantly, Dr. Feigal has no basis to opine on what should or should not be included in an informed consent discussion with respect to docetaxel.  The record is clear: Dr. Feigal has never prescribed docetaxel to a breast cancer patient and has never counseled a patient on the risks and benefits of docetaxel.  (*See* Mot. at p. 9).  She has no foundation or experience sufficient to testify as an expert with respect to counseling for docetaxel.  *In re Bard IVC Filters Prods. Liab. Litig.*, MDL No. 15- 2641, 2018 WL 495187, at *4 (D. Ariz. Jan. 22, 2018); *Nelson v. Biogen Idec, Inc.*, No. 12-cv-7317, 2018 WL 1960441, at *12-13 (D.N.J. Apr. 26, 2018).

8

Further, Plaintiff's prescribing oncologist, Dr. McCanless, has already testified about the impact a revised or different Sandoz docetaxel label would have had on his discussions with Ms. Stewart: no impact at all. Dr. McCanless testified that a revised Sandoz label would have made no difference, as he would not have reviewed the 505(b)(2) labels. (Ex. D (McCanless Dep.) at 115). He stated that he would not have changed his warnings, recommendations or treatment regimen even if he had known of a permanent hair loss risk, as he "does not make decision on which regimen to give for, you know, whether they have complete hair loss or just partial hair loss." (*Id*. at pp. 105-106). In fact, to this day, Dr. McCanless gives patients consenting to a docetaxel regimen the same warnings he gave to Plaintiff in 2014, despite the label change. (*Id*. at p. 107). As such, there is simply no need for Dr. Feigal to offer her uninformed speculation about how the hypothetical reasonable oncologist might have incorporated revised warning information into the counseling discussion. We know that, in Ms. Stewart's case, nothing would have changed. Dr. Feigal's opinions about docetaxel informed consent counseling and how such discussions would or could have included a discussion of a risk of PCIA should be excluded.

Plaintiff's Opposition also fails to address Sandoz's motion to exclude Dr. Feigal's speculation that "patients have presumptions about which side effects are temporary and which are permanent." (Mot. Ex. C (09/01/20 Feigal Dep.) at p. 261). For all the reasons set forth in the Motion, those opinions are not supported by any methodology, literature, or other basis. They should be excluded. *Johnson v. Arkema, Inc*., 685 F.3d 452, 459 (5th Cir. 2012) ("[t]he reliability prong mandates that expert opinion be grounded in the methods and procedures of science and ... be more than unsupported speculation or subjective belief"). *In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2001 WL 454586, at *18 (E.D. Pa. Feb. 1, 2001) (excluding expert opinion on "whether or not physicians would have prescribed or patients would have taken [the prescription

9

drugs at issue] had certain adverse event information been discussed in the drugs' labeling" because these opinions were "purely speculative and not based on scientific knowledge").

### IV. PLAINTIFF HAS NOT OPPOSED SANDOZ' MOTION AS TO OTHER AREAS OF TESTIMONY DR. FEIGAL HAS DISCLAIMED

Finally, Plaintiff's Opposition fails to address and, as such concedes, Sandoz argument that Dr. Feigal should not be permitted to offer any opinions in the broad subject areas in which she has stated she will not give testimony, including, dermatology, "management of toxicities"; effectiveness of docetaxel; "formulation" and "manufacturing" of Taxotere/docetaxel; compliance with FDA regulation, including "specific FDA interactions with Sandoz"; Sandoz as a company, including whether it was compliant with its own policies and its post-market surveillance; whether "any specific [chemotherapy] regimen is the correct choice or not a correct choice" for a patient; and the adequacy of Sandoz's docetaxel label, including "what should have been on the label."

### CONCLUSION

Dr. Feigal's opinions in this case are neither relevant to the issues in this case nor helpful to a jury in assessing those issue. While this Court previously accepted Dr. Feigal's general causation opinions in the *Earnest* case, her testimony at that trial and in subsequent depositions have revealed her application of the Bradford Hill methodology to be fundamentally flawed and her conclusions unreliable. The remainder of her opinions are irrelevant and speculative and will not assist the jury. They all should be excluded for the reasons set forth here and in greater detail in Sandoz's Motion.

Dated: December 22, 2020                                    Respectfully Submitted:

 

                                                                           **GREENBERG TRAURIG, LLP**

                                                                           /s/ *Lori G. Cohen*
                                                                           Lori G. Cohen
                                                                           R. Clifton Merrell

Evan C. Holden
Terminus 200
3333 Piedmont Road, N.E., Suite 2500
Atlanta, Georgia 30305
(678) 553-2100
(678) 553-2386 (facsimile)
CohenL@gtlaw.com
MerrellC@gtlaw.com
HoldenE@gtlaw.com

*Attorneys for Sandoz Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2020, a copy of the foregoing document was served on all counsel of record via CM/ECF.

/s/ *Lori G. Cohen*
Lori G. Cohen

ACTIVE 54272836v5