# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL No. 2740 |
| | Section: N(5) |
| This Document Relates to: *Wanda Stewart v. Sandoz Inc.* Civil Case No. 2:17-cv-10817 | JUDGE JANE TRICHE MILAZZO MAG. JUDGE NORTH |

## DEFENDANT SANDOZ INC.'S REPLY IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

**GREENBERG TRAURIG, LLP**
Lori G. Cohen
R. Clifton Merrell
Evan C. Holden
Terminus 200
3333 Piedmont Road, N.E., Suite 2500
Atlanta, Georgia 30305
(678) 553-2100

*Counsel for Defendant Sandoz Inc.*

# TABLE OF CONTENTS

ARGUMENT ...................................................................................................................2

    I.      SANDOZ IS ENTITLED TO SUMMARY JUDGMENT BECAUSE
           PLAINTIFF HAS FAILED TO ESTABLISH SPECIFIC CAUSATION
           THROUGH EXPERT TESTIMONY. ..................................................................2

    II.     SANDOZ IS ENTITLED TO SUMMARY JUDGMENT PURSUANT
           TO THE LEARNED INTERMEDIARY DOCTRINE...........................................4

          A.     Sandoz Is Entitled to Summary Judgment Because Plaintiff's
                    Prescriber, Dr. McCanless, Never Read Sandoz' Docetaxel Label.............4

          B.     Sandoz Is Entitled to Summary Judgment Because the Prescribing
                    Decision and Counseling Would Not Have Changed If
                    Dr. McCanless Had Read Sandoz' Label Containing the Additional
                    Warning. ....................................................................................................6

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allgood v. GlaxoSmithKline PLC*,
 CIV.A. 06-3506, 2008 WL 483574 (E.D. La. Feb. 20, 2008), *aff'd sub nom.*
 *Allgood v. SmithKline Beecham Corp.*, 314 F. App'x 701 (5th Cir. 2009) ........................... 10

*Carter v. APP Pharm., LLC*,
 No. CV-10-02573-PHX-ROS, 2013 U.S. Dist. LEXIS 147671 (D. Ariz. July
 29, 2013) ...................................................................................................................... 7

*Fernandez v. Tamko Bldg. Prods.*,
 2 F. Supp. 3d 854 (M.D. La. 2014) ........................................................................... 7

*Fulgenzi v. PLIVA, Inc.*,
 140 F. Supp. 3d 637 (N.D. Ohio 2015) ..................................................................... 5

*Gebhardt v. Mentor Corp.*,
 191 F.R.D. 180 (D. Ariz. 1999) ................................................................................ 7

*Gomez v. St. Jude Med. Daig Div. Inc.*,
 442 F.3d 919 (5th Cir. 2006) ..................................................................................... 6

*Houston-New Orleans, Inc. v. Page Eng'r Co.*,
 353 F. Supp. 890 (E.D. La. 1972) ............................................................................. 6

*Pipitone v. Biomatrix, Inc.*,
 288 F.3d 239 (5th Cir. 2002) ..................................................................................... 4

*Pride Transp. v. Cont'l Cas. Co.*,
 511 F. App'x 347 (5th Cir. 2013) .............................................................................. 9

*In re Taxotere (Docetaxel) Products Liab. Litig.*,
 2019 WL 2995897 (E.D. La. July 9, 2019) ........................................................... 8, 9

**Statutes**

Louisiana Products Liability Act, LA Rev Stat § 9:2800.51 ............................................... 1, 2

Plaintiff's Opposition to Sandoz' Motion for Summary Judgment on Specific Causation and Learned Intermediary Grounds (the "Opposition") fails to address the grounds for Sandoz' Motion for Summary Judgment (the "Motion"). First, nothing in the Opposition cures the complete lack of admissible expert opinion that Plaintiff suffers from permanent hair loss caused by Sandoz' docetaxel.[1] The record is replete with causes other than docetaxel for Ms. Stewart's hair loss, and her sole expert, Dr. Rosic, utterly fails to support specific causation with her flimsy analysis.

