# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
December 2, 2020
Lyle W. Cayce
Clerk

No. 19-30631

---

IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY
LITIGATION

---

JULIE CLARK,

*Plaintiff—Appellant*,

*versus*

SANOFI-AVENTIS, U.S., L.L.C.; SANOFI U.S. SERVICES,
INCORPORATED, *formerly known as* SANOFI-AVENTIS U.S.,
INCORPORATED

*Defendants—Appellees*,

---

RENEE JEFFERS,

*Plaintiff—Appellant*,

*versus*

SANOFI-AVENTIS, U.S., L.L.C.; SANOFI U.S. SERVICES,
INCORPORATED, *formerly known as* SANOFI-AVENTIS U.S.,
INCORPORATED,

*Defendants—Appellees*,

_____

Carriene Nevin,

*Plaintiff—Appellant*,

*versus*

Sanofi-Aventis, U.S., L.L.C.; Sanofi U.S. Services, Incorporated, *formerly known as* Sanofi-Aventis U.S., Incorporated; Accord Healthcare, Incorporated; Hospira, Incorporated; Hospira Worldwide, L.L.C., *formerly known as* Hospira Worldwide, Incorporated; McKesson Corporation, *formerly known as* McKesson Packaging; Sandoz, Incorporated; Sun Pharma Global FZE; Sun Pharmaceutical Industries, Incorporated, *formerly known as* Caraco Pharmaceutical Laboratories, Limited; Pfizer, Incorporated; Actavis Pharma, Incorporated; Actavis, L.L.C., *formerly known as* Actavis, Incorporated,

*Defendants—Appellees*,

_____

Deborah Purnell,

*Plaintiff—Appellant,*

*versus*

Sandoz, Incorporated,

*Defendant—Appellee.*

No. 19-30631

---

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:16-MD-2740, 2:18-CV-7024

---

Before CLEMENT, HO, and DUNCAN, *Circuit Judges*.

PER CURIAM:[*]

Julie Clark, Renee Jeffers, Carriene Nevin, and Deborah Purnell (collectively, "plaintiffs") sued defendants alleging they suffered permanent hair loss as a result of taking defendants' prescription chemotherapy drugs. The district court dismissed their suits for failure to comply with case management orders and denied their motions to reconsider. Clark, Jeffers, and Purnell appeal only the denial of their motions, while Nevin appeals both the dismissal of her suit and the denial of her motion. We AFFIRM.

## I.

Plaintiffs' appeal arises out of multidistrict litigation pending in the Eastern District of Louisiana. Defendants manufacture, sell, distribute, or hold regulatory approval for certain prescription chemotherapy medications that are commonly used to treat breast cancer patients, specifically Taxotere, the brand-name drug, and/or docetaxel, the generic. Plaintiffs claim that defendants knew these drugs cause permanent hair loss and failed to warn patients of that side effect. In October 2016, the Judicial Panel on Multidistrict Litigation centralized numerous actions involving these claims and transferred them to the Eastern District of Louisiana. *In re Taxotere*

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 19-30631

*(Docetaxel) Prods. Liab. Litig.*, 220 F. Supp. 3d 1360, 1361 (J.P.M.L. 2016). More than 12,000 actions were pending in this MDL as of October 2020.[1]

After transfer to the Eastern District, the district court issued a series of pretrial orders to manage filing of claims and discovery. As relevant here, Amended Pretrial Order ("PTO") No. 22 directed each plaintiff to complete and serve upon defendants a Plaintiff Fact Sheet ("PFS") and medical release authorizations within seventy-five days of the date her case was docketed in the MDL. Among other things, the PFS asked each plaintiff to identify which drug she had been prescribed, provide records demonstrating her use of the drug, and provide proof of her alleged hair loss in the form of medical records or dated photographs. Each plaintiff was also required to sign a declaration attesting that the information provided in the PFS was true and correct. Amended PTO 22 provided that the PFS responses would be treated as answers to interrogatories and production requests under the Federal Rules of Civil Procedure.

