UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: TAXOTERE (DOCETAXEL)          )       MDL No. 16-2740
PRODUCTS LIABILITY                   )
LITIGATION                           )       SECTION: "H" (5)
                                     )
**This document relates to:**        )
Elizabeth Kahn, 16-17039             )

## ORDER AND REASONS

Before the Court is Plaintiff's Motion to Exclude and/or Limit Testimony of Dr. Carl Kardinal and Dr. Zoe Larned (Doc. 10921). The Court held oral argument on the Motion on October 6, 2020. For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel,[1] that Plaintiffs were administered for the treatment of breast cancer or other forms of cancer. Among these companies are Defendants sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc. (collectively, "Sanofi" or "Defendants"). Plaintiffs allege that the drug caused permanent alopecia—in other words, permanent hair loss. Plaintiffs bring claims of failure to warn, negligent misrepresentation, fraudulent misrepresentation, and more. The first bellwether trial was held in September 2019, and the second trial is set for May 24, 2021.[2]

In the instant Motion, Plaintiff Elizabeth Kahn, the second bellwether plaintiff, moves to exclude or limit testimony from Dr. Carl Kardinal and Dr.

---

[1] Docetaxel is the generic version of Taxotere.
[2] The second trial was continued due to the COVID-19 pandemic.

Zoe Larned. These doctors were Plaintiff Kahn's treating physicians. Plaintiff argues that Sanofi did not provide the required expert disclosures for these doctors, yet Sanofi seeks to elicit testimony from the doctors that qualifies as expert testimony. Sanofi opposes the Motion.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(a)(2)(A), a party must disclose to the other parties the identity of any witness it may use at trial to present expert testimony.[3] If the witness is one retained or specially employed to provide expert testimony in the case, then the disclosure must be accompanied by a written report.[4] Before 2010, treating physicians were traditionally exempt from Rule 26's written report requirement.[5] In 2010, however, Rule 26(a)(2)(C) was added to require summary disclosures for expert testimony by witnesses not required to produce expert reports under 26(a)(2)(B).[6] A summary disclosure must state (1) "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705," and (2) "a summary of the facts and opinions to which the witness is expected to testify."[7] Treating physicians are specifically discussed in the 2010 Advisory Committee Notes pertaining to Rule 26(a)(2)(C) as being one of the categories of expert witnesses that the new amendment was intended to address.[8] A

---

[3] FED. R. CIV. P. 26(a)(2)(A); Perdomo v. United States, No. 11–2374, 2012 WL 2138106, at *1 (E.D. La. June 11, 2012).
[4] FED. R. CIV. P. 26(a)(2)(B).
[5] *Perdomo*, 2012 WL 2138106, at *1 (collecting cases).
[6] *Id.*
[7] FED. R. CIV. P. 26(a)(2)(C); LaShip, LLC v. Hayward Banker, Inc., 296 F.R.D. 475, 481 (E.D. La. 2013).
[8] *Perdomo*, 2012 WL 2138106, at *1 (collecting cases).

treating physician need not produce a summary disclosure, however, if his opinions are limited to those that were formed during the course of treatment.[9]

## LAW AND ANALYSIS

### I. Dr. Kardinal's Opinion on the Neurotoxicity of Taxol

Plaintiff takes issue with testimony from Dr. Kardinal stating that Taxol is more neurotoxic than Taxotere. Plaintiff argues that this opinion involves specialized knowledge and should be excluded since Sanofi did not properly disclose the opinion. In response, Sanofi avers that because Dr. Kardinal treated Plaintiff, his weighing of the risks and benefits of certain treatments is fact testimony and is essential for the jury.

