# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

IN RE: TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

MDL NO. 2740

SECTION "H" (5)

HON. JANE T. MILAZZO

THIS DOCUMENT RELATES TO:

*Mary B. Downs v. Sandoz, Inc., EDLA No.
2:18-cv-03930-JTM-MBN*

## AMENDED SHORT FORM COMPLAINT (Effective as of May 13, 2020)[1]

Plaintiff(s) incorporate by reference the Second Amended Master Long Form Complaint and Jury Demand filed in the above referenced case on September 27, 2018 (Doc. 4407). Pursuant to Pretrial Order No. 15, this Amended Short Form Complaint adopts allegations and encompasses claims as set forth in the Second Amended Master Long Form Complaint against Defendant(s).

Plaintiff(s) further allege as follows:

1.    Plaintiff:

        Mary B. Downs

2.    Spousal Plaintiff or other party making loss of independent/secondary claim (i.e., loss of consortium):

        Not applicable

3.    Other type of Plaintiff and capacity (i.e., administrator, executor, guardian, conservator):

        Not Applicable

4.    Current State of Residence:  New York

5.    State in which Plaintiff(s) allege(s) injury:  New York

---

[1] This version of the Short Form Complaint supersedes all prior versions of the form pursuant to Pretrial Order No. 73A. This Court-approved version of the Short Form Complaint is available on the Court's Taxotere webpage and through MDL Centrality.

6. Defendants (check all Defendants against whom a Complaint is made):

    a. Taxotere Brand Name Defendants

        ☐    A. Sanofi US Services Inc. f/k/a Sanofi-Aventis U.S. Inc.

        ☐    B. Sanofi-Aventis U.S. LLC

    b. Other Brand Name Drug Sponsors, Manufacturers, Distributors

        X    A. Sandoz Inc.

        ☐    B. Accord Healthcare, Inc.

        ☐    C. McKesson Corporation d/b/a McKesson Packaging

        ☐    D. Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc.

        ☐    E. Hospira, Inc.

        ☐    F. Sun Pharma Global FZE

        ☐    G. Sun Pharmaceutical Industries, Inc. f/k/a Caraco Pharmaceutical Laboratories Ltd.

        ☐    H. Pfizer Inc.

        ☐    I. Actavis LLC f/k/a Actavis Inc.

        ☐    J. Actavis Pharma, Inc.

        ☐    K. Sagent Pharmaceuticals, Inc.

        ☐    L. Other:

7. Basis for Jurisdiction:

    X    Diversity of Citizenship

    ☐    Other (any additional basis for jurisdiction must be pled in sufficient detail as required by the applicable Federal Rules of Civil Procedure):

8.     Venue:

       District Court and Division in which remand and trial is proper and where you might
       have otherwise filed this Short Form Complaint absent the direct filing Order entered by
       this Court:

       | |
       |---|
       | United State District Court, Northern District of New York |

9.     Brand Product(s) used by Plaintiff (check applicable):

       ☐     A.     Taxotere

       ☐     B.     Docefrez

       ☐     C.     Docetaxel Injection

       ☐     D.     Docetaxel Injection Concentrate

       X     E.     Unknown

       ☐     F.     Other:

       | |
       |---|
       | |

10.    First date and last date of use (or approximate date range, if specific dates are unknown)
       for Products identified in question 9:

       | |
       |---|
       | First Date of Treatment: April 18, 2013 |
       | Last Date of Treatment: August 1, 2013 |

11.    State in which Product(s) identified in question 9 was/were administered:

       | |
       |---|
       | New York |

12.     Nature and extent of alleged injury (including duration, approximate date of onset (if known), and description of alleged injury):

Permanent/persistent hair loss on scalp; diffuse thinning of hair on top, sides and temples of scalp; diffuse thinning on total scalp on top; visible bald spots on scalp regardless of how hair is styled; large bald area in hair on head; multiple bald spots on head; permanent/persistent loss of eyebrows, eyelashes, body hair, nasal hair, ear hair; thinning and frail genital hair; depression; anxiety; loss of self-esteem; IBS. While plaintiff lost her hair during her treatment with Taxotere/Docetaxel in 2013 [first treatment 4/18/13-last treatment 8/1/13], it was not until September 18, 2013 that plaintiff first mentioned her concern to her oncologist that her hair had not yet started to grow back.  At that September 18, 2013 appointment, her oncologist Dr. Arun Sheth told her not to be concerned about her persistent alopecia and that she needed to give it some more time for hair to start growing on her scalp.  On January 17, 2014, at her oncology appointment with Dr. Sheth's nurse practitioner, Debra Schaffer, plaintiff expressed concern that she was possibly developing baldness as her hair was still not growing back following completion of her chemotherapy.  NP Schaffer told plaintiff that it may take some time for her hair and follicles to regenerate and to give it 3 more months time before further concern.  On April 22, 2014, the plaintiff spoke to Dr. Sheth, her oncologist, again about her hair loss and mentioned that she was thinking it might be related to her tamoxifen so she stopped taking the drug for a few weeks.  Dr. Sheth told her he did not believe tamoxifen was causing her hair loss and told her to start retaking the tamoxifen, which she did.  At her oncology appointment with Dr. Sheth on August 1, 2014, plaintiff mentioned her hair growth had slightly improved though the doctor noted plaintiff still had significant alopecia.  On February 19, 2015, plaintiff treated with oncologist, Dr. Shilpa Sambidi, and told him that she had hair loss while on chemotherapy in 2013 which has never fully grown back.  On March 30, 2015, plaintiff underwent an endocrinology evaluation by Dr. Robert Harrison to try to determine the cause for the failure of her hair to re-grow after completion of chemotherapy and her male pattern baldness.  Dr. Harrison performed tests to try to determine the cause of her continued hair loss (testosterone panel, androstenedione and DHEA-S to assess possible androgenicity, and thyroid function tests).  On April 29, 2015, Dr. Harrison saw plaintiff in follow-up for the failure of her hair to regrow once chemotherapy was completed.  Dr. Harrison told plaintiff that the tests he had conducted were normal and he suggested that she consult with a dermatologist to determine if her alopecia might be autoimmune.  The next day, April 30, 2015, plaintiff treated with her primary care physician, Dr. Kiran Talati.  Plaintiff told Dr. Talati that she had been evaluated by an endocrinologist for her hair loss, that he told her it was not caused by an endocrine problem and advised her to see a dermatologist.  Dr. Talati's plan to try to determine the cause of and possible treatment for her hair loss was to refer plaintiff to a dermatologist and a rheumatologist to rule out an autoimmune condition as the cause.  Dr. Talati also ordered some tests to help

