# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO: | HON. JANE T. MILAZZO |
| *Caroline Gunner v. Sanofi US Services Inc. f/k/a Sanofi-Aventis U.S. Inc., Sanofi-Aventis U.S. LLC* *EDLA No. 2:17-cv-11785* | |

**AMENDED SHORT FORM COMPLAINT (Effective as of May 13, 2020)[1]**

Plaintiff incorporates by reference the Second Amended Master Long Form Complaint and Jury Demand filed in the above referenced case on September 27, 2018 (Doc. 4407). Pursuant to Pretrial Order No. 15, this Amended Short Form Complaint adopts allegations and encompasses claims as set forth in the Second Amended Master Long Form Complaint against Defendants.

Plaintiffs further alleges as follows:

1.    Plaintiff:

Caroline Gunner

2.    Spousal Plaintiff or other party making loss of independent/secondary claim (i.e., loss of consortium):

N/A

3.    Other type of Plaintiff and capacity (i.e., administrator, executor, guardian, conservator):

N/A

4.    Current State of Residence: California

5.    State in which Plaintiff(s) allege(s) injury:   California

---

[1] This version of the Short Form Complaint supersedes all prior versions of the form pursuant to Pretrial Order No. 73A. This Court-approved version of the Short Form Complaint is available on the Court's Taxotere webpage and through MDL Centrality.

6.    Defendants (check all Defendants against whom a Complaint is made):

      a.     Taxotere Brand Name Defendants

          X     A.     Sanofi US Services Inc. f/k/a Sanofi-Aventis U.S. Inc.

          X     B.     Sanofi-Aventis U.S. LLC

      b.     Other Brand Name Drug Sponsors, Manufacturers, Distributors

          ☐     A.     Sandoz Inc.

          ☐     B.     Accord Healthcare, Inc.

          ☐     C.     McKesson Corporation d/b/a McKesson Packaging

          ☐     D.     Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc.

          ☐     E.     Hospira, Inc.

          ☐     F.     Sun Pharma Global FZE

          ☐     G.     Sun Pharmaceutical Industries, Inc. f/k/a Caraco Pharmaceutical Laboratories Ltd.

          ☐     H.     Pfizer Inc.

          ☐     I.     Actavis LLC f/k/a Actavis Inc.

          ☐     J.     Actavis Pharma, Inc.

          ☐     K.     Sagent Pharmaceuticals, Inc.

          ☐     L.     Other:

7.    Basis for Jurisdiction:

      X     Diversity of Citizenship

      ☐     Other (any additional basis for jurisdiction must be pled in sufficient detail as required by the applicable Federal Rules of Civil Procedure):

8.      Venue:

District Court and Division in which remand and trial is proper and where you might have otherwise filed this Short Form Complaint absent the direct filing Order entered by this Court:

> Southern District of California

9.      Brand Product(s) used by Plaintiff (check applicable):

        X       A.      Taxotere

        ☐       B.      Docefrez

        ☐       C.      Docetaxel Injection

        ☐       D.      Docetaxel Injection Concentrate

        ☐       E.      Unknown

        ☐       F.      Other:

10.     First date and last date of use (or approximate date range, if specific dates are unknown) for Products identified in question 9:

> First date: August 30, 2007
>
> Last date: October 11, 2007

11.     State in which Product(s) identified in question 9 was/were administered:

> California

12.    Nature and extent of alleged injury (including duration, approximate date of onset (if

known), and description of alleged injury):

---

Permanent hair loss from approximately April, 2008 to present.

---

13.    Counts in Master Complaint brought by Plaintiff(s):

     X       Count I – Strict Products Liability – Failure to Warn
     X       Count III – Negligence
     X       Count IV – Negligent Misrepresentation
     X       Count V – Fraudulent Misrepresentation
     X       Count VI – Fraudulent Concealment
     X       Count VII – Fraud and Deceit

     X       Other: Plaintiff(s) may assert the additional theories and/or State Causes of
Action against Defendant(s) identified by selecting "Other" and setting forth such
claims below.  If Plaintiff(s) include additional theories of recovery, for example,
applicable state law or state consumer protection claims, the specific facts and
allegations supporting additional theories must be pleaded by Plaintiff in
sufficient detail as required by the applicable Federal Rules of Civil Procedure.

---

See Exhibit A.

**Factual Allegations:**

1.  Ms. Gunner was diagnosed with breast cancer in July 2007.

2.  In 2007, prior to undergoing chemotherapy treatment, Plaintiff discussed the
    potential chemotherapy risks and side effects with her prescribing oncologist
    Dr. David Oblon.

3.  In 2007, Prior to Plaintiff's chemotherapy treatment, Dr. Oblon advised Ms.
    Gunner that she would likely have temporary hair loss on her scalp and body
    during chemotherapy treatment and shortly thereafter, but her hair would re-
    grow over time after completion of the chemotherapy treatment.

