# Exhibit C

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 <br><br> SECTION "H" (5) |
| THIS DOCUMENT RELATES TO: <br><br> *Carolyn A. Huddleston, et al. v. Sanofi U.S. Services, Inc., et al.* <br><br> EDLA Case No. 2:17-cv-13906 | HON. JANE T. MILAZZO |

### AMENDED SHORT FORM COMPLAINT (Effective as of May 13, 2020)[1]

Plaintiff(s) incorporate by reference the Second Amended Master Long Form Complaint and Jury Demand filed in the above referenced case on September 27, 2018 (Doc. 4407). Pursuant to Pretrial Order No. 15, this [Original/**Amended**] Short Form Complaint adopts allegations and encompasses claims as set forth in the Second Amended Master Long Form Complaint against Defendant(s).

Plaintiff(s) further allege as follows:

1. Plaintiff:

   Carolyn A. Huddleston

2. Spousal Plaintiff or other party making loss of independent/secondary claim (i.e., loss of consortium):

   Bernard Huddleston

3. Other type of Plaintiff and capacity (i.e., administrator, executor, guardian, conservator):

   N/A

4. Current State of Residence: Mississippi
5. State in which Plaintiff(s) allege(s) injury: Georgia

---

[1] This version of the Short Form Complaint supersedes all prior versions of the form pursuant to Pretrial Order No. 73A. This Court-approved version of the Short Form Complaint is available on the Court's Taxotere webpage and through MDL Centrality.

6. Defendants (check all Defendants against whom a Complaint is made):

 a. Taxotere Brand Name Defendants

  ☐   A.   Sanofi US Services Inc. f/k/a Sanofi-Aventis U.S. Inc.

  ☐   B.   Sanofi-Aventis U.S. LLC

 b. Other Brand Name Drug Sponsors, Manufacturers, Distributors

  ☐   A.   Sandoz Inc.

  ☐   B.   Accord Healthcare, Inc.

  ☐   C.   McKesson Corporation d/b/a McKesson Packaging

  ☑   D.   Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc.

  ☑   E.   Hospira, Inc.

  ☐   F.   Sun Pharma Global FZE

  ☐   G.   Sun Pharmaceutical Industries, Inc. f/k/a Caraco Pharmaceutical Laboratories Ltd.

  ☐   H.   Pfizer Inc.

  ☐   I.   Actavis LLC f/k/a Actavis Inc.

  ☐   J.   Actavis Pharma, Inc.

  ☐   K.   Sagent Pharmaceuticals, Inc.

  ☐   L.   Other:

7. Basis for Jurisdiction:

 ☑   Diversity of Citizenship

 ☐   Other (any additional basis for jurisdiction must be pled in sufficient detail as required by the applicable Federal Rules of Civil Procedure):

2

8. Venue:

District Court and Division in which remand and trial is proper and where you might have otherwise filed this Short Form Complaint absent the direct filing Order entered by this Court:

> Northern District of Georgia, Atlanta Division

9. Brand Product(s) used by Plaintiff (check applicable):

- ☐ A. Taxotere
- ☐ B. Docefrez
- ☒ C. Docetaxel Injection
- ☒ D. Docetaxel Injection Concentrate
- ☐ E. Unknown
- ☐ F. Other:

10. First date and last date of use (or approximate date range, if specific dates are unknown) for Products identified in question 9:

> Approximately April through August 2012

11. State in which Product(s) identified in question 9 was/were administered:

> Georgia

3

12. Nature and extent of alleged injury (including duration, approximate date of onset (if known), and description of alleged injury):

> Severe and personal injuries that are permanent and lasting in nature including economic and non-economic damages, harms and losses, including, but not limited to: past and future medical expenses; any psychological counseling and therapy expenses; any past and future loss of earnings; any past and future loss and impairment of earning capacity, permanent disfigurement, including permanent and/or persistent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present and future physical and mental pain, suffering and discomfort; and past, present and future loss and impairment of the quality and enjoyment of life.
>
> Plaintiff also took hormonal treatments. Plaintiff began taking letrozole on about January 7, 2013 and continued on the drug until about June 28, 2018. HUDDLESTON-WALMARTPRECS-0000023; HUDDLESTON-WALMARTPRECS-000006.

