MOTION FOR SUMMARY JUDGMENT ON SPECIFIC CAUSATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

***************************************************************

IN RE: TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

                        Civil Action No. 16-MD-2740
                        Section "H"(5)
                        New Orleans, Louisiana
                        December 14, 2020

THIS DOCUMENT RELATES TO ALL CASES
***************************************************************

TRANSCRIPT OF SANOFI'S MOTION FOR SUMMARY JUDGMENT ON
SPECIFIC CAUSATION
HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:

        *DAWN BARRIOS*
        BARRIOS KINGSDORF & CASTEIX
        701 POYDRAS STREET
        SUITE 3650
        NEW ORLEANS, LA 70139

        *MATTHEW PALMER LAMBERT*
        GAINSBURGH BENJAMIN DAVID MEUNIER
        & WARSHAUER
        1100 POYDRAS STREET
        SUITE 2800
        NEW ORLEANS, LA 70163

        *CHRISTOPHER COFFIN*
        PENDLEY BAUDIN & COFFIN
        1515 POYDRAS STREET
        NEW ORLEANS, LA 70112

        *KAREN BARTH MENZIES*
        GIBBS LAW GROUP
        400 CONTINENTAL BOULEVARD
        EL SUGUNDO, CA 90245

APPEARANCES CONTINUED

MOTION FOR SUMMARY JUDGMENT ON SPECIFIC CAUSATION

        *DARIN SCHANKER*
        BACHUS & SCHANKER
        1899 WYNKOOP STREET
        SUITE 700
        DENVER, CO 80202

        *DAVID F. MICELI*
        SIMMONS HANLY CONROY
        ONE COURT STREET
        ALTON, IL 62002

FOR SANOFI S.A.:

        *HARLEY V. RATLIFF*
        *TORREY PETERSON*
        *JORDAN BAEHR.*
        *CONNER J. SEARS*
        SHOOK HARDY & BACON
        2555 GRAND BOULEVARD
        KANSAS CITY, MS 64108

        *DOUGLAS MOORE*
        *KELLY E. BRILLEAUX*
        IRWIN FRITCHIE URQUHART & MOORE
        400 POYDRAS STREET
        SUITE 2700
        NEW ORLEANS, LA 70130

        *JON STRONGMAN*
        SHOOK, HARDY & BACON
        1155 F STREET NW, SUITE 200
        WASHINGTON, DC  20004

FOR HOSPIRA, INC., HOSPIRA WORLDWIDE, LLC,
FORMERLY DOING BUSINESS AS HOSPIRA WORLDWIDE, INC.,
AND PFIZER, INC.:

        *JOHN F. OLINDE*
        CHAFFE MCCALL
        1100 POYDRAS STREET
        SUITE 2300
        NEW ORLEANS, LA 70163

FOR SANDOZ, A NOVARTIS DIVISION:

        *NICHOLAS INSOGNA*
        GREENBERG TRAURIG
        3333 PIEDMONT ROAD NE
        SUITE 2500
        ATLANTA, GA 30305

─ MOTION FOR SUMMARY JUDGMENT ON SPECIFIC CAUSATION ─

APPEARANCES CONTINUED

FOR SANDOZ, A NOVARTIS DIVISION:

    *DEBORAH C. ROUEN*
    ADAMS & REESE
    701 POYDRAS STREET
    SUITE 4500
    NEW ORLEANS, LA 70139

FOR ACCORD HEALTHCARE, INC.:

    *BRENDA A. SWEET*
    *JULIE A. CALLSEN*
    TUCKER ELLIS
    950 MAIN AVENUE
    SUITE 1100
    CLEVELAND, OH 44113

FOR SUN PHARMACEUTICAL:

    *GEOFFREY M. COAN*
    HINSHAW & CULBERTSON, LLP
    28 STATE STREET
    FLOOR 24
    BOSTON, MA 02109


Official Court Reporter:    Nichelle N. Wheeler, RPR, CRR
    500 Poydras Street, B-275
    New Orleans, Louisiana 70130
    (504) 589-7775

Proceedings recorded by mechanical stenography, transcript produced via computer.

MOTION FOR SUMMARY JUDGMENT ON SPECIFIC CAUSATION

I N D E X

```
                                                         Page
ORAL ARGUMENT
   BY MR. MOORE                                             5
   BY MR. SCHANKER                                         13
   BY MR. MOORE                                            17
```

MOTION FOR SUMMARY JUDGMENT ON SPECIFIC CAUSATION

**1**         **P R O C E E D I N G S**

**2**                (Call to order of the court.)

12:15:49PM **3**        THE COURT:  Mr. Moore?

