UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
IN RE:  TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

Civil Action No. 16-MD-2740
Section "H"(5)
New Orleans, Louisiana
December 14, 2020

THIS DOCUMENT RELATES TO ALL CASES
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TRANSCRIPT OF SANOFI'S MOTION TO EXCLUDE TESTIMONY OF
DR. ANTONELLA TOSTI
HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:

*DAWN BARRIOS*
BARRIOS KINGSDORF & CASTEIX
701 POYDRAS STREET
SUITE 3650
NEW ORLEANS, LA 70139

*MATTHEW PALMER LAMBERT*
GAINSBURGH BENJAMIN DAVID MEUNIER
& WARSHAUER
1100 POYDRAS STREET
SUITE 2800
NEW ORLEANS, LA 70163

*CHRISTOPHER COFFIN*
PENDLEY BAUDIN & COFFIN
1515 POYDRAS STREET
NEW ORLEANS, LA 70112

*KAREN BARTH MENZIES*
GIBBS LAW GROUP
400 CONTINENTAL BOULEVARD
EL SUGUNDO, CA 90245

APPEARANCES CONTINUED

———— OFFICIAL TRANSCRIPT ————

*DARIN SCHANKER*
BACHUS & SCHANKER
1899 WYNKOOP STREET
SUITE 700
DENVER, CO 80202

*DAVID F. MICELI*
SIMMONS HANLY CONROY
ONE COURT STREET
ALTON, IL 62002

FOR SANOFI S.A.:

*HARLEY V. RATLIFF*
*TORREY PETERSON*
*JORDAN BAEHR.*
*CONNER J. SEARS*
SHOOK HARDY & BACON
2555 GRAND BOULEVARD
KANSAS CITY, MS 64108

*DOUGLAS MOORE*
*KELLY E. BRILLEAUX*
IRWIN FRITCHIE URQUHART & MOORE
400 POYDRAS STREET
SUITE 2700
NEW ORLEANS, LA 70130

*JON STRONGMAN*
SHOOK, HARDY & BACON
1155 F STREET NW, SUITE 200
WASHINGTON, DC  20004

FOR HOSPIRA, INC., HOSPIRA WORLDWIDE, LLC,
FORMERLY DOING BUSINESS AS HOSPIRA WORLDWIDE, INC.,
AND PFIZER, INC.:

*JOHN F. OLINDE*
CHAFFE MCCALL
1100 POYDRAS STREET
SUITE 2300
NEW ORLEANS, LA 70163

FOR SANDOZ, A NOVARTIS DIVISION:

*NICHOLAS INSOGNA*
GREENBERG TRAURIG
3333 PIEDMONT ROAD NE
SUITE 2500
ATLANTA, GA 30305

—————— MOTION TO EXCLUDE DR. ANTONELLA TOSTI ——————

APPEARANCES CONTINUED

FOR SANDOZ, A NOVARTIS DIVISION:

                    *DEBORAH C. ROUEN*
                    ADAMS & REESE
                    701 POYDRAS STREET
                    SUITE 4500
                    NEW ORLEANS, LA 70139


FOR ACCORD HEALTHCARE, INC.:

                    *BRENDA A. SWEET*
                    *JULIE A. CALLSEN*
                    TUCKER ELLIS
                    950 MAIN AVENUE
                    SUITE 1100
                    CLEVELAND, OH 44113

FOR SUN PHARMACEUTICAL:

                    *GEOFFREY M. COAN*
                    HINSHAW & CULBERTSON, LLP
                    28 STATE STREET
                    FLOOR 24
                    BOSTON, MA 02109



Official Court Reporter:    Nichelle N. Wheeler, RPR, CRR
                            500 Poydras Street, B-275
                            New Orleans, Louisiana 70130
                            (504) 589-7775


    Proceedings recorded by mechanical stenography,
transcript produced via computer.

—————— OFFICIAL TRANSCRIPT ——————

I N D E X

|                        | Page |
|------------------------|------|
| ORAL ARGUMENT          |      |
|     BY MR. SCHANKER     | 13   |
|     BY MR. STRONGMAN    | 21   |

1          **P R O C E E D I N G S**

11:45:06AM   2                  (Call to order of the court.)

11:45:06AM   3           THE COURT:  We're ready to proceed?

11:45:13AM   4           MR. SCHANKER:  I'm ready, Your Honor.

11:45:16AM   5           THE COURT:  My problem is I'm getting feedback.  Can

11:46:18AM   6   you all hear me?

11:46:20AM   7           MR. STRONGMAN:  I can.

11:46:23AM   8           THE COURT:  Okay.  I think we're good.  So the next

11:46:26AM   9   motion is Document No. 11377, Motion to Exclude Dr. Tosti.

11:46:35AM   10          Mr. Strongman, are you ready to proceed?

11:46:37AM   11          MR. STRONGMAN:  I am, Your Honor.  Thank you.

