UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |

THIS DOCUMENT RELATES TO:

Melissa Roach, Case No. 2:17-cv-7918.

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON WARNINGS CAUSATION

Sanofi is entitled to summary judgment because Plaintiff Melissa Roach cannot establish warnings causation under either Mississippi law or this Court's four-part framework.

First, under Mississippi law, Ms. Roach cannot establish warnings causation because she has no evidence that her treating physician's prescribing decision would have changed if provided a different warning about hair loss. Dr. Wail Alnas prescribed a chemotherapy regimen of Taxotere, Cyclophosphamide, and Herceptin ("TCH") to treat Ms. Roach's "aggressive" Stage II HER2/neu-positive breast cancer. If Dr. Alnas had been aware of the risk of permanent hair loss associated with Taxotere when selecting a potential treatment regimen for Ms. Roach, it would not have factored into his decision-making process. Put another way, Dr. Alnas stands by his decision to treat Ms. Roach with TCH today.

Second, Ms. Roach cannot satisfy this Court's four-part framework because, even if Dr. Alnas had warned Ms. Roach of a risk of permanent hair loss associated with Taxotere in 2009, such warning would not have changed the ultimate chemotherapy decision. Ms. Roach relied on Dr. Alnas to select the most effective and appropriate chemotherapy for her breast cancer. Ms. Roach testified that she trusted Dr. Alnas's opinion and would follow his chemotherapy recommendation *regardless of the potential side effects*. And she did. Ms. Roach accepted the

TCH regimen recommended by Dr. Alnas, and she has been cancer-free for more than 11 years.

On this record, Ms. Roach cannot establish warnings causation. The Court should enter summary judgment in Sanofi's favor.

## STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine dispute of fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id*. at 249–50 (internal citations omitted).

## ARGUMENT

I. **MS. ROACH CANNOT ESTABLISH WARNINGS CAUSATION UNDER MISSISSIPPI LAW.**

Mississippi recognizes the learned-intermediary doctrine. *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 811 (5th Cir. 1992) (applying Mississippi law); Miss. Code Ann. § 11-1-63(c)(ii) (codifying doctrine). "Under this doctrine, the manufacturer's failure to warn the patient of the product's risks does not render the product defective or unreasonably dangerous so long as the manufacturer adequately warns the learned intermediary." *Thomas*, 949 F.2d at 811. Put another way, a drug manufacturer has a duty to provide an adequate warning to the physician, not the plaintiff. *See Johnson v. Parke-Davis*, 114 F. Supp. 2d 522, 525 (S.D. Miss. 2000).

Even assuming the manufacturer's warning was allegedly inadequate, however, the plaintiff must still prove *warnings causation*—i.e., a causal connection between the allegedly inadequate warning, the prescriber's ultimate decision to prescribe, and the plaintiff's ultimate injury. *Thomas*, 949 F.2d at 814.

Warnings causation has two requirements. First, a plaintiff must establish "that an adequate warning would have prevented the treating physician from administering the drug." *Id*. Specifically, a plaintiff must "demonstrate that the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff." *Id*.; *see also Smith v. Johnson & Johnson, Inc.*, 483 F. App'x 909, 914 (5th Cir. 2012) (requiring plaintiff to show "that the undisclosed risk was high enough that, if disclosed, would have changed the treating physician's decision to prescribe the product for the plaintiff"). Second, a plaintiff must also establish "that the injury would not have occurred had the drug not been administered." *Thomas*, 949 F.2d at 814; *accord Bennett v. Madakasira*, 821 So. 2d 794, 807 (Miss. 2002), *abrogated on other grounds by Hutzel v. City of Jackson*, 33 So. 3d 1116, 1118 (Miss. 2010); *Smith v. Johnson & Johnson*, 2011 WL 3876997, at *11 (S.D. Miss. Aug. 31, 2011).

Ms. Roach cannot present a triable issue under the first prong of warnings causation, so the Court should grant summary judgment. Ms. Roach claims Sanofi failed to warn her treating physician that permanent hair loss is a potential side effect of Taxotere.[1] To prove warnings causation, Ms. Roach must identify a *quantifiable* risk of permanent alopecia associated with Taxotere not otherwise known to Dr. Alnas, her treating physician, and show such risk was so great that it would have changed his decision to prescribe Taxotere. Ms. Roach cannot make this showing. If Dr. Alnas has been aware of cases of permanent hair loss associated with Taxotere in 2009, Dr. Alnas would not have changed his prescribing decision for Ms. Roach:

> Q. Okay. Had you been made aware of that risk of permanent hair loss when you were selecting a potential treatment regimen for Ms. Roach, would this information have factored into your decision-making process?

---

[1] *See generally* Second Am. Master Long Form Compl. ¶¶ 221–31; 240–47.

