UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)  MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO
*Melissa Roach*, Case No. 2:17-cv-7918

## PLAINTIFF MELISSA ROACH'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON WARNINGS CAUSATION

### Introduction

As this Court has acknowledged, the treatment of breast cancer is a patient-driven process, involving detailed discussions between a patient and her oncologist about the various treatment options and a patient's consideration of the risks and benefits of each treatment option. These discussions precede the oncologist's recommendation of available cancer treatment regimens, and the patient's ultimate selection of a particular set of prescription drugs and interventions that will comprise her cancer treatment regimen.

Dr. Wail Alnas, Plaintiff Melissa Roach's prescribing oncologist, testified that, in 2009, when Ms. Roach received chemotherapy, he did not know that Taxotere could cause permanent hair loss. Consequently, when he discussed the risks and benefits of a Taxotere-containing chemotherapy regimen with Ms. Roach, he could not (and, thus, did not) educate her patient about the risk of permanent hair loss. Dr. Alnas could not have been any more steadfast in his testimony that had he known of this risk, he would have warned Ms. Roach. Dr. Alnas also testified that it is ultimately the patient's decision whether to take a Taxotere-containing chemotherapy regimen once apprised of the risks. Such testimony shows that a timely and adequate warning on the risk of permanent hair loss would have altered Dr. Alnas' safety discussion of risks and benefits with Ms. Roach, which, in turn, would have altered Ms. Roach's ultimate decision to select and receive

a Taxotere-containing regimen. Therefore, under the Court's learned intermediary analysis in this MDL, Sanofi is not entitled to summary judgment. *See* Order and Reasons of July 9, 2019 (Earnest), Doc. 7571; Order and Reasons of April 7, 2020 (Kahn), Doc. 9888.

Alternatively, because a pharmaceutical tort victim's case requires a jury's consideration of the learned intermediary's testimony about what they would have done, if presented years ago with appropriate warnings, there exists legal authority supporting a Plaintiff's ability to put forth objective evidence that a reasonable physician would have considered and prescribed an alternative if the patient elected to avoid a particular risk. Thus, Ms. Roach should be allowed to call a physician at trial to provide opinion testimony regarding what a reasonable doctor would have done if faced with a patient like Ms. Roach who desired an alternative non-Taxotere regimen because of the risk of permanent hair loss. Accordingly, at this stage of the litigation before transmission of expert reports, Sanofi is not entitled to summary judgment based on warnings causation and the learned intermediary doctrine.

**Facts**

Plaintiff has responded to the Statement of Undisputed Facts submitted by Sanofi. *See* Plaintiff's Response to Defendants' Statement of Undisputed Facts. While a few of Sanofi's stated "facts" are accurate, many are inaccurate, incomplete, misleading, taken out of context, and/or irrelevant to the controversy before the Court. Where necessary, Plaintiff has attempted to set the record straight by denying that certain facts are undisputed and by citing relevant facts in support of Plaintiff's opposition. The following summary of pertinent facts is provided hereinbelow in hopes of assisting the Court in its evaluation of this motion:

In early June 2009, at the age of forty-two, Ms. Roach found a lump in her breast during a self-examination. Ex. A, Roach Dep. at 185. She was diagnosed with HER2 positive stage two

breast cancer. *Id.* at 187:14-25. Prior to this, she had no familiarity with chemotherapy drugs or treatment, and relied on her oncologist to inform her of the side effects she was likely to experience. *Id.* at 218; 220-21. Her doctor discussed two possible regimens and the potential side effects of each. Ex. B, Alnas Dep. at 27:1-5; 29. But her doctor did not disclose the risk of permanent hair loss, as he himself did not know that this was a possible consequence of the treatment. *Id.* at 34:10-25; 35:17-25.

Ms. Roach took Taxotere from October 2009 through November 2009. Dkt. 2:17-cv-07918-JTM-MBN, Rec. Doc. 1 ¶¶ 9-10. She experienced hair loss during her chemotherapy, as her doctor had told her to expect, but believed it would grow back and eventually return to normal at some point after she had finished treatment. Ex. A, Roach Dep. at 222:1-4; 249:17-25; 250:1-6; 251:1-7. She understood from her oncologist that her hair regrowth might be a different texture or color, but she did not believe, and had no reason to believe, that her hair loss would be long-term or permanent. *Id.* at 243:8-12; 247:19-21; Ex. B, Alnas Dep. at 69:1-6.

