UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br>Emma Willie, Case No. 2:18-cv-3857 | MDL No. 2740<br><br>SECTION: H<br><br>JUDGE MILAZZO<br><br>MAG. JUDGE NORTH |

PLAINTIFF EMMA WILLIE'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
<u>BASED ON WARNINGS CAUSATION</u>

**Introduction**

As this Court has acknowledged, the treatment of breast cancer is a patient-driven process, involving detailed discussions between a patient and her oncologist about the various treatment options and a patient's consideration of the risks and benefits of each treatment option. These discussions precede the oncologist's recommendation of available cancer treatment regimens, and the patient's ultimate selection of a particular set of prescription drugs and interventions that will comprise her cancer treatment regimen.

Dr. Sananand Patil, MD, Plaintiff Emma Willie's prescribing oncologist, testified that, in 2014, when Ms. Willie was prescribed chemotherapy, he did not know that Taxotere could cause permanent alopecia. Consequently, when he discussed the risks and benefits of a Taxotere-containing chemotherapy regimen with Ms. Willie, he could not (and, thus, did not) educate his patient about the risk of permanent alopecia. Dr. Patil testified that had he known of this risk, he would have warned Ms. Willie. Dr. Patil also testified that it is ultimately the patient's decision whether to take a Taxotere-containing chemotherapy regimen once apprised of the risks. Such

1

testimony shows that a timely and adequate warning on the risk of permanent alopecia would have altered Dr. Patil's safety discussion of risks and benefits with Ms. Willie, which, in turn, would have altered Ms. Willie's ultimate decision to select and receive a Taxotere-containing regimen. Therefore, under the Court's learned intermediary analysis in this MDL, Sanofi is not entitled to summary judgment. *See* Order and Reasons of July 9, 2019 (Earnest), Doc. 7571; Order and Reasons of April 7, 2020 (Kahn), Doc. 9888.

Alternatively, because a pharmaceutical tort victim's case requires a jury's consideration of the learned intermediary's testimony about what they would have done, if presented years ago with appropriate warnings, there exists legal authority supporting a Plaintiff's ability to put forth objective evidence that a reasonable physician would have considered and prescribed an alternative if the patient elected to avoid a particular risk. Thus, Ms. Willie should be allowed to call a physician at trial to provide opinion testimony regarding what a reasonable doctor would have done if faced with a patient like Ms. Willie who desired an alternative non-Taxotere regimen because of the risk of permanent alopecia. Accordingly, at this stage of the litigation before transmission of expert reports, Sanofi is not entitled to summary judgment based on warnings causation and the learned intermediary doctrine.

**Facts**

Plaintiff has responded to the Statement of Undisputed Facts submitted by Sanofi. *See* Plaintiff's Response to Defendants' Statement of Undisputed Facts. While a few of Sanofi's stated "facts" are accurate, many are inaccurate, incomplete, misleading, taken out of context, and/or irrelevant to the controversy before the Court. Where necessary, Plaintiff has attempted to set the record straight by denying that certain facts are undisputed and by citing relevant facts in support

of Plaintiff's opposition. The following summary of pertinent facts is provided hereinbelow in hopes of assisting the Court in its evaluation of this motion:

Plaintiff's prescribing physician, Dr. Patil, is board certified in medical oncology.[1] Ms. Willie presented to Dr. Patil in October 2014 with early stage—T2N0, ER-positive, PR-negative, and HER-2-negative breast cancer.[2] Ms. Willie's surgical oncologist performed a right breast lumpectomy on November 17, 2014.[3] Ms. Willie underwent radiation from May 11, 2015 through June 2015.[4]

Dr. Patil recommended that Ms. Willie undergo a chemotherapy regimen that included Taxotere.[5] Dr. Patil considered a Taxotere-containing chemotherapy regimen his first recommendation for Ms. Willie.[6] Dr. Patil would have explained other chemotherapy options only if Ms. Willie had refused to take a Taxotere-containing regimen.[7] Dr. Patil does not recommend chemotherapy regimens containing anthracyclines to patients with HER2-negative breast cancer due to cardiac side effects.[8]

