**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION** | **MDL No. 2740**<br><br>**SECTION "H" (5)** |
| **This Document Relates to**<br><br>**Emma Willie**<br>**Case No. 2:18-cv-3857** | |

**PLAINTIFF EMMA WILLIE'S RESPONSE TO DEFENDANTS' STATEMENT OF
UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR
<u>SUMMARY JUDGMENT ON WARNINGS CAUSATION</u>**

Plaintiff Emma Willie hereby submits this Response to Defendants' Statement of Undisputed Material Facts, which was submitted in support of Defendants' Motion for Summary Judgment.  Plaintiff Willie submits this Response pursuant to Local Rule 56.2 and states:

1. Admitted.

2. Admitted insofar as the Taxotere labeling warned of temporary hair loss rather than permanent hair loss.

3. Admitted.  However, Taxotere is one of many effective chemotherapy agents available to treat breast cancer.  Only recently since Sanofi changed its label in December 2015 have doctors and their patients been provided with information to understand and consider the risk of permanent alopecia known for many years to Sanofi. Just last year, prescribing oncologists were recommended to warn their patients of the risk of permanent hair loss with alopecia.  Ex. G, 2020 UpToDate article.

4. Admitted.

5. Admitted.

1

6. Admitted. However, some records show Ms. Willie at T1bN1aM0. Ex. H, Record Dated 4/21/2015.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Denied. Ms. Willie testified that the decision to have a lumpectomy versus a mastectomy was based on Dr. Patil's recommendations and informed discussion. Ex. B, Willie Dep. at 49:9-17.

12. Admitted. Ms. Willie relied on Dr. Patil to recommend the most effective surgical treatment and to discuss the risks of different types of surgery. *Id.* at 50:8-51:9.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted insofar as Dr. Patil testified that he believed Ms. Willie's chances of survival would be substantially better if she received further treatment, which was not specific to chemotherapy.

17. Ms. Willie admits that at the time of her diagnosis, she did not consider declining treatment. However, Ms. Willie clarifies that this testimony was a reference to her decision to treat her cancer in general. This testimony did not address whether Ms. Willie considered declining specific chemotherapy drugs, nor that she had the information necessary to make informed decisions about specific chemotherapy drugs.

18. Admitted.

19. Admitted.

20. Ms. Willie admits that at the time of her diagnosis, she did not consider declining chemotherapy. However, Ms. Willie clarifies that this testimony was a reference to chemotherapy in general. This testimony did not address whether Ms. Willie considered declining specific chemotherapy drugs, nor that she had the information necessary to make informed decisions about specific chemotherapy drugs.

21. Denied.  If Ms. Willie had been informed of the risk of permanent alopecia, she would have chosen another chemotherapy regimen with a lower risk. *Id.* at 29:13-16, 33:17-20.

22. Admitted.

23. Admitted.  However, there were numerous chemotherapy regimens appropriate for Ms. Willie's type of breast cancer; in fact, several did not include Adriamycin or Taxotere, and all regimens provided in the NCCN guidelines are within the standard of practice. Sanofi's Ex. J, NCCN Clinical Practice Guidelines in Oncology, 2014.

24. Ms. Willie admits that at the time of her diagnosis, she did not ask about other treatment options.  However, Ms. Willie did not have the information necessary to make an informed decision about Taxotere.  Had Ms. Willie known about the risk of permanent hair loss, she would have wanted to take another chemotherapy agent aside from Taxotere.  Ex. B, Willie Dep. at 29:13-16, 33:17-20.

25. Ms. Willie admits that at the time of her diagnosis, she did not seek a second opinion. However, Ms. Willie did not have the information necessary to make an informed decision about Taxotere.  Had Ms. Willie known about the risk of permanent hair loss,

she would have wanted to take another chemotherapy agent aside from Taxotere. *Id.*
at 29:13-16, 33:17-20.

26. Denied. Although Ms. Willie was focused on her survival, she would not accept any
and all risks to ensure that her cancer would not return. Ms. Willie did not have the
information necessary to make an informed decision about Taxotere. Had Ms. Willie
known about the risk of permanent hair loss, she would have wanted to take another
chemotherapy agent aside from Taxotere. *Id.* at 29:13-16, 33:17-20.

27. Denied. Although Ms. Willie was focused on her survival, she would not accept any
and all risks to ensure that her cancer would not return. Ms. Willie did not have the
information necessary to make an informed decision about Taxotere. Had Ms. Willie
known about the risk of permanent hair loss, she would have wanted to take another
chemotherapy agent aside from Taxotere. *Id.* at 29:13-16, 33:17-20.

