IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL No. 2740 |
| | SECTION "H" (5) |
| This Document Relates to | |
| Cindy Smith Case No. 2:18-cv-07702 | |

**PLAINTIFF CINDY SMITH'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR <u>SUMMARY JUDGMENT ON WARNINGS CAUSATION</u>**

Plaintiff Cindy Smith hereby submits this Response to Defendants' Statement of Undisputed Material Facts, which was filed in support of Defendants' Motion for Summary Judgment. Plaintiff Smith submits this Response pursuant to Local Rule 56.2 and states:

1. Admitted.

2. Admitted insofar as the Taxotere labeling warned of temporary hair loss rather than permanent hair loss, and it never disclosed a risk of permanent hair loss known to Sanofi.

3. Admitted. However, Taxotere is one of many effective chemotherapy agents available to treat breast cancer. Only recently since Sanofi changed its label in December 2015 have doctors and their patients been provided with information to understand and consider the risk of permanent alopecia known for many years to Sanofi. Just last year, prescribing oncologists were recommended to warn their patients of the risk of permanent hair loss with alopecia. Ex. D, 2020 UpToDate article.

4. Admitted.

0

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted only insofar as the testimony speaks for itself and insofar as triple-negative breast cancer is characterized in the literature as a relatively aggressive form of breast cancer. The relative risk and possibilities of recurrence are issues to be addressed by experts, whose reports have not yet been disclosed in this case.

9. Admitted.

10. Denied.  Although Ms. Smith was focused on her survival, she would not accept any and all risks to ensure that her cancer would not return.  Ex. B, Smith Dep. at 116:19 – 24. ("Q. So you would agree that it's more important to you to accept some of these risks to ensure that your cancer would not return, correct? A. Not so much.  It would depend on what the risks was.").

11. Denied.  Although Ms. Smith was focused on her survival, she would not accept any and all risks to ensure that her cancer would not return.  *Id.* at 116:19 – 24. ("Q. So you would agree that it's more important to you to accept some of these risks to ensure that your cancer would not return, correct? A. Not so much.  It would depend on what the risks was.").

12. Denied.  Although Ms. Smith was focused on her survival, she would not accept any and all risks to ensure that her cancer would not return.  *Id.* at 116:19 – 24. ("Q. So you would agree that it's more important to you to accept some of these risks to ensure that your cancer would not return, correct? A. Not so much.  It would depend on what the risks was.").

13. Ms. Smith admits that at the time of her diagnosis, she did not ask about other treatment options. However, Ms. Smith did not have the information necessary to make an informed decision about Taxotere because her physician was not informed of the unique risk of permanent hair loss with Taxotere. Had Ms. Smith known about the risk of permanent hair loss, she would have wanted to take another chemotherapy agent aside from Taxotere. *Id.* at 24:18 – 21, 276:19 – 25.

14. Ms. Smith admits that at the time of her diagnosis, she did not consider declining treatment. However, Ms. Smith clarifies that this testimony was a reference to her decision to treat her cancer in general. This testimony did not address whether Ms. Smith considered declining specific chemotherapy drugs, nor that she had the information necessary to make informed decisions about specific chemotherapy drugs.

15. Admitted insofar as Dr. Herrington testified that she believed Ms. Smith's chances of survival without a regimen that included some form of chemotherapy would be poor.

16. Ms. Smith admits that at the time of her diagnosis, she did not ask about other treatment options. However, Ms. Smith did not have the information necessary to make an informed decision about Taxotere because her physician was not informed of the unique risk of permanent hair loss with Taxotere. Had Ms. Smith known about the risk of permanent hair loss, she would have wanted to take another chemotherapy agent aside from Taxotere. *Id.* at 24:18 – 21, 276:19 – 25. Also, Dr. Herrington testified that she counsels patients on the risks specific to individual chemotherapy agents like Taxotere. Ex. A, Herrington Dep. at 69:3 – 12.

17. Admitted. However, Ms. Smith did not have the information necessary to make an informed decision about Taxotere because her physician was not informed of the

unique risk of permanent hair loss with Taxotere.  Had Ms. Smith known about the risk of permanent hair loss, she would have wanted to take another chemotherapy agent aside from Taxotere.  Ex. B, Smith Dep. at 24:18 – 21, 276:19 – 25.

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. Denied.  Ms. Smith is not a medical professional, and she did not have the information necessary to make an informed decision about Taxotere because her physician was not informed of the unique risk of permanent hair loss with Taxotere.  Had Ms. Smith known about the risk of permanent hair loss, she would have wanted to take another chemotherapy agent aside from Taxotere.  *Id.* at 24:18 – 21, 276:19 – 25.  She also believes "[t]here's got to be other --- other ways to treat cancer besides this drug that causes so much hair loss and changes your whole life." *Id.* at 228:17 – 20. Further, Ms. Smith's expert reports are not yet due in this matter; she anticipates her experts will identify the available options with similar efficacy in their expert reports all of which are within the standard of care and identified in the NCCN Guidelines.

