```
 1                      UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF LOUISIANA
 2

 3
   ****************************************************************
 4  IN RE: TAXOTERE (DOCETAXEL)            MDL NO. 16-2740
    PRODUCTS LIABILITY LITIGATION          SECTION "H" (5)
 5                                         February 17, 2021
    This document relates to:
 6  All cases
   ****************************************************************
 7

 8
                TRANSCRIPT OF VIDEO STATUS CONFERENCE
 9        HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                   UNITED STATES DISTRICT JUDGE
10

11

12  APPEARANCES:

13

14  FOR PLAINTIFFS:           Dawn M. Barrios, Esquire
                              BARRIOS, KINGSDORF & CASTEIX
15                            701 Poydras Street, Suite 3650
                              New Orleans, LA 70139
16

17
                              M. Palmer Lambert, Esquire
18                            GAINSBURGH, BENJAMIN, DAVID
                                 MEUNIER & WARSHAUER
19                            1100 Poydras Street, Suite 2800
                              New Orleans, LA 70163
20

21
                              David F. Miceli, Esquire
22                            DAVID F. MICELI, LLC
                              P.O. Box 2519
23                            Carrollton, GA  30112

24

25


                           OFFICIAL TRANSCRIPT
```

```
 1  APPEARANCES CONTINUED:

 2

 3  FOR DEFENDANTS:                Douglas J. Moore, Esquire
                                   IRWIN, FRITCHIE, URQUHART & MOORE
 4                                 400 Poydras Street, Suite 2700
                                   New Orleans, LA  70130
 5

 6
                                   John F. Olinde, Esquire
 7                                 CHAFFE MCCALL
                                   1100 Poydras Street, Suite 2300
 8                                 New Orleans, LA  70163

 9

10                                 Jon Strongman, Esquire
                                   SHOOK, HARDY & BACON
11                                 2555 Grand Boulevard
                                   Kansas City, MO 64108
12

13

14

15

16  Official Court Reporter:       Alexis A. Vice, RPR, CRR
                                   500 Poydras Street, HB-275
17                                 New Orleans, LA 70130
                                   (504) 589-7777
18                                 Alexis_Vice@laed.uscourts.gov

19

20
    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
21  PRODUCED BY COMPUTER.

22

23

24

25
```

OFFICIAL TRANSCRIPT

|   |   |
|---|---|
| 1 | **P-R-O-C-E-E-D-I-N-G-S** |
| 2 | **FEBRUARY 17, 2021** |
| 3 | **(STATUS CONFERENCE)** |
| 4 | |
| 5 | **THE COURT:** This matter is set in Taxotere, and we're |
| 6 | having a status conference. I just wanted to have our notes |
| 7 | regarding this status conference on the record. |
| 8 | Just for some context, plaintiffs had previously |
| 9 | retained Dr. David Kessler to provide regulatory opinions in |
| 10 | the trial of Elizabeth Kahn. Dr. Kessler had previously timely |
| 11 | filed his report, and a *Daubert* motion had been filed and |
| 12 | argued to this Court. Additionally, Dr. Kessler had testified |
| 13 | at the first bellwether trial with Barbara Earnest. |
| 14 | Subsequent to his report being issued, *Daubert* |
| 15 | motions filed and argued, Dr. Kessler was named by President |
| 16 | Biden to serve on a COVID vaccine commission. I don't know if |
| 17 | that's the proper name of the commission. But he's serving on |
| 18 | the COVID vaccine commission, and that necessitated his removal |
| 19 | as plaintiff's named expert. |
| 20 | Plaintiff has named two experts to substitute for |
| 21 | Dr. Kessler, Dr. Ross and Dr. Laura Plunkett. At issue today |
| 22 | is the naming of Dr. Plunkett. Dr. Plunkett has been |
| 23 | previously named by plaintiffs to serve as toxicologist, |
| 24 | pharmacologist, and risk assessment, and she was qualified in |
| 25 | those areas in the prior trial of Ms. Earnest. She has since |

