# EXHIBIT B

Jennifer Liakos, Esq. (SBN 207487)
JLiakos@NapoliLaw.com
NAPOLI SHKOLNIK PLLC
525 South Douglas St., Suite 260
El Segundo, CA 90245
Telephone: 310-331-8224
Facsimile: 310-736-2877
*Attorney for Plaintiffs*

CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

DEC 12 2017

Sherri R. Carter, Executive Officer/Clerk

By: Marlon Gomez, Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR LOS ANGELES COUNTY

RENISHA BROWN; LINDA D. ABRAMS;
FERIAL ALAWAR; CATHY ANDERSON;
JERRY ANDERSON; LORETTA
ANDERSON; ROSE ANDERSON; VIRGIE
ANDERSON; GLORIA ARGEL;
CAROLYN BELIN; HARRIET
BENJAMIN; SALLY M. BERNETT;
JANET ANNE BLOOM; JUDY BONB;
GENEVA BOUNDS; BEVERLY
BREAUX; LINDA BROADIE; VANETTA
BROWN; PHYLLIS E. BRUNER; DELLA
BUCKLEY; HELEN BUNCHE; FRANCIS
CARROLL; LINDA CARROLL; CLARA
CARSON; BRENDA K. CARTER; MARY
K. CARTER; PAULETTE CARTER;
JUANITA CHAMBERS; CYNTHIA
CHAPMAN; GLORIA J. CHARETTE;
MARY Y. CHARLESTON; MELODY
CLARK; MARY COLLINS; ASHLEY
CONWAY; MAXINE CRAFTON; DAWN
CREECH; CHRISTIANNA CROCKETT;
VIVIAN L. CROSBY; CAROL A.
CRUMBLIN; YOLANDA DANKINS;
SANDRA DANTZLER; MARY B
DAVENPORT; DOROTHY L. DAVIS;
JENNIFER DAVIS; LUWANDA DAVIS;
REGINA DAVIS; RUBY L. DAVIS;
CHARMAINE DIXON; DOROTHY
DIXON; AND SELINA M. DIXON,

Plaintiffs,

v.

Case No. **BC686740**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1. Negligence
2. Strict Liability – Failure to Warn
3. Intentional Misrepresentation
4. Concealment
5. Negligent Misrepresentation
6. Intentional Infliction of Emotional Distress
7. Loss of Consortium

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00043

1     SANOFI U.S. SERVICES INC., formerly
2     known as SANOFI-AVENTIS U.S. INC,
     SANOFI-AVENTIS U.S. LLC, separately
3     and doing business as WINTHROP U.S.,
4     SANDOZ, INC., McKESSON
     CORPORATION doing business as
5     McKESSON PACKAGING, HOSPIRA,
     INC., HOSPIRA WORLDWIDE, LLC f/k/a
6     HOSPIRA WORLDWIDE, INC., SANDOZ,
7     INC., and ACCORD HEALTHCARE, INC.,

8
9       Defendants.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00044

All plaintiffs who are residents of California respectfully submit the following Complaint and Jury Demand against all Defendants, including SANOFI U.S. SERVICES INC., formerly known as SANOFI-AVENTIS U.S. INC, SANOFI-AVENTIS U.S. LLC, separately and doing business as WINTHROP U.S., SANDOZ, INC., McKESSON CORPORATION doing business as McKESSON PACKAGING, HOSPIRA, INC., HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC., SANDOZ, INC., and ACCORD HEALTHCARE, INC., (herein collectively referred to as the "Defendants") , and allege the following upon personal knowledge, information, belief, and investigation of counsel.

All plaintiffs who are residents outside of California respectfully submit the following Complaint and Jury Demand against Defendants McKESSON CORPORATION doing business as McKESSON PACKAGING, only, and allege the following upon personal knowledge, information, belief, and investigation of counsel.

## NATURE OF THE CASE

1.     Plaintiffs are breast cancer survivors who were prescribed and injected with TAXOTERE® (docetaxel), a drug used in chemotherapy that is developed, manufactured, and distributed by Defendants. Although lower potency alternatives have been available for years, Defendants misleadingly promoted TAXOTERE® as having superior efficacy based on self-sponsored clinical trials, even though the FDA called these claims "unsubstantiated." In fact, TAXOTERE®'s increased potency only makes it more toxic than alternatives and causes more severe side effects, including a significantly increased risk of disfiguring *permanent* hair loss. Although temporary hair loss is a common side effect related to chemotherapy, TAXOTERE®'s risk of permanent hair loss is not. Defendants concealed this information from physicians, healthcare providers, and patients, causing Plaintiffs and tens of thousands of women to suffer permanent hair loss without any additional benefit or warning.

2.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered serious and permanent physical and emotional injuries, including permanent hair loss, and seek damages relating to Defendants' distribution, labeling, advertising, marketing, manufacturing, promotion, and sale of TAXOTERE®.

1

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00045

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to Article 6, §10 of the California Constitution and California Code of Civil Procedure § 410.10. The amount in controversy exceeds the jurisdictional limit of $25,000.

4.      This Court has personal jurisdiction over Defendants, each of which is licensed to conduct or is systematically and continuously conducting business in the State of California, including, but not limited to, the marketing, advertising, selling, and distributing of drugs, including TAXOTERE®, to the residents in this state. Defendants have sufficient minimum contacts in California and intentionally avail themselves of the markets within California through the promotion, sale, marketing, and distribution of their products, including TAXOTERE®, thus rendering the exercise of jurisdiction by this Court proper and necessary.

5.      Venue is proper in this judicial district pursuant to Code of Civil Procedure 395.5. Defendants transact business in Los Angeles County and the events complained of occurred in Los Angeles County.

## PARTIES

6.      Plaintiff RENISHA BROWN is a natural person currently residing in California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. RENISHA BROWN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

7.      Plaintiff LINDA D. ABRAMS is a natural person currently residing in Ohio, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. LINDA D. ABRAMS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

8.      Plaintiff FERIAL ALAWAR is a natural person currently residing in North Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00046

1    packaged, distributed, and sold by Defendants. FERIAL ALAWAR has suffered damages as a

2    result of Defendants' illegal and wrongful conduct alleged herein.

3        9.      Plaintiff CATHY ANDERSON is a natural person currently residing in

4    Maryland, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

5    administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

6    packaged, distributed, and sold by Defendants. CATHY ANDERSON has suffered damages as a

7    result of Defendants' illegal and wrongful conduct alleged herein.

8        10.     Plaintiff JERRY ANDERSON is a natural person currently residing in South

9    Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

10    administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

11    packaged, distributed, and sold by Defendants. JERRY ANDERSON has suffered damages as a

12    result of Defendants' illegal and wrongful conduct alleged herein.

13        11.     Plaintiff LORETTA ANDERSON is a natural person currently residing in

14    Missouri, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

15    administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

16    packaged, distributed, and sold by Defendants. LORETTA ANDERSON has suffered damages

17    as a result of Defendants' illegal and wrongful conduct alleged herein.

18        12.     Plaintiff ROSE ANDERSON is a natural person currently residing in Maryland,

19    and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

20    TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

21    distributed, and sold by Defendants. ROSE ANDERSON has suffered damages as a result of

22    Defendants' illegal and wrongful conduct alleged herein.

23        13.     Plaintiff VIRGIE ANDERSON is a natural person currently residing in Illinois,

24    and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

25    TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

26    distributed, and sold by Defendants. VIRGIE ANDERSON has suffered damages as a result of

27    Defendants' illegal and wrongful conduct alleged herein.

28

3
COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00047

14.    Plaintiff GLORIA ARGEL is a natural person currently residing in California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. GLORIA ARGEL has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

15.    Plaintiff CAROLYN BELIN is a natural person currently residing in South Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. CAROLYN BELIN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

16.    Plaintiff HARRIET BENJAMIN is a natural person currently residing in North Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. HARRIET BENJAMIN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

17.    Plaintiff SALLY M. BERNETT is a natural person currently residing in Mississippi, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. SALLY M. BERNETT has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

18.    Plaintiff JANET ANNE BLOOM is a natural person currently residing in Illinois, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. JANET ANNE BLOOM has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

19.    Plaintiff JUDY BONB is a natural person currently residing in Minnesota, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

4

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00048

1    distributed, and sold by Defendants. JUDY BONB has suffered damages as a result of
2    Defendants' illegal and wrongful conduct alleged herein.

3        20.    Plaintiff GENEVA BOUNDS is a natural person currently residing in Texas, and
4    received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
5    TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
6    distributed, and sold by Defendants. GENEVA BOUNDS has suffered damages as a result of
7    Defendants' illegal and wrongful conduct alleged herein.

8        21.    Plaintiff BEVERLY BREAUX is a natural person currently residing in Texas,
9    and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
10   TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
11   distributed, and sold by Defendants. BEVERLY BREAUX has suffered damages as a result of
12   Defendants' illegal and wrongful conduct alleged herein.

13       22.    Plaintiff LINDA BROADIE is a natural person currently residing in North
14   Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and
15   administered TAXOTERE®, which was developed, manufactured, promoted, marketed,
16   packaged, distributed, and sold by Defendants. LINDA BROADIE has suffered damages as a
17   result of Defendants' illegal and wrongful conduct alleged herein.

18       23.    Plaintiff VANETTA BROWN is a natural person currently residing in Illinois,
19   and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
20   TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
21   distributed, and sold by Defendants. VANETTA BROWN has suffered damages as a result of
22   Defendants' illegal and wrongful conduct alleged herein.

23       24.    Plaintiff PHYLLIS E. BRUNER is a natural person currently residing in
24   California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and
25   administered TAXOTERE®, which was developed, manufactured, promoted, marketed,
26   packaged, distributed, and sold by Defendants. PHYLLIS E. BRUNER has suffered damages as
27   a result of Defendants' illegal and wrongful conduct alleged herein.

28

Exhibit C
00049

1    25.    Plaintiff DELLA BUCKLEY is a natural person currently residing in

2    Mississippi, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

3    administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

4    packaged, distributed, and sold by Defendants. DELLA BUCKLEY has suffered damages as a

5    result of Defendants' illegal and wrongful conduct alleged herein.

6    26.    Plaintiff HELEN BUNCHE is a natural person currently residing in South

7    Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

8    administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

9    packaged, distributed, and sold by Defendants. HELEN BUNCHE has suffered damages as a

10   result of Defendants' illegal and wrongful conduct alleged herein.

