# EXHIBIT C

Civil Action Cover Sheet - Case Initation

(05/27/16) CCL 0520

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

VIRGIE ANDERSON

v.

No. _____

HOSPIRA, INC.

**CIVIL ACTION COVER SHEET - CASE INITIATION**

A Civil Action Cover Sheet - Case Initiation shall be filed with the complaint in all civil actions. Th e information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate case type which best characterizes your action. Only one (1) case type may be checked with this cover sheet.

Jury Demand  ☑Yes  ☐No

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
CALENDAR: D
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

(FILE STAMP)

**PERSONAL INJURY/WRONGFUL DEATH**

CASE TYPES:

☐ 027 Motor Vehicle
☐ 040 Medical Malpractice
☐ 047 Asbestos
☐ 048 Dram Shop
☑ 049 Product Liability
☐ 051 Construction Injuries
   ( including Structural Work Act, Road Construction Injuries Act and Negligence)
☐ 052 Railroad/FELA
☐ 053 Pediatric Lead Exposure
☐ 061 Other Personal Injury/Wrongful Death
☐ 063 Intentional Tort
☐ 064 Miscellaneous Statutory Action
   ( Please Specify Below**)
☐ 065 Premises Liability
☐ 078 Fen-phen/Redux Litigation
☐ 199 Silicone Implant

**COMMERCIAL LITIGATION**

CASE TYPES:

☐ 002 Breach of Contract
☐ 070 Professional Malpractice
   (other than legal or medical)
☐ 071 Fraud (other than legal or medical)
☐ 072 Consumer Fraud
☐ 073 Breach of Warranty
☐ 074 Statutory Action
   ( Please Specify Below**)
☐ 075 Other Commercial Litigation
   ( Please Specify Below**)
☐ 076 Retaliatory Discharge

**TAX & MISCELLANEOUS REMEDIES**

CASE TYPES:

☐ 007 Confession Of Judgment
☐ 008 Replevin
☐ 009 Tax
☐ 015 Condemnation
☐ 017 Detinue
☐ 029 Unemployment Compensation
☐ 031 Foreign Transcript
☐ 036 Administrative Review Action
☐ 085 Petition to Register Foreign Judgment
☐ 099 All Other Extraordinary Remedies

**OTHER ACTIONS**

CASE TYPES:

☐ 062 Property Damage
☐ 066 Legal Malpractice
☐ 077 Libel/Slander
☐ 079 Petition for Qualified Orders
☐ 084 Petition to Issue Subpoena
☐ 100 Petition for Discovery

** _____

Primary Email: ____ pnapoli@napolilaw.com

Secondary Email: ____ rachels@napolilaw.com

Tertiary Email: ____ sromero@napolilaw.com

By: _____ /s PAUL J. NAPOLI 71000

(Attorney)          (ProSe)

**Pro Se Only:** ☐ I have read and agree to the terms of the *the Clerk's Offi ce Electronic Notice Policy* and choose to opt in to electronic notice form the **Clerk's Office** for this case at this email address: _____

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
CALENDAR: D
PAGE 1 of 85
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| VIRGIE ANDERSON; FERIAL ALAWAR; LINDA D. ABRAMS; CATHY ANDERSON; JERRY ANDERSON; LORETTA ANDERSON; ROSE ANDERSON; JANET ANNE BLOOM; JUDY BONB; GENEVA BOUNDS; BEVERLY BREAUX; LINDA BROADIE; VANETTA BROWN; DELLA BUCKLEY; HELEN BUNCHE; FRANCIS CARROLL; LINDA CARROLL; CLARA CARSON; BRENDA K. CARTER; MARY K. CARTER; PAULETTE CARTER; JUANITA CHAMBERS; CYNTHIA CHAPMAN; GLORIA J. CHARETTE; MARY Y. CHARLESTON; MELODY CLARK; MARY COLLINS; ASHLEY CONWAY; MAXINE CRAFTON; DAWN CREECH; CHRISTIANNA CROCKETT; VIVIAN L. CROSBY; CAROL A. CRUMBLIN; YOLANDA DANKINS; SANDRA DANTZLER; MARY B DAVENPORT; DOROTHY L. DAVIS; JENNIFER DAVIS; REGINA DAVIS; RUBY L. DAVIS; CHARMAINE DIXON; DOROTHY DIXON; SELINA M. DIXON; FRANCES M. DOUGAN; JENNIFER W. EDWARDS; GEORGETTE ENWRIGHT; CAROLYN K. ESTES; ERMA FARRINGTON; MARY FAULKNER; and MARTHA A. FOSTER,<br><br>Plaintiffs,<br><br>v.<br><br>SANOFI U.S. SERVICES INC., formerly known as SANOFI-AVENTIS U.S. INC.; SANOFI-AVENTIS U.S. LLC, separately, and doing business as WINTHROP U.S.; HOSPIRA, INC.; HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.; McKESSON CORPORATION doing business as McKESSON PACKAGING; SANDOZ INC.; ACCORD HEALTHCARE LTD.; ACCORD HEALTHCARE, INC.; and DOES, INC.,<br><br>Defendants. | C.A. No.<br>Jury Trial Demanded<br><br>**COMPLAINT AND JURY DEMAND** |

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 2 of 85

## COMPLAINT

Plaintiffs who are residents of Illinois, by and through undersigned counsel, respectfully submit the following Complaint and Jury Demand against Defendants Sanofi U.S. Services Inc., formerly known as Sanofi-Aventis U.S. Inc., Sanofi-Aventis U.S. LLC, separately, and doing business as Winthrop U.S., Hospira, Inc., Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., McKesson Corporation doing bushiness as McKesson Packaging, Sandoz Inc., Accord Healthcare Ltd., Accord Healthcare Inc., and Does, Inc., and alleges the following upon personal knowledge, information and belief, and investigation of counsel.

Plaintiffs who are not Illinois residents, by and through undersigned counsel, respectfully submit the following Complaint and Jury Demand against Defendants Hospira, Inc. and Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., and allege the following upon personal knowledge, information and belief, and investigation of counsel.

## NATURE OF THE ACTION

1.      This action seeks to recover damages for injuries sustained by Plaintiffs as the direct and proximate result of the wrongful conduct of Defendants Sanofi U.S. Services Inc., formerly known as Sanofi-Aventis U.S. Inc., Sanofi-Aventis U.S. LLC, separately, and doing business as Winthrop U.S., Hospira, Inc., Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., McKesson Corporation doing business as McKesson Packaging, Sandoz Inc., Accord Healthcare Ltd., Accord Healthcare Inc., and Does, Inc., in connection with the designing, developing, manufacturing, distributing, labeling, advertising, marketing, promoting, and selling of TAXOTERE®, a prescription medication used in the treatment of breast cancer.

2.      Plaintiffs are breast cancer survivors who were prescribed and injected with TAXOTERE® (docetaxel), a drug used in chemotherapy that is developed, manufactured, and

2

distributed by Defendants. Although lower potency alternatives have been available for years, Defendants misleadingly promoted TAXOTERE® as having superior efficacy based on self-sponsored clinical trials, even though the FDA called these claims "unsubstantiated." In fact, TAXOTERE®'s increased potency only makes it more toxic than alternatives and causes more severe side effects, including a significantly increased risk of disfiguring *permanent* hair loss. Although temporary hair loss is a common side effect related to chemotherapy, TAXOTERE®'s risk of permanent hair loss is not. Defendants concealed this information from physicians, healthcare providers, and patients, causing Plaintiffs and tens of thousands of women to suffer permanent hair loss without any additional benefit or warning.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 3 of 85

3. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered serious and permanent physical and emotional injuries, including permanent hair loss, and seek damages relating to Defendants' distribution, labeling, advertising, marketing, manufacturing, promotion, and sale of TAXOTERE®.

## JURISDICTION AND VENUE

4. Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court has in personam jurisdiction over the Defendants, because Defendants are present in the State of Illinois, such that requiring an appearance does not offend traditional notions of fair play and substantial justice.

5. This Court has personal jurisdiction over the Defendants, pursuant to, and consistent with, Illinois' long-arm statute (735 ILCS 5/2-209) and the Constitutional requirements of Due Process in that the Defendants acting through agents or apparent agents, committed one or more of the following:

   a) Defendants transacted business in the State of Illinois, 735 ILCS 5/2-209(a)(1);

3

b) Defendants committed a tortious act within the State of Illinois, 735 ILCS 5/2-209(a)(2);

c) Defendants owned, used or possessed real estate situated in the State of Illinois, 735 ILCS 5/2-209(a)(3);

d) Defendants made or performed a contract or promise substantially connected within this state, 735 ILCS 5/2-209(a)(7);

e) Defendants do business in and within Illinois, 735 ILCS 5/2-209(b)(4); and;

f) Requiring Defendants to litigate this claim in Illinois does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution.

6. Defendants marketed, promoted, and sold Taxotere throughout the United States, including Cook County, Illinois. Accordingly, venue is proper under 735 ILCS 5/1-108 and 2-101 of the Illinois Code of Civil Procedure.

7. Venue is proper in Cook County pursuant to 735 ILCS 5/2-101(2), because the transactions occurred out of which the causes of action arose were located in Cook County. Defendants marketed, advertised, and distributed the dangerous Taxotere product in Cook County, the County in which Plaintiff Virgie Anderson resides. Plaintiff's harms, losses, and damages occurred in Cook County; Defendants do substantial business in the State of Illinois and within Cook County; and at all times relevant hereto, Defendants developed, manufactured, promoted, marketed, distributed, warranted, and sold TAXOTERE® in interstate commerce.

8. Complete diversity of citizenship does not exist because multiple Plaintiffs are citizens and residents of the same state in which Defendants have located and maintain their principal place of business.

