UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)                    MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Melissa Roach, Case No. 2:17-cv-7918.

### DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON WARNINGS CAUSATION

In her Opposition, Plaintiff Melissa Roach asserts that a genuine issue of material fact exists because her oncologist, Dr. Wail Alnas, would have warned Ms. Roach of permanent hair loss in 2009. Even accepting that Dr. Alnas would have warned Ms. Roach, she cannot avoid summary judgment on warnings causation under Mississippi law or the Court's four-part framework because the ultimate treatment decision would not have changed.

First, under Mississippi law, Ms. Roach has failed to controvert Dr. Alnas's unequivocal testimony that he stands by his decision to prescribe Taxotere to Ms. Roach in 2009, even knowing what he knows today about the alleged risk of permanent hair loss and Taxotere. This is all that is required under Mississippi law.

Second, under the Court's framework, Ms. Roach has not shown that she and Dr. Alnas would have decided on anything other than a Taxotere-containing regimen. Ms. Roach relied on Dr. Alnas to select the most effective and appropriate chemotherapy for her breast cancer. And Ms. Roach testified that she trusted Dr. Alnas's opinion and would follow his chemotherapy recommendation *regardless of the potential side effects*.

Third, under either approach, Ms. Roach suggests that she can offer "objective evidence" of what a "reasonable physician" would have prescribed. To the extent Mississippi law permits such consideration (a tenuous proposition at best), Ms. Roach has failed to come forward with such evidence now. Nor would this evidence, if offered, change the outcome in light of Dr. Alnas's testimony. As a result, Ms. Roach's claims are subject to summary judgment.

## ARGUMENT

**I.    EVEN IF DR. ALNAS HAD WARNED MS. ROACH OF A RISK IN 2009, DR. ALNAS WOULD STILL HAVE PRESCRIBED A TAXOTERE-CONTAINING REGIMEN.**

A treating physician's awareness of the risk is one of several ways a pharmaceutical manufacturer can establish a lack of warnings causation under Mississippi law. *Arinder v. Danek Med., Inc.*, 1999 WL 1129647, at *4 (N.D. Miss. June 21, 1999) (granting summary judgment to manufacturer where treating physician was aware of the various risks associated with the medical device). Ms. Roach cites *Lim v. Ethicon, Inc.*, 2021 WL 612399, at *6 (S.D. Miss. Feb. 12, 2021), to suggest that summary judgment on a warnings causation motion turns on whether the physician was aware of the risk. Rec. Doc. 12279 at 9 ("Conversely, it is clear here that Dr. Alnas was unaware of the risk of permanent hair loss associated with Taxotere in 2009, and, had Sanofi warned her [sic] of this risk, she [sic] would have taken a different course of action – shared this risk with her [sic] patient, Ms. Roach."). *Lim*, however, clearly recognizes that the relevant conduct is not general awareness, but rather whether the undisclosed risk would have changed the physician's decision to use the drug or device. *Lim*, 2021 WL 612399, at *6 ("Lim does not claim any additional warning by Defendants to Dr. Seago would have *caused him not to implant the TVT-O*.") (emphasis added).

Mississippi law asks whether the physician would still prescribe the drug to the plaintiff in light of the alleged risk. *Janssen Pharmaceutica, Inc. v. Bailey*, 878 So. 2d 31, 58 (Miss. 2004), *as*

2

*modified on denial of reh'g* (Aug. 5, 2004) ("The Plaintiffs bear the burden of establishing that . . . 'an adequate warning would have convinced the treating physician not to prescribe the product for the [P]laintiff[s].'" (quoting *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 811 (5th Cir. 1992))); *Cross v. Forest Labs.*, 102 F. Supp. 3d 896, 903 (N.D. Miss. 2015) ("Plaintiffs have not provided, and this court has been unable to find, any authority that would extend the meaning of 'altering the doctor's conduct' beyond the decision to prescribe or not to prescribe[.]").[1]

If Dr. Alnas had been aware that cases of permanent hair loss had been reported with Taxotere in 2009, Dr. Alnas still would not have changed his prescribing decision for Ms. Roach:

> Q. Okay. Had you been made aware of that risk of permanent hair loss when you were selecting a potential treatment regimen for Ms. Roach, would this information have factored into your decision-making process?
>
> A. I don't think so. I mean, it's very difficult to put yourself back ten years, but I don't think so.[2]
>
> ***
>
> Q. And today, you still stand by your recommendation to treat Ms. Roach with Taxotere, carboplatin and Herceptin, correct?
>
> A. Yes.

