**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |

**THIS DOCUMENT RELATES TO:**

Emma Willie, Case No. 2:18-cv-3857.

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT ON WARNINGS CAUSATION**

In her Opposition, Plaintiff Emma Willie asserts that a genuine issue of material fact exists because Ms. Willie's oncologist, Dr. Sadanand Patil, would have warned Ms. Willie of permanent hair loss in 2014. Even accepting this as true, Ms. Willie cannot avoid summary judgment on warnings causation under Mississippi law or the Court's four-part framework because the ultimate treatment decision would not have changed.

First, under Mississippi law, Ms. Willie has failed to controvert Dr. Patil's unequivocal testimony that he still would have prescribed Taxotere to Ms. Willie in 2014, even knowing what he knows today about the alleged risk of permanent hair loss associated with Taxotere. This is all that is required under Mississippi law.

Second, under the Court's framework, Ms. Willie has not shown that she and Dr. Patil would have decided on anything other than a Taxotere-containing regimen. Although Ms. Willie asserts that she would have chosen a different chemotherapy if she was aware of the risk of permanent hair loss, Ms. Willie never considered declining treatment, and she cannot identify any non-Taxotere regimen that Dr. Patil would have prescribed on this record.

Third, under either approach, Ms. Willie suggests that she can offer "objective evidence" of what a "reasonable physician" would have prescribed. To the extent Mississippi law permits consideration of such evidence (a tenuous proposition at best), Ms. Willie has failed to come forward with such evidence now. Nor would this evidence, if offered, change the outcome in light of Dr. Patil's testimony. As a result, Ms. Willie's claims are subject to summary judgment.

## ARGUMENT

**I.  EVEN IF DR. PATIL HAD WARNED MS. WILLIE OF A RISK IN 2014, DR. PATIL WOULD STILL HAVE PRESCRIBED A TAXOTERE-CONTAINING REGIMEN.**

A treating physician's awareness of the risk is one of several ways a pharmaceutical manufacturer can establish a lack of warnings causation under Mississippi law. *Arinder v. Danek Med., Inc.*, 1999 WL 1129647, at *4 (N.D. Miss. June 21, 1999) (granting summary judgment to manufacturer where treating physician was aware of the various risks associated with the medical device). Ms. Willie cites *Lim v. Ethicon, Inc.*, 2021 WL 612399, at *6 (S.D. Miss. Feb. 12, 2021), to suggest that summary judgment on a warnings causation motion turns on whether the physician was aware of the risk. Rec. Doc. 12280 at 9 ("Distinguishably, it is clear here that Dr. Patil was unaware of the risk of permanent hair loss associated with Taxotere in 2014, and, had Sanofi warned him of this risk, he would have taken a different course of action – shared this risk with his patient, Ms. Willie."). *Lim*, however, clearly recognizes that relevant conduct is whether the undisclosed risk would have changed the physician's decision to use the drug or device. *Lim*, 2021 WL 612399, at *6 ("Lim does not claim any additional warning by Defendants to Dr. Seago would have *caused him not to implant the TVT-O*.") (emphasis added).

Mississippi law asks whether the physician would still prescribe the drug to the plaintiff in light of the alleged risk. *Janssen Pharmaceutica, Inc. v. Bailey*, 878 So. 2d 31, 58 (Miss. 2004), *as modified on denial of reh'g* (Aug. 5, 2004) ("The Plaintiffs bear the burden of establishing that . .

2

. 'an adequate warning would have convinced the treating physician not to prescribe the product for the [P]laintiff[s].'" (quoting *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 811 (5th Cir. 1992))); *Cross v. Forest Labs.*, 102 F. Supp. 3d 896, 903 (N.D. Miss. 2015) ("Plaintiffs have not provided, and this court has been unable to find, any authority that would extend the meaning of 'altering the doctor's conduct' beyond the decision to prescribe or not to prescribe[.]").[1]

Dr. Patil would prescribe Taxotere and Cyclophosphamide ("TC") to Ms. Willie again knowing what he knows now about the association of Taxotere with permanent hair loss:

> Q. . . . And if Ms. Willie came in to you today with exactly the same diagnosis, would you have -- would your recommendation be the same, TC?
>
> A. If she needed chemotherapy, it would be the same regimen.
>
> ***
>
> Q. Today, with all this information about other therapies and risks and benefits, TC remains your -- would be your recommendation for her today?
>
> A. Yes.[2]

Although Dr. Patil clearly provides dispositive testimony on warnings causation under precedential Mississippi decisions, Ms. Willie's claims also fail under the additional questions under the Court's four-part framework.

