UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)            MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Cindy Smith, Case No. 2:18-cv-7702.

### DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT ON WARNINGS CAUSATION

In her Opposition, Plaintiff Cindy Smith asserts that a genuine issue of material fact exists because Ms. Smith's oncologist, Dr. Elizabeth Herrington, would have warned Ms. Smith of permanent hair loss in 2014. Even accepting that Dr. Herrington would have warned Ms. Smith, she cannot avoid summary judgment on warnings causation under Mississippi law or the Court's four-part framework because the ultimate treatment decision would not have changed.

First, under Mississippi law, Ms. Smith has failed to controvert Dr. Herrington's unequivocal testimony that she still would have prescribed Taxotere to Ms. Smith in 2014, even knowing what she knows today about the alleged risk of permanent hair loss and Taxotere. This is all that is required under Mississippi law.

Second, under the Court's framework, Ms. Smith has not shown that she and Dr. Herrington would have decided on anything other than a Taxotere-containing regimen. Although Ms. Smith asserts that she would have chosen a different chemotherapy if she was aware of the risk of permanent hair loss, Ms. Smith never considered declining treatment, and she cannot identify any non-Taxotere regimen that Dr. Herrington *would have prescribed*.

Third, under either approach, Ms. Smith suggests that she can offer "objective evidence" of what a "reasonable physician" would have prescribed. To the extent Mississippi law permits such consideration (a tenuous proposition at best), Ms. Smith has failed to come forward with such evidence now. Nor would this evidence, if offered, change the outcome in light of Dr. Herrington's testimony. As a result, Ms. Smith's claims are subject to summary judgment.

## ARGUMENT

### I. EVEN IF DR. HERRINGTON HAD WARNED MS. SMITH OF A RISK IN 2014, DR. HERRINGTON WOULD STILL HAVE PRESCRIBED A TAXOTERE-CONTAINING REGIMEN.

A treating physician's awareness of the risk is one of several ways a pharmaceutical manufacturer can establish a lack of warnings causation under Mississippi law. *Arinder v. Danek Med., Inc.*, 1999 WL 1129647, at *4 (N.D. Miss. June 21, 1999) (granting summary judgment to manufacturer where treating physician was aware of the various risks associated with the medical device). Ms. Smith cites *Lim v. Ethicon, Inc.*, 2021 WL 612399, at *6 (S.D. Miss. Feb. 12, 2021), to suggest that summary judgment on a warnings causation motion turns on whether the physician was aware of the risk. Rec. Doc. 12281 at 9 ("Conversely, it is clear here that Dr. Herrington was unaware of the risk of permanent hair loss associated with Taxotere in 2014, and, had Sanofi warned her of this risk, she would have taken a different course of action – shared this risk with her patient, Ms. Smith."). *Lim*, however, clearly recognizes that the relevant conduct is not general awareness, but rather whether the undisclosed risk would have changed the physician's decision to use the drug or device. *Lim*, 2021 WL 612399, at *6 ("Lim does not claim any additional warning by Defendants to Dr. Seago would have *caused him not to implant the TVT-O*.") (emphasis added).

Mississippi law asks whether the physician would still prescribe the drug to the plaintiff in light of the alleged risk. *Janssen Pharmaceutica, Inc. v. Bailey*, 878 So. 2d 31, 58 (Miss. 2004), *as*

2

*modified on denial of reh'g* (Aug. 5, 2004) ("The Plaintiffs bear the burden of establishing that . . . 'an adequate warning would have convinced the treating physician not to prescribe the product for the [P]laintiff[s].'" (quoting *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 811 (5th Cir. 1992))); *Cross v. Forest Labs.*, 102 F. Supp. 3d 896, 903 (N.D. Miss. 2015) ("Plaintiffs have not provided, and this court has been unable to find, any authority that would extend the meaning of 'altering the doctor's conduct' beyond the decision to prescribe or not to prescribe[.]").[1]

In this case, Dr. Herrington would prescribe Taxotere to Ms. Smith again knowing what she knows now about the association of Taxotere and permanent hair loss:

