UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL No. 16-2740 SECTION: "H" (5) |
| **This document relates to:** Elizabeth Kahn, 16-17039 | ) ) ) | |

## ORDER AND REASONS

Before the Court is Plaintiff's Motion to Exclude Dr. Shapiro's Opinions (Doc. 11361). The Court held oral argument on the Motion on December 14, 2020. For the following reasons, the Motion is **DENIED.**

## BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel,[1] that Plaintiffs were administered for the treatment of breast cancer or other forms of cancer. Among these companies are Defendants sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc. (collectively, "Sanofi" or "Defendants"). Plaintiffs allege that the drug caused permanent alopecia—in other words, permanent hair loss. Plaintiffs bring claims of failure to warn, negligent misrepresentation, fraudulent misrepresentation, and more. The first bellwether trial was held in September 2019, and the second trial is set for 2021.[2]

In the instant Motion, Plaintiff Elizabeth Kahn, the second bellwether plaintiff, moves to exclude the testimony of Dr. Jerry Shapiro. Dr. Shapiro is a

---

[1] Docetaxel is the generic version of Taxotere.
[2] The second trial was continued due to the COVID-19 pandemic.

dermatologist who runs a hair loss clinic in New York, and Sanofi intends to call him as an expert witness at trial. Sanofi opposes Plaintiff's Motion.

## LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.[3]

The current version of Rule 702 reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharms., Inc.*[4] and *Kumho Tire Co. v. Carmichael*.[5] The threshold inquiry in determining whether an individual may offer expert testimony under Rule 702 is whether the individual has the requisite qualifications.[6] After defining the permissible scope of the expert's testimony, a court next assesses whether the opinions are reliable and relevant.[7] As the

---

[3] FED. R. EVID. 702.
[4] 509 U.S. 579 (1993).
[5] 526 U.S. 137 (1999).
[6] Wagoner v. Exxon Mobil Corp., 813 F. Supp. 2d 771, 799 (E.D. La. 2011). *See also* Wilson v. Woods, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject.").
[7] *See* United States v. Valencia, 600 F.3d 389, 424 (5th Cir. 2010). *See also* Wellogix, Inc. v. Accenture, L.L.P., 716 F.3d 867, 881–82 (5th Cir. 2013).

"gatekeeper" of expert testimony, the trial court enjoys broad discretion in determining admissibility.[8]

First, to assess reliability, a court considers whether the reasoning or methodology underlying the expert's testimony is valid.[9] The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.[10] Courts should exclude testimony based merely on subjective belief or unsupported speculation.[11] Courts must, however, give proper deference to the traditional adversary system and the role of the jury within that system.[12] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[13] After assessing reliability, a court evaluates relevance.[14] In doing so, a court must determine whether the expert's reasoning or methodology "fits" the facts of the case and will thereby assist the trier of fact in understanding the evidence.[15]

Federal Rule of Evidence 703 further provides that an expert may offer opinions based on otherwise inadmissible facts or data but only if (1) they are of the kind reasonably relied upon by experts in the particular field; and (2) the testimony's probative value substantially outweighs its prejudicial effect.[16]

## LAW AND ANALYSIS

Plaintiff argues that Dr. Shapiro's opinions are inadmissible because (1) he is not a pathologist, and (2) he did not conduct a general causation analysis.

---

[8] *Wellogix*, 716 F.3d at 881.
[9] *See Daubert*, 509 U.S. at 592–93.
[10] *See* Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir. 1998).
[11] *See Daubert*, 509 U.S. at 590.
[12] *See id.* at 596.
[13] *Id.*
[14] Burst v. Shell Oil Co., 120 F. Supp. 3d 547, 551 (E.D. La. June 9, 2015).
[15] *Id.*
[16] FED. R. EVID. 703.

3

Regarding the second argument, this Court has made clear that Sanofi, unlike Plaintiff, is not required to prove general causation.[17] The Court, therefore, will address only Plaintiff's first argument in this opinion.

In his report, Dr. Shapiro considers the findings of Dr. Curtis Thompson. Dr. Thompson is a pathologist and one of Plaintiff's experts in this MDL. He reviewed two biopsies taken from Plaintiff Kahn's scalp, and he provided pathology reports on them.[18] Dr. Shapiro explains that while he agreed with Dr. Thompson that "Biopsy A" showed androgenetic alopecia,[19] he disagreed with Dr. Thompson's report for "Biopsy B." Dr. Thompson concluded that Biopsy B showed permanent chemotherapy-induced alopecia ("PCIA"), but Dr. Shapiro stated as follows: "I do not agree with this diagnosis. Medical literature establishes that lower follicular density, a shift in terminal/vellus ratio, as well as a decreased anagen to catagen/telogen ratio are indicative of androgenetic alopecia."[20] Plaintiff argues that because Dr. Shapiro is not a pathologist, he is not qualified to offer such an opinion on Plaintiff's pathology results. In response, Sanofi argues that dermatologists routinely consider pathology findings in making their diagnoses.

The Court finds that Dr. Shapiro is qualified to offer the opinions at issue. Dr. Shapiro has more than 30 years of experience specializing in hair disorders as both a practitioner and a researcher.[21] In his report, he explains that his clinical practice "is 100% dedicated to treating patients for disorders

---

[17] *See* Doc. 11780 (Order and Reasons on Plaintiff's Motion to Exclude Testimony of Dr. John Glaspy). Plaintiff further argues that because Dr. Shapiro did not address general causation in his expert report, his report does not comply with Federal Rule of Civil Procedure 26. Because Dr. Shapiro was not required to opine on general causation, he need not have included a general causation analysis in his report.
[18] *See* Doc. 11361-9 at 48.
[19] *Id.* at 48–49.
[20] *Id.* at 49.
[21] *Id.* at 2.

4

of the hair and scalp."[22] As part of this practice, he routinely considers pathological findings in diagnosing his patients.[23]

Similarly, Dr. Antonella Tosti, one of Plaintiff's expert dermatologists, considered Dr. Thompson's pathology findings in forming her opinions for this case.[24] In her report, Dr. Tosti noted that to properly identify a type of alopecia, "[p]atients must consult a dermatologist."[25] She stated, too, that "[d]efinitive diagnosis of hair disorders, particularly of scarring alopecias, often requires a scalp biopsy."[26] Dr. Shapiro and Dr. Tosti both make clear that the practice of dermatology requires some familiarity—if not a great deal of familiarity—with pathology. The Court, therefore, is not persuaded by Plaintiff's argument that Dr. Shapiro is not qualified to opine on Plaintiff's hair loss because he is not an expert in dermatopathology. He is sufficiently qualified.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Exclude Dr. Shapiro's Opinions (Doc. 11361) is **DENIED.**

New Orleans, Louisiana, this 7th day of April, 2021.

_____
JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE

---

[22] *Id.*
[23] *See id.* at 20.
[24] *See* Doc. 11494-4 at 20.
[25] *See id.* at 7.
[26] *Id.* at 24.