UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)  MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO
Guilbault v. Hospira, Case No. 2:16-cv-17061

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO HOSPIRA'S MOTION FOR SUMMARY JUDGMENT BASED ON STATUTE OF LIMITATIONS**

MAY IT PLEASE THE COURT:

As illustrated in Plaintiff's Responses to Defendant's Statement of Undisputed Material Facts and Plaintiff's Statement of Contested Material Facts, there are genuine issues of material fact that must necessarily be resolved by a factfinder in order to evaluate Louisiana's tolling rule, i.e., *contra non valentem*, as it applies to Plaintiff Clare Guilbault's claims against Hospira.

Setting aside the disputed issue of material fact whether Ms. Guilbault had actual or constructive knowledge of sustaining permanent chemotherapy induced alopecia (PCIA), and the genuine issue of material fact whether Ms. Guilbault in fact has PCIA (a fact which will likely be disputed at trial), Ms. Guilbault made multiple inquiries to her healthcare providers, including several dermatologists, about the cause of her ongoing hair loss following completion of her chemotherapy. Ms. Guilbault has alleged that, and has provided sufficient evidence for the jury to evaluate whether, she reasonably relied on statements of her healthcare providers such that *contra non valentem* is applicable.

For these reasons more fully outlined below, and under the Court's prior holdings in this MDL applying the Louisiana law of liberative prescription and *contra non valentem*, Ms. Guilbault's claims are not prescribed.

1

## I. LEGAL STANDARD

Summary judgment is improper unless the moving party shows there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Generally, the fact finder should resolve exceptions to liberative prescription because the determination of when a prescriptive period accrues is an inquiry dependent on the testimony of the plaintiff and her healthcare providers. *See Chiasson v. Medtronic Inc.*, Nos. 16-789, 16-3552, 16-3721, 2016 WL 4191837, at *6 (E.D. La. August 9, 2016) ("In cases of medical products liability, the accrual of a case and the reasonableness of delay in filing suit often hinge on the testimony of the plaintiff and his or her doctor."); *see also Body by Cook v. Ingersoll-Rand Co.*, 39 F. Supp. 3d 827, 838 (E.D. La. 2014) (The application of "*contra non valentem* is generally a question of fact that may go to the jury for resolution."); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inference from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

## II. ARGUMENT

In Louisiana, the applicable statute of limitations—otherwise known as the prescriptive period—for actions under the Louisiana Product Liability Act ("LPLA") is one year from the day injury or damage is sustained. *See* La Civ. Code art. 3492; *Am. Zurich Ins. Co. v. Caterpillar, Inc.*, 12-270 (La. App. 3 Cir. 2012), 99 So.3d 739, 741 (noting that La. Civ. Code art. 3492 applied to claims under the LPLA). Based on a misreading of paragraph 181 in the Plaintiffs' Steering Committee's ("PSC") Second Amended Master Long Form Complaint (Rec. Doc. 4407), Hospira applies a *de facto* six month trigger date for prescription, claiming that Ms. Guilbault's prescriptive period began to run six months after Ms. Guilbault completed chemotherapy.

Even if the defining of an injury in a complaint can be interpreted as an allegation of knowledge at the time the injury was being suffered, as Hospira suggests, the Louisiana Supreme Court recognizes the doctrine of *contra non valentem,* "which is a judicially created exception to the general rules of prescription that is applied to ameliorate the sometimes harsh consequences resulting from the strict interpretation of prescription statutes." *Morgan v. Entergy New Orleans, Inc.*, 234 So. 3d 113, 116 (La. App. 4 Cir. 2017). This doctrine tolls the prescriptive period when the plaintiff is prevented from acting under one of four scenarios, including "where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant" and "where the defendant has done some act effectually to prevent the plaintiff from availing himself of his cause of action." *Id.* As discussed below, both scenarios are applicable to toll the prescriptive period of Ms. Guilbault's claims against Hospira.

