**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO Guilbault v. Hospira, Case No. 2:16-cv-17061 | |

**PLAINTIFF'S RESPONSES TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND PLAINTIFF'S STATEMENT OF CONTESTED MATERIAL FACTS**

Pursuant to Local Rule 56.2, Plaintiff, Clare Guilbault, submits the following response to Defendant's Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment:

1. Admitted.

2. Admitted.

3. Admitted to the extent that Ms. Guilbault had a mammogram in July of 2013 and was subsequently asked to return for a second mammogram in August of 2013.

4. Admitted to the extent that following her second mammogram, Ms. Guilbault underwent a biopsy of her left breast which confirmed that she had breast cancer.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted to the extent that the location of the lesion on the spine precluded Ms. Guilbault's treating doctors from safely obtaining a biopsy. Given that the lesion could not be biopsied,

Ms. Guilbault was treated as having curable cancer and proceeded with chemotherapy treatment. See Exhibit 1, Deposition of Dr. Theodossiou, at 66:12-68:12.

11. Admitted.

12. Admitted.

13. Admitted that the extent Dr. Theodossiou documented discussing the pros and cons with Ms. Guilbault but denied to the extent it is implied that Ms. Guilbault understood that permanent hair loss was a risk which was explained to her. As Ms. Guilbault made clear, she does recall certain potential side effects being discussed but permanent hair loss was not one of them. See Exhibit 2, Deposition of Clare Guilbault, at 160:3-21.

14. Denied to the extent it is implied that Ms. Guilbault blindly followed the advice offered by her treating physicians. Ms. Guilbault conducted her own research and firmly believed that if she had difference of opinion with her treaters, including Dr. Theodossiou, it was her choice as to whether or not to proceed with treatment. Exhibit 2 at 97:10 - 100:2.

15. Denied to the extent it is implied that Ms. Guilbault was counseled by Dr. Theodossiou about the risk of permanent hair loss. Based on the consent form that Ms. Guilbault received and her conversations with Dr. Theodossiou, Ms. Guilbault believed that her hair would fully regrow following chemotherapy. Exhibit 2 at 217:17-218:3 and 182:9-183:11.

16. Admitted.

17. Admitted to the extent that Ms. Guilbault received Adriamycin, Cytoxan and Docetaxel as her chemotherapy treatment, but denied to the extent it is implied that Ms. Guilbault accepted the potential risk of permanent hair loss.

18. Denied to the extent is it implied that the consent form adequately warned Ms. Guilbault that the use of Docetaxel carried with it the risk of permanent hair loss. Exhibit 2 at 217:17-218:3 and 182:9-183:11.

19. Denied to the extent is it implied that the consent form adequately warned Ms. Guilbault that the use of Docetaxel carried with it the risk of permanent hair loss. Exhibit 2 at 217:17-218:3 and 182:9-183:11.

20. Admitted that Ms. Guilbault received educational materials but denied that those educational materials disclosed the risk of permanent hair loss.

21. Admitted.

22. Admitted to the extent that Ms. Guilbault did not expect that her hair would grow back exactly the same as she was aware of the potential for her hair to grow back a different texture or color. Denied to the extent is implied that Dr. Theodossiou or his staff communicated to Ms. Guilbault's that she may experience permanent hair loss as a result of her use of Docetaxel. Rather, all of her conversations with Dr. Theodossiou and his staff indicated that her hair would fully regrow following chemotherapy. Exhibit 2 at 164:17-25; 217:17-218:3 and 182:9-183:11.

23. Admitted.

24. Admitted.

25. Admitted that Ms. Guilbault was prescribed Arimidex as a part of her cancer treatment because she had an estrogen driven cancer. Exhibit 1 at 100:3-17.

26. Admitted.

27. Admitted.

28. Admitted.

29. Admitted that Ms. Guilbault is cancer free following her breast cancer treatment in 2013 and therefore did not have metastatic breast cancer.

30. Admitted.

31. Admitted.

32. Admitted that Ms. Guilbault experienced hair loss during her use of Adriamycin and Cytoxan but denied to the extent is implied that Adriamycin and Cytoxan are the underlying cause of her permanent hair loss.

33. Admitted that Ms. Guilbault did experience some hair regrowth but denied that Ms. Guilbault ever experienced full hair regrowth.

