1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF LOUISIANA

3

4

IN RE:   TAXOTERE (DOCETAXEL)      *
5          PRODUCTS LIABILITY        *   Docket No.: 16-MD-2740
         LITIGATION                  *   Section "H(5)"
6                                    *   April 14, 2021
    *This Document Relates To All Cases*   New Orleans, Louisiana
7    * * * * * * * * * * * * * * * * * *

8          TRANSCRIPT OF SHOW CAUSE HEARING PROCEEDINGS
9    HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
           UNITED STATES DISTRICT JUDGE
10

11

APPEARANCES:
12

For the Plaintiffs:          Barrios, Kingsdorf & Casteix, LLP
13                             BY:  DAWN BARRIOS, ESQ.
                             701 Poydras Street
14                             Suite 3650
                             New Orleans, Louisiana 70139
15

16

                             Gainsburgh, Benjamin, David,
17                              Meunier & Warshauer, LLC
                             BY:  CLAIRE E. BERG, ESQ.
18                             2800 Energy Centre
                             1100 Poydras Street
19                             New Orleans, Louisiana 70163-2800

20

21

22

23

24

25

OFFICIAL TRANSCRIPT

```
 1   APPEARANCES:

 2   For Sanofi S.A.:            Irwin Fritchie Urquhart
                                   & Moore, LLC
 3                              BY:  KELLY BRILLEAUX, ESQ.
                                400 Poydras Street, Suite 2700
 4                              New Orleans, Louisiana 70130

 5

 6   For Sandoz, A Novartis
     Division:                  Greenburg Traurig
 7                              BY:  NICHOLAS A. INSOGNA, ESQ.
                                1840 Century Park East
 8                              Suite 1900
                                Los Angeles, California 90067
 9

10

11   For Accord Healthcare,
     Inc.:                      Tucker Ellis
                                BY:  JULIE A. CALLSEN, ESQ.
12                              950 Main Avenue
                                Suite 1100
13                              Cleveland, Ohio 44113

14

15   Also Participating:        Andrew Geiger, Esq.
                                John Thornton, Esq.
16                              Bria Hanlon, Esq.
                                Eric Newell, Esq.
17                              Markita Harkins, Esq.
                                Lowell Finson, Esq.
18                              Edward Bertram, Esq.
                                Taylor Hardenstein, Esq.
19                              Steven Davis, Esq.
                                Christopher Elliot, Esq.
20                              David Bonnin, Esq.
                                Mark Niemeyer, Esq.
21                              Ryan Perdue, Esq.
                                Simone White, Esq.
22                              Ruth Rizkalla, Esq.

23

24

25
```

OFFICIAL TRANSCRIPT

1    APPEARANCES:

2    Also Participating:              John Steward, Esq.
                                      Leslie LaMacchia, Esq.
3                                     Ryan Brown, Esq.
                                      Jane Calamusa, Esq.
4                                     Jennifer Greene, Esq.
                                      Patrick Luff, Esq.
5                                     Megan Hennessy, Esq.
                                      Jessica Worley, Esq.
6                                     Evan Fontenot, Esq.
                                      John Cowart, Esq.

7

8

9    Official Court Reporter:         Jodi Simcox, RMR, FCRR
                                      500 Poydras Street
10                                    Room B-406
                                      New Orleans, Louisiana 70130
11                                    (504) 589-7780

12

13

14   Proceedings recorded by mechanical stenography, transcript

15   produced by computer.

16

17

18

19

20

21

22

23

24

25

OFFICIAL TRANSCRIPT

|   |   |
|---|---|
| 1 | **PROCEEDINGS** |
| 2 | **(April 14, 2021)** |
| 3 | ******* |
| 4 |   |
| 5 | (COURT CALLED TO ORDER) |
| 6 | **THE COURT:**  Let's proceed with the show cause |
| 7 | hearing. |
| 8 | **MS. BARRIOS:**  Your Honor, would you like to take just |
| 9 | a short break while we set up? |
| 10 | **THE COURT:**  That would be great.  Thank you.  We'll |
| 11 | be at recess for a couple of minutes. |
| 12 | (WHEREUPON, the Court took a brief recess.) |
| 13 | **THE COURT:**  Court's back in session.  You may be |
| 14 | seated. |
| 15 | All right.  Let me just go through the list. |
| 16 | The first list we have is Stipulation of Dismissal.  On these |
| 17 | cases, the parties have stipulated dismissal, and that is, |
| 18 | Morris Robinson, that's Docket No. 16-16243; Sherri Freeman -- |
| 19 | or is that Ruby Williams?  I don't understand -- 21-399 and |
| 20 | 18-3313.  And this is -- the third is Angela Peterson, and |
| 21 | that's Docket No. 18-9257. |
| 22 | The second list that has been provided to the |
| 23 | Court is a Declaration of No Contact list.  These cases will be |
| 24 | dismissed with prejudice.  Plaintiff's counsel has provided |
| 25 | this Court with efforts to reach their clients to no avail. |

1  Plaintiffs have failed to comply with their obligation despite
2  the best efforts of counsel.  Accordingly, they're dismissed.
3              This is Jennifer Blackwood, Docket No. 20-2902;
4  Denise Blenman, Docket No. 20-3105, Gloria Christensen,
5  Docket 20-2889; Diane Guille, Docket No. 20-2898; Mary Smith,
6  Docket 17-12958; and Brenda Sotherland, Docket No. 18-3300.
7              In the following cases -- we have ten cases in
8  the statement of No Defense list.  These cases are dismissed
9  with prejudice.  Plaintiffs counsel has informed the Court that
10 there is no defense to dismissal.  Accordingly, the motion is
11 granted:
12             Sherry Ambrose, Docket 18-11308; Alice Bradley,
13 Docket 17-14884; Audrey Fridia, Docket 18-2601; Georgie
14 Gregory, Docket 17-13379; Bennie King, Docket 18-3193; Ellen
15 Scott, Docket 16-15472; Rebecca Smith, Docket 18-10081;
16 Danielle Vasile, Docket 17-16222; Tracy Wanzor, Docket 19-9089;
17 and Angela Worobec, Docket 19-13578.
18             And now we have our case of No Compliance
19 hearing list.  Are the parties ready to proceed?
20        **MS. BRILLEAUX:**  I'm happy to come up to the podium.
21 I just didn't know what the protocol was for switching out the
22 microphone covers.  So it's completely up to you, obviously,
23 Your Honor, so just let me know what your preference is.
24        **THE COURT:**  It's fine with you at the table.  We can
25 proceed from there.

OFFICIAL TRANSCRIPT

1      **MS. BRILLEAUX:**  Okay.  The first case on our list,

2  Your Honor, is Joann Stringer, represented by Allan Berger

3  & Associates.  And this is no PTO 71A certification.

4          **THE COURT:**  Mr. Geiger, are you on the line?

5          **MR. GEIGER:**  Yes, Your Honor, I'm here.

6          **THE COURT:**  Okay.  Where are we with Ms. Stringer?

7          **MR. GEIGER:**  We are actually -- we believe we are

8  compliant.  We received her PTO 71A this morning.  I e-mailed

9  it over to defense counsel.  She passed away, so her husband

10  had to handle it for her.  He also gave us the death

11  certificate and the will, so we will be filing a motion to

12  substitute as well.

13          **THE COURT:**  Okay.  I'm going to grant defendants

14  seven days to confirm compliance.  And so you are going to --

15          **MS. BRILLEAUX:**  And the motion to substitute?

16          **THE COURT:**  -- to substitute her spouse; correct?

17          **MR. GEIGER:**  Correct.

18          **THE COURT:**  Okay.  Thank you.

19          **MS. BRILLEAUX:**  Okay.  Thank you, Your Honor.

20          The next case -- that's the last one for Allan

21  Berger & Associates.

22          The next case is Dorene Lepselter, represented

23  by Andrews & Thornton.  And this is also no PTO 71A

24  certification.

25          **THE COURT:**  Mr. Thornton, are you on the line?

OFFICIAL TRANSCRIPT

1          **MR. THORNTON:**  I am, Your Honor.  And we -- this is a

2     rather elderly client.  We were finally able to reach her and

3     confirmed that she doesn't have ESI.  And we submitted a -- we

4     filed yesterday afternoon or early evening her compliance

5     statement.  And we also, I think, sent it to the defendants.  I

6     don't know if they've received that.  I presume they have.

7          **THE COURT:**  The Court's going to grant seven days to

8     confirm compliance.

9          **MS. BRILLEAUX:**  Thank you, Your Honor.

10          **MR. THORNTON:**  Very good.

11          **THE COURT:**  Thank you.

12          **MS. BRILLEAUX:**  The next case is Yvonne Freeman,

13     represented by Atkins & Markoff.  And the deficiency for this

14     matter is -- Your Honor will recall, we've had some issues with

15     the insurance authorization where the plaintiff has improperly

16     inserted her own personal information in the addressee line.

17     So that needs to be resolved.  And then also no PTO 71A

18     certification.

19          **THE COURT:**  Ms. Hanlon, are you on the line?

20              Ms. Hanlon?

21              What is it, star --

22          **THE DEPUTY CLERK:**  Star 6.

23          **MS. BRILLEAUX:**  Star 6.

24          **THE COURT:**  Try star 6, ma'am.

25          **MS. HANLON:**  Can you hear me now?  Sorry.

OFFICIAL TRANSCRIPT

1    **THE COURT:**  Now we can hear you.  Okay.  Thank you.

2    **MS. HANLON:**  Sorry.  We spoke to Ms. Freeman on

3    February 22nd and again on March 1st.  And then I received

4    e-mail correspondence from her on April the 8th.  We've sent

5    the documents.  She knows that they're missing.  She knows that

6    this can be dismissed.  We've explained this to her multiple

7    times.  I still don't have it in my hands.  So we're hoping to

8    still get them back from her, but at this point, she hasn't

9    given them back to us.  That's where we are.

10    **THE COURT:**  So she understands that the case is going

11    to be dismissed?  Is that what you're telling me?

12    **MS. HANLON:**  Well, I've sent it in writing.  I've

13    explained it to her over the phone when we've spoken to her.

14    We've probably mailed the forms to her multiple times.  I've

15    e-mailed the same correspondence to her multiple times.  She

16    doesn't have social media, according to the plaintiff, and so

17    she doesn't really understand why she needs to send that

18    portion back.  We've explained that.

