UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL No. 16-2740 SECTION: "H" (5) |
| This document relates to: Alice Hughes, 17-11769 | ) ) ) | |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment on Prescription Grounds (Doc. 11535). On April 26, 2021, the Court granted the Motion.[1] These reasons follow.

## BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel,[2] that Plaintiffs were administered for the treatment of breast cancer or other forms of cancer. Among these companies is Defendant Accord Healthcare, Inc. ("Accord" or "Defendant"). Plaintiffs allege that the drug caused permanent alopecia, or permanent hair loss. Plaintiffs bring claims of failure to warn, negligent misrepresentation, fraudulent misrepresentation, and more. The first bellwether trial was held in September 2019, and the second is set for August 23, 2021.[3]

---

[1] Doc. 12521.
[2] Docetaxel is the generic version of Taxotere.
[3] The second trial was continued due to the COVID-19 pandemic.

In October 2019, the Court selected Plaintiff Alice Hughes to proceed with discovery in preparation for the third bellwether trial.[4] Plaintiff Hughes was diagnosed with breast cancer in August 2011.[5] After undergoing a lumpectomy in September 2011, she began chemotherapy in November 2011, taking a regimen that consisted of docetaxel and Carboplatin.[6] She completed treatment in February 2012.[7] Years later, in 2016, she saw an attorney advertisement describing a link between Taxotere/docetaxel and permanent hair loss.[8] In November 2017, she joined this MDL, alleging that she suffers permanent hair loss caused by docetaxel.[9]

In the instant Motion, Defendant Accord moves for summary judgment against Hughes, arguing that her claims are untimely under Louisiana's one-year prescription period. Plaintiff Hughes opposes the Motion.

## **LEGAL STANDARD**

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[11] When considering a summary judgment motion, the Court must view the entire

---

[4] The Court selected two other Plaintiffs as well—Wanda Stewart and Dora Sanford. *See* Doc. 8430 (Case Management Order No. 21). The Court has since dismissed both cases. *See* Docs. 12494 and 10807.
[5] Doc. 11535-2 at 1; Doc. 11763-1 at 1.
[6] Doc. 11535-4 at 16; Doc. 11535-2 at 1; Doc. 11763-1 at 1.
[7] Doc. 11535-2 at 1; Doc. 11763-1 at 1.
[8] Doc. 11535-2 at 3; Doc. 11763-1 at 7.
[9] Case No. 17-cv-11769-JTM-MBN, Doc. 1.
[10] FED. R. CIV. P. 56.
[11] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor.[12]

## LAW AND ANALYSIS

### I.   The Face of Plaintiff's Pleadings

Under Louisiana Civil Code article 3492, the prescriptive period for products liability claims is one year.[13] Generally, the period begins to run from the day the injury or damage is sustained.[14] "'The burden of proof is normally on the party pleading prescription; however, if on the face of the petition it appears that prescription has run, . . . the burden shifts to the plaintiff to prove a suspension or interruption of the prescriptive period' based on the equitable doctrine of *contra non valentem*."[15]

This Court has recognized that, on the basis of the allegations in the Second Amended Master Complaint (the "Master Complaint"), a plaintiff's hair loss becomes permanent if it persists six months after completing chemotherapy.[16] While Plaintiff Hughes asserts that the Master Complaint is an administrative tool and should not provide "a de facto six-month trigger

---

[12] Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000).
[13] LA. CIV. CODE art. 3492. *See also In re:* Xarelto (Rivaroxaban) Prods. Liab. Litig., MDL No. 2592, 15-4790, 2017 WL 4517287, at *2 (E.D. La. Oct. 10, 2017).
[14] Carter v. Matrixx Initiatives, Inc., 391 F. App'x 343, 344 (5th Cir. 2010).
[15] In re Taxotere (Docetaxel) Prods. Liab. Litig. (Johnson and Thibodaux), No. 20-30104, No. 20-30107, 2021 WL 1560724, at *2 (5th Cir. Apr. 21, 2021). In *Johnson and Thibodaux*, the Fifth Circuit acknowledged that "[t]here is some question as to whether this burden-shifting rule applies at a motion for summary judgment." *Id.* (citing Trahan v. BP Am. Prod. Co., 209 So. 3d 166, 170 (La. Ct. App. 2016)). The court, however, left the question unanswered, noting that this Court and the parties have assumed that the plaintiffs have the burden of establishing contra non valentem. *Id.* The Fifth Circuit noted, too, that "[s]ummary judgment is inappropriate where reasonable minds could differ as to the applicability of contra non valentem." *Id.* (citing M.R. Pittman Grp., L.L.C. v. Plaquemines Par. Gov't, 182 So. 3d 312, 324 (La. Ct. App. 2015)).
[16] Doc. 9110. Notably, in her Short Form Complaint, Sanford specifically adopted the allegations of the Second Amended Master Complaint. Doc. 1 in No. 2:17-cv-9417.

date for prescription,"[17] the Fifth Circuit has rejected this. The court has noted that in this MDL, the Master Complaint defines permanent, chemotherapy-induced alopecia as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy."[18] Accordingly, the Fifth Circuit held that "[a]s a matter of law, the injury of 'an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy' is sustained when, six months after the completion of chemotherapy, a person has an absence of or incomplete hair regrowth."[19] Because Plaintiff Hughes finished chemotherapy with docetaxel in February 2012, her injury manifested itself six months later in August 2012. At this time, Plaintiff knew that her hair loss had persisted for six months.[20] Hughes, however, did not file her lawsuit until November 2017, more than five years after she suffered her injury. Accordingly, on the face of her pleadings, her case is prescribed.

