## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)                          **MDL NO. 2740**
PRODUCTS LIABILITY LITIGATION

                                                     **SECTION "H" (5)**

THIS DOCUMENT RELATES TO:


Elizabeth Kahn, Case No. 2:16-cv-17039.

### DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR
### <u>RECONSIDERATION ON WARNINGS CAUSATION</u>

On April 19, 2021, the Fifth Circuit affirmed this Court's entry of summary judgment in *June Phillips v. Sanofi US Services, Inc. In re Taxotere (Docetaxel) Prods. Liab. Litig.*, No. 20-30405, 2021 WL 1526429 (5th Cir. Apr. 19, 2021). In doing so, the Fifth Circuit established the warnings causation standard relevant to this litigation.

*First*, the Fifth Circuit held that the dispositive question is whether the physician would have changed his prescribing decision if the *physician* had been provided a different warning. *Id.* at *5 (evidence must "create a genuine dispute of material fact as to whether a warning that Taxotere caused potentially permanent—as opposed to temporary—alopecia would have changed [the physician's] prescribing decision.").

*Second*, the Fifth Circuit declined to adopt a standard that would allow a plaintiff to offer testimony about patient choice to overcome that of her prescribing physician. When a prescribing physician testifies that the alleged non-disclosed risk does not materially alter the physician's risk-benefit decision for the drug, a plaintiff cannot avoid summary judgment by claiming *she* would have chosen a different medicine had *she* known of the risk. *Id.* at *3–4.

Based on the Fifth Circuit's decision in *Phillips*, Sanofi now requests this Court reconsider and grant Sanofi's Motion for Summary Judgment on Warnings Causation in *Kahn*.[1] Ms. Kahn's prescribing oncologist testified unequivocally that he would not have changed his decision to prescribe Taxotere to Ms. Kahn even when presented with the warning in the December 2015 Taxotere label, which warned that "cases of permanent hair loss have been reported" and that this Court has found adequate as a matter of law.[2] Ms. Kahn's oncologist also has never testified that he would have prescribed a non-Taxotere regimen to Ms. Kahn. Under the Fifth Circuit's decision in *Phillips*, this testimony now warrants summary judgment in Sanofi's favor.

## BACKGROUND

Ms. Kahn is a Louisiana resident who was diagnosed with early stage breast cancer on April 11, 2008.[3] Shortly thereafter, Ms. Kahn met with her oncologist, Dr. Carl Kardinal.[4] As part of Ms. Kahn's treatment, Dr. Kardinal recommended Ms. Kahn participate in a Taxotere clinical trial (NSABP B-40) because it offered both state-of-the-art and standard-of-care chemotherapy regimens for Ms. Kahn's breast cancer.[5] Before joining the clinical trial, Ms. Kahn signed a consent form, which warned that "hair loss" was a potential side effect and that "[i]n some cases, side effects may be very serious, long-lasting, or may never go away."[6] Ms. Kahn was not

---

[1]   Rec. Doc. 9300 (Defs.' Mot. for Summ. J. on Warnings Causation).

[2]   Rec. Doc. 10464 (Order and Reasons Granting Defs.' Mot. for Summ. J. on the Claims of Pls. Whose Taxotere Treatment Started After December 11, 2015).

[3]   Rec. Doc. 9300-1 ¶¶ 4–5 (Defs.' Statement of Undisputed Facts in Support of Their Mot. for Summ. J. on Warnings Causation).

[4]   *Id.* ¶ 7.

[5]   *Id.* ¶ 9. Patients in the clinical trial received docetaxel (Taxotere) followed by doxorubicin (Adriamycin) and cyclophosphamide (Cytoxan). *Id.* at ¶ 11. Patients also received investigational drugs, including capecitabine (Xeloda), gemcitabine (Gemzar), and bevacizumab (Avastain). *Id.*

[6]   *Id.* ¶¶ 28–29.

concerned about this risk at the time of treatment.[7]   Instead, she trusted Dr. Kardinal's recommendation and participated in the clinical trial because she thought it provided her with the best chance of survival.[8]  Ms. Kahn remains cancer-free today.[9]

Dr. Kardinal testified that he still would have recommended Ms. Kahn participate in the clinical trial (where she would receive Taxotere) even if he had been warned that "[i]n some cases . . . permanent hair loss has been observed" following the use of Taxotere.[10]  Dr. Kardinal has never testified that the permanent hair loss warning set forth in the 2015 Taxotere label would have caused him to prescribe a non-Taxotere regimen to Ms. Kahn.[11]  If Ms. Kahn had declined to participate in the clinical trial, Dr. Kardinal would have prescribed Ms. Kahn a chemotherapy regimen of Adriamycin and Cytoxan followed by a taxane.[12]  In that case, Dr. Kardinal's preferred taxane would still have been Taxotere because Taxol, the other available taxane, carries the risk of additional serious side effects, including neuropathy and severe infusion reactions.[13]  Although Dr. Kardinal testified that other chemotherapies (such as Taxol) might have been adequate *in terms of efficacy*, he has never testified that he would have *prescribed* anything other than Taxotere to

---

[7]  **Ex. Q**, Dec. 7, 2017 Kahn Dep. 220:25–221:14.

