# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 16-2740<br><br>*This document relates to:*<br>Audrey Plaisance, Case No. 2:18-cv-08068 |

## HOSPIRA'S REPLY IN SUPPORT OF ITS MOTION FOR
## SUMMARY JUDGMENT ON CLAIMS UNDER ILLINOIS LAW

Plaintiff's Response does not even acknowledge, let alone attempt to distinguish, this Court's prior ruling that in cases filed directly in the MDL, the applicable choice-of-law rules are from the state where the plaintiff was prescribed and administered Docetaxel. Order ("Choice-of-Law Ruling") (Doc. 10487) at 4. That ruling is dispositive. It is undisputed that Plaintiff was prescribed and administered Docetaxel in Louisiana. Accordingly, Louisiana's choice-of-law rules apply, and those rules require the application of Louisiana law to her claims. Moreover, even if Illinois choice-of-law rules applied, Louisiana law would still govern. Plaintiff concedes that Louisiana law should govern in her case except as to her claim for punitive damages. But Illinois law should apply on the issue of punitive damages under controlling precedent from the Supreme Court of Illinois. Thus, under either state's choice-of-law rules, the Court should (i) apply Louisiana law, and (ii) dismiss all of Plaintiff's claims asserted under Illinois law, including her claim for punitive damages.

**I.     Louisiana Law Applies Under Louisiana's Choice-of-Law.**

The Response argues that Hospira "presents a hard and fast rule" that "is not supported by any authority." Plaintiff Audrey Plaisance's Response in Opposition to Hospira's Motion for Summary Judgment ("Response") (Doc. 12495) at 1, 4. But Hospira is relying on authority from

*this Court*, which is consistent with other courts that have addressed this issue. As the Court explained, for cases "filed directly into this MDL, . . . the Court will treat these cases 'as if they were transferred from a judicial district sitting in the state *where the case originated*.'" Choice-of-Law Ruling (Doc. 10487) at 4 (quoting *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 348 (5th Cir. 2017)) (emphasis added). This rule—known as the *Yasmin* rule—originates from the *Yasmin* multidistrict products liability litigation. *See In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09–md–02100, 2011 WL 1375011, at *6 (S.D. Ill. Apr. 12, 2011). The "weight of authority has adopted *Yasmin's* rule," including the Fifth Circuit. Choice-of-Law Ruling (Doc. 10487) at 4 n. 12 (quoting *Wahl v. Gen. Elec. Co.*, 786 F.3d 491, 496 (6th Cir. 2015)); *Depuy Orthopaedics,* 870 F.3d at 348 (quoting *Yasmin,* 2011 WL 1375011, at *6).

Under the *Yasmin* rule, "the law that applies in each case will be the law of the state where the case originated, *which is the state where a Plaintiff was prescribed or administered her Taxotere treatment*." Choice-of-Law Ruling (Doc. 10487) at 4 (citing *Yasmin,* 2011 WL 1375011, at *6) (emphasis added); *see also In re Avandia Mktg., Sales Prac. & Prods. Liab. Litig.*, No. 3:09-md-02100, 2012 WL 3205620, at *2 (E.D. Pa. Aug. 7, 2012) (holding that direct filed cases "should be governed by the law of the states where Plaintiffs received treatment and prescriptions for Avandia"). Thus, Plaintiff's claim that Hospira has "no authority" for its position is simply inaccurate.

The Response does not dispute that Plaintiff was prescribed and treated with Docetaxel in Louisiana. It follows then that her case originated in Louisiana, and Louisiana choice-of-law rules apply. The Response also does not dispute that under Louisiana's choice-of-law rules, Louisiana law applies. Thus, because Louisiana choice-of-law rules apply to this case, Plaintiff's claims are governed by Louisiana law.

Instead of addressing this direct precedent, the Response offers misguided procedural arguments, none of which provide any valid explanation as to why Louisiana choice-of-law should not apply.

