UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

MDL NO. 16-2740

*This document relates to:*
Clare Guilbault, Case No. 2:17-cv-1706

# HOSPIRA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BASED ON THE <u>LEARNED INTERMEDIARY DOCTRINE</u>

Plaintiff Clare Guilbault's action fails as a matter of law because there is no evidence that her prescribing physician, Dr. Chris Theodossiou, read Hospira's docetaxel label. As this Court has recognized, to show causation, Plaintiff must show "that a proper warning would have changed the decision of the treating physician, i.e. that but for the inadequate warning, the treating physician would not have used or prescribed the product." *In re Taxotere (Docetaxel) Prods. Liab. Litig.* ("*Stewart*"), 2021 WL 1534481, at *3 (E.D. La. Apr. 19, 2021) (citation omitted). Accordingly, "[w]hen a physician does not recall ever reading the label at issue, the learned intermediary doctrine requires summary judgment for the manufacturer." *Id.* (citing *Pustejovsky v. Pliva, Inc.*, 623 F. 3d 271, 277 (5th Cir. 2010); *see also id.* ("[T]he physician's lack of memory, of course, does not preclude the possibility that she had read these materials, but neither can it sustain the plaintiff's burden." (brackets omitted) (quoting *Pustejovsky*, 623 F.3d at 277)). Dr. Theodossiou testified that he "d[id] not recall" whether he reviewed the Hospira label before prescribing docetaxel to Plaintiff. SOF ¶ 12; Ex. 2 (Theodossiou Dep.) at 86:14-23. Moreover, he still has not read Hospira's updated label with information on permanent hair loss: *"I haven't read the specific, you know, package insert from Hospira."* SOF ¶ 15; Ex. 2 (Theodossiou Dep.) at 125:6-17 (emphasis added). Based on this testimony, Plaintiff cannot establish causation. A "proper

warning" on the Hospira label would not have changed Dr. Theodossiou's prescribing decision because he would not have read it. Thus, as in *Stewart*, the Court should grant summary judgment in favor of Defendants Hospira, Inc., and Hospira Worldwide, LLC, formerly doing business as Hospira Worldwide, Inc. ("Hospira") and dismiss Plaintiff's case.

## BACKGROUND

### A.  Plaintiff's Cancer Diagnosis and Treatment.

Following two abnormal mammograms in 2013, Plaintiff was diagnosed with stage III or IV breast cancer on the left side with positive lymph nodes and possible thoracic spine metastasis. SOF ¶ 2. Her treating oncologist, Dr. Theodossiou, prescribed a sequential chemotherapy regimen of four cycles of Adriamycin (doxorubicin) and Cytoxan (cyclophosphamide), followed by four cycles of docetaxel, over the course of five months between September 2013 and February 2014. SOF ¶¶ 3-5.

### B.  Dr. Theodossiou Did Not Read the Hospira Label.

The FDA approved Hospira's version of docetaxel in March 2011 under Section 505(b)(2) of the Federal Food, Drug, and Cosmetic Act, which permits follow-on medications to gain FDA approval through an abbreviated pathway based on the safety and efficacy data of the branded or reference drug. SOF ¶ 9. Hospira's docetaxel was based on Taxotere, the branded docetaxel product developed by Sanofi US Services Inc. and Sanofi-Aventis U.S. LLC., and approved by the FDA in 1996. *Id.*

Dr. Theodossiou did not specifically prescribe Hospira's docetaxel product for Plaintiff. Rather, Dr. Theodossiou explained that when he prescribes docetaxel, he does not prescribe a particular manufacturer's version of docetaxel and does not know which manufacturer's product will be administered to the patient. SOF ¶ 10; Ex. 2 (Theodossiou Dep.) at 87:6-12. Accordingly, when Dr. Theodossiou prescribed docetaxel to Plaintiff, he did not prescribe a specific company's

product and did not know which manufacturer's docetaxel Plaintiff received during her treatment. *Id.* ¶ 10; Ex. 2 (Theodossiou Dep.) at 86:24-87:5, 87:21-25.

Dr. Theodossiou testified that he likely reviewed the labeling for Taxotere, the branded product, before he first started prescribing it:

> Q. … But when you first started practicing medicine and Docetaxel became an option, did you review the prescribing information for Docetaxel before you prescribed it the first time?
>
> A. I'm sure I did.
>
> …
>
> Q. And you're aware that Taxotere is the brand name for Docetaxel; correct?
>
> A. Correct.
>
> Q. And at the time you prescribed Docetaxel to Ms. Guilbault in September of 2013, would you have reviewed at some point before then the labeling for Taxotere, the branded product?
>
> A. I probably had at some point.

