UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)   MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Elizabeth Kahn, Case No. 2:16-cv-17039.

### DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION

On April 21, 2021, the Fifth Circuit affirmed this Court's entry of summary judgment in *Francis, Johnson,* and *Thibodeaux* and, in so doing, provided a thorough analysis of the doctrine of *contra non valentem* as it applies to Louisiana plaintiffs in this MDL. *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, — F.3d —, 2021 WL 1560724 (5th Cir. Apr. 21, 2021). The Fifth Circuit held that "once hair loss persisted after six months, *contra non valentem* tolled the prescription period until the point when a prospective plaintiff through the exercise of reasonable diligence should have 'considered [Taxotere] as a potential root cause of' her injury." *Id.* at *6 (citing *Oil Ins. Ltd. v. Dow Chem. Co.*, 2007-0418 (La. App. 1 Cir. 11/2/07), 977 So. 2d 18, 23). The Fifth Circuit also determined that a reasonable inquiry *would have* discovered some of the information outlined in the Master Complaint linking Taxotere to Plaintiffs' injuries and that Plaintiffs should be charged with all of the information that a reasonable inquiry would have revealed. *Id.* at *6–7. Analysis of the undisputed facts in *Kahn* under the Fifth Circuit's decision confirms that Ms. Kahn's claims are likewise prescribed and should be dismissed.

In this case, this Court previously ruled that, although Ms. Kahn's claims were facially prescribed (a holding in accord with the Fifth Circuit's decision), a jury should decide whether Ms. Kahn performed a reasonable inquiry into the cause of her harm such that *contra non valentem*

tolled the prescription period. The Court's denial of Sanofi's Motion for Summary Judgment was based primarily on a pre-injury conversation Ms. Kahn had with her gynecologist. That decision should now be reconsidered based on the Fifth Circuit's recent ruling for the following reasons:

First, to be reasonable to the Fifth Circuit, Ms. Kahn needed to specifically inquire with a doctor (or investigate herself) whether *Taxotere* was the cause of her harm. Ms. Kahn did neither. Instead, she noted thinning hair loss to her doctors several times and once asked whether there was anything she could do to make her hair grow faster. But she never asked about the potential cause, and that is fatal to her claim. Ms. Kahn's conversation with her gynecologist is irrelevant under the Fifth Circuit's holding because it pre-dated her alleged injury. It also is irrelevant under this Court's recent ruling in *Hughes* in which the Court found a statement from Ms. Hughes' oncologist prior to beginning treatment did not bear on the reasonableness of Ms. Hughes' actions after her injury manifested.

Second, the Fifth Circuit made clear that Ms. Kahn is charged with all information a reasonable inquiry might uncover, that Ms. Kahn's claims were "reasonably knowable" to her during the prescriptive period, and that the discovery rule accordingly cannot apply. Ms. Kahn therefore cannot rely on *contra non valentem* to avoid prescription. Like Thibodeaux, Johnson, and Francis, Ms. Kahn should be charged with all of the information that a reasonable inquiry would have revealed, and this information—as outlined in the Master Complaint—was sufficient to commence the prescriptive period running years before Ms. Kahn filed her suit.

Because *contra non valentem* cannot apply under the Fifth Circuit's analysis to toll the prescriptive period on Ms. Kahn's claims, Sanofi requests reconsideration of this Court's order denying its motion for summary judgment.[1]

---

[1] Rec. Doc. 9295 (Defs.' Mot. for Summ. J. Based on the Statute of Limitations).

**BACKGROUND**

Ms. Kahn was diagnosed with breast cancer on April 11, 2008, at the age of 50.[2] She sought to treat the disease quickly and agreed to participate in NSABP B-40, the same experimental chemotherapy clinical trial in which Plaintiff Cynthia Thibodeaux enrolled.[3] The clinical trial involved Taxotere and four other anti-cancer drugs.[4] As the Fifth Circuit described, "[s]he agreed to participate in a clinical trial to evaluate how the combination of experimental drugs with docetaxel might improve the effectiveness of docetaxel alone. 'Hair loss' was listed as one of the most common side effects of medicines used in the study, without any indication of whether the loss was temporary or permanent. About side effects generally, participants were warned that "side effects may be very serious, long-lasting, or may never go away." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 2021 WL 1560724, at *2.

