UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)           MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

         SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Elizabeth Kahn, Case No. 2:16-cv-17039.

### DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION ON WARNINGS CAUSATION

The Court should reconsider its previous ruling because, after the Fifth Circuit's decision in *Phillips*, the dispositive question for warnings causation in Louisiana is whether the treating physician would have changed his prescribing decision if the *physician* had received a different warning. *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 994 F.3d 704 (5th Cir. 2021). In so ruling, the Fifth Circuit declined to apply a chemotherapy-specific warnings causation framework previously applied by this Court to Ms. Kahn's case. Now, to survive summary judgment under the Fifth Circuit's framework, a plaintiff must identify testimony to show her physician would not have prescribed the drug because of the different warning, rather than a plaintiff's own retrospective testimony about how a different, hypothetical, patient-counseling conversation would have proceeded. Ms. Kahn has no such evidence. Here, it is undisputed that Dr. Kardinal would have prescribed Taxotere to Ms. Kahn even when presented with a warning about the risk of permanent hair loss.

To distinguish *Phillips*, Ms. Kahn asserts that "she has put forth evidence of an equally efficacious treatment that her prescribing physician *considered* adequate to treat her breast cancer."[1] The availability of a potential alternative treatment, however, does not address the

---

[1] Rec. Doc. 12584 at 5 (Pl.'s Opp. to Defs.' Mot. for Reconsideration on Warnings Causation) (emphasis added).

evidentiary gap in Ms. Kahn's case. As the Court is aware, Dr. Kardinal has never testified that he would have changed his decision to prescribe Taxotere to Ms. Kahn (in light of the alleged risk of permanent hair loss) in favor of another chemotherapy regimen, such as Taxol (in light of Taxol's associated risks). *Id.* at 710. And, under *Phillips,* the Fifth Circuit does not permit Ms. Kahn's own post-treatment deposition testimony to bridge the gap. *Id.* Because Ms. Kahn has not identified a genuine issue of material fact on warnings causation, Sanofi respectfully requests this Court reconsider and grant Sanofi's motion for summary judgment.

I. **The Fifth Circuit's Decision in *Phillips* Warrants Reconsideration of This Court's Decision in *Kahn*.**

Rule 54(b) permits a trial court to reconsider and reverse a decision "even in the absence of [a] . . . clarification of the substantive law." *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (citation omitted). Reconsideration is appropriate because the Fifth Circuit's decision in *Phillips* clarifies the warnings causation standard in Louisiana. Although Ms. Kahn dismisses the Fifth Circuit's holdings as dicta, the Circuit does not read its own published opinions so narrowly. "A statement is not dictum if it is necessary to the result or constitutes an explication of the governing rules of law." *United States v. Segura*, 747 F.3d 323, 328 (5th Cir. 2014) (quoting *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004)). Such is the case here.

In *Phillips*, the Fifth Circuit considered and declined to apply the chemotherapy-specific warnings standard advocated by the plaintiff and applied by this Court.[2] In doing so, the Fifth Circuit clarified that, "to the extent that patient choice is relevant, that relevance is cabined to helping us decide . . . whether [the doctor's] prescribing decision would have been different had *he* known that Taxotere's associated risk of alopecia was potentially permanent rather than

---

[2]   *See, e.g.*, **Ex. R**, Brief of Appellant at 21–22, *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, No. 20-30405 (5th Cir. Oct. 23, 2020).

2

temporary." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 994 F.3d 704, 709 & n.4 (5th Cir. 2021). *Phillips* sets out the rules governing Ms. Kahn's case—warnings causation under Louisiana law—and, as binding interpretations of Louisiana law, require application on reconsideration.

**II.     Ms. Kahn Has Failed To Identify a Genuine Issue of Material Fact on Warnings Causation Because Dr. Kardinal's Prescribing Decision Would Not Have Changed.**

**A.     Ms. Kahn has not controverted Dr. Kardinal's unequivocal prescribing testimony.**

For Ms. Kahn, Dr. Kardinal testified that a warning of potential permanent hair loss would not have changed his decision to prescribe Taxotere:

> Q. . . . If the Taxotere label . . . had said, "In most cases, normal hair growth should return. In some cases, frequency not known, permanent hair loss has been observed," would that change your recommendation that Miss Kahn participate in NSABP B-40?
>
> A. No.[3]

As in *Phillips*, presenting Dr. Kardinal with the "specific type of alopecia" in the Taxotere label had no effect on his prescribing decision, "and this supports the conclusion that Sanofi's alleged failure-to-warn could not have been the cause of [Ms. Kahn's] injury." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 994 F.3d at 709. Ms. Kahn has not rebutted Dr. Kardinal's dispositive testimony and therefore cannot establish warnings causation. *Id.*; *see also Eschete ex rel. Eschete v. Roy*, 554 F. Supp. 2d 628, 634 (E.D. La. 2008) (granting summary judgment on warnings causation where physician testified different warning would not change prescribing decision).

