# EXHIBIT R

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

---

20-30405

IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION
--------------------------------------------------------
JUNE PHILLIPS

Plaintiff - Appellant
v.

SANOFI U.S. SERVICES, INCORPORATED, formerly known as Sanofi-Aventis
U.S., Incorporated; SANOFI-AVENTIS, U.S., L.L.C.,
Defendants - Appellees

---

On Appeal from the United States District Court
for the Eastern District of Louisiana
MDL NO. 2740,
Case Nos. 2:16-cv-15397

---

BRIEF OF APPELLANT

---

/s/Dawn M. Barrios
Dawn M. Barrios
BARRIOS, KINGSDORF &
CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com
*Co-Liaison Counsel for MDL*
*Plaintiffs/Appellants*

/s/Matthew Palmer Lambert
Matthew Palmer Lambert
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com
*Co-Liaison Counsel for MDL*
*Plaintiffs/Appellants*

*/s/Betsy J. Barnes*
Betsy J. Barnes
John Christian Enochs
MORRIS BART, L.L.C.
601 Poydras Street, 24th Floor
New Orleans, LA 70130
Phone: 504-525-8000
Fax: 504-599-3392
bbarnes@morrisbart.com
jenochs@morrisbart.com
*Counsel for Plaintiff/Appellant*
*June Phillips*

ii

# I.   CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certify that the following listed persons and entities described in the fourth sentence of Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Appellants:**

June Phillips (No. 20-30405)

**Attorneys for Appellants:**

Matthew Palmer Lambert
Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
1100 Poydras Street, Energy Centre, Suite 2800
New Orleans, LA 70163

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, L.L.P.
1 Shell Square, 701 Poydras Street, Suite 3650
New Orleans, LA 70139

Betsy J. Barnes
John Christian Enochs
Morris Bart, L.L.C.
601 Poydras Street, 24th Floor
New Orleans, LA 70130

Emily C. Jeffcott
Morgan & Morgan
220 West Garden Street, 9th Floor
Pensacola, Florida 32501

Plaintiff Steering Committee for MDL No. 2740

Plaintiff Co-Lead Counsel for MDL No. 2740

**Defendants/Appellees:**

Sanofi-Aventis U.S. LLC

Sanofi U.S. Services Inc.

**Attorneys for Defendants/Appellees:**

Ilana H. Eisenstein
Rachel A.H. Horton
DLA Piper LLP (US)
1650 Market St., Suite 5000
Philadelphia, PA 19103
(215) 656-3300

Harley V. Ratliff
Shook Hardy & Bacon L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
(816) 474-6550

Respectfully submitted,

*s/ Betsy J. Barnes*
Betsy Barnes
John Christian Enochs
Morris Bart, L.L.C.
601 Poydras Street, 24th Floor
New Orleans, LA 70130
Counsel Plaintiffs/Appellants

## II.    <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellants respectfully suggest that this Honorable Court would benefit from hearing counsel explain certain details that may shed further light upon the evidence relevant to the issue at bar. Tone, inflection, and other information gleaned from having heard the witnesses testify are lost in the cold record, and some further elucidation beyond that contained in the written briefs would benefit the Court in these proceedings. Plaintiff seeks reversal of the district court's dismissal of Appellant's claims based upon the application of the facts in this case to the law, and it is an understanding of the nuances in the facts of this matter that oral argument would be beneficial.

# III.    TABLE OF CONTENTS

I.      CERTIFICATE OF INTERESTED PERSONS ............................................. iii

II.     STATEMENT REGARDING ORAL ARGUMENT ................................... v

III.    TABLE OF CONTENTS ................................................................. vi

IV.     TABLE OF AUTHORITIES ........................................................... viii

V.      JURISDICTIONAL STATEMENT ................................................. 1

    A.    District Court's Jurisdiction ........................................... 1

    B.    Court of Appeal's Jurisdiction ......................................... 2

    C.    Timeliness of Appeal ...................................................... 2

    D.    Final Judgment .............................................................. 2

VI.     STATEMENT OF ISSUES ............................................................. 3

VII.    STATEMENT OF THE CASE ....................................................... 3

    A.    Taxotere and Permanent Hair Loss .................................. 3

    A.    The Formation of the Taxotere MDL ............................... 6

    B.    Appellant June Phillips .................................................. 7

    C.    Procedural Background .................................................. 8

VIII.   SUMMARY OF THE ARGUMENT ............................................... 8

IX.     STANDARD OF REVIEW ............................................................. 9

X.      ARGUMENT ............................................................................. 12

    The Record Shows That Appellant's Prescribing Physician
    Would Not Have Prescribed Taxotere Due to Appellant's Conerns
    About Permanent Hair Loss ............................................. 14

