UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 16-2740<br><br>*This document relates to:*<br>Clare Guilbault, Case No. 2:16-cv-17061 |

**HOSPIRA'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT BASED ON THE LEARNED INTERMEDIARY DOCTRINE**

Plaintiff's failure-to-warn claim fails because there is no evidence that her prescribing physician, Dr. Theodossiou, ever reviewed Hospira's labeling. As a result, Plaintiff cannot show causation because any additional warnings from Hospira on the risk of permanent hair loss would have been futile. Plaintiff's Opposition seeks to avoid this straightforward conclusion through a series of misguided arguments that have no basis in the facts or law. The Court should reject these arguments and grant summary judgment.

**I.      Plaintiff Misrepresents Dr. Theodossiou's Testimony.**

The Opposition misconstrues the testimony of Ms. Guilbault's prescriber, Dr. Theodossiou, to argue that a reasonable factfinder could determine he reviewed Hospira's docetaxel labeling prior to prescribing the medicine to Ms. Guilbault. The Opposition's attempt to rewrite Dr. Theodossiou's deposition, however, cannot be squared with his actual testimony.

**A.      There is No Evidence Dr. Theodossiou Read the Hospira Docetaxel Label.**

Plaintiff argues that Dr. Theodossiou's process "[t]ypically" includes "reviewing the FDA-approved labeling for [a] drug" he prescribes. *See* Pl.'s Mem. Opp. Hospira's Mot. Summ. J. ("Opp.") at 3, ECF No. 12586 (quoting Ex. A (Theodossiou Dep.) at 44:22-45:15). But Dr. Theodossiou clarified that general statement by explaining his review process for the Taxotere and Hospira labeling *specifically*. With respect to these labels, he testified that he had reviewed the Taxotere labeling when it first became available, but did *not* recall reviewing the Hospira docetaxel labeling. Plaintiff's Opposition mischaracterizes Dr. Theodossiou's testimony by quoting certain snippets out of context, but the full exchange removes any doubt about this point:

Q: But when you first started practicing medicine and Docetaxel became an option, did you review the prescribing information for Docetaxel before you prescribed it the first time?

A. I'm sure I did.

Q. And that would have been reviewing the prescribing information that's contained on the FDA approved label?

A. You can pull up the label from different online links. So I typically, you know, pull up the link and read on it.

Q. And you're aware that Taxotere is the brand name for Docetaxel; correct?

A. Correct.

Q. And at the time you prescribed Docetaxel to Ms. Guilbault in September of 2013, would you have reviewed at some point before then the labeling for Taxotere, the branded product?

A. I probably had at some point.

Q. Did you review the Hospira Docetaxel label before prescribing Docetaxel for Ms. Guilbault?

A. I don't recall.

\*   \*   \*

Q. So you don't recall whether you relied upon any information in the Hospira label before prescribing Docetaxel to Ms. Guilbault?

A. No, sir, I do not recall.

Q. Did you prescribe Hospira's Docetaxel as the Docetaxel product that you wanted Ms. Guilbault to receive?

A. I prescribed Docetaxel, and it's up to the pharmacy to determine where they're going to procure it for them. I don't prescribe a specific company's product.

Q. So, if I'm hearing you right, when you prescribe Docetaxel, you don't know which manufacturer's product will be administered to the patient?

A. Correct. The chemotherapy order that I write says Docetaxel, but I have no idea where the Docetaxel is coming from.

Ex. 2 (Theodossiou Dep.) at 85:20-87:12 (objection omitted).

Thus, Dr. Theodossiou explicitly distinguished his review of the Taxotere label from the Hospira docetaxel label. "[W]hen [Dr. Theodossiou] first started practicing medicine and Docetaxel became an option," the only version of docetaxel available was Sanofi's Taxotere. Hospira's Statement of Undisputed Material Facts ("SOF") ¶ 9, ECF No. 12538-2.[1] Dr. Theodossiou testified that he is "sure [he] did" review the Taxotere labeling at that time. Ex. 2 (Theodossiou Dep.) at 85:20-24. He was then asked separately whether he had reviewed the Taxotere and Hospira labels before prescribing docetaxel to Ms. Guilbault. He answered "probably" for Taxotere and "I don't recall" for the Hospira docetaxel label. *Id.* at 86:9-23. As this Court has recognized, this testimony requires summary judgment. *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 2021 WL 1534481 ("*Stewart*"), at *4 (E.D. La. Apr. 19, 2021) (ECF No. 12494) ("[W]hen a physician does not recall ever reading the label at issue, the learned intermediary doctrine requires summary judgment for the manufacturer."); *see also id.* ("[T]he physician's lack of memory, of course, does not preclude the possibility that she had read these materials, but neither can it sustain the plaintiff's burden.") (brackets omitted) (quoting *Pustejovsky v. Pliva, Inc.*, 623 F. 3d 271, 277 (5th Cir. 2010)).

