IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to<br><br>Melissa Roach<br>Case No. 2:17-cv-07918 | MDL No. 2740<br><br>SECTION "H" (5) |

**PLAINTIFF'S, MELISSA ROACH'S, RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR <u>SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS</u>**

Plaintiff Melissa Roach hereby submits this Response to Defendants' Statement of Undisputed Material Facts, which was submitted in support of Defendants' Motion for Summary Judgment. Plaintiff Roach submits this Response pursuant to Local Rule 56.1 and states:

1. Admitted.

2. Admitted.

3. Ms. Roach admits that she was diagnosed with stage two, HER2 positive breast cancer in or around late June 2009. Denied that the cited testimony indicates that she received the diagnosis was "[b]y late June."[1]

4. Denied as stated. Defendants' cited question was absolute and all-or-nothing as to whether Ms. Roach ever "considered declining treatment altogether for your cancer." This cited testimony did not address whether Ms. Roach considered declining specific

---

[1] Ex. A, Roach Dep. 187:6-24

1

chemotherapy drugs, nor that she had the information necessary to make informed decisions about specific chemotherapy drugs.

5. Admitted.

6. Admitted.

7. Ms. Roach admits asking her oncologist whether her chemotherapy treatment would cause hair loss and being told that she would lose her hair. However, Ms. Roach was led to believe, by her oncologist and nurses, that her hair would fully regrow.[2]

8. Denied as stated. Defendants identify a snippet of testimony about uncertainty in an attempt to create certainty, which does not exist. Ms. Roach admits only that when asked in her deposition when she expected her hair to be fully regrown, she testified: "I wasn't sure. I didn't really have a definite period of time in mind. You know, maybe a few months. At the most six months. I don't know."[3] Her understanding of the timeframe for hair regrowth was based upon her "own assumption."[4] Taking all inferences in her favor, Ms. Roach was unclear about the timeframe.

9. Admitted.

10. Ms. Roach admits that in approximately May 2010, she noticed that her hair had not fully regrown. However, any implication that Ms. Roach knew the hair loss was permanent is denied. When asked if she knew at that time that she had permanent alopecia, Ms. Roach testified "I didn't have a clue. I didn't know."[5]

---

[2] *Id.* 249:17 to 250:6, 251:2-7.
[3] *Id.* 269:18-22.
[4] *Id.* 269:23.
[5] *Id.* 105:19-20.

2

11. Denied as stated. Defendants have mischaracterized Ms. Roach's testimony. Defense counsel, not Ms. Roach, used the words "much, much thinner" in counsel's questioning; Ms. Roach did not use these words to describe her condition. The excerpt cited by Defendants (*i.e.*, Ex. A, Roach Dep. 63:8–24) does not contain any comparison of pre-chemotherapy hair and post-chemotherapy hair, as Defendants' Statement No. 11 suggests. Ms. Roach described her observations made "[a]round 2011" regarding the appearance of her hair, but did not make the statement that it was "'much, much thinner' than it had been pre-chemotherapy," as Defendants suggest.

12. Denied as stated as Defendants remove important qualifying words from the quotation. Ms. Roach stated that around 2011, it "*started becoming* apparent" that her hair "wasn't growing back like it should." (Emphasis added.) Viewing the facts in the light most favorable to Ms. Roach, she started to realize that her hair regrowth was problematic at this time, but she did not realize that she had permanent hair loss.

13. Admitted, although Ms. Roach's testimony is clarified by her other testimony that she had continued to lose hair since 2011. Ms. Roach was asked "[S]o earlier you testified that you've been losing your hair since back in 2011, so how much less hair have you had since 2011?" Ms. Roach replied "It's got to be somewhere between 40 and 50 percent. It's just slowly gotten worse. Initially, I would say maybe 30 percent, but then it just – it kept falling out and getting worse until I'm where I am today."[6] Drawing all inferences in favor of Ms. Roach, it is clear that Ms. Roach's hair loss continued to be active and ongoing during the relevant timeframe. Given its changing nature, Ms. Roach could not have known that her hair loss was final.

---

[6] *Id.* 268:4–9

14. Admitted.

15. Admitted. Drawing all reasonable inferences in favor of Ms. Roach, the lack of a medical diagnosis of permanent hair loss supports Ms. Roach's contention that she did not know that her hair loss was permanent.

