# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) ) | MDL No. 16-2740 |
| PRODUCTS LIABILITY ) | |
| LITIGATION ) | SECTION: "H" (5) |
| ) | |
| **This document relates to:** ) | |
| Melissa Roach, No. 17-7918 ) | |

## ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment Based on Statute of Limitations (Doc. 12198). On May 14, 2021, the Court granted the Motion. These reasons follow.

## BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel,[1] that Plaintiffs were administered for the treatment of breast cancer or other forms of cancer. Among these companies are Defendants sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc. (collectively, "Sanofi" or "Defendants"). Plaintiffs allege that the drug caused permanent alopecia—in other words, permanent hair loss. Plaintiffs bring claims of failure to warn, negligent misrepresentation, fraudulent misrepresentation, and more. The first bellwether trial was held in September 2019, and the second trial is set for August 23, 2021.[2]

---

[1] Docetaxel is the generic version of Taxotere.
[2] The second trial was continued due to the COVID-19 pandemic.

In December 2020, the Court selected Plaintiff Melissa Roach to proceed with discovery in preparation for the fourth bellwether trial.[3] Plaintiff Roach was diagnosed with breast cancer in June 2009 at the age of 42.[4] After undergoing a partial mastectomy, she met with an oncologist, Dr. Wail Alnas.[5] Soon after this, she began receiving chemotherapy treatment with Taxotere, and she completed her treatment in November 2009.[6] Though she lost her hair during treatment, she recalls that it was growing back in 2010.[7] She further recalls that in one or two follow-up appointments with Dr. Alnas in the year after treatment, he said he was happy to see her hair coming back.[8] Around 2011, however, Plaintiff noticed her hair was thinner.[9] She testified that "it just wasn't growing back like it should."[10] In 2016, she saw an advertisement about Taxotere and permanent hair loss, and in 2017, she filed this lawsuit.[11]

In the instant Motion, Defendants move for summary judgment, arguing that Plaintiff's claims are time-barred under the Mississippi statute of limitations. Plaintiff opposes the Motion.

## LEGAL STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] A genuine issue of fact exists only "if the evidence is such that a

---

[3] The Court selected two other Plaintiffs as well—Emma Willie and Cindy Smith. *See* Doc. 11722. The Court has since dismissed Emma Willie's case. *See* Doc. 12491.
[4] Doc. 12198-3 at 12.
[5] *See id.* at 16.
[6] *See id.* at 25.
[7] *See id.* at 12, 25.
[8] Deposition of Melissa Roach, Ex. A to Pl.'s Opp., at 306–07.
[9] Doc. 12198-3 at 4.
[10] *Id.*
[11] *Id.* at 3.
[12] FED. R. CIV. P. 56.

reasonable jury could return a verdict for the nonmoving party."[13] When considering a summary judgment motion, the Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor.[14]

As the party moving for summary judgment on an affirmative defense, Sanofi bears the burden of establishing each element of that defense.[15] Sanofi, then, bears the initial burden of showing that the statute of limitations bars Plaintiff's claims here. If Sanofi does this, the burden shifts to Plaintiff to show that there is a triable issue of fact on whether the discovery rule or fraudulent concealment apply as a defense to the statute of limitations.[16]

## LAW AND ANALYSIS

Sanofi argues that this case is time-barred because (1) the face of the complaint shows that Plaintiff did not file suit within three years of sustaining her injury as required under the applicable statute of limitations; and (2) Mississippi law provides no basis to delay the accrual of her claims or toll the statute of limitations under the facts of her case.

