## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In Re:  TAXOTERE (DOCETAXEL)                           **MDL NO. 2740**
**PRODUCTS LIABILITY LITIGAITON**

                                                       **SECTION "H" (5)**

**THIS DOCUMENT RELATES TO:**

*Kahn v. Sanofi-Aventis, et al., Case No. 2:16-cv-*
*17039*

---

**PLAINTIFF'S OMNIBUS OPPOSITION TO SANOFI'S MOTIONS TO EXCLUDE
EXPERT TESTIMONY OF DAVID B. ROSS, M.D., Ph.D., M.B.I. (R. Doc. 12576) AND
LAURA M. PLUNKETT, Ph.D. (R. Doc. 12575)**

---

## I.      INTRODUCTION

Plaintiff designated David B. Ross, M.D., Ph.D., M.B.I. and Laura M. Plunkett, Ph.D., as

regulatory and labeling experts to opine on the inadequacy of the Taxotere label relevant to the

case of Elizabeth Kahn.  Both Dr. Ross and Dr. Plunkett are well-qualified to render their opinions

in the matter as detailed in their reports

Dr. Ross and Dr. Plunkett have extensive knowledge, training and experience in

understanding the regulatory standards governing Taxotere labeling and applying said standards

to the facts and data.  While Sanofi seeks to exclude both experts on similar grounds, it does so

without ever addressing the appropriate regulatory standard for an adverse event warnings label

change. Instead, Sanofi focuses its argument on two primary issues: (1) causation, on which neither

expert offers any opinion; and, (2) reliance on Dr. Madigan's FAERS evaluation, effectively

asking for reconsideration of rulings this Court has already issued[1] and which forms only a single factual basis out of many that these experts identify as support for their conclusions.

This case involves the failure to provide an adverse reactions warning in §6 of the Taxotere label in accordance with 21 C.F.R. § 201.57(c)(7) and 21 C.F.R. § 314.80(a).  Both Dr. Ross and Dr. Plunkett directly address this regulatory standard and analyze the relevant evidence that speaks to the labeling issue, and they each provide several valid bases for their respective regulatory opinions in their expert reports and deposition testimony.

Sanofi's Motions to Exclude the Expert Testimony of Dr. David Ross and Dr. Laura Plunkett should be denied.[2]  Sanofi's attack on each expert for not conducting a causation analysis is irrelevant to the opinions offered.  Neither Dr. Ross nor Dr. Plunkett offer causation opinions, and causation is not a prerequisite to a §6 labeling change.  Dr. Ross and Dr. Plunkett properly rely upon Dr. David Madigan's FAERS signal detection analysis, and offer sound methodology for their opinions.

Dr. Ross' and Dr. Plunkett's qualifications to offer the opinions in their respective reports are not being challenged in Sanofi's present motions; thus, the Court only needs to determine whether the portion of Dr. Ross' opinions that relies upon Dr. Madigan's FAERS analysis is reliable, and whether Dr. Plunkett's report and opinions are an impermissible attempt at offering previously excluded causation opinions.  That Sanofi disagrees with the conclusions reached by Dr. Ross or Dr. Plunkett, or that Sanofi has a different interpretation of the evidence, simply does not warrant exclusion of his expert testimony under *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Accordingly, the Court should deny Sanofi's Motions to Exclude.

---

[1] R. Docs. 8094, 12098.

[2] Sanofi's motions to exclude the testimony of Dr. David Ross and Dr. Laura Plunkett do not challenge the qualifications of either expert to offer their opinions, and therefore Plaintiff will not address the experts' qualifications in her opposition.

## II.    LEGAL STANDARD

Rule 702 and *Daubert* govern the admission of expert testimony.  Under this framework, the district court acts as a "gatekeeper" to ensure a proposed expert is qualified as such, and his or her testimony is both reliable and relevant.  *Daubert*, 509 U.S. at 596-97; *Williams v. Manitowac Cranes*, L.L.C. 898 F.3d 607, 623 (5th Cir. 2018); *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 2017 WL 1352860 at *1 (E.D. La. Apr. 12, 2017).

One can be qualified as an expert on the basis of "knowledge, skill, experience, training or education."  Fed. R. Evid. 702.  "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue."  *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). "Although an expert's qualifications may be less-than-sterling, she may still be certified." *Williams*, 898 F.3d at 623.  "Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility."  *Huss*, 571 F.3d at 452.   The reliability inquiry focuses on the reasoning or methodology underlying the testimony.  *See Daubert*, 509 U.S. at 592-93.  This inquiry is not concerned with whether the expert's testimony is correct.  *MM Steel L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 850 (5th Cirpu. 2015).  The focus is on whether the testimony is based upon reasoning and methodology that is "scientifically valid."  *Daubert*, 509 U.S. at 595; *MM Steel L.P.*, 806 F.3d at 850-51.  "The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation."  *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 550 (E.D. La. 2015) (*citing Daubert*, 509 U.S. at 590).   In *Daubert*, the Supreme Court set forth a non-exhaustive list of factors to consider in determining the scientific reliability of expert testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) the general acceptance of the methodology in the scientific community.  *Daubert*, 509 U.S. at 593-94.

However, this is not a "definitive checklist or test."  Whether some or all these factors apply in a particular case depends on the nature of the issue, the expert's particular expertise, and the subject of his testimony.  *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999).  Indeed, the test of reliability is "flexible."  *Daubert*, 509 U.S. at 594.  "[T]he law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination."  *Kuhmo Tire Co.* 526 U.S. at 142 (emphasis in original).   "Thus, whether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine."  *Id*. at 253.

The Court's relevancy determination focuses on whether the proposed testimony "will assist the trier of fact to understand or determine a fact in issue."  *Daubert*, 509 U.S. 592.  To be relevant, "the expert's 'reasoning or methodology [must] be properly applied to the facts at issue.'" *Puga v. RCX Solutions, Inc.*, 914 F.3d 976, 985 (5th Cir. 2019) (*quoting Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012)).  "When performing this analysis, the court's main focus should be on determining whether the expert's opinion will assist the trier of fact."  *Id.*

"[T]he court's role . . . is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role …"  *Id.*   Under this system, "'[r]ejection of expert testimony is the exception rather than the rule.'"  *Id*. (quoting Fed. R. Evid. 702 advisory committee notes).

## III.    ARGUMENT

### A.    Dr. Ross' and Dr. Plunkett's Opinions Are Relevant to this Action

Dr. Ross' and Dr. Plunkett's opinions are central to the key issue in this case – whether Sanofi failed to provide an adequate adverse reactions warning in its Taxotere label concerning the use of Taxotere in the adjuvant setting and permanent hair loss.  These opinions necessarily involve an analysis of the federal regulatory requirements and whether Sanofi complied with relevant regulatory obligations.  Dr. Ross' and Dr. Plunkett's opinions are well-founded and will

4

undoubtedly aid the jury in determining whether the Taxotere label at issue in this case was inadequate.

**B.        Dr. Ross' and Dr. Plunkett's Opinions are Reliable**

FDA regulations dictate whether a label must include an adverse reaction warning for a particular adverse event.  Specifically,

> [f]or purposes of prescription drug labeling, an adverse reaction is an undesirable effect, reasonably associated with use of a drug, that may occur as part of the pharmacological action of the drug or may be unpredictable in its occurrence. This definition does not include all adverse events observed during use of a drug, *only those adverse events for which there is some basis to believe there is a causal relationship between the drug and the occurrence of the adverse event.* (italics added)[3] labeling must be revised to include a warning about **a clinically significant hazard** as soon as there is **reasonable evidence of a causal association with a drug**; a causal relationship need not have been definitely established."  21 C.F.R. § 201.57 (c)(6)(i) (emphasis added).

And,

> [f]or adverse reactions with significant clinical implications, the listing must be supplemented with additional detail about the nature, frequency, and severity of the adverse reaction and the relationship of the adverse reaction to drug dose and demographic characteristics, if data are available and important.[4]

Further, the relevant regulations define an "unexpected adverse drug experience" as

> [a]ny adverse drug experience that is not listed in the current labeling for the drug product. This includes events that may be symptomatically and pathophysiologically related to an event listed in the labeling but differ from the event because of greater severity or specificity.[5]

Both Dr. Ross and Dr. Plunkett properly identify and rely upon these reliable regulatory standards in their respective expert reports, and they each analyze the necessary facts and data

---

[3] 21 C.F.R. § 201.57(c)(7)
[4] *Id.* at subsection (A)
[5] 21 C.F.R. § 314.80

5

available in rendering their opinions that apply these relevant standards.[6]  In the end, both Dr. Ross and Dr. Plunkett opine that, based upon the regulatory requirements of 21 C.F.R. §§ 201.57(c)(7) and 314.80(a), Sanofi was obligated to change its Taxotere label to include an adverse reactions warning prior to Elizabeth Kahn receiving her first administration of a Taxotere containing regimen.[7]

Sanofi's criticisms of Dr. Ross' and Dr. Plunkett's methodology in reaching their conclusions are unpersuasive.  Sanofi misstates the appropriate regulatory standard, and misstates the bases for their opinions.[8]  Dr. Ross and Dr. Plunkett clearly set forth the relevant standard for an adverse reactions warning and the evidence each reviewed that led to the conclusion that there is "some basis to believe there is a causal relationship between the drug and the occurrence of the adverse event."[9]  Dr. Ross and Dr. Plunkett's opinions focus on reviewing the standard for requiring a label change, and the evidence that meets the standard set out in 21 C.F.R. §§ 201.57(c)(7) and 314.80. Even Sanofi's originally disclosed regulatory expert, Dr. Janet Arrowsmith, agrees that 21 C.F.R. § 201.57(c)(7) sets the standard for requiring a new adverse reaction warning to a label is "some basis to believe that there is a causal relationship between the drug and the occurrence of the adverse event."[10]

---

[6] Ex. 1, Dr. Laura M. Plunkett, Ph.D., DABT's Report 2/7/2021 "Plunkett Report" ¶¶ 90, 91, 94-97, and 99; Ex. 2, David Ross, M.D., Ph.D., M.B.I.'s Report 02/08/2021 "Ross Report" ¶¶ 50, 51, 54, 55, 57 and 58.

[7] Ex. 1, Plunkett Report, 2/7/2021, ¶ 95; Ex. 2, Ross Report, 2/8/2021, ¶ 90

[8] See Memorandum in Support of Sanofi Defendants' Motion to Exclude Expert Testimony of David B. Ross, M.D., PhD, M.B.I., p. 8, claiming that Dr. Ross' opinion is that "Sanofi had knowledge of some causal relationship between Taxotere and irreversible hair loss,"; and p. 11, where Sanofi argues that "Dr. Ross [cannot] conclude that these reports [the six] support any causal association."  Similarly, in its Memorandum in Support of Sanofi Defendants' Motion to Exclude Expert Testimony of Laura Plunkett, Sanofi states, "Dr. Plunkett's new opinion is based upon her inadmissible 'independent risk' and 'substantial contributing factor' opinions" and "Dr. Plunkett still has not conducted a general causation analysis, and so should not be permitted to testify that she believes Taxotere carries an 'independent risk' of permanent alopecia." p. 6.  Sanofi is purposefully attempting to mislead the Court by misrepresenting the regulatory standard requiring the company to update its label, and by mischaracterizing the bases for Dr. Plunkett's regulatory opinion.

[9] Ex. 1, Plunkett Report, 2/7/2021, ¶¶ 90, 91, 94-97, and 99; Ex. 2, Ross Report, 2/8/2021, ¶¶ 50, 51, 54, 55, 57 and 58.

[10] Ex. 3, Dep. of J. Arrowsmith, M.D., 7/29/2020, 56:9 – 57:21.

In approaching their investigation and opinions in a reliable manner consistent with their knowledge, training and expertise, Dr. Plunkett and Dr. Ross do something that no Sanofi expert attempts – they apply indisputable facts to the appropriate regulatory standard to reach a conclusion on the adequacy of the Taxotere label prior to Ms. Kahn's first administration in 2008.[11] The only expert that Sanofi has identified to contradict the opinions of Dr. Ross and Dr. Plunkett is Ellen Chang, Sc.D., who admits that she is not regulatory expert and is unfamiliar with the regulatory obligations for labeling.[12]

Sanofi entirely ignores this appropriate standard in its briefing (21 C.F.R. § 201.57(c)(7)), focusing instead on "signal analysis" and actual causation, neither of which are addressed by Plaintiff's regulatory experts, nor are they required.

Sanofi does not challenge the qualifications of Dr. Plunkett or Dr. Ross to offer the opinions in their reports. Sanofi only disclosed one expert, Dr. Chang, in response to Plaintiff's disclosure of Dr. Ross and Dr. Plunkett. Dr. Chang's admissions of critical facts are very telling: 1) she does not do, nor is she qualified to do, signal detection; 2) Dr. Chang does not challenge the methodology used by Dr. Madigan to do his signal detection, PRR; and 3) Dr. Chang does not offer any opinions about any of the other bases for Dr. Ross' or Dr. Plunkett's regulatory opinions.[13]

Dr. Ross and Dr. Plunkett used the proper regulatory standard for assessing whether a label change was required (21 C.F.R. § 201.57(c)(7)) and applied the available evidence against

---

[11] R. Doc. 11682. This Court's prior Order only permits Plaintiff's experts to address § 6 of the Taxotere label, Adverse Events. The appropriate standard for updating the Adverse Events section of the Taxotere label is found at 21 C.F.R. § 201.57(c)(7).

[12] Ex. 4, Dep. of Ellen Chang, ScD, 5/4/2021, pp. 219:21 – 220:9, ("Q. You're not a regulatory expert, right? A. I am not a regulatory expert.[], Q You're not familiar with the regulatory requirements for label changes, right? A. Correct.")

[13] Plaintiff has filed a motion to strike Dr. Chang's supplemental report, because, among other reasons, it is not a regulatory report contemplated by CMO 14(I). R. Doc. 12582.

that standard to render their opinions. That is the definition of a proper methodology. Sanofi's regulatory expert, Dr. Janet Arrowsmith, confirms that 21 C.F.R. § 201.57(c)(7) sets the standard for an adverse reactions warning label change.[14] Sanofi offers no expert to contest the methodology, bases relied upon, or the opinions of Dr. Ross and Dr. Plunkett, with the exception of its renewed attack on Dr. Madigan's FAERS analysis.

### 1.   *Dr. Ross Properly Utilized Dr. Madigan's Analysis*

Rather than focus on the appropriate standard or the evidence Plaintiff's experts rely upon, and clearly set out in their reports, to reach their opinions, Sanofi instead focuses its attention on previously rejected arguments concerning Dr. Madigan's FAERS analysis. By criticizing Dr. Madigan's analysis, Sanofi is simply trying to get another bite at the apple. The Court has twice addressed and denied Sanofi' challenges to Dr. Madigan's methodology.[15] In its third attempt to criticize, Dr. Madigan's analysis of FAERS data, Sanofi enlists the help of its non-regulatory expert, Ellen Chang, Sc.D. Plaintiff has filed a separate motion to exclude Dr. Chang, but to briefly summarize, Sanofi attempts to have Dr. Chang review old evidence and call it "newly discovered" in order to attack Dr. Ross' reliance upon Dr. David Madigan's Proportional Rate of Reporting (PRR) signal *detection* analysis.[16]

Sanofi incorrectly focuses on only one of the experts' evidentiary bases - Dr. Madigan's FAERS analysis.[17] In doing so, Sanofi entirely ignores all other bases referenced in Dr. Ross' and

---

[14] Ex. 3, Dep. of J. Arrowsmith, M.D., 7/29/2020, 56:9 – 57:21.

[15] R. Doc. 8094 (in *Earnest*) and R. Doc. 12098 (in *Kahn*).

[16] Sanofi's challenges to Dr. Plunkett's testimony does not include her reliance upon Dr. Madigan's FAERS analysis

[17] See Memorandum in Support of Sanofi Defendants' Motion to Exclude Expert Testimony of David B. Ross, M.D., PhD, M.B.I., p. 8, claiming that Dr. Ross' opinion is that "Sanofi had knowledge of some causal relationship between Taxotere and irreversible hair loss,"; and p. 11, where Sanofi argues that "Dr. Ross [cannot] conclude that these reports [the six] support any causal association." Similarly, in its Memorandum in Support of Sanofi Defendants' Motion to Exclude Expert Testimony of Laura Plunkett, Sanofi states, "Dr. Plunkett's new opinion is based upon her inadmissible 'independent risk' and 'substantial contributing factor' opinions . . ." and "Dr. Plunkett still has not conducted a general causation analysis, and so should not be permitted to testify that she believes Taxotere carries an 'independent risk' of permanent alopecia." p. 6. Sanofi is misrepresenting the regulatory

Dr. Plunkett's reports, choosing instead to indirectly challenge this Court's prior rulings on Dr. Madigan's methodology.[18]

It is proper for Dr. Ross to utilize and rely upon a statistical analysis by Dr. Madigan in reaching his conclusions.   Dr. Ross explained that he treated Dr. Madigan's PRR analysis exactly how he would have treated the work of other subject matter experts while at FDA.[19]   Dr. Ross reviewed Dr. Madigan's PRR calculation and recognized it as an appropriate methodology, and considered Dr. Madigan's statistical analysis as one of several bases in reaching his regulatory opinions.[20]   Dr. Ross is simply relying upon a subject matter expert, just as he did when serving as a medical reviewer at FDA.

Despite Sanofi's contention to the contrary, it is quite appropriate and common for an expert to utilize a statistical analysis of another expert as part of the facts and data he considers in reaching his own opinions.   Rule 703 of the Federal Rules of Evidence provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. . . .

FED. R. EVID. 703.   In *In re: Actos MDL,* the Court explained in rejecting a similar argument involving an expert's reliance on a statistical analysis performed by Dr. Madigan:

> The Defendants do not challenge Dr. Kessler's epidemiological conclusions, *rather, question his ability to discuss the fact that he relied on Dr. Madigan's meta-analysis in reaching his conclusions.* It is without question, the facts and data upon which an expert may base his or her opinion(s) are admissible on that basis alone; Dr. Kessler needn't be a statistician to rely on statistics and analyses conducted by a statistician, particularly within this factual context when statistical analysis is, in part, one of the foundations upon which epidemiological analyses and conclusions are based and when epidemiological analyses and conclusions have, within the

---

standard applicable to the company's duty to update its label, and mischaracterizing the bases for Dr. Plunkett's regulatory opinions.
[18] R. Docs. 8094, 12098.
[19] Ex. 5, Dep. David Ross, 3/4/2021, 31:4 – 33:15; *see also,* Ex. 2, Ross Report, 2/8/2021, ¶¶ 7 and 30.
[20] *Id.*; *see also,* Ex. 2, Ross Report, 2/8/2021, ¶¶ 50, 51, 54-58.

> motion practice, been shown to be at the center of the scientific debate at hand. The Defendants' argument as presented, is, again, unsupported and unpersuasive and, therefore, the objection is OVERRULED.

*In re Actos (Pioglitazone) Products Liability Litigation*, 2014 WL 120973 at * 17 (W.D.La., 2014).

*See also*, *In re Vioxx Products Liability Litigation*, 2016 WL 8711273 at *8 (E.D. La. 2016) ("Under Federal Rule of Evidence 703, an expert may base opinions on facts or data he has been made aware of during the case. . .Thus, Dr. Egilman's conclusions based on Dr. Madigan's report are admissible."); *Christopherson v. Allied Signal Corp.*, 939 F.2d 1106, 1111 (5th Cir. 1991), abrogated on other grounds by Merrell Dow Pharm., Inc., 509 U.S. 579 (1993); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1320-22 (Fed. Cir. 2014), overruled on other grounds by *Williamson v. Citrix Online*, LLC, 792 F.3d 1339 (Fed. Cir. 2015) ("Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field. . . Rule 703 explicitly allows an expert to rely on information he has been made aware of "if experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." This Rule does not predicate admissibility on the source of the facts or data or, in particular, on whether the source is employed by either of the parties.") (internal citations omitted); *Monsanto Co. v. David*, 516 F.3d 1009, 1015 (Fed. Cir. 2008) ("[N]umerous courts have held that reliance on scientific test results prepared by others may constitute the type of evidence that is reasonably relied upon by experts for purposes of Rule of Evidence 703); *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94 (2d Cir. 2000) ("Xerox's primary argument is that plaintiffs' experts failed to conduct their own tests and relied only on data provided by Xerox's own experts and the DEC. However, an expert may rely on data that she did not personally collect."). Dr. Ross' reliance on Dr. Madigan's statistical analysis here is exactly what his practice was at FDA.

**2.**     ***Sanofi's request to exclude Dr. Plunkett by insinuating her regulatory opinions are an attempt to resurrect excluded causation opinions is baseless.***

This Court should not entertain Sanofi's attempts to conflate Dr. Ross' and Dr. Plunkett's opinions with medical causation. Sanofi never addresses – never challenges Dr. Ross or Dr. Plunkett's application of -- the appropriate regulatory standard, or the overwhelming bases for their respective opinions.  The relevant labeling regulations do not require that the experts conduct a causation analysis as Sanofi repeatedly suggests. Sanofi faults Plaintiff's regulatory experts for not conducting causation analyses and, at the same time, argues that Dr. Plunkett improperly opines on causation.[21]  Neither Dr. Plunkett nor Dr. Ross offer causation opinions.

Indeed, the very standard set out in 21 C.F.R. § 201.57(c)(7) demonstrates that a well based suspicion of a causal association ("some basis to believe a causal relationship exists") triggers an obligation that Sanofi amend its label to include an adverse reactions warning.  Even Sanofi's originally disclosed regulatory expert, Dr. Janet Arrowsmith, agrees that 21 C.F.R. § 201.57(c)(7) sets the standard for requiring Sanofi to include a new adverse reaction warning to a label, and that standard is "some basis to believe that there is a causal relationship between the drug and the occurrence of the adverse event."[22]   The experts reviewed the information available to Sanofi long before Ms. Kahn received her first dose of Taxotere, and offer the opinion that sufficient evidence existed by 2006 to require a change to the Adverse Reactions section of the Taxotere label.[23]

---

[21] Memorandum in Support of Sanofi Defendants' Motion to Exclude Expert Testimony of David B. Ross, M.D., PhD, M.B.I., R. Doc. 12576-1 at p. 11; and Memorandum in Support of Sanofi Defendants' Motion to Exclude Expert Testimony of Laura Plunkett, R. Doc. 12575-1 at p. 6.

[22] Ex. 3, Dep. of J. Arrowsmith, M.D., 7/29/2020, 56:9 – 57:21.

[23] *See.* Ex. 1, Plunkett Report, 2/7/2021, ¶90, Ex. 2, Ross Report, 2/8/2021, ¶95.

Dr. Plunkett specifically states that she is not offering causation opinions. She sets out both the standard for an adverse reactions §6 warning label change and the bases for her regulatory opinions in her Supplemental Report. Despite this, Sanofi argues that Dr. Plunkett's regulatory opinions are nothing more than "repackaged" causation opinions that the Court previously excluded.[24] This simply is not true.

Sanofi seeks to have Dr. Plunkett's properly supported regulatory opinions excluded in their entirety on mischaracterizations of fact. Specifically, Sanofi argues that Dr. Plunkett "explicitly based her new labeling opinion on both her 'independent risk factor' and 'substantial contributing factor' opinions that this Court previously excluded."[25]   Such a statement grossly mischaracterizes exactly what Dr. Plunkett bases her regulatory opinion on, and the standard that she applies to the evidence.   This demonstrates yet another attempt by Sanofi to shift the standard from one of "some basis to believe a causal relationship exists" to one of causation.

In advancing this argument, Sanofi cites to only two lines in in paragraph 95 of Dr. Plunkett's supplemental report, quoted at page five of its memorandum:

> As discussed in my March Report, when the published literature relevant to the relationship between docetaxel exposure and CIPAL/ PCIA is considered as a whole, in conjunction with Taxotere clinical trial data, the weight-of-the-evidence indicates that it is biologically plausible that Taxotere/ docetaxel can cause CIPAL/ PCIA when the drug is used as an adjuvant to treat early stage breast cancer, that the risk of permanent, irreversible alopecia is not rare, that Taxotere/ docetaxel use carries an independent risk of CIPAL/ PCIA, and that Taxotere/ docetaxel use is associated with an increased risk of CIPAL/ PCIA as compared to other drugs used in breast cancer treatment. Thus, the evidence discussed in my March Report provides important support for my new opinion that there is a basis in the Taxotere database, importantly including clinical trial evidence, "to believe there is a causal relationship between the drug and the occurrence of the adverse event" (the adverse event standard cited above in paragraph 90; see the Final Rule dated January 24, 2006).[26]

---

[24] Memorandum in Support of Sanofi Defendants' Motion to Exclude Expert Testimony of Laura Plunkett, p. 1.
[25] *Id.*
[26] Ex. 1, Plunkett Report, 2/7/2021, ¶ 95

What Sanofi fails to include are Dr. Plunkett's remaining comments from this paragraph:

> Again, as discussed above, the standard I have applied for adding CIPAL/ PCIA to the Adverse Reactions section of the Taxotere labeling is the standard that FDA, Dr. Kessler and Dr. Arrowsmith recognize as being some basis to believe that Taxotere is associated with permanent/ irreversible alopecia (CIPAL/ PCIA). [27]

Sanofi points to nothing further. However, Dr. Plunkett's report is abundantly clear that she bases her regulatory opinions on the review of relevant evidence applied against the recognized standard for an Adverse Reactions warning label change. The fact that Dr. Plunkett notes "the evidence discussed in my March Report provides important support for my new opinion that there is a basis in the Taxotere database, importantly including clinical trial evidence, 'to believe there is a causal relationship between the drug and the occurrence of the adverse event'" should not surprise Sanofi. Adverse reactions are, by their very nature, demonstrations of toxicities experienced with drug use.[28] Dr. Plunkett is very clear that evidence of toxicities is evidence of adverse reactions. Sanofi cannot legitimately challenge this fact.

To be clear though, Dr. Plunkett does not attempt to mask a causation opinion within her regulatory opinions.[29] It is not necessary to prove causation to require an adverse reactions warning to be included in Taxotere's label; FDA labeling regulations do not require proof of causation before toxicity information is added into a drug label.[30]

---

[27] *Id.*

[28] *Id.,* "With the background regarding FDA regulations of human drug labeling and the clear and constant signal demonstrated in Dr. Madigan's FAERS disproportionality analysis, and other evidence, including the Sedlacek findings and Sanofi's internal pharmacovigilance database, I have formed opinions about the toxicities that should be included in the Taxotere labeling regarding CIPAL/ PCIA. It is my opinion to a reasonable degree of scientific certainty that there is some basis to believe that there is a causal relationship between Taxotere use and CIPAL/ PCIA in patients taking Taxotere as an adjuvant treatment for early-stage breast cancer, the standard for including safety information in the Adverse Reactions section of a human prescription drug label in the US (both pre-PLR and post-PLR)."; *see also,* Ex. 1, Plunkett Report, 2/7/2021, ¶¶ 69, 71 and 72.

[29] *Id* at ¶ 89. "[] while I am not offering causation opinions in this case, it is important to note that the standard for drug labeling was less than the standard of a full causation analysis as is undertaken when scientists are assessing the weight-of-the-evidence when applying Bradford Hill considerations for general causation in litigation."

[30] Ex. 3, Dep of J. Arrowsmith, M.D., 7/29/2020, 57:2 – 21; 21 C.F.R. § 201.57(c)(7).

Since causation is not a prerequisite to the triggering of an obligation to update §6 of a prescription drug label these opinions do not violate this Court's prior Orders, and Sanofi's Motion to exclude Dr. Plunkett's testimony should be denied.

## CONCLUSION

Sanofi's renewed attack on Dr. Madigan's analysis, and Dr. Ross' reliance upon it as one of several bases for his regulatory opinion, should not be entertained by this Court for three reasons.  First, and foremost, this Court has already addressed the methodology employed by Dr. Madigan and recognized the critical difference between signal detection and signal evaluation.[31] The regulatory standard does not require proof of causation.  Ignoring this critical distinction, Sanofi improperly suggests these experts should have to prove causation in order to offer their opinions that Sanofi was required to amend its label when evidence met the regulatory standard for doing so.  Second, Sanofi places undue emphasis on only one of the bases for Dr. Ross' opinions.[32]  Both Dr. Ross and Dr. Plunkett set forth several bases for the opinions offered and include a non-exhaustive list of evidence that demonstrates "some basis to believe there is a causal relationship between the drug and the occurrence of the adverse event."[33]  To boldly state that Dr. Madigan's FAERS analysis is a primary basis, or provides "critical support" for  Dr. Ross' opinions, subordinating other bases, is simply false.  Third, and finally, Sanofi offers no expert to

---

[31] Doc. 12098, pp. 13-14; Doc. 8094, pp. 8-9, quoting "The Court finds that Dr. Madigan's methodology passes muster. In his report, Dr. Madigan makes clear that the statistical analysis he conducted is accepted in the industry. It is used by drug companies and the FDA. The limitations Sanofi identifies are not weaknesses in Dr. Madigan's methodology; they are limitations beyond his control that he deliberately worked around. Accordingly, Sanofi's concerns relate to the weight of Dr. Madigan's testimony, not its admissibility, and on cross-examination, Defendants can highlight these limitations for the jury.[citations omitted]"

[32] See Memorandum in Support of Sanofi Defendants' Motion to Exclude Expert Testimony of David B. Ross, M.D., PhD, M.B.I., p. 8, "Dr. Ross relies on Dr. Madigan's FAERS analysis as critical support for his opinion that Sanofi had knowledge of some causal relationship between Taxotere and irreversible hair loss."

[33] See Ex.2, Ross Report, 2/8/2021, ¶¶ 50-55, 57; See also, Ex. 1, Plunkett Report, 2/7/2021, ¶¶ 90, 91, 94-97 and 99.

14

challenge any of the factual bases for Dr. Plunkett's opinions, and only challenges Dr. Ross' reliance Dr. Madigan's FAERS analysis.  Sanofi does not address the remaining bases for Dr. Ross' opinions. Sanofi only identified Dr. Ellen Chang in opposition to Plaintiff's recently substituted regulatory experts.  Dr. Chang admits that she only addresses Dr. Madigan's FAERS analysis, and no other basis for Dr. Ross' or Dr. Plunkett's opinions.[34]  Again, Plaintiff is challenging Dr. Chang's opinions separately, however it is worth mentioning here as well that Dr. Chang admits her unfamiliarity with signal detection, pointing out it is simply something "she doesn't do."[35]  And as a result, she offers no opinion on Dr. Madigan's methodology: "[a]nd for signal detection, I have no opinion on the method of signal detection."[36] Further compounding her unfamiliarity with signal detection, Dr. Chang never addresses the need to assess the case reports that were not returned in Dr. Madigan's searches, which the Court recognized would be an impossible task.[37]  Her unfamiliarity with signal detection renders her criticisms of Dr. Madigan's work uninformed – not expert testimony – and could only serve to confuse the jury on an issue she freely admits she knows nothing about.

For the reasons set forth above, the Court should deny Sanofi's Motions to Exclude Expert Testimony of David B. Ross, M.D., Ph.D., M.B.I. and Laura Plunkett, Ph.D.

Dated: May 25, 2021                                    Respectfully submitted,

/s/ Christopher L. Coffin                              /s/ Karen B. Menzies
Christopher L. Coffin (#27902)              Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.      GIBBS LAW GROUP LLP
1100 Poydras Street, Suite 2225              6701 Center Drive West, Suite 1400
New Orleans, Louisiana 70163                  Los Angeles, California 90045
Phone: (504) 355-0086                            Telephone: 510-350-9700

---

[34] Ex. 4, Dep. of Ellen Chang, Sc.D., 5/4/2021, pp. 255:24 – 257:15, ("I am addressing only Dr. Madigan's FAERS analysis." 257:5-6.)

[35] *Id.* at pp. 246:23 – 247:3, "That's correct. I don't do signal detection. I do causation analysis."

[36] *Id.* at p. 248:20-21.

[37] Doc. 12098, p. 13.

Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

J. Kyle Bachus
Bachus & Schanker, LLC
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045 Phone:
510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Andre M. Mura
Gibbs Law Group LLP

1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

John Gomez
The Gomez Law Firm, PLLC
655 West Broadway, Suite 1700
San Diego, CA 92101
Phone: (619) 237.3490
Fax: 619.237.3496.
john@thegomezfirm.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, FL 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904 15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749

505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Jessica Perez Reynolds
Pendley, Baudin & Coffin
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Phone: (225) 687-6396
Fax: (225) 687-6398
jperez@pbclawfirm.com

Darin L. Schanker
Bachus Schanker
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
dls@coloradolaw.net

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Zachary Wool
Barrios Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313

dmarkoff@amalaw.com                    zwool@bkc-law.com

## **CERTIFICATE OF SERVICE**

     I hereby certify that on May 25, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ M. Palmer Lambert*
M. PALMER LAMBERT
