IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to<br><br>Emma Willie<br>Case No. 2:18-cv-3857 | MDL No. 2740<br><br>SECTION "H" (5) |

### PLAINTIFF EMMA WILLIE'S RESPONSE TO DEFENDANTS' BILL OF COSTS AGAINST PLAINTIFF EMMA WILLIE

Plaintiffs, Emma Willie and Albert Willie, filed suit against Defendants, Sanofi Aventis US LLC and Sanofi US Services, Inc. ("Defendants") in this multidistrict litigation on April 11, 2018. Mrs. Willie was selected as one of three Mississippi bellwether trial pool plaintiffs to undergo both Phase I and Phase II discovery. At the time of her April 19, 2021, dismissal only depositions, written discovery, and motions practice had been completed. (Doc. 12491). A Notice of Appeal was filed on May 18, 2021, and an Amended Notice of Appeal was file don May 19, 2021. (Doc. 12622, 12632).

Defendants now seek $38,253.84 in purported costs to be taxed against Mrs. Willie, broken down into $32,251.12 for in deposition transcript fees, $5,982.72 in fees for collecting medical records, and $20.00 in docket fees. Defendants offered no support in law or argument in seeking these exorbitant costs for a case that did not come close to trial.

Plaintiffs submit that awarding costs in this matter is unwarranted under the circumstances, not supported by proper documentation, and premature. Alternatively, if the Court finds it necessary to award some costs, Plaintiffs contend the amount actually awarded should be significantly lower than the amount requested.

1

I.     **LAW AND ARGUMENT**

Defendants should not be awarded any costs against Plaintiffs in this matter, based on both 5th Circuit precedent, the Federal Rules of Civil Procedure, and the Manual for Complex Litigation. However, if the Court feels compelled to award costs, the amount awardable under the Federal Rules of Civil Procedure and relevant case law requires the amount to be significantly lower than the amount requested by Defendants.

A. <u>Defendants are not entitled to any costs against Plaintiff Emma Willie</u>

The decision whether to award costs ultimately lies within the sound discretion of the district court. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013); *Hall v. State Farm Fire & Cas. Co.*, 937 F.2d 210, 216 (5th Cir. 1991). The Fifth Circuit has identified a wide range of reasons that may be invoked to justify withholding costs from the prevailing party, "including: (1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources." *In Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006). Additionally, the Fifth Circuit has stated that a denial of costs is appropriate where a plaintiff has brought a lawsuit in good faith and at least one of the above-noted factors is met. *Id.* at 794. There is no real dispute that Mrs. Willie brought her lawsuit in good faith. As such, because Mrs. Willie meets at least one of the listed factors, taxing her Defendants' costs should be denied.

First, Mrs. Willie is a cancer survivor and person of limited means. Having previously declared bankruptcy in 2002, 2004, and 2013, Mrs. Willie and her husband continue to struggle financially. Mr. Willie works two jobs as a bus driver and as a substitute teacher, while Mrs. Willie works as a packer at a manufacturing plant. Their two adult children, a grandchild, and an "on-the-way" grandchild live in the Willies' single-wide home. It is clear that Mrs. Willie does not

have the resources to take on the tens of thousands of dollars sought by the Fortune 500 Defendants.

Second, although the exact parameters of the conduct comprising "misconduct by the prevailing party" are not particularly defined by the jurisprudence, "[m]isconduct, bad faith, and abuse of the trial process are all grounds for refusing to award costs to the prevailing parties…." *Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 540 (5th Cir. 1990). The causation question Mrs. Willie's case involved weighing whether Dr. Patil would have warned Ms. Willie of permanent hair loss had he known about it and whether that warning would have caused Ms. Willie to request a different regimen. While the Court found that Dr. Patil would have still recommended the same regimen had he known about permanent hair loss and also found that Ms. Willie would not have refused Dr. Patil's recommendation, Sanofi failed to disclose risks that it knew to be associated with docetaxel, despite a duty to warn of those very risks.

Third, the learned intermediary question was close and involved difficult legal issues, and Mrs. Willie has filed a Notice of Appeal. The analysis was factually intensive and required an analysis of both Mrs. Willie's testimony and her treating physician's testimony. Additionally, this Court, sitting in the Eastern District of Louisiana, was considering Mississippi state law on learned intermediary. While this Court found for Defendants and dismissed Plaintiff's case, it was a close call and a difficult ruling.

Fourth, Mrs. Willie's case provided great value to the public, this Court, and the parties, "The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar." *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997). As in all bellwether situations, the benefits (and costs) of a ruling are

not the same as in a "one-off" case. As a potential bellwether, Mrs. Willie was set to be the first non-Louisiana bellwether case tried in the MDL, and her action provided guidance to the parties and the Court on issues relevant to the entire MDL. The discovery aided the parties in defining issues pertinent to the MDL as a whole. As to the assessment of costs in this, a complex litigation setting, the Manual for Complex Litigation (Fourth Edition, 2004) provides some guidance. This Court's general authority to allocate costs is discussed in Chapter 11, governing Pre-trial discovery procedures. Section 11:443 states:

> "Cost allocation may also be an appropriate means to limit unduly burdensome or expensive discovery. Rule 26's purpose is not to equalize the burdens on the parties, but Rule 26(b)(2)(iii) expressly requires the court to take the parties' resources into account in balancing the burden or expense of particular discovery against its benefit. Thus, where the parties' resources are grossly disproportionate, the judge can condition discovery that would be unduly burdensome on one of them upon a fair allocation of costs."

Considerations of cost allocation are not based on relative resources alone. Rule 26(b)(2)(iii) allows the court to allocate costs based on considerations of benefits, burdens, and overall case efficiency. Courts have articulated as many as eight factors relevant to cost allocation:

- the specificity of the discovery requests;
- the likelihood of discovering critical information;
- the availability of such information from other sources;
- the purposes for which the responding party maintains the requested data;
- the relative benefit to the parties of obtaining the information;
- the total cost associated with the production;
- the relative ability of each party to control costs and its incentive to do so; and
- the relative resources available to each party.

Here, Emma Willie subjected herself to the burdens of bellwether discovery not experienced by the vast majority of the MDL plaintiffs, while cooperating fully with the Court and its orders. Many of the eight factors referenced above also apply to issues of cost allocation in an MDL. Mrs. Willie was one case among a handful of bellwether cases selected to represent the

issues and facts of similarly situated plaintiffs in this MDL (and one of three plaintiffs selected in Mississippi), with an express purpose of utilizing those bellwether selections to and identify and resolve common questions of law and fact pertaining to the MDL.

As explained by the Manual for Complex Litigation, the benefits and costs of a bellwether trials are not the same as in a single plaintiff case:

> If individual trials, sometimes referred to as bellwether trials or test cases, are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases. Some judges permit the plaintiffs and defendants to choose which cases to try initially, but this technique may skew the information that is produced. To obtain the most representative cases from the available pool, a judge should direct the parties to select test cases randomly or limit the selection to cases that the parties agree are typical of the mix of cases. Test cases should produce a sufficient number of representative verdicts and settlements to enable the parties and the court to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis, and what range of values the cases may have if resolution is attempted on a group basis.

Manual Complex Lit. § 22.315 (4th ed.).

Emma Willie was selected to act as a bellwether to assist the Court and the Parties in the resolution of those common issues. Among those issues common to the MDL are issues of guiding opinions on learned intermediary. This Court has the inherent authority to allocate MDL bellwether case costs to common benefit or other cost sources. This Court has the authority to prevent that heavy financial load of common issue costs falling solely on an individual bellwether plaintiff's shoulders, especially when that plaintiff is financially challenged.

Finally, Sanofi is a large, multinational pharmaceutical corporation with significant financial resources and will not be unduly burdened by the costs expended in this matter. Moreover, Defendants have failed to provide many details regarding the costs for deposition transcript fees and other costs and have not provided a memorandum of law and argument in

5

support of its Bill of Costs. The prevailing party is not entitled to reimbursement for costs such as expedited transcripts or witness fees and allowances in excess of that permitted by 28 U.S.C.A. § 1821. *Fogleman v. ARAMCO (Arabian Am. Oil Co.*, 920 F.2d 278, (5th Cir. 1991) (finding added cost of obtaining a transcript on an expedited basis is not ordinarily taxable). A review of the receipts provided by Defendants shows that several of the transcripts appear to have been ordered on an expedited basis. Defendants have not met the burden of supporting the costs requested with particularity and should not be entitled to reimbursement of those costs.

B. <u>Alternatively, if any costs are awarded, the amount should be decreased substantially</u>

28 U.S.C. § 1920 provides that a judge or clerk *may* assess costs for certain expenditures. *If* costs are awarded, the $20.00[1] docket charge would fall into section five (5) of the statute. *Id*. However, Defendants also seek costs that purportedly fall into section 2 of the statute for "fees for printed or electronically recorded transcripts *necessarily* obtained for use in the case," and section 3 "fees and disbursements for printing…." *Id*. The 5th Circuit and other courts around the country have guidance on what costs are appropriate to claim under these categories.

1. *Defendants' purported costs for "fees for printed or electronically recorded transcripts necessarily obtained for use in this case" is exorbitant and goes beyond what is allowable.*

Defendants request for cost reimbursement in this category exceeds the scope of 28 U.S.C. § 1920(2) for two reasons. First, Defendants' request includes charges that were unnecessary for obtaining the transcripts. Second, many of the transcripts were not "necessarily obtained for use in this case." *Id*.

Defendants included private service of process fees; digitizing and synchronization charges; "initial services"; rough drafts; "surcharges" for expert/medical/technical and video

---

[1] Should costs be awarded, $20.00 for docketing fees are awardable under 28 U.S.C. § 1920, and Plaintiffs would not dispute this charge.

6

proceedings; equipment rental; attendance; cancelling of reporting services; exhibit share; "Veritext Virtual Primary Participants"; and electronic delivery and handling. for each and every deposition they seek to recover costs for.  None of these charges are recoverable under the statute or relevant case law, and Defendants took no effort minimize costs.[2]

Private process server fees are not recoverable under Section 1920 absent exceptional circumstances. *Marmillion v. Am. Int'l Ins. Co.*, 381 F. App'x 421, 431 (5th Cir. 2010); *Cypress–Fairbanks Independent School District v. Michael,* 118 F.3d 245, 257 (5th Cir.1997).  It is unclear whether Defendants seek reimbursement on these fees, as invoices are included in their request, yet the fees do not appear on the itemization.  Regardless, Defendants should not be allowed to collect costs for private service of process.

Next, Defendants attempt to recoup costs on expedited transcripts via a rough draft.  The extra cost of obtaining a transcript on an expedited basis is not taxable unless prior court approval of the expedition has been obtained or the special character of the litigation necessitates it. *Fogleman v. ARAMCO (Arabian Am. Oil Co.),* 920 F.2d 278, 286 (5th Cir. 1991).  Defendants neither have court approval of expedition nor was it necessary to obtain rough drafts.  Trial for the fourth-round bellwether picks is not scheduled until 2022, making it entirely unnecessary to rush order transcripts.  Additionally, Defendants only used testimony from Mrs. Willie and Dr. Patil in their motions for summary judgment, and because those depositions were taken in October and November of 2020, respectively, and Defendants motions for summary judgment were not filed until February 22, 2021, expedition was unnecessary.  Thus, Defendants' request for reimbursement of costs for rough drafts in the amount of $2,329.65 must be denied.

---

[2] For example, Defendants used Zoom to conduct depositions and seek to charge Plaintiffs for exhibit share despite Defendants having the ability to share the screen, put exhibits in the chat window to share, or simply e-mail the exhibits to counsel and the court reporter.  Defendants include a myriad of other charges in their itemization that are not explained on any invoices and their relevance to obtaining the transcript is not explained.

7

Additionally, in order to recover costs for both videotaping and transcription of depositions, the party seeking costs bears the burden of showing that both versions were necessarily obtained for use in the case. *Saacks v. Privilege Underwriters Reciprocal Exch.*, No. CV 16-1149, 2018 WL 3769963, at *3 (E.D. La. July 24, 2018) citing *Baisden v. I'm Ready Prods., Inc.,* 793 F. Supp. 2d 970, 976-977 (S.D. Tex. 2011). As discussed in more detail below, most of the depositions themselves were not necessarily obtained for trial preparation. The video depositions were also unnecessary in light of the Court having subpoena power over the vast majority of fact witnesses, obviating the need to obtain video transcripts. Thus, $11,363.50 amount claimed in video deposition costs must be denied.

Regardless of the type of transcript, only those charges necessarily attributable to the transcript itself are recoverable. *Saacks* at *3. Incidental costs to transcript fees, such as shipping, binding, and tabbing are generally not taxable, as they are not listed in section 1920. *United States ex rel Johnny Ray Long v. GSDMidea City, L.L.C.*, 807 F.3d 125 (5th Cir. 2015). The Supreme Court instructed federal courts to deny costs not articulated in section 1920 as taxable. *Id*. Costs for audiovisual equipment are only recoverable if there is authorization by the trial court; thus, in order to recover video synchronization costs, there must be authorization by the court. *Anderson v. Mem'l Hermann Healthcare Sys.,* No. CV H-16-1647, 2018 WL 6606254, at *3 (S.D. Tex. July 30, 2018) citing *Gibbons, Inc. v. Crawford Fitting Co.,* 760 F.2d 613, 615 (5th Cir. 1985), modified, 790 F.2d 1193 (5th Cir. 1986) (en banc), *aff'd,* 482 U.S. 437 (1987). Thus, the only types of costs awardable in this category are related to the court reporter and written transcript.[3]

---

[3] Only these costs for depositions necessarily obtained for use in the case, as discussed below, are recoverable. Plaintiffs contend that the only depositions necessarily obtained for use in this case were Plaintiffs Emma and Albert Willie and Dr. Patil.

A table outlining the charges associated with each deposition, according to the invoices submitted by Defendants, is attached as **Exhibit 1**.

2. *The majority of depositions Defendants now seek costs for were discovery depositions, which are not recoverable.*

In order for Defendants to recover costs related to depositions and transcripts, the deposition must have been necessarily taken for the case, not a mere discovery deposition. *Abbott v. United States*, 17-1604, 2018 WL 3495857, at *2 (E.D. La. July 20, 2018) ("A deposition is necessarily obtained if, at the time it was taken, it could reasonably be expected to be used during trial preparation, rather than merely for discovery."). The party seeking the costs has the burden of demonstrating necessity. *Fogelman* at 286. In this case, Defendants seek costs for 14 depositions, at least 11 of which were conducted solely for discovery purposes. Defendants have not articulated the necessity of any depositions. Thus, all costs related to these discovery depositions, regardless of whether the type of cost would be recoverable, must be denied.

The list of witnesses- all of which are fact witnesses fact witnesses- are listed in Exhibit 1, along with the costs associated for each. All are within the Court's subpoena power to testify at trial, obviating the need for a deposition. Moreover, some of the deponents were not protected by any HIPAA or court-ordered protections, and Defendants could have, but did not, informally interview them. The depositions of Ms. Willie's treating nurses and medical doctors who did not prescribe chemotherapy to Ms. Willie were also unnecessary in-light-of the claims. Defendants took depositions of Mrs. Willie's daughter, niece, and sisters -none of which were health care personnel- and asked them all similar factual questions. At no time did Defendants attempt to control the costs of discovery, direct particularized discovery at each witness, or uncover critical information during these depositions. The unnecessary nature of Defendants' depositions for any

9

witness other than Plaintiffs Emma and Albert Willie[4] and Dr. Sandanand Patil, is further supported by the fact that Defendants used only Ms. Willie and Dr. Patil's testimony in support of their Motions for Summary Judgment. (Doc. Nos. 12202-2, 12201-2).

Should the Court award costs for necessarily obtained deposition transcripts, the costs should be limited to the recoverable costs (court reporter and non-expedited transcript) of Emma Willie, Albert Willie and Dr. Sandanand Patil. Defendants have not provided an invoice for the cost of a non-expedited cost of obtaining a transcript. Thus, the total recoverable for "fees for printed or electronically recorded transcripts *necessarily* obtained for use in the case," is $2,970.73, as outlined in Exhibit 1.

3. *Defendants' claimed costs for unrelated medical records, duplicative requests, and charges related a third-party record retrieval service are not recoverable.*

The costs for medical records unrelated to the claims at-issue, investigative costs, and third-party retrieval costs are not recoverable. *Eberhart v. Novartis Pharm. Corp.*, 282 F.R.D. 697 (N.D. Ga. 2012) (prohibiting recovery of medical records retrieval costs which the defendant elected to outsource the acquisition to a private provider); *Dunaway v. Cowboys of Lake Charles, Inc.*, 07-1138, 2010 WL 3883262, at *2 (W.D. La. Sept. 27, 2010) ("costs associated with materials used primarily for discovery or investigative purposes are not recoverable, as they are not obtained for use in the case.").

Here, Defendants seek reimbursement for costs of Plaintiff Emma Willie's records under the "fees and disbursements for printing" category. 28 U.S.C. § 1920(3). Many of Defendants requests were duplicative, were sent to places where Ms. Willie never treated, or were unrelated. For example, Defendants sent three requests to insurance companies Plaintiff never reported as an

---

[4] Albert Willie's deposition was a discovery deposition based on the nature of the deposition, however, Mr. Willie is a party to the action.

10

insurer (twice to Aetna, once to Blue Cross Blue Shield of Michigan).  **Exhibit 2**. They also sent a request to a school despite Plaintiff not making a wage loss claim or claiming an affiliation (Tate County School). *Id*. Another example is Defendants' request to Ms. Willie's dentist. *Id*. The $754.91 reimbursement request for duplicate requests or requests for records unrelated to Ms. Willie's breast cancer treatment or hair loss must be denied.

Even for medical records requests that are arguably related to the claims at-issue in this case, Defendants sought unrecoverable costs. Defendants seek a third-party retrieval fee in the amount of $36.00 for 21 requests, totaling $756.00. *Id*. The request for third-party retrieval fees must be denied in whole.  Next, Defendant sought cancellation fees in the amount of $20.00 on 20 different requests, totaling $400.00. *Id*. Defendants give no explanation for cancelling the requests or cite any reason as to why Plaintiffs should be responsible for a cancellation.  Thus, the request for reimbursement of cancellation fees must be denied.  Defendants then seek reimbursement in the amount of $25.00 for six "research fees," an obviously investigative charge, totaling $150.00. *Id*. This amount must also be denied.  Finally, Defendants sought reimbursement for a custodial fee.  12 of the fees were for $10.00, on was for $20.00, two were for $25.00, one was for $45.00, one for $41.00, and one was for $32.16, totaling $308.16. *Id*.  Defendants have not explained this cost but it appears to relate to the use of a third-party to retrieve records.  Thus, Defendants' request for this amount must be denied.

If the Court feels inclined to award any fees related to Defendants' requests for medical records in the category of "fees and disbursements for printing," then the maximum amount awardable would be $2,679.65, as outlined in Exhibit 2.

## CONCLUSION

Given the totality of the circumstances, Plaintiffs respectfully request that this Court use its vast discretion and equitable powers to deny costs to Defendants. Alternatively, if the Court elects to exercise its discretion to award any costs, Plaintiffs respectfully ask that the Court to disallow any costs not described by Defendants with particularity, not recoverable under 28 U.S.C.A. § 1821, and/or reduce costs to an amount that does not pose a personal financial hardship to Mrs. Willie. If costs are awarded, the *maximum* allowable costs are $5,650.38 ($2,970.73 for transcript costs, $2,679.65 for medical records costs). In the alternative, the fact that Plaintiff Willie's Appeal remains pending indicates that the instant costs assessment motion is not ripe for consideration, the interests of equity and judicial economy would be best served by delaying a ruling on the instant motion until the motion for new trial and (if necessary) any appeal from the judgment is resolved.

Dated: June 7, 2021

Respectfully submitted by,

*/s/ Darin L. Schanker*
Darin L. Schanker
Bachus & Schanker, LLC
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
dschanker@coloradolaw.net

Thomas A. Stringer
Nathan Buttars
Lowe Law Group
6028 S. Ridgeline Dr. Suite 200
Ogden, UT 84405
Phone: (385) 298-0175
Fax: (801) 656-0997
aaron@lowelawgroup.com
nate@lowelawgroup.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

                                                */s/ Darin L. Schanker*
                                                DARIN L. SCHANKER