```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

*************************************************************
IN RE:   TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

                          Civil Action No. 16-MD-2740
                          Section "H"(5)
                          New Orleans, Louisiana
                          May 25, 2021

THIS DOCUMENT RELATES TO ALL CASES
*************************************************************

                  TRANSCRIPT OF MOTION HEARING
         HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                  UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

FOR THE PLAINTIFFS:

    *DAWN BARRIOS*
    BARRIOS KINGSDORF & CASTEIX
    701 POYDRAS STREET
    SUITE 3650
    NEW ORLEANS, LA 70139

    *CLAIRE E. BERG*
    GAINSBURGH BENJAMIN DAVID MEUNIER
    & WARSHAUER
    1100 POYDRAS STREET
    SUITE 2800
    NEW ORLEANS, LA 70163

    *LOWELL FINSON (via Zoom)*
    FINSON LAW FIRM
    12777 W. JEFFERSON BLVD
    BUILDING D, THIRD FLOOR
    PLAYA VISTA, CA 90066

*APPEARANCES CONTINUED*

```
FOR SANOFI S.A.:

                    KELLY E. BRILLEAUX
                    IRWIN FRITCHIE URQUHART & MOORE
                    400 POYDRAS STREET
                    SUITE 2700
                    NEW ORLEANS, LA 70130

                    MADISON HATTEN
                    SHOOK HARDY & BACON
                    2555 GRAND BOULEVARD
                    KANSAS CITY, MS 64108


FOR SANDOZ, A NOVARTIS DIVISION:

                    NICHOLAS INSOGNA
                    GREENBERG TRAURIG
                    3333 PIEDMONT ROAD NE
                    SUITE 2500
                    ATLANTA, GA 30305


FOR ACCORD HEALTHCARE, INC.:

                    JULIE CALLSEN
                    TUCKER ELLIS
                    950 MAIN AVENUE
                    SUITE 1100
                    CLEVELAND, OH 44113



Official Court Reporter:    Nichelle N. Wheeler, RPR, CRR
                            500 Poydras Street, B-275
                            New Orleans, Louisiana 70130
                            (504) 589-7775

    Proceedings recorded by mechanical stenography,
transcript produced via computer.
```

**P R O C E E D I N G S**

(Call to order of the court.)

THE COURT: Let me just say, at the outset, I have reviewed all of the filings in this matter and correspondence received from both defendants and Mr. Finson. So I just want to know, do you want to make any argument at this time, Ms. Hatten or Ms. Brilleaux?

MS. BRILLEAUX: I just wanted to state for the record, as you know, we submitted the letter briefing directly to chambers rather than filing it. I wanted to state for the record that we would like, you know -- to the extent that the court reporter is taking this down, we would like to, you know, recognize that we submitted a letter dated May 14th and a reply dated May 21st. If you would like us to file those into the record at a later date, we will need to redact them to remove personal information, but we would like to incorporate those arguments made in that briefing on behalf of all defendants as we go forward today.

THE COURT: Okay.

MS. BARRIOS: And, Your Honor, on behalf of Mr. Finson, I filed an opposition and sur-reply. I would like to have a conversation with defense counsel about possibly keeping this partially under seal. I don't remember everything that's in it because I didn't write it, but I know there will need to be redactions. So I would like to work

```
10:30:51AM   1   with defense counsel on that, Your Honor.
10:30:53AM   2            THE COURT:  I think that's something we can work out.
10:30:55AM   3   I know we received correspondence from defendant directly to
10:31:01AM   4   chambers as well as from Mr. Finson and a reply.  I'm not
10:31:04AM   5   prepared to discuss sealing anything at this moment, but I
10:31:07AM   6   think the more appropriate, the more prudent course of
10:31:11AM   7   action, would be for you to meet and confer and then make the
10:31:14AM   8   appropriate requests to the Court at that time.  But I'm not
10:31:18AM   9   -- I'm not prepared to discuss this at this time.
10:31:20AM  10            MS. BARRIOS:  Yes, ma'am.
10:31:22AM  11            MS. CALLSEN:  And just to clarify, we haven't filed
10:31:25AM  12   anything.  So you said --
10:31:25AM  13            MS. BARRIOS:  No.  No.  No.
10:31:26AM  14            MS. CALLSEN:  -- keep it under seal.  We haven't
10:31:28AM  15   filed anything.
10:31:29AM  16            MS. BARRIOS:  You're correct.
10:31:30AM  17            THE COURT:  Right.  I know nothing's under seal.  I
10:31:33AM  18   received everything, correspondence in chambers.
10:31:36AM  19            And just for the record, this matter comes to me as
10:31:39AM  20   part of our show cause process, and I was shown at our last
10:31:45AM  21   hearing that there were submissions where the handwriting
10:31:52AM  22   looked suspiciously consistent with others.  And so I was
10:31:56AM  23   concerned about that and set this for a separate submission,
10:32:02AM  24   a separate hearing.
10:32:03AM  25            And so with that, Mr. Finson, is there anything that
```

| | | |
|---|---|---|
| 10:32:07AM | 1 | you would like to say at this time? |
| 10:32:11AM | 2 | I can't hear you.  He must be on mute. |
| 10:32:31AM | 3 | Cherie, is it us? |
| 10:32:31AM | 4 | THE CASE MANAGER:  No. |
| 10:32:32AM | 5 | THE COURT:  Mr. Finson, you're on mute.  We can't |
| 10:32:34AM | 6 | hear anything you're saying. |
| 10:32:37AM | 7 | MR. FINSON:  How about now? |
| 10:32:38AM | 8 | THE COURT:  That's better.  Thank you very much. |
| 10:32:39AM | 9 | MR. FINSON:  I'm sorry.  I want to rest on my papers |
| 10:32:42AM | 10 | and answer any questions you have. |
| 10:32:46AM | 11 | But a couple of things I want to note of great |
| 10:32:50AM | 12 | import, and that is -- is that the defendants have expressed |
| 10:32:52AM | 13 | to you no prejudice suffered by what we considered and agreed |
| 10:32:55AM | 14 | to by our ethics counsel -- to be a method of handling this |
| 10:32:59AM | 15 | matter.  Now, that being said, in light of the fact that the |
| 10:33:02AM | 16 | defendants have raised all the issues they raised, I propose |
| 10:33:05AM | 17 | that what we do is -- is as far as -- as trying our best to |
| 10:33:12AM | 18 | at least accommodate the defendant's concerns is have every |
| 10:33:15AM | 19 | single one of our clients, Rick, CQ (sic) every one of the |
| 10:33:20AM | 20 | authorizations, even though I understand they say we could |
| 10:33:24AM | 21 | have done this to begin with.  But the question is, what do |
| 10:33:26AM | 22 | we do to fix it? |
| 10:33:27AM | 23 | And in any case, as far as the fix is concerned, |
| 10:33:29AM | 24 | another thing they're saying that there is no way that this |
| 10:33:32AM | 25 | can be fixed other than by dismissals and sanctions.  Our |

10:33:36AM  1   position is, is that dismissals affect and harm only the
10:33:42AM  2   clients, and if sanctions are ordered by this court, then
10:33:45AM  3   that would be a way to fix it.  But I think putting this all
10:33:49AM  4   together, what the defendants are saying is, is that we have
10:33:51AM  5   attempted to defraud the court by giving them false
10:33:54AM  6   information.  What we did was, was to give them correct
10:33:57AM  7   information that did not prejudice them and we did it in a
10:34:00AM  8   way that they didn't like it.  And for that, we apologize,
10:34:04AM  9   but, nonetheless, we thought it would work.
10:34:06AM 10           And, again, please understand something, it is
10:34:10AM 11   absolutely crucial to this case that you understand that
10:34:13AM 12   Dr. Finson is a nationally recognized expert in the area of
10:34:18AM 13   effect sheets, records analysis.  She works with firms all
10:34:21AM 14   over the country, in the past, has worked with many, many MDL
10:34:26AM 15   committees, science committees, and for that, at least you
10:34:31AM 16   have to understand, when she knows she needs to talk to a
10:34:35AM 17   client, she does.
10:34:36AM 18           The defendants suggest that when we give our clients
10:34:38AM 19   our cell phones that somehow or another we're not reaching
10:34:42AM 20   out to them.  That's just preposterous.  We talk to them all
10:34:46AM 21   the time.  And if there is anything that we need to know, for
10:34:50AM 22   instance, like hair products and things like that, of course,
10:34:51AM 23   we talk to them.  But as far as analyzing records, we do
10:34:54AM 24   that.  And, again, because the power of attorney that we had,
10:34:59AM 25   which by the way, is prominently noted in our contract, at

| | | |
|---|---|---|
| 10:35:04AM | 1 | the top of the retainer, it says power of attorney, not |
| 10:35:07AM | 2 | hidden as the defendants claim. |
| 10:35:09AM | 3 | And, again, Your Honor, I sort of throw myself on the |
| 10:35:11AM | 4 | mercy of the court here because I understand it is up to you |
| 10:35:14AM | 5 | to make a decision as to whether or not we did something |
| 10:35:17AM | 6 | wrong, but more importantly, how do we fix the problem and |
| 10:35:20AM | 7 | fixing the problem does not mean harming our clients.  And, |
| 10:35:23AM | 8 | again, if you have any questions, please feel free to ask. |
| 10:35:28AM | 9 | THE COURT:  Mr. Finson, I will be frank with you, you |
| 10:35:31AM | 10 | know.  I went through your contract and power of attorney and |
| 10:35:33AM | 11 | I see it.  I think you signing medical authorizations is a |
| 10:35:38AM | 12 | bridge too far, because I think, you know, in my experience, |
| 10:35:43AM | 13 | for a power of attorney to cover medical records or medical |
| 10:35:46AM | 14 | decisions and those sorts of things, those are special power |
| 10:35:50AM | 15 | of attorneys.  This is a bridge too far. |
| 10:35:52AM | 16 | And the thing that really bothered me, I will be |
| 10:35:56AM | 17 | perfectly frank, and I'm not going to, you know -- I will |
| 10:35:58AM | 18 | tell you, is that you should have signed it as a power of |
| 10:36:04AM | 19 | attorney.  I have signed documents on behalf of family |
| 10:36:08AM | 20 | members where I have a power of attorney or -- and it's Jane |
| 10:36:14AM | 21 | Milazzo, power of attorney, whomever, so that there is no |
| 10:36:17AM | 22 | question as to who is actually executing the document. |
| 10:36:20AM | 23 | Now, you can execute it on behalf of a person for |
| 10:36:25AM | 24 | whom you hold the power of attorney, but it's another thing |
| 10:36:29AM | 25 | to switch names and play games.  And so I think it's |

|  |  |  |
|---|---|---|
| 10:36:38AM | 1 | disingenuous to say, well, you know, we were up and up |
| 10:36:41AM | 2 | because then you wouldn't have changed the names.  That's |
| 10:36:46AM | 3 | what bothers me. |
| 10:36:47AM | 4 | On the other hand, I don't think you necessarily -- |
| 10:36:50AM | 5 | your client should be punished because I'm upset with you. |
| 10:36:55AM | 6 | And so I'm not prepared to dismiss those cases because if |
| 10:36:59AM | 7 | they have valid claims, that is -- my guess is they had no |
| 10:37:05AM | 8 | part of this and they were following directions of their |
| 10:37:08AM | 9 | counsel and people trust their lawyers, as they should.  And |
| 10:37:18AM | 10 | so they were going to follow your direction. |
| 10:37:20AM | 11 | So this all needs to be cured.  This needs to be |
| 10:37:24AM | 12 | cured.  And I'm going to say in no way uncertain terms, this |
| 10:37:31AM | 13 | never has to happen -- this should never happen again.  If |
| 10:37:35AM | 14 | you're going to execute a power of attorney, you have to |
| 10:37:37AM | 15 | clearly say you're executing on behalf of that person.  But |
| 10:37:41AM | 16 | to sign their names and then get somebody else to sign a |
| 10:37:45AM | 17 | witness, that's not acceptable.  Not acceptable at all. |
| 10:37:53AM | 18 | So with that, after I viewed it -- I reviewed it and |
| 10:37:57AM | 19 | I thought that the remedy -- because I don't think your |
| 10:38:00AM | 20 | client should be punished.  The remedy should be that the -- |
| 10:38:07AM | 21 | you cure these and we should talk about a system to make sure |
| 10:38:10AM | 22 | that that all occurs.  And I think you should have to pay the |
| 10:38:14AM | 23 | cost for this investigation and the results and this |
| 10:38:22AM | 24 | subsequent hearing. |
| 10:38:30AM | 25 | Does anybody have any -- |

```
10:38:30AM   1              MR. FINSON:  May I respond, Your Honor?
10:38:31AM   2              THE COURT:  Of course you can.
10:38:32AM   3              MR. FINSON:  Thank you.
10:38:33AM   4              First of all, we will do anything you say of course.
10:38:36AM   5   That is not a problem, and we appreciate your concern for our
10:38:40AM   6   clients and your concern for the defendants and the
10:38:44AM   7   litigation in general.  But one thing I have to say is
10:38:45AM   8   that -- well, two things I have to say.  First of all, in
10:38:49AM   9   regard to HIPAA authorizations, every single one of them was
10:38:55AM  10   signed actually by the client.
10:38:55AM  11              THE COURT:  Okay.
10:38:56AM  12              MR. FINSON:  That's part of our -- I understand we're
10:38:58AM  13   talking about other ones.  But I want to let you know that we
10:39:01AM  14   understood the necessity of having that --
10:39:02AM  15              THE COURT:  Okay.  So this covered no medical
10:39:03AM  16   authorizations?  I thought there were some medical
10:39:06AM  17   authorizations attached.
10:39:09AM  18              MS. CALLSEN:  Medical authorizations were included in
10:39:12AM  19   our concern, Your Honor.
10:39:14AM  20              THE COURT:  Okay.
10:39:14AM  21              MR. FINSON:  And those are HIPAA authorizations, Your
10:39:19AM  22   Honor, and the clients signed those.
10:39:20AM  23              I understand that -- everything as far as the cost is
10:39:24AM  24   concern, that would be, of course, your decision, but I just
10:39:26AM  25   want to say one thing and I'll say it only once because I
```

10:39:31AM  1  don't want to repeat it, had we just discussed this early on,
10:39:34AM  2  had they brought their concerns to me, we would have resolved
10:39:37AM  3  it somehow or another short of them having to do an
10:39:41AM  4  investigation, which they threw in front of the court without
10:39:44AM  5  even discussing it with us.  They had no idea when they were
10:39:47AM  6  doing the investigation that there were powers of attorney.
10:39:50AM  7  And, certainly, under Rule 11, a reasonable inquiry is
10:39:54AM  8  required.
10:39:55AM  9        All I am saying, Judge, is I hope you would temper
10:39:58AM 10  the cost with that understanding and we will abide by any
10:40:02AM 11  ruling you make.
10:40:03AM 12        THE COURT:  Okay.
10:40:04AM 13        MS. CALLSEN:  With respect to the meet and confer, we
10:40:06AM 14  did identify that the signatures appeared to be that of
10:40:09AM 15  counsel, that they seemed all consistent, and really it
10:40:13AM 16  wasn't until we took a step back and looked at the issue
10:40:16AM 17  cumulatively that we were able to identify this pattern, Your
10:40:20AM 18  Honor.  So as for meet and confer, that's what I -- what our
10:40:25AM 19  response would be.
10:40:26AM 20        And with respect to the remedy that you discussed, if
10:40:31AM 21  we could have a time limit, because part of our concern is
10:40:35AM 22  how many of these claims are legitimate, are truly that they
10:40:38AM 23  do want to go forward?  So we would like some kind of time
10:40:43AM 24  frame for the remedy.
10:40:44AM 25        THE COURT:  What I'd like to hear from Mr. Finson, I

```
10:40:48AM   1   need you within -- what I'd like to know within 15 days,
10:40:57AM   2   Mr. Finson, is a listing of your clients where you have
10:41:01AM   3   signed those documents.  And once I get my arms around the
10:41:07AM   4   significance, then I'm going to after that grant a time frame
10:41:12AM   5   within which this all needs to be cured.  I would -- I would
10:41:18AM   6   proceed very frankly with you letting me -- once I see, then
10:41:22AM   7   I'll set a time frame, but as you're going through it, I
10:41:27AM   8   would begin contacting clients to make sure that they begin
10:41:29AM   9   the process of executing those documents.  But I don't
10:41:31AM  10   know -- I don't know what that inventory is.  And so I need
10:41:34AM  11   you to tell me these are -- these are the 100 clients or the
10:41:38AM  12   15 clients or the 2 of them that are problematic.  That's
10:41:42AM  13   what I need you to provide me within 15 days, that list, and
10:41:46AM  14   from there, I will then fashion a time frame within which
10:41:49AM  15   that needs to be cured.
10:41:52AM  16            MR. FINSON:  Understood, Your Honor.  Shall I submit
10:41:53AM  17   that to Ms. Barrios or directly to the court?
10:41:58AM  18            THE COURT:  Why don't you submit it to Ms. Barrios
10:42:00AM  19   and then she can get it to me because, very frankly, I'm
10:42:03AM  20   probably going to request that Ms. Barrios confer with
10:42:08AM  21   Mr. Moore and Mr. Olinde and they may talk about a time
10:42:08AM  22   frame.
10:42:14AM  23            And then I'm going to ask defense counsel to submit
10:42:19AM  24   to me the cost of this.  But, understand, we're not paying
10:42:24AM  25   for the defense of this case through this.  And I want it to
```

```
10:42:28AM   1  be directly related to this and I'm going to monitor it very
10:42:33AM   2  carefully to see what the costs were.  You understand?
10:42:39AM   3           MR. FINSON:  I appreciate that, Your Honor.  I do.
10:42:41AM   4           THE COURT:  Okay.  And that --
10:42:39AM   5           MR. FINSON:  I appreciate that.
10:42:41AM   6           THE COURT:  And I would appreciate you get that to me
10:42:43AM   7  within the next -- can you get that to me in 15 days?
10:42:48AM   8           MR. FINSON:  Yes, Your Honor.
10:42:49AM   9           THE COURT:  Get that to me in 15 days, and then from
10:42:52AM  10  there, we will proceed.
10:42:54AM  11           Is there anything further?
10:42:56AM  12           MR. FINSON:  No, Your Honor.
10:42:57AM  13           THE COURT:  All right.  Court's adjourned.
10:43:01AM  14           THE DEPUTY CLERK:  All rise.
            15                            * * * *
            16      (WHEREUPON, the proceedings were adjourned.)
            17                            * * * *
            18                     REPORTER'S CERTIFICATE
            19       I, Nichelle N. Wheeler, RPR, CRR, Official Court
                Reporter, United States District Court, Eastern District of
            20  Louisiana, do hereby certify that the foregoing is a true and
                correct transcript, to the best of my ability and
            21  understanding, from the record of the proceedings in the
                above-entitled and numbered matter.
            22
            23                       /s/ Nichelle N. Wheeler
                                    Official Court Reporter
            24
            25
```