```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


****************************************************************
IN RE:  TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

                         Civil Action No. 16-MD-2740
                         Section "H"(5)
                         New Orleans, Louisiana
                         May 25, 2021

THIS DOCUMENT RELATES TO ALL CASES
****************************************************************

              TRANSCRIPT OF SHOW CAUSE HEARING
       HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFFS:


                    DAWN BARRIOS
                    BARRIOS KINGSDORF & CASTEIX
                    701 POYDRAS STREET
                    SUITE 3650
                    NEW ORLEANS, LA 70139


                    CLAIRE E. BERG
                    GAINSBURGH BENJAMIN DAVID MEUNIER
                    & WARSHAUER
                    1100 POYDRAS STREET
                    SUITE 2800
                    NEW ORLEANS, LA 70163


FOR SANOFI S.A.:


                    KELLY E. BRILLEAUX
                    IRWIN FRITCHIE URQUHART & MOORE
                    400 POYDRAS STREET
                    SUITE 2700
                    NEW ORLEANS, LA 70130


                    MADISON HATTEN
                    SHOOK HARDY & BACON
                    2555 GRAND BOULEVARD
                    KANSAS CITY, MS 64108
```

APPEARANCES CONTINUED

FOR SANDOZ, A NOVARTIS DIVISION:

                    *NICHOLAS INSOGNA*
                    GREENBERG TRAURIG
                    3333 PIEDMONT ROAD NE
                    SUITE 2500
                    ATLANTA, GA 30305


FOR ACCORD HEALTHCARE, INC.:

                    *JULIE CALLSEN*
                    TUCKER ELLIS
                    950 MAIN AVENUE
                    SUITE 1100
                    CLEVELAND, OH 44113.

PARTICIPATING VIA PHONE:

                    Jennifer Domer
                    Patrick Luff
                    Brannon Robertson
                    Magdalena Gonzalez
                    Simone White
                    Jerry Mason
                    Ben Black
                    Taylor Hardenstein
                    Jennifer Greene
                    Blake Weiman
                    Peter Goss
                    Leslie LaMacchia
                    Christopher LoPalo
                    Evan Fotenot
                    Christopher Elliott
                    Meghan Hennessy




Official Court Reporter:    Nichelle N. Wheeler, RPR, CRR
                            500 Poydras Street, B-275
                            New Orleans, Louisiana 70130
                            (504) 589-7775


     Proceedings recorded by mechanical stenography,
transcript produced via computer.

**1**          **P R O C E E D I N G S**

08:56:57AM   **2**          (Call to order of the court.)

08:56:57AM   **3**          THE COURT:  I thought we could start just a couple

08:57:00AM   **4**   minutes early and I can go through the dismissals.

08:57:03AM   **5**          The first list that's been provided to me is

08:57:07AM   **6**   Stipulation of Dismissals.  These cases are dismissed with

08:57:10AM   **7**   prejudice and that's Zula Cheatwood, Docket 18-5537, and Opal

08:57:20AM   **8**   Savage, Docket No. 18-13017.

08:57:25AM   **9**          MS. BARRIOS:  Excuse me, Your Honor.  There are four

08:57:28AM  **10**   more cases to add to that list that came in late, Laverne

08:57:34AM  **11**   Pirtle, 19-11979; Vicki Johnson --

08:57:41AM  **12**          MS. CALLSEN:  Dawn, sorry to interrupt, but can you

08:57:43AM  **13**   let us know what number they were on this list just so we

08:57:43AM  **14**   know --

08:57:43AM  **15**          MS. BARRIOS:  Yes.  Yes.

08:57:43AM  **16**          MS. CALLSEN:  -- not to cover them --

08:57:43AM  **17**          MS. BARRIOS:  I'm sorry, Julie.

08:57:47AM  **18**          MS. CALLSEN:  -- when we get there.  That's okay.

08:57:47AM  **19**          MS. BARRIOS:  The first one, Laverne Pirtle is No.

08:57:51AM  **20**   9.

08:57:51AM  **21**          MS. CALLSEN:  Okay.

08:57:51AM  **22**          MS. BARRIOS:  The second is Vicki Johnson, 20-3277.

08:57:56AM  **23**   She's No. 19 on the Master List.  Lina Hawkins, 16-16790.

08:58:05AM  **24**   She is No. 17 on the Master List.  And Ramona Niezgoda,

08:58:14AM  **25**   18-13371, Ms. Niezgoda also filed a declaration as well.

08:58:20AM 1    She's No. 37 on the master list.

08:58:26AM 2         THE COURT:  Thank you.  Those matters are dismissed

08:58:29AM 3    with prejudice.

08:58:29AM 4         We have a second list and it's a Declaration of No

08:58:35AM 5    Contact List that has been submitted to the court.

08:58:42AM 6         MS. BRILLEAUX:  Your Honor, before you read through

08:58:43AM 7    those, the third one on the list, Tina Gumbs, we've been in

08:58:48AM 8    touch with Ms. Gumbs' counsel and he has recently gotten in

08:58:52AM 9    touch with his client and has done a late cure.  We've spoken

08:58:56AM 10   with Ms. Barrios this morning.  We've agreed that we can

08:59:00AM 11   remove Ms. Gumbs from the declaration list if it is okay with

08:59:02AM 12   Your Honor as she wants to withdraw the declaration, and we

08:59:07AM 13   would ask for seven days to confirm the compliance if that's

08:59:11AM 14   okay with you.

08:59:12AM 15        THE COURT:  So ordered.

08:59:15AM 16        Declaration of No Contact List, we have Michelle

08:59:21AM 17   Barbeauld, Docket No. 17-13268; second is Linda Cook, Docket

08:59:26AM 18   20-3063; Diann Humphery, Docket No. 20-3369, and Connie Oaks,

08:59:37AM 19   Docket No. 19-2296.  Are there more Ms. --

08:59:42AM 20        MS. BARRIOS:  Yes, ma'am.  We have two more.  One is

08:59:45AM 21   actually a duplicate.  The first is Deborah Moreno, No.

08:59:49AM 22   18-6270.  She's No. 13 on the Master List and, again, we have

08:59:56AM 23   Ramona Niezgoda, 18-13371, who is No. 37 on the Master List.

09:00:07AM 24        THE COURT:  These cases are dismissed with prejudice.

09:00:10AM 25   Plaintiff's counsel has provided this court with efforts to

09:00:13AM 1   reach their clients to no avail.  Plaintiffs have failed to

09:00:17AM 2   comply with their obligation despite best efforts of counsel.

09:00:21AM 3   Accordingly, they are dismissed.

09:00:23AM 4        And I have a final list that we can take up.  This

09:00:27AM 5   one is a Statement of No Defense List and I'm going to go

09:00:33AM 6   through these.  First one is Cynthia Allen, Docket 17-6967;

09:00:38AM 7   Cassandra Clark-Gilbert, Docket No. 18-13384, Imogene Grace,

09:00:47AM 8   Docket 19-2287, Deborah Humphery Docket 19-2489; Shana

09:00:54AM 9   Taylor, Docket 19-13301, and Ann Townes, Docket 19-2478.

09:01:01AM 10       Ms. Barrios?

09:01:04AM 11       MS. BARRIOS:  Yes, ma'am.  We have Barbara Smith,

09:01:06AM 12   Docket 20-3279, and she's No. 20 on the Master List.

09:01:13AM 13       THE COURT:  Is that it?

09:01:15AM 14       MS. BARRIOS:  Yes, ma'am.

09:01:16AM 15       MS. BRILLEAUX:  And, Your Honor, just before we get

09:01:18AM 16   started, we have a list of firms with late cures that

09:01:22AM 17   Ms. Barrios has provided to me this morning.  I think we

09:01:25AM 18   reached out to Your Honor and discussed a new procedure in an

09:01:29AM 19   attempt to streamline.  And so I'm just going to go through

09:01:32AM 20   with the numbers as they appear on your show cause docket,

09:01:35AM 21   and we'll move all of these to the end of the line.

09:01:35AM 22       THE COURT:  Thank you.

09:01:40AM 23       MS. BRILLEAUX:  It'll be No. 1, Carol

09:01:43AM 24   Metcalf-Underwood --

09:01:49AM 25       THE COURT:  Wait, you know, before we do this, let me

09:01:51AM   1   -- I didn't dismiss these other cases.

09:01:53AM   2           MS. BRILLEAUX:  Oh, I'm so sorry.

09:01:54AM   3           THE COURT:  I thought you were -- okay.

09:01:54AM   4        This is the Statement of No Defense List that I

09:01:56AM   5   previously read.  These cases are dismissed with prejudice.

09:02:00AM   6   Plaintiff's counsel has informed the court that there is no

09:02:01AM   7   defense to dismissal.

09:02:03AM   8        All right.  Now we're going to begin with the

09:02:05AM   9   Noncompliance Hearing List.  Okay.

09:02:05AM  10           MS. BRILLEAUX:  Okay.

09:02:09AM  11           THE COURT:  Thank you.  Ms. Brilleaux.

09:02:12AM  12           MS. BRILLEAUX:  So the -- and Ms. Barrios has pointed

09:02:16AM  13   out that we -- and this is the first time we've done this

09:02:16AM  14   obviously, so still working out the kinks with this.  The

09:02:19AM  15   first one is Caroline Metcalf-Underwood represented by Cutter

09:02:24AM  16   Law.  Would you rather move all of the cases from the firms

09:02:26AM  17   that have late cures to the end or just the individual cases?

09:02:30AM  18           THE COURT:  We can just -- just the individual cases.

09:02:35AM  19           MS. BRILLEAUX:  Okay.  No. 1, Carol

09:02:40AM  20   Metcalf-Underwood; No. 8, Dorothy Chavez; No. 11, Iris

09:02:48AM  21   Garrett.  Let's see.  I have a range here:  No. 22, Teresa

09:03:04AM  22   Elvira Howell; all three for Roberts & Roberts, 24, 25, and

09:03:12AM  23   26, Brenda Denby, Cynthia Epes, and Delores Nelson; No. 30,

09:03:28AM  24   Cindra Henderson; No. 39, Carol Crawford; No. 42, Gloria

09:03:42AM  25   Young Belizaire, and No. 43, Sandra Lewis.

| | | |
|---|---|---|
| 09:03:46AM | 1 | THE COURT: Okay. All right. Are we ready to |
| 09:03:48AM | 2 | proceed? |
| 09:03:51AM | 3 | MS. CALLSEN: You start. |
| 09:03:53AM | 4 | MS. BRILLEAUX: Or, no, you start. |
| 09:03:54AM | 5 | MS. CALLSEN: We're just shifting. |
| 09:03:58AM | 6 | MR. INSOGNA: Your Honor, the first case on the list |
| 09:04:02AM | 7 | is Robin Johnson with the Fears Nachawati firm, and we have |
| 09:04:08AM | 8 | no evidence of CMO 12 steps. |
| 09:04:11AM | 9 | THE COURT: Okay. Do I have a list of counsel for |
| 09:04:15AM | 10 | the firms? |
| 09:04:18AM | 11 | THE CASE MANAGER: For the firms, I put firms that |
| 09:04:22AM | 12 | were calling in. |
| 09:04:24AM | 13 | THE COURT: That's it. Thank you. |
| 09:04:24AM | 14 | Okay. Mr. Luff, are you on the line? |
| 09:04:33AM | 15 | MR. LUFF: Yes, Your Honor. This is attorney Patrick |
| 09:04:37AM | 16 | Luff from the Fears Nachawati law firm. |
| 09:04:37AM | 17 | THE COURT: Okay. We're talking about Ms. Johnson. |
| 09:04:41AM | 18 | MR. LUFF: That's correct, Your Honor. And we sent |
| 09:04:43AM | 19 | an e-mail to counsel pursuant to CMO 12A back in 2020 showing |
| 09:04:48AM | 20 | the written requests, and then recently in response to a |
| 09:04:56AM | 21 | deficiency list, we sent another e-mail to counsel on May 11, |
| 09:05:02AM | 22 | 2021, showing our CMO 12A subpoena. So we believe that we |
| 09:05:08AM | 23 | are in compliance with CMO 12A. |
| 09:05:12AM | 24 | THE COURT: Mr. Insogna? |
| 09:05:15AM | 25 | MR. INSOGNA: Okay. Is it -- okay. I suppose we'll |

09:05:18AM  1   just need seven days then to confirm if they're claiming it's

09:05:22AM  2   been cured.

09:05:22AM  3       THE COURT:  I'm going to grant seven days to confirm

09:05:25AM  4   the cure.  And if for some reason you do not have the e-mail,

09:05:30AM  5   I'm going to ask that you contact plaintiff's counsel.  Maybe

09:05:33AM  6   someone needs to get on the phone and walk through this to

09:05:37AM  7   see where the problem is.

09:05:37AM  8       MR. INSOGNA:  And it may be, Your Honor, that it just

09:05:39AM  9   went to one of the firm lists and not all, but I'll confirm.

09:05:42AM  10      THE COURT:  Thank you.

09:05:44AM  11      MR. LUFF:  Thank you, Your Honor.

09:05:47AM  12      MS. CALLSEN:  Good morning, Julie Callsen.  Our next

09:05:50AM  13  firm is Fernelius Simon, and the plaintiff is Marlene Chioda,

09:05:54AM  14  and this is a rollover from April.  They were -- regarding --

09:05:59AM  15  we don't have proof of use.  We don't have medical records.

09:06:02AM  16  They were going to work with Claire Berg.  There were

09:06:08AM  17  numerous deficiencies, so...

09:06:09AM  18      THE COURT:  Mr. Robertson?

09:06:11AM  19      MR. ROBERTSON:  Yes, Your Honor.  We do have records

09:06:15AM  20  we submitted.  And what her medical records show from her

09:06:19AM  21  oncologist is that she was scheduled to undergo four cycles

09:06:24AM  22  of Taxotere in 2011.  She has handwritten notes that we

09:06:30AM  23  submitted from when she was getting her infusion noting that

09:06:34AM  24  she was taking Taxotere.

09:06:35AM  25      THE COURT:  Handwritten notes from who, is it medical

| | | |
|---|---|---|
| 09:06:38AM | 1 | records? |
| 09:06:41AM | 2 | MR. ROBERTSON:  From our -- no, it's from our client |
| 09:06:42AM | 3 | in connection with her discharge paperwork which also notes |
| 09:06:47AM | 4 | she was taking the Taxotere.  So what we don't have are |
| 09:06:51AM | 5 | infusion records, but there are medical records from her |
| 09:06:54AM | 6 | oncologist, her own handwritten note saying that she was |
| 09:06:57AM | 7 | taking Taxotere and the discharge paperwork says she was on |
| 09:07:03AM | 8 | AC-T therapy and then records after that shows that she was |
| 09:07:06AM | 9 | on AC-T therapy.  So we think there's more than enough |
| 09:07:10AM | 10 | evidence -- I don't know if she can reach a jury, but she was |
| 09:07:13AM | 11 | taking Taxotere.  Plus her own testimony is that she was |
| 09:07:17AM | 12 | taking Taxotere.  And that coupled with handwritten notes |
| 09:07:21AM | 13 | saying I'm on Taxotere, here are the side effects, it's |
| 09:07:26AM | 14 | just -- |
| 09:07:28AM | 15 | THE COURT:  Wait. |
| 09:07:28AM | 16 | MS. CALLSEN:  Can I say -- |
| 09:07:28AM | 17 | THE COURT:  Wait.  Wait.  Wait.  Let me hear from -- |
| 09:07:28AM | 18 | MS. CALLSEN:  Yeah. |
| 09:07:31AM | 19 | THE COURT:  -- Ms. Callsen. |
| 09:07:32AM | 20 | MS. CALLSEN:  Specifically that was the deficiency |
| 09:07:35AM | 21 | that we pointed out in April.  What the notes say are AC-T. |
| 09:07:41AM | 22 | AC-T does not indicate Taxotere.  In general, that's |
| 09:07:47AM | 23 | Adriamycin, Cytoxan, and Taxol, which is not Taxotere.  And |
| 09:07:49AM | 24 | so we need records that show she was actually on Taxotere |
| 09:07:54AM | 25 | versus Taxol. |

```
09:07:55AM   1          THE COURT:  Do we -- do you not have the medical
09:07:58AM   2   records?
09:07:58AM   3          MR. ROBERTSON:  We do not.  What we have, Judge, is
09:08:01AM   4   from her oncologist saying not AC-T but that he was going to
09:08:08AM   5   put her on a four-dose treatment of Taxotere, not AC-T,
09:08:11AM   6   Taxotere.  We have those records and we submitted them.
09:08:13AM   7          THE COURT:  What's -- Ms. Berg, I see --
09:08:16AM   8          MS. BERG:  So I've worked with counsel and reviewed
09:08:18AM   9   what they've submitted for proof of use, and there is a
09:08:21AM  10   subsequent medical record saying that she had the Taxotere.
09:08:24AM  11   There are the plaintiff's notes that she took at the time
09:08:27AM  12   that she was given it, and there's a medical record saying if
09:08:32AM  13   you're given Taxotere, these are your instructions indicating
09:08:35AM  14   that she was given Taxotere.  It's my understanding that
09:08:38AM  15   counsel has also requested records from an insurance company
09:08:41AM  16   that may further support that proof --
09:08:44AM  17          THE COURT:  But where is the hospital records or the
09:08:44AM  18   infusion --
09:08:47AM  19          MS. BERG:  They're --
09:08:47AM  20          THE COURT:  Did they just --
09:08:49AM  21          MS. BERG:  They -- I don't think the hospital has
09:08:50AM  22   them.  I think it's a time -- counsel may correct me if I'm
09:08:54AM  23   wrong, but I think it's the time that she was undergoing
09:09:00AM  24   treatment is quite a long time ago; is that correct?
09:09:03AM  25          MS. CALLSEN:  The complaint --
```

09:09:03AM  1          MR. ROBERTSON:  2011.  Judge, this is Brannon

09:09:06AM  2   Robertson.  It was in 2011.  We've got the complete hospital

09:09:08AM  3   records or what they've told us are her complete records, and

09:09:12AM  4   it doesn't have the infusion records that people would

09:09:17AM  5   normally look through to show what course of treatment she

09:09:24AM  6   had.  And it's just missing from the hospital records, but

09:09:25AM  7   those same hospital records do show that her oncologist

09:09:27AM  8   prescribed her Taxotere, and, again, discharge records --

09:09:32AM  9          THE COURT:  Okay.  All right.  Okay.  Okay.  Can we

09:09:35AM  10  stop?  Let me stop this train right now.  So we have -- and

09:09:35AM  11  the only objection is proof of use --

09:09:40AM  12         MS. CALLSEN:  Correct.

09:09:40AM  13         THE COURT:  -- correct?

09:09:41AM  14         MS. CALLSEN:  This is both -- both Sanofi and the

09:09:43AM  15  505(b)(2)'s are named.  So we don't know --

09:09:43AM  16         THE COURT:  Okay.

09:09:46AM  17         MS. CALLSEN:  -- if she took Taxotere nor whose

09:09:49AM  18  product it was.

09:09:49AM  19         THE COURT:  All right.  I need to see what records

09:09:51AM  20  have been produced.

09:09:51AM  21         MS. CALLSEN:  Okay.

09:09:51AM  22         THE COURT:  I don't know -- because we do ultimately

09:09:53AM  23  need to determine which product was used and that sounds like

09:09:56AM  24  that's going to be even more difficult.  Now, maybe -- maybe

09:10:00AM  25  there's something in insurance records, but let me -- you

| | | |
|---|---|---|
| 09:10:04AM | 1 | know, I need to roll this one over.  I know -- |
| 09:10:04AM | 2 | MS. CALLSEN:  Okay. |
| 09:10:06AM | 3 | THE COURT:  -- it's rolled over from April because I |
| 09:10:08AM | 4 | don't know what's been submitted and I'm really having a |
| 09:10:10AM | 5 | difficult time getting a picture.  And so -- |
| 09:10:14AM | 6 | MS. BERG:  Yes, Your Honor.  We can submit what's |
| 09:10:17AM | 7 | been provided as proof of use, and then hopefully the |
| 09:10:20AM | 8 | insurance records, things like that, will give product ID -- |
| 09:10:24AM | 9 | THE COURT:  Okay. |
| 09:10:24AM | 10 | MS. BERG:  -- NDC codes later on. |
| 09:10:24AM | 11 | THE COURT:  Okay.  And has that request been made to |
| 09:10:25AM | 12 | the insurance company? |
| 09:10:26AM | 13 | MR. ROBERTSON:  Judge, Brannon Robertson, yes, it |
| 09:10:30AM | 14 | has. |
| 09:10:30AM | 15 | THE COURT:  Okay. |
| 09:10:30AM | 16 | MR. ROBERTSON:  And so far we're just -- we're |
| 09:10:31AM | 17 | drilling a dry hole with it, but we're pushing on it. |
| 09:10:37AM | 18 | THE COURT:  All right.  Let's -- |
| 09:10:37AM | 19 | MS. CALLSEN:  This is a case that was filed in 2017. |
| 09:10:40AM | 20 | THE COURT:  I got that.  I got that.  But let me just |
| 09:10:43AM | 21 | see what's been submitted and then we'll proceed from there. |
| 09:10:43AM | 22 | MS. CALLSEN:  All right. |
| 09:10:47AM | 23 | THE COURT:  I have 2017 circled in my notes. |
| 09:10:47AM | 24 | MS. CALLSEN:  Okay.  Thank you. |
| 09:10:50AM | 25 | THE COURT:  Thank you.  We'll roll this one over. |

| | | |
|---|---|---|
| 09:10:53AM | 1 | MS. CALLSEN:  Thank you, Your Honor. |
| 09:10:54AM | 2 | THE COURT:  Thank you. |
| 09:10:54AM | 3 | MR. ROBERTSON:  Thank you, Judge. |
| 09:10:55AM | 4 | THE COURT:  Okay.  We have -- |
| 09:10:58AM | 5 | MS. CALLSEN:  Next -- Verna Hall is the next case, |
| 09:10:59AM | 6 | and the PFS was submitted, but it's mainly blank.  There's no |
| 09:11:04AM | 7 | medical information -- you know, there's medical -- no |
| 09:11:05AM | 8 | medical information.  Documentation is blank.  Labs are |
| 09:11:11AM | 9 | blank, you know.  Anyway, it was initially on here because |
| 09:11:15AM | 10 | there was no PFS and when it was submitted, it was mainly |
| 09:11:19AM | 11 | blank. |
| 09:11:20AM | 12 | THE COURT:  Ms. Gonzalez, you on the line? |
| 09:11:23AM | 13 | MS. GONZALEZ:  Yes.  Good morning, Your Honor.  I'm |
| 09:11:25AM | 14 | here on behalf of plaintiff, Verna Hall. |
| 09:11:36AM | 15 | First and foremost, I do want to definitely |
| 09:11:37AM | 16 | acknowledge all the deficiencies in the case.  To explain, my |
| 09:11:39AM | 17 | client, she lives in rural Kentucky.  She's been a little bit |
| 09:11:42AM | 18 | difficult to get ahold of, and the only way I can communicate |
| 09:11:44AM | 19 | with her is via mail.  So I've been trying my best to have |
| 09:11:50AM | 20 | her fill out the PFS, the Plaintiff Fact Sheet, more |
| 09:11:54AM | 21 | completely and authorization forms correctly.  We've gone |
| 09:11:59AM | 22 | back and forth a little bit via mail a couple times -- |
| 09:12:02AM | 23 | THE COURT:  Do you not have a phone number for her? |
| 09:12:05AM | 24 | MS. GONZALEZ:  I do.  I spoke with her on the phone. |
| 09:12:07AM | 25 | I tried to explain, you know, how to do it properly so that |

09:12:12AM  **1**   we are in compliance, but the last time I received her PFS

09:12:18AM  **2**   and authorization forms back, the authorization forms were

09:12:22AM  **3**   not filled out properly, she didn't properly complete them.

09:12:26AM  **4**   So I had to send them back to her, and I'm still waiting on

09:12:30AM  **5**   them to come back to me.

09:12:31AM  **6**          THE COURT:  Couldn't you -- couldn't you --

09:12:32AM  **7**   Ms. Gonzalez, I don't -- fill them out for her when you talk

09:12:37AM  **8**   to her on the phone and then send them with where she needs

09:12:40AM  **9**   to sign, to review and sign?  Because it sounds like, you

09:12:42AM  **10**  know, if you're talking to her and getting the information,

09:12:44AM  **11**  perhaps you can assist in actually filling it out then

09:12:48AM  **12**  sending it to her for review and signature to confirm that

09:12:54AM  **13**  the information is correct.  If she's having difficulty

09:12:57AM  **14**  actually filling it out, help her.

09:12:59AM  **15**         MS. GONZALEZ:  Yeah.  Yeah.  And I tried, Your Honor,

09:13:02AM  **16**  and I think this time I think I, you know, did the right

09:13:05AM  **17**  thing by marking where exactly she's supposed to sign.  Last

09:13:10AM  **18**  time she just failed to sign one of them because she thought

09:13:12AM  **19**  it didn't apply to her.  I explained to her that, you know,

09:13:15AM  **20**  whether --

09:13:15AM  **21**         THE COURT:  All right.  Well, this is what I'm going

09:13:17AM  **22**  to do.  This was filed at the end of last year.  I'm going to

09:13:21AM  **23**  grant -- we're going to roll this over to the next one.  I'll

09:13:24AM  **24**  give you 30 days to get it straight.  Thank you.  All right.

09:13:29AM  **25**         MS. CALLSEN:  Okay.  The next one is Gibbs Law Group.

09:13:32AM 1   It's June Watts, and there's no CMO 12 documentation.

09:13:39AM 2          THE COURT:  Ms. White, are you on the line?

09:13:42AM 3          MS. WHITE:  Hi, Your Honor.  Yes.

09:13:45AM 4          THE COURT:  Hello.  Ma'am?  Do you have --

09:13:50AM 5          MS. WHITE:  Your Honor, can you hear me?

09:13:52AM 6          THE COURT:  I can.  I'm asking you about the CMO 12

09:13:55AM 7   for June Watts.

09:14:01AM 8          MS. WHITE:  Yes, Your Honor.  We have made several

09:14:03AM 9   attempts with the infusion facility regarding June Watts.

09:14:09AM 10  We've reached out to Sylvester Comprehensive Cancer Center

09:14:13AM 11  for the NDC.  In addition, we've reached out to

09:14:19AM 12  Northwest Oncology & Hematology --

09:14:19AM 13         THE COURT:  But, ma'am, do you understand what you

09:14:21AM 14  just need to do in CMO 12A is provide an e-mail setting out

09:14:27AM 15  what actions you've taken to get that information?

09:14:35AM 16         MS. WHITE:  Yes, Your Honor.  We can get that to

09:14:38AM 17  counsel this week.

09:14:40AM 18         MS. CALLSEN:  There's a tab in MDL Centrality that

09:14:44AM 19  you have to submit the CMO 12 documentation, and if you need

09:14:47AM 20  help, you can contact plaintiff liaison counsel for

09:14:55AM 21  assistance.

09:14:55AM 22         THE COURT:  Okay.  Thank you.

09:14:55AM 23         So I'm going to give you 15 days to get that

09:14:58AM 24  completed so that you can forward -- it can be filed

09:15:00AM 25  appropriately.  But we're not expecting all of the

09:15:04AM 1   information.  We're expecting you to tell us what you're

09:15:08AM 2   doing to get the information.

09:15:09AM 3           MS. CALLSEN:  Exactly, so we know what's going on.

09:15:12AM 4           THE COURT:  Okay.  And I believe we have --

09:15:12AM 5           MS. WHITE:  Yes, Your Honor.

09:15:13AM 6           THE COURT:  That's the same thing with Erica

09:15:17AM 7   Gissendanner.  Is it the same issue and this is the same law

09:15:19AM 8   firm, correct?

09:15:20AM 9           MS. WHITE:  Yes, Your Honor.  We did send an update

09:15:23AM 10  for Erica, and we explained to counsel that if we didn't

09:15:28AM 11  receive the medical records within 30 days we would follow up

09:15:31AM 12  and give them another update and the 30 days is approaching.

09:15:35AM 13  So we will do that.

09:15:37AM 14          THE COURT:  Is it the same 12A problem?

09:15:40AM 15          MR. INSOGNA:  It is, Your Honor.  It's the CMO 12A

09:15:46AM 16  steps.

09:15:46AM 17          THE COURT:  Okay.  Ms. White, I need you to do the --

09:15:46AM 18          MS. WHITE:  Yes, Your Honor.

09:15:49AM 19          THE COURT:  -- exact same thing for both of those, go

09:15:51AM 20  to Centrality, find the appropriate tab, fill in the

09:15:54AM 21  paperwork, and take care of it.  And I will give you the --

09:15:58AM 22          MS. WHITE:  Yes, Your Honor.

09:15:59AM 23          THE COURT:  -- same 15 days to get this done.  And if

09:16:02AM 24  you have any difficulty, you should contact Ms. Berg.

09:16:08AM 25          MS. BERG:  Yes, please do.

09:16:09AM   **1**          Ms. Barrios and I were just speaking, Your Honor, and

09:16:11AM   **2**    it seems to be an issue that's coming up where counsel don't

09:16:14AM   **3**    not realize that CMO 12A just means -- the deficiency means

09:16:18AM   **4**    the e-mail versus actual product --

09:16:20AM   **5**          THE COURT:  Right.  You don't have to have the

09:16:21AM   **6**    information in hand.  You have to submit documentation -- I

09:16:25AM   **7**    mean, just submit an e-mail.

09:16:27AM   **8**          MS. BERG:  So we plan to send an additional e-mail to

09:16:31AM   **9**    plaintiff's counsel explaining -- try to take care of this

09:16:35AM   **10**   issue.

09:16:36AM   **11**         THE COURT:  Thank you, Ms. Berg.

09:16:39AM   **12**         Okay.  Next one.

09:16:41AM   **13**         MS. BRILLEAUX:  Yes, Your Honor.  Mary Miner and this

09:16:44AM   **14**   is no PTO 71A certification.

09:16:47AM   **15**         THE COURT:  Okay.  And this is Hodges & Foty.  Do I

09:16:50AM   **16**   have someone on the line for Hodges & Foty?

09:16:57AM   **17**         MS. BERG:  We were not able to get the name of

09:16:59AM   **18**   counsel that was going to appear for this case, but we can

09:17:03AM   **19**   try to reach out to them if we can --

09:17:06AM   **20**         THE COURT:  All right.  Let's just put them on the

09:17:07AM   **21**   end and let's see --

09:17:07AM   **22**         MS. BERG:  Thank you, Your Honor.

09:17:08AM   **23**         THE COURT:  -- where we are at the end of today's

09:17:11AM   **24**   docket.

09:17:11AM   **25**         Okay.  The next one would be Cindy Thomason.

09:17:17AM  1          MR. INSOGNA:  Yes, Your Honor.  Cindy Thomason also

09:17:23AM  2    has no PTO 71A certification and this is the Schmidt Law

09:17:29AM  3    Group.

09:17:30AM  4          THE COURT:  Schmidt Law Group.  Mr. Schmidt, are you

09:17:31AM  5    on the line?  Martin Schmidt?

09:17:38AM  6          What is it -- what do you have to say?

09:17:40AM  7          THE CASE MANAGER:  Star 6.

09:17:41AM  8          THE COURT:  Try star 6 because periodically we just

09:17:44AM  9    can't hear you.  Mr. Schmidt?  Okay.

09:17:50AM 10          MS. BERG:  We'll try to reach out to him --

09:17:53AM 11          THE COURT:  Oh, there he is.  Are you there?

09:17:55AM 12          MR. SCHMIDT:  Yes, Your Honor.  Martin Schmidt

09:17:57AM 13    appearing on behalf of Cindy Thomason.  PTO 71A was uploaded

09:18:06AM 14    a long time ago and it's -- the form is still in my file.  I

09:18:13AM 15    can upload it again.

09:18:18AM 16          MR. INSOGNA:  I can confirm, Your Honor, whether --

09:18:21AM 17          MR. SCHMIDT:  But I went on MDL Centrality and I saw

09:18:23AM 18    that it was uploaded, and I was confused because it says 71A

09:18:26AM 19    has been satisfied, but the deficiency notice that I received

09:18:29AM 20    did not include 71A and I responded to the deficiency notice

09:18:34AM 21    actually this week or last week.

09:18:37AM 22          THE COURT:  Okay.

09:18:39AM 23          MR. SCHMIDT:  It dealt with questions on the PFS.

09:18:42AM 24          THE COURT:  Okay.  What I'm going to do is grant

09:18:44AM 25    seven days to confirm compliance.  If there's difficulty, I'm

09:18:48AM 1    just going to ask you to e-mail Mr. Schmidt or Ms. Berg.

09:18:48AM 2         MR. INSOGNA:  Yes, Your Honor.  Will do.

09:18:52AM 3         THE COURT:  Thank you, sir.

09:18:54AM 4         Next one.

09:18:55AM 5         MS. BRILLEAUX:  Yes, Your Honor.  So I think we're

09:18:58AM 6    skipping down to Marilyn Ford --

09:18:58AM 7         THE COURT:  Yes.

09:19:01AM 8         MS. BRILLEAUX:  -- represented by Davis & Crump.

09:19:02AM 9    This is no before photos from within five years of treatment.

09:19:06AM 10   And just to let Your Honor know, we had before photos that

09:19:09AM 11   were submitted and dated 1980's, and then after the

09:19:13AM 12   deficiency, we had an after photo where the same photo from

09:19:17AM 13   the 1980's was submitted as a photo from 2003.  So we just

09:19:22AM 14   need to know which of the photos is dated correctly and which

09:19:27AM 15   one is not.

09:19:27AM 16        THE COURT:  Ms. Hardenstein?

09:19:30AM 17        MR. HARDENSTEIN:  Yes, good morning, Your Honor --

09:19:30AM 18        THE COURT:  Mister, excuse me.

09:19:28AM 19        MR. HARDENSTEIN:  -- Taylor Hardenstein for the

09:19:33AM 20   plaintiff.

09:19:33AM 21        This was an issue I discovered this weekend.  In

09:19:36AM 22   following up, I forgot the -- the issue.  So to give a little

09:19:38AM 23   back story, that before photo had been uploaded undated in

09:19:43AM 24   2017.  And then at some point, it had been re-dated in later

09:19:47AM 25   2017 to 1980.  I'm not sure where that date comes from.

09:19:52AM  **1**   Suffice to say, when we got the deficiency a couple weeks ago

09:19:55AM  **2**   to cure by the 18th, we pulled the undated photo from our

09:20:00AM  **3**   file, which is what we had scanned in, spoke with Ms. Ford,

09:20:04AM  **4**   and she had dated it to winter 2003, which would have been,

09:20:07AM  **5**   you know, three years before her treatment started in 2006.

09:20:11AM  **6**           We'd be happy to, you know, reach out and confirm to

09:20:15AM  **7**   get a hard date, you know, what she says, but that's what I

09:20:19AM  **8**   have so far separately --

09:20:22AM  **9**           THE COURT:  But when -- when did --

09:20:23AM  **10**          MR. HARDENSTEIN:  Sorry, Your Honor.

09:20:24AM  **11**          THE COURT:  Where did the 1980 date come from?

09:20:28AM  **12**          MR. HARDENSTEIN:  I'm not sure, Your Honor, because

09:20:29AM  **13**  that was not a date I had dated back then.  What I assume is

09:20:34AM  **14**  it might have come from the client, you know, who told one of

09:20:37AM  **15**  our paralegals or something.  I don't have any record of that

09:20:40AM  **16**  in our, you know, history of discussions with the client and

09:20:44AM  **17**  I was not aware of that when we spoke to her last week.  And

09:20:48AM  **18**  she looked at the photo fresh and gave a date of winter 2003.

09:20:54AM  **19**  And I have no reason to doubt that's not accurate.

09:20:57AM  **20**          THE COURT:  So -- okay.  The photo is 2003.  I've

09:21:03AM  **21**  got -- I don't know what else --

09:21:05AM  **22**          MS. BRILLEAUX:  I think we would just ask that

09:21:07AM  **23**  counsel confirm with the client that the 2003 date is the

09:21:10AM  **24**  accurate date as opposed to the 1980's date because as of

09:21:14AM  **25**  right now we have two of the same photos with two completely

| | | |
|---|---|---|
| 09:21:18AM | 1 | different dates. |
| 09:21:20AM | 2 | THE COURT:  Right.  Okay.  Mr. Hardenstein -- |
| 09:19:28AM | 3 | MR. HARDENSTEIN:  We will get that fixed, Your Honor. |
| 09:21:23AM | 4 | THE COURT:  Okay.  And send an e-mail please to |
| 09:21:25AM | 5 | Ms. Brilleaux.  Thank you. |
| 09:21:26AM | 6 | MR. HARDENSTEIN:  Okay.  Will do.  Thank you. |
| 09:21:34AM | 7 | MS. CALLSEN:  Tammy Brown, this is with the Scott |
| 09:21:39AM | 8 | Vicknair firm, and this is also a rollover from last month. |
| 09:21:43AM | 9 | We did get a before photo, but the plaintiff's hair is |
| 09:21:48AM | 10 | cropped out.  So if they could just take a look at what was |
| 09:21:51AM | 11 | submitted and submit a photo that actually shows her scalp. |
| 09:21:59AM | 12 | THE COURT:  Ms. Greene? |
| 09:22:01AM | 13 | MS. GREENE:  Good morning, Your Honor.  Yes.  I |
| 09:22:01AM | 14 | saw -- I apologize.  If you remember last time, my internet |
| 09:22:05AM | 15 | had been knocked out, so I couldn't give you the information. |
| 09:22:08AM | 16 | But, yes, there is one photo and it does look like |
| 09:22:11AM | 17 | part of her hair was cropped out.  And so I asked her for |
| 09:22:14AM | 18 | another copy of that.  And I'm just waiting -- in fact, I was |
| 09:22:17AM | 19 | texting with her right before we got on this call and I'm |
| 09:22:20AM | 20 | just waiting for her to send it to me so we will submit that |
| 09:22:23AM | 21 | as soon as we get it. |
| 09:22:25AM | 22 | THE COURT:  Okay.  I'm going to grant 15 days to get |
| 09:22:28AM | 23 | that cured.  Thank you, ma'am. |
| 09:22:35AM | 24 | Barbara Peters. |
| 09:22:36AM | 25 | MS. BRILLEAUX:  Yes, Your Honor, this is also Scott, |

| | | |
|---|---|---|
| 09:22:40AM | 1 | Vicknair, Hair & Checki, and this is just a missing insurance |
| 09:22:41AM | 2 | authorization for Barbara Peters. |
| 09:22:43AM | 3 | THE COURT:  Ms. Greene. |
| 09:22:44AM | 4 | MS. GREENE:  Again, Your Honor, this is Jennifer |
| 09:22:46AM | 5 | Greene on behalf of Ms. Peters.  And we have sent Ms. Peters |
| 09:22:51AM | 6 | the insurance authorization.  I believe there was some |
| 09:22:53AM | 7 | problem with how it was mailed.  It wasn't mailed with a |
| 09:22:55AM | 8 | certification or anything.  So I asked my paralegal to mail |
| 09:22:58AM | 9 | it FedEx so that we can be sure we get it back, and as soon |
| 09:23:02AM | 10 | as we get it back, we'll submit it. |
| 09:23:05AM | 11 | THE COURT:  All right.  I'm going to grant 30 days to |
| 09:23:08AM | 12 | get that because the mail -- |
| 09:23:08AM | 13 | MS. GREENE:  Thank you, Your Honor. |
| 09:23:09AM | 14 | THE COURT:  -- and even FedEx has been sometimes |
| 09:23:14AM | 15 | problematic. |
| 09:23:14AM | 16 | MS. GREENE:  That is our new normal unfortunately, |
| 09:23:17AM | 17 | Your Honor. |
| 09:23:17AM | 18 | THE COURT:  Thank you. |
| 09:23:18AM | 19 | Okay.  Let's go to the next one. |
| 09:23:23AM | 20 | MS. CALLSEN:  The next plaintiff is Caroline Boyd. |
| 09:23:23AM | 21 | This is a rollover from the Zoll Kranz firm, and, again, this |
| 09:23:23AM | 22 | was the deceased plaintiff and last month they told us they |
| 09:23:33AM | 23 | were going to look into whether they plan to proceed or find |
| 09:23:35AM | 24 | next of kin, so we just need an update. |
| 09:23:37AM | 25 | THE COURT:  Mr. Weiman.  Star 6.  Hello? |

| | | |
|---|---|---|
| 09:23:47AM | 1 | MR. WEIMAN:  This is Mr. Weiman.  Can you hear me? |
| 09:23:51AM | 2 | THE COURT:  Yes. |
| 09:23:51AM | 3 | MR. WEIMAN:  Thank you, Your Honor. |
| 09:23:52AM | 4 | THE COURT:  Remind people, star 6.  Okay.  Thank you. |
| 09:23:55AM | 5 | Yes, sir. |
| 09:23:56AM | 6 | MR. WEIMAN:  Yes, for plaintiff Caroline Boyd, we |
| 09:23:58AM | 7 | have been in contact with her next of kin.  We've only |
| 09:24:01AM | 8 | received written confirmation from two of the five siblings, |
| 09:24:07AM | 9 | and they have indicated that they did not plan to open an |
| 09:24:11AM | 10 | estate and move forward with the case.  However, since we |
| 09:24:14AM | 11 | don't have written conversation from the other three, we're |
| 09:24:17AM | 12 | not at this time able to file a consent to dismissal, to |
| 09:24:22AM | 13 | stipulate to dismissal at this time -- |
| 09:24:24AM | 14 | THE COURT:  Mr. Weiman, do you -- have you -- do you |
| 09:24:26AM | 15 | have contact with them at all?  I mean, have you -- I know |
| 09:24:30AM | 16 | you said I haven't received written confirmation, but do you |
| 09:24:34AM | 17 | have an address?  Have you had some contact with them? |
| 09:24:40AM | 18 | MR. WEIMAN:  Only with two of the siblings of the |
| 09:24:42AM | 19 | client, Your Honor. |
| 09:24:42AM | 20 | THE COURT:  I guess my question is, do you know where |
| 09:24:44AM | 21 | the other three are? |
| 09:24:46AM | 22 | MR. WEIMAN:  We don't.  We have not had communication |
| 09:24:50AM | 23 | with them.  We're working with the other two siblings at this |
| 09:24:53AM | 24 | time to reach out to them and, you know, get that |
| 09:24:59AM | 25 | communication, but that has not happened yet at this time. |

09:25:02AM   1          MS. CALLSEN:  When was the last contact?  Can I just

09:25:04AM   2    ask that?

09:25:04AM   3          MR. WEIMAN:  We sent an e-mail to one of the --

09:25:05AM   4          MS. CALLSEN:  Or attempt to contact.

09:25:06AM   5          MR. WEIMAN:  Yes, Your Honor.  We e-mailed yesterday

09:25:11AM   6    with a sibling who was reaching out to the other siblings.

09:25:16AM   7          THE COURT:  Okay.  I'm going to -- I understand that

09:25:20AM   8    you're in a difficult situation, so we're going to roll this

09:25:24AM   9    over for 30 days and ask you to make aggressive attempts to

09:25:29AM   10   communicate with the remaining three.  And if we can't, then

09:25:35AM   11   it's going to -- what I would consider that you're unable to

09:25:37AM   12   contact.  So we'll roll this one over.

09:25:41AM   13         MR. WEIMAN:  Thank you, Your Honor.

09:25:48AM   14         MS. BRILLEAUX:  Your Honor, the next case is skipping

09:25:50AM   15   ahead to Maxine Doss.  Lina Hawkins was one of the cases that

09:25:55AM   16   was dismissed by stipulation.

09:25:57AM   17         For Maxine Doss who is represented by The Goss Law

09:25:59AM   18   Firm, there are two separate deficiencies.  The first is

09:26:02AM   19   we're missing a psychiatric records authorization and the

09:26:05AM   20   first is that the PFS is missing information for the

09:26:09AM   21   plaintiff's second cancer diagnosis.  This is kind of a new

09:26:15AM   22   issue, so I just wanted to give you some context of why it's

09:26:19AM   23   a necessary deficiency.  It has also affected the way we've

09:26:23AM   24   been able to look at proof of use photo submissions because

09:26:26AM   25   of when people have had subsequent chemotherapy.  So that's

09:26:27AM   1   why we're addressing it today.

09:26:28AM   2           THE COURT:  Okay.  Thank you.

09:26:31AM   3           From The Goss Law Firm, Mr. Goss, are you on the

09:26:36AM   4   line?

09:26:36AM   5           MR. GOSS:  Yes, Your Honor, Peter Goss here on behalf

09:26:39AM   6   of plaintiff.  With regard to the psychiatric authorization,

09:26:43AM   7   that was uploaded, I believe, yesterday to Centrality.

09:26:47AM   8           With regard to the second cancer diagnosis, that box

09:26:52AM   9   was inadvertently checked incorrectly when the information

09:26:57AM  10   was -- by my staff, when the information was put into

09:27:01AM  11   Centrality.  I believe that has been corrected.  There was

09:27:04AM  12   not a second cancer diagnosis or treatment.  So that has been

09:27:07AM  13   corrected.

09:27:08AM  14           THE COURT:  Court's going to grant seven days to

09:27:10AM  15   confirm compliance.

09:27:13AM  16           MS. BRILLEAUX:  Thank you, Your Honor.  We'll take

09:27:14AM  17   the seven days to confirm the compliance with both of those

09:27:16AM  18   deficiencies.

09:27:17AM  19           Okay.  The --

09:27:17AM  20           MR. GOSS:  Thank you, Your Honor.

09:27:18AM  21           THE COURT:  Thank you.

09:27:18AM  22           MS. BRILLEAUX:  Thank you.

09:27:19AM  23           The next case is Carolyn Hansen represented by the

09:27:29AM  24   Pulaski Law Firm, and this is no PTO 71A.

09:27:32AM  25           THE COURT:  All right.  Is it Ms. LaMacchia?  Star 6,

| | | |
|---|---|---|
| 09:27:38AM | 1 | please.  Ms. LaMacchia? |
| 09:27:46AM | 2 | MS. BERG:  We can reach out to counsel to see -- |
| 09:27:49AM | 3 | THE COURT:  Okay.  Let's just -- |
| 09:27:49AM | 4 | MS. LAMACCHIA:  I'm here.  I'm here, Your Honor. |
| 09:27:52AM | 5 | THE COURT:  Everybody -- it's the star 6 thing. |
| 09:27:55AM | 6 | Okay. |
| 09:27:57AM | 7 | MS. LAMACCHIA:  I got it.  Can you hear me? |
| 09:27:59AM | 8 | THE COURT:  Yes, ma'am. |
| 09:28:00AM | 9 | MS. LAMACCHIA:  Okay.  Yeah.  We just have not had |
| 09:28:04AM | 10 | any luck receiving back PTO 71A from Ms. Hansen.  This is the |
| 09:28:08AM | 11 | only thing that's absolute deficient in her case.  Everything |
| 09:28:11AM | 12 | else, you know, Ms. Hansen's been compliant with -- |
| 09:28:14AM | 13 | THE COURT:  What's the problem with 71A?  Why can't |
| 09:28:18AM | 14 | she just -- |
| 09:28:18AM | 15 | MS. LAMACCHIA:  We have not received it back. |
| 09:28:21AM | 16 | THE COURT:  Are you in contact with her? |
| 09:28:23AM | 17 | MS. LAMACCHIA:  Yes, we are in contact. |
| 09:28:26AM | 18 | THE COURT:  Okay.  I'm going to give you 30 days only |
| 09:28:30AM | 19 | because the mail is so God awful, and you need to advise her |
| 09:28:35AM | 20 | that if this is not submitted within the next 30 days that |
| 09:28:39AM | 21 | the case is going to be dismissed. |
| 09:28:42AM | 22 | MS. LAMACCHIA:  Absolutely, Your Honor.  Thank you |
| 09:28:44AM | 23 | very much. |
| 09:28:45AM | 24 | THE COURT:  Thank you, Your Honor. |
| 09:28:45AM | 25 | MS. BRILLEAUX:  Your Honor, Teresa Elvira Howell is a |

09:28:49AM  1   late cure, so we're going to skip that for now.

09:28:52AM  2       And then the next one is Deborah Reeves also with

09:28:55AM  3   Pulaski Law Firm, same deficiency, no PTO 71A.

09:28:58AM  4       THE COURT:  Ms. LaMacchia?

09:29:01AM  5       MS. LAMACCHIA:  Yes, Your Honor.  Ms. Reeves cannot

09:29:03AM  6   sign a PTO 71A since she is deceased.  She passed away in

09:29:11AM  7   January of 2020.  We're in the process of locating the proper

09:29:12AM  8   representative of the estate.  We've been in touch with the

09:29:13AM  9   kids, but we're not going to get back a PTO 71A since she's

09:29:18AM 10   deceased.

09:29:19AM 11       THE COURT:  But she's -- she's been deceased for over

09:29:20AM 12   a year now.  And what efforts have been made to open an

09:29:24AM 13   estate?

09:29:25AM 14       MS. LAMACCHIA:  So there are five children and there

09:29:28AM 15   is a daughter who is in the process of doing so.  I'm not

09:29:35AM 16   sure what the issue is, Your Honor.  We have been in contact

09:29:37AM 17   with the family.

09:29:41AM 18       THE COURT:  Okay.  This needs -- this has now almost

09:29:44AM 19   been a year and a half, and I don't mean to be insensitive,

09:29:48AM 20   but we can't just -- I'm going to give you 60 days to get

09:29:54AM 21   this done, and they need to understand there's 60 days and

09:30:02AM 22   then they have to be substituted so that this matter is

09:30:05AM 23   appropriately before the court.

09:30:06AM 24       MS. LAMACCHIA:  Yes, Your Honor.

09:30:07AM 25       MS. BRILLEAUX:  Thank you, Your Honor.  And I do

| | | |
|---|---|---|
| 09:30:08AM | 1 | believe we are skipping the next -- |
| 09:30:08AM | 2 | THE COURT:  Two, yeah -- |
| 09:30:11AM | 3 | MS. BRILLEAUX:  -- three Roberts & Roberts. |
| 09:30:15AM | 4 | THE COURT:  So we're at Gwen Lance. |
| 09:30:18AM | 5 | MR. INSOGNA:  Yes, Your Honor.  And for Ms. Lance and |
| 09:30:21AM | 6 | the next two cases, Deborah Myers and Bonita Webster, these |
| 09:30:25AM | 7 | are all no CMO 12 cases.  We did receive an e-mail from |
| 09:30:30AM | 8 | plaintiff's counsel indicating the efforts they had made to |
| 09:30:34AM | 9 | obtain proof of use, so I think it may just be an issue of |
| 09:30:36AM | 10 | confusion about what CMO requires.  I don't know whether |
| 09:30:39AM | 11 | they've made efforts on product identification, but we don't |
| 09:30:40AM | 12 | have an e-mail. |
| 09:30:41AM | 13 | THE COURT:  Mr. LaPalo? |
| 09:30:44AM | 14 | MR. LAPALO:  Yes.  Good morning, Your Honor, |
| 09:30:46AM | 15 | Christopher LaPalo here from Napoli Shkolnik.  How are you? |
| 09:30:51AM | 16 | THE COURT:  I'm fine. |
| 09:30:43AM | 17 | MR. LAPALO:  For plaintiff, Gwen Lance, we've tried |
| 09:30:56AM | 18 | to get the NDC codes, but the facility indicated to us -- Mr. |
| 09:31:01AM | 19 | -- they didn't have any NDC codes. |
| 09:31:05AM | 20 | THE COURT:  I don't need -- I don't mean to cut you |
| 09:31:08AM | 21 | off, Mr. LaPalo.  You don't need to tell me what you did. |
| 09:31:11AM | 22 | You need to submit the form in Centrality by e-mail to the |
| 09:31:15AM | 23 | defense counseling telling them what you did.  That's what |
| 09:31:18AM | 24 | CMO 12A requires.  And I believe what Ms. Berg told me |
| 09:31:23AM | 25 | earlier is an e-mail is going to go out to plaintiffs' |

09:31:26AM  1   counsel because apparently this is a problem where people

09:31:29AM  2   don't understand the process.  So there is a -- it's a tab on

09:31:32AM  3   MDL Centrality, and you fill out the form and e-mail it.  And

09:31:35AM  4   I need you to do that for the next three cases, and I'm going

09:31:39AM  5   to give you 15 days to do that.

09:31:42AM  6           MR. LAPALO:  Okay.  Thank you, Your Honor.

09:31:47AM  7           THE COURT:  And if you have any trouble, call Ms.

09:31:49AM  8   Berg.

09:31:49AM  9           MR. LAPALO:  I will.  Thank you.

09:31:51AM 10           THE COURT:  Okay.

09:31:54AM 11           MS. BRILLEAUX:  Your Honor, I think we are skipping

09:31:58AM 12   -- Cindra Henderson is a late cure which will be addressed

09:32:00AM 13   last.

09:32:00AM 14           The next case is Dusty Roth represented by Pendley,

09:32:05AM 15   Baudin & Coffin.  And this is an issue with authorizations.

09:32:11AM 16   The insurance authorization is not witnessed and other

09:32:13AM 17   authorizations are not dated.  Also no PTO 71A certification.

09:32:18AM 18           THE COURT:  Okay.  Mr. Fontenot?

09:32:23AM 19           MR. FONTENOT:  Yes, Your Honor.  We spoke to the

09:32:25AM 20   client and she executed and mailed out both the

09:32:27AM 21   authorizations and the PTO 71A statement on May 13th.  We

09:32:30AM 22   just have not yet received it in the mail.  As soon as we do

09:32:33AM 23   receive it, we can upload it to Centrality.

09:32:35AM 24           THE COURT:  Okay.  Mr. Fontenot, I'm going to give

09:32:37AM 25   you 15 days.  If for some reason, I wish -- well, I can't say

09:32:43AM  1   this.  If for some reason it's not there in 15 days, you need

09:32:47AM  2   to contact defense counsel and not wait.  You can just let

09:32:53AM  3   them know you're still waiting or confirm with your client

09:32:57AM  4   that it was indeed mailed on the 13th.

09:33:00AM  5           MR. FONTENOT:  Okay.  Yes, Your Honor.

09:33:01AM  6           THE COURT:  So I'm going to grant 15 days.

09:33:04AM  7           MS. BRILLEAUX:  The next case, Your Honor, is Nina

09:33:07AM  8   Williams, no PTO 71A.

09:33:10AM  9           THE COURT:  Mr. Fontenot?

09:33:10AM  10          MR. FONTENOT:  And -- Yes, Your Honor.  Just to save

09:33:11AM  11  time, the next two clients that we have, Nina Williams and

09:33:15AM  12  Kathryn Winston Allen, they're both in the exact same

09:33:16AM  13  situation as the previous client.  So we would ask for, you

09:33:19AM  14  know, 15 days and we will confer with defense counsel about

09:33:23AM  15  that.

09:33:23AM  16          THE COURT:  Okay.  I'm going to grant 15 days.

09:33:26AM  17          MS. BRILLEAUX:  Thank you, Your Honor.

09:33:29AM  18          THE COURT:  Okay.

09:33:32AM  19          MS. CALLSEN:  Okay.  The next two are with the Allen

09:33:36AM  20  Nolte firm, Teresa Beachem and Jami Dunbar.  And the issue is

09:33:43AM  21  there's no CMO 12 documentation.  They were initially listed

09:33:47AM  22  for numerous others that they have cured, but still no CMO

09:33:57AM  23  12.

09:33:57AM  24          THE COURT:  Ms. Nolte?  Are you on the --

09:33:57AM  25          MS. NOLTE:  Good morning, Your Honor.  Can you hear

09:33:58AM 1    me?

09:33:58AM 2            THE COURT:  Yes, ma'am.

09:33:58AM 3            MS. CALLSEN:  Actually, it's the next three, I'm

09:33:58AM 4    sorry.  I stand corrected.

09:33:59AM 5            THE COURT:  The next three.  That would include Karen

09:34:03AM 6    Fortsch.  I don't how to say that name, but the CMO 12 --

09:34:06AM 7            MS. NOLTE:  Correct.  And Betty Olsson.

09:34:06AM 8            MS. CALLSEN:  Correct, Betty -- yeah.

09:34:08AM 9            MS. NOLTE:  I think we're in -- excuse me.  I'm

09:34:10AM 10   sorry.  I think we're in the same position as some others

09:34:13AM 11   because we have been moving forward with this process and I'm

09:34:16AM 12   trying to get the NDC's.  We would just request a little

09:34:22AM 13   extra time to get whatever uploaded to Centrality that we

09:34:24AM 14   need to --

09:34:24AM 15           THE COURT:  Ma'am, that's not what you need to do for

09:34:28AM 16   CMO -- well, you need to.  You need to proceed in attempting

09:34:33AM 17   to get the codes, but what CMO 12A requires is that you fill

09:34:39AM 18   out the form advising what steps you have taken.  So I just

09:34:44AM 19   need you to go to MDL Centrality, pull down the tab for CMO

09:34:52AM 20   12A, complete that form that says these are the steps I've

09:34:56AM 21   taken to acquire this information.  If you should have any

09:34:59AM 22   difficulty, you should call Ms. Berg.  But I'm going to grant

09:35:03AM 23   --

09:35:03AM 24           MS. NOLTE:  Yes, Your Honor.

09:35:03AM 25           THE COURT:  -- 15 days to submit that information to

09:35:07AM 1   defense counsel.  You don't have to have the information in

09:35:09AM 2   hand.  You have to just tell us what you've done, what steps

09:35:13AM 3   you've taken to get the information.  Okay?

09:35:18AM 4           MS. NOLTE:  I understand, Your Honor.  Thank you very

09:35:20AM 5   much.

09:35:20AM 6           THE COURT:  15 days.

09:35:21AM 7           MS. CALLSEN:  And that's the same for Karen Fortsch

09:35:24AM 8   and Betty Olsson too?

09:35:27AM 9           THE COURT:  Yes, ma'am.

09:35:27AM 10          MS. BERG:  Your Honor, counsel can look for an e-mail

09:35:30AM 11  from liaison counsel providing --

09:35:35AM 12          THE COURT:  Liaison counsel --

09:35:35AM 13          MS. BERG:  -- by the end of the day --

09:35:35AM 14          THE COURT:  Yes --

09:35:35AM 15          MS. BERG:  But please feel free to call me if you'd

09:35:35AM 16  like to discuss.

09:35:37AM 17          THE COURT:  Okay.  Liaison counsel will send an

09:35:39AM 18  e-mail and it might be soon --

09:35:39AM 19          MS. BERG:  Be soon.

09:35:42AM 20          THE COURT:  If I were drafting the e-mail, I would

09:35:44AM 21  say, step 1, go here, pull down this form; step 2, complete

09:35:49AM 22  the form.  I would be very clear because I think people are

09:35:52AM 23  confused and I understand why.

09:35:56AM 24          MS. BERG:  Yes, Your Honor.

09:35:57AM 25          MS. CALLSEN:  We appreciate your IT assistance, Your

09:35:59AM   1   Honor.

09:35:59AM   2        THE COURT:  Well, we have an IT department here that

09:36:02AM   3   sends those kinds of instructions for dummies all the time

09:36:07AM   4   because we need pictures of what it's supposed to look like

09:36:11AM   5   and they tell us.  Do this.  It really is -- they really do

09:36:15AM   6   send pictures and it helps a lot.  Okay.  Thank you.

09:36:22AM   7        MS. BRILLEAUX:  I think we're skipping Carol

09:36:25AM   8   Crawford, Your Honor --

09:36:25AM   9        THE COURT:  Yes, ma'am.

09:36:25AM  10        MS. BRILLEAUX:  -- as a late cure.  We'll get to that

09:36:27AM  11   one last.

09:36:29AM  12        Melinda Lopez represented by Bachus & Schanker.

09:36:34AM  13        THE COURT:  Mr. Elliott?

09:36:36AM  14        MR. ELLIOTT:  Your Honor, this is Chris Elliott.

09:36:38AM  15   Yeah, we need an extension on this one, 15 days.  We have a

09:36:41AM  16   new address for this client, and we'd just like one last

09:36:44AM  17   opportunity to get her compliant.

09:36:46AM  18        THE COURT:  Court's going to grant 15 days.

09:36:51AM  19        MS. BRILLEAUX:  Okay.  The next case, Your Honor, is

09:36:54AM  20   Jackie McClendon.  This is another shell PFS where the PFS is

09:37:05AM  21   largely blank.  We have a couple of issues with this one.

09:37:08AM  22   We're also missing PTO 71A.

09:37:12AM  23        And we have also received a photo that kind of raised

09:37:16AM  24   a red flag in terms of timing for the date and wanted -- this

09:37:21AM  25   is another situation where the photo is dated 2005.  It

09:37:30AM 1    doesn't look like it's from 2005, and in one of the

09:37:33AM 2    plaintiff's current present day photos, you can actually see

09:37:37AM 3    a copy of that photo.  It has since been cropped and the

09:37:42AM 4    original photo has two children in it.  The plaintiff's PFS

09:37:46AM 5    doesn't tell us the birthdays of the children, so we haven't

09:37:51AM 6    been able to do any analysis on the potential day, but we do

09:37:53AM 7    think it's an easy fix.  And so we were hoping that counsel

09:37:57AM 8    could confirm that -- the birth dates of the children to

09:38:01AM 9    properly date the photo.

09:38:02AM 10        THE COURT:  Mr. Elliott?

09:38:04AM 11        MR. ELLIOTT:  This client we spoke to and I have

09:38:08AM 12   notes here in late summer 2020, but we've lost contact with

09:38:12AM 13   this client.  We would like -- I guess we'd just like another

09:38:16AM 14   15 days, one last shot.  We sent her letters, e-mails, texts,

09:38:20AM 15   and we've been trying to gain her cooperation to get this

09:38:25AM 16   fixed.  And we would like 15 more days --

09:38:28AM 17        THE COURT:  Mr. Elliott, I'm going to give you

09:38:31AM 18   15 days.  Listen to me, not 16, 15.

09:38:34AM 19        MR. ELLIOTT:  Sounds good, Your Honor.  Thank you.

09:38:37AM 20        MS. BRILLEAUX:  And, Your Honor, just to confirm,

09:38:38AM 21   that's for all three deficiencies?  Is that correct?

09:38:41AM 22        THE COURT:  Yeah.

09:38:43AM 23        MS. BRILLEAUX:  Thank you.

09:38:44AM 24        And I think the next two Bachus cases are late cures

09:38:49AM 25   that we will address at the end.

|   |   |   |
|---|---|---|
| 09:38:51AM | 1 | THE COURT:  Okay.  Mr. Bern. |
| 09:38:55AM | 2 | MR. INSOGNA:  Your Honor, the next cases are with the |
| 09:38:58AM | 3 | Marc Bern law firm, and several of them are for no CMO 12 |
| 09:39:03AM | 4 | efforts.  I believe on some of these there were e-mails last |
| 09:39:06AM | 5 | night that laid forth steps, so some of them may be late |
| 09:39:11AM | 6 | cures that were not caught yet.  I'm not certain.  We can |
| 09:39:15AM | 7 | start with Eleanor Zubee. |
| 09:39:15AM | 8 | THE COURT:  Okay.  Let me ask this, Ms. Hennessy, |
| 09:39:18AM | 9 | because I'm looking at your long list of deficiencies and it |
| 09:39:22AM | 10 | appears that much of it is no CMO 12A.  So as to those -- and |
| 09:39:28AM | 11 | I'm going to read those names -- I'm going to grant you |
| 09:39:32AM | 12 | 15 days to cure them and you should expect an e-mail from |
| 09:39:38AM | 13 | liaison counsel as to what CMO 12A requires with careful |
| 09:39:45AM | 14 | instructions. |
| 09:39:47AM | 15 | Now wait a minute.  Ms. Hennessy, are you on the |
| 09:39:49AM | 16 | line? |
| 09:39:50AM | 17 | MS. HENNESSY:  Yes, Your Honor. |
| 09:39:50AM | 18 | THE COURT:  Okay.  So let's go through those CMO |
| 09:39:53AM | 19 | 12A's and some of them are Sanofi and some of them are 505's, |
| 09:39:58AM | 20 | but I'm treating them all the same and we don't need to waste |
| 09:40:01AM | 21 | time switching people. |
| 09:40:02AM | 22 | MR. INSOGNA:  And as I said, Your Honor, it may be |
| 09:40:05AM | 23 | that some of them were addressed -- |
| 09:40:06AM | 24 | THE COURT:  Well, we have 15 days to figure that out. |
| 09:40:06AM | 25 | Eleanor Zubee -- |

09:40:06AM  1        MS. HENNESSY:  Thank you, Your Honor.

09:40:11AM  2        THE COURT:  -- 15 days; Orelia Castille, 15 days;

09:40:15AM  3   Deborah Clelland, 15 days; Donna Hegenbart, 15 days; Joan

09:40:23AM  4   Jones, 15 days; Valerie Jones, 15 days; Valerie Olin,

09:40:32AM  5   15 days; Elena Petty, 15 days; Cindy Rathgeber, 15 days, and

09:40:39AM  6   Janet Ross, 15 days.

09:40:40AM  7        Okay.  Now let's go through the rest of these that we

09:40:46AM  8   haven't resolved.

09:40:47AM  9        Let's start with Sara Davis.

09:40:51AM  10       MS. CALLSEN:  Okay.  Sara Davis, there is no PFS

09:40:56AM  11  submitted along with all the declarations as well and the CMO

09:41:03AM  12  12, but the main thing, no PFS.

09:41:07AM  13       THE COURT:  Ms. Hennessy?

09:41:10AM  14       MS. HENNESSY:  Yes, Your Honor.  A PFS was submitted

09:41:13AM  15  yesterday for this, and I was notified that we did just

09:41:16AM  16  receive the PFS with the final authorizations yesterday.  You

09:41:22AM  17  know, it was -- we weren't holding on to these

09:41:25AM  18  authorizations.  The client just got them to us.  I believe

09:41:28AM  19  it was Friday and the paralegal reviewed it yesterday.

09:41:32AM  20       THE COURT:  I'm going to grant seven days to confirm

09:41:34AM  21  compliance.

09:41:37AM  22       Ms. Hennessy, you know how this drives me crazy,

09:41:42AM  23  because we have a process with deadlines in place and we do

09:41:44AM  24  this and we expect everyone to comply.  But I'm going to

09:41:48AM  25  grant seven days to confirm compliance.

09:41:50AM **1**        Okay.

09:41:50AM **2**            MS. HENNESSY:  Thank you, Your Honor.

09:41:52AM **3**            THE COURT:  Cheryl Freeman.

09:41:53AM **4**            MS. BRILLEAUX:  This is, Your Honor, no CMO 12A and

09:41:58AM **5**    also no PTO 71A.

09:42:03AM **6**            THE COURT:  Ms. Hennessy?

09:42:06AM **7**            MS. HENNESSY:  The PTO 71 written statement was

09:42:09AM **8**    uploaded 05/20, and the CMO 12A is the issue where there was

09:42:16AM **9**    a miscommunication on what that required.

09:42:22AM **10**            THE COURT:  Okay.  05/20, I'm going to grant seven

09:42:25AM **11**    days to confirm compliance as to 71A.  As to the CMO 12A, I'm

09:42:30AM **12**    going to grant 15 days to cure.

09:42:33AM **13**            MS. BRILLEAUX:  Thank you, Your Honor.

09:42:36AM **14**            THE COURT:  Okay.  Then we go to Theresa Kalsky.

09:42:38AM **15**            MS. CALLSEN:  Right.  This is a rollover from last

09:42:41AM **16**    month, Your Honor.  This was the one where we just had a

09:42:42AM **17**    screen shot from a phone of a plan.  Since then, she has

09:42:45AM **18**    submitted some additional documentation, but it still

09:42:49AM **19**    doesn't -- it's still no proof of use that she actually used

09:42:52AM **20**    Taxotere.  And I sent those submissions to Claire Berg, who

09:42:58AM **21**    was going to work with plaintiff's counsel, and that was

09:43:01AM **22**    probably 10 days ago.  So you want to provide an update?

09:43:04AM **23**            MS. BERG:  Sure.  I've spoken with counsel and so she

09:43:06AM **24**    did upload a screen shot of the infusions now with the

09:43:10AM **25**    patient's name.  Those infusions don't seem to identify

09:43:14AM   1   specifically Taxotere, but there is a chemotherapy plan

09:43:19AM   2   identifying Taxotere every three weeks and the infusions are

09:43:20AM   3   every three weeks.  I'm still working with counsel to try to

09:43:26AM   4   see if there's more records that can be requested, insurance

09:43:30AM   5   company, et cetera, et cetera, happy to keep doing that in

09:43:33AM   6   the next week or so.

09:43:34AM   7          MS. CALLSEN:  Yeah, the records just say chemo

09:43:37AM   8   infusion.

09:43:38AM   9          THE COURT:  They don't say Taxotere at all anywhere?

09:43:41AM  10          MS. CALLSEN:  No.

09:43:42AM  11          MS. BERG:  No.  But there is a chemotherapy plan from

09:43:42AM  12   her oncologist saying the plan is --

09:43:42AM  13          THE COURT:  Taxotere.

09:43:47AM  14          MS. BERG:  -- Taxotere and the infusions line up with

09:43:48AM  15   that plan.

09:43:50AM  16          THE COURT:  Okay.  There may be enough there to give

09:43:54AM  17   you an opportunity to dig just a little more.  This was filed

09:43:58AM  18   in 2019.  So we're running out of time.

09:44:01AM  19          MS. BERG:  I understand, Your Honor.

09:44:02AM  20          THE COURT:  I'm going to grant 30 days --

09:44:02AM  21          MS. BERG:  Thank you, Your Honor.

09:44:05AM  22          THE COURT:  -- to get something more definitive than

09:44:06AM  23   what you have.

09:44:07AM  24          MS. CALLSEN:  Thank you.

09:44:09AM  25          THE COURT:  All right.  And I believe that we have --

| | | |
|---|---|---|
| 09:44:11AM | 1 | MR. INSOGNA:  Your Honor, the next case is Sarah |
| 09:44:14AM | 2 | Menard, and we have a Plaintiff Fact Sheet but none of the |
| 09:44:19AM | 3 | other documentation, no proof of use, proof of injury, |
| 09:44:20AM | 4 | declaration, authorizations, et cetera. |
| 09:44:24AM | 5 | THE COURT:  Ms. Hennessy? |
| 09:44:26AM | 6 | MS. HENNESSY:  So this case we have already had |
| 09:44:30AM | 7 | dismissed back in -- the end of 2019 I believe.  So we can |
| 09:44:37AM | 8 | put in a dismissal. |
| 09:44:41AM | 9 | THE COURT:  Okay.  This matter is dismissed with |
| 09:44:43AM | 10 | prejudice.  For some reason, it's -- okay.  Thank you. |
| 09:44:50AM | 11 | MR. INSOGNA:  And, Your Honor, the last case is Jeany |
| 09:44:55AM | 12 | Persaud, same issue.  We have a Plaintiff Fact Sheet but no |
| 09:44:58AM | 13 | supporting documentation. |
| 09:45:00AM | 14 | MS. HENNESSY:  In this case, we have an uncooperative |
| 09:45:04AM | 15 | client, and I apologize for not putting in the dismissal |
| 09:45:08AM | 16 | notice.  I had been out of town the past week and a half, and |
| 09:45:13AM | 17 | at that point, they were still trying to get the information. |
| 09:45:16AM | 18 | But I was notified when I got back yesterday that she's still |
| 09:45:19AM | 19 | been uncooperative. |
| 09:45:21AM | 20 | THE COURT:  Okay.  I'm going to dismiss this case |
| 09:45:23AM | 21 | with prejudice.  Plaintiff counsel has provided -- has |
| 09:45:25AM | 22 | indicated to this court that she's attempted to reach her |
| 09:45:28AM | 23 | client and the client has been uncooperative.  Accordingly, |
| 09:45:33AM | 24 | the plaintiff has failed to comply with her obligations |
| 09:45:38AM | 25 | despite best efforts of counsel and this matter is dismissed |

09:45:40AM  1    with prejudice.

09:45:42AM  2         MR. INSOGNA:  Thank you, Your Honor.  I believe that

09:45:45AM  3    takes us only to the cases with late cures.

09:45:49AM  4         THE COURT:  Late cures.  Now we'll take up the late

09:45:52AM  5    cures.

09:45:53AM  6         MS. CALLSEN:  How do you want to do that, Your Honor?

09:45:54AM  7         THE COURT:  I'm going to call them out and just get

09:46:01AM  8    counsel --

09:46:01AM  9         MS. CALLSEN:  Can we sit or do you want us to come

09:46:04AM  10   up?

09:46:04AM  11        THE COURT:  I'll handle it.

09:46:06AM  12        The first one is Cutter Law Firm, Caroline

09:46:11AM  13   Metcalf-Underwood.  Ms. Domer, are you on the line?

09:46:13AM  14        MS. DOMER:  Yes, I am, Your Honor.

09:46:15AM  15        THE COURT:  I understand that this was cured late?

09:46:20AM  16        MS. DOMER:  Yes.  We were actually going to file a

09:46:24AM  17   declaration of no contact, and she got back to us the same

09:46:30AM  18   day.  So I think we filed them a little hastily, but as soon

09:46:36AM  19   as I realized that we didn't do things properly for the --

09:46:39AM  20   the couple, I -- I tried to upload it immediately.

09:46:42AM  21        THE COURT:  All right.  Court's going to grant seven

09:46:43AM  22   days to confirm compliance to the defendants.

09:46:46AM  23        I believe the next one on this list -- well, before

09:46:48AM  24   we get there, Mary Miner, there was Hodges & Foty.  Has

09:46:54AM  25   anybody gotten on the line with this case?

```
09:46:56AM   1            MS. BERG:  I believe a Mr. Mason should be on the
09:46:59AM   2    line now.
09:47:00AM   3            THE COURT:  Mr. Mason, are you on the line?  Star 6?
09:47:08AM   4            MR. MASON:  Star 6?
09:47:09AM   5            THE COURT:  Yes, sir.  That's you.
09:47:10AM   6            Okay.  That was Ms. Brilleaux?
09:47:15AM   7            MS. BRILLEAUX:  Yes.  Yes, Your Honor.  This is a no
09:47:17AM   8    PTO 71A certification.
09:47:19AM   9            THE COURT:  Mr. Mason, what's the problem?
09:47:21AM  10            MR. MASON:  Okay.  Your Honor, this is a minor
09:47:24AM  11    deficiency.  The client's been generally cooperative, but
09:47:29AM  12    actually she passed away and her next of kin is filing a
09:47:36AM  13    probate to be appointed as the representative of the estate.
09:47:40AM  14    And so we're just waiting for the probate documents.
09:47:42AM  15            THE COURT:  I'm going to grant 60 days for -- for you
09:47:47AM  16    to get that in order.  If for some reason, probate is still
09:47:52AM  17    held up, you can just contact liaison counsel and they'll
09:47:58AM  18    help you through that process.
09:48:00AM  19            Okay.  Then next one --
09:48:00AM  20            MR. MASON:  Okay.  Thank you, Your Honor.
09:48:01AM  21            THE COURT:  -- is Dorothy Chavez.  That's Meyerkord &
09:48:06AM  22    Meyerkord.  Mr. Steward, are you on the line?
09:48:08AM  23            MR. STEWARD:  I am, Your Honor.  Good morning.
09:48:11AM  24            THE COURT:  So that was a late cure as I appreciate
09:48:13AM  25    it.
```

09:48:13AM 1        MR. STEWARD:  This is PTO 71 and, yes, Your Honor, we

09:48:17AM 2    uploaded it to MDL Centrality yesterday and served defendants

09:48:22AM 3    through an e-mail yesterday.  Ms. Chavez had changed phone

09:48:28AM 4    numbers, and we finally got the correct one and we were able

09:48:31AM 5    to get in touch with her and get this done.

09:48:34AM 6        THE COURT:  Okay.  Court's going to grant seven days

09:48:36AM 7    for defendant's to confirm compliance.

09:48:40AM 8        Is the next one Iris Garrett?

09:48:44AM 9        MS. BRILLEAUX:  Yes, Your Honor.  And just to let you

09:48:46AM 10   know, well, if this is a late of cure, we have a proof of

09:48:51AM 11   injury deficiency.  The plaintiff claims in the PFS that

09:48:54AM 12   there was a scalp biopsy, but we did not receive the required

09:49:01AM 13   preservation letter, so I'm interested in this one in

09:49:03AM 14   particular to hear what the actual cure is.

09:49:05AM 15       Mr. Black, are you on the line?

09:49:07AM 16       MR. BLACK:  Yes, Your Honor.  We spoke to Ms. Garrett

09:49:11AM 17   about the discrepancy because we didn't see anything in the

09:49:13AM 18   medical records about a scalp biopsy, and what it was, is she

09:49:17AM 19   had checked that box because she had had a biopsy of her

09:49:22AM 20   breast tissue and just saw the word biopsy and so checked the

09:49:23AM 21   "yes" box.  But when we spoke to her, she clarified that it

09:49:27AM 22   was a biopsy of her breast tissue, not of her scalp, so we

09:49:32AM 23   cured the deficiency on the fact sheet and re-sent it.

09:49:35AM 24       THE COURT:  Okay.

09:49:35AM 25       MS. BRILLEAUX:  Your Honor, we still have a proof of

```
09:49:37AM  1    use issue then.  I think we are missing before photos if

09:49:41AM  2    that's the case.  As you know, we'll accept a scalp

09:49:45AM  3    biopsy for -- I'm sorry, proof of injury, not proof of use.

09:49:48AM  4          THE COURT:  Okay.  Mr. Black, do you have a photo

09:49:50AM  5    from five years preceding?

09:49:53AM  6          MR. BLACK:  I do not know off the top of my head, but

09:49:56AM  7    we are in contact with the client now.  We had some contact

09:49:59AM  8    issues, but we've been speaking with her so we can cure that

09:50:02AM  9    pretty quickly --

09:50:03AM 10          THE COURT:  Okay.  All right.  I'm going to grant you

09:50:04AM 11    15 days to cure the photograph issue and then we'll proceed

09:50:08AM 12    that way.  Thank you.

09:50:10AM 13          MR. BLACK:  Thank you, Your Honor.

09:50:11AM 14          THE COURT:  All right.  Teresa Howell, that's with

09:50:19AM 15    the Pulaski Law Firm.  Ms. LaMacchia?  Ms. LaMacchia?

09:50:28AM 16          She handled some other ones.  Star 6?  Are you on the

09:50:36AM 17    line, ma'am?

09:50:36AM 18          Okay.  Let's skip that for now and we'll go to Brenda

09:50:46AM 19    Denby with Roberts & Roberts.  Mr. Roberts, are you on the

09:50:50AM 20    line?

09:50:51AM 21          MR. ROBERTS:  Yes, Your Honor, this is Justin Roberts

09:50:55AM 22    with Roberts & Roberts and I'm here, Your Honor.

09:50:57AM 23          THE COURT:  I see three cases, Brenda Denby, Cynthia

09:51:01AM 24    Epes, and Delores Nelson.  Have you cured those?  That's what

09:51:07AM 25    my notes say.
```

09:51:10AM 1     MR. ROBERTS:  Yes, Your Honor, I believe so.  And I

09:51:12AM 2 apologize, we're in the middle of a staffing change, which is

09:51:16AM 3 why they were late cured.  But we believe we have cured them,

09:51:19AM 4 and if we could have a little bit of time just to confirm

09:51:23AM 5 that we've done everything defense counsel would ask --

09:51:24AM 6 require to --

09:51:25AM 7     THE COURT:  Okay.  This is what I'm going to do.  I'm

09:51:27AM 8 going to give defense counsel seven days to confirm the cure.

09:51:31AM 9 If they discover a deficiency, they will let you know, but if

09:51:34AM 10 they think you've done it, I'm going to take you at your word

09:51:38AM 11 and give them seven days to confirm compliance.  And if not,

09:51:41AM 12 we'll just address that at the next hearing.  Okay.

09:51:45AM 13     MR. ROBERTS:  Yes, Your Honor.

09:51:45AM 14     THE COURT:  Thank you.

09:51:46AM 15     MR. ROBERTS:  Thank you, Your Honor.

09:51:46AM 16     THE COURT:  All right.  Cindra Henderson,

09:51:50AM 17 Mr. Fontenot, are you on the line?

09:51:55AM 18     MR. FONTENOT:  Yes, Your Honor.  Ms. Henderson

09:51:57AM 19 executed the documents on 05/13 and we received them

09:52:01AM 20 yesterday.  They were uploaded to Centrality as Dock ID No.

09:52:05AM 21 519874.  We also e-mailed defense counsel when we received

09:52:10AM 22 them yesterday morning.

09:52:10AM 23     THE COURT:  Okay.  Court's going to grant seven days

09:52:13AM 24 to confirm compliance.

09:52:14AM 25     We have Carol Crawford represented by Bachus &

09:52:18AM   1   Schanker.  Mr. Elliott?

09:52:21AM   2        MR. ELLIOTT:  Yes, Your Honor.  Can you hear me?

09:52:23AM   3        THE COURT:  I can.

09:52:24AM   4        MR. ELLIOTT:  Okay.  Good.  This one I believe was

09:52:29AM   5   actually cured back on May 13th.  We uploaded a photo that

09:52:35AM   6   showed the date of 2010, so we believe it was cured back on

09:52:42AM   7   July 13th.  We sent defense another cure e-mail on Friday.

09:52:46AM   8        THE COURT:  Okay.  I'm going to grant seven days for

09:52:48AM   9   the defendants to confirm with their clients.

09:52:51AM  10        MS. BRILLEAUX:  Your Honor, if I could, I think that

09:52:53AM  11   we did see the issue.  This is another issue with the

09:52:58AM  12   photographs.  We had -- and I'll just show you so that you

09:53:02AM  13   can appreciate it.  This is the first photo that we got and

09:53:06AM  14   it just says 12/31 in the bottom.  You can see that date

09:53:10AM  15   stamp, and so we needed to see the dates since there was

09:53:13AM  16   obviously some date there.  And so the cured photo that we

09:53:17AM  17   got is this, and we don't understand why we can't see a

09:53:21AM  18   version that looks like this that has the full date on it.

09:53:26AM  19        THE COURT:  I can't see what you're telling me,

09:53:29AM  20   Ms. Brilleaux.

09:53:31AM  21        MS. BRILLEAUX:  Can I approach?

09:53:32AM  22        THE COURT:  Yes, please.

09:53:34AM  23        I don't understand.  Is it the same photograph?

09:53:36AM  24        MS. BRILLEAUX:  It appears to be different versions

09:53:38AM  25   of the same photograph.  So that's the first one.  And it's

09:53:42AM   1   hard to tell because of how blurry the cured photograph is,

09:53:46AM   2   but the date in the bottom right-hand corner does not match

09:53:51AM   3   the date in the bottom right-hand corner of the first one,

09:53:53AM   4   which makes us think that the first one is not accurately

09:53:56AM   5   dated, even though the first one did not have an accurate

09:54:00AM   6   date.  So really the ask is -- we feel like we should get the

09:54:04AM   7   quality of the first photo.

09:54:05AM   8          THE COURT:  Is it 12/31/2010?

09:54:11AM   9          MS. BRILLEAUX:  It may be, but here it says

09:54:14AM  10   10/31/2010 in the second one which -- so there's some

09:54:17AM  11   discrepancy there that we think should be cured.

09:54:19AM  12          THE COURT:  Mr. Elliott, have you cured that?

09:54:22AM  13          MR. ELLIOTT:  Well, I mean, her treatment started in

09:54:27AM  14   2012, so this photo, the one that we submitted on 05/13 shows

09:54:31AM  15   2010.  I don't know why there's a discrepancy there.  But I

09:54:35AM  16   can try to see if I can get a better quality --

09:54:35AM  17          THE COURT:  But what's --

09:54:40AM  18          MR. ELLIOTT:  -- of the photo.

09:54:41AM  19          THE COURT:  I'm confused about what you're asking me.

09:54:49AM  20   What do you need, Ms. Brilleaux?

09:54:53AM  21          MS. BRILLEAUX:  So what we're asking for, you can

09:54:54AM  22   tell that the second photo -- if you look at the border of

09:54:58AM  23   it, it looks like it's a photo of a digital camera.  It looks

09:55:00AM  24   like someone took their iPhone, that's a guess, but took

09:55:01AM  25   their iPhone and took the screen.  You can see the battery

09:55:05AM  **1**   mark at the top left-hand corner.

09:55:05AM  **2**          THE COURT:  Okay.

09:55:07AM  **3**          MS. BRILLEAUX:  And so what we're looking for is a --

09:55:10AM  **4**   the quality of the first photo with the accurate date of the

09:55:13AM  **5**   second photo.

09:55:16AM  **6**          THE COURT:  This looks like -- is it not the same

09:55:19AM  **7**   photo?

09:55:20AM  **8**          MS. BRILLEAUX:  I think it's the same photo.

09:55:21AM  **9**          THE COURT:  Well, then you have this quality.

09:55:24AM  **10**         MS. BRILLEAUX:  I think it's the date discrepancy

09:55:27AM  **11**  that raised the red flag, Your Honor, because there's a

09:55:30AM  **12**  different date on the second one than the first one.

09:55:32AM  **13**         THE COURT:  Okay.  Mr. Elliott, you need to get with

09:55:35AM  **14**  your client and find out exactly what date these photographs

09:55:38AM  **15**  were taken and it shouldn't be difficult because apparently

09:55:41AM  **16**  they were somewhere.

09:55:45AM  **17**         MR. ELLIOTT:  Okay.  I'll talk to them again and then

09:55:48AM  **18**  I guess we'll send --

09:55:48AM  **19**         THE COURT:  Thank you, Your Honor.

09:55:50AM  **20**         MR. ELLIOTT:  -- defense an e-mail based on that

09:55:52AM  **21**  conversation.

09:55:56AM  **22**         THE COURT:  Court's going to grant 15 days to cure

09:55:59AM  **23**  this.

09:56:00AM  **24**         And the next one is Gloria Young Belizaire.

09:56:07AM  **25**         MS. BRILLEAUX:  Yes, Your Honor.  This is an issue

09:56:09AM **1**  with the authorization, so if that has been cured --

09:56:14AM **2**       THE COURT:  All right.  I'm going to grant seven days

09:56:17AM **3**  to confirm compliance.

09:56:18AM **4**       And Sandra Lewis, was the CMO 12 cured last night?

09:56:23AM **5**       MR. ELLIOTT:  No, these aren't -- these aren't last

09:56:25AM **6**  night cures, Your Honor.  These are -- actually, Lewis, we

09:56:29AM **7**  uploaded the CMO 12 proof back in April of 2021.  There's an

09:56:35AM **8**  NDC code showing proof that Sanofi is the manufacturer on the

09:56:41AM **9**  billing.  So we didn't even -- we don't -- on this case

09:56:42AM **10** specifically, we don't need to send the CMO 12 e-mail and fax

09:56:47AM **11** everything because the proof is in the -- is already in the

09:56:53AM **12** billing.

09:56:53AM **13**      THE COURT:  I'm not looking --

09:56:57AM **14**      MS. BRILLEAUX:  I don't think that this is one of

09:56:59AM **15** Sanofi's cases, Your Honor.

09:57:00AM **16**      MS. CALLSEN:  Right.  I'm confused.  Is he talking

09:57:02AM **17** about Lewis?

09:57:03AM **18**      THE COURT:  Yes, Lewis.

09:57:05AM **19**      MR. ELLIOTT:  So I looked -- so Sandra Lewis, I

09:57:08AM **20** actually pulled up the billing in this case and I looked at

09:57:13AM **21** the NDC code, and to my recollection, yes, it matches --

09:57:20AM **22** Sanofi is actually the manufacturer, so --

09:57:20AM **23**      MS. BERG:  If counsel has --

09:57:26AM **24**      MR. ELLIOTT:  -- the proof is there.

09:57:27AM **25**      THE COURT:  Okay.  Ms. Berg?

| | | |
|---|---|---|
| 09:57:27AM | 1 | MS. BERG:  If counsel has NDC codes, then they just |
| 09:57:31AM | 2 | need to make sure it's uploaded under the CMO 12 tab. |
| 09:57:35AM | 3 | MR. ELLIOTT:  It is.  It is. |
| 09:57:35AM | 4 | MS. BERG:  Well, then -- |
| 09:57:36AM | 5 | MR. ELLIOTT:  It's uploaded under -- |
| 09:57:38AM | 6 | THE COURT:  All right.  I'm going to grant seven days |
| 09:57:39AM | 7 | to confirm compliance. |
| 09:57:42AM | 8 | All right.  I believe that completes this. |
| 09:57:47AM | 9 | Ms. Barrios? |
| 09:57:50AM | 10 | MS. BARRIOS:  We had the Pulaski firm.  I just walked |
| 09:57:56AM | 11 | out to call.  Miner? |
| 09:58:01AM | 12 | MS. CALLSEN:  Is it No. 7? |
| 09:58:03AM | 13 | THE COURT:  I can't -- |
| 09:58:03AM | 14 | MS. BARRIOS:  No. 22 -- |
| 09:58:04AM | 15 | THE COURT:  Ms. Barrios, I can't hear you. |
| 09:58:04AM | 16 | MS. BARRIO:  Oh, I'm sorry, Your Honor. |
| 09:58:07AM | 17 | THE COURT:  Oh, No. 22. |
| 09:58:07AM | 18 | MS. BARRIOS:  Number 22, Ms. LaMacchia had |
| 09:58:10AM | 19 | prematurely gotten off the phone.  I spoke with her |
| 09:58:14AM | 20 | paralegal.  Her paralegal, Kristin, is supposed to be calling |
| 09:58:17AM | 21 | in right now.  And she's indicated that they've already |
| 09:58:21AM | 22 | cured, and so on behalf of Ms. Pulaski, I just ask that you |
| 09:58:26AM | 23 | give seven days to cure. |
| 09:58:28AM | 24 | THE COURT:  Seven days to confirm compliance of the |
| 09:58:31AM | 25 | cure. |

09:58:32AM  1          MS. BARRIOS:  Your Honor, just one -- one thing for

09:58:33AM  2    the record.  If the defendants are going to bring an issue on

09:58:39AM  3    photographs, if you just let us know so that counsel can look

09:58:42AM  4    at the photographs while you are handing them up to the judge

09:58:47AM  5    --

09:58:47AM  6          MS. BRILLEAUX:  The photograph issue is noted on the

09:58:52AM  7    --

09:58:52AM  8          MS. BARRIOS:  But you say photos a lot, but you only

09:58:56AM  9    give photos rarely.  If you give -- if you plan to give the

09:58:59AM  10   judge a photo, I think it's fair for you to let the plaintiff

09:59:02AM  11   know about that photo.

09:59:06AM  12         THE COURT:  Fair enough.

09:59:06AM  13         MS. BRILLEAUX:  Thank you, Your Honor.

09:59:08AM  14         THE COURT:  I agree.  Thank you.

09:59:10AM  15         Is there anything further?

09:59:13AM  16         Okay.  We'll be at recess 'til 10:30.

           17                        *  *  *  *

           18         (WHEREUPON, the proceedings were adjourned.)

           19                        *  *  *  *

           20

           21

           22

           23

           24

           25

1                         REPORTER'S CERTIFICATE

2              I, Nichelle N. Wheeler, RPR, CRR, Official Court
   Reporter, United States District Court, Eastern District of
3  Louisiana, do hereby certify that the foregoing is a true and
   correct transcript, to the best of my ability and
4  understanding, from the record of the proceedings in the
   above-entitled and numbered matter.

5

6                           /s/ Nichelle N. Wheeler
                            Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25