UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO: *Elizabeth Kahn*, Case No. 2:16-cv-17039 | |

MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE
TESTIMONY AND ARGUMENT THAT TAXOTERE HAS SAVED LIVES
(Motion *in Limine* No. #14)

I.  INTRODUCTION

Plaintiff respectfully moves to exclude all testimony and argument that Taxotere has saved numerous cancer victims' lives, including Plaintiff's. In *Earnest*, this Court granted in part and denied in part a similar motion by Plaintiff.[1] This Court recognized that some argument would be over-the-top:

> Now, about women eating Thanksgiving with their family, you know, that might be a bit of a stretch.;[2]
>
> I don't think that there's going to be any testimony about millions of people have had their lives saved by Taxotere and that's not what I read.[3]

However, the Court determined that "the risk-benefit analysis particularly for this patient is absolutely relevant."[4]

As explained in this brief, this Court should grant Mrs. Kahn's motion in full because the evidence does not support Sanofi's argument. Sanofi has *no evidence* that it saved Mrs. Kahn's

---

[1] *See* Rec. Doc. 8198
[2] *See* Ex. 1, Rec. Doc. 11112, Motion Hearing, 9/15/2019, at p. 67:7-8
[3] *Id*. at p. 65:1-3
[4] *Id*. at p. 64:20-21

1

life; to the contrary, Sanofi's own expert (Dr. Glaspy) has testified that he simply cannot and will not support such an argument. As explained below, the Fifth Circuit has repeatedly held that Courts must prevent counsel from arguing outside the trial record.

Moreover, this Court now has the benefit of hindsight, and Sanofi's conduct in the *Earnest* trial shows precisely why this Court should preclude such highly-prejudicial argument. Indeed, in the *Earnest* trial, Sanofi explicitly called on the jury to nullify any potential damage award because Taxotere saved Mrs. Earnest's life. This Court should grant Mrs. Kahn's motion because Sanofi's salvation argument is an extremely prejudicial attempt to state or imply that the jury should nullify any possible verdict or reduce damages since Mrs. Kahn is still alive.

## II.  ARGUMENT

### A.  This Court should not let Sanofi argue that Taxotere saved Plaintiff's life.

It is well-established that "Counsel is not permitted to make an appeal to passion or prejudice calculated to inflame the jury." *US v. Crooks*, 83 F.3d 103, 107 n.15 (5th Cir. 1996). Unfortunately, given Sanofi's conduct during the *Earnest* trial and discovery in this case, Plaintiff expects Sanofi to suggest that the jury should nullify or reduce any award by arguing—without evidence—that Taxotere saved Mrs. Kahn's life. Sanofi's argument would be both irrelevant in a failure-to-warn case about hair loss and extremely prejudicial.

Given Sanofi's previous litigation tactics, Plaintiff fears that Sanofi will try to get the jury to either nullify any verdict or reduce Plaintiff's damages by casting Sanofi as her savior or out of a view that permanent hair loss is inconsequential in the bigger picture of life-versus-death. This Court should prevent Sanofi's counsel from such improper appeals to passion. *See O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1309 (5th Cir. 1977) ("Civil or criminal, a trial is not a contest in which no holds are barred. It is the determination of basic rights under our Constitution. … Winning, so called, at all costs puts the cost too high.") (citation omitted).

2

Even where evidence is otherwise admissible, this Court should prevent prejudicial argument about the weight or application of evidence. *See Llaguno v. Mingey*, 763 F.2d 1560, 1569 (7th Cir. 1985) (error to allow "the defense to dwell in obsessive detail on the crimes that the police were investigating"). Courts can, and should, prevent counsel from making or implying prejudicial arguments through cross-examination. *See Thompson v. Chicago*, 722 F.3d 963, 977 (7th Cir. 2013) ("The scope of cross-examination … is subject to Rule 403 balancing, however."). In this case, the Court should prohibit Sanofi from asking prejudicial questions or making inappropriate arguments that could mislead the jury, confuse the jury, or improperly prejudice the jury to nullify or reduce damages. *See Simpson v. City of Maple Heights*, 720 F. Supp. 1306, 1308 (N.D. Ohio 1989) (through improper questioning, "Defense counsel attempted to minimize any potential damage award by demonstrating that the Plaintiff's physical and psychological injuries primarily stemmed from a history of abusive relationships rather than from the incident in question.").

For example, in the *Earnest* trial, Sanofi's counsel started their closing argument by emphasizing:

> And we've heard a lot of evidence over the past two weeks, so let me just say this at the outset: Everybody is very thankful that Mrs. Earnest is alive today, living cancer-free eight years removed from that day in 2011 when she learned that she had Grade II invasive breast cancer. Mrs. Earnest is a breast cancer survivor. There is no question about that. And she is a testament to the fact that her treatment worked. And it continues, ladies and gentlemen, to work today.[5]

Later in the closing, Sanofi's counsel pulled on the jurors' heartstrings:

> Mrs. Earnest was 60 years old when she was diagnosed with Stage II invasive breast cancer. Eight years later, today, she is alive and cancer free thanks in part to Taxotere. And maybe Mr. Schanker wants to trivialize that or minimize it. I don't think you should. I don't think Mrs. Earnest does. It means something. She received a *benefit like no other*. It's the *gift of life*. It's *time with her husband*. They have a

---

[5] *See* Ex. 2, Rec. Doc. 8421, *Earnest* Trial Transcript, 9/26/2019, at pp. 2189:12-19.

*happy marriage*. You heard that. She had *two grandbabies* born since she was diagnosed, and you know she loves them. We don't question that.[6]

In this particularly over-the-top appeal to passion, Sanofi took credit for Ms. Earnest's life, liberty and pursuit of happiness. Although Taxotere was only part of Ms. Earnest's treatment, Sanofi claimed responsibility for Ms. Earnest's "happy marriage" and even her "two grandbabies." Furthermore, Sanofi's argument misleadingly took *full* life-saving credit for being *part* of Ms. Earnest's overall treatment.

In Ms. Kahn's deposition, Sanofi made a similar line of argument:

Q. *And you are alive* today and cancer free, correct?

A. I am cancer free today.

Q. *And you are alive*.

A. I'm alive. I couldn't be answering this deposition if I wasn't alive.

Q. True. *You can't say that you would be alive today if you hadn't taken Taxotere*, correct?

A. I had -- my treatment was a multifaceted treatment, and I don't know what -- which thing was the most beneficial. I have no clue what -- if I had one thing or not had one thing, what would have made a difference.

Q. *So you can't say*.

A. Can't say.[7]

This Court should prevent Sanofi from appealing to such emotionally charged, factually misleading rhetoric that casts Sanofi as Mrs. Kahn's savior and implies that Mrs. Kahn's permanent hair loss damages are trivial in comparison to Sanofi's gift of life to her. This Court should not let Sanofi skew the jury's determination of liability, causation, and damages by implying that Ms. Kahn's permanent hair loss simply doesn't matter in the grand scheme of things.

---

[6] *Id*. at pp. 2217:16-24.
[7] *See* Ex. 3, Dep. of Elizabeth Kahn, 12/7/2017, at pp. 300:19-301:10.

> **B.      This Court should not let Sanofi argue that the jury should nullify a verdict or reduce damages by the value of Plaintiff's life.**

While the Sanofi-as-savior argument is prejudicial enough, Sanofi went a step—or perhaps a leap—further in the *Earnest* trial. In that case, Sanofi argued that the jury should discount, offset, or even nullify damages for permanent hair loss due to Sanofi's claim that it saved Mrs. Earnest's life. Again, in Sanofi's closing argument:

> How do you get to $1 million in a case like this, ladies and gentlemen, let alone 12 million? The number defies common sense. …
>
> Ladies and gentlemen, should Mrs. Earnest be handed over millions of dollars where the evidence has proven that a Taxotere regimen gave her the best chance to survive and the best chance to prevent her cancer from coming back and the best chance -- *don't leave this part out* -- to minimize potentially serious consequences? Hair loss isn't the only risk. It's just the only one they want to talk about.
>
> Given the evidence that you've heard in this case, ladies and gentlemen, we don't believe any money damages are appropriate. But if you get this far, we would ask you, please, just use your commonsense. Use your everyday life experiences in deciding how much money would be appropriate to compensate Mrs. Earnest, and *please consider the value of the benefit that you believe Taxotere gave her.*[8]

While Sanofi's she-gets-to-see-her-grandbabies-because-of-us argument is an improper appeal to passion, it is much more than that. Significantly, Sanofi did not argue that Ms. Earnest's permanent hair loss is worth less than $12 million. Instead, Sanofi argued that $12 million is too much *because it saved Ms. Earnest's life*. In other words, Sanofi advocates a damages model of:

>      Plaintiff's damages for permanent hair loss
>
> -    (the value of Plaintiff's life)
>
> =    zero damages

In fact, under Sanofi's erroneous damages model, the jury is left wondering whether it should order Ms. Kahn to pay Sanofi money for saving her life.

---

[8] *See* Ex. 2 at pp. 2217:13-2218:13.

5

It should go without saying that this Court should forbid counsel from misstating the law on liability or damages. *See Hawkins v. Mitchell*, 756 F.3d 983, 999 (7th Cir. 2014) (in excessive force case, officers' attorney improperly argued "the alleged fact that Mitchell and Bowersock were 'doing their job' and Hawkins's allegedly baseless demand that the officers leave his house were 'all that matter[ed].'"); *Gruca v. Alpha Therapeutic*, 51 F.3d 638, 645 (7th Cir. 1995) ("Alpha's surrebuttal argument that the plaintiffs' counsel … 'could have sued the FDA' was improper, unwarranted, and a misstatement of law."); *Davis v. FMC*, 771 F.2d 224, 233 (7th Cir. 1985) ("Because Illinois law for the relevant time period does not permit contribution between joint tortfeasors, FMC was impermissibly arguing to the jury that its own liability should be decreased due to Joan of Arc's equal—but not qualitatively different—wrongdoing."); *Hillard v. Hargraves*, 197 F.R.D. 358, 360 (N.D. Ill. 2000) (defense counsel's argument created false impression that defendants—who had insurance—would have to pay verdict out-of-pocket). In this case, the Court should bar Sanofi from telling the jury that it can subtract the value of Ms. Kahn's life from her damages from permanent hair loss or any other similar argument contrary to the law.

Sanofi's life-trumps-damages argument is so prejudicial that a cautionary instruction would not suffice. As the Fifth Circuit has explained, "the bench and bar are both aware that cautionary instructions are effective only up to a certain point." *O'Rear*, 554 F.2d at 1309. The Court of Appeals has also bluntly stated that "if you throw a skunk into the jury box, you can't instruct the jury not to smell it." *Dunn v. US*, 307 F.2d 883, 886 (5th Cir. 1962). In this case, the Court should prevent Sanofi from ringing the bell in the first instance.

If Sanofi misstates the law, there is a substantial risk that the jurors will not recognize that the jury instruction overrides a lawyer's misleading argument. A juror could, for example, attempt

6

to harmonize a jury instruction with a lawyer's erroneous legal argument. As this Court observes the lawyers argue, a juror could also assume that this Court would not permit a lawyer to incorrectly state the law. For example, in *Hawkins*, the Court rejected the argument that the jury instruction cured any prejudice from counsel's misstatement of the law:

> [W]e acknowledge that the jury instruction approved here implies that no arguments concerning the lawfulness of the entry or the mere making of an arrest could be relevant to excessive force or battery. So if the jurors reasoned like lawyers, then they knew from the instruction to disregard the challenged segments of the officers' closing. But to presume jurors to read and analyze as lawyers do would be naive.

756 F.3d at 998–99.

In this case, given the potential for substantial prejudice, this Court should forbid Sanofi's counsel from misstating the law on liability and damages; in particular, this Court should tell Sanofi's counsel that they may not state or imply that the jury can or should nullify on liability or damages or reduce Ms. Kahn's lawful damages based upon Sanofi's gift of life to her. Indeed, as explained in the next section, Sanofi's argument lacks any factual basis.

### C. Sanofi has no evidence that it saved Ms. Kahn's life.

Sanofi's salvation argument further contradicts Sanofi's evidence. Sanofi will not have any evidence to present at trial that it saved Ms. Kahn's life. As Sanofi's expert, Dr. Glaspy, has explained, early-stage breast cancer is highly survivable.[9] According to Dr. Glaspy, there is a 0% chance that Taxotere saved her life compared to Taxol and about a 1 in 200 chance that Taxotere saved Ms. Kahn's life compared to other chemotherapy drugs.

Dr. Glaspy initially testified that chemotherapy reduces the risk of death by 28% from about 7-8% to about 4-5%.[10] However, Dr. Glaspy explained that there are alternative medications,

---

[9] *See* Ex. 4, Dep. of John Glaspy, M.D., 5/13/2020, at p. 43:19-23.
[10] *See* Ex. 5, Dep. of John Glaspy, M.D., 1/9/2020, at pp. 144:17-146:8, 151:7-20.

which would similarly have reduced the risk of death. Significantly, Dr. Glaspy testified that there's a minor difference of about half a percent between "better" chemotherapy drugs like Taxotere and Taxol and the "less good ones":

> [T]here's about a 4 percent impact of chemotherapy, then you could tell someone that if you use the better ones, we're going to get that 4, and the less good ones will probably get a 3-1/2. I mean, when you're dealing with small numbers, there aren't big differences.[11]

Further, Dr. Glaspy admits that he cannot say that Taxotere gave Ms. Kahn the "best chance" to survive ESBC, or that it gave her the best chance of preventing her cancer from returning.[12] Given Dr. Glaspy's testimony, Sanofi cannot argue that it saved Ms. Kahn's life. The evidence does not support such an argument.

This Court should limit argument by Sanofi's counsel to the actual evidence. As the Fifth Circuit has long held, "[i]n general, an attorney may not inject into his argument any extrinsic or prejudicial matter that has no basis in the evidence." *US v. Morris*, 568 F.2d 396, 401 (5th Cir. 1978). This rule applies to all cases and all parties: "This is the law in civil suits as well as in criminal suits and for a plaintiff's attorney as well as for a defendant's attorney." *Id.*

This rule applies not only to opening and closing arguments, but also to improper questions. *See Bufford v. Rowan Companies*, 994 F.2d 155, 158 (5th Cir. 1993) (improper for defense counsel, through argument and cross-examination, to create impression that plaintiff's counsel selected a doctor to help plaintiff exaggerate their injury); *Thompson*, 722 F.3d at 977; *Brown v. Royalty*, 535 F.2d 1024, 1026-1027 (8th Cir. 1976) (defense counsel, through improper cross-examination and closing argument, created false impression that defendant did not receive traffic ticket); *Simpson*, 720 F. Supp. at 1308.

---

[11] *Id.* at p. 159:1-6; s*ee also* Ex. 4 at pp. 146:23-148:22.
[12] *See* Ex. 4 at pp. 132:18 - 133:15.

8

Accordingly, federal courts routinely bar commentary by counsel about *possible* facts that the parties have not demonstrated by evidence. *See Stollings v. Ryobi Techs.*, 725 F.3d 753, 761 (7th Cir. 2013) ("[N]o admissible evidence supported the argument."); *Thompson*, 722 F.3d at 979 (defense counsel's closing statement that misstated the evidence and misled jury); *Wharf v. Burlington N. R.*, 60 F.3d 631, 638 (9th Cir. 1995) (defense counsel misled jury into believing that it had not terminated the plaintiff) ("If Wharf had known he had been fired, he could have asked for additional damages from the jury."); *Rodgers v. Hyatt*, 697 F.2d 899, 901 (10th Cir. 1983) (defense counsel referenced facts not supported by the record); *Ayoub v. Spencer*, 550 F.2d 164, 170 (3d Cir. 1977) ("The remarks of counsel were required to be confined to the evidence admitted in the case and reasonable inferences drawn therefrom."); *Oslund v. State Farm*, 242 F.2d 813, 817 (9th Cir. 1957) ("Counsel was clearly stating as facts things not in evidence. There were no facts in evidence from which any such 'inference' could be logically made.").

Specifically, the Fifth Circuit has held that counsel cannot opine where expert testimony is lacking:

> Counsel's improper statements in summation is a continuing problem in this Court in civil and criminal jury trials. The purpose of summations is for the attorneys to assist the jury in analyzing, evaluating, and applying the evidence. **It is not for the purpose of permitting counsel to "testify" as an "expert witness."** The assistance permitted includes counsel's right to state his contention as to the conclusions that the jury should draw from the evidence. Therefore, an attorney's statements that indicate his opinion or knowledge of the case as theretofore presented before the court and jury are permissible if the attorney makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence.

*Morris*, 568 F.2d at 401 (emphasis added). As noted in *Morris*, counsel cannot argue anything that requires expert testimony, unless the actual expert testimony supports counsel's argument.

For example, in *Hall v. Freese*, 735 F.2d 956 (5th Cir. 1984), the Court ordered a new trial due to defense counsel's prejudicial guesstimation that overuse of prescription drugs caused plaintiff's injuries:

9

> The defense presented absolutely no evidence to support its suggestion that Hall's disability was caused by the use of drugs. In fact, the only opinion expressed by any witness in this regard was that Hall's condition was not caused by drug use. The evidence did show that Hall took a large quantity of prescription drugs, but did not establish that any of these drugs was prescribed improperly. Under the circumstances, the defense attorneys' repeated references to drug use as the probable source of Hall's disability were wholly unjustified and were unfairly prejudicial to Hall's case.

*Id.* at 961. The Court emphasized that "deliberately misstating the record or arguing outside the record [does not] serve any remote purpose for which a trial is intended." *Id.* at 962.

Similarly, in *Berguido v. E. Air Lines*, 35 F.R.D. 200 (E.D. Pa. 1964), the Court held that defense counsel made improper argument as to alternate causation without evidentiary support:

> The argument concerning the possible mechanical failure of the aircraft was certainly without an evidentiary basis, in that all evidence concerning the plane was to the effect that it was functioning well when it left Miami, and up to the time of the crash, none of its crew reported any malfunctions, and subsequent to the accident the parts which could be tested were found to be in good working order. This evidence was uncontradicted and there was no evidence on which to argue mechanical failure. The fact that the jury might be aware how fast mechanical failure can develop, and the fact that another pilot on the same night had trouble with his plane, could not support an inference that the aircraft in question suffered a mechanical failure which was the cause of the accident.

*Id.* at 210. *See id.* ("[T]here was no evidence as to the location of the truck relative to the glide slope and, therefore, its presence could not be used to show that it caused a deflection in the I.L.S. which may have caused the accident, and it was prejudicial to do so.").

In this case, there is no evidence that Taxotere saved Plaintiff's life, so the Court should prevent Sanofi from stating or implying that it did. Furthermore, Dr. Glaspy's testimony about a 0.5% difference between Taxotere/Taxol and "less good" alternatives is so minimal that any argument or implication that Taxotere saved her life is nothing more than equivocation, speculation, and conjecture. But the Fifth Circuit has held that "[a] perfectly equivocal opinion does not make any fact more or less probable *and is irrelevant* under the Federal Rules of Evidence." *Pipitone v. Biomatrix*, 288 F.3d 239, 245 (5th Cir. 2002) (emphasis added). Likewise, the Supreme

10

Court explained in *Daubert*, "[c]onjectures that are probably wrong are of little use, however, in the project of reaching a quick, final, and binding legal judgment—often of great consequence—about a particular set of events in the past." *Daubert v. Merrell Dow*, 509 U.S. 579, 597 (1993). Under *Pipitone* and *Daubert*, Sanofi's evidence does not make it more or less probable that Taxotere saved Plaintiff's life. Accordingly, this Court should bar testimony or argument that it did.

### D. This Court should bar Sanofi from stating that Taxotere saves numerous or countless others lives.

For similar reasons, the evidence will not support an argument from Sanofi that Taxotere saves the lives of countless or numerous others. The argument is also irrelevant in this trial. *See* FRE 401-402. Moreover, such argument would encourage the jury to nullify or reduce any verdict out of passion or prejudice. Accordingly, this Court should bar Sanofi from arguing or presenting evidence that it saves others. *See* FRE 403.

### E. In the alternative to the previous argument, this Court should let Plaintiff present evidence of Sanofi's harms to others.

Alternatively, if this Court permits the introduction of evidence that Taxotere saves lives, Plaintiff should be permitted to present countervailing evidence of the harms brought about by Taxotere as well as those stemming from Sanofi's failure to warn of risks of which it knew. This would entail such evidence as the 10,000+ lawsuits pending in this MDL as a result of the undisclosed risks of permanent alopecia.

### III. CONCLUSION

For these reasons, Plaintiff respectfully requests that this Court bar Sanofi and its witnesses from offering or trying to offer any comments, references, testimony, argument, or evidence that Taxotere has saved numerous lives or Plaintiff's life. Alternatively, if Sanofi is permitted to introduce evidence regarding how Taxotere has saved lives as a treatment for breast cancer,

Plaintiff should be permitted to offer evidence of the myriad pending lawsuits filed by those who have taken Taxotere.

| | |
|---|---|
| Dated: June 17, 2021 | Respectfully submitted, |

/s/ Christopher L. Coffin
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

/s/ Karen B. Menzies
Karen Barth Menzies (CA Bar #180234)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

### PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

J. Kyle Bachus
Bachus & Schanker, LLC
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

John Gomez
The Gomez Law Firm, PLLC
655 West Broadway, Suite 1700
San Diego, CA 92101
Phone: (619) 237.3490
Fax: 619.237.3496.
john@thegomezfirm.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045 Phone:
510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Jessica Perez Reynolds
Pendley, Baudin & Coffin
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Phone: (225) 687-6396
Fax: (225) 687-6398
jperez@pbclawfirm.com

| | |
|---|---|
| Emily C. Jeffcott<br>Morgan & Morgan<br>700 S. Palafox Street, Suite 95<br>Pensacola, FL 32505<br>Phone: (850) 316-9074<br>Fax: (850) 316-9079<br>ejeffcott@forthepeople.com | Darin L. Schanker<br>Bachus Schanker<br>101 W Colfax Ave, Suite 650<br>Denver, CO 80202<br>Phone: (303) 222-2222<br>Fax: (303) 893-9900<br>dls@coloradolaw.net |
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904 15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Hunter J. Shkolnik<br>Napoli Shkolnik PLLC<br>360 Lexington Avenue, 11th Floor<br>New York, NY 10017<br>Phone: (212) 397-1000<br>hunter@napolilaw.com |
| Daniel P. Markoff<br>Atkins & Markoff Law Firm<br>9211 Lake Hefner Parkway, Suite 104<br>Oklahoma City, OK 73120<br>Phone: (405) 607-8757<br>Fax: (405) 607-8749<br>dmarkoff@amalaw.com | Zachary Wool<br>Barrios Kingsdorf & Casteix, LLP<br>701 Poydras Street, Suite 3650<br>New Orleans, LA 70139<br>Phone: (504) 524-3300<br>Fax: (504) 524-3313<br>zwool@bkc-law.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

                                        */s/ M. Palmer Lambert*
                                        M. PALMER LAMBERT