UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO *Alice Hughes* Case No. 2:17-cv-11769 | HON. JANE TRICHE MILAZZO |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S BILL OF COSTS AGAINST PLAINTIFF ALICE HUGHES

Plaintiff, Alice Hughes, a breast cancer survivor, filed her products liability lawsuit against Defendant Accord Healthcare, Inc. ("Accord" or "Defendant"), in this multidistrict litigation on November 3, 2017 (Doc No. 1). The Court selected Ms. Hughes as the second alternate trial plaintiff for the third trial. CMO 21. The defendant was Accord. Trial Plaintiff Hughes underwent all phases of discovery (Phase I and Phase 2), including depositions, expert reports, fact and expert discovery, and motion practice. Defendant filed a Motion for Summary Judgment based on Louisiana's one-year prescriptive period, and Ms. Hughes' case was ultimately dismissed on summary judgment on April 29, 2021 after briefing and oral argument (MDL Rec. Doc. 12533). A notice of appeal was filed with the United States Court of Appeals for the Fifth Circuit on May 26, 2021 and is currently pending.

Defendant now seeks $39,690.09 in purported costs to be taxed against Ms. Hughes. Rather than file a memorandum of support citing law and argument as to why it should be entitled to these fees, Defendant simply attached an itemized list of these expenses along with receipts for same.

Plaintiff submits that the awarding of costs in this matter is unwarranted under the circumstances, not supported by proper documentation, and is premature.

1

**LAW AND ARGUMENT**

"[T]he decision whether to award costs ultimately lies within the sound discretion of the district court." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013); *Hall v. State Farm Fire & Cas. Co.*, 937 F.2d 210, 216 (5th Cir. 1991). According to the Fifth Circuit, a denial of costs is appropriate where a plaintiff has brought a lawsuit in good faith and at least one of the following factors is met: "(1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources." *Pacheco v. Mineta*, 448 F.3d 783, 794 (5th Cir. 2006).

Here, Defendant does not assert, much less prove, that Ms. Hughes brought her suit in bad faith. However, good intent on its own is not justification to deny the awarding of costs to a prevailing party. "[T]he mere fact that a suit may have been brought in good faith is alone insufficient to warrant a denial of costs in favor of a prevailing defendant." *Cherry v. Champion*, 186 F.3d 442, 446 (4th Cir.1999). But when every one of the *Pacheco* factors cited above are present, this Court may deny or reduce costs. The decision whether to award costs ultimately lies within the sound discretion of the district court. See *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S.560, (2012). For the following reasons, Defendants' Bill of Costs must be denied.

First, Ms. Hughes is a cancer survivor and person of limited means. As testified in her deposition on March 20, 2019, Ms. Hughes works in a hospital laboratory in New Orleans, Louisiana. Ms. Hughes is financially ill-equipped and unable to pay the tens of thousands of dollars in costs sought by Accord.

Second, while the exact parameter of the conduct which comprises "misconduct of

the prevailing party" is not well defined by the jurisprudence, there are some analogies here. The issue in Ms. Hughes' prescription question involved a weighing of her efforts to find out about her hair loss when seen in light of Defendant's withholding of that information from doctors and patients. Ms. Hughes' efforts to find the cause of her alopecia were deemed insufficient. The Order dismissing Plaintiff's case did not contain a finding that Defendant had warned of the risk of permanent alopecia to Ms. Hughes' treating oncologist or her other doctors. The records shows that a warning of that risk was only added to the FDA approved label in 2015, years after Ms. Hughes was administered the drug. So, while this Honorable Court found the degree of Ms. Hughes' efforts to get an explanation of her hair loss to be lacking, the reason for that failure to obtain information about her hair loss was because none existed in the public sphere at the time she was inquiring. Defendant failed to disclose risks that it knew to be associated with its product despite a duty to warn of those very risks. And, it can be fairly said that the primary reason Ms. Hughes never received proper warnings was due to Accord's misconduct in not advising her oncologist, Dr. Veith, of the risk of permanent hair loss arising from Docetaxel use.

Third, this was a close and difficult legal issue. There was case law on both sides supporting a dismissal or a denial. This was not a case where the result was crystal clear. There is a dearth of cases that address on all fours the issue of the application of *contra non valentem* when a defendant is hiding information from an alleged late filing plaintiff, that plaintiff was selected by the Court as a trial plaintiff/bellwether and that plaintiff did not search hard enough for information alleged to be unavailable due to the defendant's misconduct. And while this Court found for the Defendant and dismissed Plaintiff's case, it was a close and difficult ruling.

Fourth, Ms. Hughes' case provided a great value to the public, this Court, and the parties involved in this litigation. "The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar." *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997). As in all bellwether situations, the benefits (and costs) of a ruling are not the same as in a "one-off" case. As a trial plaintiff, Ms. Hughes' case provided guidance to the parties and the Court on issues relevant to the entire MDL. The discovery aided the parties in defining issues pertinent to the MDL as a whole.

As to the assessment of costs in a complex litigation setting, the Manual for Complex Litigation (Fourth Edition, 2004) provides guidance. This Court's general authority to allocate costs is discussed in Chapter 11, governing Pre-trial discovery procedures. Section 11:443 states:

> Cost allocation may also be an appropriate means to limit unduly burdensome or expensive discovery. Rule 26's purpose is not to equalize the burdens on the parties, but Rule 26(b)(2)(iii) expressly requires the court to take the parties' resources into account in balancing the burden or expense of particular discovery against its benefit. Thus, where the parties' resources are grossly disproportionate, the judge can condition discovery that would be unduly burdensome on one of them upon a fair allocation of costs.

Considerations of cost allocation are not based on relative resources alone. Rule 26(b)(2)(iii) allows the court to allocate costs based on considerations of benefits, burdens, and overall case efficiency. Courts have articulated as many as eight factors relevant to cost allocation:

- the specificity of the discovery requests;
- the likelihood of discovering critical information;
- the availability of such information from other sources;

4

- the purposes for which the responding party maintains the requested data;
- the relative benefit to the parties of obtaining the information;
- the total cost associated with the production;
- the relative ability of each party to control costs and its incentive to do so; and
- the relative resources available to each party.

Here, Ms. Hughes was subjected to the burdens of a trial plaintiff's discovery not experienced by the vast majority of the MDL plaintiffs, while cooperating fully with the Court and its Orders. The eight factors referenced above apply to issues of cost allocation in an MDL. Ms. Hughes was one case among a handful of bellwether cases selected to be a trial plaintiff to represent the issues and facts of similarly situated plaintiffs in this MDL, with an express purpose of utilizing the results of the pre-trial and trial rulings to identify and resolve common questions of law and fact pertaining to the MDL. Importantly, Ms. Hughes' trial against Accord was the only MDL trial against Accord, and provided the MDL with information regarding Accord's liability. Unless a defendant was identified in a trial scheduling order, no discovery could be directed to that defendant. CMO 7. Therefore, Ms. Hughes case was the only opportunity to get discovery from Accord in the MDL as all other trial plaintiffs have been selected, and none are against Accord.

As explained by the Manual for Complex Litigation, the benefits and costs of a bellwether trial are not the same as in a single plaintiff case:

> If individual trials, sometimes referred to as bellwether trials or test cases, are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases. Some judges permit the plaintiffs and defendants to choose which cases to try initially, but this technique may skew the information that is produced. To obtain the most representative cases from the available pool, a judge should direct the parties to select test cases randomly or limit the selection to cases that the parties agree are typical of the mix of cases. Test cases should produce a sufficient number of representative verdicts and settlements to enable the parties and

5

> the court to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis, and what range of values the cases may have if resolution is attempted on a group basis.

Manual Complex Lit. § 22.315 (4th ed.).

The Court selected Ms. Hughes' case as it was representative of the majority of the MDL plaintiffs. Representation is important as rulings in the case will assist the Court and the parties in the resolution of those common issues. Among those issues common to the MDL are issues of statute of limitations and learned intermediary defenses as applied to the facts of the several representative bellwether cases. This Court has the inherent authority to allocate MDL trial plaintiff case costs to common benefit or other cost sources. This Court has the authority to prevent that heavy financial load of common issue costs falling solely on an individual bellwether plaintiff's shoulders, especially when that plaintiff is financially challenged.

Finally, Accord is a large, multinational pharmaceutical corporation with significant financial resources and will not be burdened by the costs expended in this matter.

Moreover, Defendant has failed to provide many details regarding the costs for deposition transcript fees and other costs, and have not provided a memorandum of law and argument in support of its Bill of Costs. The prevailing party is not entitled to reimbursement for costs such as expedited transcripts or witness fees and allowances in excess of that permitted by 28 U.S.C.A. §1821. *Fogleman v. ARAMCO (Arabian Am. Oil Co.*, 920 F.2d 278, (5th Cir. 1991) (finding added cost of obtaining a transcript on an expedited basis is not ordinarily taxable). A review of the receipts provided by Defendant shows that some of the transcripts appear to have been ordered on an expedited basis. Defendant has not met the burden of supporting the costs requested with particularity and should not be entitled to

6

reimbursement of those costs.

## CONCLUSION

Given the totality of the circumstances, Ms. Hughes respectfully requests that this Court use its vast discretion and equitable powers to deny costs to Defendant Accord. Alternatively, if the Court elects to exercise its discretion to award any costs, Ms. Hughes respectfully asks that the Court disallow any costs not described by Defendant with particularity and/or reduce costs to an amount that does not pose a personal financial hardship to Ms. Hughes. In the alternative, the fact that Plaintiff Hughes' appeal remains pending indicates that the instant costs assessment motion is not ripe for consideration, the interests of equity and judicial economy would be best served by delaying a ruling on the instant motion until any appeal from the judgment is resolved.

Dated: June 17, 2021

Respectfully submitted,

WENDT LAW FIRM, P.C.

**/s/Samuel M. Wendt**
Samuel M. Wendt, MO Bar# 53573
4717 Grand Avenue, Ste 130
Kansas City, MO 64112
Phone: (816) 531-4415
Fax: (816) 531-2507
Email: sam@wendtlaw.com

ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ *Samuel M. Wendt*
Samuel M. Wendt (MO#53573)