UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)     MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO
*Kahn v. Sanofi-Aventis US, LLC*, No. 16-17039

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION *IN LIMINE* TO PROHIBIT THE USE OF
UNRELIABLE EVIDENCE TO SUPPORT CLAIMS OF ALTERNATIVE CAUSATION
AND/OR QUESTIONING WHICH MISCONSTRUES THE APPLICABLE BURDEN
(Motion *in Limine* No. 11)**

**I.     INTRODUCTION**

Plaintiff Elizabeth Kahn respectfully moves this Court to enter an Order *in limine* prohibiting the use of unreliable evidence and argument regarding alternate causes of Plaintiff Elizabeth Kahn's permanent hair loss.

**II.     ARGUMENT**

Pursuant to this Court's Order and Reasons of December 18, 2020, Plaintiff files the instant motion *in limine* to preclude the introduction of unreliable evidence or unsupported argument regarding alternate causes of Plaintiff's permanent hair loss.[1] As this Court noted, Plaintiff is entitled to dispute the "reliability" of Sanofi's evidence and challenges to causation.[2]

An expert witness is one who by education, training or experience has specialized knowledge to assist the jury, but their opinions must be both relevant and reliable. The Fifth Circuit has articulated a five part test for district courts to consider in assessing whether an experts testimony is reliable including: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential

---

[1] *See* Rec. Doc. 11684.
[2] *Id.*

rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Moore v. Ashland Chem. Inc.* 151 F.3d 269, 275 (5th Circ. 1998). Any party seeking to admit expert testimony, including testimony as to alternate causes, must demonstrate that the expert's findings and conclusions are grounded in the scientific method and are therefore reliable. *Id*. An expert's assurance that he or she utilized a generally accepted scientific methodology is insufficient. *Id*. Rather, the party must prove that the expert testimony it seeks to admit is reliable. This is consistent with the law of Louisiana which requires that in order to be reliable, evidence of alternative causes must constitute reasonable hypotheses based upon evidence which is not "remote, conjectural, [or] speculative." *Weber v. Fidelity & Cas. Ins. Co. of NY*, 250 So. 2d 754, 757–58 (La. 1971).

### A. Unreliable Claims of Alternative Causation Should be Precluded.

Sanofi should be precluded from the introduction of alternative *causation* evidence that lacks any scientific basis. Such evidence is remote, conjectural and/or speculative, and therefore is unreliable.

Sanofi's experts routinely cite to case reports of permanent alopecia with drugs other than Taxotere in order to infer a causation link between those drugs and permanent alopecia, but they fail to offer any methodology to support such claimed alternative causes of permanent or irreversible hair loss. Each of Sanofi's general and specific causation experts admit they never undertook any scientific methodology to assess whether or not other chemotherapy drugs, other medical conditions, and/or endocrine therapies such as Tamoxifen cause permanent hair loss.[3]

---

[3] *See* Ex.1, Dep. of John Glaspy, MD, 1/9/2020, at pp. 88:7-23, 196:23 – 201:3, 206:5 – 207:11; *see also* Ex. 2, Report of Dr. Glaspy, 4/29/2019, at p. 48; *see also* Ex. 3, Dep. of John Glaspy, MD, 5/13/2020, at pp. 174:12 – 177:8, 178:10 – 180:19; *see also* Ex. 4, Report of Ellen Chang, Sc.D., 4/17/2020, at p. 4; *see also* Ex. 5, Dep. of Ellen Chang, ScD, 5/19/2020, at pp. 117:23 – 130:5, 132:15 – 133:6, 136:20-23 (" I did not directly assess whether a causal relationship

Under the Fifth Circuit's analysis of scientific reliability, any statements offered by Sanofi's experts are not based on a reliable methodology to assess causation, and are therefore unreliable. Further, these same experts admit that "cases of permanent alopecia have been reported with…" does not mean there is a causation link, and thus cannot be allowed to infer alternate causation before the jury. The Court, in its discretion, may allow Sanofi's experts to testify that "cases of permanent alopecia have been reported with [other drugs]", but it should not allow unsupported testimony or argument inferring that such reports rise to the level of alternate causation. The law is clear that in order to prove causation (including alternate causation) an expert must apply a proper and reliable analysis to support their conclusions. Here, however, each of Sanofi's experts admits they have not done so.

Specifically, Sanofi's only expert witness at the *Earnest* trial, Dr. John Glaspy, admits that he has not attempted to apply any methodology to assess whether any alternate causes, such as other chemotherapy drugs, endocrine therapy, or other medical conditions, may be causing Ms. Kahn's permanent hair loss.[4] Sanofi's other clinical oncologist expert testified similarly.[5] Despite employing no methodology and admitting that their conclusions are based on their own speculative clinical experience, Dr. Glaspy and Dr. Miletello go on to speculate that Ms. Khan may be suffering from permanent or irreversible hair loss as a result of various chemotherapy drugs, medical conditions and/or tamoxifen.[6] Such speculation as to potential alternative causes of Ms. Kahn's permanent hair loss are simply not permissible and should be precluded.

---

has been established between use of any other specific chemotherapeutic agent and irreversible or permanent alopecia."); *see also* Ex. 6, Dep. of Janet Arrowsmith, MD, 7/29/2020, at pp. 36:5-10, 39:3 – 41:22, and 47:1-9 (Dr. Arrowsmith did not perform a causation analysis to assess PCIA and any potential causal association with: Adriamycin, 5-FU/Fluorourosil, cyclophosphamide, epirubicin, paclitaxel/Taxol, Xeloda, Avastin, tamoxifen, and methotrexate.).

[4] *See* Ex. 3 at pp. 178:10 – 180:19.
[5] *See* Ex. 7, Dep. of Gerald Miletello, MD, 5/21/2020, at pp. 86:6-88:17.
[6] *See* Ex. 8, Report of Dr. Miletello, 04/29/2020, at pp. 9-11; *see also* Ex. 2 at pp. 21-25.

In *Hall v. Freese*, 735 F.2d 956 (5th Cir. 1984), the Court ordered a new trial due to defense counsel's prejudicial "guesstimation" that overuse of prescription drugs caused plaintiff's injuries:

> The defense presented absolutely no evidence to support its suggestion that Hall's disability was caused by the use of drugs. In fact, the only opinion expressed by any witness in this regard was that Hall's condition was not caused by drug use. The evidence did show that Hall took a large quantity of prescription drugs, but did not establish that any of these drugs was prescribed improperly. Under the circumstances, the defense attorneys' repeated references to drug use as the probable source of Hall's disability were wholly unjustified and were unfairly prejudicial to Hall's case.

*Id.* at 961. The Court emphasized that "deliberately misstating the record or arguing outside the record [does not] serve any remote purpose for which a trial is intended." *Id.* at 962.

Similarly, in *Berguido v. E. Air Lines*, 35 F.R.D. 200 (E.D. Pa. 1964), the Court held that defense counsel made improper argument as to alternate causation without evidentiary support:

> The argument concerning the possible mechanical failure of the aircraft was certainly without an evidentiary basis, in that all evidence concerning the plane was to the effect that it was functioning well when it left Miami, and up to the time of the crash, none of its crew reported any malfunctions, and subsequent to the accident the parts which could be tested were found to be in good working order. This evidence was uncontradicted and there was no evidence on which to argue mechanical failure. The fact that the jury might be aware how fast mechanical failure can develop, and the fact that another pilot on the same night had trouble with his plane, could not support an inference that the aircraft in question suffered a mechanical failure which was the cause of the accident

*Id.* at 210; *see also id.* ("[T]here was no evidence as to the location of the truck relative to the glide slope and, therefore, its presence could not be used to show that it caused a deflection in the I.L.S. which may have caused the accident, and it was prejudicial to do so.").

The case law is clear that counsel cannot argue outside the evidence. In Ms. Kahn's trial, the evidence will not support any argument Sanofi's experts ever assessed an alternate *cause* of

4

Ms. Kahn's devastating permanent hair loss. This is established through the experts' admissions; it could not be clearer. Sanofi's counsel cannot offer or infer expert testimony on causation in their argument that is unsupported, and in fact refuted, by its own experts; yet, such speculation is precisely what a jury will hear if inferences to non-Taxotere drugs being a potential cause of Ms. Kahn's permanent hair loss are allowed at trial.

Although the testimony of Sanofi's experts regarding potential alternate causes of Ms. Kahn's permanent hair loss should be precluded outright, should this Court be inclined to allow any of Sanofi's experts to discuss potential alternate causes of permanent hair loss, a proffer should be required to protect the jury from being tainted with unsupported expert testimony funneled through Sanofi's proposed experts. Sanofi should have to demonstrate to the Court, outside of the jury's presence, that its experts' testimony concerning alternative causes of permanent alopecia is reliable, and that it was properly disclosed in their respective Rule 26 reports. This proffer requirement should apply to any and all alternative cause theories put forth by any Sanofi expert including, but not limited to, other chemotherapies, other medical conditions, and other medications.

### B. Sanofi Should be Precluded from Arguing Causation Issues that Disregard the Jury Charges on Causation and Have the Propensity to Cause Confusion of the Issues.

At trial, Sanofi is likely to elicit testimony that, because there are case reports of permanent alopecia with all the drugs Ms. Kahn took, it is impossible to determine which chemotherapy caused her permanent hair loss. In fact, this is a central opinion of Sanofi's primary expert, Dr. John Glaspy.[7] Under Federal Rule of Evidence 403, Sanofi should be precluded from eliciting

---

[7] See Ex. 1 at p. 88:7-18 ("Okay, fair enough. You're not going to come into court at the trial of this next case and offer testimony to a reasonable degree of scientific certainty that what you cite on pages 21 through 23, footnotes 25 through 39, establishes a causal chain, link of chain - links of chain to establish causation that any of the drugs listed here, these 15 drugs, to a reasonable degree of scientific certainty, causes or can cause permanent chemotherapy

5

such testimony, whether on cross examination or upon direct of its own experts, as such an assertion mischaracterizes the applicable burden in this case.

A plaintiff is not required to "negate all other possible causes. Otherwise, the mere identification by the record of another possibility, although not shown to be causally active, would break the chain of causation." *Llwellyn v. Lookout Saddle Co.*, 315 So. 2d 69, 71 (La. App. 2d Cir. 1975) (citations omitted). Plaintiff need not prove "with a fair amount of certainty" that other drugs and/or conditions did not cause her permanent or irreversible hair loss because such possibilities have not been shown to be "causally active." Rather, as articulated in the jury instructions in the *Earnest* trial the Plaintiff is required to demonstrate that Taxotere "is at least one of the direct concurring causes of the injury… Plaintiff must show that Defendants conduct was a substantial contributing factor in bringing about the result."[8]

Plaintiff's burden does not require her to establish a "sole cause" in order to meet her substantial contributing factor burden. *Id*. As such, Defendants should not be able to elicit testimony on cross, or from their own experts on direct, that you cannot entirely exclude the other drugs used in combination therapy as contributing to cause, or that it is impossible to determine the sole cause, of plaintiff's injury. Such testimony should be precluded as it implicates an improper standard that there can only be one cause of Plaintiff's injuries. That is not the law, and Sanofi should not be allowed to imply that Plaintiff's burden includes identifying a singular causative agent.

---

induced alopecia; correct? MR. STRONGMAN: Objection. Form. THE WITNESS: That's correct. We'll only talk about it in association.") and 88:24 – 89:11, (quoting p. 23 of his report, "Because Taxotere for early stage breast cancer is given as...a multi-drug regimen and not a single agent, it is impossible to conclude that Taxotere causes permanent alopecia.").
[8] *See* Rec. Doc. 8283-1 at pp. 10-12.

Sanofi therefore should be precluded from making any arguments or inferences, through counsel or through their experts, that misstate the causation burden and/or are inconsistent with the legal burden in this case and this Court's prior jury instructions. Further, because Sanofi's experts do not give opinions on causation in their expert reports that address the appropriate causation standard, as will be conveyed to the jury, they should be precluded from making any conclusory statements about whether Plaintiff has sustained her burden of showing that Taxotere was a substantial contributing factor to her permanent alopecia.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Sanofi be precluded from introducing any testimony on alternative causation, or from arguing or inferring that "cases have been reported with" any other drug is a permissible basis for inferring causation. In the alternative, if Sanofi intends to offer such testimony, Plaintiff respectfully requests that the Court require Sanofi to make a proffer outside the presence of the jury to establish that its expert previously disclosed in his/her Rule 26 expert report the basis and methodology for any alternative causation opinion. And, Plaintiff respectfully requests an order *in limine* precluding Sanofi from arguing, inferring, or otherwise eliciting testimony that an expert cannot say Taxotere is the sole cause of Ms. Kahn's hair loss or that it is impossible to exclude other chemotherapy as a contributing cause, as such statements contradict the causation standard to be evaluated by the jury.

Dated: June 17, 2021

/s/ Christopher L. Coffin
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

Respectfully submitted,

/s/ Karen B. Menzies
Karen Barth Menzies (CA Bar #180234)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com


J. Kyle Bachus
Bachus & Schanker, LLC
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045 Phone:
510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

8

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

John Gomez
The Gomez Law Firm, PLLC
655 West Broadway, Suite 1700
San Diego, CA 92101
Phone: (619) 237.3490
Fax: 619.237.3496.
john@thegomezfirm.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, FL 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Jessica Perez Reynolds
Pendley, Baudin & Coffin
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Phone: (225) 687-6396
Fax: (225) 687-6398
jperez@pbclawfirm.com

Darin L. Schanker
Bachus Schanker
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
dls@coloradolaw.net

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904 15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@amalaw.com

Zachary Wool
Barrios Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
zwool@bkc-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ M. Palmer Lambert
M. PALMER LAMBERT