# EXHIBIT L

                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

********************************************************
IN RE:  TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

                        Civil Action No. 16-MD-2740
                        Section "H"(5)
                        New Orleans, Louisiana
                        September 5, 2019

THIS DOCUMENT RELATES TO ALL CASES
********************************************************


                 TRANSCRIPT OF MOTION HEARING
         HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                 UNITED STATES DISTRICT JUDGE


<u>APPEARANCES:</u>

FOR THE PLAINTIFFS:

                    *DAWN BARRIOS*
                    BARRIOS KINGSDORF & CASTEIX
                    701 POYDRAS STREET
                    SUITE 3650
                    NEW ORLEANS, LA 70139

                    *MATTHEW PALMER LAMBERT*
                    GAINSBURGH BENJAMIN DAVID MEUNIER
                    & WARSHAUER
                    1100 POYDRAS STREET
                    SUITE 2800
                    NEW ORLEANS, LA 70163

                    DARIN SCHANKER
                    *BACHUS & SCHANKER*
                    1899 WYNKOOP STREET
                    SUITE 700
                    DENVER, CO 80202

                    *CHRISTOPHER COFFIN*
                    PENDLEY BAUDIN & COFFIN
                    1515 POYDRAS STREET
                    NEW ORLEANS, LA 70112

                    OFFICIAL TRANSCRIPT

02:33:53PM **1** she doesn't remember, and if she says this is not what I

02:33:56PM **2** said, fine, then we put them on the stand and we're going to

02:33:59PM **3** find out what she said.

02:34:01PM **4**     MR. COFFIN:  Well, we may have to cross them when we

02:34:03PM **5** come to that because there's also hearsay.

02:34:04PM **6**     THE COURT:  I'm making the assumption that

02:34:07PM **7** Ms. Earnest's statements will be consistent.

02:34:10PM **8**     MR. COFFIN:  Understood, Your Honor.

02:34:11PM **9**     THE COURT:  And we're going to cross that bridge when

02:34:13PM **10** we get there.

02:34:13PM **11**     MR. COFFIN:  Understood.

02:34:14PM **12**     THE COURT:  But what I will not allow is an

02:34:17PM **13** inconsistent statement to just be left --

02:34:17PM **14**     MR. COFFIN:  I understood -- I understand that.

02:34:23PM **15**     THE COURT:  -- in the wind.

02:34:24PM **16**     MR. COFFIN:  It's just, there's multiple layers to

02:34:30PM **17** this thing.

02:34:30PM **18**     THE COURT:  Okay.  What I will say is your motion is

02:34:33PM **19** granted to the extent that this report does not come in or

02:34:37PM **20** the statements made to Bianchini and Thompson do not come in

02:34:50PM **21** except with impeachment.

02:34:57PM **22**     MS. SASTRE:  Should we take a break?

02:34:59PM **23**     THE COURT:  I need a glass of water.

02:35:02PM **24**     All right.  On defendant's Motion *in limine*,

02:35:04PM **25** Defendant's Omnibus Number Five, Motion to Preclude -- this

02:35:09PM 1    is record document 7720, Motion to Preclude Evidence or

02:35:14PM 2    Argument Concerning Adverse Events Reports or Other

02:35:16PM 3    Complaints Involving Patients Other Than the Plaintiff.

02:35:21PM 4             MR. STRONGMAN:  And, Your Honor, Jon Strongman on

02:35:25PM 5    behalf of Sanofi, and I will try to move this along too.  So

02:35:26PM 6    these are obviously hearsay documents on top of the fact that

02:35:29PM 7    they're anecdotal information.  They don't go to causation.

02:35:32PM 8    Plaintiffs have argued that adverse event reports are

02:35:39PM 9    relevant to notice obviously is what they've argued and with

02:35:42PM 10   regard to --

02:35:43PM 11            THE COURT:  But the reports themselves would not come

02:35:46PM 12   in, but the --

02:35:46PM 13            MR. STRONGMAN:  Fair enough --

02:35:49PM 14            THE COURT:  -- statistical analysis that was

02:35:51PM 15   performed by or a review of those reports subject to

02:35:54PM 16   cross-examination by you is fair game, right?

02:35:58PM 17            MR. STRONGMAN:  I will live with that ruling, Your

02:36:01PM 18   Honor.

02:36:01PM 19            THE COURT:  Anybody got a response to that?

02:36:05PM 20            Those reports are not coming in.  But if you want to

02:36:12PM 21   talk about it, that's fine.

02:36:14PM 22            MR. MURA:  I was just going to address the hearsay

02:36:18PM 23   points.  I mean, we cite a case, the *Levaquin Product*

02:36:23PM 24   *Liability* case, it is well established that adverse event

02:36:24PM 25   reports generally constitute admissible nonhearsay on the

02:36:27PM 1   issue of a drug maker's notice.  Maybe there's no argument

02:36:31PM 2   about that.

02:36:31PM 3        THE COURT:  I don't think -- I don't think the actual

02:36:35PM 4   reports, the adverse event reports themselves are not coming

02:36:38PM 5   in.  Now, I believe Dr. Madigan, Dr. Kessler and all spoke to

02:36:45PM 6   the statistical analysis and what those reports meant.

02:36:52PM 7        MR. MURA:  We're fine with that, Your Honor.

02:36:52PM 8        THE COURT:  Okay.  Good.

02:36:54PM 9        MR. MURA:  I think the only time I have seen adverse

02:36:58PM 10  event reports, the courts have said it can't -- it's

02:36:59PM 11  sometimes inadmissible when it's the sole basis for a

02:37:01PM 12  causation, but the courts have pretty uniformly held that

02:37:05PM 13  it's relevant to corroborative evidence, particularly when

02:37:09PM 14  there's other evidence of causation as a peer-reviewed

02:37:12PM 15  epidemiological study in connection with the drug.  And

02:37:13PM 16  that's all that's been presented.

02:37:15PM 17       THE COURT:  I don't think -- I don't think -- okay.

02:37:18PM 18  But the reports themselves, they're not coming in.

02:37:22PM 19       MR. MURA:  Yes.

02:37:24PM 20       THE COURT:  But Madigan's going to talk about his

02:37:28PM 21  analysis and his statistical review and that they provided a

02:37:34PM 22  safety signal which forms a hypothesis and then --

02:37:40PM 23       MR. MURA:  Okay.

02:37:41PM 24       THE COURT:  Okay.  76 --

02:37:49PM 25       MR. MICELI:  We have a point of clarification.

02:37:52PM  1          MR. MURA:  We do have a question about Mr. Kopreski's

02:37:58PM  2     testimony because -- I'll just say if Mr. Schanker can

02:38:00PM  3     address the court.  Because he does reference specific

02:38:03PM  4     aspects of the reports.  And so there's just a question about

02:38:05PM  5     that.

02:38:05PM  6          MR. SCHANKER:  And I apologize, Your Honor.  Just

02:38:07PM  7     seeking clarification.  Dr. Kopreski is an employee of

02:38:11PM  8     Sanofi, and just by way of example, he is -- and there's been

02:38:15PM  9     testimony proffered, video deposition, he's asked about

02:38:20PM  10    specific adverse event reports taken through specific

02:38:24PM  11    clusters, and I just wanted to -- of reports in clusters when

02:38:28PM  12    a particular medical clinic reports, well, I've had five or

02:38:32PM  13    six women whose hair fell out and never came back and so

02:38:36PM  14    those are gone through with Dr. Kopreski in testimony.  And

02:38:42PM  15    so I wanted to just seek clarification --

02:38:45PM  16         THE COURT:  What's good for the goose is good for the

02:38:49PM  17    gander.

02:38:50PM  18         MR. STRONGMAN:  I have no interest in going through

02:38:57PM  19    report by report with Dr. Kopreski when the plaintiffs

02:39:00PM  20    aren't.  If they're not coming into evidence, they're not

02:39:02PM  21    coming into evidence.

02:39:05PM  22         MS. MENZIES:  I'm sorry, Your Honor.  My concern,

02:39:08PM  23    Your Honor, is that there is discussion about the contents of

02:39:11PM  24    the reports.  We don't intend to take that case report, ask

02:39:14PM  25    for it to be admitted, but there is specific discussion

02:39:17PM 1    because it goes to the notice.  For example, some of those

02:39:21PM 2    case reports, adverse event reports include investigators

02:39:26PM 3    from Sanofi's own trials reporting to the company in the form

02:39:30PM 4    of an adverse event report saying I'm seeing a patient with

02:39:34PM 5    persisting long ongoing hair loss, haven't seen this before,

02:39:38PM 6    that type of information was presented by our council to

02:39:42PM 7    Mr. Kopreski in his examination and going through that and

02:39:47PM 8    looking in accumulation of that type of notice to Sanofi over

02:39:51PM 9    time.  That's very important evidence to us.  Do we need to

02:39:54PM 10   hand that case report over and ask it to be -- go back to the

02:39:57PM 11   jury room?  No.  But we need to be able to talk about the

02:40:00PM 12   content of the information in those reports because it came

02:40:04PM 13   directly to Sanofi as notice.

02:40:11PM 14          THE COURT:  Mr. Strongman, you want to respond?

02:40:16PM 15          MR. STRONGMAN:  I don't need to respond unless Your

02:40:23PM 16   Honor wants to change her ruling.

02:40:23PM 17          THE COURT:  I'm not --

02:40:25PM 18          MR. STRONGMAN:  If the adverse event reports are not

02:40:28PM 19   coming in, they're not going to come in.  And Dr. Madigan and

02:40:32PM 20   Dr. Kessler can talk about the statistics as you said, that's

02:40:35PM 21   fine.

02:40:36PM 22          THE COURT:  But did Dr. Kopreski then go individually

02:40:42PM 23   through these reports?

02:40:43PM 24          MR. STRONGMAN:  And when I say he went through

02:40:45PM 25   them it was because those -- what the plaintiffs want to do.

02:40:47PM  1    They deposed Dr. Kopreski obviously.  We did not.  They

02:40:51PM  2    deposed him and they put one of these in front of him after

02:40:56PM  3    another for hours and hours and hours.  And that's what they

02:41:00PM  4    want to put into evidence.

02:41:00PM  5            THE COURT:  I think --

02:41:02PM  6            MR. STRONGMAN:  So to me that is putting these into

02:41:05PM  7    evidence which I think is inappropriate and whatever signal

02:41:09PM  8    analysis or notice the plaintiffs need to achieve, they've

02:41:13PM  9    done with their experts, with Dr. Madigan and Dr. Kessler, in

02:41:20PM  10   the analysis and statistics that they ran.

02:41:21PM  11           THE COURT:  I'm at a loss because what I'm not going

02:41:25PM  12   to do, what I don't think is appropriate is to enter these

02:41:31PM  13   multiple adverse event reports into evidence.  And I think

02:41:37PM  14   what's -- what I have seen is that we have people that have

02:41:43PM  15   looked at these adverse event reports and have said we see

02:41:50PM  16   these signals at this point.  We see signals of this

02:41:55PM  17   persistent problem with permanent alopecia.

02:42:00PM  18           MR. MICELI:  Your Honor, I think -- I think the Court

02:42:03PM  19   may be -- and I apologize.  But I think the Court may be

02:42:06PM  20   confusing the FAERS analysis that Dr. Madigan did with the

02:42:12PM  21   adverse event reports that were reported to Sanofi and what

02:42:15PM  22   he did with the clinical trial data.  What we're talking

02:42:20PM  23   about or what Dr. Kopreski did and see Dr. Kopreski has done

02:42:25PM  24   this and Dr. Kopreski --

02:42:25PM  25           THE COURT:  Okay.

02:42:26PM 1          MR. MICELI:  -- I'm certain won't see the light of

02:42:29PM 2     day in this courtroom.

02:42:30PM 3          THE COURT:  I was thinking of the FAERS analysis.

02:42:30PM 4          MR. MICELI:  Yes, Your Honor.  And so what --

02:42:32PM 5          THE COURT:  But what are we talking about here?

02:42:35PM 6          MR. MICELI:  We're not talking about admitting the

02:42:37PM 7     adverse event reports.

02:42:39PM 8          THE COURT:  Let me ask this question:  Is this from

02:42:42PM 9     the GEICAM study?

02:42:45PM 10         MR. MICELI:  It is from the 3 -- TAX 316 and it's

02:42:48PM 11    from other sources.  It's from Sanofi's internal database of

02:42:55PM 12    adverse event reports.  And what -- it's the building of the

02:42:57PM 13    snowball that's rolling downhill where notice after notice

02:42:58PM 14    after notice they should have seen the avalanche coming.

02:43:05PM 15         And Mr. Bachus has gone through a number of days with

02:43:08PM 16    Dr. Kopreski.  Dr. Kopreski then while being questioned by

02:43:15PM 17    Sanofi's lawyers picks out a small amount of incomplete

02:43:17PM 18    reports, case report forms, does a -- what they call a

02:43:19PM 19    reanalysis.  We'll have the opportunity to cross-examine

02:43:23PM 20    their experts as Your Honor instructs us in her order.  And

02:43:27PM 21    he then passes that analysis along to their experts.  So

02:43:30PM 22    their experts get to rely upon the portions of case reports

02:43:35PM 23    that they would like to rely upon or better yet that Sanofi's

02:43:39PM 24    lawyers --

02:43:40PM 25         THE COURT:  But, Mr. Miceli --

02:43:40PM  1          MR. MICELI:  Yes.

02:43:41PM  2          THE COURT:  -- my question is, do the individual

02:43:46PM  3  adverse event reports have to come in?

02:43:49PM  4          MR. MICELI:  No.  They do not, absolutely not.  The

02:43:52PM  5  testimony does.

02:43:53PM  6          THE COURT:  The testimony that you received 15

02:43:55PM  7  adverse event reports in 2008 and what did you do about it?

02:44:00PM  8  Nothing.  And you received 600 in 2009, and what did you do

02:44:05PM  9  about it?  Well, nothing.  Is that what you're --

02:44:09PM  10          MR. MICELI:  I think it's a little bit more than

02:44:10PM  11  that.  We do not want to take our bundle of --

02:44:10PM  12          THE COURT:  That's what I'm wondering.

02:44:14PM  13          MR. MICELI:  -- our box and hand them to the jury.

02:44:17PM  14  But what Mr. Bachus does is, he walks through series, what

02:44:22PM  15  the pharmacovigilance professional at Sanofi -- former

02:44:25PM  16  pharmacovigilance professional says is these are clusters and

02:44:29PM  17  it's important to walk through to show the similarity of

02:44:33PM  18  those because they are considered by the company to be

02:44:35PM  19  clusters or groups that have more significance than just

02:44:39PM  20  single reports.  So you just can't say here's 15, here's 20,

02:44:44PM  21  that's 35, here's 15 --

02:44:44PM  22          THE COURT:  But that's the clusters, aren't they?

02:44:47PM  23          MR. MICELI:  But the testimony is about the

02:44:49PM  24  individual receipt and going through those and how they

02:44:52PM  25  handle them.  And we have it honed down to the time that we

02:45:00PM   1   feel of the 26 hours the Court has provided us with what we

02:45:03PM   2   think is necessary to get that point across.

02:45:14PM   3         MR. STRONGMAN:  And, Your Honor, I would add that

02:45:16PM   4   Dr. Madigan did look at the internal database.  It's in his

02:45:22PM   5   analysis as well.  He has that analysis.  So you were right

02:45:26PM   6   the first time.

02:45:28PM   7         MR. MICELI:  Your Honor, you agree with Mr. Strongman

02:45:30PM   8   so he will agree that you agree with him and that is proper.

02:45:35PM   9   I think if you agree with me I'll agree with you that it's

02:45:37PM  10   proper as well.

02:45:39PM  11         THE COURT:  Wait.  You know what, this is getting out

02:45:41PM  12   of hand.  We can't have 15 people arguing --

02:45:41PM  13         MR. MICELI:  I understand, Your Honor.

02:45:45PM  14         THE COURT:  -- every motion and that's pretty much

02:45:46PM  15   what's happening.

02:45:48PM  16         MR. MICELI:  Your Honor, perhaps the best thing to do

02:45:55PM  17   is wait to see how we try to bring it in and look at it.  I

02:45:59PM  18   don't think it's something -- we believe it's an

02:46:01PM  19   important series --

02:46:01PM  20         THE COURT:  And this is -- and this is in a

02:46:05PM  21   deposition, so I will see it prior to trial?

02:46:07PM  22         MR. MICELI:  Yes, Your Honor.

02:46:09PM  23         THE COURT:  Maybe let me do that, because I have to

02:46:11PM  24   tell you, this is what I'm not inclined to do.  I'm not going

02:46:15PM  25   to have an expert just parrot testimony that's not

02:46:21PM   1   admissible.  That's not happening.  Facts that are not

02:46:26PM   2   admissible I'm not going have an expert parrot those facts

02:46:31PM   3   that I've already said -- and I don't think -- I was thinking

02:46:33PM   4   about the FAERS analysis, but I'm still at a loss as to why

02:46:41PM   5   you need more than the fact that you received these clusters

02:46:46PM   6   on this particular time and how many were in the clusters and

02:46:51PM   7   what they showed -- I'm not sure what your -- what's

02:46:59PM   8   different and -- no.  No.  No.  Y'all got to stop.

02:47:07PM   9        MR. MICELI:  Part of it, Your Honor, is -- Mr. Nolen

02:47:12PM   10  whispered in my ear -- is that they do a reanalysis of a

02:47:15PM   11  number of these.  And that's important.  The other thing is

02:47:18PM   12  to show what they did, but more importantly, what they did

02:47:21PM   13  not do as this snowball was coming down the hill was building

02:47:25PM   14  up.

02:47:25PM   15       THE COURT:  That's different though.  If in a

02:47:27PM   16  reanalysis you threw up --

02:47:34PM   17       MR. MICELI:  Your Honor, if I may, I answered a

02:47:36PM   18  question that I probably really can't answer for you.  You

02:47:39PM   19  asked is this coming in through depositions.  We've asked

02:47:43PM   20  Sanofi to identify for us for a couple days now which of

02:47:47PM   21  their witnesses are going to be coming live and if

02:47:49PM   22  Mr. Kopreski or Dr. Kopreski was coming live we would be able

02:47:53PM   23  to address this differently.  We don't know if we're going to

02:47:53PM   24  have to do it by deposition, but we have provided them with

02:47:56PM   25  our deposition --

02:47:56PM 1        THE COURT:  Do we know if Dr. Kopreski is coming

02:47:59PM 2   live?

02:47:59PM 3        MR. STRONGMAN:  I don't believe Dr. Kopreski is

02:48:02PM 4   coming live.

02:48:03PM 5        THE COURT:  So this would be his deposition

02:48:05PM 6   testimony?

02:48:07PM 7        MR. STRONGMAN:  If the plaintiffs have designated

02:48:10PM 8   testimony from Dr. Kopreski, we have designated counters.  So

02:48:14PM 9   yes.  What the plaintiffs are looking to admit --

02:48:16PM 10       THE COURT:  Let me ask you this, Mr. Strongman.  Let

02:48:19PM 11  me cut to the chase.  Is this concern from Dr. Kopreski's

02:48:24PM 12  testimony, that's the basis of this motion *in limine*?

02:48:28PM 13       MR. STRONGMAN:  I believe that it's the vast majority

02:48:30PM 14  of the concern.  Yes.

02:48:31PM 15       MR. MICELI:  I think he's the only one that was

02:48:35PM 16  questioned on these, Your Honor.  Maybe there was a stray one

02:48:37PM 17  here or there with a witness, but predominantly,

02:48:40PM 18  overwhelmingly, it is Dr. Kopreski.  Sorry.

02:48:42PM 19       THE COURT:  But the actual report, nobody's asking

02:48:46PM 20  for the reports to come in?

02:48:48PM 21       MR. MICELI:  Correct.

02:48:50PM 22       THE COURT:  And what I believe I said is experts

02:48:53PM 23  could rely on the actual data from those reports.

02:48:53PM 24       MR. MICELI:  Right.

02:49:03PM 25       THE COURT:  And you're saying but there's more to the

02:49:07PM  1   story?

02:49:09PM  2         MR. MICELI:   There is more to the story with the

02:49:11PM  3   adverse event reports that the company received.   And

02:49:14PM  4   Dr. Kopreski had four depositions, one individual and three

02:49:18PM  5   30(b)(6); and they're from the 30(b)(6) deposition, the

02:49:23PM  6   deposition of the company that we've designated those --

02:49:27PM  7   those -- that testimony.

02:49:33PM  8         THE COURT:   I will tell you this, it becomes much

02:49:38PM  9   easier when it's a deposition.   I am inclined to say I don't

02:49:44PM  10  think it's coming in, but since it is in deposition and it

02:49:50PM  11  may perhaps be contextual, I will defer to my review of the

02:49:57PM  12  deposition.

02:49:58PM  13        MR. MICELI:   Thank you.

02:49:59PM  14        MR. STRONGMAN:   Thank you, Your Honor.

02:50:02PM  15        MS. SASTRE:   Would Your Honor like to proceed?   Keep

02:50:06PM  16  going?

02:50:06PM  17        THE COURT:   I don't think I have a choice.

02:50:06PM  18        MS. SASTRE:   Okay.

02:50:11PM  19        THE COURT:   There's so much I would say if we weren't

02:50:13PM  20  on the record.

02:50:14PM  21        MS. SASTRE:   I know.   I know.   I think I could make

02:50:16PM  22  some good jokes right now too, Judge, but I won't do that.

02:50:19PM  23        THE COURT:   Erin, just put this one's deferred.   I'm

02:50:22PM  24  going to look at the deposition.

02:50:25PM  25        Motion to Preclude Evidence or Argument Concerning