# EXHIBIT LL

Page 1

```
 1            UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
 2
                                       )
 3    IN RE:  TAXOTERE                 ) MDL No. 2740
      (DOCETAXEL) PRODUCTS             )
 4    LIABILITY LITIGATION             ) SECTION:  H
                                       )
 5    THE DOCUMENT RELATES TO:         )
      SHEILA CRAYTON,                  )
 6    CASE NO. 2:17-CV-05923;          )
      CYNTHIA THIBODEAUX,              )
 7    CASE NO. 2:16-CV-15859           )
 8    *******************************************************
 9             ORAL AND VIDEOTAPED DEPOSITION OF
10                    DAVID MADIGAN, Ph.D.
11                     November 14, 2019
12    *******************************************************
13        ORAL AND VIDEOTAPED DEPOSITION OF DAVID MADIGAN,
14    Ph.D., produced as a witness at the instance of the
15    DEFENDANTS SANOFI-AVENTIS U.S. LLC AND SANOFI US
16    SERVICES, INC., and duly sworn, was taken in the
17    above-styled and numbered cause on the 14th of
18    November, 2019, from 8:09 a.m. to 3:16 p.m., before
19    Tamara Vinson, CSR in and for the State of Texas,
20    reported by machine shorthand, at Williams Hart
21    Boundas & Easterby, 8441 Gulf Freeway, Suite 600,
22    Houston, Texas, 77017, pursuant to the Federal Rules
23    of Civil Procedure and the provisions stated on the
24    record or attached hereto.
25
```

1      Q.   Okay.  And other than that, did your
2   methodology change in any way?
3      A.   A little bit.  So the FAERS analysis in --
4   represented in the figures didn't change.
5      Q.   Okay.
6      A.   The FAERS analysis in Table 3 didn't change,
7   but then I added two extra, if you will, analyses in
8   Tables 4 and 5.
9      Q.   Okay.  Did the underlying methodology by
10  which you performed your FAERS analysis, did that
11  change in any way?
12     A.   With the exception of Tables 4 and 5, no.
13     Q.   Okay.  Perfect.  Thank you.  And so just so
14  -- just so we have it for the record and it's clear,
15  when you were trying to identify the cases to include
16  in your FAERS analysis, the first thing you did was
17  you searched for Taxotere as one of the drugs.  Right?
18     A.   So --
19     Q.   Is "search" not the right --
20     A.   Yeah, right.  So there's kind a language
21  issue here that I'm going to have problems with.
22     Q.   Fair enough.
23     A.   I need to define -- for these kinds of
24  analysis you need to define a target drug, you need to
25  define the comparators and you need to define the

1      Q.   Understood.  And for -- in the case of
2   Taxotere, it would be Taxotere plus high-level term
3   alopecias.  Right?
4      A.   No, no.  That's not what I meant.
5      Q.   Oh, I'm sorry.
6      A.   I meant -- so is target is a drug and the
7   outcome is defined -- this analysis is defined as
8   higher level term alopecias plus permanent or
9   disabled.
10     Q.   Okay.  I understand.  Okay.  I'm with you.
11  Now, if we -- I can't remember.  What did we mark
12  appendix 4 as to your report?
13     A.   Oh, boy.
14     Q.   I think that's Exhibit 6.
15     A.   Yes.
16     Q.   So with respect to Taxotere, if we're looking
17  at Exhibit 4, which I am handing Mr. Miceli right now,
18  how many cases did this analysis identify with respect
19  to Taxotere by the first quarter of 2008?
20     A.   Eight.
21     Q.   By the first quarter of 2008?
22     A.   I beg your pardon.  Sorry.  I'm looking at
23  the wrong thing.  Six.
24     Q.   Six.  Okay.  Did you look at any of those six
25  reports?

Page 138

```
1       A.    What do you mean?
2       Q.    Did you look at any of those six reports?
3       A.    I mean, are you referring to the underlying
4    MedWatch forms?
5       Q.    Correct.
6       A.    I don't have them.
7       Q.    Okay.  Fair to say, then, you didn't review
8    the underlying MedWatch forms?
9       A.    Nor would I.  So for a disproportionality
10   analysis, you'd have to review all six million of
11   them.
12      Q.    I understand.  I'm just trying to establish
13   that you didn't actually look at them.
14      A.    Right, but if I simply say no to be construed
15   as something I -- you know -- I should have done and,
16   no, I didn't.  It's not the nature of my work here.
17      Q.    Okay.  And I think you mentioned that the way
18   -- one of the ways you performed your search or the
19   way you performed it was you had to identify an
20   outcome of -- is it disability or permanent damage?
21      A.    Yes.
22      Q.    Is that right?
23      A.    Yes.
24      Q.    Okay.  And so on the actual MedWatch form, if
25   you were to look at one, there's actually an outcome
```