# Exhibit A

2021 WL 2373490
Only the Westlaw citation is currently available.
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial decisions
issued on or after Jan. 1, 2007. See also
U.S.Ct. of App. 5th Cir. Rules 28.7 and 47.5.
United States Court of Appeals, Fifth Circuit.

IN RE: TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION
Antoinette Durden, Plaintiff-Appellant,
v.
Sanofi U.S. Services, Incorporated; Sanofi-
Aventis, U.S., L.L.C., Defendants-Appellees.

No. 20-30495
|
FILED June 9, 2021

Appeal from the United States District Court for the Eastern District of Louisiana, USDC No. 2:16-MD-2740, USDC No. 2:16-CV-16635

**Attorneys and Law Firms**

Matthew Palmer Lambert, Esq., Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C., New Orleans, LA, Dawn M. Barrios, Barrios, Kingsdorf & Casteix, L.L.P., New Orleans, LA, Christopher L. Coffin, Pendley, Baudin & Coffin, L.L.P., New Orleans, LA, for Plaintiff-Appellant

lana H. Eisenstein, Attorney, Rachel Horton, DLA Piper, L.L.P. (US), Philadelphia, PA, for Defendants-Appellees

Before Jolly, Duncan, and Oldham, Circuit Judges.

**Opinion**

Per Curiam:[*]

 *1 This appeal requires us to decide whether a breast-cancer survivor, Antoinette Durden, timely filed a lawsuit against Sanofi U.S. Services, Inc. and Sanofi Aventis U.S., L.L.C. (together, Sanofi), the makers of a chemotherapy drug called Taxotere. Durden says she suffers from permanent, chemotherapy-induced alopecia caused by Taxotere, and she insists Sanofi failed to warn that its drug could cause permanent—rather than only temporary—hair loss. But she was slow to sue. She waited more than four years after she began to suffer permanent, chemotherapy-induced alopecia. Noting the delay, the district court entered summary judgment dismissing Durden's claims as barred by Louisiana's one-year prescriptive period for delictual actions. Durden appeals. Guided by a recent opinion that resolves many of the issues before us, *In re Taxotere (Docetaxel) Products Liability Litigation (Thibodeaux)*, 995 F.3d 384 (5th Cir. 2021), we AFFIRM.

I.

Sanofi manufactures Taxotere, a chemotherapy drug administered to women who suffer from breast cancer. The Food and Drug Administration first approved Taxotere in 1996. Although the drug's label mentioned "hair loss" as a possible side effect, the label did not mention *permanent* hair loss until December 2015. That month, the label was changed to include the statement that "cases of permanent hair loss have been reported."

Some cancer survivors reported permanent hair loss after receiving chemotherapy treatment using Taxotere. Thousands of them sued Sanofi after seeing lawyer ads tying Taxotere to permanent hair loss. They claimed Sanofi had failed to warn that permanent hair loss was a side effect of Taxotere.

The Judicial Panel on Multidistrict Litigation transferred many of these lawsuits to the Eastern District of Louisiana for coordinated pretrial proceedings, creating MDL 2740. To streamline this multidistrict litigation, the district court directed the plaintiffs to file a master complaint collectively and to file short-form complaints individually. The master complaint contains allegations common to all plaintiffs, and the short-form complaint contains allegations specific to each plaintiff. According to the master complaint, Taxotere causes permanent, chemotherapy-induced alopecia. The master complaint defines permanent, chemotherapy-induced alopecia as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy."

Antoinette Durden is one of many cancer survivors who claim permanent, chemotherapy-induced alopecia caused by Taxotere. Durden received chemotherapy treatment using Taxotere from October 2011 to February 2012. She knew she would lose her hair during chemotherapy, but she did not know the hair loss would be permanent. Before she started chemotherapy, her oncologist told her that hair loss

was a potential side effect. She also signed a consent form; it informed her that her chemotherapy regimen would consist of two drugs, Taxotere and Cytoxan, and it identified "[h]air loss" as one of the "possible risks and discomforts" of treatment.

**\*2** Durden lost much of her hair during chemotherapy. She remained bald for two years. Concerned that her hair had not regrown, Durden contacted her oncologist and dermatologist. She spoke with her oncologist about two months after finishing chemotherapy, in April or May 2012. They discussed that, if Durden's hair had not grown back, "it's likely not going to come back." Durden did not ask which of the two chemotherapy drugs caused her hair loss, but Durden and her oncologist did discuss that chemotherapy was the reason Durden's hair had not regrown.

In February or March 2014, about two years after completing chemotherapy, Durden noticed "little strings of hair" growing on the sides of her head. That hair continued to grow back, though thinner than before. Durden still has only "little strings" on the top of her head. She learned that Taxotere may cause permanent hair loss in 2016, when she saw a lawyer ad on television.

## II.

Durden sued Sanofi on November 29, 2016. Her short-form complaint adopted the allegations of the master complaint, including the definition of permanent, chemotherapy-induced alopecia. In her short-form complaint, Durden described her injury as "[p]ermanent, irreversible and disfiguring alopecia beginning after treatment with Taxotere." Durden also completed a plaintiff-specific "fact sheet," identifying March 2012 as the date she began to experience the injury.

After some discovery, Sanofi moved for summary judgment dismissing Durden's claims as barred by Louisiana's one-year prescriptive period for "delictual actions," which runs from "the day injury or damage is sustained." LA. CIV. CODE ANN. art. 3492. Sanofi contended that Durden's claims were prescribed on the face of her complaint and that Louisiana's equitable doctrine of *contra non valentem* did not suspend the prescriptive period and save Durden's otherwise time-barred claims. Durden of course disagreed. She rejoined that the one-year prescriptive period did not begin to run until 2016, when she saw an ad linking Taxotere to permanent hair loss. At the very least, she insisted, factual disputes about the reasonableness of her actions—and thus the applicability of *contra non valentem*—precluded summary judgment.

The district court sided with Sanofi, granting summary judgment dismissing Durden's claims as barred by the one-year prescriptive period. Its analysis proceeded in two parts.

First, the district court held that Durden's claims were prescribed on the face of the pleadings. The district court calculated the date of Durden's injury using the master complaint's definition of permanent, chemotherapy-induced alopecia: incomplete hair regrowth six months post-chemotherapy. Using this definition, the district court concluded that Durden's "injury manifested itself" in August 2012, six months after she completed chemotherapy. The district court also looked to Durden's plaintiff-specific "fact sheet," in which Durden said she began to suffer persistent alopecia in March 2012. Tacking six months on to that date, Durden's injury occurred, at the latest, in September 2012. Because Durden did not file suit until November 2016, the district court concluded that Durden's claims were facially prescribed regardless of whether her injury occurred in August 2012 or September 2012.

Second, the district court held that Durden had failed to create a genuine dispute on *contra non valentem*. That doctrine did not save Durden's untimely claims because Durden did not act reasonably to discover the cause of her permanent hair loss. Durden had "enough notice to call for an inquiry" into the cause of her permanent hair loss because, among other reasons, her oncologist told her that, if her hair had not regrown, "it's likely not going to come back." Durden "suspected something was wrong and yet failed to investigate its cause," the district court added.

**\*3** Given these conclusions, the district court entered judgment dismissing Durden's claims as barred by the one-year prescriptive period. Durden timely appeals.

## III.

We review the district court's summary judgment *de novo*, applying the same legal standards as that court. *See Ahders v. SEI Priv. Tr. Co.*, 982 F.3d 312, 315 (5th Cir. 2020). Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if "the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit." *Id.* We view the evidence in the light most favorable to Durden and draw all reasonable inferences in her favor. *See Ahders*, 982 F.3d at 315.

Under Louisiana law, "delictual actions" are subject to a liberative prescription of one year. LA. CIV. CODE ANN. art. 3492. Cases brought under the Louisiana Products Liability Act, like Durden's here, are "delictual actions" subject to Article 3492's one-year prescriptive period. *See Marable v. Empire Truck Sales of La., LLC*, 2016-0876 (La. App. 4 Cir. 6/23/17), 221 So. 3d 880, 889. This period "commences to run from the day injury or damage is sustained." LA. CIV. CODE ANN. art. 3492. The burden of proving prescription "is normally on the party pleading prescription." *Younger v. Marshall Indus., Inc.*, 618 So. 2d 866, 869 (La. 1993). If "on the face of the petition it appears that prescription has run," however, "the burden shifts to the plaintiff to prove" a suspension of prescription under Louisiana's equitable doctrine of *contra non valentem*. *Id.*

Durden contends the district court misapplied this burden-shifting rule in the summary-judgment context. We have recognized that some question lingers "as to whether this burden-shifting rule applies at a motion for summary judgment." *Thibodeaux*, 995 F.3d at 389 (citing *Trahan v. BP Am. Prod. Co.*, 2016-267 (La. App. 3 Cir. 12/7/16), 209 So. 3d 166, 170). But we "le[ft] the question unanswered" in *Thibodeaux* "because no party argued in the district court or here that, if the claims were facially prescribed, the burden remained with the defendant." *Id.*

We too will leave the question unanswered. It is true that, unlike in *Thibodeaux*, the plaintiff here, on appeal, urges us to reverse on the basis that the district court misapplied the burden-shifting framework governing prescription at the summary-judgment stage. But here, as in *Thibodeaux*, the argument simply was not preserved: In the district court, Durden made no argument that on summary judgment the burden remains with the defendant, even when the plaintiff's petition is prescribed on its face. In fact, Durden endorsed Sanofi's view of how the burden-shifting framework operates at summary judgment. So we decline to consider the burden-shifting argument raised for the first time on appeal. *See Estate of Duncan v. Comm'r*, 890 F.3d 192, 202 (5th Cir. 2018) ("This court will not consider arguments first raised on appeal[.]").

**\*4** Having laid out the applicable law of prescription, we turn to consider Durden's arguments that the district court erred in holding that the one-year prescriptive period barred her claims.

IV.

In addressing whether Durden timely filed her lawsuit against Sanofi, we proceed in two steps. First, we ask whether Durden's claims are facially prescribed. We conclude they are. Second, we ask whether *contra non valentem* suspends prescription and saves Durden's otherwise untimely claims. We conclude it does not.

A.

The one-year prescriptive period began to run when Durden "sustained" "injury or damage." LA. CIV. CODE ANN. art. 3492. *Thibodeaux* controls our analysis of what constitutes the "injury or damage" and when that "injury or damage" was "sustained." *See* 995 F.3d at 390. We there defined the "injury or damage" in accord with the master complaint's definition of permanent, chemotherapy-induced alopecia: "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy." *Id.* After so defining the "injury or damage," we held that, "[a]s a matter of law, the injury of 'an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy' is sustained when, six months after the completion of chemotherapy, a person has an absence of or incomplete hair regrowth." *Id.*

As relevant here, Durden completed chemotherapy treatment in February 2012. By August 2012, six months after the completion of chemotherapy, Durden "knew [her] hair loss had persisted for that length of time." *Id.* Under *Thibodeaux*, Durden "sustained" the "injury or damage," LA. CIV. CODE ANN. art. 3492, that started the running of the one-year prescriptive period in August 2012, when her hair had not fully regrown. *See id.* Because Durden filed this lawsuit in

November 2016, more than four years after she was injured, her claims are prescribed on the face of her pleadings.

Having concluded that Durden's claims are facially prescribed, we must next decide whether *contra non valentem* suspends the prescriptive period and saves Durden's otherwise time-barred claims.

### B.

*Contra non valentem* is a court-created "exception to prescription" that "mitigate[s] the occasional harshness" of prescriptive periods. *Prevo v. State ex rel. Dep't of Pub. Safety & Corrs. Div. of Prob. & Parole*, 2015-0823 (La. 11/20/15), 187 So. 3d 395, 398 (per curiam) (citing *Carter v. Haygood*, 2004-0646 (La. 1/19/05), 892 So. 2d 1261). The doctrine "is based on the equitable notion that no one is required to exercise a right when it is impossible for him or her to do so." *Id.* (citing *Harvey v. Dixie Graphics, Inc.*, 593 So. 2d 351, 354 (La. 1992)). But it "only applies in 'exceptional circumstances.' " *Renfroe v. State ex rel. Dep't of Transp. & Dev.*, 2001-1646 (La. 2/26/02), 809 So. 2d 947, 953 (quoting LA. CIV. CODE ANN. art. 3467 Official Revision Comment (d)). The Supreme Court of Louisiana has recognized four such circumstances:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or *(4) where the cause of action is neither known nor reasonably knowable by the plaintiff even though the plaintiff's ignorance is not induced by the defendant.*

*5 *Id.* (emphasis added). Durden contends the fourth category of *contra non valentem* saves her otherwise untimely claims.

The fourth category is often called the "discovery rule." See *Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10), 48 So. 3d 234, 245. It will not suspend prescription past the point when the plaintiff has constructive notice, *Cartwright v. Chrysler Corp.*, 255 La. 597, 232 So. 2d 285, 287 (1970), which has been defined as "whatever notice is enough to excite attention and put the injured party on guard and call for inquiry," *Campo v. Correa*, 2001-2707 (La. 6/21/02), 828 So. 2d 502, 510–11. "That means prescription runs 'from the time there is notice enough to call for *inquiry* about a claim, not from the time when the inquiry reveals facts or evidence sufficient to *prove* the claim.' " *Thibodeaux*, 995 F.3d at 391 (quoting *Terrel v. Perkins*, 96-2629 (La. App. 1 Cir. 11/7/97), 704 So. 2d 35, 39).

We established in *Thibodeaux* how the fourth category of *contra non valentem* applies in precisely the circumstances presented here. *Id.* at 390–95. The fourth category of *contra non valentem*, we explained, would suspend the prescriptive period "until the point when a prospective plaintiff through the exercise of reasonable diligence should have 'considered [Taxotere] as a potential root cause of' her injury." *Id.* at 392–93 (alteration in original) (quoting *Oil Ins. Ltd. v. Dow Chem. Co.*, 2007-0418 (La. App. 1 Cir. 11/2/07), 977 So. 2d 18, 23). To determine when a plaintiff should have considered Taxotere as "a potential root cause," we looked to "key information" contained in the master complaint—the same complaint Durden adopted here. *Id.* at 393–94. That information included:

- In 2006, women who claimed they experienced permanent hair loss caused by Taxotere formed an online support group called "Taxotears."

- In late 2006, Dr. Scot Sedlacek, an oncologist, presented a study entitled, "Persistent significant alopecia (PSA) from adjuvant docetaxel after doxorubicin/cyclophosphamide (AC) chemotherapy in women with breast cancer." According to the study, 6.3% of patients who received docetaxel experienced persistent significant alopecia, while none of the women in the groups without docetaxel did.

- In 2010, a Canadian newspaper published an online article entitled, "Women who took chemo drug say they weren't warned of permanent hair loss."

- Just two days later, in 2010, CBS News published an online article entitled, "Sanofi's Latest Challenge: Women Who Say Its Chemotherapy Left Them Permanently Bald," which cited other studies that noted permanent hair loss after taking Taxotere and referenced the "Taxotears" group.

- Later in 2010, dermatologist Ben Talon and others published an article entitled, "Permanent chemotherapy-induced alopecia: Case report and review of the literature," which links docetaxel to permanent, chemotherapy-induced alopecia.

- In 2009, 2011, and 2012, articles published in the *British Journal of Dermatology*, the *American Journal of Dermatopathology*, and the *Annals of Oncology*, respectively, linked permanent hair loss among breast-cancer patients to docetaxel chemotherapy.

**\*6** Based on this "key information," we found "that Taxotere as a possible cause of the persistent hair loss was not an obscure possibility." Id. at 393–94. Rather, "diligence required that Taxotere be explored as a possible explanation" for each plaintiff's persistent hair loss. Id. at 394. Because the plaintiffs had "made no inquiry" into Taxotere as a "possible explanation" for their persistent hair loss, they had "not act[ed] reasonably in light of their injuries," and *contra non valentem*'s fourth category did not suspend prescription. Id.

It is obvious that Thibodeaux does not bode well for Durden's appeal. Applying that decision, we must conclude that Durden failed to raise a genuine dispute as to the fourth category of *contra non valentem*. Like the plaintiffs in Thibodeaux, Durden never "explored" Taxotere "as a possible explanation" for her persistent hair loss. Id. She "needed to investigate Taxotere as a potential cause," id. at 393, but failed altogether to do so. Had she conducted a reasonable inquiry, she would "have uncovered at least some information that linked Taxotere to persistent alopecia." Id. at 394. She had enough notice "to excite [her] attention" and "call for inquiry," Campo, 828 So. 2d at 510–11, as early as April or May 2012, when her oncologist told her that, since her hair had not regrown, "it's likely not going to come back." [1] Further, any argument that the facts supporting her cause of action were not reasonably knowable is foreclosed by Thibodeaux, where we held that the very same causes of action were reasonably knowable by October 2015. [2] Id. at 393–95.

For her part, Durden acknowledges Thibodeaux but attempts to minimize its application. We note that Thibodeaux was decided after the close of briefing. To that end, Sanofi filed a Federal Rule of Appellate Procedure 28(j) letter directing our attention to the decision, and Durden filed a response. In her response, Durden offers four reasons why, in her view, this case differs from that one. None persuades.

First, Durden contends that this case is different because "four doctors said [her hair] would grow back," but this contention finds no support in the record. There is no evidence that any doctor told Durden that her hair would fully regrow after the six-month-post-chemotherapy injury mark. The only evidence to which Durden has directed our attention that is even remotely supportive of the assertion is Durden's deposition testimony that "[t]hey always say it's going to be temporary," and "[t]hey never told me anything about this was going to be permanent." It is not clear who "they" are or when "they" made the statements Durden describes. Regardless, this vague testimony does not come close to establishing that four doctors told Durden her hair would grow back, and it does not distance this case from Thibodeaux.

**\*7** Second, Durden contends this case is different because her "*doctors*" "misdiagnosed her with conditions like 'female pattern hair loss.' " It is true that *one* of Durden's doctors—a dermatologist—diagnosed Durden with "alopecia ... and scarring alopecia[,] likely the component of female pattern hair loss," but it is not clear why that diagnosis makes a relevant difference. There is no evidence that any doctor told Durden that her persistent hair loss was singularly attributable to "female pattern hair loss" to the exclusion of other potential causes. To the contrary, the record reflects that Durden and her oncologist discussed (in April or May 2012) chemotherapy as the reason Durden's hair had not regrown. What is more, there is no evidence that Durden herself reasonably believed that her persistent hair loss was caused by "female pattern hair loss." Durden failed to consider Taxotere as a potential cause of her persistent hair loss because she engaged in no reasonable inquiry to determine Taxotere's effects on the persistent loss of her hair.

Third, Durden contends this case is different because the hair on the sides of her head regrew over the years. But two of the Thibodeaux plaintiffs also experienced partial hair regrowth.

See 995 F.3d at 387–88. The partial regrowth of their hair did not relieve them of the obligation to engage in a "reasonable inquiry into the cause of [their] persistent hair loss." *Id.* at 393. So too here. Durden knew that after her chemotherapy treatment, her hair was not regrowing, and therefore "had an obligation to further investigate the facts in order to pursue [her] claim before the one-year prescriptive period elapsed." *Rozas v. Dep't of Health & Hum. Res.*, 522 So. 2d 1195, 1197 (La. Ct. App. 1988). She failed to do so.

Finally, Durden contends that "[s]he did a lot of research" indicating that her "hair was going to come back." To be sure, Durden testified that she "did" "a lot of" unspecified "research" regarding the *permanency* of her hair loss. But the record contains no evidence that Durden "did" any investigation or study regarding the *cause* of her persistent hair loss. "[D]iligence required" her to "explore[ ]" Taxotere as a "possible explanation," *Thibodeaux*, 995 F.3d at 394, and it is undisputed that she did not do so.

In sum, Durden did not act reasonably in the light of her injuries, and the fourth category of *contra non valentem* does not save her claims.[3]

## V.

In this opinion, we have held that the district court did not err in granting summary judgment dismissing Durden's claims as barred by Louisiana's one-year prescriptive period for delictual actions. The district court correctly concluded that Durden's claims were prescribed on the face of the pleadings and that *contra non valentem* did not save them. Accordingly, the judgment of the district court is, in all respects,

AFFIRMED.

**All Citations**

--- Fed.Appx. ----, 2021 WL 2373490

## Footnotes

| | |
|---|---|
| \* | Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4. |
| 1 | During her deposition, Durden testified that, around January 2014, her dermatologist told her that her hair loss was "probably" going to be "permanent." Towards the end of the deposition, however, Durden changed that testimony in response to her attorney's suggestion that it might have been "an error." Durden then testified that, until 2016, no one had told her that her hair loss was permanent. This changed testimony does not necessarily conflict with the testimony of Durden's oncologist, who did not testify to telling Durden, definitively, that her hair loss was permanent. Rather, the oncologist testified to telling Durden (in April or May 2012) that her hair was "likely not going to come back." |
| 2 | The three lawsuits discussed in *Thibodeaux* were filed on October 14, 2016, October 26, 2016, and December 14, 2016, respectively. *See* 995 F.3d at 389 n.2. We said the causes of action in those lawsuits were " 'reasonably knowable in excess of one year prior to [their] filing' suit." *Id.* at 395 (alteration in original) (quoting *Fontenot v. ABC Ins. Co.*, 95-1707 (La. 6/7/96), 674 So. 2d 960, 965). So we have necessarily noted that the link between Taxotere and persistent alopecia was reasonably knowable by October 14, 2015, one year prior to the filing of the earliest-filed lawsuit. *See id.* |
| 3 | Durden also contends that she is entitled to suspension of the prescriptive period under the third category of *contra non valentem*. That category applies "where the [defendant] himself has done some act effectually to prevent the [plaintiff] from availing himself of his cause of action." *Renfroe*, 809 So. 2d at 953. Sanofi's alleged attempts to conceal the link between Taxotere and permanent hair loss did not prevent Durden from availing herself of her causes of action; a reasonable inquiry would have uncovered all of the information Durden needed. *See Thibodeaux*, 995 F.3d at 395 (reasoning that the third category of *contra non valentem* was "inapplicable" because "a reasonable inquiry would have led to the information needed"). |

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.