# EXHIBIT L

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


**************************************************************
IN RE:   TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

                              Civil Action No. 16-MD-2740
                              Section "H"(5)
                              New Orleans, Louisiana
                              September 5, 2019

THIS DOCUMENT RELATES TO ALL CASES
**************************************************************



                    TRANSCRIPT OF MOTION HEARING
           HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                    UNITED STATES DISTRICT JUDGE



APPEARANCES:

FOR THE PLAINTIFFS:

                    DAWN BARRIOS
                    BARRIOS KINGSDORF & CASTEIX
                    701 POYDRAS STREET
                    SUITE 3650
                    NEW ORLEANS, LA 70139

                    MATTHEW PALMER LAMBERT
                    GAINSBURGH BENJAMIN DAVID MEUNIER
                    & WARSHAUER
                    1100 POYDRAS STREET
                    SUITE 2800
                    NEW ORLEANS, LA 70163

                    DARIN SCHANKER
                    BACHUS & SCHANKER
                    1899 WYNKOOP STREET
                    SUITE 700
                    DENVER, CO 80202

                    CHRISTOPHER COFFIN
                    PENDLEY BAUDIN & COFFIN
                    1515 POYDRAS STREET
                    NEW ORLEANS, LA 70112
```

| | | |
|---|---|---|
| 02:33:53PM | 1 | she doesn't remember, and if she says this is not what I |
| 02:33:56PM | 2 | said, fine, then we put them on the stand and we're going to |
| 02:33:59PM | 3 | find out what she said. |
| 02:34:01PM | 4 |     MR. COFFIN:  Well, we may have to cross them when we |
| 02:34:03PM | 5 | come to that because there's also hearsay. |
| 02:34:04PM | 6 |     THE COURT:  I'm making the assumption that |
| 02:34:07PM | 7 | Ms. Earnest's statements will be consistent. |
| 02:34:10PM | 8 |     MR. COFFIN:  Understood, Your Honor. |
| 02:34:11PM | 9 |     THE COURT:  And we're going to cross that bridge when |
| 02:34:13PM | 10 | we get there. |
| 02:34:13PM | 11 |     MR. COFFIN:  Understood. |
| 02:34:14PM | 12 |     THE COURT:  But what I will not allow is an |
| 02:34:17PM | 13 | inconsistent statement to just be left -- |
| 02:34:17PM | 14 |     MR. COFFIN:  I understood -- I understand that. |
| 02:34:23PM | 15 |     THE COURT:  -- in the wind. |
| 02:34:24PM | 16 |     MR. COFFIN:  It's just, there's multiple layers to |
| 02:34:30PM | 17 | this thing. |
| 02:34:30PM | 18 |     THE COURT:  Okay.  What I will say is your motion is |
| 02:34:33PM | 19 | granted to the extent that this report does not come in or |
| 02:34:37PM | 20 | the statements made to Bianchini and Thompson do not come in |
| 02:34:50PM | 21 | except with impeachment. |
| 02:34:57PM | 22 |     MS. SASTRE:  Should we take a break? |
| 02:34:59PM | 23 |     THE COURT:  I need a glass of water. |
| 02:35:02PM | 24 |     All right.  On defendant's Motion *in limine*, |
| 02:35:04PM | 25 | Defendant's Omnibus Number Five, Motion to Preclude -- this |

|  |  |  |
|---|---|---|
| 02:35:09PM | 1 | is record document 7720, Motion to Preclude Evidence or |
| 02:35:14PM | 2 | Argument Concerning Adverse Events Reports or Other |
| 02:35:16PM | 3 | Complaints Involving Patients Other Than the Plaintiff. |
| 02:35:21PM | 4 | MR. STRONGMAN: And, Your Honor, Jon Strongman on |
| 02:35:25PM | 5 | behalf of Sanofi, and I will try to move this along too. So |
| 02:35:26PM | 6 | these are obviously hearsay documents on top of the fact that |
| 02:35:29PM | 7 | they're anecdotal information. They don't go to causation. |
| 02:35:32PM | 8 | Plaintiffs have argued that adverse event reports are |
| 02:35:39PM | 9 | relevant to notice obviously is what they've argued and with |
| 02:35:42PM | 10 | regard to -- |
| 02:35:43PM | 11 | THE COURT: But the reports themselves would not come |
| 02:35:46PM | 12 | in, but the -- |
| 02:35:46PM | 13 | MR. STRONGMAN: Fair enough -- |
| 02:35:49PM | 14 | THE COURT: -- statistical analysis that was |
| 02:35:51PM | 15 | performed by or a review of those reports subject to |
| 02:35:54PM | 16 | cross-examination by you is fair game, right? |
| 02:35:58PM | 17 | MR. STRONGMAN: I will live with that ruling, Your |
| 02:36:01PM | 18 | Honor. |
| 02:36:01PM | 19 | THE COURT: Anybody got a response to that? |
| 02:36:05PM | 20 | Those reports are not coming in. But if you want to |
| 02:36:12PM | 21 | talk about it, that's fine. |
| 02:36:14PM | 22 | MR. MURA: I was just going to address the hearsay |
| 02:36:18PM | 23 | points. I mean, we cite a case, the *Levaquin Product* |
| 02:36:23PM | 24 | *Liability* case, it is well established that adverse event |
| 02:36:24PM | 25 | reports generally constitute admissible nonhearsay on the |

```
02:36:27PM   1   issue of a drug maker's notice.  Maybe there's no argument
02:36:31PM   2   about that.
02:36:31PM   3            THE COURT:  I don't think -- I don't think the actual
02:36:35PM   4   reports, the adverse event reports themselves are not coming
02:36:38PM   5   in.  Now, I believe Dr. Madigan, Dr. Kessler and all spoke to
02:36:45PM   6   the statistical analysis and what those reports meant.
02:36:52PM   7            MR. MURA:  We're fine with that, Your Honor.
02:36:52PM   8            THE COURT:  Okay.  Good.
02:36:54PM   9            MR. MURA:  I think the only time I have seen adverse
02:36:58PM  10   event reports, the courts have said it can't -- it's
02:36:59PM  11   sometimes inadmissible when it's the sole basis for a
02:37:01PM  12   causation, but the courts have pretty uniformly held that
02:37:05PM  13   it's relevant to corroborative evidence, particularly when
02:37:09PM  14   there's other evidence of causation as a peer-reviewed
02:37:12PM  15   epidemiological study in connection with the drug.  And
02:37:13PM  16   that's all that's been presented.
02:37:15PM  17            THE COURT:  I don't think -- I don't think -- okay.
02:37:18PM  18   But the reports themselves, they're not coming in.
02:37:22PM  19            MR. MURA:  Yes.
02:37:24PM  20            THE COURT:  But Madigan's going to talk about his
02:37:28PM  21   analysis and his statistical review and that they provided a
02:37:34PM  22   safety signal which forms a hypothesis and then --
02:37:40PM  23            MR. MURA:  Okay.
02:37:41PM  24            THE COURT:  Okay.  76 --
02:37:49PM  25            MR. MICELI:  We have a point of clarification.
```

```
02:37:52PM   1           MR. MURA:  We do have a question about Mr. Kopreski's
02:37:58PM   2   testimony because -- I'll just say if Mr. Schanker can
02:38:00PM   3   address the court.  Because he does reference specific
02:38:03PM   4   aspects of the reports.  And so there's just a question about
02:38:05PM   5   that.
02:38:05PM   6           MR. SCHANKER:  And I apologize, Your Honor.  Just
02:38:07PM   7   seeking clarification.  Dr. Kopreski is an employee of
02:38:11PM   8   Sanofi, and just by way of example, he is -- and there's been
02:38:15PM   9   testimony proffered, video deposition, he's asked about
02:38:20PM  10   specific adverse event reports taken through specific
02:38:24PM  11   clusters, and I just wanted to -- of reports in clusters when
02:38:28PM  12   a particular medical clinic reports, well, I've had five or
02:38:32PM  13   six women whose hair fell out and never came back and so
02:38:36PM  14   those are gone through with Dr. Kopreski in testimony.  And
02:38:42PM  15   so I wanted to just seek clarification --
02:38:45PM  16           THE COURT:  What's good for the goose is good for the
02:38:49PM  17   gander.
02:38:50PM  18           MR. STRONGMAN:  I have no interest in going through
02:38:57PM  19   report by report with Dr. Kopreski when the plaintiffs
02:39:00PM  20   aren't.  If they're not coming into evidence, they're not
02:39:02PM  21   coming into evidence.
02:39:05PM  22           MS. MENZIES:  I'm sorry, Your Honor.  My concern,
02:39:08PM  23   Your Honor, is that there is discussion about the contents of
02:39:11PM  24   the reports.  We don't intend to take that case report, ask
02:39:14PM  25   for it to be admitted, but there is specific discussion
```

| | | |
|---|---|---|
| 02:39:17PM | 1 | because it goes to the notice.  For example, some of those |
| 02:39:21PM | 2 | case reports, adverse event reports include investigators |
| 02:39:26PM | 3 | from Sanofi's own trials reporting to the company in the form |
| 02:39:30PM | 4 | of an adverse event report saying I'm seeing a patient with |
| 02:39:34PM | 5 | persisting long ongoing hair loss, haven't seen this before, |
| 02:39:38PM | 6 | that type of information was presented by our council to |
| 02:39:42PM | 7 | Mr. Kopreski in his examination and going through that and |
| 02:39:47PM | 8 | looking in accumulation of that type of notice to Sanofi over |
| 02:39:51PM | 9 | time.  That's very important evidence to us.  Do we need to |
| 02:39:54PM | 10 | hand that case report over and ask it to be -- go back to the |
| 02:39:57PM | 11 | jury room?  No.  But we need to be able to talk about the |
| 02:40:00PM | 12 | content of the information in those reports because it came |
| 02:40:04PM | 13 | directly to Sanofi as notice. |
| 02:40:11PM | 14 |       THE COURT:  Mr. Strongman, you want to respond? |
| 02:40:16PM | 15 |       MR. STRONGMAN:  I don't need to respond unless Your |
| 02:40:23PM | 16 | Honor wants to change her ruling. |
| 02:40:23PM | 17 |       THE COURT:  I'm not -- |
| 02:40:25PM | 18 |       MR. STRONGMAN:  If the adverse event reports are not |
| 02:40:28PM | 19 | coming in, they're not going to come in.  And Dr. Madigan and |
| 02:40:32PM | 20 | Dr. Kessler can talk about the statistics as you said, that's |
| 02:40:35PM | 21 | fine. |
| 02:40:36PM | 22 |       THE COURT:  But did Dr. Kopreski then go individually |
| 02:40:42PM | 23 | through these reports? |
| 02:40:43PM | 24 |       MR. STRONGMAN:  And when I say he went through |
| 02:40:45PM | 25 | them it was because those -- what the plaintiffs want to do. |

02:40:47PM **1** They deposed Dr. Kopreski obviously. We did not. They
02:40:51PM **2** deposed him and they put one of these in front of him after
02:40:56PM **3** another for hours and hours and hours. And that's what they
02:41:00PM **4** want to put into evidence.
02:41:00PM **5**         THE COURT: I think --
02:41:02PM **6**         MR. STRONGMAN: So to me that is putting these into
02:41:05PM **7** evidence which I think is inappropriate and whatever signal
02:41:09PM **8** analysis or notice the plaintiffs need to achieve, they've
02:41:13PM **9** done with their experts, with Dr. Madigan and Dr. Kessler, in
02:41:20PM **10** the analysis and statistics that they ran.
02:41:21PM **11**         THE COURT: I'm at a loss because what I'm not going
02:41:25PM **12** to do, what I don't think is appropriate is to enter these
02:41:31PM **13** multiple adverse event reports into evidence. And I think
02:41:37PM **14** what's -- what I have seen is that we have people that have
02:41:43PM **15** looked at these adverse event reports and have said we see
02:41:50PM **16** these signals at this point. We see signals of this
02:41:55PM **17** persistent problem with permanent alopecia.
02:42:00PM **18**         MR. MICELI: Your Honor, I think -- I think the Court
02:42:03PM **19** may be -- and I apologize. But I think the Court may be
02:42:06PM **20** confusing the FAERS analysis that Dr. Madigan did with the
02:42:12PM **21** adverse event reports that were reported to Sanofi and what
02:42:15PM **22** he did with the clinical trial data. What we're talking
02:42:20PM **23** about or what Dr. Kopreski did and see Dr. Kopreski has done
02:42:25PM **24** this and Dr. Kopreski --
02:42:25PM **25**         THE COURT: Okay.

| | | |
|---|---|---|
| 02:42:26PM | 1 | MR. MICELI: -- I'm certain won't see the light of |
| 02:42:29PM | 2 | day in this courtroom. |
| 02:42:30PM | 3 | THE COURT: I was thinking of the FAERS analysis. |
| 02:42:30PM | 4 | MR. MICELI: Yes, Your Honor. And so what -- |
| 02:42:32PM | 5 | THE COURT: But what are we talking about here? |
| 02:42:35PM | 6 | MR. MICELI: We're not talking about admitting the |
| 02:42:37PM | 7 | adverse event reports. |
| 02:42:39PM | 8 | THE COURT: Let me ask this question: Is this from |
| 02:42:42PM | 9 | the GEICAM study? |
| 02:42:45PM | 10 | MR. MICELI: It is from the 3 -- TAX 316 and it's |
| 02:42:48PM | 11 | from other sources. It's from Sanofi's internal database of |
| 02:42:55PM | 12 | adverse event reports. And what -- it's the building of the |
| 02:42:57PM | 13 | snowball that's rolling downhill where notice after notice |
| 02:42:58PM | 14 | after notice they should have seen the avalanche coming. |
| 02:43:05PM | 15 | And Mr. Bachus has gone through a number of days with |
| 02:43:08PM | 16 | Dr. Kopreski. Dr. Kopreski then while being questioned by |
| 02:43:15PM | 17 | Sanofi's lawyers picks out a small amount of incomplete |
| 02:43:17PM | 18 | reports, case report forms, does a -- what they call a |
| 02:43:19PM | 19 | reanalysis. We'll have the opportunity to cross-examine |
| 02:43:23PM | 20 | their experts as Your Honor instructs us in her order. And |
| 02:43:27PM | 21 | he then passes that analysis along to their experts. So |
| 02:43:30PM | 22 | their experts get to rely upon the portions of case reports |
| 02:43:35PM | 23 | that they would like to rely upon or better yet that Sanofi's |
| 02:43:39PM | 24 | lawyers -- |
| 02:43:40PM | 25 | THE COURT: But, Mr. Miceli -- |

```
02:43:40PM   1              MR. MICELI:  Yes.
02:43:41PM   2              THE COURT:  -- my question is, do the individual
02:43:46PM   3   adverse event reports have to come in?
02:43:49PM   4              MR. MICELI:  No.  They do not, absolutely not.  The
02:43:52PM   5   testimony does.
02:43:53PM   6              THE COURT:  The testimony that you received 15
02:43:55PM   7   adverse event reports in 2008 and what did you do about it?
02:44:00PM   8   Nothing.  And you received 600 in 2009, and what did you do
02:44:05PM   9   about it?  Well, nothing.  Is that what you're --
02:44:09PM  10              MR. MICELI:  I think it's a little bit more than
02:44:10PM  11   that.  We do not want to take our bundle of --
02:44:10PM  12              THE COURT:  That's what I'm wondering.
02:44:14PM  13              MR. MICELI:  -- our box and hand them to the jury.
02:44:17PM  14   But what Mr. Bachus does is, he walks through series, what
02:44:22PM  15   the pharmacovigilance professional at Sanofi -- former
02:44:25PM  16   pharmacovigilance professional says is these are clusters and
02:44:29PM  17   it's important to walk through to show the similarity of
02:44:33PM  18   those because they are considered by the company to be
02:44:35PM  19   clusters or groups that have more significance than just
02:44:39PM  20   single reports.  So you just can't say here's 15, here's 20,
02:44:44PM  21   that's 35, here's 15 --
02:44:44PM  22              THE COURT:  But that's the clusters, aren't they?
02:44:47PM  23              MR. MICELI:  But the testimony is about the
02:44:49PM  24   individual receipt and going through those and how they
02:44:52PM  25   handle them.  And we have it honed down to the time that we
```

|  |  |  |
|---|---|---|
| 02:45:00PM | 1 | feel of the 26 hours the Court has provided us with what we |
| 02:45:03PM | 2 | think is necessary to get that point across. |
| 02:45:14PM | 3 |     MR. STRONGMAN:  And, Your Honor, I would add that |
| 02:45:16PM | 4 | Dr. Madigan did look at the internal database.  It's in his |
| 02:45:22PM | 5 | analysis as well.  He has that analysis.  So you were right |
| 02:45:26PM | 6 | the first time. |
| 02:45:28PM | 7 |     MR. MICELI:  Your Honor, you agree with Mr. Strongman |
| 02:45:30PM | 8 | so he will agree that you agree with him and that is proper. |
| 02:45:35PM | 9 | I think if you agree with me I'll agree with you that it's |
| 02:45:37PM | 10 | proper as well. |
| 02:45:39PM | 11 |     THE COURT:  Wait.  You know what, this is getting out |
| 02:45:41PM | 12 | of hand.  We can't have 15 people arguing -- |
| 02:45:41PM | 13 |     MR. MICELI:  I understand, Your Honor. |
| 02:45:45PM | 14 |     THE COURT:  -- every motion and that's pretty much |
| 02:45:46PM | 15 | what's happening. |
| 02:45:48PM | 16 |     MR. MICELI:  Your Honor, perhaps the best thing to do |
| 02:45:55PM | 17 | is wait to see how we try to bring it in and look at it.  I |
| 02:45:59PM | 18 | don't think it's something -- we believe it's an |
| 02:46:01PM | 19 | important series -- |
| 02:46:01PM | 20 |     THE COURT:  And this is -- and this is in a |
| 02:46:05PM | 21 | deposition, so I will see it prior to trial? |
| 02:46:07PM | 22 |     MR. MICELI:  Yes, Your Honor. |
| 02:46:09PM | 23 |     THE COURT:  Maybe let me do that, because I have to |
| 02:46:11PM | 24 | tell you, this is what I'm not inclined to do.  I'm not going |
| 02:46:15PM | 25 | to have an expert just parrot testimony that's not |

| | | |
|---|---|---|
| 02:46:21PM | 1 | admissible.  That's not happening.  Facts that are not |
| 02:46:26PM | 2 | admissible I'm not going have an expert parrot those facts |
| 02:46:31PM | 3 | that I've already said -- and I don't think -- I was thinking |
| 02:46:33PM | 4 | about the FAERS analysis, but I'm still at a loss as to why |
| 02:46:41PM | 5 | you need more than the fact that you received these clusters |
| 02:46:46PM | 6 | on this particular time and how many were in the clusters and |
| 02:46:51PM | 7 | what they showed -- I'm not sure what your -- what's |
| 02:46:59PM | 8 | different and -- no.  No.  No.  Y'all got to stop. |
| 02:47:07PM | 9 | MR. MICELI:  Part of it, Your Honor, is -- Mr. Nolen |
| 02:47:12PM | 10 | whispered in my ear -- is that they do a reanalysis of a |
| 02:47:15PM | 11 | number of these.  And that's important.  The other thing is |
| 02:47:18PM | 12 | to show what they did, but more importantly, what they did |
| 02:47:21PM | 13 | not do as this snowball was coming down the hill was building |
| 02:47:25PM | 14 | up. |
| 02:47:25PM | 15 | THE COURT:  That's different though.  If in a |
| 02:47:27PM | 16 | reanalysis you threw up -- |
| 02:47:34PM | 17 | MR. MICELI:  Your Honor, if I may, I answered a |
| 02:47:36PM | 18 | question that I probably really can't answer for you.  You |
| 02:47:39PM | 19 | asked is this coming in through depositions.  We've asked |
| 02:47:43PM | 20 | Sanofi to identify for us for a couple days now which of |
| 02:47:47PM | 21 | their witnesses are going to be coming live and if |
| 02:47:49PM | 22 | Mr. Kopreski or Dr. Kopreski was coming live we would be able |
| 02:47:53PM | 23 | to address this differently.  We don't know if we're going to |
| 02:47:53PM | 24 | have to do it by deposition, but we have provided them with |
| 02:47:56PM | 25 | our deposition -- |

|  |  |  |
|---|---|---|
| 02:47:56PM | 1 | THE COURT:  Do we know if Dr. Kopreski is coming |
| 02:47:59PM | 2 | live? |
| 02:47:59PM | 3 | MR. STRONGMAN:  I don't believe Dr. Kopreski is |
| 02:48:02PM | 4 | coming live. |
| 02:48:03PM | 5 | THE COURT:  So this would be his deposition |
| 02:48:05PM | 6 | testimony? |
| 02:48:07PM | 7 | MR. STRONGMAN:  If the plaintiffs have designated |
| 02:48:10PM | 8 | testimony from Dr. Kopreski, we have designated counters.  So |
| 02:48:14PM | 9 | yes.  What the plaintiffs are looking to admit -- |
| 02:48:16PM | 10 | THE COURT:  Let me ask you this, Mr. Strongman.  Let |
| 02:48:19PM | 11 | me cut to the chase.  Is this concern from Dr. Kopreski's |
| 02:48:24PM | 12 | testimony, that's the basis of this motion *in limine*? |
| 02:48:28PM | 13 | MR. STRONGMAN:  I believe that it's the vast majority |
| 02:48:30PM | 14 | of the concern.  Yes. |
| 02:48:31PM | 15 | MR. MICELI:  I think he's the only one that was |
| 02:48:35PM | 16 | questioned on these, Your Honor.  Maybe there was a stray one |
| 02:48:37PM | 17 | here or there with a witness, but predominantly, |
| 02:48:40PM | 18 | overwhelmingly, it is Dr. Kopreski.  Sorry. |
| 02:48:42PM | 19 | THE COURT:  But the actual report, nobody's asking |
| 02:48:46PM | 20 | for the reports to come in? |
| 02:48:48PM | 21 | MR. MICELI:  Correct. |
| 02:48:50PM | 22 | THE COURT:  And what I believe I said is experts |
| 02:48:53PM | 23 | could rely on the actual data from those reports. |
| 02:48:53PM | 24 | MR. MICELI:  Right. |
| 02:49:03PM | 25 | THE COURT:  And you're saying but there's more to the |

| | | |
|---|---|---|
| 02:49:07PM | 1 | story? |
| 02:49:09PM | 2 | MR. MICELI: There is more to the story with the |
| 02:49:11PM | 3 | adverse event reports that the company received. And |
| 02:49:14PM | 4 | Dr. Kopreski had four depositions, one individual and three |
| 02:49:18PM | 5 | 30(b)(6); and they're from the 30(b)(6) deposition, the |
| 02:49:23PM | 6 | deposition of the company that we've designated those -- |
| 02:49:27PM | 7 | those -- that testimony. |
| 02:49:33PM | 8 | THE COURT: I will tell you this, it becomes much |
| 02:49:38PM | 9 | easier when it's a deposition. I am inclined to say I don't |
| 02:49:44PM | 10 | think it's coming in, but since it is in deposition and it |
| 02:49:50PM | 11 | may perhaps be contextual, I will defer to my review of the |
| 02:49:57PM | 12 | deposition. |
| 02:49:58PM | 13 | MR. MICELI: Thank you. |
| 02:49:59PM | 14 | MR. STRONGMAN: Thank you, Your Honor. |
| 02:50:02PM | 15 | MS. SASTRE: Would Your Honor like to proceed? Keep |
| 02:50:06PM | 16 | going? |
| 02:50:06PM | 17 | THE COURT: I don't think I have a choice. |
| 02:50:06PM | 18 | MS. SASTRE: Okay. |
| 02:50:11PM | 19 | THE COURT: There's so much I would say if we weren't |
| 02:50:13PM | 20 | on the record. |
| 02:50:14PM | 21 | MS. SASTRE: I know. I know. I think I could make |
| 02:50:16PM | 22 | some good jokes right now too, Judge, but I won't do that. |
| 02:50:19PM | 23 | THE COURT: Erin, just put this one's deferred. I'm |
| 02:50:22PM | 24 | going to look at the deposition. |
| 02:50:25PM | 25 | Motion to Preclude Evidence or Argument Concerning |