# EXHIBIT TT

# SUPPLEMENTAL EXPERT REPORT

# DAVID A. KESSLER, M.D.

**I.     Background**

1.     Except as stated herein, for purposes of this Supplemental Expert Report ("Supplement"), I incorporate my Expert Report dated November 6, 2018 ("November 2018 Report") as if fully set forth herein.

2.     My understanding is that the bellwether plaintiffs at this time include but are not limited to: 1) Cynthia Thibodeaux v. Sanofi S.A., et al., Case No. 2:16-cv-15859; and 2) Sheila Crayton v. Sanofi S.A., et al., Case No. 2:17-cv-05923.[1]  Both of these plaintiffs were administered Taxotere in 2008.

**II.    Supplement of Opinions in November 2018 Report.**

    **A.     Opinions Regarding Sanofi's Duty to Warn Physicians and Patients About the Risk of Irreversible Alopecia Associated With Taxotere as of 2008.**

3.     Based on the reasons set forth in my November 2018 Report, as supplemented herein,[2] I conclude that my opinions regarding Sanofi's duties as of 2008 are the same as those provided in my November 2018 Report.[3]

4.     My opinion is that based on all scientific evidence, Sanofi should have warned patients and physicians about the risk of irreversible alopecia with Taxotere in its label by as early as 2006, and certainly by 2008.  This is consistent with my prior testimony.[4]

---

[1] An updated Schedule 2, MDL Bellwether Cases, is attached to this Supplement.

[2] As noted in paragraph 11 and footnote 5 of my November 2018 Report, I reserved the right to review additional documents or information.  For purposes of this Supplement, I have reviewed additional documents and information set forth in Supplemental Appendix C.

[3] As noted in paragraph 11 and footnote 5 of my November 2018 Report, I reserved the right to analyze the issues at both earlier and later dates.

[4] *See* Deposition of Dr. David Kessler, December 20, 2018 at 250:17-252:1; Trial Testimony of Dr. David Kessler, September 17, 2019 at 331:3-10, 386:24-387:2, 434:2-8.

10. This general causation opinion reviews and analyzes two issues: (i) whether there is a statistically significant increased risk of irreversible alopecia with Taxotere; and (ii) application of the Bradford Hill criteria.

### A. Evidence of a Statistically Significant Increased Risk of Irreversible Alopecia With Taxotere.

11. In order to determine whether there is evidence of a statistically significant increased risk of irreversible alopecia with Taxotere, I first identified, reviewed and analyzed the following data sources: (i) Sanofi's TAX 316 and TAX 301 clinical trial data; (ii) reports of irreversible alopecia in Sanofi's internal global pharmacovigilance database; (iii) a statistical analysis of the FDA's Adverse Event Reporting System database; (iv) medical literature discussing or identifying reports of irreversible alopecia after treatment with Taxotere, Taxotere-containing regimens, or other chemotherapy drugs; (v) Sanofi's internal documents; and (vi) Sanofi's communications with and submissions to U.S. and foreign regulatory authorities.

12. In the regular course of my training and experience, I routinely request biostatisticians to provide statistical calculations of scientific data and evidence for my review. In my November 2018 Report, I discussed certain statistical calculations performed upon my request by Dr. David Madigan that I reviewed and agreed with. I incorporate that discussion and analysis from my November 2018 Report herein.

13. Specifically, in my November 2018 Report, I discussed statistical analysis comparing the adverse event rate for irreversible alopecia in the TAC versus FAC arms from the TAX 316 and TAX 301 clinical trials that demonstrated a statistically significant increased risk of irreversible alopecia for patients in the TAC arm versus the FAC arm at nearly all time

5

periods in the TAX 316 clinical trial.[12]  I have seen no evidence that Sanofi conducted any statistical analysis comparing the risk of irreversible alopecia in the TAC versus FAC arms of either the TAX 316 or TAX 301 clinical trials at any other time.[13]

14.     Moreover, a pooled analysis (random effects meta-analysis) of the adverse event rates for irreversible alopecia from the TAX 316 and TAX 301 clinical trials demonstrated a statistically significant increased risk of irreversible alopecia for patients in the TAC arm versus the FAC arm (a rate ratio of 1.85 with a corresponding 95% confidence interval (1.04, 3.31) and a p-value of 0.04).[14]

---

[12] The risk ratio of irreversible alopecia for patients in the TAC arm versus the FAC at the 2009 final time period for the TAX 316 clinical trial is 1.80, 95% confidence interval (0.98, 3.28).  (*See* November 2018 Report).  Nevertheless, based on my review, the incidence rate for irreversible alopecia in both GEICAM 9805/TAX 301 and TAX 316 may be under reported.  *See id.*

The number of subjects followed into the follow-up period for GEICAM 9805/TAX 301 was only 49/532 (9.2%).  *See* TAX 301/GEICAM 9805 Interim Clinical Study Report, Jan. 30, 2004 (Sanofi_00799397); TAX 301/GEICAM 9805 Clinical Study Report, Nov. 9, 2009 (Sanofi_00799597).  As Sanofi states, the final clinical trial report for GEICAM 9805/TAX 301 states "during 5 year follow-up, the CSR [clinical trial report] notes 'Most TEAEs were followed into the follow-up period at the discretion of the Investigator.'  This implies that the most of cases of alopecia were not followed during the follow up period in the GEICAM study."  Nanae Hangai, Docetaxel Labeling Queries from PMDA [Japan's Pharmaceutical and Medical Devices Agency], May 24, 2016 (Sanofi_01331114).

For TAX 316, Sanofi states that its follow-up reporting and collection strategy did not include capturing adverse event start and stop dates to fully understand the duration of adverse events like irreversible alopecia *See, e.g.*, Email from Jean-Philippe Aussel to Catherine Crane and Michael Kopreski, May 21, 2012 (Sanofi_02932469) ("I confirm also that the CRF AE modules did not capture AE start and stop dates . . . .  Note for very large adjuvant trials conducted on product with a well known safety profile (here Taxotere) and in which AE durations are not analyzed, the collection of AE start and stop dates would have yielded only extra validation, queries etc for no added value in terms of safety results.  FYI-similar AE collection strategy (without dates) was applied for the TAX-316/BCIRG-001 early breast cancer pivotal registration study without any consequences on the positive outcomes of the FDA/EMA approvals.").

[13] *See also* Deposition of Barry Childs, M.D., October 26, 2018 at 113:23-114:9 ("Q. Do you know whether Sanofi ever engaged in any clinical trials to determine whether or not Taxotere can cause permanent hair loss in some people who are administered the drug? A. I'm not aware that Sanofi did that, and I certainly was not part of anything that they did with respect to that.") (objection omitted).  I also reviewed Sanofi's internal Summary of Clinical Pharmacology Information and the deposition testimony of Dr. Paul Chew and accompanying exhibits.  Based on this evidence, 221 of 1,024 studies performed by Sanofi were lost or destroyed.  Of these 221 studies, 49 were Taxotere studies.

[14] *See* November 2018 Report.