IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to<br><br>Cindy Smith<br>Case No. 2:18-cv-07702 | MDL No. 2740<br><br>SECTION "H" (5) |

**PLAINTIFF'S, CINDY SMITH'S, RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS**

Plaintiff Cindy Smith hereby submits this Response to Defendants' Statement of Undisputed Material Facts, which was submitted in support of Defendants' Motion for Summary Judgment. Plaintiff Smith submits this Response pursuant to Local Rule 56.1 and states:

1. Admitted, although it is more precise to state that Ms. Smith learned that she had breast cancer after a hematoma was removed from her breast and the tissue was tested.[1]

2. Admitted.

3. Ms. Smith admits that "at the time" of her diagnosis, she did not consider declining treatment. However, Ms. Smith clarifies that this testimony was a reference to her decision to treat her cancer in general. This testimony did not address whether Ms. Smith considered declining specific chemotherapy drugs, nor that she had the information necessary to make informed decisions about specific chemotherapy drugs.

4. Admitted.

---

[1] Ex. A, Smith Dep., 76:18 to 77:18.

0

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Denied. The deposition excerpts cited by Defendants (*i.e.*, Ex. A, Smith Dep., 39:8-17 and 165:12-166:3) do not contain testimony stating that by January 2015, Ms. Smith's hair began regrowing "much thinner" than prior to treatment.

10. Ms. Smith admits that she began using Keranique around June 2015. Ms. Smith denies that she began using Keranique "because she thought her hair should be thicker than it was" and the deposition excerpts cited by Defendants (*i.e.*, Ex. A, Smith Dep., 23:19–24:1; 48:6–14; 165:6–21) do not contain such testimony.

11. Denied. The cited record is not competent summary judgment evidence.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

Plaintiff Smith hereby submits her Statement of Undisputed Material Facts in Opposition to Defendants' Motion for Summary Judgment on Statute of Limitations Grounds and states:

1. Ms. Smith has no medical training.[2]

2. Ms. Smith has no cancer history prior to 2014.[3]

---

[2] *Id.* 35:3
[3] *Id.* 76:13—15.

1

3. Ms. Smith relied on her doctors to determine which cancer treatments she should undergo.[4]

4. Ms. Smith's being apprised of the full risk profile in each of her treatment options was an important consideration to her in selecting the best care possible.[5]

5. Ms. Smith's oncologist did not begin warning patients that hair loss from Taxotere may be permanent until a "year or two" prior to the oncologist's deposition, which was taken on October 14, 2020.[6]

6. In addition to her doctor's counsel, Ms. Smith was given informational materials that said that the treatments she was receiving might cause hair loss, but they did not go into any detail regarding the extent of hair loss.[7]

7. A brochure given to Ms. Smith stated that "[a]lmost always, your hair will grow back two to three months after chemotherapy is over."[8]

8. A pamphlet advised Ms. Smith that regrowth would be "very fine when it starts growing back", and that "new hair may not look or feel the same as before." Ms. Smith interpreted this to mean that hair would be very fine, look different or feel different only with regrowth first "starts," not permanently.[9]

9. Ms. Smith experienced global hair loss during her chemotherapy, but after she finished with the treatment, her hair slowly began to come back in January 2015.[10]

---

[4] *Id.* 86:10—25.
[5] *Id.* 116:10—24.
[6] Ex. B, Herrington Dep. 37:1—8.
[7] *Id.* 16:10—21.
[8] *Id.* 73-74.
[9] Ex. A, Smith Dep. 254—57.
[10] *Id.* 39:11—17.

10. Ms. Smith understood from the information she received that her hair loss was temporary, and that the timeframes proposed for when she should expect it to grow back were approximations, and she did not interpret them to mean that there was a risk that her hair loss would be permanent.[11]

11. To stimulate the expected hair regrowth, she tried Karinique treatment, which made her existing hair grow faster, but did not generate new hair growth.[12]

12. Dr. Calvin Ennis told Ms. Smith that chemo had caused her hair loss, and prescribed medication to help generate regrowth.[13]

13. Dr. Calvin Ennis had never seen chemo-induced hair loss that was permanent,[14] and in his testimony, outlined the diagnostic and treatment steps he takes when a patient reports hair loss.[15]

14. Dr. Calvin Ennis never diagnosed Ms. Smith with permanent alopecia, but did refer her to a dermatologist to see if anything could be done to stimulate hair growth.[16]

15. In December 2016, at her appointment with a dermatologist, Ms. Smith was advised to take biotin, an over-the-counter supplement thought to bolster hair growth.[17]

16. Ms. Smith followed her dermatologist's recommendation and took biotin for years before being convinced that it was not making a difference.[18]

---

[11] *Id.* at 258—61.
[12] *Id.* 47:7—13.
[13] *Id.* 45.
[14] Ex. C, Ennis Dep. 25:4—8.
[15] *Id.* 28—29.
[16] *Id.* 39—41; 43; 63:1—8.
[17] Ex. D, Thierry Dep. 27—31; Ex. A, Smith Dep. 221:19—25.
[18] Ex. A, Smith Dep. 222.

3

17. At a follow-up appointment in August 2018, Ms. Smith's dermatologist told her that her hair loss was not treatable.[19]

18. Ms. Smith consented to her chemotherapy treatments with the understanding that whatever hair she lost due to treatment would grow back.[20]

19. Ms. Smith received a pamphlet in connection with her chemotherapy which stated that "Hair will regrow after chemo is completed."[21]

20. Ms. Smith's oncologist, Dr. Elizabeth Herrington, prescribed Taxotere assuming that she knew all of the drug risks. However, when prescribing Taxotere to Ms. Smith, Dr. Herrington did not know of the risk of permanent hair loss. Had Dr. Herrington known of risk of permanent hair loss, she would have warned Ms. Smith of such risk.[22]

**Fraudulent Concealment**

21. Defendants knew of the causal relationship between Taxotere and permanent hair loss for more than a decade before electing to update the Taxotere label in December 2015.[23]

22. For example, in the pivotal clinical trial (referred to as "TAX 316") used by Defendants to support approval of Taxotere for the treatment of adjuvant breast cancer (early stage), subjects on Taxotere reported an increased incidence of permanent hair loss compared to subjects who received treatment without Taxotere.[24]

---

[19] *Id.* at 245—46.
[20] *Id.* 141:1-8.
[21] *Id.* 49:13-17.
[22] Ex. B, Herrington Dep. 54:3, 54:7, 54:17.
[23] Ex. E, Kessler Report at pp. 39—63 (summarizing evidence available to Sanofi regarding Taxotere's risk of permanent hair loss); Ex. F, Supplemental Expert Report of David A. Kessler, M.D. ("Kessler Supplemental Report" at p. 1 (containing opinion that "Sanofi should have warned patients and physicians about the risk of irreversible alopecia with Taxotere in its label by as early as 2006, and certainly by 2008."); *id.* at pp.20—1 (summarizing testimony by Sanofi employees regarding knowledge of causal relationship between Taxotere and permanent hair loss).
[24] Ex. E, Kessler Report at pp. 31; 42; 45—7.

23. In 2005, a different Sanofi clinical trial (referred to as "GEICAM 9805" or "TAX 301") confirmed that subjects receiving Taxotere had a higher incidence of permanent hair loss than those who received treatment without Taxotere.[25]

24. Defendants also received adverse event reports from clinicians whose patients reported permanent hair loss with Taxotere.[26]

25. Defendants' Global Safety Officer for Taxotere, Dr. Amy Freedman, acknowledged that irreversible hair loss had been documented in Sanofi's clinical trials for Taxotere as early as 2006,[27] but advised the recipients "NOT" to do a literature search on the topic, advising that the medical literature might contain additional reports of irreversible alopecia associated with Taxotere.[28]

26. In fact, Sanofi only warned that hair loss "is a common, yet temporary, side effect of some cancer medicines."[29]

27. By 2010, Sanofi had received reports from hundreds of women describing the failure of their hair to regrow following treatment with Taxotere.[30]

28. As usage of Taxotere increased, published reports of permanent[31] hair loss associated with Taxotere appeared in the medical literature.[32]

---

[25] *Id.*
[26] *See id.* at p. 44; Ex. F, Kessler Supplemental Report at p. 13.
[27] Ex. F, Kessler Supplemental Report at 21.
[28] Ex. J, at p. 1 (Sanofi_01035459)
[29] Ex. E, Kessler Report at p. 20.
[30] Ex. E, Kessler Report at pp. 59—60.
[31] "Permanent" hair loss is also referred to as "persisting," or "irreversible" hair loss in the medical literature, *see, e.g.,* Second Amended Master Long Form Complaint and Demand for Jury Trial, 2:16-md-02740-JTM-MBN, Doc. 4407 ¶¶at ¶¶ 149-162, and for purposes of this brief, a reference to "permanent" hair loss encompasses these other terms.
[32] Ex. H, Feigal Report at pp.41—66 (summarizing published articles on irreversible alopecia).

29. For instance, a study published in 2001 that evaluated Taxotere in the treatment of metastatic breast cancer noted that four patients who experienced partial alopecia lasting "longer than 2 years."[33]

30. As reports grew in the published scientific literature of permanent hair loss associated with Taxotere, Defendants took affirmative steps to eliminate reports from a much more accessible platform: social media. In 2010, Sanofi began to remove negative public posts made on its Facebook page by women who took Taxotere and suffered permanent hair loss.[34]

31. That same year, French authorities requested that Defendants analyze cases of permanent hair loss reported with Taxotere.[35]

32. The resulting report issued by Defendants and submitted in January 2011 concluded there was insufficient evidence to determine whether Taxotere caused permanent alopecia.[36]

33. These European authorities rejected Defendants' conclusion, finding that patients and healthcare providers needed to be provided information about the risk of permanent alopecia "given the serious psychological consequences of this adverse effect."[37]

34. The European Medicines Agency adopted this same conclusion in June 2011, informing Defendants that the label for Taxotere needed to be updated to inform patients of the risk of permanent alopecia.[38]

---

[33] Ex. G, Expert Report of Laura M. Plunkett, Ph.D., DABT ("Plunkett Report") at p. 15. *See also* Ex. I, at p. 2 (Sanofi_05252079); Ex. E, Kessler Report at p. 21
[34] *See, e.g.,* Ex. I, at p. 5 (Sanofi_05252082).
[35] Ex. E, Kessler Report at pp. 59—60.
[36] Ex. I, at pp. 7-8 (Sanofi_04353204 & Sanofi_04353247); Ex. E, Kessler Report at p. 60.
[37] *Id.* at pp. 59—60.
[38] *Id.*

35. However, Defendants did not update the United States label with this information at that time.[39]

36. In an internal audit conducted on March 5, 2015, Defendants again confirmed that the U.S. label lacked required safety information, including information on persisting alopecia.[40]

37. Shortly thereafter, the FDA requested information from Defendants on reports of Taxotere associated with permanent hair loss.[41]

38. Defendants subsequently acknowledged a causal relationship between Taxotere and permanent alopecia and that they had failed to update the United States label for Taxotere with information about this risk, stating "[t]his is going to be fun submitting >4 year old labeling changes to the FDA now."[42]

39. On November 24, 2015, Sanofi submitted a revised label to the FDA adding language about permanent hair loss in the adverse events section,[43] which was finalized by the FDA on December 11, 2015.[44]

For the foregoing reasons, Sanofi's Motion for Summary Judgment Based on the Statute of Limitations should be denied.

---

[39] *Id.* at p. 61.
[40] Ex. E, Kessler Report at p. 61 n. 219 (describing 2015 US affiliate audit that identified information missing from Taxotere's product insert).
[41] *Id*.
[42] Ex. I, at p. 11 (Sanofi_05207927).
[43] Ex. E, Kessler Report at p. 62. Sanofi submitted the label change through the "Changes Being Effected" or CBE regulation that permits manufacturers to make changes to labeling without prior FDA approval; *see* 21 C.F.R. § 314.70(c).
[44] Ex. E, Kessler Report at p. 62.

Dated: March 8, 2021                                Respectfully submitted,

*/s/ Christopher L. Coffin*                         */s/ Karen B. Menzies*
Christopher L. Coffin (#27902)                      Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.                    GIBBS LAW GROUP LLP
1100 Poydras Street, Suite 2225                     6701 Center Drive West, Suite 1400
New Orleans, Louisiana 70163                        Los Angeles, California 90045
Phone: (504) 355-0086                               Telephone: 510-350-9700
Fax: (504) 355-0089                                 Facsimile: 510-350-9701
ccoffin@pbclawfirm.com                              kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*                       *Plaintiffs' Co-Lead Counsel*

*/s/M. Palmer Lambert*                              */s/Dawn M. Barrios*
M. Palmer Lambert (#33228)                          Dawn M. Barrios (#2821)
GAINSBURGH BENJAMIN DAVID                           BARRIOS, KINGSDORF & CASTEIX, LLP
MEUNIER & WARSHAUER, LLC                            701 Poydras Street, Suite 3650
2800 Energy Centre, 1100 Poydras Street             New Orleans, LA 70139
New Orleans, LA 70163-2800                          Phone: 504-524-3300
Phone: 504-522-2304                                 Fax: 504-524-3313
Fax: 504-528-9973                                   barrios@bkc-law.com
plambert@gainsben.com

                                                    *Plaintiffs' Co-Liaison Counsel*

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews                                        Abby E. McClellan
Andrews Thornton Higgins Razmara, LLP               Stueve Siegel Hanson LLP
2 Corporate Park, Suite 110                         460 Nichols Road, Suite 200
Irvine, CA 92606                                    Kansas City, MO 64112
Phone: (800) 664-1734                               Phone: (816) 714-7100
aa@andrewsthornton.com                              Fax: (816) 714-7101
                                                    mcclellan@stuevesiegel.com


J. Kyle Bachus                                      Karen Barth Menzies
Bachus & Schanker, LLC                              Gibbs Law Group LLP
101 W Colfax Ave, Suite 650                         6701 Center Drive West, Suite 1400
Denver, CO 80202                                    Los Angeles, CA 90045 Phone:
Phone: (303) 222-2222                               510-350-9700
Fax: (303) 893-9900                                 Fax: 510-350-9701
kyle.bachus@coloradolaw.net                         kbm@classlawgroup.com

8

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

John Gomez
The Gomez Law Firm, PLLC
655 West Broadway, Suite 1700
San Diego, CA 92101
Phone: (619) 237.3490
Fax: 619.237.3496.
john@thegomezfirm.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, FL 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Jessica Perez Reynolds
Pendley, Baudin & Coffin
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Phone: (225) 687-6396
Fax: (225) 687-6398
jperez@pbclawfirm.com

Darin L. Schanker
Bachus Schanker
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
dls@coloradolaw.net

Andrew Lemmon

Hunter J. Shkolnik

9

<div style="display: flex;">

Lemmon Law Firm, LLC
P.O. Box 904 15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@amalaw.com

Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Zachary Wool
Barrios Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
zwool@bkc-law.com

</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ Dawn M. Barrios*
DAWN M. BARRIOS