# EXHIBIT D

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CINDY L. SMITH                                           PLAINTIFF

vs.                                        CASE NO. 2:18-cv-07702

SANOFI US SERVICES, INC. F/K/A
SANOFI-AVENTIS U.S., INC.,
SANOFI-AVENTIS U.S. LLC, ET AL.              DEFENDANTS

******************************************************

VIDEOCONFERENCE DEPOSITION OF MELISSA THIERRY, P.A.

******************************************************

APPEARANCES NOTED HEREIN

TAKEN AT THE INSTANCE OF THE DEFENDANTS VIA ZOOM
        DATE:   WEDNESDAY, NOVEMBER 11, 2020
                TIME:   3:55 P.M.

REPORTED BY:  KELLYE S. SHOWS, BCR, CSR
              CSR #1290

```
 1                A P P E A R A N C E S
 2
         MR. NATHAN BUTTARS
 3       LOWE LAW GROUP
         6028 S. RIDGELINE DRIVE, SUITE 200
 4       OGDEN, UTAH  84405
         nate@lowelawgroup.com
 5             COUNSEL FOR PLAINTIFF
 6
         MS. LORI SCHULTZ
 7       MS. TORREY PETERSON
         MR. STEPHEN NICHOLS
 8       SHOOK, HARDY & BACON
         2555 GRAND BOULEVARD
 9       KANSAS CITY, MISSOURI   64108
         lschultz@shb.com
10             COUNSEL FOR DEFENDANTS
11
         MR. JAMES H. HEIDELBERG
12       HEIDELBERG STEINBERGER
         711 DELMAS AVENUE
13       PASCAGOULA, MISSISSIPPI  39567
               COUNSEL FOR MELISSA THIERRY, P.A.
14
15
16
     ALSO PRESENT:  JASON HOPKINS, VIDEOGRAPHER
17
18
19
20
21
22
23
24
25
```

```
 1                        I N D E X
 2
                                                    PAGE
 3
     TITLE                                            1
 4   APPEARANCES                                      2
     INDEX                                            3
 5   EXAMINATION BY MS. SCHULTZ                       4
     EXAMINATION BY MR. BUTTARS                      59
 6   EXAMINATION BY MS. SCHULTZ                      60
     CERTIFICATE OF COURT REPORTER                   62
 7
 8   EXHIBIT 1   NOTICE                              10
     EXHIBIT 2   MEDICAL RECORDS                     11
 9   EXHIBIT 3   CV                                  11
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

1             THE VIDEOGRAPHER:  Good afternoon.  We're
2    going on the record at 3:55 p.m. Central time on
3    November the 11th, 2020.  The audio and video
4    recording will continue to take place unless all
5    parties agree to go off the record.  This is the
6    video-recorded deposition of Melissa Thierry taken
7    by counsel for defendant in the matter of Cindy L.
8    Smith versus Sanofi US Services, Incorporated f/k/a
9    Sanofi-Aventis, U.S., Incorporated, Sanofi-Aventis,
10   U.S., LLC and others filed in the United States
11   District Court Eastern District of Louisiana.  The
12   case number is 218-cv-07702.
13             This deposition is being held via
14   Veritext Virtual.  My name is Jason Hopkins.  I'm
15   the videographer.  The court reporter is Kellye
16   Shows.  We are both from the firm Veritext New Jersey.
17   I'm not related to any party in this action nor am I
18   financially interested in the outcome.
19             Everyone attending remotely will now
20   state their appearances and affiliations for the
21   record.  If there are any objections to the
22   proceedings please state them at time of your
23   appearance beginning with the Noticing attorney
24   after which our court reporter may swear in the
25   witness and we may proceed.

Page 5

1    MS. SCHULTZ: Lori Schultz, Torrey Peterson,
2  and Stephen Nichols on behalf of defendant Sanofi.
3    MR. BUTTARS: Nathan Buttars with Lowe Law
4  Group on behalf of plaintiff.
5    MS. THIERRY: Melissa Thierry with Garrett
6  Dermatology.
7    THE COURT REPORTER: I'm going to swear
8  you in. Raise your right hand, please.
9    MR. HEIDELBERG: Oh, I'm Jimmy Heidelberg.
10             MELISSA THIERRY, P.A.,
11         having been first duly sworn, was
12          examined and testified as follows:
13                   EXAMINATION
14  BY MS. SCHULTZ:
15     Q.   Good afternoon, my name is Lori Schultz,
16  and I represent Sanofi in this case. We've never met
17  before today. Correct?
18     A.   Correct.
19     Q.   And we've never spoken before this deposition.
20  Correct?
21     A.   Correct.
22     Q.   Could you please state and spell your full
23  name.
24     A.   Melissa Thierry, M-e-l-i-s-s-a
25  T-h-i-e-r-r-y.

```
 1        A.   No.
 2        Q.   Then the next prescription is doxycycline
 3   hyclate.  Correct?
 4        A.   Yes.
 5        Q.   And that was prescribed to treat
 6   folliculitis.  Is that right?
 7        A.   Yes.
 8        Q.   And do you ever use doxycycline to treat
 9   hair loss?
10        A.   No.
11        Q.   All right.  Now, the next three diagnoses,
12   actinic keratosis, seborrheic keratosis, and irritated
13   seborrheic keratosis, those are all diagnoses of
14   lesions located on the body.  Correct?
15        A.   Correct.
16        Q.   And you agree that those lesions represented
17   by diagnoses 2, 3, and 4 were not located on Ms. Smith's
18   scalp?
19        A.   Correct.
20        Q.   And then let's turn to -- now we're --
21   we're on page 2, and then the -- the fifth entry is
22   alopecia.  Correct?
23        A.   Yes.
24        Q.   And right under that it says, "Diffuse
25   nonscarring hair loss located on the scalp."  Right?
```

1      A.    Yes.
2      Q.    And is there any alopecia noted for the
3  eyebrows or eyelashes?
4      A.    No.
5      Q.    So the only place that alopecia is noted is
6  on the scalp.  Correct?
7      A.    Yes.
8      Q.    And what does diffuse nonscarring hair
9  loss mean?
10     A.    Diffuse means widespread, and hair loss
11 can be categorized into scarring versus nonscarring
12 hair loss.  This was characterized as nonscarring.
13     Q.    All right.  And when you say widespread,
14 do you mean that the hair loss is even throughout
15 the scalp, it's not patchy.  Is that right?
16     A.    Correct.
17     Q.    And you said that there was scarring
18 versus nonscarring and this was characterized as
19 nonscarring.  Is that right?
20     A.    Correct.
21     Q.    Can there be inflammation that is of the
22 scalp that is not visible to the naked eye?
23     A.    Yes.
24     Q.    Do you know if there was any dermascopy
25 or trichoscopy used at this appointment?

1      A.      I do not know.
2      Q.      Was a scalp biopsy taken?
3      A.      No.
4      Q.      Then under Number 5, the next entry says
5  "Plan:  Counseling."  I counseled the plaintiff
6  regarding the following.  It says expectations.
7  There were multiple causes of hair loss including
8  organic, pattern hair loss, temporary hair shedding,
9  autoimmune, inflammatory, external trauma, and
10 infections.  Long-standing hair loss should be
11 worked up with appropriate blood tests (TSH, CBC, FE
12 studies).  Did I read that correctly?
13     A.      Yes.
14     Q.      What is an organic cause of hair loss?
15     A.      Hair loss related to age and/or genetics.
16     Q.      Then inflammatory hair loss can be caused
17 by various inflammatory conditions.  Is that correct?
18     A.      Yes.
19     Q.      Yes, and infections can also be a cause
20 of hair loss.  Correct?
21     A.      Yes.
22     Q.      And is folliculitis an infection of the
23 hair follicle?
24     A.      It's better characterized as inflammation
25 of the hair follicle.

```
 1      Q.    Okay.  And what is external trauma?  Do you
 2   know?
 3      A.    Pulling of hair.
 4      Q.    Like a traction alopecia?
 5      A.    Yes.  Or somebody with trichotillomania
 6   where they pull out their own hair.
 7      Q.    And do you agree that chemotherapy is not
 8   listed here as a potential cause?
 9      A.    Yes.
10      Q.    And do you agree that Taxotere is not listed
11   here as a potential cause?
12      A.    Yes.
13      Q.    And in order to determine a cause you would
14   need to run more tests.  Correct?
15      A.    Yes.
16      Q.    And, in fact, it says here that long-standing
17   hair loss should be worked up with appropriate blood
18   tests.  Correct?
19      A.    Yes.
20      Q.    The first one of those is TSH.  What is TSH?
21      A.    Thyroid stimulating hormone.
22      Q.    And how would a blood test of TSH help with
23   a determination of the cause of hair loss?
24      A.    If thyroid function is low, that can result
25   in hair loss.
```

1    Q.   So if someone has hypothyroidism that can
2  result in hair loss.  Correct?
3    A.   Yes.
4    Q.   And if we look at Ms. Smith's medical
5  history, on the first page of this record do you agree
6  that hypothyroidism is not listed in her medical
7  history?
8    A.   Correct.
9    Q.   Okay.  All right.  Now back to page 2.
10  We were talking about the appropriate blood tests.
11  It also identifies a CBC, and what's that and how is
12  that related to hair loss?
13           MR. BUTTARS:  Objection to form.
14    A.   Complete blood count.  If somebody is
15  severely anemic, that can result in hair loss.
16  BY MS. SCHULTZ:
17    Q.   And what is FE?
18    A.   Iron.
19    Q.   And an iron deficiency is a cause of hair
20  loss.  Correct?
21    A.   Yes.
22    Q.   Were any blood tests performed by Garrett
23  Dermatology?
24    A.   No.
25    Q.   Or is there any record of any blood tests

```
                                                 Page 31
 1   of Ms. Smith in the Garrett Dermatology records?
 2        A.    No.
 3        Q.    And it also under the Counseling session
 4   Ms. Smith was told that if her hair loss fails to
 5   improve or worsens with treatment she could contact
 6   the office.  Correct?
 7        A.    Yes.
 8        Q.    And then under the Plan Treatment
 9   Regimen, it says recommend the following
10   over-the-counter treatments:  Biotin daily.
11   Correct?
12        A.    Yes.
13        Q.    And what is biotin and what does it do?
14        A.    Biotin is an over-the-counter supplement
15   that some studies have shown it may help with hair
16   regrowth.
17        Q.    Does biotin work for all different types
18   of hair loss?
19        A.    I don't know.
20        Q.    Do you agree that determining the type of
21   hair loss through blood tests and further studies is
22   necessary in order to determine how to treat hair loss?
23        A.    No.
24        Q.    Well, is understanding the type of hair
25   loss helpful in determining how to treat the hair
```

1  loss?
2       A.   Yes.
3       Q.   All right.  Let's turn to page 5, and
4  this is a visit note dated August 31st, 2018.  Correct?
5       A.   Yes.
6       Q.   And the August 31, 2018, visit is on
7  pages 5 through 9.  And let's turn to page 9.  And
8  if you look there in the middle of the page it says,
9  I, Melissa Thierry, P.A., I can see personally
10 performed the services described in the documentation
11 ascribed by Shaley Jones in my present -- presence
12 and confirm it is both accurate and complete.  Correct?
13      A.   Yes.
14      Q.   And so you signed off on the record for
15 this appointment as being both accurate and complete.
16 Correct?
17      A.   Yes.
18      Q.   All right.  Let's go back to page 5, the
19 first page of the August 31st appointment.  And if
20 you'll look with me under Medical History, do you see
21 that this time the medical history includes
22 hypothyroidism.  Correct?
23      A.   Yes.
24      Q.   So between December 2016 and her return
25 to Garrett Dermatology in August 2018, Ms. Smith had

```
                                                    Page 62

 1                  CERTIFICATION OF REPORTER

 2

 3             I, Kellye S. Shows, Court Reporter and

 4   Notary Public for the state of Mississippi, do

 5   hereby certify that the above and foregoing pages

 6   contain a full, true and correct transcript of the

 7   proceedings had in the aforenamed case at the time

 8   and place indicated, which proceedings were recorded

 9   by me to the best of my skill and ability.

10             I also certify that I placed the witness

11   under oath to tell the truth and that all answers

12   were given under that oath.

13             I certify that I have no interest,

14   monetary or otherwise, in the outcome of this case.

15

16

17        This the 1st day of December, 2020.

18                       [Signature: Kellye S. Shows]

19

20                       KELLYE S. SHOWS

                         MS CSR #1290

21

22

     My Commission Expires:

23   January 17, 2024

24

25
```

Page 63

1       ACKNOWLEDGMENT OF DEPONENT
2          I, Melissa Thierry, do hereby certify
3    that I have read the foregoing transcript of my
4    testimony taken on 11/11/20, and further certify
5    that it is a true and accurate record of my
6    testimony (with the exception of the corrections
7    listed below):
8    Page    Line                    Correction
9    ____|_____|_____|_____
10   ____|_____|_____|_____
11   ____|_____|_____|_____
12   ____|_____|_____|_____
13   ____|_____|_____|_____
14   ____|_____|_____|_____
15   ____|_____|_____|_____
16   ____|_____|_____|_____
17   ____|_____|_____|_____
18   ____|_____|_____|_____
19   ____|_____|_____|_____
20   ____|_____|_____|_____
21                      _____
                         Melissa Thierry
22
     SUBSCRIBED AND SWORN TO BEFORE ME
23   THIS _____ DAY OF _____, 20___.
24
     _____    _____
25   (NOTARY PUBLIC)          MY COMMISSION EXPIRES:

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.