UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)            MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:
ALL CASES

## MEMORANDUM IN REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PRESERVE EXPERT TESTIMONY

MAY IT PLEASE THE COURT:

    Plaintiffs have provided a workable proposal that is a fair and efficient means of preserving general (not case specific) expert testimony for individual plaintiffs to use, if they so choose, as part of a trial package. Undersigned counsel are perplexed by the Defendants' claim that no "meaningful meet-and-confer" occurred when (1) an almost identical draft case management order was presented to the defendants as an attachment to an email from Mr. Miceli on January 19, 2021 requesting a meet-and-confer (after which multiple discussions were held prior to the filing of the motion); and (2) the issue was addressed in a status conference with the Court as an agenda item[1] for the February 19, 2021 lead/liaison zoom conference, at which each of the defendants' attorneys presented their concerns and/or objections to the PSC's proposed preservation of testimony CMO. Defendants' omission of these facts from their recitation of the history of this issue is, at best, an oversight; regardless, the claimed lack of a meaningful discussion is meritless.

    Defendants' "vigorous" opposition is smoke and mirrors as it ignores the specifics of plaintiffs' proposal and, rather, focuses on case-specific matters that will appropriately be addressed with other case-specific experts or supplemental case-specific opinions. Plaintiffs have

---

[1] *See* Ex. 3, Joint Agenda for Lead/Liaison Conference, 02/19/2021.

not asked to take perpetuation depositions of any expert to opine on specifics of a case. To capitalize on the considerable efforts of counsel and the Court in this litigation, entry of Plaintiffs' proposed preservation CMO for non-plaintiff-specific expert testimony is an appropriate next step in the management of this MDL.

Defendants' claim of prejudice as a result of their intention to cross examine general causation experts on case-specific issues is inherently flawed and improper,[2] since those general experts do not opine on individual plaintiff issues.[3] Creative questioning, such as "Doctor, you did not see or evaluate the individual plaintiff to come to your conclusions in this case, did you?" or "You are not a dermatologist or dermatopathologist, are you?" or "Doctor, you don't treat, diagnose or evaluate hair loss, do you?" might solve the Defendants' issue. Moreover, the type of questioning that Defendants suggest is necessary (i.e., regarding side effects of other medications, varying dosages and regimens, and/or timing of use) are irrelevant to the question of general causation: can Taxotere cause PCIA.  Defendants' concerns regarding side effects caused by other medications, to the extent they are relevant at all, are properly asked of eventual case-specific experts who will be disclosed in individual cases pursuant to future scheduling orders.  These are case-specific issues, which should be addressed by the case-specific oncology expert, and they are not applicable to the proposed CMO.

Beyond the need to segregate Dr. Bosserman's case-specific portion of her prior reports out of the proposed preservation depositions, the remaining examples of why a single cross-examination would not be feasible are unpersuasive.  Defendants have questioned Drs. Feigal,

---

[2] Questioning Dr. Madigan, for example, on why he did not meet with an individual plaintiff is improper under multiple Rules of Evidence, and particularly Rule 403, because it is irrelevant to his expert report and stated opinions in these cases.

[3] The only exception is Dr. Bosserman, whose opinions are separated into two parts: (1) general oncology issues, and (2) case-specific testimony regarding risk-benefit and options available to a specific plaintiff. The preserved testimony would only relate to general oncology issues.  The other experts, Drs. Feigal, Madigan, Plunkett and Ross, each have testified they will not opine on case-specific issues.

Madigan, Plunkett, and Ross (and Kessler) extensively on consideration of case reports of other medications, lack of Bradford Hill analysis of other medications, and alternative causation issues. For general experts who do not opine on case-specific issues, such cross examination is not only feasible, but it has been done *ad nauseum* by counsel for three different defendants over multiple sittings with these witnesses.

With regard to the timing of a particular plaintiff's use of Taxotere and the related evolving state of medicine, knowledge and evidence, general causation is established without regard to timing. The trigger date for a regulatory obligation to update a label likewise will not change, although there will be testimony from Drs. Plunkett and Ross that the snowballing of evidence only grows stronger over time. For a future remanded trial case, the deposition testimony regarding this amalgamation of evidence in terms of the regulatory obligation could be cut in a manner that utilizes only the evidence that has amassed up to the point the plaintiff was administered Taxotere. However, the general opinion that some basis to believe a causal relationship existed such that the Taxotere label required an update to warn of permanent hair loss as early as in 2006 will not change from case to case.

Furthermore, any concern that a particular defendant is prejudiced by the preserved question-and-answer conducted by two questioning defense counsel could easily be remedied in particularized circumstances with a brief supplemental deposition for any issues a party can make a good faith showing were not covered in the deposition. Indeed, in the recent expert discovery of the *Kahn* matter, both Plaintiff and Sanofi agreed to adopt certain prior general expert reports and agreed, in such cases, that another deposition on the same prior report was not necessary. With regard to other experts, supplemental reports were issued on discrete topics and additional depositions were conducted based on the extent of the supplemental opinions. These types of

efficiencies are precisely the goal of MDL litigation to conserve resources and streamline pretrial proceedings.

Plaintiffs, who are cancer survivors with limited time left on this planet, are most prejudiced by the inefficiencies of not entering such a procedural mechanism to streamline expert discovery, and preserve testimony, in eventually remanded matters. And, the fact that science is evolving arguably could prejudice these plaintiffs more than defendants, as current science in a 2020 UpToDate acknowledges the risk of PCIA associated specifically with use of Taxotere and recommends that physicians specifically address this avoidable risk with their patients.[4] Such evolution in the science is no doubt a two-way street.

With regard to the concerns of the 505(b)(2) Defendants, Plaintiffs are somewhat confused by the suggestion that they are prejudiced. Sandoz and Accord have had a full opportunity to participate in expert discovery of Plaintiffs' general experts, and Hospira is scheduled to begin expert discovery for MDL Trial 5 next month. Plaintiffs' proposal does not supplant the pending bellwether trial expert work. Moreover, as discussed in the original supporting memorandum, each 505(b)(2) defendant, including the non-trial defendants, have attended, monitored and/or have access to the prior expert depositions conducted by Sanofi. The fact that rulings have not been made on certain 505(b)(2) *Daubert* briefing is of no moment. These experts previously accepted general causation opinions are not defendant-specific, rather they are specific to docetaxel and its propensity to cause PCIA. Future challenges to experts should be deferred to the transferor judges where remanded cases eventually are tried.

Concerning the "unavailability" issues raised by Defendants, it is interesting that defendants take such a position when Sanofi has taken the position that its own employees or

---

[4] *See* Ex. 4, H. Rugo, et al. "Alopecia related to systemic cancer therapy", *Wolters Kluwer: UpToDate, Inc.*, http://www.uptodate.com/contents/alopecia-related-to-systemic-cancer-therapy/print, 01/07/2020.

former employees, who are not adverse witnesses, are unavailable and whose deposition testimony may be played when the efficiencies of offering their witness only once in discovery for deposition benefits them (to avoid having to put him/her up at thousands of trials). It will be up to individual counsel whether they choose to use canned general expert testimony or not, and whether the transferor court will allow such testimony to be played. Those calls do not have to be made today; however, we know from experience (e.g., Dr. David Kessler) that some experts may become unavailable, and the likelihood of unavailability will increase over time. Thus, preserving this important testimony for potential future use is both an efficient use of resources and a proper part of a trial package formed through the efforts of the Plaintiffs' Steering Committee.

Regarding the procedural posture of this MDL, and the appropriateness of such a CMO at this stage of the proceedings, this MDL is nearing its fifth (5th) anniversary and general discovery as to four (4) defendants,[5] which represent more than 99% of the almost 10,000 known-PID cases. Doc. 12741 at 8. A bellwether case has been tried to verdict, and four sets of expert discovery have been completed involving three of those four defendants.[6] The PSC's proposed CMO is appropriate at this mature stage of the MDL for both efficiency purposes and to allow the PSC to meet its obligation in Pretrial Order No. 1 to prepare a trial package comprised of common pretrial materials.

Importantly, a model for just such a CMO has been established and demonstrated to work efficiently; in the PPA MDL, like this MDL, multiple manufacturers were named as defendants, yet the process of preservation depositions worked even where each defendant was not permitted to depose every general causation expert offered by the plaintiffs' leadership.[7] Similarly, not every

---

[5] Sanofi, Hospira/Pfizer, Sandoz, and Accord/McKesson.
[6] Expert discovery involving Hospira began in the *Sanford* bellwether matter but was suspended by agreement at the initial motions stage.
[7] *See* Rec. Doc. 12729-2, Ex. 1 to PSC's Motion to Preserve Expert Testimony.

plaintiff's counsel will be permitted to re-depose each of the Defendants' current and former employee witnesses.

For these reasons, and for those set forth in Plaintiffs' original supporting memorandum, the motion should be granted and Plaintiffs' proposed CMO should be entered to facilitate the preservation of general expert testimony as part of a trial package to be created by the PSC for use by individual plaintiffs' counsel, subject to eventual orders of transferor courts on their use/admissibility in remanded proceedings.

Dated: June 30, 2021                                               Respectfully submitted,

/s/ Christopher L. Coffin                                          /s/ Karen B. Menzies
Christopher L. Coffin (#27902)                                     Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.                                   GIBBS LAW GROUP LLP
1100 Poydras Street, Suite 2225                                    6701 Center Drive West, Suite 1400
New Orleans, Louisiana 70163                                       Los Angeles, California 90045
Phone: (504) 355-0086                                              Telephone: 510-350-9700
Fax: (504) 355-0089                                                Facsimile: 510-350-9701
ccoffin@pbclawfirm.com                                             kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*                                      *Plaintiffs' Co-Lead Counsel*

/s/M. Palmer Lambert                                               /s/Dawn M. Barrios
M. Palmer Lambert (#33228)                                         Dawn M. Barrios (#2821)
GAINSBURGH BENJAMIN DAVID                                          BARRIOS, KINGSDORF & CASTEIX, LLP
MEUNIER & WARSHAUER, LLC                                           701 Poydras Street, Suite 3650
2800 Energy Centre, 1100 Poydras Street                            New Orleans, LA 70139
New Orleans, LA 70163-2800                                         Phone: 504-524-3300
Phone: 504-522-2304                                                Fax: 504-524-3313
Fax: 504-528-9973                                                  barrios@bkc-law.com
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*                                   *Plaintiffs' Co-Liaison Counsel*

**PLAINTIFFS' STEERING COMMITTEE**

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

J. Kyle Bachus
Bachus & Schanker, LLC
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045 Phone:
510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

| | |
|---|---|
| John Gomez<br>The Gomez Law Firm, PLLC<br>655 West Broadway, Suite 1700<br>San Diego, CA 92101<br>Phone: (619) 237.3490<br>Fax: 619.237.3496.<br>john@thegomezfirm.com | Jessica Perez Reynolds<br>Pendley, Baudin & Coffin<br>P.O. Drawer 71<br>24110 Eden Street<br>Plaquemine, LA 70765<br>Phone: (225) 687-6396<br>Fax: (225) 687-6398<br>jperez@pbclawfirm.com |
| Emily C. Jeffcott<br>Morgan & Morgan<br>700 S. Palafox Street, Suite 95<br>Pensacola, FL 32505<br>Phone: (850) 316-9074<br>Fax: (850) 316-9079<br>ejeffcott@forthepeople.com | Darin L. Schanker<br>Bachus Schanker<br>101 W Colfax Ave, Suite 650<br>Denver, CO 80202<br>Phone: (303) 222-2222<br>Fax: (303) 893-9900<br>dls@coloradolaw.net |
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904 15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Hunter J. Shkolnik<br>Napoli Shkolnik PLLC<br>360 Lexington Avenue, 11th Floor<br>New York, NY 10017<br>Phone: (212) 397-1000<br>hunter@napolilaw.com |
| Daniel P. Markoff<br>Atkins & Markoff Law Firm<br>9211 Lake Hefner Parkway, Suite 104<br>Oklahoma City, OK 73120<br>Phone: (405) 607-8757<br>Fax: (405) 607-8749<br>dmarkoff@amalaw.com | Zachary Wool<br>Barrios Kingsdorf & Casteix, LLP<br>701 Poydras Street, Suite 3650<br>New Orleans, LA 70139<br>Phone: (504) 524-3300<br>Fax: (504) 524-3313<br>zwool@bkc-law.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ M. Palmer Lambert
M. PALMER LAMBERT

8