# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

*******************************************************************

IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION

Relates to: Barbara Earnest 16-CV-17144

Docket No. 16-MD-2740
Section H
New Orleans, LA
Tuesday, September 24, 2019

*******************************************************************

TRANSCRIPT OF TRIAL PROCEEDINGS
HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE
DAY 7, MORNING SESSION

APPEARANCES:

FOR THE PLAINTIFF:

BACHUS & SCHANKER, LLC
BY: DARIN L. SCHANKER, ESQ.
J. KYLE BACHUS, ESQ.
1899 Wynkoop St., Suite 700
Denver, CO 80202

FLEMING NOLEN & JEZ
BY: RAND P. NOLEN, ESQ.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056

GIBBS LAW GROUP, LLP
BY: KAREN B. MENZIES, ESQ.
6701 Center Drive West, 14th Floor
Los Angeles, CA 90045

DAVID F. MICELI, LLC
BY: DAVID F. MICELI, ESQ.
P.O. Box 2519
Carrollton, GA 30112-0046

PENDLEY BAUDIN & COFFIN
BY: CHRISTOPHER L. COFFIN, ESQ.
2505 Energy Centre
1100 Poydras St.
New Orleans, LA 70163

(WHEREUPON, THE JURY ENTERED THE COURTROOM.)

THE COURT: All jurors are present. Court's back in session. You may be seated.

Mr. Schanker, please call your next witness.

MR. SCHANKER: Thank you, your Honor. We would like to call Ms. Barbara, Barbara Earnest.

THE COURT: Come forward, Ms. Earnest.

(WHEREUPON, BARBARA EARNEST, WAS SWORN IN AND TESTIFIED AS FOLLOWS:)

THE DEPUTY CLERK: Thank you. You can have a seat.

MR. SCHANKER: Are you situated there?

THE WITNESS: Yes.

DIRECT EXAMINATION

BY MR. SCHANKER:

Q. Good morning.
A. Good morning.
Q. Could you please introduce yourself to the jury.
A. My name is Barbara LeBlanc Earnest.
Q. And tell these folks where you were born.
A. New Orleans. I'm from here.
Q. All right. Have you lived in Louisiana your whole life?
A. Yes, I have.
Q. And how old are you?
A. I am 68.
Q. And when did you meet Ralph Earnest?

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

*******************************************************************

IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION

Docket No. 16-MD-2740
Section H
New Orleans, LA
Thursday, September 26, 2019

Relates to: Barbara Earnest
16-CV-17144

*******************************************************************

TRANSCRIPT OF TRIAL PROCEEDINGS
HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE
DAY 9, MORNING SESSION

APPEARANCES:

FOR THE PLAINTIFF:

BACHUS & SCHANKER, LLC
BY: DARIN L. SCHANKER, ESQ.
J. KYLE BACHUS, ESQ.
1899 Wynkoop St., Suite 700
Denver, CO 80202

FLEMING NOLEN & JEZ
BY: RAND P. NOLEN, ESQ.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056

GIBBS LAW GROUP, LLP
BY: KAREN B. MENZIES, ESQ.
6701 Center Drive West, 14th Floor
Los Angeles, CA 90045

DAVID F. MICELI, LLC
BY: DAVID F. MICELI, ESQ.
P.O. Box 2519
Carrollton, GA 30112-0046

PENDLEY BAUDIN & COFFIN
BY: CHRISTOPHER L. COFFIN, ESQ.
2505 Energy Centre
1100 Poydras St.
New Orleans, LA 70163

Court. Good morning, folks. Thank you, and more importantly, Ms. Barbara thanks you for your sacrifice, your service these last two weeks. She asked me to pass that along.

In a little while you're going to have two jobs. First job you're going to have is to answer the questions that Judge Milazzo gives you in this case. The second job you're going to have is to explain to your fellow jurors why you answered the question the way you answered it. And I would like to give you some suggestions for that.

I told you last Monday that this was a simple case, and it really is. We put on a lot of evidence in this case, but it's a simple case. You've seen that Taxotere causes permanent chemotherapy-induced alopecia. Probably a phrase you hadn't heard before, initials you hadn't heard before, come to be known in this case as what? PCIA.

We've also shown you that Sanofi knew that Taxotere causes PCIA, and that Barbara Earnest, unfortunately, as a result of this, must live with permanent baldness.

Now, we've heard a lot in this case about the fact that there are no guarantees in medicine. Do you remember hearing that a few times throughout this trial? But, ladies and gentlemen, there may be no guarantees in medicine, but we're not in a hospital. You see that seal up there? We're in a court of law, and there are guarantees in the law. And you heard about some of those in this case.

prove something is more likely so than not. And if the plaintiff fails to prove any element of her claim by a preponderance of the evidence, she won't recover. So every element of the claim, you as the juror, are to use that standard. That burden. The preponderance of the evidence.

Now, we believe, ladies and gentlemen, in this case that we've proved this to you like this. But this is what the law requires. This is what the law requires, and you all took an oath and we trust you that you will follow that.

But, ladies and gentlemen, if one of your fellow jurors, whether it be on this or any other jury instruction, is not following along, then I encourage you to respectfully point that law out to them and ask them to follow it. Because that's important in this case. And no matter what your decision is, when you lay your head down at the end of this case, on your pillow, you have a right to know that you've been on a jury that follows the law.

So we'll be talking about preponderance a lot as we go through those questions that the judge will be giving you in this case. And that's what I would like to do, is go through those questions with you and talk about them a little bit.

One of the first questions that you'll be going through -- and this is the verdict form. This is it. "Do you find by a preponderance of the evidence that Sanofi inadequately warned Dr. Carinder of the risk of permanent chemotherapy-induced

10:03:27 Ask yourself what must it be like to know -- for her to know she is a woman and not feel like a woman or look like that in her mind?

And, ladies and gentlemen, we heard in this case what I believe was real arrogance from the defense, arrogance of we save lives. Well, congratulations. So do other drugs that are equally effective that don't cause PCIA. All you had to do was warn and none of us would be here. It's really simple.

Almost feel like what we hear from the company is, "Barbara get out of the way. We have more important things to do." But what did Barbara do? She decided to stand up to this company. She decided to stand up to them. But now she needs your help. Ladies and gentlemen, in a case like this, I am compelled to ask you for $12 million.

When you hear the defense attorney get up and speak here in just a moment, I want to pose three questions. See if they're answered.

Question No. 1: Simple. Why didn't Sanofi warn of PCIA? Why didn't they just warn? Listen for a response.

Why was there no exam done by Sanofi of Barbara Earnest in this case? Why was that? Why didn't they just have someone examine her?

And lastly, why not just say the word "permanent"? Have you noticed in this case that's one word that we haven't heard coming out of the defense attorneys' mouths. They've avoided it