# EXHIBIT G

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * | MDL NO. 2592 |
| | * | SECTION L |
| | * | |
| | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAG. JUDGE NORTH |
| ************************************************ | * | |

**THIS DOCUMENT RELATES TO:**
*ALL CASES*

## ORDER AND REASONS

Before the Court are various Motions in Limine filed by Plaintiffs Joseph Orr, Jr., Joseph Orr, III, Kelli Walker, and Kim DeAgano ("Plaintiffs") and by Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Janssen Ortho LLC, Johnson & Johnson, Bayer Pharma AG, and Bayer Healthcare Pharmaceuticals Inc. (collectively, "Defendants"). All of the motions are opposed. Having considered the parties' briefs and the applicable law, the Court now issues this order and reasons.

1) **Plaintiffs' MIL No. 11 to Preclude Testimony and Argument About the Personal Use of Anticoagulants Including Xarelto by Defendants' Experts, Employees, and/or Family Members, or, in the Alternative, to Compel the Production of Relevant Medical Records and/or Medical Authorizations [R. Doc. 6445]**

Defendants have demonstrated their intention to introduce at trial testimony about the anticoagulant use (including Xarelto) and the associated medical treatment and condition of their employees including Dr. Theodore Spiro and Dr. Peter Dibattiste, as well as the family members of certain employees including Dr. Spiro's wife, Dr. Gary Peters' wife, Nauman Shah's mother, and Susan Geiger's father.

Plaintiffs move for an order prohibiting all witnesses and counsel from commenting on, referring to, attempting to introduce testimony or evidence about, or introducing testimony or

evidence about the personal use of anticoagulants, including Xarelto, by any party's family members, employees, experts, or witnesses. Plaintiffs argue such testimony is irrelevant and that any probative value is substantially outweighed by the danger of unfair prejudice, confusion, and misleading the jury.

Alternatively, if the Court is inclined to allow such evidence, as it did during the *Boudreaux* trial[1] when Dr. Gary Peters testified about his wife's use of Xarelto and Nauman Shah testified by video that his mother once took Xarelto, Plaintiffs request that the Defendants be compelled to produce the medical records and/or medical authorizations necessary to retrieve the relevant records of any witness whose anticoagulant use is made at issue.

Defendants oppose the Motion, arguing that Plaintiffs seek an unfettered license to suggest, without fear of rebuttal, that Defendants—and by extension their employees—lacked sufficient concern for the well-being of patients who use Xarelto and that Defendants' experts engage in practices inconsistent with their stated opinions. (R. Doc. 6531). They argue there is no basis to invade those witnesses' privacy by making them produce medical records. They point to the fact that this court sustained essentially the same motion with regards to the *Boudreaux* bellwether except with regards to witnesses and experts, in which case the court reserved ruling until trial, as the issue may go to credibility. Defendants argue the ruling should be the same in this case because Xarelto use may go to a witness's credibility, and Plaintiffs are not entitled to the witnesses' or their families' medical records.

---

[1] Plaintiffs contend that, prior to the *Boudreaux* trial, this Court sustained Plaintiffs' Motion in Limine to exclude personal use evidence as to Defendants' employees or family members, but reserved a decision to the extent witness credibility became an issue. (R. Doc. 6254). At trial, the Court then allowed such testimony, reasoning that certain witnesses' credibility had been put at issue. However, Plaintiffs argue, the fact that a party's representative or a family member of that representative, or even a Defendants' expert, may have been willing to take Xarelto, is irrelevant to the question of whether Xarelto was unreasonably dangerous in the case of Mrs. Orr.

Plaintiffs file a reply, arguing that if the Court allows testimony about personal use of Xarelto because it is relevant to witnesses' credibility, the Plaintiffs should also be allowed to introduce testimony about the extent to which Defense executives or employee witnesses hold financial stakes in Defendants' companies. (R. Doc. 6546). Plaintiffs argue financial stake evidence is relevant to credibility and bias. They contend that if Defendants are permitted to introduce evidence that their witnesses' relatives are using Xarelto because this allegedly bolsters their credibility in defending the product, then Plaintiffs should be allowed to explore all other reasons why the witness would be defending the product, including financial incentives enjoyed through that product promotion.

This Court **SUSTAINS** this Motion. If one of Defendants' witnesses intends to discuss or refer to a family member's use of Xarelto, he or she must first produce all of the medical records of that family member to allow for cross examination. Each person who takes Xarelto is different, and the circumstances are different. In fairness, there ought to be some testing of the specific circumstances of *that* person if the Defendants wish to bring up this issue at trial. Accordingly, Defendants will not be permitted to elicit information about a witness' family member taking Xarelto without producing their medical records.

2) **Plaintiffs' MIL No. 25 Regarding References to Fiction Allegedly Authored by Dr. Suzanne Parisian [R. Doc. 6468]**

Plaintiffs move for an order prohibiting counsel for Defendants from commenting on, referring to, introducing testimony or evidence regarding, attempting to elicit testimony of, or arguing, whether directly or indirectly, and whether at *voir dire* or during trial, any argument or reference to fictional literature allegedly authored by Suzanne Parisian, M.D. At trial, Defendants may attempt to use a fictional book Dr. Parisian wrote under a pseudonym – and to which the publisher made significant changes – to show "bad" character of Dr. Parisian for authoring a

3

book that may be described as "pornographic" or as "smut." Plaintiffs argue the evidence is irrelevant and constitutes improper character impeachment. Further, they argue the evidence is unduly prejudicial, will waste time, cause undue delay, and will confuse the jury.

Defendants oppose the motion, arguing that it is undisputed that Dr. Parisian wrote this book; she admitted to doing so during numerous depositions. (R. Doc. 6548). Defendants clarify that they do not intend to use this book at trial, but argue it may be relevant to her judgment and credibility. If they do intend to discuss the book, Defendants aver they will approach the bench at that time.

This Court **DENIES** this Motion. Any expert witness is subject to a credibility challenge. When they testify in Court, they put their entire record on view.

### 3) Plaintiff's MIL No. 31 Regarding Homeopathic Treatments and Use of Supplements [R. Doc. 6469]

Plaintiffs move for an order prohibiting all witnesses and counsel from commenting on, referring to, attempting to introduce testimony or evidence about, or introducing testimony or evidence about, (1) Sharyn Orr's and Kimberly Orr DeAgano's homeopathic treatments; (2) Sharyn Orr's and Kimberly Orr DeAgano's use of supplements, other than those containing curcumin or ginger; and/or (3) issues pertaining to the license of Dr. Rai, Plaintiffs' homeopathic treating physician. Plaintiffs argue such evidence is irrelevant and unduly prejudicial.

Defendants oppose the Motion. (R. Doc. 6554). They point out that one of the homeopathic substances used by Mrs. Orr is known to be an anti-coagulant and cause bleeding – an issue relevant to this trial. They also aver that the Court declined a similar motion in the *Boudreaux* trial and reserved its ruling for trial. Defendants argue Mrs. Orr's other remedies and homeopathic treatments are relevant and should be presented to the jury. Further, they contend that Dr. Rai's board certification and license are relevant and admissible if Plaintiffs open the

4

door to this evidence. Dr. Rai was subject to disciplinary action because she failed to properly monitor a patient on prescription drugs. For that reason, Defendants contend that if Plaintiffs assert she was responsible and properly maintained Mrs. Orr's treatment, this issue is admissible for cross-examination.

One of Plaintiffs' theories in this case is that Xarelto caused Mrs. Orr's brain hemorrhage. Accordingly, it is relevant if Mrs. Orr was also taking something else that may cause or increase risk of bleeding. For that reason, Plaintiffs' Motion is denied in part, with the Court reserving its ruling on the issue of Dr. Rai's board certification and license for trial. Accordingly, Plaintiffs' Motion is **DENIED** in part and **RESERVED** in part.

**4) Plaintiffs' MIL No. 32 Concerning Unrelated Litigation [R. Doc. 6471]**

Plaintiffs move for an order prohibiting all witnesses and counsel from commenting on, referring to, attempting to introduce testimony or evidence about, or introducing testimony or evidence about, the following matters in the presence of the jury: (A) Kimberly Orr DeAgano filing suit or being in a position to recover monies related to her involvement in the unrelated BP Oil Spill Litigation against other defendants and (B) The pleadings, discovery, and/or documents in the unrelated BP Oil Spill Litigation. Plaintiffs move to exclude such evidence because it is irrelevant to the issues in this case, it would be unduly prejudicial and confusing to the jury, and it is inadmissible hearsay.

Defendants oppose Plaintiffs' Motion, calling it overbroad in its effort to exclude all evidence about, or testimony regarding, Kimberly Orr DeAgano's lawsuit related to the BP Oil Spill Litigation. (R. Doc. 6552). Under the Federal Rules of Evidence and Louisiana law, they argue, evidence of prior lawsuits is relevant and admissible. Defendants cite to cases in which courts in this district have found prior lawsuits relevant to impeachment and to determining

5

damages. Ms. DeAgano seeks damages for pain and suffering, loss of consortium, and other damages in this lawsuit. Therefore, Defendants argue her alleged personal injuries and damages from the previous lawsuit are relevant to show that Plaintiff has pursued other litigation for pre-existing emotional distress and other injuries that cannot be attributed to Defendants here.

This Court finds that discussion of prior litigation goes to the Plaintiffs' credibility. Every time a Plaintiff files a suit, they place their credibility at issue. Accordingly, Plaintiffs' Motion is **DENIED**.

> 5) **Plaintiffs' MIL No. 33 Regarding the FDA's Alleged Rejection of Defendants' Attempts to Modify the Xarelto Label [R. Doc. 6472]**

Plaintiffs move for an order prohibiting all witnesses and counsel from commenting on, referring to, attempting to introduce testimony or evidence about, or introducing testimony or evidence about, the FDA's alleged rejection of Defendants' attempts to modify the Xarelto label to include information relating to the utility of a PT test, including evidence of redlined or tracked changes to the Xarelto label and related emails. Plaintiffs aver that if impossibility preemption is a matter of law to be decided by the court, evidence about any FDA redlining is irrelevant. While this Court allowed testimony about the redlining in the *Boudreaux* bellwether trial, it did so as the redlining related to Defendants' motive and intent. However, Plaintiffs argue, in closing arguments the Defendants side-stepped this guidance and argued about the significance of that language to show what the FDA thought of adding the PT test to the label.

Defendants oppose Plaintiffs' Motion, highlighting this Court's rulings in the *Boudreaux* trial that found the evidence at issue relevant and admissible. (R. Doc. 6549). Defendants assert that Plaintiffs have not identified any new or different circumstances that would warrant a different result here. They argue the FDA strikethrough document, and any other evidence of

6

Defendants' interactions with FDA about the Xarelto label, is relevant and not unfairly prejudicial

In the alternative, Plaintiffs move for an order outlining procedural requirements and safeguards in the event such evidence is permitted to be presented in support of the affirmative defense of impossibility preemption. Defendants contend that preemption is a question of law and no special procedures or safeguards are necessary with respect to the FDA strikethrough document.

This Court finds that the FDA's alleged rejection of Defendants' proposed language, or the 'strike-through document,' is relevant evidence. The Plaintiffs claim that the Defendants should have made certain changes to Xarelto's label; the Defendants therefore should be able to show that they did suggest some label changes that the FDA purportedly rejected. It may be necessary at trial for the Court to instruct the jury that this strike-through is neither decisive nor conclusive, but at this stage this Court finds no justification for keeping the evidence out when Plaintiffs contend such label changes should have been made. Accordingly, Plaintiffs' Motion is **DENIED**.

6) **Plaintiffs' MIL No. 30 to Preclude Testimony and Argument that Plaintiffs' Experts have not Publicized/Published or Submitted their Opinions to the FDA or any Other Organization [R. Doc. 6474]**

Plaintiffs move for an order prohibiting all witnesses and counsel from commenting on, referring to, attempting to introduce testimony or evidence about, or arguing that any of Plaintiff's expert witnesses have failed to publicize or publish any of their opinions or have failed to submit them to the FDA or any other organization. During the *Boudreaux* bellwether trial, Defendants cross-examined Plaintiffs' experts regarding whether they had published their expert opinions or whether they had been "concerned enough" to convey their opinions to the FDA. This was inappropriate, Plaintiffs aver, because PTO 12 prohibited experts from

7

publicizing their opinions based on the information they learned from confidential documents related to this litigation. Accordingly, Plaintiffs argue that introducing evidence that their experts failed to publicize or publish this information is irrelevant and unduly prejudicial.

Defendants oppose the motion, arguing that, under *Daubert*, whether an expert has publicized or published his or her opinions is relevant to the reliability, weight, and credibility of that expert's opinions. (R. Doc. 6559). While Defendants agree that Plaintiffs' experts cannot disclose documents and information covered by PTO 12, not all of Plaintiffs' experts' opinions are covered by that PTO. Accordingly, Defendants aver they should not be precluded from arguing or cross examining about Plaintiffs' experts' failure to attempt to publish their opinions on information not covered by PTO 12.

This Court finds that experts were retained to comment on *this* case and to give opinions in *this* case to *this* court in *this* trial. It would not, therefore, be fair to ask whether they have written any articles or books when, for the most part, they are neither obligated nor allowed to publish any opinions or tell the Government they are incorrect before the trial or ever. Plaintiffs' Motion is therefore **SUSTAINED**.

**7) Plaintiffs' MIL No. 15 Regarding FDA Approval [R. Doc. 6475]**

Plaintiffs move for an order prohibiting all witnesses and counsel from commenting on, referring to, attempting to introduce testimony or evidence, or introducing testimony or evidence, suggesting that the FDA's approval of Xarelto or Defendants' compliance with FDA regulations absolves Defendants of liability or establishes that Xarelto is "safe and effective." Plaintiffs argue such evidence is irrelevant, and any probative value would be greatly outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury, undue delay and a waste of time.

8

Defendants oppose Plaintiffs' Motion, averring it is the same motion that Plaintiffs filed in the *Boudreaux* trial, where this Court deferred ruling until trial. (R. Doc. 6572). Defendants assert this Motion should either be denied or a ruling deferred. Defendants contend this motion is moot because they do not intend to argue that they are absolved of liability solely because FDA approved Xarelto as safe and effective. Alternatively, if Plaintiffs seek a broader exclusion regarding the meaning of FDA's approval of Xarelto as safe and effective, Defendants argue this evidence and their compliance with government regulations are highly relevant to Plaintiffs' claims. The jury can weigh the relevance of the evidence, Defendants contend, but Defendants should not be prohibited from introducing relevant evidence to their defense. Doing so, they contend, would be highly prejudicial.

This Court finds the Defendants should be allowed to show that the FDA approved Xarelto and its label. If Xarelto were not FDA-approved or if Xarelto had been pulled from the market, these topics would be admissible and relevant at trial. However, this Court acknowledges that this issue is a close one. Accordingly, if this issue comes up at trial, the Court will instruct the jury that this FDA approval is not determinative of liability or lack thereof. For these reasons, Plaintiffs' Motion is **DENIED**.

### 8) Plaintiffs' MIL No. 22 Regarding Defendants' Lack of Permission to Change Xarelto's Label Without Prior FDA Approval [R. Doc. 6476]

Plaintiffs move for an order prohibiting all witnesses and counsel from commenting on, referring to, attempting to introduce testimony or evidence, or introducing testimony or evidence that Defendants were not permitted to change Xarelto's label without prior FDA approval. They aver that any such evidence must is irrelevant, unduly prejudicial, and confusing to the jury because FDA regulations and Supreme Court precedent establish that such evidence is false.

9

Defendants oppose the Motion, arguing that the Motion should be denied or a ruling reserved because Plaintiffs offer no new argument justifying a different outcome than this same motion in the *Boudreaux* trial. (R. Doc. 6575). Defendants contend they are again entitled to present evidence and argument regarding FDA's views on Xarelto's label in assessing the reasonableness of the Defendants' conduct, the adequacy of the label, and Defendants' compliance with FDA regulations and guidelines. They argue this evidence is highly relevant and admissible to respond to Plaintiffs' allegations that Defendants were negligent or otherwise failed to comply with the law, and that Xarelto's labeling is unreasonably dangerous.

This Court finds that the Defendants do not need FDA approval in order to make Xarelto's label safer. This information may properly be introduced by Plaintiffs' witnesses or on the cross-examination of Defense witnesses. Both parties should be able to discuss the label and the possibility of making changes to that label. Accordingly this Motion is **DENIED**.

### 9) Plaintiffs' MIL No. 36 to Preclude Evidence or Argument Suggesting that Plaintiff Joseph Orr, Jr. has Dated Since his Wife's Death [R. Doc. 6477]

Plaintiffs move for an order prohibiting all witnesses from testifying, and any counsel referring to the fact that, Plaintiff Joseph Orr, Jr. has dated someone since his wife's death. They argue that any such evidence is considered irrelevant and/or unduly prejudicial under Louisiana jurisprudence, and should be deemed inadmissible. Defendants may seek to offer evidence at trial that Plaintiff, Joseph Orr, Jr., has dated someone since his wife's death, possibly in order to reduce Mr. Orr's recoverable damages for loss of society in this wrongful death action. But, Plaintiffs contend, testimony or evidence about a surviving spouse dating since the wrongful death at issue in a trial, is wholly unrelated "to the consideration of the damages to which such spouse is entitled." *Hightower v. Dr. Pepper Bottling Co. of Shreveport*, 117 So. 2d 642, 651-52

10

(La. App. 2 Cir. 1959). Plaintiffs contend this evidence is irrelevant, unduly prejudicial, and inadmissible for impeachment or any other purpose.

Defendants oppose the motion, arguing that (1) Plaintiff seeks damages for loss of consortium, and evidence of Mr. Orr's dating status may be admissible and relevant to his claim for loss of society and companionship and (2) Plaintiffs have failed to demonstrate that evidence of Mr. Orr's dating status is unfairly prejudicial or will mislead the jury. (R. Doc. 6550). Under Louisiana law, they argue, a plaintiff's remarriage or dating status may be admissible on cross-examination if Plaintiffs open the door to that line of questioning. *See, e.g.*, *In re Air Crash Disaster*, 767 F.2d 1151, 1154 (5th Cir. 1985) (admitting evidence of remarriage, with a limiting instruction, to rebut depiction of plaintiff as "broken man" unable to maintain relationships). Defendants contend that, instead of deciding this issue prematurely and in the abstract, the Court should decide this issue as it arises in trial and in light of all the relevant facts and circumstances presented at trial.

This Court finds that Mr. Orr's relationships since the death of Mrs. Orr are irrelevant and not admissible under direct examination. However, the Court reserves its ruling regarding the use of this information for impeachment purposes on cross-examination if Mr. Orr opens the door to this line of questioning. Accordingly, this Motion is **SUSTAINED** in part and **RESERVED** in part.

10) **Plaintiffs' MIL No. 35 to Admit Evidence of Defendants' Statements Outside the United States that Directly Contradict their Position that PT Neoplastin is not Useful and Does Not Work to Determine the Anticoagulant Activity of Xarelto [R. Doc. 6480]**

Plaintiffs aver that in the *Boudreaux* bellwether trial, the exclusion of foreign regulatory evidence deprived the jury from hearing truthful, accurate and admissible evidence about what Bayer communicates about the usefulness of PT Neoplastin as a test to measure Xarelto blood

11

Case 2:16-md-02740-JTM-MBN Document 13000-7 Filed 07/08/21 Page 13 of 17
Case 2:14-md-02592-EEF-MBN Document 6045 Filed 05/26/17 Page 12 of 16

concentration outside of the United States. Plaintiffs contend that the jury was repeatedly told by defense experts and Janssen corporate witnesses that PT Neoplastin was not only not useful, but that it did not work. Plaintiffs argue they were severely prejudiced by this evidence and argument because they could not rebut the testimony by cross-examining defense experts with the Defendants' own contradictory statements (which are party admissions) in foreign regulatory labels and other documents that reveal the Defendants' state of knowledge and understanding, in direct contradiction to what the jury was being told. Further, Plaintiffs were not permitted to cross-examine Dr. Johnson on similar international information. Plaintiffs list a litany of cases supporting their contention that foreign regulatory materials are relevant to demonstrate Defendants' knowledge, notice, or motive. Defense counsel, they contend, should be prohibited from eliciting false testimony about PT Neoplastin that is contradicted by Bayer's own party admissions.

    Defendants oppose Plaintiffs' Motion, arguing that the Court's ruling in the *Boudreaux* trial was correct and should not be disturbed. (R. Doc. 6560). Defendants' contention is that Neoplastin PT testing cannot be used to reliably determine whether or not a particular patient should use Xarelto. Defendants further argue that the foreign labels Plaintiffs seek to introduce do not support their contention that Neoplastin PT testing can or should be used to identify individuals at a high risk of bleeding. Foreign labeling and regulatory actions are, Defendants contend, irrelevant and prejudicial. Furthermore, Defendants restate their argument that Neoplastin PT is not predictive of bleed risk and cite to various sections of the *Boudreaux* trial transcript supporting that contention. With regards to Plaintiffs' argument that evidence of foreign labeling goes to Defendants' knowledge and state of mind, Defendants agree with that contention and don't seek to exclude relevant documents for that purpose. Finally, Defendants

aver that precluded Plaintiffs from cross examining Dr. Johnson about the foreign articles and materials they selected was proper.

This Court finds that anything the Defendants have said to anyone, even foreign regulatory bodies, should be admissible. What is not admissible, however, is what the Defendants did or what they put on Xarelto's label in other countries in order to comply with foreign regulatory bodies or agencies. This information is irrelevant. Accordingly, Plaintiffs' Motion is **SUSTAINED** insofar as it relates to Defendants' comments or what they previously said.

11) **Defendants' MIL to Exclude Dr. Cuong Bui's Testimony Regarding Xarelto's Label [R. Doc. 6482]**

Defendants move to exclude any testimony from Dr. Cuong Bui regarding Xarelto's label or any alleged inadequacies in the label because Dr. Bui was not Mrs. Orr's prescribing physician. Defendants contend that a drug manufacturer's duty to warn under Louisiana law runs only to the prescribing physician, so any testimony from Dr. Bui—a neurosurgeon who does not prescribe Xarelto or rely on the Xarelto label in his practice—regarding what he knew or didn't know about Xarelto based on its label is irrelevant and would risk confusing the issues and misleading the jury. Separately, Defendants argue that even if the duty to warn extends beyond prescribing physicians, any testimony from Dr. Bui about Xarelto's label is irrelevant because Dr. Bui testified that he is not familiar with the Xarelto label, and thus any changes to the label would not have affected his treatment of Sharyn Orr.

Plaintiffs oppose Defendants' Motion, arguing that Dr. Bui is, in fact, familiar with Xarelto and has considerable experience treating patients with intracranial bleeds who are also on various anticoagulants, including Xarelto. (R. Doc. 6567). Further, they argue that as one of Mrs. Orr's treating physicians, he should be permitted to testify about what effect the use of

13

Xarelto had on his treatment of Mrs. Orr. Plaintiffs contend this evidence is relevant and admissible.

This Court finds that the duty to warn under the LPLA contemplates both prescribers and treaters, particularly in the situation in which the treater takes or fails to take action because of a failure to properly warn or instruct. Accordingly this Motion is **DENIED**.

12) **Defendants' MIL to Exclude Reference to Dr. Robert Califf as FDA Commissioner Under FRE 402 & 403 [R. Doc. 6491]**

Defendants move to exclude, under Federal Rules of Evidence 402 and 403, any evidence, argument or attempt to attribute non-party Dr. Robert Califf's emails prior to his being appointed FDA Commissioner as views held by FDA. Dr. Califf played a lead role in the ROCKET AF Study when he worked at the Duke Clinical Research Institute ("DCRI) and his internal emails in that capacity were produced by both the Defendants and by DCRI. In January 2015, Dr. Califf was appointed as the Deputy Commissioner of FDA's Office of Medical Products and Tobacco and served in that role until February 2016, when he was nominated and confirmed as FDA Commissioner. Dr. Califf was FDA Commissioner from February 2016 until January 2017.

Defendants anticipate that Plaintiffs will attempt to introduce emails and other documents that Dr. Califf wrote as a private citizen to infer that those emails represent the views of the FDA, as was done in the *Boudreaux* bellwether trial. Defendants argue that allowing reference or argument attempting to attribute Dr. Califf's views expressed in private emails as a position held by FDA would be highly prejudicial, as it may cause the jury to improperly infer that the ideas of Dr. Califf expressed before he became FDA Commissioner were in fact representative of the FDA's position. Further, they argue that any perceived probative value is substantially outweighed by the undue prejudice Defendants, confusion of the issues, and cause delay.

Plaintiffs oppose Defendants' Motion, averring they have no intention of arguing or inferring that the views Dr. Califf expressed while he was at DCRI and was the lead investigator and co-chairman of the steering committee of the ROCKET-AF, are the views of the FDA. (R. Doc. 6565). To the extent the Court deems it necessary, Plaintiffs would not object to an appropriate limiting instruction explaining that Dr. Califf's views are not those of the FDA. However, Plaintiffs contend Dr. Califf's professional background is relevant to his credibility, not the least because the Defendants have attacked Dr. Califf and his motives. Finally, Plaintiffs contend there is no possibility for unfair prejudice or jury confusion.

This Court finds that Dr. Califf's background is relevant to his credibility, but also finds that a curative instruction may be necessary to explain to the jury that Dr. Califf's opinions are not those of the FDA. Accordingly, Defendants' Motion is **DENIED**.

13) **Plaintiffs' MIL No. 37 to Preclude the False and Misleading Argument that a Prothrombin Time (PT) Test Must Be Specifically Approved by the FDA for Use with Xarelto [R. Doc. 6492]**

Plaintiff anticipates that Defendants, either through argument or testimony, will falsely suggest that the universal PT test, available in community hospitals around the country, has not been cleared or approved to evaluate the anticoagulation status of patients on Xarelto. They argue that any such testimony or argument is without factual or legal basis, and therefore is false, misleading and prejudicial.

Defendants oppose the Motion, arguing that the Motion is meritless because the FDA has never approved a PT test for use with Xarelto and the governing regulations are clear that Defendants could not have unilaterally recommended that Xarelto be used in conjunction with Neoplastin PT without advance approval. (R. Doc. 6561). This evidence, they argue is relevant to the ultimate questions of whether Xarelto's label is adequate and whether Plaintiffs' proposed labeling would have altered any treatment decisions.

15

Whether the FDA approved Neoplastin PT or not is not the ultimate issue – the Defendants have not shown they gave the FDA sufficient information to adequately decide whether or not Neoplastin PT should be used with Xarelto. Accordingly, Plaintiffs' Motion is **SUSTAINED**.

**CONCLUSION**

For the aforementioned reasons, **IT IS ORDERED** that the following motions are **SUSTAINED**: R. Docs. 6445; 6474; 6480; 6492

**IT IS FURTHER ORDERED** that the following motions are **DENIED**: R. Docs. 6468; 6471; 6472; 6475, 6476, 6482, 6491

**IT IS FURTHER ORDERED** that the following motion is **SUSTAINED IN PART AND RESERVED IN PART**: R. Doc. 6477.

**IT IS FURTHER ORDERED** that the following motion is **DENIED IN PART AND RESERVED IN PART**: R. Doc. 6469.

New Orleans, Louisiana, this 26th day of May, 2017.

_____
UNITED STATES DISTRICT JUDGE