UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)　　　　　　　　　　MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

　　　　　　　　　　　　　　　　　　　　　　　　SECTION "H" (5)

THIS DOCUMENT RELATES TO:

*Elizabeth Kahn*, Case No. 2:16-cv-17039.

### SANOFI'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 7 TO EXCLUDE TESTIMONY AND ARGUMENT THAT TAXOTERE HAS BEEN PROVEN SUPERIOR TO TAXOL - OR ANY DRUG OTHER THAN 5-FU - OR THAT TAXOTERE GAVE PLAINTIFF THE "BEST CHANCE" OF SURVIVING CANCER, OR THAT TAXOTERE GAVE HER THE "BEST CHANCE" FOR PREVENTING HER CANCER FROM RETURNING

　　　　Plaintiff's Motion *in Limine* No. 7 seeks a blanket order precluding two distinct categories of testimony. *First*, Plaintiff seeks an order precluding any testimony or argument that Taxotere is "superior" to Taxol or any other chemotherapy other than 5-FU. *Second*, Plaintiff also seeks an order precluding any testimony or argument that Taxotere gave her the 'best chance' of surviving cancer or from her cancer recurring.[1] Plaintiff claims Sanofi should be precluded from offering such testimony because Taxotere's efficacy is not at issue in this case. But that is untrue. Taxotere's efficacy is relevant to the benefit-risk profile of the medicine, the relative risk of permanent hair loss compared to the overall desire for survival, and Plaintiff's prescribing physician's analysis when determining the best course of treatment for her breast cancer, all of which are pertinent to warnings causation and the reasonableness of Sanofi's conduct.

　　　　Indeed, Plaintiff concedes that the Court should focus on the prescribing physician's

---

[1] Rec. Doc. 12899-1 (Pl.'s Mot. *in Limine* No. 7) at 3–6.

benefit-risk analysis,[2] but then omits critical testimony from Dr. Kardinal, who testified on these very issues. Specifically, Dr. Kardinal testified that—at the time he prescribed Taxotere for Plaintiff—he believed Taxotere was "the drug of choice in [treating] breast cancer" and advantageous to Taxol based on the fact that "neuromuscular toxicity [*i.e.*, neuropathy] was considerably less common" with Taxotere than Taxol.[3] Dr. Kardinal also testified that, had Plaintiff opted not to participate in a clinical trial, he would have treated her with a regimen of Adriamycin and Cytoxan followed by Taxotere.[4] As such, other drugs, including "'less good' alternatives," are irrelevant.

Additionally, Plaintiff's request to preclude testimony or argument that Taxotere gave her the best chance of survival or preventing her cancer from recurring cannot be viewed in a vacuum. Rather, as Dr. Kardinal testified, his benefit-risk analysis focused on dual goals: maximizing a patient's disease-free survival while minimizing potentially debilitating side effects, such as neuropathy.[5] Treatment with a *taxane*—of which there are two options, Taxotere and Taxol—gave Plaintiff the best chance of surviving her cancer. The relevant inquiry, then, is Dr. Kardinal's benefit-risk analysis between the two options. Dr. Kardinal was unequivocal on this issue: at the time he treated Plaintiff, Taxotere was the "drug of choice" for treating breast cancer because it carried considerably less risk of neuromuscular toxicity (neuropathy). The evidence supports the argument that treatment with Taxotere gave Plaintiff the best chance of survival or preventing her

---

[2] Rec. Doc. 12899-1 (Pl.'s Mot. in Limine No. 7) at 1 ("However, the Court determined that 'the risk-benefit analysis particularly for this patient is absolutely relevant.'").

[3] **Ex. A**, Jan. 17, 2018 Kardinal Dep. 71:25–74:11.

[4] *Id.* 106:25–107:11; *see also* Rec. Doc. 11810 at 5 (precluding Plaintiff's expert, Dr. Ellen Feigal, from offering case-specific testimony because "Drs. Larned and Kardinal will be available to testify directly on this question"); Rec. Doc. 12109 at 4–6 (precluding Plaintiff's expert, Dr. Linda Bosserman, from offering case-specific testimony).

[5] Ex. A, Jan. 17, 2018 Kardinal Dep. 80:14–81:20.

cancer from recurring *while minimizing the risk of serious, potentially debilitating side effects like neuropathy*.  Ample evidence from Dr. Kardinal and Dr. Glaspy support this argument. Accordingly, Plaintiff's motion should be denied.

### A. Plaintiff's Motion Seemingly Would Allow Her to Present Evidence and Argue Equivalency of Drugs or Regimens Not Considered for Her.

Breaking down her motion, Plaintiff seemingly asks the Court to allow her to present evidence and argue that other drugs or chemotherapy regimens besides 5-FU *were* as potentially efficacious as Taxotere for her, by asking, in reverse, for Sanofi to be precluded from offering evidence or argument that those other options were not.  Sanofi anticipates that Plaintiff will offer the testimony of her expert, Dr. Linda Bosserman, focusing on NCCN guidelines available at the time, which included FAC,[6] FEC,[7] Epirubicin and Cytoxan, Adriamycin or Epirubicin followed by CMF, and CMF.[8]  But Plaintiff was treated outside of the NCCN guidelines by enrolling in an experimental clinical trial including two drugs (Avastin and Xeloda) contained nowhere in such guidelines.[9]  In addition, Plaintiff's examination of Dr. Kardinal failed to establish that any of these other drugs or regimens were options he considered for Plaintiff.[10]  Moreover, Sanofi has established through the expert opinions of Dr. John Glaspy that these regimens were inferior and posed a lower chance at survival than those containing a taxane.[11]  In denying Plaintiff's motion,

---

[6]  5-FU, Adriamycin, and Cytoxan.

[7]  5-FU, epirubicin, and Cytoxan.

[8]  *See* **Ex. B**, 2008 NCCN Guidelines (excerpt listing regimens for adjuvant chemotherapy treatment of invasive breast cancer).

[9]  *See id.*; *see also* **Ex. C**, Feb. 22, 2018 Larned Dep. 71:20–24.

[10]  *See* Ex. A, Jan. 17, 2018 Kardinal Dep. 106:25–107:11, 143:2–146:12, 219:10–19 (clarifying that his testimony in response to questions from Plaintiff's counsel did not mean he would prescribe Taxol to Plaintiff).

[11]  *See* Rec. Doc. 11780 at 9 (Order and Reasons Denying Pl.'s Mot. to Exclude the Testimony of John M. Glaspy, M.D.) (holding that Dr. Glaspy may offer testimony concerning "survival rates for breast cancer, including the impact that various chemotherapy regimens have had on improving overall survival rates," "the difference in survival rates between the older regimens and taxane-containing regimens," and opinions that "outdated

3

the Court should make clear not only that Sanofi *may* present evidence and argue that Taxotere was superior to other options and gave Plaintiff the best chance of survival, but also that—based on the absence of prescriber testimony fitting those opinions to the facts of this case—expert testimony, evidence, or argument urging other, alternative options not containing a taxane, are impermissible.

### 1. Dr. Kardinal's testimony renders other or "less good" alternative chemotherapy drugs or regimens irrelevant.

*First*, the Court already has ruled that Dr. Bosserman may not offer case-specific opinions.[12] The Court based its decision on the fact that Plaintiff's treating physicians—Dr. Kardinal and Dr. Zoe Larned—will be available to testify about their decisions relating to Plaintiff's treatment, as well as "how they would have responded to a warning from Sanofi."[13] Although Dr. Kardinal no longer is available to testify live at trial, his testimony has been preserved to be played for the jury. Unlike in the *Earnest* trial, where the testimony from Ms. Earnest's treating physician left open nearly all other available alternative treatments on the NCCN Guidelines, Dr. Kardinal unequivocally testified that he would have treated Plaintiff "essentially the same"—*i.e.*, with "Adriamycin and Cytoxan followed by a taxane"—had she chosen not to participate in the clinical trial.[14]

The difference in efficacy between Taxol and Taxotere are not at issue based on the prescribing physician testimony in this case.[15] Although Dr. Kardinal could have chosen to use

---

chemotherapy regimens AC, FEC, FAC, CAF, CEF, CMF, and EC have lower survival rates [than] taxane-containing regimens").

[12] Rec. Doc. 12109 at 4–6 (precluding Plaintiff's expert, Dr. Linda Bosserman, from offering case-specific testimony).

[13] *Id.* at 5.

[14] *See* Ex. A, Jan. 17, 2018 Kardinal Dep. 104:6–105:8, 106:25–107:11.

[15] Rec. Doc. 12899-1 (Pl.'s Mot. *in Limine* No. 7) at 2.

either Taxotere or Taxol in the regimen, he preferred Taxotere because, based on his benefit-risk analysis, it carried "lesser neurological toxicity than Taxol."[16] Indeed, Dr. Kardinal agreed that "neuromuscular toxicity was considerably less common with [Taxotere] than with [Taxol]," and expressed "big concern" about the Taxol's neurotoxicity, *i.e.*, its ability to cause serious, debilitating neuropathy.[17] Based on those concerns, he preferred Taxotere over Taxol and tended to prescribe Taxotere instead of Taxol.[18]

Plaintiff's counsel questioned Dr. Kardinal about several other options besides Adriamycin and Cytoxan followed by Taxotere ("TAC"). Those included the FAC regimen, which consists of 5-FU, Adriamycin, and Cytoxan.[19] Dr. Kardinal rejected the FAC regimen as a viable alternative, testifying that "[i]t would not be something I would choose" because it "was an old treatment and probably doesn't have the potency or efficacy of TAC."[20] Dr. Kardinal also expressed some reservations about a regimen consisting of Adriamycin and Cytoxan only, without Taxotere.[21] The ***only*** regimen Plaintiff's counsel discussed with Dr. Kardinal that he found equivalent ***from an efficacy standpoint*** was a regimen that included Adriamycin and Cytoxan, but substituted Taxol for Taxotere.[22] Dr. Kardinal, however, testified that mere equivalence in terms of efficacy did not mean he would prescribe a Taxol regimen for Plaintiff (or any other patient).[23]

---

[16] Ex. A, Jan. 17, 2018 Kardinal Dep. 104:6–105:8.

[17] *Id.* 71:25–72:8.

[18] *Id.* 72:9–19, 73:21–74:2 (testifying that he did not prescribe Taxol "nearly as much as" Taxotere).

[19] *Id.* 144:18–145:10.

[20] *Id.*

[21] *Id.* 145:11–16 ("I think in selected cases of multi node positive breast cancer, AC by itself is -- is not adequate.").

[22] *Id.* 145:17–146:12.

[23] *Id.* 219:10–221:6.

Dr. Kardinal's testimony limiting alternative treatments he would have prescribed necessarily limits any testimony Dr. Bosserman may give concerning alternatives available in 2008.[24]  Any other conclusion would impermissibly allow Dr. Bosserman to contradict Dr. Kardinal's testimony and confuse the jury by suggesting that other, non-taxane chemotherapy regimens were options that Dr. Kardinal would have considered in treating her.[25]  However, Dr. Kardinal testified that taxane-containing regimens gave Plaintiff a better chance of survival than non-taxane regimens,[26] and Plaintiff's examination of Dr. Kardinal failed to establish that Dr. Kardinal would prescribe any non-taxane regimen for her.[27]

### 2. Plaintiff's motion also is an attempt to re-litigate her *Daubert* motion concerning Dr. Glaspy's testimony, which the Court already denied.

*Second*, the Court already has held that Dr. Glaspy may testify concerning "survival rates for breast cancer, including the impact that various chemotherapy regimens have had on improving overall survival rates" and "the difference in survival rates between the older regimens and taxane-containing regimens."[28]  On this issue, the Court also explained that Dr. Glaspy will be permitted to offer testimony "that the outdated chemotherapy regimens AC, FEC, FAC, CAF, CEF, CMF, and EC have lower survival rates [than] taxane-containing regimens."[29]

Not only has the Court already decided this point, but Plaintiff's motion improperly raises an untimely renewed *Daubert* challenge to Dr. Glaspy's opinions and the Court's ruling. Such

---

[24]   *See* Rec. Doc. 12109 at 6 ("The Court, however, will allow Dr. Bosserman to offer general testimony about any non-Taxotere treatment options that were available in 2008 when Plaintiff Kahn received her treatment.").

[25]   *See* Rec. Doc. 11112 (Sept. 5, 2019 Mot. Hr'g Tr.) at 37:1–40:15 (explaining that alternative chemotherapy regimens are irrelevant unless Ms. Earnest's prescribing oncologist considered them as options for her).

[26]   *See* Ex. A, Jan. 17, 2018 Kardinal Dep. 76:4–15.

[27]   *Id*. 106:25–107:11, 143:2–146:12, 219:10–19 (clarifying that his testimony in response to questions from Plaintiff's counsel did not mean he would prescribe Taxol to Plaintiff).

[28]   Rec. Doc. 11780 at 9.

[29]   *Id.*

6

motions are disfavored and "are not proper motions *in limine*." *Infernal Tech., LLC v. Sony Interactive Entm't LLC*, 2021 WL 405813, at *6 (E.D. Tex. Feb. 3, 2021). "Proper *limine* practice is not a second bite at the dispositive apple." *Id.*; *see also Vienne v. Am. Honda Motor Co.*, 2001 WL 83260, at *1–2 (E.D. La. Jan. 26, 2001) (denying plaintiff's motion *in limine* seeking *Daubert* relief as untimely because he failed to comply with *Daubert* deadline); *Bedingfield v. Deen*, 2011 WL 2712950, at *1 (W.D. La. July 8, 2011) ("The Court agrees that the instant Motion in Limine is, in actuality, a veiled *Daubert* motion. . . . [T]he Court will not entertain Plaintiffs' untimely *Daubert* challenge."); *Hernandez v. Gen. Motors Corp.*, 2001 WL 36103819, at *1–2 (S.D. Tex. July 3, 2001) (striking GM's multiple *Daubert* challenges disguised as motions *in limine* and explaining that "[c]hallenges to expert testimony may be waived for failure to adhere to deadlines," especially where GM "offered no justification for making its *Daubert* challenges after the deadline specified in the Scheduling Order."). Here, Plaintiff's attempt to limit Dr. Glaspy's testimony concerning Taxotere's efficacy compared to other, "less good" regimens is nothing more than a thinly veiled *Daubert* challenge to the reliability of Dr. Glaspy's testimony, which this Court already had decided.[30]

### B. Even Under Plaintiff's Proposed Standard, the Court Should Deny Plaintiff's Motion.

According to Plaintiff, the Court should focus on Dr. Kardinal's benefit-risk analysis. Yet Plaintiff ignores that analysis in her motion, focusing instead on Dr. Glaspy's testimony concerning only the *efficacy* of Taxotere. Both Drs. Kardinal and Glaspy offer similar opinions concerning the advantages of Taxotere compared to Taxol: although the two taxanes are "fairly equivalent" in terms of efficacy,[31] both testified that Taxotere has significant advantages compared

---

[30] *See* Rec. Doc. 11780.

[31] *See* Ex. A, Jan. 17, 2018 Kardinal Dep. 76:4–77:7.

to Taxol, including considerably less risk of neuromuscular toxicity (neuropathy), concerns over severe infusion site reactions with Taxol, and the ability to give Taxotere every three weeks instead of every week as required for Taxol.[32] Dr. Kardinal further testified that he preferred Taxotere to Taxol because of Taxol's risk of neuropathy, and he did not prescribe Taxol "nearly as much" as Taxotere.[33] According to Dr. Kardinal, Taxotere was the "drug of choice in breast cancer."[34]

Plaintiff asks the Court to limit argument by Sanofi's counsel to the actual evidence,[35] and the evidence from Plaintiff's own prescribing physician confirms that her motion should be denied. Plaintiff relies heavily on *U.S. v. Morris*, 586 F.2d 396 (5th Cir. 1978), and other "no evidence" case law to support her position; however, these cases and *Morris* in particular recognize that argument is proper when it is supported by evidence in the record. *See Morris*, 568 F.2d at 402 ("an attorney properly may state, 'I believe that the evidence has shown'" with respect to the ultimate conclusion); *see also id.* (explaining that "the earnest implorings of an advocate of conclusions the jury should draw from the evidence" are proper). Plaintiff concedes that Dr. Kardinal's benefit-risk analysis is relevant to this case and, in doing so, concedes that his testimony concerning the risks and benefits of Taxotere, as well as his preference for Taxotere over Taxol, are relevant. Plaintiff's narrow focus on efficacy as the only benchmark arguing that Taxotere was

---

[32] *See id.*; *see also id.* 71:25–73:20, 73:21–74:2 (testifying he did not prescribe Taxol "nearly as much as" Taxotere); 80:14–81:20, 219:10–19; *see also* **Ex. D**, Apr. 29, 2020 Glaspy Rpt. at 15 ("While Taxol and Taxotere are both taxanes, they are not the same drug. They have different drug profiles, different toxicities, and are prescribed for different indications."); *id.* at 16 ("Notably, for both HER2+ and HER2- breast cancer, patients can avoid Adriamycin and other anthracyclines by taking a Taxotere combination regimen. . . . [Also,] the risk of severe neuropathy is much lower with Taxotere than Taxol. Neuropathy is a side effect of taxane chemotherapy. Neuropathy can be permanent."); *id.* ("Taxol and Taxotere-containing regimens are also given on different dosing schedules. More specifically, Taxol is usually given weekly, especially when used in early breast cancer. Taxotere is given once every three weeks."). Dr. Glaspy also testified concerning these specific advantages of Taxotere. *See* **Ex. E**, Jan. 9, 2020 Glaspy Dep. 170:19–175:22 (Taxol carries a greater risk of neuropathy and worse neuropathy than Taxotere); **Ex. F**, May 13, 2020 Glaspy Dep. 92:4–95:8.

[33] Ex. A, Kardinal Dep. 73:21–74:2, 76:4–22.

[34] *Id.* 74:7–22.

[35] Rec. Doc. 12899-1 (Pl.'s Mot. *in Limine* No. 7).

8

the best option among chemotherapies for Plaintiff lacks any basis in the evidence, especially considering Dr. Kardinal's explicit testimony that efficacy was only one of two goals he considered in prescribing chemotherapy regimens for his patients—his other goal being to minimize serious, potentially debilitating side effects like neuropathy.

Contrary to Plaintiff's assertions in her motion, there is ample evidence from which Sanofi can argue that Taxotere (1) is advantageous to Taxol or other, "less good" alternatives and (2) gave Plaintiff the best chance of survival or preventing her cancer from recurring ***without increased risk of serious, potentially debilitating side effects, such as neuropathy***. That is precisely the issue according to her prescribing oncologist. By mischaracterizing the issue for the Court's consideration, Plaintiff's Motion *in Limine* No. 7 leaves out critical evidence necessary to the resolution of this issue and asks this Court to issue a blanket order precluding testimony or argument based on an incomplete record. "As the Fifth Circuit has made clear, 'unfair prejudice' in the context of Rule 403 'is not to be equated with testimony simply adverse to the opposing party . . . [t]he prejudice must be 'unfair.'" *In re M&M Wireline & Offshore Servs.*, LLC, No. 15-cv-4999, 2017 WL 485985, at *8 (E.D. La. Feb. 6, 2017) (citing *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977)). There is nothing unfairly prejudicial about the evidence Plaintiff seeks to preclude through this motion. Evidence and argument concerning Taxotere's advantages over other chemotherapy regimens and her prescribing oncologist's reason for choosing a Taxotere regimen is relevant to Plaintiff's claims and Sanofi's defenses. The Court should deny Plaintiff's invitation to issue a blanket prohibition on such testimony and argument based on the incomplete record presented in Plaintiff's Motion.

## **CONCLUSION**

Plaintiff asks the Court to consider this motion in a vacuum, without context and without

the benefit of her prescribing oncologist's testimony concerning the very issue Plaintiff raises. This issue, however, cannot be resolved without due consideration for Dr. Kardinal's unequivocal testimony that, according to his benefit-risk analysis, Taxotere provided Plaintiff with the best chance of survival with the least risk of serious, potentially debilitating neuropathy. Dr. Kardinal's testimony provides ample evidence for Sanofi to argue these points at trial; however, Sanofi finds further support in testimony from Sanofi's expert, Dr. John Glaspy. The Court therefore should deny Plaintiff's Motion.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
Jon Strongman
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com
jstrongman@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*