**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)          MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                 SECTION "H" (5)

**THIS DOCUMENT RELATES TO:**

*Elizabeth Kahn*, Case No. 2:16-cv-17039.

**SANOFI'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 9**
**TO EXCLUDE EVIDENCE OF UNRELATED MEDICAL CONDITIONS, FAMILIAL**
**MEDICAL HISTORY OF CANCER, AND UNRELATED MEDICATION USAGE**

       The Court previously ruled on this issue in *Earnest* and permitted Sanofi to introduce testimony and evidence on Plaintiff's medical conditions and medications where Sanofi had a "proper foundation" and where "it [wa]s relevant to determining that cause of Plaintiff's alleged hair loss."[1]  Sanofi asks the Court to recognize that a "proper foundation" for this type of evidence exists not just for determining the cause of Plaintiff's alleged hair loss, but also for determining warnings causation—whether the prescribing decisions would have changed if a different warning had been given.  To that end, medical conditions for which Plaintiff was not diagnosed, medications that Plaintiff did not take, and Plaintiff's family medical and cancer history would have impacted prescribing decisions (*e.g.*, increased risk of neuropathy, family history of heart issues) and are relevant to determining warnings causation.  Likewise, Plaintiff's family medical and cancer history are relevant to Plaintiff's knowledge about treating cancer and the risks she was willing to accept to beat it.  Sanofi accordingly asks the Court to deny Plaintiff's motion and expand its ruling from *Earnest* so that Sanofi may introduce testimony and evidence of medical

---

[1]     Rec. Doc. 8201 at 2−3 (Order and Reasons on Mot. *in Limine*).

conditions, family medical history, and medication usage if it is relevant to determining specific causation and/or warnings causation.

### A.   Evidence of Plaintiff's Medical History and Medication Use is Relevant and Probative to Issues in This Case.

Evidence of Plaintiff's medical history and medication use is highly relevant to the facts at issue in this case. *See* Fed. R. Evid. 401. As the Court recognized in *Earnest*, Plaintiff's medical conditions and medication use are relevant to specific causation, which Plaintiff must prove to prevail on her claim.[2] *See Jacobsen v. Wyeth, LLC*, No. 10-cv-0823, 2012 WL 3575293, at *5–6 (E.D. La. Aug. 20, 2012) (To establish liability under the Louisiana Products Liability Act, the Plaintiff must prove . . . "that the plaintiff's damages were proximately caused by a characteristic of the product[.]"); *Seaman v. Seacor Marine LLC*, 564 F. Supp. 2d 598, 600 (E.D. La. 2008), *aff'd* 326 F. App'x 721 (5th Cir. 2009) ("the plaintiff must present admissible expert testimony to establish general causation as well as specific causation . . . Specific causation is whether a substance caused a particular individual's injury.") (citations omitted); *Burst v. Shell Oil Co*, No. 14-cv-109, 2015 WL 3755953, at *1 (E.D. La. 2015) ("[P]laintiff must show . . . specific causation—that defendants' products caused" the alleged injury.). Sanofi's experts have opined that there are many conditions in Plaintiff's medical history that cannot be ruled out in causing her hair loss. For example, defense dermatologist Dr. Shapiro believes that Plaintiff is experiencing androgenetic alopecia that started before she underwent chemotherapy—and that this alopecia has been impacted by her long-term use of Tamoxifen.[3] Dr. Shapiro also believes Plaintiff's vitamin

---

[2]   Rec. Doc. 8201 at 2−3 (Order and Reasons on Mot. *in Limine*).

[3]   **Ex. A**, Oct. 9, 2020 Shapiro Rpt. at 35 ¶ 111 ("It is my opinion to a reasonable degree of medical probability that Ms. Kahn is experiencing androgenetic alopecia (or "AGA"). Ms. Kahn's photographs show the initial stages of AGA before her chemotherapy. It is also my opinion that Ms. Kahn's long-term use of Tamoxifen has likely contributed to her hair loss.").

D deficiency, age, use of testosterone gel, and genetics are likely contributing to her hair loss.[4]

Plaintiff's medical condition and medication use are also relevant to warnings causation, because Plaintiff must show that a proper warning would have changed the prescribing decisions in her case. *See, e.g.*, *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, No. 20-30405, 2021 WL 1526429, at *3 (April 19, 2021) ("a [Louisiana] plaintiff asserting a failure-to-warn claim . . . must show that a proper warning would have changed the decision of the [prescribing] physician, *i.e.* that but for the inadequate warning, the [prescribing] physician would not have used or prescribed the product.") (internal quotation marks and citations omitted).  For example, Ms. Kahn had a medical history of hypertension, a condition oncologists consider in determining what type of chemotherapy medicines a patient should receive and at what dose they should receive it.[5] Plaintiff's weight also would have been a consideration, as some chemotherapy regimens are inappropriate for women who are obese, pre-diabetic, diabetic, or have heart issues.[6]  Defense oncologist Dr. Glaspy explained in his report that women who are "obese, pre-diabetic, diabetic, or [who] have heart issues" are "suboptimal candidates for Taxol-containing regimens" because they are at a higher risk of neuropathy and cardiotoxicity.  Indeed, Plaintiff's prescribing physician, Dr. Kardinal, testified that neurotoxicity with paclitaxel "was a big concern" and that his "main reason for selecting Taxotere over Taxol was the toxicity, neuropathy."[7]

---

[4]   *Id.* at 49 ¶ 140−41.

[5]   **Ex. B**, Apr. 29, 2019 Glaspy Rpt. at 37 (Ms. Kahn had a medical history of hypertension), 19 ("[O]ther factors should be taken into consideration in determining whether a patient should be given Adriamycin, including if the patient is obese, has hypertension, or has a family history of heart disease.  Further, the risk of cardiac toxicity from Adriamycin is dose-dependent.  Stated differently, the more Adriamycin a person is given, the greater the risk they will develop left ventricular failure.").

[6]   *Id.* at 18−19 (explaining that the more frequent administration required in a taxane regimen using Taxol instead of Taxotere put patients "at risk of neuropathy and cardiac toxicity").

[7]   **Ex. C**, Jan. 17, 2018 Kardinal Dep. 72:7−19 ("Neurotoxicity with paclitaxel was a big concern . . . there was sensory neuropathy which, you know, that people would have abnormal sensation in their hands and feet.  May be severe enough to interfere with their gait.  The—there appeared to be less neurotoxicity with docetaxel than there was with paclitaxel which was one of the reasons I tended to use docetaxel in preference to paclitaxel.");

Given that alopecia has so many potential causes, evidence concerning alternate causes of Plaintiff's alleged injury—including medical conditions and medication use—bear directly on specific causation.   And, because a patient's medical conditions and medication use are relevant to the treatments that would have been available to Plaintiff in 2008, Plaintiff's medical conditions and medication use bear directly on warnings causation.   Because of the high probative value of evidence relating to Plaintiff's medical conditions and medication, it does not meet the standard for exclusion excluded under Rule 403.

**B.     Plaintiff's Family History of Cancer is Relevant and Probative to the Issues in this Case.**

Evidence regarding Plaintiff's family history of cancer and other medical conditions is also relevant to demonstrating Plaintiff's notice of the risks associated with cancer and cancer treatments.   Plaintiff has a significant history of cancer in her family:

- Plaintiff's mother was diagnosed and treated for breast cancer before Plaintiff's own diagnosis, and Plaintiff attended all of her mother's doctor's appointments.[8]

- Plaintiff's aunt passed away from breast cancer years ago.[9]   Plaintiff described talking about her aunt as "emotional" because she has had "lots of cancer" in her family—her aunt and a "litany" of other family members.[10]   Plaintiff's nephew passed away from leukemia when he was 9 years old.[11]   And, Plaintiff had another aunt who passed away from pancreatic cancer in 2013 or 2014.[12]

- Plaintiff's father was diagnosed with bladder cancer, suffers from heart disease and now takes a blood thinner.[13]

---

*see also* Ex. B, Apr. 29, 2019 Glaspy Rpt. at 46 (concluding that Taxotere was the appropriate choice for Ms. Kahn, who may have experienced worse neuropathy with Taxol).

[8]   **Ex. D**, Dec. 7, 2017 Kahn Dep. 137:23−141:25.

[9]   *Id.* at 294:24—295:24 ("We've had lots of cancer in our family.  So I can go on probably for another two hours talking about that, so it's just—it's very emotional.  It's my aunt, and then there are a litany of other family members.").

[10]   *Id.* at 295:15−24.

[11]   *Id.* at 298:25−7.

[12]   *Id.* at 296:17−25.

[13]   *Id.* at 136:8−137:22.

- Plaintiff's sister was diagnosed with breast cancer around 1995, and underwent surgery, chemotherapy, and radiation.[14] Plaintiff's sister later was diagnosed with thyroid cancer, underwent another surgery, and is now on medications for "the rest of [her] life."[15]

Plaintiff's family medical and cancer history is relevant to the risks she was willing to accept to treat the disease. Plaintiff testified that she always thought she would have a high chance of getting breast cancer because her mother and sister already had, that she was devastated when she found out she had breast cancer,[16] and that her next thought was how she was going to fight and beat the cancer.[17] Plaintiff also testified that she was willing to take a 3% chance of suffering from liver failure, acute leukemia, heart damage, and lung damage from chemotherapy because "there are many risks with chemotherapy."[18] Plaintiff's family medical and cancer history informed Plaintiff of the serious risks involved in chemotherapy treatment. Because of the high probative value of Plaintiff's family medical and cancer history, it does not meet the standard for exclusion excluded under Rule 403.

## CONCLUSION

For these reasons, testimony, argument and evidence about Plaintiff's medical conditions, medication usage, and family medical and cancer history are relevant and admissible for rebutting both specific and warnings causation, and the Court should deny Plaintiff's Motion.

---

[14]  *Id.* at 145:23−147:25.

[15]  *Id.* at 150:23−151:13 ("Q. What kind of treatment did she receive?  A. Surgery.  Q. Any drugs?  A. Well, once you have your thyroid removed, you have to – you're on drugs for the rest of your life.").

[16]  *Id.* at 156:1−20.

[17]  *Id.*  ("Well, it's devastating news, and then, once you recover from the devastation, then it's, like, okay, how are we going to fight this.  And that's what I -- you know, the stance I took after getting diagnosed.  Q. And by fighting it, you mean: I'm going to beat cancer, and I'm going to survive.  A. Yes.").

[18]  *Id.* at 201:12−202:14 ("Q. You were willing to take the risk of a 3-percent chance—up to a 3-percent chance of liver failure, acute leukemia, heart damage, and lung damage, correct?  . . . Q. Why were you willing to take that risk?  A. Because there were many risks with chemotherapy.").

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
Jon Strongman
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com
jstrongman@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2021, I electronically filed the foregoing with the Clerk of

the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*