UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)            MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

**THIS DOCUMENT RELATES TO:**
*Elizabeth Kahn*, Case No. 2:16-cv-17039.

**SANOFI'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 14 TO EXCLUDE TESTIMONY AND ARGUMENT THAT TAXOTERE HAS SAVED LIVES**

This Court previously granted in part and denied in part Plaintiff's motion on this issue in *Earnest*.[1] After cautioning that there likely would not "be any testimony about millions of people [having] their lives saved by Taxotere,"[2] the Court held Sanofi was allowed to present evidence and argument of Taxotere's benefits at trial, noting "the risk-benefit analysis particularly for this patient is ***absolutely relevant***."[3]

Like in *Earnest*, Plaintiff's request to exclude testimony and argument regarding Taxotere's benefits is unsupported by law and conflicts with the scope of Plaintiff's evidence. The request is also unreasonable because Plaintiff's pending claim—that Sanofi's alleged failure to warn her of alopecia risk caused her to experience permanent hair loss—requires the witnesses and the jury to weigh the risks and benefits of Plaintiff's chemotherapy treatment options. There is simply no way for a jury to assess this claim without considering, among other things:

1. The risk-benefit profile of Taxotere that Plaintiff and her prescribing physician had to weigh in deciding whether to proceed with treatment if warned as Plaintiff alleges her physician should have been; and

2. The possibility that Plaintiff may not be alive if she had not been treated

---

[1] Rec. Doc. 8198 ("MOTION *in Limine* to Exclude Testimony and Argument That Taxotere Has Saved Lives (R. Doc 7660) is **GRANTED IN PART & DENIED IN PART**.").

[2] Rec. Doc. 11112 (Sept. 5, 2019 Mot. Hr'g Tr.) 65:1–3.

[3] *Id*. 64:20–25 (emphasis added).

with Taxotere.

Evidence of Taxotere's life-saving benefits—including increased survivorship among breast cancer patients—is highly relevant to Plaintiff's claim and admissible. *See* Fed. R. Evid. 401, 402. The Court should deny Plaintiff's Motion or, at the very least, maintain its ruling from *Earnest*.

    **A.**    **Evidence of Taxotere's Benefits Is Relevant and Admissible.**

Evidence of a product's benefits is relevant and admissible in Louisiana product liability cases, including those involving pharmaceutical drugs. *See Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir. 2000) ("In both defective design and failure to warn cases courts have applied a risk-utility analysis to determine liability," which requires a determination of "the utility of the product.") (applying Louisiana law); *see also In re Vioxx Prod. Liab. Litig.*, 401 F. Supp. 2d 565, 579–82 (E.D. La. 2005) (denying plaintiff's motion to exclude testimony that "the benefits of [the drug] outweighed its risks" because such testimony "is relevant to refuting the Plaintiff's claims," including a failure-to-warn claim, in a pharmaceutical product MDL).

As this Court has explained, the jury must consider the risks associated with Taxotere in context with (1) its benefits and (2) the risks and benefits of alternate treatment options.[4] To that point, Plaintiff's prescribing physician, Dr. Carl Kardinal, testified that—at the time he prescribed Taxotere for Plaintiff—he believed Taxotere was "the drug of choice in [treating] breast cancer" and, although similar in efficacy to Taxol, more advantageous based on the fact that "neuromuscular toxicity was considerably less common" with Taxotere than Taxol.[5] Here too, there is specific medical evidence that treatment with Taxotere dramatically decreased the size of

---

[4]   *Id*. 64:21–25 ("That goes to the core of the decision between the plaintiff and her physician, and at the end of the day, you have to show that with an adequate warning she would not have used -- a different prescribing decision would have been made.").

[5]   **Ex. A**, Jan. 17, 2018 Kardinal Dep. 71:25–74:11.

Plaintiff's breast cancer tumor.[6] Testimony and argument regarding this benefit is admissible under Louisiana law.

That the risks and benefits of Taxotere, including survivorship benefits, are relevant to Plaintiff's claims is likewise evident from Plaintiff's own testimony and that of her family. Plaintiff testified that one goal of her treatment was survival.[7] And Plaintiff's husband, Steve Seebol, testified clearly about his concerns following Plaintiff's cancer diagnosis:

> Q  Do you remember how you felt when you heard [that Plaintiff was diagnosed with cancer]?
>
> A  It was pretty devastating.
>
> Q  Did you feel afraid or worried?
>
> A  Sure. Both.
>
> Q  At that time, what were you worried about?
>
> A  Well, cancer is a very -- is the kind of thing that people worry about, so -- and there's -- *mortality is always in the equation*.[8]

The potential life-saving benefits of Taxotere were critically relevant to Plaintiff's decision to take Taxotere, and necessarily relevant to any decision calculus she suggests would have changed if the drug label had noted reports of permanent hair loss. Plaintiff's request to exclude evidence and argument of Taxotere's benefits would mislead the jury with respect to the facts of Plaintiff's

---

[6] *See* **Ex. B**, Apr. 17, 2021 Bosserman Dep. 124:11–20 ("Q. And what we know based on the clinical trial documents, was that at the beginning of the clinical trial, the longest diameter of the lesion was four centimeters, and after the docetaxel regimen, the longest diameter of the lesion was one centimeter. Correct? A. We know that what was measurable clinically was four centimeters. After the docetaxel/capecitabine component, it measured one centimeter, clinically."); *see also* **Ex. C**, Feb. 22, 2018 Larned Dep. 148:22–149:9 ("Q. And can you say with a reasonable degree of medical certainty that she would be alive today if she took a different regimen? . . . A. Well, you know, she obviously was on a clinical trial. She could have gotten standard of care, and yes, she would likely would be alive on standard of care regimens as well. Q. And do you know, was the standard of care TAC? A. Yes. Q. Taxotere? A. Right.").

[7] **Ex. D**, Dec. 7, 2017 Kahn Dep. 179:23–180:5.

[8] **Ex. E**, Oct. 3, 2020 Seebol Dep. 87:1–9 (emphasis added).

actual treatment and prevent it from effectively assessing the claim she now raises. In effect, the request would force the jury to decide how Plaintiff would have weighed the benefits and risks of Taxotere without knowing the benefits she and her prescribing physician would have ***and did*** consider.

Besides being fully admissible under Louisiana law and highly relevant under the facts of Plaintiff's case, Sanofi is entitled to present evidence on the benefits of Taxotere—including its increased survival benefits—because Plaintiff has placed them in issue. For example, Plaintiff states that her expert, Dr. Linda Bosserman, will testify regarding "several treatment options with equal efficacy to reduce her recurrence risk and improve her overall survival."[9] Although Sanofi disputes that Dr. Bosserman's testimony should be admitted in light of Dr. Kardinal's testimony regarding alternative treatment options,[10] Plaintiff does not seek an order excluding Dr. Bosserman's testimony or argument addressing the impact of Taxotere on her "overall survival." Instead, Plaintiff merely seeks to exclude evidence ***offered by Sanofi*** that the impact of Taxotere was ***favorable for cancer patients—including Plaintiff***.[11] Because Plaintiff placed Taxotere's benefits—including survival benefits—at issue, this Court should deny Plaintiff's asymmetrical request.

### B. There is No Risk of Undue Prejudice Because Sufficient Evidence Exists that Taxotere Increased Plaintiff's Chances of Survival.

Recognizing that evidence and argument of Taxotere's benefits is relevant, Plaintiff primarily argues that allowing Sanofi to present argument about Taxotere's benefits is an "over-

---

[9] Rec. Doc. 11082 (Pl.'s Opp. to Sanofi's Mot. to Exclude Bosserman) at 5.

[10] *See* Sanofi's Opp. to Pl.'s Mot. *in Limine* No. 7, filed concurrently herewith.

[11] *See, e.g.*, Rec. Doc. 12890-1 (Pl.'s Mot. *in Limine* Memo No. 14) at 11 ("Plaintiff respectfully requests that this Court bar Sanofi and its witnesses from offering […] argument[] or evidence that Taxotere has saved numerous lives or Plaintiff's life.") (emphasis added).

the-top appeal to passion" and "an extremely prejudicial attempt to state or imply that the jury should nullify any possible verdict or reduce damages since Mrs. Kahn is still alive."[12] Not so.[13]

Taxotere's life-saving benefits bear directly on Plaintiff's claim that an inadequate warning caused her to take Taxotere. And, contrary to Plaintiff's Motion, there will be sufficient evidence at trial that Taxotere gave Plaintiff the best chance of survival without the increased risk of serious side effects, like neuropathy.

This Court has already denied Plaintiff's attempt to prohibit Sanofi's expert, Dr. John Glaspy, from testifying that "Taxotere is a life-saving drug," ruling that "[g]iven his years of clinical practice in oncology, Dr. Glaspy can reliably make such a statement."[14] Specific to Plaintiff, Dr. Glaspy also opined that ***Plaintiff's*** "survival [wa]s best with a taxane."[15] Dr. Glaspy further clarified that although Taxotere and Taxol are both taxanes and similar in terms of efficacy, Taxotere has significant advantages compared to Taxol, including a lesser risk of neuropathy and infusion site reactions, as well as longer periods of rest between infusions.[16]

---

[12] Rec. Doc. 12890-1 (Pl.'s Mot. *in Limine* Memo No. 14) at 2, 4.

[13] To the extent Plaintiff argues that Sanofi strayed from the evidence or advocated an improper damages model in *Earnest*, such argument is without merit. Sanofi's counsel properly directed the jury to consider the life-saving benefits of Taxotere against its risks, as well as the risks of other alternate drugs, in weighing whether Sanofi's alleged failure to warn Ms. Earnest of alopecia risk caused her permanent hair loss. There was nothing improper about Sanofi's argument, which was supported by the evidence and addressed the risk/benefit analysis at the heart of Ms. Earnest's case.

[14] Rec. Doc. 11790 (Order and Reasons Denying Pl.'s Mot. to Exclude Testimony of John Glaspy, M.D.) at 10–11.

[15] **Ex. F**, May 13, 2020 Glaspy Dep. 132:7–8.

[16] **Ex. G**, Apr. 29, 2019 Glaspy Rpt. at 15 ("While Taxol and Taxotere are both taxanes, they are not the same drug. They have different drug profiles, different toxicities, and are prescribed for different indications."); *id.* at 16 ("Notably, for both HER2+ and HER2- breast cancer, patients can avoid Adriamycin and other anthracyclines by taking a Taxotere combination regimen. . . . [Also,] the risk of severe neuropathy is much lower with Taxotere than Taxol. Neuropathy is a side effect of taxane chemotherapy. Neuropathy can be permanent."); *id.* ("Taxol and Taxotere-containing regimens are also given on different dosing schedules. More specifically, Taxol is usually given weekly, especially when used in early breast cancer. Taxotere is given once every three weeks."). Dr. Glaspy also testified concerning these specific advantages of Taxotere. *See* **Ex. H**, Jan. 9, 2020 Glaspy Dep. 170:19–175:22 (Taxol carries a greater risk of neuropathy and worse neuropathy than Taxotere); Ex. F, May 13, 2020 Glaspy Dep. 92:4–95:8.

Dr. Kardinal also testified that Taxotere was the "drug of choice in breast cancer,"[17] and that he prescribed Taxotere because he thought it would help his patients survive.[18] Had Plaintiff opted not to participate in the NSABP B-40 clinical trial, Dr. Kardinal explained he would have treated her "essentially the same" with "Adriamycin and Cytoxan followed by a taxane."[19] While Taxotere and Taxol are both taxanes, Dr. Kardinal testified he preferred Taxotere because it carried "lesser neurological toxicity than Taxol."[20] Dr. Kardinal agreed that "neuromuscular toxicity was considerably less common with [Taxotere] than with [Taxol]," and expressed a "big concern" about the Taxol's neurotoxicity.[21] Based on those concerns, Dr. Kardinal preferred and prescribed Taxotere over Taxol.[22] Furthermore, there is specific medical evidence in this case that Taxotere in fact dramatically reduced Plaintiff's breast cancer tumor size.[23]

Plaintiff should not be permitted to deprive the jury of testimony or argument attributing her survival to Taxotere—especially when evidence of Taxotere's survival benefits are supported by decades of targeted epidemiological research and clinical experience as well as abundant,

---

[17] Ex. A, Jan. 17, 2018 Kardinal Dep. 74:7–22.

[18] *Id.* 77:1–7. Dr. Larned similarly testified that Taxotere is a life-saving drug. Ex. C, Feb. 22, 2018 Larned Dep. 40:13–15 ("Q. And is it your opinion that Docetaxel is a good, effective drug that saves lives? A. Yes."); *id.* 53:11–15 ("Q. When you prescribe Taxotere, are you doing so because you believe it will give your patients the best chance of surviving and beating their breast cancer? A. Yes.").

[19] Ex. A, Jan. 17, 2018 Kardinal Dep. 104:6–105:8, 106:25–107:11.

[20] *Id.* 104:6–105:8.

[21] *Id.* 71:25–72:8.

[22] *Id.* 72:9–19, 73:21–74:2 (testifying that he did not prescribe Taxol "nearly as much as" Taxotere).

[23] *See* Ex. B, Apr. 17, 2021 Bosserman Dep. 124:11–20 ("Q. And what we know based on the clinical trial documents, was that at the beginning of the clinical trial, the longest diameter of the lesion was four centimeters, and after the docetaxel regimen, the longest diameter of the lesion was one centimeter. Correct? A. We know that what was measurable clinically was four centimeters. After the docetaxel/capecitabine component, it measured one centimeter, clinically."); *see also* Ex. C, Feb. 22, 2018 Larned Dep. 148:22–149:9 ("Q. And can you say with a reasonable degree of medical certainty that she would be alive today if she took a different regimen? . . . A. Well, you know, she obviously was on a clinical trial. She could have gotten standard of care, and yes, she would likely would be alive on standard of care regimens as well. Q. And do you know, was the standard of care TAC? A. Yes. Q. Taxotere? A. Right.").

consistent witness testimony in this case. The existence of testimony that Taxol is as efficacious as Taxotere does not negate the evidence that (1) Taxotere is a life-saving drug that gave Plaintiff the best chance of survival without the increased risk of serious side effects, (2) Plaintiff underwent a chemotherapy regimen containing Taxotere, and (3) Plaintiff remains alive and cancer-free today. Accordingly, it is not improper, much less unfairly prejudicial, for Sanofi to argue the ultimate conclusion of that evidence—that Plaintiff remains alive and cancer free today in part because she took Taxotere. *See U.S. v. Morris*, 586 F.2d 396, 402 (5th Cir. 1978) (an attorney may "urge a conclusion based on the evidence."): *see also id.* ("an attorney properly may state, 'I believe that the evidence has shown'" with respect to the ultimate conclusion); *id.* (explaining that "the earnest implorings of an advocate of conclusions the jury should draw from the evidence" are proper); *U.S. v. Thompson*, 482 F.3d 781, 786 (5th Cir. 2007) (counsel is afforded "wide latitude" during closing arguments).

In effect, Plaintiff seeks to exclude evidence and argument regarding Taxotere's life-saving benefits because it is unfavorable to her case. But, "[a]s the Fifth Circuit has made clear, 'unfair prejudice' in the context of Rule 403 'is not to be equated with testimony simply adverse to the opposing party . . . [t]he prejudice must be 'unfair.'" *In re M&M Wireline & Offshore Servs.*, LLC, No. 15-cv-4999, 2017 WL 485985, at *8 (E.D. La. Feb. 6, 2017) (citing *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977)). There is nothing unfairly prejudicial about evidence and argument concerning Taxotere's life-saving benefits because such evidence goes to the heart of Plaintiff's claims and Sanofi's defenses in this case.[24]

For these reasons, Plaintiff's suggestion that Sanofi should be precluded from eliciting

---

[24] Because evidence of Taxotere's benefits is essential to the risk/benefit decision underlying Plaintiff's claim, excluding such evidence would result in undue prejudice to Sanofi. Far from supporting Plaintiff's Motion, Fed. R. Evid. 403 counsels strongly against the relief she requests.

7

evidence or argument about the survival benefits of Taxotere is without merit. And to the extent Plaintiff's arguments against attribution of *benefits* specifically to Taxotere prevail, the same logic necessarily applies to attribution of *risks* specifically to the drug—that is, this Court should exclude testimony or argument that Taxotere caused Plaintiff to experience persistent hair loss.

### C.  Evidence Of Other Lawsuits Pending In The MDL Is Inadmissible.

Finally, Plaintiff's alternative request that she be permitted to introduce evidence of lawsuits pending in this MDL should be denied.[25] Lawsuit filings are not evidence. In the Fifth Circuit, it is well-settled that references to other lawsuits or claims filed are inadmissible on grounds of hearsay, relevance, or undue prejudice. *See, e.g.*, *Stafford v. Lamorak Ins. Co.*, 754 F. App'x 241, 245 (5th Cir. 2018) (evidence of second lawsuit irrelevant and unduly prejudicial under Rule 403); *Hymel v. UNC Inc.*, 68 F.3d 467 (5th Cir. 1995) (pleadings of other lawsuit inadmissible hearsay under Rule 801 and excludable as unduly prejudicial under Rule 403); *Comardelle v. Sears, Roebuck & Co.*, No. 95-CV-1371, 1996 WL 673971, at *3 (E.D. La. Nov. 20, 1996) (excluding references to other accidents, claims, lawsuits and complaints involving same product and injury as unduly prejudicial and hearsay).

Pending claims in MDL 2740 are inadmissible hearsay and are irrelevant and unduly prejudicial. The pleadings are hearsay. *Hymel*, 68 F.3d at 467. The claims are irrelevant, as each was brought in 2015 or later—almost 6 years after Plaintiff received Taxotere. Given the fact-intensive nuances of issues such as specific causation, doctor and plaintiff awareness of risk, and each actor's weighing of risks and benefits, the claims are not substantially similar to Plaintiff's. And permitting references to "10,000+" unsubstantiated claims would invite the jury either to

---

[25] *See* Rec. Doc. 12911–3 at 8 (Sanofi's Mot. *in Limine* Memo No. 3); *Id*. at 12 (Sanofi's Mot. *in Limine* Memo No. 4).

8

impermissibly assume causation in Plaintiff's case or to punish Sanofi for perceived bad conduct irrespective of the case before it. Such undue prejudice would substantially outweigh any probative value, and warrants exclusion under Rule 403.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's Motion *In Limine* to Exclude Testimony and Argument that Taxotere has Saved Lives (Plaintiff's Motion *In Limine* No. 14, Rec. Doc. 12890) or, at the very least, maintain its ruling from *Earnest*.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
Jon Strongman
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com
jstrongman@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*