UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)   MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Elizabeth Kahn, Case No. 2:16-cv-17039.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 16
TO PRECLUDE UNSUPPORTED STATEMENTS FROM COUNSEL
IN OPENING AND CLOSING STATEMENTS**

At the time of Plaintiff's treatment, the Taxotere label provided, "Hair loss will begin after the first few treatments and varies from patient to patient. Once you have completed all your treatments, hair generally grows back."[1] It also included the term "alopecia" 10 times.[2] A jury will determine what "alopecia" means and whether Sanofi used reasonable care to provide an adequate warning. *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 264 (5th Cir. 2002) (LPLA failure-to-warn claim requires the plaintiff "demonstrate that the product in question has a potentially damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic."). Yet Plaintiff asks the Court accept her interpretation of the Taxotere label—that "alopecia" means "temporary" hair loss, though no such qualification is used—to preclude Sanofi from arguing that "alopecia" adequately warned of both temporary and permanent hair loss at the time of Plaintiff's treatment.

---

[1] **Ex. A**, Sept. 28, 2007–Apr. 19, 2010 Taxotere Label at 56.

[2] *See generally id.*

When this Court held the 2015 Taxotere label was adequate as a matter of law,[3] however, the corollary was not that every Taxotere label before 2015 was inadequate as a matter of law. Instead, the jury will make a factual determination about whether the 2008 Taxotere label adequately warned Plaintiff's treating physician about the risk of permanent hair loss. Plaintiff's Motion asks the Court to remove this question from the jury. Put another way, Plaintiff asks the Court for *summary judgment* on the inadequacy of the 2008 Taxotere label in a *motion in limine*.[4]

The Court should deny Plaintiff's sweeping request for three reasons. First, the adequacy of the 2008 Taxotere label is a clear question of fact for the jury in this case. Second, as in *Earnest*, record evidence at trial will support a jury finding that the Taxotere label adequately warned of the risk of permanent hair loss. Third, because a jury could conclude that the 2008 Taxotere label was adequate, Sanofi's counsel has proper support to make statements about the adequacy of the label during opening and closing statements.

**A.    The Adequacy of the 2008 Taxotere Label Is a Question of Fact for the Jury in This Case.**

The inadequacy of a warning label is an essential element to any failure-to-warn claim. *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 462 F. Supp. 3d 650, 652 (E.D. La. 2020). Although the Court may find a label adequate as a matter of law as it has in this MDL, the adequacy of a warning may also be a question for the jury. *See Hutto v. McNeil-PPC, Inc.*, 2011-609 (La. App. 3 Cir. 12/7/11), 79 So. 3d 1199, 1211. To take this question away from the jury before trial, Plaintiff would need to show that no genuine issue of material fact existed as to the *inadequacy* of

---

[3] Rec. Doc. 10464 (Order and Reasons Granting Defs.' Mot. for Summ. J. on the Claims of Pls. Whose Taxotere Treatment Started After Dec. 11, 2015).

[4] Plaintiff has previously endeavored to take label adequacy issues out of the jury's hands. The Court will recall that Plaintiffs sought summary judgment on the affirmative defense available to Sanofi under La. Rev. Stat. § 9:2800.59(B), asserting Sanofi knew of the risk of permanent alopecia with Taxotere as a matter of law no later than January 26, 2007. Rec. Doc. 9230. This Court appropriately denied Plaintiffs' Motion. Rec. Doc. 10704.

the 2008 Taxotere label. *See Allgood v. GlaxoSmithKline PLC*, 2008 WL 483574, at *4 n.5 (E.D. La. Feb. 20, 2008) (the applicable burden of proof requires plaintiff to show that warning was inadequate), *aff'd sub nom. Allgood v. SmithKline Beecham Corp.*, 314 F. App'x 701 (5th Cir. 2009); *see also Green v. Janssen Pharm., Inc.*, 2019 WL 1567841, at *2 (D. Del. Apr. 11, 2019); *Vallejo v. Amgen, Inc.*, 2014 WL 4922901, at *3 (D. Neb. Sept. 29, 2014). Warnings, however, "are not inadequate as a matter of law if there is a 'genuine issue of material fact about whether the warnings were adequate.'" *Green*, at *2 (citation omitted). In particular, under the LPLA, the jury in a prescription medicine case is asked whether the manufacturer used reasonable care to provide an adequate warning about the particular characteristic. *Stahl*, 283 F.3d at 264.

In *Green*, the defendant manufacturer moved for summary judgment on warnings causation against a plaintiff, who alleged the manufacturer failed to warn that Risperdal (approved to treat schizophrenia and bipolar disorder) could cause gynecomastia (male breast enlargement). *Green*, 2019 WL 1567841, at *1. The plaintiff asserted that the warning label was inadequate as a matter of law. *Id.* at *2. The plaintiff cited deposition testimony of one of the manufacturer's employees, as well as the opinion of the plaintiff's labeling expert. *Id.* at *3. The manufacturer, in response, cited its labeling expert's opinion that the drug label adequately warned of the risk of gynecomastia, as included in the label. *Id.* at *3. The court found the competing evidence "must be weighed by the factfinder" as the plaintiff could not establish the manufacturer's warnings were inadequate as a matter of law. *Id.*; *see also Hutto*, 79 So. 3d at 1211 (expert testimony on label's defectiveness provided reasonable basis for jury finding on LPLA failure-to-warn claim)

Plaintiff's evidence here is likewise inadequate.

3

**B.     Evidence at Trial Will Support a Jury Finding that the 2008 Taxotere Label Adequately Warned of the Risk of Permanent Hair Loss.**

As in *Earnest*, the record at trial will provide ample evidence to support a jury finding that the 2008 Taxotere label adequately warned of the risk of permanent hair loss:

*Expert Witness Testimony*:  Dr. John Glaspy stated in his expert report that the "Taxotere label has always been consistent with the known side effect risk profile of Taxotere."[5]  At the *Earnest* trial, Dr. Glaspy elaborated on his expert opinion, explaining that he interpreted the 2004 Taxotere warning ("Once you have completed all of your treatments, hair generally grows back") to mean "hair usually grows back," but not always.[6]  Dr. Glaspy then addressed the adequacy question squarely at trial:

> Q. And in that role as an oncologist treating patients, does the Taxotere label that we are looking at here from 2004 with the language that hair generally grows back, does that label adequately warn of the risk of alopecia, including the possibility that hair may not return?
>
> A.  As an oncologist, that informs me of that, yes.[7]

Dr. Janet Arrowsmith also has opined that information on alopecia has been included in the Taxotere label since its initial approval and that "alopecia" in the Adverse Reactions section was and is appropriate.[8]  *See Hutto*, 79 So. 3d at 1211; *Green*, 2019 WL 1567841, at *3.

*Prescriber Testimony*:  Plaintiff's prescribing oncologist Dr. Carl Kardinal agreed that saying hair generally grows back is not the same as saying hair always grows back—"[t]o say it

---

[5]   **Ex. B**, Apr. 29, 2019 Glaspy Rpt. 36; *see also id.* at 35 ("I interpret 'hair generally grows back' as leaving open the possibility that hair may not grow back and being synonymous with the statement 'hair usually grows back.'"), 36 ("As a practicing medical oncologist, I have always understood the language in the PI to mean there can be circumstances that the hair may not grow back.  'Alopecia' is a medical term, which simply means hair loss. There is no temporal element associated with the medical term alopecia.").

[6]   **Ex. C**, Sept. 25, 2019 Trial Tr. 2022:11–25.

[7]   *Id.* at 2025:21–2026:1.

[8]   **Ex. D**, Dec. 9, 2019 Arrowsmith Rpt. at 5; **Ex. E**, Defs.' May 22, 2020 Disclosure of Expert Testimony at 2 (adopting Dec. 9, 2019 report).

4

generally grows back, that doesn't necessarily mean always."[9]  Dr. Zoe Larned, who started treating Plaintiff after Plaintiff started chemotherapy, defined "alopecia" as "hair loss" and agreed that "alopecia" by itself can mean either temporary or permanent hair loss.[10]

*Company Witnesses:*  Plaintiff labels the testimony of four Sanofi employees as "Sanofi's admissions,"[11] but none testified as Sanofi's 30(b)(6) corporate witness.[12]  Dr. Michael Kopreski, in contrast, testified that the Taxotere label has always warned of alopecia.[13]  Like Dr. Kopreski's corporate witness testimony, the testimony of Sanofi's other employees supports Sanofi's label adequacy assertions.  Plaintiff, for example, presents snippets from several deponents who worked at Sanofi, including Frances Polizzano, Leslie Fierro, and Jean-Philippe Aussel.  Yet these witnesses also testified that the Taxotere label provided an adequate warning.  Dr. Polizzano testified "alopecia" as used in the Taxotere label "encompasses a range . . . anything from you have nothing to permanent . . . .  It's the full spectrum of hair loss."[14]  And Ms. Fierro testified "alopecia" is a "broad term . . . you can take it to mean all aspects of alopecia"[15] and that "hair

---

[9]   **Ex. F**, Jan. 17, 2018 Kardinal Dep. 105:9–14.

[10]  **Ex. G**, Feb. 22, 2018 Larned Dep. 54:13–22.

[11]  Rec. Doc. 12903-1 at 5.

[12]  None of the four witnesses Plaintiff identified bind Sanofi because "by making the designation, [the corporation] 'represents that the employee has authority to speak on behalf of the corporation." *Johnson v. Big Lots Stores, Inc.*, 2008 WL 6928161, at *2 (E.D. La. May 2, 2008) (quoting *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006)).

[13]  **Ex. H**, Dec. 13, 2018 Kopreski Dep. 438:21–439:7 (the very nature of alopecia is one that includes alopecia that -- that does not recover for a prolonged period of time, or may not recover."); *id.* at 446:12–18; **Ex. I**, Sept. 6, 2018 Kopreski Dep. 221:20–222:3 ("[T]hat concept of differential recovery is implicit, and it [is] known to the oncologist reading the team "alopecia."  So I think that was recognized once you put alopecia into the label before -- alopecia is in the label before 1999."); *id.* at 222:17–19 ("I think my testimony is that the term "alopecia" implies a difference in recovery times.").

[14]  **Ex. J**, Feb. 28, 2018 Polizzano Dep. 369:12–370:1 (Q.  And what does the term "alopecia" mean to you as we sit here, as reflected historically in the Taxotere label?  THE WITNESS:  Alopecia is a term that sort of encompasses a range of -- ranging from anything from you have nothing to permanent.  So it could be transient.  It could be temporary.  It could be persisting.  It's the full spectrum of hair loss. (objection omitted)).

[15]  **Ex. K**, Jan. 17, 2019 Fiero Dep. 367:11–16.

5

generally grows back" was not a guarantee that hair will grow back.[16] Dr. Aussel has repeatedly testified that he has no background, experience, or knowledge of the Taxotere label. Even if his testimony is considered, however, Dr. Aussel testified that the Taxotere label did not qualify the term "alopecia."[17] Plaintiff's Motion also does not represent the universe of evidence in this MDL that Sanofi could present at trial to support its argument that the Taxotere label was adequate in 2008. Employees, including Paul Chew,[18] Nanae Hangai,[19] Emanuel Palatinksy,[20] and Gina Vestea[21] all testified that the Taxotere label has always adequately warned of the risk of permanent hair loss.

On the whole, the evidence identified presents a fact question to the jury on label adequacy. Plaintiff's Motion, however, represents another bite at the adequacy apple. As noted, Plaintiff

---

[16]  *Id.* at 390:19–23.

[17]  **Ex. L**, Oct. 11, 2018 Aussel Dep. 85:18–86:6.

[18]  **Ex. M**, Dec. 13, 2018 Chew Dep. 548:9–549:7 ("Q. But you will agree that the term 'alopecia,' without limitation, has been in the Taxotere label since it has entered the market in the United States. Would you agree with that? A. Yes. Q. And in your opinion as a medical doctor, do you find that to be sufficient to put prescribers on notice that when you take Taxotere, whether it is single-agent monotherapy or in combination with other alopecia-causing chemotherapies, that hair loss is likely to happen and it's what -- the severity, degree, duration is going to depend patient by patient? THE WITNESS: It does depend on patient to patient, yes." (objections omitted)).

[19]  **Ex. N**, Feb. 1, 2018 Hangai Dep. 354:6–16 ("Q. Prior to that update, do you believe that the USPI adequately warned about alopecia, whether it be temporary, short-term, or longstanding? A. Adequately reported. Q. Why do you say that? A. Because alopecia was listed in the USPI." (objection omitted)).

[20]  **Ex. O**, Aug. 10, 2018 Palatinsky Dep. 431:12–432:23 ("Q. You tell me. How were the women in the United States warned about the potential for the irreversibility of alopecia through the US label? A. Is this the end of your question? Q. Yes. A. They were warned about persistent alopecia because the concept of persistent alopecia is inherent to alopecia. A physician reading the USPI and a patient reading the patient -- the product information leaflet will know that alopecia could be reversible or it might not be reversible. Q. Other than through the word alopecia, would you agree with me that in 2011, women in the United States were not otherwise warned about the possibility of reversibility of alopecia? A. Quite clear, clearly understand what you want to know, I just answered that the word 'alopecia' is sufficient to warn a patient of the possibility of irreversibility of alopecia." (objection omitted)); *id.* at 540:16–25 ("Q. As you sit here today as a doctor, as a medical professional, someone with an expertise in safety, do you consider the United States package insert to have adequately advised physicians of the risk that alopecia may be persistent? A. The document is adequate to indicate that there is that risk." (objection omitted)); *see also id.* at 500:12–502:2.

[21]  **Ex. P**, Vestea Dep. 481:22–482:14 ("Q. Do you feel, though, as a Sanofi employee in regulatory affairs, that all iterations of that labeling with respect to alopecia were truthful? A. Yes. Q. Do you feel as a regulatory affairs employee at Sanofi that all iterations of that label on permanent6alopecia were accurate? A. Yes. Q. And do you also feel that as an employee of regulatory affairs at Sanofi, that all iterations of that label with respect to persistent alopecia and Taxotere -- with respect to alopecia were reasonable? A. Yes.").

failed to demonstrate the absence of a genuine dispute on the existence of a known risk of permanent hair loss by January 2007.[22] In denying Plaintiff's Motion, the Court observed:

> Sanofi has presented evidence to suggest that it was intentionally over-inclusive with its hair loss warnings. Sanofi avers that it warned of "alopecia," which by its very nature is unpredictable. In her deposition, Dr. Frances Polizzano, the Senior Labeling Director for Taxotere, testified that "[a]lopecia is a term that sort of encompasses a range of -- ranging from anything from you have nothing to permanent. So it could be transient. It could be temporary. It could be persisting. It's the full spectrum of hair loss." Sanofi also points to testimony from Dr. Palatinsky, who testified that "[t]hey were warned about persistent alopecia because the concept of persistent alopecia is inherent to alopecia. A physician reading the USPI and a patient reading [] the product information leaflet will know that alopecia could be reversible or it might not be reversible."
>
> The evidence presented is subject to multiple interpretations.[23]

In short, the Court has already determined that there is evidence from which a jury could find that Sanofi took reasonable care to adequately warn of the risk of permanent alopecia, such that Plaintiff's Motion to preclude argument to the same effect should also be denied.

    **C.**    **Opening and Closing Arguments Are Well-Supported and Do Not Implicate Post-Treatment Evidence.**

Sanofi's counsel has ample support to assert in opening and closing statements that the Taxotere label has always warned adequately of the risk of permanent hair loss. Because the record supports Sanofi's argument, the Court should also decline Plaintiff's invitation to introduce evidence post-dating Plaintiff's treatment. Contrary to Plaintiff's assertion, no evidence can "confirm Sanofi's interpretation of the pre-2008 labeling did not include a warning of permanent

---

[22] Rec. Doc. 10704.

[23] *Id.* at 9–10.

7

alopecia."[24] Instead, the evidence identified above, including the testimony of Sanofi's expert witnesses, Plaintiff's treating physicians, and Sanofi's corporate representative and current and former employees, would allow a jury to find that Sanofi used reasonable care to adequately warn of the risk of permanent hair loss before Plaintiff's treatment. Accordingly, the Court should decline Plaintiff's request for summary judgment on the inadequacy of the Taxotere label in its motion *in limine*.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' Motion *in Limine* to Preclude Unsupported Statements from Counsel in Opening and Closing Statements.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART &
MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Jon Strongman
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
jstrongman@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

---

[24] Rec. Doc. 12903-1 at 6.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*