UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO: | |

**Elizabeth Kahn, Case No. 2:16-cv-17039.**

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 17 TO INCLUDE EVIDENCE REGARDING ONLINE ADVOCACY

Plaintiffs have repeatedly disclaimed the relevance of Shirley Ledlie[1] and the related Facebook VOICES page. Likewise, this Court has repeatedly stated this evidence is "clearly 403" and excludable. Yet Plaintiff now asks this Court to pre-admit the same evidence if Sanofi makes *any* argument that her claims are prescribed.

Although Plaintiff's arguments have changed, the result should not. First, the same prejudicial concerns identified before the *Earnest* trial remain and outweigh any purported relevance. Second, this prejudicial evidence has no relevance to either the fraudulent concealment or discovery rule exceptions to prescription. Third, the evidence is not relevant to notice because the activity on the VOICES page post-dated Plaintiff's first Taxotere treatment by nearly a year. This Court should again deny Plaintiff's attempt to introduce irrelevant and highly prejudicial evidence at trial.

---

[1] Shirley Ledlie is a French resident who alleged she experienced permanent hair loss following chemotherapy treatment with a Taxotere-containing regimen in France. Proceedings in France led to the dismissal of her claim for indemnification from a French administrative agency, an action to which Sanofi was not a party. Ms. Ledlie helped form several advocacy and communications groups relating to hair loss and Taxotere, including a "Taxotears" Google group, a "Taxotears" Facebook group, and an online blog titled "A Head of Our Time." Like Barbara Earnest, Plaintiff Elizabeth Kahn has never been a member of any such group, and there is no evidence that she has ever communicated with any member of these groups.

### A. Online Advocacy Evidence Is Irrelevant and "Very, Very Prejudicial" in This Case.

#### 1. This Court should exclude evidence regarding Shirley Ledlie, "Taxotears," third-party advocacy or communications groups, or group members.

Plaintiff seeks to admit the same evidence this Court called "very, very prejudicial," "clearly 403," and precluded before the *Earnest* trial.[2] Sanofi has again filed a motion *in limine* to preclude any evidence or argument regarding Ms. Ledlie, "Taxotears" or other third party advocacy or communications group or group members, as well as the VOICES Facebook page,[3] and InTouch Solutions.[4] Plaintiff provides no basis to overcome the prejudicial concerns identified in *Earnest*, and the Court should deny her Motion.

In brief, Plaintiffs have previously conceded that evidence related to Ms. Ledlie, "Taxotears," other advocacy group or its members is irrelevant to their claims. *See* Fed. R. Evid. 401. Plaintiffs have asserted that "Ms. Ledlie can add no information that is relevant to any Trial Plaintiff"[5] and that "Ledlie's testimony simply lacks relevance to the merits of the claims of thousands of women who have sued Sanofi for their injuries."[6] Yet Ms. Ledlie's Facebook posts to the VOICES page are front and center in Plaintiff's Motion. The posts identified in Plaintiff's

---

[2] **Ex. A**, Sept. 5, 2019 Hr'g Tr. 112:2–113:14.

[3] As in *Earnest*, Plaintiff omits key context about the Facebook VOICES page. Sanofi developed a Facebook page *for Sanofi employees* called "Sanofi Voices." **Ex. B**, Oct. 10, 2018 Malia Dep. 319:21–320:14. Ms. Ledlie—a self-described "Taxoterrorist"—and possibly others, flooded the page with harassing posts in an apparent attempt to sabotage the page. Rec. Doc. 8028 at 3. Because the page was for Sanofi employees and not intended to promote product (or host patient) information, Sanofi removed the posts. Sanofi also posted a disclaimer on the page asking patients to contact Sanofi's drug safety (pharmacovigilance) department and FDA to report adverse events. *Id.* As this Court observed, "I'm not inclined to admit this evidence. I do think it's a 403 issue. I think if we found out that [Sanofi was] not accepting adverse event reports, that would be one thing, but what you had is angry women posting on social media[.] . . . What I heard is [Sanofi] tell them to make the complaint in the proper way that we're going to assess it, not on Facebook." Ex. A at 120:3–16.

[4] Rec. Doc. 12911-3 at 101 (Defs.' Mem. in Supp. of Omnibus Mots. in Limine).

[5] Rec. Doc. 7670-1 at 2 (citing Oct. 11, 2018 PSC Letter Brief).

[6] *Id.* (citing May 29, 2019 PSC Letter Brief).

2

Motion include posts by Ms. Ledlie and her daughter, Melissa Ledlie.[7] Nothing has changed about this evidence between *Earnest* and this trial, except for Plaintiff's desire to use it.

Relevance, not desire, however, is the touchstone. Fed. R. Evid. 401. Here, the record is clear that Plaintiff has never been a member of "Taxotears" or any other advocacy group.[8] Indeed, there is *no evidence* that Plaintiff ever visited the VOICES Facebook page, or conducted any research about Taxotere on Facebook, or otherwise, until she had already learned about Taxotere lawsuits through law firm advertising.[9] Because the evidence remains highly prejudicial and lacks any relevance, the Court should preclude this evidence.

### 2. The evidence is irrelevant to the fraudulent concealment and discovery rule exceptions to prescription.

Plaintiff takes the new, unsupported position that the Court should permit her to introduce online advocacy evidence if Sanofi makes *any* argument that Plaintiff's claims have prescribed. Along the way, Plaintiff conflates two exceptions to prescription—fraudulent concealment and the discovery rule—to assert that removal of certain posts from the VOICES Facebook page is relevant.[10] As detailed below, the fraudulent concealment exception addresses the plaintiff's actions in light of the defendant's conduct, while the discovery rule only addresses the reasonableness of the plaintiff's conduct. When these exceptions are untangled, the evidence is relevant to neither.

---

[7] **Ex. C**, Sanofi_05950665.

[8] **Ex. D**, Pl.'s Third Am. Fact Sheet § II.20 ("Are you now or have you ever been a member of an alopecia support group? No.").

[9] *See* **Ex. E**, Dec. 7, 2017 Kahn Dep. 22:8–23:1 (Ms. Kahn "started to read up" on Taxotere only after learning of lawsuit advertising in 2016); 25:4–20 (same); 84:4-85:11 (saw articles discussing Taxotere "[o]nly after I heard about, from my friend, that – about the advertisements for Taxotere lawsuits"); 249:24–250:5 ("Q. When did you research [Taxotere] on the Internet? A. After I talked to my friend Leslie in summer of 2016[.]").

[10] Rec. Doc. 12907-1 at 5 ("A jury could reasonably find that Sanofi's efforts to maintain secrecy on the issue of permanent and disfiguring hair loss factored into the reasonableness of Ms. Kahn's action or inaction and whether Louisiana liberative prescriptions rules should result in a finding that her claims against Sanofi . . . were stale and untimely.").

First, the evidence is irrelevant to the fraudulent concealment exception. In Louisiana, this exception to prescription only applies where the defendant took some affirmative action against the plaintiff *specifically*. See *Prevo v. State ex rel. Dep't of Pub. Safety & Corr. Div. of Prob. & Parole*, 2015-0823 (La. 11/20/15), 187 So. 3d 395, 398 ("In essence, this category applies when the defendant engages in conduct which prevents the plaintiff from availing himself of his judicial remedies."); *Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10), 48 So. 3d 234, 252 (explaining precedent that defendant's conduct must result in "lulling" plaintiff into a false sense of security); *see also Johnson v. SmithKline Beecham Corp.*, 95 F. Supp. 3d 819, 830 (E.D. Pa. 2015) (fraudulent concealment exception to prescription did not apply under Louisiana law where plaintiff failed to identify any misrepresentation "on which she relied to her detriment"), *aff'd sub nom. Johnson v. GlaxoSmithKline, LLC*, 636 F. App'x 87 (3d Cir. 2016).

Plaintiff has not shown any action by Sanofi that effectually prevented *her* from bringing her lawsuit. As noted, no evidence shows Plaintiff ever visited the VOICES Facebook page, or conducted any research about Taxotere on Facebook, or otherwise, until she had already learned about Taxotere lawsuits through law firm advertising. *See Guerin v. Travelers Indem. Co.*, 2019-0861 (La. App. 1 Cir. 2/21/20), 296 So. 3d 625, 631 (fraudulent concealment exception inapplicable where plaintiff did not speak with any of defendant manufacturer's employees about the product and no one from manufacturer hindered plaintiff's ability to hire a lawyer or investigate the cause of his injury). Plaintiff was not "lulled," so this evidence—and the exception itself—is not relevant.

Second, the evidence is irrelevant to the discovery rule exception. The discovery rule implicates the reasonableness of *Plaintiff's* investigation, not the defendant's conduct. *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 2021 WL 2373490, at *4 (5th Cir. June 9, 2021)

(discovery rule applies "where the cause of action is neither known nor reasonably knowable by the plaintiff *even though the plaintiff's ignorance is not induced by the defendant*" (citation omitted) (emphasis modified)). The focus then is on whether Plaintiff should have discovered her cause of action based on the information available to her, not on information allegedly made unavailable. *See id.* With this distinction in mind, the Court should not permit Plaintiff to introduce evidence of the alleged removal of certain Facebook posts (which Plaintiff asserts is relevant to fraudulent concealment, but is not) if Sanofi introduces evidence of the information available to Plaintiff had she reasonably investigated her injury (which is relevant to the discovery rule). *See id.* (not including the Facebook VOICES among the "key information" from master complaint the Fifth Circuit used to determine when plaintiff should have considered Taxotere as "a potential root cause" of her injury).[11]

### B. The Evidence Is Not Relevant to Notice Because It Post-Dates Plaintiff's Treatment in 2008.

In *Earnest*, the plaintiff made an identical notice argument,[12] which the Court denied.[13] The Court should again deny Plaintiff's argument because the prejudicial effect of this evidence far outweighs any probative effect for notice. Fed. R. Evid. 403. As this Court observed before *Earnest*, "it's a 403 issue. I think if we found out that they were not accepting adverse event reports, that would be one thing, but what you had is angry women posting on social media[.]"[14] Plaintiff has not—and cannot—point to any evidence that Sanofi did not accept adverse event

---

[11] Plaintiff's Motion focuses on evidence of the alleged removal of certain Facebook posts. *See, e.g.*, Rec. Doc. 12907-1 at 5 (*"By removing the warnings from prior patients from Facebook, Sanofi removed the information from the marketplace of ideas*[.]"). To the extent Plaintiff seeks to introduce the Facebook posts themselves, this Court should again deny Plaintiff's request and grant Sanofi's Motion *in Limine* No. 26 to Preclude Evidence or Argument Regarding Shirley Ledlie, Any "Taxotears" or Other Third Party Advocacy or Communications Group or Group Members, Facebook Voices Page, and InTouch Solutions. Rec. Doc. 12911-3 at 101.

[12] Rec. Doc. 7836 at 1–2.

[13] Rec. Doc. 8201 at 6.

[14] Ex. A, Sept. 5, 2019 Hr'g Tr. at 120:3–8.

reports. Instead, Sanofi posted a disclaimer on the Facebook VOICES page asking patients to contact Sanofi's drug safety (pharmacovigilance) department and FDA to report adverse events. If notice is Plaintiff's goal, there are far less prejudicial means to achieve it.[15]

Notice, however, is not Plaintiff's goal. The Court should also deny Plaintiff's notice argument for a new reason, which underscores that Plaintiff's motive is not to introduce this evidence for notice, but to inflame and confuse the jury. Fed. R. Evid. 403. Relevant notice evidence concerns what Sanofi knew about Taxotere's risk at the time of Plaintiff's treatment. *See* La. R.S. § 9:2800.57; *see also Sadler v. Advanced Bionics, Inc.*, 2013 WL 1311148, at *4 (W.D. Ky. Mar. 26, 2013) ("[N]otice is an inapposite argument here, because the [civil monetary penalty action] post-dated the manufacture and implantation of Plaintiffs' cochlear implant."). Plaintiff asserts the evidence provided notice to Sanofi that "Taxotere causes permanent hair loss at least by April 2009."[16] Thus, in *Earnest*, the plaintiff had at least a colorable—if unavailing— argument that this evidence was relevant to notice before her first Taxotere treatment in 2011. But here, Plaintiff received her first chemotherapy treatment in May 2008, almost a year before the Facebook VOICES page would have allegedly put Sanofi on notice.[17] Accordingly, any activity on the Facebook VOICES page could not provide notice to Sanofi of the alleged risk of permanent hair loss *before* Plaintiff received her treatment in 2008.

## CONCLUSION

For these reasons, the Court should deny Plaintiff's Motion in Limine to Include Evidence Regarding Online Advocacy.

---

[15] Rec. Doc. 8028 at 3 n.2.

[16] Rec. Doc. 12907-1 at 6.

[17] Ex. D, Pl.'s Third Am. Fact Sheet at § V.12.

6

        Respectfully submitted,
/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART &**
**MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Jon Strongman
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
jstrongman@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

        /s/ *Douglas J. Moore*