UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)　　　　　　　　　　　MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

　　　　　　　　　　　　　　　　　　　　　　　　　　SECTION "H" (5)

THIS DOCUMENT RELATES TO:

*Elizabeth Kahn*, Case No. 2:16-cv-17039.

### SANOFI'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 13 TO PRECLUDE ARGUMENTS OR SUGGESTIONS REGARDING FDA APPROVAL

　　　The Court ruled in *Earnest* that Sanofi could not argue that it was "precluded from changing its label" or that it "provided the FDA with all pertinent information on reports of permanent alopecia and yet the FDA did not take action."[1]  The Court also forbid Sanofi from suggesting that FDA bears responsibility for Sanofi's label.[2]  At trial, this ruling was applied to prohibit Sanofi from introducing FDA <u>evidence</u>, including FDA input on the Taxotere label.  The Court sustained Plaintiff's objections on FDA's 2004 decision to strike TAX316 ongoing alopecia data from Taxotere's label—despite Plaintiff's experts' opinions that Taxotere causes permanent alopecia and that Sanofi should have updated the label, centering on that study.[3]  Under Louisiana law, however, the jury determines whether Sanofi took reasonable care to adequately warn. Reasonable care squarely implicates Sanofi's work with the federal agency that regulates the safety of prescription medicines.  In addition, Plaintiff's new regulatory expert's opinions put Sanofi's pre-2006 correspondence with the FDA—including the FDA's 2004 revisions—directly at issue.

---

[1]　Rec. Doc. 8201 at 3−4 (Order and Reasons on Mots. *in Limine*).  The Court deferred any ruling on whether FDA approval equates to Taxotere being "safe and effective" until trial.  *Id.*

[2]　*Id.*

[3]　**Ex. A**, Trial Tr. at 499:22−500:18.

Sanofi therefore respectfully asks the Court to revisit this ruling.

### A. Plaintiff's Expert's New Labeling Opinions Put Sanofi's Pre-2006 FDA Correspondence Directly at Issue.

After the first bellwether trial, Plaintiff has identified new expert witnesses on the adequacy of Taxotere's label—Dr. David Ross and Dr. Laura Plunkett. Both witnesses opine that Sanofi had a duty to use the Changes Being Effected ("CBE") process to unilaterally update the Adverse Reactions section of its label by at least 2006.[4] And, both witnesses rely on the same four pieces of evidence to reach that conclusion:

- Dr. Madigan's analysis of FAERs and Sanofi's internal pharmacovigilance databases;

- TAX 316 clinical trial data;

- One paper from peer reviewed literature (Nabholtz *et al.* 2001. *J. Clin.* 18 *Oncol.* 19:314-321); and

- The 2006 San Antonio Breast Cancer Symposium Presentation by Scot Sedlacek.[5]

Dr. Ross and Dr. Plunkett's opinions that this data triggered Sanofi's duty to warn (and ability to use the CBE process) puts Sanofi's pre-2006 correspondence with the FDA regarding the alopecia risks directly at issue.

---

[4] **Ex. B**, Feb. 2021 Plunkett Rpt. at ¶ 96; **Ex. C**, Feb. 8, 2021 Ross Rpt. at ¶ 26 (describing Sanofi's obligation to use the CBE process when pharmacovigilance obligations "reveal[ed] an unexpected Adverse Event (AE) meeting the criteria for being listed as an Adverse Reaction in the Taxotere label"); *id.* at ¶ 27 ("Had Sanofi complied with its pharmacovigilance obligations, including appropriate surveillance and analysis of the available data (including but not limited to FAERS signal data, its own internal data, worldwide medical literature, clinical trial data, and other data available to the company), Sanofi should have deduced by 2006 that some basis to believe that a causal relationship exists between Taxotere or Taxotere-containing regimens and permanent chemotherapy induced alopecia (PCIA)."), 57.

[5] Ex. B, Feb. 2021 Plunkett Rpt. at ¶ 96; Ex. C, Feb. 8, 2021 Ross Rpt. at ¶ 57, 88.

If Plaintiff's experts are permitted to opine that the *Nabholtz* article and Sedlacek abstract, together with clinical trial data and database analyses, triggered Sanofi's duty to warn (and ability to use the CBE process), Sanofi should be permitted to introduce evidence that Sanofi submitted reports of the patients described in those articles to FDA. Sanofi should also be permitted to introduce evidence that Sanofi proposed labeling to include ongoing alopecia patients from the TAX316 interim clinical trial data. And Sanofi should also be permitted to introduce evidence that FDA struck that data from the proposed labeling. All of these facts belie Plaintiff's argument that Sanofi knew of reports of permanent hair loss and hid it from the public. This evidence is directly relevant to Sanofi having taken reasonable care to adequately warn of the risk of alopecia.

For example, both Dr. Plunkett and Dr. Ross rely on the 2001 *Nabholtz* article as evidence that Sanofi "had some basis to believe there is a causal relationship" between Taxotere and permanent alopecia as early as 2006.[6] In 2004, however, Sanofi had already submitted to the FDA the *Nabholtz* article (among other materials), which detailed results from Sanofi's TAX 702 study.[7] Both Dr. Plunkett and Dr. Ross also rely on the Sedlacek abstract, which, when presented in 2006, identified seven out of 496—or 1.4%—of Taxotere patients as having "poor hair regrowth."[8] In 2005, however, Sanofi had already submitted to the FDA the Sedlacek case reports, including more detailed information it obtained from the site nurse regarding each individual patient.[9] Sanofi should be permitted to introduce evidence that it previously submitted the *Nabholtz* article to the FDA in 2004 and Sedlacek case reports to FDA in 2005.

---

[6] Ex. B, Feb. 2021 Plunkett Rpt. at ¶ 96; Ex. C, Feb. 8, 2021 Ross Report at ¶ 88.

[7] **Ex. D**, NDA20449/s-029 Submission, Index (Sanofi_05597225, at 05597231); **Ex. E**, NDA20449/s-029 Submission, *Nabholtz* Paper (Sanofi_05525313).

[8] Ex. B, Feb. 2021 Plunkett Rpt. at ¶ 96; Ex. C, Feb. 8, 2021 Ross Rpt. at ¶ 88.

[9] Rec. Doc. 11020-2 at ¶ 33.

As yet another example, both Dr. Ross and Dr. Plunkett rely on Sanofi's TAX316 data to support their opinions that Sanofi "had some basis to believe there is a causal relationship" between Taxotere and permanent alopecia by 2006. ***In fact, Dr. Ross's opinion is predicated on the belief that Sanofi did not try to include information about alopecia from the TAX316 55-month interim report in section six of its label before Ms. Kahn's first chemotherapy treatment in May 2008.***[10] Sanofi, however, had already submitted to the FDA the interim results of TAX 316, which identified 3.2% of TAC (Taxotere, Adriamycin, Cyclophosphamide) patients as having alopecia "ongoing" into the study's 55-month follow-up period by 2004.[11] Sanofi should be able to introduce evidence that it previously disclosed the interim TAX 316 data to the FDA in 2004.

Importantly, it was after both of these submissions (in addition to other data) that on August 10, 2004, FDA's Senior Regulatory Manager of the Division of Oncology Drug Products, Ann M. Staten, rejected proposed language adding alopecia as a "persistent reaction" to the Taxotere label:



**Ex. F**, Commander Ann Staten's deletion of persistent reaction data from proposed Taxotere label (Sanofi_04539472, at 30).[12]

---

[10] **Ex. G**, Ross Dep. at 136:15-21 ("Q. Do you have an opinion as to whether Sanofi ever tried to include in section 6 of its label prior to May 29th, 2008, information on alopecia in the TAX316 55-month interim report? . . . A. Do I have an opinion as to whether they sought to include it? My opinion is they did not.").

[11] **Ex. H**, March 17, 2004, Letter from Sanofi to FDA (Sanofi_05597232); **Ex. I**, NDA20449/s-029 Submission, Clinical Safety Summary (Sanofi_05524596); **Ex. J**, March 17, 2004, Proposed Sanofi Taxotere Label to FDA (Sanofi_05525092, at 05525118).

[12] Ex. F, Commander Ann Staten's deletion of persistent reaction data from proposed Taxotere label (Sanofi_04539472, at 30).

Sanofi acknowledges that the Court previously considered these pieces of evidence in its ruling on Sanofi's Motion for Summary Judgment on preemption and found that Dr. Sedlacek's abstract "was enough to support a CBE change" and that Sanofi was not entitled to summary judgment on preemption.[13] Whether Dr. Sedlacek's abstract was sufficient to support a CBE change, however, is different from whether Sanofi failed to take reasonable care, which is a question for the jury to decide.

Pursuant to the Louisiana Product Liability Act, a jury must conclude that "the manufacturer failed to use reasonable care to provide an adequate warning."[14] So, although this Court has already concluded that it was not *impossible* for Sanofi to use the CBE process to amend the Taxotere label given its determination that newly acquired information existed (or, more carefully said, that Sanofi did not carry its burden of proving that no newly acquired information existed), the previous ruling should not preclude Sanofi from explaining to the jury: (1) the rules for changing a label; (2) the information available during the relevant periods of time; (3) what had or had not been previously given to FDA; and (4) why it was reasonable for Sanofi to maintain its label given the FDA's earlier actions on such data's inclusion in 2004, which it struck through.

FDA evidence and testimony would not be introduced to argue that Sanofi may not be held liable as a matter of law because it was impossible to update its label under the federal FDA framework, but that Sanofi's actions were reasonable as a matter of fact for determination by the jury. The exclusion of evidence that supports only one side of the story allows Plaintiff to paint a counter-factual picture for the jury. Indeed, during her deposition, Dr. Plunkett explained "newly acquired evidence" and CBE process, including how she has seen companies ignore data—they

---

[13]  Rec. Doc. 11682 at 19−20.

[14]  La. R.S. § 9:2800.57.

do "not even bother to look at things that others then put into the published literature."[15]  Sanofi, however, is not a company that ignored data, and should be permitted to introduce evidence about the data it submitted, the FDA input it received, and why it reasonably did not unilaterally update the label before Ms. Kahn's treatment began.

Thus, without <u>argument</u> implying that Sanofi could *not* have used the CBE process to change its label, or that *FDA* bore responsibility for the Taxotere label, Sanofi should be permitted to introduce <u>evidence</u> about its correspondence with the FDA and why it did not change its label before Ms. Kahn's treatment.  *Hymroc v. Ethicon*, 249 A.3d 191, 212 (N.J. Super., App. Div. 2021); *Newman v. McNeil Consumer Healthcare*, No. 10 C 1541, 2013 WL 4460011 at *5 (N.D. Ill. Mar. 29, 2013) (permitting evidence concerning what a company submitted—or failed to submit—to FDA at trial); *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, No. MDL 2592, 2017 WL 2780760, at *5 (E.D. La. May 26, 2017) (denying plaintiffs' motion in limine to exclude regulatory evidence and explaining that, if anything, limiting instruction may be appropriate).  As a New Jersey Superior Court recently observed—reversing a minority trend excluding FDA evidence from trials after courts had denied preemption motions:

> To be sure, the absence of such a regulatory [] requirement does not preempt the ability of state law to impose liability upon manufacturers for selling a defective and unsafe product.  But that does not make a total ban on disclosure to the jury of the FDA's actual involvement fair or appropriate.  Many jurors in our present society would naturally expect that the FDA would have some involvement in the regulation of a new medical product being implanted in patients, and that the FDA would have had some oversight role concerning bringing a product to market.[16]

This is precisely the line drawn—one entirely consistent with this Court's rulings—by witnesses

---

[15]  **Ex. K**, Apr. 7, 2021 Plunkett Dep. at 113:4−114:9.

[16]  *Hymroc*, 249 A.3d at 212.

who would testify were they not excluded on the subject, as they were at the *Earnest* trial.[17]

Finally, Plaintiff's Motion—if granted again after the more fulsome regulatory record review since conducted by the Court—would lead to the abnormal result of excluding undisputed factual determinations. Sanofi's presentation of the interim results of TAX316, GEICAM9805, the *Nabholtz* article, and the *Sjöström* article to FDA in August 2004, are all facts determined by this Court in making its preemption ruling.[18]

### B. Plaintiff May Elicit Testimony to Assuage the Concerns Identified in the Court's Prior Ruling.

Plaintiff is able to elicit testimony through direct and cross examination that clarifies Sanofi's pharmacovigilance obligations as well as the FDA's role. For example, when Dr. Plunkett was confronted at her deposition with the FDA's 2004 decision to strike language about permanent hair loss, Dr. Plunkett pointed out that Sanofi "could have reproposed, made a new proposal to FDA," and that "she had not seen evidence that they did that."[19] This is evidence Plaintiff can elicit at trial and would prevent the jury from inferring that Sanofi could *not* have changed its label, or that *FDA* bore responsibility for the Taxotere label. But evidence of what Sanofi provided to the FDA, and the FDA's subsequent actions, informs whether Sanofi took reasonable care to provide an adequate warning—a question that the jury will need to decide. The Court should not permit Plaintiff to introduce testimony and evidence about Sanofi's alleged failure to provide adequate risk information, while also precluding Sanofi from introducing evidence about the ways it did communicate such information.

---

[17] **Ex. L**, Feb. 28, 2018 Polizzano Dep. at 27:2-38:17.

[18] *Id.* at 2.

[19] **Ex. K**, Apr. 7, 2021 Plunkett Dep. at 195:12−15.

**CONCLUSION**

For these reasons, testimony, argument, and evidence relating to Sanofi's correspondence with the FDA before Ms. Kahn's treatment is both relevant and admissible, and the Court should deny Plaintiff's motion.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Jon A. Strongman
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
jstrongman@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*