# EXHIBIT B

**SUPPLEMENTAL REPORT**
**Dr. Laura M. Plunkett, Ph.D., DABT**
**February 7, 2021**

This supplemental report was prepared at the request of Plaintiff's counsel and provides additional opinions that I have formed based on my training and experience as well as my review of publicly available documents, documents produced during litigation by Sanofi Aventis (hereafter referred to as Sanofi) as part of a discovery process, deposition testimony and exhibits to depositions of company representatives and other experts in the litigation, the expert reports of Dr. Madigan, an expert for Plaintiff in the case. My opinions relate to the use of Taxotere in the adjuvant care of early-stage breast cancer.

The opinions I have formed relate to the pharmacology and toxicology of Taxotere and how, when viewed in the context of other evidence, the toxicity of Taxotere demonstrates "some basis to believe there is a causal relationship" between Taxotere and the occurrence of permanent-chemotherapy-induced alopecia, and the need to provide physicians and their patients with accurate adverse event information in the Taxotere label. These additional opinions were developed because the regulatory expert for Plaintiff, Dr. David Kessler, is currently unable to continue to serve as an expert in this case after taking a new position to head up the vaccine development and distribution efforts in the Biden-Harris administration. Dr. Kessler provided testimony about the addition of information related to toxic adverse effects of Taxotere, specifically adding the risk of persistent or irreversible alopecia associated with Taxotere use, to the adverse reactions section (Section 6) of Taxotere's prescription drug labeling. Although I had earlier testified that I was not providing regulatory opinions, Dr. Kessler's withdrawal from the case has changed the situation, and counsel asked that I review additional material and offer an opinion on whether the toxic effects of Taxotere demonstrate a basis to believe that a causal association exists between the drug and permanent chemotherapy-induced alopecia (PCIA). The following is a discussion of my additional opinions and the basis and support for those opinions. I incorporate by reference my initial report in this case dated March 13, 2020 (hereafter referred to as the "March Report"). All opinions expressed are based on my review of all materials referenced in my March Report (including the appendices to that report), my review of additional materials as listed in Appendix A to this report, my knowledge and experience as a pharmacologist and

1

95.     With the background regarding FDA regulations of human drug labeling and the clear and constant signal demonstrated in Dr. Madigan's FAERS disproportionality analysis, and other evidence, including the Sedlacek findings and Sanofi's internal pharmacovigilance database, I have formed opinions about the toxicities that should be included in the Taxotere labeling regarding CIPAL/ PCIA. It is my opinion to a reasonable degree of scientific certainty that there is some basis to believe that there is a causal relationship between Taxotere use and CIPAL/ PCIA in patients taking Taxotere as an adjuvant treatment for early-stage breast cancer, the standard for including safety information in the Adverse Reactions section of a human prescription drug label in the US (both pre-PLR and post-PLR). As discussed in my March Report, when the published literature relevant to the relationship between docetaxel exposure and CIPAL/ PCIA is considered as a whole, in conjunction with Taxotere clinical trial data, the weight-of-the-evidence indicates that it is biologically plausible that Taxotere/ docetaxel can cause CIPAL/ PCIA when the drug is used as an adjuvant to treat early stage breast cancer, that the risk of permanent, irreversible alopecia is not rare, that Taxotere/ docetaxel use carries an independent risk of CIPAL/ PCIA, and that Taxotere/ docetaxel use is associated with an increased risk of CIPAL/ PCIA as compared to other drugs used in breast cancer treatment. Thus, the evidence discussed in my March Report provides important support for my new opinion that there is a basis in the Taxotere database, importantly including clinical trial evidence, *"to believe there is a causal relationship between the drug and the occurrence of the adverse event"* (the adverse event standard cited above in paragraph 90; see the Final Rule dated January 24, 2006). Again, as discussed above, the standard I have applied for adding CIPAL/ PCIA to the Adverse Reactions section of the Taxotere labeling is the standard that FDA, Dr. Kessler and Dr. Arrowsmith recognize as being some basis to believe that Taxotere is associated with permanent/ irreversible alopecia (CIPAL/ PCIA).

96.     With respect to the timing of addition of a statement in the Adverse Reactions section of the Taxotere labeling that Taxotere was associated with CIPAL/ PCIA in women undergoing treatment for early-stage breast cancer, the standard is some basis for a causal association. As mentioned above, Dr. Madigan's analysis of FAERS and Sanofi's pharmacovigilance databases indicate that a safety signal for CIPAL/ PCIA and Taxotere use appears at least by 2000. In my March Report (see paragraphs 34 and 35), I discussed two publicly available documents, one a paper from the peer-reviewed literature (Nabholtz *et al.* 2001. *J. Clin.*

*Oncol*. 19:314-321) and the other a presentation at the 2006 San Antonio Breast Cancer Symposium (Sedlacek, S.M. 2006). The 2001 report is important because Dr. Nabholtz was an investigator that was participating in a Taxotere clinical trial. Patients had been enrolled in a Phase II clinical study and the authors reported that the "most common treatment-related chronic non-hematologic toxicity was alopecia (87%) with long-lasting (longer than 2 years) partial alopecia in four patients" (see Nabholtz paper page 318; Sanofi_00217670). The percentage of patients at two years with irreversible alopecia was 4/54 or 7.4%. As I pointed out in my March Report, the fact that Dr. Nabholtz was an investigator for Sanofi (see page 331 of Gustavson deposition) made this paper of particular importance in terms of Defendant's knowledge over time. The second published dataset is from a presentation at a clinical meeting in 2006 where clinical experience in treating breast cancer is discussed based on a retrospective review of patient data in Dr. Sedlacek's clinical practice, data that was available to Sanofi prior to the clinical meeting in December 2006[8]. This report could be described as a "case series" and is one type of epidemiological investigation. As discussed in my March Report, alopecia associated with Taxotere therapy as an adjuvant to doxorubicin/cyclophosphamide chemotherapy was irreversible in some patients (he called the condition "persistent significant alopecia" and abbreviated it as "PSA"). PSA rates were investigated and reported for the three different treatment groups in Dr. Sedlacek's study; 6.3% in women administered doxorubicin plus Taxotere (AC/Tax; ATax; ACTax, AC/TaxXeloda; AC/TaxHerceptin; ATax/CAF; CAF/Tax), 0% in women administered doxorubicin plus Taxol (AC/T; AT/T; AC/T dose dense; ATC; AC/THerceptin), and 0% in women administered doxorubicin without a taxane (AC; FAC; A/CMF). The comparison of Taxotere experience with and without doxorubicin allowed for consideration of the contribution of each drug independently to the risk in the patients. Taxotere use was associated with an increased risk of permanent, irreversible alopecia, a risk that was not seen with use of doxorubicin alone or with doxorubicin combined with Taxol use. Therefore, Taxotere (docetaxel) carried an independent risk of CIPAL/ PCIA in this case series and was a substantial contributing factor to the condition in the women studied. Considering these two papers, in conjunction with Dr. Madigan's analyses of the FAERS database and Sanofi's pharmacovigilance database, Sanofi had some basis to believe a causal

---

[8] Oncology Field Coaching Report of Christine Muhlenhaupt by Perry Monaco, Aug. 15 &17, 2006 (Sanofi_04633925).

relationship between Taxotere use and CIPAL/ PCIA existed at least by 2006. As a result, it is my opinion to a reasonable degree of scientific certainty that the standard for adding a statement in the Adverse Reactions section of the Taxotere labeling about the relationship between Taxotere and CIPAL/ PCIA was met as early as 2006.

97.     As discussed in my March Report, Sanofi has identified a causal association between docetaxel and irreversible alopecia (Sanofi_01101022; Sanofi_00829788; Sanofi_01827599; Sanofi_04876339; Sanofi_01268143[9]). The company stated based on their own review that: *"The cumulative weighted evidence **is sufficient to support a causal association** between Docetaxel and Permanent/Irreversible alopecia in patients who receive docetaxel."* [*emphasis* added] Notably, the information reviewed by Sanofi included their pharmacovigilance database (adverse events reported to the company), two literature articles (Kluger *et al.* 2012 and Miteva *et al.* 2011) and two Taxotere clinical studies (TAX316 and TAX301). Importantly, their identification of a causal association means that the level of evidence would meet the regulatory standard for adding information into the "Adverse Reactions" section of the label for a human prescription drug product[10].

98.     Yet, it was not until December 2015 that Sanofi added permanent or irreversible alopecia to the Adverse Reactions section (Section 6) of its US label, even though evidence existed before 2006 that Sanofi should have known about based on the fact that their own pharmacovigilance database contained adverse event reports before 2006 (see report by Dr. Madigan), that one of their own investigators had published a paper on permanent alopecia in association with Taxotere use (Nabholtz *et al.* 2001), and that long-term interim data from TAX316, data that was available in 2004, contained evidence of Taxotere-induced alopecia that had not resolved at the five-year interim analysis time point (Interim TAX 316 Data, summarized by Dr. Madigan in Table 9 of his March 23, 2020 Report). It also is important to note that Sanofi themselves had recognized the existence of permanent or irreversible alopecia in documents that were submitted to the FDA starting in at least 2010 (Exhibit 16 to Dr. Palatinsky's deposition dated

---

[9] Exhibit 6 to the Hangai deposition of February 1, 2018 (page 192)

[10] See the guidance from FDA regarding data to support an Adverse Reactions statement (https://www.fda.gov/media/72139/download).