# EXHIBIT K

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ELIZABETH KAHN,

 Plaintiff,

 v.                                CASE NO. 2:16-cv-17039

SANOFI-AVENTIS U.S.
L.L.C. AND SANOFI US
SERVICES, INC.,

 Defendants.

*****************************************
ORAL DEPOSITION OF
LAURA PLUNKETT, PH.D.
APRIL 7, 2021
(Reported Remotely)
*****************************************

    ORAL DEPOSITION of LAURA PLUNKETT, PH.D., produced as a witness at the instance of the DEFENDANTS, and duly sworn, was taken in the above-styled and numbered cause on APRIL 7, 2021, from 9:35 a.m. to 3:55 p.m., before Stephanie M. Harper, RPR, CSR in and for the State of Texas, recorded by machine shorthand, at 13923 Carriage Walk Lane, Houston, Texas, pursuant to the Federal Rules of Civil Procedure 30 and 45, the First Emergency Order Regarding the COVID-19 State of Disaster, and the provisions stated on the record or attached hereto; that the deposition shall be read and signed before any notary public.

JOB NO. 704971



Page 113

1  has something to do with preemption, so I can't --
2  but I'm not a lawyer to answer that.  Just that's
3  how I've heard it discussed.
4              From a science perspective what is
5  important to me about this issue of newly acquired
6  information, it's the idea that a company has the
7  responsibility to continue to look at the experience
8  with the drug and not only look for new information,
9  a new report, or a new -- a new study but also to
10 look at whether or not something has been reanalyzed
11 based on things that they may have already
12 submitted.
13             Since the idea of making a --
14 developing support for a change that would be made
15 in the form of a supplemental NDA, for example, or a
16 CBE change that would be made based upon information
17 that's gathered, but it could be things that weren't
18 appreciated based on old data.  That's the -- and
19 that is in here, and that -- I just wanted to make
20 sure that that was understood.
21      Q.    (BY MR. MOORE)   Right. And it was -- and
22 it's -- would you agree that in going through that
23 process that you described that it's important for
24 the manufacturer to understand and consider the data
25 that has previously been submitted to the agency in



```
 1    evaluating what steps to take?
 2         A.   If you're asking me can they do that, yes.
 3    Do they do that, I have seen that done, yes.  That's
 4    exactly right.  But I've also seen companies ignore
 5    those kinds of things, not even bother to look at
 6    things that others then put into the published
 7    literature, but yet it's things that if they had
 8    done that analysis internally, they could have found
 9    out on their own.  So there are examples like that.
10              That is not something I have formed a
11    specific opinion on in this particular case at this
12    time.
13         Q.   But in terms of the regulations that
14    require a pharmaceutical manufacturer to make a
15    labeling change for a marketed product, you would
16    agree that first there has to be newly acquired
17    information, number one, and then, number two, that
18    newly acquired information has to meet the standard
19    for inclusion in the labeling.  And in this case
20    that standard is some evidence of a causal
21    association between the product and the adverse
22    event, right?
23         A.   Again, if you're limited to the sections
24    that deal with safety, yes.  But, you know, so there
25    are some other issues that might come up for other
```



Page 195

1    Q.   (BY MR. MOORE)  And what is your
2  understanding of what happened to this proposed
3  addition to the labeling in 2004?
4    A.   The entire section was struck, but I don't
5  know why.  FDA was -- there was no -- there's no
6  documents that I've seen unless you have some new
7  evidence that I haven't seen that FDA gives a reason
8  why the entire section was struck.
9    Q.   After FDA struck the section, could Sanofi
10  have ignored that and put it in its labeling anyway?
11         MR. LAMBERT:  Object to form.
12    A.   At the time that the negotiation was still
13  going on, they certainly could have reproposed, made
14  a new proposal to FDA.  And I have not seen evidence
15  that they did that.  They certainly could.  And
16  certainly after this when they are responding
17  European regulators with -- with defining
18  "permanent" versus "temporary," that would have been
19  well before 2015 that those changes could have been
20  made, and those were not in the U.S., to the U.S.
21  label.
22    Q.   (BY MR. MOORE)  And did Sanofi have any
23  communication with FDA in that time frame, 2010 or
24  2011, as it relates to any potential association
25  between docetaxel use and PCIA?

