# EXHIBIT 1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

*****************************************************************

IN RE:   TAXOTERE (DOCETAXEL)        Docket No. 16-MD-2740
PRODUCTS LIABILITY LITIGATION        Section H
                                     New Orleans, LA
Relates to:  Barbara Earnest         Thursday, September 26, 2019
             16-CV-17144

*****************************************************************

                   TRANSCRIPT OF TRIAL PROCEEDINGS
            HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                     UNITED STATES DISTRICT JUDGE
                       DAY 9, MORNING SESSION


APPEARANCES:

FOR THE PLAINTIFF:             BACHUS & SCHANKER, LLC
                               BY:  DARIN L. SCHANKER, ESQ.
                                    J. KYLE BACHUS, ESQ.
                               1899 Wynkoop St., Suite 700
                               Denver, CO 80202

                               FLEMING NOLEN & JEZ
                               BY:  RAND P. NOLEN, ESQ.
                               2800 Post Oak Blvd., Suite 4000
                               Houston, TX 77056

                               GIBBS LAW GROUP, LLP
                               BY:  KAREN B. MENZIES, ESQ.
                               6701 Center Drive West, 14th Floor
                               Los Angeles, CA 90045

                               DAVID F. MICELI, LLC
                               BY:  DAVID F. MICELI, ESQ.
                               P.O. Box 2519
                               Carrollton, GA 30112-0046

                               PENDLEY BAUDIN & COFFIN
                               BY:  CHRISTOPHER L. COFFIN, ESQ.
                               2505 Energy Centre
                               1100 Poydras St.
                               New Orleans, LA 70163
```

```
10:27:50  1   you in our opening statement.  Hair loss, weeks and weeks and weeks
10:27:54  2   before the drug that they're coming in here telling you, "Oh, this
10:27:58  3   is the cause."  How could someone say that to you?
10:28:04  4            What else did you learn during trial?  We told you this,
10:28:07  5   ladies and gentlemen, on the very first day we met.  In our opening
10:28:11  6   statement we said to you, "There are reports of permanent hair loss
10:28:20  7   with all of these drugs."  Well, look at this.  This is Adriamycin
10:28:23  8   and Cytoxan, the drugs Mrs. Earnest was taking when she lost her
10:28:27  9   hair.  These are plaintiff's experts and Dr. Carinder on this
10:28:32 10   issue.  They're all associated with reports of permanent hair loss.
10:28:38 11            And then this is Dr. Feigal.  This is from the TAX316
10:28:42 12   study.  And remember, there's the two arms; the Taxotere arm and
10:28:45 13   what's called the FAC arm, right, the non-Taxotere arm.  And, of
10:28:48 14   course, you see persistent, permanent, whatever they want to call
10:28:53 15   it, hair loss in the arm for the patients that never took Taxotere,
10:28:57 16   right?  And my partner, Jon, he said, "Dr. Feigal, well, what drug
10:29:03 17   out of the fluorouracil, Adriamycin, or Cytoxan is causing this
10:29:09 18   permanent hair loss in TAX316?"
10:29:10 19            And she said, "Well, it's the Adriamycin and the
10:29:12 20   Cytoxan."  The same two drugs Mrs. Earnest was taking when she lost
10:29:16 21   her hair.
10:29:22 22            What did Dr. Tosti tell you?  She said, "There is no way
10:29:26 23   to know which drug caused Mrs. Earnest's hair loss."  That's what
10:29:34 24   Dr. Tosti said.  Again, plaintiff's expert.  So, ladies and
10:29:38 25   gentlemen, if Dr. Tosti doesn't know, how can they ask you to
```

```
10:29:41   1   conclude that it was Taxotere as the substantial cause without
10:29:47   2   making even the beginning of an effort to rule out the Adriamycin
10:29:50   3   or the Cytoxan or the Arimidex?  It hasn't been done.
10:29:59   4           So what has plaintiff's evidence been in this case,
10:30:02   5   ladies and gentlemen?  Did they prove the things they told you that
10:30:06   6   they would two weeks ago when we were here last Monday together?
10:30:13   7   This was one of plaintiff's slides from their opening statement.
10:30:16   8   And if you look at the first thing highlighted, Mr. Schanker showed
10:30:19   9   you this slide and he stood up in court and he said to you, "Unlike
10:30:23  10   other chemotherapy drugs, Taxotere has the risk of causing
10:30:26  11   permanent hair loss."  This simply is untrue.  And we brought you
10:30:35  12   that evidence from the first day of trial and every day afterwards.
10:30:38  13           Now, why does it matter?  And maybe you were asking
10:30:42  14   yourselves that, well, why does it matter?  This goes back to the
10:30:47  15   idea of there being some highly effective, magical chemotherapy
10:30:53  16   drug that doesn't have a risk of permanent hair loss.  And now you
10:30:57  17   know, after being here for two weeks with us, it doesn't exist.
10:31:02  18   It's not reality.
10:31:06  19           Plaintiff's expert -- here it is again.  And this is not
10:31:10  20   just Adriamycin and Cytoxan.  This is also Taxol.  You heard all
10:31:14  21   about Taxol as this alternative.  Is it effective?  For sure.  As
10:31:18  22   effective as Taxotere?  That's what witnesses said.  We didn't
10:31:22  23   dispute that.  But what else did Taxol do?  It causes hair loss.
10:31:26  24   This is out of the mouths of their experts.  Every one of them.
10:31:32  25   Taxol causes hair loss.
```

| | |
|---|---|
| 11:06:40  1 | come up here and ask you for $12 million.  And I have to respond to |
| 11:06:45  2 | that.  I just simply have to.  How did Mr. Schanker come up with |
| 11:06:53  3 | that number?  Is it any different than me coming up here and |
| 11:06:56  4 | telling you, "Well, just give Mrs. Earnest $100,000?"  Is it any |
| 11:07:03  5 | different than that?  Did he just pull the number out of thin air? |
| 11:07:10  6 |       The plaintiff has the burden in this case on all of the |
| 11:07:14  7 | causes of action, including damages.  Ladies and gentlemen, they |
| 11:07:18  8 | have to prove to you by the weight of the evidence every single |
| 11:07:22  9 | dollar that they ask you for.  So ask yourself, is there any |
| 11:07:28 10 | evidence in this case to support the number of $12 million that |
| 11:07:33 11 | Mr. Schanker just asked you for?  What would justify such a huge |
| 11:07:39 12 | number based upon the evidence you heard in this trial, ladies and |
| 11:07:42 13 | gentlemen?  How do you get to $1 million in a case like this, |
| 11:07:45 14 | ladies and gentlemen, let alone 12 million?  The number defies |
| 11:07:50 15 | common sense. |
| 11:07:54 16 |       Mrs. Earnest was 60 years old when she was diagnosed with |
| 11:07:58 17 | Stage II invasive breast cancer.  Eight years later, today, she is |
| 11:08:04 18 | alive and cancer free thanks in part to Taxotere.  And maybe |
| 11:08:09 19 | Mr. Schanker wants to trivialize that or minimize it.  I don't |
| 11:08:14 20 | think you should.  I don't think Mrs. Earnest does.  It means |
| 11:08:19 21 | something.  She received a benefit like no other.  It's the gift of |
| 11:08:28 22 | life.  It's time with her husband.  They have a happy marriage. |
| 11:08:32 23 | You heard that.  She had two grandbabies born since she was |
| 11:08:36 24 | diagnosed, and you know she loves them.  We don't question that. |
| 11:08:48 25 |       Ladies and gentlemen, should Mrs. Earnest be handed over |

```
11:08:52   1   millions of dollars where the evidence has proven that a Taxotere
11:08:59   2   regimen gave her the best chance to survive and the best chance to
11:09:02   3   prevent her cancer from coming back and the best chance -- don't
11:09:05   4   leave this part out -- to minimize potentially serious
11:09:13   5   consequences?  Hair loss isn't the only risk.  It's just the only
11:09:15   6   one they want to talk about.
11:09:20   7              Given the evidence that you've heard in this case, ladies
11:09:23   8   and gentlemen, we don't believe any money damages are appropriate.
11:09:27   9   But if you get this far, we would ask you, please, just use your
11:09:32  10   commonsense.  Use your every day life experiences in deciding how
11:09:38  11   much money would be appropriate to compensate Mrs. Earnest, and
11:09:42  12   please consider the value of the benefit that you believe Taxotere
11:09:45  13   gave her.
11:09:50  14              Now, ladies and gentlemen, I am going to go and sit down
11:09:53  15   in a moment, and plaintiff's counsel is going to get another
11:09:59  16   opportunity to come up here and talk with you.  They get the
11:10:02  17   advantage of going first and going last.  It's because they have
11:10:05  18   the burden of proof.  So that's what the law says that they get.
11:10:09  19              I don't know what Mr. Schanker is going to say, but I am
11:10:12  20   pretty sure he is going to say some things that are very critical
11:10:16  21   of Sanofi.  I ask you, please, that as you listen to what he is
11:10:20  22   saying to you, ask yourself, what does this have to do with the
11:10:24  23   decision made by Dr. Carinder that he stood by today -- stands by
11:10:31  24   today in this courtroom?
11:10:37  25              Ladies and gentlemen, we very, very much appreciate the
```

```
11:10:40  1   time that you've devoted to us, to this trial, and your good
11:10:48  2   attention that you have paid throughout.  Based on the evidence you
11:10:50  3   have heard through this trial, there is only one correct verdict in
11:10:54  4   this case, and it's a verdict for Sanofi.
11:10:58  5            On behalf of my colleagues, Doug and Jon, thank you again
11:11:01  6   very, very much.
11:11:04  7            Thank you, your Honor.
11:11:04  8            THE COURT:  Thank you.  Mr. Schanker, rebuttal.
11:11:12  9            MR. SCHANKER:  Yes, your Honor.  Thank you.  May I, your
11:11:39 10   Honor?
11:11:39 11            THE COURT:  Please.
11:11:39 12            MR. SCHANKER:  Ladies and gentlemen, I just heard one
11:11:42 13   thing we agree with defense counsel, please answer yes on No. 4.
11:11:48 14            Now, in this case, here is the way I characterize what
11:11:59 15   we've seen from the defense.  Pointing fingers.  And as I listened
11:12:07 16   to the defense counsel's closing, here is the way I heard it.
11:12:11 17   First, our drug does not cause this, but if it does, then we warn
11:12:19 18   from the beginning with hair generally grows back in 1996, even
11:12:23 19   though we didn't know at that time that it caused it.  But if that
11:12:27 20   was not a good enough warning, then alopecia is a good enough
11:12:32 21   warning, even though our own company rules say that that word can't
11:12:36 22   mean "temporary" and "permanent."  But if that's not it, if that
11:12:41 23   doesn't warn, then Barbara wouldn't have made another choice if
11:12:46 24   given the choice that was taken away from her.  But if she wouldn't
11:12:50 25   have made another choice, then all of the other drugs cause this
```