# EXHIBIT 25

Page 1

```
    UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF LOUISIANA
* * * * * * * * * * * * * * * * * * * * * *
ELIZABETH KAHN,                    CASE NO.
     Plaintiff,                    2:16-cv-15397
v.
SANOFI S.A.,
SANOFI-AVENTIS U.S.,
L.L.C., SANOFI US
SERVICE, INC.,
     Defendants.

* * * * * * * * * * * * * * * * * * * * * *

            VIDEOTAPED
         EXPERT DEPOSITION
                OF
         DAVID ROSS, M.D.
    taken on Thursday, March 4, 2021
         Commencing at 9:11 a.m.
                 at
                Zoom
         Baltimore, Maryland
```

Page 31

1    to section No. 6.  So if it's relevant, I would
2    have.  If it determined -- if it's not, I do not
3    believe that I would have reviewed it.
4         Q.    Can you articulate for me the precise
5    methodology that you used to determine whether a
6    document was relevant.
7         A.    Can I articulate the precise
8    methodology?  So again, let me refer back to how
9    this would be handled by an FDA reviewer who is
10   reviewing an NDA with clinical study reports, animal
11   toxicology reports and other sections that comprise
12   not tens of thousands or hundreds of thousands, but
13   millions of pages of data.  So that's a broader
14   review than what I'm talking about here.  If a
15   medical officer is going to be concerned, for
16   example, with is this drug -- as a response --
17   response shown by all tests reasonably applicable,
18   that the sponsor has demonstrated the drug is safe
19   and is there substantial evidence of efficacy.  It
20   would be impossible certainly, if you have a
21   priority review and this was done for Taxotere, for
22   a medical officer to look at every single page.  It
23   simply cannot be done.  So they're going to rely on
24   reviewers, scientists and other disciplines to do
25   that.

Page 32

1        As I've outlined in my report, that's
2    what I did here with regard to Drs. Madigan,
3    Feingold and Plunkett.  Now that's part of the
4    methodology.  But when you say "precise", this is
5    not an engineering problem.  This is not like, you
6    know, did you use a laser at such and such a
7    wavelength to determine whatever metric.  It is not
8    a physics problem.  My review was, basically, I
9    would say the methodology that I would have used at
10   the FDA.  And again, it's not like the National
11   Bureau of Standards, if you will.  So I would say
12   methodology for any regulatory problem, is going to
13   be based on the regulatory standard.  That is the
14   key issue.  And then, what are the relevant data.
15   And there is no one-size-fits-all answer to that.
16   There just isn't.
17        Q.   And doctor, I understand what you're
18   trying to articulate is what a medical reviewer
19   would do at the FDA, correct?
20        A.   What I'm trying to articulate?  I just
21   described it.  I'm not -- I don't know if I'm trying
22   to articulate.  But please, go ahead.
23        Q.   My question was not about what someone
24   at the FDA might do.  My question is precisely what
25   you did to determine whether a particular document

Page 33

1    was relevant for review or not in this case.
2                (Witness peruses document.)
3                MR. MICELI:  Object to the form to the
4         extent that was a question.
5         A.    So if I may, I'm going to refer back to
6    Paragraph No. 30 of my report and let me just read
7    this.  So this is under "Methods":  "In analyzing
8    FDA regulatory issues to offer opinions in this
9    matter, I take the same approach that I employed as
10   an FDA reviewer charged with making recommendations
11   regarding a regulatory decision in my review of
12   NDA's and SNDA's. "
13            So that, I think, states how I
14   approached it and that would apply to your question
15   regarding relevancy.
16        Q.    Doctor, can you tell me how many pages
17   of documents are included under the Sanofi document
18   section of Exhibit C in your expert report?
19        A.    Not off the top of my head, no.
20        Q.    It's voluminous, right?
21        A.    That is correct.
22        Q.    Were you provided those documents in
23   paper form or electronically?
24        A.    Electronically.
25        Q.    And let's take the very first document