UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO | |
| *Melissa Roach* | HON. JANE TRICHE MILAZZO |
| Case No. 2:17-cv-07918 | |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' BILL OF COSTS AGAINST PLAINTIFF MELISSA ROACH

Plaintiff, Melissa Roach, a breast cancer survivor, filed her products liability lawsuit against Defendants, sanofi-aventis U.S. LLC and Sanofi US Services Inc. ("Sanofi" or "Defendants"), in the instant multidistrict litigation on August 16, 2017. Mrs. Roach was selected as a Mississippi bellwether trial pool plaintiff as it relates to the Sanofi Defendants. Her case underwent Phase I and Phase II discovery, depositions, expert discovery, and motion practice. Defendants filed a Motion for Summary Judgment alleging that Plaintiff's case had prescribed, and Mrs. Roach's case was ultimately dismissed on summary judgment on May 21, 2021 after briefing and oral argument (Doc. 12611, 12718).

Defendants now seek $32,935.99 in purported costs to be taxed against Mrs. Roach. This total includes $23,746.04 in deposition transcript fees, $9,169.95 in medical records collection, and $20.00 in docket fees. Rather than file a memorandum of support citing law and argument as to why they should be entitled to these excessive fees for a case that did not come close to trial, Defendants simply attach an itemized list of these expenses, along with receipts.

Plaintiff submits that the awarding of costs in this matter is unwarranted under the circumstances and not supported by proper documentation. Alternatively, if the Court finds it necessary to award some costs, Plaintiff contends that the amount actually awarded should be significantly lower than the amount requested.

1

## I.    LAW AND ARGUMENT

Defendants should not be awarded any costs against Plaintiff in this matter, based on 5th Circuit precedence, the Federal Rules of Civil Procedure, and the Manual for Complex Litigation. However, if the Court feels compelled to award costs, the amount awardable under the Federal Rules of Civil Procedure and relevant case law requires the amount to be significantly lower than the amount requested by Defendants.

### A.    Defendants are not entitled to any costs against Plaintiff Melissa Roach.

"[T]he decision whether to award costs ultimately lies within the sound discretion of the district court." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013); *Hall v. State Farm Fire & Cas. Co.*, 937 F.2d 210, 216 (5th Cir. 1991). According to the Fifth Circuit, a denial of costs is appropriate where a plaintiff has brought a lawsuit in good faith and at least one of the following factors is met: "(1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources." *Pacheco v. Mineta*, 448 F.3d 783, 794 (5th Cir. 2006).

Here, the Defendant does not assert that Mrs. Roach brought her suit in bad faith. To be sure, good intent on its own is not justification to deny the awarding of costs to a prevailing party. "[T]he mere fact that a suit may have been brought in good faith is alone insufficient to warrant a denial of costs in favor of a prevailing defendant." *Cherry v. Champion*, 186 F.3d 442, 446 (4th Cir.1999). But when every one of the *Pacheco* factors cited above are present, this Court may deny or reduce costs. The decision whether to award costs ultimately lies within the sound discretion of the district court. See *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S.560, (2012). For the following reasons, Defendants' Bill of Costs must be denied.

First, Mrs. Roach is a cancer survivor and person of limited means. As testified in their depositions, Melissa and her husband Billy have previously filed for bankruptcy on two occasions and continue to struggle financially. Billy, who is the household's sole source of income, recently lost his job and is now working as a self-employed contractor. Mrs. Roach is ill-equipped and unprepared to pay the tens of thousands of dollars in costs sought by Sanofi.

Second, although the exact parameters of the conduct comprising "misconduct by the prevailing party" are not particularly defined by the jurisprudence, "[m]isconduct, bad faith, and abuse of the trial process are all grounds for refusing to award costs to the prevailing parties…." *Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 540 (5th Cir. 1990). The issue in Melissa Roach's statute of limitations question involved a weighing of Mrs. Roach's efforts to find out about her hair loss when seen in light of the defendant's withholding of that information from doctors and patients. Mrs. Roach's efforts to find the cause of her injury were deemed insufficient. But there was no finding in the order dismissing plaintiff's case that the Defendant had warned of the risk of permanent alopecia to Mrs. Roach's treating oncologist or her other doctors. The records show that a warning of that risk was only added to the FDA approved label in 2015, years after Mrs. Roach took the drug. While this Honorable Court found the degree of Mrs. Roach's efforts to get an explanation of her hair loss to be lacking, the reason for that failure to obtain information about her hair loss was because none existed in the public sphere at the time she was inquiring. The Defendant failed to disclose risks that it knew to be associated with its product despite a duty to warn of those very risks. And while that fact alone was insufficient to save Plaintiff's case from dismissal, it can be fairly said that the primary reason Mrs. Roach never received proper warnings was due to Sanofi's misconduct in not advising her oncologist of the risk of permanent hair loss arising from Taxotere use.

Third, this was a close and difficult legal issue. There was arguably case law on both sides supporting a dismissal or a denial. This was not a case where the result was crystal clear. There is a dearth of cases that address on all fours the issue of the application of the discovery rule and fraudulent concealment when a defendant is hiding information from an alleged late filing plaintiff, and that plaintiff did not search hard enough for information alleged to be unavailable due to the defendant's misconduct. And while this Court found for the Defendant and dismissed plaintiff's case, it was a close and difficult ruling.

Fourth, Mrs. Roach's case provided a great value to the public, this Court, and the parties, "The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar." *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997). As in all bellwether situations, the benefits (and costs) of a ruling are not the same as in a "one-off" case. As a potential bellwether, Mrs. Roach and her action provided guidance to the parties and the Court on issues relevant to the entire MDL, specifically as it relates to Mississippi law. The discovery aided the parties in defining issues pertinent to the MDL as a whole.

As to the assessment of costs in this, a complex litigation setting, the Manual for Complex Litigation (Fourth Edition, 2004) provides some guidance. This Court's general authority to allocate costs is discussed in Chapter 11, governing Pre-trial discovery procedures. Section 11:443 states:

> "Cost allocation may also be an appropriate means to limit unduly burdensome or expensive discovery. Rule 26's purpose is not to equalize the burdens on the parties, but Rule 26(b)(2)(iii) expressly requires the court to take the parties' resources into account in balancing the burden or expense of particular discovery against its benefit. Thus, where the parties' resources are grossly

disproportionate, the judge can condition discovery that would be unduly burdensome on one of them upon a fair allocation of costs. "

Considerations of cost allocation are not based on relative resources alone. Rule 26(b)(2)(iii) allows the court to allocate costs based on considerations of benefits, burdens, and overall case efficiency. Courts have articulated as many as eight factors relevant to cost allocation:

- the specificity of the discovery requests;
- the likelihood of discovering critical information;
- the availability of such information from other sources;
- the purposes for which the responding party maintains the requested data;
- the relative benefit to the parties of obtaining the information;
- the total cost associated with the production;
- the relative ability of each party to control costs and its incentive to do so; and
- the relative resources available to each party;

Here, Melissa Roach subjected herself to the burdens of bellwether discovery not experienced by the vast majority of the MDL plaintiffs, while cooperating fully with the Court and its orders. Many of the eight factors referenced above also apply to issues of cost allocation in an MDL. Mrs. Roach was one case among a handful of Mississippi bellwether cases selected to represent the issues and facts of similarly situated plaintiffs in this MDL, with an express purpose of utilizing those bellwether selections to and identify and resolve common questions of law and fact pertaining to the MDL.

As explained by the Manual for Complex Litigation, the benefits and costs of a bellwether trials are not the same as in a single plaintiff case:

> If individual trials, sometimes referred to as bellwether trials or test cases, are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases. Some judges permit the plaintiffs and defendants to choose which cases to try initially, but this technique may skew the information that is produced. To obtain the most representative cases from the available pool, a judge should direct the parties to select test cases randomly or limit the selection to cases that the parties agree are typical of the mix of cases. Test

5

> cases should produce a sufficient number of representative verdicts and settlements to enable the parties and the court to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis, and what range of values the cases may have if resolution is attempted on a group basis.

Manual Complex Lit. § 22.315 (4th ed.).

Melissa Roach was selected to act as a bellwether to assist the Court and the Parties in the resolution of those common issues involving Mississippi plaintiffs. Among those issues common to the MDL are issues of statute of limitation and learned intermediary defenses as applied to the facts of the several representative bellwether cases. This Court has the inherent authority to allocate MDL bellwether case costs to common benefit or other cost sources. This Court has the authority to prevent that heavy financial load of common issue costs falling solely on an individual bellwether plaintiff's shoulders, especially when that plaintiff is financially challenged.

Finally, Sanofi is a large, multinational pharmaceutical corporation with significant financial resources and will not be unduly burdened by the costs expended in this matter. Moreover, Defendants have failed to provide many details regarding the costs for deposition transcript fees and other costs, and they have not provided a memorandum of law and argument in support of its Bill of Costs. Defendants should not be awarded any costs against Plaintiff.

### B. Alternatively, if any costs are awarded, the amount should be decreased substantially.

28 U.S.C. § 1920 provides that a judge or clerk *may* assess costs for certain expenditures. *If* costs are awarded, the $20.00[1] docket charge would fall into section five (5) of the statute. *Id*. However, Defendants also seek costs that purportedly fall into section 2 of the statute for "fees for printed or electronically recorded transcripts *necessarily* obtained for use in the case," and

---

[1] Should costs be awarded, $20.00 for docketing fees are awardable under 28 U.S.C. § 1920, and Plaintiff would not dispute this charge.

6

section 3 "fees and disbursements for printing…" *Id*. The 5th Circuit and other courts around the country have guidance on what costs are appropriate to claim under these categories.

> **1. Defendants' purported costs for "fees for printed or electronically recorded transcripts necessarily obtained for use in this case" is exorbitant and goes beyond what is allowable.**

Defendants request for cost reimbursement in this category exceeds the scope of 28 U.S.C.§ 1920(2) for two reasons. First, Defendants' request includes charges that were unnecessary for obtaining the transcripts. Second, many of the transcripts were not "necessarily obtained for use in this case." *Id*.

Defendants included private service of process fees; digitizing and synchronization charges; "initial services"; rough drafts; "surcharges" for expert/medical/technical and video proceedings; equipment rental; attendance; cancelling of reporting services; exhibit share; "Veritext Virtual Primary Participants"; and electronic delivery and handling. for each and every deposition they seek to recover costs for. None of these charges are recoverable under the statute or relevant case law, and Defendants took no effort minimize costs.[2]

Private process server fees are not recoverable under Section 1920 absent exceptional circumstances. *Marmillion v. Am. Int'l Ins. Co.*, 381 F. App'x 421, 431 (5th Cir. 2010); *Cypress–Fairbanks Independent School District v. Michael,* 118 F.3d 245, 257 (5th Cir.1997). It is unclear whether Defendants seek reimbursement on these fees, as invoices are included in their request, yet the fees do not appear on the itemization. Regardless, Defendants should not be allowed to collect costs for private service of process.

---

[2] For example, Defendants used Zoom to conduct depositions and seek to charge Plaintiffs for exhibit share despite Defendants having the ability to share the screen, put exhibits in the chat window to share, or simply e-mail the exhibits to counsel and the court reporter. Defendants include a myriad of other charges in their itemization that are not explained on any invoices and their relevance to obtaining the transcript is not explained.

7

Next, Defendants attempt to recoup costs on expedited transcripts via a rough draft. The extra cost of obtaining a transcript on an expedited basis is not taxable unless prior court approval of the expedition has been obtained or the special character of the litigation necessitates it. *Fogleman v. ARAMCO (Arabian Am. Oil Co.),* 920 F.2d 278, 286 (5th Cir. 1991). Defendants neither have court approval of expedition nor was it necessary to obtain rough drafts. Trial for the fourth-round bellwether picks is not scheduled until 2022, making it entirely unnecessary to rush order transcripts. Additionally, Defendants only used testimony from Mrs. Roach and Dr. Wail Alnas in their motions for summary judgment, and because those depositions were taken in September and October of 2020, respectively, and Defendants motions for summary judgment were not filed until February 22, 2021, expedition was unnecessary. Thus, Defendants' request for reimbursement of costs for rough drafts must be denied.

Additionally, in order to recover costs for both videotaping and transcription of depositions, the party seeking costs bears the burden of showing that both versions were necessarily obtained for use in the case. *Saacks v. Privilege Underwriters Reciprocal Exch.*, No. CV 16-1149, 2018 WL 3769963, at *3 (E.D. La. July 24, 2018) citing *Baisden v. I'm Ready Prods., Inc.,* 793 F. Supp. 2d 970, 976-977 (S.D. Tex. 2011). As discussed in more detail below, most of the depositions themselves were not necessarily obtained for trial preparation. The video depositions were also unnecessary in light of the Court having subpoena power over the vast majority of fact witnesses, obviating the need to obtain video transcripts. Thus, any amounts claimed in video deposition costs must be denied.

Regardless of the type of transcript, only those charges necessarily attributable to the transcript itself are recoverable. *Saacks* at *3. Incidental costs to transcript fees, such as shipping, binding, and tabbing are generally not taxable, as they are not listed in section 1920. *United States*

8

*ex rel Johnny Ray Long v. GSDMidea City, L.L.C*., 807 F.3d 125 (5th Cir. 2015). The Supreme Court instructed federal courts to deny costs not articulated in section 1920 as taxable. *Id*. Costs for audiovisual equipment are only recoverable if there is authorization by the trial court; thus, in order to recover video synchronization costs, there must be authorization by the court. *Anderson v. Mem'l Hermann Healthcare Sys.,* No. CV H-16-1647, 2018 WL 6606254, at *3 (S.D. Tex. July 30, 2018) citing *Gibbons, Inc. v. Crawford Fitting Co.,* 760 F.2d 613, 615 (5th Cir. 1985), modified, 790 F.2d 1193 (5th Cir. 1986) (en banc), *aff'd,* 482 U.S. 437 (1987). Thus, the only types of costs awardable in this category are related to the court reporter and written transcript.[3]

### 2. Defendants' purported costs for "fees for printed or electronically recorded transcripts necessarily obtained for use in this case" is exorbitant and goes beyond what is allowable.

In order for Defendants to recover costs related to depositions and transcripts, the deposition must have been necessarily taken for the case, not a mere discovery deposition. *Abbott v. United States*, 17-1604, 2018 WL 3495857, at *2 (E.D. La. July 20, 2018) ("A deposition is necessarily obtained if, at the time it was taken, it could reasonably be expected to be used during trial preparation, rather than merely for discovery."). The party seeking the costs has the burden of demonstrating necessity. *Fogelman* at 286. In this case, Defendants seek costs for 10 depositions, at least 7 of which were conducted solely for discovery purposes. Defendants have not articulated the necessity of any depositions. Thus, all costs related to these discovery depositions, regardless of whether the type of cost would be recoverable, must be denied.

All fact witnesses are within the Court's subpoena power to testify at trial, obviating the need for a deposition. Moreover, some of the deponents were not protected by any HIPAA or court-

---

[3] Only these costs for depositions necessarily obtained for use in the case, as discussed below, are recoverable. Plaintiffs contends that the only depositions necessarily obtained for use in this case were Plaintiffs Melissa and Billy Roach and Dr. Wail Alnas.

ordered protections, and Defendants could have, but did not, informally interview them. The depositions of Ms. Roach's medical doctors who did not prescribe chemotherapy to Ms. Roach were also unnecessary in-light-of the claims. Defendants took depositions of Mrs. Roach's son and friend -none of which were health care personnel- and asked them similar factual questions. At no time did Defendants attempt to control the costs of discovery, direct particularized discovery at each witness, or uncover critical information during these depositions. The unnecessary nature of Defendants' depositions for any witness other than Plaintiffs Melissa and Billy Roach[4] and Dr. Wail Alnas, is furthersupported by the fact that Defendants used only Ms. Roach and Dr. Alnas's testimony in support oftheir Motions for Summary Judgment. (Doc. Nos. 12197 and 12198).

Should the Court award costs for necessarily obtained deposition transcripts, the costs should be limited to the recoverable costs (court reporter and non-expedited transcript) of Melissa Roach, Billy Roach and Dr. Wail Alnas. Defendants have not provided an invoice for the cost of a non-expedited cost of obtaining a transcript.

### 3. Defendants' purported costs for "fees for printed or electronically recorded transcripts necessarily obtained for use in this case" is exorbitant and goes beyond what is allowable.

The costs for medical records unrelated to the claims at-issue, investigative costs, and third-party retrieval costs are not recoverable. *Eberhart v. Novartis Pharm. Corp.*, 282 F.R.D. 697 (N.D. Ga. 2012) (prohibiting recovery of medical records retrieval costs which the defendant elected to outsource the acquisition to a private provider); *Dunaway v. Cowboys of Lake Charles, Inc.*, 07-1138, 2010 WL 3883262, at *2 (W.D. La. Sept. 27, 2010) ("costs associated with materials used primarily for discovery or investigative purposes are not recoverable, as they are not obtainedfor use in the case.").

---

[4] Billy Roach's deposition was a discovery deposition based on the nature of the deposition; however, Mr. Roach is a party to the action.

Here, Defendants seek reimbursement for costs of Plaintiff Melissa Roach's records under the category of "fees for exemplification and the costs of making copies of ay materials where the copies are necessarily obtained for use in the case." Many of Defendants requests were duplicative, were sent to places where Ms. Roach never treated, or were unrelated. For example, Defendants sent requests to Ms. Roach's eye doctors and oral and facial surgeons. The reimbursement requests for duplicate requests or requests for records unrelated to Ms. Roach's breast cancer treatment or hair loss must be denied.

Even for medical records requests that are arguably related to the claims at-issue in this case, Defendants sought unrecoverable costs. Defendants seek third-party retrieval fees for many of their requests. The request for third-party retrieval fees must be denied in whole. Next, Defendants seek reimbursement for "research fees," an obviously investigative charge. This amount must also be denied. Finally, Defendants sought reimbursement for a custodial fee. Defendants have not explained this cost, but it appears to relate to the use of a third-party to retrieve records. Thus, Defendants' request for this amount must be denied.

If the Court feels inclined to award any fees related to Defendants' requests for medical records in the category of "fees for exemplification and the costs of making copies of ay materials where the copies are necessarily obtained for use in the case," then the Court should lower the amount requested by Defendants as described above.

## CONCLUSION

Given the totality of the circumstances, Plaintiff respectfully requests that this Court use its vast discretion and equitable powers to deny costs to Defendants. Alternatively, if the Court elects to exercise its discretion to award any costs, Plaintiff respectfully asks that the Court disallow any costs not described by Defendants with particularity, not recoverable under 28

U.S.C.A. § 1821, and/or reduce costs to an amount that does not pose a personal financial hardship to Mrs. Roach.

Dated: July 12, 2021                                            Respectfully submitted,

/s/ Christopher L. Coffin
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, LLP
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

/s/ Karen B. Menzies
Karen Barth Menzies (CA Bar #180234)
Andre Mura (CA Bar # 298541) (on the brief)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

**PLAINTIFFS' STEERING COMMITTEE**

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

| | |
|---|---|
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904<br>15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Genevieve Zimmerman<br>Meshbesher & Spence Ltd.<br>1616 Park Avenue South<br>Minneapolis, MN 55404<br>Phone: (612) 339-9121<br>Fax: (612) 339-9188<br>gzimmerman@meshbesher.com |

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2021 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ Christopher L. Coffin
CHRISTOPHER L. COFFIN