# EXHIBIT 1

```
                     UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA

*****************************************************************

IN RE:  TAXOTERE (DOCETAXEL)        Docket No. 16-MD-2740
PRODUCTS LIABILITY LITIGATION       Section H
                                    New Orleans, LA
Relates to:  Barbara Earnest        Thursday, September 26, 2019
             16-CV-17144

*****************************************************************

                  TRANSCRIPT OF TRIAL PROCEEDINGS
           HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                    UNITED STATES DISTRICT JUDGE
                       DAY 9, MORNING SESSION


APPEARANCES:

FOR THE PLAINTIFF:              BACHUS & SCHANKER, LLC
                                BY:  DARIN L. SCHANKER, ESQ.
                                     J. KYLE BACHUS, ESQ.
                                1899 Wynkoop St., Suite 700
                                Denver, CO 80202

                                FLEMING NOLEN & JEZ
                                BY:  RAND P. NOLEN, ESQ.
                                2800 Post Oak Blvd., Suite 4000
                                Houston, TX 77056

                                GIBBS LAW GROUP, LLP
                                BY:  KAREN B. MENZIES, ESQ.
                                6701 Center Drive West, 14th Floor
                                Los Angeles, CA 90045

                                DAVID F. MICELI, LLC
                                BY:  DAVID F. MICELI, ESQ.
                                P.O. Box 2519
                                Carrollton, GA 30112-0046

                                PENDLEY BAUDIN & COFFIN
                                BY:  CHRISTOPHER L. COFFIN, ESQ.
                                2505 Energy Centre
                                1100 Poydras St.
                                New Orleans, LA 70163
```

```
10:27:50  1   you in our opening statement.  Hair loss, weeks and weeks and weeks
10:27:54  2   before the drug that they're coming in here telling you, "Oh, this
10:27:58  3   is the cause."  How could someone say that to you?
10:28:04  4          What else did you learn during trial?  We told you this,
10:28:07  5   ladies and gentlemen, on the very first day we met.  In our opening
10:28:11  6   statement we said to you, "There are reports of permanent hair loss
10:28:20  7   with all of these drugs."  Well, look at this.  This is Adriamycin
10:28:23  8   and Cytoxan, the drugs Mrs. Earnest was taking when she lost her
10:28:27  9   hair.  These are plaintiff's experts and Dr. Carinder on this
10:28:32 10   issue.  They're all associated with reports of permanent hair loss.
10:28:38 11          And then this is Dr. Feigal.  This is from the TAX316
10:28:42 12   study.  And remember, there's the two arms; the Taxotere arm and
10:28:45 13   what's called the FAC arm, right, the non-Taxotere arm.  And, of
10:28:48 14   course, you see persistent, permanent, whatever they want to call
10:28:53 15   it, hair loss in the arm for the patients that never took Taxotere,
10:28:57 16   right?  And my partner, Jon, he said, "Dr. Feigal, well, what drug
10:29:03 17   out of the fluorouracil, Adriamycin, or Cytoxan is causing this
10:29:09 18   permanent hair loss in TAX316?"
10:29:10 19          And she said, "Well, it's the Adriamycin and the
10:29:12 20   Cytoxan."  The same two drugs Mrs. Earnest was taking when she lost
10:29:16 21   her hair.
10:29:22 22          What did Dr. Tosti tell you?  She said, "There is no way
10:29:26 23   to know which drug caused Mrs. Earnest's hair loss."  That's what
10:29:34 24   Dr. Tosti said.  Again, plaintiff's expert.  So, ladies and
10:29:38 25   gentlemen, if Dr. Tosti doesn't know, how can they ask you to
```

```
10:29:41  1   conclude that it was Taxotere as the substantial cause without
10:29:47  2   making even the beginning of an effort to rule out the Adriamycin
10:29:50  3   or the Cytoxan or the Arimidex?  It hasn't been done.
10:29:59  4              So what has plaintiff's evidence been in this case,
10:30:02  5   ladies and gentlemen?  Did they prove the things they told you that
10:30:06  6   they would two weeks ago when we were here last Monday together?
10:30:13  7   This was one of plaintiff's slides from their opening statement.
10:30:16  8   And if you look at the first thing highlighted, Mr. Schanker showed
10:30:19  9   you this slide and he stood up in court and he said to you, "Unlike
10:30:23 10   other chemotherapy drugs, Taxotere has the risk of causing
10:30:26 11   permanent hair loss."  This simply is untrue.  And we brought you
10:30:35 12   that evidence from the first day of trial and every day afterwards.
10:30:38 13              Now, why does it matter?  And maybe you were asking
10:30:42 14   yourselves that, well, why does it matter?  This goes back to the
10:30:47 15   idea of there being some highly effective, magical chemotherapy
10:30:53 16   drug that doesn't have a risk of permanent hair loss.  And now you
10:30:57 17   know, after being here for two weeks with us, it doesn't exist.
10:31:02 18   It's not reality.
10:31:06 19              Plaintiff's expert -- here it is again.  And this is not
10:31:10 20   just Adriamycin and Cytoxan.  This is also Taxol.  You heard all
10:31:14 21   about Taxol as this alternative.  Is it effective?  For sure.  As
10:31:18 22   effective as Taxotere?  That's what witnesses said.  We didn't
10:31:22 23   dispute that.  But what else did Taxol do?  It causes hair loss.
10:31:26 24   This is out of the mouths of their experts.  Every one of them.
10:31:32 25   Taxol causes hair loss.
```

|   |   |   |
|---|---|---|
| 11:06:40 | 1 | come up here and ask you for $12 million.  And I have to respond to |
| 11:06:45 | 2 | that.  I just simply have to.  How did Mr. Schanker come up with |
| 11:06:53 | 3 | that number?  Is it any different than me coming up here and |
| 11:06:56 | 4 | telling you, "Well, just give Mrs. Earnest $100,000?"  Is it any |
| 11:07:03 | 5 | different than that?  Did he just pull the number out of thin air? |
| 11:07:10 | 6 | The plaintiff has the burden in this case on all of the |
| 11:07:14 | 7 | causes of action, including damages.  Ladies and gentlemen, they |
| 11:07:18 | 8 | have to prove to you by the weight of the evidence every single |
| 11:07:22 | 9 | dollar that they ask you for.  So ask yourself, is there any |
| 11:07:28 | 10 | evidence in this case to support the number of $12 million that |
| 11:07:33 | 11 | Mr. Schanker just asked you for?  What would justify such a huge |
| 11:07:39 | 12 | number based upon the evidence you heard in this trial, ladies and |
| 11:07:42 | 13 | gentlemen?  How do you get to $1 million in a case like this, |
| 11:07:45 | 14 | ladies and gentlemen, let alone 12 million?  The number defies |
| 11:07:50 | 15 | common sense. |
| 11:07:54 | 16 | Mrs. Earnest was 60 years old when she was diagnosed with |
| 11:07:58 | 17 | Stage II invasive breast cancer.  Eight years later, today, she is |
| 11:08:04 | 18 | alive and cancer free thanks in part to Taxotere.  And maybe |
| 11:08:09 | 19 | Mr. Schanker wants to trivialize that or minimize it.  I don't |
| 11:08:14 | 20 | think you should.  I don't think Mrs. Earnest does.  It means |
| 11:08:19 | 21 | something.  She received a benefit like no other.  It's the gift of |
| 11:08:28 | 22 | life.  It's time with her husband.  They have a happy marriage. |
| 11:08:32 | 23 | You heard that.  She had two grandbabies born since she was |
| 11:08:36 | 24 | diagnosed, and you know she loves them.  We don't question that. |
| 11:08:48 | 25 | Ladies and gentlemen, should Mrs. Earnest be handed over |


```
11:06:40  1   come up here and ask you for $12 million.  And I have to respond to
11:06:45  2   that.  I just simply have to.  How did Mr. Schanker come up with
11:06:53  3   that number?  Is it any different than me coming up here and
11:06:56  4   telling you, "Well, just give Mrs. Earnest $100,000?"  Is it any
11:07:03  5   different than that?  Did he just pull the number out of thin air?
11:07:10  6           The plaintiff has the burden in this case on all of the
11:07:14  7   causes of action, including damages.  Ladies and gentlemen, they
11:07:18  8   have to prove to you by the weight of the evidence every single
11:07:22  9   dollar that they ask you for.  So ask yourself, is there any
11:07:28 10   evidence in this case to support the number of $12 million that
11:07:33 11   Mr. Schanker just asked you for?  What would justify such a huge
11:07:39 12   number based upon the evidence you heard in this trial, ladies and
11:07:42 13   gentlemen?  How do you get to $1 million in a case like this,
11:07:45 14   ladies and gentlemen, let alone 12 million?  The number defies
11:07:50 15   common sense.
11:07:54 16           Mrs. Earnest was 60 years old when she was diagnosed with
11:07:58 17   Stage II invasive breast cancer.  Eight years later, today, she is
11:08:04 18   alive and cancer free thanks in part to Taxotere.  And maybe
11:08:09 19   Mr. Schanker wants to trivialize that or minimize it.  I don't
11:08:14 20   think you should.  I don't think Mrs. Earnest does.  It means
11:08:19 21   something.  She received a benefit like no other.  It's the gift of
11:08:28 22   life.  It's time with her husband.  They have a happy marriage.
11:08:32 23   You heard that.  She had two grandbabies born since she was
11:08:36 24   diagnosed, and you know she loves them.  We don't question that.
11:08:48 25           Ladies and gentlemen, should Mrs. Earnest be handed over
```

```
11:08:52   1  millions of dollars where the evidence has proven that a Taxotere
11:08:59   2  regimen gave her the best chance to survive and the best chance to
11:09:02   3  prevent her cancer from coming back and the best chance -- don't
11:09:05   4  leave this part out -- to minimize potentially serious
11:09:13   5  consequences?  Hair loss isn't the only risk.  It's just the only
11:09:15   6  one they want to talk about.
11:09:20   7              Given the evidence that you've heard in this case, ladies
11:09:23   8  and gentlemen, we don't believe any money damages are appropriate.
11:09:27   9  But if you get this far, we would ask you, please, just use your
11:09:32  10  commonsense.  Use your every day life experiences in deciding how
11:09:38  11  much money would be appropriate to compensate Mrs. Earnest, and
11:09:42  12  please consider the value of the benefit that you believe Taxotere
11:09:45  13  gave her.
11:09:50  14              Now, ladies and gentlemen, I am going to go and sit down
11:09:53  15  in a moment, and plaintiff's counsel is going to get another
11:09:59  16  opportunity to come up here and talk with you.  They get the
11:10:02  17  advantage of going first and going last.  It's because they have
11:10:05  18  the burden of proof.  So that's what the law says that they get.
11:10:09  19              I don't know what Mr. Schanker is going to say, but I am
11:10:12  20  pretty sure he is going to say some things that are very critical
11:10:16  21  of Sanofi.  I ask you, please, that as you listen to what he is
11:10:20  22  saying to you, ask yourself, what does this have to do with the
11:10:24  23  decision made by Dr. Carinder that he stood by today -- stands by
11:10:31  24  today in this courtroom?
11:10:37  25              Ladies and gentlemen, we very, very much appreciate the
```

| | |
|---|---|
| 11:10:40  1 | time that you've devoted to us, to this trial, and your good |
| 11:10:48  2 | attention that you have paid throughout.  Based on the evidence you |
| 11:10:50  3 | have heard through this trial, there is only one correct verdict in |
| 11:10:54  4 | this case, and it's a verdict for Sanofi. |
| 11:10:58  5 | On behalf of my colleagues, Doug and Jon, thank you again |
| 11:11:01  6 | very, very much. |
| 11:11:04  7 | Thank you, your Honor. |
| 11:11:04  8 | THE COURT:  Thank you.  Mr. Schanker, rebuttal. |
| 11:11:12  9 | MR. SCHANKER:  Yes, your Honor.  Thank you.  May I, your |
| 11:11:39 10 | Honor? |
| 11:11:39 11 | THE COURT:  Please. |
| 11:11:39 12 | MR. SCHANKER:  Ladies and gentlemen, I just heard one |
| 11:11:42 13 | thing we agree with defense counsel, please answer yes on No. 4. |
| 11:11:48 14 | Now, in this case, here is the way I characterize what |
| 11:11:59 15 | we've seen from the defense.  Pointing fingers.  And as I listened |
| 11:12:07 16 | to the defense counsel's closing, here is the way I heard it. |
| 11:12:11 17 | First, our drug does not cause this, but if it does, then we warn |
| 11:12:19 18 | from the beginning with hair generally grows back in 1996, even |
| 11:12:23 19 | though we didn't know at that time that it caused it.  But if that |
| 11:12:27 20 | was not a good enough warning, then alopecia is a good enough |
| 11:12:32 21 | warning, even though our own company rules say that that word can't |
| 11:12:36 22 | mean "temporary" and "permanent."  But if that's not it, if that |
| 11:12:41 23 | doesn't warn, then Barbara wouldn't have made another choice if |
| 11:12:46 24 | given the choice that was taken away from her.  But if she wouldn't |
| 11:12:50 25 | have made another choice, then all of the other drugs cause this |