# EXHIBIT 37

Confidential - Under Protective Order

```
 1                UNITED STATES DISTRICT COURT
 2                EASTERN DISTRICT OF LOUISIANA
 3
     IN RE:  TAXOTERE (DOCETAXEL)    ) MDL No. 2740
 4   PRODUCTS LIABILITY LITIGATION,  ) SECTION:  "H"
                                     ) JUDGE MILAZZO
 5   This Document Relates to:       )
     ALL CASES                       )
 6   _____ ) MAG. JUDGE NORTH
                                     )
 7   ****************************************************
     ****************************************************
 8          CONFIDENTIAL UNDER PROTECTIVE ORDER
     ****************************************************
 9   ****************************************************
10        VIDEO DEPOSITION OF 30(b)(6) DEPOSITION OF
          INTOUCH SOLUTIONS, INC. BY AND THROUGH THEIR
11        DESIGNATED REPRESENTATIVE MATTHEW J. GOYER,
12
13   produced, sworn, and examined on Thursday,
     the 13th day of December, 2018, between the hours
14   of 8:00 o'clock in the forenoon and 6:00 o'clock in
     the afternoon of that day at the law offices of
15   Evans & Mullinix, P.A., 7225 Renner Road,
     Suite 200, in the City of Shawnee, County of
16   Johnson, State of Kansas, before:
17
        JANIECE Y. YOUNG, RPR, CSR-No. 1217, CCR-No. 798
18              Registered Professional Reporter
                  Certified Livenote Reporter
19
20
     a Certified Court Reporter within and for the State
21   of Missouri and a Certified Shorthand Reporter
     within and for the State of Kansas.
22
23
     Taken on behalf of Plaintiffs pursuant to
24   Amended Notice to Take Depositions.
25
```

Confidential - Under Protective Order

1  probably about three business days, maybe not full
2  business days, but when you added it up, it
3  wouldn't have been consecutive days but a couple
4  hours here, a couple hours there, so on, so forth.
5          In prepping for the deposition today,
6  hour, hour and a half.
7     Q.   And now I'll attach a copy of the notice
8  as Exhibit 1 to the deposition.
9          (Goyer Deposition Exhibit No. 1
10            was marked for identification.)
11             MR. CENTOLA:  Any objection?
12             MS. BIERI:  Are you talking about the
13  amended notice?
14             MR. CENTOLA:  The amended notice.
15  And we'll make sure that that gets in there.
16     Q.   (By Mr. Centola)  Could you tell me a
17  little bit about Intouch, kind of give me the
18  elevator pitch as to what does Intouch do.
19     A.   Intouch is a full-services marketing
20  agency that specializes in providing services to
21  the healthcare industry, specifically large
22  pharmaceutical companies.
23     Q.   What type of services do you offer at
24  Intouch?  You say it's a full -- I'm sorry, full
25  marketing agency, what type of services or what

Confidential - Under Protective Order

```
 1        Q.    "Post removed."  So what does that mean?
 2              MS. BIERI:  Foundation.
 3        A.    Being that this is a Facebook monitoring
 4   report, post removed would mean that the content
 5   under comment was removed.
 6        Q.    (By Mr. Centola)  So an Intouch employee
 7   would -- had access to the Sanofi-Aventis voices
 8   Facebook page and would remove that post?
 9        A.    That is my understanding.
10        Q.    Next words after "post removed" are "user
11   blocked."
12        A.    Uh-huh.
13        Q.    What was that user blocked from?
14        A.    Being that this is the Sanofi Voices
15   Facebook page, it is my assumption that the user
16   was blocked as a user to post to the Voices --
17   Sanofi-Aventis Voices Facebook page.
18        Q.    And the user blocked, was that a decision
19   made by Intouch using a guideline set forth by
20   Sanofi?
21        A.    It was my experience that the actions
22   taken for any social media monitoring process would
23   have been complied with based on the directions
24   that we had received, the guidance we would have
25   received from Sanofi.
```

Confidential - Under Protective Order

```
 1      Q.    So Intouch is blocking this user pursuant
 2  to the guidance received by Sanofi --
 3            MS. BIERI:  Objection to form --
 4      Q.    (By Mr. Centola) -- received from Sanofi?
 5            MS. BIERI:  Foundation and form.
 6      A.    Could you ask that again just to make
 7  sure I understand your question?
 8      Q.    (By Mr. Centola)  Sure.
 9            The user is being blocked by an Intouch
10  employee pursuant to the guidelines received by
11  Sanofi?
12            MS. BIERI:  Form and foundation.
13      A.    That would be my understanding.
14      Q.    (By Mr. Centola)  And the next clause is
15  "and reported."  Who is Intouch reporting to?
16      A.    It is my assumption that the "and
17  reported" means this document that we're referring
18  to here, and this document being provided to the
19  client.
20      Q.    If you'd go back to the Guidelines for
21  Comment Monitoring and Moderation of the SA Voices
22  Page, which is the 7th page in this document.
23      A.    Are we looking at the page that says
24  Step 1?
25      Q.    Yes, please.
```

```
 1      A.    I do not have direct evidence personally
 2   that this was a paid sponsorship of this page.
 3   What I do know is that you have the opportunity, I
 4   believe in this time frame, to do a sponsored
 5   Facebook page which would then give you the right
 6   to control access as to what was posted to your
 7   page.
 8      Q.    If you would, look at the third page of
 9   this Exhibit 4.
10      A.    Do you have a clue as to -- to make sure
11   I'm on the same page?
12      Q.    Sure.  The top left says "Brad Einarsen."
13      A.    Okay, I am there.
14      Q.    And if you look under the -- well, if you
15   look at the left-hand column, there are a series of
16   dates.
17      A.    Uh-huh.
18      Q.    If you look at, roughly, the fifth date
19   entry down on 4/7/2010, the last post on 4/7/2010.
20   And it says:  "Sue White, your drug Taxotere has
21   left me looking like this permanently.  Have you
22   heard of nondisclosure?  Of course you have."
23            Did I read that correctly?
24      A.    Yes.
25      Q.    If you'd look all the way over to the
```

Confidential - Under Protective Order

```
 1   right column it says, roughly in that same cell --
 2   not the same cell, but in the right column
 3   consistent with the Sue White entry, there's a
 4   number of words.  It says that all posts were
 5   removed.  The user was reported and permanently
 6   banned from the page.  Email was sent to
 7   med.info@sanofi-aventis.
 8             That entry is repeated three times
 9   roughly in this column; correct?
10       A.    Yes.  And from what I'm reading there
11   is one entry that says posted three times,
12   then a second that says posted four times.
13   And then what I believe you just referenced said,
14   "posted 23 times on the wall of the page.  All
15   posts removed.  User was reported and permanently
16   banned from the page.  Email was sent to
17   med.info@Sanofi-Aventis.com to report possible
18   adverse event and product mention.
19       Q.    So at least on this post that we're
20   talking about on April 7, 2010, that that post was,
21   in fact, emailed to Sanofi-Aventis by Intouch
22   employee to report possible adverse event?
23       A.    That is what this states, correct.
24       Q.    If you go down that same column with the
25   last entry on that column on that page it says,
```