## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)                                  MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                            SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Elizabeth Kahn, Case No. 2:16-cv-17039.

_____

### SANOFI'S NOTICE OF OBJECTIONS TO PLAINTIFF'S DEPOSITION
### DESIGNATION TESTIMONY OF SANOFI'S EMPLOYEES
_____

Pursuant to Case Management Order No. 14J, Defendants sanofi-aventis U.S. LLC and

Sanofi U.S. Services Inc. ("Sanofi") respectfully submit the following Notice of Objections to

certain company witness Deposition Designations ("Notice of Objections") for the convenience of

the Court and purposes of preservation of the record on appeal.

This Notice of Objections is provided in supplement to Sanofi's Full Objections to

Plaintiff's affirmative and counter deposition designations of Sanofi company witnesses, which

will be concurrently served on Plaintiff in the form of a spreadsheet by July 16, 2021.  The Parties'

affirmative designations, counter designations and objections, and responses to objections, will be

delivered to the Court on July 26, 2021.[1]

This Notice of Objections highlights overarching violations of the Federal Rules of

Evidence and this Court's previous rulings on the Parties' Motions *in Limine* in the *Earnest* case.

Sanofi believes its Notice of Objections will save the Court considerable time and energy to take

up certain testimony by exhibit, topic, or issue based on the Federal Rules of Evidence as well as

_____

[1]    Sanofi will also provide courtesy copies of the referenced exhibits to the Court.

Your Honor's Motions *in Limine* rulings and deposition rulings in the *Earnest* case.   Sanofi herein submits the following:

---

## JEAN-PHILLIPPE AUSSEL

---

### BACKGROUND

Mr. Aussel's role and duties at Sanofi was to collect and "clean" clinical trial data before it was submitted to regulatory authorities.[2] Mr. Aussel did not analyze or interpret the data.[3] Nor did Mr. Aussel provide substantive input on the meaning of such data.[4]

Except for some limited background information, all of the testimony designated by Ms. Kahn falls outside of the scope of Mr. Aussel's role and responsibility at Sanofi, and he has no foundation to provide such testimony. Mr. Aussel repeatedly testified he has no background, experience, or knowledge of the Taxotere label (or any product labeling), but nevertheless he was asked to opine and provide testimony about it throughout this deposition. Likewise, Mr. Aussel has no involvement in Sanofi's Pharmacovigilance, Regulatory, or Marketing departments, but was asked by Plaintiff's counsel to opine on all three subjects and interpret the meaning of documents he had never seen. He was also asked to provide opinions about what Sanofi knew or the intent behind certain documents, but Mr. Aussel also lacks the foundation to provide testimony and opinions on behalf of Sanofi. *See* Fed. R. Civ. P. 30(b)(6). Any testimony that Ms. Kahn designates for the jury to hear from Mr. Aussel should be limited to topics he has foundation to

---

[2]    Aussel Dep. at 13:1–16 ("As part of my responsibilities within Sanofi, my responsibility was to make sure the data collected from the clinical trials were accurate, reliable, clean and complete, and then my job was to make sure they are reported as such in the statistical analysis, in the clinical study reports. And then we have some teams within Sanofi that were in charge of interpreting the data, reporting to authorities, discussing with authorities, and discuss what is meaningful with the authorities, and more importantly for the oncologists, they are -- it's their job and their duty to assess what is meaningful as a side effect, to inform the patients, to discuss individually with the patients.").

[3]    *Id.*

[4]    *Id.*

testify about and that are within his scope at the company.   *See* Fed. R. Evid. 401–03, 602, 701–703.

## ARGUMENT

**A.     Testimony and Opinions Solicited from Mr. Aussel Lack Proper Foundation and Falls Outside of the Scope of His Personal Knowledge.**

As he repeatedly made clear, Mr. Aussel did not (and does not) have anything to do with Sanofi's Labeling, Regulatory, Pharmacovigilance, or Marketing groups.  For example:

> Q.     In your years working at Sanofi, have you ever worked in a regulatory role and negotiated a label?
> A.     No, never.[5]

> Q.     You're generally familiar with drug labels, correct?
> A.     No, I'm not.[6]

> Q.     The same terminology that would be used in a label, correct?
> A.     Well, I'm not sure it was the exact same terminology, because again, I'm not a person specialized in labeling, and I have never been involved in labeling.[7]
> .
> Q.     Is it your belief, Mr. Aussel, that when Sanofi tells doctors alopecia, that they are telling doctors about both permanent and reversible alopecia?
> A.     I don't know.  I mean, the label says alopecia.  I don't know what was agreed with the health authorities about the details to be provided regarding alopecia.  I don't know what was the -- what the specialists in labeling meant when listing this specific adverse event.  As it is, I can't really comment.[8]

> Q.     And I understand, I asked you earlier and you said you've never participated in any discussions with a health authority about a label, correct?
> A.     Correct.  Difficult for me to interpret and to make the direct relationship between the detailed tables that we provide to

---

[5]   *Id*. at 35:3–6.

[6]   *Id*. at 51:6–8.

[7]   *Id*. at 77:15–23.

[8]   *Id*. at 85:18–86:6.

investigators, to the professional oncologists, and the lay language we use to inform the patients.[9]

Q.  Would you agree that if Sanofi had knowledge that Taxotere could be associated with long-standing or permanent hair loss, it had an obligation to clearly warn patients about that risk?

A.  I can hardly comment on this kind of consideration, because it was not my responsibilities at that time within Sanofi. The people responsible for taking such decisions were people sitting in regulatory departments, labeling departments, possibly pharmacovigilance departments, they have regular discussions with health authorities, and in conjunction with health authorities they define what is in the  label, what should be brought to the patients in terms of information.  I can't really comment.[10]

Q.  Have you ever worked in pharmacovigilance?
A.  Never.[11]

Q.  Were you ever on the safety management team for Taxotere?
A.  No.  In my role at that time I was not supposed to be part of this kind of team.
Q.  At any point, have you been on the safety management team?
A.  At any point I did not -- never had any roles that justify my presence in such team.[12]

While none of the above testimony was designated by Ms. Kahn, Mr. Aussel was asked for nearly six hours to opine about the meaning and adequacy of the Taxotere label, Sanofi's intent behind Regulatory, Pharmacovigilance, and Marketing documents, and Sanofi's knowledge and motive regarding informed consents—all clearly outside of his role at the company.  Mr. Aussel has no more foundation to provide such testimony than the person working at Sanofi's front desk entrance, yet Ms. Kahn designated over 1,000 lines of his testimony.

---

[9]   *Id*. at 104:19–105:3.

[10]   *Id*. at 138:5–21.

[11]   *Id*. at 153:12–14.

[12]   *Id*. at 302:2–9.

Due to his lack of knowledge and experience, Sanofi objects and requests such testimony (and improper opinions) be excluded as they lack foundation, will be misleading, require the witness to speculate, and are outside the scope of the witness's personal knowledge.  *See* Fed. R. Evid. 401–403; *CertusView Techs., LLC v. S&N Locating Servs.*, LLC, 198 F. Supp. 3d 568, 581 (E.D. Va. 2016) (holding deposition testimony improper expert witness testimony, and finding a "lay witness may not normally construe and interpret" information that requires specialized knowledge).

Further, testimony and opinions about topics from a lay witness who lacks foundation is also inadmissible under Rule 403.  There is no probative value to Mr. Aussel blindly opining about Taxotere's Labeling, Marketing, and/or Regulatory documents.  The unfair prejudice of a lay witness providing his opinion on documents and information he has never seen before, is unfamiliar with, and has no background or expertise, is highly prejudicial and should be excluded. Fed. R. Evid. 403.

### B.   Certain Exhibits, including Testimony and Opinions, Used with Mr. Aussel Violate the Federal Rules of Evidence and Prior Rulings on Motions *in Limine*.

Ms. Kahn's designations entail multiple exhibits that violate the Federal Rules of Evidence and, pending the Court's ruling in *Kahn*, its previous rulings in *Earnest* on the Parties' Motions *in Limine*.[13]

---

[13]   Sanofi states additional objections and reasons within the designations for specific testimony (*i.e.*, argumentative, asked and answered, etc).

**Exhibit 3: Executive Summary of the Safety Management Committee**[14]

      Ms. Kahn designated Exhibit 3, which is a Pharmacovigilance document from 2015.  This document is irrelevant as it is seven years after Ms. Kahn was treated.  *See* Fed. R. Evid. 401–03; Sanofi's Motion *in Limine* 27 (Post-Dates Treatment).

      Mr. Aussel also lacks the foundation to testify about this document.  Mr. Aussel has never seen this document and it has nothing to do with his role or function at Sanofi.[15]  Likewise, Mr. Aussel was not a member of the Safety Management Committee, nor in the Pharmacovigilance department.  *See* Fed. R. Evid. 602.

      Finally, Mr. Aussel was asked to opine on the Committee's intent behind the conclusion of this document.[16]  Mr. Aussel lacks the foundation to provide testimony on behalf of the company as he was deposed in his personal capacity, this document is outside of his role, and he was not providing 30(b)(6) testimony.  *See* Fed. R. Evid. 602; 701–02.  *See also*, Sanofi's Motions *in Limine* 11 (Corporate Intent, Motives, or State of Mind).

**Exhibit 8, 10, and 12: 1996, 2005, and 2006 Taxotere Labels**[17]

      Ms. Kahn designated Exhibits 8, 10, and 12, which are the 1996, 2005, and 2006 Taxotere labels.  Mr. Aussel repeatedly testified that he is unfamiliar with drug labels and cannot interpret the meaning of the Taxotere label ("Q. You're generally familiar with drug labels, correct?   A.

---

[14]   Aussel Dep. Ex. 3.

[15]   Aussel Dep. at 16:15–16.  *See also*, *id*. at 311:16–315:9; 316:12–317:3.

[16]   *Id*. at 17:10–16.

[17]   Aussel Dep. Ex. 8; Aussel Dep. Ex. 10; Aussel Dep. Ex. 12.

No, I'm not.").[18]  Any testimony regarding the label is outside of Mr. Aussel's personal knowledge and scope at the company.  *See* Fed. R. Evid. 602; 701–02.

Mr. Aussel was also asked to opine on Sanofi's intent and motive regarding the Taxotere labels.[19]  For example, Mr. Aussel was asked questions such as, "Q.  So Sanofi, then, had no way to know if the hair loss was permanent, correct?" and "Q.  Then when using the term 'hair generally grows back,' is Sanofi warning about permanent hair loss in 1996?"[20]  Mr. Aussel lacks the foundation to provide testimony on behalf of the company.  *See* Fed. R. Evid. 602, 701–02; Sanofi's Motions *in Limine* 11 (Corporate Intent, Motives, or State of Mind).

**Exhibits 9: Prostate and Trump Informed Consent**[21]

Ms. Kahn designated the exhibit and testimony based on Exhibit 9, a fake Informed Consent for a Prostate Clinical Trial where Donald Trump is the principal investigator.  Mr. Aussel testified he is unfamiliar with this document.[22]  He also specifically testified that he is not responsible for this document, or any informed consent, at Sanofi.[23]  This testimony regarding the informed consent is outside of Mr. Aussel's personal knowledge and his scope at the company. *See* Fed. R. Evid. 602; 701–02.

This exhibit is irrelevant to Ms. Kahn's case.  *See* Fed. R. Evid. 401.  Exhibit 9 is an Informed Consent for prostate cancer, which is not Ms. Kahn's cancer indication.  It also includes

---

[18]  Aussel Dep. at 51:6–8.

[19]  *See id*. at 54:2–7; 55:12–56:6; 60:24–61:8; 61:22–62:9; 64:1–65:8; 68:4–11; 74:23–75:9; 76:23–77:6; 80:21–81:3; 81:13–18; 97:23–98:17; 102:24–103:10.

[20]  *Id*. at 55:12–13; 56:1–3.

[21]  Aussel Dep. Ex. 9.

[22]  Aussel Dep. at 319:22–320:1.

[23]  *Id*. at 319:22–320:1.  *See also*, *id*. at 319:6–321:15; 324:22–326:11.

Donald Trump as the principal investigator, which has nothing to do with this case.  And Ms. Kahn did not establish either document was ever used by Sanofi.  *See* Fed. R. Evid. 401–03.

Ms. Kahn also designated testimony where Mr. Aussel was asked to opine on Sanofi's intent behind this exhibit.[24]  For example, "Q. So this informed consent is telling patients that reversible hair loss has been reported following use of Taxotere, correct?"[25]  Mr. Aussel lacks foundation to provide such testimony on behalf of Sanofi.  *See* Fed. R. Evid. 602; 701–02; Sanofi's Motions *in Limine* 11 (Corporate Intent, Motives, or State of Mind).

### Exhibit 14: Sanofi Letter to FDA and Study Protocol[26]

Ms. Kahn designated testimony on Exhibit 14, a letter to FDA regarding a study protocol. Mr. Aussel has never seen this document before and never provides input into clinical study protocols.[27]  *See* Fed. R. Evid. 602.  Any testimony regarding study protocols is outside of Mr. Aussel's personal knowledge and scope at the company.  *See* Fed. R. Evid. 602; 701–02.

Plaintiff's counsel designated testimony where Mr. Aussel was asked to provide testimony on behalf of Sanofi, including its intent and motive regarding information in the Study Protocol.[28] Mr. Aussel lacks the foundation to provide testimony on behalf of the company as he was not designated as a 30(b)(6) and this is outside of his scope.  *See* Fed. R. Evid. 602; 701–02; Sanofi's Motions *in Limine* 11 (Corporate Intent, Motives, or State of Mind).

---

[24]  *See id*. at 71:22–72:1; 72:6–1.

[25]  *Id*. at 71:22–72:1.

[26]  Aussel Dep. Ex. 14.

[27]  Aussel Dep. at 109:7–9.

[28]  *See id*. at 120:5–121:22; 122:11–123:7; 123:18–21; 125:9–22; 153:5–9.

**Exhibit 15: Nurse Tear Sheet[29]**

Ms. Kahn designated testimony and Exhibit 15, which is an oncology nurse tear-sheet.  Mr. Aussel has never seen this document before, and certainly had no role in drafting or providing input into Exhibit 15.[30]  *See* Fed. R. Evid. 602.  Any testimony is outside of Mr. Aussel's personal knowledge and scope at the company.  *See* Fed. R. Evid. 602, 701–02.

It is also irrelevant to Ms. Kahn's case because she never received this document.  *See* Fed. R. Evid. 401.  As more fully described in Sanofi's Motion *in Limine* 17, Ms. Kahn was part of a clinical trial where she received an informed consent specific to her cancer treatment and did not receive this document.  *See* Sanofi's Motions *in Limine* 17 (Promotional Materials Not Used with Kahn).

Mr. Aussel was, again, asked to opine on Sanofi's intent and motive regarding information in the Nurse Tear-Sheet: "Q. So in this definition of alopecia that Sanofi chose to use, Sanofi is telling patients that their alopecia is temporary, correct?"[31]  Mr. Aussel lacks the foundation to provide such testimony on behalf of the company.  *See* Fed. R. Evid. 602, 701–02; Sanofi's Motions *in Limine* 11 (Corporate Intent, Motives, or State of Mind).

**Exhibit 26: Marketing Email[32]**

Ms. Kahn designated Exhibits 26 and 28, which both have to do with marketing.  Mr. Aussel did not draft either document, is unfamiliar with them, and was never involved in Sanofi's

---

[29]   Aussel Dep. Ex. 15.

[30]   Aussel Dep. at 126:18–21.

[31]   *See id*. at 131:4–8.

[32]   Aussel Dep. Ex. 26; Aussel Dep. Ex. 28.

Marketing department.[33]   For example, on Exhibit 26, he is one of over 250 recipients.[34]   Mr. Aussel explained, "I cannot comment on that. I mean, this is typically a medical marketing statement. I don't know on which it is based.  I have not worked on this principle.  Again, my job was to conduct clinical trials and get all the data from the clinical trials.  I have nothing to do with this kind of ambition, or I'm not able to measure the success."[35]   As Mr. Aussel was repeatedly asked questions about these documents, he reiterated, "I was not part of oversee of those who wrote that, and I was not attending these meetings about the strategic product information, so I don't know what they are meaning by this statement."[36]   Any testimony is outside of Mr. Aussel's personal knowledge and scope at the company.  *See* Fed. R. Evid. 602; 701–02.

These documents are also irrelevant because Ms. Kahn is not bringing claims regarding Sanofi's marketing of Taxotere. Any testimony would result in a "mini-trial" about Sanofi's marketing practices.  *See Marine Power Holding, L.L.C. v. Malibu Boats, LLC*, No. 14-cv-00912, 2016 U.S. Dist. LEXIS 98722, at *2 (E.D. La. July 27, 2016).  This type of information would only serve to result in punitive damages, which is improper under Louisiana law regarding Ms. Kahn's claims.  *See* Fed. R. Evid. 401–02; Sanofi's Motion *in Limine* 34 (Punitive Damages).  Any probative value of such testimony is outweighed by the unfair prejudice. *See* Fed. R. Evid. 403.

Finally, Mr. Aussel was asked to provide testimony regarding Sanofi's intent and motive of another Sanofi employee's email regarding marketing of Taxotere and Sanofi's marketing

---

[33]   Aussel Dep. at 246:5–9; 250:22–25; 257:4–13; 257:4–13.

[34]   *See* Aussel Dep. Ex. 26 at 1.

[35]   Aussel Dep. at 257:4–13.

[36]   *Id*. at 260:1–5.

practices.[37]   For example: "Q. Do you know why Sanofi would want to sell patient benefit rather than the data that came from the clinical trials?"[38]  Mr. Aussel lacks the foundation to provide such testimony on behalf of Sanofi.  *See* Fed. R. Evid. 602, 701–02; Sanofi's Motions *in Limine* 11 (Corporate Intent, Motives, or State of Mind).

**Exhibit 29: 2006 SABCS Email[39]**

Ms. Kahn designated testimony regarding an email from 2006 discussing the San Antonio Breast Cancer Symposium.  Mr. Aussel stated he is unfamiliar with this document and certainly did not know what it was discussing.[40]  Any testimony is outside of Mr. Aussel's personal knowledge and scope at the company.  *See* Fed. R. Evid. 602, 701–02.

Based upon this document, Mr. Aussel was asked to testify and opine about "rapid and significant" growth sales for Taxotere.[41]  Aside from Mr. Aussel having no foundation to provide such testimony, this testimony is irrelevant.  Fed. R. Evid. 401.  It has no probative value and is only designated to inflame the passions of the juror.  *Id*. at 403.  This evidence is further irrelevant to Ms. Kahn's failure to warn claims because it is intended to serve only as evidence of Sanofi's efforts to market, promote, and profit from Taxotere with the goal of coloring Sanofi as a "bad company" that puts profits over safety.  *See* Sanofi's Motion *in Limine* 34 (Punitive Damages).

---

[37]   *See id*. at 131:4–8; 121:14–15; 123:18–21; 125:9–22; 153:5–9; 257:1–13; 258:19–259:17; 259:21–260:11; 261:15-21: 263:10–264:6; 266:7–267:4; 268:22-269:14.

[38]   *Id*. at 259:21–260:5.

[39]   Aussel Dep. Ex. 29.

[40]   Aussel Dep. at 270:23–25; 273:12–15.

[41]   *Id*. at 274:2–5.

Mr. Aussel was also asked to opine on Sanofi's intent and motive of the email (which he did not author).[42]  Mr. Aussel lacks the foundation to provide such testimony on behalf of the company.  *See* Fed. R. Evid. 602, 701–02; Sanofi's Motions *in Limine* 11 (Corporate Intent, Motives, or State of Mind).

For each of these reasons, testimony relating to these documents should be precluded.  *See* Fed. R. Evid. 602, 701–02.

### C.    Testimony and Opinions on behalf of Sanofi are Improper.

As highlighted above, Mr. Aussel was asked throughout his deposition to opine on behalf of Sanofi, including the knowledge Sanofi possessed at certain times and Sanofi's intent, motive, or meaning behind documents and statements.[43]  Mr. Aussel lacks the foundation to provide such testimony on behalf of Sanofi.  Ms. Kahn's deposition designations should be limited to his personal knowledge and experience while working on Taxotere.  Fed. R. Evid. 601 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").  *See also* Fed. R. Evid. 401–02, 602, 701–703.

---

[42]   *See id.* at 257:1–13; 258:19–259:17; 259:21–260:11; 261:15-21: 263:10–264:6; 266:7–267:4; 268:22-269:14.

[43]   *See id.* at 54:2–7; 55:12–56:6; 60:24–61:8; 61:22–62:9; 64:1–65:8; 68:4–11; 71:22–72:1; 72:6–14; 74:23–75:9; 76:23–77:6; 80:21–81:3; 81:13–18; 97:23–98:17; 102:24–103:10; 120:5–121:22; 122:11–123:7; 123:18–21; 125:9–22; 153:5–9; 131:4–8; 121:14–15; 123:18–21; 125:9–22; 153:5–9; 131:4–8; 121:14–15; 123:18–21; 125:9–22; 153:5–9; 257:1–13; 258:19–259:17; 259:21–260:11; 261:15–21: 263:10–264:6; 266:7–267:4; 268:22–269:14; 257:1–13; 258:19–259:17; 259:21–260:11; 261:15–21: 263:10–264:6; 266:7–267:4; 268:22–269:14; 333:11–334:17.

**D.      Ms. Kahn Designated Testimony that this Court Previously Sustained Sanofi's Objections.**

Ms. Kahn designated testimony to which Sanofi previously objected and that the Court sustained such objections.[44]   For the same reasons the Court previously sustained Sanofi's objections in *Earnest*, this testimony should not be permitted in the *Kahn* trial.

---

[44]    *See id*. at 76:23–77:6.

## LESLIE FIERRO

### BACKGROUND

Leslie Fierro served as the Associate Vice President for Medical Information Services ("MIS") at Sanofi from 2000 to 2014.[45]  Broadly, the MIS group at Sanofi during this time was responsible for overseeing a call center that handled unsolicited questions from consumers and/or healthcare professionals about Sanofi products.[46]  Ms. Fierro led this group and oversaw the call center during her time at Sanofi.  Importantly, Ms. Fierro was not responsible for conducting any causation analyses, managing Sanofi's marketing strategy, or responding to comments on Sanofi's social media platforms—all topics which Plaintiff has designated Ms. Fierro to testify about at trial.[47]  Indeed, the majority of Ms. Kahn's designated testimony lacks foundation and falls outside of the scope of Ms. Fierro's duties at Sanofi and is therefore misleading, improper, and if presented to the jury, prejudicial to Sanofi.  For these reasons, her testimony at trial, if any, should be limited to topics she has foundation to testify about and that are within the scope of her employment at the company.  *See* Fed. R. Evid. 401–03, 602, 701–703.

---

[45]   Fierro Dep. at 376:6–23.

[46]   *Id.* at 15:1–17.

[47]   *See id.* 385:1–10 (Ms. Fierro was not in charge of product labeling); 385:12–120 (Ms. Fierro was not in charge of regulatory interactions with FDA); 385:21–386:1 (Ms. Fierro did not develop or oversee any clinical trials at Sanofi); 386:15–19 (Ms. Fierro does not know if Sanofi ever collected data from its clinical trials on long-term alopecia); 407:13–16 (Ms. Fierro has never assessed the medical literature to determine whether a causal association exhibits between Taxotere and permanent alopecia).

## ARGUMENT

### A.   Ms. Fierro Cannot Provide Causation Testimony.

Ms. Fierro is not a causation expert, and she never had responsibility for making causation determinations in her role as head of MIS at Sanofi, whether regarding the risk of permanent hair loss with Taxotere or any other chemotherapy drug.  As such, Ms. Fierro is not positioned to offer any reliable and methodologically sound opinions on this topic.[48]

Despite these important limitations, Ms. Kahn nonetheless designated the following testimony from Ms. Fierro's deposition:

> Q.   Let me ask – let me ask you this: As a pharmacist, do you understand ***today*** that Taxotere can cause permanent hair loss?
> A.   Correct, yes.[49]

This designation is improper and prejudicial for two reasons.  First, it constitutes an inadmissible non-expert causation opinion.  *See* Fed. R. Evid. 701; *see also* Sanofi's Motion *in Limine* 18 (Non-Expert Causation Testimony).   Indeed, Ms. Fierro has not been identified or qualified as an expert.[50]   Ms. Kahn has argued on multiple occasions that Sanofi should be prevented from asserting that other drugs cause alopecia.  The Court has correctly found, however, that Plaintiff bears the burden of demonstrating causation on the basis of reliable expert testimony and Sanofi may point to reasonable hypotheses of alternative causes that Plaintiff's experts have not excluded.  The present scenario does not fit either pathway to admissibility.  Yet, in this instance, Ms. Kahn readily accepts (and affirmatively designates) unsupported testimony from Ms. Fierro—*a non-*

---

[48]   *Id.* at 407:13–16 ("Q.  Have you ever assessed the medical literature to determine whether a causal association exhibits between Taxotere and permanent alopecia?  A.  No.").

[49]   *Id.* at 89:22–90:1.

[50]   *See id.* at 386:12–19; 406:19–407:17.

*expert*—that Taxotere causes permanent hair loss.  This is precisely why causation testimony from non-expert witnesses must be excluded—it exceeds the scope of Rule 701 and does not meet the requirements of Rule 702.  *See U.S. v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008).

In doing so, Plaintiff ignores contrary testimony offered by Ms. Fierro that: (1) she does not know whether Taxotere can cause permanent alopecia; (2) she would defer to others within Sanofi for a determination on causation as it was not within the scope of her responsibilities while employed; and (3) she has not assessed the medical literature to determine whether a causal association between Taxotere and permanent alopecia existed.[51]   Accordingly, Ms. Fierro's causation opinion is inadmissible.

Moreover, while Ms. Fierro was educated as a pharmacist, she worked in MIS for the vast majority of her career.  Ms. Fierro was not a practicing pharmacist during her time at Sanofi and she did not administer chemotherapy to cancer patients.  Thus, the premise of the designated question improperly implies that Ms. Fierro's education as a pharmacist somehow qualifies her to provide a reliable opinion on the topic.  Such testimony will serve to mislead and confuse the jury, and prejudice Sanofi.

Sanofi objects and requests that such testimony (and improper opinions) be excluded as they lack foundation, will be misleading, require the witness to speculate, and are outside the scope of the witness's personal knowledge.  *See CertusView Techs*, 198 F. Supp. 3d at 581 (holding deposition testimony improper expert witness testimony and finding a "lay witness may not normally construe and interpret" information that requires specialized knowledge).

---

[51]   *Id.*

B.   **Certain Exhibits, Including Testimony and Opinions, Designated from Ms. Fierro's Deposition Testimony Violate the Federal Rules of Evidence and Prior Rulings Motions** *in Limine*.

Ms. Kahn's designations entail multiple exhibits that violate the Federal Rules of Evidence and, pending the Court's ruling in *Kahn*, its previous rulings in *Earnest* on the Parties' Motions *in Limine*.[52]

## Exhibit 10: MIS Feedback Form[53]

Exhibit 10 is a MIS Feedback Form (survey) that seeks ratings of the service of a call center employee.  This exhibit is irrelevant to this litigation for two reasons.  First, it was completed on September 28, 2009, which post-dates Ms. Kahn's chemotherapy treatment in violation of Sanofi's Motion *in Limine* 27.  In *Earnest*, this Court granted Sanofi's Motion *in Limine* and precluded evidence of company conduct after Ms. Earnest's treatment at trial.[54]

Second, it should be precluded under Sanofi's Motion *in Limine* 5 (Adverse Events Not Related to Ms. Kahn) because it includes reference to adverse events involving another individual and has no bearing on Ms. Kahn.  The document is also replete with out of court statements offered to prove the truth of the matter asserted (*e.g.*, feedback comments about a phone conversation between a consumer and a Sanofi call center employee), and constitutes inadmissible hearsay.  *See* Fed. R. Evid. 805.

---

[52]   Sanofi states additional objections and reasons within the designations for specific testimony (*i.e.*, argumentative, asked and answered, etc).

[53]   Fierro Dep. Ex. 10.

[54]   Rec. Doc. 8201 (granting Defs.' Mot. *in Limine* 27).

**Exhibits 13 and 14: April 7, 2010 Emails Regarding SA VOICES Facebook Page**[55] [56]

Exhibits 13 and 14 are emails relating to comments left on the SA VOICES Facebook page on April 7, 2010.  As such, they should be precluded at trial because they post-date Ms. Kahn's treatment (Sanofi Motion *in Limine* 27) and relate to evidence precluded under Sanofi's Motion *in Limine* 26 (relating to Shirley Ledlie, the "Taxotears," or the SA VOICES Facebook page)—both of which were granted in *Earnest*.[57]  These exhibits also violate Sanofi's Motion *in Limine* 5 (Adverse Events) because these comments detail adverse events for consumers other than Ms. Kahn.  There is no evidence Ms. Kahn left either of these comments, or that they were left on her behalf.  As such, these exhibits also constitute inadmissible hearsay and are irrelevant to this litigation.  *See* Fed. R. Evid. 401–403, 805.  Because these exhibits have no relevance to Ms. Kahn, admitting them (or testimony relating to these exhibits) at trial would be misleading and unduly prejudicial.  *See* Fed. R. Evid. 403.

For each of these reasons, testimony relating to these documents should be precluded.  *See* Fed. R. Evid. 602, 701–02.

---

[55]   Fierro Dep. Ex. 13; Fierro Dep. Ex. 14.

[56]   Ms. Kahn also designates similar testimony relating to Exhibit 17 (a Facebook Comment Monitoring Report). Ms. Kahn, however, does not affirmatively designate Exhibit 17 for admission at trial.  For the reasons laid out in this section, Sanofi objects to the admission of Exhibit 17 (or any testimony relating to Exhibit 17) at trial.

[57]   Rec. Doc. 8201 (granting Defs.' Mots. *in Limine* 26 and 27).

### C.    Ms. Kahn Designated Testimony that this Court Previously Sustained Sanofi's Objections.

Ms. Kahn designated testimony to which Sanofi previously objected and that the Court sustained such objections.[58]   For the same reasons the Court previously sustained Sanofi's objections in *Earnest*, this testimony should not be permitted in the *Kahn* trial.

---

[58]   *See* Fierro Dep. at 136:12–137:1; 137:12–19; 138:9–140:3; 142:2–143:11; 161:4–13; 161:23–163:6; 164:20–165:3; 169:2–25; 170:20–171:16; 174:23–176:14; 177:6–11; 179:13–185:8.

---

## MATT GOYER

---

## BACKGROUND

Matt Goyer is a non-party witness in this litigation.  At the time of his deposition, Mr. Goyer was employed as the Vice President of Internal Compliance at InTouch Solutions Group ("InTouch"), a marketing company employed by Sanofi for various projects over the span of many years.[59]  Importantly, with the exception of general background information, all of the testimony designated by Plaintiff's counsel pertains to Facebook interactions occurring *after* Ms. Kahn's chemotherapy treatment, which this Court excluded in *Earnest* as irrelevant and unduly prejudicial.[60]  The Court should exclude Ms. Kahn's designations here because they again lack relevance, constitute hearsay, and are unduly prejudicial.[61]

Additionally, this Court should also exclude Mr. Goyer's designated testimony because Ms. Kahn failed to establish a proper foundation regarding InTouch's social media work for Sanofi.[62]  Although presented as a 30(b)(6) witness for InTouch, Mr. Goyer testified: (1) that he did not review any documents in preparation for his deposition;[63]  (2) that he never worked on any Sanofi-related social media projects;[64] and (3) that he did not talk with anyone who had personal

---

[59]   Goyer Dep. at 7:24–8:2; 17:16–22.

[60]   Rec. Doc. 8201 at 6.

[61]   This issue is briefed more fully in Sanofi's Motions *in Limine* 26 (precluding evidence or argument relating to Shirley Ledlie, any "Taxotears" or the SA VOICES Facebook page) and 27 (precluding evidence or argument regarding company conduct that post-dates Ms. Kahn's chemotherapy treatment).  Rec. Doc. 12911-3 at 101-108.

[62]   *See* Goyer Dep. at 58:1–60:18; 126:23–128:13.

[63]   *Id.* at 15:12–20.

[64]   *Id.* at 48:1–7.

knowledge of events allegedly relevant to this litigation.[65]  In fact, Mr. Goyer agreed that he was not capable of intelligibly testifying on the designated deposition topics and documents.[66] Accordingly, Mr. Goyer's testimony should be excluded in its entirety.   *See* Fed. R. Evid. 401–03, 602.

## **ARGUMENT**

A.    **Designated Exhibits, Including Testimony and Opinions, from Mr. Goyer's Deposition Violate the Federal Rules of Evidence and Prior Rulings Motions *in Limine*.**

Ms. Kahn's designations entail multiple exhibits that violate the Federal Rules of Evidence and, pending the Court's ruling in *Kahn*, its previous rulings in *Earnest* on the Parties' Motions *in Limine*.[67]

### **Exhibit 4: Sanofi VOICES Facebook Page Comment Monitoring Report[68]**

The balance of Ms. Kahn's designated testimony centers around Exhibit 4, a Comment Monitoring Report for the Sanofi VOICES Facebook page from 2010–11.  This document compiles communications with—and Facebook posts by—third-parties (*i.e.* Shirley Ledlie, her aliases, and possibly others) other than Ms. Kahn.  This document and all testimony regarding this document is irrelevant because it post-dates Ms. Kahn's 2008 treatment in violation of Sanofi's

---

[65]    *Id.* at 16:5–15; 58:24–60:18.

[66]    *Id.* at 58:3–23 (emphasis added) ("[W]hat would you need to do in order to prepare yourself for testifying about this Sanofi Aventis Voices Facebook Page Comment Monitoring Report? . . . A. I'm not sure how to answer that question.  Being that I did not have direct context or working relationship on this project as to when it took place in the March 2010 time frame *I don't know that I would be the best to testify what was going on because I wouldn't have the context to what trainings were given, what guidance was given by the medical regulatory committee, anything about the comments coming in.*  I'm going to have to assume these are on a Facebook page because it says Facebook, but I wouldn't be able to verifiably speak to that for a fact.  *I don't know what I'd have to do to prepare for testimony because I just do not have context as to what was done on this project.*").

[67]    Sanofi states additional objections and reasons within the designations for specific testimony (*i.e.*, argumentative, asked and answered, etc).

[68]    Goyer Dep. Ex. 4.

Motion *in Limine* 27.  Thus, this document and testimony related to this document should be excluded from trial.  *See* Fed. R. Evid. 401–402.

The document also contains double hearsay comments from Shirley Ledlie and possibly others on Facebook, that if admitted, would be unduly prejudicial to Sanofi.  *See* Fed. R. Evid. 403, 802.  As the Court previously noted in *Earnest*, these statements are "clearly 403" and "very, very prejudicial."[69]  Any probative value they provide is substantially outweighed by the prejudice to Sanofi.  Because this Exhibit pertains to Sanofi's social media accounts (*e.g.*, SA VOICES Facebook page), it should be excluded as violating Sanofi's Motion *in Limine* 26 (relating to Shirley Ledlie, the "Taxotears," and Sanofi's VOICES Facebook page).

**Exhibit 3: QuickBooks Report from January 1999 through November 2017[70]**

Exhibit 3 is a QuickBooks Find Report detailing invoices to Sanofi for work on various Sanofi products including Jevtana, Dupixent, Seprafilm, Multaq, Synvisc, Lantus, Lovenox, Taxotere, and others between January 1999 and November 2017.[71]  This exhibit and testimony relating to the exhibit is irrelevant because it post-dates Ms. Kahn's treatment and contains financial information from nearly a ten-year period after Ms. Kahn's treatment.[72]  This exhibit and testimony regarding this exhibit is also irrelevant to this litigation because (1) it includes references to a multitude of Sanofi products; (2) it spans nearly twenty years of work conducted by InTouch; and (3) it has no bearing on Ms. Kahn's claims.  *See* Fed. R. Evid. 401–402.

---

[69]   Sept. 5, 2019 Hr'g Tr. at 112:2–113:14.

[70]   Goyer Dep. Ex. 3.

[71]   *Id.*

[72]   Sanofi's argument on this issue is briefed more fully in Sanofi's Motion *in Limine* 27 (Post Dates Treatment).  Rec. Doc. 112911–3 at 105.

Additionally, this document constitutes inadmissible hearsay,[73] *see* Fed. R. Evid. 801–02, which if admitted would unduly prejudice Sanofi.  *See* Fed. R. Evid. 403.  Ms. Kahn elicited testimony from Mr. Goyer that Sanofi paid InTouch $119 million dollars over the course of an 18-year period for general marketing services on a myriad of Sanofi products.[74]  This invoice is not limited to work on Taxotere, let alone the use of Taxotere for patients with breast cancer.  Such evidence serves no legitimate purpose in this case and lacks probative value, especially when punitive damages are unavailable in Louisiana.  As outlined in Sanofi's Motion *in Limine* 9 Concerning Sanofi's Corporate Finances, any probative value is outweighed by its inevitable tendency to inflame or prejudice the jury against Sanofi—*i.e.*, painting Sanofi as a bad corporate actor improperly motivated by profit.

Because this document is not limited to Taxotere (let alone the use of Taxotere for patients with breast cancer) and Ms. Kahn has failed to establish a proper foundation for Mr. Goyer's testimony. Mr. Goyer's testimony is irrelevant to this litigation and would mislead the jury, cause confusion, and unduly prejudice Sanofi. *See* Fed. R. Evid. 401–403.

For each of these reasons, testimony relating to these documents should be precluded.  *See* Fed. R. Evid. 602, 701–02.

---

[73]   Mr. Goyer lacked foundation to establish this as a business record.  When questioned about this document, Mr. Goyer testified that this document was created in response to his 30(b)(6) Subpoena, and that he did not know what other types of information would be included in this report because he does not have any "financial responsibilities" at InTouch.  *See* Goyer Dep. at 34:11.

[74]   *See id*. at 37:4–25.

---

## ANDRIS ORTMANIS

---

### BACKGROUND

Andris Ortmanis was the director of Global Marketing for Taxotere.[75]  His responsibilities included global and affiliate-based U.S. marketing positions.  Ms. Kahn's designations of his testimony center on Sanofi's sales and profits from Taxotere.  Ms. Kahn also repeatedly designated testimony regarding employee compensation, including bonuses.  Mr. Ortmanis's deposition was not designated the *Earnest* trial, so there are no previous rulings regarding the admissibility of his testimony.

### ARGUMENT

**A.     Mr. Ortmanis's Testimony is Irrelevant, Unduly Prejudicial, and Cumulative.**

The vast majority of Mr. Ortmanis's testimony Ms. Kahn designated pertains to the sales, marketing, and profits of Taxotere as well as employee compensation.[76]  For example:

> Q.     And for how many years do you think it was a blockbuster drug?
> A.     I think that it was a blockbuster -- once it achieved -- once it crossed that threshold, I don't think that it -- until it lost exclusivity or patent protection and went generic in, you know, 2010, I think.[77]
>
> Q.     You remember that Taxotere was not a blockbuster drug when you joined the company?
> A.     Yes, yes.  Taxotere was not a blockbuster drug by the definition of a billion dollar revenue threshold in the United States.[78]

---

[75]   Ortmanis Dep. at 16:4–17.

[76]   *See id*. at 22:24–25:14; 30:2–15; 31:7–32:6; 42:3–9; 43:7–20; 64:3–17; 66:5–21; 71:5–73:6; 78:13–21; 141:10–15; 146:12–147:3; 152:19–154:6; 317:5–23; 330:19–332:4; 333:5–18; 335:22–337:2; 338:15–339:5; 387:15–338:2; 401:20–402:1.

[77]   *Id*. at 31:23–32:6.

[78]   *Id*. at 42:3–9.

Q.     How much were your bonuses?

A.     Well, if I made full bonus, it could have been about 25 percent, I believe, 25 percent of my base pay.

Q.     And what was your base pay?

A.     My goodness. What was it? It would have been somewhere around 210 or something like that. I don't know. Something like that.[79]

Q.     Do you remember that the market share was decreasing for Taxotere in 2006?

A.     Well, what I read here was that in 2006 the metastatic share was pulling back a little bit.[80]

Q.     Next sentence says, Revenue goals for 2008 are to achieve blockbuster status of $1 billion plus. Do you see that?

A.     I do.[81]

Testimony and exhibits surrounding the profits or revenues from Taxotere—or that it is a "blockbuster" drug—is irrelevant to Ms. Kahn's failure-to-warn claim. Rather, it is intended to color Sanofi as a "bad company" that puts profits over safety—evidence relevant only for purposes of supporting a claim of punitive damages, which is disallowed under Louisiana law pursuant to Ms. Kahn's claims. For this reason, it should be precluded under Sanofi's Motion *in Limine* 34 (Punitive Damages Evidence) and Motion *in Limine* 7 (Employee Compensation) and Motion *in Limine* 9 (Corporate Finances or Employment Decisions).

Ms. Kahn may attempt to use inflammatory statements about Taxotere profits and revenue to induce a favorable verdict based on widely publicized and hot-button topics about the pharmaceutical industry, rather than the merits of Ms. Kahn's claims. Using evidence or argument intended to inflame the prejudices of the jury in this manner would be improper, particularly where doing so will direct the jury's attentions away from the facts of the case and toward unrelated,

---

[79]   *Id.* at 66:9–17.

[80]   *Id.* at 78:13–18.

[81]   *Id.* at 333:5–9.

collateral matters.  *See* Fed. R. Evid. 403; *Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1334–35 (9th Cir. 1985) (explaining that evidence is properly excluded where "it does nothing but generally show [a party] in a bad light.").

Finally, to the extent any of this testimony is relevant (it is not), designating approximately 30 minutes of the same or similar testimony is needlessly cumulative.[82]   *See* Fed. R. Evid. 403.

      **B.**    **Certain Exhibits, including Testimony and Opinions, Used with Mr. Ortmanis Violate the Federal Rules of Evidence and Prior Rulings on Motions *in Limine*.**

Ms. Kahn's designations entail multiple exhibits that violate the Federal Rules of Evidence and, pending the Court's ruling in *Kahn*, its previously rulings in *Earnest* on the Parties' Motions *in Limine*.[83]

### Exhibits 5, 6, and 27: Marketing Document[84]

Ms. Kahn designated Exhibits 5, 6, and 27 (all marketing documents) that are irrelevant because the claims at issue in the case have nothing to do with Sanofi's efforts to market Taxotere generally.  Indeed, there is no evidence that Sanofi's marketing efforts influenced Dr. Kardinal's prescribing decisions in this case.[85]  Any testimony on these issues would result in a "mini-trial" about Sanofi's marketing practices and risk confusing the jury and distracting from the merits of Ms. Kahn's claims.  *See Marine Power Holding, L.L.C.*, No. 14-cv-00912, 2016 U.S. Dist. LEXIS 98722, at *2.  This type of evidence speaks only to punitive damages, which is improper under

---

[82]   *See* Ortmanis Dep. at 22:24–25:14; 30:2–15; 31:7–32:6; 42:3–9; 43:7–20; 64:3–17; 66:5–21; 71:5–73:6; 78:13–21; 141:10–15; 146:12–147:3; 152:19–154:6; 317:5–23; 330:19–332:4; 333:5–18; 335:22–337:2; 338:15–339:5; 387:15–338:2; 401:20–402:1.

[83]   Sanofi states additional objections and reasons within the designations for specific testimony (*i.e.*, argumentative, asked and answered, etc).

[84]   Ortmanis Dep. Ex. 5; Ortmanis Dep. Ex. 6; Ortmanis Dep. Ex. 27.

[85]   *See* Kardinal Dep. at 118:3–8, 214:8–215:1.

Louisiana law pursuant to Ms. Kahn's claims.  *See* Fed. R. Evid. 401–02; Sanofi's Motion *in Limine* 34 (Punitive Damages).  Any probative value of such testimony is outweighed by the unfair prejudice.  *See* Fed. R. Evid. 403.

In addition, Exhibit 5 is a not a U.S. marketing document.[86]  Marketing documents that were intended and used for outside of the U.S. are irrelevant to Ms. Kahn's claims.  *See* Fed. R. Evid. 401.

Exhibit 27 is also irrelevant because it post-dates Ms. Kahn's prescription of Taxotere.  *See* Fed. R. Evid. 401–03; Sanofi's Motion *in Limine* 27 (Post-Dates Treatment).  This document is a "strategic plan" document for the marketing of Taxotere for 2009 through 2013.  Mr. Ortmanis testified he is unfamiliar with this document and lacks the foundation to testify to it.[87]  Any testimony is outside of Mr. Ortmanis's personal knowledge and scope at the company.  *See* Fed. R. Evid. 602; 701–02.

**Exhibit 11: Life Brands PowerPoint[88]**

Ms. Kahn designated Exhibit 11, which is a PowerPoint created by a third party agency called Life Brands.  This document constitutes inadmissible hearsay as it not a Sanofi document.  *See* Fed. R. Evid. 801–02.  Likewise, Exhibit 11 is irrelevant because it is a non-Sanofi document and there is no evidence it was used in the marketing and promotion of Taxotere generally, much less with Dr. Kardinal or Ms. Kahn.  *See* Fed. R. Evid. 401.  Further, the document lacks foundation with Mr. Ortmanis, as he was not the author.[89]

---

[86]   Ortmanis Dep. at 57:1–23.

[87]   *Id*. at 330:19–331:15.

[88]   Ortmanis Dep. Ex. 11.

[89]   Ortmanis Dep. at 144:23–145:4.

For each of these reasons, testimony relating to these documents should be precluded.  *See* Fed. R. Evid. 602, 701–02.

---

## LINDA GUSTAVSON

---

## BACKGROUND

Linda Gustavson was hired by Sanofi in 2004 to serve as an Associate Director of Global Regulatory Affairs.[90]   In 2007, Ms. Gustavson was promoted to serve as the Head of U.S. Oncology.[91]   She held this position until she left the company in 2010.[92]   Despite lengthy deposition testimony, Ms. Kahn cherry-picked very small sections of Ms. Gustavson's testimony for trial and chose only to designate testimony relating to exhibits that were wholly unrelated to Ms. Gustavson's responsibilities at Sanofi and omitted hundreds of pages of testimony that fell squarely within the scope of her knowledge and employment because they deal almost exclusively with FDA.   In so doing, Ms. Kahn has created a false impression about Ms. Gustavson's knowledge and expertise.   Permitting Ms. Kahn's designations would be misleading and unduly prejudicial.

## ARGUMENT

**A.      Certain Exhibits, Including Testimony and Opinions, Designated from Ms. Gustavson's Deposition Testimony Violate the Federal Rules of Evidence and Prior Rulings Motions *in Limine*.**

Ms. Kahn's designations entail multiple exhibits that violate the Federal Rules of Evidence and, pending the Court's ruling in *Kahn*, its previous rulings in *Earnest* on the Parties' Motions *in Limine*.[93]

---

[90]    Gustavson Dep. at 15:17–16:6.

[91]    *Id.* at 17:18–18:1.

[92]    *Id.*

[93]    Sanofi states additional objections and reasons within the designations for specific testimony (*i.e.*, argumentative, asked and answered, etc).

**Exhibit 22: Nurse Tear Sheet**[94]

Exhibit 22 is an oncology nurse tear sheet.  This document is wholly irrelevant to this litigation, and Ms. Gustavson lacks any foundation to offer testimony about its content or use. Moreover, within the context of her deposition, Ms. Gustavson testified that she had not seen the document before. [95]  Indeed, Ms. Gustavson testified that she would not have had a reason to know about this document as it exceeded the scope of her responsibilities within the Global Regulatory Affairs department.[96]  *See* Fed. R. Evid. 602.  Ms. Kahn failed to establish any meaningful foundation for the use of this document with Ms. Gustavson.  As such, admitting Exhibit 22 (or testimony relating to this exhibit) at trial would be misleading and unduly prejudicial.  *See* Fed. R. Evid. 401–403, 602, 701–02.

Exhibit 22 should also be excluded because it is a promotional material that was not seen or used by Ms. Kahn or her prescribing oncologist, Dr. Kardinal.[97]  Although Sanofi acknowledges that this exhibit was admitted in the *Earnest* trial, Sanofi contends that this document should be excluded here.  Indeed, unlike in the *Earnest* trial, Ms. Kahn and her prescribing oncologist, Dr. Kardinal, both testified that they did not see or rely on any promotional materials from Sanofi— including, the referenced oncology nurse tear sheet.[98]  Thus, because this tear sheet was never

---

[94]   Gustavson Dep. Ex. 22.

[95]   *See* Gustavson Dep. at 334:9–12; 335:9–336:1.

[96]   *Id.*

[97]   Sanofi's argument on this issue is more fully briefed in Sanofi's Motion *in Limine* 17 (Promotional Materials Not Used For Kahn).  Rec. Doc. 12611–3 at 62.

[98]   *See* Dec. 7, 2017 Kahn Dep. 65:9–14, 83:22–84:3 (testifying that she never saw "written or visual" advertisements or promotional materials related to docetaxel or Taxotere); *see also* Jan. 17, 2018 Kardinal Dep. 118:3–8 (testifying that he "didn't' rely on any representation from a Sanofi sales representative in [his] decision to prescribe Taxotere to Elizabeth Kahn[.]"); 214:8–215:1 (testifying that he did not provide patients with information "from drug companies[.]").

provided to Ms. Kahn during the course of her cancer treatment, using this exhibit at trial is improper and unduly prejudicial.  *See* Fed. R. Evid. 403.

**Exhibit 23: Portion of 1997 NDA For Taxotere[99]**

Exhibit 23 is a 75-page excerpt from the 1997 Taxotere New Drug Application ("NDA"). Ms. Kahn attempts to use this document to establish through Ms. Gustavson that Sanofi did not intend "hair generally grows back" to warn of the risk of persistent alopecia.[100]  Ms. Gustavson, however, began working at Sanofi in 2004 and has no firsthand knowledge of the intent of the NDA drafters.[101]  *See* Fed. R. Evid. 602.  Because this exhibit is outside the scope of Ms. Gustavson's employment at Sanofi and no foundation was established, admitting it (or testimony relating to this exhibit) at trial would be misleading, confusing, and unduly prejudicial. *See* Fed. R. Evid. 403, 602.

Moreover, Ms. Kahn has fought vigorously against the admission of evidence regarding Sanofi's interactions with FDA.  Should Ms. Kahn be permitted to introduce testimony relating to Sanofi's interactions with FDA, Sanofi should also be permitted to introduce testimony from Ms. Gustavson about her expertise with FDA labeling and the fact that, in 2004, FDA struck Sanofi's proposed inclusion of TAX316 ongoing alopecia data.

---

[99]   Gustavson Dep. Ex. 23.

[100]   *See* Gustavson Dep. at 359:23–360:5; 361:24–363:2.

[101]   *Id.* at 433:13–434:4.

**Exhibit 24: May 5, 2004 Email from Michael Rozycki to FDA, with Attachments[102]**

Exhibit 24 is an email with an attached slide deck that was sent by Sanofi employee Michael Rozycki to FDA ahead of a May 10, 2004 Taxotere sNDA meeting. Ms. Kahn, however, has not laid a proper foundation for this document. Although Ms. Gustavson understood what this document was at her deposition, Ms. Gustavson testified that she did not recognize this specific document. Additionally, Ms. Gustavson is not listed in the sponsor participant list,[103] and thus, events that occurred during this presentation with FDA are outside the scope of her knowledge and employment.

Because this exhibit exceeds the scope of Ms. Gustavson's knowledge (and no foundation has been established), the information contained in this exhibit is irrelevant to this litigation. *See* Fed. R. Evid. 401, 403. Indeed, the fact that Ms. Kahn omits hundreds of pages of testimony on topics within the scope of Ms. Gustavson's knowledge, and designates only the exhibits that Ms. Gustavson was unfamiliar with, confirms that Plaintiff's counsel is attempting to create the impression that Sanofi failed to take reasonable care to provide an adequate warning by ignoring all that it did with the FDA on Taxotere's benefit-risk profile, including on reports of ongoing or permanent alopecia cherry-pick testimony from irrelevant exhibits that support their FDA narrative. For these reasons, permitting this exhibit would cause undue prejudice to Sanofi.

**Exhibit 25: June 23, 2004 Email from Michael Rozycki to FDA, with Attachments[104]**

Exhibit 25 is a June 23, 2004, email from Michael Rozycki to Ann Staten at FDA. This email includes an attachment detailing recently approved labeling for Taxotere and proposed

---

[102]   Gustavson Dep. Ex. 24.

[103]   *Id.* at 4.

[104]   Gustavson Dep. Ex. 25.

labeling text for the adjuvant breast cancer sNDA.  Sanofi does not object to this exhibit.  Sanofi does, however, object to any testimony solicited in response to this exhibit about events occurring after the date of Ms. Kahn's chemotherapy treatment.[105],[106]  Such testimony is irrelevant to Ms. Kahn's claims and should not be permitted at trial.

**Exhibit 26: May 5, 2010 Health Authority Contact Report to FDA, with Attachments[107]**

Exhibit 26 is a 2010 Health Authority Contact Report, which includes various emails and Taxotere label redlines from FDA.  Because this Report post-dates Ms. Kahn's chemotherapy treatment, it is wholly irrelevant to this litigation.[108]

Ms. Gustavson was neither the sender nor the recipient of any email included in Exhibit 26.  The redlined version of the Taxotere label included in this exhibit (beginning at Sanofi_05075521) was revised by FDA, not by Sanofi.  Ms. Kahn failed to lay a proper foundation for Ms. Gustavson to testify as to the contents of this Health Authority Report.  As such, this exhibit exceeds the scope of Ms. Gustavson's knowledge and employment, and she lacks foundation to offer testimony on this issue.

Because this exhibit exceeds the scope of Ms. Gustavson's knowledge (and no foundation has been established), Ms. Gustavson's testimony on this exhibit is irrelevant to this litigation.  In contrast, Plaintiff omits hundreds of pages of testimony on topics within the scope of Ms. Gustavson's knowledge, which creates a false impression of Sanofi's exercise of reasonable care

---

[105]   *See, e.g.*, Gustavson Dep. at 383:10–383:25.

[106]   Sanofi's argument on this matter is more fully briefed in Sanofi's Motion *in Limine* 27.

[107]   Gustavson Dep. Ex. 26.

[108]   Sanofi's argument on this issue is more fully briefed in Sanofi's Motion *in Limine* 27 (Post-Dates Treatment).

to provide an adequate warning.  For these reasons, permitting testimony on and this exhibit would cause undue prejudice to Sanofi.

For each of these reasons, testimony relating to these documents should be precluded.  *See* Fed. R. Evid. 602, 701–02.

**B.      Ms. Kahn Designated Testimony that this Court Previously Sustained Sanofi's Objections.**

Ms. Kahn designated testimony to which Sanofi previously objected and that the Court sustained such objections.[109]   For the same reasons the Court previously sustained Sanofi's objections in *Earnest*, this testimony should not be permitted in the *Kahn* trial.

---

[109]   Gustavson Dep. at 445:20–446:11.

---

# FRAN POLIZZANO

---

## BACKGROUND

Fran Polizzano was the Associate Director of Regulatory Affairs for health products.[110] While Dr. Polizzano's role and responsibilities included the Taxotere label, she held this position from 2013 to 2016.  Ms. Kahn's designations focus on activities post-treatment or topics on which Dr. Polizzano has no foundation to testify.  Likewise, Ms. Kahn designated over 120 lines of testimony that this Court previously excluded in *Earnest*.[111]

## ARGUMENT

### A.   Certain Exhibits, including Testimony and Opinions, Used with Dr. Polizzano Violate the Federal Rules of Evidence and Prior Rulings on Motions *in Limine*.

Ms. Kahn's designations entail multiple exhibits that violate the Federal Rules of Evidence and, pending the Court's ruling in *Kahn*, its previously rulings in *Earnest* on the Parties' Motions *in Limine*.[112]

**Exhibit 5: 2015 Label Working Group Email[113]**

Ms. Kahn designated Exhibit 5, which is a 2015 Label Working Group email.  The Court previously sustained Sanofi's objections and kept this document and testimony out.

---

[110]   Polizzano Dep. at 12:16–23.

[111]   *See Id.* at 30:23–31:2; 133:1–134:21; 137:18–138:14; 187:14–19; 189:1–8; 406:7–17; 412:20–413:4; 414:3–12; 422:19–23; Polizzano Dep. Ex. 5.

[112]   Sanofi states additional objections and reasons within the designations for specific testimony (*i.e.*, argumentative, asked and answered, etc).

[113]   Polizzano Dep. Ex. 5.

Exhibit 15 is irrelevant to Ms. Kahn's case because it from 2015 and post-dates her treatment.  *See* Fed. R. Evid. 401; Sanofi's Motion *in Limine* 27 (Post-Dates Treatment).  It is also an improper use of a subsequent remedial measure.  *See* Fed. R. Evid. 407.

**Exhibit 23: Nurse Tear Sheet[114]**

Ms. Kahn designated Exhibit 23, and related testimony, which is about an oncology nurse tear sheet.  Dr. Polizzano testified it was very difficult for her to comment or testify about this document because she has never seen it before.[115]   *See* Fed. R. Evid. 602.   Dr. Polizzano lacks the foundation to provide testimony regarding this document, and any testimony is outside of her personal knowledge and scope at the company.  *See* Fed. R. Evid. 602; 701–02.

It is also irrelevant because Ms. Kahn never received this document.  *See* Fed. R. Evid. 401.  As more fully described in Sanofi's Motion *in Limine* 17, Ms. Kahn was part of a clinical trial where she received an informed consent specific to the trial and did not receive this document. *See* Sanofi's Motions *in Limine* 17 (Promotional Materials Not Used with Kahn).

For each of these reasons, testimony relating to these documents should be precluded.  *See* Fed. R. Evid. 602, 701–02.

> **B.    Ms. Kahn Designated Testimony that this Court Previously Sustained Sanofi's Objections.**

Ms. Kahn designated over 120 lines of testimony to which Sanofi previously objected and that the Court sustained such objections.[116]   For example, the Court sustained objections to Plaintiff's counsel questions:

---

[114]   Polizzano Dep. Ex. 23.

[115]   Polizzano Dep. at 421:7–9 ("It's very difficult for me to comment on this document.  I've never seen this document.").

[116]   *See id.* at 30:23–31:2; 133:1–134:21; 137:18–138:14; 187:14–19; 189:1–8; 406:7–17; 412:20–413:4; 414:3–12; 422:19–23; Polizzano Dep. Ex. 5.

Q.      Tell me when it would be appropriate for a manufacturer to provide false or misleading information in its label?

A.      It would not be.[117]

Q.      If the manufacturers of Taxotere have information about the duration of alopecia with the users of the drug, and the manufacturer chooses not to share that information with the providers, that's wrong, isn't it?

A.      I can't answer this question the way that you've formed it.[118]

Q.      You don't disagree with me that Sanofi itself understands that for breast cancer patients, that the prospect of forever hair loss is devastating.  Do you disagree that Sanofi knows that?

A.      I can't respond to that.[119]

For the same reasons the Court previously sustained Sanofi's objections in *Earnest*, this testimony

should not be permitted in the *Kahn* trial.

Further, Ms. Kahn also designated new testimony that was <u>not</u> designated in *Earnest* but

is subject to the same objections as this Court has previously sustained.  For example:

Q.      In terms of the duration of alopecia.  Do you think that the women who are provided Taxotere have a right to know what the estimated duration of hair loss will be if the company has information about that aspect of the adverse event?

A.      That question, you would have to ask to safety or somebody that has more familiarity with the product and these events that you're referring to.[120]

Q.      You're aware of -- being in the pharmaceutical world, you're aware of the many avenues available to Sanofi to promote the use of its products, are you not?

A.      In what regard?

Q.      TV, radio, magazines, sales representatives, MIS, leaflets, pamphlets?

A.      I --

---

[117] *Id.* at 30:23–31:2.

[118] *Id.* at 406:7–17.

[119] *Id.* at 412:20–413:4.

[120] *Id.* at 403:19–404:8.

Q.    I'm sorry.  I'm not done. Convention booths, appearances, dinners, presentations.  You've heard of, in the pharmaceutical world that you live in and you've been employed in for the last 17 years, you certainly are aware of the various ways that a drug company can promote the use of its product.  Would you agree?

A.    I'm sorry.  You made the list.  But what is the final question again?

Q.    You, based upon your experience working for the pharmaceutical industry for the last 17 years, are aware of the different ways that a pharmaceutical company has available to it to promote the use of its products, correct?  That's it.

A.    There are many avenues, I suppose.[121]

Q.    And you also can't respond to whether you know from your 17 years working for Sanofi, that if they wanted to promote the fact and get out information regarding permanent hair loss and their product Taxotere, or docetaxel, that they could accomplish it?

A.    I mean, they have to assess. There is a lot of safety information for Taxotere that needs to be conveyed to the public, so...[122]

For the same reasons as the Court sustained Sanofi's objections in *Earnest*, this argumentative testimony too should be excluded.

---

[121]  *Id.* at 407:10–408:20.

[122]  *Id.* at 413:6–414:2.

---

## AMY FREEDMAN

---

## BACKGROUND

Dr. Amy Freedman was a global safety officer for Taxotere from 2003 to 2010.[123]   Dr. Freedman is a physician whose responsibilities included oversight of the safety profile for assigned products.[124]   After 2010, Dr. Freedman was no longer responsible for Taxotere.   Ms. Kahn designated testimony from Dr. Freedman to improperly introduce individual adverse event reports, emails that have nothing to do with alopecia, and to elicit causation testimony from a witness with no foundation.

## ARGUMENT

A. **Certain Exhibits, including Testimony and Opinions, Used with Dr. Freedman Violate the Federal Rules of Evidence and Prior Rulings on Motions *in Limine*.**

Ms. Kahn's designations entail multiple exhibits that violate the Federal Rules of Evidence and, pending the Court's ruling in *Kahn*, its previously rulings in *Earnest* on the Parties' Motions *in Limine*.[125]

**Exhibit 2: Danish physician email[126]**

The Court should exclude Exhibit 2 pursuant to arguments made in Sanofi's Motion *in Limine* 5 relating to adverse events involving other patients.  Exhibit 2 is an email chain between Amy Freedman, Steven Neibart, Emanuel Palatinsky, Marina Velez, and Dr. Kopreski reading an

---

[123]   Freedman Dep. at 13:19–14:9.

[124]   *Id.* at 11:5–10.

[125]   Sanofi states additional objections and reasons within the designations for specific testimony (*i.e.*, argumentative, asked and answered, etc).

[126]   Freedman Dep. Ex. 2.

inquiry from a Danish physician.  This entire email chain tracks a conversation relating to an alleged adverse event experienced by a patient in Denmark.  Permitting information about adverse events experienced by other patients at trial serves no legitimate purpose and will only confuse and prejudice the jury.  *See* Fed. R. Evid. 403; *see also Jones v. Ford Motor Co.*, 204 F. App'x 280, 285 (4th Cir. 2006).

**Exhibits 8, 10, and 11: Label Working Group Emails[127]**

Ms. Kahn designated Exhibits 8, 10, and 11 and the surrounding testimony regarding standard form language that requests the participants do not respond to emails but wait until meetings to discuss.[128]  This testimony is irrelevant and will create a tangential mini-trial.  *See Marine Power Holding, L.L.C.*, No. 14-cv-00912, 2016 U.S. Dist. LEXIS 98722, at *2.  This testimony is also misleading to the jury, a waste of time, confusing, and substantially more prejudicial than probative.  *See* Fed. R. Evid. 401; 403.

These exhibits are also needlessly cumulative.  Ms. Kahn designates three exhibits for the same purpose—to highlight the standard (and irrelevant) language that asks the group not to respond in writing.  *See* Fed. R. Evid. 403.

For each of these reasons, testimony relating to these documents should be precluded.  *See* Fed. R. Evid. 602, 701–02.

### B.    Dr. Freedman Cannot Provide Causation Testimony.

Ms. Kahn asked Dr. Freedman to opine if, and when, <u>Sanofi knew</u> Taxotere could cause permanent alopecia.[129]  Dr. Freedman was not designated to provide testimony on behalf of Sanofi

---

[127]   Freedman Dep. Ex. 8; Freedman Dep. Ex. 10; Freedman Dep. Ex. 11.

[128]   Freedman Dep. at 159:20–162:16; 174:7–18; 177:14–19.

[129]   *Id*. at 195:20–96:2.

and lacks of the foundation to provide such testimony.  Her testimony at trial should be limited to her personal knowledge and experience while working on Taxotere.  *See* Fed. R. Evid. 601 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

Ms. Kahn also did not establish any foundation that Dr. Freedman was qualified to provide such testimony, or what this opinion was based upon.  *See* Fed. R. Evid. 701.  This improper non-expert causation testimony.  *See* Sanofi's Motion *in Limine* 18 (Non-Expert Causation Testimony).  Causation testimony from non-expert witnesses must be excluded because it exceeds the scope of Rule 701 and does not meet the requirements of Rule 702.  *See Yanez Sosa*, 513 F.3d at 200.

Moreover, allowing Dr. Freedman to give non-expert causation testimony is inconsistent with this Court's previous rulings in *Earnest*.  For example, in that case, plaintiff objected to Dr. Kopreski's testimony regarding the role of Adriamycin and cyclophosphamide with persistent hair loss (*e.g.*, "[T]hat would suggest that a large component of persistent alopecia seen in TAC is a contribution from the AC component and not only Taxotere.  I think that is further strengthened by the recognition that persistent alopecia is also seen in the FAC arm, as well as the recognition that alopecia, including complete alopecia, is seen with doxorubicin as well as with cyclophosphamide.").[130]  The Court sustained plaintiff's objection that such testimony was non-expert causation testimony.   Dr. Freedman's testimony should be excluded for the same reason.

---

[130]   Kopreski Dep. (9.6.2018) at 763:16–764:20.

**C.      Ms. Kahn Designated Testimony that this Court Previously Sustained Sanofi's Objections.**

Finally, Ms. Kahn designated testimony to which Sanofi previously objected and that the Court sustained such objections.[131]  For the same reasons the Court previously sustained Sanofi's objections in *Earnest*, this testimony should not be permitted in the *Kahn* trial.

---

[131]   Freedman Dep. at 82:16–24.

## EMANUEL PALATINSKY

## BACKGROUND

Dr. Emanuel Palatinsky was a global safety officer for Taxotere from 2006 to 2013.[132]  Dr. Palatinsky had no role related to Taxotere after 2013.[133]  Plaintiff did not play Dr. Palatinsky's deposition in the *Earnest* trial, so there are no previously rulings regarding his transcript.

## ARGUMENT

### A.    Ms. Kahn's Designations of Dr. Palatinsky Post-Date Plaintiff's Treatment.

The vast majority of Ms. Kahn's designations of Dr. Palatinsky's testimony post-dates Ms. Kahn's treatment.[134]  As set out more fully in Sanofi's Motion *in Limine* 27 (Post-Dates Treatment), this testimony is inadmissible subsequent remedial measures, irrelevant, and unduly prejudicial.  *See* Fed. R. Evid. 407, 401, 403.

### B.    Certain Exhibits, including Testimony and Opinions, Used with Dr. Palatinsky Violate the Federal Rules of Evidence and Prior Rulings on Motions *in Limine*.

Ms. Kahn's designations entail multiple exhibits that violate the Federal Rules of Evidence and, pending the Court's ruling in *Kahn*, its previously rulings in *Earnest* on the parties' Motions *in Limine*.[135]

---

[132]   Palatinsky Dep. at 11:21–24.

[133]   *Id.* at 13:13–16.

[134]   *See id.* at 48:4–15; 51:16–52:8; 175:3–21; 176:12–17; 176:25–177:3; 223:3–8; 310:3–19; 312:1–14; 312:17–313:14; 314:3–20; 324:21–325:5; 325:20–326:8; 326:19–4; 327:10–18; 328:20–329:2; 332:1–333:23; 334:5–21; 335:24–336:23; 338:1–14; 339:19–340:10; 341:2–12; 400:2–9; 400:20–401:23; 404:1–6; 404:19–405:6; 406:2–19; 407:21–408:19; Palatinsky Dep. Ex. 1; 2; 5; 16; 17; 18; 23; and 24.

[135]   Sanofi states additional objections and reasons within the designations for specific testimony (*i.e.*, argumentative, asked and answered, etc).

**Exhibits 1 and 2: Safety PowerPoints[136]**

Ms. Kahn designated Exhibits 1 and 2, which are PowerPoints on safety and pharmacovigilance from 2011 and 2013.  These documents are irrelevant as they were created three to five years after Ms. Kahn was treated with Taxotere—and Ms. Kahn laid no foundation that they were used before she was treated.  As such, the exhibits and surrounding testimony should be excluded because they post-date Ms. Kahn's treatment.  *See* Fed. R. Evid. 401–03; Sanofi's Motion *in Limine* 27 (Post-Dates Treatment).

**Exhibit 5: 2009 to 2010 Periodic Safety Update Report 27[137]**

Ms. Kahn designated Exhibit 3—the Periodic Safety Update Report from 2009 to 2010.  This document is irrelevant because it was created after Ms. Kahn was treated with Taxotere.  As such, the exhibit and surrounding testimony should be excluded.  *See* Fed. R. Evid. 401–03; Sanofi's Motion *in Limine* 27 (Post-Dates Treatment).

**Exhibit 9: Danish Physician Email[138]**

Ms. Kahn designated testimony regarding an email inquiry from a Danish physician in 2006.  Dr. Palatinsky does not have the foundation to testify about this document.  Dr. Palatinsky was out on extended medical leave for approximately one year when Sanofi received this document.[139]  Any testimony is outside of Dr. Palatinsky's personal knowledge and scope at the company due to his medical leave.  *See* Fed. R. Evid. 602; 701–02.  This exhibit is also cumulative, as it has been designated in other depositions (*e.g.*, Amy Freedman, Michael Kopreski).

---

[136]   Palatinsky Dep. Ex. 1; Palatinsky Dep. Ex. 2.

[137]   Palatinsky Dep. Ex. 5.

[138]   Palatinsky Dep. Ex. 9.

[139]   Palatinsky Dep. at 513:23–514:3.

Further, the Court should exclude Exhibit 9 pursuant to arguments made in Sanofi's Motion *in Limine* 5 relating to adverse events involving other patients. Exhibit 9 is an email chain that tracks a conversation relating to an adverse event experienced by a patient in Denmark. Permitting information about adverse events experienced by other patients at trial serves no legitimate purpose and will only confuse and prejudice the jury. *See* Fed. R. Evid. 403*; see also Jones*, 204 F. App'x at 285.

**Exhibits 16, 17, 18, and 23: 2011 Clinical Overview**[140]

Ms. Kahn designated testimony from Exhibits 16, 17, 18, and 23—all of which involve the 2011 Clinical Overview regarding persisting alopecia based upon a request from the French Health Authorities. These documents are irrelevant as they were created after Ms. Kahn was treated with Taxotere. As such, the exhibits and surrounding testimony should be excluded. *See* Fed. R. Evid. 401–03; Sanofi's Motion *in Limine* 27 (Post-Dates Treatment). These documents and testimony should also be excluded because they deal with a foreign health authority request and response. *See* Sanofi's Motion *in Limine* 24 (Foreign Labeling and Regulatory).

**Exhibit 24: 2015 Safety Management PowerPoint**[141]

Ms. Kahn designated testimony from Exhibit 24, which is the 2015 Safety Management Committee's PowerPoint regarding the 2015 label change. Exhibit 24 is irrelevant because it was created after Ms. Kahn was treated with Taxotere. As such, the exhibit and surrounding testimony should be excluded. *See* Fed. R. Evid. 401–03; Sanofi's Motion *in Limine* 27 (Post-Dates Treatment).

---

[140] Palatinsky Dep. Ex. 16; Palatinsky Dep. Ex. 17; Palatinsky Dep. Ex. 18; Palatinsky Dep. Ex. 23.

[141] Palatinsky Dep. Ex. 24.

Dr. Palatinsky was also asked to opine on the Committee's intent behind their conclusion.[142]  Dr. Palatinsky lacks the foundation to provide such testimony, and testimony about Exhibit 24 in general.[143]  *See* Fed. R. Evid. 602; 701–02; Sanofi's Motion *in Limine* 11 (Corporate Intent, Motives, and State of Mind).  Dr. Palatinsky stopped working on Taxotere in 2013.  He has never seen this document, did not assist in drafting it, nor did he provide input on it in any way.  Any testimony regarding Exhibit 24 is outside Dr. Palatinsky's personal knowledge and scope.  *See* Fed. R. Evid. 602; 701–02.

For each of these reasons, testimony relating to these documents should be precluded.  *See* Fed. R. Evid. 602, 701–02.

---

[142]   Palatinsky Dep. at 408:2–19.

[143]   *Id.*

---

## MICHAEL KOPRESKI (PERSONAL DEPOSITION)

---

## BACKGROUND

First, Ms. Kahn's designations incorporate testimony on a number of topics subject to Sanofi's Motions *in Limine*.  Most noteworthy, Ms. Kahn designated documents and testimony on foreign labeling and draft foreign labeling[144] that should be excluded pursuant to Sanofi's Motion *in Limine* 24 (Foreign Labeling and Regulatory).  Ms. Kahn also designated testimony on a number of adverse events that should be excluded pursuant to Sanofi's Motion *in Limine* 5 (Adverse Event Reports Not Related to Ms. Kahn).

Second, Ms. Kahn should not be permitted to designate testimony and elicit opinions on topics outside the scope of Dr. Kopreski's company role.[145]  *See* Fed. R. Evid. 602.  Dr. Kopreski is the former Associate Vice President of Global Pharmacovigilance and Epidemiology at Sanofi.[146]  Throughout this litigation, Dr. Kopreski has been deposed in his personal capacity and as a 30(b)(6) company witness.  Here, Ms. Kahn only designated testimony from Dr. Kopreski's personal deposition.  The Court should therefore exclude elicited opinion testimony about what "Sanofi" may or may not have done on a given topic or hypothetical. *See* Fed. R. Evid. 401–03, 602, 701–703.

Third, Ms. Kahn seeks admission of exhibits and corresponding testimony that lack foundation, call for speculation, and are irrelevant and unduly prejudicial.

---

[144]   Kopreski Dep. Ex. 11; *see also* Kopreski Dep. (04.04.2009) 218:8–241:14.

[145]   For example, during his deposition, Ms. Kahn asks Dr. Kopreski about issues relating to labeling regulations. Because Dr. Kopreski did not work in Sanofi's Regulatory department, testimony about this topic exceeds the scope of his employment.  *Id.* at 43:6–18.

[146]   *Id.* at 17:3–14.

## ARGUMENT

### A.   Ms. Kahn's Exhibits and Designations Subject to Sanofi Motions *in Limine*.

### Exhibit 11: April 25, 2006 Calendar Invitation for European Labeling, with Attachments[147]

Exhibit 11, and all related testimony, is irrelevant and unduly prejudicial because it centers on European labeling.[148]   *See* Fed. R. Evid. 401, 403.   More specifically, Exhibit 11 is a meeting invitation to discuss revisions to Sanofi's European Taxotere label.   As outlined in Sanofi's Motion *in Limine* 24 (Foreign Labeling and Regulatory Bodies), page one of Exhibit 11 explains that EMEA—the European health authority—specifically requested that Sanofi submit the label revisions at issue in this exhibit.   Ex. 11, at 1 ("[T]his meeting has been scheduled to discuss the requested changes from EMEA.").[149]   Exhibit 11 also includes a copy of the current European patient leaflet as well as proposed European patient leaflets.[150]

In *Earnest*, this Court held that evidence regarding foreign labeling is improper.[151]   While the Court ruled submissions to foreign bodies (*e.g.*, a submission characterizing TAX316 clinical trial data) were permissible, implicit in the Court's ruling was the understanding that plaintiffs could not put on evidence related to the "submission of foreign labeling" or "draft foreign labeling" in response to a foreign agency request.   Absent this understanding, the exception would swallow the rule leading to irrelevant, prejudicial, and confusing testimony regarding diverse labeling standards across the globe.   Thus, consistent with Judge Fallon's ruling in *Xarelto*, Exhibit 11 and

---

[147]   Kopreski Dep. Ex. 11.

[148]   Sanofi's argument on this issue is more fully briefed in Sanofi's Motion *in Limine* 24 (Foreign Labeling and Regulatory Bodies).

[149]   Kopreski Dep. Ex. 11, at 1; *see also* Rec. Doc 12911-3 at 91.

[150]   Ex. 11 at 4–33.

[151]   Rec. Doc. 8201 at 5.

Dr. Kopreski's testimony regarding it should be excluded. *See, e.g.*, *In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 2017 WL 2780760,  at *6 ("What is not admissible, however, is what the Defendants did or what they put on Xarelto's label in other countries in order to comply with foreign regulatory bodies or agencies. This information is irrelevant.").

**Exhibits 5: *Nabholtz* Adverse Event Reports[152]**

Exhibit 5 is a series of adverse event reports from 1999 that constitute hearsay within hearsay, and should be excluded for the reasons stated in Sanofi's Motion *in Limine* 5 (Adverse Event Reports).  *See* Fed. R. Evid. 802, 805.  Indeed, in *Earnest*, this Court held that "[i]ndividual adverse event reports are inadmissible."[153]

Although the Court left open the possibility that case reports could be admitted if they provided context, the Court did not permit such reports to be published to the jury or admitted into evidence by Ms. Kahn for the purposes of demonstrating purported "notice" to Sanofi.  Despite this ruling, Ms. Kahn seeks admission of Exhibit 5 and will likely argue that these 1999 adverse event reports constitute "notice."  These reports, however, are not even relevant to notice.  As this Court noted in its June 1, 2020 Order and Reasons,[154] Ms. Kahn's experts do not allege that Sanofi should have updated its labeling until 2006.  Accordingly, adverse events reports from 1999 could not have served as "notice" for establishing a causal association or triggering a label change.

At best, Ms. Kahn's experts opine that cumulative case reports and the *Nabholtz* Article (among other evidence) provided "notice" in 2006, but none of Ms. Kahn's experts suggest that the content of these specific adverse event reports from 1999 was sufficient to provide notice.

---

[152]   Kopreski Dep. Ex. 5.

[153]   Rec. Doc. 8216 at 1 (Order on Mots. *in Limine*).

[154]   Rec. Doc. 10487 at 3.

Accordingly, the content of these reports do not provide context for Ms. Kahn's case theories and only serve to confuse the jury by suggesting Sanofi should have been on "notice" of causal association at an earlier date (*i.e.* 1999).  In which case, the probative value of this evidence is substantially outweighed by undue prejudice to Sanofi.  Fed. R. Evid. 403.

**Exhibit 10: March 5, 2006 Email From Amy Freedman**[155]

The Court should exclude Exhibit 10 pursuant to arguments made in Sanofi's Motion *in Limine* 5 relating to adverse events involving other patients.  Exhibit 10 is an email chain between Amy Freedman, Steven Neibart, Emanuel Palatinsky, Marina Velez, and Dr. Kopreski reading an inquiry from a Danish physician.  This entire email chain tracks a conversation relating to an adverse event experienced by a patient in Denmark.  Permitting information about adverse events experienced by other patients at trial serves no legitimate purpose and will only confuse and prejudice the jury.  *See* Fed. R. Evid. 403; *see also Jones*, 204 F. App'x at 285.

Within the context of Dr. Kopreski's personal deposition, this exhibit is improper and inadmissible because Dr. Kopreski did not send any emails in this chain and, thus, any testimony elicited from Dr. Kopreski about the intentions or motives of others is entirely speculative.  *See* Fed. R. Evid. 602.

Finally, this exhibit is cumulative, as it has been designated in other depositions (*e.g.*, Amy Freedman and Emanuel Palatinsky).

### B.     Corporate Opinion Testimony Should be Excluded.

Ms. Kahn asked Dr. Kopreski a series of improper hypothetical questions about what "Sanofi" may or may not have done.  For example, Dr. Kopreski was asked: "Likewise, if Sanofi had observed a causal association between Taxotere and irreversible hair loss, but told their clinical

---

[155]   Kopreski Dep. Ex. 10.

and trial – clinical trial enrollees that they had only observed temporary hair loss, wouldn't that equally be inappropriate?"[156] and "If they did it willfully, that would be atrocious, wouldn't it?"[157] These inquiries are improper for two reasons.

Initially, this line of questioning is an improper hypothetical posed to a lay witness as it misrepresents the evidence of this case and creates undue prejudice to Sanofi. These hypotheticals do not relate to any specific set of circumstances that occurred prior to Ms. Kahn's treatment in 2008, nor do they relate to the warning Ms. Kahn received. They also imply that Sanofi intentionally withheld safety data, which is unsupported by the evidence. Second, Dr. Kopreski was not testifying as a 30(b)(6) witness and, therefore, he had no foundation to offer opinion testimony about Sanofi's intent regarding what it may or may not have done in any given hypothetical. Accordingly, this testimony should be excluded.

### C. Exhibits, Including Testimony and Opinions, Designated from Dr. Kopreski's Deposition Testimony Violate the Federal Rules of Evidence.

**Exhibit 12: *Sedlacek* Abstract**[158]

Exhibit 12 is a version of Dr. Sedlacek's Abstract. The Abstract—which has been completely annotated by Plaintiff's counsel—is hearsay and needlessly cumulative of Ms. Kahn's Expert testimony. Moreover, because this exhibit has been marked up by Plaintiff's counsel during a deposition, all annotations also constitute improper attorney commentary and inadmissible hearsay. *See* Fed. R. Evid. 801–02. Indeed, permitting this exhibit at trial would cause confusion,

---

[156] *See* Kopreski Dep. at 127:22–128:9.

[157] *Id.* at 128:17–21.

[158] Kopreski Dep. Ex. 12.

mislead the jury, and unduly prejudice Sanofi.  *See* Fed. R. Evid. 401–403.

Additionally, Plaintiff's counsel did not establish a proper foundation for this specific exhibit (or the annotations contained throughout), which Counsel printed from the internet.  *See* Fed. R. Evid. 602.  Absent a proper foundation, Exhibit 12 should be excluded from trial.

**Exhibit 7: February 28, 2002 TAX316 Statistical Analysis Plan**[159]

Exhibit 7 is a TAX316 Statistical Analysis Plan from February 2002.  Permitting this exhibit and the testimony related to it without Sanofi's counter designations on TAX316 and ongoing alopecia would cause confusion, mislead the jury, and cause undue prejudice to Sanofi.  As designated, Ms. Kahn implies that TAX316 looked at reversibility/irreversibility of alopecia, but omits all context regarding how the company assessed "ongoing alopecia" in TAX316.  If permitted as is, Sanofi would be prejudiced because it would imply that "ongoing alopecia" in TAX316 corresponds to what Ms. Kahn characterizes as irreversible alopecia (i.e. alopecia lasting 6-months after chemotherapy).  Sanofi's affirmative and counter designations are necessary to provide complete, accurate, and clarifying testimony on how reversibility was measured in TAX316.

> **D.     Ms. Kahn Designated Testimony that this Court Previously Sustained Sanofi's Objections.**

Ms. Kahn designated testimony that Sanofi previously objected to and this Court sustained such objections.[160]  For the same reasons this Court previously sustained Sanofi's objections, this testimony should not be permitted in the *Kahn* trial.

---

[159]   Kopreski Dep. Ex. 7.

[160]   Kopreski Dep. at 211:19–212:2; 214:19–216:17.

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE  URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Jon Strongman
Harley Ratliff
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
jstrongman@shb.com
hratliff@shb.com

Hildy Sastre
**SHOOK, HARDY& BACON L.L.P.**
201 S. Biscayne Blvd., Suite 3200
Miami, Florida 33131
Telephone: 305-358-5171
Facsimile:  305-358-7470
hsastre@shb.com

**Counsel for sanofi-aventis U.S. LLC and
Sanofi U.S. Services Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2021, I electronically filed the foregoing with the Clerk of

the Court using the ECF system which sent notification of such filing to all counsel of record.

*/s/ Douglas J. Moore*