## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**In Re: TAXOTERE (DOCETAXEL)**
**PRODUCTS LIABILITY LITIGATION**

**THIS DOCUMENT RELATES TO**
*Sheila Crayton*
**Case No. 2:17-cv-05923**

**MDL NO. 2740**

**SECTION "H" (5)**

**HON. JANE TRICHE MILAZZO**

---

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TAX COSTS [REC. DOC. 12171] IN THE MATTER OF SHEILA CRAYTON VS SANOFI

---

Plaintiff Sheila Crayton, a breast cancer survivor, filed her products liability Complaint against mover-Defendants Sanofi-Aventis U.S., LLC and Sanofi US Services, Inc. ("Sanofi") in the instant MDL.  Ms. Crayton was selected by the Court as alternate trial plaintiff in Case Management Order No. 16, Record Doc. 6017.  Ms. Crayton underwent discovery, was deposed several times, as were various health care providers and family members.

Unique among potential Bellwether Pool Plaintiffs Ms. Crayton had a host of health issues that negatively impacted her ability to meet the requirements of a truly representative bellwether candidate.   Being aware of her precarious mental and physician condition since Ms. Crayton's late 2018 deposition, her counsel brought this first to the PSC and Defendants' attention, ultimately filing a Motion to Remove Crayton from the Bellwether Pool on March 22, 2019. (Record Doc. 6559)  These concerns were raised as early as January 3, 2019, in discussions with the PSC.  The PSC had at least some discussions with Defense Counsel prior to the undersigned counsel emailing Defense Counsel Douglas Moore on February 27, 2019.  That email attached a letter reiterating

counsel's belief that Ms. Crayton was not well enough to act as a Bellwether, stating in part, "Dear Doug, please see the attached letter, where we *again* express our concerns about Ms. Crayton's ability to undertake the rigors of a trial and effectively communicate with counsel. "(emphasis added)

On November 18, 2019, the Court met with Ms. Crayton.  Christine Brandt, Dawn Barrios, Palmer Lambert, and Douglas Moore also attended.  (Rec Doc Document 8701).  In its December 12, 2021 Order following that meeting, the Court stated: "(Ms. Crayton) showed significant physical limitations and appeared to lack the stamina necessary to serve as a bellwether plaintiff in a 10-day trial. Accordingly, Ms. Crayton will no longer serve as the alternate plaintiff for the second bellwether trial.  However, given that discovery has been completed, the Court will entertain dispositive motions in her case."

Ms. Crayton's case was ultimately dismissed, and Defendants filed a Motion to Tax Costs, and now seeks the sum of $42,134.86.   All but $20.00 of that sum represents is the total of thirteen (13) depositions purporting to amount to $24,041.78.  Additionally, Defendant Movers also seek to recover over $18,073.08 in medical record costs, although much of that sum reflects charges for costs that were not correct, being duplicative, nor were they necessarily incurred.  Most of the costs occurred after Plaintiff's Counsel had notified the Court and the PSC and the Defendants of Ms. Crayton's unsuitability to act as a Bellwether.

Plaintiff objects to the awarding of costs in this matter.

**Law and Argument**

**A.  *Pacheco* Factors Favor No Imposition of Costs**

In *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006), the Fifth Circuit noted "[a] wide range of reasons have been invoked to justify withholding costs from the prevailing party",

including: (1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources.

Here, the Defendant does not assert that Ms. Crayton brought her suit in bad faith.   To be sure, good intent on its own is not justification to deny the awarding of costs to a prevailing party. ''[T]he mere fact that a suit may have been brought in good faith is alone insufficient to warrant a denial of costs in favor of a prevailing defendant.'' *Cherry v. Champion*, 186 F.3d 442, 446 (4th Cir.1999).

But when some (or all) of the *Pacheco* factors cited above are present, this Court may deny or reduce costs.  The decision whether to award costs ultimately lies within the sound discretion of the district court. See *Taniguchi v. Kan Pacific Saipan, Ltd*., 566 U.S.560, (2012).

First, Sheila Crayton is not a wealthy woman. Defendants, who now seek $703.10 in costs for their multiple (5) record requests for Plaintiff's Social Security Records, are acutely aware of her Social Security Disability income, and the virtual impossibility of her ability to pay costs if assessed.   As testified to in her deposition and verified in her records, her only means of support is her meager Social Security Disability check.   Defendants now seek to recover an amount equal to years of her disability income.[1] Ms. Crayton's financial reality being so well known to Movers, it is difficult to imagine a good faith justification for seeking over forty thousand dollars from a woman of such limited financial means and frail health.  Movers have scoured her records and depositions and are aware of how her health will be negatively impacted by their pursuit of costs exceeding her yearly disability.

---

[1] As a practical matter, costs assessed against this frail woman of limited financial means would be difficult for Defendants to seize under Louisiana collection and bankruptcy law.  The mental and physical harm to her would be far more certain.   And while this factor is more health than financial means related, it should be considered,

Second, while the exact parameter of the conduct which comprises "misconduct of the prevailing party" is not well defined by the jurisprudence, those grounds exist here.   They are discussed in greater detail in issue paragraphs C and D, infra.

Third, a close and difficult legal issue was presented.   The very nature of Ms. Crayton's selection by the Court was to subject her case to an intense and thorough discovery in an effort to aid in the resolution of many difficult and often novel legal issues, the bellwether's raison d'être.

 Fourth, Ms. Crayton's suit performed a substantial benefit conferred to the public   As a bellwether, Ms. Crayton and her action provided guidance to the parties and the Court on issues relevant to every Louisiana plaintiff in the MDL.   Further, the discovery aided the parties in defining issues pertinent to the MDL.

As to the assessment of costs in this, a complex litigation setting, the Manual for Complex Litigation (Fourth Edition, 2004) provides some guidance.   This Court's general authority to allocate costs is discussed in Chapter 11, governing Pre-trial discovery procedures.   Section 11:443 states:

"Cost allocation may also be an appropriate means to limit unduly burdensome or expensive discovery. Rule 26's purpose is not to equalize the burdens on the parties, but Rule 26(b)(2)(iii) expressly requires the court to take the parties' resources into account in balancing the burden or expense of particular discovery against its benefit. Thus, where the parties' resources are grossly disproportionate, the judge can condition discovery that would be unduly burdensome on one of them upon a fair allocation of costs. "

Here, Sheila Crayton subjected herself to the burdens of bellwether discovery not experienced by over 99% of the MDL plaintiffs, while cooperating fully with the Court and its orders.  Many of the eight factors referenced above also apply to issues of cost allocation in an MDL.   Ms. Crayton's case expenses were not expended solely for the benefit of her individual

4

case by her local counsel.   Rather, Ms. Crayton was one case among a handful of bellwether cases selected to represent the issues and facts of similarly situated plaintiffs in MDL-2740, with an express purpose of utilizing those bellwether selections to and identify and resolve common questions of law and fact pertaining to the MDL.

Moreover, as an individual plaintiff in a remand cases, discovery would not have been so exhaustive and expensive as is the case of a bellwether plaintiff, who is under the microscope of a process where a single case can have ramifications costing hundreds of millions of dollars in an MDL settlement.   It is unlikely that Ms. Crayton's remand case would have had so many depositions.   Nor would a single case have had so many of those depositions videotaped, raising the cost of the litigation.   Nor would they have been as long.   While PTO-9 was implemented for the purposes of the MDL bellwether process, with many valid reasons going into the approval of the order, it cannot be said to have shortened the deposition process.    Stating "object to form" simply does not stop multiple asked and answered questions.   *The very status of Plaintiff as a bellwether increased the costs associated with discovery*, and those more expensive discovery plans and procedures were set up to benefit the entire MDL.   As such, all or most of the increased costs for bellwether and Common PSC/Common Defense purposes should not be assessed to one plaintiff.

For Sheila Crayton to personally bear the full and sole costs of discovery, when that discovery participation was designed to benefit everyone in the MDL, would be inequitable.

As the Manual for Complex litigation states in section 22:315:

"**22.315 Test Cases**

If individual trials, sometimes referred to as bellwether trials or test cases, are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases. Some judges permit the plaintiffs and

defendants to choose which cases to try initially, but this technique may skew the information that is produced. To obtain the most representative cases from the available pool, a judge should direct the parties to select test cases randomly or limit the selection to cases that the parties agree are typical of the mix of cases.

<u>Test cases should produce a sufficient number of representative verdicts and settlements to</u>

<u>enable the parties and the court to determine the nature and strength</u>

<u>of the claims, whether they can be fairly developed and litigated on a group basis,</u>

<u>and what range of values the cases may have if resolution is attempted on a</u>

<u>group basis.…"</u>

Sheila Crayton was selected to act as a bellwether to assist the Court and the Parties in the resolution of those common issues.  This Court has the inherent authority to allocate MDL bellwether case costs to common benefit or other cost sources.

Fifth, the last *Pacheco* factor, the prevailing party's enormous financial resources, is self-evident.  Sanofi will not be unduly burdened by the amount of costs expended in this matter.  This Court has the authority to prevent that heavy financial load of common issue costs falling solely on an individual bellwether plaintiff's shoulders, especially when that plaintiff is disabled, ill-equipped to endure the stress of her meager resources being attacked, and unlikely to provide any costs to a massively wealthy Defendant if awarded.

**B.  Awarding All Costs After Bellwether Unsuitability Was Disclosed Not Equitable**

Moreover, the vast majority of all submitted costs were incurred after Ms. Crayton, through her individual counsel, sought to apprise the Court and Plaintiff and Defense Liaisons with notice of her inability to serve as a bellwether.[2]

---

[2] This is in no way a criticism of the very helpful PSC Liaison Counsel – or the Court – that it took from January 2019

At some basic level, it seems inequitable when a person is selected to undertake a task despite not being able to undertake mentally or physically, and after they are required to continue that task, be subject to paying tens of thousands of dollars' worth of costs.  That scenario seems even less desirable when those massive costs are sought from a person of limited financial means, especially when the Mover now seeking those costs continually and vehemently opposed the removal of that person as a bellwether.  Or more accurately, a person selected as a Defense Pick bellwether.

Ms. Crayton respectfully requests that this Honorable Court consider the fact of her good faith efforts to spare the Mover these costs when considering the motion imposing them.

### C. Deposition Cost Submission Incorrect and Bill of Costs Should be Struck

The deposition costs as submitted are simply not recoverable, as they include alleged costs that are not correct, nor were they necessarily incurred in this action.    Regarding depositions, the costs associated with video depositions added six or seven hundred dollars to the bill.  Of greater concern, Movers want Ms. Crayton to pay for thousands of dollars for "Rough Draft" changes and "Expedited" charges. [3]  While deposition transcript expenses are generally recoverable, charges for unnecessary services, such as expedited transcription, are not recoverable in the absence of exceptional circumstances. *U.S. ex rel. Long v. GSDMIdea City, L.L.C.,* 807 F.3d 125, 132 (5th Cir. 2015) *Fogleman v. ARAMCO;*  920 F2d. 278 (5th Cir. 1991*).*  If costs are assessed, they should be limited to the customary non-video deposition.   Any added costs that were requested to help Defendants (expedited, rough drafts, etc.) should not be borne by Ms. Crayton.

until December 12, 2019, for her removal.  It is true however that the special nature of a bellwether pick acts - for good or ill - to isolate the input of her individual counsel from the Court, as the MDL and PSC missions of necessity take precedence to the concerns of local counsel.  Truly, MDL Bellwether selections cannot be casually swept aside with so much at stake, and after considerable effort and expense going into the selections.  In sum, had this been a one-off action, it is almost certain that there would not have been extensive and expensive (video depositions, etc) discovery throughout 2019, and the matter resolved much sooner, and reduced costs considerably.   The unavoidable added costs of being a bellwether should not be borne by one party in an MDL, when the status as bellwether was meant to help all.

[3] Record Doc. 12171-2

### D.  Medical Records Submission Incorrect and Bill of Costs Should be Struck

The Movers improperly seek $18,073.08 in medical record recovery.   These costs do not reflect a charge for an identifiable number of pages of medical records at a fair per-page price that meets Louisiana law.   Whatever financial deal Movers made with Veritext, it cannot be that whatever heightened amount Veritext wants to charge Movers, and that Movers agree to pay, that the improper amount becomes an amount Ms. Crayton owes to Movers.   It cannot be that when mistakes in ordering records by Movers' staff results in extra charges, that those costs are assessed to Ms. Crayton.  The submitted charges are replete with double billing, billing charges of unknown purpose, and charges having no relation to the number of pages of records received.

Defendants' affidavit in support of this claimed expense includes no explanation of the charge that would bring the claimed expense (in whole or part) within the categories of U.S.C. § 1920.   Dozens of $36.00 charges for ""Follow Up" are not explained or justified, nor do we know why a one hour fee of  $10.00 is often charged.

Mover seeks multiple charges for the same requests for dental and vision records, records not needed for the case.   After this Honorable Court relieved Crayton from her status as a bellwether selection, within a week 19 separate invoices, invoices not needed until then or already previously paid, were suddenly paid (or paid again) on December 20, 2019.  (Document 12171-1, page 7 of 7).  Other clear errors of a more egregious nature exist.

For example, Crayton Exhibit A reflects the invoices paid for and costs now sought by Movers for requesting Ms. Crayton's records from the Social Security Administration.  Movers paid $204.60 for records ordered May 22, 2018.   Movers paid $219.50 for the same records ordered July 27, 2018.   Movers paid $207.00 for the same records ordered August 14, 2018.  Movers paid $36.00 for the same records ordered March 20, 2019.  Movers paid $36.00 for the same records ordered December 2, 2019.   It was not necessary to pay over $700 for Social

Security records unrelated to hair loss.

Crayton Exhibit B reflect the collected invoices of the medial records of Dr. Carlos Rodriguez Fierro.   Dr. Fierro is a cardiologist, not an oncologist or dermatologist.  Movers ordered Dr. Carlos Rodriguez Fierro's records *seven* (7) times – resulting in a combined charge of $481.69.  Of greater import is that this record request effort is emblematic of the entire cost submission.

Movers paid $56.00 for the records ordered June 12, 2018.  Movers then ordered the same records a month later, July 18, 2018, again paying $56.00.    Movers paid $60.25 for the same records ordered September 28, 2018.  On February 25, 2019, Movers ordered the same records, and astonishingly, Movers paid the same 2/25/19 invoice with the exact same Order No. (33119.123) no less than *thre*e (3) times, paying $100.44 on March 13, 2019, $72.00 on March 26, 2019, and $56.00 on December 20, 2019.

A final example is shown by Exhibit C.   Again, this was not a vision injury case, yet this exhibit confirms that Movers ordered and paid for the same records of Ms. Crayton's vision provider, New Orleans Eye Specialists, *five* (5) times.   Order No. 33119.131 (Ordered March 20, 2019) was paid twice, once on April 19, 2019, and again on July 7, 2019.   Order No. 33119.068 (Ordered June 12, 2018) was also paid twice, once on August 16, 2018, and again on August 22, 2018.

Not only do Movers seek to recover charges from Ms. Crayton, thousands of dollars that she does not have, Movers ask her to pay thousands of dollars for rough drafts and expedited depositions, medical records that were not needed, to pay mystery expensive charges that obtained no records, and to reimburse Movers for duplicate bills they erroneously paid.

This Honorable Court should deny the Movers request for costs, as *Pacheco* justifies withholding costs from the prevailing party due to prevailing party misconduct.   It is respectfully submitted that seeking these costs from a disabled woman of limited financial resources, in a filing

filled with thousands of dollars of clearly and easily identifiable as improper costs, when submitted to the Court in a sworn declaration by Movers' counsel, justifies the denial of costs.

## **CONCLUSION**

Here, Sheila Crayton filed her case in good faith.   The non-prevailing plaintiff's personal financial status is that of a disabled citizen; the prevailing Defendant has vast financial resources. Plaintiff Sheila Crayton, by virtue of her bellwether representative discovery efforts, conferred a substantial benefit to the public and the MDL.   This Court is vested with the discretion to allocate costs fairly and equitably.   This Court's discretion is extra wide in a matter such as this by virtue of its status as an MDL Transferor Court, charged with resolving many complex issues of law and fact in an MDL context.

Given the totality of the circumstances, it is respectfully suggested that this Court:  1) deny the costs sought; and or 2) allocate the costs of the non-prevailing party Sheila Crayton as MDL Common Benefit costs at the time when those costs are paid at the conclusion of the MDL; and/or 3) disallow any costs in the Crayton matter that serve to resolve the common issues of the MDL; and/or 3) disallow any deposition costs not attributed to plaintiff's individual case; and 4) that this Court use its equitable powers and vast discretion to reduce the assessed costs to an amount that considers the *Pacheco* factors, and does not pose a personal financial hardship to Plaintiff.

Respectfully submitted,

/s Richard L. Root
Richard L. Root La# 19988
Betsy Barnes La# 19473
Morris Bart, LLC
601 Poydras Street
24th Floor
New Orleans, LA 70130
Phone: (504) 525-8000
Fax: (504) 599-3392

Email: rroot@morrisbart.com
bbarnesl@morrisbart.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2021, I electronically filed the foregoing with the Clerk of

Court using the ECF system which sent notification of such filing to all counsel of record.

/s/Richard L. Root

11