# EXHIBIT J

Michael S. Kopreski, M.D.

Page 683

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE | : MDL No. 2740 |
| (DOCETAXEL) PRODUCTS | : |
| LIABILITY LITIGATION | : SECTION: "H" |
| | : |
| This Document Relates To: | : JUDGE MILAZZO |
| ALL CASES | : |
| | : MAG. JUDGE NORTH |

- - -

Tuesday, June 4, 2019

Volume III

- - -

Videotaped deposition of MICHAEL S. KOPRESKI, M.D. taken in the Law Offices of McElroy, Deutsch, Mulvaney & Carpenter, LLP, 1300 Mt. Kemble Avenue, Morristown, New Jersey, on the above date, commencing at 2:49 p.m. before Lauren A. Buchak, Registered Merit Reporter and Certified Realtime Reporter.

GOLKOW LITIGATION SERVICES

877.370.3377 ph| 917.591.5672 fax

deps@golkow.com

Michael S. Kopreski, M.D.

Page 712

1  deposition, and to the best of my knowledge, I
2  think I gave essentially the same -- the same
3  answer to you.
4       Q.   Do you agree with me that since
5  the time that this drug was first put on the
6  market, and despite the fact that you have
7  received hundreds of reports of permanent
8  irreversible alopecia, that the company has done
9  exactly zero to study or research the
10 reversibility of alopecia?
11      A.   No.  I don't think I can agree
12 with that, with that characterization.  Of
13 course, you know, dermatologists and physicians,
14 pharmaceutical companies would, you know, think
15 it would be wonderful to have a cure for
16 alopecia.  It's been something that no one, I
17 think, disputes the value of that, but in order
18 to pursue that, I think one first has to have an
19 understanding of some of the clinical parameters.
20           And I pointed out previously that
21 Sanofi conducted two large trials looking at
22 those clinical parameters for alopecia long-term
23 that were quite extensive, and I'm speaking about
24 TAX316 and the GEICAM 9805, to start looking
25 at -- looking at the information and providing a

Page 713

1  basis for understanding of persistent alopecia.
2       Q.   Irreversible or permanent
3  alopecia, you understand what those terms mean.
4  We've discussed that, right?
5       A.   And, again, we also discussed
6  that I view persistent and permanent and
7  irreversible alopecia as a continuum of recovery
8  from alopecia.
9            And within the context of
10 clinical trials, one cannot predict -- one cannot
11 design a trial to limit yourself only to patients
12 who are going to have, quote, irreversible
13 alopecia.  One has to look at the broad segment
14 of patients and the entire continuum of alopecia.
15      Q.   We looked a few minutes ago at
16 Exhibit-35A where the authors of that article
17 used the words "irreversible alopecia."  You
18 agree with that, correct?
19      A.   This is the previous article that
20 you're referring to?
21      Q.   Yes.
22      A.   Yes.  That was their title.
23      Q.   Can you tell me when before 2011,
24 which I think is the cutoff period for this
25 segment of our deposition.  When before 2011 did

Page 714

1  the company study irreversibility of alopecia or
2  irreversible alopecia related to Taxotere use?
3       A.   You know, again, I'm repeating
4  myself, Mr. Bachus, that I believe that there's a
5  continuum in the irreversibility of alopecia,
6  that the company would study that continuum
7  within the context of understanding alopecia, and
8  I cited two studies, both of which -- you know, I
9  think the TAX316 was initiated in 1997, if I
10 recall.  I don't recall the date of initiation of
11 GEICAM 9805.
12      Q.   Irreversible alopecia and tax --
13 was studied in TAX316?
14      A.   What I'm saying is that --
15      Q.   Just answer that question.  Is it
16 your testimony that irreversibility of alopecia
17 was studied or analyzed in TAX316?
18      A.   My testimony -- and, again, I'm
19 afraid I'm repeating it -- is I think if one is
20 going to study the issue of alopecia, including
21 irreversible alopecia, the -- it is difficult to
22 design a study that only looks at -- a
23 prospective study that only looks at the
24 irreversibility due to the rarity of the event.
25           What I'm saying is that the

Page 715

1  studies, TAX316 and GEICAM 9805, provided data of
2  which one can build upon in looking at the topic
3  of alopecia.
4       Q.   I don't think you answered the
5  question.  I want to move on, but I just want to
6  make sure that I understand the company's
7  position.
8            First of all, outside of TAX316
9  or GEICAM 9805, leave those two out.
10      A.   Okay.
11      Q.   Are you aware of any other
12 attempt of the company to study the
13 irreversibility of alopecia?
14      A.   I can't cite any other studies
15 that I know of at this time, although the company
16 does not only conduct clinical studies, but they
17 support investigators through grants and other
18 things.  I am not familiar with -- at this time
19 of specific studies that would cover that topic.
20      Q.   Do you agree with me that
21 irreversibility of alopecia was not studied in
22 GEICAM 9805, and there was no reporting on
23 irreversibility of alopecia?
24      A.   The GEICAM 9805, I believe, just
25 looked at long-term follow-up of alopecia, and

9 (Pages 712 to 715)

Michael S. Kopreski, M.D.

| Page 716 | Page 718 |
|---|---|
| 1  the data that would be obtained from that would<br>2  be useful in any future studies as I had<br>3  mentioned.<br>4      Q.   Do you agree with me that in<br>5  TAX316, the company did not study or report on<br>6  the irreversibility of alopecia?<br>7      A.   The TAX316 did have information<br>8  on -- on the duration and the resolution of<br>9  ongoing alopecia.  Now, I'm not -- I don't think<br>10 at the time of the TAX316 the words<br>11 "irreversibility of alopecia" is being applied,<br>12 but I think when you look at the TAX316, you have<br>13 patients that I identify, and I identified six<br>14 patients --<br>15     Q.   I was asking about -- I just<br>16 don't want to get far afield.  I have a very<br>17 limited amount of time.<br>18     A.   All right.<br>19         MR. BACHUS:  And I think that<br>20 I'll move to strike the last portion of<br>21 that as unresponsive.<br>22         THE WITNESS:  Okay.<br>23 BY MR. BACHUS:<br>24     Q.   And I do need just a clear<br>25 answer.  Okay?  Do you agree with me that in | 1  on Exhibit-41.<br>2          You're familiar with this<br>3  Taxotere supplement S-029 that was part of an FDA<br>4  post-submission meeting in May the 10th, 2004?<br>5      A.   No, I'm not.  The company is, but<br>6  I was -- I was not involved in the submission of<br>7  Taxotere in 2004, the submission of operable<br>8  node-positive breast cancer for Taxotere in 2004.<br>9      Q.   You're aware, and I think you<br>10 testified, about the submission in 2004 related<br>11 to TAX316?<br>12     A.   So just to clarify what I'm<br>13 saying now, I'm aware that it was submitted, but<br>14 I'm not -- I don't believe I'm aware of this<br>15 particular document or this post-submission<br>16 meeting.<br>17     Q.   Now, if you'll turn to page 29,<br>18 and you'll see at the top it says TAX316<br>19 conclusions.  Let me know when you're there.<br>20     A.   Page 29?<br>21     Q.   Yes, sir.  It's got a 29 in the<br>22 bottom right-hand corner.<br>23     A.   Okay.<br>24     Q.   Are you with me?<br>25     A.   Yes, I am. |
| Page 717 | Page 719 |
| 1  TAX316, Sanofi did not study, analyze or report<br>2  on irreversible alopecia?<br>3         MR. KEENAN:  Objection.  Form.<br>4      A.   I think in TAX316 there were<br>5  patients with ongoing alopecia of persistent or<br>6  permanent duration for a long period of time, but<br>7  the -- and these were studied and included in the<br>8  data for TAX316 as I previously testified in my<br>9  previous deposition.  Whether the term<br>10 "irreversible" or "irreversibility" was used, I<br>11 don't think the study was designed to use those<br>12 terms, but...<br>13         (Whereupon, a document was marked<br>14         for identification as Kopreski Exhibit<br>15         No. 41.)<br>16 BY MR. BACHUS:<br>17     Q.   I'm going to hand you what's been<br>18 marked as Exhibit-41 to the deposition.  And on<br>19 Exhibit-41, if you could turn to page 29.  It's<br>20 got 29 in the bottom corner.  It says<br>21 conclusions.<br>22         This is a PowerPoint or slide<br>23 presentation -- well, why don't we start, first<br>24 of all, just before I skip -- let me just show<br>25 you the very first page of this after the email | 1      Q.   And I put this up on the Elmo as<br>2  well.  These are the TAX316 conclusions presented<br>3  to the FDA as part of this pre -- this<br>4  post-submission meeting that occurred in 2004.<br>5          Do you see at the bottom where it<br>6  says that there are no indication that additional<br>7  warnings or precautions are required for the<br>8  intended use based upon TAX316?<br>9      A.   I do see that.<br>10     Q.   Do you agree with me that before<br>11 2011, okay?  Again, that's the cutoff time period<br>12 for this 30(b)(6).  Before 2011 that Sanofi never<br>13 made any request to the FDA asking to permit<br>14 Sanofi to add additional warnings or precautions<br>15 regarding irreversible or permanent hair loss?<br>16     A.   Well, I think in the 2004<br>17 labeling proposal that was associated with the<br>18 submission, Sanofi requested to provide<br>19 information regarding -- regarding persistent<br>20 alopecia in the same way that it was submitted to<br>21 the European label.<br>22         Whether you want to classify that<br>23 request as being a warning or not, it depends on,<br>24 you know, whether you're referring to warning as<br>25 information or you're referring to warning as to |