UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 16-2740<br><br>*This document relates to:*<br>Clare Guilbault, Case No. 2:16-cv-17061 |

**HOSPIRA'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL EVIDENCE IN SUPPORT OF HER OPPOSITION TO HOSPIRA'S MOTION FOR SUMMARY JUDGMENT BASED ON THE LEARNED INTERMEDIARY DOCTRINE**

More than two months after Hospira's Motion for Summary Judgment was fully briefed, argued, and submitted to the Court for decision, Plaintiff has moved for leave to submit a declaration from her expert oncologist, Dr. Linda Bosserman. The declaration does not contain a single reference to Ms. Guilbault, her prescribing physician Dr. Theodossiou, or any other facts in this case. Instead, it offers Dr. Bosserman's general opinions on "how modern prescription medications are prescribed and how physicians receive information regarding important issues raised about the drug." Pl.'s Mem. in Supp. of Mot. For Leave To File Suppl. Evid. in Supp. of Opp'n to Hospira's Mot. for Summ. J. Based on the Learned Intermediary Doctrine at 1 ("Pl.'s Mem."), Doc. 13190-1. The Court should deny Plaintiff's motion for two reasons.

*First*, Plaintiff's motion does not attempt to provide any reason why Dr. Bosserman could not have offered the declaration within the Court's deadlines. The declaration does not contain any *new* information that was unavailable to Plaintiff before the motion was submitted for decision. If Plaintiff believed Dr. Bosserman's declaration were relevant to Hospira's motion, Plaintiff should have submitted it with her opposition. Thus, the Court should deny the motion because Plaintiff has not shown any excusable neglect that justifies the late filing of the declaration.

*Second*, Dr. Bosserman's declaration does not provide any support for Plaintiff's Opposition to Hospira's Motion for Summary Judgment. As explained in Hospira's motion, there is no evidence that Dr. Theodossiou ever read the Hospira label; as a result, Plaintiff cannot show warnings causation because any additional warnings from Hospira on the risk of permanent hair loss would have been futile. *See* Hospira's Mem. in Supp. of Mot. Summ. J. Based on the Learned Intermediary Doctrine at 5-7, Doc 12538-1; *see* Order and Reasons (*Stewart*) at 6, Doc. No. 12494 ("When a physician does not recall ever reading the label at issue, the learned intermediary doctrine requires summary judgment for the manufacturer." (citing *Pustejovsky v. Pliva, Inc.*, 623 F.3d 271, 277 (5th Cir. 2010))). Accordingly, whether Plaintiff can show warnings causation depends on the *facts of this case*—specifically, Dr. Theodossiou's testimony. Dr. Bosserman's opinions do not contain any evidence about what Dr. Theodossiou actually read; thus, they do not provide any evidence to defeat Hospira's motion.

The Court should deny Plaintiff's motion for leave and grant Hospira' Motion for Summary Judgment.

**BACKGROUND**

Hospira filed its Motion for Summary Judgment on April 30, 2021. Doc. 12538. On May 12, 2021, Plaintiff filed her Opposition. Doc. 12586. By leave of Court, Hospira filed a Reply on May 18, 2021. Doc. 12619.

The original submission date was May 19, 2021. Not. of Submission, Doc. 12538-12. By agreement of the parties, the Court extended the submission date and held oral argument on May 26, 2021. Order, Doc. 12565.

**LEGAL STANDARD**

Under the Eastern District of Louisiana's Local Rule 7.2, a motion's submission date is when the motion is "deemed submitted to the court for decision, after which no further briefing will be allowed, except with prior leave of court." LR 7.2.  Local Rule 7.5 further provides that "[i]f the opposition requires consideration of facts not in the record, counsel must also file and serve all evidence submitted in opposition to the motion with the memorandum." LR 7.5.

Under Rule 6(b) of the Federal Rules of Civil Procedure, if the deadline for submitting motion papers has expired, a Court "may, for good cause, extend the time . . . if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B).  "The standard is strict and requires more than ignorance, carelessness, or negligence." *Jonesfilm v. Hoffman, et al.*, No. 11-CV-1994, 2012 WL 1804681, at *1 (E.D. La. May 17, 2012) (citation omitted).

**ARGUMENT**

**A.     Plaintiff Offers No Valid Reason for the Late Declaration.**

Plaintiff requests leave to file Dr. Bosserman's declaration more than two months after the submission date, but Plaintiff does not attempt to provide *any reason* why the Court should accept this late submission.  Plaintiff does not argue that Dr. Bosserman's declaration contains new information that was unavailable to her when the motion was submitted for decision in May.  Nor could she, because Dr. Bosserman's declaration offers only general opinions—untethered to the facts of this case—that are not based on anything new.  Dr. Bosserman opines that since the creation of the internet, "physicians" primarily get prescribing information "though electronic means," rather than "in paper format," and it is the "standard of care" for them "to maintain currency" regarding the labels through these electronic channels.  Pl.'s Mem., Ex. A ("Decl.")

¶¶ 19-23, 35-36, Doc. 13190-2.  If Plaintiff wanted to submit these opinions, she should have done so within the Court's deadlines.

This Court has denied attempts to submit late evidence in opposition to summary judgment without the showing of "excusable neglect" required under Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure.  In *Garst v. Costco Wholesale Corporation*, for example, this Court struck a late affidavit because the party "ma[de] no attempt to show good cause and excusable neglect," and "[i]ts briefing [wa]s silent as to the reason for its delay in filing the affidavit."  2020 WL 3287272, at *2 (E.D. La. June 18, 2020); *see also Jonesfilm*, 2012 WL 1804681, at *2 (finding no showing of "excusable neglect" for late reply brief).  The same is true here.  The Court should deny Plaintiff's motion because she has not shown that the failure to file the declaration on time was because of excusable neglect.

> **B.    Dr. Bosserman's Declaration Does Not Provide Any Evidence That Would Defeat Hospira's Motion for Summary Judgment.**

Not only is Dr. Bosserman's declaration late, but it does not contain any evidence that would provide a basis for denying Hospira's Motion for Summary Judgment.  The question of warnings causation hinges on the testimony of the prescribing physician.  Dr. Theodossiou testified that he "d[id] not recall" whether he reviewed the Hospira label before prescribing docetaxel to Plaintiff.  Hospira's Statement of Undisputed Material Facts ("SOF") ¶ 12, Doc. 12538-2; Ex. 2 (Theodossiou Dep.) at 86:14-23, Doc. 12538-4.  Moreover, even after Hospira updated its label to state that "[c]ases of permanent alopecia have been reported," SOF ¶ 14, Dr. Theodossiou *still* did not read it:

> Q. Doctor, are you familiar with what the current Docetaxel label states with regard to alopecia?
>
> A. *I haven't read it*.

4

> Q. Doctor, is the current language -- the current FDA-approved language in the Hospira Docetaxel label refers only to cases of permanent hair loss have been reported. Do you know if that's what it says?
>
> THE WITNESS: *I haven't read the specific, you know, package insert from Hospira.*

Ex. 2 (Theodossiou Dep.) at 125:6-17 (emphases added) (objection omitted); SOF ¶ 15.

This Court has held, based on Fifth Circuit precedent, that "[w]hen a physician does not recall ever reading the label at issue, the learned intermediary doctrine requires summary judgment for the manufacturer." Order and Reasons (*Stewart*) at 6 (citing *Pustejovsky*, 623 F.3d at 277). As the Court explained, "the physician's lack of memory, of course, does not preclude the possibility that she had read these materials, but neither can it sustain the plaintiff's burden." *Id.* (quoting *Pustejovsky*, 623 F.3d at 277) (brackets omitted). Thus, based on this evidence, summary judgment is required. *See* Hospira's Mem. in Supp. of Mot. for Summ. J. Based on the Learned Intermediary Doctrine at 5-7, Doc. 12538-1.

Dr. Bosserman's declaration does not provide any evidence that would defeat Hospira's motion for summary judgment.

*First*, whether Dr. Theodossiou read the Hospira label is a factual issue that depends on the evidence in *this case*, not Dr. Bosserman's general opinions. Dr. Theodossiou testified that he did not recall reading the Hospira label, and he *still* had not read Hospira's updated label. SOF ¶¶ 12, 15; Ex. 2 (Theodossiou Dep.) at 86:14-23; 125:6-17. Dr. Bosserman's declaration does not provide any evidence to the contrary. It provides no evidence at all about what Dr. Theodossiou read. Thus, Dr. Bosserman's opinions on the general practices of "physicians" do not provide any evidentiary support for her opposition to Hospira's motion.

Indeed, this Court has already precluded Dr. Bosserman from usurping the role of the prescribing physician. In *Earnest* and *Kahn*, the Court held that, on the issue of warnings

5

causation, the "testimony from a treating physician, not a third-party physician, is appropriate to assist the jury."  Order and Reasons (*Kahn*) at 5, Doc. 12109; Order and Reasons (*Earnest*) at 5, Doc. 7807.  The Court allowed Dr. Bosserman to provide "general testimony about how drug companies disseminate risk information, such as her testimony that pharmaceutical companies provide information to physicians through various sources," but excluded her testimony on the factual issue of the particular prescribing doctor's practices:  "Plaintiff Kahn's treating physicians will be available to testify at her trial.  They can testify about how they would have responded to a warning from Sanofi . . . .  The Court will not allow Dr. Bosserman to testify on this."  Order and Reasons (*Kahn*) at 5-6; *see* Order and Reasons (*Earnest*) at 5 ("Because Plaintiff's treating physician, Dr. James Carinder, is available to testify, Dr. Bosserman will not be allowed to opine on the facts of Earnest's case.").[1]  The same is true here.  Dr. Bosserman's declaration does not offer—and could not offer under this Court's rulings—any evidence on the material issue in Hospira's motion:  whether Dr. Theodossiou read the Hospira label.[2]

*Second*, Dr. Bosserman's declaration apparently is aimed at suggesting that Dr. Theodossiou would have received the Hospira label because "physicians" often receive electronic notifications of labeling updates through "subscription services" and other sources.  Decl. ¶ 20.

---

[1] *Earnest* and *Kahn* involved a different component of warnings causation—whether a doctor would have changed the prescribing decision based on a different label—whereas Hospira's motion involves the threshold question of whether Dr. Theodossiou would have read the label. *See* Hospira's Reply in Supp. of Mot. for Summ. J. Based on the Learned Intermediary Doctrine at 6-7, Doc. 12619-1.  The same analysis applies because they are both warnings causation issues that depend on the case-specific factual evidence.

[2] Dr. Bosserman's "declaration" does not even meet the requirements for admissibility in federal court.  *See* 28 U.S.C. § 1746 (requiring declaration in federal court to state that "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.").  That deficiency further demonstrates that her generalized opinions are not factual evidence that would defeat Hospira's Motion.

But Dr. Bosserman cannot change the facts of this case: Dr. Theodossiou testified that he did not recall reviewing the Hospira label before he prescribed docetaxel to Plaintiff and that he *still* had not read the Hospira label. SOF ¶¶ 12, 15; Ex. 2 (Theodossiou Dep. at 86:14-23; 125:6-17). He stated clearly: "*I haven't read the specific, you know, package insert from Hospira.*" Ex. 2 (Theodossiou Dep.) at 125:6-17. Thus, it does not matter whether labeling updates were available to doctors through subscription services or any other source—the evidence in this case is that Dr. Theodossiou did not read the Hospira label. Dr. Theodossiou would not have seen any update, regardless of how it was distributed.

This Court has already rejected an attempt to defeat summary judgment on this exact same evidence. Dr. Bosserman opines that labeling is available to doctors through "subscription services" and discussions at "regional cancer conferences." Decl. ¶¶ 21-22; 37-38. As the Court explained in granting summary judgment in *Stewart,* however, this evidence is *not* sufficient to show causation under Fifth Circuit precedent:

> Plaintiff further suggests that because Dr. McCanless uses a [subscription] service called UpToDate, he would have learned of a label update for permanent alopecia through this service. Yet, again, under *Pustejovsky*, this is not enough. The *Pustejovsky* plaintiff argued that her prescribing physician might have learned of an adequate warning through conversations with other physicians. The Fifth Circuit rejected this argument, writing: "Certainly, these scenarios are possible. Ultimately, however, without any summary-judgment evidence to support them, they remain nothing more than possibilities." Plaintiff Stewart similarly has presented no evidence that Dr. McCanless would have learned of a Sandoz label change through UpToDate. At best, this is nothing more than a possibility.

Order and Reasons (*Stewart*) at 7. The same analysis applies here. Dr. Bosserman's declaration is, at best, speculation about what is possible, and that is not sufficient to defeat summary judgement.

*Third*, Dr. Bosserman's discussion of electronic versus paper copies of the labeling is also irrelevant. When Dr. Theodossiou testified that he did not recall reading the Hospira "label" and

7

"package insert," he did not limit this testimony to paper copies. As Dr. Bosserman's herself explains, whether in electronic or paper format, the terms "'prescribing information,' 'package insert,' 'warning label,' 'paper label,' and 'label' . . . . all refer to the same thing, i.e., the manufacturer's written warnings related to the pharmaceutical product." Decl. ¶ 18 n.1. Thus, the distinction between electronic and paper labeling is a red herring. There is no evidence that Dr. Theodossiou reviewed *any* version of the Hospira labeling—either electronic or paper.

## CONCLUSION

For the reasons stated herein and previously, the Court should deny Plaintiff's motion for leave and grant Hospira's motion for summary judgment.

Dated: August 31, 2021

Respectfully submitted,

*/s/ Heidi K. Hubbard*
Heidi K. Hubbard
Richmond T. Moore
Neelum J. Wadhwani
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
Phone: (202) 434-5000
Fax: (202) 434-5029
hhubbard@wc.com

John F. Olinde (Bar No. 1515)
Peter J. Rotolo (Bar No. 21848)
**CHAFFE MCCALL LLP**
1100 Poydras Street New Orleans, LA 70163
Phone: (504) 858-7000
Fax: (504) 585-7075
olinde@chaffe.com

*Counsel for Defendants Hospira, Inc., and Hospira Worldwide, LLC, formerly doing business as Hospira Worldwide, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

*/s/ Heidi K. Hubbard*