UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO *Kahn v. Sanofi-Aventis US, LLC*, No. 16-117039 | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT SANOFI'S NOTICE OF OBJECTIONS TO PLAINTIFF'S DEPOSITION DESIGNATION TESTIMONY OF DR. CARL KARDINAL, AND OBJECTIONS TO CERTAIN OF SANOFI'S DESIGATIONS**

COMES NOW, Plaintiff, Elizabeth Kahn, who respectfully offers the below responses to Defendant Sanofi's Objections to certain of Plaintiff's deposition designations of Dr. Carl Kardinal, as set forth in Rec. Doc. 13079. Further, Plaintiff will address a single topic of Sanofi's deposition designations impacted by the Court's MIL Order in Rec. Doc. 11803, ruling that Dr. Kardinal could not provide general testimony about Taxol being more neurotoxic than Taxotere.

As an initial matter, Plaintiff asserts that Defendants' Notice of Objections are duplicative of its prior objections set out in the spreadsheet jointly provided to the Court by agreement of the parties, and approval of the Court. Defendants' objections predated any rulings on the parties' Motions in Limine ("MILs"), and are thus untimely, duplicative, cumulative and unnecessary. This notwithstanding, and because one of Defendant's stated reasons for filing its Notice of Objections was to preserve a record, Plaintiff offers the below responses concerning Defendants' Notice of Objections in light of the MIL rulings:

A. Sanofi's Objection Referring to "Hypothetical Dear Healthcare Provider Letter[s]" is factually incorrect, misstates the testimony, and should be denied

Defendants (collectively, Sanofi) object to correspondence with physicians as stated in the jointly submitted spreadsheet. Sanofi's redundant Notice of Objections, Rec. Doc. 13079, is based

1

on Sanofi's MIL 35, relevance, confusion, prejudice, and misleading. The Court denied Sanofi's MIL 35 regarding evidence of Dear Healthcare Provider letters. Further, Sanofi's argument unnecessarily restricts the content of Plaintiff's question to a very particular type of letter – a "Dear Healthcare Provider" letter. *See* Rec. Doc. 13079, p. 2. "Dear Healthcare Provider" letters are a very particular type of correspondence, and their form and content are described in 21 CFR § 200.5. Specifically, "Dear Healthcare Provider" letters include specific bolded language in a prescribed line sequence, use of the word "IMPORTANT," and must include certain 36-point messaging, among other particulars.[1] Further, Plaintiff never asked Dr. Kardinal if he received such a letter. The questions included: "Have you, over the course of your career, received letters from pharmaceutical companies alerting you to label changes?;" "And have you received letters from time to time from pharmaceutical companies alerting you to new indications for usage of their chemotherapy products?;" and "When they send you letters directing you to new indications of usage for their products, do you read about -- do you read the letter to learn about the new indications for the use of their products?"[2]  Dr. Kardinal responded that he did receive such letters in his practice, and that he read them.[3]

Not all correspondence between Sanofi and healthcare providers is in the form of a formal "Dear Healthcare Provider" letter pursuant to 21 CFR § 200.5. Sanofi's "Partnering With Patients" comprehensive chemotherapy patient care kit includes a letter to chemotherapy nurses (healthcare providers), and by its form and content is clearly not a 21 CFR § 200.5 "Dear Healthcare Provider" letter.[4]

---

[1] 21 CFR § 200.5
[2] Ex. A, Kardinal Dep., 129:25-130:20
[3] *Id.*
[4] Ex. B, Sanofi_01038470, "Partnering With Your Patient" at p. 3, Sanofi_01038472

2

Dr. Kardinal testified clearly that he received letters from pharmaceutical companies from time to time, concerning the use of various products. He testified that he read those letters. And importantly there is no evidence other than the letter in the "Partnering With Patients" comprehensive care kit that Sanofi ever attempted to communicate to healthcare providers via written correspondence, and that is the point. In determining whether Sanofi acted reasonably, or unreasonably in providing an adequate warning, the jury should be allowed to learn the means and methods Sanofi has of communicating relevant product information to physicians, and whether they attempted to do so. Plaintiff expects Ms. Ruth Avila, Sanofi's former Senior Oncology Sales Professional to testify that she provided the "Partnering With Patients" comprehensive patient care kit to Ochsner oncology offices. As stated, this kit included a letter that was not a "Dear Healthcare Provider" letter. Sanofi's use of this method of communication can be established through Ms. Avila, the material is copywritten by Sanofi, the content of what can be communicated through such a method is directly relevant. The jury should hear and consider this evidence when deciding Sanofi's actions in choosing what to communicate to physicians, how it does so, and how timely it did so.

B. <u>Testimony not tied to the time treatment was rendered to Elizabeth Kahn</u>

Plaintiff directs the Court to the page and lines included in Sanofi's footnote 3 on p. 2 of its Notice of Objections. Sanofi mischaracterizes the substance of the questions and answers provided, and demonstrates the utility of reviewing the testimony through the spreadsheet rather than Sanofi's out-of-context interpretation of the testimony. At pp. 141:19-143:12, of Dr. Kardinal's deposition Plaintiff's counsel is simply following up on Sanofi's questioning of Dr. Kardinal that he is entirely unaware of *any* chemotherapy drug that listed permanent alopecia or

permanent hair loss as an adverse event.[5] The remainder of the objected-to testimony is not the product of a leading question, goes directly to the central issue in this case: would a warning about permanent alopecia have been discussed with Ms. Kahn, and would he consider alternative treatments if requested by his patient.[6] The question first recounted Dr. Kardinal's prior response to Sanofi's counsel's question, and then he was asked "would that [a label change to include permanent hair loss as an adverse event associated with the use of Taxotere] be news to you?" and "would that change what you discussed with your patient concerning that drug?"[7]

Sanofi argues that counsel's questions and Dr. Kardinal's answers are premised on "counterfactual hypotheticals" and claims the testimony is irrelevant, confusing, misleading and calls for speculation.[8] Nothing could be farther from the truth, particularly when the witness is the learned intermediary whose inquiry and opinion is necessary in a prescription drug products liability lawsuit. As the Court has seen through the *Earnest* trial, and motions involving expert testimony in the present matter, Plaintiff can establish a *prima facie* case that Taxotere (docetaxel) demonstrates a statistically significant increased risk of permanent chemotherapy-induced alopecia (PCIA), and that statistics demonstrate a statistically significant signal for PCIA as early as 2001. What is incredible in the truest sense of the word is that Sanofi only directs the Court's attention to the very limited portion of Dr. Laura Plunkett's testimony that the Court excluded, while failing to recognize the admissible testimony of Dr. Ellen Feigal and Dr. David Madigan that have survived FRE 702/*Daubert* challenges on multiple occasions, and which the Court has recognized as proper and admissible. A critical issue for the jury is whether a warning for PCIA would have changed Dr. Kardinal's prescribing Taxotere, whether he would have included the risk

---

[5] Ex. A, Kardinal Dep., 141:5-11.
[6] *Id.* at 141:19-143:12
[7] *Id.* at 141:22-142:12
[8] Rec. Doc. 13079, p. 2.

4

of PCIA in his discussions with Ms. Kahn, and if requested by his patient he would have prescribed an alternative regimen. Dr. Kardinal clearly stated that he would have included the risk information in his discussions with Ms. Kahn and would have prescribed an alternative regimen.

Sanofi's assertions that such testimony is irrelevant are simply wrong, illogical and beyond comprehension. Dr. Kardinal's testimony is directly relevant, it addresses a critical issue for the jury, and Sanofi's objection is due to be overruled.

C. Exhibit 13: "Talking About Taxotere" Brochure

Sanofi premises its objection, in part, upon prior objections to Exhibit 13 to Dr. Kardinal's deposition. But Plaintiff did not designate any testimony concerning, nor attempt to admit, Exhibit 13 to Dr. Kardinal's deposition. Sanofi objects to testimony found at pp. 166:9-167:4 of Dr. Kardinal's deposition, which does not address or refer to Exhibit 13 to the deposition. Sanofi's objection was urged prospectively on MILs it filed, but that were eventually denied.[9] These page and line references include general questions posed to Dr. Kardinal. The questions asked at pp. 166:9-167:4 are not impacted by any of the MILs stated in Sanofi's Rec. Doc. 13079.[10] They simply address Dr. Kardinal's need for reliable information in order to adequately advise his patients.

Sanofi's remaining objections to questions are boilerplate "foundation, scope, irrelevant, and misleading."[11] The questions relate to the validity and correctness of information and data that

---

[9] Sanofi's MILs 20 (Motion to Preclude Evidence or Argument Regarding Sanofi Sales Representatives, and to Exclude Sales Representative Witness Testimony) and 35 (Motion to Preclude Evidence or Argument Regarding Dear Health Care Provider Letters) were denied in their entirety; Sanofi's MIL 17 (Motion to Preclude Evidence or Argument Concerning Sanofi Promotional and/or Marketing Materials Not Possessed or Relied On by Ms. Kahn or Her Prescribing Physician) was only conditionally granted. Regardless, the evidence Sanofi objects to (Kardinal 166:9-167:4) is not impacted by any of these MILs.
[10] Sanofi bases its objection on assertions that the questions involve promotional and marketing materials (Sanofi's MIL 17); that the question involves evidence based upon Sanofi's sales representatives (Sanofi's MIL 20 - denied); and that the questions address evidence of "Dear Healthcare Provider" letters. (Sanofi's MIL 35 – denied).
[11] See spreadsheet ll. 4157 – 4178.

Dr. Kardinal uses to make his clinical recommendations, and that he discusses with his patient.[12] This testimony goes to the heart of one of the central issues in this case: the informed consent and shared decision-making process. Finally, Sanofi's objection to this portion of Plaintiff's designation of Dr. Kardinal's testimony based upon Ms. Kahn's testimony makes no sense at all.[13] The questions go in part to Dr. Kardinal's expectation that he be provided with accurate information from drug companies. Ms. Kahn's testimony has no impact on Dr. Kardinal's testimony on this point.

   D.  Exhibit 14: "Partnering With Your Patient"

Sanofi objects to Plaintiff questioning Dr. Kardinal on its "comprehensive chemotherapy patient care kit" that is cover-titled "Partnering With Your Patients Along Their Journey."[14] Plaintiff anticipates the exhibit will be authenticated through Ruth Avila, Sanofi's former Senior Oncology Sales Professional.[15] Ms. Avila is expected to testify that she provided the Partnering With Patients comprehensive chemotherapy patient care kit to Ochsner's oncology group office where Dr. Kardinal practiced, and that one of her primary duties with Sanofi was to "educate affiliated allied health professionals in use of and side effect management of Taxotere to support physician use of the product."[16] Dr. Kardinal explained during Sanofi's questioning that his office employed nurses to review the informed consent with the patients to ensure they understood the drugs and treatment they were to undergo.[17] There is a proper foundation for the use of this exhibit.

Sanofi's remaining objections to comprehensive chemotherapy patient care kit are urged on relevance, immateriality, misleading and upon its MILs 17 (Motion to Preclude Evidence or

---

[12] *Id.*
[13] *See* Rec. Doc. 13079 at pp. 4-5 and footnote 3.
[14] Ex. B, Sanofi_01038470.
[15] Ex. C, Avila Dep. Exhibit 1, Ruth Avila *curriculum vitae*
[16] *Id.; See also*, Ex. D, Avila Dep., 186-191.
[17] Ex. A, Kardinal Dep., 92:12-24.

Argument Concerning Sanofi Promotional and/or Marketing Materials Not Possessed or Relied on by Ms. Kahn or Her Prescribing Physician) and 20 (Motion to Preclude Evidence or Argument Regarding Sanofi Sales Representatives, and to Exclude Sales Representative Witness Testimony). Sanofi's MIL 17 was only conditionally granted, and its MIL 20 was denied, with the Court remarking that what Sanofi knew and when it knew it is relevant. And what Sanofi knew and when, and what it represented about Taxotere is precisely why this exhibit was discussed with Dr. Kardinal. Plaintiff anticipates Ms. Avila will testify to its distribution to Ochsner's oncology offices, including Dr. Kardinal's office, and that she will establish the distribution was directed and encouraged by Sanofi.

Regardless of whether Dr. Kardinal actually reviewed the document, Ms. Kahn must be allowed to demonstrate what Sanofi knew, when it knew it and what information it was communicating to care delivery providers who use such information in the process of recommending a chemotherapy regimen for patients, and for the ultimate communication to the patient in the shared decision-making process. Indeed, the "comprehensive chemotherapy patient care kit" includes "13 individual tear sheets that you can print out and give your patients."[18] Despite Sanofi's characterization of the comprehensive care kit as "Promotional and/or Marketing Material" subject to MIL 17, the obvious purpose of the comprehensive chemotherapy care kit is to provide "essential tools" to be used in the care of patients, including the tear sheets to print and provide to patients. The ultimate intended recipients of Sanofi's representations in the tear sheets are patients. Sanofi wants to communicate through its witnesses that permanent chemotherapy-induced alopecia has always been included in the label, but in reality, what it communicates to

---

[18] Ex. B, Sanofi_01038470.

patients via the tear sheets provided in its comprehensive care kit is that alopecia is "a common, yet temporary, side effect of some cancer medicines."[19]

Sanofi's "Partnering With Patients On Their Journey" comprehensive care kit is directly relevant to several issues in this matter, and asking Dr. Kardinal if his understanding is consistent with Sanofi's representations that alopecia is a "common yet temporary" condition is directly relevant to his knowledge and understanding prior to treating Ms. Kahn. The question is not leading, nor does it create confusion or mislead the jury. The relevance of this evidence is underscored by Dr. Kardinal's unfamiliarity with any chemotherapy that warns about permanent alopecia.[20]

Sanofi's objection to this exhibit and Dr. Kardinal's testimony should be overruled.

E. The Court Should Exclude Designations Consistent with Rec. Doc. 11803

The Court granted Elizabeth Kahn's motion to exclude testimony that Taxol was more neurotoxic than Taxotere.[21] The Court drew a distinction between statements that were "within a permissive core on issues pertaining to treatment," that are admissible, and "general testimony about the neurotoxicity of paclitaxel," that are to be excluded.[22]

Sanofi has designated testimony at pp. 70:25-71:5 of Dr. Kardinal's deposition: "Would you agree neuromuscular toxicity was considerably less common with docetaxel than with paclitaxel? A. Well, I'll agree with that. . . Neurotoxicity was a big concern." This is a general statement and falls outside the "permissive core" the Court previously recognized. However, the testimony is immediately followed by the statement the Court noted it would allow, where Dr.

---

[19] *Id.* at p. 5, Sanofi_01038474.  Like in Earnest, Sanofi's counsel will open the door in its opening statement to the use of this document, as they will argue Sanofi always warned of hair loss.
[20] Ex. A, Kardinal Dep., 87:10-24.
[21] Rec. Doc. 11803
[22] *Id.* at 4.

Kardinal stated what he "tended" to do.[23] The sequence of Sanofi's questions illustrate this difference. First it asked generally, which the Court stated it would not permit, then it asked in the context of the specifics of a patient, which the Court found permissible. The approved designations to be played for the jury should reflect the Court's prior ruling.[24] And this also reflects Dr. Kardinal's specific lack of knowledge concerning general causation: he believes it has been reviewed, but he does not know the strength of the comparison, or rates.[25]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court make the following rulings on the deposition designations of Dr. Kardinal's testimony: overrule Sanofi's objections addressed in sections:

A) As Plaintiff's questions do not reference, nor were they restricted to Dear Healthcare Provider Letters, and otherwise address relevant evidence of Dr. Kardinal's experience with available means of communication between pharmaceutical companies and physicians;

B) As Dr. Kardinal's testimony goes to the very heart of the learned intermediary inquiry that is necessary in a pharmaceutical products liability action: would an adequate warning have changed Dr. Kardinal's discussions with Ms. Kahn, and if requested he would have prescribed an alternate regimen. Dr. Kardinal's testimony likewise goes to his expectation that he be provided be truthful and accurate. This testimony is directly relevant;

---

[23] Ex. A, Kardinal Dep. 72:9-19.
[24] Rec. Doc. 11803
[25] Ex. A, Kardinal Dep. 136:17-137:7; see also 181:11-16.

9

C) Plaintiff did not attempt to admit Exhibit 13 to Dr. Kardinal's deposition, and Sanofi's objection is misplaced. The testimony addressed in Section C of Rec. Doc. 13079, and this response, is relevant and material to Dr. Kardinal's expectations for reliable information in order to adequately advise his patients;

D) Allowing admission and questioning of and concerning "Partnering With Your Patient," Sanofi's comprehensive chemotherapy patient care kit, that it distributed to healthcare providers for use and ultimate communication with patients. The document and related questions and testimony are directly relevant to what Sanofi knew, when it knew it, and what information it was communicating to providers for ultimate communication patients in the shared decision-making process; and

E) That the Court sustain Plaintiff's objection in section E in conformity with the Court's prior ruling in Rec. Doc. 11803.

Dated: October 7, 2021                                  Respectfully submitted,

*/s/ Christopher L. Coffin*                             */s/ Karen B. Menzies*
Christopher L. Coffin (#27902)                          Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.                        GIBBS LAW GROUP LLP
1100 Poydras Street, Suite 2225                         6701 Center Drive West, Suite 1400
New Orleans, Louisiana 70163                            Los Angeles, California 90045
Phone: (504) 355-0086                                   Telephone: 510-350-9700
Fax: (504) 355-0089                                     Facsimile: 510-350-9701
ccoffin@pbclawfirm.com                                  kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*                           *Plaintiffs' Co-Lead Counsel*

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

Plaintiffs' Co-Liaison Counsel

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

Plaintiffs' Co-Liaison Counsel

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

J. Kyle Bachus
Bachus & Schanker, LLC
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045 Phone:
510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

11

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

John Gomez
The Gomez Law Firm, PLLC
655 West Broadway, Suite 1700
San Diego, CA 92101
Phone: (619) 237.3490
Fax: 619.237.3496.
john@thegomezfirm.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, FL 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904 15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@amalaw.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Jessica Perez Reynolds
Pendley, Baudin & Coffin
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Phone: (225) 687-6396
Fax: (225) 687-6398
jperez@pbclawfirm.com

Darin L. Schanker
Bachus Schanker
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
dls@coloradolaw.net

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Zachary Wool
Barrios Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
zwool@bkc-law.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

                                      */s/ Dawn M. Barrios*
                                      DAWN M. BARRIOS