UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)     MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:
Elizabeth Kahn, Case No. 2:16-cv-17039

## PARTIES' PROPOSED FINAL PRETRIAL ORDER

**Date of Final Pretrial Conference**

1) The date of the Final Pretrial Conference is October 20, 2021 at 1:00 pm.

**Appearance of Counsel**

2) The following counsel appeared at the Pretrial Conference:

   a) Representing the Plaintiff:

| | |
|---|---|
| Darin L. Schanker<br>BACHUS & SCHANKER, LLC<br>101 W Colfax Ave, Suite 650<br>Denver, CO 80202<br>Phone: (303) 893-9800<br>Fax: (303) 893-9900<br>dschanker@coloradolaw.net<br><br>*Trial Counsel for the PSC* | David F. Miceli<br>David F. Miceli, LLC<br>P.O. Box 2519<br>Carrollton, GA 30112<br>Phone: (404) 915-8886<br>dmiceli@miceli-law.com<br><br>*Trial Counsel for the PSC* |
| Christopher L. Coffin (#27902)<br>PENDLEY, BAUDIN & COFFIN, L.L.P.<br>1100 Poydras Street, Suite 2225<br>New Orleans, Louisiana 70163<br>Phone: (504) 355-0086<br>Fax: (504) 355-0089<br>ccoffin@pbclawfirm.com<br><br>*Plaintiffs' Co-Lead Counsel and Counsel for Plaintiff, Elizabeth Kahn* | J. Kyle Bachus<br>BACHUS & SCHANKER, LLC<br>101 W Colfax Ave, Suite 650<br>Denver, CO 80202<br>Phone: (303) 893-9800<br>Fax: (303) 893-9900<br>kyle.bachus@coloradolaw.net<br><br>*Trial Counsel for the PSC* |

| | |
|---|---|
| Zachary L. Wool (#32778)<br>BARRIOS, KINGSDORF & CASTEIX, LLP<br>701 Poydras Street, Suite 3650<br>New Orleans, LA 70139<br>Phone: 504-524-3300<br>Fax: 504-524-3313<br>zwool@bkc-law.com<br><br>*Trial Counsel for the PSC* | Jessica Perez Reynolds (#34024)<br>Pendley, Baudin & Coffin<br>P.O. Drawer 71<br>24110 Eden Street<br>Plaquemine, LA 70765<br>Phone: (225) 687-6396<br>Fax: (225) 687-6398<br>jperez@pbclawfirm.com<br><br>*Trial Counsel for the PSC* |
| M. Palmer Lambert (#33228)<br>GAINSBURGH BENJAMIN<br>DAVID MEUNIER & WARSHAUER, LLC<br>2800 Energy Centre, 1100 Poydras Street<br>New Orleans, LA 70163-2800<br>Phone: 504-522-2304<br>Fax: 504-528-9973<br>plambert@gainsben.com<br><br>*Plaintiffs' Co-Liaison Counsel and Trial Counsel for the PSC* | Dawn M. Barrios (#2821)<br>BARRIOS, KINGSDORF & CASTEIX, LLP<br>701 Poydras Street, Suite 3650<br>New Orleans, LA 70139<br>Phone: 504-524-3300<br>Fax: 504-524-3313<br>barrios@bkc-law.com<br><br>*Plaintiffs' Co-Liaison Counsel and Trial Counsel for the PSC* |

b) Representing the Defendants:

| | |
|---|---|
| Hildy Sastre<br>Shook, Hardy & Bacon LLP<br>201 Biscayne Boulevard, Suite 3200<br>Miami, FL 33131<br>Phone: (305) 358-5171<br>Fax: (305) 358-7470<br>hsastre@shb.com<br><br>*Trial Counsel for Sanofi-Aventis U.S. LLC and Sanofi US Services Inc.* | Jon A. Strongman<br>Shook, Hardy & Bacon LLP<br>2555 Grand Boulevard<br>Kansas City, MO 64108<br>Phone: (816) 474-6550<br>Fax: (816) 421-5547<br>jstrongman@shb.com<br><br>*Trial Counsel for Sanofi-Aventis U.S. LLC and Sanofi US Services Inc.* |

| | |
|---|---|
| Harley V. Ratliff<br>Shook, Hardy & Bacon LLP<br>2555 Grand Boulevard<br>Kansas City, MO 64108<br>Phone: (816) 474-6550<br>Fax: (816) 421-5547<br>hratliff@shb.com<br><br>*Counsel for Sanofi-Aventis U.S. LLC and Sanofi US Services Inc.* | Douglas J. Moore<br>Irwin Fritchie Urquhart & Moore LLC<br>400 Poydras Street, Suite 2700<br>New Orleans, LA 70130<br>Phone: (504) 310-2100<br>Fax: (504) 310-2120<br>dmoore@irwinllc.com<br><br>*Liaison Counsel for Sanofi-Aventis U.S. LLC and Sanofi US Services Inc.* |

**Description of the Parties**

3) Parties:

   a) The Plaintiff is Elizabeth Kahn.

   b) The Defendants are:

      i) Sanofi-Aventis U.S. LLC; and

      ii) Sanofi US Services Inc.

**Jurisdiction**

4) Jurisdiction is based on a complete diversity of citizenship of all parties:

   a) Plaintiff: The plaintiff is a citizen of Louisiana.

   b) Defendants:

      i) Sanofi US Services Inc. is a Delaware corporation with its principal place of business located in New Jersey, and, therefore, is a citizen of New Jersey and Delaware.

      ii) Sanofi-Aventis U.S. LLC is a Delaware limited liability company with its principal place of business located in New Jersey. Sanofi-Aventis U.S. LLC is a single-member LLC and its sole member is Sanofi US Services Inc. Thus, Sanofi-Aventis U.S. LLC is a citizen of New Jersey and Delaware.

   c) The amount in controversy, exclusive of interest and costs, exceeds $75,000.

**Pending/Contemplated Motions and Special Issues**

5) Motions:

   a) There are no *Daubert* motions pending.

   b) There are no Motions in Limine pending.

   c) The following contemplated special issues are appropriate for determination in advance of trial on the merits:

   i) Discussion of COVID and Plaintiff's travel to visit Dr. Tosti at trial.

   > Plaintiff's Position: At Plaintiff's recent supplemental deposition, Sanofi crossed Ms. Kahn at length on topics related to COVID-19, particularly with reference to Ms. Kahn's travel for an appointment with Dr. Tosti. Plaintiff believes that such questioning – or comments related to the pandemic or activities of Ms. Kahn's during the pandemic– are irrelevant to the issues at hand, and counsel for both sides should be precluded from discussing in opening or closing or with a witness topics related to COVID-19.

   > Defendants' Position: At Plaintiff's supplemental deposition (covering topics between January 31, 2018 and July 27, 2021), Defendants questioned Plaintiff regarding her engagement in social activities during the pandemic and the resulting emotional impact she experienced. While limited, questioning on the topic is directly relevant to Plaintiff's claims of emotional damages, as well as her willingness to seek medical opinions and/or treatment for her alleged hair loss. Responsive testimony is relevant and admissible. Defendants did not, and do not intend to question Plaintiff on her personal beliefs regarding COVID-19, masks, vaccines, etc.

   ii) Issues related to photo dates

   The parties are working to compile a comprehensive list of photographs of Mrs. Kahn along with the corresponding date of each photograph. Any disputes that cannot be resolved by the parties will be addressed with the Court consistent with other provisions of this Pretrial Order.

   iii) Dr. Kopreski Trial Subpoena

   > The parties submitted briefing to the Court regarding this issue on October 15, 2021. In addition, Dr. Kopreski, through his own counsel, will be filing a formal motion to quash Plaintiff's trial subpoena in the United States District Court for the District of New Jersey.

iv) Cumulative Evidence

>Plaintiffs' Position: After the Court's ruling on the *Daubert* motions, Plaintiff notes that both sides have experts whose testimony would be cumulative or have similar areas of expertise. For example, Sanofi has two oncologists (Glaspy and Miletello) and three dermatologists (Turegano, Freites-Martinez and Shapiro). These witnesses offer substantially similar, and in certain instances identical, opinion testimony. And Plaintiff has, for example, Ross and Plunkett discussing regulatory issues. Plaintiff is prepared to narrow her experts with overlapping areas of expertise and seek the Court's guidance on a method and date to accomplish that, with an eye towards judicial efficiency and the conservation of trial resources. The parties have met and conferred on this topic, but have been unable to reach resolution and seek the Court's assistance.

>Defendants' Position: As set forth in section 5.c.viii of this Pretrial Order, the parties will amend their witness lists in accord with the Orders of the Court to identify witnesses they reasonably expect to call at trial. Sanofi intends to do so in good faith, but reserves the right to identify more than one witness with similar expertise and/or overlapping opinions. The identity of *who* Defendants will call at trial and the *scope* of their testimony will necessarily depend on how the evidence comes in during the Plaintiff's case-in-chief, among other strategic considerations to be made by counsel at trial. Regardless of who Defendants call and the substance of their testimony, Defendants will not waste time by presenting cumulative evidence to the jury.

v) Order of presentation of videotaped testimony:

(1) Plaintiffs' Position: Plaintiff's position is that the presentation of videotaped deposition testimony to the jury be done in a manner that is consistent with the ordinary presentation of evidence in a party's case-in-chief. This is impacted, of course, by the Defendant's decision not to bring their witnesses live to trial. Sanofi has not identified which witnesses, if any, they will call live. The party presenting its evidence should determine how their case is presented. That is, the party offering the testimony plays its direct exam cuts, then the opposing party plays its counter (cross examination) designations limited in scope to the direct testimony, followed by any redirect clips.

>For witnesses called by Plaintiff, Defendants should be required to use their own case-in-chief to play testimony that is unrelated to the Plaintiff's direct exam.

>As the Court recalls from the *Earnest* trial, since Sanofi's deposition cuts were played during Plaintiff's case-in-chief, the Defendants' presentation of evidence included only a portion of one videotaped deposition and one expert witness, John Glaspy, M.D. Plaintiff contends this demonstrates the extent to which Sanofi "hijacked" the presentation of evidence in the *Earnest* trial.

5

>> Plaintiff believes appropriately limiting which Defendants' counter designations are played during Plaintiff's case-in-chief to include only testimony clearly needed for completion will minimize Defendants' "hijacking" of Plaintiff's case.
>
> (2) Defendants' Position: As was done in *Earnest*, the presentation of videotaped deposition testimony to the jury should include, in one video cut, all designations asserted by both parties (to the extent they withstand objections) and be played chronologically in the order the deposition was taken. Defendants believe the jury should hear all of the video testimony from a witness the same way they would if the witness were presented live – at one time as opposed to splitting between Plaintiff's case and then days later in Defendants' case.

vi) Timing of Voir Dire (November 8, 2021) and Jury Selection.

> (1) Plaintiff's Position: Plaintiff requests that the sides have 30 minutes each to conduct voir dire.
>
> (2) Defendants' Position: Defendants request that each side have 20 minutes to conduct *voir dire*, consistent with how it was conducted in *Earnest*.

vii) Impeachment materials for cross examination:

> (1) The parties may introduce impeachment evidence consistent with paragraph IX.10.b. of the Court's standard Pre-Trial Notice.[1]

viii) Disclosure of testifying witnesses:

> (1) The parties have disclosed witnesses who will or may be called to testify at trial. By October 15, 2021, the parties shall amend their witness lists to limit it to witnesses they reasonably expect to call and disclose whether they intend to present their witnesses live or by video deposition designation.
>
> (2) All parties shall disclose their testifying witnesses no later than 36 hours (one and a half calendar days, including weekends) in advance of the witness' appearance at trial, including those offered by deposition designation. Objections to deposition designations shall be addressed with the Court no later than 5:30 p.m. the day before the presentation of such testimony to the jury to minimize technology issues, and to make efficient use of the Court's time. Final run reports of deposition testimony to be played to the jury shall be provided to opposing counsel by 9:00 p.m. CT the day before such testimony is presented to the jury.

---

[1] "If a party considers he has good cause not to disclose exhibits to be used solely for the purpose of impeachment, he may ex parte request a conference with the Court and make his position known to the Court in camera."

6

ix) Disclosure of opening statement demonstratives:

>The parties agree to disclose opening statement demonstratives to each other no later than noon CT on Thursday, November 4, 2021.

>Objections to opening statement demonstratives shall be provided in writing to opposing counsel by 5:00 p.m. on Thursday, November 4, 2021. The parties will meet and confer on any issues by 6:00 p.m. on Thursday, November 4, 2021 and if the meet and confer does not resolve the issues, the parties shall contact the Court for resolution on Friday, November 5, 2021 to resolve the remaining disputes. Any objections shall be addressed on Friday, November 5, 2021.

x) Disclosure of direct examination exhibits and demonstratives:

>Direct examination exhibits and demonstratives shall be disclosed no later than 8:00 p.m. CT the night before the presentation of such information to the jury. Objections to such materials shall be submitted to the opposing party in writing within three (3) hours of receipt to minimize interruption of trial with the jury present.

xi) Time limits and timekeeping procedure at trial:

(1) Plaintiff's Position: Consistent with the Court's ruling in Earnest, Plaintiff asks the Court to allowed her 26 hours to present her case, and Defendants be allowed 22 hours to present its case. For opening statements, Plaintiff suggests each party be allowed 60 minutes. The court reporter will monitor time. Each party should designate one person to monitor the time daily as well.

(2) Defendants' Position: Defendants propose that 24 hours be allocated to each side for opening statements, the presentation of evidence, and closing argument. Regardless of the total amount of time allowed by the Court, the Defendants propose that it be divided equally among the parties. Defendants propose that opening statements be limited to 45 minutes per side. Each party should designate one person to monitor the time daily.

xii) Rule of Sequestration

>The parties agree that expert witnesses and the Plaintiff are not subject to sequestration.

**Brief Summary of Material Facts**

6) A brief summary of the material facts, provided by each party, is set forth below. Each party objects to the other party's "Brief" Summary of "Material" Facts on grounds that such

assertions are incorrect, mischaracterize the evidence, and/or are not relevant to the claims at issue in this case.

a) **Plaintiff:** Sanofi must use reasonable care to provide an adequate warning of permanent/irreversible hair loss to physicians and patients who prescribed and used Taxotere. Ms. Kahn contends that Sanofi failed to disclose to physicians and patients a common risk of permanent hair loss. Due to Sanofi's failure to warn Ms. Kahn's prescribing oncologist that the use of Taxotere carried with it the risk of permanent chemotherapy induced alopecia (PCIA), Ms. Kahn must live with PCIA for the remainder of her life.

This is not a case about Ms. Kahn's hair falling out after chemotherapy. This is a case about the failure of Ms. Kahn's hair to regrow after being infused with Taxotere. Ms. Kahn was unable to learn that Taxotere causes PCIA until she was notified by a friend about legal advertisements related to Taxotere and permanent hair loss in 2016. Based upon this information, Ms. Kahn sought out counsel to investigate whether or not her hair loss may be permanent and whether or not her hair loss was caused by Taxotere.

Elizabeth Sara Kahn was born on December 2, 1957, and married Steven Seebol in March 1996. Ms. Kahn has been a school librarian since 1991, working for 12 years at the elementary level and for the past 18 years at the middle and high level. Ms. Kahn is passionate about teaching and reading. Ms. Kahn and her husband live in New Orleans, Louisiana with their Greyhound, Rae.

In April 2008, at the age of 50, Elizabeth Kahn noticed a lump in her left breast. A mammogram revealed a mass and a biopsy revealed ductal adenocarcinoma. Ms. Kahn met with New Orleans oncologist Dr. Carl Kardinal who recommended that Ms. Kahn undergo neoadjuvant chemotherapy. Ms. Kahn participated in the NSABP B-40 clinical trial. As a part of her cancer treatment, Ms. Kahn received cytotoxic chemotherapy comprised of four cycles of Taxotere followed by four cycles of AC, along with other treatments as outlined in the clinical trial protocol. Following chemotherapy, Ms. Kahn underwent a lumpectomy performed by Dr. Ralph Corsetti in December 2008. In January 2009, following her surgery, Ms. Kahn received 10 cycles of Bevacizumab (Avastin) every three weeks. Ms. Kahn received weekly radiation treatment between January 13, 2009 and February 27, 2009, and began hormone therapy treatment in April 2009. She completed hormone therapy in April of 2018.

In discussing the potential side effects that Ms. Kahn might experience as a result of her toxic chemotherapy treatment, Dr. Kardinal cautioned Ms. Kahn that her hair would fall out during the course of receiving chemotherapy, but that it would be temporary in nature. At no time did Dr. Kardinal inform Ms. Kahn that her hair would not regrow or that her hair loss could be permanent. In fact, before Ms. Kahn received her first Taxotere treatment, Dr. Kardinal's nurse, Shevonda Thomas, introduced Ms. Kahn to another patient and informed Ms. Kahn that she would have a full head of hair just as the other patient did when she finished chemotherapy.

At the time Dr. Kardinal prescribed Taxotere to Ms. Kahn, he was unaware that Taxotere carried a risk of permanent hair loss and/or PCIA. The consent form for the clinical study

8

Ms. Kahn participated in did not warn Taxotere could cause PCIA and the chemotherapy education materials she was given explained that hair loss from chemotherapy would be temporary. At the time Dr. Kardinal retired from medicine in 2012, he was not aware that Taxotere could cause PCIA.

Had Dr. Kardinal known of the risk, he would have disclosed it to Ms. Kahn. Had Ms. Kahn been advised of the risk of permanent hair loss, she would have asked for alternative treatment options. Other equally effective treatment options within NCCN guidelines and the standard of care were available to Ms. Kahn, other than Taxotere which Dr. Kardinal was willing to prescribe.

Following Ms. Kahn's Taxotere treatment, Ms. Kahn experienced a lack of full hair regrowth on her scalp as well as a failure to regrow hair on her eyebrows, eyelashes and other body parts as documented by plaintiff's expert, Dr. Tosti. Prior to being diagnosed with PCIA by Dr. Tosti, Ms. Kahn did make several inquiries upon which she relied. In April 2009, Ms. Kahn asked her gynecologist, Dr. Margaret Roberie, why her hair had not fully grown back to its full thickness following chemotherapy and Dr. Roberie told her that she was suffering from age related hair loss. Sometime in 2009 or 2010, Ms. Kahn asked her treating oncologist, Dr. Zoe Larned, when her hair would return to its original thickness, but Dr. Larned could not provide her with a specific timeframe.

**Defendants:**

Defendants deny Plaintiff's allegations. Defendants deny that Louisiana law, which applies the learned intermediary doctrine, imposes a duty on a pharmaceutical manufacturer to provide any warning directly to a patient. Defendants contend that Taxotere's warnings to Ms. Kahn's prescribing physician, Dr. Carl Kardinal, were adequate. They also contend that any alleged inadequacy in the warning did not cause Ms. Kahn's alleged injury. Further, Defendants contend that the Taxotere label was approved by the FDA and has always contained accurate, science-based information enabling doctors like Dr. Kardinal to make informed decisions about the benefits and risks of prescribing Taxotere to patients like Ms. Kahn within its approved indication.

**Uncontested Material Facts**

7) A single listing of all uncontested material facts:

   a) sanofi-aventis U.S. LLC engages in the labeling, advertising, marketing, promotion, sale and distribution of Taxotere/docetaxel.

   b) sanofi-aventis U.S. LLC and Sanofi US Services Inc. will not assert that non-party Sanofi entities (including indirect French parent entities, Sanofi S.A. and Aventis Pharma S.A.) are necessary or proper Defendants for purposes of trial.

   c) Defendants are the "manufacturer" of docetaxel administered to Ms. Kahn within the meaning of the Louisiana Products Liability Act.

   d) The terms "Taxotere" and "docetaxel" may be used interchangeably at trial.

    e) Taxotere (docetaxel) is a prescription chemotherapy drug indicated for treatment of certain cancers, including breast cancer.

    f) Taxotere was first approved by the U.S. Federal Food and Drug Administration ("FDA") for use in the United States in 1996.

    g) Taxotere was approved by FDA for use in the adjuvant treatment of early stage breast cancer in 2004.

    h) Taxotere is one of the drugs used for the adjuvant treatment of early stage breast cancer in combination regimens.

    i) Plaintiff Elizabeth Kahn is a 63-year-old resident of New Orleans, Louisiana.

    j) On April 11, 2008, Ms. Kahn was diagnosed with left breast infiltrating lobular carcinoma, Stage I, T2N0Mx, ER/PR positive, HER2 negative, classified as early stage breast cancer.

    k) Ms. Kahn's oncologist, Dr. Carl Kardinal, recommended Ms. Kahn undergo neoadjuvant chemotherapy. Ms. Kahn participated in NSABP B-40 clinical trial, and was randomized to receive three phases of chemotherapy: (1) four cycles of Taxotere, Avastin and Xeloda every three weeks; (2) two cycles Adriamycin, Cytoxan, and Avastin every three weeks, followed by two cycles of Adriamycin and Cytoxan every three weeks; and (3) ten cycles of Avastin.

    l) Taxotere, Adriamycin, and Cytoxan, are cytotoxic chemotherapies.

    m) Following her second phase of chemotherapy, Ms. Kahn underwent a lumpectomy performed by Dr. Ralph Corsetti in December 2008.

    n) Ms. Kahn received weekly radiation treatment between January 13, 2009 and February 27, 2009, and then began hormone therapy treatment in April 2009. Ms. Kahn completed hormone therapy in April of 2018.

    o) Ms. Kahn's hair began falling out sometime after her first dose of the Taxotere, Xeloda, and Avastin regimen, and prior to her second dose.

    p) Ms. Kahn took Biotin and used various hair products for her alleged permanent hair loss.

    q) Ms. Kahn is currently cancer-free.

**Contested Issues of Material Fact**

8) A single listing of the contested issues of material fact.

The inclusion of "fact" by either party in this section does not constitute an admission by the other party that the fact is material or relevant to a claim or defense in the case.

a) Whether the warning Sanofi provided to Plaintiffs' prescribing oncologist regarding the risk of PCIA was adequate under the Louisiana Products Liability Act.

b) Whether Plaintiffs' prescribing oncologist would not have prescribed Taxotere to Plaintiff if an adequate warning had been provided to Plaintiffs' prescribing oncologist.

c) Whether Plaintiff has PCIA.

d) Whether Taxotere was a substantial contributing factor in or substantially caused Plaintiff's PCIA.

e) Whether Taxotere in combination with other chemotherapy causes PCIA.

f) Whether Plaintiff has PCIA caused by Taxotere.

g) Whether Plaintiff had notice sufficient to commence the one-year prescriptive period prior to December 9, 2015 (one year prior to filing suit).

h) Whether Plaintiff acted reasonably under the circumstances and in light of her education, intelligence, the severity of the symptoms and the nature of Sanofi's conduct.

i) Whether Plaintiff is entitled to damages for her alleged injuries.

**Contested Issues of Law**

9) A single listing of the contested issues of law:

a) Whether Ms. Kahn's claims are preempted by federal law.

b) The extent to which a Plaintiff's testimony is relevant to the Court's analysis under the learned intermediary doctrine.

c) Whether Plaintiff's claims are time-barred under Louisiana law, and whether contra non valentem tolls the prescriptive period.

d) Whether Louisiana law on liberative prescription and contra non valentem requires an analysis of the reasonableness of Plaintiff's action or inaction under the circumstances and in light of her education, intelligence, the severity of the symptoms and the nature of Sanofi's conduct

e) Whether general causation is established as a matter of law pursuant to the deposition designations of Sanofi's witnesses.

11

**Exhibits**

10) The parties have agreed that the following categories of case-specific exhibits comprise the entirety of the exhibits in each category, and for these exhibits the parties agree they are true and accurate records, photographs and/or documents; any other objections to the admission of these exhibits are preserved:

   i)    Plaintiff's medical records
   ii)   Photographs of Plaintiff
   iii)  Plaintiff's employment records
   iv)   NSABP-40 clinical trial materials
   v)    Educational materials produced by Plaintiff
   vi)   Plaintiff's social media
   vii)  Plaintiff's blog and other ESI materials
   viii) Plaintiff's journal and calendars
   ix)   Plaintiff's PFS

11) The parties propose to the Court to permit the parties to utilize the same procedure regarding the remaining exhibits as done in the *Earnest* trial, and as described above. The parties have previously exchanged Exhibit Lists.  Each party will present the Court with their exhibits with an index in the format preferred by the Court by November 1, 2021.

**Deposition Testimony**

12) The parties have previously submitted all deposition designations to the Court and are awaiting the Court's rulings.

**Demonstratives**

13) A list and brief description of any charts, graphs, models, schematic diagrams, and similar objects which, although not to be offered in evidence, respective counsel intend to use in opening or closing arguments:

   a) The parties may use physical demonstratives and easels, boards, a writing pad, computer projection, monitors/screens, elmo and/or courtroom technology specialists to display (1) blowups of admissible testimony, documents, and things admitted into evidence, and (2) pre-made demonstratives that the parties will pre-disclose to each other pursuant to the agreed-upon procedure in paragraph 5(c)(vii) above. Demonstratives may be created during examination. Parties may use the court room technology to create demonstratives during testimony.

   b) Due to COVID restrictions, Plaintiff requests the ability to bring in one large TV monitor to use in lieu of physical boards during trial, opening statements and closing arguments, to be placed next to the lectern.

**Witnesses**

14) Witnesses:

   a) A list of witnesses for all parties, and an indication in good faith of those who will be called in the absence of reasonable notice to opposing counsel to the contrary are attached. Plaintiff's Witness List is labeled Appendix 1 and the Defendants' Witness List is labeled Appendix 2.  The lists include the names, addresses, and statement of the general subject matter of their testimony, as well as if the witness will appear live at trial, live via zoom or video feed, or by deposition. (It is not sufficient to designate the witness simply "fact," "medical," or "expert").

   b) Witnesses have been identified in accordance with Rule 26 Pretrial Disclosures and multiple versions of CMO, the Federal Rules of Civil Procedure and prior court orders. No other witnesses shall be allowed unless agreeable to all parties and their addition does not affect the trial date. This restriction will not apply to rebuttal witnesses or documents whose necessity cannot be reasonably anticipated.

   c) In the case of expert witnesses, counsel certifies that they have exchanged expert reports in accordance with the Federal Rules of Civil Procedure and prior court orders. Expert witnesses whose reports have not been furnished to opposing counsel shall not be permitted to testify nor shall experts be permitted to testify to opinions not included in the reports timely furnished.

   d) Except for good cause shown, the Court will not permit any witness to testify unless with respect to such witness there has been complete compliance with all provisions of the pre-trial order and prior court orders.

   e) Counsel shall not be allowed to ask questions on cross-examination of an economic expert which would require the witness to make mathematical calculations in order to frame a response unless the factual elements of such questions shall have been submitted to that expert witness not less than three full working days before trial.

**Jury Trial**

15) This is a jury case.

   a) Proposed jury instructions, special jury interrogatories, and voir dire shall be electronically filed with the Court on November 1, 2021.  The parties have provided a jointly proposed Juror Questionnaire which has been authorized by the Court. The Court will provide the parties with copies of the Juror Questionnaires received on October 26, 2021, and will meet with the parties on November 2, 2021 to discuss.

**Issues To Be Tried Together**

16) The issue of liability will not be tried separately from that of quantum.

**Other Matters That May Expedite The Proceedings**

17) There are no other matters that might expedite the disposition of the case.

**Trial Date**

18) Voir dire will begin on Monday, November 8, 2021 at 8:30 am with opening statements to follow. The Court has limited the trial to no more than ten (10) working days.

**Joint Submission**

19) This pretrial order has been formulated after conference at which counsel for the respective parties have appeared in person or via zoom. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

**Settlement**

20) Possibility of resolution of all MDL cases has been discussed.

It is understood and agreed by the parties that the purpose of this Final Pretrial Order is to provide information as requested by the Court. The parties have drafted this order with the understanding that it will not be presented or read to the jury in this case. The parties have further agreed that the inclusion of issues as uncontested, or the failure of a party to directly respond to any issue listed by the other party, is not an admission of any kind and cannot be argued or introduced against either side in support or opposition of any pretrial issue including, but not limited to, jury instructions, jury interrogatories, evidentiary objections, and/or the verdict form. The parties agree to use good faith efforts to meet all deadlines set forth in this order.

New Orleans, Louisiana, this ___ day of _____, 2021.

| | |
|---|---|
| Darin L. Schanker<br>BACHUS & SCHANKER, LLC<br>101 W Colfax Ave, Suite 650<br>Denver, CO 80202<br>Phone: (303) 893-9800<br>Fax: (303) 893-9900<br>dschanker@coloradolaw.net<br><br>*Trial Counsel for the PSC* | David F. Miceli<br>David F. Miceli, LLC<br>P.O. Box 2519<br>Carrollton, GA 30112<br>Phone: (404) 915-8886<br>dmiceli@miceli-law.com<br><br>*Trial Counsel for the PSC* |

| | |
|---|---|
| Karen Barth Menzies<br>GIBBS LAW GROUP LLP<br>6701 Center Drive West, Suite 1400<br>Los Angeles, California 90045<br>Telephone: 510-350-9700<br>Facsimile: 510-350-9701<br>kbm@classlawgroup.com<br><br>*Plaintiffs' Co-Lead Counsel and Trial Counsel for the PSC* | Christopher L. Coffin (#27902)<br>PENDLEY, BAUDIN & COFFIN, L.L.P.<br>1100 Poydras Street, Suite 2505<br>New Orleans, Louisiana 70163<br>Phone: (504) 355-0086<br>Fax: (504) 355-0089<br>ccoffin@pbclawfirm.com<br><br>*Plaintiffs' Co-Lead Counsel and Counsel for Plaintiff, Elizabeth Kahn* |
| J. Kyle Bachus<br>BACHUS & SCHANKER, LLC<br>101 W Colfax Ave, Suite 650<br>Denver, CO 80202<br>Phone: (303) 893-9800<br>Fax: (303) 893-9900<br>kyle.bachus@coloradolaw.net<br><br>*Trial Counsel for the PSC* | Zachary L. Wool (#32778)<br>BARRIOS, KINGSDORF & CASTEIX, LLP<br>701 Poydras Street, Suite 3650<br>New Orleans, LA 70139<br>Phone: 504-524-3300<br>Fax: 504-524-3313<br>zwool@bkc-law.com<br><br>*Trial Counsel for the PSC* |
| Jessica Perez Reynolds (#34024)<br>Pendley, Baudin & Coffin<br>P.O. Drawer 71<br>24110 Eden Street<br>Plaquemine, LA 70765<br>Phone: (225) 687-6396<br>Fax: (225) 687-6398<br>jperez@pbclawfirm.com<br><br>*Trial Counsel for the PSC* | Andre M. Mura<br>Gibbs Law Group LLP<br>505 14th Street Suite 1110<br>Oakland, CA 94612<br>Phone: (510) 350-9717<br>Fax: (510) 350-9701<br>amm@classlawgroup.com<br><br>*Trial Counsel for the PSC* |
| M. Palmer Lambert (#33228)<br>GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC<br>2800 Energy Centre, 1100 Poydras Street<br>New Orleans, LA 70163-2800<br>Phone: 504-522-2304<br>Fax: 504-528-9973<br>plambert@gainsben.com<br><br>*Plaintiffs' Co-Liaison Counsel and Trial Counsel for the PSC* | Dawn M. Barrios (#2821)<br>BARRIOS, KINGSDORF & CASTEIX, LLP<br>701 Poydras Street, Suite 3650<br>New Orleans, LA 70139<br>Phone: 504-524-3300<br>Fax: 504-524-3313<br>barrios@bkc-law.com<br><br>*Plaintiffs' Co-Liaison Counsel and Trial Counsel for the PSC* |

And

*/s/Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Jon Strongman
Harley Ratliff
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
jstrongman@shb.com
hratliff@shb.com

Hildy Sastre
**SHOOK, HARDY & BACON L.L.P.**
201 S. Biscayne Blvd., Suite 3200
Miami, Florida 33131
Telephone: 305-358-5171
Facsimile: 305-358-7470
hsastre@shb.com

**Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.**