<pre>
 1                  UNITED STATES DISTRICT COURT

 2                  EASTERN DISTRICT OF LOUISIANA

 3
        ******************************************************************
 4
        IN RE:   TAXOTERE
 5      (DOCETAXEL) PRODUCTS
        LIABILITY LITIGATION
 6
                                 CIVIL ACTION NO. 16-MD-2740 "H"
 7                               NEW ORLEANS, LOUISIANA
                                 TUESDAY, NOVEMBER 2, 2021, 1:00 P.M.
 8
        THIS CASE RELATES TO
 9      ELIZABETH KAHN,
        CASE NO. 16-CV-17039
10
        ******************************************************************
11

12          TRANSCRIPT OF JURY POOL STATUS CONFERENCE PROCEEDINGS
              HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
13                    UNITED STATES DISTRICT JUDGE

14

15      APPEARANCES:

16

17      FOR THE PLAINTIFFS:        GAINSBURGH BENJAMIN DAVID
                                   MEUNIER & WARSHAUER
18                                 BY:  M. PALMER LAMBERT, ESQ.
                                   1100 POYDRAS STREET, SUITE 2800
19                                 NEW ORLEANS, LOUISIANA 70163

20
                                   BACHUS SCHANKER
21                                 BY:  DARIN L. SCHANKER, ESQ.
                                   101 W COLFAX AVE, SUITE 650
22                                 DENVER, CO 80202

23

24                                 MARTZELL BICKFORD & CENTOLA
                                   BY:  LAWRENCE J. CENTOLA, ESQ.
25                                 338 LAFAYETTE STREET
                                   NEW ORLEANS, LOUISIANA 70130
</pre>

12:59:16

*OFFICIAL TRANSCRIPT*

```
 1    APPEARANCES CONTINUED:

 2

 3    FOR SANOFI-AVENTIS U.S.,
      LLC AND SANOFI US
 4    SERVICES, INC.:            IRWIN FRITCHIE URQUHART & MOORE
                                 BY:  DOUGLAS J. MOORE, ESQ.
 5                               400 POYDRAS STREET, SUITE 2700
                                 NEW ORLEANS, LOUISIANA 70130
 6

 7
                                 SHOOK, HARDY & BACON
 8                               BY:  HARLEY V. RATLIFF, ESQ.
                                      JON A. STRONGMAN, ESQ.
 9                               2555 GRAND BOULEVARD
                                 KANSAS CITY, MISSOURI 64108.
10

11
                                 SHOOK HARDY & BACON, LLP
12                               BY:  HILDY M. SASTRE, ESQ.
                                 201 BISCAYNE BOULEVARD
13                               SUITE 3200
                                 MIAMI, FLORIDA 33131.
14

15    FOR HOSPIRA, INC.,
16    HOSPIRA WORLDWIDE, LLC,
      FORMERLY DOING BUSINESS
17    AS HOSPIRA WORLDWIDE,
      INC., AND PFIZER INC.:     CHAFFE MCCALL
18                               BY:  AMY L. MCINTIRE, ESQ.
                                 2300 ENERGY CENTRE
19                               1100 POYDRAS STREET
                                 NEW ORLEANS, LOUISIANA 70163
20

21
      OFFICIAL COURT REPORTER:   CATHY PEPPER, CRR, RMR, CCR
22                               500 POYDRAS STREET, ROOM B-275
                                 NEW ORLEANS, LOUISIANA 70130
23                               (504) 589-7779
                                 Cathy_Pepper@laed.uscourts.gov
24

25    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.   TRANSCRIPT
      PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.
```

*OFFICIAL TRANSCRIPT*

1                       **P-R-O-C-E-E-D-I-N-G-S**

2                   TUESDAY, NOVEMBER 2, 2021

3                        (IN CHAMBERS)

4

5

6           THE COURT:  Okay.  The first one is Rebecca Abel.

7    Okay.  She's from Hammond.  Are there any objections to

8    Ms. Abel?

9           MR. SCHANKER:  Not from plaintiff, Your Honor.

10          MS. SASTRE:  Nothing from us either.  No hardship was

11   raised.

12          THE COURT:  Thank you.

13             Mr. Allen.  Terrell Allen from New Orleans.

14          MR. CENTOLA:  Not from plaintiff.

15          MS. SASTRE:  If I may, Your Honor.  So the next -- the

16   next name I have is Alexander but I see that Ms. Alexander is

17   not on the list that you just provided.  What does that mean?

18          THE COURT:  That means that she was excused either by

19   me or Jury.  And what happens, as you recall, they came in

20   initially, filled out the paperwork and then it was bumped, and

21   then it could have been my family has got a vacation or

22   something has occurred so it's been an excuse raised and

23   handled by the Court.

24          MS. SASTRE:  Understood.

25             Mr. Allen.  Plaintiffs?

                       ***OFFICIAL TRANSCRIPT***

01:06:39 1        MR. CENTOLA:  Not from plaintiffs.

01:06:40 2        MS. SASTRE:  Okay.  Yes, Your Honor.  With Mr. Allen,

01:06:41 3   he's raised a number of issues that are really set forth on

01:06:45 4   questions 80 and 82, Your Honor.  To orient you, that is on

01:06:49 5   page 20.

01:06:53 6              Question 80 is:  The trial of this case will be

01:06:57 7   August 23rd and may take two weeks.  Any reason why you would

01:07:01 8   suffer serious hardship if selected?  He said:  I don't think

01:07:03 9   this for me.

01:07:04 10             Then in 82, Your Honor, it says:  Is there any

01:07:07 11  reason you could not serve as with juror?  He also checked off

01:07:10 12  "yes" and he says:  I don't feel that this is my place.

01:07:14 13             So we felt with both of those responses,

01:07:18 14  Your Honor, I think we probably know where things like this are

01:07:26 15  heading.  We've seen things like this before.  We think he

01:07:29 16  ought to be excused.

01:07:31 17        THE COURT:  It's really --

01:07:34 18        MR. CENTOLA:  Judge, if I may, there are a couple of

01:07:35 19  people that obviously don't want to be here by their responses

01:07:38 20  to their -- to their jury questionnaire.  Our position is that

01:07:43 21  those people should be called in and get a better idea because

01:07:46 22  their answers don't really leap off the page as to why they

01:07:50 23  shouldn't be here, and not everybody wants to be here.  We

01:07:54 24  understand that, but that doesn't mean it's necessarily a

01:07:57 25  hardship or for cause.

*OFFICIAL TRANSCRIPT*

01:07:58  1        THE COURT:  I think this one is very difficult.  It's

01:08:00  2   not like he has expressed a firm opinion about the facts of

01:08:04  3   this case, the parties associated with this case.  I hate or

01:08:08  4   love or this or that sort of thing.  "I don't think this is for

01:08:11  5   me."  Well, I think that might be just -- "I don't feel like

01:08:18  6   this is for me," but that doesn't mean it's true.  We'll let it

01:08:24  7   go there.

01:08:24  8            Mr. Allnet.  Is there any objection from the

01:08:37  9   plaintiff?

01:08:38 10        MR. CENTOLA:  No, Judge.

01:08:41 11        THE COURT:  Okay.  You said no.  I thought you said

01:08:43 12   yes.

01:08:50 13        MS. SASTRE:  Well, I just point out, Your Honor, there

01:08:53 14   are some references, if you to go questions 80, 81, 82, 83,

01:08:59 15   perhaps it's a little unclear.  I know, Your Honor, once we get

01:09:03 16   through a few of things how Your Honor feels, so things will

01:09:06 17   move more quickly.

01:09:08 18            Mr. Allnet, on 80, says he's the only one in his

01:09:16 19   house making money so he's nervous.  Says he's on anxiety

01:09:18 20   medication.  Might affect his ability to serve on 81.  And says

01:09:24 21   he's scared financially in response to 82.  Not sure what to

01:09:32 22   make of 85.  There was unusual -- some life experience he's had

01:09:37 23   that made him have anxiety.  How he views the evidence -- he

01:09:37 24   said just be more careful, but I think it would be just really

01:09:42 25   those first series of questions I wanted to point out to the

*OFFICIAL TRANSCRIPT*

01:09:45 1  Court.

01:09:46 2          THE COURT:  What does he do?

01:09:47 3          MS. SASTRE:  This gentleman, he works in maintenance at

01:09:50 4  a fitness club, Your Honor.

01:09:57 5          MR. CENTOLA:  Judge, from the plaintiffs' standpoint

01:09:59 6  there is a lot of people that noted in their questionnaire

01:10:03 7  about it being financially difficult, and we take the position

01:10:09 8  that those people may be off, they may not be, but by just

01:10:14 9  what's reading on the page, it's difficult to find out what is

01:10:17 10 really their financial hardship, financial difficulty.

01:10:20 11          So we take the position that it would be -- we

01:10:25 12 would be shrinking the jury pool significantly to get rid of

01:10:29 13 everybody that says it was a possible financial hardship, and

01:10:31 14 we don't want to have a jury venire of all unemployed people

01:10:35 15 and all rich people, so our position is that financial hardship

01:10:38 16 is not enough based on the questionnaire.  We'll have to bring

01:10:42 17 those people in and speak with them.

01:10:43 18          MS. SASTRE:  That's fine, Your Honor.  You know, as

01:10:47 19 long as when we go through, that's what plaintiffs' position

01:10:50 20 is, then so be it.  I understand that.

01:10:53 21          THE COURT:  I think it's fair enough because I get a

01:10:55 22 lot of that, that it's too difficult for me to miss two weeks

01:11:01 23 of work.  Then you just have to really delve into that during

01:11:07 24 voir dire, I think, to determine.  And what I think is going to

01:11:10 25 happen, of course, I'm going to ask if anybody has got a

**OFFICIAL TRANSCRIPT**

01:11:14 1  significant hardship, and then we can handle those prior to

01:11:16 2  your 15 minutes of voir dire, but it's very difficult.

01:11:20 3              Now, some people that have been excused, it was

01:11:22 4  because of financial hardship, but they took the time to write

01:11:26 5  very extensive letters to explain exactly why they were not

01:11:31 6  able to but it's difficult.

01:11:35 7              MS. SASTRE:  Understood.

01:11:37 8              THE COURT:  All right.  So, now we are on

01:11:41 9  Ms. Maria Andrade.

01:11:44 10             Any objection?

01:11:46 11             MR. CENTOLA:  No, Judge.

01:11:50 12             THE COURT:  Any objection?

01:11:51 13             MS. SASTRE:  No, Your Honor.

01:11:54 14             THE COURT:  Karen Dannette Andry.

01:11:59 15             MR. CENTOLA:  Not from plaintiff.

01:12:00 16             MS. SASTRE:  No, Your Honor.

01:12:01 17             THE COURT:  Austin Autin.

01:12:09 18             MS. SASTRE:  From Napoleonville, Your Honor.

01:12:19 19             THE COURT:  I don't know him.

01:12:19 20             MS. SASTRE:  Born in Thibodaux.

01:12:23 21             THE COURT:  Born in Thibodaux.  Lives in Napoleonville.

01:12:25 22             MR. CENTOLA:  Not from plaintiffs.

01:12:27 23             MS. SASTRE:  Holy Cross Church.  Is that the Holy Cross

01:12:31 24  Church, Your Honor?  Does that mean anything, Your Honor?

01:12:35 25             Nothing from the defendant on Mr. Autin,

*OFFICIAL TRANSCRIPT*

01:12:40 1    Your Honor.

01:12:40 2              THE COURT:  Oh-tah.

01:12:57 3              MS. SASTRE:  Oh-tan?  Say it again.

01:12:57 4              THE COURT:  Oh-tah.  You keep adding an N.

01:12:57 5              MS. SASTRE:  I'm going to practice later.  Thank you.

01:13:10 6              THE COURT:  When you say Mr. Autin, he's going to say

01:13:14 7    who are you talking to?

01:13:15 8                    Robert Bearden.  Wait.  No, I have,

01:13:19 9    Robert Bearden.

01:13:21 10             MR. MOORE:  Is that a new one?

01:13:28 11             THE COURT:  Born in Michigan.  Lives in Madisonville.

01:13:31 12             MR. CENTOLA:  Not from plaintiff.

01:13:33 13             MS. SASTRE:  Not from the defendant.

01:13:35 14             THE COURT:  Gilberto Becho.  That's another

01:13:39 15   Napoleonville.  I don't know where that is.

01:13:42 16             MR. CENTOLA:  Not from plaintiff.

01:13:46 17             MS. SASTRE:  Could I have just one second, Your Honor?

01:13:54 18                    Nothing.  Nothing from defendant.  No objection.

01:13:59 19             THE COURT:  Sherman Berry.

01:14:09 20             MS. SASTRE:  Have we missed Bell?

01:14:11 21             MR. MOORE:  Bell is, I think, one of the 14 who

01:14:16 22   disappeared.  So Bell has been excused.

01:14:18 23             MS. SASTRE:  Bell is excused.

01:14:20 24             THE COURT:  Sherman Berry.

01:14:21 25             MR. MOORE:  This would be --

*OFFICIAL TRANSCRIPT*

01:14:33 1            MS. SASTRE:  Cora Bergeron.

01:14:35 2            MR. MOORE:  Sherman Berry is still on from Hammond?

01:14:38 3            THE COURT:  Yes.

01:14:39 4            MS. SASTRE:  I see what you're talking about.

01:14:41 5            THE COURT:  That's the next one.  Mr. Berry.

01:14:43 6            MR. MOORE:  This would be more of a cause issue, I

01:14:46 7 think, with Mr. Berry.

01:14:55 8            THE COURT:  Okay.

01:14:55 9            MS. SASTRE:  So Mr. Berry.  So, Your Honor, this

01:14:56 10 gentleman says on question 64 -- let me look at his

01:15:00 11 questionnaire.  64, he says -- the question is:  Have you seen

01:15:07 12 or -- have you heard, seen, or read anything about or had any

01:15:11 13 experience with the following drugs:  Taxol, Adriamycin,

01:15:15 14 Cytoxan, Taxotere, Tamoxifen?  If yes, please describe which

01:15:20 15 drug and what you have heard, read, or experienced.

01:15:23 16            He underlined Taxotere and checked off "yes" and

01:15:26 17 said:  Side effects, mental illness.

01:15:28 18            Now, he also indicated on the page prior,

01:15:31 19 Your Honor, question 58:  Has anyone close to you ever been

01:15:36 20 diagnosed with cancer?  He indicated his wife.  He said:  She's

01:15:39 21 been 16 years cancer free, had surgery, radiation, and

01:15:43 22 chemotherapy.

01:15:43 23            Also said on question 60 that he she lost her

01:15:46 24 hair.

01:15:46 25            And then on page 66, yeah, which is:  Has anyone

*OFFICIAL TRANSCRIPT*

01:15:55  1    close to you experienced temporary or permanent hair loss?  His

01:15:58  2    wife.  He says:  Yes, both, loss of hair, medication.

01:16:01  3              Remember, he just said on the prior occasion that

01:16:05  4    her hair has not come back and that she had cancer 16 years

01:16:08  5    ago.

01:16:08  6              And then again on 67 he says, Your Honor:  Have

01:16:12  7    you ever been warned of the risk of hair loss on medical

01:16:13  8    treatment?  He says:  Loss of hair loss (verbatim) from chemo.

01:16:18  9    Hair hasn't fully come back.

01:16:20 10              So for those reasons, Your Honor, we would ask

01:16:22 11    that Mr. Berry be stricken for cause.  Not only has he

01:16:27 12    predetermined that Taxotere, in fact, causes permanent

01:16:33 13    chemotherapy-induced alopecia, he has stated on a number of

01:16:35 14    occasions that it, in fact, caused it to his wife, and he

01:16:40 15    identified Taxotere.

01:16:41 16              And then finally, Your Honor, he has also said

01:16:43 17    that be he believes Taxotere -- a side effect is mental

01:16:46 18    illness, so we think for those reasons that he would not be an

01:16:49 19    appropriate juror.

01:16:50 20         MR. CENTOLA:  We would just like to bring him in.  I

01:16:55 21    understand what they are saying.  I don't see that that juror

01:16:57 22    cannot be fair.  Taxotere mental illness doesn't -- I don't

01:17:05 23    know that the questionnaire relates the hair loss and mental

01:17:08 24    illness as it reads.

01:17:10 25              Maybe it's an interpretation of the

                                    *OFFICIAL TRANSCRIPT*

01:17:14 1   questionnaire.  Maybe it's misunderstanding by the individual

01:17:18 2   filling out the questionnaire.  We understand their argument.

01:17:21 3   We just think that that person should be brought in and explore

01:17:25 4   this issue a little bit more in person.

01:17:28 5        THE COURT:  I mean, I'm looking at question --

01:17:31 6   certainly it's his wife, and it said:  Have you heard, seen, or

01:17:36 7   read anything or had any experience with the following drugs to

01:17:40 8   treat breast cancer.  And he underlines Taxotere.

01:17:47 9           Side effects -- is that a period?  Mental

01:17:49 10  illness.  I'm not sure what that means.  But have you --

01:17:55 11  temporary or permanent hair loss, yes, both.  Hair, medication.

01:17:59 12  Medication is Taxotere.

01:18:01 13          I wonder if she's a plaintiff?  Have you ever

01:18:06 14  been warned about the risk?  Yes.  He was warned -- she was

01:18:09 15  warned about the risks.  Loss of hair from chemo.  Hair hasn't

01:18:16 16  come back fully.

01:18:17 17       MS. SASTRE:  The fact that he's described it as

01:18:20 18  *permanent*.  His wife.  He has identified Taxotere.  It's just

01:18:23 19  too much, Your Honor.

01:18:25 20       MR. CENTOLA:  Understood.

01:18:26 21       THE COURT:  I'm going to excuse Mr. Berry.

01:18:33 22          Okay.  I have the next one.  Then I go to

01:18:44 23  Cornelius Cardall Biagas.  Or Cornelius Biagas.  I'm sorry.

01:18:59 24  And he is in New Orleans.

01:19:01 25          Any objection from the plaintiff?

*OFFICIAL TRANSCRIPT*

01:19:02 1          MR. CENTOLA:  None from plaintiff.

01:19:04 2          MS. SASTRE:  Not from defendant.

01:19:08 3          THE COURT:  Timothy Biedenkopf.

01:19:12 4              From the plaintiff?

01:19:16 5          MR. CENTOLA:  None from plaintiff, Judge.

01:19:18 6          MS. SASTRE:  No, Your Honor.

01:19:20 7          THE COURT:  Thank you.

01:19:20 8              Kraymira Blanke.

01:19:28 9              Anything from the plaintiff?

01:19:30 10         MR. CENTOLA:  None from plaintiff.

01:19:31 11         MS. SASTRE:  No, ma'am.

01:19:33 12         THE COURT:  Thank you.

01:19:33 13             Michael Borden.

01:19:39 14         MR. CENTOLA:  None from plaintiff, Judge.

01:19:56 15         MS. SASTRE:  Nothing from defendant, Your Honor.

01:19:58 16         THE COURT:  Thank you.

01:19:59 17             Macy Borne.

01:20:07 18             Anything from plaintiff?

01:20:08 19         MR. CENTOLA:  No, Judge.

01:20:10 20         THE COURT:  Defendant?

01:20:14 21         MS. SASTRE:  So, Ms. Borne, if you look at questions 81

01:20:19 22    and 82, Your Honor, she does talk about anxiety in long

01:20:24 23    (verbatim) groups.

01:20:24 24             And then 82, she says:  No transportation.  Does

01:20:28 25    not drive.

*OFFICIAL  TRANSCRIPT*

01:20:32  1           So we just wanted to point those out to the

01:20:35  2  Court.  I mean, if she --

01:20:46  3        THE COURT:  I would tell you at Number 81 she says:

01:20:51  4  Doctor wouldn't give me a note, so I wonder.  And then let's

01:20:58  5  just get her in here and see.  We might pick up a couple of

01:21:04  6  people from down the bayou and she might be able to catch a

01:21:08  7  ride.

01:21:09  8         John Braswell.

01:21:12  9      MR. CENTOLA:  None from plaintiff.

01:21:16 10      MS. SASTRE:  No, Your Honor.

01:21:18 11      THE COURT:  Haley Brister.

01:21:25 12      MR. CENTOLA:  None from plaintiff.

01:21:38 13      MS. SASTRE:  No objection, Your Honor.

01:21:40 14      THE COURT:  Patrick Burleigh.

01:21:51 15      MR. CENTOLA:  None from plaintiff.

01:21:53 16      MS. SASTRE:  None from defendant.

01:21:54 17      THE COURT:  Thank you.

01:21:56 18        Jonathan Butler.

01:22:00 19      MR. CENTOLA:  None from plaintiff.

01:22:02 20         This does bring up an issue on who knows

01:22:07 21  Dr. Collier Ochsner.  There was a number of jurors -- potential

01:22:12 22  jurors that have noted that they know Dr. Collier Ochsner.

01:22:16 23        I think Dr. Ochsner is a treating dermatologist

01:22:20 24  from the plaintiff and I think one of the jurors said that

01:22:24 25  Dr. Ochsner was her treating dermatologist.

*OFFICIAL TRANSCRIPT*

01:22:26  1                  The plaintiffs take the position that that they

01:22:31  2  knew -- if the potential juror knows one of the treating

01:22:36  3  physicians that that potential juror should be excused.  That's

01:22:38  4  our position.  I don't know how the defense states that.

01:22:42  5          MS. SASTRE:  Are you on Jorian Butler?

01:22:46  6          MR. CENTOLA:  No, Jon Butler.

01:22:49  7          THE COURT:  Dr. Ochsner is his?

01:22:51  8          MR. CENTOLA:  He says he knows Dr. Ochsner.  There is

01:22:53  9  another person in the venire that says Dr. Ochsner is their

01:22:57 10  treating physician.

01:22:58 11          MS. SASTRE:  So Jorian Butler has been excused?  He's

01:23:01 12  not on the list.  He's been excused?

01:23:06 13          MR. SCHANKER:  We haven't gotten to Jorian.

01:23:09 14          MS. SASTRE:  Sorry.  One second.

01:23:17 15          THE COURT:  What page is that?  Do you know?

01:23:20 16          MR. MOORE:  Is it just one of the doctors that are

01:23:22 17  checked?

01:23:23 18          MS. SASTRE:  Yeah.  Let's see.  Okay.  Yes, Your Honor,

01:23:28 19  if you look at page 23, it's just a box that's checked.  Yeah.

01:23:36 20  I think in the absence of additional information, Your Honor,

01:23:40 21  maybe it may be absolutely meaningless.

01:23:44 22          THE COURT:  Let's find out.  It could be anything.

01:23:47 23          MR. CENTOLA:  Understood.

01:23:50 24          THE COURT:  Let's just wait on that.

01:24:01 25              Jorian Butler.

                              *OFFICIAL TRANSCRIPT*

01:24:03  1      MR. CENTOLA:  No objection.

01:24:04  2      MS. SASTRE:  The only thing we saw, Your Honor, for

01:24:06  3  Mr. Butler.  Yes.  He indicates he's a student.

01:24:12  4          And again, I just want to know how the Court

01:24:15  5  plans on handling students.  He's 19 years old, and on page 3

01:24:22  6  he does check off *student*.  There is a number of them as we go

01:24:26  7  through the list, Judge.

01:24:27  8      THE COURT:  I think I need -- I need to know where he's

01:24:30  9  a student and what the classes look like.  We've had some

01:24:34  10  people that are taking online classes that have been able to

01:24:37  11  sit.  Some people that are actually missing classroom time that

01:24:42  12  I certainly will excuse, but I think we need to just determine,

01:24:47  13  you know, what his situation is.

01:24:58  14          Linda Carter.

01:25:00  15      MR. CENTOLA:  Nothing from plaintiff.

01:25:02  16      MS. SASTRE:  Not from the defendant.

01:25:04  17      THE COURT:  Okay.  Oliver Celestin.

01:25:08  18      MR. CENTOLA:  Nothing from plaintiff.

01:25:16  19      MS. SASTRE:  Nothing from defendant.

01:25:18  20      THE COURT:  Okay.  Crystal Clark.

01:25:25  21      MR. CENTOLA:  Nothing from plaintiff.

01:25:27  22      MS. SASTRE:  Nothing from defendant.

01:25:34  23      THE COURT:  Crystal Collins.

01:25:39  24      MR. CENTOLA:  Nothing from the plaintiff.

01:25:40  25      MS. SASTRE:  Nothing from the defendant.

*OFFICIAL TRANSCRIPT*

01:25:48  1          THE COURT:  Liem Dao.

01:25:51  2          MR. CENTOLA:  Nothing from the plaintiff.

01:25:53  3          MS. SASTRE:  Nothing.

01:25:55  4          THE COURT:  Dwayne Dufauchard.

01:26:01  5          MR. CENTOLA:  Nothing.  Nothing from plaintiff.

01:26:08  6          MS. SASTRE:  Nothing from defendant.

01:26:11  7          THE COURT:  Thank you.

01:26:11  8              Warren Edmond.

01:26:13  9          MR. CENTOLA:  Nothing from plaintiff.

01:26:17 10          MS. SASTRE:  No.

01:26:19 11          THE COURT:  Shauna Ewens.

01:26:22 12          MR. CENTOLA:  Nothing from plaintiff.

01:26:26 13          MS. SASTRE:  Nothing from defendant.

01:26:28 14          THE COURT:  Terry Farmer.

01:26:33 15          MR. CENTOLA:  Nothing from plaintiff.

01:26:39 16          MS. SASTRE:  Nothing from defendant.

01:26:42 17          THE COURT:  Sharon Fleetwood.

01:26:44 18          MR. CENTOLA:  Nothing from plaintiff.

01:26:46 19          MS. SASTRE:  Nothing from defendant.

01:26:50 20          THE COURT:  Barry Goubler.

01:27:00 21          MR. CENTOLA:  Nothing from plaintiff.

01:27:03 22          MS. SASTRE:  Mr. Goubler.  Yes, Judge.  So for

01:27:22 23  Mr. Goubler, Barry Goubler, a number of issues, Your Honor,

01:27:27 24  starting first with hardship and I understand Your Honor's

01:27:31 25  prior comments.

*OFFICIAL  TRANSCRIPT*

01:27:31  1           Question 80 says:  He can't afford a loss of pay

01:27:36  2   and he helps his mother.

01:27:38  3           On 81, Your Honor:  Are there any physical

01:27:41  4   ailments or other issues that would prevent you from serving or

01:27:44  5   staying focused?  He says:  Irregular heartbeat and he says

01:27:48  6   he's not getting a cardiogram until October.

01:27:50  7           In 82, Judge, the gentleman indicated:  Do you

01:27:56  8   believe that there is a reason you should not and cannot serve?

01:28:01  9   He said:  I may be potentially biased.

01:28:04 10           And then on 85:  Do you have experiences that may

01:28:10 11   impact how you view the evidence?  He says:  Friends and

01:28:12 12   relatives who have become addicted to prescription drugs.  He

01:28:17 13   also stated -- he wrote out that he blames the FDA for the

01:28:20 14   Oxycontin epidemic.

01:28:23 15           And then just for the sake of completeness, he

01:28:26 16   did also indicate that he knows Collier Ochsner.

01:28:31 17       THE COURT:  I did see that he --

01:28:32 18       MR. CENTOLA:  We have no objection if you -- he wants

01:28:35 19   to be dismissed.

01:28:39 20       THE COURT:  By joint agreement.

01:28:45 21           Aubrey Gros.

01:28:53 22       MR. CENTOLA:  Not from the plaintiff.

01:28:54 23       MS. SASTRE:  Nothing from defendant.

01:28:57 24       THE COURT:  Barbara Guidry?

01:29:03 25       MR. CENTOLA:  Nothing from plaintiff.

**OFFICIAL TRANSCRIPT**

01:29:04 1          MS. SASTRE:  Yes, Your Honor.  Ms. Guidry.  Ms. Guidry
01:29:11 2     is 68 years old from Marrero.  I'm certain that means more to
01:29:18 3     you than me, Your Honor.  And she did say, I mention that
01:29:20 4     because she said she does not like coming into the city.  She
01:29:25 5     says that she is scared to park and walk to court.
01:29:28 6               She also said, in response to question 82,
01:29:30 7     Your Honor, that she has trouble retaining important
01:29:34 8     information for long.
01:29:36 9               And then on question 85, she also indicated that
01:29:40 10    her husband may need some assistance.
01:29:47 11              So, primarily, Your Honor, I would say again, you
01:29:50 12    know, in response to question 81 or 82, both asking:  Is there
01:29:55 13    some reason why you cannot serve, she's identified some issues
01:30:00 14    with regard to parking and just a woman of her age, I guess,
01:30:03 15    being scared about coming into the city.  We've seen that in a
01:30:07 16    few of these.  So, yes.
01:30:10 17         THE COURT:  Marrero is not that far.  I mean, Marrero
01:30:13 18    is across the river.  She's been into the city.  Now, she might
01:30:24 19    not like it but she can make it here for the trial.
01:30:26 20         MS. SASTRE:  That may be something I can argue with you
01:30:30 21    about that, Judge, but I would point out her answer -- and we
01:30:33 22    do see this a few times, Your Honor -- but she did specifically
01:30:37 23    state:  I have trouble retaining important information, and
01:30:42 24    hearing something like that, candidly, should be a concern to
01:30:45 25    both sides.

                              *OFFICIAL TRANSCRIPT*

01:30:48  1          MR. SCHANKER:  I do, too.

01:30:51  2          MS. SASTRE:  I really do mean that, Your Honor.

01:30:53  3          THE COURT:  I know you do and I know you say that

01:30:56  4     sincerely.

01:30:56  5          MS. SASTRE:  Yes.

01:30:57  6          THE COURT:  I think we need to see what she's like and

01:31:02  7     have an opportunity to assess her.  Maybe she didn't do really

01:31:09  8     well in school and that may be what this is really about.  I

01:31:14  9     had difficulty, but I am always amazed that people that don't

01:31:18 10     take a note really know exactly what's going on during the

01:31:22 11     course of a trial and they do it because they are able to

01:31:24 12     assess credibility, and they listen and they've learned to

01:31:30 13     retain.

01:31:31 14          So I think she can make the trip across the river

01:31:34 15     and then we'll just make an assessment at that time but I

01:31:39 16     understand your concerns.

01:31:39 17          Michael Harms.

01:31:43 18          MR. CENTOLA:  Even though he thinks this seems like a

01:31:48 19     frivolous lawsuit, we still think he needs to come in and we

01:31:52 20     need to talk to him.  We're on the side of let's bring

01:31:55 21     everybody in and figure out if they're biased or not.

01:31:58 22          MS. SASTRE:  No objection.

01:31:59 23          THE COURT:  Mr. Harms.

01:32:02 24          MR. CENTOLA:  He'll eventually be gone but we need to

01:32:08 25     bring him in.

                        *OFFICIAL  TRANSCRIPT*

01:32:08  1          MS. SASTRE:  I like the confidence.

01:32:10  2          THE COURT:  Clinton Hayne.

01:32:13  3          MR. CENTOLA:  It's Peck Hayne, Judge.  I know Peck

01:32:16  4   personally.  I serve on the committee of the Bar admissions

01:32:18  5   with him.  Peck represents Purdue Pharma.

01:32:22  6               In the light of fact that he represents

01:32:24  7   Purdue Pharma and that he's known in the legal community, we

01:32:30  8   would -- Mr. Hayne is a very nice gentleman -- would not be

01:32:37  9   suited to serve in this particular jury trial.

01:32:41 10          MS. SASTRE:  Well, Your Honor, I guess I feel like I

01:32:44 11   need to hear more about it, too.  Just like folks who know the

01:32:50 12   potential witness, I understand that this gentleman is a lawyer

01:32:52 13   but that's not a basis to exclude him and neither is the fact

01:32:57 14   that he represents a completely different and distinct

01:33:00 15   pharmaceutical company.  I don't think it's enough to --

01:33:01 16          MR. CENTOLA:  I would argue that it is enough if you

01:33:04 17   represent pharmaceutical companies.  It's not enough that

01:33:07 18   you're a lawyer.  If you're a defense lawyer representing

01:33:12 19   pharmaceutical companies in similar product liability

01:33:15 20   litigation, that is, in fact, enough to exhibit bias, and

01:33:18 21   you -- whether you're a lawyer and think that you can be fair

01:33:21 22   when your client pays you to defend similar type of cases, that

01:33:29 23   Mr. Hayne would not be the right juror for this case.

01:33:32 24          MR. MOORE:  Purdue Pharma is just opioids.  I represent

01:33:37 25   J & J and I've seen other lawyers from Gordon Arata out of

**OFFICIAL TRANSCRIPT**

01:33:41 1  their Lafayette office but I haven't seen -- I don't know him.

01:33:46 2  I haven't seen him.

01:33:47 3          THE COURT:  He is probably not going to survive much

01:33:55 4  questioning if you know him, if you sit on the Bar admission

01:33:59 5  with him.  Let's bring him in.  My guess is he's probably -- if

01:34:05 6  he has -- yeah, my law firm represents Purdue Pharma as local

01:34:11 7  counsel, he will probably not survive but I don't know that.

01:34:11 8          MR. CENTOLA:  Understood.

01:34:14 9          THE COURT:  That would be like every plaintiff's lawyer

01:34:18 10 could never sit in a personal injury case because you can

01:34:21 11 say -- you know, we'll just have to wait and see.

01:34:26 12              Louis Heintz.

01:34:29 13         MR. CENTOLA:  None from us, Judge.

01:34:35 14         MS. SASTRE:  No objection.

01:34:37 15         THE COURT:  Lisa Hingle.

01:34:40 16         MR. CENTOLA:  Not from us, Judge.

01:34:42 17         MS. SASTRE:  No objection.

01:34:43 18         THE COURT:  Amber Hurst.

01:34:47 19         MR. CENTOLA:  None from plaintiff.

01:34:49 20         MS. SASTRE:  No objection.

01:34:51 21         THE COURT:  Albert Leaber.

01:35:01 22         MR. CENTOLA:  Mr. Leaber is an accountant, forensic

01:35:04 23 accountant at Kushner LaGraize.  Chris Coffin has used him as

01:35:11 24 an expert.  He knows Chris Coffin.  Chris Coffin is -- not only

01:35:20 25 are Kushner LaGraize Mr. Coffin's accountants but he's also

*OFFICIAL TRANSCRIPT*

01:35:25 1    used them as forensic accountants as an expert in expert cases.

01:35:29 2    We're just being honest and think that's probably --

01:35:33 3         MS. SASTRE:  I mean, I just feel like, Your Honor --

01:35:35 4         THE COURT:  You want Chris Coffin's accountant?

01:35:38 5         MS. SASTRE:  Listen.  Maybe.  I don't know, Judge.  It

01:35:41 6    depends how you line them up, right?

01:35:43 7         MR. MOORE:  Chris could be good or bad.

01:35:47 8         MR. CENTOLA:  Also, we do pay -- there are people on

01:35:49 9    the plaintiffs' firm, me included, who use this firm as

01:35:53 10   forensic accountants and pay them and actively have cases going

01:35:57 11   on where Kushner LaGraize are forensic accountants in hurricane

01:36:01 12   cases and other related cases, so we literally pay their bills.

01:36:04 13   We're just being honest.  We think that that is a problem

01:36:07 14   but --

01:36:10 15        MS. SASTRE:  All right.  Judge, can I just have a

01:36:15 16   moment, please?

01:36:15 17        THE COURT:  Sure.

01:36:29 18        MR. MOORE:  He's a forensic accountant.

01:36:31 19        MS. SASTRE:  Yeah, I think, Your Honor, I appreciate

01:36:33 20   what counsel is saying, but with all due respect, like the

01:36:36 21   others, I feel like maybe we need to hear from Mr. Leaber a

01:36:40 22   little bit and if it is as he described, then so be it but all

01:36:43 23   it says here is that he used them and I understand

01:36:47 24   representations are being made based on information that's been

01:36:50 25   provided to you but I feel like I would like to hear it from

*OFFICIAL  TRANSCRIPT*

01:36:52  1    Mr. Leaber directly.

01:36:54  2        THE COURT:  Okay.

01:36:55  3        MS. SASTRE:  Your Honor, just to make sure that I'm

01:36:57  4    clear and I haven't missed anything, I know that we skipped

01:37:04  5    Juror Italiano, Lynn Bear (spelled phonetically) and Kelly, and

01:37:10  6    does that mean the three of them have been excused by the

01:37:14  7    Court?

01:37:14  8        THE COURT:  Yes.  It could have occurred -- frankly,

01:37:17  9    some of them I don't even see excuses because if they provide

01:37:21 10    certain documentation downstairs, Jury has certain authority to

01:37:25 11    excuse people for a variety of reasons -- some have moved out

01:37:29 12    of the district, some have a preplanned vacation, and they

01:37:34 13    submit documentation, so that doesn't even come to us.

01:37:37 14        MS. SASTRE:  Okay.  Very good.  Thank you, Judge.

01:37:41 15        THE COURT:  Sean Mabile.  From Pierre Part, which is in

01:37:46 16    the country.

01:37:46 17        MR. CENTOLA:  We do object to Ms. Mabile as she in

01:37:52 18    her -- get her exact, how she said that a Sanofi rep bought her

01:37:57 19    lunch.  She works for Thibodaux Regional, I think.

01:38:07 20        MR. MOORE:  She is a --

01:38:21 21        MS. SASTRE:  I'm sorry, where are you reading from in

01:38:24 22    the questionnaire, Counsel?

01:38:28 23        MR. MOORE:  Shawn Mabile.

01:38:35 24        MR. CENTOLA:  21:  Have you ever heard of Sanofi?  Yes.

01:38:38 25    If yes, explain.  Page 21.  We have drug reps that visit, bring

*OFFICIAL TRANSCRIPT*

01:38:43  1    lunches to my workplace.  She has a -- if Sanofi reps are

01:38:50  2    buying her lunch, we object to Ms. Mabile serving on a jury

01:38:55  3    where the defendant is buying her lunch.

01:38:58  4         MS. SASTRE:  Okay.  No objection.

01:39:05  5         THE COURT:  Okay.

01:39:12  6              Scott Macke.

01:39:14  7         MR. CENTOLA:  Mr. Macke, in response to -- on page 21,

01:39:30  8    Judge, in response to question of 86:  Have you heard of

01:39:35  9    Sanofi?  Answer:  Yes.  If yes, explain:  Owned stock.

01:39:39 10              Now, we debated this and we know that *owned stock*

01:39:42 11    he doesn't mean he presently owns stock but if he knows about

01:39:45 12    Sanofi and owned stock, it's not as if he owned in it a mutual

01:39:50 13    fund.

01:39:50 14              We believe that -- that is, I don't know if

01:39:51 15    Sanofi stock price went up, down, or indifferent, but the fact

01:39:56 16    that he owned stock in Sanofi will disqualify him as a juror.

01:40:03 17         MS. SASTRE:  Your Honor, I will simply point out that,

01:40:03 18    as counsel stated earlier, in response to the question:  Is

01:40:08 19    there any reason why he cannot serve?  He indicated "no."  He

01:40:10 20    did say that he's heard of Sanofi.  Both times he referenced

01:40:13 21    that he did put owned.  That is past tense, Your Honor.

01:40:16 22         THE COURT:  I think we might need to look at this

01:40:18 23    because it could be anything ostensibly as the dad had it and

01:40:22 24    he sold it and just doesn't know anything about it, you know.

01:40:25 25    I'm just saying things that come to mind, that I don't know

*OFFICIAL TRANSCRIPT*

01:40:29 1    anything about this company, I got this stock, and I sold it

01:40:35 2    for whatever reason.

01:40:36 3                Let's just get Mr. Macke in here and visit with

01:40:39 4    him and get a better, clearer picture of that.

01:40:43 5                All right.  Mr. Anthony Mang.  Anthony Mang.

01:40:50 6          MR. SCHANKER:  We skipped Ms. Malone.

01:40:50 7          THE COURT:  Mary Malone.  You're right.  She's right

01:40:57 8    here.  Mary Malone.

01:40:59 9                Anything from the plaintiffs?

01:41:00 10         MR. CENTOLA:  None from plaintiffs.

01:41:02 11         MS. SASTRE:  No objection.

01:41:03 12         THE COURT:  Okay.  Thank you.

01:41:05 13                Anthony Mang.

01:41:15 14         MR. CENTOLA:  None from plaintiff.

01:41:16 15         MS. SASTRE:  No objection.

01:41:22 16         THE COURT:  Joshua May.

01:41:27 17         MR. CENTOLA:  None from plaintiffs.

01:41:28 18         MS. SASTRE:  No objection.

01:41:33 19         THE COURT:  Okay.  Germarish Mayho.

01:41:40 20         MR. CENTOLA:  Interesting juror but I think we need to

01:41:44 21   talk with Mr. Mayho.  He seems, claims to know a lot of court

01:41:48 22   personnel, a lot of people involved but it seems as if it might

01:41:54 23   be farfetched.

01:41:55 24         MS. SASTRE:  Well, he did say a lot.  We do agree on

01:42:00 25   that.  He did say first, Your Honor, and I do think this is

*OFFICIAL TRANSCRIPT*

01:42:03 1    quite important, Judge, question 38 on page 11, Your Honor, it

01:42:07 2    says:  Do you have any negative views of the following?  He

01:42:11 3    said "yes" for Sanofi, so we think just based on that.

01:42:14 4          THE COURT:  Wait, what was the question?

01:42:15 5          MS. SASTRE:  Oh, I'm sorry, Your Honor.  Question 38 on

01:42:17 6    page 11:  Do you have negative views -- any negative views of

01:42:24 7    the following?  And said "yes" for large corps, foreign corps,

01:42:29 8    pharmaceutical corps, and he said "yes" for the defendant in

01:42:31 9    this case.

01:42:32 10         If he had said that he had a negative view of

01:42:35 11   Ms. Kahn, we would have probably all very quickly agree he

01:42:38 12   couldn't serve so we do think that the answer, there is no

01:42:41 13   question with someone like this, that we would be starting

01:42:44 14   behind.

01:42:44 15         When you look at the rest of what is here,

01:42:46 16   Your Honor, it says he knows people in the court.  I'm not sure

01:42:52 17   what that is referring to.

01:42:54 18         In terms of emotional and physical issues, that

01:42:57 19   might affect his ability to serve.

01:42:58 20         He did say "yes," and he referenced COVID-19.

01:43:05 21         We also asked on page 21, Your Honor,

01:43:08 22   question 83:  The lawsuit involves Ms. Kahn, who is the

01:43:12 23   plaintiff.  Do you know her?  He said "yes."  He said she was

01:43:15 24   the defendant of the hair loss case.

01:43:17 25         The next question, 84, says, you know:  Here is a

*OFFICIAL TRANSCRIPT*

01:43:24 1  little bit of what these claims are about and have you read

01:43:28 2  anything about this?  He said:  Yes, from the newspaper.  I

01:43:30 3  looked through once before.

01:43:32 4          Question 87, Your Honor.  Again, quite

01:43:34 5  importantly, already having indicated he has a negative view of

01:43:38 6  the defendant Sanofi, in 87 he states:  Do you have an opinion

01:43:41 7  about Sanofi?  Yes.  I believe Sanofi is the reason for the

01:43:44 8  hair loss.

01:43:44 9          Page 22, again, on question 90 he does indicate

01:43:49 10 again that he knows Ms. Kahn.

01:43:51 11         And if I may have just one more second.  Those

01:43:58 12 are the --

01:44:01 13         THE COURT:  Salient points?

01:44:05 14         MS. SASTRE:  I'm sorry.  Yes, ma'am.

01:44:07 15         MR. CENTOLA:  This has never been in the paper.  We

01:44:09 16 know this gentleman is not -- our point is that we shouldn't

01:44:13 17 reward behavior of lying on a questionnaire in order to get out

01:44:17 18 of jury service and that it seems, we don't know that, but it

01:44:21 19 seems that this gentleman is not being completely forthright

01:44:24 20 since there are some things that really are not likely to be

01:44:27 21 true on his questionnaire.

01:44:28 22         So, because of that, we don't think that behavior

01:44:32 23 should be rewarded, and that person should be brought in.  At

01:44:35 24 least we could talk to that person, and, in fact, if he says

01:44:39 25 there is no way I could be fair against Sanofi, I think we're

*OFFICIAL TRANSCRIPT*

01:44:42  1   going to pause, but this person is saying things that really --

01:44:45  2       THE COURT:  Oh, a lot of it is a bit --

01:44:47  3       MR. CENTOLA:  Farfetched.  So I don't think we should

01:44:49  4   reward that behavior by allowing people to not be or be

01:44:54  5   farfetched on a questionnaire and, therefore, get out of jury

01:44:57  6   service.

01:44:58  7       MS. SASTRE:  Your Honor, I just briefly say, just based

01:45:03  8   on question 38, based on the presently holds negative views of

01:45:09  9   the defendant and question 87, Your Honor, that he has

01:45:11 10   concluded that Sanofi is the reason for her hair loss, he is

01:45:14 11   not a perfect juror for the case based on his answers to the

01:45:19 12   questions.

01:45:20 13       THE COURT:  Well, that's true.

01:45:29 14       I'm going to excuse him but I have to tell you, I

01:45:32 15   agree with you because I think this is just bad behavior, and

01:45:37 16   there is a part of me that just -- because it is, it's just --

01:45:42 17   you know, but I think he has excused himself.  He was

01:45:50 18   successful but people come in reading *Mein Kampf*.  If you do

01:45:57 19   that, you're probably going to get excused.

01:46:00 20       MS. SASTRE:  I'll keep my eyes peeled.

01:46:06 21       THE COURT:  Oh, a little light reading.  They all do

01:46:10 22   it.

01:46:11 23       Okay.  So he will be excused.

01:46:17 24       Bryan McCormack.

01:46:20 25       And I'll be honest with you, I felt like perhaps

*OFFICIAL TRANSCRIPT*

01:46:23 1   he knew Ms. Kahn if he lived in New Orleans but he lived in

01:46:28 2   St. James his entire life.

01:46:29 3              Okay.

01:46:30 4        MR. MOORE:  He's a student.

01:46:34 5        THE COURT:  He lived in St. James Parish his entire

01:46:38 6   life.  Did she teach in St. James?

01:46:41 7        MR. MOORE:  She teaches out in Avondale.

01:46:45 8        THE COURT:  That's my neck of the woods, St. James.

01:46:50 9   No.

01:46:52 10       MS. SASTRE:  Well, no objection on Mr. McCormick.

01:46:54 11       MR. CENTOLA:  None from plaintiffs.

01:46:57 12       THE COURT:  Phillanna Meyers.

01:47:01 13       MR. CENTOLA:  Not from plaintiffs.

01:47:03 14       MS. SASTRE:  Has Mr. Medina been excused?

01:47:06 15       THE COURT:  Yes.

01:47:07 16       MS. SASTRE:  Okay.

01:47:17 17       THE COURT:  He lives in Luling.

01:47:20 18       MR. CENTOLA:  Mr. Medina had a vacation.  Mr. Medina,

01:47:21 19   in his questionnaire, said he had a preplanned vacation.

01:47:29 20       THE COURT:  I don't know but he lives in Luling so he

01:47:34 21   may not have a home.

01:47:36 22              Phillanna Meyers?

01:47:39 23       MR. CENTOLA:  None from plaintiff.

01:47:40 24       MS. SASTRE:  No objection.

01:47:43 25       THE COURT:  Emily Miksovic.

**OFFICIAL TRANSCRIPT**

01:47:49 1    MR. CENTOLA:  None from plaintiff.

01:47:51 2    MS. SASTRE:  No objection.

01:47:52 3    THE COURT:  Erica Miller.

01:47:54 4    MR. CENTOLA:  None from plaintiff.

01:47:55 5    MS. SASTRE:  No objection.

01:48:11 6    THE COURT:  Wendy Troutman Miller.

01:48:22 7    MR. CENTOLA:  We don't have an objection but this

01:48:24 8 brings up a point about COVID concerns or anxiety because

01:48:29 9 Ms. Miller was one of the few people to note COVID concerns on

01:48:34 10 her questionnaire.

01:48:36 11    THE COURT:  No, the one from St. James did.

01:48:39 12    MS. SASTRE:  You mean the one he argued against?

01:48:39 13    MR. CENTOLA:  The one who brought up everything.

01:48:41 14    So I guess it's just something that we will be

01:48:44 15 aware of and I presume that if people have COVID concerns, they

01:48:49 16 will bring it up on the front end.

01:48:51 17    I guess the question to the Court is:  How is the

01:48:54 18 Court dealing with COVID concerns from the jury venire?

01:49:02 19    THE COURT:  But no objection at this point?

01:49:04 20    MS. SASTRE:  No.

01:49:07 21    THE COURT:  Thank you.

01:49:39 22    Jeff Neumeyer.

01:49:41 23    Any objection?

01:49:42 24    MR. CENTOLA:  None from plaintiff.

01:49:43 25    MS. SASTRE:  None from the defendant.

          ***OFFICIAL TRANSCRIPT***

01:49:47   1          THE COURT:  Dwayne New.

01:49:51   2               Any objection?

01:49:51   3          MR. CENTOLA:  No, Judge.

01:49:53   4          MS. SASTRE:  No objection.

01:49:55   5          THE COURT:  Veronica Papendieck.

01:50:00   6          MR. CENTOLA:  None from plaintiff.

01:50:17   7          MS. SASTRE:  Your Honor, the issue on Ms. Papendieck,

01:50:21   8  just to bring it to the Court's attention, she is 70 years old

01:50:24   9  and she said, in response to question 82, she's under the

01:50:28  10  impression that she no longer needs to serve because she's

01:50:33  11  above the age.

01:50:34  12          MR. CENTOLA:  That is a state court rule; I don't think

01:50:36  13  it's a federal rule.  It's a state court rule when -- I think

01:50:39  14  if you're over 70, you have the option to stay or leave.

01:50:42  15          MR. MOORE:  I thought it was a -- if you ask and you're

01:50:46  16  70 in this court, I thought it's grounds for a hardship.

01:50:51  17          MR. CENTOLA:  I thought it was state court.

01:50:53  18          MR. MOORE:  Here it's a little bit different.

01:50:56  19          THE COURT:  It really hasn't been an issue but if she

01:51:01  20  is specifically asking --

01:51:03  21          MR. MOORE:  She said I was under the impression I don't

01:51:05  22  need to serve because I'm 70.

01:51:07  23          THE COURT:  You should not or cannot.

01:51:09  24          MR. CENTOLA:  82:  Is there any reason you should not

01:51:13  25  nor cannot?

*OFFICIAL TRANSCRIPT*

01:51:13   1          THE COURT:  I was under the impression at 70 years it
01:51:14   2    was not encouraged.  "I will be 70."  So maybe she thinks that
01:51:19   3    it's like a mandatory retirement.
01:51:22   4          MR. CENTOLA:  Our suggestion would be to bring her in.
01:51:26   5          THE COURT:  Let's take her in.
01:51:28   6          MS. SASTRE:  Okay.
01:51:33   7          THE COURT:  All right.  Nicholas Phillips.
01:51:36   8          MR. CENTOLA:  He seems to be a student at USM but if he
01:51:44   9    can serve and he's not in college.
01:51:54  10          THE COURT:  That's what it says here:  I am at the
01:51:55  11    University of Southern Miss, architecture and design.  What
01:52:01  12    best describes your current employment status?  It says:
01:52:04  13    Student.
01:52:04  14          MR. SCHANKER:  If he's in Hattiesburg, it's going to be
01:52:06  15    pretty difficult.
01:52:06  16          MR. CENTOLA:  He's a student.
01:52:28  17          MS. SASTRE:  If Your Honor feels that based upon the
01:52:30  18    location of where he's at --
01:52:31  19          THE COURT:  Except that he doesn't, it's a little odd
01:52:37  20    because he identifies himself as a *student.*  He best describes
01:52:43  21    some college, university.  I think we might have to wait.
01:52:47  22              Now, I will tell you if he had contacted -- and
01:52:50  23    this is what is concerning about this:  His mother is a clerk
01:52:53  24    of Slidell city court.  I know that's not the same.  They don't
01:52:57  25    have jury trials, but it seems that, you know, we would have

                              *OFFICIAL TRANSCRIPT*

01:53:01   1   gotten something that I'm a student.  I'll be out of town.

01:53:05   2   What do I do?  And then the Clerk's Office, that's one of those

01:53:10   3   that's an automatic excuse.  So let's just see, because had he

01:53:19   4   said that he can't make it?

01:53:20   5        MR. CENTOLA:  He didn't.  Normally -- he's never --

01:53:34   6        THE LAW CLERK:  I don't think I would have either.

01:53:38   7   Three years ago I would not have known to do that and it would

01:53:40   8   have said Slidell but I would have been in Baton Rouge.

01:53:45   9        THE COURT:  Well, you would have come in.

01:53:49  10        MS. SASTRE:  You would have been delighted.

01:53:53  11        THE COURT:  He's just going to have to come and visit.

01:53:56  12            Christian -- no, William Pickens.

01:54:04  13        MR. CENTOLA:  None from the plaintiff.

01:54:06  14        THE COURT:  None from you?

01:54:17  15        MS. SASTRE:  No objection.

01:54:18  16        THE COURT:  Christian Pisciotta.

01:54:22  17        MR. CENTOLA:  I don't either.  Pisciotta.  But I have

01:54:30  18   no objection.

01:54:30  19        MS. SASTRE:  No objection.

01:54:35  20        THE COURT:  Robert Poll.

01:54:36  21        MR. CENTOLA:  No objection.

01:54:37  22        MS. SASTRE:  This is another student but this is

01:54:39  23   different, Your Honor.  Mr. Poll did indicate, in response to

01:54:43  24   question 82, which is the question that asked:  Is there any

01:54:51  25   reason that you should not or cannot serve?  It says:  The only

*OFFICIAL TRANSCRIPT*

01:54:54  1    reason that I have is that it would interfere with my college

01:54:58  2    studies.

01:54:59  3             THE COURT:  That he's entitled to an abstention.

01:55:01  4             MS. SASTRE:  This is a pretty earnest response to the

01:55:04  5    extent that we're trying to read into it there is nothing else

01:55:07  6    unusual about this, so --

01:55:11  7             THE COURT:  I will tell you this:  We're going to

01:55:24  8    excuse him.  The only thing --

01:55:25  9             MR. CENTOLA:  It's local.

01:55:26 10             THE COURT:  -- it's local, it would have been easy.

01:55:26 11             MR. CENTOLA:  -er.

01:55:30 12             THE COURT:  But he said it would interfere with his

01:55:33 13    studies.  I think we should excuse Mr. Poll.

01:55:36 14             MS. SASTRE:  Mr. Poll.  Okay.

01:55:41 15             THE COURT:  All right.  Susan Porcuna.

01:55:45 16             MR. CENTOLA:  None from plaintiff.

01:55:47 17             MS. SASTRE:  No objection.

01:55:54 18             THE COURT:  Raymond Prejean.  Now, that's a French

01:55:58 19    name.  And he's my age.

01:56:03 20             MR. CENTOLA:  None from the plaintiff.

01:56:09 21                 They don't have their nicknames on there.

01:56:10 22             MS. SASTRE:  Melanie Perez was excused earlier?

01:56:17 23             THE COURT:  She must have been.

01:56:22 24                 Raymond Prejean.

01:56:18 25             MS. SASTRE:  I'm sorry, I'll get back to Mr. Prejean.

                              *OFFICIAL  TRANSCRIPT*

01:56:35  1    No objection, Your Honor.

01:56:40  2         THE COURT:  Sally Rebert.

01:56:51  3         MS. SASTRE:  Mr. Presterback (spelled phonetically) is

01:56:54  4    gone as well, Your Honor?

01:56:55  5         THE COURT:  Yes.

01:57:22  6          Any objection to Ms. Rebert?

01:57:24  7         MR. CENTOLA:  No, Judge.

01:57:24  8         MS. SASTRE:  No, ma'am.

01:57:27  9         THE COURT:  Derrick Richard?

01:57:30 10         MR. CENTOLA:  None from plaintiff.

01:57:34 11         MS. SASTRE:  You know in the rest of the country that's

01:57:38 12    called *Mr. Rich-ard*?

01:57:39 13         THE COURT:  I know that.

01:57:39 14         MS. SASTRE:  I like the way y'all say it.

01:57:43 15         THE COURT:  I do too.  So boring, Rich-ard.

01:57:51 16          Ree-chard.

01:57:51 17         MS. SASTRE:  Mr. Ree-chard.

01:58:00 18          You are doing nothing to help me, Doug.

01:58:04 19          Okay.  No objection on this gentleman.

01:58:06 20         THE COURT:  Mr. Richard.

01:58:16 21          Mr. Jordan Robért.

01:58:17 22         MS. SASTRE:  Ramirez was discharged?

01:58:24 23         THE COURT:  Must be.

01:58:27 24          Any objection?

01:58:28 25         MR. CENTOLA:  No, Judge.

*OFFICIAL  TRANSCRIPT*

01:58:29  1          MS. SASTRE:  No, Your Honor.

01:58:30  2          THE COURT:  Nicole Rowley.

01:58:35  3          MR. CENTOLA:  None from us, Judge.

01:58:40  4          MS. SASTRE:  Yes.  Ms. Rowley, yes, I do.  May I have

01:58:48  5  just a moment.  First, I'll just sort of run through the list,

01:58:51  6  Your Honor.  There is a number of things.

01:58:52  7          So on question 80, there is reference to a

01:58:59  8  financial hardship.  On page 20 Ms. Rowley says:  I'm

01:59:05  9  self-employed and being unable to work will cause a -- I

01:59:09 10  believe that's significant loss in income.

01:59:14 11          And question 82, Ms. Rowley says:  Personal issue

01:59:22 12  with pharmaceutical companies.  And let me go back.  The

01:59:25 13  question is:  Is there any reason you should not or cannot

01:59:29 14  serve as a juror in this case, and Ms. Rowley wrote:  Personal

01:59:32 15  issues with pharmaceutical companies, and I believe the

01:59:35 16  government and big pharma are only making most drugs that

01:59:41 17  require people to take them forever, keeping money in major

01:59:47 18  company pockets.

01:59:50 19          And then, Your Honor, in response to -- let me

01:59:58 20  see.  There is a comment on question 85:  Does she have life

02:00:05 21  experience that may influence how she views the evidence, and

02:00:09 22  she says:  I don't feel like cancer doctors explain the full

02:00:13 23  scope of the treatment to the patient or the family for them to

02:00:16 24  have the correct understanding to make decisions about

02:00:20 25  treatment.

                              *OFFICIAL  TRANSCRIPT*

So, I think with all of that, Judge, especially this reference to big pharma and stating that she does not think that she should serve because she thinks that companies like the defendant in this case make most drugs that require people to take them forever, keeping company in their pockets, so I think that she's demonstrated that she should be stricken for cause at this time, Your Honor.

MR. CENTOLA:  Judge, in Response Number 1, the financial hardship, I thought that we were in agreement that we were going to bring people in on a financial hardship and talk to them and figure out exactly what that is.

Number 2, let's bring in Ms. Rowley and figure out what her opinions are because it's not apparent on the page that she absolutely has any familiarity with Sanofi, that she's absolutely going to rule against all drug companies, just as we didn't object to the gentleman, Mr. Harms, who said this seems like a frivolous lawsuit, which, in that case, we talk to Mr. Harms and he says that the defendant is starting a little bit ahead of the plaintiff, then Mr. Harms will be dismissed for cause.

The same with Ms. Rowley.  If she responds to questions that say she is, in fact, biased, then we understand the Judge -- the Court, Your Honor, will most likely let her off, but let's bring in Ms. Rowley and talk to her and see what her opinions really are and see if she can put that aside and

*OFFICIAL TRANSCRIPT*

02:01:52 1    judge this from the evidence and the witness testimony.

02:01:54 2        MS. SASTRE:  Your Honor, just very briefly, only for

02:01:57 3    the sake of thoroughness.  When it comes to financial hardship,

02:02:00 4    I do think Ms. Rowley is a touch different than, perhaps,

02:02:04 5    others that we've discussed because she describes herself as

02:02:07 6    *self-employed* but I do think --

02:02:09 7        MR. CENTOLA:  She's a real-estate agent, Judge.

02:02:13 8        MS. SASTRE:  But I think far more important,

02:02:15 9    Your Honor, is 82, the words that she chose to use for a reason

02:02:21 10   not serve, quote, personal issue with pharmaceutical companies,

02:02:24 11   the reference to the government, and then this pejorative term

02:02:28 12   *big pharma*, you know, are making drugs that put money in their

02:02:34 13   pocket.  That is how she personally feels about this issue and

02:02:38 14   she said:  I should not serve because of that.

02:02:40 15        She also stated elsewhere that she believed the

02:02:44 16   FDA supports large pharma by choosing which drugs get regulated

02:02:50 17   as opposed to choosing drugs that cure disease, so, really,

02:02:53 18   Your Honor, we do feel that this is a juror who needs to be

02:02:57 19   stricken for what she calls *personal beliefs* about the

02:03:00 20   defendant, about the pharmaceutical industry, about FDA's

02:03:05 21   relationship with that industry.  She deems herself unfit to

02:03:09 22   serve.

02:03:10 23        I'm sorry, Counsel.  Go ahead.

02:03:10 24        THE COURT:  Look at what she says in Number 7, her

02:03:13 25   opinion about FDA:  Federal agency that picks and chooses which

**OFFICIAL TRANSCRIPT**

02:03:19  1    medical lies are federally regulated.  Large pharmaceutical

02:03:26  2    companies instead of giving holistic option to cure disease.

02:03:32  3         MR. CENTOLA:  I don't think it's appropriate to dismiss

02:03:35  4    people for a perceived bias based on a questionnaire because

02:03:39  5    we're going to end up with not a lot of jurors in the venire.

02:03:45  6              We're going to go back and ask Mr. Harms, who

02:03:48  7    says this seems like a frivolous lawsuit, that he be dismissed

02:03:51  8    at this point too, because he is, obviously, exhibiting bias

02:03:56  9    through the questionnaire.

02:03:57 10              We understand that -- my thought is that the

02:03:59 11    questionnaire is meant to have a baseline of whether or not

02:04:03 12    these people seem to have bias, and that can be explored if and

02:04:06 13    when those people are actually called into the box but it's too

02:04:10 14    early and premature to strike this person at this stage and not

02:04:14 15    have her come in on Monday and let us talk to her and figure

02:04:17 16    out if those perceived biases are, in fact, biases or just, in

02:04:21 17    fact, perceived and she can be fair and wait to judge the

02:04:24 18    evidence from the witness box and the exhibits.

02:04:27 19         MR. MOORE:  I would agree with that if it were just us

02:04:32 20    perceiving bias from the responses.  Like the gentleman said:

02:04:35 21    Maybe this is a frivolous lawsuit.  That gentleman checked

02:04:39 22    that.  He didn't say that there is a reason he shouldn't serve.

02:04:44 23              This is the juror's perception and what she wrote

02:04:45 24    down to the specific question as to whether she should be a

02:04:47 25    juror in this case and the other gentleman didn't do that.

**OFFICIAL TRANSCRIPT**

02:04:50  1   Certainly, we could perceive bias from what the other gentleman

02:04:52  2   wrote and I'll ask him questions about that and if he stands by

02:04:56  3   that, that will give him an excuse for cause.

02:04:59  4          MR. CENTOLA:  So we are going to have no rehab to

02:05:01  5   jurors that are in the box?  So if on voir dire the juror says,

02:05:05  6   "I can't be fair," then there is no rehab and there is no

02:05:08  7   questions?

02:05:08  8              It seems as if this is premature for all of these

02:05:13  9   potential jurors.  We have to get an idea of really what their

02:05:16 10   potential cause are.

02:05:40 11          THE COURT:  I'm going to excuse Ms. Rowley.  She's got

02:05:43 12   some firm opinions about big pharma and the relationship with

02:05:49 13   the FDA and these sorts of things.

02:05:54 14              And your objection is noted for the record.

02:06:00 15              Elena Sanchez.

02:06:07 16              Any objection?

02:06:07 17          MR. CENTOLA:  No, Judge.

02:06:10 18          MS. SASTRE:  No objections.

02:06:14 19          THE COURT:  Spring Sanchez.

02:06:21 20          MS. SASTRE:  Assumption Parish.

02:06:27 21          MR. CENTOLA:  Belle Rose.

02:06:27 22              None from us.

02:06:28 23          MS. SASTRE:  No objection.

02:06:34 24          THE COURT:  Craig Schexnayder.

02:06:39 25          MR. CENTOLA:  None from us.

*OFFICIAL TRANSCRIPT*

02:06:42  1          MS. SASTRE:  No objection.

02:06:51  2          THE COURT:  Tyshia Scott.

02:06:56  3          MR. CENTOLA:  None from us.

02:06:57  4          MS. SASTRE:  No objection.

02:07:00  5          THE COURT:  Thomas Shivers.

02:07:06  6          MR. CENTOLA:  None from plaintiffs.

02:07:07  7          MS. SASTRE:  No objection.

02:07:09  8          THE COURT:  Eddie Smith.

02:07:12  9          MR. CENTOLA:  None from plaintiff.

02:07:17 10          MS. SASTRE:  Yes, Your Honor.  We do.  We have issues

02:07:21 11  with Mr. Smith.  Mr. Smith first indicates, Your Honor -- well,

02:07:29 12  I'll just put it on the record but in response to question 80

02:07:32 13  he does say it would cause a serious hardship.  Like other

02:07:36 14  potential jurors, he's indicated that he's in real estate.

02:07:41 15          Far more important, Your Honor, in response to

02:07:43 16  question 82, which asked:  Is there any reason you should or

02:07:47 17  cannot serve as a juror in this case?  He says:  Yes, and he

02:07:50 18  says, quote, my disdain of the judicial system.

02:07:56 19          And he also indicated on page 22 that he does

02:08:00 20  know Ms. Kahn's hairdresser, who is a long, long-time

02:08:06 21  hairdresser of Ms. Kahn's.

02:08:10 22          And then one other thing, Your Honor -- two

02:08:13 23  things, actually.  Two things that you have to read closely.

02:08:19 24  So, on question 48, Your Honor, so Mr. Smith references, as you

02:08:29 25  see, the Tuskegee experiment.

                              ***OFFICIAL TRANSCRIPT***

02:08:29  1          THE COURT:  Right.

02:08:32  2          MR. CENTOLA:  I believe Your Honor is familiar with

02:08:34  3     that.  That was in response to:  Do you have negative feelings

02:08:37  4     about participation in clinical trials?  And that involved

02:08:41  5     issues of race and --

02:08:43  6          THE COURT:  I understand.

02:08:44  7          MS. SASTRE:  Okay.  Your Honor understands.  So that

02:08:45  8     was very concerning, that response.

02:08:49  9               And also, Your Honor, finally, question 35, this

02:08:59 10     gentleman was asked:  Have you seen or heard any news or

02:09:03 11     advertisements, etcetera, involving the chemotherapy drug

02:09:09 12     Taxotere?  He said:  Yes, he said, I think I have.  And then he

02:09:13 13     said, quote, I'll Google tonight.

02:09:17 14          MR. CENTOLA:  He's a well-informed person, making an

02:09:21 15     educated decision.

02:09:23 16          MS. SASTRE:  Conscientious.

02:09:26 17          THE COURT:  I think we're going to bring Mr. Smith in.

02:09:28 18     He distrusts the system.  That means he distrusts both sides.

02:09:33 19     So let's just see.  There is a lot to unpack there but it is

02:09:40 20     not the same as saying, "I don't trust anyone."

02:09:42 21          MS. SASTRE:  Maybe you could help us with that

02:09:45 22     unpacking.

02:09:46 23          THE COURT:  Yes.  There is a lot to unpack and we just

02:09:48 24     have to do that at that time.  Okay.

02:09:50 25          MS. SASTRE:  Okay.

                              *OFFICIAL TRANSCRIPT*

| | |
|---|---|
| 02:09:51 1 | THE COURT:  Louis Smith. |
| 02:09:55 2 | Plaintiff? |
| 02:09:55 3 | MR. CENTOLA:  None from plaintiff. |
| 02:09:57 4 | THE COURT:  Defendant? |
| 02:09:58 5 | MS. SASTRE:  No objection. |
| 02:10:05 6 | THE COURT:  Shirley Smith. |
| 02:10:09 7 | MR. CENTOLA:  None from plaintiff. |
| 02:10:10 8 | MS. SASTRE:  No objection on Shirley Smith. |
| 02:10:14 9 | THE COURT:  Alicia Speed. |
| 02:10:17 10 | MR. CENTOLA:  None from plaintiff. |
| 02:10:19 11 | MS. SASTRE:  Yes, Your Honor.  All right.  So let me |
| 02:10:26 12 | first point out, Your Honor, the hardship raised by Ms. Speed. |
| 02:10:29 13 | I believe it's question 80 and she is asked:  Is |
| 02:10:37 14 | there any reason you would suffer serious hardship if you're |
| 02:10:40 15 | selected to sit as a juror?  And she said:  Yes, I live in |
| 02:10:43 16 | Tangipahoa. |
| 02:10:46 17 | THE COURT:  Yes. |
| 02:10:47 18 | MS. SASTRE:  And I'm currently out of work.  I don't |
| 02:10:49 19 | have money to come over here every day.  Financial hardship. |
| 02:10:53 20 | So that's one thing, Your Honor. |
| 02:10:55 21 | The next is for cause.  If Your Honor looks again |
| 02:10:59 22 | at question number 38, which, I believe, is on page 11. |
| 02:11:10 23 | Ms. Speed has indicated that she presently has a negative view |
| 02:11:15 24 | of Sanofi, of the defendant in the case. |
| 02:11:20 25 | And she also indicated on question 87, page 21, |

*OFFICIAL TRANSCRIPT*

02:11:32 1   Judge, she indicated -- so not only does she have a negative

02:11:37 2   view of defendant Sanofi, she also indicated, in response to

02:11:40 3   question 87, that it is her opinion with regard to Sanofi:  I

02:11:45 4   don't really trust these drug manufacturers, and that was in

02:11:52 5   response to:  Do you have an opinion about Sanofi?  "Yes."

02:11:55 6               So for those reasons, Your Honor, having, again,

02:11:59 7   predetermined that she has a negative view of the defendant in

02:12:03 8   this case before she's heard -- can even come in -- heard any

02:12:07 9   evidence, not trusting Sanofi, which is specifically what she

02:12:10 10  stated, she already has an opinion with regard to them.

02:12:19 11              Yes, I'm sorry, and Mr. Strongman just pointed

02:12:22 12  out one thing that I did miss, Judge, so just for, again, the

02:12:24 13  sake of completeness, Your Honor, question 85, she was asked:

02:12:28 14  Is there something about this case or some life experience you

02:12:33 15  have that may influence how you view the evidence?  She did

02:12:35 16  say:  Yes, adding, she said, quote, My father died of prostate

02:12:39 17  cancer.  I don't know how I feel about these medications.

02:12:41 18              So for those reasons, Your Honor, we believe that

02:12:44 19  she ought to be excused.

02:12:45 20         MR. CENTOLA:  Your Honor, we talked about the hardship.

02:12:47 21  I think we're beyond that at this point.

02:12:49 22         THE COURT:  It is a pretty significant drive; on the

02:12:55 23  other hand, we can provide assistance through the Court, so

02:12:57 24  that should not be an issue since she's unemployed.

02:13:00 25              The other, I think we might have to -- this is

*OFFICIAL TRANSCRIPT*

02:13:03   1    one that's not nearly as clear as the other lady that was aware

02:13:07   2    of Sanofi, had feelings about Sanofi.  She's not sure if she

02:13:14   3    likes chemotherapy drugs, but I don't know how I feel about it,

02:13:19   4    I think you might hear a lot of people, and that can mean a lot

02:13:23   5    of things.

02:13:24   6          MS. SASTRE:  Understood.  And not taking any issue with

02:13:27   7    Your Honor's ruling, but just for the record pointing out she

02:13:30   8    did indicate that she has a negative view of Sanofi presently.

02:13:34   9          THE COURT:  Right.

02:13:40 10            All right.  Mr. Stevens.

02:13:45 11          MR. CENTOLA:  None from plaintiffs.

02:13:49 12          MS. SASTRE:  No objection on Stevens.

02:13:53 13          THE COURT:  Thank you.

02:13:54 14           Mr. Tran.

02:13:59 15          MS. SASTRE:  So Thomas must be excused?

02:14:01 16          THE COURT:  Yes.  Wait, Thomas.  I'm sorry, you're

02:14:09 17    right.  You know, I'm going to the stack as opposed to -- and

02:14:13 18    this was out of order.  I apologize.

02:14:16 19           Ms. Thomas.

02:14:20 20          MR. CENTOLA:  Nothing from plaintiff.

02:14:22 21          MS. SASTRE:  So Ms. Thomas is a 70-year-old widowed

02:14:27 22    female, so we would again point out -- simply point out her age

02:14:31 23    to the Court.  She did indicate that she had a number of

02:14:34 24    hardships.

02:14:36 25           Question 80, Your Honor, she says that -- she

*OFFICIAL TRANSCRIPT*

02:14:41  1   said she picks up a few kids after school.  I'm not sure if

02:14:45  2   she's referring to grandkids.

02:14:47  3              And question 81, with regard to physical or

02:14:50  4   health issues, she said that she can only sit for one hour

02:14:56  5   because of back problems.  "I can't sit for too long."

02:15:00  6              Question 82:  Is there any reason you cannot

02:15:02  7   serve?  She said:  Yes, sometimes my meds make me sleepy.

02:15:07  8              And question 92 --

02:15:11  9         THE COURT:  "I don't remember as well as I used to."

02:15:17 10         MS. SASTRE:  Yes, ma'am.  "I do not remember as well as

02:15:17 11   I used to."

02:15:18 12              So for those reasons, based on the juror's age,

02:15:22 13   indicating she's on medication, she doesn't remember as well as

02:15:26 14   she used to, combined with the issues of not being able to sit

02:15:30 15   for too long, we think it would be appropriate to excuse

02:15:37 16   Ms. Gaile or Ms. Thomas.

02:15:38 17         MR. CENTOLA:  All things we need to explore when she

02:15:40 18   comes in on Monday.

02:15:40 19         MR. MOORE:  I did explore the Court's website and

02:15:41 20   amongst the excuse, exemption or disqualification categories

02:15:44 21   which can be applied at the questionnaire level is age over 70.

02:15:49 22   Age over 70.

02:15:50 23         MR. SCHANKER:  And she's 70.

02:15:53 24         THE COURT:  Let's bring her in.  But I appreciate you

02:15:57 25   telling me that.

                          *OFFICIAL TRANSCRIPT*

02:15:59  1          MR. MOORE:  I thought I was losing my mind.

02:16:02  2          THE COURT:  We've never had somebody say.

02:16:22  3              Mr. Tran.

02:16:27  4          MR. CENTOLA:  Mr. Tran notes his lack of English, so

02:16:31  5     that's a concern.

02:16:33  6          THE COURT:  How long has he been in the United States?

02:16:35  7          MR. CENTOLA:  He said he works for the Postal Service

02:16:39  8     as a mail carrier but he has an English problem.  We debated

02:16:45  9     that.  I guess if somebody gives him the numbers.  I think we

02:16:50 10     can bring in Mr. Tran but if he really has an English

02:16:54 11     problem --

02:16:55 12          THE COURT:  Right, right.

02:16:57 13          MS. SASTRE:  He indicated as well sort of a

02:16:59 14     nonresponse, he lacks experience and answers necessary

02:17:02 15     difficulty with English, so --

02:17:04 16          THE COURT:  Well, I'm just curious because he wrote all

02:17:06 17     this.

02:17:09 18          MS. SASTRE:  That's true.

02:17:13 19          THE COURT:  That might be a --

02:17:17 20          MS. SASTRE:  Mr. Tran might have some explaining to do.

02:17:19 21          MR. MOORE:  He might be like my son on his chemistry

02:17:22 22     test. He just writes whatsoever.

02:17:28 23          MR. PALMER:  I would say, Your Honor, I'm pretty good

02:17:30 24     at reading and writing French but I cannot -- at my high school

02:17:35 25     French level, I couldn't speak it.

*OFFICIAL TRANSCRIPT*

02:17:38  1          MS. SASTRE:  Do you want to let him go?

02:17:49  2          THE COURT:  Have you listened to French for 10 years?

02:17:53  3          MR. PALMER:  There are some Cajun French, you know, on

02:17:57  4     the bayou folks around but no, I have not.

02:17:59  5          THE COURT:  I mean, I think there is something we can

02:18:02  6     explore.  Perhaps he lives in a community where that is the

02:18:06  7     predominant language and he hadn't become fluent but I think if

02:18:11  8     he's working at the post office and is able to complete this

02:18:14  9     questionnaire, it might be worth at least to explore it.

02:18:22 10          We watch the BBC with the subtitles because I

02:18:25 11     missed it.  Maybe that's what he's talking about.  We'll just

02:18:28 12     see.  I think it's worth exploring.

02:18:34 13          Mr. Tranchina.

02:18:38 14          MR. CENTOLA:  This is another one, Judge, that should

02:18:41 15     not be rewarded for saying things on the jury questionnaire

02:18:45 16     that -- he says that he's going to lash out and scream if he's

02:18:52 17     selected.  We think that Mr. Tranchina ought to be brought in

02:18:58 18     because he's obviously saying things on his questionnaire to

02:19:02 19     try and get out of jury service.

02:19:04 20          MS. SASTRE:  I'm not so sure if he's saying outrageous

02:19:07 21     things to get out of service or if he comes, this is somebody

02:19:11 22     how they behave.  There is an awful lot here, Your Honor.

02:19:14 23          It starts on question 80 and maybe we can just

02:19:17 24     run through it.  Question 80:  Any hardship you would suffer if

02:19:21 25     selected?  He said:  I would probably lash out and scream

*OFFICIAL TRANSCRIPT*

02:19:25 1   during the trial due to being so miserable.

02:19:27 2           82:  Any reason you cannot or should not serve?

02:19:31 3   Answer:  Quote, I think our justice system is whack and do not

02:19:36 4   support it.  I'm a teacher and I have more important things to

02:19:41 5   do.

02:19:42 6           And then, I guess, it gets worse and I think it

02:19:47 7   gets even more relevant.  This is not just someone who

02:19:50 8   expressed some, perhaps, unusual opinions.

02:19:53 9           Question 85, Your Honor, on page 21:  Now that

02:19:57 10  you know something about what this case is about, is there some

02:20:00 11  life experience you had that may influence how you view the

02:20:03 12  evidence?  Yes.  It says:  The drug manufacturer's most likely

02:20:09 13  guilty.

02:20:10 14          Question 87:  Do you have an opinion about

02:20:12 15  Sanofi?  He says:  Yes, they seem sketchy.

02:20:15 16          So, you know, Your Honor, we think for the

02:20:18 17  reasons that we've discussed with prior jurors, with someone

02:20:23 18  who has taken a negative view of the defendant, who is

02:20:28 19  predisposed that we're most likely guilty or responsible, but

02:20:33 20  we cannot simply take the chance and supplant our judgment for

02:20:38 21  theirs and assume that we think that they are kidding, so

02:20:40 22  forget that he said that he may kick and scream and thinks the

02:20:44 23  justice system is whack and doesn't support it, but he has

02:20:47 24  specifically said that my client, the defendant, is most likely

02:20:49 25  at fault and they seem sketchy and I believe that is enough at

*OFFICIAL TRANSCRIPT*

02:20:54 1    the outset, Judge, that we cannot take the risk and he should

02:20:58 2    be excused.

02:20:58 3         MR. CENTOLA:  We fall back to our prior position.

02:21:02 4    People should not be rewarded for exaggerating things on the

02:21:06 5    claim form and saying he's going to kick and scream.

02:21:08 6         THE COURT:  He probably won't do that.  This is what my

02:21:11 7    concern is, if you want to know the truth is:  I think he would

02:21:19 8    not kick and scream in the courtroom.  He would be removed.  On

02:21:22 9    the other hand, I don't feel like we should have someone coming

02:21:29 10   in to make a spectacle and make this process all the more

02:21:35 11   difficult.

02:21:35 12        I'm looking at question 28:  What source do you

02:21:42 13   have?  The news sucks.  Video games.  List organizations:

02:21:46 14   Church equals laughing out loud.  And I would be concerned.  I

02:21:52 15   think we all feel comfortable that he could not be selected

02:21:56 16   because -- and I, at one point, agree with you that this

02:22:03 17   behavior should not be rewarded but I would be very concerned

02:22:10 18   with him coming in the courtroom and creating a ruckus and

02:22:14 19   having to spend valuable time dealing with this potential

02:22:17 20   juror.

02:22:18 21        So, for those reasons I'm going to excuse

02:22:21 22   Mr. Tranchina but I am curious about where he teaches.

02:22:26 23        MS. SASTRE:  I was afraid -- really, I mean, that was

02:22:29 24   the part that -- I just --

02:22:33 25        THE COURT:  Because he teaches philosophy and ethics.

**OFFICIAL TRANSCRIPT**

02:22:37  1           Okay.  Mr. Azden Trufant.  Mr.  Trufant.

02:23:05  2           Any objection?

02:23:06  3      MR. CENTOLA:  Nothing from plaintiffs.

02:23:13  4      MS. SASTRE:  A couple things, Your Honor.  Mr. Trufant,

02:23:20  5  on response to the hardship, question 81, he does indicate that

02:23:25  6  he has residual hemiplegia and spasticity in arms and legs from

02:23:38  7  a stroke in 2018.

02:23:41  8           He also said in question 90 that he knows

02:23:46  9  Dr. Corsetti, who is Ms. Kahn's breast surgeon, and also

02:23:51 10  David Ross, who is the plaintiffs', essentially, FDA sort of

02:23:59 11  regulatory expert.

02:24:00 12      THE COURT:  I think we might need to see if that's the

02:24:03 13  same David Ross.

02:24:04 14      MS. SASTRE:  Okay.

02:24:04 15      MR. CENTOLA:  They might overlap there.

02:24:08 16      THE COURT:  You know, the fact that he knows her

02:24:12 17  surgeon is fine but I don't think there is really much of an

02:24:14 18  issue with that other than they did the surgery.  I don't think

02:24:17 19  we're going to hear testimony from Dr. Corsetti, are we?

02:24:22 20      MR. MOORE:  They called the surgical oncologist last

02:24:27 21  time.  They are on their list.

02:24:29 22      THE COURT:  Okay.

02:24:29 23      MR. CENTOLA:  I thought that we had made a decision

02:24:31 24  that we had to figure out what their relationship is with the

02:24:38 25  doctor -- Dr. Ochsner, Dr. --

                                  *OFFICIAL TRANSCRIPT*

02:24:38  1          THE COURT:  Yes.  Okay.

02:24:38  2          MR. CENTOLA:  We'll figure out what their opinion is of

02:24:38  3   the doctor.

02:24:38  4          THE COURT:  Okay.  And as for the spasticity, if they

02:24:42  5   are coming in with a cane, we can make them comfortable.  We

02:24:45  6   can make them comfortable.

02:24:47  7          MS. SASTRE:  Okay.  Very good.

02:24:50  8          THE COURT:  Ms. Vail.

02:24:57  9          MR. CENTOLA:  The plaintiffs object to Ms. Vail, Judge.

02:25:00 10   On page 22, question 88, the fact that she owns stock in a

02:25:11 11   number of different pharmaceutical companies,

02:25:19 12   Bristol-Meyer Squibb, Eli Lilly, all these combined with the

02:25:20 13   fact that her father worked for big pharma, we take the

02:25:26 14   position this she is biased towards big pharma and is not

02:25:37 15   suited to --

02:25:37 16          THE COURT:  Where is that, what she said about her

02:25:40 17   father?

02:25:41 18          MS. SASTRE:  Page 5, Your Honor.  She indicates --

02:25:45 19   Bless you.  It says that her father was an executive for a

02:25:48 20   pharmaceutical company, Warner-Lambert.  He also died in 1994,

02:25:56 21   which is a very long time ago.

02:25:59 22          MR. MOORE:  And Warner-Lambert hasn't been a company.

02:26:01 23   It was acquired by Pfizer in 2003 or something --

02:26:07 24          MS. SASTRE:  Yeah.

02:26:08 25              The questions counsel pointed out in 22, yeah,

*OFFICIAL TRANSCRIPT*

02:26:10  1    question 88, page 22, she references Bristol-Meyer Squibb and

02:26:18  2    Eli Lilly as having owned stock but she was also asked on the

02:26:23  3    prior page if she ever heard of Sanofi and she said "no."

02:26:27  4         THE COURT:  Let's get her in here.  It may be that she

02:26:29  5    has an infinity toward pharmaceutical companies that we would

02:26:33  6    like to explore, but I don't know if there is quite enough here

02:26:36  7    to make that determination.  That's Ms. Vail.

02:26:47  8              And then we go to Ramunas.  Ramunas.

02:26:57  9         MR. CENTOLA:  Vigelis.

02:27:00 10         THE COURT:  Ramunas.

02:27:08 11         MR. CENTOLA:  Ramunas is the first name.  Vigelis.

02:27:31 12         THE COURT:  Okay.  Vigelis Ramunas.

02:27:32 13              Any objection?

02:27:33 14         MR. CENTOLA:  None from plaintiff.

02:27:35 15         MS. SASTRE:  No objection.

02:27:37 16         THE COURT:  Willie Wallace.

02:27:44 17              Plaintiff?

02:27:45 18         MR. CENTOLA:  None from plaintiff.

02:27:46 19         MS. SASTRE:  No objection.

02:27:49 20         THE COURT:  Carlton Washington.

02:27:55 21         MR. CENTOLA:  None from plaintiff.

02:27:57 22         MS. SASTRE:  No objection.

02:28:05 23         THE COURT:  Trenise Weber.

02:28:11 24         MR. CENTOLA:  None from us.

02:28:17 25         MS. SASTRE:  No objection, Your Honor.

*OFFICIAL TRANSCRIPT*

02:28:20  1            THE COURT:  Colin Williams.

02:28:23  2            MR. CENTOLA:  None from us.

02:28:30  3            MS. SASTRE:  Mr. Williams also indicates, Your Honor,

02:28:35  4    that he was attending graduate school.

02:28:39  5            That was in question 80.  That would be on

02:28:41  6    hardship.  That's on page 20 of the questionnaire:  Any reason

02:28:48  7    you would suffer serious hardship if selected?  Yes.  Currently

02:28:52  8    am and will be in graduate school during a schooling quarter.

02:28:59  9            82:  Do you believe there is any reason you could

02:29:02 10    or should not serve as a juror in this case?  Yes.  This will

02:29:10 11    mostly affect my academic standing.

02:29:13 12            MR. CENTOLA:  Judge, the same with the gentleman that's

02:29:14 13    at USM.  Mr. Williams comes in and says:  I'm in graduate

02:29:15 14    school at LSU and I've got classes in Baton Rouge, then, of

02:29:19 15    course, but we just don't know that yet.

02:29:22 16            THE COURT:  Okay.  Let's let Williams in.

02:29:32 17            All right.  I will tell you this:  I did notice

02:29:35 18    on the questionnaire that it's nonbinary so I don't know how we

02:29:38 19    should refer to Colin Williams but I think we should be

02:29:46 20    sensitive to that.

02:29:48 21            Let's get the potential juror in and we'll make a

02:29:53 22    determination at that time because this was the juror that was

02:29:58 23    supposed to be in August.  We don't know if --

02:30:03 24            MS. SASTRE:  I understand.

02:30:05 25            Your Honor, with regard to students --

                            *OFFICIAL  TRANSCRIPT*

02:30:06  1       THE COURT:  If they call ahead of time and say, "I am

02:30:10  2  in school," they are excused.  The problem I have with these is

02:30:15  3  this was for a trial in August, and we don't know if there was

02:30:19  4  a -- that that it is, indeed, affected.

02:30:23  5            I'm a bit surprised, even though Brittany would

02:30:25  6  have come and missed a day of school, that some of them haven't

02:30:30  7  called and said, "This is a problem.  Do I still have to come?"

02:30:33  8  Because that is something that the Clerk's Office would

02:30:36  9  immediately excuse.

02:30:39  10      THE LAW CLERK:  Judge, does this change the previous

02:30:42  11  juror that you released for a similar reason, which said why,

02:30:46  12  and they said, "This would affect my schooling, like, my

02:30:49  13  academic standing," Mr. Poll?

02:30:54  14      THE COURT:  That was a fellow at Dillard.  Didn't that

02:30:57  15  person ask to be excused?

02:30:59  16      THE LAW CLERK:  I think it was a similar response to

02:31:02  17  this.

02:31:02  18      MS. SASTRE:  Yeah, they both did say it would interfere

02:31:05  19  with my studies or affect my standing, and I would assume if

02:31:08  20  you were a student in August, you're still a student in

02:31:12  21  September.  It's part of the same semester.

02:31:14  22      MR. CENTOLA:  Why are we presuming anything?  We can

02:31:17  23  bring them in and talk to them on Monday.

02:31:18  24      THE COURT:  I know but we can't --

02:31:18  25      MS. SASTRE:  So the gentleman -- who knows when people

***OFFICIAL TRANSCRIPT***

02:31:20  1    put things down and they don't really mean it.

02:31:23  2              THE COURT:  No.  We did -- but what is --

02:31:30  3              MR. CENTOLA:  The USM student, we said --

02:31:32  4              THE COURT:  Wait, the USM student is coming because

02:31:36  5    what that questionnaire revealed is:  I am a student.  That is

02:31:42  6    my occupation.  He didn't say he couldn't be here.  I think the

02:31:47  7    one from Dillard --

02:31:50  8              THE LAW CLERK:  It's Mr. Poll.  Robert Poll.

02:31:56  9              MS. SASTRE:  Yes.  He said it would interfere with his

02:31:59 10    college courses and you did excuse him, Your Honor.

02:32:03 11              THE COURT:  Who is this person?

02:32:04 12              MS. SASTRE:  This person is William Collins --

02:32:08 13              THE LAW CLERK:  Colin Williams.

02:32:10 14              MS. SASTRE:  Excuse me.  Colin Williams.

02:32:10 15              THE COURT:  Some graduate student.  LSU.  Psychology.

02:32:15 16              MS. SASTRE:  Right.  On 13 he says:  His current --

02:32:20 17    when he refers to *employment status* he says:  Student.

02:32:24 18                  And then he does say, in response to the hardship

02:32:27 19    questions, I think it's one of the, if you will, the magic

02:32:30 20    words, Your Honor, but it will affect his academic standing.

02:32:35 21    He says that currently he will be in graduate school for the

02:32:38 22    quarter, and we're most certainly still in the quarter,

02:32:40 23    Your Honor.

02:32:41 24              MR. CENTOLA:  I think we're actually in a different

02:32:44 25    quarter from August.

*OFFICIAL TRANSCRIPT*

02:32:45  1        MS. SASTRE:  A different quarter, academic quarter?

02:32:51  2        MR. CENTOLA:  It's actually a quarter, yes.

02:32:54  3        MS. SASTRE:  Do you have any kids in school?

02:32:57  4        MR. CENTOLA:  Yes.  Do you understand the concept of

02:33:00  5   quarters?

02:33:00  6        MS. SASTRE:  I think I do.  Yes.  We'll figure it out

02:33:04  7   later and talk about it.

02:33:16  8             The same situation, Your Honor, but -- I'm sorry,

02:33:21  9   he's in graduate school.  I really do think it's the same thing

02:33:25 10   as the prior juror that was excused, Judge.

02:33:27 11        MR. CENTOLA:  We should bring in Mr. Poll as well

02:33:31 12   because that was our position then.  If someone comes in and

02:33:33 13   says I cannot do it because of my academic studies, I'm in

02:33:38 14   college and I cannot do it, that absolutely makes sense but for

02:33:41 15   this Colin Williams, who hasn't said that, hasn't made a call,

02:33:45 16   hasn't called the Clerk's Office, where other people have, in

02:33:50 17   fact, called the Clerk's Office and made a similar type of --

02:33:55 18        THE COURT:  Colin Williams.  We're going to get

02:33:57 19   Colin Williams in.

02:34:06 20        MS. SASTRE:  Your plan, Your Honor, for Mr. Williams or

02:34:09 21   other similarly situated is to --

02:34:12 22        THE COURT:  Ask them.  I think I can ask them ahead of

02:34:15 23   time.  What I usually do is if somebody answers and then I deal

02:34:21 24   with this.  And I can tell you, then I sit them right back down

02:34:25 25   because what I don't want is people to think that if I say

**OFFICIAL TRANSCRIPT**

02:34:29  1    these magic words, I'm out of here because I can assure you,

02:34:34  2    everybody wants to be out of here, and so I sit them back down,

02:34:41  3    but they are considered excused and we deal with that earlier.

02:34:46  4    But I do that in the whole venire:  Tell me, is there anybody

02:34:51  5    that's got this and then we'll deal with the box separately.

02:34:59  6              Christine Weimer.

02:35:06  7         MR. CENTOLA:  Judge, we have a few more Williams to go

02:35:11  8    through.

02:35:12  9         THE COURT:  I'm sorry.  You know what happened, we got

02:35:17  10   tired of alphabetizing.

02:35:21  11             Henry Williams.

02:35:25  12        MR. CENTOLA:  None from us.

02:35:26  13        MS. SASTRE:  No objection.

02:35:28  14        THE COURT:  Okay.  Thank you.

02:35:32  15             Kent Williams.

02:35:34  16        MS. SASTRE:  Lester?

02:35:37  17        THE COURT:  No.

02:35:41  18             Kent Williams is in Raceland.

02:35:47  19        MR. CENTOLA:  Mount Herman.

02:35:47  20        THE COURT:  No objection?

02:35:51  21        MR. CENTOLA:  No objection.

02:35:52  22        MS. SASTRE:  No objection.

02:35:55  23        THE COURT:  Lester Williams.

02:35:58  24        MR. CENTOLA:  No objection.

02:35:59  25        MS. SASTRE:  You have an objection on

*OFFICIAL TRANSCRIPT*

02:36:08  1    Mr. Lester Williams.  So he does indicate, again, Your Honor,

02:36:10  2    just for the record and for the sake of thoroughness, page 20,

02:36:13  3    question 80:  He says he will suffer serious hardship if

02:36:17  4    selected.  He says:  Yes, because of my illness.

02:36:20  5              In question 81 he adds more detail and says:  He

02:36:26  6    has physical or health issues that will limit his ability to

02:36:30  7    give the trial his full attention.  He says:  I cannot set

02:36:34  8    still.  I have a lot of pain.  I have side problems.  High

02:36:40  9    blood.  Diabetes.

02:36:46 10         THE COURT:  Neuropathy.

02:36:47 11         MS. SASTRE:  I think he means neuropathy.  That's

02:36:47 12    right.

02:36:48 13              Finally, and what, you know, we do believe is a

02:36:51 14    concern is 82:  Is there any reason you cannot serve as a

02:36:54 15    juror?  He says:  Yes, I don't believe in punishment.  He's

02:36:57 16    basically saying that he cannot sit in judgment and serve.  So

02:37:01 17    even as the defendant in the case, I do want to point that out.

02:37:06 18    It's troubling.

02:37:07 19         THE COURT:  I think sometimes, we see that a lot in

02:37:13 20    criminal cases, and I think it appears that Mr. Williams

02:37:19 21    probably has a limited education, and I think perhaps we just

02:37:25 22    need to visit with him.

02:37:29 23         MR. STRONGMAN:  Sure.

02:37:30 24         THE COURT:  Randy Williams.

02:37:35 25         MR. CENTOLA:  Not from plaintiff.

                        *OFFICIAL  TRANSCRIPT*

02:37:36  1          MS. SASTRE:  No objection.

02:37:37  2          THE COURT:  Yvonne Wynder.

02:37:49  3               Any objection?

02:37:52  4          MR. CENTOLA:  None from plaintiff.

02:37:53  5          MS. SASTRE:  No objection.

02:37:54  6          THE COURT:  And David Young.

02:38:00  7               Any objection?

02:38:01  8          MR. CENTOLA:  None from plaintiff.

02:38:03  9          MS. SASTRE:  No objection.

02:38:05 10          THE COURT:  All right.  Just so the record is clear,

02:38:08 11  let me go through who has been excused.

02:38:12 12               Berry, Sherman, has been excused.  That is

02:38:22 13  Juror 300097112.

02:38:25 14               Barry Goubler, Juror Number 300071891.

02:38:36 15               Shawn Mabile, Juror 300010525.

02:38:43 16               Juror Germarish Mayho, 300039146.

02:38:55 17               Robert Poll, Juror 300092251.

02:39:06 18          MR. CENTOLA:  I guess for the record, Judge, just note

02:39:07 19  our objection on Mr. Poll, to stay consistent.  We understand

02:39:12 20  he's in college locally, but we think he should be brought in.

02:39:17 21          THE COURT:  Actually, I've already ruled so we're

02:39:21 22  moving on.

02:39:22 23               Nicole Rowley, 300012792.

02:39:28 24               Mitchell Tranchina, 300005588.

02:39:34 25               And I believe that's it.  Have I missed anyone?

**OFFICIAL TRANSCRIPT**

02:39:39  1        MR. MOORE:  Who was the first one?

02:39:40  2        MR. CENTOLA:  Sherman Berry.  Berry, Sherman.

02:39:47  3        MR. MOORE:  I went to the back of the list looking for

02:39:50  4   Mr. Sherman.

02:39:52  5        THE COURT:  All right.  Also, I indicated that I would

02:39:54  6   talk to you about how we would handle Ms. Kahn's transportation

02:39:58  7   to Miami.  And I know this -- so this -- it needs to be on the

02:40:04  8   record and I thought a great deal about it.  I am not going to

02:40:08  9   allow you to reference that it was a private jet and I will

02:40:14 10   tell you why so that the record is clear.  Though it was filed

02:40:17 11   untimely and it was basically an oral Motion in *Limine*, I

02:40:23 12   didn't want that skunk in the jury box.

02:40:26 13        I think it would be unfair because there is the

02:40:29 14   rest of the story that would be because the reason -- well, let

02:40:38 15   me put it this way:  I am quite certain that those arrangements

02:40:43 16   would not have been made in any case other than a bellwether

02:40:49 17   trial.  Maybe she would have driven or something else would

02:40:53 18   have occurred, but putting her on someone's personal private

02:40:57 19   jet would likely not have occurred and I just think it is too

02:41:03 20   prejudicial to do that.

02:41:06 21        Now, I think it's appropriate for you to question

02:41:10 22   that:  And plaintiffs made arrangements for you to visit this

02:41:15 23   doctor in Miami and they provided that transportation is enough

02:41:20 24   but if we get into a private jet, you know, there is a reason

02:41:24 25   why we went to this extreme and it's only because it's a

**OFFICIAL TRANSCRIPT**

02:41:30  1    bellwether case.  If it were a one-off case, my guess is that

02:41:36  2    would not have occurred.

02:41:38  3          MS. SASTRE:  So plaintiffs made arrangements for you to

02:41:40  4    travel; they paid for that?

02:41:42  5          THE COURT:  Absolutely.  They paid for you to travel to

02:41:46  6    Miami?  They paid for the hotel?  That's fine.  They got you

02:41:48  7    there, that's fine, but I think anything other than that is so

02:41:52  8    prejudicial and I think it's -- then it's just -- part of it is

02:41:56  9    its own part of the story and it's unfair.

02:42:00 10          MS. SASTRE:  So don't mention that she flew to Miami

02:42:06 11    even without mentioning --

02:42:08 12          THE COURT:  I think it's enough to say they got you

02:42:10 13    there.

02:42:10 14          MS. SASTRE:  Okay.

02:42:11 15          THE COURT:  Okay.  Anything else?

02:42:13 16          MR. CENTOLA:  Can we go over the logistics of Monday

02:42:16 17    morning?

02:42:17 18          THE COURT:  Okay.  I think we are off the record.

         19          (WHEREUPON, at 2:42 p.m.  the proceedings were

         20    concluded.)

         21                          *    *    *

         22

         23

         24

         25

                              *OFFICIAL  TRANSCRIPT*

1                        REPORTER'S CERTIFICATE

2

3           I, Cathy Pepper, Certified Realtime Reporter, Registered

4    Merit Reporter, Certified Court Reporter in and for the State

5    of Louisiana, Official Court Reporter for the United States

6    District Court, Eastern District of Louisiana, do hereby

7    certify that the foregoing is a true and correct transcript to

8    the best of my ability and understanding from the record of the

9    proceedings in the above-entitled and numbered matter.

10

11                                _s/Cathy Pepper_____

12                                Cathy Pepper, CRR, RMR, CCR
                                  Certified Realtime Reporter
13                                Registered Merit Reporter
                                  Official Court Reporter
14                                United States District Court
                                  Cathy_Pepper@laed.uscourts.gov
15

16

17

18

19

20

21

22

23

24

25

                         **OFFICIAL  TRANSCRIPT**