## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| **IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION** | **MDL NO. 16-2740**<br><br>*This document relates to:*<br>Audrey Plaisance, Case No. 2:18-cv-08086 |

## HOSPIRA'S MEMORANDUM IN SUPPORT OF
## MOTION TO EXCLUDE OR LIMIT OPINIONS
## OF DR. LINDA D. BOSSERMAN

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

LEGAL STANDARD............................................................................................1

ARGUMENT ........................................................................................................2

I.     THE COURT SHOULD EXCLUDE DR. BOSSERMAN'S CASE-SPECIFIC
OPINIONS. ..................................................................................................2

     A.     Dr. Bosserman Should Not Be Allowed to Opine on What Ms. Plaisance's
Physician Would Have Done Based on a Different Warning...................3

     B.     Dr. Bosserman Should Not Be Allowed to Opine on Ms. Plaisance's
Treatment Preferences and/or Concerns. ................................................5

II.     THIS COURT SHOULD LIMIT DR. BOSSERMAN'S TESTIMONY
REGARDING ONLINE PREDICTIVE TOOLS. ................................................6

III.     THIS COURT SHOULD PRECLUDE DR. BOSSERMAN FROM TESTIFYING
ABOUT WHAT WAS KNOWN OR KNOWABLE ABOUT PERMANENT
HAIR LOSS. ................................................................................................7

     A.     Hospira's Knowledge............................................................................7

     B.     Physician Knowledge............................................................................9

CONCLUSION......................................................................................................10

CERTIFICATE OF SERVICE ..............................................................................12

**INTRODUCTION**

Hospira moves to exclude the following testimony by Dr. Linda D. Bosserman:  (1) case-specific opinions, (2) opinions applying online "predictive" tools to Ms. Plaisance's case, and (3) opinions about what was known or knowable by Hospira and Ms. Plaisance's treating physicians about the risk of permanent alopecia associated with docetaxel.  This Court excluded these opinions in both *Earnest* and *Kahn*, yet Dr. Bosserman continues to attempt to offer them.  Dr. Bosserman's opinions are just as improper here as they were in *Earnest* and *Kahn* and should be excluded for the same reasons.

**LEGAL STANDARD**

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  Under the Rule, the witness must be qualified as an expert, and her opinions must be both reliable and relevant.  *See* Fed. R. Evid. 702.  Rule 702 reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  *Daubert* instructs courts to serve as gatekeepers, "impos[ing] a special obligation upon a trial judge to 'ensure that any and all scientific testimony … is not only relevant, but reliable.'"  *Kumho Tire Co.*, 526 U.S. at 147 (second alteration in original) (quoting *Daubert*, 509 U.S. at 589); *see Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013).

The threshold inquiry under Rule 702 is whether the individual is "qualified to testify in a particular field or on a given subject," based on her "knowledge, skill, experience, training, or education."  *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (quoting Fed. R. Evid. 702).  After defining the permissible scope of the expert's testimony, the Court then assesses whether the opinion is reliable and relevant.  *See United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (per curiam).

To assess reliability, the Court considers whether the reasoning and methodology underlying the expert's testimony is "valid and can be reliably applied to the facts of the case."

*Id.* This "analysis applies to all aspects of an expert's testimony," including the "methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (citation omitted). If the opinion is based on mere "subjective belief or unsupported speculation," then the Court should exclude it. *Daubert*, 509 U.S. at 590; *see also Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000) ("Since *Daubert* … parties relying on expert evidence have had notice of the *exacting standards* of reliability such evidence must meet." (second emphasis added)). The party offering the expert testimony bears the burden of establishing that the expert's findings and conclusions are reliable. *See Sandifer v. Hoyt Archery, Inc.*, 907 F.3d 802, 808 (5th Cir. 2018) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)).

The Court also evaluates whether the testimony is relevant. In assessing relevance, the Court considers whether the expert's "reasoning or methodology 'fits' the facts of the case." *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 551 (E.D. La. 2015) (citation omitted); *see also Daubert*, 509 U.S. at 591 (discussing Rule 702's relevancy requirement in terms of "fit" (citation omitted)). In other words, the expert opinion "must 'help the trier of fact to understand the evidence or to determine a fact in issue.'" *Sandifer*, 907 F.3d at 809 (quoting Fed. R. Evid. 702).

Finally, Federal Rule of Evidence 703 provides that an expert may offer opinions based on otherwise inadmissible facts or data, but only if (1) they are of the kind reasonably relied upon by experts in the particular field; and (2) the testimony's probative value substantially outweighs its prejudicial effect. Fed. R. Evid. 703.

## ARGUMENT

## I.      THE COURT SHOULD EXCLUDE DR. BOSSERMAN'S CASE-SPECIFIC OPINIONS.

In *Earnest* and *Kahn*, this Court precluded Dr. Bosserman—a clinical professor of medical oncology who never treated or examined either Plaintiff—from offering any speculative, case-specific opinions concerning what the Plaintiffs or their oncologists would have done if Hospira's label had been different. This is because Plaintiffs and their oncologists had already

provided testimony on this subject at their depositions, were best qualified to do so, and were expected to do so again at trial. The same is true here. Nevertheless, Dr. Bosserman again attempts to supplant the testimony of Ms. Plaisance and her oncologist, Dr. Chauvin, with her own supposition. This Court should exclude it.

### A. Dr. Bosserman Should Not Be Allowed to Opine on What Ms. Plaisance's Physician Would Have Done Based on a Different Warning.

Dr. Bosserman should not be allowed to opine on what Ms. Plaisance's treating physician, Dr. Chauvin, would have done if Hospira's label had been different. To establish causation, the jury must decide that "a proper warning would have changed the decision of the treating physician." *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1099 (5th Cir. 1991). As this Court has twice-ruled, the "testimony from a treating physician, *not a third-party physician*, is appropriate to assist the jury." *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Kahn)* (Feb. 1, 2021), ECF No. 12109, at 5 ("*Kahn*") (emphasis added); *see also In re Taxotere (Docetaxel) Prods. Liab. Litig. (Earnest)* (Aug. 5, 2019), ECF 7807, at 4-5 ("*Earnest*"). Accordingly, where "Plaintiff's treating physician … is available to testify, Dr. Bosserman will not be allowed to opine on the facts of [Plaintiff's] case. [The prescribing doctor] can testify about how he would have responded to an adequate warning from Defendants." *Earnest* at 4-5; *Kahn* at 5 ("Plaintiff Kahn's treating physicians will be available to testify at her trial. They can testify about how they would have responded to a warning from Sanofi, and they can share any opinions they have about the honesty, accuracy, and truthfulness of the conversations they had with Plaintiff Kahn. The Court will not allow Dr. Bosserman to testify on this.").

This same analysis applies here. Because Plaintiff's prescribing physician is available to testify at trial, Dr. Bosserman should not be permitted to offer any testimony concerning how Dr. Chauvin would have responded to different information on the risk of permanent hair loss.

Nevertheless, Plaintiff intends to offer this very testimony from Dr. Bosserman in Trial 5. In her report, she opines on what Dr. Chauvin "would have" done based on different information:

Ms. Plaisance's prescribing oncologist, Dr. Chauvin, stated that she was unaware of the risk of PCIA related to the use of docetaxel, and further that *she would have discussed it with her patient if she had known of the risk.*

Ex. A, Expert Report of Dr. Bosserman (Aug. 16, 2021) ("Bosserman Rep."), at 43 (emphasis added).

She also includes the following statement:

The accurate communication of such information would have been included in the discussion and process of informed consent in a real and substantial way for any docetaxel based regimen.  It would have allowed for a more honest, accurate and complete informed consent process and discussions between the Dr. Chauvin, the oncology nurse, Ms. Plaisance, and her husband, and would have allowed for a decision to be made on more truthful and accurate information.

Ex. A (Bosserman Rep.) at 58.

Dr. Bosserman is therefore offering the same type of case-specific testimony that this Court has previously excluded.  Dr. Bosserman is opining that if Hospira had warned Dr. Chauvin of a risk of permanent alopecia, then she would have included this information in her discussions with Ms. Plaisance.  As this Court has repeatedly held, however, Dr. Bosserman's opinions are not helpful because Ms. Plaisance's physicians "can testify about how [they] would have responded to an adequate warning from Defendants." *Earnest* at 5.  Thus, this testimony should be excluded.

The Court should not permit Dr. Bosserman to circumvent its exclusion of case-specific testimony on the basis that she is relying on testimony from the prescribing doctors.  Dr. Bosserman testified:

Q.   And you're not offering an opinion on what actions Dr. Chauvin would have taken had she had additional or other information on Docetaxel or alopecia; correct?

A.   Only as it was in their deposition, if it was addressed.

…

Q.   And you would agree that Dr. Chauvin and Dr. Theodossiou would be in the best position to testify as to what they would or would not have done; correct?

4

A.   Correct.

Ex. A, Deposition of Dr. Bosserman (Sept. 20, 2021) ("Bosserman Dep."), at 45:10-24.

Dr. Bosserman misses the point entirely.  The fact that Ms. Plaisance's prescriber has testified is exactly why Dr. Bosserman's opinions are inadmissible.  As Dr. Bosserman admitted, Dr. Chauvin is in the best position to offer such testimony, and the jury can evaluate it.  Dr. Bosserman's opinions about the oncologist's testimony are not helpful and should be excluded under this Court's orders.

**B.     Dr. Bosserman Should Not Be Allowed to Opine on Ms. Plaisance's Treatment Preferences and/or Concerns.**

Dr. Bosserman also should not be allowed to opine on Ms. Plaisance's treatment preferences and/or concerns.  Dr. Bosserman cannot speak for Ms. Plaisance, particularly when she is in the best position to provide such testimony.  Yet Dr. Bosserman's report purports to state what Ms. Plaisance's preferences and concerns were:  "There were several treatment options with equal efficacy to reduce her recurrence risk and improve her overall survival, *while valuing her preferences for different acute, chronic and permanent toxicities like PCIA which could have and in fact, is having a major impact on her quality of life*."  Ex. A (Bosserman Rep.) at 59 (emphasis added).

This Court has previously excluded these exact opinions:

> In her report, Dr. Bosserman also notes that Plaintiff Kahn had preferences for "different acute, chronic and permanent toxicities like [permanent chemotherapy-induced alopecia] which would have a major impact on her quality of life."  This is inadmissible case-specific testimony.  Plaintiff Kahn herself will be available to testify about her preferences and any concerns she had about her quality of life. Her treating physicians, too, will be available to testify about what preferences and concerns Kahn shared with them.  Dr. Bosserman's testimony on this, therefore, will not be helpful to the jury.

*Kahn* at 6.  The result should be the same here.  The Court should exclude any testimony on Ms. Plaisance's preferences or concerns.

II.     **THIS COURT SHOULD LIMIT DR. BOSSERMAN'S TESTIMONY REGARDING ONLINE PREDICTIVE TOOLS.**

This Court has twice precluded Dr. Bosserman from offering testimony regarding online "predictive" tools in connection with a particular plaintiff's case. *See Earnest* at 6 ("In her report, Dr. Bosserman generally discusses the benefit of using online tools in the creation of a treatment plan. Such general testimony is permissible, although for reasons discussed herein, Dr. Bosserman will not be permitted to testify about the use of these tools in connection with Earnest's case."); *Kahn* at 7-8 ("Similarly, for Plaintiff Kahn's trial, Dr. Bosserman can generally discuss these tools, and she may opine that oncologists use them today to confirm their predictions. On cross-examination, Sanofi can emphasize that there is no evidence showing that Kahn's treating physicians used these tools."). This same ruling should apply here.

Although Dr. Bosserman testified she believed she had read this Court's order regarding her testimony, Ex. B (Bosserman Dep.) at 51:6-8, she nonetheless testified she would be offering these same inadmissible case-specific opinions:

> Q.   Are you going to be opining as to and applying the Predict model to the specific cancer presentation of Ms. Plaisance?
>
> A.   Yes.

Ex. B (Bosserman Dep.) at 53:5-8. And in her expert report she provides opinions applying these tools to Ms. Plaisance's particular medical facts. Dr. Bosserman repeatedly cites to certain online predictive tools, including "Adjuvant! On Line" and "Predict," Ex. A (Bosserman Rep.) at 35-40, to support her opinion that Ms. Plaisance "had several equally effective chemotherapy regimen options … that would provide the same miniscule or less reduction in her risk of tumor recurrence and survival impact. These options include 10 of the 14 Category regimens that did not have the proven risk of PCIA from docetaxel," *id.* at 44.

As the Court has recognized, any testimony from Dr. Bosserman about online predictive tools in relation to Ms. Plaisance's case should be excluded. Ms. Plaisance and Dr. Chauvin have and will testify as to what alternative treatment options were actually discussed and considered prior to selecting a treatment regimen. And there is *no evidence* that Dr. Chauvin

ever considered such online predictive tools in making her treatment decisions.  Thus, any testimony about online predictive tools in connection with Ms. Plaisance's case is irrelevant. *Moore v. Int'l Paint, L.L.C.,* 547 F. App'x 513, 515 (5th Cir. 2013) (per curium) ("When an expert's testimony is 'not based upon the facts in the record but on altered facts and speculation designed to bolster [a party's] position,' the trial court should exclude it." (quoting *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996))).

Thus, for the same reasons articulated by this Court in *Earnest* and *Kahn*, Dr. Bosserman should be precluded from offering testimony applying online "predictive" tools to Ms. Plaisance's case.

## III.   THIS COURT SHOULD PRECLUDE DR. BOSSERMAN FROM TESTIFYING ABOUT WHAT WAS KNOWN OR KNOWABLE ABOUT PERMANENT HAIR LOSS.

In *Kahn*, this Court precluded Dr. Bosserman from offering any testimony regarding what was known or knowable by Sanofi or Plaintiffs' physicians.  *Kahn* at 9 ("The Court will not allow Dr. Bosserman to offer these opinions.  She may not opine on what knowledge Sanofi had, what knowledge the writers of the informed consent document had, or what information Kahn's medical providers had.").  Yet Dr. Bosserman once again ignores this order and offers these opinions for Ms. Plaisance.  The Court should again exclude this testimony.

### A.   Hospira's Knowledge.

Dr. Bosserman offers opinions as to what was known by Hospira.  She states: "Hospira failed to timely and accurately warn physicians of the risk of PCIA associated with the use of docetaxel, and therefore that information was unavailable to Ms. Plaisance and her physician during the shared decision-making process."  Ex. A (Bosserman Rep.) at 59.  These opinions should be excluded for three reasons.

*First*, Dr. Bosserman does not offer any analysis that would allow her to testify about what was "known" on the risk of permanent alopecia.  In *Kahn*, the Court held:

> More significantly, after reviewing her report, the Court finds that Dr. Bosserman
> provides no analysis that would support her opinions about the knowledge that

Sanofi or the writers of the informed consent document had.  To the extent she relies on opinions from Dr. Feigal, Dr. Bosserman did not validate these opinions in any way in her report.  This is the kind of "unblinking reliance" on another expert's opinion that violates Federal Rule of Evidence 703.

*Kahn* at 9.

The same is true here.  Dr. Bosserman assumes an association between docetaxel and PCIA when she speculates about what physicians would have done had this association been "known."  Ex. A (Bosserman Rep.) at 15, 43.  But she has expressly disclaimed that she is not a causation expert and is relying entirely on Dr. Feigal for her opinions on the risk of permanent alopecia.

> Q.   And you have not done a causation analysis with regard to Docetaxel; correct?
>
> A.   Dr. Feigal is the expert that will discuss the causation data.
>
> Q.   And you have not done a causation analysis of any other chemotherapy drug and permanent alopecia; correct?
>
> A.   Correct.  I'm not the causation expert for this case.

Ex. B (Bosserman Dep.) at 50:10-18; *id.* at 131:17-21 ("Q. And I think we talked about this briefly.  You cite the Feigal report in your expert report, but you're not doing any independent analysis of her findings; correct?  A. Correct. She's the expert on that by far.").

This case is therefore identical to *Kahn*, in which Dr. Bosserman similarly relied, without independent analysis, upon Dr. Feigal's opinions, and the Court held that such blind reliance was improper.  *Kahn* at 9 (citing *In re TMI Litig*., 193 F.3d 613, 715-16 (3d Cir. 1999) (excluding expert's opinion because "unblinking reliance" on another's opinion demonstrates that the expert's opinion was flawed under *Daubert*); *Burst v. Shell Oil Co.*, 2015 WL 3620111, at *5 (E.D. La. May 9, 2015) ("[T]o the extent Dr. Harrison relies on Dr. Infante's report and the studies cited therein, his opinion is inadmissible because it reflects no original analysis or any evaluation of Dr. Infante's methodology or the studies upon which he relies.")).  The result should be the same here.

*Second,* in her deposition Dr. Bosserman disclaimed any opinions at to what Hospira knew and when:

> Q.   And you're not offering opinions as to what Hospira knew about Docetaxel and permanent hair loss; correct?
>
> A.   Since I'm not the timing expert in that, what -- there's come an awareness when information was available.  So my testimony is about the oncologist, what we rely on.  We expect the manufacturers to produce information and tell the truth about known side effects.  That's my area of expertise from the clinical expert point of view.  The dates and details are by -- going to be discussed by the regulatory experts.
>
> Q.   *So just so I'm clear, you're not going to be testifying as to when Hospira knew what about Docetaxel and PCIA?*
>
> A.   *Correct.*

Ex. B (Bosserman Dep.) at 48:25-49:15 (emphasis added).

*Third,* Dr. Bosserman confirmed that she has not reviewed a single Hospira document produced in this litigation.  Ex. B (Bosserman Dep.) at 35:4-18.  Therefore, by Dr. Bosserman's own admissions, she has no basis to offer any testimony as to what Hospira knew.

## B.   Physician Knowledge.

Dr. Bosserman also offers opinions on what Ms. Plaisance's doctors knew.  She once again attempts to put herself in the shoes of Plaintiff's prescriber by opining that "oncologists were not told and did not know that docetaxel had an increased risk of permanent hair loss."  Ex. A (Bosserman Rep.) at 56.  She then offers her rendition of their deposition testimony:

> Ms. Plaisance testified at her deposition she was never warned that her use of docetaxel might result in permanent chemotherapy induced alopecia.  Ms. Plaisance did not receive this warning because, as Dr. Chauvin testified in her deposition, she was unaware that Taxotere carried a risk of permanent chemotherapy induced alopecia at the time she prescribed Taxotere to Ms. Plaisance.

Ex. A (Bosserman Rep.) at 40.

The Court should exclude this testimony for several reasons.

*First,* this Court has previously precluded Dr. Bosserman from offering any testimony or opinions about what was known or knowable by a plaintiff's treating physicians. As the Court held in *Kahn*, this testimony is inadmissible because each prescribing physician "will be available to testify about whether he [or she] was informed of a risk of permanent alopecia." *Kahn* at 9. Thus, for the same reasons discussed above, her testimony should be excluded here.

*Second,* Dr. Bosserman explicitly disclaimed that she was offering any opinions as to what Ms. Plaisance's treating physician, Dr. Chauvin, knew:

> Q.   And you're not -- are you offering an expert opinion as to what Dr. Chauvin knew or didn't know about Docetaxel and alopecia?
>
> MR. MICELI: Object to the form.
>
> THE WITNESS: Only in what he put in his deposition. He'll speak for himself.
>
> …
>
> Q.   And both Dr. Chauvin and Dr. Theodossiou will be the best person to testify as to their knowledge; correct?
>
> A. Correct.

Ex. B (Bosserman Dep.) at 44:16-21, 45:6-9. As explained above, the Court should reject Dr. Bosserman's proposed loophole for deposition testimony and preclude any testimony from her on this subject.

## CONCLUSION

For the reasons herein, this Court should preclude or limit Dr. Bosserman's (1) case-specific opinions, (2) opinions applying online "predictive" tools to Ms. Plaisance's case, (3) opinions about what was known or knowable by Hospira and Plaintiff's treating physicians, including with respect to a supposed risk of permanent alopecia associated with its docetaxel.

Dated: November 12, 2021

Respectfully submitted,

*/s/ Heidi K. Hubbard*

Heidi K. Hubbard
Richmond T. Moore
Neelum J. Wadhwani
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
Telephone: 202-434-5000
hhubbard@wc.com

John F. Olinde (Bar No.1515)
Peter J. Rotolo (Bar No. 21848)
**CHAFFE MCCALL LLP**
1100 Poydras Street
New Orleans, LA 70163
Telephone: 504-858-7000
olinde@chaffe.com

*Counsel for Defendants Hospira, Inc.,*
*Hospira Worldwide, LLC, and Pfizer Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of November 2021, I electronically filed the

foregoing with the Clerk of the Court using the ECF system which sent notification of such filing

to all counsel of record.

/s/ *Heidi K. Hubbard*