UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION** | **MDL NO. 16-2740**<br><br>*This document relates to:*<br>Audrey Plaisance, Case No. 2:18-cv-08086<br>Clare Guilbault, Case No. 2:16-cv-17061 |

**MEMORANDUM OF LAW IN SUPPORT OF HOSPIRA'S MOTION TO EXCLUDE OR LIMIT OPINIONS OF DR. LAURA M. PLUNKETT**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 1

LEGAL STANDARD ............................................................................................................. 2

ARGUMENT .......................................................................................................................... 4

I.     THE COURT SHOULD EXCLUDE DR. PLUNKETT'S PREVIOUSLY-EXCLUDED OR DISCLAIMED OPINIONS ............................................................................................ 4

     A.    Causation-Related Opinions. ................................................................................ 4

          1.    Independent Risk. ...................................................................................... 4

          2.    Substantial Contributing Factor. ............................................................... 5

          3.    More Toxic. ............................................................................................... 5

     B.    Regulatory, Labeling, and Notice/Signal Detection Opinions. ............................ 6

II.    THE COURT SHOULD EXCLUDE DR. PLUNKETT'S OPINION THAT DOCETAXEL IS ASSOCIATED WITH A "GREATER RISK" OF PERMANENT ALOPECIA. ............. 8

     A.    Dr. Plunkett's "Greater Risk" Opinion Is Not Relevant or Helpful to the Jury........... 8

     C.    Dr. Plunkett's Opinions Are Confusing to the Jury. ................................................. 10

     D.    Dr. Plunkett's Methodology Is Unreliable Because She Did Not Consider Cases of Permanent Alopecia from Paclitaxel. ...................................................... 12

III.   THE COURT SHOULD EXCLUDE DR. PLUNKETT'S OPINIONS REGARDING BIOLOGICAL PLAUSIBILITY. ................................................................................ 13

IV.   THE COURT SHOULD EXCLUDE DR. PLUNKETT'S PROPOSED DISTINCTION BETWEEN DRUG-INDUCED ALOPECIA AND PCIA. ................................................ 15

CONCLUSION ..................................................................................................................... 16

CERTIFICATE OF SERVICE .............................................................................................. 17

## INTRODUCTION

Many of Dr. Plunkett's opinions have been excluded or disclaimed, and those same exclusions should apply here. Dr. Plunkett is not a general causation expert and is not permitted to "suggest to the jury that Taxotere can cause permanent alopecia." *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Kahn)* (Jan. 13, 2021), ECF No. 11823, at 5 ("*Kahn*"). The Court also has excluded the following causation-related opinions: (i) Docetaxel carries an independent risk of permanent chemotherapy-induced alopecia (PCIA); (ii) when used in combination, docetaxel is a substantial contributing factor to PCIA; and (iii) Docetaxel is more toxic than Taxol when used to treat breast cancer. Moreover, Dr. Plunkett has disclaimed and should not be permitted to offer any regulatory, labeling, or notice/signal detection opinions.

In addition, the Court also should exclude the following opinions from Dr. Plunkett:

*First*, her opinion that Docetaxel is associated with a "greater risk" of PCIA compared to other drugs, including Taxol, is irrelevant and unreliable. She is not opining that docetaxel causes PCIA, nor is she opining that there is a statistically significant or other quantified increased risk. As a result, her vague opinions about an undefined "greater risk" are unhelpful and confusing to the jury.

*Second*, the Court should exclude Dr. Plunkett's opinions on biologic plausibility and that PCIA is not the same as "drug-induced" alopecia. She identifies one mechanism of action in support of her opinion that it is biologically plausible that docetaxel can cause PCIA—killing rapidly dividing cells—but it applies to all forms of chemotherapy. The issue in this case, however, is whether docetaxel caused plaintiff's *permanent* alopecia. And she admits that there is no accepted mechanism of action for PCIA. Thus, her opinions on biologic plausibility and that PCIA is not the same as drug-induced alopecia should be excluded because they are not based on any data that "fit" the facts of the case.

## BACKGROUND

Dr. Plunkett, a toxicologist who is not a medical doctor, has offered six opinions:

1

1. "Taxotere/ docetaxel carries an independent risk of CIPAL/ PCIA."[1]

2. "[W]hen used in combination, Taxotere/ docetaxel has been a substantial contributing factor to CIPAL/ PCIA."

3. "Taxotere/ docetaxel is more toxic than Taxol/ paclitaxel when used to treat breast cancer."

4. "Taxotere/ docetaxel use is associated with a greater risk of CIPAL/ PCIA as compared to some other anti-neoplastic drug products, including Taxol/ paclitaxel."

5. "[I]t is biologically plausible that Taxotere/ docetaxel exposure can cause CIPAL/ PCIA."

6. "[I]rreversible alopecia (CIPAL/ PCIA) is not the same as drug-induced alopecia, a condition that is commonly seen with anti-neoplastic drug use. CIPAL/ PCIA is a condition where hair fails to regrow, or substantially regrow after exposure to the drug has ceased."

Ex. A, Expert Report of Dr. Plunkett (June 3, 2020) ("Plunkett Rep."), at ¶ 63.

Unlike in *Kahn*, Dr. Plunkett is not offering any regulatory opinions in this case. Dr. Plunkett's expert report is the same as her June 3, 2020 report in the Trial 3 cases against the 505(B)(2) defendants (Alice Hughes, Wanda Stewart, and Dora Sanford). After Dr. Kessler became unavailable, Dr. Plunkett issued a report dated February 7, 2021 in *Kahn* that contained regulatory opinions. Plunkett Suppl. Report, ECF No. 12575-4. However, Dr. Plunkett is not offering the opinions from her supplemental Kahn report in this case. Ex. B, Deposition of Dr. Plunkett (Sept. 24, 2021) ("Plunkett Dep."), at 10:25-11:4 ("Q. So you're not offering any new opinions in this case against Hospira that were not in your June 2020 report or the previous depositions, correct? A. That is correct."),

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under the Rule, the witness must be qualified as an expert, and her opinions must be both reliable and

---

[1] "CIPAL" stands for "chemotherapy-induced permanent alopecia." It refers to the same condition as PCIA and is simply another abbreviation for it.

relevant.  *See* Fed. R. Evid. 702.  Rule 702 reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  *Daubert* instructs courts to serve as gatekeepers, "impos[ing] a special obligation upon a trial judge to 'ensure that any and all scientific testimony … is not only relevant, but reliable.'"  *Kumho Tire Co.*, 526 U.S. at 147 (second alteration in original) (quoting *Daubert*, 509 U.S. at 589); *see Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013).

Under Rule 702, the expert must be "qualified to testify in a particular field or on a given subject," based on her "knowledge, skill, experience, training, or education."  *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (quoting Fed. R. Evid. 702).  The Court then assesses whether the opinion is reliable and relevant.  *See United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (per curiam).

To assess reliability, the Court considers whether the reasoning and methodology underlying the expert's testimony is "valid and can be reliably applied to the facts of the case."  *Id.*  This "analysis applies to all aspects of an expert's testimony," including the "methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion."  *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (citation omitted).  If the opinion is based on mere "subjective belief or unsupported speculation," then the Court should exclude it.  *Daubert*, 509 U.S. at 590; *see also Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000) ("Since *Daubert* … parties relying on expert evidence have had notice of the *exacting standards* of reliability such evidence must meet." (emphasis added)).  The party offering the expert testimony bears the burden of establishing that the expert's findings and conclusions are reliable.  *See Sandifer v. Hoyt Archery, Inc.*, 907 F.3d 802, 808 (5th Cir. 2018) (quoting *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)).

The Court also evaluates whether the testimony is relevant.  In assessing relevance, the Court considers whether the expert's "reasoning or methodology 'fits' the facts of the case."  *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 551 (E.D. La. 2015); *see also Daubert*, 509 U.S. at 591

3

(discussing Rule 702's relevancy requirement in terms of "fit"). In other words, the expert opinion "must 'help the trier of fact to understand the evidence or to determine a fact in issue.'" *Sandifer*, 907 F.3d at 809 (quoting Fed. R. Evid. 702).

Finally, Federal Rule of Evidence 703 provides that an expert may offer opinions based on otherwise inadmissible facts or data, but only if (1) they are of the kind reasonably relied upon by experts in the particular field; and (2) the testimony's probative value substantially outweighs its prejudicial effect. Fed. R. Evid. 703.

## ARGUMENT

### I. THE COURT SHOULD EXCLUDE DR. PLUNKETT'S PREVIOUSLY-EXCLUDED OR DISCLAIMED OPINIONS

The Court has excluded and/or Dr. Plunkett has disclaimed many of Dr. Plunkett's opinions. Dr. Plunkett has agreed that she will comply with this Court's past orders regarding her testimony. Ex. B (Plunkett Dep.) at 139:21-140:4. The Court should apply those same rulings here.

#### A. Causation-Related Opinions.

As an initial matter, the Court should preclude Dr. Plunkett from offering any causation opinions. Dr. Plunkett concedes that she is not a case-specific or general causation expert. Ex. B (Plunkett Dep.) at 37:24-38:12. Accordingly, the Court has previously excluded any causation opinions from Dr. Plunkett: "Dr. Plunkett did not conduct an analysis to assess general causation, so she may not suggest to the jury that Taxotere can cause permanent alopecia." *Kahn* at 5. This same ruling should apply here.

In addition, the Court should also apply its previous rulings excluding three causation-related opinions:

#### 1. Independent Risk.

The Court has prohibited Dr. Plunkett from opining that Taxotere *carries* an independent risk of permanent alopecia.

4

> To the Court, stating that Taxotere carries an independent risk of permanent alopecia is indistinguishable from stating that Taxotere alone can cause alopecia. Dr. Plunkett, therefore, must take care to state only that Taxotere has been *associated* with an independent risk of permanent hair loss.

*Kahn* at 5; *see also Kahn* Supplemental Order (July 23, 2021), ECF No. 13131, at 4-6 ("opinions are just the sort of causation opinions that this Court previously ruled inadmissible.").

The court should apply this ruling here and preclude Dr. Plunkett from testifying that docetaxel carries an independent risk of permanent alopecia.[2]

### 2. Substantial Contributing Factor.

The Court should exclude Dr. Plunkett's opinion that docetaxel, when used in combination with other drugs, is a "substantial contributing factor" to permanent alopecia. As the Court explained:

> This opinion would "invade the province of the jury." The jury will be tasked with determining proximate causation, and in the *Earnest* trial, the jury was instructed, per Louisiana law, to consider whether "Defendants' conduct was a 'substantial contributing factor' in bringing about the [alleged injury]." If Dr. Plunkett were to tell the jury that Taxotere was a "substantial contributing factor" that led to permanent alopecia in patients who took combination regimens, the jury may see this as a direct answer to the question of proximate causation. For these reasons, Dr. Plunkett may not testify that in combination regimens, Taxotere is a "substantial contributing factor" to permanent alopecia.

*Kahn* at 5-6 (footnotes and citations omitted) (*see also Kahn* Supplemental Order at 4-6 ("opinions are just the sort of causation opinions that this Court previously ruled inadmissible.").

### 3. More Toxic.

In *Earnest*, the Court held that Dr. Plunkett's "more toxic" opinion was "irrelevant and would be unhelpful to the jury."

> They aver that the opinion does not "fit" the facts of this case, which is about permanent hair loss. The Court agrees. If the jury were to hear this opinion, it may

---

[2] The Court should further exclude Dr. Plunkett's opinion that "Taxotere has been associated with an independent risk of permanent hair loss" for the same reasons as her "greater risk" opinions—it is irrelevant, unreliable, and confusing to the jury.

5

assume without a sufficient basis for doing so that if Taxotere is more toxic than Taxol, Taxotere is more likely to cause permanent hair loss.

*In re Taxotere (Docetaxel) Prods. Liab. Litig. (Earnest)* (Aug. 23, 2019), ECF No. 8097, at 6 ("*Earnest*"). The Court reaffirmed this ruling in *Kahn*. *Kahn* at 4-5.

In *Kahn*, the Court noted that Dr. Plunkett had not pointed to any new evidence on this issue since its *Earnest* order. *Kahn* at 4-5. The same is true here. When asked whether she had done "any additional research on the issue of comparing the toxicities of docetaxel and Taxol" when preparing her expert report, Dr. Plunkett replied, "No, I don't believe I've done any additional research." Ex. C, Deposition of Dr. Laura Plunkett, Vol. I, *Hughes v. Accord Healthcare, Inc.*, No. 2:17-cv-11769, & *Stewart v. Sandoz, Inc.*, No. 2:17-cv-10817 (Sept. 3, 2020) ("Sept. 3, 2020 Plunkett Dep."), at 106:2-7. She confirmed that she could not point to any new or additional evidence with regard to comparing the toxicities of docetaxel and Taxol that she did not previously have available to her. *Id*. at 106:2-109:9. Thus, the Court should affirm this ruling.

### B. Regulatory, Labeling, and Notice/Signal Detection Opinions.

Dr. Plunkett should not be permitted to offer regulatory, labeling, or notice/signal detection opinions because she has expressly disclaimed them in this case. In her deposition, Dr. Plunkett conceded that she is not offering the following:

- regulatory opinions,[3]

- opinions about Hospira's label and warnings,[4]

- opinions about Hospira's 505(b)(2) application,[5]

---

[3] "Q: [Y]ou're not offering any opinions on regulatory issues, right? A: That is correct. There's another expert, it's my understanding, that will handle those issues." Ex. B (Plunkett Dep.) at 30:12-17; *see also Id.* at 30:23-31:2, 21:3-4 ("I'm not giving regulatory opinions.").

[4] "Q. And you're not offering any opinions that are criticizing Hospira about its labeling, right? A. That is correct. Again, others will be handling that." Ex. B (Plunkett Dep.) at 33:12-15).

[5] "Q. And in particular, just so we're not -- so there's no confusion, on paragraph 51 of your report, you do have a brief discussion of labeling. Do you see that? A. That's correct… Q. Okay. So you're not offering any -- outside the fact that it's been approved by the FDA, you're not offering any opinions based on paragraph 51? A. I don't plan to, no. It depends what

- opinions about what Hospira knew or should have known about the risk of permanent alopecia.[6]

Ex. B (Plunkett Dep. 30:10-38:8).

In addition, Dr. Plunkett confirmed that she is not offering any opinions on the relevant labeling issue for Hospira as a 505(b)(2) applicant—i.e., whether there was "newly acquired information" *after Hospira's March 2011 approval* that met the regulatory standard for a labeling update.  21 C.F.R. § 314.3; *see also* Hospira's Mem. Supp. Mot. Summ. J. re Preemption (Nov. 12, 2021) (explaining regulatory framework).  Rather, when asked if she was "going to offer any opinion at trial that the scientific information that became available after March 2011 contained new information that, for the first time, provided a basis to believe there is a causal relationship between docetaxel and permanent alopecia," Dr. Plunkett replied that "it's beyond the scope of what I was asked to do for this case… [T]hose questions, in my view, deal with the issue of the regulatory notice and the standard for adding a warning to the label… What I'm doing is different …"  Ex. B (Plunkett Dep.) at 124:22-125:12.  She agreed that such opinions "wouldn't be within the scope of" her expert report or opinions.  *Id.* at 125:21-126:1.  Those opinions should therefore be excluded.

Finally, the regulatory opinions that Dr. Plunkett offered against Sanofi are not part of her opinions in this case and should not be permitted here.  In *Kahn*, the Court allowed Dr. Plunkett to offer certain regulatory/labeling opinions against Sanofi:

---

questions are asked of me at trial.  But obviously this is in my report.  If, at trial, someone wants to ask me questions about this paragraph, I certainly would be -- would be able to provide what is here.  Q. Okay.  Unless someone asks you, you're not intending to offer any affirmative opinions in this case based on paragraph 51 of your report, correct?  A. That is correct.  Q. And you don't -- so you're not -- you're not going to opine, for example, that Hospira's docetaxel labeling was inadequate? …  A. That is correct."  Ex. B (Plunkett Dep.) at 31:3-32:17.

[6] "Q. And you're not offering any opinions about what knowledge Hospira had about the risk of docetaxel and hair loss? …  A. That is correct.  That is correct, in terms of the way that you would do if you were reviewing company depositions and things like that, no, because I haven't reviewed those things.  Q. (BY MR. MOORE) So you haven't reviewed any Hospira depositions, for example, right?  A. That is correct. I have not."  Ex. B (Plunkett Dep.) at 33:16-34:1.

7

> Taxotere/ docetaxel use is associated with an increased risk of CIPAL/ PCIA as compared to other drugs used in breast cancer treatment. Thus, the evidence discussed in my March Report provides important support for my new opinion that there is a basis in the Taxotere database, importantly including clinical trial evidence, "to believe there is a causal relationship between the drug and the occurrence of the adverse event."

*Kahn* Supplemental Order at 6 (quoting *Kahn* Suppl. Rep). As the Court explained, however, these opinions "do[] not speak to causation but rather to association and whether there was a basis to believe a causal relationship existed." *Id.* The question of whether there is a "basis to believe" a causal relationship existed is the regulatory standard that Dr. Plunkett cites from 21 C.F.R. § 201.57(c)(7). *Kahn* Suppl. Rep. at ¶ 90. Unlike *Kahn*, Dr. Plunkett is not a regulatory expert in this case and is not offering those regulatory opinions—or any other regulatory opinions. Thus, those opinions should be excluded.

## II. THE COURT SHOULD EXCLUDE DR. PLUNKETT'S OPINION THAT DOCETAXEL IS ASSOCIATED WITH A "GREATER RISK" OF PERMANENT ALOPECIA.

The Court should exclude Dr. Plunkett's opinion that docetaxel is associated with a "greater risk" of PCIA as compared to some other chemotherapy drugs, including Taxol. This opinion should be excluded because (i) it does not "fit" any issue that the jury will decide, (ii) it would confuse the issues; and (iii) it is not based on a reliable method.[7]

### A. Dr. Plunkett's "Greater Risk" Opinion Is Not Relevant or Helpful to the Jury.

For Dr. Plunkett's opinions to be admissible, they must "help the trier of fact to understand the evidence or to determine a fact in issue." *Sandifer v. Hoyt Archery, Inc.*, 907 F.3d 802, 809 (5th Cir. 2018) (quoting Fed. R. Evid. 702); *see also* Fed. R. Evid. 401 (evidence must have a tendency to make a fact of consequence "more or less probable.")

Dr. Plunkett's "greater risk" opinion does not help the jury answer any question in this case. Dr. Plunkett is not opining that docetaxel causes PCIA, nor is she offering any opinions that are

---

[7] Although this Court has previously allowed this opinion, Hospira now moves to exclude these opinions on additional grounds that have not been previously ruled on.

8

relevant to help the jury decide the causation issue. This Court has previously outlined what plaintiffs need to show for general causation:

> To assess whether general causation exists between an agent and a disease, the case law recognizes a two-prong test. First, there must be evidence showing a "statistically significant association" between the agent and the disease. Second, once an association is found, researchers assess whether a true causal relationship underlies the association. Typically, an expert applies the Bradford Hill criteria to evaluate this second prong. The Bradford Hill criteria are: (1) temporal relationship; (2) strength of the association; (3) dose-response relationship; (4) replication of findings; (5) biological plausibility; (6) consideration of alternative explanations; (7) cessation of exposure; (8) specificity of the association; and (9) consistency with other knowledge.

Order and Reasons denying Sanofi's Motion to Exclude Expert Testimony on General Causation, ECF No. 8094, Aug. 23, 2019 (footnotes omitted). Dr. Plunkett's opinions do not fit anywhere in this analysis.

*First*, Dr. Plunkett is not offering any opinions on the first prong—that there is a statistically significant association between PCIA and docetaxel. Dr. Plunkett has not made any attempt to independently quantify the "greater risk" of permanent alopecia, let alone show that this supposed increased risk is statistically significant. Ex. B (Plunkett Dep.) at 53:1-54:24. Rather, Dr. Plunkett's "greater risk" opinions consist of nothing more than her review of the literature and conclusion that the case reports for docetaxel are "more frequent": "[A]lthough cases of irreversible alopecia have been reported with Taxol/ paclitaxel use, the reports in the medical literature with Taxotere/ docetaxel use have been much more frequent." Ex. A (Plunkett Rep.) at ¶ 62.

She does not offer any opinions herself on whether this supposed "greater risk" is statistically significant and instead defers entirely to Dr. Madigan, plaintiff's statistician:

Q. And you'll defer to Dr. Madigan's testimony on what he believes is statistically significant and what's not statistically significant, or not?

A. Absolutely. Dr. Madigan and I -- I expect him to speak to these issues in this -- in this particular case, yes.

Ex. B (Plunkett Dep. 75:20-76:1).

9

*Second*, Dr. Plunkett admits that she has not done any analysis of the Bradford Hill factors in the second part of the causation analysis.  Ex. D, Deposition of Dr. Laura Plunkett, *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Crayton)*, No. 2:17-cv-05923, & *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Thibodeaux)*, No. 2:16-cv-1589 (Nov. 19, 2019) ("Nov. 19, 2019 Plunkett Dep."), at 80:16-17 ("I haven't done a full Bradford Hill analysis to use the word 'cause.'").

Thus, all Dr. Plunkett offers is a vague conclusion that there is some unquantified "greater" risk, with no opinion on whether it has any statistical significance.  This does not fit within the general causation analysis, or any other issue in the case, and should be excluded for that threshold reason.

### C. Dr. Plunkett's Opinions Are Confusing to the Jury.

A judge assessing a proffer of expert scientific testimony under Rule 702 "should consider the applicability of Federal Rule of Evidence 403."  *Douglas v. Chem Carriers Towing*, 431 F. Supp. 3d 830, 834-35 (E.D. La. 2019).  Under Federal Rule of Evidence 403, the Court may exclude evidence "if its probative value is substantially outweighed by a danger of … confusing the issues [or] misleading the jury …" *Id.*, at 839 (holding expert's opinions were inadmissible under Rule 403).  Because expert evidence can be "quite misleading," a court under Rule 403 should exercise "more control over experts than over lay witnesses." *Id.* at 835 (quoting *Daubert*, 509 U.S. at 595).

Even if Dr. Plunkett's opinions were relevant, they undoubtedly would be highly confusing to the jury.  Dr. Plunkett "may not suggest to the jury that Taxotere can cause permanent alopecia." *Kahn* at 5.  However, Dr. Plunkett offers an extensive review and discussion of the medical literature and concludes that there is a "greater risk" of PCIA with docetaxel.   It is unreasonable to expect the jury to hear this "greater risk" testimony without concluding that Dr. Plunkett is offering prohibited causation testimony.

10

This danger is even more pronounced because Dr. Plunkett is opining on an undefined, unquantified, and non-statistically significant "association." It is well-established that an association must be statistically significant to show causation. *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 800 (E.D. La. 2011) (excluding causation opinions that "rest[] entirely on studies that do not show statistically significant results"); *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 145 (1997) (holding that expert testimony should be excluded because studies on which they relied were not statistically significant); *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 197 (5th Cir. 1996) ("While appellants' experts acknowledge the lack of statistically significant epidemiological evidence, they rely on certain studies as 'suggestive' of a link between EtO exposure and brain cancer. 'Suggestiveness' is not by the experts' own admission statistical significance …; this basis for their scientific opinion must be rejected."). Thus, an opinion on alleged "association" does not fit the issue of causation unless it is statistically significant. Yet Dr. Plunkett opines that there is an alleged "greater risk" that is not even quantified, let alone statistically significant. There is a significant danger that the jury would erroneously conclude that this "association" is relevant to showing causation.

This danger of jury confusion is analogous to the Court's reasoning in excluding Dr. Plunkett's "more toxic" opinions. As the Court explained, "[i]f the jury were to hear this ["more toxic"] opinion, it may assume without a sufficient basis for doing so that if Taxotere is more toxic than Taxol, Taxotere is more likely to cause permanent hair loss." *Earnest* at 6. So too here. Dr. Plunkett is prohibited from "suggest[ing] to the jury that Taxotere can cause permanent alopecia." *Kahn* at 5. Yet if the jury were to hear Dr. Plunkett's "greater risk" opinion, they may assume, with no valid basis, that docetaxel can cause permanent alopecia. Thus, the Court should exclude this testimony for this reason also.

Moreover, although the Court has previously allowed Dr. Plunkett to state that "Taxotere has been *associated* with an independent risk of permanent hair loss," *Kahn* at 5 (emphasis in original), this opinion also should be excluded. Saying that docetaxel is "associated" with an

11

independent risk—with no opinion that this risk is statistically significant and no Bradford Hill analysis—does not advance the ball on causation or any relevant issue. And the jury would likely interpret this testimony as implying causation. The Court should therefore expand its opinion on "independent risk" to exclude this irrelevant and confusing testimony from Dr. Plunkett on "association."

### D. Dr. Plunkett's Methodology Is Unreliable Because She Did Not Consider Cases of Permanent Alopecia from Paclitaxel.

Under Rule 702, an expert must "reliably appl[y] the principles and methods to the facts of the case." Here, Dr. Plunkett's "greater risk" calculations are not based on a reliable method because she excludes, with no valid bases, cases of paclitaxel.

Dr. Plunkett has testified that she did not consider a 2019 article by Freites-Martinez that identified 47 cases of PCIA in patients taking paclitaxel—16 more than with Docetaxel. Azael Freites-Martinez, et al. *Assessment of Quality of Life and Treatment Outcomes of Patients with Persistent Postchemotherapy Alopecia*. JAMA Dermatology. Ex. C (Sept. 3, 2020 Plunkett Dep.), at 122:22-124:17; Ex. D, (Nov. 19, 2019 Plunkett Dep.), at 311:11-332:20. She admits that the Freites-Martinez article would have been available to her, and "is part of a weight of the evidence," Ex. C, (Sept. 3, 2020 Plunkett Dep.), at 210:24-211:22, but claims that she did not rely on it because she "didn't believe it brought up something new or different." Ex. E, Deposition of Dr. Laura Plunkett, *Kahn v. Sanofi-Aventis U.S. L.L.C.*, No. 2:16-cv-17039 (Apr. 27, 2020), at 43:16-44:23; Ex. C, (Sept. 3, 2020 Plunkett Dep.) at 122:22-124:17, 124:6-17.

However, she does not provide any valid basis for why this article should be treated any differently than other sources she considered. For example, she testified about the lack of denominator information in the Freites-Martinez article, Ex. D, (Nov. 19, 2019 Plunkett Dep.), at 327:1-328:11, but agreed that of all the literature cited in her expert report "whether it's talking about Taxotere, whether it's talking about Taxol, whether it's talking about a non-taxane-based chemotherapy, few, if any, of them have a denominator." *Id.* at 328:1-332:20; *see also id.* ("Q. So,

12

for example, when Dr. Bourgeois reports that there are 80 cases of what he calls permanent chemotherapy-induced alopecia after FEC-100, what we don't know is how many patients in France were treated with that particular chemotherapy regimen; correct?  A. That is correct, we do not know.").  Similarly, Dr. Plunkett opines that certain articles are important *because* "[t]he authors suggested that docetaxel was the causative agent in their patient," Ex. A, (Plunkett Rep.) at ¶ 39, but the Freites-Martinez article only included cases as PCIA if the patients had a "clinical diagnosis of pCIA" and excluded cases if "[o]ther potential causes of alopecia" were identified.  Thus, by Dr. Plunkett's own standards, the 47 cases of clinically diagnosed PCIA identified in Paclitaxel patients by the Freites-Martinez article should be important.  Yet she excluded them from her analysis.

Thus, Dr. Plunkett has not reliably applied her methodology to the facts of the case.  "[A]n expert may not 'pick and choose' from the scientific landscape and present the Court with what he believes the final picture looks like."  *In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 242 (S.D.N.Y. 2018), *aff'd*, 982 F.3d 113 (2d Cir. 2020) (citation omitted)).  "Where an expert ignores evidence that is highly relevant to his conclusion, contrary to his own stated methodology, exclusion of the expert's testimony is warranted."  *Id.*  Dr. Plunkett has engaged in exactly this type of cherry-picking of data here, and that is another reason to exclude this unhelpful and confusing testimony.  *Id.* at 261-62 (excluding Dr. Plunkett's opinions based in part of failure to consider evidence that did not support her opinion).

### III. THE COURT SHOULD EXCLUDE DR. PLUNKETT'S OPINIONS REGARDING BIOLOGICAL PLAUSIBILITY.

The Court should exclude Dr. Plunkett's unsupported opinion that "it is biologically plausible that Taxotere/ docetaxel exposure can cause CIPAL/ PCIA."

*First,* biological plausibility is an element of a Bradford Hill analysis, which Dr. Plunkett did not perform.  "The Bradford Hill criteria are metrics that epidemiologists use to distinguish a causal connection from a mere association."  *In re Mirena*, 341 F. Supp. 3d at 242 (After an

13

epidemiological association has been demonstrated, these "eight or nine criteria" are used to determine whether that epidemiological association is causal). Here, Dr. Plunkett is not an epidemiologist, did not perform a Bradford Hill analysis, and is not testifying about causation. Thus, her isolated opinions on "biological plausibility"—entirely untethered to any causation analysis and without any supporting analysis of any of the other Bradford Hill factors—is not helpful.

*Second,* Dr. Plunkett has not identified any mechanism of action to support her biological plausibility opinions. A "mechanism of action" is a "term used to describe how a drug or other substance produces an effect in the body."[8] Dr. Plunkett opines that the mechanism of action for docetaxel causing PCIA is that it kills rapidly dividing cells. Ex. F, Deposition of Dr. Laura Plunkett, Vol. II, *Hughes v. Accord Healthcare, Inc.*, No. 2:17-cv-11769, & *Stewart v. Sandoz, Inc.*, No. 2:17-cv-10817 (Sept. 8, 2020), at 301:9-17 (no mechanism of action "[o]ther than talking about the biologic plausibility of the relationship based on what we know about the drug and its activity on rapidly dividing cells, which the cells of the hair follicles would contain."). However, she admits that (i) this is the same mechanism of action for all hair loss (temporary or permanent); and (ii) each of the chemotherapy drugs used today in the adjuvant treatment of breast cancer attack rapidly dividing cells. Ex. C (Sept. 3, 2020 Plunkett Dep.), at 85:10-86:19. Moreover, she could not identify any separate molecular mechanism of action for *permanent hair loss*, the condition she is attempting to validate. *Id.* at 67:3-21; Ex. B (Plunkett Dep.), at 129:23-130:7.

Dr. Plunkett's biological plausibility opinions are therefore unhelpful. The relevant issue is whether docetaxel causes *permanent* hair loss. Allowing Dr. Plunkett to testify that it is biologically plausible that docetaxel can cause *alopecia*—with no separate mechanism of action for permanent alopecia—does not help the jury answer that question. There is nothing "biological" to

---

[8] *Mechanism of Action*, National Cancer Institute, https://www.cancer.gov/publications/dictionaries/cancer-terms/def/mechanism-of-action (last visited November 10, 2021).

support her opinion other than the fact that docetaxel is a chemotherapy drug, which causes hair loss by attacking rapidly dividing cells, just like all other chemotherapy drugs. In other words, on the issue of permanent alopecia, Dr. Plunkett cannot point to any biological difference between docetaxel and other chemotherapy drugs. Thus, Dr. Plunkett's biological plausibility opinions should be excluded because she has not identified any applicable mechanism of action that "fits" the facts of case and will help the jury determine the relevant issue of whether docetaxel caused plaintiffs to have PCIA. *See In re Mirena*, 341 F. Supp. 3d at 256-63 (excluding Dr. Plunkett's opinions where her biological plausibility opinions failed to identify a valid mechanism of action); *see also Lassiegne v. Taco Bell Corp.*, 202 F. Supp. 2d 512, 515 (E.D. La. 2002).

### IV. THE COURT SHOULD EXCLUDE DR. PLUNKETT'S PROPOSED DISTINCTION BETWEEN DRUG-INDUCED ALOPECIA AND PCIA.

Dr. Plunkett also opines in her expert report that permanent chemotherapy induced (PCIA) is *different* than "drug-induced" alopecia. According to Dr. Plunkett, PCIA is "a condition where hair fails to regrow, or substantially regrow," whereas hair loss in "drug-induced alopecia" is temporary. Ex. A (Plunkett Rep.) at ¶¶ 30-32, 63. But Dr. Plunkett does not offer any helpful testimony in support of this supposed distinction. As explained above, she does not offer any biological evidence that there is any separate mechanism of action for the two conditions. Her opinions do nothing more than describe a reported difference in outcome among patients, with no relevant expert testimony that would explain the difference or why it occurs. Indeed, she admits that she is not a medical doctor and does not have the required qualifications to explain these conditions herself, and therefore she simply repeats the studies' definitions of permanent or persistent alopecia . *See* Ex. D, (Nov. 19, 2019 Plunkett Dep.) at 146:6-150:9, 197:10-201:9. Thus, the Court should exclude Dr. Plunkett's opinion that "irreversible alopecia (CIPAL/ PCIA) is not the same as drug-induced alopecia" because her opinions are not supported by any relevant facts and are unhelpful to the jury.

## CONCLUSION

For all the foregoing reasons, Hospira respectfully requests that the Court exclude or limit opinions of Dr. Plunkett as set forth above.

Dated: November 12, 2021            Respectfully submitted,

                                               */s/ Heidi K. Hubbard*
                                               Heidi K. Hubbard
                                               Richmond T. Moore
                                               Neelum J. Wadhwani
                                               **WILLIAMS & CONNOLLY LLP**
                                               725 Twelfth Street, N.W.
                                               Washington, D.C. 20005-5901
                                               Telephone: 202-434-5000
                                               hhubbard@wc.com

                                               John F. Olinde (Bar No.1515)
                                               Peter J. Rotolo (Bar No. 21848)
                                               **CHAFFE MCCALL LLP**
                                               1100 Poydras Street
                                               New Orleans, LA 70163
                                               Telephone: 504-858-7000
                                               olinde@chaffe.com

                                               *Counsel for Defendants Hospira, Inc., Hospira Worldwide, LLC, and Pfizer Inc.*

16

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 12th day of November 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

                                                                       /s/ *Heidi K. Hubbard*