# EXHIBIT E

```
                                                              Page 1

 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
 2              CASE NO. 2:16-cv-17039
 3
 4    ELIZABETH KAHN,                        ) VIDEOCONFERENCE
                                             ) VIDEOTAPED
 5                                           ) DEPOSITION OF:
                  Plaintiff,                 )
 6                                           )
         v.                                  ) LAURA M.
 7                                           ) PLUNKETT,
                                             ) Ph.D., DABT
 8                                           )
      SANOFI S.A., SANOFI-AVENTIS            )
 9    U.S. L.L.C., SANOFI US SERVICE,        )
      INC., and AVENTIS-PHARMA S.A.,         )
10                                           )
                  Defendants.                )
11    _____        )
12
13            TRANSCRIPT of the stenographic notes of
14    the proceedings in the above-entitled matter, as
15    taken by and before ELLEN J. GODINO, CCR, RPR, CRCR,
16    held via Zoom videoconference from multiple
17    locations, with the witness located at 13923 Carriage
18    Walk Lane, Houston, Texas, on Monday, April 27, 2020,
19    commencing at 2:59 p.m.
20
21
22
23
24
25
```

Page 42

1  Q. Yeah. And did you find any additional
2  literature that you reviewed in preparation for this
3  report, whether you relied upon it or not?
4  A. I certainly read some abstracts, but I
5  did not add -- I did not retrieve them, or add them
6  to my reliance materials. In other words, when I do
7  the search, the abstracts come up, and I looked
8  through them.
9  Q. Were there any abstracts, between your
10 last report and this report, that you reviewed that
11 pertained to permanent chemotherapy-induced
12 alopecia?
13 A. Yeah, there were some things that came
14 up, but I don't recall anything that added new
15 information that I put -- that I felt I needed to
16 cite in this report.
17 Q. Yeah, what were those abstracts?
18 A. Oh, I don't know. I would have to redo
19 the search. I didn't add them to my reliance
20 materials, and I didn't form an opinion based upon
21 them.
22 Q. Okay. And can you explain to me why
23 they didn't add anything new to your report?
24 A. There was -- there was nothing there
25 that I saw that provided me with any new comparative

Page 43

1   information, or anything different than what I had
2   over time.  I mean, my opinions in this case have
3   been focusing on looking at what was known over
4   time; and focusing mainly on things that were known
5   in the time period up to about 2013 or 2014.
6        Q.    All right.  Dr. Plunkett, I'm going to
7   introduce Exhibit Number 4.
8              MR. MICELI:  Torrey, let us know when
9   it's up on the system.
10             (Exhibit Plunkett-4, Article from JAMA
11  Dermatology titled "Assessment of Quality of Life
12  and Treatment Outcomes of Patients with Persistent
13  Postchemotherapy Alopecia" was received and marked
14  for identification.)
15             MR. MICELI:  There we go.
16       Q.    All right.  So Dr. Plunkett, this is
17  up -- it was actually used as Exhibit 18 at your
18  last --  at your last deposition.
19             Do you recall answering questions about
20  this particular article?
21       A.    Yes.
22       Q.    Okay.  And this is an article that was
23  published March 2019.  Dr. Antonella Tosti, one of
24  plaintiff's dermatology experts, is one of the
25  authors of this article.

Page 44

```
 1              And so my question to you is:  I
 2   noticed this is not on your reliance list.  Is this
 3   something that you did not review in preparation for
 4   your current report?
 5        A.    I didn't add it to my reliance
 6   materials.  No, I did not.
 7        Q.    Is it something that you considered or
 8   relied upon -- considered in preparing your new
 9   report?
10        A.    I certainly considered it, because I
11   went back and looked at some of the exhibits to
12   depositions, and I read through my deposition
13   testimony.  But I did not add this to my reliance
14   materials.
15        Q.    So is there a reason why you did not
16   rely upon one of the most recent pieces of medical
17   literature on persistent alopecia, authored by
18   plaintiff's expert?
19              MR. MICELI:  Object to the form.
20        A.    No particular reason that I didn't add
21   it; I just -- I did not add this to my list.  I
22   didn't believe it brought up something new or
23   different.
24              And then there was some issues that you
25   and I went with, when I talked to you about this,
```

```
1    looking back at the -- some of the tables and the
2    information that wasn't clear.  I didn't believe
3    that this gave me new information that allowed me to
4    talk about, for example, rates, comparative rates,
5    and things like that.
6         Q.    And did you contact Dr. Tosti to ask
7    her questions, since this is her article?
8         A.    No, I did not talk to Dr. Tosti about
9    this article.  I think I suggested that you might
10   want to, though.
11        Q.    And this was an article, if you
12   remember, Dr. Plunkett, where, in the patient
13   population of taxane-based chemotherapy, there were
14   more cases of permanent chemo -- diagnosed permanent
15   chemotherapy-induced alopecia with Taxol than with
16   docetaxel.  Is that correct?
17        A.    By the -- by the numbers that they
18   counted, I believe that is true.  Where we had some
19   questions was understanding what they had been
20   exposed to, in addition to that.
21        Q.    And so let's take that in two steps.
22   So you do agree that this -- this particular
23   publication, this particular study, demonstrated
24   that there were more cases of Taxol -- patients who
25   took Taxol and had permanent chemotherapy-induced
```

Page 161

# CERTIFICATE

I, ELLEN J. GODINO, CCR, CRCR, RPR, do hereby certify that prior to the commencement of the examination, LAURA PLUNKETT, PhD, DABT, was duly sworn by me to testify the truth, the whole truth and nothing but the truth.

I DO FURTHER CERTIFY that the foregoing is a true and accurate transcript of the testimony as taken stenographically by and before me at the time, place and on the date hereinbefore set forth, to the best of my ability.

I DO FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in the action.

*[signature: Ellen J. Godino]*

ELLEN J. GODINO
CERTIFIED COURT REPORTER
REGISTERED PROFESSIONAL REPORTER
CERTIFIED REALTIME COURT REPORTER
DATED: April 29, 2020