UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 16-2740<br><br>*This document relates to:*<br>Audrey Plaisance, Case No. 2:18-cv-08086 |

### HOSPIRA'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT BASED ON THE LEARNED INTERMEDIARY DOCTRINE

Defendants Hospira, Inc. and Hospira Worldwide LLC (collectively, "Hospira") hereby submit this Statement of Undisputed Material Facts in Support of Hospira's Motion for Summary Judgement Based on Warnings Causation, pursuant to Local Rule 56.1:

### I.  Background

1. Plaintiff Audrey Plaisance is a Louisiana resident.  Ex. A (PFS[1]) at 2; Ex. B (ASFC[2]) at ¶ 4; Ex. C (Plaisance Dep.) at 12:21-13:4.

2. Ms. Plaisance was prescribed and administered her docetaxel treatment in Louisiana.  Ex. A (PFS) at 12-13; Ex. B (ASFC) at ¶ 11.

3. Ms. Plaisance's alleged injury occurred in Louisiana.  Ex. B (ASFC) at ¶ 5.

### II.  Ms. Plaisance's Cancer Diagnosis and Treatment

4. Ms. Plaisance was diagnosed with breast cancer on December 2, 2013.  Ex. A (PFS) at 12; Ex. C (Plaisance Dep.) at 164:5-17.

5. Ms. Plaisance underwent surgery for a right partial mastectomy on December 11, 2013.  Ex. A (PFS) at 12.

---

[1]  "PFS" refers to Plaintiff Audrey Plaisance's Third Amended Plaintiff Fact Sheet, which is attached as Exhibit A.

[2]  "ASFC" refers to Plaintiff Audrey Plaisance's First Amended Short Form Complaint, which is attached as Exhibit B.

6.  Ms. Plaisance received chemotherapy treatments from January 17, 2014 to March 20, 2014, and her regimen consisted of four cycles of docetaxel and Cytoxan administered approximately every three weeks.  Ex. A (PFS) at 12; Ex. B (ASFC) at ¶ 10.

7.  Ms. Plaisance's treatment was successful, and she is currently cancer-free.  Ex. A (PFS) at 16; Ex. C (Plaisance Dep.) at 33:17-19.

8.  Ms. Plaisance trusted her doctors' medical judgment and followed the advice of her doctors who treated her for breast cancer.  Ex. C (Plaisance Dep.) at 29:13-30:3.

9.  Ms. Plaisance's primary goal in treatment was to beat her cancer, and she wanted to receive the best treatment:

> Q: And how did you feel about your diagnosis when you first learned about it?
>
> A: I was kind of shocked. You know, you -- you don't expect to hear it, you know, that you have cancer and I was just hoping for the very, very best. And I just wanted them, you know, as soon as possible to have them to do what they had to do.
>
> Q: Is it fair to say that your primary goal was to beat the cancer?
>
> A: Oh, definitely.
>
> Q: And you wanted to receive the best treatment for it?
>
> A: Yes.

Ex. C (Plaisance Dep.) at 165:16-166:3.

10.  Ms. Plaisance credits chemotherapy with helping her beat breast cancer.  Ex. C (Plaisance Dep.) at 212:8-11.

11.  Ms. Plaisance began losing hair after receiving the first cycle of docetaxel and Cytoxan, and given the amount of hair loss, she shaved her head before receiving the second cycle of treatment.  Ex. C (Plaisance Dep.) at 215:24-216:22.

12.  Ms. Plaisance testified that when her prescribing oncologist spoke with her about the potential risks of chemotherapy, hair loss was not something she was concerned about at the time:

> Q: And did Dr. Chauvin speak with you about potential risks of Taxotere and cytoxan?
>
> A: Are you talking about the side effects? Yes, she did.
>
> …
>
> Q: And did you ask Dr. Chauvin any questions about the potential risk of hair loss?
>
> A: No. I just understood that it would be temporary.
>
> Q: Did you tell her that you were concerned about hair loss?
>
> A: *No. I was not concerned about my hair loss at the time*.

Ex. C (Plaisance Dep.) at 186:17-20, 187:9-16 (emphasis added).

  13. Ms. Plaisance believes she should have been warned of the risk of permanent hair loss, and states that had she been warned, she would have asked to look into another treatment option. Specifically, Ms. Plaisance testified:

> Q: And what do you want to get out of this lawsuit?
>
> A: I think I would want people to be made more aware because hair means a lot to a woman, at least to me, and *maybe if I would have -- I was told that it could be permanent, maybe I would have said, wait, let's look at something else.* You know, I want to keep my hair. And that would *maybe* for my doctor to have been advised that she could have advised me and then we could have *maybe* looked into another type of treatment without the risk of permanent hair loss.

Ex. C (Plaisance Dep.) at 268:3-15 (emphasis added).

  14. She testified that she would have asked Dr. Chauvin to "look into" other options:

> Q: So you agreed to take on the risk of death with chemotherapy, but it is your testimony that if the word "permanent" had been before "hair loss" there that you would have said, nope, wait a minute, I don't want to take these medicines?
>
> MR. HARDESTIEN: Object to form.
>
> A: *I would have said let's look into another option.*
>
> Q: So the addition -- you see -- sorry, go ahead.
>
> A: Death can occur with anything, but had I known that I could have had

3

>   permanent hair loss, *I would have asked Dr. Chauvin to look into another option that wouldn't have caused permanent hair loss*. I have nothing against the drug except that. There was no warning for me to be able to have -- to be able to choose -- the right to choose something else.
>
> Q: And do you see there that on the list of warnings of potential risks, there is the risk of hair loss is listed there; right?
>
> A: Yes, sir, but it doesn't say permanent.
>
> Q: And it doesn't say temporary either, does it?
>
> A: Right. But reading this, I would have never thought -- I would have never, never thought of permanent -- permanent hair loss.
>
> Q: And if that word had been added here, do you think that would have changed your course of treatment?
>
> A: *I'm pretty sure I would have asked let's look into something else.*

Ex. C (Plaisance Dep.) at 269:14-270:22 (emphasis added).

### III.    FDA Approval of Hospira's docetaxel

15.    The FDA approved Hospira's version of docetaxel in March 2011 under Section 505(b)(2) of the Federal Food, Drug, and Cosmetic Act, which permits follow-on medications to gain FDA approval through an abbreviated pathway based on the safety and efficacy data of the branded or reference drug. Ex. D (FDA Approval Letter). Hospira's docetaxel was based on Taxotere, the branded docetaxel product developed by Sanofi US Services Inc. and Sanofi-Aventis U.S. LLC., and approved by the FDA in 1996. Ex. D (FDA Approval Letter); 2d Am. Master Compl. ("AMC"). ¶¶ 121-24, ECF No. 4407.

### IV.    Dr. Chauvin's Testimony

16.    Ms. Plaisance's prescribing oncologist, Dr. Laura Chauvin, testified that she first began prescribing docetaxel right when it came out—shortly after Taxol came out:

> Q: Do you recall when you first would have begun prescribing docetaxel?
>
> A: I think that came out rather quickly in just a year or two after Taxol came out. So the minute it was out, I'm sure I started using it.

Ex. E (Chauvin Dep.) at 33:8-12.

17.     Taxol was approved by the FDA for the treatment of metastatic breast cancer in 1994.

18.     Dr. Chauvin also testified that before she first prescribed docetaxel, she reviewed the prescribing information and the drug labeling. Ex. E (Chauvin Dep.) at 88:16-23. However, she did "not specifically" review Hospira's docetaxel label before prescribing docetaxel to Ms. Plaisance:

> Q: And did you review Hospira's docetaxel label before prescribing docetaxel for Mrs. Plaisance?
>
> A: *Not specifically*.
>
> Q: And so you didn't rely on Hospira's label in prescribing it for her; is that right?
>
> MR. ROCKSTAD: Object to form.
>
> A: *No. I can't tell you whose label I last looked at.* I can put it that way.

Ex. E (Chauvin Dep.) at 131:17-25 (emphasis added).

19.     When Dr. Chauvin prescribes docetaxel, she does not prescribe a particular manufacturer's product, and she does not know which manufacturer's product will be administered to the patient. Ex. E (Chauvin Dep.) at 132:21-133:18. Dr. Chauvin is not involved in the decisions regarding which drug will be used by the cancer center. Ex. E (Chauvin Dep.) at 132:8-14.

20.     Although Dr. Chauvin uses a service known as "UpToDate," she is unaware if whether, by using that service, she relied on any information from Hospira when prescribing docetaxel for Ms. Plaisance. Specifically, she testified:

> Q: Did you rely on any information from Hospira in prescribing docetaxel for Mrs. Plaisance?
>
> A: When I look up information on chemo medicines, I go to UpToDate, and I don't think it really notes who -- I don't pay any attention to who the manufacturer is.

Ex. E (Chauvin Dep.) at 132:2-7.

21. Dr. Chauvin testified that she believes the docetaxel regimen prescribed to Ms. Plaisance "was the right treatment for her cancer." Ex. E (Chauvin Dep.) at 135:9-16.

22. Dr. Chauvin testified:

Q: And I believe you've testified today that you do not feel that there was another treatment option for Mrs. Plaisance that would have been a better treatment option for her; is that correct?

A: Right.

Ex. E (Chauvin Dep.) at 89:14-19.

23. Dr. Chauvin testified that if Ms. Plaisance had "absolutely refused TC," she "probably would have given her AC," Ex. E (Chauvin Dep.) at 83:2-3, but Dr. Chauvin "would have noted the 2 percent risk of deadly acute leukemia from Adriamycin and recommended against that," *id*. at 49:25-50:2.

24. Dr. Chauvin also testified that she would not have prescribed Taxol to Ms. Plaisance in part because of "the rate of neuropathy that Taxol-containing regimens have." Ex. E (Chauvin Dep.) at 81:24-25, 83:8-10. Comparatively, the "neuropathy risk from Taxotere is relatively low." *Id*. at 83:10-11. Diabetes "plays into [the] risk of neuropathy," and thus, Dr. Chauvin factored Ms. Plaisance's history of diabetes into her prescribing decision. *Id*. at 83:14-15.

25. Dr. Chauvin noted that although she has changed her counseling to include the risk of permanent hair loss, she still continues to prescribe docetaxel for breast cancer today. Ex. E (Chauvin Dep.) at 138:24-139:15.

## V. Ms. Plaisance's Lawsuit

26. Ms. Plaisance asserts a claim for failure to warn under Louisiana law. Ex. B (ASFC) at ¶ 13. She concedes that "Louisiana product liability law should govern in her case, except as to her punitive damages claim." Audrey Plaisance's Mem. in Opp. to Hospira's Mot. For Summ. Judg. on Claims Under Illinois Law, ECF 12495 at 1 n.1. Ms. Plaisance alleges that

6

Hospira did not adequately warn of the risk of permanent alopecia and that she developed permanent alopecia because of this failure to warn. AMC ¶¶ 221-32; Ex. B (ASFC) at ¶ 13.

| | |
|---|---|
| Dated: November 12, 2021 | Respectfully submitted, |
| | */s/ Heidi K. Hubbard* |
| | Heidi K. Hubbard |
| | Richmond T. Moore |
| | Neelum J. Wadhwani |
| | **WILLIAMS & CONNOLLY LLP** |
| | 725 Twelfth Street, N.W. |
| | Washington, D.C. 20005-5901 |
| | Telephone: 202-434-5000 |
| | hhubbard@wc.com |
| | |
| | John F. Olinde (Bar No.1515) |
| | Peter J. Rotolo (Bar No. 21848) |
| | **CHAFFE MCCALL LLP** |
| | 1100 Poydras Street |
| | New Orleans, LA 70163 |
| | Telephone: 504-858-7000 |
| | olinde@chaffe.com |
| | |
| | *Counsel for Defendants Hospira, Inc., Hospira Worldwide, LLC, and Pfizer Inc.* |

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 12th day of November 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

        /s/ *Heidi K. Hubbard*