# EXHIBIT Q

Page 1

1           UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF LOUISIANA
2

            CASE No.  2:16-cv-17039
3

      ELIZABETH KAHN,
4                 Plaintiffs,

5     v.

6     SANOFI-AVENTIS U.S. L.L.C. and
      SANOFI US SERVICE, INC.

7

8                 Defendant
9     _____/

10                          Remote Proceedings
                            September 29, 2020
11                          10:03 a.m. - 4:39 p.m.

12

13          VIDEO DEPOSITION OF ANTONELLA TOSTI, M.D.
14                    (Via Teleconference)
15      Taken before SUZANNE VITALE, R.P.R., F.P.R.
16    and Notary Public for the State of Florida at Large,
17    pursuant to Notice of Taking Deposition filed in the
18    above cause.

19

20

21

22

23

24

25

Page 25

1    consulting doesn't involve traveling.
2         Q.   And so for your review of materials, for
3    example, it's $600 an hour still?
4         A.   Yes, it is.
5         Q.   And I know you indicated that your
6    approximation was that you spent around 50 hours,
7    give or take, since your March 2020 invoice.
8              Would all of that time have been related
9    to Ms. Kahn's case?
10        A.   Yes.
11        Q.   And if you would look, Doctor, we've also
12   marked, as Exhibit Number 3, a copy of your report.
13             Do you have that with you?
14        A.   Yes.
15             (Thereupon, the referred-to document was
16   marked for Identification as Defendant's Exhibit 3.)
17   BY MR. STRONGMAN:
18        Q.   Can you tell me how you went about
19   preparing your report in this case?
20        A.   I mean, I wrote the report.  I wrote a
21   draft and then I corrected and I change it, updated
22   literature.  I prepare myself the report.
23        Q.   Did you start with the report that you had
24   issued for prior cases in the Taxotere litigation?
25        A.   Yes.  I utilize those reports, but I

Page 26

1  change the things that were irrelevant or were
2  changes during the time.
3      Q.  Do you remember anything specific that you
4  updated or changed with regard to your report that
5  you issued in Ms. Kahn's case?
6      A.  I changed -- I added new literature. I --
7  you know, the last case was African American, and so
8  I change a lot of stuff that are not pertinent
9  because that was strongly related to African
10 Americans.
11     Q.  I noticed in this report you have specific
12 references to Dr. Madigan and Dr. Feigal.
13         Do you know what I'm referring to?
14     A.  Yes, but I think that was also in the
15 previous one.
16     Q.  Did you review Dr. Madigan's expert report
17 in this case?
18     A.  I did read the expert report. It's
19 difficult for me because it's all statistical, but I
20 read the report and I relied on the conclusions.
21     Q.  Did you also read Dr. Feigal's expert
22 report in this case?
23     A.  Yes, I did.
24     Q.  Did you read the depositions of
25 Dr. Madigan or Dr. Feigal?

Page 27

1   A.  No, I did not, but in New Orleans, I was
2   at the deposition of Dr. Madigan.
3   Q.  At the deposition, do you mean you were in
4   the courtroom when he testified?
5   A.  Yes, exactly.
6   Q.  So you and I have been together -- I just
7   haven't had the opportunity to ask you specific
8   questions, but we have spent time together
9   indirectly, anyway, right?
10  A.  Yes.
11  Q.  Did you review Sanofi's expert report for
12  its statistician?
13  A.  Sanofi's expert report, I did not, as far
14  as I know.
15  Q.  Did you review an expert report by an
16  expert by the name of Dr. Wayne?
17  A.  No, I did not.
18  Q.  Did you review an expert report for
19  Dr. Chang?
20  A.  No, I did not.
21      I have a list of the one I reviewed in my
22  exhibits.
23  Q.  And do you recall reviewing the expert
24  report of Dr. Glaspey?
25  A.  No.

Page 28

1    Q.  Don't you think, to be able to get a full
2    perspective of the case, that you would need to see
3    what Sanofi's experts say on these matters?
4            MR. LAMBERT:  Object to form.
5            THE WITNESS:  I didn't review.
6    BY MR. STRONGMAN:
7    Q.  Were you ever provided Sanofi's expert
8    reports in this case?
9    A.  No, I was not provided, but my conclusions
10   are not only based to Dr. Madigan or Dr. Feigal
11   expert report.  I just read those.
12   Q.  Well, are you relying on Dr. Madigan's
13   conclusions as part of the basis for your opinions
14   in this case?
15           MR. LAMBERT:  Object to form.
16           THE WITNESS:  I have my opinion, and my
17       opinion is based on my experience, on my review
18       of the literature and on my personal experience
19       with this problem.
20           Then I also read the report that confirmed
21       what I already told.
22   BY MR. STRONGMAN:
23   Q.  And in medicine, it's important to read
24   information that provides the other side of the
25   story, too, correct?

Page 29

1          MR. LAMBERT:  Object to form.
2          THE WITNESS:  I didn't understand the
3      question.
4  BY MR. STRONGMAN:
5      Q.   Do you know whether or not Sanofi's
6  experts agree with what Dr. Madigan concluded?
7      A.   I imagine that they don't, but I don't
8  know.
9      Q.   Isn't it important to consider Sanofi's
10  position on the statistical issues in this case in
11  forming your opinions?
12          MR. LAMBERT:  Object to form.
13          THE WITNESS:  My opinion is not based on
14      statistics.
15          My opinion is based on medical experience,
16      on literature.  I'm not a statistician.  So I
17      don't really understand this.
18  BY MR. STRONGMAN:
19      Q.   Well, you made a specific point of citing
20  and relying on Dr. Madigan and Dr. Feigal's reports
21  in your report, correct?
22      A.   Not exactly.  Those are part of the -- of
23  the puzzle, you know, are part of what I consider.
24  But my opinion is not just based on their reports.
25      Q.   And I'm not suggesting that it's just

Page 218

## CERTIFICATE OF OATH

STATE OF FLORIDA    )
COUNTY OF BROWARD   )

I, the undersigned authority, certify that ANTONELLA TOSTI personally appeared before me and was duly sworn.

WITNESS my hand and official seal this 2nd day of October, 2020.

*Suzanne Vitale*

SUZANNE VITALE, R.P.R., F.P.R.
Notary Public, State of Florida
My Commission No. DD179981
Expires: 5/24/2024

Page 219

CERTIFICATE

STATE OF FLORIDA  )
COUNTY OF BROWARD )

I, SUZANNE VITALE, R.P.R., F.P.R. do hereby certify that I was authorized to and did stenographically report the foregoing deposition of ANTONELLA TOSTI; that a review of the transcript was requested; and that the transcript is a true record of my stenographic notes.

I FURTHER CERTIFY that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in the action.

Dated this 2nd day of October, 2020.

*Suzanne Vitale*

SUZANNE VITALE, R.P.R., F.P.R.
My Commission No. DD179981
Expires: 5/24/2024