UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | **MDL NO. 16-2740**<br><br>*This document relates to:*<br>Audrey Plaisance, Case No. 2:18-cv-08086 |

# HOSPIRA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT BASED ON THE <u>STATUTE OF LIMITATIONS</u>

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................1

    A.    Ms. Plaisance's Cancer Diagnosis and Chemotherapy Treatment. .........................1

    B.    Ms. Plaisance's Alleged Injury and Notice of Claim. .............................................2

    C.    Ms. Plaisance's Failure to Investigate Her Alleged Injury. ....................................4

LEGAL STANDARD............................................................................................................4

ARGUMENT .........................................................................................................................5

I.    Ms. Plaisance's Claims Are Barred on Their Face by Louisiana's One-Year Statute of Limitations...........................................................................................................5

II.    Ms. Plaisance Cannot Establish Any Exception to Louisiana's One-Year Statute of Limitations...........................................................................................................5

    A.    Ms. Plaisance Did Not Have Any Conversations with Her Doctors That Would Toll Prescription........................................................................................8

        1.    Ms. Plaisance's conversations with Dr. Chauvin in May 2014—two months after her chemotherapy treatment ended—do not toll prescription. ...............................................................................................8

        2.    Dr. Chauvin's conclusion in January 2015 that Ms. Plaisance's alopecia had "resolved" does not toll prescription. .....................................8

        3.    Ms. Plaisance did not have any conversations with her dermatologist, Dr. Matherne, that would toll prescription..........................9

CONCLUSION....................................................................................................................10

CERTIFICATE OF SERVICE ............................................................................................11

i

## INTRODUCTION

Plaintiff Audrey Plaisance's claims are prescribed by Louisiana's one-year statute of limitations.

*First*, Ms. Plaisance's claims are untimely on their face because she filed her lawsuit more than three years after she allegedly sustained her injury. Louisiana's one-year prescription period begins to run on the date of injury. Ms. Plaisance alleges that she suffered her injury of permanent hair loss by September 2014—six months after she completed chemotherapy in March 2014. Yet Ms. Plaisance did not file her complaint until August 23, 2018—almost four years later. Ms. Plaisance's claims are therefore untimely on their face.

*Second*, the doctrine of *contra non valentem* does not save Ms. Plaisance's claims. The undisputed evidence demonstrates that Ms. Plaisance knew or should have known of a possible causal relationship between her docetaxel use and alleged permanent hair loss since the time of her injury. Ms. Plaisance's hair did not grow back as expected, yet she did not conduct a reasonable investigation into docetaxel as a potential cause. She never asked her doctors whether docetaxel caused her persistent hair loss. Although her treating oncologist, Dr. Laura Chauvin, recommended that she see a dermatologist if she had any concerns regarding her hair, Ms. Plaisance did not consult a dermatologist until March of 2016—six months *after* the prescription period had ended. Even then, she did not inquire about the cause of her hair loss, as is required by Louisiana law, but instead only sought treatment for the condition. She did not file her lawsuit until August 2018, nearly three years after her prescription period ended in September 2015. Thus, there is no tolling of her claims under the doctrine of *contra non valentem*. Her claims are prescribed by Louisiana law and should be dismissed.

## BACKGROUND

**A.     Ms. Plaisance's Cancer Diagnosis and Chemotherapy Treatment.**

Ms. Plaisance was diagnosed with breast cancer on December 2, 2013. Hospira's Statement of Undisputed Material Facts ("SOF") ¶ 1. She underwent surgery for a partial right

1

mastectomy on December 11, 2013.  *Id.* ¶ 2.  Ms. Plaisance's oncologist, Dr. Chauvin, recommended that she undergo a chemotherapy regimen consisting of four cycles of docetaxel and Cytoxan.  *Id.* ¶ 3.  Ms. Plaisance agreed to the regimen and signed a consent form that included information about the numerous side effects of chemotherapy, including hair loss.  *Id.* ¶ 4.  Dr. Chauvin discussed these various side effects of chemotherapy with Ms. Plaisance, and a nurse also provided chemotherapy education materials detailing them to Ms. Plaisance when she started treatment.  *Id.* ¶ 5.  Dr. Chauvin neither promised nor guaranteed that Ms. Plaisance's hair would grow back.  *Id.* ¶ 6.

Ms. Plaisance followed Dr. Chauvin's recommendation and began receiving chemotherapy treatments on January 17, 2014.  *Id.* ¶ 3.  She started to lose her hair after the first chemotherapy infusion.  *Id.* ¶ 7.  Shortly thereafter, an acquaintance shaved off the rest of the hair on her head.  *Id.*  Ms. Plaisance's fourth and final infusion of docetaxel and Cytoxan was on March 20, 2014.  *Id.* ¶ 3.

      **B.**      **Ms. Plaisance's Alleged Injury and Notice of Claim.**

Ms. Plaisance alleges she began experiencing permanent alopecia in September 2014, six months after completing chemotherapy.  SOF ¶ 8; Ex. G (2d Amended Master Complaint, ECF No. 4407, "AMC") ¶ 181 (defining injury as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy"); Ex. C, (Plaisance Amended Short Form Complaint, "ASFC") at 1 (adopting allegations of Master Complaint).

On May 5, 2014, approximately a month and a half after her last chemotherapy treatment (and *before* her alleged injury), Ms. Plaisance expressed concern about her lack of hair regrowth at a follow-up visit with Dr. Chauvin.  SOF ¶ 9.  Dr. Chauvin communicated that this was normal, and that if Ms. Plaisance had any continuing concerns or "questions, she should see a dermatologist."  SOF ¶ 9; Ex. D (Chauvin Dep.) at 118:15-19.  At another follow up visit with Dr. Chauvin two weeks later (still *before* her alleged injury), Ms. Plaisance expressed frustration "with little regrowth of chemotherapy-induced alopecia."  SOF ¶ 10; Ex. D (Chauvin Dep.) at

2

120:15-19.  Dr. Chauvin told Ms. Plaisance that it was "premature to be worried that [her hair] wouldn't" regrow.  SOF ¶ 10; Ex. D (Chauvin Dep.) at 121:3-7.  In her plan of action, Dr. Chauvin reiterated that if Ms. Plaisance had continued concerns regarding patchy hair regrowth, "she should discuss with her dermatologist."  SOF ¶ 10; Ex. D (Chauvin Dep.) at 121:25-122:5.

Dr. Chauvin again saw Ms. Plaisance on July 1, 2014 and noted that this time, Ms. Plaisance did "not complain about what she felt was delayed hair growth [a]fter chemotherapy-induced alopecia."  SOF ¶ 11; Ex. J (7.1.2014 Thibodaux Med. Rec.) at 2; Ex. D (Chauvin Dep.) at 124:5-10.  Based on a physical exam, Dr. Chauvin observed that Ms. Plaisance's hair was regrowing in July 2014, SOF ¶ 11, and six months later in January 2015, Dr. Chauvin again examined Ms. Plaisance's head and noted in her records that her alopecia had resolved, *id*. ¶ 12.  Ms. Plaisance did not raise any concerns regarding her hair regrowth during this January 2015 visit nor in any subsequent visits.  *Id.*  If she had, Dr. Chauvin would have recorded these concerns in the contemporaneous medical record.  *Id.* ¶ 13.  Dr. Chauvin reiterated that had Ms. Plaisance complained about lack of hair regrowth again, she would have told her to "see her dermatologist," as she had done earlier.  SOF ¶ 13; Ex. D (Chauvin Dep.) at 126:24-127:2.

Although Dr. Chauvin perceived Ms. Plaisance's alopecia as resolved, Ms. Plaisance testified that the hair on her scalp did not return to its original texture.  SOF ¶ 14.  Instead, she represented that her hair "was much finer, much thinner than what [she] had before.  Much, much thinner."  SOF ¶ 14; Ex. B (Plaisance Dep.) at 219:9-13.  Ms. Plaisance still considers herself to be bald in some areas, and she testified that her hair has looked the way it does today since 2014—*i.e.*, it looks the same as when her alleged injury accrued in September 2014.  SOF ¶ 15.  Additionally, Ms. Plaisance testified that she lost her eyelashes and eyebrows in "about October/November of 2014"—approximately seven months after her last chemotherapy infusion.  SOF ¶ 16; Ex. B (Plaisance Dep.) at 138:18-23.  She testified that at the time of losing her eyebrows and eyelashes, she attributed this loss to her chemotherapy "because [her] hair, by then, had gotten pretty thin."  SOF ¶ 17; Ex. B (Plaisance Dep.) at 139:4-7.

3

C.     **Ms. Plaisance's Failure to Investigate Her Alleged Injury.**

Despite her continued hair issues, Ms. Plaisance took no action to further investigate her potential claim.  In March 2016—more than 18 months *after* her alleged injury accrued—Ms. Plaisance visited her dermatologist, Dr. Ryan Matherne; this visit was the first time after chemotherapy that Ms. Plaisance saw a dermatologist for hair loss.  SOF ¶ 18.  When meeting with Dr. Matherne, Ms. Plaisance did not inquire into the cause of her hair loss—she merely sought treatment.  *See* SOF ¶¶ 19-21.  She did *not* ask Dr. Matherne whether her docetaxel caused her hair loss:

> Q.  And when you saw [Dr. Matherne] in March 2016, did you ask him whether your hair loss was related to your chemotherapy?
>
> MR. HARDENSTEIN: Object to form.
>
> A.  No, I did not.

SOF ¶ 21; Ex. B (Plaisance Dep.) at 225:1-5.

And throughout her treatment with Dr. Matherne, Ms. Plaisance did not have an understanding from Dr. Matherne about what had caused her hair loss:

> Q.  And what's your understanding of what [Dr. Matherne] has diagnosed you with when it comes to hair loss?
>
> A.  Well I don't actually know if he gave me a diagnosis.  It's just sort of like a loss of hair, and we tried injections and we're trying these -- the pills.

SOF ¶ 19; Ex. B (Plaisance Dep.) at 221:8-13.

Ms. Plaisance retained counsel after she saw a television advertisement for the Taxotere/docetaxel litigation, and she filed this suit against Hospira on August 23, 2018.  SOF ¶¶ 23-24.

## LEGAL STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A "genuine" issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (citation omitted).

## ARGUMENT

Ms. Plaisance's claims are untimely on the face of the pleadings, and the doctrine of *contra non valentem* does not save her claims. This Court therefore should enter judgment in favor of Hospira and dismiss Ms. Plaisance's claims.

**I.    Ms. Plaisance's Claims Are Barred on Their Face by Louisiana's One-Year Statute of Limitations.**

Louisiana's one-year statute of limitations begins "to run from the day injury or damage is sustained." *Asbestos v. Bordelon, Inc.*, 726 So. 2d 926, 974 (La. App. 4th. Cir. 1998) (quoting La. Civ. Code Ann. art. 3492). The Fifth Circuit has held that "[a]s a matter of law, the injury of 'an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy' is sustained when, six months after the completion of chemotherapy, a person has an absence of or incomplete hair regrowth." *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Thibodeaux/Francis/Johnson)* ("*Thibodeaux*")*,* 995 F.3d 384, 390 (5th Cir. 2021). Ms. Plaisance's pleadings adopt the Second Amended Master Complaint's definition of her alleged injury. *See* SOF ¶ 8. As such, Ms. Plaisance sustained her alleged injury in September 2014, six months after completing chemotherapy treatment in March 2014, when her hair did not grow back as she expected. SOF ¶¶ 14-15. Thus, because Ms. Plaisance first filed her lawsuit on August 23, 2018, over 3 years after her alleged injury, her claims are barred on their face. *Thibodeaux*, 995 F.3d at 390.

**II.   Ms. Plaisance Cannot Establish Any Exception to Louisiana's One-Year Statute of Limitations**

Where, as here, "'on the face of the petition it appears that prescription has run, … the burden shifts to the plaintiff to prove a suspension or interruption of the prescriptive period' based on the equitable doctrine of *contra non valentem*." *Id.* at 389 (quoting *Younger v. Marshall Indus. Inc.*, 618 So. 2d 866, 869 (La. 1993)).

5

The doctrine of *contra non valentem* applies only in "exceptional circumstances." *Renfroe v. Louisiana ex rel. Dep't of Transp. & Dev.*, 809 So. 2d 947, 953 (La. 2002) (quoting La. Civ. Code art. 3467, cmt. d). Under this doctrine, the prescription period begins when a plaintiff is on "constructive notice," which means there is sufficient evidence to "call for an inquiry." *Thibodeaux*, 995 F.3d at 391-92. "Whatever is notice enough to excite attention and put the [plaintiff] on his guard and call for inquiry is tantamount to knowledge or notice of every[]thing to which inquiry may lead[,] and such information or knowledge as ought to reasonably put the [plaintiff] on inquiry is sufficient to start the running of prescription." *Id.* at 391 (alterations in original) (quoting *Cartwright v. Chrysler Corp.*, 232 So. 2d 285, 287 (La. 1970)). Prescription runs "from the time there is notice enough to call for *inquiry* about a claim, not from the time when the inquiry reveals facts or evidence sufficient to *prove* the claim." *Id.* (quoting *Terrel v. Perkins*, 704 So. 2d 35, 39 (La. Ct. App. 1997)). This "does not necessarily wait for the pronouncement of a victim's physician or of an expert." *Id.* (quoting *Luckett v. Delta Airlines*, 171 F.3d 295, 300 (5th Cir. 1999)). Once on notice, the plaintiff has "an obligation to further investigate the facts in order to pursue h[er] claim before the one-year prescriptive period lapses." *Id.* (cleaned up) (quoting *Rozas v. Dep't of Health & Human Res.*, 522 So. 2d 1195, 1197 (La. Ct. App. 1988)).

In short, the Fifth Circuit has interpreted "Louisiana law to require that once hair loss persisted after six months, *contra non valentem* tolled the prescription period until the point when a prospective plaintiff, through the exercise of reasonable diligence, should have considered [docetaxel] as a potential root cause of her injury." *Id.* at 392-93 (quotation marks and citation omitted).

Here, the undisputed evidence demonstrates that Ms. Plaisance was on notice in September 2014, when her hair did not grow back as she expected within six months after completing her chemotherapy treatment. Ms. Plaisance completed her chemotherapy treatment in March of 2014, and she hoped and expected her hair would regrow. SOF ¶¶ 3, 14. However, she alleges that her hair did not grow back as she expected, and since 2014 it has been in the

6

same state as it is now—very thin and balding in certain areas. *Id.* ¶¶ 14-15. As the Fifth Circuit held in *Thibodeaux,* those facts were sufficient to require Ms. Plaisance to "investigate [docetaxel] as a potential cause" of her persistent hair loss. *Thibodeuax*, 995 F.3d at 393.

Yet Ms. Plaisance "did not inquire into the cause of the hair loss or its persistence." *Id.* at 393. "A reasonable inquiry into the cause of one's persistent hair loss would likely include consultation with doctors," *id.*, but Ms. Plaisance did not ask any of her doctors whether her hair loss was related to her chemotherapy. SOF ¶ 20. When she spoke with her oncologist, Dr. Chauvin, about her hair loss in May 2014 (two months after her treatment ended), Dr. Chauvin communicated that if she continued to have concerns, "she should discuss [it] with her dermatologist." SOF ¶¶ 9-10. But Ms. Plaisance did not see her dermatologist, Dr. Matherne, until March 2016, two years after completing her chemotherapy and six months after the prescription period had expired. SOF ¶ 18. And even then, she only sought treatment—she did not ask what caused her hair loss. SOF ¶¶ 20-21. She explained that she did not "actually know if [Dr. Matherne] gave [her] a diagnosis. It [was] just sort of like a loss of hair, and [they] tried injections" and pills. SOF ¶ 19; Ex. B (Plaisance Dep.) at 221:10-13. Thus, this case is just like *Thibodeaux¸* where the Fifth Circuit held that there was no reasonable investigation because "[n]one of the Appellants inquired with her doctor into the cause of the persistence of hair loss." *Thibodeuax*, 995 F.3d at 393.

Nor is there any dispute that a reasonable investigation would have led her to "consider[] [docetaxel] as a potential root cause of her injury." *Id.* Plaintiff's own Master Complaint cites publicly available information about a potential risk of permanent hair loss. SOF ¶ 22. Based on this same information, the Fifth Circuit concluded that "[a] reasonable inquiry would have uncovered at least some information that linked [docetaxel] to persistent alopecia." *Id.* at 394. The same analysis applies here.

Thus, under *Thibodeaux,* Ms. Plaisance's case is prescribed.

7

### A. Ms. Plaisance Did Not Have Any Conversations with Her Doctors That Would Toll Prescription.

This Court has held that there was tolling under the doctrine of *contra non valentem* in certain narrow circumstances where a plaintiff conducted an investigation into the cause of her persistent hair loss, and her doctor told her that something *other* than her chemotherapy caused her hair loss. *See In re Taxotere (Docetaxel) Prod. Liab. Litig. (Kahn)* (June 4, 2021), ECF No. 12805, at 7 ("*Kahn*") ("Plaintiff Kahn did investigate her injury—she consulted with a doctor and was told her age was causing her hair loss.") There is no such evidence here.

#### 1. Ms. Plaisance's conversations with Dr. Chauvin in May 2014—two months after her chemotherapy treatment ended—do not toll prescription.

*First*, these May 2014 conversations between Ms. Plaisance and Dr. Chauvin do not serve as a basis for tolling because they occurred four months *before* the alleged date of injury. SOF ¶¶ 8-10. As this Court has recognized, at the time of these conversations, Ms. Plaisance "had not yet suffered an injury," so this evidence "is not relevant to the contra non valentem analysis." *In re Taxotere (Docetaxel) Prod. Liab. Litig. (Hughes)* (April 28, 2021), ECF No. 12532, at 6 ("*Hughes*").

*Second,* Dr. Chauvin did not tell Ms. Plaisance that something other than her chemotherapy had caused her hair loss. Dr. Chauvin simply said that Ms. Plaisance's worries were "premature" because her treatment had ended only two months earlier, but that if she was concerned or had questions "she should see a dermatologist." SOF ¶¶ 9-10; Ex. D (Chauvin Dep.) at 118:18-19. This conversation is therefore wholly distinct from *Kahn* because there was no statement from a physician about any alternate cause of hair loss that could have reasonably led Ms. Plaisance to conclude that she had no actionable injury.

#### 2. Dr. Chauvin's conclusion in January 2015 that Ms. Plaisance's alopecia had "resolved" does not toll prescription.

*First*, although Dr. Chauvin recorded in her medical notes that Ms. Plaisance's chemotherapy induced alopecia had resolved, SOF ¶ 12, there is no evidence that Dr. Chauvin

8

affirmatively told Ms. Plaisance that she was free of hair issues. Indeed, Ms. Plaisance did not communicate any concerns regarding her hair regrowth during her January 2015 visit with Dr. Chauvin nor in any subsequent visits, and if she had, Dr. Chauvin would have told Ms. Plaisance to "see her dermatologist," as she did earlier. SOF ¶ 13; Ex. D (Chauvin Dep.) at 126:24-127:2. Thus, there is no evidence of any conversation that could have led to tolling.

*Second*, according to Ms. Plaisance, her hair loss had *not* "resolved." To the contrary, Ms. Plaisance believes the state of her hair today is the same as it was in 2014—very thin and fine with some balding. SOF ¶¶ 14-15. Thus, by her own admission, in 2014 she had "actual and appreciable damage." *Harvey v. Dixie Graphics, Inc.*, 593 So.2d 351, 354 (La. 1992) ("[P]rescription runs from the date on which [a plaintiff] first suffered actual and appreciable damage, even though [s]he may thereafter come to a more precise realization of the damages [s]he has already incurred or incur further damage as a result of the completed tortious act."). Although Dr. Chauvin concluded that Ms. Plaisance's alopecia had resolved, that has no impact for prescription purposes because Ms. Plaisance herself did not believe her hair condition had resolved. Because Ms. Plaisance admitted that her hair today is the same as it was in 2014, SOF ¶ 15, there is no evidence that she reasonably relied on any statement from Dr. Chauvin to conclude that she no longer had hair loss from her chemotherapy. Thus, this case is not like *Kahn*. *See Kahn* at 2 (explaining that relevant question was whether plaintiff was "reasonable in relying" on doctor's statement regarding an alternate cause); *id*. at 5 n. 14 (citing *Hoerner v. Wesley-Jensen*, 684 So. 2d 508 (La. Ct. App. 1996) ("[P]laintiff's doctor told her that her eye infection was likely from a 'bug' she caught" and "plaintiff was reasonable in relying on what her doctor told her until she learned otherwise.")).

        **3.**      **Ms. Plaisance did not have any conversations with her dermatologist, Dr. Matherne, that would toll prescription.**

*First,* Ms. Plaisance did not seek treatment from Dr. Matherne until *after* the prescription period had already expired. SOF ¶ 18. Ms. Plaisance's claim prescribed in September 2015—one year after she sustained her alleged injury. Therefore, the March 2016 appointment with Dr.

9

Matherne cannot serve as a basis for tolling prescription as it occurred six months *after* the prescription period ended.

*Second,* Ms. Plaisance did not have any conversations with Dr. Matherne that would toll prescription.  Although Ms. Plaisance sought treatment from Dr. Matherne for her hair loss, there was no purported diagnosis that she relied on.  When asked about what condition Dr. Matherne diagnosed her with, Ms. Plaisance testified that she did not "actually know if he gave [her] a diagnosis.  It [was] just sort of like a loss of hair, and [they] tried injections" and pills.  SOF ¶ 19; Ex. B (Plaisance Dep.) at 221:10-13.  Thus, this case is distinct from the circumstances in *Kahn* where Ms. Kahn's physician told her that her hair loss was caused by something other than chemotherapy.

## CONCLUSION

Thus, for the foregoing reasons, Ms. Plaisance's claims are prescribed under Louisiana law and the Court should grant summary judgment and dismiss Ms. Plaisance's claims.

Dated: November 12, 2021                    Respectfully submitted,

*/s/ Heidi K. Hubbard*
Heidi K. Hubbard
Richmond T. Moore
Neelum J. Wadhwani
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
Telephone: 202-434-5000
hhubbard@wc.com

John F. Olinde (Bar No.1515)
Peter J. Rotolo (Bar No. 21848)
**CHAFFE MCCALL LLP**
1100 Poydras Street
New Orleans, LA 70163
Telephone: 504-858-7000
olinde@chaffe.com

*Counsel for Defendants Hospira, Inc., Hospira Worldwide, LLC, and Pfizer Inc.*

10

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 12th day of November 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

                    /s/ *Heidi K. Hubbard*