## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

**This Document Relates To:**

**Elizabeth Kahn, Case No. 2:16-cv-17039**

MDL No. 2740

SECTION: "H" (5)

HON. JANE TRICHE MILAZZO

### PLAINTIFF'S AND DEFENDANTS' PROPOSED JURY INSTRUCTIONS

NOW INTO COURT, comes Plaintiff Elizabeth Kahn and Defendants Sanofi-Aventis U.S.

LLC and Sanofi U.S. Services Inc. who respectfully submit their respective positions on the proper

jury instructions to be used in trial of matter no. 16-17039, Elizabeth Kahn vs. Sanofi-Aventis U.S.

LLC et al.

Dated: November 13, 2021

Respectfully submitted,

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN
1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

Plaintiffs' Co-Liaison Counsel

/s/Douglas J. Moore
Douglas J. Moore (Bar No. 27706)
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Phone: 504-310-2100
Fax: 504-310-2120
dmoore@irwinllc.com

Defendants' Liaison Counsel

**PROPOSED GENERAL JURY INSTRUCTIONS** ................................................................. 3

  JURY CHARGE ................................................................................................................ 3

  BURDEN OF PROOF ...................................................................................................... 4

  EVIDENCE ...................................................................................................................... 4

  WITNESSES .................................................................................................................... 5

  EXPERT WITNESSES .................................................................................................... 5

  NO INFERENCE FROM FILING SUIT ........................................................................ 6

  STIPULATIONS OF FACT ............................................................................................. 6

  DEPOSITION TESTIMONY ........................................................................................... 6

  CHARTS AND SUMMARIES ........................................................................................ 6

  BIAS--CORPORATE PARTY INVOLVED .................................................................... 7

  DUTY TO DELIBERATE; NOTES ................................................................................ 7

**PROPOSED SPECIAL JURY INSTRUCTION** ................................................................. 9

  INSTRUCTIONS ............................................................................................................. 10

  REASONABLY ANTICIPATED USE ............................................................................ 18

  LIABILITY BASED ON INADEQUATE WARNING .................................................... 19

  "ADEQUATE WARNING" DEFINITION ....................................................................... 24

  FDA APPROVAL AND LABELING ............................................................................. 25

  LEARNED INTERMEDIARY DOCTRINE .................................................................... 27

  CAUSATION .................................................................................................................. 32

  PLAINTIFF'S OBJECTION TO DEFENDANTS' PROPOSED INSTRUCTION ................ 35

  DAMAGES – GENERAL INSTRUCTION ..................................................................... 40

  MENTAL ANGUISH ...................................................................................................... 46

  STATUTE OF LIMITATIONS – ACTUAL OR CONSTRUCTIVE KNOWLEDGE .......... 49

## PROPOSED GENERAL JURY INSTRUCTIONS

The parties have conferred and agree to propose that the Court adopt General Pattern Jury Instructions § 3.1 (Jury Charges); § 3.2 (Burden of Proof); § 3.3 (Evidence); § 3.4 (Witnesses); § 3.5 (Expert Witnesses); § 3.6 (No Inferences from Filing Suit); § 2.3 (Stipulations of Fact); § 2.7 (Charts & Summaries); § 2.13 (Deposition Testimony); § 2.16 (Bias – Corporate Party Involved); § 3.7 (Duty to Deliberate; Notes), which were used in *Earnest*, with the following non-substantive revisions:

### JURY CHARGE

Members of the jury:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments

3

rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendant in arriving at your verdict.

## BURDEN OF PROOF

Plaintiff Elizabeth Kahn has the burden of proving her case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that the plaintiff has failed to prove any element of her claim by a preponderance of the evidence, then she may not recover on that claim.

## EVIDENCE

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but

simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

## WITNESSES

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

## EXPERT WITNESSES

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.

## NO INFERENCE FROM FILING SUIT

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

## STIPULATIONS OF FACT

A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

## DEPOSITION TESTIMONY

Certain testimony has been presented to you through depositions. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned these witnesses under oath. A court reporter was present and recorded the testimony. The questions and answers have been shown to you. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility as if the witnesses had been present and had testified from the witness stand in court.

## CHARTS AND SUMMARIES

Certain charts, summaries and demonstrative aids have been shown to you solely to help explain or summarize the facts disclosed by the evidence. These charts, summaries and

demonstrative aids are not evidence or proof of any facts. You should determine the facts from the evidence.

## BIAS--CORPORATE PARTY INVOLVED

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

## DUTY TO DELIBERATE; NOTES

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict.  Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.  During your deliberations, do not hesitate to re-examine your own opinions and change your mind if you are convinced that you were wrong.  But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts.  You have been allowed to take notes during this trial.  Any notes that you took during this trial are only aids to memory.  If your memory differs from your notes, you should rely on your memory and not on the notes.  The notes are not evidence.  If you did not take notes, rely on your own independent recollection of the evidence and do not be unduly influenced by the notes of other jurors.  Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes.  You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous.  After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date

it.  After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer.  After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom.  Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question. You may now proceed to the jury room to begin your deliberations.

## PROPOSED SPECIAL JURY INSTRUCTIONS

The parties respectfully submit their proposed positions on the proper special jury instructions to be used at trial.  For ease of use, the parties have presented a table for each proposed instruction.  The first column provides the special jury instruction as it was read in *Earnest*.  The second column provides Plaintiff's proposed revisions, if any, to the instruction.  And the third column provides Defendants' proposed revisions, if any, to the instruction.

**INSTRUCTIONS**

| As-Read in Earnest Instruction | Plaintiff's Proposed Instruction | Defendants' Proposed Instruction |
|---|---|---|
| Let me now discuss the law specifically applicable to this case. | Let me now discuss the law specifically applicable to this case. | Let me now discuss the law specifically applicable to this case. |
| As you know, this action arises out of Barbara Earnest's use of Taxotere. Sanofi is the manufacturer of Taxotere. Ms. Earnest contends that Taxotere prevented her hair from growing back, and that she now has permanent hair loss on her head, eyebrows, eyelashes, and other areas that was caused by Taxotere. Ms. Earnest also asserts that Sanofi, the manufacturer of Taxotere, did not warn her doctor, Dr. Carinder, about the risk of permanent hair loss associated with Taxotere. Ms. Earnest seeks damages for her injures from Sanofi. | As you know, this action arises out of ~~Barbara~~ Elizabeth ~~Earnest's~~ Kahn's use of Taxotere. Sanofi is the manufacturer of Taxotere. M~~rs.~~ ~~Earnest~~ Kahn contends that Taxotere prevented her hair from growing back, and that she now has permanent hair loss on her head, eyebrows, eyelashes, and other areas that was caused by Taxotere. M~~rs.~~ ~~Earnest~~ Kahn also asserts that Sanofi, the manufacturer of Taxotere, did not warn her doctor, Dr. ~~Carinder~~ Kardinal, about the risk of permanent hair loss associated with Taxotere. M~~rs.~~ ~~Earnest~~ Kahn seeks damages for her injuries from Sanofi. | As you know, this action arises out of ~~Barbara Earnest~~ Plaintiff's use of a prescription chemotherapy medicine called Taxotere. Sanofi is the manufacturer of Taxotere. ~~Ms. Earnest~~ Plaintiff contends that her use of Taxotere caused her to experience permanent hair loss. ~~prevented her hair from growing back, and that she now has permanent hair loss on her head, eyebrows, eyelashes, and other areas that was caused by Taxotere. Ms. Earnest~~ Plaintiff also asserts that Sanofi~~, the manufacturer of Taxotere,~~ did not provide an adequate warning of the risk to her prescribing physician(s) and that an adequate warning would have caused her physician(s) not to prescribe Taxotere to Plaintiff.[1] ~~warn her doctor, Dr. Carinder, about the risk of permanent hair loss associated with Taxotere. Ms. Earnest~~ Plaintiff seeks damages for her injures from Sanofi. |
| Sanofi denies these allegations and contends that it provided adequate warning to Ms. Earnest's doctor. Sanofi contends that Taxotere did not cause Ms. Earnest's alleged injury. Sanofi contends that the approved prescribing information contained accurate, science-based information that enabled Mrs. Earnest's doctors to make an informed decision about the benefits and risks of Taxotere. | Sanofi denies these allegations and contends that it provided adequate warnings to M~~rs.~~ ~~Earnest's~~ Kahn's doctor. Sanofi contends that Taxotere did not cause M~~rs.~~ ~~Earnest's~~ Kahn's alleged injury. Sanofi contends that the approved prescribing information contained accurate, science-based information that enabled M~~rs.~~ ~~Earnest's~~ Kahn's doctor to make an informed decision about the benefits and risks of using Taxotere. | ~~Sanofi~~ Defendants den~~ies~~ y these allegations. They contend that Taxotere's warnings to Plaintiff's doctor(s) were adequate. ~~and contends that it provided adequate warning to Ms. Earnest's doctor.~~ ~~Sanofi~~ They also contend~~s~~ that any claimed inadequacy in the warning ~~Taxotere~~ did not cause ~~Ms. Earnest's~~ Plaintiff's alleged injury. ~~Sanofi~~ Defendants |

contends that Taxotere was appropriately prescribed to Plaintiff by her physician(s) for breast cancer, and that the hair loss she experienced did not result from her use of Taxotere.  Further, the Defendants contend that the label was approved prescribing information by the FDA and contains accurate, science-based information that enabled Mrs. Earnest's Plaintiff's doctor(s) to make an informed decision about the benefits and risks of prescribing Taxotere to their patients.

| **Defendants' Objections to Plaintiff's Proposed Instruction** | **Plaintiff's Objection to Defendants' Proposed Instruction** |
|---|---|
| Plaintiff's instruction omits the following statements (below **in bold**) from Defendants' corresponding instruction, each of which are correct statements of the law and warranted by the claims and anticipated evidence at trial, *see Corey v. Jones*, 650 F.2d 803, 806 (5th Cir. 1981) ("Under federal rules of procedure a litigant is entitled to have the jury instructed as to his claims and theories of law if they are legally correct, supported by the evidence, and are brought to the court's attention in a timely request."):<br><br>    1.  **Plaintiff** also asserts **that Sanofi did not provide an adequate warning of the risk to her prescribing physician(s) and that an adequate warning would have caused her physician(s) not to prescribe Taxotere to Plaintiff.** | There is no reason to depart from the instruction in *Earnest*, in favor of Sanofi's proposed instruction, which is repetitive and argumentative. For example, it states Sanofi's position that the warning given to Plaintiff's treating physician(s) was adequate, then several lines later argues that the label "contains accurate, science-based information…." Likewise, the proposed instruction raises the learned intermediary question no fewer than three times. Further, it introduces totally extraneous issues meant to influence the jury: "that Taxotere was appropriately prescribed" and "that the label was approved by the FDA." |

This is a correct statement of the law. *See, e.g., In re Taxotere (Docetaxel) Prods. Liab. Litig. (Phillips)*, 994 F.3d 704, 708 (5th Cir. 2021) ("To prove causation in this context, "a plaintiff must show that a proper warning would have changed the decision of the [prescribing] physician, *i.e.* that *but for the inadequate warning, the [prescribing] physician would not have used or prescribed the product*." (emphasis added)); *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098–99 (5th Cir. 1991) (applying Louisiana law) ("To recover for a failure to warn under [the learned intermediary] doctrine, a plaintiff must show: (1) that the defendant failed to warn the physician of a risk associated with the use of the product, not otherwise known to the physician, and (2) that the failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury. Because the defective aspect of the product must cause the injury, the plaintiff must show that a proper warning would have changed the decision of the treating physician, *i.e.* that but for the inadequate warning, the treating physician would not have used or prescribed the product"). Further, by only referencing Dr. Kardinal, Plaintiff's proposed instruction also fails to acknowledge that both Dr. Kardinal *and* Dr. Larned prescribed Taxotere to Ms. Kahn and are both appropriately considered treating physicians. *See* Rec. Doc. 11803 at 4–5 (Order and Reasons Granting in Part and Denying in Part Pl.'s Mot.) (holding Dr. Larned can testify about "her

specific care of Plaintiff Kahn[,] . . . [including] the drugs she recommended, and she can answer questions about whether she was aware of reports of persistent hair loss associated with these drugs.").

2. **Defendants contend that Taxotere was appropriately prescribed to Plaintiff by her physician(s) for breast cancer, and that the hair loss she experienced did not result from her use of Taxotere.  Further, the Defendants contend** that the **label was** approved **by the FDA and contains** accurate, science-based information that enabled Plaintiff's doctor(s) to make an informed decision about the benefits and risks of **prescribing** Taxotere **to their patients**.

This is a correct statement of the law.  *See In re Xarelto (Orr)*, No. 14-md-2592 (Doc. 6815 at 13) ("They contend Xarelto was appropriately prescribed to Mrs. Orr by her doctor, Dr. St. Martin, for stroke prevention, and that the brain hemorrhage she suffered on April 24, 2015 did not result from her use of Xarelto.  Further, the defendants contend that the label was approved by the FDA and contains accurate, science-based information enabling doctors to make an informed decision about the benefits and risks of prescribing this medication to their patients.").

|  | Defendants reserve the right to raise further objections to this instruction at the charge conference. |  |

**LOUISIANA PRODUCTS LIABILITY ACT**

| As-Read in Earnest Instruction | Plaintiff's Proposed Instruction | Defendants' Proposed Instruction |
|---|---|---|
| The law applicable to this case is the law of Louisiana. In Louisiana, a products liability action, such as this one, is governed by the Louisiana Products Liability Act or "LPLA." The LPLA provides that the manufacturer of a product shall be liable to a plaintiff for damage proximately caused by one or more characteristics of the product that render it unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the plaintiff. One of the ways in which a drug can be unreasonably dangerous is by failing to include adequate warnings. In order recover, the plaintiff in this case must show that her damages were proximately caused by the defendants' failure to provide adequate warnings about one or more characteristics of the product that render it unreasonably dangerous, and that her damages arose from a reasonably anticipated use of the product. | No proposed changes. | The law applicable to this case is the law of Louisiana. In Louisiana, a products liability action, such as this one, is governed by the Louisiana Products Liability Act or "LPLA." The LPLA provides that the manufacturer of a product shall be liable to a plaintiff for damage proximately caused by one or more characteristics of the product that render it unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the plaintiff. One of the ways in which a drug can be unreasonably dangerous is by ~~the manufacturer~~ failing to ~~use reasonable care to provide an adequate warning of the risk not otherwise known to the plaintiff's prescribing physician(s).[2]~~include adequate warnings. In order recover, the plaintiff in this case must show that her damages were proximately caused by the defendants' failure to provide adequate warnings about one or more characteristics of the product that render it unreasonably dangerous, and that her damages arose from a reasonably anticipated use of the product.~~ |

| | Defendants' Objections to Plaintiff's Proposed Instruction | Plaintiff's Objection to Defendants' Proposed Instruction |
|---|---|---|
| | Plaintiff's instruction omits the following statement (below **in bold**) from Defendants' corresponding instruction, each of which are correct statements of the law and warranted by the claims and anticipated evidence at trial, *see Corey v. Jones*, 650 F.2d 803, 806 (5th Cir. 1981) ("Under federal rules of procedure a litigant is entitled to have the jury instructed as to his claims and theories of law if they are legally correct, supported by the evidence, and are brought to the court's attention in a timely request."): <br><br> 1. One of the ways in which a drug can be unreasonably dangerous is by **the manufacturer** failing to **use reasonable care to provide an adequate warning of the risk not otherwise known to the plaintiff's prescribing physician(s).** <br><br> This is a correct statement of the law.  La. Rev. Stat. § 9:2800.57(B)(2) ("A manufacturer is not required to provide an adequate warning about his product when . . . The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic."); *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Phillips)*, 994 F.3d 704, 708 (5th Cir. 2021) ("Pursuant to the Louisiana Products | Defendants' proposal unnecessarily and confusingly truncates language found in the LPLA. It refers to a failure to warn of "the risk"—a term not defined anywhere in the proposal—rather than the "characteristics of the product that render it unreasonably dangerous." In addition, there is no reason to depart from the *Earnest* instruction, as the alternate language requested by Sanofi is encompassed within the below Inadequate Warning instruction which provides the appropriate elements of proof. |

| | | |
|---|---|---|
| | Liability Act, a plaintiff asserting a failure-to-warn claim must prove: (1) a manufacturer's failure to adequately warn the prescribing physician of *a risk associated with the product that the physician did not otherwise know about*[.]" (emphasis added)).<br><br>Defendants reserve the right to raise further objections to this instruction at the charge conference. | |

REASONABLY ANTICIPATED USE

| As-Read in Earnest Instruction | Plaintiff's Proposed Instruction | Defendants' Proposed Instruction |
| --- | --- | --- |
| A "reasonably anticipated use" of a product means a use or handling of a product that the manufacturer should reasonably expect, in this case by a prescribing or treating physician. | No proposed changes. | No proposed changes. |

**LIABILITY BASED ON INADEQUATE WARNING**

| As-Read in Earnest Instruction | Plaintiff's Proposed Instruction | Defendants' Proposed Instruction | |
|---|---|---|---|
| In order to decide plaintiff's failure to warn claim, you must determine whether the plaintiff has proven by a preponderance of the evidence that defendants failed to adequately warn Mrs. Earnest's prescribing physician, Dr. Carinder, and if so, whether defendants' failure to warn was a proximate cause of Ms. Earnest's injuries. Plaintiff claim that Taxotere is unreasonably dangerous because of inadequate warning about its potential risk of permanent alopecia.

In order to be successful, plaintiff must prove by a preponderance of the evidence that:

1. Taxotere had a potentially damage-causing characteristic;

2. Sanofi failed to use reason care to provide an adequate warning to the plaintiff's prescribing physician about this characteristic and its danger to users of the product;

3. Ms. Earnest's injuries were proximately caused by an inadequate warning;

4. The injury Ms. Earnest suffered from arose from a reasonably anticipated use of the product. | In order to decide Plaintiff's failure to warn claim, you must determine whether the Plaintiff has proven by a preponderance of the evidence that Defendants failed to adequately warn Ms. ~~Earnest~~Kahn's prescribing physician, Dr. ~~Carinder~~Kardinal, and, if so, whether Defendants' failure to warn was a proximate cause of Ms. ~~Earnest~~Kahn's injuries. Plaintiff claims that Taxotere is unreasonably dangerous because of inadequate warnings about its potential risk of permanent alopecia.

In order to be successful, Plaintiff must prove by a preponderance of the evidence that:

(1) Taxotere had a potentially damage-causing characteristic;

(2) Sanofi failed to use reasonable care to provide an adequate warning to the plaintiff's prescribing physician about this characteristic and its danger to users of the product;

(3) M~~rs~~. ~~Earnest's~~ Kahn's injuries were proximately caused by an inadequate warning; and

(4) The injury ~~Mrs.~~Ms. ~~Earnest~~Kahn suffered arose from a reasonably anticipated use of the product. | | Defen |

Plaintiff's instruction omits the following statements (below **in bold**) from Defendants' corresponding instruction, each of which are correct statements of the law and warranted by the claims and anticipated evidence at trial, *see Corey v. Jones*, 650 F.2d 803, 806 (5th Cir. 1981) ("Under federal rules of procedure a litigant is entitled to have the jury instructed as to his claims and theories of law if they are legally correct, supported by the evidence, and are brought to the court's attention in a timely request."):

1. **Defendants** failed to provide **Plaintiff's prescribing doctor(s) with** an adequate warning about this characteristic, **which her doctor(s) did not otherwise know about**.

This is a correct statement of the law. *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Phillips)*, 994 F.3d 704, 708 (5th Cir. 2021) ("Pursuant to the Louisiana Products Liability Act, a plaintiff asserting a failure-to-warn claim must prove: (1) a manufacturer's failure to adequately warn the prescribing physician of *a risk associated with the product that the physician did not otherwise know about*[.]" (emphasis added)); La. Rev. Stat. § 9:2800.57(B)(2) ("A manufacturer is not required to provide an adequate warning about his product when . . . The user or handler of the product already knows or

There is no reason to depart from the form of this Instruction in Earnest. The inclusion of the phrase "which her doctor(s) did not otherwise know about" is inherent in the question of whether an adequate warning would have changed the prescribing decision in a pharmaceutical products liability case, where the learned intermediary defense is being advanced. Additionally, the generic term "prescribing doctor(s)" is objectionable as the generic term conflicts with the evidence that Dr. Kardinal was the only doctor who was "in the room" with Ms. Kahn during the discussion of treatment options, the discussion of the risks and benefits of the drugs involved in the NSABP B40 clinical trial, and the shared decision making that resulted in Ms. Kahn consenting to and proceeding with the clinical trial. The addition of another element of proof is unnecessary as damages are addressed separately and unnecessarily would create a higher burden for the plaintiff. See H. Alston Johnson, III, 18 Louisiana Civil Law Treatise, Civil Jury Instructions § 11:3 (modified).

reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.").

Further, by only referencing Dr. Kardinal, Plaintiff's proposed instruction fails to acknowledge that both Dr. Kardinal *and* Dr. Larned prescribed Taxotere to Plaintiff and are both appropriately considered treating physicians.  *See* Rec. Doc. 11803 at 4–5 (Order and Reasons Granting in Part and Denying in Part Pl.'s Mot.) (holding Dr. Larned can testify about "her specific care of Plaintiff Kahn[,] . . . [including] the drugs she recommended, and she can answer questions about whether she was aware of reports of persistent hair loss associated with these drugs.").

> 2. **The injury that** Plaintiff **experienced was caused by both the Taxotere medication and Defendants' allegedly** inadequate warning.

This is a correct statement of the law.  *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Phillips)*, 994 F.3d 704, 708 (5th Cir. 2021) ("[A] plaintiff asserting a failure-to-warn claim must prove [among other things] . . . that the failure to warn was the cause in fact and the proximate, or legal, cause of the plaintiff's injury."); *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098–99 (5th Cir. 1991) (applying Louisiana law) ("To recover

for a failure to warn under this doctrine, a plaintiff must show: (1) that the defendant failed to warn the physician of a risk associated with the use of the product, not otherwise known to the physician, and (2) that the failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury.  Because the defective aspect of the product must cause the injury, the plaintiff must show that a proper warning would have changed the decision of the treating physician, *i.e.* that but for the inadequate warning, the treating physician would not have used or prescribed the product"); Rec. Doc. 11780 at 7 (Order Denying Pl.'s Mot. to Exclude Test. of John Glaspy, M.D.) ("Plaintiff Kahn bears the burden of proving that Taxotere caused her injury, and she must prove both general and specific causation.").

3. **Plaintiff experienced actual damage from the Taxotere medication.**

This is a correct statement of the law.  *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Gahan)*, 859 F. App'x 692, 694 (5th Cir. 2021) ("[A]s with all tort claims, the plaintiff must prove the elements of causation and damages." (internal quotation marks omitted)); La. Rev. Stat. § 9:2800.54(A) (manufacturer is liable "for damage proximately caused by a characteristic of the product that renders the product

|  | unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant"). |  |
|  | Finally, Defendants note that in a prior version of their jury instructions submitted to the Court, they erroneously omitted the phrase "to use reasonable care to" from this instruction. Defendants agree with both Plaintiff and the Court's ruling in *Earnest* that reasonable care is the correct standard and should be read in this instruction. |  |
|  | Defendants reserve the right to raise further objections to this instruction at the charge conference. |  |

**"ADEQUATE WARNING" DEFINITION**

| As-Read in Earnest Instruction | Plaintiff's Proposed Instruction | Defendants' Proposed Instruction |
|---|---|---|
| An "adequate warning" under the LPLA is defined as a "warning or instruction that would lead an ordinary reasonable user or handler of a product such as a prescribing physician to contemplate the danger in using or handling the product and either to decline to use or handle the product, or, if possible, to use or handle the product in such a manner as to avoid the damage for which the claim is made." There are certain circumstances, however, under which a manufacturer does not have to provide an adequate warning as described above. A manufacturer does not have to provide such a warning when the prescribing physician already knows or reasonably should be expected to know of the dangerous characteristic of the product that may cause injury. A manufacturer of a product shall not be liable for damage proximately caused by a characteristic of the product if, at the time the product left the manufacturer's control, it did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have known of the characteristic that caused the damage or the danger of such characteristic. | No proposed changes. | No proposed changes. |

**FDA APPROVAL AND LABELING**

| As-Read in Earnest Instruction | Plaintiff's Proposed Instruction | Defendants' Proposed Instruction |
|---|---|---|
| The FDA is a regulatory body of the United States, and Sanofi is a pharmaceutical company. Pharmaceutical companies are heavily regulated by the FDA. The FDA, however, does not bear the primary responsibility for creating or updating a drug's label. It is the drug manufacturer who bears the responsibility for the contents of its label. In creating or updating a label, the pharmaceutical companies must comply with the regulations of the FDA. However, FDA approval, although relevant, does not in and of itself absolve the defendants of all liability nor does it establish that warnings provided with the drugs were adequate under the standards of Louisiana law. | No proposed changes. | The ~~FDA~~ Food and Drug Administration, or "FDA," is a regulatory body of the United States~~, and~~ that regulates pharmaceutical manufacturers. Sanofi is a pharmaceutical manufacturer. ~~company. Pharmaceutical companies are heavily regulated by the FDA. The FDA, however, does not bear the~~. A pharmaceutical manufacturer bears primary responsibility for creating ~~or~~ and updating a ~~drug's~~ drug label that complies with FDA regulations. ~~It is the drug manufacturer who bears the responsibility for the contents of its label. In creating or updating a label, the pharmaceutical companies must comply with the regulations of the FDA. However, FDA approval, although relevant, does not in and of itself absolve the defendants of all liability nor does it establish that warnings provided~~ Although FDA approved Taxotere and Taxotere's label, compliance with ~~the drugs were~~ FDA regulations and standards does not alone establish that the labeling for Taxotere was adequate under ~~the standards of~~ Louisiana law. However, if you determine that Sanofi complied with applicable FDA regulations and standards, you may consider those facts in your deliberations as relevant evidence on whether Sanofi used reasonable care to provide an adequate warning for Taxotere.[3] |

| | Defendants' Objections to Plaintiff's Proposed Instruction | Plaintiff's Objection to Defendants' Proposed Instruction |
|---|---|---|
| | Defendants' instruction fairly characterizes the weight that the jury may place on FDA's approval of the Taxotere label, and the Court should adopt it for this case. *Hornbeck v. Danek Med., Inc.*, 1999 WL 1117107, at *3 (W.D. La. Aug. 5, 1999) (device's "compliance with FDA requirements at the time of plaintiff's surgery" relevant on defendant's motion for summary judgment on the plaintiff's failure-to-warn claim), *aff'd*, 226 F.3d 641 (5th Cir. 2000) (unpublished); *see also Mazur v. Merck & Co.*, 742 F. Supp. 239, 247 (E.D. Pa. 1990) ("[C]ompliance with an FDA regulation may establish that the manufacturer met the appropriate minimum standards of due care, but compliance does not necessarily absolve the manufacturer of all liability."); *Corey v. Jones*, 650 F.2d 803, 806 (5th Cir. 1981) ("Under federal rules of procedure a litigant is entitled to have the jury instructed as to his claims and theories of law if they are legally correct, supported by the evidence, and are brought to the court's attention in a timely request."). <br><br> Defendants reserve the right to raise further objections to this instruction at the charge conference. | Defendants' proposed instruction impinges on the Court's in limine decision regarding involvement of the FDA and improperly suggests that FDA bears responsibility for Sanofi's label and for updating the label when there arises "some basis to believe" a causal association exists between Taxotere and PCIA based on newly acquired evidence. |

**LEARNED INTERMEDIARY DOCTRINE**

| As-Read in Earnest Instruction | Plaintiff's Proposed Instruction | Defendants' Proposed Instruction |
|---|---|---|
| Louisiana applies the "learned intermediary" doctrine to warning cases involving prescription drugs.   A drug manufacturer has a duty to provide an adequate warning only to a "learned intermediary," such as a prescribing physician.  It does not have a duty to provide any warnings directly to the patient.  This is because physicians are generally in a superior position to evaluate the warning and to impart such warning to the patient, and can provide an independent medical decision as to whether use of the drug is appropriate for a particular patient.  Although a drug manufacturer's duty to warning about the potential risks of its product is directed to the physician, the manufacturer is directly liable to the patient for breach of this duty.  The warning must both lead the physician to contemplate the risks in using the product and to (1) advise the patient or (2) decline to use it.    In determining the scope of a manufacturer's duty to warn of risks and dangers of its products, the manufacturer is held to the knowledge and skill of an expert in the field.  The manufacturer must keep up with scientific knowledge, discoveries, and advances and is presumed to know what could be learned by doing so.  This duty is continuing.  If the manufacturer learns of a characteristic or danger that may cause | Louisiana applies the "learned intermediary" doctrine to warnings cases involving prescription drugs.   A drug manufacturer has a duty to provide an adequate warning only to a "learned intermediary," such as the prescribing physician.  It does not have a duty to provide any warning directly to the patient.  This is because physicians are generally in a superior position to evaluate the warning and to impart such warning to the patient, and can provide an independent medical decision as to whether use of the drug is appropriate for a particular patient.  Although a drug manufacturer's duty to warn about the potential risks of its product is directed only to the physician, the manufacturer is directly liable to the patient for breach of this duty.    The warning must both lead the physician to contemplate the risks in using the product and to (1) advise the patient or (2) decline to use it.  _However, a manufacturer's voluntary provision of contradictory warnings information to physicians can render an otherwise adequate written warning label to be inadequate.  In other words, a manufacturer "must take responsibility for any confusion over [conflicting] representation[s] it chose to make."[4]   If you find that manufacturer's contradictory representations about risks in_ | Louisiana applies the "learned intermediary" doctrine to warning cases involving prescription drugs.   A drug manufacturer has a duty to provide an adequate warning only to a "learned intermediary," such as a prescribing physician.  It does not have a duty to provide any warnings directly to the patient.  This is because physicians are generally in a superior position to evaluate the warning and to impart such warning to the patient, and can provide an independent medical decision as to whether use of the drug is appropriate for a particular patient.  Although a drug manufacturer's duty to warning about the potential risks of its product is directed to the physician, the manufacturer is directly liable to the patient for breach of this duty.  ~~The warning must both lead the physician to contemplate the risks in using the product and to (1) advise the patient or (2) decline to use it.~~  ~~In determining the scope of a manufacturer's duty to warn of risks and dangers of its products, the manufacturer is held to the knowledge and skill of an expert in the field.  The manufacturer must keep up with scientific knowledge, discoveries, and advances and is presumed to know what could be learned by doing so.  This duty is continuing.  If the manufacturer learns of a characteristic or danger that may cause~~ |

injury after its product is on the market, the manufacturer has a continuing duty to use reasonable care to provide adequate warning to prescribing and treating physicians concerning such later discovered matters. That is to say, under the law applicable to this case, drug manufacturers are responsible to draft the initial label for their product, and they have a continuing duty to ensure that the label remains adequate at all times.

It is a physician's duty to remain abreast of the medication's characteristics and to take into account the information contained in the prescription medication's label. The manufacturer may reasonably assume that the prescriber or treater will apply the same knowledge or professional expertise, and good judgment that a reasonable physician would apply in using the product. Providing an adequate warning to the prescribing or treating doctor relieves the manufacturer of its duty to warn the patient regardless of how or if the prescribe or treater warns the patient.

communications outside of the written warning label "interdicted or superseded the written warning to the doctor," the manufacturer's warnings are inadequate. [5]

In determining the scope of a manufacturer's duty to warn of risks and dangers of its products, the manufacturer is held to the knowledge and skill of an expert in its field. The manufacturer must keep up with scientific knowledge, discoveries, and advances and is presumed to know what could be learned by doing so. This duty is continuing. If the manufacturer learns of a characteristic or danger that may cause injury after its product is on the market, the manufacturer has a continuing duty to use reasonable care to provide adequate warning to prescribing and treating physicians concerning such later-discovered matters. That is to say, under the law applicable to this case, drug manufacturers are responsible to draft the initial label for their product, and to assure that the label remains adequate at all times.

It is a physician's duty to remain abreast of a medication's characteristics and to take into account the information contained in a prescription medication's label. The manufacturer may reasonably assume that the prescriber or treater will apply the same knowledge, professional expertise, and good judgment that a reasonable physician would apply in using the product. Providing an adequate warning to the prescribing or treating doctor relieves the manufacturer of its

injury after its product is on the market, the manufacturer has a continuing duty to use reasonable care to provide adequate warning to prescribing and treating physicians concerning such later discovered matters. That is to say, under the law applicable to this case, drug manufacturers are responsible to draft the initial label for their product, and they have a continuing duty to ensure that the label remains adequate at all times.

It is a physician's duty to remain abreast of the medication's characteristics and to take into account the information contained in the prescription medication's label. The manufacturer may reasonably assume that the prescriber or treater will apply the same knowledge or professional expertise, and good judgment that a reasonable physician would apply in using the product. Providing an adequate warning to the prescribing or treating doctor relieves the manufacturer of its duty to warn the patient regardless of how or if the prescribe or treater warns the patient.

|  |  |  |
|---|---|---|
|  | duty to warn the patient regardless of how or if the prescriber or treater warns the patient. |  |
|  | **Defendants' Objections to Plaintiff's Proposed Instruction** | **Plaintiff's Objection to Defendants' Proposed Instruction** |
|  | Plaintiff's proposed addition to the instruction given in *Earnest* improperly invites the jury to look beyond the Taxotere label that Dr. Kardinal and Dr. Larned considered, which is improper on the facts of this case.  Plaintiff relies on a case that is obviously distinguishable.  In *Brown*, the issue on appeal after a verdict in plaintiff's favor was whether the representations made by the manufacturer's sales representative to the decedent's pharmacist (*who was also the decedent's husband as well as the plaintiff in the case*) superseded an otherwise adequate warning made to the decedent's doctor.  *Brown v. Glaxo, Inc.*, 790 So. 2d 35 (La. App. 1 Cir. 2000).<br><br>Characterizing the "peculiar facts" of the case "as an adequacy of warning case, with a twist," the Court of Appeals of Louisiana, in addition to the decedent's physician, also viewed the pharmacist-husband as a treater.  *Id.* at 39 ("In this unusual case, the patient's husband, Mr. Brown, was the pharmacist directly detailed on Imitrex by Glaxo.  It was Mr. Brown who filled the Imitrex prescription for his wife.  It was Mr. Brown who discussed Imitrex, and the expected symptoms, with his wife.  Being a pharmacist, Mr. Brown was also aware of the warnings relative to Imitrex.  Thus, Mrs. Brown's pharmacist | Plaintiff objects to removal of the "continuing duty" charge, as it properly provides instruction on the continuing duties of manufacturers under the LPLA.   Plaintiff proposes an additional instruction related to conflicting warnings provided by a company through its use of a nurse tear sheet, which the testimony has shown was distributed by Sanofi to provide information to doctors, nurses and patients about the side effect of alopecia as a "common, yet temporary" condition in a comprehensive care kit that also enclosed the Taxotere label. |

husband had knowledge of the warnings, along with her doctor.").

After determining the label adequately warned of the risk of cardiac-related events to the decedent's actual physician, the court found that statements made by the manufacturer's sales representative directly to the pharmacist-husband—namely, that the chest pain experienced with the drug *was not* "cardiac in origin"—was sufficient for the jury to "have reasonably concluded that the adequacy of Glaxo's written warning to the doctor was interdicted or superseded by the subsequent verbal representations made by Glaxo's agent directly to the pharmacist-husband . . . and that he shared those representations with his wife." *Id.* at 40.

This Court should reject adopting the language in *Brown*. Here, there is no evidence that either Dr. Kardinal or Dr. Larned relied on any representations from Sanofi (through a sales representative or otherwise) beyond the FDA-approved Taxotere label. Consistent with these facts, this Court has already conditionally granted Sanofi's Motion in Limine to Preclude Evidence or Argument Concerning Sanofi Promotional and/or Marketing Materials Not Possessed or Relied on by Ms. Kahn or Her Prescribing Physician. Rec. Doc. 13260 at 6. This case lacks the one-of-a-kind facts of

*Brown*, and the instruction used in that case has no relevance here.

Further, the following statement, included in Plaintiff's proposal and as instructed during the *Earnest* trial, is not an entirely accurate statement of the law: "The warning must both lead the physician to contemplate the risks in using the product and to (1) advise the patient or (2) decline to use it." This statement is not accurate because a manufacturer is not liable when the physician decides in her or his professional judgment to *not* convey a particular risk warning to the patient. *See In re Taxotere (Docetaxel) Prods. Liab. Litig. (Phillips)*, 994 F.3d 704, 710 (5th Cir. 2021) ("[I]t is clear that Dr. Sonnier and Phillips discussed the risk that Dr. Sonnier was aware of all along—that is, the risk of temporary alopecia and abnormal hair regrowth."); *id.* at 710 n.5 ("To the extent Phillips now challenges Dr. Sonnier's judgment in prescribing TCH, a failure-to-warn claim against drug manufacturers (the only claim at issue here) is not the proper vehicle for that challenge.").

Defendants reserve the right to raise further objections to this instruction at the charge conference.

**CAUSATION**

| As-Read in Earnest Instruction | Plaintiff's Proposed Instruction | Defendants' Proposed Instruction |
|---|---|---|
| In order for plaintiff to prevail on her claims, she must establish that the inadequate warning was the "proximate cause" of Ms. Earnest's alleged injuries.  Proximate cause means the efficient or direct cause.  The law defines proximate cause as something that produces a natural chain of events which, in the end, brings about the injury.  In other words, proximate cause is the cause without which the injury would not have occurred.  Proximate cause requires proof of both cause cause-in-fact and legal cause.

Cause-in-fact is proved by establishing that a Plaintiff's injury would not have occurred "but for" the Defendant's actions.  In order to prove cause-in-fact in this case, the plaintiff must show to a reasonable degree of medical probability that Taxotere can cause permanent hair loss, that Taxotere caused permanent hair loss for Ms. Earnest, and that the failure to warn Dr. Carinder was the cause of Ms. Earnest's injury.

Legal cause is proved by establishing foreseeability. The test of foreseeability is whether some injury to another is a natural and probable consequence of the complained-of conduct.  The law requires only reasonable foresight.  It is not necessary for the plaintiff to demonstrate that the defendant should have foreseen the particular event which occurred, but | In order for Plaintiff to prevail on her claims, she must establish that the inadequate warning was the "proximate cause" of ~~Mrs.~~Ms. ~~Earnest~~Kahn's alleged injuries.

Proximate cause means the efficient or direct cause. The law defines proximate cause as something that produces a natural chain of events which, in the end, brings about the injury. In other words, proximate cause is the cause without which the injury would not have occurred. Proximate cause requires proof of both causation-in-fact and legal cause.

Causation-in-fact is proved by establishing that Defendants' actions were a "substantial factor" in causing Plaintiff's injury. [6] A substantial factor is the cause if a Plaintiff would probably not have suffered the claimed injuries in the absence of Defendant's conduct.  A substantial factor does not mean only one cause of any injury, consisting of only one factor or thing, or the conduct of only one person.  On the contrary, many factors or things may operate at the same time, either independently or together, to cause injury or damage.  If a Plaintiff probably would have suffered those injuries regardless of what the Defendant did, then the injuries were not caused by the Defendant.  If, on the other hand, a Plaintiff probably would not have suffered the claimed injuries in the absence of | **MEDICAL CAUSATION**

Plaintiff bears the burden of proving that Taxotere caused her injury, and she must prove general and specific causation. [9]

To establish general causation, Plaintiff must first prove to a reasonable degree of medical probability that Taxotere can cause permanent hair loss, which requires Plaintiff to prove both (a) that a statistically significant association exists between Taxotere and permanent hair loss, and (b) that additional evidence establishes the association "reflects a true cause-effect relationship." [10]   If Plaintiff establishes general causation, she must then establish specific causation, which requires Plaintiff to prove that Taxotere was the cause in fact and proximate cause of her injury, in this case her permanent hair loss. [11]   That is, Plaintiff must prove both (a) that she would not have sustained permanent hair loss "but for" taking Taxotere, and (b) that taking Taxotere, in natural and continuous sequence, unbroken by any intervening cause, produced Plaintiff's permanent hair loss (i.e., that taking Taxotere was the direct cause of Plaintiff's injury). [12] |

merely that the defendant should have foreseen that its actions would probably cause injury to someone. The plaintiff proves legal cause by establishing that the injury in question occurred as a natural and probable consequence of the defendant's actions or inactions.

Proximate cause does not mean the sole cause. The defendants' conduct can be a proximate cause if it was at least one of the direct, concurring causes of the alleged injury. However, plaintiff must show that defendants' conduct was a substantial contributing factor in bringing about the result. In other words, it is not necessary for plaintiff to negate all other contributing factors or causes of Ms. Earnest's injuries, provided they show that defendants' failure to provide an adequate warning in the Taxotere label substantially contributed to her injuries. Where two or more possible causes for an injury are identified, plaintiff must establish with reasonable probability that Mrs. Earnest's injury resulted from a cause for which defendants would be liable. Moreover, plaintiff must proffer a competent medical expert to testify to a reasonable degree of medical probability that Taxotere was a proximate cause of Ms. Earnest's injuries.

To recover for the failure-to-warn claim, plaintiff must prove by a preponderance of the evidence that an inadequate warning itself - in addition to the medication - was the proximate cause of Ms. Earnest's injury. In other words,

Defendant's conduct, then you must conclude that Defendant's conduct did play a part in plaintiff's injuries. [7]

~~Causation-in-fact is proved by establishing that a Plaintiff's injury would not have occurred "but for" the Defendants' actions. In order to prove cause-in-fact in this case, the Plaintiff must show to a reasonable degree of medical probability that Taxotere can cause permanent hair loss, that Taxotere caused permanent hair loss for Mrs.~~Ms. Earnest~~Kahn~~, ~~and that the failure to warn Dr. Carinder Kardinal was the~~ a ~~substantial factor in cause~~ causing ~~of Mrs.~~Ms. Earnest~~Kahn's injury.~~ [8]

Legal cause is proved by establishing foreseeability. The test of foreseeability is whether some injury to another is the natural and probable consequence of the complained-of conduct. The law requires only reasonable foresight. It is not necessary for the Plaintiff to demonstrate that the Defendant should have foreseen the particular event which occurred, but merely that the Defendant should have foreseen that its actions would probably cause injury to someone. The Plaintiff proves legal cause by establishing that the injury in question occurred as a natural and probable consequence of the Defendants' actions or inactions.

~~Proximate cause does not mean the sole cause. The Defendants' conduct can be a proximate cause if it was at least one of the direct, concurring causes of the alleged injury.~~

To prove to a reasonable degree of medical probability that Taxotere caused Plaintiff's injuries, Plaintiff must proffer competent medical expert testimony. [13]

## WARNINGS CAUSATION

If you determine that Taxotere is the medical cause of Plaintiff's injury, you must also decide whether Plaintiff has proven that Defendants' allegedly inadequate warning was the cause-in-fact of Plaintiff's injury. [14]

The test for cause-in-fact asks you to decide two questions. The first question is whether Plaintiff has proven that, if Taxotere had included an additional warning, her prescribing physician(s) would have decided not to prescribe Taxotere to Plaintiff. The second question is whether Plaintiff has proven that, had she not taken Taxotere, she would have avoided experiencing hair loss of similar severity if her prescribing physician(s) had prescribed a different chemotherapy medication.

## PROXIMATE CAUSATION

Plaintiff must also prove that the allegedly inadequate warning was the proximate cause of her injury. [15] To do so, Plaintiff must prove the inadequate warning, in natural and continuous sequence, unbroken by any intervening cause,

plaintiff must prove by a preponderance of the evidence that, if an adequate warning had accompanied Taxotere, then Dr. Carinder would have altered his prescribing or treating decision or behavior and Ms. Earnest would not have suffered her injury.

~~However, Plaintiff must show that Defendants' conduct was a substantial contributing factor in bringing about the result. In other words, it is not necessary for Plaintiff to negate all other contributing factors or causes of Mrs.~~Ms. ~~Earnest~~Kahn's injuries, provided they show that Defendants' failure to provide an adequate warning in the Taxotere label substantially contributed to her injuries. Where two or more possible causes for an injury are identified, Plaintiff must establish with reasonable probability that Mrs.~~Ms. Earnest~~Kahn's injury resulted from a cause for which Defendants would be liable. Moreover, Plaintiff must proffer a competent medical expert to testify to a reasonable degree of medical probability that Taxotere was a proximate cause of Mrs. Earnest's injuries.~~

To recover for the failure-to-warn claim, Plaintiff must prove by a preponderance of the evidence that an _in_adequate warning itself – in addition to the medication – was ~~the~~ _a_ proximate cause of ~~Mrs.~~Ms. ~~Earnest~~Kahn's injury. In other words, Plaintiff must prove by a preponderance of the evidence that, if an adequate warning had accompanied Taxotere, then Dr. ~~Carinder~~ Kardinal would have altered his prescribing or treating decision or behavior and ~~Mrs.~~Ms. ~~Earnest~~Kahn would not have suffered her injury.

_produced her injury—that is, the inadequate warning was the direct cause of Plaintiff's injury. Under a proximate cause analysis, there must be a substantial connection between the Defendant's actions and the harm which occurs._

| | Defendants' Objections to Plaintiff's Proposed Instruction | Plaintiff's Objection to Defendants' Proposed Instruction |
|---|---|---|
| | Defendants' instruction properly characterizes the law and is warranted by the claims and anticipated evidence at trial, *see Corey v. Jones*, 650 F.2d 803, 806 (5th Cir. 1981) ("Under federal rules of procedure a litigant is entitled to have the jury instructed as to his claims and theories of law if they are legally correct, supported by the evidence, and are brought to the court's attention in a timely request.").  Plaintiff's proposed instruction does not for the following reasons:<br><br>1. As in *Earnest*, this Court should decline to adopt Plaintiff's proposed instruction because it improperly includes the concept of "substantial factor" instead of "but for" causation.  Plaintiff's proposed instruction does not include "but for" causation as required by Louisiana law.  "Substantial factor" is an alternative test for *cause in fact*, not proximate cause, and it is not applicable here. *See* Ex. A, *In Re Roundup Liab. Litig.*, No. 16-md-0241-VC, Rec. Doc. 2961 (Mar. 12, 2019) ("The court cannot give the standard California multiple causation instruction (CACI 431) because the plaintiff neglected to present any evidence at trial that Roundup combined with hepatitis C or hepatitis B to cause [the Plaintiff's injury]."); *see also Nagle v.* | Sanofi's proposed charge over-complicates Plaintiff's burden by introducing the legal terms "general causation" and "specific causation," which have both been addressed in Rule 56 and Daubert rulings.  Plaintiff's proposal both simplifies the Instruction given in ***Earnest*** and accurately tracks the law regarding proximate cause in a products liability case.  Plaintiff has removed the "but for" causation paragraph because it conflicts with Louisiana law on causation-in-fact when a "substantial contributing factor" instruction is given. ***See*** n.8. |

*Gusman*, 61 F. Supp. 3d 609, 622 (E.D. La. 2014) ("Louisiana case law is clear that cause-in-fact is usually a 'but for' inquiry, 'which tests whether the accident would or would not have happened but for the defendant's substandard conduct.' The 'substantial factor' test is applied as an alternative to the but-for test '[w]hen there are concurrent causes of an accident which nevertheless would have occurred in the absence of one of the causes.' In such a situation, 'some other test is needed.' The substantial factor test is 'similar to the but-for test,' except that when more than one party's negligence would have caused the injury in the absence of another party's negligence, 'all are held to be causative.' Plaintiffs contend that there are 'multiple causes' for Mr. Goetzee's death, but they do not specify what they mean by this, nor do they explain how this case fits the mold of a concurrent causes case. Thus, the Court concludes that the but-for test is the appropriate test.") (citations omitted); *Hutzler v. Cole*, 633 So. 2d 1319, 1337 (La. App. 1994) (concurring opinion) ("We do not need to consider an alternative method for determining cause in fact (the substantial factor test used herein) when the facts do pass the but-for analysis."); *Beary v. Deese*, 2018 WL 3417878, at *6 (E.D. La. July 13, 2018) ("'While the

term 'substantial factor' has received recognition in the courts of appeal, the 'but-for' test clearly prevails.' 12 La. Civ. L. Treatise, Tort Law § 4.6 (2d ed.).").

2. Plaintiff has omitted a paragraph of the proximate cause instruction regarding the substantial connection needed between Defendant's actions and the harm that occurs, as well as the need for expert testimony. To establish proximate causation, Plaintiff must prove the inadequate warning, in natural and continuous sequence, unbroken by any intervening cause, produced her injury—that is, the inadequate warning was the direct cause of Plaintiff's injury. Under a proximate cause analysis, there must be a substantial connection between the Defendant's actions and the harm that occurs. *Wright v. Revco Indus. Inc.*, 228 F. Supp. 3d 749, 753 (W.D. La. 2017) ("The plaintiff has the burden of proving causation (as well as an unreasonably dangerous condition), and a plaintiff must prove not only causation in fact, but also that the product defect was the most probable cause of injury. Thus, a manufacturer is not liable for damages brought about by an occurrence of a separate, independent, or superseding cause." (citations omitted)); *Ford v. Pennzoil*, 974 F. Supp. 559, 565

(E.D. La. 1997), *aff'd*, 200 F.3d 816 (5th Cir. 1999) ("Louisiana courts generally define 'proximate cause' as any cause which in natural and continuous sequence, unbroken by any efficient, intervening cause, produces the result complained of and without which the result would not have occurred. . . . Proximate cause requires more than a cause-in-fact or 'but for' connection.   Under a proximate cause analysis, there must be a substantial connection between the actions of a defendant and the harm which occurs." (citations omitted)); Rec. Doc. 11780 at 7 (Order and Reasons Denying Pl.'s Mtn. to Exclude Testimony of John Glaspy, M.D.) ("Plaintiff bears the burden of proving that Taxotere caused her injury, and she must prove both general and specific causation); *id.* at 7 n.28 (further noting that plaintiff must present expert testimony to establish general and specific causation).

3. Further, Defendants submit that because the concepts of causation are complicated, Defendants' correctly stated proposed separate instructions (a medical causation instruction, a warnings causation instruction, and a proximate causation instruction) are warranted to help clarify these concepts to the jury. *See Pellegrin v.*

|  | *C.R. Bard*, 2018 WL 3046570, at *4 (E.D. La. June 20, 2018) (outlining the elements necessary for warnings causation); *Burst v. Shell Oil Co.,* 2015 WL 3755953, at *5–6 (E.D. La. June 16, 2015), *aff'd*, 650 F. App'x 170 (5th Cir. 2016) (discussing requirement of statistical significance and that "[o]nce an association is found, 'researchers consider whether the association reflects a true cause-effect relationship'"); *Seaman v. Seacor Marine LLC*, 564 F. Supp. 2d 598, 600 (E.D. La. 2008) (outlining elements for medical causation), *aff'd*, 326 F. App'x 721 (5th Cir. 2009).<br><br>Defendants reserve the right to raise further objections to this instruction at the charge conference. |  |

**DAMAGES – GENERAL INSTRUCTION**

| As-Read in Earnest Instruction | Plaintiff's Proposed Instruction | Defendants' Proposed Instruction |
|---|---|---|
| If you decide that the plaintiff has established the other elements of her case by a preponderance of the evidence, you must decide the question of whether there has been damage to plaintiff and if so, the amount of that damage.  Louisiana law suggests simple reparation is just and adequate compensation for injuries.  Your award should be designed to fully and fairly compensate the plaintiff for her injury, if you find one has occurred, and should not go beyond such reparation. | If you decide that the Plaintiff has established the other elements of her case by a preponderance of the evidence, you must decide the question of whether there has been damage to Plaintiff and if so, the amount of that damage. Louisiana law suggests simple reparation is a just and adequate compensation for injuries. Your award should be designed to fully and fairly compensate the Plaintiff for her injury, if you find one has occurred, and should not go beyond such reparation. | If you decide that the plaintiff has established the other elements of her case by a preponderance of the evidence, you must decide the question of whether there has been damage to plaintiff and if so, the amount of that damage.  Louisiana law suggests simple reparation is just and adequate compensation for injuries.  Your award should be designed to fully and fairly compensate the plaintiff for her injury, if you find one has occurred, and should not go beyond such reparation. |
| The law recognizes the difficulty of translating personal injuries into dollars and cents figures, but that is what must be done if you decide plaintiff has proven her claims by a preponderance of the evidence.  You must arrive at a figure that will fairly and adequately compensate the plaintiff for damages she has suffered.  In estimating such damages, you may take into account the following elements: Physical injury, pain and suffering, loss of enjoyment of life, and physical disability, if any. | The law recognizes the difficulty of translating personal injuries into a dollars and cents figure, but that is what must be done if you decide Plaintiff has proven her claims by a preponderance of the evidence. You must arrive at a figure that will fairly and adequately compensate the Plaintiff for damages she has suffered. In estimating such damages, you may take into consideration the following elements: | The law recognizes the difficulty of translating personal injuries into dollars and cents figures, but that is what must be done if you decide plaintiff has proven her claims by a preponderance of the evidence.  You must arrive at a figure that will fairly and adequately compensate the plaintiff for damages she has suffered.  In estimating such damages, you may take into account the following elements: Physical injury, pain and suffering, loss of enjoyment of life, and physical disability, if any. |
|  | (1)  physical injury; |  |
|  | (2)  pain and suffering; |  |
|  | (3)  loss of enjoyment of life; and |  |
|  | (4)  permanent disability, if any. |  |
| Like other parts of the plaintiff's case, these damages must be established by a preponderance of the evidence.  This means, on the one hand, you are not entitled to award speculative damages for injuries which you think the plaintiff might have experienced or might experience in the future. On | Like other parts of the Plaintiff's case, these damages must be established by a preponderance of the evidence. This means, on the one hand, you are not entitled to award | Like other parts of the plaintiff's case, these damages must be established by a preponderance of the evidence.  This means, on the one hand, you are not entitled to award speculative damages for injuries which you think the plaintiff might have experienced or might experience in the future. On |

the other hand, it means that you may also make an effort to reasonably proximate the damages which the plaintiff has proved are more probable than not, even though they cannot be computed with mathematical certainty.

You may award compensatory damages only for the injuries that plaintiff prove were caused by defendants' wrongful conduct. The damages you award must be fair compensation for plaintiff's damages, no more and no less. Compensatory damages are not allowed as punishment and cannot be imposed or increased to penalize the defendants.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. That is to say, you should not be affected by sympathy, compassion, prejudice, or bias. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require plaintiffs to prove the amount of their losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing and awarding of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

In reaching a verdict on the question of damages, I caution you not to include anything for the payment of expenses and attorneys fees; the law does not consider these as

speculative damages for injuries which you think the Plaintiff might have experiences or might experience in the future. On the other hand, it means that you may also make an effort to reasonably approximate the damages which the Plaintiff has proved are more probable than not, even though they cannot be computed with mathematical certainty.

You may award compensatory damages only for injuries that plaintiffs proves were caused by defendants' wrongful conduct. A defendant takes the victim as it finds him and is responsible for all natural and probable consequences of its act(s). If a defendant's conduct aggravates a pre-existing injury or condition, the defendant must compensate the victim for the full extent of the aggravation.[16] The damages you award must be fair compensation for plaintiff's damages, no more and no less. Compensatory damages are not allowed as punishment and cannot be imposed or increased to penalize defendants.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. That is to say, you should not be affected by sympathy, compassion, prejudice, or bias. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require plaintiffs to prove the amount of their her losses with

the other hand, it means that you may also make an effort to reasonably approximate the damages which the plaintiff has proved are more probable than not, even though they cannot be computed with mathematical certainty.

You may award compensatory damages only for the injuries that plaintiff prove were caused by defendants' wrongful conduct. The damages you award must be fair compensation for plaintiff's Plaintiff's damages, no more and no less. Compensatory damages are not allowed as punishment and cannot be imposed or increased to penalize the defendants.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. That is to say, you should not be affected by sympathy, compassion, prejudice, or bias. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require plaintiffs Plaintiff to prove the amount of their her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing and awarding of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

In reaching a verdict on the question of damages, I caution you not to include anything for the payment of expenses and attorneys fees; the law does not consider these as

| | | |
|---|---|---|
| damages experienced by the plaintiff. If you decide to make an award, follow the instructions I have given you, and do not add or subtract from that award on account of federal or state income taxes.<br><br>Finally, let me say that the fact that I have given you these statements about the law of damages does not in any way imply or suggest that I feel or do not feel that any damages are due in this case. Whether or not damages are due is solely for you to determine. | mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.<br><br>You must use sound discretion in fixing and award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.<br><br>In reaching a verdict on the question of damages, I caution you not to include anything for the payment of expenses and attorney fees; the law does not consider these as damages experienced by the Plaintiff. If you decide to make an award, follow the instructions I have given you, and do not add or subtract from that award on account of federal or state income taxes.<br><br>Finally, let me say that the fact that I have given you these statements about the law of damages does not in any way imply or suggest that I feel or do not feel that any damages are due in this case. Whether or not damages are due is solely for you to determine. | damages experienced by the plaintiff. <u>Also, any amount which you might award to the plaintiff is not income within the meaning of the income tax laws.</u> If you decide to make an award, follow the instructions I have given you, and do not add or subtract from that award on account of federal or state income taxes. <u>In other words, if you find that the Plaintiff is entitled to damages, the amount which you award should be the sum that you think will fully and fairly compensate the Plaintiff for her injuries without regard to what she may pay her attorneys or the amount that you might think would be paid in income taxes.</u>[17]<br><br><u>When the Defendants' tortious conduct has caused harm to the Plaintiff or to her property and in so doing has conferred a special benefit to the plaintiff, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable. Accordingly, even if you decide that Plaintiff is entitled to damages, if you find that her life was extended or improved by the use of Taxotere, you may reduce the award by the value of that benefit.</u>[18]<br><br>Finally, let me say that the fact that I have given you these statements about the law of damages does not in any way imply or suggest that I feel or do not feel that any damages are due in this case. Whether or not damages are due is solely for you to determine. |
| | **Defendants' Objections to Plaintiff's Proposed Instruction** | **Plaintiff's Objection to Defendants' Proposed Instruction** |

As it did in *Earnest*, the Court should reject Plaintiff's attempt to add language on the "eggshell skull" doctrine into this instruction because Ms. Kahn has not alleged that she had a preexisting injury or condition that Taxotere aggravated to warrant such an instruction. *See Lasha v. Olin Corp.*, 625 So. 2d 1002, 1006 (La. 1993) ("The defendant is liable for the harm it causes even though under the same circumstances a normal person would not have suffered that illness or injury. When the defendant's tortious conduct aggravates a pre-existing condition, the defendant must compensate the victim for the full extent of the aggravation."). As a result, Defendants' proposed instruction more fairly instructs the jury on damages.

Plaintiff's instruction also omits the following statements (below **in bold**) from Defendants' corresponding instruction, each of which are correct statements of the law and warranted by the claims and anticipated evidence at trial, *see Corey v. Jones*, 650 F.2d 803, 806 (5th Cir. 1981) ("Under federal rules of procedure a litigant is entitled to have the jury instructed as to his claims and theories of law if they are legally correct, supported by the evidence, and are brought to the court's attention in a timely request."):

1. **When the Defendants' tortious conduct has caused harm to the plaintiff or to her property and in so**

Plaintiff adopts her objection to the added language on the same basis that the Court agreed with in *Earnest*. *See* Doc. 8194 at 59. Sanofi attempts to again add a "special benefit" paragraph based on the Restatement of Torts and non-Louisiana case law. The provision is contrary to Louisiana law and should be stricken. The tax instruction is unnecessary and not a mandatory charge.

**doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable. Accordingly, even if you decide that Plaintiff is entitled to damages, if you find that her life was extended or improved by the use of Taxotere, you may reduce the award by the value of that benefit.**

This a correct statement of the law. *See* Restatement (Second) of Torts, § 920; *Troutt v. Novartis Pharm. Corp.*, 2013 WL 5304059 (M.D. Fla. Sept. 20, 2013); *Guenter v. Novartis Pharm. Corp.*, 2013 WL 4456505 (M.D. Fla. Aug. 16, 2013); *Gracia v. Meiselman*, 220 N.J. Super. Ct. 317 (1987), *distinguished by Lodato ex rel. Lodato v. Kappy*, N.J. Super. A.D. (2002); *Mohr v. Williams*, 95 Minn. 261, 270-71 (1905), *overruled in part on other grounds by Genzel v. Halvorson*, 248 Minn. 527 (1957); *Georges v. Novartis Pharm. Corp.*, 2013 WL 5217198, at *6 (C.D. Cal. Apr. 4, 2013).

Plaintiff's proposed instruction includes what appears to be a typographical error: "You must use sound discretion in fixing and award of damages."  Since Plaintiff did not redline this change in the parties' joint submission to the Court, Defendants believe that Plaintiff intended to copy the Court's instruction in

| | | |
|---|---|---|
| | *Earnest* ("You must use sound discretion in fixing and awarding of damages[.]" (emphasis added)).<br><br>Defendants reserve the right to raise further objections to this instruction at the charge conference. | |

## MENTAL ANGUISH

| As-Read in Earnest Instruction | Plaintiff's Proposed Instruction | Defendants' Proposed Instruction |
|---|---|---|
| The law recognizes that a plaintiff may experience mental distress and anguish as a result of an injury. You are permitted to consider such consequences as a part of the general damages which you may award. By "mental distress and anguish," I mean substantial worry or concern, grief and the like.<br><br>As I have mentioned to you, there is no practical way to introduce evidence as to the general damages which plaintiff claims for pain and suffering and for mental distress. There is no precise standard to fix these damages or assign some value to them. Rather, your job is to determine an amount that will be fair and just on the basis of the evidence of plaintiff's injury and treatment that you have heard, and that will fairly compensate plaintiff for any damage she may have suffered. | No proposed changes. | The law recognizes that a plaintiff may experience mental distress and anguish as a result of an injury. You are permitted to consider such consequences as a part of the general damages which you may award. By "mental distress and anguish," I mean substantial worry or concern, grief and the like.<br><br>As I have mentioned to you, there is no practical way to introduce evidence as to the general damages which plaintiff claims for pain and suffering and for mental distress. There is no precise standard to fix these damages or assign some value to them. Rather, your job is to determine an amount that will be fair and just on the basis of the evidence of plaintiff's injury and treatment that you have heard, and that will fairly compensate plaintiff for any damage she may have suffered.<br><br>Though the law recognizes a possible recovery for mental distress, it requires that you carefully scrutinize the evidence presented on this point to assure yourselves that such injury has been proven by the Plaintiff. [19] |

| | Defendants' Objections to Plaintiff's Proposed Instruction | Plaintiff's Objection to Defendants' Proposed Instruction |
|---|---|---|
| | Plaintiff's instruction omits the following statements (below **in bold**) from Defendants' corresponding instruction, each of which are correct statements of the law and warranted by the claims and anticipated evidence at trial, *see Corey v. Jones*, 650 F.2d 803, 806 (5th Cir. 1981) ("Under federal rules of procedure a litigant is entitled to have the jury instructed as to his claims and theories of law if they are legally correct, supported by the evidence, and are brought to the court's attention in a timely request."):<br><br>1. **Though the law recognizes a possible recovery for mental distress, it requires that you carefully scrutinize the evidence presented on this point to assure yourselves that such injury has been proven by the Plaintiff.**<br>This is a correct statement of the law.  *See* H. Alston Johnson, III, Mental Anguish, 18 La. Civ. L. Treatise, Civil Jury Instructions § 18:12 (3d ed.) ("[Though the law recognizes a possible recovery for mental distress, it requires that you carefully scrutinize the evidence presented on this point to assure yourselves that such injury has been proven by plaintiff.]"). | Plaintiff objects to Sanofi's revision to Paragraph 2. The law cited by Sanofi references a case involving "traumatic neurosis." See Jackson v. U. S. Fidelity & Guaranty Co., 382 So. 2d 223 (La. Ct. App. 3d Cir. 1980). Further, the language is called into question by Professor Johnson in the treatise cited by Defendants. |

47

|  | Defendants reserve the right to raise further objections to this instruction at the charge conference. |  |

**STATUTE OF LIMITATIONS – ACTUAL OR CONSTRUCTIVE KNOWLEDGE**

| As-Read in Earnest Instruction | Plaintiff's Proposed Instruction | Defendants' Proposed Instruction |
|---|---|---|
| In this case, it is necessary for you to determine whether the plaintiff had actual or constructive knowledge of facts indicating to a reasonable person that she was the victim of a tort on or before December 12, 2015.  This occurs when the plaintiff has actual or constructive knowledge of a causal relationship between the object or product and the injury.  There is no requirement that a patient be informed by an attorney or physician of a possible claim before prescription begins to run.  Rather, prescription begins to run when there is enough evidence to call for an inquiry about a claim, not when an inquiry reveals the facts and evidence that specifically outline the claim.  The ultimate issue is the reasonableness of the plaintiff's action or inaction, in light of her education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct. | **LIBERATIVE PRESCRIPTION, OTHERWISE KNOWN AS THE** STATUTE OF LIMITATIONS – ACTUAL OR CONSTRUCTIVE KNOWLEDGE<br><br>In this case, it is necessary for you to determine whether the Plaintiff had actual or constructive knowledge of facts indicating to a reasonable person that she was the victim of a tort on or before December ~~12~~9, 2015. This occurs when the Plaintiff has actual or constructive knowledge of a causal relationship between the object or product and the injury. There is no requirement that a patient be informed by an attorney or physician of a possible claim before prescription begins to run. Rather, prescription begins to run when there is enough notice to call for an inquiry about a claim, not when an inquiry reveals the facts or evidence that specifically outline the claim. "When a plaintiff acts reasonably to discover the cause of a problem, 'the [requirement to file a lawsuit does] not begin to run until [she has] a reasonable basis to pursue a claim against" a Defendant.[20] Once a Plaintiff is required to undertake an inquiry, the Plaintiff's inquiry must be reasonable. A Plaintiff's inquiry is reasonable "as long as it was reasonable for [the plaintiff] to remain unaware of the connection between those damages and [the pharmaceutical drug.]."[21] You may consider | **PRESCRIPTION – DISCOVERY RULE**<br><br>Plaintiff completed her chemotherapy treatment, which included four cycles of Taxotere, in July 2009.  Plaintiff alleges she suffered her injury, permanent hair loss, six months after completing her chemotherapy treatment.[23]  Louisiana law required Plaintiff to file her lawsuit within one year of experiencing her injury unless she proves that neither she nor a reasonable person in her position could have discovered Taxotere as a potential cause of her injury more than one year before she filed her lawsuit.  She filed her lawsuit on December 9, 2016, so Plaintiff must establish that she could not have discovered the potential cause of her injury until December 9, 2015.<br><br>In determining the question, Louisiana law asks you, the jury, to consider the reasonableness of Plaintiff's action or inaction.[24]  Specifically, when there is information sufficient to put a reasonable person on notice of her injury, a plaintiff has a responsibility to investigate the facts in order to pursue her claims within one year.[25]  Plaintiff does not need to have all the facts or evidence to prove her claim to trigger her responsibility to inquire into a possible claim.[26]  For example, there is no requirement that an attorney or physician inform Plaintiff of a |

| | | |
|---|---|---|
| | the Defendant's contention that Plaintiff lacks sufficient proof of causation when evaluating whether the cause of Ms. Kahn's hair loss was known or knowable to Ms. Kahn prior to December 9, 2015. [22] The ultimate issue is the reasonableness of the Plaintiff's action or inaction, in light of her education, intelligence, the severity of the symptoms, and the nature of the Defendant's conduct. | possible claim before filing a lawsuit. [27]  Instead, the question for you to answer is simply whether Plaintiff or a reasonably diligent person in Plaintiff's position should have considered Taxotere as a potential cause of Plaintiff's injury before December 9, 2015. [28] |
| | **Defendants' Objections to Plaintiff's Proposed Instruction** | **Plaintiff's Objection to Defendants' Proposed Instruction** |
| | Plaintiff's instruction omits the following statements (below **in bold**) from Defendants' corresponding instruction, each of which are correct statements of the law and warranted by the claims and anticipated evidence at trial, *see Corey v. Jones*, 650 F.2d 803, 806 (5th Cir. 1981) ("Under federal rules of procedure a litigant is entitled to have the jury instructed as to his claims and theories of law if they are legally correct, supported by the evidence, and are brought to the court's attention in a timely request."):<br><br>1. **Louisiana law required Plaintiff to file her lawsuit within one year of experiencing her injury unless she proves that neither she nor a reasonable person in her position could have discovered Taxotere as a potential cause of her injury more than one year before she filed her lawsuit.  She filed her lawsuit on December 9, 2016, so Plaintiff must establish that** | Plaintiff believes her charge more accurately reflects the legal standard and minimally modifies the given Instruction in *Earnest*.  However, if the Court were inclined to substantially alter this instruction, Plaintiff would not object to Sanofi's proposal if the additional language added in redline in Plaintiff's Proposed Instruction were added. |

**she could not have discovered the potential cause of her injury until December 9, 2015.**

2. **Louisiana law asks you, the jury, to consider the reasonableness of Plaintiff's action or inaction. Specifically, when there is information sufficient to put a reasonable person on notice of her injury, a plaintiff has a responsibility to investigate the facts in order to pursue her claims within one year. Plaintiff does not need to have all the facts or evidence to prove her claim to trigger her responsibility to inquire into a possible claim.   For example, there is no requirement that an attorney or physician inform Plaintiff of a possible claim before filing a lawsuit.   Instead, the question for you to answer is simply whether Plaintiff or a reasonably diligent person in Plaintiff's position should have considered Taxotere as a potential cause of Plaintiff's injury before December 9, 2015.**

These are correct statements of the law.  *See In re Taxotere (Docetaxel) Prod. Liab. Litig. (Thibodeaux)*, 995 F.3d 384, 392–93 (5th Cir. 2021) ("In summary, we interpret Louisiana law to require that once hair loss persisted after six months, contra non valentem tolled the prescription period until the point when a prospective plaintiff through the exercise of reasonable diligence should have "considered [Taxotere] as a

potential root cause of" her injury."); *see also In re Taxotere (Docetaxel) Prod. Liab. Litig. (Durden)*, 860 F. App'x 886, 893 (5th Cir. 2021) ("Durden failed to consider Taxotere as a potential cause of her persistent hair loss because she engaged in no reasonable inquiry to determine Taxotere's effects on the persistent loss of her hair.").  Plaintiff's instruction, however, does not cite to or use the language incorporated by binding Fifth Circuit precedent, including by omitting the words "diligence" or "diligent," which are hallmarks of the analysis under Louisiana law.

Further, Plaintiff's proposed addition of three sentences to the instruction given in *Earnest* includes argumentative language that the Fifth Circuit necessarily rejected in affirming this Court's prescription-based dismissals.  Plaintiff cites *Sharkey v. Sterling Drug Inc.*, 600 So. 2d 701 (La. Ct. App. 1992), which is distinguishable.  In *Sharkey*, plaintiffs sued on behalf of their granddaughter who developed Reye's Syndrome and suffered permanent brain damage after ingesting aspirin as instructed by her doctor.  *Id.* at 705.  At the time, no one knew what caused Reye's Syndrome.  *Id.* at 714.  The court found that plaintiffs' delay in filing suit was reasonable because of that lack of knowledge.  *Id.* at 715.  In *Thibodeaux* and *Durden*, the Fifth Circuit found that the plaintiffs could not claim such ignorance was reasonable or establish that a failure to investigate was reasonable.   Hair loss was an expected,

common side effect of chemotherapy. *In re Taxotere (Docetaxel) Prod. Liab. Litig. (Thibodeaux)*, 995 F.3d 384, 393 (5th Cir. 2021) ("Each Appellant testified at her deposition that she attributed her initial hair loss to her chemotherapy treatment. There was no explicit testimony from Appellants about what cause they attributed to their persistent hair loss. Still, we consider the standard of 'knew or should have known,' *Oil Ins. Ltd.*, 977 So. 2d at 22, to mean they needed to investigate Taxotere as a potential cause."); *see id.* at 393-95 (surveying "key information from Appellants' master complaint" that provided the basis for notice and concluding that "diligence required that Taxotere be explored as a possible explanation" and that "reasonable inquiry would have uncovered at least some information that linked Taxotere to persistent alopecia"); *In re Taxotere (Docetaxel) Prod. Liab. Litig. (Durden)*, 860 F. App'x 886, 893 (5th Cir. 2021) ("[A]ny argument [by Durden] that the facts supporting her cause of action were not reasonably knowable is foreclosed by *Thibodeaux*, where we held that the very same causes of action were reasonably knowable by October 2015.").

Defendants reserve the right to raise further objections to this instruction at the charge conference.

1    *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 994 F.3d 704, 709 (5th Cir. 2021) ("[A]s we have established, a causation analysis in a failure-to-warn claim asserted against a drug's manufacturer (the only claim at issue here) is focused on the prescribing physician's decision to prescribe the drug."); Jury Instructions at 12–13, *In Re Xarelto Prods. Liab. Litig. (Orr)*, No. 15-3708 (E.D. La. June 12, 2017) (Doc. 6815) (modified).

2    La. Rev. Stat. Ann. § 9:2800.57(B) ("A manufacturer is not required to provide an adequate warning about his product when . . . [t]he user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.").

3    Trial Tr. 2233:5–18, *Earnest (In re Taxotere (Docetaxel) Prods. Liab. Litig.)*, Case No. 16-cv-17144 (E.D. La. Sept. 26, 2019) (modified); *Hornbeck v. Danek Med., Inc.*, 1999 WL 1117107, at *3 (W.D. La. Aug. 5, 1999) (device's "compliance with FDA requirements at the time of plaintiff's surgery" relevant on defendant's motion for summary judgment on the plaintiff's failure-to-warn claim), *aff'd*, 226 F.3d 641 (5th Cir. 2000); *see also Mazur v. Merck & Co.*, 742 F. Supp. 239, 247 (E.D. Pa. 1990) ("[C]ompliance with an FDA regulation may establish that the manufacturer met the appropriate minimum standards of due care, but compliance does not necessarily absolve the manufacturer of all liability."); 21 U.S.C. § 355; 21 C.F.R. § 314.105; 21 C.F.R. § 314.125.

4    *Brown v. Glaxo, Inc.*, 1999-1531 (La. App. 1 Cir. 11/15/00), 790 So. 2d 35, 41, writ denied, 2000-3457 (La. 2/9/01), 785 So. 2d 827, and writ denied, 2001-0035 (La. 2/9/01), 785 So. 2d 832.

5    *Brown v. Glaxo, Inc.*, 1999-1531 (La. App. 1 Cir. 11/15/00), 790 So. 2d 35, 41, writ denied, 2000-3457 (La. 2/9/01), 785 So. 2d 827, and writ denied, 2001-0035 (La. 2/9/01), 785 So. 2d 832.

6    *Bonin v. Ferrellgas, Inc.*, 877 So.2d 89, 95 (La. 2004).

7    *Bonin v. Ferrellgas, Inc.*, 877 So.2d 89, 93 n.4 (La. 2004) (approving materially indistinguishable language).

8    "But for" instruction paragraph is an incorrect statement of law for this case because the Court is giving a "substantial factor" instruction. *See Roberts v. Benoit*, 605 So. 2d 1032, 1042 (La. 1991), on reh'g (May 28, 1992) (substantial factor is an alternative method to "but for" inquiry for determining cause in fact); *Perkins v. Entergy Corp.*, 782 So.2d 606, 611 (La. 2001) ("Cause-in-fact usually is a "but for" inquiry, which tests whether the accident would or would not have happened but for the defendant's substandard conduct. Where there are concurrent causes of an accident, the proper inquiry is whether the conduct in question was a substantial factor in bringing about the accident." (citation omitted)).

     The "but for" instruction also is confusing. It is not substantial factor (i.e., cause in fact) but rather combining general causation, specific causation, and warnings causation lumped together. Cause-in-fact itself does not require general, specific, and warnings causation.

9    Rec. Doc. 11780 at 7 (Order Denying Pl.'s Mot. to Exclude Test. of John Glaspy, M.D.) (verbatim) ("Plaintiff Kahn bears the burden of proving that Taxotere caused her injury, and she must prove both general and specific causation."); *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, No. 17-5923, 2021 WL 127292, at *2 (E.D. La. Jan. 13, 2021) (granting summary judgment where bellwether Plaintiff Sheila Crayton failed to adduce any evidence to establish medical causation); *Seaman v. Seacor Marine LLC*, 564 F. Supp. 2d 598, 600 (E.D. La. 2008) (plaintiff must prove "general causation as well as specific causation. General causation is whether a substance is capable of causing a particular injury or condition in the general population. Specific causation is whether a substance caused a particular individual's injury." (citing *Knight v. Kirby*, 482 F.3d 347, 351 (5th Cir. 2007))), *aff'd*, 326 F. App'x 721 (5th Cir. 2009); *Patton v. Bos. Sci. Corp.*, 2018 WL 4760846, at *3 (W.D. La. Oct. 2, 2018) ("Here, Plaintiffs have brought claims as to the first three theories under the LPLA; however, regardless of whether Plaintiffs' evidence is sufficient to raise a genuine dispute as to at least one of the <u>theories</u>, the Court finds that because Plaintiffs lack the required expert evidence to establish medical causation (an <u>element</u> of their claims) of any damages allegedly suffered from Abbott's product, Plaintiffs have not shown the existence of an element essential to all of its claims and thus their claims must fail as a matter of law."); *Demouchet v. Gen. Nutrition Corp.*, 2014 WL 1652518, at *4 (W.D. La. Apr. 24, 2014) ("Proof of causation [under the LPLA] has two components, general and specific. General causation deals with whether the substance at issue can cause diseases or disorders in people in general. Specific causation focuses upon whether the substance was in fact the cause of the ailments or symptoms in the particular patient. An inability to establish specific causation is fatal to the plaintiff's claim.").

10   *Burst v. Shell Oil Co.*, 2015 WL 3755953, at *5–6 (E.D. La. June 16, 2015), *aff'd*, 650 F. App'x 170 (5th Cir. 2016) (discussing requirement of statistical significance and that "[o]nce an association is found, 'researchers consider whether the association reflects a true cause-effect relationship'").

11   *Supra* n.10.

---

12   *Nagle v. Gusman*, 61 F. Supp. 3d 609, 622 (E.D. La. 2014) ("Louisiana case law is clear that cause-in-fact is usually a 'but for' inquiry, 'which tests whether the accident would or would not have happened but for the defendant's substandard conduct.' The 'substantial factor' test is applied as an alternative to the but-for test '[w]hen there are concurrent causes of an accident which nevertheless would have occurred in the absence of one of the causes.' In such a situation, 'some other test is needed.' The substantial factor test is 'similar to the but-for test,' except that when more than one party's negligence would have caused the injury in the absence of another party's negligence, 'all are held to be causative.' Plaintiffs contend that there are 'multiple causes' for Mr. Goetzee's death, but they do not specify what they mean by this, nor do they explain how this case fits the mold of a concurrent causes case. Thus, the Court concludes that the but-for test is the appropriate test.") (citations omitted); *see also Hutzler v. Cole*, 633 So. 2d 1319, 1337 (La. App. 1994) (concurring opinion) ("We do not need to consider an alternative method for determining cause in fact (the substantial factor test used herein) when the facts do pass the but-for analysis."); *Ford v. Pennzoil*, 974 F. Supp. 559, 565 (E.D. La. 1997), aff'd, 200 F.3d 816 (5th Cir. 1999) ("Louisiana courts generally define `proximate cause' as any cause which in natural and continuous sequence, unbroken by any efficient, intervening cause, produces the result complained of and without which the result would not have occurred. . . . Proximate cause requires more than a cause-in-fact or 'but for' connection. Under a proximate cause analysis, there must be a substantial connection between the actions of a defendant and the harm which occurs.") (citations omitted).

13   If a plaintiffs case involves "complex issues of medical causation that are beyond the realm of knowledge and experience of the ordinary juror," the plaintiff must present expert testimony to prove causation, *see Demouchet*, 2014 WL 1652518, at *4, and those experts must offer their opinions to a reasonable medical probability, *see Hutchinson v. Shah*, 648 So. 2d 451, 452–53 (La. Ct. App. 1994) ("Ordinarily, the test of medical causation is reasonable medical probability."); *Arabie v. CITGO Petrol. Corp.*, 89 So. 3d 307, 321 (La. 2012); *Harris v. Soulie*, 2014 WL 3557481, at *5 (La. Ct. App. May 2, 2014); *In re Mirena IUD Prods. Liab. Litig.*, 202 F. Supp. 3d 304, 319 (S.D.N.Y. 2016), aff'd, 713 F. App'x 11 (2d Cir. 2017) (noting that "no court has held that admissions can substitute for required expert testimony" on the issue of general causation).

14   Trial Tr. 2237:17–2239:12, *Earnest (In re Taxotere (Docetaxel) Prods. Liab. Litig.)*, Case No. 16-cv-17144 (E.D. La. Sept. 26, 2019) (modified); *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 994 F.3d 704, 708 (5th Cir. 2021) ("But, as we have established, a causation analysis in a failure-to-warn claim asserted against a drug's manufacturer . . . is focused on the prescribing physician's decision to prescribe the drug."); *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098–99 (5th Cir. 1991) (applying Louisiana law) ("To recover for a failure to warn under this doctrine, a plaintiff must show: (1) that the defendant failed to warn the physician of a risk associated with the use of the product, not otherwise known to the physician, and (2) that the failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury. Because the defective aspect of the product must cause the injury, the plaintiff must show that a proper warning would have changed the decision of the treating physician, *i.e.* that but for the inadequate warning, the treating physician would not have used or prescribed the product"); *Couturier v. Bard Peripheral Vascular, Inc.*, 2021 WL 2885903, at *7 (E.D. La. July 9, 2021) (same); *Pellegrin v. C.R. Bard*, 2018 WL 3046570, at *4 (E.D. La. June 20, 2018) (same); *Huffman v. Squibb*, 2016 WL 6024532, at *2 (E.D. La. Oct. 14, 2016) (same); *Rhodes v. Bayer Healthcare Pharm. Inc.*, 2013 WL 1282450, at *4 (W.D. La. Mar. 28, 2013) (same); *see also Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 814 (5th Cir. 1992) ("[W]e reject Thomas's contention that causation is presumed, given an inadequate warning, in the context of an unavoidable risk. We are willing to assume that the failure to give an adequate warning of a known risk entitles the plaintiff to a rebuttable presumption that the learned intermediary would have read and heeded a proper warning. But 'heed' in this context means only that the learned intermediary would have incorporated the 'additional' risk into his decisional calculus. The burden remains on the plaintiff to demonstrate that the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff.").

15   *Wright v. Revco Indus. Inc.*, 228 F. Supp. 3d 749, 753 (W.D. La. 2017) ("The plaintiff has the burden of proving causation (as well as an unreasonably dangerous condition), and a plaintiff must prove not only causation in fact, but also that the product defect was the most probable cause of injury. Thus, a manufacturer is not liable for damages brought about by an occurrence of a separate, independent, or superseding cause." (citations omitted)); *Ford v. Pennzoil*, 974 F. Supp. 559, 565 (E.D. La. 1997), aff'd, 200 F.3d 816 (5th Cir. 1999) ("Louisiana courts generally define 'proximate cause' as any cause which in natural and continuous sequence, unbroken by any efficient, intervening cause, produces the result complained of and without which the result would not have occurred. . . . Proximate cause requires more than a cause-in-fact or 'but for' connection. Under a proximate cause analysis, there must be a substantial connection between the actions of a defendant and the harm which occurs." (citations omitted)).

16   *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 494 (5th Cir. 2002); *Wainwright v. Fontenot*, 774 So.2d 70, 74 (La. 2000); *Lasha v. Olin Corp.*, 625 So.2d 1002, 1006 (La. 1993).

17   *See* H. Alston Johnson, III, 18 Louisiana Civil Law Treatise, Civil Jury Instructions § 18:1 (West 3d ed. 2016) ("In reaching a verdict on the question of damages, I caution you not to include anything for the payment of court costs and attorney fees; the law does not consider these as damages suffered by the plaintiff. Also, any amount which you might award to the plaintiff is not income within the meaning of the income tax laws. If you decide to make an award, follow the instructions I have given you, and do not add or subtract from that award on account of federal or state income taxes. In other words, if you find that the plaintiff is entitled to damages, the amount which you award should be the sum that you think that will fully and fairly compensate the plaintiff for his injuries, without regard to what he may pay his attorney or the amount that you might think would be paid in income taxes.").

18   *See* Restatement (Second) of Torts, § 920; *Troutt v. Novartis Pharm. Corp.*, No. 8:06-CV-1708-T-24, 2013 WL 5304059 (M.D. Fla. Sept. 20, 2013); *Guenter v. Novartis Pharm. Corp.*, No. 6:08—cv-456-0r1-31, 2013 WL 4456505 (M.D. Fla. Aug. 16, 2013); *Gracia v. Meiselman*, 220 N.J.Super. 317 (1987), *distinguished by Lodato ex rel. Lodato v. Kappy*, N.J. Super. A.D. (2002); *Mohr v. Williams*, 95 Minn. 261, 270-71 (1905), *overruled in part on other grounds by Genzel v. Halvorson*, 248 Minn. 527 (1957); *Georges v. Novartis Pharm. Corp.*, No. CV 06-05207 SJO VBKX, 2013 WL 5217198, at *6 (C.D. Cal. Apr. 4, 2013).

19 *See* H. Alston Johnson, III, *Mental Anguish*, 18 La. Civ. L. Treatise, Civil Jury Instructions § 18:12 (3d ed.) ("[Though the law recognizes a possible recovery for mental distress, it requires that you carefully scrutinize the evidence presented on this point to assure yourselves that such injury has been proven by plaintiff.]").

20 *Chevron v. Aker Mar.*, 604 F.3d 888, 894 (5th Cir. 2010) (quoting *Jordan*, 509 So. 2d 420, 424 (La. 1987)). *See also Terrebonne Par. Sch. Bd. v. Columbia Gulf Transmission*, 290 F.3d 303, 320, 322-23, n. 60, & n. 71 (5th Cir. 2002) (reversing because District Court applied wrong standard); *Ducre v. Mine Safety Appliances*, 963 F.2d 757, 761 (5th Cir. 1992); *Knaps v. B & B Chem. Co.*, 828 F.2d 1138, 1139-40 (5th Cir. 1987) (reversing for District Court to apply "*Jordan*'s new standard").

21 *Crochet v. Bristol-Myers Squibb Co.*, No. 19-30026, 2020 WL 1242521, *3 (5th Cir. Mar. 13, 2020) (per curiam)

22 *Sharkey v. Sterling Drug*, 600 So.2d 701, 714 (La. App. 1 Cir. 1992).

23 *See, e.g.*, *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 995 F.3d at 392 ("As we have discussed, Appellants' injuries were sustained six months after chemotherapy ended. Each injury should have caused an inquiry within a reasonable time thereafter."); *see also In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 2021 WL 2373490, at *4 ("After so defining the 'injury or damage,' we held that, '[a]s a matter of law, the injury of "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy" is sustained when, six months after the completion of chemotherapy, a person has an absence of or incomplete hair regrowth.'").

24 *See In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 995 F.3d at 391 ("This requirement of notice was refined to focus on the reasonableness of [the plaintiff's] action or inaction. (quoting *Jordan v Emp. Transfer Corp.*, 509 So. 2d 420, 423 (La. 1987) (internal quotations omitted))).

25 *Id.* ("A plaintiff has 'an obligation to further investigate the facts in order to pursue his claim before the one-year prescriptive period []lapse[s].'" (quoting *Rozas v. Dep't of Health & Hum. Res.*, 522 So. 2d 1195, 1197 (La. Ct. App. 1988))).

26 *Id.* ("That means prescription runs 'from the time there is notice enough to call for *inquiry* about a claim, not from the time when the inquiry reveals facts or evidence sufficient to *prove* the claim.'" (quoting *Terrel v. Perkins*, 704 So. 2d 35, 39 (La. Ct. App. 1997))).

27 *Id.* ("[Prescription] 'does not necessarily wait for the pronouncement of a victim's physician or of an expert.'" (quoting *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 300 (5th Cir. 1999))).

28 *Id.* at 392–93 ("[In summary, we interpret Louisiana law to require that once hair loss persisted after six months, *contra non valentem* tolled the prescription period until the point when a prospective plaintiff through the exercise of reasonable diligence should have 'considered [Taxotere] as a potential root cause of' her injury.").