## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)          MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                         SECTION "H" (5)

THIS DOCUMENT RELATES TO:


Elizabeth Kahn, Case No. 2:16-cv-17039.

### MEMORANDUM IN SUPPORT OF DEFENDANTS'
### MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants, Sanofi US Services Inc. and Sanofi-Aventis U.S. LLC, are entitled to judgment as a matter of law.  During her case in chief, Plaintiff was required to prove each of the following elements by a preponderance of the evidence, but Plaintiff failed to show:

1. ***Failure to Adequately Warn***: Defendants did not exercise reasonable care to provide an adequate warning to Plaintiff's prescribing physicians;

2. ***Warnings Causation***: But for that failure to warn, Plaintiff's physicians would not have made the prescribing decisions that thereby caused Plaintiff's alleged injury;

3. ***General Medical Causation***: That Taxotere can cause "permanent chemotherapy-induced alopecia";

4. ***Specific Medical Causation***: That Taxotere caused Plaintiff's "permanent chemotherapy-induced alopecia"; and

5. ***Contra Non Valentem***: That Plaintiff did not have actual or constructive knowledge of her "permanent chemotherapy-induced alopecia" prior to December 9, 2015, after engaging in reasonable diligence that explored Taxotere as a possible explanation of her injury.

Because Plaintiff failed to meet her burden on each of these elements, Defendants are entitled to judgment as a matter of law.  Defendants also are entitled to judgment as a matter of law on the issue of preemption.

## LEGAL STANDARD

"Judgment as a matter of law is proper if 'a party has been fully heard on an issue during a jury trial and . . . a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 614 (5th Cir. 2018) (citing Fed. R. Civ. P. 50(a)). "A mere scintilla of evidence is insufficient to present a question for the jury." *Rutherford v. Harris Cnty.*, 197 F.3d 173, 179 (5th Cir. 1999). "There must be a conflict in substantial evidence to create a jury question." *Id.* "The decision to grant a directed verdict . . . is not a matter of discretion, but a conclusion of law based upon a finding that there is insufficient evidence to create a fact question for the jury." *Burch v. Coca-Cola Co.*, 119 F.3d 305, 313 (5th Cir. 1997) (citation and internal quotation marks omitted).

## ARGUMENT

### I.   PLAINTIFF FAILED TO PROVE LACK OF REASONABLE CARE TO PROVIDE AN ADEQUATE WARNING TO HER PRESCRIBING PHYSICIANS.

The evidence was insufficient for a reasonable jury to find for Plaintiff on her failure-to-warn claim, the only theory of liability at issue in this trial. Plaintiff has failed to adduce sufficient evidence that Defendants did not exercise reasonable care to adequately warn her prescribing physicians that Taxotere was associated with a risk of permanent alopecia. *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Phillips)*, 994 F.3d 704, 708 (5th Cir. 2021) (citing *Kampmann v. Mason*, 05-423 (La. App. 5 Cir. 1/17/06), 921 So. 2d 1093, 1096); *see also* La. Rev. Stat. Ann. § 9:2800.57.

As an initial matter, to prevail on her claim, Plaintiff "need[ed] to show expert evidence creating an issue of fact on the adequacy of Taxotere's warning." *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 462 F. Supp. 3d 650, 653 & n.14 (E.D. La. 2020) (collecting cases). That expert, for Plaintiff, was Dr. Laura Plunkett. The bases for Dr. Plunkett's opinion disclosed in her expert

report, however, were ultimately abandoned at trial and substituted for new bases. Dr. Plunkett's reliance in her trial testimony on the *Sedlacek* article and a handful of anecdotal cases of "permanent chemotherapy-induced alopecia" in literature did not reliably show that Sanofi did not act with reasonable care to adequately warn Plaintiff's prescribing physicians. *See Genmoora Corp. v. Moore Bus. Forms, Inc.*, 939 F.2d 1149, 1157 (5th Cir. 1991), *on reh'g* (Sept. 30, 1991), *as modified* (Oct. 17, 1991) ("An expert's testimony will not support a verdict if it lacks an adequate foundation in the facts of the case."). Dr. Plunkett's testimony regardless should have been stricken in its entirety for the reasons explained in Defendants' letter brief. *See* Rec. Doc. 13407. Without it, Plaintiff has no expert evidence on the adequacy of the label, and Defendants are entitled to judgment as a matter of law.

Plaintiff's remaining evidence was insufficient to meet her burden. Plaintiff's two treating physicians—Dr. Kardinal and Dr. Larned—both prescribed her Taxotere.[1] Yet, Plaintiff failed to present the jury with *any* testimony from Dr. Larned in support of her failure-to-warn claim. Plaintiff's failure to call her treating physician to the stand requires judgment for Defendants, where there was no evidence that the single dose of Taxotere prescribed by Dr. Kardinal caused Ms. Kahn's injury. *See, e.g.*, *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.*, 888 F.3d 753, 775–77 (5th Cir. 2018) (granting judgment as a matter of law on failure-to-warn claims where plaintiffs failed to call treating physicians to the stand); *Grenier v. Med. Eng'g Corp.*, 243 F.3d 200, 205 n.4 (5th Cir. 2001) (affirming trial court's dismissal of plaintiff's failure-to-warn claim on the alternative ground that plaintiff failed to present any testimony from her treating physician); *Isaac v. C. R. Bard, Inc.*, 2021 WL 1177882, at *5–6 (W.D. Tex. Mar. 29,

---

[1]   *See* Rec. Doc. 11803 at 2–3; *see also* Trial Tr. 1325:21−26:5 (Plaintiff's husband testifying that Dr. Larned took over Plaintiff's care when Dr. Kardinal retired).

3

2021) (granting summary judgment for defendant on plaintiff's failure-to-warn claim because plaintiff presented no testimony from her prescribing physician).

Plaintiff's claim also fails as a matter of law because Taxotere's label adequately warned Dr. Kardinal that Plaintiff's hair would "generally grow back." Trial Tr. 1292:16–19. Following chemotherapy, Plaintiff's hair did generally grow back, albeit not completely. No reasonable juror could find otherwise based on the photographic and medical record evidence.[2] Because Sanofi's label warned of the exact injury Plaintiff claims, the label was adequate as a matter of law. *See In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 462 F. Supp. 3d 650, 652 (E.D. La. 2020) ("Because the [2015 Taxotere] label clearly and consistently warned of the precise injury Plaintiffs suffered, the Court finds that the label was adequate.").

## II.    PLAINTIFF FAILED TO PROVE WARNINGS CAUSATION.

Plaintiff was also required to prove that the alleged "failure to warn was the cause in fact and the proximate, or legal, cause of the plaintiff's injury." *Phillips*, 994 F.3d at 708; La. Rev. Stat. Ann. § 9:2800.57. The Fifth Circuit held in *Phillips* that the dispositive question is "whether a warning that Taxotere caused potentially permanent—as opposed to temporary—alopecia would have changed [the physician's] prescribing decision." *Phillips*, 994 F.3d at 710 (citing *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1099 (5th Cir. 1991)). When a prescribing physician testifies that the alleged non-disclosed risk does not materially alter the physician's risk-benefit decision, a plaintiff cannot prove her case by claiming she would have chosen a different medicine had she known of the risk. *Id.*; *see also* Order, Rec. Doc. 13062 at 4 (citing *Stahl v. Novartis Pharm. Corp.*,

---

[2]  Plaintiff's own expert Dr. Tosti testified Plaintiff's hair looked "better" than before chemotherapy. Trial Tr. 832:16–22 ("Q. Okay. So, Dr. Tosti, we're looking at the same photo from October of 2009, one year after chemotherapy. You've just told us Mrs. Kahn's hair looks normal in this photo. You've told us it actually, from what you can see, looks like she has better hair or more hair than even before chemotherapy. So that's the picture on the left, okay? A. Yes.").

283 F.3d 254, 265–66 (5th Cir. 2002)).  Plaintiff did not satisfy those requirements here.[3]

### A.    Dr. Kardinal's testimony does not prove warnings causation.

No reasonable jury could find in Plaintiff's favor on warnings causation since the unrefuted evidence at trial was that Dr. Kardinal had no recollection of reading the Taxotere prescribing information after he first began prescribing it to patients in the late 1990s.  Trial Tr. 1270:5–1271:15.  Although Dr. Kardinal testified he would reread a drug label if "something unexpected happened," Plaintiff elicited no testimony that Dr. Kardinal ever reread the Taxotere label or that any unexpected event actually occurred.  *Id.*  Because Dr. Kardinal did not read the label after 1999, a change in warning would have been futile.  *See, e.g.*, *Pustejovsky v. Pliva, Inc.*, 623 F.3d 271, 277 (5th Cir. 2010) ("Dr. Collini did not recall ever reading the package insert for the drug . . . . Her lack of memory, of course, does not preclude the possibility that she had read these materials, but neither can sustain [plaintiff]'s burden."); *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Stewart)*, No. 17-10817, 2021 WL 1534481 (E.D. La. Apr. 19, 2021) (Milazzo, J) (granting summary judgment where prescribing physician had not read the package insert); *accord Bloxom v. Bloxom*, 512 So. 2d 839, 841 (La. 1987), *superseded on other grounds*, 56 So. 3d 229 (La. 2011);  *Felice v. Valleylab, Inc.*, 520 So. 2d 920, 927 (La. App. 3 Cir. 1987), *writ denied*, 522 So. 2d 562 (La. 1988), and *writ denied*, 522 So. 2d 563 (La. 1988).

Even setting that issue aside, Plaintiff failed to meet her burden because Dr. Kardinal testified unequivocally that he still would make the same treatment decision had he known of the allegedly non-disclosed risk of permanent alopecia:

> Q. . . .  If the Taxotere label . . . had said, "In most cases, normal
> hair growth should return.  In some cases, frequency not known,

---

[3]    Defendants respectfully maintain that the Court's learned intermediary framework is incorrect for the reasons asserted at summary judgment and in Defendants' motion for reconsideration, *see* Rec. Docs. 9300, 9888, 12536, 13062, and they accordingly reassert their objections here.

permanent hair loss has been observed," would that change your
recommendation that Miss Kahn participate in NSABP B-40?

A. No.

*Id.* 1292:20–24.  Dr. Kardinal testified that he recommended Plaintiff participate in a clinical trial

(NSABP B-40) because it offered both state-of-the-art and standard-of-care chemotherapy

regimens, including Taxotere, to treat Plaintiff's breast cancer.  Trial Tr. 1286:2–13, 1288:13–24,

1289:7–18.  Dr. Kardinal also testified that, had Plaintiff opted not to participate in the clinical

trial, he would have prescribed a chemotherapy regimen of Adriamycin and Cytoxan followed by

Taxotere.[4]  *Id.* 1292:2–15, 1293:8–14.  Dr. Kardinal called Taxotere "the drug of choice in breast

cancer" and "the most active agent yet available for the treatment of advanced breast cancer" at

the time he treated Plaintiff.  *Id.* 1283:1–5.  Dr. Kardinal preferred Taxotere to Taxol because of

Taxol's risk of additional serious side effects, including neuropathy and severe infusion-site

reactions.  *Id.* 1281:12–1282:25; 1283:24–1284:4, 1299:6–12.  Given Dr. Kardinal's testimony

that he still would have prescribed Taxotere, there is no legally sufficient basis for a reasonable

jury to find warnings causation.  *See Phillips*, 994 F.3d at 710.

It does not matter if Dr. Kardinal would have discussed permanent hair loss with Plaintiff

had the label used those words, because Dr. Kardinal never testified that such a warning would

have changed his decision to prescribe Taxotere.  Plaintiff likewise did not establish that Dr.

Kardinal would have prescribed Taxol instead of Taxotere.  Trial Tr. 1301:11–1303:25, 1306:13–

1307:7; *see also id.* 1281:12–1282:25; 1283:24–1284:4, 1299:6–12.  Dr. Kardinal testified that

Taxol was equivalent to Taxotere *in terms of efficacy* but noted he preferred Taxotere to Taxol *in*

---

[4]   Dr. Kardinal would have prescribed Adriamycin even though some of Dr. Kardinal's own patients had
experienced persistent hair thinning lasting longer than six months after completing Adriamycin-based
chemotherapy treatment.  Trial Tr. 1268:25–1270:2.  Despite this experience, Dr. Kardinal did not inform Plaintiff
of a risk of persistent hair thinning associated with Adriamycin.  Trial Tr. 1285:13–19, 1291:2–11.

*terms of side effects* given Taxol's risk of neuropathy and its toxicity. *Id.* 1282:24–25; 1284:3–4.

Dr. Kardinal was never asked and never testified that, given the risks and benefits associated with

Taxol compared to Taxotere, he would have prescribed Taxol for Plaintiff instead of Taxotere.[5]

Absent affirmative testimony from Dr. Kardinal that, considering all the risks and benefits about

the use of Taxol (or any other potential treatment) and its side effects, he would have prescribed

it, Plaintiff cannot satisfy her burden of demonstrating that her treating physician would have

prescribed an alternative treatment that would have avoided her injury. *See Phillips*, 994 F.3d at

709.

Finally, Dr. Kardinal was not the only prescribing physician, and he was only responsible

for prescribing one of the four doses of Taxotere administered to Plaintiff.[6]  The other three doses

were prescribed by Dr. Larned, whose testimony solidifies that Plaintiff cannot prove warnings

causation.[7]  Dr. Larned will testify unequivocally that (1) she already knew of the risk of permanent

alopecia; and (2) a warning on the Taxotere label about the risk of permanent alopecia would not

have changed her prescribing decision.  Because the Taxotere prescribed by both Dr. Kardinal and

Dr. Larned is relevant to Plaintiff's case, Dr. Larned's testimony forecloses Plaintiff's case on

warnings causation.

---

[5]   No witness testified that, had Plaintiff taken a different medication such as Taxol, she would not have the hair loss she experiences today.  In fact, as discussed below in Section III, Plaintiff's own experts testified that alternative chemotherapy regimens carried a risk of permanent hair loss.

[6]   Plaintiff was required to prove two elements of causation: that the alleged failure to warn resulted in her harm and also that the medication caused her injury. *Willett*, 929 F.2d at 1098–99.  Plaintiff's only specific causation expert is Dr. Tosti, and she did not testify that the Taxotere prescribed by Dr. Kardinal alone caused Plaintiff's injury. *See generally* Trial Tr. 599–895.  Plaintiff's medical causation case is necessarily based on the Taxotere doses prescribed by both physicians.  And if the prescription decisions of both doctors are necessary to prove medical causation—which they are—then they also must be relevant to Plaintiff's failure-to-warn allegations.  Conversely, if Dr. Larned's prescribing decision is not relevant to warnings causation and the learned intermediary doctrine, then the doses of Taxotere she prescribed also should not be relevant to specific causation.  Plaintiff cannot simultaneously ask the Court to limit the prescribing decision to Dr. Kardinal while asking the Court and jury to consider all prescriptions for purposes of medical causation.

[7]   While Plaintiff chose not to call Dr. Larned during her case, the Court already found Dr. Larned's testimony admissible in ruling on the parties' deposition designations.

### B.      Plaintiff's Post-Treatment Testimony Cannot Carry Her Burden.

In both *Phillips* and *Gahan*, the Fifth Circuit declined to apply a chemotherapy-specific exception to the warnings causation framework, rejecting the plaintiffs' argument that the inquiry should focus on "how patient choice . . . would have steered the conversation" as lacking support under Louisiana state law. *Phillips*, 994 F.3d at 709 n.4; *In re Taxotere (Docetaxel) Prod. Liab. Litig. (Gahan)*, 859 F. App'x 692, 694 (5th Cir. 2021) (applying Colorado law). Instead, the relevance, if any, of patient choice is "cabined to helping [the Court] decide whether . . . [the doctor's] prescribing decision would have been different had *he* known that Taxotere's associated risk of alopecia was potentially permanent rather than temporary." *Phillips*, 994 F.3d at 709. The Fifth Circuit considered only whether there was any evidence that the plaintiff "might have steered the conversation in such a way that [her prescribing physician] would have changed his prescribing decision had he known" of that risk. *Id.* at 710.

Here, Plaintiff has no such evidence. Dr. Kardinal explained that he never made guarantees about results or the side effects patients would experience because it was important to "leave the door open" for unanticipated results. Trial Tr. 1284:5–12, 1290:15–20. Regardless, before joining the clinical trial, Plaintiff signed an informed consent form, which warned that "hair loss" was a potential side effect and that "[i]n some cases, side effects may be very serious, long-lasting, or may never go away." Trial Ex. P-2811. Dr. Kardinal explained this risk to Plaintiff. Trial Tr. 1294:19–1295:8. Plaintiff testified at trial that, based on the informed consent, she understood that ***any side effect*** (which included hair loss) "could be long-lasting or might not go away," and she accepted those risks. *Id.* 1666:20–1667:6; 1638:18–19 ("I accepted all the risks in th[e] whole informed consent . . . ."); 1668:17–18. Plaintiff further testified that she trusted Dr. Kardinal's recommendation and consented to the randomized clinical trial involving Taxotere because she

believed it gave her the best chance of beating cancer. *Id.* 1579:5−8 ("I trusted my doctors . . . ."); 1608:20 ("My number one goal was to get rid of the cancer").

Although Plaintiff testified that she would have asked about other options had Dr. Kardinal told her the risk of hair loss associated with Taxotere was potentially permanent, *id.* 1650:23−25, Plaintiff's speculative, retrospective testimony cannot satisfy her burden under the Fifth Circuit's test. *Phillips*, 994 F.3d at 709-10. The Fifth Circuit's test focuses on evidence *at the time of treatment*, *id.* at 709, which here shows Plaintiff wanted to beat cancer, knew side effects might never go away, never asked for alternative treatments, and accepted the risks because she trusted Dr. Kardinal's advice. Dr. Kardinal likewise testified that he was "not an idle bystander" in determining which chemotherapy a patient would receive, even if a patient had concerns. Trial Tr. 1300:22–1301:10, 1306:13–1307:7. For that reason too, Plaintiff failed to prove warnings causation.

## III.   PLAINTIFF DID NOT MEET HER BURDEN TO PROVE GENERAL CAUSATION.

In order to prevail, Plaintiff was required to submit expert proof on general causation—that Taxotere is capable of causing "permanent chemotherapy-induced alopecia." Order, Rec. Doc. 8094 at 5.[8] As this Court recognized, proving general causation requires proof of both elements of a two-prong test: (1) statistically significant association and (2) a true causal relationship. *Id.* Plaintiff proved neither.

---

[8]   Proof of general causation requires expert testimony. *Seaman v. Seacor Marine LLC*, 564 F. Supp.2d 598, 600 (E.D. La. 2008), *aff'd*, 326 F. App'x 721 (5th Cir. 2009) ("[T]he plaintiff must present admissible expert testimony to establish general causation."). To the extent Plaintiff attempted to elicit testimony on general causation from Ruth Avila—a former Sanofi sales rep—that testimony could never meet Plaintiff's burden of proof. *See, e.g.*, Trial Tr. 381:18–22; 387:20–25, 388:2–12.

A.    **Plaintiff Did Not Prove a Statistically Significant Association Through Dr. Madigan.**

Dr. Madigan's testimony did not establish the first prong of the general causation test—a statistically significant relationship.  Although Dr. Madigan claimed he found a statistically significant association, he admitted the underlying data was not reliable.  Dr. Madigan admitted, for example, that his FAERs analysis could have included false hits, but he is not sure because he did not check the underlying narratives.  Trial Tr. 1454:12–1458:13.  Dr. Madigan likewise admitted that, of the six reports of ongoing alopecia he identified with Taxotere in the FAERs database before 2008, he does not know if the alopecia resolved, so does not know if it actually persisted such that it met the definition of PCIA.  *Id.* 1461:16–1462:21.

Dr. Madigan also admitted that neither of the studies he reviewed (TAX316 and TAX301) showed a statistically significant relationship between Taxotere and permanent alopecia.  *Id.* 1468:22–1469:22.  Dr. Madigan was able to find a statistically significant relationship only after combining the two studies into a "meta-analysis."  But Plaintiff never proved that Dr. Madigan's methodology was reliable or his analysis admissible.  Plaintiff, in fact, cannot do so because Dr. Madigan gave no scientifically valid explanation for why the studies were combined.  Dr. Madigan said only that the studies were "similar," *id.* 1414:2–20, but that is an insufficient explanation for why two statistically insignificant studies should not stand on their own.  *See In re Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig.*, 2015 WL 7776911, at *15 (E.D. Pa. Dec. 2, 2015), *aff'd* 858 F.3d 787 (3d Cir. 2017) (holding meta-analysis should not be performed absent a "scientific explanation" for why two studies should be combined); *see also Kelley v. Am. Heyer-Schulte Corp.*, 957 F. Supp. 873, 879 (W.D. Tex. 1997) (rejecting meta-analysis because expert made improper assumptions without verifying underlying data and because there was no reason study should not stand on its own).  Dr. Madigan further admitted that he did not look at any

10

information beyond the study design criteria, including available case reports, to determine whether any of the reports of ongoing alopecia in TAX316 or TAX301 met the definition of PCIA in this litigation. Trial Tr. 1468:1 (answering "I don't know what the definition of PCIA is" when asked if he conducted such an analysis). Dr. Madigan's meta-analysis should not have been put before the jury. Without it, and without Dr. Madigan's unreliable FAERs analysis, Plaintiff did not prove the first prong of general causation.

### B.     Plaintiff Did Not Prove a Causal Relationship Through Dr. Feigal.

Dr. Feigal did not present a legally sufficient evidentiary basis for the jury to find in Plaintiff's favor on the second prong of the general causation test—that a causal relationship exists.[9] Dr. Feigal improperly relied on Dr. Madigan's meta-analysis in support of her opinions. Trial Tr. 1159:19–21. Further, Dr. Feigal's opinion was based in large part on her analysis of the TAX 316 and TAX 301 clinical trial data and reports in the literature. But Dr. Feigal admitted that all participants in those clinical trials who allegedly developed ongoing alopecia took a combination regimen that included both A and C. *Id.* 1235:12–22. The jury likewise heard Dr. Feigal's admission that, in the FAC arm of the studies where Taxotere was not administered, the cause of ongoing alopecia "could be either A or C or both." *Id.* 1236:25–1238:7. Dr. Feigal has no explanation for why the same would not be true in the TAC arm of the clinical trial. Given these concessions, Plaintiff did not prove a legally sufficient evidentiary basis that Taxotere (and not TAC or A or C or both A and C) causes permanent alopecia. *Burst v. Shell Oil Co.*, No. 14-109, 2015 WL 3755953, at *7, 11 (E.D. La. June 16, 2015) (stating that studies that only analyze exposure to a combination of substances can be disregarded in assessing general causation of one of those substances (citing *LeBlanc v. Chevron USA, Inc.*, 396 F. App'x 94, 99 (5th Cir. 2010))).

---

[9]     Dr. Feigal (relying on Dr. Madigan) is Plaintiff's only general causation expert. Yet, Dr. Feigal did not testify that the amount of Taxotere prescribed only by Dr. Kardinal is capable of causing permanent alopecia.

## IV.   PLAINTIFF DID NOT MEET HER BURDEN TO PROVE SPECIFIC CAUSATION.

Plaintiff also must prove specific causation, which requires proof that: (a) Plaintiff suffers from permanent hair loss, and (b) Plaintiff would not have sustained permanent hair loss "but for" taking Taxotere.  *See Seaman v. Seacor Marine LLC*, 564 F. Supp. 2d 598, 600 (E.D. La. 2008); *see also Nagle v. Gusman*, 61 F. Supp. 3d 609, 622 (E.D. La. 2014).  No reasonable jury could find for Plaintiff on specific causation based on the evidence presented at trial.[10]

### A.   Plaintiff Failed to Prove She Suffers from Permanent Hair Loss.

When a plaintiff is exposed to different substances capable of causing the alleged injury, as Plaintiff was here,[11] a specific-causation opinion must be "based on or tied to the specific facts and circumstances" of the particular plaintiff's exposure to the particular substance.  *Comardelle v. Pa. Gen. Ins. Co.*, 76 F. Supp. 3d 628, 634 (E.D. La. 2015); *see also Vedros v. Northrop Grumman Shipbuilding, Inc.*, 119 F. Supp. 3d 556, 563–65 (E.D. La. 2015) (excluding a specific causation expert who failed to provide a "qualitative evaluation of the [plaintiff's] exposures to asbestos, *i.e.*, the level, frequency, nature, proximity, and duration of the exposures at issue").

Here, however, Dr. Tosti alleged Taxotere caused Plaintiff's injury based entirely on factors unrelated to her.   Dr. Tosti essentially admitted there is nothing specific to Plaintiff that allows Dr. Tosti to conclude that Taxotere was the causative agent.  *See* Trial Tr. 741:24−742:11 (Dr. Tosti cannot rule out the other chemotherapies through Plaintiff's pathology); 742:17−23 (Dr.

---

[10]   Defendants respectfully maintain that the Court's legal conclusions regarding specific causation are incorrect for the reasons asserted at summary judgment, see Rec. Doc. 11378, and they accordingly reassert their objections here.

[11]   Plaintiff's experts agreed there are reports of permanent alopecia associated with both Adriamycin and Cytoxan, which Plaintiff took.  *See* Trial Tr. 710:12−16, 712:2−7 (Tosti); *id.* 1236:25−1238:7 (Feigal).  Dr. Tosti also testified that Tamoxifen, which Plaintiff took for nine years after completing chemotherapy, causes the grade 2 persistent alopecia Plaintiff allegedly has.  Trial Tr. 854:15−19 ("Q. Now you know that in addition to causing endocrine or androgenetic alopecia, Tamoxifen can cause Grade 2 alopecia, right? A. Grade 2 alopecia, yes, if you use that grading, you can grade some of the Tamoxifen alopecia Grade 2.").

Tosti cannot rule out the other chemotherapies through physical examination of Plaintiff); 742:24−743:3 (There's no test that can be given to determine which chemotherapy drug may have caused Plaintiff's PCIA).  Instead, Dr. Tosti relied on her experiences with other patients. Trial Tr. 666:14−19 (Dr. Tosti "determined" Taxotere caused Plaintiff's PCIA because "of many case[s] [she has] seen of this problem in [her life]") and 669:12−685:16 (discussing the cases of PCIA reported with Taxotere regimens in the literature).

Dr. Tosti also relied on conclusions in medical literature allegedly associating PCIA and Taxotere in other patients.  Trial Tr. 703:16−19 ("I just reported what the authors-- concluded."). Dr. Tosti's experience with other patients—and other patients discussed in literature—all of whom have *other* medical histories and received different chemotherapy regimens and doses—is not sufficient evidence of *specific* causation related to Plaintiff.   Utilizing Dr. Tosti's biased methodology allows her to conclude, divorced from any patient-specific factors, that Taxotere is the cause of persistent hair loss in any patient who received it.[12]  Dr. Tosti should not have been permitted to offer these unreliable opinions to the jury and, without them, Plaintiff could not meet her burden of proof.  *See Comardelle*, 76 F. Supp. 3d at 634–35 (excluding the "kind of blanket specific causation opinion [that] is not based on or tied to the specific facts and circumstances" of the Plaintiff, specifically noting that relying on "a broad array of cases, studies," and other

---

[12]   Dr. Tosti has previously admitted her methodology is wholly devoid from any patient-specific facts and circumstances.  Dr. Tosti testified at her deposition that if a patient took Taxotere, she *automatically concludes* Taxotere caused the patient's PCIA:

Q.  So if a woman comes to you and tells you, I took chemotherapy, my hair did not regrow and I took a Taxotere-containing regimen, would you **automatically conclude** the Taxotere was the cause of the ongoing hair loss?

A.  **Honestly, Yes**.

*Id.* at 312:16–21 (emphasis added); *see also id.* at 312:11–15 (admitting that "the specific drug may be possible to determine or maybe not, but in the case of Taxotere, [she] think[s] that's the specific drug.").

materials fails to "plug the impermissible gap" between the "general causation proposition" and the "specific causation opinion.").

Even if Dr. Tosti's opinions were admissible, however, no reasonable juror could find Plaintiff proved she suffers from a *permanent* injury. *See, e.g.*, *Wainwright v. Fontenot*, 774 So. 2d 70, 77 (La. 2000). Plaintiff's counsel argued in opening statements that Plaintiff "must live with PCIA forever," but there was no evidence that Plaintiff's hair will not grow back. *See* Trial Tr. at 140:7−8; 147:12−15; 150:10−11. Plaintiff herself testified that no doctor has ever told her she has permanent alopecia, and that she has never asked. *Id.* 1726:23–1727:14 ("None of my treating physicians have ever said that it was permanent."). Dr. Tosti even admitted that Plaintiff's hair looks better today than it did before chemotherapy:

> Q. So you believe that not only does Mrs. Kahn's hair after chemotherapy look much like it did before, your testimony under oath again was just that you believe it actually looks better, true?
>
> A. In this [sic] pictures.

Trial Tr. 826:12−18.

Dr. Tosti further testified that patients with hair loss often see improvement after treatment with Minoxidil but, as far as Dr. Tosti knows, Plaintiff has never tried it. Trial Tr. 688:22−25; 860:11−861:10; 862:13−20. Plaintiff confirmed that in the 13 years since she lost her hair, she has never tried any medication or treatment to see if she could get her hair to come back. *Id*. 1569:7–24; 1576:22–1578:6 (explaining she "chose not to" use Rogaine). Without ever having been diagnosed with permanent or persistent hair loss, and never having tried a product that could improve her hair regrowth, no reasonable juror could find that Plaintiff has proven her hair will never grow back—*i.e.*, that it is *permanent*.

14

### B.      Plaintiff Did Not Prove "But For" Causation.

Plaintiff also must prove that she would not have persistent hair loss *but for* taking Taxotere.  *Nagle*, 61 F. Supp. 3d at 622 (causation in Louisiana asks whether the injury "would not have happened but for the defendant's" alleged failure).  Plaintiff's counsel argued in opening that "but for" Taxotere, Plaintiff would not have Grade 2 alopecia.[13]  *See, e.g.*, Trial Tr. 147:12−14; 149:12−16, 152:13−18; 157:17−23.  But Dr. Tosti—Plaintiff's only specific causation expert— admitted at trial that she cannot rule out *multiple* other potential causes of Plaintiff's injury.[14] Plaintiff did not meet her causation burden on this record.

First, Dr. Tosti admitted that she cannot say whether androgenetic alopecia is playing a part in Plaintiff's alleged injury:

> Q. You would agree with me, as you sit here today under oath, in front of this jury, you cannot rule out androgenetic alopecia as a cause of Ms. Kahn's hair loss, true?
>
> A. It's not true, because as a cause, it's not the right question.  If you ask me if it's part, I would answer yes.

Trial Tr. 842:19−24.

> Q. Since it is your opinion to this jury that androgenetic alopecia is playing a role when it comes to Mrs. Kahn's hair loss, you would agree with me that you cannot rule it out as contributing to her hair loss?

---

[13]   "But for" causation is the standard required by Louisiana law.  The Court in *Earnest* erred by accepting Plaintiff's causation jury instruction, which improperly introduced the concept of "substantial factor" as adequate proof of "proximate cause," and Plaintiff submitted a similar instruction here.  "Substantial factor" is actually an alternative test for *cause in fact*, not proximate cause, and it is not applicable here regardless. *See Nagle*, 61 F. Supp. 3d at 622 ("Louisiana case law is clear that cause-in-fact is usually a 'but for' inquiry.") (citations omitted); *see also Beary v. Deese*, 2018 WL 3417878, at *6 (E.D. La. July 13, 2018) ("'While the term 'substantial factor' has received recognition in the courts of appeal, the 'but-for' test clearly prevails.'" 12 La. Civ. L. Treatise, Tort Law § 4.6 (2d ed.).").  While Dr. Tosti attempted to discuss causation in terms of a "substantial contributing factor," Plaintiff's counsel argued from the start that Plaintiff would not have permanent hair loss but for Taxotere. *See, e.g.*, Trial Tr. 147:12−14; 149:12−16, 152:13−18; 157:17−23.

[14]   In fact, no expert testified that, had Plaintiff taken a different regimen, she would not have suffered her injury.

> A. I would say that it might.  We don't know, but I agree that it
> could.

Trial Tr. 843:23−844:3.

Dr. Tosti likewise admitted that the hormone medication Tamoxifen, which Plaintiff also took, is known to cause Grade 2 alopecia—the injury Plaintiff attributes to Taxotere.  Trial Tr. 854:15−19 ("Q. Now you know that in addition to causing endocrine or androgenetic alopecia, Tamoxifen can cause Grade 2 alopecia, right? A. Grade 2 alopecia, yes, if you use that grading, you can grade some of the Tamoxifen alopecia Grade 2.").  Dr. Tosti testified "[i]t's impossible to tell if [Tamoxifen] was also a part" of Plaintiff's hair loss "because this is a complicated situation." *Id.* 654:18−20.  Dr. Tosti admitted that she cannot "rule out tamoxifen as a potential contributing cause of [Plaintiff's] alopecia," and she testified it is "maybe a component."  *Id.* 855:7−11.

Dr. Tosti finally admitted during her testimony that while she attributes Plaintiff's alleged injury to Taxotere, she *cannot rule out* other chemotherapies in Plaintiff's regimen in reaching her conclusion:

> Q. Okay. And as you sit here today, you cannot rule out the other chemotherapy drugs that Ms. Kahn took, the drugs besides Taxotere, as having played a role in her hair loss, true?
>
> A. Somehow it's true because I believe this is a problem that occurs with combination chemotherapy, you know?  So definitely there is probably a role that we don't know. But the main substantial factor is Taxotere.  The other drugs are there but the problem doesn't happen the same way if Taxotere is not there.

Trial Tr. 736:22−737:6.  Dr. Tosti's theory that "the problem doesn't happen the same way if Taxotere is not there" but she "cannot rule out the other chemotherapy drugs" because "definitely there is probably a role that we don't know" is not sufficient for a reasonable jury to find Plaintiff

would not have persistent hair loss *but for* taking Taxotere.[15]   Even under the substantial contributing factor test, Dr. Tosti did not meet Plaintiff's burden.   Plaintiff still needed to prove with reasonable medical probability that Plaintiff's injury resulted from a cause for which Defendants are liable.   Dr. Tosti's testimony that multiple other causes played a role in Plaintiff's injury, and that she "believe[s] this is a problem that occurs with combination chemotherapy," *id.*, does not meet that standard.   No reasonable juror could find Plaintiff met her specific causation burden on this record.

## V.   PLAINTIFF DID NOT MEET HER BURDEN ON *CONTRA NON VALENTEM*.

In Louisiana, the prescriptive period for product liability claims is one year from the day the alleged injury is sustained.   La. Civ. Code. art. 3492; *In re Taxotere (Docetaxel) Prod. Liab. Litig. (Thibodeaux)*, 995 F.3d 384, 388 (5th Cir. 2021).   Where the face of the complaint shows the prescriptive period has already run, the plaintiff bears the burden of proving a suspension or interruption of the prescriptive period.   *Id.* at 388−90.   As the Court has already ruled, Plaintiff's complaint is prescribed on its face and thus Plaintiff had the burden of proving that *contra non valentem* applied.   *See In re Taxotere (Docetaxel) Prod. Liab. Litig. (Kahn)*, 2020 WL 1815854, at *3 (E.D. La. Apr. 7, 2020).[16]

Under the doctrine of *contra non valentem*, the Court may suspend the prescriptive period, but only in exceptional circumstances.   *Thibodeaux*, 995 F.3d at 389-90; La. Civ. Code. art. 3467, cmt. d. The doctrine is not available after a plaintiff has "constructive notice" of the facts underlying her claim.   *Thibodeaux*, 995 F.3d at 391.   The Fifth Circuit has held *contra non*

---

[15]   Neither did Dr. Tosti testify that the amount of Taxotere prescribed only by Dr. Kardinal caused Plaintiff's alleged permanent hair loss.

[16]   Defendants respectfully maintain that the Court's legal conclusions regarding prescription and *contra non valentem* are incorrect for the reasons asserted at summary judgment and in Defendants' motions for reconsideration, *see* Rec. Docs. 9295, 9885, 9946, 10399, 12542, 12805, 12916, 13161, and they accordingly reassert their objections here.

*valentem* can only "toll[] the prescription period until the point when a prospective plaintiff through the exercise of reasonable diligence should have considered Taxotere as a potential root cause of her injury." *Id.* at 392−93 (internal quotation marks and brackets omitted).   In Thibodeaux, because plaintiffs were warned that temporary hair loss was a possible side effect of Taxotere, "diligence required that Taxotere be explored as a possible explanation" for persistent hair loss. *Id.* at 394; *In re Taxotere (Docetaxel) Prod. Liab. Litig. (Durden)*, 860 F. App'x 886, 892 (5th Cir. 2021).  That is the case regardless of "Sanofi's alleged attempts to conceal the link between Taxotere and permanent hair loss" because "a reasonable inquiry would have uncovered all of the information [Plaintiff] needed." *Durden*, 860 F. App'x at 894 n.3.  Plaintiff has not met her burden to prove that exceptional circumstances exist to toll the prescriptive period on her claims until at least December 9, 2015 (one year before Plaintiff filed suit).

## A.    Plaintiff Did Not Prove She Reasonably Investigated Taxotere.

The Fifth Circuit's recent decisions make clear that Plaintiff was required to explore *Taxotere* as a possible cause of her injury.   Under the Fifth Circuit's holding in *Thibodeaux*, "Taxotere as a possible cause of the persistent hair loss was not an obscure possibility" in 2010, and "diligence required that Taxotere be explored as a possible explanation" of the injuries Plaintiff alleges. *See In re Taxotere (Thibodeaux)*, 995 F.3d 384, 393−94 (5th Cir. 2021); *see also id.* at 393 ("[W]e consider the standard of 'knew or should have known' to mean they needed to investigate Taxotere as a potential cause." (internal citation omitted)).  Plaintiff admitted she failed to meet this standard.

Plaintiff completed chemotherapy in October 2008 and testified she knew her hair had not fully regrown six months later, by April 2009.  Trial Tr. 1525:19–21; 1704:16–20.  Nonetheless, Plaintiff did not file her lawsuit until 2016, after a friend told her about an attorney advertisement she had seen on TV. *Id.* 1570:8–14.  Plaintiff admitted that she conducted no research or other

investigation into the cause of her injury between 2009 and 2016.  *Id.* 1570:23–1571:4.

According to Plaintiff, her gynecologist, Dr. Roberie, suggested in April 2009 that her incomplete hair regrowth could be due to the "aging process."  *Id*. 1567:25–1568:7; 1567:15–22. Plaintiff testified that, though she "didn't know if [she] believed [Dr. Roberie]," she still "didn't do anything" to research whether the aging process—or anything else—was the cause of her hair loss.  *Id.* 1729:13–20.  Under the Fifth Circuit's test, because Plaintiff never explored Taxotere specifically—with Dr. Roberie or any doctor—she has failed to show the *contra non valentem* doctrine saves her claim.[17]

Plaintiff was not excused from exercising diligence to investigate Taxotere as the cause of her injury based on Dr. Roberie's comment.  *In re Taxotere (Durden)*, 860 F. App'x at 893−894. In *Durden*, the Fifth Circuit explained that a diagnosis of female pattern baldness due to age, like that suggested by Dr. Roberie, makes no "relevant difference" where the doctor did not exclude "other potential causes," and where the evidence does not support a finding that the plaintiff *believed* her persisting hair loss was attributable to some other cause.  *In re Taxotere (Durden)*, 860 F. App'x at 893−94.

Plaintiff's case is indistinguishable from *Durden*.  Dr. Roberie never purported to diagnose the cause of Plaintiff's injury, much less to exclude other causes.  Trial Tr. 1726:23–1728:2; 1467:25–1668:7.  Dr. Roberie is a gynecologist, not a dermatologist.  While Dr. Roberie commented that Plaintiff's hair loss can be caused by aging, she did not—and could not—rule out any potential cause of Plaintiff's harm.  The evidence is also clear that Plaintiff did not reasonably rely on Dr. Roberie's statements.  Trial Tr. 1728:13–22 ("Did I believe [aging was the cause]? I

---

[17]   Plaintiff also testified that she mentioned her hair loss to Dr. Larned, but Dr. Larned "couldn't give [Plaintiff] any reason for why my hair wasn't filling in."  *Id*. 1568:23–1569:1.

don't know if I believed. I guess I hoped it wasn't true because you can't reverse it."). As in *Durden*, under these facts, *contra non valentem* does not save Plaintiff's claim.

**B.      Plaintiff Did Not Establish the Elements of Fraudulent Concealment.**

Finally, although not expressly addressed in the Court's denial of Sanofi's Motion for Summary Judgment on prescription grounds, *see generally* Order, Rec. Doc. 9885, on summary judgment Plaintiff argued that Sanofi's decision not to change the Taxotere label to include a warning of permanent hair loss prevented her from bringing her claims.  Rec. Doc. 9295 at 13-15. To establish a claim of fraudulent concealment that tolls the prescriptive period, Plaintiff must show (1) Defendants committed an act of concealment, misrepresentation, or fraud that (2) prevented Plaintiff from filing suit.  *Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10), 48 So. 3d 234, 246. The Fifth Circuit foreclosed, as a matter of law, the argument that Sanofi's alleged failure to warn could have prevented any plaintiff in this MDL from conducting a reasonable inquiry into whether Taxotere caused their persistent hair loss.  *Thibodeaux*, 995 F.3d at 395. Plaintiff had to present evidence of an independent concealment, directed to her, to prevail on this exception.  She presented none.

**VI.      IMPOSSIBILITY PREEMPTION**

Defendants continue to assert that Plaintiff's claim is preempted for the reasons raised before trial.  *See* Rec. Doc. 11020; Rec. Doc. 11682.  Nothing Plaintiff presented in her case alters Defendants' preemption defense.   Defendants are reserving all rights relating to the Court's preemption rulings.

**VII.      DEFENDANTS' PRE-TRIAL MOTIONS**

Defendants previously moved the Court for orders on evidentiary issues.  In addition to the arguments raised above, Defendants hereby renew these motions and preserve for post-trial review the Court's orders on the following Rule 702/*Daubert* motions and motions *in limine*.

- Expert Testimony of Laura Plunkett (Rec. Doc. 10918; Rec. Doc. 11823);

- Expert Testimony of Linda Bosserman (Rec. Doc. 10929; Rec. Doc. 12109);

- Expert Testimony of Ellen Feigal (Rec. Doc. 10931; Rec. Doc. 11810);

- Expert Testimony of David Kessler (Rec. Doc. 10999; Rec. Doc. 12173);

- Expert Testimony of David Madigan (Rec. Doc. 11003; Rec. Doc. 12098);

- Expert Testimony of Antonella Tosti (Rec. Doc. 11377; Rec. Doc. 12401);

- Expert Supplemental Opinion of Laura Plunkett (Rec. Doc. 12575; Rec. Doc. 13131);

- Expert Testimony of David Ross (Rec. Doc. 12576; Rec. Doc. 13063);

- Motion for Summary Judgment Based on Preemption (Rec. Doc. 11020; Rec. Doc. 11682);

- Motion for Summary Judgment Based on Specific Causation (Rec. Doc. 11378; Rec. Doc. 12401);

- Motion for Summary Judgment Based on Statute of Limitations (Rec. Doc. 9295; Rec. Doc. 9885);

- Motion for Reconsideration of its Order and Reasons denying Motion for Summary Judgment Based on Statute of Limitations (Rec. Doc. 9946; Rec. Doc. 10399);

- Motion for Reconsideration of its Order and Reasons denying Motion for Summary Judgment Based on Statute of Limitations (Rec. Doc. 12542; Rec. Doc. 12805);

- Renewed Motion for Reconsideration of its Order and Reasons denying Motion for Summary Judgment Based on Statute of Limitations (Rec. Doc. 12916; Rec. Doc. 13161);

- Motion for Summary Judgment Based on Warnings Causation (Rec. Doc. 9300; Rec. Doc. 9888);

- Motion for Reconsideration of its Order and Reasons Granting in Part and Denying in Part Motion for Summary Judgement Based on Warnings Causation (Rec. Doc. 12536; Rec. Doc. 13062);

- Motion to Preclude Evidence or Argument Concerning the Purported Moral or Ethical Duties of Pharmaceutical Drug Manufacturers (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning Purported Legal Duties and Conclusions (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning Other Lawsuits, Claims, or Investigations Against Defendants and/or Other Sanofi Entities (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning Complaints and Lawsuits Against Other Manufacturers of Docetaxel (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning Adverse Event Reports or Other Complaints Involving Patients Other Than Plaintiff (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning the Presence, Absence, or Identity of Defendants' Corporate Representative at Trial (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning Defendants' Executive and/or Employee Compensation (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning the Cost of Taxotere and Prescription Drug Pricing Generally (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning Defendants' Corporate Finances or Employment Decisions (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning Expert Opinions that Have Been Disclaimed and/or that Exceed the Scope of Plaintiff's Experts' Rule 26 Disclosures and Deposition Testimony (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning Defendants' Corporate Intent, Motives, or State Of Mind (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning Defendants' Corporate Integrity Agreements, Government Investigations or Settlements, or Any Other Alleged "Bad Acts" Unrelated to Taxotere (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning Specific Litigation Conduct (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning Alleged Fraud on the FDA (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Reference to PCIA as "Common" (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning What Ms. Kahn Would Have Done Differently if She Had Been Given Different Risk Information by Her Prescribing Oncologist (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning Sanofi Promotional and/or Marketing Materials Not Possessed or Relied On by Ms. Kahn or Her Prescribing Physician (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning Non-Expert Causation Testimony (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning Plaintiff's Motive and/or Mental State (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Regarding Sanofi Sales Representatives, and to Exclude Sales Representative Witness Testimony (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning Correspondence Between DDMAC and Sanofi (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Referring to Sanofi as a "French" or "Foreign" Company (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning FAERS Signal Evaluation (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Regarding Foreign Labeling and Regulatory Actions (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence and Argument that "Ongoing Alopecia" Data Observed in the TAX316 and GEICAM 9805 Clinical Trials Represents Evidence of "Persistent," "Permanent," or "Irreversible" Alopecia (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Regarding Shirley Ledlie, any "Taxotears" or Other Third Party Advocacy or Communications Group or Group Members, facebook voices page, And Intouch Solutions (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence and Argument Regarding Company Conduct that Post-Dates Plaintiff's Chemotherapy Treatment (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence and Argument Concerning FDA's January 2011 Warning Letter and Corresponding 483 Inspection (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument That Plaintiff's Actinic Keratosis was Caused By Taxotere or PCIA, or Claiming Damages Therefor (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning the Use of Cold Caps (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning the Canadian Informed Consent (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Concerning Dr. Kessler or his Role in the U.S. Government's Covid-19 Response Team (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Duplicative Expert Testimony (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Punitive Damages Evidence (Rec. Doc. 12968; Rec. Doc. 13260);

- Motion to Preclude Evidence or Argument Regarding Dear Health Care Provider Letters (Rec. Doc. 12968; Rec. Doc. 13260).

## **CONCLUSION**

For the reasons stated above, the Court should grant Defendants' motion for judgment as a matter of law.

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE  URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Jon Strongman
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com
jstrongman@shb.com

***Counsel for Sanofi Defendants***
***Sanofi US Services Inc. and***
***Sanofi-Aventis U.S. LLC***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 17, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

*/s/ Douglas J. Moore*