**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                    MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                               SECTION "H" (5)

THIS DOCUMENT RELATES TO
*Kahn v. Sanofi-Aventis US, LLC*, No. 16-117039

<u>MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION *IN LIMINE*
TO EXCLUDE ARGUMENT FOR ALTERNATIVE CAUSATION</u>

## I.    INTRODUCTION

Plaintiff Elizabeth Kahn respectfully moves this Court to enter an Order *in limine* prohibiting argument during closings that any drug other than Taxotere *causes* or *can cause* Permanent Chemotherapy-Induced Alopecia (PCIA). Because Sanofi has adduced no evidence at trial that tamoxifen, Taxol, Xeloda, Avastin, or any other drugs, could have caused, let alone did cause, Plaintiff's PCIA, an order excluding argument to the same must issue.

Plaintiff also requests that the Court prohibit any suggestion to the jury that because "cases of PCIA have been reported" with concomitant chemotherapy drugs "A" and "C," the Plaintiff cannot show that Taxotere was a cause of her PCIA. The law does not require Taxotere to be the *sole* cause of Plaintiff's injury—only that it is was a substantial contributing factor and proximate cause. Relatedly, because the jury has not heard any reliable evidence at trial that the drug Taxol may cause PCIA—and instead has only heard that "cases have been reported"—Sanofi should be precluded from arguing during summation that Taxol also causes PCIA.

## II.    ARGUMENT

Pursuant to this Court's Order and Reasons of December 18, 2020, Plaintiff files the instant renewed motion *in limine* to preclude Sanofi from making unsupported argument during

1

summation regarding alleged *causation* between drugs other than Taxotere and PCIA, as well as alleged, alternate *causes* of Plaintiff's PCIA. Doc. 11684. As this Court noted, Plaintiff is entitled to dispute the "reliability" of Sanofi's evidence and challenges to causation in the *Kahn* trial. *Id.*

Sanofi has shown the jury no admissible, reliable evidence that any non-Taxotere drug can cause (general causation) PCIA, nor any reliable evidence that Plaintiff's use of any other drug caused (i.e., with general and specific causation support) her injury—only speculative testimony from Sanofi's oncology expert Dr. John Glaspy regarding case reports with other drugs and his own personal experience with patients experiencing hair thinning after taking regimens that do not include Taxotere. But Sanofi's expert did not provide any reliable, non-anecdotal causation evidence as to other drugs and nor would he have been qualified to give a specific causation opinion he had tried.

An expert witness is one who by education, training or experience has specialized knowledge to assist the jury, but their opinions must be both relevant and reliable. The Fifth Circuit has articulated a five-part test for district courts to consider in assessing whether an experts testimony is reliable including: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Moore v. Ashland Chem. Inc.* 151 F.3d 269, 275 (5th Circ. 1998). Any party seeking to admit expert testimony, including testimony as to alternate causes, must demonstrate that the expert's findings and conclusions are grounded in the scientific method and are therefore reliable. *Id.* An expert's assurance that he or she utilized a generally accepted scientific methodology is insufficient. *Id.* Rather, the party must prove that the expert testimony

it seeks to admit is reliable. This is consistent with the law of Louisiana which requires that in order to be reliable, evidence of alternative causes must constitute reasonable hypotheses based upon evidence which is not "remote, conjectural, [or] speculative." *Weber v. Fidelity & Cas. Ins. Co. of NY*, 250 So. 2d 754, 757–58 (La. 1971).

A. <u>**Alternative Causation Arguments with No Basis in the Record Should be Precluded During Summation.**</u>

Sanofi should be precluded from arguing alternative causation theories that lack any basis in the evidence presented at trial. Any testimony elicited by Sanofi purporting to provide such a basis is unreliable because it is remote, conjectural and/or speculative.

Sanofi's expert Dr. Glaspy cites case reports of PCIA where patients took tamoxifen to infer a causal link between that drug and the injury. But he fails to offer any methodology to support tamoxifen as a potential cause of PCIA. He admits he never undertook any scientific methodology to assess whether Tamoxifen can cause permanent hair loss.[1] Under the Fifth Circuit's analysis of scientific reliability, any statements offered by Dr. Glaspy are not based on a reliable methodology to assess causation and are therefore unreliable. Further, Dr. Glaspy's claims that "cases of permanent alopecia have been reported with" tamoxifen does not mean there is a causation link, and thus cannot be allowed to infer alternate causation before the jury. The Court, in its discretion, may allow Sanofi's experts to testify that "cases of permanent alopecia have been reported with [other drugs]", but it should not allow unsupported testimony or argument inferring that such reports rise to the level of alternate causation. But the law is clear that in order to prove

---

[1]   Ex. A, Trial Tr. 1836:9-1837:11; Ex. B, Dep. John Glaspy, MD, (Glaspy II) 1/9/2020, 88:7-23, 196:23 – 201:3, 206:5 – 207:11; Ex. C, Report John Glaspy, 4/29/2020, p. 48; Ex. D, Dep. John Glaspy, MD, (Glaspy III) 5/13/2020, 174:12 – 177:8, 178:10 – 180:19.

causation (including alternate causation) an expert must apply a proper and reliable analysis to support his conclusions. Dr. Glaspy admits he has not done so.

Specifically, Sanofi's only expert witness, Dr. Glaspy, admits that he has not attempted to apply any methodology to assess whether any alternate causes, such as other chemotherapy drugs, endocrine therapy, or other medical conditions, may be causing Ms. Kahn's permanent hair loss.[2] Despite employing no methodology and admitting that his conclusions are based solely on his own clinical experience, Dr. Glaspy only ***speculates*** that Ms. Khan may be suffering from permanent or irreversible hair loss as a result of various chemotherapy drugs, medical conditions and/or tamoxifen.[3] Such speculation as to potential alternative causes of Ms. Kahn's permanent hair loss are simply not permissible and should be precluded.

In *Hall v. Freese*, 735 F.2d 956 (5th Cir. 1984), the Court ordered a new trial because of defense counsel's prejudicial "guesstimation" that overuse of prescription drugs caused plaintiff's injuries:

> The defense presented absolutely no evidence to support its suggestion that Hall's disability was caused by the use of drugs. In fact, the only opinion expressed by any witness in this regard was that Hall's condition was not caused by drug use. The evidence did show that Hall took a large quantity of prescription drugs, but did not establish that any of these drugs was prescribed improperly. Under the circumstances, the defense attorneys' repeated references to drug use as the probable source of Hall's disability were wholly unjustified and were unfairly prejudicial to Hall's case.

*Id.* at 961. The Court emphasized that "deliberately misstating the record or arguing outside the record [does not] serve any remote purpose for which a trial is intended." *Id.* at 962.

---

[2] Ex. A, Trial Tr. 1895:16 - 1896:19; *id.* at 1897:5-13; *id.* at 1836:9-1837:11; *id.* at 1882:9-17; *id.* at 1883:10-25; *id.* at 1886:22-1887:25; *id.* at 1890:5-25; Ex. D, Dep. John Glaspy, MD,(Glaspy III) 5/13/2020, 178:10 – 180:19.

[3] Ex. C, Expert Report of Dr. John Glaspy, April 29, 2019 ("Glaspy Expert Report II") at p. 21-25.

Similarly, in *Berguido v. E. Air Lines*, 35 F.R.D. 200 (E.D. Pa. 1964), the Court held that defense counsel made improper argument as to alternate causation without evidentiary support:

> The argument concerning the possible mechanical failure of the aircraft was certainly without an evidentiary basis, in that all evidence concerning the plane was to the effect that it was functioning well when it left Miami, and up to the time of the crash, none of its crew reported any malfunctions, and subsequent to the accident the parts which could be tested were found to be in good working order. This evidence was uncontradicted and there was no evidence on which to argue mechanical failure. The fact that the jury might be aware how fast mechanical failure can develop, and the fact that another pilot on the same night had trouble with his plane, could not support an inference that the aircraft in question suffered a mechanical failure which was the cause of the accident

*Id.* at 210; *see also id.* ("[T]here was no evidence as to the location of the truck relative to the glide slope and, therefore, its presence could not be used to show that it caused a deflection in the I.L.S. which may have caused the accident, and it was prejudicial to do so.").

The case law is clear that counsel cannot argue outside the evidence. In Ms. Kahn's trial, the evidence will not support any argument Sanofi's experts ever assessed an alternate *cause* of Ms. Kahn's PCIA. This is established through the experts' admissions; it could not be clearer. Sanofi's counsel cannot offer or infer expert testimony on causation in their argument that is unsupported, and in fact refuted, by its own experts; yet, such speculation is precisely what a jury will hear if inferences to non-Taxotere drugs being a potential cause of Ms. Kahn's PCIA are allowed at trial.

Similarly, to the extent that Sanofi may seek to argue in its closing that Taxotere's competitor drug Taxol also *causes* PCIA, it should be precluded from doing so for the same reasons. Sanofi has elicited no expert testimony during this trial supporting general causation

between Taxol and PCIA—at best, there is evidence of isolated case reports.[4] Accordingly, Sanofi cannot argue to the jury that Taxol carries a risk of PCIA.

**B.  Sanofi Should be Precluded from Arguing Causation Issues that Disregard the Jury Charges on Causation and Have the Propensity to Cause Confusion of the Issues.**

As it did in the *Earnest* trial (*See* Ex. A at 2204), Sanofi is likely to argue once again that, because there are case reports of permanent alopecia with all the drugs Ms. Kahn took, it is impossible to determine which chemotherapy caused her PCIA—based on the testimony of its expert Dr. Glaspy.[5]  But this argument, too, cannot be made because Dr. Glaspy's testimony lacks reliable foundation to support general causation that any other drug "can cause" permanent hair loss.

A plaintiff is not required to "negate all other possible causes. Otherwise, the mere identification by the record of another possibility, although not shown to be causally active, would break the chain of causation."  *Llwellyn v. Lookout Saddle Co.*, 315 So. 2d 69, 71 (La. App. 2d Cir. 1975) (citations omitted).  Plaintiff need not prove "with a fair amount of certainty" that other drugs and/or conditions did not cause her permanent or irreversible hair loss because such possibilities have not been shown to be "causally active."  Rather, as articulated in the jury instructions, the Plaintiff is required to demonstrate that Taxotere "is at least one of the direct concurring causes of the injury… Plaintiff must show that Defendants conduct was a substantial contributing factor in bringing about the result."

---

[4] Ex. A, Trial Tr. 1887:1-25; *id.* at 1822:16-18.
[5] Ex. B, Dep. John Glaspy, MD, (Glaspy II) 1/9/2020, 88:7-18 ("Okay, fair enough.  You're not going to come into court at the trial of this next case and offer testimony to a reasonable degree of scientific certainty  that what you cite on pages 21 through 23, footnotes 25 through 39, establishes a causal chain, link of chain - links of chain to establish causation that any of the  drugs listed here, these 15 drugs, to a reasonable degree of scientific certainty, causes or can cause  permanent chemotherapy induced alopecia; correct? MR. STRONGMAN: Objection. Form. THE WITNESS: That's correct.  We'll only talk about it in association.") and 88:24 – 89:11, (quoting p. 23 of his report, "Because Taxotere for early stage breast cancer is given as...a multi-drug regimen and not a single agent, it is impossible to conclude that Taxotere causes permanent alopecia.").

Plaintiff has no burden to establish a "sole cause" in this case. As such, Defendants should not be able to argue that you cannot entirely exclude the other drugs used in combination therapy as contributing to cause, or that it is impossible to determine the sole cause, of Plaintiff's injury. Such testimony should be precluded as it implicates an improper standard that there can only be one cause of Plaintiff's injuries. That is not the law, and Sanofi should not be allowed to imply that Plaintiff's burden includes identifying a singular causative agent.

Sanofi therefore should be precluded from making any arguments or inferences, through counsel or through their experts, that misstate the causation burden and/or are inconsistent with the legal burden in this case and this Court's jury instructions.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Sanofi be precluded from arguing any other drug has been shown to *cause* PCIA or permanent hair loss, or from arguing or inferring that the fact that "cases have been reported" with another other drug means they have been scientifically shown to carry a risk of PCIA or permanent hair loss. And, Plaintiff respectfully renews her request for an order *in limine* precluding Sanofi from arguing or inferring during summation that an expert cannot say Taxotere is the sole cause of Ms. Kahn's PCIA or that it is impossible to exclude other chemotherapy as a contributing cause, as such statements contradict the causation standard to be evaluated by the jury.

7

Dated: November 18, 2021                          Respectfully submitted,


*/s/ Christopher L. Coffin*                        */s/ Karen B. Menzies*
Christopher L. Coffin (#27902)                     Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.                   GIBBS LAW GROUP LLP
1100 Poydras Street, Suite 2225                    6701 Center Drive West, Suite 1400
New Orleans, Louisiana 70163                       Los Angeles, California 90045
Phone: (504) 355-0086                              Telephone: 510-350-9700
Fax: (504) 355-0089                                Facsimile: 510-350-9701
ccoffin@pbclawfirm.com                             kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*                      *Plaintiffs' Co-Lead Counsel*


*/s/M. Palmer Lambert*                             */s/Dawn M. Barrios*
M. Palmer Lambert (#33228)                         Dawn M. Barrios (#2821)
GAINSBURGH BENJAMIN DAVID                          BARRIOS, KINGSDORF & CASTEIX, LLP
MEUNIER & WARSHAUER, LLC                           701 Poydras Street, Suite 3650
2800 Energy Centre, 1100 Poydras Street            New Orleans, LA 70139
New Orleans, LA 70163-2800                         Phone: 504-524-3300
Phone: 504-522-2304                                Fax: 504-524-3313
Fax: 504-528-9973                                  barrios@bkc-law.com
plambert@gainsben.com

                                                   *Plaintiffs' Co-Liaison Counsel*
*Plaintiffs' Co-Liaison Counsel*


## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews                                       Abby E. McClellan
Andrews Thornton Higgins Razmara, LLP             Stueve Siegel Hanson LLP
2 Corporate Park, Suite 110                        460 Nichols Road, Suite 200
Irvine, CA 92606                                   Kansas City, MO 64112
Phone: (800) 664-1734                              Phone: (816) 714-7100
aa@andrewsthornton.com                             Fax: (816) 714-7101
                                                   mcclellan@stuevesiegel.com


J. Kyle Bachus                                     Karen Barth Menzies
Bachus & Schanker, LLC                             Gibbs Law Group LLP
101 W Colfax Ave, Suite 650                        6701 Center Drive West, Suite 1400
Denver, CO 80202                                   Los Angeles, CA 90045 Phone:
Phone: (303) 222-2222                              510-350-9700
Fax: (303) 893-9900                                Fax: 510-350-9701
kyle.bachus@coloradolaw.net                        kbm@classlawgroup.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

John Gomez
The Gomez Law Firm, PLLC
655 West Broadway, Suite 1700
San Diego, CA 92101
Phone: (619) 237.3490
Fax: 619.237.3496.
john@thegomezfirm.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, FL 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Jessica Perez Reynolds
Pendley, Baudin & Coffin
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Phone: (225) 687-6396
Fax: (225) 687-6398
jperez@pbclawfirm.com

Darin L. Schanker
Bachus Schanker
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
dls@coloradolaw.net

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904 15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com
Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@amalaw.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Zachary Wool
Barrios Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
zwool@bkc-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ Dawn M. Barrios*
DAWN M. BARRIOS