# EXHIBIT A

```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA


IN RE:  TAXOTERE (DOCETAXEL)     *        16-MD-2740
PRODUCTS LIABILITY LITIGATION    *
                                 *        Section H
                                 *
Relates to:  Barbara Earnest     *        September 24, 2019
             16-CV-17144         *
* * * * * * * * * * * * * * * * *


                    DAY 7 - AFTERNOON SESSION
               TRANSCRIPT OF JURY TRIAL BEFORE
                THE HONORABLE JANE T. MILAZZO
                UNITED STATES DISTRICT JUDGE
```

Appearances:

| | |
|---|---|
| For the Plaintiffs: | Barrios Kingsdorf & Casteix, LLP<br>BY:  DAWN M. BARRIOS, ESQ.<br>701 Poydras Street, Suite 3650<br>New Orleans, Louisiana 70139 |
| For the Plaintiffs: | Gainsburgh Benjamin David Meunier<br>  & Warshauer, LLC<br>BY:  M. PALMER LAMBERT, ESQ.<br>1100 Poydras Street, Suite 2800<br>New Orleans, Louisiana 70163 |
| For the Plaintiffs: | Pendley Baudin & Coffin, LLP<br>BY:  CHRISTOPHER L. COFFIN, ESQ.<br>1100 Poydras Street, Suite 2505<br>New Orleans, Louisiana 70163 |
| For the Plaintiffs: | Gibbs Law Group, LLP<br>BY:  KAREN BARTH MENZIES, ESQ.<br>6701 Center Drive West, Suite 1400<br>Los Angeles, California 90045 |

| | | |
|---|---|---|
| 02:05 | 1 | burned in my brain -- is chemotherapy is different or special |
| 02:05 | 2 | to -- I'm not quoting Your Honor, but something like that. |
| 02:05 | 3 | **THE COURT:** Yeah, I did. |
| 02:05 | 4 | **MS. SASTRE:** And what we have put at the heart of |
| 02:05 | 5 | this case, at the center of this case, is this whole |
| 02:05 | 6 | conversation: What did the patient know? What did the patient |
| 02:05 | 7 | ask? What did the doctor say? |
| 02:05 | 8 | And so to answer your question directly, for |
| 02:05 | 9 | example, if I was to ask her a series of questions on, you |
| 02:05 | 10 | know, "You didn't go back and do any research and you didn't |
| 02:05 | 11 | look at this" -- so the idea of what she had to inform herself |
| 02:05 | 12 | to go into this visit on March 31 and ask questions, |
| 02:06 | 13 | particularly about hair loss, with this being in her hands -- I |
| 02:06 | 14 | understand she says she didn't read it, but she is the |
| 02:06 | 15 | plaintiff in this case. And her telling me on cross-exam she |
| 02:06 | 16 | didn't read something when it was in her very hands, I get to |
| 02:06 | 17 | show the jury what she didn't read. |
| 02:06 | 18 | Because if that answer alone did the trick, any |
| 02:06 | 19 | document that wasn't helpful to their case, the plaintiff could |
| 02:06 | 20 | just say, "Oh, well, I had it, but I didn't read it." So I |
| 02:06 | 21 | don't think I need to lay a foundation with her, and what she |
| 02:06 | 22 | knows based not just upon her interactions with Dr. Carinder, |
| 02:06 | 23 | but, again, because she had this before she ever went in there, |
| 02:06 | 24 | I think it's fair -- |
| 02:06 | 25 | **THE COURT:** Before, she didn't know what drugs he was |

about.

      **THE COURT:** Informed consent, unless we get into what the doctor told her about Arimidex and get into all that --

      **MS. SASTRE:** Well, what's interesting about the record is that at the five-year mark, you heard even Dr. Carinder say a lot of people stop. But she wanted to continue taking it. She said, "Look, I have friends that take it." And so the idea was preventing the reoccurrence of breast cancer was very important to her.

      And then I'm going to ask her about whether the doctor discussed the hair loss issue with her, which is a fair -- of course it's a fair question. If she was consented on hair loss --

      **MR. SCHANKER:** If she says she is knowingly taking Arimidex and her advisory in 2016 concerning Arimidex -- which is not -- has no -- is not subject to any claim or defense, is not a party -- the manufacturer of Arimidex is not a party in this case, then whether an advisory was given --

      **THE COURT:** There are a couple things.

      The first objection was hearsay. That's overruled.

      As to relevance, you don't need me to tell you why this line of questioning is relevant. It's twofold: What I believe you are going to hear is that Arimidex can cause hair loss. I know that's not what Dr. Tosti said, but they are

BARBARA EARNEST - CROSS

02:25 1 entitled to present a defense.
02:25 2     **MR. SCHANKER:** Absolutely.
02:25 3     **THE COURT:** The other thing is if, during this
02:25 4 conversation about consent, the plaintiff was informed that
02:25 5 this could be a cause of her hair loss, I think it's very
02:25 6 relevant if she chooses to accept it.
02:25 7     Now, look, the Lord giveth and the Lord taketh
02:25 8 away. It also means that she is making very informed decisions
02:25 9 about her treatment.
02:25 10     Does that make sense?
02:25 11     **MS. SASTRE:** We'll see. I don't know. I'm flying
02:25 12 without wings here, so -- okay. Thank you, Your Honor.
02:25 13     **THE COURT:** Plaintiff.
02:25 14     (End of bench conference.)
02:25 15     **MS. SASTRE:** Your Honor, we would like to move this
02:25 16 into evidence.
02:26 17     **THE COURT:** Let it be admitted.
02:26 18 **BY MS. SASTRE:**
02:26 19 **Q.** Mrs. Earnest, I just want you to take a look at a section
02:26 20 on the top of page 3 -- I will put it up here. We can look at
02:26 21 it together -- just to see if it refreshes your recollection of
02:26 22 your conversation with Dr. Collins-Burow about Arimidex. Okay?
02:26 23 **A.** You are counting the top sheet as a page?
02:26 24 **Q.** I have it up on your screen, if that's just as easy for
02:26 25 you to follow.

| | | |
|---|---|---|
| 03:45 | 1 | **A.** Yes, yes. |
| 03:45 | 2 | **Q.** If one drug allows you to meet that treatment goal to live |
| 03:45 | 3 | to beat cancer and have your hair, and another one allows you |
| 03:45 | 4 | to live and beat cancer, but you lose your hair forever, which |
| 03:45 | 5 | of those two drugs would you choose? |
| 03:45 | 6 | **A.** The first one. |
| 03:46 | 7 | **Q.** Have you heard evidence in this courtroom about what the |
| 03:46 | 8 | defendant knew about permanent hair loss? |
| 03:46 | 9 | **MS. SASTRE:** Objection. |
| 03:46 | 10 | **THE COURT:** Sustained. |
| 03:46 | 11 | **BY MR. SCHANKER:** |
| 03:46 | 12 | **Q.** What do you wish Dr. Carinder would have been told in this |
| 03:46 | 13 | case? |
| 03:46 | 14 | **MS. SASTRE:** Objection. |
| 03:46 | 15 | **THE COURT:** Sustained. |
| 03:46 | 16 | **MR. SCHANKER:** No further questions, Your Honor. |
| 03:46 | 17 | Thank you.  Thank you for testifying here today. |
| 03:46 | 18 | **THE COURT:** Thank you.  You can step down, |
| 03:46 | 19 | Mrs. Earnest. |
| 03:46 | 20 | Please call your next witness. |
| 03:46 | 21 | **MR. SCHANKER:** Yes, Your Honor.  Concerning what we |
| 03:46 | 22 | talked about, should we just approach briefly? |
| 03:46 | 23 | **THE COURT:** Yes.  Wait.  I need somebody from the |
| 03:47 | 24 | defense.  Ms. Sastre. |
| 03:47 | 25 | **MS. SASTRE:** Yes.  I'm just getting the right papers, |

```
03:47  1    Your Honor.
03:47  2              THE COURT:  Thank you.
03:47  3              (The following proceedings were held at the bench.)
03:47  4              MS. SASTRE:  Sorry about that.
03:47  5              MR. SCHANKER:  So, Your Honor, as the Court
03:47  6    indicated, we would just like to read into the record a portion
03:47  7    of Dr. Bianchini's deposition to give context to the document
03:47  8    that Barbara Earnest was impeached with.
03:47  9              MS. SASTRE:  Yes, ma'am.  My colleague is bringing me
03:47 10    the full deposition.  I have excerpts up here.
03:48 11              THE COURT:  Okay.  Thank you.
03:48 12              MS. SASTRE:  Okay.  Thank you.
03:48 13                  Okay, Your Honor.  All set.
03:48 14                  You want to know what I want to read?
03:48 15              THE COURT:  Uh-huh.
03:48 16              MS. SASTRE:  Okay.
03:48 17              THE COURT:  That's all I want to know.
03:48 18              MS. SASTRE:  Can you tell me what you want to read?
03:48 19              THE COURT:  What I said he could.  I'm not allowing
03:48 20    him to read anything more than that.
03:48 21              MS. SASTRE:  Okay.  So I believe Your Honor said
03:48 22    page 128, lines 10 through 20; is that correct?
03:48 23              THE COURT:  Uh-huh.
03:48 24              MS. SASTRE:  The only other thing I might say,
03:48 25    Your Honor, is 130, but --
```

```
03:51  1              MS. SASTRE:  Thank you, Judge.
03:51  2                   "Did you ask her why -- even if she thought it
03:51  3   was the Arimidex, why she wasn't complaining or seeking
03:51  4   treatment for hair loss?
03:51  5                   "So my understanding was that she just -- she
03:51  6   was attributing it to that medicine and the fact that she was,
03:51  7   you know -- you know, maybe -- that maybe it would still come
03:51  8   back and that she -- you know -- and that she, you know,
03:51  9   thought that that's -- was the explanation, and so I -- I guess
03:51 10   didn't think that -- that it -- that treatment for hair loss
03:51 11   was warranted."
03:52 12              THE COURT:  Mr. Coffin.
03:52 13              MR. COFFIN:  Your Honor, the plaintiffs will rest
03:52 14   their case.  One caveat, we just want to make sure that the
03:52 15   exhibits are all straight.  We will do that with your clerk.
03:52 16                   Plaintiffs rest at this time, Your Honor.
03:52 17              THE COURT:  Members of the jury, you have just heard
03:52 18   and seen all of the evidence that the plaintiffs have offered
03:52 19   in their case in chief.  After recess the defendant may put on
03:52 20   any evidence that they wish to present.
03:52 21                   I again clearly admonish you not to discuss the
03:52 22   case amongst yourselves or with anyone else.  You must wait
03:52 23   until you have heard all of the evidence, listened to argument
03:52 24   of counsel, and the instructions by the Court before you begin
03:52 25   your deliberations.
```

```
03:52  1                    Because there are issues, I have business that I
03:52  2   must deal with with counsel.  We are going to recess early
03:52  3   today until 8:30 tomorrow.
03:52  4                    Court is at recess until 8:30 tomorrow.  Please
03:53  5   leave your tablets on the chairs.  Thank you.
03:53  6             (The jury exited the courtroom.)
03:53  7             THE COURT:  Please have a seat.
03:53  8                    Any motions the defendants wish to raise?
03:54  9             MR. MOORE:  Your Honor, the defendant, pursuant to
03:54 10   Rule 50 of the Federal Rules of Civil Procedure, moves for a
03:54 11   directed verdict on the grounds that no reasonable jury would
03:54 12   have a legally sufficient evidentiary basis to find for the
03:54 13   plaintiff in this case.
03:54 14                    My colleagues are filing a written Rule 50
03:54 15   motion so that the complete grounds with record citations are
03:54 16   memorialized in the record.
03:54 17                    We are filing a Rule 50(a) motion that addresses
03:54 18   the evidence that was presented to the jury.  Then we are
03:54 19   filing our separate motion that I mentioned yesterday for
03:54 20   judgment as a matter of law on the issue of preemption.  I can
03:54 21   speak briefly to both of those today with the understanding
03:54 22   that the full motions are being filed, perhaps as I speak.
03:54 23             THE COURT:  Okay.
03:55 24             MR. MOORE:  We have moved for summary judgment under
03:55 25   Rule 50(a) on four separate grounds:  First, we believe that
```

 1  the neuropathy, or whether she would have still chosen
 2  paclitaxel [sic], knowing of its risk of permanent alopecia."
 3              So that hypothetical, balancing the risk between
 4  these two medicines, which Your Honor articulated in the motion
 5  for summary judgment denial, was not a question that they
 6  elicited from Mrs. Earnest.
 7              And when we asked the questions -- and I wrote
 8  down her answers -- her question [sic] was:  "I can't answer
 9  that.  I don't know what I would have done."
10              Under the framework that this Court has laid
11  out, they had to ask the right questions, and she had to say
12  that she would have accepted the risk with these other
13  treatments to avoid the risk of hair loss.  And she did not say
14  that.
15              And, Your Honor, a step further from that is
16  that the decision tree process as described by Dr. Carinder,
17  they have to live within the confines of what Dr. Carinder
18  would have done, how he would have consulted this patient, and
19  how this patient's decision-making would have been altered.
20              And what we heard Dr. Carinder say is that his
21  choice, coming in the room, his recommendation, would have
22  still been AC followed by Taxotere.  Had he known of -- cases
23  of alopecia had been reported or known of some increased risk
24  of permanent alopecia, he would have told her.
25              Then the question was:

Supreme Court, one that has to be decided by Your Honor. And we have had lots of debates through motions in limine and in chambers conferences about what the impact that is on the evidence that should come before this jury, and we don't agree with the plaintiffs and they don't agree with us --

**THE COURT:** That's a shocker.

**MR. MOORE:** Right. Big surprise.

-- as to what -- how the evidence should change and what should the jury see as it relates to the FDA for what the jury has to decide.

But what we do know is that Your Honor has to decide the issue of preemption. We filed a motion for summary judgment on this issue before the *Albrecht* decision, and the way we presented the issue to Your Honor was whether or not there was a material fact in dispute that could go to the jury. And then *Albrecht* comes out and sort of changes the landscape, makes it your issue.

And so the way we presented Your Honor the motion, the way I think Your Honor considered it, is as one of summary judgment and viewing the facts in the light most favorable for the nonmoving party, which is what Rule 56 says you're supposed to do.

We think now that the plaintiff's evidence is in, we believe that we are entitled to judgment as a matter of law on the issue of preemption, because what we now know as it

```
04:06  1   relates to the opinion of Dr. Kessler is that he believes we
04:07  2   should have clearly and prominently displayed on the Taxotere
04:07  3   label in 2006 and no later than 2009 a warning about permanent
04:07  4   alopecia.  Doesn't say whether it's a "Capital W" warning,
04:07  5   which we argued about before; sort of suggests it could be the
04:07  6   "Adverse Events" section.
04:07  7             But what he doesn't say is that adding a single
04:07  8   sentence to page 33 of the label that says "Cases of permanent
04:07  9   alopecia have been reported" is adequate.  And we think that
04:07 10   the clearly and prominently displayed warning is inconsistent
04:07 11   with the final agency action in 2015, where the FDA decided to
04:07 12   add a single sentence to page 33.
04:07 13             So as we state in our papers that are being
04:07 14   filed today, Your Honor, FDA labeling decisions, they are not a
04:07 15   nullity; they are decisions -- they are formal agency actions
04:07 16   that carry the force and effect of federal law; and when FDA
04:08 17   approves a label, it analyzes the evidence and data and that
04:08 18   process is part of its Congressionally delegated authority.
04:08 19             One of the issues Your Honor raised in denying
04:08 20   our motion for summary judgment on preemption was that -- I
04:08 21   believe Your Honor faulted Sanofi for not using the CBE process
04:08 22   in making a labeling change.
04:08 23             We know now today, from what Dr. Kessler says to
04:08 24   what he believes that labeling change should be, and we don't
04:08 25   think that there is a dispute in the evidence now.  We don't
```

```
04:08  1    think that there is a need for a separate evidentiary -- like a
04:08  2    Markman-type hearing.  We don't think that that's the case.
04:08  3                What we do think is that Your Honor needs to see
04:08  4    the full record of communications and exchange of information
04:08  5    with the agency, and that's something that we are putting
04:09  6    together with the papers.  Because the issue surrounds whether
04:09  7    or not there is new evidence that has not been shared with the
04:09  8    agency that would have supported some action by the defendant,
04:09  9    and we believe that the evidence that is submitted to
04:09 10    Your Honor will demonstrate that that is not the case and that
04:09 11    the agency decision that was made in 2015 is inconsistent with
04:09 12    what these jurors are being asked to do.
04:09 13                And so for that reason, Your Honor, and for the
04:09 14    reasons more fully stated in our papers, we would ask for
04:09 15    judgment as a matter of law on the issue of preemption.
04:09 16                **THE COURT:**  Thank you.
04:09 17                **MR. NOLEN:**  Rand Nolen, N-O-L-E-N, for the plaintiff.
04:09 18                And we would respectfully ask the Court to deny
04:09 19    the motion for judgment as a matter of law under Rule 50(a).
04:10 20    As the Fifth Circuit explained in *Ellis v. Weasler Engineering*,
04:10 21    258 F.3d 326, in 2001, the way that the Fifth Circuit treats a
04:10 22    motion for judgment as a matter of law is procedural and
04:10 23    applies federal law to that analysis.
04:10 24                And the burden on the party moving for a
04:10 25    directed verdict has a difficult burden of persuasion, because
```

```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
 2
    *******************************************************************
 3
    IN RE:  TAXOTERE (DOCETAXEL)         Docket No. 16-MD-2740
 4   PRODUCTS LIABILITY LITIGATION        Section H
                                          New Orleans, LA
 5   Relates to:  Barbara Earnest         Thursday, September 26, 2019
                 16-CV-17144
 6
    *******************************************************************
 7
                     TRANSCRIPT OF TRIAL PROCEEDINGS
 8            HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                     UNITED STATES DISTRICT JUDGE
 9                      DAY 9, MORNING SESSION

10
    APPEARANCES:
11
    FOR THE PLAINTIFF:              BACHUS & SCHANKER, LLC
12                                  BY:  DARIN L. SCHANKER, ESQ.
                                         J. KYLE BACHUS, ESQ.
13                                  1899 Wynkoop St., Suite 700
                                    Denver, CO 80202
14
                                    FLEMING NOLEN & JEZ
15                                  BY:  RAND P. NOLEN, ESQ.
                                    2800 Post Oak Blvd., Suite 4000
16                                  Houston, TX 77056

17                                  GIBBS LAW GROUP, LLP
                                    BY:  KAREN B. MENZIES, ESQ.
18                                  6701 Center Drive West, 14th Floor
                                    Los Angeles, CA 90045
19
                                    DAVID F. MICELI, LLC
20                                  BY:  DAVID F. MICELI, ESQ.
                                    P.O. Box 2519
21                                  Carrollton, GA 30112-0046

22                                  PENDLEY BAUDIN & COFFIN
                                    BY:  CHRISTOPHER L. COFFIN, ESQ.
23                                  2505 Energy Centre
                                    1100 Poydras St.
24                                  New Orleans, LA 70163

25
```

| | | |
|---|---|---|
| 10:44:04 | 1 | Causation, in fact, is provided by establishing a plaintiff's |
| 10:44:09 | 2 | injury would not have occurred but for the defendant's actions.  In |
| 10:44:13 | 3 | order to prove cause-in-fact in this case, plaintiff must show to a |
| 10:44:16 | 4 | reasonable degree of medical probability that Taxotere can cause |
| 10:44:19 | 5 | permanent hair loss, that Taxotere caused permanent hair loss for |
| 10:44:23 | 6 | Mrs. Earnest, and that a failure to warn Dr. Carinder was the cause |
| 10:44:26 | 7 | of Mrs. Earnest's injury. |
| 10:44:29 | 8 | So in the context of the first question on the verdict |
| 10:44:32 | 9 | form, what does this mean?  It means that you have a list of |
| 10:44:37 | 10 | potential causes of hair loss in this case.  Adriamycin, Cytoxan, |
| 10:44:43 | 11 | Taxotere, put it on the list.  We didn't spend time fighting that |
| 10:44:47 | 12 | in this case.  Put Taxotere on the list.  Put Arimidex on the list. |
| 10:44:53 | 13 | Plaintiff has to prove to you that they've been able to rule out |
| 10:44:59 | 14 | everything on that list as being the substantial cause of |
| 10:45:02 | 15 | Mrs. Earnest's hair loss. |
| 10:45:04 | 16 | Said another way.  If you take that list, ladies and |
| 10:45:07 | 17 | gentlemen, and you cross Taxotere off of it, you would have to be |
| 10:45:10 | 18 | convinced that Mrs. Earnest would have her hair today.  That's what |
| 10:45:13 | 19 | this question asks you to decide. |
| 10:45:18 | 20 | You know that Mrs. Earnest lost her hair before.  I am |
| 10:45:22 | 21 | not going to go over that again.  What else do you know about |
| 10:45:25 | 22 | Adriamycin and Cytoxan?  Again, all of plaintiff's experts agree it |
| 10:45:30 | 23 | causes permanent hair loss. |
| 10:45:33 | 24 | Go back.  I'm sorry.  You heard from Dr. Tosti.  I just |
| 10:45:40 | 25 | want to remind you again.  I showed you it earlier.  She said, "No |