# EXHIBIT E



**FOOD AND DRUG ADMINISTRATION**

| | |
|---|---|
| **Meeting Date and Time:** | June 4, 2008 |
| **Meeting Type:** | B |
| **Meeting Category:** | Pre-IND |
| **Meeting Location:** | WO-22 Room 1313 |
| **Application Number:** | IND 101904 |
| **Product Name:** | Docetaxel Injection Concentration |
| **Received Briefing Package** | May 6, 2008 |
| **Sponsor Name:** | Intas Pharmaceuticals |
| **Meeting Requestor:** | Sabita Nair |
| **Meeting Chair:** | Ravi S. Harapanhalli |
| **Meeting Recorder:** | Susan Jenney |

**Meeting Attendees:**

    **FDA Attendees**
    **Office of New Drugs/Division of Drug Oncology Products**
    Ramzi Dagher, Deputy Division Director
    Amna Ibrahim, Clinical Team Leader
    Qin Ryan, Clinical Reviewer
    Haleh Saber, Pharmacology Toxicology Acting Team Leader
    Margot Brower, Pharmacology Toxicology Reviewer
    Alice Kacuba, Acting Chief Project Management Staff
    Susan Jenney, Project Manager
    **Office of New Drug Quality Assessment**
    Ravi S. Harapanhalli, CMC Branch Chief
    Haripada Sarker, CMC Pharmaceutical Assessment Lead
    Josephine Jee, CMC Reviewer
    **Office of Translational Sciences/Division of Clinical Pharmacology**
    Gene Williams, Clinical Pharmacology Team Leader
    Jeanne Fourie, Clinical Pharmacology Reviewer

    **External Attendees**
    Samir Mehta, Executive Vice President, USA
    Sabita Nair, Assistant Director, Regulatory Affairs
    Kanishka Pathak, Assistant Manager, Regulatory Affairs

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| OND/OODP/DDOP | B | Confidential |
|---|---|---|
| Filing Reference # IND 101,904 | | 6/19/2008 |

## 1.0 BACKGROUND

Intas Pharmaceuticals submitted a meeting request with FDA on March 10, 2008, to discuss product development plan for a 505 b(2) application for Docetaxel Injection. The meeting was granted. During an internal meeting, FDA formulated responses to the questions submitted by the Sponsor. The Agency sent a FAX of FDA's Responses to the Sponsor on May 29, 2008. The Sponsor stated that they agreed with most of the responses but wanted to clarify FDA's responses to Questions 2.1.1, 2.2.1, and 2.2.3. The Sponsor questions are below with the FDA's responses and the meeting discussion.

## 2.0 DISCUSSION

### 2.1 General

1) Does the agency agree that the proposed product is eligible for submission under a 505(b)(2) application?

**FDA Response:** Yes, we agree with your proposal. Please note the following general considerations for a 505(b)(2) application.

The Division recommends that sponsors considering the submission of an application through the 505(b)(2) pathway consult the Agency's regulations at 21 C.F.R. 314.54, and the October 1999 Draft Guidance for Industry Applications Covered by Section 505(b)(2)" available at http://www.fda.gov/cder/guidance/guidance.htm. In addition, FDA has explained the background and applicability of section 505(b)(2) in its October 14, 2003, response to a number of citizen petitions challenging the agency's interpretation of this statutory provision. See Dockets 2001P-0323, 2002P-0447, and 2003P-0408.

If you intend to submit a 505(b)(2) application that relies for approval on FDA's finding of safety and/or effectiveness for a listed drug, you must establish that such reliance is scientifically appropriate, and must submit data necessary to support any aspects of the proposed drug product that represent modifications to the listed drug. In this case, you should establish a "bridge" between your proposed drug product and each listed drug upon which you propose to rely to demonstrate that such reliance is appropriate. If you intend to rely on literature or other studies for which you have no right of reference but that are necessary for approval, you also must establish that reliance on the studies described in the literature is scientifically appropriate.

**Meeting Discussion:** It was clarified that if any impurity or degradation product exceeds the limits seen in the reference product at the end of expiry and if the levels also exceed the ICH Q3BR2 limits then it needs to be qualified.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER    ACC.00000346

| | | |
|---|---|---|
| OND/OODP/DDOP | B | Confidential |
| Filing Reference # IND 101,904 | | 6/19/2008 |

### 2.2 Quality

1) The applicant proposes to submit Chemistry, Manufacturing and Controls (CMC) information on **two pilot scale batches** of the proposed product (one batch per fill volume), with **6 months of accelerated and real time stability data.**

    The applicant will propose a shelf life of 15 months at the time of submission and the application will be updated with additional stability data during the review cycle. Is this acceptable?

**FDA Response:** **This approach is acceptable with the understanding that a common formulation will be used to fill the two fill volumes. Provide a timely stability update during the review (before 5 months into the review cycle) to include at least 12 months of stability data. Provide the data in SAS transport files or in Excel spreadsheet format and statistical analysis of all stability-indicating quality attributes.**
**Meeting Discussion:** **The sponsor agreed to submit a timely stability update by 5 months from the submission date. It was clarified that a total of two bulk formulation batches should be made. These could be used to split fill 2 batches each of the lower fill and the higher fill. It was also clarified that one bulk batch could be a pilot scale and one a lab scale provided these batches are shown to be representative of the proposed commercial process.**
**Post-meeting Note:** **If there are any concerns regarding the reproducibility of the two bulk batches, an additional bulk batch may need to be manufactured to support the NDA registration.**

2) The applicant proposes to conduct initial dilution studies to determine the appropriate conditions and duration of storage for the initial diluted solution. The applicant further proposes to conduct final dilution studies to determine the compatibility of the initial diluted solution with appropriate diluents (0.9% Sodium Chloride solution and 5% Dextrose solution) for infusion.

    Are any other specific dilution studies required?

**FDA Response:** **The approach is reasonable. If you intend to use any other diluents such as Lactated Ringers, you will have to provide dilution compatibility studies using that diluent. Supportive data resulting from the initial and final dilutions studies will be assessed for adequacy at the time of NDA submission. Also, provide adequate data on extractables and leachables from the container closure system and the infusion systems that will be used with this product.**

3) Are any in-vitro studies required to support the equivalency of the proposed product with the Reference Listed Drug?

**FDA Response:** **No. However, provide comparative batch analysis data for three batches of your proposed Docetaxel Injection Concentrate and Taxotere ® (docetaxel) Injection Concentrate in your proposed application. You may choose 1-2 batches of the listed drug**

| | | |
|---|---|---|
| OND/OODP/DDOP | B | Confidential |
| Filing Reference # IND 101,904 | | 6/19/2008 |

**close to the end of expiry to quantify the degradation products. If any of the impurities exceed the qualification thresholds, they need to be qualified.**

**Meeting discussion:** **It was clarified that two bulk batches described in question 2.2.1 will result in 2 batches of each fill volume. These four final batches will be analyzed for determination of impurity levels.**

### 2.3   Non-clinical

1) The proposed product is an injection concentrate that contains the same concentration of the active ingredient as in the reference listed drug, TAXOTERE®. The inactive ingredients that will be used are listed in the Inactive Ingredient Database (IIG), and have been previously approved for use in the same route of administration, at levels above those reflected in the formulation for Accord's proposed product.

   Since Accord intends to rely on the agency's finding of safety for the Reference Listed Drug, TAXOTERE®, and in light of the previously approved levels of the inactive ingredients contained in the proposed formulation, Accord believes that no additional toxicological studies would be required for the NDA. Does the agency agree?

**FDA Response:** **Yes. However, a final decision will be made after review of data submitted with the NDA, including the specification limits of the individual impurities as compared to those in the reference drug.**

### 2.4   Clinical

1) Since the active ingredient, route of administration, dosage form, strength, proposed indications and dosing regimen for the proposed product are the same as for the Reference Listed Drug, Taxotere® and in light of Accord's intention to rely on the agency's findings of safety and efficacy for Taxotere® as a basis for its NDA submission, Accord believes that clinical studies should not be required for submission and approval of the NDA. Does the agency agree?

**FDA Response:** **Yes.**

**It is your responsibility to make the case that reliance upon the available information supporting safety and efficacy of docetaxel injection is scientifically appropriate. As discussed in question 1, pharmaceutical equivalence is a required bridge and it will be assessed during the NDA review.**

### 2.5   Clinical Pharmacology/Biopharmaceutics

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                   ACC.00000348

| | | |
|---|---|---|
| OND/OODP/DDOP | B | Confidential |
| Filing Reference # IND 101,904 | | 6/19/2008 |

1) Will the proposed product be eligible for a waiver of the requirement to provide evidence of in-vivo bioavailability or bioequivalence? If not, what types of studies will be required for submission and approval of the NDA?

**FDA Response: Yes, we agree that a waiver of the requirement to provide bioequivalence is grantable to this application. However, please note that adequacy of CMC bridging to demonstrate pharmaceutical equivalence is the key to this determination during the NDA review.**

## 2.6 Interchangeability

Since the obtainment of an "A" rating (comprising pharmaceutical equivalence and therapeutic equivalence) is critical to Accord's business plan for this product, we wish to review and obtain the agency's consensus on the criteria for obtaining an "A" rating. The table on the following page illustrates our understanding of the criteria for an "A" rating, and the status of the proposed product in relationship to these criteria: (note: Several questions are posed after the table)

| Criterion | Yes/No or To be Confirmed |
|---|---|
| 1) Product is approved as safe and effective | To be confirmed at time of NDA approval |
| 2) Product contains the identical amount of same active ingredient in the same dosage form and route of administration as the RLD | Yes |
| 3) Product meets compendial or other applicable standards of strength, quality purity and identity | To be confirmed during NDA review |
| 4) Product is bioequivalent to the RLD in that it does not present a known or potential bioequivalence problem and meets an acceptable in vitro standard or if it does present a known or potential problem, it has been shown to meet a bioequivalence standard | Bioavailability/Bioequivalence is self evident based on the fact that the product is a solution for intravenous administration [1] |
| 5) Product is adequately labeled | To be confirmed during NDA review |
| 6) Product is manufactured in compliance with cGMPs | To be confirmed during NDA review |

[1] The agency has previously granted a waiver of the requirement to provide evidence demonstrating the in-vivo bioavailability/bioequivalence under 21 CFR 320.22 (b)(1) of a product with a different qualitative composition than the RLD. Refer to the Clinical Pharmacology and Biopharmaceutics review Summary for 21-113 for Pamidronate Disodium Injection, 3 mg/mL, 10 mL vial. The basis for the waiver was that the product is intended for intravenous administration and contains the same active ingredient in the same concentration as

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                                          ACC.00000349

| OND/OODP/DDOP | B | Confidential |
|---|---|---|
| Filing Reference # IND 101,904 | | 6/19/2008 |

the listed drug. The product was also granted an AP rating to other approved pamidronate products containing the same concentration of active ingredient in a dosage form for intravenous administration.

    1)    Does the agency agree with the criteria for an "A" rating listing in the table above?

**FDA Response:** **The criteria for "A" rating include clinical equivalence, which consists of demonstration of pharmaceutical equivalence and bioequivalence. Since these components are listed in the table, the criteria seem adequate.**

    2)    Does the agency agree that the proposed product would be eligible for an "A" rating based on the criteria defined in the table above?

**FDA Response:** **A biowaiver is grantable to this product. Your product appears to be eligible for the "A" rating to Taxotere™ due to it being same in its potency, strength, route of administration, and dosage form to the listed drug. However, the acceptability of an "A" rating for the proposed product is contingent upon demonstration of pharmaceutical equivalence, which will be assessed during NDA review. The "A" rating for interchangeability is granted by the Orange Book Staff at the Office of Generic Drugs. Therefore, upon approval of the NDA, you may contact Mary Ann Holovac, Director, Drug Information, Office of Generic Drugs at 240-276-8971 with a request for an "A" rating for your product.**

    3)    Does the agency agree that the bioavailability/bioequivalence of the proposed product would be considered self-evident, based on its dosage form and route of administration?

**FDA Response:** **Yes.**

    4)    If the agency does not agree that the bioavailability/bioequivalence of the proposed product would be considered self-evident, what types of studies would be required to satisfy this criterion for purposes of enabling an "A" rating?

**FDA Response:** **See response to question 3.**

**3.0 ISSUES REQUIRING FURTHER DISCUSSION**
None

**4.0 ACTION ITEMS**
None

**5.0 ATTACHMENTS AND HANDOUTS**
None

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER   ACC.00000350