UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>*Arquice Conley v. Sandoz Inc.*<br>Civil Case No. 2:18-cv-09799 | MDL No. 2740<br><br>Section: N(5)<br><br>JUDGE JANE TRICHE MILAZZO<br><br>MAG. JUDGE NORTH |

**DEFENDANT SANDOZ INC.'S STATEMENT OF UNDISPUTED
MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR
<u>SUMMARY JUDGMENT ON PREEMPTION GROUNDS</u>**

**GREENBERG TRAURIG, LLP**

Lori G. Cohen
R. Clifton Merrell
Evan C. Holden
Terminus 200
3333 Piedmont Road, N.E., Suite 2500
Atlanta, Georgia 30305
(678) 553-2100

Gregory E. Ostfeld
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 476-5056

*Counsel for Defendant Sandoz Inc.*

**APPENDIX OF EXHIBITS TO MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| A. | Second Amended Plaintiff Fact Sheet |
| B. | Deposition Transcript of Arquice Conley (July 17, 2019) |
| C. | Deposition Transcript of Dr. John Whitecar (September 13, 2019) |
| D. | SANDOZ-TAXO-NDA-00016364-432 |
| E. | SANDOZ-TAXO-NDA-00016679-685 |
| F. | SANDOZ-TAXO-NDA-00016024-25 |
| G. | SANDOZ-TAXO-NDA-00016715-805 |
| H. | SANDOZ-TAXO-NDA-00016539-45 |
| I. | Expert Report of Dr. Roger Williams (July 24, 2020) |
| J. | SANDOZ-TAXO-NDA-000373-76 |
| K. | SANDOZ-TAXO-NDA-005746-48 |
| L. | Sanofi_01574962-5 |
| M. | Sanofi_00805353-5 |
| N. | Sanofi_03333249-50 |
| O. | Deposition Transcript of Gregory Seitz (July 19, 2019) |
| P. | Deposition Transcript of Shirley Fernandez (December 17, 2019) |
| Q. | SANDOZ-TAXO-NDA-00006903-04 |
| R. | SANDOZ-TAXO-NDA-00009896-97 |
| S. | SANDOZ-TAXO-NDA-00016286-351 |
| T. | SANDOZ-TAXO-LABELING-000004-62 |
| U. | FDA 505(b)(2) Response to Citizens Petition (October 14, 2003) |
| V. | Deposition Transcript of Dr. Roger Williams (September 22, 2020) |
| W. | Expert Report of Dr. David Ross (June 8, 2020) |

Defendant Sandoz Inc. ("Sandoz"), pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, respectfully submits its Statement of Undisputed Material Facts in Support of Motion for Summary Judgment on Preemption Grounds.

### I. PLAINTIFF'S CLAIMS ARISE OUT OF HER LIFE-SAVING TREATMENT WITH SANDOZ' DOCETAXEL FROM OCTOBER 2011 THROUGH JANUARY 2012.

1. Plaintiff was diagnosed with breast cancer on August 5, 2011. (Ex. A, Second Amended Plaintiff Fact Sheet ("PFS") ¶ V.5).

2. Plaintiff commenced chemotherapy treatments on October 14, 2011, and received a combination of docetaxel with other chemotherapeutic agents, cyclophosphamide (cytoxan) and doxorubicin (adriamycin), approximately every three weeks through January 24, 2012. (*See id.* ¶¶ V.11-12; Ex. B, Deposition of Arquice Conley ("Conley Dep.") 209:7-11, 232:16-19, 247:2-5).

3. Dr. Whitecar testified that he would have recommended treatment with the docetaxel regimen even if he had been warned of the risk of permanent hair loss in the docetaxel labeling, because the docetaxel regimen provided the best shot at disease-free survival and the benefits of the chemotherapy drugs outweigh the risks for the appropriate treatment in the appropriate patient. (Ex. C, Deposition of Dr. John Whitecar ("Whitecar Dep.") 23:6-12, 42:3-8, 43:11-15).

4. Docetaxel was effective in curing Plaintiff's breast cancer, and she has been cancer-free since completing her docetaxel treatment in January 2012. (Ex. B, Conley Dep. 305:8-14, 306:5-8, 370:9-11).

5. Plaintiff acknowledges that docetaxel saved her life and cured her breast cancer. (*Id.* 306:5-13).

6.     Plaintiff knew docetaxel was associated with hair loss prior to undergoing chemotherapy treatment, and began losing hair after her first chemotherapy cycle. (*Id.* 34:8-25, 249:10-14).

7.     Plaintiff claims she would have wanted to know about the risk of permanent hair loss associated with her treatment and would have wanted to know about alternative chemotherapy medications that did not carry that risk, though she does not know whether any other chemotherapy medications would have offered the same benefits without hair loss. (*See id.* 371:15-372:22, 378:5-22).

8.     Plaintiff claims she experienced permanent and persistent hair loss beginning at the time she started chemotherapy treatment in October 2011, and that she noticed in late 2012 that her hair was not growing back as she anticipated. (*Id.* 258:14-260:3, 268:21-269:24). Sandoz denies all of Plaintiff's claims and causes of action and denies all wrongdoing and liability.

## II.     FDA APPROVED SANDOZ' DOCETAXEL VIA THE § 505(B)(2) REGULATORY PATHWAY IN JUNE 2011, LESS THAN FOUR MONTHS BEFORE PLAINTIFF STARTED CHEMOTHERAPY TREATMENT.

9.     Sandoz' docetaxel is a version of Sanofi's Taxotere, approved through the § 505(b)(2) regulatory pathway. (Ex. D, SANDOZ-TAXO-NDA-00016364-432).

10.    The § 505(b)(2) pathway is one of two drug approval options, alongside the § 505(j) pathway for Abbreviated New Drug Applications ("ANDAs"), created and added to the FDCA as part of the Drug Price Competition and Patent Term Restoration Act of 1984, commonly referred to as the "Hatch-Waxman Amendments." The two pathways "reflect Congress's attempt to balance the need to encourage innovation with the desire to speed the availability of lower cost alternatives to approved drugs." (Ex. U, FDA 505(b)(2) Response to Citizens' Petition ("Citizen Pet. Resp."), pp. 3-4).

11. Sanofi's Taxotere® entered the market in 1996. When the patent for Taxotere® expired in 2010, Sandoz was one of several manufacturers that applied for and obtained approval under § 505(b)(2) to sell its own docetaxel product. (Second Amended Master Long Form Complaint, MDL No. 2740, Doc. 4407 ¶¶ 32–36, 45, 59, 71, 82, 92, 105).

12. Sandoz or its affiliate conducted all aspects of the § 505(b)(2) approval process for docetaxel in consultation with the U.S. Food & Drug Administration ("FDA"). The process began with Sandoz' affiliate by subsequent merger, Ebewe Parenta Pharmaceuticals ("Ebewe"), which requested a pre-NDA meeting with FDA by letter dated March 28, 2008. The letter stated that Ebewe's proposed product contained the "same active ingredient and indications" as Taxotere® with the exception of indications for head and neck cancer, and that it differed from Taxotere® only in certain excipients and in that it was ready for use without a diluent. (Ex. E, SANDOZ-TAXO-NDA-00016679-685).

13. FDA set a tentative date for the pre-NDA meeting of July 2, 2008 (IND# 102081). (Ex. F, SANDOZ-TAXO-NDA-00016024-25).

14. Ebewe submitted meeting materials ahead of the pre-NDA meeting that included several questions. (Ex. G, SANDOZ-TAXO-NDA-00016715-805).

15. Ebewe stated in its meeting materials that its docetaxel product "has the same end concentration and has the same indications (except for the indications for head and neck cancer)" as the RLD, and that "[r]eference will be made to clinical studies documented in the Taxotere® injunction labeling … to support the clinical safety profile and efficacy of the active pharmaceutical ingredient," with no additional clinical studies planned. (*Id.*).

16. Ebewe asked, "Does the Agency agree that no additional clinical studies are required to support a 505(b)(2) NDA application?" (Ex. H, SANDOZ-TAXO-NDA-00016539-

3

45).

17. FDA responded in writing to the questions on June 26, 2008, and responded "Yes" to this question. (*Id.*).

18. By correspondence dated January 12, 2010, Ebewe and Sandoz gave notice to FDA that Ebewe had become an affiliated entity of Sandoz on September 23, 2009, when it was acquired by Novartis AG. (Ex. I, Expert Report of Roger L. Williams, M.D. ("Williams Rpt."), p. 18).

19. Sandoz continued to pursue an NDA for a docetaxel product that had the same concentration as the Hospira docetaxel product but otherwise would have similar labeling to Sanofi's Taxotere®. (*Id.*).

20. Sandoz submitted its NDA for FDA review on September 16, 2010. (Ex. J, SANDOZ-TAXO-NDA-000373-76).

21. The NDA contained no new non-clinical or clinical information other than the information needed to indicate that the three presentations all had a nominal concentration of 10 mg/ml. (Ex. I, Williams Rpt., p. 18).

22. Sandoz communicated information regarding the difference in concentration compared to Sanofi Taxotere® to practitioners in a Dear Healthcare Professional Letter. (Ex. K, SANDOZ-TAXO-NDA-005746-48).

23. FDA approved the Sandoz docetaxel § 505(b)(2) NDA, including the language in the labeling on or about June 29, 2011. (Ex. D, SANDOZ-TAXO-NDA-0016364-432).

24. FDA's biopharmaceutics experts determined that the Sandoz formulation was sufficiently equivalent to the RLD, and granted a waiver to a possible requirement to provide in vivo bioequivalence data. (Ex. I, Williams Rpt., p. 18).

## III. SANDOZ' DOCETAXEL WARNINGS MATCHED AND FOLLOWED THE FDA-APPROVED LABEL WARNINGS FOR TAXOTERE®.

25. Sandoz submitted the approved Sanofi labeling for Taxotere® as its own labeling in its NDA submission for docetaxel in September 2010, with differences in Sections 2.8, 2.9, and 3 to reflect specific differences between Sandoz' docetaxel and the RLD, none of which were differences as to warnings, precautions, adverse reactions, or alopecia. (Ex. I, Williams Rpt., p. 21).

26. The Sandoz submissions to FDA directly referenced the Sanofi Taxotere® labeling and provided it for comparison. (*Id*. p. 22).

27. The warnings, precautions, adverse reactions, and alopecia information was the same for both the Sandoz and Taxotere® labeling. (*Id*. p. 4).

28. During the review process, FDA never questioned the use of the Sanofi Taxotere® labeling as the appropriate base labeling, never suggested any different language with respect to warnings and precautions, and never questioned Sandoz' methodology in relying on the RLD labeling. (*Id*. pp. 4, 21, 25).

29. During the review process, the Sanofi Taxotere® labeling changed to remove language that "hair generally grows back," and Sandoz followed suit, changing that language during the NDA review process. (*Id*. p. 25).

30. The Sandoz labeling included reference to "alopecia" in the adverse reactions section, with no temporal limitation such as "temporary" or "permanent." (*Id*. p. 21; Ex. T, SANDOZ-TAXO-LABELING-000004-62).

5

31. There were multiple references to "alopecia" throughout the Sandoz labeling, including a summary of data from Sanofi's clinical trials. (Ex. I, Williams Rpt., pp. 21-22; Ex. T, SANDOZ-TAXO-LABELING-000004-62).

32. The patient counseling section included a warning of "hair loss" in a section with common side effects. (Ex. I, Williams Rpt., p. 22; Ex. T, SANDOZ-TAXO-LABELING-000004-62).

33. The patient counseling section advised patients to "Tell you doctor if you have any side effect that bothers you or does not go away." All of this language matched the Taxotere® labeling. (Ex. I, Williams Rpt., pp. 4, 21-22, 25; Ex. T, SANDOZ-TAXO-LABELING-000004-62).

34. FDA accepted Sandoz' use of the Taxotere® labeling, and only provided comments or revisions on those sections of the labeling that were specific to Sandoz' docetaxel, none of which relate to warnings, precautions, adverse reactions, or alopecia specifically. (Ex. I, Williams Rpt., p. 22).

35. Ultimately, FDA approved the Sandoz labeling when it approved the NDA on June 29, 2011, including the warnings with respect to alopecia, which were identical to those in the Taxotere® labeling. (*Id*. p. 22; Ex. D, SANDOZ-TAXO-NDA-00016364-432).

## IV. SANDOZ UPDATED ITS DOCETAXEL WARNINGS IN MARCH 2016 TO MATCH SANOFI'S DECEMBER 2015 LABEL CHANGE.

36. On March 23, 2015, FDA requested that Sanofi provide a summary of cases of persistent total or partial alopecia associated with docetaxel use. (Ex. I, Williams Rpt., p. 24; Ex. L, Sanofi_01574962).

37. Sanofi responded, and FDA followed up on October 2, 2015, with a request that Sanofi provide any additional information regarding permanent or irreversible alopecia and amend the package insert to add information on permanent or irreversible alopecia within 60 days. (Ex. I, Williams Rpt., p. 24; Ex. M, Sanofi_00805353).

38. Sanofi responded on November 24, 2015, with an updated clinical overview evaluating docetaxel and permanent alopecia, and provided a CBE labeling supplement (which FDA approved on December 11, 2015) to update the Taxotere® labeling. (Ex. I, Williams Rpt., p. 24).

39. Sanofi proposed adding to the Taxotere® package insert, "Cases of permanent alopecia have been reported." (Ex. I, Williams Rpt., p. 24; Ex. N, Sanofi_03333249).

40. FDA approved the change in December 2015. (Ex. I, Williams Rpt. p. 24).

41. Sandoz reviewed any changes in the Sanofi Taxotere® labeling and submitted changes to its own labeling so that it continued to mirror the RLD labeling. (*Id.* p. 26; Ex. O, Deposition of Gregory Seitz ("Seitz Dep.") 76:3-16; Ex. P, Deposition of Shirley Fernandez ("Fernandez Dep.") 84:3-24).

42. That approach complies with FDA regulations, guidance, and industry standards. (Ex. I, Williams Rpt., p. 26).

43. On August 15, 2013, Sandoz submitted revised labeling to FDA in a CBE submission, stating in the memorandum line and in the contents of the document that Sandoz was revising its label to reflect changes Sanofi made to its labeling. (Ex. Q, SANDOZ-TAXO-NDA-00006903-04).

44. Sandoz made many similar submissions to change its labeling to reflect changes made by Sanofi. (Ex. I, Williams Rpt., p. 26).

45. Sandoz' labeling with respect to alopecia remained the same until March 7, 2016, when Sandoz changed the alopecia language to conform to Sanofi's December 2015 changes. (*Id.* p. 22; Ex. R, SANDOZ-TAXO-NDA-00009896-97).

46. This was submitted by Sandoz as a CBE supplement on March 7, 2016, and noted that the labeling would be implemented on April 7, 2016. (Ex. I, Williams Rpt., p. 22; Ex. R, SANDOZ-TAXO-NDA-00009896-97).

47. FDA approved the labeling change on October 21, 2016. (Ex. I, Williams Rpt., p. 22; Ex. S, SANDOZ-TAXO-NDA-00016286-351).

48. Matching Sanofi's change, Sandoz' change added language stating, "Cases of permanent alopecia have been reported." (Ex. I, Williams Rpt., p. 22; Ex. R, SANDOZ-TAXO-NDA-00009896-97).

49. FDA never had any conversations with Sandoz suggesting it change the alopecia warning prior to Sandoz' submission of its CBE supplement on March 7, 2016. (Ex. I, Williams Rpt., p. 22).

50. Dr. Williams opines that Sandoz acted prudently and complied with FDA regulations in monitoring and updating its labeling based on the Sanofi labeling. (*Id.* pp. 4-5; Ex. V, Deposition of Dr. Roger Williams ("Williams Dep.") 118:16-120:24, 139:22-140:11).

Dated: November 19, 2021

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

*/s/ Lori G. Cohen*
Lori G. Cohen
R. Clifton Merrell
Evan C. Holden
Terminus 200
3333 Piedmont Road, N.E., Suite 2500

Atlanta, Georgia 30305
(678) 553-2100
(678) 553-2386 (facsimile)
CohenL@gtlaw.com
MerrellC@gtlaw.com
HoldenE@gtlaw.com

Gregory E. Ostfeld
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 476-5056
(312) 899-0420 (facsimile)
OstfeldG@gtlaw.com

*Attorneys for Sandoz Inc.*

9

## CERTIFICATE OF SERVICE

      I hereby certify that on November 19, 2021, a copy of the foregoing document was served on all counsel of record via email.

*/s/ Lori G. Cohen*
Lori G. Cohen