# EXHIBIT B

```
 1                      UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF LOUISIANA
 2
     *****************************************************************
 3
     IN RE:  TAXOTERE (DOCETAXEL)
 4   PRODUCTS LIABILITY LITIGATION

 5                                        Docket No. 16-MD-2740
                                          Section H
 6                                        New Orleans, LA
                                          Thursday, November 18, 2021
 7   Relates to:  Elizabeth Kahn
                  16-CV-17039
 8
     *****************************************************************
 9
                       TRANSCRIPT OF TRIAL PROCEEDINGS
10            HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                       UNITED STATES DISTRICT JUDGE
11                        DAY 8, MORNING SESSION

12
     APPEARANCES:
13
     FOR THE PLAINTIFF:            BACHUS & SCHANKER, LLC
14                                 BY:  DARIN L. SCHANKER, ESQ.
                                        J. KYLE BACHUS, ESQ.
15                                 101 W. Colfax Ave., Suite 650
                                   Denver, CO 80202
16
                                   GIBBS LAW GROUP, LLP
17                                 BY:  KAREN B. MENZIES, ESQ.
                                        ANDRE MURA, ESQ.
18                                 6701 Center Drive West, 14th Floor
                                   Los Angeles, CA 90045
19
                                   DAVID F. MICELI, LLC
20                                 BY:  DAVID F. MICELI, ESQ.
                                   P.O. Box 2519
21                                 Carrollton, GA 30112-0046

22                                 PENDLEY BAUDIN & COFFIN
                                   BY:  CHRISTOPHER L. COFFIN, ESQ.
23                                      JESSICA A. PEREZ, ESQ.
                                   2505 Energy Centre
24                                 1100 Poydras St.
                                   New Orleans, LA 70163
25
```

```
 1                                  GAINSBURGH BENJAMIN DAVID
                                    MEUNIER & WARSHAUER
 2                                  BY:  M. PALMER LAMBERT, ESQ.
                                    2800 Energy Centre
 3                                  1100 Poydras St.
                                    New Orleans, LA 70163
 4
                                    MARTZELL, BICKFORD & CENTOLA
 5                                  BY:  LAWRENCE J. CENTOLA, III, ESQ.
                                    338 Lafayette St.
 6                                  New Orleans, LA 70130

 7
     FOR THE DEFENDANT:             SHOOK HARDY & BACON
 8                                  BY:  HILDY M. SASTRE, ESQ.
                                    201 Biscayne Blvd., Suite 3200
 9                                  Miami, FL 33131

10                                  SHOOK HARDY & BACON
                                    BY:  JON A. STRONGMAN, ESQ.
11                                       ADRIENNE BYARD, ESQ.
                                    2555 Grand Blvd.
12                                  Kansas City, MO 64108

13                                  IRWIN FRITCHIE URQUHART & MOORE
                                    BY:  DOUGLAS J. MOORE, ESQ.
14                                       KELLY E. BRILLEAUX, ESQ.
                                    400 Poydras St., Suite 2700
15                                  New Orleans, LA 70130

16                                  DLA PIPER
                                    BY:  ILANA H. EISENSTEIN, ESQ.
17                                  One Liberty Place
                                    1650 Market St., Suite 5000
18                                  Philadelphia, PA 19103-7300

19
     Official Court Reporter:       Karen A. Ibos, CCR, RPR, CRR, RMR
20                                  500 Poydras Street, B-275
                                    New Orleans, Louisiana 70130
21                                  (504) 589-7776

22

        Proceedings recorded by mechanical stenography, transcript
23   produced by computer.

24

25
```

OFFICIAL TRANSCRIPT

<u>I N D E X</u>

| | |
|---|---|
| <u>WITNESSES FOR THE DEFENDANT:</u> | <u>PAGE/LINE:</u> |

<u>DR. ZOE LARNED</u> - (By videotaped deposition)

| | |
|---|---|
| Direct Examination by Mr. Moore | 1934/22 |
| Cross-Examination by Mr Schanker | 1971/5 |
| Redirect Examination by Mr. Moore | 2001/16 |

|  |  |
|---|---|
| 09:03:30  1 | for damage caused by their products."  We believe that the |
| 09:03:34  2 | threshold question and the threshold issue for the plaintiffs to |
| 09:03:38  3 | prove is that the plaintiff has, in fact, suffered damage caused by |
| 09:03:42  4 | this product, and we think that the first interrogatory should be |
| 09:03:47  5 | medical causation, and we wanted to memorialize our objection to |
| 09:03:51  6 | the ordering of the interrogatories in the verdict form. |
| 09:03:53  7 |      THE COURT:  Thank you.  Ms. Eisenstein. |
| 09:03:58  8 |      MS. EISENSTEIN:  Good morning, Your Honor.  Your Honor, |
| 09:04:01  9 | we have an objection to the final sentence of the charge on statute |
| 09:04:06 10 | of limitations.  The inclusion of the sentence, "The ultimate issue |
| 09:04:11 11 | is the reasonableness of the plaintiff's action or inaction in |
| 09:04:14 12 | light of her education, intelligence, and severity of the |
| 09:04:18 13 | symptoms."  We believe that under the *Thibodeaux* and *Durden* |
| 09:04:22 14 | decisions that the ultimate issue is whether the plaintiff |
| 09:04:27 15 | exercised reasonable diligence and that they rejected the |
| 09:04:33 16 | education, intelligence, and severity of the symptoms excuse that |
| 09:04:36 17 | requirement. |
| 09:04:36 18 |      We also objected to the failure of the charge to include |
| 09:04:40 19 | language that the defendants had proposed in its proposed charge, |
| 09:04:45 20 | particularly if that sentence were to be included, which is that |
| 09:04:49 21 | plaintiff does not need to have all of the facts or evidence to |
| 09:04:52 22 | prove her claim to trigger her responsibility to inquire into a |
| 09:04:57 23 | possible claim.  For example, there's no requirement that an |
| 09:04:59 24 | attorney or physician inform plaintiff of a possible claim before |
| 09:05:03 25 | filing a lawsuit. |

```
09:05:05  1                  Thank you, Your Honor.
09:05:06  2                  THE COURT:  Thank you.  All right.  Is there any other
09:05:12  3     preliminary matters that we can address prior to beginning court?
09:05:21  4                  MR. LAMBERT:  Not yet, Your Honor.  We are filing, as we
09:05:25  5     discussed this morning, a renewed motion in limine regarding
09:05:30  6     suggestions during closing of causation between drugs other than
09:05:36  7     Taxotere and PCIA or permanent hair loss.  That should be filed
09:05:43  8     momentarily and then we can take up the argument on that.
09:05:48  9                  THE COURT:  Do we have an e-mail copy of it?
09:05:51 10                  MR. LAMBERT:  I am not sure what's taking so long, Judge,
09:05:55 11     but there is a final version.  I know they're downstairs filing it
09:06:00 12     right now.
09:06:01 13                  THE COURT:  Okay.  Ms. Sastre.
09:06:02 14                  MS. SASTRE:  Your Honor, yeah, we have a few moments so
09:06:04 15     what the heck.  Let's kill a little time.  Of course, we can all
09:06:08 16     wait for this to be filed.  I think I can completely shortcut this
09:06:12 17     issue and resolve it for the Court.
09:06:14 18                  So the question is, what have all of the experts said
09:06:16 19     with regard to these other drugs, these other chemotherapy drugs?
09:06:21 20     It was obviously something we discussed with Your Honor going into
09:06:24 21     trial.  We understood what your ruling was, we abided by that
09:06:28 22     ruling, and we talked about all of it in terms of there are
09:06:31 23     reports.  However, and I will show you the testimony, it's just a
09:06:35 24     couple of questions and answers, Your Honor.  Dr. Tosti is
09:06:39 25     different because the exchange with Dr. Tosti, she did use the
```

OFFICIAL TRANSCRIPT

09:06:44  1    words, "cause with regard to Taxol, Adriamycin, and Cytoxan."  And
09:06:48  2    I would be happy to read that to you, Your Honor, on page 710 from
09:06:52  3    the transcript, line 23, quote, from Dr. Tosti, "I am not hiding
09:06:58  4    that Adriamycin and Cytoxan can cause, I'm telling the truth.  So
09:07:03  5    they can cause.  And if you put Adriamycin and Cytoxan in a box,
09:07:08  6    it's exactly the same as you do with Taxotere."  And then she goes
09:07:15  7    on.
09:07:16  8             And the question was, in fact, I probably should have
09:07:18  9    read that first, "It's not just that there are reports of patients
09:07:22 10    taking Adriamycin and having PCIA, you've personally authored a
09:07:27 11    paper, which we haven't spent much time on, where you have reported
09:07:30 12    that work in that paper?"  And in response to that, I didn't even
09:07:34 13    use the word "cause."  She said, "Yes, I am not hiding that they
09:07:37 14    can cause."  And, again, the question was specifically with regard
09:07:40 15    to PCIA, not hair loss.
09:07:43 16             On Taxol, Your Honor, Dr. Tosti was asked on page 716,
09:07:48 17    line 15:  "You'd agree with me Taxol causes hair loss, true?"  Her
09:07:55 18    answer:  "Taxol can cause both temporary hair loss, which is
09:07:58 19    common, and permanent chemotherapy alopecia."
09:08:02 20             So I think that there should be no question in the
09:08:07 21    Court's mind that that is, in fact, what the evidence would support
09:08:11 22    at this time and that is a statement which would be accurate in
09:08:14 23    terms of Dr. Tosti, which is exactly how we intend to talk about it
09:08:18 24    with the jury.
09:08:19 25             THE COURT:  May I see?

| | | |
|---|---|---|
|09:08:20|1|            MS. SASTRE:  Yes, of course.  It's the two tabs.|
|09:09:34|2|       (COURT REVIEWS TRANSCRIPT.)|
|09:09:47|3|            MS. SASTRE:  The only thing -- I'm sorry, Palmer -- I was|
|09:09:51|4|just going to add, just very briefly, Your Honor.  I mean, we are|
|09:09:52|5|in closing argument, you know, listen, lawyers get up there and|
|09:09:54|6|they make arguments and, you know, as judges always say, it's going|
|09:10:00|7|to be to whatever that jury's recollection is, and here, I think,|
|09:10:03|8|we are on really the firmest of firm ground on Dr. Tosti that's|
|09:10:08|9|all.|
|09:10:08|10|            THE COURT:  I understand, Ms. Sastre.  What I was|
|09:10:10|11|concerned about, I did not want you to start arguing and for me to|
|09:10:14|12|have an objection.  And that's what I do not want to occur.|
|09:10:18|13|            MS. SASTRE:  Me, too.  Okay.|
|09:10:19|14|            THE COURT:  So if there is an issue, I want to flush it|
|09:10:22|15|out prior because I just don't want that to happen.|
|09:10:27|16|            MS. SASTRE:  Yes.  And I will tell, Your Honor, and I|
|09:10:28|17|appreciate that in advance, we will describe Dr. Tosti's testimony|
|09:10:33|18|just as she testified to here.  And to the extent that we refer to|
|09:10:37|19|kind of, you know, all of the experts generically, then we'll go|
|09:10:40|20|back to what is accurate that they've conceded in their reports.|
|09:10:43|21|            So thank you, Your Honor.|
|09:10:58|22|            MR. LAMBERT:  Your Honor, in response to what Ms. Sastre|
|09:11:18|23|just said, we have worked in this case for a long time on causation|
|09:11:23|24|issues.  And the plaintiffs filed a motion for summary judgment,|
|09:11:31|25|that's Document 10928, regarding affirmative defenses concerning|

OFFICIAL TRANSCRIPT

```
09:11:36   1   alternative causes.  In denying that motion, Your Honor
09:11:43   2   specifically stated that there needed to be a reliable foundation
09:11:48   3   for arguing that a particular drug can cause or causes a particular
09:11:54   4   injury.  Plaintiffs then filed a motion in limine, that's
09:11:58   5   Document 12909, to prohibit the use of unreliable evidence to
09:12:04   6   support claims of alternative causation or questioning which
09:12:10   7   misconstrues the applicable burden of proof.
09:12:15   8           Well, in denying that, Your Honor stated defendant must
09:12:20   9   have a good faith basis to introduce such evidence.  Additionally,
09:12:27  10   this has been previously addressed in the Court's Daubert rulings,
09:12:33  11   that's Document 13260, order and reasons of September 13, 2021.
09:12:38  12           Following that, Your Honor, we had a charge conference
09:12:44  13   yesterday evening that lasted some time into the night, and
09:12:50  14   defendants requested changes to the causation section of the
09:12:54  15   instructions, included specific requirements for proof to a
09:13:00  16   reasonable degree of medical probability that Taxotere can cause
09:13:05  17   permanent hair loss.  Now, I understand from Ms. Sastre's quotes to
09:13:13  18   the trial record that there are statements of our specific
09:13:18  19   causation expert, Dr. Tosti, and there are statements and
09:13:25  20   admissions of case reports and attribution by authors between
09:13:36  21   particular drugs and the potential outcome of persistent alopecia,
09:13:42  22   permanent alopecia, or PCIA.
09:13:45  23           But the fact of the matter is, is that if somebody is
09:13:48  24   going to come up here and argue to the jury that particular
09:13:53  25   evidence meets the causation standard of "can cause" or "causes"
```

1  between a particular drug and an injury, they need to meet the
2  standard that's going to be in the instructions.  And if not, it's
3  going to cause serious confusion of the issues with the jury.
4      And without a reliable basis to say those words "can
5  cause" under the *Burst* case in this district, we believe that the
6  defendants should be precluded from saying those words "cause" or
7  "can cause" between any other drug other than Taxotere and
8  permanent hair loss or PCIA.
9      The plaintiffs also are filing a motion, I'm sorry, Your
10  Honor, that it's not in the record yet, but that will memorialize
11  more fully our arguments in this regard.  Thank you.
12      THE COURT:  I remember spending a great deal of time on
13  this in pretrial motion practice, and what I indicated at that time
14  is plaintiffs have the burden of proof and it's absolutely -- that
15  the defendants don't have the burden of proof in this matter.  I am
16  going to deny plaintiff's motion.  I think what needs to occur at
17  this time is the attorneys need to argue the facts that have been
18  presented to the jury if Dr. Tosti does say in her testimony that
19  it "can cause."  Now, she talks about it being very rare, she talks
20  about whether or not it can cause Grade 2 alopecia, those things.
21  And I think that's perfectly appropriate to be argued to the jury,
22  and the jury will have to make that determination as to whether or
23  not there was an adequate analysis of causation and that's
24  something that can be argued to the jury.
25      But I am not going to preclude defense counsel from

```
09:16:02  1   arguing what witnesses, plaintiff's witnesses have conceded.  Okay.
09:16:10  2              MS. SASTRE:  Thank you, Your Honor.
09:16:12  3              THE COURT:  And, you know, your motion will be filed in
09:16:13  4   the record for a later time.
09:16:19  5              Okay.  And we will be at recess until we have an accident
09:16:21  6   report.
09:16:23  7              THE DEPUTY CLERK:  All rise.
09:16:24  8         (WHEREUPON, A RECESS WAS TAKEN.)
09:16:24  9         (WHEREUPON, THE FOLLOWING PROFFER WAS MADE OUTSIDE OF THE
09:16:24 10          PRESENCE OF THE COURT.)
09:19:58 11              MS. BYARD:  Adrienne Byard, we are making our proffer of
09:20:02 12   evidence based on testimony and exhibits excluded under the Court's
09:20:05 13   ruling on the Motion in Limine No. 13, which is record Document
09:20:09 14   13260.
09:20:10 15              This evidence pertains to FDA and is probative of
09:20:14 16   Sanofi's efforts to take reasonable care to provide an adequate
09:20:18 17   warning.  The evidence would have shown that with FDA's approval of
09:20:23 18   Taxotere for advanced metastatic breast cancer in 1996, Sanofi
09:20:28 19   submitted data to the Oncology Drugs Advisory Committee on alopecia
09:20:33 20   twice before approval.  And that in considering the safety profile
09:20:37 21   of Taxotere, the ODAC never once raised concerns about the issue of
09:20:43 22   alopecia.  That would have also included the FDA's approval of the
09:20:49 23   medicine's labeling to include that hair generally grows back.
09:20:53 24   Those were Defense Exhibits 215 and 111.
09:20:59 25              Further, the evidence excluded would have shown that in
```

|  |  |
|---|---|
| 09:21:02 1 | March 2004, Sanofi submitted a supplemental NDA for the adjuvant |
| 09:21:09 2 | approval of Taxotere in node-positive breast cancer and that |
| 09:21:12 3 | included within its submission were the TAX316 clinic trial |
| 09:21:17 4 | results.  In particular, the evidence would have shown that Sanofi |
| 09:21:21 5 | proposed to include under other persistent reactions that 3.2 |
| 09:21:27 6 | percent of TAC patients showed alopecia ongoing into the follow-up |
| 09:21:31 7 | period. |
| 09:21:33 8 | The evidence further would have showed that Sanofi |
| 09:21:36 9 | proposed to add to the adverse reaction section of the label |
| 09:21:40 10 | information about persistent alopecia.  The evidence would have |
| 09:21:44 11 | showed that Sanofi resubmitted this exact proposal to FDA in June |
| 09:21:48 12 | of 2004 and twice in August of 2004.  And that after an extensive |
| 09:21:53 13 | series of communications between FDA and Sanofi, FDA deleted |
| 09:21:58 14 | Sanofi's proposed inclusion of the TAX316 language and the |
| 09:22:05 15 | identification of alopecia as another persistent reaction.  The |
| 09:22:07 16 | exhibits would have demonstrated these facts were Defense 75, |
| 09:22:14 17 | Defense 241, 400C, 333, 209, 76, Defense 317, Defense 287, Defense |
| 09:22:31 18 | 400 Part D, 102, 272, 317, 400 Part E. |
| 09:22:46 19 | Sanofi makes a second proffer of evidence based on |
| 09:22:51 20 | exhibits it was not permitted to use in the examination of |
| 09:22:56 21 | Dr. Laura Plunkett.  The Court will recall from Sanofi's prior |
| 09:23:00 22 | letter briefing on the issue that Dr. Plunkett offered different |
| 09:23:05 23 | bases for her opinion on the sufficiency of Sanofi's labeling at |
| 09:23:10 24 | trial than she had in her expert report.  Had Sanofi been permitted |
| 09:23:15 25 | to cross-examine Dr. Plunkett about the original bases of her |

```
 1
 2
 3                      REPORTER'S CERTIFICATE
 4
 5         I, Karen A. Ibos, CCR, Official Court Reporter, United
 6   States District Court, Eastern District of Louisiana, do hereby
 7   certify that the foregoing is a true and correct transcript, to the
 8   best of my ability and understanding, from the record of the
 9   proceedings in the above-entitled and numbered matter.
10
11
12                            ___/s/ Karen A. Ibos_____
13                            Karen A. Ibos, CCR, RPR, CRR, RMR
14                            Official Court Reporter
15
16
17
18
19
20
21
22
23
24
25
```