# EXHIBIT 1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


IN RE:  TAXOTERE (DOCETAXEL)    *
PRODUCTS LIABILITY LITIGATION   *      16-MD-2740
                                *
                                *      Section H
Relates to:  16-CV-17039        *
                                *      July 29, 2021
                                *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *


                        ORAL ARGUMENT BEFORE
                   THE HONORABLE JANE T. MILAZZO
                    UNITED STATES DISTRICT JUDGE


Appearances:

For the Plaintiffs:        Gainsburgh Benjamin David Meunier
                             & Warshauer, LLC
                           BY:  M. PALMER LAMBERT, ESQ.
                           1100 Poydras Street, Suite 2800
                           New Orleans, Louisiana 70163


For the Sanofi             DLA Piper, LLP
Defendants:                BY:  ILANA H. EISENSTEIN, ESQ.
                           1650 Market Street, Suite 5000
                           Philadelphia, Pennsylvania 19103


Official Court Reporter:   Toni Doyle Tusa, CCR, FCRR
                           500 Poydras Street, Room B-275
                           New Orleans, Louisiana 70130
                           (504) 589-7778



Proceedings recorded by mechanical stenography using
computer-aided transcription software.
```

1                              **INDEX**

2                                                               Page

3    Oral Argument

4          Ilana H. Eisenstein, Esq.                              3

5          M. Palmer Lambert, Esq.                                9

6          Ilana H. Eisenstein, Esq.                             12

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                         PROCEEDINGS
 2                       (July 29, 2021)
 3          THE COURT:  Let's call the case.
 4          THE DEPUTY CLERK:  This is in the matter of *Taxotere*,
 5   MDL 2740.  Would counsel arguing please make your appearances
 6   for the record.
 7          MS. EISENSTEIN:  Good morning, Your Honor.  Ilana
 8   Eisenstein on behalf of the defendant, Sanofi.
 9          MR. LAMBERT:  Good morning, Your Honor.  Palmer
10   Lambert on behalf of Elizabeth Kahn.
11          THE COURT:  Ms. Eisenstein, it's your renewal of a
12   renewal of a renewal.
13          MS. EISENSTEIN:  Do you want me to keep my mask on,
14   Your Honor?
15          THE COURT:  You may take the mask off, yes.  Thank
16   you.
17          MS. EISENSTEIN:  Thank you, Your Honor.  May it
18   please the Court.  Your Honor, *Thibodeaux* established a high
19   bar for the plaintiff to meet her burden to show *contra non*
20   *valentem*, but *Thibodeaux* is a "no inquiry" case, as Your Honor
21   knows.  The prescriptive period, the Court held, ends once the
22   plaintiff has notice enough to call for inquiry, and the
23   question is whether the cause of her injury was knowable in the
24   exercise of reasonable inquiry.
25                In *Thibodeaux* the Court held that plaintiff
```

09:29   would have found the following evidence relevant to what a reasonable inquiry by plaintiffs would have uncovered, and they cited the various forms of evidence -- the "Taxotears" website, the CBS news story, etc. -- that's cited in the master complaint. In light of that key information, the Court held that diligence required that Taxotere be explored -- Taxotere be explored -- as a possible explanation for hair loss.

Sanofi filed a motion for reconsideration at that point, as Your Honor knows, and this Court distinguished the plaintiffs in *Thibodeaux* because they were "no inquiry" plaintiffs. They had done nothing and performed no investigation into their injuries. Your Honor found that here, by contrast, Ms. Kahn had investigated her injury because she consulted with her doctor and was told that her age was causing her hair loss.

*Durden* came out in the meantime, and *Durden* made clear that that statement by Dr. Roberie that age was potentially a cause of her hair thinning does not toll the prescriptive period. Making that simple inquiry, asking that one question does not avoid summary judgment. Rather, in *Durden* the Fifth Circuit applied *Thibodeaux* and found that the key information cited in the master complaint again required the plaintiff to specifically consider Taxotere -- Taxotere -- as the potential root cause and that causes of action were reasonably knowable. It refused to distinguish *Thibodeaux*

09:31     1  along the inquiry/no inquiry line.
          2           **THE COURT:** In *Durden* did she do any inquiry?
          3           **MS. EISENSTEIN:** Yes. So in *Durden* --
          4           **THE COURT:** What did she do?
          5           **MS. EISENSTEIN:** So she went to her dermatologist and
          6  she said -- there were two things she did. She claimed her
          7  case was different because her doctor diagnosed her with female
          8  pattern hair loss, just like Roberie -- actually, it wasn't in
          9  response to an inquiry. It was just Roberie offered that she
         10  thought her hair thinning was due to age.
         11           It's that same fact pattern. The dermatologist
         12  that Durden went to actually gave her a specific diagnosis of
         13  female pattern hair loss, and she claimed that she also engaged
         14  in unspecified research into the permanency of her hair loss.
         15  The Court in *Durden* easily dismissed that diagnosis and the
         16  research. It's not clear why that diagnosis makes any relevant
         17  difference, and there are two reasons for that.
         18           One is, just like here, there was no evidence
         19  that any doctor filtered in that her persistent hair loss was
         20  singularly attributable to female pattern hair loss to the
         21  exclusion of other causes.
         22           **THE COURT:** Excuse me. If you are on the line, would
         23  you please put your phone on mute. Thank you.
         24           **MS. EISENSTEIN:** What's more, just like in Ms. Kahn's
         25  case, in *Durden* there was no evidence that Durden herself

09:32

1 reasonably believed that her persistent hair loss was caused by
2 female pattern baldness.  Rather, the Court held that summary
3 judgment was warranted because Durden failed to consider
4 Taxotere as a potential cause of her persistent hair loss.  She
5 made no reasonable inquiry to determine Taxotere's effect on
6 persistent hair loss.
7             In this Court's prior decision, you have looked
8 at whether or not there was an inquiry into the cause, but
9 *Durden* clarifies that the inquiry that constitutes reasonable
10 diligence is something far more specific.  It's an inquiry
11 about Taxotere's potential cause of a hair loss, and there's a
12 good reason why.
13             It's distinguishable from the cases that
14 plaintiffs cite where it wasn't reasonably knowable what the
15 cause was; for example, the *Hoerner* case or the *Sharkey* case.
16 In those cases the courts have found that it wasn't knowable
17 whether the eye infection was being caused by bacteria or
18 something to do with contact lenses, or whether Reye's syndrome
19 was due to the use of the medication or whether it was
20 something like polio, there's nothing you can do about it.
21             In this case, however, the Court looked at the
22 information.  The Fifth Circuit looked at the information that
23 was out there regarding Taxotere and found it was reasonably
24 knowable.  Here Ms. Kahn admitted she did not investigate
25 Taxotere as the cause of persistent hair loss.

09:34  1                  "Have you ever talked to any health care
       2   provider about whether Taxotere caused or contributed to your
       3   hair thinning?"
       4                  "No."
       5                  She did not believe that what she described as
       6   balding was due to age either.  She talked a few times in her
       7   deposition transcript about her interaction with Dr. Roberie
       8   and she acknowledged the comment, "Well, as you get age, your
       9   hair gets thinner."  That was Dr. Roberie's comment.
      10                  Ms. Kahn testified she did not believe this was
      11   the cause.  She said, "I was 50 at the time, and most
      12   50-year-olds' hair don't thin.  80, maybe, but not 50.  So when
      13   she said that, I was a little taken aback and I dropped it."
      14                  Later she was asked, "Dr. Roberie was answering
      15   a question that you had air thinning," and she said --
      16   referring to the age thinning, she provided that answer, that
      17   it was due to age -- "I think she was trying to be kind."
      18                  "Even despite what Dr. Roberie said, you don't
      19   even think it's possible that hair thinning is due to age or
      20   menopause?"  That last part is given for context.
      21                  "Yes."
      22                  She distinguished in her mind, in the
      23   deposition, the difference -- Ms. Kahn did -- between what she
      24   described as hair thinning and what she described her own
      25   condition as, as hair balding.  She said, "I don't have hair

09:35   1  thinning.  I have hair balding.  It's two different things."
        2          She was asked, "Well, you said Dr. Roberie
        3  thought that hair thinning was a natural part of women's aging,
        4  correct?"
        5          "Yes, she did say that, but she didn't explain
        6  hair balding.  She talked about hair thinning.  As I said,
        7  those are two different things."
        8          She further testified that she attributed her
        9  initial hair loss to Taxotere.
       10          So in this case the fact that Dr. Roberie
       11  offered hair thinning is related to age and menopause does not
       12  void summary judgment.  Rather, just like in the *Durden* case,
       13  whatever that diagnosis significance is, it certainly is not
       14  singularly attributable, the hair loss, to aging or to
       15  menopause.  Rather, Durden, in her own mind, discounted that
       16  explanation.  She attributed her hair loss to Taxotere and/or
       17  the combination of chemotherapy agents.  Her obligation was to
       18  investigate Taxotere specifically as the cause of her injury,
       19  and she did not.  Rather, she waited six years to file suit,
       20  well past the one-year statute of limitation.
       21          I know that it is extraordinarily unusual to be
       22  here on multiple motions for reconsideration, Your Honor.
       23          **THE COURT:**  It sure is.
       24          **MS. EISENSTEIN:**  It certainly is an extraordinary
       25  posture, but I think that in this case the procedural history

```
09:36   1  does warrant Your Honor's reconsideration of the summary
        2  judgment motion because the Fifth Circuit has in the interim
        3  provided the succession of rulings that makes clear that
        4  Ms. Durden's inquiry did not suffice to toll the prescriptive
        5  period.
        6              THE COURT:  Thank you.
        7                  Mr. Lambert.
        8              MR. LAMBERT:  Yes, Your Honor.  Good morning.  I'm
        9  glad to make it here through the traffic.
       10              THE COURT:  If you want to take your mask -- for oral
       11  argument, it's very difficult.
       12              MR. LAMBERT:  Sure.  May it please the Court.
       13  Your Honor, Palmer Lambert on behalf of Ms. Kahn and the PSC.
       14                  Your Honor, for the third time Sanofi asks this
       15  Court to reconsider its ruling denying summary judgment on
       16  liberative prescription.  The only new information that Sanofi
       17  presents to this Court is the unpublished decision of the
       18  Fifth Circuit in *Durden*, which Sanofi itself acknowledges has
       19  no precedential value.  Indeed, *Durden* does not change this
       20  Court's well-reasoned analysis that specifically distinguishes
       21  the facts in Ms. Kahn's case for Ms. Durden's.
       22                  Application of the liberative prescription rule
       23  is to rid a defendant from claims that have become stale, has
       24  always involved a fact-intensive analysis, and no two cases are
       25  exactly the same in terms of the facts.  The Supreme Court has
```

09:38

1 said many times, the Louisiana Supreme Court, that prescriptive
2 statutes are to be strictly construed against prescription in
3 favor of the obligation sought to be distinguished.
4     In federal court cases, the Rule 56 burden on a
5 defendant to show no genuine issue of material fact does not
6 shift to the plaintiff.  That is an issue that the
7 Fifth Circuit has declined to address now twice and is
8 inconsistent with opposing counsel's statement that it's her
9 burden to overcome.
10     Additionally, the Fifth Circuit ruled without
11 the benefit of expert reports.  The Court in this case has seen
12 reports and issued *Daubert* opinions in this matter.  The Court
13 has seen three dermatologists on Sanofi's side of the "V" agree
14 with Dr. Roberie.  Thus a jury could easily find that Ms. Kahn
15 reasonably relied on Dr. Roberie's misdiagnosis, as bolstered
16 by her other physicians' inability to diagnose PCIA or advise
17 her that she sustained an injury as a result of Taxotere.  She
18 was even encouraged to take Biotin by a dermatologist, which
19 certainly is not a suggestion of permanency.
20     In this case there are genuine factual disputes
21 as to whether the company had sufficient knowledge to update
22 its warnings, whether plaintiff can prove general causation,
23 whether Ms. Kahn even has PCIA or permanent hair loss caused by
24 Taxotere as opposed to other potential alternatives, and it's
25 simply illogical that those factual disputes can remain and yet

09:40  1  this case can be prescribed based on the defendants' analysis.
2  It's also hard to imagine how Ms. Kahn's case
3  can be stale and untimely as to Sanofi if, according to Sanofi,
4  she never even had the injury that she claims she had.  I think
5  the *Sharkey* case does provide persuasive authority even though
6  it's a Louisiana First Circuit case.  If defendants were
7  correct, it is likely that all asbestos and benzene cases would
8  be incorrectly determined by the Louisiana Supreme Court
9  because they would be prescribed long before there was ever a
10 diagnosis.
11 Finally, it's important to judge the
12 reasonableness of Ms. Kahn's action or inaction in light of all
13 the circumstances outlined by the Supreme Court, and those
14 factual issues are relevant to the *contra non valentem*
15 analysis.  A company that writes an email internally along the
16 lines of "This is going to be fun submitting a four-year-old
17 label change to the FDA now" is not the kind of good actor that
18 should reap the benefits of calling Ms. Kahn's claims stale,
19 nor should a company that wipes the internet of Facebook
20 references to permanent hair loss and reports those users to
21 the social media entity in an attempt to get them kicked off of
22 the social media platform.
23 It's also important to note that unlike the
24 Canadian news outlet *Globe and Mail* -- which I had never heard
25 of before this litigation -- and unlike medical journals which

09:41

1  require subscriptions in order to see the information even if
2  you can understand it, Facebook was the Instagram and Snapchat
3  of the 2008 to 2015 era.
4      This case is simply not the same as Durden's
5  case, where she heard from a doctor who testified that she
6  understood her hair was not likely coming back.  This is
7  different than that.  We can't judge Ms. Kahn's actions in a
8  vacuum.  We have to consider all of the circumstances of the
9  *contra non valentem* test.
10     We have to consider that she met with her
11 doctors for multiple years after she took Taxotere, among the
12 multiple chemotherapy agents that she took in her clinical
13 trial.  Not once did any doctor over those years suggest that
14 she had a permanent injury caused by Taxotere.  It's not simply
15 that she stuck her head in the sand; she made a reasonable
16 inquiry under the circumstances.  This Court should agree with
17 itself for the third time in denying reconsideration.
18     **THE COURT:**  Thank you.
19     **MR. LAMBERT:**  Thank you.
20     **THE COURT:**  Ms. Eisenstein.
21     **MS. EISENSTEIN:**  Plaintiffs' arguments to a tee were
22 raised in *Thibodeaux*.  They were raised again and rejected in
23 that case.  They were raised and rejected in *Durden*.  That
24 includes the argument about whether or not there was a
25 diagnosis of PCIA, whether or not --

09:43

**THE COURT:** *Thibodeaux* and *Durden* were my decisions. They affirmed what I already did. I understand that, and I understand what my analysis was for those, actually, four or five cases that now have been dismissed on prescriptive grounds.

**MS. EISENSTEIN:** Absolutely, Your Honor, and the Fifth Circuit did affirm --

**THE COURT:** Uh-huh.

**MS. EISENSTEIN:** -- your decisions. In doing so, it did something else, which was an affirmative decision, but it also clarified the standard because the plaintiffs raised not only the argument they raised before Your Honor, but some of the very arguments, including in the 28(j) letter that was filed before *Durden* was decided, to try to distinguish *Thibodeaux*.

In *Durden* one of the things that changed was they got the *Thibodeaux* decision. They had raised all those same arguments in *Durden*.

They filed the 28(j) letter trying to say: Whoa, whoa, whoa. *Thibodeaux* doesn't control because Ms. Durden received the female pattern baldness diagnosis, because Ms. Durden had done research, because Ms. Durden had grown some of her hair and thought it may come back.

Each and every one of those, the Fifth Circuit walked through in the *Durden* opinion and said: No, that does

09:45

1   not distinguish this case from *Thibodeaux*.  You don't get out
2   from under that.
3   　　　　　I think Mr. Lambert said it lacks precedential
4   value.  I think I would dispute that.  While it is an
5   unpublished, nonprecedential opinion, *Thibodeaux* is certainly a
6   precedential opinion, and *Durden* was the Fifth Circuit
7   application of that opinion.  I think that, in clarifying what
8   the *Thibodeaux* standard is, that certainly has precedential
9   value here, if not extreme persuasive value.
10   　　　　　The question here is not whether the inquiry was
11   reasonable.  That's really not the question.  The question is
12   whether the cause of action was knowable in view of reasonable
13   diligence.  I think that's one key difference.  To highlight
14   that, to hold otherwise would be to say there would be two
15   different standards for the discovery rule based on whether a
16   plaintiff asked a single question or received once information
17   from her doctor that didn't say exclude the possibility of
18   Taxotere, but rather gave a plausible or possible diagnosis.
19   　　　　　*Durden* said that's just not enough.  The
20   plaintiff has to do more.  They need to investigate.  In light
21   of the information that was publicly available about Taxotere
22   and the obviousness of the injury, they were obligated to do
23   more and to investigate Taxotere specifically as the cause, and
24   Ms. Durden simply failed to do that.  Thank you, Your Honor.
25   　　　　　**THE COURT:**  I'm going to put my state court hat on

09:46

1  because we have a trial looming and lots of moving parts at
2  this point and I'm going to render from the bench, which is not
3  something that I frequently do.
4         In document 12805, I previously outlined the
5  legal standard on interlocutory judgments, and I'm going to
6  adopt that standard for today.  Before me is the second motion
7  to reconsider and the third time that I look at Ms. Kahn's
8  case.
9         I am reminded early on in this litigation
10 Judge Engelhardt, when he was presented with an open
11 prescriptive motion that all of these cases were prescribed,
12 said no.  Prescription, under Louisiana law, is a factually
13 intensive basis.
14        I think there's still factual issues for the
15 jury to consider, and this is what my thought process is.  I
16 specifically note that throughout this litigation the defendant
17 has pointed to multiple causes of alopecia.  Most are not tort
18 related.  Of interest is age-related alopecia.  What we hear
19 from countless experts is there are reasons that have nothing
20 to do with improper conduct that cause alopecia in women.  That
21 is a plausible cause of alopecia.
22        Here, the plaintiff sought and investigated a
23 cause for ongoing alopecia and was advised by her gynecologist
24 that she was not the victim of a tort, but rather the aging
25 process, and according to plaintiff she dropped it.  Now, did

```
09:48    1   she take vitamins?  Did she use other products to try to
         2   facilitate hair growth?  She did that, but she dropped it.
         3   Whether or not that was reasonable, to accept the opinion of
         4   one physician, I think is for the jury to decide, so the motion
         5   is denied.
         6             Now, I really would like to talk to everybody
         7   off the record.  We are going to have a quick status
         8   conference.  Maybe we can just go into the jury room.  Thank
         9   you.  Court is adjourned.
        10             THE DEPUTY CLERK:  All rise.
        11             (Proceedings adjourned.)
        12                             * * *
        13                         CERTIFICATE
        14             I, Toni Doyle Tusa, CCR, FCRR, Official Court
        15   Reporter for the United States District Court, Eastern District
        16   of Louisiana, certify that the foregoing is a true and correct
        17   transcript, to the best of my ability and understanding, from
        18   the record of proceedings in the above-entitled matter.
        19
        20
        21                           /s/ Toni Doyle Tusa
                                     Toni Doyle Tusa, CCR, FCRR
        22                           Official Court Reporter
        23
        24
        25
```