UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO: *Plaisance v. Hospira, Inc., et al.*, Case No. 2:18-cv-08086 | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY OF ELLEN FEIGAL, M.D.**

**INTRODUCTION**

Defendants moved to exclude or limit certain opinions of Ellen Feigal, M.D. ("Dr. Feigal"). Dr. Feigal offers her opinions in this case are as a Board Certified physician in Internal Medicine and in Medical Oncology with thirty years of specific experience in the fields of clinical trial design and investigation, pharmacological product development, pharmacovigilance, and medical literature and review, as stated in detail in her Expert Report.[1]

Dr. Feigal's opinions offered in this litigation are squarely within and based on her education and experience in Medical Oncology, clinical research, clinical trial design, product development and pharmacovigilance, medical literature research and review, as well as informed consent principles that are not plaintiff specific. Dr. Feigal spent twelve years at the National Cancer Institute, including seven years as the Deputy Director and Acting Director of the Division of Cancer Treatment and Diagnosis. She is eminently qualified to offer opinions on whether docetaxel can cause permanent chemotherapy-induced alopecia, that is general causation. Indeed, Dr. Feigal's knowledge includes an understanding of the scientific methods for evaluating

---

[1] Ex. 1, Expert Report of Ellen G. Feigal, M.D., Mar. 23, 2020 at 1-7. On July 9, 2021, Plaintiff adopted Dr. Feigal's expert report in the Hughes, Stewart and Sanford matters for efficiency purposes.

1

evidence regarding causation of an adverse event related to a specific pharmaceutical drug, including the assessment of singling out one drug in a multi-drug regimen.

Dr. Feigal's opinions are not only relevant but are necessary to overcome potential juror bias and skepticism regarding whether permanent hair loss is something that should be considered in the risk/benefit discussion between a physician and her patient—a skepticism enhanced by Defendants' repeated assertion that these plaintiffs could very well be dead if not for Taxotere. Dr. Feigal bases her opinions on her decades of experience and involvement in and overseeing clinical trials, and her assessment of clinical trial and observational study data. Indeed, the Court has twice previously accepted Dr. Feigal as expert "in clinical research, clinical study design and interpretation, and general causation," based upon the same opinions provided in her current Expert Report.[2] Further, Hospira mischaracterizes Dr. Feigal's opinions and seeks the exclusion of opinions not offered by this witness.

Despite Dr. Feigal's impressive qualifications, and the Court's prior acceptance of her methodology, Defendant Hospira seeks to re-litigate issues that have been before the Court on multiple occasions. The present motion offers nothing new and cuts against the purpose of consolidated handling of common issues in an MDL; that being to prevent wasteful and repetitive litigating of the same or similar issues. Further, Hospira spends the majority of its memorandum seeking to exclude opinions that it concedes Dr. Feigal has no intention of offering: case-specific opinions, standard of care in a patient-specific context, alternative treatments for Ms. Plaisance, regulatory and labeling opinions, and signal detection. Yet despite Dr. Feigal's sworn testimony that she will not offer expert opinions on these topics, and the fact Dr. Feigal does not include the opinions in her report, Hospira seeks to exclude the unoffered opinions. The Court should

---

[2] Ex. 2, Earnest Trial Tr. Sept. 19, 2019 at 1161:18-21. Ex. 3, Kahn Trial Tr. Nov. 15, 2021 at 1157:3-7.

recognize and admonish Hospira that seeking to exclude opinions not offered or included in an expert's Rule 26 report is a waste of the Court's and the parties' valuable resources and time. Finally, any legitimate complaints Hospira alleges go to the weight of Dr. Feigal's testimony, and not its admissibility, which has been determined appropriate on two separate occasions.[3]

Once past Hospira's attempts to exclude opinions not offered by Dr. Feigal, its challenge can be boiled down to three discrete areas that the Court has addressed on multiple occasions: a claimed opinion concerning mechanism of action, a claimed "case counting" calculation, and general causation. Dr. Feigal does much more that "case counting" in her general causation assessment. The Court has addressed Dr. Feigal's general causation methodology on multiple occasions and determined it to be sound, and any challenge to it are best handled through cross examination. There is nothing new in Hospira's challenges, and the Court should again confirm that Dr. Feigal's methodology passes the FRE 702 threshold for admissibility.

For the reasons set forth herein, Dr. Feigal's opinions are admissible, and the Court should deny Defendants' motion to exclude Dr. Feigal's testimony.[4]

**LEGAL STANDARD**

A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Moreover, in order to be admissible, expert testimony must be "not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)). In order to allow an expert's testimony,

---

[3] Rec. Doc. 8094 and Rec. Doc. 11810 (Feigal Daubert Orders)
[4] *See Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. at 590-591.

the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." 509 U.S. 579, 592-93 (1993) 592–93. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Id*. at 594.

The purpose of a *Daubert* inquiry is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 150. "[W]hether an expert's testimony is reliable is a fact-specific inquiry." *Burleson v. Texas Dep't of Criminal Justice,* 393 F.3d 577, 584 (5th Cir. 2004) (citation omitted). Additionally, testimony is admissible when "the expert's reasoning or methodology can be properly applied to the facts in issue, meaning that there is an appropriate fit between the scientific testimony and the specific facts of the case." *Tripkovich v. Ramirez*, No. 13-6389, 2015 WL 3849392, at * (E.D. La. June 22, 2015) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 (1993)). Expert testimony can be classified as relevant if "the reasoning or methodology 'fits' the facts of the case and will thereby assist the trier of fact to understand the evidence." *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 550 (E.D. La. 2015) (citations omitted).

**ARGUMENT**

**I.      THE COURT SHOULD NOT ENTERTAIN CHALLENGES TO EXPERT OPINIONS NOT OFFERED BY DR. FEIGAL**

As alluded to above, Defendant Hospira seeks to exclude opinions that it clearly recognizes Dr. Feigal does not offer and has no intention of offering. Throughout Hospira's deposition of Dr. Feigal it confirmed what opinions she intends to offer at trial, and which statements within her

report are merely background or prefatory to her actual opinions.[5] Dr. Feigal has explained consistently that she is offered to address one specific topic: general causation.[6] Despite this clear and unambiguous statement, Hospira seeks to exclude the following "opinions" that are not offered by Dr. Feigal, nor have they ever been offered by Dr. Feigal:

a.) Case specific opinions: Hospira points out that Dr. Feigal is "not offering any patient-specific…opinions, and that includes the [plaintiff] in this case." Rec. Doc. 13377, p. 4, citing Feigal Dep. at 75:6-8, Sept. 29, 2021. Despite this clear statement, Hospira seeks to exclude a non-existent case-specific opinion. Hospira cannot exclude an opinion that is not offered.

b.) Standard of care: Hospira points out at p. 5 of its memorandum that Dr. Feigal clearly states that any topics beyond general causation are a preamble to and background for her general causation opinions, and that she disclaims offering any opinions beyond general causation. Rec. Doc. 13377, p. 5. Yet Hospira seeks to exclude another opinion that is not offered.[7] Hospira cannot exclude an opinion that is not offered.

c.) Alternative treatment options: Hospira begins section I.B.2. of its memorandum "with regard to alternative treatments, Dr. Feigal testified that she would not 'give any opinions about the medical care and treatment' of the plaintiff." Rec. Doc. 13377, p. 5, citing Feigal Dep. at 51:21-25, 56:9-15, and 135:15-18. Yet again, despite the clear testimony of Dr. Feigal that she will not offer any testimony about the care and

---

[5] Dr. Feigal has been deposed on multiple occasions, and questioned extensively, on redundant topics concerning her opinions: December 7, 2018; January 11, 2019; April 30, 2019; November 21, 2019; April 10, 2020; September 1, 2020; September 29, 2021.
[6] Def. Ex. B, 9/29/2021 Feigal Dep. at 56:17-57:18
[7] *Id*. at 133:1, 135:2

treatment of Ms. Plaisance, Hospira seeks to exclude another opinion that is not offered by Dr. Feigal. Hospira cannot exclude an opinion that is not offered.

d.) Regulatory issues: Hospira confirms that Dr. Feigal "expressly concede[s]" that she will not offer regulatory opinions. Rec. Doc. 13377, p. 6. She confirms this further in her deposition testimony. *Id.* at 6-7, citing Feigal Dep. at 69:2-10, 16-17; 70:20-22; 70:24 – 71:8; and 115:6-11. Additionally, Dr. Feigal states "I am not offering regulatory opinions about FDA requirements" at p. 1 of her report. Nowhere in her report does Dr. Feigal offer <u>any</u> regulatory opinions, yet Hospira seeks to exclude regulatory opinions. Hospira cannot exclude an opinion that is not offered.

e.) Labeling issues: Similarly, Hospira seeks to exclude labeling issues that Dr. Feigal does not offer. In fact, Hospira quotes from Dr. Feigal's deposition testimony to remove any doubt: "I'll just re-answer – I'll just try to re-answer it the only way I can. I'm not offering any regulatory opinions about Hospira's label."[8] Yet, despite Dr. Feigal's clear statement that she is not offering an opinion about labeling, and no labeling opinion expressed in Dr. Feigal's expert report, Hospira seeks to exclude another opinion that Dr. Feigal does not offer. Hospira cannot exclude an opinion that is not offered.[9]

f.) Signal detection: Dr. Feigal does not offer an opinion on signal detection, but rather notes the findings of Dr. Madigan's work on signal detection. As Hospira notes, Dr. Feigal does not rely upon Dr. Madigan's signal detection report in forming her general causation opinion, and as a result there is no need for independent validation of Dr.

---

[8] Def. Ex. B, 9/29/2021 Feigal Dep. at 76:10-15.
[9] This includes any comment concerning "foreign labeling." *See.* Doc. 13377, p. 8.

6

        Madigan's findings. Rec. Doc. 13377, p. 9. Hospira cannot exclude an opinion that is not offered by Dr. Feigal.

   g.) Notice: Finally, Hospira misreads or attempts to misapply the testimony of Dr. Feigal from her deposition in the Stewart matter. Rec. Doc 13377, p.8-9. What Dr. Feigal testified to in the Stewart matter is that if any 505(b)(2) manufacturer would have performed the Bradford-Hill analysis that she performed, they would likely have seen the same results – that scientific evidence supports an opinion of causation between docetaxel use and permanent chemotherapy-induced alopecia.[10] Adding to the problem with Hospria's argument is the fact that the series of questions asked of Dr. Feigal were specific to a different defendant. But that is of no significance, as Dr. Feigal is not offering testimony on the timing of notice to any defendant, or what regulatory action should have been taken at any particular time. So again, Hospira is seeking to exclude an opinion that Dr. Feigal does not offer.

Hospira's attempts at obtaining orders excluding opinions not offered is inappropriate. To seek the exclusion of opinions not offered wastes the Court's time and the parties' resources. The better course to have taken – in addition to confirming that Dr. Feigal has no intention of offering the opinions above – would be to seek a stipulation that no such opinion would be offered at trial. But Hospira did not do this; it did not seek a conferral on any of the areas that Dr. Feigal confirmed she would not offer an expert opinion on. Further, the opinions sought to be excluded are not opinions expressed in Dr. Feigal's report, and as a result could not be offered at trial. But Hospira pushed forward, undeterred by the expert's testimony or this Court's rule that only those opinions set out in the expert's Rule 26 report could be offered at trial.

---

[10] *See* Def. Ex. B, 9/29/2021 Feigal Dep. at 303:19-309:2.

As a result, the Court should simply note that there is no need to address the above areas of concern as the opinions are not offered by Dr. Feigal. There is no issue to adjudicate.

## II. DR. FEIGAL DOES NOT OFFER AN OPINION CONCERNING MECHANISM OF ACTION

Dr. Feigal does not offer an opinion on the mechanism of action, *per se,* although she does include an analysis of biologic plausibility as part of her Bradford-Hill analysis on causation. As the Court is well aware, the Bradford-Hill criteria are part of a well-recognized methodology for assessing causation, and the Court has recognized that Dr. Feigal's application of the Bradford-Hill criteria meet or exceed the threshold for admissibility under FRE 702 and *Daubert v. Merrell Dow Pharmaceutical,* and its progeny. Nevertheless, Hospira takes another opportunity to exclude an opinion that is not offered by Dr. Feigal.

Hospira's argument focuses on two sentences in Dr. Feigal's report, wherein she recounts a potential mechanism of action for how docetaxel may cause PCIA as expressed in the peer-reviewed scientific literature.[11] Dr. Feigal is not stating an opinion here, but rather explaining and referencing the source of the current state of scientific knowledge. In fact, Sir Bradford-Hill's initial paper on assessing causation notes:

> "It will be helpful if the causation we suspect is biologically plausible. But this is a feature I am convinced we cannot demand. What is biologically plausible depends upon the biological knowledge of the day."[12]

Dr. Feigal does not offer an ultimate opinion on the mechanism of action on how docetaxel causes PCIA, and so like the prior non-opinions addressed in section I. of this opposition, the Court should

---

[11] Def. Ex. A, Feigal Rep. at p. 40. "PCIA is thought to be likely a result of the hair follicle being permanently damaged, and the hair density is markedly reduced. It has been hypothesized that this may be due to irreversible damage of the stem cells/hair matrix cells of the hair bulb, or disturbance of the signaling pathways to the secondary hair germ." Citing Prevezas et al., Irreversible and Severe Alopecia Following Docetaxel or Paclitaxel Cytotoxic Therapy for Breast Cancer, 160 BRIT. J. DERMATOL. 881 (2009).

[12] The Environment and Disease: Association or Causation?, by Sir Austin Bradford Hill, Proceedings of the Royal Society of Medicine (1965).

deny Hospira's motion or find that the issue is moot. The hypothesis described in Dr. Feigal's report is attributable to Dr. Prevazas and her co-authors, not Dr. Feigal. To the extent the hypothesized mechanism provides a biologically plausible – but yet unproven -- mechanism of action, it is an entirely appropriate consideration when conducting a Bradford-Hill analysis. Indeed, Sir Bradford-Hill recognized as much.

Hospira's reliance on *Tamraz v. Lincoln Electric, Co*., 620 F.3d 665,670(6th Cir 2010) and *United States v. DeLeon,* 423 F. Supp. 3d 1210, 1231(D.N.M 2019), is misplaced. In both cases the respective courts' comments concerning an untested hypothesis not providing an adequate basis for an experts' opinion were made in relation to ultimate medical/specific causation, not biologic plausibility as part of a Bradford-Hill analysis. Neither court was addressing the issue of general causation or mechanism of action. Dr. Feigal is only addressing the issue of general causation, and despite Hospira's attempt to mold a two-sentence explanation on the current state of knowledge on mechanism for causing PCIA, Dr. Feigal offers no mechanism of action opinion.[13]

Similarly, Hospira's reliance on the *In re Johnson & Johnson Talcum Powder Products Mktg, Sales Pracs. & Prods Litig., 509 F. Supp. 116, 177(D.N.J. 2020)* is also inapplicable here. The experts in the *J & J Talcum Powder MDL* decision were offering more novel theories of biologic plausibility than Dr. Feigal is offering here, yet the *Talc MDL* court held that "Bradford Hill and Daubert do not require that an expert prove the proposed mechanism—they need only provide reliable support that demonstrates that the mechanism is plausible. The Court is satisfied that these experts, based on the various studies and their past scientific experience and knowledge,

---

[13] Dr. Laura Plunkett is offered to address the pharmacology and toxicology issues relevant to docetaxel and PCIA, including mechanism of action, but even she explains that the precise mechanism for beneficial or toxic effects are often never fully known.

9

have done so under Daubert; I will permit them to testify as to this theory of biological plausibility." In our case, Dr. Feigal is merely recounting the prevailing theory on how docetaxel may cause PCIA is published in the peer-reviewed scientific literature, as Hospira sets out in its memorandum. The theory is not novel and is very different than the *J & J Talcum Powder MDL* decision where the court allowed the testimony on biologic plausibility. Further, nobody challenges the know mechanism that docetaxel attacks rapidly dividing cells, disrupting cell division, known as mitosis, including the rapidly dividing cells in hair follicles. The hypothesis expressed in the scientific literature and explained in Dr. Feigal's report is consistent with the biologically plausible mechanism included in Dr. Feigal's Bradford-Hill analysis. This is the distinction that makes Hospira's argument untenable. Dr. Feigal's causation analysis, and specifically her biologic plausibility factor, are consistent with and supported by the known mechanism of action for docetaxel, and the prevailing scientific literature addressing the issue.

As a result, Hospira's motion to exclude Dr. Feigal's testimony on biologic plausibility in the context of her Bradford-Hill causation analysis should be denied.

### III. DR. FEIGAL'S GENERAL CAUSATION OPINIONS ARE STILL RELEVANT AND RELIABLE AND SHOULD NOT BE EXCLUDED[14]

As for general causation, Defendants erroneously assert that statements made in the Earnest trial and changes to Dr. Feigal's opinions render those opinions irrelevant and unreliable and merit revisiting the Court's prior orders finding Dr. Feigal's opinions meet the FRE 702 standard. Hospira is simply taking its turn at another bite at the proverbial apple. Additionally, Hospira inappropriately characterize Dr. Feigal's methodology as "case counting" and further misrepresent

---

[14] Plaintiff combines its opposition to sections III (THE COURT SHOULD EXCLUDE DR. FEIGAL'S CASE-COUNTING CALCULATIONS) and IV (THE COURT SHOULD EXCLUDE DR. FEIGAL'S GENERAL CAUSATION OPINIONS) into a single section of this opposition for brevity, and because the Court has considered these arguments on multiple occasions.

the basis for the numbers set out in Table 2 of her report. Dr. Feigal's Expert Report and testimony clearly refute these arguments as discussed herein. Dr. Feigal does not opine on the disparity in the reported cases, she simply sets out what is in the literature. The math is what the math is.

Dr. Feigal employed sound scientific methodology, including a thorough review of clinical trials, pharmacovigilance data, and a scientific review and analysis of relevant and useful medical literature. Drawing upon her 30 years of experience in the field of clinical research, Dr. Feigal applied a recognized methodology for assessing the available collected data: she conducted a causation analysis using factors set out in Bradford-Hill analysis. She clearly sets out the body of evidence she considered, and the scientific basis and support for her opinions which, contrary to Defendants' assertion, have not changed since Earnest. Further, since the *Earnest* trial, Dr. Feigal has taken the additional step of setting out the various Hill factors the evidence touches upon. And Dr. Feigal has explained her opinions in through six separate depositions taken by the Sanofi, Sandoz, Accord and Hospira defendants. The names of the defendants change, but Hospira has received each of Dr. Feigal's reports, and has attended each of her depositions. Hospira is familiar with the methods and bases of Dr. Feigal's opinions and is likewise aware that this Court has previously scrutinized Dr. Feigal's methods and bases. Dr. Feigal has only clarified her opinions since the Earnest trial. Consequently, Hospira's challenge to Dr. Feigal's testimony on essentially the exact same grounds as Sanofi's before it is due to be denied.

Dr. Feigal still opines that there is a causal association - causal relationship - between docetaxel and permanent chemotherapy-induced alopecia. Hospira argues that Dr. Feigal does little more than "counting cases," calculating rates reported in the literature, and not taking into account the differences in the studies – as the Court addressed in its opinion concerning Dr. Madigan's meta-analysis of four observational studies. Rec. Doc. 13377, p. 14-15. But this untrue.

11

Hospira conflates Dr. Feigal's Bradford-Hill causation analysis with Dr. Madigan's meta-analysis. Hospira inappropriately confuses the role of each expert, and the work they have performed. A meta-analysis and a Bradford-Hill causation analysis are two very different scientific investigations, and Hospira cannot, and should not, confuse the two in an effort to exclude valid opinions. Dr. Feigal's report sets out in detail how she assessed the scientific literature, and other data. She does not fatally rely upon Dr. Madigan's meta-analysis of four observational studies, and in fact notes the odds ratios of the studies individually.[15] Nor does the Court's ruling concerning the heterogeneity of the observational studies included in Dr. Madigan's meta-analysis invalidate Dr. Feigal's opinions. At best, it provides Hospira with a potential issue for cross-examination, nothing more.

Next, Hospira argues that Dr. Feigal fails to consider other potential causes of PCIA. This, too, is not true. Dr. Feigal's report includes Table 2, that sets out the clinical trial data and literature reviewed. The chart has always included regimens containing docetaxel and non-docetaxel regimens. Dr. Feigal did not ignore the anecdotal reports of permanent hair loss associated with other chemotherapy regimens including paclitaxel, anthracycline and cyclophosphamide, in her report for *Earnest,* and she did not ignore that data in her report for *Kahn,* adopted in this case.[16] Those reports were referenced in both of her reports. However, and again, the anecdotal reports do not rise to the level of a causal association with permanent alopecia as those of docetaxel, and accordingly, do not change Dr. Feigal's opinion. Hospira's reliance on Dr. Feigal's trial testimony in *Earnest v. Sanofi-Aventis U.S. LLC,* No. 16-cv-17144 (Sept. 20, 2019), at 1236:16-22, and her deposition testimony, fails to appreciate the full context of her testimony across her six depositions and testifying at two prior trials. Specifically, that because Adriamycin and cyclophosphamide

---

[15] Ex. 1, 3/23/2020 Feigal Rep. at 56.
[16] *Id.* at 68-72. *See also* Rec. Doc. 6163 at 24 (Pl Opp to Defs.' Mot. To Exclude Expert Test. Of Ellen Feigal, M.D.)

were received in identical doses in both arms of the TAX 316 study, they were part of the controlled aspect of the study, isolating the contribution of Taxotere to the observed outcomes.[17]

Dr. Feigal did consider Sanofi's randomized, controlled clinical trials and the pharmacovigilance data from its 2015 Clinical Overview, and other evidence, to demonstrate general causation using her systematic and reliable methodology.[18] Of particular note is the Clinical Overview's conclusion that, "[t]he cumulative weighted evidence is sufficient to support a causal association between docetaxel and permanent/irreversible alopecia in the patients who received docetaxel."[19] Sanofi's conclusion is based on strikingly similar evidence as Dr. Feigal's, although Dr. Feigal includes a greater quantum of evidence, all of which demonstrates the same conclusion. Hospira's docetaxel product (a 505(b)(2) approved docetaxel product) was approved based on the data provided in the brand manufacturer's NDA, and Hospira included TAX 316 data in some of its foreign labels.[20] Further, Hospira is unique in its knowledge of docetaxel and access to Sanofi's internal clinical trials because Dr. Juergen Schmider, the Vice President of Safety Surveillance and Product Safety with the department of Epidemiology for *Sanofi* from March 2011 through April 2013 with responsibilities over Taxotere, became the Global Vice President of Pharmacovigilance and Product Safety for Hospira in April 2013, again with responsibilities over Taxotere.[21] It is reasonable to conclude that Hospira was privy to information concerning docetaxel beyond the scientific literature recounted in Table 2 of Dr. Feigal's report.

Ultimately, Defendants' arguments as to Dr. Feigal's general causation opinions go to the weight or credibility of her testimony, not its admissibility. As the Supreme Court said in *Daubert*,

---

[17] *Id.* at p. 41 (note at bottom of Table 2).
[18] *Id.* at 68-70.
[19] *Id.*
[20] Ex. 4, Expert Report of David Ross, M.D., at ¶ 98.
[21] *Id.* at ¶131.

"[v]igorous-cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible." 508 U.S. at 596. This Court's reliability inquiry focuses "solely on principles and methodology, not on the conclusions they generate."[22] Dr. Feigal, using the same methodology to reach her opinions in *Earnest* and *Kahn*, was accepted as an expert by this Court, and Hospira offers nothing new to demonstrate that Dr. Feigal should not be permitted to offer her same general causation opinions in *Plaisance*.

CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Hospira's motion to Exclude the Expert Testimony of Ellen Feigal, M.D.

Dated: December 7, 2021

Respectfully submitted,

*/s/ Christopher L. Coffin*
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

*/s/ Karen B. Menzies*
Karen Barth Menzies (CA Bar #180234)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

---

[22] See *Daubert*, 509 U.S. at 595.

**PLAINTIFFS' STEERING COMMITTEE**

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

J. Kyle Bachus
Bachus & Schanker, LLC
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045 Phone:
510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

| | |
|---|---|
| John Gomez<br>The Gomez Law Firm, PLLC<br>655 West Broadway, Suite 1700<br>San Diego, CA 92101<br>Phone: (619) 237.3490<br>Fax: 619.237.3496.<br>john@thegomezfirm.com | Jessica Perez Reynolds<br>Pendley, Baudin & Coffin<br>P.O. Drawer 71<br>24110 Eden Street<br>Plaquemine, LA 70765<br>Phone: (225) 687-6396<br>Fax: (225) 687-6398<br>jperez@pbclawfirm.com |
| Emily C. Jeffcott<br>Morgan & Morgan<br>700 S. Palafox Street, Suite 95<br>Pensacola, FL 32505<br>Phone: (850) 316-9074<br>Fax: (850) 316-9079<br>ejeffcott@forthepeople.com | Darin L. Schanker<br>Bachus Schanker<br>101 W Colfax Ave, Suite 650<br>Denver, CO 80202<br>Phone: (303) 222-2222<br>Fax: (303) 893-9900<br>dls@coloradolaw.net |
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904 15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Hunter J. Shkolnik<br>Napoli Shkolnik PLLC<br>360 Lexington Avenue, 11th Floor<br>New York, NY 10017<br>Phone: (212) 397-1000<br>hunter@napolilaw.com |
| Daniel P. Markoff<br>Atkins & Markoff Law Firm<br>9211 Lake Hefner Parkway, Suite 104<br>Oklahoma City, OK 73120<br>Phone: (405) 607-8757<br>Fax: (405) 607-8749<br>dmarkoff@atkinsandmarkoff.com | Zachary Wool<br>Barrios Kingsdorf & Casteix, LLP<br>701 Poydras Street, Suite 3650<br>New Orleans, LA 70139<br>Phone: (504) 524-3300<br>Fax: (504) 524-3313<br>zwool@bkc-law.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7[h] day of December, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

                                                    */s/ Dawn M. Barrios*
                                                    DAWN M. BARRIOS