## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

**This Document Relates To:**
*Arquise Conley*
*Civil Case No. 2:17-cv-10817*

MDL No. 2740

SECTION: "H"

JUDGE MILAZZO

MAG. JUDGE NORTH

### PLAINTIFF'S OPPOSITION AND RESPONSE TO DEFENDANT SANDOZ'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PREEMPTION GROUNDS

Plaintiff Arquice Conley, hereby opposes the Statement of Undisputed Facts in Support of Motion for Summary Judgment on Preemption Grounds filed by Defendant Sandoz Inc. ("Defendant" or "Sandoz"), pursuant to Local Rule 56.2:

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 1. Plaintiff was diagnosed with breast cancer on August 5, 2011.<br><br>(Ex. A, Second Amended Plaintiff Fact Sheet ("PFS") ¶ V.5). | Uncontested. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 2. Plaintiff commenced chemotherapy treatments on October 14, 2011, and received a combination of docetaxel with other chemotherapeutic agents, cyclophosphamide (cytoxan) and doxorubicin (adriamycin), approximately every three weeks through January 24, 2012.<br><br>(See *id.* ¶¶ V.11-12; Ex. B, Deposition of Arquice Conley ("Conley Dep.") 209:7-11, 232:16-19, 247:2-5). | Uncontested. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 3. Dr. Whitecar testified that he would have recommended treatment with the docetaxel regimen even if he had been warned of the risk of permanent hair loss in the docetaxel labeling, because the docetaxel regimen provided the best shot at disease-free survival and the benefits of the chemotherapy drugs outweigh the risks for the appropriate treatment in the appropriate patient.<br><br>(Ex. C, Deposition of Dr. John Whitecar ("Whitecar Dep.") 23:6-12, 42:3-8, 43:11-15). | Contested in part; immaterial to the basis of Sandoz's motion on federal impossibility preemption. The only relevant treatment-related detailed for purposes of the motion is the date of administration of docetaxel for determining the date by when the warning should have been provided.<br><br>Uncontested as to Dr. Whitecar's testimony that he would have recommended treatment with the docetaxel regimen even if he had been warned of the risk of permanent hair loss in the docetaxel labeling. However, Dr. Whitecar testified that<br><br>Dr. Whitecar further testified: "[Patients] have the right to choose and I always tell them that. That they have the right to choose what they want to do and I tell them what the options are. But I also tell them, in her scenario, doing nothing would not have been smart."<br><br>Further, Ms. Conley testified that if she had had a discussion with Dr. Whitecar and chosen to go with a different chemotherapy treatment, that he would have respected her choice.<br><br>Contested as to the "best shot" and risk-versus-benefit testimony, which referred to chemotherapy in general, and not docetaxel.<br><br>**Evidence:**<br><br>Ex. C, (Whitecar Dep.) 23:6-12; 104:10-14.<br><br>Ex. B, (Conley Dep.) 373:6-11. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 4. Docetaxel was effective in curing Plaintiff's breast cancer, and she has been cancerfree since completing her docetaxel treatment in January 2012.<br><br>(Ex. B, Conley Dep. 305:8-14, 306:5-8, 370:9-11). | Immaterial to Sandoz's defense of federal impossibility preemption.<br><br>Uncontested. |
| 5. Plaintiff acknowledges that docetaxel saved her life and cured her breast cancer.<br><br>(*Id.* 306:5-13). | Immaterial to the basis of Sandoz's motion on federal impossibility preemption.<br><br>Contested as incomplete and misleading.  Ms. Conley's deposition testimony states that she is not aware that "any one particular treatment or drug saved [her] life" or "was the reason that [she] beat cancer."<br><br>**Evidence:**<br><br>Ex. B., Conley Dep., 373:14-25. |
| 6. Plaintiff knew docetaxel was associated with hair loss prior to undergoing chemotherapy treatment, and began losing hair after her first chemotherapy cycle.<br><br>(Id. 34:8-25, 249:10-14). | Immaterial to the basis of Sandoz's motion on federal impossibility preemption.<br><br>Contested as incomplete and misleading. Ms. Conley only knew that docetaxel was associated with temporary hair loss and expected her hair to grow back, including possibly before the end of her treatment.<br><br>**Evidence:**<br><br>Ex. B., Conley Dep., 35:17-22; 37:3-9. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 7. Plaintiff claims she would have wanted to know about the risk of permanent hair loss associated with her treatment and would have wanted to know about alternative chemotherapy medications that did not carry that risk, though she does not know whether any other chemotherapy medications would have offered the same benefits without hair loss.<br><br>(*See id.* 371:15-372:22, 378:5-22). | Uncontested but immaterial to the basis of Sandoz's motion on federal impossibility preemption. |
| 8. Plaintiff claims she experienced permanent and persistent hair loss beginning at the time she started chemotherapy treatment in October 2011, and that she noticed in late 2012 that her hair was not growing back as she anticipated.<br><br>(Id. 258:14-260:3, 268:21-269:24). | Contested in part. Plaintiff's hair did not grow back as anticipated.<br><br>**Evidence:**<br><br>Ex. B., Conley Dep. 269:2-24. |
| 9. Sandoz' docetaxel is a version of Sanofi's Taxotere, approved through the § 505(b)(2) regulatory pathway.<br><br>(Ex. D, SANDOZ-TAXO-NDA-00016364-432). | Uncontested. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 10. The § 505(b)(2) pathway is one of two drug approval options, alongside the § 505(j) pathway for Abbreviated New Drug Applications ("ANDAs"), created and added to the FDCA as part of the Drug Price Competition and Patent Term Restoration Act of 1984, commonly referred to as the "Hatch-Waxman Amendments." The two pathways "reflect Congress's attempt to balance the need to encourage innovation with the desire to speed the availability of lower cost alternatives to approved drugs." <br><br> (Ex. U, FDA 505(b)(2) Response to Citizens' Petition ("Citizen Pet. Resp.") pp. 3-4). | These are not facts but rather a discussion of the history of the applicable law. Uncontested. |
| 11. Sanofi's Taxotere® entered the market in 1996. When the patent for Taxotere® expired in 2010, Sandoz was one of several manufacturers that applied for and obtained approval under § 505(b)(2) to sell its own docetaxel product. <br><br> (Second Amended Master Long Form Complaint, MDL No. 2740, Doc. 4407 ¶¶ 32–36, 45, 59, 71, 82, 92, 105). | Uncontested. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 12. Sandoz or its affiliate conducted all aspects of the § 505(b)(2) approval process for docetaxel in consultation with U.S. Food & Drug Administration ("FDA"). The process began with Sandoz' affiliate by subsequent merger, Ebewe Parenta Pharmaceuticals ("Ebewe"), which requested a pre-NDA meeting with FDA by letter dated March 28, 2008. The letter stated that Ebewe's proposed product contained the "same active ingredient and indications" as Taxotere® with the exception of indications for head and neck cancer, and that it differed from Taxotere® only in certain excipients and in that it was ready for use without a diluent.<br><br>(Ex. E, SANDOZTAXO-NDA-00016679-685). | Uncontested. |
| 13. FDA set a tentative date for the pre-NDA meeting of July 2, 2008 (IND# 102081).<br><br>(Ex. F, SANDOZ-TAXO-NDA-00016024-25). | Uncontested but immaterial. |
| 14. Ebewe submitted meeting materials ahead of the pre-NDA meeting that included several questions.<br><br>(Ex. G, SANDOZ-TAXO-NDA-00016715-805). | Uncontested but immaterial. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 15. Ebewe stated in its meeting materials that its docetaxel product "has the same end concentration and has the same indications (except for the indications for head and neck cancer)" as the RLD, and that "[r]eference will be made to clinical studies documented in the Taxotere® injunction labeling … to support the clinical safety profile and efficacy of the active pharmaceutical ingredient," with no additional clinical studies planned.<br><br>(Ex. G, SANDOZ-TAXONDA-00016715-805). | Uncontested but immaterial |
| 16. Ebewe asked, "Does the Agency agree that no additional clinical studies are required to support a 505(b)(2) NDA application?"<br><br>(Ex. H, SANDOZ-TAXO-NDA-00016539-45). | Uncontested, but immaterial and misleading as Hatch-Waxman Act does not permit FDA to require additional clinical studies for approval of a generic drug:<br><br>"The Secretary may not require that an abbreviated application contain information in addition to that required by clauses (i) through (viii)."<br><br>**Evidence:**<br>98 Stat. 1586. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 17. FDA responded in writing to the questions on June 26, 2008, and responded "Yes" to this question.<br><br>(Ex. H, SANDOZ-TAXO-NDA-00016539-45). | Uncontested but immaterial and misleading.<br><br>The FDA agreed only to the extent that Sandoz was relying on the agency's findings of safety and efficacy for Taxotere as it related to Sandoz' submission for NDA approval. The FDA did not permit this reliance to extend to any of Sandoz' post-market obligations.<br><br>**Evidence:**<br>Ex. H, SANDOZ-TAXO-NDA-00016539-45;<br><br>*See also* CFR 314.80(b). |
| 18. By correspondence dated January 12, 2010, Ebewe and Sandoz gave notice to FDA that Ebewe had become an affiliated entity of Sandoz on September 23, 2009, when it was acquired by Novartis AG.<br>(Ex. I, Expert Report of Roger L. Williams, M.D. ("Williams Rpt.") p. 18). | Uncontested but immaterial. |
| 19. Sandoz continued to pursue an NDA for a docetaxel product that had the same concentration as the Hospira docetaxel product but otherwise would have similar labeling to Sanofi's Taxotere®.<br>(*Id.* p. 18). | Uncontested but immaterial. |
| 20. Sandoz submitted its NDA for FDA review on September 16, 2010.<br><br>(Ex. J, SANDOZ-TAXO-NDA-000373-76). | Uncontested. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 21. The NDA contained no new non-clinical or clinical information other than the information needed to indicate that the three presentations all had a nominal concentration of 10 mg/ml.<br><br>(Ex. I, Williams Rpt., p. 18). | Uncontested but immaterial. |
| 22. Sandoz communicated information regarding the difference in concentration compared to Sanofi Taxotere to practitioners in a Dear Healthcare Professional Letter.<br><br>(Ex. K, SANDOZ-TAXO-NDA-005746-48). | Uncontested, but immaterial and incomplete.<br><br>Sandoz could just as easily have issued a Dear Healthcare Professional Letter alerting medical providers to the language changes regarding permanent alopecia that appeared in the Austrian, German, and Australian labels for docetaxel.<br><br>**Evidence:**<br><br>Def.'s Ex. W Ross Expert Report at ¶¶116-119. |
| 23. FDA approved the Sandoz docetaxel § 505(b)(2) NDA, including the language in the labeling on or about June 29, 2011.<br><br>(Ex. D, SANDOZ-TAXO-NDA-0016364-432). | Uncontested. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 24. FDA's biopharmaceutics experts determined that the Sandoz formulation was sufficiently equivalent to the RLD, and granted a waiver to a possible requirement to provide in vivo bioequivalence data.<br><br>(Williams Rpt., p. 18). | Uncontested but immaterial and misleading.<br><br>There is no significance to the waiver of bioequivalence as to labelinng obligations, and there is no requirement that a "505(b)(2) application be bioequivalent to … the listed drug referenced."<br><br>**Evidence:**<br><br>Pl.'s Ex. 1, Woodcock Letter at 18;<br><br>*See also* Pl.'s Ex. 3, Ross Declaration at ¶¶27 i-iv. at 8;<br><br>*See generally* Pl.'s Ex. 2, CDER FDA Guidance for Industry. |
| 25. Sandoz submitted the approved Sanofi labeling for Taxotere® as its own labeling in its NDA submission for docetaxel in September 2010.<br><br>(Ex. I, Williams Rpt. p. 21). | Contested.<br><br>Sandoz labeling differed from Taxotere labeling in several respects, *e.g.*, Section 2.8, absence of information on diluent; Section 2.9, Preparation and Administration;  Section 3, Dosage Forms.<br><br>**Evidence:**<br><br>Ex. D, SANDOZ-TAXO-NDA-0016364-432. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 26. The Sandoz submissions to FDA directly referenced the Sanofi ® labeling and provided it for comparison.<br><br>(*Id.* p. 22). | Uncontested but immaterial.<br><br>Consistent with FDA's interpretation of section 505(b)(2), there is no requirement that a product approved via the 505(b)(2) pathway have the same label as the listed drug. In contrast, FDCA and ANDA regulations require that generic drug label be the same as the RLD.<br><br>**Evidence:**<br><br>Pl.'s Ex. 1, Woodcock Letter at 18;<br><br>*See generally* Pl.'s Ex. 2, CDER FDA Guidance for Industry. |
| 27. The warnings, precautions, adverse reactions, and alopecia information was the same for both the Sandoz and Taxotere® labeling.<br><br>(*Id.* p. 4). | Uncontested but immaterial.<br><br>Consistent with FDA's interpretation of section 505(b)(2), there is no requirement that a product approved via the 505(b)(2) pathway have the same label as the listed drug. In contrast, FDCA and ANDA regulations require that generic drug label be the same as the RLD.<br><br>**Evidence:**<br><br>Pl.'s Ex. 1, Woodcock Letter at 18;<br><br>*See generally* Pl.'s Ex. 2, CDER FDA Guidance for Industry. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 28. During the review process, FDA never questioned the use of the Sanofi Taxotere® labeling as the appropriate base labeling, never suggested any different language with respect to warnings and precautions, and never questioned Sandoz' methodology in relying on the RLD labeling.<br><br>(*Id.* pp. 4, 21, 25). | Uncontested, but immaterial to Sandoz's preemption defense and misleading.<br><br>Sandoz chose not to include information that would have led to a difference in labeling between its product and Sanofi Taxotere®.<br><br>**Evidence:**<br>Ex. W, Ross Report at ¶¶115-120. |
| 29. During the review process, the Sanofi Taxotere® labeling changed to remove language that "hair generally grows back" and Sandoz followed suit, changing that language during the NDA review process.<br><br>(*Id.* p. 25). | Contested as misleading.  Fails to mention that the FDA did not ask Sandoz to make this change and that there is no explicit regulatory requirement that it do so.<br><br>**Evidence:**<br>21 CFR §314.70(a);<br><br>Pl.'s Ex. 3, Ross Declaration at ¶ ¶ 62-64. |
| 30. The Sandoz labeling included reference to "alopecia" in the adverse reactions section, with no temporal limitation such as "temporary" or "permanent."<br><br>(*Id.* p. 21; Ex. T. SANDOZ-TAXO-LABELING-000004-62). | Uncontested to the extent the term "alopecia" had no temporal *qualifier* (the phrase "temporal limitation" is imprecise and argumentative); also immaterial to Sandoz's preemption defense. |
| 31. There were multiple references to "alopecia" throughout the Sandoz labeling including a summary of data from Sanofi's clinical trials.<br><br>(*Id.* pp. 21-22); Ex. T. SANDOZ-TAXOLABELING-000004-62). | Uncontested. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 32. The patient counseling section included a warning of "hair loss" in a section with common side effects.<br><br>(*Id.* p. 22; Ex. T. SANDOZ-TAXO-LABELING-000004-62). | Uncontested, but immaterial to Sandoz's preemption defense. |
| 33. The patient counseling section advised patients to "Tell you doctor if you have any side effect that bothers you or does not go away." All of this language matched the Taxotere® labeling.<br><br>(*Id.* pp. 4, 21-22, 25; Ex. T. SANDOZ-TAXO-LABELING-000004-62). | Uncontested, but immaterial to Sandoz's preemption defense. |
| 34. FDA accepted Sandoz' use of the Taxotere® labeling, and only provided comments or revisions on those sections of the labeling that were specific to Sandoz' docetaxel, none of which relate to warnings, precautions, or adverse reactions or alopecia specifically.<br><br>(*Id.* p. 22). | Uncontested but misleading.<br>The FDA was only able to consider the information supplied to it in Sandoz's NDA. |
| 35. Ultimately, FDA approved the Sandoz labeling when it approved the NDA on June 29, 2011, including the warnings with respect to alopecia, which were identical to those in the Taxotere® labeling.<br><br>(*Id.* p. 22; Ex. D, SANDOZ-TAXO-NDA-00016364-432). | Uncontested, but immaterial to Sandoz's preemption defense. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 36. On March 23, 2015, FDA requested that Sanofi provide a summary of cases of persistent total or partial alopecia associated with docetaxel use.<br><br>(Ex. I, Williams Rpt. p. 24; Ex. L, Sanofi_01574962). | Uncontested. Notably, Sandoz could have done similar analyses at any time starting on day 1 after its initial approval.<br><br>**Evidence:**<br>Ex. W, Ross Expert Report at ¶¶ 101-105. |
| 37. Sanofi responded, and FDA followed up on October 2, 2015 with a request that Sanofi provide any additional information regarding permanent or irreversible alopecia and amend the package insert to add information on permanent or irreversible alopecia within 60 days.<br><br>(Ex. I, Williams Rpt. p. 24; Ex. M, Sanofi_00805353). | Uncontested. Notably, Sandoz could have done similar analyses at any time starting on day 1 after its initial approval.<br><br>**Evidence:**<br>Ex. W, Ross Expert Report at ¶¶ 101-105. |
| 38. Sanofi responded on November 24, 2015 with an updated clinical overview evaluating docetaxel and permanent alopecia, and provided a CBE labeling supplement (which FDA approved on December 11, 2015) to update the Taxotere® labeling.<br><br>(Ex. I, Williams Rpt. p. 24). | Uncontested. Notably, Sandoz could have done similar analyses at any time starting on day 1 after its initial approval, and submitted a CBE on its own.<br><br>**Evidence:**<br>Ex. W, Ross Expert Report at ¶¶ 101-105.<br>*Id*. at ¶¶ 109-113. |
| 39. Sanofi proposed adding to the Taxotere® package insert, "Cases of permanent alopecia have been reported."<br><br>(Ex. I, Williams Rpt. p. 24; Ex. N, Sanofi_03333249). | Uncontested. Notably, Sandoz could have done similar analyses at any time starting on day 1 after its initial approval, and submitted a CBE on its own.<br><br>**Evidence:**<br>Ex. W, Ross Expert Report at ¶¶ 101-105.<br>*Id*. at ¶¶109-113. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 40. FDA approved the change in December 2015.<br><br>(Ex. I, Williams Rpt. p. 24). | Uncontested. Notably, Sandoz could have done similar analyses at any time starting on day 1 after its initial approval and submitted a CBE of its own.<br><br>**Evidence:**<br>Ex. W, Ross Expert Report at ¶¶101-105.<br><br>*Id.* at ¶¶ 109-113. |
| 41. Sandoz reviewed any changes in the Sanofi Taxotere® labeling and submitted changes to its own labeling so that it continued to mirror the RLD labeling.<br><br>(Ex. I, Williams Rpt. p. 26; Ex. O, Deposition of Gregory Seitz ("Seitz Dep.") 76:3-16; Ex. P, Deposition of Shirley Fernandez ("Fernandez Dep.") 84:3-24). | Uncontested, but immaterial to Sandoz's preemption defense.<br><br>Sandoz could have filed a changes being effected ("CBE") supplement at any time, including prior to Sanofi's, but did not until March 7, 2016 – after the FDA's approval of the Sanofi label change regarding permanent alopecia.<br><br>**Evidence:**<br>Ex. R, SANDOZ-TAXO-NDA-00009896-97; Ex. S, SANDOZ-TAXO-NDA-00016286-351. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 42. That approach complies with FDA regulations, guidance, and industry standards.<br><br>(Ex. I, Williams Rpt. p. 26). | Contested.<br><br>A 505(b)(2) NDA holder like Sandoz, whose "approach to label changes" is limited to just reviewing any changes in the RLD's labeling and copying such changes, does not meet industry requirements and regulations—let alone best practices. As an NDA holder, Sandoz had an independent duty of post-marketing pharmacovigilance, which includes signal detection, literature searches, adverse event analysis and reporting, and changing its own label as appropriate based on the emergence of safety information, regardless of what the RLD does or doesn't do with its label.<br><br>**Evidence:**<br><br>Plaintiff's Separate Statement of Undisputed Material Facts, at ¶¶ 2-5.<br><br>*See generally* Ex. W, Ross Report. |
| 43. On August 15, 2013 Sandoz submitted revised labeling to FDA in a CBE submission, stating in the memorandum line and in the contents of the document that Sandoz was revising its label to reflect changes Sanofi made to its labeling.<br><br>(Ex. Q, SANDOZ-TAXONDA-00006903-04). | Uncontested. |
| 44. Sandoz made many similar submissions to change its labeling to reflect changes made by Sanofi.<br><br>(Ex. I, Williams Rpt., p. 26). | Uncontested. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 45. Sandoz'[s] labeling with respect to alopecia remained the same until March 7, 2016, when Sandoz changed the alopecia language to conform to Sanofi's December 2015 changes.<br><br>(Ex. I, Williams Rpt., p. 22; Ex. R, SANDOZ-TAXO-NDA-00009896-97). | Contested in part.<br><br>Sandoz's amended labeling for docetaxel did not appear with its product until October of 2016.<br><br>**Evidence:**<br><br>Ex. R, SANDOZ-TAXO-NDA-00009896-97; Ex. S, SANDOZ-TAXO-NDA-00016286-351.<br><br>Ex. W, Ross Report at ¶ 76, n. 25. |
| 46. This was submitted by Sandoz as a CBE supplement on March 7, 2016, and noted that the labeling would be implemented on April 7, 2016.<br><br>(Ex. I, Williams Rpt., p. 22; Ex. R, SANDOZ-TAXO-NDA-00009896-97). | Contested in part.<br><br> Uncontested as to Sandoz' submission of the CBE supplement on March 7, 2016.  However, Def's Ex. R states that, "Changes to the labeling will be implemented on April 7, 2016 *or at the time of next printing, whichever comes first*." In fact, the amended language for alopecia did not appear on Sandoz's docetaxel labeling until **October of 2016**.<br><br>**Evidence:**<br><br>Ex. R, SANDOZ-TAXO-NDA-00009896-97 (emphasis added);<br><br>Ex. W, Ross Report at ¶ 76, n. 25. |
| 47. FDA approved the labeling change on October 21, 2016.<br><br>(Williams Rpt., p. 22; Ex. S, SANDOZ-TAXO-NDA-00016286-351). | Uncontested. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 48. Matching Sanofi's change, Sandoz' change added language stating, "Cases of permanent alopecia have been reported."<br><br>(Ex. I, Williams Rpt., p. 22; Ex. R, SANDOZ-TAXO-NDA-00009896-97. | Uncontested. |
| 49. FDA never had any conversations with Sandoz suggesting it change the alopecia warning at any time.<br><br>(Ex. I, Williams Rpt., p. 22) | Contested as incomplete and misleading.<br><br>Even by virtue of Sandoz's 2016 label change there was an exchange between Sandoz and the FDA about changing its label specifically with respect to permanent alopecia.  Sandoz submitted the label change relating to alopecia and the FDA approved the change.<br><br>**Evidence:**<br><br>Ex. R, SANDOZ-TAXO-NDA-00009896-97; Ex. S, SANDOZ-TAXO-NDA-00016286-351. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 50. Dr. Williams opines that Sandoz acted prudently and complied with FDA regulations in monitoring and updating its labeling based on the Sanofi labeling.<br><br>(Ex. I, Williams Rpt., pp. 4-5; Ex. V, Deposition of Dr. Roger Williams ("Williams Dep.") 118:16-120:24, 139:22-140:11. | Uncontested as to the fact that Dr. Williams offered this opinion, but disputed as fact and without methodology or factual basis.   Dr. Ross, Plaintiff's regulatory expert, opines that<br><br>"The company therefore had some basis to believe that there was a causal relationship between its docetaxel product and PCIA, and/or, the evidence that existed provided Sandoz with reasonable evidence of a causal association between its docetaxel product and PCIA in as early as October 2010. . . this triggered Sandoz's obligation to update the label for its docetaxel product. 'some basis to believe there is a causal relationship' between docetaxel and the occurrence of irreversible alopecia, as provided in 21 CFR 201.57(c)(6) or . . . 'reasonable evidence of a causal association' between docetaxel and the occurrence of irreversible alopecia, as provided in 21 CFR 201.57(c)(6)."<br><br>**Evidence:**<br>Ex. W, Ross Report at ¶ 120 a-b. |

Dated: December 17, 2021                          Respectfully submitted,


/s/ Christopher L. Coffin                          /s/ Karen B. Menzies
Christopher L. Coffin (#27902)                     Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.                   GIBBS LAW GROUP LLP
1100 Poydras Street, Suite 2225                    6701 Center Drive West, Suite 1400
New Orleans, Louisiana 70163                       Los Angeles, California 90045
Phone: (504) 355-0086                              Telephone: 510-350-9700
Fax: (504) 355-0089                                Facsimile: 510-350-9701
ccoffin@pbclawfirm.com                             kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*                      *Plaintiffs' Co-Lead Counsel*


/s/M. Palmer Lambert                               /s/Dawn M. Barrios
M. Palmer Lambert (#33228)                         Dawn M. Barrios (#2821)
GAINSBURGH    BENJAMIN    DAVID                     BARRIOS, KINGSDORF & CASTEIX, LLP
MEUNIER & WARSHAUER, LLC                            701 Poydras Street, Suite 3650
2800 Energy Centre, 1100 Poydras Street            New Orleans, LA 70139
New Orleans, LA 70163-2800                         Phone: 504-524-3300
Phone: 504-522-2304                                Fax: 504-524-3313
Fax: 504-528-9973                                  barrios@bkc-law.com
plambert@gainsben.com

                                                   *Plaintiffs' Co-Liaison Counsel*
*Plaintiffs' Co-Liaison Counsel*


## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews                                       Abby E. McClellan
Andrews & Thornton                                 Stueve Siegel Hanson LLP
4701 Von Karman Ave., Suite 300                    460 Nichols Road, Suite 200
Newport Beach, CA 92660                            Kansas City, MO 64112
Phone: (800) 664-1734                              Phone: (816) 714-7100
aa@andrewsthornton.com                             Fax: (816) 714-7101
                                                   mcclellan@stuevesiegel.com

J. Kyle Bachus
Bachus & Schanker, LLC
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

John Gomez
The Gomez Law Firm, PLLC
655 West Broadway, Suite 1700
San Diego, CA 92101
Phone: (619) 237.3490
Fax: 619.237.3496.
john@thegomezfirm.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045  Phone:
510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Jessica Perez Reynolds
Pendley, Baudin & Coffin
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Phone: (225) 687-6396
Fax: (225) 687-6398
jperez@pbclawfirm.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, FL 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904 15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@amalaw.com

Darin L. Schanker
Bachus Schanker
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
dls@coloradolaw.net

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Zachary Wool
Barrios Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
zwool@bkc-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ Dawn M. Barrios
DAWN M. BARRIOS