# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION** | **MDL NO. 16-2740**<br><br>*This document relates to:*<br>Audrey Plaisance, Case No. 2:18-cv-08086 |

### REPLY MEMORANDUM IN SUPPORT OF HOSPIRA'S MOTION FOR SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS

Plaintiff's Opposition confirms that her claims are prescribed under precedent from this Court and the Fifth Circuit.

**I.      PLAINTIFF'S CLAIMS ARE PRESCRIBED ON THEIR FACE.**

Plaintiff does not dispute Hospira's argument that her claims are facially prescribed. Plaintiff completed her chemotherapy treatment in March 2014 and sustained her alleged injury six months later in September 2014. Pl. Resp. to Hospira's Statement of Undisputed Material Facts ¶ 8, ECF 13500-1.[1] She did not file her Complaint until August 2018—almost four years after her injury and almost three years after the one-year prescription date (September 2015). Thus, Plaintiff's claims are prescribed on their face.

**II.     THE DOCTRINE OF *CONTRA NON VALENTEM* DOES NOT APPLY.**

    **A.     Plaintiff Was on Notice.**

Plaintiff argues that because Dr. Chauvin failed to warn her about the risk of permanent hair loss, she was not on notice of her claim until she saw lawyer television advertisements in 2018. Pl. Mem. Opp. Hospira's Mot. for Summ. J. Re Statute of Limitations ("Opp.") at 8-9, ECF No. 13500. But that exact same argument has been rejected numerous times by the Fifth

---

[1] Plaintiff's Response to Hospira's Statement of Undisputed Material Facts also sets forth a "Statement of Additional Uncontroverted Material Facts." ECF 13500-1 at 7-14. This statement is not contemplated by Local Rule 56.2, which states that in opposition to a motion for summary judgment, the opposing party must include a "statement of the material facts which the opponent contends present a genuine issue." In any event, Hospira responds to Plaintiff's Statement of Additional Uncontroverted Material Facts in the attachment.

Circuit and this Court. In *Johnson*, this Court held that the plaintiff "did not act until she saw a television ad describing the link between Taxotere and permanent hair loss," and "[t]he doctrine of contra non valentem does not suspend prescription for this kind of inaction." *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Johnson)* (July 19, 2019), ECF No. 7571, at 6. In its decision affirming summary judgment, the Fifth Circuit explained that "all Appellants have presented to raise a factual dispute is that they did not know Sanofi caused their permanent alopecia until they saw advertisements in 2016 and that there is no evidence that Appellants' healthcare providers knew Taxotere could cause permanent hair loss prior to this litigation," but their claims were prescribed because "they did not act reasonably in light of their injuries, and their causes of action were reasonably knowable in excess of one year prior to their filing suit." *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Thibodeaux)*, 995 F.3d 384, 394-95 (5th Cir. 2021) (cleaned up). Thus, Ms. Plaisance's arguments do not distinguish her case from these cases where the claims were prescribed.

      **B.**    **Plaintiff Did Not Have Any Conversations with Her Doctors That Would Toll Prescription.**

Plaintiff argues that she "acted reasonably and investigat[ed] her hair loss through consultations with her treating doctors," Opp. at 11, but the record does not support this assertion.

          **1.**    **Dr. Chauvin.**

Plaintiff argues that her claim was tolled based on Dr. Chauvin's comment in May 2014—only two months after her chemotherapy treatment—that "it was premature to be worried that her hair would not fully regrow." Opp. at 12. But that conversion did not toll prescription for three reasons.

*First*, Ms. Plaisance does not allege that Dr. Chauvin ever told her that her hair loss was caused by something other than her chemotherapy. Plaintiff references a question she conveyed to Dr. Chauvin (via Dr. Chauvin's nurse) about the connection between Femara and her loss of eyebrows and eyelashes, but that plainly does not toll prescription. *Id.* After speaking with Dr.

2

Chauvin, the nurse informed Ms. Plaisance that "maybe the Femara would be like maybe 2 percent the cause of" the loss of her eyebrows and eyelashes. Br. Ex. B, ECF No. 13387-6 (Deposition of Audrey Plaisance (Sept. 22, 2020) ("Plaisance Dep.")), at 209:25-210:1. As an initial matter, this does not explain the cause for the other 98% of her loss of eyebrows and eyelashes. Moreover, this inquiry was specific to her eyebrows and eyelashes and was not in reference to her overall hair loss. On that subject, Ms. Plaisance was clear that neither Dr. Chauvin nor her nurse ever told her that her hair loss was caused by Femara. As to Dr. Chauvin, Ms. Plaisance testified: "[S]he never told me that I could permanently lose my hair or I could temporar[il]y lose my hair on Femara." *Id.* at 210:6-8. Furthermore, the following exchange clears any doubt:

> Q. Have you ever spoken with Dr. Chauvin about ***Femara and any potential impact on hair loss or hair regrowth?***
>
> A. ***No.***

*Id*. at 211:23-212:1 (emphasis added). Thus, this conversation is not a basis for tolling.

*Second*, Plaintiff has no answer to the fact that she did not follow Dr. Chauvin's advice to see a dermatologist to address any concerns about hair loss. At both May 2014 visits, Dr. Chauvin reiterated that if Ms. Plaisance continued to feel concerned regarding patchy hair, "*she should discuss with her dermatologist*." Br. Ex. D, ECF No. 13387-8 (Deposition of Dr. Laura Chauvin (October 15, 2020)), at 121:25-122:5 (emphasis added). Thus, it is irrelevant that "Dr. Chauvin did not inform Mrs. Plaisance that her condition might be permanent or that permanent hair loss was a risk of docetaxel use." Opp. at 12. The Fifth Circuit has held that a reasonable inquiry requires the plaintiff to inquire into whether docetaxel was the cause of the persistent hair loss. *Thibodeaux*, 995 F.3d at 393 (considering "the standard of 'knew or should have known,' to mean [plaintiff] needed to investigate [docetaxel] as a potential cause") (citation omitted). Ms. Plaisance did not ask Dr. Chauvin whether her chemotherapy caused her hair loss, nor did she follow up with a dermatologist, as Dr. Chauvin recommended. Thus, Ms. Plaisance did not conduct a "reasonable inquiry" under Fifth Circuit precedent.

*Third*, the conversations with Dr. Chauvin are not a basis for tolling because they took place only two months after she completed chemotherapy. That is a full four months *before* her alleged permanent hair loss. *See id*. at 390 ("As a matter of law, the injury of 'an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy' is sustained when, six months after the completion of chemotherapy, a person has an absence of or incomplete hair regrowth.") Thus, any assurance during this time period that Ms. Plaisance's hair would regrow was completely normal because it was too early to tell whether or not it would in fact regrow.

The Fifth Circuit's language in *Durden* recognizes the importance of this timing, suggesting that for a physician's assurance of hair regrowth to toll prescription, it must occur after the injury is realized at the six-month mark. *See In re Taxotere (Docetaxel) Prods. Liab. Litig. (Durden)*, 860 F. App'x 886, 893 (5th Cir. 2021) (per curiam) (involving fact pattern where plaintiff asserted that four doctors said her hair would grow back, but there was "no evidence that any doctor told [Plaintiff] that her hair would fully regrow *after the six-month-post-chemotherapy injury mark*" (emphasis added)).

This Court also recognized this distinction in *Hughes*: "[T]his evidence does not bear on the reasonableness of Plaintiff's actions *after* suffering her injury. Instead, Plaintiff's testimony relates to her conversations with Dr. Veith *before* beginning any treatment." *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Hughes)* (Apr. 28, 2021), ECF No. 12532, at 6. Although the conversation in *Hughes* occurred before treatment, the Court's rationale was explicitly based on the reasonableness of the plaintiff's conduct post-injury.

Plaintiff cites *Kahn*, where the Court found tolling based on a conversation that occurred five and a half months after completion of chemotherapy—a mere two weeks before the six-month mark. *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Kahn)* (June 4, 2021), ECF No.

4

12805, at 5 ("*Kahn*").[2]  But there is a significant difference between a conversation occurring two weeks before the date of injury versus four months before the date of injury.  Two months after the end of chemotherapy is far too early to assess whether there has been an injury because not enough time has passed for a patient to experience full hair regrowth.  Thus, *Kahn* is distinguishable on its facts.

### 2. Dr. Matherne.

It was not until March 2016—one and a half years after sustaining her alleged injury—that Ms. Plaisance had any conversations with Dr. Matherne, a dermatologist, about her hair issues.  Br. Ex. L, ECF No. 13387-16 (3.24.2016 Matherne Dermatology Rec.); Br. Ex. B (Plaisance Dep.) at 221:18-222:3.  Thus, the March 2016 appointment with Dr. Matherne was six months too late to serve as a basis for *contra non valentem* because the prescription period had already run by then.

Plaintiff's argument that Dr. Matherne would not have told her that her hair loss was permanent, Opp. at 12-13, is irrelevant.  She never made any inquiry of him until after the prescription period had ended.  The exception recognized by this Court is applicable when a doctor tells the patient that her hair loss was caused by some alternative cause other than chemotherapy, and the patient reasonably relied on that diagnosis.  *See Kahn* at 7.  There is no precedent for tolling prescription based on what a doctor would have said when a plaintiff never asked that doctor about hair loss.  That would turn the concept of a reasonable investigation upside down.

### 3. Plaintiff Cites No Applicable Case Law.

As explained in Hospira's opening brief and above, *Kahn* is inapplicable here.  *See* Hospira's Mem. Supp. Mot. Summ. J. Re Statute of Limitations ("Br.") at 8, ECF No. 13387-1.  The other cases cited by Plaintiff are equally inapposite.

---

[2]  The Fifth Circuit issued *Durden* five days after *Kahn*, so the court of appeals' reasoning should be applied here.

1.      Plaintiff argues that her conduct was reasonable "in light of the general and specific causation defenses lodged by the MDL defendants." Opp. at 9-10. Plaintiff cites to a comment in *Sharkey v. Sterling Drug, Inc.*, 600 So.2d 701, 714 (La. App. 1 Cir. 1992), for the proposition that a defendant's causation challenges are "relevant" to the notice issue. Opp. at 10. In *Sharkey*, however, the Court found that plaintiff did not have access to information regarding the relevant drug as a potential cause of the injury at issue. *Sharkey*, 600 So.2d at 714-15. This finding is directly contrary to the Fifth Circuit's conclusion in *Thibodeaux* that there *was* information on potential causation available to plaintiffs about docetaxel as a potential cause of permanent hair loss. *Thibodeaux*, 995 F.3d at 394. Thus, *Sharkey* is inapplicable.

Moreover, a defendant need not admit causation for the prescription period to begin. As explained by the Fifth Circuit, Louisiana law requires that "once hair loss persisted after six months, *contra non valentem* tolled the prescription period until the point when a prospective plaintiff through the exercise of reasonable diligence should have 'considered [docetaxel] as a potential root cause of' her injury." *Thibodeaux*, 995 F.3d at 392-93 (citation omitted). Sanofi also raised causation defenses, yet the Court affirmed summary judgment because "[a] reasonable inquiry would have uncovered at least some information that linked [docetaxel] to persistent alopecia." *Id.* at 394.

Plaintiff also misrepresents this Court's comments in *Kahn*. Opp. at 10. The Court stated in that case that "defendant has pointed to multiple causes of alopecia" to make the point that the plaintiff *had been told* she had one of these alternate causes, and therefore prescription was tolled. Opp. Ex. 1 (Hr'g Tr. July 29, 2021) at 15:14-25 ("Here, the plaintiff sought and investigated a cause for ongoing alopecia and was advised by her gynecologist that she was not the victim of a tort, but rather the aging process, and according to plaintiff she dropped it."). As explained previously and above, Plaintiff does not allege that any doctor diagnosed Ms. Plaisance with another cause of her alopecia during the prescription period. *See supra* Part B; Br. at 8-10. Thus, this comment by the Court in *Kahn* is inapposite.

2. Plaintiff makes a passing mention of *Earnest*, including a single sentence stating that, "Like in *Earnest*, Mrs. Plaisance's oncologist led her to believe that she had no actionable injury." Opp. at 15. This short-shift is understandable, given that the situation here is entirely distinct because (i) the oncologist in *Earnest* told the plaintiff that her hair was "going to come back" six months *after* completion of chemotherapy—i.e., when Ms. Earnest's alleged injury had already been realized, *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Earnest)* (July 19, 2019), ECF No. 7571, at 8; and (ii) it was before the Fifth Circuit issued its *Thibodeaux* and *Durden* decisions, which clarified the application of Louisiana's prescription law to this case. Thus, *Earnest* does not support tolling here.

3. Plaintiff cites *Hoerner v. Wesley-Jensen*, but it has no application here. 684 So.2d 508 (La. App. 4th Cir. 1996). In that case, the court applied *contra non valentem* because the plaintiff's doctor told her that her eye injury—which she alleged came from wearing contact lenses—was the result of a "bug" she caught. *Id.* at 514. This is the case that the Court cited as the basis for its *Kahn* exception. Here, however, there was never any alternate diagnosis during the prescription period that would lead to tolling. Thus, *Hoerner* (and *Kahn*) are inapplicable.

4. Plaintiff cites *Cortez v. DePuy Orthopedics, Inc.*¸ but in that case the court held that the plaintiff "had no way of knowing" what had caused the knee injury until her revision surgery. 2016 WL 633665, at *3 (E.D. La. Feb. 17, 2016). Here, the Fifth Circuit has held that there was information available to put Plaintiff on notice, had she investigated. *Thibodeaux*, 995 F.3d at 394 (finding that "[a] reasonable inquiry would have uncovered at least some information that linked [docetaxel] to persistent alopecia").

C. **Plaintiff Has Not Shown That Hospira's Conduct Tolled Prescription.**

Plaintiff argues that Hospira prevented her from learning of her cause of action in a way that would toll the running of prescription. The Court should reject this argument for three reasons.

*First*¸ the Fifth Circuit has rejected it, explaining that this argument "is inapplicable because [plaintiffs] were not prevented from availing themselves of their causes of action; a

reasonable inquiry would have led to the information needed." *Id.* at 395.  The same analysis applies here.

*Second*, the only evidence Plaintiff references is the fact that Hospira did not change its label to warn of permanent hair loss until September 2017.  The Court rejected this exact same argument in *Sanford* where, as here, the plaintiff "cites no law to support her proposition that prescription is tolled on a failure to warn claim until the defendant issues an adequate warning." *In re Taxotere (Docetaxel) Prods. Liab. Litig.* (*Sanford*) (July 17, 2020), ECF No. 10807, at 8. Indeed, the "Court has previously rejected this circular argument in its prior rulings," and it should do the same here.  *Id*.

*Third*, Plaintiff erroneously cites this Court's decision in *Mills*, Opp. at 17, but that order was not related to prescription.  It involved a different issue (a motion to dismiss a fraud claim under Georgia law) and a different party (Sanofi).  *See In re Taxotere (Docetaxel) Prods. Liab. Litig. (Mills)* (July 9, 2019), ECF No. 7571, at 18-19.  Thus, it is irrelevant to this motion.

## CONCLUSION

For the foregoing reasons as well as the reasons put forth in Hospira's Motion, Ms. Plaisance's claims are prescribed under Louisiana law.  Thus, Hospira respectfully requests that the Court grant summary judgment and dismiss Ms. Plaisance's claims with prejudice.

Date: December 21, 2021                                Respectfully submitted,

*/s/ Heidi K. Hubbard*
Heidi K. Hubbard
Richmond T. Moore
Neelum J. Wadhwani
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
Telephone: 202-434-5000
hhubbard@wc.com

John F. Olinde (Bar No.1515)
Peter J. Rotolo (Bar No. 21848)
**CHAFFE MCCALL LLP**
1100 Poydras Street
New Orleans, LA 70163
Phone: 504-858-7000
olinde@chaffe.com

*Counsel for Defendants Hospira, Inc., Hospira Worldwide, LLC, and Pfizer Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of December 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Heidi K. Hubbard*