UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 16-2740<br><br>*This document relates to:*<br>Audrey Plaisance, Case No. 2:18-cv-08086 |

### HOSPIRA'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE OR LIMIT OPINIONS OF DR. CURTIS THOMPSON

The Opposition misses the point. Plaintiff's dermatopathologist, Dr. Thompson, functions solely as a case-specific expert. He submitted case-specific opinions based on his review of Ms. Plaisance's biopsy tissues. The methodology by which he conducted that review and arrived at those opinions was unreliable. Plaintiff's Opposition fails to establish otherwise. Further, the Opposition focuses on the relevance of his testimony—not its reliability—while mischaracterizing that testimony. Hospira filed its motion, however, based on the unreliability of his methodology, and Dr. Thompson's testimony speaks for itself. Finally, Plaintiff fails to oppose Hospira's challenges to some of the unsupported opinions given by Dr. Thompson. Thus, all of Dr. Thompson's opinions should be excluded.

**I.   PLAINTIFF MISCONSTRUES DR. THOMPSON'S TESTIMONY AND ADMITS HE FAILED TO CONSIDER CERTAIN CRITERIA.**

The Opposition disputes that the histopathological criteria for PCIA are not well-established in the peer-reviewed literature. *First*, it purports to cite Dr. Thompson's deposition testimony in support. Pl.'s Mem. Opp. Hospira's Mot. Exclude of Limit Opinions of Dr. Curtis Thompson ("Opp.") at 7, ECF No. 13499. But the cited testimony is clear that the criteria for histological features of PCIA come from "experience," not literature: "A lot of the list criteria, the specific criteria comes out of experience of people like me that read these biopsies and see them again and again and a lot of that is out of professional experience. We don't sit down and write an article [about] that." *Id. Second*, Plaintiff identifies three articles she claims Dr. Thompson relies on to identify the histopathological factors of PCIA, including in

Ms. Plaisance's case. *Id.* at 7-8. The Opposition goes on at length in describing those three articles, to little purpose. Dr. Thompson did not rely on those three articles to guide his review of Ms. Plaisance's pathology. He simply agreed those articles were on his reliance list—but could not even say whether those three articles addressed PCIA and taxanes. *See* Br. Ex. A, ECF No. 13381-4 (Deposition of Dr. Thompson (Sept. 15, 2021) ("Thompson Dep.")), at 29:14-23.

Rather, as Dr. Thompson plainly stated in his report, he relied upon a textbook by Leonard Sperling for the "[h]istological findings of permanent chemotherapy-induced alopecia" that he used to conclude Ms. Plaisance has PCIA. Br. Ex. B, ECF No. 13381-5 (Expert Report of Dr. Curtis T. Thompson – Plaisance (Aug. 2, 2021) ("Thompson Rep.")), at 2. But, Dr. Thompson only applied the four criteria from Sperling that allegedly supported his conclusion of PCIA for Ms. Plaisance and omitted the criterion that does not: preservation of sebaceous glands.

This omission is all the more glaring because Dr. Thompson does not routinely exclude consideration of sebaceous gland status when determining whether a patient has PCIA. Although he called it a "light factor" and a "soft criteri[on]," Opp. at 9, it is still a factor he considers in evaluating and diagnosing a patient's alopecia. Indeed, he *included* it as part of the bases for his conclusion that Clare Guilbault has PCIA. Br. Ex. C, ECF No. 13381-6 (Expert Report of Curtis T. Thompson – Guilbault (Aug. 2, 2021) ("Thompson *Guilbault* Rep.")), at 2. The Opposition offers no explanation whatsoever for why Dr. Thompson applied the criterion in *Guilbault* but not *Plaisance*. But the answer is clear: Dr. Thompson found that Ms. Guilbault's sebaceous glands were preserved, whereas Ms. Plaisance's were not. Hence, it was a criterion that he included when it supported his finding of PCIA in *Guilbault* but that he excluded when it did not support his finding of PCIA in *Plaisance*. Dr. Thompson's *Plaisance* opinions are a textbook example of an expert selectively choosing facts to support a pre-determined conclusion. This approach is prohibited under *Daubert*. *See Burst v. Shell Oil Co.*, 650 F. App'x. 170, 174 (5th Cir. 2016); *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 n.7 (11th Cir. 2005) ("In evaluating the reliability of an expert's method, however, a district court may properly consider whether the expert's methodology has been contrived to reach a particular result."); *In re Mirena*

*IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 242 (S.D.N.Y. 2018), *aff'd*, 982 F.3d 133 (2d Cir. 2020) ("[A]n expert may not 'pick and choose' from the scientific landscape and present the Court with what he believes the final picture looks like." (quoting *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 563 (S.D.N.Y. 2004)); *Vaughn v. Hobby Lobby Stores, Inc.*, --- F. Supp. ---, 2021 WL 2008469, at *7 (W.D. La. May 19, 2021) (excluding expert's diagnosis of the plaintiff because expert ignored certain "objective criteria").

## II.   DR. THOMPSON MERELY ASSUMED THE FACTS CRITICAL FOR HIS DIAGNOSIS.

When Dr. Thompson analyzes scalp biopsies (i) the clinical determination of whether a patient's hair loss is "diffuse" or "patchy" is a critically important component of his evaluation,[1] and (ii) it can be "impossible" to render an accurate histopathological diagnosis for a patient without such accurate clinical information.[2]  But in Ms. Plaisance's case, Dr. Thompson did not know nor take steps to find out whether her hair loss was diffuse or patchy at the time he conducted his evaluation.  Instead, he merely "assumed" she had diffuse hair loss based on Dr. Tosti's notation of "PCIA" on the pathology requisition form.  Hospira's Mem. Supp. Mot. Exclude or Limit Opinions of Dr. Curtis Thompson ("Br.") at 6-7, ECF No. 13381.  Plaintiff attempts to rescue Dr. Thompson from this flaw by claiming that Dr. Thompson in fact reviewed Dr. Tosti's clinical records, Opp. at 10, but she misrepresents Dr. Thompson's clear testimony:

> Q. Did you have Dr. Tosti's clinical note when you reviewed the pathology initially?
> A. No.[3]

Dr. Thompson reviewed Dr. Tosti's clinical note in the preparation of his report—"***To prepare this report***, the May 7, 2021 clinical evaluation by Antonella Tosti, MD was reviewed," Br. Ex.

---

[1]  Br. Ex. E, ECF No. 13381-8 (Deposition of Dr. Thompson, *Earnest v. Sanofi S.A., et al.*, No. 16-cv-17144 (Nov. 30, 2018) ("Thompson *Earnest* Dep.")), at 47:5-48:1.

[2]  Br. Ex. A (Thompson Dep.) at 39:13-18.

[3]  Br. Ex. A (Thompson Dep.) at 60:5-15.

3

B (Thompson Rep.) at 3 (emphasis added)—but not when evaluating and diagnosing Ms. Plaisance's pathology. His resulting opinion that Ms. Plaisance has PCIA therefore should be excluded.

### III. DR. THOMPSON'S METHODOLOGY CANNOT BE REPLICATED.

Plaintiff argues a *non sequitur* and completely misunderstands Hospira's point. Whether or not Dr. Thompson's methodology in *Plaisance* can be validated does not depend on what he does in his regular clinical practice. *See* Opp. at 10. Rather, as Dr. Thompson admitted, there is no way to validate the number and classification of follicles he identified on Ms. Plaisance's biopsy—but there could have been if he had marked those follicles and saved the markings, as he does in his clinical practice.[4] This is fatal to Dr. Thompson's opinions for two reasons. *First*, Dr. Thompson's failure to "show his work" makes it impossible to replicate and test his follicle counts and classifications. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593 (1993) ("[A] key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested."). It is upon those counts and classifications, though, that Dr. Thompson concludes that Ms. Plaisance has PCIA. *See generally* Thompson Rep. Different follicular counts and classifications could point to a different alopecia diagnosis. *Second*, Dr. Thompson often electronically marks follicles when he reviews them in his regular practice, yet has no record of doing so in *Plaisance*. His methodology is litigation driven. *See* FRE 702, advisory committee's note to 2000 amendment (In determining whether an expert's testimony is reliable under FRE 702, courts consider "[w]hether the expert 'is being as careful as he would be in his regular professional work outside his paid litigation consulting.'" (quoting *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997)).

---

[4] The Opposition notes that Dr. Thompson does not mark follicles "when they are easy to count." Opp. at 11. Although her point is murky, Hospira presumes she is trying to excuse Dr. Thompson's failure to "show his work" by implying that Dr. Thompson found Ms. Plaisance's follicles easy to count. Dr. Thompson, however, never said that—neither in his report nor his testimony.

### IV. DR. THOMPSON'S "CONSTELLATION" OF MS. PLAISANCE'S BIOPSIES IS IMPROPER.

Dr. Thompson admitted that Ms. Plaisance's biopsy B did not meet the criteria of PCIA. It was only when Dr. Thompson added in biopsy A and the "constellation of findings" across both biopsies that he could say Ms. Plaisance suffered from PCIA.

> Q. So then to reach your opinion, you have to refer to this constellation of characteristics between A and B, correct?
>
> A. Exactly.

Br. Ex. A (Thompson Dep.) at 127:12-15. Contrary to Plaintiff's arguments, Opp. at 11, Dr. Thompson does not "always read[] biopsy samples in conjunction with each other." Instead, Dr. Thompson testified that a biopsy provides important information related to *the particular site* on the scalp from which it is taken, including because a person can have more than one disease alopecia process on their scalp at one time. Br. Ex. A (Thompson Dep.) at 39:4-12. Dr. Thompson's mix-and-match of two different biopsies is thus not a reliable methodology.

### V. PLAINTIFF DOES NOT OPPOSE THE EXCLUSION OF DR. THOMPSON'S HAIR LOSS AFTER RE-GROWTH OPINION.

Plaintiff does not oppose Hospira's motion to exclude Dr. Thompson's unfounded and speculative opinion that hair loss *after* hair re-growth is consistent with PCIA. This opinion should therefore be excluded.

### CONCLUSION

For the reasons set forth in Hospira's motion and herein, Dr. Thompson's opinions should be entirely excluded.

Date: December 21, 2021                                Respectfully submitted,

*/s/ Heidi K. Hubbard*
Heidi K. Hubbard
Richmond T. Moore
Neelum J. Wadhwani
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
Phone: 202-434-5000
hhubbard@wc.com

John F. Olinde (Bar No.1515)
Peter J. Rotolo (Bar No. 21848)
**CHAFFE MCCALL LLP**
1100 Poydras Street
New Orleans, LA 70163
Phone: 504-858-7000
olinde@chaffe.com

*Counsel for Defendants Hospira, Inc., Hospira Worldwide, LLC, and Pfizer Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 21st day of December 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Heidi K. Hubbard*