**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

<table>
<tr><td>

IN RE: TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION


This Document Relates to:
*Arquice Conley v. Sandoz Inc.*
Civil Case No. 2:18-cv-09799

</td><td>

MDL No. 2740

Section: N(5)

JUDGE JANE TRICHE MILAZZO

MAG. JUDGE NORTH

</td></tr>
</table>

**SANDOZ INC.'S REPLY IN SUPPORT OF ITS MOTION FOR**
**SUMMARY JUDGMENT ON PREEMPTION GROUNDS**


**GREENBERG TRAURIG, LLP**

Lori G. Cohen
R. Clifton Merrell
Evan C. Holden
Terminus 200
3333 Piedmont Road, N.E., Suite 2500
Atlanta, Georgia 30305
(678) 553-2100

Gregory E. Ostfeld
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 476-5056


*Counsel for Defendant Sandoz Inc.*

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................1

II. ARGUMENT.........................................................................................................3

   A. Plaintiff's Opposition Fails to Rebut the Absence of "Newly Acquired
      Information" Supporting a Label Change Under the CBE Regulation....................3
   B. Plaintiff's Opposition and Response to Sandoz' Statement of Undisputed
      Material Facts, and Plaintiff's Separate Statement of Undisputed Facts, Do
      Not Save Plaintiff's Claims. ...................................................................................7
   C. The Remainder of Plaintiff's Opposition Is Irrelevant. ..........................................8

III. CONCLUSION....................................................................................................10

ACTIVE 61568227v2

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blackburn v. Shire Us, Inc.*,
No. 2:16-CV-963-RDP, 2017 U.S. Dist. LEXIS 69664 (N.D. Ala. May 8, 2017).....................4

*Eveler v. Ford Motor Co.*,
No. 16-14776, 2017 U.S. Dist. LEXIS 124084 (E.D. La. Aug. 7, 2017) .................................8

*Fed. Trade Comm'n v. AbbVie Inc.*,
107 F. Supp. 3d 428 (E.D. Pa. 2015) ......................................................................................9

*Ferring Pharm., Inc. v. Burwell*,
169 F. Supp. 3d 199 (D.D.C. 2016) .........................................................................................9

*In re Incretin-Based Therapies Prods. Liab. Litig.*,
524 F. Supp. 3d 1007, 1022 (S.D. Cal. Mar. 9, 2021) .............................................................5

*Merck Sharp & Dohme Corp. v. Albrecht*,
139 S. Ct. 1668 (2019).........................................................................................................2, 9

*United States v. Dunkel*,
927 F.2d 955 (7th Cir. 1991) ...................................................................................................8

**Other Authorities**

21 C.F.R. § 201.57(c)(6)(i) ............................................................................................................2

21 C.F.R. § 201.57(c)(6)(i) ............................................................................................................4

21 C.F.R. § 201.57(c)(7)............................................................................................................2, 5

21 C.F.R. § 201.57(c)(7)(ii) ...........................................................................................................5

21 C.F.R. § 314.3(b) ...........................................................................................................4, 5, 7

21 C.F.R. § 314.70(c)(6)(iii)(A) ....................................................................................................6

## I.   INTRODUCTION

Plaintiff's Opposition to Sandoz' Motion for Summary Judgment on Preemption Grounds (Dkt. No. 13596, "Opposition" or "Opp.") makes little attempt to address, much less rebut, the undisputed evidence and arguments demonstrating why Plaintiff Arquice Conley's ("Plaintiff") claims against Defendant Sandoz Inc. ("Sandoz") are preempted by federal law. The factual and legal bases for federal preemption in this case are simple and uncontroverted. The record contains no evidence that Sandoz (i) had any "newly acquired information" regarding Sandoz' docetaxel, (ii) revealing any risks of a different type or greater severity or frequency than previously submitted to the U.S. Food & Drug Administration ("FDA"), and (iii) providing reasonable evidence of a causal connection between Sandoz' docetaxel and a clinically significant hazard or adverse reaction. Because the federal Changes Being Effected ("CBE") regulation demands "newly acquired information" meeting these criteria to support a manufacturer's unilateral label change without prior FDA approval, Sandoz could not change its label. It was thus impossible as a matter of law for Sandoz to comply simultaneously with federal law and its alleged state-law duties, and Plaintiff's claims are preempted in their entirety.

The Opposition rebuts none of these points. Indeed, it scarcely discusses them, much less offers any record evidence demonstrating a genuine dispute as to any material fact supporting federal preemption. Plaintiff's assertions regarding "newly acquired information" in her Opposition rely almost entirely on literature, adverse events, and foreign regulatory action pre-dating or post-dating the relevant time period—i.e., June 2011 (when FDA approved Sandoz' docetaxel) until October 2011 to January 2012 (when Plaintiff underwent life-saving chemotherapy treatment with docetaxel). (Opp. at 12-14.) As demonstrated in Sandoz' Opening Brief (Dkt. No. 13445-1, "Opening Br."), information obtained outside the relevant time period is irrelevant and does not constitute "newly acquired information" that could prompt a CBE label

1

change prior to Plaintiff's use of docetaxel. The *one* article that Plaintiff identifies from (potentially) within this time period did not reveal anything new or different, but instead added a minimal amount of data to the existing body of data that the FDA already had before it in approving Sandoz' New Drug Application ("NDA"), including its labeling, for docetaxel.

Seeking to divert from the absence of any record evidence of newly acquired information to support a CBE label change, the Opposition attempts to argue that Sandoz had an obligation to add a permanent alopecia warning to the "Adverse Reactions" section of the labeling under 21 C.F.R. § 201.57(c)(7)—instead of the "Warnings and Precautions" section under 21 C.F.R. § 201.57(c)(6)(i), discussed at length in Sandoz' Opening Brief—because there was "some basis to believe there is a causal relationship" between Sandoz' docetaxel and "an undesirable effect, reasonably associated with use of [the] drug." (Opp. at 6-9, 12.) But again, there is no "newly acquired information" of the requisite "causal relationship" between Sandoz' docetaxel and persistent alopecia during the relevant time period to support the submission of an "Adverse Reaction" label change, any more than a "Warnings and Precautions" label change.

Much of the rest of Plaintiff's Opposition has nothing to do with Sandoz' preemption argument. Plaintiff asserts, for example, that Sandoz has not presented "clear evidence" under *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1672 (2019), that FDA would not have *approved* a change to Sandoz' label. But that misses the point; Sandoz has presented uncontroverted evidence that it lacked the necessary "newly acquired information" even to *submit* a CBE label change to FDA, making it impossible under federal law for Sandoz to propose a label change for FDA to approve or disapprove. That is the essence of impossibility preemption: it was not possible under federal law for Sandoz to do what Plaintiff claims state law required. Federal preemption necessarily and inescapably follows from the undisputed facts.

2

## II.   ARGUMENT

### A.   Plaintiff's Opposition Fails to Rebut the Absence of "Newly Acquired Information" Supporting a Label Change Under the CBE Regulation.

Plaintiff's Opposition leaves almost wholly unrebutted the core of Sandoz' preemption argument—that during the relevant time period, the record is devoid of any "newly acquired information" required by federal law for Sandoz to submit a label change under the CBE regulation to add the permanent alopecia warning Plaintiff claims was required by state law. The Opposition does not dispute any of the following central points made by Sandoz in its Opening Brief:

- Sandoz brought its version of docetaxel to market in June 2011 using the § 505(b)(2) regulatory pathway, with an FDA-approved label that contained references to "alopecia" but did not include a warning or adverse reaction of "permanent" alopecia. (*See* Opening Br. at 1-2, 7-10.)

- Plaintiff was treated with Sandoz' docetaxel from October 2011 to January 2012, and Plaintiff has been cancer-free since January 2012. (*Id*. at 3.)

- The brand-name manufacturer of docetaxel, Sanofi, undertook an updated clinical overview of docetaxel and permanent alopecia from March to November 2015, and based on that overview provided a CBE labeling supplement in November 2015 (which FDA approved in December 2015) proposing to add the following statement in the "Adverse Reactions, Post Marketing Experience" section of the package insert: "Cases of permanent alopecia have been reported." (*Id*. at 8-10.)

- Sandoz submitted a CBE Supplement to update its docetaxel warnings in March 2016, matching Sanofi's change. (*Id*.)

- Federal law preempts a state law claim where it is impossible for the defendant to do under federal law what state law requires, including when state law requires a different warning or adverse reaction needing FDA approval. (*Id*. at 3, 12.)

- Federal law prohibits Sandoz as a § 505(b)(2) drug manufacturer from revising its FDA-approved label without prior FDA approval, unless Sandoz is able to satisfy the requirements to "add or strengthen" a warning or adverse reaction based on "newly acquired information" under the CBE regulation. (*Id*. at 1-2, 12-13.)

- Whether there was reasonable evidence sufficient for Sandoz to propose a change by CBE supplement without prior FDA approval is not a matter of fact for a jury, but a matter of law for the Court to decide. (*Id*. at 3, 12.)

- Submission of a CBE supplement to change a label without prior FDA approval

3

requires "newly acquired information," which means data, analyses, or other information not previously submitted to FDA, including but not limited to data derived from new clinical studies, reports of adverse events, or new analyses of previously submitted data if they reveal risks of a different type or greater severity or frequency than previously included in submissions to FDA. (*Id*. at 13.)

Plaintiff acknowledges both the necessity of "newly acquired information" under the CBE regulation and its definition (Opp. at 5-6), and offers four erroneous lines of argument in an effort to dispute the total absence of "newly acquired information" in this case. Each attempt fails.

First, Plaintiff cites two articles as "newly acquired information," the Palamaras article from April 2011[1] and the Miteva article from June 2011.[2] (Opp. at 12-13.) The Palamaras article pre-dates FDA's approval of Sandoz' docetaxel in June 2011; thus, the information in the Palamaras article was equally available to FDA before it approved Sandoz' docetaxel label and cannot constitute "newly acquired information." *See* 21 C.F.R. § 314.3(b); *Blackburn v. Shire Us, Inc.*, No. 2:16-CV-963-RDP, 2017 U.S. Dist. LEXIS 69664, at \*11-12 (N.D. Ala. May 8, 2017) ("newly acquired information" is information "submitted to (or available to) the FDA for the first time" and "new analyses of previously existing data"); *see also* Opening Br. at 16-18.

As for the Miteva article, even assuming that it was published in the final days of June 2011 after FDA's approval of Sandoz' docetaxel the same month, which Plaintiff has not shown, it also does not constitute "newly acquired information." There is no evidence that the Miteva article disclosed any risks of a "different type or greater severity or frequency" than what was previously known and available to FDA, 21 C.F.R. § 314.3(b), regarding a causal association between docetaxel and a clinically significant hazard, adverse reaction, or adverse event, 21 C.F.R.

---

[1] *See* Opp. at Ex. 12 (Palamaras et al., *Permanent Chemotherapy-induced Alopecia: a Review*, J. Am. Acad. Dermatol. 64(3):604-6 (March 2011)).

[2] *See* Opp. at Ex. 11 (Miteva et al., *Permanent Alopecia After Systemic Chemotherapy: a Clinicopathological Study of 10 Cases*, Am. J. Dermatopathol. 33(4): 345-350 (June 2011)).

§ 201.57(c)(6)(i), (c)(7). *See* Opening Br. at 18-20, 23-24. Indeed, by Plaintiff's own admission, the Miteva article was "only building on earlier scholarship highlighting the same in the medical literature." (Opp. at 13).[3] Even accepting *arguendo* Plaintiff's argument that only "some basis" of a causal relationship to "an undesirable effect, reasonably associated with use of [the] drug," is needed for an "Adverse Reaction" under 21 C.F.R. § 201.57(c)(7) (Opp. at 6-9, 12), the Miteva article does not support a CBE label change because it is not "newly acquired information" of a "different type or greater severity or frequency." 21 C.F.R. § 314.3(b); *see also In re Incretin-Based Therapies Prods. Liab. Litig.*, 524 F. Supp. 3d 1007, 1022 (S.D. Cal. Mar. 9, 2021) (granting summary judgment and finding no "newly acquired information" where additional studies "did not rely on information different to that already considered by the FDA's comprehensive review"). Plaintiff also has not shown the cases studied in the Miteva article are "at or above [the] specified rate" for inclusion in the Adverse Reaction section of the label. 21 C.F.R. § 201.57(c)(7)(ii).[4] Furthermore, there is still no evidence Sandoz was aware of the Miteva article or its underlying data before Plaintiff began her treatment with docetaxel in October 2011 or before she ended her treatment in January 2012, as required to prompt even an eligible CBE label change.[5]

---

[3] Indeed, this Court previously held in *Kahn* that even years later, in 2015, there was clear evidence a fully informed FDA still would ***not*** approve the addition of a permanent alopecia warning to the "Warnings and Precautions" section of the label even after further development of the data by the brand manufacturer at FDA's request. (*See* Dkt. No. 11682.)

[4] FDA's *Guidance for Industry*—a publicly available governmental document subject to judicial notice—describes numerous scenarios in which information about adverse events should be excluded from the "Adverse Reactions" portion of the labeling, including where the adverse event is less common or non-severe. *See* FDA, *Guidance for Industry: Adverse Reactions Section of Labeling for Human Prescription Drug and Biological Products — Content and Format* 5-6 (Jan. 2006), *available at* https://www.fda.gov/regulatory-information/search-fda-guidance-documents/adverse-reactions-section-labeling-human-prescription-drug-and-biological-products-content-and.

[5] Plaintiff also argues with respect to the "Adverse Reactions" section of the label that "Sandoz cannot now claim there is no evidence of a causal association with permanent alopecia after asking the FDA to add a warning on that very basis." (Opp. at 20.) This entire section of Plaintiff's Opposition inappropriately conflates what was known to Sandoz (and FDA) during the 2015-2016 timeframe after Sanofi's label change, with what was known to them during the June 2011-January 2012 timeframe at issue. The former has no bearing on the present preemption Motion.

Ultimately, whether Plaintiff argues Sandoz should have updated the "Adverse Reactions" or "Warnings and Precautions" section under the CBE regulation is irrelevant, because regardless of the standard for inclusion in each section, the touchstone for the CBE inquiry is whether there was "newly acquired information" to "add or strengthen a contraindication, warning, precaution, or adverse reaction," 21 C.F.R. § 314.70(c)(6)(iii)(A), and the data on six additional cases of persistent hair loss in the Miteva article was not "newly acquired" but "more of the same."

Second, Plaintiff vaguely references "reports to Sandoz from patients experiencing permanent hair loss, [and] additional adverse events" as some manner of "causation signal" or "safety signal" Sandoz "should have gleaned from the entire body of evidence." (Opp. at 12.) But Plaintiff does not actually cite any evidence of these supposed reports or events. She cannot point to any record evidence showing any such reports or events during the relevant timeframe of June 2011 to January 2012 to support a finding of "newly acquired information."[6]

Third, Plaintiff relies on foreign regulatory submissions by Sandoz "during this timeframe" that "include[d] information about the risk of permanent alopecia." (Opp. at 12) Yet the only foreign regulatory documents referenced in the Opposition are Sandoz' labels in Austria, Germany, and Australia, which Plaintiff vaguely contends are from the 2010 to 2011 timeframe (*id.* at 14) and which in reality are ***not*** from the relevant timeframe of June 2011 to January 2012 (*see* Opening Br. at 10). [7] As demonstrated in Sandoz' Opening Brief, information obtained before

---

[6] Insofar as the Opposition suggests Sandoz somehow did not conduct proper pharmacovigilance monitoring (Opp. at 11-12, 18), those arguments are a red herring. Plaintiff has never alleged any failure to monitor, and there is no evidence of a failure to monitor in the record, as demonstrated by the fact that Plaintiff cannot cite to anything in the Opposition in support of these unsubstantiated assertions.

[7] It is no surprise that Plaintiff is nonspecific about the dates of this foreign labeling, stating only that the labeling is from "2010 and 2011." (Opp. at 14.) However, the record evidence cited by Plaintiff tells the full story: Plaintiff attaches as Ex. 15 to the Opposition the Australian label, which is from April 2011. The Opposition also cites the Ross Report discussing Sandoz' Austrian label dated October 2010; its German label dated February 2011; its Australian label dated April 2011; and updates made to its Austrian, German, and Australian labels in 2013. (*Id.* at 14 & Ex. 15;

or after the relevant time period of June 2011 to January 2012 is irrelevant and cannot constitute "newly acquired information" that could have prompted a CBE label change. *See* Opening Br. at 16-18. Plaintiff also makes no attempt to rebut Sandoz' showing that these foreign labels are the product of different regulatory standards, and thus have no bearing on whether a U.S. label is legally adequate under federal regulatory standards. (Opening Br. at 20-21.)

Fourth, and finally, the Opposition paradoxically suggests pre-approval information was somehow "newly acquired information," asserting Sandoz should have updated its label "shortly after its NDA was approved, based on the strength of the pre-2011 evidence of a causal association." (Opp. at 12.) Aside from this argument being wholly nonspecific and failing to point to any pre-2011 evidence that comprised "newly acquired information" shortly after approval, any pre-2011 evidence by definition cannot be "newly acquired information" as it was equally available to FDA before the initial NDA approval in June 2011. *See* 21 C.F.R. § 314.3(b).

The absence of "newly acquired information" to support a CBE label change confirms it was impossible under federal law for Sandoz to change its label before Plaintiff's use of docetaxel to add the word "permanent" to its warnings. Plaintiff's state-law claims are therefore preempted.

**B.      Plaintiff's Opposition and Response to Sandoz' Statement of Undisputed Material Facts, and Plaintiff's Separate Statement of Undisputed Facts, Do Not Save Plaintiff's Claims.**

Plaintiff has submitted to the Court—but not once mentions in her Opposition—an Opposition and Response to Sandoz' Statement of Undisputed Material Facts ("SUMF Response") and a Separate Statement of Undisputed Facts ("Separate SUF"). Those submissions are irrelevant because the Opposition fails to incorporate them into any argument responsive to Sandoz' Motion.

---

*see also* Opening Br. at Ex. W (Ross Report) ¶¶ 100, 117.) Clearly, the foreign labeling to which Plaintiff refers all either pre-dates or post-dates the relevant time period of June 2011 to January 2012.

This Court need not and should not scour Plaintiff's submissions in an unproductive search for putative "material facts" or arguments Plaintiff has failed to make in her Opposition. *Eveler v. Ford Motor Co.*, No. 16-14776, 2017 U.S. Dist. LEXIS 124084, at *32 n.4 (E.D. La. Aug. 7, 2017) ("After all, '[j]udges are not like pigs, hunting for truffles buried in briefs.'") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)); *id.* (argument "not raised in the body of [the] summary judgment opposition" deemed waived). However, even if this Court were inclined to undertake its own review of the SUMF Response and Separate SUF, nothing contained in either submission changes the outcome—Plaintiff's claims are still preempted.

The SUMF Response quibbles at the margins with the details or specific wording of the SUMF's statements, argues about the statements' completeness or relevance, or seeks to insert additional, unrelated matters under the guise of disputes. But neither the SUMF Response nor the Opposition attempts to show how any of that adds up to a material factual dispute with respect to those facts actually relevant to preemption. The Separate SUF makes statements similar to those in the Opposition concerning Sandoz' regulatory history and requirements; the content of the docetaxel label; and information from adverse event reports, literature, and foreign labeling, all of which pre-date or post-date the June 2011 to January 2012 period—none of which creates a genuine issue of material fact or changes the outcome on preemption, as described herein.

## C.     The Remainder of Plaintiff's Opposition Is Irrelevant.

Much of the rest of Plaintiff's Opposition largely duplicates a previously filed response to a preemption motion filed by Accord Healthcare, Inc. ("Accord") in a separate case before this Court. (Dkt. No. 13595.) These arguments have little or no application here.

The Opposition begins by hairsplitting over the use of the word "generic"—used just once

Case 2:16-md-02740-JTM-MBN   Document 13626   Filed 12/23/21   Page 12 of 15

in Sandoz' Opening Brief—to describe the hybrid § 505(b)(2) pathway,[8] and insisting that Sandoz

is trying to introduce a "follow the leader" principle to support preemption. (*See* Opp. at 1-2, 7-9.)

But Sandoz has not offered a "follow the leader" or "duty of sameness" argument, nor argued that

the § 505(b)(2) approval pathway forecloses Sandoz from submitting a label change under the

CBE regulation **when supported by the requisite "newly acquired information."** (*See* Opening

Br. at 1-2, 12-13.) Sandoz has simply argued that the record contains no evidence of the necessary

"newly acquired information," and therefore federal law prohibited Sandoz from unilaterally

changing its label during the relevant time period. (*Id*. at 15-25.)

The Opposition next argues Sandoz has failed to establish preemption under *Albrecht* and

this Court's rulings in *Earnest* and *Kahn*. (*See* Opp. at 3, 15-18.) But *Albrecht* dealt with a different

issue: what level of proof is required that FDA "would have rejected" an attempted label change

supported by the CBE regulation. 139 S. Ct. at 1675. There was no question in *Albrecht* that "newly

acquired information" existed to support an attempted label change; Merck "conceded that the

FDA's CBE regulation would have permitted Merck to try to change the label to add a warning

before 2010," but argued FDA would have rejected the change. *Id*. The Supreme Court formulated

the two-part test discussed in the Opposition to decide that question, requiring the manufacturer to

show that: (1) it "fully informed" the FDA of the justification for the label change; and (2) FDA

informed the manufacturer it "would not approve" the change. *Id*. at 1678. (*See* Opp. at 9-18.)

Sandoz has not raised that issue here. Rather, Sandoz has demonstrated the proposed label

change was legally impossible from the outset. This is the predicate point absent from *Albrecht*

---

[8] There is nothing improper about this usage. Federal courts have described the § 505(b)(2) pathway as one of two avenues for approval of a "generic drug," the other being an Abbreviated New Drug Application under § 505(j). *See, e.g.*, *Fed. Trade Comm'n v. AbbVie Inc.*, 107 F. Supp. 3d 428, 432 (E.D. Pa. 2015) (describing § 505(b)(2) pathway as one option to "seek[] FDA approval for a generic drug"); *Ferring Pharm., Inc. v. Burwell*, 169 F. Supp. 3d 199, 204 (D.D.C. 2016) (describing a § 505(b)(2) application as "generic competition").

but very much at the center of this motion: There is no record evidence of the "newly acquired information" necessary for Sandoz even to submit a CBE supplement proposing to change its label. Thus, the prerequisite to "try to change the label to add a warning" was absent. FDA cannot be "fully informed" of what does not exist, nor can it approve (or "not approve") a CBE supplement that Sandoz had no legal right to submit. Moreover, unlike in *Earnest* and *Kahn*, Sandoz has presented the Court with the entire record of what was available to it during the relevant time period of 2011 to 2012 and has affirmatively demonstrated that nothing in the record from that time satisfies the threshold requirement of "newly acquired information" necessary for Sandoz to attempt a label change under the CBE regulation. And unlike in *Earnest* and *Kahn*, Plaintiff cannot rebut that point in her Opposition, leaving no fact issue to decide.

Lastly, the Opposition erroneously asserts Sandoz "proposes . . . a convoluted test with shifting burdens" placing the "onus" on Plaintiff to disprove preemption. (Opp. at 3.) Sandoz has not proposed such a test. It does advocate the substantial majority view that the plaintiff carries the initial burden of proving "newly acquired information," with the defendant then responsible for proving the two-part *Albrecht* test once this initial burden is met. (*See* Opening Br. at 13-15 (majority approach avoids forcing manufacturers to "prove a negative").) Plaintiffs' contrary authority reflects a minority view and is inapposite because it is directed to the pleading stage, not summary judgment. (*Id*.) But as noted in the Opening Brief, regardless of where the burden lies, Sandoz has "proved the negative" and shown the absence of "newly acquired information." (*Id*.).

## III.   CONCLUSION

Plaintiff has failed to rebut Sandoz' showing that the record lacks evidence of "newly acquired information" to support a CBE label change prior to January 2012. Because federal law thus prohibited Sandoz from fulfilling its alleged state law obligations, Plaintiff's claims are federally preempted and summary judgment is appropriate.

Dated: December 23, 2021

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

*/s/ Lori G. Cohen*

Lori G. Cohen
R. Clifton Merrell
Evan C. Holden
Terminus 200
3333 Piedmont Road, N.E., Suite 2500
Atlanta, Georgia 30305
(678) 553-2100
(678) 553-2386 (facsimile)
CohenL@gtlaw.com
MerrellC@gtlaw.com
HoldenE@gtlaw.com

Gregory E. Ostfeld
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 476-5056
(312) 899-0420 (facsimile)
OstfeldG@gtlaw.com

*Attorneys for Sandoz Inc.*

11

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2021, a copy of the foregoing document was served on all counsel of record via CM/ECF.

*/s/ Lori G. Cohen*
Lori G. Cohen