**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |  |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | : : : : | MDL NO. 2740 SECTION "H" (5) |
| THIS DOCUMENT RELATES TO: | : : : | HON. JANE TRICHE MILAZZO MAG. JUDGE MICHAEL NORTH |
| *Hilda Adams v. Accord Healthcare, Inc.* *Gloria J. Cooper v. Accord Healthcare, Inc.* *Carol Woodson v. Accord Healthcare, Inc.* | : : : : | |
| *Case No. 2:16-cv-17583* *Case No. 2:18-cv-00194* *Case No. 2:17-cv-12674* | : : : : | |

**<u>DEFENDANT ACCORD HEALTHCARE, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PREEMPTION GROUNDS</u>**

Date: December 27, 2021

Respectfully submitted,

*/s/ Julie A. Callsen*
Julie A. Callsen
Michael J. Ruttinger
Brenda A. Sweet
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone:  216.592.5000
Facsimile:  216.592.5009
Email:    julie.callsen@tuckerellis.com
          michael.ruttinger@tuckerellis.com
          brenda.sweet@tuckerellis.com

*Attorneys for Defendant*
*Accord Healthcare, Inc.*

## I.    INTRODUCTION

Rather than respond to the actual preemption arguments and undisputed facts raised by Accord Healthcare, Inc. ("Accord") in the *Adams*, *Cooper*, and *Woodson* cases, Plaintiffs filed a largely unresponsive opposition, most of which appears to have been copied and pasted from the brief filed over a year ago in *Hughes v. Accord Healthcare, Inc.*, No. 2:17-cv-11769. It is a particularly ill fit because the preemption argument made by Accord here differs in substantial respects from its argument in *Hughes*. For example, Plaintiffs accuse Accord of claiming "blanket immunity" because it is subject to an "ongoing federal duty of 'sameness'" requiring it to *always* use the same labeling as the Reference Listed Drug ("RLD"), Sanofi's Taxotere®, even though Accord does not make that claim anywhere in its motion. *See* Pls' Opp., Rec. Doc. 13595 at 1.

Just over a year ago—after the parties completed preemption briefing in *Hughes*—this Court issued its decision in the *Kahn* case, *In re: Taxotere (Docetaxel) Prods. Liab. Litig.*, 508 F. Supp. 3d 71, 85 (E.D. La. 2020), in which the Court framed the key preemption issue as whether the manufacturer had access to "newly acquired information" warranting a label change under the FDA's Changes Being Effected ("CBE") regulation. Mindful of this Court's direction in *Kahn*, Accord focused its Motion for Summary Judgment here on showing that despite conducting the post-marketing surveillance and pharmacovigilance required of it as the sponsor of a § 505(b)(2) drug product, Accord never had newly acquired information enabling it to submit a CBE about permanent alopecia. As such, it was impossible for Accord to give the warning advocated for by Plaintiffs. Plaintiffs mostly ignore *Kahn* while spending several paragraphs discussing elements of the "clear evidence" preemption standard from this Court's older *Earnest* ruling, a standard neither applicable to nor argued by Accord here.

Plaintiffs dispute neither the key evidence on which Accord premises this Motion nor the regulatory framework under which it sought approval. They admit that Accord instituted Standard

Operating Procedures to ensure compliance with its statutory obligations, reconciled adverse events, and reported new safety information to the FDA. Pls' Opp. and Resp. to Accord's Statement of Undisputed Material Facts ("SUMF Opp."), Rec. Doc. 13595-1 at ¶¶ 21-23. They also admit that Accord's PADERs for docetaxel contained *no* reports of permanent or persistent hair loss between the time of FDA approval and November 2014. *Id.* ¶ 24. And they concede that Accord did not have access to—and therefore, could not review, evaluate, or analyze—other manufacturers' PADERs. *See id.* ¶ 25. Plaintiffs have not identified any other information that Accord *could* have relied on as the basis for a CBE. None of the articles or foreign labeling cited in the Opposition meets the definition of newly acquired information as "reveal[ing] risks of a different type or greater severity or frequency than previously included in submissions to FDA." 21 C.F.R. § 314.3(b). Because submitting a CBE label change is impossible without the condition-precedent of newly acquired information, this record confirms that it was impossible for Accord to add a permanent alopecia warning.

## II.     LAW AND ARGUMENT

### A.     Plaintiffs misstate the standard for federal preemption.

Plaintiffs' myopic focus on the "clear evidence" test from *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668 (2019) ignores that *Albrecht* itself requires courts to assess preemption in *two independent steps*. First, courts must consider whether there is evidence sufficient to trigger a manufacturer's obligation to update its labeling to warn of a potential risk under the CBE regulation, 21 C.F.R. § 314.70(c)(6)(iii)(A). This means information that both meets the regulatory definition of "newly acquired information," 21 C.F.R. § 314.3(b), and which also meets the causal-association standard mandated under 21 C.F.R. § 201.57(c). *Albrecht*, 139 S. Ct. at 1673. If the court concludes that these standards were *not* triggered at the time plaintiffs allege the warning

should have been given, then plaintiffs' failure-to-warn claims are preempted as a matter of law at this initial step.

Clear evidence is germane only to the second step of the preemption test. A defendant who cannot establish preemption at the first step may *still* prevail if it can prove with clear evidence that the FDA would have rejected its CBE label change. But there is no need to consider this second step unless a plaintiff has first identified newly acquired information. *See, e.g.*, *Javens v. GE Healthcare, Inc.*, No. 18-1030-RGA-SRF, 2020 WL 2783581, at *5 (D. Del. May 29, 2020) ("If this preliminary showing is not made, the court need not reach a determination of whether the defendant has shown clear evidence that the FDA would have rejected the proposed label change."); *McGrath v. Bayer HealthCare Pharm. Inc.*, 393 F. Supp. 3d 161, 171 (E.D.N.Y. 2019) (same); *Dresher v. Bracco Diagnostics, Inc.*, No. CV-19-00096-TUC-RM (LCK), 2020 WL 699878, at *4 (D. Ariz. Jan. 31, 2020) (same); *see also Knight v. Boehringer Ingelheim Pharm., Inc.*, 984 F.3d 329, 337-41 (4th Cir. 2021) (reversing judgment for plaintiffs, finding fraud claim preempted due to lack of newly acquired information, without reaching clear-evidence issue).

The Supreme Court's holding that "manufacturers cannot propose a change" under the CBE regulation unless there is "reasonable evidence" of causal association, compels the conclusion that the clear evidence question is not ripe unless and until Plaintiff identifies newly acquired information sufficient to trigger Accord's regulatory duty to submit a CBE. *Albrecht*, 139 S. Ct. at 1679 (citing 21 C.F.R. §§ 314.70(c)(6) & (7)). The FDA cannot reject a warning that a manufacturer cannot propose. That is why virtually every court to address preemption after *Albrecht* has required plaintiffs *first* to show newly acquired information. *See, e.g., Javens*, 2020 WL 2783581 at *5; *Roberto v. Boehringer Ingelheim Pharm., Inc.*, No. CPL-HHDCV16-6068484S, 2019 WL 4806271, at *11 n. 19 (Conn. Super. Ct. Sept. 11, 2019) ("[I]t would be

virtually impossible for the defendants to prove a negative and negate the existence of newly acquired information without knowing exactly what newly acquired information the plaintiff relies upon. Therefore, it is fair to expect the plaintiff to come forward with the newly acquired information in question."); *see also Adkins v. Boehringer Ingelheim Pharm., Corp.*, No. X03HHDCV1606065131S, 2020 WL 1890681, at *5 (Conn. Super. Ct. Mar. 13, 2020) (same).

This is not a "convoluted" or "burden-shifting" standard[1] invented by Defendants in this MDL, as Plaintiffs argue, Pls' Opp. at 3, but the majority rule applied by *every* federal appellate court to address preemption in failure-to-warn cases:

> [T]he Courts of Appeals have synthesized the requirements to properly plead and then prove a state law failure-to-warn claim based on post-drug release information. Thus, to state a claim for failure-to-warn that is not preempted by the FDCA, a plaintiff must plead 'a labeling deficiency that [Defendants] could have corrected using the CBE regulation." *In re Celexa [and Lexapro Mktg. and Sales Practices Litig.*, 779 F.3d 34, 41 (1st Cir. 2015)]; *see also Dolin v. GlaxoSmithKline LLC*, 901 F.3d 803, 813 (7th Cir. 2018). If the plaintiff meets that standard, the burden shifts to the party asserting a preemption to demonstrate that there is "'clear evidence' that the FDA would not have approved a change' to the [drug's] label." *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*, 852 F.3d 268, 283 (3d Cir. 2017).

*Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 708 (2d Cir. 2019) (collecting cases); *see also Knight*, 984 F.3d at 337-38 (noting that under *Albrecht*, the initial step in the preemption analysis focuses on newly acquired information).

The handful of cases cited by Plaintiffs do not buck the trend. In *In re Avandia*, the Third Circuit held the defendant had not met its burden to show "clear evidence," but "also recognized . . . that the absence of newly acquired information would make it impossible to change the label"

---

[1] The fact that preemption is an affirmative defense and that the test follows a burden-shifting framework is irrelevant to this motion because preemption is a decision for courts to address *as a matter of law*, and so there can be no questions of fact left for resolution by a jury. *Albrecht*, 139 S. Ct. at 1676 ("We here decide that a judge, not the jury, must decide the pre-emption question.").

independent from the clear-evidence issue. *Adkins*, 2020 WL 1890681, at *4 (citing *In re Avandia Mktg., Sales & Prods. Liab. Litig.*, 945 F.3d 749, 760 (3d Cir. 2019)). Like in *Albrecht*, the Third Circuit skipped the question of newly acquired information because the manufacturer in *Avandia* conceded that it could have used the CBE process. *In re Avandia*, 945 F.3d at 760. So too in *Crockett v. Luitpold Pharmaceuticals, Inc.*, No. 19-cv-276, 2020 WL 433367 (E.D. Pa. Jan. 28, 2020), in which the defendants did not argue—and the court did not address—which party had the burden of showing newly acquired information, *id.* at *1. *See also Mahnke v. Bayer Corp.*, No. 19-cv-07271, 2020 WL 2048622, at *3 n.3 (C.D. Cal. Mar. 10, 2020) ("*Crockett*, like *Albrecht*, addressed only the second step of the preemption analysis."). And in *Evans v. Gilead Sciences, Inc.*, No. 20-cv-00123, 2020 WL 5189995 (D. Haw. Aug. 31, 2020), the court observed the issue of newly acquired information was premature because it was raised in a pleadings-based motion to dismiss. The court held that "whether 'newly acquired information' existed prior to when Evans was prescribed Truvada, is an issue for post-discovery motion practice." *Id.* at *10.

>   **B.     There is no evidence of "newly acquired information" that would have enabled Accord to add a permanent alopecia warning.**

In the Opposition, Plaintiffs make passing reference to a handful of medical articles and data on which they believe Accord *could* have premised a CBE but fail to address how the regulatory definition has been met.

First, Plaintiffs do not address whether *any* of this information meets the requirement of "not previously submitted to the Agency." 21 C.F.R. § 314.3(b). In the case of the two articles published in 2011 before the FDA approved Accord's NDA for docetaxel—the Palamaras, *et al.* article (March 2011) and the Miteva, *et al.* article (June 2011)[2]—Plaintiffs have not demonstrated

---

[2] Articles published before the date of FDA approval do not support Plaintiffs' failure-to-warn claims, and are not newly acquired information supporting a CBE, because Accord's label was

that those articles, or the underlying data referenced in them, were not already provided to the FDA. *See* Pls' Opp. at 13. The same is true for Dr. Madigan's litigation-driven "safety signal analysis," which is based on consideration of data including the FDA's Adverse Event database—which by its very nature was *already* in the FDA's possession. *See* Pls' Opp. at 14. Courts reject the proposition that adverse event reports qualify as newly acquired information. *Gayle v. Pfizer, Inc.*, No. 19-cv-3541, 2020 WL 1685313, at *5 (S.D.N.Y. Apr. 7, 2020).[3] Nor were there adverse event reports that Accord *could* have submitted during the relevant timeframe; Plaintiffs admit there is no evidence that Accord received *any* adverse event reports concerning permanent hair loss in patients who used docetaxel from June 2011 to November 2014. SUMF Opp. ¶ 24.

The foreign labeling relied on by Plaintiffs also does not qualify as newly acquired information. As Plaintiffs admit, the European Union application they cite was submitted by a *different* entity, Accord Healthcare, Ltd., which is not a defendant. Pls' Opp. at 14 n.8. As Magistrate Judge North previously held, plaintiffs in this MDL have not "established a sufficient link between the Accord defendant in this case and purportedly related foreign Accord entities."

---

adequate as a matter of law at the time of FDA approval. *Maze v. Bayer Healthcare Pharm., Inc.*, No. 4:18-CV-21, 2019 WL 1062387, at *3 (E.D. Tenn. Mar. 6, 2019) (citing *In re Celexa*, 779 F.3d 34, 41 (1st Cir. 2015)). Further, Plaintiffs' regulatory expert admitted that he has no criticism of Accord's pre-approval actions. Ex. A, Dr. David Ross Aug. 31, 2020 Depo. ("Ross Depo.") at 259:2-6; *see also id.* at 259:18-19 (describing the scope of opinions as Accord's "post-approval obligations and actions."). While Plaintiffs allege (without support) that the Miteva article was published "following approval," Pls' Opp. at 13, they offer no reason for presuming, contrary to common periodical practices, that the *American Journal of Dermatopathology* published its June 2011 issue *after* the start of the month and *after* Accord's June 8, 2011 approval date.

[3] Dr. Madigan's analysis occurred years after these Plaintiffs' treatment, and thus could not qualify as newly acquired information. While newly acquired information "may encompass a new analysis of 'old' data," courts agree that "studies published after a plaintiff's injury [are not] relevant to constitute newly acquired information." *Ridings*, 444 F. Supp. 3d at 993; *accord Knight*, 984 F.3d at 338; In re *Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, 185 F. Supp. 3d 761, 770 (D.S.C. 2016).

MDL 2740, Doc. No. 8239, Minute Entry at 1 (E.D. La. Sept. 17, 2019). Further, Plaintiffs do not even attempt to address whether the information submitted in the European Union application was already in the FDA's possession. Plaintiffs' own regulatory expert has testified that at least some of it was; Sanofi's TAX 316 clinical trial data, on which Plaintiffs focus, Pls' Opp. at 14-15, had been available to the FDA "for years." Ex. A, Ross Depo. at 346:14-347:25 ("So your question is—as far as I know, they were available for years to FDA. I'm going to, I'm going to accept that."). Data that has been available to FDA "for years" is not newly acquired information as a matter of law.

Second, Plaintiffs fail to show how any of this data meets the definitional requirement that newly acquired information reveals a risk "of a different type or greater severity than previously submitted to FDA." 21 C.F.R. § 314.3(b). Plaintiffs do not explain what significance—if any— the pre-approval medical literature they cite has in terms of the relative risk of permanent alopecia, but their admission that the Miteva article discusses only "6 cases in which the patients took docetaxel for breast cancer" does not by itself reveal a risk "of a different type or greater severity." Nor do the 5 taxane patients (not docetaxel, specifically) out of 8,430 records (less than 0.083%) mentioned in the Palamaras letter—a point glossed over by Plaintiffs. Rec. Doc. 13595-17 at 604. These numbers pale in comparison to the reports of ongoing/persistent alopecia mentioned in the Master Long-Form Complaint that allegedly occurred prior to Accord's docetaxel approval in 2011, some of which Plaintiffs' expert admits had been in the FDA's possession "for years." *See* 2d Am. Master Long Form Compl. ¶¶ 149-157 (citing studies from 2004-2011 that allegedly reflected rates of PCIA of up to 9.2%) (Rec. Doc. 4407); Ex. A, Ross Depo. At 346:14-347:25 (acknowledging that FDA had access "for years" to TAX 316 results). Plaintiffs do not attempt to show how these few instances were "of a different type or greater severity than previously

submitted to FDA," as required by the regulation. 21 C.F.R. § 314.3(b). There is no indication that Accord Healthcare, Ltd.'s European application contains *any* information different from—much less reveals risks "of a different type or greater severity"—than what Accord submitted to the FDA, especially in light of Dr. Ross's admissions that he *does not know* whether that same information was provided to the FDA. Ex. A, Ross Depo. at 378:22-379:3 ("Q: Let's talk about European labeling. Do you know exactly what information was submitted to the regulators in Europe by Accord Healthcare, Ltd. when it filed the application in June of 2011? A: Exactly what information, no.").

In *Albrecht*, the Supreme Court advised trial courts that to resolve questions of federal preemption, "'courts may have to resolve subsidiary factual disputes' that are part and parcel of the broader legal question." *Albrecht*, 139 S. Ct. at 1680. Doing so is part of the court's obligation to decide preemption as a matter of law. *Id*. Accord's regulatory record is complete and there is *no* evidence indicating the existence of newly acquired information enabling it to change its labeling via the CBE process prior to Sanofi's own update in December 2015. Those undisputed facts, alone, call for preemption.

    **C.**    **Plaintiffs do not even respond to Accord's argument that it does not have access to—or a right of reference to use—Sanofi's clinical trial data that prompted the December 2015 update to the Taxotere label.**

Plaintiffs ignore the crucial fact, established in Accord's opening brief, that Accord lacked both access to, and a right of reference to use, Sanofi's (as the RLD) clinical trial data and adverse event reports. This matters because Plaintiffs' argument rests on the premise that Accord had the *same* statutory post-market surveillance and pharmacovigilance obligations as Sanofi. *See* Pls' Opp. at 8 ("There is no distinction in the law between RLDs and 505(b)(2) drugs as to the availability of CBEs to provide safety information."). Implicit in Plaintiffs' argument is the hypothesis that if Accord has the same statutory obligations as Sanofi, it could have conducted the

same analysis.[4] Accord had access to substantially less information than Sanofi—a difference that Plaintiffs do not dispute—and in any event Plaintiffs do not show that Accord had newly acquired information that would trigger a CBE submission.

First, Plaintiffs have not disputed Accord's position that it does not have, and cannot access or use, Sanofi's internal clinical trial data. In fact, they *concede* that Accord "relied on" Sanofi's Taxotere clinical studies as well as "the FDA's finding of safety and efficacy" for its own § 505(b)(2) docetaxel application. This reliance is by design because, as Accord explained in its opening brief, Congress *intended* to have sponsors of § 505(b)(2) applications rely on what is already known about a drug product as part of the abbreviated application process. *See* Accord's Mem. in Supp., Rec. Doc. 13425-4 at 23. Part of the trade-off for that abbreviated pathway to market, however, is that § 505(b)(2) sponsors do not have the robust clinical trial data that RLDs submit as part of their own NDA submissions. That makes a substantial difference here because as Plaintiffs admit, when the FDA approved Sanofi's December 2015 CBE labeling update, the FDA described Sanofi's data as having "tremendous limitations" on the matter at issue. SUMF Opp. at ¶ 27. Given that the FDA viewed Sanofi's own data as tremendously limited evidence of the alleged causal association between docetaxel and permanent alopecia, it would have been impossible for Accord to make that same update from its much more limited vantage point.

Second, Plaintiffs cannot defeat preemption by speculating that Accord could have re-analyzed adverse events as a foundation for a CBE. Plaintiffs assert that "[t]his publicly available data alone, if properly analyzed under industry-accepted methods, supports a causal association between docetaxel and permanent alopecia." Pls' Opp. at 14. But Plaintiffs do not identify any

---

[4] Tellingly, Plaintiffs do not argue that Accord specifically *violates* any of its statutory post-market obligations, such as to conduct post-market surveillance or to reconcile and report adverse events.

9

deficiency in Accord's analysis of its own adverse events (they concede there were none reporting permanent alopecia during the relevant time frame, SUMF Opp. ¶ 24). *See* n. 4, *supra*. And Plaintiffs do not dispute the fact that the FDA's Adverse Event Reporting System (FAERS) was not publicly available to manufacturers until September 2017, thus leaving Accord unable to use the database to search for (let alone analyze) other manufacturers' adverse events. *See* Accord's Mem. in Supp., Rec. Doc. 13425-4 at 23 n. 9. Moreover, Plaintiffs *concede* "Accord does not have access to other manufacturers' PADERs" from any other source. SUMF Opp. at ¶ 25.

In other words, Accord's argument for impossibility is *not* premised on the argument that it was legally bound to keep the same labeling as Taxotere—as Plaintiffs interpret Accord as arguing—but on the lack of any evidence that Accord *could* have made a CBE update given the absence of anything Plaintiffs can show to be newly acquired information. Accord, as a § 505(b)(2) manufacturer, had access to only a fraction of the underlying clinical trial data and post-market data that Sanofi, as the RLD sponsor, had. That is why when the FDA became concerned about a potential association between docetaxel and permanent alopecia, it asked *Sanofi*, and not the § 505(b)(2) sponsors, to re-analyze its clinical trial data. And these differences are *by design* because Congress, when it enacted the abbreviated § 505(b)(2) pathway, wanted to create a streamlined and cost-effective route to market for lifesaving drugs free from costly disincentives and obstacles, like the need for conducting additional clinical trials on duplicate drugs.

## III.   CONCLUSION

The undisputed record confirms that Accord could not use the CBE regulatory pathway to add a warning about permanent alopecia before Plaintiffs began their chemotherapy treatments. That impossibility, alone, is dispositive, making it unnecessary for this Court to consider the "clear evidence" standard discussed in *Albrecht*. This Court should therefore hold Plaintiffs' failure-to-warn claims preempted and enter judgment for Accord as a matter of law.

Date: December 27, 2021                            Respectfully submitted,

                                                   /s/ *Julie A. Callsen*
                                                   Julie A. Callsen
                                                   Michael J. Ruttinger
                                                   Brenda A. Sweet
                                                   TUCKER ELLIS LLP
                                                   950 Main Avenue, Suite 1100
                                                   Cleveland, OH 44113-7213
                                                   Telephone:     216.592.5000
                                                   Facsimile:     216.592.5009
                                                   Email:         julie.callsen@tuckerellis.com
                                                                  michael.ruttinger@tuckerellis.com
                                                                  brenda.sweet@tuckerellis.com

                                                   *Attorneys for Defendant*
                                                   *Accord Healthcare, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 27, 2021, a true and correct copy of *Defendant Accord Healthcare, Inc.'s Reply Memorandum in Support of Motion for Summary Judgment on Preemption Grounds* was filed with the Court via CM/ECF and notice was provided to all parties via the court filing system.


/s/ *Julie A. Callsen*
Julie A. Callsen

5384525