UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION** | **MDL NO. 16-2740**<br><br>*This document relates to:*<br>Audrey Plaisance, Case No. 2:18-cv-08086 |

**REPLY MEMORANDUM IN SUPPORT OF HOSPIRA'S
MOTION FOR SUMMARY JUDGMENT BASED ON
THE LEARNED INTERMEDIARY DOCTRINE**

Plaintiff's failure-to-warn claim fails under the learned intermediary doctrine for two independent reasons. First, there is no evidence that Ms. Plaisance's prescribing physician, Dr. Chauvin, ever reviewed Hospira's label. Second, Ms. Plaisance cannot show that Dr. Chauvin's prescribing decision would have changed had she been provided a different docetaxel label warning of permanent hair loss. Plaintiff's Opposition fails to offer any valid response on either ground. Instead, Plaintiff puts forth a series of misguided arguments that have already been rejected by this Court and the Fifth Circuit. The Court should apply those precedents and grant summary judgment.

**I.     THERE IS NO EVIDENCE THAT DR. CHAUVIN READ HOSPIRA'S DOCETAXEL LABEL.**

As this Court has explained, "[w]hen a physician does not recall ever reading the label at issue, the learned intermediary doctrine requires summary judgment for the manufacturer." *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Stewart)* (Apr. 19, 2021), ECF No. 12494, at 6 ("*Stewart*"). Accordingly, this Court has now twice granted summary judgment in this litigation where there is no evidence that the doctor read the manufacturer's label. *See id.* (*Stewart*); *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Guilbault)* (Nov. 24, 2021), ECF No. 13462 ("*Guilbault*"). The Opposition does not provide any basis for distinguishing these decisions. Instead, its arguments are nothing more than a rehash of arguments that this Court has already rejected.

1

1. Plaintiff argues that the Court's previous rulings are "inapposite" because "Dr. Chauvin *did review* the prescribing information and the drug labeling for **docetaxel** before first prescribing it." *See* Pl.'s Mem. Opp. Hospira's Mot. Summ. J. Re Learned Intermediary Doctrine ("Opp.") at 10, 16, ECF No. 13501 (bold emphasis added). Not so. Dr. Chauvin recalled reviewing the *Taxotere* docetaxel labeling, but not *Hospira's* docetaxel labeling. Dr. Chauvin testified that she reviewed the "docetaxel" labeling before she "first prescribed docetaxel," Br. Ex. D, ECF No. 13383-9 (Deposition of Dr. Chauvin (Oct. 15, 2020) ("Chauvin Dep.")) at 88:20-23, which was in 1996. Hospira's Mem. Supp. Mot. Summ. J. Re Learned Intermediary Doctrine ("Br.") at 2, ECF No. 13383-1 (citing Hospira's Statement of Undisputed Facts ("SOF") ¶¶ 15-17, ECF No. 13383-2). The Hospira docetaxel labeling was not released until 2011. SOF ¶ 15. Thus, her testimony does not refer to the Hospira docetaxel label. Indeed, as Plaintiff admits, "Dr. Chauvin does not recall specifically reviewing *Hospira's docetaxel label* before prescribing docetaxel to Mrs. Plaisance …." Opp. at 3 (emphasis added); *see also* Br. at 3 (citing SOF ¶ 18).

Dr. Chauvin's review of the Taxotere labeling does not distinguish this case from this Court's previous rulings because the doctor also reviewed the Taxotere labeling in those cases. As the Court explained in *Stewart*, "Dr. McCanless testified that … he was familiar with the Taxotere label …." *Stewart* at 5; Opp. at 17-18. Like Dr. Chauvin, Dr. McCanless had read the Taxotere label but not the label for the unbranded docetaxel that the plaintiff received. Dr. McCanless testified in *Stewart*:

> Q. And you're familiar with the risks discussed on the Taxotere label; is that correct?
>
> A. Yes.
>
> …
>
> Q. And if you're familiar with the Taxotere label, would you have also reviewed the docetaxel label for the generic form of it?
>
> A. No.

> Q. And do you recall ever reviewing the docetaxel label since you knew the Taxotere label?
>
> A. No.

Ex. F, Deposition of Dr. Christopher McCanless (May 13, 2019), at 50:12-25; *see also* ECF No. 11473-15 (Sandoz's submission of Dr. McCanless's deposition testimony in *Stewart*). *Guilbault* also involved the same fact pattern:

> Q. And at the time you prescribed Docetaxel to Ms. Guilbault in September of 2013, would you have reviewed at some point before then the labeling for Taxotere, the branded product?
>
> A. I probably had at some point.
>
> Q. Did you review the Hospira Docetaxel label before prescribing Docetaxel for Ms. Guilbault?
>
> A. I don't recall.

Hospira's Reply Mem. Supp. Mot. Summ. J. Re Learned Intermediary Doctrine (*Guilbault*) at 2, ECF No. 12619-1 (quoting Ex. G, Deposition of Dr. Chris Theodossiou (Nov. 11, 2020) at 86:9-86:16); *see also* ECF No. 12538-4 (Hospira's submission of Dr. Theodossiou's deposition testimony in *Guilbault*).[1]

Thus, the relevant question is whether Dr. Chauvin reviewed *Hospira's label* (not the Taxotere label or any other manufacturer's label). *See Stewart* at 5-7. If she did not review the Hospira label, then there is no causation because any change in Hospira's warnings would not have caused Dr. Chauvin to change her prescription. *Id.* The same reasoning applies here.

---

[1] Citing *Bell v. Ethicon Inc.*, 2021 WL 1111071 (S.D. Tex. Mar. 23, 2021), Plaintiff argues that this case is distinguishable because it involves only a "lack of recall of having read and relied on a warning label before making treatment decisions for an individual patient." Opp. at 17. In *Bell*, however, the prescribing physician testified that she "had read the [manufacturer's labeling materials] previously and was familiar with them," even though she could not recall whether she had reviewed them in connection with that particular plaintiff's medical care. *Bell*, 2021 WL 1111071, at *3. Here, Dr. Chauvin does not recall reading the Hospira labeling. Thus, *Bell* is inapposite.

3

2. Lacking evidence that Dr. Chauvin ever read the Hospira docetaxel label, Plaintiff then asks the Court to speculate that Dr. Chauvin may have been made aware of labeling changes from other sources like "journal articles, UpToDate and associated emails, and the NCCN guidelines." Opp. at 10; *see id.* at 2. But whatever knowledge Dr. Chauvin had about docetaxel—whether through other docetaxel labels, articles, or UpToDate—is irrelevant because there is no evidence she gleaned any of that information from *Hospira's labeling*. *See* SOF ¶¶ 18-19. In *Stewart,* the plaintiff argued, as here, that because the prescribing physician "use[d] a service called UpToDate, he would have learned of a label update for permanent alopecia through this service." *Stewart* at 7. The Court explained that while that "scenario[] [is] possible," it is "nothing more than [a] possibilit[y]" that cannot defeat summary judgment. *Id.* (quoting *Pustejovsky v. Pliva, Inc.*, 623 F.3d 271, 277 (5th Cir. 2010)); *see also* Guilbault's Mem. Opp. Hospira's Mot. Summ. J. Re Learned Intermediary Doctrine ("*Guilbault* Opp.") at 13-14, ECF No. 12586 (addressing same argument).

3. Plaintiff then compounds her speculation by citing a declaration from Dr. Bosserman that "[i]f additional safety information or warning was added, such change would have sounded the megaphone about this sentinel information through electronic and subscription means, not just through the paper label and package insert." Opp. at 16. But this distinction between electronic versus paper copies of the labeling is entirely irrelevant. Plaintiff does not have evidence that Dr. Chauvin reviewed the Hospira label through *any* source—electronic or otherwise.

Moreover, Plaintiff's citation to Dr. Bosserman's declaration only accentuates Plaintiff's lack of evidence. Whether Dr. Chauvin read the Hospira label is answered by the evidence in this case. Dr. Bosserman's declaration does not even mention Ms. Plaisance, Dr. Chauvin, or any facts of this case. Thus, it is not evidence to defeat summary judgment.[2]

---

[2] *See also* Hospira's Opp. to Pl.'s Mot. Leave File Supp. Evid. Supp. Her Opp. to Hospira's Mot. Summ. J. Re Learned Intermediary Doctrine (*Guilbault*) at 4-8, ECF No. 13245 (addressing virtually identical declaration).

4

4. Plaintiff's Opposition mentions in passing the heeding presumption, but that argument also has been raised and rejected. *Compare* Opp. 13, 17, 19, *with* Stewart's Mem. Opp. Sandoz's Mot. Summ. J. at 12, 14, ECF No. 11661. The heeding presumption is just that— a presumption that is rebuttable. Courts in Louisiana have found that the heeding presumption was overcome in prescription drug and device cases where, as here, the prescribing physician did not read and rely on the product's labeling. *See, e.g.*, *Felice v. Valleylab, Inc.*, 520 So.2d 920, 927 (La. Ct. App. 1987). Plaintiff attempts to distinguish *Pustejovsky v. Pliva, Inc.*, 623 F.3d 271 (5th Cir. 2010), because it was under Texas law, Opp. at 17; but as this Court explained in *Stewart*, a case under Louisiana law, the "[heeding] presumption can be rebutted with evidence showing that an adequate warning would have been futile under the circumstances." *See Stewart* at 7-8 (holding that there was insufficient evidence of causation based on the prescriber's actual testimony). Dr. Chauvin's testimony shows that any additional warning would have been futile and thus rebuts the heeding presumption.

## II.  DR. CHAUVIN WOULD NOT HAVE CHANGED HER PRESCRIPTION BASED ON A DIFFERENT WARNING.

Plaintiff's Opposition is based on the proposition that "[e]ven if Plaintiff's oncologist's prescribing *recommendation* of docetaxel would not have changed in the face of an additional permanent alopecia warning, she *would have discussed the warning* in her counseling of her patient and this would have ultimately impacted Ms. Plaisance's consent to chemotherapy treatment with docetaxel." Opp. at 2. Plaintiff argues that causation is established based on a four-part "causation chain": "(1) Dr. Chauvin *would have* advised Mrs. Plaisance of the risk of permanent alopecia associated with docetaxel, (2) Mrs. Plaisance *would have* inquired about other options, (3) Dr. Chauvin would have recommended a TC regimen but *discussed* the alternative preferred AC regimen and its risks[,] and (4) Mrs. Plaisance, seeking to avoid the risk of permanent hair loss, *may have* elected the alternative regimen." Opp. at 14-15. This argument, however, is inconsistent with the controlling law and the facts.

As an initial matter, while Plaintiff focuses heavily on Ms. Plaisance's treatment preferences, the law is clear that, to establish proximate causation, Plaintiff must show that the *doctor's* prescribing decision would have changed: "[T]he plaintiff must show that a proper warning would have changed the decision of the *treating physician*, i.e. that but for the inadequate warning, the treating physician would not have used or prescribed the product." *Stewart* at 5 (emphasis added) (quoting *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1099 (5th Cir. 1991)). The focus of the inquiry is on the "prescribing physician's decision to prescribe the drug." *Phillips v. Sanofi U.S. Servs., Inc. (In re Taxotere (Docetaxel) Prods. Liab. Litig.)*, 994 F.3d 704, 709 (5th Cir. 2021) (per curiam). Accordingly, "to the extent that patient choice is relevant, that relevance is cabined to helping us decide whether [plaintiff's] evidence—including that of other available treatments and the importance she places on her appearance—is sufficient to introduce a genuine dispute of material fact *as to whether* [the prescribing physician's] *prescribing decision would have been different* had [s]he known that [docetaxel's] associated risk of alopecia was potentially permanent rather than temporary." *Id.* (first emphasis added).

The undisputed evidence establishes that Dr. Chauvin's prescribing decision for Ms. Plaisance would not have been any different today even if she had known of the risk of permanent hair loss. Plaintiff argues that Dr. Chauvin's testimony "is less than definitive" because even though Dr. Chauvin said she would "still *consider*" the same regimen, she has also been "paying attention" to lawyer advertisements. Opp. at 8. But Dr. Chauvin was perfectly clear that, whatever the influence of these ads, her prescribing decision for Ms. Plaisance has not changed. She still believes that the docetaxel regimen "was the right treatment for [Ms. Plaisance's] cancer," SOF ¶ 21; Br. Ex. D (Chauvin Dep.) at 135:9-16, and she does "not feel that there was another treatment option for Mrs. Plaisance that would have been a better treatment option for her," SOF ¶ 22; Br. Ex. D (Chauvin Dep.) at 89:14-19.

Ms. Plaisance has offered no evidence to show that her personal preferences as a patient would have changed Dr. Chauvin's prescribing decision. Plaintiff does not even *argue* that she has met the controlling legal standard. She merely contends that Dr. Chauvin would have

6

"*discussed*" an alternative regimen (Adriamycin and Cytoxan), and that Ms. Plaisance "*may have elected the alternative regimen.*" Opp. at 14-15. But that is not the law. She must show that her choices would have caused Dr. Chauvin to change her prescribing decision. *See Phillips*, 994 F.3d at 709.

Plaintiff has not attempted to meet the required legal standard because the facts do not support it. The *only* circumstance Dr. Chauvin identified that may have prompted a change in her prescribing decision was if Ms. Plaisance had "absolutely refused" to take docetaxel. SOF ¶ 23; Br. Ex. D (Chauvin Dep.) at 83:2-3. In that situation, she "probably would have given her [Adriamycin plus Cytoxan]," SOF ¶ 23; Br. Ex. D (Chauvin Dep.) at 83:3, but "would have noted the 2 percent risk of deadly acute leukemia from Adriamycin and recommended against that." SOF ¶ 23; Br. Ex. D (Chauvin Dep.) at 49:25-50:2.

The Opposition does not offer *any* evidence that Ms. Plaisance would have "absolutely refused" to take docetaxel. Plaintiff argues that Ms. Plaisance was "self-reliant" and has "spoken out for her wishes," Opp. at 6, 16, but that comment does not support a finding that she would have "absolutely refused" to follow Dr. Chauvin's recommendation on what chemotherapy she should take to treat her breast cancer. Ms. Plaisance's testimony demonstrates otherwise. When asked specifically, Ms. Plaisance indicated she "would have asked Dr. Chauvin to *look into* another option that wouldn't have caused permanent hair loss," SOF ¶ 14; Br. Ex. B, ECF No. 13383-7 (Deposition of Audrey Plaisance (Sept. 22, 2020) ("Plaisance Dep.")), at 270:1-3 (emphasis added), but she never said she would have refused docetaxel or gone against Dr. Chauvin's medical advice, *see* SOF ¶ 8; Br. Ex. B (Plaisance Dep.) at 29:23-30:3. Even more, Ms. Plaisance admitted that she "was not concerned about [her] hair loss at the time." SOF ¶ 12; Br. Ex. B (Plaisance Dep.) at 187:15-16. Thus, under the controlling legal standard, Plaintiff has not shown proximate causation.

7

### III. PLAINTIFF CITES NO APPLICABLE LEGAL AUTHORITY FROM THIS COURT.

Ms. Plaisance asks the Court to analogize the facts of her case with three other cases from the Taxotere MDL where the Court found that there was a triable issue of fact on causation: *Kahn*, *Durden*, and *Mills*.³ All three cases are inapposite.

**Kahn**. Hospira explained in its opening brief why *Kahn* is inapplicable, Br. at 12, and the Opposition makes *no attempt* to rebut these arguments. Nor could she, because in *Kahn*, the Court denied summary judgment where the prescriber testified that Taxol was "an adequate alternative to Taxotere" and the Court found no evidence in the record suggesting Taxol would be unsuitable for Ms. Kahn. *Kahn* at 6. Those facts are completely inapplicable here, where (i) Dr. Chauvin would not have prescribed Taxol for Ms. Plaisance; and (ii) she would have prescribed a different regimen for Ms. Plaisance only if she "absolutely refused" to take docetaxel—a fact wholly unsupported by the record. SOF ¶¶ 23-24; Br. Ex. D (Chauvin Dep.) at 81:24-25, 83:2-3, 8-10.

**Durden and Mills**. As an initial matter, this Court's decisions in *Durden* and *Mills* predate the Fifth Circuit's decision in *Phillips,* where the Fifth Circuit clarified that the proximate-causation inquiry "is focused on the prescribing physician's decision to prescribe the drug," and that, while patient choice is relevant, "that relevance is cabined" to narrow considerations. 994 F.3d at 709. Accordingly, *Durden* and *Mills* have been superseded by the Fifth Circuit's decision in *Phillips*.

Moreover, the facts of *Durden* and *Mills* are distinguishable.

Ms. Durden was "specifically concerned about hair loss," and if the oncologist, who was familiar with the Taxotere label, had known of the risk of PCIA, she "may have helped Durden identify an appropriate non-Taxotere regimen to take." *Durden* at 5. Those facts are a far cry

---

³ *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Kahn)* (July 14, 2021), ECF No. 13062 ("*Kahn*"); *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Durden)* (July 23, 2020), ECF No. 10832 ("*Durden*"); and *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Mills)* (July 9, 2019), ECF No. 7571 ("*Mills*").

from the evidence here. First, unlike Ms. Durden, Ms. Plaisance testified she was *not concerned* with hair loss at the time of her treatment. SOF ¶ 12, Br. Ex. B (Plaisance Dep.) at 187:13-16. Second, Dr. Chauvin (i) was not familiar with the Hospira label and (ii) would have considered prescribing a different regimen *only if* the patient had absolutely refused docetaxel. SOF ¶¶ 18, 23. *Durden* is not analogous.

In *Mills*, although the physician thought that Taxotere was the right choice for Ms. Mills's cancer, she hedged by saying that it is "my job to give you my recommendations as a physician and alternatives, you know, but I respect every patient's authority over themselves." *Mills* at 16-17. By contrast, Dr. Chauvin identified only one scenario in which she may have changed her prescribing decision: if Ms. Plaisance has "absolutely refused" to take docetaxel. SOF ¶ 23. The Court also found that *Mills* presented a triable issue of fact on whether Ms. Mills would have followed her doctor's recommendation—an issue not present here—because Ms. Mills did not always follow the recommendations, including by skipping her last chemotherapy infusion due to side effects. *Mills* at 17. Ms. Plaisance, by contrast, testified that she trusted her doctor's medical judgment and followed the advice of the doctors treating her for breast cancer. SOF ¶ 8; Br. Ex. B (Plaisance Dep.) at 29:13-30:3. *Mills* therefore is not instructive.

## CONCLUSION

For the foregoing reasons, the Court should grant Hospira's Motion and dismiss Ms. Plaisance's claims.

Date: December 21, 2021               Respectfully submitted,

*/s/ Heidi K. Hubbard*
Heidi K. Hubbard
Richmond T. Moore
Neelum J. Wadhwani
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
Telephone: 202-434-5000
hhubbard@wc.com

John F. Olinde (Bar No.1515)
Peter J. Rotolo (Bar No. 21848)
**CHAFFE MCCALL LLP**
1100 Poydras Street
New Orleans, LA 70163
Phone: 504-858-7000
olinde@chaffe.com

*Counsel for Defendants Hospira, Inc., Hospira Worldwide, LLC, and Pfizer Inc.*

## CERTIFICATE OF SERVICE

  I hereby certify that on this 21st day of December 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

                /s/ *Heidi K. Hubbard*