UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 16-2740<br><br>*This document relates to:*<br>Audrey Plaisance, Case No. 2:18-cv-08086 |

**REPLY MEMORANDUM IN SUPPORT OF HOSPIRA'S MOTION TO
EXCLUDE OR LIMIT OPINIONS OF DR. ELLEN G. FEIGAL**

Plaintiff concedes that she is offering Dr. Feigal *solely* for a general causation opinion. Plaintiff then asks the Court to permit Dr. Feigal's general causation opinion on the basis that the Court has allowed it in prior cases and Hospira's *Daubert* motion presents "nothing new." Mem. Opp. Hospira's Mot. Exclude or Limit Opinions of Dr. Ellen G. Feigal ("Opp.") at 2, ECF No. 13503. Not true. Hospira raised arguments not previously before this Court. These new arguments go beyond challenges to general causation, including (1) Dr. Feigal's mechanism-of-action opinion (which the Opposition now says she is not offering) and (2) her flawed case-counting methodology. Because Plaintiff has not met her burden of showing that these opinions are reliable and relevant, they should be excluded.[1] In addition, because Plaintiff has not offered any valid response to Hospira's challenges to Dr. Feigal's general causation opinions, they too should be excluded.

**I.     PLAINTIFF CONCEDES DR. FEIGAL WILL NOT OFFER ANY OPINION OTHER THAN GENERAL CAUSATION.**

Plaintiff agrees that Dr. Feigal "is offered to address one specific topic: general causation," and nothing else. Opp. at 5. Accordingly, the parties agree that Dr. Feigal will *not offer* opinions on the following topics:

---

[1]  Plaintiff spent approximately two pages of her Opposition discussing Dr. Feigal's qualifications as an expert. Opp. at 1-2. Hospira *did not move* on this topic. Plaintiff's elaboration on Dr. Feigal's qualifications is nothing more than a distraction from the merits of Hospira's Motion.

1

- **any case-specific issues**, Opp. at 5;

- **the standard of care and informed consent**, *id.*;

- **alternative treatments for breast cancer**, *id.* at 5-6;

- **FDA regulatory issues**, *id.* at 6;

- **Hospira's labeling, including any foreign labeling**, *id.* at 6 & n.6;

- **notice of what Hospira knew or should have known about the risk of PCIA**, *id.* at 7;

- **signal detection**, *id.* at 6-7;

- **mechanism of action**, *id.* at 8-10;

- **and *any* topic other than general causation**, *id.* at 5.

Accordingly, Dr. Feigal should be precluded from offering opinions at the *Plaisance* trial on these topics or any topic other than general causation.

Plaintiff suggests that Hospira's request to seek the exclusion of these opinions was both "inappropriate" and a "waste[]" of time because these opinions were "not … expressed in Dr. Feigal's report, and as a result could not be offered at trial." Opp. at 7. But these opinions *were* in Dr. Feigal's report. While Hospira appreciates and accepts the clarification concerning the bounds of Dr. Feigal's opinions both during Dr. Feigal's deposition and now in Plaintiff's Opposition, *see id.* at 5-7, Dr. Feigal's report indicated that she would offer more opinions beyond just general causation. Dr. Feigal has since disclaimed those opinions as mere "preamble" and "background." Br. Ex. B, ECF No. 13377-5 (Deposition of Dr. Feigal (Sept. 29, 2021) ("Feigal Dep.")), at 133:1, 135:2. Given this potential mismatch between Dr. Feigal's broadly written expert report and her deposition testimony, it is appropriate for Hospira to make sure the record is clean and unambiguous on what Dr. Feigal can testify to at the *Plaisance* trial. Resolving these issues now will save the Court, the parties, and the jury time by avoiding unnecessary disputes at trial concerning the scope of Dr. Feigal's testimony.

## II. DR. FEIGAL'S MECHANISM OF ACTION/BIOLOGICAL PLAUSIBILITY OPINIONS SHOULD BE EXCLUDED.

Dr. Feigal undertakes a Bradford Hill analysis. Part of that analysis is whether there is a biologically plausible mechanism of action for how docetaxel can cause permanent chemotherapy-induced alopecia ("PCIA"). *See, e.g.*, *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Earnest)* (Aug. 23, 2019), ECF No. 8094, at 5 (citing *Burst v. Shell Oil Co.*, 2015 WL 3755953, at *5 (E.D. La. June 16, 2015)). The Opposition admits that Dr. Feigal will "not offer an opinion on the mechanism of action of how docetaxel causes PCIA." Opp. at 8. Instead, it states that, as part of her biological plausibility analysis, she intends to "recount[]" two articles where the authors speculated on a "hypothesized" mechanism of action. *See id.* at 8-9.

The problem is that these two articles do not provide a sufficient basis for Dr. Feigal to opine on biological plausibility. Plaintiff claims that the two articles Dr. Feigal cites represent the "prevailing theory" on how docetaxel might cause PCIA, Opp. at 10, but Dr. Feigal's own testimony refutes that claim. She admits that she does not know whether the theorized mechanism of action is "generally accepted in the dermatological community" and would have to defer the question to a "dermatologic expert." Br. Ex. B (Feigal Dep.) at 131:17-25.

As explained in *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Prods. Litig. (Talc)*, 509 F. Supp. 3d 116, 175 (D.N.J. 2020), while "Bradford Hill and *Daubert* do not require that an expert *prove* the proposed mechanism," they do require "*reliable support* that demonstrates that the mechanism is *plausible*," *id.* (second emphasis added). Plaintiff argues that *Talc* is "inapplicable" because the court allowed the experts to offer a theory of biological plausibility "based on the various studies and their past scientific experience and knowledge." Opp. at 9. But Dr. Feigal does not offer any such evidence. She admits that she does not have the experience and knowledge to address this question. Br. Ex. B (Feigal Dep.) at 131:17-25. And although the *Talc* case admitted one theory of biological plausibility, it also excluded the experts' secondary theory because it was not based on "reliable scientific knowledge or reasoning." 509 F. Supp. 3d at 175; *see also id.* at 176-77 (excluding experts'

3

opinion where, aside from "claiming that the … theory may be plausible, they fail[ed] to otherwise provide any scientific basis for the theory").[2]  What is more, Dr. Feigal's theory is not even endorsed by Dr. Plunkett, plaintiff's other expert who purports to offer opinions on biological plausibility and mechanism of action.  *See* Hospira's Mem. Supp. Mot. Exclude or Limit Opinions of Dr. Laura M. Plunkett at 13-15, ECF No. 13379-1.  Thus, because Dr. Feigal has based her opinion on just two articles that, at best, offer speculation as to a mechanism of action, *see* Hospira's Mem. Supp. Mot. Exclude or Limit Opinions of Dr. Ellen G. Feigal at 10-11, ECF No. 13377-1, Dr. Feigal should not be permitted to provide any testimony on this hypothetical mechanism at trial.

### III.    DR. FEIGAL'S CASE-COUNTING EXERCISE IS UNRELIABLE.

*First*, Plaintiff attempts to lump Dr. Feigal's case-counting exercise in with her general causation opinions, but Hospira's objection to her calculations is not a challenge to her general causation opinions.  It is a new challenge specifically tailored to these calculations and not her general causation opinions generally.

*Second*, Plaintiff's Opposition further demonstrates that Dr. Feigal's case-counting should be excluded.  Plaintiff claims that "Hospira inappropriately characterize[s] Dr. Feigal's methodology as 'case counting' and further misrepresent[s] the basis for the numbers set out in Table 2 of her report." Opp. at 10-11.  But Plaintiff acknowledges that Dr. Feigal engaged in a simple addition exercise:  Dr. Feigal "does not opine on the disparity in the reported cases, she simply sets out what is in the literature.  The math is what the math is." *Id.* at 11.  This is a plain concession that Dr. Feigal has simply added up case reports of PCIA.

---

[2]  Hospira cited *Tamraz v. Lincoln Electric Co.*, 620 F.3d 665, 670 (6th Cir. 2010), for the general proposition that a "working hypothesis" is not acceptable scientific "knowledge" under Federal Rule of Evidence 702, while at the same time recognizing that biological plausibility does not require proof.  *See Talc*, 509 F. Supp. 3d at 175.  But an expert's biological plausibility opinion must still be "derived from and supported by reliable scientific knowledge and reasoning," *id.* at 177—a standard that Dr. Feigal does not satisfy.

Moreover, Plaintiff's concession that Dr. Feigal "does not opine on the disparity" is exactly the problem. Opp. at 11. All she does is offer a mathematical calculation, with no relevant opinion. Dr. Feigal's conclusion—that "the number of published cases of PCIA in Taxotere/docetaxel-based regimens are 6.4 to 6.7 times higher than in non-Taxane based regimens and are 6.8 to 8.1 times higher than in Taxol/paclitaxel-based regimens"—does not assist the jury in determining causation because she does not claim that these numbers represent an increased risk of experiencing PCIA as a result of docetaxel exposure. Br. Ex. A, ECF No. 13377-4 (Expert Report of Dr. Feigal) at 60; *see also id.* at 73. Nor could she make that claim. Dr. Feigal *cannot* calculate risk because she only calculates a numerator (number of reported cases) without providing a denominator (total number of patients who took each drug in the studies). Thus, Plaintiff does not—and cannot—explain how Dr. Feigal's mathematical analysis of Table 2 is anything other than what it is: an irrelevant counting of the cases in the PCIA literature.

*Third,* Plaintiff altogether fails to respond to Hospira's argument that these calculations should be excluded under Federal Rule of Evidence 403. Plaintiff has no answer to the point that Dr. Feigal's calculations will likely be misinterpreted by the jury as representing increased risk. Fed. R. Evid. 403; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) (explaining a court should "'exercise[] more control over experts than over lay witnesses'" because "'[e]xpert evidence can be both powerful and quite misleading'" (internal citation omitted)). Indeed, Plaintiff's Opposition itself illustrates this confusion by conflating Hospira's case-counting and general causation arguments. *See* Opp. at 10-14. This only reinforces Hospira's position that Dr. Feigal's case-counting should be excluded from the jury. *See* Fed. R. Evid. 403.

## IV. DR. FEIGAL'S GENERAL CAUSATION OPINION SHOULD BE EXCLUDED.

*First,* Plaintiff did not adequately respond to Hospira's point that Dr. Feigal failed to separately assess alternative causes of PCIA. Plaintiff says it is "not true" that Dr. Feigal failed to consider other potential causes of PCIA. Opp. at 12. That response misses the point. The

5

issue is not just that there are reports of PCIA with docetaxel-based and non-docetaxel-based regimens. Rather, the problem with Dr. Feigal's analysis is that, even with the presence of PCIA in docetaxel-based regimens, Dr. Feigal simply assumes that it was docetaxel that caused the PCIA—and not the other chemotherapy medications in that regimen. *See Burst*, 2015 WL 3755953, at *7 (explaining analyses "that note[] 'that the subjects were exposed to a range of substances and then nonspecifically note[] increases in disease incidence' can be disregarded" (quoting *LeBlanc ex rel. LeBlanc v. Chevron USA, Inc.*, 396 F. App'x 94, 99 (5th Cir. 2010) (per curiam))), *aff'd*, 650 F. App'x 170 (5th Cir. 2016) (per curiam). Dr. Feigal's own testimony admits to this flawed methodology. During the *Earnest* trial, she testified:

> Q. Doctor, sitting here today, can you tell me, yes or no, whether it was the [Adriamycin] that caused the permanent alopecia in those 16 patients?
>
> A. It could be either [Adriamycin] or [Cytoxan/cyclophosphamide] or both.
>
> Q. And so you would agree with me that it could have been the [Adriamycin], the [Cytoxan/cyclophosphamide], or both, correct?
>
> A. It could have been both, right.

Br. Ex. H, ECF No. 13377-11, Trial Tr., *Earnest v. Sanofi-Aventis U.S. LLC*, No. 16-cv-17144 (Sept. 20, 2019), at 1236:16-22.

Plaintiff now attempts to rewrite Dr. Feigal's *Earnest* testimony by saying that Dr. Feigal has somehow discounted Adriamycin and Cytoxan/cyclophosphamide as potential causes of PCIA because those medications were received in both arms of the TAX 316 study. Opp. at 12-13. But, as illustrated by the snapshot of transcript testimony above, that is *not* the testimony Dr. Feigal gave in *Earnest*.

*Second,* Plaintiff's citation of irrelevant Sanofi and Hospira documents only underscores the unreliability of Dr. Feigal's causation opinions. The Opposition cites a Sanofi Clinical Overview, but it was discussing the regulatory standard for a labeling change, not general causation under *Daubert*. *See* Opp. at 13. Similarly, Plaintiff argues that Hospira was "privy to" certain Sanofi information by referencing foreign labeling and the fact that Dr. Juergen Schmider

worked at Sanofi. *Id.* This appears to be making a "notice" argument, which Dr. Feigal has disclaimed and is not relevant to Dr. Feigal's general causation opinion. *See id.* at 7. Moreover, with regard to foreign labeling, Plaintiff has already confirmed that Dr. Feigal will offer no opinion on foreign labels. *See id.* at 6 n.9. Dr. Feigal also admitted she has not read the foreign labels, so she cannot rely on them in support of a general causation opinion. Br. Ex. B (Feigal Dep.) at 78:25-80:22. Thus, the fact that Plaintiff must resort to citing these sources speaks for itself as to the reliability of Dr. Feigal's opinions.

## CONCLUSION

For the foregoing reasons, the Court should exclude the expert testimony of Dr. Feigal under Federal Rule of Evidence 702.

Date: December 21, 2021

Respectfully submitted,

*/s/ Heidi K. Hubbard*
Heidi K. Hubbard
Richmond T. Moore
Neelum J. Wadhwani
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
Telephone: 202-434-5000
hhubbard@wc.com

John F. Olinde (Bar No.1515)
Peter J. Rotolo (Bar No. 21848)
**CHAFFE MCCALL LLP**
1100 Poydras Street
New Orleans, LA 70163
Phone: 504-858-7000
olinde@chaffe.com

*Counsel for Defendants Hospira, Inc., Hospira Worldwide, LLC, and Pfizer Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 21st day of December 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ <em>Heidi K. Hubbard</em>