**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | **MDL NO. 16-2740** <br><br> *This document relates to:* <br> Audrey Plaisance, Case No. 2:18-cv-08086 |

**REPLY MEMORANDUM IN SUPPORT OF HOSPIRA'S MOTION TO**
**EXCLUDE OR LIMIT OPINIONS OF DR. ANTONELLA TOSTI**

Plaintiff's Opposition avoids any engagement with the relevant facts, history, medical records, and key opinions and testimony at issue. Dr. Tosti employs a novel and unsupported methodology, and her application of it does not fit the facts of Ms. Plaisance's case. In addition, Dr. Tosti's opinions are based on an admittedly incomplete and inaccurate review of Ms. Plaisance's dermatology records concerning her long-standing hair loss. Unable to refute these flaws, Plaintiff—much like Dr. Tosti—minimizes or outright ignores the numerous significant facts demonstrating the unreliability of Dr. Tosti's methodology. In addition, the Opposition claims that Dr. Tosti's methodology in *Plaisance* is just like her methodology in *Kahn*. This case is not *Kahn*. Dr. Tosti's actions (or lack thereof) in forming her expert opinions are different than what she did in *Kahn*. Hospira's challenge to Dr. Tosti's opinions is different than Sanofi's. And, of course, the case-specific facts are different. Dr. Tosti's opinions in *Plaisance* are unreliable and should be excluded.

The Opposition further claims that Dr. Tosti is not asserting a general causation opinion, but then proceeds to describe Dr. Tosti's opinions that are exactly that. Either Dr. Tosti will not proffer general causation opinions at trial and should therefore be precluded from testifying to the same, or Dr. Tosti's general causation opinions should be excluded for the reasons described in Hospira's Motion.

Finally, the Opposition does not even address Hospira's argument that Dr. Tosti's opinion that docetaxel was the "substantial contributing factor" to Ms. Plaisance's hair loss is

improper under this Court's prior orders.  Accordingly, Dr. Tosti's opinions relating to "substantial contributing factor" should be excluded.

## I.    THIS IS *PLAISANCE*, NOT *KAHN*.

The Opposition is at pains to suggest that Dr. Tosti's case-specific opinions and methodology in *Plaisance* are the same as they were in *Kahn*, and thus the Court's order in *Kahn* applies here.  *See* Pl.'s Mem. Opp. Hospira's Mot. to Exclude or Limit Opinions of Dr. Antonella Tosti ("Opp."), ECF No. 13506.  Plaintiff asserts that the methodology Dr. Tosti employed to rule out alternative causes of Ms. Plaisance's hair condition "is the exact same methodology that this Court has previously deemed reliable in both the *Earnest* and *Kahn* cases."  Opp. at 6.  Not so.  In *Kahn*, Sanofi moved to exclude Dr. Tosti's opinions concerning Ms. Kahn's hair loss because:  (i) Dr. Tosti arbitrarily rejected Dr. Thompson's finding of androgenetic alopecia on pathology, (ii) she ignored facts pointing to endocrine therapy-induced alopecia, instead concluding that endocrine therapy-induced alopecia was "unlikely" in Ms. Kahn, and (iii) she did not reliably rule out Ms. Kahn's other chemotherapy agents as the cause of PCIA.  Sanofi's Mem. Supp. Mot. to Exclude Expert Testimony of Dr. Antonella Tosti in *Kahn*, ECF No. 11377-1.  Hospira's motion, by contrast, demonstrates that Dr. Tosti's methodology is flawed because:  (i) she bases her specific-causation opinions on a novel theory for ruling out endocrine therapy-induced alopecia that makes no sense, and has no support beyond Dr. Tosti's *ipse dixit*, (ii) even if it were valid, Dr. Tosti fails to follow this methodology in ruling out endocrine therapy-induced alopecia as the cause of Ms. Plaisance's hair loss, and (iii) in forming her opinions, Dr. Tosti did not consider Ms. Plaisance's significant history of hair loss before her breast cancer.  Hospira's Mem. Supp. Mot. to Exclude or Limit Opinions of Dr. Antonella Tosti ("Br."), ECF No. 13384-1.

None of the relevant facts related to Ms. Kahn's alleged hair loss, medical history, chemotherapy medications, the specific type and cause of her hair condition, or Dr. Tosti's opinions and methodology related to Ms. Kahn have anything to do with Ms. Plaisance.  Neither does the *Kahn* order.

II.   **PLAINTIFF DOES NOT REFUTE THE FLAWS IN DR. TOSTI'S DIFFERENTIAL DIAGNOSIS.**

Plaintiff argues that a differential diagnosis is the "standard method" for assessing specific causation, Opp. at 6, but that is not the issue in this motion.  The issue is whether Dr. Tosti applied a differential diagnosis methodology reliably in Ms. Plaisance's case to conclude that she had PCIA.  She did not.

A.   **Dr. Tosti's Novel Methodology Does Not Rule Out Endocrine Therapy.**

Dr. Tosti has set forth a novel method of "ruling out" endocrine therapy:  a diagnosis of endocrine therapy-induced alopecia requires the patient to have full hair regrowth before beginning endocrine therapy.  Br. Ex. O, ECF No. 13384-18 (Deposition of Dr. Tosti (Sept. 20, 2021) ("Tosti Dep.")), at 241:6-21.  There is no support for this opinion in the medical literature.  The Opposition does not point to any, much less even try to rescue this opinion.  Instead, Plaintiff tries to downplay it by stating it does not reflect "the entirety of Dr. Tosti's differential diagnosis and extensive testimony within the Taxotere/docetaxel MDL."  Opp. at 10.  When it comes to her *case-specific* opinions, however, it is irrelevant what Dr. Tosti has done in other plaintiffs' cases.  More importantly though, by brushing past her methodology in *Plaisance*, the Opposition effectively concedes that Dr. Tosti's novel opinion is bereft of any basis other than her own say-so.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (holding that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

The Opposition also tries to avoid addressing the issues with Dr. Tosti's method by arguing that Dr. Tosti ruled out endocrine therapy-induced alopecia based on Ms. Plaisance's clinical presentation, Opp. at 10.  But that is counsel talking, not Dr. Tosti.  What Dr. Tosti said was:  "The chronology of her alopecia is not consistent with this diagnosis as patients with alopecia due to endocrine therapy have normal hair regrowth after chemotherapy and then develop progressive hair thinning several months after starting endocrine therapy.  Ms. Plaisance instead had incomplete hair regrowth with severe alopecia **before** starting endocrine therapy."  Br. Ex. A, ECF No. 13384-4 (Expert Report of Dr. Tosti (Aug. 2, 2021) ("Tosti Rep.")), at 34.

Dr. Tosti reiterated this at her deposition.  *See* Br. Ex. O (Tosti Dep.) at 226:16-229:6, 241:6-243:3.  Thus, Plaintiff cannot escape her own expert's methodology.

Moreover, the Opposition has no answer to the fact that this methodology makes no sense when applied to Ms. Plaisance, who was prescribed Femara *only eleven days* after completing chemotherapy.  Br. Ex. E, ECF No. 13384-8 (3.31.2014 Oncology Rec.) at 1, 8.  Dr. Tosti seizes on Ms. Plaisance's inevitably incomplete hair regrowth eleven days after chemotherapy as license to *assume* that chemotherapy was the cause of Ms. Plaisance's hair issues.  However, unlike in *Kahn*, Dr. Tosti admits that she "cannot exclude endocrine therapy had some role" in Ms. Plaisance's hair loss, *id.* at 227:3-4.  But, it is well established that an expert's reasoning or methodology must "fit" the facts of the case.  *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 551 (E.D. La. 2015).  Plaintiff must show that Dr. Tosti's "reasoning or methodology was *applied properly to the facts at issue.*"  *Khoury v. Philips Med. Sys.*, 614 F.3d 888, 892 (8th Cir. 2010) (emphasis added) (citation omitted).  Plaintiff has no response to the "fit" issues described in Hospira's motion and does not even try to formulate one.

Dr. Tosti should have conducted a proper differential diagnosis by reliably ruling out endocrine therapy as a potential cause.  She did not.  Thus, her opinion that docetaxel caused Ms. Plaisance's hair loss must be excluded.  *See Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 674 (6th Cir. 2010) (explaining that an expert's failure to reliably rule out alternative causes of plaintiff's Parkinson's disease turned on speculation and failed to satisfy Rule 702).

**B.     Dr. Tosti Does Not Apply Her Methodology to Ms. Plaisance's Facts.**

Much like Dr. Tosti, the Opposition completely ignores the contemporaneous medical records that, under Dr. Tosti's methodology, mean she cannot rule out endocrine therapy-induced alopecia.

**1.     Ms. Plaisance had normal hair regrowth after chemotherapy.**

According to Dr. Tosti, "patients with alopecia due to endocrine therapy have normal hair regrowth after chemotherapy and then develop progressive hair thinning several months after starting endocrine therapy."  Br. Ex. A (Tosti Rep.) at 34.  The contemporaneous records show

that Ms. Plaisance experienced hair regrowth after chemotherapy.  Br. at 9-10.  Records from three separate oncology visits show that Ms. Plaisance's hair started returning within a few months after completing chemotherapy and that her alopecia had resolved by 2015.  She did not complain to any physician about hair loss from mid-2014 through March 2016, when she started seeing Dr. Matherne.  *Id.* at 10.  Thus, according to Dr. Tosti's own methodology, because Ms. Plaisance had "normal hair growth after chemotherapy," she fits the description of someone with "alopecia due to endocrine therapy."

The Opposition does not even acknowledge these records (or Hospira's discussion of the same in its opening motion), much less try to explain them away.  It's easy to understand why.  The records flatly contradict Dr. Tosti's opinions and the bases for them.  But neither the Opposition nor Dr. Tosti can ignore the numerous facts refuting Dr. Tosti's opinions.  *See Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001) (holding that because the expert "cherry-picked the facts he considered to render an expert opinion, the district court correctly barred his testimony because such a selective use of facts fails to satisfy the scientific method and *Daubert*").

### 2.      Ms. Plaisance's alopecia improved after endocrine therapy.

The Opposition attempts to salvage Dr. Tosti's opinion by raising a factor not advanced by Dr. Tosti in this case:  "it is important to consider whether a patient's hair condition improved after stopping use of endocrine therapy as hair loss from endocrine therapy should resolve upon discontinuation."  Opp. at 10-11.  The Opposition further states that Ms. Plaisance's hair condition did not improve after stopping endocrine therapy, and thus Dr. Tosti properly ruled out endocrine therapy as the cause of Ms. Plaisance's hair loss.  *Id.* at 11.  It is understandable why Dr. Tosti has not proffered this theory in *Plaisance* because the record demonstrates exactly the opposite.

Ms. Plaisance's endocrine therapy concluded in May 2019.  On July 15, 2019, Ms. Plaisance followed up with Dr. Matherne for alopecia that was last evaluated on November 15, 2018.  Ex. S (7.15.2019 Derm. Rec.).  Dr. Matherne noted:  "Since [last visit], the patient states

the alopecia is better." *Id*. at -00054.  Under alopecia status, Dr. Matherne observed:

"Improved."  *Id*. at -00055.  In other words, Ms. Plaisance's hair condition improved after she

completed endocrine therapy.  This is yet another instance where Dr. Tosti ignored facts that,

under the logic of her own methodology, show she cannot reasonably rule out alternative causes.

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 423-24 (5th Cir. 1987) (holding that if a patient's

"symptoms could have numerous causes," the expert cannot "simply pick[] the cause that is most

advantageous to [the plaintiff's] claim").

     **C.**    **Dr. Tosti Was Unaware of Ms. Plaisance's Long History of Alopecia.**

Plaintiff asserts that "Dr. Tosti was aware of Ms. Plaisance's prior history of temporary

alopecia, as Ms. Plaisance self-reported it to Dr. Tosti during the course of her examination."

Opp. at 2.  According to Plaintiff, Dr. Tosti only missed "a small subset of medical records"

prior to forming her opinion, and Dr. Tosti testified that "the information contained within the

medical records is consistent with the information Ms. Plaisance reported during the patient

history of her clinical exam (although the years may be slightly off)."  *Id*. at 11.  This completely

mischaracterizes Dr. Tosti's testimony.

Dr. Tosti did *not* testify that the information contained within the overlooked *fifteen*

missing records was consistent with the information provided by Ms. Plaisance, who informed

Dr. Tosti of only *one* instance of prior hair loss occurring in approximately 2010:

> Q.  And so your understanding at the time of this visit was that Mrs. Plaisance had
> a single temporary episode of hair shedding from her scalp; correct?
>
> A.  That's what I understood, it just was one.  And then when I read the medical
> records, I saw it was more than one.
>
> Q.  But at the time of your visit with her, ***you understood it was a single
> temporary episode; correct?***
>
> A.  ***Yes***.

Br. Ex. O (Tosti Dep.) at 106:21-107:6 (emphasis added).  Moreover, Dr. Tosti reiterated *multiple* times that she would have liked to have known about the information contained in the fifteen medical records *prior* to preparing her expert report.  Br. at 14-15.

Plaintiff provides no explanation as to why it is appropriate for Dr. Tosti to shrug off records that indicate different possible causes of Ms. Plaisance's hair loss—*e.g.*, female pattern alopecia—so easily.  There is none.  *See McNabney v. Lab'y Corp. of Am.*, 153 F. App'x 293 (5th Cir. 2005) (per curium) (rejecting expert testimony where the history an expert witness relied on "lacked reliability because it was incomplete in a critical area," specifically an awareness of the plaintiff's relevant medical history (citation omitted)).

## III.   NO GENERAL CAUSATION OPINIONS.

The Opposition emphasizes more than once that Dr. Tosti is not offering general causation opinions, Opp. at 12-13, but then goes on to describe at length how Dr. Tosti's education, experience, and review of the literature of PCIA lead her to conclude, generally speaking, that the "factor that substantially contributed to causing PCIA was the use of Taxotere (docetaxel) within a regimen," *id.* at 14.  The Opposition cannot have it both ways.  Either Dr. Tosti is offering general causation opinions or she is not.  If she is not, then Dr. Tosti's opinions related to general causation should be withdrawn and excluded from trial—including the general opinions related to PCIA described by the Opposition and proffered by Dr. Tosti on pages 13 to 19 of her expert report.  Those are not case-specific opinions, but relate to Dr. Tosti's general conclusion that docetaxel causes PCIA.

If Dr. Tosti is offering general causation opinions, then they should be excluded for the four reasons described in Hospira's Motion.  *See* Br. at 16-20.  The Opposition does not even respond to three of those four reasons.  For example, rather than attempt to justify Dr. Tosti's reliance on Drs. Feigal and Madigan, the Opposition simply repeats that Dr. Tosti "adopts the findings of Plaintiff's other experts."  Opp. at 12.  But this Court has excluded blind reliance by one of Plaintiffs' experts on another.  *See In re Taxotere (Docetaxel) Prods. Liab. Litig. (Kahn)* (Feb 1, 2021), ECF No. 12109, at 9 ("To the extent she relies on opinions from Dr. Feigal, Dr.

Bosserman did not validate these opinions in any way in her report.  This is the kind of 'unblinking reliance' on another expert's opinion that violates Federal Rule of Evidence 703."). It should do so again here.

As for Dr. Tosti's improper case counting, the Opposition claims that is not what Dr. Tosti does.  Opp. at 14 ("Dr. Tosti did not arbitrarily count cases up and make her own determination as to which chemotherapy drug should be attributed as the causal agent").  But Dr. Tosti's report and testimony in the *Kahn* trial belie that claim and are clear: she reviewed 22 articles related to PCIA in the context of breast cancer chemotherapy and computed across them 487 reports of PCIA in patients who took combination therapy that included docetaxel.  That simple addition exercise led her to conclude that the scientific literature shows docetaxel can cause PCIA.  Dr. Tosti, however, conceded in the *Kahn* trial that this is not a valid methodology for determining causation.  *See* Br. Ex. A (Tosti Rep.) at 15; Br. Ex. P, ECF No. 13384-19 (Trial Tr. (Afternoon), *Kahn v. Sanofi-Aventis, U.S. LLC*, No. 16-cv-17039 (Nov. 10, 2021)), at 703-04.

## IV.    PLAINTIFF DOES NOT DISPUTE THAT DR. TOSTI USURPS THE JURY.

The Opposition fails to address Hospira's argument that Dr. Tosti invades the province of the jury and violates this Court's orders by opining that docetaxel is "the factor that substantially contributed to causing [Ms. Plaisance's] PCIA."  Br. Ex. A, (Tosti Rep.) at 35.  This silence should be taken as a tacit concession that Dr. Tosti may not testify that docetaxel was a substantial contributing factor in Ms. Plaisance's hair loss.

## CONCLUSION

For the foregoing reasons as well as the reasons put forth in Hospira's Motion, Dr. Tosti's opinions should be excluded in their entirety.

Date: December 21, 2021

Respectfully submitted,

*/s/ Heidi K. Hubbard*
Heidi K. Hubbard
Richmond T. Moore
Neelum J. Wadhwani
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
Telephone: 202-434-5000
hhubbard@wc.com

John F. Olinde (Bar No.1515)
Peter J. Rotolo (Bar No. 21848)
**CHAFFE MCCALL LLP**
1100 Poydras Street
New Orleans, LA 70163
Phone: 504-858-7000
olinde@chaffe.com

*Counsel for Defendants Hospira, Inc.,*
*Hospira Worldwide, LLC, and Pfizer Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of December 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Heidi K. Hubbard*