# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION** | **MDL NO. 16-2740**<br><br>*This document relates to:*<br>Audrey Plaisance, Case No. 2:18-cv-08086 |

## REPLY MEMORANDUM IN SUPPORT OF HOSPIRA'S MOTION TO EXCLUDE OR LIMIT OPINIONS OF DR. DAVID MADIGAN

Plaintiff's Opposition underscores that Dr. Madigan's statistical analyses, originally offered in prior MDL cases against Sanofi, have no place in ***this*** case against Hospira, either as evidence of notice to Hospira of a safety signal or as evidence supporting general causation.

Plaintiff concedes that Dr. Madigan cannot offer general causation or regulatory opinions, Pl.'s Mem. Opp. Hospira's Mot. Exclude or Limit Opinions of Dr. David Madigan ("Opp.") at 3-4, ECF No. 13497, and that this Court has already excluded Dr. Madigan's meta-analysis of observational studies, *id.* at 12. Plaintiff also concedes by silence that Dr. Madigan's analysis of Sanofi's internal safety database is not admissible as evidence of a safety signal to Hospira. *Id.* at 10.

As for those aspects of Dr. Madigan's opinions that have not been excluded or disclaimed, Plaintiff's Opposition does not respond directly to Hospira's arguments for why they are inadmissible here. Instead, Plaintiff alternates between (1) responding to arguments ***Sanofi*** has offered in the past, without acknowledging—much less engaging with—Hospira's new arguments, and (2) distracting from the issue at hand by pointing to evidence ***other than*** Dr. Madigan's analyses. Plaintiff does not dispute, and indeed openly admits, that Dr. Madigan's report does not mention Hospira; that Dr. Madigan did not review Hospira documents; and that Dr. Madigan could point to no evidence that Hospira had access to the Sanofi internal safety database and clinical trial data that underlie much of his opinions. *Id.* at 10. In short, Plaintiff

has done nothing to make Dr. Madigan's recycled opinions against Sanofi "fit" this case against Hospira, and they should therefore be excluded in their entirety.

## I. PLAINTIFF CONCEDES DR. MADIGAN CANNOT OFFER CERTAIN OPINIONS.

Plaintiff effectively concedes four of the issues raised in Hospira's motion:

1. **General Causation**. As Plaintiff acknowledges, this Court has already ruled that "Dr. Madigan cannot tell the jury that there is evidence 'that docetaxel causes irreversible alopecia.'" *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Kahn)* (Jan. 29, 2021), ECF No. 12098, at 5 ("*Kahn*"); Opp. at 4. The Court should hold Plaintiff to her stated intent for Dr. Madigan to provide causation opinions only "within the confines of this Court's previous determination." Opp. at 4-5.

2. **Regulatory Opinions**. Plaintiff states that she "does not intend to offer Dr. Madigan as an expert to address 505(b)(2) drug labeling regulation issues." *Id.* at 5. The Court should accordingly preclude Dr. Madigan from offering any such opinions.

3. **Meta-Analysis of Observational Studies**. Ms. Plaisance concedes that this Court previously excluded Dr. Madigan's meta-analysis based on observational studies in *Kahn*, and she "renews and adopts" the arguments made in Ms. Kahn's motion for reconsideration. *Id.* at 12. But this Court has already rejected those arguments and denied reconsideration. *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Kahn)* (Apr. 7, 2021), ECF No. 12403. Nothing about Dr. Madigan's meta-analysis of observational studies has changed, and Plaintiff offers no reason for this Court to depart from its prior ruling that that analysis is unreliable.

4. **Analysis of Sanofi's Internal Safety Database as Evidence of Signal Detection**. Plaintiff fails to defend Section 5 of Dr. Madigan's report, which identifies reports of permanent alopecia in Sanofi's internal event database, as evidence of a safety signal available to Hospira. Nor could she; she openly admits that Dr. Madigan conceded he cannot say that Hospira had access to that database. Opp. at 10. Accordingly, Dr. Madigan should not be permitted to testify that the reports of permanent alopecia contained in Sanofi's database serve as notice available ***to Hospira*** of a safety signal. The Opposition does not argue to the contrary.[1]

## II. DR. MADIGAN'S SIGNAL DETECTION OPINIONS SHOULD BE EXCLUDED.

Plaintiff has conceded that two of Madigan's statistical analyses are inadmissible on the issue of signal detection: (1) the meta-analysis of observational studies that has already been

---

[1] *See* Opp. at 10 (arguing in a section heading that "Dr. Madigan's analyses [sic] of Sanofi's internal safety database is reliable and relevant to causation" ***only***, whereas "Sanofi's TAX 316 and TAX 301 clinical trial data is reliable and relevant to notice and causation").

2

excluded, and (2) the analysis of Sanofi's internal safety database that Plaintiff fails to defend. Dr. Madigan's report identifies two remaining potential sources of an alleged safety signal for permanent alopecia with docetaxel: (1) the underlying data in two Sanofi clinical trials; and (2) FDA's FAERS database. Dr. Madigan's report does not actually opine that either of these sources gave rise to a safety signal available to any company other than Sanofi; indeed, his report does not even mention "Hospira." *See* Hospira's Mem. Supp. Mot. Exclude or Limit Opinions of Dr. David Madigan ("Br.") at 1-2, ECF No. 13378-1. Plaintiff nevertheless attempts to recycle these opinions, offered against Sanofi, as evidence of a safety signal to Hospira. These attempts fail, and the Court should exclude Dr. Madigan's signal detection opinions in their entirety.

### A. Hospira Did Not Have Access to Sanofi's Clinical Trial Data.

Dr. Madigan's report combines the results of two clinical trials conducted by Sanofi—TAX 316 and TAX 301—to find a statistically significant risk of irreversible alopecia with Taxotere based on reported rates of "ongoing" alopecia after certain intervals of patient follow-up time. Br. Ex. B, ECF No. 13378-5 (Expert Report of Dr. Madigan (March 23, 2020) ("Madigan Rep.")) ¶¶ 59-67. Plaintiff does not dispute that Hospira did not have access to the underlying data regarding "ongoing" cases of permanent alopecia that was necessary to Dr. Madigan's analysis:

> He does not know whether there is published literature that found a statistically significant risk of permanent alopecia when TAX 316 and TAX 301 are combined; he does not know whether Hospira had access to Sanofi's raw clinical trial data or study reports; and he is not aware of any publicly available information about the Sanofi clinical trial data *that was available to Hospira that it could have used to do the same meta-analysis*.

Opp. at 10 (emphasis added). The Court's analysis ought to stop there; if Dr. Madigan cannot testify that Hospira had access to the data he used to do his meta-analysis, then he should not be allowed to testify that the results of that meta-analysis show notice of a safety signal to Hospira.

Plaintiff attempts to avoid this simple conclusion, however, by arguing that sources *other than* those cited by Dr. Madigan show that Hospira had access to Sanofi's clinical trial data.

3

Parroting the report of her regulatory expert, Dr. David Ross, Plaintiff contends that published literature, updates to foreign labeling, and the knowledge of Hospira's head of product safety (Dr. Juergen Schmider), taken together, "show that Hospira was on notice of (and had access to) information regarding permanent alopecia in the TAX 316 clinical trial." *Id.* at 10-11.  But none of those sources contains the underlying clinical trial data that Dr. Madigan used to perform his statistical analysis.  As Dr. Madigan explained, he "analyzed the complete data" from the trials, and the numbers he used to perform his analysis are "the relevant numbers for ongoing alopecia."  Br. Ex. A, ECF No. 13378-4 (Deposition of Dr. Madigan (Sept. 17, 2021) ("Madigan Dep.") at 58:3-16.  Plaintiff has not cited any published medical literature before 2015 that contains this underlying data on "ongoing alopecia."  As Dr. Madigan admitted, "Hospira couldn't have obtained from ClinicalTrials.gov the information on ongoing alopecia that [he] used to prepare [his] analysis." *Id.* at 69:1-25.  Moreover, although the Hospira foreign labeling contained summary statements about certain clinical trial data from TAX 316, that data was from publicly available sources (including Sanofi's foreign labeling).  It did not contain—and Hospira did not have—the complete underlying clinical trial data, including the number of patients with "ongoing alopecia" at each follow-up interval in TAX 316 and TAX 301.[2]  Nor did the Sanofi Core Data sheet from Dr. Schmider's deposition.[3]  Thus, because Hospira did not have access to the data regarding "ongoing" alopecia on which Dr. Madigan relies, Dr. Madigan's analysis is not admissible as evidence of a safety signal to Hospira.

---

[2] Br. Ex. G, ECF No. 13378-10 (Expert Report of Dr. Ross (June 8, 2020)) ¶ 98 ("For example, Hospira's 2012 labels in Israel, Hungary, and UK (among others) stated: "*Skin and subcutaneous tissue disorders*: Alopecia was observed to be ongoing at the follow-up time of 55 months in 22 patients" in TAX 316.).

[3] Ex. I, E-mail from M. De-Lanty to R. Gural et al. (July 18, 2012) attaching Sanofi Docetaxel Company Core Data Sheet, HOS01400191319-395 at -345, -348 (stating only that alopecia was among "[t]he most common adverse events persisting into the follow-up period" in TAX 316 and that alopecia was observed to be ongoing at the median follow-up time of 77 months in 3 patients).

In addition, Plaintiff argues only that Hospira had access to "information regarding permanent alopecia in the *TAX 316* clinical trial" and not TAX 301. Opp. at 10-11. But as Dr. Madigan has admitted, TAX 316 (like TAX 301) does not, on its own, demonstrate a statistically significant risk of permanent alopecia with Taxotere. Br. Ex. A (Madigan Dep.) at 65:17-66:1. Dr. Madigan can only reach statistical significance by *combining* data from TAX 316 and TAX 301, and thus his analysis would only show a safety signal to Hospira if it had access to data from *both* trials.

Thus, Dr. Madigan should not be permitted to testify at trial that his statistical analysis of the Sanofi clinical trial data shows that Hospira was on notice of a safety signal for the risk of permanent alopecia.

### B. Dr. Madigan's FAERS Analysis Is Inadmissible as Signal Identification in This Case Against Hospira.

Plaintiff's Opposition concerning Dr. Madigan's FAERS analysis responds to arguments Sanofi has made in the past. Hospira makes different arguments. The Court has never ruled on Hospira's new argument, based on new admissions, that Dr. Madigan's FAERS analysis does not follow FDA guidance for signal identification (as opposed to signal evaluation). Nor has it assessed whether Dr. Madigan's identification of a signal "dating back to as early as 2000" is relevant in a case against a 505(b)(2) manufacturer that is limited to using the CBE process to initiate label changes based on "newly acquired information" during the time that manufacturer's product has been on the market.

*First*, Plaintiff's Opposition confuses signal *identification* and signal *evaluation*. Contrary to Plaintiff's misrepresentation, Opp. at 4, Hospira is not repeating the argument Sanofi has made in the past (and that this Court rejected) that Dr. Madigan's FAERS analysis violates the signal *evaluation* processes outlined in Section 7 of the FDA's 2019 Best Practices. Rather, Hospira's argument—which Plaintiff does not acknowledge, much less rebut—is that Dr. Madigan admitted in this case that his analysis did not follow the signal *identification* guidance in *Section 6* of the FDA's best practices. *See* Br. at 7-8. In other words, Hospira is holding

5

Dr. Madigan to the Court's prior ruling that his analysis "would be governed by Section 6 of the FDA document, which is titled 'Safety Signal Identification.'" *Kahn* at 13-14. Dr. Madigan admitted squarely that he is not following the Section 6 guidance; thus, his FAERS analysis is not reliable as signal identification. *See* Br. at 9. Hospira is therefore not "attempt[ing] to circumvent the Court's holding by claiming Dr. Madigan admitted he is not following the FDA's draft guidance." Opp. at 4.

Faced with the unavoidable truth that Dr. Madigan did not follow the FDA guidance, Plaintiff resorts to arguing that it does not matter. *Id.* at 5 ("Plaintiff respectfully does not interpret the Court's Order in *Kahn* to require that her biostatistician expert must duplicate the methodology of FDA safety officers …."). But this is an about-face from plaintiffs' previous positions. Plaintiffs have repeatedly attempted to defend Dr. Madigan's FAERS analysis as consistent with the FDA's practices, and the Court has accepted this argument. *See In re Taxotere (Docetaxel) Prods. Liab. Litig. (Earnest)* (Aug. 23, 2019), ECF No. 8094, at 9. Now that Dr. Madigan has admitted his analysis is not "used by drug companies and the FDA," *id.*, the Court should reject Plaintiff's attempt to disclaim adoption by industry and the FDA as a barometer on the reliability of his methodology.

Plaintiff also attempts to muddy the waters when she suggests that "[t]he same type of FAERS analysis Dr. Madigan performed in this case has been routinely admitted by other courts and used by the FDA," citing cases in which Dr. Madigan performed "data mining," a methodology commonly used by pharmacovigilance teams and regulators.[4] Dr. Madigan

---

[4] *See Rheinfranck v. Abbott Labs, Inc.*, 2015 WL 13022172, at *12-13 (S.D. Ohio Oct. 2, 2015); *In re Yasmin & YAZ (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2011 6302573, at *17 (S.D. Ill. Dec. 16, 2011); *In re Fosamaz (Alendronate Sodium) Prod. Liab. Litig.*, 2013 WL 1558690, at *8-9 (D.N.J. Apr. 10, 2013).

Plaintiff also cites *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 289 F. Supp. 2d 120, 1242-43 (W.D. Wash. 2003), which is inapposite. That case permitted experts to opine that PPA is associated with hemorrhagic stroke in certain women based on the cumulative effect of "all of the lines of evidence upon which plaintiffs' experts rely," including a major

specifically testified that his methodology in *this* case, however, is *not* data mining and did not follow accepted standards for the same. Br. Ex. A (Madigan Dep.) at 103:21-105:5, 108:22-25 (agreeing that "since you say you are not doing data mining, your methodology did not follow this FDA guidance on data mining").

*Second*, Dr. Madigan's FAERS analysis has no "fit" in a case against Hospira because it does not identify a new signal during the time period that Hospira's docetaxel has been on the market. On this issue, too, Plaintiff responds as if this were a case against Sanofi, citing the Court's ruling in *Kahn* that "***Sanofi*** 'could have analyzed the accumulating data'" to support a label change. Opp. at 8 (emphasis added). As a 505(b)(2) manufacturer, Hospira could not have updated its label absent "newly acquired information" as defined by the CBE regulations—more specifically, information that "reveal[ed] risks of a ***different type or greater severity or frequency*** than previously included in submissions to FDA." 21 C.F.R. § 314.3(b) (emphasis added). By citing Dr. Madigan's lasso logistic regression and L2 logistic regression analyses as evidence of "an increased reporting rate of docetaxel … at the end of 2011 and beyond," Opp. at 8, Plaintiff reveals that she misses the point. Dr. Madigan testified that he is "not saying there was a new safety signal in 2012 that wasn't already present going back to the 2000s." Br. Ex. A (Madigan Dep.) at 79:14-18. Indeed, as Plaintiff herself points out, Dr. Madigan's analyses reveal that the rate of permanent alopecia with docetaxel "exceed[ed] the standard statistical threshold of 2 as of the end of 2010 ***and remain[ed] above that threshold*** at the end of 2011 and beyond." Opp. at 8 (emphasis added). Far from being "accumulating data," *id.*, then, Dr. Madigan's analyses show the ***same*** data available to Hospira after its docetaxel approval in March 2011 that was already available to FDA prior to that date.

Thus, Dr. Madigan's analysis does not "reveal risks of a different type or greater severity or frequency" than already existed at the time FDA required Hospira to follow Sanofi's label in

---

epidemiologic study, a "multitude of textbooks and treatises," and an FDA epidemiologists' own review of the predecessor database to FAERS. *Id.* at 1235, 1242.

March 2011, meaning that the signal Dr. Madigan identifies should already have been accounted for in that labeling language at the time of approval. 21 C.F.R. § 314.3(b); *see generally* Hospira's Mot. Summ. J. Re Preemption, ECF No. 13385. Dr. Madigan's FAERS analysis is therefore not relevant as evidence of notice of a safety signal to Hospira.

### III. DR. MADIGAN'S ANALYSES ARE UNRELIABLE AND IRRELEVANT ON THE ISSUE OF CAUSATION.

Setting aside the meta-analysis of observational studies that has already been excluded, each of Dr. Madigan's remaining analyses is also unreliable and irrelevant on the issue of causation.

**FAERS Analysis**. Plaintiff's Opposition fails to respond to Hospira's argument that if Dr. Madigan's analysis is not reliable as evidence of signal identification, *see supra* Part II, then it is necessarily inadmissible as evidence of causation. *See* Br. at 12. As Plaintiff concedes, a safety signal alone is not evidence of causation. *See* Opp. at 8-9. Accordingly, a statistical analysis that fails even to identify a signal certainly is not admissible as a component of causation.

Dr. Madigan's FAERS analysis is also unreliable because of his reliance on search terms provided by Dr. Kessler, who is not an expert in this case. Plaintiff contends that "Hospira exaggerates Dr. Kessler's role," citing Dr. Madigan's testimony in a prior case that he chose search terms "based on, you know, I've been doing these kinds of analysis for two decades" and that he confirmed with Dr. Kessler that those terms were reasonable. Opp. at 9-10. But that ignores that Dr. Madigan has previously refused to answer questions about the support for his search methodology, claiming it was a "good question for Dr. Kessler." *See* Br. at 12 (citing testimony). But now Dr. Kessler is gone, and Hospira, which was not a defendant in the prior cases against Sanofi, has not had and will never have an opportunity to ask Dr. Kessler the "good question" of whether the search terms Dr. Madigan used are appropriate.

**Sanofi Internal Adverse Event Database**. Plaintiff's Opposition mischaracterizes Dr. Madigan's report and thus misses the point of Hospira's argument that Dr. Madigan's

8

analysis of Sanofi's internal adverse event database depends on an admission by Sanofi. To be clear, Dr. Madigan's report does ***not*** opine that Sanofi's internal adverse event database shows a causal association between docetaxel and permanent alopecia. Instead, Dr. Madigan opines only that the information available to Sanofi at the time that ***Sanofi*** concluded the evidence supported a causal association in 2015 "was not appreciably different from what was available" to Sanofi in 2011. Br. Ex. B (Madigan Rep.) ¶ 53. Plaintiff is therefore incorrect that "Dr. Madigan mentions Sanofi's conclusion [of a causal association] to support ***his conclusion*** that Sanofi's internal database reveals a statistical association between docetaxel and permanent alopecia." Opp. at 12 (emphasis added). To the contrary, Dr. Madigan makes no such conclusion on his own; he merely opines that the information supporting Sanofi's conclusion was available earlier in time. Because Sanofi's conclusion is not an admission in this case against Hospira, Dr. Madigan's analysis of Sanofi's safety database does not fit this case and should be excluded. *See* Br. at 15.

**Sanofi Clinical Trials**. Dr. Madigan's analysis of Sanofi's clinical trial data is not reliable evidence of causation for the same reasons stated in prior cases against Sanofi. *See* Br. at 16.

## CONCLUSION

For the foregoing reasons, the Court should exclude Dr. Madigan's opinions in their entirety.

Date: December 21, 2021               Respectfully submitted,

*/s/ Heidi K. Hubbard*
Heidi K. Hubbard
Richmond T. Moore
Neelum J. Wadhwani
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
Phone: 202-434-5000
hhubbard@wc.com

John F. Olinde (Bar No.1515)
Peter J. Rotolo (Bar No. 21848)
**CHAFFE MCCALL LLP**
1100 Poydras Street
New Orleans, LA 70163
Phone: 504-858-7000
olinde@chaffe.com

*Counsel for Defendants Hospira, Inc., Hospira Worldwide, LLC, and Pfizer Inc.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 21st day of December 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

                                            /s/ *Heidi K. Hubbard*