UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL No. 16-2740 SECTION: "H" (5) |
| This document relates to: Audrey Plaisance, 18-8086 | ) ) ) | |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment Based on Claims Under Illinois Law (Doc. 12387). On May 26, 2021, the Court held oral argument on the Motion. For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

### I. Introduction

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel,[1] that Plaintiffs were administered for the treatment of breast cancer or other forms of cancer. Among these companies are Hospira, Inc., and Hospira Worldwide, LLC, formerly doing business as Hospira Worldwide, Inc. (collectively, "Hospira" or "Defendants"). Plaintiffs allege that the drug caused permanent alopecia, or permanent hair loss. Plaintiffs bring claims of failure to warn, negligent misrepresentation, fraudulent misrepresentation, and more. The first bellwether trial was held in September 2019, and the second was held in November 2021.[2]

---

[1] Docetaxel is the generic version of Taxotere.
[2] The second trial was continued due to the COVID-19 pandemic.

## II. Procedural Background

On October 4, 2016, the Judicial Panel on Multidistrict Litigation ("JPML") ordered the transfer of numerous civil actions to the Eastern District of Louisiana for purposes of pretrial proceedings.[3] On December 9, 2016, this Court issued Pretrial Order No. 4 ("PTO 4").[4] The stated purpose of PTO 4 was to "eliminate delays associated with the transfer to this Court of cases filed in or removed to other federal district courts and to promote judicial efficiency."[5] To achieve this, PTO 4 created a procedure by which Plaintiffs could file their cases directly into the MDL in lieu of being transferred. Notably, PTO 4 provided as follows: "Any case filed directly in MDL No. 2740 pursuant to this Order will have no impact on choice of law that otherwise would apply to an individual case had it been originally filed in another district court and transferred to this Court pursuant to 28 U.S.C. § 1407."[6]

On February 10, 2017, the Court issued Pretrial Order No. 15 ("PTO 15"), providing that from April 7, 2017 forward, "Plaintiffs shall file a Short Form Complaint."[7] The exemplar Short Form Complaint asked Plaintiffs to identify the "District Court and Division in which remand and trial is proper and where you might have otherwise filed this Short Form Complaint absent the direct filing Order entered by this Court."[8]

## III. Plaintiff Audrey Plaisance

In May 2020, the Court selected Plaintiff Audrey Plaisance to proceed with discovery in preparation for the fifth bellwether trial.[9] Plaintiff Plaisance,

---

[3] Doc. 1 ("Transfer Order from the MDL Panel").
[4] Doc. 122.
[5] *Id.*
[6] *Id.*
[7] Doc. 230.
[8] Doc. 318-1 at 3.
[9] The Court selected three other Plaintiffs as well—Debbie Hubbard, Clare Guilbault, and Lula Gavin. *See* Doc. 10461 (Case Management Order No. 26).

a Louisiana resident, alleges that she suffers permanent hair loss as a result of taking docetaxel administered by Hospira.[10] She received her docetaxel treatment in Louisiana, and she now brings claims under Louisiana products liability law.[11] In addition to these claims, she asserts a claim for punitive damages under Illinois law. She filed her case directly into this MDL, and in her Short Form Complaint, she designated the Northern District of Illinois as the venue where she might have otherwise filed her case.[12]

In the instant Motion, Hospira moves for summary judgment against Plaisance on her Illinois law claim. Hospira argues that Louisiana law must govern all of Plaisance's claims, and Louisiana products liability law does not allow claims for punitive damages. Plaintiff opposes Hospira's Motion.

## LEGAL STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[14] "In reviewing a summary judgment motion, the court must 'refrain from making credibility determinations or weighing the evidence' and must view the facts

---

[10] *See* Doc. 12387-3 at 3, 7, 18.
[11] *See* Doc. 12495 at 1. Plaintiff concedes that Louisiana products liability law should govern her case except as to her punitive damages claim. She further concedes that the Louisiana Products Liability Act ("LPLA") provides the exclusive theories of liability available to her under Louisiana law, and she asks the Court to interpret her failure to warn claim under the LPLA. Indeed, the Court will do so.
[12] Case No. 2:18-cv-8086-JTM-MBN, Doc. 1 at 3.
[13] Fed. R. Civ. P. 56.
[14] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."[15]

## LAW AND ANALYSIS

### I. Choice of Law in Direct-Filed Cases

"Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."[16] Relying on this principle, Hospira argues that when a case is directly filed in this MDL, the case should be treated as if it were transferred from a judicial district sitting in the state where the case originated. Hospira argues that because Plaisance was prescribed and administered docetaxel in Louisiana, her case originated in Louisiana and Louisiana choice-of-law rules should accordingly apply to her case.

In opposition, Plaintiff emphasizes that in her Short Form Complaint, she identified the Northern District of Illinois as the venue where she would have otherwise filed her suit. She argues, then, that the Court should treat the Northern District of Illinois as her transferor venue and apply Illinois choice-of-law rules to her case. She notes that because Hospira has its headquarters in Illinois, Illinois would be a proper venue for her suit.

The Court agrees with Plaintiff. "For MDL matters, in which cases are transferred from all over the country to one consolidated location for purposes of efficiency and convenience, the law of the MDL forum itself is not necessarily

---

[15] Devon Enterprises, LLC v. Arlington Independent School Dist., 541 Fed. App'x 439, 441 (5th Cir. 2013).
[16] In re Air Disaster at Ramstein Air Base, Germany on 8/29/90, 81 F.3d 570, 576 (5th Cir. 1996) (citations omitted).

the proper source for the choice of law standards."[17] Nor is the state where the case originated necessarily the proper source for the choice of law standards, as Hospira avers. One court explained as follows:

> Using a test that focuses on the location of the use of the products, rather than on the location of the alleged negligence, would deprive plaintiffs of the choice that they otherwise would have had between two proper forums. Indeed, applying a default rule like that advocated by the defendants would limit plaintiffs' choice of a proper forum and would be tantamount to creating a federal choice of law rule privileging the location of the consumption of a product rather than the location of the alleged negligence.[18]

Given that Plaintiffs in this MDL were able to identify a forum in their Short Form Complaints, the Court finds the above reasoning persuasive here.

If Plaintiff Plaisance had not utilized the direct-filing procedure established in PTO 4, she could have filed her case in either Louisiana or Illinois. In her Short Form Complaint, Plaintiff states that she would have filed in Illinois. The Court, therefore, will not deprive Plaintiff of her choice of a proper forum. "Permitting a plaintiff to unilaterally determine which of multiple appropriate forums should apply is consistent with the deference traditionally shown to a plaintiff's choice of forum."[19] Accordingly, the Court will follow Illinois choice-of-law rules in Plaisance's case. This is consistent with PTO 4, which provides that direct filing "will have no impact on choice of law that otherwise would apply to an individual case had it been originally filed in another district court and transferred to this Court."[20]

---

[17] In re Fresenius Granuflo/NaturaLyte Dialysate Prods. Liab. Litig., 76 F. Supp. 3d 294, 300 (D. Mass. 2015).
[18] *Id.* at 304.
[19] *Id.*
[20] Doc. 122.

## II. Illinois Choice of Law

To resolve choice-of-law issues in torts cases, Illinois follows the "most significant relationship test" outlined in the Restatement (Second) of Conflict of Laws ("Second Restatement").[21] Under this test, Illinois courts presume that "the local law of the State where the injury occurred should determine the rights and liabilities of the parties, unless Illinois has a *more* significant relationship with the occurrence and with the parties."[22] The Illinois Supreme Court opinion in *Townsend v. Sears, Roebuck and Co.* shows the application of this test in the products liability context, rendering it particularly useful here.

### a. Presumption in Favor of Place of Injury

This Court begins its analysis by presuming that the law of the state where the injury occurred should govern.[23] In *Townsend*, a child was injured while his father was operating a lawn mower in the front yard of their home in Michigan.[24] The court wrote that "[t]his activity was centered in plaintiffs' Michigan community."[25] Because of this, the court found a "*strong* presumption" that Michigan law should govern "unless plaintiffs can demonstrate that Michigan bears little relation to the occurrence and the parties, or put another way, that Illinois has a more significant relationship to the occurrence and the parties with respect to a particular issue."[26]

Like the child in *Townsend*, Plaintiff Plaisance suffered her injury in her state of residence. She received her chemotherapy treatment in her home state of Louisiana, and this creates a strong presumption that Louisiana law should govern. Indeed, as previously noted, Plaintiff Plaisance concedes that

---

[21] *See* Townsend v. Sears, Roebuck and Co., 227 Ill.2d 147, 159 (2007).
[22] *Id.* at 163 (quoting Ingersoll v. Klein, 46 Ill.2d 42, 45 (1970)).
[23] *See id.* at 161–64.
[24] *Id.* at 150–51, 166.
[25] *Id.* at 166.
[26] *Id.*

Louisiana law should govern her case for the most part. However, she seeks to bring a punitive damages claim under Illinois law, as Louisiana law does not permit her to bring such a claim.[27] To do so, Plaintiff Plaisance must demonstrate that Illinois has a more significant relationship to the occurrence and the parties with respect to the issue of punitive damages.

### b. Another State with a More Significant Relationship

In considering whether the presumption in favor of the place of injury was overcome, the *Townsend* court considered certain contacts enumerated in Section 145 of the Second Restatement:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.[28]

The court noted that the contacts should be evaluated according to their relative importance with respect to the particular issue.[29]

Beginning with the first contact, the place of injury, the *Townsend* court noted that in some cases, the place of injury will be fortuitous and therefore not an important contact.[30] However, as the court had previously discussed, the place of injury in that case had a strong relationship to the occurrence and

---

[27] Lampkin v. Stryker Sales Corp, Civil Action No. 14-0151, 2015 WL 1284197, at *2 n.8 (W.D. La. March 18, 2015) ("Punitive damages are not authorized under the LPLA.").
[28] *Townsend*, 227 Ill.2d at 160 (quoting Restatement (Second) of Conflict of Laws § 145(2), at 414 (1971)).
[29] *Id.*
[30] *Id.* at 168.

the parties—it was where the lawn mower was purchased, where it was used, and where the plaintiffs resided.[31]

Similarly, here, the place of injury is not fortuitous but is instead where Plaisance was prescribed chemotherapy, where she received chemotherapy, and where she is domiciled.[32] Louisiana, then, has a strong relationship to the occurrence and the parties.

Second, the *Townsend* court considered the place where the conduct causing the injury occurred. According to the plaintiffs, the allegedly culpable conduct occurred at the defendant's headquarters in Illinois.[33] The defendant, however, alleged that the child's parents—one of whom was a named plaintiff—were contributorily negligent and that this alleged negligent conduct took place in Michigan.[34] The court, therefore, "view[ed] this contact as a wash."[35]

Here, Plaintiff Plaisance avers that Hospira's decision making regarding its docetaxel products and the warnings that accompanied those products occurred in Illinois where Hospira is headquartered. This contact, then, is not "a wash," or neutral, as in *Townsend* but instead favors Illinois.

The third contact is the domicile, residence, place of incorporation, and place of business of the parties. In *Townsend*, this contact was neutral, as the plaintiffs lived in Michigan and the defendant had its headquarters in Illinois.[36] Similarly, this contact is neutral here, as Plaintiff Plaisance lives in Louisiana and Hospira is headquartered in Illinois.

---

[31] *Id.*
[32] *See* Doc. 12387-3.
[33] *Townsend*, 227 Ill.2d at 168–69.
[34] *Id.* at 169.
[35] *Id.*
[36] *Id.*

The fourth contact is "the place where the relationship, if any, between the parties is centered."[37] In *Townsend*, the court identified this as Michigan, since the child's father purchased the lawn mower at a store doing business in Michigan.[38] Similarly, Plaintiff Plaisance's relationship with Hospira arose from her receipt of docetaxel in Louisiana, where Hospira was doing business. This contact, then, favors Louisiana.

In sum, the first and fourth contacts favor Louisiana; the second favors Illinois; and the third is neutral. As *Townsend* instructs, however, this Court "must not merely 'count contacts' but, rather, consider them in light of the general principles in section 6 [of the Second Restatement]."[39] In a personal injury action, the following Section 6 principles are implicated: the relevant policies of the forum; the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; and the basic policies underlying the particular field of law.[40]

Against this backdrop, the Illinois Supreme Court identified the conflicts before it, which included "the availability of punitive damages in product liability cases when appropriate, in Illinois, and the general unavailability of punitive damages in Michigan."[41] The court explained that the appellate court had found that Illinois had the most significant relationship to the issue of punitive damages, reasoning that Illinois had "a definite interest in punishment, deterrence of future wrongdoing, and corporate accountability."[42]

---

[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.* at 170.
[41] *Id.* at 172.
[42] *Id.* at 172–73.

The Illinois Supreme Court, however, disagreed, emphasizing that only in rare situations should another state be deemed to have a greater interest than the state of injury.[43] Quoting the Second Restatement, the court wrote:

> To some extent, at least, *every* tort rule is designed *both* to deter other wrongdoers *and* to compensate the injured person. Undoubtedly, the relative weight of these two objectives varies somewhat from rule to rule, but in the case of a given rule it will frequently be difficult to determine which of these objectives is the more important.[44]

The *Townsend* court, therefore, found that the plaintiffs had not overcome the "strong presumption that the law of Michigan, as the state where plaintiffs and where the injury occurred," should govern the issue of punitive damages.[45]

The same analysis applies here. Although Illinois has an interest in deterring wrongdoing and holding corporations accountable, this Court must be careful not to overemphasize this interest. The Court thus finds that this interest does not override the interest of Louisiana. Louisiana was not a fortuitous place of injury but was Plaintiff Plaisance's domicile and where she was prescribed and administered Hospira's drug. Accordingly, under the Illinois choice-of-law rules, Louisiana law should govern Plaintiff's claims. Because Louisiana law does not allow Plaintiff to seek punitive damages against Hospira, her punitive damages claim must be dismissed.

## CONCLUSION

Accordingly, for the foregoing reasons, Hospira's Motion for Summary Judgment Based on Claims Under Illinois Law (Doc. 12387) is **GRANTED**.

---

[43] *Id.* at 173–74.
[44] *Id.* at 174.
[45] *Id.* at 175.

Plaintiff Audrey Plaisance's claim for punitive damages under Illinois law is **DISMISSED**;

**IT IS FURTHER ORDERED** that the Court will construe Plaintiff's failure to warn claim as a claim under the Louisiana Products Liability Act;

**IT IS FURTHER ORDERED** that any claims not arising under the Louisiana Products Liability Act are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 12th day of January, 2022.

JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE