UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO *Cases Identified in Exhibit A to Defendants' Motion (Doc. 13746-1)* | |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR RULE TO SHOW CAUSE REGARDING DISMISSAL OF MISSISSIPPI PLAINTIFFS

MAY IT PLEASE THE COURT:

**I.     Introduction**

Plaintiffs, through the Plaintiffs' Steering Committee ("PSC"), respectfully oppose entry of a rule to show cause in lieu of formal briefing, after appropriate discovery, on the fact-intensive issues involved in the determination of whether a Defendant has successfully advanced a statute-of-limitations defense.  While Defendants' motion correctly reports that the PSC has agreed upon a procedure for future show cause hearings, based on experience with the Michigan show cause process, the PSC believes that the statutory bar in Michigan that forecloses any right of action without a showing of fraud on the FDA is entirely different than the application of a statute-of -limitations defense.  The issue in the Michigan rule to show cause proceeding was whether claims "may be similarly barred by the Michigan Products Liability Act."  Review and interpretation of the facts of a Plaintiff's case, except for choice of law purposes, was unnecessary in the Michigan proceedings.  The issue in Mississippi is different as it involves facts of each Plaintiff's case.

This Court has in every statute of limitations/prescription ruling, considered case-specific facts, including depositions of plaintiffs and other witnesses, and held a contradictory hearing on

1

the issues, To complicate matters if a show cause procedure was used in Mississippi what standard of evidentiary review would apply to such a show cause hearing.[1]? Thus, notwithstanding the PSC's willingness to confer and agree upon procedures that will streamline this MDL and communicate with plaintiffs' counsel to make all procedures more efficient, the PSC cannot agree that a show cause process is the appropriate means for resolving the statute of limitations issues raised by Defendants and respectfully submits that the fact-intensive nature of the statute-of-limitations inquiry requires that such motion practice in individual cases should be reserved for the transferor courts after remand.

## II.  Prior Rulings of the Court

In reaching the Court's conclusions set forth in the *Greer*, *Smith* and *Roach* cases, the Court was presented with and considered facts submitted by the parties. *See* Docs. 12057 at 6, 12718 at 6-8, 13064 at 6-7.  In deciding each of the prior Rule 56 challenges to the timeliness of certain Louisiana bellwether plaintiffs' claims, the Court likewise considered the particular facts of each case. *E.g.,* Doc. 7571, Transcript of July 29, 2021 attached hereto as Exhibit 1.  In the Court's July 29, 2021 oral reasons denying Sanofi's second motion to reconsider denial of summary judgment on the prescription in Ms. Kahn's case, the Court stated:

> I am reminded early on in this litigation Judge Engelhardt, when he was presented with an open prescriptive motion that all of these cases were prescribed, said no. Prescription, under Louisiana law, is a factually intensive basis.
> I think there's still factual issues for the jury to consider, and this is what my thought process is. I specifically note that throughout this litigation the defendant has pointed to multiple causes of alopecia. Most are not tort related. Of interest is age-related alopecia. What we hear from countless experts is there are reasons that have nothing to do with improper conduct that cause alopecia in women. That is a plausible cause of alopecia.

---

[1] Since Defendants' proposed "Order to Show Cause" (Doc. 13746-2) references the Court's *Greer* decision, the PSC presumes Defendants seek a Rule 12 ruling; however, it is unclear what standard would apply on appeal.

> Here, the plaintiff sought and investigated a cause for ongoing alopecia and was advised by her gynecologist that she was not the victim of a tort, but rather the aging process, and according to plaintiff she dropped it. Now, did she take vitamins? Did she use other products to try to facilitate hair growth? She did that, but she dropped it. Whether or not that was reasonable, to accept the opinion of one physician, I think is for the jury to decide, so the motion is denied.

Exhibit 1 at 15-16.  Thus, facts matter, and different facts presented may result in different rulings, making those facts material to the evaluation.  *See Alexander v. Wyeth*, 897 F. Supp. 2d 489 (2012).

Regardless of whether presented as a Rule 12 or Rule 56 motion, in each of the Court's rulings  applying of the Mississippi statute of limitations, the Court analyzed both pleading allegations and certain case-specific testimony of the individual plaintiff.[2]  Specific to the pleadings, Plaintiffs' master pleadings alleged fraudulent concealment, on which Rule 12 motions were denied (Doc. 784), and documents evidencing such concealment were referenced in the sealed pleadings attached to the motion for leave to amend. *See* Docs. 8334 (including enclosed proposed third amended master complaint), 8702 (denying leave to amend on the basis that "changes to the complaint would require additional discovery and the defendant to prepare a different defense").  The allegations of the Second Amended Complaint, which were denied by Defendants, have never been conceded by Defendants as sufficient to "define" the injury; moreover, at the time of the Court's ruling, none of the Mississippi plaintiffs identified in the Defendants' show cause motion had given a deposition.  Respectfully, and while acknowledging the Court's prior rulings and PTO 105, each Mississippi plaintiff retains the right to appeal that

---

[2] The Fifth Circuit's rulings are not directly relevant.  In *Thibodeaux* and *Durden*, the Fifth Circuit neither analyzed the Mississippi statute of limitations nor determined the appropriateness of this Court's interlocutory ruling denying leave to amend the master complaint. *See In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d 384, 389 (5th Cir. 2021) (the court also declined to rule on the issue of whether the summary judgment burden shifts to plaintiff under Rule 56); *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 860 F. App'x 886, 890 (5th Cir. 2021).

interlocutory ruling and Defendants have ample time to retain experts and present defenses in these cases, as none have been set for trial.[3] The trial should be held in the transferor court.

In *Thibodeaux* and *Durden*, the Fifth Circuit did not have the benefit of expert reports, as Ms. Thibodeaux's, Ms. Francis', Ms. Johnson's and Ms. Durden's cases were dismissed at the "early motions" stage of the bellwether process. Whether by design or happenstance, the Defendants utilized the "early motions" structure of the bellwether process to their advantage, shielding the Fifth Circuit from the complexity of issues surrounding permanent chemotherapy induced alopecia ("PCIA"), as well as alternative causation issues related to aging and hormone therapy that have since been addressed, along with other causation challenges, in multiple rounds of expert discovery and Rule 56/*Daubert* challenges. Indeed, each of the Defendants' dermatology experts have submitted expert opinions that the relevant plaintiff at issue in their respective reports does not have PCIA. *See* Exhibit 1 at 15-16. Recently, in *Plaisance*, the Defendant's expert testimony was that PCIA is a complex dermatologic condition which laypersons cannot self-diagnose. *See* Doc. 13658-2. All of these factual issues are relevant to the fact-intensive analysis required to adjudicate the statute of limitations defense, particularly in light of the master allegations being denied, the science and medical professionals having varying definitions of PCIA [4] (or more particular) than the pleading allegation, and the Defendants' litigation position that no bellwether Plaintiff thus far has the injury.[5] Nevertheless, in the cases ruled upon thus far by this

---

[3] The Court's denial of leave to amend the master complaint has not been presented on appeal because of its interlocutory nature and was not evaluated in *Thibodeaux* or *Durden*.

[4] Doc. 9418-21 (expert report of Sanofi's epidemiologist Dr. Ellen Chang, who stated "There is no universal or authoritative clinical definition of this condition, and various scientists and clinicians may define it differently, for example, based on the duration of persistence or the degree of hair regrowth.")

[5] Defendants filed master answers to the First Amended Master Complaint (Doc. 689), including to the definitional allegation that has been the subject of many statute-of-limitations arguments, i.e., ¶180 (¶181 of the Second Amended Master Complaint, Doc. 4407). Each answer denied the applicable paragraph "defining" the "injury." *See* Doc. 955 at ¶180, Doc. 956 at ¶180, Doc. 957 at ¶180, Doc. 958 at ¶180, Doc. 960 at ¶180, Doc. 961 at ¶180, Doc. 963 at ¶180, Doc. 969 at ¶180, and Doc. 5497 at ¶181.

4

Court and the Fifth Circuit, Defendants have successfully argued that every Plaintiff was "injured" sufficient to trigger the limitations period exactly at six months after they completed chemotherapy. The PSC respectfully submits that facts should be discovered, presented and considered in the Mississippi statute of limitations analyses.

### III. Fraudulent Concealment

Plaintiffs allege, and believe adequate factual support exists, to find that the difficulty of the prescribing and treating physicians in identifying PCIA in the normal course of treatment was a direct and proximate result of Defendants' concealment of their internal knowledge of the relationship between PCIA and use of docetaxel prior to the December 2015 label change. In fact, only recently in 2020, were doctors advised through the UpToDate service that "there is now convincing evidence of permanent or prolonged alopecia after standard-dose chemotherapy for breast cancer (particularly with docetaxel and clearly related to both dose per infusion and duration of exposure)" and that:

> The impact of alopecia and potential alternative chemotherapy approaches should be discussed with each patient **before** the initiation of therapy that may lead to alopecia. This preemptive approach is important for minimizing the emotional distress associated with hair loss. For patients with breast cancer who are receiving docetaxel at doses of 75 mg/m or above per infusion, it is important to advise patients about the risk of prolonged or permanent alopecia.

Exhibit 2, *Alopecia Related to Systemic Cancer Therapy,* UpToDate 2020 (emphasis in original).

Since January 26, 2007, Sanofi has known that docetaxel is related to permanent alopecia. *See* Exhibits submitted in opposition to Sanofi's motion for summary judgment in *Kahn*, Doc. 9418, including but not limited to, Doc. 9418-5 (global safety officer stating "permanent [hair loss] is sufficient " in response to questions regarding docetaxel-specific warnings in an informed consent form), Doc. 9418-16 (Sanofi witness stating "Well this is going to be fun submitting > 4

year old labeling changes to the FDA now" in response to emails investigating the reason "why the labeling changes associated with the TAX 316 study 10-year follow-up … were not submitted to the FDA"). Sanofi also had a "rapid response" program to identify social media users who complained about hair loss on their "Voices" facebook page, which included direction to their third-party contractor to report these users as abusers of the social media network in an effort to get them kicked off of the platform. Doc. 8334-2 at ¶235. Sanofi also sought to have patients advised that hair loss associated with its drug was "a common, yet temporary, side effect of some cancer medicines" through a publication bearing sanofi's logo and distributed through its sales force to doctors' offices across the country. Exhibits 3 (Kahn Trial Exhibit D-570) and 4 (Kahn Trial Transcript (Day 2 Morning), at 296-314).

  The PSC respectfully submits that these are facts supporting a finding of fraudulent concealment, even though some of these facts may (in some cases depending on the dates of administration) be evidence of the underlying failure to warn. *See Alexander,* 897 F. Supp. 2d at 492 (finding subsequent acts of concealment alleged by plaintiff, including misleading "dear doctor" letters sufficient to create an issue for trial). Indeed, much of this evidence related to Plaintiffs claims against Sanofi Defendants will post-date treatment of Mississippi Plaintiffs creating the necessity to review these issues on a case-by-case basis and, therefore, be excluded on that basis from trial as evidence that post dates their treatment. *See* Doc 13260 (ruling on motions in limine, excluding facebook, Intouch solutions, and evidence from Ms. Kahn's trial that post dates her treatment, and excluding online advocacy as prejudicial). The second prong of the Mississippi fraudulent concealment analysis requires consideration of the reasonableness of the Plaintiff's actions, much like Louisiana' contra non valentem analysis- a factual inquiry. *See Alexander,* supra.

6

Early in this litigation, the Court denied Defendants' Rule 12 challenge to the sufficiency of the pleadings on fraudulent concealment (Count 6 of the master complaint) and later found that bellwether plaintiff Ms. Mills had adequately alleged fraud under Georgia law to survive a Rule 56 challenge, stating in pertinent part:

> The Court rejects Defendants' argument. Defendants made express statements to Dr. Shah through Taxotere's label. In their Motion, Defendants admit that while the Taxotere label has since its inception warned of hair loss, it did not warn of permanent hair loss until December of 2015. Further, Dr. Shah's testimony provides evidence tending to show that she did rely on Defendants' representation. In reliance on the Taxotere/docetaxel label, she did not warn her patient, Ms. Mills, of permanent hair loss. Accordingly, Plaintiffs have created an issue of fact on their fraud-based claims.

Doc. 7571 at 19.

## IV. Conclusion

In sum, Mississippi Plaintiffs should be afforded the opportunity to proceed with discovery, present case-specific facts in the individual matters, identify evidence of concealment by the pertinent Defendant, and submit all relevant controverted and/or uncontroverted facts for either this Court or the transferor court on remand to evaluate whether there are genuine issues of material fact regarding any element of the Mississippi statute of limitations, discovery rule and/or fraudulent concealment framework such that a reasonable jury could find the action timely. Accordingly, Defendants' motion requesting a show cause proceeding should be denied.

Dated: February 8, 2022                                     Respectfully submitted,

/s/ Christopher L. Coffin                                   /s/ Karen B. Menzies
Christopher L. Coffin (#27902)                              Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.                            GIBBS LAW GROUP LLP
1100 Poydras Street, Suite 2225                             6701 Center Drive West, Suite 1400
New Orleans, Louisiana 70163                                Los Angeles, California 90045
Phone: (504) 355-0086                                       Telephone: 510-350-9700
Fax: (504) 355-0089                                         Facsimile: 510-350-9701

...

ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

**PLAINTIFFS' STEERING COMMITTEE**

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

J. Kyle Bachus
Bachus & Schanker, LLC
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045 Phone:
510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110

8

New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

John Gomez
The Gomez Law Firm, PLLC
655 West Broadway, Suite 1700
San Diego, CA 92101
Phone: (619) 237.3490
Fax: 619.237.3496.
john@thegomezfirm.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, FL 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904 15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@amalaw.com

Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Jessica Perez Reynolds
Pendley, Baudin & Coffin
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Phone: (225) 687-6396
Fax: (225) 687-6398
jperez@pbclawfirm.com

Darin L. Schanker
Bachus Schanker
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
dls@coloradolaw.net

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Zachary Wool
Barrios Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
zwool@bkc-law.com

## CERTIFICATE OF SERVICE

     I hereby certify that on February 8, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

                                                  */s/ M. Palmer Lambert*
                                                  M. PALMER LAMBERT