UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL No. 16-2740 SECTION: "H" (5) |
| This document relates to: Audrey Plaisance, 18-8086 | ) ) ) | |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment Based on the Statute of Limitations (Doc. 13387). On January 20, 2022, the Court granted the Motion with written reasons to follow (Doc. 13726). For the following reasons, the Motion is **GRANTED.**

## BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel,[1] that Plaintiffs were administered for the treatment of breast cancer or other forms of cancer. Among these companies are Defendants Hospira, Inc. and Hospira Worldwide, LLC (collectively, "Hospira" or "Defendants"). Plaintiffs allege that the drug caused permanent alopecia, or permanent hair loss. Plaintiffs bring claims of failure to warn, negligent misrepresentation, fraudulent misrepresentation, and

---

[1] Docetaxel is the generic version of Taxotere.

1

more. The first bellwether trial was held in September 2019, and the second was held in November 2021.[2]

In May 2020, the Court selected Plaintiff Audrey Plaisance to proceed with discovery in preparation for the fifth bellwether trial. Ms. Plaisance was diagnosed with breast cancer on December 2, 2013. She began chemotherapy treatment on January 14, 2014, which consisted of four cycles of docetaxel and Cytoxan administered approximately every three weeks. She completed this chemotherapy regimen on March 20, 2014.

Approximately six weeks later, on May 5, 2014, Ms. Plaisance expressed concerns about her lack of hair regrowth to her oncologist, Dr. Laura Chauvin, during a follow-up visit. Dr. Chauvin advised Ms. Plaisance that this was normal and that if she had any continuing concerns, she should see her dermatologist. At her next visit with Dr. Chauvin on May 19, 2014, Ms. Plaisance again expressed frustration with her lack of hair regrowth.[3] Dr. Chauvin told her that it was premature to be worried that her hair would not regrow and stated in her plan of action for this appointment that if Ms. Plaisance continued to have concerns, "she should discuss with her dermatologist."[4] Ms. Plaisance did not complain about lack of hair regrowth to Dr. Chauvin again.

In March 2016, Ms. Plaisance saw a dermatologist, Dr. Ryan Matherne. She testified that this was the first time she saw a doctor for her hair loss after completing chemotherapy. She further testified that she did not ask Dr. Matherne whether her hair loss was related to her chemotherapy.

---

[2] The second trial was continued due to the COVID-19 pandemic.
[3] Doc. 13387-2 at 2; Doc. 13500-1 at 3.
[4] Doc. 13387-2 at 2–3; Doc. 13500-1 at 3.

Ms. Plaisance filed her lawsuit on August 23, 2018. She retained counsel only after she saw a television advertisement regarding litigation about Taxotere (docetaxel) and permanent hair loss.

In the instant Motion, Hospira moves for summary judgment against Ms. Plaisance. Hospira argues that Ms. Plaisance's claims are prescribed according to Louisiana's one-year liberative prescriptive period. Plaintiff opposes Hospira's Motion.

## LEGAL STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6] "In reviewing a summary judgment motion, the court must 'refrain from making credibility determinations or weighing the evidence' and must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."[7]

## LAW AND ANALYSIS

Under Louisiana Civil Code article 3492, the prescriptive period for products liability claims is one year.[8] "This prescription commences to run from the day injury or damage is sustained.[9] "'The burden of proof is normally on the party pleading prescription; however, if on the face of the petition it

---

[5] FED. R. CIV. P. 56.
[6] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[7] Devon Enters., LLC v. Arlington Indep. Sch. Dist., 541 Fed. App'x 439, 441 (5th Cir. 2013).
[8] LA. CIV. CODE art. 3492; *see also In re* Xarelto (Rivaroxaban) Prods. Liab. Litig., No. 15-4790, 2017 WL 4517287, at *2 (E.D. La. Oct. 10, 2017).
[9] LA. CIV. CODE art. 3492.

appears that prescription has run, . . . the burden shifts to the plaintiff to prove a suspension or interruption of the prescriptive period' based on the equitable doctrine of *contra non valentem*."[10] Accordingly, this Court will first determine whether Ms. Plaisance's claims are facially prescribed. If so, this Court will then determine whether there is a genuine dispute of material fact as to whether *contra non valentem* tolled the prescriptive period.

## I. Whether Ms. Plaisance's Claims Are Facially Prescribed

Products liability actions are subject to a liberative prescriptive period of one year.[11] The prescriptive period begins to run on the date the injury is sustained.[12] Hospira argues, and this Court agrees, that Ms. Plaisance's claims are facially prescribed because she filed her lawsuit more than three years after she allegedly sustained her injury.

The Master Complaint, which was adopted by Ms. Plaisance in her pleadings, defines permanent chemotherapy-induced alopecia ("PCIA") as "an absence of or incomplete hair regrowth six months beyond chemotherapy." In *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, (hereinafter *Thibodeaux)*, the Fifth Circuit held that "[a]s a matter of law, the injury of 'an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy' is sustained when, six months after the completion of chemotherapy, a person has an absence of or incomplete hair regrowth."[13] Ms. Plaisance, therefore, sustained her alleged injury in September 2014, six months after completing

---

[10] *In re* Taxotere (Docetaxel) Prods. Liab. Litig., 995 F.3d 384, 388−89 (5th Cir. 2021) [hereinafter *Thibodeaux*] (quoting Younger v. Marshall Indus. Inc., 618 So. 2d 866, 869 (La. 1993)).
[11] LA. CIV. CODE art. 3492. *See also In re* Xarelto (Rivaroxaban) Prods. Liab. Litig., 2017 WL 4517287, at *2 (E.D. La. Oct. 10, 2017).
[12] LA. CIV. CODE art. 3492. *See also Thibodeaux*, 995 F.3d at 390 (explaining that "[w]ithout a 'date of discovery' provision in [article 3492], [the court] look[s] to when the injury was sustained to determine when the prescription period began to run.").
[13] *Thibodeaux*, 995 F.3d at 390.

4


chemotherapy in March 2014, when her hair did not grow back completely.[14] Accordingly, because she did not file suit until August 23, 2018, more than three years after she sustained her alleged injury and the prescriptive period commenced, Ms. Plaisance's claims are facially prescribed.

## II. Whether *Contra Non Valentem* Tolled the Prescriptive Period

C*ontra non valentem* is a judicially created exception to prescription based on the civil doctrine "*contra non valentem agree non currit praescriptio*, which means 'no prescription runs against a person unable to bring an action.'"[15] It tolls prescription only in four "exceptional circumstances."[16] Ms. Plaisance argues that two of these circumstances are applicable to her claims, namely, "where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant" and "where the defendant has done some act effectually to prevent the plaintiff from availing himself of his cause of action."[17] "'The burden now shifts to the plaintiff to prove a suspension or interruption of the prescriptive period' under on the doctrine of *contra non valentem*."[18] The Court will consider each in turn.

### A. Where the Cause of Action Is Not Known or Reasonably Knowable by the Plaintiff

This category, often referred to as the "discovery rule," provides that prescription is tolled until the "plaintiff obtains actual or constructive

---

[14] Ms. Plaisance testified that her hair came back "much finer, much thinner than what [she] had before. Much, much thinner. The sides, the back, the top." Doc. 13387-6 at 219:9-13. She also testified that she considers herself to be bald in some areas, such as the back and front of her head. *Id.* at 132:20-22. She further testified that her hair has looked the way it does today since 2014. *Id.* at 133:7-9.
[15] *Thibodeaux*, 995 F.3d at 390 (quoting R.J. Reynolds Tobacco Co. v. Hudson, 314 F.2d 776, 786 (5th Cir. 1963)).
[16] *Id.* (citing Morgan v. Entergy New Orleans, Inc., 234 So. 3d 113, 116, 120 (La. App. 4 Cir. 2017)).
[17] Doc. 13500 at 7−8.
[18] *Thibodeaux*, 995 F.3d at 389 (quoting *Younger*, 618 So. 2d at 869).

5

knowledge of facts indicating to a reasonable person that he or she is the victim of a tort."[19] The Louisiana Supreme Court has explained:

> Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription.[20]

Plaintiff argues that she did not have constructive knowledge until she saw a television advertisement in 2018 regarding litigation about Taxotere (docetaxel) and permanent hair loss. Ms. Plaisance avers that until then she reasonably believed that her hair loss was temporary and that her hair would eventually grow back. In support, she submits that she does not recall Dr. Chauvin ever mentioning the risk of permanent hair loss when discussing the risks of chemotherapy with her and can only recall Dr. Chauvin telling her that her hair would grow back, and therefore, she understood that her hair loss would be temporary.

In *Thibodeaux*, the Fifth Circuit implicitly rejected this argument.[21] There, the court held that "Louisiana law requires that once hair loss persisted after six months, *contra non valentem* tolled prescription until the point when a prospective plaintiff through the exercise of reasonable diligence should have 'considered [Taxotere or docetaxel] as a potential root cause of her injury.'"[22] The court explained that a reasonable inquiry of a person with persistent hair loss would likely include consultation with doctors but that it could also include a plaintiff searching for the cause herself.[23] The court then noted that none of

---

[19] Campo v. Correa, 828 So. 2d 502, 510 (La. 2002); *see also* Oil Ins. Ltd. v. Dow Chem. Co., 977 So. 2d 18, 22 (La. App. 1 Cir. 2007).
[20] *Campo*, 828 So. 2d at 510−11.
[21] *Thibodeaux*, 995 F.3d 384.
[22] *Id.* at 392–93 (citing *Oil Ins. Ltd.*, 977 So. 2d at 22) (alteration added).
[23] *Id.* at 393.

6

the appellants inquired with their doctor into the cause of their persistent hair loss, nor did any perform any individual research.[24] The court then turned to what information the appellants could have discovered if they had searched for the cause on their own.[25] Relying on the evidence identified in the Master Complaint, the court found that certain information did exist that linked Taxotere (or docetaxel) to permanent hair loss that the plaintiffs could have uncovered on their own through a reasonable inquiry.[26] The court then charged the appellants with knowledge of that information and ultimately concluded that they "[did] not raise[] a genuine dispute of material fact that a reasonable inquiry would have left them without knowledge—if not certainty—of whom to sue [one year prior to their filing suit]."[27]

Ms. Plaisance attempts to distinguish her case from *Thibodeaux*, arguing that she did investigate her injuries and that, based on her conversations with her doctors, she reasonably believed that her hair loss was temporary and that something other than Hospira's conduct caused her injury. Ms. Plaisance thus contends that this Court should not charge her with knowledge of the information available on the internet as the Fifth Circuit did in *Thibodeaux* and that she has raised a genuine issue of material fact regarding the application of *contra non valentem*.

This Court rejects Plaintiff's argument. Ms. Plaisance relies specifically on her conversations with Drs. Chauvin and Matherne. In May 2014, two

---

[24] *Id.*
[25] *Id.*
[26] *Id.* at 394. Specifically, the Fifth Circuit noted that, in 2006, former Taxotere patients formed a group known as "Taxotears" with an online presence, where they argued and proclaimed that Taxotere caused their permanent hair loss. Also, in 2010, a Canadian newspaper and CBS News both published online articles linking Taxotere and permanent hair loss. In addition to this, there was medical literature available that linked docetaxel to permanent hair loss. *Id.* at 393.
[27] *Id.* at 394.

7

months after completing chemotherapy, Dr. Chauvin told Plaintiff that it was premature to be concerned that her hair would not fully regrow. This comment cannot serve as basis for tolling prescription for two reasons. First, Dr. Chauvin did not tell Ms. Plaisance that her hair loss was caused by something other than chemotherapy. Rather, Dr. Chauvin told her that it was premature to be worried but that she should see a dermatologist if she had continuing concerns.[28] In *Kahn*, this Court found that it was a question for the jury to determine whether a conversation Ms. Kahn had with her doctor—where the doctor told her that her lack of hair regrowth was likely attributable to age and not chemotherapy—was sufficient to toll prescription.[29] Here, Ms. Plaisance was given no reason to believe her hair loss was attributable to anything other than chemotherapy.

Second, Dr. Chauvin's comment cannot serve as a basis for tolling prescription because it occurred in May 2014, merely two months after completing chemotherapy. Her comment, therefore, is consistent with the Master Complaint which charges that permanent alopecia occurs when there is "an absence of or incomplete hair growth six months after chemotherapy." Two months after the completion of chemotherapy is indeed premature. Generally, to toll prescription, the conversation must occur after the injury has been sustained or, in other words, more than six months after completing chemotherapy.[30] As a result, Plaintiff's conversation with Dr. Chauvin cannot serve as a basis for tolling prescription.

---

[28] Doc. 13387-8 at 119:10-14.
[29] *See* Doc. 12805.
[30] *See In re* Taxotere (Docetaxel) Prods. Liab. Litig., 860 F. App'x 886, 893 (5th Cir. 2021) (per curiam) (involving fact pattern where plaintiff asserted that four doctors said her hair would grow back, but there was "no evidence that any doctor told [Plaintiff] that her hair would fully regrow after the six-month-post-chemotherapy injury mark").

Plaintiff's conversation with Dr. Matherne likewise cannot serve as a basis for tolling prescription because it occurred after the prescriptive period expired. As the Fifth Circuit explained in *Thibodeaux*, Plaintiff's injuries were sustained six months after chemotherapy ended.[31] The injury should have caused an inquiry within a reasonable time thereafter, and Ms. Plaisance is charged with knowledge of all that a reasonable inquiry would have revealed.[32] Like the Appellants in *Thibodeaux*, Ms. Plaisance attributed her initial hair loss to her chemotherapy treatment, and though she did not know the cause of her persistent hair loss, "the standard of 'knew or should have known'" means she "needed to investigate [docetaxel] as a potential cause."[33] The evidence indicates that from the time Ms. Plaisance sustained her injury in September 2014, she did not speak to a doctor about her hair loss until her appointment with Dr. Matherne, some 18 months later, in March 2016.

In *Thibodeaux*, the Fifth Circuit noted that, per the Master Complaint, certain information existed that Plaintiffs in this MDL could have uncovered.[34] In 2006, former Taxotere patients formed a group known as "Taxotears," and they developed an online presence.[35] In 2010, a Canadian newspaper and CBS News both published online articles linking Taxotere and permanent hair loss.[36] In addition to this, there was medical literature available linking Taxotere and docetaxel to permanent hair loss.[37] Accordingly, the court

---

[31] *Thibodeaux*, 995 F.3d at 392.
[32] *Id.* at 392, 393.
[33] *Id.* at 393.
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] In 2006, Dr. Scot Sedlacek disseminated his research on persistent alopecia and docetaxel. *See id.* at 393–94. In 2009 and 2011, articles were published in the British Journal of Dermatopathology and the American Journal of Dermatopathology, respectively, and in 2012, an article was published in the Annals of Oncology. *Id.* at 394. These three articles linked permanent hair loss with breast cancer patients who received docetaxel chemotherapy. *Id.*

9

determined that "[a] reasonable inquiry would have uncovered at least some information that linked Taxotere [or docetaxel] to persistent alopecia" and charged the appellants with that knowledge.

This Court acknowledges that the medical literature could have been difficult for Ms. Plaisance to understand; however, conversations with her treating physicians about the meaning of what was uncovered would be part of the exercise of reasonable diligence.[38]

Having no reason to deviate from the Fifth Circuit's finding, this Court charges Ms. Plaisance with knowledge of the information previously discussed linking Taxotere and docetaxel to persistent alopecia. This Court, therefore, finds that Ms. Plaisance had constructive knowledge of her claim in September 2014, once her hair loss persisted for six months. Accordingly, the prescriptive period commenced on that day, and Ms. Plaisance's claims prescribed in September 2015.

### B. Where the Defendant Has Done Some Act Effectually to Prevent the Plaintiff from Availing Herself of Her Cause of Action

*Contra non valentem* also provides an exception to prescription in cases "where the defendant has done some act effectually to prevent the plaintiff from availing [herself] of [her] cause of action."[39] Plaintiff argues that Hospira actively concealed its true knowledge of the potential risk of permanent hair loss associated with docetaxel, preventing her from discovering that her hair loss was permanent and that it had been caused by docetaxel. This Court disagrees. As previously discussed, it is this Court's finding that a reasonable

---

[38] *See id.* at 393 (explaining that the medical literature is still relevant regardless of plaintiffs' education and intelligence because a diligent plaintiff would consult with her treating physicians as to the meaning of information that she discovered but did not understand).

[39] *Id.* at 390 (citing *Morgan*, 234 So. 3d at 116).

10

inquiry would have led Ms. Plaisance to the information necessary to assert her cause of action. Accordingly, this exception does not apply, and Ms. Plaisance's claims are prescribed.[40]

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment Based on the Statute of Limitations (Doc. 13387) is **GRANTED**.

New Orleans, Louisiana, this 22nd day of February, 2022.

*[signature]*

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[40] The Fifth Circuit, in *Thibodeaux*, likewise found this exception inapplicable to the appellants' claims for the same reason. *Id.* at 395.