UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)　　　　　　　　　　　　MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

　　　　　　　　　　　　　　　　　　　　　　　　　　　　SECTION "H" (5)

THIS DOCUMENT RELATES TO:
*Plaisance v. Hospira, Inc.*, *et al.*, Case No. 2:18-cv-08086

### PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO HOSPIRA'S MOTION FOR SUMMARY JUDGMENT BASED ON STATUTE OF LIMITATIONS

Plaintiff Audry Plaisance, respectfully supplements her opposition memorandum with recent testimony of Hospira's expert dermatologist in this case. Recently, Hospira's retained expert Dr. Julian Mackay-Wiggan, M.D., gave testimony in this case that supports Mrs. Plaisance's opposition to Hospira's Motion for Summary Judgment on Statute of Limitations. *See, e.g.*, Exhibit A, Dep. Transcript of Julian Mackay-Wiggan, M.D. ("Mackay-Wiggan Dep."), December 17, 2021, at 39:11-14; 43:4-6; 71:12-72:10; 82:1-5; and 82:6-11.

Dr. Mackay-Wiggan, Hospira's retained dermatology expert, purports to be an expert on chemotherapy and alopecia and has nineteen years of experience treating patients for hair loss. *Id*. at 37:9-12; 79:5-9. She testified that she does not believe it has been established that Permanent Alopecia After Chemotherapy ("PCIA") even exists in the context of Docetaxel. *Id*. at 39:7-14. Further, Hospira's expert testified that she believes she has only seen one case of hair loss that she determined to be PCIA, not specifically in the Docetaxel context, in her entire career. *Id*. 38:15-21. This testimony accords with the testimony of Dr. Matherne, Mrs. Plaisance's treating dermatologist, who had no pre-litigation knowledge of PCIA and testified that he advises patients who have undergone chemotherapy to "be patient" with the hair regrowth process and that their

1

hair loss is "most likely reversible." *See* Plaintiff's Statement of Additional Uncontroverted Material Fact ("PSAUMF") at ¶17.

Additionally, and perhaps more importantly, when asked if diagnosing permanent chemotherapy-induced alopecia and attributing it to a specific drug requires medical expertise, Dr. Mackay-Wiggan did her best to avoid a direct answer, but ultimately testified in the affirmative. Specifically, she testified that

> [D]iagnosing it in certain cases, and definitely attributing it to any specific drug, can be very, very difficult. There's a lot of variables, there's a lot of conflicts about what the – what the clinical presentation is, what the criteria are, what the incidence is, what it looks like, whether it can regrow with treatment or not. I mean, it's a very – it's a difficult thing. And also, a lot of these patients have a lot of other variables that, you know, confound the situation and make it difficult sometimes to pinpoint the specific diagnosis, or to pinpoint PCIA to the exclusion of anything else, and certainly to attribute it to any particular one drug when there's usually multiple drugs involved.

*Id.* at 71:12-72:10.

This testimony from Hospira's retained expert directly supports Mrs. Plaisance's argument that it is unreasonable to require her, a layperson, to determine she had experienced PCIA or that docetaxel caused that PCIA. Dr. Mackay-Wiggan's testimony clearly does not support Hospira's argument that a layperson is capable of determining that she has PCIA or that a specific drug caused that PCIA. In fact, Dr. Mackay-Wiggan took Mrs. Plaisance's argument a step further, testifying that this determination is "very, very difficult" even for an experienced dermatologist with years of experience in treating hair loss patients. This testimony, especially when read in conjunction with Dr. Matherne's testimony, directly contradicts Hospira's statute of limitations arguments. If the PCIA determination is difficult for a *hair loss expert*, it is even more difficult for a general

2

practice dermatologist like Dr. Matherne and impossible for a layperson like Mrs. Plaisance.

The difficulty in determining PCIA is not hypothetical, but is clearly demonstrated by Dr. Matherne's testimony. Dr. Matherne diagnosed Mrs. Plaisance with telogen effluvium and discussed potential causes of the condition such as stress, illness, iron deficiency, thyroid disease, and medications. PSAUMF at ¶9. He prescribed shampoo, scalp injections and medications to Mrs. Plaisance to attempt to help regrow her hair. Plaintiff's Response to Hospira's Statement of Uncontroverted Material Facts at ¶19. Dr. Matherne never diagnosed Mrs. Plaisance with PCIA. In fact, Dr. Matherne's treatment and diagnoses exemplify Dr. Mackay-Wiggan's opinion that it is "difficult sometimes to pinpoint the specific diagnosis…or to pinpoint PCIA."[1] As such, it is unreasonable to expect Mrs. Plaisance, a layperson, to come to a conclusion that her own dermatologist did not reach and that Hospira's own expert testified is a very difficult conclusion to reach.[2]

Finally, Dr. Mackay-Wiggan testified that she is not familiar with certain articles that Hospira points to as publicly available resources by which Mrs. Plaisance could have learned of the critical facts giving rise to her cause of action. Ex. A, Mackay-Wiggan Dep.

---

[1] Dr. Mackay-Wiggan's expert opinion in this case is that Mrs. Plaisance never had PCIA, but rather that she likely suffers from multiple other types of alopecia including female pattern hair loss and endocrine induced alopecia *See* Exhibit B, Excerpts from Expert Report of Dr. Mackay-Wiggan (117-123). The complexity of this scientific diagnosis and defendants' expert opinions contradicting the timing (or existence) of PCIA were not addressed by the Fifth Circuit in prior decisions on liberative prescription, nor were such expert opinions in the record on appeal in those cases, because *Thibodeaux* and *Durden* were both decided on "early motions" presented to this Court before expert reports in certain bellwether cases.

[2] *See* Court's Oral Reasons of July 29, 2021 denying Sanofi's Second Motion for Reconsideration in Kahn (Transcript attached as Exhibit C) at 15-16:

> I think there's still factual issues for the jury to consider, and this is what my thought process is. I specifically note that throughout this litigation the defendant has pointed to multiple causes of alopecia. Most are not tort related. Of interest is age-related alopecia. What we hear from countless experts is there are reasons that have nothing to do with improper conduct that cause alopecia in women. That is a plausible cause of alopecia.

at 82:1-5. Further, she was unable to pinpoint when she first learned of a possible association between Docetaxel and permanent hair loss. *Id*. at 82:6-11. This, coupled with her testimony that she does not even believe PCIA exists in the Docetaxel context, demonstrates that determining the critical facts giving rise to Mrs. Plaisance's cause of action is not as simple as Hospira would like the Court to believe. There was no groundbreaking, well-publicized announcement of the association between Docetaxel and PCIA, by which the general population or even dermatologists learned of the association.

Dr. Mackay-Wiggan, who purports to be an expert in chemotherapy and hair loss, is not familiar with all the publicly available information. Therefore, Mrs. Plaisance cannot be expected to be familiar with the same information. Further, this expert cannot pinpoint when she first learned of the association between Docetaxel and PCIA, and does not even believe PCIA to exist in the context of Docetaxel. As such, Mrs. Plaisance certainly cannot have been expected to conclude, or even suspect, that such an association existed years before litigation involving Docetaxel began.

Dr. Mackay-Wiggan's testimony both supports Mrs. Plaisance's position that her claims are not time barred as a matter of law and provides further evidence that genuine issues of material fact remain for the jury to evaluate regarding liberative prescription and *contra non valentem*. As such, summary judgment is not proper on this issue and Hospira's motion should be denied.

Dated: January 4, 2022                                      Respectfully submitted,

*/s/ Christopher L. Coffin*                                 */s/ Karen B. Menzies*
Christopher L. Coffin (#27902)                              Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.                            GIBBS LAW GROUP LLP

4

| | |
|---|---|
| 1100 Poydras Street, Suite 2225<br>New Orleans, Louisiana 70163<br>Phone: (504) 355-0086<br>Fax: (504) 355-0089<br>ccoffin@pbclawfirm.com | 6701 Center Drive West, Suite 1400<br>Los Angeles, California 90045<br>Telephone: 510-350-9700<br>Facsimile: 510-350-9701<br>kbm@classlawgroup.com |
| *Plaintiffs' Co-Lead Counsel* | *Plaintiffs' Co-Lead Counsel* |
| /s/M. Palmer Lambert<br>M. Palmer Lambert (#33228)<br>GAINSBURGH BENJAMIN DAVID<br>MEUNIER & WARSHAUER, LLC<br>2800 Energy Centre, 1100 Poydras Street<br>New Orleans, LA 70163-2800<br>Phone: 504-522-2304<br>Fax: 504-528-9973<br>plambert@gainsben.com | /s/Dawn M. Barrios<br>Dawn M. Barrios (#2821)<br>BARRIOS, KINGSDORF & CASTEIX, LLP<br>701 Poydras Street, Suite 3650<br>New Orleans, LA 70139<br>Phone: 504-524-3300<br>Fax: 504-524-3313<br>barrios@bkc-law.com |
| *Plaintiffs' Co-Liaison Counsel* | *Plaintiffs' Co-Liaison Counsel* |

**PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Anne Andrews<br>Andrews & Thornton<br>4701 Von Karman Ave., Suite 300<br>Newport Beach, CA 92660<br>Phone: (800) 664-1734<br>aa@andrewsthornton.com | Abby E. McClellan<br>Stueve Siegel Hanson LLP<br>460 Nichols Road, Suite 200<br>Kansas City, MO 64112<br>Phone: (816) 714-7100<br>Fax: (816) 714-7101<br>mcclellan@stuevesiegel.com |
| J. Kyle Bachus<br>Bachus & Schanker, LLC<br>101 W Colfax Ave, Suite 650<br>Denver, CO 80202<br>Phone: (303) 222-2222<br>Fax: (303) 893-9900<br>kyle.bachus@coloradolaw.net | Karen Barth Menzies<br>Gibbs Law Group LLP<br>6701 Center Drive West, Suite 1400<br>Los Angeles, CA 90045 Phone:<br>510-350-9700<br>Fax: 510-350-9701<br>kbm@classlawgroup.com |
| Lawrence J. Centola, III<br>Martzell, Bickford & Centola<br>338 Lafayette Street<br>New Orleans, LA 70130<br>Phone: (504) 581-9065<br>Fax: (504) 581-7635<br>lcentola@mbfirm.com | David F. Miceli<br>David F. Miceli, LLC<br>P.O. Box 2519<br>Carrollton, GA 30112<br>Phone: (404) 915-8886<br>dmiceli@miceli-law.com |

5

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

John Gomez
The Gomez Law Firm, PLLC
655 West Broadway, Suite 1700
San Diego, CA 92101
Phone: (619) 237.3490
Fax: 619.237.3496.
john@thegomezfirm.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, FL 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904 15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Daniel P. Markoff
Atkins & Markoff Law Firm

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Jessica Perez Reynolds
Pendley, Baudin & Coffin
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Phone: (225) 687-6396
Fax: (225) 687-6398
jperez@pbclawfirm.com

Darin L. Schanker
Bachus Schanker
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
dls@coloradolaw.net

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Zachary Wool
Barrios Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650

9211 Lake Hefner Parkway, Suite 104  
Oklahoma City, OK 73120  
Phone: (405) 607-8757  
Fax: (405) 607-8749  
dmarkoff@amalaw.com

New Orleans, LA 70139  
Phone: (504) 524-3300  
Fax: (504) 524-3313  
zwool@bkc-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ M. Palmer Lambert*  
M. PALMER LAMBERT