# EXHIBIT C

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION *
*
*
* 
Relates to: 16-CV-17039 *
*
*
* * * * * * * * * * * * * * * * * *

16-MD-2740

Section H

July 29, 2021

ORAL ARGUMENT BEFORE
THE HONORABLE JANE T. MILAZZO
UNITED STATES DISTRICT JUDGE

Appearances:

For the Plaintiffs: Gainsburgh Benjamin David Meunier & Warshauer, LLC
BY: M. PALMER LAMBERT, ESQ.
1100 Poydras Street, Suite 2800
New Orleans, Louisiana 70163

For the Sanofi Defendants: DLA Piper, LLP
BY: ILANA H. EISENSTEIN, ESQ.
1650 Market Street, Suite 5000
Philadelphia, Pennsylvania 19103

Official Court Reporter: Toni Doyle Tusa, CCR, FCRR
500 Poydras Street, Room B-275
New Orleans, Louisiana 70130
(504) 589-7778

Proceedings recorded by mechanical stenography using computer-aided transcription software.

**INDEX**

Page

Oral Argument

Ilana H. Eisenstein, Esq. 3

M. Palmer Lambert, Esq. 9

Ilana H. Eisenstein, Esq. 12

**PROCEEDINGS**

**(July 29, 2021)**

**THE COURT:** Let's call the case.

**THE DEPUTY CLERK:** This is in the matter of *Taxotere*, MDL 2740. Would counsel arguing please make your appearances for the record.

**MS. EISENSTEIN:** Good morning, Your Honor. Ilana Eisenstein on behalf of the defendant, Sanofi.

**MR. LAMBERT:** Good morning, Your Honor. Palmer Lambert on behalf of Elizabeth Kahn.

**THE COURT:** Ms. Eisenstein, it's your renewal of a renewal of a renewal.

**MS. EISENSTEIN:** Do you want me to keep my mask on, Your Honor?

**THE COURT:** You may take the mask off, yes. Thank you.

**MS. EISENSTEIN:** Thank you, Your Honor. May it please the Court. Your Honor, *Thibodeaux* established a high bar for the plaintiff to meet her burden to show *contra non valentem*, but *Thibodeaux* is a "no inquiry" case, as Your Honor knows. The prescriptive period, the Court held, ends once the plaintiff has notice enough to call for inquiry, and the question is whether the cause of her injury was knowable in the exercise of reasonable inquiry.

In *Thibodeaux* the Court held that plaintiff

09:29

would have found the following evidence relevant to what a reasonable inquiry by plaintiffs would have uncovered, and they cited the various forms of evidence -- the "Taxotears" website, the CBS news story, etc. -- that's cited in the master complaint. In light of that key information, the Court held that diligence required that Taxotere be explored -- Taxotere be explored -- as a possible explanation for hair loss.

Sanofi filed a motion for reconsideration at that point, as Your Honor knows, and this Court distinguished the plaintiffs in *Thibodeaux* because they were "no inquiry" plaintiffs. They had done nothing and performed no investigation into their injuries. Your Honor found that here, by contrast, Ms. Kahn had investigated her injury because she consulted with her doctor and was told that her age was causing her hair loss.

*Durden* came out in the meantime, and *Durden* made clear that that statement by Dr. Roberie that age was potentially a cause of her hair thinning does not toll the prescriptive period. Making that simple inquiry, asking that one question does not avoid summary judgment. Rather, in *Durden* the Fifth Circuit applied *Thibodeaux* and found that the key information cited in the master complaint again required the plaintiff to specifically consider Taxotere -- Taxotere -- as the potential root cause and that causes of action were reasonably knowable. It refused to distinguish *Thibodeaux*

09:31

along the inquiry/no inquiry line.

**THE COURT:** In *Durden* did she do any inquiry?

**MS. EISENSTEIN:** Yes. So in *Durden* --

**THE COURT:** What did she do?

**MS. EISENSTEIN:** So she went to her dermatologist and she said -- there were two things she did. She claimed her case was different because her doctor diagnosed her with female pattern hair loss, just like Roberie -- actually, it wasn't in response to an inquiry. It was just Roberie offered that she thought her hair thinning was due to age.

It's that same fact pattern. The dermatologist that Durden went to actually gave her a specific diagnosis of female pattern hair loss, and she claimed that she also engaged in unspecified research into the permanency of her hair loss. The Court in *Durden* easily dismissed that diagnosis and the research. It's not clear why that diagnosis makes any relevant difference, and there are two reasons for that.

One is, just like here, there was no evidence that any doctor filtered in that her persistent hair loss was singularly attributable to female pattern hair loss to the exclusion of other causes.

**THE COURT:** Excuse me. If you are on the line, would you please put your phone on mute. Thank you.

**MS. EISENSTEIN:** What's more, just like in Ms. Kahn's case, in *Durden* there was no evidence that Durden herself

09:32

reasonably believed that her persistent hair loss was caused by female pattern baldness. Rather, the Court held that summary judgment was warranted because Durden failed to consider Taxotere as a potential cause of her persistent hair loss. She made no reasonable inquiry to determine Taxotere's effect on persistent hair loss.

In this Court's prior decision, you have looked at whether or not there was an inquiry into the cause, but *Durden* clarifies that the inquiry that constitutes reasonable diligence is something far more specific. It's an inquiry about Taxotere's potential cause of a hair loss, and there's a good reason why.

It's distinguishable from the cases that plaintiffs cite where it wasn't reasonably knowable what the cause was; for example, the *Hoerner* case or the *Sharkey* case. In those cases the courts have found that it wasn't knowable whether the eye infection was being caused by bacteria or something to do with contact lenses, or whether Reye's syndrome was due to the use of the medication or whether it was something like polio, there's nothing you can do about it.

In this case, however, the Court looked at the information. The Fifth Circuit looked at the information that was out there regarding Taxotere and found it was reasonably knowable. Here Ms. Kahn admitted she did not investigate Taxotere as the cause of persistent hair loss.

09:34

"Have you ever talked to any health care provider about whether Taxotere caused or contributed to your hair thinning?"

"No."

She did not believe that what she described as balding was due to age either. She talked a few times in her deposition transcript about her interaction with Dr. Roberie and she acknowledged the comment, "Well, as you get age, your hair gets thinner." That was Dr. Roberie's comment.

Ms. Kahn testified she did not believe this was the cause. She said, "I was 50 at the time, and most 50-year-olds' hair don't thin. 80, maybe, but not 50. So when she said that, I was a little taken aback and I dropped it."

Later she was asked, "Dr. Roberie was answering a question that you had air thinning," and she said -- referring to the age thinning, she provided that answer, that it was due to age -- "I think she was trying to be kind."

"Even despite what Dr. Roberie said, you don't even think it's possible that hair thinning is due to age or menopause?" That last part is given for context.

"Yes."

She distinguished in her mind, in the deposition, the difference -- Ms. Kahn did -- between what she described as hair thinning and what she described her own condition as, as hair balding. She said, "I don't have hair

09:35

thinning. I have hair balding. It's two different things."

She was asked, "Well, you said Dr. Roberie thought that hair thinning was a natural part of women's aging, correct?"

"Yes, she did say that, but she didn't explain hair balding. She talked about hair thinning. As I said, those are two different things."

She further testified that she attributed her initial hair loss to Taxotere.

So in this case the fact that Dr. Roberie offered hair thinning is related to age and menopause does not void summary judgment. Rather, just like in the *Durden* case, whatever that diagnosis significance is, it certainly is not singularly attributable, the hair loss, to aging or to menopause. Rather, Durden, in her own mind, discounted that explanation. She attributed her hair loss to Taxotere and/or the combination of chemotherapy agents. Her obligation was to investigate Taxotere specifically as the cause of her injury, and she did not. Rather, she waited six years to file suit, well past the one-year statute of limitation.

I know that it is extraordinarily unusual to be here on multiple motions for reconsideration, Your Honor.

**THE COURT:** It sure is.

**MS. EISENSTEIN:** It certainly is an extraordinary posture, but I think that in this case the procedural history

09:36

does warrant Your Honor's reconsideration of the summary judgment motion because the Fifth Circuit has in the interim provided the succession of rulings that makes clear that Ms. Durden's inquiry did not suffice to toll the prescriptive period.

**THE COURT:** Thank you.

Mr. Lambert.

**MR. LAMBERT:** Yes, Your Honor. Good morning. I'm glad to make it here through the traffic.

**THE COURT:** If you want to take your mask -- for oral argument, it's very difficult.

**MR. LAMBERT:** Sure. May it please the Court. Your Honor, Palmer Lambert on behalf of Ms. Kahn and the PSC.

Your Honor, for the third time Sanofi asks this Court to reconsider its ruling denying summary judgment on liberative prescription. The only new information that Sanofi presents to this Court is the unpublished decision of the Fifth Circuit in *Durden*, which Sanofi itself acknowledges has no precedential value. Indeed, *Durden* does not change this Court's well-reasoned analysis that specifically distinguishes the facts in Ms. Kahn's case for Ms. Durden's.

Application of the liberative prescription rule is to rid a defendant from claims that have become stale, has always involved a fact-intensive analysis, and no two cases are exactly the same in terms of the facts. The Supreme Court has

09:38

said many times, the Louisiana Supreme Court, that prescriptive statutes are to be strictly construed against prescription in favor of the obligation sought to be distinguished.

In federal court cases, the Rule 56 burden on a defendant to show no genuine issue of material fact does not shift to the plaintiff. That is an issue that the Fifth Circuit has declined to address now twice and is inconsistent with opposing counsel's statement that it's her burden to overcome.

Additionally, the Fifth Circuit ruled without the benefit of expert reports. The Court in this case has seen reports and issued *Daubert* opinions in this matter. The Court has seen three dermatologists on Sanofi's side of the "V" agree with Dr. Roberie. Thus a jury could easily find that Ms. Kahn reasonably relied on Dr. Roberie's misdiagnosis, as bolstered by her other physicians' inability to diagnose PCIA or advise her that she sustained an injury as a result of Taxotere. She was even encouraged to take Biotin by a dermatologist, which certainly is not a suggestion of permanency.

In this case there are genuine factual disputes as to whether the company had sufficient knowledge to update its warnings, whether plaintiff can prove general causation, whether Ms. Kahn even has PCIA or permanent hair loss caused by Taxotere as opposed to other potential alternatives, and it's simply illogical that those factual disputes can remain and yet

09:40

this case can be prescribed based on the defendants' analysis.

It's also hard to imagine how Ms. Kahn's case can be stale and untimely as to Sanofi if, according to Sanofi, she never even had the injury that she claims she had. I think the *Sharkey* case does provide persuasive authority even though it's a Louisiana First Circuit case. If defendants were correct, it is likely that all asbestos and benzene cases would be incorrectly determined by the Louisiana Supreme Court because they would be prescribed long before there was ever a diagnosis.

Finally, it's important to judge the reasonableness of Ms. Kahn's action or inaction in light of all the circumstances outlined by the Supreme Court, and those factual issues are relevant to the *contra non valentem* analysis. A company that writes an email internally along the lines of "This is going to be fun submitting a four-year-old label change to the FDA now" is not the kind of good actor that should reap the benefits of calling Ms. Kahn's claims stale, nor should a company that wipes the internet of Facebook references to permanent hair loss and reports those users to the social media entity in an attempt to get them kicked off of the social media platform.

It's also important to note that unlike the Canadian news outlet *Globe and Mail* -- which I had never heard of before this litigation -- and unlike medical journals which

09:41

require subscriptions in order to see the information even if you can understand it, Facebook was the Instagram and Snapchat of the 2008 to 2015 era.

This case is simply not the same as Durden's case, where she heard from a doctor who testified that she understood her hair was not likely coming back. This is different than that. We can't judge Ms. Kahn's actions in a vacuum. We have to consider all of the circumstances of the *contra non valentem* test.

We have to consider that she met with her doctors for multiple years after she took Taxotere, among the multiple chemotherapy agents that she took in her clinical trial. Not once did any doctor over those years suggest that she had a permanent injury caused by Taxotere. It's not simply that she stuck her head in the sand; she made a reasonable inquiry under the circumstances. This Court should agree with itself for the third time in denying reconsideration.

**THE COURT:** Thank you.

**MR. LAMBERT:** Thank you.

**THE COURT:** Ms. Eisenstein.

**MS. EISENSTEIN:** Plaintiffs' arguments to a tee were raised in *Thibodeaux*. They were raised again and rejected in that case. They were raised and rejected in *Durden*. That includes the argument about whether or not there was a diagnosis of PCIA, whether or not --

09:43

**THE COURT:** *Thibodeaux* and *Durden* were my decisions. They affirmed what I already did. I understand that, and I understand what my analysis was for those, actually, four or five cases that now have been dismissed on prescriptive grounds.

**MS. EISENSTEIN:** Absolutely, Your Honor, and the Fifth Circuit did affirm --

**THE COURT:** Uh-huh.

**MS. EISENSTEIN:** -- your decisions. In doing so, it did something else, which was an affirmative decision, but it also clarified the standard because the plaintiffs raised not only the argument they raised before Your Honor, but some of the very arguments, including in the 28(j) letter that was filed before *Durden* was decided, to try to distinguish *Thibodeaux*.

In *Durden* one of the things that changed was they got the *Thibodeaux* decision. They had raised all those same arguments in *Durden*.

They filed the 28(j) letter trying to say: Whoa, whoa, whoa. *Thibodeaux* doesn't control because Ms. Durden received the female pattern baldness diagnosis, because Ms. Durden had done research, because Ms. Durden had grown some of her hair and thought it may come back.

Each and every one of those, the Fifth Circuit walked through in the *Durden* opinion and said: No, that does

09:45

not distinguish this case from *Thibodeaux*. You don't get out from under that.

I think Mr. Lambert said it lacks precedential value. I think I would dispute that. While it is an unpublished, nonprecedential opinion, *Thibodeaux* is certainly a precedential opinion, and *Durden* was the Fifth Circuit application of that opinion. I think that, in clarifying what the *Thibodeaux* standard is, that certainly has precedential value here, if not extreme persuasive value.

The question here is not whether the inquiry was reasonable. That's really not the question. The question is whether the cause of action was knowable in view of reasonable diligence. I think that's one key difference. To highlight that, to hold otherwise would be to say there would be two different standards for the discovery rule based on whether a plaintiff asked a single question or received once information from her doctor that didn't say exclude the possibility of Taxotere, but rather gave a plausible or possible diagnosis.

*Durden* said that's just not enough. The plaintiff has to do more. They need to investigate. In light of the information that was publicly available about Taxotere and the obviousness of the injury, they were obligated to do more and to investigate Taxotere specifically as the cause, and Ms. Durden simply failed to do that. Thank you, Your Honor.

**THE COURT:** I'm going to put my state court hat on

09:46

because we have a trial looming and lots of moving parts at this point and I'm going to render from the bench, which is not something that I frequently do.

In document 12805, I previously outlined the legal standard on interlocutory judgments, and I'm going to adopt that standard for today. Before me is the second motion to reconsider and the third time that I look at Ms. Kahn's case.

I am reminded early on in this litigation Judge Engelhardt, when he was presented with an open prescriptive motion that all of these cases were prescribed, said no. Prescription, under Louisiana law, is a factually intensive basis.

I think there's still factual issues for the jury to consider, and this is what my thought process is. I specifically note that throughout this litigation the defendant has pointed to multiple causes of alopecia. Most are not tort related. Of interest is age-related alopecia. What we hear from countless experts is there are reasons that have nothing to do with improper conduct that cause alopecia in women. That is a plausible cause of alopecia.

Here, the plaintiff sought and investigated a cause for ongoing alopecia and was advised by her gynecologist that she was not the victim of a tort, but rather the aging process, and according to plaintiff she dropped it. Now, did

09:48

she take vitamins? Did she use other products to try to facilitate hair growth? She did that, but she dropped it. Whether or not that was reasonable, to accept the opinion of one physician, I think is for the jury to decide, so the motion is denied.

Now, I really would like to talk to everybody off the record. We are going to have a quick status conference. Maybe we can just go into the jury room. Thank you. Court is adjourned.

**THE DEPUTY CLERK:** All rise.

(Proceedings adjourned.)

* * *

**CERTIFICATE**

I, Toni Doyle Tusa, CCR, FCRR, Official Court Reporter for the United States District Court, Eastern District of Louisiana, certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of proceedings in the above-entitled matter.

*/s/ Toni Doyle Tusa*
Toni Doyle Tusa, CCR, FCRR
Official Court Reporter