```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

*************************************************************
IN RE:  TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

                       Civil Action No. 16-MD-2740
                       Section "H"(5)
                       New Orleans, Louisiana
                       March 8, 2022

THIS DOCUMENT RELATES TO ALL CASES
*************************************************************

        TRANSCRIPT OF MOTION TO PRESERVE EXPERT TESTIMONY
         HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                 UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:

                       MATTHEW PALMER LAMBERT
                       GAINSBURGH BENJAMIN DAVID MEUNIER
                       & WARSHAUER
                       1100 POYDRAS STREET
                       SUITE 2800
                       NEW ORLEANS, LA 70163

                       CHRISTOPHER COFFIN
                       PENDLEY BAUDIN & COFFIN
                       1515 POYDRAS STREET
                       NEW ORLEANS, LA 70112

                       DAVID F. MICELI
                       DAVID F. MICELI, LLC
                       P.O. BOX 2519
                       CARROLLTON, GA 30112

FOR SANOFI S.A.:

                       JON STRONGMAN
                       SHOOK, HARDY & BACON
                       1155 F STREET NW, SUITE 200
                       WASHINGTON, DC  20004

FOR ACTAVIS PHARMA, INC.:

                    MICHAEL J. SUFFERN
                    ULMER & BERNE
                    600 VINE STREET
                    SUITE 2800
                    CINCINNATI, OH 45202

FOR ACCORD HEALTHCARE, INC.:

                    JULIE A. CALLSEN
                    TUCKER ELLIS
                    950 MAIN AVENUE
                    SUITE 1100
                    CLEVELAND, OH 44113

Official Court Reporter:     Nichelle N. Wheeler, RPR, CRR
                         500 Poydras Street, B-275
                         New Orleans, Louisiana 70130
                         (504) 589-7775

    Proceedings recorded by mechanical stenography,
transcript produced via computer.

**1**          <u>P R O C E E D I N G S</u>

10:16:37AM **2**              (Call to order of the court.)

10:16:37AM **3**          THE CASE MANAGER:  MDL No. 16-2740, *In Re:  Taxotere*

10:16:37AM **4**  *Products Liability Litigation*.

10:16:48AM **5**          MR. MICELI:  Thank you.

10:16:48AM **6**          Your Honor, I learned during our little break that

10:16:52AM **7**  they are going to be -- Mr. Strongman and Ms. Callsen are

10:16:56AM **8**  going to be arguing.  I will try to address, if there's

10:17:00AM **9**  anything that I need to address, anything particular to a

10:17:03AM **10** defendant, but I don't think my arguments do, but I may ask

10:17:08AM **11** for a little indulgence on my rebuttal because I did not know

10:17:12AM **12** I was going to be rebutting two arguments.

10:17:12AM **13**          THE COURT:  Okay.

10:17:15AM **14**          MR. MICELI:  But may it please the Court, Your Honor,

10:17:17AM **15** we are here to discuss our motion, PSC's motion, to preserve

10:17:24AM **16** general expert testimony.  And when I began preparing for

10:17:27AM **17** this argument, I went first to the transfer order that

10:17:30AM **18** created this MDL and I looked at the purpose for

10:17:33AM **19** centralization, and it's to eliminate duplicative discovery,

10:17:39AM **20** prevent inconsistent trial rulings on common issues to all

10:17:41AM **21** plaintiffs in the MDL, and to conserve the resources of the

10:17:43AM **22** parties, their counsel, and the judiciary, not just this

10:17:48AM **23** court, but all judiciary.

10:17:52AM **24**          The PSC's proposal accomplishes all three of these

10:17:55AM **25** goals.  We eliminate duplicative -- preserving general

10:18:02AM   1   testimony will preserve and eliminate duplicative expert

10:18:07AM   2   discovery by allowing this court to address once again and

10:18:09AM   3   once and for all the issues of the 702 challenges to our

10:18:12AM   4   general experts, no case-specific experts, only those that

10:18:17AM   5   offer general testimony on, can Docetaxel cause permanent

10:18:27AM   6   chemotherapy-induced alopecia.  It is a discrete scientific

10:18:30AM   7   question.  It's not plaintiff-specific.  It's not time

10:18:33AM   8   sensitive and the experts that testify on general cause and

10:18:35AM   9   the topics that impact upon general cause do not offer

10:18:40AM   10  case-specific opinions.

10:18:41AM   11          I know that we're going to hear about Dr. Bosserman.

10:18:45AM   12  Dr. Bosserman is the one that has sort of a dual role.  She

10:18:50AM   13  talks about generally educating a jury on breast cancer, its

10:18:54AM   14  diagnosis, all of the options, and then she did that

10:18:58AM   15  predictive modeling based upon an individual plaintiff's

10:19:03AM   16  characteristics, the objective information from their

10:19:06AM   17  records.  We are only talking about her general opinions.  We

10:19:10AM   18  would not attempt to preserve and we could not attempt to

10:19:13AM   19  preserve that predictive modeling.  That's an issue that will

10:19:17AM   20  be handled if the litigants decide to do so, if the plaintiff

10:19:22AM   21  litigant decides to do so, in the transferor court, that's an

10:19:26AM   22  issue that can be addressed on remand by the transferor court

10:19:30AM   23  judge.

10:19:30AM   24          And, subsequently, the PSC's general expert reports

10:19:34AM   25  have not --

10:19:34AM   1        THE COURT:  Defendants have argued that some of this

10:19:38AM   2   is time sensitive -- that is, when a defendant -- I mean,

10:19:43AM   3   when a plaintiff received the chemotherapy and what was the

10:19:49AM   4   state at that point.  Does that affect any of this with the

10:19:54AM   5   general causation?

10:19:56AM   6        MR. MICELI:  No, that would go to an expert like

10:19:59AM   7   Dr. Bosserman on the case specific, what were the options

10:20:01AM   8   under the NCCN guidelines or perhaps other clinical trials

10:20:06AM   9   that were available to them.  But whether or not Taxotere,

10:20:11AM  10   Docetaxel can cause permanent chemotherapy-induced alopecia

10:20:15AM  11   is a discrete scientific question that general causation

10:20:20AM  12   answers and it only needs to be answered one time.

10:20:22AM  13        And I think if you look at --

10:20:24AM  14        THE COURT:  And I'm looking -- you want -- you want

10:20:27AM  15   Dr. Madigan, Bosserman, Feigal, Plunkett, and Ross.

10:20:34AM  16        MR. MICELI:  And Ross.

10:20:34AM  17        THE COURT:  Does Ross have anything that is --

10:20:37AM  18        MR. MICELI:  He does not discuss --

10:20:38AM  19        THE COURT:  -- in terms of time?

10:20:40AM  20        MR. MICELI:  No.  What he talks about is the general

10:20:47AM  21   CFR --

10:20:47AM  22        THE COURT:  Right.

10:20:47AM  23        MR. MICELI:  -- regulations that speak to labeling.

10:20:50AM  24   Now, if there -- if they've been amended during the lifetime

10:20:56AM  25   use of Docetaxel, that would be case specific.  And, again,

10:21:02AM 1 that would be an issue that a case-specific expert would have

10:21:06AM 2 to address.  But the actual framework, the rules of the road

10:21:10AM 3 of what these companies have to play by, when they -- when

10:21:12AM 4 they get their approval letter, it says right in that letter

10:21:15AM 5 that they agree to abide by the CFRs that were discussed in

10:21:20AM 6 all of the trials and by our regulatory experts.  Those rules

10:21:24AM 7 are what they are.  It's not case specific.

10:21:28AM 8      Now, if they changed over time, which I've looked and

10:21:31AM 9 I don't believe that they have at all, particularly

10:21:34AM 10 201.57(c)(7), which is what we're dealing with here, is there

10:21:39AM 11 some basis to believe there's a causal relationship between

10:21:44AM 12 Taxotere and permanent chemotherapy-induced hair loss?  That

10:21:48AM 13 has been the same from 2006 until 2015 without change.  So

10:21:56AM 14 based on your fence post, Your Honor, they're exactly the

10:21:58AM 15 same for all these cases that we're going to be looking at.

10:22:00AM 16      And what's important is the body of scientific

10:22:03AM 17 evidence that these experts and that the defendants' experts

10:22:06AM 18 rely upon in offering general cause or general opinions,

10:22:12AM 19 non-case specific opinions, has been essentially fixed since

10:22:15AM 20 the beginning of this MDL.  The two -- the two exceptions to

10:22:21AM 21 are the Freites-Martinez article, but Freites-Martinez

10:22:25AM 22 himself says you can't use his article to demonstrate cause

10:22:29AM 23 or to show event rates.  And then the up-to-date 2020

10:22:32AM 24 revision -- you remember what up to date -- the resource that

10:22:36AM 25 doctors used where it says the Docetaxel can cause permanent

10:22:42AM  1   chemotherapy-induced hair loss.  Those are the two

10:22:45AM  2   exceptions.  Otherwise, it's essentially fixed.

10:22:47AM  3        The PSC's proposal promotes efficiency and

10:22:51AM  4   prevents inconsistent pretrial rulings --

10:22:51AM  5        THE COURT:  Let me ask this question:  Once these

10:22:55AM  6   depositions are done, we take Dr. Madigan's deposition and it

10:23:01AM  7   is presented as it is in trial, the objections to -- any

10:23:05AM  8   objections raised would be dealt with by the transferee

10:23:10AM  9   judge?

10:23:11AM 10        MR. MICELI:  Objections can be dealt with by the

10:23:14AM 11   transferee judge or the -- the receiving court, the remanded

10:23:16AM 12   to court, the remanded to court.  I think we've been

10:23:18AM 13   referring to that as the transferor court.

10:23:21AM 14        THE COURT:  Transferor judge, I'm sorry.

10:23:24AM 15        MR. MICELI:  So the transferor judge can make the

10:23:25AM 16   evidentiary rulings on what evidence comes in during trial,

10:23:30AM 17   but the preserved testimony will certainly be broader than

10:23:33AM 18   what is actually played, because we do want to make sure we

10:23:36AM 19   give everybody the opportunity.  Because, remember, there are

10:23:38AM 20   over 10,000 litigants that have to rely upon the discovery

10:23:43AM 21   we've done and will be relying upon this preserved testimony.

10:23:47AM 22        So what -- what he just heard about the remand

10:23:54AM 23   process that we're going to be entering into in this court,

10:23:57AM 24   we will have potentially 200 US District Court judges

10:24:00AM 25   receiving cases.  If we follow the plan that the defendants

10:24:04AM  1   have stated in their objection, they would have all 200 of

10:24:10AM  2   those judges or judges that handle those 200 cases retread

10:24:15AM  3   the same ground over and over and over again.  And it's

10:24:18AM  4   important to remember that this question is exactly the same;

10:24:23AM  5   does Taxotere, Docetaxel -- can it cause PCIA?  It's the same

10:24:30AM  6   for every case.  This is a perfect ripe issue to be decided

10:24:34AM  7   in this court.  And the efficiencies that can be gained, it's

10:24:39AM  8   hard to challenge those.

10:24:40AM  9       We want to look for the most expeditious and

10:24:45AM  10  efficient way to remand cases for trials in transferor

10:24:51AM  11  courts.  This Court has overseen four different sets of

10:24:55AM  12  briefing, four hearings on *Daubert* motions challenging the

10:24:58AM  13  same experts and we've heard the same arguments time and time

10:25:02AM  14  again.  We don't need to hear them or we don't need to see

10:25:07AM  15  them compounded by 200 this first round and another 200 the

10:25:12AM  16  next round.  This should be decided once and once only.  And

10:25:14AM  17  it conserves resources for the parties, for counsel, and the

10:25:18AM  18  judiciary.

10:25:19AM  19      The defendants never addressed these three-stated

10:25:22AM  20  reasons for consolidation.  Our brief is the only -- our

10:25:24AM  21  memorandum is the only one that addresses the fact that this

10:25:26AM  22  is an identical issue in every case and the most efficient

10:25:30AM  23  way to handle it is here and here only.

10:25:33AM  24      Importantly, the manual on complex litigation

10:25:39AM  25  predicts this.  It endorses the use of videotaped deposition.

10:25:43AM 1  The Manual Section 23.345 is titled Use of Videotaped

10:25:50AM 2  Depositions.  And what it says is, is that when witnesses,

10:25:56AM 3  key decision-makers, or experts are going to testify more

10:26:01AM 4  than once, clearly, they are -- if we're remanding 200 cases,

10:26:08AM 5  videotaped-preserved testimony is appropriate.  And the

10:26:11AM 6  particular portions of our brief which I think can be found

10:26:14AM 7  in our Footnotes 9, 10, and 13, give the specific language

10:26:20AM 8  from the courts in the *Diet Drug* MDL and Judge Rothstein in

10:26:26AM 9  the *PPA* MDL.  That is Document 12729 and I think it's the --

10:26:32AM 10 again, Footnotes 9, 10, and 13.  In addition to 23.345,

10:26:37AM 11 Section 11.64 of the Manual on Complex Litigation, it

10:26:42AM 12 addresses procedures to expedite the presentation of evidence

10:26:50AM 13 in remanded case.

10:26:51AM 14      Now, I mentioned *PPA* a couple of times and I think

10:26:53AM 15 that particular MDL is particularly instructive in this case

10:26:57AM 16 because it had multiple defendants, much more than we see in

10:27:00AM 17 this case.  And in that, in the process that Judge Rothstein

10:27:06AM 18 set up, she successfully resolved the MDL, trials went

10:27:11AM 19 forward in both state and federal courts.  I was fortunate

10:27:15AM 20 enough to try two of those trials in state courts, resolved

10:27:19AM 21 short of jury verdict, but we used the preserved testimony of

10:27:24AM 22 experts.

10:27:24AM 23      Every defendant -- one of the arguments, I believe,

10:27:27AM 24 we may hear because it was in their briefing is that the 505

10:27:30AM 25 -- there are some 505(b)(2) defendants that have been unable

10:27:35AM  1   to depose our experts.  In the *PPA* MDL, every defendant did

10:27:39AM  2   not have the opportunity to depose every general cause or

10:27:44AM  3   general expert that the PSC produced for preservation

10:27:49AM  4   depositions.  And, you know, we have 150 or more plaintiffs'

10:27:54AM  5   firms involved in this MDL, that have cases in this MDL, that

10:27:59AM  6   are required to rely upon the discovery that has been done by

10:28:03AM  7   a few, the PSC.  And we have to cooperate.

10:28:08AM  8          And what Judge Rothstein's order demonstrates is that

10:28:14AM  9   the defendants have to cooperate with each other.  They have

10:28:17AM  10  to choose who is going to do which depositions, who is going

10:28:21AM  11  to cross which witness.  The process requires that

10:28:24AM  12  cooperation, but the process worked.  That was an MDL that

10:28:28AM  13  successfully resolved.  And in Judge Rothstein's words in her

10:28:32AM  14  Drake Law Review article, "The court should be informed by

10:28:35AM  15  the optimal use of resources.  Limiting repetitive

10:28:41AM  16  depositions of significant decision makers, defendants, and

10:28:44AM  17  experts promotes efficiency as does using videotaped

10:28:48AM  18  depositions of witnesses likely to testify more than once."

10:28:54AM  19         Now, the defendants' opposition fails to address

10:28:58AM  20  several critical issues.  They never address the manual on

10:29:02AM  21  complex litigation.  They do not address the three-stated

10:29:06AM  22  reasons for consolidation, the efficiencies, lack of

10:29:11AM  23  duplication, preventing inconsistent rulings, and saving and

10:29:21AM  24  conserving resources.  Instead, they would have 200 per wave

10:29:24AM  25  of courts retread the same ground over and over and over

10:29:29AM 1    again.  And in their argument, they attempt to blur the line

10:29:32AM 2    between general and specific opinions.  And I think there are

10:29:38AM 3    two real primary examples that this court can look to, to

10:29:44AM 4    demonstrate why this shouldn't work.  First is, when we were

10:29:49AM 5    last before the Court on a *Daubert* hearing, in Trial 5, which

10:29:54AM 6    was the Hospira group of cases, *Plaisance* and *Guilbault*, and

10:29:56AM 7    our opposition to defendants' motion to exclude Ellen Feigal,

10:30:05AM 8    we cited seven locations in her deposition where she

10:30:08AM 9    repeatedly said, "I don't know how else I can say it.  I am

10:30:12AM 10   not offering any patient-specific opinions."  Similarly, they

10:30:17AM 11   asked Dr. Madigan, a statistician, if he ever examined the

10:30:23AM 12   patient.  Clearly, a statistician is not going to examine a

10:30:27AM 13   patient.

10:30:27AM 14        And the other would be the trial *Kahn* itself, where

10:30:29AM 15   we objected and Your Honor sustained repeated objections on

10:30:33AM 16   outside the scope when they would attempt to address

10:30:36AM 17   case-specific issues, when Sanofi's counsel would attempt to

10:30:40AM 18   address case-specific issues with general cause experts who

10:30:45AM 19   never even looked at the plaintiff's medical records, never

10:30:48AM 20   looked at the plaintiff, never met with the plaintiff.  Those

10:30:51AM 21   are important.

10:30:54AM 22        In individual cases, the plaintiffs will have to

10:30:57AM 23   decide whether or not, plaintiffs and their counsel, will

10:31:00AM 24   have to decide whether or not to use Dr. Bosserman's or

10:31:05AM 25   somebody using a similar line of testimony concerning

10:31:09AM  1    predictive modeling and we cannot preserve individual

10:31:14AM  2    predictive modeling.

10:31:14AM  3            THE COURT:  Right.  Right.  Right.

10:31:15AM  4            MR. MICELI:  But the fact that predictive modeling is

10:31:18AM  5    available and used by oncologists informing their decisions

10:31:25AM  6    was admitted to by Dr. Glaspy.  And we can preserve testimony

10:31:31AM  7    for -- of Dr. Bosserman's and still individual litigants can

10:31:37AM  8    call on oncologists at trial.  This is a bright line test.

10:31:42AM  9            There are general and there are specific experts and

10:31:46AM  10   there's no reason why a single discrete issue should be

10:31:51AM  11   relitigated hundreds, if not thousands, of times in a

10:31:56AM  12   litigation like this.  We should decide it once and once and

10:31:59AM  13   for all here.  Thank you.

10:32:02AM  14           THE COURT:  Thank you.

10:32:04AM  15           Mr. Strongman?

10:32:06AM  16           MR. LAMBERT:  Judge --

10:32:06AM  17           THE COURT:  Yes, sir --

10:32:06AM  18           MR. LAMBERT:  -- can I interrupt just for a second?

10:32:08AM  19           For the folks on the phone, we're going to start the

10:32:12AM  20   general status conference in a few minutes.  We're finishing

10:32:18AM  21   up our motion right now that the PSC has filed concerning

10:32:21AM  22   expert testimony.

10:32:21AM  23           THE COURT:  Thank you.  Mr. Strongman?

10:32:21AM  24           MR. STRONGMAN:  Good morning.  Thank you.  Jon

10:32:23AM  25   Strongman on behalf of Sanofi.

| | |
|---|---|
| 10:32:24AM | 1 |

         And, Your Honor, I will address Sanofi's part and I
think Ms. Callsen has some things specific to the 505s.

         Now, one thing that I think is really important in
addressing this issue is to pull apart what I think are two
entirely separate things that the plaintiffs have balled
together and conflated here.  One is, can there be a process
where we have general reports, depositions, and *Daubert*
rulings by this court in an efficient manner that then can go
back to the remand courts?  Of course, there can be.  That's
a separate issue entirely from trial testimony on video.

         And what the plaintiffs are asking for here is not
just a process to get consistency among *Daubert* rulings.
What they're asking for is to forever put their witnesses on
video for trial.  And the request is inconsistent with both
the Rules of Evidence and 1407.  The plaintiffs want you to
just throw out the rules on unavailability as it relates to
whether a deposition can be played and they want to say that,
even though all these cases should be remanded and even
though the remand courts can handle everything, they
shouldn't have to handle whether or not a witness is
unavailable and whether or not it's appropriate for this
video of an expert to be played.

         THE COURT:  But are they saying that you have to -- I
guess part of me wonders, are you saying if -- that they have
to -- I don't think Mr. Miceli is saying that they have to

10:34:06AM  1   use video testimony.  If, indeed, there is a case being tried

10:34:12AM  2   in New York and Dr. Madigan -- or perhaps he would come live,

10:34:18AM  3   but isn't it efficient, an efficient use of resources, to can

10:34:23AM  4   this testimony so that the 200 cases that are being remanded

10:34:27AM  5   are not fighting for dates that Dr. Madigan and Dr. Bosserman

10:34:31AM  6   are going to be available?

10:34:34AM  7        MR. STRONGMAN:  Let me address a couple things on

10:34:36AM  8   that.  If the plaintiff stood up and said we will never see

10:34:39AM  9   Dr. Madigan, Dr. Bosserman, Dr. Plunkett, Dr. Ross, Dr.

10:34:41AM 10   Feigal live again in trial, that would be one thing to

10:34:47AM 11   consider, but they're not.  They want to pick and choose

10:34:50AM 12   where they use video and where they do not.  It's not an

10:34:54AM 13   availability issue.  It's a strategic issue.

10:34:58AM 14        So you have a case where the plaintiffs look at it

10:35:00AM 15   and say, this case does not have much value.  I'm not going

10:35:04AM 16   to pay an expert to show up.  So I made it easy to have that

10:35:09AM 17   case go forward.  This one I like more.  I'm going to have my

10:35:12AM 18   witness come live.  That's just purely a strategic thing that

10:35:16AM 19   they want to set up that we have no control over and that is

10:35:20AM 20   inconsistent with the rules of evidence.

10:35:22AM 21        And with regard to the cross-examination being

10:35:24AM 22   efficient, I think one thing that's really important from a

10:35:29AM 23   defendant's perspective is that these are, as Mr. Miceli

10:35:34AM 24   calls, general issues.  However, every cross-examination in

10:35:39AM 25   every trial is tailored to the case that the jury is

10:35:44AM  1    deciding.  So what regimen did the plaintiff receive?

10:35:49AM  2    There's a wide range.

10:35:50AM  3            THE COURT:  Well, certainly not for Dr. Madigan.

10:35:53AM  4            MR. STRONGMAN:  Dr. Madigan, for example, it's

10:35:58AM  5    relevant all the way down to the month that the plaintiff

10:36:00AM  6    received her infusion with regard to how you cross-examine

10:36:06AM  7    Dr. Madigan.  So Dr. Madigan has this FARES analysis.  He

10:36:11AM  8    goes through it.  When did I see signals?  When did I not?

10:36:14AM  9    He does that month by month.  And so it would simply be

10:36:18AM  10   inefficient to try in any way to put on video of

10:36:23AM  11   cross-examination of Dr. Madigan that could possibly fit for

10:36:27AM  12   every single plaintiff.  And it's unfair to the defendants to

10:36:31AM  13   do that.  You not only have their dates of prescription, you

10:36:35AM  14   have the regimens that also are at issue.  You also have

10:36:40AM  15   other factors such as did the plaintiff receive hormone

10:36:47AM  16   therapy or not.

10:36:48AM  17           Now, these kinds of things go into how you're going

10:36:51AM  18   to cross-examine this witness and you simply cannot cover all

10:36:56AM  19   those parameters and all those circumstances in a seven-hour

10:36:58AM  20   video deposition that would be fair to a defendant.  I think

10:37:02AM  21   every defendant has the right to decide how they're going to

10:37:05AM  22   cross-examine a witness based on how that particular case is

10:37:10AM  23   presented.  And this process would eliminate that ability for

10:37:15AM  24   all of the defendants.

10:37:17AM  25           A couple other points I want to make, I think this

10:37:27AM  1  court has experience with these witnesses and I think that it

10:37:33AM  2  is fair to say that putting these witnesses in a video, there

10:37:39AM  3  is absolutely no ability to control them as the questioner

10:37:44AM  4  without a judge.  They're not going to answer questions

10:37:48AM  5  because they won't hardly answer questions as it is.  So

10:37:52AM  6  you're going to be left with a situation where you're going

10:37:55AM  7  to put in a remand judge's hands a transcript of

10:38:00AM  8  nonresponsive witnesses who will feel free in a trial

10:38:05AM  9  deposition setting to not answer questions.  And how are they

10:38:10AM  10  going to parse through that video in any kind of way to make

10:38:15AM  11  that useable, to make it efficient?  They're not.  It's going

10:38:18AM  12  to be a mess to put that kind of video together, not just on

10:38:26AM  13  the specifics of the case, but with these specific witnesses.

10:38:30AM  14  They need to testify live in front of a judge in my opinion

10:38:34AM  15  for this to be a fair and efficient process.

10:38:37AM  16          And the bottom line is, with 1407, you know, Mr.

10:38:45AM  17  Miceli cited the transfer order to begin with.  1407 puts

10:38:50AM  18  pretrial proceedings within the bucket of this court.  It

10:38:55AM  19  doesn't put creating trial testimony for every case in that

10:38:59AM  20  bucket.  And so a much more appropriate mechanism would be to

10:39:06AM  21  go through a process where general *Daubert* rulings are issued

10:39:11AM  22  that are applicable, but it's the remand judge's decision in

10:39:17AM  23  terms of whether an actual trial preservation deposition is

10:39:20AM  24  needed.  And that's how it's worked in other cases that I've

10:39:24AM  25  certainly been a part of.  Big MDL cases.  Is the witness

10:39:27AM 1    unavailable or are they not?  If that witness is unavailable,

10:39:31AM 2    then it's appropriate to do a trial preservation deposition

10:39:34AM 3    at that time for circumstances that merit it.

10:39:39AM 4         But in the abstract, it's simply not fair to ask

10:39:41AM 5    defendants to put together a cross-examination that can be

10:39:45AM 6    used for all times based on some general concept not tied to

10:39:51AM 7    any particular facts and putting us in a box where we have to

10:39:55AM 8    cross-examine that witness on any possible permutation of the

10:39:59AM 9    facts.  In the end, it will be inefficient and not efficient.

10:40:04AM 10        So for those reasons, we would simply ask -- we're

10:40:07AM 11   open to a process to put together expert reports, expert

10:40:15AM 12   rulings, but not trial testimony.  Thank you.

10:40:18AM 13        THE COURT:  Thank you.

10:40:19AM 14        Ms. Callsen?

10:40:26AM 15        MS. CALLSEN:  Yes.  Thank you.  And I'm speaking on

10:40:29AM 16   behalf of Accord, Sandoz, and Hospira who have worked up

10:40:36AM 17   trial cases and done experts.  I believe Mr. Sufferen is

10:40:38AM 18   going to address really briefly the plaintiff -- defendants

10:40:41AM 19   who haven't even done any discovery, so...

10:40:43AM 20        To just start with one analogy that Mr. Miceli

10:40:47AM 21   brought up, the rules of the road in this litigation are

10:40:50AM 22   different from the 505(b)(2)s.  In order to help prepare, I

10:40:57AM 23   looked at the *Daubert* rulings that the judge has issued.

10:41:00AM 24   Again, this court has not yet issued any *Daubert* rulings in

10:41:05AM 25   any of the 505(b)(2) cases for Sandoz, Hospira in a court.

10:41:08AM 1   The court starts out the same rationale, looks under

10:41:12AM 2   702, does this expert have knowledge to render these

10:41:16AM 3   opinions?  Are these opinions based on sufficient facts or

10:41:19AM 4   methodology or -- or data?  Is there a -- valid principles

10:41:21AM 5   and methodology behind these opinions?  And then is there a

10:41:24AM 6   reliable application of these principles or these

10:41:28AM 7   methodologies to the facts of the case?

10:41:29AM 8   The facts of the case are different with the

10:41:32AM 9   505(b)(2)s.  They pursue a different regulatory pathway.

10:41:37AM 10  They don't have access --

10:41:37AM 11        THE COURT:  And that would --

10:41:38AM 12        MS. CALLSEN:  -- to the same --

10:41:38AM 13        THE COURT:  And that would --

10:41:39AM 14        MS. CALLSEN:  -- information.

10:41:40AM 15        THE COURT:  And that would be -- I could see, you

10:41:43AM 16  know, in terms of Dr. Ross that's a completely different --

10:41:47AM 17  but there are other witnesses that just speak to whether or

10:41:53AM 18  not Docetaxel can cause permanent chemotherapy-induced

10:41:58AM 19  alopecia.

10:41:58AM 20        MS. CALLSEN:  But they use data and facts that were

10:42:02AM 21  not available to the 505(b)(2) witnesses, so how can those be

10:42:07AM 22  applied in a reliable manner against the 505(b)(2)

10:42:10AM 23  defendants.  That just hasn't yet been tested.  All of this

10:42:13AM 24  was laid out in our briefing and it's not yet been ruled on.

10:42:16AM 25  So to then take those experts, put them in a can and send us

10:42:19AM  1   to transferor courts where we haven't even been able -- I

10:42:23AM  2   mean, aside from the due process, it's just -- it's not

10:42:26AM  3   reliable or relevant.  I mean, I don't even know how a judge

10:42:30AM  4   could admit the evidence that they're relying on.  You know,

10:42:34AM  5   I agree that that would be a transferor court on

10:42:37AM  6   admissibility, but still, that's what their case is based on.

10:42:41AM  7   That's what their opinions are based on.  So it simply has

10:42:44AM  8   not yet been tested as to the 505(b)(2).  So that's why it's

10:42:50AM  9   specifically -- you know, we specifically oppose it on behalf

10:42:54AM  10  of these defendants.

10:42:56AM  11          THE COURT:  Okay.  Thank you.  I didn't know there

10:43:06AM  12  was somebody else that was arguing.

10:43:07AM  13          MR. SUFFEREN:  Just two sentences.

10:43:09AM  14          THE COURT:  You got two -- I'll give you three.

10:43:10AM  15          MR. SUFFEREN:  Thank you.  Michael Sufferen.  I

10:43:11AM  16  represent the Actavis defendants and Sagent Pharmaceutical.

10:43:15AM  17          I just want to point out that Actavis, Sagent, and

10:43:17AM  18  co-defendant Sun are even one step farther removed from the

10:43:21AM  19  remaining 505(b)(2) defendants.  Because we have not had any

10:43:26AM  20  cases that were part of the trial pool, we have not had a

10:43:30AM  21  single Rule 26 report served in a single case against us.

10:43:35AM  22          And, you know, one of the fundamental purposes of the

10:43:38AM  23  Federal Rules of Civil Procedure is to avoid trial by ambush

10:43:42AM  24  and we view this as a proposal that is requiring us to accept

10:43:46AM  25  trial testimony in cases where we've never had an opportunity

| | | |
|---|---|---|
| 10:43:50AM | 1 | to conduct a single deposition.  And I just wanted to point |
| 10:43:53AM | 2 | out that distinction on behalf of those three defendants, |
| 10:43:55AM | 3 | Your Honor.  Thank you. |
| 10:43:56AM | 4 | THE COURT:  Thank you. |
| 10:43:56AM | 5 | Mr. Miceli? |
| 10:43:58AM | 6 | MR. MICELI:  Very briefly, Your Honor.  I listened |
| 10:44:03AM | 7 | carefully to all three of defense counsel make their |
| 10:44:07AM | 8 | arguments and I still have not heard a defendant address the |
| 10:44:10AM | 9 | Manual on Complex Litigation.  Your Honor hit the nail on the |
| 10:44:16AM | 10 | head when you asked the question, the question is, can it |
| 10:44:21AM | 11 | cause permanent chemotherapy-induced alopecia?  Can |
| 10:44:26AM | 12 | Docetaxel, can or can it not, cause this?  It has nothing to |
| 10:44:31AM | 13 | do when a plaintiff used the drug, has nothing to do when |
| 10:44:35AM | 14 | they entered the market.  So we're not picking and choosing |
| 10:44:39AM | 15 | either when we use testimony.  We are simply preserving |
| 10:44:43AM | 16 | expert testimony as it was done in the *PPA* MDL, in the |
| 10:44:49AM | 17 | *Rezulin* MDL, in the *Diet Drug* MDL, so that -- so that |
| 10:44:53AM | 18 | litigants will have the opportunity to use expert -- general |
| 10:44:58AM | 19 | cause expert testimony or general expert testimony in trials. |
| 10:45:02AM | 20 | If we send back 200 cases within a 90-day period of each |
| 10:45:08AM | 21 | other -- excuse me -- of each other and we have courts across |
| 10:45:12AM | 22 | the country handling 200 cases assuming -- and I think it's a |
| 10:45:17AM | 23 | reasonable assumption -- they move at a relatively similar |
| 10:45:21AM | 24 | timeline, you're going to have the problem, exactly what Your |
| 10:45:26AM | 25 | Honor pointed out. |

| | | |
|---|---|---|
| 10:45:26AM | 1 | THE COURT:  Let me ask this question, Mr. Miceli: |
| 10:45:29AM | 2 | This is something that Mr. Strongman said and he said, you |
| 10:45:37AM | 3 | know, what do we do with witnesses that refuse to answer, |
| 10:45:41AM | 4 | some of these experts?  And to be clear, Dr. Plunkett's |
| 10:45:46AM | 5 | testimony -- was it Plunkett, yes -- completely turned on its |
| 10:45:51AM | 6 | head in trial, the last trial, from what her report was.  And |
| 10:45:56AM | 7 | so how does -- you know, it's one thing that you handle that |
| 10:46:00AM | 8 | in the courtroom and even that was difficult. |
| 10:46:04AM | 9 | MR. MICELI:  Your Honor -- |
| 10:46:05AM | 10 | THE COURT:  What do we do in depositions?  And, |
| 10:46:08AM | 11 | normally -- you know, I've practiced.  I've seen it.  You |
| 10:46:12AM | 12 | know, you've all done this where you take the treating |
| 10:46:14AM | 13 | physician's deposition ahead of time and it comes across as |
| 10:46:19AM | 14 | he's sitting in the stand because it's taken in that manner. |
| 10:46:22AM | 15 | So I am not opposed to trial depositions being taken early |
| 10:46:29AM | 16 | for preservation, for the convenience of everybody, and |
| 10:46:34AM | 17 | conservation of resources for everyone.  But -- |
| 10:46:40AM | 18 | MR. MICELI:  How do we handle that?  If the question |
| 10:46:42AM | 19 | is, how do we handle it, I think what we can do, Your Honor, |
| 10:46:46AM | 20 | we have done this with depositions with Judge North where we |
| 10:46:49AM | 21 | immediately contact him if there's an issue, or if we believe |
| 10:46:53AM | 22 | that it's going to be that strong of an issue, we do the |
| 10:46:55AM | 23 | depositions here in New Orleans and we can come to this |
| 10:46:58AM | 24 | courthouse. |
| 10:46:58AM | 25 | THE COURT:  And I sit in on the deposition -- |

10:46:58AM **1**   MR. MICELI:  No.

10:47:01AM **2**   THE COURT:  -- and issue rulings that -- that another

10:47:03AM **3**   judge can --

10:47:03AM **4**   MR. MICELI:  No, Your Honor --

10:47:04AM **5**   THE COURT:  -- evidentiary rules --

10:47:05AM **6**   MR. MICELI:  -- I wouldn't suggest that because your

10:47:07AM **7**   time is too valuable to sit through all these depositions.

10:47:11AM **8**   If you wish to do that, we would welcome it.  But if we

10:47:15AM **9**   needed the court's intervention, we would be steps away.  But

10:47:20AM **10**   it's important, I think, more to consider the efficiencies of

10:47:24AM **11**   the case, and sending back 200 to various district courts

10:47:31AM **12**   around the country, that it is predictable that you are going

10:47:34AM **13**   to have conflicting dates and --

10:47:36AM **14**   THE COURT:  Yeah, I agree with you.

10:47:38AM **15**   MR. MICELI:  There are procedures we could create or

10:47:41AM **16**   Your Honor could create to ensure -- to ensure that if we

10:47:46AM **17**   need court intervention we can get it and we can get it

10:47:49AM **18**   quickly, if that means being here in New Orleans or if that

10:47:51AM **19**   means being on a Zoom to conference with the Court.  That's

10:47:59AM **20**   one.

10:48:00AM **21**   Again, for the 505(b)(2)s, the question is the same.

10:48:05AM **22**   It doesn't matter if it's a Sanofi, Taxotere product or a

10:48:09AM **23**   505(b)(2) Docetaxel product.  It is what it is.  The question

10:48:14AM **24**   is, can it cause it?

10:48:15AM **25**   Concerning whether or not the process is appropriate

10:48:20AM  1   to put, as you said, I think you used the words "testimony in

10:48:24AM  2   a can" to be played at future trials, Xarelto CMO 8 is a

10:48:32AM  3   great example.  The answer is, yes, you can do that.  *PPA*,

10:48:36AM  4   *Diet Drug*, *Rezulin*, I think *Propulsin*, but I try to forget

10:48:44AM  5   *Propulsin*.

10:48:45AM  6        So one more item, with regard to the argument of

10:48:50AM  7   Mr. Sufferen and the 505(b)(2)s that have not been subject to

10:48:56AM  8   trial settings and having the opportunity to cross our

10:49:00AM  9   experts, again, we point out the example from *PPA* that

10:49:06AM 10   preservation depositions are done all the time and not every

10:49:09AM 11   single attorney in this room or somebody who represents their

10:49:12AM 12   client gets to do the cross-examination, but it's even more

10:49:16AM 13   important to point out here that Sanofi, Accord, Hospira, and

10:49:24AM 14   Sandoz make up 99 percent of the identified-use cases.  So

10:49:28AM 15   we're talking about less -- one percent or less.  Even if we

10:49:32AM 16   triple it, we're talking about three percent.  We're not

10:49:35AM 17   talking about the tail wagging the dog.  We're talking about

10:49:39AM 18   a flea wagging an elephant here.  The defendants need to

10:49:42AM 19   learn how to cooperate with each other, pick their team of

10:49:46AM 20   people who will cross-examine these witnesses, and let's move

10:49:49AM 21   forward with preserving the testimony.  Thank you.

10:49:51AM 22        THE COURT:  Thank you.

           23                       * * * *

           24        (WHEREUPON, the proceedings were adjourned.)

           25                       * * * *

1                        REPORTER'S CERTIFICATE

2              I, Nichelle N. Wheeler, RMR, CRR, Official Court
    Reporter, United States District Court, Eastern District of
3   Louisiana, do hereby certify that the foregoing is a true and
    correct transcript, to the best of my ability and
4   understanding, from the record of the proceedings in the
    above-entitled and numbered matter.

5

6                         ___/s/ Nichelle N. Wheeler___
                          Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25