```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA

   ****************************************************************
   IN RE:  TAXOTERE (DOCETAXEL)
   PRODUCTS LIABILITY LITIGATION

                           Civil Action No. 16-MD-2740
                           Section "H"(5)
                           New Orleans, Louisiana
                           March 8, 2022

   THIS DOCUMENT RELATES TO ALL CASES
   ****************************************************************

                  TRANSCRIPT OF SHOW CAUSE HEARING
             HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                    UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

FOR THE PLAINTIFFS:

```
                        CLAIRE E. KREIDER
                        GAINSBURGH BENJAMIN DAVID MEUNIER
                        & WARSHAUER
                        1100 POYDRAS STREET
                        SUITE 2800
                        NEW ORLEANS, LA 70163
```

FOR SANOFI S.A.:      JORDAN BAEHR
```
                      SHOOK HARDY & BACON
                      2555 GRAND BOULEVARD
                      KANSAS CITY, MS 64108
```

FOR 505(b)(2) DEFENDANTS:

```
                        JULIE CALLSEN
                        TUCKER ELLIS
                        950 MAIN AVENUE
                        SUITE 1100
                        CLEVELAND, OH 44113
```

FOR SANDOZ, A NOVARTIS DIVISION:

```
                        NICHOLAS INSOGNA
                        GREENBERG TRAURIG
                        3333 PIEDMONT ROAD NE
                        SUITE 2500
                        ATLANTA, GA 30305

PARTICIPATING VIA PHONE:

                        Richard Wilson
                        Erin Wood
                        Melanie Sulkin
                        David Bonnin
                        Jeff McGuire
                        Hunter Bryson
                        Javier Ortiz
                        Jennifer Domer
                        Stephanie Rados
                        Andrea Barient
                        Ben Black
                        Karen Menzies
                        Javad Tahbazsalehi
                        Steven Davis
                        Sam Wendt
                        Jennifer Nolte
                        Aaron Novasic
                        Dawn Schneithorst
                        Peter Goss
                        Robin Myers
                        Erik Fritz
                        Brannon Robertson
                        Alexandra Colella
                        Bria Hanlon
                        Eric Newell
                        Lowell Finson
                        Nate Buttars
                        Celine Cutter




Official Court Reporter:      Nichelle N. Wheeler, RMR, CRR
                              500 Poydras Street, B-275
                              New Orleans, Louisiana 70130
                              (504) 589-7775


     Proceedings recorded by mechanical stenography,
transcript produced via computer.
```

**1**              **P R O C E E D I N G S**

**2**                    (Call to order of the court.)

01:31:21PM  **3**          THE CASE MANAGER:  MDL 2740, Taxotere Products

01:31:25PM  **4**   Liability Litigation.  Counsel, can you please make your

01:31:28PM  **5**   appearance for the record.

01:31:29PM  **6**          MR. BAEHR:  Jordan Baehr for Sanofi.

01:31:33PM  **7**          MS. CALLSEN:  Julie Callsen on behalf of the

01:31:35PM  **8**   505(b)(2) defendants.

01:31:41PM  **9**          MS. KREIDER:  Claire Kreider for plaintiff's liaison

01:31:41PM  **10**  counsel.  I did want to note that I did change to my married

01:31:45PM  **11**  name, which is now Kreider.

01:31:45PM  **12**         THE COURT:  Crowder?

01:31:46PM  **13**         MS. KREIDER:  Kreider.

01:31:46PM  **14**         THE COURT:  Kreider.

01:31:48PM  **15**         MS. KREIDER:  K-r-e-i-d-e-r.

01:31:51PM  **16**         THE COURT:  Thank you.  I thought when you said that,

01:31:53PM  **17**  I went --

01:31:55PM  **18**         MS. KREIDER:  Yes.

01:31:56PM  **19**         THE COURT:  -- I thought she was Berg.

01:32:00PM  **20**         All right.  Are we ready to proceed?

01:32:01PM  **21**         MS. CALLSEN:  There are two people, Dawn Barrios is

01:32:05PM  **22**  on the Zoom and Nick Insogna is also on the Zoom.

01:32:12PM  **23**         MR. MCGUIRE:  Your Honor, Jeff McGuire for Ann Coast.

01:32:18PM  **24**         MS. CALLSEN:  I meant for defense counsel.  Well, I

01:32:21PM  **25**  meant for general counsel.  There's lots of other people that

01:32:24PM  1   are on there.  Sorry.

01:32:26PM  2          THE COURT:  That are going to be presenting.

01:32:27PM  3          Well, congratulations, Ms. Kreider.

01:32:29PM  4          MS. KREIDER:  Thank you.

01:32:30PM  5          THE COURT:  Okay.

01:32:32PM  6          MS. CALLSEN:  Your Honor, we were going to start with

01:32:35PM  7   the statement of no defense and stipulation of dismissal

01:32:38PM  8   list, which have been provided.  There are four cases,

01:32:41PM  9   statement of no defense.  And I believe those have been

01:32:47PM  10  provided to the court reporter and the court.

01:32:47PM  11         THE COURT:  Yes.

01:32:49PM  12         MS. CALLSEN:  Do you want me to read those into the

01:32:51PM  13  record?

01:32:52PM  14         THE COURT:  Very quickly.

01:32:53PM  15         MS. CALLSEN:  Okay.  The first one is Marla Bell,

01:32:56PM  16  Docket No. 2:18-CV-03138 and that's dismissed with prejudice.

01:32:56PM  17  Whoops, that's your job.

01:32:56PM  18         THE COURT:  Yeah.

01:33:07PM  19         MS. CALLSEN:  Carol Blanchard, 2:18-CV-10094;

01:33:14PM  20  Evangeline Johnson, 2:18-CV-05134; Margaret Shaw,

01:33:26PM  21  2:21-CV-00964.

01:33:27PM  22         THE COURT:  Okay.  Based upon statement of no defense

01:33:31PM  23  by counsel, these cases are dismissed with prejudice.

01:33:36PM  24         MS. CALLSEN:  And there are three plaintiffs who

01:33:38PM  25  dismissed their case, filed stipulations of dismissal.  The

01:33:41PM  1    first one is Joan Demarzino, 2:17-CV-16597, Linda Hagan,

01:33:50PM  2    2:18-CV-12908, and Barbara Harris, 2:17-CV-14131.

01:33:58PM  3          THE COURT:  These cases are dismissed with prejudice.

01:34:05PM  4          Your Honor, I'm going to read the declaration of no

01:34:15PM  5    contact list.  The first case is Sheila Bryant, Case No.

01:34:16PM  6    2:18-CV-00895; Iris Neitzel, Case 2:21-CV-01110; Patricia

01:34:32PM  7    Vaughn, 2:17-CV-17276; Sandra Colvin, 19-CV-14451, Deketa

01:34:44PM  8    Williams, 17-CV-15832, Cassondra Durham, 17-CV-14277.  And

01:34:53PM  9    then there's an additional case that filed a declaration of

01:34:58PM 10    no contact that is not on the show cause hearing list today,

01:35:02PM 11    but that case can be dismissed.  It is Donna Elliott,

01:35:09PM 12    17-10312.

01:35:10PM 13          THE COURT:  Okay.  These cases are dismissed with

01:35:12PM 14    prejudice.  Counsel has advised that their client, these

01:35:15PM 15    plaintiffs, have failed to maintain contact with their

01:35:19PM 16    obligations and accordingly have not complied with the

01:35:23PM 17    obligations to communicate despite counsel's best efforts.

01:35:29PM 18          MS. KREIDER:  And, Your Honor, before we move on to

01:35:31PM 19    the noncompliance list, I have four cases on what we're

01:35:35PM 20    calling the late cure list that believe they have cured the

01:35:41PM 21    deficiencies, but it was past the cure deadline.  I want to

01:35:45PM 22    go ahead and read those out so we can push them back to the

01:35:47PM 23    end of the list.  We think we're going to put them before the

01:35:54PM 24    Bachus & Schanker firm because they also had some late cures

01:35:58PM 25    but they're already last on the list.

```
01:36:00PM   1              THE COURT:  Can we just -- as we get to it, just move
01:36:03PM   2    it?  Or is it a substantial number?
01:36:10PM   3              MS. KREIDER:  It's just four.
01:36:11PM   4              THE COURT:  Okay.  Let's just do it.  Okay.  Go
01:36:11PM   5    ahead.
01:36:13PM   6              MS. KREIDER:  Okay.  Judy Williams.
01:36:15PM   7              THE COURT:  Which number is that on the list?
01:36:17PM   8              MS. KREIDER:  Number 1.
01:36:18PM   9              THE COURT:  Okay.  Thank you.
01:36:20PM  10              MS. KREIDER:  Michelle Carlisle is No. 2 on the list.
01:36:23PM  11              THE COURT:  Okay.
01:36:31PM  12              MS. KREIDER:  Era Lee Caldwell is No. 30 on the list
01:36:33PM  13    and Deborah Luten-Beasley is No. 31 on your list.
01:36:38PM  14              THE COURT:  Okay.  Thank you.
01:36:43PM  15              All right.  We ready to proceed?
01:36:46PM  16              MR. BAEHR:  Yes, Your Honor.
01:36:48PM  17              THE COURT:  Okay.  We should start with No. 3, Diane
01:36:54PM  18    Brooks, Mr. Baehr.
01:36:54PM  19              MR. BAEHR:  Yes, Your Honor.  This is a rollover from
01:36:56PM  20    the December and it's a case where they have failed to
01:36:56PM  21    provide information, full information, for a second cancer
01:37:02PM  22    diagnosis.  So we're just asking for a completed amended PFS,
01:37:04PM  23    and we think 14 days would be appropriate.
01:37:06PM  24              THE COURT:  All right.  And that is --
01:37:11PM  25              MS. KREIDER:  Ms. Kreider.
```

01:37:12PM  1           THE COURT:  Ms. Kreider.

01:37:13PM  2           MS. KREIDER:  Your Honor, this was discussed at the

01:37:15PM  3   last show cause hearing.  We submitted an amended Plaintiff

01:37:21PM  4   Fact Sheet with the second cancer diagnosis, the uterine

01:37:27PM  5   cancer in the facility where she passed away.  I don't have

01:37:30PM  6   records with more information, but if the court requires me

01:37:33PM  7   to request those and provide more information, but at the

01:37:38PM  8   last show cause hearing, I understood that that was

01:37:41PM  9   sufficient and that defendants had until January 7th to

01:37:46PM  10  confirm compliance.

01:37:49PM  11          MR. BAEHR:  Yeah, we would say that it wasn't

01:37:52PM  12  compliant.  We checked the upload.  I mean, it doesn't have

01:37:54PM  13  the date of treatment.  It doesn't have the start or type of

01:37:58PM  14  treatment.  It doesn't have the name of the oncologist for

01:38:01PM  15  the second cancer and so without that, we're unable to tell

01:38:05PM  16  whether the photos are representative, where they fall with

01:38:09PM  17  respect to the two different cancer diagnoses and treatments

01:38:13PM  18  that she received.

01:38:13PM  19          THE COURT:  All right.  I think in the future, you

01:38:15PM  20  know, after seven days, let them know we're not satisfied

01:38:18PM  21  with this instead of just putting it on the list.  I'm going

01:38:20PM  22  to give you 30 days to provide that information.

01:38:23PM  23          MS. KREIDER:  Your Honor, I may need a little longer

01:38:25PM  24  than that to request the medical records.  Her son does not

01:38:28PM  25  think that she received any treatment.  He thinks that she

01:38:32PM   1   was diagnosed with uterine cancer and soon thereafter passed

01:38:39PM   2   away.  So we will request from that facility, but it may take

01:38:44PM   3   60 days to get those records.  But I can keep counsel

01:38:48PM   4   apprised of that.

01:38:49PM   5        THE COURT:  Okay.  What I was saying is 30 days to

01:38:51PM   6   certainly make that request --

01:38:51PM   7        MS. KREIDER:  Yes, ma'am.

01:38:52PM   8        THE COURT:  And get the ball rolling and then we'll

01:38:56PM   9   see where we are and as long as you're maintaining

01:38:57PM  10   communication with opposing counsel I think that should

01:38:59PM  11   probably be sufficient to keep you off the list.  Thank you.

01:39:03PM  12        All right.  Missila Cheers.

01:39:04PM  13        MR. BAEHR:  This is similarly one where there's --

01:39:07PM  14   the box that there was a second cancer diagnosis was ticked,

01:39:10PM  15   but there's no information about that second cancer

01:39:13PM  16   diagnosis.  So we request the same, essentially the same

01:39:15PM  17   relief.

01:39:16PM  18        THE COURT:  Ms. Sulkin, are you on the line?

01:39:22PM  19        MS. SULKIN:  I am, Your Honor.

01:39:23PM  20        THE COURT:  Okay.

01:39:23PM  21        MS. SULKIN:  And, Your Honor, this is one that we

01:39:25PM  22   believe is cured.  The initial cancer diagnosis was in 1996,

01:39:31PM  23   and then the second cancer diagnosis was actually the one in

01:39:35PM  24   which this plaintiff was treated with Taxotere.  So this

01:39:39PM  25   plaintiff was not treated -- this -- the before photos would

01:39:44PM   **1**    be before the Taxotere treatment and it was not a cancer

01:39:48PM   **2**    diagnosis, a second cancer diagnosis, after the Taxotere was

01:39:51PM   **3**    administered.

01:39:55PM   **4**         MR. BAEHR:  We're not aware of -- we're not aware of

01:39:59PM   **5**    any PFS reflecting the information that was just shared.  So

01:40:04PM   **6**    we would certainly request an updated PFS that would allow us

01:40:07PM   **7**    to even know whether the photos are within their time range

01:40:10PM   **8**    and everything --

01:40:10PM   **9**         THE COURT:  Okay.  Ms. Sulkin, I'm going to ask

01:40:12PM  **10**    you -- do you have that information in the PFS?

01:40:16PM  **11**         MS. SULKIN:  I believe, we did, Your Honor.  We

01:40:18PM  **12**    submitted a supplemental PFS on the 21st of January of 2022.

01:40:25PM  **13**         THE COURT:  All right.  I'm going to give you seven

01:40:27PM  **14**    days to confirm compliance.  And then I'm just -- Ms. Sulkin,

01:40:32PM  **15**    you might want to just maintain contact with defense counsel

01:40:37PM  **16**    to satisfy that the information's complete.

01:40:40PM  **17**         Okay.  And then I think the next one is Denise Cagle.

01:40:44PM  **18**         MR. BAEHR:  It's the exact same issue, Your Honor,

01:40:48PM  **19**    second cancer diagnosis, no information.

01:40:50PM  **20**         THE COURT:  Mr. Bonnin, are you on the line?

01:40:53PM  **21**         MR. BONNIN:  I am, indeed, Your Honor.

01:40:56PM  **22**         THE COURT:  Okay.  Is there information --

01:41:02PM  **23**         MR. BONNIN:  Yeah, so we've gone to Ms. Cagle and we

01:41:06PM  **24**    think that there was just some confusion and she checked that

01:41:10PM  **25**    box because she was diagnosed with a metastasis of her

01:41:15PM   1   original cancer only a short time later, and so I actually

01:41:19PM   2   don't think it's proper to consider her diagnosis twice.   I

01:41:23PM   3   think it's the same disease.  But she just was -- I think

01:41:25PM   4   there was some confusion and a checked box that shouldn't

01:41:29PM   5   have been checked.  And so I know that we've uploaded before

01:41:33PM   6   and after photos and so I think that those are properly

01:41:38PM   7   situated in the record given that that's her only cancer

01:41:44PM   8   diagnosis.

01:41:44PM   9        THE COURT:  Mr. Bonnin, I just want to ask you real

01:41:46PM  10   quick.

01:41:46PM  11        MR. BONNIN:  I'd be happy to --

01:41:47PM  12        THE COURT:  Let me ask you a quick question.  Are all

01:41:50PM  13   of her medical records related to her cancer treatment, have

01:41:53PM  14   they all been uploaded?

01:41:54PM  15        MR. BONNIN:  Yes, I believe they have.

01:41:56PM  16        THE COURT:  All right.

01:42:00PM  17        MR. BONNIN:  And so what I was going to say, Your

01:42:03PM  18   Honor, is I'm happy to submit another fact sheet or an

01:42:07PM  19   amended fact sheet that has that box unchecked.

01:42:11PM  20        THE COURT:  I think that may be the way to proceed,

01:42:14PM  21   if there was an error that it was the same cancer that was

01:42:17PM  22   not --

01:42:20PM  23        MR. BAEHR:  Yeah.  I mean, our position I think would

01:42:22PM  24   be that if they were treated for the metastasis, that's still

01:42:25PM  25   relevant to causation with respect to the injury, so

01:42:28PM   1   certainly updated PFS, I think we agree is what's needed.  I

01:42:35PM   2   don't know that just unticking the box is actually accurate.

01:42:36PM   3          THE COURT:  Well, if he has provided all of the

01:42:40PM   4   medical records and all of that is already there, but it was

01:42:42PM   5   the cancer -- you know, it's hard for me to say without

01:42:45PM   6   looking at the records.  That's why I asked the question, are

01:42:48PM   7   all the records related to any cancer treatment uploaded.

01:42:51PM   8          And what I'm going to do, Mr. Bonnin, is have you

01:42:57PM   9   resubmit a Plaintiff Fact Sheet within 30 days and assure

01:43:03PM  10   yourself that all of the medical records related to any

01:43:06PM  11   cancer treatment of your client be uploaded.

01:43:13PM  12          MR. BONNIN:  I will do that.  And once -- you know,

01:43:16PM  13   I'll take a look at the records that we have and the records

01:43:18PM  14   that we've uploaded and make sure we're providing a complete

01:43:22PM  15   picture to the defense.

01:43:23PM  16          THE COURT:  Thank you.

01:43:24PM  17          Okay.  Anne Coast?

01:43:28PM  18          MR. BAEHR:  Thank you.  This is similar to the

01:43:30PM  19   previous.  In this case, there actually is a PFS stating that

01:43:33PM  20   treatment -- that the treatment for a future diagnosis didn't

01:43:37PM  21   involve chemotherapy, but the medical records indicate two

01:43:42PM  22   separate port removals, which would indicate that there was

01:43:47PM  23   actually chemotherapy for both diagnoses.  So what we're

01:43:51PM  24   asking is simply either records from in between the two

01:43:54PM  25   diagnoses or medical records demonstrating that no

01:43:58PM   1   chemotherapy was in fact involved in the second diagnosis.

01:43:59PM   2          THE COURT:  Okay.  And that is Mr. McGuire.  Are you

01:44:02PM   3   on the line?

01:44:03PM   4          MR. MCGUIRE:  Yes, Your Honor.  Jeff McGuire here for

01:44:06PM   5   Anne Coast.  We were -- we were -- we were under the

01:44:13PM   6   impression that she only had with respect to the second

01:44:17PM   7   cancer treatment radiation and a mastectomy, so --

01:44:17PM   8          THE COURT:  Okay.

01:44:22PM   9          MR. MCGUIRE:  But, you know, if we can provide

01:44:25PM  10   something to show that that is, in fact, the case, we don't

01:44:28PM  11   have a problem doing that.  It's just that they were, of

01:44:32PM  12   course, wanting photographs of Ms. Coast before her second

01:44:37PM  13   treatment.  She was just simply too embarrassed to have her

01:44:42PM  14   photos taken.  She always wore wigs, and so we don't have

01:44:45PM  15   those sort of photographs on hand.

01:44:45PM  16          THE COURT:  So you don't have photographs in between.

01:44:47PM  17   You have photographs after?

01:44:52PM  18          MR. MCGUIRE:  Yes, Your Honor.

01:44:52PM  19          THE COURT:  Okay.  All right.  So the issue is

01:44:54PM  20   whether or not she received any chemotherapy in that second

01:44:58PM  21   treatment.  And do you have the medical records for the

01:45:01PM  22   second treatment?

01:45:03PM  23          MR. MCGUIRE:  No, we don't.

01:45:04PM  24          THE COURT:  All right.  That's what you need to get

01:45:04PM  25   --

01:45:04PM   1          MR. MCGUIRE:  Yes, correct.

01:45:07PM   2          THE COURT:  -- so that everybody can be satisfied

01:45:10PM   3   that there was no chemotherapy administered in the second --

01:45:12PM   4   after the second diagnosis.  Okay.  I'm going to give you --

01:45:18PM   5   I don't know how long the records are going to take to get

01:45:21PM   6   in.

01:45:22PM   7          MS. CALLSEN:  When they request them, at least

01:45:24PM   8   30 days.

01:45:25PM   9          THE COURT:  I'm going to give you 30 days and make

01:45:27PM  10   sure they're requested before that and then we'll see.  Okay?

01:45:32PM  11          MR. MCGUIRE:  Great.  Thank you.

01:45:32PM  12          THE COURT:  Thank you.

01:45:34PM  13          All right.  Sandra Morales.

01:45:36PM  14          MR. BAEHR:  Yes, Your Honor.  This is another one

01:45:38PM  15   where we need photos from between the two diagnoses.  In this

01:45:40PM  16   case, we know that there was chemotherapy for subsequent

01:45:43PM  17   cancer diagnoses.

01:45:43PM  18          THE COURT:  Okay.  And that is Mr. Bryson?

01:45:48PM  19          MR. BRYSON:  Yes.  Good afternoon, Your Honor.

01:45:49PM  20          THE COURT:  Good afternoon.  Do you --

01:45:54PM  21          MR. BRYSON:  Yes.  You know, we've had lots -- we

01:45:56PM  22   have not been able to get photos from Ms. Morales.  We have

01:46:02PM  23   looked and looked.  She didn't want to have photos to be

01:46:05PM  24   taken during this period.  She's asked friends.  This was in

01:46:09PM  25   between two treatments, and I believe we just have not been

01:46:12PM   1   able to get photos from her, but she has looked and looked

01:46:16PM   2   and has not been able to find any.

01:46:18PM   3         THE COURT:  What kind of time frame are we talking

01:46:21PM   4   about in between the two diagnoses if you have an idea?

01:46:25PM   5   Okay.

01:46:26PM   6         MR. BRYSON:  I believe -- I believe it's at least a

01:46:29PM   7   year, Your Honor, but, you know, she's taken photos after the

01:46:35PM   8   second diagnosis, but a lot of the ones in between the

01:46:39PM   9   cancers she had, she had a hat and things that wouldn't

01:46:43PM  10   qualify.  So we submitted medical records for both, all of

01:46:46PM  11   her treatments, but we just do not have any that are

01:46:49PM  12   apparently acceptable during that window there.

01:46:52PM  13         THE COURT:  Okay.  I'm going to ask you to work with

01:46:55PM  14   Ms. Kreider and maybe prepare an affidavit to submit with --

01:47:02PM  15   since it was such a short period of time.

01:47:07PM  16         MS. KREIDER:  Yes, Your Honor.

01:47:07PM  17         THE COURT:  And let's get that done within 30 days.

01:47:11PM  18         All right.  Mavis Thornton.

01:47:15PM  19         MR. BAEHR:  This is another one where there was a

01:47:17PM  20   second cancer diagnosis.  We know that it was bone cancer,

01:47:20PM  21   but we don't know the dates and things like that so we are

01:47:22PM  22   requesting an updated PFS with all of the details.

01:47:26PM  23         THE COURT:  Okay.  Mr. Ortiz, are you on the line?

01:47:34PM  24   Mr. Ortiz.

01:47:37PM  25         MS. KREIDER:  Maybe the star six to unmute yourself.

01:47:41PM   1          THE COURT:  Mr. Ortiz, if you press star six you will

01:47:45PM   2   be unmuted.  Okay.  Let's move on.

01:47:49PM   3          MR. ORTIZ:  Good afternoon, Your Honor.

01:47:51PM   4          THE COURT:  There you are.

01:47:52PM   5          MR. ORTIZ:  I'm so sorry.

01:47:53PM   6          THE COURT:  That's okay.

01:47:53PM   7          MR. ORTIZ:  For the record, Javier Ortiz with Napoli

01:48:00PM   8   on behalf of the plaintiff.  We submitted the third amended

01:48:03PM   9   PFS on Centrality on January 26, 2022, Document ID 526607.

01:48:14PM  10   We also sent over response to another on March 2, 2022.  I

01:48:23PM  11   see that the deficiency talks about after photos.  I just

01:48:27PM  12   looked at the after photos on Centrality.  They are in

01:48:31PM  13   Document ID 267703, uploaded in November 20, 2018.

01:48:39PM  14          THE COURT:  I think the issue is that there was a

01:48:43PM  15   second cancer diagnosis and whether or not the photographs

01:48:47PM  16   showed the status of her hair in between the two cancers?

01:48:54PM  17          MR. ORTIZ:  The photos are from 2017, Your Honor.

01:48:56PM  18          THE COURT:  Oh, okay.

01:49:02PM  19          MR. BAEHR:  We don't know when the date of the second

01:49:05PM  20   diagnosis was because the PFS doesn't --

01:49:07PM  21          THE COURT:  Okay.  Mr. Ortiz, I'm going to give you

01:49:10PM  22   30 days to amend the Plaintiff Fact Sheet because I think

01:49:13PM  23   what's missing is certain information regarding the second

01:49:18PM  24   diagnosis, when, where, how, that's -- what treatment was

01:49:24PM  25   rendered, those things to do an assessment.  So I need you to

```
01:49:31PM   1    amend the Plaintiff Fact Sheet to include all of the
01:49:35PM   2    necessary facts regarding that second diagnosis.
01:49:41PM   3          MR. ORTIZ:  I will, Your Honor.  Thank you so much.
01:49:42PM   4          THE COURT:  Okay.  30 days.  Thank you.
01:49:45PM   5          Gloria Jackson.
01:49:47PM   6          MR. BAEHR:  This is a simple no CMO 12.
01:49:49PM   7          THE COURT:  All right.  Ms. Rados.
01:49:53PM   8          MS. RADOS:  Stephanie Rados, yes, I'm here.  Your
01:49:55PM   9    Honor, we -- we actually were under the impression that the
01:49:59PM  10    prior medical records we provided were sufficient, but I
01:50:03PM  11    would -- I am requesting just additional time to be able to
01:50:05PM  12    end up curing that CMO 12 as to the --
01:50:15PM  13          THE COURT:  I'm having trouble -- I'm really having
01:50:18PM  14    trouble understanding everybody on this phone.  So you're
01:50:25PM  15    having --
01:50:25PM  16          MS. RADOS:  Oh, I'm sorry.
01:50:26PM  17          THE COURT:  So you're having difficulty -- I'm
01:50:26PM  18    reading.  You're having difficulty getting the information
01:50:32PM  19    from CMO 12, so it's a matter of her going through the --
01:50:37PM  20    what process has been in place is what's missing.
01:50:40PM  21          Okay.  All right.  What you need to do, Ms. Jackson,
01:50:44PM  22    in this case is you need to provide -- if you read CMO 12, it
01:50:50PM  23    speaks to the process you need to follow to determine product
01:50:56PM  24    ID and CMO 12 requires that you provide what you've done in
01:51:04PM  25    that process to opposing counsel.  So that's what needs to be
```

01:51:06PM  1    done.  And I need you to do that within 30 days.  If you have

01:51:11PM  2    any difficulty, you should feel free to contact Ms. Kreider

01:51:18PM  3    with liaison counsel.  Okay.  I'm going to give you 30 days

01:51:22PM  4    to get that done.

01:51:25PM  5            MS. RADOS:  Okay.  Thank you.

01:51:26PM  6            THE COURT:  All right.

01:51:32PM  7            Okay.  Nina Williams.

01:51:33PM  8            MR. BAEHR:  Your Honor, this is a rollover case and

01:51:35PM  9    it's somewhat illustrative of an issue where they were

01:51:41PM  10   initially put on a list for not having provided details about

01:51:46PM  11   a second cancer diagnosis.  Then they provided a date of that

01:51:49PM  12   second cancer diagnosis, and based on that date, we realized

01:51:52PM  13   that there is no between photos between the two diagnoses.

01:51:57PM  14   And that was actually discussed at the December 15th hearing,

01:52:01PM  15   that exact issue, and plaintiff wasn't able to provide those

01:52:06PM  16   photos in the interim.  So we would just ask that they be

01:52:10PM  17   given 14 or 30 days to provide those photos or be dismissed.

01:52:22PM  18           THE COURT:  Ms. Reynolds, are you on the line?

01:52:24PM  19           MS. BARIENT:  Yes, Your Honor.  Andrea Barient on

01:52:27PM  20   behalf of Ms. Williams.  We would be agreeable to what

01:52:33PM  21   defendants are asking for, just for some additional time for

01:52:38PM  22   our client to search their photographs and see if she has

01:52:42PM  23   pictures from this particular time period.

01:52:43PM  24           THE COURT:  Do you -- do you know how long a time

01:52:47PM  25   period it was?

```
01:52:51PM   1          MS. BARIENT:  I believe it's three -- a three-year
01:52:54PM   2   time period that they are looking for.  And we've already
01:52:57PM   3   contacted our client and she is in the process of looking
01:53:01PM   4   through her photographs on her phone to see if she has any.
01:53:09PM   5          THE COURT:  Okay.  I don't know if we have dismissed
01:53:15PM   6   any cases for -- for photographs in between two cancer
01:53:25PM   7   diagnoses.
01:53:26PM   8          MR. BAEHR:  I know this issue has come up in now
01:53:30PM   9   quite a few cases and I believe there's a handful where
01:53:33PM  10   affidavits have been submitted.  And I think you made a
01:53:35PM  11   remark at the last hearing to the effect of I'll have to
01:53:38PM  12   figure out what to do with these at some point.  There is
01:53:41PM  13   clearly a causation issue, and without those photos, they're
01:53:44PM  14   not able to demonstrate, you know --
01:53:46PM  15          THE COURT:  No.  I understand.  I'm just not ready
01:53:51PM  16   to -- I'm going to give her the 15 days, and then I'm going
01:53:56PM  17   to allow an affidavit.  And then I'll have to do an
01:53:59PM  18   assessment of the affidavit.  Because that's a really
01:54:02PM  19   compressed period of time and that's why I was curious as to
01:54:07PM  20   how long it is in between.  And we'll just have to -- let's
01:54:11PM  21   just see where we are.  But I am going to have to decide what
01:54:16PM  22   to do with it.  I'm just not prepared to pull that trigger
01:54:19PM  23   yet.
01:54:20PM  24          MR. BAEHR:  Certainly, Your Honor.
01:54:21PM  25          THE COURT:  Thank you.
```

```
01:54:23PM   1              MS. BARIENT:  Thank you, Your Honor.

01:54:23PM   2              THE COURT:  But I need you to do it within 15 days.

01:54:26PM   3    That does not mean in any way you should ease up in the pedal

01:54:32PM   4    in your search, diligent search for anything.

01:54:35PM   5              MS. BARIENT:  Thank you, Your Honor.

01:54:36PM   6              THE COURT:  All right.  Lorrie Whitenight.

01:54:39PM   7              MR. BAEHR:  This -- there are two issues here.  One

01:54:41PM   8    is the similar issue we've been talking about.  We need

01:54:47PM   9    details about the additional cancer diagnosis.  And the other

01:54:51PM  10    issue is that they have claimed lack of or loss of eyelashes

01:54:56PM  11    and eyebrows but there are no photos, documents.

01:55:00PM  12              THE COURT:  Okay.  Mr. Black?

01:55:02PM  13              MR. BLACK:  Yes, Your Honor.  This is a case where

01:55:03PM  14    we've been unable to get ahold of the client recently.  We

01:55:08PM  15    didn't file the no contact declaration because previously

01:55:12PM  16    Ms. Whitenight had been responsive.  It's just been in the

01:55:16PM  17    last about three months or so since we've been calling,

01:55:19PM  18    e-mailing, sending letters trying to get this information

01:55:22PM  19    that she's become nonresponsive.  So I -- we would request a

01:55:28PM  20    30-day extension so that we can both get ahold of

01:55:33PM  21    Ms. Whitenight and also order the second cancer diagnosis

01:55:39PM  22    records should we need to.

01:55:40PM  23              THE COURT:  Okay.  Mr. Black, I'm going to give you

01:55:41PM  24    30 days and that's it.

01:55:43PM  25              MR. BLACK:  Yes, Your Honor.
```

01:55:43PM   **1**          THE COURT:  Okay.  You need to find her within

01:55:45PM   **2**   30 days.

01:55:47PM   **3**          MR. BLACK:  Yes, Your Honor.

01:55:51PM   **4**          MS. CALLSEN:  Erica Gissendanner is the next one and

01:55:55PM   **5**   this is a CMO 12 documentation process deficiency.

01:55:59PM   **6**          THE COURT:  Okay.  Ms. Menzies, are you on the line?

01:56:08PM   **7**          MS. CALLSEN:  Star six.

01:56:10PM   **8**          THE COURT:  Star six.  Has she given you anything --

01:56:15PM   **9**          MS. MENZIES:  Yes.

01:56:16PM  **10**          THE COURT:  There are you.

01:56:17PM  **11**          MS. MENZIES:  Your Honor -- I apologize, Your Honor.

01:56:19PM  **12**   I'm new to this and the associates that work on these cases

01:56:26PM  **13**   actually left the firm last week, so please bear with me.

01:56:30PM  **14**   But it was good to see you this morning and thank you for

01:56:32PM  **15**   hearing us.  So go ahead if you can hear me.  You guys there?

01:56:38PM  **16**          THE COURT:  Yeah, we're here.

01:56:40PM  **17**          MS. CALLSEN:  We're waiting for you.

01:56:41PM  **18**          MS. MENZIES:  Okay.  Great.

01:56:43PM  **19**          THE COURT:  We're curious about Ms. Gissendanner that

01:56:49PM  **20**   there's no CMO 12 documentation.

01:56:52PM  **21**          MS. MENZIES:  So we sent information to the

01:56:55PM  **22**   defendants last summer and then I understand there was some

01:57:00PM  **23**   difficulty opening it, but we resent it to them again in

01:57:05PM  **24**   January, but we've done I think about close to 19 requests

01:57:09PM  **25**   for records from different facilities and have been working

| | | |
|---|---|---|
| 01:57:12PM | 1 | on it for a while.  This is a case out of Florida and it was |
| 01:57:15PM | 2 | filed in 2019.  So we're still working to get records and I |
| 01:57:19PM | 3 | believe, you know, it's probably at a point now, I mean, we |
| 01:57:21PM | 4 | can do another round of requests, but I think it's a point |
| 01:57:25PM | 5 | now where I understand CMO 12A, you know, the defendants can |
| 01:57:29PM | 6 | try to help get that too.  But we have been trying to get the |
| 01:57:33PM | 7 | records and we advised them of that last summer and again in |
| 01:57:37PM | 8 | January. |
| 01:57:38PM | 9 | MS. CALLSEN:  You can submit the documentation of |
| 01:57:40PM | 10 | efforts, Karen.  This is Julie. |
| 01:57:44PM | 11 | MS. MENZIES:  It's my understanding we did.  Is it |
| 01:57:46PM | 12 | something separate from e-mailing that information to you? |
| 01:57:52PM | 13 | MS. CALLSEN:  Well, it needs to be uploaded into in |
| 01:57:54PM | 14 | MDL Centrality under the appropriate tab. |
| 01:57:57PM | 15 | MS. MENZIES:  And I'll check on it, Julie, because my |
| 01:57:59PM | 16 | understanding is that was.  I'll double-check -- |
| 01:58:01PM | 17 | THE COURT:  This is what I'm going to do.  I'm going |
| 01:58:03PM | 18 | to grant you 14 days to get this uploaded to MDL Centrality. |
| 01:58:08PM | 19 | If there's any difficulty, I'm going to just ask you to call |
| 01:58:13PM | 20 | Ms. Callsen.  And then we'll roll it -- I'm sure I'll hear if |
| 01:58:16PM | 21 | you have not done it within 14 days.  Thank you. |
| 01:58:19PM | 22 | MS. MENZIES:  Thank you, Your Honor.  I appreciate |
| 01:58:21PM | 23 | it. |
| 01:58:21PM | 24 | THE COURT:  Okay.  All right.  This is Sandra Elbaum. |
| 01:58:31PM | 25 | MR. BAEHR:  This is a rollover case.  It is also a |

01:58:33PM  1    two-cancer diagnosis case.  In this case, we know the dates

01:58:36PM  2    are Taxotere in 2009 and then a second diagnosis in late

01:58:39PM  3    2017.  So what we're asking for is either photos from between

01:58:43PM  4    those two dates or records demonstrating that the second

01:58:46PM  5    diagnosis or the treatment for that did not involve

01:58:50PM  6    chemotherapy or we should say or hormone therapy.

01:59:00PM  7          THE COURT:  Okay.  And that's the Carlson Firm, Mr.

01:59:02PM  8    -- oh, you're going to have to help me.

01:59:07PM  9          MR. TAHBAZSALEHI:  Hi, Your Honor.  My name is Javad

01:59:10PM 10    Tahbazsalehi representing Ms. Elbaum from the Carlson Firm.

01:59:14PM 11          THE COURT:  Okay.  Thank you.

01:59:22PM 12          MR. TAHBAZSALEHI:  Okay.  Your Honor, so we've done

01:59:23PM 13    our due diligence and exhausted all efforts to try and get

01:59:28PM 14    photos of Ms. Elbaum's hair and baldness from the period of

01:59:34PM 15    2011 to 2016.  You know, at the time, Ms. Elbaum was

01:59:42PM 16    struggling to survive cancer and was really self-conscious

01:59:46PM 17    about her looks and, therefore, was not participating in

01:59:48PM 18    photographs.  She says she's exhausted all her efforts by

01:59:53PM 19    asking friend and family, if by any chance they have photos

01:59:58PM 20    of her from that time period, and she said no one has

02:00:03PM 21    reported having any.  It's our position that Ms. Elbaum's

02:00:09PM 22    testimony is factual evidence, which is for a jury or the

02:00:12PM 23    trier of fact to decide upon and judge the credibility.

02:00:17PM 24          THE COURT:  Okay.  Let me ask this question.  She did

02:00:21PM 25    receive chemotherapy in the second diagnosis?

02:00:25PM 1          MR. TAHBAZSALEHI:  Yes.

02:00:27PM 2          THE COURT:  Okay.  What I am going to do, I'm going

02:00:40PM 3  to allow an affidavit to be submitted, but I don't know --

02:00:45PM 4  today.  All right.  So I'm going to give you 30 days to

02:00:51PM 5  submit an affidavit and I'm going to ask you to work with

02:00:53PM 6  Ms. Kreider to get that information as to why she has no

02:00:58PM 7  photographs.  This is not to say that I'm not ultimately

02:01:02PM 8  going to dismiss this case.  This is not to say, but right

02:01:06PM 9  now, I just -- I'm going to consider the affidavits and then

02:01:09PM 10 determine how we proceed from there.  Okay.

02:01:15PM 11         MR. TAHBAZSALEHI:  All right.

02:01:15PM 12         THE COURT:  30 days.

02:01:15PM 13         MR. TAHBAZSALEHI:  Thank you so much, Your Honor.

02:01:17PM 14         THE COURT:  Deborah Curtis.  And that should be

02:01:20PM 15 Mr. Davis.  Are you on the line?

02:01:24PM 16         MR. DAVIS:  Yes, Your Honor.  Can you hear me?

02:01:25PM 17         THE COURT:  I can.

02:01:27PM 18         MR. BAEHR:  Your Honor, this is a proof of use case.

02:01:31PM 19 There was a record submitted that says next week she will

02:01:35PM 20 start adjuvant chemotherapy, so it's a plan.  It's not an

02:01:38PM 21 actual record of treatment with Docetaxel.  So we think

02:01:42PM 22 that's not sufficient proof of use.

02:01:44PM 23         THE COURT:  Okay.  Mr. Davis, do you have the

02:01:50PM 24 records?

02:01:52PM 25         MR. DAVIS:  Sure, Your Honor.  The defendants are

02:01:53PM  1    right.  The record that we have and he accurately

02:01:56PM  2    characterized it, it's from Ms. Curtis' collection.  The

02:02:00PM  3    facility itself has destroyed the records and destroyed them

02:02:02PM  4    long ago.  We uploaded that certification too.  She doesn't

02:02:06PM  5    have the records of her use, only her testimony that what

02:02:09PM  6    happened with her was in accordance with her plan.  And so we

02:02:12PM  7    would certainly think a dismissal is not appropriate, but I

02:02:15PM  8    agree with defendants that there aren't records that are

02:02:18PM  9    missing that we're going to be able to find.  Everything that

02:02:22PM  10   exists has been --

02:02:23PM  11            THE COURT:  Have you tried an insurance search?

02:02:27PM  12            MR. DAVIS:  We have and haven't had any luck there

02:02:30PM  13   either, Your Honor.

02:02:31PM  14            THE COURT:  And we know this would be a Sanofi case?

02:02:38PM  15   Do we know?

02:02:39PM  16            MR. DAVIS:  I believe so, yes, because of the time

02:02:42PM  17   frame.

02:02:42PM  18            MR. BAEHR:  I don't have the dates of treatment here,

02:02:46PM  19   so I don't know for sure.  Sanofi I think is the only

02:02:47PM  20   named --

02:02:48PM  21            THE COURT:  Do we know when she used -- what year she

02:02:50PM  22   had chemotherapy?

02:02:52PM  23            MR. DAVIS:  It would have been the first half of

02:02:54PM  24   2005.

02:02:55PM  25            THE COURT:  Okay.  So it would be a Sanofi case.  So

02:03:08PM 1    we really have no -- and she's deceased now?

02:03:12PM 2         MR. DAVIS:  No, she's alive.

02:03:14PM 3         THE COURT:  Okay.  But we don't have anything

02:03:16PM 4    indicating other than a plan that she --

02:03:21PM 5         MR. DAVIS:  So we got -- I'm sorry, Your Honor.

02:03:23PM 6         THE COURT:  Go ahead.

02:03:24PM 7         MR. DAVIS:  She has records.  She has the plan.  And

02:03:27PM 8    then she has a doctor's note that says I provided adjuvant

02:03:32PM 9    chemotherapy, but it doesn't specifically say I provided

02:03:35PM 10   Taxotere and that doctor doesn't have an independent

02:03:38PM 11   recollection at this point that he would be willing to, you

02:03:43PM 12   know, provide another letter or anything like that.

02:03:45PM 13        THE COURT:  So he has indicated that he did provide

02:03:48PM 14   chemotherapy in accordance with the plan.

02:03:52PM 15        MR. DAVIS:  He -- well, it's hard because the record

02:03:55PM 16   says "Next week she will start adjuvant chemotherapy

02:04:00PM 17   consisting of Adriamycin, Cytoxan, every two weeks for four

02:04:06PM 18   cycles followed by four cycles of Taxotere also every two

02:04:10PM 19   weeks."  And then his letter later says, "I provided her with

02:04:17PM 20   adjuvant treatment."  He didn't specify whether it was

02:04:21PM 21   exactly in accordance with that plan or how that plan may

02:04:24PM 22   have been changed.  So we're -- you know, we don't have

02:04:28PM 23   anything from after the fact that is certain medical evidence

02:04:33PM 24   that she used Taxotere.

02:04:38PM 25        MS. KREIDER:  Your Honor, I could work with counsel

| | | |
|---|---|---|
| 02:04:39PM | 1 | to -- for a submission for the court with those records as |
| 02:04:44PM | 2 | exhibits so that you could better evaluate whether it would |
| 02:04:47PM | 3 | be sufficient for proof of use.  I think we've done that in |
| 02:04:50PM | 4 | one case in the past. |
| 02:04:51PM | 5 | THE COURT:  I think that's what we're going to have |
| 02:04:53PM | 6 | to do.  Because I just -- I just need to see it all.  Let's |
| 02:05:03PM | 7 | do that and then we can make a determination. |
| 02:05:07PM | 8 | MR. BAEHR:  That's fine.  Do you want submissions |
| 02:05:09PM | 9 | from both sides or will we just have a chance to respond that |
| 02:05:12PM | 10 | they put together what they want to put and then we'll have a |
| 02:05:14PM | 11 | chance to respond? |
| 02:05:15PM | 12 | THE COURT:  Of course.  All right.  Let's do it that |
| 02:05:18PM | 13 | way and let's see if we can get something done within the |
| 02:05:21PM | 14 | next 15 days. |
| 02:05:21PM | 15 | MS. KREIDER:  15, yes, Your Honor. |
| 02:05:22PM | 16 | THE COURT:  Thank you. |
| 02:05:23PM | 17 | MR. DAVIS:  Thank you Your Honor. |
| 02:05:25PM | 18 | THE COURT:  Okay.  Sheila Smith with the Wendt Law |
| 02:05:29PM | 19 | Firm and that is Mr. Wendt.  Okay.  Mr. Baehr? |
| 02:05:33PM | 20 | MR. BAEHR:  This is a two-cancer diagnosis case.  In |
| 02:05:35PM | 21 | this case, they received the other chemotherapy prior to |
| 02:05:38PM | 22 | Taxotere in 2007.  Then they received Taxotere in 2011.  The |
| 02:05:44PM | 23 | only before photos are from before the first treatment, and |
| 02:05:48PM | 24 | so we're asking for photos between 2007 and 2011. |
| 02:05:53PM | 25 | THE COURT:  Okay.  Mr. Wendt. |

02:05:56PM  1          MR. WENDT:  Yes, Your Honor.  Thank you.  We provided

02:05:57PM  2   before photos from 1989, '94, 2002, 2006, and 2010.  The 2010

02:06:06PM  3   photograph is actually after the first cancer diagnosis.  At

02:06:11PM  4   some point in 2013, our client suffered a catastrophic flood.

02:06:17PM  5   We submitted information and through Centrality including

02:06:23PM  6   letters from FEMA confirming a flood occurred in Ms. Smith's

02:06:29PM  7   area.  We also provided photographs, after photographs from

02:06:32PM  8   April of 2017, 19 photographs from September of 2018, and

02:06:37PM  9   then June of 2019 --

02:06:38PM  10          THE COURT:  Okay.

02:06:39PM  11          MR. WENDT:  -- we submitted --

02:06:39PM  12          THE COURT:  I think --

02:06:39PM  13          MR. WENDT:  -- seven photographs there.

02:06:39PM  14          THE COURT:  Mr. Wendt.  Mr. Wendt.

02:06:41PM  15          Could we lower the volume?  I think it's too loud.

02:06:45PM  16   It's hard to even hear it's so loud.

02:06:48PM  17          I think the issue, you've supplied photographs from

02:06:52PM  18   2010, which is in between the two cancer diagnoses, right?

02:06:57PM  19          MR. WENDT:  I believe that's true, yes.  It was

02:06:59PM  20   uploaded to Centrality.

02:07:01PM  21          MR. BAEHR:  Yeah, we have not been able to identify

02:07:04PM  22   any photos.  Do you know the document ID of such photos,

02:07:08PM  23   Mr. Wendt?

02:07:08PM  24          MR. WENDT:  I can certainly get that to you.  I just

02:07:11PM  25   don't have it in my notes right here.

| | | |
|---|---|---|
| 02:07:13PM | 1 | THE COURT:  Okay.  This is what I'm going to do, |
| 02:07:15PM | 2 | Mr. Wendt.  I'm going to ask you to go back and get that |
| 02:07:18PM | 3 | particular photograph, because if that's in between the |
| 02:07:21PM | 4 | cancer treatment and she received Taxotere in the second one, |
| 02:07:22PM | 5 | that should be fine.  But we need to make sure.  So within |
| 02:07:26PM | 6 | seven days I'm going to ask that you provide defense counsel |
| 02:07:30PM | 7 | with the actual number of the photograph in between the two |
| 02:07:36PM | 8 | diagnoses, which is the 2010 photograph. |
| 02:07:41PM | 9 | MR. WENDT:  Okay.  Will do. |
| 02:07:42PM | 10 | THE COURT:  Thank you so much. |
| 02:07:43PM | 11 | All right.  Sandra Colvin. |
| 02:07:48PM | 12 | MS. CALLSEN:  That's the one that was dismissed, so |
| 02:07:49PM | 13 | we can go on to 17. |
| 02:07:51PM | 14 | THE COURT:  Okay.  Number 17 is Cheryl Jones. |
| 02:07:54PM | 15 | MR. BAEHR:  We know there are two cancer diagnoses, |
| 02:07:59PM | 16 | 2009 and 2016.  We don't know the type of treatment for the |
| 02:08:03PM | 17 | second one, so we need either records demonstrating |
| 02:08:06PM | 18 | chemotherapy or photos between the two diagnoses. |
| 02:08:09PM | 19 | THE COURT:  Ms. Nolte, are you on the line? |
| 02:08:21PM | 20 | Ms. Nolte, star six. |
| 02:08:22PM | 21 | MS. NOLTE:  Good afternoon, Your Honor.  Can you hear |
| 02:08:23PM | 22 | me now? |
| 02:08:24PM | 23 | THE COURT:  I can.  Thank you. |
| 02:08:26PM | 24 | MS. NOLTE:  Great.  So I'm a little confused as to |
| 02:08:31PM | 25 | where they're getting the second cancer diagnosis in 2016. |

02:08:35PM  1    Our records and conversations with our client indicate she

02:08:39PM  2    was only diagnosed with cancer once in 2009 and underwent

02:08:44PM  3    chemotherapy treatment then with Taxotere.  I am unaware of

02:08:47PM  4    any second cancer diagnosis or treatment in 2016.

02:08:51PM  5             THE COURT:  Mr. Baehr?

02:08:53PM  6             MR. BAEHR:  The PFS indicates -- I mean, according to

02:08:55PM  7    my notes, PFS indicates treatment from 2016 to 2018 for a

02:08:58PM  8    second cancer.

02:09:00PM  9             THE COURT:  Okay.

02:09:01PM  10            MS. NOLTE:  So -- and I will let you know, so we

02:09:05PM  11   did -- when we got the deficiency, originally noted that it

02:09:08PM  12   was probably a clerical error we had checked that she had

02:09:13PM  13   cancer twice.  So we have gone back and corrected that and

02:09:17PM  14   indicated she only was ever diagnosed once.  There is a long

02:09:21PM  15   list of treaters in that one diagnosis, but that's just all

02:09:24PM  16   her follow-on care from the 2009 diagnosis.

02:09:27PM  17            THE COURT:  Okay.  So you've already cleared --

02:09:27PM  18            MS. NOLTE:  I submitted that fact sheet --

02:09:30PM  19            THE COURT:  You've already amended the Plaintiff Fact

02:09:30PM  20   Sheet?

02:09:33PM  21            MS. NOLTE:  I'm sorry, Your Honor.

02:09:33PM  22            THE COURT:  Okay.  I'm going to give --

02:09:33PM  23            MS. NOLTE:  Yes, we submitted --

02:09:33PM  24            THE COURT:  -- seven days --

02:09:34PM  25            MS. NOLTE:  -- it on March 2nd.

| | | |
|---|---|---|
| 02:09:35PM | 1 | THE COURT:  Okay.  I'm going to give seven days to |
| 02:09:40PM | 2 | confirm compliance.  Thank you. |
| 02:09:41PM | 3 | Ms. Barbara Collins. |
| 02:09:43PM | 4 | MS. NOLTE:  Thank you, Your Honor. |
| 02:09:44PM | 5 | MR. BAEHR:  Two issues, one no-eyebrow photos and the |
| 02:09:50PM | 6 | second issue is the only before photo is from 12 years prior |
| 02:09:56PM | 7 | to Taxotere. |
| 02:09:56PM | 8 | THE COURT:  Okay.  Ms. Domer.  Ms. Domer, star six |
| 02:10:04PM | 9 | please.  Okay. |
| 02:10:14PM | 10 | MS. KREIDER:  I'll reach out to Ms. Domer. |
| 02:10:17PM | 11 | THE COURT:  Yeah, it could be something -- and that |
| 02:10:20PM | 12 | would be Donna Wigley too because that's also Cutter Law |
| 02:10:23PM | 13 | Firm.  I'll just circle those and come back. |
| 02:10:25PM | 14 | Okay.  And then we have Sharon Lewis, which is a |
| 02:10:28PM | 15 | Sanofi case. |
| 02:10:30PM | 16 | MR. BAEHR:  I'm sorry.  Did we -- |
| 02:10:32PM | 17 | MS. CALLSEN:  She didn't answer, so we're skipping |
| 02:10:34PM | 18 | and hopes she wakes up. |
| 02:10:37PM | 19 | MR. BAEHR:  Did we skip Donna Wigley though too?  Oh, |
| 02:10:40PM | 20 | same person.  I'm sorry.  My mistake. |
| 02:10:41PM | 21 | Sharon Lewis, this -- this is a case where the |
| 02:10:44PM | 22 | authorization doesn't include a signature.  It's a typed -- |
| 02:10:48PM | 23 | it's just the plaintiff's name typed and so we're asking for |
| 02:10:51PM | 24 | an actual ink signature for the authorization. |
| 02:10:57PM | 25 | THE COURT:  Okay.  Mr. Novasic, are you on the line? |

02:11:03PM  1          MR. NOVASIC:  Yes.  Yes, Your Honor.  Aaron Novasic

02:11:05PM  2     for the plaintiff.  Just for record, I am the attorney who is

02:11:12PM  3     covering this.  She is no longer at our firm, so I'm getting

02:11:18PM  4     up to date with everything.  According to our notes, on

02:11:20PM  5     January 7, 2022, we uploaded the completed signed

02:11:26PM  6     authorizations to CD Centrality -- MDL Centrality.

02:11:34PM  7          THE COURT:  And is it --

02:11:35PM  8          MR. NOVASIC:  And that document --

02:11:36PM  9          THE COURT:  And is it an actual signature or a typed?

02:11:40PM 10          MR. NOVASIC:  I'm looking at it right now, Judge.

02:11:42PM 11     It's an actual signature at the bottom of the pages.

02:11:44PM 12          THE COURT:  Okay.  I'm going to give seven days to

02:11:47PM 13     confirm compliance to the defendants.  And that was in

02:11:51PM 14     January you uploaded it?

02:11:54PM 15          MR. NOVASIC:  January 7th.  I also have a number if

02:11:57PM 16     that helps counsel.

02:11:59PM 17          THE COURT:  It does.

02:12:01PM 18          MR. NOVASIC:  It's 526178.

02:12:05PM 19          THE COURT:  Thank you.

02:12:06PM 20          MR. BAEHR:  Thank you.

02:12:06PM 21          THE COURT:  Okay.  What about Katrina Petkovic?

02:12:13PM 22          MR. BAEHR:  This is a no proof of use, no records

02:12:16PM 23     submitted at all.  The before photos are digital photos dated

02:12:22PM 24     2001.  We would just request metadata to confirm that dating

02:12:30PM 25     due to the nature of the photos.  Evidently, the quality in

02:12:33PM 1    the photos indicates that they probably weren't taken in

02:12:37PM 2    2001, so we're just asking for metadata.  And then no

02:12:41PM 3    present-day photos.

02:12:45PM 4         MR. NOVASIC:  Your Honor, again, I'm just reading

02:12:48PM 5    through the notes.  It looks like the previous attorney did

02:12:55PM 6    upload photographs to MDL Centrality on January 7, 2022,

02:13:01PM 7    again.  I don't have any -- I don't have a confirmation

02:13:06PM 8    number on that.  I have looked through the file.  It looks

02:13:10PM 9    like there were photos from 2001.  We also have photos from

02:13:15PM 10   2008.  I believe those were the ones that were uploaded.  If

02:13:22PM 11   that's not what counsel's looking for, I simply ask just for

02:13:26PM 12   30 days to get up to date because I'm taking -- I'm taking

02:13:30PM 13   over this file.

02:13:31PM 14        THE COURT:  I'm going to grant 30 days for you to get

02:13:35PM 15   up to date and you can contact Mr. Baehr if you're not

02:13:38PM 16   communicating as to what he's looking for.  Okay?  But I'll

02:13:42PM 17   give you 30 days to get up to date.

02:13:45PM 18        Okay.  Sue Chang?

02:13:47PM 19        MR. NOVASIC:  Thank you.  Judge.

02:13:49PM 20        MS. CUTTER:  I beg your pardon, Your Honor.  This is

02:13:52PM 21   Celine Cutter.  I was called for No. 18 and 19 in lieu of my

02:13:56PM 22   colleague, Ms. Domer.  I apologize I had an issue with my

02:14:00PM 23   technology here, but I am on the line and I have figured it

02:14:03PM 24   out if you would like to call those numbers.

02:14:05PM 25        THE COURT:  Okay.  Barbara Collins, Mr. Baehr.

| | |
|---|---|
| 02:14:08PM | 1 |
| 02:14:09PM | 2 |
| 02:14:10PM | 3 |
| 02:14:12PM | 4 |
| 02:14:16PM | 5 |
| 02:14:20PM | 6 |
| 02:14:22PM | 7 |
| 02:14:25PM | 8 |
| 02:14:30PM | 9 |
| 02:14:33PM | 10 |
| 02:14:34PM | 11 |
| 02:14:37PM | 12 |
| 02:14:39PM | 13 |
| 02:14:41PM | 14 |
| 02:14:47PM | 15 |
| 02:14:51PM | 16 |
| 02:14:53PM | 17 |
| 02:14:54PM | 18 |
| 02:15:00PM | 19 |
| 02:15:05PM | 20 |
| 02:15:07PM | 21 |
| 02:15:10PM | 22 |
| 02:15:12PM | 23 |
| 02:15:13PM | 24 |
| 02:15:16PM | 25 |

1   MR. BAEHR:  Yes.

2   MS. CUTTER:  Yes.  So for Ms. --

3   THE COURT:  Wait.  Let me hear what the objection is.

4   MR. BAEHR:  No eyebrow photos and the only before

5   photos are from 12 years before Taxotere.

6   THE COURT:  Okay.  Ms. Cutter.

7   MS. CUTTER:  So we have gotten some photos from

8   Ms. Collins, but we would like a brief extension to verify

9   the date.  But we do have new information that we think we

10   can cure with.

11   THE COURT:  Okay.  The Court is going to grant

12   15 days.  And what about Donna Wigley, Mr. Baehr?

13   MR. BAEHR:  This is no between photos.  We have

14   Taxotere treatment in 2008, subsequent chemo in 2014, so six

15   years.  And the only after photos or the first after photos

16   are from 2017.

17   THE COURT:  Ma'am?

18   MS. CUTTER:  For Ms. Wigley, she is a late cure.  She

19   has submitted photos from between her first and second

20   chemotherapy treatment.

21   THE COURT:  When did that cure take place?

22   MS. CUTTER:  I don't have that information in front

23   of me.  I apologize.

24   THE COURT:  All right.  I'm going to give defendants

25   seven days to confirm compliance.

02:15:19PM 1       Okay.  And then we can jump to Sue Chang.

02:15:22PM 2       MR. BAEHR:  We got a letter -- there was a letter

02:15:24PM 3  submitted on January 31st, stating that counsel had been

02:15:28PM 4  unable to contact a client.  We would request that this be

02:15:32PM 5  treated like a declaration of no contact.

02:15:34PM 6       THE COURT:  Okay.  I have Ms. Menzies.  Are you on

02:15:37PM 7  the line?

02:15:40PM 8       MS. MENZIES:  Yes, Your Honor.  Thank you.  We have

02:15:42PM 9  learned that she has passed away.  There was a question of

02:15:46PM 10 whether she had a second diagnosis of cancer and she did and

02:15:50PM 11 passed away from that.  So we are in the process of reaching

02:15:53PM 12 out to her husband to determine whether he wants to continue

02:15:56PM 13 to move forward.

02:15:57PM 14      THE COURT:  Court's going to grant --

02:15:59PM 15      MS. MENZIES:  If we can have a little bit --

02:16:01PM 16      THE COURT:  I'm going to grant 60 days to determine

02:16:03PM 17 if he wants to and for you to start the process of having him

02:16:09PM 18 named representative if he does.

02:16:12PM 19      MS. MENZIES:  And you said 60 days, Your Honor?

02:16:14PM 20      THE COURT:  60 days.  Now, if he decides he doesn't

02:16:17PM 21 want to pursue it, let us know sooner than that.

02:16:22PM 22      MS. MENZIES:  Yes, I will.  Thank you.

02:16:23PM 23      THE COURT:  Ms. Luwana Walker.  Mr. Baehr?

02:16:25PM 24      MR. BAEHR:  Yes, Your Honor.  We got a letter stating

02:16:27PM 25 that an amended PFS had been uploaded providing information,

02:16:32PM   1   actually stating that there was only one cancer diagnosis

02:16:35PM   2   which had been the issue.  We contacted Brown Greer.  There

02:16:39PM   3   was no amended PFS uploaded, so it's -- we would just say

02:16:45PM   4   that is still the issue, there's no information about a

02:16:50PM   5   second cancer diagnosis.

02:16:50PM   6            THE COURT:  Okay.

02:16:53PM   7            MS. MENZIES:  Your Honor, Karen Menzies again for the

02:16:56PM   8   plaintiff.  There was no second diagnosis which we advised

02:16:59PM   9   them of in January.  And then we looked back at it and the

02:17:06PM  10   PFS, he's right, it wasn't submitted and then we updated it

02:17:10PM  11   yesterday.  And so I don't know if it's just -- I don't know

02:17:11PM  12   when you guys looked last, but that one should be cured.  So

02:17:15PM  13   it shouldn't take us too long to confirm that.

02:17:18PM  14            THE COURT:  Court's going to grant seven days to

02:17:20PM  15   confirm compliance.

02:17:22PM  16            MS. MENZIES:  Thank you, Your Honor.

02:17:22PM  17            THE COURT:  Debra Lewis.  Mr. Baehr?

02:17:24PM  18            MR. BAEHR:  Yes.  This is one where we need details

02:17:26PM  19   for a second cancer diagnosis.

02:17:28PM  20            THE COURT:  All right.  Ms. Schneithorst, did I get

02:17:32PM  21   that right?

02:17:32PM  22            MS. SCHNEITHORST:  Yes.  Yes, Your Honor.

02:17:35PM  23            THE COURT:  Okay.  Ma'am?

02:17:39PM  24            MS. SCHNEITHORST:  So we actually amended this PFS on

02:17:42PM  25   February 9th and it's Document 526854 indicating that

02:17:49PM  1   Ms. Lewis did not have a second diagnosis of cancer.  We do

02:17:54PM  2   believe that this was a clerical error, which was corrected,

02:17:58PM  3   and did review her -- all her records again just to confirm

02:18:05PM  4   again and there's no second diagnosis.

02:18:08PM  5        THE COURT:  Okay.  Court's going to grant seven days

02:18:10PM  6   to confirm compliance.

02:18:14PM  7        Ruby Pratt?

02:18:14PM  8        MR. BAEHR:  This case has been rolled over several

02:18:16PM  9   times.  The plaintiff was deceased as of 2017.  The suggest

02:18:22PM  10  of death was filed in 2019.  It's been past I think waiting

02:18:26PM  11  on probate action for several hearings last in July of 2021.

02:18:31PM  12  Just asking for an update.

02:18:33PM  13       THE COURT:  Ms. Schneithorst?

02:18:35PM  14       MS. SCHNEITHORST:  Yes.  The -- Your Honor, we are

02:18:38PM  15  still waiting for the probate court.  Our understanding is

02:18:42PM  16  that they're still behind due to all the COVID issues, so we

02:18:47PM  17  have not received anything from them yet.

02:18:51PM  18       THE COURT:  Wow.  Has anybody followed up to see if

02:18:56PM  19  maybe it got filed and -- I mean, that's a long time.

02:19:03PM  20       MS. SCHNEITHORST:  I agree.

02:19:05PM  21       THE COURT:  Have you followed up with the clerk's

02:19:07PM  22  office to see if something was filed and for some reason you

02:19:10PM  23  weren't notified?  Could you --

02:19:14PM  24       MS. SCHNEITHORST:  I can double-check on that.  I do

02:19:17PM  25  believe it was followed up on.  We do -- I do have the case

02:19:23PM  **1**   number for the filing.  So I can again follow up with them

02:19:27PM  **2**   just to see --

02:19:28PM  **3**        THE COURT:  Would you do me a favor?  Would you

02:19:31PM  **4**   please just write a detailed letter as to what was filed when

02:19:36PM  **5**   and just so -- because it just sounds -- this is -- you know

02:19:43PM  **6**   and I think everything has been put off with COVID and people

02:19:46PM  **7**   have been out and it's been difficult so I'm just going to

02:19:49PM  **8**   leave it at that.  But perhaps a detailed letter to liaison

02:19:55PM  **9**   counsel as well as defense counsel outlining what has

02:19:59PM  **10**  happened, what is filed in the clerk's office, and the court

02:20:05PM  **11**  so that we can at least keep an eye on it.

02:20:10PM  **12**       MS. SCHNEITHORST:  Yes.  And would you like me to

02:20:11PM  **13**  submit anything documenting the filing with that letter?

02:20:19PM  **14**       THE COURT:  That might be nice, yeah, the petition

02:20:21PM  **15**  for probate would be.

02:20:26PM  **16**       MS. SCHNEITHORST:  Yes, I got that.

02:20:27PM  **17**       THE COURT:  I'm a Louisiana lawyer and so we have

02:20:29PM  **18**  strange names for all of those documents.  And so there are

02:20:33PM  **19**  occasions when I'm dealing with someone from any other state

02:20:37PM  **20**  and I just don't know what you call it.  We call it very

02:20:41PM  **21**  different things at times.  We'll leave it at that, but send

02:20:46PM  **22**  us your paperwork.

02:20:48PM  **23**       MS. SCHNEITHORST:  Okay.  I will do that.  And I'm

02:20:51PM  **24**  sorry, Your Honor.  What was the time frame on that?

02:20:55PM  **25**       THE COURT:  Why don't you see if you can get us

02:20:58PM   1   something within the next 15 days and if that runs into a

02:21:02PM   2   problem --

02:21:02PM   3          MS. SCHNEITHORST:  Okay.

02:21:02PM   4          THE COURT:  Let's get something within 15 days so

02:21:05PM   5   that we can all start following this because this is really a

02:21:09PM   6   rather long time for it to be just there.  Okay?

02:21:16PM   7          MS. SCHNEITHORST:  I agree.  We will get that.  Thank

02:21:18PM   8   you.

02:21:18PM   9          THE COURT:  Thank you very much.

02:21:20PM  10          Sheila Clark.

02:21:20PM  11          MR. BAEHR:  We need details for a second cancer

02:21:23PM  12   diagnosis.

02:21:23PM  13          THE COURT:  All right.  Mr. Goss, you on the line?

02:21:27PM  14          MR. GOSS:  Yes, Your Honor.  With regard --

02:21:33PM  15          THE COURT:  Second.

02:21:34PM  16          MR. GOSS:  With regard to -- go ahead.

02:21:36PM  17          THE COURT:  No, I want to know about the second

02:21:38PM  18   cancer diagnosis.

02:21:39PM  19          MR. GOSS:  On Ms. Clark, she is actually -- we have

02:21:42PM  20   learned after numerous correspondence to her were returned as

02:21:48PM  21   unresponsive, our investigators indicated that she has passed

02:21:51PM  22   away and we are in the process of getting in contact with

02:21:54PM  23   next of kin to determine if they'd like to proceed or not.

02:21:59PM  24   If the Court would allow 60 days, that would be great.  If we

02:22:03PM  25   find out prior to that that they do not want to proceed, we

02:22:06PM   1   will coordinate with counsel to dismiss the case.

02:22:10PM   2         THE COURT:  So ordered.  I'll grant 60 days.

02:22:15PM   3         Elois Traylor?

02:22:15PM   4         MR. BAEHR:  Same issue, details for a second cancer

02:22:19PM   5   diagnosis.

02:22:19PM   6         THE COURT:  Mr. Goss?

02:22:20PM   7         MR. GOSS:  Yeah, we had uploaded earlier this week

02:22:23PM   8   some pictures I.  Believe they were requesting pictures of in

02:22:26PM   9   between her diagnoses.  One diagnosis was in 2006; the other

02:22:32PM   10  was in 2010 or '11 period.  And I believe pictures from 2009

02:22:36PM   11  were recently uploaded.

02:22:38PM   12        THE COURT:  Okay.

02:22:39PM   13        MR. BAEHR:  I don't --

02:22:40PM   14        MR. GOSS:  And an amended fact sheet.

02:22:44PM   15        MR. BAEHR:  That was my comment.

02:22:46PM   16        THE COURT:  Okay.  Court's going to grant seven days

02:22:47PM   17  to confirm compliance.

02:22:52PM   18        And Leona Steward.

02:22:56PM   19        MR. BAEHR:  This is a rollover.  The issues are no

02:22:58PM   20  after photos or current photos of the eyebrows and eyelashes

02:23:05PM   21  and no authorizations for psychiatry, insurance, disability,

02:23:11PM   22  workers' comp.  We show no change since the last hearing, no

02:23:15PM   23  progress, no compliance.  So we would say they're already not

02:23:17PM   24  in compliance.

02:23:18PM   25        THE COURT:  Ms. Myers.

02:23:20PM  1          MS. MYERS:  Good afternoon, Your Honor.  I would like

02:23:22PM  2   to thank the court for the additional time given for this

02:23:24PM  3   case.  I was hoping that they would reach out before the

02:23:28PM  4   hearing, but unfortunately family members of deceased clients

02:23:32PM  5   are not as diligent in pursuing claims like this and we have

02:23:36PM  6   not been able to get the information alleged as deficient by

02:23:41PM  7   defendants.

02:23:42PM  8          THE COURT:  When did Ms. Steward die?

02:23:49PM  9          MS. MYERS:  We were notified last year, like right

02:23:52PM  10  before this hearing that she had passed away.

02:23:56PM  11         MR. BAEHR:  We have a suggestion of death filed on

02:24:00PM  12  December 14, 2021.

02:24:03PM  13         MS. MYERS:  Yeah.

02:24:07PM  14         THE COURT:  So Ms. Myers, what's the game plan?

02:24:14PM  15         MS. MYERS:  If we can get additional time to try to

02:24:16PM  16  get the -- because this is the same situation for the other

02:24:19PM  17  clients that's on the list today, to get the family members

02:24:24PM  18  more engaged in providing the information.  I know we're

02:24:27PM  19  probably not going to get obviously new updated photos

02:24:31PM  20  because they're deceased, but at least we could get -- you

02:24:33PM  21  know, I would hate to see them dismissed for psychiatric

02:24:38PM  22  records, authorizations.  So if we get a few additional days

02:24:42PM  23  to try to get them on board, that would be amazing.

02:24:48PM  24         MR. BAEHR:  Our position would be just, you know,

02:24:50PM  25  more than 60 days have already passed which is what is

```
02:24:54PM   1   ordered for the other cases that are coming to light here.
02:24:57PM   2   So it's -- we're kind of already past that point.
02:25:13PM   3        THE COURT:  This is part of my problem, Ms. Myers.
02:25:16PM   4   Both of these cases were filed some time ago in 2018 and so,
02:25:22PM   5   you know, prior to your clients' death, there was a time to
02:25:29PM   6   get these things together.  I'm sorry.  And the reason I ask
02:25:36PM   7   when is because I understand, you know, there is a time
02:25:42PM   8   period when people just can't seem to think, but we're now
02:25:47PM   9   three months after death and the cases have been pending for
02:25:53PM  10   almost four years or three and a half years before that.  I'm
02:25:56PM  11   going to dismiss with prejudice.
02:25:59PM  12        MS. MYERS:  Okay.
02:26:00PM  13        THE COURT:  Okay.  And is that the same thing for
02:26:02PM  14   Ms. Billie Washington?
02:26:04PM  15        MS. MYERS:  Yes, Your Honor.
02:26:05PM  16        THE COURT:  Okay.  That matter's dismissed with
02:26:08PM  17   prejudice for the reasons provided.
02:26:11PM  18        Okay.  The next two cases are dismissed; is that
02:26:16PM  19   correct?
02:26:17PM  20        MS. CALLSEN:  Those are late cures.
02:26:19PM  21        THE COURT:  Late cures.  Okay.  We have Deketa
02:26:23PM  22   Williams?
02:26:24PM  23        MS. CALLSEN:  That was dismissed.
02:26:25PM  24        THE COURT:  That one's dismissed.
02:26:27PM  25        MR. FRITZ:  Your Honor, actually -- Your Honor, I
```

| | | |
|---|---|---|
| 02:26:29PM | 1 | actually -- with Deketa Williams, this is Eric Fritz for |
| 02:26:35PM | 2 | plaintiff.  I submitted a no contact declaration, but we |
| 02:26:38PM | 3 | actually didn't want that case dismissed.  We'd request |
| 02:26:41PM | 4 | additional time to track her down because it appears like she |
| 02:26:45PM | 5 | changed her address, phone number, and e-mail but she is |
| 02:26:48PM | 6 | active on Facebook.  She didn't respond to a message.  But we |
| 02:26:51PM | 7 | just request 30 days to track her down through family and |
| 02:26:54PM | 8 | friends and Facebook. |
| 02:27:00PM | 9 | THE COURT:  Okay. |
| 02:27:06PM | 10 | MR. BAEHR:  Your Honor, we would just point out this |
| 02:27:09PM | 11 | was a 2017 filed case. |
| 02:27:11PM | 12 | THE COURT:  What's not -- what's missing from this |
| 02:27:16PM | 13 | one? |
| 02:27:17PM | 14 | MR. BAEHR:  It's a no second cancer diagnosis |
| 02:27:20PM | 15 | information, no information about that second cancer. |
| 02:27:24PM | 16 | THE COURT:  Okay.  Okay.  And just so everybody who |
| 02:27:30PM | 17 | is on the phone understands when you say declaration of no |
| 02:27:34PM | 18 | contact, that's intending to dismiss the case because you |
| 02:27:37PM | 19 | cannot contact your client and get the information.  So it's |
| 02:27:48PM | 20 | not -- and it's been pending. |
| 02:27:50PM | 21 | MS. MYERS:  I apologize.  That was my mistake. |
| 02:27:57PM | 22 | THE COURT:  I'm going to give you 15 days |
| 02:28:01PM | 23 | reconsideration of the prior dismissal.  I'm going to give |
| 02:28:05PM | 24 | 15 days.  And, listen, 15 days.  That's it.  No more. |
| 02:28:12PM | 25 | MR. FRITZ:  Okay.  Thank you, Your Honor. |

02:28:14PM   1          THE COURT:  And you can file your request to dismiss

02:28:17PM   2   at 16.

02:28:20PM   3          Okay.  Carisa Etheridge.

02:28:24PM   4          MR. BAEHR:  This is a between photos case.  We have

02:28:27PM   5   Taxotere treatment in 2009, second chemotherapy starting in

02:28:32PM   6   2012, and no after photos until the present day.

02:28:39PM   7          THE COURT:  Okay.  And this is --

02:28:41PM   8          MR. ROBERTSON:  Judge --

02:28:42PM   9          THE COURT:  -- Mr. Robertson.

02:28:44PM  10          MR. ROBERTSON:  Sorry.

02:28:44PM  11          THE COURT:  Okay.

02:28:45PM  12          MR. ROBERTSON:  Yes, Your Honor.  Sorry to -- yeah,

02:28:48PM  13   we did upload photographs on February 9, 2022, both of her

02:28:57PM  14   hair loss between the two treatments and her hair loss

02:29:01PM  15   following or her hair status following the second treatment.

02:29:07PM  16   So we think those photos have been uploaded.

02:29:10PM  17          THE COURT:  I'm going to grant seven days to confirm

02:29:12PM  18   compliance.  And the photographs you uploaded are between

02:29:17PM  19   2009 and 2012, correct?

02:29:21PM  20          MR. ROBERTSON:  Yes, Your Honor.

02:29:23PM  21          THE COURT:  Okay.

02:29:25PM  22          MR. ROBERTSON:  And we uploaded those on February --

02:29:28PM  23   yeah, February 9th of this year.

02:29:30PM  24          THE COURT:  Okay.  Dawn Harry.

02:29:34PM  25          MR. BAEHR:  No details about the additional cancer

| | | |
|---|---|---|
| 02:29:37PM | 1 | diagnosis. |
| 02:29:39PM | 2 | THE COURT:  Mr. Robertson? |
| 02:29:41PM | 3 | MR. ROBERTSON:  Judge, sorry again.  Yes.  We've not |
| 02:29:44PM | 4 | been able to contact her, although we have had contact with |
| 02:29:47PM | 5 | her as recent as last fall and I just ask for 30 days on her, |
| 02:29:52PM | 6 | and then we'll suffer the consequences if we can't get ahold |
| 02:29:55PM | 7 | of her. |
| 02:29:56PM | 8 | THE COURT:  I'm going to grant 30 days. |
| 02:29:59PM | 9 | Denise Westbrook. |
| 02:30:01PM | 10 | MR. BAEHR:  Only issue remaining is that there's no |
| 02:30:03PM | 11 | witness for the authorizations that have been submitted. |
| 02:30:11PM | 12 | MR. ROBERTSON:  Yes, Judge.  We did have contact with |
| 02:30:12PM | 13 | her in February and we're able to correct the other |
| 02:30:16PM | 14 | deficiencies the defendant pointed out.  We just have not |
| 02:30:20PM | 15 | received her authorizations yet.  I would ask for -- well, |
| 02:30:23PM | 16 | like he said, we do have the authorization, but just not |
| 02:30:26PM | 17 | witnessed.  We're trying to get those witnessed by her. |
| 02:30:29PM | 18 | THE COURT:  All right.  Court's going to grant |
| 02:30:31PM | 19 | 30 days. |
| 02:30:33PM | 20 | And then we're at Sara Davis. |
| 02:30:36PM | 21 | MS. CALLSEN:  Yes.  This is a photo issue and |
| 02:30:39PM | 22 | initially it was undated.  We did get dates on the photos |
| 02:30:43PM | 23 | that were submitted, but the most recent photo is 2018.  So |
| 02:30:46PM | 24 | we just need something more current than that. |
| 02:30:51PM | 25 | THE COURT:  And that's Ms. Colella? |

02:30:56PM 1      MS. CALLSEN:  Sarah Davis.

02:30:59PM 2      MS. COLELLA:  Yes, Your Honor.  So I have that we

02:31:02PM 3  uploaded recently the new pictures that were dated for before

02:31:08PM 4  and after.

02:31:10PM 5      MS. CALLSEN:  Correct.  But 2018 is the latest and we

02:31:13PM 6  just need something more current than that.

02:31:18PM 7      MS. COLELLA:  Okay.  Oh, I understand.  Okay.  Your

02:31:20PM 8  Honor, can I ask for an additional 16 days to get those

02:31:24PM 9  photos?

02:31:24PM 10      THE COURT:  I'll grant you 30.

02:31:27PM 11      MS. COLELLA:  I misunderstood.  Thank you so much.

02:31:29PM 12      THE COURT:  And next we have Viana Minor.

02:31:34PM 13      MR. BAEHR:  This one and the next one are both no CMO

02:31:37PM 14  12 cases.

02:31:39PM 15      THE COURT:  All right.  Is this a 12A or 12?

02:31:42PM 16      MR. BAEHR:  Sorry, 12A.

02:31:44PM 17      THE COURT:  I thought that's what we were putting off

02:31:46PM 18  until April?

02:31:47PM 19      MS. CALLSEN:  The CMO 12A issue that we're going to

02:31:50PM 20  address in April is more they have submitted CMO 12A but it's

02:31:55PM 21  insufficient for some reason.  This is they haven't even

02:31:58PM 22  started the process so that we can assess what -- the

02:32:03PM 23  sufficiency.

02:32:04PM 24      THE COURT:  Okay.  So this is Ms. Colella.

02:32:08PM 25      MS. COLELLA:  Yes.  The subpoena process has been

02:32:10PM   1   started and we issued the subpoena I think it was the end of

02:32:15PM   2   last week.

02:32:15PM   3          THE COURT:  Okay.  But do you understand that you

02:32:20PM   4   need to -- so they have not provided you what they've done?

02:32:24PM   5          MR. BAEHR:  Correct.

02:32:25PM   6          THE COURT:  Okay.  Ms. Colella, you can contact

02:32:31PM   7   Ms. Kreider and she can help you with it, but what we need is

02:32:35PM   8   the steps you've taken to identify product information.  And

02:32:40PM   9   so that's -- that's what we're looking for.  Okay?

02:32:46PM   10          MS. COLELLA:  Okay.  I'll get that.  Yes.

02:32:48PM   11          THE COURT:  Talk to Ms. Kreider if you have any

02:32:49PM   12   questions.

02:32:50PM   13          MS. COLELLA:  Perfect.  Thank you.  And I will --

02:32:52PM   14          THE COURT:  And that's for Viana Minor and Cynthia

02:32:57PM   15   Siddoway I'm going to give you 30 days for those two.

02:32:59PM   16          Now, let's talk about Beverly Allis.  Mr. Baehr.

02:33:03PM   17          MR. BAEHR:  Yes, Your Honor.  In this case, the only

02:33:05PM   18   before photo is from 1981, 31 years before Taxotere in 2012.

02:33:12PM   19   Plaintiff has submitted an affidavit stating that she doesn't

02:33:15PM   20   have any before photos from within 5 years of treatment, but

02:33:19PM   21   it doesn't state any reason for that.  So we do request

02:33:26PM   22   dismissal.  I understand as a general matter you have a rule

02:33:31PM   23   in this, but in this case, we think 31 years is kind of

02:33:36PM   24   beyond the pale.

02:33:38PM   25          THE COURT:  Ms. Colella, 31 years is pretty tough for

```
02:33:41PM   1    me --
02:33:42PM   2           MS. COLELLA:  Yes, Your Honor.  That was -- she had
02:33:46PM   3    to ask a friend for that picture.  So, yeah, I'm not entirely
02:33:51PM   4    sure what to do here.  She does not have the photographs,
02:33:55PM   5    except for that one she asked a friend for that she was
02:33:59PM   6    given.
02:33:59PM   7           THE COURT:  From 30 years prior?  She doesn't drive?
02:34:04PM   8           MS. COLELLA:  She said she -- I guess I can ask her
02:34:05PM   9    if she drives and we can use that license photo.
02:34:07PM  10           THE COURT:  All right.  I'm going to ask you to
02:34:09PM  11    contact Ms. Kreider and she can help you work through it.  We
02:34:12PM  12    have found photographs in all sorts of places, but she's
02:34:18PM  13    going to have to be able to provide something.
02:34:23PM  14           MS. COLELLA:  Okay.
02:34:23PM  15           THE COURT:  Thank you.
02:34:25PM  16           Gail Harris -- I'm going to give 30 days.
02:34:30PM  17           Okay.  Gail Harris?
02:34:32PM  18           MR. BAEHR:  The authorizations don't have a witness.
02:34:34PM  19           THE COURT:  Okay.  Ms. Colella?
02:34:39PM  20           MS. COLELLA:  Those were put into the mail on Friday
02:34:44PM  21    by the client with a witness on the authorization.  So we
02:34:46PM  22    should be able to upload that within the next couple of days.
02:34:50PM  23           THE COURT:  Okay.  I'm going to grant 30 days.
02:34:54PM  24           Bridget Hotobah-During?
02:34:54PM  25           MR. BAEHR:  Same issue.
```

02:34:56PM   1          THE COURT:  Same issue.  No witness.

02:35:00PM   2          MS. COLELLA:  That has been uploaded with a witness.

02:35:04PM   3          THE COURT:  Court's going to grant seven days to

02:35:06PM   4   confirm compliance.

02:35:08PM   5          Brenda Dixon is Mr. Weiman.  Are you on the line?

02:35:11PM   6          MS. CALLSEN:  That was dismissed, Your Honor.

02:35:13PM   7          THE COURT:  Okay.  This matter's dismissed.

02:35:18PM   8          Gertrude Siler?

02:35:18PM   9          MR. BAEHR:  This is similar to the one we just spoke

02:35:20PM  10   about.  The only before photo is from 1989.  They -- counsel

02:35:27PM  11   has not yet submitted an affidavit, so they would submit an

02:35:33PM  12   affidavit saying that the plaintiff wore wigs between 1989

02:35:38PM  13   and her treatment in 2008.  I'm not sure that they want to

02:35:42PM  14   submit that, but in any event, they haven't even done that.

02:35:45PM  15   So I would put it in a similar category to the previous one.

02:35:49PM  16          THE COURT:  Mr. Weiman.  You have to help me.

02:35:53PM  17          MR. WEIMAN:  Yes, Your Honor.  Your Honor, we would

02:35:54PM  18   be happy to move forward and submit an affidavit.

02:35:59PM  19   Unfortunately, Ms. Siler did regularly wear wigs during that

02:36:02PM  20   time period.  And, additionally, she lost a number of her

02:36:07PM  21   personal photographs during a move from Washington, DC, to

02:36:13PM  22   North Carolina several years after her chemotherapy.  And so

02:36:16PM  23   that's made it more and more difficult to try to locate

02:36:19PM  24   photographs during that time period.  She has made diligent

02:36:22PM  25   efforts herself and have contacted her two surviving adult

02:36:27PM   1   children, other remaining surviving family members to try to

02:36:32PM   2   track down other photographs, but has been unable to do so at

02:36:36PM   3   this time.

02:36:36PM   4        THE COURT:  Have you talked to Ms. Kreider?  You had

02:36:40PM   5   an opportunity to visit with him from the plaintiffs'

02:36:45PM   6   steering committee.  She's worked with people in helping to

02:36:48PM   7   locate photographs.  Sometimes it's a government ID.  It

02:36:55PM   8   could be a driver's license, work ID, library card.

02:36:59PM   9        MR. WEIMAN:  I don't believe -- I don't believe, Your

02:37:01PM  10   Honor, we've been in contact with Ms. Kreider, but I do know

02:37:05PM  11   we looked at government ID and different photographs like

02:37:09PM  12   that.  And, again, here the client was wearing wigs in all

02:37:13PM  13   the ones that we were able to locate which, you know, has

02:37:15PM  14   made it difficult.

02:37:19PM  15        MS. KREIDER:  I'm happy to reach out to counsel if he

02:37:21PM  16   thinks it would be helpful and --

02:37:24PM  17        THE COURT:  I'm going to do that.  I mean, we've got

02:37:27PM  18   to have something to show that --

02:37:33PM  19        MR. BAEHR:  Your Honor, we would just point out this

02:37:35PM  20   is a rollover, basically the same conversation took place

02:37:38PM  21   last time and they said they would submit an affidavit and

02:37:41PM  22   didn't.  So we would just ask for --

02:37:41PM  23        THE COURT:  So we don't have the affidavit either in

02:37:43PM  24   this case?

02:37:44PM  25        MR. BAEHR:  Correct.

02:37:44PM  1          THE COURT:  All right.  I'm going to ask him to work

02:37:46PM  2   with Ms. Kreider to have an affidavit and I'm just going to

02:37:50PM  3   have to assess these affidavits.  I'll grant 30 days.

02:37:56PM  4          All right.  Gloria Stocks.

02:37:59PM  5          MR. BAEHR:  This -- oh, this was dismissed.

02:38:03PM  6          THE COURT:  Okay.

02:38:04PM  7          MR. BAEHR:  This one was dismissed.

02:38:06PM  8          THE COURT:  All right.  Sevesta, how you say -- I

02:38:12PM  9   don't understand.  Sevesta Grady or Erica Morgan?

02:38:13PM  10         MR. BAEHR:  I believe this is one where the

02:38:16PM  11  substitute -- there's been a substitution, so the name in

02:38:20PM  12  parentheses is the substituted party.

02:38:23PM  13         THE COURT:  Okay.  Ms. Morgan is the substituted

02:38:24PM  14  party.  I'm assuming Ms. Grady is deceased?

02:38:30PM  15         MR. BAEHR:  Correct.

02:38:30PM  16         THE COURT:  Okay.  What's the --

02:38:31PM  17         MR. BAEHR:  This is a no between photos case and the

02:38:34PM  18  Taxotere treatment was 2012.  The second chemotherapy started

02:38:38PM  19  in 2015 and the only after photos are from after that date.

02:38:46PM  20         THE COURT:  Okay.  Mr. Abramson?

02:38:50PM  21         MR. ABRAMSON:  Hi, Your Honor, can you hear me?

02:38:52PM  22         THE COURT:  Yes, sir.

02:38:57PM  23         MR. ABRAMSON:  Great.  The next one and the next

02:38:59PM  24  three that we have, I'm happy to address them specifically,

02:39:01PM  25  but we have the same issue with all four of them, which is

02:39:03PM  1  we've been in touch with these clients, including Ms. Morgan,

02:39:07PM  2  as you know, of the deceased, looking for these in-between

02:39:11PM  3  photos and they talk to next of kin, they've gone back to

02:39:16PM  4  look at photo albums and we have lots of pictures of them,

02:39:22PM  5  but all of them similarly to some of the other people are all

02:39:24PM  6  with wigs and none of them are showing kind of the hair loss

02:39:28PM  7  that existed at that in between time.  So that's kind of

02:39:33PM  8  where we're at with this one and kind of the next three that

02:39:37PM  9  are on the list.

02:39:38PM  10      THE COURT:  I'm going to give you 30 days.  I need a

02:39:42PM  11  detailed affidavit.  And my thought is if you have a

02:39:45PM  12  situation where a client has had two chemotherapy treatments

02:39:50PM  13  and in between they wore wigs the entire time, I think we

02:39:53PM  14  need photographs of them with wig and explaining why, you

02:39:58PM  15  know, that tells us something if they wore wigs before, that

02:40:02PM  16  tells us -- if they wore wigs before they ever took

02:40:05PM  17  chemotherapy, that says something, but if before they did

02:40:08PM  18  not, they took chemotherapy and in between the two, they wore

02:40:11PM  19  wigs.  I mean, I think that's something that should be

02:40:14PM  20  considered in an affidavit.  And we'll just have to see --

02:40:18PM  21  I'm going to ask you to work with Ms. Kreider and that I'm

02:40:22PM  22  going to grant 30 days for Erica Morgan, Dana Hollins, and

02:40:33PM  23  Jada Norman.  Is it the same thing, Mr. Baehr, for all?

02:40:37PM  24      MR. ABRAMSON:  It is.

02:40:38PM  25      THE COURT:  Yes, sir.

02:40:40PM  **1**          MR. ABRAMSON:  There's also Ruth Simmons is the

02:40:43PM  **2**   fourth one.

02:40:44PM  **3**          THE COURT:  Is it the same issue, Mr. Baehr?

02:40:48PM  **4**          MR. BAEHR:  Yes.  Yes.

02:40:49PM  **5**          MR. ABRAMSON:  Yes.

02:40:50PM  **6**          THE COURT:  30 days.  But, you know, the affidavits

02:40:55PM  **7**   don't -- and I don't expect the affidavits to read the same

02:41:01PM  **8**   way.  Those need to be particularized and individualized for

02:41:08PM  **9**   each plaintiff because then we have to do an assessment.

02:41:12PM  **10**         MR. BAEHR:  And, Your Honor, we would --

02:41:14PM  **11**         MR. ABRAMSON:  Absolutely.

02:41:15PM  **12**         MR. BAEHR:  We would also request or suggest that in

02:41:18PM  **13**  cases where there are photos allegedly showing wigs --

02:41:22PM  **14**         THE COURT:  I want the photos with the wigs attached.

02:41:25PM  **15**  I thought I said that.

02:41:26PM  **16**         MR. BAEHR:  Oh, I'm sorry.  I'm sorry.

02:41:27PM  **17**         THE COURT:  Because I think what we have is photos

02:41:32PM  **18**  prior to any chemotherapy treatment with no wigs, that's one

02:41:34PM  **19**  thing, and then you take chemotherapy and you wear wigs all

02:41:38PM  **20**  the time, that kind of says something.  But I want whatever

02:41:41PM  **21**  photographs you have, even if it includes wigs.  Okay?

02:41:48PM  **22**         MR. ABRAMSON:  Thank you, Your Honor.

02:41:48PM  **23**         THE COURT:  Thank you.

02:41:49PM  **24**         All right.  Cassondra Durham?

02:41:54PM  **25**         MR. BAEHR:  We need details about a second cancer

```
02:41:57PM   1   diagnosis.
02:41:57PM   2          THE COURT:  Ms. Hanlon?  Bria Hanlon?  Star six.
02:42:13PM   3   Okay.  Is there anybody with Atkins & Markoff.
02:42:18PM   4          MS. KREIDER:  We'll reach out to Ms. Hanlon.
02:42:21PM   5          THE COURT:  Wait.  Is that it?
02:42:23PM   6          MS. HANLON:  Are you -- Bria Hanlon on here.  This is
02:42:28PM   7   one of the ones that was dismissed for no contact was filed.
02:42:33PM   8   They already read that name off.
02:42:35PM   9          THE COURT:  Cassondra Durham.  Okay.  I apologize.
02:42:39PM  10   Ada Locke.  Mr. Baehr?
02:42:43PM  11          MR. BAEHR:  In fact, if I could just say, I don't
02:42:46PM  12   think we had that case on the list, so I'm not sure that it
02:42:49PM  13   was, the Cassondra Durham already dismissed.  Oh, I'm sorry.
02:42:54PM  14   My apologies.
02:42:55PM  15          Okay.  Ada Locke is a between photos case, and the
02:43:04PM  16   dates of treatment are Taxotere and ending in 2003 and the
02:43:10PM  17   second cancer diagnosis in 2004.  So we recognize it's in our
02:43:18PM  18   window, but we would ask basically the same treatment as the
02:43:21PM  19   other between photos cases.
02:43:22PM  20          THE COURT:  Okay.  Ms. Hanlon?
02:43:26PM  21          MS. HANLON:  That's true, Your Honor.  Both
02:43:28PM  22   treatments were with Taxotere.  Ms. Locke has indicated that
02:43:31PM  23   she doesn't have any photos from that close time period.  We
02:43:35PM  24   can go back and try to see if she can find anything, but on
02:43:39PM  25   numerous occasions, she's indicated she doesn't have
```

02:43:41PM **1**    anything.  So we -- I mean, we can do the affidavit if that's

02:43:45PM **2**    the route we should go.

02:43:46PM **3**         THE COURT:  I think you need to do the affidavit.

02:43:50PM **4**         MS. HANLON:  Okay.

02:43:50PM **5**         THE COURT:  Thank you.  Gisselle Nero.

02:43:53PM **6**         MR. BAEHR:  This is also a between photos case,

02:43:56PM **7**    Taxotere in 2009, and second chemotherapy starting in 2012

02:44:01PM **8**    and the only after photos start in 2016.

02:44:06PM **9**         THE COURT:  Ms. Hanlon?

02:44:07PM **10**        MS. HANLON:  Same thing -- yes, same thing, Your

02:44:10PM **11**   Honor, Ms. Nero and the one about to be mentioned after

02:44:14PM **12**   Ms. Nero case has mentioned photos she has are with the wig

02:44:18PM **13**   on, so as you've mentioned prior in this hearing, we can, you

02:44:22PM **14**   know, submit the photos with the wigs on and do the affidavit

02:44:25PM **15**   for her case as well.

02:44:26PM **16**        THE COURT:  That sounds good.  Okay.

02:44:28PM **17**        MR. BAEHR:  And we would just request, Your Honor,

02:44:30PM **18**   where -- in all these affidavit cases, I think it would also

02:44:35PM **19**   be appropriate for there to be an explanation when there's a

02:44:39PM **20**   significant gap between the second treatment and then still

02:44:42PM **21**   the after photos aren't until many years after that, why

02:44:46PM **22**   there aren't photos in that time period either.

02:44:48PM **23**        THE COURT:  Okay.  I mean, I think the affidavit

02:44:52PM **24**   should be very particularized covering all issues.

02:44:58PM **25**        Okay.  Hellena Scott-Okafor.

02:45:04PM  **1**          MR. BAEHR:  Yes, Your Honor.  In this case, we have

02:45:08PM  **2**  requested -- the photos that have been provided as before

02:45:16PM  **3**  photos are digital photos.  We've requested additional

02:45:20PM  **4**  information, including metadata, on these photos and

02:45:24PM  **5**  plaintiffs in their deficiency response have stated that

02:45:27PM  **6**  they're waiting on plaintiff to provide that data.  Now,

02:45:30PM  **7**  that's -- they said that in their September 2021 deficiency

02:45:35PM  **8**  response.  I did see that yesterday.  They uploaded the

02:45:37PM  **9**  document from April 2021, which would have been many months

02:45:42PM  **10**  before that.  Purporting to address the identification of

02:45:50PM  **11**  people in the photo, but we would say that's not sufficient

02:45:53PM  **12**  and request the actual metadata from the photos to explain

02:45:58PM  **13**  when they were actually taken.

02:46:03PM  **14**          THE COURT:  Ms. Hanlon.

02:46:04PM  **15**          MS. HANLON:  Your Honor, my understanding -- yes, is

02:46:07PM  **16**  that we can't get the metadata, so we uploaded an e-mail from

02:46:13PM  **17**  our client where we sent the photos and had her, you know,

02:46:17PM  **18**  put into writing which person she is in the photo.  There's

02:46:20PM  **19**  two individuals in the photo, so she pointed out who

02:46:22PM  **20**  specifically she was.  I can ask if she has any additional

02:46:27PM  **21**  photos where she's alone if that would clear up the issue.  I

02:46:30PM  **22**  thought with her testimony stating who she is in the photo

02:46:34PM  **23**  would be sufficient.

02:46:35PM  **24**          MR. BAEHR:  We'll point out it's not testimony.  It's

02:46:38PM  **25**  not even a signed statement and the document actually shows

02:46:42PM   1   an exchange in which the photos are digital photos.  So we

02:46:48PM   2   know they're digital photos.  We're just asking for the

02:46:51PM   3   metadata that goes with them, which is something that

02:46:55PM   4   definitely something plaintiffs have to produce, under PTO 1

02:46:59PM   5   and 49 and 71A and Rule 34.  So we would just request that

02:47:02PM   6   maybe they have 30 days to provide the copies of the digital

02:47:06PM   7   photos with the original metadata.

02:47:10PM   8           THE COURT:  Ms. Hanlon?

02:47:12PM   9           MS. HANLON:  Yeah, we'll try to do that; 30 days

02:47:16PM  10   would work.

02:47:17PM  11           THE COURT:  Okay.  I'm going to grant 30 days.

02:47:20PM  12           Okay.  Tamara Turner?

02:47:24PM  13           MR. BAEHR:  No between photos, Taxotere treatment in

02:47:28PM  14   2010, and second chemotherapy in 2013.  And the only after

02:47:33PM  15   photos are from -- or the first after photos are 2018.

02:47:38PM  16           THE COURT:  Okay.  Ms. Hanlon?

02:47:41PM  17           MS. HANLON:  Yes, Your Honor.  This is the same we

02:47:44PM  18   were talking about under the Gisselle Nero as well.

02:47:47PM  19   Ms. Turner has indicated that all of her photos during that

02:47:49PM  20   time period -- during that in between time period she had a

02:47:52PM  21   wig on, so I just ask the Court we are allowed to submit an

02:47:58PM  22   affidavit in this case as well.

02:47:59PM  23           THE COURT:  Okay.  And, Ms. Hanlon, you should

02:48:01PM  24   include photographs from that in between period if she's

02:48:05PM  25   wearing a wig --

| | | |
|---|---|---|
| 02:48:07PM | 1 | MS. HANLON:  Yeah. |
| 02:48:07PM | 2 | THE COURT:  -- identifying that she is, indeed, in a |
| 02:48:10PM | 3 | wig. |
| 02:48:10PM | 4 | MS. HANLON:  Yes. |
| 02:48:10PM | 5 | THE COURT:  Okay.  I'm going to grant 30 days to get |
| 02:48:13PM | 6 | that prepared. |
| 02:48:14PM | 7 | MS. KREIDER:  Your Honor, we may have to backtrack |
| 02:48:16PM | 8 | before we go to the Brent Coon & Associates.  Number 42 and |
| 02:48:22PM | 9 | 44 were announced as dismissed, but we've got notice from |
| 02:48:27PM | 10 | counsel that that may not be the case and I think they're on |
| 02:48:31PM | 11 | the phone to address those two cases. |
| 02:48:35PM | 12 | MR. WEIMAN:  Yes, Your Honor -- |
| 02:48:35PM | 13 | THE COURT:  Brenda Dixon. |
| 02:48:38PM | 14 | MR. WEIMAN:  -- this is Blake Weiman from the law |
| 02:48:45PM | 15 | firm Zoll & Kranz. |
| 02:48:45PM | 16 | THE COURT:  Hold on a second.  They were -- that's |
| 02:48:48PM | 17 | No. 42, Brenda Dixon, which list was she on. |
| 02:48:53PM | 18 | MS. KREIDER:  I don't think she was on a list. |
| 02:48:54PM | 19 | THE COURT:  Well, how did we get dismissed? |
| 02:48:57PM | 20 | MS. CALLSEN:  Is she an addition to the no contact |
| 02:49:00PM | 21 | list? |
| 02:49:00PM | 22 | THE COURT:  No. |
| 02:49:00PM | 23 | MS. ROBINSON:  She's not pulling up either. |
| 02:49:03PM | 24 | MS. CALLSEN:  I had her written down as dismissed |
| 02:49:06PM | 25 | too.  So I don't know why. |

02:49:07PM 1          THE COURT:  Okay.  Let's go to No. 42, Ms. Dixon, no

02:49:12PM 2     PTO 71A.

02:49:16PM 3          MR. BAEHR:  Yes, Your Honor.  That is accurate and we

02:49:20PM 4     also have that the plaintiff was filed -- or deceased in

02:49:26PM 5     March 2020 and this case is a rollover.  She was deceased in

02:49:33PM 6     March 2020.  They filed a suggestion of death in December,

02:49:36PM 7     but we don't have a substituted party in addition to the no

02:49:39PM 8     71A --

02:49:41PM 9          THE COURT:  71A is your --

02:49:43PM 10         MR. BAEHR:  It's the ESI.

02:49:45PM 11         THE COURT:  All right.  And I have on the phone --

02:49:47PM 12    let me look up on my list here -- Mr. Weiman.  Sir?

02:49:56PM 13         MR. WEIMAN:  Yes, that's correct, Your Honor.  We

02:50:00PM 14    filed the notice and suggestion of death back in December,

02:50:03PM 15    and so through -- pursuant to Rule 25, we have through

02:50:08PM 16    tomorrow to, you know, get that settled.  So there's

02:50:16PM 17    currently a local probate confirm that's involved with the

02:50:20PM 18    case.  Unfortunately, we don't yet have the letters of

02:50:24PM 19    authority authorizing Ms. Dixon's next of kin to sign the PTO

02:50:29PM 20    71A form.  But we will be filing today a motion for an

02:50:32PM 21    extension of time to substitute the parties and would just

02:50:37PM 22    ask the Court for additional time to produce that PTO 71A

02:50:42PM 23    form once the representative is appointed.

02:50:46PM 24         THE COURT:  Okay.  The Court's going to grant an

02:50:49PM 25    additional 30 days.

| | |
|---|---|
| 02:50:55PM | **1** |
| 02:50:56PM | **2** |
| 02:51:00PM | **3** |
| 02:51:04PM | **4** |
| 02:51:10PM | **5** |
| 02:51:13PM | **6** |
| 02:51:17PM | **7** |
| 02:51:20PM | **8** |
| 02:51:23PM | **9** |
| 02:51:24PM | **10** |
| 02:51:28PM | **11** |
| 02:51:29PM | **12** |
| 02:51:34PM | **13** |
| 02:51:38PM | **14** |
| 02:51:43PM | **15** |
| 02:51:49PM | **16** |
| 02:51:53PM | **17** |
| 02:51:57PM | **18** |
| 02:52:01PM | **19** |
| 02:52:06PM | **20** |
| 02:52:06PM | **21** |
| 02:52:11PM | **22** |
| 02:52:12PM | **23** |
| 02:52:14PM | **24** |
| 02:52:16PM | **25** |

MR. WEIMAN:  Thank you, Your Honor.

THE COURT:  Okay.  And Gloria Stocks.

MR. BAEHR:  This is another rollover.  It was stated at the December 2015 hearing that it was a late cure, but it was -- we were not able to find any evidence of a cure, nor has there been anything done since December 15th.

THE COURT:  All right.  So this is just a psychiatric authorization is not dated, correct?

MR. BAEHR:  Yes.

THE COURT:  All right.  Mr. Weiman?

MR. WEIMAN:  Yes, Your Honor.  The delay here is we've been trying to contact the client and we're unable. Unfortunately, when we did, we found out that she now was deceased and that an estate was not open.  We've been in contact with her husband opening an estate and continuing with a claim.  He initially did not want to, but has changed his mind.  So our plan is to file the notice and suggestion of death and just ask to produce the new psych auth consistent with the time under Rule 25, substitute the parties.

THE COURT:  I'm going to grant 60 days to substitute. Okay.  Thank you.

All right.  Now where are we?

MR. BAEHR:  I believe we're --

MR. WEIMAN:  Thank you.

02:52:16PM  **1**          THE COURT:  We're on No. 54?

02:52:19PM  **2**          MR. BAEHR:  54.  Lisa Batton is just a case where we

02:52:26PM  **3**  need details about a second cancer diagnosis.

02:52:32PM  **4**          THE COURT:  Okay.  Mr. Newell?

02:52:34PM  **5**          MR. NEWELL:  Yes, Your Honor.  Ms. Batton is

02:52:39PM  **6**  deceased.  Her son is over the estate.  I spoke to him

02:52:46PM  **7**  yesterday.  He's said he was probably the best person to have

02:52:50PM  **8**  knowledge about his mother's prior treatment, but he really

02:52:55PM  **9**  didn't have very much.  Her second cancer, she didn't even

02:52:59PM  **10**  tell him about until the very end.  But we're trying to get

02:53:05PM  **11**  photos from that time frame.  He said he was going to

02:53:08PM  **12**  download everything off her social media and give them to us

02:53:12PM  **13**  so we can try to produce it.

02:53:14PM  **14**          THE COURT:  Okay.  I'm going to grant 30 days to get

02:53:16PM  **15**  that done, but do you have the records as to the second

02:53:22PM  **16**  diagnosis and any treatment or lack thereof?

02:53:26PM  **17**          MR. NEWELL:  I'm not even sure -- I'm not even sure

02:53:29PM  **18**  we know where the second treatment was.  He said that when

02:53:31PM  **19**  she passed away he was forced to get out of the house and

02:53:36PM  **20**  sell it very quickly and lost the records.  And, again, he

02:53:40PM  **21**  didn't even have knowledge that she was being treated for

02:53:44PM  **22**  cancer.  But I will make another run at that.

02:53:46PM  **23**          THE COURT:  Okay.

02:53:47PM  **24**          MS. KREIDER:  Your Honor, I'm in a similar

02:53:49PM  **25**  circumstance in the first case we discussed on the list today

02:53:52PM   1   and I used -- if there's a facility listed on the death

02:53:57PM   2   certificate, that may be where they received last treatment

02:54:01PM   3   or maybe it says there was no treatment provided or, you

02:54:03PM   4   know, when the diagnosis -- the second diagnosis was and that

02:54:07PM   5   may be something to look at for where you can request

02:54:11PM   6   records.

02:54:11PM   7          THE COURT:  Okay.  Thank you.

02:54:15PM   8          MR. NEWELL:  Thank you.

02:54:16PM   9          THE COURT:  All right.  Mr. Newell, did you hear

02:54:18PM  10   Ms. Kreider?

02:54:20PM  11          MR. NEWELL:  I did.  I'll take a look at that death

02:54:23PM  12   certificate and see if that's helpful.

02:54:24PM  13          THE COURT:  Okay.  And if you need any help, you

02:54:26PM  14   should feel free to call her.

02:54:29PM  15          Okay.  Let's see.  Cheryl Poindexter.

02:54:36PM  16          MR. BAEHR:  We need information about an additional

02:54:39PM  17   cancer diagnosis.

02:54:40PM  18          THE COURT:  Okay.  Mr. Newell?

02:54:41PM  19          MR. NEWELL:  Similarly, Ms. Poindexter is deceased.

02:54:45PM  20   Her husband indicated that he wanted to withdraw from the

02:54:49PM  21   case, but never signed off on our letter allowing us to

02:54:54PM  22   withdraw.  He hasn't provided a death certificate or any

02:54:57PM  23   other information relevant information related to the claim.

02:55:00PM  24          THE COURT:  Let me ask this question, Mr. Newell.

02:55:02PM  25   When's the last time that you spoke to Ms. Poindexter's

02:55:07PM **1**  husband?

02:55:09PM **2**      MR. NEWELL:  We sent a letter to him asking him to

02:55:11PM **3**  sign saying that we could dismiss on mid-January.  I think

02:55:17PM **4**  we've talked -- tried to reach out to him by phone since

02:55:21PM **5**  then, but haven't had any success.  I'd ask that we be able

02:55:26PM **6**  to send him one more letter saying the court's going to

02:55:30PM **7**  dismiss his case if he doesn't do something.

02:55:32PM **8**      THE COURT:  I'm going to dismiss his case in 15 days

02:55:35PM **9**  unless we hear from him.

02:55:38PM **10**      MR. WEIMAN:  Okay.  Thank you.

02:55:39PM **11**      THE COURT:  Okay.  Rita Vasquez.

02:55:43PM **12**      MR. BAEHR:  It's the shell PFS.  It's 100 percent

02:55:47PM **13**  blank for any cancer treatment.

02:55:49PM **14**      THE COURT:  Mr. Newell.

02:55:50PM **15**      MR. NEWELL:  If you look at her file, you can see it

02:55:57PM **16**  was a recently filed case.  She's a Spanish speaker and we've

02:56:01PM **17**  had trouble communicating with her.  We were recently able to

02:56:06PM **18**  get a copy of her medical records and it seems to indicate

02:56:12PM **19**  initially that she did not even take Taxotere; she took

02:56:16PM **20**  Taxol.  But I'm having them reviewed by a medical reviewer

02:56:19PM **21**  just to confirm that before we look to dismiss the case.

02:56:26PM **22**      THE COURT:  You know, Mr. Newell, I think this one's

02:56:29PM **23**  dismissed.  What we have is a ship, you know, it was filed in

02:56:37PM **24**  June of last year and we -- the records you have don't even

02:56:43PM **25**  indicate the treatment, so this matter's dismissed.

02:56:47PM    **1**        Barbara Weeks.

02:56:49PM    **2**        MR. BAEHR:  We need information for a second cancer

02:56:53PM    **3** diagnosis.

02:56:54PM    **4**        THE COURT:  Okay.  Mr. Newell.

02:56:57PM    **5**        MR. NEWELL:  Also another client who is deceased;

02:57:00PM    **6** also another client whose husband indicated he did not want

02:57:05PM    **7** to continue, but didn't sign and return our letter allowing

02:57:10PM    **8** us to dismiss the claim.

02:57:12PM    **9**        THE COURT:  I'm going to grant 15 days and then it

02:57:14PM   **10** will be dismissed with prejudice.  Jennifer Whitaker?

02:57:19PM   **11**        MR. BAEHR:  We need complete information about second

02:57:21PM   **12** cancer diagnosis.  All we have is a date and type.  Or sorry.

02:57:27PM   **13** Yeah, date and type, but we don't know about the treatment.

02:57:29PM   **14**        THE COURT:  I'm sorry.  You have the date and type?

02:57:33PM   **15**        MR. BAEHR:  I'm sorry.  We have a date of a second

02:57:35PM   **16** cancer diagnosis and the type of the cancer, thyroid cancer,

02:57:39PM   **17** but we don't know what type of treatment was received, so we

02:57:42PM   **18** need an amended PFS that provides those details.

02:57:49PM   **19**        THE COURT:  Mr. Newell?

02:57:51PM   **20**        MR. NEWELL:  We provided -- we provided an updated

02:57:53PM   **21** PFS for earlier this year along with photos from the relevant

02:58:01PM   **22** time period.  On January 21st, Hospira filed their defense,

02:58:11PM   **23** their DFS, so we thought this one was cured as the -- but

02:58:20PM   **24** taking into account our revised fact sheet, they still think

02:58:25PM   **25** we need to revise it another time?  I just want to clarify.

02:58:28PM  1      MR. BAEHR:  So we have taken into account the January

02:58:31PM  2  submission and think that it is still deficient.  And also

02:58:35PM  3  just to point out that the filing of a DFS, if it took place

02:58:39PM  4  in this case, wouldn't indicate --

02:58:41PM  5      THE COURT:  Well, what's actually missing?  What

02:58:44PM  6  exactly do you need, Mr. Baehr?

02:58:45PM  7      MR. BAEHR:  The type of treatment that was used

02:58:49PM  8  in the second -- for the second cancer.

02:58:50PM  9      THE COURT:  Okay.  Did you hear that, Mr. Newell?

02:58:53PM 10      MR. NEWELL:  I did.

02:58:55PM 11      THE COURT:  And she had a second cancer diagnosis?

02:59:00PM 12      MR. NEWELL:  Yes, thyroid.

02:59:02PM 13      THE COURT:  Okay.  And are you telling me that you

02:59:05PM 14  filed information records that indicate what was -- what the

02:59:10PM 15  treatment was that she received?

02:59:13PM 16      MR. NEWELL:  We filed updated information related to

02:59:16PM 17  the second cancer.  Specifically, the diagnosis.  We weren't

02:59:25PM 18  exactly sure what the issue was after we tried to cure it

02:59:30PM 19  earlier this year.

02:59:31PM 20      THE COURT:  Well, the issue is what treatment did she

02:59:34PM 21  receive, because if she received -- there's a question as to

02:59:36PM 22  causation in all of these cases, and if she received no

02:59:40PM 23  chemotherapy, that says one thing.  If she elected to not

02:59:43PM 24  receive any treatment, that's -- I mean, there's her injury

02:59:50PM 25  -- purported injury is -- we have to consider causation, so

02:59:55PM   **1**   there's a concern as to what happened with the second

02:59:59PM   **2**   diagnosis.  And so I'm going to give you 30 days to cure

03:00:02PM   **3**   that.  Okay?

03:00:10PM   **4**           Thank you.

03:00:11PM   **5**           All right.  And that is -- then we go into Carla

03:00:15PM   **6**   Blades.

03:00:16PM   **7**           MS. KREIDER:  Correct and --

03:00:16PM   **8**           THE COURT:  But I think we should deal with those

03:00:19PM   **9**   that are the late cures at this point.

03:00:21PM   **10**           MS. CALLSEN:  You want to deal with the late cures?

03:00:23PM   **11**           THE COURT:  Yes.

03:00:25PM   **12**           MS. CALLSEN:  That's fine.

03:00:25PM   **13**           THE COURT:  Let's go through those please.  And that

03:00:27PM   **14**   is -- I believe that is Judy Williams.

03:00:31PM   **15**           MS. CALLSEN:  Yes, the first two cases were late

03:00:34PM   **16**   cures.

03:00:35PM   **17**           THE COURT:  Okay.  And Michelle Carlisle.  And that

03:00:37PM   **18**   should be Mr. Wilson from Cox Cox --

03:00:41PM   **19**           MR. WILSON:  Yes, Your Honor.

03:00:41PM   **20**           THE COURT:  And that's been cured as I appreciate it,

03:00:43PM   **21**   but it was late.  I'm going to grant seven days for the

03:00:49PM   **22**   defendants to confirm compliance.  Okay?

03:00:52PM   **23**           MR. WILSON:  Okay.

03:00:53PM   **24**           THE COURT:  Thank you.

03:00:56PM   **25**           MR. WILSON:  All right.  Thank you very much.

| | | |
|---|---|---|
| 03:00:57PM | 1 | THE COURT:  All right.  Michelle Carlisle, that's -- |
| 03:01:02PM | 2 | Erin Wood should be on the line.  And that was Ms. Carlisle. |
| 03:01:07PM | 3 | Was that a late cure? |
| 03:01:09PM | 4 | MS. WOOD:  Good afternoon, Your Honor.  This is Erin |
| 03:01:12PM | 5 | Wood on behalf of plaintiff, Michelle Carlisle.  Yes, it was |
| 03:01:16PM | 6 | a late cure.  We believe we provided all materials, |
| 03:01:20PM | 7 | responsive necessary materials for compliance at this time. |
| 03:01:24PM | 8 | THE COURT:  Okay.  Court's going to grant seven days |
| 03:01:25PM | 9 | to confirm compliance.  And do we have -- is the next one, |
| 03:01:33PM | 10 | No. 30, on the list, Era Lee Caldwell; is that correct? |
| 03:01:40PM | 11 | MS. CALLSEN:  That's who I have. |
| 03:01:41PM | 12 | THE COURT:  And that's Mr. Fritz again? |
| 03:01:47PM | 13 | MR. FRITZ:  Yes, this is Eric Fritz and we have the |
| 03:01:49PM | 14 | plaintiffs.  Yes, this was a late cure. |
| 03:01:52PM | 15 | THE COURT:  Okay.  Court's going to grant seven days |
| 03:01:55PM | 16 | to confirm compliance.  And don't get off the phone, |
| 03:02:00PM | 17 | Mr. Fritz.  Deborah Luten-Beasley; is that a late cure? |
| 03:02:09PM | 18 | MR. BAEHR:  Yes, this is another late cure, Your |
| 03:02:12PM | 19 | Honor. |
| 03:02:12PM | 20 | THE COURT:  Okay.  Court's going to grant seven days |
| 03:02:15PM | 21 | to cure compliance. |
| 03:02:17PM | 22 | Okay.  We have any others before we get to the Finson |
| 03:02:23PM | 23 | Law Firm? |
| 03:02:24PM | 24 | MR. BAEHR:  We don't. |
| 03:02:24PM | 25 | THE COURT:  And Bachus & Schanker. |

03:02:27PM 1          MR. BAEHR:  Yeah, we don't --

03:02:29PM 2          THE COURT:  Unless anybody wants to stay on this, no

03:02:32PM 3   need unless you're with the Finson Law Firm or Bachus &

03:02:37PM 4   Schanker.

03:02:37PM 5          Wait.  What about Lowe Law Group.

03:02:37PM 6          MS. KREIDER:  Yes, Lowe Law Group.

03:02:44PM 7          THE COURT:  Excuse me.

03:02:48PM 8          MR. BUTTARS:  Your Honor, could I speak to the Debra

03:02:51PM 9   Bunnell case?

03:02:51PM 10         THE COURT:  Which one is that.

03:02:53PM 11         MS. KREIDER:  That's No. 66.  The Lowe Law Group is

03:03:01PM 12  in between Finson Law Firm and Bachus.

03:03:01PM 13         THE COURT:  Yes, sir.  Mr. Buttars.  Debra Bunnell.

03:03:07PM 14         MR. BUTTARS:  Yes.  Thank you, Your Honor.

03:03:10PM 15         THE COURT:  Okay.  What's the noncompliance category,

03:03:12PM 16  Mr. Baehr?

03:03:13PM 17         MR. BAEHR:  The photos, no between photos.

03:03:16PM 18         THE COURT:  Between the two cancer treatments?

03:03:19PM 19         MR. BAEHR:  Yes, and that's 2006 to 2014 is the

03:03:21PM 20  range.

03:03:22PM 21         THE COURT:  Okay.  Mr. Buttars?

03:03:26PM 22         MR. BUTTARS:  Yes, Your Honor.  So the plaintiff has

03:03:28PM 23  submitted three photos from 2015 and '16 and recently six

03:03:36PM 24  recent current photos.  She has indicated that she has looked

03:03:41PM 25  through her files and talked with family and friends and has

03:03:44PM  1   not been able to obtain any of those pictures in that time

03:03:50PM  2   frame.  She recently said I don't have photos.  It was part

03:03:53PM  3   of my life.  I didn't want pictures.

03:03:57PM  4        THE COURT:  So she has no photographs for an

03:04:08PM  5   eight-year period?

03:04:09PM  6        MR. BUTTARS:  That's what she said.

03:04:12PM  7        THE COURT:  Okay.  Have you checked government IDs,

03:04:16PM  8   driver's license, work IDs, anything like that?

03:04:22PM  9        MR. BUTTARS:  I believe we have checked all of those

03:04:24PM  10  different avenues, Your Honor, and I'm happy to check with

03:04:27PM  11  her again and see and work through all of those.  But my

03:04:31PM  12  understanding is she has checked those.

03:04:35PM  13       THE COURT:  Okay.  And she did receive chemotherapy

03:04:39PM  14  in the second -- after the second diagnosis?

03:04:43PM  15       MR. BUTTARS:  She received chemotherapy, but not

03:04:45PM  16  Taxotere chemotherapy.

03:04:47PM  17       THE COURT:  Okay.  All right.  What I'm going to

03:04:50PM  18  request is that we get a detailed affidavit and you can work

03:04:56PM  19  with Ms. Kreider on that.  And it's got to be very detailed,

03:05:02PM  20  very particularized as to why there are no photographs and

03:05:08PM  21  what steps she has taken to uncover photographs.  Okay?

03:05:16PM  22       MR. BUTTARS:  Thank you, Your Honor.

03:05:17PM  23       THE COURT:  And you got 30 days.

03:05:19PM  24       Okay.

03:05:20PM  25       MR. BUTTARS:  Thank you.

03:05:28PM  1          Let's talk with the Finson law firm.

03:05:31PM  2          MS. CALLSEN:  Yes, the Finson Law Group, most of

03:05:34PM  3     the -- there's a couple of the normal deficiencies, shall we

03:05:38PM  4     say, that Mr. Baehr can handle, but most of the deficiencies

03:05:42PM  5     involve health insurance form, signature issues.  These were

03:05:48PM  6     covered -- we had copy and paste from the PFSs in their

03:05:55PM  7     December 13th letter that was submitted to the court and so

03:05:58PM  8     these were the signature issues identified in there where

03:06:02PM  9     they just appeared to be copy and paste.  We said what the

03:06:07PM  10    deficiency was.  They then copied over the old signature,

03:06:10PM  11    wrote in a new date, and just submitted the same one again.

03:06:13PM  12         I mean, there are different variations of that, but,

03:06:16PM  13    you know, again, Your Honor, you very well know the signature

03:06:20PM  14    issue and we did look careful at these and we only identified

03:06:25PM  15    the ones that concerned us that were not legitimate.  And

03:06:28PM  16    that's the ones that are on this list.  So that covers, you

03:06:33PM  17    know, 59, 60, 61, 63, and 65.

03:06:45PM  18         THE COURT:  And I have Mr. Finson.  Are you on the

03:06:48PM  19    line?

03:06:49PM  20         MR. FINSON:  Yes, I am.  Can you hear me?

03:06:51PM  21         THE COURT:  Yes, sir.

03:06:54PM  22         MR. FINSON:  Okay.  You want me to respond now or

03:06:57PM  23    wait until the individual cases are called?  It's up to you,

03:06:57PM  24    Judge.

03:07:01PM  25         THE COURT:  I'm sorry.  I'm having trouble.

03:07:01PM  1        MS. CALLSEN:  He said he would respond now or when

03:07:03PM  2   the individual cases were called.

03:07:06PM  3        MR. FINSON:  I'm on the phone.  Should I try the

03:07:08PM  4   phone?  Is that better or is that okay?

03:07:11PM  5        THE COURT:  I'm just having difficulty with all of

03:07:13PM  6   these today.  I'm really -- and I don't know if it's -- I

03:07:16PM  7   think it has to be on my end because it seems like it's

03:07:21PM  8   everybody to be honest.

03:07:23PM  9        Okay.  Let's try this, Mr. Finson.  And I think we

03:07:27PM  10  can talk about No. 59 through 63, which is Carla Blades,

03:07:34PM  11  Patricia Bramblett, Elizabeth Chaisson-Ricker, Mary Allyn

03:07:40PM  12  Dexter, and Jane George together.  And what looks like -- it

03:07:49PM  13  looks like these are copied and then someone else provides a

03:07:57PM  14  signature after.  And I'm not a handwriting expert, but they

03:08:04PM  15  just seem very, very problematic.  So maybe you can speak to

03:08:12PM  16  this.

03:08:14PM  17       MR. FINSON:  I'd love to.  None of these -- none of

03:08:17PM  18  these alleged issues came from our firm.  These were things

03:08:21PM  19  we sent to the client and they returned them to us.  We knew

03:08:25PM  20  better than to hex the court's -- well, argue to the court

03:08:31PM  21  about what we were supposed to do.  So I'm telling you now,

03:08:36PM  22  Judge, we have -- we have tried our best to comply, but if

03:08:39PM  23  anything looks like we did something wrong, we did not.

03:08:43PM  24       Let me give you an example.  In the Jane George case,

03:08:46PM  25  they seem to think that Karen Finson, my wife, signed these

03:08:51PM **1** as a witness.  No.  It was another Karen, an acquaintance of

03:08:56PM **2** Ms. George.  So that's totally incorrect.  I mean, if there's

03:08:58PM **3** something the court wants me to do to prove to you these

03:09:01PM **4** things, I would be happy to do that or if the courts wants me

03:09:05PM **5** to get whole new authorizations, as we did in the 60-some odd

03:09:09PM **6** cases we did, we'll do that.  It's just that it's unfair to

03:09:12PM **7** say that we did anything wrong when, in fact, we did not.

03:09:18PM **8**          And by the way as far as the cases are concerned, we

03:09:21PM **9** uploaded new documents as we -- within the past week.

03:09:25PM **10** They're late cures, but we loaded them in Bramblett, in

03:09:30PM **11** Dexter, in Blades, in Ricker, and Manley too.  So I would ask

03:09:39PM **12** that the defendants look at that and see whether or not these

03:09:42PM **13** are substantially cured.

03:09:44PM **14**          MS. CALLSEN:  So the new documents were replacements

03:09:46PM **15** for the signature issues as we pointed out in the

03:09:49PM **16** authorizations?

03:09:51PM **17**          MR. FINSON:  I believe that's exactly what happened.

03:09:53PM **18** But I wanted to explain what we did so we didn't incur the

03:09:59PM **19** wrath of the judge, which I don't want to do, of course,

03:10:02PM **20** obviously.

03:10:08PM **21**          MS. CALLSEN:  I mean, we're willing to, you know,

03:10:11PM **22** obviously review the ones that were uploaded and confirm

03:10:13PM **23** whether they look like legitimate signatures.  But, I mean,

03:10:20PM **24** it doesn't -- he hasn't -- you know, the Carla Blades, I

03:10:25PM **25** mean, that's still an issue.  You know, we had concerns with

03:10:29PM  1   No. 61, the Chaisson-Ricker one, and then also the last one,

03:10:36PM  2   the Towanda Payton one as well, issues with her signatures

03:10:42PM  3   and from what I can understand that we're not -- these were

03:10:45PM  4   not -- they were not new documentation uploaded on those

03:10:48PM  5   three.

03:10:50PM  6           THE COURT:  Which ones were not?

03:10:52PM  7           MR. FINSON:  Your Honor, no.  Our position is they

03:10:55PM  8   are absolutely new and I would ask that they take a look at

03:11:00PM  9   them, and if you want to meet and confer on this, I have no

03:11:04PM  10  problem at all.  I just want to let you know, Judge, we've

03:11:07PM  11  been diligently trying to resolve these issues.  And as a

03:11:10PM  12  matter of fact, at the last hearing in December, I was on

03:11:13PM  13  call, although my cases weren't on there because I wanted to

03:11:16PM  14  make sure that if the judge wanted to address the letter of

03:11:20PM  15  the defendants, I would be there to address it.  Since that

03:11:22PM  16  period of time, I wanted to make sure that at least in every

03:11:25PM  17  case we could we got updated information.  If we haven't done

03:11:28PM  18  it, then I'd be happy to, you know, let's say meet and confer

03:11:32PM  19  and, you know, come to some understanding as to what they

03:11:36PM  20  need.

03:11:37PM  21          THE COURT:  Okay.  All right.  Let's see.  Let's look

03:11:46PM  22  at -- okay.  So let me go to -- and I'm probably -- let me

03:11:55PM  23  start with Carla Blades.  So it looks like from what I see on

03:12:02PM  24  page 3 of the letter of December 13th, Ms. Blades signed an

03:12:08PM  25  authorization on May 11, '21, and then the date is scratched

03:12:14PM   1   out and then we have a witness signature from Karen Kaufman.

03:12:22PM   2   And so my question is, Mr. Finson, has that document, that

03:12:26PM   3   health insurance authorization been resubmitted with a new

03:12:32PM   4   signature and a new witness?  Or a witness?  A witnessed

03:12:36PM   5   signature?

03:12:38PM   6            MR. FINSON:  Yes.

03:12:39PM   7            THE COURT:  It has been?  All right.

03:12:41PM   8            MR. FINSON:  Yes.

03:12:42PM   9            THE COURT:  So as to Carla Blades, I'm going to grant

03:12:46PM  10   seven days to confirm compliance.

03:12:47PM  11            Okay.  Patricia Bramblett.

03:12:53PM  12            MR. FINSON:  Also of the same -- I'm sorry, Judge.

03:12:56PM  13   Please, forgive me.

03:12:57PM  14            THE COURT:  That's okay.  But I'm looking at Patricia

03:13:00PM  15   Bramblett.  There was no witness signature and no date on the

03:13:03PM  16   first and then there was one with 12/7 and a date.

03:13:11PM  17   Ms. Callsen?

03:13:14PM  18            MS. CALLSEN:  Correct.  I mean, it doesn't -- and the

03:13:16PM  19   signature looks like a stamp signature.  It does not look --

03:13:21PM  20            THE COURT:  Which one?

03:13:22PM  21            MS. CALLSEN:  That's the second one.  So if you

03:13:23PM  22   compare the first signature that has no date with the second

03:13:27PM  23   signature with a date and that's typed in by the way, it just

03:13:32PM  24   looks like a stamp.

03:13:38PM  25            MR. FINSON:  Your Honor, I can tell you this, we did

03:13:40PM 1    not -- I don't like to -- but we did not stamp anything on

03:13:44PM 2    anything.  We tried to comply and get you updated

03:13:47PM 3    authorizations.

03:13:51PM 4         THE COURT:  Have you submitted a new authorization

03:13:55PM 5    for Ms. Bramblett?

03:14:00PM 6         MR. FINSON:  If that's what you wish, Judge, we will

03:14:01PM 7    do that immediately.

03:14:05PM 8         THE COURT:  I mean, I have to tell you, it looks --

03:14:09PM 9    let me be honest with you, Mr. Finson.  It looks like it's

03:14:12PM 10   the same signature.  It's just one now has a new date and a

03:14:16PM 11   witness on it.  But I will be perfectly frank with you.  I'm

03:14:23PM 12   not a handwriting expert.  It appears to be suspicious to me

03:14:26PM 13   and that's as much as I can say.  I think we need a new

03:14:30PM 14   signature from Ms. Bramblett within seven days.

03:14:34PM 15        MR. FINSON:  Judge, I'm advised it's already been

03:14:37PM 16   done.  I will check that out and make sure myself too.

03:14:41PM 17        THE COURT:  Okay.  And then we get to Elizabeth

03:14:47PM 18   Chaisson-Ricker.  Now this one was without a witness's

03:14:53PM 19   signature, so we need it to be witnessed.

03:14:55PM 20        MS. CALLSEN:  Correct.

03:14:56PM 21        THE COURT:  Okay.  Has that been updated?

03:14:58PM 22        MR. FINSON:  Your Honor -- Yes, Your Honor.

03:15:00PM 23        THE COURT:  Okay.  I'm going to give defense counsel

03:15:03PM 24   seven days to confirm compliance.  And then Mary Allyn --

03:15:08PM 25   well, wait.

03:15:11PM  1        MR. BAEHR:  Your Honor, this one is a bit different.

03:15:13PM  2    This is a different -- not a suspicious signature issue.

03:15:20PM  3    This is a more garden-variety deficiency for this particular

03:15:24PM  4    case and then also the Anita Manley case.

03:15:31PM  5        THE COURT:  Okay.  I'm looking right now at Elizabeth

03:15:35PM  6    Chaisson-Ricker.

03:15:37PM  7        MS. CALLSEN:  Right.  The example continues on the

03:15:39PM  8    next page, so the bottom of page 4 was the initial one.  The

03:15:43PM  9    cured one appears at the top of page 5.  And it just doesn't

03:15:47PM  10   look legitimate.  It looks like they just blacked out the old

03:15:53PM  11   signature, the old date, put in the new date and added a

03:15:56PM  12   witness.  It does not look like they actually went to the

03:16:01PM  13   plaintiff, had her resign with a witness present.

03:16:06PM  14       MR. FINSON:  Again, I'm advised that we submitted

03:16:09PM  15   that too, totally new.

03:16:10PM  16       THE COURT:  You did a new one?

03:16:12PM  17       MR. FINSON:  Yes.

03:16:13PM  18       THE COURT:  I'm going to give seven days to confirm

03:16:16PM  19   compliance.

03:16:17PM  20       Okay.  Now Mary Allyn Dexter.  What do we have for

03:16:23PM  21   Ms. Mary Allyn Dexter?

03:16:24PM  22       MR. BAEHR:  Okay.  Your Honor, this is a no proof of

03:16:26PM  23   use case and there's a technical deficiency with the

03:16:31PM  24   authorization, but it's not a suspicious signature; the

03:16:33PM  25   plaintiff just filled it out improperly.  But the no proof of

| | | |
|---|---|---|
| 03:16:37PM | 1 | use, no medical records whatsoever have been submitted in the |
| 03:16:40PM | 2 | case. |
| 03:16:41PM | 3 | THE COURT:  Okay.  Mr. Finson, I'm going to give you |
| 03:16:44PM | 4 | 30 days to get Ms. Mary Allyn Dexter's Plaintiff Fact Sheet |
| 03:16:57PM | 5 | in compliance.  And so it's no proof of use and |
| 03:17:03PM | 6 | authorizations completed.  Okay? |
| 03:17:11PM | 7 | MR. FINSON:  Understood, Your Honor. |
| 03:17:11PM | 8 | THE COURT:  All right.  And then Jane George, what's |
| 03:17:15PM | 9 | the problem with Ms. George? |
| 03:17:17PM | 10 | MR. BAEHR:  This is one we would request just a fresh |
| 03:17:20PM | 11 | authorization as he's done for several more as we -- the |
| 03:17:25PM | 12 | authorization appeared to be the same as the previous Karen |
| 03:17:30PM | 13 | Finson signed or Karen Finson signatures that had been |
| 03:17:34PM | 14 | identified last year. |
| 03:17:38PM | 15 | THE COURT:  Did you -- |
| 03:17:40PM | 16 | MR. FINSON:  Your Honor -- |
| 03:17:40PM | 17 | THE COURT:  Did you attach that one to -- I don't see |
| 03:17:43PM | 18 | her signature. |
| 03:17:44PM | 19 | MR. BAEHR:  I don't -- Your Honor, I believe this one |
| 03:17:47PM | 20 | may not have been in the December 13th letter.  This is just |
| 03:17:50PM | 21 | a newly identified case from the list served in late December |
| 03:17:56PM | 22 | if that makes sense. |
| 03:17:56PM | 23 | THE COURT:  And my question is, is the objection that |
| 03:17:58PM | 24 | Karen Finson was the witness? |
| 03:18:04PM | 25 | MR. BAEHR:  Yes. |

| | | |
|---|---|---|
| 03:18:05PM | **1** | THE COURT:  And that's -- |
| 03:18:09PM | **2** | MR. FINSON:  That's just not true, Judge. |
| 03:18:10PM | **3** | THE COURT:  Wait.  Wait.  Wait.  I just want to find |
| 03:18:12PM | **4** | out what the objection is.  Is it the fact that she was a |
| 03:18:15PM | **5** | witness? |
| 03:18:16PM | **6** | MR. BAEHR:  I believe so, Your Honor.  Yeah.  And I |
| 03:18:21PM | **7** | apologize for not being versed in this particular case to |
| 03:18:27PM | **8** | know why that was placed on the list initially, but I |
| 03:18:32PM | **9** | understand that's not a proper deficiency. |
| 03:18:34PM | **10** | THE COURT:  Right.  I mean, we had some difficulties |
| 03:18:38PM | **11** | with the Finson plaintiffs and we went through that, but |
| 03:18:45PM | **12** | is -- but I understand Ms. George is deceased; is she? |
| 03:18:49PM | **13** | MR. FINSON:  She is and Mr. George filed in probate |
| 03:18:54PM | **14** | court and we're working through the probate court to handle |
| 03:18:58PM | **15** | this.  And if you need another authorization, I will make |
| 03:19:01PM | **16** | sure he can do that within the terms of the probate court in |
| 03:19:06PM | **17** | I think it's Kansas. |
| 03:19:12PM | **18** | THE COURT:  Well, this is the problem.  I don't know |
| 03:19:13PM | **19** | if her -- we're going to have to get the authorization from |
| 03:19:15PM | **20** | the succession representative, correct?  So her old |
| 03:19:21PM | **21** | authorizations, whether or not --  whoever they were |
| 03:19:21PM | **22** | witnessed by -- all right.  I'm going to give you 60 days to |
| 03:19:25PM | **23** | get the probate matter, get that up to snuff.  You got 60 |
| 03:19:31PM | **24** | days.  Okay.  Thank you. |
| 03:19:33PM | **25** | MR. FINSON:  Understood, Your Honor. |

03:19:34PM 1          THE COURT:  All right.  Anita Manley.

03:19:38PM 2          MR. BAEHR:  Your Honor, this is another more

03:19:41PM 3   garden-variety deficiency that we need information for an

03:19:44PM 4   additional cancer diagnosis, we need dates for all the

03:19:47PM 5   photos, and we need correctly executed psychiatric records

03:19:50PM 6   authorization.

03:19:51PM 7          THE COURT:  Okay.  Mr. Finson?

03:19:54PM 8          MR. FINSON:  They were uploaded, and please have them

03:19:57PM 9   take a look at because we complied fully with that one.

03:20:01PM 10         THE COURT:  I'm going to grant seven days to confirm

03:20:03PM 11  compliance.

03:20:03PM 12         And Towanda Payton, this is another one that --

03:20:08PM 13         MS. CALLSEN:  This is kind of like the -- yeah,

03:20:10PM 14  exactly.  I don't believe we provided the depiction of it in

03:20:14PM 15  the December letter, but it's --

03:20:15PM 16         THE COURT:  No, you did.

03:20:17PM 17         MS. CALLSEN:  Oh, we did.  Okay.  That's right.

03:20:18PM 18         THE COURT:  This is an electronic signature.  We need

03:20:21PM 19  a real signature on this.

03:20:22PM 20         MS. CALLSEN:  Right.

03:20:22PM 21         THE COURT:  Mr. Finson?

03:20:26PM 22         MR. FINSON:  We got it?  All right.  We got it and

03:20:28PM 23  making sure that we got it and we filed it out and please

03:20:30PM 24  have them take a look.

03:20:33PM 25         MS. CALLSEN:  I didn't hear that.

```
03:20:34PM   1              THE COURT:  I didn't understand what you said.
03:20:40PM   2              MR. FINSON:  Oh, I'm sorry.  Can you hear me, Judge?
03:20:40PM   3              THE COURT:  Now, I can.
03:20:43PM   4              MR. FINSON:  We uploaded the appropriate
03:20:45PM   5    documentation and had to take a look and I think they'll see
03:20:49PM   6    it.
03:20:49PM   7              THE COURT:  Okay.  Court's going to grant seven days
03:20:52PM   8    to confirm compliance.
03:20:54PM   9              MS. CALLSEN:  Your Honor, I need to leave because I
03:20:57PM  10    have to catch a flight, but Nick will handle the Bachus &
03:21:02PM  11    Schanker ones.  Thank you.
03:21:02PM  12              THE COURT:  All right.  Thank you.
03:21:04PM  13              MR. FINSON:  May I be excused?
03:21:06PM  14              THE COURT:  Excuse me?
03:21:07PM  15              MR. FINSON:  This is Lowell Finson.  May I be
03:21:10PM  16    excused, Your Honor?
03:21:11PM  17              THE COURT:  Yes, sir.
03:21:12PM  18              Okay.  I think the last thing is Bachus & Schanker
03:21:17PM  19    list and that is Ms. Sulkin.  Have a safe trip, Ms. Callsen.
03:21:27PM  20              MS. CALLSEN:  Thank you.
03:21:29PM  21              THE COURT:  Okay.  The first one is Debra Bunnell.
03:21:33PM  22              MR. BAEHR:  I believe we've already addressed that
03:21:34PM  23    one.
03:21:34PM  24              THE COURT:  Oh, we did.
03:21:35PM  25              Pamela Allen.
```

```
03:21:37PM   1              MR. BAEHR:  We have that as late cure.  I don't know
03:21:40PM   2    if that's correct.
03:21:41PM   3              THE COURT:  Ms. Sulkin, is that a late cure?
03:21:43PM   4              MS. SULKIN:  Yes, Your Honor.
03:21:44PM   5              THE COURT:  Court's going to grant seven days to
03:21:46PM   6    confirm compliance.
03:21:48PM   7              Okay.  Patricia Beaton.
03:21:51PM   8              MR. BAEHR:  In this case, the plaintiff is deceased,
03:21:54PM   9    but we have not seen a suggestion of death or a party
03:21:58PM  10    substitution come through.  So we would ask for 60 days.
03:22:02PM  11              THE COURT:  So ordered.
03:22:04PM  12              MS. SULKIN:  Your Honor, if we could request 60 days
03:22:08PM  13    or at least very least after 60 days to reassess the status
03:22:14PM  14    of opening an estate.
03:22:16PM  15              THE COURT:  Well, that's what I said, 60 days to --
03:22:21PM  16    I've been granting 60 days when there's a deceased plaintiff
03:22:27PM  17    so that gives you an opportunity to at least open the
03:22:33PM  18    succession.  And then we'll just assess there.
03:22:37PM  19              Rosie Bradley?
03:22:40PM  20              MR. BAEHR:  We also have this as a late cure.
03:22:41PM  21              THE COURT:  Okay.  Court's going to grant seven days
03:22:44PM  22    to confirm compliance.
03:22:45PM  23              Helen Brown?
03:22:46PM  24              MR. BAEHR:  This is a no between photos case.  In
03:22:50PM  25    this case, the plaintiff had chemo in 2005, not with Taxotere
```

03:22:55PM  1   is our understanding, and then in 2009, they had a recurrence

03:22:58PM  2   and treated with Taxotere.  So we would request photos

03:23:02PM  3   between those dates.

03:23:04PM  4           THE COURT:  Ms. Sulkin?

03:23:05PM  5           MS. SULKIN:  Your Honor, we're working with the

03:23:08PM  6   plaintiff to try and get photographs between dates.  If the

03:23:14PM  7   plaintiff is unable to provide photographs from that time

03:23:18PM  8   period, then we ask that this case be reassessed as some

03:23:24PM  9   others with two cancer diagnoses have been at today's

03:23:29PM  10  hearing.

03:23:29PM  11          THE COURT:  I'm going to grant 30 days.

03:23:33PM  12          Tammy Burton?

03:23:35PM  13          MR. BAEHR:  We have this as a late cure.

03:23:37PM  14          THE COURT:  Okay.  Seven days to confirm compliance.

03:23:41PM  15          Cheryl Collins?

03:23:42PM  16          MR. BAEHR:  No between -- well, we need information

03:23:46PM  17  about the second cancer diagnosis, including the dates.  And

03:23:50PM  18  this is also -- there are also improper authorizations and

03:23:57PM  19  the plaintiff is also deceased in this case and we have not

03:24:01PM  20  seen a substitution.

03:24:04PM  21          THE COURT:  Ms. Sulkin?

03:24:05PM  22          MS. SULKIN:  Your Honor, as defense counsel pointed

03:24:07PM  23  out, this plaintiff is deceased.  We just request an

03:24:11PM  24  additional 30 days to find a substitute for the plaintiff.

03:24:17PM  25  If we cannot find a substitute, then we'll likely file

03:24:21PM  1   something with the court prior to the next show cause

03:24:24PM  2   hearing.

03:24:25PM  3          THE COURT:  Court's going to grant 60 days.

03:24:29PM  4          Adlean Davis?

03:24:30PM  5          MR. BAEHR:  No between photos, Your Honor.  We have

03:24:33PM  6   Taxotere treatment in 2007, subsequent chemo in 2011, and the

03:24:38PM  7   only after photos are from six years after that in 2018.

03:24:47PM  8          MS. SULKIN:  Your Honor, the client had a house fire

03:24:49PM  9   and she lost all of her photographs.  We're trying to obtain

03:24:53PM  10  a fire report, so that we can provide that to the defendants.

03:24:58PM  11  We're also going to have the plaintiff ask her family and

03:25:01PM  12  friends for photographs.  We do ask for an extension and

03:25:07PM  13  potentially ask the court to allow us to submit an affidavit.

03:25:09PM  14         THE COURT:  I'm going to grant 30 days for you to

03:25:11PM  15  complete this review, but, you know, some of the photographs

03:25:15PM  16  are in your phone, you know, store it somewhere other than

03:25:20PM  17  personally in your home.  So I'm going to grant 30 days and

03:25:24PM  18  then we'll just have to reassess where we are.

03:25:27PM  19         Patricia Depinto?

03:25:29PM  20         MR. BAEHR:  Between photos case.  We have Taxotere

03:25:31PM  21  treatment in 2002, second diagnosis and treatment with

03:25:36PM  22  chemotherapy 10 years later in 2012.  And then the first

03:25:39PM  23  after photos are from seven years after that in 2019.

03:25:44PM  24         THE COURT:  Ms. Sulkin?

03:25:46PM  25         MS. SULKIN:  Your Honor, we asked the plaintiff if

```
03:25:52PM   1   she has any photographs between that time period in her
03:25:58PM   2   possession and she does not.  She's going to make efforts to
03:26:01PM   3   ask her family and friends, so we'd ask for an extension to
03:26:04PM   4   see if she can find photographs within that time period.
03:26:09PM   5            THE COURT:  30 days.
03:26:14PM   6            Shirley Douglas?
03:26:18PM   7            MR. INSOGNA:  Your Honor, hello.  For Shirley Douglas
03:26:23PM   8   and a number of the 75 through 79 --
03:26:28PM   9            THE COURT:  Who is this?
03:26:30PM  10            MR. INSOGNA:  -- and then also -- this is Nick, Your
03:26:32PM  11   Honor.
03:26:32PM  12            THE COURT:  I was just hearing this voice.  Okay.
03:26:36PM  13   Thank you.
03:26:39PM  14            MR. INSOGNA:  Sorry.  I didn't realize you didn't
03:26:41PM  15   have me on the screen.
03:26:43PM  16            THE COURT:  I do, but I was looking elsewhere.  What
03:26:46PM  17   is happening to me.  Okay.
03:26:50PM  18            MR. INSOGNA:  Apologies.
03:26:52PM  19            THE COURT:  That's okay.
03:26:53PM  20            MR. INSOGNA:  So for 75 through 79 and also 82 and 84
03:27:04PM  21   and 88, the issue is the same in all cases.  The plaintiff
03:27:08PM  22   has provided one before photo and one after photo that fit
03:27:14PM  23   the requirements of PTO 22.  We have served the deficiency
03:27:20PM  24   notice asking for more than one photo and gotten no response
03:27:24PM  25   to that notice; no response, that photos don't exist, no
```

03:27:27PM  1    additional photos, just nothing.  So we're asking for either

03:27:32PM  2    additional photos to be uploaded --

03:27:34PM  3         THE COURT:  Wait.  Wait.  Wait.  Wait.  So if I

03:27:36PM  4    understand it they're supposed to provide you with photos

03:27:41PM  5    before and after and they provided that, but it's not enough?

03:27:46PM  6         MR. INSOGNA:  Well, Your Honor, they provided one of

03:27:48PM  7    each and we served the deficiency notice.  The reason for the

03:27:51PM  8    deficiency is the failure to respond to a deficiency notice,

03:27:54PM  9    which is grounds to be put on the list under PTO 22A.  We

03:27:58PM  10   just want some response.  If the response is there are no

03:28:03PM  11   responsive photos -- there are no additional photos, we will

03:28:06PM  12   accept that response, but we've gotten no response at all to

03:28:09PM  13   our request for more photos.

03:28:10PM  14        THE COURT:  And what is -- I don't have the Plaintiff

03:28:13PM  15   Fact Sheet in front of me.  How many photos are they required

03:28:17PM  16   to produce?  All of the photos?

03:28:20PM  17        MR. INSOGNA:  Well, there are --

03:28:23PM  18        THE COURT:  Five?  Ten?

03:28:24PM  19        MR. INSOGNA:  Under the fact sheet, they are

03:28:26PM  20   requested to produce all photos that show their hair in the

03:28:30PM  21   relevant time period.  Obviously, we don't want all photos.

03:28:33PM  22   I mean, that's -- I understand that that's not helpful for

03:28:38PM  23   anyone.  The deficiency notices in these cases identify

03:28:42PM  24   particular issues, either the photo is very far away, it's

03:28:47PM  25   blurry, there's some reason that we're asking for some

| | | |
|---|---|---|
| 03:28:50PM | 1 | additional photo. |
| 03:28:51PM | 2 | THE COURT:  Okay.  I just -- I didn't know and I |
| 03:28:53PM | 3 | didn't have it in front of me.  I didn't know what the |
| 03:28:57PM | 4 | Plaintiff Fact Sheet said, you know, is it five?  Ten? |
| 03:29:00PM | 5 | Okay.  All right.  So it says all photos, but you're |
| 03:29:04PM | 6 | not really looking for all photos. |
| 03:29:06PM | 7 | MR. INSOGNA:  Right.  And I can tell you, you know, |
| 03:29:10PM | 8 | what we have gotten vary widely.  There are some plaintiffs |
| 03:29:13PM | 9 | who have provided 30, 40, 50 photos and we don't need that |
| 03:29:17PM | 10 | certainly.  And that's why I wanted to call these |
| 03:29:21PM | 11 | specifically to your attention because they are unique.  And |
| 03:29:24PM | 12 | they are strictly speaking compliant with the requirements. |
| 03:29:28PM | 13 | We just haven't gotten any response to the request. |
| 03:29:30PM | 14 | THE COURT:  All right.  So this is what I'm going to |
| 03:29:30PM | 15 | do. |
| 03:29:32PM | 16 | Ms. Sulkin, as to Shirley Douglas, Endya Fitch, |
| 03:29:40PM | 17 | Denise Fitzgerald, Brenda Fox, Yvonne Gamble, Diane Gullett, |
| 03:29:46PM | 18 | Lisa Gutierrez, Peggy Hall, Barbara Harrell, Martha Johns, |
| 03:29:53PM | 19 | Johnnie Kelly, and Patricia Kulage, I'm going to order within |
| 03:29:59PM | 20 | 30 days you respond to defendant's deficiency notice. |
| 03:30:07PM | 21 | MS. SULKIN:  Your Honor, and we did respond to the |
| 03:30:13PM | 22 | defendant's deficiency notices. |
| 03:30:15PM | 23 | MR. INSOGNA:  On MDL Centrality? |
| 03:30:18PM | 24 | MS. SULKIN:  Correct. |
| 03:30:21PM | 25 | MR. INSOGNA:  Is that recent, like a late cure |

03:30:24PM  1   situation?

03:30:25PM  2          MS. SULKIN:  Yes, it's a late cure situation and we

03:30:27PM  3   did send you an e-mail.  Your Honor, I do apologize for that.

03:30:31PM  4   But we were also very confused and I do want to make the

03:30:35PM  5   record clear that these plaintiffs have all been compliant

03:30:39PM  6   with their obligations under PTO 22A.  And, you know, we

03:30:43PM  7   would like to avoid having to compliance -- beyond the show

03:30:49PM  8   cause list.

03:30:49PM  9          THE COURT:  I'm going to give defendants seven days

03:30:52PM  10  to confirm compliance, okay?

03:30:55PM  11         MR. INSOGNA:  Thank you.  Thank you, Your Honor.

03:30:56PM  12         THE COURT:  All right.  Let's get to Arlene Green.

03:31:00PM  13  Mr. Baehr?

03:31:01PM  14         MR. BAEHR:  This is a case where we need information

03:31:03PM  15  about an additional cancer diagnosis.

03:31:09PM  16         THE COURT:  Ms. Sulkin?

03:31:10PM  17         MS. SULKIN:  Your Honor, Ms. Green passed away in

03:31:14PM  18  December of 2021.  We are in contact with her daughter and I

03:31:18PM  19  think we first needed to get her probate documents in order

03:31:22PM  20  and also see if her doctor knows anything about this second

03:31:26PM  21  cancer diagnosis.  Obviously, we will provide whatever

03:31:30PM  22  information that the daughter has within her possession,

03:31:34PM  23  custody, and control.

03:31:39PM  24         THE COURT:  Wait.  So what's missing is the

03:31:44PM  25  photographs, but you still have to substitute?

03:31:47PM  1          MS. SULKIN:  Correct.

03:31:49PM  2          THE COURT:  All right.  So the deficiency, there was

03:31:51PM  3  a substitution?

03:31:52PM  4          MR. BAEHR:  The deficiency --

03:31:53PM  5          THE COURT:  I mean, not the -- it was the

03:31:55PM  6  photographs.

03:31:56PM  7          MR. BAEHR:  It's actually information, details about

03:31:57PM  8  the second cancer diagnosis, but then also responsive

03:32:01PM  9  photographs from between the time period depending on the

03:32:04PM 10  information about the second cancer if that makes sense.

03:32:08PM 11          THE COURT:  Okay.  It does make sense.  Okay.  I am

03:32:10PM 12  going to grant 60 days because the plaintiff is deceased and

03:32:20PM 13  that just requires more time.

03:32:24PM 14          Sandra Greenberg?

03:32:27PM 15          MR. BAEHR:  This is -- the plaintiff was treated

03:32:30PM 16  starting in 2014, but the only before photo is from 2005, so

03:32:35PM 17  we're requesting a photo within five years of treatment.

03:32:38PM 18          THE COURT:  Okay.  Ms. Sulkin?

03:32:40PM 19          MS. SULKIN:  Your Honor, we believe this plaintiff

03:32:44PM 20  had moved and we're trying to locate a new address, so we

03:32:47PM 21  would just request 30 days to be able to locate her and try

03:32:54PM 22  and get ahold of a photo in five years, but if not, be

03:33:01PM 23  afforded the opportunity to explain to the court why we can't

03:33:06PM 24  find a photo within that time period.

03:33:08PM 25          THE COURT:  Court's going to grant 30 days.

03:33:11PM  1          All right.  Deane Labrot.  Mr. Baehr.

03:33:16PM  2          MR. BAEHR:  I'm sorry.  Is this No. 82?

03:33:19PM  3          THE COURT:  It is 89.

03:33:22PM  4          MR. BAEHR:  89.  Your Honor, I believe 83, even

03:33:29PM  5   though it was addressed previously with respect to responses

03:33:32PM  6   to a deficiency notices, there are additional issues to

03:33:36PM  7   discuss there.

03:33:38PM  8          THE COURT:  Okay.

03:33:39PM  9          MR. BAEHR:  So that's Lisa Gutierrez.  And this is a

03:33:44PM  10  shell PFS case where the cancer treatment information is

03:33:49PM  11  lacking and there's also indication that there was a second

03:33:53PM  12  diagnosis, so we just need a completed PFS with all

03:33:56PM  13  information for all cancer diagnoses.

03:33:59PM  14         THE COURT:  Ms. Sulkin?

03:34:00PM  15         MS. SULKIN:  Your Honor, we're working with the

03:34:03PM  16  plaintiff to provide that information and also trying to

03:34:07PM  17  locate photographs between those two time periods.  We

03:34:11PM  18  believe that the relevant time period will between 2009 and

03:34:16PM  19  2011.  If there are photographs from that time period, we

03:34:21PM  20  will provide them.  If not, we just request the opportunity

03:34:23PM  21  to be heard on why the plaintiff cannot provide them.

03:34:26PM  22         THE COURT:  Court's going to grant 30 days.

03:34:30PM  23         MR. BAEHR:  The next one is Barbara Harrell was the

03:34:35PM  24  same situation.  We mentioned it earlier, but there are

03:34:39PM  25  additional issues and it's actually the exact same issue, a

03:34:42PM   **1**    blank or a largely blank PFS.

03:34:44PM   **2**         THE COURT:  Okay.  Ms. Sulkin?

03:34:50PM   **3**         MS. SULKIN:  Your Honor, we have been in contact with

03:34:52PM   **4**    Ms. Harrell and we intend to supplement her Plaintiff Fact

03:34:57PM   **5**    Sheet.  She's caring for her very ill and elderly mother, so

03:35:02PM   **6**    we're asking for 30 days to supplement her Plaintiff Fact

03:35:06PM   **7**    Sheet.

03:35:06PM   **8**         THE COURT:  So ordered.

03:35:10PM   **9**         MR. BAEHR:  Same -- well, not the same issue, but

03:35:13PM  **10**    Martha Johns also has additional issues.  That's plaintiff --

03:35:16PM  **11**    or No. 86.  It's a rollover case and this is a between photos

03:35:22PM  **12**    case where they were -- plaintiff was treated in Taxotere in

03:35:26PM  **13**    2010, recurrence in 2010 and had chemo at that time.  So it's

03:35:32PM  **14**    an eight-year period.  And the only after photos are starting

03:35:36PM  **15**    during the second cancer treatment.  So we request between

03:35:39PM  **16**    photos.

03:35:40PM  **17**         THE COURT:  Ms. Sulkin?

03:35:41PM  **18**         MS. SULKIN:  Your Honor, this was a case in which you

03:35:46PM  **19**    instructed Ms. Kreider to call the plaintiff with me.  Both

03:35:53PM  **20**    of us were able to confirm that this plaintiff does not have

03:35:59PM  **21**    photos.  She was in rural Mississippi.  She was I believe the

03:36:01PM  **22**    victim of domestic abuse, had to vacate her house where she

03:36:06PM  **23**    lived with her husband.  So she does not have any photographs

03:36:09PM  **24**    from that time period.

03:36:11PM  **25**         THE COURT:  Okay.

03:36:12PM   1          MS. KREIDER:  Your Honor, I did speak with Ms. Johns

03:36:15PM   2    with Ms. Sulkin and she's right.  We went through all the

03:36:18PM   3    normal places where photos can be found.  I think that it

03:36:21PM   4    would be appropriate in this case to submit an affidavit on

03:36:24PM   5    why there are no photos in that 7-, 8-year time frame.

03:36:29PM   6          THE COURT:  Submit the affidavit and I'll make a

03:36:32PM   7    determination at that time.

03:36:35PM   8          MR. BAEHR:  The next case --

03:36:37PM   9          THE COURT:  The affidavit within 30 days.

03:36:39PM  10          MS. KREIDER:  Yes, Your Honor.

03:36:40PM  11          MR. BAEHR:  My apologies.  Johnnie Kelly is a case

03:36:46PM  12    where we need details about a second cancer diagnosis.

03:36:49PM  13          THE COURT:  Ms. Sulkin?

03:36:51PM  14          MS. SULKIN:  Yes.  Ms. Kelly had been very responsive

03:36:58PM  15    with us up until October 2021.  We request another 30 days to

03:37:03PM  16    try and locate her again since she's mostly been very

03:37:08PM  17    compliant with the obligations in this litigation.

03:37:12PM  18          THE COURT:  I'm going to grant 30 days and then

03:37:14PM  19    that's it.  If you're not in touch with her, Ms. Sulkin,

03:37:17PM  20    we're going to have to submit a no contact.  Okay?

03:37:24PM  21          MS. SULKIN:  Yes, Your Honor.

03:37:26PM  22          THE COURT:  Deane --

03:37:28PM  23          MS. SULKIN:  Thank you, Your Honor.

03:37:28PM  24          MR. BAEHR:  And I'm sorry.  There's one more where

03:37:30PM  25    there's additional issues, 88, Patricia Kulage.  This is the

03:37:37PM  1   case that the parties discussed at the last hearing where

03:37:38PM  2   there was a photo with the birthday cake.  We believe it says

03:37:42PM  3   60.  We submitted an e-mail to the Court in the interim.  So

03:37:46PM  4   I think it's the same issue if you have a chance to review.

03:37:49PM  5           THE COURT:  Well, Mr. Baehr, let me tell you what we

03:37:52PM  6   did with that photograph.  We ran around the office and

03:37:56PM  7   nobody could agree.  So I think we got a factual issue.  I

03:37:59PM  8   really do.  We -- and we did a survey; what does this cake

03:38:07PM  9   say?

03:38:11PM  10          MR. BAEHR:  I appreciate that, Your Honor.  I would

03:38:12PM  11  say if the plaintiffs provided metadata for the photo,

03:38:17PM  12  digital photograph, that would probably resolve in a more --

03:38:20PM  13  it would provide some objective evidence as to when the photo

03:38:24PM  14  was taken.

03:38:24PM  15          THE COURT:  I think that's a great idea.

03:38:26PM  16          Ms. Sulkin, we probably need the metadata on this one

03:38:30PM  17  because I did a very scientific study of this photograph.

03:38:34PM  18          MS. SULKIN:  Your Honor, I appreciate the scientific

03:38:37PM  19  study.  However, metadata is not as easy to get as Mr. Baehr

03:38:44PM  20  informs the Court it is.  I don't believe that this was a

03:38:47PM  21  photograph that was originally placed in the plaintiff's

03:38:51PM  22  possession, custody, or control, so she wouldn't have --

03:38:53PM  23          THE COURT:  Does she know where she got the

03:38:54PM  24  photograph from, Ms. Sulkin?  Let's cut to the chase.

03:38:59PM  25          MS. SULKIN:  She said it was taken on her 50th

03:39:02PM  1    birthday in August of 2010.  I mean, I believe just as you

03:39:06PM  2    alluded to that this is a factual issue that would be for the

03:39:09PM  3    jury --

03:39:09PM  4         THE COURT:  You know, you're not answering my

03:39:11PM  5    question.  Okay.  So you think it was taken what year?

03:39:17PM  6         MS. SULKIN:  August of 2010.

03:39:21PM  7         THE COURT:  2010.  Does she know who took the

03:39:23PM  8    photograph?

03:39:24PM  9         MS. SULKIN:  Off the top of my head, I don't know

03:39:29PM 10    that information, but that certainly is something that I can

03:39:32PM 11    try and find out.

03:39:33PM 12         THE COURT:  I think we need to find that out because

03:39:36PM 13    there may be metadata, maybe not, in her custody and control,

03:39:40PM 14    but maybe we can find it.  And I just -- yes?

03:39:46PM 15         MS. SULKIN:  Your Honor, my office is telling me that

03:39:51PM 16    Ms. Kulage does not know who took the photograph.

03:39:54PM 17         THE COURT:  Well, where did she get it from?

03:39:56PM 18         MS. SULKIN:  That I don't know.  It could have been

03:40:01PM 19    Facebook.  And my office is telling me that no metadata

03:40:06PM 20    exists.  It's a physical photo that she has.

03:40:10PM 21         THE COURT:  Okay.  This is what I think I need to do,

03:40:13PM 22    maybe get us an affidavit --

03:40:16PM 23         MS. SULKIN:  Okay.

03:40:20PM 24         THE COURT:  -- as to where the photograph came from

03:40:21PM 25    so that everybody is satisfied that all measures have been

03:40:27PM   1   taken to confirm the date of the photograph.  But I will tell

03:40:33PM   2   you, we struggled with it.  So -- and so I think the fact

03:40:40PM   3   that people that don't have an interest in it couldn't agree.

03:40:48PM   4   It leaves us here.  But let's see if we can -- if there's

03:40:51PM   5   something that she can find or -- and if it was in a box in

03:40:56PM   6   her, say, nice photos drawer, then that's what we'll deal

03:41:04PM   7   with.  Okay.  Thank you.

03:41:06PM   8           MS. SULKIN:  Thank you, Your Honor.

03:41:06PM   9           THE COURT:  All right.  Now, can we go to Deane?

03:41:11PM  10           MR. BAEHR:  Yes, Your Honor.  Finally.

03:41:14PM  11           THE COURT:  Thank you, Mr. Baehr.

03:41:15PM  12           MR. BAEHR:  In this case, the plaintiff is deceased.

03:41:17PM  13   We need suggestion of death and substitution, so we'd ask for

03:41:21PM  14   60 days as you've done.

03:41:22PM  15           THE COURT:  Any objection, Ms. Sulkin?

03:41:25PM  16           MS. SULKIN:  No, Your Honor.

03:41:27PM  17           THE COURT:  So ordered, 60 days.

03:41:30PM  18           Okay.  Donna Lincoln?

03:41:38PM  19           MR. BAEHR:  This is a between photos case.  We have

03:41:40PM  20   Taxotere treatment in 2008, a recurrence in chemo in 2016.

03:41:45PM  21   So an eight-year period.  And the only after photos are

03:41:49PM  22   from -- start in 2016.  So we need in-between photos.

03:41:56PM  23           THE COURT:  Ms. Sulkin?

03:41:57PM  24           MS. SULKIN:  Your Honor, the plaintiff is trying to

03:42:02PM  25   locate photos.  Ms. Lincoln doesn't have any in her

03:42:08PM   1    possession.  If they're unable to locate any photographs, we

03:42:12PM   2    would request that Ms. Kreider be allowed to talk with the

03:42:15PM   3    plaintiff as well to certify to the court we've done our due

03:42:21PM   4    diligence here and potentially submit an affidavit for the

03:42:24PM   5    court to rule on.

03:42:25PM   6            THE COURT:  Okay.  I'm going to grant 30 days.

03:42:31PM   7            Ruth Lopez, Mr. Baehr?

03:42:31PM   8            MR. BAEHR:  Another between photos case.  In this

03:42:34PM   9    case, Taxotere was in 2008, subsequent chemo in 2010, and the

03:42:39PM   10   first photos after that in 2012.

03:42:43PM   11           THE COURT:  Ms. Sulkin?

03:42:44PM   12           MS. SULKIN:  Your Honor, I believe we submitted

03:42:49PM   13   photographs taken September 2009, which is prior to her 2010

03:42:55PM   14   brain tumor chemotherapy.  That's all she could find.  We had

03:43:00PM   15   uploaded that to Centrality on March 7th.

03:43:03PM   16           THE COURT:  Court's going to grant seven days to

03:43:06PM   17   confirm compliance.

03:43:14PM   18           Gertestine Mcferson, Mr. Baehr?

03:43:17PM   19           MR. BAEHR:  Shell PFS where there's virtually no

03:43:21PM   20   information regarding Taxotere treatment or any cancer

03:43:23PM   21   treatment.

03:43:24PM   22           THE COURT:  Ms. Sulkin, this is a 2017 case.

03:43:27PM   23           MS. SULKIN:  Your Honor, we just located a new

03:43:33PM   24   address for plaintiff, and we'd like 30 days to make one

03:43:36PM   25   final attempt.  If we cannot reach her, then we will file a

03:43:42PM  1   separation of no contact.

03:43:43PM  2          THE COURT:  Ms. Sulkin, I'm giving you 15 days

03:43:46PM  3   because this is a 2017 case.  Okay?

03:43:51PM  4          MS. SULKIN:  Thank you, Your Honor.

03:43:52PM  5          THE COURT:  Thelma Monger?

03:43:56PM  6          MR. BAEHR:  This is a proof of use case where the

03:43:58PM  7   record indicates a plan to administer Taxotere, but not an

03:44:02PM  8   actual record of administration.

03:44:05PM  9          THE COURT:  Ms. Sulkin?

03:44:07PM  10         MS. SULKIN:  Your Honor, it's my understanding that

03:44:12PM  11  the document does reflect that the plaintiff was treated with

03:44:17PM  12  Taxotere.  I can go and take another look.  But even if

03:44:22PM  13  Mr. Baehr is correct, you know, we think that this is a

03:44:26PM  14  factual question and we believe that he's provided sufficient

03:44:29PM  15  proof.  This is not the type of record that is usually in the

03:44:33PM  16  possession of a plaintiff.  And so we must rely on medical

03:44:38PM  17  providers to keep relevant documentation.  And so we believe

03:44:42PM  18  that this deficiency is cured.

03:44:48PM  19         THE COURT:  But we don't have a record indicating

03:44:49PM  20  that she took it.

03:44:53PM  21         MS. SULKIN:  It's my belief --

03:44:55PM  22         THE COURT:  Has the infusion -- have you requested

03:45:01PM  23  records from the infusion center?

03:45:04PM  24         MS. SULKIN:  Yes, Your Honor.  I'm trying to go to

03:45:11PM  25  her Centrality profile right now.

03:45:17PM  1          MR. BAEHR:  And, Your Honor, we would point out that

03:45:19PM  2  this treatment was in 2007 and this case was filed in 2016.

03:45:26PM  3          MS. SULKIN:  And, Your Honor, we have -- it's an

03:45:29PM  4  actual infusion record and it's handwritten Taxotere 100,

03:45:36PM  5  looks like, milligrams, day one only.  So this is -- this is

03:45:40PM  6  the actual infusion form.  And if they're confused about --

03:45:46PM  7  Mr. Baehr's contention that it's not proof of confusion --

03:45:49PM  8          THE COURT:  And that was uploaded to MDL Centrality,

03:45:53PM  9  the infusion record?

03:45:54PM  10         MS. SULKIN:  Correct.  Correct.  And it's been

03:45:56PM  11  uploaded several times.

03:45:59PM  12         MR. BAEHR:  Do you have the document ID number?

03:46:02PM  13         MS. SULKIN:  Yes.  It was uploaded again March 2,

03:46:09PM  14  2022, Document ID 527218.  It looks like it was uploaded also

03:46:18PM  15  as well as product identification under 201290.

03:46:24PM  16         MR. BAEHR:  And is there a date for that infusion?

03:46:27PM  17         MS. SULKIN:  Let's see.  Yes.  It's says 12/6.

03:46:39PM  18         MR. BAEHR:  12/6/2007?

03:46:42PM  19         MS. SULKIN:  Correct.

03:46:43PM  20         MR. BAEHR:  Yeah.  Our review of that record

03:46:45PM  21  indicates that that was treatment with Adriamycin and Cytoxan

03:46:49PM  22  only, so we'll check it to confirm, but we don't think that's

03:46:52PM  23  compliant.

03:46:52PM  24         THE COURT:  Okay.  I'm going to grant seven days to

03:46:55PM  25  confirm compliance because I can't speak to documents that

03:46:59PM 1    I'm not looking at.  And then if this one -- if this becomes

03:47:08PM 2    a real problem in the case, I need to see the documents and

03:47:11PM 3    so you're going to need to provide that to me.  And then I

03:47:14PM 4    can make a determination.

03:47:19PM 5          Okay.  Angela Perryman?

03:47:20PM 6          MR. BAEHR:  This is a rollover case.  It's a between

03:47:22PM 7    -- the issue is between photos.  We have Taxotere treatment

03:47:25PM 8    in 2003 and then additional chemo in 2013.  It was -- the

03:47:30PM 9    same issue was addressed at the December 15th hearing so.

03:47:37PM 10         THE COURT:  Okay.  Ms. Sulkin?

03:47:39PM 11         MS. SULKIN:  Your Honor, we just located a new

03:47:42PM 12   address for the plaintiff and we'd like time to make one

03:47:46PM 13   final attempt to get information on the second cancer

03:47:49PM 14   treatment.

03:47:50PM 15         THE COURT:  I'm going to give you -- this is a 2017

03:47:53PM 16   case.  I'm going to give you 15 days and then that's it.

03:47:59PM 17         MS. KREIDER:  Your Honor, I'm sorry.  I may have --

03:48:01PM 18   did we skip No. 94, Carolyn Obannon.

03:48:06PM 19         THE COURT:  Yes, that's the -- wait, did we?

03:48:11PM 20         MR. BAEHR:  I apologize.

03:48:11PM 21         THE COURT:  I think we did.

03:48:12PM 22         MR. BAEHR:  I apologize.

03:48:13PM 23         THE COURT:  I have seven days written there, but I

03:48:15PM 24   think we must have.  All right.  Carolyn Obannon.

03:48:20PM 25         MR. BAEHR:  I apologize.  What I just said does not

03:48:22PM  1    apply to Angela Perryman.  That was for Caroline Obannon.

03:48:26PM  2    So, again, the issue is Taxotere treatment in 2003, second

03:48:30PM  3    chemotherapy in 2013, and the first after photos from 2014.

03:48:35PM  4    So the ask -- it's a rollover case and our ask is for -- our

03:48:39PM  5    ask is for photos between the two cancer diagnoses.

03:48:42PM  6              THE COURT:  Okay.  But that's not what we discussed

03:48:45PM  7    with Angela Perryman.  Let's talk -- Ms. Sulkin, tell me

03:48:52PM  8    about Carolyn Obannon.

03:48:55PM  9              MS. SULKIN:  Yes, Your Honor.

03:48:56PM  10             THE COURT:  The required photographs.

03:48:59PM  11             MS. SULKIN:  Yes, Your Honor.  So at the last show

03:49:03PM  12   cause hearing, Your Honor directed Ms. Kreider and myself to

03:49:07PM  13   call Ms. Obannon to verify that she does not have any

03:49:11PM  14   photographs.  And Ms. Kreider confirmed that there are no

03:49:15PM  15   photographs between the two cancer treatments.

03:49:19PM  16             THE COURT:  Okay.  But you -- okay.  I'm going to

03:49:22PM  17   grant 30 days to prepare a very detailed affidavit regarding

03:49:28PM  18   what happened.

03:49:30PM  19             Ms. Angela Perryman, is she the plaintiff, Ms.

03:49:36PM  20   Sulkin, that you are unable to -- you've just got a new

03:49:42PM  21   address and you think maybe you'll be able to contact her?

03:49:44PM  22             MS. SULKIN:  Yes, Your Honor.  The only deficiency we

03:49:48PM  23   see to cure was to provide information for her other cancer

03:49:54PM  24   diagnosis/treatment and the other one is that photos may not

03:50:00PM  25   be representative, which I believe, you know, with the lack

03:50:03PM  **1**   of description, it must be that she only provided one instead

03:50:07PM  **2**   of multiple photographs.

03:50:09PM  **3**        THE COURT:  Well, but I think there's a question as

03:50:11PM  **4**   to the information regarding her other cancer diagnosis and

03:50:15PM  **5**   treatment.

03:50:20PM  **6**        MS. SULKIN:  Yes, Your Honor.  And that deficiency is

03:50:22PM  **7**   clear and that's the one we're requesting additional time on.

03:50:29PM  **8**   The photos may not be representative.  I'm not sure if that

03:50:34PM  **9**   is applicable to the other cancer --

03:50:36PM  **10**        THE COURT:  Okay.  I'm concerned about the second

03:50:38PM  **11**   cancer diagnosis and so -- but what I heard was that you

03:50:45PM  **12**   think you may now have a good address.

03:50:49PM  **13**        MS. SULKIN:  Correct, Your Honor.

03:50:50PM  **14**        THE COURT:  All right.  I'm going to give you 15 days

03:50:54PM  **15**   to find your client.  Okay?

03:51:01PM  **16**        MS. SULKIN:  Yes.  Thank you, Your Honor.

03:51:02PM  **17**        THE COURT:  Gail Ray?

03:51:03PM  **18**        MR. BAEHR:  Exact same issue, Your Honor.

03:51:06PM  **19**        THE COURT:  Second what?

03:51:09PM  **20**        MR. BAEHR:  Second cancer diagnosis and we need

03:51:12PM  **21**   information.

03:51:12PM  **22**        THE COURT:  Okay.  Ms. Sulkin?

03:51:14PM  **23**        MS. SULKIN:  Your Honor, we believe that we cured

03:51:17PM  **24**   this deficiency.  She was diagnosed with breast cancer in

03:51:20PM  **25**   2008 and in 2011.  The 2011 treatment was when the Taxotere

| | | |
|---|---|---|
| 03:51:25PM | 1 | was administered.  The photographs are representative because |
| 03:51:29PM | 2 | there are before and after photographs, before 2011 and then |
| 03:51:34PM | 3 | after 2011.  We updated the Plaintiff Fact Sheet -- |
| 03:51:38PM | 4 | THE COURT:  But do you have -- |
| 03:51:38PM | 5 | MS. SULKIN:  -- and also responded to the deficiency. |
| 03:51:39PM | 6 | THE COURT:  Do you have photographs in between the |
| 03:51:41PM | 7 | two cancer treatments? |
| 03:51:42PM | 8 | MS. SULKIN:  Yes, Your Honor.  I believe that's -- |
| 03:51:47PM | 9 | THE COURT:  Okay.  All right.  Then I'm going to give |
| 03:51:49PM | 10 | you seven days to confirm compliance. |
| 03:51:49PM | 11 | Patricia Sapp? |
| 03:51:57PM | 12 | MR. BAEHR:  Same issue, Your Honor.  We need |
| 03:51:58PM | 13 | information for a second cancer diagnosis. |
| 03:52:02PM | 14 | THE COURT:  Ms. Sulkin? |
| 03:52:03PM | 15 | MS. SULKIN:  Your Honor, the second cancer was |
| 03:52:08PM | 16 | actually -- the treatment she received Taxotere with.  Her |
| 03:52:13PM | 17 | first cancer diagnosis was the other cancer diagnosis, which |
| 03:52:17PM | 18 | was in 1980.  So we intend on updating this Plaintiff Fact |
| 03:52:23PM | 19 | Sheet to reflect that. |
| 03:52:24PM | 20 | THE COURT:  Wait.  Wait.  Let me see if I understand. |
| 03:52:27PM | 21 | So she had a first cancer diagnosis in 1980? |
| 03:52:30PM | 22 | MS. SULKIN:  Correct. |
| 03:52:31PM | 23 | THE COURT:  And she did not -- of course, she didn't |
| 03:52:34PM | 24 | get Taxotere, and then she had a second cancer diagnosis when |
| 03:52:38PM | 25 | she received Taxotere in what year? |

|   |   |   |
|---|---|---|
| 03:52:42PM | 1 | MS. SULKIN:  Off the top of my head, I don't know |
| 03:52:47PM | 2 | that, but it would have been after 1980. |
| 03:52:50PM | 3 | THE COURT:  Okay.  All right.  But she's got |
| 03:52:53PM | 4 | photographs before the Taxotere treatment within five years? |
| 03:52:57PM | 5 | MS. SULKIN:  Correct. |
| 03:52:59PM | 6 | THE COURT:  Okay. |
| 03:53:02PM | 7 | MR. BAEHR:  We just need a PFS reflecting these dates |
| 03:53:05PM | 8 | and the full information because that -- |
| 03:53:07PM | 9 | THE COURT:  So what we need is not the photographs, |
| 03:53:09PM | 10 | but the information.  And so I'm going to give you 30 days to |
| 03:53:14PM | 11 | cure the deficiencies and the Plaintiff Fact Sheet.  That's |
| 03:53:19PM | 12 | the dates and cancers and whatnot. |
| 03:53:23PM | 13 | Okay.  Shirley Scroggins? |
| 03:53:25PM | 14 | MR. BAEHR:  We have this as a late cure and the next |
| 03:53:28PM | 15 | one as well. |
| 03:53:28PM | 16 | THE COURT:  Okay.  Seven days to confirm compliance |
| 03:53:30PM | 17 | for Ms. Scroggins and Ms. Smith, Darlene Smith. |
| 03:53:35PM | 18 | Now we have Mary Smith. |
| 03:53:37PM | 19 | MR. BAEHR:  We need information about an additional |
| 03:53:39PM | 20 | cancer diagnosis. |
| 03:53:41PM | 21 | THE COURT:  Ms. Sulkin? |
| 03:53:42PM | 22 | MS. SULKIN:  Your Honor, we are working with the |
| 03:53:47PM | 23 | plaintiff to gather the information for her second cancer so |
| 03:53:51PM | 24 | that we know what dates to order the records and get |
| 03:53:55PM | 25 | photographs for.  She just doesn't have that information |

03:53:58PM   1   readily available, but we are working with her and she is

03:54:02PM   2   working with us.

03:54:03PM   3          THE COURT:  Okay.  Court's going to grant 30 days for

03:54:06PM   4   compliance.

03:54:08PM   5          Linda Sorensen?

03:54:10PM   6          MR. BAEHR:  We have that as a late cure.

03:54:12PM   7          THE COURT:  Seven days to confirm compliance.

03:54:14PM   8          Linda Steadman?

03:54:16PM   9          MR. BAEHR:  That's a shell PFS with scan information

03:54:19PM  10   about cancer treatment and we also need authorizations in

03:54:26PM  11   proper form.

03:54:28PM  12          THE COURT:  Ms. Sulkin?

03:54:29PM  13          MS. SULKIN:  Your Honor, the plaintiff is insistent

03:54:36PM  14   that she was only diagnosed with one cancer and we'll update

03:54:40PM  15   the Plaintiff Fact Sheet accordingly.  And we updated the

03:54:44PM  16   Plaintiff Fact Sheet and responded to the deficiency on

03:54:45PM  17   March 7th.  As to the authorizations, the plaintiff has sent

03:54:51PM  18   them in.  We're just waiting to get them via the mail, so

03:54:56PM  19   we'd ask for 30 days just in case there's an issue with the

03:54:59PM  20   post office.

03:54:59PM  21          THE COURT:  All right.  I'm going to grant 30 days to

03:55:03PM  22   upload the authorizations, and in the interim, I'm going to

03:55:10PM  23   ask Mr. Baehr to confirm compliance so that if there is

03:55:15PM  24   something additional that's missing, you can work with Ms.

03:55:21PM  25   Sulkin.

03:55:21PM  1        Okay.  Barbara Thomas, Mr. Baehr?

03:55:23PM  2        MR. BAEHR:  This is Nick.

03:55:26PM  3        MR. INSOGNA:  This one's mine, Your Honor.

03:55:28PM  4        THE COURT:  Oh, my voice.  Okay.

03:55:32PM  5        MR. INSOGNA:  Yes, this has actually been before the

03:55:36PM  6    court before.  There was an issue, we had a before photo that

03:55:39PM  7    was long before chemotherapy dated 1998.  We now have that

03:55:46PM  8    same photo uploaded with dates 2005 and of 2013.  So I, don't

03:55:53PM  9    know, if we have a reliable date and we don't have any other

03:55:57PM  10   before photos at all.

03:56:00PM  11       THE COURT:  Ms. Sulkin?

03:56:02PM  12       MS. SULKIN:  We confirmed with the plaintiff that

03:56:04PM  13   that photograph was taken in spring of 2013.

03:56:13PM  14       MR. INSOGNA:  Is there any other photographs within

03:56:16PM  15   five years --

03:56:17PM  16       THE COURT:  Well, let me ask this:  Is there any

03:56:19PM  17   explanation for the moving date?  Dates are usually fluid.

03:56:29PM  18       MS. SULKIN:  Off the top of my head, I don't know the

03:56:32PM  19   answer to that, but we can provide an affidavit with relevant

03:56:36PM  20   information about why this plaintiff listed spring of 2013 as

03:56:42PM  21   opposed to 1998 or September of 2005.

03:56:45PM  22       THE COURT:  Maybe what we need is a new photograph.

03:56:50PM  23       MS. SULKIN:  And, Your Honor, if there is an

03:56:53PM  24   additional photograph, we're happy to provide it, but as the

03:56:56PM  25   Court is aware, sometimes that's not always the case.  And so

03:57:02PM 1    if there is no additional photographs to provide, we just ask

03:57:06PM 2    that we be allowed to submit an affidavit.

03:57:09PM 3            THE COURT:  I'm going the allow that Ms. Sulkin, but

03:57:12PM 4    I think you need to make sure your client understands --

03:57:16PM 5            MS. SULKIN:  Yes, Your Honor.

03:57:17PM 6            THE COURT:  -- that like I said earlier, dates are

03:57:21PM 7    not fluid.  And she needs to be sure she's signing the

03:57:36PM 8    accurate information.  Okay.  I'm going to give you 30 days

03:57:39PM 9    to do that.

03:57:41PM 10           Beverly Thomas.

03:57:42PM 11           MS. SULKIN:  Thank you.

03:57:43PM 12           MR. BAEHR:  We have this as a late cure.

03:57:45PM 13           THE COURT:  Seven days to confirm compliance.

03:57:47PM 14           Constance Torbert?

03:57:51PM 15           MR. BAEHR:  We need information about an additional

03:57:53PM 16   cancer diagnosis.

03:57:54PM 17           THE COURT:  Ms. Sulkin?

03:57:55PM 18           MS. SULKIN:  Your Honor, the other cancer diagnosis

03:58:00PM 19   is actually in 1993, and we updated the Plaintiff Fact Sheet

03:58:07PM 20   accordingly with that information and so we believe we are

03:58:10PM 21   compliant with all outstanding orders.

03:58:15PM 22           THE COURT:  So the other one was before the Taxotere?

03:58:21PM 23           MS. SULKIN:  Yes, in 1993.

03:58:22PM 24           THE COURT:  And we do have photographs prior to the

03:58:27PM 25   Taxotere treatment?  Mr. Baehr?

03:58:29PM   1          MR. BAEHR:  This is the first that the date has been

03:58:32PM   2   identified to us so --

03:58:33PM   3          THE COURT:  Okay.  Well, this is what I'm going to

03:58:35PM   4   do.  Ms. Sulkin, this new date has been downloaded into MDL

03:58:40PM   5   Centrality?  That's a question?

03:58:43PM   6          MS. SULKIN:  Yes, Your Honor.  Yes.

03:58:45PM   7          THE COURT:  Okay.  All right.  I'm going to give you

03:58:47PM   8   seven days to confirm compliance.

03:58:48PM   9          Okay.  Linda White.

03:58:50PM  10          MR. BAEHR:  This is a roll -- oh, I'm sorry.  Did we

03:58:57PM  11   skip Margaret Wgeishofski?

03:58:59PM  12          THE COURT:  We sure did.

03:59:03PM  13          MR. BAEHR:  Okay.  The Margaret Wgeishofski case is a

03:59:06PM  14   rollover.  At the December hearing counsel noted that the

03:59:11PM  15   plaintiff was deceased and asked for 90 days to file

03:59:16PM  16   suggestion of death and substitute parties.  That would be

03:59:20PM  17   3/15 and so we ask that instead of the usual 60 days, they be

03:59:25PM  18   granted until March 15th to --

03:59:26PM  19          THE COURT:  What's the status, Ms. Sulkin?

03:59:31PM  20          MS. SULKIN:  We are in contact with the family and

03:59:34PM  21   they are still in the process of obtaining the probate

03:59:38PM  22   documents.  It's my understanding that this was actually from

03:59:42PM  23   the January 7th hearing.  That's the information that I have.

03:59:47PM  24   So we would have more time than just until March 15th.

03:59:55PM  25          THE COURT:  Okay.  Well, I'm going to grant 30 days

03:59:59PM  1   so that we can see.

04:00:07PM  2          Okay.  And Linda White.

04:00:10PM  3          MR. BAEHR:  It's a between photos case.  We have

04:00:12PM  4   Taxotere in 1999, then a second chemotherapy in 2013.  The

04:00:16PM  5   only after-photos are from five years after that in 2018.  So

04:00:20PM  6   we're asking for photos between the two treatments.

04:00:23PM  7          THE COURT:  Ms. Sulkin?

04:00:24PM  8          MS. SULKIN:  We're working with the plaintiff to get

04:00:28PM  9   more photographs.  She's searching through her home and she's

04:00:34PM  10  also asking family and friends.  So we would request 30 days

04:00:38PM  11  to try to find those photographs or alternatively the

04:00:41PM  12  opportunity to be heard and draft an affidavit indicating

04:00:46PM  13  that she cannot locate photographs between those two time

04:00:49PM  14  periods.

04:00:50PM  15         THE COURT:  Okay.  Court's going to grant 30 days.

04:00:56PM  16         Mevilyn Wilson?

04:00:56PM  17         MR. BAEHR:  Your Honor, I have Mevilyn Wilson and

04:01:01PM  18  Valerie Wilson both as late cures.

04:01:03PM  19         THE COURT:  Okay.  Court's going to grant seven days

04:01:05PM  20  to confirm compliance.

04:01:11PM  21         All right.  I think that completes our call docket

04:01:14PM  22  for today.  Thank you all very much.  Court's adjourned.

            23                          *  *  *  *

            24         (WHEREUPON, the proceedings were adjourned.)

            25                          *  *  *  *

1                    REPORTER'S CERTIFICATE

2          I, Nichelle N. Wheeler, RMR, CRR, Official Court
   Reporter, United States District Court, Eastern District of
3  Louisiana, do hereby certify that the foregoing is a true and
   correct transcript, to the best of my ability and
4  understanding, from the record of the proceedings in the
   above-entitled and numbered matter.

5

6                         ___/s/ Nichelle N. Wheeler___
                            Official Court Reporter
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25