# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION** | **MDL No. 2740** |
| | **SECTION: "H"** |
| **This Document Relates To:** *Tina Hickey,* *Case No. 2:18-cv-04731* | **JUDGE MILAZZO** |
| | **MAG. JUDGE NORTH** |

## PLAINTIFF'S OPPOSITION AND RESPONSE TO DEFENDANT HOSPIRA'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PREEMPTION GROUNDS

Plaintiff Tina Hickey, hereby opposes the Statement of Undisputed Facts in Support of Motion for Summary Judgment on Preemption Grounds filed by Defendants Hospira Inc. and Hospira Worldwide, LLC (collectively "Defendant" or "Hospira"), pursuant to Local Rule 56.2:

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 1. Plaintiff Tina Hickey was diagnosed with non-metastatic, ER+ breast cancer on August 23, 2013.<br><br>Ex. A, Fifth Amended Plaintiff Fact Sheet ("PFS") at 11, 12.<br><br>She underwent a bilateral mastectomy in September 2013 and also received radiation therapy.<br><br>Ex. A (PFS) at 24. | Uncontested. |
| 2. After her surgery, Ms. Hickey received chemotherapy treatments from October 25, 2013 to February 6, 2014.<br><br>Ex. A (PFS) at 15. | Uncontested. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| Her regimen consisted of four cycles of Hospira-manufactured docetaxel and Cyclophosphamide administered approximately every three weeks.<br><br>Ex. A (PFS) at 15. | |
| 3. Ms. Hickey's treatment was successful, and she is currently cancer-free.<br><br>Ex. A (PFS) at 16. | Uncontested. |
| 4. Hospira's docetaxel is an unbranded version of Taxotere, the branded docetaxel product developed by Sanofi US Services Inc. and Sanofi-Aventis U.S. LLC., and approved by the FDA in 1996.<br><br>Ex. B, Expert Report of Marianne C. Mann, M.D. (Oct. 8, 2021) ("Mann Rep.") 6. | Uncontested. |
| 5. The FDA approved the use of Taxotere for the treatment of advanced or metastatic breast cancer in 1996. The labeling identified alopecia as a possible side effect and advised patients that "hair generally grows back."<br><br>Ex. C (NDA 020-449 Approval Letter);<br>Ex. D (Sanofi Taxotere Label (Dec. 23, 1999)) at 31. | Contested.<br><br>The labeling advised patients as follows:<br><br>"Hair loss will begin after the first few treatments and varies from patient to patient. Once you have completed all your treatments, hair generally grows back."<br><br>Ex. D at 31. |
| 6. After Sanofi's patent for Taxotere expired in 2010, several manufacturers obtained FDA approval to sell docetaxel products under § 505(b)(2) of the Federal Food, Drug, and Cosmetic Act, which permits follow-on medications to gain FDA approval through an abbreviated pathway based on the safety and efficacy data of the branded or Reference Listed Drug ("RLD").<br><br>21 U.S.C. § 355(b)(2);<br><br>Ex. E (Ross Report (June 8, 2020)) ¶ 83. | Uncontested. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 7. Hospira submitted its § 505(b)(2) New Drug Application ("NDA") for docetaxel in July 2007, and pursuant to § 505(b)(2), the FDA approved the NDA in March 2011.<br><br>Ex. F (Original New Drug Application (July 9, 2007)), HOS00200007762-7765; Ex. G (NDA Approval (Mar. 9, 2011)), HOS01000000668-729. | Uncontested. |
| 8. FDA approved the similar NDAs for the docetaxel products of Sandoz and Accord in June 2011.<br><br>Ex. E (Ross Rep.) ¶ 83. | Uncontested. |
| 9. For all three products, the warnings, precautions and adverse reactions information in the approved labeling was identical to the information in the approved Taxotere labeling.<br><br>Ex. H (Hospira Docetaxel Launch Label (Feb. 2011)), HOS00100000119-164; Ex. I (Accord Docetaxel Launch Label (June 2011)); Ex. J (Sandoz Docetaxel Launch Label (June 2011)); Ex. K (Sanofi Taxotere Label (May 2010)). | Uncontested. |
| 10. Like the Taxotere labeling, the Hospira docetaxel labeling described alopecia as one of the most common adverse reactions and also referred to alopecia in the Patient Counseling section and five tables. (Indeed, the FDA-approved Hospira labeling was identical to that of Taxotere in every respect, with the minor difference in the preparation-and-administration section of the labeling, which described a single-step dilution for Hospira docetaxel versus a two-step process for Taxotere.)<br><br>Compare Ex. H (Hospira Docetaxel Launch Label), HOS00100000119-165 with Ex. K (Sanofi Taxotere Label). | Uncontested. |
| 11. Hospira's NDA sought approval for docetaxel injection, with a concentration of 10 mg/mL per each | Uncontested. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| vial (i.e., less concentrated than Taxotere, which is 40 mg/mL per vial). Otherwise, Hospira docetaxel for injection was the same active ingredient, with the same route of administration, seeking the same indications as those of the previously approved Taxotere. Hospira did not submit new clinical data as part of its 505(b)(2) NDA, and the FDA relied entirely on its prior review of the Sanofi NDA for Taxotere to support the safety and efficacy of Hospira docetaxel.<br><br>Ex. F (Original New Drug Application), HOS00200007762- 7765; Ex. F (Mann Rep.) at 13. | |
| 12. In September 2015, Pfizer acquired Hospira, after which Pfizer marketed docetaxel through Hospira, Inc. as a Pfizer subsidiary. (Pfizer received its own 505(b)(2) approval for docetaxel in March 2014.)<br><br>Ex. B (Mann Rep.) at 12. | Uncontested. |
| 13. Sanofi proposed amending the Adverse Reactions section of the Taxotere labeling in March, June and August 2004 to add a subsection called "Other persistent reactions," which listed alopecia as one such reaction. The FDA deleted the proposed subsection without giving a reason.<br><br>Ex. B (Mann Rep.) at 24. | Contested.<br><br>There is no evidence of who deleted the proposed subsection or whether it was done intentionally. |
| 14. The term "alopecia" includes all types of hair loss, including more persistent or permanent cases.<br><br>Ex. B (Mann Rep.) at 11; Ex. L (Kotsianti Dep. (Feb. 19, 2020)) at 164:11-165:8; Ex. M (Schmider Dep. (June 17, 2019)) at 233:14-236:10. | Contested.<br><br>The evidence cited does not support the broad proposition that "alopecia" means "permanent alopecia." Instead, it discusses "alopecia" only as a "high level" medical coding term in the MedDRA system for classifying adverse events in the context of safety reporting. This has no bearing on the intended meaning of "alopecia" |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| The FDA Adverse Event Reporting System ("FAERS") can be searched using the term "alopecia," but not "permanent alopecia" or "persistent alopecia." <br><br> Ex. B (Mann Rep.) at 11; *accord* Ex. N (Rodriguez Dep. (Mar. 13, 2020)) at 191:10-193:2. | as presented in the docetaxel label, which is written for laypersons and is outside the context of pharmacovigilance. <br><br> Further, Dr. Schmider's testimony illustrates that in the safety reporting context, the two terms are not synonymous where he states that it is not possible to locate cases of permanent alopecia in safety databases because they are coded under the MedDRA preferred term of "alopecia" <br><br> Ex. M (Schmider Dep.) at 235:8-19; *see also* Ex. N (Rodriguez Dep.) at 191:10-193:2. <br><br> To the extent Hospira points to this evidence to claim that "alopecia" and "permanent alopecia" are synonymous to physicians, the testimony does not support it. For instance, Dr. Kotsianti does not say that "alopecia" means permanent alopecia. She says "alopecia" means "partial or complete hair loss to any party of the body that has hair." She then goes on to say that the condition of "alopecia" can be temporary or permanent. <br><br> Ex. L (Kotsianti Dep.) at 164:11 -16; *see also* Ex. M (Schmider Dep.) at 235:24 – 236:1 ("Alopecia means hair loss and it can be either permanent or reversible."). |
| 15. Hospira monitored its docetaxel product in the post-approval period using a three tiered process of review that involved physicians and, ultimately the head of the global safety department. <br><br> Ex. B (Mann Rep.) at 16; Ex. M (Schmider Dep.) at 21:18-25:3. | Uncontested. |
| 16. Signal detection of a safety concern involved looking for an aberration in adverse event reports— | Contested. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| i.e., a report different in the type or severity of an event or, across all reports, of the frequency of an event.<br><br>Ex. B (Mann Rep.) at 16;<br>Ex. M (Schmider Dep.) at 89:7-91:14.<br><br>The sources of information available to Hospira from March 2011 to January 2014 were the scientific literature and post-marketing case reports.<br><br>Ex. B (Mann Rep.) at 17. | Hospira had pre-marketing safety data as evidenced by the interim clinical trial data found in its foreign labeling during this period. Hospira also had access to the final 10-year results, which were publicly available.<br><br>Ex. E (Ross Rep.) ¶ 98.<br><br>Further, Hospira had Dr. Schmider's knowledge obtained during his pharmacovigilance work for Sanofi on Taxotere from 2011 through 2013.<br><br>*Id.* ¶¶ 131-133. |
| 17. One article in the scientific literature during this period (Nicolas Kluger, et al., Permanent Scalp Alopeica Related to Breast Cancer Chemotherapy by Sequential Fluorouracil / Epirubicin / Cyclophosphamide (FEC) and Docetaxel, a Propsective Study of 20 Patients, 23(111) Annals of Oncology 2879-2884 (2012)) followed 1000 patients for four years and found that only 20 (0.2%) developed permanent hair loss. There were significant confounding factors: all had received FEC followed by docetaxel; all had been given hormonal and radiation therapy; and many had received other chemotherapy as well.<br><br>Ex. O (Kluger et al. (2012)); *see also* Ex. B (Mann Rep. at 30. | Contested.<br><br>The authors did not find that other factors, like radiation and hormonal therapy, confounded the patients' permanent alopecia.<br>The Kluger authors attributed the permanent alopecia they observed to docetaxel use with the exception of busulfan administered in the setting of high-dose bone marrow pre-conditioning treatment.<br><br>Pl's Ex. 12 (Plunkett Report) at 18.<br><br>The authors concluded:<br>"Chemotherapy-induced hair loss is typically considered completely reversible, but this is not always the case. Physicians and patients need to be aware of the rare possibility that alopecia following chemotherapy can be persistent." *Id.*<br><br>Further, the article estimated the prevalence of permanent alopecia among docetaxel users to be 2%, which is "not a rare event." *Id.* at 20-21. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 18. The limited other scientific literature in the same time frame addressed single cases or small numbers of cases, which also involved the same or similar confounding variables. The prevalence of permanent hair loss reported in this literature (0.059%, ~2%, and 3.9%) was lower than in articles submitted to the FDA before approval of Hospira's 505(b)(2) NDA or was described in the articles as "unknown."<br><br>Ex. B (Mann Rep.) at 27-31; Ex. P (Palamaras); Ex. O (Kluger et al.); Ex. Q (Bertrand (2013)). | Contested.<br><br>There was ample information in these papers to give Hospira reason to believe a causal association with docetaxel was likely.<br><br>For instance, the Miteva paper considered 10 cases of permanent alopecia and noted that six had taken docetaxel, three had taken busulfan (used to destroy bone marrow cells in advance of a transplant).<br><br>Pl.'s Ex. 12 (Plunkett Report) at 19.<br><br>Palamaras *et al.* considered patients treated at their dermatology practice for hair loss. Of the 7 with persistent or irreversible hair loss, five had docetaxel exposure and two had busulfan. The authors noted similarities with the cases observed in Prevezas. *Id.*<br><br>Bourgeois *et al.* studied cases found in France's drug safety database. Among the 100 patients reporting permanent alopecia, the majority of reports involved docetaxel. The authors linked these results to those of Taxotere's clinical trials and attributed causation to docetaxel. The authors also estimated that, each year, docetaxel could induce a persisting alopecia in 300 patients in France. *Id.* at 19-20.<br><br>The Tosti, Miteva, Palamaras, and Bertrand papers all linked permanent alopecia to docetaxel. *See e.g., Id.* at 19-21.<br><br>The Tosti paper included a call to action in the science community to petter understand docetaxel-induced permanent alopecia. *Id.* at 19 |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| | ("The real prevalence of this devastating long-term side effect of docetaxel is unknown, and efforts should be made to understand the mechanism of follicle destruction and to identify strategies for possible prevention."). |
| 19.  After oncology patient advocates contacted the FDA to express concerns that the docetaxel labeling did not state that hair loss could be permanent, the agency in March 2015 sent Sanofi (as the manufacturer of the RLD) a request for a summary of cases in Sanofi's internal clinical database regarding permanent partial or total alopecia associated with the use of docetaxel.<br><br>Ex. B (Mann Rep.) at 18. | Uncontested. |
| 20.  The FDA did not send a similar request to Hospira, nor did it advise the company that permanent hair loss was a concern, nor did it make a public safety announcement about the risk of permanent hair loss.<br><br>Ex. B (Mann Rep.) at 19. | Contested to the extent that the assertion "nor did it make a public safety announcement about the risk of permanent hair loss" is unsupported by the evidence cited. |
| 21.  Sanofi found 2172 reports of alopecia (of all types) associated with docetaxel in its database. Of that number, 70 percent involved the use of docetaxel in combination with other chemotherapy agents known to cause alopecia, and many reports concerned patients who also received hormonal therapies that cause alopecia. Only 117 reports (5.3%) described "permanent," "irreversible" or "lasting> 2 years" alopecia.<br><br>Ex. B (Mann Rep.) at 18; Ex. R (Docetaxel 2.5 Clinical Overview: Addition of Permanent Alopecia to the Docetaxel United States Prescribing Information (Mar. 2017) ("Clinical Overview")), HOS002000030958 at -962. | Uncontested. |
| 22.  The FDA medical officer who reviewed the Sanofi submission concluded: "I think the sponsor's | Uncontested. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| simple statement that permanent cases have been reported is all that can reliably be said given the tremendous limitations of the available data." <br><br> Ex. B (Mann Rep.) at 19; Ex. S (Prowell T to Diggs F, et al., Congressional Response Letter, Taxotere Adverse Events (Dec. 4, 2015)). | |
| 23.  In December 2015, Sanofi added the following sentence to the Adverse Reaction section of the labeling: "Cases of permanent alopecia have been reported." <br><br> Ex. T (Sanofi Taxotere Label (Dec. 2015)). | Uncontested. |
| 24. The FDA did not advise Hospira of the revision once it was made and did not advise or instruct Hospira to make the same revision. After Hospira became aware of a July 2016 update regarding docetaxel labeling on the FDA website, it initiated a review of its pharmacovigilance safety database, searching through September 17, 2016, for all cases reporting "alopecia" with docetaxel. <br><br> Ex. B (Mann Rep.) at 19; Ex. U (Halloran Dep. (Nov. 26, 2019)) at 94:9-18; Ex. R (Clinical Overview) at -962. | Uncontested. |
| 25. That review identified 146 cases of alopecia reported to Hospira. In 43 of the 146 cases (29%), the person reporting the case described alopecia as "permanent" or "irreversible." In 33 (76%), the reporter listed co-suspect drugs; in 14 (33%), concomitant drugs; and in 20 (46%), prior chemotherapy or radiotherapy.  The reporter identified docetaxel as the single agent or the only suspect drug in just 10 (6.8%) of the 146 cases. On further investigation of those 10 reports, however, Hospira determined that eight cases involved confounding chemo- or hormone therapies. <br><br> Ex. B (Mann Rep.) at 20; Ex. R (Clinical Overview) at -963; Ex. L (Kotsianti Dep.) at 170:1-172:12. | Contested to the extent it states Hospira "determined that eight cases involved confounding chemo- or hormone therapies." The evidence states only that other therapies "may have contributed to the event." Further, the evidence does not support the statement that concomitant hormonal therapy is "a known risk factor for" "permanent" or "irreversible" alopecia – only for "alopecia." <br><br> Ex. B (Mann Rep.) at 20. |

| Sandoz's Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| | Contested to the extent that it suggests the cumulative evidence considered in the Clinical Overview was insufficient to support a label change proposal. To the contrary, the Clinical Overview concludes, "On the basis of the Pfizer database and literature review, which has consistent findings with the MAH of the reference drug (Sanofi), Pfizer is proposing to update the docetaxel USPI with the ADR permanent alopecia."<br><br>Ex. R (Clinical Overview) at -966. |
| 26. On March 31, 2017, Hospira/Pfizer submitted a CBE application and, at the same time, implemented changes to the labeling that addressed reports of permanent alopecia in the Post-Marketing Experience and Patient Counseling sections of the labeling and in the Patient Package Insert.<br><br>Ex. V (CBE-0 Submission (Mar. 31, 2017)), HOS03200000001-62; Ex. U (Halloran Dep.) at 106:1-108:5. | Uncontested. |
| 27. The Post-Marketing Experience section noted, "Cases of permanent alopecia have been reported." The Patient Counseling Information noted that the side effects associated with docetaxel may include "hair loss (cases of permanent hair loss have been reported)." The Patient Information Leaflet noted, "hair loss: In some people permanent hair loss has been observed."<br><br>Ex. V, (CBE-0 Submission), HOS03200000001-62. | Uncontested. |

Dated: March 31, 2022                          Respectfully submitted,

*/s/ Christopher L. Coffin*                     */s/ Karen B. Menzies*
Christopher L. Coffin (#27902)          Karen Barth Menzies (CA Bar #180234)

PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
GAINSBURGH   BENJAMIN   DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

J. Kyle Bachus
Bachus & Schanker, LLC
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045 Phone:
510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC

338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

John Gomez
The Gomez Law Firm, PLLC
655 West Broadway, Suite 1700
San Diego, CA 92101
Phone: (619) 237.3490
Fax: 619.237.3496.
john@thegomezfirm.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, FL 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904 15058 River Road

P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Jessica Perez Reynolds
Pendley, Baudin & Coffin
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Phone: (225) 687-6396
Fax: (225) 687-6398
jperez@pbclawfirm.com

Darin L. Schanker
Bachus Schanker
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
dls@coloradolaw.net

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor

Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@amalaw.com

New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Zachary Wool
Barrios Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
zwool@bkc-law.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ M. Palmer Lambert*
M. PALMER LAMBERT