## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)                             **MDL NO. 2740**
PRODUCTS LIABILITY LITIGATION

                                                        **SECTION "H" (5)**

THIS DOCUMENT RELATES TO:

Catherine Hurrell, Case No. 17-13954

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
### MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Catherine Hurrell's strict liability and negligence claims are time-barred on the face of her pleadings.[1]  Idaho's two-year statute of limitations started running in July 2003 when Ms. Hurrell sustained her pleaded injury six months after she finished chemotherapy in January 2003.  Ms. Hurrell's two-year statute of limitations period accordingly expired in July 2005.  But Ms. Hurrell did not file suit until December 2017—twelve years and five months too late.

Because Ms. Hurrell's claims are time-barred on their face, her case can only survive if she can show that a statutory or equitable exception applies to render the filing of her lawsuit timely. But no such exception exists for tolling Ms. Hurrell's untimely claims.  Ms. Hurrell's strict liability and negligence claims should be dismissed as time-barred pursuant to Federal Rules of Civil Procedure 12(c) as a result.

Ms. Hurrell's remaining claims sounding in fraud should also be dismissed pursuant to Rules 9(b) and 12(c).[2]  This Court previously ruled that any allegations of fraud must be "perfected within the short form complaints filed in the individual member cases."  Ms. Hurrell has not alleged

---

[1]    *See* Exhibit A, Plaintiff Catherine Hurrell's Amended Short Form Complaint ("SFC") ¶ 13 (Counts I and III).

[2]    *Id.* (Counts IV, V, VI, and VII).

facts in her short form complaint to establish any viable fraud-based claims, and, as a result, Ms. Hurrell's remaining claims for negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, and fraud and deceit, must also be dismissed.

## FACTUAL BACKGROUND

Ms. Hurrell alleges she received a chemotherapy regimen that included Taxotere from October 2002 to January 2003.[3]  Almost fifteen years later, on December 1, 2017, Ms. Hurrell filed a Short Form Complaint ("SFC") in this MDL, alleging the Taxotere in her chemotherapy treatment caused her to develop "permanent disfigurement, including permanent alopecia" on her scalp.[4]   In her SFC, Ms. Hurrell adopted the Second Amended Master Complaint's definition of "permanent alopecia," which it defined as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy."[5]   Because Ms. Hurrell completed chemotherapy in January 2003,[6]  she sustained her injury (permanent alopecia) in July 2003—six months after she completed chemotherapy.

The Second Amended Master Complaint further alleges that permanent alopecia is so apparent that it has stigmatized Plaintiffs (including Ms. Hurrell) and negatively affected their body image, social relationships, and emotional well-being.[7]   Indeed, Ms. Hurrell alleges that her permanent alopecia has required her to incur "psychological counseling and therapy expenses" and resulted in "severe and debilitating emotional distress."[8]   Despite specifically pleading that she

---

[3]   Ex. A, SFC ¶ 10.

[4]   *Id.* ¶ 12.

[5]   *Id.* at 1; Rec. Doc. 4407 (Second Amended Master Complaint) ¶ 181 (defining "PCIA" as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy").

[6]   Ex. A, SFC ¶ 10.

[7]   *See* Rec. Doc. 4407 ¶¶ 214–220.

[8]   *See* Ex. A, SFC ¶ 12.

2

developed this stigmatizing permanent alopecia six months after she finished treatment with Taxotere, in July 2003, Ms. Hurrell waited more than fourteen years before filing her lawsuit.[9]

## LEGAL STANDARD

The standard of review for a Rule 12(c) motion for judgment on the pleadings is the same as for a Rule 12(b)(6) motion to dismiss. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Phillips v. City of Dallas*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A motion for judgment on the pleadings is appropriate where "there are no disputed issues of material fact and only questions of law remain." *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002).

In the case of affirmative defenses, judgment on the pleadings should be granted where the affirmative defense is apparent on the face of the complaint such that no question of fact exists. *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368 (West 2009); *see also Roger Lee, Inc. v. Trend Mills, Inc.*, 410 F.2d 928, 930 (5th Cir. 1969) (affirming judgment on the pleadings in favor of the defendant based upon statute of limitations).

## ARGUMENT

**I.   Ms. Hurrell's Strict Liability and Negligence Claims Are Time Barred.**

Ms. Hurrell's strict liability and negligence claims are time-barred because: (1) on the face of her own pleadings, she sustained her injury six months after the end of her chemotherapy treatment, but did not file suit within two years thereafter; and (2) she cannot show any tolling exception applies to save her otherwise untimely claims.

---

[9]   *See generally* Ex. A, SFC.

### A.   Ms. Hurrell's claims are time-barred on their face.

Plaintiff alleges she experienced her injury—permanent hair loss allegedly caused by Taxotere[10]—in July 2003, six months after she completed chemotherapy treatment in January 2003. The Second Amended Master Complaint defines permanent chemotherapy-induced alopecia as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy."[11] In filing her Amended Short Form Complaint ("SFC"), Ms. Hurrell specifically adopted the Second Amended Master Complaint's allegations, including the six-month injury definition. This Court has recognized multiple times, under multiple states' laws, that, "on the basis of the allegations in the Second Amended Master Complaint, a plaintiff's hair loss becomes permanent six months after completing chemotherapy."[12] The Fifth Circuit has also affirmed that, "as a matter of law, the injury of 'an absence of or incomplete hair regrowth six months beyond completion of chemotherapy' is sustained when, six months after the completion of chemotherapy, a person has an absence of or incomplete hair regrowth." *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d 384, 390 (5th Cir. 2021) (affirming dismissal of three plaintiffs' claims as time-barred under Louisiana law); *see also In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 860 F. App'x 886, 887 (5th Cir. 2021) (affirming dismissal of plaintiff's claims as time-barred under Louisiana

---

[10]   Rec. Doc. 4407 at, *e.g.*, ¶ 231. Sanofi disputes Plaintiffs' assertions that their injuries, if any, were caused by Taxotere. Nothing in this Memorandum should be perceived as an admission by Sanofi to the contrary. However, for the purposes of this Motion, even if Taxotere caused Ms. Hurrell's injuries, her claims still are time-barred under Idaho law.

[11]   Rec. Doc. 12057 (Order and Reasons Granting Defs.' Mot. For J. on the Pleadings on Ms. Greer's Claims) at 4 (quoting Rec. Doc. 4407 ¶ 181).

[12]   Rec. Doc. 10833 (Order Granting Summ. J. on Ms. Durden's Claims) at 2 ("[t]his Court has recognized that, on the basis of the allegations in the Second Amended Master Complaint, a plaintiff's hair loss becomes permanent six months after completing chemotherapy."); *see also* Rec. Docs. 7571 (Order re Summ. J. on Johnson, Earnest, Francis, and Mills) (same), 9110 (Order Granting Summ. J. on Ms. Thibodeaux's Claims) (same), 10807 (Order Granting Summ. J. on Ms. Sanford's claims) (same), 4407 (Second Amended Master Complaint) ¶ 181; Rec. Doc. 12057 (Order and Reasons Granting Defs.' Mot. For J. on the Pleadings on Ms. Greer's Claims and applying the injury definition outlined in the Second Amended Master Complaint).

law). Ms. Hurrell completed chemotherapy in January 2003 and accordingly sustained her injury six months later—in July 2003.

Pursuant to Idaho Code §§ 6-1403(3) and 5-219(4), Ms. Hurrell had two years from July 2003—the date her cause of action accrued—to file a complaint. Idaho Code § 6-1403(3) (Products-liability claims cannot "be brought more than two (2) years from the time the cause of action accrued as defined in section 5-219, Idaho Code."); Idaho Code § 5-219 (A plaintiff must bring a cause of action for personal injuries "[w]ithin two (2) years."). Unless an exception applies, claims accrue upon "the occurrence, act or omission complained of." Idaho Code § 5-219(4), 6-1403(3). The Idaho Supreme Court has held that "in most cases, the act or omission complained of and the injury to the plaintiff occur at the same time, particularly in the medical context." *Stuard v. Jorgenson*, 249 P.3d 1156, 1159–60 (Idaho 2011). An injury is present and the cause of action accrues when there is "some damage" that is "objectively ascertainable." *Id.*[13]

PCIA, as defined in the Second Amended Master Complaint, is an injury so obvious that it is alleged to have stigmatized all Plaintiffs.[14] And, as this Court has already recognized and the Fifth Circuit has affirmed, Plaintiffs' pleaded injury is knowable through personal observation, and therefore objectively ascertainable, at the time it is sustained. *See In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d at 392 (noting obvious hair loss persisting more than six months after chemotherapy "should have caused an inquiry within a reasonable time" and indicating hair loss at six months post-chemotherapy was "sufficient[ly] certain[]" to begin the running of the statute) (internal citations omitted); *see also Wyman v. Eck*, 161 Idaho 723, 726, 390 P.3d 449, 452 (2017)

---

[13]   Ms. Hurrell cannot argue the statute was tolled until the full extent of her injuries was allegedly realized. Idaho Code § 5-219(4) explicitly states that "the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom."

[14]   Rec. Doc. 4407 ¶¶ 181, 214−220.

(finding plaintiff's cancer was sustained when cancer *would have been* revealed on a medical biopsy, not when cancer was actually diagnosed).

Ms. Hurrell sustained an objectively ascertainable injury six months after chemotherapy when her hair had not grown back as expected. Her claims were therefore barred two years later, by July 2005. Because Ms. Hurrell did not file her Complaint until December 2017, her claims are time-barred on their face.

**B.      No exception applies to save Ms. Hurrell's untimely claims.**

Under Idaho law, Ms. Hurrell bears the burden of proving that a facially untimely cause of action accrued within the limitations period. *Billings v. Sisters of Mercy of Idaho*, 389 P.2d 224, 232 (Idaho 1964) (plaintiff bears the burden of proving the fraudulent-concealment exception applies). Ms. Hurrell cannot do so.

**1.   The discovery rule does not save Ms. Hurrell's untimely claims.**

The Idaho legislature has "expressly rejected" the idea of a general discovery rule as a means of tolling the statute of limitations. *Stuard*, 249 P.3d at 1159–61 ("'[W]hether there was some damage, or whether that damage was objectively ascertainable, does not depend upon the knowledge of the injured party' because such dependence would effectively create a discovery rule, which the legislature has expressly rejected." (quoting *Lapham v. Stewart*, 51 P.3d 396, 401 (Idaho 2002))); *accord Tingley v. Harrison*, 867 P.2d 960, 964 (Idaho 1994) ("[T]his Court has refused to engraft I.C. § 5–219(4) with a discovery rule."); *Theriault v. A.H. Robins Co.*, 698 P.2d 365, 370 (Idaho 1985) ("[Plaintiff] urges us to hold that a cause of action does not accrue under I.C. § 5–219(4) until the injured party discovers or should have discovered the facts giving rise to the cause of action. This we decline to do."). Instead, Idaho law allows the statute of limitations to be tolled only where a plaintiff alleges the defendant (1) left a foreign object in a patient's body,

6

which has no relevance here, or (2) fraudulently concealed "*the fact of damage*" from the plaintiff. Idaho Code § 5-219(4) (emphasis added).

Ms. Hurrell has not pled facts sufficient to establish that the fraudulent-concealment exception applies here.  That exception applies only when "the fact of damage has, for the purpose of escaping responsibility therefor, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer."  Idaho Code § 5-219(4); *see also Theriault*, 698 P.2d at 369 (requiring concealment of the fact of damage in order to hinder timely prosecution of claim and lull claimant into inaction).  As discussed below,[15] Ms. Hurrell's only potentially viable claims are for strict liability failure to warn and negligence, and she accordingly may not rely on fraud allegations to argue this exception applies to those claims.  Even if she could, the Second Amended Master Complaint alleges only run-of-the-mill arguments that Sanofi allegedly concealed the risks associated with Taxotere.[16]  Those types of boilerplate fraudulent-concealment allegations could not support a finding that Sanofi "fraudulently and knowingly" concealed "the fact of damage" from Ms. Hurrell "for the purpose of escaping responsibility" and lulling her into inaction.

The heart of each Plaintiff's claim in this MDL is that the hair loss they sustained six months after chemotherapy was so apparent it stigmatized all Plaintiffs, their body image, and their social relationships.[17]  Ms. Hurrell adopted each of those allegations and also specifically pleaded that her "permanent" alopecia has forced her to incur "psychological counseling and therapy

---

[15]   *See infra* at Sec. II.

[16]   Rec. Doc. 4407 ¶¶ 250−256.  *See also infra* at n.19 (the Second Amended Master Complaint identifies publicly available news articles and studies associating Taxotere with Ms. Hurrell's alleged injury as early as 2006); Sec. II (Ms. Hurrell has not pleaded *any* facts in her SFC supporting her fraud-based claims, much less facts sufficient to satisfy Rule 9(b)).

[17]   Rec. Doc. 4407 ¶¶ 214−20.

expenses" and resulted in "severe and debilitating emotional distress."[18]  Ms. Hurrell therefore cannot argue that she was unaware of the "fact of damage"—her permanent hair loss—in July 2003 when her injury was sustained.  *See Theriault*, 698 P.2d at 369 ("[Plaintiff] has failed to produce any evidence of conduct by [defendant] designed to conceal facts in an effort to hinder her in prosecuting her claim; nor is there anything in the record to show that [defendant] concealed material facts or made false representations which lulled [plaintiff] into inaction during the period in which she could have brought this lawsuit.").  The fraudulent-concealment exception accordingly does not apply to save Ms. Hurrell's untimely claims.[19]

## 2. The doctrine of equitable tolling does not apply to Ms. Hurrell's untimely claims.

The doctrine of equitable estoppel is also inapplicable.  Unlike the fraudulent-concealment exception, "estoppel does not eliminate, toll, or extend the statute of limitations" but instead "bars a party from asserting the statute of limitations as a defense for a reasonable time after the party asserting estoppel discovers or reasonably could have discovered the truth."  *See City of McCall v. Buxton*, 201 P.3d 629, 637 (Idaho 2009).  To be viable, plaintiff must allege not only some form of misrepresentation but also defendant's intent that the plaintiff act on it and the fact that plaintiff

---

[18]  *See* Ex. A, SFC ¶ 12.

[19]  Even if Ms. Hurrell could establish that the fraudulent-concealment exception applied, her claims are still untimely.  Idaho Code § 5-219(4) provides that a cause of action alleging tolling based on the "fraudulent concealment exception[] must be commenced within one (1) year following the date of accrual," which occurs "when the injured party knows or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of."  Albeit under a different state's law, the Fifth Circuit has held that the publicly available information cited in the Second Amended Master Complaint was sufficient to link Taxotere to permanent alopecia and start the running of the statute of limitations well before 2017.  *See In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 860 F. App'x at 892 (affirming dismissal of plaintiff's claims and also noting that plaintiffs who took Taxotere are charged with all that a reasonable inquiry would have revealed, including the published studies and articles cited in plaintiffs' second amended master complaint); *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 995 F.3d at 393 (based on the allegations in the Second Amended Master Complaint, plaintiffs' causes of action were reasonable knowable by October 2015).  Ms. Hurrell did not conduct a reasonable investigation into her alleged injury, and, had she done so, she would have found sufficient information linking Taxotere to permanent alopecia long before December 2016—one year before she filed suit.

did so. *Theriault*, 698 P.2d at 369 (outlining four elements of equitable estoppel). Estoppel will not apply when a plaintiff should know of her claim but does not exercise reasonable diligence to ascertain it or to file suit. *See, e.g.*, *Ferro v. Society of St. Pius X*, 149 P.3d 813, 819 (Idaho 2006) (concluding that equitable estoppel did not apply because plaintiff reasonably should have known of the circumstances but "did not proceed with due diligence in filing [the] lawsuit"). Equitable estoppel does apply to save Ms. Hurrell's claims.

Ms. Hurrell does not allege that Sanofi made statements intended to induce her not to file suit or that Ms. Hurrell relied on them to her detriment. *Id.* Nor do the boilerplate concealment allegations in the Second Amended Master Complaint support such a theory. To the contrary, the Second Amended Master Complaint explicitly acknowledges both that Ms. Hurrell's injury was obvious and that, as early as 2006, information associating Taxotere and permanent hair loss has been publicly available.[20] And the Fifth Circuit has already determined that publicly available information regarding Taxotere and the reported risk of PCIA would have been uncovered by a plaintiff exercising reasonable diligence. *See In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d at 393 (finding evidence "relevant to what a reasonable inquiry" by plaintiffs would have uncovered was publicly available as early as 2006 when "women who called themselves 'Taxotears' formed a group with an online presence"). Because due diligence would have revealed publicly available information regarding her claim well before December 2015, two years before Ms. Hurrell filed suit, Ms. Hurrell's untimely claims cannot be saved by the doctrine of equitable tolling. *See Ferro*, 149 P.3d at 819.

---

[20]   Rec. Doc. 4407 ¶¶ 150−158 (describing the publicly available information linking Taxotere and PCIA, including the "Taxotears," a 2010 Globe and Mail article, and a 2010 CBS Evening News article).

## II.     Ms. Hurrell Has Alleged No Facts Supporting Her Fraud-Based Claims, and They Too Should Be Dismissed.

In addition to her strict liability failure-to-warn and negligence claims, Ms. Hurrell also asserts four claims sounding in fraud: negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, and fraud and deceit.[21]  To state a claim for fraud, Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud."

In ruling on Defendants' Motion to Dismiss the First Amended Master Complaint in 2017, Judge Engelhardt recognized the "limitations" associated with formulating fraud-based allegations within a Master Long Form Complaint.[22]  While the fraud-based counts were not entirely dismissed from the MDL at that time, the Court held that any allegations of fraud must be "perfected within the short form complaints filed in the individual member cases."[23]  Ms. Hurrell, however, has not pleaded *any* facts in her SFC supporting her fraud-based claims.[24]  All of Ms. Hurrell's fraud-based claims accordingly must be dismissed under Rules 12(c) and 9(b), consistent with Judge Engelhardt's prior ruling.

## **CONCLUSION**

For the reasons stated above, Ms. Hurrell's claims must be dismissed.

---

[21]   *See* Ex. A, SFC ¶ 13.

[22]   *See* Exhibit B, Hr'g Tr. at 22:22–23:7 (Aug. 30, 2017) (Engelhardt J., presiding).

[23]   *Id.* at 23:4–7.

[24]   *See generally* Ex. A, SFC.

Respectfully submitted,

 /s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE  URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Jon Strongman
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com
jstrongman@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC and
Sanofi U.S. Services Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 25, 2022, I electronically filed the foregoing with the Clerk

of the Court using the ECF system which sent notification of such filing to all counsel of record.

*/s/ Douglas J. Moore*