UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |

THIS DOCUMENT RELATES TO:

JoAnn Coates, Case No. 18-cv-8898

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff JoAnn Coates's strict liability and negligence claims[1] are time-barred on the face of her pleadings. North Dakota's six-year statute of limitations started running in May 2007 when Ms. Coates sustained her pleaded injury six months after she finished chemotherapy in November 2006. Her six-year limitations period accordingly expired in May 2013. But Ms. Coates did not file suit until September 25, 2018—over five years too late.

Because Ms. Coates's claims are time-barred on their face, her case can only survive if she can show that a statutory exception or equitable tolling provision applies to render the filing of her lawsuit timely. But no such grounds exist for tolling Ms. Coates's untimely claims. Ms. Coates's strict liability and negligence claims should be dismissed as time-barred pursuant to Federal Rule of Civil Procedure 12(c) as a result.

Ms. Coates's remaining claims sounding in fraud[2] should also be dismissed pursuant to Rules 9(b) and 12(c). This Court previously ruled that any allegations of fraud must be "perfected within the short form complaints filed in the individual member cases." Ms. Coates has not alleged

---

[1] *See* Exhibit A, Plaintiff JoAnn Coates's Short Form Complaint ("SFC") ¶ 13 (Counts I and III).

[2] *Id.* ¶ 13 (Counts IV, V, VI, VII).

1

sufficient facts in her short form complaint to establish any viable fraud-based claims, and, as a result, Ms. Coates's remaining claims for negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, and fraud and deceit, must also be dismissed.[3]

## FACTUAL BACKGROUND

Ms. Coates filed her original Short Form Complaint ("SFC") on September 25, 2018, adopting the allegations in the Second Amended Master Complaint that define "permanent" alopecia as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy."[4] Ms. Coates alleges she received chemotherapy treatment that included Taxotere from approximately October 19, 2006, to November 22, 2006.[5] Ms. Coates accordingly sustained her injury in May 2007.

The Second Amended Master Complaint further alleges that permanent alopecia is so apparent it has stigmatized Plaintiffs (including Ms. Coates) and negatively affected their body image, social relationships, and emotional well-being.[6] Ms. Coates further claims the Taxotere in her chemotherapy treatment caused her to develop "[s]evere and personal injuries that are lasting in nature" including "permanent disfigurement," "loss of earnings and earning capacity," and "mental anguish."[7] Despite specifically pleading that she developed this stigmatizing permanent

---

[3] Because Ms. Coates's individual claims cannot be maintained, her spouse's derivative claim for loss of consortium must also be dismissed. *See Carlson v. GMR Transp., Inc.*, 2015 ND 121, ¶ 23, 863 N.W.2d 514, 521 ("[B]ecause a loss of consortium claim derives from the other spouse's injury, dismissal of [the plaintiff's] personal injury claim requires dismissal of [plaintiff's spouse's] loss of consortium claim." (internal citation omitted)).

[4] Ex. A, SFC at 1; Rec. Doc. 4407 (Second Amended Master Complaint) ¶ 181 (defining "PCIA" as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy").

[5] Ex. A, SFC ¶ 10.

[6] *See* Rec Doc. 4407 ¶¶ 214–220.

[7] Ex. A, SFC ¶ 12.

alopecia six months after she finished treatment with Taxotere, by May 2007 at the latest, Ms. Coates waited eleven years before filing her untimely lawsuit.[8]

## LEGAL STANDARD

The standard of review for a Rule 12(c) motion for judgment on the pleadings is the same as for a Rule 12(b)(6) motion to dismiss. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Phillips v. City of Dallas*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all well-pleaded facts alleged in the plaintiff's complaint as true and view them in the light most favorable to the plaintiff. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). A motion for judgment on the pleadings is appropriate where "there are no disputed issues of material fact and only questions of law remain." *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002).

In the case of affirmative defenses, judgment on the pleadings should be granted where the affirmative defense is apparent on the face of the complaint such that no question of fact exists. *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368 (West 2009); *see also Roger Lee, Inc. v. Trend Mills, Inc.*, 410 F.2d 928, 930 (5th Cir. 1969) (affirming judgment on the pleadings in favor of the defendant based upon statute of limitations).

## ARGUMENT

**I.   Ms. Coates's Strict Liability and Negligence Claims Are Time-Barred.**

Ms. Coates's strict liability and negligence claims are time-barred because: (1) on the face of her own pleadings, she sustained her injury six months after the end of her chemotherapy

---

[8]   *See* Ex. A, SFC at 1.

treatment but did not file suit within six years thereafter; and (2) she cannot show any tolling exception applies to save her claims.

### A. Ms. Coates's claims are time-barred on their face.

Ms. Coates alleges she experienced her injury—permanent hair loss allegedly caused by Taxotere[9]—in May 2007, six months after she completed chemotherapy treatment in November 2006. Pursuant to North Dakota Century Code § 28–01–16 (5), Ms. Coates had six years from the date her cause of action accrued to file a complaint. *Id.* ("An action for . . . any other injury to the person or rights of another not arising upon contract, when not otherwise expressly provided" must be "commenced within six years after the claim for relief has accrued[.]"). In North Dakota, the cause of action accrues and the statute of limitations generally begins to run at the time of injury, no matter how slight. *Erickson v. Scotsman, Inc.*, 456 N.W.2d 535, 537 (N.D. 1990) (quoting 4 American Law of Products Liability 3d, Limitations of Actions § 47:16 (1987)). "Under this general rule, when there is a perceptible personal injury . . . the statute of limitations starts to run[.]" *Id.* (quoting § 47.17). Even where the injury "could be characterized as nominal," the injury puts plaintiff "on notice that her rights ha[ve] been violated, and g[ives] her a reasonable opportunity to attempt to discover the extent of her injuries in order to assert her claim within the limitation period." *Erickson*, 456 N.W.2d at 539.

Here, Ms. Coates's injury was admittedly present and perceptible by May 2007. The Second Amended Master Complaint defines permanent chemotherapy-induced alopecia ("PCIA") as "an absence of or incomplete hair regrowth six months beyond the completion of

---

[9]  Rec. Doc. 4407 at, *e.g.*, ¶ 231. Sanofi disputes Plaintiffs' assertions that their injuries, if any, were caused by Taxotere. Nothing in this Memorandum should be perceived as an admission by Sanofi to the contrary. However, for the purposes of this Motion, even if Taxotere caused Ms. Coates's injuries, her claims are still time-barred under North Dakota law.

4

chemotherapy."[10]  In filing her Short Form Complaint ("SFC"), Ms. Coates adopted the Second Amended Master Complaint's allegations, including the six-month injury definition.[11]  This Court has recognized multiple times, under multiple states' laws, that, "on the basis of the allegations in the Second Amended Master Complaint, a plaintiff's hair loss becomes permanent six months after completing chemotherapy."[12]  Ms. Coates completed chemotherapy in November 2006.[13]  On the face of her pleadings, and consistent with this Court's prior rulings, Ms. Coates sustained her injuries in May 2007.[14]  Her claim was time-barred six years later, by May 2013.  Because Ms. Coates did not file her Complaint until September 2018, Ms. Coates's claims are time-barred on their face.

### B. No exception applies to save Ms. Coates's untimely claims.

Under North Dakota law, it is a plaintiff's burden to prove that a facially untimely cause of action accrued within the limitations period.  *Kimball v. Landeis*, 652 N.W.2d 330, 339 (N.D. 2002) ("A party who claims the benefit of an exception to a statute of limitations bears the burden of showing the exception.").  Ms. Coates cannot do so.

---

[10] Rec. Doc. 4407 ¶ 181; *see also In re Taxotere (Docetaxel) Prod. Liab. Litig. (Thibodeaux)*, 995 F.3d 384, 390 (5th Cir. 2021) ("As a matter of law, the injury of 'an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy' is sustained when, six months after the completion of chemotherapy, a person has an absence of or incomplete hair regrowth."); Rec. Doc. 12057 at 4  (Order and Reasons Granting Defs.' Mot. For J. on the Pleadings on Ms. Greer's Claims and applying the injury definition outlined in the Second Amended Master Complaint).

[11] Ex. A, SFC at 1 (adopting allegations set forth in the Second Amended Master Complaint).

[12] Rec. Doc. 10833 (Order Granting Summ. J. on Ms. Durden's Claims) at 2 ("[t]his Court has recognized that, on the basis of the allegations in the Second Amended Master Complaint, a plaintiff's hair loss becomes permanent six months after completing chemotherapy."); *see also* Rec. Docs. 7571 (Order re Summ. J. on Johnson, Earnest, Francis, and Mills) (same), 9110 (Order Granting Summ. J. on Ms. Thibodeaux's Claims) (same), 10807 (Order Granting Summ. J. on Ms. Sanford's claims) (same), 4407 (Second Amended Master Complaint) at ¶ 181; Rec. Doc. 12057 (Order and Reasons Granting Defs.' Mot. For J. on the Pleadings on Ms. Greer's Claims and applying the injury definition outlined in the Master Complaint).

[13] Ex. A, SFC ¶ 10.

[14] Rec. Doc. 4407 ¶ 181 (defining "PCIA" as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy").

### 1. The discovery rule does not save Ms. Coates's untimely claims.

North Dakota applies a discovery rule solely in cases involving latent injuries that "only manifest[] [themselves] through the passage of time." *BASF Corp. v. Symington*, 512 N.W.2d 692, 695 (N.D. 1994). "The discovery rule postpones a claim's accrual until the plaintiff knew, or with the exercise of reasonable diligence should have known, of the wrongful act and its resulting injury." *Bullinger Enterprises, LLLP v. Dahl*, 940 N.W.2d 630, 633 (N.D. 2020) (citation omitted). North Dakota courts have applied the discovery rule in actions involving latent injuries such as those caused by asbestos exposure. *See Hebron Pub. Sch. Dist. No. 13 of Morton Cty. v. U.S. Gypsum Co.*, 475 N.W.2d 120, 126 (N.D. 1991). North Dakota courts have declined to apply the discovery rule where the initial injury was perceptible but nominal and the full extent of the injuries is not realized until later. *See, e.g.*, *Erickson*, 456 N.W. 2d 538 (finding discovery rule did not apply where plaintiff slipped in a pool of water and tore ligaments in her ankle but did not realize the full extent of her injuries—including severe blood clotting and circulatory problems—until years later).

PCIA, as defined in the Second Amended Master Complaint, is not a latent injury that only manifests itself through the passage of time; rather, it is an injury so perceptible it is alleged to have stigmatized all Plaintiffs.[15] This Court has already recognized under Mississippi law (which is similar to North Dakota law) that PCIA is not a latent injury, as each plaintiff "knew or should have known six months after her treatment that something was amiss when her hair had not grown back as expected."[16] Ms. Coates further alleges her injury is so apparent it has negatively affected

---

[15] Rec. Doc. 4407 ¶¶ 181, 214−220.

[16] Rec. Doc. 12057 at 5−6 (ruling that Mississippi's discovery rule did not apply to Ms. Greer's case because PCIA is not a latent injury); *see also* Rec. Doc. 12718 at 6 (Order and Reasons on Roach, ruling the same); Rec. Doc. 13064 at 5−7 (Order and Reasons on Smith, ruling the same).

her body image, social relationships, and emotional well-being. Given these allegations, PCIA is not a latent injury, and the discovery rule does not apply.[17]

### 2. No statutory exception saves Ms. Coates's untimely claims.

North Dakota recognizes certain statutory exceptions to the general rule that a cause of action accrues at the time of injury, but neither exception applies here. North Dakota Century Code § 28-01-24 provides an exception when claims are fraudulently concealed from the claimant:

> When, by fraud or fraudulent concealment, a party against whom a claim for relief exists prevents the person in whose favor such claim for relief exists from obtaining knowledge thereof, the latter may commence an action within one year from the time the claim for relief is discovered by the latter or might have been discovered by the latter in the exercise of diligence.

Ms. Coates's only remaining claims are for failure to warn and negligence, and, as discussed below, she may not rely on fraud allegations to argue that the fraudulent concealment exception applies to save her claims. Even if she could, the Second Amended Master Complaint advances only run-of-the-mill arguments that Sanofi allegedly concealed the risks associated with Taxotere.[18] Those types of boilerplate fraudulent-concealment allegations could not support a

---

[17] Even if the discovery rule applied, it would not save Ms. Coates's claims. North Dakota courts use "an objective standard for the knowledge requirement under the discovery rule." *Dahl*, 940 N.W.2d at 633 (citation omitted). "The focus is upon whether the plaintiff is aware of facts that would place a reasonable person on notice a potential claim exists, without regard to the plaintiff's subjective beliefs." *Id.* Facts "which would put a person of ordinary intelligence on inquiry, is equivalent to knowledge of all of the facts a reasonable diligent inquiry would disclose." *Id.* The Second Amended Master Complaint explicitly acknowledges that information linking Taxotere and permanent hair loss was publicly available before Ms. Coates filed suit. Rec. Doc. 4407 ¶¶ 150−158 (describing the publicly available information linking Taxotere and PCIA, including the "Taxotears," an online group that formed in 2006). The Fifth Circuit has already determined that this publicly available information regarding Taxotere and the reported risk of PCIA would have been uncovered by a plaintiff exercising reasonable diligence. *See In re Taxotere (Docetaxel) Prod. Liab. Litig. (Thibodeaux)*, 995 F.3d 384, 393 (5th Cir. 2021) (finding evidence "relevant to what a reasonable inquiry" by plaintiffs would have uncovered was publicly available as early as 2006 when "women who called themselves 'Taxotears' formed a group with an online presence"). Objectively, then, by May 2007, Ms. Coates was on notice that a potential claim existed. The discovery rule accordingly cannot save Ms. Coates's claims.

[18] Rec. Doc. 4407 ¶¶ 250−256. *See also supra* at n.17 (the Second Amended Master Complaint identifies publicly available news articles and studies associating Taxotere with Ms. Coates alleged injury as early as 2006); Sec. II (Ms. Coates has not pleaded *any* facts in her SFC supporting her fraud-based claims, much less facts sufficient to satisfy Rule 9(b)).

finding that Sanofi prevented Ms. Coates from "obtaining knowledge" that a claim for relief existed.

Additionally, the Second Amended Master Complaint explicitly acknowledges that, as early as 2006, information associating Taxotere and permanent hair loss has been publicly available.[19] And the Fifth Circuit has already determined that publicly available information regarding Taxotere and the reported risk of PCIA would have been uncovered by a plaintiff exercising reasonable diligence. *See In re Taxotere (Docetaxel) Prod. Liab. Litig. (Thibodeaux)*, 995 F.3d 384, 393 (5th Cir. 2021) (finding evidence "relevant to what a reasonable inquiry" by plaintiffs would have uncovered was publicly available as early as 2006 when "women who called themselves 'Taxotears' formed a group with an online presence"). Ms. Coates cannot invoke a fraudulent-concealment theory to toll the statute of limitations of an obvious injury under these circumstances.

Neither can Ms. Coates rely on North Dakota's limited equitable estoppel doctrine, which provides:

> When a party, by that party's own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, that party shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission.

Century Code § 31-11-06. The equitable estoppel doctrine applies only in "exceptional circumstances," *Kimball v. Landeis*, 652 N.W.2d 330, 339 (N.D. 2002), where one party misleads another and induces that party not to file their claim within the statute-of-limitations period. *See Muhammed v. Welch*, 675 N.W.2d 402, 407 (N.D. 2004). A plaintiff seeking to rely on equitable

---

[19] Rec. Doc. 4407 ¶¶ 150−158 (describing the publicly available information linking Taxotere and PCIA, including the "Taxotears," a 2010 Globe and Mail article, and a 2010 CBS Evening News article).

estoppel to toll the statute of limitations carries the burden to prove: (1) "the defendant made statements . . . with the idea that plaintiff would rely thereon;" (2) that the plaintiff "relied on the representations or acts of defendant and, as a result of that reliance, she failed to commence the action within the prescribed period;" and (3) the defendants' statements "occurred before the expiration of the limitation period." *Muhammed v. Welch*, 675 N.W.2d 402, 407 (N.D. 2004) (internal quotation marks and citation omitted). But nowhere does Ms. Coates allege that Sanofi made fraudulent statements to her with the idea that she would rely on them or that Ms. Coates failed to file her claim on time in reliance on those statements. There are no exceptional circumstances that would support equitable tolling here.

## II.   Ms. Coates Has Alleged No Facts Supporting Her Fraud-Based Claims, and They Too Should Be Dismissed.

In addition to her strict liability failure-to-warn and negligence claims, Ms. Coates also asserts four claims sounding in fraud: negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, and fraud and deceit.[20] To state a claim for fraud, Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud."

In ruling on Defendants' Motion to Dismiss the First Amended Master Complaint in 2017, Judge Engelhardt recognized the "limitations" associated with formulating fraud-based allegations within a Master Long Form Complaint.[21] While Judge Engelhardt did not dismiss fraud-based counts from the MDL entirely at that time, he specifically ruled that any allegations of fraud must be "perfected within the short form complaints filed in the individual member cases."[22] Ms. Coates, however, has not pleaded *any* facts in her SFC supporting her fraud-based claims.[23] All

---

[20]   *See* Ex. A, SFC ¶ 13.

[21]   *See* Exhibit B, Hr'g Tr. at 22:22–23:7 (Aug. 30, 2017) (Engelhardt J., presiding).

[22]   *Id.* at 23:4–7.

[23]   *See generally*, Ex. A, SFC.

9

of Ms. Coates's fraud-based claims accordingly must be dismissed under Rules 12(c) and 9(b) consistent with this Court's prior ruling.

## CONCLUSION

For the reasons stated above, Ms. Coates's claims must be dismissed.

Respectfully submitted,

 /s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Jon Strongman
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com
jstrongman@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

*/s/ Douglas J. Moore*

10