## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**In Re: TAXOTERE (DOCETAXEL)**                           **MDL NO. 2740**
**PRODUCTS LIABILITY LITIGATION**

**SECTION "H" (5)**

**THIS DOCUMENT RELATES TO:**
**Barbara Earnest, Case No. 2:16-cv-17144.**

### DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

Defendants Sanofi-Aventis U.S. LLC and Sanofi US Services Inc. submit this Statement

of Undisputed Material Facts in Support of their Motion for Summary Judgment under Local Rule

56.1:

**A.      Ms. Earnest's Diagnosis**

1.      Plaintiff Barbara Earnest is a 71-year-old resident of Slidell, Louisiana.[1]

2.      On February 2, 2011, Ms. Earnest was diagnosed with breast cancer, ER-positive,

PR-positive, and HER-2-negative.[2]

3.      After her diagnosis, Ms. Earnest met with her oncologist, Dr. James Carinder, to

receive a chemotherapy plan to treat her breast cancer.[3]

**B.      Dr. Carinder's Knowledge of the Risk**

4.      Dr. Carinder did not read in their entirety (or on alopecia specifically) any of the

versions of Taxotere labeling that came out after 1999.[4]

---

[1]    Exhibit A, Earnest Fourth Am. PFS at 2-6.

[2]    Exhibit B, Carinder Dep. 74:15-18; Ex. A, PFS at 12-14.

[3]    Exhibit C, Trial Tr. 1769:10–1770:2.

[4]    *Id*. at 1544:23–1546:6.

5.      Before treating Ms. Earnest, Dr. Carinder was aware of the risk of "alopecia" with Taxotere and other chemotherapy drugs.[5]

6.      Dr. Carinder was also aware of multiple reports of permanent alopecia before treating Ms. Earnest.[6]

7.      Dr. Carinder, for example, had read the *Nabholtz* Article (published in 2001).[7]

8.      The *Nabholtz* Article identified four patients with persistent hair loss after receiving Taxotere, Adriamycin, and Cytoxan.[8]

9.      Then, in 2005, Dr. Carinder observed that one of his patients experienced permanent hair loss after receiving dose-dense Adriamycin and Cytoxan followed by Taxotere ("AC + T")— the exact regimen he prescribed to Ms. Earnest in 2011.[9]

10.      Dr. Carinder attributed his patient's lack of hair regrowth in 2005 to the AC + T regimen.[10]

11.      Dr. Carinder "always" told patients about his 2005 patient.[11]

**C.      Dr. Carinder's Prescribing Decision for Ms. Earnest**

12.      Dr. Carinder's goal when selecting a chemotherapy regimen for Ms. Earnest was to give her the best chance of survival and avoid recurrence.[12]

---

[5]      *Id*. at 1468:19–21.

[6]      *Id*. at 1554:11–1556:10.

[7]      *Id*.

[8]      *Id*. at 1556:11–24.

[9]      *Id*. at 1532:9–1533:24; Ex. B, Carinder Dep. 85:2–86:6.

[10]      *Id*. at 1420:13–15 ("Q.  Before you treated Mrs. Earnest, did you have any idea what caused the 2005's patient's hair to be thinner, to not come back?  A.  The chemotherapy.").

[11]      *Id*. at 1537:13–1538:5.

[12]      *Id*. at 1512:23–1513:18.

13.     Dr. Carinder felt that the AC + T regimen was in Ms. Earnest's "best interest"[13] because it was "the most effective option."[14]

14.     When Dr. Carinder prescribed AC + T to Ms. Earnest, he did not suggest any alternative chemotherapy regimens to her.[15]

15.     Dr. Carinder did testify at trial about other non-Taxotere regimens, such as AC + Taxol, FEC + Taxol, FAC, and FEC.[16]

16.     Dr. Carinder, however, did not testify that he would have chosen a non-Taxotere regimen instead of a Taxotere regimen had Taxotere included a warning about permanent hair loss in 2011.

17.     Dr. Carinder chose Taxotere over Taxol, another taxane, because Taxol was not approved for weekly dose-dense use in 2011 and carried serious side effects that Taxotere did not, including neuropathy and severe infusion reactions.[17]

18.     Dr. Carinder also testified that the non-taxane regimens, such as FAC and FEC, carried a lower survival rate.[18]

19.     While these other non-Taxotere regimens were available in 2011, there is no evidence that an additional warning (of a risk that Dr. Carinder had already seen) in the Taxotere label would have caused Dr. Carinder not to prescribe Taxotere.

20.     Dr. Carinder stands by his prescribing decision for Ms. Earnest.[19]

---

[13]   *Id*. at 1612:2–9.

[14]   *Id*. at 1513:19–24.

[15]   *Id*. at 1520:18–25; *see also* Exhibit D, Earnest Dep. 190:23-191:4 ("He told me the drugs he was going to give me, and that was it.").

[16]   Trial Tr. 1492:19–1493:10, 1494:15–24, 1497:10–18.

[17]   *Id*. at 1525:11–14, 1528:21–24; *see also* Ex. B, Carinder Dep. 25:19–26:8, 68:16–69:19.

[18]   *Id*. at 1523:1–1524:7.

[19]   *Id*. at 1612:2-17.

**D.      Ms. Earnest's Acceptance of Dr. Carinder's Prescribing Decision**

21.      Dr. Carinder and Ms. Earnest discussed the risk of temporary alopecia and abnormal hair regrowth.[20]

22.      Ms. Earnest did not investigate or ask about alternatives that might avoid abnormal hair growth or hair loss.[21]

23.      Nor did Dr. Carinder present AC + T to Ms. Earnest as one of several viable options—AC + T was Dr. Carinder's sole recommendation.[22]

24.      Ms. Earnest did not ask about any side effects of the regimen, including hair loss.[23]

25.      Ms. Earnest testified that she "did not know" what decision she would have made had Dr. Carinder discussed other options.[24]

26.      Ms. Earnest told Dr. Carinder, "I am in your hands," and consented to treatment with Taxotere.[25]

**E.      Ms. Earnest's Treatment with Taxotere**

27.      On June 22, 2011, Ms. Earnest began chemotherapy treatment with Taxotere.[26]

28.      Ms. Earnest lost all her hair during chemotherapy.[27]

29.      Ms. Earnest testified that before chemotherapy, Dr. Carinder told her that she would lose her hair "but that it would grow" back.[28]

---

[20]  *Id*. at 1733:9–15.

[21]  *Id*. at 1521:7-9, 1771:24-1772:4.

[22]  *Id*. at 1520:18-25.

[23]  *Id*. at 1770:21–1771:14.

[24]  *Id*. at 1801:22-1803:7; 1816:2-11 ("It's hard to say. I may have went to another doctor. I don't know.").

[25]  *Id*. at 1771:5-8, 1773:21-1774:2.

[26]  *Id*. at 1721:7–9; 1732:21–25.

[27]  *Id*. at 1736:6–10.

[28]  Ex. A, PFS § V.12; Ex. C, Trial Tr. 1733:9–17.

30.     Dr. Carinder testified that he warned Plaintiff about the possibility of permanent hair loss by telling Plaintiff about his patient who suffered permanent hair loss after undergoing treatment with the same chemotherapy regimen as Plaintiff.[29]

31.     Plaintiff conceded that she did not remember whether Dr. Carinder warned her of the risk of permanent hair loss: "If he did tell me I don't remember it. Let me put it that way if he did. He could have. I really don't know if he told me."[30]

32.     Ms. Earnest finished chemotherapy on August 24, 2011.[31]

33.     More than six months after her chemotherapy treatment ended, in April 2012, Ms. Earnest's hair had not grown back as expected.[32]

34.     At the time of Ms. Earnest's trial in 2019, she testified her hair remained the same as it was when she first lost it during chemotherapy in 2011.[33]

35.     In April 2012, Ms. Earnest asked Dr. Carinder why her hair was not growing back as expected.[34]

36.     Plaintiff claims that, during that conversation, Dr. Carinder told Plaintiff "it's going to grow."[35]

37.     Dr. Carinder, on the other hand, testified that he told Plaintiff her ongoing hair loss was uncommon:

> Q.  Did you discuss with Mrs. Earnest after she had gone about six
> months after chemotherapy without her hair returning was there a

---

[29]   Ex. C, Trial Tr. 1537:13-1538:3.

[30]   *Id*. at 1813:12-23.

[31]   Ex. A, PFS § V.12.

[32]   Ex. C, Trial Tr. 1735:13–25.

[33]   *Id*. at 1736:5–18.

[34]    *Id*. at 1734:13–25.

[35]   *Id*. at 1735:13–25.

discussion between you and her that this is unusual?

A.  Yes.

Q.  And did you tell her you were concerned that her hair hadn't grown back after chemotherapy?

A.  I said, "It's not common. It's uncommon to see the hair take this long to come back."

Q.  Approximately when would you start to have that conversation with the patient, at what period after treatment?

A.  I would say six to eight months.

Q.  You believe you had that conversation here with Mrs. Earnest?

A.  Yes.[36]

38.      Dr. Carinder further testified that he never told Plaintiff her hair loss was anything but a result of her chemotherapy treatment.[37]

39.      Plaintiff also testified that she always attributed her hair loss to chemotherapy:

Q.  And at that time [of your conversation with Dr. Carinder], you believed that the condition of your hair or the lack of regrowth was due to chemotherapy, true?

A.  Yes.

Q.  And after that date, February or March of 2012, you didn't have any other conversations with Dr. Carinder about why your hair wasn't coming back, true?

A.  True.[38]

---

[36]   *Id*. at 1587:11−1588:5.

[37]   *Id*. at 1588:6−13.

[38]   *Id*. at 1866:1−8; *see also id*. at 1864:12−18 (Plaintiff has never asked any of her doctors about the cause of her hair loss).

40.     After Plaintiff's alleged conversation with Dr. Carinder in 2012, she conducted no further investigation into her injury for the next four years despite the fact that her hair never re-grew.[39]

41.     Plaintiff never investigated Taxotere as a potential cause of her injury, despite the fact that her hair never regrew as expected:

> Q.  In the eight years since 2011, since you have lost your hair, you haven't asked any of your doctors as to what was the cause of your hair loss, right?
>
> A. No.
>
> Q. You haven't asked any of them whether it was permanent, right?
>
> A. No.[40]

42.     Ms. Earnest testified that no doctor has ever told her she has permanent alopecia, and she has never asked.[41]

43.     Plaintiff also testified that in the eight years since she lost her hair, she has never tried any medication or treatment to see if she could get her hair to come back.[42]

44.     Dr. Tosti, the only dermatologist who testified in Plaintiff's case, stated that she *could not say* whether Plaintiff's hair loss would ever improve but that many of her patients who have tried hair regrowth products see results.[43]

45.     Ms. Earnest is currently cancer-free.[44]

---

[39]   *Id*. at 1865:10-18.

[40]   *Id*. at 1864:12−18.

[41]   *Id*. at 1865:10−18.

[42]   *Id*. at 1868:2−8.

[43]   *Id*. at 1102:5−8 ("Q. All right. Well, Doctor, we can agree that we can't say if Mrs. Earnest could have hair regrowth, some hair regrowth, if she hasn't tried any treatment; is that fair? A. I agree."); *id*. at 1101:5−20.

[44]   Ex. D, Earnest Dep. 63:20–64:4; Ex. A, PFS at 17.

**F.      Alternative Chemotherapies Associated with Cases of Permanent or Persistent Hair Loss**

46.      Dr. Plunkett identified permanent hair loss as a risk with Taxol,[45] Adriamycin,[46] Cytoxan,[47] and 5-FU.[48]

47.      Dr. Tosti identified reports of permanent alopecia with anthracyclines generally,[49] Adriamycin,[50] Cytoxan,[51] and reports of persistent alopecia with FEC.[52]

48.      Dr. Feigal identified reports of persistent alopecia with Taxol,[53] Cyclophosphamide,[54] Adriamycin,[55] the AC regimen,[56] and the AC + Taxol regimen.[57]

49.      No witness testified that Plaintiff would have avoided hair loss if she had taken a non-Taxotere regimen.

**G.      Expert Testimony**

50.      Dr. Madigan testified that a statistically significant relationship between permanent hair loss and Taxotere existed based on his review of two clinical studies:  TAX 316 and TAX 301.[58]

---

[45]   Ex. C, Trial Tr. 861:3–6.

[46]   *Id*. at 861:7–10.

[47]   *Id*. at 873:20–25.

[48]   *Id*. at 874:19–21.

[49]   *Id*. at 1030:23–1031:3.

[50]   *Id*. at 1030:6–14.

[51]   *Id*. at 1031:11–16.

[52]   *Id*. at 1058:20–23.

[53]   *Id*. at 1218:5–9.

[54]   *Id*. at 1219:4–6.

[55]   *Id*. at 1219:7–9.

[56]   *Id*. at 1219:14–16.

[57]   *Id*. at 1219:17–24.

[58]   *Id*. at 631:14−18.

51.     At trial, Dr. Madigan admitted that neither study actually showed a statistically significant relationship between Taxotere and permanent alopecia.[59]

52.     Dr. Madigan admitted that some of his assumptions about the data could have been incorrect and that he likely included false hits (patients who did not have permanent alopecia) in his conclusions.[60]

53.     Dr. Feigal also claimed a causal relationship between Taxotere and permanent hair loss exists after researching the TAX clinical trials and reports of PCIA in the literature.[61]

54.     Dr. Feigal admitted, however, that both the clinical trials and the literature reports included patients who took combination regimens that included both A and C.[62]

55.     Dr. Feigal admitted that either the A or the C or both can cause and could have caused these patients' "permanent alopecia."[63]

56.     Ms. Earnest filed her lawsuit in December 2016.[64]


                                        Respectfully submitted,

                                        */s/ Douglas J. Moore*
                                        Douglas J. Moore (Bar No. 27706)
                                        **IRWIN FRITCHIE  URQUHART & MOORE LLC**
                                        400 Poydras Street, Suite 2700
                                        New Orleans, LA  70130
                                        Telephone: 504-310-2100
                                        Facsimile:  504-310-2120
                                        dmoore@irwinllc.com

---

[59]   *Id*. at 705:8−14; 709:5−11.

[60]   *Id*. at 677:10−678:11; 677:21−25; 685:21−687:1; 687:4−694:10; 702:23−704:3.

[61]   *Id*. at 1189:24−1190:14.

[62]   *Id.* at 1229:19−25; 1231:1−11.

[63]   *Id*. at 1235:22−1236:22 ("It could be either A or C or both" that caused the permanent alopecia in the FAC arm of TAX 316).

[64]   *See generally*, Exhibit E, Pl.'s Compl.

Harley Ratliff
Jon Strongman
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com
jstrongman@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC*


## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2022, I electronically filed the foregoing with the Clerk

of the Court using the ECF system which sent notification of such filing to all counsel of record.

*/s/ Douglas J. Moore*