UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

********************************************************************

IN RE: TAXOTERE (DOCETAXEL)          MDL NO. 2740
PRODUCTS LIABILITY LITIGATION        SECTION "H"(5)
                                     MAY 3, 2022
*This document relates to:*
*Certain cases*
********************************************************************

TRANSCRIPT OF SHOW CAUSE HEARING VIA TELECONFERENCE
HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR PLAINTIFFS:              Dawn M. Barrios, Esquire
                             (VIA VIDEOCONFERENCE)
                             BARRIOS, KINGSDORF & CASTEIX
                             701 Poydras Street, Suite 3650
                             New Orleans, LA 70139


                             M. Palmer Lambert, Esquire
                             Claire Kreider, Esquire
                             GAINSBURGH, BENJAMIN, DAVID
                                 MEUNIER & WARSHAUER
                             1100 Poydras Street, Suite 2800
                             New Orleans, LA 70163


FOR DEFENDANTS:              Kelly E. Brilleaux, Esquire
                             IRWIN, FRITCHIE, URQUHART & MOORE
                             400 Poydras Street, Suite 2700
                             New Orleans, LA  70130


OFFICIAL TRANSCRIPT

```
 1   APPEARANCES CONTINUED:
     FOR DEFENDANTS:              Julie A. Callsen, Esquire
 2                               TUCKER ELLIS
                                 950 Main Avenue, Suite 1100
 3                               Cleveland, OH 44113

 4

 5                               Jordan Baehr, Esquire
                                 SHOOK, HARDY, BACON
 6                               255 Grand Boulevard
                                 Kansas City, Missouri 64108
 7

 8

 9

10

11   ALSO PRESENT FOR PLAINTIFFS
     VIA TELECONFERENCE:
12
                                 Brannon Robertson, Esquire
13                               Parag Bhosale, Esquire
                                 Bria Hanlon, Esquire
14                               Eric Newell, Esquire
                                 Denise Dessel, Esquire
15                               Hunter Bryson, Esquire
                                 Melanie Sulkin, Esquire
16

17

18

19

20   Official Court Reporter:    Alexis A. Vice, RPR, CRR
                                 500 Poydras Street, HB-275
21                               New Orleans, LA 70130
                                 (504) 589-7777
22                               Alexis_Vice@laed.uscourts.gov

23

24
     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
25   PRODUCED BY COMPUTER.


                          OFFICIAL TRANSCRIPT
```

| | |
|---|---|
| 1 | **P-R-O-C-E-E-D-I-N-G-S** |
| 2 | **MAY 3, 2022** |
| 3 | **(SHOW CAUSE HEARING)** |
| 4 | |
| 5 | (The Court was called to order.) |
| 6 | **THE COURT:** Thank you.  You may be seated. |
| 7 | **DEPUTY CLERK:** Taxotere Products Liability Litigation, |
| 8 | MDL 2740. |

Counsel, could you make your appearance for the record?

**MS. KREIDER:** Claire Kreider for plaintiffs.

**MR. PALMER:** Palmer Lambert co-liaison counsel for plaintiffs.

**MS. BRILLEAUX:** Kelly Brilleaux for Sanofi defendants.

**MR. BAEHR:** Jordan Baehr for Sanofi defendants.

**MS. CALLSEN:** And Julie Callsen for the 505(b)(2) defendants.

**THE COURT:** Okay.  And I'm going to go through these really quickly.  I have a declaration of no contact list, and I'm just going to read the names very quickly:

Maria Barrios, Angela Holloway Burns, Segrid Daniels, Dorothy Dike, Yolanda Domingo, Patricia Forte, Ginger Grubb, Alene Hayes, June Heisner, Petit Hungerford, Karen Jones, Julie Kirkland, Eridania Martinez, Amanda McNeese, Cecelia Rider, Mona Rogers, Jonice Smiley, Dorothy Tabor, and Carla Warner.

OFFICIAL TRANSCRIPT

 1          These cases are dismissed with prejudice.  Plaintiff
 2  has failed to comply with obligations to communicate with
 3  counsel despite counsels' best efforts.
 4          And then I have cases, these cases are statement of
 5  no defense list which is Ada Locke and Kathleen Berosik.  These
 6  cases are dismissed with prejudice.  Is that correct?
 7          **MS. BRILLEAUX:** Your Honor, there are two additional
 8  on the declaration list that are actually Wave 1 discovery case
 9  selections.  It's Precious Dunn and Lindsey Rey.  They should
10  have been included on your list as well.  I think there's a
11  second page with those.
12          **THE COURT:** Oh, I do, Precious Dunn and Lindsey Rey.
13  Thank you, Ms. Brilleaux.
14          All right, then we have the noncompliance hearing
15  list.  Are we ready to proceed?
16          **MS. BRILLEAUX:** Yes, Your Honor.
17          Are you okay with us sitting at counsel table, or
18  would you prefer us to come up to the podium?
19          **THE COURT:** It's just easier for me to hear at the
20  podium; so I would prefer that.
21          **MS. BRILLEAUX:** Understood.
22          **THE COURT:** I think the first case is with the
23  Fernelius Simon Law Firm and that's Carisa Etheridge.
24          Mr. Robertson, are you on the phone?
25          **MR. ROBERTSON:** Yes, Your Honor, I am.  Can you hear

OFFICIAL TRANSCRIPT

1   me?

2           **THE COURT:** I can.  Okay, please proceed.

3           **MR. BAEHR:** Good morning, Your Honor.  This is a case

4   where at the March hearing we had identified it as not having

5   photos between Taxotere treatment in 2009 and a subsequent

6   chemotherapy in 2013.  In the interim, Counsel produced these

7   photos with metadata showing that they were created in 2017,

8   and I have copies of those here.

9           May I approach, Your Honor?

10          **THE COURT:** Sure.

11          **MR. BAEHR:** And Counsel actually stated this when

12  producing them, that metadata shows they were produced in 2017.

13          Sanofi's position is just that these do not meet

14  plaintiff's obligation to provide the between photos.  So that

15  case remains deficient.

16          **THE COURT:** Mr. Robertson.

17          **MR. ROBERTSON:** Yes, Your Honor.  That's why we went

18  back and got the metadata on those photos.  I'm not going to

19  argue with the metadata.  It says 2017.

20          I went back with the client.  She said she has no

21  other photographs.  And so our position is we've got proof of

22  hair loss through these photographs, and the fact that she

23  doesn't have photographs in between treatment from ten years

24  ago should not be a basis essentially for the defendants to get

25  summary judgment.  That would be the effect of dismissing her

OFFICIAL TRANSCRIPT

1    case, that she didn't collect evidence five years before she
2    knew she had a lawsuit.

3            She can go to the jury on these photographs and say,
4    "I lost hair because of this product, and this is what it looks
5    like, and this is what I looked like before."

6            If the defendants want to cross-examine her and say
7    that, "Well, you didn't take photographs between your
8    treatments," I guess they can do that, but it's not a basis to
9    give the defendants summary judgment.

10           **THE COURT:** How much time are we talking about between
11   the treatments?

12           **MR. BAEHR:** Four years, Your Honor.  And I believe in
13   similar cases to this in the past, Your Honor, you have
14   requested affidavits from the plaintiffs, detailed affidavits.
15   We've met and conferred with plaintiffs' counsel regarding a
16   sort of process and framework for that.  So we would request at
17   the very least that they do that.

18           **MS. KREIDER:** Yes, Your Honor, that's what -- we
19   believe that there be an affidavit submitted in this case, and
20   we have had discussions about what should be included in that
21   affidavit and have met and conferred about that.

22           We may need Your Honor's input at some point as to
23   the topics that need to be discussed in the affidavit, but this
24   is one of those cases where an affidavit would most likely be
25   appropriate.

                         OFFICIAL TRANSCRIPT

 1          **THE COURT:** Okay, I'm going to do that.  I would say

 2     let's have that done within 30 days.  However, I think we just

 3     need to work out what the language for that would be.

 4          Let's plan to roll this case over into the July

 5     hearing.  Are we even going to have -- will that give us enough

 6     time to, I think, do that?  All right, we'll roll that over

 7     into the July hearing.

 8          But prior to that time, Mr. Robertson, I'm going to

 9     want you to collect an affidavit from your client, but we're

10     not quite sure exactly what the contents of that document will

11     be.  But we need something to address the absence of that

12     proof.

13          **MR. ROBERTSON:** Yes.  Judge, I understand, and I'll be

14     on the lookout for, I guess, language from the defense counsel

15     for that proposed affidavit.  I suspect it's something that we

16     could work through.

17          **THE COURT:** Okay, that sounds good.  Thank you, sir.

18          **MR. ROBERTSON:** Thank you, Judge.

19          **THE COURT:** All right, the next one is Katrina

20     Petkovic, and that's with the Gardi Haught Law Firm.  And this

21     is -- Counsel, you're going to have to pronounce your name.

22          **MR. BHOSALE:** Yes, Your Honor.  Your Honor, my name is

23     Parag Bhosale.  I'm with the Gardi Law Firm for Katrina

24     Petkovic.

25          **THE COURT:** Okay, thank you.

                         OFFICIAL TRANSCRIPT

1          **MR. BAEHR:** This case was also on the March list for

2     no proof of use, shell PFS, and no before photos.  The first

3     two deficiencies haven't been addressed at all.

4          Regarding the photos, there were photos produced, but

5     they were digital photos without metadata and no dates.  So

6     just like the previous one, we think that doesn't comply with

7     the obligation.  They're still deficient.

8          **THE COURT:** I have it's a shell PFS.

9          **MR. BAEHR:** Yes.

10         **THE COURT:** To me, that's, I mean, do you have any

11    information in the plaintiff fact sheet?

12         **MR. BAEHR:** I don't have the PFS.  Generally, when we

13    make that designation, it's because there is key information

14    regarding the cancer diagnosis or treatment that's missing.

15         **THE COURT:** Right, right.

16         **MR. BAEHR:** Yeah.

17         **THE COURT:** Okay.  Mr. Bhosale.

18         **MR. BHOSALE:** Your Honor, let me first, if I could,

19    just address the photographs.  This client has been compliant

20    with immediate responses.  The photographs, the new photographs

21    we uploaded were passport pictures she says she got back in

22    1995.  She actually scanned them at a FedEx near her home just

23    on the 26th.  So the data, the metadata that's going to come

24    off of those pictures she says is the date that she had them

25    scanned there.

OFFICIAL TRANSCRIPT

1          So at least for the photographs, and I believe, you

2   know, if Your Honor would be inclined to allow us to do

3   something similar.

4          **THE COURT:** The photographs from 1995?  When did she

5   receive her cancer treatment?

6          **MR. BHOSALE:** The cancer treatments, they were from

7   2005 to 2008.

8          **THE COURT:** Okay.

9          **MR. BHOSALE:** I had asked her if she could provide me

10   the name of the passport office that she had the photographs

11   taken.  She said she'd try to figure that out.  She knows it

12   was somewhere in downtown Chicago.  These were additional

13   photographs that she did get to us between the last month's

14   hearing and this month's hearing.

15          And then with regard to the additional deficiencies,

16   Your Honor, it's been very difficult for her to try and

17   recollect all the information that's being requested.  This is

18   a single woman who, you know, she's not married, she doesn't

19   have any children.  She's 60 years old.  And we've been doing

20   our best just trying to get her to try and figure out these

21   things.  But you know, at this point, I don't know that we're

22   going to be able to gather any additional information.

23          **THE COURT:** So you don't have anything about her

24   diagnosis and her treatment and proof of use?  Do we have

25   anything that shows that she actually took Taxotere?

OFFICIAL TRANSCRIPT

1      **MR. BHOSALE:** Other than what was already in the fact
2  sheet that was submitted, Your Honor.  There was an attorney in
3  my office who was handling this before I came in.  Honestly, I
4  don't have full details on how she gathered the information.  I
5  believe she just got it from the plaintiff.

6      But as far as medical records and what not, other
7  than what's already been submitted, we don't have anything
8  else.

9      **THE COURT:** Okay.

10     **MR. BAEHR:** I couldn't quite hear all of that.  But
11  yeah, we have no medical records whatsoever for this plaintiff,
12  so no proof of use, no anything, no diagnosis, nothing.

13     **THE COURT:** It doesn't sound like you're able to get
14  it.  I want to give you an opportunity, Mr. Bhosale, but we
15  need something to proceed.

16     Do you think that if I give you more time, you'll
17  have an opportunity to get some more information, or are you
18  telling me that you just can't?

19     **MR. BHOSALE:** Your Honor, I'll be 100 percent frank.
20  I don't believe we're going to be able to get anything else
21  because we've had this conversation in the past.  Again, she
22  does respond to us, but not with any additional...

23     **THE COURT:** Okay, Mr. Bhosale, I acknowledge that
24  you've done your best to accumulate the data.  We need more
25  information.  This case is going to be dismissed with

OFFICIAL TRANSCRIPT

```
 1   prejudice.
 2              MR. BHOSALE: Understood, Your Honor.
 3              THE COURT: Thank you.
 4              All right, we have Hellena Scott-Okafor, and that's
 5   Ms. Hanlon.  Are you on the line?
 6              MS. HANLON: Yes, Your Honor, I'm here.
 7              MR. BAEHR: This is another case where it's like a
 8   photo metadata issue.  This one is a bit complicated.  We've
 9   had photos for some time.  We asked at the March hearing for
10   photo metadata, and let me just go ahead and give you the
11   photos.
12              May I approach?
13              THE COURT: Yes.
14              MR. BAEHR: So Your Honor advised Counsel to produce
15   the metadata for these photos.  In response, Counsel first said
16   that the digital or the phone that had been used to take these
17   photos had been destroyed or that plaintiff had thrown it away
18   since producing them.
19              And then later said that they were actually digital
20   photos of a hardcopy photo and that everything had been
21   destroyed, the hardcopy photo and the digital photo.  And all
22   of this, obviously, having happened after the lawsuit was
23   filed, and the plaintiff failing to preserve the original copy.
24              So we would just, our position, Sanofi, would just be
25   that without the originals having been preserved, these photos
```

1   don't meet the obligation under PTO 68 to produce photos, and
2   basically, that they produce photos within the relevant time
3   period to meet that obligation.

4           **THE COURT:** Wait, what?  So these are photos.

5           **MR. BAEHR:** Yes.

6           **THE COURT:** Were you provided a date of these photos?

7           **MR. BAEHR:** The plaintiff gave a date, but did not
8   give metadata, and they're digital photos, and admitted that
9   she destroyed the original copies where the metadata is
10  provided.

11          **THE COURT:** So what do you want me to do?  Say don't
12  do that?

13          **MR. BAEHR:** Yes, say this doesn't meet the obligation
14  under PTO 68.  You can't destroy the original copies of the
15  photos and then rely on them to meet the obligation that you
16  say or that you need to meet.

17          **MS. HANLON:** Can I just say one thing?

18          **THE COURT:** So you want me to disregard these photos?

19          **MR. BAEHR:** Yes.

20          **THE COURT:** I'm not going to do that at this stage.

21          **MR. BAEHR:** Okay.

22          **THE COURT:** Now, that is not to say that this is --
23  you should willy-nilly destroy photos.  I just don't know the
24  circumstances.  And without having a full-blown evidentiary
25  hearing from the plaintiff speaking to how this occurred, this

OFFICIAL TRANSCRIPT

 1  is probably not the place to have this conversation.  Perhaps,

 2  at remand in the district court where this case is pending,

 3  that will be an issue for the judge there; but I'm not going to

 4  start excluding evidence based on that.

 5          **MR. BAEHR:** Okay, sure, Your Honor.  And I will also

 6  say the account that we have about the photos and where they

 7  came from and who is in them and all of that, we don't have any

 8  of that in any sort of evidentiary form.  So if you were

 9  inclined to advise them to produce an affidavit, that might

10  help clarify what's going on.

11          **THE COURT:** Can't she just amend the plaintiff fact

12  sheet which is signed without an affidavit on the photos?  Can

13  she just include that information on the plaintiff fact sheet?

14          **MR. BAEHR:** The information about who's identified?

15          **THE COURT:** The date the photographs -- I'm a little

16  bit lost.  I mean we got photographs with no date identified on

17  the actual photographs; or is it there, and it just doesn't

18  have the metadata?

19          **MS. BRILLEAUX:** If I could, Your Honor, this is

20  something that I think we've dealt with in the past.  And we

21  have photos that have another person in them, and in the PFS,

22  we believe it to be plaintiff's daughter.  And the daughter's

23  birthday isn't identified.

24          **THE COURT:** Well, probably because it has "I love mom"

25  so that would tell us.

OFFICIAL TRANSCRIPT

| | |
|---|---|
| 1 | **MS. BRILLEAUX:** I agree.  But what we don't have is |
| 2 | the date of birth of the child.  And we do have dates for the |
| 3 | photographs.  We suspect that they may not be accurate.  So if |
| 4 | we're provided with additional information about who is in the |
| 5 | photograph, their date of birth, then we think we might be able |
| 6 | to get closer to determining whether the date is accurate.  We |
| 7 | would ask for that information.  I think you've ordered that |
| 8 | before. |
| 9 | **MS. HANLON:** That's new news to me.  I've not heard |
| 10 | that before today.  But we will get that information and upload |
| 11 | it to try to clarify the date. |
| 12 | **THE COURT:** Please get as much information about the |
| 13 | photograph that you can and include that in the plaintiff fact |
| 14 | sheet. |
| 15 | **MS. HANLON:** Yes, Your Honor. |
| 16 | **THE COURT:** Thank you. |
| 17 | **MS. HANLON:** Thank you. |
| 18 | **THE COURT:** And I'm going to ask you to do that within |
| 19 | 30 days. |
| 20 | **MS. HANLON:** Thank you. |
| 21 | **MS. BRILLEAUX:** Your Honor, the next one is Lisa |
| 22 | Batton, and I believe it's Brent Coon & Associates. |
| 23 | **THE COURT:** Okay, and that's Mr. Newell. |
| 24 | **MR. NEWELL:** I'm here, Your Honor. |
| 25 | **THE COURT:** Okay. |

OFFICIAL TRANSCRIPT

1    **MS. BRILLEAUX:** Your Honor, this case --

2    **MR. NEWELL:** Can you hear me?

3    **THE COURT:** Yes, sir.

4    **MS. BRILLEAUX:** This case was initially on the list

5 for lack of information regarding the second cancer diagnosis.

6 Since then, we have received that information, and I think the

7 context is helpful here.  She received Taxotere between April

8 and July of 2010.  Unfortunately, she was diagnosed with liver

9 and colon cancer approximately five years later in July of 2015

10 and then received radiation and chemotherapy multiple times in

11 2015 for treatment.

12    This was addressed at the last hearing since we only

13 have photographs from 2016 and 2018, and unfortunately, the

14 plaintiff is deceased.  And I think at the last hearing,

15 Counsel stated that Mr. Batton's son was attempting to upload

16 photographs in that time period between 2010 and 2015 which is

17 obviously important given the range of time and the extensive

18 treatment for the second cancer.

19    **THE COURT:** Okay.

20    **MR. NEWELL:** Yes, Your Honor.  I have spoken to the

21 plaintiff's son.  Unfortunately, when he lost his mother, they

22 also lost the house and a lot of things like photographs that

23 were in the house due to financial concerns.

24    He was able to locate some photographs on Facebook.

25 We uploaded them, but there was some miscommunication about the

OFFICIAL TRANSCRIPT

1  actual dates on the photos.  But I do have three photos that

2  her son would be happy to sign an affidavit attesting to the

3  dates that fall within that criteria.

4         Again, he downloaded these from Facebook.  So I don't

5  know that we'd be able to get metadata, but I do think we have

6  at least three photos and a video of his mother that fall

7  within that range.

8         **THE COURT:** Okay.  Then let's have that done within 30

9  days with an accompanying affidavit as to the information on

10 the photos that lack metadata.

11        **MR. NEWELL:** Okay, Your Honor.  Thank you.

12        **THE COURT:** Okay, thank you.

13        **MS. BRILLEAUX:** Thank you, Your Honor.  The next case

14 is Beverly Allis which that plaintiff is represented by Marc J.

15 Bern & Partners.

16        **THE COURT:** Yes, ma'am.

17        **MS. BRILLEAUX:** And this is a case that is also a

18 rollover as all of the cases are today.  At the last hearing,

19 plaintiff's only before photo was from 1981 which was 31 years

20 before Taxotere in 2012.

21        I think Your Honor ordered Counsel to work with

22 Ms. Berg -- sorry, Ms. Kreider to exhaust all avenues, and we

23 have not received any additional photos since the March

24 hearing.

25        **THE COURT:** Okay, and that's Ms. Dessel.

OFFICIAL TRANSCRIPT

1          **MS. DESSEL:** Yes, yes, Ms. Dessel.  Good afternoon or

2     good morning, Your Honor, how are you?

3          **THE COURT:** I'm fine, thank you.

4          **MS. DESSEL:** So yes, I reached out to Ms. Kreider

5     after the last hearing, and you know, she did tell me to look

6     for work badges, driver's licenses, you know, anything that

7     could give some sort of, you know, photograph within that

8     five-year period from 2012 when Ms. Allis received Taxotere.

9          However, you know, I've spoken to the client on

10    numerous occasions, and she unfortunately does not have any

11    photos, does not have a driver's license that would be within

12    that period, you know.  She says, you know, herself that she's

13    an older lady; so she did not take many pictures back then.  So

14    unfortunately, when it comes to the photographs, it seems that

15    we've exhausted all avenues because plaintiff herself was not

16    able to provide any new information.

17          But this case was actually on the noncompliance

18    hearing that was last Thursday for the product ID as well.  And

19    you did not dismiss it, but just moved it to the next hearing.

20    If I could just ask that, you know, this case just -- we'll

21    still try, our best efforts to obtain those photos.  If not

22    then by the next hearing, you know, rightfully so, Your Honor,

23    then, you know, you can dismiss this case.

24          **THE COURT:** This case has been pending since 2018.

25    I'll roll it over to the next one, but that's it.  That's it,

OFFICIAL TRANSCRIPT

1   and I'm going to dismiss it.  And I have no doubt that
2   Mr. Baehr will remind me that I said I would dismiss it at the
3   next hearing.
4            But this is it.  I mean at some point, we have to
5   have compliance and product ID and some sort of proof of
6   injury.  Thank you.
7            **MS. DESSEL:** Of course.  I understand that, Your
8   Honor.  I appreciate that.  Thank you very much.
9            **MS. BRILLEAUX:** Your Honor, the next case is Sandra
10  Morales, Milberg, Coleman, Bryson, Phillips, Grossman.  And I
11  think this one is actually a fairly straightforward one.
12           At the March hearing, Counsel indicated that
13  plaintiff didn't have any photos within a certain time period,
14  and the Court asked plaintiff to submit an affidavit within 30
15  days.  It does appear that the affidavit was actually filed
16  into the docket rather than uploaded to MDL Centrality.  That
17  docket number is 14014, and we just need that affidavit
18  uploaded to MDL Centrality with the discovery documents.
19           **THE COURT:** Mr. Bryson, can you take care of that?
20           **MR. BRYSON:** Yes, Your Honor, we can.
21           **THE COURT:** Why don't you do that?  Today is Tuesday.
22  Have that done by Tuesday of next week.  You got a week.
23           **MR. BRYSON:** Yes, Your Honor, will do.  Thank you.
24           **THE COURT:** Okay.  Towanda Payton.
25           **MR. BAEHR:** We have that as a late cure, Your Honor.

OFFICIAL TRANSCRIPT

1    **THE COURT:** That's a late cure, okay.  Do you need
2    that seven days to confirm compliance?
3          **MR. BAEHR:** (Nods head.)
4          **THE COURT:** Okay.  And then we have Debbie Donult, and
5    that's Bachus Schanker.  Ms. Sulkin.  But wait, noncompliance
6    with 12A.
7          **MS. CALLSEN:** Well, it's not like the 12A that we
8    addressed the last couple times.  This is the one where they
9    actually have product ID for Hospira, but they've failed to
10   dismiss the remaining defendants.
11         **THE COURT:** Oh, okay.  Ms. Sulkin.
12         **MS. SULKIN:** Your Honor, I looked at Centrality.  I
13   think we had uploaded product ID less than 30 days ago, and the
14   scheme of 12A allows the 30 days to dismiss.  But obviously, we
15   don't have any objection to dismissing out the defendants other
16   than the Hospira defendants.
17         **THE COURT:** Okay, let's do that within the next 15
18   days or so.
19         **MS. CALLSEN:** I have a dismissal entry drafted along
20   those lines that I can submit to the Court.
21         **THE COURT:** Okay, that's fine.  Just make sure
22   Ms. Sulkin is privy to that.
23         **MS. CALLSEN:** Yeah, I can run it past her first.
24         **THE COURT:** Stephanie Wells, is this the same thing?
25         **MS. CALLSEN:** Well, kind of the same thing.  But what

OFFICIAL TRANSCRIPT

1  they've identified is Northstar product ID.  Northstar is not a

2  defendant in this litigation, and therefore, it needs a

3  complete dismissal.

4          It looks like Northstar was named in this litigation

5  way back in 2017.  Their product wasn't put on the market until

6  late May of 2016, and they obtained a dismissal of all their

7  cases back in 2017.  That's Docket No. 320, and they've not

8  been part of this litigation since then.  So the dismissal

9  we're seeking would be of all defendants.

10          **THE COURT:** Ms. Sulkin.

11          **MS. SULKIN:** And Your Honor, we don't have any defense

12  to that given that it's a generic manufacturer.

13          **THE COURT:** Okay, the Court is going to dismiss with

14  prejudice.

15          Gertestine Mcferson.

16          **MS. BRILLEAUX:** Yes, Your Honor, this is a case that

17  was on the March hearing for a shell PFS that didn't have

18  information regarding a second cancer diagnosis.  Since then,

19  plaintiff has submitted an amended PFS with that information.

20  So now we have a photo issue with the second cancer diagnosis.

21          So what we're looking for here are photos from after

22  her Taxotere treatment in 2004, but before her second

23  chemotherapy treatment in 2009.

24          **THE COURT:** Ms. Sulkin.

25          **MS. SULKIN:** Your Honor, I do believe that a

OFFICIAL TRANSCRIPT

1  photograph in 2008 has been uploaded to Centrality.

2  Additionally, I did want to note that the family is working

3  with a probate attorney to substitute into this matter and has

4  an appointment scheduled.

5          **MS. BRILLEAUX:** And Your Honor, on that note, and

6  thank you, Ms. Sulkin, I don't believe a suggestion of death

7  has been filed in this matter which I think needs to be done

8  for us to proceed.

9          **MS. SULKIN:** Yes, and as I just addressed with the

10  Court, the family does have an appointment with a probate

11  attorney to open up the estate.  But of course, that needs to

12  be done prior to us submitting anything to substitute in a

13  party.

14          **MS. BRILLEAUX:** But just for the suggestion of death.

15          **THE COURT:** Just the suggestion of death.  Not a

16  substitution, but a suggestion of death.  So why don't you get

17  the suggestion of death uploaded within the next 30 days?

18          I'm going to grant 15 days to defense to confirm

19  compliance as to the photograph that was recently uploaded.

20          **MS. BRILLEAUX:** Thank you, Your Honor.

21          **THE COURT:** All right, Thelma Monger.

22          **MR. BAEHR:** Your Honor, this case was heard at the

23  March hearing for no proof of use, and there was a dispute as

24  to whether the document produced was proof of use.  And you had

25  noted that you would need to see the document; so we're here

OFFICIAL TRANSCRIPT

1    with the document.

2              **THE COURT:** Okay, thank you.

3              **MR. BAEHR:** May I approach?

4              **THE COURT:** Yes.

5              **MR. BAEHR:** So this is the record that has been

6    produced as proof of use.  Sanofi's position is that this is

7    not a record of administration, but it's a plan for future

8    administration.

9              You can see at the top it's labeled chemotherapy

10   orders; and in particular, if you look in the middle portion,

11   the sort of large writing, highlight, that says, "After all

12   four cycles of AC completed, start," and then it lists

13   Taxotere.  The document is dated at the bottom right

14   December 5th, 2007, and in the top left corner, you can see

15   it labels the start date would be the next day, December 6th.

16             So again, Sanofi reiterates its position that this is

17   a plan, not a record of Taxotere use, and so it's not proof of

18   use.

19             **THE COURT:** Ms. Sulkin.

20             **MS. SULKIN:** Your Honor, we do believe that this is

21   sufficient proof of use to survive the summary judgment stage.

22   This is obviously a plan in which Taxotere would be

23   administered, and we believe that with the plaintiff fact sheet

24   of plaintiff certifying and signing that she did receive

25   Taxotere is sufficient to survive summary judgment on this

OFFICIAL TRANSCRIPT

1   matter.

2          And it's a factual issue that the defendants are

3   welcome to cross-examine the plaintiff and her treating

4   physician on.

5          **THE COURT:** I guess this is the first time I've seen

6   where it's an actual -- other than a plan that the plaintiff

7   has taken home from her oncologist's office, this is actually

8   his orders, chemotherapy orders.  That's what it looks like.

9          Where did this document -- would this come out of her

10  medical record?

11         **MS. SULKIN:** Yes, Your Honor.  And unfortunately, this

12  is the only medical record we've been able to obtain.

13         **MR. BAEHR:** And we would just say even this isn't a

14  specific order, for example, with a date for Taxotere

15  administration.  It's being styled for the regimen AC followed

16  by T before the AC was even administered.  So it actually, you

17  know, the Taxotere administration would be weeks later.

18  Obviously, intervening effects or intervening events happen

19  regularly.

20         **MS. SULKIN:** Your Honor, then I would just point out

21  again that this is a factual issue.  We do believe that we've

22  presented enough of a factual issue to survive summary judgment

23  at this point.

24         **THE COURT:** I don't think I'm going to dismiss it.

25  This is tenuous, but I just don't know if it's enough for me to

OFFICIAL TRANSCRIPT

1    dismiss.  Because I know it's, you know, what they're saying is

2    this is the orders and he has her starting Taxotere day one

3    only after times four.

4            Go ahead.

5            **MR. BAEHR:** We'd be happy to brief it if it'd be

6    helpful to see -- have us break down, you know, why we think

7    this falls within the category of plan that you've addressed

8    before.

9            **THE COURT:** No, I understand.  And I've seen them

10   differently which is you leave your doctor's office and this is

11   the plan that he gives you that you're going to do.  This is a

12   little bit different because this looks like a medical record

13   where it's the actual orders, not just the plan of what we're

14   going to do.

15           Are there any outstanding requests for more medical

16   records?  Did she receive her chemotherapy at Tennessee Cancer

17   Institute?

18           **MS. SULKIN:** Yes, Your Honor.  And we have requested

19   those records.  Unfortunately, because her chemotherapy did

20   occur in 2007 and 2008, the records are no longer in existence.

21           **THE COURT:** Where did you get this?  Where did you get

22   this from?

23           **MS. SULKIN:** This is from the hospital.  I've dealt

24   with a lot of hospitals in requesting records and trying to

25   obviously collect CMO 12 product ID, and hospitals are

OFFICIAL TRANSCRIPT

1  sometimes strange about how they preserve certain records and

2  don't preserve others.

3          **THE COURT:** Let me just ask some questions, please.

4  Is this the only hospital record they had?

5          **MS. SULKIN:** Yes, yes.

6          **THE COURT:** So they had nothing but this, and it was

7  just part of the hospital record?  This is so weird.

8          **MS. SULKIN:** Yes, Your Honor, that's the only thing

9  we've been able to obtain.

10         **THE COURT:** I'm a bit perplexed that you would have

11 only this one sheet of paper in the hospital record.  Was it in

12 the pharmacy or something?  I mean where was -- I don't

13 understand.

14         **MS. SULKIN:** That, I'm not sure.  I'm obviously not

15 well versed in the record keeping of Tennessee --

16         **THE COURT:** Well, I understand.  But what you have is

17 one page that was provided to you?

18         **MS. SULKIN:** Yes, Your Honor.  Unfortunately, that is

19 all we have.  And it's relatively common to receive only a

20 couple of pages when the treatment was so long ago.

21         **MR. BAEHR:** We would again maybe just suggest briefing

22 on the issue since it does seem that there's not going to be

23 any other evidence.

24         **MS. SULKIN:** And that's, Your Honor, I would point out

25 that that's incorrect.  Should this case ever proceed to

OFFICIAL TRANSCRIPT

1  remand, there would be testimony from the plaintiff and her
2  treating physician.
3          Additionally, plaintiff has already certified in her
4  plaintiff fact sheet that she did receive Taxotere.  This is
5  nothing but a fact in dispute, and I don't think motion for
6  summary judgment --
7          **THE COURT:** I think part of my problem, Mr. Baehr,
8  we've got a doctor -- I'm going to allow this one to proceed,
9  and we'll just let it go.  I understand.
10          I think part of my problem is these are actual
11  orders.  The doctor has signed it.  He has, you know, and it's
12  what was submitted.  And then we'll just see.  It may -- we may
13  not know if it's Taxotere or docetaxel that was ultimately
14  administered by another defendant, but that may be a separate
15  question.  But I'm going to let it survive today.
16          **MR. BAEHR:** Thanks, Your Honor.
17          **THE COURT:** Thank you.  All right, Gail Ray.
18          **MS. BRILLEAUX:** Yes, Your Honor.  This is a case that
19  has a date issue.  And it's fairly complicated, and I'm going
20  to try and simplify it.  The PFS that was produced in this
21  case, and I actually have both of the documents that I'm going
22  to reference.  If I can approach, Your Honor?
23          **THE COURT:** Yes.
24          **MS. BRILLEAUX:** What I have is two documents.  The
25  first is the PFS.  I have flagged page 14 at the bottom where

                    OFFICIAL TRANSCRIPT

1   the plaintiff has indicated the dates that she was provided

2   Taxotere.  It says first treatment date, December of 2011; last

3   treatment date, May of 2012.

4           **THE COURT:** Okay.

5           **MS. BRILLEAUX:** And then the other record is one page

6   of medical records, didn't feel the need to give you all of

7   them, this is the only record that we have indicating docetaxel

8   use.  And as you'll see, it's from May of 2009.

9           So what we're asking for today in this case, Your

10   Honor, for Gail Ray is that plaintiff provide an amended PFS

11   with accurate information for all cancer diagnoses and

12   treatments.  We do think she had multiple cancer diagnoses,

13   multiple treatments; but we need to get the dates straight of

14   when she received Taxotere and when she received other

15   chemotherapy treatments and all of, of course, the dates of

16   diagnosis and treatment.

17           **THE COURT:** Ms. Sulkin.

18           **MS. SULKIN:** Your Honor, I can clarify with my office

19   and go through the medical records with the people from my

20   office who have been assisting in this project and try and

21   clear up the dates.

22           I note that part of the issue with the photograph as

23   well, and I think we --

24           **THE COURT:** All right, I'm going to allow you to have

25   until the July hearing date to get this cleared up, how about

1   that.

2               **MS. SULKIN:** Thank you, Your Honor.

3               **THE COURT:** Okay, thank you.  And then we have

4   Margaret.

5               **MS. BRILLEAUX:** Wgeishofski.  You just have to say it

6   with confidence no matter what you choose.

7          So in this case, Your Honor, at the December hearing,

8   Counsel informed the Court that plaintiff was deceased as of

9   July of 2019, so sometime ago.  They asked for 90 days.

10         At the March hearing which was just about 90 days

11   later, Counsel asked for an additional 30 days; so the family

12   could proceed with probate paperwork.

13         And now it's May.  It's almost 60 days after the

14   March hearing, and I don't believe that we have any suggestion

15   of death filing or any update on substitution or probate.

16              **THE COURT:** Ms. Sulkin.

17               **MS. SULKIN:** Your Honor, we were unable to get ahold

18   of any family members that wanted to proceed with the case.  So

19   we have no objection to dismissal.  But because the plaintiff

20   is deceased, I wasn't sure what sort of mechanism to use to

21   dismiss this case prior to the hearing.

22              **THE COURT:** The Court is going to dismiss this with

23   prejudice.  Thank you.

24               **MS. BRILLEAUX:** Thank you, Your Honor.

25              **THE COURT:** Anything further?  That's it?

OFFICIAL TRANSCRIPT

1   **MS. BRILLEAUX:** That's it.

2   **THE COURT:** Okay, thank you.

3   (Whereupon this concludes the proceedings.)

4

5

6

7   **<u>CERTIFICATE</u>**

8

9

10   I, Alexis A. Vice, RPR, CRR, Official Court Reporter for

11   the United States District Court, Eastern District of

12   Louisiana, do hereby certify that the foregoing is a true and

13   correct transcript, to the best of my ability and

14   understanding, from the record of the proceedings in the

15   above-entitled and numbered matter.

16

17                    *<u>/s/Alexis A. Vice, RPR, CRR</u>*
                     Alexis A. Vice, RPR, CRR
18                   Official Court Reporter

19

20

21

22

23

24

25

OFFICIAL TRANSCRIPT