1                    UNITED STATES DISTRICT COURT

2                   EASTERN DISTRICT OF LOUISIANA

3

4    IN RE:  TAXOTERE (DOCETAXEL)    *      16-MD-2740
     PRODUCTS LIABILITY LITIGATION   *
5                                    *      Section H
                                     *
6    Relates to:  All Cases          *      April 28, 2022
                                     *
7    * * * * * * * * * * * * * * * * *

8

9                   SHOW CAUSE HEARING BEFORE
                THE HONORABLE JANE TRICHE MILAZZO
10                 UNITED STATES DISTRICT JUDGE

11

     Appearances:
12

13   For the Plaintiffs:         Gainsburgh Benjamin David Meunier
                                    & Warshauer, LLC
14                               BY:  M. PALMER LAMBERT, ESQ.
                                      CLAIRE E. KREIDER, ESQ.
15                               1100 Poydras Street, Suite 2800
                                 New Orleans, Louisiana 70163
16

17   For the Defendants:         Irwin Fritchie Urquhart
                                    & Moore, LLC
18                               BY:  KELLY E. BRILLEAUX, ESQ.
                                 400 Poydras Street, Suite 2700
19                               New Orleans, Louisiana 70130

20

21   For the Defendants:         Greenberg Traurig, LLP
                                 BY:  NICHOLAS A. INSOGNA, ESQ.
22                               One International Place
                                 Suite 2000
23                               Boston, Massachusetts 02110

24

25

```
 1    Appearances:

 2
      For the Defendants:          Tucker Ellis, LLP
 3                                 BY:  JULIE A. CALLSEN, ESQ
                                   950 Main Avenue, Suite 1100
 4                                 Cleveland, Ohio 44113

 5
      Also Participating:          Alexandra Robertson, Esq.
 6                                 Jason Fraxedas, Esq.
                                   Brian Abramson, Esq.
 7                                 Melanie Sulkin, Esq.
                                   Karen Menzies, Esq.
 8                                 Bria Hanlon, Esq.
                                   David Bonnin, Esq.
 9                                 David Langevin, Esq.
                                   Blake Weiman, Esq.
10                                 Mark Niemeyer, Esq.
                                   Denise Dessel, Esq.
11                                 Andrea Barient, Esq.
                                   Chris Elliott, Esq.
12

13    Official Court Reporter:     Toni Doyle Tusa, CCR, FCRR
                                   500 Poydras Street, Room B-275
14                                 New Orleans, Louisiana 70130
                                   (504) 589-7778
15

16

17
      Proceedings recorded by mechanical stenography using
18    computer-aided transcription software.

19

20

21

22

23

24

25
```

1          <u>**PROCEEDINGS**</u>

2          **(April 28, 2022)**

3          **THE COURT:**  Good morning.

4          **THE DEPUTY CLERK:**  Court is in session.  You may be

5     seated.  16-2740, *In Re: Taxotere Products Liability*

6     *Litigation*.  Counsel, you can make your appearances.

7          **MR. LAMBERT:**  Good morning, Your Honor.  Palmer

8     Lambert, co-liaison counsel for plaintiffs.

9          **MR. INSOGNA:**  Good morning, Your Honor.  Nick Insogna

10    for the defendants.

11         **MS. CALLSEN:**  Julie Callsen.

12         **MS. BRILLEAUX:**  Kelly Brilleaux for the Sanofi

13    defendants.

14         **MR. LAMBERT:**  Judge, Claire Berg Kreider also with my

15    firm.

16         **THE COURT:**  Thank you.

17         **MR. LAMBERT:**  Your Honor, before we get started --

18    and I will be very brief because I know we have a number of

19    folks to get through today, but I do have to mention something

20    for the record just on behalf of the steering committee.

21              Your Honor, we have come a long way on product

22    identification in this MDL.  We at the outset were faced with

23    what the defendants characterized was approximately one-third

24    of the MDL lacking identification of the specific manufacturer

25    and at the outset also claiming that there was a lack of due

diligence on the plaintiffs' part for naming multiple

defendants in the complaint before figuring out who the proper

defendant was.

We then transitioned to CMO 12A, which was a

process that we agreed upon with the defendants, with the

Court's assistance, and that process has been, I would say,

fairly successful.  My office and Ms. Barrios' office have

worked with counsel to do our best to get to identification of

the manufacturer.

In this particular show cause proceeding, the

defendants are asking for dismissal based on what we see as a

claimed discovery violation, but yet this manufacturer

identification has never been in the custody, possession, or

control of these particular plaintiffs.  It was always the duty

of the facility to maintain adequate records of the medication

that was administered to patients.

All of the folks who are listed in the show

cause list, regardless of whether they are appearing today or

are not, have proof that they were administered docetaxel.

They just lacked the information of the specific manufacturer's

drug that was administered to them.

I also want to point to some issues that we

might see today which --

THE COURT:  Mr. Lambert, what do we do?  We have to

name a defendant.  I understand that they took docetaxel and I

10:05

1  understand that they are at the mercy of these infusion

2  centers, but my question is:  What am I to do, let you proceed

3  with no named defendant, just some amorphous entity?  That's my

4  question.  If you can answer it, I am all ears.

5          **MR. LAMBERT:**  Your Honor, I knew you would ask that

6  question, and unfortunately I don't have a great answer for it.

7  I do know, based on my review of law around the country, that

8  market share liability is not a viable claim, generally.

9          **THE COURT:**  Okay.

10          **MR. LAMBERT:**  There are some states with innovator

11  liability theories that allow a case, even if they don't have

12  the specific manufacturer's identification, to proceed against

13  the innovator or the original manufacturer.

14          **THE COURT:**  Right.

15          **MR. LAMBERT:**  It's a catch-22, I agree, Your Honor,

16  and it's unfortunate for these folks because it's really not

17  their fault.

18          **THE COURT:**  Oh, I understand.  If there was a problem

19  with the infusion center not doing what they were supposed to

20  do, maybe there's something there.  I just know that we have to

21  have a defendant and as for -- since you're shaking your head,

22  I think you understand my problem here.

23              Now, if we are in a jurisdiction that allows for

24  innovator liability, that's a different matter.  I don't think

25  we have that in Louisiana for sure.

1      **MR. LAMBERT:**  We don't, Your Honor.  There may be

2  some instances where you hear today that plaintiffs believe

3  they can meet a more-likely-than-not test based on distribution

4  information or purchase records.  There may be some folks with

5  partial PID, where some of the infusions are known and some

6  aren't.  You may also hear today that some folks were very

7  close to the point in time where Sanofi lost their patent

8  protection and they believe that may be relevant to the

9  inquiry.

10      I just wanted to flag those.  I think today will

11  go a little bit smoother than we think because I think there

12  are going to be similar issues between a lot of these

13  plaintiffs, but I just wanted to make those notes for the

14  record.

15      **THE COURT:**  I appreciate that, Mr. Lambert.  I know

16  you're caught and it's through no fault of the plaintiffs.

17  Again, we have said it a hundred times.  This is not like going

18  to Walgreens and picking up a prescription that's been filled

19  by a pharmacist there that you can look at the record.  This is

20  completely different.  Nobody shows up at an infusion center

21  and gets a receipt, but here we are.

22      Something I wanted to talk to all of you about,

23  maybe the thing to do is to go by law firm instead of each

24  individual.  I will tell you I would think that if the law firm

25  can say, "I have these 10 cases, but I want you to know, Judge,

10:09

1    we have just received notification from this facility that they

2    are making progress," then we can put that on the side or, you

3    know, "We have cases out of this jurisdiction that do provide

4    for innovator liability," or market share, that sort of thing,

5    then we will deal with it.  Absent that, my thought is to maybe

6    proceed by law firm, but I haven't heard from the defendants

7    yet and from your voice.  I'm all ears.

8            **MR. LAMBERT:**  I think that is how the defendants have

9    laid it out, to do it by firm.  I did miss one thing in my

10   notes.  The defendants did provide a proposed order for

11   dismissal.

12           **THE COURT:**  I thought those were for people -- I

13   received this proposed order, but these are not for the cases

14   that are here, right?

15           **MR. LAMBERT:**  Right.  That's for the folks who are

16   not appearing.  They did very kindly share that with Dawn and

17   myself.  We were allowed to give some input on that.  We would

18   ask, because this is a proposed dismissal of a case lacking

19   identification, that it be without prejudice instead of with

20   prejudice.

21           **THE COURT:**  Mr. Insogna.

22           **MR. INSOGNA:**  Thank you, Your Honor.  I just want to

23   supplement what Mr. Lambert said with a few comments.  I'm

24   going to keep this as brief as possible.

25               As Mr. Lambert said, CMO 12 was negotiated over

10:10

1   many months, so the remedy we are seeking here is not

2   draconian.  It's expected and, in our opinion, it's time.  I

3   just want to note some of the metrics for you.

4           There are currently around 1,200 cases in the

5   MDL that don't have product ID, about a tenth of the inventory,

6   so we need to deal with that.  The list that we have today,

7   when we first sent notice, was 900 cases.  We have whittled

8   that down now to the 168, I think it is, that are in front of

9   you today.  We have ready and will serve soon -- on the heels

10  of this so we didn't create confusion with today -- a list of

11  another 600 cases that are situated exactly the same as today.

12  They were just filed later.  Today is cases filed before 2019.

13  This would be 2019 through 2021.

14          CMO 12, as it's laid out, the longest possible

15  time line to get product ID is 330 days.  So now all of the

16  cases filed up through 2021 have had a sufficient time under

17  CMO 12.  We will be serving that next.

18          As you know, the order that set today's hearing

19  established that plaintiffs needed to provide us objections and

20  reasoning and efforts to date by March 15.  There are a number

21  of firms you will hear that did not do that, so we are not sure

22  what the basis will be for some of these objections, but given

23  the length of time that plaintiffs have had -- there have been

24  five notices served for these cases.

25          **THE COURT:**  I have that.

10:12

1        **MR. INSOGNA:**  The first one dating back to April of
2    2020.  It's certainly our position that all of these cases
3    appropriately can be dismissed today.
4        **THE COURT:**  I have April, September, and
5    December 2021.
6        **MS. CALLSEN:**  The April 2020 notice was informal,
7    where we were going back and forth with plaintiffs.  The formal
8    notice that we actually submitted to the Court probably started
9    in 2021 once we whittled that down.
10        **THE COURT:**  Thank you.  That's what I have.  Okay.
11        **MR. INSOGNA:**  In April 2020, we sent Ms. Barrios a
12    list of that 1,200 or so cases saying here's all of the product
13    ID issues we need to clean up.
14            One other thing I wanted to note is that
15    Mr. Lambert said some of the cases may have partial product ID
16    or they may have some evidence like billing records, things
17    like that.  We have done our level best to weed out all of
18    those cases today and push those until after we have dealt with
19    all of the cases that don't have any evidence of product ID.
20    If there are a few cases like that, I understand that that may
21    be a different kettle of fish, but what we understand today are
22    all cases that do not have any evidence of product ID.
23        **THE COURT:**  Okay.  I thought I would go through by
24    the law firm and maybe just say, you know, you have these
25    cases.  We will do it that way instead of individually, as we

1    have done from previous occasions.

2              **MR. INSOGNA:**  Absolutely.

3              **MS. BRILLEAUX:**  Your Honor, I just wanted to make one

4    comment on behalf of Sanofi to follow up on something

5    Mr. Lambert said.  None of the defendants here are

6    substantively prepared to discuss innovator liability or market

7    share theories and that's because these aren't an issue in the

8    case.

9              As Your Honor is aware, discovery on the company

10   defendants has been closed for some time now, and so any claim

11   that involves that would necessarily require reopening

12   discovery, which is just not feasible at this portion of the

13   litigation.  So for that reason we won't be making any

14   substantive responses to any arguments like that, but I wanted

15   you to be aware of our position.

16             **THE COURT:**  Well, I'll be honest with you.  I'm

17   unfamiliar with that.  If there are jurisdictions where perhaps

18   that is a theory, then we would take that up at that time with

19   these individual defendants.  As you-all know, we have been

20   doing these show cause hearings since I was assigned this MDL,

21   and I've tried to make sure that every plaintiff has an

22   opportunity to cure deficiencies if it's feasible.

23             **MS. BRILLEAUX:**  I also wanted to add that plaintiffs

24   never pleaded innovator liability theories in any of their

25   master complaints.  For us, it's a complete nonissue in this

10:13

1   litigation.  It's just way too late in the game to be raising

2   completely new theories that would require completely different

3   discovery now discovery is closed for the company defendants.

4   Thank you, Your Honor.

5           **MR. LAMBERT:**  Your Honor, just a response.  The law

6   is the law.  If they have named Sanofi as a defendant and a

7   certain law applies -- we don't need to argue that today.

8           **THE COURT:**  We will see if it comes up during the

9   course of this show cause hearing and I will deal with it at

10  that time.

11          Okay.  Are we ready to begin?  I have been

12  submitted a list of people that are subject to dismissal due to

13  their inability to determine product ID.  I have been presented

14  an order of people that have not responded and are not

15  objecting to dismissal.  I will sign that today.

16          Yes, ma'am.  Ms. Callsen.

17          **MS. CALLSEN:**  The only thing is Exhibit A -- we have

18  been notified of five additional individuals who will not be

19  appearing to object, so we would add that.  We need to update

20  our Exhibit A.  We can provide that to the Court.  We are

21  saying just wait until we can update that so --

22          **THE COURT:**  That's fine.  We were going to drop it

23  today.  That was one of the things Brittany said, "We might

24  want to wait until they discuss is."

25          **MS. CALLSEN:**  My office can update it as we are going

10:16   1   through this, and we can get it to you by the end of the day.

2         MS. KREIDER:  I will identify those five as they come

3   up on the list.

4         MS. CALLSEN:  Okay.

5         THE COURT:  I think the first law firm we have is

6   Johnson Becker.  Let me get my list of who should be appearing.

7              Ms. Robertson.

8         MS. ROBERTSON:  Good morning, Your Honor.  This is

9   Alex Robertson.

10        MS. CALLSEN:  I'm sorry.  Do you need me to go up

11  there?

12        THE COURT:  I think that might be better.  It might

13  be easier for us to hear.

14        MS. CALLSEN:  Your Honor, on behalf of defendants,

15  Julie Callsen.  What plaintiffs submitted as, quote, proof of

16  product ID is a tear sheet which has McKesson as the publisher

17  of the tear sheet information, and they claim that is product

18  ID.  McKesson is a publisher of tear sheets of medical

19  information.

20             This is dated 2012.  McKesson, for one thing,

21  wasn't even in the market at that time and this is no way no

22  how, because they published information, ever sufficient as a

23  manufacturer of the product.

24        THE COURT:  Okay.  Ms. Robertson.

25        MS. ROBERTSON:  Good morning, Your Honor.  Plaintiff

10:17

1    Jiang recently provided and was able to obtain and locate that

2    patient information sheet that lists Taxotere produced by

3    McKesson.  Plaintiff states that the informational sheet was

4    provided by her doctor.

5                    Can you hear me, Your Honor?

6            **THE COURT:**  Oh, yes.

7            **MS. ROBERTSON:**  It was going in and out for me.  I'm

8    sorry.

9                    Plaintiff told us that she was provided the

10   informational sheet from her doctor, which is evidenced in the

11   records.  The document does state that --

12           **THE COURT:**  Wait, wait, wait, wait, wait,

13   Ms. Robertson.

14           **MS. ROBERTSON:**  Sorry.

15           **THE COURT:**  I just want to make sure I understand.

16   Does it indicate that this is the manufacturer of the drug she

17   received, or is it one of those tear sheets that we have seen

18   during the course of the litigation where it's information for

19   the patient to consider?

20           **MS. ROBERTSON:**  It does not indicate that McKesson is

21   the manufacturer of her infused drug.  Our understanding is

22   that it may provide some evidence.

23           **THE COURT:**  Well, who would be the defendant in this

24   case?

25           **MS. ROBERTSON:**  So McKesson would arguably be the

10:19   1    defendant that we would name in the case based on the tear

2    sheet.

3                MS. CALLSEN:  Obviously, Your Honor --

4                THE COURT:  That's not sufficient evidence.  Those

5    tear sheets are just handed out by the nurse to say that is

6    what docetaxel does, but it's not indicative that McKesson

7    manufactured the actual docetaxel that she received.  Have you

8    received anything else from the infusion center or where she

9    actually received her chemotherapy?

10               MS. ROBERTSON:  Unfortunately, we have not been able

11   to obtain any other documentation establishing manufacturer.

12   Because the plaintiff did recently obtain this information

13   sheet, I did feel obligated to present it as an objection

14   today.

15               THE COURT:  Okay.  Thank you.  It came from the

16   plaintiff, not from --

17               MS. ROBERTSON:  Correct.  The plaintiff was able to

18   locate it in her records.

19               THE COURT:  Ma'am, that's not sufficient to show

20   product ID.  I'm going to dismiss this case.  Thank you.

21               MS. CALLSEN:  Thank you.

22               MS. ROBERTSON:  Thank you, Your Honor.

23               THE COURT:  Our next is the Maher Law Firm, which is

24   Jason Fraxedas.  How do you pronounce your name, sir?

25               MR. FRAXEDAS:  Yes, Your Honor.  Good morning.  This

10:20

1    is Jason Fraxedas with the Maher Law Firm.

2            THE COURT:  We have Jessica Epperson.  Do you have

3    product ID?

4            MR. FRAXEDAS:  Your Honor, we do not have positive

5    product ID of manufacturer.  However, Ms. Epperson lives in

6    California and at all relevant times was a citizen of

7    California, her use of docetaxel occurred in California, and

8    her injury also occurred in California.  The substantive law

9    that applies to her claim is California law, which recognizes

10   innovator liability.

11           MS. BRILLEAUX:  Your Honor, we have already, I think,

12   noted our objection to any innovator liability claims.

13           THE COURT:  I'm going to defer because I'm not in a

14   position to respond one way or the other about that.  I'm just

15   going to defer it.  We will have briefing on this and I will

16   make a decision, but this does not mean that you have survived

17   the day, just so you know.  For purposes of this hearing, I'm

18   going to defer.

19           MR. FRAXEDAS:  Thank you, Your Honor.

20           THE COURT:  Okay.  The Williams Hart firm.

21   Mr. Abramson, are you on the line?

22           MR. ABRAMSON:  Yes, Your Honor, I am.  Brian Abramson

23   with Williams Hart.

24           THE COURT:  Okay.  I believe the case before me is

25   Tina Davis.

10:22

1    **MR. ABRAMSON:**  Yes, Your Honor.  We submitted on

2  March 9 a letter detailing our efforts to obtain product ID.

3  We feel like we do have product ID as to at least three of the

4  six cycles that Ms. Davis received from the Nevada Cancer

5  Center.  The way we get there is based on defendant fact

6  sheets.

7              There were five defendant fact sheets that were

8  filed in this case:  Sun Pharmacy, Accord, Sanofi, Hospira, and

9  Sandoz.  Hospira and Sandoz identified that they did supply

10  this cancer center with docetaxel during the relevant time

11  period.  Sandoz did not start shipping any docetaxel to this

12  facility, though, until right before the fourth infusion that

13  Ms. Davis would have received.  So, therefore, Hospira is

14  definitely the manufacturer of the first three infusions, and

15  this would kind of go to the partial PID where we would be

16  naming Hospira and Sandoz.

17        **MR. INSOGNA:**  Your Honor, if I may, because I think

18  this issue may come up with a number of plaintiffs.  Just so

19  that we are clear, the only evidence they have is a defendant

20  fact sheet where the defendants said, based on their

21  distribution records, some of their docetaxel made it to this

22  plaintiff's facility.  There's nothing tying it to this

23  particular plaintiff.  It's been defendants' position

24  consistently throughout the litigation that the defendant fact

25  sheet is not evidence of product identification.

10:23

1          THE COURT:  I'm confused.  Do you have information

2    that she was administered docetaxel?  Do you have definitive

3    proof of that?

4          MR. ABRAMSON:  Yes, Your Honor, we do.  We have

5    records from the oncology center that details the six cycles

6    of -- they label it "Taxotere," but we just have the J codes.

7    We don't have the NDCs, but we have the dates of infusion.

8               I understand what defense counsel is saying, but

9    this is their words, their documents.  There are only two

10   possible manufacturers who could have supplied it, and only one

11   of them could have been supplying it at the time she was

12   infused the first three cycles of her docetaxel.

13         MS. CALLSEN:  Your Honor, there are other

14   manufacturers that manufacture docetaxel under an ANDA, an

15   Abbreviated New Drug Application.  They are not involved in

16   this litigation, and it's very possible that they could have

17   supplied the facility too.  Our bottom line is just evidence

18   that certain manufacturers may have shipped product to their

19   particular facility doesn't establish that any particular

20   plaintiff actually received a product from a particular

21   manufacturer.

22         THE COURT:  Is there any evidence that you have that

23   the only manufacturer supplying that infusion center is the

24   named defendant?

25         MR. ABRAMSON:  I'm not sure who else would have been

10:25

1    supplying it.  We have five --

2              THE COURT:  Did you ask the infusion center if they

3    had a limited --

4              MR. ABRAMSON:  Oh, of course.  Yes.  Our letter

5    details in six pages our five-year efforts to obtain PID for

6    Ms. Davis.  We have been through countless avenues.  We have

7    asked for everything that -- the Nevada Cancer Center was

8    acquired in June 2013.

9              THE COURT:  I really just want the answer to one

10   question.  Do you have evidence that this center only purchased

11   docetaxel from a named defendant?

12             MR. ABRAMSON:  They don't have any of the NDC codes.

13   I don't know how we could get them.

14             THE COURT:  Well, I thought perhaps from procurement

15   or the pharmacy department to say, "This is the only docetaxel

16   we kept on hand."

17             MR. ABRAMSON:  Well, we just have the J code that

18   said -- I mean, their J code says "Taxotere" on their pharmacy

19   records.  HealthCare Partners, once acquired, they didn't

20   maintain any of the records from Nevada Cancer Center.  We feel

21   that it's at least a fact issue as to Hospira and Sandoz, and

22   especially Hospira where we know from the -- I mean, if the

23   defendant fact sheets are going to be worth anything, they have

24   to be able to provide some evidence that at least as to these

25   three cycles they were the manufacturer.

10:27

1          **MR. INSOGNA:**  Your Honor, that can't possibly be the

2     case because the defendants' internal records show if we

3     shipped to a facility, but also show if we shipped to a

4     distributor who may have shipped to other facilities.  There

5     were five ANDAs on the market that aren't accounted for in the

6     defendant fact sheets.  There are too many unknowns for that to

7     be evidence.

8          **THE COURT:**  I think the problem I have is -- I will

9     tell you.  If you had told me that you had evidence from this

10    cancer center that the sole supplier was Hospira and you had

11    evidence that she received docetaxel from this facility, I

12    could make that.  I think for you to say Hospira supplied

13    docetaxel to these various facilities is insufficient for me to

14    then make that leap that this is the proper defendant.

15               Mr. Lambert, I figured you had something to say.

16          **MR. LAMBERT:**  Yes.  Your Honor, I just would add to

17    this particular circumstance that it does appear that there are

18    some fact issues.  We were provided early on a marketing chart

19    of when each defendant began selling their medication.  There's

20    facts there that would need to be evaluated as to whether this

21    could be a more-likely-than-not determination as to Hospira.

22               To us, that type of a situation is a little

23    different than somebody that just doesn't have any information

24    at all, particularly in the circumstance where I think

25    Mr. Abramson was saying that the facility was sold and there

10:28

1    may not be all of the information on the facility side.

2              THE COURT:  But here we are.  The problem is this

3    lawsuit was filed in 2017 and the best we have is a report that

4    she received docetaxel, that they referred to as "Taxotere,"

5    and that this was a supplier of docetaxel in that area.  Do we

6    know that this was the --

7              MR. LAMBERT:  Well, I can't speak for Mr. Abramson.

8    He would need to say what subpoena responses he has received.

9    He has a J code which is a hospital code that identifies

10    docetaxel specifically.

11             THE COURT:  I understand that.  I understand this

12    lady received docetaxel, but we have to have a defendant that

13    we named to sue.

14             MR. LAMBERT:  He has a defendant fact sheet that

15    identifies this particular facility as receiving their

16    docetaxel at that time, and they are the only one of the

17    defendants in this case that --

18             THE COURT:  Were they the only manufacturers of

19    docetaxel at the time?

20             MR. LAMBERT:  Well, off the top of my head --

21             THE COURT:  Had the generics come on the market at

22    that point?

23             MR. LAMBERT:  I'm trying to find that out right now,

24    but I do think that --

25             THE COURT:  I'll roll this over to the next time, but

10:30

1    if the generics were in the market at that time, then we are

2    done.

3              **MS. CALLSEN:**  They were in the market at that time,

4    Your Honor.  Mr. Lambert is referring to the market share.  We

5    provided that to plaintiffs before we even negotiated CMO 12A

6    as a guide for them to help them figure out which was the

7    possible defendant that could be.  This has been known to

8    plaintiffs.  I remember working that out in 2017 --

9              **THE COURT:**  Part of my problem is:  What's the

10   endgame here?  Are you going to try a case against a defendant

11   that you think may or may not have been there?

12             **MS. CALLSEN:**  It's not our burden --

13             **MR. LAMBERT:**  Again, I don't want to speak for

14   Mr. Abramson, but --

15             **THE COURT:**  Well, especially since I don't think this

16   is -- oh, it is Mr. Abramson.  We finished with Mr. Fraxedas.

17             **MR. LAMBERT:**  If his client wants to dismiss all the

18   other defendants where it's unclear and wants to proceed

19   against one defendant, where the jury may decide at the end of

20   the day it's not manufactured by that defendant, then that's

21   the risk that it seems that they are willing to take.  Maybe

22   Mr. Abramson has --

23             **MR. ABRAMSON:**  Your Honor, this is Brian Abramson

24   again.  We are willing to do that.  We will dismiss everyone

25   but Hospira.  They were the named defendant.  We believe we

10:31   1   have a fact issue as to whether or not it was Hospira's
       2   docetaxel.  We believe that should survive.
       3        MS. CALLSEN:  It's not defendants' burden to
       4   establish their case.
       5        THE COURT:  It's not.  I don't think they have
       6   shifted the burden to you, Ms. Callsen.  What he is saying is
       7   you provided the information that you were supplying it at that
       8   time, nobody else, none of the other named defendants.  We'll
       9   dismiss those and let a jury decide whether or not she received
      10   Hospira.  I don't know if the facility was receiving docetaxel
      11   from any other source, and I would think that's something
      12   that -- here we are.  It's 2017 and we haven't figured that out
      13   yet.
      14        MR. INSOGNA:  I think, Your Honor, the key piece,
      15   though, that Mr. Abramson said earlier is they served a
      16   subpoena, and the response that came back was the facility
      17   doesn't keep the records.  The intent was not to get into the
      18   sufficiency of any evidence today because there's another pile
      19   of those cases we will have to deal with, but ultimately he is
      20   not going to be able the clear that hurdle either.
      21        MS. CALLSEN:  Your Honor, the dismissal order as
      22   drafted allows plaintiffs to file a 60(b) motion if they at
      23   some point get product ID or have more definitive evidence.
      24   It's just been going on for so long.  As Mr. Insogna has said,
      25   they have been on notice for so long --

10:33

1          THE COURT:  Okay.  I'm going to dismiss this without

2     prejudice.  If you can come up with something more,

3     Mr. Abramson, we will do it, but it will be dismissed without

4     prejudice.

5          MR. INSOGNA:  Your Honor, some good news for you.

6     The next two cases, Avyline Benson and Princess Nelson, are not

7     intending to object today, the McCollum firm.

8          THE COURT:  All right.  Those will be dismissed with

9     prejudice.

10               The Showard Law Firm.

11          MR. INSOGNA:  Your Honor, these two cases with the

12     Showard Law Firm are cases where we did not receive any

13     response by March 15.  I don't know the basis for plaintiffs'

14     objection, but there has not been activity on MDL Centrality

15     since December 2019.

16          THE COURT:  Mr. Elliott?  Is anybody here on behalf

17     of the Showard Law Firm?

18          MR. LAMBERT:  Star six, unmute.

19          THE COURT:  Star six to unmute.  Star six to unmute.

20     Anyone here on behalf of the Showard Law Firm?

21          MS. SULKIN:  Your Honor, this is Melanie Sulkin from

22     Bachus & Schanker.

23          THE COURT:  Please proceed.

24          MS. SULKIN:  Your Honor, I will be appearing for the

25     cases for the Showard Law Firm, Kagan Legal Group, and then

10:34

1  obviously for Bachus & Schanker.  I just got off of a four-week
2  trial and so I'm trying to get through this information.  If
3  I'm going a bit slowly, I do apologize.
4            With regard to the two cases from the Showard
5  Law Firm, it appears that they have not been able to procure
6  product ID.  Other than for the reasons Mr. Lambert stated
7  prior to the docket, those are the only objections to
8  dismissal.
9       **THE COURT:**  Okay.  The Court is going to dismiss
10  those cases with prejudice.
11            Then we get to the Gibbs Law Group, who is
12  Ms. Menzies.
13       **MR. INSOGNA:**  Your Honor, these cases, we received a
14  letter where plaintiffs have outlined their efforts to obtain
15  product identification, but that's all, no evidence.
16       **THE COURT:**  Ms. Menzies, star six.
17       **MS. MENZIES:**  Good morning, Your Honor.
18       **THE COURT:**  Good morning.
19       **MS. MENZIES:**  We have three cases on the list,
20  Your Honor, two of which we want to just have our objection
21  noted for the record under Rule 56.  The first one is Maria
22  Reyes-Flores.  As the Court noted and Palmer mentioned early
23  on, we do have docetaxel proof, but not NDC, not manufacturer.
24  Our subpoenas and efforts, just in exchanges at the facility,
25  doesn't indicate that we will be able to get the manufacturer

10:36

1    ID for Maria Flores.

2              THE COURT:  All right.  I'm really having trouble

3    understanding.  I appreciate we have indication of docetaxel,

4    but nothing else.  The case is dismissed with prejudice.

5              MS. MENZIES:  Correct.

6              THE COURT:  Maria Sanchez or Janet Whitfield?

7              MS. MENZIES:  It's a similar situation.  We just want

8    our objection noted for the record under Rule 56.

9              THE COURT:  Got it.

10             MS. MENZIES:  We do have docetaxel proof but not NDC.

11             THE COURT:  The Court is going to dismiss with

12   prejudice.  The objection is noted for the record.

13             MS. MENZIES:  Thank you, Your Honor.

14             THE COURT:  The Kagan Legal Group.  Ms. Sulkin.

15             MS. MENZIES:  Your Honor, I think there was one more.

16   I apologize for interrupting.  Was there one more for the Gibbs

17   Law Group, Janet Whitfield?

18             THE COURT:  Oh, I thought we had covered Janet

19   Whitfield, Maria Sanchez, Maria Reyes-Flores.  I have dismissed

20   those three with prejudice, subject to your objection.

21             MS. MENZIES:  I'm sorry, Your Honor, if I could

22   address Janet Whitfield.  She is a little bit of a different

23   scenario.

24             THE COURT:  Okay.

25             MS. MENZIES:  We feel that she should be deferred.

1    We are willing to go forward against Sanofi alone.  She was

2    given docetaxel only a few months after the other brands came

3    on market, two of which would be the only realistic ones,

4    Accord and Hospira.  There's a 24-month shelf life for

5    docetaxel for the Taxotere, Sanofi's Taxotere, and for us to be

6    able to do further discovery at the time this case is remanded,

7    if it is, we believe we can go forward with Sanofi with that

8    question of fact in dispute.

9         **THE COURT:**  Do you have anything from the infusion

10   center that says that they had it on the shelf?  Anything?

11        **MS. MENZIES:**  The treatment facility says they no

12   longer have NDC codes from 2011 due to a computer conversion.

13   We have subpoenaed the distributors.  We have received some

14   records from them, some say they don't have records, but

15   nothing that identifies the manufacturer.  As I said, she only

16   received docetaxel three months after the others came on the

17   market, and Sanofi had a huge proportion of the market share

18   during that time period.  The shelf life is 24 months.  So we

19   believe that there is a disputed fact and enough for us to go

20   forward against Sanofi in that case.

21        **THE COURT:**  I think that's a stretch.  Subject to

22   your objection, the case is dismissed with prejudice.

23             Let's go to the Kagan Legal Group.  That's

24   Ms. Sulkin again.

25        **MR. INSOGNA:**  Your Honor, this is another firm where

10:39

1    we don't have a response, so I don't know what the objections

2    are.  There's not evidence of product ID, obviously.

3              **THE COURT:**  Ms. Sulkin.

4              **MS. SULKIN:**  Your Honor, I have heard from the

5    Kagan Legal Group that they have obtained purchase history for

6    both Lanette Barbour and Tammy Ross.  Like I said, I have been

7    in trial the past few weeks, but it's my intention to get with

8    them and upload the purchasing history for those hospitals

9    during the treatment period time.  I would just ask that the

10   Court hold these two cases over to the next hearing so we can

11   give the defendant enough time to review what we produce and go

12   from there.  Hopefully they will be able to cull through that

13   and remove them like they have some other cases in this

14   category.

15             **THE COURT:**  Okay.  Ms. Sulkin, I will roll those

16   other to the next hearing, understanding this lawsuit was filed

17   in 2018, so four years and now we are getting documents, which

18   is a bit frustrating.

19             **MS. CALLSEN:**  On behalf of defendants, I just want to

20   register an objection.

21             **THE COURT:**  Sure.

22             **MS. CALLSEN:**  They have to be on notice since --

23             **THE COURT:**  I've got your objection.  It's noted, but

24   I'm just going to let it roll over and we will see.

25                   As to Eva Sadaka, that matter is dismissed.

10:40

1      **MS. SULKIN:**  No, no, Your Honor.  For Eva Sadaka I
2  have a different argument.  That is that Eva Sadaka resides and
3  receives treatment in California, which is an innovator
4  liability state, and so we do not think that it's appropriate
5  to dismiss this case.
6      **THE COURT:**  Okay.  I'm going to defer this innovator
7  liability.  I'm not in a position to speak to it, but I'm going
8  to need briefing on that.  We will deal with that.
9              Atkins & Markoff.
10     **MR. INSOGNA:**  Your Honor, the first three Atkins &
11  Markoff cases, Broderson, Collins, Forsey, have informed us
12  that they are not objecting.
13     **THE COURT:**  Okay.  Those matters are dismissed with
14  prejudice.  So it would be Dana Jones that there's an
15  objection?
16     **MR. INSOGNA:**  That's my understanding, Your Honor.
17     **THE COURT:**  Ms. Hanlon.
18     **MS. HANLON:**  Hi, your Honor.  So we issued a subpoena
19  to this facility a few different times.  We did actually get a
20  response yesterday.  I know that sounds crazy.  We have the
21  purchasing records now for the time period in which Ms. Jones
22  was treated which indicate [Zoom audio distortion] Hospira, and
23  Sandoz.
24              The individual that responded to my subpoena
25  also indicated that in 2017 their system switched from Epic to

10:41

1   a new system, and she believes her IT Department might be able
2   to get the exact one for specifically Ms. Jones.  Right now we
3   only have the other purchasing summary from her, and that was
4   uploaded to MDL Centrality today.  I apologize for that.
5   However, because of those reasons, we do ask that her case not
6   be dismissed today.

7           **THE COURT:**  We will roll that over to the next
8   hearing.

9               We have the law offices of Eiland Law, which is
10  Mr. Bonnin.

11          **MR. BONNIN:**  Yes, Your Honor.  This is David Bonnin.
12  I'm appearing today joining the statement made by Mr. Lambert
13  on behalf of the PSC and make a simple limited objection for
14  the record on behalf of my client.  We are satisfied that we
15  have taken all appropriate steps and the records containing NDC
16  codes for the doses they were administered do not exist in
17  currently available documents.

18              We understand that under the Court's orders this
19  is grounds for dismissal and accept the Court's decision.
20  However, there are a lot of cases still pending and potentially
21  more discovery and rulings to come in this litigation.  If the
22  appropriate proof or documentation does become available to
23  allow us to connect the dots and identify the manufacturer for
24  these plaintiffs, we believe refiling with simultaneous
25  provision of NDC proof should be allowed.

10:43

1          THE COURT:  Okay.  Your objection is noted for the
2     record.  The cases are dismissed.
3               McSweeny.  That is Mr. Langevin.
4          MR. LANGEVIN:  Yes, Your Honor.  David Langevin of
5     the law firm McSweeny/Langevin.
6          THE COURT:  Okay.
7          MR. INSOGNA:  Your Honor, we have not received any
8     substantive objection.  The plaintiff sent an email on April 19
9     saying they would be objecting but no reason provided.
10         THE COURT:  For the reasons stated by the PSC,
11    Mr. Langevin?
12         MR. LANGEVIN:  Well, we have five cases where we will
13    be arguing innovator liability.  That's Bess, Carter, Ojeda,
14    Hubbard-Nickens, and Rodriguez.
15         THE COURT:  Wait.  I have four.  What's the last one?
16         MR. LANGEVIN:  Rodriguez.  Gladys Rodriguez.
17         THE COURT:  I have that one.  I have Bess, Carter,
18    Hubbard-Nickens, and Rodriguez.  Am I missing someone?
19         MR. LANGEVIN:  Yes, Your Honor.  The fifth is Ojeda.
20         THE COURT:  Okay.
21         MR. LANGEVIN:  Nadia Ojeda.
22         THE COURT:  All right.  I'm going to defer that, and
23    we will handle innovator liability.
24         MR. LANGEVIN:  We have done everything we could
25    possibly do at this point with respect to finding the product

10:44

1    ID information.  So similar to some of the prior arguments, we

2    would just request that if this information comes to light at

3    some point down the line that we would be able to resurrect

4    these claims and these cases.

5             THE COURT:  Okay.  The Court is going to dismiss

6    Teresa Blackwood and Frances Gambril.  We will defer as to

7    Marian Bess, Jessie Carter, Pamela Hubbard-Nickens, Nadia

8    Ojeda, and Gladys Rodriguez.

9             MR. LANGEVIN:  Thank you, Your Honor.

10            THE COURT:  Thank you.  Zoll & Kranz.  That's

11   Ms. Wall.  Are you on the line, or Mr. Weiman?

12            MR. WEIMAN:  Good afternoon, Your Honor.  This is

13   Blake Weiman for Zoll & Kranz.

14            THE COURT:  Okay.  Thank you.

15            MR. WEIMAN:  Speaking first to Ms. Dixon's case, if

16   that's possible, we recently were granted an extension of time

17   to substitute parties until May 7.  We in the interim have not

18   had the letters of authority from the probate court to be able

19   to continue to pursue obtaining records in that case, so we

20   would ask for additional time there.

21            THE COURT:  Okay.  What about the others, any

22   substantive objections?

23            MR. WEIMAN:  Yes, Your Honor.  Also just to speak

24   quickly to Ms. Manser, that client is deceased.  We filed a

25   suggestion of death and noted that the next of kin did not wish

10:46

1    to pursue.  We had communication the defense had wished to

2    dismiss.  We said we would not oppose that.  That just has not

3    moved forwarded yet.

4              THE COURT:  Okay.  That is dismissed.

5              MR. WEIMAN:  As to the remainder of our cases, again,

6    we have exhausted our opportunities.  We are continuing to have

7    contact with some of these facilities and insurance companies

8    to attempt to track down additional records.  We have recently

9    reissued subpoenas.  We have been attempting to call them and

10   contact them.  However, at this time we have not had the

11   opportunity to have definitive patient-specific product ID in

12   the remainder of our cases, but would have ask for additional

13   time to do that or at the very least the ability, if we are

14   able to piece together that evidence, to resurrect those claims

15   in the future.

16             THE COURT:  Okay.  I'm going to dismiss Rhonda

17   Manser.  The remainder of the cases will be dismissed, as well,

18   subject to the objection.

19                  This May 7, do we just roll that case over?

20   That's Elizabeth Dickerson.

21             MR. INSOGNA:  I would just note, Your Honor, that I

22   don't know --

23             THE COURT:  I don't know what happened there.

24             MR. INSOGNA:  Well, I'm not entirely clear, but I

25   don't know why plaintiffs need letters of authority to pursue a

10:47

1    subpoena for records.  They have an active case.  It's been

2    active for years.  Plaintiff died in March 2020.  Two years

3    before, they could have pursued this subpoena.

4         THE COURT:  Has an extension been granted to them?

5    Could it have been in my other show cause?

6         MR. INSOGNA:  That's what I'm wondering.  I'm not for

7    certain.

8         THE COURT:  Well, then I'm really kind of

9    uncomfortable when I've said I've given you an extension and --

10        MR. WEIMAN:  Your Honor, this is Blake Weiman.  It

11   was from a prior show cause hearing where Ms. Dixon's case came

12   up and the extension was granted.

13        THE COURT:  Okay.  I'm going to give them until May 7

14   and then we will just take it up.  I'm uncomfortable saying I

15   have given you an extension to substitute parties and do those

16   sorts of things and then in the interim dismiss the case on

17   some other basis.  As for the remainder of the cases, those are

18   dismissed.

19        MR. LAMBERT:  Judge, just to confirm with Mr. Weiman,

20   is that Brenda Dixon --

21        THE COURT:  Yes.

22        MR. LAMBERT:  -- 17-13707?

23        THE COURT:  I think it's Brenda Dickerson.

24        MR. WEIMAN:  Yes.

25        MS. CALLSEN:  It's Dickerson, the first case.

10:49

1      THE COURT:  16-16776.

2      MS. CALLSEN:  Number 33.

3      THE LAW CLERK:  It's Brenda Dixon.

4      THE COURT:  Oh, it's Brenda Dixon?

5      MR. WEIMAN:  Brenda Dixon, that's correct.

6      THE COURT:  Okay.  Well, then I was in error.

7           Do you have that, Sherry?

8      THE DEPUTY CLERK:  Yes, ma'am.

9      THE COURT:  Okay.  Thank you.  Cases 40 through 49,

10  Mr. Niemeyer.

11      MR. NIEMEYER:  Good morning, Your Honor.

12      THE COURT:  Good morning.

13      MS. CALLSEN:  Your Honor, this is a firm that never

14  responded by the 3/15/22 deadline to communicate efforts made

15  to obtain product ID in any of these cases.

16      THE COURT:  Okay.  Mr. Niemeyer.

17      MR. NIEMEYER:  Good morning again, Your Honor.  What

18  I would like to do, if I could, Your Honor, is first echo and

19  incorporate the objections made by Mr. Lambert.  We do have 10

20  plaintiffs on the docket today and for them I would like to

21  lodge a further general objection.

22           The Court asked here, "What am I to do?"

23  Certainly the Court has wrestled with this issue, and we

24  appreciate that.  What we point out on behalf of our plaintiffs

25  is one of the benefits of an MDL to a defendant or defendants

10:50

1    is that they don't have to face individual discovery requests

2    and depositions by each of thousands of plaintiffs.  In

3    exchange for that benefit, we ask that they not be able to use

4    that as a sword, Judge, and take advantage of that to dismiss

5    cases and forever bar those claims.

6                    It's our position that if given the chance, each

7    of these individual plaintiffs would be able to determine from

8    these defendants what distributors were used, the time frames

9    they were used, whether there were direct supply agreements.

10   By process of elimination and piecing together those discovery

11   responses and the information from the facilities, many of

12   these plaintiffs might be able to piece together manufacturer

13   identification.  Given that we are in an MDL setting and the

14   Court asks, "What am I to do?" we would ask this Court consider

15   and reconsider alternatives to dismissal, whether that's --

16              THE COURT:  Mr. Niemeyer, hasn't that been ferreted

17   out in CMO 12?  You know, we are just now restructuring the MDL

18   because it's become problematic for some of these plaintiffs.

19              MS. CALLSEN:  Your Honor, can I just respond?

20              MR. NIEMEYER:  Certainly, Judge --

21              THE COURT:  Wait.  This is what's hard about

22   telephone --

23              MS. CALLSEN:  I know.  I'm sorry.

24              THE COURT:  Mr. Niemeyer, I asked a question.  It

25   seems to me that this was something that was negotiated years

10:52

1    ago -- and I know that your plaintiff hasn't had to sit for a

2    deposition, she hasn't had to do things, but there are certain

3    minimum requirements, which is you have to name your defendant.

4            MR. NIEMEYER:  Sure, Judge.  My point would be we are

5    allowed to engage in discovery to determine that defendant,

6    especially in the MDL setting.  While, yes, certainly this

7    Court has worked with plaintiffs' leadership to develop some of

8    these processes, the Court has not asked the defendant or put

9    any onus on the defendant -- and, again, normally that wouldn't

10   be there, but we are in an MDL setting -- to identify these

11   distributors, these chains of distribution, and direct the

12   defendant to sit for manufacturer ID specific discovery so that

13   these plaintiffs could sit down and ask them the questions to

14   identify the distributors in these supply chains.

15           THE COURT:  Did anybody ask to do that?  Did anybody

16   ask?

17           MS. CALLSEN:  Your Honor, we did.  All the defendants

18   provided names of our distributors early on, before we even

19   entered CMO 12A, so she's been out there.  We have worked with

20   plaintiffs' leadership on developing subpoenas to the

21   distributors as well, which have been put in place.  So all the

22   efforts that Mr. Niemeyer is outlining have already been taken.

23   We have produced our records, and our records do show our

24   distributors.  We have also responded to defendant fact sheets

25   and so that's our discovery.  So all the efforts that he has

10:53

1    just outlined have already been undertaken and yet we still

2    have plaintiffs with no product ID.

3            **MR. NIEMEYER:** We would simply disagree. Certainly

4    there have been efforts, but each of these individual

5    plaintiffs have not been able to sit across the table and ask

6    the questions of the defendants to try to establish in their

7    case these specifics.

8                So here we are where the judge is about to enter

9    the fatal blow, right, dismissal with prejudice -- and that

10   obviously forever bars these plaintiffs' claims -- when

11   alternatively the Court could create a limited discovery pool

12   of these plaintiffs to engage in limited discovery or, frankly,

13   let these plaintiffs continue on in this litigation with no

14   harm to the defendants, right, and avoid the ultimate harm to

15   them. This may be an instance where, if allowed to continue on

16   the docket, this could be dealt with at the resolution phase.

17   There are a number of creative ways to deal with that.

18                My point is simply that it's an extreme measure

19   for these folks who, Mr. Lambert pointed out, through no fault

20   of their own -- they have complied with everything along the

21   way, including CMO 12A, but of course fact sheets -- they have

22   taken docetaxel, shown proof of injury, and yet their case is

23   dismissed. That's where in the MDL setting, my point is, it's

24   not necessary to have this drastic of a sanction. That's my

25   general objection laid out and I hope --

10:55

 1          THE COURT:  Mr. Niemeyer, your objection, I have
 2   listened to it and appreciate your concerns, but in a lawsuit
 3   there has to be a named defendant.  I understand it's through
 4   no fault of their own, but there are occasions where people are
 5   injured through no fault of their own and the person
 6   responsible has avoided detection.
 7              Unfortunately, there has to be a person that is
 8   named.  I think for us to restructure the MDL at this late
 9   stage and decide we are going to throw out CMO 12 and start
10   again is prejudicial to the defendants.  I understand the
11   significance of this ruling, but subject to the objection, the
12   Court is going to dismiss these cases.  Thank you.
13          MR. NIEMEYER:  I'm sorry, Your Honor.  Your Honor,
14   that was my general objection.  I do have specifics on some
15   issues.
16          THE COURT:  Oh, okay.  Mr. Niemeyer, I was just
17   hoping.
18          MS. CALLSEN:  Your Honor --
19          MR. NIEMEYER:  I understand.  I understand.  I can
20   run quickly through the list, then, if I could, Your Honor.
21          THE COURT:  Please.
22          MR. NIEMEYER:  I'll take it a little bit out of
23   order, if I could.
24          THE COURT:  Okay.
25          MR. NIEMEYER:  Elizabeth Murphy, your line 44, we did

10:57

1   submit -- and admittedly we did this yesterday, but we do have,

2   for one of her doses, a Sanofi NDC code that we submitted under

3   the CMO 12 tab.  We have lot numbers that also indicate Sanofi

4   for the last treatment.

5            **THE COURT:**  Okay.

6            **MR. NIEMEYER:**  We would ask that she be permitted to

7   survive on those grounds.

8            **THE COURT:**  We are going to roll that over to the

9   next hearing and see if that survives.  Okay.  Please proceed.

10           **MR. NIEMEYER:**  Thank you, Judge.  The next specific

11   ones, these are all innovator theory.  There's three of them.

12   The first one is Deborah Haywood, line 41.  The next one is

13   Beverly Kuipers, line 42.  The third one is Sylvia Oliva, and

14   she is your line 45.

15           **THE COURT:**  Okay.  Those are going to be deferred,

16   and I'm going to order briefing on all innovator theory.  Thank

17   you.  Any more?

18           **MR. NIEMEYER:**  Thank you, Judge.  Finally, there are

19   two more -- I'm sorry, just one more where we were able to

20   narrow, based upon distributor evidence and DFSs, down to

21   Accord and Hospira.  I'm sorry.  That's Glenda Hatchett, I

22   should identify, 40.  Based upon DFSs and distributor data, we

23   have narrowed down to Accord or Hospira.  I understand we don't

24   have evidence beyond that.  We would ask that because of that,

25   she be allowed to continue in the hopes that further discovery

10:58

1    could identify which one or both of them as her supplier.

2            MS. CALLSEN:  Your Honor, this is similar to what we

3    discussed earlier, distributor.  All it does is show that we

4    may have distributed to that facility, and there could be other

5    suppliers of docetaxel.  I think this is very similar to the

6    one we discussed earlier, at the beginning of this litigation,

7    that was dismissed.

8            THE COURT:  I think that was dismissed without

9    prejudice.

10           MS. CALLSEN:  That was the one we discussed at

11   length.

12           THE COURT:  I'm going to dismiss this without

13   prejudice.  If you are able to --

14           MR. NIEMEYER:  Thank you, Judge.  That's it except

15   for one final plea that for those that remain, we would ask

16   that the dismissal be without prejudice instead of with

17   prejudice for all the reasons I have described.  Thank you.

18           MS. CALLSEN:  Obviously, we object to a without

19   prejudice --

20           THE COURT:  I think that's worked out in CMO 12.  It

21   was in CMO 12 that they would be dismissed with prejudice.

22           MS. CALLSEN:  Right.

23           THE COURT:  Let's proceed.  Marc Bern, that's

24   Ms. Dessel.

25           MS. CALLSEN:  Yes.  Your Honor, again, the bottom

10:59

1   line is they have produced documentation of efforts that they

2   have taken, but none of the efforts have resulted in any

3   product ID, so we don't have any.  They are all unknowns to

4   this date.

5          **THE COURT:**  All right.  Ms. Dessel, are you on the

6   line?  Star six.

7          **MS. DESSEL:**  Hi.  Yes.  Good morning.  Sorry.  I was

8   speaking unmuted.  Denise Dessel here with Marc J. Bern.

9          We have just a general objection for all.  We

10   have roughly 23 cases on the docket today.  The general

11   objection is, in accordance with CMO 12A, we have gone through

12   all efforts.  We have subpoenaed these user pharmacies and we

13   have also let defendants know of our efforts, as they have

14   informed you.

15          There are two, if I may -- if I can section off

16   the 23 plaintiffs into two specific groups, there is a group of

17   plaintiffs -- and I can go through them -- that we have

18   subpoenaed the infusion pharmacies, and we have heard back with

19   unfortunately no product ID and no different facility that we

20   can then subpoena.  However, we have complied with CMO 12A.  We

21   have emailed the defense.  We have kept them in the loop,

22   essentially, of our efforts.  So if I may, this group is -- and

23   I'm going to go a little bit out of order -- your line 61, Gail

24   Glass Hill --

25          **THE COURT:**  Wait.  I'm confused.

11:01

1        **MS. CALLSEN:**  Okay.  Good.  I am too.

2        **THE COURT:**  You have two groups, one that you issued

3    subpoenas that didn't get product ID --

4        **MS. DESSEL:**  Yes.  And then the other group is just

5    we issued subpoenas and haven't heard back.  So for that

6    specific group, I would be requesting just more time and then

7    for it to be rolled over to the next conference, with the hope

8    that we get a response to this subpoena and we can move on from

9    there.

10        **THE COURT:**  Who is in group two that you have not

11    received a response from?  Because I'm looking at 2018, so for

12    four years?

13        **MS. DESSEL:**  Well, the thing is we have recently

14    subpoenaed some of these infusion pharmacies that we still have

15    not received --

16        **THE COURT:**  Who are you talking about?  Give me the

17    names of who you are talking about.

18        **MS. DESSEL:**  Okay.  Perfect.  Line 50, Beverly Allis;

19    line 53, Linda Bieksza; line 55, Francesca Cozza; line 56,

20    Patricia K. Dennis; line 57, Patricia A. Dukes; line 58,

21    Deena Jeanette Frazier; line 59, Victoria Gibb; line 60,

22    Patricia Green --

23        **THE COURT:**  So basically your whole inventory?

24        **MS. CALLSEN:**  Your Honor, can I just address the

25    first one that she mentioned, Beverly Allis?  On that

11:03

1   particular one, again, defendants have looked at MDL

2   Centrality.  The subpoena issued came back and said, "We don't

3   have it.  We don't have it."  They said during that time in

4   question they don't have anything.  So merely issuing a

5   subpoena to receive the same request is just bugging the

6   facility without producing any results.  I mean, this could go

7   on forever.  None of this --

8         THE COURT:  All right.  We were at Patricia Green,

9   line 60.

10        MS. DESSEL:  Okay.  Line 67, Mary A. Meredith;

11  line 66, Mary Massino; line 70, Terry Robinson; line 72, Shari

12  Smith; line 68, Loretta Molt.  That's approximately 11 out of

13  the 23.

14        THE COURT:  Have you received information from these

15  facilities prior to the subpoena that indicated they didn't

16  have the information?

17        MS. DESSEL:  We received medical records, we received

18  some billing records from some, but nothing indicating that

19  they do not have this information, just the information we have

20  received does not have product ID.

21        MS. CALLSEN:  Again, I just say a lot of the

22  subpoenas have previously been issued and come back empty.

23        THE COURT:  Okay.  Wait.  Subpoenas have been issued

24  that came back empty?

25        MS. CALLSEN:  Correct.

11:05

1    THE COURT:  Is that so, Ms. Dessel?  Are these second

2  subpoenas going to facilities?

3    MS. DESSEL:  I mean, to my knowledge they are the

4  first subpoenas that we have sent in that specific group that

5  we have not heard back after receiving medical and billing

6  records.

7    THE COURT:  Are you telling me there was another

8  subpoena?

9    MS. CALLSEN:  I have some notations that there were

10  subpoenas issued and responses received back in 2020 and 2021.

11  I guess I could go through each one of them.  Your Honor, they

12  did outline their efforts, and a lot of their efforts included

13  subpoenas.  The subpoenas came back with no product ID.  Again,

14  these have been pending for a long time.

15    THE COURT:  No, I understand your frustration, but

16  here I am.

17    MS. CALLSEN:  I know.

18    THE COURT:  I'm trying to piece together this as

19  well.  I guess I could pull up MDL Centrality or we could --

20  this is what I'm going to do.

21    MS. DESSEL:  Your Honor, for those cases we are just

22  asking for it to be pushed --

23    THE COURT:  I know.  I know, but it's half of the

24  inventory.  I'm going to push it off to the next one.  The next

25  one, if you say, "We still haven't heard back," I'm going to

11:06

1    say, "I'm sorry.  There's been sufficient time to get product

2    ID and this is it."  I want the record to be --

3              MS. DESSEL:  I understand that, Your Honor.

4              THE COURT:  No, I want the record to be very clear so

5    that if at a later date when the Fifth Circuit or some other

6    court looks at this, they understand that I am telling you

7    there will be no further extension because these cases have

8    been pending since 2018.  So that's four years, but that's it.

9              The remainder of the cases are dismissed with

10   prejudice pursuant to CMO 12A.  These that you have identified,

11   these 11, I'm rolling over to the next time.

12             MS. DESSEL:  I appreciate that, Your Honor.  Thank

13   you very much.  Do you want me to go over the names of the next

14   ones that have been dismissed or --

15             THE COURT:  Well, the next ones that are dismissed, I

16   can do it real quick.

17             MS. DESSEL:  Okay.

18             THE COURT:  Aisha Asghar; Alisha Beerman; Brenda

19   Chidester; Gail Glass Hill; Leslie Hollinquest; Virginia

20   Hornibrook; Karen Levine; Maxine Mahlstadt; Katrina Reynolds;

21   Annette Rocha; Kimelia Wooten.

22             Okay.  Thank you.

23             MS. DESSEL:  Thank you, Your Honor.

24             THE COURT:  We are with Pendley Baudin & Coffin.  We

25   have on the phone Ms. Barient.

11:08

1          MS. BARIENT:  Yes, Your Honor, I'm here.  Good

2   morning.

3          THE COURT:  Good morning.

4          MS. BARIENT:  I do have a few plaintiffs that I have

5   specific objections to and then I have some general objections

6   that would be applicable to everyone.  I have three

7   plaintiffs --

8          THE COURT:  Okay.  Why don't you make your general

9   objections first that will apply to everyone and then we will

10   make the specific objections.

11          MS. BARIENT:  Okay, Your Honor.  As far as the

12   objections that would apply to everyone, we issued subpoenas

13   and additional requests for documents.  The subpoenas were

14   issued to the facilities, and our additional round of requests

15   were issued to every insurance company for all of these

16   plaintiffs.  We have received some affidavits back saying that,

17   you know, "We have done an exhaustive search.  There's nothing

18   else to look for," but there's no plaintiff on this list that I

19   have received such a certification from both the facility and

20   the insurance company.

21          So for every one, at least of our clients, we do

22   have some outstanding requests that I believe are worthwhile to

23   pursue.  For that reason I would request that we be given the

24   opportunity to continue to pursue that just until we reach the

25   end of the road and the insurance companies tell us, "Look, we

11:10

1    don't have the documents," or we get a similar certification
2    from the facility.
3              THE COURT:  Okay.  Then your specific objections.
4              MS. BARIENT:  Yes.  I do have three plaintiffs on my
5    list that I believe have a valid innovator liability argument.
6    Those would be Phyllis Ashworth --
7              THE COURT:  Which is --
8              MS. BARIENT:  -- Sonia Barnes --
9              THE COURT:  -- line 74.  Wait.  Hold on.  Sonia
10   Barnes --
11             MS. BARIENT:  That would be line 74, Phyllis
12   Ashworth; line 75, Sonia Barnes; and line 86, Sha-Ron Hewitt.
13             THE COURT:  Okay. I'm going to defer.  Is that it?
14             MS. BARIENT:  Then I have two more specific arguments
15   for Brandy Garver, who is line 84.  We were actually able to
16   obtain product ID via one of our subpoenas, and I believe that
17   was uploaded to Centrality last week.
18             THE COURT:  Okay.
19             MS. BARIENT:  Then my final specific argument is
20   going to be for Angela Hunter.  She is line 87.  My records
21   show that at some point in time we have uploaded purchase
22   history from the facility.  I am unable to find that document
23   in Centrality, but I do believe that we have submitted that.
24             THE COURT:  Well, I would resubmit if you didn't.
25             MS. CALLSEN:  Our records show that there's been no

11:11   1   activity.

2        THE COURT:  Yes.  If you couldn't find it on there, I

3   would think that it would behoove you to do it again.

4              All right.  This is what I'm going to do.  I'm

5   going to defer ruling on Phyllis Ashworth, Sonia Barnes, and

6   Sha-Ron Hewitt.  I'm going to order briefing on innovator

7   liability as to Brandy Garver and Angela Hunter.  The Court is

8   going to roll those over until our next show cause date.  The

9   remainder of the cases are going to be dismissed with prejudice

10   pursuant to CMO 12A, subject to the objection.

11        MR. INSOGNA:  Your Honor, on Ms. Garver, counsel said

12   that they just obtained product ID.  There was a document

13   uploaded to Centrality a few days ago that is password

14   protected and the password will not open the document.  We just

15   may need that one resubmitted because the prior subpoena

16   response said no records could be found.  I just wanted counsel

17   to know that we need that document in a way that we can open it

18   and see what it is.

19        THE COURT:  Did you hear that, Ms. Barient?

20        MS. BARIENT:  Sure.

21        THE COURT:  Okay.

22        MS. BARIENT:  Yes, I did.  We can absolutely assist

23   with that.

24        THE COURT:  That sounds fine.  I think the final law

25   firm is Bachus & Schanker and that's Ms. Sulkin.

11:13

1          **MS. SULKIN:**  Yes, Your Honor.

2          **MR. INSOGNA:**  Your Honor, we have a mixed set of

3    responses -- some responses, some none -- where we are not

4    clear what the objection is.  I just want to note for the

5    record that in many of these cases -- and I don't want to get

6    into them individually -- the Bachus & Schanker firm served a

7    letter, back when we sent an early notice, saying that they had

8    undertaken good faith and diligent efforts to obtain product ID

9    and didn't have them.  I think in most of these cases they have

10   signaled that they have exhausted their efforts.

11         **THE COURT:**  Thank you.  Ms. Sulkin.

12         **MS. SULKIN:**  Yes, Your Honor.  I do apologize.  Like

13   I said, I am in kind of a remote location.  My internet is not

14   the best right now and Mr. Elliott, who is supposed to be

15   handling this hearing, came down with a pretty severe illness.

16   I'm trying to dispense with our arguments as quickly as

17   possible, but my internet is lagging and I'm having some

18   difficulty pulling some things up.

19              We have a mixed bag of situations.  Certainly

20   some of them are innovator liability states -- Illinois,

21   California, or Massachusetts -- and then we also did recently

22   upload product ID for one of them.  I want to run through those

23   before we go to the remaining cases, if that's all right with

24   you, once I can get my internet back.  It just lagged.  Again,

25   I apologize for that.

11:14

1    THE COURT:  Okay.

2    MS. SULKIN:  If you can just give me one moment.

3    MR. LAMBERT:  Your Honor, it may not have come

4  through clearly on the phone, but Ms. Sulkin and some of the

5  Bachus & Schanker folks that work on this case have been in

6  trial for two weeks and so I think she is struggling --

7    THE COURT:  Can we just take a quick break?

8    When are you-all coming back?

9    MS. CALLSEN:  We will be back here next week.

10  Tuesday.

11    THE COURT:  My question is:  Are you going to be

12  available maybe late Monday?  Monday I'm doing Taxotere eye

13  injury and then Tuesday I'm doing Taxotere hair.  I'm wondering

14  if we can maybe get with her Monday so that we are not really

15  frustrated right now.

16    MS. CALLSEN:  I'll be here Monday, so it's fine with

17  me, Your Honor.

18    THE COURT:  Why don't we do it at 11:00 on Monday,

19  just take up Bachus & Schanker.

20    Is that okay with you, Ms. Sulkin?

21    MS. SULKIN:  That is.  Thank you, Your Honor, for

22  being so understanding.  Again, I do apologize.

23    THE COURT:  Why don't we do this Monday at 11:00.  We

24  will take up just Bachus & Schanker, CMO 12A, and we will deal

25  with it from there.

11:16

1          **MS. CALLSEN:**  Your Honor, I'm sorry, can we do it
2    after?  I don't know that I'm going to be here by 11:00.
3          **THE COURT:**  We can do it after.  I have the status
4    conference for the eye.  I don't think it's going to be all
5    afternoon.  We can do it maybe later Monday.
6          **MS. CALLSEN:**  Yes, if we could do it afterwards,
7    because these should not take very long.
8          **THE COURT:**  No, no.  If we can get them divided up,
9    which is why I wanted to go by law firm, "These are my
10   objections," "These are my objections.  This is my overall
11   objection to everybody," we can do it that way.
12         **MS. CALLSEN:**  Yes, because I will definitely be here
13   for the eye, so if we can do it afterwards, that would be --
14         **THE COURT:**  You are going to be here for the eye?
15         **MS. CALLSEN:**  I will be here, correct, so afterwards
16   will be better.
17         **THE COURT:**  Okay.  That will be fine.
18         **MR. INSOGNA:**  Can I appear remotely for that one,
19   Your Honor?  I cannot be here on Monday.
20         **THE COURT:**  Yes.  Do you really all need to be here
21   for this portion?  You're welcome to appear remotely, but it
22   seems that what we have is we just need somebody to say, "There
23   are none of us."
24         **MR. INSOGNA:**  Understood.  Absolutely.
25         **THE COURT:**  You are welcome to listen in.  Thank you.

11:17

1    The new time is going to be 3:00.  We are going

2  to do this Monday at 3:00 p.m.

3    Ms. Sulkin, you may get a text from somebody.

4  I'm sure Mr. Lambert has your text number.  Somebody will be

5  able to tell you when the time is, but let's set it tentatively

6  for 3:00 p.m.

7    **MS. SULKIN:**  Thank you, Your Honor.

8    **THE COURT:**  I need to talk to you all.

9    (Proceedings adjourned.)

10    * * *

11    **CERTIFICATE**

12    I, Toni Doyle Tusa, CCR, FCRR, Official Court

13  Reporter for the United States District Court, Eastern District

14  of Louisiana, certify that the foregoing is a true and correct

15  transcript, to the best of my ability and understanding, from

16  the record of proceedings in the above-entitled matter.

17

18

19                                    */s/ Toni Doyle Tusa*
                                     Toni Doyle Tusa, CCR, FCRR
20                                   Official Court Reporter

21

22

23

24

25