UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO Barbara Earnest, Case No. 2:16-cv-17144 | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**STATEMENT OF UNDISPUTED FACTS**

Plaintiffs contend that it is improper to rely solely on trial testimony in support of a Fed.R.Civ.P.56 motion, as an unqualified reversal puts the parties in the same position as if no trial had occurred, and therefore the trial testimony should be given no different consideration than other sworn deposition testimony. Nonetheless, the trial testimony evidence disputes as to material facts, and Plaintiffs make citations to the trial testimony in order to reflect Defendants' pervasive misstatements of the record. In their own Statement of Facts, Plaintiffs rely on pre-trial evidence, as is proper under the rules.

    **A.  Ms. Earnest's Diagnosis**

1.    Admitted.

2.    Admitted that Ms. Earnest was diagnosed with early-stage breast cancer with various medical characteristics, including, among other things, the hormone receptor status that Sanofi identifies.

3. Disputed as written. Misstates the record. After her diagnosis, Ms. Earnest met Dr. Lagarde and her primary care physician to discuss surgery and undergo a lumpectomy.[1] Ms. Earnest only met with Dr. Carinder after she had completed other forms of treatment.[2]

### B. Dr. Carinder's Knowledge of the Risk (or Lack Thereof)

4. Disputed. Misstates the record. Dr. Carinder testified that he kept up-to-date on label modifications.[3]

5. Disputed outright and as written. First, Defendants fail to differentiate between the injury at issue – permanent hair loss or PCIA – and what is known as temporary, reversible hair loss. Dr. Carinder testified that there is a difference between a permanent and temporary condition, including alopecia. Dr. Carinder testified that he was not aware that Taxotere or other chemotherapy agents carried a risk of permanent hair loss.[4]

6. Disputed. Defendant has not cited to any portion of the transcript supportive of this statement. Moreover, it is unclear what this statement relates to. For example, this asserted fact could mean that Dr. Carinder was aware that in the universe, unrelated to docetaxel, there were multiple reports of male pattern baldness, which would constitute "permanent alopecia." Moreover, the questioning does not make it clear whether Dr. Carinder knew or considered this article before prescribing Taxotere, in a different regimen, to Ms. Earnest. Further, anecdotal reports are insufficient to apprise a physician of warnings, and physicians are limited to providing warnings about risks as they are provided by the manufacturer in the warning label. As Dr. Kessler

---

[1] Ex. 11, Trial Transcript at 1729:5-1730:8.
[2] *Id*. at 1731:25-1732:15.
[3] *Id*. at 1411:18-1412:7; 1421:21-1422:9.
[4] *Id*. at 1394:14-16; 1394:20-1395:6; 1397:7-9.

stated in the first trial, "anything doctors and patients need to make a decision should be in the label."[5]

7. Disputed as written. Misstatement of the record. There was no direct testimony that Dr. Carinder read the *Nabholtz* article prior to his treatment of Ms. Earnest. Dr. Carinder acknowledged that the *Nabholtz* article was published in 2001, but Defendants did not establish that Dr. Carinder reviewed this article prior to treating Ms. Earnest.[6]

8. Admitted; however, Dr. Carinder also admitted the regimen in *Nabholtz* "would never be a regimen I would use with somebody with [non-]metastatic (sic) disease" because "[i]t's too harsh."[7]

9. Admitted as to the 2005 patient receiving the same regimen that was prescribed to Ms. Earnest in 2011. Denied as written as to Dr. Carinder observing permanent hair loss in his patient in 2005. Dr. Carinder's patient in 2005 had hair loss prior to starting her chemotherapy regimen and it grew back in a similar, thin fashion after chemotherapy.[8]

10. Disputed as written. Dr. Carinder testified that his 2005 patient had experienced hair loss prior to starting chemotherapy and described the similar regrowth as "idiosyncratic."[9]

11. Disputed.[10] Dr. Carinder testified that when he spoke with Ms. Earnest prior to her chemotherapy that he did not tell her about his 2005 patient.[11]

---

[5] *Id*. at 307:2-308:25.
[6] Defendants established that the article was published in 2001 and in his 2019 trial testimony- eight years after treating Ms. Earnest, Dr. Carinder stated he had read the article "years ago." *Id*. at 1555:13-19; 1556:5-7.
[7] *Id*. at 1556:16-1557:7.
[8] *Id*. at 1419:17-19; 1420:16-24.
[9] *Id.* at 1421:4-5.
[10] *Id*. at 1420:22-25; 1535:2-6.
[11] *Id*. at 1420:22-25.

### C. Dr. Carinder's Prescribing Decision for Ms. Earnest

12. Disputed. Dr. Carinder testified that his goal is to afford the patient with the most effective treatment with as little adverse side effect as we can get away with.[12]

13. Disputed. Dr. Carinder testified that "At the time that Mrs. Earnest was treated… you have two taxanes that you're – basically two taxanes you could use. You had paclitaxel or docetaxel. At that time, I used docetaxel more because you had less risk of infusion reactions, and you had less neuropathy. And the efficacy was very similar."[13]

14. Disputed as written. Misstatement of the record. First, it is irrelevant for purposes of summary judgment whether at the time of Ms. Earnest's treatment Dr. Carinder did not suggest any alternative chemotherapy regimens, as Dr. Carinder would have considered other regimens.[14]

15. Admitted.

16. Disputed. No citation to support this statement. Dr. Carinder testified that if Taxotere included a warning about permanent hair loss in 2011, he would have informed Ms. Earnest and that if Ms. Earnest was concerned about permanent hair loss, there were multiple other regimens he would have prescribed.[15]

17. Disputed as written. Misstatement of the record. Irrelevant for purposes of summary judgment. Taxotere also includes the side effect of neuropathy.[16]

---

[12] *Id*. at 1515:20-23.
[13] Ex. 12, Carinder Dep. 25:21-26:8 (emphasis added).
[14] Ex. 11, Trial Transcript at 1439:24-1494:3; 1494:16-20; 1497:10-14.
[15] *Id*.; *see also id*. at 1394:17-25; 1397:4-7.
[16] *Id*. at 1496:21-22.

18. Admitted that Dr. Carinder testified that way; however, chemotherapy in general only adds a small increased survival rate as compared to other interventions.[17]

19. Disputed as written and a misstatement of the records. Defendant's statement attempts to blur the lines between whether Dr. Carinder would stop prescribing Taxotere as a whole and whether he would have prescribed Taxotere to Ms. Earnest. Dr. Carinder testified that had Defendants warned of permanent hair loss, his prescription for Ms. Earnest would have changed because she would have wanted to avoid permanent hair loss.[18]

20. Disputed as written. Misstatement of the record. When read as a whole, the testimony cited by Defendants reflects that Dr. Carinder stands by his decision that was made on March 31, 2011, based on what he knew at the time.[19]

### D. Ms. Earnest's Acceptance of Dr. Carinder's Prescribing Decision

21. Disputed as to any discussion of "abnormal" hair regrowth. Admitted as to Dr. Carinder discussing the risk of temporary alopecia with Ms. Earnest. Plaintiff testified that Dr. Carinder explained her hair "would grow back in a different way or the same" and gave the example that Ms. Earnest's hair may come back curly.[20] In fact, the word abnormal does not appear in Ms. Earnest's testimony at all.

22. Disputed and a misstatement of the record. Defendants did not disclose that Taxotere caused permanent hair loss, or what Defendants refer to as "abnormal hair growth," so there was

---

[17] *Id*. at 1271:17-23 (Plaintiff's expert oncologist Dr. Linda Bosserman testified that "[m]ost people with early-stage IIA disease are cured by surgery and/or radiation."); 1275:1-12 (Dr. Bosserman further testified that there were 13 different chemotherapy regimen options, proven effective, that a patient could choose and expect a survival rate of between 95 and 98 percent in 2011, i.e., chemotherapies varied in efficacy only by 3% or less); 2047:13-17 (Defendants' oncologist testified "the mainstay of treatment of the local tumor is surgery").
[18] *Id*. at 1394:17-25; 1397:4-7; 1493:24-1494:3; 1494:16-20; 1497:10-14.
[19] *Id*. at 1612:2-17.
[20] *Id*. at 1733:9-15.

5

no reason for Dr. Carinder to discuss that risk with Ms. Earnest or Ms. Earnest to inquire about it.[21] Defendants also fail to distinguish permanent hair loss from temporary hair loss. Temporary hair loss is unavoidable with chemotherapy, but Defendants represented that Ms. Earnest's hair would grow back.[22] Ms. Earnest does not have a duty to disprove Defendants' label.

23. Admitted only to the extent that Dr. Carinder offered one option because he was not aware of the risk of permanent alopecia that Taxotere carried. Dr. Carinder testified that had Defendants warned of permanent hair loss, his prescription for Ms. Earnest would have changed because she would have wanted to avoid permanent hair loss.[23]

24. Disputed as written. Misstates the record. Defendants do not differentiate between permanent and temporary hair loss with this fact. Dr. Carinder did discuss side effects he was aware of with Ms. Earnest, including temporary hair loss.[24] Dr. Carinder did not know Taxotere carried a risk of permanent hair loss and it was neither his duty nor Ms. Earnest's duty to disprove the information Defendants provided them with.

25. Disputed. If Dr. Carinder would have told Ms. Earnest about the risk of permanent hair loss, she would have asked for another regimen and would have taken that regimen.[25]

26. Disputed as written. Misstatement of the record. Ms. Earnest consented to treatment with Taxotere because she nor Dr. Carinder knew that Taxotere caused permanent hair loss because Defendants failed to warn Dr. Carinder.[26]

---

[21] *Id.* at 1394:14-16; 1395:1-6.
[22] *Id.* at 1426:2-11; 1430:12-14; 1431:18-1432:1; 1469:2-10.
[23] *Id.* at 1394:17-25; 1397:4-7; 1439:24-1494:3; 1494:16-20; 1497:10-14.
[24] *Id.* at 1771:15-19, 1772:5-10.
[25] *Id.* at 1734:11-17.
[26] *Id.* at 1394:17-25; 1397:4-7; 1439:24-1494:3; 1494:16-20; 1497:10-14.

### E. Ms. Earnest's Treatment with Taxotere

27. Admitted that chemotherapy treatment began on June 22, 2011. Taxotere was only part of her chemotherapy regimen, which was only part of her overall cancer treatment plan.

28. Admitted.

29. Admitted.

30. Disputed. Dr. Carinder did not know that Taxotere could cause permanent hair loss and did not tell Ms. Earnest about his 2005 patient that had thin hair prior to chemotherapy that regrew in a similar manner after chemotherapy.[27]

31. Disputed. Dr. Carinder did not warn Ms. Earnest of the risk of permanent hair loss.[28]

32. Admitted.

33. Admitted. At that time, Ms. Earnest asked Dr. Carinder about her hair condition and recalls him telling her "Honey, it's going to grow. It takes time."[29]

34. Denied as incomplete. Ms. Earnest also agreed that her hair grew back a little bit after chemotherapy, but that it never completely grew back and fell out again.[30] In her deposition, Ms. Earnest testified that her hair began to grow back on the sides of her head approximately six months after her last chemotherapy treatment.[31] However, the hair on the top of her head never

---

[27] *Id*. at 1395:1-6; 1419:17-19; 1420:22-1421:5.
[28] *Id*. at 1395:1-4; 1733:9-17.
[29] *Id*. at 1735:17-23.
[30] *Id*. at 1736:5-16.
[31] Ex. 13, Earnest 2017 Dep. at 232:19-234:8.

7

grew back, and Ms. Earnest now suffers from hair loss and hair thinning on top of her head.[32] Additionally, Ms. Earnest's eyelashes and eyebrows have not grown back.[33]

35. Denied as written. Ms. Earnest testified that "in early April [2012] I asked him about my hair."[34]

36. Denied as written. Ms. Earnest testified that she recalls "all he [Carinder] said, 'Honey, it's going to grow. It takes time.' So that's what I kept doing. I kept waiting."[35]

37. Admitted only insofar as the testimony speaks for itself and calls for credibility determinations and a jury's weight to be given to the conflicting testimony between Dr. Carinder and Ms. Earnest.

38. Denied as written. Dr. Carinder agreed that her hair falling out was caused by chemotherapy. [36]

39. Admitted only insofar as the testimony speaks for itself and calls for credibility determinations and a jury's weight to be given to the conflicting testimony.[37] Further, the cited pages only confirms that none of Ms. Earnest's doctors at any point told her that they know the cause of her hair condition; however, later testimony confirmed she saw Dr. Tosti in 2018 who diagnosed PCIA.[38]

---

[32] *Id*.
[33] *Id*. at 228:10-17.
[34] Ex. 11, Trial Transcript at 1735:17-23.
[35] *Id*.
[36] *Id*. at 1588:6-13.
[37] *Id*. at 1864:7-12 ("Thought hair was coming back and other medicine causing hair loss.").
[38] *Id*. at 1864:21-1865:9

40. Admitted that Ms. Earnest "kept waiting" due to her reliance on Dr. Carinder's statement that her hair would grow back and that "it takes time."[39] In her deposition, Ms. Earnest testified she believed that her hair would eventually return.[40] It was not known to Ms. Earnest that her hair loss was permanent, much less why her hair had not returned, until her brother told her about an advertisement that he had seen linking Taxotere with permanent hair loss in approximately 2016.[41] Ms. Earnest testified that she believed she had temporary hair loss as a result of the entire chemotherapy regime because temporary hair loss was a side effect of each chemotherapy agent.[42]

41. Denied with regard to "as expected," as Ms. Earnest always believed her hair loss was temporary or reversible. See response to #40.

42. Denied as written, given no timeframe. Also, see responses to #39-41.

43. Admitted, and Dr. Tosti testified it is her opinion that medication would not resolve her need for a turban, or hair covering.[43]

44. Denied, see response to #43.

45. Admitted.

**F. Alternative Chemotherapies Associated with Cases of Permanent or Persistent Hair Loss**

46. Denied. Dr. Plunkett agreed on cross examination that there are isolated case reports of permanent hair loss associated with the other drugs identified in Defendants' statement of facts.

---

[39] *Id.* at 1735:17-23.
[40] Ex. 13, Earnest 2017 Dep. at 65:15-66:11, 79:20-80:9, 195:24-196:6.
[41] *Id.* at 23:7-18, 71:10-23.
[42] *Id.* at 82:25-84:1, 91:16-92:25.
[43] Ex. 11, Trial Transcript at 1109:13-1110:4.

Dr. Plunkett agreed she would not base an opinion about increased risk of permanent hair loss on case reports alone.[44] Dr. Feigal testified that case reports are not the same level of causation evidence as evidence from a randomized clinical trial.[45]

47. Admitted only insofar as the cited testimony speaks for itself and calls for credibility determinations and a jury's weight to be given to the conclusions. Dr. Feigal testified that case reports are not the same level of causation evidence as evidence from a randomized clinical trial.[46] After *Daubert* challenges were denied pretrial, Dr. Tosti was accepted by the Court as an expert qualified to render opinions in the fields of dermatology, hair, hair disorders, lack of hair regrowth and diagnosis of permanent chemotherapy-induced alopecia.[47] Dr. Tosti did a differential diagnosis, ruled out other causes and types of alopecia, and gave her opinion that Taxotere was the most likely cause.[48] Further, the Defendants produced no evidence pre-trial or at trial that supports proof of general causation between any other drug and permanent hair loss.

48. Admitted only insofar as the cited testimony speaks for itself and calls for credibility determinations and a jury's weight to be given to the conclusions. Dr. Feigal testified that case reports are not the same level of causation evidence as evidence from a randomized clinical trial.[49]

49. Denied. Dr. Madigan found that other drugs lacked a consistent safety signal for permanent hair loss, and Dr. Tosti testified that the only drug other than Taxotere that possibly

---

[44] *Id.* at 917:2-20.
[45] *Id.* at 1195:23-1196:6.
[46] *Id.*
[47] *Id.* at 942:14-17; R. Doc. 8095.
[48] Ex. 14, Expert report of Dr. Tosti dated Nov. 7, 2018; Ex. 11, Trial Transcript at 943:1-4; 953:20-1001:10; 1005:1-1022:19; 1111:1-1113:3; 1126:2-1127:23; 1129:7-19.
[49] *Id.* at 1195:23-1196:6.

could cause grade 2 permanent hair loss is Taxol.[50] However, no evidence was presented by any party either pre-trial or at trial that supports proof of general causation between any other drug and permanent hair loss. Further, Dr. Carinder listed multiple other options, some containing Taxol and some without, as possibilities he would have discussed with Ms. Earnest had he been warned of Taxotere's risk of permanent hair loss and had Ms. Earnest asked for other options.[51]

### G. Expert Testimony

50. Denied as incomplete. As part of his analysis, Dr. Madigan came to the conclusion that there was a statistically significant relationship between permanent hair loss and Taxotere based on a meta-analysis he conducted of the TAX316 and TAX301 final, locked clinical trial data from those two randomized controlled clinical trials.[52] As recognized by the Court, Dr. Madigan also evaluated the FAERS database.[53] Dr. Madigan also evaluated Sanofi's internal pharmacovigilance database. [54]

51. Denied, as the cited page ranges are incorrect and omit the complete responses of Dr. Madigan, explaining his meta-analysis. Admitted only insofar as the studies, when viewed independently of each other, did not show a statistically significant relationship.

52. Admitted only insofar as the cited testimony speaks for itself and calls for credibility determinations and a jury's weight to be given to the conclusions. After *Daubert* challenges were denied pretrial, Dr. Madigan was accepted by the Court as an expert qualified to render opinions in the fields of biostatistics, statistics, pharmacovigilance and safety.[55] He testified as to his

---

[50] *Id.* at 656:3-659:10; 1128:24-1129:2.
[51] *Id.* at 1491:9-1499:20.
[52] *Id.* at 631:14-649:5.
[53] *Id.* at 649:6-659:23; *see also* Ex. 15, Expert report of Dr. Madigan dated Nov. 2, 2018; R. Doc. 8094 at 7.
[54] Ex. 11, Trial Transcript at 660:13-664:7.
[55] *Id.* at 629:24-630:2; R. Doc. 8094.

methodology and confirmed his methodology was consistent with that used in the pharmacovigilance industry.[56]

53. Admitted only insofar as the cited testimony speaks for itself and calls for credibility determinations and a jury's weight to be given to the conclusions. After *Daubert* challenges were denied pretrial, Dr. Feigal was accepted by the Court as an expert qualified to render opinions in the fields of clinical research, clinical study design and interpretation, and general causation.[57] The Court accepted Dr. Feigal's Bradford Hill analysis, as well as her adoption of a portion of Dr. Madigan's analysis, for her conclusions on general causation in connection with the Court's prior denials of Sanofi's motions to exclude expert testimony on general causation.[58] Consistent with her pretrial testimony and expert report, Dr. Feigal presented the jury with her Bradford Hill analysis.[59]

54. Denied as incomplete, as Dr. Feigal testified that her analysis included review of studies that controlled for A and C.[60]

55. Admitted only insofar as the cited testimony speaks for itself and calls for credibility determinations and a jury's weight to be given to the conclusions. There was no evidence of a Bradford Hill or full general causation analysis done for any other drugs to support general causation between any other drug and permanent alopecia. Dr. Glaspy confirmed that a study found no relationship between cyclophosphamide (C) and permanent alopecia, and that Dr.

---

[56] Ex. 11, Trial Transcript at 655:5-22; 657:23-660:12.
[57] R. Doc. 8094, Ex. 11, Trial Transcript at 1161:18-21.
[58] (Doc. 6163), of David Madigan, Ph.D. (Doc. 6144), and of Ellen Feigal (Doc. 6149). R. Doc. 8094.
[59] Ex. 16, Feigal Expert Report dated Nov. 6, 2018; Ex. 11, Trial Transcript 1171:20-1214:9.
[60] *Id.* at 1245:5-17

Glaspy cites no reports of permanent alopecia with Adriamycin (A) before Taxotere comes on the market.[61]

56. Admitted.

Dated: May 13, 2022 Respectfully submitted,

/s/ Christopher L. Coffin
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

/s/ Karen B. Menzies
Karen Barth Menzies (CA Bar #180234)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

---

[61] *Id.* at 2081:12-2085:3.

J. Kyle Bachus
Bachus & Schanker, LLC
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

John Gomez
The Gomez Law Firm, PLLC
655 West Broadway, Suite 1700
San Diego, CA 92101
Phone: (619) 237.3490
Fax: 619.237.3496.
john@thegomezfirm.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, FL 32505

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045 Phone:
510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Jessica Perez Reynolds
Pendley, Baudin & Coffin
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Phone: (225) 687-6396
Fax: (225) 687-6398
jperez@pbclawfirm.com

Darin L. Schanker
Bachus Schanker
101 W Colfax Ave, Suite 650
Denver, CO 80202

<div style="columns: 2">

Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904 15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@amalaw.com

Phone: (303) 222-2222
Fax: (303) 893-9900
dls@coloradolaw.net

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Zachary Wool
Barrios Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
zwool@bkc-law.com

</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ M. Palmer Lambert*
M. PALMER LAMBERT