UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)                                MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                           SECTION "H" (5)

THIS DOCUMENT RELATES TO
*Kahn v. sanofi-aventis U.S. LLC*, No. 16-17039

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
### FOR RELIEF FROM JUDGMENT PURSUANT TO RULE 60(B)

MAY IT PLEASE THE COURT:

Plaintiff, Elizabeth Kahn, respectfully requests that this Honorable Court grant her relief from judgment under Federal Rule of Civil Procedure 60(b) due to the clear impact that the Fifth Circuit's recent opinion reversing the first bellwether trial verdict (*In re: Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th 256 (5th Cir. 2022) ("*Earnest*")) had on Ms. Kahn's ability to fairly present her case to the jury. Pursuant to Rule 62.1 and FRAP 12.1, Plaintiff respectfully prays for an indicative order of this Court that would grant her relief from judgment and a new trial with revised pretrial rulings on admissibility of testimony surrounding sanofi's 30(b)(6) designee, Dr. Michael Kopreski.

INTRODUCTION AND PROCEDURAL POSTURE

The motion centers around pretrial rulings regarding the admissibility of opinion testimony of Dr. Kopreski, who, according to the Fifth Circuit's *Earnest* opinion:

> [t]estified regarding highly specialized and technical information related to Taxotere, the TAX316 study, and drug studies in general. During its examination, Sanofi transparently sought Dr. Kopreski's opinions about the TAX316 data "as a board certified oncologist," as much as a former Sanofi employee. And Dr. Kopreski's testimony is littered with his interpretation and analysis of the TAX316 study data, which he prepared during litigation in response to Earnest's Rule 30(b)(6) deposition notice.

\* \* \*

1

> Regardless of whether it was a "very straightforward process" to Dr. Kopreski, his refinement of the TAX316 data in the context of litigation was the product of "scientific, technical, or other specialized knowledge" and application of scientific "principles and methods" within the scope of Rule 702, not simply lay opinion testimony based on his perceptions, as allowed by Rule 701. Therefore, it was erroneous for the district court to allow Dr. Kopreski to testify about his "re-analysis" of the TAX316 data without first enforcing its "basic gatekeeping obligation" under Rule 702 and *Daubert*. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

*Earnest*, 26 F.4th at 266-67. In advance of Ms. Kahn's trial, the Court made almost identical rulings on admissibility of Dr. Kopreski's opinion testimony (hereinafter "Kopreski Re-analysis") Compare R. Doc. 7974 (Order and Reasons of August 14, 2019 denying Motion to Exclude Expert Testimony that Relies Upon Defendants' Employee Dr. Michael Kopreski) with R. Doc. 11332 (Order and Reasons of October 21, 2020 denying Motion to Exclude Testimony of Michael Kopreski).[1] Prior to Ms. Kahn's trial, the Court also denied Plaintiff's motion for partial summary judgment on general causation based on the Kopreski Re-analysis and the jury's ability to weigh the evidence based thereon.[2]

Moreover, and directly pertinent to the instant request, the pretrial rulings required Ms. Kahn to adjust her trial strategy to avoid calling Dr. Kopreski in her case-in-chief. Had Ms. Kahn called Dr. Kopreski in her case-in-chief, she would have risked Sanofi bringing before the jury the

---

[1] *See also* R. Doc. 11781, Order and Reasons denying Motion to Exclude Testimony Dr. Janet Arrowsmith ("Dr. Arrowsmith, therefore, may consider and rely upon Dr. Kopreski's work."); R. Doc. 11780, Order and Reasons denying Motion to Exclude Testimony of John Glaspy, M.D. (regarding causation, "Dr. Glaspy, therefore, may consider and rely upon Dr. Kopreski's work.").

[2] In that ruling, the Court reasoned:

> More significantly, however, this Court has denied Plaintiff's Motion to Exclude Testimony of Michael Kopreski. This means that the jury will hear evidence directly contradicting the work of Dr. Madigan. Specifically, in finding a statistically significant association between Taxotere and permanent alopecia, Dr. Madigan relies heavily on the results of the TAX 316 clinical trial; Dr. Kopreski, however, will offer the jury a different interpretation of these results. For this reason, the Court finds that there is a genuine issue of material fact on general causation, and a jury will need to resolve this issue.

R. Doc. 11685 (internal citations omitted).

2

same Kopreski Re-analysis that resulted in the prejudice to Ms. Earnest that the Fifth Circuit recognized in granting a new trial. In seeking to enforce Plaintiff's ability to cross-examine on the Kopreski Re-analysis, since it was ruled admissible, Plaintiff moved to compel Sanofi to bring Dr. Kopreski live in their case-in-chief. R. Doc. 13058. The Court declined to do so, saying, in pertinent part:

> …Rule 32(a)(4)(B) vests in Sanofi the right to use Dr. Kopreski's deposition for any purpose. Moreover, contrary to Plaintiff's assertions, Sanofi's designation of Dr. Kopreski as its 30(b)(6) representative does not alter the analysis. This Court thus finds that Sanofi has a right to use Dr. Kopreski's deposition testimony in its case-in-chief. Accordingly, this Court will not compel Sanofi to command Dr. Kopreski's live testimony for Plaintiff's benefit on cross examination.

R. Doc. 13140 at 6 (internal citation omitted).

Following this decision, Plaintiff issued a subpoena to Dr. Kopreski for his live, remote appearance at trial pursuant to Rules 43 and 45. On October 15, 2021, the parties presented the Court with competing memoranda on the appropriateness of the subpoena (R. Docs. 13328, 13329), and on October 18, 2021 counsel for Dr. Kopreski filed a motion to quash the subpoena in the District of New Jersey. The Court overruled the objections to the subpoena, requiring Dr. Kopreski to be available for cross examination during the Kahn trial. Order and Reasons of November 3, 2021 (Case No. 2:21-mc-01919, R. Doc. 14, attached hereto as Exhibit A). In that Order, just days before the November 8, 2011 trial, the Court provided both the extensive history of the Kopreski dispute and its reasoning for allowing cross examination:

> Most importantly, this Court is charged with a responsibility to be fair, and here fundamental fairness requires, as this Court previously held, that Plaintiff be allowed to conduct a robust cross-examination of Dr. Kopreski's opinions regarding the TAX 316 clinical study in a way that is conducive for the jury. *As previously mentioned, Sanofi confirmed in its closing argument during the first bellwether trial that Dr. Kopreski's opinion is critical. Specifically, Sanofi's counsel stated that "[t]he whole case fails when you look at what's under the hood with TAX 316" and also that "Dr. Kopreski was the only person . . . to do that."* Sanofi uses Dr. Kopreski and its experts who rely on Dr. Kopreski's finding to

3

> undercut the claims of all Plaintiffs in this MDL, not just the bellwether Plaintiff. As stated by another court in this district, "[o]ne of the purposes of bellwether cases is to inform the parties on the future course of this entire litigation." Where, as here, the testimony is critical to the future course of this MDL—and this Court is unaware of any law prohibiting Plaintiff from doing so—this Court finds that Plaintiff is permitted to cross-examine Dr. Kopreski via live remote videoconferencing if Sanofi calls Dr. Kopreski during its case-in-chief. Consequently, in accordance with the Court's responsibility to ensure fundamental fairness, Plaintiff is prohibited from presenting both Dr. Kopreski's deposition testimony during her case-in-chief and his live testimony in Defendants' case-in-chief—Plaintiff must choose one method of presenting Dr. Kopreski's testimony.

Ex A at 12-13 (emphasis added). Therefore, counsel made a conscious trial strategy decision to avoid calling Dr. Kopreski, in compliance with the aforesaid ruling and in legitimate fear that Ms. Kahn's trial would be tainted with Dr. Kopreski's improper testimony. The jury was not presented with Plaintiff's affirmatively designated testimony of Dr. Kopreski in her case-in-chief, which was clearly favorable to her liability case, and the jury thereafter returned a verdict for Sanofi on liability. R. Doc. 13436.

Following the verdict, Sanofi filed a motion to tax Ms. Kahn with costs of $108,169.62,[3] and Ms. Kahn filed a notice of appeal.[4] In the interim, the Fifth Circuit ruled on Ms. Earnest's appeal, finding, in pertinent part:

> Sanofi effectively smuggled inadmissible opinion testimony past the expert-disclosure and expert discovery obligations imposed by the discovery and evidentiary rules by offering Dr. Kopreski as a lay witness.
> * * *
> Dr. Kopreski presented in Sanofi's case-in-chief was not in rebuttal to anything Earnest had offered. It was expert opinion, offered by Sanofi on offense, not on defense.

*Earnest*, 26 F.4th at 267 (internal citations omitted). Had this ruling issued prior to Ms. Kahn's trial, the pretrial rulings would clearly have been different regarding admissibility of the Kopreski Re-analysis and any reliance thereon.

---

[3] R. Doc. 13060.
[4] R. Doc. 13599.

LAW AND ARGUMENT

Because the *Earnest* decision of the Fifth Circuit came after the timeframe within which to seek relief under Rule 59, the appropriate authority for seeking the relief requested herein comes from the six specifically enumerated grounds for reconsidering a judgment under Rule 60(b).[5] The Fifth Circuit has held "that the first five clauses of Rule 60(b) and the sixth are mutually exclusive." *Hess v. Cockrell*, 281 F.3d 212, 215 (5th Cir. 2002). "Rule 60(b)(6) has been described as a 'residual clause used to cover unforeseen contingencies,' and as 'a means for accomplishing justice in exceptional circumstances.'" *Shoemaker v. Estis Well Serv.*, L.L.C., 122 F. Supp. 3d 493, 511–12 (E.D. La. 2015) (quoting *Steverson v. GlobalSantaFe Corp.*, 508 F.3d 300, 303 (5th Cir. 2007)).

Rule 60(b) provides a court with a "grand reservoir of equitable power to do justice in a particular case." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981) (quoting *Menier v. United States*, 405 F.2d 245, 248 (5th Cir. 1968)). However, the court must "strike a balance between two conflicting goals, the finality of judgments and the command of the court to do justice." *Stipelcovich v. Sand Dollar Marine, Inc.*, 805 F.2d 599, 604 (5th Cir. 1986) (citing *Seven Elves, Inc.*, 635 F.2d at 401). To strike this balance, the Fifth Circuit has enumerated eight factors for district courts to consider when ruling on a motion under Rule 60(b):

> (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether if the judgment was a default or a dismissal in which there was no consideration of the merits the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether if the judgment was rendered after a trial on the merits the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice

---

[5] Because undersigneds' review of appellate procedure suggests it is appropriate to seek this Court's review of this timely Rule 60(b) motion before seeking any relief from the Fifth Circuit, *see* FRAP 12.1, Fed. R. Civ. P. 62.1, Plaintiff respectfully files the instant motion seeking the Court's indicative ruling which otherwise would be barred by divestiture of jurisdiction due to the pending appeal.

of the judgment under attack. These factors are to be considered in the light of the great desirability of preserving the principle of the finality of judgments.

of the judgment under attack. These factors are to be considered in the light of the great desirability of preserving the principle of the finality of judgments.

*Seven Elves*, 635 F.2d at 402.

In advance of Ms. Kahn's jury trial, motion practice virtually identical to that presented in the *Earnest* matter sought exclusion of improper lay opinion testimony of former company employee and 30(b)(6) designee, Michael Kopreski.[6] This Court denied Plaintiff's pretrial request to exclude testimony of Dr. Kopreski and also made rulings impacting the ability of Ms. Kahn to present evidence that were conditioned on the timing of Dr. Kopreski's appearance at trial for cross examination.[7] The Fifth Circuit since determined that Dr. Kopreski's testimony should have been excluded as lacking the requisite reliability tenets that allow expert testimony past the *Daubert* evidentiary gates.

In addition, based on the same successful efforts by Sanofi to advance improper lay opinion testimony past the *Daubert* gates, this Court made additional pretrial rulings allowing Sanofi's deposition designations of the improper lay opinion testimony of Kopreski if, and only if, Kopreski was subjected to cross examination on those opinions. Ex. A. The rulings created a catch-22 for Ms. Kahn – either call Kopreski in her case-in-chief, during which his improper opinion testimony would have been allowed, or decline to call Kopreski and risk Sanofi calling him in its case. Ms. Kahn chose the latter, and no testimony of Kopreski, including the testimony Ms. Kahn affirmatively designated in support of her case, was presented to the jury. The prejudice is clear – Ms. Kahn was prevented from presenting the jury with testimony from Sanofi, through the company's only 30(b)(6) witness, Kopreski, testimony that is directly relevant to notice and Sanofi's alleged failure-to-warn under the Louisiana Products Liability Act.[8]

---

[6] R. Docs. 7974, 11332; Ex. A at (detailing procedural history).
[7] R. Docs. 11332; Ex. A.
[8] Attached as Exhibit B are the proposed designations of testimony of Dr. Kopreski.

6

For example, in the affirmative designations of Dr. Kopreski's deposition testimony (on which the Court overruled objections), Plaintiff would have presented the following non-exclusive[9] testimony in support of her case:

> Q. So you actually started on my next question –
> A. Okay.
> Q. -- which is, that obligation to identify either new side effects or new characteristics of a previously known side effect doesn't stop or end once a drug comes on the market. True?
> A. That's correct.
> Q. In fact, the obligation of the drug company to identify new side effects or to look for new characteristics of previously known side effects is an ongoing obligation for the drug company; correct?
> A. The drug company continues to monitor its drugs throughout the life cycle. Now, when I say life cycle, I mean, you know, from -- from the start of development to the end of it being on the market, through the life cycle of the product.[10]
>
> * * *
>
> Q. You agree that a drug company must update its label when new information becomes available that causes the current labeling to become inaccurate, false, or misleading.
> A. The -- if there is error in the label -- you know, you're -- you're asking labeling questions, which, you know, certainly goes beyond my expertise. But to the best of my knowledge, if there's -- if there's faulty or inaccurate information, that would need to be corrected.[11]
>
> * * *
>
> Q. And under the discussion section at the end [of Sedlacek's December 2006 abstract], Dr. Sedlacek informs, "Such an emotionally devastating long term toxicity from this combination must be taken into account when deciding on adjuvant chemotherapy programs in women who likely will be cured from their breast cancer." Do you see that?
> A. I do see that.
> Q. And women most likely to be cured from their breast cancer are going to be women who have early stage breast cancer; isn't that right?
> A. That would be patients with -- with nonmetastatic breast cancer.[12]

Because the *Daubert* pretrial rulings allowing lay witness expert testimony of Kopreski in *Kahn* are now erroneous under this Honorable Court's *Earnest* opinion, the final judgment

---

[9] The below referenced quotes are only a small portion of the testimony that the Court would have allowed based on its overruling of objections as set forth in column "F" of Exhibit B.
[10] Ex. B at 41:19-42:17.
[11] *Id.* at 43:6-18.
[12] *Id.* at 251:24-252:15.

dismissing Ms. Kahn's matter following a jury verdict was "based on an earlier judgment that has been reversed or vacated." Fed. R. Civ. P. 60(b)(5).[13]

> As the Supreme Court stated, "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). **The parties are entitled to formulate trial strategy based on the facts material for recovery under the correct law. In other words, the law determines the legal issues, and the legal issues determine the relevant and material facts. Any disputes as to material facts under the correct legal theory must be resolved by a jury at the new trial.** Therefore, the district court erred in finding that no genuine issue of material fact existed based on the vacated jury verdict. At this point, the new law will dictate the new material facts. The law of the case doctrine is intended to apply in cases where the parties have had a full and fair opportunity to litigate issues under the correct law.

*Sales v. State Farm Fire and Cas. Co.*, 902 F.2d 933, 936 (5th Cir. 1990) (emphasis added).

CONCLUSION

Based on the incorrect pretrial rulings in *Kahn*, the same rulings that allowed Kopreski's prejudicial testimony to be admitted in *Earnest*, undersigned counsel's trial strategy was significantly impacted – counsel made the difficult, catch-22 determination not to present the jury with favorable affirmative deposition designations of Kopreski related to the alleged failure-to-warn in her case-in-chief for fear that the jury would hear Kopreski's improper opinion testimony, just as the *Earnest* jury heard. Ms. Kahn, therefore, was prejudiced in her ability to have a "full and fair opportunity" to present her case to the jury. Not only was Ms. Kahn hamstrung in her presentation of the evidence, but the jury also was deprived of hearing testimony favorable to Ms. Kahn in her case-in-chief. Additionally, Ms. Kahn was prejudiced by other pretrial rulings that allowed testimony which relied on Kopreski's Re-analysis.

---

[13] "For a decision to be 'based on' a prior judgment within the meaning of Rule 60(b)(5), the prior judgment must be a necessary element of the decision, giving rise, for example, to the cause of action or a successful defense." *Bailey v. Ryan Stevedoring Co.*, 894 F.2d 157, 160 (5th Cir. 1990). The Court's analysis of sanofi's defenses to general causation highlight how necessary this evidence was to its defense of liability in this case.

Accordingly, Ms. Kahn respectfully seeks relief from judgment under Rule 60(b) motion and a new trial based on revised pretrial rulings related to Dr. Kopreski.

Dated: May 17, 2022

/s/ Christopher L. Coffin
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com
*Plaintiffs' Co-Lead Counsel and Counsel for Plaintiff/Appellant*

/s/ Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com
*Plaintiffs' Co-Liaison Counsel*

Respectfully submitted,

/s/ M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com
*Plaintiffs' Co-Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ M. Palmer Lambert
M. PALMER LAMBERT

9