# EXHIBIT A

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIZABETH KAHN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-mc-01919** |
| **SANOFI US SERVICES, INC.,** and **SANOFI-AVENTIS U.S., LLC** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is a Motion to Quash Trial Subpoena (Doc. 1). Oral argument was held on November 2, 2021. For the following reasons, the Motion is **DENIED**.

## BACKGROUND

On October 4, 2021, Dr. Michael Kopreski was served at his home with a subpoena to compel his testimony via live remote videoconferencing at trial set to begin on November 8, 2021 in the Eastern District of Louisiana. The trial is the second bellwether trial in the multidistrict litigation ("MDL") captioned *In re Taxotere (Docetaxol) Products Liability Litigation* (Case No. 16-MD-2740). Plaintiffs in this MDL are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel,[1] that Plaintiffs were administered for the treatment of breast cancer or other

---

[1] Docetaxel is the generic version of Taxotere.

forms of cancer. Among these companies are Defendants sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc. (collectively, "Sanofi" or "Defendants"). Plaintiffs allege that the drug caused permanent alopecia—in other words, permanent hair loss. Plaintiffs bring claims of failure to warn, negligent misrepresentation, fraudulent misrepresentation, and more.

Dr. Michael Kopreski's testimony has been and continues to be a matter of contention. Dr. Kopreski served as the head of oncology pharmacovigilance for Sanofi from 2005 to 2017. After his retirement, Sanofi produced Dr. Kopreski as its Rule 30(b)(6) deponent. The parties deposed Dr. Kopreski multiple times between September 2018 and June 2019. In those depositions, in relevant part, Dr. Kopreski identified and testified to cases of "persisting alopecia" in patients from the "TAX 316" clinical study.[2]

In preparation for the second bellwether trial, bellwether Plaintiff Elizabeth Kahn filed a Motion to Exclude Testimony of Michael Kopreski, specifically the testimony regarding the cases of "persisting alopecia" from the TAX 316 study. This Court denied Plaintiff's motion on October 21, 2020, holding that Dr. Kopreski would be allowed to offer the opinions at issue but that the Court was concerned about Plaintiff's ability to adequately cross-examine Dr. Kopreski about his analysis.[3] Specifically, this Court held that "Plaintiff must be able to conduct a robust cross-examination of [Dr. Kopreski] in a way that is conducive for the jury" and that the Court would discuss options with counsel prior to the second bellwether trial.[4]

In response to those discussions, Plaintiff filed a Motion to Compel Sanofi to Produce Dr. Michael Kopreski at Trial for Live Cross-Examination

---

[2] The details and importance of the TAX 316 study can be found in the Court's Order and Reasons denying Plaintiff's Motion to Exclude Dr. Kopreski's Testimony. *See* In re Taxotere (Docetaxol) Prods. Liab. Litig., Case No. 16-MD-2740, Rec. Doc. 11332.
[3] *In re Taxotere*, Case No. 16-MD-2740, Rec. Doc. 11332.
[4] *Id.* at 8.

2

Pursuant to this Court's *Daubert* Ruling and Federal Rules of Civil Procedure 43 and 45.[5] On July 26, 2021, this Court denied Plaintiff's Motion, finding that the Court could not compel *Sanofi* to subpoena Dr. Kopreski for Sanofi's case-in-chief.[6] However, this Court found that Rules 43 and 45 would permit *Plaintiff* to compel the live testimony of Dr. Kopreski for good cause.

Thereafter, on September 30, 2021, Plaintiff requested the subpoena that was subsequently served on Dr. Kopreski at his home in Long Valley, New Jersey on October 4, 2021, compelling him to appear and testify in the United States District Court for the Eastern District of Louisiana via live remote videoconferencing during the second bellwether trial.[7] Specifically, the subpoena commands Dr. Kopreski to appear at a location in Cherry Hill, New Jersey on November 15, 2021—the date that Sanofi is scheduled to begin making its case-in-chief during trial.

Now before the Court is a Motion to Quash Trial Subpoena filed by Dr. Kopreski, wherein he asks the Court to quash the subpoena Plaintiff served upon him on October 4, 2021. Plaintiff opposes.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 45(d)(3)(A), the court must quash or modify a subpoena that:

> (i) fails to allow a reasonable time to comply;
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> (iv) subjects a person to undue burden.[8]

---

[5] *Id.*, Rec. Doc. 13058.
[6] *Id.*, Rec. Doc. 13140.
[7] Rec. Doc. 1-2 at 5.
[8] FED. R. CIV. P. 45(d)(3)(A)(i)−(iv).

3

Under Federal Rule of Civil Procedure 45(c)(1), a subpoena may command a person to attend trial only as follows:

> (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
> (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
> > (i) is a party or a party's officer; or
> > (ii) is commanded to attend a trial and would not incur substantial expense.[9]

Federal Rule of Civil Procedure 43(a) provides:

> At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise. For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.

Additionally, of relevance to the instant matter is the Advisory Committee Notes to Rule 45(c), which further remark that "[w]hen an order under Rule 43(a) authorizes testimony from a remote location, the witness can be commanded to testify from any place described in Rule 45(c)(1)."

## LAW AND ANALYSIS

Dr. Kopreski argues that the subpoena should be quashed because (1) no Court has found "good cause in compelling circumstances and with appropriate safeguards" to permit remote testimony by Dr. Kopreski under Rule 43(a); (2) the subpoena exceeds the geographical limits of Rule 45(c); (3) the subpoena imposes an undue burden on Dr. Kopreski; and (4) this Court has already held

---

[9] *Id.* at 45(c)(1)(A)−(B).

4

that Dr. Kopreski is "unavailable" for Sanofi's case-in-chief under Rule 32(a)(4)(b). This Court will address each argument in turn.

## I. Requisite Finding of Good Cause in Compelling Circumstances and Appropriate Safeguards

Dr. Kopreski first argues that the subpoena should be quashed because the subpoena was issued without an order from this Court authorizing his remote testimony during the second bellwether trial, as required by Rule 43(a). Indeed, Rule 43(a) states that "the court may permit testimony in open court by contemporaneous transmission" only for good cause in compelling circumstances and with appropriate safeguards.[10] Further, the Advisory Committee Notes to Rule 45 state that "[w]hen an order under Rule 43(a) authorizes testimony from a remote location, the witness can be commanded to testify from any place described in Rule 45(c)(1)." Thus, courts have found that without such an order, a subpoena issued under Rule 43 is invalid.[11] Nevertheless, as the court found in *In re 3M Combat Arms Earplug Products Liability Litigation*, this Court too finds that this procedural misstep is harmless.[12]

On October 12, 2021, this Court held a deposition designation conference with the parties in the MDL in preparation for the second bellwether trial. At the conference, the Court became aware of the subpoena issued upon Dr. Kopreski. Defendants raised objections to the subpoena, and the Court ordered the parties to submit briefing regarding the propriety of the subpoena. The parties' briefings were filed with this Court on October 15, 2021—the same day Dr. Kopreski filed the instant Motion to Quash in the District of New Jersey.

---

[10] *Id.* at 43(a).
[11] *See* In re 3M Combat Arms Earplug Prods. Liab. Litig., No. 3:19-md-2885, 2021 WL 2605957, at *2 (N.D. Fla. May 28, 2021).
[12] *See id.*

5

In Plaintiff's briefing, she seeks an order authorizing Dr. Kopreski's appearance via remote videoconferencing.[13] Though the request comes after the subpoena was issued, this Court finds that in the interest of judicial efficiency it may consider the request now. All parties have had an opportunity to respond to the validity of the subpoena under Rule 43(a) through the briefings filed with the Court on October 15, 2021,[14] and the parties similarly argued whether good cause in compelling circumstances exists as to the testimony of Dr. Kopreski when the parties submitted briefings in response to Plaintiff's earlier Motion to Compel Sanofi to Produce Dr. Kopreski.[15] It would be a waste of judicial resources to find this subpoena unenforceable, direct Plaintiff to file a motion seeking leave of court, and require briefing on this matter for a third time. Accordingly, the Court will now consider whether good cause in compelling circumstances exists to permit Dr. Kopreski to testify remotely from New Jersey.

### A.   Good Cause in Compelling Circumstances

There is no clear standard for what constitutes good cause in compelling circumstances. [16] Nevertheless, immediately following the statement that there must be a showing of good cause in compelling circumstances, the Advisory Committee Notes to the 1996 amendment of Rule 43 state that "[t]he importance of presenting live testimony in court cannot be forgotten." [17] Though the Notes also say that "[t]he most persuasive showings of good cause in compelling circumstances are likely to arise when a witness is unable to

---

[13] *In re Taxotere*, Case No. 16-MD-2740, Rec. Doc. 13329 at 7. ("For the reasons stated above, the Court should issue an order authorizing Dr. Kopreski's appearance via remote videoconferencing for contemporaneous transmission of testimony consistent with Federal Rules of Civil Procedure 43.").
[14] *See id.*, Rec. Doc. 13328 at 6–7; *see also id.*, Rec. Doc. 13329 at 3–5.
[15] *See id.*, Rec. Doc. 13058 at 2–6; *see also id.*, Rec. Doc. 13091 at 7–10.
[16] *See In re 3M Combat Arms Earplug*, 2021 WL 2605957, at *4. ("Neither Rule 43(a) nor the Advisory Committee Notes define these terms.").
[17] FED. R. CIV. P. 43(a) advisory committee's note.

attend trial for unexpected reasons, such as accident or illness," they nevertheless consider the possibility that there are other justifications and advise the court that those should be "approached cautiously."[18] Some federal courts apply the *Vioxx* test, a five-factor test which considers:

> (1) the control exerted over the witness by the defendant; (2) the complex multi-party, multi-state nature of the litigation; (3) the apparent tactical advantage, as opposed to any real inconvenience to the witness, that the defendant is seeking by not producing the witness voluntarily; (4) the lack of any true prejudice to the defendant; and (5) the flexibility needed to manage a complex multi-district litigation.[19]

Accordingly, for the reasons that follow, this Court finds that there is good cause in compelling circumstances to contemporaneously transmit the testimony of Dr. Kopreski from New Jersey.

### i. The Nature of Dr. Kopreski's Testimony

At the outset, this Court notes that Dr. Kopreski is a crucial witness in this MDL. In its closing argument at the first bellwether trial, Sanofi's counsel stated that "[t]he whole case fails when you look at what's under the hood with TAX 316" and that "Dr. Kopreski was the only person . . . to do that."[20] Additionally, in October 2020, this Court found that Dr. Kopreski's testimony regarding his reanalysis is admissible as opinion testimony from a fact witness but that Plaintiff must be able to conduct a robust cross-examination of him in a way that is conducive for the jury. As noted by the court in *In re 3M*, "assuming no technological mishaps at trial, there is little doubt that live testimony by contemporaneous transmission offers the jury better quality evidence than a videotaped deposition." [21] Further, the preference for

---

[18] *Id.*
[19] In re Vioxx Prod. Liab. Litig., 439 F. Supp. 2d 640, 643 (E.D. La. 2006).
[20] *In re Taxotere*, Case No. 16-MD-2740, Rec. Doc. 11329-1 at 4–5.
[21] *In re 3M Combat Arms Earplug*, 2021 WL 2605957, at *5. The court then stated:

7

deposition testimony expressed in the Advisory Committee Notes was codified in 1996, 25 years ago.[22] Since then, and certainly in the last 18 months, courts have grown more accustomed to using videoconferencing technology.

> ii. The *Vioxx Factors*

The Court now turns to the *Vioxx* factors and finds that the factors lean in favor of finding good cause in compelling circumstances.

> a. *The Control Exerted Over the Witness by the Defendant*

First, while the Court recognizes that Dr. Kopreski is no longer under the employ of Sanofi, the Court cannot ignore that it was during Dr. Kopreski's retirement that Sanofi selected Dr. Kopreski as its Rule 30(b)(6) witness, that Dr. Kopreski willingly served as Sanofi's 30(b)(6) witness, and that Dr. Kopreski provided the post hoc analysis relied on by Sanofi's experts in this case. Thus, because of the close relationship between Sanofi and Dr. Kopreski, this Court finds this factor to be neutral.

> b. *The Complex Multi-Party, Multi-State Nature of the Litigation*

Second, this bellwether trial is complex and part of a multi-party, multi-state litigation. Though Elizabeth Kahn is only one plaintiff, this MDL consists of over 12,000 plaintiffs with claims that originated across the country. Thus, this factor leans in favor of finding good cause in compelling circumstances.

---

> [C]ontemporaneous transmission of live witness testimony will better allow the jury to more realistically "see" the live witness along with "his hesitation, his doubts, his variations of language, his confidence or precipitancy, his calmness or consideration," without editing or the unavoidable esthetic distance created by a video deposition and, thus, more fully and better satisfy the goals of live, in-person testimony, while avoiding the short-comings of either written or video deposition testimony perhaps recorded weeks or months earlier, prior to whatever developments might have occurred between the time the deposition was recorded and the time the testimony by video deposition is presented at trial.

*Id.* (citing In re Actos (Pioglitazone) Prod. Liab. Litig., No. 12-cv-00064, 2014 WL 107153, at *8 (W.D. La. Jan. 8, 2014)).

[22] *See generally* FED. R. CIV. P. 43(a) advisory committee's note.

8

> c. *The Apparent Tactical Advantage, as Opposed to Any Real Inconvenience to the Witness, That Defendant Is Seeking by Not Producing the Witness Voluntarily*

Third, this Court finds that Sanofi seeks a tactical advantage in choosing to present Dr. Kopreski's testimony through deposition rather than live transmission. Dr. Kopreski's testimony is critical to Sanofi's defense—only he performed the reanalysis of TAX 316. Sanofi claims Plaintiff's case fails when you look at this reanalysis. Additionally, many of Sanofi's experts base their opinions on Dr. Kopreski's reanalysis. Thus, by choosing to present Dr. Kopreski's deposition testimony, Sanofi attempts to have its cake and eat it too—Plaintiff is prevented from performing a robust cross-examination of Dr. Kopreski in a manner that is conducive for the jury, yet Sanofi is able to present the testimony and then rely on it to undermine Plaintiff's entire claim.

> d. *The Lack of Any True Prejudice to Defendants*

Fourth, this Court finds that Defendants would not suffer any true prejudice by having Dr. Kopreski testify live on cross-examination.

> e. *The Flexibility Needed to Manage a Complex Multi-District Litigation*

And fifth, as the *Vioxx* court found, this Court also finds that "the fifth factor is essentially an extension of the second factor and, as such, . . . it also weighs in favor of videoconferencing."[23]

### B. Appropriate Safeguards

In addition, this Court finds there are appropriate safeguards in place to permit the contemporaneous transmission of Dr. Kopreski's testimony from New Jersey. "Appropriate safeguards exist where the opposing party's ability to conduct cross-examination is not impaired, the witness testifies under oath

---

[23] *In re Vioxx,* 439 F. Supp. 2d at 644.

in open court, and the witness's credibility can be assessed adequately."[24] Here, Dr. Kopreski will testify via contemporaneous videoconferencing technology (ZoomGov), where he will be under oath and his testimony will be transmitted instantaneously, allowing the jury to unimpededly judge his credibility.[25] Further, the subpoena commands Dr. Kopreski to appear at the Cherry Hill, New Jersey office of Golkow, Inc., a global litigation service corporation that provides videoconferencing technology that the Plaintiff Steering Committee has utilized for depositions numerous times in this MDL.

Accordingly, this Court finds that there is good cause in compelling circumstances to permit the contemporaneous testimony of Dr. Kopreski and that there are appropriate safeguards in place. Therefore, though it was an error to issue the subpoena prior to seeking a court order authorizing the remote testimony, the procedural error was harmless.

## II. The Geographical Limits of Rule 45(c) Are Satisfied

Dr. Kopreski also argues that the subpoena should be quashed because it requires him to comply beyond the geographical limits specified in Rule 45(c). This Court already considered this argument when ruling on Plaintiff's earlier Motion to Compel Sanofi to Produce Dr. Kopreski at Trial for Live Cross Examination.[26] In doing so, this Court joined another section of this Court and at least two additional courts within the Fifth Circuit in holding that, for good cause in compelling circumstances and with appropriate safeguards, Rule 45 is satisfied so long as the witness is not compelled to testify at a location beyond

---

[24] *In re 3M Combat Arms Earplug*, 2021 WL 2605957, at *5 (citing Warner v. Cate, No. 1:12-cv-1146, 2015 WL 4645019, at *1 (E.D. Cal. Aug. 4, 2015)).
[25] See Liu v. State Farm Mut. Auto Ins. Co., No.2:18-1862, 2020 WL 8465987, at *2 (W.D. Wash. Dec. 17, 2020) ("[M]odern videoconferencing technology allows for near instantaneous transmission of testimony with no discernable difference between it and 'live' testimony, thereby allowing a juror to judge credibility unimpeded.").
[26] *In re Taxotere*, Case No. 16-MD-2740, Rec. Doc. 13140 at 5.

100 miles from the witness's residence.[27] Therefore, because the subpoena commands Dr. Kopreski to report to a location within 100 miles of his residence, this Court finds that the geographical limits of Rule 45(c) are satisfied.[28]

## III. The Subpoena Does Not Impose an Undue Burden on Dr. Kopreski

Dr. Kopreski next argues that the subpoena should be quashed because it imposes an undue burden on him. Rule 45(d)(3)(A)(iv) provides that a court "must quash or modify a subpoena that . . . subjects a person to undue burden." [29] "The person filing the motion has the burden of proof to demonstrate that compliance would impose undue burden or expense."[30] Dr. Kopreski argues that the subpoena qualifies as an undue burden because the expense and inconvenience of compelling Dr. Kopreski to testify are considerable, while the prejudice to Plaintiffs is non-existent. This Court disagrees.

This Court does not diminish or devalue the number of hours Dr. Kopreski has spent preparing for and providing deposition testimony. Indeed, the Court finds Dr. Kopreski's testimony and opinion critical in this case and that Plaintiff would be prejudiced if she is forced to present discovery deposition testimony at trial in place of a live, remote cross-examination. Further, this Court disagrees with Dr. Kopreski's counsel's argument made at oral argument on this Motion that Dr. Kopreski will only have two weeks to

---

[27] *Id.* (citing In re Xarelto (Rivaroxaban) Prod. Liab. Litig., MDL No. 2592, 2017 WL 2311719 (E.D. La. May 26, 2017) (Fallon, J.); In re Actos, No. 6:11-md-2299, 2014 WL 107153 (W.D. La. Jan. 8, 2014); In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig., No. 3:11-md-2244, 2016 WL 9776572, at *1–2 (N.D. Tex. Sept. 20, 2016)).

[28] As previously recognized, the subpoena commands Dr. Kopreski to appear at the Cherry Hill, New Jersey office of Golkow, Inc. This office is located at 200 Lake Drive East, Suite 100, Chery Hill, NJ 08002, which is approximately 88 miles from Dr. Kopreski's residence.

[29] FED. R. CIV. P. 45(d)(3)(A)(iv).

[30] Bonano v. James River Ins. Co., No. 16-cv-14764, 2020 WL 6157846, at *2 (E.D. La. Oct. 21, 2020) (citing Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 818 (5th Cir. 2004)).

11

review his prior deposition testimony and corresponding documents before he is set to testify at trial. Notably, Dr. Kopreski was served with the subpoena at issue on October 4, 2021, and it commands his appearance on November 15, 2021. Thus, the subpoena gives Dr. Kopreski six weeks to prepare and review before testifying at trial.

Additionally, the Court is persuaded by Plaintiff's assurance that Plaintiff's counsel will coordinate with Dr. Kopreski, with Sanofi, and with the Court on an appropriate and convenient time for Dr. Kopreski's remote appearance at trial to alleviate any further burden. Thus, while the Court recognizes that Dr. Kopreski will have to spend time preparing and providing testimony at trial and that he considers this a burden, the Court finds that it is not an *undue* burden sufficient to quash the subpoena.

### IV. Dr. Kopreski's Unavailability

Dr. Kopreski's final argument is that the subpoena should be quashed because this Court has already held that Dr. Kopreski is an "unavailable" witness for Sanofi's case-in-chief under Rule 32(a)(4)(B), and, therefore, the subpoena cannot compel Dr. Kopreski to be "available" for live cross-examination. In support of his claim, Dr. Kopreski cites to *Stevenson v. Holland* and *Truckstop.net, L.L.C. v. Sprint Communications Co., L.P.*[31] However, as Plaintiff argued in her opposition to the instant Motion, this Court too finds these cases to be distinguishable.[32]

Most importantly, this Court is charged with a responsibility to be fair, and here fundamental fairness requires, as this Court previously held, that Plaintiff be allowed to conduct a robust cross-examination of Dr. Kopreski's

---

[31] *See* Rec. Doc. 1-1 at 16 (citing Stevenson v. Holland, 504 F. Supp. 3d 1107, 1147 (E.D. Cal. 2020); Truckstop.net, L.L.C. v. Sprint Commc'ns Co., L.P., No. CV-04-561, 2010 WL 1248254, at *1 (D. Idaho Mar. 23, 2010)).
[32] *See* Rec. Doc. 5 at 5.

12

opinions regarding the TAX 316 clinical study in a way that is conducive for the jury.[33] As previously mentioned, Sanofi confirmed in its closing argument during the first bellwether trial that Dr. Kopreski's opinion is critical. Specifically, Sanofi's counsel stated that "[t]he whole case fails when you look at what's under the hood with TAX 316" and also that "Dr. Kopreski was the only person . . . to do that."[34] Sanofi uses Dr. Kopreski and its experts who rely on Dr. Kopreski's finding to undercut the claims of all Plaintiffs in this MDL, not just the bellwether Plaintiff. As stated by another court in this district, "[o]ne of the purposes of bellwether cases is to inform the parties on the future course of this entire litigation."[35] Where, as here, the testimony is critical to the future course of this MDL—and this Court is unaware of any law prohibiting Plaintiff from doing so—this Court finds that Plaintiff is permitted to cross-examine Dr. Kopreski via live remote videoconferencing if Sanofi calls Dr. Kopreski during its case-in-chief. Consequently, in accordance with the Court's responsibility to ensure fundamental fairness, Plaintiff is prohibited from presenting both Dr. Kopreski's deposition testimony during her case-in-chief and his live testimony in Defendants' case-in-chief—Plaintiff must choose one method of presenting Dr. Kopreski's testimony.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that good cause in compelling circumstances exists such that Dr. Kopreski is authorized to appear via remote videoconferencing for contemporaneous transmission of testimony during the second bellwether trial.

---

[33] *In re Taxotere*, Case No. 16-MD-2740, Rec. Doc. 11332 at 8.
[34] *Id.*, Rec. Doc. 11329-1 at 4−5.
[35] *In re Xarelto*, 2017 WL 2311719, at *4.

**IT IS FURTHER ORDERED** that Dr. Kopreski's Motion to Quash Trial Subpoena is **DENIED**.

New Orleans, Louisiana, this 3rd day of November, 2021.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**