**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                          MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                      SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Barbara Earnest, Case No. 2:16-cv-17144.

---

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff's Opposition fails to identify any material dispute remaining for a jury to resolve on three dispositive issues:

- Despite admitting that she knew her hair loss was caused by chemotherapy, Plaintiff never investigated Taxotere as a potential cause;

- A different warning would not have changed Dr. Carinder's decision to prescribe Taxotere to Plaintiff in 2011;

- Plaintiff failed to show that Taxotere causes permanent hair loss or that she experienced permanent hair loss caused by Taxotere.

As a result, the Court should enter summary judgment in Sanofi's favor.

**I.     SANOFI PROPERLY RELIES ON TRIAL TESTIMONY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT.**

Plaintiff claims "[s]ummary judgment is not permissible based on the testimony" from an "invalidated trial."[1]  But an overturned judgment on a single issue does not invalidate the sworn testimony of every witness presented at trial.

The law in the Fifth Circuit is well-settled that admissible, sworn trial testimony may be considered on a motion for summary judgment even where the original trial judgment has been

---

[1]    Rec. Doc. 14209 at 3 (Pl.'s Mem. in Opp. to Sanofi's Mot. for Summ. J.).

vacated. *See, e.g.*, *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1414 n.12 (5th Cir. 1993) (finding no error in relying on a certified transcript of the first trial in consideration of a summary judgment motion filed after vacating the first trial's judgment on a particular issue).[2]  The Fifth Circuit cases cited by Plaintiff do not address, much less refute, this point.  *See Smoot v. State Farm Mutual Auto. Ins. Co.*, 299 F.2d 525, 527 (5th Cir. 1962) (reversing trial court's decision granting motion to dismiss, finding it should have been treated as one for summary judgment); *Duke v. Sun Oil Co.*, 320 F.2d 853, 865 (5th Cir. 1963) (reversing for a new trial where the district court failed to submit a jury instruction on one of the plaintiff's legal theories).  Under *Kelley*, this Court may rely on the sworn testimony of any trial witness as long as that testimony was not deemed inadmissible in the Fifth Circuit's opinion.

Here, the Fifth Circuit analyzed the admissibility of Dr. Kopreski and Dr. Glaspy's testimony only.  *See In re Taxotere (Docetaxel) Prods. Liab. Litig. (Earnest)*, 26 F.4th 256, 260 (5th Cir. 2022).  Neither party argued, and the Fifth Circuit accordingly did not find, that the testimony of any other trial witness was inadmissible.  Sanofi's motion for summary judgment relies solely on admissible sworn testimony and accordingly supports Sanofi's motion.  *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) ("At the summary judgment stage, materials cited to support or dispute a fact need only be capable of being 'presented in a form that would be admissible in evidence.'" (citing Fed. R. Civ. P. 56(c)(2))).  Plaintiff has failed to cite any authority to the contrary.[3]

---

[2]   *See also Heffernan v. City of Paterson*, 492 F. App'x 225, 229 (3d Cir. 2012) ("Evidence obtained in a jury trial—even one involving a later recusal—is at least as reliable as other pieces of evidence, such as affidavits, that are routinely considered on summary judgment."); *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1284 (11th Cir. 2005) (recognizing a trial transcript from a vacated trial can be considered in determining a summary judgment motion); *Downes v. Beach*, 587 F.2d 469, 471–72 (10th Cir. 1978) (holding that the record of a prior trial proceeding was properly considered on a motion for summary judgment after a new trial was granted).

[3]   In fact, Plaintiff has notably preserved her ability to argue that she may designate prior trial testimony for impeachment purposes.  Rec. Doc. 14209 at 3 n.3 (Pl.'s Mem. in Opp. to Sanofi's Mot. for Summ. J.).

## II.     PLAINTIFF'S CLAIM IS TIME BARRED UNDER THE FIFTH CIRCUIT'S HOLDINGS IN *THIBODEAUX* AND *DURDEN*.

Because Plaintiff's claim is time barred on its face, it was Plaintiff's burden to show why

*contra non valentem* applies to save her claim.[4]  *Anderson v. Beauregard Mem'l Hosp.*, 97-1222

(La. App. 3 Cir. 3/6/98), 709 So. 2d 283, 285.  Plaintiff cannot do so under the clear standard

articulated by the Fifth Circuit in *Thibodeaux* and *Durden*:  where a plaintiff "ma[kes] no inquiry

into Taxotere as a possible explanation for their persistent hair loss, they ha[ve] not act[ed]

reasonably in light of their injuries," and *contra non valentem* does not apply to save otherwise

untimely claims.  *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Durden)*, 860 F. App'x 886, 892

(5th Cir. 2021) (internal quotation marks and citation omitted); *In re Taxotere (Docetaxel) Prods.*

*Liab. Litig. (Thibodeaux)*, 995 F.3d 384, 394 (5th Cir. 2021); *see also In re Taxotere (Docetaxel)*

*Prods. Liab. Litig. (Plaisance)*, No. 18-8086, 2022 WL 644166, at *4 (E.D. La. Feb. 22, 2022)

("[T]he standard of 'knew or should have known' means she 'needed to investigate [docetaxel] as

a potential cause.'" (citing *Thibodeaux*, 995 F.3d at 393)).

Plaintiff's own trial testimony demonstrates the absence of dispute:

> Q.  In the eight years since 2011, since you have lost your hair, you haven't asked any of your doctors as to what was the cause of your hair loss, right?

---

[4]     The Fifth Circuit declined to address Plaintiff's burden-shifting argument in *Thibodeaux* because it was not preserved.  *See In re Taxotere (Docetaxel) Prods. Liab. Litig. (Thibodeaux)*, 995 F.3d 384, 389 (5th Cir. 2021). However, Sanofi's only burden was to show that Plaintiff's claim was facially prescribed.  The burden then shifted to Plaintiff to prove that *contra non valentem* applies to save her otherwise time-barred claim:

> [Defendant,] having established a prima facie case of prescription as to [the claims], the burden of proof that those claims were not prescribed shifted to [Plaintiff].  As the party asserting the benefit of *contra non valentem*, [Plaintiff] bore the burden of proof of its requisite elements and applicability.

*ASP Enters., Inc. v. Guillory*, 2008-2235 (La. App. 1 Cir. 9/11/09), 22 So. 3d 964, 972, *writ denied*, 2009-2464 (La. 1/29/10), 25 So. 3d 834.  Even if that were not the law, however, Plaintiff's burden-shifting argument is irrelevant.  In its opening motion, Sanofi demonstrated that there is no genuine factual dispute on *contra non valentem* because Plaintiff never investigated Taxotere.  As in *Thibodeaux*, the allocation of the burdens is far from dispositive here.

A. No.[5]

That admission is case-dispositive.  Plaintiff failed to reasonably investigate and is charged with all knowledge that such an investigation would have uncovered.  The Fifth Circuit has already determined that a reasonable investigation would have revealed information linking Taxotere to permanent alopecia years before Plaintiff filed suit in 2016.  *Thibodeaux*, 995 F.3d at 394.

Plaintiff argues she should be excused from investigating Taxotere and should not be charged with the knowledge a reasonable investigation would have uncovered because she allegedly asked Dr. Carinder about her hair loss six months after finishing chemotherapy, and he allegedly told Plaintiff her hair would grow back.[6]  But the Fifth Circuit identified consultation with a doctor as one way a plaintiff might reasonably inquire into the *cause* of her injury.  *See Thibodeaux*, 995 F.3d at 393 ("[R]easonable inquiry into the cause of one's persistent hair loss would likely include consultation with doctors.").  Here, there is no dispute that Plaintiff did not ask Dr. Carinder about the *cause* of her persistent hair loss, so the prescriptive period was not even temporarily tolled based on their alleged conversation.[7]

Even if Plaintiff had, *contra non valentem* still would not save her claim.  Under *Durden*, when a plaintiff initially attributes her hair loss to chemotherapy, contrary statements by a doctor will only toll the prescriptive period where the doctor "singularly attribut[es]" plaintiff's persistent

---

[5]     Rec. Doc. 14146-5 at 63 (Ex. C to Sanofi's Mot. for Summ. J. in *Earnest*), Trial Tr. 1865:12−18; *see also id.*, Trial Tr. 1864:18−1865:2 ("Q. So, ma'am, has any doctor at any point ever told you that they believe -- or that they know what the cause of the condition of your hair is?  A. No.  Q. Has any doctor ever said to you, Mrs. Earnest, that they think you have permanent alopecia?  A. No. Because I have never, ever really asked them.").

[6]     That alleged conversation was the key reason this Court previously denied summary judgment, but it was not established at trial.  Dr. Carinder wholly contradicted Plaintiff's trial testimony, testifying that he told Plaintiff her hair loss persisting after six months was "unusual" and "uncommon."  Rec. Doc. 14146-5 at 50 (Ex. C to Sanofi's Mot. for Summ. J. in *Earnest*), Trial Tr. 1587:11−1588:5.  On this record, no reasonable juror could believe Plaintiff's testimony to the contrary.  Nevertheless, whether Plaintiff was told her hair would grow back is irrelevant under the Fifth Circuit's analysis.

[7]     Rec. Doc. 14146-5 at 63 (Ex. C to Sanofi's Mot. for Summ. J. in *Earnest*), Trial Tr. 1865:12−18; *see also id.*, Trial Tr. 1864:18−1865:2.

4

hair loss to something other than chemotherapy "to the exclusion of other potential causes." *Durden*, 860 F. App'x at 893 (alternative diagnosis "makes [no] relevant difference" without such evidence); *see also Plaisance*, 2022 WL 644166, at *1 (Plaintiff's conversation with her doctor did not toll prescription where she "was given no reason to believe her hair loss was attributable to anything other than chemotherapy").

No physician told Plaintiff that her hair loss was caused by anything other than chemotherapy, much less that it was entirely unrelated to chemotherapy.  And Plaintiff admits she always believed her hair loss was attributable to chemotherapy:

> Q.  And at that time [of your conversation with Dr. Carinder], you believed that the condition of your hair or the lack of regrowth was due to chemotherapy, true?
>
> A. Yes.
>
> Q. And after that date, February or March of 2012, you didn't have any other conversations with Dr. Carinder about why your hair wasn't coming back, true?
>
> A. True.[8]

It was unreasonable as a matter of law for Plaintiff to fail to investigate Taxotere when her hair loss persisted, given these undisputed facts.  *Thibodeaux*, 995 F.3d at 394.

Plaintiff asserts her case is like Ms. Kahn's, but Ms. Kahn's doctor told Ms. Kahn that her hair thinning "may be due to her age."[9]  While Sanofi contends this statement was insufficient to toll prescription because Ms. Kahn's doctor did not diagnose her with age-related alopecia "to the exclusion of other potential causes,"[10] regardless, Plaintiff here was never told her hair loss was

---

[8]   Rec. Doc. 14146-5 at 64 (Ex. C to Sanofi's Mot. for Summ. J. in *Earnest*), Trial Tr. 1866:1−8; *see also id.* at 63, Trial Tr. 1865: 12−18 (Plaintiff has never asked any of her doctors about the cause of her hair loss.).

[9]   Rec. Doc. 12805 at 4−5 (Order and Reasons Denying Sanofi's Mot. for Recon. on Statute of Limitations in *Kahn*).

[10]   Rec. Doc. 12916 (Sanofi's Renewed Mot. for Recons. on Statute of Limitations in *Kahn*).  For this reason and others, Sanofi continues to maintain summary judgment was incorrectly denied in *Kahn*, including because Ms. Kahn never investigated Taxotere as a cause of her hair loss.

caused by *anything* other than chemotherapy, nor did she believe it was.  *See Durden*, 860 F. App'x at 893; *Plaisance*, 2022 WL 644166 at *4.  Plaintiff accordingly and as a matter of law did not act reasonably when she failed to investigate Taxotere as a potential cause of her persistent hair loss. Sanofi is entitled to judgment on this basis.[11]

## III.    PLAINTIFF HAS NOT MET HER WARNINGS CAUSATION BURDEN ON SUMMARY JUDGMENT UNDER *PHILLIPS*.

The Court should grant summary judgment on warnings causation for two independent reasons.  First, Dr. Carinder's ultimate prescribing decision would not have changed if the Taxotere label had warned that cases of permanent hair loss had been reported before treating Plaintiff. Second, Dr. Carinder knew about such cases before treating Plaintiff.

### A.    A Different Warning Would Not Have Changed Dr. Carinder's Decision to Prescribe Taxotere to Plaintiff.

As the Fifth Circuit explained in *Phillips*, in order to defeat warnings causation, the plaintiff must identify evidence showing that a nondisclosed risk altered the prescribing physician's risk-benefit analysis, and that the risk was sufficiently high that it would have changed the physician's decision to prescribe the drug.  *See Phillips*, 994 F.3d at 709–10.  Here, Plaintiff has identified no evidence that the additional warning of permanent alopecia has materially altered Dr. Carinder's risk-benefit analysis.  Nor has Plaintiff met her burden to show that the risk was sufficiently high that it would have changed Dr. Carinder's decision to prescribe Taxotere to Plaintiff in 2011.  On this point, it is undisputed that Dr. Carinder's decision would not have changed:

---

[11]    Plaintiff's remaining arguments merit little response.  Other plaintiffs have previously argued that Sanofi's litigation positions on causation preclude judgment, *see, e.g.*, Rec. Doc. 9418 (Pl.'s Opp. to Mot. for Summ. J. in *Kahn*) at 13–16, but this Court has never accepted it, *see, e.g.*, Rec. Doc. 9885 (Order and Reasons in *Kahn*). Indeed, neither Sanofi's litigation positions nor Plaintiff's arguments regarding the state of the science and laypeople's ability to find public information are relevant when the Fifth Circuit has already recognized that information associating Taxotere and permanent hair loss was publicly available as early as 2006—with even more information available by 2010—and would have been located through reasonable investigation. *Thibodeaux*, 995 F.3d at 393.

Q.  Dr. Carinder, the treatment of dose-dense Adriamycin and Cytoxan followed by Taxotere that you prescribed to Mrs. Earnest, that is something that you believed at the time, on March 31, 2011, to be in Mrs. Earnest's best interest?

THE WITNESS:  Yes.

Q.  And you stand by that decision today, sir?

THE WITNESS:  Yes.[12]

In response, Plaintiff relies on Dr. Carinder's deposition testimony that he would prescribe paclitaxel (Taxol) to Plaintiff if she presented to him "today."[13]  But that statement creates no genuine dispute of material fact as to what Dr. Carinder would have prescribed *in 2011*.  Dr. Carinder chose Taxotere over Taxol in 2011 because Taxol was not approved for weekly dose-dense use in 2011 and carried serious side effects that Taxotere did not, including neuropathy and severe infusion reactions.[14]  Because Dr. Carinder stands by his decision to prescribe Taxotere to Plaintiff in 2011, Plaintiff cannot prevail.

Plaintiff also attempts to expand the role of patient-choice beyond the confines of *Phillips* to argue that warnings causation is not satisfied.  To do so, Plaintiff asserts four inferential steps: Dr. Carinder would have warned Plaintiff about permanent hair loss; Plaintiff would have asked for options that did not cause permanent hair loss; Dr. Carinder would have provided those options; and Plaintiff would have selected a non-Taxotere regimen.  Through this argument, Plaintiff essentially asks this Court to apply the chemotherapy-specific framework advanced in *Phillips* that the Fifth Circuit declined to adopt.  *Phillips*, 994 F.3d at 704 n.4.

There are two problems with this argument.

---

[12]   Rec. Doc. 14146-5 at 51 (Ex. C to Sanofi's Mot. for Summ. J. in *Earnest*), Trial Tr. 1612:2–17 (objections and rulings on objections omitted).

[13]   Rec. Doc. 14209 at 22 (Pl.'s Mem. in Opp. to Sanofi's Mot. for Summ. J.).

[14]   Rec. Doc. 14146-5 at 40 (Ex. C to Sanofi's Mot. for Summ. J. in *Earnest*), Trial Tr. 1525:11–14, 1528:21–24.

At the outset, Plaintiff's retrospective testimony about what she would have done is not relevant under *Phillips*. 994 F.3d at 710 ("Although Phillips now argues that her 'appearance is unmistakably important to her,' there is no indication that Phillips investigated or asked about alternatives that might avoid the abnormal hair growth or hair loss."). The proper inquiry is whether Plaintiff's actions at the time of treatment would have "steered the conversation in such a way that [Dr. Carinder] would have changed his prescribing decision had he known that the risk of alopecia associated with Taxotere was potentially permanent rather than temporary." *Id.* At the time of treatment, Plaintiff did not ask about alternatives or any side effects, including hair loss.[15] Instead, Plaintiff told Dr. Carinder, "I am in your hands," and consented to treatment.[16]

But even if the undisclosed warning would have changed Dr. Carinder's risk-benefit analysis and changed his prescribing recommendation, Plaintiff's proposed framework still requires affirmative testimony that Plaintiff would have accepted a non-Taxotere regimen in light of the competing risk-benefit profiles. She has not. Plaintiff's assertion that she would have chosen a different regimen is premised on the false hypothetical that there was a chemotherapy regimen without a risk of permanent hair loss.[17] As this Court is aware, no such regimen exists.[18] Further, when asked what she would have done if presented with all the other chemotherapy

---

[15]  *Id.* at 56, Trial Tr. 1770:21–1771:14.

[16]  *Id.* at 56–57, Trial Tr. 1771:5–8, 1773:21–1774:2.

[17]  *See* Rec. Doc. 14209 at 23 (Pl.'s Mem. in Opp. to Sanofi's Mot. for Summ. J.) (citing Trial Tr. 1734:11–17 ("Q. If Dr. Carinder had told you about the risk of your hair not coming back with Taxotere, what would you have done? A. I'd -- I would have asked him if there was another drug out there that I could have used. Q. And if Dr. Carinder would have given you another option that did not cause permanent hair loss, what would you have done? A. I would have taken it.")).

[18]  Rec. Doc. 14146-5 at 15–17, 21–22, 27 (Ex. C to Sanofi's Mot. for Summ. J. in *Earnest*), Trial Tr. 861:7–10, 873:20–25, 874:19–21, 1030:23–1031:3, 1030:6–14, 1031:11–16, 1058:20–23, 1218:5–9, 1219:4–6, 1219:7–9, 1219:14–16, 1219:17–24.

options in light of their respective risks, Plaintiff testified that she *did not know* what decision she would have made.[19]  Without more, Plaintiff's statement cannot create a material dispute.

### B.      Dr. Carinder Knew of the Risk Associated with Taxotere.

Plaintiff's Opposition does not dispute that Dr. Carinder was aware of "cases of permanent hair loss" associated with Taxotere from two sources—the *Nabholtz* Article and one of his patients from 2005—before treating Plaintiff.[20]  Plaintiff suggests that Dr. Carinder might have read the *Nabholtz* Article after treating her.  But she omits his full testimony.  Dr. Carinder testified he did not share data from the *Nabholtz* Article with Plaintiff at the time of treatment because of the regimen at issue, not because he had not read it: "[The regimen used in the *Nabholtz* Article] would never be a regimen I would use with somebody with metastatic disease. [] It's too harsh."[21]

Plaintiff also asserts that Dr. Carinder's 2005 patient is not relevant to Dr. Carinder's knowledge of the risk because the case was "anecdotal."  Anecdotal cases, however, are sufficient to provide a prescribing physician with knowledge of a given risk.  *See, e.g.*, *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Gahan)*, 859 F. App'x 692, 693 (5th Cir. 2021) (observing that doctor had "actual knowledge that Taxotere could cause permanent hair loss because she knew three of her patients had suffered permanent hair loss after taking the drug").[22]

---

[19]   Rec. Doc. 14146-2 at 18 & n.44 (Defs.' Mem. in Supp. of Mot. for Summ. J.).

[20]   Rec. Doc. 14146-5 at 47–48 (Ex. C to Sanofi's Mot. for Summ. J. in *Earnest*), Trial Tr. 1554:11–1556:10.

[21]   *Id*. at 48, Trial Tr. 1556:16–1557:7.

[22]   Plaintiff's citations to other portions of Dr. Carinder's testimony are unavailing.  Plaintiff cites testimony that Dr. Carinder was unaware of a risk of permanent hair loss with Taxotere in *significant patient populations*.  *See* Rec. Doc. 14209-2 at ¶ 10 (Pl.'s Suppl. Statement of Materials Facts That Present Genuine Issues).  The necessary predicate is missing: Plaintiff has no evidence that permanent alopecia actually occurs in a "significant patient population."  Plaintiff also asserts that Dr. Carinder testified that he was not aware of the risk of permanent hair loss from using Taxotere in 2011.  *Id.* at ¶ 30.  Dr. Carinder's testimony was in the context of whether he believed *Sanofi* had warned of the risk through the Taxotere label or other avenues in 2011.  But the uncontroverted record establishes that Dr. Carinder knew about the risk from the literature and his clinical practice.

Dr. Carinder was aware of the risk of persistent hair loss associated with Taxotere before he treated Plaintiff, so Sanofi had no duty to warn Dr. Carinder. *See* La. Rev. Stat. Ann. § 9:2800.57B(2). Dr. Carinder's awareness of the risk also means that Sanofi's alleged inadequate warning could not have been the cause of Plaintiff's injury. *See Phillips*, 994 F.3d at 709.

## IV. PLAINTIFF'S CAUSATION EVIDENCE IS INSUFFICIENT.

Plaintiff also contends the Court must deny summary judgment on general and specific causation because there has been no change in the applicable law since the Court's previous rulings.[23] There has been a trial, however, and the now more-expansive record may be considered in ruling on summary judgment. *See Kelley*, 992 F.2d at 1414 n.12.

Dr. Feigal testified conclusively at trial, for example, that she could not identify which chemotherapy medication was causing cases of PCIA in the medical literature and tests she relied on to find a causal relationship.[24] Plaintiff does not identify evidence from which a reasonable jury could find for Plaintiff on general causation in light of this testimony.[25] Also at trial, Dr. Tosti stated conclusively, in contrast to her vague deposition testimony, that she could not say whether Plaintiff's alopecia could improve—*i.e.*, not be permanent—with medication or treatment because Plaintiff never tried either.[26] Plaintiff likewise failed to explain how a reasonable jury could find that she suffered from permanent hair loss given Dr. Tosti's testimony.

## CONCLUSION

For these reasons, the Court should grant Sanofi's motion for summary judgment.

---

[23]   Rec. Doc. 14209 at 24−25 (Pl.'s Mem. in Opp. to Sanofi's Mot. for Summ. J).

[24]   Rec. Doc. 14146-5 at 30 (Ex. C to Sanofi's Mot. for Summ. J. in *Earnest*), Trial Tr. 1235:22−1236:22 ("It could be either A or C or both" that caused the permanent alopecia in the FAC arm of TAX 316.).

[25]   *See generally* Rec. Doc. 14209 (Pl.'s Mem. in Opp. to Sanofi's Mot. for Summ. J).

[26]   Rec. Doc. 14146-5 at 23 (Ex. C to Sanofi's Mot. for Summ. J. in *Earnest*), Trial Tr. 1102:5−8 ("Q. All right. Well, Doctor, we can agree that we can't say if Mrs. Earnest could have hair regrowth, some hair regrowth, if she hasn't tried any treatment; is that fair?  A. I agree."); *id.*, Trial Tr. 1101:5−20.

Respectfully submitted,

  /s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Jon Strongman
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com
jstrongman@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*