# EXHIBIT A

```
 1                    UNITED STATES DISTRICT COURT
 2                    EASTERN DISTRICT OF LOUISIANA
 3
 4   IN RE:  TAXOTERE (DOCETAXEL)    *       16-MD-2740
     PRODUCTS LIABILITY LITIGATION   *
 5                                   *       Section H
                                     *
 6   Relates to:  All Cases          *       April 28, 2022
                                     *
 7   * * * * * * * * * * * * * * * * *
 8
 9                    SHOW CAUSE HEARING BEFORE
                 THE HONORABLE JANE TRICHE MILAZZO
10                  UNITED STATES DISTRICT JUDGE
11
     Appearances:
12
13   For the Plaintiffs:          Gainsburgh Benjamin David Meunier
                                    & Warshauer, LLC
14                                BY:  M. PALMER LAMBERT, ESQ.
                                       CLAIRE E. KREIDER, ESQ.
15                                1100 Poydras Street, Suite 2800
                                  New Orleans, Louisiana 70163
16
17   For the Defendants:          Irwin Fritchie Urquhart
                                    & Moore, LLC
18                                BY:  KELLY E. BRILLEAUX, ESQ.
                                  400 Poydras Street, Suite 2700
19                                New Orleans, Louisiana 70130
20
     For the Defendants:          Greenberg Traurig, LLP
21                                BY:  NICHOLAS A. INSOGNA, ESQ.
                                  One International Place
22                                Suite 2000
                                  Boston, Massachusetts 02110
23
24
25
```

10:20

1   is Jason Fraxedas with the Maher Law Firm.
2           THE COURT: We have Jessica Epperson. Do you have
3   product ID?
4           MR. FRAXEDAS: Your Honor, we do not have positive
5   product ID of manufacturer. However, Ms. Epperson lives in
6   California and at all relevant times was a citizen of
7   California, her use of docetaxel occurred in California, and
8   her injury also occurred in California. The substantive law
9   that applies to her claim is California law, which recognizes
10  innovator liability.
11          MS. BRILLEAUX: Your Honor, we have already, I think,
12  noted our objection to any innovator liability claims.
13          THE COURT: I'm going to defer because I'm not in a
14  position to respond one way or the other about that. I'm just
15  going to defer it. We will have briefing on this and I will
16  make a decision, but this does not mean that you have survived
17  the day, just so you know. For purposes of this hearing, I'm
18  going to defer.
19          MR. FRAXEDAS: Thank you, Your Honor.
20          THE COURT: Okay. The Williams Hart firm.
21  Mr. Abramson, are you on the line?
22          MR. ABRAMSON: Yes, Your Honor, I am. Brian Abramson
23  with Williams Hart.
24          THE COURT: Okay. I believe the case before me is
25  Tina Davis.

10:22

```
 1          MR. ABRAMSON:  Yes, Your Honor.  We submitted on
 2   March 9 a letter detailing our efforts to obtain product ID.
 3   We feel like we do have product ID as to at least three of the
 4   six cycles that Ms. Davis received from the Nevada Cancer
 5   Center.  The way we get there is based on defendant fact
 6   sheets.
 7               There were five defendant fact sheets that were
 8   filed in this case:  Sun Pharmacy, Accord, Sanofi, Hospira, and
 9   Sandoz.  Hospira and Sandoz identified that they did supply
10   this cancer center with docetaxel during the relevant time
11   period.  Sandoz did not start shipping any docetaxel to this
12   facility, though, until right before the fourth infusion that
13   Ms. Davis would have received.  So, therefore, Hospira is
14   definitely the manufacturer of the first three infusions, and
15   this would kind of go to the partial PID where we would be
16   naming Hospira and Sandoz.
17          MR. INSOGNA:  Your Honor, if I may, because I think
18   this issue may come up with a number of plaintiffs.  Just so
19   that we are clear, the only evidence they have is a defendant
20   fact sheet where the defendants said, based on their
21   distribution records, some of their docetaxel made it to this
22   plaintiff's facility.  There's nothing tying it to this
23   particular plaintiff.  It's been defendants' position
24   consistently throughout the litigation that the defendant fact
25   sheet is not evidence of product identification.
```

10:23

1    **THE COURT:** I'm confused.  Do you have information
2    that she was administered docetaxel?  Do you have definitive
3    proof of that?
4    **MR. ABRAMSON:** Yes, Your Honor, we do.  We have
5    records from the oncology center that details the six cycles
6    of -- they label it "Taxotere," but we just have the J codes.
7    We don't have the NDCs, but we have the dates of infusion.
8    I understand what defense counsel is saying, but
9    this is their words, their documents.  There are only two
10   possible manufacturers who could have supplied it, and only one
11   of them could have been supplying it at the time she was
12   infused the first three cycles of her docetaxel.
13   **MS. CALLSEN:** Your Honor, there are other
14   manufacturers that manufacture docetaxel under an ANDA, an
15   Abbreviated New Drug Application.  They are not involved in
16   this litigation, and it's very possible that they could have
17   supplied the facility too.  Our bottom line is just evidence
18   that certain manufacturers may have shipped product to their
19   particular facility doesn't establish that any particular
20   plaintiff actually received a product from a particular
21   manufacturer.
22   **THE COURT:** Is there any evidence that you have that
23   the only manufacturer supplying that infusion center is the
24   named defendant?
25   **MR. ABRAMSON:** I'm not sure who else would have been

```
10:25   1   supplying it.  We have five --
        2              THE COURT:  Did you ask the infusion center if they
        3   had a limited --
        4              MR. ABRAMSON:  Oh, of course.  Yes.  Our letter
        5   details in six pages our five-year efforts to obtain PID for
        6   Ms. Davis.  We have been through countless avenues.  We have
        7   asked for everything that -- the Nevada Cancer Center was
        8   acquired in June 2013.
        9              THE COURT:  I really just want the answer to one
       10   question.  Do you have evidence that this center only purchased
       11   docetaxel from a named defendant?
       12              MR. ABRAMSON:  They don't have any of the NDC codes.
       13   I don't know how we could get them.
       14              THE COURT:  Well, I thought perhaps from procurement
       15   or the pharmacy department to say, "This is the only docetaxel
       16   we kept on hand."
       17              MR. ABRAMSON:  Well, we just have the J code that
       18   said -- I mean, their J code says "Taxotere" on their pharmacy
       19   records.  HealthCare Partners, once acquired, they didn't
       20   maintain any of the records from Nevada Cancer Center.  We feel
       21   that it's at least a fact issue as to Hospira and Sandoz, and
       22   especially Hospira where we know from the -- I mean, if the
       23   defendant fact sheets are going to be worth anything, they have
       24   to be able to provide some evidence that at least as to these
       25   three cycles they were the manufacturer.
```

10:27

           **MR. INSOGNA:** Your Honor, that can't possibly be the case because the defendants' internal records show if we shipped to a facility, but also show if we shipped to a distributor who may have shipped to other facilities. There were five ANDAs on the market that aren't accounted for in the defendant fact sheets. There are too many unknowns for that to be evidence.

           **THE COURT:** I think the problem I have is -- I will tell you. If you had told me that you had evidence from this cancer center that the sole supplier was Hospira and you had evidence that she received docetaxel from this facility, I could make that. I think for you to say Hospira supplied docetaxel to these various facilities is insufficient for me to then make that leap that this is the proper defendant.

           Mr. Lambert, I figured you had something to say.

           **MR. LAMBERT:** Yes. Your Honor, I just would add to this particular circumstance that it does appear that there are some fact issues. We were provided early on a marketing chart of when each defendant began selling their medication. There's facts there that would need to be evaluated as to whether this could be a more-likely-than-not determination as to Hospira.

           To us, that type of a situation is a little different than somebody that just doesn't have any information at all, particularly in the circumstance where I think Mr. Abramson was saying that the facility was sold and there

```
10:28   1  may not be all of the information on the facility side.
        2          THE COURT:  But here we are.  The problem is this
        3  lawsuit was filed in 2017 and the best we have is a report that
        4  she received docetaxel, that they referred to as "Taxotere,"
        5  and that this was a supplier of docetaxel in that area.  Do we
        6  know that this was the --
        7          MR. LAMBERT:  Well, I can't speak for Mr. Abramson.
        8  He would need to say what subpoena responses he has received.
        9  He has a J code which is a hospital code that identifies
       10  docetaxel specifically.
       11          THE COURT:  I understand that.  I understand this
       12  lady received docetaxel, but we have to have a defendant that
       13  we named to sue.
       14          MR. LAMBERT:  He has a defendant fact sheet that
       15  identifies this particular facility as receiving their
       16  docetaxel at that time, and they are the only one of the
       17  defendants in this case that --
       18          THE COURT:  Were they the only manufacturers of
       19  docetaxel at the time?
       20          MR. LAMBERT:  Well, off the top of my head --
       21          THE COURT:  Had the generics come on the market at
       22  that point?
       23          MR. LAMBERT:  I'm trying to find that out right now,
       24  but I do think that --
       25          THE COURT:  I'll roll this over to the next time, but
```

10:30

1   if the generics were in the market at that time, then we are
2   done.
3           MS. CALLSEN:  They were in the market at that time,
4   Your Honor.  Mr. Lambert is referring to the market share.  We
5   provided that to plaintiffs before we even negotiated CMO 12A
6   as a guide for them to help them figure out which was the
7   possible defendant that could be.  This has been known to
8   plaintiffs.  I remember working that out in 2017 --
9           THE COURT:  Part of my problem is:  What's the
10  endgame here?  Are you going to try a case against a defendant
11  that you think may or may not have been there?
12          MS. CALLSEN:  It's not our burden --
13          MR. LAMBERT:  Again, I don't want to speak for
14  Mr. Abramson, but --
15          THE COURT:  Well, especially since I don't think this
16  is -- oh, it is Mr. Abramson.  We finished with Mr. Fraxedas.
17          MR. LAMBERT:  If his client wants to dismiss all the
18  other defendants where it's unclear and wants to proceed
19  against one defendant, where the jury may decide at the end of
20  the day it's not manufactured by that defendant, then that's
21  the risk that it seems that they are willing to take.  Maybe
22  Mr. Abramson has --
23          MR. ABRAMSON:  Your Honor, this is Brian Abramson
24  again.  We are willing to do that.  We will dismiss everyone
25  but Hospira.  They were the named defendant.  We believe we

1  have a fact issue as to whether or not it was Hospira's
2  docetaxel. We believe that should survive.
3              **MS. CALLSEN:** It's not defendants' burden to
4  establish their case.
5              **THE COURT:** It's not. I don't think they have
6  shifted the burden to you, Ms. Callsen. What he is saying is
7  you provided the information that you were supplying it at that
8  time, nobody else, none of the other named defendants. We'll
9  dismiss those and let a jury decide whether or not she received
10 Hospira. I don't know if the facility was receiving docetaxel
11 from any other source, and I would think that's something
12 that -- here we are. It's 2017 and we haven't figured that out
13 yet.
14             **MR. INSOGNA:** I think, Your Honor, the key piece,
15 though, that Mr. Abramson said earlier is they served a
16 subpoena, and the response that came back was the facility
17 doesn't keep the records. The intent was not to get into the
18 sufficiency of any evidence today because there's another pile
19 of those cases we will have to deal with, but ultimately he is
20 not going to be able the clear that hurdle either.
21             **MS. CALLSEN:** Your Honor, the dismissal order as
22 drafted allows plaintiffs to file a 60(b) motion if they at
23 some point get product ID or have more definitive evidence.
24 It's just been going on for so long. As Mr. Insogna has said,
25 they have been on notice for so long --

10:33  1           **THE COURT:** Okay. I'm going to dismiss this without
2    prejudice. If you can come up with something more,
3    Mr. Abramson, we will do it, but it will be dismissed without
4    prejudice.
5           **MR. INSOGNA:** Your Honor, some good news for you.
6    The next two cases, Avyline Benson and Princess Nelson, are not
7    intending to object today, the McCollum firm.
8           **THE COURT:** All right. Those will be dismissed with
9    prejudice.
10                  The Showard Law Firm.
11          **MR. INSOGNA:** Your Honor, these two cases with the
12   Showard Law Firm are cases where we did not receive any
13   response by March 15. I don't know the basis for plaintiffs'
14   objection, but there has not been activity on MDL Centrality
15   since December 2019.
16          **THE COURT:** Mr. Elliott? Is anybody here on behalf
17   of the Showard Law Firm?
18          **MR. LAMBERT:** Star six, unmute.
19          **THE COURT:** Star six to unmute. Star six to unmute.
20   Anyone here on behalf of the Showard Law Firm?
21          **MS. SULKIN:** Your Honor, this is Melanie Sulkin from
22   Bachus & Schanker.
23          **THE COURT:** Please proceed.
24          **MS. SULKIN:** Your Honor, I will be appearing for the
25   cases for the Showard Law Firm, Kagan Legal Group, and then