# EXHIBIT D

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

***************************************************************
IN RE:  TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

                             Civil Action No. 16-MD-2740
                             Section "H"(5)
                             New Orleans, Louisiana
                             November 8, 2021

THIS CASE RELATES TO ELIZABETH KAHN 16-CV-17039
***************************************************************

                    TRANSCRIPT OF STATUS CONFERENCE
            HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                    UNITED STATES DISTRICT JUDGE
                       DAY 1 AFTERNOON SESSION

APPEARANCES:

FOR THE PLAINTIFF:

                             DARIN L. SCHANKER
                             BACHUS & SCHANKER
                             1899 WYNKOOP STREET
                             SUITE 700
                             DENVER, CO 80202

                             MATTHEW PALMER LAMBERT
                             GAINSBURGH BENJAMIN DAVID MEUNIER
                             & WARSHAUER
                             1100 POYDRAS STREET
                             SUITE 2800
                             NEW ORLEANS, LA 70163


                             CHRISTOPHER COFFIN
                             PENDLEY BAUDIN & COFFIN
                             1515 POYDRAS STREET
                             NEW ORLEANS, LA 70112


                             KAREN BARTH MENZIES
                             GIBBS LAW GROUP
                             400 CONTINENTAL BOULEVARD
                             EL SUGUNDO, CA 90245
```

```
04:19:15PM   1      A.   I was the -- yes, the GSO for postmarketing.
04:19:19PM   2      Q.   And Dr. Palatinsky was the GSO for...
04:19:23PM   3      A.   Clinical development.
04:19:25PM   4      Q.   And I understand the distinction by title, but tell
04:19:30PM   5   me what the distinction is by -- or was by substantive job
04:19:35PM   6   duty.
04:19:36PM   7      A.   Taxotere in an active clinical development program,
04:19:40PM   8   and Emanuel was working on the safety of the -- monitoring of
04:19:44PM   9   the safety of the clinical trials, as well as preparing the
04:19:48PM  10   regulatory submissions for new indications.  The division
04:19:58PM  11   continued up to the higher levels, so our managers were also
04:20:02PM  12   different.
04:20:02PM  13      Q.   From an importance perspective, it's important to --
04:20:06PM  14   from a global safety officer, a safety profile examiner
04:20:11PM  15   perspective, you're looking for, are there new safety issues
04:20:15PM  16   that we have not previously identified, or are there new
04:20:20PM  17   characteristics of adverse events that we know exist, true?
04:20:24PM  18      A.   Well, I would say I would be more concerned with a
04:20:27PM  19   new event that was reasonably suspected to be related or
04:20:32PM  20   caused by the drug.  I would be more concerned -- if I had to
04:20:35PM  21   prioritize my resources, I would look at issues that impact
04:20:40PM  22   public health.  And those are the regulatory requirements.
04:20:47PM  23   We have -- today, there is responsibility to monitor.  But I
04:20:53PM  24   guess what you were alluding to is the change in the nature
04:20:58PM  25   of the listed event.  And we do that.
```

| | | |
|---|---|---|
| 04:21:02PM | 1 | Q. Right. |
| 04:21:03PM | 2 | A. But we do have to prioritize to be able to |
| 04:21:06PM | 3 | communicate the impactful safety information to physicians |
| 04:21:10PM | 4 | and patients so we can keep them safe and have safe use of |
| 04:21:15PM | 5 | the drug. |
| 04:21:17PM | 6 | Q. But when you say "pharmacovigilance," with respect |
| 04:21:23PM | 7 | to -- |
| 04:21:23PM | 8 | A. That's the definition of pharmacovigilance, is |
| 04:21:26PM | 9 | monitoring that. |
| 04:21:27PM | 10 | Q. That's the responsibility, though, of the company who |
| 04:21:29PM | 11 | is putting the drug on the market, correct, to engage in the |
| 04:21:34PM | 12 | pharmacovigilance that you just defined? |
| 04:21:36PM | 13 | A. The company does that, as well as head authorities. |
| 04:21:40PM | 14 | They monitor as well. |
| 04:21:41PM | 15 | Q. As part of the safety issue or safety signal |
| 04:21:46PM | 16 | detection process, when it comes to the review of ICSRs, that |
| 04:22:00PM | 17 | is a routine practice inside the company; is that right? |
| 04:22:04PM | 18 | A. Every company reviews ICSRs. |
| 04:22:06PM | 19 | Q. Well, every drug company, right? |
| 04:22:08PM | 20 | A. Right. Drug company. |
| 04:22:10PM | 21 | Q. Right. I'm going to hand you what I have marked as |
| 04:22:14PM | 22 | Exhibit 2 to the deposition. |
| 04:22:16PM | 23 | A. I saw the document. |
| 04:22:17PM | 24 | Q. And it looks like it's dated March -- Friday, March |
| 04:22:23PM | 25 | 3, 2006. Do you see that? |

```
 1                      UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF LOUISIANA
 2

 3    ****************************************************************

 4    IN RE:  TAXOTERE
      (DOCETAXEL) PRODUCTS
 5    LIABILITY LITIGATION

 6                                    CIVIL ACTION NO. 16-MD-2740 "H"
                                      NEW ORLEANS, LOUISIANA
 7                                    TUESDAY, NOVEMBER 9, 2021, 8:15 A.M.

 8    THIS CASE RELATES TO
      ELIZABETH KAHN,
 9    CASE NO. 16-CV-17039

10    ****************************************************************

11
                            DAY 2  MORNING SESSION
12                   TRANSCRIPT OF JURY TRIAL PROCEEDINGS
                 HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
13                       UNITED STATES DISTRICT JUDGE

14
      APPEARANCES:
15

16
      FOR THE PLAINTIFFS:         GAINSBURGH BENJAMIN DAVID
17                                MEUNIER & WARSHAUER
                                  BY:  M. PALMER LAMBERT, ESQ.
18                                1100 POYDRAS STREET, SUITE 2800
                                  NEW ORLEANS, LOUISIANA 70163
19

20                                PENDLEY BAUDIN & COFFIN
                                  BY:  CHRISTOPHER L. COFFIN, ESQ.
21                                     JESSICA A. PEREZ, ESQ.
                                  1515 POYDRAS STREET, SUITE 1400
22                                NEW ORLEANS, LOUISIANA 70112

23
                                  GIBBS LAW GROUP
24                                BY:  KAREN B. MENZIES, ESQ.
                                  400 CONTINENTAL BOULEVARD
25                                6TH FLOOR
                                  EL SUGUNDO, CALIFORNIA 90245
```

*OFFICIAL TRANSCRIPT*

| | | |
|---|---|---|
| 11:08:39 | 1 | Q. Ms. Avila, what happens in terms of dissemination of |
| 11:08:43 | 2 | information if a side effect is not listed in the package |
| 11:08:46 | 3 | insert? |
| 11:08:48 | 4 | MR. STRONGMAN: Objection, calls for speculation. |
| 11:08:50 | 5 | THE COURT: I think this has already been asked and |
| 11:08:53 | 6 | answered. |
| 11:08:56 | 7 | MR. BACHUS: Okay. I'll move on. |
| 11:08:58 | 8 | EXAMINATION BY MR. BACHUS: |
| 11:08:58 | 9 | Q. Ms. Avila, how did you first hear about Taxotere and PCIA? |
| 11:09:04 | 10 | A. I first heard about it at a national meeting. It was in |
| 11:09:14 | 11 | January of 2006. We had our big hoorah meeting and there was a |
| 11:09:22 | 12 | session where a girl -- it was where you can ask questions. |
| 11:09:26 | 13 | The marketing and higher-ups were conducting an open session |
| 11:09:31 | 14 | where you can ask questions of the company, and a girl got up |
| 11:09:37 | 15 | and brought to the attention of the company that she had heard |
| 11:09:46 | 16 | at San Antonio Breast Conference that an abstract on permanent |
| 11:09:53 | 17 | hair loss was presented at that conference and that her |
| 11:09:56 | 18 | physician had also called medical information with a report of |
| 11:10:00 | 19 | permanent hair loss and also that she knew that the guy who |
| 11:10:05 | 20 | wrote the abstract had reported it and she wanted to know what |
| 11:10:05 | 21 | the company was doing about it. |
| 11:10:08 | 22 | MR. STRONGMAN: Objection, narrative. Also, |
| 11:10:08 | 23 | (indiscernible). |
| 11:10:08 | 24 | THE COURT: Okay. All right. |
| 11:10:16 | 25 | THE WITNESS: That's when I first heard about it, was |

*OFFICIAL TRANSCRIPT*

| | | |
|---|---|---|
| 11:10:18 | 1 | at that meeting from that question that that girl asked. |
| 11:10:18 | 2 | THE COURT: Okay. |
| 11:10:18 | 3 | EXAMINATION BY MR. BACHUS: |
| 11:10:23 | 4 | Q. And the abstract, was that the Sedlacek abstract? |
| 11:10:27 | 5 | A. Yes. |
| 11:10:27 | 6 | Q. And this was a meeting that you attended? |
| 11:10:32 | 7 | A. Yes. |
| 11:10:35 | 8 | Q. What happened next? How did management react to the |
| 11:10:40 | 9 | question? |
| 11:10:43 | 10 | A. It was kind of strange. There were -- it was a little |
| 11:10:47 | 11 | uncomfortable, like, oh, we're investigating. You know, but |
| 11:10:51 | 12 | what they didn't say was, you guys are trained that Taxotere |
| 11:10:55 | 13 | causes permanent hair loss, so it's not a big deal. |
| 11:10:57 | 14 | MR. STRONGMAN: Objection. |
| 11:10:59 | 15 | THE COURT: I think the question is: "What did they |
| 11:11:02 | 16 | say?" |
| 11:11:02 | 17 | MR. BACHUS: Thank you, Your Honor. |
| 11:11:02 | 18 | EXAMINATION BY MR. BACHUS: |
| 11:11:07 | 19 | Q. What was the reaction or statement that came from |
| 11:11:10 | 20 | management when PCIA was brought up by a sales rep at this |
| 11:11:15 | 21 | national meeting? |
| 11:11:15 | 22 | A. That we could not talk about it because it's not in our |
| 11:11:20 | 23 | package insert. |
| 11:11:31 | 24 | Q. How, if at all, would your ability to communicate with |
| 11:11:39 | 25 | doctors about PCIA have been different had the information been |

*OFFICIAL TRANSCRIPT*

| | |
|---|---|
| 11:11:45 1 | included after Sedlacek in the package insert? |
| 11:11:52 2 | MR. STRONGMAN: Objection. We covered all of this |
| 11:11:54 3 | already. It's cumulative and speculative as well. |
| 11:11:58 4 | THE COURT: It's cumulative. |
| 11:12:03 5 | EXAMINATION BY MR. BACHUS: |
| 11:12:03 6 | Q. You mentioned a medical science liaison. Just in your |
| 11:12:08 7 | answer a moment ago, you mentioned something about medical |
| 11:12:12 8 | information? |
| 11:12:12 9 | A. Yes. |
| 11:12:13 10 | Q. Can you explain -- what is that? What is "medical science |
| 11:12:16 11 | liaison"? |
| 11:12:16 12 | A. It's a position within the company that is allowed to |
| 11:12:21 13 | speak to physicians about off-label information. |
| 11:12:26 14 | Q. So, as a sales rep, you can't talk about what's not in the |
| 11:12:31 15 | label. Medical science liaison is a different group? |
| 11:12:34 16 | A. Yes. |
| 11:12:35 17 | Q. And how did the role of the medical science liaison |
| 11:12:40 18 | interface with the role of a sales rep? |
| 11:12:43 19 | A. We were -- since we were the face of the company and the |
| 11:12:48 20 | medical science liaisons often didn't have the relationships, |
| 11:12:53 21 | we were allowed to introduce the medical sales liaisons to the |
| 11:12:58 22 | physicians and facilitate their meetings, but then we would |
| 11:13:00 23 | have to step out when they were talking about the off-label |
| 11:13:03 24 | information. |
| 11:13:03 25 | Q. You were not privy or participating in those |

*OFFICIAL TRANSCRIPT*

```
                          UNITED STATES DISTRICT COURT
                          EASTERN DISTRICT OF LOUISIANA


****************************************************************

IN RE:  TAXOTERE
(DOCETAXEL) PRODUCTS
LIABILITY LITIGATION

                                     CIVIL ACTION NO. 16-MD-2740 "H"
                                     NEW ORLEANS, LOUISIANA
                                     NOVEMBER 12, 2021, 8:00 A.M.

THIS CASE RELATES TO
ELIZABETH KAHN,
CASE NO. 16-CV-17039

****************************************************************


                         DAY 4  MORNING SESSION
                  TRANSCRIPT OF JURY TRIAL PROCEEDINGS
               HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                         UNITED STATES DISTRICT JUDGE


APPEARANCES:


FOR THE PLAINTIFFS:       GAINSBURGH BENJAMIN DAVID
                          MEUNIER & WARSHAUER
                          BY:  M. PALMER LAMBERT, ESQ.
                          1100 POYDRAS STREET, SUITE 2800
                          NEW ORLEANS, LOUISIANA 70163


                          PENDLEY BAUDIN & COFFIN
                          BY:  CHRISTOPHER L. COFFIN, ESQ.
                               JESSICA A. PEREZ, ESQ.
                          1515 POYDRAS STREET, SUITE 1400
                          NEW ORLEANS, LOUISIANA 70112


                          GIBBS LAW GROUP
                          BY:  KAREN B. MENZIES, ESQ.
                          400 CONTINENTAL BOULEVARD
                          6TH FLOOR
                          EL SUGUNDO, CALIFORNIA 90245
```

*OFFICIAL TRANSCRIPT*

1    global safety officer?
2    A.   The main occupational duty of the global safety officer is
3    to identify safety signals and to monitor them, to characterize
4    them, to have them described, to have them part of the
5    risk-management plan.
6    Q.   And when you indicate that the main occupational duty is
7    to identify safety signals, you're referring to safety signals
8    arising from the -- whatever pharmaceutical product that you're
9    responsible for.  So between 2006 -- May 2006 and December of
10   2013, one of your primary duties was to seek and identify
11   safety signals related to docetaxel?
12   A.   It was cer- --
13   Q.   I'm sorry, what was the answer?
14   A.   It was certainly my duty to -- as I just explained, to
15   characterize and analyze safety signals for any projects that I
16   had assigned.
17   Q.   If and when a safety signal were identified, as part of
18   your occupational duties, did you have further occupational
19   duties in terms of what to do once one was identified?
20   A.   Yes.  The characterization of the safety signal includes
21   an analysis of what are the characteristics of the safety
22   signal, what is the role of the drug, and what to do in regards
23   to minimizing the particular risk, and how to communicate it to
24   the medical community.
25   Q.   What role would you play as a global safety officer in

*OFFICIAL TRANSCRIPT*

11:27:10  1   determining the communication?
11:27:17  2   A.   Determining the communication is not the role of the
11:27:19  3   global safety officer.  The global safety officer provides the
11:27:21  4   scientific evidence that establishes where -- whether there is
11:27:24  5   a causal relationship between the exposure to a particular drug
11:27:28  6   and the onset of a particular adverse event.
11:27:32  7         But the reality, how to communicate it, it's a much
11:27:35  8   more complex process in the real world that requires
11:27:38  9   participation of different groups within the company, and
11:27:41 10   interactions that sometimes are very complex and repeated over
11:27:45 11   time with regulatory authorities.
11:27:47 12   Q.   What I'd like to understand from you is at what point in
11:27:53 13   the process of the communication -- of an identified safety
11:28:01 14   risk, at what point in the process does the role of the
11:28:05 15   global safety officer end, and that role of communication is
11:28:12 16   picked up by somebody else?  Whether it's in regulatory or
11:28:15 17   someplace -- other place inside the company.
11:28:18 18   A.   As soon as the signal is medically characterized, that's
11:28:22 19   what -- the place where the role of the GSO as the single actor
11:28:26 20   in this process usually stops.
11:28:28 21   Q.   When you use the terminology "medically characterized,"
11:28:39 22   what are you referring to?
11:28:42 23   A.   Well, the global safety officer, you have to understand,
11:28:45 24   is the medical expert within the company.  In other words,
11:28:51 25   there are no other functions outside of pharmacovigilance in

*OFFICIAL TRANSCRIPT*

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


*************************************************************
IN RE:   TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

                              Civil Action No. 16-MD-2740
                              Section "H"(5)
                              New Orleans, Louisiana
                              November 12, 2021

THIS CASE RELATES TO ELIZABETH KAHN 16-CV-17039
*************************************************************

                    TRANSCRIPT OF JURY TRIAL
          HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                   UNITED STATES DISTRICT JUDGE
                     DAY 4 AFTERNOON SESSION

APPEARANCES:

FOR THE PLAINTIFF:

                              MATTHEW PALMER LAMBERT
                              GAINSBURGH BENJAMIN DAVID MEUNIER
                              & WARSHAUER
                              1100 POYDRAS STREET
                              SUITE 2800
                              NEW ORLEANS, LA 70163


                              CHRISTOPHER COFFIN
                              PENDLEY BAUDIN & COFFIN
                              1515 POYDRAS STREET
                              NEW ORLEANS, LA 70112


                              KAREN BARTH MENZIES
                              GIBBS LAW GROUP
                              400 CONTINENTAL BOULEVARD
                              EL SUGUNDO, CA 90245


                              DARIN L. SCHANKER
                              BACHUS & SCHANKER
                              1899 WYNKOOP STREET
                              SUITE 700
                              DENVER, CO 80202

                        ─OFFICIAL TRANSCRIPT─
                             Page 937
```

1  02:02:37PM  chemotherapy-induced alopecia?
2  02:02:39PM  **A.** Yes, I did.
3  02:02:40PM  **Q.** And what is your opinion?
4  02:02:41PM  **A.** My opinion is that the label does not -- is not
5  02:02:44PM  adequate with its description of alopecia, specifically not
6  02:02:48PM  having a warning at the time period I looked, which is for
7  02:02:53PM  this case, before 2008.
8  02:02:56PM  **Q.** Okay. Let's step back just a moment and start, as
9  02:03:02PM  they say, at the beginning. What is an "adequate label"?
10 02:03:07PM  **A.** So the FDA regulations and guidance on labeling, as
11 02:03:13PM  well -- documents I deal with every day -- set forth the
12 02:03:15PM  standard being that in order to be adequate a label must be
13 02:03:18PM  truthful, tell the truth, be accurate, and not misleading.
14 02:03:23PM  So that means that the label has to set forth what the
15 02:03:27PM  company knows about the drug and when it knows it. So that's
16 02:03:33PM  another part of the kind of the rules of the road. You have
17 02:03:36PM  to be truthful about what you know and you have to let the --
18 02:03:39PM  let the doctors and the patients know about it when it
19 02:03:43PM  occurs. So you find something out, it's not in the label, it
20 02:03:47PM  meets the labeling standard -- and I think we'll talk about
21 02:03:50PM  that in a minute, about how you know when it has to go in --
22 02:03:50PM  **Q.** Right.
23 02:03:53PM  **A.** But once you determine it does and you know about it
24 02:03:55PM  as a company, you're required to do that.
25 02:03:57PM  **Q.** Okay. I'm going to try to put that in plain English.

```
03:01:15PM   1      A.   So it's not a warning.
03:01:16PM   2      Q.   And so is there any code of federal regulation that
03:01:20PM   3   says that -- that you're aware of, that says that the
03:01:24PM   4   publication by somebody other than Sanofi of a full-length
03:01:30PM   5   article or an abstract is in fact Sanofi's warning?
03:01:33PM   6      A.   No.  The company has a responsibility to take their
03:01:41PM   7   label and make sure it continues to be up-to-date and
03:01:45PM   8   accurate with what they know.  And that is regardless of
03:01:47PM   9   whether there's a paper in the literature, they have their
03:01:50PM  10   duty for their label.
03:01:51PM  11      Q.   And is the word -- are the words "generally grows
03:01:57PM  12   back" clear and unambiguous in warning about permanent
03:02:03PM  13   chemotherapy-induced alopecia?
03:02:03PM  14      A.   Applying it as a regulatory person and looking at
03:02:06PM  15   what the regulations would require, no, it is not.
03:02:08PM  16      Q.   Okay.  Are companies' obligations under the federal
03:02:24PM  17   regulations to warn of a known adverse reaction limited to
03:02:32PM  18   the use that is specifically stated in the label?
03:02:35PM  19      A.   No.  The company is required to collect all their
03:02:38PM  20   post-marketing events and experience and analyze that in
03:02:42PM  21   order to determine whether or not labeling changes need to be
03:02:46PM  22   made, regardless of whether it's a specific listing within
03:02:50PM  23   the label.  Indications are the -- the indications drive some
03:02:55PM  24   of this, but certainly within the label, the adverse events
03:03:00PM  25   and things I've looked at, those fall within what would make
```

| | | |
|---|---|---|
| 03:03:04PM | 1 | sense to be looking at and collecting, and they have a duty |
| 03:03:08PM | 2 | to do that. |
| 03:03:09PM | 3 |     Q. Okay. And you said that you looked at the reports in |
| 03:03:11PM | 4 | the pharmacovigilance database? |
| 03:03:13PM | 5 |     A. Yes. |
| 03:03:14PM | 6 |     Q. Okay. Did those reports include what regimen was |
| 03:03:18PM | 7 | used with the patients? |
| 03:03:19PM | 8 |     A. Yes. In the information I have seen, it did. |
| 03:03:22PM | 9 |     Q. Okay. Were all of those patients that they reported |
| 03:03:26PM | 10 | as irreversible or permanent alopecia ones that you used the |
| 03:03:31PM | 11 | TAC regimen? |
| 03:03:33PM | 12 |     A. They all used AC with Taxotere, but they may have |
| 03:03:38PM | 13 | used it in a different order. |
| 03:03:39PM | 14 |     Q. Okay. So, why is having an accurate and truthful |
| 03:03:45PM | 15 | label important from a regulatory standpoint? |
| 03:03:50PM | 16 |     A. Because it's the only way that the physician can make |
| 03:03:56PM | 17 | the proper judgment or an informed decision on what to do for |
| 03:04:00PM | 18 | their patients. The label is the resource for the physician; |
| 03:04:03PM | 19 | the company is the expert on their drug. They -- the |
| 03:04:08PM | 20 | regulations require the company to provide physicians with |
| 03:04:12PM | 21 | accurate, truthful information that is not misleading so that |
| 03:04:16PM | 22 | the -- they can make proper decisions for their patients. |
| 03:04:19PM | 23 |     Q. Is that the golden rule I mentioned earlier? What |
| 03:04:23PM | 24 | the company knows it must disclose? |
| 03:04:24PM | 25 |     A. Yes. Again, if you know it, you have to disclose it. |