# Attachment 1



May 9, 2022

Honorable Jane Triche Milazzo
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room C-367
New Orleans, Louisiana 70130

Re:    In re: MDL 2740 Taxotere (Docetaxel) Products Liability Litigation; Angie Witherby v.
Sanofi U.S. Services Inc., et al. 17-08228

Dear Judge Milazzo,

Pursuant to this Court's Order, Plaintiff hereby submits her briefing in opposition to dismissal. Plaintiff took the deposition of the pharmacy manager, Ms. Jeanne Anderson, for Memorial Hospital, where Ms. Witherby was treated. **Exhibit 1**. Counsel for all named Defendants was present. *Id.* at pp. 2-3. Ms. Anderson testified that the distributor at the time of Ms. Witherby's treatment from December 31, 2013- March 5, 2014, was McKesson. *Id.* 24:7-11; 26:9-13. Ms. Anderson testified that she requested purchasing history from McKesson but McKesson refused to produce the records to Memorial Hospital absent a subpoena. *Id.* 23:8-20.

Ms. Anderson testified that she did not believe the docetaxel Ms. Witherby would have been treated with would have been sitting on the shelf before October 1, 2013. *Id.* at 25:7-17. Thus, it would be more likely than not that the docetaxel Ms. Witherby was treated with would have been shipped to Memorial Hospital between October 1, 2013, and March 5, 2014.

Counsel subpoenaed purchasing records from McKesson from October 1, 2013-March 2015, a much wider time frame than Plaintiff's docetaxel would have been shipped to Memorial Hospital. **Exhibit 2.** After counsel spent years expending significant efforts, McKesson produced a response but did not produce purchasing records. **Exhibit 3**. Three manufacturers were identified- Hospira, Sagent, and Sandoz. Purchasing records would show the dates docetaxel was shipped to the facility and the proportion of which manufacturer's products were shipped to Memorial. To date- McKesson has not provided such information. If McKesson were forced to comply with the subpoena and submit purchasing records, counsel could identify, by a preponderance of the evidence, the identity(ies) of the manufacturers utilized in Ms. Witherby's treatment.

Thus, this matter should not be dismissed, as Plaintiffs believe sufficient evidence exists to prove by the preponderance of the evidence, manufacturer(s) of Ms. Witherby's docetaxel.

By: */s/ J.Christopher Elliott*
J. Christopher Elliott, Esq.

# EXHIBIT 1

ANGIE WITHERBY vs. SANOFI S.A., et al.
JEANNE ANDERSON on 12/11/2018

DEPOSITION OF

1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
2
                                            **CERTIFIED**
ANGIE WITHERBY,              )              **ORIGINAL TRANSCRIPT**
3                            )
          Plaintiff,         )
4                            )
     -vs-                    )     Case No. 2:17-cv-98228
5                            )
SANOFI S.A., et al.,         )
6                            )
          Defendants.        )
7    _ _ _ _ _ _ _ _ _ _ _ )

8

              The Deposition of JEANNE ANDERSON
9

10          Date:    Tuesday, December 11, 2018

11          Time:    12:00 p.m.

12          Place:   Memorial Hospital
                     615 North Michigan Street
13                   South Bend, Indiana

14

15      Called as a witness by the Plaintiff in

16      accordance with the Rules of the United States

17      District Court, Eastern District of Louisiana,

18      pursuant to Notice.

19

20
Before Sharon L. Brady, Court Reporter
21   and Notary Public

22

23

24

25



1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Nationwide Coverage

```
 1     APPEARANCES:

 2          MS. MELANIE SULKIN
                 Bachus & Schanker, LLC
 3               1899 Wynkoop Street, Suite 700
                 Denver, Colorado  80202
 4               Melanie.Sulkin@ColoradoLaw.net

 5          On behalf of the Plaintiff;

 6


 7
       APPEARANCES BY TELEPHONE:
 8
            MR. NICHOLAS INSOGNA
 9               Greenberg Traurig, LLP
                 One International Place, Suite 2000
10               Boston, Massachusetts  02110
                 Sandoz-Taxotere-ProdID@gtlaw.com
11
            On behalf of Defendant Sandoz, Inc.;
12


13


14          MS. KATHLEEN FAY
                 Dechert, LLP
15               Three Bryant Park
                 1095 Avenue of the Americas
16               New York, New York  10036
                 docetaxelproductid@dechert.com
17
            On behalf of Defendants Hospira Worldwide,
18      Inc., Hospira, Inc., and Pfizer, Inc.;

19


20          MS. MADISON HATTEN
21               Shook, Hardy & Bacon, LLP
                 2555 Grand Boulevard
22               Kansas City, Missouri  64108
                 noproductid@shb.com
23
            On behalf of Defendants Sanofi-Aventis U.S.,
24      LLC, and Sanofi U.S. Services, Inc.;

25
```



1  APPEARANCES BY TELEPHONE CONTINUED:

2       MS. KIMBERLY L. BECK
             Ulmer & Byrne, LLP
3            600 Vine Street, Suite 2800
             Cincinnati, Ohio  45202
4            kbeck@ulmer.com

5       On behalf of Defendant Actavis Pharma, Inc.;

6

7

8       MR. CHAD VACARELLA
             Hinshaw & Culbertson, LLP
             53 State Street, 27th Floor
9            Boston, Massachusetts  02109
             docenoprodid@hinshawlaw.com

10

11      On behalf of Defendant Sun Pharmaceutical
        Industries, Inc., f/k/a Caraco Pharmaceutical
        Industries, Ltd.

12                        * * *

13

14

15      ALSO PRESENT:
             Ms. Kelley Kurtz

16                        * * *

17

18

19

20

21

22

23

24

25



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Case 2:16-md-02740-JTM-MBN   Document 14428-1   Filed 07/18/22   Page 7 of 86

ANGIE WITHERBY vs. SANOFI S.A., et al.                    DEPOSITION OF
JEANNE ANDERSON on 12/11/2018                                    Page 7

1    please, if you know where I'm going with a

2    question, try and let me finish the question

3    prior to answering so that she can get down the

4    full question and your full answer.

5           If you don't understand a question, just let

6    me know.  And I'll try to rephrase it.  And then

7    you can take a break at any time as long as you

8    answer the question that has been asked.

9           Jeanne, how old are you?

10   A   39.

11   Q   Who's your employer?

12   A   Memorial Hospital of South Bend.

13   Q   And what's your position?

14   A   I'm the director of pharmacy.

15   Q   Okay.  And how long have you been in that

16       position?

17   A   Since May of '17.

18   Q   Okay.  And what kind of background gives you the

19       qualifications to be the director of pharmacy?

20   A   I have a doctorate in Pharmacy.  I also completed

21       a pharmacy residency and then worked for 12 years

22       prior.

23   Q   So, you mentioned you got a doctorate in

24       Pharmacy.  Where did you get the doctorate in

25       Pharmacy?



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

1    of pharmacy.  So, I do not have -- I have a

2    manager that is between myself and the frontline

3    staff.  But, ultimately, I have responsibility

4    for that area.

5  Q  Okay.  Are you familiar with the process that

6    Memorial Hospital uses in compounding its

7    chemotherapy drugs?

8  A  I would say relatively familiar, yes.  I don't

9    perform the activities on a daily basis, but I am

10   familiar with them.

11 Q  Okay.  And who's responsible for training the

12   frontline pharmacists for compounding the

13   chemotherapy drugs?

14 A  So, those -- those -- they would be trained by

15   other pharmacists that are trained in that area.

16   And their scheduling of the training would be

17   coordinated by the inpatient ops manager.

18 Q  Okay.  Are you familiar with a drug called

19   Taxotere?

20 A  I am.

21 Q  Are you familiar with the generic of Docetaxel?

22 A  Yes.

23 Q  Are you aware they're the same drug?

24 A  Yes.

25 Q  Okay.  When I refer to Taxotere, I'm also going



1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Nationwide Coverage

```
 1        to be referring to Docetaxel and vice versa.
 2   A    Okay.
 3   Q    Do you know -- or is Docetaxel used at Memorial
 4        Hospital?
 5   A    It is.
 6   Q    Do you know how long it's been used at the
 7        facility?
 8   A    I do not.
 9   Q    Do you know who is in charge of purchasing the
10        Docetaxel for the facility?
11   A    So, that would be our pharmacy purchasing agent.
12        We have a primary purchasing agent and a pharmacy
13        purchasing coordinator.
14   Q    And how do they -- and who do you purchase
15        Docetaxel from?
16   A    I don't know that I could speak to everybody that
17        we could potentially purchase it from.  We try to
18        obtain the majority of our product through our
19        primary wholesaler.  But if we are not able to
20        obtain that product, there are occasions where
21        we'll purchase direct from a manufacturer.
22   Q    Who is your current primary wholesaler?
23   A    Cardinal Health.
24   Q    And who was your primary wholesaler from 20 -- in
25        2012 through 2013?
```



1       medical records related to Angie Witherby's

2       treatment with Docetaxel?

3    A  I did not personally review her medical record.

4       I did review the charge history or the billing

5       record for that particular agent on the patient,

6       and that was all that I looked at with it.

7    Q  Okay.  Can you tell me the first date of

8       treatment with Docetaxel?

9    A  The -- so, the timeframe that I looked at was

10      specific to 12-31 of '13 through, like I said,

11      4-5 of '14.  Can I look at my notes?

12   Q  Yes.

13   A  Is that acceptable?  So -- so, the first charge

14      that I found on her record for Docetaxel was

15      12-31 of 2013.

16   Q  Okay.  And can you tell me the last charge for

17      Docetaxel on her billing record?

18   A  3-5 of 2014.

19   Q  Do you know whether or not your risk manager or

20      the facility has produced billing records?

21   A  I do not know.

22   Q  Okay.  And what timeframe did you believe was

23      relevant to request the purchasing records from

24      McKesson?

25   A  Let me see.  I think I went back six months



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
 1        prior, but let me look at exactly what I looked

 2        at.

 3              It looks like I asked for a quarter.  I

 4        asked for 10-1-13 through 4-5 of '14.

 5   Q    Okay.  And why did you -- sorry.  The first date

 6        was 10 --

 7   A    10-1 of '13.

 8   Q    10-1 of '13?

 9   A    (Nods head.)

10   Q    And why did you choose 10-1 of '13?

11   A    I just tried to, given the timeframe, make an

12        educated guess as to how long something would

13        potentially have been sitting on the shelf and

14        then request purchase history for at least two --

15        well, close to three months since the date of

16        service was 12-31, prior to the patient receiving

17        therapy.

18   Q    Okay.  And then the last date of -- the last

19        charge for Docetaxel --

20   A    Uh-huh.

21   Q    -- what date was that again?

22   A    I see it as 5-3.  I did not know that at the time

23        that I asked for it.  I actually just found --

24   Q    Do you mean 3-5?

25   A    3-5.  I'm sorry.  Yes, 3-5.  I apologize.  3-5 of
```



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
 1        '13.  At the time that I made --
 2    Q  Do you mean of '14?  I'm sorry to interrupt you.
 3    A  No.  That's okay.  Of '14.  You are correct.
 4    Q  Okay.  Just to clarify, the final charge for
 5       Docetaxel that you're showing for Angie Witherby
 6       at Indiana Memorial Hospital is March 5th of
 7       2014?
 8    A  That is correct.
 9    Q  So, is it fair to say that she received -- that
10       Angie Witherby received treatment with Docetaxel
11       between December 31st of 2013 and March 5th of
12       2014?
13    A  Yes.
14    Q  You mentioned, though, that you had requested a
15       purchasing history going all the way to April 5th
16       of 2014?
17    A  Uh-huh.  I think that was the timeframe that was
18       in the e-mail that I received from our risk
19       manager, I believe.  Let me just see if I can
20       verify that real quick.
21          Yeah.  So, the information that I was
22       supplied was 12-31 of '13 and 4-5 of '14.  So, at
23       the time, I did not -- had not gone into the
24       record to look at the charge history.  So, based
25       on that, that's why I requested the purchase
```



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

# EXHIBIT 2



**null / ALL**
**Transmittal Number: 19852981**
**Date Processed: 05/24/2019**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Lindsey Wagner<br>McKesson Corporation<br>1 Post St RC 101-3500<br>Fl 33<br>San Francisco, CA 94104-5256 |
| **Electronic copy provided to:** | Kimbir Tate<br>Kathy Gradick<br>Carole Ungvarsky<br>Rosemarie Cereghino<br>Emily Wysock |

| | |
|---|---|
| **Entity:** | McKesson Corporation<br>Entity ID Number  0493907 |
| **Entity Served:** | McKesson Corporation |
| **Title of Action:** | Taxotere (Docetaxel) vs. Sanofi US Services, Inc. f/k/a Sanofi-Aventis U.S. Inc. |
| **Document(s) Type:** | Subpoena |
| **Nature of Action:** | Information/Appearance Request |
| **Court/Agency:** | U.S. District Court Eastern District, LA |
| **Case/Reference No:** | 16-md-2740 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 05/23/2019 |
| **Answer or Appearance Due:** | 06/03/2019 |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Sender Information:** | J. Christopher Elliott<br>303-825-5460 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

Eastern District of Louisiana

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No.   16-md- 2740 |
| Sanofi US Services Inc. f/k/a Sanofi-Aventis U.S. Inc., et al | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
        McKesson Corporation
        One Post Street, San Francisco, CA 94104

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A

| Place: Fax to: 720-294-0096 OR E-mail to Taxotere@ColoradoLaw.Net OR at your facility, and accomodations to pick up the requested documents can be made if you e-mail Taxotere@ColoradoLaw.Net | Date and Time: <br><br> 06/03/2019 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

      The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    05/16/2019

             _CLERK OF COURT_

                                   OR

| _____ | /s/ J. Christopher Elliott, Esq. |
|---|---|
| _Signature of Clerk or Deputy Clerk_ | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Plaintiffs
, who issues or requests this subpoena, are:
J. Christopher Elliott, 1899 Wynkoop Suite 700, Denver, CO 80202 303-825-5460, Taxotere@coloradolaw.net

### Notice to the person who issues or requests this subpoena

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  16-md- 2740

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

**DOCUMENT REQUESTS:**

1.  All documents concerning any purchases of Taxotere or Docetaxel by Baptist Lexington Oncology Associates in Lexington, KY, its predecessors, and/or its subsidiaries from March 8, 2011 to February 1, 2013.

2.  All documents concerning any purchases of Taxotere or Docetaxel by Memorial Health System in Colorado, its predecessors, and/or its subsidiaries from February 1, 2012 through July 10, 2012.

3.  All documents concerning any purchases of Taxotere or Docetaxel by Promedica Hickman Cancer Center in Sylvania, Ohio, its predecessors, and/or its subsidiaries from March 8, 2011 to September 21, 2012.

4.  All documents concerning any purchases of Taxotere or Docetaxel by Acension, also known as Columbia St. Mary's, in Milwaukee, Wisconsin, its predecessors, and/or its subsidiaries from March 8, 2011 to September 21, 2012.

5.  All documents concerning any purchases of Taxotere or Docetaxel by Hardin Memorial Hospital in Elizabethtown, KY, its predecessors, and/or its subsidiaries from March 8, 2011 to July 26, 2011.

6.  All documents concerning any purchases of Taxotere or Docetaxel by Memorial Regional Cancer Center in South Bend, Indiana or Memorial Hospital in South Bend Indiana, its predecessors, and/or its subsidiaries from October 1, 2013 to March 5, 2014.

7. All documents concerning any purchases of Taxotere or Docetaxel by Simon-Williamson Clinic, P.C., its predecessors, and/or its subsidiaries from between April 1, 2011 and July 11, 2011.

8. All documents concerning any purchases of Taxotere or Docetaxel, including lot numbers associated with purchases of Taxotere or Docetaxel, by Sacred Heart Medical Oncology Group in Santa Rosa Beach, Florida, its predecessors, and/or its subsidiaries from March 8, 2011 to July 20, 2011.

9. National drug codes for the docetaxel or taxotere associated with Sacred Heart Medical Oncology Group's order numbers: 889100009, 889100015, and 889100018.

```
┌─────────────────────────────────────────────────────────────────┐
│              Production of Documents by Mail or E-Mail            │
│                                                                   │
└─────────────────────────────────────────────────────────────────┘
```

FRCP 45(c)(2)(A) allows a subpoena to command "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business is person." However, "courts generally find that the [100-mile] rule does not apply where documents can be mailed and do not require personal appearance. *United States v. Brown*, 223 F. Supp. 3d 697, 703 (N.D. Ohio 2016) (collecting authorities). This is because "the 100 mile limit applies to travel by a subpoenaed person, but a person commanded to produce documents 'need not appear in person at the place of production or inspection.'" *Walker v. Ctr. for Food Safety*, 667 F. Supp. 2d 133, 138 (D.D.C. 2009) (quoting Fed. R. Civ. P. 45(d)(2)(A)). Rather, "parties often agree that production, particularly of electronically stored information, be transmitted by electronic means." *D'Souza v. Marmaxx Operating Corp.*, No. 15-CV-00256, 2017 WL 1322243, at *6 (W.D.Tex. Apr. 7, 2017) (quoting Fed. R. Civ. P. 45 advisory committee's notes to 2013 amendment). "Such arrangements facilitate discovery, and nothing in [the] amendments limits the ability of parties to make such arrangements." *Id.* Courts "focusing on that rule have tended to do so while keeping in mind the expectation of cooperation among those involved in the subpoena and the practical reality that production will typically be accomplished electronically or by mail." *CresCom Bank v. Terry*, 269 F. Supp. 3d 708, 712–13 (D.S.C. 2017) (collecting authorities); *see also Sec'y of Labor, United States Dep't of Labor v. Kazu Constr., LLC*, No. CV 16-00077 ACK-KSC, 2017 WL 628455, at

*12 (D. Haw. Feb. 15, 2017) (restriction does not apply where records could be mailed or shipped). Where necessary, courts may modify a subpoena "to allow service of responsive documents by email." *Sams v. GA W. Gate, LLC*, 316 F.R.D. 693, 697 (N.D.Ga. 2016).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)          MDL NO. 2740
        PRODUCTS LIABILITY
        LITIGATION

THIS DOCUMENT RELATES TO:            SECTION "N" (5)
ALL CASES

CASE MANAGEMENT ORDER NO. 9
(Deposition Protocol)

## I.   GENERAL PROVISIONS

### A.   Scope of Order

This Order addresses depositions conducted of both fact and expert witnesses ("the witness") in cases presently pending and hereafter included in this MDL as more fully described below.  Except as otherwise provided in this Order, the Federal Rules of Civil Procedure and the Local Rules of this Court will apply in this proceeding including those regarding the conduct of depositions.

### B.   Applicability

This order shall govern the conduct of depositions of all witnesses deposed in the above-captioned matter, including (1) cases directly filed in this Court pursuant to this Court's Direct Filing Order of December 13, 2016, PTO No. 5 (Rec. Doc. 131); (2) cases transferred to this Court by the Judicial Panel on Multidistrict Litigation; (3) any tag-along action subsequently transferred to this Court by the Judicial Panel on Multidistrict Litigation; and (4) all related cases originally filed in this Court or transferred or removed to this Court.

Counsel are reminded that the Court considers depositions to be official court procedures, and the conduct of all participants in depositions shall be in accordance with the customs and practices expected of lawyers and witnesses appearing before this Court, as if each was appearing personally before the Court at the time of the deposition. Counsel shall not at any time conduct himself or herself in a manner not becoming an officer of the court and not in full compliance with the Louisiana Rules of Professional Conduct, the Louisiana Code of Professionalism and all other Orders of the Court. Neither counsel nor the witness shall, at any time, engage in conduct that obstructs, impedes, delays, or frustrates the examination of the witness. All counsel and the witness must be treated with civility and respect.

Counsel will not abuse or indulge in offensive conduct directed to other counsel, parties or the witness. Counsel will abstain from disparaging personal remarks or acrimony toward other counsel, parties or the witness. Counsel will treat adverse witnesses and parties in a professional manner as officers of the Court.

There shall be no smoking or use of other tobacco products in any room in which a deposition is being conducted, including before, during or after a deposition, or in the deposition room during any deposition recess.

## C.     Meet and Confer

Counsel shall meet and confer in good faith regarding any disputes that may arise with respect to any matter concerning depositions in an effort to resolve the dispute by agreement before presenting them to Magistrate Judge Michael B. North.

Counsel shall attempt to schedule depositions by mutual agreement and agree to consult regarding scheduling matters in a good faith effort to avoid conflicts. Counsel will promptly notify other counsel when depositions are to be canceled and rescheduled.

## II.   ATTENDANCE

### A.   Who May Be Present

Unless otherwise ordered under Rule 26(c), depositions may be attended only by counsel of record, members of the PSC, members and employees of their firms, attorneys specifically engaged by a party for purposes of the deposition, the parties or the representative of a party (including in-house counsel), the witness, counsel for the witness, the parties' expert witness(es), court reporters, and videographers. By agreement or upon application, and for good cause shown, the Court may permit attendance by a person who does not fall within any of the categories set forth in the preceding sentence.

To minimize travel and related costs, counsel or others permitted to attend the deposition may participate/attend any deposition by telephone or videoconference. Counsel noticing the deposition should facilitate arrangements so that a conference call in line is available during the deposition. Any party wishing to attend by video conference shall be responsible for the cost of setting up the video conference capabilities. Notification of attendance by telephone or video conference shall be provided within five (5) days prior to the deposition by those counsel desiring to do so.

Examining counsel and counsel intending to participate remotely shall cooperate in good faith to facilitate such participation. No deposition shall be delayed or impeded by technical issues related to counsel appearing remotely. All individuals attending remotely shall identify themselves for the record either verbally or by email to the court reporter and

counsel for the parties, and the court reporter shall record the name of all individuals listening or attending the deposition remotely for any length of time and include them as being in attendance in the official transcript.

**B.      Unnecessary Attendance**

Unnecessary attendance by counsel is discouraged and may not be compensated in any fee application to the Court.

**C.      Examination**

Leadership Counsel for the MDL Plaintiffs shall designate one (1) attorney to serve as the primary examiner of each witness on behalf of the MDL Plaintiffs. Defendants' Leadership or Liaison Counsel shall designate one primary examiner for each Defendant. Additional examiners on behalf of MDL parties shall not be permitted absent good cause and agreement of the parties. Once a witness has fully answered a question, the same or substantially the same question shall not be asked again. Counsel who have individual or divergent positions may examine a witness limited to matters not previously covered.

While a witness is being examined about any document or information that has been designated or stamped as "Confidential" pursuant to a stipulated confidentiality agreement or Protective Order in this case, any persons to whom disclosure is not authorized under such Protective Order shall be excluded during such examination.

**D.      Objections**

Objections must be made by <u>only</u> one attorney for each party as designated on the record at the commencement of the deposition.

**III.         SCHEDULING OF PARTIES' WITNESSES**

**A.      Mutual Efforts**

Absent extraordinary circumstances, counsel shall consult with opposing counsel in advance of noticing any deposition in an effort to schedule depositions at mutually convenient times and locations.  Counsel will aim to coordinate on deposition scheduling in advance of sending notices of depositions.

Nothing herein shall preclude a party from serving a notice of deposition following a written request for deposition where dates are not provided by opposing counsel or counsel for the proposed deponent within fourteen (14) days of the written request for deposition under this Order and the requesting party has made a good faith attempt to meet and confer.

Each deposition notice shall comply with Rule 30(b).  The deposition notice shall include the name, address, and telephone number of an attorney contact designated by the party noticing the deposition, as well as the date, time, and location of the deposition.  The notice shall clearly state whether the deposition will be videotaped in addition to being recorded by stenographic means.

As a general rule, no individual witness under Rule 30(b)(1) should be deposed in the MDL proceeding more than once.  However, to the extent responsive documents are produced or custodial documents are identified after the deposition of the witness, a supplemental deposition may be requested.  Any subsequent deposition shall be limited to issues arising from supplemental productions or identification of custodial documents.  A party seeking to take a second deposition of a witness shall provide the opposing party its basis for an exception.  Second depositions shall be permitted only upon consent of the parties or an Order of this Court issued for good cause shown.

**B.     Location**

The parties shall endeavor to schedule all depositions at locations within a reasonable distance from the residence of the witness, e.g., within 100 miles of the witness's residence, or at such other location as is agreed to by all counsel involved and the witness. Defendants will make a good faith effort to communicate to former employees that a request for them to appear at a deposition has been made, and will make a good faith effort to produce former employees for depositions.

**C.     Notice of Intent to Attend**

In order to make arrangements for adequate deposition space, Counsel for each party shall confer regarding the expected attendance in advance of the deposition. Five (5) days prior to the deposition, the noticing party shall provide the number of attendees to counsel representing the deponent.

**D.     Duration of Depositions**

1.     A deposition noticed pursuant to Case Management Order No. 5, General Discovery Protocol – Sanofi Defendants, ¶ 5 (and the equivalent subsection of the General Discovery Protocol to be entered with the 505(b)(2) defendants) will for durational purposes be limited as follows:

For purposes of 30(b)(6) depositions, each designee is subject to a presumptive seven (7) hour time limit of on the record testimony, separately, regardless of how many designees the entity appoints. The parties agree to meet and confer on the total deposition time permitted in the context of a given 30(b)(6) notice to the extent it requires more than one witness to cover topics that are sufficiently-related.

2.     For purposes of a 30(d)(1) deposition, each deposition is subject to a presumptive

6

time limit of seven (7) hours of on the record testimony.  However, if the deposition is cross-noticed then the deposition noticed under FRCP 30(d)(1) maybe scheduled for up to two seven (7) hour days with the Plaintiff MDL attorneys limited to seven (7) hours of testimony.

The presumptive duration for any deposition may be extended or otherwise altered by agreement or by court order if requested.  Additional time may be permitted for state court litigants if the deposition is cross-noticed in such state court action(s).  However, if the deposition is cross-noticed, the Plaintiff MDL attorneys' allotment of seven (7) hours of testimony shall not be affected.  Absent exigent circumstances, no additional time shall be used by state court litigants to ask unduly duplicative or cumulative questions.  Time spent by defending counsel for direct examination of the witness shall not count against the time allotted to questioning counsel.  Where a witness is a non-party, and is not a current or former employee, agent, or consultant for a party or a subsidiary or affiliate of a party, the parties shall meet and confer to reach agreement on the division of the available time to depose the witness.

To effectuate an orderly and efficient 30(b)(6) deposition process, 30(b)(6) notices may be crafted on an issue-by-issue basis and depositions may be conducted on multiple and separate days and times by agreement of the parties and subject to the availability of the witness.  The parties may disagree on how the numerical limitations on depositions of defendants set forth in Case Management Nos. 5 (¶ 5) and 7 (¶ 5) apply to 30(b)(6) depositions.  For example, the parties disagree on whether each 30(b)(6) notice shall count as one deposition.  To resolve any such disagreements, the parties shall report at each

7

discovery status conference as to their position on how each 30(b)(6) notice is counted against the limits set forth in Case Management Nos. 5 (¶ 5) and 7 (¶ 5).

All objections to a 30(b)(6) deposition topic or topics shall be provided within fourteen (14) days after the proposed topics are propounded in a notice. The parties shall meet and confer and endeavor to resolve such objections within seven (7) days of the objections being lodged.

3.      Breaks shall be taken on an as needed basis. No breaks shall be taken while a question is pending, except to confer about an issue relating to privilege. The time limits agreed to by the parties shall be the actual time spent on the record examining the witness. Time spent on breaks or lunch shall not be counted toward the time limits.

4.      In the event that a deposition involves a translator, the deposition shall be extended as reasonably necessary to conduct the examination up to double the amount of time permitted for the deposition, but absent good cause it shall not exceed an additional day of seven (7) hours of testimony, except by agreement of the parties, or by Court Order for good cause.

**E.      Multi Tracking**

Although the parties will try to avoid multi-tracking of depositions (the scheduling of more than one deposition on a single day), multi-tracking of depositions may be necessary considering the date of the trials and the status of discovery. The parties shall meet and confer on the establishment of a reasonable schedule for the multi-tracking of depositions. To the extent that the parties cannot agree on a proposed schedule for multi-tracking depositions, the parties shall prepare letter briefs to be presented to Magistrate

Judge Michael B. North attaching their separate proposed schedules. The Court will endeavor to promptly resolve the scheduling dispute.

**F.    Postponement**

Once a deposition has been mutually scheduled and noticed, it shall not be taken off the calendar, rescheduled, or relocated less than seven (7) calendar days in advance of the date it is scheduled to occur, except upon agreement between counsel (including counsel for the witness), or by leave of Court for good cause shown.

**G.    Interpreters/Translators**

1.    Where a witness indicates his or her intention to respond to questions in a language other than English, translators will be employed to interpret and translate between the foreign language and English. A translator selected by any party may also attend the deposition for the purpose of verifying the interpretation or translation provided by the other translator. Each translator shall swear under oath or affirm prior to each deposition to provide honest and truthful interpretations and translations. A monitor displaying "real time" transcription will be placed in front of the translator to assist in the interpretation. Defendants and Plaintiffs will each be responsible for all fees and costs incurred to secure the attendance and services of their respective translators.

2.    Counsel for the witness shall notify the noticing party at least fourteen (14) days in advance of the deposition that the examination will require the involvement of a translator. In the event the noticing party receives such a notice from a third party or his/her counsel, the noticing party shall inform other involved counsel within 24 hours of receiving such notice.

**IV.    NON-PARTY DEPOSITIONS**

9

## A.     Federal Rule Civil Procedure 30(b)(6)

Non-party organizations may be required to provide 30(b)(6) testimony through the issuance of a subpoena for that organization to testify. The subpoena must meet the same requirements as a 30(b)(6) notice. If a non-party 30(b)(6) deposition is intended to include document production, a subpoena *duces tecum* is required to be served in conjunction with the subpoena to testify pursuant to Rule 30(b)(2). Rule 45 governs service of the subpoena to obtain testimony from non-party entities. The non-party can object by sending a letter to Magistrate Judge Michael B. North seeking resolution. A notice of objection is not sufficient to stay the deposition. If the non-party 30(b)(6) notice includes a subpoena *duces tecum*, the notice must allow a fourteen (14) day opportunity for the non-party entity to file written objections as required by Rule 45(d)(2)(B). Once the non-party files written objections, the non-party is not required to produce the documents that are the subject of the filed objection and after conferral, any remaining controversy over the document production will be determined by Magistrate Judge Michael B. North.

Liaison Counsel shall receive documents produced by third parties. Any counsel who receives documents produced by a third party in response to a subpoena *duces tecum* will produce copies of those documents to all Liaison Counsel as soon as possible but no later than three (3) business days after receipt. All counsel who receive documents produced by a third party will use best efforts to produce these documents to all Liaison Counsel by ftp or similar electronic means to avoid the delays involved in sending documents by overnight mail. Counsel transmitting documents to all Liaison Counsel may include a bill for reasonable production and transmission costs to be paid by the receiving

Liaison Counsel, taking into account the form in which the production was received from the third-party.

**B.      Individual Depositions of Non-Party Witnesses**

An officer, director, or managing agent of a non-party corporation, a government official, or other non-party may be deposed with service of a notice of deposition and/or subpoena issued pursuant to the requirements of Rule 30 and 45. Rule 45 governs service of the subpoena to obtain testimony from non-parties. The non-party can object by filing a motion to Quash under Rule 45(d)(3) and a party can object by filing a Motion to Quash or for a Protective Order to preclude the discovery. A notice of objection, without a filed motion, is not sufficient to stay the deposition. A courtesy copy of this pre-trial order will be attached to the individual non-party service of a notice and/or subpoena.

**V.      OBJECTIONS**

1.      Counsel shall comply with Rules 30(c), (d)(1) and (3). When a privilege is claimed, the witness shall nevertheless answer questions relevant to the existence, extent, or waiver of the privilege, such as the date of a communication, who made the statement, to whom and in whose presence the statement was made, other persons to whom the contents of the statement have been disclosed, and the general subject matter of the statement, unless such information is itself privileged.

2.      Any objection made at a deposition shall be deemed to have been made on behalf of all other parties. The only objections that can be made are "objection as to form" and privilege. No other objections shall be made and all other objections are preserved.

3.      Counsel shall refrain from engaging in colloquy during any deposition. The phrase "objection as to form" or similar language as contemplated by Rule 30(c)(2) shall be

sufficient to preserve all objections as to form until the deposition is sought to be used. If requested, the objecting party shall provide a sufficient explanation for the objection to allow the deposing party to rephrase the question. No speaking objections are allowed and professionalism is to be maintained by all counsel at all times.

4.     Counsel shall not make objections or statements that might suggest an answer to a witness.

5.     Private consultations between the witness and his or her attorneys during the actual taking of the deposition are improper and prohibited, except for the purpose of determining (a) whether a privilege exists, (b) whether disclosure of information may violate an Order of the MDL Court or another court, or (c) an issue regarding confidentiality or whether the information sought is subject to an applicable protective order. Unless prohibited by the Court for good cause shown, conferences may be held during normal recesses, adjournments, or if there is a break in the normal course of interrogation and no questions are pending.

## VI.   DISPUTES DURING DEPOSITIONS

Disputes between or among the parties must be addressed to the assigned Magistrate Judge, should the parties be unable to resolve the dispute. Disputes arising during depositions that cannot be resolved by agreement and that, if not immediately resolved, will significantly disrupt the discovery schedule or require rescheduling of the deposition, or might result in the need to conduct a supplemental deposition, shall be presented to Magistrate Judge North by telephone at (504-589-7610). If Magistrate Judge North is unavailable, the deposition shall continue with full reservation of rights of the examiner for a ruling at the earliest possible time. Nothing in this Order shall deny counsel

the right to suspend a deposition pursuant to Rule 30(d)(3), file an appropriate letter with Magistrate Judge North, and appear personally before the Court.

## VII.    COORDINATION OF STATE COURT ACTIONS

Any deposition in this MDL proceeding may be cross-noticed in any related state court action, which may require reasonable coordination between the MDL parties and parties in related state court litigation.  In coordinating such efforts, the MDL parties shall seek to (1) limit witnesses to a single deposition within the limits set forth in this Order; and (2) streamline examination of the witness to avoid duplicative or cumulative questioning.  Plaintiffs' and Defendants' Liaison Counsel shall make best efforts to ensure that deposition notices of current and/or former employees of Defendants, as well as 30(b)(6) witnesses, are transmitted to plaintiffs' counsel in all related state court actions identified by Defendants pursuant to Pretrial Order No. 8 (Rec. Doc. 156).  To the extent practicable, the parties shall endeavor to allow for full participation by all jurisdictions in each deposition consistent with paragraph III.D.2, *supra*, and to the extent such participation is not duplicative or cumulative of prior questioning of the witness.

If a deposition originally noticed in this MDL proceeding has been cross-noticed in a state court action, then a party in this MDL may not take a subsequent deposition of that witness over objection of the opposing party or the witness except for good cause shown. Any disputes among the parties in this MDL regarding subsequent depositions shall be resolved, and good cause determined by the MDL Court, including Magistrate Judge North. Any subsequent deposition may be restricted by stipulation of the parties or as permitted by the Court.

The MDL parties shall encourage the entry of substantively similar deposition protocols in any related state proceedings.

## VIII.  DOCUMENTS USED IN CONNECTION WITH DEPOSITIONS

### A.  Use of Exhibits

All documents produced and used as deposition exhibits should be identified by referring to the unique alpha-numeric identifiers (i.e., Bates stamped numbers) appearing on the documents.  In the case of documents which have not yet received production numbering at the time of the deposition, the parties shall agree on a numbering method.  Documents that are produced in native format shall have the slip sheet with the Bates number affixed to the front of the document.  The court reporter for each deposition will include in each deposition transcript a list of the exhibits referenced in the deposition. All documents used at depositions must be marked in accordance with the Protective Order and this Order.

### B.  Copies

Extra copies of documents about which deposing counsel expects to examine a witness must be provided to primary counsel for the parties and the witness during the course of the deposition.

### C.  Translation of Documents

Objections as to the accuracy of translations shall be reserved unless a stipulation is reached by the parties in advance of the deposition.  There shall be no electronic translation done for documents in a foreign language used in any manner in this case.

## IX.  MEANS OF RECORDING

**A.    Stenographic Recording**

A certified court reporter shall stenographically record all deposition proceedings and testimony with "real time feed" capabilities. The court reporter shall administer the oath or affirmation to the witness. A written transcript by the court reporter shall constitute the official record of the deposition for purposes of Rule 30(e) addressing filing, retention, certification and the like. To the extent any counsel requires real-time video and/or text feed, that counsel is responsible for setting up and paying for the cost of that additional feature.

**B.    Video Depositions**

By so indicating in its notice of a deposition, a party, at its expense, may record a deposition by videotape or digitally-recorded video pursuant to Rule 30(b)(3) subject to the following rules:

1.    Video Operator. The operator(s) of the video recording equipment shall be subject to all applicable provisions of Rule 28. At the commencement of the deposition, the operator(s) shall swear or affirm to record the proceedings fairly and accurately.

2.    Position of the Witness. Unless physically incapacitated, the witness shall be seated at a table, except when reviewing or presenting demonstrative materials for which a change in position is needed. To the extent practicable, the deposition will be conducted in a neutral setting, against a solid background, with only such lighting as is required for accurate video recording. Lighting, camera angle, lens setting, and field of view will be changed only as necessary to record accurately the natural body movements of the witness. Only the witness and any exhibits or

15

demonstrative aids used in the examination will be video recorded.  Sound levels

will be altered only as necessary to record satisfactorily the voices of counsel and

the witness.

3.      Filing.  After the deposition is completed, the video operator shall certify

on camera the correctness, completeness, and accuracy of the videotape recording

in the same manner as a stenographic court reporter, and forward a true copy of the

videotape, the transcript, and certificate with Plaintiffs' and Defendants' Liaison

Counsel at a reasonable cost to each party.

4.      Technical Data.  Technical data such as recording speeds and other

information needed to replay or copy the tape shall be included on copies of the

videotaped deposition.

**C.      Telephone Depositions**

By indicating in its notice of deposition that a party wishes to conduct the

deposition by telephone, a party shall be deemed to have moved for such an order under

Rule 30(b)(4).  Unless an objection is filed and served within seven (7) calendar days after

such notice is received, the objection is waived.  Other parties may examine the witness

telephonically or in person in accord with this Order and any Order of the Court. However,

all persons present with the witness shall be identified in the deposition and shall not by

word, sign, or otherwise coach or suggest answers to the witness.  The court reporter shall

be in the same room with the witness.

## X.   CORRECTING AND SIGNING DEPOSITIONS

Unless waived by the witness, the transcript of a deposition shall be submitted to the witness for correction and signature, and shall be corrected and signed within thirty (30) days after receiving the final transcript of the completed deposition. The time allowed for correcting and signing the transcript shall be extended to forty-five (45) days for those witnesses who responded in a language other than English. If no corrections are made during this time, the transcript will be presumed accurate.

New Orleans, Louisiana, this 14th day of   November   2017.

Michael B. North
United States Magistrate Judge

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION, | Civil Action No. 16-md-2740 |
| Plaintiffs, | |
| v. | |
| SANOFI US SERVICES INC. F/K/A SANOFI-AVENTIS U.S. INC., ET AL., | |
| Defendants. | |

---

### MCKESSON CORPORATION'S RESPONSE TO PLAINTIFFS' SUBPOENA

---

Please let this serve as McKesson Corporation's ("McKesson") response to the subpoena served by Plaintiffs, attached as **Exhibit A**, requesting information regarding McKesson's distribution of brand-name Taxotere and/or generic docetaxel to various facilities. McKesson Corporation's US Pharmaceutical Division searched its records for distribution of the Taxotere and/or docetaxel NDCs listed in Exhibit B to Case Management Order No. 12A to the facilities listed in Exhibit A during the requested time periods. The results of McKesson's searches are listed below.

### I.    BAPTIST LEXINGTON ONCOLOGY ASSOCIATES

McKesson's records indicate that McKesson distributed the below-listed NDCs to Baptist Lexington Oncology Associates, located at 1720 Nicholasville Road Suite 701, Lexington, Kentucky 40502, from March 8, 2011 through February 1, 2013.

| NDC Labeler | NDC Number |
|---|---|
| Sanofi U.S. LLC | 0075-8003-01 |
| Sanofi U.S. LLC | 0075-8004-04 |
| Winthrop US | 0955-1020-01 |
| Winthrop US | 0955-1021-04 |

## II.    MEMORIAL HEALTH SYSTEM

McKesson's records indicate that McKesson distributed the below-listed NDCs to

Memorial Health System, located at 1400 East Boulder Street, Colorado Springs, Colorado

80909, from February 1, 2012 through July 10, 2012.

| NDC Labeler | NDC Number |
|---|---|
| Sanofi U.S. LLC | 0075-8003-01 |
| Sanofi U.S. LLC | 0075-8004-04 |
| Winthrop US | 0955-1020-01 |
| Winthrop US | 0955-1021-04 |

## III.    PROMEDICA HICKMAN CANCER CENTER

McKesson's records indicate that McKesson distributed the below-listed NDCs to

Promedica Hickman Cancer Center, located at 5300 Harroun Road #10, Sylvania, Ohio 43560,

from March 8, 2011 through September 21, 2012.

| NDC Labeler | NDC Number |
|---|---|
| Sanofi U.S. LLC | 0075-8003-01 |
| Sanofi U.S. LLC | 0075-8004-04 |
| Hospira Worldwide Inc | 0409-0201-02 |
| Hospira Worldwide Inc | 0409-0201-10 |
| Winthrop US | 0955-1020-01 |

## IV.    ACENSION/COLUMBIA ST. MARY'S

McKesson's records indicate that McKesson distributed the below-listed NDCs to

Acension, also known as Columbia St. Mary's, located at 2323 North Lake Drive, Milwaukee,

Wisconsin 53211, from March 8, 2011 through September 21, 2012.

sf-4243410

| NDC Labeler | NDC Number |
|---|---|
| Sanofi U.S. LLC | 0075-8003-01 |
| Sanofi U.S. LLC | 0075-8004-04 |
| Hospira Worldwide Inc | 0409-0201-02 |
| Hospira Worldwide Inc | 0409-0201-10 |
| Hospira Worldwide Inc | 0409-0201-20 |
| Winthrop US | 0955-1020-01 |
| Winthrop US | 0955-1021-04 |

## V. HARDIN MEMORIAL HOSPITAL

McKesson's records indicate that McKesson distributed the below-listed NDCs to Hardin Memorial Hospital, located at 913 North Dixie Highway, Elizabethtown, Kentucky 42701, from March 8, 2011 through July 26, 2011.

| NDC Labeler | NDC Number |
|---|---|
| Sanofi U.S. LLC | 0075-8003-01 |
| Sanofi U.S. LLC | 0075-8004-04 |
| Hospira Worldwide Inc | 0409-0201-02 |
| Hospira Worldwide Inc | 0409-0201-10 |

## VI. MEMORIAL REGIONAL CANCER CENTER

McKesson's records indicate that McKesson distributed the below-listed NDCs to Memorial Regional Cancer Center / Memorial Hospital in South Bend Indiana, located at 615 North Michigan Street, South Bend, Indiana 46601, from October 1, 2013 through March 25, 2015.

| NDC Labeler | NDC Number |
|---|---|
| Hospira Worldwide Inc | 0409-0201-02 |
| Hospira Worldwide Inc | 0409-0201-10 |
| Sagent Pharmaceuticals | 25021-0222-01 |
| Sagent Pharmaceuticals | 25021-0222-04 |
| Sandoz | 66758-0050-01 |
| Sandoz | 667580-0500-02 |

3

### VII.    SIMON-WILLIAMSON CLINIC, P.C.

McKesson's records indicate that McKesson did not distribute any of the Taxotere and/or docetaxel NDCs listed in Exhibit B to Case Management Order No. 12A to Simon-Williamson Clinic, P.C., located at 832 Princeton Avenue SW, Birmingham, Alabama 35211, from April 1, 2011 through July 11, 2011.

### VIII.   SACRED HEART MEDICAL ONCOLOGY GROUP

McKesson's records indicate that McKesson distributed the below-listed NDCs to Sacred Heart Medical Oncology Group, located at 27 East Mack Bayou Drive #1000, Santa Rosa Beach, Florida 32459, from March 8, 2011 through July 20, 2011.

| NDC Labeler | NDC Number |
| --- | --- |
| Sanofi U.S. LLC | 0075-8003-01 |
| Sanofi U.S. LLC | 0075-8004-04 |

### IX.    SACRED HEART MEDICAL ONCOLOGY GROUP ORDER NUMBERS

McKesson was unable to locate order numbers 889100009, 889100015, and 889100018 related to Sacred Heart Medical Oncology Group.  McKesson is willing to meet and confer with Plaintiffs regarding this request.

### X.     COMPREHENSIVE CANCER CENTERS OF NEVADA

McKesson's records indicate that McKesson did not distribute any of the Taxotere and/or docetaxel NDCs listed in Exhibit B to Case Management Order No. 12A to Comprehensive Cancer Centers of Nevada, located at 3730 South Eastern Avenue, Las Vegas Nevada 89169 and 7445 Peak Drive, Las Vegas, Nevada 89128, from March 8, 2011 through August 16, 2011.

sf-4243410

Dated: May 13, 2020               MORRISON & FOERSTER LLP


By: _/s/ Julie Y. Park_____
      Julie Y. Park
      MORRISON & FOERSTER LLP
      12531 High Bluff Drive, Suite 100
      San Diego, California  92130
      Telephone:  858.720.5100
      Facsimile:   858.720.5125

      Attorneys for
      McKESSON CORPORATION

sf-4243410

# Exhibit A



**null / ALL**
**Transmittal Number: 20521254**
**Date Processed: 10/10/2019**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Lindsey Wagner<br>McKesson Corporation<br>1 Post St RC 101-3500<br>Fl 33<br>San Francisco, CA 94104-5256 |
| **Electronic copy provided to:** | Kimbir Tate<br>Kathy Gradick<br>Carole Ungvarsky<br>Cynthia Wheeler<br>Rosemarie Cereghino<br>Emily Wysock |

| | |
|---|---|
| **Entity:** | McKesson Corporation<br>Entity ID Number  0493907 |
| **Entity Served:** | McKesson Corporation |
| **Title of Action:** | Taxotere (Docetaxel) vs. Sanofi US Services Inc. f/k/a Sanofi-Aventis U.S. Inc. |
| **Document(s) Type:** | Subpoena |
| **Nature of Action:** | Information/Appearance Request |
| **Court/Agency:** | U.S. District Court Eastern District, LA |
| **Case/Reference No:** | 16-md-2740 |
| **Jurisdiction Served:** | Delaware |
| **Date Served on CSC:** | 10/08/2019 |
| **Answer or Appearance Due:** | 10/28/2019 |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | J. Christopher Elliott<br>303-825-5460 |

**Notes:**      Paragraph 11 on Exhibit A is not on image. Verified no additional pages served.

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of Louisiana

IN RE: TAXOTERE (DOCETAXEL)                )
_____                )
*Plaintiff*                                )
v.                                         )   Civil Action No.   16-md- 2740
Sanofi US Services Inc. f/k/a Sanofi-Aventis U.S. )
Inc., et al                                )
_____                )
*Defendant*                                )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                    McKesson Corporation                    *CSC*
One Post Street, San Francisco, CA 94104

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A

| Place: Fax to: 720-294-0096 OR E-mail to Taxotere@ColoradoLaw.Net OR at your facility, and accomodations to pick up the requested documents can be made if you e-mail Taxotere@ColoradoLaw.Net | Date and Time: 10/28/2019 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    10/07/2019

*CLERK OF COURT*
                              OR
_____            /s/ J. Christopher Elliott, Esq.
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Plaintiffs
, who issues or requests this subpoena, are:
J. Christopher Elliott, 1899 Wynkoop Suite 700, Denver, CO 80202 303-825-5460, Taxotere@coloradolaw.net

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## EXHIBIT A

**DOCUMENT REQUESTS:**

1. All documents concerning any purchases of Taxotere or Docetaxel by Baptist Lexington Oncology Associates in Lexington, KY, its predecessors, and/or its subsidiaries from March 8, 2011 to February 1, 2013.

2. All documents concerning any purchases of Taxotere or Docetaxel by Memorial Health System in Colorado, its predecessors, and/or its subsidiaries from February 1, 2012 through July 10, 2012.

3. All documents concerning any purchases of Taxotere or Docetaxel by Promedica Hickman Cancer Center in Sylvania, Ohio, its predecessors, and/or its subsidiaries from March 8, 2011 to September 21, 2012.

4. All documents concerning any purchases of Taxotere or Docetaxel by Acension, also known as Columbia St. Mary's, in Milwaukee, Wisconsin, its predecessors, and/or its subsidiaries from March 8, 2011 to September 21, 2012.

5. All documents concerning any purchases of Taxotere or Docetaxel by Hardin Memorial Hospital in Elizabethtown, KY, its predecessors, and/or its subsidiaries from March 8, 2011 to July 26, 2011.

6. All documents concerning any purchases of Taxotere or Docetaxel by Memorial Regional Cancer Center in South Bend, Indiana or Memorial Hospital in South Bend Indiana, its predecessors, and/or its subsidiaries from October 1, 2013 to March 25, 2015.

7.  All documents concerning any purchases of Taxotere or Docetaxel by Simon-Williamson Clinic, P.C., its predecessors, and/or its subsidiaries from between April 1, 2011 and July 11, 2011.

8.  All documents concerning any purchases of Taxotere or Docetaxel, including lot numbers associated with purchases of Taxotere or Docetaxel, by Sacred Heart Medical Oncology Group in Santa Rosa Beach, Florida, its predecessors, and/or its subsidiaries from March 8, 2011 to July 20, 2011.

9.  National drug codes for the docetaxel or taxotere associated with Sacred Heart Medical Oncology Group's order numbers: 889100009, 889100015, and 889100018.

10. All documents concerning any purchases of Taxotere or Docetaxel, including lot numbers associated with purchases of Taxotere or Docetaxel, by Comprehensive Cancer Centers of Nevada, its predecessors, parent companies, and/or its subsidiaries from March 8, 2011 to August 16, 2011.

FRCP 45(c)(2)(A) allows a subpoena to command "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business is person." However, "courts generally find that the [100-mile] rule does not apply where documents can be mailed and do not require personal appearance. *United States v. Brown*, 223 F. Supp. 3d 697, 703 (N.D. Ohio 2016) (collecting authorities). This is because "the 100 mile limit applies to travel by a subpoenaed person, but a person commanded to produce documents 'need not appear in person at the place of production or inspection.'" *Walker v. Ctr. for Food Safety*, 667 F. Supp. 2d 133, 138 (D.D.C. 2009) (quoting Fed. R. Civ. P. 45(d)(2)(A)). Rather, "parties often agree that production, particularly of electronically stored information, be transmitted by electronic means." *D'Souza v. Marmaxx Operating Corp.*, No. 15-CV-00256, 2017 WL 1322243, at *6 (W.D.Tex. Apr. 7, 2017) (quoting Fed. R. Civ. P. 45 advisory committee's notes to 2013 amendment). "Such arrangements facilitate discovery, and nothing in [the] amendments limits the ability of parties to make such arrangements." *Id.* Courts "focusing on that rule have tended to do so while keeping in mind the expectation of cooperation among those involved in the subpoena and the practical reality that production will typically be accomplished electronically or by mail." *CresCom Bank v. Terry*, 269 F. Supp. 3d 708, 712–13 (D.S.C. 2017) (collecting authorities); *see also Sec'y of Labor, United States Dep't of Labor v. Kazu Constr., LLC*, No. CV 16-00077 ACK-KSC, 2017 WL 628455, at

*12 (D. Haw. Feb. 15, 2017) (restriction does not apply where records could be mailed or shipped). Where necessary, courts may modify a subpoena "to allow service of responsive documents by email." *Sams v. GA W. Gate, LLC*, 316 F.R.D. 693, 697 (N.D.Ga. 2016).

Nicholas Insogna
Tel 617.310.6231
insognan@gtlaw.com

May 13, 2022

**VIA E-MAIL**

The Honorable Jane Triche Milazzo
U.S. District Court
Eastern District of Louisiana
500 Poydras Street
Room C206
New Orleans, LA  70130

Re:   *Taxotere (Docetaxel) Products Liability Litigation*, MDL No. 2740;
         **Angie Witherby v. Sanofi U.S. Services Inc., et al., 2:17-cv-08228**

Dear Judge Milazzo:

Defendants submit this response to Plaintiff Angie Witherby's May 9, 2022 letter brief. Plaintiff fails to provide any justification why her case should not be dismissed with prejudice pursuant to CMO-12A for failure to obtain evidence of the manufacturer of the docetaxel since initially filing her lawsuit five years ago.

At the May 2, 2022 Show Cause hearing, held pursuant to CMO-12A, Plaintiff argued that her case should not be dismissed because McKesson, a distributor, had not responded to pending subpoenas. *See* Ex. A, 5/2/22 Hr'g Tr. at 21:2-22:8. These representations are not borne out by the briefing submitted to the Court. Rather, Plaintiff acknowledges that McKesson *did* respond to a subpoena in May 2020 by identifying three manufacturers (Hospira, Sagent, and Sandoz) whose docetaxel was distributed to Plaintiff's infusion facility during the time frame requested of October 1, 2013 through March 2015. (*See* Plf.'s Exhibit 2 and Exhibit 3.) Plaintiff instead now claims that McKesson should have produced purchase records at the time of responding to the subpoena in May 2020.

First, Plaintiff's belated objection and request for additional time to seek purchase records is untimely and misplaced. At no time has Plaintiff's counsel contacted McKesson to discuss the format or content of McKesson's response. Plaintiff's counsel should have made any further inquiries or sought additional information in May 2020. As this Court is aware, Defendants provided numerous notices of the Product ID deficiencies in 2021. Yet Plaintiff did nothing to pursue any additional information from McKesson and represented otherwise at the hearing. Accordingly, her case should be dismissed.

Further, as Defendants stated and Plaintiffs' Liaison Counsel acknowledged at the show cause hearing, Defendants worked with Liaison Counsel to provide plaintiffs with distributor

information years prior to the instant show cause proceedings. Ex. A, 5/2/22 Hr'g Tr. at 24:7-19 (Ms. Berg acknowledging that "there were efforts with defendants liaison distributors three years ago").[1]

Finally, even if McKesson were to produce purchase records Plaintiff now claims she needs, such information would not identify the manufacturer of the docetaxel used in Plaintiff's infusions. Accordingly, Plaintiff's burden of proof—to establish the manufacturer of the docetaxel actually used in Plaintiff's infusions—cannot be satisfied. Plaintiff's unexplained and untenable blanket assertion that purchase records would enable counsel to "identify, by a preponderance of the evidence, the identity(ies) of the manufacturers utilized in Ms. Witherby's treatment" cannot justify revisiting discovery that was completed without objection over two years ago. Indeed, under the applicable Indiana law, "the plaintiff must identify the manufacturer of the product and demonstrate a causal relationship between the injury and the manufacturer's product." *See Asbestos Corp. v. Akaiwa*, 872 N.E. 2d 1095, 1098 (Ind. Ct. App. 2007). Plaintiff's attempt to obtain from McKesson further information as to dates each manufacturers' docetaxel was shipped from this distributor and the proportion sold to the facility is akin to seeking market share liability, which Indiana courts have rejected. *See City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E. 2d 1222, 1245 (Ind. 2003) (in firearms case, recognizing that market share liability in pharmaceutical cases is not the law of Indiana, and Plaintiff must establish which manufacturer actually caused the plaintiff's injury).

Accordingly, Defendants respectfully request that Plaintiff Angie Witherby's case be dismissed with prejudice for failure to obtain product identification.

Very truly yours,

Nicholas A. Insogna

Julie A. Callsen

Jordan Baehr

cc:    Dawn M. Barrios, Esq. (via email)
       M. Palmer Lambert, Esq. (via email)

---

[1] Pursuant to CMO-7 issued in 2017, the Defendants disclosed their distributors to PSC, and in addition, if subject to written discovery, were asked about the identity of distributors and wholesalers. Defendants then cooperated with the subpoena process initiated by PSC to distributors. If a distributor did not respond to an issued subpoena, Plaintiffs should have timely moved to compel compliance pursuant to Federal Rules 36 or 45.

Douglas J. Moore, Esq. (via email)
Kelly Brilleaux, Esq. (via email)
John F. Olinde, Esq. (via email)
R. Clifton Merrell, Esq. (via email)
Evan C. Holden, Esq. (via email)

13:42:43  1                UNITED STATES DISTRICT COURT
                           EASTERN DISTRICT OF LOUISIANA
2        ********************************************************
         IN RE:   TAXOTERE (DOCETAXEL)
3        PRODUCTS LIABILITY LITIGATION
                                        Docket No. MDL-2740
4                                       Section "H"
                                        New Orleans, Louisiana
5                                       Monday, May 2, 2022
         [THIS DOCUMENT RELATES TO:
6        ALL CASES]
         ********************************************************
7
                    TRANSCRIPT OF SHOW CAUSE PROCEEDINGS
8              HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                      UNITED STATES DISTRICT JUDGE
9

10
         APPEARANCES:
11
         FOR THE PLAINTIFF:          GAINSBURG BENJAMIN DAVID
12                                   MEUNIER & WARSHAUER
                                     BY:   CLAIRE E. BERG KREIDER, ESQ.
13                                   1100 Poydras St., Suite 2800
                                     New Orleans, LA 70163
14

15                                   BACHUS & SCHANKER
                                     BY:   MELANIE SULKIN, ESQ.
16                                   1899 Wynkoop St., #700
                                     Denver, CO 80202
17                                   (BY TELEPHONE)

18

19       FOR SANOFI S.A.:            IRWIN FRITCHIE URQUHART & MOORE
                                     BY:   KELLY E. BRILLEAUX, ESQ.
20                                   400 Poydras St., Suite 2700
                                     New Orleans, LA 70130
21

22       FOR ACCORD HEALTHCARE, INC.:   TUCKER ELLIS
                                     BY:   JULIE A. CALLSEN, ESQ.
23                                   950 Main Ave., Suite 1100
                                     Cleveland, OH 44113
24

25

```
1    FOR SAGENT AND ACTIVIS:          ULMER & BERNE
                                      BY:  MICHAEL J. SUFFERN, ESQ.
2                                     312 Walnut St., Suite 1400
                                      Cincinnati, Ohio 45202-4029
3

4

5
     Official Court Reporter:        Karen A. Ibos, CCR, RPR, CRR, RMR
6                                     500 Poydras Street, B-275
                                      New Orleans, Louisiana 70130
7                                     (504) 589-7776

8
        Proceedings recorded by mechanical stenography, transcript
9    produced by computer.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>P R O C E E D I N G S</u>

(MONDAY, MAY 2, 2022)

(SHOW CAUSE PROCEEDINGS)

08:35:11 (OPEN COURT.)

13:57:57    THE COURT:  All right.  Are we ready to proceed?

13:58:43    MS. CALLSEN:  Yes.  Just for the record, we're starting

13:58:45 with No. 100 of our list that we started with last week, I think it

13:58:51 was the 28th that we were here.  So we're starting with the Bachus

13:58:55 & Schanker cases, starting at No. 100.

13:58:58    And again, I just want to state for the record, so there

13:59:01 were some of these that we never did receive a response from Bachus

13:59:07 & Schanker by March 15, 2022 pursuant to the December order; and I

13:59:09 can point those out as we go along, but all of these are basically

13:59:13 in the same category that we talked about last week where efforts

13:59:17 were made and they have provided us documentation of those efforts,

13:59:21 but those efforts have resulted in no product ID.

13:59:26    THE COURT:  Okay.  Ms. Sulkin, what we have done, and I

13:59:31 don't know if you were able to listen to anything that we did last

13:59:35 week, but I think that most of the law firms -- and the reason we

13:59:41 did this by law firms is there was a general objection that was

13:59:45 lodged, and then there might be some specific objections.  So I

13:59:49 would like to start with that.

13:59:56    MS. SULKIN:  Yes, your Honor.  I was able to hear most of

13:59:59 it, there was nothing wrong with my phone, unfortunately my WiFi

14:00:04 1   was acting up.  And again, I do apologize about that.

14:00:08 2        I am able to kind of hopefully streamline what's going on

14:00:13 3   with our cases.  And I can start with the ones where we objected

14:00:20 4   based on innovator liability, but first I would just like to lodge

14:00:24 5   those general objections that I think were echoed by some of my

14:00:28 6   colleagues from some other law firms, along with Mr. Lambert from

14:00:33 7   liaison counsel, and I just want to lodge those for the record

14:00:37 8   before I continue on with specific objections.

14:00:39 9        THE COURT:  Okay.

14:00:40 10        MS. SULKIN:  I won't be addressing them if we don't have

14:00:44 11   a specific objection to that case, if that's all right with you.

14:00:46 12        THE COURT:  Are you just adopting Mr. Lambert's general

14:00:49 13   objection?

14:00:51 14        MS. SULKIN:  Mr. Lambert's and I think also Mr. Niemeyer

14:00:56 15   had some general objections, and I am going to echo those arguments

14:01:00 16   and the other arguments made by other colleagues as well.

14:01:04 17        THE COURT:  Okay.  Considering that you've adopted the

14:01:08 18   objections raised by Mr. Lambert and Mr. Niemeyer, the Court

14:01:13 19   considers those and those are noted for the record.  And so I don't

14:01:18 20   know if you want to at this point, because I will tell you it is my

14:01:22 21   intent to dismiss these cases for failure to provide product ID in

14:01:27 22   accordance with the -- in accordance with Case Management Order

14:01:34 23   12(a).  And I understand that you received notice of this

14:01:38 24   deficiency in April, September, and December of 2021, and

14:01:42 25   considering that you failed to cure, the Court would dismiss those

14:01:47  1    cases with prejudice.

14:01:50  2          And I don't know how we want to do that, perhaps I know

14:01:54  3    you have some specific objections that you would like to raise at

14:02:01  4    this time, so maybe let's pull those out and then I can dismiss

14:02:06  5    with prejudice any that I -- why don't you tell me what your

14:02:15  6    specific objections are, or do we go one at a time?  Maybe that's

14:02:18  7    the thing to do.

14:02:18  8          MS. SULKIN:  Why don't I go with groupings by innovator

14:02:26  9    liability, some where we have recently obtained product ID, some

14:02:30 10    where we have sent subpoenas to the distributors, one of which is a

14:02:34 11    defendant in this case, and then kind of go from there, if that's

14:02:38 12    all right, your Honor.

14:02:38 13          THE COURT:  That would be fine.  Let's speak to innovator

14:02:48 14    liability.

14:02:49 15          MS. SULKIN:  Yes, your Honor.  I'll just list them first,

14:02:51 16    and I'm going through my list here.  We have Kathy Basler, and

14:02:54 17    that's the innovator liability state in Illinois; we have Priscilla

14:03:01 18    Gardner, also an Illinois plaintiff; Diana Graves, another Illinois

14:03:10 19    plaintiff; Alizabeth Haddad, a California plaintiff; Ronette

14:03:19 20    Halloway, another innovator liability claim from California; Nayuca

14:03:27 21    Medina, also from California; Madeline Niles, another innovator

14:03:35 22    liability California plaintiff; Meredith Powell, who resides and

14:03:42 23    received treatment in Massachusetts, which is another innovator

14:03:46 24    liability state; Sheila Rawlins, she is a California plaintiff;

14:03:56 25    Jennifer Weigand, who is another innovator liability plaintiff from

14:04:02  1   California.

14:04:02  2            THE COURT:  Wait.  Okay.  I see it.

14:04:05  3            MS. SULKIN:  And it's my understanding that your Honor

14:04:09  4   has ordered briefing on these cases.

14:04:11  5            THE COURT:  Let me go through these plaintiffs to make

14:04:14  6   sure that I have those that you are claiming to have innovator

14:04:20  7   liability.  That would be No. 100, Kathy Basler; 117, Priscilla

14:04:29  8   Gardner; 120, Diana Graves; 121, Alizabeth Haddad; 122, Ronette

14:04:40  9   Halloway; 137, Nayuca Medina; 142, Madeline Niles; 148, Meredith

14:04:49 10   Powell; 149, Sheila Rawlins; and 160, Jennifer Weigand.  Are those

14:04:59 11   that you're claiming live in jurisdictions that allow for innovator

14:05:04 12   liability?

14:05:05 13            MS. SULKIN:  Yes, your Honor.

14:05:08 14            THE COURT:  Are there any that I missed?

14:05:11 15            MS. SULKIN:  No.

14:05:12 16            THE COURT:  Okay.

14:05:14 17            MS. CALLSEN:  Your Honor, I just want to make one

14:05:17 18   statement on behalf of the 505(b)(2)s who are non-innovators.  We

14:05:21 19   would just ask that the 505(b)(2) defendants be dismissed from

14:05:23 20   those cases because I don't think there's any dispute that we are

14:05:26 21   non-innovator defendants.

14:05:29 22            THE COURT:  Ms. Sulkin?

14:05:32 23            MS. SULKIN:  Your Honor, I believe that's correct.  Off

14:05:37 24   the top of my head I am not sure substantively, it's my

14:05:43 25   understanding that there would be briefing on this issue, but I

14:05:46 1   would just ask that we pass on ruling for innovator liability until

14:05:51 2   we are able to brief the issue.

14:05:53 3        THE COURT:  I think the basis of innovator liability

14:05:56 4   excludes the 505(b)(2)s since they were not innovators of this

14:06:03 5   drug, so the Court's going to dismiss the 505(b)(2) defendants if

14:06:09 6   indeed they're named in any of these complaints with prejudice.

14:06:13 7        As to any claims against Sanofi, the Court will defer

14:06:18 8   ruling on those.  And we have a status conference tomorrow, and

14:06:24 9   we'll set out a briefing schedule to address that issue.

14:06:39 10        Now, I believe you had something else, Ms. Sulkin?

14:06:42 11        MS. SULKIN:  Yes, your Honor.  In a few cases we recently

14:06:44 12   uploaded product identification, so I wanted to give the defendants

14:06:49 13   an opportunity to verify that.  That case is Helen Johns, No. 128,

14:06:56 14   on April 24th we uploaded product ID showing Sagent.

14:07:01 15        MS. CALLSEN:  I'm sorry, which one were you saying?

14:07:04 16        THE COURT:  No. 128, Helen Johns.

14:07:07 17        MS. CALLSEN:  All we received on 4/24 -- this is the one

14:07:10 18   that Mr. Suffern wants to address.  They tried to identify Sagent

14:07:17 19   as the manufacturer, but he can speak to the timing, it would be

14:07:20 20   impossible.

14:07:22 21        THE COURT:  Okay.

14:07:22 22        MR. SUFFERN:  If I may, your Honor?

14:07:23 23        THE COURT:  Mr. Suffern.

14:07:25 24        MR. SUFFERN:  Good afternoon, your Honor.  Michael

14:07:28 25   Suffern, I represent Sagent and the Actavis defendants as you know.

14:07:33  1          Indeed, Helen Johns did upload a statement regarding the

14:07:38  2   chemotherapy drug administered.  The problem is that the last

14:07:41  3   infusion date is October 4 of 2012, which is six months before the

14:07:46  4   Actavis New Drug Application was approved by the Food and Drug

14:07:50  5   Administration.  The only allegation as to Sagent is that it's

14:07:53  6   selling the Actavis product, and so we would submit that this is

14:07:56  7   simply impossible.

14:07:58  8          It's just one of, you know, one of the examples of this

14:08:01  9   type of evidence that's just not reliable.  And, your Honor, I have

14:08:05 10   a copy of the approval letter if you would like to see it, it's

14:08:08 11   dated on the last page.

14:08:10 12          THE COURT:  Could I see the evidence that was uploaded?

14:08:17 13          MR. SUFFERN:  Yes.

14:08:57 14          THE COURT:  Ms. Sulkin, I am looking at the NDA approval

14:09:01 15   letter dated -- "we refer to our approval letter dated April 12th,

14:09:15 16   2013."

14:09:21 17          MR. SUFFERN:  And, your Honor, if I may just add, I mean,

14:09:24 18   this is a well-known fact to the Bachus & Schanker firm.  I mean,

14:09:28 19   I've had multiple interactions with Mr. Elliott over the years

14:09:34 20   getting dismissed from cases where Sagent or Actavis were sued for

14:09:40 21   treatments that predated that date.  So it's something that's

14:09:42 22   well-known for the firm.  In fact, in this Helen Johns case neither

14:09:48 23   of my clients is even named as a defendant.

14:09:55 24          THE COURT:  Sagent Pharmaceuticals and it just says

14:09:58 25   effective approval date will be April 12th, 2013.  Ms. Sulkin, do

14:10:03  1    you have anything to say in response to this?  Is this statement

14:10:08  2    regarding chemotherapy drug administered, is that what you have?

14:10:13  3              MS. SULKIN:  Yes, your Honor.

14:10:23  4              MS. BERG:  Your Honor, maybe Ms Sulkin should be given

14:10:25  5    the opportunity to go back to the facility to discuss the

14:10:29  6    impossibility of what they put on this sheet to see if she can

14:10:33  7    gather the correct information.

14:10:44  8              THE COURT:  Well --

14:10:45  9              MR. SUFFERN:  Our position on that would just be, your

14:10:47 10    Honor, this is the third time these cases have been before your

14:10:52 11    Honor, and we think the time is right for dismissal.

14:10:55 12              As I say, our clients are not even in the case, I am just

14:10:58 13    here because I wanted to point out to the Court that we came upon

14:11:01 14    this and it's impossible based on the dates of approval.

14:11:17 15              THE COURT:  Ms. Sulkin, do you have anything to say?

14:11:20 16              MS. SULKIN:  Your Honor, we just ask that, like

14:11:26 17    Ms. Kreider suggested, that we be given an opportunity to address

14:11:30 18    the inconsistencies with the facility.

14:11:41 19              THE COURT:  Ma'am, I am going to give you until Monday of

14:11:45 20    next week, and if I don't hear something -- if there's something

14:11:49 21    else that you have that says that it's not -- you're not a named --

14:11:56 22              MR. SUFFERN:  Neither Actavis nor Sagent is named in the

14:11:59 23    case.  And I think that's probably because after much, much --

14:12:05 24    after many cases we convinced the Bachus & Schanker firm that we

14:12:09 25    shouldn't be brought into cases that predate the date of approval.

14:12:14 1 Thank you.

14:12:14 2          THE COURT:  This is what I am going to do.  I am going to

14:12:15 3 give you until Monday of next week.  If I haven't had something

14:12:20 4 that ferrets this out, I am going to dismiss the case.

14:12:24 5          MS. BERG:  Your Honor, I would ask that that be without

14:12:26 6 prejudice in case in the next month or so the facility is able to

14:12:30 7 come up with a correct --

14:12:32 8          MS. CALLSEN:  We would object to that, 60(b) is always

14:12:36 9 open.

14:12:37 10          THE COURT:  I am dismissing these cases with prejudice.

14:12:41 11 If something happens, we'll deal with it.

14:12:44 12          MS. BERG:  Yes, your Honor.

14:12:45 13          THE COURT:  Thank you.  Let me mark this.  So that would

14:12:49 14 be 5/9?

14:12:52 15          THE DEPUTY CLERK:  Yes.

14:12:54 16          THE COURT:  Yes, ma'am.  Next one.

14:12:56 17          MS. SULKIN:  The next one is Susan Thompson, which is

14:13:05 18 No. 155.  The majority of that treatment occurred before any of the

14:13:09 19 505(b)(2)s were on the market, and so we at the very least have

14:13:15 20 Sanofi as a presumptive defendant for the majority of the

14:13:20 21 treatment.  And so this case should not be dismissed.  While I

14:13:24 22 understand that we don't have proof of other manufacturers, we do

14:13:27 23 believe that Sanofi should still be a defendant.

14:13:36 24          THE COURT:  Ms. Brilleaux, I don't know if this is a

14:13:40 25 Sanofi or -- Ms. Callsen, does this --

14:13:44  1          MS. CALLSEN:  We haven't heard this before.  Again, they
14:13:47  2   don't respond to the 3/15/22 order where they are supposed to
14:13:52  3   express the communication, so this is something new to us.
14:13:55  4          MS. BRILLEAUX:  Thank you, your Honor.  That was what I
14:13:56  5   have as well --
14:13:58  6          MS. SULKIN:  Your Honor --
14:13:58  7          THE COURT:  Wait.
14:13:59  8          MS. BRILLEAUX:  -- we didn't receive a response from
14:14:01  9   plaintiffs, so Sanofi is not prepared to address any substance on
14:14:05 10   that today because this is the first time we're hearing this.
14:14:10 11          THE COURT:  Ms. Sulkin.
14:14:11 12          MS. SULKIN:  Your Honor, if I may.  On MDL Centrality it
14:14:15 13   clearly lists and shows proof of use showing that some of the dates
14:14:19 14   of treatment predate any of the 505(b)(2) licenses.  And so this
14:14:25 15   case -- our position is that this case should never have been on
14:14:31 16   this docket list to begin with.
14:14:33 17          THE COURT:  You didn't think it would be a good idea to
14:14:37 18   tell them that?
14:14:44 19          MS. CALLSEN:  Can we have until Monday to confirm,
14:14:47 20   May 9th?
14:14:48 21          MS. BRILLEAUX:  I think we would take the position that
14:14:50 22   that's still not definitive product ID, but at the same time --
14:14:54 23          THE COURT:  We're going to -- I am going to ask for
14:15:01 24   correspondence from both by Monday.  I need to look at MDL
14:15:06 25   Centrality, I don't know what's there, but I wish that would have

14:15:11  1   been communicated prior.  So this one will be until Monday, 5/9,

14:15:17  2   some response from both parties.

14:15:18  3         Okay.  Yes, ma'am.  Next one.

14:15:21  4         MS. SULKIN:  152, Sunjah, Paisley.  Today we just

14:15:31  5   uploaded purchasing history from UAB Kirklin indicating who the

14:15:39  6   manufacturers could be.

14:15:42  7         MS. CALLSEN:  Again, your Honor, indicating who the

14:15:44  8   manufacturers could be is similar to what we discussed last week.

14:15:48  9   And I would actually like to hand up to you an example of what's

14:15:51  10  been submitted that shows the different distributors.  This

14:16:02  11  one-page document, we tried to blow it up to make it readable, has

14:16:05  12  been submitted by several Bachus & Schanker cases.  I mean, with

14:16:09  13  different information but the same format.  For one thing, we don't

14:16:13  14  know the format.  But it basically lists all of the possible

14:16:19  15  distributors from April -- or manufacturers, excuse me, from April

14:16:24  16  2014 to 2017.

14:16:26  17        As you can tell, there's Sagent, Winthrop, Accord

14:16:30  18  Healthcare, or Dr. Reddy's Laboratories, which is one of those

14:16:35  19  ANDAs, abbreviated new drug application holders.  So all four of

14:16:39  20  those manufacturers had product in this particular facility between

14:16:42  21  that time frame.  And again, our position is this does not

14:16:46  22  establish product ID as to any one plaintiff.  It's basically a

14:16:57  23  purchase history of the facility.

14:16:59  24        THE COURT:  Yes, ma'am.

14:17:00  25        MS. SULKIN:  Yes, your Honor.  We submit that this is a

14:17:02  1   factual issue that is in the purview of the jury to decide.  The

14:17:09  2   defendants are surely able to present evidence that it was not

14:17:12  3   their product, but we believe that if individual discovery were

14:17:15  4   able to proceed, we were able to take additional depositions, that

14:17:24  5   it would be -- we would overcome any sort of obstacle to prove that

14:17:29  6   it was going to be manufactured (AUDIO DISTORTION) manufacturer.

14:17:35  7        THE COURT:  Well, who do you purport the manufacturer to

14:17:38  8   be for this plaintiff?

14:17:40  9        MS. SULKIN:  My apologies, your Honor, I am just trying

14:17:57 10   to look through this.

14:17:58 11        THE COURT:  I'm trying to figure this out.

14:18:10 12        MS. SULKIN:  And actually for this plaintiff, I will

14:18:13 13   withdraw this purchasing history, because Ms. Sunjah treated prior

14:18:20 14   to this purchasing history, but we did upload it for Yvonne Dixon,

14:18:28 15   who has the same purchasing history, this is something we received

14:18:31 16   from UAB Kirklin.

14:18:33 17        THE COURT:  So this is Ms. Paisley Sunjah, her case is

14:18:36 18   going to be dismissed with prejudice.

14:18:40 19        Okay.  Now, who was your next?

14:18:49 20        MS. SULKIN:  Yvonne Dixon, and it's going to involve the

14:18:54 21   same manufacturers.

14:18:56 22        THE COURT:  What number is --

14:19:03 23        THE DEPUTY CLERK:  112.

14:19:05 24        MS. SULKIN:  112.

14:19:06 25        THE COURT:  Okay.  Yvonne Dixon.  When did she receive

14:19:10  1   treatment?

14:19:13  2          MS. SULKIN:  Yvonne Dixon received treatment from

14:19:16  3   September 17th, 2015, through November 19th of 2015.

14:19:22  4          MS. CALLSEN:  This purchase history that I just provided

14:19:24  5   is what they provided as well.

14:19:54  6          THE COURT:  And who do you say the manufacturer is?

14:19:58  7          MS. SULKIN:  Winthrop, Accord, and Sagent.

14:20:09  8          MS. CALLSEN:  Or obviously.

14:20:25  9          THE COURT:  I just don't think this is sufficient

14:20:27 10   evidence because it could have been any of these, and is there any

14:20:35 11   way that you're going to make a determination as to which one, or

14:20:38 12   you're just going to ask the jury to pick?

14:20:41 13          MS. SULKIN:  What we would do in this scenario where

14:20:45 14   we're allowed to proceed with discovery is we would likely take

14:20:50 15   depositions of the distributor, and also whoever runs the pharmacy

14:21:00 16   department of UAB Kirklin.  We've in the past been able to secure

14:21:05 17   letters from other facilities indicating how quickly they're able

14:21:10 18   to go through their inventory, and more likely than not within a

14:21:15 19   certain period of time this inventory would have been used.  And so

14:21:20 20   that helps us determine/narrow down who the manufacturer is.

14:21:25 21          Additionally, your Honor, there are cases in which there

14:21:27 22   are multiple manufacturers that are infused to the same person, and

14:21:33 23   so it could be that that's what occurred here as well.

14:21:38 24          MS. CALLSEN:  Could.

14:21:39 25          THE COURT:  Do you have any idea what she was

14:21:42  1   administered, what the docetaxel vial was?  Because I am looking.

14:21:49  2   July 15th through December 17th, Sanofi, if you will, distributed

14:21:55  3   80 Mg/4 Ml vials.  And Accord, during that exact same time frame

14:22:04  4   was distributing Docetaxel, 20 Mg.  Do you have any idea -- well,

14:22:12  5   no, also Accord was also doing the 80 Mg/4 Ml vials.

14:22:20  6        MS. CALLSEN:  Exactly.  And, your Honor, I just want --

14:22:22  7   the time for discovery is past.  I mean, CMO 12 allows for that,

14:22:28  8   nothing was pursued.

14:22:29  9        And further on 3/11/22, plaintiffs uploaded a document

14:22:33 10   stating that they had pursued good faith efforts to obtain product

14:22:39 11   ID over the years from 2000 (SIC) to 2022.  So they had four years

14:22:47 12   and they told us they expended good faith efforts in those four

14:22:53 13   years.

14:22:54 14        THE COURT:  I understand.  I am just trying to understand

14:22:56 15   what Ms. Sulkin is saying.

14:23:03 16        MS. SULKIN:  Your Honor, obviously we -- CMO 12 does

14:23:08 17   exist to do some discovery, but there is also -- if these cases

14:23:15 18   were remanded or in a different wave of discovery, I think we could

14:23:19 19   sort out factual issues.  We don't think that that's a

14:23:24 20   determination that should be made at this stage.

14:23:27 21        THE COURT:  I guess my frustration is you've reached out

14:23:37 22   to the infusion facility, and so you know -- I am assuming you

14:23:40 23   understand that she received Docetaxel and that then you were able

14:23:49 24   to get this information.  But are you telling me they had nothing

14:23:52 25   as to your client's, what she was administered?  And I mean, how

14:24:01  1    would that change?

14:24:04  2          MS. SULKIN:  Well, your Honor, we wouldn't necessarily

14:24:08  3    know certainly which manufacturer she would have received, but

14:24:12  4    that's not the standard for civil court.  We just need to show by a

14:24:16  5    preponderance of the evidence more likely than not who the

14:24:19  6    manufacturer or manufacturers were.

14:24:30  7          MS. CALLSEN:  I mean, this is just pure speculation, plus

14:24:32  8    this product has a two year shelf life.  So if she received it in

14:24:38  9    2015, what I just handed to you shows products shipped in 2014.

14:24:43 10    The facility could have used product that was already on their

14:24:46 11    shelf.  I mean, it's just speculation, it's not enough to go to a

14:24:50 12    jury.

14:24:52 13          MS. SULKIN:  And, your Honor, the defendants are welcome

14:24:54 14    to introduce that sort of evidence to poke holes in our case;

14:24:59 15    however, we don't think that it's the right time to dismiss this

14:25:02 16    case.

14:25:03 17          THE COURT:  I think there's been adequate opportunity for

14:25:08 18    discovery, and I just -- I think you have to be able to identify a

14:25:17 19    manufacturer because --

14:25:23 20          MS. SULKIN:  Your Honor --

14:25:25 21          THE COURT:  I guess my concern is, if I got in an

14:25:29 22    automobile accident I couldn't just start suing manufacturers.  A

14:25:33 23    car hit me, Ford manufactures cars, so the jury can decide if it

14:25:39 24    was probably a Ford.  And I don't think these purchase records get

14:25:50 25    me in the realm of anything that the jury can decide because it

14:25:58  1   sounds to me like they would be guessing as well.  And so I am

14:26:02  2   going to dismiss the case.

14:26:06  3       MS. SULKIN:  Your Honor, can I get clarification just on

14:26:10  4   the standard that you say they proved for identifying the

14:26:15  5   manufacturer, whether it's beyond a reasonable doubt or by a

14:26:19  6   preponderance of the evidence?

14:26:21  7       THE COURT:  Oh, I think it is preponderance of evidence.

14:26:29  8   But I think when you are naming a defendant you have to know that

14:26:34  9   that defendant was a manufacturer of a product, whether or not

14:26:39 10   there was a defect in it, then we're going to get into the

14:26:46 11   preponderance of evidence.  I think you have to have a real basis

14:26:56 12   for making that determination, and what I have is purchasing

14:27:00 13   records by a medical facility, and I don't think that's sufficient

14:27:05 14   to go to a jury.

14:27:12 15       MS. SULKIN:  Your Honor, we obviously object.

14:27:14 16       THE COURT:  Of course.  Of course.  Of course.  Of

14:27:19 17   course.  I just don't think that there's sufficient information.

14:27:25 18       MS. SULKIN:  We find this akin to a situation in which if

14:27:30 19   two people fired a gun and one bullet hits one person, you know,

14:27:34 20   you might not be able to identify which person was the one who

14:27:41 21   inflicted that wound; however, you could have circumstantial

14:27:44 22   evidence to prove by a preponderance of the evidence who that

14:27:50 23   person was or a jury could deduce and make their own assumptions to

14:27:57 24   determine who the tort-feasor is.  And so we find that situation to

14:28:01 25   be akin to what's going on here because we do think that there is a

14:28:06 1    basis for who the manufacturer is based on the purchasing records.

14:28:10 2    The plaintiff could not be administered a drug by a manufacturer

14:28:15 3    that was not at the facility, but we believe that we have

14:28:19 4    sufficient proof to go forward.

14:28:21 5         THE COURT:  And your objection is noted for the record.

14:28:26 6         Okay.  Ms. Sulkin, any others?

14:28:34 7         MS. SULKIN:  I am just going through my notes quickly to

14:28:40 8    see if there's any others in that category.  No more that we've

14:28:48 9    submitted product identification for, but we do have some

14:28:52 10   objections based on subpoenas issued to distributors.

14:28:58 11        And one of the distributors is obviously a defendant in

14:29:02 12   this litigation, McKesson, and it's my understanding that these

14:29:08 13   distributors were working with liaison counsel to produce

14:29:15 14   purchasing records that -- actually, it was -- and some of these

14:29:19 15   purchasing records would be in the company of letters from

14:29:24 16   physicians or pharmacies indicating a very narrow window of which

14:29:31 17   the purchased inventory would have been administered to a patient,

14:29:35 18   and so it would narrow the purchase history down even further.  And

14:29:41 19   so I'll give the list of those plaintiffs, if that's all right.

14:29:41 20        THE COURT:  Okay.

14:29:41 21        MS. CALLSEN:  Your Honor, I guess --

14:29:45 22        MS. SULKIN:  (AUDIO DISTORTION.)

14:29:45 23        THE COURT:  Wait, wait, wait.  Please stop.  Can we go

14:29:57 24   back because I missed your first one, who was that?

14:30:00 25        MS. SULKIN:  The first one is plaintiff 109, Gwendolyn

14:30:07 1    Crawford.

14:30:07 2              THE COURT:  Okay.

14:30:08 3              MS. SULKIN:  And for each one of these subpoenas we did

14:30:10 4    provide a copy to the defendant.

14:30:15 5              MS. CALLSEN:  Your Honor --

14:30:17 6              THE COURT:  I am not sure I understand what's happening.

14:30:20 7              MS. CALLSEN:  Yeah, I don't either, that's my question.

14:30:22 8    I mean, I can see that on Crawford a subpoena was issued to a

14:30:26 9    cancer institute for the third time to the same cancer institute,

14:30:31 10   that yielded no results previously.  I don't see that a subpoena

14:30:36 11   was administered to McKesson, which I believe is what Ms. Sulkin is

14:30:40 12   saying.

14:30:41 13             Melanie, if I am mishearing you, please set me straight.

14:30:46 14             MS. SULKIN:  Yes, we issued a subpoena to McKesson for

14:30:52 15   this plaintiff.  Every time we issue a subpoena, we are required to

14:30:57 16   also e-mail all defendants, which we did.  And then we've also been

14:31:02 17   working with liaison counsel for some of these cases as well.  And

14:31:07 18   so we would just ask that we at least have the opportunity to or

14:31:11 19   McKesson be required to submit purchasing history from these

14:31:17 20   facilities given they are defendants in this matter, and then we

14:31:20 21   can take this issue up again if the purchasing history is not

14:31:25 22   deemed sufficient at that time.

14:31:26 23             MS. CALLSEN:  Your Honor, my understanding is liaison

14:31:28 24   counsel has been working with McKesson in serving subpoenas, I am

14:31:33 25   not trying to put you on the spot, but I know it's been two or

14:31:36  1    three years.  I remember working with Ms. Barrios on this.  So my

14:31:43  2    understanding is those subpoenas we had to all identify -- all of

14:31:46  3    the manufacturers had to identify their distributors, then all of

14:31:48  4    these distributors were served with subpoenas seeking the very

14:31:54  5    information Ms. Sulkin is seeing.  So I am just pointing out that

14:31:57  6    that step has already been taken, so I am just not sure what is

14:32:00  7    being proposed at this point that's additional.

14:32:03  8              MS. SULKIN:  Your Honor, as Ms. Brilleaux laid out, our

14:32:08  9    subpoenas have been received, but we've not received any response

14:32:12 10    to the subpoena (AUDIO DISTORTION).

14:32:13 11              THE COURT:  I am really having trouble hearing you,

14:32:16 12    Ms. Sulkin.  I am not trying to be difficult.  Wait, what?

14:32:18 13              MS. SULKIN:  I apologize.  I guess I am not a recipient

14:32:24 14    of good WiFi (AUDIO DISTORTION).

14:32:27 15              Your Honor, we have not received any of the purchasing

14:32:31 16    history from McKesson.

14:32:34 17              THE COURT:  Okay.

14:32:35 18              MS. CALLSEN:  My understanding is those subpoenas were

14:32:35 19    served --

14:32:35 20              MS. SULKIN:  (AUDIO DISTORTION.)

14:32:41 21              MS. CALLSEN:  -- ages ago, and the time to --

14:32:41 22              MS. SULKIN:  (AUDIO DISTORTION.)

14:32:43 23              MS. CALLSEN:  I am not trying to talk over you, I'm

14:32:46 24    sorry.

14:32:47 25              THE COURT:  I know, that's part of this problem.  Okay.

14:32:49  1    Go ahead, ma'am.

14:32:51  2         MS. SULKIN:  Yes, these subpoenas were served, but it's

14:32:54  3    my understanding that there was no response; and that McKesson was

14:33:00  4    working with liaison counsel and was supposed to be producing this

14:33:04  5    information to liaison counsel but had not done so.

14:33:08  6         MS. CALLSEN:  And I am just going to reiterate that

14:33:12  7    CMO 12 sets forth out all these steps that could have been pursued,

14:33:17  8    and we're here now because the steps have been pursued, which we

14:33:20  9    appreciate have been done, but we still have no product ID.

14:33:23 10         MS. SULKIN:  And, your Honor, when McKesson, a defendant

14:33:27 11    in this matter is the keeper of that information, I don't know what

14:33:30 12    else we could do.

14:33:39 13         THE COURT:  Ms. -- it's not Berg.

14:33:39 14         MS. BERG:  Kreider, your Honor.  I'll answer to Berg,

14:33:39 15    too, though.

14:33:47 16         I am not sure if McKesson has outstanding responses to

14:33:54 17    liaison, but if Ms. Sulkin has sent them out and they're

14:33:59 18    outstanding, then maybe we should defer this to the next conference

14:34:03 19    after --

14:34:03 20         THE COURT:  All right.  How many plaintiffs are we

14:34:10 21    talking about?

14:34:14 22         MS. SULKIN:  For McKesson specifically on this show cause

14:34:18 23    hearing, hold on one second, your Honor.  On this show cause

14:34:41 24    hearing, I would have to go through my records that I don't have

14:34:44 25    handy with me to see how many subpoenas would be outstanding

14:34:51 1    subpoenas to McKesson there are.

14:34:52 2             THE COURT:  Well, I think you were going to identify

14:34:54 3    them.

14:34:57 4             MS. SULKIN:  Yes.

14:34:59 5             THE COURT:  Let's have you identify them and let me see

14:35:02 6    what we have, what we're dealing with.  We have Gwendolyn Crawford.

14:35:08 7    Let me just see.

14:35:08 8             MS. SULKIN:  And then No. 162, Angie Witherby.

14:35:18 9             THE COURT:  Are those the only two?

14:35:22 10            MS. SULKIN:  In this hearing.  There are likely others,

14:35:27 11   as we sent several subpoenas to McKesson.

14:35:31 12            THE COURT:  I am talking about in this hearing.  I am

14:35:32 13   just talking about today, I am not looking in advance, I don't want

14:35:35 14   to know anything else.

14:35:38 15            So for this hearing, we have Gwendolyn Crawford and Angie

14:35:46 16   Witherby; is that correct?

14:35:47 17            MS. SULKIN:  Correct.

14:35:53 18            THE COURT:  I don't have enough information, I really

14:35:58 19   don't.  I am going to ask that I be presented with just letter

14:36:05 20   briefing telling me where we are with this.

14:36:13 21            MS. CALLSEN:  So letter briefing from plaintiffs, your

14:36:15 22   Honor?  This is the first I am hearing of this issue, too, so I

14:36:20 23   am not sure what --

14:36:21 24            THE COURT:  This is what I am going to do.  I am going to

14:36:23 25   ask Ms. Sulkin to submit letter briefing by Monday and then you may

14:36:27  1    respond by Friday of next week.

14:36:29  2            MS. CALLSEN:  Okay.

14:36:30  3            THE COURT:  And then I can see what it is, where we are.

14:36:38  4    Okay.

14:36:38  5            MS. SULKIN:  And, your Honor, we just also request that

14:36:41  6    McKesson be ordered to produce purchasing history for the subpoenas

14:36:47  7    that they have received, we're not aware of receiving any --

14:36:53  8            THE COURT:  I think that's what a subpoena is.

14:36:55  9            MS. CALLSEN:  I've seen communications back and forth

14:36:59 10    with McKesson on these issues, so my understanding is they have

14:37:01 11    provided what they could.  But without the details, I don't --

14:37:03 12            THE COURT:  Let's see where we are and then we can

14:37:06 13    proceed from there.

14:37:08 14            MS. BRILLEAUX:  Your Honor, for No. 155, Susan Thompson,

14:37:12 15    can we request the same letter briefing schedule so that Sanofi has

14:37:16 16    the opportunity to respond to what plaintiff's argument is since

14:37:20 17    this isn't anything we were aware of until today?

14:37:23 18            THE COURT:  So ordered, yeah.

14:37:25 19            MS. BRILLEAUX:  Thank you.

14:37:29 20            THE COURT:  All right.  Ms. Sulkin.

14:37:36 21            MS. CALLSEN:  Anything else?

14:37:40 22            MS. SULKIN:  Yes, your Honor.  For some of these other

14:37:45 23    distributors, we would just like a little bit more time.  We've

14:37:51 24    sent subpoenas to Cardinal Health as well, and it was my

14:37:54 25    understanding that they were working with defendants and liaison

14:37:57  1    counsel, and we just request additional time to be able to check in

14:38:01  2    on those subpoenas.

14:38:03  3              THE COURT:  For which plaintiffs?

14:38:07  4              MS. SULKIN:  For No. 16 --

14:38:11  5              THE COURT:  One what?

14:38:13  6              MS. SULKIN:  116, Christy Fields.

14:38:17  7              MS. CALLSEN:  And again, Ms. Sulkin, are you referring to

14:38:20  8    efforts that started -- I don't even know, do you remember, was it

14:38:23  9    three years ago, four years ago?  I am just trying to get a handle

14:38:27 10    on what you're talking about.  I mean, I remember all of these

14:38:32 11    going on I want to say four years ago.  I remember working with

14:38:36 12    Ms. Barrios on it, and I know she is not on, I am not trying to --

14:38:38 13    she is not on the phone -- but we worked well together on these

14:38:42 14    issues.

14:38:43 15              MS. BERG:  There were efforts with defendant liaison

14:38:47 16    distributors three years ago, yes.  Some of the distributors I

14:38:50 17    believe requested individual subpoenas from plaintiffs' counsel and

14:38:55 18    wouldn't -- didn't cooperate in the group setting.  So it may be

14:39:00 19    that there's more opportunity for her to work on it.

14:39:08 20              MS. SULKIN:  And I believe McKesson was one of them.

14:39:11 21              THE COURT:  What is the issue with Christy Fields?

14:39:14 22              MS. SULKIN:  We sent a subpoena to the distributor

14:39:17 23    Cardinal Health, and we just want to be given the opportunity to

14:39:22 24    checkup on what the efforts are amongst the defendants and liaison

14:39:26 25    counsel with regards to the subpoena.

14:39:29 1          THE COURT:  And where is -- I mean, is this the first

14:39:32 2  subpoena that's been issued to Cardinal Health?

14:39:37 3          MS. SULKIN:  For this plaintiff, yes.

14:39:40 4          It's interesting, your Honor.  Originally when we would

14:39:45 5  send subpoenas to Cardinal Health or AmerisourceBergen.

14:39:50 6  AmerisourceBergen is one of the distributors, and they generally,

14:39:53 7  readily provided us with this information; but after a little

14:39:57 8  while, these distributors stopped responding to individual counsel.

14:40:02 9  McKesson has never responded to one of my subpoenas, and Cardinal

14:40:08 10 Health said that they were dealing with these subpoenas on a group

14:40:11 11 basis, and that was kind of the last I had heard.

14:40:15 12         THE COURT:  Okay.  And when was this subpoena issued to

14:40:18 13 Cardinal Health?

14:40:21 14         MS. SULKIN:  Gosh.  I want to 2019 or 2020.

14:40:28 15         MS. CALLSEN:  I guess that just goes to my point, your

14:40:30 16 Honor.  I mean, if they're just now following up on this because

14:40:33 17 they were put on an order that they actually had to do something.

14:40:38 18         Ms. Brilleaux, what's your position on that?

14:40:42 19         MS. SULKIN:  And, your Honor, we were not doing nothing

14:40:46 20 as Ms. Brilleaux suggests, we were told that they were working with

14:40:50 21 the defendants and liaison counsel.  And unfortunately, as the

14:40:54 22 plaintiffs were not the keepers of this information, defendants are

14:40:57 23 the ones who had the relationships with these distributors.  It's

14:41:01 24 not us.

14:41:07 25         MS. CALLSEN:  This is all new -- I think you know what

14:41:10  1   I'm going to say, your Honor, so I won't belabor the point.

14:41:19  2   Defendants are who provided the information as to who our

14:41:22  3   distributors are, that's true.

14:41:25  4           THE COURT:  Okay.

14:41:25  5           MS. SULKIN:  (AUDIO DISTORTION.)

14:41:26  6           THE COURT:  Listen, I know there's a great deal of

14:41:31  7   frustration all around, but let me remind all of you, I am really

14:41:38  8   the one that has the least bit of information as to the facts about

14:41:43  9   these particular plaintiffs, because, you know, I have not looked

14:41:46 10   at MDL Centrality before I got here.  You have.  I mean, I just --

14:41:57 11   I don't know -- I'll defer for a couple of weeks to give me an

14:42:00 12   opportunity to look at it, but I don't know.  I am going to ask you

14:42:04 13   to give me something, include that on the list of briefing.

14:42:07 14           But, Ms. Sulkin, I just have to tell you, I really wish

14:42:12 15   you would have had this conversation with defense counsel before we

14:42:14 16   walked in here so that they were at least -- we would be able to

14:42:20 17   discuss it meaningfully.  I feel like I can't do that.  So I am

14:42:25 18   going to order letter briefing on this by Monday of next week and

14:42:31 19   defense can respond by Friday of next week.

14:42:35 20           Okay.  Ms. Sulkin, let's go to the next one.

14:42:46 21           MS. SULKIN:  I'm just -- we don't have too many left.

14:42:49 22   There are a couple of other ones with the same issue as Ms. Fields,

14:42:57 23   but I am going to try to go in order on my list just to speed

14:43:03 24   things up.

14:43:04 25           For Johnna Hohenberg, No. 124.  This facility responded

14:43:12  1    to us recently saying they think our subpoena is invalid because a

14:43:14  2    judge didn't sign it.  I was in trial the last month, and so I just

14:43:19  3    request a two-week extension to try and call this facility and see

14:43:24  4    if I can straighten things out with the facility and let them know

14:43:28  5    that they're valid.

14:43:29  6            THE COURT:  I will roll that one over until next month.

14:43:33  7            MS. CALLSEN:  Until when, I'm sorry, your Honor?

14:43:35  8            THE COURT:  The next hearing.

14:43:39  9            MS. SULKIN:  Charlotte Jefferson has the same issue as

14:43:44 10    Ms. Fields, Cardinal Health is the wholesaler and we did issue a

14:43:51 11    subpoena. (AUDIO DISTORTION.)

14:43:58 12            THE COURT:  That's going to be letter briefing.

14:44:06 13            MS. SULKIN:  The next one is 131, Dorothy Lawrence.  I am

14:44:11 14    in contact with risk management for Cleveland Clinic, and I have

14:44:19 15    been successful in getting product identification previously, so I

14:44:22 16    just ask that this case be rolled over until the next hearing.

14:44:26 17            MS. CALLSEN:  Which one, your Honor, I'm sorry?  Which

14:44:28 18    one, Melanie?

14:44:28 19            THE COURT:  Dorothy Lawrence, 131.  So she received

14:44:38 20    treatment at the Cleveland Clinic?

14:44:40 21            MS. SULKIN:  Correct.

14:44:45 22            THE COURT:  But you hadn't -- I am just trying to

14:44:49 23    understand where we were, but you have not received product ID?

14:44:56 24            MS. SULKIN:  Correct.  But there has been other

14:44:58 25    plaintiffs who treated at Cleveland Clinic in the same time period

14:45:02  1    and I was able to obtain product ID, and I am in contact with the

14:45:06  2    risk manager there and he is generally pretty responsive to me

14:45:10  3    so --

14:45:10  4            THE COURT:  I'll roll that one over to the next.

14:45:17  5            MS. SULKIN:  Thank you, your Honor.

14:45:23  6            For 135, Derhonda Mcclellan, the facility told us that

14:45:31  7    they had sent an NDC code via mail to us but we have not received

14:45:37  8    anything, and so we would just ask that this case be rolled over to

14:45:42  9    the next conference so we can ask them to mail it again.

14:45:45  10           THE COURT:  All right.  I'll roll this one over.

14:45:48  11           MS. SULKIN:  Thank you, your Honor.

14:46:00  12           THE COURT:  Okay.

14:46:02  13           MS. SULKIN:  154, Mary Thomas.  We just received a

14:46:07  14   notification that there are new records.  I paid for them and we're

14:46:12  15   just waiting for them to be mailed, and so we would just ask for

14:46:16  16   this case to be rolled over to see if those medical records have

14:46:21  17   product ID.

14:46:22  18           THE COURT:  We'll roll over.

14:46:27  19           MS. SULKIN:  And then for 147, Luz Pluguez -- I am

14:46:36  20   probably butchering that name -- we know that the wholesaler is

14:46:45  21   Drogueria Castillo, and we would just ask for the opportunity to

14:46:48  22   subpoena them.  They are a Puerto Rican distributor.

14:46:56  23           MS. CALLSEN:  In this particular case, again, they

14:46:59  24   submitted good faith efforts that they've tried to provide product

14:47:03  25   ID and shown us evidence of those, but they don't have it.  So I am

14:47:06  1   not understanding.  Are they saying they didn't really exert good

14:47:09  2   faith efforts and they're now doing it?  I guess -- I know I am

14:47:11  3   frustrated, your Honor, but I am just saying.

14:47:15  4            THE COURT:  Ms. Sulkin, did you just subpoena this?

14:47:20  5            MS. SULKIN:  No.  We subpoenaed them awhile back, but we

14:47:24  6   recently found out or assuming that the wholesaler is Drogueria

14:47:24  7   Castillo.

14:47:34  8            And so I take issue with asserting that we did not submit

14:47:37  9   good faith efforts.  We have constantly been trying to make good

14:47:43 10   faith efforts, and unfortunately, when we don't have the

14:47:46 11   information or who is the keeper of this information, sometimes we

14:47:57 12   learn information piecemeal.  So I take issue with the fact that

14:47:59 13   Ms. Brilleaux (SIC) is suggesting that I have not been acting in

14:48:02 14   good faith.

14:48:03 15            MS. CALLSEN:  I'm sorry, Melanie, that's not what I -- my

14:48:05 16   point was that you've already told us that you made good faith

14:48:08 17   efforts over the years and now you're telling us, the Court and us,

14:48:12 18   that you need to make more effort.  So, I'm sorry, but that does

14:48:16 19   make us question your prior certification that you've already done

14:48:19 20   that.

14:48:22 21            MS. SULKIN:  Well, you can make a good faith effort and

14:48:25 22   then continue to make attempts to make a good faith effort.  I

14:48:30 23   don't rest on my role, I continue to try and get additional

14:48:33 24   information.

14:48:34 25            THE COURT:  All right.  So you have requested more

14:48:38 1    information from who?

14:48:40 2              MS. SULKIN:  We will be requesting it if we're given the

14:48:52 3    opportunity to -- information from Drogueria Castillo.

14:48:52 4              THE COURT:  And they are?

14:48:53 5              MS. SULKIN:  They are a wholesaler in Puerto Rico.

14:48:58 6              THE COURT:  And they provided Docetaxel to whom?

14:49:03 7              MS. SULKIN:  To the facility that our client treated at.

14:49:18 8              THE COURT:  And where did you just get this information

14:49:21 9    from?

14:49:24 10             MS. SULKIN:  From counsel for the hospital.

14:49:38 11             THE COURT:  And you just received that information?

14:49:41 12             MS. SULKIN:  No, we actually did receive it awhile back

14:49:44 13   but I just found it.

14:49:55 14             THE COURT:  We're going to roll it over to the next

14:49:57 15   hearing, but that's it.

14:49:59 16             Okay.  Who else?

14:50:03 17             MS. SULKIN:  And that was everybody on my list that I had

14:50:06 18   specific objections to.

14:50:08 19             THE COURT:  Okay.

14:50:09 20             MS. CALLSEN:  Just for the record, I would just like to

14:50:11 21   put something on the record.  We just submitted two plaintiffs

14:50:14 22   counsel, because that's the first step, a list of almost 600 cases

14:50:19 23   I believe, Kate, for the next round.  We would just ask that

14:50:24 24   plaintiffs please look at this now rather than wait until the show

14:50:28 25   cause hearing to do so.

14:50:33  1          MS. BERG:  Your Honor, this is one of our first one of

14:50:36  2    these types of hearings, and while we both tried to do our best,

14:50:40  3    there is definitely some issues that arose with timing and things.

14:50:43  4    Now we know some of the issues that we're going to see on these,

14:50:46  5    and the briefing will help work that out.

14:50:49  6          THE COURT:  And I appreciate that, Ms. Berg, but part of

14:50:52  7    my frustration is that there was an opportunity when the first list

14:50:56  8    went out in March -- I think it was April, September, and December,

14:51:00  9    and now for the first time we're hearing that outstanding subpoenas

14:51:05 10    are there.  It seems to me that it behooves the defendants -- I

14:51:10 11    mean, the plaintiffs to say this is the status in this case so that

14:51:15 12    perhaps we're not hearing these things for the first time in the

14:51:19 13    show cause hearing.

14:51:20 14          But with that, I have heard the objections of Ms. Sulkin,

14:51:26 15    but the Court's going to dismiss with prejudice:  No. 101, Karin

14:51:29 16    Bosela; 102, Tina Breznik; 103, Pamela Brito; 104, Shawna Brooks;

14:51:40 17    105, Maria Campbell; No. 106, Debra Cantor; No. 107, Soundra

14:51:46 18    Chavez; No. 108, Joan Coleman; No. 110, Tammy Crumity; No. 111,

14:51:58 19    Sandra Darby; 113, Gloria Dowd; 114, Carol Fancher; 115, Crystal

14:52:09 20    Farmakis; No. 118, Sharon Gardner; 119, Patricia Goldsboro; 123,

14:52:19 21    Connie Hendrix; 125, Diane Jackson; 127, Elaine Jenkins; 129, Eva

14:52:28 22    Johnson; 130, Sheila Kimbrell; 132, Nancy Lawson; 133, Wanda Lopez;

14:52:37 23    134, Karen Lumpkin; 136, Sheila McDowell; 138, Yvonne Mitchell;

14:52:46 24    139, Twili Moore; 140, Beverly Neal; 141, Renice Newton; 143,

14:52:58 25    Kimberlee Norwood; 144, Jamie Payne; 145, Valaire Pilson; 146,

14:53:05  1   Gloria Pittman; 150, Susan Reeder; 151, Dorothy Sundell; 153,

14:53:17  2   Juanita Taylor; 156, Cynthia Tyrone; 157, Ella Varner; 158, Trudie

14:53:29  3   Wafer; 159, Jan Watts; 161, Norma Wilson; 163, Liz Zito; and 164,

14:53:44  4   Patricia Zupko.

14:53:48  5         And for the record, those numbers that I identified with

14:53:50  6   those that were on the hearing list, those are not the actual MDL

14:53:56  7   docket number.

14:53:56  8         Anything further?

14:53:58  9         MS. CALLSEN:  Not from defendants, your Honor.

14:54:00 10         MS. BERG:  No, your Honor.

14:54:00 11         THE COURT:  Okay.  Court's adjourned until tomorrow.

14:54:03 12         MS. CALLSEN:  Thank you.

14:54:04 13         MS. BERG:  Thank you.

14:54:04 14         THE COURT:  Thank you.

14:54:05 15         THE DEPUTY CLERK:  All rise.

14:54:23 16      (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

17

18                          *  *  *  *  *  *

19

20                       REPORTER'S CERTIFICATE

21         I, Karen A. Ibos, CCR, Official Court Reporter, United
         States District Court, Eastern District of Louisiana, do hereby
22       certify that the foregoing is a true and correct transcript, to the
         best of my ability and understanding, from the record of the
23       proceedings in the above-entitled and numbered matter.

24
                            /s/ Karen A. Ibos
25                       Karen A. Ibos, CCR, RPR, CRR, RMR
                         Official Court Reporter