# Attachment 2



May 9, 2022

Honorable Jane Triche Milazzo
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room C-367
New Orleans, Louisiana 70130

Re:     In re: MDL 2740 Taxotere (Docetaxel) Products Liability Litigation; Christy Fields v. Sanofi U.S. Services Inc., et al. 17-11449

Dear Judge Milazzo,

Pursuant to this Court's Order, Plaintiff Christy Fields hereby submits her briefing in opposition to dismissal.  As the Court is aware, facilities do not purchase docetaxel directly from the manufacturer but instead manufacturers have relationships with and sell docetaxel to distributorships, which then sell the docetaxel to infusion centers. Throughout this litigation, obtaining purchasing history from third-party distributors has proven to be a difficult and lengthy process.

Plaintiff received a letter from Plaintiff's infusion center, University of Colorado Hospital, that the docetaxel Ms. Fields would have been treated with, more likely than not, was purchased from Cardinal Health within two weeks of each treatment.  **Exhibit 1**. Plaintiff received docetaxel infusions between June 27, 2014, and October 16, 2014. **Exhibit 2**. Thus, the relevant purchasing history would more likely than not be between June 13, 2014, and October 16, 2014.

Plaintiff issued a subpoena to Cardinal Health on February 26, 2019, for University of Colorado Hospital's purchasing history from May 1, 2014, and October 16, 2014, and an attorney for Cardinal Health indicated that a search was being conducted for the purchasing records and that they would be produced if found. **Exhibit 3**.

It was confirmed that Cardinal Health does not have purchasing history from University of Colorado Hospital and Plaintiff would now like the opportunity to reconnect with risk management at University of Colorado Hospital to verify whether Cardinal Health was the distributor at the time of Ms. Fields's treatment or whether a different distributor was utilized at that time. Based on the above, Plaintiff respectfully requests this case be moved to the next CMO 12A show cause hearing to allow her to seek clarity on the distribution chain and hopefully obtain purchase history.

By: */s/ J.Christopher Elliott*
J. Christopher Elliott, Esq.

# EXHIBIT 1



**University of Colorado Health**
Legal Office

12401 E. 17th Ave.
Mail Stop F-415
Aurora, CO 80045

**O** 720.848.7815
**F** 720.848.5547

**uchealth.org**

January 21, 2019

*Via email only:* Melanie.sulkin@coloradolaw.net
Melanie Sulkin
Bachus & Schanker, LLC
1899 Wynkoop Suite 700
Denver, Colorado 80202

Re:    Subpoena served on Non-Party UCHealth in Christy Fields v. Sanofi
       US Services Inc. f/k/a Sanofi-Aventis U.S. Inc. et al. Civil Action No.
       2:17-cv-11449-KDE-MBN

Dear Ms. Sulkin,

Thanks for speaking with me last week regarding the third-party subpoena served by
Plaintiff Christy Fields on University of Colorado Health System ("UCHealth") on
January 8, 2019 ("Subpoena") in the above referenced civil action ("Lawsuit"). In our
conversation you agreed to limit the subpoena to accept the requested medical
records and billing records and certain information, which my client provides below. If
for any reason your understanding is different than mine, please let me know
immediately and I am happy to provide you with formal objections; though after a
reasonable search, my client was unable to locate any additional responsive
documents.

I understand from the Director of Pharmacy at University of Colorado Hospital that
the distributor of Taxotere or Docetaxel from May 1, 2012 to December 31, 2014 was
Cardinal. My client believes it is more likely than not that the drugs that this patient
was treated with were ordered within two weeks before each treatment.

I understand that the medical and billing records requested were produced to your
office.  The medical records were sent in two shipments; (1) sent by way of MRO, a
third party copying vendor, on or about January 16, 2019 and (2) sent by FedEx, with
the following tracking number: 813920809382, on or about January 18, 2019.  The
billing records were emailed to taxotere@coloradolaw.net on or about January 14,
2019.

Please let me know if you have any questions.

Sincerely,

Alison C. Sorkin
Associate General Counsel

J. Christopher Elliott via email: celliott@coloradolaw.net

1

# EXHIBIT 2



University Of Colorado Hospital

PO BOX 731605
DALLAS, TX 75373-2144

O: 866-429-6045

uchealth.org

Christy Fields

CASTLE ROCK, CO 80108

**Visit Coverages:**
CIGNA - CIGNA POS

This is not a bill. This is an itemization of hospital services for:

| | | | |
|---|---|---|---|
| **Patient Name:** | Fields,Christy | **Account Number:** | 2002733655 |
| **Date of Birth:** | 1974 | **Admission Date:** | 06/27/14 |
| **Sex:** | Female | **Discharge Date:** | 06/27/14 |
| | | **Attending Physician:** | BERGE, EAMON M |

## Charges

| Service Date | REV Code | HCPCS | Description | Quantity | Amount |
|---|---|---|---|---|---|
| 06/27/2014 | 0250 | | FAMOTIDINE 20 MG/2 ML SOLN 2 ML VIAL | 1 | 2.75 |
| 06/27/2014 | 0258 | | NS (NON-PVC) 0.9 % SOLP | 1 | 3.78 |
| 06/27/2014 | 0258 | | NS 0.9 % SOLP | 1 | 13.68 |
| 06/27/2014 | 0258 | | NS 0.9 % SOLP | 1 | 13.21 |
| 06/27/2014 | 0258 | | NS 0.9 % SOLP | 1 | 13.21 |
| 06/27/2014 | 0259 | | ACETAMINOPHEN 325 MG TAB | 2 | 2.25 |
| 06/27/2014 | 0260 | 96375 | HB IV PUSH EACH ADDL SEQUNTL NEW DRUG (AKA *96376) | 4 | 617.36 |
| 06/27/2014 | 0335 | 96413 | HB CHEMO TX-IV INFUSN UP TO 1 HR SNGL/INIT DRUG (AKA *96413) | 1 | 917.11 |
| 06/27/2014 | 0335 | 96415 | HB CHEMO TX-IV INFUSN EACH ADDL HR (AKA *96415) | 1 | 314.55 |
| 06/27/2014 | 0335 | 96417 | HB CHEMO TX-IV INFUSN UP TO 1 HR EA ADDL SEQ DIFF DRUG (AKA *96417) | 3 | 943.65 |
| 06/27/2014 | 0636 | J1100 | DEXAMETHASONE 10 MG IN NS 50 ML 0.2 MG/ML SOLN 50 ML | 10 | 9.52 |
| 06/27/2014 | 0636 | J1200 | DIPHENHYDRAMINE 50 MG/ML SOLN 1 ML VIAL | 1 | 3.30 |
| 06/27/2014 | 0636 | J1642 | HEPARIN FLUSH 100 UNIT/ML SYRG 5 ML SYRINGE | 50 | 2.75 |
| 06/27/2014 | 0636 | J2469 | PALONOSETRON 0.25 MG/5 ML SOLN 5 ML VIAL | 10 | 765.19 |
| 06/27/2014 | 0636 | J9045 | CARBOPLATIN 10 MG/ML SOLN | 18 | 295.32 |
| 06/27/2014 | 0636 | J9171 | DOCETAXEL 80 MG/4 ML (20 MG/ML) SOLN | 167 | 12,567.10 |
| 06/27/2014 | 0636 | J9306 | PERTUZUMAB 420 MG/14 ML (30 MG/ML) SOLN | 840 | 28,843.02 |
| 06/27/2014 | 0636 | J9355 | TRASTUZUMAB 440 MG SOLR | 85 | 29,087.47 |
| | | | **Total Charges** | | **74,415.21** |



| Service Date | REV Code | HCPCS | Description | Quantity | Amount |
|---|---|---|---|---|---|
| 07/24/2014 | 0335 | 96417 | HB CHEMO TX-IV INFUSN UP TO 1 HR EA ADDL SEQ DIFF DRUG (AKA *96417) | 1 | 335.39 |
| 07/24/2014 | 0335 | 96417 | HB CHEMO TX-IV INFUSN UP TO 1 HR EA ADDL SEQ DIFF DRUG (AKA *96417) | 1 | 335.39 |
| 07/24/2014 | 0510 | 99213 | HB LEVEL III O/P VISIT-ESTAB | 1 | 126.18 |
| 07/24/2014 | 0636 | J1100 | DEXAMETHASONE 10 MG IN NS 50 ML 0.2 MG/ML SOLN 50 ML | 10 | 8.46 |
| 07/24/2014 | 0636 | J1200 | DIPHENHYDRAMINE 50 MG/ML SOLN 1 ML VIAL | 1 | 3.89 |
| 07/24/2014 | 0636 | J1642 | HEPARIN FLUSH 100 UNIT/ML SYRG 5 ML SYRINGE | 50 | 2.50 |
| 07/24/2014 | 0636 | J2469 | PALONOSETRON 0.25 MG/5 ML SOLN 5 ML VIAL | 10 | 671.77 |
| 07/24/2014 | 0636 | J9045 | CARBOPLATIN 10 MG/ML SOLN | 18 | 440.23 |
| 07/24/2014 | 0636 | J9171 | DOCETAXEL 80 MG/4 ML (20 MG/ML) SOLN | 167 | 12,230.91 |
| 07/24/2014 | 0636 | J9306 | PERTUZUMAB 420 MG/14 ML (30 MG/ML) SOLN | 420 | 14,562.36 |
| 07/24/2014 | 0636 | J9355 | TRASTUZUMAB 440 MG SOLR | 64 | 23,199.02 |
| 07/24/2014 | 0761 | 36591 | HB BLOOD DRAW IMPLANT VAD PORT | 1 | 448.99 |
| | | | **Total Charges** | | **56,812.07** |

## Payments and Adjustments

| Description | Amount |
|---|---|
| CIGNA JP - INSURANCE PAYMENT – 09/16/14 | -11,845.29 |
| Insurance Adjustments | -44,966.78 |
| **Total Insurance Payments and Adjustments** | **-56,812.07** |

## Summary of Charges

| Group Description | | Amount |
|---|---|---|
| TREATMENT ROOM | ROOM | 448.99 |
| DRUGS IV SOLUTIONS | | 48.86 |
| PHARMACY DRUGS REQ DETAIL | CODING (A) | 51119.14 |
| PHARMACY | | 4.74 |
| CLINIC | | 126.18 |
| LAB CHEMISTRY | | 876.2 |
| LAB HEMATOLOGY | | 95.86 |
| LAB IMMUNOLOGY | | 1449.76 |
| CHEMOTHERP IV | ION - CHEMOTHERAPY ADMINISTRATION - IV | 1984.04 |
| IV THERAPY | | 658.28 |
| Total Charges: | | 56,812.07 |

## Current Balance                                    0.00

Please refer to the account number for all inquiries and correspondence. This detail bill reflects charges, payments, and adjustments posted on this account as of the date this detail bill was printed.



University Of Colorado Hospital

PO BOX 731605
DALLAS, TX 75373-2144

O: 866-429-6045

uchealth.org

Christy Fields

CASTLE ROCK, CO 80108

**Visit Coverages:**
CIGNA - CIGNA POS

This is not a bill. This is an itemization of hospital services for:

| | | | |
|---|---|---|---|
| **Patient Name:** | Fields,Christy | **Account Number:** | 2002962854 |
| **Date of Birth:** | 1974 | **Admission Date:** | 08/14/14 |
| **Sex:** | Female | **Discharge Date:** | 08/14/14 |
| | | **Attending Physician:** | BERGE, EAMON M |

## Charges

| Service Date | REV Code | HCPCS | Description | Quantity | Amount |
|---|---|---|---|---|---|
| 08/14/2014 | 0250 | | TAMOTIDINE 20 MG/2 ML SOLN 2 ML VIAL | 1 | 4.74 |
| 08/14/2014 | 0258 | | NS (NON-PVC) 0.9 % SOLP | 1 | 3.71 |
| 08/14/2014 | 0258 | | NS 0.9 % SOLP | 1 | 14.54 |
| 08/14/2014 | 0258 | | NS 0.9 % SOLP | 1 | 14.54 |
| 08/14/2014 | 0258 | | NS 0.9 % SOLP | 1 | 16.07 |
| 08/14/2014 | 0260 | 96375 | HB IV PUSH EACH ADDL SEQUNTL NEW DRUG (AKA *96375) | 4 | 658.28 |
| 08/14/2014 | 0301 | 80053 | HB COMP METABOLIC PANEL | 1 | 268.28 |
| 08/14/2014 | 0305 | 85025 | HB CBC WITH AUTO DIFF | 1 | 95.66 |
| 08/14/2014 | 0305 | 85027 | HB CBC WITHOUT AUTO DIFF | 1 | 55.92 |
| 08/14/2014 | 0305 | 85027 | HB CBC WITHOUT AUTO DIFF | -1 | -55.92 |
| 08/14/2014 | 0335 | 96413 | HB CHEMO TX-IV INFUSN UP TO 1 HR SNGL/INIT DRUG (AKA *96413) | 1 | 977.87 |
| 08/14/2014 | 0335 | 96417 | HB CHEMO TX-IV INFUSN UP TO 1 HR EA ADDL SEQ DIFF DRUG (AKA *96417) | 3 | 1,006.17 |
| 08/14/2014 | 0636 | J1100 | DEXAMETHASONE 10 MG IN NS 50 ML 0.2 MG/ML SOLN 50 ML | 10 | 8.46 |
| 08/14/2014 | 0636 | J1200 | DIPHENHYDRAMINE 50 MG/ML SOLN 1 ML VIAL | 1 | 3.89 |
| 08/14/2014 | 0636 | J1642 | HEPARIN FLUSH 100 UNIT/ML SYRG 5 ML SYRINGE | 50 | 2.50 |
| 08/14/2014 | 0636 | J2469 | PALONOSETRON 0.25 MG/5 ML SOLN 5 ML VIAL | 10 | 671.77 |
| 08/14/2014 | 0636 | J9045 | CARBOPLATIN 10 MG/ML SOLN | 18 | 440.23 |
| 08/14/2014 | 0636 | J9171 | DOCETAXEL 80 MG/4 ML (20 MG/ML) SOLN | 167 | 12,230.91 |
| 08/14/2014 | 0636 | J9306 | PERTUZUMAB 420 MG/14 ML (30 MG/ML) SOLN | 420 | 14,562.36 |
| 08/14/2014 | 0636 | J9355 | TRASTUZUMAB 440 MG SOLR | 64 | 23,199.02 |
| 08/14/2014 | 0761 | 36591 | HB BLOOD DRAW IMPLANT VAD PORT | 1 | 448.99 |



University Of Colorado Hospital

PO BOX 731605
DALLAS, TX 75373-2144

O: 866-429-6045

uchealth.org

Christy Fields

CASTLE ROCK, CO 80108

**Visit Coverages:**
CIGNA - CIGNA POS

This is not a bill. This is an itemization of hospital services for:

| | | | |
|---|---|---|---|
| **Patient Name:** | Fields,Christy | **Account Number:** | 2003119981 |
| **Date of Birth:** | ██████974 | **Admission Date:** | 09/04/14 |
| **Sex:** | Female | **Discharge Date:** | 09/04/14 |
| | | **Attending Physician:** | BERGE, EAMON M |

## Charges

| Service Date | REV Code | HCPCS | Description | Quantity | Amount |
|---|---|---|---|---|---|
| 09/04/2014 | 0250 | | FAMOTIDINE 20 MG/2 ML SOLN 2 ML VIAL | 1 | 4.74 |
| 09/04/2014 | 0258 | | NS (NON-PVC) 0.9 % SOLP | 1 | 3.71 |
| 09/04/2014 | 0258 | | NS 0.9 % SOLP | 1 | 14.54 |
| 09/04/2014 | 0258 | | NS 0.9 % SOLP | 1 | 14.54 |
| 09/04/2014 | 0258 | | NS 0.9 % SOLP | 1 | 16.07 |
| 09/04/2014 | 0260 | 96367 | HB IV INFUSE ADDL SEQ NEW NONCHEMO UPTO 1 HR (AKA '96367) | 1 | 164.57 |
| 09/04/2014 | 0260 | 96375 | HB IV PUSH EACH ADDL SEQUNTL NEW DRUG (AKA '96375) | 3 | 493.71 |
| 09/04/2014 | 0301 | 80053 | HB COMP METABOLIC PANEL | 1 | 268.28 |
| 09/04/2014 | 0305 | 85025 | HB CBC WITH AUTO DIFF | 1 | 95.86 |
| 09/04/2014 | 0305 | 85027 | HB CBC WITHOUT AUTO DIFF | 1 | 55.92 |
| 09/04/2014 | 0305 | 85027 | HB CBC WITHOUT AUTO DIFF | -1 | -55.92 |
| 09/04/2014 | 0335 | 96413 | HB CHEMO TX-IV INFUSN UP TO 1 HR SNGL/INIT DRUG (AKA '96413) | 1 | 977.87 |
| 09/04/2014 | 0335 | 96417 | HB CHEMO TX-IV INFUSN UP TO 1 HR EA ADDL SEQ DIFF DRUG (AKA '96417) | 3 | 1,006.17 |
| 09/04/2014 | 0510 | 99212 | HB LEVEL II O/P VISIT-ESTAB | 1 | 126.18 |
| 09/04/2014 | 0636 | J1100 | DEXAMETHASONE 10 MG IN NS 50 ML 0.2 MG/ML SOLN 50 ML | 10 | 8.46 |
| 09/04/2014 | 0636 | J1200 | DIPHENHYDRAMINE 50 MG/ML SOLN 1 ML VIAL | 1 | 3.89 |
| 09/04/2014 | 0636 | J1642 | HEPARIN FLUSH 100 UNIT/ML SYRG 5 ML SYRINGE | 50 | 2.50 |
| 09/04/2014 | 0636 | J2469 | PALONOSETRON 0.25 MG/5 ML SOLN 5 ML VIAL | 10 | 571.77 |
| 09/04/2014 | 0636 | J9045 | CARBOPLATIN 10 MG/ML SOLN | 8 | 440.23 |
| 09/04/2014 | 0636 | J9171 | DOCETAXEL 80 MG/4 ML (20 MG/ML) SOLN | 167 | 12,230.91 |



University Of Colorado Hospital

PO BOX 731605
DALLAS, TX 75373-2144

O: 866-429-6045

uchealth.org

Christy Fields

CASTLE ROCK, CO 80108

**Visit Coverages:**
CIGNA - CIGNA POS

This is not a bill. This is an itemization of hospital services for:

| Patient Name: | Fields,Christy | Account Number: | 2003120034 |
|---|---|---|---|
| Date of Birth: | 1974 | Admission Date: | 09/25/14 |
| Sex: | Female | Discharge Date: | 09/25/14 |
| | | Attending Physician: | BERGE, EAMON M |

## Charges

| Service Date | REV Code | HCPCS | Description | Quantity | Amount |
|---|---|---|---|---|---|
| 09/25/2014 | 0250 | | FAMOTIDINE 20 MG/2 ML SOLN 2 ML VIAL | 1 | 4.74 |
| 09/25/2014 | 0258 | | NS (NON-PVC) 0.9 % SOLP | 1 | 3.71 |
| 09/25/2014 | 0258 | | NS 0.9 % SOLP | 1 | 14.34 |
| 09/25/2014 | 0258 | | NS 0.9 % SOLP | 1 | 14.54 |
| 09/25/2014 | 0258 | | NS 0.9 % SOLP | 1 | 14.54 |
| 09/25/2014 | 0258 | | NS 0.9 % SOLP | 1 | 16.07 |
| 09/25/2014 | 0260 | 96375 | HB IV PUSH EACH ADDL SEQUNTL NEW DRUG (AKA *96375) | 4 | 658.26 |
| 09/25/2014 | 0301 | 80053 | HB COMP METABOLIC PANEL | 1 | 268.28 |
| 09/25/2014 | 0305 | 85025 | HB CBC WITH AUTO DIFF | 1 | 95.86 |
| 09/25/2014 | 0305 | 85027 | HB CBC WITHOUT AUTO DIFF | 1 | 55.92 |
| 09/25/2014 | 0305 | 85027 | HB CBC WITHOUT AUTO DIFF | -1 | -55.92 |
| 09/25/2014 | 0335 | 96413 | HB CHEMO TX-IV INFUSN UP TO 1 HR SNGL/INIT DRUG (AKA *96413) | 1 | 977.87 |
| 09/25/2014 | 0335 | 96417 | HB CHEMO TX-IV INFUSN UP TO 1 HR EA ADDL SEQ DIFF DRUG (AKA *96417) | 3 | 1,006.17 |
| 09/25/2014 | 0510 | 99213 | HB LEVEL III O/P VISIT-ESTAB | 1 | 126.18 |
| 09/25/2014 | 0636 | J1100 | DEXAMETHASONE 10 MG/ML SOLN | 10 | 2.50 |
| 09/25/2014 | 0636 | J1200 | DIPHENHYDRAMINE 50 MG/ML SOLN 1 ML VIAL | 1 | 3.89 |
| 09/25/2014 | 0636 | J1642 | HEPARIN FLUSH 100 UNIT/ML SYRG 5 ML SYRINGE | 50 | 2.50 |
| 09/25/2014 | 0636 | J2469 | PALONOSETRON 0.25 MG/5 ML SOLN 5 ML VIAL | 10 | 671.77 |
| 09/25/2014 | 0636 | J9045 | CARBOPLATIN 10 MG/ML SOLN | 18 | 440.23 |
| 09/25/2014 | 0636 | J9171 | DOCETAXEL 80 MG/4 ML (20 MG/ML) SOLN | 167 | 12,230.91 |
| 09/25/2014 | 0636 | J9306 | PERTUZUMAB 420 MG/14 ML (30 MG/ML) SOLN | 420 | 14,562.36 |
| 09/25/2014 | 0636 | J9355 | TRASTUZUMAB 440 MG SOLR | 64 | 23,199.02 |



University Of Colorado Hospital

PO BOX 731605
DALLAS, TX 75373-2144

O: 866-429-6045

uchealth.org

Christy Fields

CASTLE ROCK, CO 80108

**Visit Coverages:**
CIGNA - CIGNA POS

This is not a bill. This is an itemization of hospital services for:

| | | | |
|---|---|---|---|
| **Patient Name:** | Fields.Christy | **Account Number:** | 2003120036 |
| **Date of Birth:** | 974 | **Admission Date:** | 10/16/14 |
| **Sex:** | Female | **Discharge Date:** | 10/16/14 |
| | | **Attending Physician:** | BERGE, EAMON M |

## Charges

| Service Date | REV Code | HCPCS | Description | Quantity | Amount |
|---|---|---|---|---|---|
| 10/16/2014 | 0250 | | FAMOTIDINE 20 MG/2 ML SOLN 2 ML VIAL | 1 | 4.74 |
| 10/16/2014 | 0258 | | NS (NON-PVC) 0.9 % SOLP | 1 | 3.71 |
| 10/16/2014 | 0258 | | NS 0.9 % SOLP | 1 | 14.34 |
| 10/16/2014 | 0258 | | NS 0.9 % SOLP | 1 | 14.54 |
| 10/16/2014 | 0258 | | NS 0.9 % SOLP | 1 | 14.54 |
| 10/16/2014 | 0258 | | NS 0.9 % SOLP | 1 | 16.07 |
| 10/16/2014 | 0260 | 96375 | HB IV PUSH EACH ADDL SEQUNTL NEW DRUG (AKA *96375) | 4 | 658.28 |
| 10/16/2014 | 0301 | 80053 | HB COMP METABOLIC PANEL | 1 | 268.28 |
| 10/16/2014 | 0305 | 85025 | HB CBC WITH AUTO DIFF | 1 | 95.86 |
| 10/16/2014 | 0305 | 85027 | HB CBC WITHOUT AUTO DIFF | 1 | 55.92 |
| 10/16/2014 | 0305 | 85027 | HB CBC WITHOUT AUTO DIFF | -1 | -55.92 |
| 10/16/2014 | 0335 | 96413 | HB CHEMO TX-IV INFUSN UP TO 1 HR SNGL/INIT DRUG (AKA *96413) | 1 | 977.87 |
| 10/16/2014 | 0335 | 96417 | HB CHEMO TX-IV INFUSN UP TO 1 HR EA ADDL SEQ DIFF DRUG (AKA *96417) | 3 | 1,006.17 |
| 10/16/2014 | 0460 | 94760 | HB PULSE OXIMETRY SINGLE DETER | 1 | 93.23 |
| 10/16/2014 | 0510 | 99214 | HB LEVEL IV O/P VISIT-ESTAB | 1 | 175.00 |
| 10/16/2014 | 0636 | J1100 | DEXAMETHASONE 10 MG/ML SOLN | 10 | 2.50 |
| 10/16/2014 | 0636 | J1200 | DIPHENHYDRAMINE 50 MG/ML SOLN 1 ML VIAL | 1 | 3.89 |
| 10/16/2014 | 0636 | J1642 | HEPARIN FLUSH 100 UNIT/ML SYRG 5 ML SYRINGE | 50 | 2.50 |
| 10/16/2014 | 0636 | J2469 | PALONOSETRON 0.25 MG/5 ML SOLN 5 ML VIAL | 10 | 671.77 |
| 10/16/2014 | 0636 | J9045 | CARBOPLATIN 10 MG/ML SOLN | 48 | 440.23 |
| 10/16/2014 | 0636 | J9171 | DOCETAXEL 80 MG/4 ML (20 MG/ML) SOLN | 167 | 12,230.91 |
| 10/16/2014 | 0636 | J9306 | PERTUZUMAB #20 MG/14 ML (30 MG/ML) SOLN | 420 | 14,562.36 |

# EXHIBIT 3

**From:** Rogart, Robbie <RRogart@crowell.com>
**Sent:** Monday, March 11, 2019 8:27 PM
**To:** Melanie Sulkin <melanie.sulkin@coloradolaw.net>; Kaplan, Andrew <AKaplan@crowell.com>
**Cc:** Goold, Kailee <kailee.goold@cardinalhealth.com>
**Subject:** RE: Cardinal Health Subpoenas

Ms. Sulkin,

Please find attached Cardinal Health's responses to:

1.  Your subpoena to Cardinal Health dated 11/14/2018 seeking documents concerning purchases of Taxotere / Docetaxel by USA Mitchell Cancer Institute from June 5, 2012 to October 19, 2012.

2.  Your subpoena to Cardinal Health dated 12/20/2018 seeking documents concerning purchases of Taxotere / Docetaxel by Holy Cross Hospital in Ft. Lauderdale, Florida from February 20, 2012 to May 9, 2012 (Tammy Ellis).

Pursuant to your discussion with Mr. Kaplan, you agreed to the scope of production in the attached spreadsheets, which includes the National Drug Code (NDC); the name, address, and phone number of the product manufacturer; the relevant invoice date and number; and the strength and item description of the Taxotere / Docetaxel supplied.  Please note that these spreadsheets have been designated confidential subject to the applicable protective order in this litigation and should be treated accordingly.

In response to your subpoena to Cardinal Health dated 12/20/2018 seeking documents concerning purchases of Taxotere / Docetaxel by Rocky Mountain Cancer Center from March 8, 2011 to April 15, 2011, Cardinal Health has conducted a search of its electronic historical sales data for sales to Rocky Mountain Cancer Center from March 8, 2011 to April 15, 2011.  Based on the information and criteria provided, Cardinal Health was unable to locate any responsive data.

Finally, in response to your subpoena to Cardinal Health dated 2/26/2019 seeking (a) documents

concerning purchases of Taxotere / Docetaxel by Alameda County Medical Center or Alameda Health System in California from January 1, 2012 to April 16, 2012 and (b) documents concerning purchases of Taxotere / Docetaxel by University of Colorado Hospital from January 1, 2013 to April 18, 2013 and May 1, 2014 and October 16, 2014, Cardinal Health is still in the process of locating and reviewing product identification information, if any.  As Mr. Kaplan's earlier email indicates, if Cardinal Health has responsive data, we will produce the agreed scope of data subject to our objections.

Please let us know if you have any questions.

Robbie

Robbie F. Rogart
rrogart@crowell.com
Direct 1.202.624.2556

**Crowell & Moring LLP** | www.crowell.com
1001 Pennsylvania Avenue NW
Washington, DC 20004

WARNING-PRIVILEGED LEGAL COMMUNICATION
This e-mail is confidential and privileged. It is intended only for the use of the named recipient(s). If there has been an error in sending this message, please advise us by reply e-mail or call us at 202.624.2500 and delete any file containing this e-mail.

**From:** Melanie Sulkin [mailto:melanie.sulkin@coloradolaw.net]
**Sent:** Thursday, March 7, 2019 11:10 AM
**To:** Rogart, Robbie; Kaplan, Andrew
**Subject:** RE: Cardinal Health Subpoenas

External Email

Mr. Kaplan,

Thank you for speaking with me today.  The subpoenas issued to Cardinal Health are attached.  I agree that the parameters discussed are sufficient to comply with our subpoenas.  Can you please let me know when Cardinal intends to produce the responsive documents?

Best,
Melanie

**Melanie Sulkin** | Attorney | Bachus & Schanker, LLC | 1899 Wynkoop Street, Suite 700 | Denver, CO 80202 | Phone: 303-893-9800 | Direct: 303-825-5460 | Fax: 303-893-9900 | Email: Melanie.Sulkin@ColoradoLaw.net | Website: www.ColoradoLaw.net

**How am I doing?  Please email our Client Services Department at ClientServices@ColoradoLaw.net with any feedback.**



CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Bachus & Schanker client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at ClientServices@ColoradoLaw.net or by telephone at 303-893-9800. Thank you.

**From:** Melanie Sulkin
**Sent:** Wednesday, March 6, 2019 9:10 AM
**To:** 'rrogart@crowell.com' <rrogart@crowell.com>; 'akaplan@crowell.com' <akaplan@crowell.com>
**Subject:** Cardinal Health Subpoenas

Good Morning Ms. Rogart and Mr. Kaplan,

Darcy Jalandoni relayed that both of you were handling the subpoenas directed at Cardinal Health in the Taxotere litigation. My firm has issued several subpoenas and has not received any of the requested information. Last time I spoke with Darcy, she told me that Cardinal was working on streamlining the process of releasing subpoenaed information in this case. Can you please provide me with an update on the streamlined process and when I can expect the subpoenaed documents? Thank you.

Best,
Melanie

**Melanie Sulkin** | Attorney | Bachus & Schanker, LLC | 1899 Wynkoop Street, Suite 700 | Denver, CO 80202 | Phone: 303-893-9800 | Direct: 303-825-5460 | Fax: 303-893-9900 | Email: Melanie.Sulkin@ColoradoLaw.net | Website: www.ColoradoLaw.net

**How am I doing? Please email our Client Services Department at ClientServices@ColoradoLaw.net with any feedback.**



CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Bachus & Schanker client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at ClientServices@ColoradoLaw.net or by telephone at 303-893-9800. Thank you.



Nicholas Insogna
Tel 617.310.6231
insognan@gtlaw.com

May 13, 2022

**VIA E-MAIL**

The Honorable Jane Triche Milazzo
U.S. District Court
Eastern District of Louisiana
500 Poydras Street
Room C206
New Orleans, LA  70130

> Re:   *Taxotere (Docetaxel) Products Liability Litigation*, MDL No. 2740;
>       *Christy Fields v. Sanofi U.S. Services Inc. et al.*, 2:17-cv-11449

Dear Judge Milazzo:

Defendants submit this response to Plaintiff Christy Fields' May 9, 2022 letter brief. Plaintiff fails to provide any justification why her case should not be dismissed with prejudice for failure to obtain any evidence of the manufacturer of the docetaxel with which Plaintiff was treated since filing her lawsuit more than five years ago.

At the May 2 Show Cause hearing, held pursuant to CMO-12A, Plaintiff argued her case should not be dismissed because she had encountered difficulty obtaining information about docetaxel distribution from Cardinal Health, a third-party distributor that *might* possess non-dispositive evidence of possible product identification.  Plaintiff's counsel expressly represented that "we've sent subpoenas to Cardinal Health as well, and it was my understanding that they were working with defendants and liaison counsel, and we just request additional time to be able to check in on those subpoenas."  Ex. A (5/2/22 Tr. at 23:22-25:14).  Those representations are not borne out by the briefing submitted to the Court.  In fact, Cardinal Health had already responded to Plaintiff's subpoena indicating that Cardinal is not in possession of any responsive information regarding *any* purchases of docetaxel by Plaintiff's infusion facility in the relevant time period. (Plaintiff's Ex. 3, at p. 2)  ***Cardinal's response was sent in March 2019*** and, if Plaintiff has engaged in any further efforts to obtain information about the manufacturer of her docetaxel (whether through Cardinal or otherwise) they are neither referenced in nor appended to her letter brief.  To the extent Plaintiff's counsel represented at the April 28 Show Cause hearing that Plaintiff was engaged in ongoing efforts with Cardinal, that appears to have been inaccurate.

Further, Plaintiff has not offered any excuse for her inability to obtain product information or her delays in reviving efforts that appear to have stalled in March 2019.  Instead, Plaintiff asks this court for an "opportunity to reconnect" with the infusion facility — which has already indicated it does not have product ID information in its possession — to resume Plaintiff's efforts.

The Honorable Jane Triche Milazzo
May 13, 2022
Page 2

_____

This Court is well aware of the numerous notices of the product identification deficiencies Defendants sent plaintiffs prior to the April 28 and May 2 hearings.  Yet Plaintiff offers no justification for her delay in any follow up.   Plaintiff has had more than four years to obtain responsive information and has offered no excuse for her lack of diligence; her case should be dismissed.

Moreover, as Defendants stated and Plaintiffs' Liaison Counsel acknowledged at the show cause hearing, Defendants worked with Liaison Counsel to provide plaintiffs with distributor information years prior to the instant show cause proceedings. Ex. A at 24:7-19 (Ms. Berg acknowledging that "there were efforts with defendants liaison distributors three years ago"). [1] Plaintiff's counsel's representation that she believed that process was ongoing has no basis in fact and is immaterial to the instant show cause process, in any event.

Finally, third party distributors of docetaxel simply do not possess information actually linking distributions of a specific manufacturer's docetaxel to the docetaxel used in a plaintiff's infusions.  Instead, distribution information could, at most, narrow the universe of possible manufacturers (and even that only in cases with a single distributor and no ex-distributor purchases).  Even that, however, does not satisfy plaintiff's burden of proof to establish the manufacturer of the docetaxel actually used in Plaintiff's infusions.  Indeed, under the applicable Colorado law, a "plaintiff must establish that a particular defendant's product was a substantial contributing cause of his injury." *Merkley v. Pittsburgh Corning Corp.*, 910 P.2d 58, 59 (Colo. Ct. App. 1995); *see also* Colo. Rev. Stat. § 13-21-401.

Accordingly, Defendants respectfully request that Plaintiff Christy Fields' case be dismissed with prejudice for failure to obtain product identification.

Very truly yours,

Nicholas A. Insogna

Julie A. Callsen

_____

[1] Pursuant to CMO-7 issued in 2017, the Defendants disclosed their distributors to PSC, and in addition, if subject to written discovery, were asked about the identity of distributors and wholesalers.  Defendants then cooperated with the subpoena process initiated by PSC to distributors.  If a distributor did not respond to an issued subpoena, Plaintiffs should have timely moved to compel compliance pursuant to Fed. Rule 45.

The Honorable Jane Triche Milazzo
May 13, 2022
Page 3
_____

Jordan Baehr

cc:    Dawn M. Barrios, Esq. (via email)
       M. Palmer Lambert, Esq. (via email)
       Douglas J. Moore, Esq. (via email)
       Kelly Brilleaux, Esq. (via email)
       John F. Olinde, Esq. (via email)
       R. Clifton Merrell, Esq. (via email)
       Evan C. Holden, Esq. (via email)

```
13:42:43   1              UNITED STATES DISTRICT COURT
                          EASTERN DISTRICT OF LOUISIANA
           2   ***********************************************************
               IN RE:  TAXOTERE (DOCETAXEL)
           3   PRODUCTS LIABILITY LITIGATION
                                          Docket No. MDL-2740
           4                              Section "H"
                                          New Orleans, Louisiana
           5                              Monday, May 2, 2022
               [THIS DOCUMENT RELATES TO:
           6   ALL CASES]
               ***********************************************************
           7
                         TRANSCRIPT OF SHOW CAUSE PROCEEDINGS
           8        HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                            UNITED STATES DISTRICT JUDGE
           9

          10
               APPEARANCES:
          11
               FOR THE PLAINTIFF:         GAINSBURG BENJAMIN DAVID
          12                              MEUNIER & WARSHAUER
                                          BY:  CLAIRE E. BERG KREIDER, ESQ.
          13                              1100 Poydras St., Suite 2800
                                          New Orleans, LA 70163
          14

          15                              BACHUS & SCHANKER
                                          BY:  MELANIE SULKIN, ESQ.
          16                              1899 Wynkoop St., #700
                                          Denver, CO 80202
          17                              (BY TELEPHONE)

          18

          19   FOR SANOFI S.A.:           IRWIN FRITCHIE URQUHART & MOORE
                                          BY:  KELLY E. BRILLEAUX, ESQ.
          20                              400 Poydras St., Suite 2700
                                          New Orleans, LA 70130
          21

          22   FOR ACCORD HEALTHCARE, INC.:   TUCKER ELLIS
                                          BY:  JULIE A. CALLSEN, ESQ.
          23                              950 Main Ave., Suite 1100
                                          Cleveland, OH 44113
          24

          25
```

```
 1   FOR SAGENT AND ACTIVIS:        ULMER & BERNE
                                    BY:  MICHAEL J. SUFFERN, ESQ.
 2                                  312 Walnut St., Suite 1400
                                    Cincinnati, Ohio 45202-4029
 3

 4

 5
     Official Court Reporter:      Karen A. Ibos, CCR, RPR, CRR, RMR
 6                                 500 Poydras Street, B-275
                                   New Orleans, Louisiana 70130
 7                                 (504) 589-7776

 8
        Proceedings recorded by mechanical stenography, transcript
 9   produced by computer.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

<pre>
 1                    P R O C E E D I N G S

 2                 (MONDAY, MAY 2, 2022)

 3               (SHOW CAUSE PROCEEDINGS)

08:35:11   4

08:35:11   5       (OPEN COURT.)

13:57:57   6           THE COURT:  All right.  Are we ready to proceed?

13:58:43   7           MS. CALLSEN:  Yes.  Just for the record, we're starting

13:58:45   8   with No. 100 of our list that we started with last week, I think it

13:58:51   9   was the 28th that we were here.  So we're starting with the Bachus

13:58:55  10   & Schanker cases, starting at No. 100.

13:58:58  11           And again, I just want to state for the record, so there

13:59:01  12   were some of these that we never did receive a response from Bachus

13:59:07  13   & Schanker by March 15, 2022 pursuant to the December order; and I

13:59:09  14   can point those out as we go along, but all of these are basically

13:59:13  15   in the same category that we talked about last week where efforts

13:59:17  16   were made and they have provided us documentation of those efforts,

13:59:21  17   but those efforts have resulted in no product ID.

13:59:26  18           THE COURT:  Okay.  Ms. Sulkin, what we have done, and I

13:59:31  19   don't know if you were able to listen to anything that we did last

13:59:35  20   week, but I think that most of the law firms -- and the reason we

13:59:41  21   did this by law firms is there was a general objection that was

13:59:45  22   lodged, and then there might be some specific objections.  So I

13:59:49  23   would like to start with that.

13:59:56  24           MS. SULKIN:  Yes, your Honor.  I was able to hear most of

13:59:59  25   it, there was nothing wrong with my phone, unfortunately my WiFi
</pre>

14:00:04  1    was acting up.  And again, I do apologize about that.

14:00:08  2            I am able to kind of hopefully streamline what's going on

14:00:13  3    with our cases.  And I can start with the ones where we objected

14:00:20  4    based on innovator liability, but first I would just like to lodge

14:00:24  5    those general objections that I think were echoed by some of my

14:00:28  6    colleagues from some other law firms, along with Mr. Lambert from

14:00:33  7    liaison counsel, and I just want to lodge those for the record

14:00:37  8    before I continue on with specific objections.

14:00:39  9            THE COURT:  Okay.

14:00:40 10            MS. SULKIN:  I won't be addressing them if we don't have

14:00:44 11    a specific objection to that case, if that's all right with you.

14:00:46 12            THE COURT:  Are you just adopting Mr. Lambert's general

14:00:49 13    objection?

14:00:51 14            MS. SULKIN:  Mr. Lambert's and I think also Mr. Niemeyer

14:00:56 15    had some general objections, and I am going to echo those arguments

14:01:00 16    and the other arguments made by other colleagues as well.

14:01:04 17            THE COURT:  Okay.  Considering that you've adopted the

14:01:08 18    objections raised by Mr. Lambert and Mr. Niemeyer, the Court

14:01:13 19    considers those and those are noted for the record.  And so I don't

14:01:18 20    know if you want to at this point, because I will tell you it is my

14:01:22 21    intent to dismiss these cases for failure to provide product ID in

14:01:27 22    accordance with the -- in accordance with Case Management Order

14:01:34 23    12(a).  And I understand that you received notice of this

14:01:38 24    deficiency in April, September, and December of 2021, and

14:01:42 25    considering that you failed to cure, the Court would dismiss those

14:01:47  1   cases with prejudice.

14:01:50  2        And I don't know how we want to do that, perhaps I know

14:01:54  3   you have some specific objections that you would like to raise at

14:02:01  4   this time, so maybe let's pull those out and then I can dismiss

14:02:06  5   with prejudice any that I -- why don't you tell me what your

14:02:15  6   specific objections are, or do we go one at a time?  Maybe that's

14:02:18  7   the thing to do.

14:02:18  8        MS. SULKIN:  Why don't I go with groupings by innovator

14:02:26  9   liability, some where we have recently obtained product ID, some

14:02:30 10   where we have sent subpoenas to the distributors, one of which is a

14:02:34 11   defendant in this case, and then kind of go from there, if that's

14:02:38 12   all right, your Honor.

14:02:38 13        THE COURT:  That would be fine.  Let's speak to innovator

14:02:48 14   liability.

14:02:49 15        MS. SULKIN:  Yes, your Honor.  I'll just list them first,

14:02:51 16   and I'm going through my list here.  We have Kathy Basler, and

14:02:54 17   that's the innovator liability state in Illinois; we have Priscilla

14:03:01 18   Gardner, also an Illinois plaintiff; Diana Graves, another Illinois

14:03:10 19   plaintiff; Alizabeth Haddad, a California plaintiff; Ronette

14:03:19 20   Halloway, another innovator liability claim from California; Nayuca

14:03:27 21   Medina, also from California; Madeline Niles, another innovator

14:03:35 22   liability California plaintiff; Meredith Powell, who resides and

14:03:42 23   received treatment in Massachusetts, which is another innovator

14:03:46 24   liability state; Sheila Rawlins, she is a California plaintiff;

14:03:56 25   Jennifer Weigand, who is another innovator liability plaintiff from

| | | |
|---|---|---|
|14:04:02|1|California.|
|14:04:02|2|        THE COURT:  Wait.  Okay.  I see it.|
|14:04:05|3|        MS. SULKIN:  And it's my understanding that your Honor|
|14:04:09|4|has ordered briefing on these cases.|
|14:04:11|5|        THE COURT:  Let me go through these plaintiffs to make|
|14:04:14|6|sure that I have those that you are claiming to have innovator|
|14:04:20|7|liability.  That would be No. 100, Kathy Basler; 117, Priscilla|
|14:04:29|8|Gardner; 120, Diana Graves; 121, Alizabeth Haddad; 122, Ronette|
|14:04:40|9|Halloway; 137, Nayuca Medina; 142, Madeline Niles; 148, Meredith|
|14:04:49|10|Powell; 149, Sheila Rawlins; and 160, Jennifer Weigand.  Are those|
|14:04:59|11|that you're claiming live in jurisdictions that allow for innovator|
|14:05:04|12|liability?|
|14:05:05|13|        MS. SULKIN:  Yes, your Honor.|
|14:05:08|14|        THE COURT:  Are there any that I missed?|
|14:05:11|15|        MS. SULKIN:  No.|
|14:05:12|16|        THE COURT:  Okay.|
|14:05:14|17|        MS. CALLSEN:  Your Honor, I just want to make one|
|14:05:17|18|statement on behalf of the 505(b)(2)s who are non-innovators.  We|
|14:05:21|19|would just ask that the 505(b)(2) defendants be dismissed from|
|14:05:23|20|those cases because I don't think there's any dispute that we are|
|14:05:26|21|non-innovator defendants.|
|14:05:29|22|        THE COURT:  Ms. Sulkin?|
|14:05:32|23|        MS. SULKIN:  Your Honor, I believe that's correct.  Off|
|14:05:37|24|the top of my head I am not sure substantively, it's my|
|14:05:43|25|understanding that there would be briefing on this issue, but I|

14:05:46  1    would just ask that we pass on ruling for innovator liability until

14:05:51  2    we are able to brief the issue.

14:05:53  3              THE COURT:  I think the basis of innovator liability

14:05:56  4    excludes the 505(b)(2)s since they were not innovators of this

14:06:03  5    drug, so the Court's going to dismiss the 505(b)(2) defendants if

14:06:09  6    indeed they're named in any of these complaints with prejudice.

14:06:13  7              As to any claims against Sanofi, the Court will defer

14:06:18  8    ruling on those.  And we have a status conference tomorrow, and

14:06:24  9    we'll set out a briefing schedule to address that issue.

14:06:39 10              Now, I believe you had something else, Ms. Sulkin?

14:06:42 11              MS. SULKIN:  Yes, your Honor.  In a few cases we recently

14:06:44 12    uploaded product identification, so I wanted to give the defendants

14:06:49 13    an opportunity to verify that.  That case is Helen Johns, No. 128,

14:06:56 14    on April 24th we uploaded product ID showing Sagent.

14:07:01 15              MS. CALLSEN:  I'm sorry, which one were you saying?

14:07:04 16              THE COURT:  No. 128, Helen Johns.

14:07:07 17              MS. CALLSEN:  All we received on 4/24 -- this is the one

14:07:10 18    that Mr. Suffern wants to address.  They tried to identify Sagent

14:07:17 19    as the manufacturer, but he can speak to the timing, it would be

14:07:20 20    impossible.

14:07:22 21              THE COURT:  Okay.

14:07:22 22              MR. SUFFERN:  If I may, your Honor?

14:07:23 23              THE COURT:  Mr. Suffern.

14:07:25 24              MR. SUFFERN:  Good afternoon, your Honor.  Michael

14:07:28 25    Suffern, I represent Sagent and the Actavis defendants as you know.

14:07:33  1        Indeed, Helen Johns did upload a statement regarding the
14:07:38  2   chemotherapy drug administered.  The problem is that the last
14:07:41  3   infusion date is October 4 of 2012, which is six months before the
14:07:46  4   Actavis New Drug Application was approved by the Food and Drug
14:07:50  5   Administration.  The only allegation as to Sagent is that it's
14:07:53  6   selling the Actavis product, and so we would submit that this is
14:07:56  7   simply impossible.

14:07:58  8        It's just one of, you know, one of the examples of this
14:08:01  9   type of evidence that's just not reliable.  And, your Honor, I have
14:08:05 10   a copy of the approval letter if you would like to see it, it's
14:08:08 11   dated on the last page.

14:08:10 12        THE COURT:  Could I see the evidence that was uploaded?

14:08:17 13        MR. SUFFERN:  Yes.

14:08:57 14        THE COURT:  Ms. Sulkin, I am looking at the NDA approval
14:09:01 15   letter dated -- "we refer to our approval letter dated April 12th,
14:09:15 16   2013."

14:09:21 17        MR. SUFFERN:  And, your Honor, if I may just add, I mean,
14:09:24 18   this is a well-known fact to the Bachus & Schanker firm.  I mean,
14:09:28 19   I've had multiple interactions with Mr. Elliott over the years
14:09:34 20   getting dismissed from cases where Sagent or Actavis were sued for
14:09:40 21   treatments that predated that date.  So it's something that's
14:09:42 22   well-known for the firm.  In fact, in this Helen Johns case neither
14:09:48 23   of my clients is even named as a defendant.

14:09:55 24        THE COURT:  Sagent Pharmaceuticals and it just says
14:09:58 25   effective approval date will be April 12th, 2013.  Ms. Sulkin, do

9

14:10:03 1    you have anything to say in response to this?  Is this statement

14:10:08 2    regarding chemotherapy drug administered, is that what you have?

14:10:13 3              MS. SULKIN:  Yes, your Honor.

14:10:23 4              MS. BERG:  Your Honor, maybe Ms Sulkin should be given

14:10:25 5    the opportunity to go back to the facility to discuss the

14:10:29 6    impossibility of what they put on this sheet to see if she can

14:10:33 7    gather the correct information.

14:10:44 8              THE COURT:  Well --

14:10:45 9              MR. SUFFERN:  Our position on that would just be, your

14:10:47 10   Honor, this is the third time these cases have been before your

14:10:52 11   Honor, and we think the time is right for dismissal.

14:10:55 12             As I say, our clients are not even in the case, I am just

14:10:58 13   here because I wanted to point out to the Court that we came upon

14:11:01 14   this and it's impossible based on the dates of approval.

14:11:17 15             THE COURT:  Ms. Sulkin, do you have anything to say?

14:11:20 16             MS. SULKIN:  Your Honor, we just ask that, like

14:11:26 17   Ms. Kreider suggested, that we be given an opportunity to address

14:11:30 18   the inconsistencies with the facility.

14:11:41 19             THE COURT:  Ma'am, I am going to give you until Monday of

14:11:45 20   next week, and if I don't hear something -- if there's something

14:11:49 21   else that you have that says that it's not -- you're not a named --

14:11:56 22             MR. SUFFERN:  Neither Actavis nor Sagent is named in the

14:11:59 23   case.  And I think that's probably because after much, much --

14:12:05 24   after many cases we convinced the Bachus & Schanker firm that we

14:12:09 25   shouldn't be brought into cases that predate the date of approval.

14:12:14  1    Thank you.

14:12:14  2           THE COURT:  This is what I am going to do.  I am going to

14:12:15  3    give you until Monday of next week.  If I haven't had something

14:12:20  4    that ferrets this out, I am going to dismiss the case.

14:12:24  5           MS. BERG:  Your Honor, I would ask that that be without

14:12:26  6    prejudice in case in the next month or so the facility is able to

14:12:30  7    come up with a correct --

14:12:32  8           MS. CALLSEN:  We would object to that, 60(b) is always

14:12:36  9    open.

14:12:37 10           THE COURT:  I am dismissing these cases with prejudice.

14:12:41 11    If something happens, we'll deal with it.

14:12:44 12           MS. BERG:  Yes, your Honor.

14:12:45 13           THE COURT:  Thank you.  Let me mark this.  So that would

14:12:49 14    be 5/9?

14:12:52 15           THE DEPUTY CLERK:  Yes.

14:12:54 16           THE COURT:  Yes, ma'am.  Next one.

14:12:56 17           MS. SULKIN:  The next one is Susan Thompson, which is

14:13:05 18    No. 155.  The majority of that treatment occurred before any of the

14:13:09 19    505(b)(2)s were on the market, and so we at the very least have

14:13:15 20    Sanofi as a presumptive defendant for the majority of the

14:13:20 21    treatment.  And so this case should not be dismissed.  While I

14:13:24 22    understand that we don't have proof of other manufacturers, we do

14:13:27 23    believe that Sanofi should still be a defendant.

14:13:36 24           THE COURT:  Ms. Brilleaux, I don't know if this is a

14:13:40 25    Sanofi or -- Ms. Callsen, does this --

14:13:44 1          MS. CALLSEN:  We haven't heard this before.  Again, they
14:13:47 2     don't respond to the 3/15/22 order where they are supposed to
14:13:52 3     express the communication, so this is something new to us.
14:13:55 4          MS. BRILLEAUX:  Thank you, your Honor.  That was what I
14:13:56 5     have as well --
14:13:58 6          MS. SULKIN:  Your Honor --
14:13:58 7          THE COURT:  Wait.
14:13:59 8          MS. BRILLEAUX:  -- we didn't receive a response from
14:14:01 9     plaintiffs, so Sanofi is not prepared to address any substance on
14:14:05 10    that today because this is the first time we're hearing this.
14:14:10 11         THE COURT:  Ms. Sulkin.
14:14:11 12         MS. SULKIN:  Your Honor, if I may.  On MDL Centrality it
14:14:15 13    clearly lists and shows proof of use showing that some of the dates
14:14:19 14    of treatment predate any of the 505(b)(2) licenses.  And so this
14:14:25 15    case -- our position is that this case should never have been on
14:14:31 16    this docket list to begin with.
14:14:33 17         THE COURT:  You didn't think it would be a good idea to
14:14:37 18    tell them that?
14:14:44 19         MS. CALLSEN:  Can we have until Monday to confirm,
14:14:47 20    May 9th?
14:14:48 21         MS. BRILLEAUX:  I think we would take the position that
14:14:50 22    that's still not definitive product ID, but at the same time --
14:14:54 23         THE COURT:  We're going to -- I am going to ask for
14:15:01 24    correspondence from both by Monday.  I need to look at MDL
14:15:06 25    Centrality, I don't know what's there, but I wish that would have

14:15:11  1    been communicated prior.  So this one will be until Monday, 5/9,

14:15:17  2    some response from both parties.

14:15:18  3              Okay.  Yes, ma'am.  Next one.

14:15:21  4              MS. SULKIN:  152, Sunjah, Paisley.  Today we just

14:15:31  5    uploaded purchasing history from UAB Kirklin indicating who the

14:15:39  6    manufacturers could be.

14:15:42  7              MS. CALLSEN:  Again, your Honor, indicating who the

14:15:44  8    manufacturers could be is similar to what we discussed last week.

14:15:48  9    And I would actually like to hand up to you an example of what's

14:15:51 10    been submitted that shows the different distributors.  This

14:16:02 11    one-page document, we tried to blow it up to make it readable, has

14:16:05 12    been submitted by several Bachus & Schanker cases.  I mean, with

14:16:09 13    different information but the same format.  For one thing, we don't

14:16:13 14    know the format.  But it basically lists all of the possible

14:16:19 15    distributors from April -- or manufacturers, excuse me, from April

14:16:24 16    2014 to 2017.

14:16:26 17              As you can tell, there's Sagent, Winthrop, Accord

14:16:30 18    Healthcare, or Dr. Reddy's Laboratories, which is one of those

14:16:35 19    ANDAs, abbreviated new drug application holders.  So all four of

14:16:39 20    those manufacturers had product in this particular facility between

14:16:42 21    that time frame.  And again, our position is this does not

14:16:46 22    establish product ID as to any one plaintiff.  It's basically a

14:16:57 23    purchase history of the facility.

14:16:59 24              THE COURT:  Yes, ma'am.

14:17:00 25              MS. SULKIN:  Yes, your Honor.  We submit that this is a

14:17:02  1    factual issue that is in the purview of the jury to decide.  The

14:17:09  2    defendants are surely able to present evidence that it was not

14:17:12  3    their product, but we believe that if individual discovery were

14:17:15  4    able to proceed, we were able to take additional depositions, that

14:17:24  5    it would be -- we would overcome any sort of obstacle to prove that

14:17:29  6    it was going to be manufactured (AUDIO DISTORTION) manufacturer.

14:17:35  7            THE COURT:  Well, who do you purport the manufacturer to

14:17:38  8    be for this plaintiff?

14:17:40  9            MS. SULKIN:  My apologies, your Honor, I am just trying

14:17:57 10    to look through this.

14:17:58 11            THE COURT:  I'm trying to figure this out.

14:18:10 12            MS. SULKIN:  And actually for this plaintiff, I will

14:18:13 13    withdraw this purchasing history, because Ms. Sunjah treated prior

14:18:20 14    to this purchasing history, but we did upload it for Yvonne Dixon,

14:18:28 15    who has the same purchasing history, this is something we received

14:18:31 16    from UAB Kirklin.

14:18:33 17            THE COURT:  So this is Ms. Paisley Sunjah, her case is

14:18:36 18    going to be dismissed with prejudice.

14:18:40 19            Okay.  Now, who was your next?

14:18:49 20            MS. SULKIN:  Yvonne Dixon, and it's going to involve the

14:18:54 21    same manufacturers.

14:18:56 22            THE COURT:  What number is --

14:19:03 23            THE DEPUTY CLERK:  112.

14:19:05 24            MS. SULKIN:  112.

14:19:06 25            THE COURT:  Okay.  Yvonne Dixon.  When did she receive

14:19:10 1  treatment?

14:19:13 2          MS. SULKIN:  Yvonne Dixon received treatment from

14:19:16 3  September 17th, 2015, through November 19th of 2015.

14:19:22 4          MS. CALLSEN:  This purchase history that I just provided

14:19:24 5  is what they provided as well.

14:19:54 6          THE COURT:  And who do you say the manufacturer is?

14:19:58 7          MS. SULKIN:  Winthrop, Accord, and Sagent.

14:20:09 8          MS. CALLSEN:  Or obviously.

14:20:25 9          THE COURT:  I just don't think this is sufficient

14:20:27 10 evidence because it could have been any of these, and is there any

14:20:35 11 way that you're going to make a determination as to which one, or

14:20:38 12 you're just going to ask the jury to pick?

14:20:41 13         MS. SULKIN:  What we would do in this scenario where

14:20:45 14 we're allowed to proceed with discovery is we would likely take

14:20:50 15 depositions of the distributor, and also whoever runs the pharmacy

14:21:00 16 department of UAB Kirklin.  We've in the past been able to secure

14:21:05 17 letters from other facilities indicating how quickly they're able

14:21:10 18 to go through their inventory, and more likely than not within a

14:21:15 19 certain period of time this inventory would have been used.  And so

14:21:20 20 that helps us determine/narrow down who the manufacturer is.

14:21:25 21         Additionally, your Honor, there are cases in which there

14:21:27 22 are multiple manufacturers that are infused to the same person, and

14:21:33 23 so it could be that that's what occurred here as well.

14:21:38 24         MS. CALLSEN:  Could.

14:21:39 25         THE COURT:  Do you have any idea what she was

14:21:42  1    administered, what the docetaxel vial was?  Because I am looking.

14:21:49  2    July 15th through December 17th, Sanofi, if you will, distributed

14:21:55  3    80 Mg/4 Ml vials.  And Accord, during that exact same time frame

14:22:04  4    was distributing Docetaxel, 20 Mg.  Do you have any idea -- well,

14:22:12  5    no, also Accord was also doing the 80 Mg/4 Ml vials.

14:22:20  6            MS. CALLSEN:  Exactly.  And, your Honor, I just want --

14:22:22  7    the time for discovery is past.  I mean, CMO 12 allows for that,

14:22:28  8    nothing was pursued.

14:22:29  9            And further on 3/11/22, plaintiffs uploaded a document

14:22:33 10    stating that they had pursued good faith efforts to obtain product

14:22:39 11    ID over the years from 2000 (SIC) to 2022.  So they had four years

14:22:47 12    and they told us they expended good faith efforts in those four

14:22:53 13    years.

14:22:54 14            THE COURT:  I understand.  I am just trying to understand

14:22:56 15    what Ms. Sulkin is saying.

14:23:03 16            MS. SULKIN:  Your Honor, obviously we -- CMO 12 does

14:23:08 17    exist to do some discovery, but there is also -- if these cases

14:23:15 18    were remanded or in a different wave of discovery, I think we could

14:23:19 19    sort out factual issues.  We don't think that that's a

14:23:24 20    determination that should be made at this stage.

14:23:27 21            THE COURT:  I guess my frustration is you've reached out

14:23:37 22    to the infusion facility, and so you know -- I am assuming you

14:23:40 23    understand that she received Docetaxel and that then you were able

14:23:49 24    to get this information.  But are you telling me they had nothing

14:23:52 25    as to your client's, what she was administered?  And I mean, how

14:24:01  1    would that change?

14:24:04  2             MS. SULKIN:  Well, your Honor, we wouldn't necessarily

14:24:08  3    know certainly which manufacturer she would have received, but

14:24:12  4    that's not the standard for civil court.  We just need to show by a

14:24:16  5    preponderance of the evidence more likely than not who the

14:24:19  6    manufacturer or manufacturers were.

14:24:30  7             MS. CALLSEN:  I mean, this is just pure speculation, plus

14:24:32  8    this product has a two year shelf life.  So if she received it in

14:24:38  9    2015, what I just handed to you shows products shipped in 2014.

14:24:43 10    The facility could have used product that was already on their

14:24:46 11    shelf.  I mean, it's just speculation, it's not enough to go to a

14:24:50 12    jury.

14:24:52 13             MS. SULKIN:  And, your Honor, the defendants are welcome

14:24:54 14    to introduce that sort of evidence to poke holes in our case;

14:24:59 15    however, we don't think that it's the right time to dismiss this

14:25:02 16    case.

14:25:03 17             THE COURT:  I think there's been adequate opportunity for

14:25:08 18    discovery, and I just -- I think you have to be able to identify a

14:25:17 19    manufacturer because --

14:25:23 20             MS. SULKIN:  Your Honor --

14:25:25 21             THE COURT:  I guess my concern is, if I got in an

14:25:29 22    automobile accident I couldn't just start suing manufacturers.  A

14:25:33 23    car hit me, Ford manufactures cars, so the jury can decide if it

14:25:39 24    was probably a Ford.  And I don't think these purchase records get

14:25:50 25    me in the realm of anything that the jury can decide because it

14:25:58 1    sounds to me like they would be guessing as well.  And so I am

14:26:02 2    going to dismiss the case.

14:26:06 3          MS. SULKIN:  Your Honor, can I get clarification just on

14:26:10 4    the standard that you say they proved for identifying the

14:26:15 5    manufacturer, whether it's beyond a reasonable doubt or by a

14:26:19 6    preponderance of the evidence?

14:26:21 7          THE COURT:  Oh, I think it is preponderance of evidence.

14:26:29 8    But I think when you are naming a defendant you have to know that

14:26:34 9    that defendant was a manufacturer of a product, whether or not

14:26:39 10   there was a defect in it, then we're going to get into the

14:26:46 11   preponderance of evidence.  I think you have to have a real basis

14:26:56 12   for making that determination, and what I have is purchasing

14:27:00 13   records by a medical facility, and I don't think that's sufficient

14:27:05 14   to go to a jury.

14:27:12 15         MS. SULKIN:  Your Honor, we obviously object.

14:27:14 16         THE COURT:  Of course.  Of course.  Of course.  Of

14:27:19 17   course.  I just don't think that there's sufficient information.

14:27:25 18         MS. SULKIN:  We find this akin to a situation in which if

14:27:30 19   two people fired a gun and one bullet hits one person, you know,

14:27:34 20   you might not be able to identify which person was the one who

14:27:41 21   inflicted that wound; however, you could have circumstantial

14:27:44 22   evidence to prove by a preponderance of the evidence who that

14:27:50 23   person was or a jury could deduce and make their own assumptions to

14:27:57 24   determine who the tort-feasor is.  And so we find that situation to

14:28:01 25   be akin to what's going on here because we do think that there is a

14:28:06  1    basis for who the manufacturer is based on the purchasing records.

14:28:10  2    The plaintiff could not be administered a drug by a manufacturer

14:28:15  3    that was not at the facility, but we believe that we have

14:28:19  4    sufficient proof to go forward.

14:28:21  5             THE COURT:  And your objection is noted for the record.

14:28:26  6             Okay.  Ms. Sulkin, any others?

14:28:34  7             MS. SULKIN:  I am just going through my notes quickly to

14:28:40  8    see if there's any others in that category.  No more that we've

14:28:48  9    submitted product identification for, but we do have some

14:28:52  10   objections based on subpoenas issued to distributors.

14:28:58  11            And one of the distributors is obviously a defendant in

14:29:02  12   this litigation, McKesson, and it's my understanding that these

14:29:08  13   distributors were working with liaison counsel to produce

14:29:15  14   purchasing records that -- actually, it was -- and some of these

14:29:19  15   purchasing records would be in the company of letters from

14:29:24  16   physicians or pharmacies indicating a very narrow window of which

14:29:31  17   the purchased inventory would have been administered to a patient,

14:29:35  18   and so it would narrow the purchase history down even further.  And

14:29:41  19   so I'll give the list of those plaintiffs, if that's all right.

14:29:41  20            THE COURT:  Okay.

14:29:41  21            MS. CALLSEN:  Your Honor, I guess --

14:29:45  22            MS. SULKIN:  (AUDIO DISTORTION.)

14:29:45  23            THE COURT:  Wait, wait, wait.  Please stop.  Can we go

14:29:57  24   back because I missed your first one, who was that?

14:30:00  25            MS. SULKIN:  The first one is plaintiff 109, Gwendolyn

| | | |
|---|---|---|
| 14:30:07 | 1 | Crawford. |
| 14:30:07 | 2 | THE COURT:  Okay. |
| 14:30:08 | 3 | MS. SULKIN:  And for each one of these subpoenas we did |
| 14:30:10 | 4 | provide a copy to the defendant. |
| 14:30:15 | 5 | MS. CALLSEN:  Your Honor -- |
| 14:30:17 | 6 | THE COURT:  I am not sure I understand what's happening. |
| 14:30:20 | 7 | MS. CALLSEN:  Yeah, I don't either, that's my question. |
| 14:30:22 | 8 | I mean, I can see that on Crawford a subpoena was issued to a |
| 14:30:26 | 9 | cancer institute for the third time to the same cancer institute, |
| 14:30:31 | 10 | that yielded no results previously.  I don't see that a subpoena |
| 14:30:36 | 11 | was administered to McKesson, which I believe is what Ms. Sulkin is |
| 14:30:40 | 12 | saying. |
| 14:30:41 | 13 | Melanie, if I am mishearing you, please set me straight. |
| 14:30:46 | 14 | MS. SULKIN:  Yes, we issued a subpoena to McKesson for |
| 14:30:52 | 15 | this plaintiff.  Every time we issue a subpoena, we are required to |
| 14:30:57 | 16 | also e-mail all defendants, which we did.  And then we've also been |
| 14:31:02 | 17 | working with liaison counsel for some of these cases as well.  And |
| 14:31:07 | 18 | so we would just ask that we at least have the opportunity to or |
| 14:31:11 | 19 | McKesson be required to submit purchasing history from these |
| 14:31:17 | 20 | facilities given they are defendants in this matter, and then we |
| 14:31:20 | 21 | can take this issue up again if the purchasing history is not |
| 14:31:25 | 22 | deemed sufficient at that time. |
| 14:31:26 | 23 | MS. CALLSEN:  Your Honor, my understanding is liaison |
| 14:31:28 | 24 | counsel has been working with McKesson in serving subpoenas, I am |
| 14:31:33 | 25 | not trying to put you on the spot, but I know it's been two or |

14:31:36  1    three years.  I remember working with Ms. Barrios on this.  So my

14:31:43  2    understanding is those subpoenas we had to all identify -- all of

14:31:46  3    the manufacturers had to identify their distributors, then all of

14:31:48  4    these distributors were served with subpoenas seeking the very

14:31:54  5    information Ms. Sulkin is seeing.  So I am just pointing out that

14:31:57  6    that step has already been taken, so I am just not sure what is

14:32:00  7    being proposed at this point that's additional.

14:32:03  8              MS. SULKIN:  Your Honor, as Ms. Brilleaux laid out, our

14:32:08  9    subpoenas have been received, but we've not received any response

14:32:12 10    to the subpoena (AUDIO DISTORTION).

14:32:13 11              THE COURT:  I am really having trouble hearing you,

14:32:16 12    Ms. Sulkin.  I am not trying to be difficult.  Wait, what?

14:32:18 13              MS. SULKIN:  I apologize.  I guess I am not a recipient

14:32:24 14    of good WiFi (AUDIO DISTORTION).

14:32:27 15              Your Honor, we have not received any of the purchasing

14:32:31 16    history from McKesson.

14:32:34 17              THE COURT:  Okay.

14:32:35 18              MS. CALLSEN:  My understanding is those subpoenas were

14:32:35 19    served --

14:32:35 20              MS. SULKIN:  (AUDIO DISTORTION.)

14:32:41 21              MS. CALLSEN:  -- ages ago, and the time to --

14:32:41 22              MS. SULKIN:  (AUDIO DISTORTION.)

14:32:43 23              MS. CALLSEN:  I am not trying to talk over you, I'm

14:32:46 24    sorry.

14:32:47 25              THE COURT:  I know, that's part of this problem.  Okay.

14:32:49  1    Go ahead, ma'am.

14:32:51  2         MS. SULKIN:  Yes, these subpoenas were served, but it's

14:32:54  3    my understanding that there was no response; and that McKesson was

14:33:00  4    working with liaison counsel and was supposed to be producing this

14:33:04  5    information to liaison counsel but had not done so.

14:33:08  6         MS. CALLSEN:  And I am just going to reiterate that

14:33:12  7    CMO 12 sets forth out all these steps that could have been pursued,

14:33:17  8    and we're here now because the steps have been pursued, which we

14:33:20  9    appreciate have been done, but we still have no product ID.

14:33:23 10         MS. SULKIN:  And, your Honor, when McKesson, a defendant

14:33:27 11    in this matter is the keeper of that information, I don't know what

14:33:30 12    else we could do.

14:33:39 13         THE COURT:  Ms. -- it's not Berg.

14:33:39 14         MS. BERG:  Kreider, your Honor.  I'll answer to Berg,

14:33:39 15    too, though.

14:33:47 16         I am not sure if McKesson has outstanding responses to

14:33:54 17    liaison, but if Ms. Sulkin has sent them out and they're

14:33:59 18    outstanding, then maybe we should defer this to the next conference

14:34:03 19    after --

14:34:03 20         THE COURT:  All right.  How many plaintiffs are we

14:34:10 21    talking about?

14:34:14 22         MS. SULKIN:  For McKesson specifically on this show cause

14:34:18 23    hearing, hold on one second, your Honor.  On this show cause

14:34:41 24    hearing, I would have to go through my records that I don't have

14:34:44 25    handy with me to see how many subpoenas would be outstanding

14:34:51  1  subpoenas to McKesson there are.

14:34:52  2          THE COURT:  Well, I think you were going to identify

14:34:54  3  them.

14:34:57  4          MS. SULKIN:  Yes.

14:34:59  5          THE COURT:  Let's have you identify them and let me see

14:35:02  6  what we have, what we're dealing with.  We have Gwendolyn Crawford.

14:35:08  7  Let me just see.

14:35:08  8          MS. SULKIN:  And then No. 162, Angie Witherby.

14:35:18  9          THE COURT:  Are those the only two?

14:35:22 10          MS. SULKIN:  In this hearing.  There are likely others,

14:35:27 11  as we sent several subpoenas to McKesson.

14:35:31 12          THE COURT:  I am talking about in this hearing.  I am

14:35:32 13  just talking about today, I am not looking in advance, I don't want

14:35:35 14  to know anything else.

14:35:38 15          So for this hearing, we have Gwendolyn Crawford and Angie

14:35:46 16  Witherby; is that correct?

14:35:47 17          MS. SULKIN:  Correct.

14:35:53 18          THE COURT:  I don't have enough information, I really

14:35:58 19  don't.  I am going to ask that I be presented with just letter

14:36:05 20  briefing telling me where we are with this.

14:36:13 21          MS. CALLSEN:  So letter briefing from plaintiffs, your

14:36:15 22  Honor?  This is the first I am hearing of this issue, too, so I

14:36:20 23  am not sure what --

14:36:21 24          THE COURT:  This is what I am going to do.  I am going to

14:36:23 25  ask Ms. Sulkin to submit letter briefing by Monday and then you may

14:36:27  1    respond by Friday of next week.

14:36:29  2             MS. CALLSEN:  Okay.

14:36:30  3             THE COURT:  And then I can see what it is, where we are.

14:36:38  4    Okay.

14:36:38  5             MS. SULKIN:  And, your Honor, we just also request that

14:36:41  6    McKesson be ordered to produce purchasing history for the subpoenas

14:36:47  7    that they have received, we're not aware of receiving any --

14:36:53  8             THE COURT:  I think that's what a subpoena is.

14:36:55  9             MS. CALLSEN:  I've seen communications back and forth

14:36:59 10    with McKesson on these issues, so my understanding is they have

14:37:01 11    provided what they could.  But without the details, I don't --

14:37:03 12             THE COURT:  Let's see where we are and then we can

14:37:06 13    proceed from there.

14:37:08 14             MS. BRILLEAUX:  Your Honor, for No. 155, Susan Thompson,

14:37:12 15    can we request the same letter briefing schedule so that Sanofi has

14:37:16 16    the opportunity to respond to what plaintiff's argument is since

14:37:20 17    this isn't anything we were aware of until today?

14:37:23 18             THE COURT:  So ordered, yeah.

14:37:25 19             MS. BRILLEAUX:  Thank you.

14:37:29 20             THE COURT:  All right.  Ms. Sulkin.

14:37:36 21             MS. CALLSEN:  Anything else?

14:37:40 22             MS. SULKIN:  Yes, your Honor.  For some of these other

14:37:45 23    distributors, we would just like a little bit more time.  We've

14:37:51 24    sent subpoenas to Cardinal Health as well, and it was my

14:37:54 25    understanding that they were working with defendants and liaison

| | |
|---|---|
| 14:37:57 | 1 |
| 14:38:01 | 2 |
| 14:38:03 | 3 |
| 14:38:07 | 4 |
| 14:38:11 | 5 |
| 14:38:13 | 6 |
| 14:38:17 | 7 |
| 14:38:20 | 8 |
| 14:38:23 | 9 |
| 14:38:27 | 10 |
| 14:38:32 | 11 |
| 14:38:36 | 12 |
| 14:38:38 | 13 |
| 14:38:42 | 14 |
| 14:38:43 | 15 |
| 14:38:47 | 16 |
| 14:38:50 | 17 |
| 14:38:55 | 18 |
| 14:39:00 | 19 |
| 14:39:08 | 20 |
| 14:39:11 | 21 |
| 14:39:14 | 22 |
| 14:39:17 | 23 |
| 14:39:22 | 24 |
| 14:39:26 | 25 |

counsel, and we just request additional time to be able to check in

on those subpoenas.

THE COURT:  For which plaintiffs?

MS. SULKIN:  For No. 16 --

THE COURT:  One what?

MS. SULKIN:  116, Christy Fields.

MS. CALLSEN:  And again, Ms. Sulkin, are you referring to

efforts that started -- I don't even know, do you remember, was it

three years ago, four years ago?  I am just trying to get a handle

on what you're talking about.  I mean, I remember all of these

going on I want to say four years ago.  I remember working with

Ms. Barrios on it, and I know she is not on, I am not trying to --

she is not on the phone -- but we worked well together on these

issues.

MS. BERG:  There were efforts with defendant liaison

distributors three years ago, yes.  Some of the distributors I

believe requested individual subpoenas from plaintiffs' counsel and

wouldn't -- didn't cooperate in the group setting.  So it may be

that there's more opportunity for her to work on it.

MS. SULKIN:  And I believe McKesson was one of them.

THE COURT:  What is the issue with Christy Fields?

MS. SULKIN:  We sent a subpoena to the distributor

Cardinal Health, and we just want to be given the opportunity to

checkup on what the efforts are amongst the defendants and liaison

counsel with regards to the subpoena.

14:39:29  1          THE COURT:  And where is -- I mean, is this the first

14:39:32  2   subpoena that's been issued to Cardinal Health?

14:39:37  3          MS. SULKIN:  For this plaintiff, yes.

14:39:40  4          It's interesting, your Honor.  Originally when we would

14:39:45  5   send subpoenas to Cardinal Health or AmerisourceBergen.

14:39:50  6   AmerisourceBergen is one of the distributors, and they generally,

14:39:53  7   readily provided us with this information; but after a little

14:39:57  8   while, these distributors stopped responding to individual counsel.

14:40:02  9   McKesson has never responded to one of my subpoenas, and Cardinal

14:40:08  10  Health said that they were dealing with these subpoenas on a group

14:40:11  11  basis, and that was kind of the last I had heard.

14:40:15  12         THE COURT:  Okay.  And when was this subpoena issued to

14:40:18  13  Cardinal Health?

14:40:21  14         MS. SULKIN:  Gosh.  I want to 2019 or 2020.

14:40:28  15         MS. CALLSEN:  I guess that just goes to my point, your

14:40:30  16  Honor.  I mean, if they're just now following up on this because

14:40:33  17  they were put on an order that they actually had to do something.

14:40:38  18         Ms. Brilleaux, what's your position on that?

14:40:42  19         MS. SULKIN:  And, your Honor, we were not doing nothing

14:40:46  20  as Ms. Brilleaux suggests, we were told that they were working with

14:40:50  21  the defendants and liaison counsel.  And unfortunately, as the

14:40:54  22  plaintiffs were not the keepers of this information, defendants are

14:40:57  23  the ones who had the relationships with these distributors.  It's

14:41:01  24  not us.

14:41:07  25         MS. CALLSEN:  This is all new -- I think you know what

14:41:10  1   I'm going to say, your Honor, so I won't belabor the point.

14:41:19  2   Defendants are who provided the information as to who our

14:41:22  3   distributors are, that's true.

14:41:25  4            THE COURT:   Okay.

14:41:25  5            MS. SULKIN:   (AUDIO DISTORTION.)

14:41:26  6            THE COURT:   Listen, I know there's a great deal of

14:41:31  7   frustration all around, but let me remind all of you, I am really

14:41:38  8   the one that has the least bit of information as to the facts about

14:41:43  9   these particular plaintiffs, because, you know, I have not looked

14:41:46 10   at MDL Centrality before I got here.  You have.  I mean, I just --

14:41:57 11   I don't know -- I'll defer for a couple of weeks to give me an

14:42:00 12   opportunity to look at it, but I don't know.  I am going to ask you

14:42:04 13   to give me something, include that on the list of briefing.

14:42:07 14            But, Ms. Sulkin, I just have to tell you, I really wish

14:42:12 15   you would have had this conversation with defense counsel before we

14:42:14 16   walked in here so that they were at least -- we would be able to

14:42:20 17   discuss it meaningfully.  I feel like I can't do that.  So I am

14:42:25 18   going to order letter briefing on this by Monday of next week and

14:42:31 19   defense can respond by Friday of next week.

14:42:35 20            Okay.  Ms. Sulkin, let's go to the next one.

14:42:46 21            MS. SULKIN:   I'm just -- we don't have too many left.

14:42:49 22   There are a couple of other ones with the same issue as Ms. Fields,

14:42:57 23   but I am going to try to go in order on my list just to speed

14:43:03 24   things up.

14:43:04 25            For Johnna Hohenberg, No. 124.  This facility responded

14:43:12  1    to us recently saying they think our subpoena is invalid because a

14:43:14  2    judge didn't sign it.  I was in trial the last month, and so I just

14:43:19  3    request a two-week extension to try and call this facility and see

14:43:24  4    if I can straighten things out with the facility and let them know

14:43:28  5    that they're valid.

14:43:29  6            THE COURT:  I will roll that one over until next month.

14:43:33  7            MS. CALLSEN:  Until when, I'm sorry, your Honor?

14:43:35  8            THE COURT:  The next hearing.

14:43:39  9            MS. SULKIN:  Charlotte Jefferson has the same issue as

14:43:44 10    Ms. Fields, Cardinal Health is the wholesaler and we did issue a

14:43:51 11    subpoena. (AUDIO DISTORTION.)

14:43:58 12            THE COURT:  That's going to be letter briefing.

14:44:06 13            MS. SULKIN:  The next one is 131, Dorothy Lawrence.  I am

14:44:11 14    in contact with risk management for Cleveland Clinic, and I have

14:44:19 15    been successful in getting product identification previously, so I

14:44:22 16    just ask that this case be rolled over until the next hearing.

14:44:26 17            MS. CALLSEN:  Which one, your Honor, I'm sorry?  Which

14:44:28 18    one, Melanie?

14:44:28 19            THE COURT:  Dorothy Lawrence, 131.  So she received

14:44:38 20    treatment at the Cleveland Clinic?

14:44:40 21            MS. SULKIN:  Correct.

14:44:45 22            THE COURT:  But you hadn't -- I am just trying to

14:44:49 23    understand where we were, but you have not received product ID?

14:44:56 24            MS. SULKIN:  Correct.  But there has been other

14:44:58 25    plaintiffs who treated at Cleveland Clinic in the same time period

14:45:02   1   and I was able to obtain product ID, and I am in contact with the

14:45:06   2   risk manager there and he is generally pretty responsive to me

14:45:10   3   so --

14:45:10   4           THE COURT:  I'll roll that one over to the next.

14:45:17   5           MS. SULKIN:  Thank you, your Honor.

14:45:23   6           For 135, Derhonda Mcclellan, the facility told us that

14:45:31   7   they had sent an NDC code via mail to us but we have not received

14:45:37   8   anything, and so we would just ask that this case be rolled over to

14:45:42   9   the next conference so we can ask them to mail it again.

14:45:45  10           THE COURT:  All right.  I'll roll this one over.

14:45:48  11           MS. SULKIN:  Thank you, your Honor.

14:46:00  12           THE COURT:  Okay.

14:46:02  13           MS. SULKIN:  154, Mary Thomas.  We just received a

14:46:07  14   notification that there are new records.  I paid for them and we're

14:46:12  15   just waiting for them to be mailed, and so we would just ask for

14:46:16  16   this case to be rolled over to see if those medical records have

14:46:21  17   product ID.

14:46:22  18           THE COURT:  We'll roll over.

14:46:27  19           MS. SULKIN:  And then for 147, Luz Pluguez -- I am

14:46:36  20   probably butchering that name -- we know that the wholesaler is

14:46:45  21   Drogueria Castillo, and we would just ask for the opportunity to

14:46:48  22   subpoena them.  They are a Puerto Rican distributor.

14:46:56  23           MS. CALLSEN:  In this particular case, again, they

14:46:59  24   submitted good faith efforts that they've tried to provide product

14:47:03  25   ID and shown us evidence of those, but they don't have it.  So I am

14:47:06  1  not understanding.  Are they saying they didn't really exert good

14:47:09  2  faith efforts and they're now doing it?  I guess -- I know I am

14:47:11  3  frustrated, your Honor, but I am just saying.

14:47:15  4          THE COURT:  Ms. Sulkin, did you just subpoena this?

14:47:20  5          MS. SULKIN:  No.  We subpoenaed them awhile back, but we

14:47:24  6  recently found out or assuming that the wholesaler is Drogueria

14:47:24  7  Castillo.

14:47:34  8          And so I take issue with asserting that we did not submit

14:47:37  9  good faith efforts.  We have constantly been trying to make good

14:47:43 10  faith efforts, and unfortunately, when we don't have the

14:47:46 11  information or who is the keeper of this information, sometimes we

14:47:57 12  learn information piecemeal.  So I take issue with the fact that

14:47:59 13  Ms. Brilleaux (SIC) is suggesting that I have not been acting in

14:48:02 14  good faith.

14:48:03 15          MS. CALLSEN:  I'm sorry, Melanie, that's not what I -- my

14:48:05 16  point was that you've already told us that you made good faith

14:48:08 17  efforts over the years and now you're telling us, the Court and us,

14:48:12 18  that you need to make more effort.  So, I'm sorry, but that does

14:48:16 19  make us question your prior certification that you've already done

14:48:19 20  that.

14:48:22 21          MS. SULKIN:  Well, you can make a good faith effort and

14:48:25 22  then continue to make attempts to make a good faith effort.  I

14:48:30 23  don't rest on my role, I continue to try and get additional

14:48:33 24  information.

14:48:34 25          THE COURT:  All right.  So you have requested more

14:48:38  1   information from who?

14:48:40  2             MS. SULKIN:  We will be requesting it if we're given the

14:48:52  3   opportunity to -- information from Drogueria Castillo.

14:48:52  4             THE COURT:  And they are?

14:48:53  5             MS. SULKIN:  They are a wholesaler in Puerto Rico.

14:48:58  6             THE COURT:  And they provided Docetaxel to whom?

14:49:03  7             MS. SULKIN:  To the facility that our client treated at.

14:49:18  8             THE COURT:  And where did you just get this information

14:49:21  9   from?

14:49:24  10            MS. SULKIN:  From counsel for the hospital.

14:49:38  11            THE COURT:  And you just received that information?

14:49:41  12            MS. SULKIN:  No, we actually did receive it awhile back

14:49:44  13  but I just found it.

14:49:55  14            THE COURT:  We're going to roll it over to the next

14:49:57  15  hearing, but that's it.

14:49:59  16            Okay.  Who else?

14:50:03  17            MS. SULKIN:  And that was everybody on my list that I had

14:50:06  18  specific objections to.

14:50:08  19            THE COURT:  Okay.

14:50:09  20            MS. CALLSEN:  Just for the record, I would just like to

14:50:11  21  put something on the record.  We just submitted two plaintiffs

14:50:14  22  counsel, because that's the first step, a list of almost 600 cases

14:50:19  23  I believe, Kate, for the next round.  We would just ask that

14:50:24  24  plaintiffs please look at this now rather than wait until the show

14:50:28  25  cause hearing to do so.

| | |
|---|---|
| 14:50:33 | 1 |
| 14:50:36 | 2 |
| 14:50:40 | 3 |
| 14:50:43 | 4 |
| 14:50:46 | 5 |

14:50:33  1         MS. BERG:  Your Honor, this is one of our first one of

14:50:36  2    these types of hearings, and while we both tried to do our best,

14:50:40  3    there is definitely some issues that arose with timing and things.

14:50:43  4    Now we know some of the issues that we're going to see on these,

14:50:46  5    and the briefing will help work that out.

14:50:49  6         THE COURT:  And I appreciate that, Ms. Berg, but part of

14:50:52  7    my frustration is that there was an opportunity when the first list

14:50:56  8    went out in March -- I think it was April, September, and December,

14:51:00  9    and now for the first time we're hearing that outstanding subpoenas

14:51:05  10   are there.  It seems to me that it behooves the defendants -- I

14:51:10  11   mean, the plaintiffs to say this is the status in this case so that

14:51:15  12   perhaps we're not hearing these things for the first time in the

14:51:19  13   show cause hearing.

14:51:20  14        But with that, I have heard the objections of Ms. Sulkin,

14:51:26  15   but the Court's going to dismiss with prejudice:  No. 101, Karin

14:51:29  16   Bosela; 102, Tina Breznik; 103, Pamela Brito; 104, Shawna Brooks;

14:51:40  17   105, Maria Campbell; No. 106, Debra Cantor; No. 107, Soundra

14:51:46  18   Chavez; No. 108, Joan Coleman; No. 110, Tammy Crumity; No. 111,

14:51:58  19   Sandra Darby; 113, Gloria Dowd; 114, Carol Fancher; 115, Crystal

14:52:09  20   Farmakis; No. 118, Sharon Gardner; 119, Patricia Goldsboro; 123,

14:52:19  21   Connie Hendrix; 125, Diane Jackson; 127, Elaine Jenkins; 129, Eva

14:52:28  22   Johnson; 130, Sheila Kimbrell; 132, Nancy Lawson; 133, Wanda Lopez;

14:52:37  23   134, Karen Lumpkin; 136, Sheila McDowell; 138, Yvonne Mitchell;

14:52:46  24   139, Twili Moore; 140, Beverly Neal; 141, Renice Newton; 143,

14:52:58  25   Kimberlee Norwood; 144, Jamie Payne; 145, Valaire Pilson; 146,

14:53:05  1   Gloria Pittman; 150, Susan Reeder; 151, Dorothy Sundell; 153,

14:53:17  2   Juanita Taylor; 156, Cynthia Tyrone; 157, Ella Varner; 158, Trudie

14:53:29  3   Wafer; 159, Jan Watts; 161, Norma Wilson; 163, Liz Zito; and 164,

14:53:44  4   Patricia Zupko.

14:53:48  5           And for the record, those numbers that I identified with

14:53:50  6   those that were on the hearing list, those are not the actual MDL

14:53:56  7   docket number.

14:53:56  8           Anything further?

14:53:58  9           MS. CALLSEN:  Not from defendants, your Honor.

14:54:00  10          MS. BERG:  No, your Honor.

14:54:00  11          THE COURT:  Okay.  Court's adjourned until tomorrow.

14:54:03  12          MS. CALLSEN:  Thank you.

14:54:04  13          MS. BERG:  Thank you.

14:54:04  14          THE COURT:  Thank you.

14:54:05  15          THE DEPUTY CLERK:  All rise.

14:54:23  16       (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

        17

        18                        *  *  *  *  *  *

        19

        20                     REPORTER'S CERTIFICATE

        21          I, Karen A. Ibos, CCR, Official Court Reporter, United
            States District Court, Eastern District of Louisiana, do hereby
        22   certify that the foregoing is a true and correct transcript, to the
            best of my ability and understanding, from the record of the
        23   proceedings in the above-entitled and numbered matter.

        24                      ___/s/ Karen A. Ibos_____
                                 Karen A. Ibos, CCR, RPR, CRR, RMR
        25                       Official Court Reporter