1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3        ****************************************************************

4        IN RE:   TAXOTERE
5        (DOCETAXEL) PRODUCTS
         LIABILITY LITIGATION
6
                                    CIVIL ACTION NO. 16-MD-2740 "H"
7                                   NEW ORLEANS, LOUISIANA
08:46:34                            WEDNESDAY, JULY 13, 2022, 9:00 A.M.
8

9        THIS DOCUMENT RELATES TO:
         ALL CASES
10
         ****************************************************************
11

12

13              TRANSCRIPT OF MISSISSIPPI SHOW CAUSE PROCEEDINGS
               HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
14                    UNITED STATES DISTRICT JUDGE

15

16       APPEARANCES:

17

18       FOR THE PLAINTIFFS:        GAINSBURGH BENJAMIN DAVID
                                    MEUNIER & WARSHAUER
19                                  BY:  M. PALMER LAMBERT, ESQ.
                                        CLAIRE E. KREIDER, ESQ.
20                                  1100 POYDRAS STREET, SUITE 2800
                                    NEW ORLEANS, LOUISIANA 70163
21

22                                  MARTZELL BICKFORD & CENTOLA
23                                  BY:  LAWRENCE J. CENTOLA, ESQ.
                                    338 LAFAYETTE STREET
24                                  NEW ORLEANS, LOUISIANA 70130

25

                            *OFFICIAL TRANSCRIPT*

```
 1    APPEARANCES CONTINUED:

 2

 3    FOR SANOFI S.A.:              IRWIN FRITCHIE URQUHART & MOORE
                                    BY:  KELLY E. BRILLEAUX, ESQ.
 4                                  400 POYDRAS STREET, SUITE 2700
                                    NEW ORLEANS, LOUISIANA 70130
 5

 6
                                    SHOOK, HARDY & BACON
 7                                  BY:  JORDAN BAEHR, ESQ.
                                    2555 GRAND BOULEVARD
 8                                  KANSAS CITY, MISSOURI 64108

 9

10    FOR SANDOZ, A NOVARTIS
      DIVISION:                     GREENBURG TRAURIG
11                                  BY:  NICHOLAS INSOGNA, ESQ.
                                    TERMINUS 200
12                                  3333 PIEDMONT ROAD, NE
                                    ATLANTA, GEORGIA 30305
13

14
      FOR ACCORD HEALTHCARE,
15    INC.:                        TUCKER ELLIS
                                   BY:  BRENDA A. SWEET, ESQ.
16                                 950 MAIN AVENUE, SUITE 1100
                                   CLEVELAND, OHIO 44113
17

18
      ALSO PRESENT VIA TELEPHONE:       DAVID HODGES, ESQ.
19                                      CHRISTINE DURANT, ESQ.
                                        JULIE REYNOLDS, ESQ.
20                                      JENNIFER GREENE, ESQ.
                                        AMY GUNN, ESQ.
21

22                                      CLAIRE KREIDER, ESQ.
                                        ADAM STOLTZ, ESQ.
23                                      ANDREW GEIGER, ESQ.
                                        BLAKE WEIMAN, ESQ.
24                                      LINDSAY STEVENS, ESQ.

25

                         OFFICIAL TRANSCRIPT
```

1    APPEARANCES CONTINUED:

2

3                                       MARK NIEMEYER, ESQ
                                        ROBIN MYERS, ESQ
4                                       JASON FRAXEDAS, ESQ
                                        RICK ROOT, ESQ
5                                       RHETT MCSWEENEY,ESQ

6
                                        TREVOR ROCKSTAD, ESQ
7                                       ANDREA BARIENT, ESQ
                                        BRET STANLEY,  ESQ.
8                                       MELANIE SULKIN, ESQ.

9

10
     OFFICIAL COURT REPORTER:    CATHY PEPPER, CRR, RMR, CCR
11                               CERTIFIED REALTIME REPORTER
                                 REGISTERED MERIT REPORTER
12                               500 POYDRAS STREET, ROOM B-275
                                 NEW ORLEANS, LOUISIANA 70130
13                               (504) 589-7779
                                 Cathy_Pepper@laed.uscourts.gov
14

15   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
     PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.
16

17

18

19

20

21

22

23

24

25

                         *OFFICIAL  TRANSCRIPT*

**P-R-O-C-E-E-D-I-N-G-S**

M O R N I N G   S E S S I O N

WEDNESDAY, JULY 13, 2022

(COURT CALLED TO ORDER)

08:46:34  3
08:46:34  4
08:46:34  5
09:05:33  6

THE DEPUTY CLERK:  All rise.

THE COURT:  Good morning.

THE DEPUTY CLERK:  Court is in session.  You may be seated.  MDL 1740, in re Taxotere Products Liability Litigation.

MR. BAEHR:  Good morning, Your Honor.

THE COURT:  Good morning, Mr. Baehr.

MR. BAEHR:  Just a few comments to hopefully explain what we've done, where we're at, and kind of how we expect today to go.  So, in the interest of hopefully streamlining today's process, we've reached out to plaintiffs' counsel to try to ascertain the basis of the objections that would be raised and, hopefully, plan a little bit, put them in -- categorize them for you.

In the wake of those conferrals, there have been quite a few cases more come off of the list, and I think you've been provided with a new list of --

THE COURT:  What I have is meaningless.

MR. BAEHR:  Okay.  So, I was going to ask how you

***OFFICIAL TRANSCRIPT***

```
09:06:41  1   prefer to deal with it.  It sounds like the best way is we'll
09:06:44  2   just identify them as we go through.
09:06:45  3        THE COURT:  I think we have to because the numbers that
09:06:49  4   I was provided apparently aren't the numbers that are
09:06:52  5   dismissed.  I mean, I just don't even know what this list is
09:06:55  6   anymore, if there are more names, because I was given numbers
09:07:00  7   42 to 48 and I stop at 40, so I just have no idea.
09:07:05  8        So, I think the thing to do is perhaps just go
09:07:08  9   one at a time, but I am interested, I understand there were
09:07:11 10   likely buckets, and I would like to know what those buckets
09:07:15 11   look like.
09:07:16 12        MR. BAEHR:  Certainly, Your Honor.  So, in that regard,
09:07:20 13   there was a bucket of cases that appear to, per conferral,
09:07:27 14   appeared that the plaintiffs had no connection to Mississippi
09:07:29 15   other than that is their current residence, and so defendants
09:07:34 16   took those cases off the list already, consistent with the
09:07:37 17   position that I'll outline in a second, but those have already
09:07:39 18   been removed.
09:07:41 19        I will also clarify for any plaintiffs' counsel
09:07:44 20   on the phone who may be like, what?  We didn't get an email.
09:07:47 21   We didn't connect with every counsel, and we had some bounce
09:07:50 22   back with emails and stuff, so if you didn't talk to us, that's
09:07:52 23   why.  Don't worry.
09:07:57 24        Okay.  So, the buckets.  The largest category of
09:07:59 25   cases is those where the plaintiff was either prescribed or
```

*OFFICIAL TRANSCRIPT*

09:08:01 1    treated or resided in Mississippi during treatment but not

09:08:05 2    necessarily all treatment.  So, in other words, there is some

09:08:08 3    connection to another state that plaintiffs would, I think, say

09:08:11 4    is a basis that that state's law should apply.

09:08:15 5              Understandably and certainly, I would do the same

09:08:17 6    thing if I was on the other side.  Different counsel for

09:08:19 7    different plaintiffs have taken different positions about which

09:08:22 8    of those facts is most important.  So, in other words, some who

09:08:26 9    were treated in Mississippi but didn't reside there say, well,

09:08:29 10   it's a state of residence and others who are in the opposite

09:08:34 11   position say the opposite.

09:08:35 12             Defendants think, frankly, that reasonable minds

09:08:38 13   can differ about what that is, but our position is that the

09:08:42 14   state of residence during treatment or if it's specifically

09:08:47 15   known the state of residence six months after the treatment

09:08:50 16   would be the state where the injury occurred according to the

09:08:53 17   definition of the injury in this litigation, and that should be

09:08:56 18   the predominating fact and factor, but like I said, I think --

09:09:02 19        THE COURT:  Reasonable minds can differ.

09:09:04 20        MR. BAEHR:  Reasonable minds can differ.  We just think

09:09:06 21   there should be a consistent rule.  So, if Your Honor thinks,

09:09:09 22   you know, it's the state of prescription or the state of

09:09:11 23   treatment, we understand.  We just -- our greatest advocacy

09:09:16 24   would be for our consistent rule across the cases.

09:09:17 25             Because of that, we've kept cases on the list

**OFFICIAL TRANSCRIPT**

09:09:19  1    that take the different positions because we don't know how

09:09:22  2    Your Honor is going to rule, and we don't want to foreclose,

09:09:24  3    you know, assume one way or the other, so you will see cases

09:09:29  4    that maybe you think, oh, that's different than what we said

09:09:32  5    our position is.  That's because we don't know what you're

09:09:35  6    going to rule.

09:09:38  7          There are also some objections just based on the

09:09:41  8    facts of the cases.  This particular plaintiff, according to

09:09:44  9    their treatment, that they didn't know that their hair loss is

09:09:48 10    permanent or something like that.  Defendants think those

09:09:51 11    objections are misplaced in the context of *Greer*.  Given that

09:09:56 12    it was a judgement on the pleadings and that Mississippi

09:09:58 13    doesn't have a discovery rule, we don't think those facts are

09:10:00 14    germane.

09:10:02 15          I think there are still a few cases where there

09:10:06 16    are just general objections that counsel are making to preserve

09:10:09 17    for the record, and defense would just point out that that's

09:10:12 18    accounted for in the dismissal order as we've drafted it, and

09:10:16 19    any existing objections are preserved for appeal.

09:10:20 20          Then, finally, I'm not sure if there will be any

09:10:24 21    cases where this comes up because there is quite a few cases

09:10:27 22    where we don't yet know what the objection is, but there were,

09:10:31 23    at times, raised objections based on plaintiffs who sought

09:10:36 24    amendments to their short form complaints to change the venue

09:10:40 25    that they had selected in their short form complaints.

***OFFICIAL TRANSCRIPT***

09:10:42  1          Defendants' position on that is simply that the

09:10:46  2   SFC identifies the state or the venue where a case would have

09:10:51  3   been filed, where the suit would have been filed if it hadn't

09:10:54  4   been direct filed, and that's not something that can change.

09:10:57  5   If you filed it in a certain venue, that's where it was filed,

09:11:01  6   and even if it were, it wouldn't be by an amendment to the

09:11:05  7   complaint.  That wouldn't be the proper process for that; so,

09:11:08  8   we don't think that should be a basis to disregard the venue

09:11:12  9   that was identified in the short form complaint.

09:11:13  10          Okay.  I think that covers the buckets, and if

09:11:16  11   you don't have any questions --

09:11:18  12          THE COURT:  I do.

09:11:18  13          MR. BAEHR:  Okay.  Yeah.

09:11:23  14          THE COURT:  You're not expecting me to rule on the

09:11:26  15   connections to other states today, are you?

09:11:29  16          MR. BAEHR:  Obviously, we defer to you.  We would

09:11:32  17   hope --

09:11:33  18          THE COURT:  I mean, I know what you would want me to

09:11:35  19   do, which is to say we dismiss everything that has passed

09:11:41  20   through Mississippi, but I just think these are harsh remedies.

09:11:47  21   I'm dismissing these cases certainly subject to the objections

09:11:51  22   that have been raised and so that those objections can be

09:11:55  23   raised on appeal.

09:11:56  24          But, one, I think each of those cases, it's

09:12:02  25   probably fact intensive, and I would need to have some

**OFFICIAL TRANSCRIPT**

09:12:09  1    briefing.  I don't know, because what you say is we have some

09:12:13  2    where they reside there now, but they didn't reside there

09:12:17  3    during the events in question.  That's one case, and then we

09:12:19  4    have cases where they were treated in Mississippi and moved

09:12:23  5    back to their home in Alabama.  That's a separate case.  I

09:12:26  6    mean, I could see that that's pretty much all over the place,

09:12:32  7    and I don't know how one can make a blanket ruling on that

09:12:39  8    unless you have buckets that identify facts that are very, very

09:12:49  9    similar.

09:12:50  10          MR. BAEHR:  I think there are buckets of facts.

09:12:54  11          THE COURT:  With buckets within that bucket is what I'm

09:12:57  12   saying, I mean sub-buckets.

09:12:58  13          MR. BAEHR:  Yeah, sub-buckets.  We certainly do have

09:13:02  14   sort of buckets where, okay, they resided in Mississippi, but

09:13:06  15   they weren't treated there.  That could be one bucket, or they

09:13:09  16   were treated in Mississippi but didn't reside there.

09:13:11  17          THE COURT:  Right, right.

09:13:12  18          MR. BAEHR:  And if -- I hear you saying you're not

09:13:17  19   hoping or desiring to rule on those cases.

09:13:19  20          THE COURT:  No, no, I'm not -- I will tell you flatly I

09:13:25  21   am not going to do that today because I think those people are

09:13:28  22   certainly entitled to appropriate briefing so that I have an

09:13:31  23   opportunity to look at what that specific objection is.

09:13:35  24          Now, people that lived in Mississippi, were

09:13:38  25   treated in Mississippi, have never left Mississippi, you

*OFFICIAL TRANSCRIPT*

09:13:43   1    know --

09:13:43   2         MR. BAEHR:  Understood.

09:13:44   3         THE COURT:  -- I think *Greer* certainly covers unless

09:13:47   4    there is something different, but you have to --

09:13:53   5         MR. BAEHR:  Sorry.

09:13:53   6         THE COURT:  No, go ahead.

09:13:54   7         MR. BAEHR:  Okay.  We do have quite a few cases that

09:13:56   8    fall into that bucket as well.

09:13:56   9         THE COURT:  Right.

09:13:58  10         MR. BAEHR:  So, okay.  And, that's helpful, I think,

09:14:01  11    with that guidance, we can tentatively plan to organize the

09:14:06  12    briefing by those factual buckets or figure out something that

09:14:10  13    helps with plaintiffs' counsel to group them in a logical way

09:14:12  14    for you.

09:14:14  15         THE COURT:  Okay.

09:14:14  16         MR. BAEHR:  I was -- oh, I also wanted to mention a few

09:14:18  17    of the states present choice of law issues that are very

09:14:22  18    similar to, if not identical to, choice of law issues that were

09:14:28  19    briefed in the wake of the Michigan hearing.

09:14:28  20         THE COURT:  Michigan.

09:14:31  21         MR. BAEHR:  Yes.  So, for those cases we might request

09:14:33  22    or we would request just that we forgo additional briefing

09:14:37  23    until you've had a chance to issue rulings in those cases --

09:14:41  24         THE COURT:  Okay.

09:14:41  25         MR. BAEHR:  -- on those briefs.

*OFFICIAL TRANSCRIPT*

09:14:43  1          THE COURT:  Okay.

09:14:43  2          MR. BAEHR:  All right.  I think that's all I have.

09:14:49  3          THE COURT:  Mr. Lambert, I guess you have something to

09:14:51  4    say.

09:14:53  5          MR. PALMER:  I do.  Yes, Your Honor.

09:14:55  6               Good morning, Your Honor.  Palmer Lambert,

09:14:58  7    coliaison counsel for plaintiffs.

09:15:01  8               Just to streamline the general objections, I have

09:15:04  9    something for the record for the plaintiffs.

09:15:05 10               May it please the Court.  The PSC filed an

09:15:12 11    objection to proceeding with this type of show-cause procedure

09:15:15 12    for such a fact-intensive analysis on the statute of

09:15:20 13    limitations to bar a large swath of the plaintiffs from being

09:15:24 14    able to proceed with case-specific discovery in trials.

09:15:27 15               First of all, I'm not a Mississippi lawyer, and I

09:15:31 16    don't profess to be an expert in Mississippi law, but I have

09:15:35 17    read some decisions that occurred recently after the *Greer*

09:15:40 18    decision that I would like to point out to the Court for

09:15:43 19    consideration.

09:15:43 20               The first is a Northern District of Mississippi

09:15:46 21    case called *Munson v. C.R. Bard*, 561 F.Supp. 3d 655, and it was

09:15:55 22    decided September 20, 2021.  The Court denied the motion for

09:16:01 23    summary judgment in that case and found that the question for

09:16:04 24    the jury was, quote, The material fact of when plaintiff did

09:16:10 25    know or should have known that her IVC filter had migrated,

                        ***OFFICIAL TRANSCRIPT***

09:16:16 1    perforated and fractured, close quote.

09:16:21 2            That was left for the jury despite the fact that

09:16:23 3    there was a CT scan more than three years before suit where the

09:16:28 4    radiologist found her IVC filter, quote, may not be in the

09:16:31 5    correct position.

09:16:33 6            The second case is a Southern District of

09:16:35 7    Mississippi case on March 29th of this year, *Dillon v. Davis*

09:16:41 8    2022 WL949 --

09:16:43 9            THE COURT:  Wait, wait, wait.

09:16:46 10           2022.

09:16:46 11           MR. PALMER:  WL949846.

09:16:54 12           In that case, Judge Ozerden of the

09:16:57 13   Southern District of Mississippi found, quote, The Mississippi

09:17:01 14   Supreme Court has held that the critical question is, and then

09:17:04 15   another quote, is whether in a summary judgment context we can

09:17:09 16   identify as a matter of law the point at which the plaintiff

09:17:12 17   knew or should have known or should have made an inquiry based

09:17:18 18   on the information available to him, close quote.

09:17:21 19           Then that judge cited the *Weathers* case, which is

09:17:26 20   a Mississippi Supreme Court 2009 case, 14 So. 3d 688.

09:17:34 21           The reason why those decisions are important is

09:17:37 22   twofold, Your Honor:  One, these cases suggest that the

09:17:41 23   analysis is closer to Louisiana's fact-intensive analysis than

09:17:46 24   has been suggested by the defendants to be a more rigid,

09:17:52 25   injury-only inquiry.

*OFFICIAL  TRANSCRIPT*

09:17:54  1          Second, the question of application of the latent

09:17:58  2     exception to the SOL should involve a similar analysis of the

09:18:04  3     facts as was done by the Court when it denied, based on oral

09:18:08  4     reasons, the *Khan* second motion for a reconsideration.  And

09:18:15  5     that was oral reasons dated July 29, 2021, where the Court

09:18:21  6     similarly evaluated the reasonableness of plaintiffs' actions

09:18:25  7     under Louisiana law and found that there were questions for the

09:18:28  8     jury because of the defendants' routine arguments in this MDL

09:18:33  9     that the plaintiff may not even have the injury, that there are

09:18:37  10    other possible causes, age related, hormone related, as to the

09:18:42  11    reason why a plaintiff has her particular condition.

09:18:44  12          Finally, in light of the Fifth Circuit's rulings

09:18:50  13    in *Thibodaux* and *Durden*, these plaintiffs, we believe -- and,

09:18:57  14    obviously, we respectfully disagree with the Fifth Circuit's

09:18:59  15    ruling -- but we believe they should have been allowed to amend

09:19:02  16    their complaints consistent with the plaintiffs' proposed third

09:19:06  17    amended master complaint, that's Document 8334-1, because the

09:19:12  18    lack of prejudice to the defendants when there is no

09:19:16  19    case-specific deposition testimony in these particular cases

09:19:20  20    that would be relevant to the question of latency or

09:19:23  21    reasonableness of action.  Those plaintiffs are precluded from

09:19:28  22    doing so based on this court's order -- orders, Documents 8702,

09:19:35  23    8703, and Pretrial Order Number 105.

09:19:38  24          Ultimately, we believe that a remand court in

09:19:42  25    Mississippi may reasonably determine that there are issues for

09:19:46 1    the jury to resolve based on the timeliness of these cases and

09:19:50 2    the facts of the individual cases, and we would ask that the

09:19:55 3    Court adjourn this hearing and allow these cases to move

09:19:58 4    forward with remand and discovery.

09:20:01 5            We think that there are questions related to

09:20:04 6    hormone therapy, whether or not their annual checkups with

09:20:10 7    their doctors lulled them into complacency because the doctors

09:20:13 8    on physical exam didn't suggest they had any problems.  We also

09:20:17 9    think that there were sufficient facts, both in Document 4407,

09:20:21 10   the second amended master complaint, and the proposed third

09:20:25 11   amended master complaint that would impede -- that would

09:20:29 12   suggest that these plaintiffs were impeded from their ability

09:20:33 13   to discover their claims.

09:20:35 14           One final point, Your Honor.  The fraudulent

09:20:39 15   concealment exception to the SOL in Mississippi is a two-part

09:20:45 16   test.  One is based on whether the defendants did some acts to

09:20:50 17   preclude the plaintiff from determining their claim, and the

09:20:54 18   second is the reasonableness of the plaintiffs' action or

09:20:57 19   inaction in light of all the factual circumstances.

09:21:02 20           We would just point the Court to the sixth claim

09:21:07 21   for relief in the amended master complaint -- the second

09:21:09 22   amended master complaint, which provides factual support for

09:21:13 23   the first prong of that test, and the 12(b) motion that was

09:21:17 24   argued and presented to this court by the defendants on that

09:21:20 25   particular claim was denied previously by Judge Engelhardt.

*OFFICIAL TRANSCRIPT*

09:21:25  1          That's all I have, Your Honor.

09:21:27  2          THE COURT:  Thank you.

09:21:31  3          Mr. Baehr.

09:21:32  4          MR. BAEHR:  Defendants would just briefly respond that,

09:21:36  5     of course, we don't believe this is the forum to appeal or

09:21:39  6     reconsider or otherwise dispute the *Greer* decision; but, of

09:21:45  7     course, individual plaintiffs will have that forum if they can

09:21:49  8     appeal from dismissal if they choose based on their individual

09:21:50  9     facts under the dismissal order.

09:21:52 10          All right.  The first case that we have is

09:21:56 11     Mary Miner, and this is a case where we weren't able to confer

09:21:58 12     with counsel; so, we don't actually know what the objection is.

09:22:04 13          THE COURT:  Okay.  I do have a list of the firms.

09:22:09 14     Hodges.

09:22:10 15          MR. BAEHR:  Your Honor, it's David Hodges on behalf of

09:22:15 16     Mary Miner.  I think this is one we can address pretty quickly.

09:22:21 17          Ms. Miner never had any connection to Mississippi

09:22:25 18     until eight years after her treatment, and then she resided and

09:22:31 19     got all of her treatment in Florida.

09:22:32 20          THE COURT:  I'm going to defer that case, as we

09:22:35 21     discussed earlier.  Thank you.

09:22:37 22          MR. BAEHR:  Just to clarify, defer for briefing per

09:22:40 23     consultation between the parties; is that correct?

09:22:42 24          THE COURT:  Yes.

09:22:44 25          I mean, that's what I said.  Those are going to

                              ***OFFICIAL  TRANSCRIPT***

| | | |
|---|---|---|
| 09:22:45 | 1 | be deferred.  I'm not ruling on anything that has any issue. |
| 09:22:49 | 2 | These are regarding choice of law. |
| 09:22:51 | 3 | MR. BAEHR:  Understood.  Just to clarify.  Just what |
| 09:22:54 | 4 | you're deferring it to is all I meant to clarify for us to |
| 09:23:00 | 5 | brief. |
| 09:23:00 | 6 | THE COURT:  All right. |
| 09:23:01 | 7 | MR. BAEHR:  The next case is Blynda Smith.  It's the |
| 09:23:06 | 8 | same situation.  We don't know. |
| 09:23:06 | 9 | THE COURT:  Mr. Centola. |
| 09:23:09 | 10 | MR. CENTOLA:  Yes, Your Honor. |
| 09:23:09 | 11 | Ms. Smith lived in Mississippi but all the |
| 09:23:12 | 12 | treatment was in Baton Rouge, Louisiana, all of her oncology, |
| 09:23:12 | 13 | all of her infusion -- |
| 09:23:15 | 14 | Larry Centola on behalf of Blynda Smith. |
| 09:23:19 | 15 | Ms. Smith lived in Mississippi, but all of her |
| 09:23:22 | 16 | treatment was in Louisiana and Baton Rouge.  Her oncologist, |
| 09:23:26 | 17 | her infusions, all of the Taxotere relations are in |
| 09:23:29 | 18 | Baton Rouge, Louisiana; and, therefore, we have the choice of |
| 09:23:31 | 19 | law issue, which we'll be happy to brief. |
| 09:23:33 | 20 | THE COURT:  Okay.  The Court is going to defer ruling |
| 09:23:34 | 21 | on that issue. |
| 09:23:35 | 22 | Thank you. |
| 09:23:36 | 23 | MR. BAEHR:  All right.  The next case is |
| 09:23:41 | 24 | Mashea Spencer.  We have been notified that counsel -- it was |
| 09:23:45 | 25 | initially not objected but identified they will object. |

**OFFICIAL TRANSCRIPT**

09:23:48  1          In this case we -- our understanding is that all

09:23:51  2    the treatment, prescription, and residence was all in

09:23:55  3    Mississippi.  The state of injury identified in the short form

09:24:00  4    complaint was Mississippi, and the state of treatment was

09:24:02  5    Mississippi, but for a brief period, apparently in the middle

09:24:07  6    of treatment, that took place in Illinois; but, otherwise,

09:24:10  7    she's resided in Mississippi since 2006, and her treatment was

09:24:14  8    in 2014.

09:24:15  9          THE COURT:  Okay.  Ms. Durant, are you on the line?

09:24:15 10          MS. DURANT:  Yes.  Thank you, Your Honor.

09:24:23 11    Christine Durant with Parker Waichman for plaintiff

09:24:24 12    Mashea Spencer.

09:24:25 13          We would disagree with defense counsel's

09:24:27 14    characterization of her treatment.  In terms of her Taxotere

09:24:30 15    treatment, half of her treatment was in Mississippi, half of

09:24:33 16    her treatment was in Illinois.  The short form complaint

09:24:37 17    mentions both states in terms of treatment and injury.  She

09:24:39 18    also is physically present in Illinois for half of her time;

09:24:44 19    so, we believe that this case would fall under the choice of

09:24:47 20    law bucket requiring further briefing.

09:24:49 21          THE COURT:  Thank you.  The Court is going to defer

09:24:52 22    ruling on that issue.  Thank you.

09:25:00 23          Sharon Mangum.

09:25:01 24          MR. BAEHR:  We do have the objection here, and in this

09:25:02 25    case, it appears that the current state of residence is

                          *OFFICIAL TRANSCRIPT*

09:25:05 1   Georgia, but all other relevant facts took place in

09:25:08 2   Mississippi.  Under those facts, we think Mississippi law will

09:25:12 3   apply.

09:25:15 4          THE COURT:  Okay.  Ms. Reynolds, are you on the line?

09:25:17 5          MS. REYNOLDS:  Yes, Your Honor.  Can you hear me?

09:25:20 6          THE COURT:  Yes, ma'am.

09:25:17 7          MS. REYNOLDS:  So, we object to defendants' attempt to

09:25:25 8   apply Mississippi law to Ms. Mangum's case.  She currently

09:25:30 9   resides in Georgia and resided in Georgia at the time the

09:25:34 10  complaint was filed.  We identified both Mississippi and

09:25:38 11  Georgia on the short form complaint as the location for injury

09:25:41 12  and identified the Northern District of Georgia as the proper

09:25:46 13  venue for remand on her short form complaint.

09:25:46 14         THE COURT:  The Court is going to defer ruling on that.

09:25:50 15         MR. BAEHR:  Understood.

09:25:50 16         THE COURT:  Thank you.

09:26:03 17             Cynthia Klinesmith.

09:26:03 18         MS. GREENE:  I apologize, Your Honor.  Jennifer Greene.

09:26:03 19  I was trying to unmute myself.  Again, I apologize for my voice

09:26:03 20  today.

09:26:05 21             Ms. Cynthia Klinesmith lives in Slidell,

09:26:08 22  Louisiana, and her treatment was in Slidell, Louisiana; so,

09:26:11 23  that is our reason for objecting.

09:26:15 24         MR. BAEHR:  Understood, Your Honor.  We have that her

09:26:17 25  treatment was in Mississippi but that she lived in Louisiana.

*OFFICIAL TRANSCRIPT*

09:26:20 1    We didn't receive an objection, so I didn't know the basis for

09:26:23 2    it.

09:26:23 3            THE COURT:  I'm going to defer, as we indicated.

09:26:27 4            Anita Galey.

09:26:30 5            MR. INSOGNA:  Your Honor, Ms.  Galey's case is unique.

09:26:33 6    All of the facts -- relevant facts, the state of residence at

09:26:35 7    the time of treatment is Mississippi.  She was prescribed in

09:26:39 8    Mississippi.  The venue selected in the short form complaint is

09:26:39 9    Mississippi.

09:26:44 10           We understand from the objection that we received

09:26:46 11   from counsel that Ms. Galey is suggesting that the definition

09:26:52 12   of the injury in the master complaint should not apply to her

09:26:53 13   because her treatment was somewhat intermittent.  There were

09:26:55 14   gaps between cycles, and as a result, her contention is that

09:26:59 15   she should be allowed to bring in an expert to suggest if she

09:27:03 16   would not have learned her hair loss was permanent until some

09:27:08 17   later date because the treatment was intermittent.

09:27:10 18           Obviously, defendant's position is that the

09:27:12 19   master complaint's definition of the injury still controls and

09:27:16 20   that Mississippi law should apply.

09:27:20 21           THE COURT:  Ms. Gunn, are you on the line?

09:27:22 22           MS. GUNN:  Yes, ma'am, I am.

09:27:26 23           The issue is when was Ms. Galey injured?  The

09:27:30 24   statute, as you know, 15-149 subpart A sets the statute of

09:27:38 25   limitation begins to run when the injury occurs and the cause

**OFFICIAL  TRANSCRIPT**

09:27:43  1    of action accrues.  The question for Ms. Galey is when was

09:27:44  2    that?

09:27:44  3             She does not fall into the studies that were

09:27:49  4    cited by the master complaint because she had both the

09:27:53  5    neoadjuvant and adjuvant treatment.  The neoadjuvant treatment

09:28:00  6    was docetaxel, then she had bilateral mastectomy, and then she

09:28:05  7    had adjuvant treatment.  There is a factual dispute about

09:28:08  8    whether the studies cited, which do not take care of her

09:28:12  9    situation, triggered when the six months begins to run.

09:28:20 10             With respect to Mr. Lambert's citing of the

09:28:23 11    *Munson* case and the *Dillon* case, more recently, this is a

09:28:29 12    factual dispute that should be allowed to play out in discovery

09:28:32 13    in this matter.

09:28:34 14             I understand that at this point, you know, we're

09:28:39 15    bound by the long form complaint, but her case does not fit

09:28:45 16    into the study --

09:28:45 17             THE COURT:  May I ask a question?  I have a couple of

09:28:49 18    questions.  When did she complete her adjuvant treatment?

09:28:55 19             MS. GUNN:  The adjuvant treatment was completed in

09:28:59 20    October of 2013.

09:29:01 21             THE COURT:  When did she file her complaint?

09:29:04 22             MS. GUNN:  She filed her complaint in December of 2017.

09:29:18 23             THE COURT:  Did she have any treatment after October of

09:29:20 24    2013?

09:29:21 25             MS. GUNN:  She did not have any chemotherapy treatment

                                    *OFFICIAL  TRANSCRIPT*

09:29:25 1    after October 17th of 2013.

09:29:28 2         THE COURT:  Would we not consider the injury to have

09:29:33 3    accrued in April of 2014, and then we add three years?

09:29:40 4         MS. GUNN:  Well, that's the issue, because the

09:29:44 5    statute -- to trigger the statute of limitation is when the

09:29:48 6    injury occurred, and in her case it's not that simple because

09:29:50 7    the studies cited in the long form complaint simply deal with

09:29:56 8    studies of neoadjuvant chemotherapy.  There is a cumulative

09:30:02 9    effect with chemotherapy; so, she had chemotherapy earlier in

09:30:07 10   2013, four rounds -- three rounds, and then she had two more in

09:30:13 11   the fall.

09:30:14 12        THE COURT:  If I give you the latest chemotherapy that

09:30:19 13   was administered to her, that was completed in October 2013;

09:30:26 14   and, so, certainly, if I go to neoadjuvant, we're even further

09:30:35 15   out, but I'm going to give you the latest date that she

09:30:41 16   received treatment, which is October 2013, that's the date it

09:30:44 17   was completed, right?

09:30:45 18        MS. GUNN:  Yes, ma'am.

09:30:46 19        THE COURT:  Well, then --

09:30:53 20        MS. GUNN:  The issue is when was she injured?  When was

09:30:57 21   she injured?

09:31:02 22        THE COURT:  The injury, as defined in the long form

09:31:05 23   complaint, was six months post chemotherapy.  I can go further

09:31:11 24   back, which would be not helpful.  I'm going to give you the

09:31:15 25   latest possible date under the *Greer* decision.

*OFFICIAL TRANSCRIPT*

09:31:24  1          I don't know how I -- the long form complaint is

09:31:31  2     pretty clear that it's six months post chemotherapy, so the

09:31:34  3     latest possible date I can give you is October 2013.  I add on

09:31:40  4     six months, and we're at April 2014; so, under the *Greer*

09:31:46  5     decision, it would have run April 2017.

09:31:55  6          MS. GUNN:  The argument, ma'am, from our perspective,

09:32:00  7     with respect to that long form complaint, the study cited to

09:32:04  8     get to that, what I would consider to be a kind of a random

09:32:08  9     six-month time period, do not address Ms. Galey's specific

09:32:16 10     facts.

09:32:19 11          THE COURT:  Your objections are noted for the record.

09:32:24 12     I think this falls squarely within the decision that was

09:32:27 13     previously made.  I'm going to dismiss this case; but,

09:32:31 14     certainly, your objections are noted for the record.

09:32:37 15          MR. INSOGNA:  Thank you, Your Honor.

09:32:38 16               The next case, Betty Sutton, is one we were

09:32:44 17     notified is not objecting, so that one can come off the list.

09:32:46 18          THE COURT:  But that's going to be subject to the

09:32:50 19     objections as noted by Mr. Lambert had raised.

09:32:51 20          MR. BAEHR:  Right.  The next case is Mary Kate Walton

09:32:59 21     is one where everything from the PFS and SFC, prescription and

09:32:59 22     treatment, state of residence, injury, and the venue selected

09:33:05 23     were all Mississippi.

09:33:09 24          THE COURT:  Yes, ma'am.

09:33:09 25          MS. KREIDER:  Those are my cases, Ms. Young and

*OFFICIAL TRANSCRIPT*

09:33:09 1    Ms. Walton's case.  They both have factual issues --

09:33:09 2          THE COURT:  Wait.  I can't hear you.

09:33:09 3          MS. KREIDER:  I'm sorry.  Both of my cases have factual

09:33:17 4    issues related to choice of law.  Neither plaintiff resides in

09:33:21 5    Mississippi.

09:33:21 6          THE COURT:  Okay.  So, that would be Mary Kate Walton

09:33:24 7    and Ruby Young?

09:33:25 8          MS. KREIDER:  Yes, ma'am.

09:33:25 9          THE COURT:  Okay.  The Court is going to defer until we

09:33:29 10   determine choice of law.

09:33:31 11         MR. BAEHR:  The next case is going to fall into that

09:33:33 12   same category.  Brenda Shaw was living in Georgia at the time

09:33:40 13   of treatment, it seems.

09:33:41 14         THE COURT:  So, and that's Mr. Stoltz is on the line;

09:33:44 15   so, the Court is going to defer ruling on that.

09:33:48 16         MR. BAEHR:  The same for the next case, Sandra Coleman

09:33:56 17   was living in Mississippi but treated in New Orleans, according

09:34:00 18   to her records.

09:34:00 19         THE COURT:  Okay.  So, that matter will be deferred as

09:34:03 20   well.  Okay.

09:34:07 21         MR. INSOGNA:  Carolyn Huddleston, Your Honor.  This

09:34:07 22   case may appear like one that should be deferred, but I

09:34:14 23   actually think it can be resolved.

09:34:14 24         THE COURT:  Is Mr. Weiman on the line?

09:34:21 25         MR. WEIMAN:  Yes, Your Honor.

*OFFICIAL TRANSCRIPT*

09:34:22  1          THE COURT:  Thank you.

09:34:22  2          MR. INSOGNA:  So, I have not received Mr. Weiman's

09:34:27  3     objection; so, I'll obviously let him speak to that, but in

09:34:27  4     this case, the potential issue would be, as between Mississippi

09:34:32  5     and Georgia law, plaintiff moved to Mississippi within six

09:34:37  6     months of the end of her chemotherapy.  She lived in Georgia at

09:34:40  7     the time of her treatment.  She currently resides in

09:34:43  8     Mississippi.

09:34:44  9          The only the way Georgia law would apply is if

09:34:49 10     her injury manifested itself while she was still living in

09:34:52 11     Georgia; otherwise, it has to be Mississippi, and Georgia has a

09:34:57 12     two-year statute of limitations.  So, if the injury manifests

09:35:00 13     when she was living in Georgia, which was only in 2012, and the

09:35:03 14     lawsuit was not found in 2017, either Georgia's two-year

09:35:07 15     statute of limitations applies and bars --

09:35:08 16          THE COURT:  I haven't look at Georgia's two-year

09:35:11 17     statute of limitations.  I don't know if I have a discovery

09:35:15 18     rule.  I don't if it -- I don't know any of those things; so,

09:35:16 19     I'm not discussing Georgia at all and whether or not -- but,

09:35:22 20     are you telling me she received chemotherapy in Mississippi,

09:35:25 21     lived in Mississippi, and then moved to Georgia some years

09:35:29 22     later?

09:35:30 23          MR. INSOGNA:  No, she lived in Georgia and received

09:35:33 24     chemotherapy but then moved to --

09:35:34 25          THE COURT:  In Georgia?

                        *OFFICIAL TRANSCRIPT*

09:35:36  1          MR. INSOGNA:  In Georgia.

09:35:36  2          THE COURT:  Oh, I am not taking that up right now.

09:35:38  3  We're going to defer.

09:35:39  4          MR. INSOGNA:  Okay.

09:35:40  5          THE COURT:  That is definitely in the sub-bucket.

09:35:43  6          MR. INSOGNA:  The next case also at Zoll & Krantz is

09:35:50  7  Mattie Tate.  This is one where plaintiff lived in Mississippi

09:35:53  8  at the time of the treatment and selected Mississippi venue.

09:35:56  9  We've not received an objection.  I'm not sure what it is.

09:35:58 10          THE COURT:  Mr. Weiman.

09:36:00 11          MR. WEIMAN:  Yes, Your Honor.  This case, Ms. Tate,

09:36:03 12  while she lived in Mississippi at the time of treatment, her

09:36:06 13  treatment actually occurred in Tennessee.

09:36:09 14          THE COURT:  Okay.  Then it's going to be deferred as

09:36:12 15  well.

09:36:12 16               Thank you.

09:36:15 17               Betty Haralson, Gomez Trial Attorneys.

09:36:19 18  Ms. Stevens, are you on the line?

09:36:20 19          MS. STEVENS:  Yes.  Good morning, Your Honor.

09:36:22 20  Lindsay Stevens from Gomez Trial Attorneys.

09:36:26 21          THE COURT:  Thank you.

09:36:26 22          MR. BAEHR:  This is one where, again, all treatment,

09:36:28 23  residence, everything took place in Mississippi, venue

09:36:31 24  Mississippi.  We don't know the objections.

09:36:36 25          THE COURT:  Ms. Haralson -- I mean, Ms. Stevens.

*OFFICIAL TRANSCRIPT*

09:36:38 1    MS. STEVENS:  Yes.  So, Your Honor, as to all of our

09:36:42 2    plaintiffs on the hearing list today -- Ms. Haralson,

09:36:45 3    Ms. Harper, Ms. McDowell, and Ms. Wright -- we wanted to assert

09:36:49 4    the same general objections made by Mr. Lambert at the outset

09:36:53 5    of this hearing on the record, but we do have a specific

09:36:58 6    objection to the dismissal of the final case of ours on the

09:36:58 7    list for Ms. Floretta Wright --

09:36:20 8    THE COURT:  Okay.

09:36:20 9    MS. STEVENS:  -- and I can address that with the Court.

09:37:04 10   THE COURT:  All right.  Let me just say as to

09:37:06 11   Betty Haralson, Gloria Harper, Verona McDowell, those cases are

09:37:09 12   dismissed, subject to the general objection that's been briefly

09:37:12 13   raised and preserved.

09:37:13 14       All right.  As to Ms. Wright, Ms. Stevens?

09:37:19 15   MS. STEVENS:  Yes.  Ms. Wright lived in Mississippi at

09:37:23 16   the time of filing her lawsuit up until the time of her death,

09:37:27 17   and we have filed this objection of that and substituted her

09:37:28 18   daughter as plaintiff in her case, but Ms. Wright received all

09:37:31 19   of her cancer treatment, including the docetaxel chemotherapy,

09:37:36 20   in the State of Texas and lived in the State of Texas at the

09:37:40 21   time of her treatment.

09:37:40 22       She alleged that on her short form complaint that

09:37:43 23   the injury incurred in Texas and noted that both the

09:37:48 24   Southern District of Mississippi and/or the Southern District

09:37:51 25   of Texas would be the district court in which remand and trial

**OFFICIAL TRANSCRIPT**

09:37:55  1    would be proper in her case; so, we think that this should also

09:37:58  2    be deferred, and we're happy to brief these choice of law

09:38:01  3    issues.

09:38:01  4            THE COURT:  The Court is going to defer ruling on

09:38:05  5    Ms. Wright.

09:38:05  6            MR. BAEHR:  Thank you, Your Honor.  If I may, this case

09:38:07  7    does raise the question of plaintiffs who selected multiple

09:38:12  8    venues on their SFCs.  I just want to flag that as a tricky

09:38:14  9    issue.  We don't think that's proper, and we think that she

09:38:18 10    selected Mississippi, she's living in Mississippi, and that

09:38:20 11    should be the one that controls, but we understand you're going

09:38:23 12    to defer.

09:38:23 13            THE COURT:  I'm going to defer.  Thank you.

09:38:25 14            MR. BAEHR:  The next case is Lula Gavin, and I think

09:38:30 15    the next three are in the same category, but they are all cases

09:38:33 16    where everything took place in Mississippi -- treatment,

09:38:37 17    prescription, residence, everything is in Mississippi; so, I'll

09:38:40 18    let plaintiff objection.

09:38:41 19            THE COURT:  Mr. Niemeyer, are you on the line?

09:38:46 20            MR. NIEMEYER:  I am, Your Honor.  Good morning.

09:38:46 21            THE COURT:  Good morning.

09:38:42 22            MR. NIEMEYER:  So, Your Honor, what I would like to do

09:38:51 23    is, again, urge you to reconsider your approaches or your

09:38:57 24    approach to these cases, such a harsh remedy for cases that,

09:39:01 25    for the most part, have not undergone discovery, and as

*OFFICIAL TRANSCRIPT*

09:39:05 1    Mr. Lambert pointed out and I would like to add on to some of

09:39:09 2    the things he mentioned, you know, in these instances, even

09:39:15 3    Mississippi law, we would submit requires very case-specific

09:39:21 4    determinations as the Court goes through whether or not the

09:39:24 5    discovery rule is applicable.

09:39:26 6            I would reiterate again that the injury here is

09:39:30 7    not just hair loss, it is permanent hair loss or, more

09:39:35 8    specifically, the failure to regrow hair.  So, the

09:39:39 9    case-specific factual determinations here revolve around

09:39:43 10   whether for each the plaintiff the injury was discoverable or,

09:39:48 11   more specifically, undiscoverable, and going into that, are the

09:39:51 12   facts of what was the nature of the hair loss for each of these

09:39:56 13   women, what inquiries were made, and probably, more

09:39:59 14   importantly, what were they told in response to those inquiries

09:40:03 15   by their doctors or hair stylist or those types of people, and

09:40:06 16   what alternative causes might have been present, including

09:40:10 17   hormonal therapy, those type of things.

09:40:13 18           I would tell the Court then that for each of

09:40:15 19   these three plaintiffs on behalf of my firm -- Ms. Gavin,

09:40:22 20   Ms. Ruffin, and Ms. Walker -- each of them made inquiries to

09:40:25 21   their doctors, and each of them, at different times along the

09:40:29 22   way, were told, hey, don't worry about it, be patient, your

09:40:35 23   hair will grow back.

09:40:36 24           One other thing I will point out as well from a

09:40:39 25   factual situation is a lot of the cases, Mississippi cases,

**OFFICIAL TRANSCRIPT**

09:40:42 1    talk about when a diagnosis occurred and that that is when an

09:40:47 2    injury might accrue.  Of course, here the defense is all too

09:40:51 3    quick to point out that these women had not been diagnosed with

09:40:55 4    any injury; so, therefore, they don't have that fact here, and

09:40:59 5    that just goes on to point out the uncertainty and

09:41:07 6    fact-specific nature of when an injury is discovered.

09:41:07 7         Of course, there has been a lot discussed about

09:41:10 8    the master complaint, and I would point out that the master

09:41:14 9    complaint merely says that the injury was permanent after six

09:41:21 10   months, or it can be read that way, but it doesn't say that the

09:41:26 11   plaintiff knew about that permanence at that time.

09:41:31 12         And, in fact, other aspects of the complaint

09:41:33 13   point out that the permanence was unknown to plaintiffs and,

09:41:37 14   frankly, the public until it was disclosed by Santa Fe in its

09:41:42 15   updated label in 2015.

09:41:44 16         So, there is, even with that part of the master

09:41:48 17   complaint, we would urge the Court to define that that still

09:41:53 18   doesn't determine factually when a plaintiff knew or should

09:41:57 19   have known.

09:41:58 20         In fact, the *Lofton* and *Ridgeway* cases, as cited

09:42:03 21   in the papers, talk about the fact that the first signs of an

09:42:08 22   injury are not indicative of when that injury accrues but that

09:42:11 23   a jury must determine the time at which the plaintiff knew or

09:42:15 24   by reasonable diligence should have known of his or her illness

09:42:19 25   and the factual determinations of what the plaintiff knew and

09:42:25  1    when, and, of course, the cases that Palmer cited echo that and

09:42:30  2    continue on.

09:42:30  3              So, Judge, for all those reasons, I would urge

09:42:34  4    you not to exact this harsh remedy at this time, to deny the

09:42:41  5    motions at the show cause stage, and adjourn these hearings

09:42:45  6    until these factual determinations can be made.

09:42:48  7              Thank you very much.

09:42:49  8         MR. BAEHR:  Defense -- do you need a statement?

09:42:57  9         THE COURT:  No.  I mean, for the reasons I previously

09:43:02 10    outlined in the *Greer* decision.

09:43:05 11              I will tell you, I'll go back and read these

09:43:10 12    cases again, but I think as I appreciate it, Mississippi allows

09:43:19 13    an extension in that three year only for latent injuries, and

09:43:23 14    the injury that was complained of in this lawsuit is, by its

09:43:28 15    very nature, not latent.  It's a loss of hair that has been

09:43:32 16    disfiguring; and, so, this court is hard-pressed to see how

09:43:40 17    this is in any way a hidden injury.

09:43:42 18              I understand the argument of counsel, but based

09:43:46 19    upon that, for the reasons previously cited in the *Greer*

09:43:50 20    decision; so, those cases are dismissed, subject to the

09:43:53 21    objections raised by Mr. Lambert as well as Mr. Niemeyer.

09:43:53 22              Thank you.

09:44:05 23         MR. BAEHR:  That's Lula Gavin, Ida Ruffin,

09:44:09 24    Deloris Walker.

09:44:12 25              That brings us to Cathy Lavender.  This is

*OFFICIAL  TRANSCRIPT*

09:44:15  1     another case where all treatment and residence, every relevant

09:44:19  2     fact took place in Mississippi, and we don't know the

09:44:22  3     objection.

09:44:22  4          THE COURT:  Okay.  Ms. Lavender is represented by the

09:44:27  5     The Murray Law Firm.  Ms. Myers, are you on the line?

09:44:27  6          MS. MYERS:  Yes, Your Honor, I'm here.

09:44:33  7               To make it simple, Ms. Cathy Lavender and

09:44:37  8     Ms. Delois Lott were both Mississippi plaintiffs who

09:44:39  9     (inaudible) Mississippi.  (Inaudible) two other plaintiffs; so,

09:44:42 10     we're just going to adopt plaintiffs' memorandum in opposition

09:44:45 11     to motion for the rule to show cause to dismiss Mississippi

09:44:48 12     plaintiffs for just those two.

09:44:49 13          THE COURT:  Wait, I can't hear you, ma'am.  Maybe you

09:44:52 14     just need to talk slower because you're on the phone, and it's

09:44:55 15     a little difficult to follow.

09:44:57 16          MS. MYERS:  Okay.  I'm sorry.

09:44:58 17               For Cathy Lavender and Delois Lott, those are

09:45:02 18     both Mississippi plaintiffs who have received treatment in

09:45:05 19     Mississippi.  We are going to (audio distortion) plaintiffs'

09:45:08 20     memorandum in opposition to the motion for the rule to show

09:45:12 21     cause (audio distortion).

09:45:13 22          THE COURT:  Okay.  So, let me just do this:

09:45:15 23     Ms. Cathy Lavender, Ms. Delois Lott are dismissed, subject to

09:45:20 24     the objections raised by the Plaintiffs' Steering Committee.

09:45:25 25               Okay.  Now, Veronica McPhie.

                                   *OFFICIAL TRANSCRIPT*

09:45:25  1          MS. BRILLEAUX:  Yes.  Good morning, Your Honor.  I'm

09:45:30  2    sorry.

09:45:30  3          MS. MYERS:  Veronica McPhie, she's resided -- oh, I'm

09:45:33  4    sorry.  She resided in Mississippi, but she received her

09:45:36  5    treatment in Alabama.

09:45:42  6          THE COURT:  Okay.

09:45:42  7          MS. BRILLEAUX:  I did just want to note for the record

09:45:44  8    on this one the short form complaint states that the state of

09:45:45  9    treatment was Alabama, but the records show otherwise, but I

09:45:48 10    understand that you're going to --

09:45:48 11          THE COURT:  I'm going to defer.  There may be a factual

09:45:53 12    determination that we're going to deal with later.

09:45:55 13              All right.  Gladys Taylor.

09:45:58 14          MS. MYERS:  Ms. Gladys Taylor also is our case where

09:46:06 15    she received treatment from both clinics who have locations in

09:46:06 16    Mississippi and Tennessee, so she went to both.

09:46:08 17          THE COURT:  Okay.  The Court is going to defer ruling

09:46:10 18    on Ms. Taylor.

09:46:11 19              Okay.  Thank you.

09:46:14 20          MS. MYERS:  Thank you, Your Honor.

09:46:16 21          THE COURT:  Thank you.

09:46:20 22              Patricia Cunningham and that's the Maher Law

09:46:22 23    Firm.  I had it yesterday and I forgot it -- Fraxedas?

09:46:23 24          MR. FRAXEDAS:  Mr. Fraxedas.  It's Jason Fraxedas,

09:46:23 25    Your Honor.  Good morning.

*OFFICIAL TRANSCRIPT*

09:46:39 1      THE COURT:  Fraxedas.

09:46:39 2      MS. BRILLEAUX:  Your Honor, this was one that we

09:46:42 3  received the objection ahead of time.  We understand that

09:46:45 4  plaintiff is claiming Alabama residence, but we still believe

09:46:50 5  that, just for the record, that even if Alabama law applies,

09:46:54 6  there is a two-year statute of limitations, so under either

09:46:58 7  analysis.

09:46:59 8      THE COURT:  I don't know what the Alabama -- any

09:47:03 9  exception to Alabama's statute of limitation, so I'm not going

09:47:07 10 there.  I've already said that.

09:47:08 11          So, as to Ms. Cunningham, the Court is going to

09:47:11 12 defer.

09:47:13 13          Barbara Moore --

09:47:13 14     MR. FRAXEDAS:  Thank you, Your Honor.

09:47:14 15     THE COURT:  -- Mr. Fraxedas?

09:47:16 16     MR. FRAXEDAS:  Yes, Your Honor.  This case is similar.

09:47:19 17 Ms. Moore lives in Tennessee near the Mississippi border.  All

09:47:22 18 of her treatment, all of her discussions with her oncologist,

09:47:30 19 the decision to prescribe Taxotere occurred within Tennessee.

09:47:35 20 She merely went to one of the locations of her clinic, which

09:47:40 21 has multiple locations just across the border in Mississippi,

09:47:44 22 for the infusions for scheduling reasons, but all of her

09:47:47 23 discussion, all of her follow-up treatment, her surgeries,

09:47:49 24 everything occurred in Tennessee.

09:47:50 25     THE COURT:  All right.  So, Ms. Moore we're going to

*OFFICIAL TRANSCRIPT*

09:47:52 1    defer ruling on that one as well.

09:47:55 2              Okay.   Thank you.

09:47:55 3         MR. FRAXEDAS:   Thank you, Your Honor.

09:47:56 4         MS. BRILLEAUX:   Your Honor, for the next set of cases,

09:48:00 5    27 through 32, liaison counsel has advised us that plaintiffs'

09:48:05 6    counsel is not dialing in and will not be raising objections

09:48:08 7    outside of the general objections that Mr. Lambert raised.

09:48:11 8         THE COURT:   Okay.   So, that will be Judith August, the

09:48:15 9    Court is going to dismiss.

09:48:16 10             Debra Bolton, that case is dismissed.

09:48:16 11             Elizabeth Hatten, case is dismissed.

09:48:16 12             Mildred Kumar, case is dismissed.

09:48:16 13             Brenda Simmons, case is dismissed.

09:48:16 14             Tell me when to stop.

09:48:21 15             Robin Swarthout, dismissed.

09:48:35 16        MS. BRILLEAUX:   I think that's the last one.

09:48:38 17        THE COURT:   Okay.   Those cases are dismissed, subject

09:48:39 18   to the general objection raised by the Plaintiff Steering

09:48:43 19   Committee.

09:48:45 20             All right.   Lauren Baker.

09:48:49 21        MS. BRILLEAUX:   Yes, Your Honor.   I have for this one

09:48:50 22   that we did not receive an objection, and all of the treatment,

09:48:53 23   all of the relevant facts happened in Mississippi.

09:48:55 24        THE COURT:   All right.   Mr. Root, are you on the line?

09:48:58 25        MR. ROOT:   Yes.   Good morning, Your Honor.

*OFFICIAL  TRANSCRIPT*

09:49:00  1          THE COURT:  Good morning.

09:49:03  2          MR. ROOT:  With Ms. Baker, this ground has been plowed

09:49:06  3     a lot, and we are cognizant of *Greer*.  In Ms. Baker's case,

09:49:13  4     she's the classic example of someone who did not ignore her

09:49:18  5     physician's advice and mentioned to the physician she had

09:49:21  6     continued hair loss.  In her case, however, her physician

09:49:24  7     thought that tamoxifen might be the cause of her delayed hair

09:49:31  8     treatment and then finally gave her some steroid cream to rub

09:49:35  9     on her scalp and to see if that would correct the condition.

09:49:43 10          If we gave her 30 days to see if it worked, and

09:49:47 11     unfortunately, it didn't, then we're within three years.  So,

09:49:50 12     if we cannot consider the fact that her physicians thought it

09:49:55 13     was due to an underlying use of a different drug than Taxotere

09:50:01 14     and that they weren't sure if it was a permanent injury because

09:50:06 15     they gave her a steroid cream see if it corrected it, we think

09:50:10 16     that the issue of whether it's permanent or latent can't be

09:50:16 17     determined by six months after chemo, and it's these other

09:50:23 18     factors that a jury should consider in determining whether or

09:50:27 19     not the injury, which is actually permanent, you know, alopecia

09:50:33 20     occurred, and we would also like to adopt, of course, the

09:50:37 21     argument of Mr. Lambert from the PSC.

09:50:39 22          Finally, Your Honor, since these are more

09:50:42 23     informal sort of objections, would the Court allow us to submit

09:50:46 24     just a brief memo with medical records in case we need to

09:50:54 25     appeal it and we have a more robust record than just our brief

                          ***OFFICIAL TRANSCRIPT***

09:50:59  1   discussion on the phone the today?

09:51:01  2        MS. BRILLEAUX:  Your Honor, if I could just briefly

09:51:02  3   respond?  This case does not involve any choice of law issues.

09:51:06  4   It's squarely within your ruling in *Greer*, so we would ask that

09:51:10  5   it be dismissed.

09:51:10  6        THE COURT:  I think I'm only concerned, are you telling

09:51:13  7   me within the six months she received treatment for her

09:51:22  8   hair loss?

09:51:22  9        MR. ROOT:  No, Your Honor.  She received chemotherapy

09:51:27 10   in 2014, and she received the tamoxifen thereafter, and then

09:51:31 11   they took her off tamoxifen because of a concern of a link

09:51:36 12   between that and her hair loss and gave her a steroid cream,

09:51:40 13   and that didn't work, so certainly, when she was given a

09:51:43 14   treatment for her hair loss and it didn't work, we have to

09:51:45 15   agree she knew.

09:51:46 16        But when her physician is indicating it's not

09:51:51 17   permanent because here is the fix, so to speak, we just think

09:51:56 18   that should be a date that's considered for her knowledge of

09:52:01 19   her -- of her injury and not the six-month calendar date after

09:52:10 20   end of chemotherapy when, like I say, we have the physician who

09:52:15 21   has an expressed belief that the tamoxifen that she's continued

09:52:19 22   to use might be the reason for the hair loss, and it seems a

09:52:24 23   rather draconian result for someone who is actually doing the

09:52:29 24   right thing and actually consulting with her physicians and

09:52:32 25   abiding by their instruction as to what could be the delay.

09:52:37  1       MS. BRILLEAUX:  Your Honor, Mr. Baehr may have

09:52:39  2   something to add to this, but I do want to note that given the

09:52:43  3   timeframe that Mr. Root is speaking on brings us into 2015,

09:52:48  4   which, as Your Honor is aware, is the date of the label change;

09:52:51  5   so, you know, we believe that at the time that the label was

09:52:55  6   changed, any conversations that they are having outside of that

09:52:59  7   timeframe are not relevant to this inquiry.

09:53:02  8       THE COURT:  What?

09:53:05  9       MR. BAEHR:  I will step in and just say to the extent

09:53:08 10   that the argument is that the plaintiff, in this unique

09:53:11 11   circumstance they weren't on notice, they couldn't have known

09:53:14 12   of this alleged injury, that argument is sort of uniquely

09:53:18 13   foreclosed here because these conversations took place after

09:53:20 14   the label change.

09:53:22 15       So, the argument that --

09:53:22 16       THE COURT:  Okay.  So, she was supposed to, after

09:53:25 17   chemotherapy, go read the updated label?

09:53:27 18       MR. BAEHR:  Well --

09:53:28 19       THE COURT:  I know.  I understand.  I understand what

09:53:30 20   you're saying, but I've got to tell you this one --

09:53:30 21       MR. ROOT:  But, Your Honor, (speaking simultaneously)

09:53:37 22   was before the label change.

09:53:39 23       THE COURT:  Whoa, whoa.  Mr. Root, stop.

09:53:41 24       I'm going to want more briefing on this one.

09:53:45 25   This is a little peculiar.  This is very different because I

**OFFICIAL TRANSCRIPT**

09:53:51  1    know Mississippi has a very limited discovery rule.  I

09:53:54  2    understand that, but if she was receiving treatment from her

09:53:58  3    physician during that time for this specific injury, I just

09:54:04  4    don't know, and that is not the same.  This is not the same as

09:54:09  5    someone who is six months after the chemotherapy.

09:54:11  6          It's just a little different.  This is a very,

09:54:16  7    very drastic remedy, and because this one has a peculiar set of

09:54:22  8    facts, and I'm not privy to what those records show, and I want

09:54:28  9    him to be able to preserve his record because the result may

09:54:32  10   ultimately be the same from my end, but I don't think he should

09:54:35  11   be foreclosed from submitting that record to the Court of

09:54:37  12   Appeal, or I may say this one, it may remain in the remand

09:54:46  13   bucket.

09:54:47  14          MR. BAEHR:  Understood, Your Honor.  I just want to --

09:54:48  15   and accepted -- suggest that in this case, just procedurally,

09:54:54  16   perhaps the best way to -- for him to make that record and

09:54:57  17   preserve it for appeal and especially given defendants aren't

09:55:01  18   in a position to know exactly what his factual arguments are --

09:55:05  19          THE COURT:  I think it's going to be -- what?

09:55:08  20          MR. BAEHR:  I was going to suggest that he would have

09:55:10  21   the ability to file a Rule 6 or a motion for consideration to

09:55:14  22   make that record, if you were to dismiss it, to make that

09:55:17  23   record and state his specific --

09:55:19  24          THE COURT:  Well, I understand I could do that, or I

09:55:22  25   could not dismiss it and let the Mississippi court look at it,

**OFFICIAL TRANSCRIPT**

| | |
|---|---|
| 09:55:26 1 | or I can take this one up separately, but I am uncomfortable |
| 09:55:32 2 | today doing just that. |
| 09:55:34 3 | MR. BAEHR:  Understood. |
| 09:55:35 4 | THE COURT:  Okay.  So, I'm going to defer on that |
| 09:55:43 5 | issue. |
| 09:55:43 6 | Thank you. |
| 09:55:48 7 | MS. BRILLEAUX:  The next case is Shirley Bowman, and |
| 09:55:51 8 | this was one to which we did not receive an objection. |
| 09:55:55 9 | THE COURT:  Mr. McSweeney, are you on the line? |
| 09:55:59 10 | MR. MCSWEENEY:  I am, Your Honor. |
| 09:56:03 11 | Sweeney/Langevin Law.  Hello? |
| 09:56:07 12 | THE COURT:  Hello?  Mr. McSweeney? |
| 09:56:10 13 | MR. MCSWEENEY:  Yeah, I'm here, Your Honor.  I don't |
| 09:56:10 14 | know what happened there. |
| 09:56:13 15 | Your Honor, I think we fall into your prior |
| 09:56:17 16 | ruling.  Shirley Bowman had her Taxotere administered in |
| 09:56:21 17 | Illinois. |
| 09:56:22 18 | Our second case is Catherine Burgin, and hers was |
| 09:56:24 19 | administered in California. |
| 09:56:26 20 | THE COURT:  Okay.  I'm going to defer on those two |
| 09:56:29 21 | cases. |
| 09:56:29 22 | Thank you. |
| 09:56:29 23 | MR. MCSWEENEY:  Thank you, Your Honor. |
| 09:56:30 24 | THE COURT:  Sybil Carter.  Mr. Rockstad, are you on the |
| 09:56:35 25 | line? |

*OFFICIAL TRANSCRIPT*

09:56:37 1          MR. ROCKSTAD:  Yes.  Yes, Your Honor, I'm here.  Can

09:56:40 2     you hear me?

09:56:41 3          THE COURT:  Yes.

09:56:41 4          MR. BAEHR:  This case we do -- we are aware of the

09:56:45 5     objection, and it is going to present a choice of law issue.

09:56:50 6          THE COURT:  Okay.  So, we're going to defer on

09:56:54 7     Ms. Carter?

09:56:54 8          MR. BAEHR:  Yes.  The only thing I would point out

09:56:56 9     about this, is this case and the next case, all treatment and

09:56:59 10    everything were in Mississippi, but they claimed venue in the

09:57:03 11    District of New Jersey, and that's the basis of the objection,

09:57:05 12    we have been made aware of.

09:57:07 13              We would say that given we briefed a very set of

09:57:11 14    similar cases in the Michigan hearing or following the Michigan

09:57:16 15    hearing, that we defer briefing on that or postpone briefing on

09:57:21 16    that until you've had a chance to issue your guidance in those

09:57:24 17    cases.

09:57:24 18         THE COURT:  So, we're going to defer on Miriam Walker

09:57:28 19    and Ada Coleman; is that correct?

09:57:30 20         MR. BAEHR:  That's correct.  Actually, the same thing

09:57:31 21    is going to apply --

09:57:31 22         THE COURT:  To Ms. Johns?

09:57:33 23         MR. BAEHR:  To -- well, I think there is -- sorry.

09:57:36 24    Sybil Carter --

09:57:37 25         MR. ROCKSTAD:  (Speaking simultaneously) (Inaudible.)

**OFFICIAL TRANSCRIPT**

09:57:39 1          THE COURT:  Excuse me?

09:57:40 2          MR. ROCKSTAD:  I think -- Your Honor, this is

09:57:45 3   Trevor Rockstad.  I believe all of our cases that are on the

09:57:49 4   list -- they are Carter, Clark, Coleman, Johns, Keaton, Malone,

09:57:53 5   Reed, Rowland, Sinclair, Whalum, and, Wigley -- all have that

09:57:59 6   same issue.

09:58:00 7          THE COURT:  They were all filed in New Jersey?

09:58:04 8          MR. BAEHR:  The one exception --

09:58:04 9          MR. ROCKSTAD:  They were filed in North Carolina

09:58:06 10  because that's where the plaintiffs lived.

09:58:08 11         MR. BAEHR:  Yeah.  I was going to say the Rowland case

09:58:10 12  was North Carolina, but --

09:58:10 13         THE COURT:  But they were all the same.  In terms of

09:58:13 14  choice of law.

09:58:15 15         MR. BAEHR:  In terms of choice of law issues, unless

09:58:15 16  counsel has anything else to say.

09:55:55 17         MR. ROCKSTAD:  Okay.  Yeah.

09:58:18 18         THE COURT:  These cases are all going to be deferred.

09:58:21 19             Thank you.

09:58:25 20             Okay.  Delois Sinclair.

09:58:30 21         MR. BAEHR:  That, I think, was still covered -- I think

09:58:32 22  we are at Number 47, Homer Carpenter.

09:58:37 23         THE COURT:  Okay.  Yeah.  I'm sorry.  All right.

09:58:42 24         MR. BAEHR:  This is a case where every relevant fact

09:58:45 25  was in Mississippi, and venue is Mississippi; so, we don't know

*OFFICIAL TRANSCRIPT*

09:58:50 1    what the objection is.

09:58:51 2          THE COURT:  Ms. Barient, are you on the line?

09:58:55 3          MS. BARIENT:  Yes, Your Honor.  Good morning.

09:58:57 4          THE COURT:  Good morning.

09:58:58 5          MS. BARIENT:  As far as Number 47, Homer Carpenter, we

09:59:04 6    would just again state our objection for the record, and we're

09:59:09 7    going to adopt the general objections that have already been

09:59:15 8    urged.

09:59:16 9          I do have one client on the group, Pendley Baudin

09:59:25 10    & Coffin group, Number 50 on the docket, Ms. Tonya Cox.

09:59:25 11          THE COURT:  Okay.

09:58:52 12          MS. BARIENT:  Ms. Cox actually received all of her

09:59:29 13    treatment in the state of Alabama, and her short form complaint

09:59:34 14    alleges either Mississippi or Alabama as the state of injury --

09:59:39 15          THE COURT:  All right.  We're going to defer--

09:59:41 16          MS. BARIENT:  -- (speaking simultaneously) she

09:59:42 17    presented a choice of law.

09:59:44 18          THE COURT:  All right.  So, I'm going to defer on

09:59:46 19    Ms. Cox.  I will dismiss the others, subject to the general

09:59:49 20    objection that's been previously raised.  That's

09:59:52 21    Homer Carpenter, Angelia Carr, Dewaine Cauthen,

10:00:01 22    Jacqueline Dillon, Patricia Dixon, Dora Hand, Beverly Harrell,

10:00:15 23    Mary Horn, Sherrell Lewis, Jennifer Randle, Cherylln Smith

10:00:26 24    Hazel Temple, Barbara Thomas.

10:00:34 25          Okay.  The Pulaski Law Firm, and I should have

*OFFICIAL TRANSCRIPT*

10:00:35  1    Mr. Stanley, are you on the line?

10:00:36  2            MR. STANLEY:  Yes, I'm here.  Thank you.

10:00:36  3            THE COURT:  Okay.

10:00:39  4            MR. STANLEY:  I was not able to confer with the defense

10:00:42  5    counsel.  We have cases 61 through 74 on the list.  There are

10:00:46  6    two of these where there was a choice of law question, and

10:00:50  7    that's going to be 65 and 72.

10:00:53  8                    65 is Ms. Joan Gardner Dey.  She lives in

10:00:58  9    Tennessee.

10:00:59 10                    72 is Karen Spencer.  She was she was treated in

10:01:05 11    Louisiana.

10:01:05 12                    Then, for the others, we will adopt the

10:01:08 13    memorandum in opposition and the objections made by leadership.

10:01:11 14            THE COURT:  Thank you.

10:01:13 15                    All right.  So, that's Sarah Bradley,

10:01:19 16    Bonnie Brown, Rita Gann, Diann Jenkins Grant, Carrie Johnson,

10:01:24 17    Lillie Manning, Betty Miller, Kesher Payne, Maxcine Ross,

10:01:32 18    Pearlee Thomas, Angela White.  Those cases are dismissed,

10:01:32 19    subject to the objections previously raised.

10:01:36 20                    We're going to defer ruling on Joan Gardner Dey

10:01:47 21    and Karen Spencer.

10:01:47 22                    Thank you, sir.

10:01:47 23            MR. STANLEY Thank You, Judge.

10:01:47 24            THE COURT:  All right.  Then we get to the Reyes Browne

10:01:49 25    Reilley Law Firm, and I don't know who is here.

**OFFICIAL TRANSCRIPT**

| | | |
|---|---|---|
| 10:01:52 | 1 | MR. BAEHR:  I think they are not appearing, Your Honor, |
| 10:01:55 | 2 | because we agreed to remove the Ayala case.  They are not |
| 10:02:02 | 3 | stating an objection in the Dorothy Lewis case, and we agreed |
| 10:02:04 | 4 | to remove the Molly Turner case. |
| 10:02:04 | 5 | THE COURT:  So, Molly Turner is deferred, or is it |
| 10:02:04 | 6 | removed? |
| 10:02:11 | 7 | MR. BAEHR:  Removed from the list. |
| 10:02:11 | 8 | THE COURT:  Okay.  Which one?  And Mary Ayala. |
| 10:02:14 | 9 | So, we're going to dismiss Dorothy Lewis, subject |
| 10:02:17 | 10 | to the objections previously raised. |
| 10:02:20 | 11 | Mary Ayala is have removed from the list, as is |
| 10:02:23 | 12 | Molly Turner. |
| 10:02:24 | 13 | Thank you. |
| 10:02:24 | 14 | Then we go to The Fears Nachawati Firm. |
| 10:02:32 | 15 | MR. BAEHR:  Yes.  This one case, they all -- counsel |
| 10:02:35 | 16 | stated they do not intend to object. |
| 10:02:35 | 17 | THE COURT:  Okay.  With that, the Court is going to |
| 10:02:36 | 18 | dismiss that case, subject to the objections previously raised. |
| 10:02:39 | 19 | MR. BAEHR:  The same is true of the next case, |
| 10:02:41 | 20 | Earlene Agnew.  Counsel won't object. |
| 10:02:44 | 21 | THE COURT:  Okay.  That case is dismissed, subject to |
| 10:02:46 | 22 | the previous -- Okay -- previous objections raised.  Whatever. |
| 10:02:53 | 23 | MR. BAEHR:  All right.  The next case is another case |
| 10:02:56 | 24 | where all treatment, everything took place in Mississippi, but |
| 10:02:59 | 25 | the venue selected was the District of New Jersey; so, we think |

*OFFICIAL TRANSCRIPT*

10:03:03  1    you'll want briefing but maybe not until --

10:03:05  2         THE COURT:  Right.  That matter is going to be

10:03:08  3    deferred.

10:03:09  4           Ms. Sulkin, are you on the line?

10:03:12  5         MS. SULKIN:  I am, Your Honor.

10:03:14  6         THE COURT:  Okay.  I think we are able to go through

10:03:16  7    some -- let's cull through these, and then we'll see when we

10:03:18  8    need to talk.

10:03:20  9          Okay.  Myrtis Anderson.  What's the status?

10:03:21 10         MR. BAEHR:  Same category.  Everything in Mississippi

10:03:24 11    except venue in New Jersey.

10:03:28 12         THE COURT:  So, that matter is deferred.

10:03:36 13         MR. BAEHR:  The next three:  Mary Atkinson,

10:03:38 14    Beverly Boler, Lisa Brown, counsel has stated they don't intend

10:03:46 15    to object.

10:03:47 16         THE COURT:  Those --

10:03:48 17         MS. SULKIN:  Your Honor, just for the record, we do

10:03:50 18    object, but we adopt the general objections put forth by

10:03:55 19    Mr. Lambert.

10:03:56 20         THE COURT:  Right.

10:03:56 21          The Court is going to dismiss those three

10:03:59 22    cases -- Mary Atkinson, Beverly Bowler, Lisa Brown -- subject

10:04:03 23    to the objections previously raised by the Plaintiffs' Steering

10:04:07 24    Committee and outlined in the *Greer* decision.

10:04:09 25          Okay.  Go ahead.

                        **OFFICIAL TRANSCRIPT**

10:04:10  1        MR. BAEHR:  Next Sandra Burks is everything in

10:04:14  2    Mississippi but New Jersey venue case.

10:04:17  3        THE COURT:  That case is going to be deferred.

10:04:19  4        MR. BAEHR:  The next one, two, three, four cases, I

10:04:23  5    believe, are subject to the general objection but no other

10:04:26  6    objection.

10:04:28  7        THE COURT:  Okay.  That will be Annie Caldwell,

10:04:31  8    Kathryn Chappell, Ruthie Crawford, and Lucille Crenshaw; is

10:04:34  9    that correct, Ms. Sulkin?

10:03:09 10        MS. SULKIN:  Yes, Your Honor.

10:03:09 11        THE COURT:  Those cases are --

10:03:09 12        MS. SULKIN: (Speaking simultaneously) (Inaudible).

10:04:43 13    Linda Davis is also.

10:04:44 14        THE COURT:  Oh, you're adding Linda Davis to the list,

10:04:46 15    too?

10:03:09 16        MS. SULKIN:  Yes, Your Honor.

10:04:50 17        THE COURT:  All right.  Those five cases are dismissed,

10:04:52 18    subject to the previously raised general objection.

10:04:57 19            Normia Davis.

10:05:01 20        MR. BAEHR:  This is another everything in Mississippi

10:05:03 21    but venue District of New Jersey.

10:05:04 22        THE COURT:  All right.  That matter is deferred.

10:05:07 23        MR. BAEHR:  The next six cases are, I believe, subject

10:05:10 24    only to the general objection.

10:05:12 25        THE COURT:  That would be Sandra Diggs, Angela Durden,

*OFFICIAL TRANSCRIPT*

10:05:17  1    Florence Easter, Cheryl Evans, Benniea Felder, and
10:05:21  2    Carrie Freeman.  Those cases are dismissed, subject to the
10:05:25  3    general objection that was previously raised.
10:05:34  4            Angela Durden, didn't I --
10:05:34  5        MR. BAEHR:  There are a number of Durdens.
10:05:37  6        THE COURT:  Never mind.  All right.  I thought so.
10:05:39  7    Okay.  Thank you.
10:05:40  8            Those are dismissed, subject to --
10:05:41  9            Okay.  Theresa Gathings.
10:05:45 10        MS. SWEET:  Your Honor, this next case and the one
10:05:48 11    after it, the plaintiffs objects based on the fact that they
10:05:50 12    selected New Jersey as remand court, but both of those cases --
10:05:53 13    these are different than the one Santa Fe has just discussed.
10:05:57 14            These cases have 505(b)(2) defendants as the only
10:06:00 15    defendants; and, for example, in the first case, Accord is
10:06:05 16    involved in the case.  Accord is not a New Jersey corporation.
10:06:07 17    There is absolutely no basis whatsoever for New Jersey law to
10:06:10 18    apply to this case.  There is no personal jurisdiction as to
10:06:12 19    Accord in that case.
10:06:14 20            The same is true in Alberta Glasco.  The
10:06:19 21    defendant is Hospira, and that business is located in Illinois.
10:06:23 22            Would you like to brief?
10:06:24 23        THE COURT:  Yeah, I'm not going to rule on personal
10:06:27 24    jurisdiction here today, so those cases are deferred.
10:06:31 25        MS. SWEET:  Thank you, Your Honor.

                              *OFFICIAL TRANSCRIPT*

10:06:36  1          THE COURT:  Thank you.

10:06:36  2          MR. BAEHR:  The next two are subject to the general

10:06:38  3   objection only.

10:06:40  4          THE COURT:  That's Martha Greathree and Diann Green; is

10:03:09  5   that correct, Ms. Sulkin?

10:03:09  6          MS. SULKIN:  Yes, Your Honor.

10:06:51  7          THE COURT:  All right.  Those cases are dismissed to

10:06:53  8   the general objection previously raised.

10:06:56  9          MR. BAEHR:  Lillie Hogan, Number 102, plaintiff has

10:06:59 10   stated their objection is based on administration in Ohio, but

10:07:05 11   SFC says injury in Mississippi, so I suspect you'll defer.

10:07:06 12          THE COURT:  I'm going to defer.

10:07:07 13          MR. BAEHR:  The next three, Doris Hollinshead,

10:07:11 14   Bobbie Ivory, and Janice James are subject only to the general

10:07:14 15   objection, as are the three following that.

10:07:17 16          THE COURT:  All right.  Is that correct, Ms. Sulkin?

10:07:20 17          MS. SULKIN:  I think the next three after that, can you

10:07:26 18   just read them out because I think the next one I have an

10:07:31 19   objection to is Shirley Johnson, but (inaudible) --

10:07:37 20          THE COURT:  Okay.  All right.  So, I'm going to read

10:07:38 21   this.  Doris Hollinshead, Bobbie Ivory, Janice James,

10:07:43 22   Julia James, and Carolyn Jefferson are dismissed, subject to

10:07:47 23   the general objection.

10:07:50 24              Now, there is a separate objection for

10:07:54 25   Shirley Johnson; is that correct?

***OFFICIAL  TRANSCRIPT***

10:07:56  1          MS. SULKIN:  Correct.

10:07:56  2          THE COURT:  What is that objection, ma'am?

10:07:59  3          MS. SULKIN:  Her administration was in Florida.

10:08:04  4          MR. BAEHR:  Your Honor, we believe this case was

10:08:06  5     dismissed yesterday under the CMO 12 hearing; so, we don't

10:08:11  6     think you need to do anything with it.

10:08:14  7          THE COURT:  So, this one might be mooted.

10:08:20  8               Okay.  Mary King.  Where are we with that one?

10:08:23  9          MR. BAEHR:  This is another case where they selected a

10:08:28 10     New Jersey venue, so we think it's --

10:08:31 11          THE COURT:  That's going to be deferred.

10:08:34 12               Okay.  Mr. Baehr, please continue.

10:08:37 13          MR. BAEHR:  The next five -- Gina Kirby, Mamie Lowery,

10:08:42 14     Bobbie McGowan, Tantahneah Merritt, and Linda Faye Miller --

10:08:45 15     are subject only to the general objection.

10:08:47 16          THE COURT:  Is that correct, Ms. Sulkin?

10:08:47 17          MS. SULKIN:  Yes, Your Honor.

10:08:51 18          THE COURT:  Okay.  Those matters are dismissed, subject

10:08:53 19     to the general objection, and that's Gina Kirby, Mamie Lowery,

10:09:00 20     Bobbie McGowan, Tantahneah Merritt, Linda Faye Miller.

10:09:05 21               Okay.  Mr. Baehr.

10:09:06 22          MR. BAEHR:  In Lillie Moore, counsel has objected based

10:09:10 23     upon alleged administration in New Mexico.

10:09:14 24          THE COURT:  That matter is deferred.

10:09:17 25          MS. SULKIN:  Your Honor, for the record, I want to

**OFFICIAL TRANSCRIPT**

10:09:21  1   clarify what are the allegations that Lillie Moore is connected

10:09:27  2   to Mississippi at all?  In looking through her records, it

10:09:29  3   looks like the administration was in New Mexico, the venue

10:09:36  4   selected was New Mexico, and the state of residence is Arizona.

10:09:41  5        THE COURT:  I can't answer that for you, Ms. Sulkin.

10:09:44  6   That might be a phone call you need have with Mr. Baehr after,

10:09:48  7   but right now I'm deferring on all of it because I don't know

10:09:51  8   what --

10:09:52  9        MS. SULKIN:  Yes, Your Honor.  I just want the

10:09:54 10   defendant to go on the record and let me know.  I want to avoid

10:09:59 11   the Court having to review briefing, if it's possible.

10:10:05 12        MR. BAEHR:  Well, Your Honor, the PFS identified

10:10:09 13   Mississippi as the state of prescription, treatment, and

10:10:11 14   residence during treatment; so, we do think it's appropriate to

10:10:14 15   defer and sort that out.

10:10:17 16        THE COURT:  The PFS did what?

10:10:22 17        MR. BAEHR:  The PFS identified Mississippi as the state

10:10:23 18   of prescription, administration, and residence during

10:10:26 19   treatment.

10:10:27 20        THE COURT:  Okay.  All right.  Minnie Moore, where are

10:10:27 21   we with that one?

10:10:36 22        MR. BAEHR:  Yes.  Minnie Moore and Ruby Moore are

10:10:39 23   subject only to the general objection.

10:10:41 24        THE COURT:  Is that correct, Ms. Sulkin?

10:10:43 25        MS. SULKIN:  Yes, Your Honor.

*OFFICIAL TRANSCRIPT*

10:10:45   1         THE COURT:  All right.  Minnie Moore and Ruby Moore,

10:10:47   2  those matters are dismissed, subject to the general objection.

10:10:53   3             Deborah Patrick.

10:10:54   4         MR. BAEHR:  This is a Mississippi everything but a

10:10:55   5  New Jersey-selected venue case, as well as the next one,

10:10:59   6  Sandra Rice.

10:10:59   7         THE COURT:  Deborah Patrick and Sandra Rice are going

10:11:04   8  to be deferred.

10:11:06   9             Dorothy Robinson.

10:11:08 10         MR. BAEHR:  Dorothy Robinson and Donna Rodgers,

10:11:08 11  Jennifer Smith, Cassandra Stowers, Mytrice Tumblin,

10:11:15 12  Clare Walker, Brenda Washington, Annie Wells, and Ann White are

10:11:15 13  subject only to the general objection.

10:11:19 14         THE COURT:  Ms. Sulkin; is that correct?

10:11:22 15         MS. SULKIN:  Yes, Your Honor.

10:11:25 16             Jordan, I saw that you skipped Mattie Shoemaker

10:11:30 17  and Mary Smith based on my objection of administration in

10:11:35 18  Tennessee.  Did you remove those from the list?

10:11:36 19         THE COURT:  I don't have those on my list.  I will tell

10:11:41 20  you, I have Dorothy Robinson -- excuse me?

10:03:09 21         MS. SULKIN:  (Audio distortion)  Okay.  Your Honor, I

10:11:43 22  think you might have a more up-to-date list than I do.  I'm in

10:11:48 23  charge of --

10:11:48 24         THE COURT:  Okay.  I have Dorothy Robinson,

10:11:51 25  Donna Rodgers, Jennifer Smith, Cassandra Stowers,

| | | |
|---|---|---|
| 10:11:57 | 1 | Mytrice Tumblin, Clare Walker, Brenda Washington, Annie Wells, |
| 10:12:02 | 2 | and Ann White.  Those matters are dismissed, subject to the |
| 10:12:05 | 3 | general objection. |
| 10:12:06 | 4 | Then we go to Florean White. |
| 10:12:10 | 5 | MR. BAEHR:  Yes, Your Honor.  We believe the objection |
| 10:12:14 | 6 | here is due to administration, alleged administration in |
| 10:12:19 | 7 | Tennessee. |
| 10:12:19 | 8 | THE COURT:  All right.  That matter is deferred. |
| 10:12:21 | 9 | MR. BAEHR:  The next three are subject only to the |
| 10:12:24 | 10 | general objection. |
| 10:12:26 | 11 | THE COURT:  Okay.  That would be Mary Windham, |
| 10:12:32 | 12 | Annie Joiner, Shirlon Pigott.  Those matters are dismissed, |
| 10:12:35 | 13 | subject to the general objection; is that correct, Ms. Sulkin? |
| 10:12:39 | 14 | MS. SULKIN:  That's correct. |
| 10:12:40 | 15 | THE COURT:  Thank you. |
| 10:12:41 | 16 | MR. BAEHR:  Rita Berry is objecting based on treatment |
| 10:12:51 | 17 | not in Mississippi or some treatment in Wisconsin and other |
| 10:12:55 | 18 | treatment in Mississippi. |
| 10:12:55 | 19 | THE COURT:  Okay.  The Court is going to defer ruling |
| 10:12:57 | 20 | on that. |
| 10:12:59 | 21 | MR. BAEHR:  The next three are subject only to the |
| 10:13:01 | 22 | general objection. |
| 10:13:01 | 23 | THE COURT:  Okay.  That would be Cynthia Brown, |
| 10:13:07 | 24 | Janice Combest, and Latosha Grant.  Those matters are |
| 10:13:14 | 25 | dismissed, subject to the general objection previously raised; |

*OFFICIAL  TRANSCRIPT*

10:13:17 1   is that correct, Ms. Sulkin?

10:13:19 2           MS. SULKIN:  That's correct.

10:13:19 3           THE COURT:  Thank you.

10:13:20 4               Please proceed.

10:13:21 5           MR. BAEHR:  The next case, Carmelita Hill, alleges

10:13:29 6   treatment in Georgia.

10:13:29 7           THE COURT:  The matter is deferred.

10:13:31 8           MR. BAEHR:  The next one is Vanasser Lampkin is subject

10:13:36 9   only to the general objection.

10:13:37 10          THE COURT:  That matter is dismissed, subject to the

10:13:39 11  general objection; is that correct, Ms. Sulkin?

10:13:42 12          MS. SULKIN:  That's correct.

10:13:43 13          THE COURT:  Thank you.

10:13:44 14          MR. BAEHR:  Juette Martin alleges treatment in

10:13:47 15  New Orleans.

10:13:48 16          THE COURT:  That matter is deferred.

10:13:49 17          MR. BAEHR:  The next two, which are the last two, are

10:13:54 18  subject only to the general objection.

10:13:55 19          THE COURT:  That would be Sherri Reeves and

10:13:59 20  Jimmie Sartin.  Those matters are dismissed, subject to the

10:14:02 21  general objection; is that correct, Ms. Sulkin?

10:14:06 22          MS. SULKIN:  Yes.

10:14:08 23          THE COURT:  Okay.  Thank you.

10:14:11 24              Congratulations, all.  I thought this would be an

10:14:13 25  all-day process.  I appreciate the cooperation and the matter

*OFFICIAL TRANSCRIPT*

10:14:18  1    in which it was handled.

10:14:21  2                  Anything else?

10:14:23  3              MR. PALMER:  No, Your Honor.

10:14:26  4              THE COURT:  All right.  Court is adjourned.

5              (WHEREUPON, at 10:14 a.m., the proceedings were

6    concluded.)

7                               *    *    *

8

9                         REPORTER'S CERTIFICATE

10

11         I, Cathy Pepper, Certified Realtime Reporter, Registered

12    Merit Reporter, Certified Court Reporter in and for the State

13    of Louisiana, Official Court Reporter for the United States

14    District Court, Eastern District of Louisiana, do hereby

15    certify that the foregoing is a true and correct transcript to

16    the best of my ability and understanding from the record of the

17    proceedings in the above-entitled and numbered matter.

18

19                              *s/Cathy Pepper*_____

20                              Cathy Pepper, CRR, RMR, CCR
                                Certified Realtime Reporter
21                              Registered Merit Reporter
                                Official Court Reporter
22                              United States District Court
                                Cathy_Pepper@laed.uscourts.gov
23

24

25

                            ***OFFICIAL  TRANSCRIPT***