UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION: H |
| THIS DOCUMENT RELATES TO: | HON. JANE TRICHE MILAZZO |
| | MAG. JUDGE NORTH |
| **Cases listed on Exhibit A to Rec. Docs. 14431 and 14432** | |

## MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF DISMISSAL ORDERS PERTAINING TO CERTAIN MISSISSIPPI PLAINTIFFS

MAY IT PLEASE THE COURT:

Pursuant to Fed. R. Civ. P. 59(e), Plaintiffs, through the Plaintiffs' Steering Committee ("PSC"), respectfully seek reconsideration and reversal of this Court's Orders of July 13, 2022 (Rec. Doc. 14431), and July 18, 2022 (Rec. Doc. 14432), that dismissed Plaintiffs' cases listed on Exhibit A to each Order as time-barred as a matter of law by Mississippi's applicable three-year statute of limitations. Plaintiffs respectfully contend that the aforementioned Orders stem from a manifest error in application of Mississippi law to the facts and circumstances before the Court, and allowing final adjudication of the merits of their individual timeliness through the show cause process to stand would result in a manifest injustice to the Plaintiffs at issue.

Plaintiffs respectfully reiterate that whether the injury at issue in this case, permanent chemotherapy induced alopecia ("PCIA"), potentially qualifies as a "latent-injury" under Mississippi law is a fact intensive analysis that requires consideration of all of the circumstances, including Defendants' experts' positions on the impossibility of the condition/diagnosis, in a light most favorable to Plaintiffs as non-movants. If a Mississippi Court were presented with

additional facts and discovery pertinent to this question and a reasonable jury could find PCIA qualifies as a latent injury, these Plaintiffs' actions would not accrue until the injury was discovered and dismissal pursuant to a Rule 12(c) show cause process therefore is improper. Because the determination whether a particular Plaintiff's PCIA constitutes a "latent-injury" calls for a case-by-case factual determination,[1] the show cause process advanced by Defendants cannot be utilized to summarily dismiss a large group of cases that have not even had the opportunity to undergo individual discovery in the context of a show-cause order.

Plaintiffs also respectfully reassert that the Second Amended Master Complaint (Doc. 4407) sufficiently alleges fraudulent concealment, and these allegations have already survived Defendants' Rule 12 Motion to Dismiss. *See* Rec. Doc. 784. As the fraudulent concealment allegations are sufficiently plead, there are no grounds to disregard this theory and dismiss these Plaintiffs' claims in summary fashion on the pleadings without allowing them the opportunity to submit Rule 56 proof that fraudulent concealment would toll the statute-of-limitations in their particular case. After an opportunity for appropriate discovery, individual Plaintiffs would be subject to summary judgment motion practice before the remand Mississippi federal courts to evaluate whether there are genuine issues for the jury to evaluate regarding the timeliness of their action and/or their allegations of fraudulent concealment.

In sum, Plaintiffs respectfully suggest that the proper course of action at this time would be for the Court to reverse the referenced dismissal orders and allow Mississippi transferor courts the opportunity, after remand, to determine the applicably of the latent-injury/discovery rule and

---

[1] In addition to the Defense experts' reports and deposition testimony, which call into question the scientific literature supporting that PCIA as a condition exists in the field of dermatology and state that it is impossible to determine the cause of PCIA and state that Plaintiffs have age-related hair loss, many Plaintiffs take hormone therapy which all experts acknowledge can concurrently cause temporary hair loss while using the hormone therapy. And, all Plaintiffs regularly followed up with their cancer physicians on a schedule to monitor remission status.

2

fraudulent concealment under Mississippi law to the claims of the Plaintiffs at issue.

## Standard on Reconsideration

Under Fed. R. Civ. P. 59(e), the Eastern District of Louisiana has routinely considered the following four factors in deciding motions for reconsideration: (1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in the controlling law. *See Foster v. Principal Life Ins. Co.*, 303 F. Supp. 3d 471, 479 (E.D. La. 2018). A denial of a motion for reconsideration is reviewed for an abuse of discretion. *See ICEE Distributors, Inc. v. J&J Snack Foods Corp.,* 445 F.3d 841, 847–48 (5th Cir. 2006).

## Argument

**A. *The existence of a potentially latent injury implicating Mississippi's discovery rule, and the factual inquiry it calls for, precludes summary dismissal of these claims in a show cause fashion and without comprehensive case-specific discovery.***

The injury at issue in this litigation, permanent chemotherapy induced alopecia ("PCIA"), is a potentially a "latent-injury" for purposes of determining when a Plaintiff's cause of action accrued under the applicable Mississippi statute-of-limitations. Actions for latent injuries do not accrue under Mississippi law until a Plaintiff should have reasonably discovered her injury. Whether an injury was indeed latent, and if so, when the injury was or should have been discovered, are generally determinations for the jury based on the specific facts of each case. Whether a particular Plaintiff's PCIA constitutes a "latent-injury" calls for a case-by-case factual determination that certainly cannot be utilized to summarily dismiss a large group of cases that have not even had the opportunity to undergo individual discovery in the context of a show-cause order.

Mississippi law provides that, in cases involving latent injuries or diseases, "the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." Miss. Code Ann. §15-1-49(2). "For an injury to be latent it must be undiscoverable by reasonable methods." *PPG Architectural Finishes, Inc. v. Lowery*, 909 So.2d 47, 51 (Miss. 2005). What it takes to discover a latent injury differs from case-to-case. *Id*. "The discovery rule requires asking whether 'the plaintiff knew or reasonabl[y] should have known that an injury existed.'" *McGowen v. Roman Catholic Diocese of Biloxi*, 319 So.3d 1086, 1090 (Miss. 2021) (quoting *F & S Sand, Inc. v. Stringfellow*, 265 So.3d 170, 174 (Miss. 2019). "Whether the plaintiff knew about the injury has typically been reserved as a jury question." *Lowery*, 909 So.2d at 50; *see also*, *McGowen*, 319 So.3d at 1090. "Because there is no bright line rule, **the specific facts of the case will determine** whether the plaintiff knew or reasonable [sic] should have known that an injury existed." *Lowery*, 909 So.2d at 51 (emphasis added).

The necessity of an individual factual determination in this analysis is well established in State of Mississippi. Recently, in *McGowen*, the Mississippi Supreme Court was presented with a situation where the Plaintiff asserted his alleged injury of sexual abuse was latent because he had repressed his memory of the abuse. While the dissent contended the Plaintiff simply repressing the memories of his abuse did not make his injury latent or undiscoverable, the majority overturned the trial court's dismissal of the case, holding that whether the Plaintiff knew or should have known about his injury was a factual question for the jury. 319 So.2d at 1090-92.

By way of further example, Judge Mills of the Northern District of Mississippi was presented with similar arguments in the mass-tort context following remand of a Bard IVC Filter case. Plaintiff alleged her filter had migrated and perforated her IVC. The Defendants argued

4

that the Plaintiff's claims were time barred because a CT scan taking place more than three years before she filed suit had indicated that her filter "may not be in the right position." Plaintiff countered that her injury remained latent until a later CT scan more clearly indicated the issues with her filter. Applying Mississippi law on latent injuries, Judge Mills denied Defendants' Motion for Summary Judgment, explaining "While this court believes that Bard has a legitimate argument that plaintiff's claims are time-barred, it concludes that plaintiff likewise has a legitimate argument on this issue and that a jury should resolve this issue." *Munson v. C.R. Bard, Inc.*, 561 F.Supp.3d 655, 680 (N.D. Miss. 2021) (Mills, J.).

The injury at issue in this litigation is PCIA. In dismissing the cases at issue, the Court seems to suggest that Plaintiffs' hair loss is obvious, so its determination ends there.

However, while a Plaintiff's hair loss status at any given time may be obvious, the permanent nature of the hair loss, which is the actual injury, is not. What the Court's dismissal Orders essentially do is find that the following two situations should be treated no differently:

- Plaintiff 1 is told by her physician that her hair should completely grow back in six months—6 months later Plaintiff has no hair regrowth and Plaintiff does not follow up with any physician

- Plaintiff 2 is told by her physician that hair regrowth times can differ--Plaintiff has 25% regrowth after 6 months—Plaintiff follows up with physician after 6 months who reiterates hair regrowth times can differ, she is making progress, and she has nothing to worry about at that juncture.[2]

Treating these two situations in the same fashion is violative of the Mississippi Supreme Court's dictate that the determination of whether an injury is "latent" is a case-specific factual inquiry based on what a particular Plaintiff knew or should have known under her particular

---

[2] This hypothetical Plaintiff is similar to Ms. Kahn, whose claims and factual circumstances presented genuine issues for a jury's consideration. *See* Exhibit 1, Court's Oral Reasons Denying Sanofi's Second Motion for Reconsideration (Kahn), Transcript of Oral Argument of July 29, 2021.

circumstances. Regardless of what may be plead in the Master Complaint as to the significance of a Plaintiff's condition six months post-chemotherapy, and what scientific literature a Plaintiff may hypothetically have had access to, an individual in the situation of "Plaintiff 2" above would certainly be entitled to have a jury determine under Mississippi law whether her injury should have been known on day 183, despite her doctor telling her otherwise. Nevertheless, the Court's summary dismissal orders deny the Mississippi Plaintiffs their right to have a jury determine this case specific-factual issue after appropriate discovery. As a result, the Mississippi Plaintiffs were not ever afforded the opportunity to demonstrate to the Court whether this situation was akin to "Plaintiff 1," "Plaintiff 2," in between, or something else entirely.[3] A summary show cause proceeding did not and cannot afford the proper opportunity to review and adjudicate these fact-dependent issues. Accordingly, the Court should reconsider and reverse the dismissal orders at issue. A failure to do so would be manifestly unjust to the Plaintiffs at issue.

### B. As Plaintiffs have made sufficient allegations sufficient to support a claim for fraudulent concealment tolling, a case specific factual inquiry would be necessary to dismiss Plaintiffs on the grounds they cannot prove fraudulent concealment, meaning a summary dismissal of these claims in a show cause fashion is improper.

The Master Complaint in this case has alleged fraudulent concealment, which, if applicable, would toll the applicable statute-of-limitations under Mississippi law. As is the case

---

[3] At the July 13, 2022 Mississippi Show Cause Proceedings, the Court deferred ruling on a Plaintiff's case in which her physician believed that tamoxifen might be the cause of her delayed hair regrowth and treated the Plaintiff with steroid cream after her tamoxifen treatment ended and within three years of filing suit. Exhibit 2, 7/13/2022 Show Cause Transcript at 34-39. In doing so, the Court stated "…This is very different because I know Mississippi has a very limited discovery rule. I understand that, but if she was receiving treatment from her physician during that time for this specific injury, I just don't know, and this is not the same. This is not the same as someone who is six months after the chemotherapy. It's just a little different. This is a very drastic remedy, and because this one has a peculiar set of facts, and I'm not privy to what those records show, and I want him to be able to preserve his record because the result may ultimately be the same from my end, but I don't think he should be foreclosed from submitting that record to the Court of Appeal, or I may say this one, it may remain in the remand bucket." *Id.* at 37-38. Plaintiffs' cases likewise should be heard by Mississippi transferor courts, after remand, because this type of factual scenario will not be unique after case-specific discovery, such as the Plaintiff and physician depositions, is further developed in these cases.

6

with the application of the discovery rule outlined above, the determination of whether fraudulent concealment has tolled the statute-of-limitations involves a case-specific factual inquiry. The Court has already found that the Plaintiffs have adequately plead fraudulent concealment in the Master Complaint when it denied Defendants' Rule 12 challenge to the sufficiency of the pleadings as to this count. Accordingly, there is no basis to dismiss these claims without offering the Plaintiffs the opportunity to engage in individualized discovery and present case-specific factual evidence to support their claims.

Mississippi law provides that causes of action that have been fraudulently concealed by a Defendant "shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered." Miss. Code Ann. § 15-1-67. "[F]raudulent concealment is a statutory tolling provision that requires 'the party purporting that there was fraudulent concealment" to show two things—"(1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) and due diligence was performed on their part to discover it.'" *Brown v. McKee*, 242 So.3d 121, 128 (Miss. 2018) (internal citations omitted). "Both are questions of fact, not law, and should be left to a jury for determination." *Whitaker v. Limeco Corp.*, 32 So.2d 429, 436; *see also*, *Robinson v. Cobb*, 763 So.2d 883, 888-90 (Miss. 2003). Ongoing fraudulent acts by a Defendant that would prevent the discovery of an injury or cause of action after the initial commitment of a tort would support a Plaintiff's claim of fraudulent concealment as opposed to the underlying tort. *See Whitiker*, 32 So.3d at 438; *see Alexander v. Wyeth*, 897 F.Supp.2d 489, 493-94 (S.D. Miss. 2012) (Lee, J.).

*Alexander*, which is a products liability claim involving the hormone replacement therapy (HRT) drug Premarin, provides a good example of this concept. 897 F.Supp.2d. The Plaintiff in *Alexander* alleged that her HRT, manufactured and sold by Defendants, caused her to develop

7

breast cancer. To support her claim of fraudulent concealment, the Plaintiff argued that one of the subsequent acts of fraud committed by the Defendants were "Dear Doctor" letters sent to physicians in 2000. She contended those letters fraudulently and deliberately misled doctors about the breast cancer risk of HRT drugs, among other things. Defendants asserted those purported acts of concealment could not toll statute of limitations since they were also part of the basis of Plaintiff's fraud claim. However, since those letters were sent after the date she suffered the injury at issue (i.e., she was diagnosed with breast cancer in 1999), the Court found they "are not a basis of her fraud cause of action but rather her assertion of fraudulent concealment as a basis for tolling the statute of limitations." *Id.* at 493.

As thoroughly set out in Plaintiffs' original Opposition to the Motion for Rule to Show Cause (Rec. Doc. 13776), adequate, and indeed ample, factual support exists in the record to support the fraudulent concealment claims of the Mississippi Plaintiffs. These fraudulent acts span a number of years such that the Court cannot make a wholesale determination as to whether Defendants' alleged fraudulent actions potentially pertain to the underlying tort at issue or the purported fraudulent concealment. Moreover, determining whether a Plaintiff acted reasonably diligent with the information available in the time period following the initial commission of the tort cannot be done without looking at each specific case (which involve different periods of usage and exposure) and conducting a case specific factual inquiry as to what information was available when. Given the large scope of claims at issue in the present litigation, this analysis that calls for date-specific facts would be different for each Plaintiff, and their fraudulent concealment claims should not be summarily dismissed without a case-specific factual inquiry.

As the Court previously properly denied Defendants' Rule 12 challenge to the sufficiency of the pleadings on fraudulent concealment (Count 6 of the Master Complaint), allowing these

cases to move forward with fact specific discovery is the appropriate course of action. To the extent any Plaintiff is unable to support her fraudulent concealment claim at the conclusion of discovery, Defendants can move for summary judgment at that time, following remand. Dismissal prior to that would be wholly premature and manifestly unjust to the Plaintiffs at issue.

## Conclusion

Dismissing the claims of the Mississippi Plaintiffs at issue through the show cause summary procedure advanced by Defendants constitutes a manifest error in the application of Mississippi law to the facts and situation before the Court. Thus, allowing these Orders to stand would result in a manifest injustice for the dismissed Plaintiffs. Unlike the Michigan claims previously resolved in show-cause fashion, the Mississippi cases require a case-specific factual analysis before a determination on dismissal can appropriately be made. Accordingly, these claims are not suited for large scale summary dismissals in a show-cause setting. These are issues better suited for resolution by the Mississippi Courts following remand after the Plaintiffs have had the opportunity to conduct individualized discovery and present their case specific facts. For the reasons set forth above, as well as those previously articulated to the Court, the Plaintiffs respectfully move the Court to reconsider and reverse the Orders of Dismissal at issue.

Dated: August 10, 2022                                Respectfully submitted,

*/s/ Christopher L. Coffin*                            */s/ Karen B. Menzies*
Christopher L. Coffin (#27902)                        Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.                      GIBBS LAW GROUP LLP
1100 Poydras Street, Suite 2225                       6701 Center Drive West, Suite 1400
New Orleans, Louisiana 70163                          Los Angeles, California 90045
Phone: (504) 355-0086                                 Telephone: 510-350-9700
Fax: (504) 355-0089                                   Facsimile: 510-350-9701
ccoffin@pbclawfirm.com                                kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

*Plaintiffs' Co-Lead Counsel*

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

### PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

J. Kyle Bachus
Bachus & Schanker, LLC
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045 Phone:
510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717

Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

John Gomez
The Gomez Law Firm, PLLC
655 West Broadway, Suite 1700
San Diego, CA 92101
Phone: (619) 237.3490
Fax: 619.237.3496.
john@thegomezfirm.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, FL 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904 15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@amalaw.com

Fax: (510) 350-9701
amm@classlawgroup.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Jessica Perez Reynolds
Pendley, Baudin & Coffin
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Phone: (225) 687-6396
Fax: (225) 687-6398
jperez@pbclawfirm.com

Darin L. Schanker
Bachus Schanker
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
dls@coloradolaw.net

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Zachary Wool
Barrios Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
zwool@bkc-law.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ M. Palmer Lambert*
M. PALMER LAMBERT
