# EXHIBIT 2

### Page 1

```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA

  ***************************************************************
  IN RE:  TAXOTERE
  (DOCETAXEL) PRODUCTS
  LIABILITY LITIGATION
                              CIVIL ACTION NO. 16-MD-2740 "H"
                              NEW ORLEANS, LOUISIANA
                              WEDNESDAY, JULY 13, 2022, 9:00 A.M.

  THIS DOCUMENT RELATES TO:
  ALL CASES
  ***************************************************************

       TRANSCRIPT OF MISSISSIPPI SHOW CAUSE PROCEEDINGS
       HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
               UNITED STATES DISTRICT JUDGE

  APPEARANCES:

  FOR THE PLAINTIFFS:    GAINSBURGH BENJAMIN DAVID
                         MEUNIER & WARSHAUER
                         BY:  M. PALMER LAMBERT, ESQ.
                              CLAIRE E. KREIDER, ESQ.
                         1100 POYDRAS STREET, SUITE 2800
                         NEW ORLEANS, LOUISIANA 70163

                         MARTZELL BICKFORD & CENTOLA
                         BY:  LAWRENCE J. CENTOLA, ESQ.
                         338 LAFAYETTE STREET
                         NEW ORLEANS, LOUISIANA 70130

                      OFFICIAL TRANSCRIPT
```

### Page 2

```
  APPEARANCES CONTINUED:

  FOR SANOFI S.A.:    IRWIN FRITCHIE URQUHART & MOORE
                      BY:  KELLY E. BRILLEAUX, ESQ.
                      400 POYDRAS STREET, SUITE 2700
                      NEW ORLEANS, LOUISIANA 70130


                      SHOOK, HARDY & BACON
                      BY:  JORDAN BAEHR, ESQ.
                      2555 GRAND BOULEVARD
                      KANSAS CITY, MISSOURI 64108


  FOR SANDOZ, A NOVARTIS
  DIVISION:           GREENBURG TRAURIG
                      BY:  NICHOLAS INSOGNA, ESQ.
                      TERMINUS 200
                      3333 PIEDMONT ROAD, NE
                      ATLANTA, GEORGIA 30305


  FOR ACCORD HEALTHCARE,
  INC.:               TUCKER ELLIS
                      BY:  BRENDA A. SWEET, ESQ.
                      950 MAIN AVENUE, SUITE 1100
                      CLEVELAND, OHIO 44113


  ALSO PRESENT VIA TELEPHONE:    DAVID HODGES, ESQ.
                                 CHRISTINE DURANT, ESQ.
                                 JULIE REYNOLDS, ESQ.
                                 JENNIFER GREENE, ESQ.
                                 AMY GUNN, ESQ.

                                 CLAIRE KREIDER, ESQ.
                                 ADAM STOLTZ, ESQ.
                                 ANDREW GEIGER, ESQ.
                                 BLAKE WEIMAN, ESQ.
                                 LINDSAY STEVENS, ESQ.

                      OFFICIAL TRANSCRIPT
```

### Page 3

```
  APPEARANCES CONTINUED:


                      MARK NIEMEYER, ESQ
                      ROBIN MYERS, ESQ
                      JASON FRAXEDAS, ESQ
                      RICK ROOT, ESQ
                      RHETT MCSWEENEY, ESQ


                      TREVOR ROCKSTAD, ESQ
                      ANDREA BARIENT, ESQ
                      BRET STANLEY, ESQ.
                      MELANIE SULKIN, ESQ.



  OFFICIAL COURT REPORTER:    CATHY PEPPER, CRR, RMR, CCR
                              CERTIFIED REALTIME REPORTER
                              REGISTERED MERIT REPORTER
                              500 POYDRAS STREET, ROOM B-275
                              NEW ORLEANS, LOUISIANA 70130
                              (504) 589-7779
                              Cathy_Pepper@laed.uscourts.gov


  PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
  PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.




                      OFFICIAL TRANSCRIPT
```

### Page 4

```
                    P-R-O-C-E-E-D-I-N-G-S
                      MORNING SESSION
                    WEDNESDAY, JULY 13, 2022
                    (COURT CALLED TO ORDER)


         THE DEPUTY CLERK:  All rise.
         THE COURT:  Good morning.
         THE DEPUTY CLERK:  Court is in session.  You may be
  seated.  MDL 1740, in re Taxotere Products Liability
  Litigation.
         MR. BAEHR:  Good morning, Your Honor.
         THE COURT:  Good morning, Mr. Baehr.
         MR. BAEHR:  Just a few comments to hopefully explain
  what we've done, where we're at, and kind of how we expect
  today to go.  So, in the interest of hopefully streamlining
  today's process, we've reached out to plaintiffs' counsel to
  try to ascertain the basis of the objections that would be
  raised and, hopefully, plan a little bit, put them in --
  categorize them for you.
         In the wake of those conferrals, there have been
  quite a few cases more come off of the list, and I think you've
  been provided with a new list of --
         THE COURT:  What I have is meaningless.
         MR. BAEHR:  Okay.  So, I was going to ask how you
                      OFFICIAL TRANSCRIPT
```

5

```
09:06:41  1   prefer to deal with it.  It sounds like the best way is we'll
09:06:44  2   just identify them as we go through.
09:06:45  3           THE COURT:  I think we have to because the numbers that
09:06:49  4   I was provided apparently aren't the numbers that are
09:06:52  5   dismissed.  I mean, I just don't even know what this list is
09:06:55  6   anymore, if there are more names, because I was given numbers
09:07:00  7   42 to 48 and I stop at 40, so I just have no idea.
09:07:05  8           So, I think the thing to do is perhaps just go
09:07:08  9   one at a time, but I am interested, I understand there were
09:07:11 10   likely buckets, and I would like to know what those buckets
09:07:15 11   look like.
09:07:16 12           MR. BAEHR:  Certainly, Your Honor.  So, in that regard,
09:07:20 13   there was a bucket of cases that appear to, per conferral,
09:07:27 14   appeared that the plaintiffs had no connection to Mississippi
09:07:29 15   other than that is their current residence, and so defendants
09:07:34 16   took those cases off the list already, consistent with the
09:07:37 17   position that I'll outline in a second, but those have already
09:07:39 18   been removed.
09:07:41 19           I will also clarify for any plaintiffs' counsel
09:07:44 20   on the phone who may be like, what?  We didn't get an email.
09:07:47 21   We didn't connect with every counsel, and we had some bounce
09:07:50 22   back with emails and stuff, so if you didn't talk to us, that's
09:07:52 23   why.  Don't worry.
09:07:57 24           Okay.  So, the buckets.  The largest category of
09:07:59 25   cases is those where the plaintiff was either prescribed or
```
OFFICIAL TRANSCRIPT

6

```
09:08:01  1   treated or resided in Mississippi during treatment but not
09:08:05  2   necessarily all treatment.  So, in other words, there is some
09:08:08  3   connection to another state that plaintiffs would, I think, say
09:08:11  4   is a basis that that state's law should apply.
09:08:15  5           Understandably and certainly, I would do the same
09:08:17  6   thing if I was on the other side.  Different counsel for
09:08:19  7   different plaintiffs have taken different positions about which
09:08:22  8   of those facts is most important.  So, in other words, some who
09:08:26  9   were treated in Mississippi but didn't reside there say, well,
09:08:29 10   it's a state of residence and others who are in the opposite
09:08:34 11   position say the opposite.
09:08:35 12           Defendants think, frankly, that reasonable minds
09:08:38 13   can differ about what that is, but our position is that the
09:08:42 14   state of residence during treatment or if it's specifically
09:08:47 15   known the state of residence six months after the treatment
09:08:50 16   would be the state where the injury occurred according to the
09:08:53 17   definition of the injury in this litigation, and that should be
09:08:56 18   the predominating fact and factor, but like I said, I think --
09:09:02 19           THE COURT:  Reasonable minds can differ.
09:09:04 20           MR. BAEHR:  Reasonable minds can differ.  We just think
09:09:06 21   there should be a consistent rule.  So, if Your Honor thinks,
09:09:09 22   you know, it's the state of prescription or the state of
09:09:11 23   treatment, we understand.  We just -- our greatest advocacy
09:09:16 24   would be for our consistent rule across the cases.
09:09:17 25           Because of that, we've kept cases on the list
```
OFFICIAL TRANSCRIPT

7

```
09:09:19  1   that take the different positions because we don't know how
09:09:22  2   Your Honor is going to rule, and we don't want to foreclose,
09:09:24  3   you know, assume one way or the other, so you will see cases
09:09:29  4   that maybe you think, oh, that's different than what we said
09:09:32  5   our position is.  That's because we don't know what you're
09:09:35  6   going to rule.
09:09:38  7           There are also some objections just based on the
09:09:41  8   facts of the cases.  This particular plaintiff, according to
09:09:44  9   their treatment, that they didn't know that their hair loss is
09:09:48 10   permanent or something like that.  Defendants think those
09:09:51 11   objections are misplaced in the context of Greer.  Given that
09:09:56 12   it was a judgement on the pleadings and that Mississippi
09:09:58 13   doesn't have a discovery rule, we don't think those facts are
09:10:00 14   germane.
09:10:02 15           I think there are still a few cases where there
09:10:06 16   are just general objections that counsel are making to preserve
09:10:09 17   for the record, and defense would just point out that that's
09:10:12 18   accounted for in the dismissal order as we've drafted it, and
09:10:16 19   any existing objections are preserved for appeal.
09:10:20 20           Then, finally, I'm not sure if there will be any
09:10:24 21   cases where this comes up because there is quite a few cases
09:10:27 22   where we don't yet know what the objection is, but there were,
09:10:31 23   at times, raised objections based on plaintiffs who sought
09:10:36 24   amendments to their short form complaints to change the venue
09:10:40 25   that they had selected in their short form complaints.
```
OFFICIAL TRANSCRIPT

8

```
09:10:42  1           Defendants' position on that is simply that the
09:10:46  2   SFC identifies the state or the venue where a case would have
09:10:51  3   been filed, where the suit would have been filed if it hadn't
09:10:54  4   been direct filed, and that's not something that can change.
09:10:57  5   If you filed it in a certain venue, that's where it was filed,
09:11:01  6   and even if it were, it wouldn't be by an amendment to the
09:11:05  7   complaint.  That wouldn't be the proper process for that; so,
09:11:08  8   we don't think that should be a basis to disregard the venue
09:11:12  9   that was identified in the short form complaint.
09:11:13 10           Okay.  I think that covers the buckets, and if
09:11:16 11   you don't have any questions --
09:11:18 12           THE COURT:  I do.
09:11:18 13           MR. BAEHR:  Okay.  Yeah.
09:11:23 14           THE COURT:  You're not expecting me to rule on the
09:11:26 15   connections to other states today, are you?
09:11:29 16           MR. BAEHR:  Obviously, we defer to you.  We would
09:11:32 17   hope --
09:11:33 18           THE COURT:  I mean, I know what you would want me to
09:11:35 19   do, which is to say we dismiss everything that has passed
09:11:41 20   through Mississippi, but I just think these are harsh remedies.
09:11:47 21   I'm dismissing these cases certainly subject to the objections
09:11:51 22   that have been raised and so that those objections can be
09:11:55 23   raised on appeal.
09:11:56 24           But, one, I think each of those cases, it's
09:12:02 25   probably fact intensive, and I would need to have some
```
OFFICIAL TRANSCRIPT

## 9

```
09:12:09  1   briefing. I don't know, because what you say is we have some
09:12:13  2   where they reside there now, but they didn't reside there
09:12:17  3   during the events in question. That's one case, and then we
09:12:19  4   have cases where they were treated in Mississippi and moved
09:12:23  5   back to their home in Alabama. That's a separate case. I
09:12:26  6   mean, I could see that that's pretty much all over the place,
09:12:32  7   and I don't know how one can make a blanket ruling on that
09:12:39  8   unless you have buckets that identify facts that are very, very
09:12:49  9   similar.
09:12:50 10             MR. BAEHR: I think there are buckets of facts.
09:12:54 11             THE COURT: With buckets within that bucket is what I'm
09:12:57 12   saying, I mean sub-buckets.
09:12:58 13             MR. BAEHR: Yeah, sub-buckets. We certainly do have
09:13:02 14   sort of buckets where, okay, they resided in Mississippi, but
09:13:06 15   they weren't treated there. That could be one bucket, or they
09:13:09 16   were treated in Mississippi but didn't reside there.
09:13:11 17             THE COURT: Right, right.
09:13:12 18             MR. BAEHR: And if -- I hear you saying you're not
09:13:17 19   hoping or desiring to rule on those cases.
09:13:19 20             THE COURT: No, no, I'm not -- I will tell you flatly I
09:13:25 21   am not going to do that today because I think those people are
09:13:28 22   certainly entitled to appropriate briefing so that I have an
09:13:31 23   opportunity to look at what that specific objection is.
09:13:35 24             Now, people that lived in Mississippi, were
09:13:38 25   treated in Mississippi, have never left Mississippi, you
```

OFFICIAL TRANSCRIPT

## 10

```
09:13:43  1   know --
09:13:43  2             MR. BAEHR: Understood.
09:13:44  3             THE COURT: -- I think Greer certainly covers unless
09:13:47  4   there is something different, but you have to --
09:13:53  5             MR. BAEHR: Sorry.
09:13:53  6             THE COURT: No, go ahead.
09:13:54  7             MR. BAEHR: Okay. We do have quite a few cases that
09:13:56  8   fall into that bucket as well.
09:13:56  9             THE COURT: Right.
09:13:58 10             MR. BAEHR: So, okay. And, that's helpful, I think,
09:14:01 11   with that guidance, we can tentatively plan to organize the
09:14:06 12   briefing by those factual buckets or figure out something that
09:14:10 13   helps with plaintiffs' counsel to group them in a logical way
09:14:12 14   for you.
09:14:14 15             THE COURT: Okay.
09:14:14 16             MR. BAEHR: I was -- oh, I also wanted to mention a few
09:14:18 17   of the states present choice of law issues that are very
09:14:22 18   similar to, if not identical to, choice of law issues that were
09:14:28 19   briefed in the wake of the Michigan hearing.
09:14:28 20             THE COURT: Michigan.
09:14:31 21             MR. BAEHR: Yes. So, for those cases we might request
09:14:33 22   or we would request just that we forgo additional briefing
09:14:37 23   until you've had a chance to issue rulings in those cases --
09:14:41 24             THE COURT: Okay.
09:14:41 25             MR. BAEHR: -- on those briefs.
```

OFFICIAL TRANSCRIPT

## 11

```
09:14:43  1             THE COURT: Okay.
09:14:43  2             MR. BAEHR: All right. I think that's all I have.
09:14:49  3             THE COURT: Mr. Lambert, I guess you have something to
09:14:51  4   say.
09:14:53  5             MR. PALMER: I do. Yes, Your Honor.
09:14:55  6             Good morning, Your Honor. Palmer Lambert,
09:14:58  7   coliaison counsel for plaintiffs.
09:15:01  8             Just to streamline the general objections, I have
09:15:04  9   something for the record for the plaintiffs.
09:15:05 10             May it please the Court. The PSC filed an
09:15:12 11   objection to proceeding with this type of show-cause procedure
09:15:15 12   for such a fact-intensive analysis on the statute of
09:15:20 13   limitations to bar a large swath of the plaintiffs from being
09:15:24 14   able to proceed with case-specific discovery in trials.
09:15:27 15             First of all, I'm not a Mississippi lawyer, and I
09:15:31 16   don't profess to be an expert in Mississippi law, but I have
09:15:35 17   read some decisions that occurred recently after the Greer
09:15:40 18   decision that I would like to point out to the Court for
09:15:43 19   consideration.
09:15:43 20             The first is a Northern District of Mississippi
09:15:46 21   case called Munson v. C.R. Bard, 561 F.Supp. 3d 655, and it was
09:15:55 22   decided September 20, 2021. The Court denied the motion for
09:16:01 23   summary judgment in that case and found that the question for
09:16:04 24   the jury was, quote, The material fact of when plaintiff did
09:16:10 25   know or should have known that her IVC filter had migrated,
```

OFFICIAL TRANSCRIPT

## 12

```
09:16:16  1   perforated and fractured, close quote.
09:16:21  2             That was left for the jury despite the fact that
09:16:23  3   there was a CT scan more than three years before suit where the
09:16:28  4   radiologist found her IVC filter, quote, may not be in the
09:16:31  5   correct position.
09:16:33  6             The second case is a Southern District of
09:16:35  7   Mississippi case on March 29th of this year, Dillon v. Davis
09:16:41  8   2022 WL949 --
09:16:43  9             THE COURT: Wait, wait, wait.
09:16:46 10             2022.
09:16:46 11             MR. PALMER: WL949846.
09:16:54 12             In that case, Judge Ozerden of the
09:16:57 13   Southern District of Mississippi found, quote, The Mississippi
09:17:01 14   Supreme Court has held that the critical question is, and then
09:17:04 15   another quote, is whether in a summary judgment context we can
09:17:09 16   identify as a matter of law the point at which the plaintiff
09:17:12 17   knew or should have known or should have made an inquiry based
09:17:18 18   on the information available to him, close quote.
09:17:21 19             Then that judge cited the Weathers case, which is
09:17:26 20   a Mississippi Supreme Court 2009 case, 14 So. 3d 688.
09:17:34 21             The reason why those decisions are important is
09:17:37 22   twofold, Your Honor: One, these cases suggest that the
09:17:41 23   analysis is closer to Louisiana's fact-intensive analysis than
09:17:46 24   has been suggested by the defendants to be a more rigid,
09:17:52 25   injury-only inquiry.
```

OFFICIAL TRANSCRIPT

13

```
09:17:54  1          Second, the question of application of the latent
09:17:58  2  exception to the SOL should involve a similar analysis of the
09:18:04  3  facts as was done by the Court when it denied, based on oral
09:18:08  4  reasons, the Khan second motion for a reconsideration.  And
09:18:15  5  that was oral reasons dated July 29, 2021, where the Court
09:18:21  6  similarly evaluated the reasonableness of plaintiffs' actions
09:18:25  7  under Louisiana law and found that there were questions for the
09:18:28  8  jury because of the defendants' routine arguments in this MDL
09:18:33  9  that the plaintiff may not even have the injury, that there are
09:18:37 10  other possible causes, age related, hormone related, as to the
09:18:42 11  reason why a plaintiff has her particular condition.
09:18:44 12          Finally, in light of the Fifth Circuit's rulings
09:18:50 13  in Thibodaux and Durden, these plaintiffs, we believe -- and,
09:18:57 14  obviously, we respectfully disagree with the Fifth Circuit's
09:18:59 15  ruling -- but we believe they should have been allowed to amend
09:19:02 16  their complaints consistent with the plaintiffs' proposed third
09:19:06 17  amended master complaint, that's Document 8334-1, because the
09:19:12 18  lack of prejudice to the defendants when there is no
09:19:16 19  case-specific deposition testimony in these particular cases
09:19:20 20  that would be relevant to the question of latency or
09:19:23 21  reasonableness of action.  Those plaintiffs are precluded from
09:19:28 22  doing so based on this court's order -- orders, Documents 8702,
09:19:35 23  8703, and Pretrial Order Number 105.
09:19:38 24          Ultimately, we believe that a remand court in
09:19:42 25  Mississippi may reasonably determine that there are issues for
```

14

```
09:19:46  1  the jury to resolve based on the timeliness of these cases and
09:19:50  2  the facts of the individual cases, and we would ask that the
09:19:55  3  Court adjourn this hearing and allow these cases to move
09:19:58  4  forward with remand and discovery.
09:20:01  5          We think that there are questions related to
09:20:04  6  hormone therapy, whether or not their annual checkups with
09:20:10  7  their doctors lulled them into complacency because the doctors
09:20:13  8  on physical exam didn't suggest they had any problems.  We also
09:20:17  9  think that there were sufficient facts, both in Document 4407,
09:20:21 10  the second amended master complaint, and the proposed third
09:20:25 11  amended master complaint that would impede -- that would
09:20:29 12  suggest that these plaintiffs were impeded from their ability
09:20:33 13  to discover their claims.
09:20:35 14          One final point, Your Honor.  The fraudulent
09:20:39 15  concealment exception to the SOL in Mississippi is a two-part
09:20:45 16  test.  One is based on whether the defendants did some acts to
09:20:50 17  preclude the plaintiff from determining their claim, and the
09:20:54 18  second is the reasonableness of the plaintiffs' action or
09:20:57 19  inaction in light of all the factual circumstances.
09:21:02 20          We would just point the Court to the sixth claim
09:21:07 21  for relief in the amended master complaint -- the second
09:21:09 22  amended master complaint, which provides factual support for
09:21:13 23  the first prong of that test, and the 12(b) motion that was
09:21:17 24  argued and presented to this court by the defendants on that
09:21:20 25  particular claim was denied previously by Judge Engelhardt.
```

15

```
09:21:25  1          That's all I have, Your Honor.
09:21:27  2          THE COURT:  Thank you.
09:21:31  3          Mr. Baehr.
09:21:32  4          MR. BAEHR:  Defendants would just briefly respond that,
09:21:36  5  of course, we don't believe this is the forum to appeal or
09:21:39  6  reconsider or otherwise dispute the Greer decision; but, of
09:21:45  7  course, individual plaintiffs will have that forum if they can
09:21:49  8  appeal from dismissal if they choose based on their individual
09:21:50  9  facts under the dismissal order.
09:21:52 10          All right.  The first case that we have is
09:21:56 11  Mary Miner, and this is a case where we weren't able to confer
09:21:58 12  with counsel; so, we don't actually know what the objection is.
09:22:04 13          THE COURT:  Okay.  I do have a list of the firms.
09:22:09 14  Hodges.
09:22:10 15          MR. BAEHR:  Your Honor, it's David Hodges on behalf of
09:22:15 16  Mary Miner.  I think this is one we can address pretty quickly.
09:22:21 17          Ms. Miner never had any connection to Mississippi
09:22:25 18  until eight years after her treatment, and then she resided and
09:22:31 19  got all of her treatment in Florida.
09:22:32 20          THE COURT:  I'm going to defer that case, as we
09:22:35 21  discussed earlier.  Thank you.
09:22:37 22          MR. BAEHR:  Just to clarify, defer for briefing per
09:22:40 23  consultation between the parties; is that correct?
09:22:42 24          THE COURT:  Yes.
09:22:44 25          I mean, that's what I said.  Those are going to
```

16

```
09:22:45  1  be deferred.  I'm not ruling on anything that has any issue.
09:22:49  2  These are regarding choice of law.
09:22:51  3          MR. BAEHR:  Understood.  Just to clarify.  Just what
09:22:54  4  you're deferring it to is all I meant to clarify for us to
09:23:00  5  brief.
09:23:00  6          THE COURT:  All right.
09:23:01  7          MR. BAEHR:  The next case is Blynda Smith.  It's the
09:23:06  8  same situation.  We don't know.
09:23:06  9          THE COURT:  Mr. Centola.
09:23:09 10          MR. CENTOLA:  Yes, Your Honor.
09:23:09 11          Ms. Smith lived in Mississippi but all the
09:23:12 12  treatment was in Baton Rouge, Louisiana, all of her oncology,
09:23:12 13  all of her infusion --
09:23:15 14          Larry Centola on behalf of Blynda Smith.
09:23:19 15          Ms. Smith lived in Mississippi, but all of her
09:23:22 16  treatment was in Louisiana and Baton Rouge.  Her oncologist,
09:23:26 17  her infusions, all of the Taxotere relations are in
09:23:29 18  Baton Rouge, Louisiana; and, therefore, we have the choice of
09:23:31 19  law issue, which we'll be happy to brief.
09:23:33 20          THE COURT:  Okay.  The Court is going to defer ruling
09:23:34 21  on that issue.
09:23:35 22          Thank you.
09:23:36 23          MR. BAEHR:  All right.  The next case is
09:23:41 24  Mashea Spencer.  We have been notified that counsel -- it was
09:23:45 25  initially not objected but identified they will object.
```

17

```
09:23:48  1         In this case we -- our understanding is that all
09:23:51  2   the treatment, prescription, and residence was all in
09:23:55  3   Mississippi.  The state of injury identified in the short form
09:24:00  4   complaint was Mississippi, and the state of treatment was
09:24:02  5   Mississippi, but for a brief period, apparently in the middle
09:24:07  6   of treatment, that took place in Illinois; but, otherwise,
09:24:10  7   she's resided in Mississippi since 2006, and her treatment was
09:24:14  8   in 2014.
09:24:15  9              THE COURT:  Okay.  Ms. Durant, are you on the line?
09:24:15 10              MS. DURANT:  Yes.  Thank you, Your Honor.
09:24:23 11   Christine Durant with Parker Waichman for plaintiff
09:24:24 12   Mashea Spencer.
09:24:25 13              We would disagree with defense counsel's
09:24:27 14   characterization of her treatment.  In terms of her Taxotere
09:24:30 15   treatment, half of her treatment was in Mississippi, half of
09:24:33 16   her treatment was in Illinois.  The short form complaint
09:24:37 17   mentions both states in terms of treatment and injury.  She
09:24:39 18   also is physically present in Illinois for half of her time;
09:24:44 19   so, we believe that this case would fall under the choice of
09:24:47 20   law bucket requiring further briefing.
09:24:49 21              THE COURT:  Thank you.  The Court is going to defer
09:24:52 22   ruling on that issue.  Thank you.
09:25:00 23              Sharon Mangum.
09:25:01 24              MR. BAEHR:  We do have the objection here, and in this
09:25:02 25   case, it appears that the current state of residence
```

OFFICIAL TRANSCRIPT

18

```
09:25:05  1   Georgia, but all other relevant facts took place in
09:25:08  2   Mississippi.  Under those facts, we think Mississippi law will
09:25:12  3   apply.
09:25:15  4              THE COURT:  Okay.  Ms. Reynolds, are you on the line?
09:25:17  5              MS. REYNOLDS:  Yes, Your Honor.  Can you hear me?
09:25:20  6              THE COURT:  Yes, ma'am.
09:25:17  7              MS. REYNOLDS:  So, we object to defendants' attempt to
09:25:25  8   apply Mississippi law to Ms. Mangum's case.  She currently
09:25:30  9   resides in Georgia and resided in Georgia at the time the
09:25:34 10   complaint was filed.  We identified both Mississippi and
09:25:38 11   Georgia on the short form complaint as the location for injury
09:25:41 12   and identified the Northern District of Georgia as the proper
09:25:46 13   venue for remand on her short form complaint.
09:25:46 14              THE COURT:  The Court is going to defer ruling on that.
09:25:50 15              MR. BAEHR:  Understood.
09:25:50 16              THE COURT:  Thank you.
09:26:03 17              Cynthia Klinesmith.
09:26:03 18              MS. GREENE:  I apologize, Your Honor.  Jennifer Greene.
09:26:03 19   I was trying to unmute myself.  Again, I apologize for my voice
09:26:03 20   today.
09:26:05 21              Ms. Cynthia Klinesmith lives in Slidell,
09:26:08 22   Louisiana, and her treatment was in Slidell, Louisiana; so,
09:26:11 23   that is our reason for objecting.
09:26:15 24              MR. BAEHR:  Understood, Your Honor.  We have that her
09:26:17 25   treatment was in Mississippi but that she lived in Louisiana.
```

OFFICIAL TRANSCRIPT

19

```
09:26:20  1   We didn't receive an objection, so I didn't know the basis for
09:26:23  2   it.
09:26:23  3              THE COURT:  I'm going to defer, as we indicated.
09:26:27  4              Anita Galey.
09:26:30  5              MR. INSOGNA:  Your Honor, Ms. Galey's case is unique.
09:26:33  6   All of the facts -- relevant facts, the state of residence at
09:26:35  7   the time of treatment is Mississippi.  She was prescribed in
09:26:39  8   Mississippi.  The venue selected in the short form complaint is
09:26:39  9   Mississippi.
09:26:44 10              We understand from the objection that we received
09:26:46 11   from counsel that Ms. Galey is suggesting that the definition
09:26:52 12   of the injury in the master complaint should not apply to her
09:26:53 13   because her treatment was somewhat intermittent.  There were
09:26:55 14   gaps between cycles, and as a result, her contention is that
09:26:59 15   she should be allowed to bring in an expert to suggest if she
09:27:03 16   would not have learned her hair loss was permanent until some
09:27:08 17   later date because the treatment was intermittent.
09:27:10 18              Obviously, defendant's position is that the
09:27:12 19   master complaint's definition of the injury still controls and
09:27:16 20   that Mississippi law should apply.
09:27:20 21              THE COURT:  Ms. Gunn, are you on the line?
09:27:22 22              MS. GUNN:  Yes, ma'am, I am.
09:27:26 23              The issue is when was Ms. Galey injured?  The
09:27:30 24   statute, as you know, 15-149 subpart A sets the statute of
09:27:38 25   limitation begins to run when the injury occurs and the cause
```

OFFICIAL TRANSCRIPT

20

```
09:27:43  1   of action accrues.  The question for Ms. Galey is when was
09:27:44  2   that?
09:27:44  3              She does not fall into the studies that were
09:27:49  4   cited by the master complaint because she had both the
09:27:53  5   neoadjuvant and adjuvant treatment.  The neoadjuvant treatment
09:28:00  6   was docetaxel, then she had bilateral mastectomy, and then she
09:28:05  7   had adjuvant treatment.  There is a factual dispute about
09:28:08  8   whether the studies cited, which do not take care of her
09:28:12  9   situation, triggered when the six months begins to run.
09:28:20 10              With respect to Mr. Lambert's citing of the
09:28:23 11   Munson case and the Dillon case, more recently, this is a
09:28:29 12   factual dispute that should be allowed to play out in discovery
09:28:32 13   in this matter.
09:28:34 14              I understand that at this point, you know, we're
09:28:39 15   bound by the long form complaint, but her case does not fit
09:28:45 16   into the study --
09:28:45 17              THE COURT:  May I ask a question?  I have a couple of
09:28:49 18   questions.  When did she complete her adjuvant treatment?
09:28:55 19              MS. GUNN:  The adjuvant treatment was completed in
09:28:59 20   October of 2013.
09:29:01 21              THE COURT:  When did she file her complaint?
09:29:04 22              MS. GUNN:  She filed her complaint in December of 2017.
09:29:18 23              THE COURT:  Did she have any treatment after October of
09:29:20 24   2013?
09:29:21 25              MS. GUNN:  She did not have any chemotherapy treatment
```

OFFICIAL TRANSCRIPT

### Page 21

```
09:29:25  1   after October 17th of 2013.
09:29:28  2        THE COURT:  Would we not consider the injury to have
09:29:33  3   accrued in April of 2014, and then we add three years?
09:29:40  4        MS. GUNN:  Well, that's the issue, because the
09:29:44  5   statute -- to trigger the statute of limitation is when the
09:29:48  6   injury occurred, and in her case it's not that simple because
09:29:50  7   the studies cited in the long form complaint simply deal with
09:29:56  8   studies of neoadjuvant chemotherapy.  There is a cumulative
09:30:02  9   effect with chemotherapy; so, she had chemotherapy earlier in
09:30:07 10   2013, four rounds -- three rounds, and then she had two more in
09:30:13 11   the fall.
09:30:14 12        THE COURT:  If I give you the latest chemotherapy that
09:30:19 13   was administered to her, that was completed in October 2013;
09:30:26 14   and, so, certainly, if I go to neoadjuvant, we're even further
09:30:35 15   out, but I'm going to give you the latest date that she
09:30:41 16   received treatment, which is October 2013, that's the date it
09:30:44 17   was completed, right?
09:30:45 18        MS. GUNN:  Yes, ma'am.
09:30:46 19        THE COURT:  Well, then --
09:30:53 20        MS. GUNN:  The issue is when was she injured?  When was
09:30:57 21   she injured?
09:31:02 22        THE COURT:  The injury, as defined in the long form
09:31:05 23   complaint, was six months post chemotherapy.  I can go further
09:31:11 24   back, which would be not helpful.  I'm going to give you the
09:31:15 25   latest possible date under the Greer decision.
                              OFFICIAL TRANSCRIPT
```

### Page 22

```
09:31:24  1        I don't know how I -- the long form complaint is
09:31:31  2   pretty clear that it's six months post chemotherapy, so the
09:31:34  3   latest possible date I can give you is October 2013.  I add on
09:31:40  4   six months, and we're at April 2014; so, under the Greer
09:31:46  5   decision, it would have run April 2017.
09:31:55  6        MS. GUNN:  The argument, ma'am, from our perspective,
09:32:00  7   with respect to that long form complaint, the study cited to
09:32:04  8   get to that, what I would consider to be a kind of a random
09:32:08  9   six-month time period, do not address Ms. Galey's specific
09:32:16 10   facts.
09:32:19 11        THE COURT:  Your objections are noted for the record.
09:32:24 12   I think this falls squarely within the decision that was
09:32:27 13   previously made.  I'm going to dismiss this case; but,
09:32:31 14   certainly, your objections are noted for the record.
09:32:37 15        MR. INSOGNA:  Thank you, Your Honor.
09:32:38 16        The next case, Betty Sutton, is one we were
09:32:44 17   notified is not objecting, so that one can come off the list.
09:32:46 18        THE COURT:  But that's going to be subject to the
09:32:50 19   objections as noted by Mr. Lambert had raised.
09:32:51 20        MR. BAEHR:  Right.  The next case is Mary Kate Walton
09:32:59 21   is one where everything from the PFS and SFC, prescription and
09:32:59 22   treatment, state of residence, injury, and the venue selected
09:33:05 23   were all Mississippi.
09:33:09 24        THE COURT:  Yes, ma'am.
09:33:09 25        MS. KREIDER:  Those are my cases, Ms. Young and
                              OFFICIAL TRANSCRIPT
```

### Page 23

```
09:33:09  1   Ms. Walton's case.  They both have factual issues --
09:33:09  2        THE COURT:  Wait.  I can't hear you.
09:33:09  3        MS. KREIDER:  I'm sorry.  Both of my cases have factual
09:33:17  4   issues related to choice of law.  Neither plaintiff resides in
09:33:21  5   Mississippi.
09:33:21  6        THE COURT:  Okay.  So, that would be Mary Kate Walton
09:33:24  7   and Ruby Young?
09:33:25  8        MS. KREIDER:  Yes, ma'am.
09:33:25  9        THE COURT:  Okay.  The Court is going to defer until we
09:33:29 10   determine choice of law.
09:33:31 11        MR. BAEHR:  The next case is going to fall into that
09:33:33 12   same category.  Brenda Shaw was living in Georgia at the time
09:33:40 13   of treatment, it seems.
09:33:41 14        THE COURT:  So, and that's Mr. Stoltz is on the line;
09:33:44 15   so, the Court is going to defer ruling on that.
09:33:48 16        MR. BAEHR:  The same for the next case, Sandra Coleman
09:33:56 17   was living in Mississippi but treated in New Orleans, according
09:34:00 18   to her records.
09:34:00 19        THE COURT:  Okay.  So, that matter will be deferred as
09:34:03 20   well.  Okay.
09:34:07 21        MR. INSOGNA:  Carolyn Huddleston, Your Honor.  This
09:34:07 22   case may appear like one that should be deferred, but I
09:34:14 23   actually think it can be resolved.
09:34:14 24        THE COURT:  Is Mr. Weiman on the line?
09:34:21 25        MR. WEIMAN:  Yes, Your Honor.
                              OFFICIAL TRANSCRIPT
```

### Page 24

```
09:34:22  1        THE COURT:  Thank you.
09:34:22  2        MR. INSOGNA:  So, I have not received Mr. Weiman's
09:34:27  3   objection; so, I'll obviously let him speak to that, but in
09:34:27  4   this case, the potential issue would be, as between Mississippi
09:34:32  5   and Georgia law, plaintiff moved to Mississippi within six
09:34:37  6   months of the end of her chemotherapy.  She lived in Georgia at
09:34:40  7   the time of her treatment.  She currently resides in
09:34:43  8   Mississippi.
09:34:44  9        The only the way Georgia law would apply is if
09:34:49 10   her injury manifested itself while she was still living in
09:34:52 11   Georgia; otherwise, it has to be Mississippi, and Georgia has a
09:34:57 12   two-year statute of limitations.  So, if the injury manifests
09:35:00 13   when she was living in Georgia, which was only in 2012, and the
09:35:03 14   lawsuit was not found in 2017, either Georgia's two-year
09:35:07 15   statute of limitations applies and bars --
09:35:08 16        THE COURT:  I haven't look at Georgia's two-year
09:35:11 17   statute of limitations.  I don't know if I have a discovery
09:35:15 18   rule.  I don't if it -- I don't know any of those things; so,
09:35:16 19   I'm not discussing Georgia at all and whether or not -- but,
09:35:22 20   are you telling me she received chemotherapy in Mississippi,
09:35:25 21   lived in Mississippi, and then moved to Georgia some years
09:35:29 22   later?
09:35:30 23        MR. INSOGNA:  No, she lived in Georgia and received
09:35:33 24   chemotherapy but then moved to --
09:35:34 25        THE COURT:  In Georgia?
                              OFFICIAL TRANSCRIPT
```

25

```
09:35:36  1        MR. INSOGNA:  In Georgia.
09:35:36  2        THE COURT:  Oh, I am not taking that up right now.
09:35:38  3   We're going to defer.
09:35:39  4        MR. INSOGNA:  Okay.
09:35:40  5        THE COURT:  That is definitely in the sub-bucket.
09:35:43  6        MR. INSOGNA:  The next case also at Zoll & Krantz is
09:35:50  7   Mattie Tate.  This is one where plaintiff lived in Mississippi
09:35:53  8   at the time of the treatment and selected Mississippi venue.
09:35:56  9   We've not received an objection.  I'm not sure what it is.
09:35:58 10        THE COURT:  Mr. Weiman.
09:36:00 11        MR. WEIMAN:  Yes, Your Honor.  This case, Ms. Tate,
09:36:03 12   while she lived in Mississippi at the time of treatment, her
09:36:06 13   treatment actually occurred in Tennessee.
09:36:09 14        THE COURT:  Okay.  Then it's going to be deferred as
09:36:12 15   well.
09:36:12 16        Thank you.
09:36:15 17        Betty Haralson, Gomez Trial Attorneys.
09:36:19 18   Ms. Stevens, are you on the line?
09:36:20 19        MS. STEVENS:  Yes.  Good morning, Your Honor.
09:36:22 20   Lindsay Stevens from Gomez Trial Attorneys.
09:36:26 21        THE COURT:  Thank you.
09:36:26 22        MR. BAEHR:  This is one where, again, all treatment,
09:36:28 23   residence, everything took place in Mississippi, venue
09:36:31 24   Mississippi.  We don't know the objections.
09:36:36 25        THE COURT:  Ms. Haralson -- I mean, Ms. Stevens.
```

*OFFICIAL TRANSCRIPT*

26

```
09:36:38  1        MS. STEVENS:  Yes.  So, Your Honor, as to all of our
09:36:42  2   plaintiffs on the hearing list today -- Ms. Haralson,
09:36:45  3   Ms. Harper, Ms. McDowell, and Ms. Wright -- we wanted to assert
09:36:49  4   the same general objections made by Mr. Lambert at the outset
09:36:53  5   of this hearing on the record, but we do have a specific
09:36:58  6   objection to the dismissal of the final case of ours on the
09:36:58  7   list for Ms. Floretta Wright --
09:36:20  8        THE COURT:  Okay.
09:36:20  9        MS. STEVENS:  -- and I can address that with the Court.
09:37:04 10        THE COURT:  All right.  Let me just say as to
09:37:06 11   Betty Haralson, Gloria Harper, Verona McDowell, those cases are
09:37:09 12   dismissed, subject to the general objection that's been briefly
09:37:12 13   raised and preserved.
09:37:13 14        All right.  As to Ms. Wright, Ms. Stevens?
09:37:19 15        MS. STEVENS:  Yes.  Ms. Wright lived in Mississippi at
09:37:23 16   the time of filing her lawsuit up until the time of her death,
09:37:27 17   and we have filed this objection of that and substituted her
09:37:28 18   daughter as plaintiff in her case, but Ms. Wright received all
09:37:31 19   of her cancer treatment, including the docetaxel chemotherapy,
09:37:36 20   in the State of Texas and lived in the State of Texas at the
09:37:40 21   time of her treatment.
09:37:40 22        She alleged that on her short form complaint that
09:37:43 23   the injury incurred in Texas and noted that both the
09:37:48 24   Southern District of Mississippi and/or the Southern District
09:37:51 25   of Texas would be the district court in which remand and trial
```

*OFFICIAL TRANSCRIPT*

27

```
09:37:55  1   would be proper in her case; so, we think that this should also
09:37:58  2   be deferred, and we're happy to brief these choice of law
09:38:01  3   issues.
09:38:01  4        THE COURT:  The Court is going to defer ruling on
09:38:05  5   Ms. Wright.
09:38:05  6        MR. BAEHR:  Thank you, Your Honor.  If I may, this case
09:38:07  7   does raise the question of plaintiffs who selected multiple
09:38:12  8   venues on their SFCs.  I just want to flag that as a tricky
09:38:14  9   issue.  We don't think that's proper, and we think that she
09:38:18 10   selected Mississippi, she's living in Mississippi, and that
09:38:20 11   should be the one that controls, but we understand you're going
09:38:23 12   to defer.
09:38:23 13        THE COURT:  I'm going to defer.  Thank you.
09:38:25 14        MR. BAEHR:  The next case is Lula Gavin, and I think
09:38:30 15   the next three are in the same category, but they are all cases
09:38:33 16   where everything took place in Mississippi -- treatment,
09:38:37 17   prescription, residence, everything is in Mississippi; so, I'll
09:38:40 18   let plaintiff objection.
09:38:41 19        THE COURT:  Mr. Niemeyer, are you on the line?
09:38:46 20        MR. NIEMEYER:  I am, Your Honor.  Good morning.
09:38:46 21        THE COURT:  Good morning.
09:38:42 22        MR. NIEMEYER:  So, Your Honor, what I would like to do
09:38:51 23   is, again, urge you to reconsider your approaches or your
09:38:57 24   approach to these cases, such a harsh remedy for cases that,
09:39:01 25   for the most part, have not undergone discovery, and as
```

*OFFICIAL TRANSCRIPT*

28

```
09:39:05  1   Mr. Lambert pointed out and I would like to add on to some of
09:39:09  2   the things he mentioned, you know, in these instances, even
09:39:15  3   Mississippi law, we would submit requires very case-specific
09:39:21  4   determinations as the Court goes through whether or not the
09:39:24  5   discovery rule is applicable.
09:39:26  6        I would reiterate again that the injury here is
09:39:30  7   not just hair loss, it is permanent hair loss or, more
09:39:35  8   specifically, the failure to regrow hair.  So, the
09:39:39  9   case-specific factual determinations here revolve around
09:39:43 10   whether for each the plaintiff the injury was discoverable or,
09:39:48 11   more specifically, undiscoverable, and going into that, are the
09:39:51 12   facts of what was the nature of the hair loss for each of these
09:39:56 13   women, what inquiries were made, and probably, more
09:39:59 14   importantly, what were they told in response to those inquiries
09:40:03 15   by their doctors or hair stylist or those types of people, and
09:40:06 16   what alternative causes might have been present, including
09:40:10 17   hormonal therapy, those type of things.
09:40:13 18        I would tell the Court then that for each of
09:40:15 19   these three plaintiffs on behalf of my firm -- Ms. Gavin,
09:40:22 20   Ms. Ruffin, and Ms. Walker -- each of them made inquiries to
09:40:25 21   their doctors, and each of them, at different times along the
09:40:29 22   way, were told, hey, don't worry about it, be patient, your
09:40:35 23   hair will grow back.
09:40:36 24        One other thing I will point out as well from a
09:40:39 25   factual situation is a lot of the cases, Mississippi cases,
```

*OFFICIAL TRANSCRIPT*

**Page 29**

```
09:40:42  1   talk about when a diagnosis occurred and that that is when an
09:40:47  2   injury might accrue.  Of course, here the defense is all too
09:40:51  3   quick to point out that these women had not been diagnosed with
09:40:55  4   any injury; so, therefore, they don't have that fact here, and
09:40:59  5   that just goes on to point out the uncertainty and
09:41:07  6   fact-specific nature of when an injury is discovered.
09:41:07  7          Of course, there has been a lot discussed about
09:41:10  8   the master complaint, and I would point out that the master
09:41:14  9   complaint merely says that the injury was permanent after six
09:41:21 10   months, or it can be read that way, but it doesn't say that the
09:41:26 11   plaintiff knew about that permanence at that time.
09:41:31 12          And, in fact, other aspects of the complaint
09:41:33 13   point out that the permanence was unknown to plaintiffs and,
09:41:37 14   frankly, the public until it was disclosed by Santa Fe in its
09:41:42 15   updated label in 2015.
09:41:44 16          So, there is, even with that part of the master
09:41:48 17   complaint, we would urge the Court to define that that still
09:41:53 18   doesn't determine factually when a plaintiff knew or should
09:41:57 19   have known.
09:41:58 20          In fact, the Lofton and Ridgeway cases, as cited
09:42:03 21   in the papers, talk about the fact that the first signs of an
09:42:08 22   injury are not indicative of when that injury accrues but that
09:42:11 23   a jury must determine the time at which the plaintiff knew or
09:42:15 24   by reasonable diligence should have known of his or her illness
09:42:19 25   and the factual determinations of what the plaintiff knew and
```
*OFFICIAL TRANSCRIPT*

**Page 30**

```
09:42:25  1   when, and, of course, the cases that Palmer cited echo that and
09:42:30  2   continue on.
09:42:30  3          So, Judge, for all those reasons, I would urge
09:42:34  4   you not to exact this harsh remedy at this time, to deny the
09:42:41  5   motions at the show cause stage, and adjourn these hearings
09:42:45  6   until these factual determinations can be made.
09:42:48  7          Thank you very much.
09:42:49  8          MR. BAEHR:  Defense -- do you need a statement?
09:42:57  9          THE COURT:  No.  I mean, for the reasons I previously
09:43:02 10   outlined in the Greer decision.
09:43:05 11          I will tell you, I'll go back and read these
09:43:10 12   cases again, but I think as I appreciate it, Mississippi allows
09:43:19 13   an extension in that three year only for latent injuries, and
09:43:23 14   the injury that was complained of in this lawsuit is, by its
09:43:28 15   very nature, not latent.  It's a loss of hair that has been
09:43:32 16   disfiguring; and, so, this court is hard-pressed to see how
09:43:40 17   this is in any way a hidden injury.
09:43:42 18          I understand the argument of counsel, but based
09:43:46 19   upon that, for the reasons previously cited in the Greer
09:43:50 20   decision; so, those cases are dismissed, subject to the
09:43:53 21   objections raised by Mr. Lambert as well as Mr. Niemeyer.
09:43:53 22          Thank you.
09:44:05 23          MR. BAEHR:  That's Lula Gavin, Ida Ruffin,
09:44:09 24   Deloris Walker.
09:44:12 25          That brings us to Cathy Lavender.  This is
```
*OFFICIAL TRANSCRIPT*

**Page 31**

```
09:44:15  1   another case where all treatment and residence, every relevant
09:44:19  2   fact took place in Mississippi, and we don't know the
09:44:22  3   objection.
09:44:22  4          THE COURT:  Okay.  Ms. Lavender is represented by the
09:44:27  5   The Murray Law Firm.  Ms. Myers, are you on the line?
09:44:27  6          MS. MYERS:  Yes, Your Honor, I'm here.
09:44:33  7          To make it simple, Ms. Cathy Lavender and
09:44:37  8   Ms. Delois Lott were both Mississippi plaintiffs who
09:44:39  9   (inaudible) Mississippi.  (Inaudible) two other plaintiffs; so,
09:44:42 10   we're just going to adopt plaintiffs' memorandum in opposition
09:44:45 11   to motion for the rule to show cause to dismiss Mississippi
09:44:48 12   plaintiffs for just those two.
09:44:49 13          THE COURT:  Wait, I can't hear you, ma'am.  Maybe you
09:44:52 14   just need to talk slower because you're on the phone, and it's
09:44:55 15   a little difficult to follow.
09:44:57 16          MS. MYERS:  Okay.  I'm sorry.
09:44:58 17          For Cathy Lavender and Delois Lott, those are
09:45:02 18   both Mississippi plaintiffs who have received treatment in
09:45:05 19   Mississippi.  We are going to (audio distortion) plaintiffs'
09:45:08 20   memorandum in opposition to the motion for the rule to show
09:45:12 21   cause (audio distortion).
09:45:13 22          THE COURT:  Okay.  So, let me just do this:
09:45:15 23   Ms. Cathy Lavender, Ms. Delois Lott are dismissed, subject to
09:45:20 24   the objections raised by the Plaintiffs' Steering Committee.
09:45:25 25          Okay.  Now, Veronica McPhie.
```
*OFFICIAL TRANSCRIPT*

**Page 32**

```
09:45:25  1          MS. BRILLEAUX:  Yes.  Good morning, Your Honor.  I'm
09:45:30  2   sorry.
09:45:30  3          MS. MYERS:  Veronica McPhie, she's resided -- oh, I'm
09:45:33  4   sorry.  She resided in Mississippi, but she received her
09:45:36  5   treatment in Alabama.
09:45:42  6          THE COURT:  Okay.
09:45:42  7          MS. BRILLEAUX:  I did just want to note for the record
09:45:44  8   on this one the short form complaint states that the state of
09:45:45  9   treatment was Alabama, but the records show otherwise, but I
09:45:48 10   understand that you're going to --
09:45:48 11          THE COURT:  I'm going to defer.  There may be a factual
09:45:53 12   determination that we're going to deal with later.
09:45:55 13          All right.  Gladys Taylor.
09:45:58 14          MS. MYERS:  Ms. Gladys Taylor also is our case where
09:46:06 15   she received treatment from both clinics who have locations in
09:46:06 16   Mississippi and Tennessee, so she went to both.
09:46:08 17          THE COURT:  Okay.  The Court is going to defer ruling
09:46:10 18   on Ms. Taylor.
09:46:11 19          Okay.  Thank you.
09:46:14 20          MS. MYERS:  Thank you, Your Honor.
09:46:16 21          THE COURT:  Thank you.
09:46:20 22          Patricia Cunningham and that's the Maher Law
09:46:22 23   Firm.  I had it yesterday and I forgot it -- Fraxedas?
09:46:23 24          MR. FRAXEDAS:  Mr. Fraxedas.  It's Jason Fraxedas,
09:46:23 25   Your Honor.  Good morning.
```
*OFFICIAL TRANSCRIPT*

33

```
09:46:39  1              THE COURT:  Fraxedas.
09:46:39  2              MS. BRILLEAUX:  Your Honor, this was one that we
09:46:42  3   received the objection ahead of time.  We understand that
09:46:45  4   plaintiff is claiming Alabama residence, but we still believe
09:46:50  5   that, just for the record, that even if Alabama law applies,
09:46:54  6   there is a two-year statute of limitations, so under either
09:46:58  7   analysis.
09:46:59  8              THE COURT:  I don't know what the Alabama -- any
09:47:03  9   exception to Alabama's statute of limitation, so I'm not going
09:47:07 10   there.  I've already said that.
09:47:08 11              So, as to Ms. Cunningham, the Court is going to
09:47:11 12   defer.
09:47:13 13              Barbara Moore --
09:47:13 14              MR. FRAXEDAS:  Thank you, Your Honor.
09:47:14 15              THE COURT:  -- Mr. Fraxedas?
09:47:16 16              MR. FRAXEDAS:  Yes, Your Honor.  This case is similar.
09:47:19 17   Ms. Moore lives in Tennessee near the Mississippi border.  All
09:47:22 18   of her treatment, all of her discussions with her oncologist,
09:47:30 19   the decision to prescribe Taxotere occurred within Tennessee.
09:47:35 20   She merely went to one of the locations of her clinic, which
09:47:40 21   has multiple locations just across the border in Mississippi,
09:47:44 22   for the infusions for scheduling reasons, but all of her
09:47:47 23   discussion, all of her follow-up treatment, her surgeries,
09:47:49 24   everything occurred in Tennessee.
09:47:50 25              THE COURT:  All right.  So, Ms. Moore we're going to
                                    OFFICIAL TRANSCRIPT
```

34

```
09:47:52  1   defer ruling on that one as well.
09:47:55  2              Okay.  Thank you.
09:47:55  3              MR. FRAXEDAS:  Thank you, Your Honor.
09:47:56  4              MS. BRILLEAUX:  Your Honor, for the next set of cases,
09:48:00  5   27 through 32, liaison counsel has advised us that plaintiffs'
09:48:05  6   counsel is not dialing in and will not be raising objections
09:48:08  7   outside of the general objections that Mr. Lambert raised.
09:48:11  8              THE COURT:  Okay.  So, that will be Judith August, the
09:48:15  9   Court is going to dismiss.
09:48:16 10              Debra Bolton, that case is dismissed.
09:48:16 11              Elizabeth Hatten, case is dismissed.
09:48:16 12              Mildred Kumar, case is dismissed.
09:48:16 13              Brenda Simmons, case is dismissed.
09:48:16 14              Tell me when to stop.
09:48:21 15              Robin Swarthout, dismissed.
09:48:35 16              MS. BRILLEAUX:  I think that's the last one.
09:48:38 17              THE COURT:  Okay.  Those cases are dismissed, subject
09:48:39 18   to the general objection raised by the Plaintiff Steering
09:48:43 19   Committee.
09:48:45 20              All right.  Lauren Baker.
09:48:49 21              MS. BRILLEAUX:  Yes, Your Honor.  I have for this one
09:48:50 22   that we did not receive an objection, and all of the treatment,
09:48:53 23   all of the relevant facts happened in Mississippi.
09:48:55 24              THE COURT:  All right.  Mr. Root, are you on the line?
09:48:58 25              MR. ROOT:  Yes.  Good morning, Your Honor.
                                    OFFICIAL TRANSCRIPT
```

35

```
09:49:00  1              THE COURT:  Good morning.
09:49:03  2              MR. ROOT:  With Ms. Baker, this ground has been plowed
09:49:06  3   a lot, and we are cognizant of Greer.  In Ms. Baker's case,
09:49:13  4   she's the classic example of someone who did not ignore her
09:49:18  5   physician's advice and mentioned to the physician she had
09:49:21  6   continued hair loss.  In her case, however, her physician
09:49:24  7   thought that tamoxifen might be the cause of her delayed hair
09:49:31  8   treatment and then finally gave her some steroid cream to rub
09:49:35  9   on her scalp and to see if that would correct the condition.
09:49:43 10              If we gave her 30 days to see if it worked, and
09:49:47 11   unfortunately, it didn't, then we're within three years.  So,
09:49:50 12   if we cannot consider the fact that her physicians thought it
09:49:55 13   was due to an underlying use of a different drug than Taxotere
09:50:01 14   and that they weren't sure if it was a permanent injury because
09:50:06 15   they gave her a steroid cream see if it corrected it, we think
09:50:10 16   that the issue of whether it's permanent or latent can't be
09:50:16 17   determined by six months after chemo, and it's these other
09:50:23 18   factors that a jury should consider in determining whether or
09:50:27 19   not the injury, which is actually permanent, you know, alopecia
09:50:33 20   occurred, and we would also like to adopt, of course, the
09:50:37 21   argument of Mr. Lambert from the PSC.
09:50:39 22              Finally, Your Honor, since these are more
09:50:42 23   informal sort of objections, would the Court allow us to submit
09:50:46 24   just a brief memo with medical records in case we need to
09:50:54 25   appeal it and we have a more robust record than just our brief
                                    OFFICIAL TRANSCRIPT
```

36

```
09:50:59  1   discussion on the phone the today?
09:51:01  2              MS. BRILLEAUX:  Your Honor, if I could just briefly
09:51:02  3   respond?  This case does not involve any choice of law issues.
09:51:06  4   It's squarely within your ruling in Greer, so we would ask that
09:51:10  5   it be dismissed.
09:51:10  6              THE COURT:  I think I'm only concerned, are you telling
09:51:13  7   me within the six months she received treatment for her
09:51:22  8   hair loss?
09:51:22  9              MR. ROOT:  No, Your Honor.  She received chemotherapy
09:51:27 10   in 2014, and she received the tamoxifen thereafter, and then
09:51:31 11   they took her off tamoxifen because of a concern of a link
09:51:36 12   between that and her hair loss and gave her a steroid cream,
09:51:40 13   and that didn't work, so certainly, when she was given a
09:51:43 14   treatment for her hair loss and it didn't work, we have to
09:51:45 15   agree she knew.
09:51:46 16              But when her physician is indicating it's not
09:51:51 17   permanent because here is the fix, so to speak, we just think
09:51:56 18   that should be a date that's considered for her knowledge of
09:52:01 19   her -- of her injury and not the six-month calendar date after
09:52:10 20   end of chemotherapy when, like I say, we have the physician who
09:52:15 21   has an expressed belief that the tamoxifen that she's continued
09:52:19 22   to use might be the reason for the hair loss, and it seems a
09:52:24 23   rather draconian result for someone who is actually doing the
09:52:29 24   right thing and actually consulting with her physicians and
09:52:32 25   abiding by their instruction as to what could be the delay.
                                    OFFICIAL TRANSCRIPT
```

37

```
09:52:37  1       MS. BRILLEAUX:  Your Honor, Mr. Baehr may have
09:52:39  2  something to add to this, but I do want to note that given the
09:52:43  3  timeframe that Mr. Root is speaking on brings us into 2015,
09:52:48  4  which, as Your Honor is aware, is the date of the label change;
09:52:51  5  so, you know, we believe that at the time that the label was
09:52:55  6  changed, any conversations that they are having outside of that
09:52:59  7  timeframe are not relevant to this inquiry.
09:53:02  8       THE COURT:  What?
09:53:05  9       MR. BAEHR:  I will step in and just say to the extent
09:53:08 10  that the argument is that the plaintiff, in this unique
09:53:11 11  circumstance they weren't on notice, they couldn't have known
09:53:14 12  of this alleged injury, that argument is sort of uniquely
09:53:18 13  foreclosed here because these conversations took place after
09:53:20 14  the label change.
09:53:22 15       So, the argument that --
09:53:22 16       THE COURT:  Okay.  So, she was supposed to, after
09:53:25 17  chemotherapy, go read the updated label?
09:53:27 18       MR. BAEHR:  Well --
09:53:28 19       THE COURT:  I know.  I understand.  I understand what
09:53:30 20  you're saying, but I've got to tell you this one --
09:53:30 21       MR. ROOT:  But, Your Honor, (speaking simultaneously)
09:53:37 22  was before the label change.
09:53:39 23       THE COURT:  Whoa, whoa.  Mr. Root, stop.
09:53:41 24       I'm going to want more briefing on this one.
09:53:45 25  This is a little peculiar.  This is very different because I
```

OFFICIAL TRANSCRIPT

38

```
09:53:51  1  know Mississippi has a very limited discovery rule.  I
09:53:54  2  understand that, but if she was receiving treatment from her
09:53:58  3  physician during that time for this specific injury, I just
09:54:04  4  don't know, and that is not the same.  This is not the same as
09:54:09  5  someone who is six months after the chemotherapy.
09:54:11  6       It's just a little different.  This is a very,
09:54:16  7  very drastic remedy, and because this one has a peculiar set of
09:54:22  8  facts, and I'm not privy to what those records show, and I want
09:54:28  9  him to be able to preserve his record because the result may
09:54:32 10  ultimately be the same from my end, but I don't think he should
09:54:35 11  be foreclosed from submitting that record to the Court of
09:54:37 12  Appeal, or I may say this one, it may remain in the remand
09:54:46 13  bucket.
09:54:47 14       MR. BAEHR:  Understood, Your Honor.  I just want to --
09:54:48 15  and accepted -- suggest that in this case, just procedurally,
09:54:54 16  perhaps the best way to -- for him to make that record and
09:54:57 17  preserve it for appeal and especially given defendants aren't
09:55:01 18  in a position to know exactly what his factual arguments are --
09:55:05 19       THE COURT:  I think it's going to be -- what?
09:55:08 20       MR. BAEHR:  I was going to suggest that he would have
09:55:10 21  the ability to file a Rule 6 or a motion for consideration to
09:55:14 22  make that record, if you were to dismiss it, to make that
09:55:17 23  record and state his specific --
09:55:19 24       THE COURT:  Well, I understand I could do that, or I
09:55:22 25  could not dismiss it and let the Mississippi court look at it,
```

OFFICIAL TRANSCRIPT

39

```
09:55:26  1  or I can take this one up separately, but I am uncomfortable
09:55:32  2  today doing just that.
09:55:34  3       MR. BAEHR:  Understood.
09:55:35  4       THE COURT:  Okay.  So, I'm going to defer on that
09:55:43  5  issue.
09:55:43  6       Thank you.
09:55:48  7       MS. BRILLEAUX:  The next case is Shirley Bowman, and
09:55:51  8  this was one to which we did not receive an objection.
09:55:55  9       THE COURT:  Mr. McSweeney, are you on the line?
09:55:59 10       MR. MCSWEENEY:  I am, Your Honor.
09:56:03 11  Sweeney/Langevin Law.  Hello?
09:56:07 12       THE COURT:  Hello?  Mr. McSweeney?
09:56:10 13       MR. MCSWEENEY:  Yeah, I'm here, Your Honor.  I don't
09:56:10 14  know what happened there.
09:56:13 15       Your Honor, I think we fall into your prior
09:56:17 16  ruling.  Shirley Bowman had her Taxotere administered in
09:56:21 17  Illinois.
09:56:22 18       Our second case is Catherine Burgin, and hers was
09:56:24 19  administered in California.
09:56:26 20       THE COURT:  Okay.  I'm going to defer on those two
09:56:29 21  cases.
09:56:29 22       Thank you.
09:56:29 23       MR. MCSWEENEY:  Thank you, Your Honor.
09:56:30 24       THE COURT:  Sybil Carter.  Mr. Rockstad, are you on the
09:56:35 25  line?
```

OFFICIAL TRANSCRIPT

40

```
09:56:37  1       MR. ROCKSTAD:  Yes.  Yes, Your Honor, I'm here.  Can
09:56:40  2  you hear me?
09:56:41  3       THE COURT:  Yes.
09:56:41  4       MR. BAEHR:  This case we do -- we are aware of the
09:56:45  5  objection, and it is going to present a choice of law issue.
09:56:50  6       THE COURT:  Okay.  So, we're going to defer on
09:56:54  7  Ms. Carter?
09:56:54  8       MR. BAEHR:  Yes.  The only thing I would point out
09:56:56  9  about this, is this case and the next case, all treatment and
09:56:59 10  everything were in Mississippi, but they claimed venue in the
09:57:03 11  District of New Jersey, and that's the basis of the objection,
09:57:05 12  we have been made aware of.
09:57:07 13       We would say that given we briefed a very set of
09:57:11 14  similar cases in the Michigan hearing or following the Michigan
09:57:16 15  hearing, that we defer briefing on that or postpone briefing on
09:57:21 16  that until you've had a chance to issue your guidance in those
09:57:24 17  cases.
09:57:24 18       THE COURT:  So, we're going to defer on Miriam Walker
09:57:28 19  and Ada Coleman; is that correct?
09:57:30 20       MR. BAEHR:  That's correct.  Actually, the same thing
09:57:31 21  is going to apply --
09:57:31 22       THE COURT:  To Ms. Johns?
09:57:33 23       MR. BAEHR:  To -- well, I think there is -- sorry.
09:57:36 24  Sybil Carter --
09:57:37 25       MR. ROCKSTAD:  (Speaking simultaneously) (Inaudible.)
```

OFFICIAL TRANSCRIPT

## 41

```
09:57:39  1   THE COURT: Excuse me?
09:57:40  2        MR. ROCKSTAD: I think -- Your Honor, this is
09:57:45  3   Trevor Rockstad. I believe all of our cases that are on the
09:57:49  4   list -- they are Carter, Clark, Coleman, Johns, Keaton, Malone,
09:57:53  5   Reed, Rowland, Sinclair, Whalum, and, Wigley -- all have that
09:57:59  6   same issue.
09:58:00  7        THE COURT: They were all filed in New Jersey?
09:58:04  8        MR. BAEHR: The one exception --
09:58:04  9        MR. ROCKSTAD: They were filed in North Carolina
09:58:06 10   because that's where the plaintiffs lived.
09:58:08 11        MR. BAEHR: Yeah. I was going to say the Rowland case
09:58:10 12   was North Carolina, but --
09:58:10 13        THE COURT: But they were all the same. In terms of
09:58:13 14   choice of law.
09:58:15 15        MR. BAEHR: In terms of choice of law issues, unless
09:58:15 16   counsel has anything else to say.
09:55:55 17        MR. ROCKSTAD: Okay. Yeah.
09:58:18 18        THE COURT: These cases are all going to be deferred.
09:58:21 19        Thank you.
09:58:25 20        Okay. Delois Sinclair.
09:58:30 21        MR. BAEHR: That, I think, was still covered -- I think
09:58:32 22   we are at Number 47, Homer Carpenter.
09:58:37 23        THE COURT: Okay. Yeah. I'm sorry. All right.
09:58:42 24        MR. BAEHR: This is a case where every relevant fact
09:58:45 25   was in Mississippi, and venue is Mississippi; so, we don't know
```
OFFICIAL TRANSCRIPT

## 42

```
09:58:50  1   what the objection is.
09:58:51  2        THE COURT: Ms. Barient, are you on the line?
09:58:55  3        MS. BARIENT: Yes, Your Honor. Good morning.
09:58:57  4        THE COURT: Good morning.
09:58:58  5        MS. BARIENT: As far as Number 47, Homer Carpenter, we
09:59:04  6   would just again state our objection for the record, and we're
09:59:09  7   going to adopt the general objections that have already been
09:59:15  8   urged.
09:59:16  9        I do have one client on the group, Pendley Baudin
09:59:25 10   & Coffin group, Number 50 on the docket, Ms. Tonya Cox.
09:59:25 11        THE COURT: Okay.
09:58:52 12        MS. BARIENT: Ms. Cox actually received all of her
09:59:29 13   treatment in the state of Alabama, and her short form complaint
09:59:34 14   alleges either Mississippi or Alabama as the state of injury --
09:59:39 15        THE COURT: All right. We're going to defer--
09:59:41 16        MS. BARIENT: -- (speaking simultaneously) she
09:59:42 17   presented a choice of law.
09:59:44 18        THE COURT: All right. So, I'm going to defer on
09:59:46 19   Ms. Cox. I will dismiss the others, subject to the general
09:59:49 20   objection that's been previously raised. That's
09:59:52 21   Homer Carpenter, Angelia Carr, Dewaine Cauthen,
10:00:01 22   Jacqueline Dillon, Patricia Dixon, Dora Hand, Beverly Harrell,
10:00:15 23   Mary Horn, Sherrell Lewis, Jennifer Randle, Cherylln Smith
10:00:26 24   Hazel Temple, Barbara Thomas.
10:00:34 25        Okay. The Pulaski Law Firm, and I should have
```
OFFICIAL TRANSCRIPT

## 43

```
10:00:35  1   Mr. Stanley, are you on the line?
10:00:36  2        MR. STANLEY: Yes, I'm here. Thank you.
10:00:36  3        THE COURT: Okay.
10:00:39  4        MR. STANLEY: I was not able to confer with the defense
10:00:42  5   counsel. We have cases 61 through 74 on the list. There are
10:00:46  6   two of these where there was a choice of law question, and
10:00:50  7   that's going to be 65 and 72.
10:00:53  8        65 is Ms. Joan Gardner Dey. She lives in
10:00:58  9   Tennessee.
10:00:59 10        72 is Karen Spencer. She was she was treated in
10:01:05 11   Louisiana.
10:01:05 12        Then, for the others, we will adopt the
10:01:08 13   memorandum in opposition and the objections made by leadership.
10:01:11 14        THE COURT: Thank you.
10:01:13 15        All right. So, that's Sarah Bradley,
10:01:19 16   Bonnie Brown, Rita Gann, Diann Jenkins Grant, Carrie Johnson,
10:01:24 17   Lillie Manning, Betty Miller, Kesher Payne, Maxcine Ross,
10:01:32 18   Pearlee Thomas, Angela White. Those cases are dismissed,
10:01:32 19   subject to the objections previously raised.
10:01:36 20        We're going to defer ruling on Joan Gardner Dey
10:01:47 21   and Karen Spencer.
10:01:47 22        Thank you, sir.
10:01:47 23        MR. STANLEY Thank You, Judge.
10:01:47 24        THE COURT: All right. Then we get to the Reyes Browne
10:01:49 25   Reilley Law Firm, and I don't know who is here.
```
OFFICIAL TRANSCRIPT

## 44

```
10:01:52  1        MR. BAEHR: I think they are not appearing, Your Honor,
10:01:55  2   because we agreed to remove the Ayala case. They are not
10:02:02  3   stating an objection in the Dorothy Lewis case, and we agreed
10:02:04  4   to remove the Molly Turner case.
10:02:04  5        THE COURT: So, Molly Turner is deferred, or is it
10:02:04  6   removed?
10:02:11  7        MR. BAEHR: Removed from the list.
10:02:11  8        THE COURT: Okay. Which one? And Mary Ayala.
10:02:14  9        So, we're going to dismiss Dorothy Lewis, subject
10:02:17 10   to the objections previously raised.
10:02:20 11        Mary Ayala is have removed from the list, as is
10:02:23 12   Molly Turner.
10:02:24 13        Thank you.
10:02:24 14        Then we go to The Fears Nachawati Firm.
10:02:32 15        MR. BAEHR: Yes. This one case, they all -- counsel
10:02:35 16   stated they do not intend to object.
10:02:35 17        THE COURT: Okay. With that, the Court is going to
10:02:36 18   dismiss that case, subject to the objections previously raised.
10:02:39 19        MR. BAEHR: The same is true of the next case,
10:02:41 20   Earlene Agnew. Counsel won't object.
10:02:44 21        THE COURT: Okay. That case is dismissed, subject to
10:02:46 22   the previous -- Okay -- previous objections raised. Whatever.
10:02:53 23        MR. BAEHR: All right. The next case is another case
10:02:56 24   where all treatment, everything took place in Mississippi, but
10:02:59 25   the venue selected was the District of New Jersey; so, we think
```
OFFICIAL TRANSCRIPT

45

```
10:03:03  1   you'll want briefing but maybe not until --
10:03:05  2            THE COURT:  Right.  That matter is going to be
10:03:08  3   deferred.
10:03:09  4            Ms. Sulkin, are you on the line?
10:03:12  5            MS. SULKIN:  I am, Your Honor.
10:03:14  6            THE COURT:  Okay.  I think we are able to go through
10:03:16  7   some -- let's cull through these, and then we'll see when we
10:03:18  8   need to talk.
10:03:20  9            Okay.  Myrtis Anderson.  What's the status?
10:03:21 10            MR. BAEHR:  Same category.  Everything in Mississippi
10:03:24 11   except venue in New Jersey.
10:03:28 12            THE COURT:  So, that matter is deferred.
10:03:36 13            MR. BAEHR:  The next three:  Mary Atkinson,
10:03:38 14   Beverly Boler, Lisa Brown, counsel has stated they don't intend
10:03:46 15   to object.
10:03:47 16            THE COURT:  Those --
10:03:48 17            MS. SULKIN:  Your Honor, just for the record, we do
10:03:50 18   object, but we adopt the general objections put forth by
10:03:55 19   Mr. Lambert.
10:03:56 20            THE COURT:  Right.
10:03:56 21            The Court is going to dismiss those three
10:03:59 22   cases -- Mary Atkinson, Beverly Bowler, Lisa Brown -- subject
10:04:03 23   to the objections previously raised by the Plaintiffs' Steering
10:04:07 24   Committee and outlined in the Greer decision.
10:04:09 25            Okay.  Go ahead.
                              OFFICIAL TRANSCRIPT
```

46

```
10:04:10  1            MR. BAEHR:  Next Sandra Burks is everything in
10:04:14  2   Mississippi but New Jersey venue case.
10:04:17  3            THE COURT:  That case is going to be deferred.
10:04:19  4            MR. BAEHR:  The next one, two, three, four cases, I
10:04:23  5   believe, are subject to the general objection but no other
10:04:26  6   objection.
10:04:28  7            THE COURT:  Okay.  That will be Annie Caldwell,
10:04:31  8   Kathryn Chappell, Ruthie Crawford, and Lucille Crenshaw; is
10:04:34  9   that correct, Ms. Sulkin?
10:03:09 10            MS. SULKIN:  Yes, Your Honor.
10:03:09 11            THE COURT:  Those cases are --
10:03:09 12            MS. SULKIN:  (Speaking simultaneously) (Inaudible).
10:04:43 13   Linda Davis is also.
10:04:44 14            THE COURT:  Oh, you're adding Linda Davis to the list,
10:04:46 15   too?
10:03:09 16            MS. SULKIN:  Yes, Your Honor.
10:04:50 17            THE COURT:  All right.  Those five cases are dismissed,
10:04:52 18   subject to the previously raised general objection.
10:04:57 19            Normia Davis.
10:05:01 20            MR. BAEHR:  This is another everything in Mississippi
10:05:03 21   but venue District of New Jersey.
10:05:04 22            THE COURT:  All right.  That matter is deferred.
10:05:07 23            MR. BAEHR:  The next six cases are, I believe, subject
10:05:10 24   only to the general objection.
10:05:12 25            THE COURT:  That would be Sandra Diggs, Angela Durden,
                              OFFICIAL TRANSCRIPT
```

47

```
10:05:17  1   Florence Easter, Cheryl Evans, Benniea Felder, and
10:05:21  2   Carrie Freeman.  Those cases are dismissed, subject to the
10:05:25  3   general objection that was previously raised.
10:05:34  4            Angela Durden, didn't I --
10:05:34  5            MR. BAEHR:  There are a number of Durdens.
10:05:37  6            THE COURT:  Never mind.  All right.  I thought so.
10:05:39  7   Okay.  Thank you.
10:05:40  8            Those are dismissed, subject to --
10:05:41  9            Okay.  Theresa Gathings.
10:05:45 10            MS. SWEET:  Your Honor, this next case and the one
10:05:48 11   after it, the plaintiffs objects based on the fact that they
10:05:50 12   selected New Jersey as remand court, but both of those cases --
10:05:53 13   these are different than the one Santa Fe has just discussed.
10:05:57 14            These cases have 505(b)(2) defendants as the only
10:06:00 15   defendants; and, for example, in the first case, Accord is
10:06:05 16   involved in the case.  Accord is not a New Jersey corporation.
10:06:07 17   There is absolutely no basis whatsoever for New Jersey law to
10:06:10 18   apply to this case.  There is no personal jurisdiction as to
10:06:12 19   Accord in that case.
10:06:14 20            The same is true in Alberta Glasco.  The
10:06:19 21   defendant is Hospira, and that business is located in Illinois.
10:06:23 22            Would you like to brief?
10:06:24 23            THE COURT:  Yeah, I'm not going to rule on personal
10:06:27 24   jurisdiction here today, so those cases are deferred.
10:06:31 25            MS. SWEET:  Thank you, Your Honor.
                              OFFICIAL TRANSCRIPT
```

48

```
10:06:36  1            THE COURT:  Thank you.
10:06:36  2            MR. BAEHR:  The next two are subject to the general
10:06:38  3   objection only.
10:06:40  4            THE COURT:  That's Martha Greathree and Diann Green; is
10:03:09  5   that correct, Ms. Sulkin?
10:03:09  6            MS. SULKIN:  Yes, Your Honor.
10:06:51  7            THE COURT:  All right.  Those cases are dismissed to
10:06:53  8   the general objection previously raised.
10:06:56  9            MR. BAEHR:  Lillie Hogan, Number 102, plaintiff has
10:06:59 10   stated their objection is based on administration in Ohio, but
10:07:05 11   SFC says injury in Mississippi, so I suspect you'll defer.
10:07:06 12            THE COURT:  I'm going to defer.
10:07:07 13            MR. BAEHR:  The next three, Doris Hollinshead,
10:07:11 14   Bobbie Ivory, and Janice James are subject only to the general
10:07:14 15   objection, as are the three following that.
10:07:17 16            THE COURT:  All right.  Is that correct, Ms. Sulkin?
10:07:20 17            MS. SULKIN:  I think the next three after that, can you
10:07:26 18   just read them out because I think the next one I have an
10:07:31 19   objection to is Shirley Johnson, but (inaudible) --
10:07:37 20            THE COURT:  Okay.  All right.  So, I'm going to read
10:07:38 21   this.  Doris Hollinshead, Bobbie Ivory, Janice James,
10:07:43 22   Julia James, and Carolyn Jefferson are dismissed, subject to
10:07:47 23   the general objection.
10:07:50 24            Now, there is a separate objection for
10:07:54 25   Shirley Johnson; is that correct?
                              OFFICIAL TRANSCRIPT
```

49

```
10:07:56  1   MS. SULKIN:  Correct.
10:07:56  2   THE COURT:  What is that objection, ma'am?
10:07:59  3   MS. SULKIN:  Her administration was in Florida.
10:08:04  4   MR. BAEHR:  Your Honor, we believe this case was
10:08:06  5   dismissed yesterday under the CMO 12 hearing; so, we don't
10:08:11  6   think you need to do anything with it.
10:08:14  7   THE COURT:  So, this one might be mooted.
10:08:20  8        Okay.  Mary King.  Where are we with that one?
10:08:23  9   MR. BAEHR:  This is another case where they selected a
10:08:28 10   New Jersey venue, so we think it's --
10:08:31 11   THE COURT:  That's going to be deferred.
10:08:34 12        Okay.  Mr. Baehr, please continue.
10:08:37 13   MR. BAEHR:  The next five -- Gina Kirby, Mamie Lowery,
10:08:42 14   Bobbie McGowan, Tantahneah Merritt, and Linda Faye Miller --
10:08:45 15   are subject only to the general objection.
10:08:47 16   THE COURT:  Is that correct, Ms. Sulkin?
10:08:47 17   MS. SULKIN:  Yes, Your Honor.
10:08:51 18   THE COURT:  Okay.  Those matters are dismissed, subject
10:08:53 19   to the general objection, and that's Gina Kirby, Mamie Lowery,
10:09:00 20   Bobbie McGowan, Tantahneah Merritt, Linda Faye Miller.
10:09:05 21        Okay.  Mr. Baehr.
10:09:06 22   MR. BAEHR:  In Lillie Moore, counsel has objected based
10:09:10 23   upon alleged administration in New Mexico.
10:09:14 24   THE COURT:  That matter is deferred.
10:09:17 25   MS. SULKIN:  Your Honor, for the record, I want to
```
OFFICIAL TRANSCRIPT

50

```
10:09:21  1   clarify what are the allegations that Lillie Moore is connected
10:09:27  2   to Mississippi at all?  In looking through her records, it
10:09:29  3   looks like the administration was in New Mexico, the venue
10:09:36  4   selected was New Mexico, and the state of residence is Arizona.
10:09:41  5   THE COURT:  I can't answer that for you, Ms. Sulkin.
10:09:44  6   That might be a phone call you need have with Mr. Baehr after,
10:09:48  7   but right now I'm deferring on all of it because I don't know
10:09:51  8   what --
10:09:52  9   MS. SULKIN:  Yes, Your Honor.  I just want the
10:09:54 10   defendant to go on the record and let me know.  I want to avoid
10:09:59 11   the Court having to review briefing, if it's possible.
10:10:05 12   MR. BAEHR:  Well, Your Honor, the PFS identified
10:10:09 13   Mississippi as the state of prescription, treatment, and
10:10:11 14   residence during treatment; so, we do think it's appropriate to
10:10:14 15   defer and sort that out.
10:10:17 16   THE COURT:  The PFS did what?
10:10:22 17   MR. BAEHR:  The PFS identified Mississippi as the state
10:10:23 18   of prescription, administration, and residence during
10:10:26 19   treatment.
10:10:27 20   THE COURT:  Okay.  All right.  Minnie Moore, where are
10:10:27 21   we with that one?
10:10:36 22   MR. BAEHR:  Yes.  Minnie Moore and Ruby Moore are
10:10:39 23   subject only to the general objection.
10:10:41 24   THE COURT:  Is that correct, Ms. Sulkin?
10:10:43 25   MS. SULKIN:  Yes, Your Honor.
```
OFFICIAL TRANSCRIPT

51

```
10:10:45  1   THE COURT:  All right.  Minnie Moore and Ruby Moore,
10:10:47  2   those matters are dismissed, subject to the general objection.
10:10:53  3        Deborah Patrick.
10:10:54  4   MR. BAEHR:  This is a Mississippi everything but a
10:10:55  5   New Jersey-selected venue case, as well as the next one,
10:10:59  6   Sandra Rice.
10:10:59  7   THE COURT:  Deborah Patrick and Sandra Rice are going
10:11:04  8   to be deferred.
10:11:06  9        Dorothy Robinson.
10:11:08 10   MR. BAEHR:  Dorothy Robinson and Donna Rodgers,
10:11:08 11   Jennifer Smith, Cassandra Stowers, Mytrice Tumblin,
10:11:15 12   Clare Walker, Brenda Washington, Annie Wells, and Ann White are
10:11:15 13   subject only to the general objection.
10:11:19 14   THE COURT:  Ms. Sulkin; is that correct?
10:11:22 15   MS. SULKIN:  Yes, Your Honor.
10:11:25 16        Jordan, I saw that you skipped Mattie Shoemaker
10:11:30 17   and Mary Smith based on my objection of administration in
10:11:35 18   Tennessee.  Did you remove those from the list?
10:11:36 19   THE COURT:  I don't have those on my list.  I will tell
10:11:41 20   you, I have Dorothy Robinson -- excuse me?
10:03:09 21   MS. SULKIN:  (Audio distortion)  Okay.  Your Honor, I
10:11:43 22   think you might have a more up-to-date list than I do.  I'm in
10:11:48 23   charge of --
10:11:48 24   THE COURT:  Okay.  I have Dorothy Robinson,
10:11:51 25   Donna Rodgers, Jennifer Smith, Cassandra Stowers,
```
OFFICIAL TRANSCRIPT

52

```
10:11:57  1   Mytrice Tumblin, Clare Walker, Brenda Washington, Annie Wells,
10:12:02  2   and Ann White.  Those matters are dismissed, subject to the
10:12:05  3   general objection.
10:12:06  4        Then we go to Florean White.
10:12:10  5   MR. BAEHR:  Yes, Your Honor.  We believe the objection
10:12:14  6   here is due to administration, alleged administration in
10:12:19  7   Tennessee.
10:12:19  8   THE COURT:  All right.  That matter is deferred.
10:12:21  9   MR. BAEHR:  The next three are subject only to the
10:12:24 10   general objection.
10:12:26 11   THE COURT:  Okay.  That would be Mary Windham,
10:12:32 12   Annie Joiner, Shirlon Pigott.  Those matters are dismissed,
10:12:35 13   subject to the general objection; is that correct, Ms. Sulkin?
10:12:39 14   MS. SULKIN:  That's correct.
10:12:40 15   THE COURT:  Thank you.
10:12:41 16   MR. BAEHR:  Rita Berry is objecting based on treatment
10:12:51 17   not in Mississippi or some treatment in Wisconsin and other
10:12:55 18   treatment in Mississippi.
10:12:55 19   THE COURT:  Okay.  The Court is going to defer ruling
10:12:57 20   on that.
10:12:59 21   MR. BAEHR:  The next three are subject only to the
10:13:01 22   general objection.
10:13:01 23   THE COURT:  Okay.  That would be Cynthia Brown,
10:13:07 24   Janice Combest, and Latosha Grant.  Those matters are
10:13:14 25   dismissed, subject to the general objection previously raised;
```
OFFICIAL TRANSCRIPT

```
                                                53
10:13:17  1   is that correct, Ms. Sulkin?
10:13:19  2           MS. SULKIN:  That's correct.
10:13:19  3           THE COURT:  Thank you.
10:13:20  4                   Please proceed.
10:13:21  5           MR. BAEHR:  The next case, Carmelita Hill, alleges
10:13:29  6   treatment in Georgia.
10:13:29  7           THE COURT:  The matter is deferred.
10:13:31  8           MR. BAEHR:  The next one is Vanasser Lampkin is subject
10:13:36  9   only to the general objection.
10:13:37 10           THE COURT:  That matter is dismissed, subject to the
10:13:39 11   general objection; is that correct, Ms. Sulkin?
10:13:42 12           MS. SULKIN:  That's correct.
10:13:43 13           THE COURT:  Thank you.
10:13:44 14           MR. BAEHR:  Juette Martin alleges treatment in
10:13:47 15   New Orleans.
10:13:48 16           THE COURT:  That matter is deferred.
10:13:49 17           MR. BAEHR:  The next two, which are the last two, are
10:13:54 18   subject only to the general objection.
10:13:55 19           THE COURT:  That would be Sherri Reeves and
10:13:59 20   Jimmie Sartin.  Those matters are dismissed, subject to the
10:14:02 21   general objection; is that correct, Ms. Sulkin?
10:14:06 22           MS. SULKIN:  Yes.
10:14:08 23           THE COURT:  Okay.  Thank you.
10:14:11 24                   Congratulations, all.  I thought this would be an
10:14:13 25   all-day process.  I appreciate the cooperation and the matter
                            OFFICIAL TRANSCRIPT
```

```
                                                54
10:14:18  1   in which it was handled.
10:14:21  2                   Anything else?
10:14:23  3           MR. PALMER:  No, Your Honor.
10:14:26  4           THE COURT:  All right.  Court is adjourned.
          5           (WHEREUPON, at 10:14 a.m., the proceedings were
          6   concluded.)
          7                           *   *   *
          8
          9                    REPORTER'S CERTIFICATE
         10
         11       I, Cathy Pepper, Certified Realtime Reporter, Registered
         12   Merit Reporter, Certified Court Reporter in and for the State
         13   of Louisiana, Official Court Reporter for the United States
         14   District Court, Eastern District of Louisiana, do hereby
         15   certify that the foregoing is a true and correct transcript to
         16   the best of my ability and understanding from the record of the
         17   proceedings in the above-entitled and numbered matter.
         18
         19                        s/Cathy Pepper
                                   _____
         20                        Cathy Pepper, CRR, RMR, CCR
                                   Certified Realtime Reporter
         21                        Registered Merit Reporter
                                   Official Court Reporter
         22                        United States District Court
                                   Cathy_Pepper@laed.uscourts.gov
         23
         24
         25
                            OFFICIAL TRANSCRIPT
```