# EXHIBIT A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

***************************************************************

IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION

CIVIL ACTION NO. 16-MD-2740 "H"
NEW ORLEANS, LOUISIANA
WEDNESDAY, JULY 13, 2022, 9:00 A.M.

08:46:34

THIS DOCUMENT RELATES TO:
ALL CASES

***************************************************************

TRANSCRIPT OF MISSISSIPPI SHOW CAUSE PROCEEDINGS
HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:

GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER
BY: M. PALMER LAMBERT, ESQ.
CLAIRE E. KREIDER, ESQ.
1100 POYDRAS STREET, SUITE 2800
NEW ORLEANS, LOUISIANA 70163

MARTZELL BICKFORD & CENTOLA
BY: LAWRENCE J. CENTOLA, ESQ.
338 LAFAYETTE STREET
NEW ORLEANS, LOUISIANA 70130

**P-R-O-C-E-E-D-I-N-G-S**

M O R N I N G   S E S S I O N

WEDNESDAY, JULY 13, 2022

(COURT CALLED TO ORDER)

THE DEPUTY CLERK:  All rise.

THE COURT:  Good morning.

THE DEPUTY CLERK:  Court is in session.  You may be seated.  MDL 1740, in re Taxotere Products Liability Litigation.

MR. BAEHR:  Good morning, Your Honor.

THE COURT:  Good morning, Mr. Baehr.

MR. BAEHR:  Just a few comments to hopefully explain what we've done, where we're at, and kind of how we expect today to go.  So, in the interest of hopefully streamlining today's process, we've reached out to plaintiffs' counsel to try to ascertain the basis of the objections that would be raised and, hopefully, plan a little bit, put them in -- categorize them for you.

In the wake of those conferrals, there have been quite a few cases more come off of the list, and I think you've been provided with a new list of --

THE COURT:  What I have is meaningless.

MR. BAEHR:  Okay.  So, I was going to ask how you

prefer to deal with it. It sounds like the best way is we'll just identify them as we go through.

THE COURT: I think we have to because the numbers that I was provided apparently aren't the numbers that are dismissed. I mean, I just don't even know what this list is anymore, if there are more names, because I was given numbers 42 to 48 and I stop at 40, so I just have no idea.

So, I think the thing to do is perhaps just go one at a time, but I am interested, I understand there were likely buckets, and I would like to know what those buckets look like.

MR. BAEHR: Certainly, Your Honor. So, in that regard, there was a bucket of cases that appear to, per conferral, appeared that the plaintiffs had no connection to Mississippi other than that is their current residence, and so defendants took those cases off the list already, consistent with the position that I'll outline in a second, but those have already been removed.

I will also clarify for any plaintiffs' counsel on the phone who may be like, what? We didn't get an email. We didn't connect with every counsel, and we had some bounce back with emails and stuff, so if you didn't talk to us, that's why. Don't worry.

Okay. So, the buckets. The largest category of cases is those where the plaintiff was either prescribed or

treated or resided in Mississippi during treatment but not necessarily all treatment. So, in other words, there is some connection to another state that plaintiffs would, I think, say is a basis that that state's law should apply.

Understandably and certainly, I would do the same thing if I was on the other side. Different counsel for different plaintiffs have taken different positions about which of those facts is most important. So, in other words, some who were treated in Mississippi but didn't reside there say, well, it's a state of residence and others who are in the opposite position say the opposite.

Defendants think, frankly, that reasonable minds can differ about what that is, but our position is that the state of residence during treatment or if it's specifically known the state of residence six months after the treatment would be the state where the injury occurred according to the definition of the injury in this litigation, and that should be the predominating fact and factor, but like I said, I think --

THE COURT: Reasonable minds can differ.

MR. BAEHR: Reasonable minds can differ. We just think there should be a consistent rule. So, if Your Honor thinks, you know, it's the state of prescription or the state of treatment, we understand. We just -- our greatest advocacy would be for our consistent rule across the cases.

Because of that, we've kept cases on the list

that take the different positions because we don't know how Your Honor is going to rule, and we don't want to foreclose, you know, assume one way or the other, so you will see cases that maybe you think, oh, that's different than what we said our position is. That's because we don't know what you're going to rule.

There are also some objections just based on the facts of the cases. This particular plaintiff, according to their treatment, that they didn't know that their hair loss is permanent or something like that. Defendants think those objections are misplaced in the context of *Greer*. Given that it was a judgement on the pleadings and that Mississippi doesn't have a discovery rule, we don't think those facts are germane.

I think there are still a few cases where there are just general objections that counsel are making to preserve for the record, and defense would just point out that that's accounted for in the dismissal order as we've drafted it, and any existing objections are preserved for appeal.

Then, finally, I'm not sure if there will be any cases where this comes up because there is quite a few cases where we don't yet know what the objection is, but there were, at times, raised objections based on plaintiffs who sought amendments to their short form complaints to change the venue that they had selected in their short form complaints.

Defendants' position on that is simply that the SFC identifies the state or the venue where a case would have been filed, where the suit would have been filed if it hadn't been direct filed, and that's not something that can change. If you filed it in a certain venue, that's where it was filed, and even if it were, it wouldn't be by an amendment to the complaint. That wouldn't be the proper process for that; so, we don't think that should be a basis to disregard the venue that was identified in the short form complaint.

Okay. I think that covers the buckets, and if you don't have any questions --

THE COURT: I do.

MR. BAEHR: Okay. Yeah.

THE COURT: You're not expecting me to rule on the connections to other states today, are you?

MR. BAEHR: Obviously, we defer to you. We would hope --

THE COURT: I mean, I know what you would want me to do, which is to say we dismiss everything that has passed through Mississippi, but I just think these are harsh remedies. I'm dismissing these cases certainly subject to the objections that have been raised and so that those objections can be raised on appeal.

But, one, I think each of those cases, it's probably fact intensive, and I would need to have some

briefing. I don't know, because what you say is we have some where they reside there now, but they didn't reside there during the events in question. That's one case, and then we have cases where they were treated in Mississippi and moved back to their home in Alabama. That's a separate case. I mean, I could see that that's pretty much all over the place, and I don't know how one can make a blanket ruling on that unless you have buckets that identify facts that are very, very similar.

MR. BAEHR: I think there are buckets of facts.

THE COURT: With buckets within that bucket is what I'm saying, I mean sub-buckets.

MR. BAEHR: Yeah, sub-buckets. We certainly do have sort of buckets where, okay, they resided in Mississippi, but they weren't treated there. That could be one bucket, or they were treated in Mississippi but didn't reside there.

THE COURT: Right, right.

MR. BAEHR: And if -- I hear you saying you're not hoping or desiring to rule on those cases.

THE COURT: No, no, I'm not -- I will tell you flatly I am not going to do that today because I think those people are certainly entitled to appropriate briefing so that I have an opportunity to look at what that specific objection is.

Now, people that lived in Mississippi, were treated in Mississippi, have never left Mississippi, you

know --

MR. BAEHR: Understood.

THE COURT: -- I think *Greer* certainly covers unless there is something different, but you have to --

MR. BAEHR: Sorry.

THE COURT: No, go ahead.

MR. BAEHR: Okay. We do have quite a few cases that fall into that bucket as well.

THE COURT: Right.

MR. BAEHR: So, okay. And, that's helpful, I think, with that guidance, we can tentatively plan to organize the briefing by those factual buckets or figure out something that helps with plaintiffs' counsel to group them in a logical way for you.

THE COURT: Okay.

MR. BAEHR: I was -- oh, I also wanted to mention a few of the states present choice of law issues that are very similar to, if not identical to, choice of law issues that were briefed in the wake of the Michigan hearing.

THE COURT: Michigan.

MR. BAEHR: Yes. So, for those cases we might request or we would request just that we forgo additional briefing until you've had a chance to issue rulings in those cases --

THE COURT: Okay.

MR. BAEHR: -- on those briefs.

THE COURT: Okay.

MR. BAEHR: All right. I think that's all I have.

THE COURT: Mr. Lambert, I guess you have something to say.

MR. PALMER: I do. Yes, Your Honor.

Good morning, Your Honor. Palmer Lambert, coliaison counsel for plaintiffs.

Just to streamline the general objections, I have something for the record for the plaintiffs.

May it please the Court. The PSC filed an objection to proceeding with this type of show-cause procedure for such a fact-intensive analysis on the statute of limitations to bar a large swath of the plaintiffs from being able to proceed with case-specific discovery in trials.

First of all, I'm not a Mississippi lawyer, and I don't profess to be an expert in Mississippi law, but I have read some decisions that occurred recently after the *Greer* decision that I would like to point out to the Court for consideration.

The first is a Northern District of Mississippi case called *Munson v. C.R. Bard*, 561 F.Supp. 3d 655, and it was decided September 20, 2021. The Court denied the motion for summary judgment in that case and found that the question for the jury was, quote, The material fact of when plaintiff did know or should have known that her IVC filter had migrated,

perforated and fractured, close quote.

That was left for the jury despite the fact that there was a CT scan more than three years before suit where the radiologist found her IVC filter, quote, may not be in the correct position.

The second case is a Southern District of Mississippi case on March 29th of this year, *Dillon v. Davis* 2022 WL949 --

THE COURT: Wait, wait, wait.

2022.

MR. PALMER: WL949846.

In that case, Judge Ozerden of the Southern District of Mississippi found, quote, The Mississippi Supreme Court has held that the critical question is, and then another quote, is whether in a summary judgment context we can identify as a matter of law the point at which the plaintiff knew or should have known or should have made an inquiry based on the information available to him, close quote.

Then that judge cited the *Weathers* case, which is a Mississippi Supreme Court 2009 case, 14 So. 3d 688.

The reason why those decisions are important is twofold, Your Honor: One, these cases suggest that the analysis is closer to Louisiana's fact-intensive analysis than has been suggested by the defendants to be a more rigid, injury-only inquiry.

Second, the question of application of the latent exception to the SOL should involve a similar analysis of the facts as was done by the Court when it denied, based on oral reasons, the *Khan* second motion for a reconsideration. And that was oral reasons dated July 29, 2021, where the Court similarly evaluated the reasonableness of plaintiffs' actions under Louisiana law and found that there were questions for the jury because of the defendants' routine arguments in this MDL that the plaintiff may not even have the injury, that there are other possible causes, age related, hormone related, as to the reason why a plaintiff has her particular condition.

Finally, in light of the Fifth Circuit's rulings in *Thibodaux* and *Durden*, these plaintiffs, we believe -- and, obviously, we respectfully disagree with the Fifth Circuit's ruling -- but we believe they should have been allowed to amend their complaints consistent with the plaintiffs' proposed third amended master complaint, that's Document 8334-1, because the lack of prejudice to the defendants when there is no case-specific deposition testimony in these particular cases that would be relevant to the question of latency or reasonableness of action. Those plaintiffs are precluded from doing so based on this court's order -- orders, Documents 8702, 8703, and Pretrial Order Number 105.

Ultimately, we believe that a remand court in Mississippi may reasonably determine that there are issues for

the jury to resolve based on the timeliness of these cases and the facts of the individual cases, and we would ask that the Court adjourn this hearing and allow these cases to move forward with remand and discovery.

We think that there are questions related to hormone therapy, whether or not their annual checkups with their doctors lulled them into complacency because the doctors on physical exam didn't suggest they had any problems. We also think that there were sufficient facts, both in Document 4407, the second amended master complaint, and the proposed third amended master complaint that would impede -- that would suggest that these plaintiffs were impeded from their ability to discover their claims.

One final point, Your Honor. The fraudulent concealment exception to the SOL in Mississippi is a two-part test. One is based on whether the defendants did some acts to preclude the plaintiff from determining their claim, and the second is the reasonableness of the plaintiffs' action or inaction in light of all the factual circumstances.

We would just point the Court to the sixth claim for relief in the amended master complaint -- the second amended master complaint, which provides factual support for the first prong of that test, and the 12(b) motion that was argued and presented to this court by the defendants on that particular claim was denied previously by Judge Engelhardt.

09:21:25 That's all I have, Your Honor.

09:21:27 THE COURT: Thank you.

09:21:31 Mr. Baehr.

09:21:32 MR. BAEHR: Defendants would just briefly respond that, 09:21:36 of course, we don't believe this is the forum to appeal or 09:21:39 reconsider or otherwise dispute the *Greer* decision; but, of 09:21:45 course, individual plaintiffs will have that forum if they can 09:21:49 appeal from dismissal if they choose based on their individual 09:21:50 facts under the dismissal order.

09:21:52 All right. The first case that we have is 09:21:56 Mary Miner, and this is a case where we weren't able to confer 09:21:58 with counsel; so, we don't actually know what the objection is.

09:22:04 THE COURT: Okay. I do have a list of the firms. 09:22:09 Hodges.

09:22:10 MR. BAEHR: Your Honor, it's David Hodges on behalf of 09:22:15 Mary Miner. I think this is one we can address pretty quickly.

09:22:21 Ms. Miner never had any connection to Mississippi 09:22:25 until eight years after her treatment, and then she resided and 09:22:31 got all of her treatment in Florida.

09:22:32 THE COURT: I'm going to defer that case, as we 09:22:35 discussed earlier. Thank you.

09:22:37 MR. BAEHR: Just to clarify, defer for briefing per 09:22:40 consultation between the parties; is that correct?

09:22:42 THE COURT: Yes.

09:22:44 I mean, that's what I said. Those are going to

We didn't receive an objection, so I didn't know the basis for it.

THE COURT: I'm going to defer, as we indicated.

Anita Galey.

MR. INSOGNA: Your Honor, Ms. Galey's case is unique. All of the facts -- relevant facts, the state of residence at the time of treatment is Mississippi. She was prescribed in Mississippi. The venue selected in the short form complaint is Mississippi.

We understand from the objection that we received from counsel that Ms. Galey is suggesting that the definition of the injury in the master complaint should not apply to her because her treatment was somewhat intermittent. There were gaps between cycles, and as a result, her contention is that she should be allowed to bring in an expert to suggest if she would not have learned her hair loss was permanent until some later date because the treatment was intermittent.

Obviously, defendant's position is that the master complaint's definition of the injury still controls and that Mississippi law should apply.

THE COURT: Ms. Gunn, are you on the line?

MS. GUNN: Yes, ma'am, I am.

The issue is when was Ms. Galey injured? The statute, as you know, 15-149 subpart A sets the statute of limitation begins to run when the injury occurs and the cause

of action accrues. The question for Ms. Galey is when was that?

She does not fall into the studies that were cited by the master complaint because she had both the neoadjuvant and adjuvant treatment. The neoadjuvant treatment was docetaxel, then she had bilateral mastectomy, and then she had adjuvant treatment. There is a factual dispute about whether the studies cited, which do not take care of her situation, triggered when the six months begins to run.

With respect to Mr. Lambert's citing of the *Munson* case and the *Dillon* case, more recently, this is a factual dispute that should be allowed to play out in discovery in this matter.

I understand that at this point, you know, we're bound by the long form complaint, but her case does not fit into the study --

THE COURT: May I ask a question? I have a couple of questions. When did she complete her adjuvant treatment?

MS. GUNN: The adjuvant treatment was completed in October of 2013.

THE COURT: When did she file her complaint?

MS. GUNN: She filed her complaint in December of 2017.

THE COURT: Did she have any treatment after October of 2013?

MS. GUNN: She did not have any chemotherapy treatment

after October 17th of 2013.

THE COURT: Would we not consider the injury to have accrued in April of 2014, and then we add three years?

MS. GUNN: Well, that's the issue, because the statute -- to trigger the statute of limitation is when the injury occurred, and in her case it's not that simple because the studies cited in the long form complaint simply deal with studies of neoadjuvant chemotherapy. There is a cumulative effect with chemotherapy; so, she had chemotherapy earlier in 2013, four rounds -- three rounds, and then she had two more in the fall.

THE COURT: If I give you the latest chemotherapy that was administered to her, that was completed in October 2013; and, so, certainly, if I go to neoadjuvant, we're even further out, but I'm going to give you the latest date that she received treatment, which is October 2013, that's the date it was completed, right?

MS. GUNN: Yes, ma'am.

THE COURT: Well, then --

MS. GUNN: The issue is when was she injured? When was she injured?

THE COURT: The injury, as defined in the long form complaint, was six months post chemotherapy. I can go further back, which would be not helpful. I'm going to give you the latest possible date under the *Greer* decision.

I don't know how I -- the long form complaint is pretty clear that it's six months post chemotherapy, so the latest possible date I can give you is October 2013. I add on six months, and we're at April 2014; so, under the *Greer* decision, it would have run April 2017.

MS. GUNN: The argument, ma'am, from our perspective, with respect to that long form complaint, the study cited to get to that, what I would consider to be a kind of a random six-month time period, do not address Ms. Galey's specific facts.

THE COURT: Your objections are noted for the record. I think this falls squarely within the decision that was previously made. I'm going to dismiss this case; but, certainly, your objections are noted for the record.

MR. INSOGNA: Thank you, Your Honor.

The next case, Betty Sutton, is one we were notified is not objecting, so that one can come off the list.

THE COURT: But that's going to be subject to the objections as noted by Mr. Lambert had raised.

MR. BAEHR: Right. The next case is Mary Kate Walton is one where everything from the PFS and SFC, prescription and treatment, state of residence, injury, and the venue selected were all Mississippi.

THE COURT: Yes, ma'am.

MS. KREIDER: Those are my cases, Ms. Young and