**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

This document relates to:

Hilda Adams, Case No. 16-cv-17583
Gloria Cooper, Case No. 18-cv-194
Carol Woodson, Case No. 17-cv-12674
Arquice Conley, Case No. 18-cv-9799
Tina Hickey, Case No. 18-cv-4731

MDL No. 2740

SECTION: "H"

JUDGE MILAZZO

MAG. JUDGE NORTH

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' JOINT MOTION TO CERTIFY ORDER FOR**
**INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

Plaintiffs, pursuant to LR 7.5, submit the following memorandum in opposition to
Defendants' Joint Motion to Certify Order for Interlocutory Appeal Pursuant to 28 U.S.C. §
1292(b).

**INTRODUCTION**

Defendants cannot meet *any* of the strict conditions that must be met before an
interlocutory appeal is allowed, let alone all of them. That is abundantly clear from the questions
Defendants seek to certify. Though nominally three, Defendants in reality ask two questions: (i)
whether there was sufficient evidence for a label change based on pre- *or* post-approval data (see
Defendants' questions 1 and 3 regarding severity or frequency and newly acquired information);
and (ii) whether Defendants were obligated to reanalyze pre-approval data at all (see also
Defendants' questions 2 and 3). But none of these questions raises a pure question of law, *i.e.*, an
abstract legal issue that can be decided without having to study the record. Quite the opposite,
Defendants' questions turn on the sufficiency of the evidence.

1

Defendants' questions are also not suited for an interlocutory appeal because they do not raise an issue on which there is a substantial ground for difference of opinion. The Court ruled, after exhaustively studying the record, that pre- *and post*-approval data sufficed for a label change. And there is absolutely no difference of opinion that post-approval data may trigger a brand drug manufacturer's obligation to update a label. Certification here, then, would not serve to answer a purely legal question on which courts substantially disagree. What's more, even as to the role of pre-approval data, there is no substantial ground for difference of opinion. The Court's own opinion cited *Wyeth v. Levine*, 555 U.S. 555 (2009), for the settled proposition that accumulating data is relevant. But even if Defendants could show that this Court somehow broke new ground—and indeed novelty is all Defendants attempt to show—that would not be enough, either. "[S]imply being the first court to rule on a question does not qualify the issue as one over which there is substantial disagreement." *Vintage Assets Inc. v. Tennessee Gas Pipeline Co.*, 2017 WL 3842245, at *1 (E.D. La. Sept. 1, 2017) (Milazzo, J.).

Lastly, Defendants' questions would not materially advance the litigation as a whole because, at best, reversal would only address the particular records considered, and not some overarching purely legal question that could control this MDL and resolve disagreements among courts (of which there are none) in one stroke. If certification is permitted at this stage, not only would it stymie the advancement of the litigation against 505(b)(2) defendants, but it also likely would introduce delay in this Court's plan to move this MDL towards conclusion via remand or resolution, particularly in multi-defendant cases involving Sanofi and a 505(b)(2) defendant.

For these reasons and more, the Court's Order, and the questions Defendants have posed, are not suitable for an immediate interlocutory appeal, and any such an appeal would only further delay, rather than advance, the conclusion of this MDL.

## LEGAL STANDARD

In general, only final judgments can be appealed. *See e.g., United States v. Garner*, 749 F.2d 281, 284-85 (5th Cir. 1985) ("The final judgment rule serves such important interests as preserving the respect due to trial judges by minimizing appellate court interference, reducing the ability of litigants to harass opponents, and keeping the courts unclogged by successions of costly and time-consuming appeals."). Indeed, "there has been a firm congressional policy against interlocutory or 'piecemeal' appeals and courts have consistently given effect to that policy." *Abney v. United States*, 431 U.S. 651, 656 (1977). 28 U.S.C. § 1292(b) is an exception to the final judgment rule and is appropriate only in "exceptional cases." *Garner*, 749 F.2d at 286. Permission for an interlocutory appeal "should not be granted 'simply to determine the correctness of a judgment.'" *Vintage Assets Inc. v. Tennessee Gas Pipeline Co.*, 2017 WL 3842245, at *1 (E.D. La. 2017) (*quoting Clark-Dietz & Assocs. Eng'rs, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 68–69 (5th Cir. 1983)). "The decision regarding whether to certify an order for interlocutory appeal under Section 1292(b) rests within the discretion of the district court." *Harch Hyperbarics, Inc. v. Martinucci*, 2010 WL 4665923, at *2 (E.D. La. 2010).

> For an interlocutory order to be appealable pursuant § 1292(b), three conditions must be satisfied. The trial judge must certify in writing that the order: (1) involves a controlling question of law, (2) substantial ground for difference of opinion on that question of law exists, and (3) immediate appeal from the order may "materially advance the ultimate termination of [the] litigation."

*Vintage Assets*, 2017 WL 3842245, at *1 (quoting 28 U.S.C. § 1292(b)).

A "question of law" for purposes of 28 U.S.C. § 1292(b) "does *not* mean the application of settled law to disputed facts." *Ryan v. Flowserve Corp.,* 444 F. Supp. 2d 718, 722 (N.D. Tex. 2006) (citing *McFarlin v. Conseco Services, LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004)) (emphasis by Court). Rather, a "'question of law' as used in § 1292(b) has reference to a question of the meaning

of a statutory or constitutional provision, regulation, or common law doctrine[.]" *McFarlin*, 381 F.3d at 1258 (quoting *Ahrenholz v. Board of Trustees of the University of Illinois,* 219 F.3d 674, 676 (7th Cir. 2000)). Thus, "[i]t is doubtful whether the denial of summary judgment when the applicable law is clear but there is a genuine issue as to a material fact can properly be certified under section 1292(b)…" *Id.* (quoting *Chappell & Co. v. Frankel,* 367 F.2d 197, 200 n. 4 (2d Cir. 1966)). In other words, "a controlling question of law as used in § 1292(b) is a 'pure question of law'[.]" *Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co.*, 2021 WL 5828720 (W.D. La. July 21, 2021) (citing *Ahrenholz*, 219 F.3d at 676); see also *Clark–Dietz & Assoc.-Eng′rs.*, 702 F.2d at 69 (denying § 1292(b) petition where questions "appear to be merely fact-review questions").

Whether there is substantial ground for difference of opinion over the controlling question of law "has been described as the least troubling for the district courts." *Ryan*, 444 F. Supp.2d at 723. "[J]udges have not been bashful about refusing to find substantial reason to question a ruling of law." *Coates v. Brazoria County Tex.*, 919 F. Supp.2d 863, 868 (S.D. Tex. 2013) (quoting 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3930 at 492 (3d ed. 2012)). Courts have found this requirement satisfied where:

> a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the Court of Appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.

*Id.* (citing 4 Am. Jur. 2d *Appellate Review* § 128 (2005)). "In addition, simply being the first court to rule on a question does not qualify the issue as one over which there is substantial disagreement." *Vintage Assets*, 2017 WL 3842245, at *1 (citing *Ryan,* 444 F. Supp. 2d at 723–24).

Finally, the "materially advance" prong is closely tied to the requirement that a question of law be "controlling". *Ryan*, 444 F. Supp. 2d at 723 (noting that courts have turned to the "materially advance" prong to decide whether an issue of law is controlling). Within a large MDL, this Court has previously determined that an interlocutory appeal will not advance termination of the litigation.

> Here, the Court determines that an immediate appeal from the order would not materially advance the ultimate termination of the litigation. This is a massive MDL, and if the Court begins allowing piece-meal appeals of all issues addressed just to determine the correctness of its Orders, this matter will never be resolved. Thus, the ultimate termination of this litigation would not be advanced; instead, it would be prolonged.

*In re FEMA Trailer Formaldehyde Products Liab. Litig.*, 2010 WL 502700, at *1 (E.D. La. 2010). Similarly, in this case an interlocutory appeal will not advance the MDL because, at best, a reversal would only address the disputed facts about whether and when these Defendants could have made a CBE label change, and whether that date was prior to the dates when these Plaintiffs completed their docetaxel treatments.

## ARGUMENT

A.   **Availability of the CBE regulation is settled under *Wyeth* and like in *Wyeth* Defendants fail to meet their burden of proof on their preemption defense.**

In their first proposed question for interlocutory review, Defendants ask whether the Court must make a finding that "newly acquired information" shows "risks of a different type or of greater severity or frequency."  However, there cannot be substantial grounds for difference of opinion on this question because *Wyeth* acknowledged the "risks of a different type or of greater severity or frequency" language without making the finding requested by Defendants. First, *Wyeth* quoted the language at issue: "If the sponsor … conducts a new analysis of data showing risks of a different type or of greater severity or frequency than did reports previously submitted to the

FDA, the sponsor meets the requirement for 'newly acquired information.'" *Wyeth v. Levine*, 555 U.S. 555, 569 (2009) (quoting 73 Fed. Reg. at 49607). Next, the *Wyeth* Court concluded that "Wyeth could have analyzed the accumulating data and added a stronger warning" in accordance with the CBE regulation. *Id*. Lastly, and importantly, the *Wyeth* Court reached its conclusion without engaging in a factual analysis – as Defendants contend this Court should have done – about whether the information showed risks of a different type or of greater severity or frequency. To the contrary, in *Wyeth* "[t]he record [was] limited concerning what newly acquired information Wyeth had or should have had about the risks," but nonetheless the *Wyeth* Court found that "evidence of at least 20 incidents [of the risk]" was adequate to support a conclusion that Wyeth could have used the CBE regulation to make a label change. *Id*.

As with the defendant in *Wyeth,* the flaw in Defendants' argument arises from their misunderstanding of their burden of proof in establishing a preemption defense. *See* 555 U.S. at 569 ("Wyeth's argument misapprehends … its burden in establishing a pre-emption defense."). In the Order, the Court engaged in a careful analysis regarding which party bears the burden of proving whether Defendants could have used the CBE regulation to change their labels, concluding that "Plaintiffs bear the initial burden of identifying the specific information that they contend the manufacturer could have used to modify the drug's label."[1] With regard to Plaintiffs' initial burden, the Court explained that "Plaintiffs, through their proposed regulatory expert, Dr. Ross, identify certain pieces of information that each Defendant had or should have had that Defendants could have used to change their labels" and that "Plaintiffs have carried their burden in identifying the information they contend Defendants could have used to change their labels[.]"[2]

---

[1] Order and Reasons of August 2, 2022 (Doc. 14477) (hereinafter "Order") at 16-17.
[2] Order at 17.

Because Plaintiffs met their initial burden, the burden then shifts to Defendants so that "the manufacturer bears the burden of proving that it does not meet the requirements of the CBE regulation."[3] In reaching this holding, the Court relied on "the Supreme Court's *Wyeth* and *Albrecht* opinions [which] each contain language indicating that the defendant bears the burden of proving a label change was impossible."[4] "In particular, the *Wyeth* Court found that *'Wyeth ha[d] failed to demonstrate* that it was impossible for it to comply with both federal and state requirements.'"[5]

Although Defendants do not challenge the Court's holding regarding the burden of proof, they approach the issue of a CBE label change as if the burden did not shift to them, arguing that the Court should have made a finding on an issue for which they failed to present evidence. In the Order, the Court quoted the complete definition of "newly acquired information" and the requirement that it "reveal risks of a different type or greater severity or frequency than previously included in submissions to FDA."[6] Next, the Court noted that "Defendants emphasize throughout their briefing that they did not have access to Sanofi's underlying clinical trial data at the time in question."[7] Thus, the Court explained, "[w]ithout knowing the full extent of what was previously submitted to the FDA, Defendants could never determine whether information revealed risks of a different type or greater severity or frequency than included in previous submissions to the FDA."[8]

The Court further explained that "[i]ronically, Accord makes this argument itself," and the Court quoted from Accord's summary judgment brief where Accord argued that it could not

---

[3] Order at 16-17.
[4] Order at 15.
[5] Order at 15 (quoting *Wyeth*, 555 U.S. at 572-73) (emphasis by Court).
[6] Order at 18 (quoting 21 C.F.R. § 314.3(b)). The Court also acknowledged Defendants' argument "that the information identified by Plaintiffs … did not reveal risks of a different type or greater severity or frequency…" Order at 18.
[7] Order at 19.
[8] Order at 19.

determine "risks of a different type or greater severity or frequency" for purposes of a CBE labeling change because it did not have "an initial reference point" (i.e., Sanofi's clinical data).[9] The Court called this argument nonsensical for two reasons:

> (1) § 505(b)(2) manufacturers are responsible for the adequacy of their labels; and (2) despite the FDA's knowledge that § 505(b)(2) NDA holders are approved in reliance on at least some information they do not have a right of reference to, the FDA still (a) made the CBE regulation available to all NDA holders, not just 505(b)(1) NDA holders; and (b) does not impose on § 505(b)(2) NDA holders the duty of sameness it imposes on § 505(j) ANDA holders.[10]

In effect, Defendants are trying to add to Plaintiffs' burden of proof by arguing that the Court should have made a particular finding while at the same time arguing that Defendants are unable to present evidence on that finding. In simple terms, this argument boils down to an admission by Defendants that they cannot meet their burden of proof. *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017) (*quoting Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986)) ("When summary judgment is sought on an affirmative defense … the movant 'must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor.'")

Burden of proof aside, Defendants ignore an elephant in the room: the fact that they *did* use the CBE regulation to change their labels.[11] It is simply not possible for Defendants to argue that federal law prohibited them from changing their label when all three Defendants used the federal CBE regulation to change their labels. Defendants do not point to any "newly acquired

---

[9] Order at 19-20 (quoting Doc. 13425-4 at 22).

[10] Order at 20 (citing *Wyeth v. Levine*, 555 U.S. 555, 570-71 (2009) ("[T]hrough many amendments to the FDCA and to FDA regulations, it has remained a central premise of federal drug regulation that the manufacturer bears responsibility for the content of its label at all times. It is charged both with crafting an adequate label and with ensuring that its warnings remain adequate as long as the drug is on the market.") and 21 C.F.R. § 314.70(c)(6)(iii) (explaining that "*the holder of an approved NDA*" may distribute its drug product after making certain changes to the label without first receiving FDA approval) (emphasis by Court)).

[11] Order at 11 (finding that Accord submitted a CBE on December 30, 2015, Sandoz submitted a CBE on March 7, 2016, and Hospira submitted a CBE on March 31, 2017).

information" that came to light after Plaintiffs were treated with docetaxel that permitted a CBE label change,[12] meaning that Defendants undeniably had the same ability to update their labels before Plaintiffs were treated.

**B.      Defendants' second question regarding federal regulatory duties is irrelevant to the preemption analysis.**

As this Court correctly determined, "whether federal law imposed a duty to analyze the previously submitted data is irrelevant for preemption purposes"[13] and there cannot be substantial grounds for difference of opinion on this question. This is because the question of preemption does not ask what federal law required, but "asks whether it was impossible under federal law to unilaterally add the warning state law required."[14] *See also Mutual Pharmaceutical Co., Inc. v. Bartlett*, 570 U.S. 472, 480 (2013) (holding state law was preempted when "it was impossible for [drug manufacturer] to comply with both its state-law duty to strengthen the warnings on [the drug]'s label and its federal-law duty not to alter [the drug]'s label."); *Estate of Miranda v. Navistar, Incorporated*, 23 F.4th 500, 505 (5th Cir. 2022) (impossibility preemption "occurs when a private party physically cannot comply with both a federal and state law.").

Throughout Defendants' argument about federal regulatory duties, they view the preemption question from the wrong angle. It is not a question of whether Defendants "*should have* … made a CBE labeling change" to comply with their federal law duties.[15] Rather, it is a question of whether Defendants *could have* made a CBE labeling change to comply with their state law duties.[16] Defendants' entire argument in this section is undermined by their misunderstanding

---

[12] Plaintiffs completed their docetaxel treatments between January 12, 2012, and March 23, 2015. *See* Order at 2.

[13] Order at 29.

[14] Order at 22 (citing *Wyeth v. Levine*, 555 U.S. 555, 569 (2009)).

[15] Def. Mem. of Law (Doc. 14517-1) at 8 (emphasis added).

[16] Order at 26 (finding that "Defendants *could have* updated their labels via the CBE regulation") (emphasis added).

of the preemption defense, and the resulting misperception that the Court has created and imposed a federal duty.[17]

For example, Defendants argue that "[b]y holding § 505(b)(2) manufacturers responsible for affirmatively reevaluating pre-approval information submitted by the RLD and considered by the FDA at the time of approval, this Court imposes an obligation contrary to Congress's purpose in creating the § 505(b)(2) pathway in the first place."[18] But the obligation at issue is imposed by state law as a result of Defendants' failure to warn Plaintiffs in compliance with Defendants' state law duty. The only way that a federal regulatory duty becomes relevant to the preemption analysis is if the federal duty prohibits Defendants from making a label change rendering it impossible for Defendants to comply with their state law duty to warn. Defendants have failed to show how they were prohibited by federal law from making such a label change, and the preemption analysis ends there.

In the same vein, the unavailability of a preemption affirmative defense does not equate to "an obligation contrary to Congress's purpose in creating the § 505(b)(2) pathway."[19] Defendants provide no support for their assertion that "Congress's purpose in creating the § 505(b)(2) pathway" was to shield § 505(b)(2) manufacturers from state law liability, and of course there was no such intent. *See Wyeth*, 555 U.S. at 574 ("If Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express preemption provision at some point during the FDCA's 70-year history."). As the Court correctly noted in the Order, § 505(b)(2) manufacturers are NDA holders just like § 505(b)(1) manufacturers, and both are responsible for

---

[17] *See e.g.,* Def. Mem. of Law at 7 (questioning whether there is "a regulatory duty to reanalyze pre-approval data); *Id*. at 8 (arguing that according to the Order Defendants "should have done a re-analysis"); *Id*. (stating that the Order suggests that "manufacturers must re-analyze the pre-approval scientific evidence"); *Id.* at 9 (referring to "an obligation … to re-analyze pre-approval data"); *Id*. (questioning whether "FDA regulations impose an affirmative duty for drug manufacturers to re-analyze pre-approval information").
[18] Def. Mem. of Law at 10.
[19] Def. Mem. of Law at 10.

the adequacy of their labels, and both may use the CBE regulation unilaterally to make a label change to comply with state law duties.[20]

Defendants' assertion that "no other court has interpreted the post-market obligations of a § 505(b)(2) drug manufacturer" is incorrect.[21] First, in *Carter v. APP Pharmaceuticals, LLC*, 2013 WL 5532767, at * 5 (D. Ariz. 2013) the court held that a § 505(b)(2) manufacturer was not entitled to summary judgment on its preemption defense.[22] And second, the only post-market obligation that is relevant to the preemption analysis is whether the manufacturer had the ability to make a label change under the CBE regulation and § 505(b)(2) manufacturers undisputedly have that ability. As such, Defendants' miss their target when taking aim at the Court's Order for purportedly imposing regulatory duties; their complaints should be directed at the settled interpretation of the FDCA and FDA regulations which negate their ability to prevail on a preemption defense.

In essence, Defendants are making a fairness argument, asking whether it is fair to hold a § 505(b)(2) manufacturer responsible for the safety information on its label when it did not develop the underlying safety data for the drug. But fairness is not an element of the preemption defense, nor should a defendant be heard to complain about fairness when seeking to avoid liability in the face of actionable claims.[23] Moreover, Defendants benefited from using the § 505(b)(2) pathway in terms of reduced time and cost to bring their drugs to market;[24] accordingly, perhaps the

---

[20] Order at 20 (citing *Wyeth*, 555 U.S. at 570-71 and 21 C.F.R. § 314.70(c)(6)(iii)). *See also* 21 C.F.R. § 314.3(b) ("505(b)(2) application is an NDA submitted under section 505(b)(1) of the Federal Food, Rug, and Cosmetic Act…").

[21] Def. Mem. of Law at 11.

[22] The defendant in *Carter* argued that it was a generic drug manufacturer and entitled to preemption under *Mensing* but the court disagreed, finding the defendant's product "was approved pursuant to the '505(b)(2) paper NDA' application process" and therefore the defendant was not entitled to preemption. 2013 WL 5532767, at *5. Although the court did not directly analyze whether the defendant could have used the CBE regulation, the court referenced the CBE regulation, *see id.* at *4 ("Plaintiff argues that … [defendant] could have modified its heparin package insert through the FDA's 'Changes Being Effected' ('CBE') regulations…"), and logically the court's conclusion must have presumed that the 505(b)(2) manufacturer had the ability to use the CBE regulation.

[23] *See Gill v. St. Tammany Par. Hosp. Serv. Dist.,* 2018 WL 6787440, at *1 (E.D. La. 2018) (explaining that an affirmative defense serves to "avoid the plaintiff's claim … even if all allegations in the complaint are true").

[24] Order at 5 (summarizing the § 505(b)(2) pathway).

response to Defendants' fairness argument is that one of the costs of using the § 505(b)(2) shortcut to market is immediate and ongoing responsibility for the content of their labels in accordance with "the central premise of federal drug regulation."[25]

### C. Defendants' third question requires factual analysis that is inappropriate for interlocutory review.

In their final argument section, Defendants focus again on the "risks of a different type or greater severity or frequency" language, but now they suggest that the appropriate analysis under the regulation is to compare only the pre- and post-approval publicly available literature to determine if the latter shows increased risks.[26] Under such an analysis, Defendants ask whether the data considered by the Court was "legally sufficient" which is clearly not a question of law that is appropriate for interlocutory review. *McFarlin*, 381 F.3d at 1258 ("'question of law' as used in § 1292(b) has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine").

Regardless, Defendants do not explain how the regulation supports the factual analysis they propose. The regulation refers to "risks of a different type or greater severity or frequency *than previously included in submission to FDA*",[27] not "risks of a different type or greater severity or frequency than previously shown in pre-approval publicly available literature." And, as already discussed, Defendants claim they do not know what information was "previously included in submission to FDA" and so they cannot prove that the CBE regulation would have prohibited them from initiating a CBE label change prior to Plaintiffs' docetaxel treatments.

---

[25] Order at 20 (citing *Wyeth*, 555 U.S. at 570-71 ("a central premise of federal drug regulation [is] that the manufacturer bears responsibility for the content of its label at all times")).
[26] Def. Mem. of Law at 11-13.
[27] 21 C.F.R. § 314.3(b) (emphasis added).

As noted in the Order, the problem with Defendants' argument is that they interpret "newly acquired information" too narrowly[28] by focusing solely on the information they claim they had – or did not have – instead of asking what the CBE regulation permitted. Notably, the CBE regulation permits "[c]hanges in the labeling to *reflect* newly acquired information…"[29] The regulation is not concerned with how Defendants acquired information or what type of analysis they performed; rather, the regulation is concerned only with the end result: that *the label* "reflect" newly acquired information. In this case, Defendants' labels were capable of being changed under the CBE regulation to reflect newly acquired information – evidenced by the fact that Defendants' labels *were* changed under the CBE regulation[30] – regardless of how strenuously Defendants argue that they had not determined for themselves that a CBE label change was possible.

The Court's Order provides a detailed analysis of the information that Defendants could have used as a basis for amending their labels, finding that (1) post-approval analysis of the publicly available pre-approval data would have supported a CBE label change;[31] and (2) an analysis of the post-approval accumulating data was a separate basis for supporting a CBE label change.[32] Regarding pre-approval data, the Court discussed four journal articles and three case reports that Defendants could have analyzed and used as the basis for a CBE label change.[33] Among the pre-approval data, the Court cited Dr. Scot Sedlacek's 2006 study[34] which this Court previously determined "would have 'reveal[ed] risks of a different type or greater severity or frequency than previously included in submission to the FDA." *In re Taxotere (Docetaxel) Prod.*

---

[28] Order at 19.
[29] 21 C.F.R. § 314.70(c)(6)(iii) (emphasis added).
[30] Order at 11 (finding that Accord submitted a CBE on December 30, 2015, Sandoz submitted a CBE on March 7, 2016, and Hospira submitted a CBE on March 31, 2017).
[31] Order at 22-25.
[32] Order at 26-28.
[33] Order at 23-25.
[34] Order at 23.

*Liab. Litig.*, 508 F. Supp. 3d 71, 85 (E.D. La. 2020). In addition, the post-approval literature, consisting of two published studies, two case reports referencing five additional prior reports, and a poster abstract, "could have formed the basis of a CBE change."[35]

By arguing that the information discussed in the Order did not meet the standard for a CBE label change – after acknowledging that the information shows incidences of permanent alopecia[36] – the Defendants advocate for a head-in-the-sand approach to post-market pharmacovigilance. According to Defendants, as long as § 505(b)(2) manufacturers decline to investigate unlabeled risks that they know or should know about, then the manufacturers can avoid state law liability. Such an approach, however, directly contradicts FDA guidance on good pharmacovigilance practices.[37] *See also Wyeth*, 555 U.S. at 571 ("Manufacturers continue to have a responsibility under Federal law … to maintain their labeling and update the labeling with new safety information.") (quoting 73 Fed. Reg. 49605). Notably, Defendants do not claim that they investigated permanent alopecia in response to the medical literature and determined that a CBE label change was not warranted; instead, they seem to claim that as long as they did not conduct an investigation then a label change was not warranted. Of course, even this argument cannot help Defendants because, again, preemption asks not whether a label change *should have* been made, but whether a label change *could have* been made.

---

[35] Order at 26-28.
[36] Def. Mem. of Law at 12.
[37] *Guidance For Industry Good Pharmacovigilance Practices and Pharmacoepidemiologic Assessment*, 2005 WL 3628217 (March 2005), at *8 (providing that "new unlabeled adverse events" and "an apparent increase in the severity of a labeled event" are "safety signals that may warrant further investigation"). The guidance also notes that "Spontaneous case reports of adverse events submitted to the sponsor and FDA, and reports from other sources, *such as the medical literature* or clinical studies, may generate signals of adverse effects of drugs." *Id*. at *4 (emphasis added).

## CONCLUSION

Under the FDCA, FDA regulations, and *Wyeth*, Defendants have failed to show that it was impossible for them to make a label change under the CBE regulation. This conclusion is not answering a question of law nor is it amenable to substantial grounds for difference of opinion and, therefore, Defendants fail to show that this is an exceptional case for which an interlocutory appeal is warranted.

Dated: September 22, 2022                    Respectfully submitted,


*/s/ Christopher L. Coffin*                    */s/ Karen B. Menzies*
Christopher L. Coffin (#27902)              Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.        GIBBS LAW GROUP LLP
1100 Poydras Street, Suite 2225            6701 Center Drive West, Suite 1400
New Orleans, Louisiana 70163              Los Angeles, California 90045
Phone: (504) 355-0086                     Telephone: 510-350-9700
Fax: (504) 355-0089                        Facsimile: 510-350-9701
ccoffin@pbclawfirm.com                    kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*                 *Plaintiffs' Co-Lead Counsel*


*/s/M. Palmer Lambert*                       */s/Dawn M. Barrios*
M. Palmer Lambert (#33228)               Dawn M. Barrios (#2821)
GAINSBURGH BENJAMIN DAVID            BARRIOS, KINGSDORF & CASTEIX, LLP
MEUNIER & WARSHAUER, LLC             701 Poydras Street, Suite 3650
2800 Energy Centre, 1100 Poydras Street    New Orleans, LA 70139
New Orleans, LA 70163-2800               Phone: 504-524-3300
Phone: 504-522-2304                       Fax: 504-524-3313
Fax: 504-528-9973                         barrios@bkc-law.com
plambert@gainsben.com

                                          *Plaintiffs' Co-Liaison Counsel*
*Plaintiffs' Co-Liaison Counsel*


## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

J. Kyle Bachus
Bachus & Schanker, LLC
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

John Gomez
The Gomez Law Firm, PLLC
655 West Broadway, Suite 1700
San Diego, CA 92101

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045 Phone:
510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Jessica Perez Reynolds
Pendley, Baudin & Coffin
P.O. Drawer 71
24110 Eden Street

Phone: (619) 237.3490
Fax: 619.237.3496.
john@thegomezfirm.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, FL 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904 15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@amalaw.com

Plaquemine, LA 70765
Phone: (225) 687-6396
Fax: (225) 687-6398
jperez@pbclawfirm.com

Darin L. Schanker
Bachus Schanker
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
dls@coloradolaw.net

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Zachary Wool
Barrios Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
zwool@bkc-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ M. Palmer Lambert
M. PALMER LAMBERT