UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2740** |
| | Section: "H" (5) |
| | **Judge Milazzo** |
| **THIS DOCUMENT RELATES TO: ALL CASES** | |

### MEMORANDUM IN OPPOSITION TO THE PSC'S MOTION TO MODIFY PRETRIAL ORDER NO. 19

Johnson Law Group ("JLG"), pursuant to LR 7.5, respectfully submits the following memorandum in opposition to PSC's Motion to Modify Pretrial Order No.19 ("PTO 19").

### INTRODUCTION

The undersigned counsel, JLG representing 652 active Plaintiffs in this MDL, submit this response, objecting to the Plaintiff Steering Committee's ("PSC") effort to increase the MDL common benefit assessments. JLG is a reluctant objector in this dispute, as JLG has served alongside many of the PSC's members in other litigations where assessments have been levied. JLG does not object to the PSC being compensated by a common benefit fund, in fact JLG believes the PSC has worked tireless hours in this case. However, the PSC's request to modify PTO 19 is unsubstantiated, and more likely than not, serves to hinder a quick resolution through settlement and hinder law firms' ability to litigate their own cases outside of this MDL. While the MDL has been ongoing since 2016, and both hours and resources have been expended, the PSC has provided no basis for their request to increase the common benefit assessment by nearly 150% - from 8% to a total of 19.75%. This increase in fees is requested without any evidence as to why such a dramatic increase is necessary and without any indication that they will be able to successfully negotiate a global settlement likely to be accepted by Plaintiffs. As explained in more detail below, the PSC's request is premature, fails to follow any reasonable or accepted methodology employed by courts to assess the reasonableness and appropriateness of the amount of common benefit fees, and is not comparable or reasonable. Therefore, the PSC's request to modify PTO No. 19 should be denied.

1

**BACKGROUND**

1. October 4, 2016, the Judicial Panel on Multidistrict Litigation determined that the Plaintiffs' claims involved a common question of fact and that centralization under 20 U.S.C. § 1407 was appropriate. Doc. 14691.

2. November 17, 2016, the Court appointed the Plaintiff's Steering Committee. Doc. 104.

3. February 23, 2017, the Court adopted the PSC's proposed common benefit order establishing a six (6) percent hold back fee for attorney's fees and two (2) percent holdback fee for reimbursement of common benefit expenses. Doc. 262.

4. Since that time there have been an additional 107 pretrial orders. Doc. 14691-1 at 3-11.

5. September 16, 2019, the first Bellwether trial began, concluding with a defense verdict on September 26, 2019. Doc. 14691 at 6.

6. November 8, 2021, the second Bellwether trial began, concluding with a defense verdict on November 18, 2021.[1] *Id.* at 6-7.

7. Since that time no other bellwether trials have occurred since all eight trial plaintiffs' cases were dismissed. *Id* at 7.

8. April 19, 2022, the Court entered CMO 33, establishing the procedure for the selection, discovery, and remand for Wave one cases. Doc. 14045.

9. June 13, 2022, the Court entered CMO 34-A, stating that all four depositions (Plaintiff, Prescriber, Treater, and Sales Representative) must be completed seven months from June 3, 2022. Doc. 14292.

10. September 6, 2022, the PSC filed proposed Pretrial Order No. 19A requesting to increase the common benefit attorneys' fees from 6% of each plaintiffs' gross monetary recovery to 15% of the gross monetary recovery and increase the holdback for common benefit costs from 2% of the gross monetary recovery to 4.75% of the gross monetary recovery. Doc. 14621-2.

---

[1] This case is currently on appeal; oral argument regarding the Plaintiff's Rule 60(b) motion is set for September 14, 2022. Doc. 14455.

**ARGUMENT**

**A. The PSC's Request for an Increase in Common Benefit Fees is Premature**

JLG does not deny that it is common practice for common benefit assessments to increase in percentage towards the end of a case, in order to compensate the attorneys responsible for steering the case to a resolution. For example, in *In Re Tylenol (Acetaminophen) Marketing Sales Practices and Products Liability Litigation,* MDL No. 2436, Dkt. 435 (E.D. Pa. Feb. 22, 2017), Judge Stengel increased the common benefit holdback assessment from 10% to 19% *after* a global settlement was reached. In March 2020, Judge Fallon, in *In re Xarelto* ordered the common benefit fund be set as a 12% fee assessment and 2.75% cost assessment, *after* a settlement was reached in March 2019. *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, MDL 2592, Doc. 17634, (E.D. La. March 23, 2020). *See also, In Re Fresenius Granuflo/Naturalyte Dialysate Products Liability Litigation*, MDL No. 2428, Dkt. 1769 (D. MA. Nov. 9, 2016) (MDL Court increased the common benefit assessment amount from 9% to 11% *after* a $250 million settlement was reached with most of the claimants); *Turner, et al v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830 (E.D. La. 2007) (17% fee assessment was granted after the Court determined the settlement was fair and reasonable for the **class**); *In re FEMA Trailer Formadlehyde Prod. Liab. Litig.,* MDL 1873, Dkt. 25888, (E.D. La. Sept., 27, 2012) (global settlement reached on behalf of all claimants in the class action); *In re Vioxx Prod. Liab. Litig.*, 760 F. Supp. 2d 640, 649 (E.D. La. 2010) (Following a **global settlement** of multidistrict products liability litigation involving a prescription drug, liaison counsel filed a motion for an award of common benefit counsel fees and reimbursement of expenses).

"The most important factor in determining the reasonableness of a common benefit fund fee is the 'degree of the success obtained.'" *In re Cook Med., Inc., Pelvic Repair Sys. Prod. Liab. Litig.,* 365 F. Supp. 3d 685, 700 (S.D.W. Va. 2019) *quoting Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). "Success is determined by the gross recovery, the number of individuals who benefit from settlements and verdicts, the degree to which plaintiffs are fully compensated, and the benefit to the public at large." *Id. (Deepwater Horizon*, 2016 WL 6215974, at *18; *and In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 553 F.Supp.2d 442, 472–73 (E.D.Pa. 2008)).

However, no resolution for this MDL is pending. To the contrary, since the inception of the MDL there have been no Plaintiff verdicts and there are still over 11,000 cases pending. Additionally, remand for these cases just began in April of this year in waves of 200 plaintiffs. The extent of the remand process, the time and effort still needed, and the likelihood and degree of successful resolution, is unforeseen at this time.

Therefore, at best the PSC's request is premature. The numerous examples the PSC uses to show that their request is not exorbitant are oppositional, or are not factually similar. In class actions the beneficiary of the common benefit work is the claimant; in MDLs the beneficiary is the individually retained attorney (contract attorney). *See Eldon E. Fallon, Common Benefit Fees in Multidistrict Litigation*, 74 La. L. Rev. 371, 376 (2014). For example, *Turner* and *In re FEMA Trailer Formaldehyde* are both class cases, which are governed differently when assessing all fees and expenses within an MDL. Therefore the common benefit fee assessments are not comparable with MDL assessments, as it is the claimants in class actions who pay the CBF and the fees are not extracted from each plaintiffs' individually retained attorney's fees as they are in MDLs. *Id.* In *In re Fresenius Granuflo/Naturalyte,* the PSC requested a 2% increase of the common benefit assessment, which is less than a fifth of what the PSC in this case is requesting. In *In re Testosterone Replacement Therapy Prod. Liab. Litig.,* the assessment only increased for those who did not sign the participation agreement and not for *all* the plaintiffs in the MDL. *In re Testosterone Replacement Therapy Prod. Liab. Litig.,* MDL No. 2545, Corrected CMO No. 16, (N.D. Ill. Nov. 25, 2014). Therefore, the increased assessments cannot be justified.

### B. The PSC is Not Using the Correct Methodology in Requesting Such a Substantial Increase in Common Benefit Fees.

Attorney's fees and costs, authorized by law or the agreement of the parties, must be reasonable. Fed. R. Civ. P. 23(h). "The decision of an award of attorney fees in a common-fund case is committed to the sound discretion of the trial court, which must consider the unique contours of the case." Manual for Complex Litigation § 14.121 (4th ed. 2004).

4

Over the years, courts have employed various methods for determining the reasonableness of MDL fees and employed one of three methods: 1) the lodestar method, which entails multiplying the reasonable hours expended on the litigation by an adjusted reasonable hourly rate; (2) the percentage method, in which the court compensates attorneys who recovered some identifiable sum by awarding them a fraction of that sum; or (3) the blended method, a combination of both methods. In most cases the Court will employ one of these methods in determining how common benefit fees should be allocated. See Eldon E. Fallon, Common Benefit Fees in Multidistrict Litigation, 74 La. L. Rev. 371, 381 (2014). It is appropriate to note that the blending method is most in line with fifth circuit precedent. *In re. Vioxx Prods. Liab. Litig.* 760 F. Supp. 2d 640, 652 (E.D. La. 2010). The PSC does not employ any method when requesting such a steep increase in fees. While the PSC does not identify any method for determining this increase, their request most closely resembles the Lodestar method because neither other method can be utilized at this time since no common fund has been secured for the Plaintiffs nor has any bellwether trial been successfully litigated.

### I.     PSC's Request Fails under the Lodestar Method

While it is premature to use the blended percentage method, which many fifth circuit courts in the past have determined as the best method for calculating reasonable attorney fees in a litigation, the PSC's arguments still fail under the Lodestar method. *Id.* This method has been widely criticized by many courts and commentators would note this case is an example of its potential for manipulation. *See Vaughn R. Walker & Ben Horwich, The Ethical Imperative of a Lodestar Cross-Check: Judicial Misgivings About "Reasonable Percentage" Fees in Common Fund Cases, 18 Geo. J. Legal Ethics 1453, 1456 (2005) (summarizing Court Awarded Attorney Case 2:14-md-02592-EEF-MBN Document 17634 Filed 03/24/20 Page 8 of 23 9 Fees: Report of the Third Circuit Task Force, 108 F.R.D. 237 (1985)).* The Lodestar method first assesses how many hours were spent on the case and then establishes an hourly rate based on 12 factors known as the *Johnson* factors. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717 (5th Cir. 1974). All the factors are taken into consideration when determining common benefit fees under this method. These factors include: (a) the time and labor required; (b) the novelty and difficulty of the questions; (c) the skill required to perform the legal service properly; (d) the preclusion of other employment

by the attorneys due to acceptance of the case; (e) the customary fee; (f) whether the fee is fixed or contingent; (g) time limitations imposed by the client or circumstances; (h) the amount involved and the results obtained; (i) the experience, reputation, and ability of the attorneys; (j) the "undesirability" of the case; (k) the nature and length of the professional relationship with the client; and (l) awards in similar cases. *Id.* at 717-19*; see also Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990). Construing the PSC's Motion and Memorandum in light of the *Johnson* factors, the PSC has provided meager support at best, for its 11.75% assessment increase.

The PSC entirely relies on the representations that (1) "time and labor" have been and will continue to be significant in this litigation as the remand process continues and (2) "the skills required to perform the legal services" rendered will continue to require significant resources and skill. Doc. 4621-1 at 2-4. However, beyond these vague statements, and providing a few examples, the PSC offers no specific reasons for why such an extraordinary increase is justified in this litigation. Based on the PSC's motion they have not been able to note any of the required factors that are usually provided to a Court when assessing CBFs (the exact time and labor put into the case, positive results obtained, exact expenses incurred, etc.). In fact, the two generalities offered by the PSC appear to support an argument in favor of the individually retained attorneys outside of the PSC.

Upon remand of cases, the individually retained attorneys will shoulder the burdens associated with individualized litigation in numerous transferor courts. An increase in the common benefit assessment, would in fact shift attorneys' fees from the attorneys that will be required to handle the complex litigation across numerous courts to the PSC, whose work for the common benefit appears to be nearly complete at this stage absent an impending global settlement resolution.

Furthermore, the PSC makes no specific argument as to the skill requirement to properly perform the necessary legal services, the customary fee (only providing examples from a handful of MDLs and Class Actions without any explanation), the results achieved, the actual time already put into the case, and any evidence of a fee award. However, as the remand process is still in its infancy, we have no way of knowing at this time how much common benefit fund work remains, if any, and if such work will result in

positive outcomes for the Plaintiffs in this MDL. JLG must either litigate their cases individually or negotiate a settlement on behalf of its own clients. Just as it would be unfair for the Plaintiffs' firms in this MDL to be free riders in accessing the PSC's common benefit work, it would likewise be equally unfair for the PSC to be a free rider in sharing the benefits of the results that are attributable to each Plaintiffs' firm's work that was above and beyond the common fund work and materials. Thus, while a fair and reasonable common benefit fee will be assessed, there is no current metric by which to evaluate the fairness or reasonableness of this fee increase. There is not enough evidence or information to determine if the CBF increase is necessary and therefore should not be entertained by the Court until such time as there is more clarity in the resulting resolution, if any, of the Plaintiffs' claims.

### C. The PSC's Requested Increase is Neither Comparable to Other PSCs Common Benefit Assessments Nor Reasonable.

As stated above, JLG does not deny that the PSC has done a substantial amount of work in this MDL, however the increase that the PSC is requesting is not supported by current or past MDLs. The percentages used by the PSC are only guideposts at best; each case, including this one, must be analyzed on its own basis with the objective of determining a *reasonable* fee.

The effort of the PSC thus far closely resembles that of the PSC in the Xarelto MDL 2592, litigation. In both litigations the PSCs went through extensive expert discovery, Daubert motions, countless hours engaging in discovery disputes, kept the MDL Court informed about the state court litigation, and many other numerous tasks including remand. Doc. 14621-2 at 2 *also see,* In *re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, MDL 2592, Doc. 17634, at 3-4 (E.D. La. March 23, 2020). Also, in both MDLs there were no Plaintiffs' bellwether verdicts. However, the Xarelto, litigation had over 30,000 Plaintiffs' cases filed, a global settlement, a remand process that had been going on for over a year, and a total of six bellwether trials. Furthermore, it must be noted that the Xarelto PSC waited until *after* a global settlement was fully funded and hours and fees had been assessed before requesting the Court to grant a 12% CBF to cover fees and a 2.75% CBF to cover expenses; which is still a far cry from the 19.75% increase requested in this litigation. *Id.*

7

Also comparatively, in *In re: Roundup Prod. Liab. Litig.,* where, unlike in Xarelto, there is no global settlement, the PSC requested an increase in the holdback percentage based on the arbitrary notion that an increase was necessary for the PSC to recuperate the time and expenses already endured and in the future. Dkt. 14621-2 at *2In re: Roundup Products Liab. Litig.*, at *15-16 2021 WL 3161590 (N.D. Cal. 2021). However, **the PSC only requested a 1.75% increase in the CBF**. *Id.* While Judge Chhabria was reluctant to even grant this increase, he did so under the caveat that it was not guaranteed and would still be only held in a fund until the Special Master provided recommendations as to how the funds should be distributed. *Id.* In this MDL, as stated above there have been no substantial settlements, no plaintiff's verdicts, and the increase requested is 11.75[2]%.

The percentage holdback fee is not informed by the facts and circumstances of this case. It is not comparable or consistent and will only delay the plaintiffs in getting paid their potential just reward and the PSC's motion should be denied.

**D. The PSC's Request to Increase the Common Benefit Costs is Burdensome to the Plaintiffs**

It is undisputed that, "class action counsel who create a common fund for the benefit of the class…are entitled to reimbursement of reasonable litigation expenses for that fund." *In re.* Pool Prod. Distribution Mkt. Antitrust Litig. MDL 2328, 2015 WL 4528880, at *18 (E.D. La. July 27, 2015). However, the requested reimbursement fund should not be an award to the attorneys for their work but only to restore the status quo. *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, MDL 2592, Doc. 17634, at 22 (E.D. La. March 23, 2020). The requested expenses may not, "cannibalize the entire…settlement." *Id. quoting In re. Katrina Canal Breaches Litig.,* 628 F. 3d 185, 186 (5th Cir. 2010). Therefore, the Court must review the estimated expenses the PSC is requesting to have reimbursed. However, that is not possible in this case. The PSC's request is based on generalized representations, where no assessment can be made. The PSC is requesting the Court to increase the fund almost 150% without providing a ledger of the expenses incurred.

---

[2] In the 3M earplug litigation (MDL 2885), formed in 2019, the common benefit is **only 9%.** *In re: 3M Combat Arms Earplug Prod. Liab. Litig.*, 3:19-md-02885, Doc. 1659 at 6 (N.D. Fla. Feb. 17, 2021). This PSC's requested increase alone, is over 2.75% higher than that in MDL 2885, where there have been far less bellwether trials not to mention verdicts.

Furthermore, the request, as stated above is 2% higher than *In re. Xarelto* MDL 2592, Doc. 17634, at 21, 2.75% higher than *In re Bair Huggar Forced Air Warming Devices Prod. Liab. Litig,* MDL No. 2666, PTO No. 9 Establishing Common Benefit Fee and Expense Funds, May 24, 2016 (D. Minn.) and *In re Testosterone Replacement Therapy Prod. Liab. Litig.*,. MDL No. 2545, Corrected CMO No. 16, Nov. 25, 2014 (N.D. Ill.) There is no basis to determine whether the sum requested is fair to the plaintiffs in this litigation. Furthermore, unlike fees the common benefit expense fund primarily, if not completely, comes from the plaintiffs' recovery and not from the attorney's fees. The PSC is requesting the amount to be almost 5% of the gross settlement of each individual plaintiff, which does not include the expenses incurred by each Plaintiff's individual attorneys. The increase the in the common benefit cost funds will be extremely burdensome and ask the Plaintiffs to wait for almost 5% of their gross recovery until the CBF can be assessed, which could take years. This large holdback could disincentivize plaintiffs in agreeing to future settlements or taking their cases further in litigation when a 5% cost assessment will already be levied against their case. The PSC has not provided substantial evidence in its request to increase the common benefit cost fund considerably, but only makes vague generalities about the *significant resources invested.* Dkt. 14621-1 at 4. Therefore, the evidence provided does not support a finding of a fair and equitable increase in the common benefit cost fund and should not be granted.

## CONCLUSION

In evaluating whether the PSC's proposed amended assessment is fair and reasonable, the Court must be certain that the percentages are not "completely arbitrary, devoid of all reality, or inconsistent with usual fees for the type of case involved." Eldon E. Fallon, Common Benefit Fees in MDL Cases, 74 La. L. Rev. 323 (2014). The PSC's request instead is arbitrary, excessive, inconsistent with usual fees, and is premature at best because the PSC does not provide any objective metrics to assess their request. The limited amount of support and reasoning offered by the PSC does not warrant its request. Accordingly, JLG respectfully requests the Court deny the PSC's motion for any modification of PTO No. 19 to increase the common benefit attorney's fees and costs holdback absent more substantiated evidentiary support with metrics that can be evaluated.

Dated: September 27, 2022                                            Respectfully submitted,

                                                  JOHNSON LAW GROUP

/s/ *Russell W. Lewis IV*
Russell W. Lewis IV FL Bar # 0100755
Pierce Jones TX Bar # 24110061
JOHNSON LAW GROUP
2925 Richmond Avenue Ste. 1700
Houston, TX 77098
Telephone: (713) 626-9336
Facsimile: (713) 583-9460
Email: taxotere@johnsonlawgroup.com

CERTIFICATE OF SERVICE

      I hereby certify that on September 27, 2022 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

Dated: September 27, 2022

                                                /s/ *Russell W. Lewis IV*
                                                Russell W. Lewis IV

                                                /s/ *Pierce Jones*
                                                Pierce Jones