UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)            MDL NO. 16-2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:
ALL CASES

## DEFENDANTS' MEMORANDUM IN OPPOSITION
## TO PSC'S MOTION TO MODIFY PRETRIAL ORDER NO. 19

Defendants sanofi-aventis U.S. LLC and Sanofi US Services Inc. (collectively "Defendants" or "Sanofi") respectfully submit this Opposition to the Plaintiffs' Steering Committee's Motion to Modify Pretrial Order No. 19.

There is no substantive basis to support the PSC's extraordinary request to increase the common benefit fee from **8%** to **19.75%**. Instead, the plain intent of this increase is to benefit the PSC at the direct cost of non-PSC plaintiffs' counsel (and their clients) and to financially handcuff Defendants' ability to potentially negotiate reasonable and realistic resolutions with non-PSC firms. In short, the PSC's proposal is more about financial strategy than merit. The increase—if granted—would serve to funnel potential settlement activity through the PSC where the PSC would then take an outsized portion of any fees. Although this may protect the PSC's collective financial interests, it would materially prejudice Defendants (not to mention the thousands of individual litigants with non-PSC counsel) by effectively forcing them to either negotiate with the PSC or otherwise financially absorb the cost of the increase.

The PSC has failed to articulate any change in circumstances, unanticipated events, or exemplary litigation results to justify its disproportionate fee request—particularly when the burden of an increase will fall squarely on Defendants. The Court should deny or otherwise

2

modify the PSC's request.

## BACKGROUND

On February 23, 2017, the Court entered Pretrial Order No. 19 as submitted by the PSC.[1] In it, the Court provided rules and guidelines that would regulate all common benefit work and expenses, including an 8% percent holdback assessment stemming from "any and all amounts paid by defendants through settlement or pursuant to a judgment."[2]  In setting the initial assessment, the Court noted that:

> "[T]he Plaintiffs' Steering Committee currently believes that a total assessment of 8% of the Gross Monetary Recovery recovered by any plaintiff(s) . . . is fair and reasonable under the current circumstances and the law."[3]

Nevertheless, the PSC—without any valid basis to do so—now requests the Court modify PTO No. 19 by more than doubling the original common benefit fund percentages from 8% to 19.75%.[4]

## ARGUMENT

Defendants do not dispute that the Court has authority to increase or decrease the common benefit assessment, and the standard to be applied is one of reasonableness.[5]  *See In re Actos (Pioglitazone) Prods. Liab. Litig.*, 274 F. Supp. 3d 485, 522 (W.D. La. 2017) (citing *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 227-28 (5th Cir. 2008)).  "[T]he percentage should not be completely arbitrary, devoid of reality, or inconsistent with the usual fees

---

[1]  Rec. Doc. 262.

[2]  *Id*. at 24–25.  The 8% was to cover 6% for common benefit attorneys' fees and 2% for common benefit costs.

[3]  *Id.* at 25 (emphases added).

[4]  Rec. Doc. 14621-1 at 3.

[5]  The Court explicitly caveated that the 8% assessment was "preliminary in nature . . . and is subject to revision, upward or *downward*, pursuant to subsequent Orders of this Court."  Rec. Doc. 262 at 26 (emphasis added).

for the type of case involved." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 862 (E.D. La. 2007) (internal quotations omitted).

The PSC's position in 2017 that an 8% assessment fee was fair and reasonable was correct. That original figure remains consistent with (if not slightly higher than) assessments granted in most MDLs. According to a survey of MDLs by Harvard Law School professor William B. Rubenstein, "a typical common benefit assessment is 4% to 6% of the client's gross recovery." William B. Rubenstein, 5 Newberg and Rubenstein on Class Actions § 15:115 (6th ed. 2022); *see also* Rubenstein, 5 Newberg and Rubenstein on Class Actions § 15:117 (6th ed. 2022) (noting "71 instances in which common benefit fees were withheld, with the mean total assessment being 6.45% and the median total assessment 6%.").

A review of recent MDLs further supports these findings. *See, e.g.*, Pretrial Order No. 14 Common Benefit Order at 16, *In re: Fluoroquinolone Prods. Liab. Litig.*, Rec. Doc. 380, MDL No. 15-2742 (JRT) (D. Minn. Feb. 16, 2017) (imposing an 8% assessment amount, including 5% for common benefit attorneys' fees and 3% from client's shares of the gross monetary recovery); Case Mgmt. Order No. 3 at 16, *In re: Aqueous Film-Forming Foams Prods. Liab. Litig.*, Rec. Doc. 72, MDL No. 2:18-mn-2873 (D. S.C. Apr. 26, 2019) (imposing a 9% assessment amount, including 6% for common benefit attorneys' fees and 3% for common benefit costs); Case Mgmt. Order No. 11 at 6, *In re: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, Rec. Doc. 70, No. 2:18-md-02846 (S.D. Ohio Dec. 11, 2018) (imposing a 10% total assessment, with 7% for attorneys' fees and 3% for expenses); Practice and Procedure Order No. 23 at 4, *In re: Ethicon Physiomesh Flexible Composite Hernia Mesh Prods. Liab. Litig.*, Rec. Doc. 674, MDL No. 1:17-md-02782-RWS (N.D. Ga. Oct. 20, 2020) (imposing a 10% assessment of gross monetary recovery with 9% to pay for common benefit attorneys' fees and 1% for costs

and expenses); Pretrial Order #37 at 16, *In re: Zantac (Ranitidine)*, Rec. Doc. 1363, No. 9:20-md-02924-RLR (S.D. Fla. July 31, 2020) (imposing a 9% assessment amount, 6% allotted for common benefit attorneys' fees and 3% allotted for reimbursement of permissible common benefit costs and expenses). The PSC's reliance on fee orders from other MDLs with markedly different circumstances than here is misplaced.[6]

In its motion, the PSC's stated concern is that the "initial assessment holdbacks will be inadequate to reasonably compensate the attorneys who have both committed to vigorously prosecuting these cases, contributed substantially to the MDL, and financed the prosecution of the MDL."[7] In support, the PSC <u>does not</u> highlight any extraordinary litigation results or unforeseen change in circumstances to justify the substantial increase. Rather, the PSC relies on entirely anticipated and generic case work-up activities common to all MDLs (*e.g.*, "engag[ing] in intense and extensive discovery," "bellwether trial preparations," "two bellwether trials to verdict" and "appeals"[8]), along with various administrative tasks for which it claims to have been responsible ("sent more than 300 emails"[9]). The PSC's work in "vigorously prosecuting these

---

[6] The larger amounts pointed to in the PSC's motion were given under entirely different circumstances not present here. Rec Doc. 14621-1 at 5. For instance, the district court in *In re Guidant Corp. Implantable Defibrillators Product Liability Litigation* granted the PSC's request to increase the assessment from 4% to 15% *after* the parties had already reached a global settlement. MDL No. 05-1708, 2008 WL 682174, at *3 (D. Minn. 2008). The court analyzed various factors, including the leadership's ability to work up and fairly resolve a complicated MDL in less than two years. *See id.* at *10; *see also In re: FEMA Trailer Formaldehyde Product Liability Litigation*, MDL 1873, Order (E.D. La. Sept. 27, 2012) (the PSC filed motions to deduct common benefit fees after settlement was established). Such is not the case here. Additionally, the assessment awarded in *Turner v. Murphy Oil USA, Inc.* involved a class action, which typically award much higher attorney fees than MDLs. Moreover, the PSC here does not argue that it has endured any unexpected challenges warranting an increased assessment percentage. *See, e.g.*, Mot. and Mem. Of Law of the Pls.' Steering Comm. To Modify CMO 12 Relating to the Percentage Holdback to be Paid into the *Tylenol MDL 2436 Common Benefit Acct.* at 8, *In re: Tylenol (Acetaminophen) Marketing, Sales Pracs., and Prod. Liab. Litig.*, MDL No. 2436 (E.D. Pa. Feb. 10, 2017) (the PSC arguing an increased assessment was necessary because the MDL was smaller than anticipated, making it difficult for those performing common benefit work to cover all their costs with the initial 10% assessment).

[7] Rec. Doc. 14621-1 at 3.

[8] *Id.* at 2.

[9] *Id.*

4

cases" is no different now than what the PSC anticipated in 2017 when it first proposed (and the Court approved) an 8% fee as "fair and reasonable."[10]

The only changed circumstance is not the amount of estimated work (if anything, the work has been less than many MDLs), but rather awareness that the PSC overestimated the value of these cases from the outset. By its motion, the PSC effectively asks this Court to ensure *their* investment is protected—regardless of results. Unfortunately, that this litigation will never yield the recovery the PSC originally anticipated is not a basis for bestowing the stewards of that same litigation with the gift of higher fees. That said, if non-PSC attorneys (and their clients) are comfortable paying to MDL Leadership a tax twice as high than before, it is not Sanofi's concern.

Here, Defendants' primary concern—and the real financial prejudice to Sanofi—is that increasing the common benefits fees to nearly 20% (15% monetary; 4.75% costs) effectively closes off the potential for any meaningful settlement discussions with individual, non-PSC counsel who control thousands of cases. In this MDL, settlement of individual cases may prove to be the most viable way to achieve at least partial resolution. The PSC's current request will have a chilling effect on that possibility.

If the PSC's motion is granted, the portion of a non-PSC counsel's fee that is owed to the PSC will increase by 250%. Depending on their contingency fee agreement, a non-PSC attorney could owe half of their fee, or more, to the PSC. Likewise, that attorney's client will now owe a "costs tax" more than double than before, further reducing her recovery, if any. And, because the value of these cases has proven so low, it is also likely that the difference between the original holdback (8%) and the proposed new one (19.75%) may eliminate individual counsel's entire margin on a case, meaning that any settlement would not be enough to cover their costs, let alone

---

[10]  *Id.* at 3; Rec. Doc. 262 at 25.

make a profit. Though the intrinsic value of their case has not changed (and, if anything, has gone down), non-PSC counsel and their clients will need a higher settlement amount to reach the same recovery they anticipated with the 8% holdback in place.

In the end, the real cost of the PSC's requested increase will not be borne by any individual plaintiff counsel but instead by Defendants—passed on in the form of higher settlement demands. Defendants will be faced with the following choices:  1) pay the inevitably higher settlement demand by non-PSC counsel and shoulder the financial burden of the PSC's requested increase; 2) refuse to settle; or 3) negotiate with the PSC only, which drastically overvalues these cases, but where the increased common benefit fee will be less material. The unfairness of such a situation has led other defendants to oppose similar requests to increase the initial common benefit assessment as a way to recoup losses in overvalued MDLs.[11]

## **CONCLUSION**

As the PSC's request to increase the common benefit assessment is unwarranted and will have the effect of chilling settlement discussions, the Court should deny its Motion.

---

[11] *See, e.g.*, Defs.' Resp. in Opp. to Pls.' Mot. Seeking Establishment of Common Benefit Fee and Expense Accts. Pursuant to Case Mgmt. Order No. 6 and Modification of Case Mgmt. Order No. 6 at 4–5, *In re: Bard IVC Filters Prods. Liab. Litig.*, Rec. Doc. 17387, MDL No. 2:15-MD-02641-DGC (D. Ariz. Apr. 26, 2019); Cook Defs.' Resp. in Opp. to Pls.' Steering Comm. Mot. to Increase Common Benefit and Expense Fund, *In re: Cook Medical, Inc., IVC Filters Market'g, Sales Pracs. And Prods. Liab. Litig.*, Rec. Doc. 10549 at 1 (S.D. Ind. Apr. 26, 2019).

Respectfully submitted,

| | |
|---|---|
| /s/ *Douglas J. Moore* | |
| Douglas J. Moore (Bar No. 27706) | Harley V. Ratliff |
| **IRWIN FRITCHIE URQUHART & MOORE LLC** | Jon Strongman |
| 400 Poydras Street, Suite 2700 | Adrienne L. Byard |
| New Orleans, LA  70130 | **SHOOK, HARDY & BACON L.L.P.** |
| Telephone: 504-310-2100 | 2555 Grand Boulevard |
| Facsimile:  504-310-2120 | Kansas City, Missouri 64108 |
| dmoore@irwinllc.com | Telephone: 816-474-6550 |
| | Facsimile:  816-421-5547 |
| | hratliff@shb.com |
| | jstrongman@shb.com |
| | abyard@shb.com |
| | |
| | *Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*
Douglas J. Moore