UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION** | **MDL NO. 16-2740**<br><br>*This document relates to:*<br><br>Hilda Adams, Case No. 16-cv-17583<br>Gloria Cooper, Case No. 18-cv-194<br>Carol Woodson, Case No. 17-cv-12674<br>Arquice Conley, Case No. 18-cv-9799<br>Tina Hickey, Case No. 18-cv-4731 |

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

As both this Court and Plaintiffs have recognized, there are no other decisions or precedent addressing how the federal regulations defining "newly acquired information" apply in the context of evaluating preemption defenses for drug products marketed under § 505(b)(2), which are by their very nature approved in reliance on information previously submitted to the FDA by *other* manufacturers. The issues presented in Defendants' motion to certify this Court's August 2, 2022 preemption decision ("Order") for an interlocutory appeal under 28 U.S.C. § 1292(b) are therefore, by definition, "novel and difficult issues of first impression," which Plaintiffs acknowledge means there is a "substantial ground for difference of opinion." The issues are also "controlling" and clearly "may materially advance the termination" of this litigation because resolution will govern the preemption analysis applicable to thousands of cases in the MDL and offer first-of-its-kind guidance involving § 505(b)(2) defendants. Thus, the elements of § 1292(b) are easily met here.

Instead of offering any valid rebuttal to Defendants' arguments, Plaintiffs make misguided arguments as to whether there is a "substantial ground for difference of opinion" on the three issues raised by Defendants. In doing so, however, Plaintiffs seek to reframe the pure questions of law set forth in Defendants' motion as factual disputes and introduce erroneous,

1

irrelevant "strawman" arguments that have nothing to do with the application of the newly acquired information standard to § 505(b)(2) products. This Court should not be distracted by Plaintiffs' argument that Defendants are seeking to re-litigate *Wyeth v. Levine*, 555 U.S. 555 (2009), a case that not only *never addressed* how the newly acquired information requirement applies to the preemption analysis required for § 505(b)(2) products, but also involved a prior version of the CBE regulation that did *not* include the "greater frequency" requirement. As Defendants explained in their opening motion, this Court's interpretation of the test for newly acquired information conflicts with other decisions interpreting the regulatory standard. Therefore, for the reasons stated previously and herein, Defendants request that the Court grant its petition and certify the Order for interlocutory appeal.

## I.    The Order Involves Controlling Questions of Law, Resolution of Which May Materially Advance the Termination of this Litigation.

There is no credible dispute over whether this Court's preemption decision involves a "controlling issue of law." Plaintiffs did not attempt to contradict the Fifth Circuit's conclusion that federal preemption "certainly falls within the ambit of 28 U.S.C. § 1292(b)." *Spong v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 787 F.3d 296, 304 (5th Cir. 2015); *see also Greenwich Ins. Co. v. Miss. Windstorm Underwriting Ass'n*, 808 F.3d 652, 655 (5th Cir. 2015). Nor did they address the Supreme Court's unambiguous holding in *Merck Sharpe & Dohme Corp. v. Albrecht* that preemption is a *question of law* to be decided by the Court, not the jury. 139 S. Ct. 1668, 1672 (2019).

The same is true for the three specific questions[1] framed in Defendants' motion, all of which center on this Court's *interpretation* of the "newly acquired information" requirement of the CBE regulation and the implications that *interpretation* for the purely legal question of whether the § 505(b)(2) Defendants *could* have submitted a CBE in response to post-approval information regarding permanent hair loss associated with docetaxel. These questions do not turn

---

[1] Of the three questions proposed for certification, Plaintiffs only argue that the third is a question of fact. Opp. 12-14. Thus, in the end, they tacitly concede that two of the three questions are questions of law.

on "sufficiency of the evidence," as Plaintiffs argue, Opp. 1, but on whether it was *impossible as a matter of law* under the CBE regulation to make a labeling change when there was no "newly acquired information" after FDA approval that "reveal[ed] risks of a different type or greater severity *or frequency*" than the pre-approval information. 21 C.F.R § 314.3(b).[2]

As Plaintiffs acknowledge in the Opposition, questions regarding "the meaning of a … regulation," like the FDA's regulation defining newly acquired information, are appropriate for resolution under § 1292(b). Opp. 3-4 (citing *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004)). The purely legal nature of this question is underscored by the fact that this Court did not make a factual determination on *whether* "newly acquired information" existed, but determined that it need not answer that question because it denied Defendants' preemption motion as a matter of law. *See* Order at 19.

## II.     The Order Involves Novel and Difficult Questions as to Which There Are Substantial Grounds for Difference of Opinion.

Plaintiffs agree that a "substantial ground for difference of opinion" exists when "novel and difficult questions of first impression are presented," Opp. 4, but cite inapplicable decisions to suggest that this standard has not been met.

*First,* interlocutory appeal would present a novel issue of first impression, as this Order is the *only* opinion to address how the definition of "newly acquired information" applies to a § 505(b)(2) manufacturer. Plaintiffs cite *Carter v. APP Pharms., LLC*, 2013 WL 5532767, at *5 (D. Ariz. Aug. 13, 2013), but *Carter* addressed a wholly different issue—whether claims against § 505(b)(2) manufacturers are preempted under *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011). *Carter* did not even mention the "newly acquired information" requirement. Plaintiffs admit as much, conceding that "the [*Carter*] court did not directly analyze whether the defendant could have used the CBE regulation." Opp. 11 n.22. That is why none of the parties cited *Carter* in the summary judgment briefing.

---

[2] All emphases are added unless otherwise indicated.

*Second*, Plaintiffs mistakenly rely on this Court's statement that "simply being the first court to rule on a question" is not in itself sufficient to make it certifiable. Opp. 2 (quoting *Vintage Assets Inc. v. Tenn. Gas Pipeline Co.*, 2017 WL 3842245, at *1 (E.D. La. Sept. 1, 2017)). Novelty, of course, is not the complete standard; the question also must involve a "difficult issue of first impression."[3] Moreover, Plaintiffs do not seriously argue—nor could they—that the preemption issues here are not difficult, as this Court itself has acknowledged. The Opposition's lengthy and circuitous arguments only further confirm that the issues here are both new and difficult.

*Vintage Assets Inc.*, moreover, was a single-plaintiff case. No one would seriously argue that the presence of a novel issue in a case involving a single plaintiff provides a guaranteed ticket of admission to interlocutory appellate review. Here, however, the novel and difficult issues arise in an MDL, where resolution of the issues would affect thousands of plaintiffs. Context matters in applying § 1292(b). And, tellingly, Plaintiffs do not contest that the threshold for whether there is "substantial ground for difference of opinion" is lower if a resolution of the issue would avoid years of potential litigation, as it would in an MDL. Opp. 4-5 (citing 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3930, at 492 (3d ed. 2012).

Thus, the proposed questions to be certified present exactly the type of difficult issues of first impression appropriate for § 1292(b) review. Contrary to Plaintiffs' arguments, as we explain below, there is substantial ground for disagreement as to each of the three questions.

---

[3]    The case quoted by the Court, *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718 (N.D. Tex. 2006), includes the full standard, as does this Court's later opinion in *Adams v. Walker*, 2022 WL 457821 (E.D. La. Feb. 15, 2022). *Ryan*, 444 F. Supp. 2d at 723-24 ("substantial ground" exists "if novel and difficult questions of first impression are presented"); *Adams*, 2022 WL 457821, at *3 (substantial grounds for difference of opinion "if novel and difficult questions of first impression are presented" (citation omitted)); *see also* Br. 3-4 n.5.

> A. **There is substantial ground for disagreement as to whether information can be considered "newly acquired information" without a determination that it shows "risks of a different type or greater severity or frequency."**

Defendants' first proposed question relates to the interpretation of the "newly acquired information" regulatory standard, which requires a finding that post-approval information shows "risks of a different type or greater severity or frequency" to justify a labeling change under the CBE regulation. Br. 5-7. The regulation *requires* consideration of the "greater severity or frequency" prerequisites and nothing in the regulation or the CBE statute suggests that a label change can be justified without making that finding. Indeed, Plaintiffs do not dispute otherwise. Instead, Plaintiffs attack a strawman by re-framing Defendants' arguments to suggest they are attacking otherwise settled law on other *irrelevant* issues to those raised in Defendants' motion.

*First,* Plaintiffs' reliance on *Wyeth v. Levine*, 555 U.S. 555 (2009), is misplaced. *Wyeth* did not involve a § 505(b)(2) manufacturer, so it could not have addressed this context, nor did it involve interpretation of how the "newly acquired information" standard could be met for purposes of pursuing a CBE.[4] Indeed, neither party made an issue of newly acquired information. Wyeth, on one hand, argued "[Levine] has never suggested that Wyeth had any new information about the risks of IV administration of Phenergan."[5] Levine, on the other hand, argued that the CBE regulation "contains no 'new information' limitation (and that Wyeth "never raised at trial" the new-information requirement).[6] For this reason, the Court noted, "The record is limited concerning what newly acquired information Wyeth had or should have had about the risks of IV-push administration of Phenergan because Wyeth did not argue before the trial court that such information was required for a CBE labeling change." 555 U.S. at 569. Thus, this case presents a

---

[4]   Indeed, at the time the parties filed their opening briefs in the Supreme Court, the FDA had yet to add "greater frequency" to its proposed amendment to the CBE regulation. Respondent Levine filed her brief on August 7, 2008, and the FDA added the "greater frequency" requirement in a Federal Register notice, dated August 22, 2008.

[5]   Brief for Petitioner [Wyeth] (May 27, 2008) at 27.

[6]   Brief for Respondent [Levine] (Aug. 7, 2008) at 39.

5

question not addressed by the parties of the Supreme Court in *Wyeth v. Levine*—whether new information showing greater frequency or severity is a *sine qua non* for a CBE labeling change.

*Second,* Plaintiffs' discussion of the burden of proof is also irrelevant. Indeed, Plaintiffs *concede* that "Defendants do not challenge the Court's holding regarding the burden of proof." Opp. 7. The first question for certification does not concern whether Plaintiffs or Defendants established that there was "newly acquired information" of "risks of a different type or greater severity or frequency" than established by the pre-approval information. Rather, it concerns the Court's refusal to apply the regulation's "greater frequency" requirement (regardless of whose burden it is to prove its presence or absence).[7]

> **B.    There is substantial ground for disagreement as to whether manufacturers of a drug product approved under the § 505(b)(2) pathway owe a regulatory duty to reanalyze pre-approval data submitted to the FDA from other sources, and considered by the agency, prior to the date of FDA approval of the § 505(b)(2) NDA.**

Plaintiffs do not appear to dispute that this Court's Order implicitly creates a federal post-approval duty for § 505(b)(2) manufacturers to re-analyze pre-approval data, even when those same manufacturers have been instructed by FDA to rely fully on what information had already been submitted to the FDA by other manufacturers. Rather than explaining why this duty is not in substantial disagreement with other decisions and with Congress's purpose in creating the § 505(b)(2) pathway to begin with, Plaintiffs offer arguments that are entirely without merit.

*First,* although Plaintiffs suggest otherwise, Defendants agree that the question is whether they "*could have*" made a CBE labeling change to comply with state law. *See* Opp. 9. Defendants contend, however, that the change Plaintiffs seek was *impossible* for them to make under the CBE regulation—because the regulation makes it a precondition of a CBE submission

---

[7] Plaintiffs cite the fact that Defendants eventually changed their labels *after* Sanofi had made its labeling change in 2015, Opp. 8-9, but that does not answer the question of whether there was "newly acquired information" when Plaintiffs used the products. In any event, this again misses the point, which is that the Court's Order did not address whether *any* evidence satisfied the regulatory requirement of "risks of a different type or greater severity or frequency."

6

that there be newly acquired information, which is defined, in part, as information showing a greater incidence of risk. Multiple courts addressing this aspect of the regulation have held that "newly acquired information" must actually exist and may not simply "be rooted in conjecture or hypothesis." *Lyons v. Boehringer Ingelheim Pharms., Inc.*, 491 F. Supp. 3d 1350, 1364 (N.D. Ga. 2020). Indeed, just weeks ago the Eastern District of New York in *Pfaff v. Merck & Co.*, --- F. Supp.3d ---, 2022 WL 4121406, *7 (E.D.N.Y. Sept. 9, 2022) observed that even where "newly acquired information" "encompasses new analyses of previously submitted data," that "new analysis, and any new data, must reveal 'risks of a different type or of greater severity or frequency' to constitute 'newly acquired information.'" *Id.* Here, Defendants made a detailed showing that the post-approval information identified by Plaintiffs (and Dr. Ross) did not meet this threshold, and Plaintiffs did not contest a single element of that showing. This Court did not address that issue, instead accepting Plaintiffs' argument that a re-analysis of the *pre-approval* data regarding causal-association alone—without any *new* information showing "risks of a different type or greater severity or frequency," Opp. 7-8—justified a labeling change.

*Second*, as already noted, nothing in the regulation permits disregard of the requirement that there be *newly* acquired information not previously submitted to the FDA. Simply re-analyzing the data just evaluated by the FDA—and second guessing the FDA's decision about the appropriate labeling—does not involve any newly acquired information. That is, Plaintiffs fail to address the actual question raised by Defendants—whether § 505(b)(2) manufacturers have a regulatory duty to re-analyze pre-approval data submitted to the FDA *before there is any new post-approval information* to trigger such a re-analysis. Simply re-analyzing the data just evaluated by the FDA in approving a new drug—and second guessing the FDA's decision about the appropriate labeling for that new drug—does not involve any newly acquired information. Thus, a straightforward textual analysis of the regulation provides substantial ground for disagreement with the Order. Again, this is a purely legal question about the significance of FDA's initial approval of new drug labeling and the meaning of the CBE regulation, as it concerns re-analysis of old data in light of new data.

*Third*, Plaintiffs do not address the FDA's unequivocal statement that FDA approval means the agency has (i) conducted a comprehensive evaluation of the scientific evidence and (ii) reached an authoritative conclusion about what warnings are appropriate. 73 Fed. Reg. 49603, 49604 (Aug. 22, 2008) ("FDA's *comprehensive scientific evaluation is embodied in the labeling for the product* which reflects thorough FDA review of the pertinent scientific evidence and communicates to health care practitioners the agency's *formal authoritative conclusions* regarding the conditions under which the product can be used safely and effectively."). This statement is contained in the very Federal Register notice upon which the Court relied to hold that Defendants could have submitted a CBE labeling change on Day One after approval of the § 505(b)(2) drugs. Read in its entirely, 73 Fed. Reg. 49603 provides a substantial ground for disagreement with the conclusion reached in the Order.

  **C.** **There is substantial ground for disagreement about whether the pre-approval and post-approval data available to Defendants as § 505(b)(2) manufacturers and considered by the Court was legally sufficient to determine whether the requirements for "newly acquired information" were met.**

Plaintiffs' response is based entirely on the erroneous assertion that this question "requires factual analysis." Opp. 12. However, like the first two, this issue also solely involves the Court's legal interpretation of the CBE regulation. The Court concluded that the CBE regulation does not require a comparison between pre- and post-approval information to see if there were "risks of a different type or greater severity or frequency" because the § 505(b)(2) Defendants do not have access nor right of reference to the pre-approval clinical trial data submitted to FDA by Sanofi. Order 19 ("How, though, could [Defendants] have made this determination at the time in question if they did not have access to Sanofi's underlying clinical trial data?"). As an initial matter, Plaintiffs do not dispute that the information to which Defendants *did* have access (publicly available scientific literature) does not show any new "risks of a different type or greater severity or frequency." Moreover, the proper interpretation of the regulation is that "newly acquired evidence" is an *objective* standard that requires evidence

8

showing "risks of a different type or greater severity or frequency" than previously reported. *See Pfaff*, 2022 WL 4121406, at *7, *9 ("[C]ourts have not construed impossibility preemption to turn on a private party's mental state …."). If the post-approval information does not meet this standard, then Defendants' lack of access to all the pre-approval information submitted by Sanofi is irrelevant; nothing about that fact exempts the Court from applying the regulation as a matter of law. Thus, there is substantial room for disagreement as to whether lack of access is a valid basis on which to conclude that the regulation does not require any comparison of pre-approval and post-approval information.

Finally, Plaintiffs mischaracterize the Order's analysis of the post-approval information. They argue that the Order found that "post-approval analysis of the publicly available pre-approval data would have supported a CBE label change." Opp. 13. That misses the point, however, which is that the Order did not provide any basis for such a conclusion under the CBE regulations. Specifically, the Court did not perform any comparison to determine whether the post-approval data revealed "risks of a different type or greater severity or frequency" than the pre-approval data. Whether this analysis is legally required is the issue that should be subject to appellate review.

## CONCLUSION

Thus, for the reasons stated herein and previously, Defendants respectfully request that the Court certify this question for appellate review under 28 U.S.C. § 1292(b).

Dated: October 4, 2022   Respectfully submitted,

/s/ Heidi K. Hubbard
Heidi K. Hubbard
Richmond T. Moore
Neelum J. Wadhwani
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, SW
Washington, D.C. 20024
Telephone: 202-434-5000
hhubbard@wc.com
rmoore@wc.com
nwadhwani@wc.com

9

John F. Olinde (Bar No.1515)
Peter J. Rotolo (Bar No. 21848)
**CHAFFE MCCALL LLP**
1100 Poydras Street
New Orleans, LA 70163
Telephone: 504-858-7000
olinde@chaffe.com
protolo@chaffe.com

*Counsel for Defendants Hospira, Inc., Hospira Worldwide, LLC, and Pfizer Inc.*

/s/ Julie A. Callsen
Julie A. Callsen
Michael J. Ruttinger
Brenda Sweet
**TUCKER ELLIS LLP**
950 Main Avenue—Suite 1100
Cleveland, OH 44113-7213
Telephone: 216-592-5000
julie.callsen@tuckerellis.com
michael.ruttinger@tuckerellis.com
brenda.sweet@tuckerellis.com

*Counsel for Defendant Accord Healthcare, Inc.*

/s/ Lori G. Cohen
Lori G. Cohen
R. Clifton Merrell
Evan Holden
**GREENBERG TRAURIG, LLP**
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
Telephone: 678-553-2100
cohenl@gtlaw.com
merrellc@gtlaw.com
holdene@gtlaw.com

Gregory E. Ostfeld
**GREENBERG TRAURIG, LLP**
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: 312-476-5056
ostfeldg@gtlaw.com

*Counsel for Defendant Sandoz Inc.*

## CERTIFICATE OF SERVICE

 I hereby certify that on this 4th day of October 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ <u>*Heidi K. Hubbard*</u>