# EXHIBIT A

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Brooks Cutter (SBN) 121407<br>Cutter Law, P.C.<br>401 Watt Avenue<br><br>Sacramento, CA 95864<br>TELEPHONE NO.: (916) 290-9400    FAX NO.: Fax (916) 588-9330<br>ATTORNEY FOR *(Name):* Plaintiffs | **ENDORSED<br>FILED<br>ALAMEDA COUNTY**<br><br>DEC 11 2017<br><br>CLERK OF THE SUPERIOR COURT<br>By _____ DEBRA FURTADO<br>Deputy |

SUPERIOR COURT OF CALIFORNIA, **Superior Court of California**
STREET ADDRESS: Rene C. Davidson Courthouse
MAILING ADDRESS: 1225 Fallon St., Room 250
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME:

CASE NAME: Byrns et al. v. Sanofi-Aventis U.S. LLC et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: RG17885396 |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: **BY FAX** |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [X] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [X] is [ ] is **not**  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [X] Large number of separately represented parties    d. [X] Large number of witnesses
   b. [X] Extensive motion practice raising difficult or novel    e. [X] Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve        in other counties, states, or countries, or in a federal court
   c. [X] Substantial amount of documentary evidence    f. [X] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary    b. [ ] nonmonetary; declaratory or injunctive relief    c. [ ] punitive
4. Number of causes of action *(specify):* Seven (7)
5. This case [ ] is [X] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015)*
Date: 12/11/2017
Brooks Cutter (SBN) 121407
_____        ►        _____
(TYPE OR PRINT NAME)                                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Legal<br>Solutions<br>Plus | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |
|---|---|---|---|

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach—Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case—Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late Claim
    Other Civil Petition

COPY

# SUMMONS
## *(CITACION JUDICIAL)*

SUM-100

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:** SANOFI-AVENTIS U.S. LLC; SANOFI
*(AVISO AL DEMANDADO):* US SERVICES INC. f/k/a SANOFI-
AVENTIS U.S. INC.; MCKESSON CORPORATION; SANDOZ INC.;
ACCORD HEALTHCARE, INC.;and DOES 1 through 30,
inclusive,

ENDORSED
FILED
ALAMEDA COUNTY

DEC 1 1 2017

CLERK OF THE SUPERIOR COURT
By _____ DEBRA FURTADO
Deputy

**YOU ARE BEING SUED BY PLAINTIFF:** LESLEY BYRNS; OMATEE
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* CARRASCO; FERESHTEH
GHODOUSI; MARIVEL GUERRA-PETERS; ANISHIA HAWTHORNE;
MARGIE JACKSON; ANNA LOPEZ; ANNMARI LOVE; CAROL
MARSHALL; MELISSA ANN MOPPINS; RUBY ODLING; NINA WEST

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of California
Rene C. Davidson Courthouse
1225 Fallon St., Room 250
Oakland, CA 94612

CASE NUMBER:
*(Número)* RG 17 88 53 96

BY FAX

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Brooks Cutter (SBN) 121407                    (916) 290-9400  Fax916-588-9330
Cutter Law, P.C.
401 Watt Avenue                                DEBRA FURTADO
Sacramento, CA 95864

DATE:                  Chad Finke      Clerk, by _____, Deputy
*(Fecha)* DEC 1 1 2017                 *(Secretario)*                      *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

COPY

C. Brooks Cutter, SBN 121407
**CUTTER LAW P.C.**
401 Watt Avenue
Sacramento, CA 95864
Telephone:     (916) 290-9400
Facsimile:     (916) 588-9330
Email:          bcutter@cutterlaw.com

*Attorney for Plaintiffs*

ENDORSED
FILED
ALAMEDA COUNTY

DEC 1 1 2017

CLERK OF THE SUPERIOR COURT
By _____ DEBRA FURTADO
                                    Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR ALAMEDA COUNTY -UNLIMITED JURISDICTION-

LESLEY BYRNS; OMATEE CARRASCO; FERESHTEH GHODOUSI; MARIVEL GUERRA-PETERS; ANISHIA HAWTHORNE; MARGIE JACKSON; ANNA LOPEZ; ANNMARI LOVE; CAROL MARSHALL; MELISSA ANN MOPPINS; RUBY ODLING; NINA WEST,

Plaintiffs,

v.

SANOFI-AVENTIS U.S. LLC; SANOFI US SERVICES INC. f/k/a SANOFI-AVENTIS U.S. INC.; MCKESSON CORPORATION; SANDOZ INC.; ACCORD HEALTHCARE, INC.; and DOES 1 through 30, inclusive,

Defendants.

Case No. RG17885396

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1.   Negligence
2.   Strict Liability – Failure to Warn
3.   Fraudulent Misrepresentation
4.   Fraudulent Concealment
5.   Strict Liability – Misrepresentation
6.   Fraud and Deceit
7.   Intentional Infliction of Emotional Distress

# BY FAX

///

Plaintiffs by and through their attorney, respectfully submit the following Complaint and Jury Demand against Defendants SANOFI-AVENTIS U.S. LLC; SANOFI US SERVICES INC. f/k/a SANOFI-AVENTIS U.S. INC.; MCKESSON CORPORATION; SANDOZ INC.; ACCORD HEALTHCARE, INC.; and DOES 1 through 30, inclusive (collectively "Defendants") and allege the following upon personal knowledge, information and belief, and investigation of counsel.

## NATURE OF THE CASE

1.      Plaintiffs are breast cancer survivors who were prescribed and injected with TAXOTERE® (docetaxel), a drug used in chemotherapy that is developed, manufactured, and distributed by Defendants.  Although lower potency alternatives have been available for years, Defendants misleadingly promoted Taxotere as having superior efficacy based on self-sponsored clinical trials, even though the FDA called these claims "unsubstantiated."  In fact, Taxotere's increased potency only makes it more toxic than alternatives and causes more severe side effects, including a significantly increased risk of disfiguring *permanent* hair loss.  Although temporary hair loss is a common side effect related to chemotherapy, Taxotere's risk of permanent hair loss is not.  Defendants concealed this information from physicians, healthcare providers, and patients, causing Plaintiffs and tens of thousands of women to suffer permanent hair loss without any additional benefit or warning.

2.      As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered serious and permanent physical and emotional injuries, including permanent hair loss, and seek damages relating to Defendants' distribution, labeling, advertising, marketing, promotion, and sale of Taxotere.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to Article 6, § 10 of the California Constitution and California Code of Civil Procedure § 410.10. The amount in controversy exceeds the jurisdictional limit of $25,000.

4.      This Court has personal jurisdiction over Defendants, each of which is licensed to conduct or is systematically and continuously conducting business in the State of California,

1

including, but not limited to, the marketing, advertising, selling, and distributing of drugs, including Taxotere, to the residents in this state.  Defendants have sufficient minimum contacts in California and intentionally avail themselves of the markets within California through the promotion, sale, marketing, and distribution of their products, including Taxotere, thus rendering the exercise of jurisdiction by this Court proper and necessary.

5.     Venue is proper in this judicial district pursuant to Code of Civil Procedure 395.5. Defendants transact business in this County and a substantial portion of the events complained of occurred in this County.

## **PARTIES**

6.     Plaintiff Leslie Byrns is a resident of Davis, California. Ms. Byrns received chemotherapy with Taxotere at Sacramento Hematology & Oncology, a Sutter Health clinic, from August to November 2009. She was prescribed and administered Taxotere, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Sanofi Defendants and Defendant McKesson. Sutter has a long-standing relationship with McKesson. Sutter Health has a partnership with Augmedix, a McKesson Ventures portfolio company. Sutter Health has been featured many times on McKesson's website ventures.mckesson.com. Sutter Health has been using McKesson's InterQual care management software since 2000. Ms. Byrns has suffered disfiguring permanent hair loss as a result of Defendants' illegal and wrongful conduct alleged herein.

7.     Plaintiff Omattee Carrasco is a resident of Hayward, California. Ms. Carrasco received chemotherapy treatment with docetaxel at Valley Medical Oncology Consultants in Fremont from May to November 2014. She was prescribed and administered docetaxel, which was developed by Sanofi Defendants, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants Sandoz, Accord, and McKesson. Her billing shows NDC codes that are listed in the McKesson catalog, and are associated with Sandoz and Accord. The medical billing records show code J9171 was used to bill for her docetaxel. Research indicates this code is used for McKesson billing. She treated at Valley Oncology Consultants, a Stanford Health care affiliate. Stanford is a member of the National Comprehensive Cancer Network, which

collaborates with McKesson and McKesson-owned US Oncology "to develop enhanced oncology pathways." NCCN hospitals have "joined forces" with McKesson for oncology care. Ms. Carrasco has suffered disfiguring permanent hair loss as a result of Defendants' illegal and wrongful conduct alleged herein.

8.      Plaintiff Fereshteh Ghodousi is a resident of Roseville, California, and received chemotherapy treatment with Taxotere at Stanford Hospital from August to October 2012. She was prescribed and administered Taxotere, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Sanofi Defendants and Defendant McKesson. Her billing shows NDC codes that are listed in the McKesson catalog. The medical billing records show code J9171 was used to bill for her docetaxel. Research indicates this code is used for McKesson billing. She treated at Stanford Hospital and clinics, a member of the National Comprehensive Cancer Network, which collaborates with McKesson and McKesson-owned US Oncology "to develop enhanced oncology pathways." NCCN hospitals have "joined forces" with McKesson for oncology care. Ms. Ghodousi has suffered disfiguring permanent hair loss as a result of Defendants' illegal and wrongful conduct alleged herein.

9.      Plaintiff Marivel Guerra-Peters is a resident of El Monte, California, and received chemotherapy treatment with Taxotere at City of Hope Pasadena from June to October 2009. She was prescribed and administered Taxotere, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Sanofi Defendants and Defendant McKesson. City of Hope is a member of the National Comprehensive Cancer Network, which collaborates with McKesson and McKesson-owned US Oncology "to develop enhanced oncology pathways." NCCN hospitals have "joined forces" with McKesson for oncology care. Ms. Guerra-Peters has suffered disfiguring permanent hair loss as a result of Defendants' illegal and wrongful conduct alleged herein.

10.     Plaintiff Anishia Hawthrone is a resident of Rancho Cucamonga, California, and received chemotherapy treatment with docetaxel/Taxotere at City of Hope Rancho Cucamonga from October 2012 to February 2013. She was prescribed and administered docetaxel/Taxotere, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by

Doe Defendants and Defendant McKesson. City of Hope is a member of the National Comprehensive Cancer Network, which collaborates with McKesson and McKesson-owned US Oncology "to develop enhanced oncology pathways." NCCN hospitals have "joined forces" with McKesson for oncology care. Ms. Hawthorne has suffered disfiguring permanent hair loss as a result of Defendants' illegal and wrongful conduct alleged herein.

11.    Plaintiff Margie Jackson is a resident of Los Angeles, California, and received chemotherapy treatment with Taxotere at California Hematology Oncology Medical Group in El Segundo from 2007 to 2008. She was prescribed and administered Taxotere, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Sanofi Defendants and Defendant McKesson. Ms. Jackson has suffered disfiguring permanent hair loss as a result of Defendants' illegal and wrongful conduct alleged herein.

12.    Plaintiff Anna Lopez is a resident of Chino, California, and received chemotherapy treatment with docetaxel/Taxotere at St. Jude in Fullerton from August to October 2014. She was prescribed and administered docetaxel/Taxotere, which was developed, manufactured, promoted, marketed, distributed, and sold by Doe Defendants and Defendant McKesson. Defendant McKesson is a vendor to the St. Jude pharmacy. Ms. Lopez has suffered disfiguring permanent hair loss as a result of Defendants' illegal and wrongful conduct alleged herein.

13.    Plaintiff Annmari Love is a resident of Burbank, California, and received chemotherapy treatment with Taxotere at City of Hope Pasadena from February to June 2010. She was prescribed and administered Taxotere, which was developed, manufactured, promoted, marketed, distributed, and sold by Sanofi Defendants and Defendant McKesson. City of Hope is a member of the National Comprehensive Cancer Network, which collaborates with McKesson and McKesson-owned US Oncology "to develop enhanced oncology pathways." NCCN hospitals have "joined forces" with McKesson for oncology care. Ms. Love has suffered disfiguring permanent hair loss as a result of Defendants' illegal and wrongful conduct alleged herein.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

14.     Plaintiff Carol Marshall is a resident of Lafayette, California, and received chemotherapy treatment with docetaxel/Taxotere at Kaiser Permanente in Walnut Creek from December 2010 to April 2011. She was prescribed and administered docetaxel/Taxotere, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Sanofi Defendants and Defendant McKesson and Doe Defendants. McKesson distributed docetaxel to Kaiser facilities in Northern California, including Walnut Creek.  Ms. Marshall has suffered disfiguring permanent hair loss as a result of Defendants' illegal and wrongful conduct alleged herein.

15.     Plaintiff Melissa Ann Moppins is a resident of San Leandro, California, and received chemotherapy treatment with docetaxel/Taxotere at Palo Alto Medical Foundation in Fremont, a Sutter affiliate, from May to August 2015. She was prescribed and administered docetaxel/Taxotere, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Doe Defendants and Defendant McKesson. Her medical billing records show code J9171 was used to bill for her docetaxel. Research indicates this code is used for McKesson billing. Ms. Moppins has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

16.     Plaintiff Ruby Odling is a resident of Lathrop, California and received chemotherapy treatment with Taxotere at Sutter Tracy Community Hospital from October 2008 to February 2009. She was prescribed and administered Taxotere, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Sanofi Defendants and Defendant McKesson. Sutter has a long-standing relationship with McKesson. Sutter Health has a partnership with Augmedix, a McKesson Ventures portfolio company. Sutter Health has been featured many times on McKesson's website ventures.mckesson.com. Sutter Health has been using McKesson's InterQual care management software since 2000. Ms. Odling has suffered disfiguring permanent hair loss as a result of Defendants' illegal and wrongful conduct alleged herein.

17.     Plaintiff Nina West is a resident of Fairfield, California and received chemotherapy treatment with docetaxel/Taxotere at Sutter Solano in Vallejo from August to

November 2012. She was prescribed and administered docetaxel/Taxotere, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Doe Defendants and Defendant McKesson. Sutter has a long-standing relationship with McKesson. Sutter Health has a partnership with Augmedix, a McKesson Ventures portfolio company. Sutter Health has been featured many times on McKesson's website ventures.mckesson.com. Sutter Health has been using McKesson's InterQual care management software since 2000. Ms. West has suffered disfiguring permanent hair loss as a result of Defendants' illegal and wrongful conduct alleged herein.

18.     Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability company, which has its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807. Defendant Sanofi-Aventis U.S. LLC is a subsidiary of Sanofi S.A. Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets, sells, distributes pharmaceutical products, and does business under the name of Winthrop U.S., which is not a separately existing legal entity but rather is a business unit or division operating within and part of Sanofi-Aventis U.S. LLC.

19.     Defendant Sanofi US Services Inc. f/k/a Sanofi-Aventis U.S. Inc. is a Delaware corporation, with a principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807. Sanofi US Services Inc. is a wholly owned subsidiary of Sanofi S.A. Defendant Sanofi US Services Inc. engages in research and development, testing, manufacturing, labeling, advertising, marketing, promoting, selling and/or distributing of prescription drugs, including Taxotere.

20.     At all times material to this lawsuit, Defendants Sanofi-Aventis U.S. LLC and Sanofi US Services Inc. f/k/s Sanofi-Aventis U.S. Inc were engaged in the business of, and were successors in interest to, entities engaged in the business of researching, analyzing, licensing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, and selling the prescription drug Taxotere to the general public, including Plaintiffs. Defendants Sanofi-Aventis U.S. LLC and Sanofi US Services Inc. f/k/s Sanofi-Aventis U.S. Inc are collectively referred to as "Sanofi" or "Sanofi Defendants" throughout this complaint.

21.     At all times material to this lawsuit, the Sanofi Defendants were authorized to do business within the State of California; did in fact transact and conduct business in the State of California; derived substantial revenue from goods and products used in the State of California; and supplied Taxotere within the State of California.

22.     At all relevant times, and as more fully set forth below, the Sanofi Defendants acted in conjunction with other affiliated, related, jointly owned and controlled entities or subsidiaries, including each other, in the development, marketing, production, labeling, promoting, packaging, advertising, and/or selling of Taxotere to the general public, including Plaintiffs. The Sanofi Defendants acted jointly and/or as each other's agents, within the course and scope of the agency, with respect to the conduct alleged in this Complaint, such that any individuality and separateness between them had ceased and these Defendants became the alter-ego of one another and are jointly-liable for their misconduct and wrongful acts as alleged herein.

23.     The Sanofi Defendants transact substantial business in California. The Sanofi Defendants have sponsored or conducted clinical trials of their products in California, including trials of Taxotere. For example, in 2005 their parent corporation Aventis sponsored a clinical trial at Stanford University of the efficacy of Taxotere for lung cancer treatment; from 2006 to 2012 Sanofi sponsored a clinical trial at Stanford on the efficacy of Taxotere for breast cancer treatment; from 2006 to 2012 Sanofi sponsored an interventional clinical trial at Stanford of Taxotere in patients with breast cancer; Sanofi also sponsored a large-scale epidemiological study on its drug Lantus at Kaiser Permanente in Northern and Southern California, which terminated in 2012.  In addition, Sanofi participates in ongoing research and development collaborations with the University of California, San Francisco.

24.     Sanofi maintains an office at 185 Berry Street, San Francisco, and employs sales representatives and area business managers throughout the state. Sanofi's vaccine division, Sanofi-Pasteur, Inc. is registered to do business in California.

25.     In 2015, Sanofi's net sales exceeded €34 billion, of which pharmaceutical sales represented the majority, at €29.8 billion. Although generic docetaxel is now available, Taxotere

7

continues to be extremely profitable for Sanofi; in 2015 sales of Taxotere alone were €222 million.

26.     Sanofi spends large sums on California politics, mainly via four entities that share the same entity identification number (1278441): Sanofi US; Sanofi US Services Inc.; Sanofi-Aventis; and Sanofi-Aventis Group.  For example, Sanofi US Services Inc., a subsidiary of Sanofi, engages in lobbying elected officials in California, and has recently spent at least $1.2 million on lobbying in the state.

27.     Sanofi US contributes to political campaigns in California. Specifically, in 2016 Sanofi US contributed $4.15 million to the Californians Against the Misleading RX Measure, and $1.5 million to No On Prop 61 Californians Against the Deceptive Rx Proposition. In 2015 Sanofi gave $115,000 to a campaign against Measure 15-009. Sanofi has also recently contributed $7,300 total to five assembly-member candidates, and $2,500 to the California Republican Party.

28.     Defendant McKesson Corporation is a Delaware corporation with its principal place of business at One Post Street, San Francisco, California 94104.  At all relevant times, McKesson was in the business of labeling, selling, marking, packaging, repackaging, and distributing Taxotere, including the Taxotere used by Plaintiffs.  McKesson also owns US Oncology, which supported a significant amount of Taxotere research and promotion. Defendant does business throughout the United States and in the State of California and regularly and continuously did business within this judicial district including marketing, advertising, warning about, selling, and distributing Taxotere. For example, McKesson Specialty Health, a division of McKesson, lists Taxotere in its catalog of available products.

29.     Defendant Accord Healthcare, Inc. ("Accord") is a pharmaceutical company organized and existing under the laws of the State of North Carolina with a principal place of business at 1009 Slater Road, Suite 210-B, Durham, North Carolina 27703. Accord has transacted substantial business in California.

30.     Defendant Sandoz Inc. ("Sandoz") is a pharmaceutical company organized and existing under the laws of the State of Colorado with a principal place of business at 100 College

Road West, Princeton, New Jersey 08540.  Defendant Sandoz has transacted and conducted business throughout California. Defendant Sandoz has derived substantial revenue from goods and products designed, manufactured, marketed, advertised, promoted, sold, and distributed throughout California.

31.   Plaintiffs are presently without knowledge of the true names and capacities of the defendants sued herein as Does 1 through 30, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this complaint if necessary to allege their true names and capacities when ascertained. Plaintiffs are informed and believes and thereon allege that each of the fictitiously named Defendants is a related entity, joint venturer, subsidiary, parent, co-conspirator, agent, employee or affiliate of one or more of the named Defendants, and is responsible for the unlawful conduct herein alleged, and that said Defendants proximately caused the harm alleged herein.

## DEFENDANTS' INVOLVEMENT IN THE DEVELOPMENT, PATENTING, TESTING, MARKETING, AND SALE OF TAXOTERE (DOCETAXEL)

32.   Taxotere is a drug used in the treatment of various forms of cancer, including but not limited to breast cancer. Taxotere is a part of a family of drugs commonly referred to as taxanes.

33.   Taxanes are diterpenes produced by the plants of the genus Taxus (yews) featuring a taxadiene core. Taxanes are widely used as chemotherapy agents. Taxane agents include paclitaxel (TAXOL®) and docetaxel (TAXOTERE®). Taxane agents also exist as cabazitaxel and in generic forms as well.

34.   Taxol, which was developed, manufactured, and distributed by Bristol-Myers Squibb and is the main competitor drug to Taxotere, was first approved by the U.S. Food and Drug Administration (FDA) in December 1992.

35.   The drug and chemical compound that would become known as Taxotere was invented and developed by Michel Colin, Daniel Guenard, Francoise Gueritte–Voegelein, and Pierre Potier of Rhone-Poulence Santé. Taxotere was conceived as an increased potency taxane.

36.     The initial patent disclosing the formulation and computation of Taxotere was issued to Rhone-Poulence Santé and subsequently assigned to Aventis Pharma S.A in March 1989. Sanofi S.A. owns 100% of the shares or financial interest of Aventis Pharma S.A., and Sanofi S.A. therefore directs and controls the operations and activities of Aventis Pharma S.A. Since March 1989, Sanofi S.A., through its wholly-owned subsidiary, Aventis Pharma S.A., has controlled the development and been the owner, holder, or assignee of the patents related to Taxotere.

37.     In 1989, Sanofi issued the prior art publication F. Lavelle, *Experimental Properties of RP 56976*, a taxol derivative. RP 56976 was the number that Rhone-Poulenc, Aventis Pharma S.A.'s predecessor, assigned to docetaxel.

38.     Sanofi began enrolling patients in Phase I clinical testing trials on June 21, 1990. The study reporting on these trials was called the "TAX 001" study, which continued until May 13, 1992. The results from the TAX 001 study were reported on May 24, 1994. Accordingly, Sanofi was not only involved in the patenting and assignment of the compound Taxotere (docetaxel), but Sanofi was also directly involved in the clinical trials and testing of the compound Taxotere (docetaxel). Accordingly, Sanofi has direct and personal knowledge of the results of those tests and decided to withhold information and data from those tests from physicians, healthcare providers, patients, and Plaintiffs in the United States.

39.     Rhône-Poulenc Rorer S.A., before it was acquired by or merged into Aventis Pharma S.A., initially sought FDA approval for Taxotere in December 1994. The FDA's Oncologic Drugs Advisory Committee panel unanimously recommended the rejection of Rhône-Poulenc Rorer S.A.'s request for the approval of Taxotere, because Taxotere was more toxic than its competing drug Taxol, which had already received FDA approval, and because more studies of Taxotere's side effects were needed.

40.     Taxotere was ultimately approved by the FDA on May 14, 1996. According to its product labeling, Taxotere was "indicated for the treatment of patients with locally advanced or metastatic breast cancer after failure of prior chemotherapy."

41.     After the initial FDA approval, Sanofi sought and was granted FDA approval for additional indications for Taxotere. Based on self-sponsored clinical trials, Sanofi claimed superiority over other chemotherapy products approved to treat breast cancer. These marketing claims included claims of superior efficacy over the lower potency taxane product paclitaxel (Taxol), which was the primary competitor product to Taxotere.

42.     Defendant McKesson Corporation distributed, packaged, labeled, and promoted Taxotere in California and around the country throughout this period.  U.S. Oncology, a specialty drug distributor now owned by McKesson, supported research and the subsequent promotion of Taxotere at conferences including the annual meetings for the American Society of Clinical Oncology.  McKesson continued this activity after it acquired U.S. Oncology in 2010.

43.     Contrary to Defendants' claims of superior efficacy, post market surveillance has shown that the more potent Taxotere does not in fact offer increased efficacy or benefits over other taxanes, and in fact is more toxic. Defendants concealed and failed to warn about the existence of studies from the FDA, physicians, and patients that refuted Defendants' claims.

44.     A study of available clinical studies concerning the relative efficacy of taxanes in the treatment of breast cancer, published in the August 2007 journal *Cancer Treatment Review*, concluded that no significant differences were found in the efficacy and outcomes obtained with Taxotere (docetaxel) or Taxol (paclitaxel).

45.      A study published in 2008 in the New England Journal of Medicine, titled *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, concluded that Taxol (paclitaxel) was more effective than Taxotere (docetaxel) for patients undergoing standard adjuvant chemotherapy with doxorubicin and cyclophosphamide.

46.     Despite the publication of these studies, Defendants continued to make false and misleading statements promoting the "superior efficacy" of Taxotere over the competing product paclitaxel (Taxol). In June 2008, Sanofi-Aventis utilized marketing and promotional materials for Taxotere at the annual meeting for the American Society of Clinical Oncology, comparing the efficacy of Taxotere versus paclitaxel (Taxol).  Specifically, Sanofi-Aventis utilized a "reprint carrier," citing a clinical study published in the August 2005 edition of the Journal of

Clinical Oncology ("JCO study") and performed by researchers affiliated with Sanofi and US Oncology.  The study concluded that "TAXOTERE® demonstrated superior efficacy compared with paclitaxel (TAXOL®), providing significant clinical benefit in terms of survival and time to disease progression, with a numerically higher response rate and manageable toxicities."

47.     Defendants' statements in the "reprint carrier" marketing the conclusions of the 2005 JCO study were false and/or misleading in light of the 2007 and 2008 studies finding that Taxotere was not more effective than paclitaxel (Taxol) in the treatment of breast cancer.

48.     As a result of these false and misleading statements, in 2009, the FDA issued a warning letter to Sanofi-Aventis (the same company as Sanofi S.A. before Sanofi-Aventis changed its name in 2011) citing these unsubstantiated claims of superiority over paclitaxel stating:

> The Division of Drug Marketing, Advertising, and Communications (DDMAC) of the U.S. Food and Drug Administration (FDA) has reviewed a professional reprint carrier [US.DOC.07.04.078] for Taxotere (docetaxel) Injection Concentrate, Intravenous Infusion (Taxotere) submitted under cover of Form FDA 2253 by sanofi-aventis (SA) and obtained at the American Society of Clinical Oncology annual meeting in June 2008. The reprint carrier includes a reprint[1] from the Journal of Clinical Oncology, which describes the TAX 311 study. This reprint carrier is false or misleading because it presents unsubstantiated superiority claims and overstates the efficacy of Taxotere. Therefore, this material misbrands the drug in violation of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. 352(a) and 321(n). *Cf.* 21 CFR 202.1(e)(6)(i), (ii) & (e)(7)(ii).[2]

49.     A qui tam lawsuit was also filed against Sanofi-Aventis and its affiliates in the United States District Court for the Eastern District of Pennsylvania by a former employee accusing Sanofi-Aventis and its affiliates of engaging in a fraudulent marketing scheme, paying kickbacks, and providing other unlawful incentives to entice physicians to use Taxotere. *See U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, Civil Action No. 02-2964 (E.D. Pa. 2015).

---

[1]     Jones SE, Erban J, Overmoyer B, et al. Randomized phase III study of docetaxel compared with paclitaxel in metastatic breast cancer. *J Clin Oncol.* 2005;23(24):5542-51.

[2]     Correspondence signed by Keith Olin, Pharm.D., Regulatory Review Officer in the FDA's Division of Drug Marketing, Advertising and Communications to MaryRose Salvacion, Director of US Regulatory Affairs Marketed Products at Sanofi-Aventis.

50.     Beginning in 1996, Sanofi S.A., Aventis Pharma S.A., Sanofi-Aventis U.S. LLC, Sanofi US Services Inc., and their predecessors and affiliates planned, directed, and engaged in a marketing scheme that promoted Taxotere for off-label uses not approved by the FDA. The scheme took two forms: first, Defendants trained and directed their employees to misrepresent the safety and effectiveness of the off-label use of Taxotere to expand the market for Taxotere in unapproved settings; and second, Defendants paid healthcare providers illegal kickbacks in the form of sham grants, speaking fees, travel, entertainment, sports and concert tickets, preceptorship fees, and free reimbursement assistance to incentivize healthcare providers to prescribe Taxotere for off-label uses. As a direct result of Defendants' fraudulent marketing scheme, Defendants dramatically increased revenue on sales of Taxotere from $424 million in 2000 to $1.4 billion in 2004. *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 508 (E.D. Pa. 2015).

51.     As a direct result of their wrongful conduct and illegal kickback schemes, Defendants directly caused thousands of individuals to be exposed to docetaxel's increased toxicity as compared to other available less toxic products such as paclitaxel.

52.     At all relevant times, Defendant Accord has been in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and/or distributing Docetaxel Injection approved by the FDA under NDA #201195. Defendant Accord expected that Docetaxel Injection would be sold, purchased, and used throughout California.

53.      At all relevant times, Defendant McKesson has been in the business of packaging and distributing Docetaxel Injection approved by the FDA under NDA #201195. Defendant McKesson expected that Docetaxel Injection would be sold, purchased, and used throughout California.

54.     Defendant Accord filed NDA #201195 on December 7, 2010, under Section 505(b)(2). Its application relied for its approval on FDA's findings of safety and effectiveness for the reference listed drug Taxotere.

55.     Accord's two-vial formulation, however, was different from Taxotere's two-vial formulation in that it added new excipients citric acid (as a pH adjusting agent) and polyethylene

glycol (PEG 400) (added to the diluent vial at 13 percent w/v). A one-vial formulation by Accord was later added in the same concentration and doses as the one-vial Taxotere, with the addition of a 160 mg / 8 mL "multiple dose" form.

56.     Accord received FDA approval for NDA #201195 on June 8, 2011 and began marketing the drug in the United States on August 15, 2011. When the drug was approved, a portion of the Patient Counseling Information read as follows: "Explain to patients that side effects such as […] hair loss are associated with docetaxel administration." It also stated that one of the "most common side effects of Docetaxel Injection" is "hair loss." Neither statement refers to permanent hair loss.

57.     On November 14, 2013, Accord submitted a CBE sNDA (S-006) that was unrelated to hair loss. It was approved on July 3, 2014. Prior to that, Accord had also submitted a Manufacturing sNDA (S-004) that, upon information and belief, resulted in various labeling changes on or before April 5, 2013, which did not relate to hair loss. Accord submitted a CBE sNDA (S-009) that was approved on July 26, 2016. As a result, the current label states that "[c]ases of permanent alopecia have been reported." Patient Counseling Information directs: "Explain to patients that side effects such as […] hair loss (cases of permanent hair loss have been reported) are associated with docetaxel administration." The Patient Information section now reads, in part: "The most common side effects of Docetaxel Injection include […] hair loss, in most cases normal hair growth should return. In some cases (frequency not known), permanent hair loss has been observed." There is no mention of the risk of permanent or irreversible hair loss, however, in the Warnings and Precautions or Adverse Reactions portions of its labeling.

58.     At all relevant times, Defendant Sandoz has been in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and/or distributing Docetaxel Injection approved by the FDA under New Drug Application ("NDA") #201525. The proprietary name for Defendant Sandoz's branded drug is Docetaxel Injection.

59.     Defendant Sandoz expected that Docetaxel Injection would be sold, purchased, and used throughout California. Defendant Sandoz filed NDA application #201525 on

September 16, 2010, under Section 505(b)(2). Its application relied for its approval on FDA's findings of safety and effectiveness for the reference listed drug Taxotere. Sandoz's formulation of Docetaxel Injection, however, is different from Taxotere in that it contains less polysorbate 80 and more 96 percent ethanol. Also, it contains polyethyleneglycol 300 as a solubizer and anhydrous citric acid for pH adjustment.

60.     Sandoz received FDA approval for NDA #201525 on June 29, 2011 and began marketing the drug in the United States on August 15, 2011. When the drug was approved, a portion of the Patient Counseling Information read as follows: "Explain to patients that side effects such as […] hair loss are associated with docetaxel administration." It also stated that one of the "most common side effects of Docetaxel Injection" is "hair loss." Neither of these statements refer to permanent hair loss.

61.     Since approval, Sandoz has submitted multiple Changes Being Effected Supplemental New Drug Applications ("CBE sNDA") to update labeling. It submitted a CBE sNDA (S-002) on July 29, 2011 that was approved on March 15, 2012, and a CBE sNDA (S-003) on August 15, 2013 that was approved on April 23, 2014. Neither submission, however, updated labeling concerning hair loss. On October 21, 2016, the FDA approved Sandoz's CBE sNDA, submitted on March 7, 2016, "to include information on permanent or irreversible alopecia to Section 6.2 (Post-marketing Experience), Section 17 (Patient Counseling Information) of the Package Insert, and the Patient Package Insert (PPI) labeling."

62.     As of December 2015, under "Post-Marketing Experiences," the labeling states: "Cases of permanent alopecia have been reported." Its Patient Counseling Information states that "side effects such as […] hair loss (cases of permanent hair loss have been reported) are associated with docetaxel administration." Its patient information also states that the "most common side effects" include "hair loss, in most cases normal hair growth should return. In some cases (frequency not known) permanent hair loss has been observed." There is no mention of the risk of permanent or irreversible hair loss, however, in the Warnings and Precautions or Adverse Reactions portions of its labeling.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

63.     As a direct result of their aforementioned conduct, Defendants caused thousands of individuals to be exposed to increased frequency and more severe side effects, including but not limited to disfiguring permanent alopecia (hair loss).

## DEFENDANTS' COVER UP IN THE UNITED STATES REGARDING THE CAUSAL RELATIONSHIP BETWEEN TAXOTERE AND PERMANENT DISFIGURING HAIR LOSS

64.     Although alopecia, or hair loss, is a common side effect related to chemotherapy drugs, permanent alopecia is not. Defendants, through their publications and marketing materials, misled Plaintiffs, the public, and the medical community to believe that, as with other chemotherapy drugs that cause alopecia, patients' hair would grow back.

65.     Defendants knew or should have known that the rate of permanent alopecia related to docetaxel/Taxotere was far greater than with other products available to treat the same condition as Defendants' product.

66.     Permanent baldness (permanent alopecia) is a disfiguring condition, especially for women. Women who experienced disfiguring permanent alopecia as a result of the use of docetaxel/Taxotere suffer great mental anguish as well as economic damages, including but not limited to loss of work or inability to work due to significant psychological damage.

67.     Although women might accept the possibility of permanent baldness as a result of the use of docetaxel/Taxotere if no other product were available to treat their cancer, this was not the case. Before Defendants' wrongful conduct resulted in tens of thousands of women being exposed to the adverse side effects of docetaxel/Taxotere, there were already similar products on the market that were at least as effective as Taxotere and did not subject female users to the same risk of disfiguring permanent alopecia as does Taxotere.

68.     Beginning in the late 1990s, Sanofi S.A. and Aventis Pharma S.A. sponsored and/or were aware of a study titled the GEICAM 9805 study. In 2005, Sanofi S.A. and Aventis Pharma S.A. knew that the GEICAM 9805 study demonstrated that 9.2% of patients who took Taxotere had persistent alopecia, or hair loss, for up to 10 years and 5 months, and in some cases, longer, after taking Taxotere. Sanofi S.A. and Aventis Pharma S.A. knowingly,

16

intentionally, and wrongfully withheld these results contained in the GEICAM 9805 study from physicians, healthcare providers, patients, and Plaintiffs in the United States.

69.     In 2006, Defendants knew or should have known that a Denver-based oncologist in the United States had observed that an increased percentage (6.3%) of his patients who had taken Taxotere suffered from permanent disfiguring hair loss for years after the patients had stopped taking Taxotere.

70.     Despite Defendants' knowledge of the relevant findings from the GEICAM 9805 study, as well as reports from patients who had taken Taxotere and suffered from permanent disfiguring hair loss, Defendants failed to provide accurate information and proper warnings to physicians, healthcare providers, and patients in the United States, including Plaintiffs, that patients who take docetaxel/Taxotere are at a significantly increased risk of suffering from permanent disfiguring hair loss.

71.     Sanofi chose to withhold this information in the United States despite advising physicians, patients, and regulatory agencies in other countries, including the European Union and Canada, that Taxotere causes an increased risk of permanent disfiguring hair loss. Defendants instead continued to warn or advise physicians, healthcare providers, patients, and Plaintiffs in the United States only with the generic, vague, and insufficient warning that "hair generally grows back" after taking Taxotere.

72.     Users of docetaxel/Taxotere were not presented with the opportunity to make an informed choice as to whether the benefits of docetaxel/Taxotere were worth its associated risks. Sanofi Defendants engaged in a pattern of deception by overstating the benefits of docetaxel/Taxotere as compared to other alternatives while simultaneously failing to warn of the risk of disfiguring permanent alopecia.

73.     In other countries, Sanofi Defendants published information to individual patients and regulatory agencies about Taxotere and the risk of permanent alopecia. But until December 2015, the words permanent alopecia or permanent hair loss did not appear in any information published by Defendants in the United States.

74.     In December 2015, the FDA changed the safety labeling for Taxotere (docetaxel), to add a sentence: "Cases of permanent alopecia have been reported." This sentence appears on page 33 of the label, in the Full Prescribing Information. On the first page, which is the Highlights of Prescribing Information, only "alopecia" is listed as an adverse reaction; "permanent alopecia" is not.

75.     As a direct result of Defendants' wrongful and deceptive acts, tens of thousands of women were exposed to the risk of disfiguring permanent alopecia without any warning and without any additional benefit.

76.     As a direct result of Defendants' failure to warn patients of the risk of disfiguring permanent alopecia in the United States, thousands of women, including Plaintiffs, as well as their health care providers, were deprived of the opportunity to make an informed decision as to whether the benefits of using Taxotere over other comparable products was justified.

77.     Defendants preyed on one of the most vulnerable groups of individuals at the most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at the expense of unwary cancer victims simply hoping to survive their condition and return to a normal life.

78.     Plaintiffs, as well as numerous other women, were the innocent victims of Defendants' greed, recklessness, and willful and wanton conduct. Plaintiffs suffer from disfiguring permanent hair loss as a result of receiving chemotherapy with docetaxel/Taxotere.

## NATURE OF THE CLAIMS

79.     Despite the fact that Defendants disclosed risks associated with Taxotere and permanent alopecia to patients and regulatory agencies in other countries, Defendants failed to either alert Plaintiffs, the public, and the scientific community in the United States or perform further investigation into the safety of Taxotere regarding the side effect of disfiguring permanent alopecia. Defendants failed to update the warnings for Taxotere, and they failed to disclose the results of additional studies as Defendants learned new facts regarding the defects and risks of their product.

80.     In particular, Defendants:

18

(a)   failed to disclose their investigation and research from 2005, including but not limited to the results of the GEICAM 9805 study, and failed to further investigate, research, study, and define fully and adequately the safety profile of Taxotere in response to these studies;

(b)   failed to provide adequate warnings about the true safety risks associated with the use of Taxotere;

(c)   failed to provide adequate warning regarding the pharmacokinetic and pharmacodynamic variability of Taxotere and its effects on the degree or severity of side effects related to permanent alopecia;

(d)   failed to disclose in the "Warnings" Section that permanent alopecia is a frequent side effect associated with the use of Taxotere;

(e)   failed to advise prescribing physicians, such as Plaintiffs' physicians, to instruct patients that permanent alopecia was a side effect, much less a frequent side effect, linked to Taxotere;

(f)   failed to provide adequate instructions on how to intervene and/or reduce the risk of permanent alopecia related to the use of Taxotere;

(g)   failed to provide adequate warnings and information related to the increased risks of permanent alopecia in certain genome groups;

(h)   failed to provide adequate warnings regarding the increased risk of permanent alopecia with the use of Taxotere as compared to other products intended to treat the same conditions as Taxotere; and

(i)   failed to include a **"BOXED WARNING"** related to permanent or persistent alopecia.

81.   During the years since first marketing Taxotere in the U.S., Defendants modified the U.S. labeling and prescribing information for docetaxel/Taxotere on multiple occasions. Defendants failed, however, to include any warning whatsoever related to permanent alopecia despite Defendants' awareness of the frequency and severity of this side effect.

82.     Before applying for and obtaining approval of docetaxel/Taxotere, Defendants knew or should have known that consumption of docetaxel/Taxotere was associated with and/or would cause disfiguring side effects including disfiguring permanent alopecia.

83.     Despite knowing that docetaxel/Taxotere was likely to result in increased rates of alopecia and disfiguring permanent alopecia, Defendants produced, marketed, and distributed docetaxel/Taxotere in the United States.

84.     Defendants failed to adequately conduct complete and proper testing of docetaxel/Taxotere prior to filing their New Drug Applications for docetaxel/Taxotere.

85.     From the date Defendants received FDA approval to market docetaxel/Taxotere, Defendants made, distributed, marketed, and sold docetaxel/Taxotere without adequate warning to Plaintiffs or Plaintiffs' prescribing physicians that docetaxel/Taxotere was associated with disfiguring permanent alopecia.

86.     Defendants ignored the association between the use of docetaxel/Taxotere and the risk of disfiguring permanent alopecia.

87.     Defendants failed to disclose information that they possessed regarding their failure to adequately test and study docetaxel/Taxotere related to the side effect of disfiguring permanent alopecia. Plaintiffs and their healthcare providers could not have discovered Defendants' false representations and failures to disclose information through the exercise of reasonable diligence.

88.     As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## ESTOPPEL FROM PLEADING STATUTES OF LIMITATIONS OR REPOSE

89.     Plaintiffs incorporate by reference the averments of the preceding paragraphs of the Complaint as if fully set forth at length herein.

90.     Plaintiffs are within the applicable statutes of limitations for the claims presented herein because Plaintiffs did not discover the defects and unreasonably dangerous condition of Defendants' docetaxel/Taxotere and the risks associated with its use in the form of disfiguring permanent alopecia, and could not reasonably have discovered the defects and unreasonably dangerous condition of Defendants' docetaxel/Taxotere and the risks associated with its use, due to the Defendants' failure to warn, suppression of important information about the risks of the drug, including but not limited to the true risk benefit profile, and the risk of disfiguring permanent alopecia and damages known by Defendants to result from the use of docetaxel/Taxotere, and other acts and omissions.

91.     In addition, Defendants are estopped from relying on any statutes of limitations or repose by virtue of their acts of fraudulent concealment, affirmative misrepresentations and omissions, which include Defendants' intentional concealment from Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public that Defendants' docetaxel/Taxotere was defective, unreasonably dangerous and carried with it the serious risk of developing the injuries Plaintiffs have suffered while aggressively and continually marketing and promoting docetaxel/Taxotere as safe and effective.  This includes, but is not limited to, Defendants' failure to disclose and warn of the risk of disfiguring permanent alopecia and injuries known by Defendants to result from use of docetaxel/Taxotere, for example, and not by way of limitation, internal concern about reports and studies finding an increased risk of disfiguring permanent alopecia; suppression of information about these risks and injuries from physicians and patients, including Plaintiffs; use of sales and marketing documents and information that contained information contrary to the internally held knowledge regarding the aforesaid risks and injuries; and overstatement of the efficacy and safety of docetaxel/Taxotere.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

92.     Defendants had a duty to disclose that docetaxel/Taxotere was defective, unreasonably dangerous and that the use of Defendants' docetaxel/Taxotere carried with it the serious risk of developing disfiguring permanent alopecia as the Plaintiffs have suffered. Defendants breached that duty.

93.     Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public, had no knowledge of, and no reasonable way of discovering, the defects found in Defendants' docetaxel/Taxotere or the true risks associated with their use at the time she purchased and used Defendants' docetaxel/Taxotere.

94.     Defendants did not notify, inform, or disclose to Plaintiffs, Plaintiffs' prescribing health care professionals or the general consuming public that Defendants' docetaxel/Taxotere was defective and that its use carried with it the serious risk of developing the injuries Plaintiffs have suffered and complained of herein.

95.     Because Defendants failed in their duty to notify Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public that their docetaxel/Taxotere was defective and, further, actively attempted to conceal this fact, Defendants should be estopped from asserting defenses based on statutes of limitation or repose.

96.     Accordingly, Plaintiffs file this lawsuit within the applicable statutes of limitations. Plaintiffs could not by exercise of reasonable diligence have discovered any wrongdoing, nor could she have discovered the causes of their injuries at an earlier time, and when Plaintiffs' injuries were discovered, their causes were not immediately known or knowable based on the lack of necessary information, which was suppressed by the Defendants.  Further, the relationship of Plaintiffs' injuries to docetaxel/Taxotere exposure through the Defendants' drug was inherently difficult to discover, in part due to the Defendants' knowing suppression of important safety information.  Consequently, the discovery rule should be applied to toll the running of the statutes of limitations until Plaintiffs discovered, or by the exercise of reasonable diligence should have discovered, that Plaintiffs may have a basis for an actionable claim.

97.     After Defendants changed the docetaxel/Taxotere prescription information in the United States to include information about permanent alopecia in December 2015, there ensued

publicity and advertising related to permanent alopecia caused by docetaxel/Taxotere. Plaintiffs, as a result of the publicity and advertising, became aware of the failure to warn about permanent alopecia by Sanofi, and the availability of an equally efficacious and less toxic alternative drug. Plaintiffs acted with all reasonable diligence and speed upon discovering this information and timely files the present complaint.

## FIRST CLAIM FOR RELIEF

### (Product Liability for Negligence – Against All Defendants)

98.     Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

99.     Defendants had a duty to exercise reasonable care in the marketing, supplying, promoting, packaging, sale, and/or distribution of docetaxel/Taxotere into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

100.     Defendants failed to exercise reasonable care in the marketing, supplying, promoting, packaging, sale, and/or distribution of docetaxel/Taxotere into interstate commerce in that Defendants knew or should have known that using docetaxel/Taxotere created a high risk of unreasonable, disfiguring side effects, including personal injuries that are permanent and lasting in nature such as disfiguring permanent alopecia, mental anguish, and diminished enjoyment of life, economic loss, and loss of economic opportunity.

101.     The negligence of Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

(a)     Selling docetaxel/Taxotere without disclosing its dangers and risks;

(b)     Negligently failing to adequately and correctly warn Plaintiffs, Plaintiffs' physicians, the public, and the medical and healthcare profession of the dangers of docetaxel/Taxotere;

(c)     Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and

foreseeably come into contact with, and more particularly, use, docetaxel/Taxotere;

(d)     Negligently advertising and recommending the use of docetaxel/Taxotere without sufficient knowledge as to its dangerous propensities;

(e)     Negligently representing that docetaxel/Taxotere was safe for use for its intended purpose, when, in fact, it was unsafe;

(f)     Negligently and falsely representing that docetaxel/Taxotere was superior to other commercially available products to treat the same forms of cancer that docetaxel/Taxotere was intended to treat;

(g)     Concealing information from Plaintiffs, Plaintiffs' physicians, the public, and the FDA in knowing that docetaxel/Taxotere was unsafe, dangerous, and/or non-conforming with FDA regulations; and

(h)     Improperly concealing from and/or misrepresenting information to Plaintiffs, Plaintiffs' physicians, other healthcare professionals, and/or the FDA concerning the severity of risks and dangers of docetaxel/Taxotere compared to other forms of treatment for breast cancer.

102.   Defendants underreported, underestimated, and downplayed the serious dangers and risk associated with docetaxel/Taxotere.

103.   Defendants negligently conveyed that the safety risks and/or dangers of docetaxel/Taxotere were comparable with other forms of treatment for the same conditions for which docetaxel/Taxotere was prescribed to treat.

104.   Defendants were negligent in the researching, supplying, promoting, packaging, distributing, testing, advertising, warning, marketing, and selling of docetaxel/Taxotere in that they:

(a)     Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of docetaxel/Taxotere;

(b)     Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the risks and dangers associated with docetaxel/Taxotere;

(c)     Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning docetaxel/Taxotere;

(d)     Failed to warn Plaintiffs and Plaintiffs' physicians of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity, of the side effects;

(e)     Failed to conduct adequate post-marketing surveillance, to determine the safety, dangers, and risks associated with docetaxel/Taxotere.

(f)     Failed to warn Plaintiffs and Plaintiffs' physicians before actively encouraging the sale of docetaxel/Taxotere, either directly or indirectly, orally or in writing, about the need for more comprehensive and regular medical monitoring than usual to ensure early discovery of potentially serious side effects; and

(g)     Were otherwise careless and/or negligent.

105.    Despite the fact that Defendants knew or should have known that docetaxel/Taxotere caused unreasonably dangerous side effects, namely the serious risk of developing disfiguring permanent alopecia, Defendants continued and continue to market, manufacture, distribute, and/or sell docetaxel/Taxotere to consumers, including Plaintiffs.

106.    Defendants negligently and improperly failed to perform sufficient post-market tests and surveillance, forcing Plaintiffs, Plaintiffs' physicians, and hospital to rely on safety information that did not accurately represent the risks and benefits associated with the use of docetaxel/Taxotere as compared to other products already commercially available to treat the same types of cancer docetaxel/Taxotere was meant to treat.

107.    Defendants knew or should have known that consumers such as Plaintiffs would use their product and would foreseeably suffer injury as a result of Defendants' failure to exercise reasonable care, as set forth above.

108.    Defendants' negligence was the proximate cause of Plaintiffs' injuries, harms, damages, and losses.

109.    As a direct and proximate result of the use of docetaxel/Taxotere, Plaintiffs experienced disfiguring permanent alopecia.

110.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SECOND CLAIM FOR RELIEF

### (Strict Products Liability – Failure to Warn – Against All Defendants)

111.    Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

112.    The docetaxel/Taxotere that Defendants sold, marketed, distributed, supplied and placed into the stream of commerce was defective in that it failed to include adequate warnings regarding all adverse side effects associated with the use of docetaxel/Taxotere. The warnings given by Defendants did not sufficiently and/or accurately reflect the symptoms, type, scope, severity, or duration of the side effects and, in particular, the risks of disfiguring permanent alopecia.

113.    Winthrop U.S. is a business unit or division operating of Sanofi. As the holder for the Reference Listed Drug ("RLD") of brand-name docetaxel/Taxotere, the Sanofi Defendants supplied the labeling for Winthrop U.S.'s generic version of docetaxel/Taxotere. All of the labeling for the generic version was also defective because it failed to adequately warn of the risk of disfiguring permanent alopecia.

114.    Defendants failed to provide adequate warnings to physicians and users, including Plaintiffs' physicians and Plaintiffs, of the increased risk of disfiguring permanent alopecia associated with docetaxel/Taxotere, and Defendants aggressively and fraudulently promoted the product to physicians.

115.    As a direct and proximate result of Defendants' failure to warn of the potentially severe adverse effects of docetaxel/Taxotere, Plaintiffs suffered disfiguring permanent alopecia and other conditions.

116.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

### THIRD CLAIM FOR RELIEF

### (Fraudulent Misrepresentation – Against Sanofi Defendants)

117.    Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

118.    Sanofi Defendants falsely and fraudulently represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that docetaxel/Taxotere had been tested and was found to be safe and effective for the treatment of certain forms of cancer.

119.    When warning of safety and risks of docetaxel/Taxotere, Sanofi Defendants fraudulently represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that docetaxel/Taxotere had been tested and was found to be safe and/or effective for its indicated use.

120.    Sanofi Defendants concealed their knowledge of docetaxel's defects from Plaintiffs, Plaintiffs' physicians, and the public in general and/or the medical community specifically including, but not limited to, concealing their knowledge of the risk of developing disfiguring permanent alopecia.

121.    Sanofi Defendants concealed their knowledge of the defects in their products from Plaintiffs, Plaintiffs' physicians, hospitals, pharmacists, and the public in general.

122.    Sanofi Defendants made these false representations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing Plaintiffs, Plaintiffs' physicians, the public in general, and the medical community in particular, to recommend, dispense, and/or purchase Taxotere for use in the treatments of various forms of cancer, including but not limited to breast cancer, all of which evidenced a callous, reckless, willful, wanton, and depraved indifference to the health, safety, and welfare of Plaintiffs.

123.    Sanofi Defendants made these false representations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, as well as the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense, and/or purchase Taxotere for use in the treatments of various forms of cancer, including but not limited to breast cancer.

124.    When Sanofi Defendants made these representations, Defendants knew those representations were false, and Defendants willfully, wantonly, and recklessly disregarded whether the representations were true.

125.    At the time Sanofi Defendants made the aforesaid representations, and, at the time Plaintiffs used Taxotere, Plaintiffs and Plaintiffs' physicians were unaware of the falsity of Defendants' representations, and Plaintiffs and Plaintiffs' physicians reasonably believed them to be true.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

126.    In reliance upon Sanofi Defendants' representations, Plaintiffs and Plaintiffs' physicians were induced to and did use and prescribe Taxotere, which caused Plaintiffs to sustain severe, permanent, and disfiguring personal injuries.

127.    Sanofi Defendants knew and were aware or should have been aware that lacked adequate and/or sufficient warnings.

128.    Sanofi Defendants knew or should have known that Taxotere had a potential to, could, and would cause severe and grievous injury to the users of Taxotere, including, but not limited to, the development of permanent disfiguring alopecia, and that Taxotere was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

129.    Sanofi Defendants acted fraudulently, wantonly, and maliciously to the detriment of Plaintiffs.

130.    As a result of the foregoing acts and omissions, Sanofi Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

**FOURTH CLAIM FOR RELIEF**

**(Fraudulent Concealment – Against Sanofi Defendants)**

131.    Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

132.    At all times during the course of dealing between Sanofi Defendants and Plaintiffs and Plaintiffs' healthcare providers, Defendants misrepresented the effectiveness and safety of Taxotere for its intended use.

29

133.     Sanofi Defendants knew or were reckless in not knowing that its representations were false.

134.     In representations made to Plaintiffs and Plaintiffs' healthcare providers, Sanofi Defendants fraudulently concealed and intentionally omitted the following material information:

      (a)     that Taxotere was not as safe as other forms of treatment for which Taxotere was marketed and sold to cancer patients;

      (b)     that the risks of adverse events with Taxotere were higher than those with other forms of treatment for which Taxotere was marketed and sold to cancer patients;

      (c)     that the risks of adverse events with Taxotere were not adequately tested and/or known by Defendants;

      (d)     that Defendants were aware of dangers in Taxotere, in addition to and above and beyond those associated with other forms of treatment for cancer patients;

      (e)     that Taxotere was defective in that it caused dangerous side effects as well as other severe and permanent health consequences in a much more and significant rate than other forms of treatment for cancer patients;

135.     Sanofi Defendants had a duty to disclose to Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers the defective nature of Taxotere, including but not limited to the heightened risks of disfiguring permanent alopecia.

136.     Sanofi Defendants had sole access to material facts concerning the defective nature of Taxotere and its propensity to cause serious and dangerous side effects, including, but not limited to, disfiguring permanent alopecia, and therefore cause damage to persons who used Taxotere, including Plaintiffs, in particular.

137.     Sanofi Defendants' concealment and omissions of material facts concerning the safety of Taxotere was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs, Plaintiffs' physicians, hospitals, and healthcare providers into reliance on the

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

continued use of Taxotere and to cause them to purchase, prescribe, and/or dispense Taxotere and/or use Taxotere.

138.    Sanofi Defendants knew that Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers had no way to determine the truth behind Defendants' concealment and omissions, including the material omissions of facts surrounding Taxotere set forth herein.

139.    Plaintiffs, Plaintiffs' physicians, healthcare providers, and/or hospitals reasonably relied on information revealed by Sanofi Defendants that negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

140.    As a result of the foregoing acts and omissions, Sanofi Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## FIFTH CLAIM FOR RELIEF

### (Strict Product Liability for Misrepresentation – Against All Defendants)

141.    Plaintiffs repeat, reiterate, and re-allege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

142.    Defendants sold the docetaxel/Taxotere that Plaintiffs' physicians prescribed for Plaintiffs and that Plaintiffs used.

143.    Defendants were engaged in the business of selling the docetaxel/Taxotere for resale, use, or consumption.

144.    Defendants misrepresented facts as set forth herein concerning the character or quality of the docetaxel/Taxotere that would be material to potential prescribers and purchasers or users of the product.

31

145.     Defendants' misrepresentations were made to potential prescribers and/or purchasers or users as members of the public at large.

146.     As a purchasers or users, Plaintiffs reasonably relied on the misrepresentation.

## SIXTH CLAIM FOR RELIEF
### (Fraud and Deceit – Against Sanofi Defendants)

147.     Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

148.     Sanofi Defendants committed fraud by omission in applying for and gaining patent protection for Taxotere resulting in increased sales and market penetration. This increased market penetration was the proximal cause of Plaintiffs' exposure to the side effects of Taxotere.

149.     Sanofi Defendants fraudulently claimed superior efficacy over other products intended to treat the same conditions that Taxotere was intended to treat. These fraudulent representations were the proximal cause of Plaintiffs' exposure to the side effects of Taxotere.

150.     Sanofi Defendants intentionally distributed false information, including but not limited to assuring Plaintiffs, Plaintiffs' physicians, hospitals, healthcare professionals, and/or the public that Taxotere was safe and effective for use in the treatment of various forms of cancer, including breast cancer.

151.     Sanofi Defendants intentionally omitted certain results of testing and or research to Plaintiffs, Plaintiffs' physicians, healthcare professionals, and the public.

152.     Sanofi Defendants had a duty when disseminating information to Plaintiffs, Plaintiffs' physicians, and the public to disseminate truthful information.

153.     Sanofi Defendants had a duty when disseminating information to Plaintiffs, Plaintiffs' physicians, and the public not to deceive Plaintiffs, Plaintiffs' physicians, and/or the public.

154.     The information Sanofi Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public, including but not limited to reports, press releases, advertising

campaigns, and other forms of media contained material representations of fact and/or omissions.

155.    The information Sanofi Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that Defendants' drug Taxotere was safe and effective for the treatment of various forms of cancer, including breast cancer.

156.    The information Sanofi Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that Defendants' drug Taxotere carried the same risks, hazards, and/or dangers as other forms of treatment for the same conditions that Taxotere was intended to treat.

157.    The information Sanofi Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that Taxotere was not injurious to the health and/or safety of its intended users.

158.    The information Sanofi Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that Taxotere was no more injurious to the health and/or safety of its intended users than other forms of cancer treatments.

159.    These representations by Sanofi Defendants were all false and misleading, as Taxotere carried with it the serious risk of developing disfiguring permanent alopecia.

160.    Sanofi Defendants intentionally suppressed, ignored, and disregarded test results not favorable to Defendants and that demonstrated that Taxotere was not safe as a means of treatment for certain types of cancer that Taxotere was intended to treat.

161.    Sanofi Defendants intentionally made material misrepresentations to Plaintiffs, Plaintiffs' physicians, and the public, including the medical profession, regarding the safety of Taxotere, specifically but not limited to Taxotere not having dangerous and serious health and/or safety concerns.

162.    Sanofi Defendants intentionally made material misrepresentations to Plaintiffs, Plaintiffs' physicians, and the public in general, including the medical profession, regarding the

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

safety of Taxotere, specifically but not limited to Taxotere being as safe as other products that treat the same conditions that Taxotere was intended to treat.

163.    It was Sanofi Defendants' intent and purpose in making these false representations to deceive and defraud Plaintiffs, Plaintiffs' physicians, and/or the public and to gain the confidence of Plaintiffs, Plaintiffs' physicians, the public, and/or healthcare professionals to falsely ensure the quality and fitness for use of Taxotere and induce Plaintiffs, Plaintiffs' physicians, and the public, including the medical profession, to purchase, request, dispense, prescribe, recommend, and/or continue to use Taxotere.

164.    Sanofi Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiffs, Plaintiffs' physicians, the public, and/or healthcare professionals that Taxotere was fit and safe for use as treatment for certain types of cancer, including breast cancer.

165.    Sanofi Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiffs, Plaintiffs' physicians, the public, and healthcare professionals that Taxotere was fit and safe for use as treatment of certain forms of cancer and did not pose risks, dangers, or hazards above and beyond those associated with other forms of treatment.

166.    Sanofi Defendants made false claims and false representations in its documents submitted to Plaintiffs, Plaintiffs' physicians, the public, and healthcare professionals that Taxotere did not present risks related to disfigurement secondary to permanent alopecia.

167.    Sanofi Defendants made false claims and false representations in its documents submitted to Plaintiffs, Plaintiffs' physicians, the public, and healthcare professionals that Taxotere did not present health or safety risks greater than other forms of treatment for the same conditions Taxotere was intended to treat.

168.    Sanofi Defendants made these and other representations with the intention of deceiving and defrauding Plaintiffs and Plaintiffs' respective healthcare professionals.

169.    Sanofi Defendants made these and other representations in order to induce Plaintiffs and Plaintiffs' respective healthcare professionals to rely upon the misrepresentations.

170. Sanofi Defendants' false misrepresentations caused Plaintiffs and/or Plaintiffs' healthcare professionals to purchase, use, rely on, request, dispense, recommend, and/or prescribe Taxotere.

171. Sanofi Defendants recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of Taxotere to the public at large, and Plaintiffs and Plaintiffs' physicians in particular, for the purpose of influencing the marketing of a product Defendants knew was dangerous and defective and/or not as safe as other alternatives, including other forms of treatment for cancer.

172. Sanofi Defendants willfully and intentionally failed to disclose, concealed, and/or suppressed the material facts regarding the dangerous and serious health and/or safety concerns related to Taxotere.

173. Sanofi Defendants willfully and intentionally failed to disclose the truth and material facts related to Taxotere and made false representations with the purpose of deceiving and lulling Plaintiffs and Plaintiffs' respective healthcare professionals into a sense of security so that Plaintiffs and Plaintiffs' healthcare professionals would rely on Defendants' representations to purchase, use, dispense, prescribe, and/or recommend Taxotere.

174. Sanofi Defendants, through their public relations efforts, which included but were not limited to public statements and press releases, knew or should have known that the public, including Plaintiffs and Plaintiffs' respective healthcare professionals, would rely upon the information being disseminated.

175. Plaintiffs and their respective healthcare professionals did in fact rely on and believe Sanofi Defendants' false representations to be true at the time they were made, and they relied upon Defendants' false representations and superior knowledge of how Taxotere would treat certain forms of cancer that Taxotere was intended to treat.

176. At the time Sanofi Defendants' false representations were made, Plaintiffs and/or Plaintiffs' respective healthcare providers did not know the truth and were not with reasonable diligence able to discover the truth with regard to the dangerous and serious health and/or safety concerns of Taxotere.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

177. Plaintiffs and their healthcare providers did not discover the true facts with respect to Sanofi Defendants' false representations and the dangerous and serious health and/or safety concerns of Taxotere, and Plaintiffs and their healthcare providers with reasonable diligence could not have discovered the true facts.

178. Had Plaintiffs and their healthcare providers known the true facts with respect to the dangerous and serious health and/or safety concerns of Taxotere, Plaintiffs would not have purchased, used, and/or relied on Sanofi Defendants' drug Taxotere.

179. Sanofi Defendants' aforementioned conduct constitutes fraud and deceit, and it was committed and/or perpetrated willfully, wantonly, and/or purposefully on Plaintiffs.

180. As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

### SEVENTH CLAIM FOR RELIEF

**(Extreme and Outrageous Conduct / Intentional Infliction
of Emotional Distress – Against All Defendants)**

181. Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

182. Defendants' conduct, as set forth above, was extreme and outrageous.

183. Defendants' actions were done recklessly or with the intent of causing Plaintiff severe emotional distress; and

184. Defendants' conduct caused Plaintiffs severe emotional distress.

185. As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and

36

lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants SANOFI-AVENTIS U.S. LLC; SANOFI US SERVICES INC. f/k/a SANOFI-AVENTIS U.S. INC.; MCKESSON CORPORATION; SANDOZ INC.; ACCORD HEALTHCARE, INC.; and DOES 1 through 30, inclusive. The extreme and outrageous conduct of the Defendants, and each of them, was done with conscious disregard for causing Plaintiffs to suffer injury, justifying an award of exemplary and punitive damages in an amount to be determined at trial by the trier of fact for her injuries, harms, damages, and losses as set forth above. Plaintiffs also seek special damages, costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other injuries and damages as shall be proven at trial, and such other further relief as the Court may deem appropriate, just, and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED:  December 11, 2017                    Respectfully submitted,

                                             **CUTTER LAW P.C.**

                                             By: _____

                                             C. Brooks Cutter
                                             *Attorney for Plaintiffs*

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.