1                  UNITED STATES DISTRICT COURT

2                  EASTERN DISTRICT OF LOUISIANA

3


4
     IN RE:  TAXOTERE (DOCETAXEL)      *
5    PRODUCTS LIABILITY LITIGATION     *        16-MD-2740
                                       *
6                                      *        Section H
     Relates to:  16-CV-17039          *
7                                      *        September 14, 2022
                                       *
8    *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

9

10                     ORAL ARGUMENT BEFORE
                  THE HONORABLE JANE T. MILAZZO
11                UNITED STATES DISTRICT JUDGE

12
     Appearances:
13

14   For the Plaintiffs:          Pendley Baudin & Coffin, LLP
                                   BY:  CHRISTOPHER L. COFFIN, ESQ.
15                                 1100 Poydras Street, Suite 2225
                                   New Orleans, Louisiana 70163
16

17   For the Sanofi               Irwin Fritchie Urquhart Moore
     Defendants:                    & Daniels, LLC
18                                 BY:  DOUGLAS J. MOORE, ESQ.
                                   400 Poydras Street, Suite 2700
19                                 New Orleans, Louisiana 70130

20
     Official Court Reporter:     Toni Doyle Tusa, CCR, FCRR
21                                500 Poydras Street, Room B-275
                                  New Orleans, Louisiana 70130
22                                (504) 589-7778

23


24   Proceedings recorded by mechanical stenography using
     computer-aided transcription software.
25

1                              <u>INDEX</u>

2                                                        <u>Page</u>

3    Oral Argument

4          Christopher L. Coffin, Esq.                     3

5          Douglas J. Moore, Esq.                         11

6          Christopher L. Coffin, Esq.                    17

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>**PROCEEDINGS**</u>

**(September 14, 2022)**

THE COURT:  Are we ready for oral argument?

MR. COFFIN:  Yes, Your Honor.

Good morning, Your Honor.

THE COURT:  Good morning.

MR. COFFIN:  I'm Chris Coffin here on behalf of Ms. Elizabeth Kahn.  We are here on plaintiff's Rule 60(b) motion.  We are here because of the Fifth Circuit Court of Appeals ruling in the *Earnest* matter.

At the heart of the Fifth Circuit's ruling is new rules that have been set for how TAX316 can be or cannot be presented to a jury in the Taxotere cases, certainly in this MDL.  It has far-reaching ramifications not just in the *Earnest* case, but also in the *Kahn* case and, quite frankly, in all the cases that exist in this MDL.  Because TAX316 is the heart of what the Fifth Circuit was ruling on in *Earnest*, that's going to be the focus of my argument and is the focus of 60(b).

THE COURT:  Why would I give an indicative judgment?  Why would I do that?  Why not just let the Fifth Circuit handle it?  What do I bring to the table at this point?

MR. COFFIN:  What you bring to the table is the knowledge of what had happened in the *Earnest* case, what had happened in the *Kahn* case -- being the trial judge, you sat through both of those, which is very unique, obviously, in a

60(b) situation -- and the efficiencies of not having the
Fifth Circuit Court of Appeals deal with appellate issues, have
the parties deal with the briefing and the argument on all of
the appellate issues, and this is what 60(b) is created for.

        60(b) is created for this exact situation.  To
be clear, procedurally plaintiffs, we have filed our appellate
notice.

        **THE COURT:**  Right.

        **MR. COFFIN:**  There's a briefing schedule set out.  We
filed the 60(b).  We asked the Fifth Circuit to stay or delay
the initial briefing in the appellate court and the
Fifth Circuit, over Sanofi's objection, partially granted that.
So the Fifth Circuit now is waiting to see how this Court will
react.  I think that's because, to answer your question,
Your Honor and this Court has the most knowledge certainly
about this MDL and definitively about the *Kahn* matter.

        **THE COURT:**  What testimony could you have elicited
from Dr. Kopreski that was not presented at trial?  What did he
say that was not heard by the jury from some other Sanofi
witness?

        **MR. COFFIN:**  Well, the answer to that question is you
will recall in the *Kahn* trial the plaintiffs didn't put forth
any of Dr. Kopreski's testimony.

        **THE COURT:**  I know that, and you could have.

        **MR. COFFIN:**  Right.

10:48

 1          **THE COURT:**  I didn't preclude you from calling
 2   Dr. Kopreski.
 3          **MR. COFFIN:**  Right.  Understood.  The real issue is
 4   what Ms. Kahn did not present to the jury was TAX316 through
 5   the eyes of the plaintiff's experts.  We had TAX316, which is a
 6   randomized controlled trial, run by Sanofi, over 1,400 women.
 7   4 percent of the women experienced ongoing permanent alopecia,
 8   which is the pinnacle of this case.  The main piece of
 9   evidence, the most important piece of evidence for the
10   plaintiff on general causation is TAX316.
11          **THE COURT:**  We heard about TAX316.
12          **MR. COFFIN:**  Not in the way that Ms. Kahn should have
13   been able to present it and here is why.  Here is why.
14              First of all, let me just back up one second.
15   We all agree TAX316 is a huge piece.  Your Honor has said so.
16   We know it.
17          **THE COURT:**  I agree.
18          **MR. COFFIN:**  It's huge.  For any pharmaceutical
19   products case, to have the company's own data to present to the
20   jury to say, "Look, they found 4 percent of the women had this
21   problem" --
22          **THE COURT:**  I got that --
23          **MR. COFFIN:**  -- huge issue.
24          **THE COURT:**  -- but the jury heard about TAX316.
25          **MR. COFFIN:**  No, they did not, not like in *Earnest*,

10:49

1    and you can look at, Your Honor knows well, how we presented
2    the evidence in *Earnest.*  We put TAX316 out there on a big
3    screen.  It was a huge issue.  We presented a lot of evidence
4    from Dr. Madigan, Dr. Plunkett -- I am forgetting the other
5    right off the top of my head, but multiple experts.  We avoided
6    TAX316 like the plague in the *Kahn* trial strategically.
7         It was a strategic decision by us, but it was a
8    strategic decision by us because we had already seen the movie.
9    We had already seen the movie, the same trial team, the same
10   lead counsel -- and I'm personal counsel, my firm is, for
11   Ms. Kahn.  I could not let our trial team and our experts
12   present evidence on TAX316 and then fall into the same problem
13   that we had in *Earnest*, and you know very well what that
14   problem was.
15        The problem was once we presented all the
16   evidence on TAX316, then we had to face Dr. Kopreski's
17   reanalysis -- after the data was locked, by the way, which you
18   well know -- his reanalysis, and we had to face Sanofi's
19   counsel saying, "Dr. Kopreski is the only one who looked under
20   the hood.  If you really want to know what happened in TAX316,
21   you have to read the whole book."
22        They created the problem, Sanofi.  It created
23   the problem for us that we could not put Ms. Kahn in a position
24   of opening that door with our experts so that then Dr. Kopreski
25   would be played or would testify live and he would then

1    dismantle TAX316.

2              We should never have been put in that position,

3    and this is really the point.  You want the big point of all of

4    this?  Could we have put Kopreski up?  Did Your Honor grant our

5    motion?  Yes.  Would he have been subject to cross-exam?  Yes,

6    but we should have never been put in that position.  We were

7    put in a position because of Sanofi's actions.

8              The Fifth Circuit calls it smuggling.  The

9    Fifth Circuit calls it an end around of 702.  That's exactly

10   what it was.  It put us and Ms. Kahn and our trial team in a

11   position of saying, "Oh, my goodness.  We can't highlight

12   TAX316," and we didn't.

13             What did we do?  You will remember.  We used

14   case reports and pompoms to try to show how high the numbers

15   were.  Why didn't we just put up on a big screen 4 percent from

16   TAX316?  "Look, jury, it's TAX316.  It's the pinnacle.  It's

17   the gold standard."  We were handcuffed.  It was a catch-22.

18             If the rules had been different, like the

19   Fifth Circuit says they should have been, and we didn't have to

20   even consider that the defense would bring the reanalysis and

21   we didn't even have to consider that their experts, defense

22   experts, would rely on the reanalysis, if we didn't have to

23   consider any of that, absolutely we would have put TAX316 up in

24   big lights.  For all the reasons I said, it is the single most

25   important piece of general cause evidence, and we couldn't do

10:53

1    it because we couldn't take the risk that we took in *Earnest*.

2              My third point, because I have already gone

3    through one and two, is that Your Honor should enter an

4    indicative ruling telling the Fifth Circuit that you intend to

5    grant this motion because it hasn't only been unfair and

6    prejudicial to Ms. Kahn, but it is unfair and prejudicial to

7    the 11,000 other women.

8              I would like to read just a short piece that's

9    actually from Your Honor's Order and Reasons on the motion to

10   quash the trial subpoena of Michael Kopreski.  What the Court

11   said is that Sanofi uses Dr. Kopreski and its experts who rely

12   on Dr. Kopreski's findings to undercut the claims of all

13   plaintiffs in this MDL, not just the bellwether plaintiff.

14   That's absolutely true because this is general causation, which

15   the defendants have over and over and over denied exists, and

16   so we have to present evidence at trial of general causation.

17             The best piece of evidence is TAX316.  We

18   couldn't do it in *Kahn*.  Now we have all the pretrial rulings,

19   including a partial motion for summary judgment that Your Honor

20   denied largely because of the reanalysis from Dr. Kopreski.

21   That's in *Kahn*.  We have other pretrial rulings, including

22   *Daubert* rulings, that still stand in the *Kahn* case.  Those

23   shouldn't be allowed to stand because they will affect the

24   other 11,000-plus women in this case on remand, and that is

25   prejudicial and unfair to all of those women.

10:54

1          So for all of those reasons -- you look puzzled,
2    and I'm happy to answer a question, but for all those
3    reasons --
4          **THE COURT:**  You're asking me to make a determination
5    on Ms. Kahn but not --
6          **MR. COFFIN:**  That's correct.
7          **THE COURT:**  I think the remand cases, we have all
8    read the Fifth Circuit opinion and what Kopreski has done
9    there.  This is about Ms. Kahn's trial and just Ms. Kahn's
10   trial.  Sometimes it's hard for us to focus on today the
11   argument is just whether or not I should grant a new trial for
12   Ms. Kahn --
13         **MR. COFFIN:**  I agree with that.
14         **THE COURT:**  -- issue an indicative ruling as to that
15   particular thing, not the 11,000 other cases.  We know the
16   rules of the road for those.
17         **MR. COFFIN:**  That is correct.  I will tell you,
18   Your Honor, the reason I bring up the other MDL cases is
19   because of Rule 60(b)(5).  I believe it's the third part of
20   60(b)(5) which talks about applying the judgment prospectively
21   is no longer equitable.  I implore the Court to take a look at
22   that.  That's why I bring it up because part of 60(b) is not
23   just how will it affect this direct case, but if you apply that
24   judgment in the future, will it still be equitable, and I
25   believe that that includes -- it's a unique situation, but it

10:56

1    includes how it might affect future trials.

2                We know that in every single Taxotere trial --

3    unless the defense changes course and doesn't argue about

4    general causation, we know that every plaintiff is going to

5    have to present evidence on general causation.  We want the

6    rulings to reflect what the Fifth Circuit has said is

7    appropriate to present.  That's the only reason I brought it

8    up, but you are correct we are here on Ms. Kahn.

9          **THE COURT:**  Right.  I'm not buying that.

10               Now, it might have some effect in that it was --

11   a different result in the bellwether context.  In terms of

12   applying what the Fifth Circuit said prospectively, that's

13   easy.  Those cases have not been tried yet.

14         **MR. COFFIN:**  Understood.  No, I agree with that.  I

15   agree with that.  My interpretation was a little bit different

16   about the third part of 60(b)(5), but I understand what you are

17   saying.

18               I think in the MDL we are in a different

19   situation, certainly, than any of the other cases that have

20   been cited.  It's a pretty unique situation where the same

21   trial team, the same leadership is trying one case, and then

22   they turn around and we all know -- we saw the movie the first

23   time, and the movie was playing exactly out as it had the first

24   time, and now the rules have changed.

25               We request that the Court issue an indicative

10:58

1    ruling to the Fifth Circuit indicating that the Court intends
2    to grant plaintiff's motion.  Thank you, Your Honor.
3            **THE COURT:**  Thank you.
4            **MR. MOORE:**  Good morning, Your Honor.  Douglas Moore
5    on behalf of Sanofi.
6                    I wanted to stay a little bit flexible in where
7    I would kind of begin my comments because I wanted to see what
8    the focus of Your Honor's questioning would be and what the
9    focus of Mr. Coffin's remarks might be to kind of think of a
10   sensible place to begin.  I think the right spot is to point
11   out that Mr. Coffin didn't really answer your question, which
12   was why not just bring this up in front of the Fifth Circuit.
13                   The answer to that question and the answer to
14   why they filed this motion is because they didn't preserve this
15   issue, the issue as it's articulated in their brief, not
16   exactly what Mr. Coffin just said, which I'm going to address
17   in a second.
18                   The issue they articulated in their brief is
19   that their liability case was impacted by this Court's rulings
20   on Dr. Kopreski.  The reason they filed this motion months
21   after the *Earnest* decision came out and only one week before
22   their brief was due is because that issue is not preserved on
23   the *Kahn* trial record, and they are hoping that something will
24   happen today or in Your Honor's ruling that will make it an
25   appellate issue.

10:59

1       As for the argument that we just heard, not that
2   their liability case was impacted by the ominous presence of
3   Dr. Kopreski's testimony about TAX316, but it was their
4   causation case they had to do the pompoms instead of putting up
5   TAX316 data on the screen.  The jury did hear about TAX316.
6   They couldn't have established general causation if they didn't
7   bring it up through at least one witness, and they did.  They
8   chose to bring it out the way that they did.

9       There's three points that I would make on the
10  argument that we heard that their causation case was impacted:

11      Number one, that's not the argument they made in
12  the brief.  The argument was that there was certain liability
13  testimony from Dr. Kopreski that they were not able to offer
14  because of this tactical decision they made.  That's number
15  one.

16      Number two, they lost on liability.  They did
17  not lose on causation.  It doesn't matter what their causation
18  evidence was.  The jury never got to that question.

19      Then the third point and what really draws, I
20  think, a fallacy in the idea that their causation case was
21  impacted because of Dr. Kopreski is Dr. Ellen Chang.  Dr. Ellen
22  Chang did her independent analysis of TAX316 the same way that
23  Dr. Kopreski did.  She did not suffer the defect that the
24  Fifth Circuit found with Dr. Kopreski because she did an expert
25  report, she went through the Court's gate-keeping function, and

11:01

1    her testimony was deemed admissible.  If they would have
2    brought up TAX316 and tried their TAX316 case the way he now
3    says they would have done, it would have been Dr. Ellen Chang
4    taking the stand possibly for the defense to address that.

5            So that brings me, I think, to an overarching
6    point in this motion that we can't really lose focus on, and
7    that is the plaintiffs had no control at any time over whether
8    Dr. Kopreski would provide testimony about his TAX316 analysis.
9    They say in their motion on page 2 -- and this is the premise
10   of their whole tactical decision -- had Ms. Kahn called
11   Dr. Kopreski in her case in chief, she would have risked Sanofi
12   bringing before the jury the same Kopreski reanalysis, as they
13   call it, that resulted in prejudice to Ms. Earnest.

14           How?  How would that have changed whether or not
15   Sanofi decided to call Dr. Kopreski?  It couldn't have.  We had
16   a hundred percent control over whether or not this jury was
17   going to hear testimony from Dr. Kopreski about TAX316, and the
18   fact is they never heard that evidence.

19           It seems that the whole argument is based on the
20   presumption that something they did in their case mattered as
21   to whether or not Dr. Kopreski ever took the stand.  I think
22   that when you look at the testimony they cite that they say
23   they were deprived of putting on, which is really only five
24   questions -- it's six.  It's on page 7 of their brief.  If you
25   look at those seven questions -- we put this in a footnote, but

11:03

1    I want to emphasize this here because I think it's important.

2                    Of that testimony, some of it wasn't even

3    designated by the plaintiffs.  Some of it was designated by

4    Sanofi.  They objected to it at the time, when we were trying

5    the case.  So it seems incredulous to me that a week before

6    their appellate brief is due, months after the *Earnest* decision

7    came out, they take the position in their papers that this is

8    mission critical testimony for their liability case that they

9    would have offered when at the time, when we were trying the

10   case, they didn't even designate part of it and, in fact,

11   objected to some of it.  I don't think that this testimony

12   that's on page 7 became relevant until after they lost the

13   case.

14                    As Your Honor, I think, alluded to in your

15   question, which of this testimony could not have been provided

16   by some other witness, and the answer to that question is none

17   of it because, as we pointed out in our brief and we gave you

18   the trial transcript citations, all of that testimony, similar

19   testimony, was adduced some from Sanofi witnesses, some from

20   their experts.  These points that are made in the five

21   questions were all heard by the jury.

22                    So we don't think that this tactical decision

23   that they are referring to was one that was based on this

24   mission critical need for this liability evidence.  If there

25   was one as it relates to Dr. Kopreski and what they didn't want

11:04

1   the jury to hear was that ongoing, as defined in the study

2   protocol, does not mean clinical evidence of PCIA.  That's what

3   Dr. Kopreski said.  That's what Dr. Ellen Chang would have

4   said.  That's the truth.

5          I agree the truth is a problem for all 11,000

6   plaintiffs in this litigation, but none of that evidence ever

7   came in this case because they lost on liability.  So there

8   can't be any grounds under Rule 60(b) for the granting of this

9   motion.  Of course, the Court lacks jurisdiction.  You would

10  have to only indicate what Your Honor would do.

11         For the grounds that they stated, Rule 60(b)(5)

12  requires that this intervening change of the law be the basis

13  of the judgment they are seeking to get a new trial on.  The

14  evidence that the intervening change in the law relates to was

15  never heard by the jury, so it could never be the basis of the

16  jury's verdict.  The jury never heard the evidence and

17  60(b)(5), therefore, is not a basis upon which to grant this

18  motion.

19         The other argument they make is under 60(b)(6).

20  The problem with that is you have to have a separate argument.

21  You can't make your 60(b)(5) argument under 60(b)(6).  There

22  has to be separate, independent grounds and there must be

23  exceptional circumstances, which in this case we simply don't

24  believe that those grounds exist.  This was an issue that if

25  they believed at the time they were being prejudiced, they

11:06

1    needed to raise that with Your Honor.

2                    We got to the point in this case where
3    Your Honor said Dr. Kopreski is -- "I'm not going to let you
4    use video and then force them to put him on live.  If you use
5    video in your case, they can use video in their case.  If you
6    call him live, then they are going to have to call him live,
7    and you can have your robust cross-examination on TAX316."

8                    What never happened after that was anything on
9    Dr. Kopreski.  They didn't come to court and say, "Well,
10   Your Honor, we have this really important liability evidence
11   that we want to put in during our case in chief.  We are
12   worried that if we bring him in our case that they are going to
13   hijack our case with TAX316 analysis.  Cross-examination, they
14   will go beyond the scope of our direct, and we want you to
15   limit them."  They never asked you to do that.  They never
16   filed a motion on it.  They never made a proffer on whatever
17   this testimony was.  They never came into court and presented
18   this in any way.

19                   Of course, that presumption they are making that
20   if they called Dr. Kopreski in their case would have led to
21   TAX316 coming in -- I presume they mean in their case, but
22   maybe at some other point in the trial -- they have to make a
23   record of that.  Your Honor has to say, "No, I'm going to let
24   them cross-examine him beyond the scope of your direct
25   examination."  They never made that request of you.  You never

1   made that ruling.

2           It also presumes that if they had made that

3   request, we would have said, "Well, we want to add

4   Dr. Kopreski's TAX316 analysis to the plaintiff's case in

5   chief."  It presumes we would have said that without the

6   *Earnest* decision having come out yet, which is a bold

7   presumption, I would say.

8           So for those reasons, Your Honor, we think this

9   issue is not timely.  It should have been preserved at trial.

10  It should have been preserved after trial.  They should have

11  raised it when the *Earnest* motion came out.  One of the first

12  elements under Rule 62.1 is that this motion has to be timely.

13  We think waiting three months, up until one week before your

14  brief is due, is not timely.  For those reasons, Your Honor, we

15  think that the grounds under 60(b) are not satisfied.  We ask

16  Your Honor to deny the motion.

17           **THE COURT:**  Thank you.

18           Mr. Coffin.

19       **MR. COFFIN:**  Your Honor, the timeliness issue is

20  really a red herring.  We filed the 60(b) within three months

21  of the Fifth Circuit's ruling.

22           The point that we did not address the testimony,

23  the reanalysis of Dr. Kopreski in *Kahn*, we didn't file the

24  right motion, we didn't address it, a huge number of our

25  pretrial motions addressed the problem that we saw in *Earnest*

11:09

1    about Dr. Kopreski's reanalysis.  It's the same problem we saw

2    in *Kahn*.

3                The point about the liability evidence in our

4    appeal, our appeal does deal with the liability evidence, and

5    we were affected in our trial strategy putting forth liability

6    evidence and causation evidence in anything.  Quite frankly,

7    the truth is we avoided TAX316 like the plague.  All you have

8    to do is look at what we did in *Earnest* versus what we did in

9    *Kahn*, and that is the honest truth about what we did.

10               There is no other reason why we wouldn't plaster

11   TAX316, Sanofi's own study, in front of the jury, plaster it up

12   on the wall.  There's no other reason.  It was a trial strategy

13   move because we saw what had happened in *Earnest* and, yes, it

14   affected whether we were going to put the liability testimony

15   of Kopreski on.  It also affected exactly how we presented our

16   causation case.  That's the truth.

17               Dr. Chang.  I've looked at Dr. Chang's reliance

18   materials.  Included in Dr. Chang's reliance materials is

19   testimony of Dr. Michael Kopreski.  Had we had the guidance of

20   the Fifth Circuit prior to the *Daubert* rulings, perhaps the

21   ruling on Dr. Chang may have come out differently.  I don't

22   know the answer to that.  I don't know how the Court would have

23   ruled.  Maybe she saw information, relied on information about

24   the reanalysis when she made her reanalysis.  I don't know.

25   None of us know.  The point is it's just not fair.  This is a

1    fairness issue.

2                    And the truth -- Mr. Moore comes out with the

3    truth is a problem for 11,000 plaintiffs in this MDL?  It's

4    preposterous.

5                    Let's listen to what the Fifth Circuit said

6    about Sanofi:

7                    "Sanofi's maneuvers in cloaking Dr. Kopreski's

8    quasi-expert testimony as 'lay witness' opinion testimony under

9    Federal Rule of Evidence 701, and then using Dr. Glaspy to

10   repeat it as expert analysis, effected a concerning end run

11   around Rule 702.  Because this strategy allowed Sanofi to

12   shoehorn inadmissible opinion testimony into evidence -- and

13   then emphasize those 'expert' conclusions in closing arguments

14   to the jury -- significantly prejudiced Earnest's case."

15                   It did the same thing to Ms. Kahn because we

16   avoided that so that we wouldn't have the same problem.

17                   The last thing I will read is what the

18   Fifth Circuit says, not what Chris Coffin says as an advocate

19   for Ms. Kahn.  What the Fifth Circuit said is:

20                   "Sanofi effectively smuggled inadmissible

21   opinion testimony past the expert disclosure and expert

22   discovery obligations imposed by the discovery and evidentiary

23   rules by offering Dr. Kopreski as a lay witness.  Then Sanofi

24   used that inadmissible testimony to bootstrap yet more expert

25   testimony from Dr. Glaspy.  Sanofi then relied on its only two

11:12

1    witnesses' testimony to argue during closing argument that the
2    plaintiff's 'whole case fails.'"
3                    That's what we did not want to face again.  At
4    the Fifth Circuit argument -- I listened to the Fifth Circuit
5    argument -- Sanofi's appellate counsel, Ms. Eisenstein, was
6    asked a very pointed question.  It was a wonderful question
7    from the bench.  "Well, Ms. Eisenstein, why didn't you just
8    have one of your experts who had actually been qualified as an
9    expert under 702 just provide the reanalysis?"
10                   She never really answered the question.  It's a
11   wonderful question.  It's because nobody else would have done
12   it.  We, as the plaintiff's lawyers -- of course, we felt the
13   exact same way, but we didn't want to take the risk that we
14   would be stuck with Dr. Kopreski presenting that same
15   reanalysis again or any of the other experts being able to rely
16   on that.
17                   We didn't know what the defense was going to put
18   in their case, and we didn't want to open the door by having
19   our experts highlighted.  That's the honest-to-goodness truth,
20   Your Honor, and that majorly affected our trial strategy.  It
21   prejudiced Ms. Kahn in her ability to present the evidence in
22   the way that she should have been able to.
23                   We ask that you issue an indicative ruling,
24   Your Honor, so that you can rule on this in the plaintiff's
25   favor.  Thank you.

11:13

1      **THE COURT:**  Thank you.

2              Mr. Moore and Mr. Lambert, could I talk to y'all

3      a little while.

4              Court is adjourned.

5              (Proceedings adjourned.)

6                      * * *

7                  <u>CERTIFICATE</u>

8          I, Toni Doyle Tusa, CCR, FCRR, Official Court

9      Reporter for the United States District Court, Eastern District

10     of Louisiana, certify that the foregoing is a true and correct

11     transcript, to the best of my ability and understanding, from

12     the record of proceedings in the above-entitled matter.

13

14

15                          */s/ Toni Doyle Tusa*
                            Toni Doyle Tusa, CCR, FCRR
16                          Official Court Reporter

17

18

19

20

21

22

23

24

25