UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)           MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

         SECTION "H" (5)

THIS DOCUMENT RELATES TO
ALL CASES

**PSC MEMORANDUM IN OPPOSITION TO MOTION TO RECONSIDER AND VACATE CMO 36 AND TO STRIKE GENERAL EXPERTS' IMPROPER TESTIMONY**

MAY IT PLEASE THE COURT:

### I.   Introduction

Without any change in applicable law or authority, Sanofi's motion asks this Court to reconsider concerns previously raised and overruled by this Court. R. Doc. 13981; Case Management Order No. 36, R. Doc. 14925 (hereinafter "CMO 36"). Moreover, the motion attempts to have this Court adjudicate admissibility issues that specifically were preserved, at Sanofi's request and as memorialized in the Order:

> Ultimate determinations as to the admissibility of the preserved expert testimony are subject to the authority of the respective transferor courts. Objections to the relevance or admissibility of testimony or documents used as deposition exhibits are not waived and are preserved pending a later ruling by the Court or by the trial judge.[1]

At multiple conferences with the Court pre- and post-entry of said Order, Sanofi memorialized its position that evidentiary and admissibility issues regarding the preserved general expert testimony should be preserved for the remand courts. Indeed, pursuant to CMO 36, the Court was provided with charts containing evidentiary disclosures and objections thereto in advance of each preservation examination completed thus far. The Court declined to adjudicate such objections, to

---

[1] CMO 36 at ¶3(c).

1

preside over the depositions, and to make any evidentiary or admissibility conclusions regarding the testimony or exhibits/demonstratives.

Nonetheless, Sanofi's instant motion now claims it is prejudiced, essentially re-urging the same arguments it made previously to entry of the applicable Order.[2] But, Sanofi's complaints regarding the process were overruled, and the Order was entered; however, ultimate adjudication of the particular issues Sanofi now raises were specifically preserved for the transferor courts on remand. Setting aside the fact that sanofi cannot be prejudiced by preserved sworn testimony that is saved in electronic format, but not yet played to any jury, its motion mischaracterizes the Order as if it pre-allows that preserved testimony to be played, as is, in any trial. The plain language of the Order belies such a characterization.

Furthermore, the parties have committed substantial resources to taking four (4) days of preservation testimony of two (2) of Plaintiffs' expert witnesses (Drs. Madigan and Feigal) – direct, cross and redirect exams for each – as well as a discovery deposition of a third expert witness (Dr. Plunkett) in advance of her preservation examination. Sanofi's suggestion that the "PSC ignored [CMO 36]" in conducting these depositions is absolutely untrue and unsupportable; to the contrary, the PSC properly disclosed the reports and documents on which these experts would base their opinions, and the PSC also timely disclosed materials to be used as exhibits and demonstratives during the depositions. Multiple meet and confers occurred in advance of the depositions, and Sanofi had multiple opportunities (and exercised its right) to address concerns in advance of the preservation examinations. Defendants' current attempt to undo the process, which was carefully considered by the Court to be within the scope of the PSC's obligations to create a

---

[2] It is worth noting that CMO 36 required Sanofi to pay half of the court reporting charges for the depositions. Despite the PSC's request for payment of same, sanofi has refused to abide by the terms of the order claiming it will catch up when sanofi preserves its own general experts' testimony. *Id.* at ¶5.

trial package for counsel's use on remand, should be denied. Sanofi's requested relief to jettison the entire order is unnecessarily draconian in light of the few examples of testimony it claims is inadmissible out of over 14 hours of preserved testimony.

### A. *Background*

In the Court's recent Suggestion of Remand entered yesterday, the Court summarized its implementation of CMO 36:

> In April 2022, the Court granted the PSC's Motion to Preserve Expert Testimony and later entered CMO 36. CMO 36 set out the protocols to preserve general expert testimony by video for potential use in remanded cases. Under CMO 36, expert preservation deposition testimony is "subject to the Court's prior rulings as they relate to these witnesses," including the Court's Rule 702 rulings. In addition, the Court did not pre-adjudicate issues related to admissibility or availability—for example, whether the parties may introduce preservation deposition testimony at trial. See Fed. R. Evid. 804. The parties have completed the preservation depositions of two of Plaintiffs' experts. Preservation depositions, including depositions of Sanofi's experts, may continue in this Court after the entry of this Order.

R. Doc. 15763 at 14 (footnotes omitted).

As CMO 36 notes, significant discovery – including expert discovery – has been completed in this MDL, and Sanofi has examined each of the PSC's experts on multiple occasions, well in excess of the ordinary limit of seven (7) hours per expert. Following the experts' preservation deposition testimony on direct exam, Sanofi was allowed a full and complete cross-examination. In regard to Dr. Feigal, after a two (2) hour and 42-minute direct examination, Sanofi proceeded with over four (4) hours of cross-examination. Regarding Dr. Madigan, his direct lasted approximately two (2) hours and 50 minutes, while Sanofi's cross-examination lasted over four (4) hours. At no point during its cross-examination of either expert did Sanofi seek Court intervention to address any objections to the content or scope of the testimony.

It was for this very reason that the Court ordered that all "general expert preservation depositions shall take place … at the United States District Court for the Eastern District of Louisiana."[3] The Court already informed the parties that "the ultimate determination as to the admissibility of the preserved expert testimony are subject to the authority of the respective transferor courts."[4] Additionally, many of the issues sanofi raises concerning the testimony of Drs. Feigal and Madigan relate to testimony elicited either on cross-examination or on re-direct, after Sanofi's questioning opened the door to the experts' response.

### B. Reconsideration Standard

Because the Federal Rules of Civil Procedure do not specifically authorize motions for reconsideration, and considering Rule 59 and 60 are inapplicable by defendants' own urging, sanofi asks this Court to consider their motion as an interlocutory judgment under Rule 54(b). One of the opinions cited by sanofi states: "The standard for reviewing the vacation of an interlocutory order is hence not whether the stringent Rule 60(b) requirements are met, but is rather whether the district court abused its discretion." *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014) (citing *Zimzores v. Veterans Admin.,* 778 F.2d 264, 266 (5th Cir. 1985)). Plaintiffs do not believe the Court abused its discretion by entering CMO 36, after careful consideration of the pleadings and oral argument thereon, followed by joint submission of a mostly agreed upon proposed order.

### II. Sanofi's Qualms with the Testimony are Appropriately Preserved for Adjudication by the Transferor/Remand Trial Courts.

The basis and methodology of the respective opinions of Drs. Feigal and Madigan, as elicited on direct examination, have been the subject of repeated FRE 702/*Daubert* challenges, and

---

[3] CMO 36, ¶ 3(a).
[4] *Id.* at ¶ 3(c).

there should be no need for repeating this costly process.[5] If the transferor courts are inclined to revisit challenges under FRE 702 or *Daubert*, the PSC respectfully suggests that is not an issue for this Court; and, undoubtedly, the parties to any future trials in transferor courts will have the opportunity to shape the boundaries of the evidence through motions *in limine*.

Sanofi's motion entirely discounts the ultimate trial courts' gatekeeping function, and instead rests on the assumption of a sterilized, pre-packaged and objection-free direct examination and cross-examination. This Court has overseen two Taxotere trials, and has experienced both parties object and defend objections, both to their own and their opponent's witnesses. This Court has made trial decisions on those evidentiary challenges. The transferor courts will be called upon to do the same, with the notable exception being that evidentiary decisions on the preserved video testimony will largely be made *prior* to trial.

As a result, Sanofi cannot be prejudiced. The expert testimony preserved is to be used in all remanded cases that fall within the "fence posts" the Court has established, with product usage within 2007 – 2015. Evidence of Sanofi's knowledge, and actions or inactions taken while armed with knowledge, changed over time and what may be admissible in a later case may not be appropriate in earlier cases. Furthermore, whether cross examination opened the door for questioning outside the four corners of an expert's report is an issue for the ultimate trial courts to make when considering those lines of questioning in the context of the particular facts of the case being tried. Thus, thus what is relevant and admissible in any particular case will vary, sometimes widely.

For example, in March 2017 Sanofi ultimately convened a meeting to discuss and implement a label change to include the full TAX316 data concerning the "ongoing alopecia."[6] In

---

[5] *See* R. Doc. 15763 at 33-34.
[6] Ex. A, TAX 316 CSR; Ex. B, Sanofi_05173852

doing so, it enlisted the assistance of its current defense counsel and in-house counsel overseeing this litigation[7] – the ensuing label change *only* relied upon the TAX 316 CSR, at which time was nearly seven years old. Nothing else was included as a basis for a label change in 2017. It is entirely conceivable a trial court could allow such evidence into any post-2011 case to demonstrate that Sanofi could have, or should have, used the TAX 316 CSR to institute a label update. The issue is one of control and opportunity, not subsequent remedial measure. And this evidence may be further relevant to counter any potential testimony offered by Sanofi through its corporate representatives, such as Michael Kopreski, M.D., or through its experts.

Plaintiffs on remand must have the opportunity to have access the fullest evidence possible from the general experts both that may be admissible in their cases-in-chief, based on their expert reports, and that may be necessary to counter the testimony and tactics that Sanofi may use and employ. To allow otherwise at this point would unnecessarily handcuff plaintiffs and lessen the likelihood of useability of these preservation exams (in lieu of repeated appearances of the same witnesses, the costs and inefficiency of which CMO 36 seeks to avoid).

For the reasons stated here and more particularly explained below, Defendant Sanofi's Motion to Reconsider and Vacate CMO 36 and to Strike should be denied.

### III. Sanofi's Allegation that Dr. Feigal Offers Causation Opinions on Other Chemotherapy Options is Without Merit.

On direct examination, Dr. Feigal agrees that she does not have any reliable scientific evidence to support causation for other chemotherapies.[8] She notes that all she saw were anecdotal cases.[9] Sanofi's counsel claims this is improper despite it being consistent with how she has testified before regarding her research, investigation, reliance materials and the foundations of her

---

[7] Ex. B, Sanofi_05173852 at p. 2.
[8] Ex. C, Feigal Preservation Dep. 1/26/2022, 44:1-45:14.
[9] *Id*. at 45:13-13

6

report. For example, in her January 11, 2019 deposition, Sanofi's counsel questioned Dr. Feigal concerning "cases of permanent hair loss have been reported with . . ." and Dr. Feigal agrees and adds ". . .anecdotal reports, yes. . . ."[10] Her testimony also is consistent with her trial testimony:

> Q: Now, Dr. Feigal, because this jury has been told that A and C may have caused Ms. Earnest's lack of hair regrowth, I have to ask you, have you reviewed -- in your review of all of the scientific evidence and medical literature that's out there, have you seen evidence that A or C has been related -- causally related to permanent irreversible hair loss, hair that doesn't grow back when it's supposed to?
> A. I haven't seen evidence for causal relationship. You'll see those anecdotal cases that have been reported in the published literature.[11]

In the preservation examination, Sanofi's counsel asks: "Nowhere in your expert report do you say, 'I conducted the analysis and I have determined that Adriamycin cannot cause pCIA?'" Dr. Feigal responds: "I do not have that exact sentence, that's correct." She further qualifies: "[b]ecause there wasn't sufficient data to do that analysis."[12] But, sanofi's counsel does not ask if she has formed that opinion – Dr. Feigal was not asked was: "Dr. Feigal, have you determined that Adriamycin cannot cause PCIA?" Thus, there is nothing inconsistent between her prior testimony and her responses to questions about the foundations of her opinions and the information she reviewed and relied upon.

Again, consistent with her present preserved testimony, Dr. Feigal testified on 11/21/2019 that:

> no one's arguing there may be cases recorded, but there's no – no similar experience with another drug. We don't even – you know, prior to 2001, we actually didn't even start to see permanent chemotherapy induced alopecia with conventional doses of

---

[10] Ex. D, Feigal Discovery Dep. 1/11/2019, 596:1-597:9; *see also id.* at 599:14-600:10 ("there have been anecdotal patients" (reviewing the Crown abstract)); *see also* Ex. E, Feigal Discovery Dep. 11/21/2019, 241:2-8 ("yes, anecdotal cases. . . I have that in my table (Table 2 of Feigal report).").
[11] Ex. F, Earnest Trial Transcript 9/20/2019, 1211:13-22.
[12] Ex. G, Feigal Preservation Dep. 1/27/2023, 262:8-263:14.

7

> Taxotere. So, this was a new phenomenon. The AC and CMF, they were around for decades and you didn't have published studies with permanent irreversible alopecia. . . .[13]

When asked "Have you made any effort to analyze why that is the case", Dr. Feigal answered "I did a search of what was publicly available to look at reporting . . . there's nothing different about how people can publish papers with Taxotere as they could have done with Taxol, or AC, or CMF."[14] She also pointed to her review of Dr. Madigan's report and disproportionality analysis, and notes that "… nothing's changed other than [Taxotere] is a new drug."[15]

Moreover, assuming *arguendo* it was beyond the scope of her report (which it is not), robust cross examination on these statements followed.[16] In that cross examination, Dr. Feigal corrected Sanofi's characterization of ruling out or ruling in other chemotherapies as contributing to pCIA. Sanofi attempts to imply that without conducting a Bradford-Hill analysis Dr. Feigal could not rule out other chemotherapy drugs as causes; in addition to conceding she does not make conclusions that other drugs cannot cause pCIA, Dr. Feigal appropriately responds by pointing out the rather obvious scientific point that she cannot analyze data that does not exist.[17] Sanofi was well prepared for cross examination, and sanofi's concerns, at this preservation stage, are premature and lacking in merit.

## IV. Sanofi's Complaints Regarding Dr. Feigal's References to Excluded Evidence

The testimony cited in Sanofi's motion does not relate directly to labels, but to its use of a document and counsel's inaccurate description and characterization of what the document

---

[13] Ex. E, Feigal Discovery Dep. 11/21/2019, 172:14-174:21; *see also* Ex. H, Feigal Discovery Dep. 4/10/2020, 85:6-11 ("I analyzed those drugs in the context of answering the question about Taxotere. I found no evidence to the degree I found it with Taxotere, for general causation. But no, I did not do general causation analysis on any of the other chemotherapy drugs, other than Taxotere.").
[14] *Id.*
[15] *Id.*
[16] Ex. G, Feigal Preservation Dep. 1/27/2023, 263-272.
[17] *Id.* at 262:25-266:24.

represents.[18] The documents at issue (exhibits 22, 23 and 24 to the deposition) include documents familiar to the Court and that were used during both the *Earnest* and *Kahn* trials. Sanofi's use of the exhibits in its questioning during the preservation deposition was open-ended and confusing. Ultimately this led Sanofi's counsel to ask Dr. Feigal "how can you figure out which one's correct?"[19] Sanofi's broad questioning opened the door for Dr. Feigal's accurate and candid response:

> Well, you're talking about apples and oranges. The follow-up that Sanofi did submit to the European agency in response to their question about persistent or long-lasting permanent alopecia came back with 29 and 16. That's Sanofi. I'm not manipulating the numbers. That is what they told the agency. . . In response to the question about permanent alopecia, that was their response. And that's actually what's on their label.[20]

Additionally, the history of Sanofi's representation of the TAX 316 patients with "ongoing," permanent, or persistent alopecia remained, and remains, consistent throughout: from the TAX316 CSR, September 2010; to the European agency, January 2013; to the March 3, 2017, Label Review Committee meeting to include the TAX316 CSR numbers in the label; to the current label.[21] It is precisely this consistency that Sanofi's counsel's questioning asked for, and which Dr. Feigal pointed out. Sanofi cannot have it both ways.

Sanofi's counsel next attempted to have Dr. Feigal agree to go behind the company's locked clinical trial data, to direct her to case report forms; Dr. Feigal clearly and directly disagreed that reviewing case report forms would answer the question of permanent alopecia and insisted that the locked clinical trial data is the only appropriate data to review.[22] Later in its cross-

---

[18] See *Id.* at 305:2-314:21, generally
[19] *Id*. at 311:18-24.
[20] *Id.* at 312:1-12.
[21] Ex. A, TAX316 CSR, Table 47, Sanofi_00724262; Ex. I, Sanofi_04938203; Ex. B, Sanofi_05173852, respectively; and Ex. J, current Taxotere label.
[22] Ex. G, Feigal Preservation Dep. 1/27/2023, 315:9-23, 319:3-320:8.

9

examination Sanofi again pressed Dr. Feigal for "the truth," and continued to insinuate that going behind locked clinical trial data was appropriate, and she again disagreed and returned to the consistency of the data represented and analyzed by Sanofi.[23]

It should be noted that Plaintiffs will be permitted to play the testimony of Pierre Mancini, Sanofi's Global Biostatistics Head, who testified consistent with Dr. Feigal's preserved testimony that he and his department *only* analyze locked and validated clinical trial data.[24]

Sanofi's attempts to strike and exclude Dr. Feigal's testimony that was a direct result of Sanofi's insistence on its version of what it will argue to the jury is the "truth" about the TAX316 data; the arguments to the jury that 29 and 16 are not accurate clearly conflicts with statements made by sanofi and with its own head of biostatistics. Dr. Feigal should not, therefore, be precluded from pointing out sanofi's contradictory position. Sanofi's repeated characterization of its own data over time is necessary to place its attorneys' arguments into accurate historical context for the jury to consider.

### V. With Regard to Dr. Madigan's Testimony, Sanofi Continues to Conflate Statistical Inference of Causation with "Causation"

Dr. Madigan does not state that Taxotere "causes" pCIA, but rather that there is statistical association and *inference* of causation between docetaxel and permanent chemotherapy-induced alopecia.[25] The Court has ruled, over and over, that Dr. Madigan's testimony regarding statistical association and inferences supporting causation are acceptable under Rule 702 standards.[26] Further, Dr. Madigan characterizes data and analyses data very similar to how Sanofi interprets its own data in its Clinical Study Report, 10-year follow-up. What Sanofi concludes from a review

---

[23] *Id.* at 320:14-326:12.
[24] Ex. K, Mancini Dep. 3/23/2018, 69:7-23, 104:22-105:12, 206:22-207:4, 221:24-222:23, 329:22-330:6; Ex. L, Mancini Dep. 10/12/2018, 365:20-366:25
[25] Ex. M, Madigan Preservation Dep. 11/14/2022, 73:12-19, 112:12-113:3, 124:20-125:2.
[26] R. Doc. 15763 at 32-33 (summarizing prior rulings regarding Dr. Madigan).

10

of statistical evidence that "docetaxel with doxorubicin and cyclophosphamide (TAC) offers an efficacy benefit to women with operable, node-positive breast cancer," or in other words that docetaxel (TAC) *causes* a benefit.[27] Dr. Madigan does not say that his statistical analysis establishes a cause-and-effect relationship, but rather that it supports an inference in that direction.

And this is consistent recognized principles of epidemiology and the use of statistics:

> "To understand the need for assessing the role of chance as an alternative explanation of an observed association, it is first necessary to consider the concept of inference. Inference involves making a generalization about a larger group of individuals on the basis of a subset or sample."[28]

And this is exactly what Sanofi, and every sponsor, does in every clinical trial, they make inferences based upon the findings of clinical and observational studies to apply to the larger issue of general causation. Dr. Madigan speaks only to the statistical measures that allow for an inference of causation. It is for another expert, Dr. Feigal, to perform the complete causation analysis. The very same purpose in Sanofi conducting its clinical studies and providing its supporting scientific information (pharmacology, animal studies, phase II, III and IV human studies, and observational studies) to demonstrate or infer a beneficial relationship between its drug and a desirable effect should allow Dr. Madigan to demonstrate same thing with his statistical methods – he is simply pointing out that the evidence is more than a mere association (e.g. – that a rooster crows and the sun rises: two events that entirely unrelated), but rather are statistically related in such a way that an inference of a causal link. He does not, because he cannot, offer an opinion that Taxotere causes PCIA in any person; but he does offer the opinion that there is a statistical correlation that is supportive of an inference of general causation.

---

[27] Ex A, TAX 316 CSR, 10-year follow-up, 9/9/2010.
[28] Hennekens, et al., Epidemiology in Medicine, p. 243 (1987).

Just as the statistics of science are used in order to establish benefit – inferring a causal connection to a benefit – Dr. Madigan's statistical analyses has routinely been allowed by this Court to be presented before a jury for purposes of inference of a statistical risk or likelihood that is beyond merely an association.

## VI.   Testimony Regarding Chemo2 is Not a New Opinion

Sanofi is simply incorrect when it alleges that Dr. Madigan offered a new analysis, or new opinion, in his preservation deposition.[29] The testimony with which Sanofi takes issue was not elicited on direct examination; rather, it resulted from cross-examination by Sanofi.[30] Furthermore, Dr. Madigan was previously examined on this topic during one of Sanofi's many discovery depositions of Dr. Madigan.[31] In fact, as a result of Sanofi's November 14, 2019 deposition examination of Dr. Madigan, he went back and looked at the hypothesis offered by Sanofi's counsel to prepare for Sanofi's trial cross-examination, and in fact was cross-examined by Sanofi and testified to this very point during in the *Kahn* trial.[32] Dr. Madigan did not perform an analysis in order to offer any new opinion on his direct testimony (here or in the *Kahn* trial), and as a result did not include any such opinion in any of his reports. It was only through the 11/14/2019 discovery deposition and *Kahn* trial cross-examination of Dr. Madigan *by Sanofi's counsel* that Dr. Madigan looked into the issue that Sanofi opened the door to – chemo2. Plaintiffs' counsel did not attempt to elicit any testimony on direct from Dr. Madigan on his chemo2 analysis. Dr. Madigan's look into chemo2 was prompted by Sanofi's deposition examination, and its repeated attempts at rewriting the history of how Sanofi counted its TAX316 ongoing, permanent,

---

[29] See p. 11 of Sanofi's Motion to Vacate. "Plaintiffs' counsel also elicited testimony on an analysis Dr. Madigan purportedly conducted, but which appeared nowhere in the expert report provided to Sanofi."
[30] Madigan Preservation Dep. 11/15/2022, 405-407.
[31] *Id.* at 364:3-367:24; *see also* Madigan Preservation Dep. 11/14/2022, 61:5-62:22, 77:10-78:2, 79:12-80:4.
[32] Kahn Trial Transcript 11/16/2021, 1472:2-1473:10.

irreversible alopecia events. Plaintiffs' questioning on the topic of chemo2 during redirect was a result of Sanofi's cross-examination of Dr. Madigan on this topic.[33]

Having examined Dr. Madigan through multiple full-day depositions, including on the topic of secondary, non-docetaxel, chemotherapy (chemo2), and having cross-examined Dr. Madigan on the topic during the *Kahn* trial, and knowing the answer he provided, Sanofi cannot open the door again during Dr. Madigan's preservation deposition and then complain when he remains entirely consistent with his prior testimony. Dr. Madigan's prior consistent testimony is not prejudicial to sanofi, nor is it prejudicial to allow Dr. Madigan, on redirect, to explain why any doubt related to chemo2 is a red herring for the jury.

Dr. Madigan remains consistent with his testimony on cross-examination during the *Kahn* trial. Additionally, testimony concerning chemo2 was elicited on cross-examination and opened the door for response in redirect. The trial courts that will preside over future Taxotere trials where Dr. Madigan's preservation testimony may be played are fully capable of reviewing and permitting appropriate testimony via preserved testimony. Sanofi's concerns are premature and ring hollow. Sanofi will have an opportunity to object to proffered testimony prior to trial, seek to have it excluded, or simply choose not play the door-opening portions that create its angst.

## VII. Conclusion

As set forth herein, Sanofi's request to revisit entry of CMO 36, at this late stage with preservation examinations well underway, should be denied, as there are no adequate grounds for reconsideration. Moreover, because of the protections built into CMO 36, Sanofi's request to strike certain testimony should likewise be denied. As the Court noted in its recent Suggestion of

---

[33] Madigan Preservation Dep., 11/15/2022, 404:23-407:23 (Removing chemo2 patients from both the TAC and FAC arms of the TAX316 study results in a statistically significant difference in the event rates between the treatment arms.)

Remand, "[a]dditional motion practice will likely include case-specific expert challenges under Federal Rule of Evidence 702 [… and] [b]efore trial, receiving courts may also anticipate ruling on case-specific motions in limine and objections to case-specific deposition designations and exhibits."[34] The PSC, therefore, requests that the Court deny Sanofi's motion so that the contemplated preservation examinations can continue.[35]

Dated: April 4, 2023                                          Respectfully submitted,

*/s/ Christopher L. Coffin*                                   */s/ Karen B. Menzies*
Christopher L. Coffin (#27902)                                Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.                              GIBBS LAW GROUP LLP
1100 Poydras Street, Suite 2225                               6701 Center Drive West, Suite 1400
New Orleans, Louisiana 70163                                  Los Angeles, California 90045
Phone: (504) 355-0086                                         Telephone: 510-350-9700
Fax: (504) 355-0089                                           Facsimile: 510-350-9701
ccoffin@pbclawfirm.com                                        kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*                                 *Plaintiffs' Co-Lead Counsel*

*/s/M. Palmer Lambert*                                        */s/Dawn M. Barrios*
M. Palmer Lambert (#33228)                                    Dawn M. Barrios (#2821)
PENDLEY, BAUDIN & COFFIN, L.L.P.                              BARRIOS, KINGSDORF & CASTEIX, LLP
1100 Poydras Street, Suite 2225                               701 Poydras Street, Suite 3650
New Orleans, Louisiana 70163                                  New Orleans, LA 70139
Phone: (504) 355-0086                                         Phone: 504-524-3300
Fax: (504) 355-0089                                           Fax: 504-524-3313
plambert@pbclawfirm.com                                       barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*                              *Plaintiffs' Co-Liaison Counsel*

---

[34] R. Doc. 15763 at 45-46.
[35] *Id*. at 14, 37.

**PLAINTIFFS' STEERING COMMITTEE**

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

J. Kyle Bachus
Bachus & Schanker, LLC
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045 Phone:
510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

| | |
|---|---|
| John Gomez<br>The Gomez Law Firm, PLLC<br>655 West Broadway, Suite 1700<br>San Diego, CA 92101<br>Phone: (619) 237.3490<br>Fax: 619.237.3496.<br>john@thegomezfirm.com | Jessica Perez Reynolds<br>Pendley, Baudin & Coffin<br>P.O. Drawer 71<br>24110 Eden Street<br>Plaquemine, LA 70765<br>Phone: (225) 687-6396<br>Fax: (225) 687-6398<br>jperez@pbclawfirm.com |
| Emily C. Jeffcott<br>Morgan & Morgan<br>700 S. Palafox Street, Suite 95<br>Pensacola, FL 32505<br>Phone: (850) 316-9074<br>Fax: (850) 316-9079<br>ejeffcott@forthepeople.com | Darin L. Schanker<br>Bachus & Schanker<br>101 W Colfax Ave, Suite 650<br>Denver, CO 80202<br>Phone: (303) 222-2222<br>Fax: (303) 893-9900<br>dls@coloradolaw.net |
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904 15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Hunter J. Shkolnik<br>Napoli Shkolnik PLLC<br>360 Lexington Avenue, 11th Floor<br>New York, NY 10017<br>Phone: (212) 397-1000<br>hunter@napolilaw.com |
| Daniel P. Markoff<br>Atkins & Markoff Law Firm<br>9211 Lake Hefner Parkway, Suite 104<br>Oklahoma City, OK 73120<br>Phone: (405) 607-8757<br>Fax: (405) 607-8749<br>dmarkoff@amalaw.com | Zachary Wool<br>Barrios Kingsdorf & Casteix, LLP<br>701 Poydras Street, Suite 3650<br>New Orleans, LA 70139<br>Phone: (504) 524-3300<br>Fax: (504) 524-3313<br>zwool@bkc-law.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ Dawn M. Barrios*
DAWN M. BARRIOS