UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO: *Arquice Conley v. Sandoz Inc.* Case No. 2:18-cv-9799 | HON. JANE TRICHE MILAZZO |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO SANDOZ INC.'S MOTION TO TAX COSTS AGAINST PLAINTIFF ARQUICE CONLEY [REC. DOC 15727]**

**I.     Introduction and Brief Procedural History**

Plaintiff Arquice Conley objects to the awarding of costs in the matter because (1) the motion for costs is untimely, (2) the award of costs against Plaintiff's individual case conflicts with the goals of the bellwether process, (3) discretionary factors weigh against awarding costs on the facts of this case, and (4) Sandoz's costs are unreasonable.

Ms. Conley's case was selected by the defense as a bellwether. The case was then deselected. On August 2, 2022, the Court denied Sandoz's motion for summary judgment as to Plaintiff Conley. Sandoz sought to appeal the Court's denial of summary judgment. While Sandoz's petition to appeal was pending before the Fifth Circuit, on December 20, 2022, Plaintiff filed the form dismissal that the court designated for dismissal in PTO #87. Judgment was entered the same day. Sandoz moved for relief from the judgment, and the court denied the motion for relief on March 8, 2023.  On March 27, 2023, Sandoz filed the instant motion to tax costs, seeking to have Plaintiff pay for the costs Sandoz incurred in discovery. The court must deny the motion for four reasons.

First, Sandoz's motion to tax costs is untimely. Local Rule 54.3 provides that motions to tax costs must be filed within 35 days of notice of entry of judgment. LR 54.3 Certification of

Costs. The clerk entered the notice of judgment in this case on 12/20/2022. Accordingly, the time for Defendant Sandoz to file a motion to tax costs ran 35 days from 12/20/2022, that is, on January 24, 2023. Sandoz filed the instant motion on March 27, 2023, a full 62 days late.

Second, the purpose of a bellwether process in multidistrict litigation is for representative test cases to inform the parties about the strength of the claims at large. Plaintiffs selected for bellwether participation must incur costs that non-selected plaintiffs do not have to incur, but those costs will benefit even those who are not selected as well as the defendants. Assessing costs against a bellwether plaintiff, where those costs were incurred to benefit the litigation at large, frustrates the purpose of consolidation.

Third, Ms. Conley lacks the financial means to pay Sandoz's costs.

Finally, even if Sandoz were entitled to its costs, which it is not, its costs are not reasonable. Sandoz's costs include unnecessary "rough" versions of transcripts, videographer fees, and redundant invoices from a vendor called "Strategic Litigation Partners."

## II.  The Court Should Deny the Motion as Untimely

Sandoz's motion is untimely, and the court should deny it accordingly. Local Rule 54.3 provides that motions to tax costs must be filed within 35 days of notice of entry of judgment. LR 54.3 Certification of Costs. The clerk entered the notice of judgment in this case on 12/20/2022. Accordingly, the time for Defendant Sandoz to file a motion to tax costs ran 35 days from 12/20/2022, that is, on January 24, 2023. Sandoz filed the instant motion on March 27, 2023, a full 62 days late.

Sandoz will doubtless argue that the time for it to seek costs should have been tolled for the duration of its failed attempt to have the case reinstated. This argument cannot save the motion from its fatal untimeliness, because the Federal Rules of Civil Procedure preclude it. Rule

58(e) states, "the entry of judgment may not be delayed, nor the time for appeal extended, in order to tax costs or award fees." Based on the plain rules, the court cannot allow the motion for costs because the moving party has waived the right to pursue the motion by failing to make it on time.

### III.  When Allocating Costs for Test Cases, the Court Should Look Beyond the Prevailing Party Rule.

While the federal rules provide that a court may award costs to a prevailing party, the Manual for Complex Litigation instructs that in an MDL setting, courts may allocate costs based on factors including: relative ability of each party to control costs and its incentive to do so, relative benefit to the parties of obtaining the information, relative resources of the parties. Manual for Complex Litigation (Fourth Edition, 2004), Section 11:443.

By serving as a bellwether and participating in the attendant discovery, Ms. Conley's case provided a benefit to the MDL as a whole, including to the defense. As in all bellwether situations, the benefits (and costs) of a ruling are not the same as in a "one-off" case. As a potential bellwether, Ms. Conley and her action provided guidance to the parties and the Court on issues relevant to the entire MDL. The discovery aided the parties in litigating issues pertinent to the MDL as a whole.

This Court has the inherent authority to allocate MDL bellwether case costs to common benefit or other cost sources. This Court has the authority to prevent that heavy financial load of common issue costs falling solely on an individual bellwether plaintiff's shoulders, especially when that plaintiff is financially challenged. It would discourage policy prospective bellwether plaintiffs from participating in bellwether discovery, when they must accept the risk of having

costs taxed against them, a personal financial hardship as a result of participating in a process meant to benefit all the parties to the coordinated proceeding.

## IV.     The Court Has Discretion to Withhold Costs

Plaintiff respectfully requests that the Court exercise its discretion to deny an award of costs to Sandoz. The decision whether to award costs ultimately lies within the sound discretion of the district court. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013); *Hall v. State Farm Fire & Cas. Co.*, 937 F.2d 210, 216 (5th Cir. 1991). The Fifth Circuit has stated that a denial of costs is appropriate where a plaintiff has brought a lawsuit in good faith and at least one of the following factors is met: (1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources." *Pacheco v. Mineta*, 448 F.3d 783, 793-794. (5th Cir. 2006). There is no real dispute that Mrs. Conley brought her lawsuit in good faith. Therefore, we can continue on to the evaluation of other factors.

First, Mrs. Conley has limited financial resources. She is a sixty-three year old disabled cancer survivor who is unemployed, and qualified for Social Security Disability in 2011. She has a high school education and, before becoming disabled, she worked at a fast food restaurant. As a person of limited financial means and budget, she is not able to afford over $11,000 in costs.

Second the case presented close and difficult legal issues. Indeed, Sandoz lost its motion for summary judgment as to Ms. Conley's case specifically. The denial of a summary judgment motion indicates that the legal issues were not so clear that the case could be dismissed as a matter of law, and there were significant issues of fact.

Third, by serving as a bellwether plaintiff, as discussed above, Ms. Conley conferred a benefit to all other plaintiffs in the litigation, and to the defense.

Last, in light of Sandoz's enormous financial resources, the $11,116.12 in costs it seeks to tax against Ms. Conley are a burden that Sandoz is well-equipped to bear. Indeed, at the rates Sandoz's counsel, Greenberg Traurig, are known to charge, and the amount of time they are known to spend on even simple motions, one wonders whether Sandoz has spent more than $11,000 in attorneys' fees since Plaintiff filed her dismissal simply in seeking to have the case reinstated and bringing this motion.[12]

## V. If the Court Awards Costs, It Should Only Award $1,885.28.

Should the Court be inclined to award Sandoz's costs, Plaintiff requests that the Court reduce the award from $11,116 to $1,885.28, because Sandoz's costs are unreasonable. Sandoz seeks to tax Ms. Conley for unnecessary costs that Sandoz incurred purely as a result of its own litigation preferences.

Sandoz seeks costs for expedited transcripts, which the Fifth Circuit has held are not allowed. "A copy of a deposition obtained on an expedited basis 'is not taxable unless prior court approval of expedition has been obtained or the special character of the litigation necessitates expedited receipt of the transcript.'" *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 807 F.3d 125, 132 (5th Cir. 2015) (quoting *Fogleman v. ARAMCO (Arabian Am. Oil Co.),* 920 F.2d 278, 285–86 (5th Cir.1991). Here, there is no court approval, and the litigation has not proceeded at such a pace that would necessitate overnight transcripts. But at each of the depositions for which Sandoz now seeks costs, Sandoz ordered an overnight rough transcript in addition to the standard

---

[1] https://www.law.com/dailybusinessreview/2022/08/10/795hour-greenberg-traurig-team-earned-more-than-1m-in-attorney-fees/
[2] https://www.abajournal.com/news/article/judge_is_almost_haunted_by_greenberg_traurig_fee_request_says_were_not_talk

certified transcript. The practice of ordering overnight rough transcripts significantly increased the cost of the transcripts, as did Sandoz's practice of hiring a videographer and ordering expedited overnight video copies of all the depositions. These all came with hefty overnight shipping fees, which are also "generally not taxable." *Id*. at 133. Finally, the cost of ordering both transcripts and video recordings is duplicative, and the statute allowing costs does not provide for both, rather it allows the prevailing party to seek "Fees for printed **or** electronically recorded transcripts."28 U.S.C. 1920 (emphasis added.)

Sandoz asks for $6042.78 for its expensive standard practices for recording deposition testimony. Of these, only $1,885.28 are reasonable. $1,885.28 is the amount for court reporter fees and original transcript costs. It does not include rough transcripts, videographer fees and video costs, or overnight shipping for transcripts and videos.

$6042.78

-634.50 – rough transcript of Conley deposition

-50 – overnight shipping for Conley deposition

-234 – rough transcript of Dr. Whitecar deposition

-80- overnight shipping for Dr. Whitecar deposition

-162 – rough transcript of Courtney Nickels deposition

-70 – overnight shipping for Courtney Nickels deposition

-109.50 – rough transcript of Dr. Berry deposition

-50 – overnight shipping for Dr. Berry deposition

-1227.50 – videographer, video, and overnight shipping for Conley deposition.

-565 videographer, video, and overnight shipping for Dr. Whitecar deposition

-495 videographer, video, and overnight shipping for Courtney Nickels deposition

-480 videographer, video, and overnight shipping for Dr. Berry deposition

= $1,885.28

Finally, Sandoz seeks its costs for obtaining copies of Ms. Conley's medical records, which it supports with invoices from Strategic Litigation Partners ("SLP"). These costs are inflated and Plaintiff asks that the court decline to award any of them. SLP's invoices include duplicative requests made multiple times to the same medical providers. Some of these redundant requests were for records from irrelevant providers, including orthopedists and physical therapists who treated Ms. Conley for a herniated disc and a cyst on her ankle, and an urgent care where she was treated for sinus infection. For example, Sandoz twice paid for medical, billing and radiology records from "Dr. Hall MD/Columbus Orthopaedic Clinic," and then on another occasion paid for medical, billing, and radiology records from "Columbus Orthopaedic Starkville Physical Therapy" which is in fact the same entity.

Other requests, though made to relevant providers, were made annually. Sandoz paid for records from Ms. Conley's gynecologist, primary care providers, and oncology providers many times over and there is no indication that those payments were for only updated records, and not for duplicates of records previously obtained.

**VI.  Conclusion**

For the foregoing reasons, Plaintiff Arquice Conley respectfully requests that the Court in its discretion decline to tax Defendant Sandoz's costs against her. The motion to tax costs was not timely filed. Moreover, many factors mitigate against an award of costs: she is a disabled cancer survivor with no employment income, who survives on Social Security; she was a defense bellwether pick; the evidence in her case was strong enough to survive Sandoz's motion for summary judgment; and Sandoz can much more easily bear the costs than Ms. Conley.  In the

alternative, if the Court is inclined to tax costs, Ms. Conley requests that Court tax $1,885.28, rather than the $11,116.12 that Sandoz seeks.

Dated: April 18, 2023                                   CUTTER LAW P.C.

                                                                             Respectfully submitted,

                                                                             By: /s/ Celine E. Cutter

C. Brooks Cutter
Jennifer S. Domer
Celine Cutter
CUTTER LAW P.C.
401 Watt Avenue
Sacramento, CA 95864
Telephone: 916-290-9400
Facsimile: 916-588-9330

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ Celine E. Cutter