```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


 IN RE:  TAXOTERE (DOCETAXEL)       *     MDL 16-2740
 PRODUCTS LIABILITY LITIGATION      *
                                    *     Section H
                                    *
 THIS RELATES TO:                   *     March 30, 2023
 Elizabeth Kahn, 16-17039           *
                                    *
 * * * * * * * * * * * * * * * * *


                         ORAL ARGUMENT BEFORE
                    THE HONORABLE JANE T. MILAZZO
                    UNITED STATES DISTRICT JUDGE
```

Appearances:

| | |
|---|---|
| For Elizabeth Kahn: | Pendley Baudin & Coffin, LLP<br>BY: M. PALMER LAMBERT, ESQ.<br>1100 Poydras Street, Suite 2225<br>New Orleans, Louisiana 70163 |
| For the Sanofi Defendants: | Irwin Fritchie Urquhart Moore & Daniels, LLC<br>BY: DOUGLAS J. MOORE, ESQ.<br>400 Poydras Street, Suite 2700<br>New Orleans, Louisiana 70130 |
| Official Court Reporter: | Toni Doyle Tusa, CCR, FCRR<br>500 Poydras Street, Room B-275<br>New Orleans, Louisiana 70130<br>(504) 589-7778 |

Proceedings recorded by mechanical stenography using computer-aided transcription software.

```
 1                           INDEX
 2                                                      Page
 3   Oral Argument
 4        M. Palmer Lambert, Esq.                          3
 5        Douglas J. Moore, Esq.                           9
 6        M. Palmer Lambert, Esq.                         15
 7        Douglas J. Moore, Esq.                          18
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**PROCEEDINGS**

**(March 30, 2023)**

1  **THE DEPUTY CLERK:** MDL 16-2740, *Taxotere Products Liability Litigation,* set for a motion hearing. Counsel, you can make your appearances, please.

**MR. LAMBERT:** Good morning, Your Honor. Palmer Lambert, co-liaison counsel for plaintiffs and counsel for Ms. Elizabeth Kahn.

**MR. MOORE:** Douglas Moore on behalf of Sanofi.

**THE COURT:** Mr. Lambert, let me just start off so that the record is clear that, of course, I have read everything that was submitted, and I am intimately familiar with the facts surrounding this. With that, just proceed with your argument.

**MR. LAMBERT:** Thank you, Your Honor. I have a very brief outline here, so this will be short.

May it please the Court. Your Honor, there's a quote I think that's a good place to start, and I will just read it very quickly: "The whole case fails when you look at what's under the hood with TAX316." Dr. Kopreski was the only person to do that.

**THE COURT:** That was the *Earnest* trial.

**MR. LAMBERT:** It is from *Earnest*. That was counsel's arguments --

**THE COURT:** Right.

09:59

1    **MR. LAMBERT:**  -- in *Earnest*, and it was the same
2    testimony that the Fifth Circuit recognized was problematic.
3           **THE COURT:**  Right.
4           **MR. LAMBERT:**  The timing here is interesting and it
5    also makes this case unique.  As Your Honor knows --
6           **THE COURT:**  That is what I want to know, Mr. Lambert.
7    You cited some specific excerpts from testimony that you would
8    have used.  Is there any other affirmatively designated
9    Kopreski testimony that would have been beneficial to your case
10   and was not provided by another witness?
11          **MR. LAMBERT:**  That is part of my outline --
12          **THE COURT:**  Good.
13          **MR. LAMBERT:**  -- and I was prepared to address that.
14   The answer is yes, and I want to answer it two ways.  One is
15   Mr. Moore at the prior oral argument suggested that that
16   testimony in our motion, our original motion, was all causation
17   evidence.  I disagree.
18          The plain reading of those quotes from Sanofi's
19   associate vice president of global pharmacovigilance and
20   epidemiology talk about things like when a side effect should
21   be modified after the product launch and admissions regarding
22   the patient population that was impacted or at issue with this
23   particular drug.
24          In addition, there's testimony in the attachment
25   to our original motion -- it's doc. 14217-3 at 58 to 67 --

10:01   1   that's information regarding notice. It's specific information
2   related to Nabholtz and cases that were identified by Sanofi in
3   its lead-up to the approval of Taxotere for early stage breast
4   cancer use. There's also testimony at page 186 that we
5   designated that was not played talking about the difference
6   between listed and unlisted side effects.
7           **THE COURT:** What do I do with the jury verdict form
8   that says the warning was adequate?
9           **MR. LAMBERT:** Well, Your Honor, the issue is --
10  obviously, we can't go backwards in time, but the importance of
11  Sanofi's own people talking about their responsibilities and
12  what these terms mean, not just our experts explaining that to
13  the jury, we think is really important.
14              I think Your Honor would agree with the
15  importance, too, because when we look at the orders prior to
16  the *Kahn* trial, there's at least six of them -- dispositive,
17  *Daubert*, or evidentiary type ruling orders -- where the Court
18  is making determinations, for example, denying our partial
19  summary judgment on general causation because the jury is going
20  to hear evidence about Kopreski, and denying certain challenges
21  to Sanofi's experts based on their ability to rely on what
22  Dr. Kopreski did.
23          **THE COURT:** There was also Dr. Chang. Is that her
24  name?
25          **MR. LAMBERT:** There's Dr. Ellen Chang and Dr. --

10:03

1  **THE COURT:** Yes, that was going to testify. It's not
2  like I would have granted a summary judgment on causation when
3  we had the report and testimony from Dr. Chang.
4  I guess I need you to tell me what does
5  Kopreski -- you know, the testimony that you felt like "I don't
6  have a choice. I've got to just not call Kopreski because of
7  the reanalysis" -- and I understand that. I get it. My
8  question is: What testimony was he going to offer that you did
9  not have from another witness? There was lots of testimony
10 from other Sanofi employees about pharmacovigilance and what
11 they were doing.
12 **MR. LAMBERT:** Those ones that I just mentioned as
13 well as the ones in the motion I think are important. Whether
14 or not a jury would have changed their minds based on that
15 testimony is a good question.
16 I think that the essence of this motion relates
17 to the fairness in terms of the plaintiff's ability to put on
18 her case the way she wants to. I think Mr. Coffin at the last
19 oral argument emphasized the importance of TAX316, its
20 importance in terms of the general causation analysis as well
21 as somewhat its importance in terms of liability as well.
22 One of the other things -- and I forgot to
23 mention it -- is Dr. Kopreski talks about the statistical
24 analysis plan for TAX316 in our designations. We did talk
25 about that through experts as well.

10:05   1            **THE COURT:**  Uh-huh.
2            **MR. LAMBERT:**  What he says is that part of the plan
3   for TAX316 was to study the reversibility of alopecia, and so
4   again it lends more credence to the fact that that study is
5   important.  When we heard cross-examinations of Dr. Madigan and
6   Dr. Feigal, there were challenges made to the analysis based on
7   their reliance on that study.  So if you look at all of it as a
8   whole, it's important, and it's important what the company says
9   about it.
10            The other thing that I would like to say is I
11   think the Court recognized the importance of the Kopreski
12   issue.
13            **THE COURT:**  Uh-huh.
14            **MR. LAMBERT:**  We went through multiple oral
15   arguments --
16            **THE COURT:**  Tell me about it.
17            **MR. LAMBERT:**  -- about Dr. Kopreski.  We went through
18   the Rule 43 and 45 analysis as far as him being available for
19   cross-examination.  The Court emphasized post-*Earnest* trial
20   pre-*Kahn* trial that our ability to robustly cross-examine him
21   if he is going to show up and give lay opinion testimony is
22   important.  The Court also said that Sanofi uses Dr. Kopreski
23   and its experts who rely on Dr. Kopreski's finding to undercut
24   the claims of all plaintiffs in this MDL, not just the
25   bellwether plaintiff.

1    So when you look at all of this as a whole in
2 the context of an MDL, where an appeals ruling comes out
3 unfortunately right after the trial instead of before the
4 second trial, we just have an important part of an MDL that's
5 been tainted really twice.  In fairness to Ms. Kahn, I think
6 she should get another shot on remand.
7    **THE COURT:**  Let me ask this question:  Does it matter
8 that this objection was not preserved at trial?
9    **MR. LAMBERT:**  Your Honor, that's a good question.  I
10 think it was in the fact that we had all of these pretrial
11 rulings that relate to Dr. Kopreski.  I think even in the days
12 before trial started when we met with Your Honor -- I was in
13 those discussions.  It was almost a game of chicken, "Are you
14 going to call him or are you going to call him?"  At the end of
15 the day, if you read the Court's rulings in that regard, the
16 onus was put on the plaintiffs to make a trial strategy
17 decision to either bring him in our case and suffer the
18 consequences of the completion testimony that Sanofi designated
19 or risk it coming in the defendants' case.  It is true that it
20 never came in either one of them.
21    **THE COURT:**  Right, right, so that the prejudice by
22 having him just --
23    **MR. LAMBERT:**  It would be odd.  It would be almost
24 like we would have to have proffered it in rebuttal after
25 Sanofi had its opportunity to play it or not.  Perhaps that was

10:09  1  a strategic error there, but all of the lead-up rulings that
2  mentioned Kopreski to the trial, I think that it fits within
3  60(b)(5).  I think it's a change in basically the law of the
4  case in terms of what evidence can be presented to the jury.
5  Again, in fairness to Ms. Kahn, I think she should be given
6  another opportunity.
7     **THE COURT:**  Thank you.
8     **MR. LAMBERT:**  Thank you, Your Honor.
9     **THE COURT:**  Mr. Moore.
10     **MR. MOORE:**  Thank you, Judge.  Douglas Moore on
11  behalf of Sanofi.
12     The motion that you have in front of you is a
13  Rule 59(e) motion.  We point out in our papers that Rule 59(e)
14  has a standard.  It's a motion for you to reconsider the ruling
15  that you previously made on this very motion.  I don't see an
16  argument that that standard is even met, but I don't want to
17  try and focus my comments today on sort of the bar exam
18  question component of this that's in the papers.
19     **THE COURT:**  We are not doing bar exam.
20     **MR. MOORE:**  I do think it is worth recounting kind of
21  what happened here to address the point that you just asked
22  Mr. Lambert in your last question to him and does it matter
23  that this issue was not preserved because they had their full
24  record in the *Kahn* case.  They appealed it.
25     The *Earnest* decision comes out months later, and

10:11 1 just before their appellate brief is due they filed the first
2 of these motions to come back to Your Honor and raise this
3 issue in front of Your Honor.  You deferred ruling on it.  Then
4 they did something that I don't think any of us were
5 contemplating, and that is they just dismissed their appeal.
6 So every issue that was in that record that was prepared for
7 appeal to the U.S. Fifth Circuit is waived.  Any complaint they
8 had about any of the rulings that were made by this Court in
9 the *Kahn* trial, poof, they are gone.
10             So we come back here now on this motion again to
11 reconsider it, I think, in the hopes that you will say
12 something today that makes this an appealable ruling if you
13 deny it.  I'm sure they would like to see Your Honor grant the
14 motion.  I think that that sort of history is tantamount to an
15 admission that this issue was not preserved in the district
16 court.  It wasn't preserved before trial.  It wasn't raised
17 before trial.  It wasn't raised at trial.  It wasn't raised in
18 a post-trial motion after trial.
19             I think that's important because when
20 Mr. Lambert mentioned the prior argument that I made when I
21 referred to the testimony of Dr. Kopreski being related to
22 causation, that was because Mr. Coffin came up and gave the
23 argument and talked all about Dr. Kopreski's causation
24 testimony.  The first thing I said in the argument was we did
25 not win on causation; we won on failure to warn.

10:12

1    Essentially, the argument that we heard the
2 first time was that you should throw out a jury verdict or
3 indicate to the Fifth Circuit you would throw out a jury
4 verdict for evidence the jury never saw on an issue that the
5 jury never reached because a ruling on that evidence had been
6 overturned in the interim.  That's where Rule 62(b)(5) would
7 apply is if there has been the overturning of a ruling that is
8 necessary for the successful defense.  The decision has to be
9 based on the evidence, and here the jury never reached the
10 issue of causation.
11    Even if we had put the Kopreski evidence in,
12 even if this jury had heard the Kopreski -- they call it the
13 reanalysis.  We just call it facts.  If the jury had heard that
14 evidence, they still wouldn't have grounds under (b)(5) to have
15 the verdict overturned because that evidence was not material
16 to the verdict reached by the jury.  The jury found in our
17 favor on failure to warn.
18    So the argument that's presented here is that,
19 "Well, we made this tactical decision.  We made this tactical
20 decision not to bring Dr. Kopreski in because we were afraid
21 that if we brought Dr. Kopreski in, then the jury would hear
22 this evidence."
23    **THE COURT:**  Right, the reanalysis.
24    **MR. MOORE:**  So that argument, Your Honor -- and I
25 will just quote them from their brief just to sort of frame my

10:14

1   comment here: "Had Ms. Kahn called Dr. Kopreski in her case in
2   chief, she would have risked Sanofi bringing before the jury
3   the same Kopreski reanalysis that resulted in prejudice to
4   Ms. Earnest."
5       That proposition is based on the flawed premise
6   that they had any control over whether this jury was going to
7   hear Dr. Kopreski's testimony about TAX316. Whether they
8   called Dr. Kopreski or not is completely immaterial to whether
9   the jury was going to hear that evidence about those 29
10  patients in TAX316 either from Dr. Kopreski or from Dr. Chang.
11      In the *Earnest* trial, you permitted them to put
12  in testimony from Dr. Kopreski and you prohibited us from going
13  beyond the scope of their direct examination. You told us in
14  the *Earnest* trial, "If you want to bring in this other
15  testimony from Dr. Kopreski, you have to do it in your case,"
16  and that's what we did.
17      That issue was never brought to you in the *Kahn*
18  trial. They never came to Your Honor and said, "Your Honor, we
19  want to put on Dr. Kopreski in our case. We want to ask him
20  these liability questions," that are now outlined in this
21  motion, "and we want you to prohibit Sanofi from going beyond
22  the scope of his direct examination and offering in this TAX316
23  evidence. We don't want to offer him for that. If they want
24  to do it, they have to do it in their case."
25      If they had said that to you and then you said,

10:16

1  "No, they can have full scope of cross," then there would be
2  something in the record.
3           THE COURT:  I'm trying to remember because I think --
4  I would have to go back and look, but I think I did not permit
5  them to do exactly that because I was concerned.
6           MR. MOORE:  Yes.  You made a ruling that they could
7  not play video in their case and then force us to bring him
8  live.
9           THE COURT:  Right.
10          MR. MOORE:  What your ruling said is this witness'
11 testimony is going to come in one way, live or by video.  You
12 did not say it's coming in one time.  You did not say --
13          THE COURT:  No, no, no, I didn't do that.  I know
14 that.
15          MR. MOORE:  You did not say that Sanofi is going to
16 have full rein to hijack their case during their case in chief.
17          THE COURT:  Right, right, right.
18          MR. MOORE:  So if you had said that, then this
19 *post hoc* tactical decision that they are talking about would
20 have been something that was raised and addressed by the Court,
21 and then there would be an issue to review.  That's why they
22 didn't raise this issue that they are raising now in front of
23 the court of appeal is because they didn't raise it with you in
24 the district court, and that's what this whole motion is about.
25          THE COURT:  Does it change that this whole -- that

10:17

1  the circuit changed the characterization of Kopreski's
2  testimony after trial, does it in any way affect their failure
3  to preserve it at trial because it changed?  Does that make a
4  difference?
5           **MR. MOORE:**  Well, I don't think that it does.  I
6  don't think that it does because they still made the same
7  objections in the *Kahn* trial as it relates to the Kopreski
8  testimony.  I would be remiss not to say that the Kopreski
9  testimony about those 29 patients, the same testimony that
10 Ellen Chang gave in her report and testimony which also wasn't
11 offered in the *Kahn* trial, has never been refuted as
12 inaccurate.  It's never been deemed to be proven as untrue.
13 It's still true facts as to what happened to those 29 patients.
14 Even when I was deposing Ellen Feigal for her preservation
15 deposition two months ago, that's still the case.  The jury
16 never heard that --
17          **THE COURT:**  Right.  Right.
18          **MR. MOORE:**  -- and so the overturning of the
19 admissibility of that evidence is immaterial to whether they
20 should be entitled to a new trial because the jury never heard
21 it and never reached the issue of causation.
22          Your Honor, we don't think that this issue was
23 preserved.  A new trial motion is not for the purpose of
24 correcting what I think I heard was a tactical error.  A
25 Rule 60 motion is not for that purpose.  A motion for a new

trial shouldn't be used to affix and raise an issue that you failed to raise in the district court.

Ultimately, what they wanted to have happen at this trial with Dr. Kopreski's testimony, they didn't want the jury to hear what he had to say about the factual information he looked up on those 29 patients, and they never did. They never heard it from him. They never heard it from Dr. Chang. For that reason, we do not believe that the jury verdict should be overturned because this evidence is not material to their decision.

**THE COURT:** Thank you.

**MR. MOORE:** Thank you, Judge.

**THE COURT:** Mr. Lambert, briefly.

**MR. LAMBERT:** Yes, Your Honor, very quickly.

So just very briefly on the procedural issue with Rule 59(e), part of the reason why I didn't address it at the beginning is because I think it's pretty clear. The appeal was withdrawn. It removes the hurdle to Your Honor addressing this substantively. The order denying the 60(b) before addressed the fact that the Fifth Circuit had jurisdiction and that there was this interplay with Rule 12.1 of the appellate rules and 62.1 of the federal rules that the Court didn't want to get into the substance.

The action of withdrawing the appeal removed that procedural impediment, and it also in our minds gives the

10:20

1  Court this issue to rule upon because Your Honor is really in
2  the best position to do that.  Your Honor was firsthand
3  involved in all the pretrial rulings, all the discussions in
4  advance of trial, and the Fifth Circuit would be doing a first
5  impression really on a stale record.  We do think it's
6  appropriate under 59(e) to be here.
7       The next point I want to make is the sixth
8  factor in the Fifth Circuit's *Seven Elves* analysis of factors
9  that should be considered is the important one, and that's
10 whether or not the judgment was rendered after a trial on the
11 merits, the movant had a fair opportunity to present his claim
12 or defense.  I'm not sure, based on those factors, that
13 Mr. Moore is correct that the particular evidence had to be
14 related to the outcome.  I think it's more of an equitable
15 analysis than that.
16      On the issue of whether the Court prohibited us
17 from bringing Kopreski twice, I think this was totally
18 different than *Earnest* on that issue because the Court
19 recognized the need for robust cross-examination and then
20 wrote:  "Plaintiff is prohibited from presenting both
21 Dr. Kopreski's deposition testimony during her case in chief
22 and his live testimony" -- which would be cross-examination --
23 "in defendants' case in chief.  Plaintiff must choose one
24 method of presenting Dr. Kopreski's testimony."
25      I think essentially that put us in a catch-22

```
10:22   1   where we had to decide he was either going to be cross-examined
        2   live in our case or cross-examined live in their case, because
        3   we couldn't take that risk of his testimony on a video being
        4   played in an unrebutted circumstance in front of the jury.
        5           THE COURT:  Couldn't you have called him by video in
        6   your case in chief and they would have been precluded from
        7   entering outside the scope of direct?
        8           MR. LAMBERT:  Well, Your Honor, perhaps.  It doesn't
        9   say in this order, though, that the defendant is not allowed
       10   to --
       11           THE COURT:  Call him in their case.
       12           MR. LAMBERT:  -- call him in their case.  Also
       13   importantly, I think there's a lot of reliance on Dr. Chang or
       14   Arrowsmith showing up and being able to do the analysis.  The
       15   problem with that premise is that Chang relies on Kopreski.
       16   It's part of her reliance.  The rulings in advance of trial,
       17   including the ruling on Dr. Arrowsmith, denied our challenges,
       18   quote, for the reasons provided in its order on Kopreski.
       19           Unfortunately, all this is interconnected.  I
       20   think the evidence that Mr. Moore characterizes as causation is
       21   really interrelated with liability.  I think that the factors
       22   in *Seven Elves*, equitable and otherwise, support granting the
       23   60(b).  Thank you.
       24           MR. MOORE:  Twenty seconds, Judge?
       25           THE COURT:  Twenty seconds.
```

10:24

1  **MR. MOORE:** Mr. Lambert I think misspoke when he said
2  that Dr. Chang's --
3  **THE COURT:** I know.
4  **MR. MOORE:** -- analysis was based on Dr. Kopreski's
5  analysis. It was not. The reference to the testimony that
6  would have been offered in liability testimony, we did set
7  forth in our original papers on the original motion the
8  multiple other witnesses who offered that very same testimony
9  called by the plaintiffs in the case.
10  **THE COURT:** I know. Dr. Arrowsmith relied on
11  Kopreski, but not Dr. Chang.
12  **MR. MOORE:** Correct. Thank you, Judge.
13  **THE COURT:** Thank you. Court is adjourned.
14  (Proceedings adjourned.)
15  * * *
16  **CERTIFICATE**
17  I, Toni Doyle Tusa, CCR, FCRR, Official Court
18  Reporter for the United States District Court, Eastern District
19  of Louisiana, certify that the foregoing is a true and correct
20  transcript, to the best of my ability and understanding, from
21  the record of proceedings in the above-entitled matter.
22
23
24  _/s/ Toni Doyle Tusa_
    Toni Doyle Tusa, CCR, FCRR
25  Official Court Reporter