# EXHIBIT C

## SECOND SUPPLEMENTAL REPORT
## Dr. Laura M. Plunkett, Ph.D., DABT
## December 29, 2022

112.    This second supplemental report was prepared at the request of Plaintiff's counsel and provides additional opinions that I have formed based on my training and experience as well as my review of additional documents related to this litigation. Consistent with all of the opinions expressed in my first Taxotere report dated March 13, 2020 (hereafter referred to as my March 2020 report) and my Supplemental Report dated April 29, 2022 (hereafter referred to as my April 2022 report), my opinions in this second supplemental report also relate to the use of Taxotere in the adjuvant care of early-stage breast cancer.

113.    Before preparing this second supplemental report, I reviewed the deposition testimony and all accompanying exhibits of company employees Jean-Phillipe Aussel and Frances Polizzano. I also have reviewed the testimony of Ruth Avila and materials cited in this Second Supplemental Report.  The testimony of these Sanofi employees is relevant to my opinions that Sanofi never warned physicians and their patients about permanent hair loss with Taxotere when used in the adjuvant care of early-stage breast cancer even though the company was aware as early as 2006 that there was more than just "some basis to believe there is a causal relationship" between Taxotere and the adverse reaction of permanent-chemotherapy-induced alopecia. The following is a discussion of the additional materials I reviewed, which further support my opinions. All opinions expressed in this second supplemental report are based on my review of all materials referenced in my March 2020 report (including the appendices to that report), all materials referenced in my April 2022 report (including the appendices to that report), my review of additional materials as listed in Appendix A to this report, my knowledge, training, and experience as a pharmacologist and toxicologist, my prior work as a consultant to the regulated drug industry, as well as my experience working as an expert in prior litigation.[1]  All opinions expressed in this report are stated to a reasonable degree of scientific certainty.

---

[1] My litigation work has included cases in the Eastern District of Louisiana including the Xarelto litigation and the Vioxx litigation, as well as cases in Louisiana state court such as my work on behalf of the Attorney General for the State of Louisiana in the Risperdal litigation.

114.    As discussed in some detail in my April 2022 report (*e.g.,* paragraph 94), evidence in this case shows that at least by 2006, Sanofi recognized that Taxotere use was associated with permanent alopecia (CIPAL/PCIA), and that it was a different adverse event than temporary or typical drug-induced alopecia.  In that April 2022 report, I also pointed out the following:

> *"What is particularly interesting concerning the above evidence, and all of the documents I have reviewed that were authored or dated before the initiation of this litigation, is the fact that at no time did Sanofi, either internally or with any regulatory agency, take the position that "hair generally grows back" was intended to encompass a warning for CIPAL/PCIA, or even the term persisting alopecia. Even as late as March 10, 2015, in e-mail exchanges attempting to determine why language identified in the 2011 audit was not added to the label, no one within Sanofi that comments on the labeling issues takes the position that "hair generally grows back" is a sufficient warning for CIPAL/PCIA or irreversible hair loss.[2] None of the Sanofi employees on the March 10, 2015, email exchanges states that "hair generally grows back" is sufficient to convey what was known about the persisting alopecia identified in the TAX316 dataset, in pharmacovigilance database, and the scientific literature."*

115.    The testimony of Mr. Aussel is consistent with the statements I made in my April 2022 report.  Like me, Mr. Aussel believed that any Taxotere label language using words such as "hair generally grows back" or "alopecia" was not telling physicians that Taxotere use had been linked to permanent or irreversible hair loss.[3]  This testimony from Mr. Aussel is further supported by the testimony of Dr. Palatinsky, who testified that at no time while he was global safety officer did the US label warn of permanent hair loss.[4]  At the very least, the language Sanofi did include was not in compliance with FDA labeling requirements because it lacked information about duration and severity of the side effect, both of which were known (not just "some basis to believe") by Sanofi.

---

[2] Sanofi_03287582
[3] See, for example, Aussel deposition testimony at 63:3-65:8 and 79:2-82:7.
[4] See Palatinsky deposition testimony of August 9, 2018 at 223:3-223:8.

116.     The testimony of Dr. Palatinsky[5] and Mr. Aussel that "alopecia" and "hair generally grows back" do not warn of permanent hair loss is supported by the Nurse Tear Sheet created and copyrighted by Sanofi in 2006, the same year that Amy Freedman admitted Sanofi knew that Taxotere caused permanent hair loss.  Before any litigation had been initiated, and when deciding how to tell nurses and patients what "alopecia" means, Sanofi chose to define it as a "common, yet temporary, side effect,"[6] as was discussed in the Polizzano deposition.

117.     My opinion that the Taxotere label did not warn about permanent hair loss is further supported by the testimony of Ruth Avila, a Taxotere sales representative.  She testified that, at a January 2006 national sales meeting, the Sedlacek abstract was brought up.   The sales representatives were told that Sanofi knew about its findings relating to permanent hair loss; that permanent hair loss was "outside" the label for Taxotere (which at the time contained "alopecia" and "hair generally grows back"); and that because it was not in the label, the sales representatives could not discuss it with doctors.[7]  Despite multiple admissions by Sanofi employees, including evidence discussed in my April 2022 report, that Sanofi knew about the association between Taxotere and permanent hair loss, Sanofi never itself attempted to change the label to warn about PCIA.

118.     The deposition of Dr. Polizzano is important to opinions that I have already expressed in this litigation, including but not limited to my opinion that the Taxotere label in 2015 failed to provide physicians and their patients with information about Taxotere use and the occurrence of a new type of hair loss, permanent or irreversible hair loss.  As I mentioned in my April 2022 report (paragraph 94):

---

[5] Dr. Palatinsky edited an informed consent for an outside group, and he added a second warning related to hair loss for just Taxotere (not the other drugs given in combination) about permanent hair loss.  This extra warning was in addition to the warning that also was listed about normal, temporary "hair loss" associated with chemotherapy.  Thus, by 2007 Dr. Palatinsky, too, knew that the evidence showing that Taxotere was associated with permanent hair loss was strong enough to warrant placing a warning about it in an informed consent.  Despite making the change in that one informed consent, Sanofi never updated the labeling for Taxotere in any way to include a warning for permanent hair loss with Taxotere use; such a labeling change would be a way to reach doctors across the US so that they would be aware of what Sanofi knew.
[6] Sanofi_01038474.
[7] See Avila testimony at 318:9-319:23.

> *"In November 2015, Sanofi employee Frances Polizzano remarked that "this is going to be fun submitting >4 year old labeling changes to the FDA now." Based on the e-mail thread, it is fair to assume the ">4 years" statement by Ms. Polizzano refers to the final clinical study report of TAX316 dated September 9, 2010 (more than 4 years prior). Thus, the failure to update the label with this particular information regarding Taxotere and persisting alopecia within TAX316 went back nearly five years.  And again, Ms. Polizzano did not take the position or comment that "hair generally grows back" is sufficient to convey what was known about permanent/irreversible or persisting alopecia."*

Review of her deposition makes clear that Dr. Polizzano, by 2015, also believed that the label should have warned about permanent/irreversible hair loss, did not actually warn about it, and should have been changed more than four years before 2015 to warn about it.  This fact further supports my opinion that the label listing of "alopecia" is not a warning for permanent hair loss.  As previously discussed in my reports, the FDA regulations require that a drug company disclose what they know about the side effects of their drugs in clear and concise language, including when they learn about new aspects of a previously-known side effect (like alopecia not being just temporary, but also permanent).[8]

---

[8] Labels for other Sanofi drugs at the time warned about the irreversibility of some side effects, as contained in the 2006 Physicians' Desk Reference.  These drugs include Apidra ("temporary or permanent damage to your heart or brain"), Avapro ("reversible or irreversible renal failure"), Avalide ("reversible or irreversible renal failure"), Lantus ("temporary or permanent harm to your heart or brain"), and Lovenox ("long-term or permanent paralysis"). Sanofi knew it could make a change to add irreversibility as a separate and distinct outcome and had several times for other drugs by 2006.

4

119.    Considered together evidence in the case clearly shows that Sanofi's Taxotere labels were inadequate for failing to provide any warning about permanent hair loss from 2006 through 2015, until they changed the label, because they did not disclose the side effect of permanent hair loss in accordance with the labeling standards set forth in the FDA regulations. Had Sanofi updated the label appropriately, and in a timely manner, the label change would have allowed for the transfer of what Sanofi knew to doctors.


_____

Laura M. Plunkett, Ph.D., DABT

## APPENDIX A

<u>Additional materials reviewied:</u>

Deposition of Frances Polizzano, and all exhibits

Deposition of Jean Philippe Aussel, and all exhibits

November 9, 2021 Testimony of Ruth Avila