# EXHIBIT G



February 15, 2021

Harley V. Ratliff

2555 Grand Blvd.
Kansas City, Missouri 64108
**t** 816.474.6550
**f** 816.421.5547
hratliff@shb.com

**VIA ELECTRONIC MAIL**

The Honorable Jane Triche Milazzo
The United States District Court of the Eastern District of Louisiana
500 Poydras Street
Room C206
New Orleans, LA 70130

Re:   *In Re: Taxotere (Docetaxel)*, MDL No. 16-2740: Plaintiffs'
Supplemental Expert Report of Dr. Laura Plunkett for Trial 2A (*Kahn*)

Dear Judge Milazzo,

Sanofi submits this letter in response to the PSC's February 8, 2021 submission seeking leave to serve a supplemental expert report for Dr. Laura Plunkett. The Court should deny this request. Dr. Plunkett's new report seeks to circumvent the Court's recent *Daubert* order as to her opinions; is duplicative of the opinions of the PSC's primary regulatory expert, Dr. David Ross; and the PSC has offered no substantial justification for her new report. In light of the above, there is no reason for the parties (or the Court) to waste time and resources on the otherwise unnecessary discovery and motion practice that will follow if her report is permitted.

**I.   Dr. Plunkett's Supplemental Report Attempts to Re-litigate Settled Issues.**

On the same day the PSC submitted Dr. Plunkett's supplemental report, the PSC served the report of Dr. Ross. His opinions are essentially a one-for-one replacement for those of Dr. Kessler.[1] Relying on similar evidence as Dr. Kessler (*e.g.*, FDA regulations, Dr. Madigan's Report, medical literature, etc.), Dr. Ross reaches similar conclusions: namely that there was some basis to support a causal association between Taxotere and permanent alopecia in 2006 that would warrant a label change.[2] In rendering these opinions, Dr. Ross did not review or rely upon Dr. Plunkett's supplemental report.

In turn, Dr. Plunkett's new report largely duplicates and is cumulative of Dr. Ross's regulatory conclusions—but with some troubling differences. Most notably, Dr. Plunkett, in her new report, opines that the Taxotere label should have been updated to include permanent alopecia because Taxotere

---

[1] Sanofi does not concede the admissibility or reliability of Dr. Ross's report.
[2] **Ex. A**, Feb. 8, 2021 Ross Rpt. at ¶¶ 27-28 (hereinafter cited as "Ross Rpt."); *compare* **Ex. B**, Nov. 6, 2018 Kessler Rpt.; **Ex. C**, Oct. 21, 2019 Kessler Supp. Rpt.

SHOOK
HARDY & BACON

Page | 2

"*carried an independent risk*" of permanent alopecia and was a "*substantial contributing factor*" in causing permanent alopecia in cancer patients. Specifically, she states that there is some basis to support a causal association between Taxotere and permanent alopecia from a toxicological perspective because "Taxotere (docetaxel) carried an independent risk of CIPAL/PCIA in [*Sedlacek's*] case series and was a substantial contributing factor to the condition in the women studied."[3]

If these opinions sound familiar, it is because Your Honor excluded them last month. *See* Rec. Doc. 11823 -Order and Reasons at 5-6, *In Re: Taxotere (Docetaxel) Prods. Liability Litig.*, Dkt. No. 11823 (Jan. 13, 2021) ("Dr. Plunkett did not conduct an analysis to assess general causation, so she may not suggest to the jury that Taxotere can cause permanent alopecia."). Specifically, the Court precluded Dr. Plunkett from opining that Taxotere carried an "independent risk" of permanent alopecia because she "did not conduct an analysis to assess general causation" and rejected Dr. Plunkett's "substantial contributing factor" opinion, recognizing this legal conclusion would "invade the province of the jury." *Id.*

Here, Dr. Plunkett still has not performed the requisite causation analysis (and again disclaims any attempt at one)[4] and her supplemental report relies on the same case studies that she cited in her original expert report.[5] Nevertheless, Dr. Plunkett ignores the Court's ruling by offering the same causation analysis that was excluded under *Daubert*. Because this Court has already found the *foundation* for Dr. Plunkett's labeling opinions unreliable, they will be inadmissible for the same reasons. She has done no additional analysis or review to cure the issues this Court previously highlighted. The mere fact that she couches these identical opinions as now being from a "toxicological regulatory" perspective makes them no more admissible than they were in January.

Next, Dr. Plunkett cites purported incidence rates from various studies or data in her supplemental report. Her use of incidence rates in formulating regulatory opinions has led to her opinion being excluded in the *Abilify* litigation. *See Rodman v. Otsuka America Pharm., Inc.*, 2020 WL 2525032 (N.D. Cal. May 18, 2020). More importantly, Dr. Plunkett's emphasis upon incidence rates in formulating her opinions is potentially inconsistent with this Court's recent preemption decision in the *Kahn* case. *See* Rec. Doc. 11682. There, this Court determined that the current labeling was adequate as a matter of law, and that the Supremacy Clause of the U.S. Constitution prevents Plaintiffs from arguing that a stronger label should have been implemented in *Kahn*. *Id*. at 20-21. While Dr. Plunkett does not state what the labeling should have said, her specific reference to, and reliance upon purported incidence rates

---

[3] **Ex. D**, Feb. 7, 2021 Plunkett Supp. Rpt. at ¶ 96 (emphasis added) (hereinafter cited as "Plunkett Supp. Rpt."); *see also id.* at ¶ 71.
[4] *Id*. at ¶ 89 ("I am not offering causation opinions in this case[.]").
[5] *Compare* Plunkett Supp. Rpt. at ¶ 96 *with* **Ex. E**, Mar. 13, 2020 Plunkett Rpt. at ¶¶ 34-35.

CHICAGO | DENVER | HOUSTON | KANSAS CITY | LONDON | LOS ANGELES | MIAMI | ORANGE COUNTY | PHILADELPHIA | SAN FRANCISCO | SEATTLE | TAMPA | WASHINGTON, D.C.

SHOOK
HARDY & BACON

Page | 3

from the cited studies is potentially inconsistent with the current labeling, which states that there is not a reliable way to estimate an incidence when referring to the existence of cases of permanent alopecia.

In sum, Dr. Plunkett's "new" opinions neither assist Dr. Ross with his regulatory analysis nor replace Dr. Kessler's opinions outside of Dr. Ross's expertise. Instead, Dr. Plunkett's supplemental report flouts the Court's previous *Daubert* ruling and squeezes previously excluded causation opinions under the guise of a "toxicological regulatory opinion."

## II. The Federal Rules Preclude Dr. Plunkett's Report, as it is Highly Prejudicial to Sanofi and Not Substantially Justified.

Dr. Plunkett's opinions are not necessary to replace parts of Dr. Kessler's regulatory opinion that Dr. Ross could not tackle on his own. To the contrary, Dr. Ross was able to render similar regulatory and labeling opinions as Dr. Kessler. And, absent the above, Dr. Plunkett's report is essentially duplicative of Dr. Ross's report.

Moreover, unlike other experts who have similar or overlapping opinions, Dr. Plunkett's "new" opinions were disclosed nearly a year after the initial expert report deadline. If Dr. Plunkett's "toxicological regulatory" opinions were, in fact, "necessary"—as the PSC asserts—she could have offered them in March 2020 when she was first disclosed (or in any of the previous reports she has issued in this litigation). She did not. Instead, she waited until this late hour to submit a 22-page supplemental report, adding significant changes to Plaintiffs' theory of the case.[6]

In doing so, the PSC has also failed to carry their burden in proving a substantial justification for Dr. Plunkett's late report. Even if the Court finds that these untimely opinions are somehow relevant and not cumulative, the law precludes prejudicial supplemental disclosures absent a substantial justification.[7] Indeed, a supplemental report should not be used to provide an extension for information that, like here, was available to Dr. Plunkett at the time of the initial expert disclosure deadline. *See Simmons v. Johnson*, No. 06-cv-00325, 2008 WL 474203, at *2 (M.D. La. Feb. 14, 2008) (no substantial justification found where the information available at the time of the initial expert report was essentially "the same as the information . . . available at the

---

[6] *See, e.g.*, Plunkett Supp. Rpt. at ¶ 98 ("Yet, it was not until December 2015 that Sanofi added permanent or irreversible alopecia to the Adverse Reactions section (Section 6) of its US label, even though evidence existed before 2006 that Sanofi should have known about based on the fact that their own pharmacovigilance database contained adverse event reports before 2006[.]").

[7] Rule 37(c)(1) of the Federal Rules of Civil Procedure states, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

SHOOK
HARDY & BACON

time he issued his supplemental report."). As the Fifth Circuit has explained, an expert is required to "deliver the lion's share of its expert information" through their initial disclosures—not through supplements that materially alter the expert's opinions based on previously known data. *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996). Dr. Ross gives the PSC the regulatory opinions it lost when Dr. Kessler departed. The PSC should not be permitted to exploit Dr. Kessler's appointment by expanding the scope of Dr. Plunkett's opinions when it has already replaced Dr. Kessler's regulatory opinions with Dr. Ross.

Finally, permitting Dr. Plunkett's report will prejudice Sanofi and result in unnecessary work and possible delay. Sanofi proceeded with Dr. Plunkett's deposition, briefing, and *Daubert* hearing at significant expense. Her supplemental report, if permitted, would require another round of expert discovery, supplemental reports of Sanofi's experts, more depositions, and briefing as to opinions that are essentially the same as the ones this Court has already excluded or are duplicative of Dr. Ross. Moreover, the Court should not let the PSC use the loss of Dr. Kessler as an opportunity to re-litigate settled issues and avoid previous *Daubert* rulings.

## **CONCLUSION**

For the aforementioned reasons, Defendants respectfully request the Court strike Dr. Plunkett's Supplemental Expert Report and preclude her from offering any regulatory opinions at trial.

Sincerely,

Harley V. Ratliff

Page | 4