**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re:  TAXOTERE (DOCETAXEL)                          MDL NO. 2740
PRODUCTS LIABILITY LITIGAITON

                                                    SECTION "H" (5)

THIS DOCUMENT RELATES TO:                           JUDGE MILAZZO

ALL CASES                                           MAG. JUDGE NORTH

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT SANOFI'S MOTION TO EXCLUDE**
**EXPERT TESTIMONY OF DR. LAURA PLUNKETT**

---

## I.    INTRODUCTION

Pursuant to Case Management Order No. 36, the Plaintiffs' Steering Committee (PSC) notified Defendant Sanofi of its intent to preserve the regulatory and labeling expert opinions of Laura M. Plunkett, Ph.D. as part of the PSC's trial package.   CMO 36 contemplates the preservation of general expert testimony for use in cases transferred and/or remanded from this MDL to other district courts.  Dr. Plunkett was previously designated and testified as a regulatory and labeling expert in the second bellwether trial of *Elizabeth Kahn v. Sanofi-Aventis US, LLC* (No. 16-17039), before which her opinions were scrutinized under Rule 702 and *Daubert v. Merrell Dow Pharmaceutical, Inc.,* 509 U.S. 579 (1993). During the *Kahn* trial, Dr. Plunkett was permitted to opine on the inadequacy of the Taxotere label relevant to that case.  Dr. Plunkett has not changed her methodology or opinions since that time; rather, given certain inquiries of the Court regarding specificity of references in her reliance materials, she has more clearly delineated the factual support for her opinions.[1]

---

[1] Doc. 13131.

Dr. Plunkett is well-qualified to render the opinions offered in the matter as detailed in her report.[2]  She has extensive knowledge, training, and experience, understands the regulatory standards governing drug product labeling, and applies the relevant standards to the facts and data in this matter to reach her opinions.  This is precisely what Dr. Plunkett did in her prior regulatory reports, and her current expert report, as supplemented in December 2022, is no different.  Following Disclosure of this December 2022, Sanofi exercised its right under the terms of CMO 36 to take another discovery deposition of Dr. Plunkett on March 28, 2023, in which Sanofi had the full opportunity to examine her opinions to be preserved and the bases thereof.

Sanofi seeks to exclude Dr. Plunkett's opinions by misstating both the appropriate labeling standard for adverse reactions, and the facts which drive Sanofi's regulatory obligation to amend its label.  This case involves the failure to timely provide an adverse reactions warning concerning permanent hair loss in §6 of the Taxotere label in accordance with 21 C.F.R. § 201.57(c)(7) and 21 C.F.R. § 314.80(a).  Dr. Plunkett properly identifies the regulatory framework and standard applicable to Sanofi, and she analyzes the relevant evidence that speaks to the labeling issue. She articulates valid bases for her clear and directly stated regulatory opinion: "[b]ased on my training and experience in pharmacology, toxicology, and FDA regulation of human drug products, it is my opinion to a reasonable degree of scientific certainty that Sanofi should have updated the Taxotere label at least by 2006 to provide physicians and their patients with an Adverse Reactions warning in the Taxotere label. It is my opinion to a reasonable degree of scientific certainty sufficient evidence existed at least by 2006, […], to meet the regulatory threshold of 'some bases

---

[2] Sanofi's motion to exclude the testimony of Dr. Laura Plunkett does not challenge her qualifications to offer her opinions, and therefore Plaintiffs will not address Dr. Plunkett's qualifications.  The Court has previously accepted Dr. Plunkett as an expert qualified to offer opinions in the field of regulatory compliance and labeling, and Sanofi offered no objection. Ex. 1, *Kahn* trial transcript, 966:22-967:12.

to believe' there is a causal relationship between Taxotere and permanent, irreversible or persistent alopecia (CIPAL/PCIA)."[3]

Dr. Plunkett's qualifications to offer the opinions set out in her reports are not being challenged in Sanofi's present motion; thus, the Court only needs to determine whether the portion of Dr. Plunkett's opinions that Sanofi attacks are relevant and reliable.  That is, are they the product of an acceptable methodology to apply relevant facts to the appropriate standard under 21 CFR §§ 201.57(c)(7) and 314.80.  That Sanofi disagrees with the conclusions reached by Dr. Plunkett, or that Sanofi has a different interpretation of the evidence, simply cannot warrant exclusion of her expert testimony under *Daubert*, 509 U.S. 579.  Sanofi's distaste for the clear corporate testimony of its employees that forms part of the bases for Dr. Plunkett's opinions likewise is not a valid basis for excluding Dr. Plunkett's expert opinions. Accordingly, the Court should deny Sanofi's instant Motion.

## II.   LEGAL STANDARD

Rule 702 and *Daubert* govern the admission of expert testimony.  Under this framework, the district court acts as a "gatekeeper" to ensure a proposed expert is qualified as such, and his or her testimony is both reliable and relevant.  *Daubert*, 509 U.S. at 596-97; *Williams v. Manitowac Cranes*, L.L.C. 898 F.3d 607, 623 (5th Cir. 2018); *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 2017 WL 1352860 at *1 (E.D. La. Apr. 12, 2017).

Because Sanofi does not challenge that Dr. Plunkett is appropriately and adequately qualified to offer her opinions, this opposition will focus on the reliability and relevancy (including "fit") of her opinions.  The reliability inquiry focuses on the reasoning or methodology underlying the testimony.  *See Daubert*, 509 U.S. at 592-93.  This inquiry is not concerned with whether the

---

[3] Sanofi's Ex. B, Plunkett Supplemental Report, 4/29/2022, "110. Summary of Regulatory Opinions."

3

expert's testimony is correct.  *MM Steel L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 850 (5th Cir. 2015).  The focus is on whether the testimony is based upon reasoning and methodology that is "scientifically valid."  *Daubert*, 509 U.S. at 595; *MM Steel L.P.*, 806 F.3d at 850-51.  "The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation."  *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 550 (E.D. La. 2015) (*citing Daubert*, 509 U.S. at 590).  In *Daubert*, the Supreme Court set forth a non-exhaustive list of factors to consider in determining the scientific reliability of expert testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) the general acceptance of the methodology in the scientific community.  *Daubert*, 509 U.S. at 593-94.  In the case of prescription drugs, like Taxotere, the Code of Federal Regulation *is the* standard to be applied, without dispute.  All regulatory experts – Plunkett, Arrowsmith, and Victoria – agree that the Code of Federal Regulation, Title 21, provides the regulatory requirements for drug labeling.  *infra.*

The *Daubert* factors are not a "definitive checklist or test."  *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999).  Whether some or all these factors apply in a particular case depends on the nature of the issue, the expert's particular expertise, and the subject of his testimony.  *Id.*  Indeed, the test of reliability is "flexible."  *Daubert*, 509 U.S. at 594.  "[T]he law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination."  *Kuhmo Tire Co.*, 526 U.S. at 142 (emphasis in original).  "Thus, whether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine."  *Id.* at 153.

The Court's relevancy determination focuses on whether the proposed testimony "will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592.  To be relevant, "the expert's 'reasoning or methodology [must] be properly applied to the facts at issue.'"  *Puga v. RCX Solutions, Inc.*, 914 F.3d 976, 985 (5th Cir. 2019) (*quoting Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012)).  "When performing this analysis, the court's main focus should be on determining whether the expert's opinion will assist the trier of fact."  *Id.*

"[T]he court's role . . . is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role …"  *Id.*   Under this system, "'[r]ejection of expert testimony is the exception rather than the rule.'"  *Id*. (quoting Fed. R. Evid. 702 advisory committee notes).

In the present MDL, the Court has already blessed the methodology, relevancy, and reliability of Dr. Plunkett's regulatory opinions; and Dr. Plunkett previously testified in the *Kahn* trial.[4]

## III.   ARGUMENT

### A.   Dr. Plunkett's Opinions Are Relevant to this Action.

Dr. Plunkett's opinions are central to the key issue in this case – whether Sanofi failed to provide an adequate adverse reaction warning in its Taxotere label concerning the use of Taxotere in the adjuvant setting and permanent hair loss.  Her opinions necessarily involve identifying the appropriate regulatory requirements and applying the relevant and applicable facts to the regulatory standard, in order to determine whether Sanofi complied or failed to comply with relevant regulatory obligations.  Dr. Plunkett's report properly identifies the relevant regulatory provisions, most importantly 21 C.F.R. § 201.57(c)(7) and 21 C.F.R. § 314.80(a), and meticulously walks through the evidence that demonstrates Sanofi's labeling failures.  Notably, both of Sanofi's

---

[4] Doc. 13131.

previously identified regulatory experts (Janet Arrowsmith, M.D. and Justin Victoria) agree with Dr. Plunkett on the relevant regulatory provisions applicable to the Taxotere label, and that the regulations set the standard to be applied to both initial and supplemental NDAs and labels.[5]   Dr. Plunkett's analysis of evidence under the relevant regulatory provisions is both relevant and involves application of appropriate methodology.   The identification of facts and evidence, and the application to the appropriate regulatory standard requires Dr. Plunkett's expertise, and Sanofi does not challenge Dr. Plunkett's qualifications to offer her opinions.

### B.    Dr. Plunkett's Opinions are Reliable.

Sanofi faults Dr. Plunkett for failing to mimic Plaintiffs' former regulatory expert's analysis according to the FDA's Guidance for Industry. See Sanofi's memorandum, Doc. 16169-1 at 11 – 14.  But Dr. Plunkett's opinions in her supplemental reports are not at odds with Dr. Kessler's methodology previously supported by the PSC.  Instead, it is Sanofi that has reconsidered its position.  Sanofi previously moved to exclude Dr. Kessler's opinions utilizing the FDA's Guidance for Industry, but this Court denied Sanofi's motion, and, in doing so, the Court did not find  Dr. Kessler's methodology invalid.  Indeed, over similar objections, the Court allowed Dr. Plunkett to testify to the inadequacy of the Taxotere label in *Kahn*.  Moreover, the FDA's Guidance for Industry itself supports Dr. Plunkett's use of additional support.  The introduction to the FDA's Guidance for Industry states:

> This guidance represents the Food and Drug Administration's (FDA's) current thinking on this topic.  It does not create or confer any rights for or on any person and does not operate to bind FDA or the public.  You can use an alternative approach if the approach satisfies the requirements of the applicable statutes and regulations.

---

[5] Ex. 2, Dep. of Janet Arrowsmith, M.D., 7/29/2020, 56:9 – 57:21, 59:14-20 (21 CFR § 201.57 applies to supplemental new drug applications) and 63:7 – 64:12 (21 CFR § 314.80 states that "adverse drug experience includes events that may be symptomatically and pathophysiologically related to an event listed in the label, but differ from the [listed] event because of greater duration or specificity."); Ex. 3, Report of Justin Victoria, 12/18/2018, pp. 15 and 33.

> If you want to discuss an alternative approach, contact the FDA staff responsible for implementing this guidance.  If you cannot identify the appropriate FDA staff, call the appropriate number listed on the title page of this guidance.[6]

The FDA's Guidance for Industry further states in the background section:

> As this guidance seeks to bring greater consistency to the content and format of the ADVERSE REACTIONS section, the Agency emphasizes that reviewer and applicant judgment remain critical in assessing how or whether to present information on an adverse reaction.[7]

Accordingly, and in line with Sanofi's own findings[8], it is unnecessary for Dr. Plunkett to analyze each and every piece of evidence according to the seven factors set out in the FDA's Guidance for Industry in order for her methodology to be reliable.

FDA regulations dictate that a label must include an adverse reaction warning for a particular adverse event.  Specifically,

> [f]or purposes of prescription drug labeling, an adverse reaction is an undesirable effect, reasonably associated with use of a drug, that may occur as part of the pharmacological action of the drug or may be unpredictable in its occurrence. This definition does not include all adverse events observed during use of a drug, *only those adverse events for which there is some basis to believe there is a causal relationship between the drug and the occurrence of the adverse event.*[9]

And,

> labeling must be revised to include a warning about **a clinically significant hazard** as soon as there is **reasonable evidence of a causal association with a drug**; a causal relationship need not have been definitely established."[10]

And,

---

[6] Sanofi's Exhibit N, FDA Guidance at pg. 1.
[7] *Id.* at pg. 13.
[8] Ex. 4, Freedman Dep., 10/26/2018, 195:20 - 196:2; Ex. 5, Sanofi_01268143 (p. 35 of 37), 11/11/2015, Clinical Overview: Docetaxel and Permanent Alopecia; Ex. 6, Mancini Dep. 3/23/2018, 279:23 - 281:11.
[9] 21 C.F.R. § 201.57(c)(7) (emphasis added).
[10] 21 C.F.R. § 201.57 (c)(6)(i) (emphasis added).

> [f]or adverse reactions with significant clinical implications, the listing must be supplemented with additional detail about the nature, frequency, and severity of the adverse reaction and the relationship of the adverse reaction to drug dose and demographic characteristics, if data are available and important.[11]

Further, the relevant regulations define an "unexpected adverse drug experience" as

> [a]ny adverse drug experience that is not listed in the current labeling for the drug product. This includes events that may be symptomatically and pathophysiologically related to an event listed in the labeling but differ from the event because of greater severity or specificity.[12]

Dr. Plunkett properly identifies and relies upon these regulatory standards and analyzes necessary facts and data available in rendering her opinions that apply the above relevant standards.[13]  Unlike Dr. Plunkett's regulatory opinions in *Kahn*, where it was necessary to evaluate facts relevant to a particular point in time, Dr. Plunkett's preservation deposition – and her report – must span from 2006 – 2015, from fencepost to fencepost.  In doing so, Dr. Plunkett bases her opinions upon *facts, evidence and admissions* that demonstrate what information was available to Sanofi, and when, and then she applies the evidence to the regulatory standards that Sanofi's own experts concede are relevant to the company's labeling obligations: 21 C.F.R. §§ 201.57(c)(7) and 314.80(a).  Sanofi was obligated to change its Taxotere label to include an adverse reactions warning for permanent, persistent, or irreversible alopecia when "there [was] some basis to believe there is a causal relationship between [Taxotere] and the occurrence of the adverse event."[14]

---

[11] 21 C.F.R. § 201.57(c)(7)(ii)(A).

[12] 21 C.F.R. § 314.80.

[13] Sanofi's Ex. B, Plunkett Supplemental Report, 4/29/2022, *see* pp. 17 - 44, generally; Sanofi's Ex. C, Plunkett Second Supplemental Report, 12/29/2022.

[14] Sanofi's Ex. B, Plunkett Supplemental Report, 4/29/2022, ¶ 95 (". . . [W]hile Sanofi's two Clinical Overviews reach different ultimate conclusions on causation and attribution to Taxotere, they both include as a basis for their respective conclusions pre-2011 evidence that offers support for my opinion that there is some basis to believe a

**C.      Sanofi's *Kahn* Arguments are Irrelevant and lack Merit.**

Sanofi's criticisms of Dr. Plunkett's methodology in reaching her opinions are unpersuasive.  As an initial matter, CMO 36, § 2(a & b), requires "[f]or avoidance of doubt, the PSC shall serve the expert's report (or specifically identify the prior report) reflecting the opinions" that Dr. Plunkett intends to proffer, and requires the PSC to serve a supplemental report "including any supplemental materials reviewed or relied upon."[15]  The PSC identified Dr. Plunkett's April 29, 2022, Supplemental Report, and served a Second Supplemental Report on December 29, 2022.[16]  Despite the PSC's identification of the operative reports for Dr. Plunkett's preservation testimony *("[f]or avoidance of doubt"),* at her  supplemental discovery deposition Sanofi went far afield in its examination of Dr. Plunkett, and its present memorandum spends considerable time attacking Dr. Plunkett's *Kahn* trial testimony and a Rule 26 report that was **not** identified for purposes of preserving testimony.[17]  Similarly, Sanofi wastes this Court's time with a recitation of Dr. Plunkett's *Kahn* trial testimony.  But Dr. Plunkett's *Kahn* report and trial testimony are of no relevance to her preservation deposition testimony and opinions.

But, for clarity's sake, the concerns raised by Sanofi regarding her *Kahn* trial testimony were remedied by Dr. Plunkett's April 29, 2022 – the operative report for Dr. Plunkett's preservation testimony, along with her second supplemental report of December 29, 2022.  Dr. Plunkett clearly sets forth evidence – documents, depositions/testimony, and scientific/regulatory

---

causal relationship exists between Taxotere and CIPA/PCIA."), and ¶ 110 ("It is my opinion to a reasonable degree of scientific certainty sufficient evidence existed at least by 2006, [], to meet the regulatory threshold of '*some basis to believe'* there is a causal relationship between Taxotere and permanent, irreversible or persistent alopecia (CIPAL/PCIA).")

[15] Doc. 14925

[16] Sanofi's Ex. B, Plunkett Supplemental Report, 4/29/2022; Sanofi's Ex. C, Plunkett Second Supplemental Report, 12/29/2022.

[17] *See* Sanofi's memorandum, Doc. 16169-1, at fn 16; Sanofi's Ex. I, Plunkett Supplemental Report, 2/7/2021.

literature – reviewed and relied upon to render her opinions.[18] The subsequent provision of Dr. Plunkett's Supplemental (including Appendix A) and Second Supplemental Reports remedies each of Sanofi's concerns expressed at trial, as well as in its memorandum.  There is no justifiable reason to address these prior moot issues, as the augmented report and references must be considered in connection with the current challenge to Dr. Plunkett's forthcoming preservation testimony.  Each item raised by Sanofi relating to the *Kahn* trial, and addressed at pp. 4-5 and 8-9 of Sanofi's memorandum (Sanofi's 2015 Clinical Overview completed by Global Safety Officer, Nanae Hangai; testimony of Global Safety Officer, Amy Freedman, M.D.; April 2006 labeling meeting to discuss differentiating temporary alopecia and alopecia that "does not reverse"; Global Safety Officer Emanuel Palatinsky's email; and data from Sanofi's Pharmacovigilance Database concerning permanent alopecia) have all been fully disclosed, reviewed and considered by Dr. Plunkett in her April 29, 2022 and December 29, 2022 reports. Additionally, the supplemental reports and opinions expressed therein were fully investigated by Sanofi in its March 29, 2023 discovery deposition of Dr. Plunkett pursuant to CMO 36, paragraph.

> ### D.      Dr. Plunkett's Analysis is Appropriate.

Now that Dr. Plunkett has augmented her listing of materials reviewed and considered underlying her opinions, along with others previously reviewed, and considering her application of relevant facts against the regulatory standard and framework that even Sanofi's own experts accept as relevant and appropriate, Sanofi must change its course and attack from a different direction.  In doing so it chooses to grossly misstate both facts and law, ignoring its own experts' concessions on the relevance of 21 CFR §§ 201.57 and 314.80, and accuses Dr. Plunkett of "divining" Sanofi's state of mind.  Sanofi seeks to couch selected pieces of evidence reviewed by

---

[18] Sanofi's Ex. B, Plunkett Supplemental Report, 4/29/2022; Ex. 7, Plunkett Supplemental Report, Appendix A: List of Documents Reviewed, 4/29/2022; Sanofi's Ex. C, Second Supplemental Report, 12/29/2022.

Dr. Plunkett (whether contained within company documents, admissions/statements from its employees, company statements inside or outside the company, or scientific literature) that help support her opinion that there is "some basis to believe there is a causal relationship between the drug and the occurrence of the adverse event" as Dr. Plunkett seeking to become Sanofi's clairvoyant to explain its state of mind.[19]  Nothing could be farther from the truth; Dr. Plunkett reviewed the relevant evidence to address Sanofi's obligations under 21 CFR §§ 201.57 and 314.80.

In approaching her investigation and opinions in a reliable manner, consistent with her knowledge, training and expertise, Dr. Plunkett did something that no Sanofi expert attempts – she applied relevant and indisputable facts to the appropriate regulatory standard to reach a conclusion on the adequacy of the Taxotere label as early as 2006.[20]   No expert presented by Sanofi has attempted to contradict the opinions, methodology, or the application of the regulations set out by Dr. Plunkett in her report; no Sanofi expert has applied *facts* to the applicable regulatory standards set out in 21 CFR §§ 201.57 and 314.80.

Strangely, the evidence on which Dr. Plunkett relies does not demonstrate that Sanofi ever attempted to perform a similar analysis contemporaneously with the evolving evidence that Dr. Plunkett recounts. However, the evidence shows that Sanofi's own employees recognized Sanofi's failure to update its label in 2011, through a periodic desk audit of its Taxotere label, and again in 2015, in a series of emails among regulatory employees about the failure in 2011.[21]   This culminated in an email from Frances Polizzano, Sanofi's associate director, labeling manager**,**

---

[19] Sanofi's Ex. B, Plunkett Supplemental Report, 4/29/2022, p. 1, introductory paragraph, ¶¶ 90, 91, 94 - 97, 99, 105 – 106, and  110. ("It is my opinion that sufficient evidence to meet this standard existed as early as 2006, and as further evidence accumulated, there is greater support for this opinion.").
[20] *Id.*
[21] Ex. 8, Sanofi_02983328, Desk Audit, 4/18/2011; Ex. 9, Sanofi_02983325 and Ex. 10, Sanofi_02983317, Emails 2015 (Njiveldt/STJ/Polizano).

wherein she states "this is going to be fun , submitting > 4 year old labeling changes to the FDA now."[22] The PSC points to these few documents to address, by way of example, that Dr. Plunkett's reliance on this evidence does not require any divining powers; these are simply Sanofi's documents that, without needing any interpretation, demonstrate the company's knowledge and recognition of safety concerns of its employees.  And, as Dr. Plunkett points out, and as can be plainly seen, these documents (and many more) pre-date the initiation of this MDL.  They are contemporaneous statements by the company's employees responsible for Global Drug Safety and regulatory labeling.  Further, and despite Sanofi's characterization to the contrary, Dr. Plunkett relies upon and applies the Guidance For Industry as well as the Federal Register, Requirements on Content and Format of Labeling Human Drug and Biological Products (Final Rule), Fed. Reg. Vol. 71, No. 15, Jan. 24, 2006.

In response to Dr. Plunkett's original regulatory report, Sanofi identified only Ellen Chang, Sc.D., who admits that she is not regulatory expert and is unfamiliar with the regulatory obligations for labeling.[23]   And she did not speak to the regulatory responsibilities of Sanofi, or the accumulation over time of evidence that warranted updating the label.[24]

Dr. Plunkett applied established evidence – including admissions or concessions from Sanofi's Global Safety Officers, or other employees, and documents authored by Sanofi employees, and the scientific literature – against the proper regulatory standard for assessing whether "*some basis to believe there is a causal relationship between the drug and the occurrence of the adverse event,*" (italics added) to require a label change (21 C.F.R. §

---

[22] Ex. 11, Sanofi_05207927, Polizzano emails.
[23] Ex. 12, Dep. of Ellen Chang, ScD, 5/4/2021, pp. 219:21 – 220:9, ("Q. You're not a regulatory expert, right? A. I am not a regulatory expert.[], Q You're not familiar with the regulatory requirements for label changes, right? A. Correct.")
[24] *Id., see also,* 226:9 – 227:2 ("And you do not attempt to apply any facts to a regulatory standard to reach a conclusion about the appropriateness or inappropriateness of Sanofi's Taxotere label, correct? A. That's correct.")

201.57(c)(7)).  That is precisely what is called for by a regulatory expert.

Addressing and citing *evidence* is not divining Sanofi's state of mind; it is simply applying factual testimony of Sanofi's key employees on safety, i.e., Global Safety Officers, to the regulatory framework. For example, when Sanofi's Global Safety Officer, Emanuel Palatinsky states in an email "permanent h.l. [hair loss] is sufficient once" in the docetaxel-specific warnings section of an informed consent form, there is absolutely no interpretation or clairvoyance needed – the words are Dr. Palatinsky's, describing a specific adverse reaction associated with use of Taxotere.

To address the question of whether and when a label change was required, Dr. Plunkett considered evidence that might demonstrate Sanofi had "*some basis to believe.*" Sanofi's argument that identifying and setting out the evidence that is applied against the accepted labeling standard is somehow invading the province of the jury is absurd.  Such an argument places all plaintiffs in a "damned-if-you-do, and damned-if-you-don't" position.  If Dr. Plunkett abbreviates her report to only her qualifications and an opinion unsupported by references to established evidence, she risks almost certain exclusion for failing to provide an adequate basis for her opinions under FRE 702(b).  Yet Sanofi argues that by identifying evidence and applying it to the appropriate regulatory standard, Dr. Plunkett is somehow inappropriately speaking to the state of mind (i.e., the motive) for Sanofi's actions.  But that is not the case at all.  Dr. Plunkett does not attempt to describe Sanofi's state of mind or motives; she simply analyzes and identifies evidence supporting her conclusions.

### E.    Sanofi's Cited Authority is Inapplicable and Distinguishable.

This Court should not entertain Sanofi's attempts to conflate Dr. Plunkett's identification of *evidence* that demonstrates "some basis to believe there is a causal relationship between the drug and the occurrence of the adverse event" with the incorrect notion, and gross

13

mischaracterization, that Dr. Plunkett is somehow attempting to divine Sanofi's state of mine.  In support of its off-the-mark argument Sanofi cites to *Marlin v. Moody Nat'l Bank, N.A.,* 248 F. App'x 534, 541(5th Cir. 2007). The *Marlin* decision has no applicability to the present facts. *Marlin* involves claims brought under the Racketeer Influenced and Corrupt Organizations Act (RICO). The court in *Marlin* notes that under RICO, "a conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense…". *Id.* at 538.  Intent and knowledge that others were conspiring to act in concert are elements of the underlying predicate criminal enterprise. *Id.*  Proving intent and knowledge of your coconspirators' complicity as part of the alleged civil RICO violation are a far cry from what Dr. Plunkett does in the present matter.  Here Dr. Plunkett sets out various pieces of evidence that demonstrate the requisite proof to support her opinion that there is "some basis to believe" the regulatory requirements of 21 CFR §§ 201.57 and 314.80 were in fact met at points between 2006 and 2015.[25]

The relevant labeling regulations do not require Dr. Plunkett to address Sanofi's state of mind, nor does she attempt to do so.  Sanofi faults Dr. Plunkett for citing Sanofi's current and former employees' admissions and concessions concerning what it knew and when, and for identifying documents that demonstrate the recognition that temporary hair loss and permanent, irreversible, persistent alopecia differ by duration and specificity, as addressed in 21 CFR § 314.80, and that such evidence supports her opinion that there existed at least as early as 2006 "some basis to believe there is a causal relationship between [Taxotere] and [permanent, irreversible, persistent hair loss]."

---

[25] Recall that Dr Plunkett's preservation testimony must cover the 9-year period between the fenceposts set by the Court.

14

The standard in 21 C.F.R. § 201.57(c)(7) demonstrates that a level of suspicion of a causal association ("some basis to believe a causal relationship exists") triggers an obligation that Sanofi amend its label to include an adverse reactions warning.  Intent and motive are not elements of what Dr. Plunkett must offer, and her testimony is so categorically different than what the plaintiff in *Marlin* attempted to offer through their expert that *Marlin* is of no value in considering Dr. Plunkett's testimony. Recall that Sanofi's originally disclosed regulatory expert, Dr. Janet Arrowsmith, agrees that 21 C.F.R. § 201.57(c)(7) sets the standard for requiring Sanofi to update its adverse reaction warning in the Taxotere label, and that standard is "some basis to believe that there is a causal relationship between the drug and the occurrence of the adverse event."[26]  Dr. Plunkett reviewed the information that was available to Sanofi before the company received its first complaint alleging permanent hair loss resulting from the use of Taxotere, and she reviewed evidence that continued to develop even after this MDL was created – including evidence that Sanofi's current litigation counsel sought to support a label update with evidence that dates back to 2010 and earlier.[27]   In fact, in March 2017 and without any precipitating, remedy-inspiring event, Sanofi presented only the 2010 CSR as support for a label change to include the incidence of ongoing alopecia from its clinical trials.[28]

Similarly, *In re Trasylol Procucts Liab. Lit.*, 709 F. Supp. 2d 1323 (S.D. Fla. 2010), is not supportive of Sanofi's arguments either.  The court in *Trasylol* states that the expert (Dr. Parisian) failed to confine her opinions to the FDA regulatory scheme.  *Id. at* 1345.  Dr. Plunkett is not afflicted with this problem; Dr. Plunkett's opinions involve two very direct and very discrete regulatory provisions: 21  CFR §§ 201.57 and 314.80, and the application of established evidence

---

[26] Ex. 2, Dep. of Janet Arrowsmith, M.D., 7/29/2020, 56:9 – 57:21.
[27] Ex. 13, Sanofi_05173852, (LRC minutes involving the submission of Sanofi's TAX316 CSR, September 2010.)
[28] *Id.*

to these provisions.  Dr. Plunkett makes no attempt to discuss Sanofi's motive, as the court in *Trasylol* found Dr. Parisian attempted to do; Dr. Plunkett simply lays out factual evidence and does not editorialize or attempt to infer nefarious motives to Sanofi.

Sanofi attempts to cast doubt on the meaning of evidence submitted in Dr. Plunkett's Second Supplemental Expert Report, including deposition testimony of Sanofi employees Jean-Phillipe Aussel, Frances Polizzano, and Dr. Palatinsky and a 2006 Nurse Tear Sheet, suggesting Dr. Plunkett is attempting to stand in these witnesses' shoes.  Nothing could be further from the truth, as Dr. Plunkett supports her opinions with documented admissions and/or recognitions by Sanofi.  She need not divine Sanofi's state of mind. To demonstrate this, please see the below chart recounting the evidence relied upon recounted by Sanofi in its memorandum and the reference to where it can be found:

| Sanofi's Stated Evidence of Concern | Dr. Plunkett's Source; Facts to Support "*some basis to believe*" | Admission or Recognition |
|---|---|---|
| April 2006 Sanofi labeling meeting; Jean-Philippe Aussel's testimony. (Sanofi's memorandum, Doc. 16169-1, p. 5) | Ex. 14, Exhibit 19 to Aussel Dep., 10/11/2018; Ex. 15, Aussel Dep., 10/11/2018, 39:22 – 40:4; 50:9 – 51:1;198:3-18. | Admission |
| Sanofi's sales representative's email. (Sanofi's memorandum, Doc. 16169-1, p. 5) | Ex. 16, Sanofi_04633925 (a document relating to a marketing person's visit with Dr. Sedlacek at Sanofi in August "2006:*With Dr. Sedlacek, he is bending, but not breaking He informed you that he is no longer using dose dense for he er+ patients, but is now using traditional AC followed by Taxol. There is no reason why this should have been his regimen of choice. The excuse of permanent alopecia is a concern of his but should not stop him from giving TAC an opportunity. He even mentioned that he had limited experience in that area. Keep your* | Recognition of Sedlacek's position. |

16

| | *sales calls consistent with him and don't back down. He likes the confrontation and I have seen you do some of your best work when pushed up against the wall with him. Don't let him off the hook").* | |
|---|---|---|
| 2007 Emanuel Palatinsky's testimony and document revisions. (Sanofi's memorandum, Doc. 16169-1, p. 6) | Ex. 17, Palatinsky Dep., 8/9/2018, 343:3 – 350:11; Ex. 18, Exhibit 19 to Palatinsky Dep., 8/9/2018. (Dr. Palatinsky was interpreting a document that he authored and conceded knowledge of PCIA as early as 2007). | Admission and recognition. |
| 2008 Kimberly Bassi testimony and custodial document/depo. Exhibit. (Sanofi's memorandum, Doc. 16169-1, p. 6) | Ex. 19, Bassi Dep., 8/10/2018, 301:19 – 303:3, 305:13 – 309:23; Ex.20, Exhibit 13 to Bassi Dep., 8/10/2018. (Ms. Bassi confirms document from her custodial file recounts disparity in ongoing alopecia in TAX316). | Recognition |
| Testimony of E. Palatinsky and S. Gupta. (Sanofi's memorandum, Doc. 16169-1, p. 6) | Ex. 17, Palatinsky Dep., 8/9/2018, 180:2-25; Ex. 21, Gupta Dep., 4/10/2018, 103:10 – 104:13. | Admissions |
| Dr. Nanae Hanai's statement in a 2015 Email. (Sanofi's memorandum, Doc. 16169-1, p. 6) | Ex. 22, Sanofi_02664951, p. 2 (N. Hangai writes "Therefore, I selected the cases: 1. If the verbatim contains 'permanent' or irreversible,' and 2. The verbatim does not contain 'permanent' or 'irreversible' but lasted more than 2 years (*since if set less, we know we have more cases*).") (emphasis added). | Admission |
| Testimony of Isabelle Richard-Cassin. (Sanofi's memorandum, Doc. 16169-1, p. 6) | Ex. 23, Richard-Cassin Dep., 5/4/2018, 124:11 – 129:7; Ex. 24, Exhibit 24 to Richard-Cassin Dep., 5/4/2018. (Witness confirmed that Sanofi is having a discussion in 2006 differentiating "short term hair loss" and "Alopecia (hair loss) that did not return at the end of study."). | Recognition |
| Testimony of Amy Freedman, M.D. (Sanofi's memorandum, Doc. 16169-1, p. 6) | Ex. 4, Freedman Dep., 10/26/2018, 195:20 – 196:2. ("Q. … [B]ased on you knowledge in 2006, Sanofi knew that Taxotere could cause irreversible alopecia in 2006, correct? A. Yes."). | Admission |

17

| | | |
|---|---|---|
| Testimony of Gerrit-Jan Nijveldt, and custodial document, Sanofi_02983328 (April 2011, Desk Audit Report). (Sanofi's memorandum, Doc. 16169-1, p. 6) | Ex. 8, Sanofi_02983328; and Ex. 25, Nijveldt Dep., 2/15/2018, 241:14 – 243:25. | Recognition |
| Testimony of Frances Polizzano; and November 2015 email. (Sanofi's memorandum, Doc. 16169-1, p. 7) | Ex. 11, Sanofi_05207927; Ex. 26, S. Thornton-Jones, M.D. Dep., 3/29/2018, 479:1 – 494:20. | Admission and recognition |
| March 2017 Label Review Committee meeting minutes. (Sanofi's memorandum, Doc. 16169-1, p. 7) | Ex. 13, Sanofi_05173852. (Documents state simple facts; a Labeling Review Committee meeting occurred, and minutes were kept; they document attendance; and a label change discussed with the only supporting documentation listed being a 7-year-old Clinical Study Report from 2010). | Admission and recognition |
| Testimony of Jean-Phillipe Aussel (Sanofi's memorandum, Doc. 16169-1, p. 8) | Ex. 15, Aussel Dep., 10/11/2018, 63:3 – 65:8, 79:2 – 82:7 | Admission and recognition |
| Testimony of Emanuel Palatinsky, M.D., (Sanofi's memorandum, Doc. 16169-1, p. 8) | Ex. 17, Palatinsky Dep., 8/9/2018, 348:18 – 350:11, Ex.18, Exhibit 19 to Palatinsky Dep., 8/9/2018. (Dr. Palatinsky was interpreting a document that he authored, and authored and conceded knowledge of PCIA as early as 2007). | Admission and recognition |
| Sanofi's Nurse Tear Sheet/Comprehensive Patient Care Kit, Sanofi's memorandum, Doc. 16169-1, p. 8 | Ex. 27, Sanofi_01038470; Sanofi's document at Sanofi_01038474 states "It [alopecia] is a common, yet temporary, side effect of some cancer medicines." Dr. Plunkett does not 'divine' this definition; this directly from Sanofi's document, so these are Sanofi's words." | Admission and recognition |
| Testimony of Ruth Avila, Sanofi's memorandum, Doc. 16169-1, p. 8 | Sanofi's former sales representative. | Admission |
| Testimony of Frances Polizzano, Sanofi's memorandum, Doc. 16169-1, p. 8 | Ex. 28, Polizzano Dep., 2/28/2018, 313:2 – 314:19; Ex. 29, Exhibit 19 to Polizzano Dep., 02/28/2018; Ex. 11, Sanofi_05207927. | Admission |

The above listed examples are the primary factual evidentiary items that Sanofi attempts

to characterize as improperly used by Dr. Plunkett in its "state of mind" arguments. As set forth

above, Dr. Plunkett simply cites this factual testimony as evidence relevant to the applicable regulations, i.e., "some basis to believe."  Even if such testimony were somehow ambiguous or required divine powers to interpret their meaning, which it does not, the evidence does not encompass the full range of support upon which Dr. Plunkett bases her opinions.  Her April 29, 2022, Supplemental Report (with Appendix A), and her December 29, 2022 Second Supplemental Report, properly identify all of her bases and opinions.  In other words, Sanofi's complaints about certain pieces of evidence are inaccurate, misleading, and ignores the totality of Dr. Plunkett's opinions, methodology and support therefor; all materials cited by Dr. Plunkett to form her opinions must be considered.

## **CONCLUSION**

For the reasons set forth above, and for the reasons set forth in the Court's prior denial of Sanofi's motion to exclude Dr. Plunkett's regulatory and labeling opinions (Doc. 13131), the Court should deny Sanofi's renewed Motion to Exclude Expert Testimony of Laura Plunkett, Ph.D.

Dated: August 1, 2023                                Respectfully submitted,


*/s/ Christopher L. Coffin*                           */s/ Karen B. Menzies*
Christopher L. Coffin (#27902)               Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.      GIBBS LAW GROUP LLP
1100 Poydras Street, Suite 2225             6701 Center Drive West, Suite 1400
New Orleans, Louisiana 70163                 Los Angeles, California 90045
Phone: (504) 355-0086                            Telephone: 510-350-9700
Fax: (504) 355-0089                                Facsimile: 510-350-9701
ccoffin@pbclawfirm.com                        kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*                      *Plaintiffs' Co-Lead Counsel*

*/s/M. Palmer Lambert*                            */s/Dawn M. Barrios*
M. Palmer Lambert (#33228)                  Dawn M. Barrios (#2821)
PENDLEY, BAUDIN & COFFIN, L.L.P.      BARRIOS, KINGSDORF & CASTEIX, LLP
1100 Poydras Street, Suite 2225             701 Poydras Street, Suite 3650

New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
plambert@pbclawfirm.com

*Plaintiffs' Co-Liaison Counsel*

New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

J. Kyle Bachus
Bachus & Schanker, LLC
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045 Phone:
510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

David F. Miceli
Milberg, Coleman, Bryson Phillips &
Grossman,
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2225
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Andre M. Mura
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
Phone: (510) 350-9717
Fax: (510) 350-9701
amm@classlawgroup.com

Alexander G. Dwyer
Kirkendall Dwyer LLP

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.

440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

John Gomez
The Gomez Law Firm, PLLC
655 West Broadway, Suite 1700
San Diego, CA 92101
Phone: (619) 237.3490
Fax: 619.237.3496.
john@thegomezfirm.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, FL 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904 15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@amalaw.com

2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Jessica Perez Reynolds
Pendley, Baudin & Coffin
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Phone: (225) 687-6396
Fax: (225) 687-6398
jperez@pbclawfirm.com

Darin L. Schanker
Bachus Schanker
101 W Colfax Ave, Suite 650
Denver, CO 80202
Phone: (303) 222-2222
Fax: (303) 893-9900
dls@coloradolaw.net

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Zachary Wool
Barrios Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
zwool@bkc-law.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 1, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

<u>*/s/ M. Palmer Lambert*</u>
M. PALMER LAMBERT