# Exhibit 12

Ellen T. Chang, Sc.D.

```
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF LOUISIANA
 3                         - - -
 4
 5   IN RE:  TAXOTERE (DOCETAXEL)
     PRODUCTS LIABILITY LITIGATION,
 6
 7                                        MDL No. 2740
                                          SECTION: "H"
 8   This Document Relates to:            Judge Milazzo
     ALL CASES,                           Mag. Judge North
 9   _____/
10                         - - -
11              Tuesday, May 4, 2021
12                         - - -
13        Remote Videotaped Stenographic Deposition
14   of ELLEN T. CHANG, Sc.D., Volume II, held with the
15   witness located in Menlo Park, California,
16   commencing at 10:04 a.m., before Gina V. Carbone, a
17   Registered Merit Reporter, California Certified
18   Realtime Reporter, California Certified Shorthand
19   Reporter State License No. 8249.
20                         - - -
21
22            GOLKOW LITIGATION SERVICES
            877.370.3377 ph | 971.591.5672 fax
23                   deps@golkow.com
24
25
```

```
 1    forward as a pharmacovigilance expert.
 2         Q.   Right.
 3              Every deposition you've given in this
 4    litigation, you've had the opportunity to review it
 5    and to make sure it accurately states what you want
 6    it to state, correct?
 7         A.   That's right.
 8         Q.   Okay.
 9         A.   I did notice, actually, when I was
10    reviewing -- I don't know if it matters -- there's
11    one part in, I think, the deposition where I failed
12    to make this correction before.  It should be
13    obvious.  I think Dr. -- I think Mr. Abramson asked
14    a question like, "Six is more than 30, correct?"  It
15    says in the transcript.  And I say, "Yes."
16              And he must have asked, "Six is more than
17    three."  But, anyway, so I didn't make that
18    correction.  Otherwise, yes, I have had a chance to
19    review and make corrections to my deposition
20    transcript.
21         Q.   I just wanted to confirm, you're not -- you
22    don't hold yourself out as an expert in
23    pharmacovigilance.  I think you confirmed that for
24    me.  You said there's some overlap, but you don't
25    hold yourself out as an expert, right?
```

```
 1        A.   Correct.
 2        Q.   You're not a regulatory expert, right?
 3        A.   I'm not a regulatory expert.  That's right.
 4   I have expertise in -- or I have familiarity with
 5   regulatory issues, but really not in this context.
 6   Not in the pharmaceutical context.
 7        Q.   You're not familiar with the regulatory
 8   requirements for label changes, right?
 9        A.   Correct.
10        Q.   Okay.  If I asked you to give me the Code
11   of Federal Regulations cites for what it takes that
12   sets out either the standard or the evidentiary
13   burden for making a label change, you wouldn't be --
14   you're not the expert to give me that, right?
15        A.   Correct.
16        Q.   Okay.  And have you talked to or read
17   Dr. Aerosmith's deposition to see if she either
18   agrees with us or agrees with plaintiffs' experts or
19   disagrees with them concerning what the evidentiary
20   burden is for a label change?
21        A.   I don't remember.  I've seen something from
22   Dr. Aerosmith.  I thought it was -- I think I've
23   only seen a report rather than deposition, but I
24   really -- listed in -- whatever I've seen from
25   Dr. Aerosmith is listed in my April 2020 report.
```

 1    record.  The time is approximately 11:18 a.m.

 2          (Recess taken.)

 3          THE VIDEOGRAPHER:  We are now going back on

 4    the record.  The time is approximately 11:32 a.m.

 5    BY MR. MICELI:

 6       Q.  All righty.  Ready to continue, Dr. Chang?

 7       A.  Yes.  Thank you.

 8       Q.  Thank you.

 9          All right.  I think I confirmed with you a

10    moment ago, and I want to make sure it was clearly

11    stated on the record, you're not a regulatory

12    expert, correct?

13       A.  That's right.  I'm not, again, putting

14    myself forward as a regulatory expert.  Again, I

15    have some familiarity and expertise in regulatory

16    issues, but I'm not testifying on that topic.

17       Q.  And you've never been qualified as an

18    expert in FDA regulations, have you?

19       A.  Correct.  I have not.

20       Q.  Okay.  And your supplemental report doesn't

21    identify any regulatory labeling opinions, correct?

22       A.  Correct.

23       Q.  Okay.  And you do not attempt to apply any

24    facts to a regulatory standard to reach a conclusion

25    about the appropriateness or inappropriateness of

1  Sanofi's Taxotere label, correct?

2       A.  That's correct.

3       Q.  And you don't attempt to directly address

4  the regulatory opinions of Dr. Ross or Dr. Plunkett

5  that were offered, correct?

6       A.  That's correct, except as they rely on

7  Dr. Madigan's analysis.

8       Q.  Well, I understand that you -- that you

9  offer some opinions about the reliance upon

10  Dr. Madigan's FAERS analysis, correct?

11       A.  That's right.

12       Q.  Have you been made aware of how the Court

13  has ruled on Sanofi's motion to exclude

14  Dr. Madigan's FAERS analysis?

15       A.  No, I haven't.

16           Your video is frozen.  I don't know if

17  that -- oh, it's okay now.

18       Q.  Okay.

19       A.  I'm not aware of any Court rulings on

20  Dr. Madigan's FAERS analysis.

21       Q.  So you're not familiar with or aware of any

22  ruling whatsoever about what the Court has said

23  concerning Sanofi's challenges to Dr. Madigan's

24  FAERS analysis, right?

25       A.  That's right.