UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO: ALL CASES | |

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION
TO EXCLUDE EXPERT TESTIMONY OF DR. LAURA PLUNKETT

In its Opposition to Sanofi's motion to exclude Dr. Plunkett, the PSC does not cite a single case permitting a regulatory expert to offer opinions based on the "methodology" Dr. Plunkett purports to employ in her two supplemental reports. The PSC also does not cite a single case permitting a regulatory expert to testify about a corporate defendant's state of mind or provide narrative testimony. And the PSC does not cite a single case permitting a regulatory expert to testify about foreign labeling changes under the guise of labeling "harmonization." The PSC's Opposition, in fact, cites no case law at all in support of any of its positions.

Instead, the crux of the PSC's argument is that the Court has already "blessed the methodology, relevancy, and reliability" of Dr. Plunkett's opinions.[1] This is not true. First, Dr. Plunkett did not disclose all of the bases for her opinions in *Kahn*. Second, Dr. Plunkett issued two new supplemental reports after *Kahn* that have never been subject to scrutiny by this Court. Finally, this Court then permitted Sanofi to challenge Dr. Plunkett's new supplemental reports under Rule 702.

Without case law or the Court's blessing to support its arguments, the PSC has not met its burden to establish the reliability of Dr. Plunkett's opinions. Dr. Plunkett's Opinions 1–3 must be

---

[1]   Rec. Doc. 16238 at 5 (Pls.' Opp. to Def. Sanofi's Mot. to Exclude Expert Test. of Dr. Laura Plunkett).

excluded because she has failed to apply a reliable methodology recognized by this Court (as with Dr. David Kessler)—*or any court at all*.  They are also irrelevant.  No matter how the PSC attempts to reframe Dr. Plunkett's reports, she readily concedes that they are premised on "What was known and when did [Sanofi] know it."[2]  But testimony on Sanofi's state of mind does not fit the facts of this case under the applicable regulatory standards, and Sanofi's knowledge, in any event, is a lay matter that the trier of fact can determine without expert testimony.

Indeed, Dr. Plunkett's reports (and often the PSC's Opposition defending these reports) reads like the PSC's closing arguments.  Such narratives might be permissible at closing, but not under the pretext of expert testimony.  Expert testimony must employ a reliable, generally accepted methodology about a scientific, technical, or specialized issue in the case.  Dr. Plunkett's opinions about what "Sanofi knew" are not the product of technical or scientific rigor, and, under Rule 702, she should not be permitted to pass through the gate solely to serve as a sounding board for the PSC's interpretation of cherry-picked evidence.

Dr. Plunkett's Opinion 4 on Sanofi's policy of "harmonizing" a drug's labeling with labeling used in other countries must also be excluded for a simple reason:  the PSC's Opposition does not address Sanofi's arguments.  Which makes sense.  This Court previously excluded evidence on what foreign regulatory agencies required of Sanofi, and Dr. Plunkett's "harmonization" opinion turns on the European Medicines Agency's directives to Sanofi.  The Court should not allow Dr. Plunkett to serve as a vehicle to introduce impermissible evidence.

The Court should exclude all four opinions.

---

[2]   Ex. A, Plunkett Dep. 197:14–200:7 (June 2, 2022) ("As a regulatory expert . . . the method you would use would be to look at what I laid out for you: What was known and when did they know it?").

I.     **Dr. Plunkett Did Not Apply a Reliable Methodology Under Rule 702.**

Sanofi does not dispute that Dr. Plunkett has identified the correct regulatory standard governing which adverse events should be included in the Adverse Reactions section of a drug's labeling. *See* 21 C.F.R. § 201.57(c)(7).[3] This, of course, was never Sanofi's argument. The problem is that Dr. Plunkett has not employed a reliable methodology that connects her selective identification of company documents and employee testimony to her broad conclusions under 21 C.F.R. § 201.57(c)(7). *See In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1349 n.34 (S.D. Fla. 2010) (excluding regulatory expert opinion where "[r]egulatory analysis—the critical link between the facts and the broad conclusions they are intended to support—[was] missing"); *see also Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (the "reliability analysis applies to *all aspects* of an expert's testimony," including "the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion[.]" (emphasis added)). Without this critical link, Dr. Plunkett's first three regulatory opinions must be excluded.

For one, it is undisputed that Dr. Plunkett did not apply the same methodology that Dr. Kessler applied. *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 2019 WL 4178670, at *3 (E.D. La. Sept. 3, 2019). Dr. Kessler utilized the seven factors identified in FDA Guidance to assess whether there was "some basis to believe there [was] a causal relationship between occurrence of an adverse event and the use of a drug."[4] Although the PSC previously argued (successfully) that Dr. Kessler's "methodology matched and utilized the methods called for by FDA,"[5] the PSC now argues that it was "unnecessary for Dr. Plunkett to analyze each and every piece of evidence according to the seven factors set out in the FDA's Guidance for Industry in order for her

---

[3]   Rec. Doc. 16238 at 5, 7, 8, 10, 12–13.

[4]   Ex. M, Kessler Rpt. ¶ 101.1 (Nov. 6, 2018).

[5]   Rec. Doc. 7467 at 8 (Pl.'s Opp. to Sanofi's Mot. to Exclude Expert Test. of David A. Kessler, M.D., J.D.).


methodology to be reliable."[6]  Here, Dr. Plunkett did not analyze *any* evidence cited in her supplemental reports under FDA Guidance.  By ignoring FDA Guidance—guidance the PSC previously called "the proper standard for making the [labeling determination] in this context"[7]—Dr. Plunkett's methodology cannot survive Rule 702.  *Tsao v. Ferring Pharms., Inc.*, 2018 WL 3649714, at *12–13 (S.D. Tex. Apr. 19, 2018) (excluding Dr. Plunkett's opinion that drug was "misbranded" and "adulterated" as unreliable where she ignored FDA guidance documents).[8]

To be sure, FDA Guidance does contemplate the use of "an alternative approach," but only "*if the approach satisfies the requirements of the applicable statutes and regulations.*"[9]  Dr. Plunkett does not explain how her alternative methodology satisfies 21 C.F.R. § 201.57(c)(7), nor is there any testimony from Dr. Plunkett that she discussed her alternative approach with FDA as the Guidance directs.[10]  And beyond the PSC's passing reference to the FDA Guidance (which does not support its position), the PSC identifies no case supporting Dr. Plunkett's novel "What was known and when did they know it?" methodology.  Without a sufficient regulatory approach, Dr. Plunkett cannot simply analyze the PSC's hand-selected documents and testimony and generically invoke federal regulations to reach her ultimate opinions.  *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d at 1347 (finding regulatory expert's methodology unreliable where expert

---

[6] Rec. Doc. 16238 at 7.

[7] Rec. Doc. 7467 at 10.

[8] The PSC also asserts that Sanofi has previously raised objections to Dr. Plunkett's methodology "similar" to those raised in moving to exclude Dr. Kessler.  Rec. Doc. 16238 at 6.  The PSC does not cite anything to support this assertion and for good reason: none exists.  This is Sanofi's first Rule 702 motion directed at Dr. Plunkett's two supplemental reports, which dramatically expand the scope and bases of her regulatory opinions.  *See* Rec. Doc. 16169-1 at 3–9 (Defs.' Mem. in Supp. of Mot. to Exclude Expert Test. of Dr. Laura Plunkett).

[9] Rec. Doc. 16238 at 6–7 (citing Ex. N at 1 (emphasis added)).

[10] *Id.* (citing Ex. N at 1).  Although Dr. Plunkett holds herself as a regulatory expert, she has never worked at FDA.  **Ex. P**, Plunkett Dep. 53:13–14 (Apr. 7, 2021) ("Q.  Okay.  And you've never worked at FDA?  A.  I have not.").  A former FDA employee, such as Dr. Kessler, would likely find FDA Guidance definitive because "employees may depart from guidance documents only with appropriate justification and supervisory concurrence."  21 C.F.R. § 10.115(d).

4

"generally [took] a collection of facts, impute[d] motive and knowledge, and [drew] unsupported conclusions unrelated to any regulatory expertise").

Lastly, it is telling that the PSC does not attempt to distinguish the cases identified by Sanofi excluding Dr. Plunkett for employing the exact same unreliable methodologies. *See Newman ex rel. Newman v. McNeil Consumer Healthcare*, 2013 WL 9936293, at *5 (N.D. Ill. Mar. 29, 2013); *see also Tsao*, 2018 WL 3649714, at *12–13. And while the PSC disclaims that Dr. Plunkett "is attempting to stand in [] witnesses' shoes,"[11] this misses the point. Dr. Plunkett has been excluded previously when she utilized a "suspect" methodology that relied "on self-serving portions of testimony without evaluating the context of the testimony or other relevant portions of the same testimony." *Newman*, 2013 WL 9936293, at *5. Dr. Plunkett's methodology is equally specious here given the numerous examples of Dr. Plunkett's one-sided analysis of Sanofi company documents and employee testimony.[12]

## II. Dr. Plunkett's Opinions About Sanofi's Knowledge Do Not Fit the Facts of the Case and Will Not Help the Trier of Fact.

In its motion, Sanofi identified three reasons why Dr. Plunkett's first three opinions were not relevant:

- Dr. Plunkett's opinions do not fit the facts of the case because Sanofi's knowledge is irrelevant under the applicable regulatory standards;

- Sanofi's knowledge is a lay matter that the trier of fact can determine without Dr. Plunkett's testimony; and

- Dr. Plunkett's one-sided, narrative recitation of company documents and fact testimony is unhelpful to the trier of fact.

---

[11] Rec. Doc. 16238 at 16.

[12] Rec. Doc. 16169-1 at 16–17.

On the first point, the PSC concedes that "[t]he relevant labeling regulations do not require Dr. Plunkett to address Sanofi's state of mind."[13] As such, Dr. Plunkett's testimony about "what Sanofi knew, could have known, or should have known"[14] does not fit the facts of this case because the applicable regulatory standard requires an assessment of whether there is "some basis to believe there is a causal relationship between the drug and the occurrence of the adverse event." 21 C.F.R. § 201.57(c)(7). Because Dr. Plunkett's testimony on Sanofi's state of mind and knowledge has no basis in the applicable regulatory standards, her testimony on these topics should be excluded.

On the third point, the PSC makes no argument, apparently conceding that Dr. Plunkett's anticipated read-and-response of the PSC's preferred company documents and witness testimony would be "no more than [what] counsel for plaintiff[s] will do in argument, i.e., propose a particular interpretation of [defendant]'s conduct." *In re Zofran (Ondansetron) Prods. Liab. Litig.*, 2019 WL 5685269, at *9 (D. Mass. Nov. 1, 2019) (citation omitted); *see also Kaufman v. Pfizer Pharms., Inc.*, 2011 WL 10501233, at *2 (S.D. Fla. Aug. 10, 2011).

The PSC devotes its focus to Sanofi's second point—that Sanofi's knowledge is a lay matter for the jury to decide without expert testimony. The PSC does not cite any contrary authority to this well-established proposition. *See, e.g.*, *Newman*, 2013 WL 9936293, at *5 ("Dr. Plunkett relies on the deposition testimony of McNeil employees and consultants to establish Defendants' alleged noncompliance. Such evidence will be available to the jury absent Dr. Plunkett's testimony."); *see also Kiker v. SmithKline Beecham Corp.*, 2016 WL 8189286, at *16 (S.D. Ohio Dec. 15, 2016) (excluding as speculative Dr. Plunkett's testimony about manufacturer's state of mind); *Roberto v. Boehringer Ingelheim Pharms., Inc.*, 2019 WL 1983299, at *1 (Conn.

---

[13] *See* Rec. Doc. 16238 at 14.

[14] Ex. B, Plunkett Suppl. Rpt. ¶ 94 (Apr. 29, 2022).

6

Super. Ct. Apr. 1, 2019) (similar). And the PSC's attempt to distinguish Fifth Circuit case law falls flat. *See Marlin v. Moody Nat. Bank, N.A.*, 248 F. App'x 534, 541 (5th Cir. 2007) (noting that the district court's disqualification of expert testimony in case "comport[ed] with the Fifth Circuit's stance that an expert's conclusory assertions regarding a defendant's state of mind are not helpful or admissible."); *see also Robinson v. Ethicon, Inc.*, 2021 WL 5762720, at *5 (S.D. Tex. Dec. 3, 2021) (citing *Marlin* and excluding expert testimony on defendant manufacturer's state of mind in products liability case).

Lacking authority, the PSC resorts to hyperbole to obscure the fact that Dr. Plunkett provides inadmissible state-of-mind testimony.[15] The PSC, however, cannot distance itself from Dr. Plunkett's testimony and reports, which are replete with impermissible speculation on Sanofi's state of mind.[16] Rather than repeating these examples here, Sanofi only notes further that the PSC's Opposition omits any acknowledgement of Dr. Plunkett's state-of-mind testimony:

| PSC's Opposition | Dr. Plunkett's Report |
|---|---|
| "For example, when Sanofi's Global Safety Officer, Emanuel Palatinsky states in an email 'permanent h.l. [hair loss] is sufficient once' in the docetaxel-specific warnings section of an informed consent form, there is absolutely no interpretation or clairvoyance needed – the words are Dr. Palatinsky's, describing a specific adverse reaction associated with use of Taxotere."[17] | "As mentioned above regarding Sanofi's actions in 2007, Sanofi's Global Safety Officer Dr. Emanuel Palatinsky reviewed consent language for a 2007 clinical trial involving Taxotere and indicated that 'permanent' hair loss was 'sufficient once' in the warnings specific to docetaxel. **Thus, Sanofi knew in 2007 that 'permanent' hair loss was a separate injury as compared to the initial drug-induced alopecia seen with Taxotere use.**"[18] |

---

[15] *See, e.g.*, Rec. Doc. 16238 at 10 ("In doing so [Sanofi] chooses to grossly misstate both facts and law[.]"), 13 ("Sanofi's argument that identifying and setting out evidence that is applied against the accepted labeling standard is somehow invading the province of the jury is absurd."), 13–14 ("This Court should not entertain Sanofi's attempts to conflate Dr. Plunkett's identification of *evidence* . . . with the incorrect notion, and gross mischaracterization, that Dr. Plunkett is somehow attempting to divine Sanofi's state of mine [sic].").

[16] Rec. Doc. 16169-1 at 5–9, 19–20.

[17] Rec. Doc. 16238 at 13.

[18] Ex. B, Plunkett Suppl. Rpt. ¶ 94(6) (Apr. 29, 2022) (emphasis added).

Although the PSC suggests that even if some evidence cited by Dr. Plunkett "were somehow ambiguous or required divine powers to interpret their meaning," this evidence "does not encompass the full range of support upon which Dr. Plunkett bases her opinions."[19] This position, however, cannot be squared with Dr. Plunkett's unreliable methodology, which simply asked "What was known and when did they know it?"[20] As a result, the Court should exclude Dr. Plunkett's first three opinions, not only because they lack a reliable methodology, but because they have no basis in the applicable regulatory standards, improperly speculate on Sanofi's state of mind, and serve only as a narrative summary of the PSC's closing argument.

### III. Dr. Plunkett's Labeling "Harmonization" Opinion Should Be Excluded.

The PSC does not address Sanofi's arguments on Dr. Plunkett's fourth opinion, so the Court should exclude her "harmonization" opinion for the reasons provided in Sanofi's motion.[21]

### CONCLUSION

In its motion, Sanofi provided the complete history of Dr. Plunkett's evolving testimony in this litigation. Although the PSC finds this history irrelevant, Sanofi does not. Before *Kahn*, Dr. Plunkett stepped into the role of regulatory expert and identified seven specific bases for her opinion. At *Kahn*, this Court nearly struck Dr. Plunkett's testimony in full based on her failure to disclose additional bases for her opinions. After *Kahn*, the PSC repurposed Dr. Plunkett's two supplemental reports to serve as a conduit for impermissible state-of-mind and narrative testimony based on a methodology that has no discernible connection to applicable FDA Guidance. Because the PSC has not met its burden to establish the reliability and relevance of Dr. Plunkett's Opinions 1–4, Sanofi requests that this Court exclude them in full.

---

[19] *See* Rec. Doc. 16238 at 19.

[20] Ex. A, Plunkett Dep. 197:14–200:7 (June 2, 2022).

[21] Rec. Doc. 16169-1 at 23–24.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART MOORE & DANIELS LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Jon Strongman
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
jstrongman@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2023, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*