Moreover, Plaintiff's failure to warn claim under the Louisiana Products Liability Act ("LPLA") (her only cause of action)[2] can be dismissed for failing to meet her burden that any alleged failure to warn caused her injury under the learned intermediary doctrine. Plaintiff's claim fails on two independent grounds: First, Plaintiff's prescribing physician Dr. McCanless ***never read the Sandoz docetaxel labeling***. Thus, Plaintiff cannot meet the requisite element that any alleged failure to warn caused her injury, because any different warning would not have been seen by her prescribing physician and impacted the prescribing decision or any counseling. Plaintiff misleadingly quotes Dr. McCanless and invents her own testimony on his behalf: "I'm sure I've looked at **[the Sandoz docetaxel label]** at one point." (Mot. Ex. L (McCanless Dep.) at 114:20-115:3) (emphasis added). While part of this quote is accurate, Plaintiff has completely misrepresented Dr. McCanless's testimony by improperly replacing "it" with "Sandoz docetaxel label." Dr. McCanless did not testify that he read the Sandoz docetaxel label, and in fact, to avoid any confusion, counsel for Sandoz on re-direct within a few questions confirmed Dr. McCanless

---

[1] Plaintiff opens her Opposition curiously arguing that her burden to prove that docetaxel caused her alleged injury of permanent hair loss is somehow intertwined with Sandoz proving that docetaxel solely caused her to be cancer free. Sandoz has no burden in proving the obvious life-saving efficacy of docetaxel, but Ms. Stewart does bear the burden of proving Sandoz caused her injury, which she has not met.

[2] Plaintiff concedes in her Opposition that her only remaining claim is inadequate warning under the LPLA. On December 7, 2020, Plaintiff sought leave to amend her complaint to include this single inadequate warning claim under the LPLA. (Doc. No. 11600; Doc. No. 11600-14).

had not read the Sandoz labeling, and instead relied entirely on the Sanofi Taxotere labeling.

Second, Plaintiff cites speculative testimony as to what Dr. McCanless might have advised Ms. Stewart regarding permanent hair loss and how she might have asked for an alternative chemotherapy regimen if Dr. McCanless had provided different counseling as to permanent hair loss. Plaintiff also improperly attempts to supplement this speculative testimony with Dr. Bosserman's speculative "expert" testimony as to what a "reasonable prescriber" would counsel a patient had one word ("permanent") been added to the over 18,000 words of the 59-page labeling for docetaxel. But ultimately this speculation is unnecessary and not germane to the Motion because Dr. McCanless unequivocally testified what his prescribing counseling actually is today, and that it has not changed with respect to hair loss since the labeling changed. Put simply, Plaintiff offers no evidence that demonstrates the existence of an issue of material fact as to her singular remaining claim for inadequate warning under the LPLA.

## ARGUMENT

I.  **SANDOZ IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF HAS FAILED TO ESTABLISH SPECIFIC CAUSATION THROUGH EXPERT TESTIMONY.**

Rather than meaningfully engage with Sandoz' arguments as to specific causation, Plaintiff simply adopts and incorporates by reference her opposition to Sandoz' Motion to Exclude the Opinions and Testimony of Dr. Rosic. (Opp. at 4-6).[3] Plaintiff also provides the following "summary" that comprises the whole of her specific causation opposition:

> Dr. Rosic herself clinically examined Ms. Stewart on February 28, 2020. During this examination, Dr. Rosic obtained a clinical and family history, examined Ms. Stewart's scalp with a dermatoscope, performed a pull test, and took two biopsies of her scalp for analysis. Dr. Rosic then created pathology slides for analysis using traditional H&E staining. Dr. Rosic performed a differential

---

[3] Sandoz maintains that it is entitled to judgment as a matter of law if this Court excludes Dr. Rosic's opinions and testimony in full. To that end, Sandoz adopts and incorporates by reference as though fully set forth herein its Reply in Support of Motion to Exclude the Opinions and Testimony of Dr. Rosic.

diagnosis from that pathology. Dr. Rosic utilized all relevant standards for medical diagnostic work to reach her opinions.

(Opp. at 5-6) (footnotes omitted). Of course, Plaintiff's argument ignores—and fails to create a genuine factual issue—that Dr. Rosic's "Dermatology Surgical Report" from her examination did ***not*** include a differential diagnosis, but stated that the biopsies showed "characteristics of persistent chemotherapy-induced alopecia" as well as "a minor component of scarring alopecia that is consistent with *central centrifugal scarring alopecia*" ("CCCA"). (SUMF ¶ 22, and Mot. Ex. G (08/29/20 Rosic Dep.) at 147) (emphasis added). Nor does Plaintiff's Opposition contend with the fact that PCIA is not a scarring alopecia, or that Dr. Rosic's review of the medical records and depositions in this case was woefully inadequate. (Mot. At 10-14).[4] Perhaps most importantly, however: by ignoring the arguments in the Motion, Plaintiff has failed to establish through her sole unreliable case-specific expert that Plaintiff has PCIA ***and*** that her PCIA was caused by docetaxel.

The Court is thus presented with several undisputed material facts that entitle Sandoz to summary judgment as to specific causation. While Sandoz will not reproduce its Motion here, it is worth highlighting—against Plaintiff's barebones argument—that Dr. Rosic admitted that Plaintiff has CCCA, which is *not* caused by chemotherapy, but was unable to assign a percentage of Plaintiff's hair loss to CCCA. (SUMF ¶ 16, and Mot. Ex. G (08/29/20 Rosic Dep.) at 347:16–23, 351:12–25, 303:24–306:24). And although Dr. Rosic conceded that Plaintiff had other chemotherapy medications in her treatment regimen, Dr. Rosic testified that she was only able to exclude other drugs as the cause of Plaintiff's alleged PCIA was "[b]ased on [her] review of the literature"—and nothing else. (SUMF ¶ 17, and Mot. Ex. G (08/29/20 Rosic Dep.) at 301:11–

---

[4] While quibbling with terms used in Sandoz' labeling—i.e., "alopecia" versus "permanent alopecia" (Opp. at 1)—it is curious that Plaintiff ignores (Opp. at 1, 5-6) that her own specific causation expert opined that "alopecia" means "[a]ny type of hair loss," encompassing "every single possible kind," including "permanent, persistent, temporary." (Mot. Ex. G (08/29/20 Rosic Dep.) at 250:5-17).

303:18, 311:4–312:19). Plaintiff's Opposition, fails to establish a genuine issue of material fact that *all other causation alternatives are "impossible"* to a reasonable certainty. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 n.5 (5th Cir. 2002). As set forth in the Motion (Motion at 9-14), Dr. Rosic's testimony establishes, on its face, that *Plaintiff's evidence* of causation is rife with alternative causes *that cannot be excluded*. Plaintiff has failed to bring forth reliable expert testimony to support her specific causation burden.

## II.     SANDOZ IS ENTITLED TO SUMMARY JUDGMENT PURSUANT TO THE LEARNED INTERMEDIARY DOCTRINE.

### A.     Sandoz Is Entitled to Summary Judgment Because Plaintiff's Prescriber, Dr. McCanless, Never Read Sandoz' Docetaxel Label.

As set forth in the Motion (Mot. at 15-19), Plaintiff's failure to warn claim fails because the content of Sandoz' label was not a "producing cause" of the Plaintiff's injuries. Sandoz described how Plaintiff's prescribing oncologist, Dr. McCanless, testified that he read Sanofi's label for Taxotere, but never read *Sandoz' label for docetaxel*, before treating Plaintiff. (Mot. at 17-18 (citing SUMF ¶ 29, and Mot. Ex. L (McCanless Dep.) at 50:12–25)). Faced with this testimony, in a desperate attempt to avoid summary judgment, Plaintiff takes Dr. McCanless's words out of context and actually improperly *adds* words in brackets to falsely suggest that he read Sandoz' docetaxel label: "I'm sure I've looked at **[the Sandoz docetaxel label]** at point." (Mot. Ex. L (McCanless Dep.) at 114:20-115:3; Opposition at 12-13) (Plaintiff's alteration; emphasis added)). Dr. McCanless's full testimony clearly shows he was referring to the Sanofi label for *Taxotere*, not Sandoz' label. (SUMF ¶ 29, and Mot. Ex. L (McCanless Dep.) at 115:2-3):

> Q: And I believe you testified to this earlier, I could be mistaken, but you haven't seen the label for the docetaxel that's manufactured by Sandoz?
> A: The –
> Q: The drug label.
> A: You mean the drug pamphlet?
> Q: Correct, with the warnings and all that.
> A: I mean, I'm sure I've looked at it at one point. I haven't recently reviewed it.

(Mot. Ex. L. (McCanless Dep.) at 114:20-115:3). Dr. McCanless was not testifying regarding reviewing the Sandoz label, and to clarify, after counsel for Plaintiff completed his examination, on re-direct Dr. McCanless confirmed he was not referencing the Sandoz label in his testimony:

> Q: I'm not sure the question was clear, so let me ask you again. You've seen and reviewed the label for Taxotere, correct?
> A: Yeah, in the past. I'm not sure when.
> **Q: But Taxotere itself, the brand label drug taxotere is the label you reviewed?**
> **A: Yes.**
> Q: And docetaxel is the generic form made by a different company, my client Sandoz.
> A: Okay.
> Q. And what Counsel was asking and what I asked you previously is, **since you've reviewed the label of Taxotere, have you also reviewed the generic label for docetaxel?** I believe you said no this morning.
> A. **No.** I didn't know there would be a difference between the two.
> Q. Okay. And **so your testimony is clear,** . . . **you have not gone back and looked at *docetaxel*, you've relied on *Taxotere's* label?**
> A. **Yes.**

(SUMF ¶ 29, and Mot. Ex. L (McCanless Dep.) at 115:25–116:23) (emphasis added).

This testimony—in which Dr. McCanless clarified that he never saw the *docetaxel* label at any point, and was referring to the *Taxotere* label in the line of questioning upon which Plaintiff relies—demonstrates that there is no genuine issue of material fact that Dr. McCanless did not read Sandoz's label for docetaxel. (Mot. At 15-19). *See Fulgenzi v. PLIVA, Inc.*, 140 F. Supp. 3d 637, 651-52 (N.D. Ohio 2015) (the fact that the physicians read the brand manufacturer's package insert did not change the outcome, because, "at the end of the day, what matters is that the physicians did not read or rely on [the generic-manufacturer defendant's] insert").

Plaintiff next argues that "even assuming, *arguendo*, that Dr. McCanless never read the Sandoz docetaxel labeling, he would have been informed of a label update for permanent alopecia through other means," as "Dr. McCanless testified that he subscribes to UpToDate" and "Plaintiff's oncology expert, Dr. Linda Bosserman, testified that UpToDate now clearly calls out docetaxel for its increased risk of permanent alopecia." (Opp. At 13). Plaintiff's argument is

unavailing. Dr. McCanless's own testimony indicates that he was monitoring updates to the Sanofi *Taxotere* label only, using his facility's EMR system. (Mot. Ex. L (McCanless Dep.) at 115:5–9 (testifying that "when we write the drugs that comes in our EMR, it gives a warning about the -- I guess the new with alcohol induced -- warning them about alcohol in Taxotere. But that's the only warning I saw that was new that popped up in our EMR")). Further, Dr. McCanless clearly testified that he has "relied on *Taxotere's* label" exclusively in practice. (*Id.* at 116:20–23) (emphasis added). Moreover, information on UpToDate has no relation to Sandoz and Plaintiff has not established that UpToDate has the Sandoz docetaxel labeling available or that Dr. McCanless has ever reviewed the Sandoz labeling on UpToDate.

Therefore, any notifications or information sent to physicians regarding *docetaxel*—from any source—would not have been something Dr. McCanless reviewed prior to prescribing treatment to Plaintiff. Furthermore, such a speculative conclusion that Dr. McCanless would have seen the labeling through another source is inconsistent with the case law cited in the Motion where numerous courts have granted summary judgment where the physician never reviewed the labeling. (Mot. at p. 16 & n.13). Plaintiff does not cite a single case suggesting that the availability of an alternative source for a label, such as UpToDate that was never read by the prescriber can provide the causal link necessary to prove a failure to warn case. Causation may not be established through speculation, *see, e.g., Houston-New Orleans, Inc. v. Page Eng'r Co.*, 353 F. Supp. 890, 896 (E.D. La. 1972); *Gomez v. St. Jude Med. Daig Div. Inc.*, 442 F.3d 919, 936 (5th Cir. 2006).

**B.  Sandoz Is Entitled to Summary Judgment Because the Prescribing Decision and Counseling Would Not Have Changed If Dr. McCanless Had Read Sandoz' Label Containing the Additional Warning.**

Sandoz argued in the Motion that even if Dr. McCanless *had* read the docetaxel label containing the warning language proposed by Plaintiff, Dr. McCanless would not have changed his prescribing decision or his warnings/counseling to patients. (Mot. at 19-25). In the Opposition,

Plaintiff first seeks the "benefit of the heeding presumption under Louisiana law." (Opp. at 14-15). Although the heeding presumption generally presumes that any alternative "adequate" warning would have been heeded by the end-user—here, Dr. McCanless—the presumption is rebuttable. *See Fernandez v. Tamko Bldg. Prods.*, 2 F. Supp. 3d 854, 863 (M.D. La. 2014). First, the heeding presumption is rebutted where the doctor, as here, fails to read the labeling. *Gebhardt v. Mentor Corp.*, 191 F.R.D. 180, 184 (D. Ariz. 1999) (granting summary judgment as to failure to warn and finding heeding presumption would be rebutted where doctor did not review package insert); *Carter v. APP Pharm., LLC*, No. CV-10-02573-PHX-ROS, 2013 U.S. Dist. LEXIS 147671, at *25-26 (D. Ariz. July 29, 2013) ("Defendants have rebutted the [heeding] presumption. Plaintiff's physicians as discussed above did not read the B. Braun label that accompanied the heparin flush product."). Second, Dr. McCanless further firmly rebutted this presumption when he testified that he would have recommended treatment with the docetaxel regimen even if he ***had*** been warned of the risk of permanent hair loss in the docetaxel labeling, because the docetaxel regimen was needed for Plaintiff's aggressive cancer, provided the best shot at survival, and there were no suitable alternatives to docetaxel. (SUMF ¶ 31, 33, and Mot. Ex. L. (McCanless Dep.) at 120:8–13, 26:6–16; 117:9–118:17 (further explaining why Taxotere/docetaxel was the best, most effective option for the chemotherapy regimen used to treat Plaintiff); *id.*, at 120:15–17 (testifying that he still prescribes Taxotere/docetaxel to this day due to its efficacy)).

This presumption has also been rebutted because Dr. McCanless testified that he still gives the same warning and counseling regarding hair loss today; ***his counseling practices did not change after the 2015-16 labeling changes made by Sanofi and Sandoz***:

> Q: If you had known about the risk of permanent hair loss, would you have warned Ms. Stewart about that?
> A: I mean, no. ***At this point, we still do the same warning*** I talk to my nurse practitioners about. You know, everybody is different. I mean, we don't really make

> decisions on which regimen to give for, you know, whether they have complete hair loss or just partial hair loss.

(SUMF ¶ 37, and Mot. Ex. L (McCanless Dep.) at 107:3–10, 113:20–114:1; *see also* SUMF ¶ 34-36, and Mot. Ex. L (McCanless Dep.) at 55:16–24; 55:16–24, 56:18–22; 106:4–13 (testifying "we discuss hair loss and just discuss that everybody is different with the amount that comes back and there's different factors," and "I don't counsel patients on complete hair loss. I mean, I say it's different on every patient and that there's no guarantee that it won't look the same as it did when she first started.")). Because additional warnings by Sandoz would not have changed Dr. McCanless's prescribing decision and counseling of Plaintiff, Plaintiff cannot avail herself of the "heeding presumption." Thus, any testimony from the Plaintiff about what she would have done had she been told of a risk of permanent alopecia is irrelevant, because Dr. McCanless never would have provided that information to her even with the warnings as they are written today. Accordingly, summary judgment is appropriate.

For this same reason, Plaintiff's argument that this case is similar to *Mills*, *Earnest*, and *Francis*—and thus inappropriate for summary judgment—is unavailing. (Opp. at 12, 17). *See In re Taxotere (Docetaxel) Products Liab. Litig.*, 2019 WL 2995897, at *7-9 (E.D. La. July 9, 2019). Unlike in *Mills* and *Francis*, here, there is no evidence to support a finding that any information Dr. McCanless received through literature or other sources regarding the risk of permanent hair loss would have changed his counseling practices; to the contrary, Dr. McCanless affirmatively testified that any such information would *not* have impacted his prescribing decision and counseling practices with respect to Plaintiff. (Mot. at 19-25; SUMF ¶ 37; Mot. Ex. L (McCanless Dep.) at 107:3–10, 113:20–114:1). [5] While Plaintiff may desire the same result reached in *Mills*,

---

[5] Further, unlike in *Francis*, there is no testimony that Dr. McCanless was even monitoring the literature or other sources of drug information; thus, any argument that Dr. McCanless would have learned about a label update through other sources is speculative. *Cf.* 2019 WL 2995897, at *9-10. Indeed, as abovementioned,

*Earnest*, and *Francis*, the fact remains that (i) Dr. McCanless did not read Sandoz' labeling (SUMF ¶ 29; Mot. Ex. L (McCanless Dep.) at 50:12–25).; (ii) Dr. McCanless has not changed how he counsels his patients since Sandoz changed its labeling (SUMF ¶ 37; Mot. Ex. L (McCanless Dep.) at 107:3–10, 113:20–114:1; SUMF ¶ 36; Mot, Ex. L (McCanless Dep.) at 56:18–22; *see also id.*, at 106:4–13); and (iii) Plaintiff testified that she would have followed whatever Dr. McCanless recommended if it meant saving her life (SUMF ¶ 39-40, Mot. Ex. B (Stewart Dep.) at 48:10–16; 296:1–6). Thus, this case is readily distinguishable.

Plaintiff's arguments concerning other chemotherapy options is similarly divorced from the actual evidence in this case (Opp. at 10-12), and speculation is not enough to survive summary judgment. *Pride Transp. v. Cont'l Cas. Co.*, 511 F. App'x 347, 354 (5th Cir. 2013). While it is true that there were other chemotherapy regimens indicated under the NCCN guidelines that do not include docetaxel (*see* Mot. Ex. L. (McCanless Dep.) at 108:22–111:8), there is no evidence that any of those regimens were appropriate in this case, given the aggressive and advanced nature of Plaintiff's cancer and her need for quick treatment. (*See, e.g.,* SUMF ¶ 31; Mot. Ex. L. (McCanless Dep.) at 120:8–13, 26:6–16; *see also* SUMF ¶ 33; Mot. Ex. L (McCanless Dep.) at 117:9–118:17 (further explaining why Taxotere/docetaxel was the best, most effective option for the chemotherapy); *id.*, at 120:15–17 (testifying that he still prescribes Taxotere/docetaxel to this day due to its efficacy); *id.*, at 111:10–24 (testifying as to why he picked the TAC treatment, because

Dr. McCanless's testimony indicates that he was monitoring updates to the *Taxotere* label only, using his facility's EMR system. (*See* McCanless Dep., 115:5–9). Finally, Plaintiff's argument that this case is similar to *Earnest* is also unavailing. In *Earnest*, Dr. Carinder testified there was a "viable alternative to Taxotere" (paclitaxel) and both options had "equivocal efficacy," such that it was for the jury to decide whether plaintiff and Dr. Carinder "would have decided on a Taxotere regimen regardless of the risk of permanent alopecia." 2019 WL 2995897, at *9. *See id.* Unlike Dr. Carinder who testified he "tended to choose" docetaxel over paclitaxel (suggesting they were equally efficacious but had different complications), *see id.*, Dr. McCanless *definitively* testified that the TAC regimen he chose for Plaintiff was the best, most effective option in treating her aggressive cancer—not that there were suitable alternatives. (SUMF ¶ 31, 33; Mot. Ex. L (McCanless Dep.) at 120:8–13, 26:6–16; 117:9–118:17; *id.*, 120:15–17).

"she needed treatment quicker than I could get with just a taxol, weekly taxol-based therapy")).

Faced with this evidence, Plaintiff takes the untenable position that this Court should ignore Dr. McCanless's clear and reliable testimony in favor of the "objective" interpretation of her expert, Dr. Bosserman, about what Dr. McCanless should have done if one word had been added to the over 18,000 words in the docetaxel labeling. (Opp. at pp. 16-17). Plaintiff bases this entire argument on a brazen misrepresentation of a single case. Specifically, Plaintiff inappropriately relies on *Allgood v. GlaxoSmithKline PLC*, CIV.A. 06-3506, 2008 WL 483574, at *6 n.6 (E.D. La. Feb. 20, 2008), *aff'd sub nom. Allgood v. SmithKline Beecham Corp.*, 314 F. App'x 701 (5th Cir. 2009). (Opp. at 15-16). Plaintiff cites to *Allgood* for the proposition that "*under Louisiana law*, subjective testimony from the treating physician on causation may be 'supplement[ed] . . . with objective evidence of how a reasonable physician would have responded to an adequate warning.'" (Opp. at 15-16) (emphasis added). This misrepresents the quoted language from *Allgood*, from a footnote that applied *Mississippi* law after stating the general, well-accepted rule that "cases governed by the learned-intermediary doctrine often turn on the testimony of the prescribing physician." 2008 WL 483574, at *6 n.6. Sandoz has been unable to locate a Louisiana case that has applied this principle from *Allgood*. Furthermore, what a reasonable prescriber would have done is irrelevant when we know the prescriber practices have not changed today.

Ultimately, regardless of whether Plaintiff had actual knowledge of or was informed of the risk of permanent hair loss by her oncology nurse, Plaintiff testified *unequivocally* that she would have proceeded with whatever regimen Dr. McCanless recommended if it meant saving her life (SUMF ¶ 39-40; Mot. Ex. B (Stewart Dep.) at 48:10–16; 296:1–6)—and there is *no evidence* to support Plaintiff's assertion that she would have *denied* the treatment recommended by Dr. McCanless in favor of *a less effective option* that did not carry the same risks of alopecia.

10

Dated: December 22, 2020                    Respectfully submitted,

                                            **GREENBERG TRAURIG, LLP**

                                            /s/ Lori G. Cohen
                                            Lori G. Cohen
                                            R. Clifton Merrell
                                            Evan C. Holden
                                            Terminus 200
                                            3333 Piedmont Road, N.E., Suite 2500
                                            Atlanta, Georgia 30305
                                            (678) 553-2100
                                            (678) 553-2386 (facsimile)
                                            CohenL@gtlaw.com
                                            MerrellC@gtlaw.com
                                            HoldenE@gtlaw.com

                                            *Attorneys for Sandoz Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 22, 2020, a copy of the foregoing document was served on all counsel of record via CM/ECF.

/s/ Lori G. Cohen
Lori G. Cohen