If a plaintiff failed to timely submit a complete and verified PFS, signed and dated authorizations, and/or all responsive documents requested in the PFS, defendants were directed to file a notice of deficiency on MDL Centrality, an electronic database. The notice triggered a thirty-day period to cure the deficiency. A plaintiff's failure to cure within the thirty-day period permitted defendants to serve a notice of non-compliance on plaintiffs' liaison counsel.[2] If a plaintiff remained in non-compliance after this additional

---

[1] Pending MDLs By Actions Pending as of October 15, 2020, https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_Actions_Pending-October-15-2020.pdf.

[2] The district court appointed liaison counsel for plaintiffs and defendants and charged them with receiving orders and notices from the Court and transmitting them to counsel for individual parties.

thirty-day period, defendants could add the plaintiff's name and case number to the "call docket" no later than fourteen days before the next status conference and show cause hearing. The district court warned that any plaintiff who failed to appear at the call docket and establish good cause for any remaining deficiencies could have her case dismissed with prejudice or be subject to other appropriate relief.

### A.

Julie Clark filed her individual short form complaint on July 26, 2018. Thus, her PFS, authorizations, and other responsive documents were due by October 9, 2018. On November 20, 2018, defendants listed her case in a notice of non-compliance, specifically identifying her failure to provide a PFS.[3] When Clark failed to provide a PFS within thirty days, defendants provided Clark with notice that her case was subject to dismissal at the next show cause hearing.

Clark did not file a PFS prior to the January 18, 2019, show cause hearing, but she retained new counsel who was present at the hearing. Clark's previous counsel informed the court at the hearing that he had agreed to a substitution and that new counsel had yet to file a motion to substitute counsel, but he also stated that new counsel was "aware of the pending status," and he "believed they were handling it." Although new counsel did not identify himself, the court granted a fifteen-day extension to file the PFS. New counsel then filed a motion for substitution of counsel on January 21, 2019, which the court granted a day later.

---

[3] Defendants refer to two groups, the "Sanofi Defendants" and the "505(b)(2) Defendants," but because the distinction does not affect our analysis here, we refer to actions taken by either group as conduct by "defendants."

5

No. 19-30631

Two months passed without Clark filing a PFS. Accordingly, the court dismissed Clark's case with prejudice on April 23, 2019, based on her failure to submit a PFS within the extended deadline. On May 3, 2019, Clark submitted a PFS through MDL Centrality.

Clark then filed a motion under Federal Rule of Civil Procedure 59(e) or, in the alternative, Rule 60(b). Clark claimed in her motion that her new law firm had not received proper notification of a deficiency and that it would otherwise have timely filed Clark's PFS, which it said it had in its possession prior to the January 18, 2019, hearing. The district court denied Clark's motion, finding that "counsel had ample time before the April 23, 2019 order dismissing Clark's case to apprise themselves of the status of her case and to file her PFS." Clark appealed.

**B.**

Renee Jeffers filed suit on December 4, 2017, so her PFS, authorizations, and other responsive documents were due by February 17, 2018. Jeffers filed a PFS in early February 2018 and a subsequent amended PFS. Jeffers did not file a declaration with either submission. Defendants issued a deficiency notice on August 8, 2018, that identified more than 160 deficiencies in Jeffers's amended PFS, including her failure to submit a declaration. Defendants then listed Jeffers on a November 20, 2018, notice of non-compliance, specifically identifying the absence of her declaration.

When Jeffers failed to cure the declaration deficiency, defendants provided notice that her case would be called at the January 18, 2019, show cause hearing. Jeffers's counsel told the district court at the hearing that her declaration had been submitted the previous day, and the district court granted her a fifteen-day extension to confirm her compliance. Jeffers now concedes her counsel's statement was incorrect.

Upon defendants' notification that Jeffers had not complied two months later, the district court dismissed her suit on April 23, 2019, for failure to timely comply with her obligations. Seven days later, Jeffers submitted a signed declaration to MDL Centrality. She then filed a motion to reconsider dismissal under Rule 59(e) or Rule 60(b). In her motion, she attributed the failure to upload a declaration previously to "Centrality . . . having issues with uploading documents." The district court denied her motion, finding that Jeffers had failed to identify any changes in the law, new evidence, or manifest errors warranting reversal of her dismissal. Jeffers appealed the district court's order.

## C.

Carriene Nevin filed her short form complaint on February 15, 2018, so her PFS and other documents were due by May 1, 2018. Between October 11 and 31, 2018, Nevin submitted a PFS and certain documents, including three pages copied from a handwritten calendar that stated "Taxotere" on certain days and that were offered as evidence of her use of Taxotere. Defendants issued an initial deficiency notice to Nevin on December 4, 2018, followed by a February 1, 2019, notice of non-compliance; both identified her failure to submit sufficient proof-of-use evidence or injury photographs showing her hair before chemotherapy. When Nevin failed to cure these deficiencies, defendants filed a notice of non-compliance on March 20, 2019, requesting dismissal of her case at the April 4, 2019, show cause hearing.

At the show cause hearing, Nevin argued that whether the calendar pages were sufficient proof-of-use documents was a "question of fact," and Nevin's counsel stated that it had been necessary to reorder Nevin's medical records on March 14, 2019, apparently because the first facility she identified was incorrect. The Court rejected the "question of fact" argument but granted Nevin an additional thirty days to locate proof-of-use medical

records. Although Nevin appears to have provided a pre-chemotherapy photo a few days before the show cause hearing, she did not upload any proof-of-use medical records. As a result, defendants requested dismissal of her case on May 9, 2019. The same day, Nevin submitted a "plan of care" to MDL Centrality. Nevertheless, the district court dismissed her case with prejudice.

Nevin then filed a motion for reconsideration under Rule 59(e) or alternatively 60(b), attaching the "plan of care" and arguing her delay was excusable since the proof-of-use information was "not controlled by [her] or her counsel." The district court denied her motion, reasoning that the facts supported dismissal and that plaintiff failed to point to any change in the law, new evidence, or manifest errors justifying reversal of her case's dismissal. Nevin initially appealed only the denial of her motion to reopen, but the district court granted her subsequent motion to file an amended notice of appeal, which she argued was necessary to correct her counsel's mistaken failure to appeal the dismissal order.

### D.

Deborah Purnell filed her short form complaint on February 9, 2018, so her PFS and other responsive documents were due by April 25, 2018. When she failed to meet this deadline, defendants issued a notice of non-compliance on August 27, 2018, identifying her case. Upon her continued non-compliance, defendants asked for her case to be dismissed at the November 15, 2018, show cause hearing.

At the show cause hearing, Purnell's counsel asked the court for an extension to decide whether to file a PFS because Purnell had died. The court granted a thirty-day extension, but Purnell's counsel did not submit a PFS within that time. The day after the show cause hearing, Purnell's counsel submitted a declaration to MDL Centrality but no other documents.

Upon notice of Purnell's continued deficiency, the district court dismissed her suit on December 27, 2018. On May 9, 2019, Purnell submitted a PFS. A month later, she filed a motion to reopen her case under Rule 60(b), explaining that her attorney incorrectly stated she was dead and asserting that she mailed her PFS to her counsel prior to the hearing. The district court denied her motion, finding that she had "ample time to file her PFS and failed to do so until after her case was dismissed—more than ten months after she filed her suit." Purnell's counsel's mistakes did not "justify relief under Rule 60(b)," the district court found. Purnell appealed the court's denial.

## II.

We first consider Nevin's challenge to the dismissal order. "We review matters concerning docket management for an abuse of discretion," including dismissal with prejudice as a sanction for failure to comply with court orders.[4] *In re Deepwater Horizon*, 907 F.3d 232, 234–235 (5th Cir. 2018)

---

[4] Defendants argue plaintiffs have forfeited any challenges to the procedures employed by the district court for dismissing cases with prejudice for failure to comply with the court's orders. As a result, they contend, we should affirm the district court's order dismissing Nevin and its denial of plaintiffs' motions to reopen without considering the merits, or alternatively, we should review the district court's management process for plain error.

Defendants in an appeal from the same MDL advanced similar arguments, which we rejected. *In re Taxotere (Docetaxel) Products Liab. Lit. (Kuykendall)*, 966 F.3d 351, 356 n.4 (5th Cir. 2020). First, we noted the plaintiff, Kuykendall, "preserved her objection to the dismissal of her case when she appeared at the district court's show-cause hearing and filed a letter challenging the defendants' request for dismissal." *Id.* Similarly, here, Nevin appeared at the show cause hearing and asked for an extension of time to comply, thus preserving her objection. *Cf. Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758–59 (5th Cir. 2019) (finding argument forfeited where the dismissed party "fail[ed] to oppose [plaintiff's] motion to sanction"). Kuykendall also argued, like plaintiffs here, that the court applied the wrong test; we reasoned that although Kuykendall "did not make this argument to the district court, it is unclear when she could have done so," given the district court's ability to issue sanctions without articulating a specific legal test. *Kuykendall*, 966 F.3d at 356 n.4. And we stated that we had reviewed "the entirety of a plaintiff's challenge

(per curiam); *see also In re Taxotere (Docetaxel) Products Liab. Lit. (Kuykendall)*, 966 F.3d 351, 356 (5th Cir. 2020). In general, "[a] trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Deepwater Horizon*, 907 F.3d at 234 (quoting *Elementis Chromium L.P. v. Coastal States Petroleum Co.*, 450 F.3d 607, 610 (5th Cir. 2006)). However, because of the severity of dismissal with prejudice as a sanction, we have "limited the district court's discretion" in that context. *Kuykendall*, 966 F.3d at 357 (quoting *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992)).

Nevin's challenge to the dismissal of her suit presents two issues: (1) which of two legal standards applies to dismissal as a sanction in the MDL context, and (2) whether the district court correctly applied the relevant standard in her case.[5] Our recent opinion in a separate appeal from the Taxotere MDL controls the first issue and provides substantial guidance on the second. *See Kuykendall*, 966 F.3d at 358–59.

## A.

Plaintiffs' first and principal argument on appeal is that the district court should have made specific findings under the fact-intensive, six-factor test for dismissal with prejudice articulated in *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758–59 (5th Cir. 2019). Defendants, by contrast, assert that the two-factor test employed in *Deepwater Horizon* is appropriate in the special

---

to a dismissal for an abuse of discretion, including the determination of the appropriate legal standard," in similar cases. *Id.* The same reasoning supports the application of an abuse of discretion standard here. Finally, we noted that Kuykendall's challenge to her dismissal "fail[ed] under any standard of review," *id.*, and the same is true of Nevin's.

[5] Although plaintiffs could be mistaken for challenging the merits of the district court's dismissal of Clark, Jeffers, and Purnell, as well as of Nevin, plaintiffs admit that only Nevin appealed the merits of the district court's dismissal order.

context of multidistrict litigation. Thus, they contend dismissal with prejudice is proper where there is "a clear record of delay or contumacious conduct by the plaintiff" and "where lesser sanctions would not serve the best interests of justice." *Deepwater Horizon*, 907 F.3d at 235 (quoting *Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 417 (5th Cir. 2006)).

Our opinion in *Kuykendall* forecloses plaintiffs' argument. Noting that "the complexity of managing an MDL necessitates a standard that gives district courts greater flexibility to dismiss a plaintiff for a discovery violation," we held that the two-factor *Deepwater Horizon* test "applies to a district court's dismissal with prejudice in the unique context of an MDL." *Kuykendall*, 966 F.3d at 358. And we applied that test to the Eastern District of Louisiana's dismissal with prejudice of Dorothy Kuykendall's suit for failure to timely submit a PFS, despite multiple extensions of the deadline. *Id.* at 359–60. Accordingly, the two-factor test applies in Nevin's case.

## B.

Under this standard, the district court did not abuse its discretion in dismissing Nevin's suit. To the extent plaintiffs argue otherwise, "[t]he district court was not required to make specific factual findings on each of the *Deepwater Horizon* prongs before dismissing [Nevin's] case." *Kuykendall*, 966 F.3d at 359. Our independent review of the record confirms that both prongs of the test are satisfied, and thus the district court's dismissal was not an abuse of discretion. *See id.*

### i.

As to the first prong, Nevin's conduct displays "a clear record of delay or contumacious conduct." *Deepwater Horizon*, 907 F.3d at 235 (citation omitted). Nevin's PFS was due on May 1, 2018, but she filed it almost six months later in October 2018. At that time, the proof-of-use evidence she offered was three handwritten calendar pages with "Taxotere" written on

certain days, and she failed to include photos of her hair prior to chemotherapy. Although Nevin was notified of her non-compliance on December 4, 2018, she failed to cure her deficiencies by February 1, 2019, when defendants issued another notice of non-compliance. She still had not cured more than a month later when she received notice that her case would be called at the April 4, 2019, show cause hearing. Although Nevin uploaded a before-chemotherapy photo a few days before the hearing, she failed to submit the requisite proof-of-use evidence in the fifteen days prior to the hearing. Even when the district court granted her a thirty-day extension at Nevin's request, Nevin failed to comply in time. She finally submitted purported proof-of-use evidence one week after the thirty-day extension had expired. Even assuming the new evidence fulfilled her discovery obligations, Nevin failed to comply with the court's orders for more than a year.

Nevin's repeated delays without explanation bear significant resemblance to the conduct of Kuykendall, who we found "exhibited a clear record of delay sufficient to meet the first prong." *Kuykendall*, 966 F.3d at 360. Like Kuykendall, Nevin received "ample notice of the potential consequences of her failure to comply," including the warning in PTO 22A that failure to comply could lead to "possible dismissal with prejudice or other appropriate relief." *Id.* And like Kuykendall, she "did not seek additional extensions or provide an explanation" for her extreme delay in submitting her PFS and complete proof-of-injury evidence, *id.*, and her counsel's seeming justification that she initially identified the wrong treatment facility does not explain her one-year delay in uploading adequate proof-of-use evidence. Indeed, Kuykendall submitted her PFS five months late, as compared to Nevin's six-month delay. *Id.* As we noted in Kuykendall's case, "hundreds of other plaintiffs complied with the court's orders, 'demonstrating it was not logistically impossible' to do so within the

timeline set forth in the court's pretrial orders." *Id.* (quoting *Deepwater Horizon*, 907 F.3d at 235).

Nevin argues that her case does not present the kind of "extreme" conduct that justifies dismissal. She contends that her submission of the calendar pages demonstrates her efforts to comply with the court's order, and she says she submitted proof-of-use information on April 22, 2019, and again on May 9, 2019, only five days after the May 4, 2019, deadline. But the PFS's requirements, the defendants' notices of non-compliance, and the district court made pellucid the calendar pages' inadequacy as proof-of-use documents (even if they had not been uploaded more than five months late). Moreover, the record on MDL Centrality that Nevin cites does not show that she uploaded proof-of-use documents on April 22, and, when she finally submitted the plan of care, she did so after the deadline, despite multiple notices of non-compliance and a generous extension. As in *Kuykendall*, "[b]ecause this case involves an MDL, . . . the district court was empowered to 'establish [a] schedule[ ] with [a] *firm* cutoff date[ ].'" 966 F.3d at 360 (alterations in original) (quoting *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1232 (9th Cir. 2006)). Accordingly, Nevin's conduct satisfies the first prong of the *Deepwater Horizon* test.

### ii.

As to the second prong, the record also reveals that "lesser sanctions would not [have] serve[d] the best interests of justice." *Deepwater Horizon*, 907 F.3d at 235 (citation omitted). We have said we will not affirm a dismissal unless "the district court expressly considered alternative sanctions and determined that they would not be sufficient to prompt diligent prosecution or the record reveals that the district court employed lesser sanctions prior to dismissal (assuming that plaintiff was capable of performing them) that in fact proved to be futile." *Callip v. Harris Cnty. Child Welfare Dep't*, 757 F.2d

13

1513, 1521 (5th Cir. 1985) (per curiam). Lesser sanctions may include "[a]ssessments of fines, costs, or damages against the plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings." *Id.* (alteration in original) (quoting *Rogers v. Kroger Co.*, 669 F.2d 317, 321 (5th Cir. 1982)). Additionally, "[p]roviding [a] plaintiff with a second or third chance following a procedural default is a 'lenient sanction,'" which may justify dismissal if "met with further default." *Id.* (quoting *Porter v. Beaumont Enter. & J.*, 743 F.2d 269, 272 (5th Cir. 1984)).

Although Nevin eventually corrected one of the deficiencies identified by defendants (albeit almost eleven months late), she "consistently failed to comply with the court's initial order—to provide a complete PFS [with all requisite responsive documents] by the required deadline." *Kuykendall*, 966 F.3d at 360. And on top of the two notices of non-compliance she received from defendants months before her suit was dismissed, the court granted her an additional thirty-day extension, which, contrary to plaintiffs' argument otherwise, qualifies as a "lenient sanction." *Callip*, 757 F.2d at 1521. On this record, "it is 'unclear what lesser sanctions could have been appropriate following the district court's warnings and second chances,'" *Kuykendall*, 966 F.3d at 360 (quoting *Deepwater Horizon*, 907 F.3d at 236), and plaintiffs do not suggest any. Moreover, "[a]ny sanction other than dismissal would not achieve the desired effect of [Amended] PTO [22], and would further delay the district court's efforts to adjudicate the MDL expeditiously." *Deepwater Horizon*, 907 F.3d at 236. Thus, Nevin's conduct also satisfies the second prong of the *Deepwater Horizon* test.

Accordingly, the district court did not abuse its discretion in dismissing Nevin's suit.

### III.

Next, we turn to the plaintiffs' appeal of the district court's order denying their motions under Rules 59(e) and 60(b). We review denials of motions under Federal Rules of Civil Procedure 59(e) and 60(b) for an abuse of discretion. *Kuykendall*, 966 F.3d at 360–61; *Warfield v. Byron*, 436 F.3d 551, 555 (5th Cir. 2006). Under Rule 59(e), a party may move to "alter or amend a judgment" no later than twenty-eight days after the entry of judgment. Amending a judgment is "appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012). A district court's decision will survive a Rule 59(e) motion if it is "reasonable." *Midland West Corp. v. FDIC*, 911 F.2d 1141, 1145 (5th Cir. 1990). Similarly, Rule 60(b) provides that the court may "relieve a party . . . from a final judgment [or] order" for certain specified reasons, including (1) "mistake, inadvertence, surprise, or excusable neglect," and (6) "any other reason that justifies relief." We first consider the district court's denial of the Rule 59(e) motions and then consider its denial of Purnell's Rule 60(b) motion.

### A.

The district court did not abuse its discretion in denying Clark's, Nevin's, and Jeffers's Rule 59(e) motions. None of these plaintiffs satisfied the standard for altering a judgment, failing to cite a change in the controlling law, present newly discovered evidence, or point to a manifest error of law or fact.[6] *See Kuykendall*, 966 F.3d at 361.

---

[6] Although these plaintiffs moved in the alternative under Rule 60(b), Rule 59(e) "is not controlled by the same exacting substantive requirements" as a motion under Rule

Clark argued in her motion to reconsider that her counsel's conduct, not her own, had caused the delay in filing her PFS that led to her dismissal. She also asserted that defendants would not be prejudiced by reversing the dismissal because she had uploaded the critical evidence "within two weeks of the dismissal." Neither of these reasons provides a basis for altering the judgment under Rule 59(e). Clark's case presents even more egregious facts than those in *Kuykendall*, where we found the district court did not abuse its discretion by denying Kuykendall's Rule 59(e) motion. 966 F.3d at 361. Kuykendall uploaded a new PFS "in between the end of the deadline and the date of the dismissal order," but we found "her late partial compliance with the court's orders failed to change the fact that she had persistently ignored the previous deadlines." *Id.* By contrast, Clark finally filed her PFS ten days after her case was dismissed, more than three months after the show cause hearing. Like Kuykendall, Clark was "on notice that dismissal with prejudice was a potential consequence of her inaction," and the district court did not abuse its discretion by "refusing to reconsider its decision to issue a litigation-ending sanction." *Id.*

Similarly, the district court did not abuse its discretion by denying Jeffers's Rule 59(e) motion. After Jeffers received an August 8, 2018, deficiency notice, a November 20, 2018, notice of non-compliance, a notice preceding the January 18, 2019, show cause hearing, and a fifteen-day extension granted by the court at the show cause hearing, the district court dismissed her suit on April 23, 2019, for failing to submit her declaration. Seven days later, Jeffers uploaded a signed declaration to MDL Centrality. In her subsequent motion to reconsider, she blamed her failure to comply on

---

60(b). *Lavaspere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173–74 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994). Thus, we only consider their motions, like the district court, under Rule 59(e).

technical difficulties and defendants' alleged failure to communicate Jeffers's continued deficiency. Considering Jeffers's repeated delays, despite multiple deficiency notices, and her knowledge of the consequences of failing to comply, the district court did not abuse its discretion in finding Jeffers not entitled to Rule 59(e) relief. *See Kuykendall*, 966 F.3d at 361.

Likewise, the district court did not abuse its discretion by rejecting Nevin's argument that the difficulty of obtaining her proof-of-use documents justified amending the judgment. Rather, as discussed *supra* pp. 11–14, Nevin's severe delay and contumacious conduct provided ample reason for the court to dismiss her suit, and Nevin's Rule 59(e) motion did not present a legitimate basis for reversing that decision. *See Kuykendall*, 966 F.3d at 361.

**B.**

Nor did the district court abuse its discretion by denying Purnell's Rule 60(b) motion. Purnell moved for relief under Rule 60(b)(1) and (b)(6). "[G]ross carelessness, ignorance of the rules, or ignorance of the law are insufficient bases for 60(b)(1) relief." *Trevino v. City of Fort Worth*, 944 F.3d 567, 571 (5th Cir. 2019) (per curiam) (citation omitted). A party has a "duty of diligence to inquire about the status of [her] case." *Id.* (citation omitted). Similarly, the bar for relief under Rule 60(b)(6) is high. Relief under this section is "appropriate only in an 'extraordinary situation' or 'if extraordinary circumstances are present.'" *U.S. ex rel. Garibaldi v. Orleans Par. Sch. Bd.*, 397 F.3d 334, 337 (5th Cir. 2005) (citations omitted).

The district court dismissed Purnell's suit on December 27, 2018, due to Purnell's failure to file a PFS. Prior to the dismissal, Purnell received an August 27, 2018, notice of non-compliance, a notice her case would be placed on the call docket, and a thirty-day extension following the November 15, 2018, show cause hearing. Yet, Purnell did not upload a PFS until May 2019, more than five months after her case was dismissed. The only excuse she

offered for delay was her counsel's mistaken belief that she was deceased, an oversight caused by "what appear[ed] to be a cut and paste error."

On this record, it would have been an abuse of discretion for the district court to reopen Purnell's case under Rule 60(b)(1) "when the reason asserted as justifying relief is one attributable solely to counsel's carelessness." *Trevino*, 944 F.3d at 571 (citation omitted); *cf. In re Deepwater Horizon (Lake Eugenie Land & Dev., Inc.)*, 814 F.3d 748, 752 (5th Cir. 2016) (per curiam) (finding claimants had not demonstrated "excusable neglect" under Rule 60(b)(1) where the "onus [was] on the claimant to obtain and provide . . . documentation," claimants had notice of the initial eligibility determination, and they failed to meet the deadline). Likewise, Purnell's counsel's "cut and paste" mistake does not rise to the "extraordinary" level necessary to grant Rule 60(b)(6) relief. Accordingly, the district court did not abuse its discretion by denying her motion.

## IV.

For the foregoing reasons, the district court's orders dismissing Nevin's suit and denying plaintiffs' Rule 59(e) and 60(b) motions are AFFIRMED.