In the first bellwether trial, the Court held that to find proximate causation, the jury will have to find that a treating physician would have changed his prescribing decision if he had known that Taxotere carried a risk of permanent alopecia.[10] The jury, then, will have to consider how Dr. Kardinal and Plaintiff Kahn would have weighed the risks and benefits of her treatment options. The Court, therefore, will allow Dr. Kardinal to offer testimony that falls "within a permissive core on issues pertaining to treatment."[11]

At his deposition, Dr. Kardinal testified that "there appeared to be less neurotoxicity with docetaxel than there was with paclitaxel which was one of the reasons I tended to use docetaxel in preference to paclitaxel."[12] He further

---

[9] *See LaShip, LLC*, 296 F.R.D. at 481, 482. *See also* Robert v. Maurice, No. 18-CV-11632, 2020 WL 5046487, at *4 (E.D. La. Aug. 26, 2020) ("[O]nly proposed expert testimony must be disclosed under Rule 26(a)(2)(C), and a treating physician may testify as a fact witness without making such a disclosure.").
[10] Doc. 8201.
[11] *LaShip, LLC*, at 481 (quoting Fielden v. CSX Transpo., Inc., 482 F.3d 866, 871 (6th Cir.2007)).
[12] Doc. 10921-3 at 9.

3

testified that "[n]eurotoxicity with paclitaxel was a big concern."[13] To the extent, then, that Dr. Kardinal was concerned about the neurotoxicity of paclitaxel when he chose a treatment regimen for Plaintiff Kahn in 2008, the Court will permit him to testify about this. The Court cautions, however, that his testimony must relate specifically to his treatment of Plaintiff Kahn. The Court will not permit him to offer general testimony about the neurotoxicity of paclitaxel, and the Court will not permit him to offer any opinions about paclitaxel that he formed after he treated Plaintiff Kahn.

### II. Dr. Larned's Opinions on Causes of Hair Loss

Plaintiff next takes issue with Dr. Larned's testimony regarding whether Plaintiff's menopause or her use of another drug (Tamoxifen) contributed to her hair loss. Plaintiff argues that testimony on the potential causes of Plaintiff's hair loss and testimony on the rates of permanent hair loss associated with other drugs and medical conditions is expert testimony requiring a summary disclosure under Rule 26(a)(2)(C).

The Court will not allow Sanofi to elicit testimony from Dr. Larned about the potential causes of Plaintiff Kahn's hair loss. Sanofi points to no evidence showing that Dr. Larned discussed Plaintiff's hair loss with her or attempted to treat it.[14] Also, Dr. Larned conceded that she is not qualified to give expert testimony on diagnosing the cause of persistent alopecia or hair loss.[15] Any testimony about the cause of Kahn's hair loss, then, goes beyond the realm of fact testimony relating to Dr. Larned's treatment of Plaintiff, and it ventures

---

[13] *Id.*
[14] The Court notes that regarding MDL Plaintiff Cynthia Thibodeaux, Dr. Larned specifically testified that she never discussed the cause of Thibodeaux's hair loss with her.
[15] Doc. 10921-4 at 6.

into expert testimony.[16] Because Sanofi did not provide a summary disclosure, Sanofi cannot elicit such testimony.

Additionally, the Court will limit Dr. Larned's testimony about the rates of permanent hair loss associated with other chemotherapy drugs. Her testimony must relate to her specific care of Plaintiff Kahn. Dr. Larned, therefore, can testify about the drugs she recommended, and she can answer questions about whether she was aware of reports of persistent hair loss associated with these drugs. She may not, however, discuss any drugs that she did not consider for Plaintiff Kahn.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Exclude and/or Limit Testimony of Dr. Carl Kardinal and Dr. Zoe Larned (Doc. 10921) is **GRANTED IN PART** and **DENIED IN PART**. The Court will limit the testimony of Dr. Kardinal and Dr. Larned as described in this opinion.

New Orleans, Louisiana, this 12th day of January, 2021.

JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE

---

[16] *See* Warren v. Mallory, No. 18-11613, 2020 WL 4260448, at *3 (E.D. La. July 24, 2020) ("[T]estimony as to causation . . . has been considered the province of expert testimony subject to the requirements of section (a)(2)(B).").