determine the cause of her hair loss (ANA screen and Anti DNA double strand).   On May 19, 2015, plaintiff was evaluated by rheumatology (Aspen D'Angelo, RPA-C) as recommended by her primary care physician.  Plaintiff's chief complaint was alopecia/inability for hair to regrown following chemotherapy 2 years ago.  The plaintiff told the rheumatologist her oncologist stated he had never heard of such an occurrence with regards to alopecia on tamoxifen or permanent alopecia following chemotherapy.  Plaintiff also stated to the rheumatologist that she was very frustrated and had an extensive endocrinology work-up, which did not reveal any specific etiology for the failure of her hair to regrow after completion of chemotherapy.  The plaintiff also informed him that she was waiting for a dermatology evaluation.  The rheumatologist found no evidence of underlying connective tissue disorders as the cause of her alopecia.  The rheumatologist advised that plaintiff should see a dermatologist for further evaluation and should discuss again with her oncologist to see if another rare occurrence to her chemotherapy or tamoxifen was the cause of the failure of her hair to regrow.  On June 26, 2015, plaintiff had an oncology appointment with Dr. Ronald Harris.  Plaintiff expressed her continued difficulty with alopecia and that she underwent a full endocrine workup which has been negative.  Dr. Harris told plaintiff he did not know what was causing her failure of hair regrowth.  After being on a waiting list to have a dermatology consultation, on August 25, 2015, plaintiff was first evaluated by a dermatologist for the failure of her hair to regrow after completion of chemotherapy.  Plaintiff was seen by dermatologist, Dr. Joseph Newmark.  Her chief complaint was hair loss on full head for 2 years duration and that plaintiff had tried treating it with coconut oil, Biosilk and Nioxin shampoo with no effect.  Dr. Newmark diagnosed plaintiff with non-scarring hair loss and prescribed plaintiff Minoxidil solution and foam and Biotin to try to treat her hair loss.  On September 21, 2015, plaintiff had a follow-up appointment with endocrinology (Dr. Narinder Sandhu).  Dr. Sandhu told plaintiff that all the tests that had previously been performed to determine the cause of her failed hair regrowth came back normal and they didn't know what was causing the failure of her hair to regrow.  Plaintiff told the doctor that she has started Rogaine and Biotin at the direction of the dermatologist, which she felt may have helped slightly.  The endocrinologist advised to continue Rogaine as it may take a few months for improvement and to follow-up with dermatology, not endocrinology for her hair loss.  Despite plaintiff's continued use of Rogaine and Biotin, her hair growth did not improve and she continued to suffer from significant alopecia.  On July 28, 2016, plaintiff had a follow-up appointment with her oncologist, Dr. Harris, and he noted that she continued to have permanent hair loss after chemotherapy.  On July 11, 2018, plaintiff again treated with onocologist Dr. Harris and reported that she remained with alopecia.  At that appointment, Dr. Harris mentioned for the first time this was felt to be secondary to her Taxotere use.

13.     Counts in Master Complaint brought by Plaintiff(s):

        X       Count I – Strict Products Liability – Failure to Warn
        X       Count III – Negligence
        X       Count IV – Negligent Misrepresentation

X      Count V – Fraudulent Misrepresentation
X      Count VI – Fraudulent Concealment
X      Count VII – Fraud and Deceit

☐      Other: Plaintiff(s) may assert the additional theories and/or State Causes of Action against Defendant(s) identified by selecting "Other" and setting forth such claims below.  If Plaintiff(s) include additional theories of recovery, for example, applicable state law or state consumer protection claims, the specific facts and allegations supporting additional theories must be pleaded by Plaintiff in sufficient detail as required by the applicable Federal Rules of Civil Procedure.

14.    Name of Attorney(s), Bar Number(s), Law Firm(s), Phone Number(s), Email Address(es) and Mailing Address(es) representing Plaintiff(s):

By:    Laura M. Jordan, Esq.
        NY Bar Roll No. 512419
        Powers & Santola, LLP
        100 Great Oaks Blvd
        Suite 123
        Albany, NY  12203
        (518) 465-5995
        ljordan@powers-santola.com