---

4. Ms. Gunner was treated with Taxotere from August 2007 until October 2007. She was first administered Adriamycin and Cytoxan for two weeks, followed by Taxotere and Cytoxan. She also had Herceptin weekly.

5. While receiving chemotherapy treatment Ms. Gunner lost all her hair on her scalp, lost body hair and lost her eyebrows and eyelashes.

6. In approximately 2008, Ms. Gunner spoke to her primary care physician Dr. Strohmeyer and asked why all her hair had not yet grown back after completion of chemotherapy as she only a small amount of hair that was very thin had returned to her scalp.

7. In 2008, Dr. Strohmeyer told her that she did not know why her hair had not yet grown back., but that it should still grow back, and she needed to give it further and sufficient time to all grow back.

8. During her follow-up cancer appointments in 2008, 2009, 2010, 2011, 2012, 2013, 2014 and 2015, Ms. Gunner would mention to her oncology nurse and to Dr. Oblon about her lack of hair regrowth. They consistently said to give it time and it would and should all regrow over time.

9. Ms. Gunner has not had any hair regrowth since 2008 and still only has a small amount of hair on her scalp.

10. In approximately August 2016, Ms. Gunner first saw and heard commercial advertisements for litigation involving Taxotere's alleged link to permanent hair loss.[2]

---

[2] Pursuant to the Stipulation's reservation of rights, Ms. Gunner would also advance herein (but is now otherwise precluded from advancing herein) allegations and facts related to her knowledge/onset/duration of her injury that clarify her present sense impressions in response to this paragraph (which is vague in terms of what information is being requested). Since she has otherwise been precluded from advancing said allegations, such objections to being so precluded are preserved under the Stipulation. All other and further allegations and facts related to Ms. Gunner's knowledge/onset/duration of her injury shall be discovered during case-specific discovery and depositions in this case prior to a trial.

14.     Name of Attorney(s), Bar Number(s), Law Firm(s), Phone Number(s), Email Address(es)

and Mailing Address(es) representing Plaintiff(s):

By:
*/s/ Todd E. Hilton*
Todd E. Hilton (SBN 51388)
Abby E. McClellan (SBN 66069)
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100 tel
Email:
hilton@stuevesiegel.com
mcclellan@stuevesiegel.com

Karen Barth Menzies (SBN 180234)
GIBBS LAW GROUP LLP
400 Continental Blvd, 6th Floor
El Segundo, California 90245
Telephone: (510) 350-9240
Email: kbm@classlawgroup.com

Eric H. Gibbs (SBN 178658)
Amy M. Zeman (SBN 273100)
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Email: ehg@classlawgroup.com
amz@classlawgroup.com

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

CAROLINE GUNNER,

        Plaintiff,

v.

SANOFI US SERVICES INC. F/K/A
SANOFI-AVENTIS U.S. INC., SANOFI-
AVENTIS U.S. LLC

        Defendants.

Case No. 2:17-cv-11785

## EXHIBIT A

### Claim for Strict Products Liability – Design and Manufacturing Defects – Against All Defendants

1.      At all times relevant, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have recently acquired the entities that have designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed TAXOTERE® as hereinabove described that was used by Plaintiff.

2.      TAXOTERE® was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

3.      At those times, TAXOTERE® was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, Plaintiff.

4.      The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of TAXOTERE®.

5.      The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design and/or formulation, in that, when it left the hands of Defendants, manufacturers, and/or suppliers, it was unreasonably dangerous, and it was more dangerous and posed risk greater than an ordinary consumer would expect. At all times relevant, TAXOTERE® was in a defective condition and unsafe, and Defendants knew or had reason to know that TAXOTERE® was defective and unsafe, especially when used in the form and manner as provided by Defendants.

6.      Defendants knew, or should have known, that at all times relevant, TAXOTERE® was in a defective condition and was and is inherently dangerous and unsafe.

7.      At the time of Plaintiff's use of TAXOTERE®, the TAXOTERE® was being used for the purposes and in a manner normally intended, namely for the treatment of breast cancer.

8.      Defendants with this knowledge voluntarily designed TAXOTERE® in a dangerous condition for use by the public, and in particular, Plaintiff.

9.      Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

10.     In creating TAXOTERE®, Defendants created a product that was and is unreasonably dangerous for its normal, intended use, and a safer alternative design existed.

11.     The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was manufactured defectively and was unreasonably dangerous to its intended users.

12.     The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants reached the intended users in the same

2

defective and unreasonably dangerous condition in which Defendants' TAXOTERE® was manufactured.

13.      Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product that created an unreasonable risk to the health of consumers and to Plaintiff in particular; and Defendants are therefore strictly liable for the injuries sustained by Plaintiff

14.      Plaintiff and Plaintiff's physicians could not, by the exercise of reasonable care, have discovered TAXOTERE®'s defects mentioned herein and perceived its danger.

15.      The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that the product created a risk of serious and dangerous side effects including disfigurement from permanent alopecia as well as other severe and personal injuries that are permanent and lasting in nature, and Defendants failed to adequately warn of these risks.

16.      The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings and/or inadequate testing.

17.      The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including disfigurement from permanent alopecia, as well as other severe and permanent health consequences from TAXOTERE®, they failed to provide

3

adequate warnings to users or consumers of the product, and they continued to improperly advertise, market, and/or promote TAXOTERE®.

18.     By reason of the foregoing, Defendants are strictly liable to Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of TAXOTERE®, a defective product.

19.     Defendants' defective design, manufacturing defect, and inadequate warnings of TAXOTERE® were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

20.     The defects in Defendants' drug TAXOTERE® were a producing cause and a substantial factor in causing Plaintiff's injuries.

21.     As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

**Claim for Breach of Implied Warranty – Against All Defendants**

22.     At all times relevant, Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted, and sold TAXOTERE® and/or have recently acquired the entities that have manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted, and sold TAXOTERE® for the treatment of various forms of cancer.

4

23.     At the time Defendants marketed, sold, and distributed TAXOTERE® for use by Plaintiff, Defendants knew of the use for which TAXOTERE® was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

24.     Defendants impliedly represented and warranted to the users of TAXOTERE® and their physicians, and/or healthcare providers that TAXOTERE® was safe and of merchantable quality and fit for the ordinary purpose for which it was to be used.

25.     Defendants' aforementioned representations and warranties were false, misleading, and inaccurate in that TAXOTERE® was unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

26.     Plaintiff, Plaintiff's physicians, members of the medical community, and healthcare professionals relied on this implied warranty of merchantability of fitness for a particular use and purpose.

27.     Plaintiff, Plaintiff's physicians, and Plaintiff's healthcare professionals reasonably relied upon the skill and judgment of Defendants as to whether TAXOTERE® was of merchantable quality and safe and fit for its intended use.

28.     TAXOTERE® was placed into the stream of commerce by Defendants in a defective, unsafe, and inherently dangerous condition.

29.     TAXOTERE® was expected to and did reach users, handlers, and persons coming into contact with TAXOTERE® without substantial change in the condition in which it was sold.

30.     Defendants breached the aforementioned implied warranties, as their drug TAXOTERE® was not fit for its intended purposes and uses.

5

31.      As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

**Claim for Extreme and Outrageous Conduct / Intentional Infliction of Emotional Distress – Against All Defendants)**

32.      Defendants' conduct, as set forth above, was extreme and outrageous.

33.      Defendants' actions were done recklessly or with the intent of causing Plaintiff severe emotional distress; and

34.      Defendants' conduct caused Plaintiff severe emotional distress.

35.      As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

**Punitive Damages**

36.     Plaintiff repeats, reiterates, and re-alleges all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

37.     Plaintiff is entitled to an award of punitive and exemplary damages based upon Defendants' intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and Defendants' reckless disregard for the public safety and welfare. Defendants intentionally and fraudulently misrepresented facts and information to both the medical community and the general public, including Plaintiff, by making intentionally false and fraudulent misrepresentations about the side effects of the docetaxel (TAXOTERE®). Defendants intentionally concealed the true facts and information regarding the serious risks associated with the products, and intentionally downplayed the type, nature, and extent of the adverse side effects despite Defendants' knowledge and awareness of the serious side effects and risks associated with the docetaxel (TAXOTERE®) product.

38.     Defendants had knowledge of, and were in possession of evidence demonstrating that the docetaxel (TAXOTERE®) product caused serious side effects. Notwithstanding Defendants' knowledge of the serious side effects, Defendants continued to market the drug products by providing false and misleading information with regard to the product's safety to the regulatory agencies, the medical community, and consumers of the docetaxel (TAXOTERE®) product.

39.     Defendants failed to provide warning that would have dissuaded health care professionals and consumers from purchasing and ingesting the docetaxel (TAXOTERE®) product, thus depriving both from weighing the true risks against the benefits of prescribing, purchasing or consuming the product.

40.	Defendant knew of the product's defective nature as set forth herein, but continued to design, manufacture, market, distribute, sell and/or promote the drug as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiffs in a conscious or negligent disregard of the foreseeable harm caused.

41.	The acts, conduct, and omissions of Defendants, as alleged throughout this Complaint were willful and malicious. Defendants committed these acts with knowing, conscious, and deliberate disregard for the rights, health, and safety of Plaintiffs and for the primary purpose of increasing Defendants' profits from the sale and distribution of the products. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example out of Defendants.