4

13. Counts in Master Complaint brought by Plaintiff(s):

- ☑ Count I – Strict Products Liability – Failure to Warn
- ☑ Count III – Negligence
- ☑ Count IV – Negligent Misrepresentation
- ☑ Count V – Fraudulent Misrepresentation
- ☑ Count VI – Fraudulent Concealment
- ☑ Count VII – Fraud and Deceit

- ☑ Other: Plaintiff(s) may assert the additional theories and/or State Causes of Action against Defendant(s) identified by selecting "Other" and setting forth such claims below. If Plaintiff(s) include additional theories of recovery, for example, applicable state law or state consumer protection claims, the specific facts and allegations supporting additional theories must be pleaded by Plaintiff in sufficient detail as required by the applicable Federal Rules of Civil Procedure.

Additional Claims and Allegations

14. TAXOTERE® was defective in its design. TAXOTERE® was designed as an increased potency Taxane. This increased potency resulted in increased toxicity, which can be directly related to increased adverse events. The most likely reason Defendants designed the increased potency Taxane was to enable them to obtain a patent (and the concurrent market advantage) on a product that in fact was not novel but instead only more dangerous.

15. At all times relevant, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have recently acquired the entities that have designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed TAXOTERE® as hereinabove described that was used by Plaintiff.

16. TAXOTERE® was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

17. At those times, TAXOTERE® was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, Plaintiff.

18. The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design or formulation

5

in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of TAXOTERE®.

19. The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design and/or formulation, in that, when it left the hands of Defendants, manufacturers, and/or suppliers, it was unreasonably dangerous, and it was more dangerous and posed risk greater than an ordinary consumer would expect.

20. At all times relevant, TAXOTERE® was in a defective condition and unsafe, and Defendants knew or had reason to know that TAXOTERE® was defective and unsafe, especially when used in the form and manner as provided by Defendants.

21. Defendants knew, or should have known, that at all times relevant, TAXOTERE® was in a defective condition and was and is inherently dangerous and unsafe.

22. At the time of Plaintiff's use of TAXOTERE®, the TAXOTERE® was being used for the purposes and in a manner normally intended, namely for the treatment of breast cancer.

23. Defendants with this knowledge voluntarily designed TAXOTERE® in a dangerous condition for use by the public, and in particular, Plaintiff.

24. Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

25. In creating TAXOTERE®, Defendants created a product that was and is unreasonably dangerous for its normal, intended use, and a safer alternative design existed.

26. The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was manufactured defectively and was unreasonably dangerous to its intended users.

27. The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants reached the intended users

6

in the same defective and unreasonably dangerous condition in which Defendants' TAXOTERE® was manufactured.

28. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product that created an unreasonable risk to the health of consumers and to Plaintiff in particular; and Defendants are therefore strictly liable for the injuries sustained by Plaintiff.

29. Plaintiff and Plaintiff's physicians could not, by the exercise of reasonable care, have discovered TAXOTERE®'s defects mentioned herein and perceived its danger.

30. The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that the product created a risk of serious and dangerous side effects including disfigurement from permanent alopecia as well as other severe and personal injuries that are permanent and lasting in nature, and Defendants failed to adequately warn of these risks.

31. The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings and/or inadequate testing.

32. The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post- marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including disfigurement from permanent alopecia, as well as other severe and permanent health consequences from TAXOTERE®, they failed to provide adequate warnings to users or consumers of the product, and they continued to improperly advertise, market, and/or promote TAXOTERE®.

33. By reason of the foregoing, Defendants are strictly liable to Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of TAXOTERE®, a defective product.

34. Defendants' defective design, manufacturing defect, and inadequate warnings of TAXOTERE® were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

35. The defects in Defendants' drug TAXOTERE® were a producing cause and a substantial factor in causing Plaintiff's injuries.

36. As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: any past and future medical expenses; any past and future loss of earnings; any past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

37. Plaintiff is within the applicable statutes of limitations for the claims presented herein because Plaintiff did not discover the defects and unreasonably dangerous condition of Defendants' TAXOTERE® and the risks associated with its use in the form of disfiguring permanent alopecia, and could not reasonably have discovered the defects and unreasonably dangerous condition of Defendants' TAXOTERE® and the risks associated with its use, due to the Defendants' failure to warn, suppression of important information about the risks of the drug, including but not limited to the true risk benefit profile, and the risk of disfiguring permanent alopecia and damages known by Defendants to result from the use of TAXOTERE®, and other acts and omissions.

38. In addition, Defendants are estopped from relying on any statutes of limitations or repose by virtue of their acts of fraudulent concealment, affirmative misrepresentations and omissions, which include Defendants' intentional concealment from Plaintiff, Plaintiff's prescribing health care professionals and the general consuming public that Defendants' TAXOTERE® was defective, unreasonably dangerous and carried with it the serious risk of developing the injuries Plaintiff has

8

suffered while aggressively and continually marketing and promoting TAXOTERE® as safe and effective. This includes, but is not limited to, Defendants' failure to disclose and warn of the risk of disfiguring permanent alopecia and injuries known by Defendants to result from use of TAXOTERE®, for example, and not by way of limitation, internal concern about reports and studies finding an increased risk of disfiguring permanent alopecia; suppression of information about these risks and injuries from physicians and patients, including Plaintiff; use of sales and marketing documents and information that contained information contrary to the internally held knowledge regarding the aforesaid risks and injuries; and overstatement of the efficacy and safety of TAXOTERE®.

39. Defendants had a duty to disclose that TAXOTERE® was defective, unreasonably dangerous and that the use of Defendants' TAXOTERE® carried with it the serious risk of developing disfiguring permanent alopecia as the Plaintiff has suffered. Defendants breached that duty.

40. Plaintiff, Plaintiff's prescribing health care professionals and the general consuming public, had no knowledge of, and no reasonable way of discovering, the defects found in Defendants' TAXOTERE® or the true risks associated with her use at the time she purchased and used Defendants' TAXOTERE®.

41. Defendants did not notify, inform, or disclose to Plaintiff, Plaintiff's prescribing health care professionals or the general consuming public that Defendants' TAXOTERE® was defective and that its use carried with it the serious risk of developing the injuries Plaintiff has suffered and complained of herein.

42. Because Defendants failed in their duty to notify Plaintiff, Plaintiff's prescribing health care professionals and the general consuming public that their TAXOTERE® was defective and, further, actively attempted to conceal this fact, Defendants should be estopped from asserting defenses based on statutes of limitation or repose.

43. Accordingly, Plaintiff files this lawsuit within the applicable statutes of limitations, Plaintiff could not by exercise of reasonable diligence have discovered any wrongdoing, nor could have discovered the causes of her injuries at an earlier time, and

when Plaintiff's injuries were discovered, their causes were not immediately known or knowable based on the lack of necessary information, which was suppressed by the Defendants.

44. Further, the relationship of Plaintiff's injuries to TAXOTERE® exposure through the Defendants' drug was inherently difficult to discover, in part due to the Defendants' knowing suppression of important safety information. Consequently, the discovery rule should be applied to toll the running of the statutes of limitations until Plaintiff discovered, or by the exercise of reasonable diligence should have discovered, that Plaintiff may have a basis for an actionable claim.

45. Plaintiff's permanent injuries were latent, unknown or otherwise undiscoverable as they were disguised by the anticipated temporary hair loss associated with chemotherapy treatment.

46. Plaintiff was told by her healthcare providers before and during her treatment for cancer to anticipate temporary hair loss but that her hair would grow back.

47. Plaintiff is a lay person that was, until recently, unaware that chemotherapy could cause permanent hair loss. Furthermore, she was unaware of any definition of permanent hair loss, particularly any definition based upon a set number of months without regrowth.

48. Upon information and belief, Plaintiff has not been diagnosed by a medical professional with permanent hair loss related to the administration of TAXOTERE® /docetaxel.

49. Plaintiff was unaware of any associations between chemotherapy, including Taxotere, and permanent hair loss being made in the media or other avenues of public discourse.

50. During Plaintiff's consultations with her healthcare providers and others, she was encouraged to be patient and that her hair would come back. These encouragements continued long after 6 months had elapsed following Plaintiff's completed chemotherapy treatments.

51. Name of Attorney(s), Bar Number(s), Law Firm(s), Phone Number(s), Email Address(es) and Mailing Address(es) representing Plaintiff(s):

>By: /s/ Carasusana B. Wall
>Carasusana B. Wall (OH 0090234)
>Michelle L. Kranz (OH 0062479)
>Jessica M. Worley (0098427)
>ZOLL & KRANZ, LLC
>6620 W. Central Avenue, Suite 100
>Toledo, OH 43617
>Tel. (419) 841-9623
>Fax: (419) 841-9719
>Email: cara@toledolaw.com
>michelle@toledolaw.com
>jessica@toledolaw.com
>
>*Counsel for Plaintiff*