12:15:49PM **4**        MR. MOORE:  I'm going to go ahead and share my

12:15:54PM **5**  screen, Judge.  Hopefully you can see that.

12:15:57PM **6**        I wanted to start with I think -- I'm going to try

12:16:05PM **7**  and do my best to get through this argument quickly.  We have

12:16:10PM **8**  not done a very good job adhering to the seven-minute rule

12:16:13PM **9**  today, and I was struck by some of the comments made by Mr.

12:16:18PM **10** Miceli and then also by Mr. Lambert and then again by

12:16:21PM **11** Mr. Schanker, because it felt like we were rearguing the

12:16:24PM **12** alternative causation motion that we presented back in my

12:16:30PM **13** office in October.  I argued that motion.  And I also heard

12:16:34PM **14** something about the *Grier* summary judgment motion, that

12:16:36PM **15** because we dispute causation, that somehow makes all the

12:16:41PM **16** cases timely.

12:16:42PM **17**       What I'm going to try and do is focus my comments on

12:16:46PM **18** really two issues that we raised in our motion.  The second

12:16:50PM **19** issue will be the one that I think Mr. Schanker was just

12:16:53PM **20** getting to in his presentation, so he will be able to pick up

12:16:57PM **21** right where he left off when I get done.

12:17:00PM **22**       The first issue though comes from page 8 of our

12:17:03PM **23** motion where we make the observation, the point that in this

12:17:06PM **24** litigation, the PSC has advanced no scientific or medical

12:17:13PM **25** evidence that Ms. Kahn's hair would look any different if she

— MOTION FOR SUMMARY JUDGMENT ON SPECIFIC CAUSATION —

1    proceeded with chemotherapy and endocrine therapy but without
2    Taxotere.  And I think that's a profound point in the
3    specific causation case, and to understand why, I think it's
4    useful to think about where this litigation started.
5         When this litigation began and it was before Your
6    Honor was assigned, when it was with Judge Engelhardt, we had
7    a large meeting.  Both sides submitted position papers, and
8    one of the issues Sanofi raised was we had concerns about
9    whether or not the scientific evidence that associated
10   Taxotere with this side effect was sufficient to establish
11   causation in a court of law.  And Dr. Kessler told us as the
12   litigation proceeded that the FDA standard of reasonable
13   evidence of a causal association, that doesn't get you over
14   that hurdle.  And so we were concerned about that.
15        We were also concerned -- we raised this at the
16   beginning -- that the sufficiency of evidence associating
17   Taxotere with this condition was of no better quality than
18   the sufficiency of evidence associating this condition with
19   other chemotherapy agents.  And one of the things that we
20   mentioned to the Court, both with Judge Engelhardt and I
21   believe with yourself at various times, Your Honor, is -- if
22   I can get my slides to work -- there we go -- the courtroom
23   is not the place for scientific guesswork, even of the
24   inspired sort.  The law lags science; it does not lead it.
25        And so if we look back at where this litigation

MOTION FOR SUMMARY JUDGMENT ON SPECIFIC CAUSATION

began, how this litigation was built, it was built upon the proposition -- trying to move my face around so I can see my actual slides -- there we go -- that most women report that they were not told of safer alternatives such as Taxol, and studies show Taxol to be as effective as Taxotere but without the risk of permanent hair loss.  That -- I've literally copied this from a random plaintiff lawyer's website advertising for Taxotere cases.  And so if we look at why -- and the Kahn case is a good example of where this litigation has progressed because the Kahn case is one of the original cases selected for workup.  And when Mr. Miceli took the deposition of Dr. Kardinal, that was his -- he went through all the other options of chemotherapy for Ms. Kahn and he said that one wouldn't be efficacious, that one would be a first generation, that would put her at a higher risk, I wouldn't use that.  But he gets to Paclitaxel which is Taxol, and he asks the homerun question, had she been warned about this risk with docetaxel with the combination of Paclitaxel, Cytoxan and Adriamycin.  Those are the generic words in the question there -- be an adequate treatment option for that person.  And he says, well, it should be fairly equivalent. So that's how this case was litigated even with the prescribing doctors.

And it is also how this case was litigated through the Earnest trial.  As Your Honor noticed in the motion for

| | | |
|---|---|---|
| 12:20:36PM | 1 | summary judgment rulings there, you indicated that the court |
| 12:20:40PM | 2 | would have to -- the jury would have to decide whether |
| 12:20:44PM | 3 | Earnest would have chosen Paclitaxel despite her neuropathy |
| 12:20:49PM | 4 | or whether she would have still chosen Taxotere knowing of |
| 12:20:51PM | 5 | its risk of permanent alopecia.  But two months before the |
| 12:20:56PM | 6 | Taxotere or for the Earnest trial, Dr. Freites-Martinez |
| 12:21:00PM | 7 | publishes his article.  He was joined by the plaintiff's |
| 12:21:03PM | 8 | expert, Dr. Tosti.  It's cited by five experts.  It was |
| 12:21:07PM | 9 | discussed lengthily at the trial, and what that study |
| 12:21:13PM | 10 | showed -- shows us is that for the taxane-based chemotherapy |
| 12:21:18PM | 11 | regimens, there were actually more cases in that study which |
| 12:21:22PM | 12 | was touted as the largest dermatological driven study of PCIA |
| 12:21:28PM | 13 | to date.  There are more cases of PCIA associated with |
| 12:21:33PM | 14 | Paclitaxel versus docetaxel. |
| 12:21:36PM | 15 | So why is that relevant to the specific causation |
| 12:21:39PM | 16 | issues in Ms. Kahn's case?  Because we asked her prescribing |
| 12:21:45PM | 17 | doctors -- this is the testimony from Dr. Lauder (phonetic). |
| 12:21:49PM | 18 | We asked Dr. Kardinal the same question.  Can you say that |
| 12:21:53PM | 19 | her hair would look any different if she had received Taxol |
| 12:21:57PM | 20 | instead of Taxotere?  And they can't say that.  And the |
| 12:22:00PM | 21 | reason that they can't say that is because science did not |
| 12:22:03PM | 22 | lead us down the path that the plaintiffs charted out for |
| 12:22:06PM | 23 | this litigation because Taxol is associated with PCIA. |
| 12:22:10PM | 24 | And we heard Mr. Miceli say today that, well, you |
| 12:22:15PM | 25 | don't know the incidence rate of Taxol or for Adriamycin or |

12:22:21PM  1  Cyclophosphamide or for these other medicines, you don't know
12:22:26PM  2  the incidence rate.  You've never calculated the incidence
12:22:28PM  3  rate.  There's never been an epidemiological analysis by
12:22:32PM  4  someone like Dr. Madigan to tell us what the risk for those
12:22:36PM  5  medicines are.  But in a case where you're dealing -- not
12:22:39PM  6  with what you said the case was.  They said that there was no
12:22:42PM  7  risk with Taxol and we know that that is incorrect.  We know
12:22:47PM  8  that from studies published by their own expert and by the
12:22:52PM  9  admissions of their own experts.  And so if you're trying to
12:22:55PM 10  prove, well, the risk is greater with Taxotere, then you got
12:22:58PM 11  to show us what the risk for those other medicines are and
12:23:03PM 12  you got to be able to come in court and have someone say that
12:23:04PM 13  had she received Taxotere or some other chemotherapy regimen
12:23:06PM 14  her hair would look different and we don't have that in this
12:23:09PM 15  case.  We haven't had that in any of these cases, and since
12:23:12PM 16  this article was published, we really haven't heard anything
12:23:16PM 17  about Taxol anymore.
12:23:19PM 18            So turning to the second point and the one that
12:23:25PM 19  Mr. Schanker was addressing right before he turned it over to
12:23:29PM 20  Mr. Strongman on rebuttal, it relates to the differential
12:23:36PM 21  diagnosis and what has to happen in order for Dr. Tosti,
12:23:40PM 22  who's their only specific causation expert, to establish a
12:23:45PM 23  prima facie case of causation such that this case should
12:23:49PM 24  proceed past Rule 56.
12:23:52PM 25            And so what we have noted -- and I think we

MOTION FOR SUMMARY JUDGMENT ON SPECIFIC CAUSATION

| | | |
|---|---|---|
| 12:23:55PM | 1 | established this through our alternative causation briefing |
| 12:23:59PM | 2 | that alternative causation is not an affirmative defense.  We |
| 12:24:03PM | 3 | do not have a burden of proof on alternative caution or on |
| 12:24:07PM | 4 | causation at all.  Our responsibility is to do exactly what |
| 12:24:10PM | 5 | Your Honor said, and that is attack the opinions that they |
| 12:24:13PM | 6 | come forward with.  And they have to prove with reasonable |
| 12:24:19PM | 7 | certainty that all other alternatives are impossible.  And as |
| 12:24:22PM | 8 | Your Honor said in your ruling related to the prior trials, |
| 12:24:26PM | 9 | the differential diagnosis begins by ruling in all |
| 12:24:30PM | 10 | scientifically plausible causes of the plaintiff's injury and |
| 12:24:33PM | 11 | then ruling them out. |
| 12:24:34PM | 12 | And so in Ms. Kahn's case, what are the alternative |
| 12:24:40PM | 13 | causes?  Here we go.  In Ms. Kahn's case, she took |
| 12:24:53PM | 14 | Adriamycin.  She took Cytoxan.  She took tamoxifen.  She took |
| 12:24:59PM | 15 | Lisinopril.  She took testosterone therapy.  She has |
| 12:25:03PM | 16 | androgenetic alopecia based on her pathology.  So as it |
| 12:25:07PM | 17 | relates to these specific potential causes, Dr. Tosti does |
| 12:25:15PM | 18 | not rule all of them out.  So, for example, we asked her |
| 12:25:20PM | 19 | about Adriamycin Cyclophosphamide.  She said -- her testimony |
| 12:25:24PM | 20 | was I don't want to rule out the other ones because I believe |
| 12:25:27PM | 21 | it's a combination.  Then she goes on to make a pretty |
| 12:25:31PM | 22 | profound admission in the case where she explains that |
| 12:25:37PM | 23 | Taxotere taken in monotherapy, patients don't have this |
| 12:25:42PM | 24 | problem.  And she doesn't explain that how if it doesn't |
| 12:25:46PM | 25 | happen with Taxotere by itself, that that becomes the key |

1  factor in all of this, but her testimony is that Taxotere by
2  itself doesn't cause this condition, so she can't rule out
3  Adriamycin and Cyclophosphamide because she now believes it's
4  the combination of these medicines together.
5       We asked her whether she could rule out androgenetic
6  alopecia.  She says, "I think it's very unlikely, but I
7  cannot rule it out."  And, of course, she can't rule it out
8  because the pathologist that she referred the patient's
9  biopsies to concluded that she has it.  And there it is,
10 female pattern hair loss, androgenetic alopecia from the
11 frontal biopsy.
12      What about endocrine therapy?  I don't think she has
13 endocrine alopecia, but I don't think I can rule it out.  And
14 so we cited to the Court the *Wheat versus Pfizer* case, and
15 this was a case where a patient had taken a pain medication
16 called Feldene and then they had also taken another pain
17 medicine combination --
18      THE COURT:  I read -- I read -- I'm familiar with
19 *Wheat versus Pfizer*.
20      MR. MOORE:  Okay.  And so the point that we wanted to
21 make with this, Judge, is that that Court recognized that
22 there's -- there was no evidence excluding the possibility of
23 other plausible explanations for the injury.  And so whether
24 it was the combination of medicines, whether it was, you
25 know, a viral exposure, whether it was something completely

MOTION FOR SUMMARY JUDGMENT ON SPECIFIC CAUSATION

12:27:12PM   1   unrelated to the medicine, those were not ruled out.
12:27:16PM   2           And so what does that tell us about Dr. Tosti's
12:27:18PM   3   testimony?  And this is just really a hit list of the
12:27:22PM   4   admissions that we think establish that we're entitled to
12:27:27PM   5   judgment as a matter of law under Rule 56.  Patients taking
12:27:30PM   6   Taxotere alone don't have PCIA.  Adriamycin, Cytoxan, she
12:27:34PM   7   does not want to rule them out.  Androgenetic alopecia, she
12:27:37PM   8   confirms she has it and says, "I cannot rule it out."
12:27:40PM   9   Endocrine therapy, "I don't think I can rule it out.  I don't
12:27:42PM  10   think I can rule it out."  The combination therapy, she ended
12:27:45PM  11   with the statement when pressed on this testimony, "It's more
12:27:48PM  12   complicated.  I don't know."
12:27:50PM  13           And the point of our Rule 56 motion, Your Honor, is
12:27:53PM  14   that when this is the testimony that the plaintiff's specific
12:27:59PM  15   causation is going to come into court and say, "I can't rule
12:28:02PM  16   it out, I can't rule it out, it's complicated, I don't know,"
12:28:05PM  17   that is the sort of testimony that Rule 56 was designed to
12:28:11PM  18   prevent people from having to leave their jobs and to leave
12:28:14PM  19   their homes to come into court and listen to an expert say
12:28:17PM  20   this.  This does not clear the hurdle.  She has to say the
12:28:22PM  21   words "I rule them out."  And she doesn't.  She says that she
12:28:25PM  22   cannot.  And that means that we're entitled to judgment as a
12:28:28PM  23   matter of law.
12:28:29PM  24           Does it mean that we win the whole litigation?  No.
12:28:32PM  25   Does it mean that the Taxotere MDL is over?  No.  It means

---- MOTION FOR SUMMARY JUDGMENT ON SPECIFIC CAUSATION ----

| | | |
|---|---|---|
| 12:28:35PM | 1 | that Dr. Tosti's testimony in the Kahn case is insufficient |
| 12:28:38PM | 2 | to clear the specific causation hurdle for creating a |
| 12:28:42PM | 3 | material issue of genuine fact, and for that reason, Your |
| 12:28:45PM | 4 | Honor, we think we should be entitled to judgment as a matter |
| 12:28:48PM | 5 | of law. |
| 12:28:50PM | 6 | THE COURT: Thank you. Mr. Schanker? |
| 12:28:50PM | 7 | MR. MOORE: I'm going to stop sharing my screen. |
| 12:28:54PM | 8 | There we go. |
| 12:29:06PM | 9 | MR. SCHANKER: Trying to share mine. You guys don't |
| 12:29:09PM | 10 | have -- okay. |
| 12:29:16PM | 11 | Your Honor, first of all, concerning the last slide |
| 12:29:20PM | 12 | that Mr. Moore had up there, I respectfully disagree with |
| 12:29:24PM | 13 | much of the content of that and, again, that's contained in |
| 12:29:27PM | 14 | the papers. Dr. Tosti does painstakingly rule those out and |
| 12:29:34PM | 15 | those quotes or attribution of quotes are either art and |
| 12:29:39PM | 16 | they're taken out of context. And, again, the papers clarify |
| 12:29:41PM | 17 | that. And specifically -- |
| 12:29:43PM | 18 | THE COURT: I did have a problem with -- and I'm |
| 12:29:46PM | 19 | going to ask you to explain it to me because she does say |
| 12:29:51PM | 20 | it's in the combination and I was looking for the quote in |
| 12:29:55PM | 21 | her deposition. I just can't -- I cannot get my fingers on |
| 12:30:02PM | 22 | it now, but she says in the combination -- it seems that it's |
| 12:30:06PM | 23 | in the combination but Taxotere alone, no. And she was |
| 12:30:11PM | 24 | talking about causing PCIA. And I was going to ask you very |
| 12:30:17PM | 25 | specifically about that. |

MOTION FOR SUMMARY JUDGMENT ON SPECIFIC CAUSATION

```
12:30:21PM   1          MR. SCHANKER:  Yes.  And let me address that.  And
12:30:23PM   2   Dr. Tosti obviously had 25 hours approximately of her
12:30:28PM   3   deposition being taken in this case.  She is aware that the
12:30:31PM   4   fact is that there's very few monotherapy cases that exist in
12:30:37PM   5   the literature.  It's incredibly rare.  She has never seen a
12:30:41PM   6   monotherapy case herself.  Early stage breast cancer, it is
12:30:48PM   7   never used for monotherapy.  I think that that's part of why
12:30:51PM   8   she's offering that straightforward opinion.
12:30:55PM   9          But I'll note the specific cause analysis, Your
12:31:00PM  10   Honor, she looks at the studies and the literature that
12:31:03PM  11   compared -- again, her analysis is based on this combination
12:31:07PM  12   therapy.  There certainly could be a language barrier there
12:31:11PM  13   as far as that exact quote, but the full context, what has
12:31:17PM  14   Dr. Tosti looked at?  She hasn't studied anything with
12:31:21PM  15   monotherapy.  So to have her try to offer an opinion based on
12:31:24PM  16   monotherapy very well may be disingenuous, but if you look at
12:31:28PM  17   the common denominator in all of those studies, it again
12:31:33PM  18   comes back to it's overwhelmingly Taxotere and the Taxotere
12:31:36PM  19   was the variable that dramatically increases the risk of
12:31:42PM  20   significant PCIA and the Grade 2 PCIA, the type of PCIA the
12:31:49PM  21   plaintiff, Ms. Kahn, suffers from.  No one disagrees that
12:31:52PM  22   this is the type of PCIA that in order to hide it she has to
12:31:56PM  23   wear a wig.  And if you dive into those studies, as Dr. Tosti
12:32:00PM  24   did, that's what's important.
12:32:01PM  25          So I think she's just being intellectually honest.
```

MOTION FOR SUMMARY JUDGMENT ON SPECIFIC CAUSATION

```
12:32:05PM   1   Again, might be a potential language barrier, but you don't
12:32:09PM   2   have any studies based on just the monotherapy.  There's a
12:32:13PM   3   couple of case reports really, but that's it.  And so I think
12:32:15PM   4   that that is the reasonable explanation for that one question
12:32:20PM   5   and answer out of 25 hours of deposition that we -- that
12:32:25PM   6   counsel was beating on.  And I think again looking at the
12:32:28PM   7   totality of her testimony it's important to realize Mr. Moore
12:32:34PM   8   said in the papers that defense puts forth Ms. Kahn's hair
12:32:39PM   9   loss wouldn't look any different without Taxotere, and
12:32:44PM  10   Dr. Tosti specifically addresses that and says that Taxotere
12:32:47PM  11   is a cause and a substantially contributing factor to her
12:32:51PM  12   PCIA which is the law as you laid out.
12:32:55PM  13           They cite that *Hepatone* (phonetic) case, Your Honor,
12:32:57PM  14   and, again, you've read the cases and have and will be
12:33:02PM  15   briefed on those in more detail if you see fit, but they're
12:33:05PM  16   taking that out of context as well, specifically the law, as
12:33:08PM  17   you lay it out, in the Earnest case, and the Eighth Circuit
12:33:12PM  18   is -- is with you, Dr. Tosti is lockstep with that in her
12:33:18PM  19   medical causation -- specific causation analysis.  And she
12:33:23PM  20   applied that appropriate standard right here.  She says the
12:33:26PM  21   use -- this is her report.  The use of Taxotere in Ms. Kahn's
12:33:30PM  22   regimen was to a reasonable degree of scientific certainty
12:33:33PM  23   the factor that substantially contributed to her PCIA, and
12:33:37PM  24   then she goes on to rule out tamoxifen as well as the other
12:33:41PM  25   drugs that were taken.
```

```
12:33:44PM   1    And under the defendant's analysis as it's been laid
12:33:48PM   2    out in the papers on this issue, a plaintiff would never be
12:33:52PM   3    able to establish causation basically.  Defendant
12:33:55PM   4    continuously asked Dr. Tosti to opine about causation as to
12:33:59PM   5    these chemotherapies aside from Taxotere and -- but she has
12:34:07PM   6    no legal specific cause that she can offer because there was
12:34:10PM   7    no general, as we stated several times -- there's no general
12:34:13PM   8    caution of opinion on any of these other drugs and Tosti
12:34:16PM   9    knows that and she can't weigh in with a specific causation
12:34:20PM  10    opinion.  And defendants assert that Tosti can't rely on the
12:34:25PM  11    scientific literature in her analysis that's -- that's put
12:34:27PM  12    forth in the papers, but, in fact, she did previously in the
12:34:31PM  13    Earnest case, in part, and that was relied upon by this Court
12:34:36PM  14    specifically and we ask that it be relied upon again here.
12:34:39PM  15         Defendants assert that Dr. Tosti ultimately cannot
12:34:42PM  16    rely on a substantially contributing factor, but that we must
12:34:47PM  17    demonstrate that Taxotere is the only cause, but that is not
12:34:50PM  18    the standard that this Court laid out.  That's not what the
12:34:54PM  19    jury instructions have.  That's not in the law as we just
12:34:58PM  20    looked at it.  That's not the proper standard.
12:35:01PM  21         Your Honor, the long and short of it is, is that Dr.
12:35:04PM  22    Tosti, her report, the conclusions she's offered in this case
12:35:06PM  23    clearly support the specific causation elements as you laid
12:35:10PM  24    them out and as the Eighth Circuit has, and we request that
12:35:16PM  25    the motion be denied accordingly.
```

─MOTION FOR SUMMARY JUDGMENT ON SPECIFIC CAUSATION─

| | | |
|---|---|---|
| 12:35:16PM | 1 | THE COURT: Thank you. |
| 12:35:18PM | 2 | MR. SCHANKER: What else can I address, Judge? |
| 12:35:22PM | 3 | THE COURT: I'm good. |
| 12:35:23PM | 4 | MR. MOORE: Your Honor, if I could just have two |
| 12:35:25PM | 5 | quick moments. |
| 12:35:28PM | 6 | THE COURT: Okay. |
| 12:35:30PM | 7 | MR. MOORE: Take your screen down. |
| 12:35:32PM | 8 | MR. SCHANKER: Yes. |
| 12:35:33PM | 9 | MR. MOORE: Okay. Your Honor, one of the things that |
| 12:35:40PM | 10 | Mr. Schanker indicated was that Dr. Tosti ruled out endocrine |
| 12:35:48PM | 11 | therapy, and you had asked a question during the Daubert |
| 12:35:51PM | 12 | argument about the presentation or the -- of the hair loss in |
| 12:35:56PM | 13 | comparison to endocrine therapy and PCIA where the hair just |
| 12:36:00PM | 14 | doesn't come back. And you had referenced that there was a |
| 12:36:04PM | 15 | dispute about this, and what I'm showing you here is a |
| 12:36:08PM | 16 | photograph on the left of Ms. Kahn before chemotherapy and |
| 12:36:15PM | 17 | then three photographs on the right after chemotherapy. And |
| 12:36:18PM | 18 | I showed you this during I think the alternate cause |
| 12:36:21PM | 19 | presentation. Dr. Tosti testified that those photographs on |
| 12:36:26PM | 20 | the right were photographs from before chemotherapy. That |
| 12:36:32PM | 21 | was her testimony in this case. And what we know is that |
| 12:36:37PM | 22 | her -- that her, you know -- between 2009 and 2018 the |
| 12:36:42PM | 23 | picture on the right is from 2018. Between that period of |
| 12:36:47PM | 24 | time was nine years of tamoxifen use. |
| 12:36:50PM | 25 | And the last point I would make, Your Honor, is that |

―― MOTION FOR SUMMARY JUDGMENT ON SPECIFIC CAUSATION ――

| | | |
|---|---|---|
| 12:36:53PM | 1 | what Mr. Schanker focused on in his presentation were |
| 12:37:00PM | 2 | excerpts from her expert report.  Her expert report is not |
| 12:37:04PM | 3 | going in front of the jury.  Her testimony is.  And when you |
| 12:37:07PM | 4 | look at her testimony and when you look at the admissions she |
| 12:37:10PM | 5 | made, we're not saying she has to say it's the sole cause. |
| 12:37:12PM | 6 | What we're saying is, she has to rule out the other plausible |
| 12:37:17PM | 7 | causes, and she specifically said that she cannot do that. |
| 12:37:20PM | 8 | That's all, Your Honor. |
| 12:37:22PM | 9 |       THE COURT:  Thank you. |
| 12:37:22PM | 10 |       MR. SCHANKER:  Your Honor? |
| 12:37:22PM | 11 |       THE COURT:  Yes, Mr. Schanker. |
| 12:37:23PM | 12 |       MR. SCHANKER: I said Eighth Circuit three different |
| 12:37:27PM | 13 | times, and I meant Fifth Circuit.  I apologize. |
| 12:37:31PM | 14 |       THE COURT:  I was hoping. |
| 12:37:35PM | 15 |       MR. SCHANKER:  I just got a case in the Eighth |
| 12:37:38PM | 16 | Circuit, and I got it on the brain.  I apologize. |
| 12:37:41PM | 17 |       THE COURT:  That's okay.  All right.  Thank you all. |
| 12:37:42PM | 18 | We will be at recess until one o'clock.  Maybe a |
| 12:37:47PM | 19 | little bit later.  I have my call docket then.  Thank you. |
| | 20 | * * * * |
| | 21 | (WHEREUPON, the proceedings were adjourned.) |
| | 22 | * * * * |
| | 23 | |
| | 24 | |
| | 25 | |

REPORTER'S CERTIFICATE

I, Nichelle N. Wheeler, RPR, CRR, Official Court Reporter, United States District Court, Eastern District of Louisiana, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.

    /s/ Nichelle N. Wheeler
    Official Court Reporter