11:46:42AM   12          Your Honor, Sanofi has brought two motions to argue

11:46:44AM   13  today, and we have split them between myself and Mr. Moore,

11:46:50AM   14  but they are related and both motions deal with the opinions

11:46:52AM   15  and testimony of Dr. Tosti.  And I wanted to give the Court a

11:46:56AM   16  little bit of an idea how the two motions fit together and

11:46:59AM   17  what I will cover and what Mr. Moore will cover.

11:47:02AM   18          In essence, Sanofi has two primary attacks on Dr.

11:47:06AM   19  Tosti's opinions and testimony.  The first is the methodology

11:47:09AM   20  that she used to reach her opinions, and that's the basis of

11:47:12AM   21  the Daubert motion that I will cover.  The second, assuming

11:47:16AM   22  that Dr. Tosti is not excluded, the second argument pertains

11:47:21AM   23  to the legal adequacy of her testimony on specific causation

11:47:26AM   24  in light of the admissions that she has made in this case.

11:47:31AM   25  And so that is the basis of the summary judgment motion that

11:47:34AM  1   Mr. Moore will argue.

11:47:35AM  2        And so for myself, focusing on Dr. Tosti's

11:47:39AM  3   methodology, I want to start here.  At the end of the day, to

11:47:46AM  4   be admissible, an expert's opinions must not be result

11:47:51AM  5   driven.  They can't pick out a conclusion and work backwards.

11:47:54AM  6   They can't simply take the puzzle pieces they like and put

11:47:58AM  7   them together while ignoring the pieces that don't fit.

11:48:01AM  8        And we are certainly cognizant of this Court's prior

11:48:05AM  9   ruling on Dr. Tosti, but what has happened is that Dr. Tosti

11:48:08AM  10  has testified multiple times since the Earnest trial, and the

11:48:15AM  11  more that Dr. Tosti has testified, the more that she has said

11:48:19AM  12  it is clear that this work backward approach is exactly what

11:48:23AM  13  she's done in this case.

11:48:24AM  14       And here is a quote from her and this is after the

11:48:27AM  15  Earnest trial and you can see from this quote she was asked,

11:48:32AM  16  "If a person comes to you that took chemotherapy and says

11:48:36AM  17  they did not get adequate hair regrowth and they took

11:48:40AM  18  Taxotere, would you automatically conclude that Taxotere was

11:48:43AM  19  the cause?"

11:48:43AM  20       And her answer, "Honestly, yes."  This is an

11:48:52AM  21  admission that Dr. Tosti didn't want to make, but she knew

11:48:56AM  22  she had to.

11:48:57AM  23       I know that Mr. Miceli was talking about the truth

11:49:00AM  24  mattering and sometimes when experts are questioned in

11:49:03AM  25  depositions, the truth comes out and the consequence of this

MOTION TO EXCLUDE DR. ANTONELLA TOSTI

11:49:08AM  1   admission is that Dr. Tosti has already concluded -- and as

11:49:12AM  2   the question says, automatically concluded, any plaintiff in

11:49:16AM  3   any case in this litigation must have an injury caused by

11:49:20AM  4   Taxotere.  It's her automatic conclusion and this involves

11:49:24AM  5   Ms. Kahn specifically.  Making automatic one-size-fits-all

11:49:29AM  6   conclusions is not scientific and it's not reliable.

11:49:33AM  7        So how do we know that it's not reliable?  Well, when

11:49:38AM  8   you look at what the Supreme Court has told us under the line

11:49:42AM  9   of cases applying Daubert, an expert must use the same level

11:49:46AM 10   of intellectual and scientific rigor across all questions

11:49:51AM 11   that they answer.

11:49:52AM 12        So when Dr. Tosti's presented with a situation where

11:49:55AM 13   a plaintiff took chemotherapy, but not Taxotere, how does she

11:50:00AM 14   automatically identify what chemotherapy agent was the cause?

11:50:04AM 15   She won't.  She simply won't.  She answers, "If it's CMF, I

11:50:10AM 16   don't know."

11:50:10AM 17        "If it's Adriamycin and Cyclophosphamide, which drug

11:50:14AM 18   is it?"

11:50:15AM 19        "I don't know."

11:50:16AM 20        "What about the FAC arm?  What drug is causing the

11:50:20AM 21   PCIA?"

11:50:21AM 22        "I don't know."

11:50:26AM 23        The truth is when you have chemotherapy regimens like

11:50:29AM 24   this, we can never really know what drug is causing the

11:50:33AM 25   outcome in any particular patient, and Dr. Tosti will only

11:50:36AM   1   make her automatic conclusions when Taxotere is involved.

11:50:45AM   2       There are a couple of other examples of this

11:50:47AM   3   methodological problem I want to highlight.  The first is

11:50:49AM   4   pathology.  So what did Dr. Tosti say in the Earnest trial?

11:50:53AM   5   Well, pathology was the gold standard for a diagnosis.  But

11:50:57AM   6   what happened with Ms. Kahn?  Ms. Kahn was sent -- had

11:51:01AM   7   pathology taken, was sent to Dr. Thompson, and Dr. Thompson

11:51:06AM   8   determined that for the frontal scalp, the conclusion was

11:51:10AM   9   that Ms. Kahn had female pattern hair loss androgenetic

11:51:16AM   10  alopecia.  Dr. Thompson was not confused when he made this

11:51:21AM   11  conclusion.  Dr. Thompson believes he can identify

11:51:24AM   12  characteristics for PCIA on a biopsy, and, for this

11:51:28AM   13  particular biopsy he concluded was androgenetic alopecia.

11:51:33AM   14      But Dr. Tosti said that, well, in her mind, the

11:51:37AM   15  characteristics of PCIA and androgenetic alopecia look the

11:51:42AM   16  same especially when pathologists don't understand PCIA.  But

11:51:50AM   17  as I said, Dr. Thompson was not confused.  He was Dr. Tosti's

11:51:53AM   18  handpicked pathologist, and he stood by this conclusion in

11:51:56AM   19  his deposition.  So, again, Dr. Tosti was not going to allow

11:52:01AM   20  the facts of the pathology stand in the way of her

11:52:05AM   21  predetermined conclusion.

11:52:07AM   22      How about with endocrine therapy?  This is what Dr.

11:52:13AM   23  Tosti testified to about endocrine therapy generally.

11:52:16AM   24      "Would you agree that endocrine therapy can cause

11:52:20AM   25  androgenetic alopecia?"

MOTION TO EXCLUDE DR. ANTONELLA TOSTI

11:52:21AM  1      "Yes."

11:52:21AM  2      "And tamoxifen is one of those hormone therapies that
11:52:25AM  3  can cause androgenetic alopecia?"

11:52:27AM  4      And her answer.  "It can cause endocrine alopecia."

11:52:30AM  5      "And would you agree with me that endocrine alopecia
11:52:34AM  6  looks like androgenetic alopecia?"

11:52:36AM  7      And her answer was, "Yes."

11:52:38AM  8      Now, Mr. Miceli made a lot of this -- you know,
11:52:39AM  9  whether or not there's evidence that tamoxifen can cause
11:52:44AM 10  alopecia or long-term alopecia.  Well, Dr. Tosti uses those
11:52:49AM 11  exact words.  But that's her general testimony.  What happens
11:52:52AM 12  when she's confronted with the facts that Ms. Kahn uses
11:52:57AM 13  hormone therapy, tamoxifen specifically for years?  What is
11:53:00AM 14  her testimony?  "Nobody can tell and prove."  That's her --
11:53:05AM 15  that's her testimony.  When it comes to what role the
11:53:09AM 16  tamoxifen is playing, "nobody can tell and prove."  If you
11:53:13AM 17  can't tell and prove, you can't meet your methodological
11:53:20AM 18  requirements under Daubert.  And so with regard to Dr. Tosti,
11:53:27AM 19  it is clear at the end of the day she's taken a
11:53:30AM 20  one-size-fits-all approach and she's concluded automatically
11:53:32AM 21  that it's Taxotere.  That can't meet the mustard of this
11:53:36AM 22  court or the line of cases under Daubert.

11:53:40AM 23      And this last quote is from the Eastern District of
11:53:42AM 24  Louisiana, and this is from Judge Africk.  And Judge Africk
11:53:47AM 25  concluded that "the court is not persuaded that such a

| | |
|---|---|
| 11:53:50AM | **1** one-size-fits-all approach is reliable expert testimony, |
| 11:53:55AM | **2** especially when that testimony is not based on any specific |
| 11:53:58AM | **3** facts tied to the case." |
| 11:54:01AM | **4** THE COURT:  Mr. Strongman, you know, I read Dr. |
| 11:54:03AM | **5** Tosti's deposition.  She does talk about the difference in |
| 11:54:09AM | **6** presentation, the two types of alopecia that we're talking |
| 11:54:15AM | **7** about.  One is you take chemotherapy and it doesn't grow |
| 11:54:21AM | **8** back, but if it's tamoxifen, you will -- that takes a year |
| 11:54:26AM | **9** and a half before -- a year to year and a half before you |
| 11:54:29AM | **10** start seeing that damage. |
| 11:54:32AM | **11** Now, I know there's some factual differences as to |
| 11:54:36AM | **12** what her hair loss looked like before chemotherapy, during |
| 11:54:42AM | **13** chemotherapy, if there was any regrowth and there's |
| 11:54:45AM | **14** conflicting testimony in that, but she accepts one version |
| 11:54:50AM | **15** and then says but if it was tamoxifen induced, I'm just going |
| 11:54:55AM | **16** to say it that way, you would have had -- it would have taken |
| 11:54:59AM | **17** a year to a year and a half before you would have seen that |
| 11:55:03AM | **18** change in presentation.  So it wasn't just the pathology |
| 11:55:11AM | **19** report.  And I understand because I was concerned about the |
| 11:55:14AM | **20** pathology report too, but she said when you're reviewing it, |
| 11:55:18AM | **21** which was the same thing that -- who was the last witness we |
| 11:55:22AM | **22** just talked about, Dr. Shapiro said, you look at the |
| 11:55:25AM | **23** pathology report and then you have to look at your clinical |
| 11:55:29AM | **24** presentation and make a determination as to what's really |
| 11:55:32AM | **25** going on here if you will. |

11:55:33AM **1**      So what do I do with that where she says, listen, it

11:55:37AM **2** makes a different presentation, so I can look at the

11:55:40AM **3** pathology report and that tells me something, but then I have

11:55:43AM **4** to consider the presentation as presented to me by my

11:55:46AM **5** patients or by the plaintiff?

11:55:50AM **6**      MR. STRONGMAN:  Your Honor, that's a good question

11:55:52AM **7** and I think at the end of the day what Dr. Tosti failed to do

11:55:57AM **8** was actually apply any kind of link between that conclusion

11:56:02AM **9** and the actual facts in the case.

11:56:04AM **10**      So if you read the *Knight versus Kirby* (phonetic)

11:56:09AM **11** case, which is a Fifth Circuit case, they talk about how the

11:56:14AM **12** reliability issues apply to all aspects of the opinion.  So

11:56:17AM **13** it's the methodology, but you can't totally detach the link

11:56:22AM **14** between the facts and the conclusion when you're looking at

11:56:25AM **15** it.  So, for example, you can say addition is a fine

11:56:27AM **16** methodology to use, but saying one plus one equals three is a

11:56:33AM **17** problem under Daubert.

11:56:34AM **18**      So what Dr. Tosti did was, she said, okay, I think

11:56:37AM **19** when you have endocrine-induced alopecia, it presents with

11:56:42AM **20** this delayed pattern that you're talking about and it also

11:56:45AM **21** hinges on a lack of hair regrowth after chemotherapy.  But

11:56:51AM **22** what Dr. Tosti did was she ignored the facts in the case that

11:56:55AM **23** are contrary to that.  So there's photographic evidence that

11:56:58AM **24** is contrary to Dr. Tosti's opinion.  She didn't consider it

11:57:02AM **25** or discuss it in her deposition or her report in any way to

11:57:07AM **1**   make it clear that she adequately evaluated it.

11:57:14AM **2**        With regard to whether the hair loss meets this

11:57:17AM **3**   pattern, we also have the deposition of Ms. Kahn's

11:57:21AM **4**   hairdresser.  So Ms. Kahn has been seeing the same

11:57:24AM **5**   hairdresser for decades, and we know that this individual

11:57:28AM **6**   perhaps has more hands-on experience with what Ms. Kahn's

11:57:32AM **7**   hair has looked like year after year than anybody.  And what

11:57:36AM **8**   Mr. Smith said was her hair came back and it steadily has

11:57:43AM **9**   thinned out over the last 10 years or more.  So Dr. Tosti

11:57:47AM **10**   can't just come in and say I am offering this blanket

11:57:52AM **11**   conclusion that tamoxifen-induced alopecia looks different

11:57:56AM **12**   when the facts are Ms. Kahn's presentation matches the

11:57:59AM **13**   tamoxifen description that Dr. Tosti gives exactly, but she

11:58:05AM **14**   chooses to just set those facts aside, set those puzzle

11:58:09AM **15**   pieces aside and say it is automatically Taxotere when I see

11:58:13AM **16**   Taxotere.  And so that's how I would answer that, and I think

11:58:17AM **17**   that is the main problem that we have with Dr. Tosti, is that

11:58:24AM **18**   she's come to this conclusion and just simply will not

11:58:26AM **19**   consider the facts contrary.  And so for those reasons, we

11:58:29AM **20**   think she should be excluded.

11:58:31AM **21**        THE COURT:  Thank you.  Mr. Schanker?

11:58:34AM **22**        MR. SCHANKER:  Yes, Your Honor.  If I could share,

11:58:40AM **23**   see if I could get my screen sharing here.

11:58:49AM **24**        Can you see a blank screen, Your Honor, the green

11:58:53AM **25**   screen?

MOTION TO EXCLUDE DR. ANTONELLA TOSTI

| | | |
|---|---|---|
| 11:58:54AM | 1 | THE COURT:  I can. |
| 11:58:55AM | 2 | MR. SCHANKER:  Can you see that, Mr. Strongman? |
| 11:59:00AM | 3 | Thank you. |
| 11:59:01AM | 4 | So, Your Honor, Dr. Tosti's methodology and |
| 11:59:04AM | 5 | conclusions have already been deemed admissible under |
| 11:59:09AM | 6 | Daubert.  You did that obviously in the Earnest case.  You |
| 11:59:13AM | 7 | previously ruled that the differential diagnosis and |
| 11:59:18AM | 8 | methodology was reliable in that Earnest case, and in |
| 11:59:23AM | 9 | reaching that determination, you reviewed the plausible |
| 11:59:28AM | 10 | causes, you did this really painstakingly in your opinion, |
| 11:59:31AM | 11 | that Dr. Tosti specifically ruled in and ruled out in her |
| 11:59:34AM | 12 | differential diagnosis.  You went through that in detail in |
| 11:59:37AM | 13 | the Earnest case.  And the bottom line is, Judge, that Dr. |
| 11:59:44AM | 14 | Tosti follows the exact same methodology in this case. |
| 11:59:48AM | 15 | And I can briefly go through that methodology with |
| 11:59:50AM | 16 | you.  She goes through -- |
| 11:59:52AM | 17 | THE COURT:  Let me ask you the same question, because |
| 11:59:55AM | 18 | I have to tell you, this is where I -- it's the same question |
| 12:00:03PM | 19 | I just asked Mr. Strongman, because I saw Dr. -- I went |
| 12:00:07PM | 20 | through with Dr. Tosti then and I knew that there were some |
| 12:00:12PM | 21 | factual issues that -- well, she chose to believe one version |
| 12:00:18PM | 22 | of those facts and whether or not that belief was reasonable |
| 12:00:22PM | 23 | perhaps you might ask.  And so what she says is, I read the |
| 12:00:28PM | 24 | dermatopathology report and it said it was androgenetic |
| 12:00:35PM | 25 | alopecia as opposed to chemotherapy-induced alopecia at least |

12:00:41PM **1**   part A and then part B.  And she goes through that, and she

12:00:45PM **2**   says the big difference in my view that I thought was very

12:00:48PM **3**   interesting was that she said there's a difference in how it

12:00:54PM **4**   arises if you will or it becomes noticeable.  And I remember

12:00:58PM **5**   this very specifically from her testimony at trial, which is

12:01:01PM **6**   the difference is you lose it during chemotherapy and it

12:01:05PM **7**   doesn't grow back.  Everybody has chemotherapy-induced

12:01:10PM **8**   alopecia.  The difference is that it does not grow back.  But

12:01:13PM **9**   then she said if somebody is taking something else, like the

12:01:17PM **10**   tamoxifen, you would see over the course of about a year or a

12:01:22PM **11**   year and a half the hair loss would become -- you would see

12:01:26PM **12**   it then.

12:01:27PM **13**          And so, you know, then there was some question about,

12:01:30PM **14**   well, she finishes chemotherapy and six months later or

12:01:35PM **15**   sometime later she begins the tamoxifen.  If it was

12:01:39PM **16**   chemotherapy induced, she would have never had hair regrowth.

12:01:45PM **17**   If it was related to the tamoxifen, you would have seen it a

12:01:47PM **18**   year, year and a half later.

12:01:49PM **19**          And so I'm going to ask you to explain that to me,

12:01:56PM **20**   Mr. Schanker, because her hairdresser says, look, she had

12:02:01PM **21**   this before she took chemotherapy and it just got worse

12:02:06PM **22**   sometime after, but she did have some hair regrowth

12:02:10PM **23**   post-chemo.  So I don't know if I could -- you rambled on

12:02:17PM **24**   with those facts, but I'm just wondering can I just ignore

12:02:21PM **25**   those facts.

12:02:23PM **1**      MR. SCHANKER:  And, Your Honor, thanks for bringing

12:02:24PM **2** that up.  I think that is one of the most important issues we

12:02:27PM **3** need to cover here today.  And we respectfully strongly

12:02:30PM **4** disagree with Mr. Strongman's version factually of that, and

12:02:34PM **5** I think that the -- clearly the facts support what Dr. Tosti

12:02:39PM **6** -- really her history of hair loss with regard to Ms. Kahn.

12:02:46PM **7**      Just as -- aside, concerning the hairdresser, I don't

12:02:49PM **8** think anyone will accuse him of being the world's best

12:02:54PM **9** historian.  Obviously, he's got many, many patients -- many,

12:02:58PM **10** many clients during that period of time and he doesn't

12:03:00PM **11** remember -- if you read the totality of his deposition, I

12:03:03PM **12** think -- and when the jury sees it factually, I don't think

12:03:05PM **13** he's in any way inconsistent with this -- with really what

12:03:09PM **14** you're going to see and that is just that, that Ms. Kahn's

12:03:14PM **15** hair falls out during the chemotherapy, actually falls out

12:03:17PM **16** with the Taxotere before she even gets to the A&C, and then

12:03:21PM **17** it never comes back totally.  It comes back to a stage, but

12:03:25PM **18** then never comes back.  There's no regrowth and then falling

12:03:30PM **19** out again.

12:03:32PM **20**      But you hit the nail on the head.  That's going to be

12:03:35PM **21** a factual question for the jury, that you know, doesn't go to

12:03:37PM **22** the admissibility of -- or the reliability of Dr. Tosti's

12:03:44PM **23** opinion, that the facts do support that, and, you know, we

12:03:46PM **24** may see some photographs that are shown.  We certainly will

12:03:50PM **25** at trial, maybe here, look at this photograph in this light,

12:03:54PM **1**   and this one in that light, but I think the bottom line is

12:04:00PM **2**   that Dr. Tosti absolutely does.  She doesn't ignore this

12:04:02PM **3**   androgenetic alopecia.  She uses Dr. Thompson and the belt

12:04:07PM **4**   and suspender approach and with that confirms her diagnosis.

12:04:13PM **5**        Dr. Tosti understands as we've heard today that

12:04:16PM **6**   the -- that the presentation in a biopsy on a slide can look

12:04:23PM **7**   similar to a pathologist, and that's why Dr. Thompson

12:04:27PM **8**   diagnoses as he does or finds that it's consistent with a

12:04:31PM **9**   finding of androgenetic alopecia.  But, importantly, Dr.

12:04:37PM **10**  Tosti defers -- Dr. Thompson defers to the dermatologist who

12:04:41PM **11**  takes the clinical history which gets right back to what

12:04:45PM **12**  you're talking about, the clinical history, meaning amongst

12:04:49PM **13**  other things, the timeline of hair loss and hair regrowth.

12:04:52PM **14**       And, you know, concerning that -- does that properly

12:04:56PM **15**  answer your question, Judge?

12:04:57PM **16**       THE COURT:  Yeah.  I think so, yes.

12:05:03PM **17**       MR. SCHANKER:  Okay.  Well -- and really that is sort

12:05:07PM **18**  of the tail end of the methodology, and you did such a

12:05:11PM **19**  detailed review in your analysis, in your opinion, that you

12:05:14PM **20**  issued in the Earnest case of the different steps to rule out

12:05:19PM **21**  those different forms of alopecia, and those exact same -- as

12:05:22PM **22**  the papers show, those exact same steps in the differential

12:05:26PM **23**  diagnosis were followed.

12:05:27PM **24**       And then, ultimately, Dr. Tosti rules out

12:05:31PM **25**  specifically since you brought it up the androgenetic

12:05:35PM 1   alopecia again with the clinical presentation, which she says

12:05:38PM 2   wasn't consistent with female pattern hair loss, and that's

12:05:41PM 3   different than looking at a slide.  The clinical presentation

12:05:44PM 4   not being consistent, that's the pattern of hair loss on the

12:05:49PM 5   scalp.  And Dr. Tosti testified in detail about that during

12:05:52PM 6   the Earnest trial and we were all educated.

12:05:55PM 7        The dermoscopy results are not consistent with the

12:06:00PM 8   androgenetic alopecia as Ms. Kahn suffers from reduced hair

12:06:03PM 9   density.  When Dr. Tosti looked under that microscope, she

12:06:08PM 10  saw that.  That's not a feature of androgenetic alopecia.

12:06:11PM 11  Ms. Kahn's hair loss history as we talked about was

12:06:14PM 12  consistent with PCIA and not androgenetic alopecia.  Numerous

12:06:18PM 13  photographs were reviewed.  Dr. Tosti spends three pages of

12:06:21PM 14  her report going through and working through and ruling out

12:06:25PM 15  androgenetic alopecia, and, ultimately, certainly Dr. Tosti

12:06:28PM 16  admits that androgenetic alopecia could be a minor component

12:06:31PM 17  to Ms. Kahn's hair loss.

12:06:35PM 18       You recall in the testimony that we heard in Earnest

12:06:37PM 19  and what we've all learned in this case is, is that women as

12:06:41PM 20  they age have some level of hair loss and there could be some

12:06:45PM 21  very minor androgenetic alopecia that all women suffer of

12:06:51PM 22  someone such as Ms. Kahn's age.  But, importantly, that's not

12:06:57PM 23  a substantial contributing factor to the diffuse alopecia

12:07:02PM 24  that -- the PCIA that Ms. Kahn is experiencing.  And that's

12:07:07PM 25  important, the substantially contributing factor language

12:07:10PM  1    which we'll want to talk about here today.

12:07:12PM  2         Your Honor, Dr. Tosti followed that -- the complete

12:07:18PM  3    same methodology I said in the Kahn case and then ruled in

12:07:22PM  4    PCIA based upon all of that.  And one thing I'd like to

12:07:26PM  5    clarify with this, I think there's a misperception that

12:07:30PM  6    defense counsel has or is stating to this Court concerning

12:07:34PM  7    just the pathology being the gold standard.  That's not what

12:07:37PM  8    Dr. Tosti said at all.  She said that her examination and

12:07:40PM  9    evaluation and then using the belt and suspenders approach of

12:07:45PM  10   the pathology, that's the gold standard, not just pathology

12:07:51PM  11   alone.  Importantly, Your Honor, Dr. Tosti is not offering

12:07:57PM  12   any sort of new specific causation conclusions as to Taxotere

12:08:03PM  13   being a substantially contributing factor.

12:08:07PM  14        Now, Mr. Strongman didn't address this head on, but

12:08:11PM  15   it was touched upon in some of the things that he said, and I

12:08:15PM  16   believe, you know, we have these two motions that have been

12:08:19PM  17   filed, Dr. Tosti and the specific causation motion.  And,

12:08:22PM  18   honestly, as Mr. Strongman said, they're heavily linked here.

12:08:25PM  19   But it's important that Dr. Tosti is clear in her conclusion

12:08:29PM  20   in this case that Taxotere is a substantially contributing

12:08:33PM  21   factor to causing Ms. Kahn's PCIA and that conclusion that

12:08:38PM  22   she offers that Taxotere's a substantially contributing

12:08:42PM  23   factor is based on the scientific studies as well as her own

12:08:46PM  24   clinical experience in this case.  And, importantly, it's a

12:08:52PM  25   substantial contributing factor, it's "A" cause because we've

12:08:53PM  1  heard this term "B" cause that every other be deemed

12:08:58PM  2  impossible.  But that's not the law that you utilized in this

12:09:01PM  3  case, Your Honor, and that's not the law that the Eighth

12:09:05PM  4  Circuit utilizes either.

12:09:08PM  5       Importantly though, this combination therapy issue

12:09:10PM  6  that has come up throughout the morning and is important to

12:09:13PM  7  all of this and certainly this opinion, the combination

12:09:16PM  8  therapy, both Dr. Tosti and Sanofi acknowledge that Taxotere

12:09:20PM  9  is most commonly used in combination with AC.  Dr. Tosti says

12:09:24PM  10  it in her report.  The label, the Taxotere label,

12:09:29PM  11  acknowledges that Dr. Rubinson (phonetic) and

12:09:31PM  12  Cyclophosphamide, the A and the C, are often utilized in

12:09:35PM  13  combination therapy in this case.  And that's -- that's

12:09:38PM  14  important because Sanofi knows, that Dr. Tosti knows that,

12:09:43PM  15  and the studies that have been done that were relied upon

12:09:47PM  16  previously in this court, accepting the specific causation

12:09:52PM  17  opinion, acknowledge that fact.  And these studies

12:09:55PM  18  overwhelmingly, to compare TAC to AC, have found that PCIA

12:10:01PM  19  occurs at a substantially higher rate as Your Honor

12:10:05PM  20  previously said this morning when Taxotere is added to the AC

12:10:07PM  21  regimen.  And this is an important point, these studies that

12:10:11PM  22  we went through in detail the last time in the

12:10:13PM  23  Earnest/Daubert phase are critical because the evidence is

12:10:18PM  24  clear based upon all of this that Taxotere is a substantially

12:10:22PM  25  contributing factor to the TAC regimen that's been

12:10:28PM  1    demonstrated to cause PCIA.

12:10:31PM  2         And Mr. Lambert had mentioned this and it came up in

12:10:35PM  3    the expert depositions, this idea isn't new to Dr. Tosti and

12:10:39PM  4    it has been supported since Dr. Tosti in this important Up to

12:10:45PM  5    Date article that Lacouture was an author of in 2000, and

12:10:49PM  6    this just came out as a matter of fact August of 2020.

12:10:53PM  7    Convincing evidence of permanent or prolonged alopecia after

12:10:59PM  8    standard dose chemotherapy for breast cancer particularly

12:11:00PM  9    with docetaxel or Taxotere is clearly related to both

12:11:05PM  10   infusion and duration exposure, that this is now convincing

12:11:10PM  11   evidence.  You talk about this, the pile of evidence for

12:11:13PM  12   Taxotere is so much more than these random case reports for A

12:11:18PM  13   and C.

12:11:21PM  14        Your Honor, Taxotere is the only chemotherapy drug in

12:11:25PM  15   which a signal or general causation has been established and

12:11:29PM  16   this is important because Dr. Tosti is asked about A and C

12:11:34PM  17   and she knows that there's case reports concerning A and C,

12:11:40PM  18   but Dr. Tosti also understands through this process that

12:11:41PM  19   there is no general causation opinion.  Nobody on the

12:11:44PM  20   plaintiff side or the defense side has come up with evidence

12:11:47PM  21   to say that A from a general causation legal standpoint can

12:11:51PM  22   cause it or that C can cause it.  And Dr. Tosti has relied

12:11:55PM  23   upon that.  So when -- when counsel questions Dr. Tosti about

12:12:00PM  24   any chemotherapy regimen without Taxotere in which A or C is

12:12:06PM  25   involved, that's one of the reasons that Dr. Tosti knows in

12:12:08PM  1   good faith she can't say that that caused it in that

12:12:11PM  2   particular case.  She knows there's no general causation

12:12:15PM  3   opinion that has ever been rendered in this case concerning

12:12:19PM  4   those other drugs.

12:12:20PM  5        The bottom line is that Sanofi is asking this Court

12:12:22PM  6   to adopt an improper standard and that's that, in essence,

12:12:26PM  7   that Dr. Tosti be required to opine that Taxotere is the sole

12:12:30PM  8   cause effect of Ms. Kahn's PCIA.  But that's not what

12:12:36PM  9   proximate cause is in your order.  You laid out that, Judge.

12:12:40PM  10  Plaintiff may show --

12:12:40PM  11       THE COURT:  Wait.  Wait.  Are we now -- are we moving

12:12:44PM  12  to -- okay.  When you say proximate -- are we getting into

12:12:48PM  13  the second motion?  And I know they kind of morph together --

12:13:00PM  14       MR. SCHANKER:  I certainly don't want to be

12:13:03PM  15  redundant.  Probably 70 percent of defense counsel's motion

12:13:06PM  16  overlapped on that issue, and I can certainly reserve comment

12:13:10PM  17  concerning this when we get to that, Your Honor.

12:13:13PM  18       Do you have any other questions or comments that you

12:13:15PM  19  want me to address specifically on the Daubert motion with

12:13:19PM  20  regard to Dr. Tosti?

12:13:20PM  21       THE COURT:  No, I think I'm good.  Mr. Strongman?

12:13:26PM  22       MR. STRONGMAN:  Thank you.

12:13:28PM  23       THE COURT:  And it is difficult to argue this because

12:13:30PM  24  it really is a little bit coming together, but please.

12:13:35PM  25       MR. STRONGMAN:  What I would say in response is that

12:13:39PM  **1**   I want to be clear about what Dr. Tosti did.  The plaintiffs

12:13:44PM  **2**   have repeatedly said today, both Mr. Miceli and Mr. Schanker,

12:13:52PM  **3**   that there's this overwhelming evidence for Taxotere, and

12:13:54PM  **4**   when you look at what Dr. Tosti did, it amounts to -- and she

12:14:00PM  **5**   admitted this, she's just counting things in the literature,

12:14:04PM  **6**   she's literally counting case reports.  And there's a moment

12:14:08PM  **7**   in Dr. Tosti's deposition when we were talking about this,

12:14:12PM  **8**   but in a different context.

12:14:14PM  **9**        So we were looking at Dr. Tosti's article that she

12:14:19PM  **10**  published with Dr. Freites-Martinez, and in that article, as

12:14:22PM  **11**  Your Honor may remember, there are more cases of PCIA with

12:14:28PM  **12**  Taxol than with Taxotere.  And Dr. Tosti was extremely

12:14:33PM  **13**  adamant that you can't just count cases to come up with the

12:14:39PM  **14**  idea that there's more of a risk with one drug or another.

12:14:42PM  **15**  Now, that, of course, was in a circumstance where that helps

12:14:46PM  **16**  Dr. Tosti and helps the plaintiffs.  But yet for her to

12:14:50PM  **17**  automatically conclude that it's Taxotere by counting cases

12:14:55PM  **18**  elsewhere is exactly what she's done.  And so, again, we have

12:14:59PM  **19**  a circumstance where Dr. Tosti is not applying the same rigor

12:15:06PM  **20**  across all questions that she's asked.  I agree that she has

12:15:11PM  **21**  used a differential diagnosis, but in my analogy before, this

12:15:18PM  **22**  is parallel to using addition.  She can use the differential,

12:15:22PM  **23**  but she has to apply it reliably to the facts.  And there

12:15:25PM  **24**  becomes a point at which if you ignore contrary facts, you

12:15:29PM  **25**  are simply becoming an advocate and you're becoming an expert

─ MOTION TO EXCLUDE DR. ANTONELLA TOSTI ─

12:15:34PM  1    on a mission and Daubert intends to exclude those sort of

12:15:39PM  2    unreliable approaches.

12:15:41PM  3            Thank you.  And I will turn it over to Mr. Moore who

12:15:43PM  4    will help finish us out on Dr. Tosti.

12:15:46PM  5            THE COURT:  Okay.  Thank you.

            6                            *  *  *  *

            7            (WHEREUPON, the proceedings were adjourned.)

            8                            *  *  *  *

            9                    REPORTER'S CERTIFICATE

           10            I, Nichelle N. Wheeler, RPR, CRR, Official Court
                 Reporter, United States District Court, Eastern District of
           11    Louisiana, do hereby certify that the foregoing is a true and
                 correct transcript, to the best of my ability and
           12    understanding, from the record of the proceedings in the
                 above-entitled and numbered matter.

           13

           14              /s/ Nichelle N. Wheeler
                         Official Court Reporter

           15

           16

           17

           18

           19

           20

           21

           22

           23

           24

           25

─ OFFICIAL TRANSCRIPT ─
Page 23