3

> A. I don't think so.  I mean, it's very difficult to put yourself back ten years, but I don't think so.[2]
>
> ***
>
> Q. And today, you still stand by your recommendation to treat Ms. Roach with Taxotere, carboplatin and Herceptin, correct?
>
> A. Yes.
>
> Q. And is it fair to say that Taxotere, carboplatin and Herceptin helped to save her life?
>
> A. It definitely reduced the chance of the cancer relapsing and she's cancer free 11 years.  That's terrific.[3]

On this record, it is undisputed that more information (i.e., a stronger warning) about the risk of permanent alopecia (i.e., "Cases of permanent alopecia have been reported") would not have changed Dr. Alnas's decision to prescribe Taxotere to Ms. Roach.  On these undisputed facts, Ms. Roach cannot establish warnings causation and therefore summary judgment is warranted.  *See Ackermann v. Wyeth Pharm.*, 526 F.3d 203, 211–12 (5th Cir. 2008) (affirming summary judgment based on prescriber's testimony that he would have prescribed drug to plaintiff even if he had received plaintiff's proposed stronger warning).

## II.   MS. ROACH ALSO CANNOT ESTABLISH WARNINGS CAUSATION UNDER THE COURT'S FOUR-PART FRAMEWORK.

Summary judgment also is warranted under this Court's four-part framework to analyze warnings causation in cases involving chemotherapy:

> The question is not simply "what would the doctor have prescribed" but *[1] whether and how the doctor would have advised the patient of the risk of permanent alopecia associated with Taxotere, [2] whether the patient would have inquired about other options, [3] what the doctor would have recommended, and [4] what*

---

[2]   Defs.' Statement of Facts ("DSOF") ¶ 27.

[3]   *Id.* ¶ 28.

> ***decision the plaintiff would have ultimately made.*** The Court will consider these questions with the goal being to assess what the doctor and the patient would have decided together. While a doctor may testify that his or her recommendation would not have changed, the issue is whether the plaintiff's ultimate decision would have changed.[4]

Ms. Roach cannot satisfy her burden under this framework.

Under the first element, even if Dr. Alnas had warned Ms. Roach that cases of permanent alopecia had been reported with Taxotere, Dr. Alnas and Ms. Roach still would have picked a regimen containing Taxotere.[5]

The second element also weighs in Sanofi's favor. Ms. Roach intended to follow Dr. Alnas's chemotherapy recommendation regardless of the potential side effects.[6] Ms. Roach did not discuss any other chemotherapy regimens with Dr. Alnas.[7] Nor did she independently research any chemotherapy drug.[8] Ms. Roach asserts that she would have "investigated a little bit" if she had known of the alleged risk, but Ms. Roach concedes that if she "believed there was no other alternative, at the risk of [her] life, [she] probably would have taken all of those drugs."[9] Dr. Alnas, in turn, would still recommend TCH today and counsel Ms. Roach against taking an alternative regimen.[10]

---

[4] Rec. Doc. 7571 at 16 (Order and Reasons on Six Mots. for Summ. J.) (emphasis and numerals added).

[5] DSOF ¶¶ 17, 27.

[6] *Id.* ¶ 17.

[7] *Id.* ¶ 18.

[8] *Id.* ¶ 19.

[9] *Id.* ¶ 20.

[10] *Id.* ¶¶ 28, 32.

5

The third element is satisfied because Dr. Alnas would recommend TCH to Ms. Roach. Dr. Alnas always follows the NCCN Guidelines to develop chemotherapy regimens for patients, including Ms. Roach.[11] Dr. Alnas identified two preferred regimens for HER2/neu-positive breast cancer under the 2009 NCCN Guidelines: (1) Carboplatin/Taxotere or Herceptin ("TCH") (noting that Perjeta is sometimes added); or (2) Adriamycin/Cytoxan followed by Taxol and Herceptin ("AC+TH").[12] At the time of his prescribing decision for Ms. Roach, Dr. Alnas preferred the TCH regimen over the AC+TH regimen, in part, because Dr. Alnas tries to avoid Adriamycin or anthracyclines when possible.[13] Dr. Alnas prefers TCH because it avoids the "significantly higher" cardiotoxicity of Adriamycin.[14] To that end, if Ms. Roach had wanted the Adriamycin-containing regimen, Dr. Alnas would have told her that this regimen carried a risk of cardiotoxicity and encouraged her to take TCH.[15] The third element is satisfied because Dr. Alnas stands by his decision to treat Ms. Roach with TCH.[16]

Fourth, Ms. Roach ultimately would have chosen the TCH regimen. Mississippi, like Louisiana, applies a "reasonable patient" standard, which asks "whether or not a reasonably prudent patient, fully advised of the material known risks, would have consented to the suggested treatment." *Dunn v. Yager*, 58 So. 3d 1171, 1201 n.27 (Miss. 2011) (quoting *Jamison v. Kilgore*, 903 So. 2d 45, 49 (Miss. 2005)); *see also Reikes v. Martin*, 471 So. 2d 385, 392–93 (Miss. 1985)

---

[11]  *Id.* ¶ 24.

[12]  *Id.* ¶ 29.

[13]  *Id.* ¶ 30.

[14]  *Id.* ¶ 31.

[15]  *Id.* ¶ 32.

[16]  *Id.* ¶ 28.

6

(rejecting subjective test: "[s]ince at the time of trial the uncommunicated hazard has materialized, it would be surprising if the patient-plaintiff did not claim that had he been informed of the dangers he would have declined treatment." (quoting *Cobbs v. Grant*, 502 P.2d 1, 11 (Cal. 1972))).

A reasonably prudent patient in Ms. Roach's position, fully advised of the risks, would have accepted the TCH regimen. The reasonable patient's HER2/neu-positive breast cancer could be treated by two chemotherapy preferred regimens: TCH or AC+TH.[17] Dr. Alnas would have explained that he preferred the TCH regimen over the AC+TH regimen to avoid the "significantly higher" cardiotoxicity of Adriamycin.[18] If a reasonable patient would have inquired about taking the AC+TH regimen, Dr. Alnas would have encouraged the patient to take TCH.[19] No reasonable patient, when faced with an "aggressive" HER/neu-positive cancer, would reject Dr. Alnas's decision to prescribe a Taxotere-containing regimen.

Ms. Roach's self-serving testimony should not replace the reasonable patient standard, but, even if considered, it would not change the outcome. Ms. Roach asserts that she would have "investigated a little bit" if she had known of the alleged risk of permanent hair loss.[20] At the time of treatment, however, Ms. Roach intended to follow Dr. Alnas's chemotherapy recommendation *regardless of the potential side effects*:

> Q. Did you intend to follow your doctor's recommendation regardless of the details of why he recommended it?
>
> A. I mean, pretty much, yeah. I was too afraid and too worried to really do anything else. I didn't know what to do other than what he told me to do.

---

[17]   *Id.* ¶¶ 26, 29.

[18]   *Id.* ¶¶ 30–31.

[19]   *Id.* ¶ 32.

[20]   *Id.* ¶ 20.
7

> Q. Did you intend to follow Dr. Alnas's recommendation regardless of the potential side effects?
>
> A. Yes.[21]

Ms. Roach's unequivocal testimony is that she relied completely on Dr. Alnas's recommendation to treat her "aggressive" HER2/neu-positive cancer.[22] While Ms. Roach now claims she would have investigated other options, there is no evidence that she would have actually selected a different regimen to avoid the risk of permanent hair loss. Her testimony, instead, demonstrates she would accept TCH:

> [H]e explained to me that the type [of] cancer that I had, this particular course of chemotherapy, this combination of drugs, was very effective. This was a very, very aggressive, very fast-growing type of breast cancer, and at the time he thought that was what was best for me. And I trusted his opinion, so I went with what he suggested.[23]

Because Ms. Roach's ultimate treatment decision would not have changed, she cannot establish warnings causation under this Court's four-part framework. *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 2020 WL 1819665, at *3 (E.D. La. Apr. 7, 2020); *see also Hunt v. McNeil Consumer Healthcare*, 2014 WL 1779471, at *3 (E.D. La. May 5, 2014) (granting defendant's motion for judgment as a matter of law where plaintiff failed to prove "that a different warning label would have changed her decision to administer Children's Motrin to [her child]").

## **CONCLUSION**

For these reasons, the Court should grant Sanofi's motion for summary judgment on Ms. Roach's claims.

---

[21]  *Id.* ¶ 17.

[22]  *Id.* ¶ 12.

[23]  *Id.* ¶ 16.

Respectfully submitted,

| | |
|---|---|
| */s/ Douglas J. Moore* <br> Douglas J. Moore (Bar No. 27706) <br> **IRWIN FRITCHIE URQUHART & MOORE LLC** <br> 400 Poydras Street, Suite 2700 <br> New Orleans, LA  70130 <br> Telephone: 504-310-2100 <br> Facsimile:  504-310-2120 <br> dmoore@irwinllc.com | Harley V. Ratliff <br> Jon Strongman <br> Adrienne L. Byard <br> **SHOOK, HARDY & BACON L.L.P.** <br> 2555 Grand Boulevard <br> Kansas City, Missouri 64108 <br> Telephone: 816-474-6550 <br> Facsimile:  816-421-5547 <br> hratliff@shb.com <br> jstrongman@shb.com <br> abyard@shb.com <br> *Counsel for sanofi-aventis U.S. LLC and Sanofi US Services Inc.* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

*/s/ Douglas J. Moore*