Taxotere's label identified alopecia as a "common yet temporary" side effect, which obfuscated a critical feature of the injury, i.e., the permanence of the condition. From the advice of her oncologist, Ms. Roach believed that her hair would eventually grow back. Ex. A, Roach Dep. at 249:17-25; 250:1-6; 251:1-7.

Plaintiff's prescribing physician, Dr. Alnas, practices general oncology and hematology and is currently board certified in medical oncology, while previously being board certified in internal medicine and hematology. Ex. B, Alnas Dep. at 13:1-22. Dr. Alnas relies on the NCCN guidelines and reviews them for almost every patient; he also is a member of the American Society of Clinical Oncology and has attended the renowned breast cancer conference in San Antonio, Texas. Ex. B, Alnas Dep. at 18-19. Dr. Alnas considers the NCCN guidelines to be reliable and

testified that he would have consulted them prior to recommending a regimen for Ms. Roach. *Id*. at 27:19-25; 28:1. In Ms. Roach's case, there were two different chemotherapy regimens that would have been in line with the NCCN guidelines, and the other option did not contain Taxotere. *Id*. at 28-29.

Dr. Alnas always performs a risk/benefit analysis when making a chemotherapy recommendation and discusses his analysis with his patients. *Id*. at 19:7-25. Specifically relating to his treatment of Ms. Roach, Dr. Alnas testified that he would have discussed the side effects of her chemotherapy regimen, including nausea, vomiting, fatigue, decreased blood counts, cardiac function, and hair loss. *Id.* at 26-28.

Dr. Alnas testified that hair loss is one of the first items that patients ask about and that hair loss is discussed with every single patient. *Id*. at 31:12-14. He is one hundred percent certain that he discussed the risk of *temporary* hair loss with Ms. Roach. *Id*. at 34:4-9. Dr. Anas testified that he would not have discussed *permanent* hair loss with Ms. Roach in 2009 because he was unaware of the risk of permanent hair loss at the time he prescribed a Taxotere-containing chemotherapy regimen to Ms. Roach in 2009. *Id.* at 34:4-22. Dr. Alnas has since learned about cases of permanent hair loss associated with Taxotere only recently, about five years ago. *Id*. at 34-35; 39:12-20; 44:14-18; 59-60. At the time that he prescribed Taxotere to Ms. Roach, he discussed various permanent side effects with her that did not include permanent hair loss, and he learned about those permanent risks through the drug labeling for Taxotere. *Id*. at 42. He now counsels his breast cancer patients about the possibility of permanent hair loss associated with Taxotere, and he started implementing these changes in his discussions approximately five years ago when he learned of the risk of permanent alopecia associated with Taxotere. *Id.* at 60:2-11. Dr. Alnas testified that "the patient deserves to know" about permanent hair loss. *Id.* at 61:24-25. He further testified that,

with respect to patients that he treated after approximately 2015 (when he learned about permanent hair loss associated with Taxotere), he believes that "permanent hair loss is significant for women, so…I did incorporate in my discussion." *Id.* at 62:7-9. Dr. Alnas confirmed that he has always been aware that, after a patient undergoes chemotherapy, the hair may come back a different color, thicker, or thinner, and that he was aware of those possibilities in 2009 when he prescribed Taxotere to Ms. Roach, but that he was not aware of permanent alopecia. *Id.* at 68:1-15.

If Dr. Alnas had known about a risk of permanent hair loss associated with the use of Taxotere, he would have advised Ms. Roach about that risk. *Id.* at 45:4-9. Dr. Alnas appreciates that his patients make the ultimate decision on whether to take a recommended chemotherapy drug and respects his patients' decisions on whether to proceed with a particular chemotherapy regimen. *Id.* at 43-44. If Ms. Roach had told Dr. Alnas that she did not want to take Taxotere because of the risk of permanent alopecia, Dr. Alnas testified that he would have advised her of the other chemotherapy regimen available to her that carried a risk of cardiac toxicity. *Id.* at 46:4-20.

If Plaintiff Ms. Roach had been informed of the risk of permanent hair loss, she would have researched and chosen another chemotherapy regimen or alternate therapy. Ex. A, Roach Dep. at 254-258. Specifically, she testified that she "had absolutely no idea that it was possible that the hair loss [she] was going to experience after chemotherapy was going to be permanent." *Id.* at 86:11-16. Ms. Roach testified that, at her initial consultation with Dr. Alnas, "he just said that I would lose my hair and that it would grow back after I finished chemo." *Id.* at 222:1-4. Therefore, she expected her hair to fully regrow after chemotherapy. *Id.* at 247:16-21. She based this belief off the advice of her healthcare professionals: "Dr. Alnas. You know, he told me that it would come back. The nurses in the chemo bay told me it would come back… I was kind of getting this

reassurance from multiple sources, so I just decided to accept that and not worry about it." *Id.* at 249-250.

**Legal Standard**

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the non-moving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In determining whether a genuine issue of fact exists, the Court must review the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 255 (1986); *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016).

In deciding a motion for summary judgment, a genuine issue of material fact exists when the evidence is such that, viewing the record as a whole, a rational trier of fact could return a verdict for the non-moving party. *Dediol v. Best Chevrolet, Inc.,* 655 F. 3d 435,439 (5th Cir. 2011). This Court, however, must "refrain from making credibility determinations or weighing the evidence…" *Devon Enterprises, LLC v. Arlington Independent School Dist.,* 541 Fed. Appx. 439, 441(5th Cir. 2013) (quoting *Equal Employment Opportunity Comm'n v. WC&M Enters.*, 496 F. 3d 393, 398 (5th Cir. 2007)). Ultimately, this Court's concern is to ascertain "whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**Argument**

I. **Record evidence precludes summary judgment under the learned intermediary doctrine.**

In products liability claims involving prescription drugs, Mississippi applies the learned-intermediary doctrine, "which holds that 'the manufacturer's failure to warn the patient of the product's risks does not render the product defective or unreasonably dangerous so long as the manufacturer adequately warns the learned intermediary.'" *Deese v. Immunex Corp.*, 2012 WL 463722, at *4 (S.D. Miss. Feb 13, 2012) (quoting *Janssen Pharm., Inc. v. Bailey*, 878 So.2d 31, 58 (Miss. 2004); *see also* Miss. Cod Ann. § 11-1-63(c)(ii) (codifying the learned intermediary doctrine) ("[a]n adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the product…taking into account the characteristics of, and the ordinary knowledge common to, a physician or other licensed professional who prescribes the drug…"). Therefore, "the drug manufacturer has a duty to adequately warn the prescribing physician of any known adverse effects which might result from use of its prescription drugs." *Wyeth Labs., Inc. v. Fortenberry*, 530 So.2d 688, 691 (Miss. 1988).

To prevail on a failure to warn theory, a plaintiff must establish "(1) that an adequate warning would have prevented the treating physician from administering the drug; and (2) that the injury would not have occurred had the drug not been administered." *Bennet v. Madakasira*, 821 So. 2d 794, 807 (Miss. 2002), *abrogated on other grounds by Hutzel v. City of Jackson*, 22 So.3d 1116 (Miss. 2010). Sanofi asserts that Plaintiff cannot meet the first prong – warnings causation. However, the evidence is to the contrary and, at a minimum, shows that the warnings causation cannot be resolved on summary judgment in this case and must be decided by the fact finder at

trial.

### A. Plaintiff has established warnings causation by showing that an adequate warning would have prevented the treating physician from administering the drug.

Causation can be established by showing that, if properly warned, Plaintiff's prescribing physician would have altered her conduct so that Plaintiff would not have received the drug. *See Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 812 (5th Cir. 1992); *see also Wyeth Labs., Inc. v. Fortenberry*, 530 So.2d at 691 (the plaintiff has "the burden of showing that an adequate warning would have altered [the prescribing physician's] conduct."). Plaintiff therefore submits that her prescribing physician's testimony that he would have disclosed a stronger warning to her patient, coupled with Ms. Roach's testimony that she would have taken an alternative chemotherapy regime had she been properly counseled on the risk of permanent hair loss associated with Taxotere, satisfies warnings causation under Mississippi law. This more flexible approach to causation fits squarely within this Court's previous analysis under Louisiana law of whether the plaintiff's physician would have acted differently in response to an adequate warning such to avoid the plaintiff's injuries. *See* Doc. 7571.

Indeed, this Court has noted that that "a patient facing a cancer diagnosis can reasonably expect more involvement and guidance from her doctor that she would in another context." *Id.* Therefore, "[t]he question is not simply 'what would the doctor have prescribed' but whether and how the doctor would have advised the patient of the risk of permanent alopecia associated with Taxotere, whether the patient would have inquired about other options, what the doctor would have recommended, and what decision the plaintiff would have ultimately made." *Id.* But, contrary to Sanofi's interpretation, this Court did not create a test with four elements that must be met. Rather, this Court stated that it "would consider these questions with the goal being to assess what the doctor and the patient would have decided together." *Id.*

As stated above, Plaintiff's prescribing oncologist, Dr. Alnas, testified that he was unaware of the risk of permanent hair loss when she prescribed Taxotere to Ms. Roach in 2009. Dr. Alnas further testified that had he received an adequate warning of the risk of permanent hair loss from Sanofi, he would have advised Plaintiff on this risk and would have respected Plaintiff's decision to go with a different treatment regimen. Ms. Roach would have chosen another chemotherapy regimen or alternate therapy, aside from Taxotere, had she been counseled on the associated risk of permanent hair loss.

A federal district court in Mississippi considered the issue of warnings causation quite recently in *Lim v. Ethicon, Inc.*, 2021 WL 612399 (S.D. Miss. Feb. 12, 2021). *Lim* involved a medical device rather than a prescription drug, but the district court confirmed that the plaintiff had "the burden of showing that an adequate warning would have altered [the learned intermediary's] conduct." *Id.* at *6 (citing *Fortenberry*, 530 So.2d at 691). The treating physician in that case testified that he was aware of the risks associated with the medical device, he would not have changed his decision to implant the medical device had the defendants' documentation listed all known risks, and that the defendant's documentation was not something he would typically consult before implanting the device into a patient. *Id.* As such, the district court granted summary judgment on the plaintiff's failure to warn claim. *Id.*

Conversely, it is clear here that Dr. Alnas was unaware of the risk of permanent hair loss associated with Taxotere in 2009, and, had Sanofi warned him of this risk, he would have taken a different course of action – shared this risk with her patient, Ms. Roach. The present case is likewise distinguishable from the *Phillips* case because, unlike Dr. Sonnier, Dr. Alnas admitted that the patient makes the ultimate decision about whether to use a chemotherapy regimen. Any arguably conflicting testimony Sanofi cites (assuming *arguendo* such testimony is inconsistent)

presents a fact issue for the jury.

### B. Plaintiff may support warnings causation through objective evidence.

Warnings causation can be established through evidence that Plaintiff's prescribing physician would not have prescribed the drug had she been properly warned on Taxotere's association with permanent hair loss. While this is one method to establish causation, it is not the exclusive means of doing so. The burden of establishing causation may be satisfied by "either objective evidence of how a reasonable physician would have responded to an adequate warning, or subjective evidence of how the treating physician would have responded." *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d at 812; *see also Bennet,* 821 So. 2d at 808 ("Because [the prescribing physician's] testimony that he would not have done anything differently had other warnings been given is subject to a credibility determination, we find that the circuit court erred in granting summary judgment on causation.").

In *Hermes v. Pfizer, Inc.*, 848 F.2d 66, 68 (5th Cir. 1988), the plaintiff brought a failure to warn claim concerning the risk of developing hunting jaw as a result of taking an antidepressant. *Id.* The jury was instructed that the plaintiff has the burden of proving by a preponderance of the evidence "that had an adequate warning been given, a reasonably prudent physician would not have prescribed [the drug]." *Id.* at 69. The plaintiff's treating oral surgeon (not the prescribing physician) testified that he took his mother off the same drug once she experienced symptoms like the plaintiff experienced. *Id.* The plaintiff's expert in adverse drug reactions and licensed pharmacist also testified that the plaintiff would not have suffered her injuries had an adequate warning been given. *Id.* The court held that "[w]hen viewed in the light most favorable to [the plaintiff], this evidence was sufficient to allow the jury to decide the issue of causation, and when combined with a jury's permissible inferences, was sufficient to support the jury's determination

that had an adequate warning been given, a reasonably prudent physician would not have prescribed [the drug] for [the plaintiff]." *Id.* at 70.

Mississippi courts continue to recognize an objective standard for proving warnings causation. *See Smith v. Johnson & Johnson, Inc.*, 483 Fed. Appx. 909, 914 (5th Cir. 2012) ("To satisfy the burden of establishing warning causation, the plaintiff may establish either how a reasonable physician would have responded to an adequate warning, or subjective evidence of how the treating physician would have responded." (citing *Thomas v. Hoffman—LaRoche, Inc.,* 949 F.2d at 812)); *see also Little v. Smith & Nephew, Inc.*, 2015 WL 3651769, at *9 (N.D. Miss. June 11, 2015) ("In order to make out a case for failure to warn under the learned intermediary doctrine, the plaintiff must establish that the treating physician, or a reasonable physician in the treating physician's position, would not have used the product had he received an adequate warning." (citing *Smith v. Johnson & Johnson, Inc.,* 483 Fed. Appx. at 914)); *Estes v. Lanx, Inc.*, 2015 WL 9462964, at *3 (N.D. Miss. Dec. 23, 2015), *aff'd*, 660 F. App'x 260 (5th Cir. 2016) (same).

As a supplement to Dr. Alnas' testimony, Plaintiff intends to submit evidence that a reasonable physician would have altered his prescribing practices had he been adequately warned of the risk of permanent hair loss by Sanofi. Consistent with the trial scheduling deadlines entered by this Court, Plaintiff has not yet submitted expert reports in this case. But Plaintiff means to submit evidence that, just like Dr. Alnas, a reasonable physician also would not have prescribed Taxotere for a patient like Plaintiff without first counseling the patient on the risks involved and allowing the patient to make an informed decision once adequately warned of the risks. *See, e.g.,* Ex. C, Expert Report of Dr. Bosserman submitted for Trial 1, 11/9/2018 at p. 11. Plaintiff also will submit evidence, through her experts, that a reasonable physician would find numerous

alternative and appropriate regimens within the toolbox of regimens available for treatment of Ms. Roach within the NCCN guidelines.

> Chemotherapy regimens that do not have anthracyclines or taxanes, when combined with endocrine therapy, have only slightly reduced effectiveness. Even first-generation regimens such as CMF, which has slightly reduced effectiveness, can be a reasonable patient choice and is associated with a lower risk of hair loss. As noted in the NCCN Guidelines, use of CMF remains within the standard of practice. This highlights the need for a meaningful informed consent process so that patients can make a decision for therapy that is the most reasonable for them.

*Id.* at p. 20.

Accordingly, in addition to the existence of material facts precluding judgment as a matter of law, entry of summary judgment under the learned-intermediary doctrine would be premature here.

## **CONCLUSION**

For these reasons, Sanofi has failed to meet their burden to show entitlement to summary judgment on based on warnings causation. Accordingly, summary judgment should be denied.

Dated: March 8, 2021　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　Christopher L. Coffin
　　　　　　　　　　　　　　　　　　　　Jessica Perez Reynolds
　　　　　　　　　　　　　　　　　　　　Evan P. Fontenot
　　　　　　　　　　　　　　　　　　　　PENDLEY, BAUDIN & COFFIN, L.L.P.
　　　　　　　　　　　　　　　　　　　　1100 Poydras Street, Suite 2225
　　　　　　　　　　　　　　　　　　　　New Orleans, Louisiana 70163
　　　　　　　　　　　　　　　　　　　　Phone: (504) 355-0086
　　　　　　　　　　　　　　　　　　　　Fax: (504) 355-0089
　　　　　　　　　　　　　　　　　　　　ccoffin@pbclawfirm.com
　　　　　　　　　　　　　　　　　　　　jreynolds@pbclawfirm.com
　　　　　　　　　　　　　　　　　　　　efontenot@pbclawfirm.com

　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff, Melissa Roach*

<u>/s/ Christopher L. Coffin</u>
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

<u>/s/M. Palmer Lambert</u>
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

<u>/s/ Karen B. Menzies</u>
Karen Barth Menzies (CA Bar #180234)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

<u>/s/Dawn M. Barrios</u>
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

### PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com


J. Kyle Bachus
Bachus & Schanker, LLC
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com


Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045 Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

John Gomez
The Gomez Law Firm, PLLC
655 West Broadway, Suite 1700
San Diego, CA 92101
Phone: (619) 237.3490
Fax: 619.237.3496.
john@thegomezfirm.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, FL 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Jessica Perez Reynolds
Pendley, Baudin & Coffin
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Phone: (225) 687-6396
Fax: (225) 687-6398
jperez@pbclawfirm.com

Darin L. Schanker
Bachus Schanker
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
dls@coloradolaw.net

| | |
|---|---|
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904 15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Hunter J. Shkolnik<br>Napoli Shkolnik PLLC<br>360 Lexington Avenue, 11th Floor<br>New York, NY 10017<br>Phone: (212) 397-1000<br>hunter@napolilaw.com |
| Daniel P. Markoff<br>Atkins & Markoff Law Firm<br>9211 Lake Hefner Parkway, Suite 104<br>Oklahoma City, OK 73120<br>Phone: (405) 607-8757<br>Fax: (405) 607-8749<br>dmarkoff@amalaw.com | Zachary Wool<br>Barrios Kingsdorf & Casteix, LLP<br>701 Poydras Street, Suite 3650<br>New Orleans, LA 70139<br>Phone: (504) 524-3300<br>Fax: (504) 524-3313<br>zwool@bkc-law.com |

**CERTIFICATE OF SERVICE**

  I hereby certify that on March 8, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

                 /s/ M. Palmer Lambert
                 M. PALMER LAMBERT