Dr. Patil studies the NCCN Guidelines, UpToDate, and a drug's package insert prior to prescribing chemotherapy to his patients.[9] Dr. Patil warns his patients of common and permanent side effects associated with chemotherapy drugs.[10] When appropriate, Dr. Patil counsels his patients on risks specific to individual chemotherapy drugs like Taxotere.[11]

---

[1] Ex. A, Deposition of Sananand Patil, MD, Nov. 13, 2020, 9:3-4 ("Patil Dep.").
[2] Ex. B, Deposition of Emma Willie, Oct. 20, 2020 ("Willie Dep.") 23:17—24:03; Sanofi's Ex. E at 5.
[3] Ex. C, Emma Willie's General Surgery of Southaven Medical and Billing Records at 11.
[4] Ex. D, Emma Willie's Oncology Report at 1, Ex. E, Emma Willie's Baptist Memorial Hospital Record at 1-4.
[5] Ex. A, Patil Dep. 29:17-21.
[6] *Id.* at 29:21.
[7] *Id.* at 29:17-24.
[8] *Id.* at 17:23-18:8.
[9] *Id.* at 49:3-6; 78:22-79:2.
[10] *Id.* at 17:7-10; 59:10-20; 61:20-25.
[11] *Id.* at 60:8-18.

3

Dr. Patil was unaware of the risk of permanent alopecia at the time he prescribed a Taxotere-containing chemotherapy regimen to Ms. Willie in 2014.[12] Dr. Patil first learned about cases of permanent alopecia associated with Taxotere through the filing of this lawsuit: "I had no knowledge of permanent hair loss until this case was filed. In my experience, patients lose their hair and they get it back after the chemo."[13]

If Dr. Patil had known about a risk of permanent alopecia associated with the use of Taxotere, he would have advised Ms. Willie about that risk.[14] Dr. Patil appreciates that his patients make the ultimate decision on whether to take a recommended chemotherapy drug: "They have all the choice. They make the choice of getting treatment, the options of treatment. They make all the choices."[15] Dr. Patil would have discussed other options with Ms. Willie had she elected not to take Taxotere due to the risk of permanent alopecia.[16]

Ms. Willie had no medical training,[17] no prior cancer history,[18] and relied on her doctors to make treatment decisions for her.[19] Being apprised of the full risk profile in each of her options was an important consideration in selecting the best care for her early stage breast cancer.[20] If Ms. Willie had been informed of the risk of permanent alopecia, she would have chosen another chemotherapy regimen with a lower risk.[21]

**Legal Standard**

Summary judgment is only appropriate "if the movant shows that there is no genuine

---

[12] *Id.* at 67:6-13.
[13] *Id.* at 59:10-13.
[14] *Id.* at 67:14-23.
[15] *Id.* at 61:13-15.
[16] *Id.* at 29:17-24.
[17] Ex. B, Willie Dep. 11:17-19.
[18] Sanofi's Ex. D, Fifth Amended Plaintiff Fact Sheet at 9 ("PFS").
[19] Ex. B, Willie Dep. 50:08-15.
[20] *Id.* at 83:4-5 ("[T]he risks and side effects are always important . . .").
[21] *Id.* at 29:13-16, 33:17-20.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the non-moving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In determining whether a genuine issue of fact exists, the Court must review the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 255 (1986); *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016).

In deciding a motion for summary judgment, a genuine issue of material fact exists when the evidence is such that, viewing the record as a whole, a rational trier of fact could return a verdict for the non-moving party. *Dediol v. Best Chevrolet, Inc.,* 655 F. 3d 435,439 (5th Cir. 2011). This Court, however, must "refrain from making credibility determinations or weighing the evidence…" *Devon Enterprises, LLC v. Arlington Independent School Dist.,* 541 Fed. Appx. 439, 441(5th Cir. 2013) (quoting *Equal Employment Opportunity Comm'n v. WC&M Enters.*, 496 F. 3d 393, 398 (5th Cir. 2007)). Ultimately, this Court's concern is to ascertain "whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**Argument**

I. **Record Evidence Precludes Summary Judgment Under the Learned Intermediary Doctrine.**

In products liability claims involving prescription drugs, Mississippi applies the learned-intermediary doctrine, "which holds that 'the manufacturer's failure to warn the patient of the product's risks does not render the product defective or unreasonably dangerous so long as the

5

manufacturer adequately warns the learned intermediary.'" *Deese v. Immunex Corp.*, 2012 WL 463722, at *4 (S.D. Miss. Feb 13, 2012) (quoting *Janssen Pharm., Inc. v. Bailey*, 878 So.2d 31, 58 (Miss. 2004); *see also* Miss. Cod Ann. § 11-1-63(c)(ii) (codifying the learned intermediary doctrine) ("[a]n adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the product… taking into account the characteristics of, and the ordinary knowledge common to, a physician or other licensed professional who prescribes the drug…"). Therefore, "the drug manufacturer has a duty to adequately warn the prescribing physician of any known adverse effects which might result from use of its prescription drugs." *Wyeth Labs., Inc. v. Fortenberry*, 530 So.2d 688, 691 (Miss. 1988).

To prevail on a failure to warn theory, a plaintiff must establish "(1) that an adequate warning would have prevented the treating physician from administering the drug; and (2) that the injury would not have occurred had the drug not been administered." *Bennet v. Madakasira*, 821 So. 2d 794, 807 (Miss. 2002), *abrogated on other grounds by Hutzel v. City of Jackson*, 22 So.3d 1116 (Miss. 2010). Sanofi asserts that Plaintiff cannot meet the first prong – warnings causation. However, the evidence is to the contrary and, at a minimum, shows that the warnings causation issue cannot be resolved on summary judgment in this case and must be decided by the fact finder at trial.

### A. Plaintiff has established warnings causation by showing that an adequate warning would have prevented the treating physician from administering the drug.

Causation can be established by showing that, if properly warned, Plaintiff's prescribing physician would have altered his conduct so that Plaintiff would not have received the drug. *See Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 812 (5th Cir. 1992); *see also Wyeth Labs., Inc.*

6

*v. Fortenberry*, 530 So.2d at 691 (the plaintiff has "the burden of showing that an adequate warning would have altered [the prescribing physician's] conduct."). Plaintiff therefore submits that her prescribing physician's testimony that he would have disclosed a stronger warning to his patient, coupled with Ms. Willie's testimony that she would have taken an alternative chemotherapy regimen had she been properly counseled on the risk of permanent alopecia associated with Taxotere satisfies warnings causation under Mississippi law. This more flexible approach to causation fits squarely within this Court's previous analysis under Louisiana law of whether the plaintiff's physician would have acted differently in response to an adequate warning such to avoid the plaintiff's injuries. *See* Rec. Doc. 7571.

Indeed, this Court has noted that that "a patient facing a cancer diagnosis can reasonably expect more involvement and guidance from her doctor that she would in another context." *Id.* Therefore, "[t]he question is not simply 'what would the doctor have prescribed' but whether and how the doctor would have advised the patient of the risk of permanent alopecia associated with Taxotere, whether the patient would have inquired about other options, what the doctor would have recommended, and what decision the plaintiff would have ultimately made." *Id.* But, contrary to Sanofi's interpretation, this Court did not create a test with four elements that must be met. Rather, this Court stated that it "would consider these questions with the goal being to assess what the doctor and the patient would have decided together." *Id.*

Plaintiff's prescribing oncologist, Dr. Patil, testified that he was unaware of the risk of permanent alopecia when he prescribed Taxotere to Ms. Willie in 2014: "I do not recall any information about permanent alopecia at the time or even until recently.[22] Dr. Patil further testified that had he received an adequate warning of the risk of permanent alopecia from Sanofi, he would

---

[22] Ex. A, Patil Dep. 67:6-13.

7

have advised Plaintiff on this risk and would have respected Plaintiff's decision to go with a different treatment regimen:

> Q: And would you have warned Plaintiff that Taxotere or Docetaxel was associated with the risk of permanent hair loss if you would have known?
>
> . . .
>
> A: I would tell the patient that there is a risk of permanent alopecia going on forward.[23]

Dr. Patil appreciates that his patients make the ultimate decision on whether to take a recommended chemotherapy drug: "They have all the choice. They make the choice of getting treatment, the options of treatment. They make all the choices."[24] Dr. Patil would have discussed other options with Ms. Willie had she elected not to take Taxotere due to the risk of permanent alopecia.[25]

If Ms. Willie had been informed of the risk of permanent alopecia, she would have chosen another chemotherapy regimen with a lower risk: her desires to survive and to avoid potentially disfiguring side effects were not mutually exclusive.[26] Ms. Willie was an active participant in her treatment. She discussed hair loss with Dr. Patil before undergoing chemotherapy.[27] Ms. Willie spoke with Dr. Patil in a visit about lack of hair regrowth 5-6 months after chemotherapy.[28] And, while Ms. Willie was focused on her survival, she clearly testified that the consideration of potentially permanent side effects was also important to her: "If it had of been some other type of

---

[23] *Id.* at 67:14-23.
[24] *Id.* at 61:13-15.
[25] *Id.* at 29:17-24.
[26] Ex. B, Willie Dep. 29:13-16, 33:17-20.
[27] *Id.* at 94:18-25, 95:1-2.
[28] *Id.* at 131:23-25, 132:1-6.

treatment that wouldn't have taken my hair or whatever, you know, I probably would have gone with that or whatever."[29]

A federal district court in Mississippi considered the issue of warnings causation quite recently in *Lim v. Ethicon, Inc.*, 2021 WL 612399 (S.D. Miss. Feb. 12, 2021). *Lim* involved a medical device rather than a prescription drug, but the district court confirmed that the plaintiff had "the burden of showing that an adequate warning would have altered [the learned intermediary's] conduct." *Id.* at *6 (citing *Fortenberry*, 530 So.2d at 691). The treating physician in that case testified that he was aware of the risks associated with the medical device, he would not have changed his decision to implant the medical device had the defendants' documentation listed all known risks, and that the defendant's documentation was not something he would typically consult before implanting the device into a patient. *Id.* As such, the district court granted summary judgment on the plaintiff's failure to warn claim. *Id.*

Distinguishably, it is clear here that Dr. Patil was unaware of the risk of permanent hair loss associated with Taxotere in 2014, and, had Sanofi warned him of this risk, he would have taken a different course of action – shared this risk with his patient, Ms. Willie.[30] The present case is likewise distinguishable from the *Phillips* case because, unlike Dr. Sonnier, Dr. Patil admitted that the patient makes the ultimate decision about whether to use a chemotherapy regimen.[31] Any arguably conflicting testimony Sanofi cites (assuming *arguendo* such testimony is inconsistent) presents a fact issue for the jury."

---

[29] *Id.* at 29:13-16.
[30] Patil Dep. 67:14-23.
[31] *Id.* at 61:13-15.

### B. Plaintiff may support warnings causation through objective evidence.

Warnings causation can be established through evidence that Plaintiff's prescribing physician would not have prescribed the drug had she been properly warned on Taxotere's association with permanent alopecia. While this is one method to establish causation, it is not the exclusive means of doing so. The burden of establishing causation may be satisfied by either "objective evidence of how a reasonable physician would have responded to an adequate warning, or subjective evidence of how the treating physician would have responded." *Thomas v. Hoffman-LaRoche, Inc.*, 949 at 812; *see also Bennet,* 821 So. 2d at 808 ("Because [the prescribing physician's] testimony that he would not have done anything differently had other warnings been given is subject to a credibility determination, we find that the circuit court erred in granting summary judgment on causation.").

In *Hermes v. Pfizer, Inc.*, 848 F.2d 66, 68 (5th Cir. 1988), the plaintiff brought a failure to warn claim concerning the risk of developing hunting jaw as a result of taking an antidepressant. *Id.* The jury was instructed that the plaintiff has the burden of proving by a preponderance of the evidence "that had an adequate warning been given, a reasonably prudent physician would not have prescribed [the drug]." *Id.* at 69. The plaintiff's treating oral surgeon (not the prescribing physician) testified that he took his mother off the same drug once she experienced symptoms like the plaintiff experienced. *Id.* The plaintiff's expert in adverse drug reactions and licensed pharmacist also testified that the plaintiff would not have suffered her injuries had an adequate warning been given. *Id. T*he court held that "[w]hen viewed in the light most favorable to [the plaintiff], this evidence was sufficient to allow the jury to decide the issue of causation, and when combined with a jury's permissible inferences, was sufficient to support the jury's determination that had an adequate warning been given, a reasonably prudent physician would not have prescribed [the drug] for [the plaintiff]." *Id. at 70.*

10

Mississippi courts continue to recognize an objective standard for proving warnings causation. *See Smith v. Johnson & Johnson, Inc.*, 483 Fed. Appx. 909, 914 (5th Cir. 2012) ("To satisfy the burden of establishing warning causation, the plaintiff may establish either how a reasonable physician would have responded to an adequate warning, or subjective evidence of how the treating physician would have responded." (citing *Thomas v. Hoffman—LaRoche, Inc.,* 949 F.2d at 812)); *see also Little v. Smith & Nephew, Inc.*, 2015 WL 3651769, at *9 (N.D. Miss. June 11, 2015) ("In order to make out a case for failure to warn under the learned intermediary doctrine, the plaintiff must establish that the treating physician, or a reasonable physician in the treating physician's position, would not have used the product had he received an adequate warning." *Smith v. Johnson & Johnson, Inc.*, 483 Fed. Appx. At 914); *Estes v. Lanx, Inc.*, 2015 WL 9462964, at *3 (N.D. Miss. Dec. 23, 2015), *aff'd*, 660 F. App'x 260 (5th Cir. 2016) (same).

As a supplement to Dr. Patil's testimony, Plaintiff intends to submit evidence that a reasonable physician would have altered his prescribing practices had he been adequately warned of the risk of permanent alopecia by Sanofi. Consistent with the trial scheduling deadlines entered by this Court, Plaintiff has not yet submitted expert reports in this case. But Plaintiff means to submit evidence that, just like Dr. Patil, a reasonable physician also would not have prescribed Taxotere for a patient like Plaintiff without first counseling the patient on the risks involved and allowing the patient to make an informed decision once adequately warned of the risks. *See, e.g.,* Ex. F, Expert Report of Dr. Bosserman submitted for Trial 1, 11/9/2018 at p. 11. Plaintiff also will submit evidence, through her experts, that a reasonable physician would find numerous alternative and appropriate regimens within the toolbox of regimens available for treatment of Ms. Willie within the NCCN guidelines.

> Chemotherapy regimens that do not have anthracyclines or taxanes, when combined with endocrine therapy, have only slightly reduced

> effectiveness. Even first-generation regimens such as CMF, which has slightly reduced effectiveness, can be a reasonable patient choice and is associated with a lower risk of hair loss. As noted in the NCCN Guidelines, use of CMF remains within the standard of practice. This highlights the need for a meaningful informed consent process so that patients can make a decision for therapy that is the most reasonable for them.

*Id.* at p. 20.

Accordingly, in addition to the existence of material facts precluding judgment as a matter of law, entry of summary judgment under the learned-intermediary doctrine would be premature here.

## CONCLUSION

For these reasons, Sanofi has failed to meet their burden to show entitlement to summary judgment on based on warnings causation. Accordingly, summary judgment should be denied.


Dated: March 8, 2021

Respectfully submitted,

/s/ *Nathan Buttars*
Nathan Buttars, UTB # 13659
T. Aaron Stringer, UTB # 12681
LOWE LAW GROUP
6028 S. Ridgeline Dr., #200
Ogden, UT 84405
T: 801-917-8500
F: 801-917-8484
nate@lowelawgroup.com
aaron@lowelawgroup.com

/s/ *Christopher L. Coffin*
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

/s/ *Karen B. Menzies*
Karen Barth Menzies (CA Bar #180234)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

*Plaintiffs' Co-Lead Counsel*

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

J. Kyle Bachus
Bachus & Schanker, LLC
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045 Phone:
510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717

Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

John Gomez
The Gomez Law Firm, PLLC
655 West Broadway, Suite 1700
San Diego, CA 92101
Phone: (619) 237.3490
Fax: 619.237.3496.
john@thegomezfirm.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, FL 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904 15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@amalaw.com

Fax: (510) 350-9701
amm@classlawgroup.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Jessica Perez Reynolds
Pendley, Baudin & Coffin
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Phone: (225) 687-6396
Fax: (225) 687-6398
jperez@pbclawfirm.com

Darin L. Schanker
Bachus Schanker
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
dls@coloradolaw.net

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Zachary Wool
Barrios Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
zwool@bkc-law.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 8, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

                                                */s/ M. Palmer Lambert*
                                                M. PALMER LAMBERT