28. Denied. Although Ms. Willie was focused on her survival, she would not accept any
and all risks to ensure that her cancer would not return. Ms. Willie did not have the
information necessary to make an informed decision about Taxotere. Had Ms. Willie
known about the risk of permanent hair loss, she would have wanted to take another
chemotherapy agent aside from Taxotere. *Id.* at 29:13-16, 33:17-20.

29. Admitted. Ms. Willie does not have medical training other than CPR and is unaware
whether or not other chemotherapy regimens have a risk of permanent alopecia. *Id.* at
11:17-19.

30. Denied. Although Ms. Willie was focused on her survival, she would not accept any
and all risks to ensure that her cancer would not return. Ms. Willie did not have the
information necessary to make an informed decision about Taxotere. Had Ms. Willie

known about the risk of permanent hair loss, she would have wanted to take another chemotherapy agent aside from Taxotere. *Id.* at 29:13-16, 33:17-20.

31. Admitted.

32. Admitted. However, there were numerous chemotherapy regimens appropriate for Ms. Willie's type of breast cancer; in fact, several did not include Adriamycin or Taxotere, and all regimens provided in the NCCN guidelines are within the standard of practice. Sanofi's Ex. J, NCCN Clinical Practice Guidelines in Oncology, 2014.

33. Admitted.

34. Admitted. However, there were numerous chemotherapy regimens appropriate for Ms. Willie's type of breast cancer; in fact, several did not include Adriamycin or Taxotere, and all regimens provided in the NCCN guidelines are within the standard of practice. Sanofi's Ex. J, NCCN Clinical Practice Guidelines in Oncology, 2014.

35. Admitted. However, Dr. Patil appreciates that his patients make the ultimate decision on whether to take a recommended chemotherapy drug: "They have all the choice. They make the choice of getting treatment, the options of treatment. They make all the choices." Ex. A, Patil Dep. at 61:13-15. Dr. Patil would have discussed other options with Ms. Willie had she elected not to take Taxotere due to the risk of permanent alopecia. *Id*. at 29:17-24.

36. Admitted. However, Dr. Patil appreciates that his patients make the ultimate decision on whether to take a recommended chemotherapy drug: "They have all the choice. They make the choice of getting treatment, the options of treatment. They make all the choices." *Id.* at 61:13-15. Dr. Patil would have discussed other options with Ms. Willie

had she elected not to take Taxotere due to the risk of permanent alopecia. *Id*. at 29:17-24.

37. Admitted. However, Dr. Patil appreciates that his patients make the ultimate decision on whether to take a recommended chemotherapy drug: "They have all the choice. They make the choice of getting treatment, the options of treatment.  They make all the choices." *Id.*. at 61:13-15. Dr. Patil would have discussed other options with Ms. Willie had she elected not to take Taxotere due to the risk of permanent alopecia. *Id*. at 29:17-24.

38. Admitted insofar as all treatment options for early stage breast cancer have the risk of temporary alopecia.

39. Admitted.

40. Admitted. However, Dr. Patil appreciates that his patients make the ultimate decision on whether to take a recommended chemotherapy drug: "They have all the choice. They make the choice of getting treatment, the options of treatment.  They make all the choices." *Id*. at 61:13-15. Dr. Patil would have discussed other options with Ms. Willie had she elected not to take Taxotere due to the risk of permanent alopecia. *Id*. at 29:17-24.

41. Admitted.

42. Denied.  There were numerous chemotherapy regimens appropriate for Ms. Willie's type of breast cancer; in fact, several did not include Adriamycin or Taxotere, and all regimens provided in the NCCN guidelines are within the standard of practice. Sanofi's Ex. J, NCCN Clinical Practice Guidelines in Oncology, 2014.

43. Denied. Although Ms. Willie was focused on her survival, she would not accept any and all risks. Ms. Willie did not have the information necessary to make an informed decision about Taxotere. Had Ms. Willie known about the risk of permanent hair loss, she would have wanted to take another chemotherapy agent aside from Taxotere. Ex. B, Willie Dep. at 29:13-16, 33:17-20.

44. Admitted. However, there were numerous chemotherapy regimens appropriate for Ms. Willie's type of breast cancer; in fact, several did not include Adriamycin or Taxotere, and all regimens provided in the NCCN guidelines are within the standard of practice. Sanofi's Ex. J, NCCN Clinical Practice Guidelines in Oncology, 2014.

45. Admitted. However, there were numerous chemotherapy regimens appropriate for Ms. Willie's type of breast cancer; in fact, several did not include Adriamycin or Taxotere, and all regimens provided in the NCCN guidelines are within the standard of practice. Sanofi's Ex. J, NCCN Clinical Practice Guidelines in Oncology, 2014.

46. Admitted. However, there were numerous chemotherapy regimens appropriate for Ms. Willie's type of breast cancer; in fact, several did not include Adriamycin or Taxotere, and all regimens provided in the NCCN guidelines are within the standard of practice. Sanofi's Ex. J, NCCN Clinical Practice Guidelines in Oncology, 2014.

47. Admitted. However, there were numerous chemotherapy regimens appropriate for Ms. Willie's type of breast cancer; in fact, several did not include Adriamycin or Taxotere, and all regimens provided in the NCCN guidelines are within the standard of practice. Sanofi's Ex. J, NCCN Clinical Practice Guidelines in Oncology, 2014.

48. Denied. Dr. Patil appreciates that his patients make the ultimate decision on whether to take a recommended chemotherapy drug: "They have all the choice. They make the

choice of getting treatment, the options of treatment.  They make all the choices." Ex.

A, Patil Dep. at 61:13-15. Dr. Patil would have discussed other options with Ms. Willie

had she elected not to take Taxotere due to the risk of permanent alopecia. *Id*. at 29:17-

24. There were numerous chemotherapy regimens appropriate for Ms. Willie's type of

breast cancer; in fact, several did not include Adriamycin or Taxotere, and all regimens

provided in the NCCN guidelines are within the standard of practice.  Sanofi's Ex. J,

NCCN Clinical Practice Guidelines in Oncology, 2014.

49. Admitted.   However, Dr. Patil testified that now that he is aware of the risk of

permanent alopecia with Taxotere, he "would tell the patient that there is a risk of

permanent alopecia" moving forward.  Ex. A, Patil Dep. at 67:14-23.

50. Admitted insofar as TC is one of numerous treatment options within the standard of

care for HER2-negative breast cancer; in fact, several regimens provided in the NCCN

guidelines do not include Adriamycin or Taxotere, and all regimens provided in the

NCCN guidelines are within the standard of practice.  Sanofi's Ex. J, NCCN Clinical

Practice Guidelines in Oncology, 2014.


Plaintiff Emma Willie also hereby submits her Statement of Disputed Material Facts in

support of her Opposition to Sanofi's Motion for Summary Judgment pursuant to Local Rule 56.2

and states:

1. Ms. Willie's prescribing physician, Dr. Patil, is board certified in medical oncology.

Ex. A, Patil Dep. at 9:3-4.

2.  Ms. Willie presented to Dr. Patil in October 2014 with early stage—T2N0, ER-positive, PR-negative, and HER-2-negative breast cancer. Ex. B, Willie Dep. at 23:17—24:03; Sanofi's Ex. E at 5.

3.  Ms. Willie's surgical oncologist performed a right breast lumpectomy on November 17, 2014.  Ex. C at 11.

4.  Ms. Willie's margins were negative after surgery. Ex. G, Record Dated 4/21/2015.

5.  Ms. Willie underwent radiation from May 11, 2015 through June 2015.  Ex. D at 1, Ex. E at 1-4.

6.  Dr. Patil studies the NCCN Guidelines, UpToDate, and a drug's package insert prior to prescribing chemotherapy to his patients. Ex. A, Patil Dep. at 49:3-6; 78:22-79:2.

7.  Dr. Patil warns his patients of common and permanent side effects associated with chemotherapy drugs. *Id.* at 17:7-10; 59:10-20; 61:20-25.

8.  When appropriate, Dr. Patil counsels his patients on risks specific to individual chemotherapy drugs like Taxotere. *Id.* at 60:8-18.

9.  Dr. Patil was unaware of the risk of permanent alopecia at the time he prescribed a Taxotere-containing chemotherapy regimen to Ms. Willie in 2014. *Id.* at 67:6-13.

10. Dr. Patil first learned about cases of permanent alopecia associated with Taxotere through the filing of this lawsuit: "I had no knowledge of permanent hair loss until this case was filed.  In my experience, patients lose their hair and they get it back after the chemo." *Id.* at 59:10-13.

11. If Dr. Patil had known about a risk of permanent alopecia associated with the use of Taxotere, he would have advised Ms. Willie about that risk. *Id.* at 67:14-23.

12. Dr. Patil appreciates that his patients make the ultimate decision on whether to take a recommended chemotherapy drug: "They have all the choice. They make the choice of getting treatment, the options of treatment. They make all the choices." *Id.* at 61:13-15.

13. Dr. Patil would have discussed other options with Ms. Willie had she elected not to take Taxotere due to the risk of permanent alopecia. *Id.* at 29:17-24.

14. Ms. Willie had no medical training, no prior cancer history, and relied on her doctors to make treatment decisions for her. Ex. B, Willie Dep. 11:17-19, 50:08-15; Sanofi's Ex. D, Fifth Amended Plaintiff Fact Sheet at 9 ("PFS").

15. To Ms. Willie, being apprised of the full risk profile in each of her options was an important consideration in selecting the best care for her early stage breast cancer. *Id.* at 83:4-5 ("[T]he risks and side effects are always important . . .").

16. If Ms. Willie had been informed of the risk of permanent alopecia, she would have chosen another chemotherapy regimen with a lower risk. *Id.* at 29:13-16, 33:17-20.

17. When Ms. Willie sought treatment in 2014, she had options other than Taxotere. There were numerous chemotherapy regimens appropriate for her type of breast cancer; in fact, several did not include Adriamycin or Taxotere. Sanofi's Ex. J, NCCN Clinical Practice Guidelines in Oncology, 2014.

18. A reasonable physician also would not have prescribed Taxotere for a patient like Plaintiff without first counseling the patient on the risks involved and allowing the patient to make an informed decision once adequately warned of the risks. *See, e.g.,* Ex. F, Expert Report of Dr. Bosserman submitted for Trial 1, 11/9/2018 at p. 11.

19. A reasonable physician would have considered and prescribed an alternative if the patient elected to avoid a particular risk. *Id.* at p. 20.

Dated: March 8, 2021                                    Respectfully submitted,

                                                        /s/ *Nathan Buttars*
                                                        Nathan Buttars, UTB # 13659
                                                        T. Aaron Stringer, UTB # 12681
                                                        LOWE LAW GROUP
                                                        6028 S. Ridgeline Dr., #200
                                                        Ogden, UT 84405
                                                        T: 801-917-8500
                                                        F: 801-917-8484
                                                        nate@lowelawgroup.com
                                                        aaron@lowelawgroup.com

/s/ *Christopher L. Coffin*                             /s/ *Karen B. Menzies*
Christopher L. Coffin (#27902)                          Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.                        GIBBS LAW GROUP LLP
1100 Poydras Street, Suite 2225                         6701 Center Drive West, Suite 1400
New Orleans, Louisiana 70163                            Los Angeles, California 90045
Phone: (504) 355-0086                                   Telephone: 510-350-9700
Fax: (504) 355-0089                                     Facsimile: 510-350-9701
ccoffin@pbclawfirm.com                                  kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*                           *Plaintiffs' Co-Lead Counsel*

/s/ *M. Palmer Lambert*                                 /s/ *Dawn M. Barrios*
M. Palmer Lambert (#33228)                              Dawn M. Barrios (#2821)
GAINSBURGH BENJAMIN DAVID                               BARRIOS, KINGSDORF & CASTEIX, LLP
MEUNIER & WARSHAUER, LLC                                701 Poydras Street, Suite 3650
2800 Energy Centre, 1100 Poydras Street                 New Orleans, LA 70139
New Orleans, LA 70163-2800                              Phone: 504-524-3300
Phone: 504-522-2304                                     Fax: 504-524-3313
Fax: 504-528-9973                                       barrios@bkc-law.com
plambert@gainsben.com
                                                        *Plaintiffs' Co-Liaison Counsel*
*Plaintiffs' Co-Liaison Counsel*

**PLAINTIFFS' STEERING COMMITTEE**

11

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

J. Kyle Bachus
Bachus & Schanker, LLC
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

John Gomez
The Gomez Law Firm, PLLC
655 West Broadway, Suite 1700
San Diego, CA 92101

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045 Phone:
510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Jessica Perez Reynolds
Pendley, Baudin & Coffin
P.O. Drawer 71
24110 Eden Street

Phone: (619) 237.3490
Fax: 619.237.3496.
john@thegomezfirm.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, FL 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904 15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@amalaw.com

Plaquemine, LA 70765
Phone: (225) 687-6396
Fax: (225) 687-6398
jperez@pbclawfirm.com

Darin L. Schanker
Bachus Schanker
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
dls@coloradolaw.net

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Zachary Wool
Barrios Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
zwool@bkc-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ M. Palmer Lambert*
M. PALMER LAMBERT