23. Denied.  Although Ms. Smith testified that she did not know if she would have chosen an alternative regime that would have lowered her chances of survival, she did not have the information necessary to make an informed decision about Taxotere because her physician was not informed of the unique risk of permanent hair loss with Taxotere.  Had Ms. Smith known about the risk of permanent hair loss, she would have wanted to take another chemotherapy agent aside from Taxotere.  *Id.* at 24:18 – 21, 276:19 – 25.

24. Admitted.  Ms. Smith testified that while she is grateful that she survived her breast cancer, she "would have liked to have survived with more hair that what I've got." *Id.* at 16:1 – 5.

25. Admitted.

26. Admitted.  However, there were numerous chemotherapy regimens appropriate for Ms. Smith's type of breast cancer; in fact, several did not include Adriamycin or Taxotere, and all regimens provided in the NCCN guidelines are within the standard of practice. Sanofi's Ex. G, NCCN Clinical Practice Guidelines in Oncology, 2014.

27. Admitted.  However, there were numerous chemotherapy regimens appropriate for Ms. Smith's type of breast cancer; in fact, several did not include Adriamycin or Taxotere, and all regimens provided in the NCCN guidelines are within the standard of practice. *Id.*

28. Admitted.  However, Dr. Herrington testified that she would respect her patient's ultimate decision whether to take a chemotherapy agent.  Ex. A, Herrington Dep. at 53:18 – 21, 54:18 – 55:10.  Plaintiff also intends to submit objective evidence that a reasonable physician would not have prescribed Taxotere for a patient like Plaintiff without first counseling the patient on the risks involved and allowing the patient to make an informed decision once adequately warned of the risks.

29. Admitted.

30. Admitted.  However, Ms. Smith testified that she was not unaware that she had any problems with her heart. Ex. B, Smith Dep. at 126:9 – 15, 127:13 – 18, 148:17 – 149:5, 150:19 – 22.

31. Admitted.

4

32. Admitted.

33. Admitted.

34. Admitted only insofar as this represents Dr. Herrington's thought process without knowing of a risk of permanent hair loss associated with Taxotere. However, Dr. Herrington testified that she would respect her patient's ultimate decision whether to take a chemotherapy agent. Ex. A, Herrington Dep. at 53:18 – 21, 54:18 – 55:10. Plaintiff also intends to submit objective evidence that a reasonable physician would not have prescribed Taxotere for a patient like Plaintiff without first counseling the patient on the risks involved and allowing the patient to make an informed decision once adequately warned of the risks.

35. Admitted only insofar as this represents Dr. Herrington's thought process without knowing of a risk of permanent hair loss associated with Taxotere. However, Dr. Herrington testified that she would respect her patient's ultimate decision whether to take a chemotherapy agent. *Id.* at 53:18 – 21, 54:18 – 55:10. Plaintiff also intends to submit objective evidence that a reasonable physician would not have prescribed Taxotere for a patient like Plaintiff without first counseling the patient on the risks involved and allowing the patient to make an informed decision once adequately warned of the risks.

36. Admitted only insofar as this represents Dr. Herrington's recommendation and thought process without knowing of a risk of permanent hair loss associated with Taxotere. However, Dr. Herrington testified that she would respect her patient's ultimate decision whether to take a chemotherapy agent. *Id.* at 53:18 – 21, 54:18 – 55:10. Plaintiff also intends to submit objective evidence that a reasonable physician would not have

prescribed Taxotere for a patient like Plaintiff without first counseling the patient on the risks involved and allowing the patient to make an informed decision once adequately warned of the risks.

37. Denied.  Dr. Herrington may have recommended one of these regimens based on what was known to her at the time, but she does not ultimately "select" or prescribe a regiment without first considering her patient's input.  Dr. Herrington testified that she would respect her patient's ultimate decision whether to take a chemotherapy agent.  *Id.* at 53:18 – 21, 54:18 – 55:10.  Plaintiff also intends to submit objective evidence that a reasonable physician would not have prescribed Taxotere for a patient like Plaintiff without first counseling the patient on the risks involved and allowing the patient to make an informed decision once adequately warned of the risks.

38. Denied.  Dr. Herrington may have recommended one of these regimens based on what was known to her at the time, but she does not ultimately "select" or prescribe a regiment without first considering her patient's input.  Dr. Herrington testified that she would respect her patient's ultimate decision whether to take a chemotherapy agent.  *Id.* at 53:18 – 21, 54:18 – 55:10.  Plaintiff also intends to submit objective evidence that a reasonable physician would not have prescribed Taxotere for a patient like Plaintiff without first counseling the patient on the risks involved and allowing the patient to make an informed decision once adequately warned of the risks.

39. Admitted only insofar as this represents Dr. Herrington's recommendation and thought process without knowing of a risk of permanent hair loss associated with Taxotere.  However, Dr. Herrington testified that she would respect her patient's ultimate decision whether to take a chemotherapy agent.  *Id.* at 53:18 – 21, 54:18 – 55:10.  Plaintiff also

intends to submit objective evidence that a reasonable physician would not have prescribed Taxotere for a patient like Plaintiff without first counseling the patient on the risks involved and allowing the patient to make an informed decision once adequately warned of the risks.

40. Denied. Dr. Herrington was unaware of the risk of permanent hair loss associated with Taxotere in 2014, and, had Sanofi warned her of this risk, she would have taken a different course of action – shared this risk with her patient, Ms. Smith. *Id.* at 54:15 – 17. Dr. Herrington also testified that she would respect her patient's ultimate decision whether to take a chemotherapy agent. *Id*. at 53:18 – 21, 54:18 – 55:10. Plaintiff also intends to submit objective evidence that a reasonable physician would not have prescribed Taxotere for a patient like Plaintiff without first counseling the patient on the risks involved and allowing the patient to make an informed decision once adequately warned of the risks.

41. Denied. Dr. Herrington was unaware of the risk of permanent hair loss associated with Taxotere in 2014, and, had Sanofi warned her of this risk, she would have taken a different course of action – shared this risk with her patient, Ms. Smith. *Id.* at 54:15 – 17. Dr. Herrington also testified that she would respect her patient's ultimate decision whether to take a chemotherapy agent. *Id*. at 53:18 – 21, 54:18 – 55:10. Plaintiff also intends to submit objective evidence that a reasonable physician would not have prescribed Taxotere for a patient like Plaintiff without first counseling the patient on the risks involved and allowing the patient to make an informed decision once adequately warned of the risks.

42. Admitted. However, Dr. Herrington now counsels her patients on the risk of permanent hair loss associated with Taxotere. *Id.* at 36:24 – 37:4, 59:6 – 8, 79:3 – 80:7.

Plaintiff Cindy Smith also hereby submits her Statement of Disputed Material Facts in support of her Opposition to Sanofi's Motion for Summary Judgment pursuant to Local Rule 56.2 and states:

1. Dr. Herrington warns her patients of common and permanent side effects associated with chemotherapy drugs. Ex. A, Herrington Dep. at 41:7 – 12, 47:1 – 11, 52:5 – 8.

2. When appropriate, Dr. Herrington counsels her patients on risks specific to individual chemotherapy drugs like Taxotere. *Id.* at 69:3 – 12.

3. Dr. Herrington has since learned about cases of permanent hair loss associated with Taxotere through television commercials on Taxotere lawsuits (*id.* at 37:5 – 13, 50:1 – 3, 58:9 – 20), and she now counsels her breast cancer patients about the possibility of permanent hair loss associated with Taxotere. *Id.* at 36:24 – 37:4, 59:6 – 8, 79:3 – 80:7.

4. If Dr. Herrington had known about a risk of permanent hair loss associated with the use of Taxotere, she would have advised Ms. Smith about that risk. *Id.* at 54:15 – 17.

5. Dr. Herrington appreciates that her patients make the ultimate decision on whether to take a recommended chemotherapy drug. *Id.* at 53:18 – 21, 54:18 – 55:10.

6. Dr. Herrington would have referred Ms. Smith to another oncologist had she elected not to take Taxotere due to the risk of permanent hair loss. *Id.* at 101:18 – 25.

7. If Plaintiff Ms. Smith had been informed of the risk of permanent hair loss, she would have chosen another chemotherapy regimen. Ex. B, Smith Dep. at 16:1 – 5, 24:18 – 21, 276:19 – 25, 228:17 – 20.

8. Ms. Smith believes "[t]here's got to be other --- other ways to treat cancer besides this

drug that causes so much hair loss and changes your whole life." *Id.* at 228:17 – 20.

9. Ms. Smith was an active participant in her treatment. *Id.* at 19:15 – 18, 103:5 – 22.

10. Ms. Smith would not accept any and all risks to ensure that her cancer would not return. *Id.* at 116:19 – 24.

11. When Ms. Smith sought treatment in 2014, she had options other than Taxotere. There were numerous chemotherapy regimens appropriate for her type of breast cancer; in fact, several did not include Adriamycin or Taxotere. Sanofi's Ex. G, NCCN Clinical Practice Guidelines in Oncology, 2014.

12. A reasonable physician also would not have prescribed Taxotere for a patient like Plaintiff without first counseling the patient on the risks involved and allowing the patient to make an informed decision once adequately warned of the risks. *See, e.g.,* Ex. C, Expert Report of Dr. Bosserman submitted for Trial 1, 11/9/2018 at p. 11.

13. A reasonable physician would have considered and prescribed an alternative if the patient elected to avoid a particular risk. *Id.* at p. 20.

Dated: March 8, 2021                                                            Respectfully submitted,

                                                                                                     /s/ Nathan Buttars
                                                                                                    Nathan Buttars, UTB # 13659
                                                                                                    T. Aaron Stringer, UTB # 12681
                                                                                                    LOWE LAW GROUP
                                                                                                    6028 S. Ridgeline Dr., #200
                                                                                                    Ogden, UT 84405
                                                                                                    T: 801-917-8500
                                                                                                    F: 801-917-8484
                                                                                                    nate@lowelawgroup.com
                                                                                                    aaron@lowelawgroup.com

/s/ Christopher L. Coffin                                      /s/ Karen B. Menzies
Christopher L. Coffin (#27902)                        Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.       GIBBS LAW GROUP LLP
1100 Poydras Street, Suite 2225                     6701 Center Drive West, Suite 1400

| | |
|---|---|
| New Orleans, Louisiana 70163<br>Phone: (504) 355-0086<br>Fax: (504) 355-0089<br>ccoffin@pbclawfirm.com | Los Angeles, California 90045<br>Telephone: 510-350-9700<br>Facsimile: 510-350-9701<br>kbm@classlawgroup.com |
| *Plaintiffs' Co-Lead Counsel* | *Plaintiffs' Co-Lead Counsel* |
| /s/M. Palmer Lambert<br>M. Palmer Lambert (#33228)<br>GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC<br>2800 Energy Centre, 1100 Poydras Street<br>New Orleans, LA 70163-2800<br>Phone: 504-522-2304<br>Fax: 504-528-9973<br>plambert@gainsben.com | /s/Dawn M. Barrios<br>Dawn M. Barrios (#2821)<br>BARRIOS, KINGSDORF & CASTEIX, LLP<br>701 Poydras Street, Suite 3650<br>New Orleans, LA 70139<br>Phone: 504-524-3300<br>Fax: 504-524-3313<br>barrios@bkc-law.com |
| *Plaintiffs' Co-Liaison Counsel* | *Plaintiffs' Co-Liaison Counsel* |

**PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Anne Andrews<br>Andrews Thornton Higgins Razmara, LLP<br>2 Corporate Park, Suite 110<br>Irvine, CA 92606<br>Phone: (800) 664-1734<br>aa@andrewsthornton.com | Abby E. McClellan<br>Stueve Siegel Hanson LLP<br>460 Nichols Road, Suite 200<br>Kansas City, MO 64112<br>Phone: (816) 714-7100<br>Fax: (816) 714-7101<br>mcclellan@stuevesiegel.com |
| J. Kyle Bachus<br>Bachus & Schanker, LLC<br>101 W Colfax Ave, Suite 650<br>Denver, CO 80202<br>Phone: (303) 222-2222<br>Fax: (303) 893-9900<br>kyle.bachus@coloradolaw.net | Karen Barth Menzies<br>Gibbs Law Group LLP<br>6701 Center Drive West, Suite 1400<br>Los Angeles, CA 90045 Phone: 510-350-9700<br>Fax: 510-350-9701<br>kbm@classlawgroup.com |
| Lawrence J. Centola, III<br>Martzell, Bickford & Centola<br>338 Lafayette Street<br>New Orleans, LA 70130<br>Phone: (504) 581-9065<br>Fax: (504) 581-7635<br>lcentola@mbfirm.com | David F. Miceli<br>David F. Miceli, LLC<br>P.O. Box 2519<br>Carrollton, GA 30112<br>Phone: (404) 915-8886<br>dmiceli@miceli-law.com |

10

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

John Gomez
The Gomez Law Firm, PLLC
655 West Broadway, Suite 1700
San Diego, CA 92101
Phone: (619) 237.3490
Fax: 619.237.3496.
john@thegomezfirm.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, FL 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904 15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Daniel P. Markoff
Atkins & Markoff Law Firm

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Jessica Perez Reynolds
Pendley, Baudin & Coffin
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Phone: (225) 687-6396
Fax: (225) 687-6398
jperez@pbclawfirm.com

Darin L. Schanker
Bachus Schanker
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
dls@coloradolaw.net

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Zachary Wool
Barrios Kingsdorf & Casteix, LLP

9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@amalaw.com

701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
zwool@bkc-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ M. Palmer Lambert
M. PALMER LAMBERT