1   then filed a supplemental report to which Sanofi objects.
2   Plaintiffs seek to tender Dr. Plunkett as an FDA regulatory
3   expert.
4           Is there anything regarding the background that I
5   have failed to just mention so that we would have it clear for
6   the record.  Mr. Lambert?
7           **MR. LAMBERT:** No, Your Honor.
8           **THE COURT:** Mr. Strongman, anything you'd like to add?
9           **MR. STRONGMAN:** No.
10          **MR. MICELI:** Well, Your Honor, excuse me, this is
11  David Miceli.  I do think one of the things we need to, I
12  think, clarify is that we are not offering two experts to
13  substitute for Dr. Kessler.  We have offered two experts who
14  may testify instead of Dr. Kessler at trial.  It is not our
15  intention to offer these witnesses as, quote, complementary
16  witnesses, I believe is the way Mr. Ratliff's letter described
17  them.
18          Given the craziness in which we are living right now,
19  we offered both of these experts, and we expect both to go
20  through the *Daubert* process and leave ourselves open for
21  calling one or the other for regulatory purposes during the
22  Kahn trial much like we have Dr. Miletello and Dr. Glaspy,
23  Dr. Turegano and Dr. Shapiro for experts for Sanofi.  We
24  tendered them both as experts sufficient to offer regulatory
25  opinions as they relate to the Kahn matter.

OFFICIAL TRANSCRIPT

1       **THE COURT:** Thank you.  Anything to add from
2  defendants?  And I don't know who is -- Mr. Moore?
3       **MR. MOORE:** Judge, I think we made our position --
4       **THE COURT:** Wait, wait, stop.  Try again, Doug.
5       **MR. STRONGMAN:** I can jump in, Doug.  You've got a
6  ring there.
7       I think what Doug was going to say was, I mean, we've
8  set out our position in our letter.  I think the primary point
9  being that Dr. Plunkett essentially bases her opinion, as
10 expressed in this new report, on grounds that this Court has
11 already excluded.  And so we have a situation here where
12 Dr. Plunkett is trying to do something that has already been
13 excluded and has already been looked at and is unnecessary.
14      And I would point out that I know in the 505 cases,
15 plaintiffs named both Dr. Plunkett and Dr. Ross, but
16 Dr. Plunkett disclaimed any regulatory opinions, any labeling
17 opinions in the 505 case.  So you know, they have the same
18 setup there that they do here now, and Dr. Plunkett has no need
19 to offer those opinions in the 505 case, and we don't believe
20 they're appropriate here either.  So that's the gist of it
21 along with what we said in our letter.
22      But it seems like in part this is an effort to get
23 around a lot of the *Daubert* order on Dr. Plunkett that has
24 already been issued.
25      **MR. MICELI:** May I address that point for Your Honor?

1  **THE COURT:** But I don't think she was ever offered
2  prior to this as a regulatory expert.  Am I correct?
3  **MR. STRONGMAN:** You are correct.  But when you look at
4  her new report --
5  **THE COURT:** Right.
6  **MR. STRONGMAN:** When you look at her new report, she
7  is offering opinions on regulatory and labeling issues, but
8  she's basing them on the fact that there's a substantial
9  contributing factor or that Taxotere carried an independent
10 risk or that Taxotere is more toxic than.  These are all the
11 opinions that this Court has already looked at in the *Daubert*
12 contexts and excluded.  So that's what I'm getting at.
13          So it's, yes, she's offering a regulatory opinion
14 that is different in some aspects, but the bases of them are
15 the same, substantial contributing factor, independent risk,
16 more toxic than opinions that the Court has already addressed.
17         **MR. MICELI:** Can I address that briefly, Your Honor,
18 if you don't mind?
19         **THE COURT:** Sure.
20         **MR. MICELI:** And I know Your Honor has read the
21 reports and read the submissions.  Dr. Plunkett mentions the
22 word "independent" or "independently" five times in her report,
23 not all of them saying that Taxotere is an independent cause.
24 What she addresses primarily in her report is the standard that
25 must be met for a Section 6 label change which is agreed to by

OFFICIAL TRANSCRIPT

1  Sanofi's expert Dr. Janet Arrowsmith.
2              Again, Mr. Ratliff, in his letter to the Court on
3  behalf of Sanofi, recasts the standard that must be met.  The
4  standard is whether or not there is some basis to believe that
5  there is a causal relationship between the drug and the adverse
6  reaction.  It is not one of an independent cause or an
7  independent factor in causing something.  Cause is not
8  necessary.  Actual cause is not necessary for Dr. Plunkett's
9  opinion.
10             The standard for Section 6, and I believe it was
11 agreed to even by Dr. Arrowsmith when I deposed her, is one of
12 mere suspicion of whether or not there's some reason to believe
13 that there's a relationship; and that is what Dr. Plunkett
14 addresses.  She does not attempt to offer an opinion that
15 Section 6 should have been changed in the Taxotere label
16 because Taxotere is an independent cause.  She offers the
17 opinion that Section 6 should have been changed because there
18 is some basis for belief.
19             And she goes through the evidence by looking at the
20 literature that does mention incidence rates, but it's not
21 Dr. Plunkett who is trying to establish causation by giving an
22 incidence rate that she has calculated.  She is simply
23 demonstrating the some evidence.  She relies upon Dr. Madigan's
24 meta-analysis of TAX316 and TAX301 or the GEICAM study, his
25 signal detection, all of which was never done by Sanofi.

                          OFFICIAL TRANSCRIPT

1 But I think to talk about that level at this point is
2 really to start arguing the *Daubert* motions that have yet to be
3 filed. So while Sanofi would like to argue that she is
4 attempting to re-litigate Your Honor's prior orders, that is
5 absolutely not the case. We don't intend to do that. We will
6 not ask her to do that, offer those opinions at trial. The
7 opinions that she offers are based solely upon the standard or
8 relate solely to the standard set out in the CFRs, and the
9 method for doing so is expressed in the January 24th, 2006
10 Federal Register that I know Your Honor has seen referenced in
11 her report.

12 So I really believe that what we're trying to do is
13 recast what she is actually doing, or I should say what defense
14 is trying to do is recast what Dr. Plunkett is actually doing
15 so that they can say that she is trying to get around Your
16 Honor's orders when, in fact, she is offering something very
17 new. She's never been offered as a regulatory expert, and she
18 has, we believe, the proper basis. But the proper way to
19 challenge her basis and her qualifications is through a 702
20 motion that we're ready to go forward with.

21 **MR. MOORE:** Am I still ringing?
22 **MR. STRONGMAN:** No, you're good, Doug.
23 **MR. MOORE:** All right, sorry. Your Honor, we have
24 been waiting for them to bring this issue to us because it was
25 getting litigated in other MDLs as soon as the election was

OFFICIAL TRANSCRIPT

1  over.  And when they brought it to us, we said we can certainly
2  sympathize with your situation, and we're certainly amenable
3  for you to find a pinch hitter for Dr. Kessler.  But our only
4  requirements were that the case -- that we find a simple
5  solution, that the opinions offered are consistent with this
6  Court's prior rulings, that they're consistent with the rulings
7  that Your Honor has made on the fencepost motions and on
8  preemption, and that it doesn't change the nature of the case.
9  And the easiest solution that we saw when this first happened
10 was they have another regulatory expert, another FDA person to
11 pinch hit for the FDA person that they have lost.
12          And if they wanted to have a backup expert or have
13 Dr. Plunkett opine on regulatory issues, there was a time that
14 they could have done that, that we would have time to then go
15 vet these opinions that she underlines her regulatory and
16 labeling opinions with under the schedule that was in place.
17 But now, you know, all of those things are behind us, and we
18 think it's prejudicial to us and unfair to us to make us have
19 to go litigate two sets of *Daubert* motions, have to potentially
20 have additional discovery.  It will be all double the work with
21 two people, and we really just needed to find a pinch hitter.
22          So that was our concern about it and plus what we
23 articulated what Jon already mentioned.  We thought this was
24 different than what Dr. Kessler says.  It's not a one-for-one
25 replacement, and it's going to require significantly more work

1  than if we just proceeded on Dr. Ross.
2           **MR. LAMBERT:** Your Honor, may I just briefly respond
3  to that? I think reading Dr. Plunkett's supplemental report,
4  it's clear she's not trying to change the case. Neither
5  Kessler nor -- excuse me. Neither Plunkett nor Ross have
6  passed *Daubert* at this point, and so it's reasonable for us to
7  proceed with two alternates. We believe that they are
8  absolutely qualified to give the Section 6 opinions that they
9  give. It's also clear that they're not saying anything that's
10 inconsistent with what Dr. Kessler has said.
11          And so it seems to us that we ought to go forward,
12 get the depositions done. We have proposed dates for both. We
13 can propose some additional dates for Dr. Plunkett because
14 we're kind of up on top of the ones that we originally
15 proposed. But it seems to make sense to do that and then be
16 able to go through the *Daubert* process.
17          This is the same amount of time that we had between
18 when we were working up Dr. Tosti and Dr. Thompson when this
19 case was set for trial February 1st. We had even more to do
20 at that point. We had slides going back and forth and tissues
21 and what not. We have the time to do it.
22          We also have a pending request. We don't have our
23 agenda in to Your Honor for Friday, but we have a pending
24 request from Sanofi to take another deposition of the
25 prescribing physician in Kahn after all of the specific cause

1 witnesses have been deposed, experts, and we don't know exactly
2 how the Court is going to deal with that. We're not all
3 prepared to talk about that today.
4     **THE COURT:** Good, because I'm not.
5     **MR. LAMBERT:** If the question is prejudice, I mean it
6 doesn't make sense to us that we can't get two depositions done
7 and get this Section 6 analysis evaluated by the defendants of
8 our two experts.
9     And we're not going to accumulate at trial. We're
10 not going to call both of them. We've told Your Honor that
11 last time we were together, and we confirmed that with the
12 defense. And so we think our position is reasonable. We
13 understand this is not Sanofi's fault. It wasn't our fault.
14 Sure, it would have been great if we dealt with this a month
15 ago, but we're here today.
16     **THE COURT:** Okay. One, today was not the day that I
17 was dealing with *Daubert* issues. So you know, that's briefing
18 to be done at a different time, and it's not going to be
19 through letters, a couple of page letters to my office.
20     In a perfect world, I would say one for one. I'm
21 going to allow Dr. Plunkett, the discovery process to proceed
22 with Dr. Plunkett to allow the supplemental report. You can
23 take her deposition. You can challenge her opinions through
24 the appropriate vehicle which is a *Daubert* motion, not today.
25     The question was whether or not I would even allow

her report, us to proceed through challenging her report. I'm going to allow it. I have to tell you, maybe I may regret these words at a later point simply because it seems like I'm doing *Daubert* orders and reasons in triplicate because I have the same opinions by multiple witnesses. And you know, we may need to talk about this at a later point where we don't need this many witnesses to say the same thing when I'm telling you repeatedly I'm not going to allow cumulative testimony.

On the other hand, with just COVID and the many times that we've had to move this trial and just the layers upon layers of difficulty with everything, I'm going to allow it to proceed, and we'll just discover it as I appreciate it that there were deposition dates set for the beginning of March.

I don't see a real prejudice here except in the south because now I have to deal with two -- I'm certain I'll have to deal with two *Daubert* motions, but there we go. So I'm going to allow it, and I believe that should be -- let me ask one quick question while we're on the record. Have those letters been filed in the record?

**MR. MOORE:** No, Your Honor.

**MR. LAMBERT:** They have not.

**THE COURT:** Okay, this is what I'll do, Alexis, I'm going to file those letters just under seal, and they'll deal with what we're doing in this quick motion too so that at some later point when another court is looking at it, they'll know

```
 1  what I had before me and deal with that, okay.
 2              MR. MICELI:  Thank you, Your Honor.
 3              THE COURT:  I believe that's it.  Wait, there was one
 4  more question.  Oh, agenda for the meeting on Friday, do we
 5  have that?
 6              Sam, have you received that?
 7              MR. MOORE:  We just got edits back from Dawn about an
 8  hour or so ago, and I rooted them up to the people at Shook,
 9  and Jon is vetting them with his people.  We're making some
10  edits.
11              We wanted to wait until this conference was over to
12  see if there was any carryover for the two agenda items today
13  that we needed to put on the agenda for tomorrow.  But we have
14  one, and it has the brief explanations of what the issues are.
15  We'll be sending that to you within the hour.
16              THE COURT:  Okay.  What does the call docket look
17  like?
18              MS. BARRIOS:  I can tell you that tomorrow.  My office
19  is putting it together today.  I can just shoot everybody an
20  email and tell you how many people are still on the list.
21              THE COURT:  Okay.
22                  (An off-the-record discussion was held.)
23              THE COURT:  Okay, thank you-all.  I will see you-all
24  Friday.
25              MR. LAMBERT:  Judge, was there a second issue that we
```

OFFICIAL TRANSCRIPT

1 were supposed to deal with related to the 49-state analysis
2 related to the fencepost motion, or do we want to kick that to
3 Friday?
4      **THE COURT:** I thought that we were going to discuss
5 that Friday.
6      **MR. MOORE:** Yeah, that's fine with us. We can move it
7 to Friday. I think you had indicated or Sam had indicated to
8 talk about it today, but we'll just stick it on the agenda for
9 Friday.
10      **THE COURT:** Oh, no, we can talk about it today. Let
11 me just grab my notes. I think I did tell her that, and then
12 all hell broke loose.
13      **MS. BARRIOS:** Your Honor, what the issue -- I'm sorry.
14      **THE COURT:** No, go ahead.
15      **MS. BARRIOS:** What the issue is Sanofi has sent its
16 49-state analysis in. We have not had time to do it yet. And
17 so what our ask is, is that we have 45 days to review Sanofi's
18 49 states, and that would bring us to April 2nd.
19      The cases in Louisiana, we've been working on. I
20 think we only need about 14 days. Doug and I have talked about
21 who I deal with on their side, on Sanofi's side because there's
22 just some quirks in some of the Louisiana cases. If you
23 recall, in our order, you said you were dismissing the
24 Louisiana cases that fell within your order because you looked
25 at Louisiana law; so you wanted a list of the Louisiana cases.

OFFICIAL TRANSCRIPT

1  And then you wanted a joint submission from us --
2        **THE COURT:** I did.
3        **MS. BARRIOS:** -- on the 49.  So what I'm asking is to
4  give us two weeks to put the Louisiana ones together.  My
5  paralegal told me that she was shocked that Sanofi's list and
6  our list is so close.  There are just a few outliers we need to
7  talk about.
8        And then we'd like to have 45 days to be able to
9  review what Sanofi has done and double-check it and give our
10 version of what knowledge is in the various states.
11       **THE COURT:** What I anticipated was not -- I'll be
12 honest with you -- it ultimately is a list of 49 states.  But
13 what I anticipated was -- and I'm just going to throw names
14 out, Minnesota, Wisconsin, and Florida have the same standard,
15 period.  That's kind of how I thought, but it doesn't matter.
16 The result is the same, and it requires the same analysis.
17       Did you-all discuss it before?  I'm not surprised
18 that the analysis is the same for both sides.  I mean it is
19 what it is.
20       **MR. MOORE:** Well, you had asked in an order for us to
21 submit a joint list.
22       **THE COURT:** Right.
23       **MR. MOORE:** And we put together the chart, and we
24 provided it to the plaintiffs.  The plaintiffs indicated that
25 we were not, you know, they were filing a motion for

OFFICIAL TRANSCRIPT

1 reconsideration of that ruling and didn't want to submit the
2 chart at all.
3     **THE COURT:** Right.
4     **MR. MOORE:** And so we had a telephone conference, and
5 Your Honor told us, "Go ahead and submit your chart," and we
6 did that.
7     And then in our transmittal, we had indicated,
8 "Pursuant to the meeting, here is our chart," and we had asked
9 at that time for a deadline for them to, you know, provide a
10 response, tell us which ones we missed it on. And that was
11 back in August.
12     And so now that the reconsideration motion has been
13 denied, we don't think 45 -- that's a long time to simply go
14 through this chart that they've had since August. You know,
15 that puts that submission very close to the trial that we'll be
16 having in June. We have motions in limine and everything else
17 to do then. So our hope was they could get everything in
18 within two weeks as opposed to 45 days. We just thought that
19 was too long.
20     **THE COURT:** Did we do this just kind of in flight? I
21 mean is it possible for you-all to work through some, and then
22 we can look at the cases pending in those states and kind of
23 get through those, and we can do those in flights; or is it
24 easier just to do it all at one time?
25     **MS. BARRIOS:** Your Honor --

OFFICIAL TRANSCRIPT

1      **THE COURT:** I'm up for any suggestion.  I have to tell
2 you, I think it's going to be better for all parties to really
3 find out what the census is, and this is necessarily a part of
4 that.
5      **MS. BARRIOS:** Yes, ma'am.
6      **THE COURT:** You know, it has nothing to do with the
7 trial set in June, but for management of the MDL, I think it's
8 going to make a big difference.  So it's critical.  And I know
9 that now we've got witnesses we have to deal with because
10 Kessler is moot, is no longer a part of this, and that's just
11 the nature of the beast.  And then there are going to be
12 motions.
13      Is it possible to get just another group of people on
14 this?  I'll be honest with you, it doesn't seem like this is
15 particularly difficult.
16      **MS. BARRIOS:** Your Honor, we have selected people in
17 the various states because they're familiar with the law.  We
18 wanted to talk to you about a due date.  I think your idea of
19 on a rolling basis would be fine.  And I'm putting Louisiana
20 aside because I'm going to deal with that.
21      **THE COURT:** Yeah, yeah.
22      **MS. BARRIOS:** But if we could get like a rolling basis
23 of ten every three weeks, that would be fine, or every
24 two weeks, that would be fine.
25      **THE COURT:** So we do ten states every two weeks?

OFFICIAL TRANSCRIPT

1                **MR. MOORE:** Wait, that would be way longer than the
2    45 days you're asking for now.
3                **THE COURT:** Nobody said she wasn't smart.
4                **MR. LAMBERT:** Why don't we just split the difference
5    at 30 days and solve the problem?  I do think we are asking
6    people who are not, you know, not in leadership to help us from
7    these states, lawyers, individual counsels from these states to
8    look at the case law and tell us if we missed something.  So I
9    don't think that 30 days is unreasonable.  It's kind of between
10   the two proposals.
11               **THE COURT:** I don't have a problem with 30 days.  This
12   is how I see it.  It's also going to require me to have another
13   show cause.  So I don't think 30 days sounds unreasonable.  On
14   the other hand, it has been sitting out there for some time.
15               **MS. BARRIOS:** Yes.  We appreciate that, Your Honor.
16   If you would like to think about the manner in which you want
17   us to give it to you, like you had said maybe these five states
18   use this standard of knowledge.
19               **THE COURT:** That's what I want to do.  Because I have
20   to believe, though I do not know, I have to believe, because
21   Sanofi was so clear in their argument, that you can apply this
22   to the entire inventory because the law is pretty much the
23   same.  I have to believe that many jurisdictions have those
24   same standards.  And so what I'd like to do is handle those,
25   for example, whose statutes or whose standards track Louisiana

1 and then take those all in one show cause.

2 And then my guess -- and I don't know. I don't know
3 that you're dealing with less than five different standards.
4 Am I off? You-all have looked at this closer than I have about
5 what, you know, the various jurisdictions, but I can't believe
6 we have that many that are so different.

7 **MR. MOORE:** Yeah, we found basically three standards
8 that were largely the same.

9 **THE COURT:** Right, that's what I would think. So I
10 think what I'd like to do is to be able to gather those in
11 tranches where we handle the jurisdictions that have this, and
12 then I'm looking at the same thing for the cases, and then we
13 can handle those at that time and then do it that way.

14 **MS. BARRIOS:** And Your Honor -- I'm sorry.

15 **THE COURT:** What I want in 30 days is a review of the
16 various standards, and then I want you to present to me,
17 "Judge, these are the five standards you're going to be looking
18 at, or you know, the three," or "This is what you're going to
19 be looking at, and we have this many cases that we think,
20 perhaps, fall in this."

21 And so then we'll have to set up some mechanism where
22 we deal with it. And I think it's going to have to be a show
23 cause sort of thing rather than briefing on all of this where
24 we can see that, perhaps, these plaintiffs, for whatever
25 reason, may fall outside. But that's how I see it.

OFFICIAL TRANSCRIPT

    **MS. BARRIOS:** Yes, ma'am, and I'll work with Doug or whoever from his side, and we'll put together something that's easy for you to be able to review and put them in the tranches.

    **THE COURT:** And then we'll just deal with them. I really think it's important that we realize at the end of the day what the final inventory is.

    **MS. BARRIOS:** Yes, ma'am, I understand that.

    **THE COURT:** And I think this is critical. Okay, anything else? See you-all Friday.

    (Whereupon this concludes the proceedings.)

### CERTIFICATE

    I, Alexis A. Vice, RPR, CRR, Official Court Reporter for the United States District Court, Eastern District of Louisiana, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.

    */s/Alexis A. Vice, RPR, CRR*
    Alexis A. Vice, RPR, CRR
    Official Court Reporter

OFFICIAL TRANSCRIPT