11   27.    Plaintiff FRANCIS CARROLL is a natural person currently residing in

12   Pennsylvania, and received chemotherapy treatment with TAXOTERE®. She was prescribed

13   and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

14   packaged, distributed, and sold by Defendants. FRANCIS CARROLL has suffered damages as a

15   result of Defendants' illegal and wrongful conduct alleged herein.

16   28.    Plaintiff LINDA CARROLL is a natural person currently residing in

17   Connecticut, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

18   administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

19   packaged, distributed, and sold by Defendants. LINDA CARROLL has suffered damages as a

20   result of Defendants' illegal and wrongful conduct alleged herein.

21   29.    Plaintiff CLARA CARSON is a natural person currently residing in Florida, and

22   received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

23   TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

24   distributed, and sold by Defendants. CLARA CARSON has suffered damages as a result of

25   Defendants' illegal and wrongful conduct alleged herein.

26   30.    Plaintiff BRENDA K. CARTER is a natural person currently residing in District

27   of Columbia, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

28   administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00050

1   packaged, distributed, and sold by Defendants. BRENDA K. CARTER has suffered damages as
2   a result of Defendants' illegal and wrongful conduct alleged herein.

3       31.    Plaintiff MARY K. CARTER is a natural person currently residing in Indiana,
4   and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
5   TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
6   distributed, and sold by Defendants. MARY K. CARTER has suffered damages as a result of
7   Defendants' illegal and wrongful conduct alleged herein.

8       32.    Plaintiff PAULETTE CARTER is a natural person currently residing in
9   Pennsylvania, and received chemotherapy treatment with TAXOTERE®. She was prescribed
10   and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,
11   packaged, distributed, and sold by Defendants. PAULETTE CARTER has suffered damages as a
12   result of Defendants' illegal and wrongful conduct alleged herein.

13       33.    Plaintiff JUANITA CHAMBERS is a natural person currently residing in
14   Missouri, and received chemotherapy treatment with TAXOTERE®. She was prescribed and
15   administered TAXOTERE®, which was developed, manufactured, promoted, marketed,
16   packaged, distributed, and sold by Defendants. JUANITA CHAMBERS has suffered damages
17   as a result of Defendants' illegal and wrongful conduct alleged herein.

18       34.    Plaintiff CYNTHIA CHAPMAN is a natural person currently residing in
19   Wisconsin, and received chemotherapy treatment with TAXOTERE®. She was prescribed and
20   administered TAXOTERE®, which was developed, manufactured, promoted, marketed,
21   packaged, distributed, and sold by Defendants. CYNTHIA CHAPMAN has suffered damages as
22   a result of Defendants' illegal and wrongful conduct alleged herein.

23       35.    Plaintiff GLORIA J. CHARETTE is a natural person currently residing in North
24   Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and
25   administered TAXOTERE®, which was developed, manufactured, promoted, marketed,
26   packaged, distributed, and sold by Defendants. GLORIA J. CHARETTE has suffered damages
27   as a result of Defendants' illegal and wrongful conduct alleged herein.

28

Exhibit C
00051

36.    Plaintiff MARY Y. CHARLESTON is a natural person currently residing in Florida, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. MARY Y. CHARLESTON has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

37.    Plaintiff MELODY CLARK is a natural person currently residing in Indiana, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. MELODY CLARK has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

38.    Plaintiff MARY COLLINS is a natural person currently residing in Texas, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. MARY COLLINS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

39.    Plaintiff ASHLEY CONWAY is a natural person currently residing in Maryland, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. ASHLEY CONWAY has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

40.    Plaintiff MAXINE CRAFTON is a natural person currently residing in Maryland, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. MAXINE CRAFTON has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

41.    Plaintiff DAWN CREECH is a natural person currently residing in Nevada, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00052

1    distributed, and sold by Defendants. DAWN CREECH has suffered damages as a result of

2    Defendants' illegal and wrongful conduct alleged herein.

3        42.    Plaintiff CHRISTIANNA CROCKETT is a natural person currently residing in

4    Oklahoma, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

5    administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

6    packaged, distributed, and sold by Defendants. CHRISTIANNA CROCKETT has suffered

7    damages as a result of Defendants' illegal and wrongful conduct alleged herein.

8        43.    Plaintiff VIVIAN L. CROSBY is a natural person currently residing in Missouri,

9    and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

10   TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

11   distributed, and sold by Defendants. VIVIAN L. CROSBY has suffered damages as a result of

12   Defendants' illegal and wrongful conduct alleged herein.

13       44.    Plaintiff CAROL A. CRUMBLIN is a natural person currently residing in

14   Illinois, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

15   administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

16   packaged, distributed, and sold by Defendants. CAROL A. CRUMBLIN has suffered damages

17   as a result of Defendants' illegal and wrongful conduct alleged herein.

18       45.    Plaintiff YOLANDA DANKINS is a natural person currently residing in Texas,

19   and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

20   TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

21   distributed, and sold by Defendants. YOLANDA DANKINS has suffered damages as a result of

22   Defendants' illegal and wrongful conduct alleged herein.

23       46.    Plaintiff SANDRA DANTZLER is a natural person currently residing in

24   Arizona, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

25   administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

26   packaged, distributed, and sold by Defendants. SANDRA DANTZLER has suffered damages as

27   a result of Defendants' illegal and wrongful conduct alleged herein.

28

9

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00053

1       47.    Plaintiff MARY B DAVENPORT is a natural person currently residing in Texas,

2  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

3  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

4  distributed, and sold by Defendants. MARY B DAVENPORT has suffered damages as a result

5  of Defendants' illegal and wrongful conduct alleged herein.

6       48.    Plaintiff DOROTHY L. DAVIS is a natural person currently residing in District

7  of Columbia, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

8  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

9  packaged, distributed, and sold by Defendants. DOROTHY L. DAVIS has suffered damages as

10  a result of Defendants' illegal and wrongful conduct alleged herein.

11      49.    Plaintiff JENNIFER DAVIS is a natural person currently residing in Georgia,

12  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

13  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

14  distributed, and sold by Defendants. JENNIFER DAVIS has suffered damages as a result of

15  Defendants' illegal and wrongful conduct alleged herein.

16      50.    Plaintiff LUWANDA DAVIS is a natural person currently residing in California,

17  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

18  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

19  distributed, and sold by Defendants. LUWANDA DAVIS has suffered damages as a result of

20  Defendants' illegal and wrongful conduct alleged herein.

21      51.    Plaintiff REGINA DAVIS is a natural person currently residing in Maryland, and

22  received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

23  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

24  distributed, and sold by Defendants. REGINA DAVIS has suffered damages as a result of

25  Defendants' illegal and wrongful conduct alleged herein.

26      52.    Plaintiff RUBY L. DAVIS is a natural person currently residing in Georgia, and

27  received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

28  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

10

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00054

1    distributed, and sold by Defendants. RUBY L. DAVIS has suffered damages as a result of

2    Defendants' illegal and wrongful conduct alleged herein.

3        53.    Plaintiff CHARMAINE DIXON is a natural person currently residing in South

4    Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

5    administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

6    packaged, distributed, and sold by Defendants. CHARMAINE DIXON has suffered damages as

7    a result of Defendants' illegal and wrongful conduct alleged herein.

8        54.    Plaintiff DOROTHY DIXON is a natural person currently residing in Texas, and

9    received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

10   TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

11   distributed, and sold by Defendants. DOROTHY DIXON has suffered damages as a result of

12   Defendants' illegal and wrongful conduct alleged herein.

13       55.    Plaintiff SELINA M. DIXON is a natural person currently residing in Ohio, and

14   received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

15   TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

16   distributed, and sold by Defendants. SELINA M. DIXON has suffered damages as a result of

17   Defendants' illegal and wrongful conduct alleged herein.

18       56.    Sanofi U.S. Services Inc., f/k/a Sanofi-Aventis U.S. Inc., is incorporated under

19   the laws of the State of Delaware, with its principal place of business located at 55 Corporate

20   Dr., Bridgewater, NJ 08807.

21       57.    Sanofi U.S. Services Inc., is a wholly owned subsidiary of Sanofi-Aventis, and is

22   one of the largest pharmaceutical companies in the United States.

23       58.    SANOFI U.S. SERVICES INC., formerly known as SANOFI-AVENTIS U.S.

24   INC, and SANOFI-AVENTIS U.S. LLC, separately and doing business as WINTHROP U.S.,

25   shall be referred to herein individually by name or jointly as "Sanofi Defendants ."

26       59.    Sanofi U.S. Services Inc. develops products in therapeutic areas including

27   cardiovascular disease, central nervous systems, internal medicine, metabolic disorder,

28   oncology, ophthalmology, and thrombosis.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00055

60.     The predecessor to Sanofi U.S. Services Inc. was founded in 1950 and until 2006, was known as Sanofi-Aventis U.S. Inc.

61.     Sanofi U.S. Services Inc. develops, manufactures, markets, and distributes pharmaceutical products in the United States.

62.     Sanofi U.S. Services Inc. operates pharmaceutical research sites in Bridgewater, NJ, Malvern, PA, Cambridge MA, and Tucson, AZ.

63.     Sanofi U.S. Services Inc. has a distribution center in Forest Park, GA, a manufacturing facility in Kansas City, MO, and a packaging services facility in St. Louis, MO.

64.     Sanofi U.S. Services Inc. markets its parent's products in the U.S. through its substantial number of field sales professionals.

65.     One of Sanofi U.S. Services Inc.'s key products is the cancer treatment drug, TAXOTERE®.

66.     Sanofi-Aventis U.S. LLC is a limited liability company, formed under the laws of the State of Delaware, with its principal place of business located at 55 Corporate Dr., Bridgewater, NJ 08807.

67.     Sanofi-Aventis U.S. LLC is a healthcare company that was founded in 1999 and discovers, develops, produces, and markets therapeutic solutions focused on patients' needs in the United States.

68.     Sanofi-Aventis U.S. LLC is one of the current holders of the approved New Drug Application ("NDA") and supplemental NDAs for TAXOTERE®.

69.     Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets, sells, distributes pharmaceutical products, and does business under the name Winthrop U.S., which is a division within Sanofi-Aventis U.S. LLC.

70.     Sanofi-Aventis U.S. LLC was formed on or about June 28, 2000 under the laws of the State of Delaware.

71.     At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC engaged in transactions and conducted business within the State of Delaware and has derived substantial revenue from goods and products disseminated and used in the State of Delaware. At all times

12

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00056

1 relevant hereto, as part of its business, Sanofi-Aventis U.S. LLC was involved in researching,

2 analyzing, licensing, designing, testing, formulating, manufacturing, producing, processing,

3 assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising

4 and/or selling the prescription drug known as TAXOTERE® to the public, including the

5 Plaintiff.

6      72.    Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets,

7 sells, distributes pharmaceutical products, and does business under the name of Winthrop U.S.,

8 which is not a separately existing legal entity but rather is a business unit or division operating

9 within and part of Sanofi-Aventis U.S. LLC.

10      73.    At all times material to this lawsuit, the Sanofi Defendants were authorized to do

11 business within the State of California; did in fact transact and conduct business in the State of

12 California; derived substantial revenue from goods and products used in the State of California;

13 and supplied TAXOTERE® within the State of California.

14      74.    At all relevant times, and as more fully set forth below, the Sanofi Defendants

15 acted in conjunction with other affiliated, related, jointly owned and controlled entities or

16 subsidiaries, including each other, in the development, marketing, production, labeling,

17 promoting, packaging, advertising, and/or selling of TAXOTERE® to the general public,

18 including Plaintiffs. The Sanofi Defendants acted jointly and/or as each other's agents, within

19 the course and scope of the agency, with respect to the conduct alleged in this Complaint, such

20 that any individuality and separateness between them had ceased and these Defendants became

21 the alter-ego of one another and are jointly-liable for their misconduct and wrongful acts as

22 alleged herein.

23      75.    The Sanofi Defendants transact substantial business in California. The Sanofi

24 Defendants have sponsored or conducted clinical trials of their products in California, including

25 trials of TAXOTERE®. For example, in 2005 Aventis sponsored a clinical trial at Stanford

26 University of the efficacy of TAXOTERE® for lung cancer treatment; from 2006 to 2012 Sanofi

27 sponsored a clinical trial at Stanford on the efficacy of TAXOTERE® for breast cancer

28 treatment; from 2006 to 2012 Sanofi sponsored an interventional clinical trial at Stanford

13

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00057

1  Unoversity of TAXOTERE® in patients with breast cancer; Sanofi also sponsored a large-scale

2  epidemiological study on its drug Lantus at Kaiser Permanente in Northern and Southern

3  California, which terminated in 2012. In addition, Sanofi participates in ongoing research and

4  development collaborations with the University of California, San Francisco.

5       76.    In 2015, Sanofi's net sales exceeded €34 billion, of which pharmaceutical sales

6  represented the majority, at €29.8 billion. Although generic docetaxel is now available,

7  TAXOTERE® continues to be extremely profitable for Sanofi; in 2015 sales of TAXOTERE®

8  alone were €222 million.

9       77.    Sanofi spends large sums on California politics, mainly via four entities that share

10  the same entity identification number (1278441): Sanofi US; Sanofi US Services Inc.; Sanofi-

11  Aventis; and Sanofi-Aventis Group.

12       78.    For example, Sanofi US Services Inc., a subsidiary of Sanofi, engages in

13  lobbying elected officials in California, and has recently spent at least $1.2 million on lobbying

14  in the state.

15       79.    Sanofi US contributes to political campaigns in California. Specifically, in 2016

16  Sanofi US contributed $4.15 million to the Californians against the Misleading RX Measure, and

17  $1.5 million to No On Prop 61 Californians Against the Deceptive Rx Proposition. In 2015

18  Sanofi gave $115,000 to a campaign against Measure 15-009. Sanofi has also recently

19  contributed $7,300 total to five assembly-member candidates, and $2,500 to the California

20  Republican Party.

21       80.    Defendant McKesson Corporation is a Delaware corporation with its principal

22  place of business at One Post Street, San Francisco, California 94104.

23       81.    Upon investigation and belief, Plaintiffs are informed and believe that McKesson

24  was involved in the manufacture, distribution, marketing sale, labeling and design of

25  TAXOTERE® as detailed below. Specifically, McKesson is the 16th largest industrial

26  corporation in America, with over $800 billion in revenue every year. McKesson is the sole

27  supplier of numerous pharmaceuticals to both the largest pharmacies and drug suppliers in the

28

14

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00058

1  nation including pharmacies such as Wal-Mart, Safeway, Valu-Rite, and the smallest

2  independent and community pharmacies.

3      82.    McKesson Corporation is a distributor of pharmaceutical and health care products

4  that provides health information technology, medical supplies and care management tools. Upon

5  information and belief, McKesson Corporation manufactured and supplied TAXOTERE®,

6  among other products to both hospitals and pharmacies.

7      83.    Upon investigation and belief, McKesson does business throughout the United

8  States and in the State of California, and regularly and continuously did business within this

9  judicial district including manufacturing, marketing, advertising, warning and precautions

10  attendant to its use, selling, and distributing of TAXOTERE®. For example, McKesson

11  Specialty Health, a division of McKesson, lists TAXOTERE® in its catalog of available

12  products.

13      84.    Upon investigation and belief, McKesson manufactured marketed, sold and

14  distributed TAXOTERE® administered to Plaintiffs.

15      85.    Upon information and belief, McKesson was the actor engaged in the acts herein

16  alleged, acting through its agents and employees, at all times, the actions and omissions asserted

17  in this pleading were committed by agents or employees acting within the purpose and scope of

18  said agency and employment.

19      86.    At all relevant times, McKesson owns US Oncology, which supported a

20  significant amount of TAXOTERE® research and promotion.

21      87.    Defendant Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., is

22  incorporated under the laws of the State of Delaware, with its principal place of business located

23  at 275 N. Field Drive, Lake Forest, Illinois 60045.

24      88.    Defendant Sandoz, Inc. ("Sandoz") is incorporated under the laws of the State of

25  Colorado, with its principal place of business located at 100 College Road West, Princeton, New

26  Jersey 08540.

27

28

15

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00059

1       89.    Defendant Accord Healthcare, Inc. ("Accord") is a corporation formed under the

2  laws of the State of North Carolina with its principal place of business located at 1009 Slater

3  Road, Suite 210B, Durham, North Carolina 27703.

4       90.    Plaintiffs are presently without knowledge of the true names and capacities of the

5  defendants sued herein as Does 1 through 30, and therefore sue these Defendants by such

6  fictitious names. Plaintiffs will amend this complaint if necessary to allege their true names and

7  capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of

8  the fictitiously named Defendants is a related entity, joint venture, subsidiary, parent, co-

9  conspirator, agent, employee or affiliate of one or more of the named Defendants, and is

10  responsible for the unlawful conduct herein alleged, and that said Defendants proximately

11  caused the harm alleged herein.

12       91.    At all times relevant hereto, Defendants worked in conjunction with each other

13  and they were affiliated, related, jointly owned, and/or controlled entities or subsidiaries during

14  the researching, analyzing, licensing, designing, testing, formulating, manufacturing, producing,

15  processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging,

16  advertising and/or selling the prescription drug known as TAXOTERE®.

17       92.    At all times alleged herein, Defendants include and included any and all parents,

18  subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of

19  any kind, their predecessors, successors and assigns and their officers, directors, employees,

20  agents, representatives and any and all other persons acting on their behalf.

21       93.    At all times herein mentioned, each of the Defendants was the agent, servant,

22  partner, predecessors in interest, and joint venture of each of the remaining Defendants herein

23  and was at all times operating and acting with the purpose and scope of said agency, service,

24  employment, partnership, and joint venture.

25       94.    At all times relevant, Defendants were engaged in the business of developing,

26  designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into

27  interstate commerce throughout the United States, which necessarily includes California, either

28

Exhibit C
00060

directly or indirectly through third parties, subsidiaries or related entities, the drug TAXOTERE®.

**DEFENDANT'S INVOLVEMENT IN THE DEVELOPMENT, PATENTING, TESTING, MARKETING, AND SALE OF TAXOTERE®**

95.     TAXOTERE® is a drug used in the treatment of various forms of cancer, including but not limited to breast cancer. TAXOTERE® is a part of a family of drugs commonly referred to as taxanes.

96.     Taxanes are diterpenes produced by the plants of the genus Taxus (yews) featuring a taxadiene core. Taxanes are widely used as chemotherapy agents. Taxane agents include TAXOL® and TAXOTERE®. Taxane agents also exist as cabazitaxel and in generic forms as well.

97.     TAXOL®, which was developed, manufactured, and distributed by Bristol-Myers Squibb and is the main competitor drug to TAXOTERE®, was first approved by the U.S. Food and Drug Administration (FDA) in December 1992.

98.     The drug and chemical compound that would become known as TAXOTERE® was invented and developed by Michel Colin, Daniel Guenard, Francoise Gueritte–Voegelein, and Pierre Potier of Rhone-Poulence Santé. TAXOTERE® was conceived as an increased potency taxane.

99.     The initial patent disclosing the formulation and computation of TAXOTERE® was issued to Rhone-Poulence Santé and subsequently assigned to Aventis Pharma S.A in March 1989. ·

100.    In 1989, Sanofi issued the prior art publication F. Lavelle, *Experimental Properties of RP 56976*, a TAXOL® derivative. RP 56976 was the number that Rhone-Polunec assigned to docetaxel.

101.    Sanofi began enrolling patients in Phase I clinical testing trials on June 21, 1990. The study reporting on these trials was called the "TAX 001" study, which continued until May 13, 1992. The results from the TAX 001 study were reported on May 24, 1994. Accordingly, Sanofi was not only involved in the patenting and assignment of the compound TAXOTERE®,

17

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00061

1   but Sanofi was also directly involved in the clinical trials and testing of the compound

2   TAXOTERE®. Accordingly, Sanofi-Aventis U.S. LLC's decisions to withhold information and

3   data from those tests from physicians, healthcare providers, patients, and Plaintiffs in the United

4   States.

5        102.    Rhône-Poulenc Rorer S.A. initially sought FDA approval for TAXOTERE® in

6   December 1994. The FDA's Oncologic Drugs Advisory Committee panel unanimously

7   recommended the rejection of Rhône-Poulenc Rorer S.A.'s request for the approval of

8   TAXOTERE®, because TAXOTERE® was more toxic than its competing drug TAXOL®,

9   which had already received FDA approval, and because more studies of TAXOTERE®'s side

10  effects were needed.

11       103.    TAXOTERE® was ultimately approved by the FDA on May 14, 1996.

12  According to its product labeling, TAXOTERE® was "indicated for the treatment of patients

13  with locally advanced or metastatic breast cancer after failure of prior chemotherapy."

14       104.    After the initial FDA approval, Sanofi sought and was granted FDA approval for

15  additional indications for TAXOTERE®. Based on self-sponsored clinical trials, Sanofi claimed

16  superiority over other chemotherapy products approved to treat breast cancer. These marketing

17  claims included claims of superior efficacy over the lower potency taxane product TAXOL®,

18  which was the primary competitor product to TAXOTERE®.

19       105.    Defendant McKesson Corporation distributed, packaged, labeled, and promoted

20  TAXOTERE® in California and around the country throughout this period. U.S. Oncology, a

21  specialty drug distributor now owned by McKesson, supported research and the subsequent

22  promotion of TAXOTERE® at conferences including the annual meetings for the American

23  Society of Clinical Oncology. McKesson continued this activity after it acquired U.S. Oncology

24  in 2010.

25       106.    Contrary to Defendants' claims of superior efficacy, post market surveillance has

26  shown that the more potent TAXOTERE® does not in fact offer increased efficacy or benefits

27  over other taxanes, and in fact is more toxic. Defendants concealed and failed to warn about the

28  existence of studies from the FDA, physicians, and patients that refuted Defendants' claims.

18

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00062

107.    A study of available clinical studies concerning the relative efficacy of taxanes in the treatment of breast cancer, published in the August 2007 journal *Cancer Treatment Review*, concluded that no significant differences were found in the efficacy and outcomes obtained with TAXOTERE® or TAXOL®.

108.    A study published in 2008 in the New England Journal of Medicine, titled *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, concluded that TAXOL® was more effective than TAXOTERE® for patients undergoing standard adjuvant chemotherapy with doxorubicin and cyclophosphamide.

109.    Despite the publication of these studies, Defendants continued to make false and misleading statements promoting the "superior efficacy" of TAXOTERE® over the competing product TAXOL®. In June 2008, Sanofi-Aventis utilized marketing and promotional materials for TAXOTERE® at the annual meeting for the American Society of Clinical Oncology, comparing the efficacy of TAXOTERE® versus TAXOL®. Specifically, Sanofi-Aventis utilized a "reprint carrier," citing a clinical study published in the August 2005 edition of the Journal of Clinical Oncology ("JCO study") and performed by researchers affiliated with Sanofi and US Oncology. The study concluded that "TAXOTERE® demonstrated superior efficacy compared with TAXOL®, providing significant clinical benefit in terms of survival and time to disease progression, with a numerically higher response rate and manageable toxicities."

110.    Defendants' statements in the "reprint carrier" marketing the conclusions of the 2005 JCO study were false and/or misleading in light of the 2007 and 2008 studies finding that TAXOTERE® was not more effective than TAXOL® in the treatment of breast cancer.

111.    As a result of these false and misleading statements, in 2009, the FDA issued a warning letter to Sanofi-Aventis (the same company as Defendant Sanofi S.A. before Sanofi-Aventis changed its name in 2011) citing these unsubstantiated claims of superiority over TAXOL® stating:

> The Division of Drug Marketing, Advertising, and Communications (DDMAC) of the U.S. Food and Drug Administration (FDA) has reviewed a professional reprint carrier [US.DOC.07.04.078] for TAXOTERE® (docetaxel) Injection Concentrate, Intravenous Infusion (TAXOTERE® ) submitted under cover of

19

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00063

Form FDA 2253 by sanofi-aventis (SA) and obtained at the American Society of Clinical Oncology annual meeting in June 2008. The reprint carrier includes a reprint[1] from the Journal of Clinical Oncology, which describes the TAX 311 study. This reprint carrier is false or misleading because it presents unsubstantiated superiority claims and overstates the efficacy of TAXOTERE® . Therefore, this material misbrands the drug in violation of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. 352(a) and 321(n). *Cf.* 21 CFR 202.1(e)(6)(i), (ii) & (e)(7)(ii).[2]

112.     A qui tam lawsuit was also filed against Sanofi-Aventis and its affiliates in the United States District Court for the Eastern District of Pennsylvania by a former employee accusing Sanofi-Aventis and its affiliates of engaging in a fraudulent marketing scheme, paying kickbacks, and providing other unlawful incentives to entice physicians to use TAXOTERE®. *See U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, Civil Action No. 02-2964 (E.D. Pa. 2015).

113.     Beginning in 1996, Sanofi-Aventis U.S. LLC and its predecessors and affiliates planned, directed, and engaged in a marketing scheme that promoted TAXOTERE® for off-label uses not approved by the FDA. The scheme took two forms: first, Defendants trained and directed their employees to misrepresent the safety and effectiveness of the off-label use of TAXOTERE® to expand the market for TAXOTERE® in unapproved settings; and second, Defendants paid healthcare providers illegal kickbacks in the form of sham grants, speaking fees, travel, entertainment, sports and concert tickets, preceptorship fees, and free reimbursement assistance to incentivize healthcare providers to prescribe TAXOTERE® for off-label uses. As a direct result of Defendants' fraudulent marketing scheme, Defendants dramatically increased revenue on sales of TAXOTERE® from $424 million in 2000 to $1.4 billion in 2004. *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 508 (E.D. Pa. 2015).

114.     As a direct result of their wrongful conduct and illegal kickback schemes, Defendants directly caused thousands of individuals to be exposed to TAXOTERE®'s increased toxicity as compared to other available less toxic products such as TAXOL®.

---

[1]     Jones SE, Erban J, Overmoyer B, et al. Randomized phase III study of docetaxel compared with paclitaxel in metastatic breast cancer. *J Clin Oncol.* 2005;23(24):5542-51.
[2]     Correspondence signed by Keith Olin, Pharm.D., Regulatory Review Officer in the FDA's Division of Drug Marketing, Advertising and Communications to MaryRose Salvacion, Director of US Regulatory Affairs Marketed Products at Sanofi-Aventis.

20

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00064

115.     As a direct result of their aforementioned conduct, Defendants caused thousands of individuals to be exposed to increased frequency and more severe side effects, including but not limited to disfiguring permanent alopecia (hair loss).

### DEFENDANTS' COVER UP IN THE UNITED STATES REGARDING THE CAUSAL RELATIONSHIP BETWEEN TAXOTERE® AND PERMANENT DISFIGURING HAIR LOSS

116.     Although temporary alopecia, or hair loss, is a common side effect related to chemotherapy drugs, permanent alopecia is not. Defendants, through their publications and marketing materials, misled Plaintiffs, the public, and the medical community to believe that, as with other chemotherapy drugs that cause alopecia, patients' hair would grow back.

117.     Defendants knew or should have known that the rate of permanent alopecia related to TAXOTERE® was far greater than with other products available to treat the same condition as Defendants' product.

118.     Permanent baldness (permanent alopecia) is a disfiguring condition, especially for women. Women who experienced disfiguring permanent alopecia as a result of the use of TAXOTERE® suffer great mental anguish as well as economic damages, including but not limited to loss of work or inability to work due to significant psychological damage.

119.     Although women might accept the possibility of permanent baldness as a result of the use of TAXOTERE® if no other product were available to treat their cancer, this was not the case. Before Defendants' wrongful conduct resulted in tens of thousands of women being exposed to the adverse side effects of TAXOTERE®, there were already similar products on the market that were at least as effective as TAXOTERE® and did not subject female users to the same risk of disfiguring permanent alopecia as does TAXOTERE®.

120.     Beginning in the late 1990s, Sanofi S.A. and Aventis Pharma S.A. sponsored and/or were aware of a study titled the GEICAM 9805 study. In 2005, Sanofi S.A. and Aventis Pharma S.A. knew that the GEICAM 9805 study demonstrated that 9.2% of patients who took TAXOTERE® had persistent alopecia, or hair loss, for up to 10 years and 5 months, and in some cases, longer, after taking TAXOTERE®. Sanofi S.A. and Aventis Pharma S.A. knowingly,

21

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00065

1     intentionally, and wrongfully withheld these results contained in the GEICAM 9805 study from

2     physicians, healthcare providers, patients, and Plaintiffs in the United States.

3        121.    In 2006, Defendants knew or should have known that a Denver-based oncologist

4     in the United States had observed that an increased percentage (6.3%) of his patients who had

5     taken TAXOTERE® suffered from permanent disfiguring hair loss for years after the patients

6     had stopped taking TAXOTERE®.

7        122.    Despite Defendants' knowledge of the relevant findings from the GEICAM 9805

8     study, as well as reports from patients who had taken TAXOTERE® and suffered from

9     permanent disfiguring hair loss, Defendants failed to provide accurate information and proper

10    warnings to physicians, healthcare providers, and patients in the United States, including

11    Plaintiffs, that patients who take TAXOTERE® are at a significantly increased risk of suffering

12    from permanent disfiguring hair loss.

13        123.    Defendants chose to withhold this information in the United States despite

14    advising physicians, patients, and regulatory agencies in other countries, including the European

15    Union and Canada, that TAXOTERE® causes an increased risk of permanent disfiguring hair

16    loss. Defendants instead continued to warn or advise physicians, healthcare providers, patients,

17    and Plaintiffs in the United States only with the generic, vague, and insufficient warning that

18    "hair generally grows back" after taking TAXOTERE®.

19        124.    Users of TAXOTERE® were not presented with the opportunity to make an

20    informed choice as to whether the benefits of TAXOTERE® were worth its associated risks.

21    Defendants engaged in a pattern of deception by overstating the benefits of TAXOTERE® as

22    compared to other alternatives while simultaneously failing to warn of the risk of disfiguring

23    permanent alopecia.

24        125.    In other countries, Defendants published information to individual patients and

25    regulatory agencies about TAXOTERE® and the risk of permanent alopecia. But until

26    December 2015, the words permanent alopecia or permanent hair loss did not appear in any

27    information published by Defendants in the United States.

28

22
COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00066

1       126.   In December 2015, the FDA changed the safety labeling for TAXOTERE®

2   (docetaxel), to add a sentence: "Cases of permanent alopecia have been reported." This sentence

3   appears on page 33 of the label, in the Full Prescribing Information. On the first page, which is

4   the Highlights of Prescribing Information, only "alopecia" is listed as an adverse reaction;

5   "permanent alopecia" is not.

6       127.   As a direct result of Defendants' wrongful and deceptive acts, tens of thousands

7   of women were exposed to the risk of disfiguring permanent alopecia without any warning and

8   without any additional benefit.

9       128.   As a direct result of Defendants' failure to warn patients of the risk of disfiguring

10   permanent alopecia in the United States, thousands of women, including Plaintiffs, as well as

11   their health care providers, were deprived of the opportunity to make an informed decision as to

12   whether the benefits of using TAXOTERE® over other comparable products was justified.

13       129.   Defendants preyed on one of the most vulnerable groups of individuals at the

14   most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at

15   the expense of unwary cancer victims simply hoping to survive their condition and return to a

16   normal life.

17       130.   Plaintiffs, as well as numerous other women, were the innocent victims of

18   Defendants' greed, recklessness, and willful and wanton conduct.

19
20   **PLAINTIFFS' DIAGNOSIS, TREATMENT, AND
RESULTING DISFIGURING PERMANENT ALOPECIA**

21       131.   Plaintiff RENISHA BROWN was diagnosed with breast cancer. Following her

22   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff RENISHA

23   BROWN nor her treating healthcare providers were aware of or informed by Defendants that

24   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

25   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

26   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

27   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

28   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

23

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00067

1 including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file
2 suit against Defendants was tolled by such delayed discover.

3     132.   Plaintiff RENISHA BROWN underwent her chemotherapy treatment. On
4 information and belief, McKesson Corporation distributed the TAXOTERE® that RENISHA
5 BROWN received.

6     133.   Plaintiff LINDA D. ABRAMS was diagnosed with breast cancer. Following her
7 diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff LINDA D.
8 ABRAMS nor her treating healthcare providers were aware of or informed by Defendants that
9 disfiguring permanent alopecia can occur following treatment with TAXOTERE®.
10 Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the
11 completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result
12 of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged
13 herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,
14 including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file
15 suit against Defendants was tolled by such delayed discover.

16     134.   Plaintiff LINDA D. ABRAMS underwent her chemotherapy treatment. On
17 information and belief, McKesson Corporation distributed the TAXOTERE® that LINDA D.
18 ABRAMS received.

19     135.   Plaintiff FERIAL ALAWAR was diagnosed with breast cancer. Following her
20 diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff FERIAL
21 ALAWAR nor her treating healthcare providers were aware of or informed by Defendants that
22 disfiguring permanent alopecia can occur following treatment with TAXOTERE®.
23 Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the
24 completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result
25 of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged
26 herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,
27 including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file
28 suit against Defendants was tolled by such delayed discover.

24

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00068

136.    Plaintiff FERIAL ALAWAR underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that FERIAL ALAWAR received.

137.    Plaintiff CATHY ANDERSON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CATHY ANDERSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

138.    Plaintiff CATHY ANDERSON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that CATHY ANDERSON received.

139.    Plaintiff JERRY ANDERSON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff JERRY ANDERSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00069

140.     Plaintiff JERRY ANDERSON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that JERRY ANDERSON received.

141.     Plaintiff LORETTA ANDERSON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff LORETTA ANDERSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

142.     Plaintiff LORETTA ANDERSON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that LORETTA ANDERSON received.

143.     Plaintiff ROSE ANDERSON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ROSE ANDERSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00070

144.    Plaintiff ROSE ANDERSON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that ROSE ANDERSON received.

145.    Plaintiff VIRGIE ANDERSON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff VIRGIE ANDERSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

146.    Plaintiff VIRGIE ANDERSON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that VIRGIE ANDERSON received.

147.    Plaintiff GLORIA ARGEL was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff GLORIA ARGEL nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00071

1    148.    Plaintiff GLORIA ARGEL underwent her chemotherapy treatment. On

2  information and belief, McKesson Corporation distributed the TAXOTERE® that GLORIA

3  ARGEL received.

4    149.    Plaintiff CAROLYN BELIN was diagnosed with breast cancer. Following her

5  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CAROLYN

6  BELIN nor her treating healthcare providers were aware of or informed by Defendants that

7  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

8  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

9  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

10  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

11  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

12  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

13  suit against Defendants was tolled by such delayed discover.

14    150.    Plaintiff CAROLYN BELIN underwent her chemotherapy treatment. On

15  information and belief, McKesson Corporation distributed the TAXOTERE® that CAROLYN

16  BELIN received.

17    151.    Plaintiff HARRIET BENJAMIN was diagnosed with breast cancer. Following

18  her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff HARRIET

19  BENJAMIN nor her treating healthcare providers were aware of or informed by Defendants that

20  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

21  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

22  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

23  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

24  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

25  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

26  suit against Defendants was tolled by such delayed discover.

27

28

28
COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00072

1      152.    Plaintiff HARRIET BENJAMIN underwent her chemotherapy treatment. On

2  information and belief, McKesson Corporation distributed the TAXOTERE® that HARRIET

3  BENJAMIN received.

4      153.    Plaintiff SALLY M. BERNETT was diagnosed with breast cancer. Following her

5  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SALLY M.

6  BERNETT nor her treating healthcare providers were aware of or informed by Defendants that

7  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

8  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

9  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

10  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

11  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

12  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

13  suit against Defendants was tolled by such delayed discover.

14      154.    Plaintiff SALLY M. BERNETT underwent her chemotherapy treatment. On

15  information and belief, McKesson Corporation distributed the TAXOTERE® that SALLY M.

16  BERNETT received.

17      155.    Plaintiff JANET ANNE BLOOM was diagnosed with breast cancer. Following

18  her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff JANET

19  ANNE BLOOM nor her treating healthcare providers were aware of or informed by Defendants

20  that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

21  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

22  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

23  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

24  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

25  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

26  suit against Defendants was tolled by such delayed discover.

Exhibit C
00073

1    156.   Plaintiff JANET ANNE BLOOM underwent her chemotherapy treatment. On

2  information and belief, McKesson Corporation distributed the TAXOTERE® that JANET

3  ANNE BLOOM received.

4    157.   Plaintiff JUDY BONB was diagnosed with breast cancer. Following her

5  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff JUDY BONB

6  nor her treating healthcare providers were aware of or informed by Defendants that disfiguring

7  permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff

8  underwent chemotherapy that included TAXOTERE®. Following the completion of

9  chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving

10  chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein,

11  Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including,

12  but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against

13  Defendants was tolled by such delayed discover.

14    158.   Plaintiff JUDY BONB underwent her chemotherapy treatment. On information

15  and belief, McKesson Corporation distributed the TAXOTERE® that JUDY BONB received.

16    159.   Plaintiff GENEVA BOUNDS was diagnosed with breast cancer. Following her

17  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff GENEVA

18  BOUNDS nor her treating healthcare providers were aware of or informed by Defendants that

19  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

20  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

21  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

22  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

23  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

24  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

25  suit against Defendants was tolled by such delayed discover.

26    160.   Plaintiff GENEVA BOUNDS underwent her chemotherapy treatment. On

27  information and belief, McKesson Corporation distributed the TAXOTERE® that GENEVA

28  BOUNDS received.

30

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00074

161.    Plaintiff BEVERLY BREAUX was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff BEVERLY BREAUX nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

162.    Plaintiff BEVERLY BREAUX underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that BEVERLY BREAUX received.

163.    Plaintiff LINDA BROADIE was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff LINDA BROADIE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

164.    Plaintiff LINDA BROADIE underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that LINDA BROADIE received.

165.    Plaintiff VANETTA BROWN was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff VANETTA

31

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00075

1    BROWN nor her treating healthcare providers were aware of or informed by Defendants that

2    disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

3    Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

4    completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

5    of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

6    herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

7    including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

8    suit against Defendants was tolled by such delayed discover.

9        166.    Plaintiff VANETTA BROWN underwent her chemotherapy treatment. On

10    information and belief, McKesson Corporation distributed the TAXOTERE® that VANETTA

11    BROWN received.

12        167.    Plaintiff PHYLLIS E. BRUNER was diagnosed with breast cancer. Following her

13    diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff PHYLLIS E.

14    BRUNER nor her treating healthcare providers were aware of or informed by Defendants that

15    disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

16    Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

17    completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

18    of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

19    herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

20    including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

21    suit against Defendants was tolled by such delayed discover.

22        168.    Plaintiff PHYLLIS E. BRUNER underwent her chemotherapy treatment. On

23    information and belief, McKesson Corporation distributed the TAXOTERE® that PHYLLIS E.

24    BRUNER received.

25        169.    Plaintiff DELLA BUCKLEY was diagnosed with breast cancer. Following her

26    diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DELLA

27    BUCKLEY nor her treating healthcare providers were aware of or informed by Defendants that

28    disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

32

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00076

1   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

2   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

3   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

4   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

5   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

6   suit against Defendants was tolled by such delayed discover.

7       170.    Plaintiff DELLA BUCKLEY underwent her chemotherapy treatment. On

8   information and belief, McKesson Corporation distributed the TAXOTERE® that DELLA

9   BUCKLEY received.

10      171.    Plaintiff HELEN BUNCHE was diagnosed with breast cancer. Following her

11  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff HELEN

12  BUNCHE nor her treating healthcare providers were aware of or informed by Defendants that

13  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

14  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

15  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

16  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

17  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

18  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

19  suit against Defendants was tolled by such delayed discover.

20      172.    Plaintiff HELEN BUNCHE underwent her chemotherapy treatment. On

21  information and belief, McKesson Corporation distributed the TAXOTERE® that HELEN

22  BUNCHE received.

23      173.    Plaintiff FRANCIS CARROLL was diagnosed with breast cancer. Following her

24  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff FRANCIS

25  CARROLL nor her treating healthcare providers were aware of or informed by Defendants that

26  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

27  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

28  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

33

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00077

1  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

2  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

3  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

4  suit against Defendants was tolled by such delayed discover.

5      174.  Plaintiff FRANCIS CARROLL underwent her chemotherapy treatment. On

6  information and belief, McKesson Corporation distributed the TAXOTERE® that FRANCIS

7  CARROLL received.

8      175.  Plaintiff LINDA CARROLL was diagnosed with breast cancer. Following her

9  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff LINDA

10  CARROLL nor her treating healthcare providers were aware of or informed by Defendants that

11  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

12  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

13  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

14  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

15  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

16  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

17  suit against Defendants was tolled by such delayed discover.

18      176.  Plaintiff LINDA CARROLL underwent her chemotherapy treatment. On

19  information and belief, McKesson Corporation distributed the TAXOTERE® that LINDA

20  CARROLL received.

21      177.  Plaintiff CLARA CARSON was diagnosed with breast cancer. Following her

22  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CLARA

23  CARSON nor her treating healthcare providers were aware of or informed by Defendants that

24  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

25  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

26  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

27  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

28  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00078

1   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

2   suit against Defendants was tolled by such delayed discover.

3        178.   Plaintiff CLARA CARSON underwent her chemotherapy treatment. On

4   information and belief, McKesson Corporation distributed the TAXOTERE® that CLARA

5   CARSON received.

6        179.   Plaintiff BRENDA K. CARTER was diagnosed with breast cancer. Following her

7   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff BRENDA K.

8   CARTER nor her treating healthcare providers were aware of or informed by Defendants that

9   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

10  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

11  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

12  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

13  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

14  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

15  suit against Defendants was tolled by such delayed discover.

16       180.   Plaintiff BRENDA K. CARTER underwent her chemotherapy treatment. On

17  information and belief, McKesson Corporation distributed the TAXOTERE® that BRENDA K.

18  CARTER received.

19       181.   Plaintiff MARY K. CARTER was diagnosed with breast cancer. Following her

20  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MARY K.

21  CARTER nor her treating healthcare providers were aware of or informed by Defendants that

22  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

23  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

24  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

25  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

26  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

27  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

28  suit against Defendants was tolled by such delayed discover.

35

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00079

182.   Plaintiff MARY K. CARTER underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that MARY K. CARTER received.

183.   Plaintiff PAULETTE CARTER was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff PAULETTE CARTER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

184.   Plaintiff PAULETTE CARTER underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that PAULETTE CARTER received.

185.   Plaintiff JUANITA CHAMBERS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff JUANITA CHAMBERS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00080

1    186.    Plaintiff JUANITA CHAMBERS underwent her chemotherapy treatment. On

2    information and belief, McKesson Corporation distributed the TAXOTERE® that JUANITA

3    CHAMBERS received.

4    187.    Plaintiff CYNTHIA CHAPMAN was diagnosed with breast cancer. Following

5    her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CYNTHIA

6    CHAPMAN nor her treating healthcare providers were aware of or informed by Defendants that

7    disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

8    Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

9    completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

10   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

11   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

12   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

13   suit against Defendants was tolled by such delayed discover.

14   188.    Plaintiff CYNTHIA CHAPMAN underwent her chemotherapy treatment. On

15   information and belief, McKesson Corporation distributed the TAXOTERE® that CYNTHIA

16   CHAPMAN received.

17   189.    Plaintiff GLORIA J. CHARETTE was diagnosed with breast cancer. Following

18   her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff GLORIA

19   J. CHARETTE nor her treating healthcare providers were aware of or informed by Defendants

20   that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

21   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

22   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

23   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

24   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

25   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

26   suit against Defendants was tolled by such delayed discover.

27

28

37

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00081

190. Plaintiff GLORIA J. CHARETTE underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that GLORIA J. CHARETTE received.

191. Plaintiff MARY Y. CHARLESTON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MARY Y. CHARLESTON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

192. Plaintiff MARY Y. CHARLESTON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that MARY Y. CHARLESTON received.

193. Plaintiff MELODY CLARK was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MELODY CLARK nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00082

194.    Plaintiff MELODY CLARK underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that MELODY CLARK received.

195.    Plaintiff MARY COLLINS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MARY COLLINS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

196.    Plaintiff MARY COLLINS underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that MARY COLLINS received.

197.    Plaintiff ASHLEY CONWAY was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ASHLEY CONWAY nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

39

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00083

198. Plaintiff ASHLEY CONWAY underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that ASHLEY CONWAY received.

199. Plaintiff MAXINE CRAFTON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MAXINE CRAFTON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

200. Plaintiff MAXINE CRAFTON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that MAXINE CRAFTON received.

201. Plaintiff DAWN CREECH was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DAWN CREECH nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

40

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00084

202. Plaintiff DAWN CREECH underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that DAWN CREECH received.

203. Plaintiff CHRISTIANNA CROCKETT was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CHRISTIANNA CROCKETT nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

204. Plaintiff CHRISTIANNA CROCKETT underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that CHRISTIANNA CROCKETT received.

205. Plaintiff VIVIAN L. CROSBY was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff VIVIAN L. CROSBY nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

Exhibit C
00085

206.    Plaintiff VIVIAN L. CROSBY underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that VIVIAN L. CROSBY received.

207.    Plaintiff CAROL A. CRUMBLIN was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CAROL A. CRUMBLIN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

208.    Plaintiff CAROL A. CRUMBLIN underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that CAROL A. CRUMBLIN received.

209.    Plaintiff YOLANDA DANKINS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff YOLANDA DANKINS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00086

210. Plaintiff YOLANDA DANKINS underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that YOLANDA DANKINS received.

211. Plaintiff SANDRA DANTZLER was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SANDRA DANTZLER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

212. Plaintiff SANDRA DANTZLER underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that SANDRA DANTZLER received.

213. Plaintiff MARY B DAVENPORT was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MARY B DAVENPORT nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

43
COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00087

214. Plaintiff MARY B DAVENPORT underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that MARY B DAVENPORT received.

215. Plaintiff DOROTHY L. DAVIS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DOROTHY L. DAVIS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

216. Plaintiff DOROTHY L. DAVIS underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that DOROTHY L. DAVIS received.

217. Plaintiff JENNIFER DAVIS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff JENNIFER DAVIS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00088

218. Plaintiff JENNIFER DAVIS underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that JENNIFER DAVIS received.

219. Plaintiff LUWANDA DAVIS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff LUWANDA DAVIS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

220. Plaintiff LUWANDA DAVIS underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that LUWANDA DAVIS received.

221. Plaintiff REGINA DAVIS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff REGINA DAVIS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

Exhibit C
00089

222. Plaintiff REGINA DAVIS underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that REGINA DAVIS received.

223. Plaintiff RUBY L. DAVIS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff RUBY L. DAVIS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

224. Plaintiff RUBY L. DAVIS underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that RUBY L. DAVIS received.

225. Plaintiff CHARMAINE DIXON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CHARMAINE DIXON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00090

1  226.  Plaintiff CHARMAINE DIXON underwent her chemotherapy treatment. On
2  information and belief, McKesson Corporation distributed the TAXOTERE® that
3  CHARMAINE DIXON received.

4  227.  Plaintiff DOROTHY DIXON was diagnosed with breast cancer. Following her
5  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DOROTHY
6  DIXON nor her treating healthcare providers were aware of or informed by Defendants that
7  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.
8  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the
9  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result
10  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged
11  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,
12  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file
13  suit against Defendants was tolled by such delayed discover.

14  228.  Plaintiff DOROTHY DIXON underwent her chemotherapy treatment. On
15  information and belief, McKesson Corporation distributed the TAXOTERE® that DOROTHY
16  DIXON received.

17  229.  Plaintiff SELINA M. DIXON was diagnosed with breast cancer. Following her
18  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SELINA M.
19  DIXON nor her treating healthcare providers were aware of or informed by Defendants that
20  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.
21  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the
22  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result
23  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged
24  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,
25  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file
26  suit against Defendants was tolled by such delayed discover.

27
28

47

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00091

230.    Plaintiff SELINA M. DIXON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that SELINA M. DIXON received.

## NATURE OF THE CLAIMS

231.    Despite the fact that Defendants disclosed risks associated with TAXOTERE® and permanent alopecia to patients and regulatory agencies in other countries, Defendants failed to either alert Plaintiffs, the public, and the scientific community in the United States or perform further investigation into the safety of TAXOTERE® regarding the side effect of disfiguring permanent alopecia. Defendants failed to update the warnings for TAXOTERE®, and they failed to disclose the results of additional studies as Defendants learned new facts regarding the defects and risks of their product.

232.    In particular, Defendants:

(a)     failed to disclose their investigation and research from 2005, including but not limited to the results of the GEICAM 9805 study, and failed to further investigate, research, study, and define fully and adequately the safety profile of TAXOTERE® in response to these studies;

(b)     failed to provide adequate warnings about the true safety risks associated with the use of TAXOTERE®;

(c)     failed to provide adequate warning regarding the pharmacokinetic and pharmacodynamic variability of TAXOTERE® and its effects on the degree or severity of side effects related to permanent alopecia;

(d)     failed to disclose in the "Warnings" Section that permanent alopecia is a frequent side effect associated with the use of TAXOTERE®;

(e)     failed to advise prescribing physicians, such as Plaintiffs' physicians, to instruct patients that permanent alopecia was a side effect, much less a frequent side effect, linked to TAXOTERE®;

(f)     failed to provide adequate instructions on how to intervene and/or reduce the risk of permanent alopecia related to the use of TAXOTERE®;

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00092

(g)    failed to provide adequate warnings and information related to the increased risks of permanent alopecia in certain genome groups;

(h)    failed to provide adequate warnings regarding the increased risk of permanent alopecia with the use of TAXOTERE® as compared to other products intended to treat the same conditions as TAXOTERE®; and

(i)    failed to include a **"BOXED WARNING"** related to permanent or persistent alopecia.

233.    During the years since first marketing TAXOTERE® in the U.S., Defendants modified the U.S. labeling and prescribing information for TAXOTERE® on multiple occasions. Defendants failed, however, to include any warning whatsoever related to permanent alopecia despite Defendants' awareness of the frequency and severity of this side effect.

234.    Before applying for and obtaining approval of TAXOTERE®, Defendants knew or should have known that consumption of TAXOTERE® was associated with and/or would cause disfiguring side effects including disfiguring permanent alopecia.

235.    Despite knowing that TAXOTERE® was likely to result in increased rates of alopecia and disfiguring permanent alopecia, Defendants produced, marketed, and distributed TAXOTERE® in the United States.

236.    Defendants failed to adequately conduct complete and proper testing of TAXOTERE® prior to filing their New Drug Application for TAXOTERE®.

237.    From the date Defendants received FDA approval to market TAXOTERE®, Defendants made, distributed, marketed, and sold TAXOTERE® without adequate warning to Plaintiffs or Plaintiffs' prescribing physicians that TAXOTERE® was associated with disfiguring permanent alopecia.

238.    Defendants ignored the association between the use of TAXOTERE® and the risk of disfiguring permanent alopecia.

239.    Defendants failed to disclose information that they possessed regarding their failure to adequately test and study TAXOTERE® related to the side effect of disfiguring permanent alopecia. Plaintiffs and their healthcare providers could not have discovered

49

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00093

1    Defendants' false representations and failures to disclose information through the exercise of

2    reasonable diligence.

3        240.   As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to

4    suffer serious and dangerous side effects, severe and personal injuries that are permanent and

5    lasting in nature, and economic and non-economic damages, harms, and losses, including but not

6    limited to: past and future medical expenses; past and future loss of earnings; past and future

7    loss and impairment of earning capacity; permanent disfigurement including permanent

8    alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future

9    harm; past, present, and future physical and mental pain, suffering, and discomfort; and past,

10    present, and future loss and impairment of the quality and enjoyment of life.

**ESTOPPEL FROM PLEADING STATUTES OF**
**LIMITATIONS OR REPOSE**

13        241.   Plaintiffs incorporate by reference the averments of the preceding paragraphs of

14    the Complaint as if fully set forth at length herein.

15        242.   Plaintiffs are within the applicable statutes of limitations for the claims presented

16    herein because Plaintiffs did not discover the defects and unreasonably dangerous condition of

17    Defendants' TAXOTERE® and the risks associated with its use in the form of disfiguring

18    permanent alopecia, and could not reasonably have discovered the defects and unreasonably

19    dangerous condition of Defendants' TAXOTERE® and the risks associated with its use, due to

20    the Defendants' failure to warn, suppression of important information about the risks of the

21    drug, including but not limited to the true risk benefit profile, and the risk of disfiguring

22    permanent alopecia and damages known by Defendants to result from the use of TAXOTERE®,

23    and other acts and omissions.

24        243.   In addition, Defendants are estopped from relying on any statutes of limitations or

25    repose by virtue of their acts of Concealment, affirmative misrepresentations and omissions,

26    which include Defendants' intentional concealment from Plaintiffs, Plaintiffs' prescribing health

27    care professionals and the general consuming public that Defendants' TAXOTERE® was

28    defective, unreasonably dangerous and carried with it the serious risk of developing the injuries

50
COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00094

1   Plaintiffs have suffered while aggressively and continually marketing and promoting

2   TAXOTERE® as safe and effective.  This includes, but is not limited to, Defendants' failure to

3   disclose and warn of the risk of disfiguring permanent alopecia and injuries known by

4   Defendants to result from use of TAXOTERE®, for example, and not by way of limitation,

5   internal concern about reports and studies finding an increased risk of disfiguring permanent

6   alopecia; suppression of information about these risks and injuries from physicians and patients,

7   including Plaintiffs; use of sales and marketing documents and information that contained

8   information contrary to the internally held knowledge regarding the aforesaid risks and injuries;

9   and overstatement of the efficacy and safety of TAXOTERE®.

10         244.    Defendants had a duty to disclose that TAXOTERE® was defective,

11   unreasonably dangerous and that the use of Defendants' TAXOTERE® carried with it the

12   serious risk of developing disfiguring permanent alopecia as the Plaintiffs have suffered.

13   Defendants breached that duty.

14         245.    Plaintiffs, Plaintiffs' prescribing health care professionals and the general

15   consuming public, had no knowledge of, and no reasonable way of discovering, the defects

16   found in Defendants' TAXOTERE® or the true risks associated with their use at the time she

17   purchased and used Defendants' TAXOTERE®.

18         246.    Defendants did not notify, inform, or disclose to Plaintiffs, Plaintiffs' prescribing

19   health care professionals or the general consuming public that Defendants' TAXOTERE® was

20   defective and that its use carried with it the serious risk of developing the injuries Plaintiffs have

21   suffered and complained of herein.

22         247.    Because Defendants failed in their duty to notify Plaintiffs, Plaintiffs' prescribing

23   health care professionals and the general consuming public that their TAXOTERE® was

24   defective and, further, actively attempted to conceal this fact, Defendants should be estopped

25   from asserting defenses based on statutes of limitation or repose.

26         248.    Accordingly, Plaintiffs file this lawsuit within the applicable statutes of

27   limitations. Plaintiffs could not by exercise of reasonable diligence have discovered any

28   wrongdoing, nor could she have discovered the causes of their injuries at an earlier time, and

Exhibit C
00095

1    when Plaintiffs' injuries were discovered, their causes were not immediately known or knowable

2    based on the lack of necessary information, which was suppressed by the Defendants. Further,

3    the relationship of Plaintiffs' injuries to TAXOTERE® exposure through the Defendants' drug

4    was inherently difficult to discover, in part due to the Defendants' knowing suppression of

5    important safety information. Consequently, the discovery rule should be applied to toll the

6    running of the statutes of limitations until Plaintiffs discovered, or by the exercise of reasonable

7    diligence should have discovered, that Plaintiffs may have a basis for an actionable claim.

8        249.    After Defendants changed the TAXOTERE® prescription information in the

9    United States to include information about permanent alopecia in December 2015, there ensued

10   publicity and advertising related to permanent alopecia caused by TAXOTERE®. Plaintiffs, as a

11   result of the publicity and advertising, became aware of the failure to warn about permanent

12   alopecia by Sanofi, and the availability of an equally efficacious and less toxic alternative drug.

13   Plaintiffs acted with all reasonable diligence and speed upon discovering this information and

14   timely files the present complaint.

15                           **FIRST CLAIM FOR RELIEF**

16            **(Product Liability for Negligence – Against All Defendants)**

17       250.    Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the

18   same force and effect as if fully set forth herein.

19       251.    Defendants had a duty to exercise reasonable care in the marketing, supplying,

20   promoting, packaging, sale, and/or distribution of TAXOTERE® into the stream of commerce,

21   including a duty to assure that the product would not cause users to suffer unreasonable,

22   dangerous side effects.

23       252.    Defendants failed to exercise reasonable care in the marketing, supplying,

24   promoting, packaging, sale, and/or distribution of TAXOTERE® into interstate commerce in

25   that Defendants knew or should have known that using TAXOTERE® created a high risk of

26   unreasonable, disfiguring side effects, including personal injuries that are permanent and lasting

27   in nature such as disfiguring permanent alopecia, mental anguish, and diminished enjoyment of

28   life, economic loss, and loss of economic opportunity.

Exhibit C
00096

253.     The negligence of Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

(a)     Selling TAXOTERE® without disclosing its dangers and risks;

(b)     Negligently failing to adequately and correctly warn Plaintiffs, Plaintiffs' physicians, the public, and the medical and healthcare profession of the dangers of TAXOTERE®;

(c)     Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, TAXOTERE®;

(d)     Negligently advertising and recommending the use of TAXOTERE® without sufficient knowledge as to its dangerous propensities;

(e)     Negligently representing that TAXOTERE® was safe for use for its intended purpose, when, in fact, it was unsafe;

(f)     Negligently and falsely representing that TAXOTERE® was superior to other commercially available products to treat the same forms of cancer that TAXOTERE® was intended to treat;

(g)     Concealing information from Plaintiffs, Plaintiffs' physicians, the public, and the FDA in knowing that TAXOTERE® was unsafe, dangerous, and/or non-conforming with FDA regulations; and

(h)     Improperly concealing from and/or misrepresenting information to Plaintiffs, Plaintiffs' physicians, other healthcare professionals, and/or the FDA concerning the severity of risks and dangers of TAXOTERE® compared to other forms of treatment for breast cancer.

254.     Defendants underreported, underestimated and downplayed the serious dangers and risk associated with TAXOTERE®.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00097

255.    Defendants negligently conveyed that the safety risks and/or dangers of TAXOTERE® were comparable with other forms of treatment for the same conditions for which TAXOTERE® was prescribed to treat.

256.    Defendants were negligent in the researching, supplying, promoting, packaging, distributing, testing, advertising, warning, marketing, and selling of TAXOTERE® in that they:

(a)    Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of TAXOTERE®;

(b)    Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the risks and dangers associated with TAXOTERE®;

(c)    Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning TAXOTERE®;

(d)    Failed to warn Plaintiffs and Plaintiffs' physicians of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity, of the side effects;

(e)    Failed to conduct adequate post-marketing surveillance, to determine the safety, dangers, and risks associated with TAXOTERE®.

(f)    Failed to warn Plaintiffs and Plaintiffs' physicians before actively encouraging the sale of TAXOTERE®, either directly or indirectly, orally or in writing, about the need for more comprehensive and regular medical monitoring than usual to ensure early discovery of potentially serious side effects; and

(g)    Were otherwise careless and/or negligent.

257.    Despite the fact that Defendants knew or should have known that TAXOTERE® caused unreasonably dangerous side effects, namely the serious risk of developing disfiguring permanent alopecia, Defendants continued and continue to market, manufacture, distribute, and/or sell TAXOTERE® to consumers, including Plaintiffs.

54

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00098

258. Defendants negligently and improperly failed to perform sufficient post-market tests and surveillance, forcing Plaintiffs, Plaintiffs' physicians, and hospital to rely on safety information that did not accurately represent the risks and benefits associated with the use of TAXOTERE® as compared to other products already commercially available to treat the same types of cancer TAXOTERE® was meant to treat.

259. Defendants knew or should have known that consumers such as Plaintiffs would use their product and would foreseeably suffer injury as a result of Defendants' failure to exercise reasonable care, as set forth above.

260. Defendants' negligence was the proximate cause of Plaintiffs' injuries, harms, damages, and losses.

261. As a direct and proximate result of the use of TAXOTERE®, Plaintiffs experienced disfiguring permanent alopecia.

262. As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SECOND CLAIM FOR RELIEF

### (Strict Products Liability – Failure to Warn – Against All Defendants)

263. Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

264. The TAXOTERE® that Defendants sold, marketed, distributed, supplied and placed into the stream of commerce was defective in that it failed to include adequate warnings regarding all adverse side effects associated with the use of TAXOTERE®. The warnings given

Exhibit C
00099

by Defendants did not sufficiently and/or accurately reflect the symptoms, type, scope, severity, or duration of the side effects and, in particular, the risks of disfiguring permanent alopecia.

265. Winthrop U.S. is a business unit or division operating of Sanofi. As the holder for the Reference Listed Drug ("RLD") of brand-name TAXOTERE®, the Sanofi Defendants supplied the labeling for Winthrop U.S.'s generic version of TAXOTERE®. All of the labeling for the generic version was also defective because it failed to adequately warn of the risk of disfiguring permanent alopecia.

266. Defendants failed to provide adequate warnings to physicians and users, including Plaintiffs' physicians and Plaintiffs, of the increased risk of disfiguring permanent alopecia associated with TAXOTERE®, and Defendants aggressively and fraudulently promoted the product to physicians.

267. As a direct and proximate result of Defendants' failure to warn of the potentially severe adverse effects of TAXOTERE®, Plaintiffs suffered disfiguring permanent alopecia and other conditions.

268. As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

### THIRD CLAIM FOR RELIEF
### (Intentional Misrepresentation)

269. Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

270. Defendants falsely and fraudulently represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that TAXOTERE®

56

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00100

1  had been tested and was found to be safe and effective for the treatment of certain forms of

2  cancer.

3      271.    When warning of safety and risks of TAXOTERE®, Defendants fraudulently

4  represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the

5  public in general that TAXOTERE® had been tested and was found to be safe and/or effective

6  for its indicated use.

7      272.    Defendants concealed their knowledge of TAXOTERE®'s defects from

8  Plaintiffs, Plaintiffs' physicians, and the public in general and/or the medical community

9  specifically including, but not limited to, concealing their knowledge of the risk of developing

10  disfiguring permanent alopecia.

11      273.    Defendants concealed their knowledge of the defects in their products from

12  Plaintiffs, Plaintiffs' physicians, hospitals, pharmacists, and the public in general.

13      274.    Defendants made these false representations with the intent of defrauding and

14  deceiving Plaintiffs, Plaintiffs' physicians, the public in general, and the medical and healthcare

15  community in particular, and were made with the intent of inducing Plaintiffs, Plaintiffs'

16  physicians, the public in general, and the medical community in particular, to recommend,

17  dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer,

18  including but not limited to breast cancer, all of which evidenced a callous, reckless, willful,

19  wanton, and depraved indifference to the health, safety, and welfare of Plaintiffs.

20      275.    Defendants made these false representations with the intent of defrauding and

21  deceiving Plaintiffs, Plaintiffs' physicians, as well as the public in general, and the medical and

22  healthcare community in particular, and were made with the intent of inducing the public in

23  general, and the medical community in particular, to recommend, dispense, and/or purchase

24  TAXOTERE® for use in the treatments of various forms of cancer, including but not limited to

25  breast cancer.

26      276.    When Defendants made these representations, Defendants knew those

27  representations were false, and Defendants willfully, wantonly, and recklessly disregarded

28  whether the representations were true.

57

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00101

277.   At the time Defendants made the aforesaid representations, and, at the time Plaintiffs used TAXOTERE®, Plaintiffs and Plaintiffs' physicians were unaware of the falsity of Defendants' representations, and Plaintiffs and Plaintiffs' physicians reasonably believed them to be true.

278.   In reliance upon Defendants' representations, Plaintiffs and Plaintiffs' physicians were induced to and did use and prescribe TAXOTERE®, which caused Plaintiffs to sustain severe, permanent, and disfiguring personal injuries.

279.   Defendants knew and were aware or should have been aware that lacked adequate and/or sufficient warnings.

280.   Defendants knew or should have known that TAXOTERE® had a potential to, could, and would cause severe and grievous injury to the users of TAXOTERE®, including, but not limited to, the development of permanent disfiguring alopecia, and that TAXOTERE® was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

281.   Defendants acted fraudulently, wantonly, and maliciously to the detriment of Plaintiffs.

282.   As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## **FOURTH CLAIM FOR RELIEF**
### **(Concealment – Against Sanofi Defendants)**

283.   Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00102

284. At all times during the course of dealing between Sanofi Defendants and Plaintiffs and Plaintiffs' healthcare providers, Defendants misrepresented the effectiveness and safety of TAXOTERE® for its intended use.

285. Sanofi Defendants knew or were reckless in not knowing that its representations were false.

286. In representations made to Plaintiffs and Plaintiffs' healthcare providers, Sanofi Defendants fraudulently concealed and intentionally omitted the following material information:

        (a)    that TAXOTERE® was not as safe as other forms of treatment for which TAXOTERE® was marketed and sold to cancer patients;

        (b)    that the risks of adverse events with TAXOTERE® were higher than those with other forms of treatment for which TAXOTERE® was marketed and sold to cancer patients;

        (c)    that the risks of adverse events with TAXOTERE® were not adequately tested and/or known by Defendants;

        (d)    that Defendants were aware of dangers in TAXOTERE®, in addition to and above and beyond those associated with other forms of treatment for cancer patients;

        (e)    that TAXOTERE® was defective in that it caused dangerous side effects as well as other severe and permanent health consequences in a much more and significant rate than other forms of treatment for cancer patients;

287. Sanofi Defendants had a duty to disclose to Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers the defective nature of TAXOTERE®, including but not limited to the heightened risks of disfiguring permanent alopecia.

288. Sanofi Defendants had sole access to material facts concerning the defective nature of TAXOTERE® and its propensity to cause serious and dangerous side effects, including, but not limited to, disfiguring permanent alopecia, and therefore cause damage to persons who used TAXOTERE®, including Plaintiffs, in particular.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00103

289.     Sanofi Defendants' concealment and omissions of material facts concerning the safety of TAXOTERE® was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs, Plaintiffs' physicians, hospitals, and healthcare providers into reliance on the continued use of TAXOTERE® and to cause them to purchase, prescribe, and/or dispense TAXOTERE® and/or use TAXOTERE®.

290.     Sanofi Defendants knew that Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers had no way to determine the truth behind Defendants' concealment and omissions, including the material omissions of facts surrounding TAXOTERE® set forth herein.

291.     Plaintiffs, Plaintiffs' physicians, healthcare providers, and/or hospitals reasonably relied on information revealed by Sanofi Defendants that negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

292.     As a result of the foregoing acts and omissions, Sanofi Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## FIFTH CLAIM FOR RELIEF
### (Negligent Misrepresentation – Against All Defendants)

293.     Plaintiffs repeat, reiterate, and re-allege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

294.     Defendants sold the TAXOTERE® that Plaintiff's physician prescribed for Plaintiffs and that Plaintiffs used.

295.     Defendants were engaged in the business of selling the TAXOTERE® for resale, use, or consumption.

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00104

296. Defendants misrepresented facts as set forth herein concerning the character or quality of the TAXOTERE® that would be material to potential prescribers and purchasers or users of the product.

297. Defendants' misrepresentations were made to potential prescribers and/or purchasers or users as members of the public at large.

298. As a purchasers or users, Plaintiffs reasonably relied on the misrepresentation.

## SIXTH CLAIM FOR RELIEF

### (Extreme and Outrageous Conduct / Intentional Infliction of Emotional Distress – Against All Defendants)

299. Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

300. Defendants' conduct, as set forth above, was extreme and outrageous.

301. Defendants' actions were done recklessly or with the intent of causing Plaintiff severe emotional distress; and

302. Defendants' conduct caused Plaintiffs severe emotional distress.

303. As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SEVENTH CLAIM FOR RELIEF

### (Loss of Consortium)

61

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00105

1    304.    Spouse plaintiffs complain of defendants, and each of them and for a cause of
2    action for loss of consortium allege as follow:
3        305.    Spouse Plaintiffs hereby incorporate by reference all previous paragraphs of this
4    Complaint as if fully set forth herein and further allege as follows:
5        306.    This cause of action is asserted by the Spouse Plaintiffs identified previously
6    whose spouses suffered personal injuries as a result of using Defendants product, who at all
7    times relevant to this action were, and are now, husband and wife.
8        307.    Subsequent to their injuries, Plaintiffs' were and are unable to perform the
9    necessary duties as a spouse and the work service usually performed in the care, maintenance
10   and management of the family home.
11       308.    Spouse Plaintiffs were unaware that Plaintiffs' injuries were caused by
12   TAXOTERE® until within two years of filing this Complaint.
13       309.    By reason of the injuries sustained by their spouses, the Spouse Plaintiffs have
14   been and will continue to be deprived of the loss of love, companionship, comfort, care,
15   assistance, protection, affection, society, and moral support of their spouses, as to their damage,
16   in an amount presently unknown but which will be proved at the time of trial.
17       WHEREFORE, said Spouse Plaintiffs pray for judgment against Defendants as
18   hereinafter set forth.
19
20                               **PRAYER FOR RELIEF**
21       WHEREFORE, all California Plaintiffs demand judgment against Defendants SANOFI
22   U.S. SERVICES INC., formerly known as SANOFI U.S. SERVICES INC., formerly known as
23   SANOFI-AVENTIS U.S. INC, SANOFI-AVENTIS U.S. LLC, separately and doing business as
24   WINTHROP U.S., SANDOZ, INC., McKESSON CORPORATION doing business as
25   McKESSON PACKAGING, HOSPIRA, INC., HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA
26   WORLDWIDE, INC., SANDOZ, INC., and ACCORD HEALTHCARE, INC. All non-
27   California plaintiffs demand judgment against Defendant McKESSON CORPORATION doing
28   business as McKESSON PACKAGING. The extreme and outrageous conduct of the Defendants

Exhibit C
00106

1  was done with conscious disregard for causing Plaintiffs to suffer injury, justifying an award of

2  exemplary and punitive damages in an amount to be determined at trial by the trier of fact for her

3  injuries, harms, damages, and losses as set forth above. Plaintiffs also seek special damages,

4  costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other

5  injuries and damages as shall be proven at trial, and such other further relief as the Court may

6  deem appropriate, just, and proper.

7  **JURY DEMAND**

8  Plaintiff demands a trial by jury on all issues so triable.

9

10 DATED: December 12, 2017                    Respectfully submitted,

11                                             **NAPOLI SHKOLNIK, PLLC**

12

13                                             By:

14                                             Jennifer Liakos
                                               *Attorney for Plaintiffs*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

63

COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit C
00107