9. The amount in controversy exceeds fifty thousand dollars ($50,000.00), exclusive of interest and costs, the jurisdictional minimum of this Court.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 4 of 85

4

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 5 of 85

## COMMON ALLEGATIONS

**A.   PARTIES**

10.   Upon investigation and belief, Plaintiff VIRGIE ANDERSON is and was at arelevant times a citizen and resident of the State of Illinois, County of Cook, and was prescribed and administered TAXOTERE® in the State of Illinois, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff VIRGIE ANDERSON has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

11.   Upon investigation and belief, Plaintiff FERIAL ALAWAR is and was at all relevant times a citizen and resident of the state of North Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.FERIAL ALAWAR has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

12.   Upon investigation and belief, Plaintiff LINDA D. ABRAMS is and was at all relevant times a citizen and resident of the state of Ohio, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC. LINDA D. ABRAMS has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

13.   Upon investigation and belief, Plaintiff CATHY ANDERSON is and was at all relevant times a citizen and resident of the state of Maryland, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

5

packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.CATHY ANDERSON has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

14.     Upon investigation and belief, Plaintiff JERRY ANDERSON is and was at all relevant times a citizen and resident of the state of South Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.JERRY ANDERSON has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

15.     Upon investigation and belief, Plaintiff LORETTA ANDERSON is and was at all relevant times a citizen and resident of the state of Missouri, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.LORETTA ANDERSON has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

16.     Upon investigation and belief, Plaintiff ROSE ANDERSON is and was at all relevant times a citizen and resident of the state of Maryland, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.ROSE ANDERSON has suffered damages as a result

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 6 of 85

6

of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

17.    Upon investigation and belief, Plaintiff JANET ANNE BLOOM is and was at all relevant times a citizen and resident of the State of Illinois, and was prescribed and administered TAXOTERE® in the State of Illinois, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff JANET ANNE BLOOM has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

18.    Upon investigation and belief, Plaintiff JUDY BONB is and was at all relevant times a citizen and resident of the state of Minnesota, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.JUDY BONB has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

19.    Upon investigation and belief, Plaintiff GENEVA BOUNDS is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.GENEVA BOUNDS has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

20.    Upon investigation and belief, Plaintiff BEVERLY BREAUX is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 7 of 85

7

TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.BEVERLY BREAUX has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

21.    Upon investigation and belief, Plaintiff LINDA BROADIE is and was at all relevant times a citizen and resident of the state of North Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.LINDA BROADIE has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

22.    Upon investigation and belief, Plaintiff VANETTA BROWN is and was at all relevant times a citizen and resident of the State of Illinois, and was prescribed and administered TAXOTERE® in the State of Illinois, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff VANETTA BROWN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

23.    Upon investigation and belief, Plaintiff DELLA BUCKLEY is and was at all relevant times a citizen and resident of the state of Mississippi, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.DELLA BUCKLEY has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 8 of 85

8

WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

24.    Upon investigation and belief, Plaintiff HELEN BUNCHE is and was at all relevant times a citizen and resident of the state of South Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.HELEN BUNCHE has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

25.    Upon investigation and belief, Plaintiff FRANCIS CARROLL is and was at all relevant times a citizen and resident of the state of Pennsylvania, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.FRANCIS CARROLL has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

26.    Upon investigation and belief, Plaintiff LINDA CARROLL is and was at all relevant times a citizen and resident of the state of Connecticut, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.LINDA CARROLL has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

27.    Upon investigation and belief, Plaintiff CLARA CARSON is and was at all

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 9 of 85

9

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 10 of 85

relevant times a citizen and resident of the state of Florida, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.CLARA CARSON has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

28. Upon investigation and belief, Plaintiff BRENDA K. CARTER is and was at all relevant times a citizen and resident of the state of District of Columbia, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.BRENDA K. CARTER has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

29. Upon investigation and belief, Plaintiff MARY K. CARTER is and was at all relevant times a citizen and resident of the state of Indiana, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.MARY K. CARTER has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

30. Upon investigation and belief, Plaintiff PAULETTE CARTER is and was at all relevant times a citizen and resident of the state of Pennsylvania, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

10

packed, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.PAULETTE CARTER has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

31.   Upon investigation and belief, Plaintiff JUANITA CHAMBERS is and was at all relevant times a citizen and resident of the state of Missouri, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.JUANITA CHAMBERS has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

32.   Upon investigation and belief, Plaintiff CYNTHIA CHAPMAN is and was at all relevant times a citizen and resident of the state of Wisconsin, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.CYNTHIA CHAPMAN has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

33.   Upon investigation and belief, Plaintiff GLORIA J. CHARETTE is and was at all relevant times a citizen and resident of the state of North Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.GLORIA J. CHARETTE has suffered damages as a

ELECTRONICALLY FILED 12/13/2017 1:33 PM 2017-L-012694 PAGE 11 of 85

11

result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

34. Upon investigation and belief, Plaintiff MARY Y. CHARLESTON is and was at all relevant times a citizen and resident of the state of Florida, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.MARY Y. CHARLESTON has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

35. Upon investigation and belief, Plaintiff MELODY CLARK is and was at all relevant times a citizen and resident of the state of Indiana, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.MELODY CLARK has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

36. Upon investigation and belief, Plaintiff MARY COLLINS is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.MARY COLLINS has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 12 of 85

12

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 13 of 85

37.     Upon investigation and belief, Plaintiff ASHLEY CONWAY is and was at all relevant times a citizen and resident of the state of Maryland, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.ASHLEY CONWAY has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

38.     Upon investigation and belief, Plaintiff MAXINE CRAFTON is and was at all relevant times a citizen and resident of the state of Maryland, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.MAXINE CRAFTON has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

39.     Upon investigation and belief, Plaintiff DAWN CREECH is and was at all relevant times a citizen and resident of the state of Nevada, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.DAWN CREECH has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

40.     Upon investigation and belief, Plaintiff CHRISTIANNA CROCKETT is and was at all relevant times a citizen and resident of the state of Oklahoma, and was prescribed and

13

administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.CHRISTIANNA CROCKETT has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

41.     Upon investigation and belief, Plaintiff VIVIAN L. CROSBY is and was at all relevant times a citizen and resident of the state of Missouri, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.VIVIAN L. CROSBY has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

42.     Upon investigation and belief, Plaintiff CAROL A. CRUMBLIN is and was at all relevant times a citizen and resident of the State of Illinois, and was prescribed and administered TAXOTERE® in the State of Illinois, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff CAROL A. CRUMBLIN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

43.     Upon investigation and belief, Plaintiff YOLANDA DANKINS is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.YOLANDA DANKINS has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 14 of 85

14

illegal and wrongful conduct alleged herein.

44.     Upon investigation and belief, Plaintiff SANDRA DANTZLER is and was at all relevant times a citizen and resident of the state of Arizona, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.SANDRA DANTZLER has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

45.     Upon investigation and belief, Plaintiff MARY B DAVENPORT is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.MARY B DAVENPORT has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

46.     Upon investigation and belief, Plaintiff DOROTHY L. DAVIS is and was at all relevant times a citizen and resident of the state of District of Columbia, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.DOROTHY L. DAVIS has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

47.     Upon investigation and belief, Plaintiff JENNIFER DAVIS is and was at all

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 15 of 85

15

relevant times a citizen and resident of the state of Georgia, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.JENNIFER DAVIS has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

48.    Upon investigation and belief, Plaintiff REGINA DAVIS is and was at all relevant times a citizen and resident of the state of Maryland, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.REGINA DAVIS has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

49.    Upon investigation and belief, Plaintiff RUBY L. DAVIS is and was at all relevant times a citizen and resident of the state of Georgia, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.RUBY L. DAVIS has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

50.    Upon investigation and belief, Plaintiff CHARMAINE DIXON is and was at all relevant times a citizen and resident of the state of South Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 16 of 85

16

packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.CHARMAINE DIXON has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

51.     Upon investigation and belief, Plaintiff DOROTHY DIXON is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.DOROTHY DIXON has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

52.     Upon investigation and belief, Plaintiff SELINA M. DIXON is and was at all relevant times a citizen and resident of the state of Ohio, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.SELINA M. DIXON has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

53.     Upon investigation and belief, Plaintiff FRANCES M. DOUGAN is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.FRANCES M. DOUGAN has suffered damages as a result of Defendants

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 17 of 85

17

HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

54. Upon investigation and belief, Plaintiff JENNIFER W. EDWARDS is and was at all relevant times a citizen and resident of the state of Alabama, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.JENNIFER W. EDWARDS has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

55. Upon investigation and belief, Plaintiff GEORGETTE ENWRIGHT is and was at all relevant times a citizen and resident of the state of South Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.GEORGETTE ENWRIGHT has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

56. Upon investigation and belief, Plaintiff CAROLYN K. ESTES is and was at all relevant times a citizen and resident of the state of Arizona, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.CAROLYN K. ESTES has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 18 of 85

18

57.     Upon investigation and belief, Plaintiff ERMA FARRINGTON is and was at all relevant times a citizen and resident of the state of North Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.ERMA FARRINGTON has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

58.     Upon investigation and belief, Plaintiff MARY FAULKNER is and was at all relevant times a citizen and resident of the state of Georgia, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.MARY FAULKNER has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

59.     Upon investigation and belief, Plaintiff MARTHA A. FOSTER is and was at all relevant times a citizen and resident of the state of Alaska, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.MARTHA A. FOSTER has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

60.     Defendant Sanofi U.S. Services Inc., f/k/a Sanofi-Aventis U.S. Inc., is incorporated under the laws of the State of Delaware, with its principal place of business located

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 19 of 85

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 20 of 85

at 55 Corporate Dr., Bridgewater, NJ 08807.

61.     Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability company, which has its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807.

62.     Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets, sells, distributes pharmaceutical products, and does business under the name of Winthrop U.S., which is not a separately existing legal entity but rather is a business unit or division operating within and part of Sanofi-Aventis U.S. LLC.

63.     Defendants Sanofi U.S. Services Inc., formerly known as Sanofi-Aventis U.S. Inc, and Sanofi-Aventis U.S. LLC, separately and doing business as Winthrop U.S., shall be referred to herein individually by name or jointly as "Sanofi Defendants."

64.     Defendant Hospira, Inc. is incorporated under the laws of the State of Delaware, with its principal place of business located at 275 N. Field Drive, Lake Forest, Illinois 60045.

65.     Defendant Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., is incorporated under the laws of the State of Delaware, with its principal place of business located at 275 N. Field Drive, Lake Forest, Illinois 60045.

66.     Defendant McKesson Corporation is a Delaware corporation with its principal place of business at One Post Street, San Francisco, California 94104.

67.     Defendant Sandoz, Inc. ("Sandoz") is incorporated under the laws of the State of Colorado, with its principal place of business located at 100 College Road West, Princeton, New Jersey 08540.

68.     Defendant Accord Healthcare, Inc. ("Accord") is a corporation formed under the laws of the State of North Carolina with its principal place of business located at 1009 Slater Road, Suite 210B, Durham, North Carolina 27703.Defendant Sanofi-Aventis U.S. LLC is a

20

Delaware limited liability company, which has its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807.

69. At all times relevant hereto, Defendants worked in conjunction with each other and they were affiliated, related, jointly owned, and/or controlled entities or subsidiaries during the researching, analyzing, licensing, designing, testing, formulating, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising and/or selling the prescription drug known as TAXOTERE®.

70. At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

71. At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, and joint venture of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, and joint venture.

72. At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, which necessarily includes Illinois, either directly or indirectly through third parties, subsidiaries or related entities, the drug TAXOTERE®.

73. At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees,

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 21 of 85

21

agents, representatives and any and all other persons acting on their behalf.

74. At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, and joint venture of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, and joint venture.

75. At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, which necessarily includes Illinois, either directly or indirectly through third parties, subsidiaries or related entities, the drug TAXOTERE®.

## DEFENDANT'S INVOLVEMENT IN THE DEVELOPMENT, PATENTING, TESTING, MARKETING, AND SALE OF TAXOTERE®

76. TAXOTERE® is a drug used in the treatment of various forms of cancer, including but not limited to breast cancer. TAXOTERE® is a part of a family of drugs commonly referred to as taxanes.

77. Taxanes are diterpenes produced by the plants of the genus Taxus (yews) featuring a taxadiene core. Taxanes are widely used as chemotherapy agents. Taxane agents include TAXOL® and TAXOTERE®. Taxane agents also exist as cabazitaxel and in generic forms as well.

78. TAXOL®, which was developed, manufactured, and distributed by Bristol-Myers Squibb and is the main competitor drug to TAXOTERE®, was first approved by the U.S. Food and Drug Administration (FDA) in December 1992.

79. The drug and chemical compound that would become known as TAXOTERE® was invented and developed by Michel Colin, Daniel Guenard, Francoise Gueritte–Voegelein,

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 22 of 85

22

and Pierre Potier of Rhone-Poulence Santé. TAXOTERE® was conceived as an increased potency taxane.

80. The initial patent disclosing the formulation and computation of TAXOTERE® was issued to Rhone-Poulence Santé and subsequently assigned to Aventis Pharma S.A in March 1989.

81. In 1989, Sanofi issued the prior art publication F. Lavelle, *Experimental Properties of RP 56976*, a TAXOL® derivative. RP 56976 was the number that Rhone-Polunec assigned to docetaxel.

82. Sanofi began enrolling patients in Phase I clinical testing trials on June 21, 1990. The study reporting on these trials was called the "TAX 001" study, which continued until May 13, 1992. The results from the TAX 001 study were reported on May 24, 1994. Accordingly, Sanofi was not only involved in the patenting and assignment of the compound TAXOTERE®, but Sanofi was also directly involved in the clinical trials and testing of the compound TAXOTERE®. Accordingly, Sanofi-Aventis U.S. LLC's decisions to withhold information and data from those tests from physicians, healthcare providers, patients, and Plaintiffs in the United States.

83. Rhône-Poulenc Rorer S.A. initially sought FDA approval for TAXOTERE® in December 1994. The FDA's Oncologic Drugs Advisory Committee panel unanimously recommended the rejection of Rhône-Poulenc Rorer S.A.'s request for the approval of TAXOTERE®, because TAXOTERE® was more toxic than its competing drug TAXOL®, which had already received FDA approval, and because more studies of TAXOTERE®'s side effects were needed.

84. TAXOTERE® was ultimately approved by the FDA on May 14, 1996. According

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 23 of 85

to its product labeling, TAXOTERE® was "indicated for the treatment of patients with locally advanced or metastatic breast cancer after failure of prior chemotherapy."

85.    After the initial FDA approval, Sanofi sought and was granted FDA approval for additional indications for TAXOTERE®. Based on self-sponsored clinical trials, Sanofi claimed superiority over other chemotherapy products approved to treat breast cancer. These marketing claims included claims of superior efficacy over the lower potency taxane product TAXOL®, which was the primary competitor product to TAXOTERE®.

86.    Defendant McKesson Corporation distributed, packaged, labeled, and promoted TAXOTERE® in California and around the country throughout this period. U.S. Oncology, a specialty drug distributor now owned by McKesson, supported research and the subsequent promotion of TAXOTERE® at conferences including the annual meetings for the American Society of Clinical Oncology. McKesson continued this activity after it acquired U.S. Oncology in 2010.

87.    Contrary to Defendants' claims of superior efficacy, post market surveillance has shown that the more potent TAXOTERE® does not in fact offer increased efficacy or benefits over other taxanes, and in fact is more toxic. Defendants concealed and failed to warn about the existence of studies from the FDA, physicians, and patients that refuted Defendants' claims.

88.    A study of available clinical studies concerning the relative efficacy of taxanes in the treatment of breast cancer, published in the August 2007 journal *Cancer Treatment Review*, concluded that no significant differences were found in the efficacy and outcomes obtained with TAXOTERE® or TAXOL®.

89.    A study published in 2008 in the New England Journal of Medicine, titled *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, concluded that TAXOL® was

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 24 of 85

24

more effective than TAXOTERE® for patients undergoing standard adjuvant chemotherapy with doxorubicin and cyclophosphamide.

90.    Despite the publication of these studies, Defendants continued to make false and misleading statements promoting the "superior efficacy" of TAXOTERE® over the competing product TAXOL®. In June 2008, Sanofi-Aventis utilized marketing and promotional materials for TAXOTERE® at the annual meeting for the American Society of Clinical Oncology, comparing the efficacy of TAXOTERE® versus TAXOL®.    Specifically, Sanofi-Aventis utilized a "reprint carrier," citing a clinical study published in the August 2005 edition of the Journal of Clinical Oncology ("JCO study") and performed by researchers affiliated with Sanofi and US Oncology.  The study concluded that "TAXOTERE® demonstrated superior efficacy compared with TAXOL®, providing significant clinical benefit in terms of survival and time to disease progression, with a numerically higher response rate and manageable toxicities."

91.    Defendants' statements in the "reprint carrier" marketing the conclusions of the 2005 JCO study were false and/or misleading in light of the 2007 and 2008 studies finding that TAXOTERE® was not more effective than TAXOL® in the treatment of breast cancer.

92.    As a result of these false and misleading statements, in 2009, the FDA issued a warning letter to Sanofi-Aventis (the same company as Defendant Sanofi S.A. before Sanofi-Aventis changed its name in 2011) citing these unsubstantiated claims of superiority over TAXOL® stating:

> The Division of Drug Marketing, Advertising, and Communications (DDMAC) of the U.S. Food and Drug Administration (FDA) has reviewed a professional reprint carrier [US.DOC.07.04.078] for TAXOTERE®  (docetaxel) Injection Concentrate, Intravenous Infusion (docetaxel) submitted under cover of Form FDA 2253 by sanofi-aventis (SA) and obtained at the American Society of Clinical Oncology annual meeting in June 2008. The reprint carrier includes a

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 25 of 85

reprint[1] from the Journal of Clinical Oncology, which describes the TAX 311 study. This reprint carrier is false or misleading because it presents unsubstantiated superiority claims and overstates the efficacy of TAXOTERE® . Therefore, this material misbrands the drug in violation of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. 352(a) and 321(n). *Cf.* 21 CFR 202.1(e)(6)(i), (ii) & (e)(7)(ii).[2]

93.    A qui tam lawsuit was also filed against Sanofi-Aventis and its affiliates in the United States District Court for the Eastern District of Pennsylvania by a former employee accusing Sanofi-Aventis and its affiliates of engaging in a fraudulent marketing scheme, paying kickbacks, and providing other unlawful incentives to entice physicians to use TAXOTERE®. *See U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, Civil Action No. 02-2964 (E.D. Pa. 2015).

94.    Beginning in 1996, Sanofi-Aventis U.S. LLC and its predecessors and affiliates planned, directed, and engaged in a marketing scheme that promoted TAXOTERE® for off-label uses not approved by the FDA. The scheme took two forms: first, Defendants trained and directed their employees to misrepresent the safety and effectiveness of the off-label use of TAXOTERE® to expand the market for TAXOTERE® in unapproved settings; and second, Defendants paid healthcare providers illegal kickbacks in the form of sham grants, speaking fees, travel, entertainment, sports and concert tickets, preceptorship fees, and free reimbursement assistance to incentivize healthcare providers to prescribe TAXOTERE® for off-label uses. As a direct result of Defendants' fraudulent marketing scheme, Defendants dramatically increased revenue on sales of TAXOTERE® from $424 million in 2000 to $1.4 billion in 2004. *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 508 (E.D. Pa. 2015).

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 26 of 85

---

[1]    Jones SE, Erban J, Overmoyer B, et al. Randomized phase III study of docetaxel compared with paclitaxel in metastatic breast cancer. *J Clin Oncol.* 2005;23(24):5542-51.
[2]    Correspondence signed by Keith Olin, Pharm.D., Regulatory Review Officer in the FDA's Division of Drug Marketing, Advertising and Communications to MaryRose Salvacion, Director of US Regulatory Affairs Marketed Products at Sanofi-Aventis.

95.     As a direct result of their wrongful conduct and illegal kickback schemes, Defendants directly caused thousands of individuals to be exposed to TAXOTERE®'s increased toxicity as compared to other available less toxic products such as TAXOL®.

96.     As a direct result of their aforementioned conduct, Defendants caused thousands of individuals to be exposed to increased frequency and more severe side effects, including but not limited to disfiguring permanent alopecia (hair loss).

### B.     GENERIC NON-BIOEQUIVALENT DEFENDANTS' CONDUCT

97.     Hospira Defendants filed for a NDA with the FDA for a generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel anhydrous. The FDA granted Hospira's NDA on or about March 8, 2011 and Hospira put the docetaxel anhydrous on the market on or about March 8, 2011.

98.     Defendant McKesson filed an NDA with the FDA for a generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel anhydrous. The FDA granted McKesson's NDA on or about June 8, 2011, and McKesson put docetaxel anhydrous on the market on or about June 8, 2011.

99.     Defendant Sandoz filed an NDA with the FDA for a generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel. The FDA granted Sandoz's NDA on or about July 22, 2015 and Sandoz put docetaxel on the market on or about July 22, 2015.

100.    Upon information and belief, Defendant Accord filed for two (3) NDAs with the FDA for generic non-bioequivalents of Taxotere (docetaxel).

101.    Upon information and belief, Defendant Accord was approved by the FDA for the first generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel on or about June 30, 2011 and Accord put docetaxel on the market on or about June 30, 2011.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 27 of 85

27

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 28 of 85

102.  Defendant Accord was approved by the FDA for the second generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel anhydrous (20 mg/0.5 mL and 80 mg/2 mL) on or about July 1, 2012 and Accord put docetaxel anhydrous on the market on or about July 1, 2012.

103.  Upon information and belief, Defendant Accord was approved by the FDA for the third generic non-bioequivalent of Taxotere (docetaxel) in another form of docetaxel anhydrous in a more concentrated form, on or about May 15, 2013 and Accord put the mor concentrated docetaxel anhydrous on the market on or about May 15, 2013.

## DEFENDANTS' COVER UP IN THE UNITED STATES REGARDING THE CAUSAL RELATIONSHIP BETWEEN TAXOTERE® AND PERMANENT DISFIGURING HAIR LOSS

104.  Although temporary alopecia, or hair loss, is a common side effect related to chemotherapy drugs, permanent alopecia is not. Defendants, through their publications and marketing materials, misled Plaintiffs, the public, and the medical community to believe that, as with other chemotherapy drugs that cause alopecia, patients' hair would grow back.

105.  Defendants knew or should have known that the rate of permanent alopecia related to TAXOTERE® was far greater than with other products available to treat the same condition as Defendants' product.

106.  Permanent baldness (permanent alopecia) is a disfiguring condition, especially for women. Women who experienced disfiguring permanent alopecia as a result of the use of TAXOTERE® suffer great mental anguish as well as economic damages, including but not limited to loss of work or inability to work due to significant psychological damage.

107.  Although women might accept the possibility of permanent baldness as a result of the use of TAXOTERE® if no other product were available to treat their cancer, this

28

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 29 of 85

was not the case. Before Defendants' wrongful conduct resulted in tens of thousands of women being exposed to the adverse side effects of TAXOTERE®, there were already similar products on the market that were at least as effective as TAXOTERE® and did not subject female users to the same risk of disfiguring permanent alopecia as does TAXOTERE®.

108. Beginning in the late 1990s, Sanofi S.A. and Aventis Pharma S.A. sponsored and/or were aware of a study titled the GEICAM 9805 study. In 2005, Sanofi S.A. and Aventis Pharma S.A. knew that the GEICAM 9805 study demonstrated that 9.2% of patients who took TAXOTERE® had persistent alopecia, or hair loss, for up to 10 years and 5 months, and in some cases, longer, after taking TAXOTERE®. Sanofi S.A. and Aventis Pharma S.A. knowingly, intentionally, and wrongfully withheld these results contained in the GEICAM 9805 study from physicians, healthcare providers, patients, and Plaintiffs in the United States.

109. In 2006, Defendants knew or should have known that a Denver-based oncologist in the United States had observed that an increased percentage (6.3%) of his patients who had taken TAXOTERE® suffered from permanent disfiguring hair loss for years after the patients had stopped taking TAXOTERE®.

110. Despite Defendants' knowledge of the relevant findings from the GEICAM 9805 study, as well as reports from patients who had taken TAXOTERE® and suffered from permanent disfiguring hair loss, Defendants failed to provide accurate information and proper warnings to physicians, healthcare providers, and patients in the United States, including Plaintiffs, that patients who take TAXOTERE® are at a significantly increased risk of suffering from permanent disfiguring hair loss.

111. Defendants chose to withhold this information in the United States despite advising physicians, patients, and regulatory agencies in other countries, including the European

Union and Canada, that TAXOTERE® causes an increased risk of permanent disfiguring hair loss. Defendants instead continued to warn or advise physicians, healthcare providers, patients, and Plaintiffs in the United States only with the generic, vague, and insufficient warning that "hair generally grows back" after taking TAXOTERE®.

112.   Users of TAXOTERE® were not presented with the opportunity to make an informed choice as to whether the benefits of TAXOTERE® were worth its associated risks. Defendants engaged in a pattern of deception by overstating the benefits of TAXOTERE® as compared to other alternatives while simultaneously failing to warn of the risk of disfiguring permanent alopecia.

113.   Although Defendants publish information in other countries to individual patients as well as regulatory agencies related to TAXOTERE® and the risk of permanent alopecia, the words permanent alopecia or permanent hair loss do not appear in any information published by Defendants in the United States.

114.   As a direct result of Defendants' wrongful and deceptive acts, thousands of women were exposed to the risk of disfiguring permanent alopecia without any warning and without any additional benefit.

115.   As a direct result of Defendants' failure to warn patients of the risk of disfiguring permanent alopecia in the United States, thousands of women, including Plaintiff, as well as their health care providers, were deprived of the opportunity to make an informed decision as to whether the benefits of using TAXOTERE® over other comparable products was justified.

116.   Defendants prayed on one of the most vulnerable groups of individuals at the most difficult time in their lives. Defendants obtained billions of dollars in increased

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 30 of 85

30

revenues at the expense of unwary cancer victims simply hoping to survive their condition and return to a normal life.

117. TAXOTERE® was defective in its design. TAXOTERE® was designed as an increased potency Taxane. This increased potency resulted in increased toxicity, which can be directly related to increased adverse events. The most likely reason Defendants designed the increased potency Taxane was to enable them to obtain a patent (and the concurrent market advantage) on a product that in fact was not novel but instead only more dangerous.

118. In other countries, Defendants published information to individual patients and regulatory agencies about TAXOTERE® and the risk of permanent alopecia. But until December 2015, the words permanent alopecia or permanent hair loss did not appear in any information published by Defendants in the United States.

119. In December 2015, the FDA changed the safety labeling for TAXOTERE® (docetaxel), to add a sentence: "Cases of permanent alopecia have been reported." This sentence appears on page 33 of the label, in the Full Prescribing Information. On the first page, which is the Highlights of Prescribing Information, only "alopecia" is listed as an adverse reaction; "permanent alopecia" is not.

120. As a direct result of Defendants' wrongful and deceptive acts, tens of thousands of women were exposed to the risk of disfiguring permanent alopecia without any warning and without any additional benefit.

121. As a direct result of Defendants' failure to warn patients of the risk of disfiguring permanent alopecia in the United States, thousands of women, including Plaintiffs, as well as their health care providers, were deprived of the opportunity to make an informed

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 31 of 85

decision as to whether the benefits of using TAXOTERE® over other comparable products was justified.

122.    Defendants preyed on one of the most vulnerable groups of individuals at the most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at the expense of unwary cancer victims simply hoping to survive their condition and return to a normal life.

123.    Plaintiffs, as well as numerous other women, were the innocent victims of Defendants' greed, recklessness, and willful and wanton conduct.

## NATURE OF THE CLAIMS

124.    Despite the fact that Defendants disclosed risks associated with TAXOTERE® and permanent alopecia to patients and regulatory agencies in other countries, Defendants failed to either alert Plaintiffs, the public, and the scientific community in the United States or perform further investigation into the safety of TAXOTERE® regarding the side effect of disfiguring permanent alopecia. Defendants failed to update the warnings for TAXOTERE®, and they failed to disclose the results of additional studies as Defendants learned new facts regarding the defects and risks of their product.

125.    In particular, Defendants:

(a)    failed to disclose their investigation and research from 2005, including but not limited to the results of the GEICAM 9805 study, and failed to further investigate, research, study, and define fully and adequately the safety profile of TAXOTERE® in response to these studies;

(b)    failed to provide adequate warnings about the true safety risks associated with the use of TAXOTERE®;

(c)    failed to provide adequate warning regarding the pharmacokinetic and pharmacodynamic variability of TAXOTERE® and its effects on the degree or severity of side effects related to permanent alopecia;

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 32 of 85

32

(d)     failed to disclose in the "Warnings" Section that permanent alopecia is a frequent side effect associated with the use of TAXOTERE®;

(e)     failed to advise prescribing physicians, such as Plaintiffs' physicians, to instruct patients that permanent alopecia was a side effect, much less a frequent side effect, linked to TAXOTERE®;

(f)     failed to provide adequate instructions on how to intervene and/or reduce the risk of permanent alopecia related to the use of TAXOTERE®;

(g)     failed to provide adequate warnings and information related to the increased risks of permanent alopecia in certain genome groups;

(h)     failed to provide adequate warnings regarding the increased risk of permanent alopecia with the use of TAXOTERE® as compared to other products intended to treat the same conditions as TAXOTERE®; and

(i)     failed to include a **"BOXED WARNING"** related to permanent or persistent alopecia.

126.    During the years since first marketing TAXOTERE® in the U.S., Defendants modified the U.S. labeling and prescribing information for TAXOTERE® on multiple occasions. Defendants failed, however, to include any warning whatsoever related to permanent alopecia despite Defendants' awareness of the frequency and severity of this side effect.

127.    Before applying for and obtaining approval of TAXOTERE®, Defendants knew or should have known that consumption of TAXOTERE® was associated with and/or would cause disfiguring side effects including disfiguring permanent alopecia.

128.    Despite knowing that TAXOTERE® was likely to result in increased rates of alopecia and disfiguring permanent alopecia, Defendants produced, marketed, and distributed TAXOTERE® in the United States.

129.    Defendants failed to adequately conduct complete and proper testing of TAXOTERE® prior to filing their New Drug Application for TAXOTERE®.

130.    From the date Defendants received FDA approval to market TAXOTERE®, Defendants made, distributed, marketed, and sold TAXOTERE® without adequate warning to

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 33 of 85

33

Plaintiffs or Plaintiffs' prescribing physicians that TAXOTERE® was associated with disfiguring permanent alopecia.

131.    Defendants ignored the association between the use of TAXOTERE® and the risk of disfiguring permanent alopecia.

132.    Defendants failed to disclose information that they possessed regarding their failure to adequately test and study TAXOTERE® related to the side effect of disfiguring permanent alopecia. Plaintiffs and their healthcare providers could not have discovered Defendants' false representations and failures to disclose information through the exercise of reasonable diligence.

133.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## ESTOPPEL FROM PLEADING STATUTES OF LIMITATIONS OR REPOSE

134.    Plaintiffs incorporate by reference the averments of the preceding paragraphs of the Complaint as if fully set forth at length herein.

135.    Plaintiffs are within the applicable statutes of limitations for the claims presented herein because Plaintiffs did not discover the defects and unreasonably dangerous condition of Defendants' TAXOTERE® and the risks associated with its use in the form of disfiguring

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 34 of 85

34

permanent alopecia, and could not reasonably have discovered the defects and unreasonably dangerous condition of Defendants' TAXOTERE® and the risks associated with its use, due to the Defendants' failure to warn, suppression of important information about the risks of the drug, including but not limited to the true risk benefit profile, and the risk of disfiguring permanent alopecia and damages known by Defendants to result from the use of TAXOTERE®, and other acts and omissions.

136.    In addition, Defendants are estopped from relying on any statutes of limitations or repose by virtue of their acts of fraudulent concealment, affirmative misrepresentations and omissions, which include Defendants' intentional concealment from Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public that Defendants' TAXOTERE® was defective, unreasonably dangerous and carried with it the serious risk of developing the injuries Plaintiffs have suffered while aggressively and continually marketing and promoting TAXOTERE® as safe and effective.  This includes, but is not limited to, Defendants' failure to disclose and warn of the risk of disfiguring permanent alopecia and injuries known by Defendants to result from use of TAXOTERE®, for example, and not by way of limitation, internal concern about reports and studies finding an increased risk of disfiguring permanent alopecia; suppression of information about these risks and injuries from physicians and patients, including Plaintiffs; use of sales and marketing documents and information that contained information contrary to the internally held knowledge regarding the aforesaid risks and injuries; and overstatement of the efficacy and safety of TAXOTERE®.

137.    Defendants had a duty to disclose that TAXOTERE® was defective, unreasonably dangerous and that the use of Defendants' TAXOTERE® carried with it the

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 35 of 85

serious risk of developing disfiguring permanent alopecia as the Plaintiff has suffered. Defendants breached that duty.

138. Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public, had no knowledge of, and no reasonable way of discovering, the defects found in Defendants' TAXOTERE® or the true risks associated with her use at the time she purchased and used Defendants' TAXOTERE®.

139. Defendants did not notify, inform, or disclose to Plaintiffs, Plaintiffs' prescribing health care professionals or the general consuming public that Defendants' TAXOTERE® was defective and that its use carried with it the serious risk of developing the injuries Plaintiffs has suffered and complained of herein.

140. Because Defendants failed in their duty to notify Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public that their TAXOTERE® was defective and, further, actively attempted to conceal this fact, Defendants should be estopped from asserting defenses based on statutes of limitation or repose.

141. Accordingly, Plaintiffs file this lawsuit within the applicable statutes of limitations, Plaintiffs could not by exercise of reasonable diligence have discovered any wrongdoing, nor could have discovered the causes of their injuries at an earlier time, and when Plaintiffs' injuries were discovered, their causes were not immediately known or knowable based on the lack of necessary information, which was suppressed by the Defendants. Further, the relationship of Plaintiffs' injuries to TAXOTERE® exposure through the Defendants' drug was inherently difficult to discover, in part due to the Defendants' knowing suppression of important safety information. Consequently, the discovery rule should be applied to toll the running of the

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 36 of 85

36

statutes of limitations until Plaintiffs discovered, or by the exercise of reasonable diligence should have discovered, that Plaintiffs may have a basis for an actionable claim.

## PLAINTIFFS' DIAGNOSIS, TREATMENT, AND
## RESULTING DISFIGURING PERMANENT ALOPECIA

142. Plaintiff VIRGIE ANDERSON was diagnosed with breast cancer. Neither VIRGIE ANDERSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, VIRGIE ANDERSON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, VIRGIE ANDERSON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

143. Plaintiff LINDA D. ABRAMS was diagnosed with breast cancer. Neither LINDA D. ABRAMS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, LINDA D. ABRAMS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, LINDA D. ABRAMS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

144. Plaintiff FERIAL ALAWAR was diagnosed with breast cancer. Neither FERIAL ALAWAR nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 37 of 85

Accordingly, FERIAL ALAWAR underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, FERIAL ALAWAR suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

145. Plaintiff CATHY ANDERSON was diagnosed with breast cancer. Neither CATHY ANDERSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CATHY ANDERSON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, CATHY ANDERSON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

146. Plaintiff JERRY ANDERSON was diagnosed with breast cancer. Neither JERRY ANDERSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, JERRY ANDERSON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, JERRY ANDERSON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 38 of 85

38

147. Plaintiff LORETTA ANDERSON was diagnosed with breast cancer. Neither LORETTA ANDERSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, LORETTA ANDERSON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, LORETTA ANDERSON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

148. Plaintiff ROSE ANDERSON was diagnosed with breast cancer. Neither ROSE ANDERSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, ROSE ANDERSON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, ROSE ANDERSON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

149. Plaintiff JANET ANNE BLOOM was diagnosed with breast cancer. Neither JANET ANNE BLOOM nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, JANET ANNE BLOOM underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, JANET ANNE BLOOM suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 39 of 85

39

As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

150.    Plaintiff JUDY BONB was diagnosed with breast cancer. Neither JUDY BONB nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, JUDY BONB underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, JUDY BONB suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

151.    Plaintiff GENEVA BOUNDS was diagnosed with breast cancer. Neither GENEVA BOUNDS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, GENEVA BOUNDS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, GENEVA BOUNDS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

152.    Plaintiff BEVERLY BREAUX was diagnosed with breast cancer. Neither BEVERLY BREAUX nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 40 of 85

TAXOTERE®. Accordingly, BEVERLY BREAUX underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, BEVERLY BREAUX suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

153. Plaintiff LINDA BROADIE was diagnosed with breast cancer. Neither LINDA BROADIE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, LINDA BROADIE underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, LINDA BROADIE suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

154. Plaintiff VANETTA BROWN was diagnosed with breast cancer. Neither VANETTA BROWN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, VANETTA BROWN underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, VANETTA BROWN suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED 12/13/2017 1:33 PM 2017-L-012694 PAGE 41 of 85

41

155.     Plaintiff DELLA BUCKLEY was diagnosed with breast cancer. Neither DELLA BUCKLEY nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, DELLA BUCKLEY underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, DELLA BUCKLEY suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

156.     Plaintiff HELEN BUNCHE was diagnosed with breast cancer. Neither HELEN BUNCHE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, HELEN BUNCHE underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, HELEN BUNCHE suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

157.     Plaintiff FRANCIS CARROLL was diagnosed with breast cancer. Neither FRANCIS CARROLL nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.  Accordingly, FRANCIS CARROLL underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, FRANCIS CARROLL suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 42 of 85

42

the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

158. Plaintiff LINDA CARROLL was diagnosed with breast cancer. Neither LINDA CARROLL nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, LINDA CARROLL underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, LINDA CARROLL suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

159. Plaintiff CLARA CARSON was diagnosed with breast cancer. Neither CLARA CARSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CLARA CARSON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, CLARA CARSON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

160. Plaintiff BRENDA K. CARTER was diagnosed with breast cancer. Neither BRENDA K. CARTER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, BRENDA K. CARTER underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, BRENDA K. CARTER suffered

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 43 of 85

43

from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

161. Plaintiff MARY K. CARTER was diagnosed with breast cancer. Neither MARY K. CARTER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, MARY K. CARTER underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MARY K. CARTER suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

162. Plaintiff PAULETTE CARTER was diagnosed with breast cancer. Neither PAULETTE CARTER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, PAULETTE CARTER underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, PAULETTE CARTER suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

163. Plaintiff JUANITA CHAMBERS was diagnosed with breast cancer. Neither JUANITA CHAMBERS nor her treating healthcare providers were aware of or informed by

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 44 of 85

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 45 of 85

Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, JUANITA CHAMBERS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, JUANITA CHAMBERS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

164.	Plaintiff CYNTHIA CHAPMAN was diagnosed with breast cancer. Neither CYNTHIA CHAPMAN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CYNTHIA CHAPMAN underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, CYNTHIA CHAPMAN suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

165.	Plaintiff GLORIA J. CHARETTE was diagnosed with breast cancer. Neither GLORIA J. CHARETTE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, GLORIA J. CHARETTE underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, GLORIA J. CHARETTE suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in

45

the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

166. Plaintiff MARY Y. CHARLESTON was diagnosed with breast cancer. Neither MARY Y. CHARLESTON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, MARY Y. CHARLESTON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MARY Y. CHARLESTON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

167. Plaintiff MELODY CLARK was diagnosed with breast cancer. Neither MELODY CLARK nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, MELODY CLARK underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MELODY CLARK suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

168. Plaintiff MARY COLLINS was diagnosed with breast cancer. Neither MARY COLLINS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 46 of 85

46

Accordingly, MARY COLLINS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MARY COLLINS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

169. Plaintiff ASHLEY CONWAY was diagnosed with breast cancer. Neither ASHLEY CONWAY nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, ASHLEY CONWAY underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, ASHLEY CONWAY suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

170. Plaintiff MAXINE CRAFTON was diagnosed with breast cancer. Neither MAXINE CRAFTON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, MAXINE CRAFTON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MAXINE CRAFTON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 47 of 85

47

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 48 of 85

171. Plaintiff DAWN CREECH was diagnosed with breast cancer. Neither DAWN CREECH nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, DAWN CREECH underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, DAWN CREECH suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

172. Plaintiff CHRISTIANNA CROCKETT was diagnosed with breast cancer. Neither CHRISTIANNA CROCKETT nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CHRISTIANNA CROCKETT underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, CHRISTIANNA CROCKETT suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

173. Plaintiff VIVIAN L. CROSBY was diagnosed with breast cancer. Neither VIVIAN L. CROSBY nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, VIVIAN L. CROSBY underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, VIVIAN L. CROSBY suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®.

As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

174. Plaintiff CAROL A. CRUMBLIN was diagnosed with breast cancer. Neither CAROL A. CRUMBLIN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CAROL A. CRUMBLIN underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, CAROL A. CRUMBLIN suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

175. Plaintiff YOLANDA DANKINS was diagnosed with breast cancer. Neither YOLANDA DANKINS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, YOLANDA DANKINS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, YOLANDA DANKINS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

176. Plaintiff SANDRA DANTZLER was diagnosed with breast cancer. Neither SANDRA DANTZLER nor her treating healthcare providers were aware of or informed by

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 49 of 85

Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, SANDRA DANTZLER underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, SANDRA DANTZLER suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

177. Plaintiff MARY B DAVENPORT was diagnosed with breast cancer. Neither MARY B DAVENPORT nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, MARY B DAVENPORT underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MARY B DAVENPORT suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

178. Plaintiff DOROTHY L. DAVIS was diagnosed with breast cancer. Neither DOROTHY L. DAVIS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, DOROTHY L. DAVIS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, DOROTHY L. DAVIS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in

ELECTRONICALLY FILED 12/13/2017 1:33 PM 2017-L-012694 PAGE 50 of 85

50

the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

179. Plaintiff JENNIFER DAVIS was diagnosed with breast cancer. Neither JENNIFER DAVIS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, JENNIFER DAVIS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, JENNIFER DAVIS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

180. Plaintiff REGINA DAVIS was diagnosed with breast cancer. Neither REGINA DAVIS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, REGINA DAVIS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, REGINA DAVIS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

181. Plaintiff RUBY L. DAVIS was diagnosed with breast cancer. Neither RUBY L. DAVIS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, RUBY L. DAVIS underwent chemotherapy that included TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 51 of 85

51

Following the completion of chemotherapy, RUBY L. DAVIS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

182.    Plaintiff CHARMAINE DIXON was diagnosed with breast cancer. Neither CHARMAINE DIXON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CHARMAINE DIXON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, CHARMAINE DIXON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

183.    Plaintiff DOROTHY DIXON was diagnosed with breast cancer. Neither DOROTHY DIXON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, DOROTHY DIXON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, DOROTHY DIXON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 52 of 85

184.    Plaintiff SELINA M. DIXON was diagnosed with breast cancer. Neither SELINA M. DIXON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, SELINA M. DIXON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, SELINA M. DIXON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

185.    Plaintiff FRANCES M. DOUGAN was diagnosed with breast cancer. Neither FRANCES M. DOUGAN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, FRANCES M. DOUGAN underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, FRANCES M. DOUGAN suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

186.    Plaintiff JENNIFER W. EDWARDS was diagnosed with breast cancer. Neither JENNIFER W. EDWARDS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.  Accordingly, JENNIFER W. EDWARDS underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, JENNIFER W. EDWARDS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy

ELECTRONICALLY FILED 12/13/2017 1:33 PM 2017-L-012694 PAGE 53 of 85

with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

187. Plaintiff GEORGETTE ENWRIGHT was diagnosed with breast cancer. Neither GEORGETTE ENWRIGHT nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, GEORGETTE ENWRIGHT underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, GEORGETTE ENWRIGHT suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

188. Plaintiff CAROLYN K. ESTES was diagnosed with breast cancer. Neither CAROLYN K. ESTES nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CAROLYN K. ESTES underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, CAROLYN K. ESTES suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

189. Plaintiff ERMA FARRINGTON was diagnosed with breast cancer. Neither ERMA FARRINGTON nor her treating healthcare providers were aware of or informed by

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 54 of 85

54

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 55 of 85

Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, ERMA FARRINGTON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, ERMA FARRINGTON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

190. Plaintiff MARY FAULKNER was diagnosed with breast cancer. Neither MARY FAULKNER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, MARY FAULKNER underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MARY FAULKNER suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

191. Plaintiff MARTHA A. FOSTER was diagnosed with breast cancer. Neither MARTHA A. FOSTER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, MARTHA A. FOSTER underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MARTHA A. FOSTER suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 56 of 85

the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

## FIRST CLAIM FOR RELIEF
### (Product Liability for Negligence – Against All Defendants)

192.    Plaintiffs repeat, reiterates, and re-alleges all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

193.    Defendants had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, and/or distribution of TAXOTERE® into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

194.    Defendants failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of TAXOTERE® into interstate commerce in that Defendants knew or should have known that using TAXOTERE® created a high risk of unreasonable, disfiguring side effects, including personal injuries that are permanent and lasting in nature such as disfiguring permanent alopecia, mental anguish, and diminished enjoyment of life, economic loss, and loss of economic opportunity.

195.    The negligence of Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

a)  Manufacturing, producing, promoting, formulating, creating, and/or designing TAXOTERE® without thoroughly testing it;

b)  Manufacturing, producing, promoting, formulating, creating, and/or designing TAXOTERE® without adequately testing it;

c)  Not conducting sufficient testing programs to determine whether or not TAXOTERE® was safe for use in that Defendants knew or should have known that TAXOTERE® was unsafe and unfit for use by reason of the dangers to its users;

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 57 of 85

d) Selling TAXOTERE® without disclosing its dangers and risks and/or making proper and sufficient tests to determine the dangers and risks to its users;

e) Negligently failing to adequately and correctly warn Plaintiff, Plaintiffs' physicians, the public, and the medical and healthcare profession of the dangers of TAXOTERE®;

f) Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, TAXOTERE®;

g) Failing to test TAXOTERE® and/or failing to adequately, sufficiently, and properly test TAXOTERE®;

h) Negligently advertising and recommending the use of TAXOTERE® without sufficient knowledge as to its dangerous propensities;

i) Negligently representing that TAXOTERE® was safe for use for its intended purpose, when, in fact, it was unsafe;

j) Negligently and falsely representing that TAXOTERE® was superior to other commercially available products designed to treat the same forms of cancer TAXOTERE® was designed to treat;

k) Negligently designing TAXOTERE® in a manner that was dangerous to its users;

l) Negligently manufacturing TAXOTERE® in a manner that was dangerous to its users;

m) Negligently producing TAXOTERE® in a manner that was dangerous to its users;

n) Negligently assembling TAXOTERE® in a manner that was dangerous to its users;

o) Concealing information from Plaintiffs, Plaintiffs' physicians, the public, and the FDA in knowing that TAXOTERE® was unsafe, dangerous, and/or non-conforming with FDA regulations; and

p) Improperly concealing from and/or misrepresenting information to Plaintiffs, Plaintiffs' physicians, other healthcare professionals, and/or the FDA concerning the severity of risks and dangers of TAXOTERE® compared to other forms of treatment for breast cancer.

57

196.     Defendants underreported, underestimated, and downplayed the serious dangers

and risk associated with TAXOTERE®.

197.     Defendants negligently conveyed that the safety risks and/or dangers of

TAXOTERE® were comparable with other forms of treatment for the same conditions for which

TAXOTERE® was prescribed to treat.

198.     Defendants were negligent in the designing, researching, supplying,

manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing, and

selling of TAXOTERE® in that they:

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 58 of 85

   a)  Failed to use due care in designing and manufacturing TAXOTERE® so as to avoid
       the aforementioned risks to individuals when TAXOTERE® was used for the
       treatment of breast cancer;

   b)  Failed to accompany their product with proper and/or accurate warnings regarding all
       possible adverse side effects associated with the use of TAXOTERE®;

   c)  Failed to accompany their product with proper warnings regarding all possible
       adverse side effects concerning the risks and dangers associated with TAXOTERE®;

   d)  Failed to accompany their product with accurate warnings regarding the risks of all
       possible adverse side effects concerning TAXOTERE®;

   e)  Failed to warn Plaintiffs and Plaintiffs' physicians of the severity and duration of
       such adverse effects, as the warnings given did not accurately reflect the symptoms,
       or severity, of the side effects;

   f)  Failed to conduct adequate testing, including pre-clinical and clinical testing and
       post-marketing surveillance, to determine the safety, dangers, and risks associated
       with TAXOTERE®;

   g)  Failed to warn Plaintiffs and Plaintiffs' physicians before actively encouraging the
       sale of TAXOTERE®, either directly or indirectly, orally or in writing, about the
       need for more comprehensive and regular medical monitoring than usual to ensure
       early discovery of potentially serious side effects; and

   h)  Were otherwise careless and/or negligent.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 59 of 85

199.     Despite the fact that Defendants knew or should have known that TAXOTERE® caused unreasonably dangerous side effects, Defendants continued and continue to market, manufacture, distribute, and/or sell TAXOTERE® to consumers, including Plaintiff.

200.     Defendants negligently and improperly failed to perform sufficient tests, forcing Plaintiffs, Plaintiffs' physicians, and/or hospitals to rely on safety information that did not accurately represent the risks and benefits associated with the use of TAXOTERE® as compared to other products already commercially available to treat the same types of cancer TAXOTERE® was designed to treat.

201.     Defendants knew or should have known that consumers such as Plaintiff would use their product and would foreseeably suffer injury as a result of Defendants' failure to exercise reasonable care, as set forth above.

202.     Defendants' negligence was the proximate cause of Plaintiff's injuries, harms, damages, and losses.

203.     As a direct and proximate result of the use of TAXOTERE®, Plaintiff experienced disfiguring permanent alopecia.

204.     As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SECOND CLAIM FOR RELIEF
### (Strict Products Liability – Design and Manufacturing Defects – Against All Defendants)

205.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

206.    At all times relevant, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have recently acquired the entities that have designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed TAXOTERE® as hereinabove described that was used by Plaintiffs.

207.    TAXOTERE® was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

208.    At those times, TAXOTERE® was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, Plaintiff.

209.    The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of TAXOTERE®.

210.    TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design and/or formulation, in that, when it left the hands of Defendants, manufacturers, and/or suppliers, it was unreasonably dangerous, and it was more dangerous and posed risk greater than an ordinary consumer would expect.

211.    At all times relevant, TAXOTERE® was in a defective condition and unsafe, and Defendants knew or had reason to know that TAXOTERE® was defective and unsafe, especially when used in the form and manner as provided by Defendants.

212.    Defendants knew, or should have known, that at all times relevant, TAXOTERE® was in a defective condition and was and is inherently dangerous and unsafe.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 60 of 85

60

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 61 of 85

213.    At the time of Plaintiff's use of TAXOTERE®, the TAXOTERE® was being used for the purposes and in a manner normally intended, namely for the treatment of breast cancer.

214.    Defendants with this knowledge voluntarily designed TAXOTERE® in a dangerous condition for use by the public, and in particular, Plaintiffs.

215.    Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

216.    In creating TAXOTERE®, Defendants created a product that was and is unreasonably dangerous for its normal, intended use, and a safer alternative design existed.

217.    The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was manufactured defectively and was unreasonably dangerous to its intended users.

218.    The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants reached the intended users in the same defective and unreasonably dangerous condition in which Defendants' TAXOTERE® was manufactured.

219.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product that created an unreasonable risk to the health of consumers and to Plaintiffs in particular; and Defendants are therefore strictly liable for the injuries sustained by Plaintiffs.

220.    Plaintiffs and Plaintiffs' physicians could not, by the exercise of reasonable care, have discovered TAXOTERE®'s defects mentioned herein and perceived its danger.

221.    The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that the product created a risk of serious and dangerous side effects including disfigurement as well as other severe and personal injuries that are permanent and lasting in nature, and Defendants failed to adequately warn of these risks.

222. The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings and/or inadequate testing.

223. The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including disfigurement, as well as other severe and permanent health consequences from TAXOTERE®, they failed to provide adequate warnings to users or consumers of the product, and they continued to improperly advertise, market, and/or promote TAXOTERE®.

224. By reason of the foregoing, Defendants are strictly liable to Plaintiffs for the manufacturing, marketing, promoting, distribution, and selling of TAXOTERE®, a defective product.

225. Defendants' defective design, manufacturing defect, and inadequate warnings of TAXOTERE® were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

226. The defects in Defendants' drug TAXOTERE® were a producing cause and a substantial factor in causing Plaintiffs' injuries.

227. As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 62 of 85

## THIRD CLAIM FOR RELIEF
### (Strict Products Liability – Failure to Warn– Against All Defendants)

228. Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

229. The TAXOTERE® designed, formulated, produced, manufactured, sold, marketed, distributed, supplied and/or placed into the stream of commerce by Defendants was defective in that it failed to include adequate warnings regarding all adverse side effects associated with the use of TAXOTERE®. The warnings given by Defendants did not sufficiently and/or accurately reflect the symptoms, type, scope, severity, or duration of the side effects and, in particular, the risks of disfiguring permanent alopecia. As the holder for the RLD of brand-name TAXOTERE®, the Sanofi Defendants supplied the labeling for Winthrop U.S.'s generic version of TAXOTERE®. This labeling was defective because it failed to adequately warn of the risk of disfiguring permanent alopecia.

230. Defendants failed to provide adequate warnings to physicians and users, including Plaintiff's physicians and Plaintiff, of the increased risk of disfiguring permanent alopecia associated with TAXOTERE®, and Defendants aggressively and fraudulently promoted the product to physicians.

231. As a direct and proximate result of Defendants' failure to warn of the potentially severe adverse effects of TAXOTERE®, Plaintiffs suffer from disfiguring permanent alopecia and other conditions.

232. As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses;

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 63 of 85

63

past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

### FOURTH CLAIM FOR RELIEF
### (Breach of Express Warranty – Against All Defendants)

233.   Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

234.   Defendants expressly warranted that TAXOTERE® was safe and well accepted by users.

235.   TAXOTERE® does not conform to these express representations, because TAXOTERE® is not safe and has numerous serious side effects, many of which were not accurately warned about by Defendants.

236.   As a direct and proximate result of the breach of these warranties, Plaintiff suffered and will continue to suffer severe and permanent personal injuries, disfigurement, harms, and losses.

237.   Plaintiffs relied on Defendants' express warranties.

238.   Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of Defendants for use of TAXOTERE® in recommending, prescribing, and/or dispensing TAXOTERE®. Defendants breached the aforesaid express warranties, as their drug TAXOTERE® was and is defective.

239.   Defendants expressly represented to Plaintiffs, Plaintiffs' physicians, and/or healthcare providers that TAXOTERE® was safe and fit for use for the purposes intended, that it

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 64 of 85

64

was of merchantable quality, that it did not produce any dangerous side effects in excess of those risks associated with other forms of treatment for cancer, that the side effects it did produce were accurately reflected in the warnings, and that it was adequately tested and fit for its intended use.

240.    Defendants knew or should have known that, in fact, their representations and warranties were false, misleading, and untrue in that TAXOTERE® was not safe and fit for the use intended, and, in fact, TAXOTERE® produced serious injuries to the users that were not accurately identified and represented by Defendants.

241.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 65 of 85

**FIFTH CLAIM FOR RELIEF**
**(Breach of Implied Warranty – Against All Defendants)**

242.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

243.    At all times relevant, Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted, and sold TAXOTERE® and/or have recently acquired the entities that have manufactured, compounded, portrayed, distributed,

65

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 66 of 85

recommended, merchandized, advertised, promoted, and sold TAXOTERE® for the treatment of various forms of cancer.

244. At the time Defendants marketed, sold, and distributed TAXOTERE® for use by Plaintiff, Defendants knew of the use for which TAXOTERE® was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

245. Defendants impliedly represented and warranted to the users of TAXOTERE® and their physicians, and/or healthcare providers that TAXOTERE® was safe and of merchantable quality and fit for the ordinary purpose for which it was to be used.

246. Defendants' aforementioned representations and warranties were false, misleading, and inaccurate in that TAXOTERE® was unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

247. Plaintiffs, Plaintiffs' physicians, members of the medical community, and healthcare professionals relied on this implied warranty of merchantability of fitness for a particular use and purpose.

248. Plaintiffs, Plaintiffs' physicians, and Plaintiff's healthcare professionals reasonably relied upon the skill and judgment of Defendants as to whether TAXOTERE® was of merchantable quality and safe and fit for its intended use.

249. TAXOTERE® was placed into the stream of commerce by Defendants in a defective, unsafe, and inherently dangerous condition.

250.    TAXOTERE® was expected to and did reach users, handlers, and persons coming into contact with TAXOTERE® without substantial change in the condition in which it which it was sold.

251.    Defendants breached the aforementioned implied warranties, as their drug TAXOTERE® was not fit for its intended purposes and uses.

252.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 67 of 85

### SIXTH CLAIM FOR RELIEF
### (Fraudulent Misrepresentation – Against All Defendants)

253.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

254.    Defendants falsely and fraudulently represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that TAXOTERE® had been tested and was found to be safe and effective for the treatment of certain forms of cancer.

255.    When warning of safety and risks of TAXOTERE®, Defendants fraudulently represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the

67

public in general that TAXOTERE® had been tested and was found to be safe and/or effective for its indicated use.

256.   Defendants concealed their knowledge of TAXOTERE®'s defects from Plaintiffs, Plaintiffs' physicians, and the public in general and/or the medical community specifically.

257.   Defendants concealed their knowledge of the defects in their products from Plaintiffs, Plaintiffs' physicians, hospitals, pharmacists, and the public in general.

258.   Defendants made these false representations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing Plaintiffs, Plaintiffs' physicians, the public in general, and the medical community in particular, to recommend, dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer, including but not limited to breast cancer, all of which evidenced a callous, reckless, willful, wanton, and depraved indifference to the health, safety, and welfare of Plaintiffs.

259.   Defendants made these false representations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, as well as the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer, including but not limited to breast cancer.

260.   When Defendants made these representations, Defendants knew those representations were false, and Defendants willfully, wantonly, and recklessly disregarded whether the representations were true.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 68 of 85

68

261.    At the time Defendants made the aforesaid representations, and, at the time Plaintiff used TAXOTERE®, Plaintiffs and Plaintiffs' physicians were unaware of the falsity of Defendants' representations, and Plaintiffs and Plaintiffs' physicians reasonably believed them to be true.

262.    In reliance upon Defendants' representations, Plaintiffs and Plaintiffs' physicians were induced to and did use and prescribe TAXOTERE®, which caused Plaintiff to sustain severe, permanent, and disfiguring personal injuries.

263.    Defendants knew and were aware or should have been aware that TAXOTERE® had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings.

264.    Defendants knew or should have known that TAXOTERE® had a potential to, could, and would cause severe and grievous injury to the users of TAXOTERE® and that TAXOTERE® was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

265.    Defendants brought TAXOTERE® to the market and acted fraudulently, wantonly, and maliciously to the detriment of Plaintiffs.

266.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 69 of 85

69

pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality

and enjoyment of life.

**SEVENTH CLAIM FOR RELIEF**
**(Fraudulent Concealment – Against All Defendants)**

267.   Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this

Complaint inclusive, with the same force and effect as if fully set forth herein.

268.   At all times during the course of dealing between Defendants and Plaintiffs and

Plaintiffs' healthcare providers, Defendants misrepresented the design characteristics and safety

of TAXOTERE® for its intended use.

269.   Defendants knew or were reckless in not knowing that its representations were

false.

270.   In representations made to Plaintiffs and Plaintiffs' healthcare providers,

Defendants fraudulently concealed and intentionally omitted the following material information:

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 70 of 85

q)   that TAXOTERE® was not as safe as other forms of treatment for which
     TAXOTERE® was marketed and sold to cancer patients;

r)   that the risks of adverse events with TAXOTERE® were higher than those
     with other forms of treatment for which TAXOTERE® was marketed and
     sold to cancer patients;

s)   that the risks of adverse events with TAXOTERE® were not adequately
     tested and/or known by Defendants;

t)   that Defendants were aware of dangers in TAXOTERE®, in addition to and
     above and beyond those associated with other forms of treatment for cancer
     patients;

u)   that TAXOTERE® was defective in that it caused dangerous side effects as
     well as other severe and permanent health consequences in a much more and
     significant rate than other forms of treatment for cancer patients;

v)   that TAXOTERE® was manufactured negligently;

70

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 71 of 85

w) that TAXOTERE® was manufactured defectively;

x) that TAXOTERE® was manufactured improperly;

y) that TAXOTERE® was designed negligently;

z) that TAXOTERE® was designed defectively; and

aa) that TAXOTERE® was designed improperly.

271.   Defendants had a duty to disclose to Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers the defective nature of TAXOTERE®, including but not limited to the heightened risks of disfiguring permanent alopecia.

272.   Defendants had sole access to material facts concerning the defective nature of TAXOTERE® and its propensity to cause serious and dangerous side effects, and therefore cause damage to persons who used TAXOTERE®, including Plaintiffs, in particular.

273.   Defendants' concealment and omissions of material facts concerning the safety of TAXOTERE® was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs, Plaintiffs' physicians, hospitals, and healthcare providers into reliance on the continued use of TAXOTERE® and to cause them to purchase, prescribe, and/or dispense TAXOTERE® and/or use TAXOTERE®.

274.   Defendants knew that Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers had no way to determine the truth behind Defendants' concealment and omissions, including the material omissions of facts surrounding TAXOTERE® set forth herein.

275. Plaintiffs, Plaintiffs' physicians, healthcare providers, and/or hospitals reasonably relied on information revealed by Defendants that negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

276. As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer from serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 72 of 85

### EIGHTH CLAIM FOR RELIEF
### (Negligence Misrepresentation – Against All Defendants)

277. Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

278. Defendants had a duty to represent to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that TAXOTERE® had been tested and found to be safe and effective for the treatment of various forms of cancer.

279. When warning of safety and risks of TAXOTERE®, Defendants negligently represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that TAXOTERE® had been tested and was found to be safe and/or effective for its indicated use.

280. Defendants concealed their knowledge of TAXOTERE®'s defects from Plaintiffs, Plaintiffs' physicians, and the public in general and/or the medical community specifically.

281. Defendants concealed their knowledge of the defects in their products from Plaintiffs, Plaintiffs' physicians, hospitals, pharmacists, and the public in general.

282. Defendants misrepresented the novel nature of their product in order to gain a market advantage resulting in billions of dollars in revenues at the expense of vulnerable cancer victims such as Plaintiffs.

283. Defendants made these misrepresentations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing Plaintiffs, Plaintiffs' physicians, the public in general, and the medical community in particular, to recommend, dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer, including but not limited to breast cancer.

284. Defendants failed to exercise ordinary and reasonable care in their representations of TAXOTERE® while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution into interstate commerce, and Defendants negligently misrepresented TAXOTERE®'s high risk of unreasonable, dangerous side effects.

285. Defendants breached their duty in misrepresenting TAXOTERE®'s serious side effects to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, the FDA, and the public in general.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 73 of 85

286. Plaintiffs and Plaintiffs' physicians reasonably relied on Defendants to fulfill their obligations to disclose all facts within their knowledge regarding the serious side effects of TAXOTERE®.

287. As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 74 of 85

## NINTH CLAIM FOR RELIEF
### (Strict Product Liability for Misrepresentation – Against All Defendants)

288. Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

289. Defendants sold the TAXOTERE® that Plaintiffs' physicians prescribed for Plaintiffs and that Plaintiffs used.

290. Defendants were engaged in the business of selling the TAXOTERE® for resale, use, or consumption.

291. Defendants misrepresented facts as set forth herein concerning the character or quality of the TAXOTERE® that would be material to potential prescribers and purchasers or users of the product.

292.     Defendants' misrepresentations were made to potential prescribers and/or purchasers or users as members of the public at large.

293.     As a purchaser or user, Plaintiffs reasonably relied on the misrepresentation.

294.     Plaintiffs are persons who would reasonably be expected to use, consume, or be affected by the TAXOTERE®.

295.     As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 75 of 85

## TENTH CLAIM FOR RELIEF
### (Fraud and Deceit – Against All Defendants)

296.     Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

297.     Defendants committed fraud by omission in applying for and gaining patent protection for TAXOTERE® resulting in increased sales and market penetration. This increased market penetration was the proximal cause of Plaintiffs' exposure to the side effects of TAXOTERE®.

298.     Defendants fraudulently claimed superior efficacy over other products designed to treat the same conditions for which TAXOTERE® was designed to treat. These fraudulent

representations were the proximal cause of Plaintiff's exposure to the side effects of

TAXOTERE®.

299.    As a result of Defendants' research and testing, or lack thereof, Defendants

intentionally distributed false information, including but not limited to assuring Plaintiffs,

Plaintiffs' physicians, hospitals, healthcare professionals, and/or the public that TAXOTERE®

was safe and effective for use in the treatment of various forms of cancer, including breast

cancer.

300.    As a result of Defendants' research and testing, or lack thereof, Defendants

intentionally omitted certain results of testing and or research to Plaintiffs, Plaintiffs' physicians,

healthcare professionals, and/or the public.

301.    Defendants had a duty when disseminating information to Plaintiffs, Plaintiffs'

physicians, and the public to disseminate truthful information.

302.    Defendants had a duty when disseminating information to Plaintiffs, Plaintiffs'

physicians, and the public not to deceive Plaintiffs, Plaintiffs' physicians, and/or the public.

303.    The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and

the public, including but not limited to reports, press releases, advertising campaigns, and other

forms of media contained material representations of fact and/or omissions.

304.    The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and

the public intentionally included false representations that Defendants' drug TAXOTERE® was

safe and effective for the treatment of various forms of cancer, including breast cancer.

305.    The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and

the public intentionally included false representations that Defendants' drug TAXOTERE®

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 76 of 85

carried the same risks, hazards, and/or dangers as other forms of treatment for the same conditions for which TAXOTERE® was designed to treat.

306.   The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that TAXOTERE® was not injurious to the health and/or safety of its intended users.

307.   The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that TAXOTERE® was no more injurious to the health and/or safety of its intended users as other forms of cancer treatments for which TAXOTERE® was designed to treat.

308.   These representations by Defendants were all false and misleading.

309.   Defendants intentionally suppressed, ignored, and disregarded test results not favorable to Defendants and that demonstrated that TAXOTERE® was not safe as a means of treatment for certain types of cancer for which TAXOTERE® was designed to treat.

310.   Defendants intentionally made material misrepresentations to Plaintiffs, Plaintiffs' physicians, and the public, including the medical profession, regarding the safety of TAXOTERE®, specifically but not limited to TAXOTERE® not having dangerous and serious health and/or safety concerns.

311.   Defendants intentionally made material misrepresentations to Plaintiffs, Plaintiffs' physicians, and the public in general, including the medical profession, regarding the safety of TAXOTERE®, specifically but not limited to TAXOTERE® being as safe as other products designed to treat the same conditions TAXOTERE® was designed to treat.

312.   It was Defendants' intent and purpose in making these false representations to deceive and defraud Plaintiffs, Plaintiffs' physicians, and/or the public and to gain the

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 77 of 85

confidence of Plaintiffs, Plaintiffs' physicians, the public, and/or healthcare professionals to falsely ensure the quality and fitness for use of TAXOTERE® and induce Plaintiffs, Plaintiffs' physicians, and the public, including the medical profession, to purchase, request, dispense, prescribe, recommend, and/or continue to use TAXOTERE®.

313. Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiffs, Plaintiffs' physicians, the public, and/or healthcare professionals that TAXOTERE® was fit and safe for use as treatment for certain types of cancer, including breast cancer.

314. Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiffs, Plaintiffs' physicians, the public, and/or healthcare professionals that TAXOTERE® was fit and safe for use as treatment of certain forms of cancer and did not pose risks, dangers, or hazards above and beyond those identified and/or associated with other forms of treatment for which TAXOTERE® was designed to treat.

315. Defendants made false claims and false representations in its documents submitted to Plaintiffs, Plaintiffs' physicians, the public, and healthcare professionals that TAXOTERE® did not present risks related to disfigurement secondary to permanent alopecia.

316. Defendants made false claims and false representations in its documents submitted to Plaintiffs, Plaintiffs' physicians, the public, and healthcare professionals that TAXOTERE® did not present health and/or safety risks greater than other forms of treatment for the same conditions TAXOTERE® was designed to treat.

317. Defendants made these and other representations with a pretense of actual knowledge when Defendants had no knowledge of the truth or falsity of these representations, and Defendants made these representations recklessly and without regard to the actual facts.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 78 of 85

318. Defendants made these and other representations with the intention of deceiving and defrauding Plaintiffs and Plaintiffs' respective healthcare professionals.

319. Defendants made these and other representations in order to induce Plaintiffs and Plaintiffs' respective healthcare professionals to rely upon the misrepresentations.

320. Defendants' false misrepresentations caused Plaintiffs and/or Plaintiffs' healthcare professionals to purchase, use, rely on, request, dispense, recommend, and/or prescribe TAXOTERE®.

321. Defendants recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of TAXOTERE® to the public at large, and Plaintiffs and Plaintiffs' physicians in particular, for the purpose of influencing the marketing of a product Defendants knew was dangerous and defective and/or not as safe as other alternatives, including other forms of treatment for cancer.

322. Defendants willfully and intentionally failed to disclose, concealed, and/or suppressed the material facts regarding the dangerous and serious health and/or safety concerns related to TAXOTERE®.

323. Defendants willfully and intentionally failed to disclose the truth and material facts related to TAXOTERE® and made false representations with the purpose and design of deceiving and lulling Plaintiffs and Plaintiffs' respective healthcare professionals into a sense of security so that Plaintiffs and Plaintiffs' healthcare professionals would rely on Defendants' representations to purchase, use, dispense, prescribe, and/or recommend TAXOTERE®.

324. Defendants, through their public relations efforts, which included but were not limited to public statements and press releases, knew or should have known that the public,

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 79 of 85

including Plaintiffs and Plaintiffs' respective healthcare professionals, would rely upon the information being disseminated.

325.   Plaintiffs and/or Plaintiffs' respective healthcare professionals did in fact rely on and believe Defendants' false representations to be true at the time they were made, and they relied upon Defendants' false representations and superior knowledge of how TAXOTERE® would treat certain forms of cancer for which TAXOTERE® was designed to treat.

326.   At the time Defendants' false representations were made, Plaintiffs and/or Plaintiffs' respective healthcare providers did not know the truth and were not with reasonable diligence able to discover the truth with regard to the dangerous and serious health and/or safety concerns of TAXOTERE®.

327.   Plaintiffs and their healthcare providers did not discover the true facts with respect to Defendants' false representations and the dangerous and serious health and/or safety concerns of TAXOTERE®, and Plaintiffs and their healthcare providers with reasonable diligence could not have discovered the true facts.

328.   Had Plaintiffs and their healthcare providers known the true facts with respect to the dangerous and serious health and/or safety concerns of TAXOTERE®, Plaintiffs would not have purchased, used, and/or relied on Defendants' drug TAXOTERE®.

329.   Defendants' aforementioned conduct constitutes fraud and deceit, and it was committed and/or perpetrated willfully, wantonly, and/or purposefully on Plaintiffs.

330.   As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses;

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 80 of 85

past and future loss of earnings; past and future loss and impairment of earning capacity;

permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating

emotional distress; increased risk of future harm; past, present, and future physical and mental

pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality

and enjoyment of life.

## ELEVENTH CLAIM FOR RELIEF
### (Violation of the Illinois Consumer Protection Act – Against All Defendants)

331.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this

Complaint inclusive, with the same force and effect as if fully set forth herein.

332.    Defendants have a statutory duty to refrain from making false and/or fraudulent

representations and/or from engaging in deceptive acts or practices in the sale and promotion of

TAXOTERE® pursuant to the Illinois Consumer Protection Act, 815 ILCS 505 *et seq.*

333.    Defendants engaged in unfair, deceptive, false, and/or fraudulent acts and/or trade

practices in violation of the Illinois Consumer Protection Act, including but not limited to:

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 81 of 85

bb) Publishing instructions and product material containing inaccurate and incomplete factual information regarding TAXOTERE®;

cc) Misrepresenting the nature, quality, and characteristics of TAXOTERE®;

dd) Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding;

ee) Misrepresenting the alleged benefits of TAXOTERE®;

ff) Failing to disclose material information concerning known side effects of TAXOTERE®;

gg) Misrepresenting the quality of TAXOTERE®; and

hh) Uniformly communicating the purported benefits of TAXOTERE® while failing to disclose the serious and dangerous side-effects related to the use of TAXOTERE® and its safety, efficacy, and usefulness.

334.    Defendants' conduct in connection with TAXOTERE® was impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because Defendants misleadingly, falsely, and/or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy, and advantages of TAXOTERE®.

335.    These deceptive trade practices occurred in the course of Defendants' business.

336.    These deceptive trade practices significantly impacted Plaintiff and the public as actual or potential consumers of Defendants' product TAXOTERE®.

337.    Defendants made these representations to physicians, the medical community at large, and to patients and consumers such as Plaintiff in the marketing and advertising campaign described herein.

338.    Plaintiffs were an actual consumer of Defendants' product TAXOTERE®.

339.    Defendants' conduct as described above was a material cause of Plaintiffs decisions to purchase TAXOTERE®.

340.    As a direct, foreseeable, and proximate cause of Defendants' deceptive trade practices, Plaintiffs suffered actual damages, including personal injuries, economic damages, and non-economic damages.

341.    Defendants' conduct was wanton, egregious, and reckless.

342.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity;

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 82 of 85

82

permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

343.    As a result of the foregoing acts, omissions, and wrongful conduct of Defendants, Plaintiffs are entitled to treble damages, attorneys' fees, and costs.

## TWELFTH CLAIM FOR RELIEF
### (Loss of Consortium)

344.    Spouse plaintiffs complain of defendants, and each of them and for a cause of action for loss of consortium allege as follow:

345.    Spouse Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows:

346.    This cause of action is asserted by the Spouse Plaintiffs identified previously whose spouses suffered personal injuries as a result of using Defendants product, who at all times relevant to this action were, and are now, husband and wife.

347.    Subsequent to their injuries, Plaintiffs' were and are unable to perform the necessary duties as a spouse and the work service usually performed in the care, maintenance and management of the family home.

348.    Spouse Plaintiffs were unaware that Plaintiffs' injuries were caused by TAXOTERE® until within two years of filing this Complaint.

349.    By reason of the injuries sustained by their spouses, the Spouse Plaintiffs have been and will continue to be deprived of the loss of love, companionship, comfort, care,

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 83 of 85

assistance, protection, affection, society, and moral support of their spouses, as to their damage, in an amount presently unknown but which will be proved at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, instate Plaintiffs demand judgment against Defendants Sanofi U.S. Services Inc., formerly known as Sanofi-Aventis U.S. Inc., Sanofi-Aventis U.S. LLC, separately, and doing business as Winthrop U.S., Hospira, Inc., Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., McKesson Corporation doing bushiness as McKesson Packaging, Sandoz Inc., Accord Healthcare Ltd., Accord Healthcare Inc., and Does, Inc., in an amount to be determined at trial by the trier of fact for her injuries, harms, damages, and losses as set forth above, special damages, treble damages, costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other injuries and damages as shall be proven at trial, and such other further relief as the Court may deem appropriate, just, and proper. Out of state Plaintiffs demand judgment against Defendants Hospira, Inc. and Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., in an amount to be determined at trial by the trier of fact for her injuries, harms, damages, and losses as set forth above, special damages, treble damages, costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other injuries and damages as shall be proven at trial, and such other further relief as the Court may deem appropriate, just, and proper.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 84 of 85

84

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED:  December 13, 2017

Respectfully submitted,

**NAPOLI SHKOLNIK, PLLC**

By: /s/ Paul J. Napoli _____
    Paul J. Napoli, #6307568
    Mark Twain Plaza II
    103 West Vandalia Street, Suite 125
    Edwardsville, IL 62025
    Tel: (618) 307-4528
    PNapoli@NapoliLaw.com
    **ATTORNEYS FOR PLAINTIFF**

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 85 of 85