---

[1] *See also Swintelski v. Am. Med. Sys., Inc.*, 2021 WL 687202, at *5 (S.D. Fla. Feb. 22, 2021) ("Under applicable Eleventh Circuit authorities, the critical inquiry is not whether Dr. Kahn would have communicated more information to his patient who then perhaps would have altered her decision to undergo the surgery. Instead, the relevant question is whether the additional risk information would have impacted the implanting physician's decision to implant the product at issue.").

[2] Rec. Doc. 12197-2 at ¶ 27 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation). Although Ms. Roach asserts that Sanofi's Statement of Undisputed Facts is "inaccurate, incomplete, misleading, taken out of context, and/or irrelevant," Rec. Doc. 12279 at 2, she admits to 30 of the 32 factual paragraphs, Rec. Doc. 12279-1 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation). Ms. Roach has attempted to clarify or deny certain facts, but none raise a genuine issue of material fact. Ms. Roach, for example, admits to Dr. Alnas's testimony quoted above "insofar as it represents Dr. Alnas' recommendation and thought process without knowing of a risk of permanent hair loss associated with Taxotere." *Id.* at ¶ 27. Dr. Alnas's testimony, however, is clearly in response to a hypothetical where Dr. Alnas had been made aware of the risk.

3

> Q. And is it fair to say that Taxotere, carboplatin and Herceptin helped to save her life?
>
> A. It definitely reduced the chance of the cancer relapsing and she's cancer free 11 years. That's terrific.[3]

Although Dr. Alnas clearly provides dispositive testimony on warnings causation under precedential Mississippi decisions, Ms. Roach's claims also fail under the additional questions posed by this Court's four-part framework.

## II. MS. ROACH HAS PRESENTED NO EVIDENCE THAT SHE WOULD HAVE INQUIRED INTO OTHER TREATMENT OPTIONS.

Nowhere in her Opposition does Ms. Roach assert that she would have asked about other treatment options had she been aware of the risk. Ms. Roach admits that she did not consider declining chemotherapy.[4] Ms. Roach also admits that she relied on Dr. Alnas to select the most effective and appropriate chemotherapy for her breast cancer.[5] After Dr. Alnas recommended Taxotere, Carboplatin, and Herceptin ("TCH"), Ms. Roach did not discuss any other chemotherapy regimens with Dr. Alnas or research any of her chemotherapy drugs.[6] In short, Ms. Roach never inquired about other options but instead trusted Dr. Alnas and heeded his advice.[7]

---

[3] Rec. Doc. 12197-2 at ¶ 28 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[4] *Id.* at ¶ 11. Although Ms. Roach now attempts to "clarify" her testimony on this point, Ms. Roach points to no record evidence to support her re-characterization of the facts. *See* Rec. Doc. 12279-1 at ¶ 11 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[5] Rec. Doc. 12197-2 at ¶ 12 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation); Rec. Doc. 12279-1 at ¶ 12 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[6] Rec. Doc. 12197-2 at ¶¶ 18–19 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation); Rec. Doc. 12279-1 at ¶¶ 18–19 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[7] Rec. Doc. 9887 at 6 (Order and Reasons Granting Defs.' Mot. for Summ. J. on Warnings Causation) ("Indeed, the evidence suggests that [Ms. Phillips] never inquired about other options but instead trusted Dr. Sonnier and heeded his advice.").

### III. MS. ROACH HAS PRESENTED NO EVIDENCE THAT A DIFFERENT WARNING WOULD HAVE CAUSED DR. ALNAS TO CHANGE HIS PRESCRIBING DECISION.

Ms. Roach must prove that "an adequate warning would have changed her doctor's prescribing decision."[8] Ms. Roach concedes that she cannot make this showing because Dr. Alnas stands by his decision to prescribe TCH.[9]

In an attempt to distinguish this Court's decision in *Phillips*, Ms. Roach's sole assertion is that "unlike Dr. Sonnier, Dr. Alnas admitted that the patient makes the ultimate decision about whether to use a chemotherapy regimen."[10] But *Phillips* is instructive. There, Dr. Sonnier testified that, had Ms. Phillips requested an alternative Adriamycin-containing regimen, he would not have given it. Dr. Alnas did identify Adriamycin/Cytoxan followed by Taxol and Herceptin ("AC+TH") as an alternative regimen for Ms. Roach. Yet, as Dr. Alnas explained, AC+TH and TCH are not interchangeable.[11] Dr. Alnas prefers TCH because it avoids the "significantly higher" cardiotoxicity of Adriamycin (the "A" in AC+TH).[12] When asked whether he would prescribe AC+TH to Ms. Roach, Dr. Alnas testified that he would have told her that the regimen carried a risk of cardiotoxicity and encouraged her to take TCH.[13] Dr. Alnas, like any physician, does not

---

[8] Rec. Doc. 9887 at 4 (Order and Reasons Granting Defs.' Mot. for Summ. J. on Warnings Causation); *accord* Rec. Doc. 9440 at 4 (Order and Reasons Granting Defs.' Mot. for Summ. J. on Warnings Causation).

[9] Rec. Doc. 12197-2 at ¶¶ 27–28 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation); Rec. Doc. 12279-1 at ¶¶ 27–28 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[10] Rec. Doc. 12279 at 9 (Pl.'s Opp. to Defs.' Mot. for Summ. J. Based on Warnings Causation).

[11] Rec. Doc. 12197-2 at ¶¶ 29–31 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[12] *Id.* at ¶ 31; *see also* Rec. Doc. 12197-5, Ex. C to Defs.' Mot. for Summ. J. on Warnings Causation, Oct. 7, 2020 Alnas Dep. at 29:2–14 ("Adriamycin [has] a cardiac risk and I try to avoid it if possible, especially in patients with heart problem. In her case, she was young probably, but that's still a question about late cardiac complication. So I always to try avoid Adriamycin if possible.").

[13] Rec. Doc. 9887 at 6 (Order and Reasons Granting Defs.' Mot. for Summ. J. on Warnings Causation).

force his patients to take a specific regimen. So while AC+TH may have been a potential option for Ms. Roach, the key inquiry is whether Ms. Roach would have declined TCH and requested AC+TH, a regimen with a higher risk of cardiotoxicity. As explained below, she would not because she accepted Dr. Alnas's TCH recommendation regardless of the potential side effects.

**IV.   MS. ROACH WOULD HAVE ULTIMATELY SELECTED A TAXOTERE-CONTAINING REGIMEN.**

Ms. Roach does not dispute that, under Mississippi law, the ultimate patient decision is analyzed using an objective standard. *Dunn v. Yager*, 58 So. 3d 1171, 1201 n.27 (Miss. 2011). Applying that standard here, there is no dispute that a reasonable patient in Ms. Roach's position—like Ms. Roach herself—would have accepted her doctor's recommendation of TCH (Dr. Alnas's preferred regimen) to avoid the "significantly higher" risk of cardiotoxicity of AC+TH.[14]

Even if Ms. Roach's subjective testimony is considered, she has not met her burden. All chemotherapies, whether used alone or in combination with other drugs, have unique risks and benefits, all which must be matched against the cancer type and the patient's health history. It is undisputed that numerous other chemotherapies are associated with reports of permanent hair loss.[15] Consequently, to present a triable issue of fact, Ms. Roach must demonstrate: (1) which other chemotherapy regimens would have been offered by the oncologist that did not carry a risk of permanent hair loss; (2) what the oncologist would have conveyed to her about their risks and benefits during the vigorous and robust informed consent discussion; and then finally, (3) what the patient would have ultimately decided to do after having been fully informed of the risks and

---

[14]   Rec. Doc. 12281-1 at 3 ¶ 13 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[15]   Dr. Laura Plunkett, Dr. Antonella Tosti, and Dr. Ellen Feigel each testified in the *Earnest* trial that the alternatives to Taxotere are associated with reports of permanent hair loss. Rec. Doc. 8408 at 861:3–10, 873:20–874:21 (Sept. 18, 2020 Trial Tr.) (Dr. Plunkett); Rec. Doc. 8411 at 1030:6–1031:16, 1057:17–1058:23, 1128:24–1129:2 (Sept. 19, 2020 Trial Tr.) (Dr. Tosti); Rec. Doc. 8412 at 1236:12–22 (Sept. 19, 2020 Trial Tr.) (Dr. Feigel).

benefits of whatever other chemotherapy the oncologist might have been willing to prescribe. Without evidence sufficient to satisfy these issues, there is no triable issue of fact.

At the outset, Ms. Roach's Opposition identifies no testimony where she states that she would have selected a different chemotherapy regimen. Although the Opposition definitively asserts that Ms. Roach would have "researched and chosen another chemotherapy regimen,"[16] the testimony cited is far less decisive.[17] If Ms. Roach had been aware of the risk of permanent hair loss associated with specific drugs in the TCH regimen, her decision might have "possibly" or "probably" changed, but "[n]ot immediately."[18] Ms. Roach, at most, "probably would have done some research," but "[she's] not saying that [she] would've necessarily gone with all of those [alternatives]."[19] To that end, there is *no testimony* from Ms. Roach that she would have accepted AC+TH over TCH after being informed of the increased risk of cardiotoxicity. Ms. Roach cannot raise a genuine issue of material fact on this prong because facts as to what alternative treatment—and the corresponding risks—Ms. Roach would have accepted are absent from the record.

The reason these facts are absent from the record is because different risk information would not have changed Ms. Roach's ultimate decision. At the time of treatment, Ms. Roach intended to follow Dr. Alnas's chemotherapy recommendation *regardless of the potential side effects*:

> Q. Did you intend to follow your doctor's recommendation regardless of the details of why he recommended it?

---

[16] Rec. Doc. 12279 at 9 (Pl.'s Opp. to Defs.' Mot. for Summ. J. Based on Warnings Causation).

[17] *Id.* at 5 ("If Plaintiff Ms. Roach had been informed of the risk of permanent hair loss, she would have researched and chosen another chemotherapy regimen or alternative therapy." (citing Sept. 23, 2020 Roach Dep. 254–58)).

[18] Rec. Doc. 12197-7, Ex. E to Defs.' Mot. for Summ. J. on Warnings Causation, Sept. 23, 2020 Roach Dep. 254:3–7, 255:22–256:3, 257:14–18.

[19] *Id.* at 254:25–255:11.

7

>A. I mean, pretty much, yeah. I was too afraid and too worried to really do anything else. I didn't know what to do other than what he told me to do.
>
>Q. Did you intend to follow Dr. Alnas's recommendation regardless of the potential side effects?
>
>A. Yes.[20]

Ms. Roach's unequivocal testimony is that she relied completely on Dr. Alnas's recommendation to treat her "aggressive" HER2/neu-positive cancer.[21] Because Ms. Roach's ultimate treatment decision would not have changed, she cannot establish warnings causation under this Court's four-part framework.

### V. MS. ROACH HAS FAILED TO ADDUCE ANY "OBJECTIVE EVIDENCE" TO THE EXTENT IT IS RECOGNIZED UNDER MISSISSIPPI LAW.

Ms. Roach invites the Court to ignore Dr. Alnas's testimony when analyzing warnings causation and instead decide that issue by considering "objective evidence" of how a "reasonable physician" would have responded to an allegedly adequate warning—though the Court must wait for such evidence to appear in a forthcoming report by one of Ms. Roach's retained experts.[22]

The Court should reject Ms. Roach's invitation for three reasons:

*First*, the "objective evidence" standard is likely not an accurate statement of Mississippi law. That standard originated in *Hermes v. Pfizer, Inc.*, 848 F.2d 66, 69–70 (5th Cir. 1988), a case in which the Fifth Circuit uncritically quoted the following jury instruction given by the Southern District of Mississippi sitting in diversity in a pharmaceutical-warnings case:

---

[20] Rec. Doc. 12197-2 at ¶ 17 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation); Rec. Doc. 12279-1 at ¶ 17 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[21] Rec. Doc. 12197-2 at ¶ 12 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation); Rec. Doc. 12279-1 at ¶ 12 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[22] Rec. Doc. 12279 at 10–12 (Pl.'s Opp. to Defs.' Mot. for Summ. J. Based on Warnings Causation).

> The plaintiff Laura Hermes has the burden of proving by a preponderance of the evidence, one, that her taking of Sinequan caused in fact the injury complained of and, two, that the warning, if any, given by Pfizer to plaintiff's prescribing physician was inadequate and, three, that *had an adequate warning been given, a reasonably prudent physician would not have prescribed Sinequan*.

The above-quoted instruction in *Hermes* is unaccompanied by a Mississippi case citation, an *Erie* guess, or any other indication that the "reasonably prudent physician" aspect of the instruction is actually a correct statement of Mississippi law. Notably, when *Hermes* was published in 1988, no existing Mississippi case had analyzed warnings causation using a "reasonably prudent physician" or similar standard. In fact, the Mississippi Supreme Court issued an opinion one month after *Hermes* analyzing warnings causation solely from the perspective of the plaintiff's treater. *See Wyeth Labs., Inc. v. Fortenberry*, 530 So. 2d 688, 691 (Miss. 1988) ("Fortenberry still had the burden of showing that an adequate warning would have altered Dr. Moore's conduct. The record contains no testimony showing that Dr. Moore would not have administered the flu shot if adequate warning had been given.").

Four years later, the Fifth Circuit in *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806 (5th Cir. 1992) cited *Hermes* (and no other cases) for the proposition that the Mississippi plaintiff could prove warnings causation with "objective evidence of how a *reasonable physician* would have responded to an adequate warning":

> To satisfy the burden of establishing warning causation, a plaintiff may introduce either *objective evidence of how a reasonable physician would have responded to an adequate warning*, or subjective evidence of how the treating physician would have responded.

*Thomas*, 949 F.2d at 812 (emphasis added) (citing *Hermes,* 848 F.2d at 69–70). Again, just as in *Hermes*, *Thomas* cites no Mississippi law or *Erie* guess to support the "reasonable physician"

9

standard.[23] The other Fifth Circuit and Northern District of Mississippi cases that Ms. Roach cites in support merely parrot *Thomas*.

Ten years after *Thomas*, the Mississippi Supreme Court in *Bennett v. Madakasira*, 821 So. 2d 794 (Miss. 2002), quoted the above language from *Thomas* without independently addressing whether the "reasonable physician" language is an accurate statement of Mississippi law.[24] Notably, after *Bennett*, the only two Mississippi Supreme Court decisions to cite *Thomas* for a warnings causation standard have *omitted* the "objective evidence" / "reasonable physician" aspect of the standard. *See Bailey*, 878 So. 2d at 58 ("Plaintiffs bear the burden of establishing that Propulsid was the cause of their injuries and that 'an adequate warning would have convinced the treating physician not to prescribe the product for the [P]laintiff[s].'" (citing *Thomas*, 949 F.2d at 812)); *Janssen Pharmaceutica, Inc. v. Armond*, 866 So. 2d 1092, 1101 (Miss. 2004) ("[E]ven if the warning is inadequate, the burden is on the plaintiffs to show that an adequate warning would have altered the doctor's conduct who prescribed the medication." (citing *Fortenberry*, 530 So. 2d at 691 and *Thomas*, 949 F.2d at 811–12)). With this history in mind, the Court should not decide the issue of warnings causation using an "objective evidence" standard, as that standard is likely not a correct statement of Mississippi law.

---

[23] Courts outside the Fifth Circuit have observed that the "objective evidence" standard in *Thomas* is an anomaly and not recognized outside the Fifth Circuit. *See, e.g.*, *Sauls v. Wyeth Pharm., Inc*., 846 F. Supp. 2d 499, 503 (D.S.C. 2012) (observing that "[n]o other jurisdiction that adheres to the learned intermediary doctrine has followed the approach taken by the Fifth Circuit" in *Thomas* ); *Schilf v. Eli Lilly & Co*., 2010 WL 4024922, at *4 n.3 (D.S.D. Oct. 13, 2010) ("It appears that only the Fifth Circuit has indicated that a plaintiff in some circumstances might be allowed to supplement the treating physician's testimony with objective evidence of how a reasonable physician would have responded to an adequate warning.").

[24] *See Bennett*, 821 So. 2d at 807, *abrogated on other grounds by Hutzel v. City of Jackson*, 33 So. 3d 1116 (Miss. 2010) ("The Fifth Circuit, applying Mississippi law, has said plaintiffs must establish, by the preponderance of the evidence, both: (1) that an adequate warning would have prevented the treating physician from administering the drug; and (2) that the injury would not have occurred had the drug not been administered. *Thomas*, 949 F.2d at 814. To satisfy this burden of proving causation, 'a plaintiff may introduce either objective evidence of how a reasonable physician would have responded to an adequate warning, or subjective evidence to establish how the treating physician would have responded.' *Id*.").

*Second*, even if the Court applied a "reasonable physician" standard, Ms. Roach's claims would still fail because she has no evidence to meet that standard. Ms. Roach states she "intends" to adduce such evidence in the future.[25] But the time for adducing such evidence is now. The parties agreed to the briefing schedule (where dispositive motions were filed before expert reports),[26] and the PSC had ample time to procure an affidavit from a hand-selected "reasonable physician" and attach it to Ms. Roach's Opposition. The PSC did not, and the Court should decide Sanofi's Motion on the current factual record.

The PSC cannot now claim ignorance. In its Opposition to Sanofi's Motion for Summary Judgment on Warnings Causation in *Phillips*, the parties also agreed to an analogous briefing schedule (where dispositive motions were filed before expert reports),[27] and the PSC made identical "objective evidence" arguments under Louisiana law and attached expert testimony in support (rather than the promise of a forthcoming expert report).[28] As in *Phillips*, the Court should disregard the PSC's belated promise to inject legally questionable "objective evidence" into the warnings causation analysis.

*Third*, any objective evidence of what a "reasonable physician" would do cannot overcome Dr. Alnas's unequivocal testimony that he would still prescribe Taxotere to Ms. Roach. If *Thomas*

---

[25] Rec. Doc. 12279 at 10–12 (Pl.'s Opp. to Defs.' Mot. for Summ. J. Based on Warnings Causation).

[26] Rec. Doc. 12283 at 3 (CMO 14I) (setting Opposition Brief deadline for March 8, 2021, and Plaintiff's Expert Report deadline for April 23, 2021).

[27] Rec. Doc. 9367-1 at 1 (CMO 14E) (setting Opposition Brief deadline for February 28, 2020, and Plaintiff's Expert Report deadline for March 20, 2020).

[28] Rec. Doc. 9419 at 9 (Pl.'s Opp. to Defs.' Mot. for Summ. J. Based on Warnings Causation) ("Here, Plaintiff has supplemented Dr. Sonnier's testimony with evidence that a reasonable physician would have altered his or her prescribing practices had he or she been adequately warned by Defendants of the risk of permanent hair loss with Taxotere." (citing Sept. 20, 2019, Trial Tr. 1272–73)). The PSC cannot justify waiting to file expert reports in Ms. Roach's case. In *Phillips*, the PSC cited *Grenier v. Med. Engineering Corp.*, 243 F.3d 200, 205 n.4 (5th Cir. 2001), where the Fifth Circuit considered a physician's affidavit, not an expert report, in the summary judgment record.

is correct on Mississippi law, then any "objective evidence" "must be of sufficient weight to establish, by the preponderance of the evidence, at least some reasonable likelihood that an adequate warning would have prevented the plaintiff from receiving the drug." 949 F.2d at 812. The focus, then, remains on the treating physician's ultimate decision. Assuming "a plaintiff may be able to *supplement* [prescriber] testimony" with objective evidence, *Allgood v. GlaxoSmithKline PLC*, 2008 WL 483574, at *6 n.6 (E.D. La. Feb. 20, 2008), such evidence has no weight if it contradicts the prescriber's testimony. In *Thomas*, for example, the Fifth Circuit dismissed the plaintiff's attempt to offer objective evidence through another, non-treating doctor because the record evidence "eliminate[d] any reasonable possibility that the [warning] would have changed the decision of [the treating physician.]" 949 F.2d at 817. Here, there is no reasonable possibility that the warning would have changed Dr. Alnas's decision. Dr. Alnas—like the treating physician in *Thomas*—testified that she stood by her prescribing decision. *Id.* at 811; *see also id.* at 817 ("The possibility that [the treating physician] would have changed his decision if he had been warned . . . is too remote to create a genuine issue of fact with respect to warnings causation.").

## CONCLUSION

For these reasons, the Court should grant Sanofi's motion for summary judgment on Ms. Roach's claims.

Respectfully submitted,

| | |
|---|---|
| */s/ Douglas J. Moore* | Harley V. Ratliff |
| Douglas J. Moore (Bar No. 27706) | Adrienne L. Byard |
| **IRWIN FRITCHIE URQUHART & MOORE LLC** | Jon Strongman |
| 400 Poydras Street, Suite 2700 | Bradley S. Thomas |
| New Orleans, LA  70130 | **SHOOK, HARDY & BACON L.L.P.** |
| Telephone: 504-310-2100 | 2555 Grand Boulevard |
| Facsimile:  504-310-2120 | Kansas City, Missouri 64108 |
| dmoore@irwinllc.com | Telephone: 816-474-6550 |
| | Facsimile:  816-421-5547 |
| | hratliff@shb.com |
| | abyard@shb.com |
| | bsthomas@shb.com |

*Counsel for Sanofi Defendants Sanofi US Services Inc. and sanofi-aventis U.S. LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*