---

[1] *See also Swintelski v. Am. Med. Sys., Inc.*, 2021 WL 687202, at *5 (S.D. Fla. Feb. 22, 2021) ("Under applicable Eleventh Circuit authorities, the critical inquiry is not whether Dr. Kahn would have communicated more information to his patient who then perhaps would have altered her decision to undergo the surgery. Instead, the relevant question is whether the additional risk information would have impacted the implanting physician's decision to implant the product at issue.").

[2] Rec. Doc. 12202-2 at ¶ 40 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation); Rec. Doc. 12280-1 at ¶ 40 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

## II.   MS. WILLIE HAS PRESENTED NO EVIDENCE THAT SHE WOULD HAVE INQUIRED INTO OTHER TREATMENT OPTIONS.

Ms. Willie never asked about others chemotherapy options but instead trusted Dr. Patil and heeded his advice.[3] Ms. Willie admits that she did not consider declining chemotherapy.[4] Ms. Willie also admits that she trusted Dr. Patil to make the right chemotherapy recommendation.[5] After Dr. Patil recommended TC, for example, Ms. Willie did not seek a second opinion or speak with anyone other than Dr. Patil about chemotherapy regimens,[6] and Ms. Willie did not ask about other treatment options.[7] In short, Ms. Willie would not have inquired into other treatment options.

## III.   MS. WILLIE HAS PRESENTED NO EVIDENCE THAT A DIFFERENT WARNING WOULD HAVE CAUSED DR. PATIL TO CHANGE HIS PRESCRIBING DECISION.

Ms. Willie must prove that "an adequate warning would have changed her doctor's prescribing decision."[8] Ms. Willie concedes that she cannot make this showing because Dr. Patil stands by his decision to prescribe a Taxotere-containing regimen.[9]

---

[3]   Rec. Doc. 9887 at 6 (Order and Reasons Granting Defs.' Mot. for Summ. J. on Warnings Causation) ("Indeed, the evidence suggests that [Ms. Phillips] never inquired about other options but instead trusted Dr. Sonnier and heeded his advice.").

[4]   Rec. Doc. 12202-2 at ¶ 20 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation); Rec. Doc. 12280-1 at ¶ 20 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[5]   Rec. Doc. 12202-2 at ¶¶ 17, 19 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation). Although Ms. Willie now attempts to "clarify" her testimony on this point, Ms. Willie points to no record evidence to support her re-characterization of the facts. Rec. Doc. 12280-1 at ¶ 17 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[6]   Rec. Doc. 12202-2 at ¶ 25 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation); Rec. Doc. 12280-1 at ¶ 25 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[7]   Rec. Doc. 12202-2 at ¶ 24 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation); Rec. Doc. 12280-1 at ¶ 24 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[8]   Rec. Doc. 9887 at 4 (Order and Reasons Granting Defs.' Mot. for Summ. J. on Warnings Causation); *accord* Rec. Doc. 9440 at 4 (Order and Reasons Granting Defs.' Mot. for Summ. J. on Warnings Causation).

[9]   Rec. Doc. 12202-2 at ¶ 40 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation); Rec. Doc. 12280-1 at ¶ 40 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

Although Ms. Willie asserts that Dr. Patil would have respected her decision to choose a different chemotherapy, Ms. Willie's argument presumes an alternative chemotherapy existed that Dr. Patil would have recommended. Dr. Patil encourages patients to be active participants in deciding which adjuvant chemotherapy regimen to use "**when there are choices[.]**"[10] Here, TC was the only choice that Dr. Patil would have recommended. Ms. Willie could have received one of two regimens for her HER2-negative breast cancer: TC or Adriamycin + Cyclophosphamide followed by Taxol ("AC+T").[11] Dr. Patil continues to prefer TC to treat early stage breast cancer patients like Ms. Willie.[12] If Ms. Willie had requested AC+T, however, Dr. Patil would not have prescribed the regimen unless Ms. Willie had received an echocardiogram and the evaluation showed that Ms. Willie's heart could handle the cardiotoxicity of Adriamycin.[13] Ms. Willie has adduced no facts in her Opposition to fill this evidentiary gap.

In an attempt to distinguish this Court's decision in *Phillips*, Ms. Willie's sole assertion is that "unlike Dr. Sonnier, Dr. Patil admitted that the patient makes the ultimate decision about whether to use a chemotherapy regimen."[14] But *Phillips* is directly on point. There, Dr. Sonnier testified that, had Ms. Phillips requested an alternative Adriamycin-containing regimen, he would not have given it. Likewise, Dr. Patil explained that, had Ms. Willie requested AC+T, he would

---

[10] Rec. Doc. 12202-2 at ¶ 41 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[11] Rec. Doc. 12202-2 at ¶ 33 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation); Rec. Doc. 12280-1 at ¶ 33 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[12] Rec. Doc. 12202-2 at ¶ 35 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation); Rec. Doc. 12280-1 at ¶ 35 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[13] Rec. Doc. 12202-2 at ¶¶ 46–47 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation); Rec. Doc. 12280-1 at ¶¶ 46–47 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[14] Rec. Doc. 12280 at 9 (Pl.'s Opp. to Defs.' Mot. for Summ. J. Based on Warnings Causation).

not have given it without further testing.[15]  As in *Phillips*, this Court's framework recognizes that the chemotherapy decision-making process is unique while also recognizing that treating oncologists will not prescribe certain regimens based on a plaintiff's diagnosis and health profile, even if requested by a plaintiff.

### IV.    MS. WILLIE WOULD HAVE ULTIMATELY SELECTED A TAXOTERE-CONTAINING REGIMEN.

Ms. Willie does not dispute that, under Mississippi law, the ultimate patient decision is analyzed using an objective standard.  *Dunn v. Yager*, 58 So. 3d 1171, 1201 n.27 (Miss. 2011). Applying that standard here, there is no dispute that a reasonable patient in Ms. Willie's position—like Ms. Willie herself—would have accepted her doctor's recommendation of TC (Dr. Patil's preferred regimen) to avoid the higher risk of cardiotoxicity of AC+T.[16]

Even if Ms. Willie's subjective testimony is considered, she has not met her burden.  The Opposition contains one conclusory assertion on this point:  "If Ms. Willie had been informed of the risk of permanent alopecia, she would have chosen another chemotherapy regimen with a lower risk: her desires to survive and to avoid potentially disfiguring side effects were not mutually exclusive."[17]  In support of this sweeping statement, the Opposition cites two excerpts from Ms. Willie's deposition:

> But if it -- how can I say this?  If it had of been some other type of treatment that wouldn't have taken my hair or whatever, you know, I probably would have gone with that or whatever.

                                        \*\*\*

---

[15]  Rec. Doc. 12202-2 at ¶¶ 46–47 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation); Rec. Doc. 12280-1 at ¶¶ 46–47 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[16]  Rec. Doc. 12202-2 at ¶¶ 34, 36 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[17]  Rec. Doc. 12280 at 8 (Pl.'s Opp. to Defs.' Mot. for Summ. J. Based on Warnings Causation).

> Like I say, if there were other options that would not have taken my hair or, you know -- or not allowing it to come back, then I wish those measures had of been taken.[18]

While Ms. Willie generally asserts that she would have chosen some other chemotherapy, the fourth prong of the Court's framework is not so abstract. All chemotherapies have unique risks and benefits, which must be matched against the cancer type and the patient's health history. It is undisputed that numerous other chemotherapies are associated with reports of permanent hair loss.[19] Consequently, to present a triable issue of fact, Ms. Willie must demonstrate: (1) which other chemotherapy regimens would have been offered by the oncologist that did not carry a risk of permanent hair loss; (2) what the oncologist would have conveyed to her about their risks and benefits during the vigorous and robust informed consent discussion; and then finally, (3) what the patient would have ultimately decided to do after having been fully informed of the risks and benefits of whatever other chemotherapy the oncologist might have been willing to prescribe. Without evidence sufficient to satisfy these issues, there is no triable issue of fact.

Ms. Willie would have accepted the risk of permanent hair loss based on a straightforward hypothetical. Ms. Willie was asked whether she would have accepted the TC regimen if she had been aware of reports of permanent hair loss associated with Cyclophosphamide (the "C" in

---

[18] *Id.* (citing Oct. 20, 2020 Willie Dep. 29:13–16, 33:17–20).

[19] Dr. Laura Plunkett, Dr. Antonella Tosti, and Dr. Ellen Feigel each testified in the *Earnest* trial that the alternatives to Taxotere are associated with reports of permanent hair loss. Rec. Doc. 8408 at 861:3–10, 873:20–874:21 (Sept. 18, 2020 Trial Tr.) (Dr. Plunkett); Rec. Doc. 8411 at 1030:6–1031:16, 1057:17–1058:23, 1128:24–1129:2 (Sept. 19, 2020 Trial Tr.) (Dr. Tosti); Rec. Doc. 8412 at 1236:12–22 (Sept. 19, 2020 Trial Tr.) (Dr. Feigel).

"TC").[20]  Ms. Willie testified that she would accept the regimen because "once again, hair loss or lose your life.  I mean, I'm not saying that would have changed my mind, no."[21]

Even assuming Dr. Patil would have recommended the AC+T regimen to Ms. Willie (he would not without additional testing absent from the record), Ms. Willie's undisputed testimony is that she would not have selected a regimen with a risk of permanent heart failure, such as AC+T, over a regimen with a risk of permanent hair loss.[22]  Hence, even if Ms. Willie would not have accepted a risk of permanent hair loss (she would), her undisputed testimony is that she would accept that risk before accepting the risk of permanent heart failure.

## V.    MS. WILLIE HAS FAILED TO ADDUCE ANY "OBJECTIVE EVIDENCE" TO THE EXTENT IT IS RECOGNIZED UNDER MISSISSIPPI LAW.

Ms. Willie invites the Court to ignore Dr. Patil's testimony when analyzing warnings causation and instead decide that issue by considering "objective evidence" of how a "reasonable

---

[20] Rec. Doc. 12202-2 at ¶ 30 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).  Ms. Willie attempts to place this fact in dispute.  Rec. Doc. 12280-1 at ¶ 30 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).  But her denials do not raise "genuine" disputes of fact.  First, Ms. Willie asserts that "she would not accept any and all risks to ensure that her cancer would not return."  This does not place in dispute Ms. Willie's testimony that she would accept a particular risk—permanent hair loss—to overcome breast cancer.  Second, Ms. Willie asserts that she "did not have the information necessary to make an informed decision about Taxotere."  The hypothetical, however, provides Ms. Willie with the necessary information to make an informed decision about a chemotherapy regimen with the particular risk at issue.  Third, Ms. Willie asserts that "had [she] known about the risk of permanent hair loss, she would have wanted to take another chemotherapy agent aside from Taxotere."  As the hypothetical shows, this assertion is simply false.

[21] Rec. Doc. 12202-2 at ¶ 30 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).  Ms. Willie attempts to place this fact in dispute and makes the same three objections outlined in footnote 20 verbatim.  Rec. Doc. 12280-1 at ¶ 30 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).  As explained above, the dispute is not genuine.

[22] Rec. Doc. 12202-2 at ¶ 43 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).  Ms. Willie again attempts to place this fact in dispute and makes the same three objections outlined in footnote 20 verbatim.  Rec. Doc. 12280-1 at ¶ 43 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).  As explained above, the dispute is not genuine.

physician" would have responded to an adequate warning—with such evidence coming from one of Ms. Willie's retained experts after the deadline for expert reports.[23]

The Court should reject Ms. Willie's invitation for three reasons:

*First*, the "objective evidence" standard is likely not an accurate statement of Mississippi law. That standard originated in *Hermes v. Pfizer, Inc.*, 848 F.2d 66, 69–70 (5th Cir. 1988), a case in which the Fifth Circuit uncritically quoted the following jury instruction given by the Southern District of Mississippi sitting in diversity in a pharmaceutical-warnings case:

> The plaintiff Laura Hermes has the burden of proving by a preponderance of the evidence, one, that her taking of Sinequan caused in fact the injury complained of and, two, that the warning, if any, given by Pfizer to plaintiff's prescribing physician was inadequate and, three, that *had an adequate warning been given, a reasonably prudent physician would not have prescribed Sinequan*.

The above-quoted instruction in *Hermes* is unaccompanied by a Mississippi case citation, an *Erie* guess, or any other indication that the "reasonably prudent physician" aspect of the instruction is actually a correct statement of Mississippi law. Notably, when *Hermes* was published in 1988, no existing Mississippi case had analyzed warnings causation using a "reasonably prudent physician" or similar standard. In fact, the Mississippi Supreme Court issued an opinion one month after *Hermes* analyzing warnings causation solely in terms of the plaintiff's treater. *See Wyeth Labs., Inc. v. Fortenberry*, 530 So. 2d 688, 691 (Miss. 1988) ("Fortenberry still had the burden of showing that an adequate warning would have altered Dr. Moore's conduct. The record contains no testimony showing that Dr. Moore would not have administered the flu shot if adequate warning had been given.").

Four years later, the Fifth Circuit in *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806 (5th Cir. 1992) cited *Hermes* (and no other cases) for the proposition that the Mississippi plaintiff could

---

[23] Rec. Doc. 12280 at 10–12 (Pl.'s Opp. to Defs.' Mot. for Summ. J. Based on Warnings Causation).

prove warnings causation with "objective evidence of how a *reasonable physician* would have responded to an adequate warning":

> To satisfy the burden of establishing warning causation, a plaintiff may introduce either *objective evidence of how a reasonable physician would have responded to an adequate warning*, or subjective evidence of how the treating physician would have responded.

*Thomas*, 949 F.2d at 812 (emphasis added) (citing *Hermes,* 848 F.2d at 69–70). Again, just as in *Hermes*, *Thomas* cites no Mississippi law or *Erie* guess to support the "reasonable physician" standard.[24] The other Fifth Circuit and Northern District of Mississippi cases that Ms. Willie cites in support merely parrot *Thomas*.

Ten years after *Thomas*, the Mississippi Supreme Court in *Bennett v. Madakasira*, 821 So. 2d 794 (Miss. 2002), quoted the above language from *Thomas* without independently addressing whether the "reasonable physician" language is an accurate statement of Mississippi law.[25] Notably, after *Bennett*, the only two Mississippi Supreme Court decisions to cite *Thomas* for a warnings causation standard have *omitted* the "objective evidence" / "reasonable physician" aspect of the standard. *See Bailey*, 878 So. 2d at 58 ("Plaintiffs bear the burden of establishing that Propulsid was the cause of their injuries and that 'an adequate warning would have convinced the

---

[24] Courts outside the Fifth Circuit have observed that the "objective evidence" standard in *Thomas* is an anomaly and not recognized outside the Fifth Circuit. *See, e.g.*, *Sauls v. Wyeth Pharm., Inc*., 846 F. Supp. 2d 499, 503 (D.S.C. 2012) (observing that "[n]o other jurisdiction that adheres to the learned intermediary doctrine has followed the approach taken by the Fifth Circuit" in *Thomas* ); *Schilf v. Eli Lilly & Co*., 2010 WL 4024922, at *4 n.3 (D.S.D. Oct. 13, 2010) ("It appears that only the Fifth Circuit has indicated that a plaintiff in some circumstances might be allowed to supplement the treating physician's testimony with objective evidence of how a reasonable physician would have responded to an adequate warning.").

[25] *See Bennett*, 821 So. 2d at 807, *abrogated on other grounds by Hutzel v. City of Jackson*, 33 So. 3d 1116 (Miss. 2010) ("The Fifth Circuit, applying Mississippi law, has said plaintiffs must establish, by the preponderance of the evidence, both: (1) that an adequate warning would have prevented the treating physician from administering the drug; and (2) that the injury would not have occurred had the drug not been administered. *Thomas*, 949 F.2d at 814. To satisfy this burden of proving causation, 'a plaintiff may introduce either objective evidence of how a reasonable physician would have responded to an adequate warning, or subjective evidence to establish how the treating physician would have responded.' *Id*.").

treating physician not to prescribe the product for the [P]laintiff[s].'" (citing *Thomas*, 949 F.2d at 812)); *Janssen Pharmaceutica, Inc. v. Armond*, 866 So. 2d 1092, 1101 (Miss. 2004) ("[E]ven if the warning is inadequate, the burden is on the plaintiffs to show that an adequate warning would have altered the doctor's conduct who prescribed the medication." (citing *Fortenberry*, 530 So. 2d at 691 and *Thomas*, 949 F.2d at 811–12)). With this history in mind, the Court should not decide the issue of warnings causation using an "objective evidence" standard, as that standard is likely not a correct statement of Mississippi law.

*Second*, even if the Court applied a "reasonable physician" standard, Ms. Willie's claims would still fail because she has no evidence to meet that standard. Ms. Willie states she "intends" to adduce such evidence in the future.[26] But the time for adducing such evidence is now. The parties agreed to the briefing schedule (where dispositive motions were filed before expert reports),[27] and the PSC had ample time to procure an affidavit from a hand-selected "reasonable physician" and attach it to Ms. Willie's Opposition. The PSC did not, and the Court should decide Sanofi's Motion on the current factual record.

The PSC cannot now claim ignorance. In its Opposition to Sanofi's Motion for Summary Judgment on Warnings Causation in *Phillips*, the parties also agreed to an analogous briefing schedule (where dispositive motions were filed before expert reports),[28] and the PSC made identical "objective evidence" arguments under Louisiana law and attached expert testimony in support (rather than the promise of a forthcoming expert report).[29] As in *Phillips*, the Court should

---

[26] Rec. Doc. 12280 at 10–12 (Pl.'s Opp. to Defs.' Mot. for Summ. J. Based on Warnings Causation).

[27] Rec. Doc. 12283 at 3 (CMO 14I) (setting Opposition Brief deadline for March 8, 2021, and Plaintiff's Expert Report deadline for April 23, 2021).

[28] Rec. Doc. 9367-1 at 1 (CMO 14E) (setting Opposition Brief deadline for February 28, 2020, and Plaintiff's Expert Report deadline for March 20, 2020).

[29] Rec. Doc. 9419 at 9 (Pl.'s Opp. to Defs.' Mot. for Summ. J. Based on Warnings Causation) ("Here, Plaintiff has supplemented Dr. Sonnier's testimony with evidence that a reasonable physician would have altered his or her

11

disregard the PSC's belated promise to inject legally questionable "objective evidence" into the warnings causation analysis and enter summary judgment in Sanofi's favor.

*Third*, any objective evidence of what a "reasonable physician" would do cannot overcome Dr. Patil's unequivocal testimony that he would still prescribe Taxotere to Ms. Willie. If *Thomas* is correct on Mississippi law, then any "objective evidence" "must be of sufficient weight to establish, by the preponderance of the evidence, at least some reasonable likelihood that an adequate warning would have prevented the plaintiff from receiving the drug." 949 F.2d at 812. The focus, then, remains on the treating physician's ultimate decision. Assuming "a plaintiff may be able to *supplement* [prescriber] testimony" with objective evidence, *Allgood v. GlaxoSmithKline PLC*, 2008 WL 483574, at *6 n.6 (E.D. La. Feb. 20, 2008), such evidence has no weight if it contradicts the prescriber's testimony. In *Thomas*, for example, the Fifth Circuit dismissed the plaintiff's attempt to offer objective evidence through another, non-treating doctor because the record evidence "eliminate[d] any reasonable possibility that the [warning] would have changed the decision of [the treating physician.]" 949 F.2d at 817. Here, there is no reasonable possibility that the warning would have changed Dr. Patil's decision. Dr. Patil—like the treating physician in *Thomas*—testified that he stood by his prescribing decision. *Id.* at 811; *see also id.* at 817 ("The possibility that [the treating physician] would have changed his decision if he had been warned . . . is too remote to create a genuine issue of fact with respect to warnings causation.").

---

prescribing practices had he or she been adequately warned by Defendants of the risk of permanent hair loss with Taxotere." (citing Sept. 20, 2019, Trial Tr. 1272–73)). The PSC cannot justify waiting to file expert reports in Ms. Willie's case. In *Phillips*, the PSC cited *Grenier v. Med. Engineering Corp.*, 243 F.3d 200, 205 n.4 (5th Cir. 2001), where the Fifth Circuit considered a physician's affidavit, not an expert report, in the summary judgment record.

**CONCLUSION**

For these reasons, the Court should grant Sanofi's motion for summary judgment on Ms. Willie's claims.

Respectfully submitted,

| | |
|---|---|
| */s/ Douglas J. Moore* | Harley V. Ratliff |
| Douglas J. Moore (Bar No. 27706) | Jon Strongman |
| **IRWIN FRITCHIE URQUHART & MOORE LLC** | Adrienne L. Byard |
| 400 Poydras Street, Suite 2700 | **SHOOK, HARDY & BACON L.L.P.** |
| New Orleans, LA 70130 | 2555 Grand Boulevard |
| Telephone: 504-310-2100 | Kansas City, Missouri 64108 |
| Facsimile: 504-310-2120 | Telephone: 816-474-6550 |
| dmoore@irwinllc.com | Facsimile: 816-421-5547 |
| | hratliff@shb.com |
| | jstrongman@shb.com |
| | abyard@shb.com |

*Counsel for Sanofi US Services Inc. and sanofi-aventis U.S. LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*