> Q. And is it correct that information that you have today about the association of Taxotere with permanent hair loss would not have factored into your decision making process to prescribe Taxotere and carboplatin to Ms. Smith?
>
> A. That's correct.
>
> Q. Okay. Knowing what you know today, you still would have prescribed Taxotere and carboplatin; correct?
>
> A. Yes.[2]

Likewise, when asked if she encourages her patients to be active participants in their chemotherapy treatment, Dr. Herrington testified, "You know, if they have that option, that's wonderful, but with

---

[1] *See also Swintelski v. Am. Med. Sys., Inc.*, 2021 WL 687202, at *5 (S.D. Fla. Feb. 22, 2021) ("Under applicable Eleventh Circuit authorities, the critical inquiry is not whether Dr. Kahn would have communicated more information to his patient who then perhaps would have altered her decision to undergo the surgery. Instead, the relevant question is whether the additional risk information would have impacted the implanting physician's decision to implant the product at issue.").

[2] Rec. Doc. 12199-2 at ¶ 41 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).  Ms. Smith disputes this fact in her Response to Sanofi's Statement of Undisputed Material Facts.  Rec. Doc. 12281-1 at ¶ 41 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).  But the dispute is not genuine as Ms. Smith has failed to identify any testimony from Dr. Herrington suggesting that she does *not* stand by her decision to prescribe Taxotere to Ms. Smith.

all due respect, it is not like a McDonald's menu where you can just go and pick and choose which ones you want."[3]

Ms. Smith's Opposition repeatedly asserts that other treatment options existed for Ms. Smith's type of breast cancer. This is simply not true. Dr. Herrington made clear that the only option available for Ms. Smith was a Taxotere-containing regimen (because she could not take an anthracycline):

> **Regimens for HER2-negative disease (all category 1[5]**
>
> **Preferred regimens:**
> - Dose-dense AC (doxorubicin/cyclophosphamide) followed by paclitaxel every 2 weeks
> - Dose-dense AC (doxorubicin/cyclophosphamide) followed by weekly paclitaxel
> - TC (docetaxel and cyclophosphamide)
>
> **Other regimens:**
> - Dose-dense AC (doxorubicin/cyclophosphamide)
> - FAC/CAF (fluorouracil/doxorubicin/cyclophosphamide)
> - FEC/CEF (cyclophosphamide/epirubicin/fluorouracil)
> - CMF (cyclophosphamide/methotrexate/fluorouracil)
> - AC followed by docetaxel every 3 weeks
> - AC followed by weekly paclitaxel
> - EC (epirubicin/cyclophosphamide)
> - FEC/CEF followed by T (fluorouracil/epirubicin/cyclophosphamide followed by docetaxel) or (fluorouracil/epirubicin/cyclophosphamide followed by weekly paclitaxel)
> - FAC followed by T (fluorouracil/doxorubicin/cyclophosphamide followed by weekly paclitaxel)
> - TAC (docetaxel/doxorubicin/cyclophosphamide)

*Ex. G: NCCN Clinical Practice Guidelines in Oncology, 2014.*

Dr. Herrington walked through *every* option at her deposition and explained why no other regimen was appropriate for Ms. Smith:

---

[3] Rec. Doc. 12199-2 at ¶ 40 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation). Again, Ms. Smith disputes this fact in her Response to Sanofi's Statement of Undisputed Material Facts. Rec. Doc. 12281-1 at ¶ 40 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation). Yet the dispute is not genuine. Ms. Smith has failed to identify any testimony that controverts Dr. Herrington's statement that she encourages her patients to be active participants in treatment *when they have options*.

Q. Okay. And so it was your opinion at the time that the dose that – I'm looking at the top, under "Preferred regimens," that the dose-dense AC was not appropriate; is that correct?

A. That's correct.

Q. And the next one down as well, the dose-dense AC.

A. That's correct.

Q. And then the third one down, the TC is what was actually prescribed; correct?

A. Yes, that's correct.

Q. Okay. Under "Other regimens" just below that, are there other regimens listed there that would have been appropriate for Ms. Smith, even with her underlying condition?

A. No.
…
Q. Is the third one down under "Other regimens," the FEC/CEF, would that have been an appropriate regimen for Ms. Smith?

A. No, it would not because the epirubicin is also an anthracycline.

Q. Okay. And same question for the CMF, the next one down?

A. I don't think she would have had much of a fair chance in her situation with a CMF.

Q. Do you recall why?

A. It's a less aggressive regimen.

Q. Okay. All right. And then the next two down, I believe because it includes the anthracycline, correct, those wouldn't be appropriate?

A. That's exactly right.

Q. Okay. And EC, would that have been an appropriate regimen for Ms. Smith?

A. No.

Q. Why is that?

> A. Because of the anthracycline.
>
> Q. Okay. Around then, finally, the next one down, FEC/CEF, is that different from the FEC/CEF above?
>
> A. It still has the anthracycline in it so I wouldn't have wanted to use that for her.[4]

Contrary to what Plaintiff represents, there were no other options available.

Although Dr. Herrington clearly provides dispositive testimony on warnings causation under precedential Mississippi decisions, Ms. Smith's claims also fail under the additional questions posed by this Court's four-part framework.

## II. MS. SMITH HAS PRESENTED NO EVIDENCE THAT SHE WOULD HAVE INQUIRED INTO OTHER TREATMENT OPTIONS.

Ms. Smith never asked about other chemotherapy options but instead trusted her treating oncologist and heeded her advice.[5] The evidence Ms. Smith cites in her Opposition does not create a genuine dispute of fact. That Ms. Smith read about her cancer diagnosis[6] (but not treatment options) or asked about side effects she experienced[7] (*after* she had accepted a Taxotere-containing regimen) does not refute Ms. Smith's material admissions. Ms. Smith admits she never considered declining treatment.[8] Ms. Smith admits that she never asked about other treatment options.[9] And

---

[4] Rec. Doc. 12199-5, Ex. C to Defs.' Mot. for Summ. J. on Warnings Causation, Oct. 14, 2020 Herrington Dep. 44:23–46:16 (objections omitted).

[5] Rec. Doc. 9887 at 6 (Order and Reasons Granting Defs.' Mot. for Summ. J. on Warnings Causation) ("Indeed, the evidence suggests that [Ms. Phillips] never inquired about other options but instead trusted Dr. Sonnier and heeded his advice.").

[6] Rec. Doc. 12281 at 8 (Pl.'s Opp. to Defs.' Mot. for Summ. J. Based on Warnings Causation).

[7] *Id.* at 8–9.

[8] Rec. Doc. 12199-2 at ¶ 14 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation); Rec. Doc. 12281-1 at ¶ 14 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[9] Rec. Doc. 12199-2 at ¶ 13 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation); Rec. Doc. 12281-1 at ¶ 13 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

Ms. Smith admits that she relied on and trusted her doctors to prescribe the most effective treatment because she was not prepared to determine an appropriate treatment.[10] In any event, whether Ms. Smith would have inquired into other treatment options has no bearing on the ultimate treatment decision because a Taxotere-containing regimen was Ms. Smith's only option.

### III. MS. SMITH HAS PRESENTED NO EVIDENCE THAT A DIFFERENT WARNING WOULD HAVE CAUSED DR. HERRINGTON TO CHANGE HER PRESCRIBING DECISION.

Ms. Smith must prove that "an adequate warning would have changed her doctor's prescribing decision."[11] Nowhere in her Opposition does Ms. Smith dispute that Dr. Herrington stands by her decision to prescribe a Taxotere-containing regimen. Although Ms. Smith asserts that Dr. Herrington would have respected Ms. Smith's decision to choose a different treatment regimen, Ms. Smith's argument presumes an alternative chemotherapy existed. Neither Dr. Herrington nor Ms. Smith identified any alternative chemotherapy regimen to treat Ms. Smith's aggressive triple-negative breast cancer.[12] Dr. Herrington, instead, was steadfast that Ms. Smith needed a Taxotere-containing regimen to treat Ms. Smith's aggressive cancer.[13]

In an attempt to distinguish this Court's decision in *Phillips*, Ms. Smith's sole assertion is that "unlike Dr. Sonnier, Dr. Herrington admitted that the patient makes the ultimate decision about whether to use a chemotherapy regimen."[14] But *Phillips* is directly on point. There, Dr. Sonnier testified that, had Ms. Phillips requested an alternative Adriamycin-containing regimen, he would

---

[10] Rec. Doc. 12199-2 at ¶ 17 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation); Rec. Doc. 12281-1 at ¶ 17 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[11] Rec. Doc. 9887 at 4 (Order and Reasons Granting Defs.' Mot. for Summ. J. on Warnings Causation); *accord* Rec. Doc. 9440 at 4 (Order and Reasons Granting Defs.' Mot. for Summ. J. on Warnings Causation).

[12] Rec. Doc. 12199-1 at 6–8 (Defs.' Mem. of Law in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[13] Rec. Doc. 12199-2 at ¶ 41 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[14] Rec. Doc. 12281 at 9 (Pl.'s Opp. to Defs.' Mot. for Summ. J. Based on Warnings Causation).

not have given it. Likewise, Dr. Herrington explained that, had Ms. Smith requested anything but a Taxotere-containing regimen, Dr. Herrington would not have given it.[15] As in *Phillips*, this Court's framework recognizes that the chemotherapy decision-making process is unique while also recognizing that treating oncologists will not prescribe certain regimens based on a plaintiff's diagnosis and health profile, even if requested by a plaintiff.[16]

## IV. MS. SMITH WOULD HAVE ULTIMATELY SELECTED A TAXOTERE-CONTAINING REGIMEN.

Ms. Smith does not dispute that, under Mississippi law, the ultimate patient decision is analyzed using an objective standard. *Dunn v. Yager*, 58 So. 3d 1171, 1201 n.27 (Miss. 2011). Applying that standard here, there is no dispute that a reasonable patient in Ms. Smith's position—like Ms. Smith herself—would have accepted her doctor's recommendation for a Taxotere-containing chemotherapy regimen, rather than declining chemotherapy, to treat "aggressive" Stage IIIb, triple-negative breast cancer.[17]

Even if Ms. Smith's subjective testimony is considered, she has not met her burden. All chemotherapies, whether used alone or in combination with other drugs, have unique risks and benefits, all which must be matched against the cancer type and the patient's health history. It is undisputed that numerous other chemotherapies are associated with reports of permanent hair

---

[15] Rec. Doc. 12199-2 at ¶ 39 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation); Rec. Doc. 12281-1 at ¶ 39 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[16] Like Dr. Sonnier, Dr. Herrington recognizes patient choice *when a choice exists*. When asked whether she encourages patients to be active participants to decide their chemotherapy regimen, Dr. Herrington explained that "if they have that option, that's wonderful, but with all due respect, it is not like a McDonald's menu where you can just go and pick and choose which ones you want." Rec. Doc. 12199-2 at ¶ 40 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[17] Rec. Doc. 12199-2 at ¶¶ 6, 8, 28–34 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

loss.[18] Consequently, to present a triable issue of fact, Ms. Smith must demonstrate: (1) which other chemotherapy regimens would have been offered by the oncologist that did not carry a risk of permanent hair loss; (2) what the oncologist would have conveyed to her about their risks and benefits during the vigorous and robust informed consent discussion; and then finally, (3) what the patient would have ultimately decided to do after having been fully informed of the risks and benefits of whatever other chemotherapy the oncologist might have been willing to prescribe. Without evidence sufficient to satisfy these issues, there is no triable issue of fact.

While Ms. Smith generally asserts that she would have chosen "something else," she does not identify what those regimens might be.[19] Nor does Ms. Smith attempt to address Dr. Herrington's testimony that rules out each of the 2014 NCCN regimens except for a Taxotere-containing regimen based on Ms. Smith's diagnosis and health profile.[20] Dr. Herrington would not have prescribed an anthracycline because Ms. Smith had underlying heart problems.[21] Dr. Herrington would not have prescribed Cyclophosphamide, Methotrexate, and Fluorouracil ("CMF") to Ms. Smith because it was "less aggressive," and Ms. Smith "would not have had much of a fair chance" on this regimen.[22] The only options available to Ms. Smith under the NCCN

---

[18] Dr. Laura Plunkett, Dr. Antonella Tosti, and Dr. Ellen Feigel each testified in the *Earnest* trial that the alternatives to Taxotere are associated with reports of permanent hair loss. Rec. Doc. 8408 at 861:3–10, 873:20–874:21 (Sept. 18, 2020 Trial Tr.) (Dr. Plunkett); Rec. Doc. 8411 at 1030:6–1031:16, 1057:17–1058:23, 1128:24–1129:2 (Sept. 19, 2020 Trial Tr.) (Dr. Tosti); Rec. Doc. 8412 at 1236:12–22 (Sept. 19, 2020 Trial Tr.) (Dr. Feigel).

[19] Rec. Doc. 12281 at 10–12 (Pl.'s Opp. to Defs.' Mot. for Summ. J. Based on Warnings Causation).

[20] Rec. Doc. 12199-1 at 6–8 (Defs.' Mem. of Law in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[21] Rec. Doc. 12199-2 at ¶ 34 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation); Rec. Doc. 12281-1 at ¶ 34 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[22] Rec. Doc. 12199-2 at ¶ 35 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation); Rec. Doc. 12281-1 at ¶ 35 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

guidelines included Taxotere.[23] Ms. Smith has failed to identify any appropriate alternative regimen, and, ultimately, she would have selected a Taxotere-containing regimen.

## V. MS. SMITH HAS FAILED TO ADDUCE ANY "OBJECTIVE EVIDENCE" TO THE EXTENT IT IS RECOGNIZED UNDER MISSISSIPPI LAW.

Ms. Smith invites the Court to ignore Dr. Herrington's testimony when analyzing warnings causation and instead decide the issue by considering "objective evidence" of how a "reasonable physician" would have responded to an allegedly adequate warning—though the Court must wait for such evidence to appear in a forthcoming report by one of Ms. Smith's retained experts.[24]

The Court should reject Ms. Smith's invitation for three reasons:

*First*, the "objective evidence" standard is likely not an accurate statement of Mississippi law. That standard originated in *Hermes v. Pfizer, Inc.*, 848 F.2d 66, 69–70 (5th Cir. 1988), a case in which the Fifth Circuit uncritically quoted the following jury instruction given by the Southern District of Mississippi sitting in diversity in a pharmaceutical-warnings case:

> The plaintiff Laura Hermes has the burden of proving by a preponderance of the evidence, one, that her taking of Sinequan caused in fact the injury complained of and, two, that the warning, if any, given by Pfizer to plaintiff's prescribing physician was inadequate and, three, that *had an adequate warning been given, a reasonably prudent physician would not have prescribed Sinequan*.

The above-quoted instruction in *Hermes* is unaccompanied by a Mississippi case citation, an *Erie* guess, or any other indication that the "reasonably prudent physician" aspect of the instruction is actually a correct statement of Mississippi law. Notably, when *Hermes* was published in 1988, no existing Mississippi case had analyzed warnings causation using a "reasonably prudent physician" or similar standard. In fact, the Mississippi Supreme Court issued an opinion one month after

---

[23] Rec. Doc. 12199-2 at ¶ 39 (Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation); Rec. Doc. 12281-1 at ¶ 39 (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

[24] Rec. Doc. 12281 at 10–12 (Pl.'s Opp. to Defs.' Mot. for Summ. J. Based on Warnings Causation).

*Hermes* analyzing warnings causation solely from the perspective of the plaintiff's treater.  *See Wyeth Labs., Inc. v. Fortenberry*, 530 So. 2d 688, 691 (Miss. 1988) ("Fortenberry still had the burden of showing that an adequate warning would have altered Dr. Moore's conduct.  The record contains no testimony showing that Dr. Moore would not have administered the flu shot if adequate warning had been given.").

Four years later, the Fifth Circuit in *Thomas v. Hoffman-LaRoche, Inc*., 949 F.2d 806 (5th Cir. 1992) cited *Hermes* (and no other cases) for the proposition that the Mississippi plaintiff could prove warnings causation with "objective evidence of how a *reasonable physician* would have responded to an adequate warning":

> To satisfy the burden of establishing warning causation, a plaintiff may introduce either *objective evidence of how a reasonable physician would have responded to an adequate warning*, or subjective evidence of how the treating physician would have responded.

*Thomas*, 949 F.2d at 812 (emphasis added) (citing *Hermes,* 848 F.2d at 69–70).  Again, just as in *Hermes*, *Thomas* cites no Mississippi law or *Erie* guess to support the "reasonable physician" standard.[25]  The other Fifth Circuit and Northern District of Mississippi cases that Ms. Smith cites in support merely parrot *Thomas*.

Ten years after *Thomas*, the Mississippi Supreme Court in *Bennett v. Madakasira*, 821 So. 2d 794 (Miss. 2002), quoted the above language from *Thomas* without independently addressing whether the "reasonable physician" language is an accurate statement of Mississippi law.[26]

---

[25] Courts outside the Fifth Circuit have observed that the "objective evidence" standard in *Thomas* is an anomaly and not recognized outside the Fifth Circuit.  *See, e.g*., *Sauls v. Wyeth Pharm., Inc*., 846 F. Supp. 2d 499, 503 (D.S.C. 2012) (observing that "[n]o other jurisdiction that adheres to the learned intermediary doctrine has followed the approach taken by the Fifth Circuit" in *Thomas* ); *Schilf v. Eli Lilly & Co*., 2010 WL 4024922, at *4 n.3 (D.S.D. Oct. 13, 2010) ("It appears that only the Fifth Circuit has indicated that a plaintiff in some circumstances might be allowed to supplement the treating physician's testimony with objective evidence of how a reasonable physician would have responded to an adequate warning.").

[26] *See Bennett*, 821 So. 2d 7at 807, *abrogated on other grounds by Hutzel v. City of Jackson*, 33 So. 3d 1116 (Miss. 2010) ("The Fifth Circuit, applying Mississippi law, has said plaintiffs must establish, by the preponderance of

11

Notably, after *Bennett*, the only two Mississippi Supreme Court decisions to cite *Thomas* for a warnings causation standard have *omitted* the "objective evidence" / "reasonable physician" aspect of the standard. *See Bailey*, 878 So. 2d at 58 ("Plaintiffs bear the burden of establishing that Propulsid was the cause of their injuries and that 'an adequate warning would have convinced the treating physician not to prescribe the product for the [P]laintiff[s].'" (quoting *Thomas*, 949 F.2d at 812)); *Janssen Pharmaceutica, Inc. v. Armond*, 866 So. 2d 1092, 1101 (Miss. 2004) ("[E]ven if the warning is inadequate, the burden is on the plaintiffs to show that an adequate warning would have altered the doctor's conduct who prescribed the medication." (citing *Fortenberry*, 530 So. 2d at 691 and *Thomas*, 949 F.2d at 811–12)). With this history in mind, the Court should not decide the issue of warnings causation using an "objective evidence" standard, as that standard is likely not a correct statement of Mississippi law.

*Second*, even if the Court applied a "reasonable physician" standard, Ms. Smith's claims would still fail because she has no evidence to meet that standard. Ms. Smith states she "intends" to adduce such evidence in the future.[27] But the time for adducing such evidence is now. The parties agreed to the briefing schedule (where dispositive motions were filed before expert reports),[28] and the PSC had ample time to procure an affidavit from a hand-selected "reasonable physician" and attach it to Ms. Smith's Opposition. The PSC did not, and the Court should decide Sanofi's Motion on the current factual record.

---

the evidence, both: (1) that an adequate warning would have prevented the treating physician from administering the drug; and (2) that the injury would not have occurred had the drug not been administered. *Thomas*, 949 F.2d at 814. To satisfy this burden of proving causation, 'a plaintiff may introduce either objective evidence of how a reasonable physician would have responded to an adequate warning, or subjective evidence to establish how the treating physician would have responded.' *Id.*").

[27] Rec. Doc. 12281 at 10–12 (Pl.'s Opp. to Defs.' Mot. for Summ. J. Based on Warnings Causation).

[28] Rec. Doc. 12283 at 3 (CMO 14I) (setting Opposition Brief deadline for March 8, 2021, and Plaintiff's Expert Report deadline for April 23, 2021).

The PSC cannot now claim ignorance. In its Opposition to Sanofi's Motion for Summary Judgment on Warnings Causation in *Phillips*, the parties also agreed to an analogous briefing schedule (where dispositive motions were filed before expert reports),[29] and the PSC made identical "objective evidence" arguments under Louisiana law and attached expert testimony in support (rather than the promise of a forthcoming expert report).[30] As in *Phillips*, the Court should disregard the PSC's belated promise to inject legally questionable "objective evidence" into the warnings causation analysis.

*Third*, any objective evidence of what a "reasonable physician" would do cannot overcome Dr. Herrington's unequivocal testimony that she would still prescribe Taxotere to Ms. Smith. If *Thomas* is correct on Mississippi law, then any "objective evidence" "must be of sufficient weight to establish, by the preponderance of the evidence, at least some reasonable likelihood that an adequate warning would have prevented the plaintiff from receiving the drug." 949 F.2d at 812. The focus, then, remains on the treating physician's ultimate decision. Assuming "a plaintiff may be able to *supplement* [prescriber] testimony" with objective evidence, *Allgood v. GlaxoSmithKline PLC*, 2008 WL 483574, at *6 n.6 (E.D. La. Feb. 20, 2008), such evidence has no weight if it contradicts the prescriber's testimony. In *Thomas*, for example, the Fifth Circuit dismissed the plaintiff's attempt to offer objective evidence through another, non-treating doctor because the record evidence "eliminate[d] any reasonable possibility that the [warning] would

---

[29] Rec. Doc. 9367-1 at 1 (CMO 14E) (setting Opposition Brief deadline for February 28, 2020, and Plaintiff's Expert Report deadline for March 20, 2020).

[30] Rec. Doc. 9419 at 9 (Pl.'s Opp. to Defs.' Mot. for Summ. J. Based on Warnings Causation) ("Here, Plaintiff has supplemented Dr. Sonnier's testimony with evidence that a reasonable physician would have altered his or her prescribing practices had he or she been adequately warned by Defendants of the risk of permanent hair loss with Taxotere." (citing Sept. 20, 2019, Trial Tr. 1272–73)). The PSC cannot justify waiting to file expert reports in Ms. Smith's case. In *Phillips*, the PSC cited *Grenier v. Med. Engineering Corp.*, 243 F.3d 200, 205 n.4 (5th Cir. 2001), where the Fifth Circuit considered a physician's affidavit, not an expert report, in the summary judgment record.

have changed the decision of [the treating physician.]" 949 F.2d at 817. Here, there is no reasonable possibility that the warning would have changed Dr. Herrington's decision. Dr. Herrington—like the treating physician in *Thomas*—testified that she stood by her prescribing decision. *Id.* at 811; *see also id.* at 817 ("The possibility that [the treating physician] would have changed his decision if he had been warned . . . is too remote to create a genuine issue of fact with respect to warnings causation.").

## CONCLUSION

For these reasons, the Court should grant Sanofi's motion for summary judgment on Ms. Smith's claims.

Respectfully submitted,

| | |
|---|---|
| */s/ Douglas J. Moore* <br> Douglas J. Moore (Bar No. 27706) <br> **IRWIN FRITCHIE URQUHART & MOORE LLC** <br> 400 Poydras Street, Suite 2700 <br> New Orleans, LA 70130 <br> Telephone: 504-310-2100 <br> Facsimile: 504-310-2120 <br> dmoore@irwinllc.com | Harley V. Ratliff <br> Jon Strongman <br> Adrienne L. Byard <br> **SHOOK, HARDY & BACON L.L.P.** <br> 2555 Grand Boulevard <br> Kansas City, Missouri 64108 <br> Telephone: 816-474-6550 <br> Facsimile: 816-421-5547 <br> hratliff@shb.com <br> jstrongman@shb.com <br> abyard@shb.com <br> <br> ***Counsel for Sanofi US Services Inc. and sanofi-aventis U.S. LLC*** |

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*