### A. Hospira has the Burden of Proof at This Stage, and There is No Burden-Shifting Rule.

"When the issue of prescription is raised, '[t]he burden of proof generally rests on the party asserting prescription. However, when a complaint reveals on its face that the prescriptive period has lapsed, the plaintiff bears the burden of establishing a suspension or interruption of the prescriptive period.'" *Becnel v. Mercedes-Benz USA, LLC*, No. 14-0003, 2014 WL 1918468, at *4 (E.D. La. May 13, 2014).

However, this burden-shifting rule only applies if the defendant files an exception, and it does not apply at the summary judgment stage. Accordingly, the burden of proof rests entirely on the defendant here, and Hospira is not entitled to the burden-shifting rule. In *Trahan v. BP Am. Prod. Co., 2016-267 (La. App. 3 Cir. 12/7/16), 209 So. 3d 166, writ denied, 2017-0022 (La. 3/24/17), 216 So. 3d 815,* the Louisiana Third Circuit reversed the granting of a summary judgment motion based on prescription. The appellate court found that, upon the trial court determining that

the plaintiff's claims were facially prescribed, the trial court erred in shifting the burden of proof to the plaintiff to prove the applicability of *contra non valentem*, without first requiring that the defendant meet the "particularly exacting" burden of proving the date that plaintiff knew or should have known of the damage. *Id.* at 172. The court reasoned that "the filing of a motion for summary judgment based on the plea of prescription practically subjects the movers to a higher burden of proof than if the movers had filed only the peremptory exception of prescription. The burden of proof on the movers for summary judgment ... is particularly exacting in that they are required to prove, based solely on documentary evidence and without the benefit of testimony at a hearing, that there is no genuine material factual issue in dispute regarding the day upon which plaintiff acquired or should have acquired knowledge of the damage." *Id.* at 170. The appellate court contrasted this standard with the standard required of a defendant pleading an exception of prescription, which "subjects the exceptor to proving, by a preponderance of the evidence, that the plaintiff's claim has prescribed." *Id.*[1]

Similarly, citing *Trahan*, the Western District of Louisiana recently acknowledged that "[i]n the context of a summary judgment motion, the burden rests with Defendants to demonstrate that there is no genuine material factual issue in dispute regarding when a plaintiff acquired actual or constructive knowledge of the damage." *Boudreaux v. Axiall Corp.*, No. CV 18-0956, 2021 WL 1138261, at *5 (W.D. La. Mar. 23, 2021).

---

[1] The *Trahan* court found: "At the outset, we note that the general premise of BP's motion for summary judgment was that Plaintiffs' claims against it had prescribed on the face of the petition, and thus, the burden of proof shifted to Plaintiffs to prove that prescription was suspended by the application of *contra non valentem*. That premise is fundamentally flawed. Because BP chose to file a motion for summary judgment based on prescription rather than an exception of prescription, no such shifting of the burden of proof to the non-movant occurred. Instead, as the mover on summary judgment, BP was "required to prove, based solely on documentary evidence and without the benefit of testimony at a hearing, that there is no genuine material factual issue in dispute regarding the date upon which plaintiffs acquired actual or constructive knowledge of the damage." *Trahan v. BP Am. Prod. Co.*, 2016-267 (La. App. 3 Cir. 12/7/16), 209 So. 3d 166, 172, *writ denied*, 2017-0022 (La. 3/24/17), 216 So. 3d 815.

As illustrated below, the record is replete with disputed factual issues, and Hospira has not met its burden at the summary judgment stage.

**B.    There are Genuine Issues of Material Fact Concerning When Ms. Guilbault Discovered Her Injuries and Their Relationship To Docetaxel.**

Under the doctrine of *contra non valentem*, prescription is suspended "[w]here the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant." *Marin v. Exxon Mobil Corp.*, 48 So.3d 234, 245 (La. 2010). Just as with a "discovery rule," prescription is tolled until "a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is a victim of a tort." *Campo*, 828 So. 2d at 510*; see also In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592, No. 15-4790, 2017 WL 4517287, at *2 (E.D. La. Oct. 10, 2017).

**1.    Ms. Guilbault Reasonably Believed Her Hair Would Grow Back Until She Saw an Attorney Advertisement in 2016.**

Constructive knowledge is defined as "whatever notice is enough to excite attention and put the injured party on guard and call for inquiry." *Campo*, 828 So. 2d at 510-11. But constructive knowledge "requires more than a mere apprehension that something might be wrong. Prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable." *Griffin v. Kinberger*, 507 So.2d 821, 823 (La. 1987) (citing *Cardova v. Hardford Accident & Indemnity Co.*, 387 So.2d 571 (La. 1980)).

Here, Ms. Guilbault was unaware that she was suffering from permanent alopecia caused by Docetaxel until she saw an attorney advertisement in 2016 regarding litigation about Docetaxel and permanent hair loss. *See* Plaintiff's Responses to Defendant's Statement of Undisputed Material Facts and Plaintiff's Statement of Contested Material Facts at ¶60. Before such time, it

5

was not unreasonable for Ms. Guilbault to believe that her hair would eventually return or that her ongoing hair loss was caused by androgenetic alopecia. Temporary alopecia is a well-known side effect of chemotherapy treatment, and Ms. Guilbault knew that chemotherapy could cause temporary hair loss. Indeed, based on the consent form that Ms. Guilbault received and her conversations with Dr. Chris Theodossiou, her treating oncologist, Ms. Guilbault believed that her hair would fully regrow following chemotherapy. *Id.* at ¶15.

Dr. Theodossiou was unaware at the time he treated Ms. Guilbault that Docetaxel could cause permanent hair loss. *Id.* at ¶60. In her discussions with Dr. Theodossiou at the time he prescribed Docetaxel to her, Ms. Guilbault does recall certain potential side effects being discussed but permanent hair loss was not one of them. *Id.* at ¶13. Ms. Guilbault conducted her own research, including reading and educating herself on breast cancer, and firmly believed that if she had difference of opinion with her treaters, including Dr. Theodossiou, it was her choice as to whether or not to proceed with treatment. *Id.* at ¶14. The totality her conversations with Dr. Theodossiou and his staff indicated that her hair would fully regrow following chemotherapy. *Id.* at ¶22.

Therefore, it was not unreasonable for Ms. Guilbault to believe that chemotherapy would cause only temporary—and not permanent—hair loss.

> **2. Even if Ms. Guilbault had Constructive Knowledge Six Months After Completion of Chemotherapy with Docetaxel, She Undertook a Reasonable Inquiry that Tolled the Running of Prescription under the Doctrine of Contra Non Valentem.**

"[W]hen a plaintiff suspects something is wrong, he must seek out those whom he believes may be reasonable for the specific injury, and when a plaintiff acts reasonably to discover the cause of a problem, the prescriptive period [does] not begin to run until [he has] a reasonable basis to pursue a claim against a specific defendant." *Chevron USA, Inc. v. Aker Mar., Inc.*, 604 F.3d 888, 893-94 (5th Cir. 2010) (internal citations omitted). "The ultimate issue is the reasonableness of

6

the [plaintiff's] action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct." *Campo*, 828 So 2d at 511 (internal citations omitted). "Courts have summarized the *contra non valentem* doctrine as an inquiry into the 'reasonableness' of the victim's behavior in light of his perceived injuries." *Jenkins v. Bristol-Myers Squibb*, 2016 WL 10100281, at *6 (E.D. La. July 8, 2016) (internal citations omitted).

In December of 2014, Ms. Guilbault saw Dr. Theodossiou and inquired about the cause of her ongoing lack of hair regrowth. *See* Plaintiff's Responses to Defendant's Statement of Undisputed Material Facts and Plaintiff's Statement of Contested Material Facts at ¶38. Dr. Theodossiou instructed her to take a multi-vitamin and to continue to give her hair time to regrow. *Id.* At no point did Dr. Theodossiou inform Ms. Guilbault during the course of that visit that the condition of her may never improve and that she may have permanent hair loss caused by Docetaxel. *Id.*

Again, in April of 2015, Ms. Guilbault inquired to Dr. Theodossiou about the cause of her ongoing hair loss during the course of a follow up visit, and she was directed to consult a dermatologist. *Id.* at ¶47. As a result, Ms. Guilbault sought out the advice of three different dermatologists. No dermatologist, nor her oncologist, ever told her she had permanent hair loss from Docetaxel. *Id.* at ¶48. Rather, Dr. Nia Terezakis, a dermatologist, as confirmed in her deposition, believed that Ms. Guilbault was suffering from androgenetic alopecia and recommended that she use Rogaine and special treatments to treat androgenetic alopecia. Dr. Terezakis was aware that Ms. Guilbault had undergone chemotherapy treatments but nonehtless informed Ms Guilbault that the cause of her ongoing hair loss was androgenetic alopecia unrelated to her chemotherapy. *Id*.

7

Additionally, Ms. Guilbault inquired with Dr. Hooper, another dermatologist, about the cause of her ongoing hair loss, and Dr. Hooper recommended she use Rogaine and asserted that it would cause Ms. Guilbault to experience hair regrowth. *Id.* at ¶50. Rogaine is a treatment used primarily for androgenetic alopecia. Ms. Guilbault tried Rogaine, but it did not result in sufficient hair regrowth.

The record illustrates that Ms. Guilbault never knew that she was suffering from permanent hair loss caused by Docetaxel. She made multiple inquiries to her prescribing oncologist and dermatologists, seeking to identify the cause of her ongoing hair loss, and she was led to believe that her hair would regrow and/or that her hair loss was caused by androgenetic alopecia. Dr. Terezakis explicitly testified that Ms. Guilbault was experiencing androgenetic alopecia that did not relate to chemotherapy.

Hospira faults Ms. Guilbault for believing that her hair would regrow and relying on her treating physicians' advice. But improperly placing blame on the victim is precisely what the doctrine of *contra non valentem* seeks to avoid. *See Wimberly v. Gatch,* 635 So. 2d 206, 212 (La. 1994) (doctrine arising from a "long-established principle of law that one should not be able to take advantage of his own wrongful act."). Indeed, the facts at bar align with those in cases where *contra non valentem* was found to apply. For example, in *Hoerner v. Wesley–Jensen, Inc.,* 684 So.2d 508 (La. App. 4 Cir. 1996), the plaintiff developed a severe eye infection, necessitating a corneal transplant, as a result of a defective extended-wear contact lens. More than two years after developing the eye infection, the plaintiff reviewed a magazine article regarding the connection between the use of extended-wear lenses and the significantly increased risk of eye infections. The defendants argued that the causal relationship between contact lenses and ulcerative keratitis was widely evident prior to the plaintiff's eye infection, and that common knowledge should have been

8

construed as constructive knowledge on the part of the plaintiff. The court rejected those arguments, holding that "the knowledge that contact lens use in general could cause infection is not sufficient to put [the plaintiff] on notice that her infection and ensuing injury resulted from wearing the extended-wear contact lenses." *Id.*

Similarly, in *Guillot v. Daimlerchrysler Corp.*, 50 So.3d 173 (La. App. 4 Cir. 2010), the Fourth Circuit Court of Appeals upheld a finding that prescription was tolled until the plaintiffs had sufficient facts to elicit a cause of action. There, the plaintiffs, a husband and wife, were preparing for a drive in their Jeep Grand Cherokee when the vehicle suddenly went into reverse and crushed the wife and their unborn child. *Id.* at 178. The plaintiffs believed the husband had unknowingly placed the vehicle in reverse. *Id.* at 182. More than two years following the accident, plaintiffs learned of a defect in Grand Cherokees that would cause them to spontaneously reverse in such a way and filed suit. *Id.* 179-180. The defendant claimed that the plaintiffs' claim had prescribed because plaintiffs were aware on the date the accident the facts upon which to base a cause of action. The Fourth Circuit Court affirmed the trial court's application of *contra non valentem*, holding that the plaintiffs had no reason to suspect anything other than the husband's driving mistake until they received information more than two years later regarding the defect. *Id.* at 182-83.

In *Cortez v. DePuy Orthopaedics, Inc.*, No. 15-617, 2016 WL 633665, at *1 (E.D. La. Feb. 17, 2016), the plaintiff began experiencing pain in her knee in March 2012 and was notified by her orthopedic surgeon that she required revision surgery because the tibial component of her prosthetic knee had loosened in November 2013. However, the plaintiff's orthopedic surgeon testified that loosening of a prosthetic knee could stem from multiple causes. *Id.* at *3. Indeed, the plaintiff's orthopedic surgeon suspected that a knee infection caused the loosening, and neither

9

the plaintiff nor her orthopedic surgeon knew that the cement had not integrated until he performed the revision surgery in February 2014. *Id.* at *1. As such, the court rejected the defendant's argument that prescription commenced in November 2013 because the plaintiff did not have actual or constructive notice that the defendant's bone cement caused the loosening until February 2014. *Id.* at *4.

Likewise, as in those cases, neither Ms. Guilbault nor any physician she consulted attributed her failure to regrow her hair to chemotherapy (which she understood to cause only temporary alopecia) until 2016, when she learned otherwise through media. Dr. Theodossiou was unaware at the time he treated Ms. Guilbault that Docetaxel could cause permanent hair loss. *Id.* at ¶60. Accordingly, Ms. Guilbault's understanding through these intervening years was reasonable and in line with that of physicians prescribing these chemotherapy drugs, including her oncologist, many of whom did not link Docetaxel to permanent hair loss before the time Ms. Guilbault filed suit in 2016, years after completing her chemotherapy. It was reasonable for Ms. Guilbault to rely on the advice of her treating physicians, including Dr. Terezakis' assertion that her hair loss was androgenetic alopecia unrelated to chemotherapy, as she continued to investigate the cause of her ongoing hair loss.

## CONCLUSION

Under this Court's prior rulings applying Louisiana law on liberative prescription and contra non valentem, Plaintiff's case is not prescribed. Ms. Guilbault made multiple inquiries to her healthcare providers regarding her ongoing hair loss after completing chemotherapy with Docetaxel. In light of this testimony from Ms. Guilbault and her healthcare providers and the evidence demonstrating Hospira's concealment of the risk permanent hair loss with Docetaxel, there are genuine issues of material fact for the jury necessary to evaluate liberative prescription.

Dated: April 22, 2021  Respectfully submitted,

/s/ Christopher L. Coffin
Christopher L. Coffin (#27902)
Jessica A. Perez (#34024)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Attorneys for Plaintiff*

## FOR THE PLAINTIFFS' STEERING COMMITTEE

/s/ Christopher L. Coffin
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

/s/ Karen B. Menzies
Karen Barth Menzies (CA Bar #180234)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

J. Kyle Bachus
Bachus & Schanker, LLC
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045 Phone:
510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

John Gomez
The Gomez Law Firm, PLLC
655 West Broadway, Suite 1700
San Diego, CA 92101
Phone: (619) 237.3490
Fax: 619.237.3496.
john@thegomezfirm.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, FL 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904 15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

Jessica Perez Reynolds
Pendley, Baudin & Coffin
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Phone: (225) 687-6396
Fax: (225) 687-6398
jperez@pbclawfirm.com

Darin L. Schanker
Bachus Schanker
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
dls@coloradolaw.net

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Zachary Wool
Barrios Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
zwool@bkc-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ Dawn M. Barrios*
DAWN M. BARRIOS