34. Denied. Ms. Guilbault's hair did experience some regrowth following chemotherapy as documented in her journal and that at some point in time the regrowth plateaued, and she did not experience any additional continuous regrowth since that time in December of 2014. Exhibit 2 at 215:10-222:5.

35. Admitted.

36. Admitted.

37. Admitted that Ms. Guilbault asked her treating oncologist, Dr. Theodossiou, in April of 2014, just two months after finishing chemotherapy, when her hair would begin to regrow. Ms. Guilbault was instructed by Dr. Theodossiou to give it another month. Exhibit 2 at 216:2-15.

38. Admitted that Ms. Guilbault saw Dr. Theodossiou again in December of 2014 and inquired about her hair regrowth. Dr. Theodossiou instructed her to take a multi-vitamin and to continue to give her hair time to regrow. At no point did Dr. Theodossiou inform Ms.

   Guilbault during the course of that visit that the condition of her hair may never improve and that she may have permanent hair loss caused by Docetaxel. Exhibit 2 at 219:7-222:8.

39. Admitted.

40. Admitted.

41. Admitted.

42. Admitted.

43. Admitted.

44. Admitted that Ms. Guilbault investigated the cause of her ongoing hair loss and sought treatments to regrow her hair but denied to the extent it is implied that Ms. Guilbault was aware that she was suffering from permanent hair loss caused by Docetaxel. Exhibit 2 at 284:12-25.

45. Admitted that Ms. Guilbault also tried Rogaine in attempt to regrow her hair. Denied to the extent it is implied that Ms. Guilbault was aware that she was suffering from permanent hair loss caused by Docetaxel. Exhibit 2 at 284:12-25.

46. Admitted.

47. Admitted that Ms. Guilbault inquired to Dr. Theodossiou about the cause of her hair loss during the course of a follow up visit in April of 2015 and that she was directed to consult a dermatologist. Exhibit 2 at 235:1-11.

48. Admitted that Ms. Guilbault did not experience full hair regrowth from her use of multivitamins. As a result of Dr. Theodossiou recommending that she consult a dermatologist to further investigate the cause of her ongoing hair loss, Ms. Guilbault sought out the advice of three different dermatologists. No dermatologist, nor her oncologist, ever told her she had permanent hair loss from Docetaxel. Exhibit 2 at 161:24-164:7. Rather,

Dr. Terezakis, as confirmed in her deposition, believed that Ms. Guilbault was suffering from androgenetic alopecia and recommended that she use Rogaine and special treatments to treat androgenetic alopecia. Dr. Terezakis was aware that Ms. Guilbault had undergone chemotherapy treatments but nonetheless informed Ms. Guilbault that the cause of her hair loss was androgenetic alopecia unrelated to her chemotherapy. Exhibit 3 at 30:15-25; 31:1-20; 38:8-10; 39:13; 40:8-12.

49. Admitted.

50. Admitted that Ms. Guilbault inquired with Dr. Hooper about her hair loss and that Dr. Hooper recommended she use Rogaine and asserted that it would cause Ms. Guilbault to experience hair regrowth. Rogaine is a treatment used primarily for androgenetic alopecia. Ms. Guilbault tried Rogaine, but it did not result in sufficient hair regrowth. Denied to the extent it is implied that Ms. Guilbault knew that she was suffering from permanent hair loss caused by Docetaxel. Exhibit 2 at 161:24-164:7.

51. Admitted that Ms. Guilbault inquired with Dr. Hooper about her hair loss and that Dr. Hooper recommended she use Rogaine and asserted that it would cause Ms. Guilbault to experience hair regrowth. Rogaine is a treatment used primarily for androgenetic alopecia. Ms. Guilbault tried Rogaine, but it did not result in sufficient hair regrowth. Denied to the extent it is implied that Ms. Guilbault knew that she was suffering from permanent hair loss caused by Docetaxel. Exhibit 2 at 161:24-164:7.

52. Denied to the extent is implied that Plaintiff requested a break and changed her testimony after the break. The break was initiated by defense counsel and upon return from the break defense counsel asked for additional details about whether Ms. Guilbault used the phrase

permanent hair loss or not during her exchange with Dr. Hooper. Exhibit 2 at 110:5-14-115:14.

53. Admitted that Ms. Guilbault used Rogaine for an extended period of time hoping to see improvement in her condition, based on being diagnosed with androgenetic alopecia, but denied to the extent it is implied that Ms. Guilbault was aware that she was suffering from permanent alopecia caused by Docetaxel.

54. Admitted to the extent that Ms. Guilbault sought out an opinion regarding the cause of her hair loss from Dr. Terezakis. Denied to the extent is implied that Dr. Terezakis confirmed that Ms. Guilbault's hair loss was caused by her use of Docetaxel. To the contrary, Dr. Terezakis diagnosed Ms. Guilbault with androgenetic alopecia. Exhibit 3 at 38:8-10; 39:13; 40:8-12.

55. Admitted that Ms. Guilbault stated she had underwent chemotherapy but denied to extent it is implied Ms. Guilbault knew that she was suffering from permanent hair loss caused by Docetaxel. To the contrary, Dr. Terezakis, despite this knowledge, diagnosed Ms. Guilbault with androgenetic alopecia. Exhibit 3 at 38:8-10; 39:13; 40:8-12.

56. Admitted.

57. Admitted.

58. Admitted.

59. Admitted that Ms. Guilbault was still suffering from alopecia at the time of her visit with Dr. Theodossiou.

60. Denied to the extent it is implied that Ms. Guilbault clearly knew that she was suffering from permanent hair loss caused by Docetaxel, as her testimony is clear that she was unaware of the association until she saw a television advertisement in 2016. Exhibit 2 at

245:7-16; 284:10-25.  Furthermore, this alleged conversation is not recorded in Dr. Theodossiou's records.  Dr. Theodossiou was unaware at the time he treated Ms. Guilbault that Docetaxel could cause permanent hair loss.  Exhibit 1 at 137:4-9.  His entire testimony is based on speculation as to whether he may or may not have relayed such information to Ms. Guilbault.  However, Ms. Guilbault has consistently testified that she was unaware that she may be suffering from permanent hair loss caused by Docetaxel until she saw a television advertisement in 2016. Exhibit 2 at 245:7-16; 284:10-25.

61. Denied to the extent it is implied that Dr. Theodossiou told Ms. Guilbault that her hair loss was permanent and could have been caused by Docetaxel.  Furthermore, Ms. Guilbault testified that she was uncertain of the timeframe in which she showed Dr. Theodossiou her hair without a wig on.  Exhibit 2 at 243:7-16.

62. Admitted.

63. Admitted that Ms. Guilbault alleges that she suffers from permanent alopecia as a result of her use of Docetaxel.

64. Admitted that Ms. Guilbault sought out numerous opinions from various medical professionals regarding the cause of her unexplained ongoing hair loss and has held out hope that her hair would fully regrow following chemotherapy as she was unaware that she was suffering from permanent chemotherapy induced alopecia from her use of Docetaxel prior to seeing a television ad in 2016.

65. Admitted.

66. Admitted to the extent that Ms. Guilbault sought legal counsel after seeing the advertisement.

67. Admitted.

68. Admitted.

69. Admitted.

Plaintiff hereby submits her Statement of Contested Material Facts in Support of Plaintiff's Opposition to Hospira's Motion for Summary Judgment Based on Statute of Limitations:

1. Whether Ms. Guilbault has permanent hair loss?

2. Whether Ms. Guilbault suffers from permanent chemotherapy induced alopecia (PCIA)?

3. Whether Docetaxel can cause PCIA?

4. Whether Docetaxel can cause permanent hair loss?

5. When Ms. Guilbault's PCIA manifested?

6. When Ms. Guilbault's hair loss transitioned from temporary to permanent?

7. Can Arimidex cause permanent hair loss?

8. When Ms. Guilbault was on actual or constructive notice of sustaining PCIA?

9. When Ms. Guilbault was on actual or constructive notice of sustaining PCIA as a result of Docetaxel?

10. When Ms. Guilbault was on actual or constructive notice of sustaining PCIA as a result of a tort?

11. When Ms. Guilbault was on actual or constructive notice of sustaining PCIA as a result of Hospira's failure to warn of PCIA?

12. Whether Hospira admits that the Docetaxel label did not warn of *permanent* hair loss until December of 2015.

13. Whether Hospira concealed its knowledge of the association between Docetaxel and permanent hair loss?

14. Whether Hospira concealed its knowledge of the association between Docetaxel and PCIA?

15. When was there a safety signal sufficient for Hospira to make a label change to warn of the association between Docetaxel and permanent hair loss?

16. Whether Ms. Guilbault made a reasonable inquiry to her physicians about her hair loss?

17. Whether Ms. Guilbault reasonably relied on the representations of her physicians?

18. Whether Ms. Guilbault acted reasonably in continuing to hope her hair would regrow?

19. Whether Ms. Guilbault acted reasonably in light of Dr. Terezakis informing her that she had androgenetic alopecia unrelated to chemotherapy?

20. When Ms. Guilbault had knowledge of the delineation between permanent and temporary hair loss?

21. Whether Ms. Guilbault possessed sufficient knowledge of her injury and its cause to trigger an inquiry?

22. Whether Hospira's conduct triggered application of the doctrine of contra non valentem?

23. Whether Ms. Guilbault's action or inaction was reasonable in light of her level of education and knowledge and in light of defendants' conduct in failing to disclose the risk of permanent alopecia that it had internally recognized?

24. Whether Ms. Guilbault's sustained cellular level injuries that are not discernible without a dermatoscope and/or a biopsy by a dermatologist?

25. When Ms. Guilbault's sustained cellular level injuries that are not discernible without a dermatoscope and/or a biopsy by a dermatologist?

26. Whether Ms. Guilbault's hormone therapy caused temporary hair thinning?

27. Whether Ms. Guilbault sustained age-related natural hair loss?

28. Whether PCIA must be differentially diagnosed?

29. Whether PCIA shares characteristics with androgenetic alopecia?

30. Whether PCIA can be diagnosed by a lay person?

31. When was PCIA accepted by the medical community?

32. Whether Docetaxel can be isolated as a cause of PCIA?

33. Whether Hospira had some basis to believe a causal association existed between docetaxel and permanent hair loss before Ms. Guilbault was administered docetaxel?

34. Whether there existed evidence in the public, at Hospira, or elsewhere rising to the level of some basis to believe a causal association existed between docetaxel and permanent hair loss when Ms. Guilbault's duty to inquire arose?

35. Whether Hospira failed to exercise its duty to exercise reasonable care to provide an adequate warning of the risk of permanent hair loss?

Dated: April 22, 2021            Respectfully submitted,

*/s/ Christopher L. Coffin*
Christopher L. Coffin (#27902)
Jessica A. Perez (#34024)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Attorneys for Plaintiff*

## FOR THE PLAINTIFFS' STEERING COMMITTEE

*/s/ Christopher L. Coffin*
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

*/s/ Karen B. Menzies*
Karen Barth Menzies (CA Bar #180234)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

J. Kyle Bachus
Bachus & Schanker, LLC
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045 Phone:
510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

John Gomez
The Gomez Law Firm, PLLC
655 West Broadway, Suite 1700
San Diego, CA 92101
Phone: (619) 237.3490
Fax: 619.237.3496.
john@thegomezfirm.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, FL 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Jessica Perez Reynolds
Pendley, Baudin & Coffin
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Phone: (225) 687-6396
Fax: (225) 687-6398
jperez@pbclawfirm.com

Darin L. Schanker
Bachus Schanker
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
dls@coloradolaw.net

| | |
|---|---|
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904 15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Hunter J. Shkolnik<br>Napoli Shkolnik PLLC<br>360 Lexington Avenue, 11th Floor<br>New York, NY 10017<br>Phone: (212) 397-1000<br>hunter@napolilaw.com |
| Daniel P. Markoff<br>Atkins & Markoff Law Firm<br>9211 Lake Hefner Parkway, Suite 104<br>Oklahoma City, OK 73120<br>Phone: (405) 607-8757<br>Fax: (405) 607-8749<br>dmarkoff@atkinsandmarkoff.com | Zachary Wool<br>Barrios Kingsdorf & Casteix, LLP<br>701 Poydras Street, Suite 3650<br>New Orleans, LA 70139<br>Phone: (504) 524-3300<br>Fax: (504) 524-3313<br>zwool@bkc-law.com |

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ Dawn M. Barrios*
DAWN M. BARRIOS