19    So, to be honest, I do feel like I've tried

20    everything to get it.  And she has been responsive, you know,

21    like I said, back until February.  So she's aware.  So I --

22    **THE COURT:**  All right.  Okay.  Ms. Hanlon, this is

23    what we're going to do.

24    **MS. HANLON:**  Yes.  Okay.

25    **THE COURT:**  It sounds to me like your client's not

OFFICIAL TRANSCRIPT

1  understanding her obligations or why those obligations exist.
2  You can tell her that the judge says she's got to do this
3  within 15 days or her case will be dismissed.  And if she
4  doesn't understand why, tell her, the case is going to be
5  dismissed.
6          **MS. HANLON:**  Okay.  Thank you, Your Honor.
7          **THE COURT:**  She's got 15 days.
8          **MS. HANLON:**  Yes.
9          **THE COURT:**  Okay.
10         **MS. HANLON:**  Thank you.
11         **MS. BRILLEAUX:**  Thank you, Your Honor.
12             The next case is Leigh Lopes.  This is photos
13  are not dated.  This plaintiff was initially on the list for no
14  before or after photos.  Photos have since been uploaded, but
15  we need dates on those photos.
16         **THE COURT:**  Mr. Newell, are you on the line?
17         **MR. NEWELL:**  Yes, I am, Your Honor.  I kind of want
18  to go a little bit through the back story so we're clear what
19  we're exactly trying to cure on this one.
20         **THE COURT:**  I think that -- what I understand is that
21  you have -- you haven't dated the photographs.
22         **MR. NEWELL:**  Well, initially when we received the
23  notice of noncompliance back in January, it said PFS not
24  substantially complete; four photos, black-and-white; no after
25  or current photos.  And then we sent additional photos back in

1   February.

2              And then in -- about two weeks ago on April 5th,

3   we received another more detailed list of deficiencies on the

4   fact sheet and have been working diligently to cure those.  And

5   then when we received notice today, the noncompliance category

6   was PFS not substantially complete.

7              If the only issue is the dates on the

8   photographs, it's my understanding that most of the photographs

9   come from screenshots of Facebook posts.  And it had been my

10  intention to go ahead and have an affidavit from the client

11  saying that the photos were taken the day they were posted on

12  Facebook.

13         MS. BRILLEAUX:  And, counsel, I'm not even sure we

14  need an affidavit.  We just need -- there's a portion in MDL

15  Centrality where just the dates can be typed in.  We just need

16  dates for the photographs.

17         MR. NEWELL:  Okay.  And that's the only issue that's

18  still remaining?

19         MS. BRILLEAUX:  That's the only one.

20         THE COURT:  Okay.  I'm going to grant 15 days for you

21  to get in compliance because you should be able to do that this

22  afternoon.

23         MR. NEWELL:  Yes, Your Honor.  Thank you.

24         THE COURT:  Okay.  Thank you.

25              All right.  The next one.

1          **MS. BRILLEAUX:**  Thank you, Your Honor.

2               Yes, Lynn Gillespie, represented by Bruno

3     & Bruno.  Those are HIPAA and psychiatric records

4     authorizations that were expired when they were submitted to

5     MDL Centrality.  So we need updated authorizations.

6          **THE COURT:**  Ms. Hawkins?

7               Try star 6.

8               Okay.  All right.  Let's go to the next one and

9     when we get to the end of this page, we'll go back up.

10         **MS. BRILLEAUX:**  That sounds good.

11              Patricia Bramblett, represented by the Burnett

12    Law Firm.  This is no PFS submitted, along with all the related

13    documents.

14         **THE COURT:**  Mr. Finson, are you on the line?

15         **MR. FINSON:**  Your Honor, I'm so sorry.  Yes, I am on

16    the line.  We're on the Bramblett case?

17         **THE COURT:**  Wait.  You're almost too loud.  Could

18    you --

19         **MR. FINSON:**  Oh, I'm sorry.

20         **THE COURT:**  Because I can't hear.

21         **MR. FINSON:**  Your Honor, is this better?

22         **THE COURT:**  I can hear, but I can't understand you.

23         **MR. FINSON:**  Your Honor, is this better?

24         **THE COURT:**  This is better.

25         **MR. FINSON:**  Okay.  So I got the list of cases and

1  my -- our paralegal -- we completed the list and updated

2  records --

3          **THE COURT:**  Okay.  Wait.  We're not -- we're not --

4  Mr. Finson, we're not able to understand you.

5          **MR. FINSON:**  Let me try something.

6              Do you understand me now?

7          **MS. BRILLEAUX:**  It's sounding a little muffled.  I

8  don't know if it's just a --

9          **MR. FINSON:**  Is that better now?

10          **THE COURT:**  Why don't you -- I'll tell you if you

11  start talking.  I don't know.

12          **MR. FINSON:**  All right.  Can you hear me now?  Is it

13  okay?

14          **THE COURT:**  Yes, and please just slow down because

15  we're having difficulties.

16          **MR. FINSON:**  Oh, I'm very, very sorry.  I'm very

17  sorry.

18              All right.  With regards to Ms. Bramblett, our

19  paralegal advises that she has updated everything in the PFS.

20  She uploaded records, authorizations, and pictures --

21          **THE COURT:**  Let me just do this, Mr. Finson.  Are you

22  telling me that she completed the PFS?

23          **MR. FINSON:**  Yes.

24          **THE COURT:**  All right.  Has it been submitted to MDL

25  Centrality?

```
1              MR. FINSON:  Yes.
2              THE COURT:  No?  What's the hold-up?
3              MR. FINSON:  I said yes.
4              THE COURT:  You said yes.  And when was that
5    submitted?
6              MR. FINSON:  Within the past several days, I'm sure.
7              THE COURT:  The past several days.  I'm going to
8    grant seven days to the defendants to confirm compliance.
9              MS. BRILLEAUX:  Thank you, Your Honor.
10             THE COURT:  Thank you.
11             MS. BRILLEAUX:  I believe Ms. Watkins [sic] for Lynn
12   Gillespie is on the phone for Bruno & Bruno.
13             MS. HARKINS:  Yes.  This is Markita Hawkins from
14   Bruno & Bruno.  I am so sorry.
15             THE COURT:  That's okay.  Yes, ma'am.
16             MS. BRILLEAUX:  I got your name wrong, so I'm sorry
17   for that.
18                  So the deficiency --
19             MS. HARKINS:  No, that's okay.
20             MS. BRILLEAUX:  The deficiency for this case is that
21   the HIPAA and psychiatric records authorizations were expired
22   at the time that they were uploaded to Centrality, so we need
23   redated authorizations.
24             MS. HARKINS:  Gotcha.  Because our office re-uploaded
25   the authorizations.
```

OFFICIAL TRANSCRIPT

1        **THE COURT:**  Were they the existing authorizations or

2    did you update -- because I think what they're telling me is

3    that they already had the authorizations, but what was

4    previously uploaded was outdated.  So we need to confirm that

5    what you uploaded was, indeed -- that the date was within --

6    how many days?

7        **MS. BRILLEAUX:**  Right.  And just from my notes,

8    counsel, we have that they were submitted to Centrality on

9    April 6th, but they're dated August 28th, 2017, and

10   August 28th, 2018, respectively.  So we can't use those.

11   They're just way too outdated.

12       **MS. HARKINS:**  Gotcha.  Okay.  I thought the

13   authorizations lasted for ten years.  So we apologize for that,

14   and we'll just get you new updated ones with new dates.

15       **THE COURT:**  All right.  I'm going to grant you

16   15 days --

17       **MS. HARKINS:**  Okay.  That's perfect.

18       **THE COURT:**  -- to get those in to MDL Centrality.

19           Thank you, ma'am.

20       **MS. HARKINS:**  Thank you.  I apologize again for my --

21       **THE COURT:**  Thank you.

22           Sandra Lemarr.

23       **MS. BRILLEAUX:**  Yes, Your Honor.  This is no PTO 71A

24   authorization.

25       **THE COURT:**  Okay.  Mr. Hardenstein, are you on the

OFFICIAL TRANSCRIPT

1  phone?

2        **MR. HARDENSTEIN:**  Yes, your Honor, I am.

3        **THE COURT:**  Okay.

4        **MR. HARDENSTEIN:**  In attempting to obtain the

5  statement, we had learned that Ms. Lemarr had passed away from

6  her husband.  So we're now in contact with him, and he's

7  advised us that he's working with an estate attorney in his

8  area to determine whether he wants to go through with opening

9  the estate.  I would request 60 days, as Your Honor has allowed

10  in the past, to work with him to get that open and substitute

11  him in so he can sign the ESI statement and get it uploaded.

12        **THE COURT:**  Court's going to grant 60 days.

13            Thank you.

14        **MR. HARDENSTEIN:**  Thank you, Your Honor.

15        **MS. BRILLEAUX:**  Thank you, Your Honor.

16            The next case is Marlene Chioda.  This is no

17  proof of use.

18        **THE COURT:**  All right.  This is --

19        **MS. BRILLEAUX:**  The firm is Fernelius Simon.

20        **THE COURT:**  Mr. Perdue, are you on the line?

21        **MR. PERDUE:**  Yes, Your Honor, I'm here.

22        **THE COURT:**  Okay.

23        **MR. PERDUE:**  Your Honor, we have had incredible

24  difficulty obtaining Ms. Chioda's infusion records despite our

25  numerous attempts over the past couple of years.  We do know

```
1  for a fact that she had chemotherapy treatments in the latter
2  half of 2011.
3            We've been told by the infusion facility that
4  the records no longer exist.  But what we do have are records
5  from her oncologist, where her oncologist said that he was
6  going to begin administering chemotherapy, which included four
7  cycles of Taxotere.  We also have --
8       THE COURT:  Have you made any headway with her
9  insurance company?
10      MR. PERDUE:  We have, Your Honor.  We've tried that,
11 and the insurance company has said that they do not have any
12 records responsive to our subpoena.
13      THE COURT:  Okay.
14      MR. PERDUE:  We do -- we actually -- I'm sorry to
15 interrupt, Your Honor.  We actually -- our client has provided
16 us handwritten notes that she took contemporaneously with her
17 Taxotere treatment, which indicates that she was taking
18 Taxotere, and it has a list of side effects.  It also has some
19 questions that she was going to ask her oncologist about
20 Taxotere.  We have submitted that.
21      THE COURT:  I don't know -- Ms. Berg, do you think
22 this might be a case that you could work with Mr. Perdue to see
23 if you could explore other avenues?
24      MR. BERG:  Yes, Your Honor.  I can look at what's
25 been gathered so far and help try to see if we can find proof
```

1   of use.

2           **THE COURT:**  Okay.  Mr. Perdue, I'm going to direct

3   that you speak to Ms. Berg within the next week or so to

4   determine if she has other avenues to explore proof of use.

5           **MR. PERDUE:**  That would be great.  Thank you, Your

6   Honor.

7           **THE COURT:**  Okay.  And we'll just roll this over to

8   next month and see what Ms. Berg has uncovered.

9           Okay.  Erica -- does anybody -- does anybody

10  know how to --

11          **MS. BRILLEAUX:**  Gissendanner, I think.

12          **THE COURT:**  Okay.

13          **MS. BRILLEAUX:**  This is no CMO 12A process initiated.

14          **THE COURT:**  Okay.  Ms. White, are you on the line?

15          **MS. WHITE:**  Yes, Your Honor.

16          **THE COURT:**  Okay.

17          **MS. WHITE:**  Your Honor, we subpoenaed plaintiff's

18  insurance carrier, and the insurance carrier responded by

19  sending us a list of plaintiff's prescriptions, along with the

20  corresponding codes.  However, the list did not contain any of

21  the chemotherapy drugs she's taken.

22          Consequently, we called the insurance carrier

23  several times to follow-up to get the NDC codes for the

24  chemotherapy treatment, but we have not heard back.  So we

25  continued with contacting the cancer infusion facility's

 1   medical records department.  We were finally able to make

 2   contact with the new head of records, Crystal.  And Crystal --

 3              THE COURT:  But isn't this -- I think the problem is,

 4   is that you have to inform defendants of institution of the CMO

 5   12 process.

 6              MS. BRILLEAUX:  Correct, Your Honor.  So none of

 7   these deficiencies -- and that's why I kind of make a point to

 8   say, "No CMO 12A process initiated."

 9                   Counsel, there's directions about the timing for

10   sending an e-mail.  The e-mail addresses are listed out in CMO

11   12A, which is available on the Court's Web site.  And once you

12   send the e-mail, that deficiency will be cured.  It's not about

13   actually obtaining product ID.

14              MS. WHITE:  Okay.  So we just need to send an e-mail

15   to the defendants about our efforts?

16              MS. BRILLEAUX:  Correct.

17              THE COURT:  Thank you.  All right.  And have that

18   done within 15 days.

19              MS. WHITE:  Yes, Your Honor.

20              THE COURT:  Thank you.

21              MS. BRILLEAUX:  Okay.  The next case is Cheryl

22   Wingate, represented by Kirtland & Packard.  And this is also

23   no CMO 12A process initiated.

24              THE COURT:  Do we have -- Ms. Rizkalla, are you on

25   the line?

OFFICIAL TRANSCRIPT

1        **MS. RIZKALLA:**  Yes, I am.  Good afternoon, Your
2    Honor.
3        **THE COURT:**  Good afternoon.
4        **MS. RIZKALLA:**  If we could, we would just like to ask
5    for a little more time.  We have not been able to get ahold of
6    our client for the past few months.  So if we could have
7    15 days to make a more concerted effort to get a hold of her, I
8    think it would be easier for us and we would be able to comply
9    with the CMO 12A.
10        **THE COURT:**  Ma'am, I'm going to give you 15 days, but
11    is this the first time this case was on the list?
12        **MS. BRILLEAUX:**  I believe it is.  The case has been
13    pending since 2018.  I mean, I'm just curious what information
14    to comply with CMO 12A.
15        **THE COURT:**  All right.
16        **MR. BERG:**  I think Ms. Rizkalla may just need to
17    reach out to me, Claire Berg, and I can help her with the
18    CMO 12A process.
19        **THE COURT:**  All right.  Ms. Rizkalla, I'm going to
20    ask you to please call Claire Berg and she can help you through
21    the process.  CMO 12A is just you identifying and disclosing
22    what efforts you've made to get proof of use.  Okay?  So I'm
23    going to ask you to call Ms. Berg.
24        **MS. RIZKALLA:**  Sure.
25        **THE COURT:**  Thank you.

OFFICIAL TRANSCRIPT

1      **MS. RIZKALLA:**  I will do that.  Thank you, Your
2  Honor.
3          **THE COURT:**  Okay.
4      **MS. BRILLEAUX:**  The next case is Wallaceteen Yates,
5  represented by Meyerkord & Meyerkord, LLC.  And this is no PTO
6  71A certification.
7          **THE COURT:**  Mr. Steward, are you on the line?
8          **MR. STEWARD:**  Yes, Your Honor.  Good afternoon.
9          **THE COURT:**  Good afternoon.  What about -- it was PTO
10  71A.
11          **MR. STEWARD:**  Yes, Judge.  Over the course of the
12  last two months, we've had no less than 12 e-mails between us
13  and Ms. Yates and seven lengthy phone calls walking her through
14  PTO 71A.  And I don't believe that those procedures -- and we
15  did receive information, but it turned out to be duplicitous of
16  the information that's already in her PFS.
17          The only thing that we have not been able to get
18  her to do to date is to sign the form indicating the search has
19  been conducted.  And she appears to be very confused.  We've
20  had lengthy conversations with her explaining to her what will
21  happen if she does not do that.
22          She has had an aneurysm.  And she had alluded to
23  potential medical issues.  And we don't know if there's
24  something going on there.  We have employed her adult daughter
25  and her grandson to assist her with this.

 1              **THE COURT:**  I'm afraid the court -- Mr. Steward, the

 2     court reporter cannot make this out.  Is everyone on the

 3     telephone on mute?  Please do that.  Okay.

 4                    Now, Mr. Steward, what are you --

 5              **MR. STEWARD:**  I'm sorry, Your Honor.

 6              **THE COURT:**  Okay.  Mr. Steward, I think you were on

 7     two lines.

 8              **THE DEPUTY CLERK:**  Are you on two different devices,

 9     like your laptop and a telephone?

10              **MR. STEWARD:**  I could be.  I'm not sure how that

11     works, but let me see if I can...

12              **THE DEPUTY CLERK:**  Okay.  I think, we're just getting

13     feedback from another source.

14              **MR. STEWARD:**  Is that better?  Can you hear me now?

15              **THE COURT:**  Much better.  Much better.

16              **MR. STEWARD:**  Okay.

17              **THE COURT:**  Okay.  What I could discern from your

18     last comment was that you're having difficulty getting your

19     client to understand why she needs to sign this and that she

20     seems to have some medical issues?

21              **MR. STEWARD:**  She appears to be somewhat confused.

22     We're working with her.  We've had at least seven lengthy calls

23     on this PTO 71 issue alone, walking her through the order and

24     what she needs to do.  And, again, she has sent us information,

25     but that information has been duplicitous of the information

OFFICIAL TRANSCRIPT

1  we've already got in the PFS.  I think if we can work with her
2  a little bit longer, we could get her to sign this.  We just
3  have to make her understand.
4           And we've instructed her that Your Honor may
5  dismiss her case for failure to do this.  She just appears to
6  be somewhat confused, and we're not sure exactly what is going
7  on with her at this point.
8           THE COURT:  Okay.  I understood, I think, earlier
9  that you indicated that she has an adult daughter and a
10 grandson that you're communicating with.  Would you please
11 explain to them that she's got 15 days to execute this PTO 71A
12 authorization or whatever that is or her case will be
13 dismissed?  So make sure she understands.
14          MR. STEWARD:  Yes, Your Honor.
15          THE COURT:  Okay.  Thank you.  I'm going to grant
16 15 days.
17          MR. STEWARD:  Yes, Your Honor.
18          MS. BRILLEAUX:  Thank you, Your Honor.
19          MR. STEWARD:  Thank you, Your Honor.
20          MS. BRILLEAUX:  The next case is Rhoda Hall with
21 Pulaski Law Firm.  We have another issue with the insurance
22 authorization.  It's not witnessed.  And then also we are
23 missing disability and Workers' Compensation authorizations.
24          THE COURT:  Okay.
25          MS. LaMACCHIA:  Your Honor, this is Leslie LaMacchia.

1  We did receive the witnessed health authorizations today and

2  it's been uploaded into Centrality as document No. 517760 with

3  the witness signature.

4                  With regard to the other two authorizations, we

5  do have them, but since plaintiff is not making any kind of

6  workers' comp -- she never worked and she didn't have any

7  disability -- we didn't understand whether or not we had to

8  upload them, but they can be uploaded today.

9            THE COURT:  Upload those today.

10            MS. BRILLEAUX:  Your Honor, and I just wanted to

11  respond that it's defendant's position that these do need to be

12  uploaded because the PFS is blank with regard to whether the

13  plaintiff is asserting those types of claims, and we believe it

14  needs to be updated if plaintiff is not asserting those claims.

15            THE COURT:  Okay.  Thank you.  Please take care of

16  that, and I'm going to grant -- I'm going to order that be done

17  this afternoon, and then I'm going to grant defendant's

18  seven days to confirm compliance.

19            MS. BRILLEAUX:  Thank you, Your Honor.

20            MS. LaMACCHIA:  Great.  It will be done.  Thank you,

21  Your Honor.

22            THE COURT:  All right.

23            MS. BRILLEAUX:  The next case is Sharon Isaac,

24  represented by Reyes, Browne & Reilley.  And this is no before

25  photos.  This is a rollover from the previous hearing.  I

1    believe Your Honor asked Ms. Berg to work with plaintiff's

2    counsel, and we have not received any additional submissions

3    since the last hearing.

4              **THE COURT:**  Ms. Berg?  Mr. Browne?

5              **MR. BROWNE:**  Yes, Your Honor.  Ryan Browne for the

6    plaintiff.  Let's just address the last thing first.  Actually,

7    that is incorrect.  We did submit document ID 515191 was a

8    clearer image of the photo.  Judge, when we had this hearing

9    last time, you said, "I am not going to dismiss this case."  We

10   uploaded a work badge -- a photo of a work badge from 2004.

11   That is the only thing that our client could locate.

12             She checked with her Goddaughter, her niece, her

13   inner circle.  It's her Goddaughter, her niece, her cousin, and

14   her best -- and she has a couple of best friends.  They've all

15   checked.  They do not have before photographs.

16             We went through this with Your Honor, and you

17   said, "Hey, work with Claire and see if you can get a better

18   copy of this badge or anything else."  We did that, Your Honor.

19   We actually got the work badge sent in to us, the actual one.

20   It is from 2004.  As you can imagine, it's quite blurry and

21   faded.  But we took a better picture of it.  We uploaded that

22   in Centrality -- I just gave the document ID number -- and made

23   everybody aware of that.

24             We also -- Ms. Isaac inquired with the staffing

25   agency where that work badge came from.  They don't have the

1  original 2004 photograph.  She checked with her oncologist's

2  office to see if they had any photo from when she had her

3  treatment back in 2008 and they didn't have any photos.  That's

4  not necessarily all that surprising, 13 years ago.

5         But, Your Honor, I mean, this is -- we've done

6  exactly what the Court asked.  And we have provided this before

7  photograph.  We believe it is a clear image.  And, frankly, I

8  mean, yes, we believe we've complied exactly with what was

9  asked.

10      **THE COURT:**  Okay.  All right.  Ms. Brilleaux.

11      **MS. BRILLEAUX:**  I mean, we think that the work

12 badge -- I mean, I understand that plaintiff's counsel has

13 obviously taken steps to try and seek out photographs.  We

14 still don't feel like we have a photo that shows, you know,

15 clearly what her hair looks like from before chemotherapy.  So

16 that's where we are.

17      **MR. BERG:**  It's my understanding that they found the

18 work badge and took a more clear photo of it and it is

19 sufficient to show her head and her hair.  And it is different

20 than the photo that was previously uploaded that was a little

21 blurry of the work badge, and that that is the only photo that

22 she can produce from that time period.  And she's in

23 compliance.

24      **THE COURT:**  Okay.  Ms. Barrios, do you have something

25 to say?

OFFICIAL TRANSCRIPT

1          **MR. BERG:**  Ms. Barrios, just told me that the

2     plaintiff can prove the condition of her hair prior to Taxotere

3     treatment through other means of testimony from her friends or

4     family, doctors, hair dressers.

5          **THE COURT:**  I don't want to go there yet because I am

6     concerned about that opening the floodgates if nobody's got

7     photographs, because I've got friends.  But I think there is a

8     photograph that has been uploaded.  And I indicated to you

9     earlier perhaps at a later date, we may say that that is

10    insufficient.  But I think if there is a photograph which I

11    indicated that we're going to just proceed with what we have.

12          **MS. BRILLEAUX:**  Okay.  Thank you, Your Honor.

13          **THE COURT:**  Thank you.

14          **MR. BROWNE:**  Thank you, Your Honor.  May I be

15    excused?

16          **THE COURT:**  Yes, sir.

17          **MR. BROWNE:**  Thank you, Your Honor.

18          **THE COURT:**  Celia --

19          **MS. BRILLEAUX:**  Celia Spencer is the next plaintiff.

20    And this is no psychiatric record authorization.

21          **THE COURT:**  All right.  Ms. Calamusa?

22          **MS. CALAMUSA:**  Yes, Your Honor.  You got it right.

23          **THE COURT:**  Well, good.  Yes, ma'am.

24          **MS. CALAMUSA:**  All right.  So I believe that we are

25    in compliance as of this morning.  Ms. Spencer, unfortunately,

1  we found out had passed away, so we were able to get that
2  authorization from her husband, and uploaded it to Centrality
3  this morning --
4          **THE COURT:**  Is he --
5          **MS. CALAMUSA:**  -- and, of course, we will be filing
6  the appropriate paperwork.
7          **THE COURT:**  Ma'am, has he been appointed estate
8  representative?
9          **MS. CALAMUSA:**  He has, yes.
10         **THE COURT:**  Okay.  All right.  Thank you.
11             All right.  I'm going to grant seven days to
12  confirm compliance.
13             Tammy Brown.
14         **MS. BRILLEAUX:**  Thank you, Your Honor.  This is no
15  before photos.  We have one photo from this plaintiff, but it
16  doesn't show her scalp.  And then we also need present day
17  photos.
18         **THE COURT:**  Ms. Greene?
19         **MS. GREENE:**  Yes, Your Honor.  So we didn't actually
20  receive a deficiency notice on this.  But when we got the
21  noncompliance, I've not -- the storm has knocked out all the
22  power and so I can't pull up my notes from that part of it.
23  But there were photos where you could see her hair -- her full
24  hair.  In fact, I know there's a photo of her with her husband
25  where you can see her hair in the before.

1          And then I believe there was one --

2               THE COURT:  Has it been dated, Ms. Greene?  Has that

3     photo been dated?

4               MS. GREENE:  Yes, Your Honor.  Yes, Your Honor.

5                    All the photos we submitted were dated.  That

6     was something that the defendants raised back in 2017, and we

7     corrected that in 2018.  And so I'm happy to ask the plaintiff

8     for additional information about specific photos of her scalp

9     from before, but --

10              THE COURT:  Ms. Greene, let me ask this question:

11    Have you --

12              MS. GREENE:  -- she didn't have --

13              THE COURT:  Okay.  Wait.  Time out.

14                   What about her present day photos?

15              MS. GREENE:  And, Your Honor, again, I apologize

16    because I have -- the power is out, so --

17              THE COURT:  Okay.  This is what we're going to do.

18    We're going to roll -- wait.  Ms. Greene, stop.  We're going to

19    roll this one over.  If the power is out, I don't know what she

20    can do.  Okay.  We'll just roll this case over.

21                   Thank you.

22              MS. GREENE:  Okay.  Thank you, Your Honor.  I

23    appreciate it.

24              THE COURT:  Okay.  Curtice Bryant.

25              MS. CALLSEN:  Yes.  This is PFS is not substantially

OFFICIAL TRANSCRIPT

```
 1   complete.  The photos are not dated.  We do not have
 2   authorizations, including insurance, disability, workers' comp,
 3   and no CMO 12A initiation.
 4           THE COURT:  All right.  Mr. Davis.
 5           MR. DAVIS:  Good morning, Your Honor.  Can you hear
 6   me?
 7           THE COURT:  I can.
 8           MR. DAVIS:  All right.  So I think we're in
 9   compliance as of this morning with everything except the
10   authorization.  It did require a witness signature.  Those have
11   been sent to her.  We're waiting on those to come back.  So
12   I'll just ask for a brief time to get those in.  She's in good
13   contact with us.  And I believe that's the only thing that
14   remains outstanding.
15           THE COURT:  The Court's going to grant 15 days.
16           Thank you.
17           Lena Jones.
18           MS. BRILLEAUX:  Yes, Your Honor.  This is no PTO 71A
19   authorization.
20           THE COURT:  Mr. Luff.
21           MR. LUFF:  Yes, Your Honor.  Good afternoon.
22           On this one, it was -- we received the documents
23   from our client late last week and transcribed and uploaded
24   everything, but made a mistake and omitted the PTO 71 written
25   statement, which has been uploaded as of this morning, which --
```

OFFICIAL TRANSCRIPT

 1          **THE COURT:**  The Court's going to grant --

 2          **MR. LUFF:**  -- frankly, is just an oversight --

 3          **THE COURT:**  Okay.  Court's going to grant seven days

 4   to confirm compliance.

 5                  Lisa Rodriguez.

 6          **MS. BRILLEAUX:**  Yes, Your Honor.  This is no CMO 12A

 7   process initiated.

 8          **THE COURT:**  Okay.  Mr. Luff?

 9          **MR. LUFF:**  Your Honor, we uploaded the administration

10   records for docetaxel in late March, which we believe is in

11   compliance with 6C of PTO [sic] 12A.  So we believe we're in

12   compliance on that.

13          **MS. BRILLEAUX:**  Did you -- I believe it has to be

14   uploaded to a specific part of MDL Centrality under "Product

15   Identification."  Has that been completed?

16          **MR. LUFF:**  It may have been coded incorrectly, but we

17   re-uploaded it this morning, so I would ask that, again, we

18   have seven days to confirm compliance with that because that

19   may have just been a mis-code in the MDL Centrality.

20          **THE COURT:**  Okay.  The Court's going to grant

21   seven days to confirm compliance.

22          **MS. BRILLEAUX:**  The next case is Shelvia McClendon.

23          **THE COURT:**  Okay.

24          **MS. BRILLEAUX:**  This is a rollover case.  And this is

25   another no before photos from within five years of treatment.

1   At the previous hearing, Your Honor ordered plaintiff's counsel

2   to work with Ms. Berg to see if any other before photos could

3   be located, and we don't have anything yet.

4                 THE COURT:  Okay.  Mr. Bonnin, are you on the line?

5                 MR. BONNIN:  Yes, Your Honor.  Good afternoon.

6                 We -- since the previous hearing, we've been in

7   contact with Ms. McClendon a few times to reaffirm her efforts

8   to find additional photographs.  We have uploaded two before

9   photographs for Ms. McClendon.  One with an approximate date of

10  1995.  One with an approximate date of 2000.  Her Taxotere use

11  was in 2015 and so those approximate dates don't fit within the

12  before frame of five years.

13                However, Ms. McClendon tells us that she has no

14  further photographs.  And she has exhausted -- we believe she's

15  exhausted all efforts to locate those, including a thorough

16  search of her home, contacting friends and family and asking

17  them if they have any photographs from the relevant time period

18  or any time before 2015.  She has looked for old driver's

19  licenses and IDs.

20                I was able to get in contact with Ms. Berg and

21  get some guidance on the types of questions we should ask

22  Ms. McClendon.  Those questions have all been asked and

23  answered in the negative.  So we do not have any further

24  photographs to produce for her.  And at this point, I believe

25  it's unlikely we will get any further photographs to produce

1  for her.

2            THE COURT:  Mr. Bonnin, does she not have family?

3            MR. BONNIN:  She does have family, but, however,

4  she's always been a person -- and she told us this from the

5  very start --

6            THE COURT:  No, I understand, but --

7            MR. BONNIN:  -- she's always been a person who --

8            THE COURT:  Wait.  She has family and she's never

9  been to a wedding?

10            MR. BONNIN:  Not where a photo was taken of her.

11            THE COURT:  None of her children got married?

12            MR. BONNIN:  Not where a photo was taken of her, Your

13  Honor.  We asked her all of these questions.  I asked her about

14  birthday parties, anniversaries, any baptisms you can remember,

15  church events, things like that, and she tells me she has none.

16            She told us from the start that she's been --

17  she's always been a person who's avoided photographs.  The one

18  sort of full facial photograph we have that she dates in 1995

19  is a photo of her with her mother on her way to church.  And

20  she said that one hangs on her wall, and that's really the only

21  thing she's got.

22            Now, you know, she's prepared to -- you know, as

23  has been discussed in a few previous instances, she's prepared

24  to offer testimony from --

25            THE COURT:  No.

1          **MR. BONNIN:**  -- friends and family about her loss of

2    hair, but I know that's something you're not interested in

3    addressing at this point.

4          **THE COURT:**  I think I am going require, though, an

5    affidavit from -- why don't you produce an affidavit from

6    Ms. McClendon as to what the scope of your search was.

7          **MR. BONNIN:**  Absolutely.  Happy to do that.  I told

8    her that that was going to be a possibility and she said that

9    she'd be happy to complete one.

10          **THE COURT:**  Okay.  All right.  Let's do that and have

11    that submitted to me within the next 30 days.

12          **MR. BONNIN:**  Yes, Your Honor.

13          **THE COURT:**  Okay.  Anita Turner.

14          **MS. BRILLEAUX:**  For Anita Turner, Your Honor, it's no

15    PTO 71A certification.

16          **THE COURT:**  Mr. Bonnin.

17          **MR. BONNIN:**  Your Honor, Ms. Turner is a client of

18    ours who's previously been responsive, but, however, over the

19    past three months, we've been unable to reach her despite

20    repeated efforts.  We've put in writing the importance of

21    completing this part of the discovery process, and so I think

22    she's aware.

23          I just don't know whether or not we're going to

24    be able to find her.  We've made efforts.  We've used an

25    investigative service to make sure that we have the correct

OFFICIAL TRANSCRIPT

1   contact information, and it appears that we do, but we just

2   haven't been able to get in touch with her.

3           **THE COURT:**  Okay.  I'm going to grant 15 days.  I'm

4   going to request that you advise her about the significance of

5   her failure to comply.  I'm going to grant 15 days.  Thank you.

6           **MR. BONNIN:**  Will do, Your Honor.  Thank you.

7           **THE COURT:**  Ruby Pratt.

8           **MS. BRILLEAUX:**  Yes, Your Honor.  For Ms. Pratt, the

9   deficiency is no signed PFS declaration, no authorizations, and

10   no PTO 17A certification.

11           **THE COURT:**  All right.  Mr. Niemeyer, are you on the

12   line?

13           **MR. NIEMEYER:**  Yes, ma'am.  Good afternoon, Your

14   Honor.

15           **THE COURT:**  Good afternoon.

16           **MR. NIEMEYER:**  This is one, Judge, that everything's

17   in place except for the fact that the family continues to wait

18   on the probate proceedings from the court in Texas.  There's

19   just simply been no activity on their petition for letters of

20   administration, at which time we would, of course, substitute

21   and move forward.

22           **THE COURT:**  Okay.

23           **MR. NIEMEYER:**  In the meantime -- I'll stop there

24   then.

25           **THE COURT:**  All right.  I'm going to grant 60 days.

1   We just have to wait and see.

2                   Thank you.

3           **MR. NIEMEYER:**  Thank you, Your Honor, very much.

4           **THE COURT:**  All right.  Bye-bye.

5                   And what I would ask in this sort of case, if

6   you're advised that they're waiting for the probate court, we

7   can just pass that or do something instead of having people

8   continue to reappear when we're dealing with something that

9   nobody's got control over.

10          **MS. BRILLEAUX:**  Understood, Your Honor.

11          **THE COURT:**  Thank you.

12          **MS. BRILLEAUX:**  The next case is Thelma Streng,

13  represented by Baron & Budd, and this is no PTO 71A

14  certification.

15          **THE COURT:**  Mr. Bertram.

16          **MR. BERTRAM:**  Yes.  Good afternoon, Your Honor.

17                  For Ms. Streng, we uploaded her PTO 71 statement

18  last night and so we'd just ask that defense counsel confirm

19  that they received it.

20          **THE COURT:**  Court's going to grant seven days to

21  confirm compliance.

22                  You know it would be really nice if you all did

23  this before the night before or the morning of.

24                  Okay.  Vicky Wallace.

25          **MS. BRILLEAUX:**  Yes, Your Honor.  This is no CMO 12A

OFFICIAL TRANSCRIPT

1   process initiated.

2           **MR. BERTRAM:**  Yes.  Mr. Bertram again for Plaintiff

3   Wallace.  Your Honor, we e-mailed defense counsel all efforts

4   of CMO 12A initiation, as well as the written records request

5   we placed previously, and we believe the correct authorization

6   is already uploaded so that we're now in compliance with CMO

7   12A.

8           **THE COURT:**  When did you make -- when was that e-mail

9   sent?

10          **MR. BERTRAM:**  That was this morning, Your Honor.

11          **THE COURT:**  Oh, come on.  You know, this process is

12  tedious and long and very frustrating and we have deadlines in

13  place for a specific reason so that we do not have to go

14  through 65 outstanding cases only to discover, "Well, we did it

15  this morning.  We did it last night."

16          I'm going to grant seven days to confirm

17  compliance, but you have no idea of the frustration that I'm

18  experiencing at this very moment.

19          Patricia Warrem.  Please tell me you e-mailed

20  that this morning, too?

21          **MR. BERTRAM:**  Your Honor, yes, that is actually the

22  same situation.  And, again --

23          **THE COURT:**  Mr. Bertram, let me -- let me give you a

24  little piece of advice, don't say another word.  Do not pull

25  this again.  I'm going to grant seven days to confirm

1   compliance.

2          MS. BRILLEAUX:  Thank you, Your Honor.

3              Moving on to Marc J. Bern & Partners.  The next

4   plaintiff is Beverly Brown.  This is no HIPAA authorization, no

5   PTO 71A.  I do believe a PTO 71A form was uploaded, but it's

6   incomplete because counsel failed to sign.

7          THE COURT:  Okay.  Ms. Hennessey.

8              Ms. Hennessey, are you on the line?

9              Star 6, please.

10         MS. HENNESSEY:  Can you hear me?

11         THE COURT:  Yes, ma'am.

12         MS. HENNESSEY:  Yes, Your Honor.  I did not realize

13  that the most recent -- I believe -- did she say that -- did

14  counsel say the PTO 71A form was not signed?

15         THE COURT:  Yes, ma'am.

16         MS. HENNESSEY:  And that was the -- so we had

17  recently uploaded that.  I did not realize that that was

18  deficient.  We will address that and re-upload it today.

19         MS. BRILLEAUX:  And I think we're also missing HIPAA

20  authorizations.

21         MS. HENNESSEY:  I believe that was uploaded as

22  well -- well, at the same time as the PTO 71A.

23         THE COURT:  And when was that?

24         MS. HENNESSEY:  Let me double -- I know that there

25  were -- there were two documents that were uploaded again this

1  morning for --

2          **THE COURT:**  Oh, come on.  You know what, I am beside

3  myself because we go through this every month, and it's

4  ridiculous, and it's inexcusable.  So this morning it was

5  cured.  Seven days to confirm compliance.

6          Theresa Kalsky?

7          **MS. CALLSEN:**  Yes.  The PFS is not substantially

8  complete.  All we have is -- for records of use is the iPhone

9  screenshot of a plan, and it doesn't even have her name on it.

10  I mean, I can send it to the Court if they would like to see

11  it, but I think you get the picture.

12          **THE COURT:**  Ms. Hennessey?

13          **MS. HENNESSEY:**  Yes.  So I believe it was uploaded.

14  And in this case, we've had a very difficult time getting the

15  records from the infusion facility.  We had sent multiple

16  requests to different parts of the hospital, and they either

17  come back saying they don't have records for the date even

18  though we know that she was treated those dates or that they'll

19  send us records without her --

20          **THE COURT:**  Okay.  That was -- that was not --

21  there's a question about the PFS not being substantially

22  complete, which includes no proof of use.  But what else,

23  Ms. Callsen?

24          **MS. CALLSEN:**  Well, we don't have any records.  The

25  only records we have that even show that she -- that there was

1    a plan for Taxotere.  So that's only record we have.

2              THE COURT:  Okay.  All right.

3              MS. HENNESSEY:  Your Honor, additionally, we did

4    upload what Ms. Kalsky, she pulled from her patient portal --

5    the Stony Brook facility patient portal which does show the

6    injection dates and the Taxotere -- the dates of the injection

7    procedure and that it was Taxotere.

8                   Now, as counsel stated, this screenshot or

9    printout does not show her actual name at the top of it.  And

10   we have been trying to reach her because I'm confident if I

11   walk her through it, we can figure out a way to download that

12   with her name on it.  We have just not been able to get in

13   contact with her over the past month.

14             MS. CALLSEN:  Well, we need actual records.  Again,

15   the screenshot was just a plan.  We need actual medical records

16   that show that she was administered Taxotere, and we need the

17   dates.

18             MS. HENNESSEY:  Your Honor, I believe that the

19   screenshot was of actual procedure dates where she got the --

20             THE COURT:  All right.  I'm going to ask you, ma'am,

21   to work with Ms. Berg, and she's going to go through what has

22   been submitted and what's -- how you might cure this

23   deficiency.

24                   Okay.

25             MS. CALLSEN:  I'll send it to you.

OFFICIAL TRANSCRIPT

1          THE COURT:  And we're going to roll this over until

2     the next hearing date.  This is going to be with Ms. Berg.

3               Okay.  Laura Nitto, no CMO 12A.

4               Yes, ma'am, Ms. Hennessey.

5          MS. HENNESSEY:  Yes, Your Honor.  This e-mail was

6     originally -- and I'm assuming that this is referring to the

7     CMO 12A e-mail to defense.  It looks like we had sent one, I

8     believe originally back in -- a few years ago, but we resent it

9     again last week.  I believe when I looked and saw that this was

10    still on the list, it looks like the e-mail from last week may

11    have not gone to those updated e-mails for some of the

12    defendants, so I re-forwarded it yesterday.  But as of now, the

13    e-mails have been sent a couple times.

14         THE COURT:  The Court's going to grant seven days to

15    confirm compliance.

16         MS. BRILLEAUX:  Okay.  The next case is Audrey Reed.

17    This is no present day photos.  We've got an issue with the

18    insurance authorization with the plaintiff's information where

19    it doesn't belong, no disability or Workers' Compensation

20    authorizations, and no PTO 71A certification.

21         MS. HENNESSEY:  Your Honor, in this case, the photos

22    have been uploaded.  They were just uploaded earlier today.

23    And I spoke with the paralegal earlier today and she said that

24    we had just received them today, as well as right before the

25    hearing, we received the PTO 71A in the mail.  I haven't

1  reviewed it yet or uploaded it, but I just got notified that we

2  received it right before this hearing.

3          THE COURT:  What about the other authorizations?

4          MS. HENNESSEY:  So I may have overlooked that.

5          MS. BRILLEAUX:  So, counsel, we need a corrected

6  version of the insurance authorization that doesn't have

7  plaintiff's information in the address recipient lines, and

8  then the disability and Workers' Compensation authorizations.

9          THE COURT:  Okay.  I'm going to grant 15 days for you

10 to gather the remaining information and upload it properly.

11          Okay.  Thank you.

12          MS. HENNESSEY:  Thank you.

13          THE COURT:  Caroline Boyd.

14          MS. BRILLEAUX:  No PTO 71A certification.

15          THE COURT:  Okay.  This is Ms. Worely.

16          MS. WORLEY:  Good afternoon, Your Honor.  Ms. Boyd is

17 deceased, so we anticipate this case will be ready for

18 dismissal shortly, but we're still just awaiting final

19 confirmation from all next of kin that the suit will no longer

20 be pursued.

21          THE COURT:  Thank you.  I'm going to just roll this

22 over until next time.

23          Brenda Dixon, no PTO 71.

24          MS. WORLEY:  Your Honor, we recently learned that

25 Ms. Dixon is also deceased.  So we are working with her family

1  to resolve the case obligations, but the estate process has not

2  yet been completed to authorize representatives to sign ESI

3  forms on behalf of the estate.  So we would just ask for an

4  extension to complete that process.  But in the meantime, the

5  family does understand the ESI obligations.

6          **THE COURT:**  Okay.  The Court's going to grant

7  60 days.

8              Lina Hawkins.

9          **MS. BRILLEAUX:**  That's also no PTO 71A.

10         **THE COURT:**  Ms. Worely.

11         **MS. WORLEY:**  Yes.  So we anticipate a forthcoming

12 voluntarily dismissal from Ms. Hawkins, but we're still waiting

13 on final confirmation from her that she still desires to

14 terminate her case.

15         **THE COURT:**  Thank you.  We'll roll this over until

16 next time.

17             And Virginia Tabron.

18         **MS. BRILLEAUX:**  Yes, Your Honor.  This is no before

19 photos from within five years of treatment.

20         **THE COURT:**  Ms. Worley.

21         **MS. WORLEY:**  Yes, Your Honor.  So Ms. Tabron was on

22 the last show cause for Sanofi regarding the sufficiency of her

23 photos.  We addressed then the difficulties that Ms. Tabron was

24 facing at that time.  The Court asked us to assist the client

25 in additional searches and then work with liaison counsel if we

OFFICIAL TRANSCRIPT

1    were still unable to locate photos within five years.  If the
2    Court would like us to review those circumstances again, we'd
3    be happy to do so.
4              **THE COURT:**  Ms. Berg --
5                   Go ahead.
6              **MS. WORLEY:**  I was going to say, we since assisted
7    the client with attempting to locate alternative sources and
8    are now in the process of beginning the process to work with
9    liaison counsel.  We would just ask for some more time to
10   continue this process.
11             **THE COURT:**  Okay.  I'm going to grant 30 days to work
12   with Ms. Berg.
13                  Thank you.
14                  Just a second.
15                       **(OFF THE RECORD)**
16             **THE COURT:**  All right.
17             **MS. BRILLEAUX:**  The next case, Your Honor, is Vina
18   Hathaway, represented by Bacchus & Schanker, and this is for
19   insurance authorization not witnessed.
20             **THE COURT:**  Mr. Elliot.
21             **MR. ELLIOT:**  Your Honor, this is Chris Elliot from
22   Bacchus & Schanker.  So I have here that Vina Hathaway, we're
23   having trouble locating her.  We believe we found a next of
24   kin.  We'd just like more time to flesh that out and see if we
25   can get cooperation.

OFFICIAL TRANSCRIPT

1          **THE COURT:**  You know what, it's just a witnessed

2  authorization.  So do you not know where she is?

3          **MR. ELLIOT:**  Yeah.  We do not know where she's at.

4  We sent someone to the last known address, we've -- the numbers

5  we have, but we believe we did a search and found a relative

6  that potentially may be helpful.  We just -- we left a message

7  and we're waiting on a response.  We'd just like a little more

8  time because it is --

9          **THE COURT:**  I'm going to grant 30 days.  Okay.

10          Brenda Mack.

11          **MS. BRILLEAUX:**  Yes, Your Honor.  This is a rollover.

12  This is no proof of use.  At the last hearing where this was

13  previously discussed, plaintiff's counsel said they had a rush

14  request to get medical records, and we have not received

15  anything since 2019.

16          **THE COURT:**  Okay.  Mr. Elliot.

17          **MR. ELLIOT:**  Yeah.  We did start the CMO 12 process.

18  The due diligence packet was done.  We've requested records

19  from two facilities, and we're still waiting on product

20  identification to come back.  We'd just ask for, you know, 30

21  to 60 days to continue.  We're just waiting on a response from

22  the facilities.

23          **THE COURT:**  Did you get -- so they started the CMO 12

24  process -- 12A process?

25          **MS. BRILLEAUX:**  So, as Your Honor is aware, CMO 12A

1  is for product ID.  We just need proof that they took Taxotere.
2  We have nothing.
3          **MS. CALLSEN:**  Yeah.  It seems backwards, I know.
4  That's what you're thinking.
5          **THE COURT:**  Oh, I know.
6              Okay.  And so you've gotten no medical records,
7  Mr. Elliot; is that what you're telling me?
8          **MR. ELLIOT:**  Yeah, we don't, unfortunately, Your
9  Honor.  We just have the client's word that they took the drug.
10 She's substantially compliant everywhere else.
11         **THE COURT:**  Well, I know, but if she didn't take the
12 drug, it really doesn't much matter.  I'm going to grant
13 30 days and that's it.
14         **MR. ELLIOT:**  Okay.  Well, we did contact the
15 St. Joseph -- the adult infusion center where she says that she
16 had her cancer treatment.  I'm hoping 30 days is sufficient.
17 And we'll do our best, Your Honor, but I would ask for a little
18 bit more time if possible just because we do have these
19 outstanding requests, and she is compliant otherwise.  It's
20 just --
21         **THE COURT:**  Well, I understand, but this lawsuit has
22 been pending for over two years.
23         **MR. ELLIOT:**  Yeah.
24         **MS. CALLSEN:**  Yeah.  And I would just echo on behalf
25 of -- sorry.

1        **THE COURT:**  It's been pending for over two years.

2    30 days.

3        **MR. ELLIOT:**  Okay.

4        **MS. BRILLEAUX:**  Thank you, Your Honor.

5            The next case is Angela Nase, no PTO 71A

6    certification.

7        **MR. ELLIOT:**  We located two new addresses for this

8    client this week and we haven't gotten any response.  We're

9    awaiting the results.  We believe that we potentially have a

10   good address, we'd just like a little bit more time.  We'd ask

11   for 14 days to see if we can get what we need.

12       **THE COURT:**  I'll grant 15 days.

13           Coralia Reilly.

14       **MS. BRILLEAUX:**  Yes, Your Honor.  This is no CMO 12A

15   process initiated.

16       **MR. ELLIOT:**  Well, this -- the proof of use was

17   actually uploaded March of 2020.  So we do have proof of

18   Taxotere in the medical records.  We mailed the CMO 12 packet

19   in June of 2020.  Right now, we have a message left for the

20   general counsel at NYU who has been helpful getting PID for us

21   in the past.  We'd like 60 days to confirm --

22       **THE COURT:**  But isn't this CMO 12A?

23       **MS. BRILLEAUX:**  Yes, Your Honor.

24       **THE COURT:**  It's just sending the e-mail.

25       **MR. ELLIOT:**  Yeah.  We've done that.  The packet --

1  the due diligence packet's been completed.  So now it's just a

2  matter of getting the product ID.

3            MR. BERG:  Mr. Elliot, you just need to send an

4  e-mail to defense counsel stating your efforts to obtain

5  product ID.

6            MR. ELLIOT:  We have.  That's my understanding that

7  we have.  We can redo that.  We can redo that, though.

8            MS. BRILLEAUX:  When was the e-mail sent, Mr. Elliot?

9            MR. ELLIOT:  Created CMO 12, 6/29/2020.  And it looks

10 like that's when the -- it would be faxed, and we got e-mail

11 and noticed.

12            THE COURT:  I'm going to grant seven days to confirm

13 compliance.

14            MR. ELLIOT:  Thank you, Your Honor.

15            THE COURT:  All right.  And then the last one is

16 Robin West.

17            MS. BRILLEAUX:  Yes, Your Honor.  This is another

18 insurance authorization not witnessed.

19            MR. ELLIOT:  So we found out that this client had

20 heart surgery.  She's been in and out of the hospital.  We sent

21 a notary to her home this week and we were able to upload the

22 newly dated HIPAA and auths yesterday.  So this one is cured.

23            THE COURT:  The Court's going to grant seven days to

24 confirm compliance.  Okay.

25                  Cynthia Allen.

1      **MS. BRILLEAUX:**  Yes, Your Honor, no PTO 71A

2   certification.

3      **THE COURT:**  Mr. Fontenot?

4      **MR. FONTENOT:**  Good afternoon, Your Honor.  Cynthia

5   Allen has passed away.  We spoke to her son who indicated that

6   he does not want to move forward with the case anymore.  So we

7   did send a letter for the family to sign and return to us.  And

8   we've sent that several times.  We just have not received any

9   additional communication from the family.

10      **THE COURT:**  Well, then perhaps what you need to do is

11   be on the No Defense list to dismiss her.  So we're going to

12   roll this over to next time, and you need to execute that

13   affidavit.

14      **MR. FONTENOT:**  Understood Your Honor.

15      **THE COURT:**  Okay.  Cynthia Allen -- I mean, Linda

16   Ingram.

17      **MS. BRILLEAUX:**  For Linda Ingram, the issue is

18   insurance authorization is not witnessed.

19      **MR. FONTENOT:**  Your Honor, for this client, she has

20   executed original authorizations obviously, but they since

21   expired.  So when she executed the insurance authorization, a

22   witness failed to sign.  So we did mail that out to her on

23   March 19th.  She has returned them to us in the mail, but we

24   have not received them yet.

25      An issue here is that she does not use e-mail,

OFFICIAL TRANSCRIPT

1  so it takes a little longer for us to receive the

2  authorizations.  So we would just ask for additional time for

3  this case.

4       **THE COURT:**  Okay.  I'm going to grant 15 days.  If

5  for some reason you have not received it in the mail by that

6  time, you should advise defense counsel.

7       Sheila Isoke.

8       **MS. BRILLEAUX:**  Yes, Your Honor.  This is another no

9  PTO 71A certification.

10       **MR. FONTENOT:**  Your Honor, Sheila Isoke has passed

11  away.  The spouse has indicated to us that she is looking for

12  passwords to Ms. Isoke's accounts.  We spoke to her last week

13  and also had mailed the PTO 71A statement in March to her, but

14  she has said that she's still looking for passwords.  So we

15  would just ask for additional time for her to complete a

16  statement saying one way or the other whether she has located

17  those passwords.

18       **THE COURT:**  So she's passed away.  Is that -- has she

19  been appointed?

20       **MR. FONTENOT:**  Yes, Your Honor.  She has been

21  appointed.

22       **THE COURT:**  Oh, okay.  I'm going to grant a 30-day

23  extension.

24       **MR. FONTENOT:**  Thank you.

25       **THE COURT:**  Lavoria Jones.

OFFICIAL TRANSCRIPT

 1          **MS. BRILLEAUX:**  Your Honor, I just wanted to -- just

 2   on Sheila Isoke before we move on, has the new plaintiff been

 3   substituted too, like in the litigation?

 4          **MR. FONTENOT:**  I'll have to confirm that.  I'm unsure

 5   right at the moment.

 6          **THE COURT:**  Okay.

 7          **MR. FONTENOT:**  If not, we will certainly do that.

 8          **MS. BRILLEAUX:**  Thank you, Your Honor.

 9          **THE COURT:**  Okay.

10          **MS. BRILLEAUX:**  Lavoria Jones, no PTO 71A

11   certification.

12          **MR. FONTENOT:**  Your Honor, this is a similar case as

13   to Linda Ingram.  She does not e-mail, but she has received the

14   statement in the mail and has indicated that she returned it to

15   us.  We just haven't received it yet, so we would ask for

16   additional time for this case.

17          **THE COURT:**  The Court's going to grant 15 days.

18              And Marva Nolan.

19          **MS. BRILLEAUX:**  Yes, Your Honor.  This is insurance,

20   disability, and Workers' Compensation authorizations are not

21   witnessed.  And then the disability authorization is not dated.

22   So we need corrections for those.

23          **MR. FONTENOT:**  Your Honor, this is the same situation

24   as before where the client has indicated that they have

25   received the authorizations and they have returned them to us.

1  We just haven't received it yet.

2          **THE COURT:**  The Court's going to grant 15 days.

3          **MR. FONTENOT:**  Thank you.

4          **THE COURT:**  All right.  Then we're on to Shaw

5  Cowart's firm.

6                  All right.  Let's proceed.  Ethel Bailey.

7          **MS. BRILLEAUX:**  No PTO 71A certification.

8          **THE COURT:**  All right.  Is that Mr. Shaw

9  or Mr. Cowart?

10          **MR. COWART:**  This is Mr. Cowart, Your Honor.

11          **THE COURT:**  Okay.

12          **MR. COWART:**  Your Honor, I'd like to just fall on my

13  sword.  Apparently, we had several cases that got on this list

14  that we had thought had been cured.  But we have a long-term

15  employee that left and so we didn't get it done timely, but

16  several of them have been cured.  I apologize to the Court.

17  We're not before you often a lot anymore either, so -- but I

18  just wanted to let you know that this plaintiff's has been

19  recently uploaded.

20          **THE COURT:**  Okay.  All right.  So Ms. Bailey, it was

21  uploaded?

22          **MR. COWART:**  Yes, ma'am.

23          **THE COURT:**  All right.  The Court's going to grant

24  seven days to confirm compliance.

25                  Michelle Barbeauld.

OFFICIAL TRANSCRIPT

1       **MS. BRILLEAUX:**  The same issue Your Honor.

2       **MR. COWART:**  Your Honor, on Ms. Barbeauld, we lost

3   contact with her sometime last year, and I think we can work to

4   get that on the No Defense list next time if we can't get in

5   contact with her over the next couple of weeks.

6       **THE COURT:**  I can't -- I can't -- Mr. Cowart, I can't

7   hear you -- I can hear -- it's almost too loud, but --

8       **MS. BRILLEAUX:**  It's a little muffled.

9       **THE COURT:**  -- and it's muffled, so I'm having

10   difficulty.

11       **MR. COWART:**  Is this any -- is this any better, Your

12   Honor?

13       **THE COURT:**  It is.  Okay.

14       **MR. COWART:**  Okay.  We lost contact with her sometime

15   last year, Your Honor.  And I think we can work to have her put

16   on the No Defense list next time.

17       **THE COURT:**  Okay.  All right.  I'm going to roll it

18   over until next time and it will be on the No Defense list.

19           Mary Filer.

20       **MS. BRILLEAUX:**  The same issue, Your Honor, no PTO

21   71A.

22       **MR. COWART:**  This is the same thing, Your Honor.  If

23   you could give us seven days to confirm that it's been

24   uploaded.

25       **THE COURT:**  Seven days to confirm compliance.

OFFICIAL TRANSCRIPT

1              Yvonne Garner.

2         MS. BRILLEAUX:  Same issue, no PTO 71A.

3         MR. COWART:  Same thing, Your Honor.

4         THE COURT:  Seven days to confirm compliance.

5              Irina --

6         MS. BRILLEAUX:  -- Korneeva Vladimirsky.  Same issue,

7    no PTO 71A.

8         MR. COWART:  The same thing, Your Honor.

9         THE COURT:  Seven days to confirm compliance.

10             Michelle Lantz.

11        MS. BRILLEAUX:  Same issue.

12        MR. COWART:  The same thing, Your Honor.

13        THE COURT:  Seven days to confirm compliance.

14             Jean Oliver.

15        MS. BRILLEAUX:  Same issue, Your Honor.

16        MR. COWART:  Your Honor, Ms. Oliver, we think we've

17   got a good address and a good phone number, but we haven't been

18   able to get her to get the documents back to us.  So if we

19   could have some more time.

20        THE COURT:  I'm going to grant 30 days.

21             Margaret Pichler.

22        MS. BRILLEAUX:  No PTO 71A.

23        MR. COWART:  Same thing, Your Honor.  We would like

24   to have a couple days if that's okay.

25        THE COURT:  Wait.  Which same thing?

OFFICIAL TRANSCRIPT

1              MR. COWART:  I'm sorry.

2              MS. BRILLEAUX:  No PTO --

3                   Sorry.  I thought you were talking to me; you

4    weren't.

5              THE COURT:  Is it seven days to confirm compliance or

6    you need more time?

7              MR. COWART:  More time, Your Honor.

8              THE COURT:  The Court's going to grant 30 days.

9                   And Madeline Romero Salas.

10             MS. BRILLEAUX:  No PTO 71A, Your Honor.

11             MR. COWART:  Seven days.

12             THE COURT:  Seven days to confirm compliance.

13             MS. BRILLEAUX:  Your Honor, I just -- if we could, I

14   wanted to just revisit Michelle Barbeauld.  If we've lost

15   contact and counsel has no defense to dismissal, could we just

16   get that one dismissed today?

17             THE COURT:  No.

18             MS. BRILLEAUX:  Okay.

19             THE COURT:  I think what I heard from Mr. Cowart is

20   that they lost a long-time employee and I think he just wants

21   to have an opportunity.  So I'm not just being capricious in

22   the denial.  It was listening to what he said created some of

23   this problem, so I'm going to give him an opportunity to just

24   look at it and confirm it.

25             MS. BRILLEAUX:  Understood, Your Honor.

1          **MR. COWART:**  I appreciate it, Your Honor.  Thank you.

2          **THE COURT:**  Thank you.

3          **MS. CALLSEN:**  The next group of cases are the Finson

4     law firm.  Actually, there's a unique issue that I want to

5     raise with Your Honor.

6          The PFS being incomplete in the next five cases

7     were all very similar.  And when we received so-called

8     compliance with them, we took a look at them, and all of the

9     signatures of the plaintiff on the authorizations, as well as

10    on the certification, appeared to be the same, meaning that it

11    looks like maybe -- I'm not -- but, anyway, all the five

12    plaintiffs' signatures look like they were all signed with the

13    same handwriting.

14         So I then took it to Sanofi, to Kelly Brilleaux,

15    and we looked at them.  We actually have a comparison chart if

16    you want to take a look at them, but our concern is -- and then

17    we went back and pulled three other cases of the Finson Law

18    Group and did the same comparison.

19         I mean, our concern is, number one, that the

20    certification was not signed by the plaintiff herself.

21         Second of all, there are HIPAA authorizations

22    which we do not believe that the signature is accurate.  And as

23    defense counsel, then we're submitting them to health care

24    provider facilities and seeking records when we're not sure

25    that the signature is accurate.

OFFICIAL TRANSCRIPT

```
1              And, you know, again, we just -- we did identify
2    these on eight different submissions.
3              MS. BRILLEAUX:  It's actually 11.
4              MS. CALLSEN:  On 11 submissions once we went back.
5    And, you know -- so, I'm mean, we're happy to work with
6    plaintiff's liaison with these, but we're very concerned that
7    the plaintiff's signature is not accurate.  So we would ask
8    that --
9              THE COURT:  May I see those?
10             MS. CALLSEN:  Yes, I can --
11             MS. BRILLEAUX:  I'm going to -- if I may approach,
12   Your Honor.  This chart, just because of the size of it --
13             THE COURT:  I want to make sure that Ms. Barrios and
14   Ms. Berg --
15             MS. BRILLEAUX:  I have this one --
16             MS. CALLSEN:  Yes.  And I actually can -- I actually
17   am ready to e-mail it.  I'm going to send it to you right now.
18   Yep.  I already have it teed up.  And I have it included with
19   Erin and Sam.  You can get it too.
20             MS. BERG:  Has this been discussed with plaintiff's
21   counsel?
22             THE COURT:  Have you talked to Mr. Finson about this
23   or broached this with Mr. Finson?
24             MS. BRILLEAUX:  No.  We're addressing it for the
25   first time here.
```

1          MS. CALLSEN:  It wasn't until we compared notes, Your

2     Honor, and then we looked at them together -- because some of

3     the cases are just 505, some are just Sanofi and 505, some are

4     just Sanofi -- that we wanted to raise this.

5          MR. BERG:  Maybe it's something that liaison counsel

6     can work with defense counsel and plaintiff's counsel to get to

7     the bottom of and see if there is an issue.

8          MR. FINSON:  Your Honor, this is Lowell Finson.  May

9     I respond to this?

10          THE COURT:  Yes, sir, Mr. Finson.

11          MR. FINSON:  I will tell you this, that I was not

12     aware of this, and I understand that everything was signed.  I

13     know we talk to our clients all the time.  If there is some

14     reason that the defense counsel, or Ms. Barrios, anybody, wants

15     us to re-do all the authorizations, we'll be happy to do it.

16     That's all I can tell you.  It's hard to, I mean, understand

17     the issue, except for the fact that if they're concerned, we

18     can fix it.

19          MS. BRILLEAUX:  And, Your Honor, I will just note for

20     the record, as you know, we do a 30-day list, a 14-day list,

21     and the 14-day list did note that it appeared that counsel had

22     signed these authorizations.  So although we have not discussed

23     this with Mr. Finson, Mr. Finson has been put on notice that

24     this was the issue for discussion at the hearing today.

25          MS. CALLSEN:  At least for these first five cases.

OFFICIAL TRANSCRIPT

1   And it wasn't until we went back and looked through that we

2   identified this could be an issue with an additional case --

3   with an additional six cases.

4           THE COURT:  All right.  So which cases are not

5   related to this specific issue with the Finson firm?

6           MS. CALLSEN:  Okay.  The next case, the Andrews,

7   Phyllis case.

8           MS. BRILLEAUX:  No, I think that one's on the --

9           MS. CALLSEN:  It that on that list too?  Okay.

10          I'm sorry, Your Honor.

11          THE COURT:  Do we go to No. 62?

12          MS. CALLSEN:  It goes through --

13          MS. BRILLEAUX:  I think it goes through 62.  So it's

14  63, 64, and 65 are unaffected by the signature issue.

15          THE COURT:  All right.  Let's do 62, 63, 64, and 65

16  because those are CMO 12A, at least for 62 and 63.  That's

17  Susan Vick.

18          Mr. Finson?

19          MR. FINSON:  Yes.  With regards to Ms. Vick, we have

20  extensively attempted to get these records.  And I understand

21  now that it's important to e-mail the defense counsel this.

22  I'm more than happy to do it and tell them exactly what we have

23  done with regards to obtaining the records.

24          MS. CALLSEN:  I'm sorry.  I couldn't understand you.

25  This was a CMO -- no CMO 12 submission.

OFFICIAL TRANSCRIPT

1    THE COURT:  Which is --

2    MR. FINSON:  Yes.  I'm just telling you that we have

3  extensively tried to get these documents.  And I will certainly

4  e-mail whoever I need to e-mail telling you exactly what we

5  did.

6    MS. CALLSEN:  No.  Sir, this is a CMO 12.  It's not

7  the actual obtaining the documents, but just being compliant

8  with CMO 12A, which states the steps that counsel needs to go

9  through, and that they need to then show defense counsel that

10  they are actually initiating those steps, and then submit them

11  in the appropriate places under MDL Centrality.

12    MR. FINSON:  I understand that, and I'll be happy to

13  do it if we haven't done it already.  I thought we had.

14    MS. BRILLEAUX:  Do you have the date on which the

15  e-mail was sent, counsel?

16    MR. FINSON:  No, I don't.  I know that we sent one

17  e-mail, and I'm not sure if we sent other e-mails.  I'm just

18  not sure.  I have to check with my paralegal.

19    THE COURT:  I am --

20    MR. BERG:  Would you like me to work with counsel to

21  make sure that he's in compliance with CMO 12?  I can do that.

22    THE COURT:  I'm going to grant 15 days for this --

23  for Mr. Finson to be in compliance with -- and that's No. 62 on

24  the list, Susan Vick, 20-2666, and Tara Elder, who my guess is

25  it's the same issue, that's Docket 17-15569.

OFFICIAL TRANSCRIPT

1          And then the following two are Donna Rooney.
2    And this is Ms. Callsen's issue.
3          **MS. CALLSEN:**  Yes.  The next one is Donna Rooney.
4    The PFS is not substantially complete.  There's no declaration,
5    no authorizations, no CMO 12, and no PTO 71A.
6          **THE COURT:**  Mr. Finson?
7          **MR. FINSON:**  Your Honor, with regards to Ms. Rooney,
8    we have the 12A label showing NDC -- (audio transmission
9    gap) -- and we uploaded that.
10         **THE DEPUTY CLERK:**  You're all muffled.  Can you try
11   to slow down when you speak, please.
12         **MR. FINSON:**  I'm sorry.  With regard -- can you hear
13   me okay now?
14         **THE DEPUTY CLERK:**  It's muffled.
15         **MR. FINSON:**  Let me try something.  Hold on.  Let me
16   try this.  Hold on.
17              Is that any better?
18         **MS. BRILLEAUX:**  Your Honor, just while counsel is
19   getting situated, I did want to note that the Vick case that we
20   did just address is also -- it is one of the ones that was
21   involved with the signature issue.  And the other ten cases
22   that we have not addressed have other deficiencies in addition.
23   So I just wanted to make sure you were clear on that.
24              Thank you.
25         **THE COURT:**  Okay.  So which one does not have a

1  signature issue?  Is that --

2          **MS. CALLSEN:**  These last two do not --

3          **THE COURT:**  Oh, I thought you said Donna Rooney does.

4          **MS. BRILLEAUX:**  So Tara Elder, 63; Donna Rooney, 64;

5  and Charistian Sullivan, 65, do not have signature issues.

6          **THE COURT:**  Well, that's what we were doing.

7          **MS. CALLSEN:**  The last three.  We -- I think -- the

8  last three on the list do not have signature issues, Your

9  Honor.

10          **MS. BRILLEAUX:**  Correct.  There's 14 Finson Law Firm

11  cases.  The first 11 are affected by the signature issues, and

12  then the last three are not.

13          **THE COURT:**  Well, Susan Vick is affected by the

14  signature issue?

15          **MS. CALLSEN:**  She is, but she also had the CMO 12,

16  which was not involved with the earlier ones.

17          **MS. BRILLEAUX:**  Correct.

18          **THE COURT:**  Okay.  So Tara Elder, I granted 15 days

19  to work with Ms. Berg.

20                And then Donna Rooney and Charistian --

21          **MS. CALLSEN:**  Yeah.  The issue is very similar in

22  both of these, Donna Rooney and Charistian Sullivan, that

23  there's just numerous deficiencies with the PFS, including

24  authorizations, declarations, submissions.

25                Specifically as to the Sullivan case, we did

1   receive a, quote, response to the deficiencies stating

2   plaintiff will be providing, but that is not sufficient.

3   Again, these cases have been on this list for some time.

4           **THE COURT:**  I understand.  These were filed in the

5   middle of the pandemic, though, so that does create just a

6   little bit of a quagmire.  I know they've been filed for some

7   time, but...

8           **MS. BRILLEAUX:**  I believe they were transferred out

9   of the New Jersey litigation.

10          **THE COURT:**  Oh, okay.  Thank you.

11          **MR. BERG:**  Is counsel on the phone?  I believe that

12  in regards to Ms. Sullivan's case, it's been determined to be a

13  duplicate case.

14          **MR. FINSON:**  I was going to address that issue.  Can

15  you hear me okay?  Can you hear me okay?

16          **THE COURT:**  It's -- we can hear you, but it is very,

17  very muffled.  I don't know what the problem is.

18          **MR. FINSON:**  Let me try to --

19          **THE COURT:**  This is what -- this is what --

20  Mr. Finson, this is becoming very frustrating for everyone.

21  We're going to roll this over to the next time.  I'm going to

22  ask that you work with Ms. Berg on Donna Rooney's case and

23  Charistian Sullivan.

24          We do need to -- I am very concerned about any

25  potential -- someone else signing any of these authorizations.

1    And so we are going to have to have a hearing on this

2    independent of the call docket.

3              MS. CALLSEN:  Okay.

4              THE COURT:  And so we have -- our next call docket

5    is --

6              MS. CALLSEN:  The 26th.  May 26th, I believe.

7              THE COURT:  Okay.  Thank you.

8              MS. CALLSEN:  Nick, is that sufficient, May 26th?

9    The timing?

10             MR. INSOGNA:  Yes.  Yes, it is.

11             MS. CALLSEN:  Okay.

12             THE COURT:  So why don't we do this, and we'll deal

13   with all of the deficiencies of the Finson firm on May -- how

14   about May 25th?  Is that a problem?  I do have a hearing on

15   May 25th at 1:30, a preliminary injunction, but I can do you in

16   the morning of May 25th.

17             MS. CALLSEN:  That's fine, Your Honor.

18             THE COURT:  Okay.  Let's do this at 10:00 a.m.,

19   May 25th.

20             MS. BARRIOS:  Your Honor, Dawn Barrios.  I'd like to

21   just address the issue that the defendants raised because it's

22   very concerning to me as well.  I just learned about it sitting

23   at counsel table.

24             If -- I think I heard Mr. Finson say that

25   routinely sometimes in his office paralegals sign clients'

OFFICIAL TRANSCRIPT

1    names, which I'm not saying is a good practice.  But if he gets

2    the clients to sign these prior to May 25th, do we still have

3    to go forward with the hearing?

4            **THE COURT:**  I am very concerned.  I think we need to

5    look into whether or not -- because I think then it's going to

6    require an audit of all of his clients --

7            **MS. BARRIOS:**  I understand.

8            **THE COURT:**  -- to see if any other invalid

9    authorizations are floating out there.  This is giving people

10   access to medical records, to psychiatric records, and that is

11   going to be problematic.

12           **MS. BARRIOS:**  Yes, ma'am.  All right.

13           **THE COURT:**  We'll set this matter for hearing on

14   May 25th at 10:00 a.m.  Thank you.

15           **MS. BRILLEAUX:**  Thank you.

16           **MS. BARRIOS:**  Your Honor, may we approach?

17           **THE COURT:**  Yes.

18           (WHEREUPON, the proceedings were concluded.)

19

20

21

22

23

24

25

OFFICIAL TRANSCRIPT

```
1                          *******
2                        CERTIFICATE
3            I, Jodi Simcox, RMR, FCRR, Official Court Reporter
4    for the United States District Court, Eastern District of
5    Louisiana, do hereby certify that the foregoing is a true and
6    correct transcript, to the best of my ability and
7    understanding, from the record of the proceedings in the
8    above-entitled and numbered matter.
9
10
11                            s/Jodi Simcox, RMR, FCRR
                              Jodi Simcox, RMR, FCRR
12                            Official Court Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25
```

OFFICIAL TRANSCRIPT