## II. Contra Non Valentem

"Under Louisiana law, there is a firmly rooted equitable-tolling doctrine known as *contra non valentem agree non currit praescriptio*, which means '[n]o prescription runs against a person unable to bring an action."[21] Contra non valentem, as it is known, tolls prescription in four exceptional circumstances:

> (1) where there was some legal cause which prevented the courts or their officers from acting or taking cognizance of the plaintiff's action; (2) where there was some condition or matter coupled with the contract or connected with the proceedings which prevented the plaintiff from availing himself of his cause of action;

---

[17] Doc. 11763 at 7.
[18] *See Johnson and Thibodaux*, 2021 WL 1560724, at *3.
[19] *Id.* at *4.
[20] *See id.* ("Here, six months after the completion of chemotherapy, Appellants knew their hair loss had persisted for that length of time."). Indeed, Plaintiff Hughes specifically testified that six months after her last treatment, she realized her hair was not growing back as she had expected. Doc. 11535-5 at 20.
[21] *Id.* (quoting R.J. Reynolds Tobacco Co. v. Hudson, 314 F.2d 776, 786 (5th Cir. 1963)).

4

> (3) where the defendant has done some act effectually to prevent the plaintiff from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.[22]

Plaintiff Hughes insists that her claim falls within the final two scenarios.

The Court begins with the fourth category, known as the "discovery rule." Under this rule, a plaintiff's ignorance about her claim cannot be willful nor can it be the result of negligence.[23] If she has constructive notice, or "notice enough to excite attention and put [her] on [her] guard and call for inquiry," this is sufficient to start the running of prescription.[24] Once she has this notice, a plaintiff has "an obligation to further investigate the facts in order to pursue [her] claim before the one-year prescriptive period lapses."[25]

According to the Fifth Circuit, "Plaintiffs are not entitled to wait to sue until they are certain of what and/or who caused their injury."[26] Contra non valentem tolls the prescription period only "until the point when a prospective plaintiff through the exercise of reasonable diligence should have '"considered [Taxotere] [or docetaxel] as a potential root cause of' her injury."[27]

Plaintiff Hughes testified that she attributed her initial hair loss to her chemotherapy treatment.[28] She testified specifically that in August 2012, she realized her hair regrowth "was taking awfully long," and she continued to attribute this persisting hair loss to her chemotherapy treatment.[29]

---

[22] *Id.* (quoting Morgan v. Entergy New Orleans, Inc., 234 So. 3d 113, 116, 120 (La. Ct. App. 2017)).
[23] *Id.*
[24] *Id.* (quoting Cartwright v. Chrysler Corp., 255 La. 597, 232 So. 2d 285, 287 (1970)).
[25] *See id.* (quoting Rozas v. Dep't of Health & Hum. Res., 522 So. 2d 1195, 1197 (La. Ct. App. 1988)) (cleaned up).
[26] *Id.* at *5.
[27] *Id.* (quoting Oil Ins. Ltd. v. Dow Chem. Co., 977 So. 2d 18, 23 (La. Ct. App. 2007)).
[28] *See* Doc. 11535-5 at 38.
[29] *Id.* at 37–38.

5

In her opposition to Accord's Motion, Plaintiff emphasizes that she asked her oncologist, Dr. Robert Veith, if her hair would grow back, and he answered her saying that it would. After carefully reviewing this portion of Plaintiff's deposition, however, the Court finds that when taken in context, this evidence does not bear on the reasonableness of Plaintiff's actions *after* suffering her injury. Instead, Plaintiff's testimony relates to her conversations with Dr. Veith *before* beginning any treatment.[30] At the time of the conversation, then, Plaintiff had not yet suffered an injury. This evidence, therefore, is not relevant to the contra non valentem analysis the way Plaintiff asserts that it is.

Plaintiff's testimony does establish, however, that her persistent hair loss was unexpected. She was told by Dr. Veith prior to any chemotherapy that her hair would regrow. In August 2012, she realized that she had persistent hair loss. Despite this knowledge, she did not ask any physician to explain the cause of her unexpected hair loss. Her sole reported conversation with her oncologist is as follows:

> Q: Did you discuss your hair loss with Dr. Veith at any time following the completion of chemotherapy, but before March of 2017?
>
> A: At the annual visits he would ask, well, you know, let's talk about the hair, is it back yet. Sparsely.
>
> That's pretty much it.
>
> Q: So he would simply inquire as to if it was back, you would respond yes or no, and that was the end of the discussion.
>
> A: Correct.

---

[30] *Id.* at 27.

> Q: Did you ever ask him whether there was anything you could do to help promote hair regrowth?
>
> A: I never asked him, because I didn't want to introduce or do anything to my body new or different, because I didn't want to do anything that might trigger another episode of the cancer.
>
> So I didn't want to do anything. I didn't want to introduce anything. I didn't want to go to anybody who might prod and probe and tell me to use something.
>
> I didn't want to do that. So that was my decision not to.
>
> He really didn't -- You know, because I didn't pursue it, he didn't either.[31]

Plaintiff, then, admits that she did not pursue the issue with Dr. Veith. For purposes of contra non valentem, the Court finds that this was unreasonable, especially given that Plaintiff holds a degree in medical technology and has spent much of her career working at hospitals.[32]

According to the Fifth Circuit, "[a] reasonable inquiry into the cause of one's persistent hair loss would likely include consultation with doctors, but a plaintiff with persistent hair loss might instead search for the cause herself."[33] Plaintiff Hughes, however, did not perform any of her own research, and in this MDL, the Master Complaint shows "what a reasonable inquiry would have uncovered." [34] In 2006, former Taxotere patients formed a group known as "Taxotears," and they developed an online presence.[35] In 2010, a Canadian newspaper and CBS News both published online articles linking Taxotere and

---

[31] *Id.* at 39–40.
[32] Doc. 11535-5 at 6–7.
[33] *Johnson and Thibodeaux*, 2021 WL 1560724, at *6.
[34] *Id.*
[35] *Id.*

7

permanent hair loss.[36] This evidence is relevant to what a reasonable inquiry by Plaintiff Hughes would have revealed.[37]

Following the Fifth Circuit, this Court further considers the available medical literature that linked Taxotere to permanent hair loss. To the extent Plaintiff Hughes had difficulty understanding such information, "the patient's consulting her oncologist, dermatologist, or other treating physician as to the meaning of the information would be part of diligence."[38] With this in mind, the Court notes that in 2006, Dr. Scot Sedlacek disseminated his research on persistent alopecia and docetaxel.[39] In 2009 and 2011, articles were published in the *British Journal of Dermatopathology* and the *American Journal of Dermatopathology*, respectively.[40] On May 9, 2012, an article was published in the *Annals of Oncology*.[41] These three articles linked permanent hair loss with breast cancer patients who received docetaxel chemotherapy.[42]

Considering this, "[a] reasonable inquiry would have uncovered at least some information that linked Taxotere to persistent alopecia."[43] Plaintiff Hughes, however, made no inquiry, and she is charged with knowledge of all that a reasonable inquiry would have revealed.[44] She has not raised a genuine dispute of material fact that a reasonable inquiry would have left her without knowledge of whom she should sue.[45] As the Fifth Circuit wrote, even "those

---

[36] *Id.*
[37] *See id.*
[38] *Id.* at *7.
[39] *See id.*
[40] *Id.*
[41] Doc. 4407 at 31–32.
[42] *See id.* 30–32; *Johnson and Thibodeaux*, 2021 WL 1560724 at *7.
[43]*Johnson and Thibodeaux*, 2021 WL 1560724 at *7.
[44] *See id.*
[45] *See id.*

being treated for an exceedingly alarming disease . . . must display diligence in discovering the cause of unexpected injuries arising from their treatment."[46]

Plaintiff Hughes argues that she only became aware of the potential for permanent hair loss from docetaxel in 2016, after she saw an attorney advertisement. The Fifth Circuit has addressed this argument and held that such evidence fails to create an issue of fact on prescription.[47] The Fifth Circuit similarly has rejected arguments based on the third contra non valentem scenario, finding that Plaintiffs in this MDL "were not prevented from availing themselves of their causes of action; a reasonable inquiry would have led to the information needed."[48] Ultimately, Plaintiff Hughes fails to create an issue of fact regarding whether she timely filed her lawsuit. Because of this, the Court grants Accord's Motion.

## CONCLUSION

Accordingly, for the foregoing reasons, the Motion for Summary Judgment on Prescription Grounds (Doc. 11535) is **GRANTED**. Plaintiff Alice Hughes' case is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 28th day of April, 2021.

JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE

---

[46] *Id.*

[47] *Id.* ("All Appellants have presented to raise a factual dispute is that they did not know Sanofi caused their permanent alopecia until they saw advertisements in 2016 and that 'there is no evidence that Appellants' healthcare providers knew Taxotere could cause permanent hair loss prior to th[is] litigation.' When these parties actually knew Sanofi was a potential cause of their injury is not the question. They did not act reasonably in light of their injuries, and their causes of action were 'reasonably knowable in excess of one year prior to [their] filing' suit.").

[48] *Id.* at *8.