[8]  *Id.* ¶ 31.  The deposition citation, summarized in Sanofi's Statement of Facts, is quoted here in full:  "Q. But you trusted his recommendation that the clinical trial was a good option for you.  A. That particular -- yes, I trusted that particular recommendation.  Q. And you thought that was going to give you your best chance of survival? A. Yes."  *Id.* (citing Dec. 7, 2017 Kahn Dep. 179:23–180:5).

[9]  *Id.* ¶ 55.

[10]  *Id.* ¶¶ 51–52.  In Sanofi's Statement of Facts, the citation at Paragraph 52 to Dr. Kardinal's testimony addresses whether Dr. Kardinal would have changed his prescribing decision for bellwether Plaintiff Cynthia Thibodeaux. *See id.* ¶ 52 (citing Jan. 17, 2018 Kardinal Dep. 106:2–9).  The citation to Dr. Kardinal's testimony addressing whether Dr. Kardinal would have changed his prescribing decision for Ms. Kahn is located at 105:18–106:1 and is included at Exhibit G to Sanofi's original Motion.  Rec. Doc. 9300-9 at 15 (Ex. G to Defs.' Mem. of Law in Support of Their Mot. for Summ. J. on Warnings Causation).

[11]  Rec. Doc. 9300-1 ¶ 46 (Defs.' Statement of Undisputed Facts in Support of Their Mot. for Summ. J. on Warnings Causation).

[12]  *Id.* ¶ 45.

[13]  *Id.* ¶¶ 41, 45.

treat Ms. Kahn, particularly in light of the additional risks of alternative regimens.[14]

After completing fact discovery, Sanofi filed its Motion for Summary Judgment on Warnings Causation on February 14, 2020.[15]  Relying on *Willett v. Baxter International, Inc.*, 929 F.2d 1094, 1099 (5th Cir. 1991), Sanofi argued that Ms. Kahn had failed to establish under Louisiana law that "but for the inadequate warning, the treating physician would not have used or prescribed the product."[16]  Specifically, Sanofi cited the testimony of Dr. Kardinal, who testified that he would not have changed his decision to prescribe Taxotere to Ms. Kahn in 2008—even if warned of the alleged risk of permanent hair loss.[17]

On April 7, 2020, the Court denied Sanofi's Motion.[18]  The Court, applying a warnings causation analysis unique to the chemotherapy decision-making process, found a genuine issue of material fact regarding how the hypothetical conversation between Dr. Kardinal and Ms. Kahn would have proceeded if they had discussed the alleged risk of permanent hair loss.  The Court identified the following testimony in support:

> [Dr. Kardinal] further testified that if the Taxotere label had warned of permanent alopecia, he would have raised this in his discussion with Kahn.
>
> In addition to this, Dr. Kardinal testified that if a patient told him that she did not wish to take Taxotere after learning of its risk, Dr. Kardinal would have discussed other options.  He testified that paclitaxel [Taxol] is an adequate alternative to Taxotere in terms of its efficacy.  Plaintiff Kahn testified that if she "was told that Taxotere could have caused permanent hair loss, [she] would have asked what [her] other options were."  Notably, when Kahn was given options regarding her initial treatment, she chose not to have

---

[14]   *Id.* ¶ 46.

[15]   Rec. Doc. 9300 at 1 (Defs.' Mot. for Summ. J. on Warnings Causation).

[16]   Rec. Doc. 9300-2 at 6 (Defs.' Mem. of Law in Support of Their Mot. for Summ. J. on Warnings Causation).

[17]   *Id.* at 6–7.

[18]   Rec. Doc. 9888 (Order and Reasons Granting in Part and Denying in Part Defs.' Mot. for Summ. J. on Warnings Causation).  The Court dismissed Ms. Kahn's redhibition claim in its Order.

a mastectomy; instead, she chose to see if chemotherapy would shrink her tumor, which it did, thereby allowing her to have a lumpectomy instead.[19]

More than year after this Court's Order in *Kahn*, the Fifth Circuit affirmed this Court's grant of summary judgment on warnings causation in *Phillips*, another MDL bellwether case.  In *Phillips*, the Fifth Circuit addressed the test for warnings causation under Louisiana law and held that the focus is solely on the *physician*'s decision to prescribe the drug at issue.  *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 2021 WL 1526429, at * 3.  The Fifth Circuit declined to apply a chemotherapy-specific exception to the warnings causation framework, rejecting the plaintiff's argument that the inquiry should focus on "how patient choice . . . would have steered the conversation" as without support under Louisiana state law.  *Id.* at *3 n.4.  Under this binding precedent, Sanofi respectfully requests reconsideration on warnings causation in *Kahn* and asks the Court to dismiss this case with prejudice.

## **LEGAL STANDARD**

The Court's April 7, 2020 Order denying Sanofi's motion for summary judgment is interlocutory.  Interlocutory orders "are not within the provisions of [Rule] 60(b), but are left within the plenary power of the court that rendered them to afford such relief from them as justice requires."  *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014) (quoting *Zimzores v. Veterans Admin.*, 778 F.2d 264, 266 (5th Cir. 1985)).  This Court may revise its interlocutory orders "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  *Id.* (citing Fed. R. Civ. P. 54(b)).  "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'"  *Austin v. Kroger*

---

[19]   *Id.* at 4–5.

*Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994)).

This power is "committed to the discretion of the district court, and that discretion is not cabined by the heightened standards for reconsideration governing final orders." *Id.* at 337 (quoting *Saint Annes Dev. Co. v. Trabich*, 443 F. App'x 829, 832 (4th Cir. 2011) (internal quotations omitted)). This relaxed standard serves a useful purpose. If the district court determines circumstances have changed or it has erred, "it would be a waste of judicial resources to force it to perpetuate such error through a trial on the remaining issues, even though it believed the ultimate judgment would have to be reversed on appeal." *Zimzores*, 778 F.2d at 266; *see also Washington v. Fieldwood Energy LLC*, 2018 WL 263230, at *5 (E.D. La. Jan. 2, 2018) (Milazzo, J.) (granting motion to reconsider summary judgment ruling).

## ARGUMENT

To prove warnings causation in Louisiana, a "plaintiff must show that a proper warning would have changed the decision of the [prescribing] physician, *i.e.* that but for the inadequate warning, the [prescribing] physician would not have used or prescribed the product." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 2021 WL 1526429, at *3 (quoting *Willett*, 929 F.2d at 1099). While the decision to use a particular drug may rest with both the doctor and patient, *id.*, the Fifth Circuit explained that "to the extent that patient choice is relevant, that relevance is cabined to helping [the Court] decide whether . . . [the doctor's] prescribing decision would have been different had *he* known that Taxotere's associated risk of alopecia was potentially permanent rather than temporary." *Id.*

The Fifth Circuit focused its inquiry on whether the physician's testimony created an issue of fact and on the patient's actions at the time the prescribing decision was made—not testimony from the plaintiff on how she would view different risk considerations today in the context of litigation. The Fifth Circuit also declined to apply a chemotherapy-specific framework to warnings causation, explaining that the proposition was unsupported and finding "no occasion to deviate from binding case law to apply this standard." *Id.* at *3 n.4.

Under the *Phillips* standard, Ms. Kahn has failed to meet her burden for three reasons:

*First*, like the prescribing oncologist in *Phillips*, Dr. Kardinal testified he would still prescribe Taxotere to Ms. Kahn in light of the allegedly non-disclosed risk of permanent alopecia:

> Q. . . .  If the Taxotere label . . . had said, "In most cases, normal hair growth should return.  In some cases, frequency not known, permanent hair loss has been observed," would that change your recommendation that Miss Kahn participate in NSABP B-40?
>
> A. No.[20]

Dr. Kardinal stands by his decision to recommend Ms. Kahn participate in the NSABP B-40 clinical trial, where all patients received Taxotere in various combinations with other investigational drugs.[21]  Dr. Kardinal recommended Ms. Kahn participate in the clinical trial

---

[20]   Rec. Doc. 9300-1 ¶ 52 (Defs.' Statement of Undisputed Facts in Support of Their Mot. for Summ. J. on Warnings Causation).  In *Phillips*, the prescribing oncologist, Dr. Sonnier, provided analogous testimony:

> Second, when it comes to Phillips in particular, Dr. Sonnier repeatedly testified that a Taxotere label warning of potentially permanent hair loss—as opposed to temporary hair loss—would not have changed his decision to use the Taxotere-based chemotherapy to treat Phillips's breast cancer.  For example, he was asked directly: "**If someone with Ms. Phillips's medical history came [to] you today with the same tumor type, same medical history, would you make the same recommendation for her treatment?** "**Yes,**" he replied.

*In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 2021 WL 1526429, at *4 (emphasis added).

[21]   Rec. Doc. 9300-1 ¶ 52 (Defs.' Statement of Undisputed Facts in Support of Their Mot. for Summ. J. on Warnings Causation).

because it offered state-of-the-art treatment for her type of breast cancer.[22]  Importantly, Dr. Kardinal's testimony has not changed, nor will it.  Dr. Kardinal will no longer testify live at trial, making his deposition testimony not only dispositive, but final.  Accordingly, Ms. Kahn cannot create a genuine issue of material fact on warnings causation.

*Second*, Ms. Kahn cannot overcome Dr. Kardinal's testimony by identifying hypothetically available regimens.  As the Fifth Circuit has established, to survive summary judgment on warnings causation, Ms. Kahn has the burden to show that Dr. Kardinal would have found such alternatives "adequate to treat" her breast cancer, and that a warning of permanent hair loss would have led Dr. Kardinal to "prescribe these [alternatives] instead of" a Taxotere-based regimen after weighing the specific risks and benefits of the available options.  *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 2021 WL 1526429, at *4 (finding Ms. Phillips had not identified testimony showing other non-Taxotere regimens were as effective, "let alone that a warning of potentially permanent hair loss . . . would have led Dr. Sonnier to prescribe these instead of TCH").

Ms. Kahn, like Ms. Phillips, has failed to meet her burden.  If Ms. Kahn opted not to participate in the clinical trial, Dr. Kardinal testified he nevertheless would have treated her with a Taxotere regimen.[23]  Dr. Kardinal's preferred taxane was Taxotere because Taxol carries the risk of additional serious side effects, including neuropathy and severe infusion reactions.[24]  Consistent with his preference, Dr. Kardinal testified that some non-Taxotere options were adequate *in terms of efficacy*, but he responded "**No**" when asked if his efficacy testimony meant he would "potentially prescribe Taxol to that patient."[25]  Dr. Kardinal never testified that he would have

---

[22]   *Id.* ¶ 9.

[23]   *Id.* ¶ 45.

[24]   *Id.* ¶¶ 41, 45.

[25]   *Id.* ¶ 46 (emphasis added).

prescribed Ms. Kahn a regimen with Taxol (in light of its risks of neuropathy and severe infusion reactions) over Taxotere (in light of the 2015 warning).  As a result, Ms. Kahn cannot establish warnings causation.

*Third*, Ms. Kahn cannot avoid summary judgment by offering her own post-treatment testimony under the *Phillips* standard.  The Fifth Circuit held that the relevance of "patient choice" "is cabined" to whether a patient's concerns about hair loss or her appearance would have caused the treating *physician* to change his prescribing decision had "*he* known that Taxotere's associated risk of alopecia was potentially permanent rather than temporary."  *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 2021 WL 1526429, at *3.

Ms. Kahn has no such evidence.  Before joining the clinical trial, Ms. Kahn signed a consent form, which warned that "hair loss" was a potential side effect and that "[i]n some cases, side effects may be very serious, long-lasting, or may never go away."[26]  Ms. Kahn was not concerned about this risk at the time of treatment.[27]  Instead, Ms. Kahn trusted Dr. Kardinal's recommendation and consented to the randomized clinical trial involving Taxotere because she believed it gave her the best chance of survival.[28]  *Id.* at *4 ("In turn, [Ms. Phillips] 'put her faith in [her oncologist],' and consented to treatment.").  Under these facts, Ms. Kahn's retrospective testimony does not create a genuine issue of material fact.  *Id.* at *5 ("[Ms. Phillips's] testimony about how she might have steered the conversation amount[s] to a 'scintilla of evidence in support of [her] position.'" (citation omitted)).

---

[26]   *Id.* ¶¶ 28–29.

[27]   Ex. Q, Dec. 7, 2017 Kahn Dep. 220:25–221:14.

[28]   Rec. Doc. 9300-1 ¶ 31 (Defs.' Statement of Undisputed Facts in Support of Their Mot. for Summ. J. on Warnings Causation).

Ms. Kahn has failed to show that Dr. Kardinal's ultimate prescribing decision would have changed if provided with a different warning. Under the Fifth Circuit's decision in *Phillips*, Ms. Kahn cannot establish warnings causation, and her case must be dismissed with prejudice.

## CONCLUSION

For these reasons, the Court should grant this Motion for Reconsideration and enter summary judgment in Sanofi's favor.

Respectfully submitted,

/s/ *Douglas J. Moore*                          Harley V. Ratliff
Douglas J. Moore (Bar No. 27706)                Jon Strongman
**IRWIN FRITCHIE URQUHART &**                   Adrienne L. Byard
**MOORE LLC**                                   **SHOOK, HARDY & BACON L.L.P.**
400 Poydras Street, Suite 2700                  2555 Grand Boulevard
New Orleans, LA 70130                           Kansas City, Missouri 64108
Telephone: 504-310-2100                         Telephone: 816-474-6550
Facsimile: 504-310-2120                         Facsimile: 816-421-5547
dmoore@irwinllc.com                             hratliff@shb.com
                                                jstrongman@shb.com
                                                abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi US Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*