1. Plaintiff erroneously argues that the "transferor venue in Plaintiff's case is the Northern District of Illinois." Response (Doc. 12495) at 2. This position is based on Plaintiff's allegation in her Short Form Complaint that the Northern District of Illinois is a venue "where [she] *might have otherwise* filed this Short Form Complaint absent the direct filing Order entered by this Court." Plaisance Am. SFC ¶ 8 (emphasis added). Similarly, Plaintiff argues that venue and personal jurisdiction would have been proper in the Northern District of Illinois. Response (Doc. 12495) at 3.

Plaintiff's hypothetical venue choice is irrelevant to the choice-of-law issue before the Court. Plaintiff's case was *not* filed in the Northern District of Illinois and then transferred to this Court; it was filed directly in the MDL pursuant to this Court's direct-filing procedures under Pretrial Order No. 4 ("PTO-4"). (Doc. 122) at II.A. This Court has made clear that cases filed directly in the MDL are subject to the choice-of-law rules of the state where the cases "originated." Choice-of-Law Ruling (Doc. 10487) at 4. The state where a case "originated" does not mean any state in which the Plaintiff could have chosen to file had she not used the direct-file procedure. Regardless of whether venue and jurisdiction would have been proper elsewhere, the "originating state" for purposes of determining choice-of-law in a direct-filed case is the state where a Plaintiff was "prescribed or administered her [Docetaxel] treatment." *Id.* Thus, Plaintiff's argument is directly contrary to the Court's own precedent and should be rejected.

2. Plaintiff mistakenly relies on the following language in PTO-4 as support for her argument: "[Direct filing] will have no impact on choice of law that otherwise would apply to an

3

individual case had it been originally filed in another district court and transferred to this Court

pursuant to 28 U.S.C. § 1407."  Response (Doc. 12495) at 5 (citing PTO-4 (Doc. 122) at II.G.).

This provision, however, does not determine where a direct-filed case originated for choice-of-law

purposes.  In fact, the Court cited this same language in its Order addressing choice-of-law

determinations.  Choice-of-Law Ruling (Doc. 10487) at 4 n. 12.  Furthermore, the *Yasmin* court's

direct-filing order also had a similar provision.  *Yasmin*, 2011 WL 1375011, at \*5 ("The order

expressly provides that the parties' direct filing agreement will not impact the choice of law that

otherwise would apply to the direct filed actions.").

Contrary to Plaintiff's interpretation, this rule was designed to ensure that a plaintiff cannot

elect to apply the choice-of-law rules *of the MDL court* to avoid potentially unfavorable choice-

of-law rules of the originating state.  This is illustrated by *Wahl v. General Elec. Co.*, 786 F.3d 491

(6th Cir. 2015).  Plaintiff cites *Wahl* for the proposition that "direct filing of [an] MDL case [does]

not alter [the] location of [the] transferee venue at [the] time of remand."  Response (Doc. 12495)

at 3 (citing *Wahl*, 786 F.3d at 498).  However, this is a misrepresentation of *Wahl*'s analysis and

conclusion.  *Wahl* referenced an analogous provision from that MDL court's order—that direct

filing would have "*no impact on the choice of law to be applied*"—as support for applying the

choice-of-law rules of the plaintiff's home district instead of the MDL court's choice-of-law rules.

*Wahl*, 786 F.3d at 498.  The Sixth Circuit further explained that even the plaintiff acknowledged

that the case would be transferred to the Middle District of Tennessee because the plaintiff "was

administered [the drug] in that district, and because Plaintiff has at all times relevant resided in

that district." *Id.*  Thus, *Wahl* supports Hospira's position, not Plaintiff's.

Moreover, PTO-4 provides that, after the MDL completes its proceedings, direct-filed

cases will be transferred "to the federal district court in the district *where the plaintiff allegedly*

*was injured or where plaintiff resided at the time of his or her alleged injury*, after giving the parties an opportunity to meet and confer and be heard on the issue." PTO-4 (Doc. 122) at II.D (emphasis added).  In other words, when this Court addressed the issue of the proper venue absent direct-filing in PTO-4, it contemplated the Plaintiff's state of residence or where Plaintiff received treatment as the proper district for remand.  This is consistent with this Court's and *Yasmin's* determination that Plaintiff's state where she received treatment is the originating state for purposes of choice-of-law.  Thus, PTO-4 support's Hospira's position.

3. Plaintiff argues that cases applying Louisiana law that were filed in the Eastern District of Louisiana, and not pursuant to a direct-filing order in an MDL, "are not at all instructive." Response (Doc. 12495) at 5.  Not so.  Those cases do not implicate the *Yasmin* choice-of-law rule for direct-filed MDL cases—i.e., that the court should apply Louisiana choice-of-law rules because that is the state where the case originated.  But they do provide examples of how under Louisiana choice-of-law, in products liability cases involving prescription drugs where the plaintiff lives in Louisiana, was prescribed the drug in Louisiana, and was allegedly injured in Louisiana, courts routinely apply Louisiana law.  This case is no different.

4. Finally, instead of addressing Hospira's arguments and this Court's precedent, Plaintiff addresses portions of a previous brief—Hospira's Opposition to Plaintiffs' Motion to File Amended Short Form Complaints—regarding transfers of venue.  Response (Doc. 12495) at 3-4.  But Hospira has not re-raised those points as part of this motion.  Thus, they are irrelevant here.

## II. Even if Illinois Choice-of-Law Applied, Louisiana Law Would Still Govern.

Plaintiff argues that, under Illinois choice-of-law rules, Illinois law applies to her claim for punitive damages.  This argument, however, is contrary to the decision from the Supreme Court of Illinois in *Townsend v. Sears, Roebuck and Co.*, 227 Ill.2d 147 (2007).  In *Townsend*, the court

addressed the issue of punitive damages, including the same arguments that Plaintiff is advancing here, and rejected them.  Thus, applying Illinois choice-of-law to Plaintiff's case leads to the same result—Louisiana law governs.

In Illinois there is "a *strong* presumption" that the law of the place of injury governs in a products liability case, *id.* at 166, and this presumption can only be overcome by "showing a *more or greater* significant relationship to another state," *id*. at 163.  In analyzing whether this strong presumption has been overcome, Illinois considers "the principles of section 6 [of the Second Restatement] in light of the contacts identified in section 145(2)." *Id.* at 166-67.  The contacts under Section 145(2) of the Second Restatement are as follows: (i) "the place where the injury occurred," (ii) "the place where the conduct causing the injury occurred," (iii) "the domicil[e], residence, nationality, place of incorporation and place of business of the parties," and (iv) "the place where the relationship, if any, between the parties is centered." *Id*. at 160 (citation omitted).  The relevant principles under section 6 are (i) "the relevant policies of the forum," (ii) "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue," and (iii) "the basic policies underlying the particular field of law." *Id.* at 170.

Plaintiff argues, based on *Smith v. I-Flow Corp.*, 753 F. Supp. 2d 744, 748 (N.D. Ill. Nov. 29, 2010), that Illinois law should apply because a "state's purpose in imposing punitive damages is to punish wrongdoing," whereas "a state's decision to *disallow* punitive damages is to protect its residents from excessive liability." Response (Doc. 12495) at 7 (quotation marks omitted).  But *Townsend* rejected this same argument.  In *Townsend*, the dispute was over whether to apply the law of the defendant's home state, Illinois, which permitted punitive damages, or the law of Michigan, where the injury occurred, which prohibited punitive damages. *Townsend*, 227 Ill.2d 147 at 172.  The lower appellate court had adopted the rationale advanced here by Plaintiff: "the

6

purposes of punitive damages are to punish the defendant and deter future wrongdoing," while "the disallowance of punitive damages reflects a corporate protection policy." *Id.* at 172–73 (citation and quotation marks omitted).

*Townsend* reversed. It explained that *"[t]his factor must not be over-emphasized"* because "[t]o some extent, at least, *every* tort rule is designed *both* to deter other wrongdoers *and* to compensate the injured person." *Id.* at 174 (citing Restatement (Second) of Conflict of Laws §146, Comment *e,* at 432–33 (1971)). Moreover, "[t]he likelihood that some state other than that where the injury occurred is the state of most significant relationship is greater in those *relatively rare* situations where, with respect to the particular issue, the state of injury bears little relation to the occurrence and the parties." *Id.* (citing Restatement (Second) of Conflict of Laws § 146, Comment *c,* at 430–31 (1971)). As a result, the lower court "not only undervalued the strong presumption in favor of Michigan law, but overemphasized its perception of the interests Illinois and Michigan have in their different concepts of tort damages." *Id.* at 174. "[I]f the substantive law of these two states looks in different directions, each state would seem to have an equal interest in having its tort rule applied in the determination of the conflicting issues presented in this case." *Id*. at 175 (citation omitted). Accordingly, it held that "a section 145 analysis does not override our strong presumption that the law of Michigan, as the state where plaintiffs reside and where the injury occurred, governs the conflicting issues presented in this case." *Id.*

This same reasoning applies here. There is a strong presumption that Louisiana law applies because Ms. Plaisance is a Louisiana resident, her alleged injury occurred in Louisiana, and the alleged injury took place "in the course of an activity or a relationship which was centered" in Louisiana—the Docetaxel regimen she received to treat her breast cancer. *Id*. at 166 (citation omitted). This is not a "rare" case where "the state of injury bears little relation to the occurrence

7

and the parties." *Id.* at 174 (citation omitted). Although Illinois law allows punitive damages, Louisiana has decided that they are *not* available in products liability cases. Thus, under *Townsend,* because each state has an equal interest on this issue, the presumption in favor of applying the law of the place of injury remains intact, and Louisiana law applies.

Plaintiff's reliance on *I-Flow* is misplaced because that decision is inconsistent with the Illinois Supreme Court's controlling analysis in *Townsend*. Indeed, *I-Flow's* sister court in the Central District of Illinois soundly rejected *I-Flow* because it was not an "accurate application[] of Illinois law post-*Townsend*." *Hammond v. System Transport, Inc.*, No. 11-cv-1295, 2012 WL 3234865, at *11 (C.D. Ill. Aug. 6, 2012). The *Hammond* court explained that "the Illinois Supreme Court made clear in *Townsend* that (1) the presumption in favor of applying the law of the place of injury is, in most cases, going to be a very strong one; (2) this strong presumption extends to punitive damages claims; and (3) the plaintiff's domicile has an interest in the law to be applied in punitive damages claims, even when the defendant is a non-domiciliary, and even in cases in which the plaintiff's domicile does not provide for punitive damages." *Id.* at *12. Thus, unless the place of injury is "fortuitous" and "bears little relation to the occurrence and the parties," "the result that *Townsend* commands is clear"—the law of the place of injury should apply. *Id.* (citations omitted).

Plaintiff's attempt to distinguish *Townsend* on its facts also fails. Response (Doc. 12495) at 7-8. *I-Flow* made the distinction that in *Townsend* there was a claim of contributory negligence, and therefore some alleged wrongdoing had occurred in the place of injury. *Id.* (quoting *I-Flow*, F. Supp. 2d at 749). Even if the Plaintiff did not commit any wrongdoing in Louisiana, that would simply mean that one of the four "contacts" would favor Illinois instead of being a "wash." *Townsend*, 227 Ill.2d at 169. Yet two of the four factors would still favor Louisiana: the first factor

(place of injury) and fourth factor ("the place where the relationship, if any, between the parties is centered"). *Id*. at 160. And the third factor (domicile of the parties) is neutral. *Id.*

Moreover, *I-Flow*'s myopic focus on this single contact factor contradicts the holistic approach explained by *Townsend*. As the Response recognizes, "the court cannot simply count the relevant state's contacts, but must consider them in light of the general principles identified in Section 6 of the Restatement." Response (Doc. 12495) at 6 (citing *Townsend*, 227 Ill.2d at 160.) As *Hammond* explained, under these principles, the presumption still holds even if no alleged wrongdoing occurred in the place of injury:

> [F]or the purposes of the present Motion to Dismiss, the Court assumes that the offending conduct took place in Missouri [the defendant's domicile]. This is certainly a factor in favor of the defendant's domicile (and against the state in which injury occurred) that did not exist in *Townsend*. However, it is not enough to tip the scales away from Illinois [the place of injury]. Where the place of injury is both non-fortuitous and the domicile of the plaintiff, *Townsend* makes clear that the presumption in favor of the place of injury is very strong. To rebut this presumption, Plaintiff would have to show something more—something that, on these facts, cannot be shown.

*Hammond*, 2012 WL 3234865, at *12. Thus, the *I-Flow* court did not accurately apply Illinois choice-of-law rules as explained by the Illinois Supreme Court in *Townsend*, and this Court should not look to *I-Flow* as authoritative guidance.

**III.   The Court Should Dismiss All Counts Other Than Failure-to-Warn.**

Plaintiff does not dispute that the Court should decide the choice-of-law issue now. Plaintiff also concedes "that Louisiana products liability law should govern her case, except as to her punitive damages claim." Response (Doc. 12495) at 1 n.1. Specifically, she acknowledges that "in regard to her theories of liability, she cannot overcome the presumption that the law of her place of injury, Louisiana, applies in her case." *Id*. at 9. (citation omitted). She further recognizes

9

that the "exclusive theories of liability available under Louisiana law are found in the LPLA." *Id.* (citation omitted).

Thus, Plaintiff does not dispute that the Court should dismiss the following claims because they are not recognized under the LPLA: Count III ("Negligence"), Count IV ("Negligent Misrepresentation"), Count V ("Fraudulent Misrepresentation"), Count VI ("Fraudulent Concealment), and Count VII ("Fraud and Deceit). Hospira's Memorandum in Support of Motion for Summary Judgment (Doc. 12387-1) at 8. As to Count I ("Strict Products Liability—Failure to Warn"), because the LPLA does not allow a claim for strict liability, the Court should dismiss that claim or construe it as being consistent with the LPLA. *Id.* Finally, because Louisiana law does not allow punitive damages in product liability cases, Response (Doc. 12495) at 6 n.3, the Court should dismiss Plaintiff's claim for punitive damages.

### IV.     Conclusion

For the reasons stated above, Hospira respectfully requests that this Court hold that Louisiana law applies and dismiss all counts in the complaint other than Count I—Failure to Warn.

Date: April 30, 2021

Respectfully submitted,

*/s/ Heidi K. Hubbard*
Heidi K. Hubbard
Richmond T. Moore
Neelum J. Wadhwani
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: 202-434-5000
Facsimile: 202-434-5029
hhubbard@wc.com
rmoore@wc.com
nwadhwani@wc.com

        John F. Olinde (Bar No.1515)
        Peter J. Rotolo (Bar No. 21848)
        **CHAFFE McCALL LLP**
        1100 Poydras Street
        New Orleans, LA 70163
        Telephone: (504) 858-7000
        Facsimile: (504) 585-7075
        olinde@chaffe.com
        rotolo@chafe.com

        *Counsel for Defendants Hospira, Inc., Hospira Worldwide, LLC, formerly doing business as Hospira Worldwide, Inc.*

## CERTIFICATE OF SERVICE

    I hereby certify that on April 30, 2021, I caused the foregoing document to be electronically filed with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Heidi K. Hubbard*