SOF ¶ 11; Ex. 2 (Theodossiou Dep.) at 85:20-24; 86:6-13.

However, Dr. Theodossiou did not recall reading *Hospira's* docetaxel label:

> Q. Did you review the Hospira Docetaxel label before prescribing Docetaxel for Ms. Guilbault?
>
> A. I don't recall.
>
> MS. REYNOLDS: Objection to form.
>
> THE WITNESS: I can't answer that question.
>
> BY MR. ROTOLO:
>
> Q. So you don't recall whether you relied upon any information in the Hospira label before prescribing Docetaxel to Ms. Guilbault?
>
> A. No, sir, I do not recall.

SOF ¶ 12; Ex. 2 (Theodossiou Dep.) at 86:14-23 (emphasis added).

3

Even after Hospira updated its label in 2017 to include a statement that "[c]ases of permanent alopecia have been reported," Dr. Theodossiou has not read the Hospira label:

> Q. Doctor, are you familiar with what the current Docetaxel label states with regard to alopecia?
>
> A. *I haven't read it*.
>
> Q. Doctor, is the current language -- the current FDA-approved language in the Hospira Docetaxel label refers only to cases of permanent hair loss have been reported. Do you know if that's what it says?
>
> MS. REYNOLDS: Object to form.
>
> THE WITNESS: *I haven't read the specific, you know, package insert from Hospira*.

SOF ¶¶ 14-15; Ex. 2 (Theodossiou Dep.) at 125:6-17 (emphasis added).

After treating Plaintiff, Dr. Theodossiou stopped prescribing Taxotere/docetaxel, but that decision was not based on any information in Hospira's label. Rather, he testified that he changed his prescribing practices because a small number of his own patients experienced lack of hair regrowth after taking docetaxel. SOF ¶ 13; Ex. 2 (Theodossiou Dep.) 17:6-8; *id.* at 19:13-22.

    **C.    Plaintiff's Failure-to-Warn Claim.**

Plaintiff is asserting a single claim for failure to warn claim under the Louisiana Product Liability Act. SOF ¶ 16. She alleges that Hospira did not adequately warn of the risk of permanent alopecia, and she developed permanent alopecia because of this failure to warn. SOF ¶ 17.

## LEGAL STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "If

the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249–50 (citations omitted).

## ARGUMENT

Louisiana law applies the learned-intermediary doctrine to "claims of failure to warn involving drugs or medical devices dispensed by a physician." *Grenier v. Med. Eng'g Corp.*, 99 F. Supp. 2d 759, 765 (W.D. La. 2000), *aff'd*, 243 F.3d 200 (5th Cir. 2001). Under the learned-intermediary doctrine, the manufacturer of a prescription drug "has no duty to warn the patient, but need only warn the patient's physician." *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098 (5th Cir. 1991).

A plaintiff asserting a failure-to-warn claim under the learned intermediary doctrine must prove (1) "a manufacturer's failure to adequately warn the prescribing physician of a risk associated with the product that the physician did not otherwise know about," and (2) "that the failure to warn was the cause in fact and the proximate, or legal, cause of the plaintiff's injury." *Phillips v. Sanofi*, No. 20-30405, 2021 WL 1526429, at *3 (5th Cir. Apr. 19, 2021) (per curiam); *see Stewart*, 2021 WL 1534481 at *2-3. "Regarding the second prong, the law is well established that, to prove causation, 'the plaintiff must show that a proper warning would have changed the decision of the treating physician, i.e. that *but for* the inadequate warning, the treating physician would not have used or prescribed the product.'" *Stewart,* 2021 WL 1534481, at *3 & n. 21 (quoting *Willett v. Baxter Intern., Inc.*, 929 F.2d 1094, 1098 (5th Cir. 1991)).

In *Stewart*, this Court held, based on Fifth Circuit precedent, that "[w]hen a physician does not recall ever reading the label at issue, the learned intermediary doctrine requires summary judgment for the manufacturer." 2021 WL 1534481 at *3 (citing *Pustejovsky*, 623 F.3d at 277). As the Court explained, in *Pustejovsky* "the plaintiff's prescribing physician testified that she did not recall ever reading the package insert for the generic drug at issue." *Id.* The physician's "lack

of memory, of course, does not preclude the possibility that she had read these materials, but neither can it sustain the plaintiff's burden." *Id.* (quoting *Pustejovsky*, 623 F. 3d at 277) (brackets omitted). Accordingly, the Court concluded that "Plaintiff has failed to create an issue of fact on whether Dr. McCanless [the prescribing physician] would have reviewed the Sandoz label or learned of any update to it regarding permanent hair loss. Without evidence to establish this, Plaintiff cannot establish that a different warning from Sandoz would have changed Dr. McCanless's prescribing decision." 2021 WL 1534481 at *3.

*Stewart* and *Pustejovsky* are not alone in granting summary judgment on this basis. Rather, "most courts will find an absence of causation as a matter of law where the physician testifies that he or she never read the warnings given." *Bartlett v. Mut. Pharm. Co.*, 731 F. Supp. 2d 135, 146 (D.N.H. 2010) (quotation marks omitted) (quoting Louis R. Frumer & Melvin I. Friedman, *Products Liability* § 50.05[4], at 50-88 (2010)).[1] In *Hall v. Elkins Sinn, Inc.*, 102 F. App'x 846, 849-50 (5th Cir. 2004) (per curiam) (unpublished), for example, the Fifth Circuit explained that where the physician "acknowledge[d] that he never read the warning and that he was aware of the risks of the drug independently of [defendant's] labels," the defendant's "warning (adequate or inadequate) played no role in the events leading to [plaintiff's] injury." *Id.* As the court explained, "[e]ven if we assume, *arguendo*, that the warning was inadequate, plaintiffs would be unable to show that a proper warning would have changed [the physician's] decision to prescribe." *Id*.

This case is on all fours with *Stewart* and *Pustejovsky*. In *Pustejovsky*, the prescribing physician testified that she "did not recall ever reading the package insert for the generic drug at issue." 2021 WL 1534481 at *3 (citing *Pustejovsky,* 623 F.3d at 277). Similarly, in *Stewart* the

---

[1] *See also Defendant Sandoz Inc.'s Memorandum of Law in Support of its Motion for Summary Judgment, Stewart v. Sandoz* (ECF No. 11473-2) at 16 n.13 (citing additional cases).

6

prescribing physician was familiar with the Taxotere label, but not the Sandoz docetaxel label. *Id.* Likewise, the undisputed evidence confirms that Dr. Theodossiou does not recall reading the Hospira docetaxel label:

> Q. Did you review the Hospira Docetaxel label before prescribing Docetaxel for Ms. Guilbault?
>
> A. I don't recall.

SOF ¶ 12; Ex. 2 (Theodossiou Dep.) at 86:14-16. Although Dr. Theodossiou said he "probably had at some point" read "the labeling for *Taxotere*, the branded product," he did *not* recall reading the *Hospira* docetaxel label. SOF ¶¶ 11-12; Ex. 2 (Theodossiou Dep.) at 86:6-13 (emphasis added).

In addition, in *Stewart* the Court emphasized that "[a]t his deposition in 2019, Dr. McCanless still had seen nothing about the 2016 update to the Sandoz label." 2021 WL 1534481 at *4. The same is true here. It is undisputed that at Dr. Theodossiou's 2020 deposition, he was unfamiliar with the current Hospira docetaxel label and its warnings on permanent hair loss, testifying that "I have not read the specific, you know, package insert from Hospira." SOF ¶ 15 Ex. 2 (Theodossiou Dep.) at 125:6-17.

As a result, based on this undisputed evidence, Plaintiff cannot meet her burden of establishing causation. As in *Stewart*, "Plaintiff has failed to create an issue of fact on whether [Dr. Theodossiou] would have reviewed the Sandoz label or learned of any update to it regarding permanent hair loss. Without evidence to establish this, Plaintiff cannot establish that a different warning from [Hospira] would have changed [Dr. Theodossiou's] prescribing decision." 2021 WL 1534481 at *3. As a result, "the learned intermediary doctrine requires summary judgment." *Id.*

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of Hospira.

Date: April 30, 2021

Respectfully submitted,

*/s/ Heidi K. Hubbard*
Heidi K. Hubbard
Richmond T. Moore
Neelum J. Wadhwani
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
Phone: (202) 434-5000
Fax: (202) 434-5029
hhubbard@wc.com

John F. Olinde (Bar No.1515)
Peter J. Rotolo (Bar No. 21848)
**CHAFFE MCCALL LLP**
1100 Poydras Street
New Orleans, LA 70163
Phone: (504) 858-7000
Fax: (504) 585-7075
olinde@chaffe.com

*Counsel for Defendants Hospira, Inc., and Hospira Worldwide, LLC, formerly doing business as Hospira Worldwide, Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 30, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

      /s/ *Heidi K. Hubbard*