Ms. Kahn underwent her first round of chemotherapy, which included a combination of Taxotere, Xeloda, and Avastin, beginning May 29 and ending July 31, 2008.[5] She lost her hair in June 2008—something Ms. Kahn fully expected to occur.[6] Ms. Kahn testified that, when her hair fell out, she specifically attributed it to Taxotere and not to any of her other chemotherapies.[7] Despite this, Ms. Kahn believed her hair would grow back.[8]

---

[2] Rec. Doc. 9295-1 ¶ 2 (Defs.' Stmt. of Undisputed Facts in Support of Their Mot. for Summ. J. on Statute of Limitations).

[3] *Id.* ¶ 3.

[4] *See id.* ¶¶ 4, 7. The four other chemotherapy drugs in the clinical trial were capecitabine (Xeloda), doxorubicin (Adriamycin), cyclophosphamide (Cytoxan), gemcitabine (Gemzar), and bevacizumab (Avastin). *Id.*

[5] *Id.* ¶ 7.

[6] *Id.* ¶¶ 8, 10.

[7] *Id.* ¶ 11.

[8] *Id.* ¶¶ 10, 21.

Ms. Kahn next completed two cycles of Adriamycin and Cytoxan in combination with Avastin on August 21 and September 11, 2008.[9] She then received two additional cycles of Adriamycin and Cytoxan on October 2 and October 23, 2008, followed by ten cycles of Avastin, which she completed on July 16, 2009.[10] Ms. Kahn experienced hair regrowth after completing treatment but testified that her hair's thickness was not the same as it was before chemotherapy. She also testified that her eyebrows never grew back after chemotherapy, and she has drawn them on for more than a decade.[11]

On February 14, 2020, Sanofi filed a Motion For Summary Judgment Based on the Statute of Limitations contending that Ms. Kahn failed to investigate her claim within the prescriptive period and that *contra non valentem* did not apply because: (1) Ms. Kahn had actual knowledge of the risk of permanent side effects, including hair loss, before starting chemotherapy in 2008; and (2) Ms. Kahn's testimony established that she had actual or constructive knowledge of a causal relationship between her injury and Taxotere—but she made no inquiry into her potential claims.[12] In response, Ms. Kahn argued that the prescriptive period was tolled because either (1) Sanofi prevented her from availing herself of her cause of action; or (2) her cause of action was not known or reasonably knowable to her until she learned of this litigation.

On April 7, 2020, this Court denied Sanofi's Motion, addressing Ms. Kahn's second argument only. This Court agreed that Ms. Kahn's claims were facially prescribed, but it held that Ms. Kahn's alleged conversation with her gynecologist, Dr. Margaret Roberie, on April 6, 2009,

---

[9] *Id.* ¶ 12.

[10] *Id.* ¶¶ 12–13. This Court previously held that Ms. Kahn's injury was sustained six months after October 23, 2008, instead of six months after July 16, 2009. Rec. Doc. 9885 at 6 n.17. Sanofi continues to contest the Court's interpretation but utilizes it here solely for purposes of reconsideration.

[11] *Id.* ¶¶ 22–23.

[12] Rec. Doc. 9295-2 at 6–8.

4

created a genuine issue of material fact on whether *contra non valentem* tolled prescription for Ms. Kahn.  Specifically, Ms. Kahn testified that she asked Dr. Roberie about "hair balding," and Dr. Roberie told her that "as you age, your hair gets thinner."[13]  Ms. Kahn testified that she "was 50 at the time, and most 50-year-old's hair do not thin.  You know 80, maybe, but not 50. So when she told me that, I was a little taken aback, but – so I dropped it."[14]  The Court, relying upon *Hoerner v. Wesley-Jensen*, 95-0553 (La. App. 4 Cir. 11/20/96), 684 So. 2d 508, reasoned that Ms. Kahn "may have had reason to believe that something other than Defendants' conduct caused her injury" based on Dr. Roberie's April 6, 2009 comment.[15]

On April 14, 2020, Sanofi moved for reconsideration of this Court's Order.[16]  Sanofi reiterated Ms. Kahn's statement that she "dropped" the issue with Dr. Roberie and also highlighted key testimony in which Ms. Kahn admitted that, because Dr. Roberie responded to Ms. Kahn's question about "hair balding" with a statement about the potential cause of "hair thinning," Ms. Kahn did not rely on Dr. Roberie's statements, thus rendering *Hoerner* distinguishable.  Sanofi also sought reconsideration because Ms. Kahn's conversation with Dr. Roberie on April 6, 2009 occurred before Ms. Kahn's injury accrued on April 23, 2009.[17]  The Court denied Sanofi's motion to reconsider, explaining that a jury should decide how to interpret Ms. Kahn's statement that she "dropped" the issue with Dr. Roberie because she did not believe most women her age experienced thinning hair.

---

[13] Rec. Doc. 9885 at 7.

[14] *Id.* at 7–8.

[15] *Id.* at 6–8.

[16] Rec. Doc. 9946.

[17] Rec. Doc. 12532 (Order and Reasons Granting Accord's Mot. for Summ. J. on Prescription Grounds).

Since that ruling, the Fifth Circuit affirmed summary judgment on prescription grounds in *Francis*, *Johnson*, and *Thibodeaux*, and this Court dismissed *Hughes* as prescribed under Louisiana law.[18] Sanofi now moves for reconsideration of this Court's summary judgment ruling in *Kahn* based on the Fifth Circuit's reasoning, as well as this Court's holding in *Hughes*.

## **LEGAL STANDARD**

The Court's Order denying Sanofi's motion for summary judgment is interlocutory. Interlocutory orders "are not within the provisions of [Rule] 60(b), but are left within the plenary power of the court that rendered them to afford such relief from them as justice requires." *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014) (quoting *Zimzores v. Veterans Admin.*, 778 F.2d 264, 266 (5th Cir. 1985)). This Court may revise its interlocutory orders "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Id.* (citing Fed. R. Civ. P. 54(b)). "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994)).

This power is "committed to the discretion of the district court, and that discretion is not cabined by the heightened standards for reconsideration governing final orders." *Id.* at 337 (quoting *Saint Annes Dev. Co. v. Trabich*, 443 F. App'x 829, 832 (4th Cir. 2011) (internal quotations omitted)). This relaxed standard serves a useful purpose. If the district court determines circumstances have changed or it has erred, "it would be a waste of judicial resources to force it to

---

[18] Rec. Doc. 12532.

perpetuate such error through a trial on the remaining issues, even though it believed the ultimate judgment would have to be reversed on appeal." *Zimzores*, 778 F.2d at 266; *see also Washington v. Fieldwood Energy LLC*, 2018 WL 263230, at *5 (E.D. La. Jan. 2, 2018) (Milazzo, J.) (granting motion to reconsider summary judgment ruling). Here, the Fifth Circuit's decision clarifying *contra non valentem* warrants the Court's exercise of its authority to reconsider its order denying Sanofi's motion for summary judgment.

## ARGUMENT

### I. Under the Fifth Circuit's Ruling, Ms. Kahn Did Not Reasonably Investigate Her Claim.

In affirming the dismissals of *Francis*, *Johnson*, and *Thibodeaux*, the Fifth Circuit reiterated that *contra non valentem* applies only in "exceptional circumstances." 2021 WL 1560724 at *4. It further held that plaintiffs are "'responsible [for] seek[ing] out those whom [they] believe[] may be responsible for a specific injury.'" *Id.* at *5 (citing *Neyrey v. Lebrun*, 309 So. 2d 722, 724 (La. App. 4th Cir. 1975)). Specific to cases in this MDL, the Fifth Circuit ruled that hair loss persisting more than six months after chemotherapy "should have caused an inquiry within a reasonable time" after the injury was sustained. *Id*. at *6. It also held that prescription could only be tolled "until the point when a prospective plaintiff through the exercise of reasonable diligence should have 'considered [Taxotere] as a potential root cause of' her injury." *Id.* at *6 (quoting *Oil Ins. Ltd.*, 977 So. 2d at 23). Under the Fifth Circuit's holding, no reasonable juror could find that Ms. Kahn reasonably investigated her injury before the prescription period ran.

Ms. Kahn undisputedly failed to investigate *Taxotere* or any other chemotherapy as a cause of her injury. Each of the plaintiffs in *Francis*, *Johnson*, and *Thibodeaux* "attributed her initial hair loss to her chemotherapy treatment." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 2021 WL 1560724 at *7. The Fifth Circuit "consider[ed] the standard of 'knew or should have known,'

7

to mean they ***needed to investigate Taxotere as a potential cause***." *Id.* at *6 (quoting *Oil Ins. Ltd.*, 977 So. 2d at 22 (emphasis added)).  The Fifth Circuit further explained that a reasonable inquiry under the circumstances likely would include a plaintiff talking to her doctors about the cause of her injury and searching for herself.  *Id.*  With no evidence that the plaintiffs ever investigated Taxotere as a cause of their harm, the Fifth Circuit determined that plaintiffs Francis, Johnson, and Thibodeaux "did not act reasonably in light of their injuries[.]"  *Id.* at *7.  The Fifth Circuit's reasoning applies equally here.

Like plaintiffs Francis, Johnson and Thibodeaux, Ms. Kahn testified that she attributed her initial hair loss to chemotherapy and ***specifically*** attributed it to Taxotere:

> Q.  Okay.  So when you lost your hair, you were taking Taxotere, Avastin, and Xeloda.
>
> A.  Correct. …
>
> Q.  When you lost your hair – at the time you lost your hair, what did you attribute it to?
>
> A.  The chemotherapy drugs that I was taking.
>
> Q.  Any specific chemotherapy drug?
>
> A.   Well, I knew that one of the side effects of Taxotere was temporary hair loss.
>
> Q.  And did you think it could have been due to the Xeloda or to the Avastin, or did you specifically attribute it to the Taxotere?
>
> A.  To the Taxotere.[19]

Despite this testimony, Ms. Kahn never asked any of her doctors if Taxotere caused her persistent hair loss.  While Ms. Kahn testified that she discussed her hair loss with three doctors, and inquired what she could do to make it regrow, Ms. Kahn never asked any doctor whether

---

[19] Rec. Doc. 9295-4 at 228:17–229:10.

Taxotere or any other chemotherapy was the cause.[20] Nor did Ms. Kahn conduct any independent inquiry to determine the cause of her injury.[21] Ms. Kahn's failure to investigate Taxotere is particularly unreasonable considering she believed Taxotere specifically caused her initial hair loss, and she participated in a clinical trial and the consent form told her that side effects—such as hair loss—could be permanent.[22] Ms. Kahn "needed to investigate Taxotere as a potential cause" of her alleged injury, but she failed to do so. *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 2021 WL 1560724 at *6. On this record, *contra non valentem* does not apply. *Id.*

In ruling that a jury needed to decide if Ms. Kahn reasonably investigated her claim, this Court relied on Ms. Kahn's testimony that, on April 6, 2009, she asked her gynecologist, Dr. Roberie, about "balding."[23] Importantly, Ms. Kahn never asked Dr. Roberie whether *Taxotere* or any other chemotherapy was the cause of her alleged injury.[24] Equally important, this conversation occurred before Ms. Kahn's alleged injury manifested as a matter of law. The Fifth Circuit clarified that a plaintiff has a duty to investigate "within a reasonable time []***after***" her injury is sustained at six months following chemotherapy. *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 2021 WL 1560724 at *6 (emphasis added). This Court, too, recently held in *Hughes* that a statement from Ms. Hughes' oncologist prior to treatment beginning did "not bear on the reasonableness of Plaintiff's actions *after* suffering her injury."[25] Ms. Kahn had her annual gynecological exam before she sustained her injury on April 23, 2009.[26] Any pre-injury discussion

---

[20] Rec. Doc. 9295-1 ¶¶ 25–26; Rec. Doc. 9481 at 6–7.

[21] Rec. Doc. 9295-1 ¶ 27.

[22] *Id.* ¶ 4.

[23] Rec. Doc. 9885 at 7–8.

[24] Rec. Doc. 9481 at 6–8.

[25] Rec. Doc. 12532 at 6.

[26] Rec. Doc. 9295-1 ¶ 15; *see also* Rec. Doc. 9295-16 (Ochsner Health System 1257–1258). In her opposition to Sanofi's motion, Ms. Kahn attempts to blur the timing of this interaction with Dr. Roberie to make it appear *after* her

9

had with Dr. Roberie, therefore, is irrelevant under recent rulings and cannot serve as the basis for *contra non valentem*.[27] 2021 WL 1560724 at *6; Rec. Doc. 12532 at 6.[28]

Under the Fifth Circuit's ruling, the prescriptive period was not tolled because Ms. Kahn did not reasonably investigate Taxotere (or any other chemotherapy) as a potential cause of her injury. *See In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 2021 WL 1560724, at *5 (citing *Neyrey*, 309 So. 2d at 724).

## II. Under the Fifth Circuit's Ruling, Ms. Kahn's Claim Was Reasonably Knowable Before the Prescriptive Period Ran.

The Fifth Circuit further clarified that, when assessing whether the discovery rule tolled the prescriptive period, "[a]ctual knowledge is not required; constructive notice suffices," finding:

> Whatever is notice enough to excite attention and put the [plaintiff] on his guard and call for inquiry is tantamount to knowledge or notice of every[ ]thing to which inquiry may lead[,] and such information or knowledge as ought to reasonably put the [plaintiff] on inquiry is sufficient to start the running of prescription.

*Id.* at *4 (quoting *Cartwright v. Chrysler Corp.*, 232 So. 2d 285, 287 (La. 1970)). Based on information regarding Taxotere highlighted in the Master Complaint, the Fifth Circuit determined that the plaintiffs' causes of action were "'reasonably knowable in excess of one year prior to [their] filing' suit." *Id.* at *7 (citing *Fontenot v. ABC Ins. Co.*, 95-1707 (La. 6/7/96), 674 So. 2d 960, 965). The same holds true here.

---

injury manifested. *See* Rec. Doc. 9418 at 3–4 ("In April of 2009—six months after completing chemotherapy treatment with Taxotere—Ms. Kahn inquired with her gynecologist Dr. Roberie, about the lack of hair regrowth"). Her medical records prove otherwise. Rec. Doc. 9295-16.

[27] Even if it were relevant, Ms. Kahn testified that she "dropped" the issue after Dr. Roberie answered her question about "balding" with a statement about hair "thinning": "She didn't explain hair balding. … She didn't answer my question." *See* Rec. Doc. 10398 at 1-2. Thus, Ms. Kahn did not rely on Dr. Roberie's statements.

[28] Similarly, the Fifth Circuit found that testimony from Thibodeaux, Francis, and Johnson's treating oncologists failed to create a genuine issue of material fact about whether inquiry would be futile. Ms. Kahn was treated by the same doctors, in the same clinical trial, as Thibodeaux; and the deposition testimony cited by the Fifth Circuit was the testimony noticed and taken in both cases in the same setting.

Ms. Kahn specifically attributed her hair loss to Taxotere and accordingly was on "notice" to inquire about the cause of her injury. Under the Fifth Circuit's ruling, Ms. Kahn is charged with "knowledge or notice of every[ ]thing" she might have discovered had she appropriately inquired. *Id*. at *7. The Fifth Circuit recognized that the "master complaint helps us determine what a reasonable inquiry would have uncovered. [Plaintiffs] are charged with whatever information that is." *Id.* (citing *Cartwright*, 232 So. 2d at 287). Because the Master Complaint detailed information regarding Taxotere available to MDL plaintiffs as early as 2006, the Fifth Circuit held that "a reasonable inquiry would have uncovered at least some information that linked Taxotere to persistent alopecia . . . and [the Plaintiffs should be] charged with knowledge of all that a reasonable inquiry would have revealed."[29] *Id.* at *7.[30] This Court reached the same conclusion in *Hughes*.[31] That reasoning applies equally to Ms. Kahn, requiring a finding that Ms. Kahn had constructive notice of the alleged cause of her injury during the prescriptive period. Because Ms. Kahn's claim was "reasonably knowable" before prescription ran, the discovery rule does not apply. The Court therefore should grant Sanofi's Motion to Reconsider and enter summary judgment in Sanofi's favor.

## **CONCLUSION**

For all of these reasons, Sanofi requests that this Court reconsider its April 7, 2020 Order denying Sanofi's motion for summary judgment on Ms. Kahn's claims and find that Ms. Kahn's claims are prescribed under the Fifth Circuit's recent ruling in *Francis*, *Johnson*, and *Thibodeaux*.

---

[29] Ms. Thibodeaux sustained her injury at the end of 2009, eight months after Ms. Kahn sustained her injury.

[30] Recognizing that Louisiana law requires reasonableness to be assessed "in light of [the plaintiff's] education [and] intelligence," the Fifth Circuit held that "medical literature linking Taxotere to permanent hair loss is relevant insofar as Appellants' reasonable inquiry would have uncovered it." *Id.* at *7. Notably, here, Ms. Kahn is a Masters-educated Plaintiff, who followed-up routinely with her doctors and raised questions and concerns about her hair loss. *See* Rec. Doc. 9295-1 ¶¶ 18–27; *see also* Rec. Doc. 9556-2.

[31] Rec. Doc. 12532 at 8.

11

Respectfully submitted,

| | |
|---|---|
| */s/ Douglas J. Moore* | Harley V. Ratliff |
| Douglas J. Moore (Bar No. 27706) | Jon Strongman |
| **IRWIN FRITCHIE URQUHART & MOORE LLC** | Adrienne L. Byard |
| 400 Poydras Street, Suite 2700 | **SHOOK, HARDY & BACON L.L.P.** |
| New Orleans, LA 70130 | 2555 Grand Boulevard |
| Telephone: 504-310-2100 | Kansas City, Missouri 64108 |
| Facsimile: 504-310-2120 | Telephone: 816-474-6550 |
| dmoore@irwinllc.com | Facsimile: 816-421-5547 |
| | hratliff@shb.com |
| | jstrongman@shb.com |
| | abyard@shb.com |

*Counsel for Sanofi Defendants Sanofi US Services Inc. and sanofi-aventis U.S. LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

*/s/ Douglas J. Moore*