Although Ms. Kahn asserts that she might have received a Taxol-based regimen in 2008, a different regimen is not relevant without additional testimony from Dr. Kardinal after *Phillips*. Stated differently, the mere existence of alternative chemotherapy regimens that Ms. Kahn *might*

---

[3]   Rec. Doc. 9300-9 at 15 (Ex. G to Defs.' Mem. of Law in Supp. of Their Mot. for Summ. J. on Warnings Causation).

3

*have received* cannot replace what Dr. Kardinal *would have prescribed*. *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 994 F.3d at 710. And it is Ms. Kahn's burden to identify record evidence to support the latter on summary judgment. *Id.*

As the Opposition notes, the treating physician in *Phillips* testified he would not have prescribed an Anthracycline-based regimen, which carried a risk of cardio toxicity, because of Ms. Phillips's age and pre-existing heart conditions. *Id.* The Fifth Circuit, however, went further, finding Ms. Phillips might have received other non-Taxotere regimens without the risk of cardio toxicity. *Id.* These regimens, however, did not preclude summary judgment because Ms. Phillips failed to identify "any testimony from [her physician] that . . . a warning of potentially permanent hair loss—as opposed to temporary hair loss—would have led [her physician] to prescribe [non-Taxotere regimens] instead of TCH." *Id.*

Ms. Kahn's case is no different.

Here, Ms. Kahn identifies a Taxol-based regimen as an alternative adjuvant treatment for breast cancer generally. None of Dr. Kardinal's testimony on alternative regimens, however, is specific to Ms. Kahn's diagnosis or medical history. *Cf. id.* at 709 (considering treating physician's prescribing decision in context of Ms. Phillips's "aggressive cancer"). Instead, Ms. Kahn's counsel only asked Dr. Kardinal whether certain regimens fell within the standard of care to treat adjuvant breast cancer.[4] Standing alone, such testimony is not sufficient to create a genuine issue of material fact after *Phillips*. It is undisputed that Dr. Kardinal's preferred taxane generally was Taxotere because Taxol carries the risk of additional serious side effects, including neuropathy and severe infusion reactions.[5] Although Dr. Kardinal testified that a Taxol-based regimen was

---

[4]   Rec. Doc. 12584 at 5 (citing Jan. 17, 2018 Kardinal Dep. 145:17–146:12).

[5]   Rec. Doc. 9300-1 ¶¶ 41, 45 (Defs.' Statement of Undisputed Facts in Supp. of Their Mot. for Summ. J. on Warnings Causation).

adequate *in terms of efficacy*, he responded "**No**" when asked if similar efficacy meant he would "potentially prescribe Taxol to that patient."[6] Dr. Kardinal has never testified that he would have prescribed a Taxol-based regimen to Ms. Kahn (in light of Taxol's known risk profile) over Taxotere if he had received a warning about the risk of permanent hair loss.

While Ms. Kahn emphasizes Dr. Kardinal's testimony that the alleged risk of permanent hair loss "would be something that would have to be included in the discussion," she noticeably omits from her Opposition the second half of Dr. Kardinal's answer where he stated that, despite the alleged risk, he "may perhaps still recommend the use of [Taxotere]."[7] Nowhere in Dr. Kardinal's transcript does he ever testify that he would have prescribed a different chemotherapy regimen for Ms. Kahn. As a result, Ms. Kahn cannot establish warnings causation.

    **B.**    **Ms. Kahn's actions at the time of treatment do not create a genuine issue of material fact on Dr. Kardinal's ultimate prescribing decision.**

The relevance of "patient choice"—to the extent it is relevant—"is cabined" to whether a patient's concerns about hair loss or her appearance would have caused the treating *physician* to change his prescribing decision had "*he* known that Taxotere's associated risk of alopecia was potentially permanent rather than temporary." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 994 F.3d at 709. Dr. Kardinal has already testified that a different warning would not have changed

---

[6]   *Id.* ¶ 46 (emphasis added).

[7]   Rec. Doc. 12584 at 5 n.11 (citing Jan. 17, 2018 Kardinal Dep. 142:11–12). The full question and answer appear as follows:

> Q. And would that change what you discuss with your patient concerning that drug?
>
> A. It would be something that would have to be included in the discussion.
>
> Q. Okay.
>
> A. I may -- may perhaps still recommend the use of the drug.

Rec. Doc. 12584-1 at 10 (citing Jan. 17, 2018 Kardinal Dep. 142:8–15 (objection omitted)).

5

his decision to prescribe Taxotere to Ms. Kahn in 2008. Ms. Kahn's actions at the time of treatment confirm that Dr. Kardinal's prescribing decision would not have changed because Ms. Kahn never investigated or asked about alternatives after being warned of the risk of "hair loss."

Ms. Kahn's two arguments to the contrary are unpersuasive.

First, Ms. Kahn asserts she was unaware of any risk of abnormal hair regrowth because she reviewed and signed a clinical trial informed consent that listed hair loss as "a side effect that the form identifies as temporary[.]"[8] This is incorrect. The consent form does not identify "hair loss" as temporary or qualify the risk of hair loss in any way, a point Ms. Kahn has previously conceded.[9] Ms. Kahn, however, did not investigate or ask about alternatives that might avoid the risk of "hair loss." *Id.* at 710.

Second, Ms. Kahn asserts she would have chosen a non-Taxotere treatment had she been aware of the risk. Again, this is incorrect. The testimony cited by Ms. Kahn does not state that Ms. Kahn would have chosen a non-Taxotere treatment if she had been aware of a risk of permanent hair loss, let alone chosen the hypothetical Taxol-based regimen that Dr. Kardinal never presented.[10] Instead, at the time of treatment, Ms. Kahn testified that she trusted Dr. Kardinal's recommendation and consented to the randomized clinical trial (where she would receive Taxotere) because she believed it gave her the best chance of survival.[11]

On these points, *Phillips* controls Ms. Kahn's case. Although Ms. Phillips provided post-treatment testimony that her "appearance [was] unmistakably important to her," the Fifth Circuit identified no investigation by Ms. Phillips into alternative regimens that might avoid the risk of

---

[8]  Rec. Doc. 12584 at 6.

[9]  Rec. Doc. 9300-1 ¶¶ 30, 33.

[10]  Rec. Doc. 12584 at 6 (citing Dec. 7, 2017 Kahn Dep. 301:11–305:13, 338:8–20).

[11]  Rec. Doc. 9300-1 ¶ 31.

6

abnormal hair regrowth or hair loss. *Id.* Ms. Phillips's physician, in turn, only presented a Taxotere-containing regimen, which Ms. Phillips consented to because she "put her faith" in her physician. *Id.* Likewise, although Ms. Kahn provided post-treatment testimony that she did not want to be reminded of her cancer after treatment, Ms. Kahn made no investigation into alternative regimens to avoid the unqualified risk of "hair loss." There is no testimony that Dr. Kardinal offered Ms. Kahn any options beyond the clinical trial, which Ms. Kahn accepted because she believed it gave her the best chance of survival.[12]

In sum, no evidence supports Ms. Kahn's claim that she might have steered the conversation such that Dr. Kardinal would have removed Ms. Kahn from the clinical trial and prescribed her with anything other than a Taxotere-based regimen.

## CONCLUSION

For these reasons, the Court should grant this Motion for Reconsideration and enter summary judgment in Sanofi's favor.

Respectfully submitted,
/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART &
MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

---

[12] *Id.* ¶ 31. This Court also recently dismissed the claims of bellwether Plaintiff Emma Willie on warnings causation. Rec. Doc. 12491 (Order and Reasons Granting Defs.' Mot. for Summ. J. on Warnings Causation). This Court "emphasize[d] that Dr. Patil did not offer Plaintiff any other options; Plaintiff would have had to refuse the TC before another option even entered the conversation." *Id.* at 8 n.31. Like Ms. Willie, Ms. Kahn would have had to refuse the clinical trial (as well as Dr. Kardinal's preference for Taxotere over Taxol outside of the clinical trial) before another option entered the conversation.

        Harley V. Ratliff
        Jon Strongman
        Adrienne L. Byard
        **SHOOK, HARDY& BACON L.L.P.**
        2555 Grand Boulevard
        Kansas City, Missouri 64108
        Telephone: 816-474-6550
        Facsimile: 816-421-5547
        hratliff@shb.com
        jstrongman@shb.com
        abyard@shb.com

        *Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

                                                    /s/ *Douglas J. Moore*