       1.     NCCN Guidelines are Not Required..........................................15

       2.     Changing to a Preferred Regimen is not Required...................19

XI.   CONCLUSION AND PRAYER FOR RELIEF ...........................................23

XII.  CERTIFICATE OF SERVICE.....................................................................25

XIII. CERTIFICATE OF COMPLIANCE WITH RULE 32(A).........................27

# IV.   TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)............................................11

*Boudreaux v. Sanders*, No. CIV.A.02-3515, 2003 WL 21983219 (E.D. La. Aug. 18, 2003) .......................................................................................................11

*Brownell Land Co. v. Oxy USA Inc.*, No. CIV.A.05-225, 2007 WL 3138638 (E.D. La. Oct. 17, 2007) ...............................................................................................11

*McCarthy v. Danek Med., Inc., 65 F. Supp. 2d 410, 413 (E.D. La. 1999)*.............12

*Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 268 (5th Cir. 2002))......................12

*Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870 (5th Cir. 2002)......11

**Statutes**

28 U.S.C. § 1332(a) ...................................................................................................1

29 U.S.C. § 1291 .......................................................................................................2

# V.    JURISDICTIONAL STATEMENT

## A.    District Court's Jurisdiction

The district court had subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), which grants the district courts original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between (1) citizens of different States."

Appellant Phillips is a citizen of the United States and a resident of the State of Louisiana. Appellee Sanofi US Services Inc. is a Delaware corporation with a principal place of business in New Jersey. Appellee Sanofi-Aventis U.S. LLC is a Delaware limited liability corporation with a principal place of business in New Jersey.

Appellant received treatment for early stage breast cancer with Taxotere, a drug manufactured and marketed in the United States by Appellees. As a result of her treatments with Taxotere, Appellant suffered permanent hair loss, an unwanted and unwarned of side effect of the drug.  As required by Louisiana law, Appellant filed her claim within one year of learning of the causative relationship between her permanent hair loss and Taxotere. Accordingly, Appellant is entitled to relief  as a result of Appellees' failure to warn Appellant of the possibility of permanent hair loss with Taxotere.

1

**B.    Court of Appeal's Jurisdiction**

This Honorable Court has jurisdiction over this appeal pursuant to 29 U.S.C. § 1291, because the judgment below is a final judgment of the United States District Court.

**C.    Timeliness of Appeal**

The district court entered a final judgment dismissing all claims of June Phillips on May 27, 2020.   Appellant Phillips timely filed her Notice of Appeal on June 26, 2020, which pursuant to Federal Rule of Appellate Procedure 4(a)(4)(A), became effective on the date of the order disposing of all the Appellant's claims in their entirety.

**D.    Final Judgment**

This appeal is from a final judgment that disposes of all parties' claims.

# VI.   STATEMENT OF ISSUES

(1)   Whether the district court committed reversible error by finding that there are no genuine issues of material fact as to whether Appellant's treating oncologist would have prescribed Taxotere to Appellant despite this physician's explicit testimony to the contrary that he would have prescribed an alternative treatment to Appellant if he had known that Taxotere could cause permanent alopecia?

(2)   Whether the district court committed reversible error by finding that there are no genuine issues of material fact regarding which chemotherapy regimen Appellant would have taken based upon the district court's determination as to which treatment was most efficacious to Appellant, an inherently fact-based determination for the jury to weigh after hearing testimony of physicians regarding the risks and benefits of each drug and their respective importance to the individual patient?

# VII.   STATEMENT OF THE CASE

## A.   Taxotere and Permanent Hair Loss

Taxotere (docetaxel) is a chemotherapy drug developed by Appellees, Sanofi US Services Inc. and Sanofi-Aventis U.S. LLC, their affiliates, and

predecessors-in-interest (collectively "Sanofi").[1] Used primarily to treat patients with breast cancer,[2] Taxotere is administered to patients through injections or intravenously (and most often with other chemotherapy agents) at a physician's office or medical treatment facility.[3] As with many chemotherapy agents, *temporary* alopecia (hair loss) is an expected and common side effect of Taxotere.[4] Physicians generally tell their patients that their hair will regrow but that it may look different, such as different color, shape, or texture.[5]

Appellees knew of the causal relationship between Taxotere and permanent hair loss for more than a decade before electing to update the Taxotere label in December 2015. For example, in the pivotal clinical trial (referred to as "TAX 316") used by Appellees to support approval of Taxotere for the treatment of adjuvant breast cancer (early stage), subjects on Taxotere reported an increased incidence of permanent hair loss compared to subjects who received treatment without Taxotere.[6] In 2005, a different Sanofi clinical trial (referred to as "GEICAM 9805") confirmed

---

[1] ROA.20-30405.936 at ¶ 120.

[2] ROA.20-30405.915 at ¶ 4.

[3] ROA.20-30405.936 at ¶ 119.

[4] ROA.20-30405.949 at ¶ 173;.

[5] ROA.20-30405.1517-1518.

[6] ROA.20-30405.1123 at ¶ 164.

that subjects receiving Taxotere had a higher incidence of permanent hair loss than those who received treatment without Taxotere.[7]

As usage of Taxotere increased, published reports of permanent[8] hair loss associated with Taxotere appeared in the medical literature.   In 2006, an abstract of a study not sponsored by Appellees was published and presented at the San Antonio Breast Cancer Symposium with the conclusion "that when docetaxel is administered after 4 doses of [adriamycin and cyclophosphamide], there is a small but significant possibility of poor hair regrowth lasting up to 7 years. Such an emotionally devastating long-term toxicity from this combination must be taken into account when deciding on adjuvant chemotherapy programs in women who likely will be cured of their breast cancer."[9]

The labeling for Taxotere approved by the European Medicines Agency in 2005 acknowledged that "[c]ases of persisting alopecia have been reported." It also stated in a tabulated list of adverse reactions in breast cancer that took into account node-positive breast cancer (from a study entitled TAX 316) and node-negative

---

[7] *Id.*

[8] "Permanent" hair loss is also referred to as "persisting," or "irreversible" hair loss in the medical literature, *see, e.g.,* ROA.20-30405.942-951 at ¶¶ 148-170,

[9] ROA.20-30405.942 at ¶ 149; ROA.20-30405.951 at ¶ 183.

breast cancer (from GEICAM 9805) that alopecia is a "[v]ery common adverse reaction," with persisting alopecia occurring under three percent of the time. [10]

Despite Appellees' early awareness of permanent alopecia resulting from the use of Taxotere, Appellees did not update the Taxotere label to include this information until more than a decade later on December 11, 2015. Under "Patient Counseling to add permanent hair loss as an adverse event of Taxotere. Information," the new text reads: "Explain to patients that side effects such as … hair loss (cases of permanent hair loss have been reported) are associated with docetaxel administration." Additionally, under "Patient Information," the updated label states that the "most common side effects of TAXOTERE include: … hair loss: in most cases normal hair growth should return. In some cases (frequency not known) permanent hair loss has been observed."[11] Scores of women, including Appellee, were administered Taxotere and sustained permanent hair loss without having had the benefit of the information that Appellants had the entire time regarding this disfiguring side effect.

### A.   The Formation of the Taxotere MDL

---

[10] ROA.20-30405.1123 at ¶ 164.

[11] ROA.20-30405.948.

6

On October 4, 2016, the Judicial Panel of Multidistrict Litigation consolidated a number of cases filed by women who suffered permanent hair loss after receiving treatment with Taxotere for early stage breast cancer.[12] These cases were transferred to the Honorable Judge Kurt Engelhardt prior to his appointment to this Honorable Court.[13] Appellants' cases are all member cases of this MDL.

After Judge Jane Triche Milazzo was assigned as the transferee judge to oversee the Taxotere MDL, Appellees filed motions for summary judgment based on warnings causation against Appellant June Phillips.

### B.    Appellant June Phillips

Appellant Phillips underwent her normal screening mammogram in 2013, and was diagnosed with an abnormality, very suspicious for breast cancer.  That discovery ultimately led to surgery and resection of her breast cancer, in which she had the cancer removed via lumpectomy on October 9, 2013.[14] After surgery, she was referred to an oncologist, Dr. Scott Sonnier, for consultation and a discussion of her possible treatment with adjuvant chemotherapy.  Considering the various factors of her cancer including the size, stage, nodal expression, hormone receptivity, and others, Dr. Sonnier recommended a chemotherapy regime that included Taxotere,

---

[12] ROA.20-30405.865

[13] ROA.20-30405.866

[14] ROA.20-30405.1379

7

Carboplatin, and Herceptin ("TCH").  A TCH regimen is a referred regimen under NCCN[15] guidelines for those with risk factors for cardiac toxicity, such as those above the age of 65.  Ms. Phillips was 75 at the time of her chemotherapy.  Notably, the NCCN guidelines, while one resource relied upon by physicians, are not mandatory.[16]

When Ms. Phillips sought cancer treatment in 2013, several alternative chemotherapy regimens were available to her. *Id.* at 35:21-37:14. Dr. Sonnier proposed treatment with Taxotere, Carboplatin and Herceptin. *Id.* at 35:1-20. He then had a discussion with Ms. Phillips about hair loss and Taxotere use in which he indicated that after receiving Taxotere, Appellant's her would likely fall out but  was expected to grow back. Since the warning for Taxotere at that time did not include any mention of a risk of permanent alopecia, Ms. Phillips was unable to either accept or reject the risk.

### Procedural Background

Appellees filed a motion for summary judgment against Appellant June Phillips on February 14, 2020, based on the assertion that she could not establish the

---

[15] National Comprehensive Cancer Network

[16] Dr. Sonnier testified that "it's not the Bible" and he does not have to use them in every case. (cite)

essential elements on causation. [17]   After reviewing all pleadings and hearing oral arguments on March 11, 2020, the district court granted Appellees' motion for summary judgment on Appellant's failure to warn and negligence claims,[18] leaving Appellant's fraud claims pending.[19]   Appellant filed her notice of appeal on February 13, 2020.

## VIII. <u>SUMMARY OF THE ARGUMENT</u>

Disputed material facts precluded the grant of summary judgment by the district court in favor of Appellees, and this record clearly establishes that summary judgment on the issue of lack of causation was improper. The evidence is undisputed that the Taxotere warning label at the time the drug was administered to Appellant did not include the risk of permanent hair loss.  Accordingly, appellant's oncologist was not warned of the risk of permanent hair loss at the time he prescribed Taxotere to Appellant in 2013, and Appellant testified that had the risk of permanent hair loss

---

[17] ROA.20-30405.1256

[18] The district court held that "Defendants have demonstrated that even with an adequate warning from Sanofi, Plaintiff and Doctor Sonnier would have decided on a Taxotere Regime to treat her cancer." ROA.20-30405.1564-1571.  The record does not support this conclusion as there are clearly issues of fact as to whether Appellant would have chosen an alternative chemotherapy regimen based upon the relative efficacies of each one and the reported risks associated with each alternative.

[19] ROA.20-30405.1572

been disclosed to her, she would have refused to take Taxotere. [20] Appellant's oncologist testified that had Appellant chosen not to take Taxotere, he would have abided by her wishes, not given Taxotere, and instead would have prescribed an alternative non-Taxotere chemotherapy regime.

Appellees assert that Appellant could not have received any other regime but Taxotere, an assertion flatly refuted by the testimony of Appellant's treating oncologist. One alternative regime included the drug Adriamycin, which carried risks of cardiac toxicity. Appellees incorrectly assert that the Adriamycin regime TAC[21] was the only *viable* alternative to the TCH[22] regime that Appellant received. As both regimes contain Taxotere, Appellees incorrectly posit that Dr. Sonnier could not have avoided giving Appellant Taxotere. Appellees assert that Appellant cannot prove the causation element of her claims based upon the erroneous assertion that all of the options available to Appellant included Taxotere, which, the record establishes, was not the case. The district court's reasoning on this point is demonstrably wrong for two reasons. First, the record reveals that TAC was not the only alternative chemotherapy regime available to Appellant in 2013, even given her age and health condition. Non-Adriamycin chemotherapy regime options were also

---

[20] ROA.20-30405.1526.

[21] Taxotere, Adriamycin, and Cyclophosphamide.

[22] Taxotere, Carboplatin, and Herceptin.

available and acceptable alternatives to the use of Taxotere. Second, and of crucial import, Dr. Sonnier testified that, had he known then what he knows now, and had Appellant rejected Taxotere and its risk of permanent alopecia, he would have prescribed a non-Taxotere[23], non-Adriamycin chemotherapy regime. [24]

      The record in this case establishes that there were alternative treatment options available to Appellant that did not include Taxotere. The record further establishes that if the risks of permanent hair loss about which Appellees knew but of which they failed to warn had been disclosed to Appellant's treating oncologist, this would have resulted in a decision by Appellant's physician not to prescribe Taxotere. The varying efficacies of the treatment alternatives that were then available to Appellant underscores that there are genuine issues of material fact regarding the risks and benefits of each alternative that would have informed Appellant's decision. The district court effectively decided which regimen the Appellant would have chosen based upon the district court's weighing of the various risks and benefits of each. But the very personal nature of such a decision only emphases that the district court should not have substituted its conclusions regarding the efficacy of the available

---

[23] ROA.20-30405.1488.

[24] ROA.20-30405.1498.

options with the Appellant's own decision-making process, about which a jury should be entitled to consider.

The record is undisputed that Appellees failed to warn of the risk of permanent alopecia associated with Taxotere and that, had this information been made available to Appellant's oncologist as it should have been, this would have produced an informed decision by the Appellant not to use Taxotere. There are genuine issues of material fact regarding the issue of causation that precluded summary judgment in favor of Appellees.

## IX.   <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "[A]ll the evidence and factual inferences are viewed in a light most favorable to the non-moving party, resolving all reasonable doubts accordingly." *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002).

"[T]he summary judgment procedure is insufficient to resolve the issue of prescription when the question cannot be resolved on the face of the pleadings or other undisputed facts, but instead requires a fact-based inquiry." *Boudreaux v.*

*Sanders*, No. CIV.A.02-3515, 2003 WL 21983219, at *2 (E.D. La. Aug. 18, 2003). This is because "a motion for summary judgement is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge, or good faith." *Brownell Land Co. v. Oxy USA Inc.*, No. CIV.A.05-225, 2007 WL 3138638, at *3 (E.D. La. Oct. 17, 2007); *Anderson*, 477 U.S. at 255 ( "Credibility determinations, the weighing of the evidence, and drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

## X.   ARGUMENT

In products liability claims involving prescription drugs, Louisiana applies the learned-intermediary doctrine, which permits a drug manufacturer to discharge its duty to warn consumers by adequately warning physicians.   "The premise underlying a failure-to-warn claim in the learned intermediary context is that the patient is claiming that the manufacturer failed to adequately warn the treating physician." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 268 (5th Cir. 2002).  Thus, "[t]he obligation to the consumer is fulfilled when the prescribing or treating physician is informed of any potential side effects or risks from the drug's use so that they may intelligently decide on its use and *advise the patient*." *Id*. at 267 (emphasis added) (quoting *McCarthy v. Danek Med., Inc.*, 65 F. Supp. 2d 410, 413 (E.D. La. 1999).

Under the learned intermediary doctrine, to maintain a failure-to-warn claim, the plaintiff must show two things at trial:

> First, the plaintiff must show that the defendant failed to warn (or inadequately warned) the physician of a risk associated with the product that was not otherwise known to the physician.
>
> Second, the plaintiff must show that this failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury. *Id.* at 265-66.

Appellees' summary judgment argued that Plaintiff could not make either showing. The District Court's Order and Reasons dismissing Appellant's case did not hold that Appellant failed to prove a genuine issue of material fact as to the first prong: that Appellees/Defendants failed to warn Dr. Sonnier of the risks of Taxotere.[25] This is not surprising, as the Taxotere warning label did not warn of the risk of permanent alopecia in 2013 when Ms. Phillips received a chemotherapy regime that included Taxotere. It is undisputed that the warning label was not changed until December of 2015.[26]

Moreover, Dr. Sonnier could not confirm that he ever discussed a risk of permanent hair loss with Ms. Phillips.[27] Prior to the December 2015 label change,

---

[25] ROA.20-30405.1564-1571

[26] ROA.20-30405.948.

[27] Appellant Ms. Phillips testified that Dr. Sonnier never warned her about the risk of permanent hair loss, and that had she been warned about this risk of permanent hair loss with Taxotere, she

Dr. Sonnier would advise his patients receiving Taxotere that the hair loss would be temporary. [28] Dr. Sonnier's practice in 2013 was to inform patients that they would lose their hair but that it would potentially come back with *different qualities*. *Id.* at. ROA.20-30405.1518.    Dr. Sonnier testified that once he learned about the December 2015 warning label update, he changed his patient counseling practices to advise patients of the risk of permanent hair loss with Taxotere. [29]

That first prong aside, the District Court did, however, adopt Appellee's argument on the second prong: that there was insufficient evidence to show that the prescribing physician, Dr. Sonnier, would have changed his prescribing behavior and not used the product.  This determination was manifestly incorrect.

### A.    The Record Establishes That Appellant's Prescribing Physician Would Not Have Prescribed Taxotere Due to Appellant's Concerns About Permanent Hair Loss.

The district court's dismissal of Appellant's case was based upon an entirely incorrect reading of the factual record.  One of the principal errors results from the district court's finding that "there were no adequate alternative options for Plaintiff

---

would have changed her decision to have Taxotere as part of her chemotherapy regimen. ROA.20-30405.1525.

[28] ROA.20-30405.1358, p.32:25-33:10.

[29] ROA.20-30405.1518-1519.

Phillips, who had an aggressive cancer." [30]  Dr. Sonnier's testimony does not support

this conclusion.   In fact, there were several viable options available to Appellant,

and, had Dr. Sonnier been advised of the risks of permanent alopecia associated with

Taxotere, he would have prescribed one of these alternatives in consultation with his

patient.  The absence of other options is found nowhere in  Dr. Sonnier's deposition.

In fact, exactly the opposite is true.[31]   While the lack of viable alternatives to

Taxotere is not supported by the record, the insistence that this was the case was

thematic in defense counsel's presentation to the district court during oral argument.

This argument went well beyond the recitation of Dr. Sonnier's testimony in the

record to arguing unsupported medical opinions and conclusions well beyond the

scope of a summary proceedings.    For example, the district court was instructed

"you cannot give Taxol in a Herceptin-containing regimen without an

anthracycline," a conclusion that finds no support in the testimony of Dr. Sonnier.

Likewise, counsel posited,  "But for HER2-positive disease, [Appellant is] required

to be on the right side, and that is [she is] required to take a medicine called

Herceptin, the generic name is Trastuzumab…."[32]   None of these medical

conclusions find support in the record, and it was error for the district court to rely

---

[30] ROA.20-30405.1568.

[31] Adriamycin discussions aside.

[32] ROA.20-30405.1618

on such conclusions in granting summary judgment in this case.[33]   The assertion
that there were no alternative chemotherapy options available to Appellant has no
support in the record.   Dr. Sonnier testified that there were good alternatives
available and that, had he known what he knows now about Taxotere, he would have
prescribed one of these alternatives after consulting with his patient.

### 1)  NCCN Guidelines Are Not Mandatory.

Without question, the NCCN Guidelines are a very helpful guide to assist
physicians in determining the appropriate standard of care in the treatment of
patients with cancer.   That said, following the guidelines is not "required," nor does
the NCCN Guideline in effect in 2013 support the Trial Court's conclusion that no
other chemotherapy regimens were available to June Phillips, thereby precluding her
ability to prove causation.     Dr. Sonnier's testimony is fully consistent with the
NCCN Guideline that Herceptin/ trastuzumab is appropriate in cases like
Appellant's with an HER2-positive tumor.     Appellant does not dispute  that
Adriamycin has certain cardiac toxicity properties and is not favored in patients over
the age of 65.[34]  Likewise, Appellant does not dispute that any of the regimes listed
on the NCCN Guidelines containing Adriamycin are not the regimens typically

---

[33] NCCN Guidelines are "recommendations", not requirements.  Physicians may follow the
guidelines, but they are not required to forfeit their decision making.  *See*, 20.30405.1419.

[34] Appellant was 75 at the time of her chemotherapy and had some heart concerns.

favored by Dr. Sonnier.    But the suggestion that certain anthracycline regimens may not be the most favored does not negate the fact that there were viable alternative chemotherapy options available to Appellant consistent with NCCN Guidelines and which Dr. Sonnier would have prescribed if he had been given the benefit of the information about permanent hair loss that Appellees had at the time.

Accepting as true the fact that Herceptin/trastuzumab would have been prescribed for Appellant's HER2-positive tumor, the NCCN Guideline lists "Other Regimes" which include the option "Chemotherapy followed by Trastuzumab sequentially."[35]    Stated otherwise, any acceptable chemotherapy prescribed by the Physician plus Trastuzumab is an acceptable alternative regimen consistent with the Guidelines.    This takes into account the vast discretion that oncologists have in finding the best match for the patient's wishes, the medical presentation at issue, and the physician's good judgment.    The district court incorrectly determined that the Guidelines were a mandatory when the record very clearly indicates otherwise. Contrary to the district court's determination that "Dr. Sonnier testified that he followed the NCCN guidelines," Dr. Sonnier testified that he based his decision making as to which chemotherapy regimen to prescribe to a particular patient on

---

[35] ROA.20-30405.1621.

18

"clinical trials, and standards of care, and guidelines."[36]  Dr. Sonnier explained, "NCCN guidelines, it's a good set of guidelines to follow, but it's not the Bible in terms of having to use those every case in medical care."[37]

Appellant's case was improperly dismissed, because the district court adjudicated a genuine factual issue and found that the TCH regimen given to Appellant in 2013 was the only option that she could have received, and no other drug would have been prescribed by Dr. Sonnier. The district court's conclusion assumed that the only other options available to Ms. Phillips were the disfavored anthracycline/Adriamycin regimens.  In contrast, the record  confirms that non-Adriamycin chemotherapy regime options were available and acceptable Taxotere alternatives for Appellant.  In this regard, Dr. Sonnier testified that, had he known then what he knows now, after a patient-doctor discussion of choices, including Adriamycin's cardiac toxicity risks, he would have prescribed a "non-Adriamycin" chemotherapy regime to Appellant.[38]  There is nothing in the record refuting the treating Oncologist's sworn testimony that he would have changed his prescribing choice.  The district court's determination to the contrary was erroneous.

---

[36] ROA.20-30405.1484.

[37] ROA.20-30405.1355

[38] ROA.20-30405.1520

While the district court was told in oral argument that no other acceptable chemotherapy choices are listed in the NCCN Guidelines, the NCCN Guidelines actually confirm that "FEC/CEF (cyclophosphamide/epirubicin/fluorouracil)" is an accepted other regimen.[39] Likewise, "CMF (cyclophosphamide/methotrexate/fluorouracil)" is also an accepted other regimen. "Chemotherapy followed by trastuzumab sequentially" is an accepted option as well.[40] Appellant suggests that Appellee's board-certified oncologist, who provided sworn testimony that he would have prescribed a non-Adriamycin therapy, should be not taken at his word as an expert witness. The credibility of Dr. Sonnier's opinion (that a non-anthracycline chemotherapy regimen is an acceptable course of treatment in this case) when no opposing medical expert opinion was submitted establishes that there were genuine issue of material fact precluding summary judgment. In this regard, "credibility determinations, the weighing of the evidence, and drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson,* 477 U.S. at 255.

---

[39] ROA.20-30405.1419. See where the FinHer trial included FEC therapy with 1010 women participating.

[40] All of these are chemotherapy regimens. Any one individual drug from a regimen is still chemotherapy. If any chemotherapy was administered followed by trastuzumab, the NCCN Guideline would be met to the letter.

## 2) Changing to A Preferred Regimen Is Not Required

The district court erred and effectively created new law by requiring a prescribing physician to choose a preferred alternative drug choice as an additional element in the Fifth Circuit's *Stahl* two prong test. The district court incorrectly concluded that Dr. Sonnier testified that there were no adequate alternative options for Plaintiff Phillips, who had an aggressive cancer.[41] But this was not the case. While certainly, Ms. Phillips' node positive, HER2-positive stage 2 cancer was concerning, the record establishes that Dr. Sonnier would have changed the chemotherapy treatment that Ms. Phillips received had he been given complete information by Appellees after consulting with his patient. Whether this decision was optimal/reasonable for Ms. Phillips is for the jury, not the district court, to decide. To this end, and despite its decision, the district court recognized that, "...the chemotherapy decision-making process is unique. The Court must consider not only whether an oncologist would have warned his or her patient of the risk of permanent alopecia but also how patient choice then would have steered the conversation and the ultimate prescribing decision."

In this case, Appellant is an elegant, well-dressed former flight attendant whose appearance is unmistakably important to her. For many women who have

---

[41] ROA.20-30405.1568.

endured the physical ravages that breast cancer unleashes, often including the surgical disfigurement of a bilateral or total mastectomy, being fully informed of the possibility of permanent hair loss is unquestionably essential.   It is ultimately up to the patient, in consultation with her physician, to weigh the efficacies of treatments that are available to her, which should include full disclosure and appropriate consideration of the risks of permanent disfigurement, such as hair loss, in consultation with her doctor.  In rendering summary judgment in favor of Appellees, the district court effectively decided what Appellant would or should have done given the options that were then available to her had Dr. Sonnier been in possession of the information that Appellees had regarding permanent hair loss from Taxotere.

Appellant was asked in her deposition to agree that she cannot know if she would be alive if she had not taken the TCH regimen that was given to her.  She replied: "I would be alive today. Believe me, I would.  When I went to the surgeon, the first words out of his mouth were you're not going to die from this. The surgeon saved my life.  Not your drug." [42]   Taxotere was given to Appellant as a precautionary/preventative measure to incrementally decrease her chances of recurrence.  Certainly, if Ms. Phillips had known about the risk of permanent hair loss from Taxotere, she would have considered the efficacy to her of this precaution.

---

[42] ROA.20-30405.1529.

Dr. Sonnier's testimony supports this. Specifically, Dr. Sonnier testified, "Adjuvant is adjunctive therapy to improve somebody's risk of disease-free survival or living without recurrence, in addition to surgery, which is the main treatment used to eliminate the cancer. " [43]

The issue is not whether Ms. Phillips and her oncologist picked the regimen that had the best survival percentages. The issue is whether the two prong factors in *Stahl* were met. The record establishes that the maker of Taxotere did not warn physicians of the risk of permanent hair loss known by Appellee from use of their product, so that the physicians could not have a consultation with their patients and fully advise them of the risks of chemotherapy with Taxotere. As the record reflects, the Taxotere warning label was not changed until two years after Appellant's use of Taxotere to include the risk of permanent hair loss. [44]

The record is this matter is absolutely clear that had Dr. Sonnier known of Taxotere's permanent hair loss side effect in 2013, he would have chosen not to have prescribed the drug after consulting with Ms. Phillips. Dr. Sonnier confirmed that he would have avoided the use of an Adriamycin-based chemotherapy regimen, and instead chosen one of the several alternative chemotherapy options that were

---

[43] ROA.20-30405.1503.

[44] ROA.20-30405.948.

23

available. Dr. Sonnier testified that there are non-anthracycline regimens he would have employed. This is clearly stated on page 98 of Dr. Sonnier's deposition, after all parties' counsel had fully explored all of the issues of risks, toxicities, side effects, cancer stages, and the fine points of HER2-positive lymph nodes. The testimony of Appellant's prescribing physician that he would have changed the treatment regimen creates a genuine issues of material fact that precluded summary judgment in this case.

## I.    CONCLUSION AND PRAYER FOR RELIEF

Disputed material facts preclude summary judgment, and the record in this case clearly establishes that summary judgment on the issue of causation was improper, because there are material disputed questions of fact.    First, Appellant has introduced evidence of the lack of a sufficient warning of the risk of permanent hair loss in 2013 when she was prescribed a Taxotere containing chemotherapy regimen for her breast cancer.    Dr. Sonnier, her oncologist, testified that he learned of Taxotere's permanent alopecia side effects upon hearing of the Taxotere label warning change in December of 2015.    Second, Dr. Sonnier testified that had Appellant requested a regimen containing Adriamycin, the patient desiring not to take Taxotere with its risks of permanent hair loss, he would have prescribed a non-Taxotere option, one that did not contain Adriamycin.    The district court incorrectly determined that there we no viable alternative treatment options available to

Appellant in rendering summary judgment in this case. Dr. Sonnier testified that non-Taxotere options were available to Appellant, and Appellant testified that she would have chosen one of them.

Based upon the foregoing, Appellant respectfully submits that the record contains evidence sufficient to preclude summary judgment on warnings causation. Appellant respectfully requests that this Honorable Court reverse the granting of summary judgment and remand her case for further proceedings and trial.

Respectfully submitted,

*/s/Betsy J. Barnes*
Betsy J. Barnes
MORRIS BART, L.L.C.
601 Poydras Street, 24th Floor
New Orleans, LA 70130
Phone: 504-525-8000
Fax: 504-599-3392
bbarnes@morrisbart.com
*Counsel for Plaintiff/Appellant*
*June Phillips*

## II. CERTIFICATE OF SERVICE

I, Betsy Barnes, hereby certify that on October 23, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court of Appeals for the Fifth Circuit using the CM/ECF system and to be served on all counsel of record:

Ilana H. Eisenstein
Rachel A.H. Horton
DLA Piper LLP (US)
1650 Market St., Suite 5000

Philadelphia, PA 19103
(215) 656-3300

Harley V. Ratliff
Shook Hardy & Bacon L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
(816) 474-6550

*s/ Betsy J. Barnes*
Betsy J. Barnes

## III.   <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(A)</u>

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements.

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[x] this brief contains 6,031 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ] this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[x] this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in Times New Roman font, or

[ ] this brief has been prepared in a monospaced typeface using _____ with _____.

*/s/Betsy J. Barnes*
Betsy J. Barnes
MORRIS BART, L.L.C.
601 Poydras Street, 24th Floor
New Orleans, LA 70130
Phone: 504-525-8000
Fax: 504-599-3392
bbarnes@morrisbart.com
*Counsel for Plaintiff/Appellant June Phillips*