Further, Plaintiff's argument that Dr. Theodossiou "was never asked whether he reviewed Hospira-specific information (aside from whether he recalls reviewing it in connection with Ms. Guilbault's treatment)" is inaccurate. *See* Opp. at 1, 4, 13. Dr. Theodossiou testified that he did not recall reading the Hospira label "before" his prescription to Ms. Guilbault. Before means before and includes any time before his September 2013 prescription, not just the minutes, hours, or days leading up to his consultation with Ms. Guilbault. Moreover, whether he had read the labeling before his prescription to Ms. Guilbault is precisely the right question because if he did not read the labeling before the prescription, then any labeling change from Hospira would have been futile. Dr. Theodossiou hammered this point home by agreeing that he did not recall

---

[1] Dr. Theodossiou started practicing medicine in 1995. Opp., Ex. A (Theodossiou Dep.) at 30:11-14. Sanofi's Taxotere was approved in 1996, and Hospira's version became available in 2011—15 years later. SOF ¶ 9.

3

"*rel[ying]*" on "any information in the Hospira label before prescribing Docetaxel to Ms. Guilbault." *Id.* at 86:20-23 (emphasis added). Thus, Plaintiff's attempt to cabin Dr. Theodossiou's testimony to the information he considered only "in relation to Ms. Guilbault's treatment," Opp. at 13, does not accurately portray Dr. Theodossiou's testimony.

Moreover, Plaintiff's wishful (but inaccurate) characterization of Dr. Theodossiou's testimony would not meet the standard set by the Fifth Circuit and this Court. Plaintiff contends that Dr. Theodossiou's testimony does not eliminate the possibility that he read the Hospira label at some other time, but just not "specifically in connection with Ms. Guilbault's treatment." *Id.* at 4; *see id.* at 13. There is still no evidence that he read it. Thus, at most, that would present "nothing more than a possibility" that Dr. Theodossiou read the labeling, and that is not sufficient to defeat summary judgment. *Stewart* at *4 (rejecting argument based on possibility that prescriber may have seen Sandoz label update on a subscription service); *Pustejovsky*, 623 F.3d at 277 (possibility of learning of warning through colleagues is "speculation" insufficient to create genuine issue on failure-to-warn causation).

Finally, contrary to Plaintiff's arguments, Dr. Theodossiou's testimony that a "risk/benefit analysis takes place 'every single time we see a patient'" does not mean he read the Hospira labeling. *See* Opp. at 3-4. Although he does a risk-benefit analysis, there is no evidence that process included reviewing the Hospira label before he prescribed docetaxel to Ms. Guilbault. *See* Ex. 2 (Theodossiou Dep.) at 85:20-87:12. Dr. Theodossiou's risk/benefit analysis does not include knowledge of which manufacturer's version of docetaxel he is prescribing to a particular patient, let alone a review of that specific manufacturer's label. *Id.* at 86:24-87:12.

**B.     Dr. Theodossiou Has Never Read the Current Hospira Label.**

In addition, Plaintiff has no answer to Dr. Theodossiou's undisputed testimony at his deposition in November 2020 that he *still* had not reviewed the current Hospira docetaxel label and its warnings on permanent hair loss, which have been in effect since March 2017. *See* SOF ¶¶ 14-15; Opp., Ex. A (Theodossiou Dep.) at 125:6-17 ("I have not read the specific, you know, package insert from Hospira."). Importantly, Plaintiff does not dispute this fact. *See* Opp. at 5.

4

Thus, this case is exactly like *Stewart*, where the prescriber "still had seen nothing about the 2016 update to the Sandoz label" at the time of his deposition in 2019. *Stewart* at *4. As in *Stewart*, this fact "suggests that [the prescriber] would *not* have learned of" an update to Hospira's docetaxel labeling in any event. *Id*.

Instead of offering any credible response to this crucial fact, Plaintiff again resorts to misstating the evidence. Plaintiff contends that Dr. Theodossiou would have had no occasion to look at the updated labeling for Hospira's docetaxel because his "treatment practices changed," and he "stopped prescribing Taxotere/docetaxel." Opp. at 5. Not so. As Plaintiff is well aware, Dr. Theodossiou stopped prescribing Taxotere/docetaxel *only for HER2-negative breast cancer patients in the neoadjuvant setting*; he continues to prescribe docetaxel, even "in the preoperative setting . . . under the right circumstances." *Id.*, Ex. A (Theodossiou Dep.) at 135:12-136:17.[2] Thus, the fact that he has not reviewed the Hospira label since 2017, even though he still prescribes docetaxel, is highly relevant because it confirms—based on his own conduct— that even if Hospira had made a labeling change, Dr. Theodossiou would not have read it.

## II.  Plaintiff Cites No Relevant Legal Precedent.

All the cases Plaintiff cites involve situations, unlike this one, where courts held there was evidence the prescriber had read the product labeling of the particular defendant-manufacturer before making the prescription.

This Court's decisions in the *Kahn* and *Durden* cases—which concerned Sanofi's Taxotere product—are inapplicable because in those cases, the court relied on the prescribers' testimony

---

[2] Plaintiff cites a statement in Hospira's Statement of Facts that "[a]fter treating Plaintiff, Dr. Theodossiou stopped prescribing Taxotere/docetaxel because a small number of his own patients experienced lack of hair regrowth after taking docetaxel." Opp. at 5 & n. 20. The significance of that statement was that Dr. Theodossiou's "decision was not based on any information in Hospira's label"—a fact Plaintiff does not dispute. Hospira's Mem. Supp. Mot. Summ. J. ("Br.") at 4, ECF No. 12538-1. There is no dispute that he continued to prescribe docetaxel to patients in certain settings. Ex. 2 (Theodossiou Dep.) at 135:16-136:17. To be precise, this statement should say: "After treating Plaintiff, Dr. Theodossiou stopped prescribing Taxotere/docetaxel [for HER2-negative breast cancer patients in the neoadjuvant setting, like Ms. Guilbault,] because a small number of his own patients experienced lack of hair regrowth after taking docetaxel."

5

that they had read the Taxotere label. *In re Taxotere (Docetaxel) Prod. Liab. Litig.* ("*Kahn*"), 2020 WL 1819668, at *2 (E.D. La. Apr. 7, 2020) (ECF No. 9885) (doctor "read the Taxotere label"); *In re Taxotere (Docetaxel) Prod. Liab. Litig.* ("*Durden*"), 2020 WL 4228387, at *1-2 (E.D. La. July 23, 2020) (ECF No. 10833) (doctor was "familiar with the prescribing information for Taxotere, including the listing of adverse reactions contained in the package insert").

For the same reasons, *Bell v. Ethicon Inc.*, 2021 WL 1111071 (S.D. Tex. Mar. 23, 2021), is inapposite. *See* Opp. at 12. In *Bell*, the court determined there was a genuine dispute of fact where the prescribing physician testified that she "had read the [manufacturer's labeling materials] previously and was familiar with them," even though she could not recall whether she had reviewed them in connection with that particular plaintiff's medical care. *Bell*, 2021 WL 1111071, at *3. What is more, that prescriber was "in a different position from the physicians who had never even read [the manufacturer's labeling]" because the manufacturer had employed her for years as a "preceptor" to train other medical professionals on the manufacturer's products. *Id.*

Here, by contrast, Dr. Theodossiou's testimony is undisputed that, although he "probably" reviewed the *Taxotere* labeling, he does not recall reading Hospira's labeling. Ex. 2 (Theodossiou Dep.) at 86:9-16. As this Court found in *Stewart*, that fact forecloses Plaintiff's failure-to-warn cause of action. *Stewart* at *4 (citing *Dykes v. Johnson & Johnson*, 2011 WL 2003407, at *5 (E.D. La. May 20, 2011)).

### III.  Whether Dr. Theodossiou Would Have Changed His Prescription Based on a Different Warning Is Irrelevant Because He Never Read the Hospira Label.

Plaintiff devotes significant portions of the Opposition to whether Dr. Theodossiou would have changed his prescription if he had been given a different warning. Opp. at 1, 3, 10, 13-14. But that issue has no relevance to this motion. Dr. Theodossiou's testimony that he does not recall reviewing or relying on the Hospira labeling is an *independent* basis for summary judgment. It does not matter whether Dr. Theodossiou would have changed his prescription based on a different warning because any additional warning from Hospira would not have reached him and would have been futile. Br. at 5-7.

The distinction between these two issues is illustrated by *Stewart,* in which the Court addressed whether any warning would have been futile under the learned intermediary doctrine based on two independent inquiries: first, "whether [the prescriber] would have reviewed the [specific manufacturer's docetaxel] label or learned of any update to it regarding permanent hair loss," and second, whether any update would have altered the doctor's prescribing decision. *See Stewart* at *3-5. The independent nature of these two issues is further illustrated by *Dykes v. Johnson & Johnson*, 2011 WL 2003407 (E.D. La. May 20, 2011), where the court granted summary judgment on a failure-to-warn claim under Louisiana law, even though there was evidence that the doctor would have changed his medical recommendation had he received a different warning. *Id.* at *4 n.1 (doctor stopped prescribing product after learning of similar patient experiences). While that evidence may have been relevant to the second part of the inquiry, the court in *Dykes* reasoned that summary judgment was warranted because the doctor "never read the warning, and thus the warning played no role in the events leading to plaintiff's injury." *Id.* at *5. So too here. It is irrelevant what Dr. Theodossiou might have done differently based on a different warning from Hospira because Plaintiff has no evidence that he would have ever read that warning. Thus, there is no causation.

### IV. The Heeding Presumption Is Immaterial Because It Is Rebutted by Dr. Theodossiou's Testimony.

Plaintiff mentions in passing the heeding presumption, *see* Opp. at 9, 11-12, but makes no attempt to explain why it has any significance here. The heeding presumption is just that: a *presumption* that is rebuttable. *See, e.g.*, *Fernandez v. Tamko Bldg. Prods.*, 2 F. Supp. 3d 854, 863 (M.D. La. 2014). Courts in Louisiana and elsewhere have found the heeding presumption overcome in prescription drug and device cases where, as here, the prescribing physician did not read and rely on the product's labeling. *See, e.g.*, *Felice v. Valleylab, Inc.*, 520 So.2d 920, 927 (La. App. 1987); *Gebhardt v. Mentor Corp.*, 191 F.R.D. 180, 184 (D. Ariz. 1999). The same is true in product liability cases brought under Louisiana law that do not involve drugs or devices. *See, e.g.*, *Moguel v. Rheem Manufacturing Co.*, 2013 WL 3947170, at *7 (E.D. La. July 31, 2013)

7

(end user failed to read product manual); *Safeco Insurance Co. v. Baker*, 515 So.2d 655, 657-58 (La. App. 1987) (same).  This line of precedent compels the same outcome here.

Plaintiff attempts to distinguish *Pustejovsky v. Pliva, Inc.*, 623 F.3d 271 (5th Cir. 2010), by arguing that Texas law does not recognize the heeding presumption.  Opp. at 11-12.  That ignores *Stewart*, a case under Louisiana law in which this Court applied the reasoning of *Pustejovsky* and held that there was insufficient evidence of causation based on the prescriber's actual testimony. *See Stewart* at *4-5.  As the Court explained: "this [heeding] presumption can be rebutted with evidence showing that an adequate warning would have been futile under the circumstances. Indeed, that is the case here."  *Id.* at *4.  Here, Dr. Theodossiou's testimony rebuts the heeding presumption and shows that any additional warning would have been futile.  Thus, the heeding presumption is immaterial to the analysis and does not alter the conclusion that Plaintiff has failed to show causation.

**V.     Dr. Theodossiou's Knowledge from Other Sources Is Irrelevant.**

Plaintiff's argument that Dr. Theodossiou had knowledge of docetaxel's risks generally, Opp. at 1, 13, is also beside the point.  Whatever general knowledge Dr. Theodossiou had about docetaxel, there is no evidence that he gleaned that knowledge from Hospira's labeling.  *See* Ex. 2 (Theodossiou Dep.) at 86:9-16.  Thus, Plaintiff cannot show that any inadequacy in Hospira's label caused her injury.

Likewise, Plaintiff argues—based on Louisiana law on the prescription of actions—that the Court can *assume* Dr. Theodossiou "would have noticed" Hospira's labeling change.  Opp. at 14.  Plaintiff cites no support in the law for this odd proposition.  That is because the law of prescription has no bearing on the causation analysis here.  The first part of the failure-to-warn causation analysis focuses on whether a reasonable factfinder could conclude that *the prescriber actually* read the specific manufacturer's labeling.  *See Stewart* at *3-4.  By contrast, the prescription inquiry has nothing to do with causation at all and focuses on what information a reasonable investigation by the plaintiff would have uncovered.  Thus, these prescription cases have no application here.

Moreover, Plaintiff's argument is contrary to this Court's decision in *Stewart*. In *Stewart*, this Court held that assuming that a doctor may have learned of a label change through other channels—when there is no actual evidence to support that—is not sufficient to defeat summary judgment. *Stewart* at *4 (rejecting argument that doctor could have learned of a labeling update through a subscription service); *see also Pustejovsky*, 623 F.3d at 277 (rejecting argument that doctor may have learned of warning through colleagues). These unsupported scenarios "remain nothing more than possibilities" and do not defeat summary judgment. *See Stewart* at *4 (quoting *Pustejovsky*, 623 F.3d at 277).

**VI.    Ms. Guilbault's Investigation Into General Medication Risks Is Irrelevant.**

Plaintiff contends that "Hospira's motion fails because . . . before and throughout Ms. Guilbault's breast cancer treatment, Ms. Guilbault also researched the side effects of her chemotherapy medications, including docetaxel." Opp. at 1; *see id.* at 6-7. Plaintiff does not develop this argument or cite any law to support it. Nor could she. This argument fails as a matter of law because the learned-intermediary inquiry focuses on warnings provided to the prescriber, not the patient. *See Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098 (5th Cir. 1991) ("[T]he manufacturer has no duty to warn the patient, but need only warn the patient's physician."). And as a factual matter, there is no evidence that Ms. Guilbault ever read Hospira's labeling. Thus, just as a different warning would have been futile because there is no evidence that Dr. Theodossiou would have read it, a different warning would have been futile because there is no evidence that Ms. Guilbault would have read it.

Moreover, the unstated logic behind this theory is speculation on top of speculation: presumably Plaintiff is positing a scenario in which, after Dr. Theodossiou prescribed Ms. Guilbault "docetaxel" (without identifying any particular brand), Ex. 2 (Theodossiou Dep.) at 86:24-87:12, Ms. Guilbault *may* have discovered the Hospira docetaxel labeling (and not the Taxotere labeling), even though as of December 2016 when she filed suit, Ms. Guilbault brought claims only against Sanofi, and did not even add Hospira as a defendant until nearly five months later. Amended Short-Form Complaint, *Guilbault v. Hospira Worldwide Inc., and Hospira Inc.*,

9

No. 2:16-cv-17061 (E.D. La. May 4, 2017), ECF No. 6.  Then, if the Hospira label had warned of a risk of permanent hair loss, Ms. Guilbault *may* have mentioned that risk to Dr. Theodossiou. Then, based on that new knowledge, Dr. Theodossiou *may* have altered his prescribing decision. Once again, even in the most generous light, Plaintiff is trafficking in "nothing more than possibilities," *Stewart* at *4 (quoting *Pustejovsky*, 623 F.3d at 277), that are completely unsupported by the record and do not provide any basis to avoid summary judgment.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Ms. Guilbault's claims.

Date: May 18, 2021

Respectfully submitted,

*/s/ Heidi K. Hubbard*
Heidi K. Hubbard
Richmond T. Moore
Neelum J. Wadhwani
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
Phone: (202) 434-5000
Fax: (202) 434-5029
hhubbard@wc.com

John F. Olinde (Bar No.1515)
Peter J. Rotolo (Bar No. 21848)
**CHAFFE MCCALL LLP**
1100 Poydras Street
New Orleans, LA 70163
Phone: (504) 858-7000
Fax: (504) 585-7075
olinde@chaffe.com

*Counsel for Defendants Hospira, Inc., and Hospira Worldwide, LLC, formerly doing business as Hospira Worldwide, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on May 18, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

                                                /s/ *Heidi K. Hubbard*