16. Admitted. Drawing all reasonable inferences in favor of Ms. Roach, Ms. Roach did not seek medical attention because she had been advised by her healthcare providers[7] and Defendants' own literature[8] that her hair loss would resolve on its own.

17. Admitted. Drawing all reasonable inferences in favor of Ms. Roach, she did not know until that time (i.e., 2016) that her hair loss was permanent and she had an actionable claim.

18. Admitted.

Plaintiff Roach hereby submits her Statement of Undisputed Material Facts in Opposition to Defendants' Motion for Summary Judgment on Statute of Limitations Grounds and states:

1. When she began her chemotherapy treatment, Ms. Roach had "absolutely no idea" that her hair loss would be permanent.[9]

2. Ms. Roach has never been diagnosed with permanent hair loss.[10]

3. Ms. Roach did not believe that she had permanent hair loss six months after completing her Taxotere chemotherapy.[11]

---

[7] Ex. A, Roach Dep. 249:17 to 250:6; Ex. B, Alnas Dep. 69:1-6
[8] *Id*. 33
[9] Ex. A, Roach Dep. 86:12-16.
[10] *Id*. 96:20, 97:7, 97:11.
[11] *Id.* 104:10-14.

4

4. Ms. Roach took Taxotere as part of her cancer treatment based on the recommendation of her oncologist, Dr. Wail Alnas.[12]

5. Prior to her cancer diagnosis and receiving recommendations from her oncologist, Ms. Roach had no familiarity with Taxotere.[13]

6. Ms. Roach's oncologist and nurses told her that she would lose her hair, but that it would grow back after she finished chemotherapy treatments.[14]

7. Ms. Roach understood that after chemotherapy, regrown hair may have a different color or texture. However, she was not aware that it was possible for hair loss to be long-term or permanent.[15]

8. At the time of her cancer treatment, Ms. Roach was not aware that cases of permanent alopecia had been reported in patients that had undergone treatment with the chemotherapy drugs that she was prescribed.[16]

9. Had Ms. Roach known of the risk of permanent hair loss at the time of her treatment, she may not have agreed to take Taxotere and would have researched other options.[17]

10. Ms. Roach had significant hair regrowth within 4-6 weeks of completing her chemotherapy treatment.[18]

11. During follow-up appointments after chemotherapy, Ms. Roach's oncologist commented that he was pleased to see her hair growing back.[19]

---

[12] *Id.* 109:18-21.
[13] *Id.* 218:16-19.
[14] *Id.* 222:1-4, 249:17 to 250:6, 251:1-7.
[15] *Id.* 243:5-12, 247:19-21.
[16] *Id.* 253:15-21.
[17] *Id.* 254:3-14, 255:6-11.
[18] *Id.* 271:5-8.
[19] *Id.* 304:16-23.

12. A chemotherapy regimen that did not include Taxotere was available at the time of Ms. Roach's treatment.[20]

13. *Temporary* alopecia is an expected side effect of the chemotherapy regimen that Ms. Roach took.[21]

14. Ms. Roach's oncologist did not learn that Taxotere can cause permanent hair loss until approximately 2015.[22]

15. Ms. Roach's oncologist does not recall Defendants ever warning him of the risk of permanent hair loss associated with Taxotere.[23]

16. At the time of prescribing Taxotere to Ms. Roach, her oncologist was not aware of the risk of permanent hair loss. His understanding of the permanent risks at that time were based upon his experience and the contents of the drug label.[24]

17. According to Ms. Roach's oncologist, Ms. Roach should have been made aware of the risk of permanent hair loss associated with Taxotere.[25]

18. Had Ms. Roach's oncologist known of the risk of permanent hair loss associated with Taxotere at the time of prescribing the drug, he would have advised Ms. Roach of such.[26]

19. Ms. Roach's oncologist now advises all of his patients of the risk of permanent hair loss associated with Taxotere.[27]

---

[20] Ex. B, Alnas Dep. 29.
[21] *Id.* 30:21-24; 34:1.
[22] *Id.* 39:11-20.
[23] *Id.* 39:21 to 40:3.
[24] *Id.* 42:3-18; 44:14-18; 68:10-15.
[25] *Id.* 89:9-13.
[26] *Id.* 45:4-9.
[27] Ex. B, Alnas Dep. 60:2-11.

6

20. Ms. Roach's oncologist recalled that she did mention concerns about her hair regrowth, and he "may have not documented" that interaction.[28]

**Fraudulent Concealment**

21. Defendants knew of the causal relationship between Taxotere and permanent hair loss for more than a decade before electing to update the Taxotere label in December 2015.[29]

22. For example, in the pivotal clinical trial (referred to as "TAX 316") used by Defendants to support approval of Taxotere for the treatment of adjuvant breast cancer (early stage), subjects on Taxotere reported an increased incidence of permanent hair loss compared to subjects who received treatment without Taxotere.[30]

23. In 2005, a different Sanofi clinical trial (referred to as "GEICAM 9805" or "TAX 301") confirmed that subjects receiving Taxotere had a higher incidence of permanent hair loss than those who received treatment without Taxotere.[31]

24. Defendants also received adverse event reports from clinicians whose patients reported permanent hair loss with Taxotere.[32]

25. Defendants' Global Safety Officer for Taxotere, Dr. Amy Freedman, acknowledged that irreversible hair loss had been documented in Sanofi's clinical trials for Taxotere

---

[28] *Id.* 90:15-19.
[29] Ex. D, Expert Report of David A. Kessler, M.D. at pp. 39—63 (summarizing evidence available to Sanofi regarding Taxotere's risk of permanent hair loss); Ex. E, Supplemental Expert Report of David A. Kessler, M.D. ("Kessler Supplemental Report" at p. 1 (containing opinion that "Sanofi should have warned patients and physicians about the risk of irreversible alopecia with Taxotere in its label by as early as 2006, and certainly by 2008."); *id.* at pp.20—1 (summarizing testimony by Sanofi employees regarding knowledge of causal relationship between Taxotere and permanent hair loss).
[30] Ex. D, Kessler Report at pp. 31; 42; 45—7.
[31] *Id.*
[32] *See id.* at p. 44; Ex. E, Kessler Supplemental Report at p. 13.

as early as 2006,[33] but advised the recipients "NOT" to do a literature search on the topic because the medical literature might contain additional reports of irreversible alopecia associated with Taxotere.[34]

26. In fact, Sanofi only warned that hair loss "is a common, yet temporary, side effect of some cancer medicines."[35]

27. By 2010, Sanofi had received reports from hundreds of women describing the failure of their hair to regrow following treatment with Taxotere.[36]

28. As usage of Taxotere increased, published reports of permanent[37] hair loss associated with Taxotere appeared in the medical literature.[38]

29. For instance, a study published in 2001 that evaluated Taxotere in the treatment of metastatic breast cancer noted that four patients who experienced partial alopecia lasting "longer than 2 years."[39]

30. As reports grew in the published scientific literature of permanent hair loss associated with Taxotere, Defendants took affirmative steps to eliminate reports from a much more accessible platform: social media. In 2010, Sanofi began to remove negative

---

[33] Ex. E, Kessler Supplemental Report at 21.
[34] Ex. I, at p. 1 (Sanofi_01035459)
[35] Ex. D, Kessler Report at p. 20.
[36] Ex. D, Kessler Report at pp. 59—60.
[37] "Permanent" hair loss is also referred to as "persisting," or "irreversible" hair loss in the medical literature, *see, e.g.,* Second Amended Master Long Form Complaint and Demand for Jury Trial, 2:16-md-02740-JTM-MBN, Doc. 4407 ¶¶at ¶¶ 149-162, and for purposes of this brief, a reference to "permanent" hair loss encompasses these other terms.
[38] Ex. G, Feigal Report at pp.41—66 (summarizing published articles on irreversible alopecia).
[39] Ex. F, Expert Report of Laura M. Plunkett, Ph.D., DABT ("Plunkett Report") at p. 15. *See also* Ex. H, at p. 2 (Sanofi_05252079); Ex. D, Kessler Report at p. 21

public posts made on its Facebook page by women who took Taxotere and suffered permanent hair loss.[40]

31. That same year, French authorities requested that Defendants analyze cases of permanent hair loss reported with Taxotere.[41]

32. The resulting report issued by Defendants and submitted in January 2011 concluded there was insufficient evidence to determine whether Taxotere caused permanent alopecia.[42]

33. These European authorities rejected Defendants' conclusion, finding that patients and healthcare providers needed to be provided information about the risk of permanent alopecia "given the serious psychological consequences of this adverse effect."[43]

34. The European Medicines Agency adopted this same conclusion in June 2011, informing the Defendants that the label for Taxotere needed to be updated to inform patients of the risk of permanent alopecia.[44]

35. However, Defendants did not update the United States label with this information at that time.[45]

36. In an internal audit conducted on March 5, 2015, Defendants again confirmed that the U.S. label lacked required safety information, including information on persisting alopecia.[46]

---

[40] *See, e.g.,* Ex. H, at p. 5 (Sanofi_05252082).
[41] Ex. D, Kessler Report at pp. 59—60.
[42] Ex. H, at pp. 7-8 (Sanofi_04353204 & Sanofi_04353247); Ex. D, Kessler Report at p. 60.
[43] *Id.* at pp. 59—60.
[44] *Id.*
[45] *Id.* at p. 61.
[46] *Id.* Report at p. 61 n. 219 (describing 2015 US affiliate audit that identified information missing from Taxotere's product insert).

37. Shortly thereafter, the FDA requested information from Defendants on reports of Taxotere associated with permanent hair loss.[47]

38. Defendants subsequently acknowledged a causal relationship between Taxotere and permanent alopecia and that they had failed to update the United States label for Taxotere with information about this risk, stating "[t]his is going to be fun submitting >4 year old labeling changes to the FDA now."[48]

39. On November 24, 2015, Sanofi submitted a revised label to the FDA adding language about permanent hair loss in the adverse events section,[49] which was finalized by the FDA on December 11, 2015.[50]


Dated: March 8, 2021                                  Respectfully submitted,


*/s/ Christopher L. Coffin*                           */s/ Karen B. Menzies*
Christopher L. Coffin (#27902)                        Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.                      GIBBS LAW GROUP LLP
1100 Poydras Street, Suite 2225                       6701 Center Drive West, Suite 1400
New Orleans, Louisiana 70163                          Los Angeles, California 90045
Phone: (504) 355-0086                                 Telephone: 510-350-9700
Fax: (504) 355-0089                                   Facsimile: 510-350-9701
ccoffin@pbclawfirm.com                                kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*                         *Plaintiffs' Co-Lead Counsel*

---

[47] *Id.* p. 61.
[48] Ex. H, at p. 11 (Sanofi_05207927).
[49] Ex. D, Kessler Report at p. 62. Sanofi submitted the label change through the "Changes Being Effected" or CBE regulation that permits manufacturers to make changes to labeling without prior FDA approval. *See* 21 C.F.R. § 314.70(c).
[50] Ex. D, Kessler Report at p. 62.

| | |
|---|---|
| */s/M. Palmer Lambert* | */s/Dawn M. Barrios* |
| M. Palmer Lambert (#33228) | Dawn M. Barrios (#2821) |
| GAINSBURGH BENJAMIN DAVID | BARRIOS, KINGSDORF & CASTEIX, LLP |
| MEUNIER & WARSHAUER, LLC | 701 Poydras Street, Suite 3650 |
| 2800 Energy Centre, 1100 Poydras Street | New Orleans, LA 70139 |
| New Orleans, LA 70163-2800 | Phone: 504-524-3300 |
| Phone: 504-522-2304 | Fax: 504-524-3313 |
| Fax: 504-528-9973 | barrios@bkc-law.com |
| plambert@gainsben.com | |
| | *Plaintiffs' Co-Liaison Counsel* |
| *Plaintiffs' Co-Liaison Counsel* | |

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

J. Kyle Bachus
Bachus & Schanker, LLC
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045 Phone:
510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

11

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

John Gomez
The Gomez Law Firm, PLLC
655 West Broadway, Suite 1700
San Diego, CA 92101
Phone: (619) 237.3490
Fax: 619.237.3496.
john@thegomezfirm.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, FL 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904 15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@amalaw.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Jessica Perez Reynolds
Pendley, Baudin & Coffin
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Phone: (225) 687-6396
Fax: (225) 687-6398
jperez@pbclawfirm.com

Darin L. Schanker
Bachus Schanker
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
dls@coloradolaw.net

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Zachary Wool
Barrios Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
zwool@bkc-law.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

>*/s/ Dawn M. Barrios*
>DAWN M. BARRIOS