Pursuant to Mississippi Code Annotated § 15–1–49, "All actions for which no other period of limitations is prescribed shall be commenced within

---

[13] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[14] Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000).
[15] Citigroup Inc. v. Federal Ins. Co., 649 F.3d 367, 371 (5th Cir. 2011) ("When a party seeks summary judgment pursuant to an affirmative defense, such as a statute of limitation, the movant must establish all of the elements of the defense.").
[16] See Barnes ex rel. Estate of Barnes v. Koppers, Inc., 534 F.3d 357, 365 (5th Cir. 2008) ("[T]he plaintiff must, as the proponent of a defense to the state statute of limitation, carry her burden to prove that she is entitled to the benefit of the discovery rule."); Phillips 66 Co. v. Lofton, 94 So.3d 1051, 1059 (Miss. 2012) (discussing the discovery rule and noting that "[d]iscovery of an injury 'is an issue of fact to be decided by a jury when there is a genuine dispute'"); Brown v. McKee, 242 So. 3d 121, 130 (Miss. 2018) (stating that at the summary judgment stage, plaintiff "bore the burden to produce evidence establishing a triable claim for fraudulent concealment").

3

three (3) years next after the cause of such action accrued, and not after."[17] Unless an exception applies, this period begins to run on the day that the injury or damage is sustained.[18]

## I. The Face of Plaintiff's Complaint

Sanofi avers that Plaintiff's alleged injury was sustained six months after she finished her chemotherapy with Taxotere. Plaintiff's claimed injury is permanent chemotherapy-induced alopecia ("PCIA"). The Master Complaint filed in this MDL defines PCIA as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy."[19] Highlighting the fact that in her Short Form Complaint, Plaintiff Roach incorporated the Master Complaint by reference, Sanofi avers that the statute of limitations began to run six months after Plaintiff completed chemotherapy.[20] Sanofi posits that because Plaintiff completed chemotherapy in November 2009, the three-year statute of limitations began to run in May 2010. According to Sanofi, when Plaintiff filed her complaint in 2017, her claims were time-barred.

In opposition, Plaintiff argues that the allegation contained in the Master Complaint is "merely a generalized medical statement" and does not imply that "*temporary* alopecia is magically morphed into *permanent* chemotherapy-induced alopecia at that six-month mark."[21]

Under Mississippi law, the period of limitations commences on the day that the injury or damage is sustained. Here, the injury of "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy"

---

[17] MISS. CODE ANN. § 15–1–49(1).
[18] *See* Smith v. General Motors, LLC, Civil Action No. 3:17CV471TSL-RHW, 2017 WL 4582330, at *3 (S.D. Miss. Oct. 13, 2017); Kaufman ex rel. Kaufman v. Robinson Property Group Ltd. Partnership, 331 Fed. App'x 276, 277 (5th Cir. 2008).
[19] Doc. 4407 at ¶ 181.
[20] Doc. 10668-10.
[21] Pl.'s Opp. at 6.

as defined in the Master Complaint is sustained when, six months after the completion of chemotherapy, a person has an absence of or incomplete hair regrowth.[22]

On the face of the pleadings, then, Plaintiff Roach sustained her injury in May 2010, when she had incomplete hair regrowth six months after she completed her chemotherapy treatment. Unless Plaintiff proves otherwise, this is when the limitations period began to run on her claims,[23] and her claims are time-barred on their face.

## II. The "Discovery Rule" and Fraudulent Concealment

Plaintiff Roach invokes two exceptions arguing that her claims are nonetheless timely: (1) the "discovery rule," and (2) fraudulent concealment. The Court will address each in turn.

### a. The "Discovery Rule"

Under Mississippi law, the discovery rule provides that "[i]n actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury."[24]

Plaintiff argues that her PCIA is a latent injury. Specifically, she contends that the permanent nature of her hair loss was latent and that for years she reasonably believed that her hair would return. Sanofi, however,

---

[22] In re Taxotere (Docetaxel) Prods. Liab. Litig. (Johnson and Thibodaux), No. 20-30104, No. 20-30107, 2021 WL 1560724, at *3 (5th Cir. Apr. 21, 2021).
[23] *See Smith*, 2017 WL 4582330, at *3; *Kaufman*, 331 Fed. App'x at 277; *Barnes*, 534 F.3d at 365.
[24] MISS. CODE ANN. § 15–1–49(2). *See also Barnes*, 534 F.3d at 359–60.

5

cites the Master Complaint, averring that Plaintiff's injury was so open and obvious that Plaintiffs called it "stigmatizing."[25]

Under Mississippi law, "a latent injury is an injury which is hidden or unseen."[26] Mississippi has applied the discovery rule when "'the plaintiff will be precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question.'"[27] Similarly, the Fifth Circuit has recognized that "'[f]or an injury to be latent it must be undiscoverable by reasonable methods' such as 'through personal observation or experience.'"[28] Mississippi courts have cautioned that a latent injury should be found only in "limited circumstances."[29]

The Court finds that the discovery rule does not apply here. Plaintiff anticipated that her hair loss would be temporary. She testified that she "figured that it would probably take at least [one month] for all of those drugs to kind of flush themselves out" of her system and that "once that happened, that it would allow the hair to start regrowing again."[30] She further testified that she expected her hair to take "[a]t the most six months" to fully regrow.[31] Even setting aside the definition of PCIA in the Master Complaint, then, Plaintiff Roach knew or should have known six months after her treatment that something was amiss when her hair had not grown back as she expected. Indeed, she testified that around 2011, "it just wasn't growing back like it

---

[25] The Master Complaint alleges that "Plaintiffs are stigmatized with the universal cancer signifier—baldness—long after they underwent cancer treatment, and their hair loss acts as a permanent reminder that they are cancer victims." Doc. 4407 at ¶ 6.
[26] Sutherland v. Estate of Ritter, 959 So.2d 1004, 1008 (Miss. 2007).
[27] Archer v. Nissan Motor Acceptance Corp., 633 F. Supp. 2d 259, 268 (S.D. Miss. 2007) (quoting McCain v. Memphis Hardwood Flooring Co., 725 So.2d 788, 794 (Miss. 1998)).
[28] State Indus. Prod. Corp. v. Beta Tech. Inc., 575 F.3d 450, 455 (5th Cir. 2009) (quoting PPG v. Lowery, 909 So.2d 47, 51 (Miss. 2005)).
[29] *PPG*, 909 So.2d at 51.
[30] Doc. 12198-3 at 23–24.
[31] *Id.*

should."[32] She further testified that in 2012 or 2013, she considered using Rogaine but decided against it.[33] When asked if she sought a doctor's opinion on her persisting hair loss, she said that she "[didn't] believe there's anything that can be done about it anyway, so it just seems kind of a waste."[34] Based on her testimony, Plaintiff Roach cannot claim that she did not recognize her injury prior to 2014.[35]

Plaintiff attempts to salvage her claim emphasizing that Dr. Alnas "congratulated" her on her hair regrowth at one or two of her follow-up appointments.[36] Plaintiff avers that "[t]his was the same doctor who set her expectations that regrowth would be a lengthy process."[37] Plaintiff, however, fails to point to any evidence showing that Dr. Alnas, upon seeing Plaintiff's persisting hair loss, assured her that hair regrowth was a lengthy process or that her hair loss was temporary.[38] Instead, Plaintiff testified that Dr. Alnas's comment about her hair regrowth was "just a comment he made in passing" and "we didn't discuss anything."[39] Plaintiff further testified that she deliberately chose not to ask for a doctor's opinion on her hair loss because she felt that she needed to direct her energy elsewhere, not to her hair loss.[40]

---

[32] *Id.* at 4.
[33] Deposition of Melissa Roach, Ex. A to Pl.'s Opp., at 273.
[34] *Id.* at 97.
[35] Regarding the level of knowledge that the law contemplates, the Mississippi Supreme Court has explained that the "focus is on the time that the patient discovers, or should have discovered by the exercise of reasonable diligence, that he *probably* has an actionable injury." *PPG*, 909 So.2d at 51 (emphasis in original).
[36] Pl.'s Opp. At 7.
[37] *Id.*
[38] To support this assertion that Dr. Alnas set her expectations for a "lengthy process," she points mostly to testimony about her own understanding of how her hair would regrow. She did testify that Dr. Alnas told her that her hair would regrow, but she said this was probably before chemotherapy.
[39] Deposition of Melissa Roach, Ex. A to Pl.'s Opp., at 306.
[40] *Id.* at 99.

7

Plaintiff, then, fails to show that she was precluded from discovering her injury.

Ultimately, Plaintiff Roach did not inquire with her doctor, despite recognizing that her hair "was not growing back like it should."[41] Accordingly, the discovery rule does not apply here, and Plaintiff's claim accrued at the time of her injury in May 2010.

### b. Fraudulent Concealment

Mississippi Code Annotated § 15-1-67 provides for tolling of the statute of limitations as follows:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.[42]

The Mississippi Supreme Court has held that a plaintiff seeking to avail herself of the doctrine of fraudulent concealment has "a two-fold obligation to demonstrate that (1) some affirmative act or conduct was done and prevented discovery of a claim," which act was designed to prevent the discovery of the claim, and "(2) due diligence was performed on [her] part to discover it."[43]

In her opposition, Plaintiff argues that Sanofi's actions "prevented Ms. Roach and her oncologist from learning that her hair would not return."[44] She states that "Defendants' false warning [referencing temporary hair loss] constitutes fraudulent concealment."[45] Plaintiff's argument misses the mark.

---

[41] Doc. 12198-3 at 4.
[42] MISS. CODE ANN. § 15-1-67. *See also* Robinson v. Cobb, 763 So.2d 883, 887 (Miss. 2000).
[43] Stephens v. Equitable Life Assur. Soc'y of U.S., 850 So. 2d 78, 83 (Miss. 2003).
[44] Pl.'s Opp. At 14.
[45] *Id.*

8

To toll the statute of limitations under the doctrine of fraudulent concealment, Plaintiff would need to show that Sanofi prevented her from discovering her claim, not that Sanofi failed to warn her of Taxotere's risk of permanent hair loss. The law is clear that Sanofi's alleged concealment of the risks associated with Taxotere cannot form the basis of both Plaintiff's substantive failure to warn claim and her claim for tolling.[46] Rather, Plaintiff would need to show a separate act "to conceal the underlying tortious conduct."[47] She points only to the underlying allegedly tortious conduct. Because Plaintiff has failed to make the required showing, the doctrine of fraudulent concealment does not save her claims.[48]

For the foregoing reasons, the Court finds that Plaintiff's claim accrued in May 2010, and the three-year statute of limitations began to run at that time. When Plaintiff filed suit in 2017, she was many years too late.

## CONCLUSION

Accordingly, for the foregoing reasons, Sanofi's Motion for Summary Judgment Based on Statute of Limitations (Doc. 12198) is **GRANTED**. Plaintiff Melissa Roach's case is **DISMISSED WITH PREJUDICE**.

---

[46] Whitaker v. Limeco Corp., 32 So.3d 429, 438 (Miss. 2010) ("[S]howing false financial records could not serve to have both fraudulently induced the Plaintiffs and fraudulently concealed from the Plaintiffs the underlying fraud claim."); Smith v. First Family Financial Services, Inc., 436 F. Supp. 2d 836, 840–41 (S.D. Miss. 2006); Ross v. Citifinancial, Inc., 344 F.3d 458, 463–64 (5th Cir. 2003) ("Mississippi law is unambiguous: Plaintiffs must prove a subsequent affirmative act of fraudulent concealment to toll the limitations.").

[47] See Smith, 436 F. Supp. 2d at 840–41 (quoting Boone v. Citigroup, Inc., 416 F.3d 382, 390 n.11 (5th Cir. 2005).

[48] See Archer, 633 F. Supp. 2d at 266–67 (finding fraudulent concealment inapplicable where plaintiffs made no inquiry and inquiry would have revealed alleged wrongdoing). The Court notes that according to the Master Complaint, beginning in 2006, there was a growing body of information available about the link between Taxotere/docetaxel and permanent hair loss. See Doc. 4407 at 29–32. This undermines Plaintiff's assertion that Sanofi was preventing her from discovering her claim.

New Orleans, Louisiana, this 21st day of May, 2021.

_____
JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE