UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION: H |
| THIS DOCUMENT RELATES TO: | HON. JANE TRICHE MILAZZO |
| **Theatrice Thompson** **Case No. 2:18-cv-09371** | |

**PLAINTIFF THEATRICE THOMPSON'S F.R.C.P. 59(e) & 60(b)
MOTION FOR RECONSIDERATION OF THE
COURT'S DISMISSAL ORDER (Doc. 16327)**

Pursuant to Rule 59(e) and Rule 60(b) of the Federal Rules of Civil Procedure, Plaintiff Theatrice Thompson (MDL No. 2:18-cv-09371) (hereinafter "Plaintiff") represented by attorney Mark R. Niemeyer, respectfully asks the Court to reconsider its ruling in the Order dated August 24, 2023 (Doc. 16337). Plaintiff further respectfully requests that the Court reconsider its effective denial of Plaintiff's Motion for Leave to Extend the Time for Plaintiff to Comply with CMO 35 (Doc. 14848). Plaintiff urges reconsideration to prevent manifest injustice and to account for newly discovered evidence.

**INTRODUCTION**

Plaintiff requests that the Court reconsider her ruling in light of what Plaintiff submits would be manifest injustice under the specific circumstances of her case as well as the more general circumstances of the MDL. At the outset, Plaintiff states that the Court's ruling dismissing her case is likely a death knell for her case, given that refiling would be subject to a statute of limitations challenge. Plaintiff asks the Court to reconsider her ruling in light of its harsh repercussions and to excuse counsel's mistake in an exercise of the Court's discretion and equity.

**BACKGROUND**

In June of 2017, this Court entered Pretrial Order No. 40A – Streamlined Service on Hospira Inc. (hereinafter "Hospira") (Doc. No. 509) to govern service in this matter. PTO 40A opens by stating that Hospira "agrees to waive formal service of process." PTO 40A provides for email service on Hospira which triggers an automatic email response and requires no other action or duties on behalf of Hospira (Hospira is not required to file an answer to the complaint or any other filing). As such, a Plaintiff is not placed on notice of any challenge to proper service in a given case. At no time prior to the current motion did Hospira share with Plaintiff Thompson that proper service was lacking.

Whether or not there has been technical PTO 40A service, cases (including Plaintiff's) then proceeded with discovery in that plaintiffs file Plaintiff Fact Sheets and are then subject to deficiency challenges and, possibly, show cause hearings. As to Plaintiff Thompson, in 2018, she filed her PFS, submitted to Defendant Hospira via MDL Centrality. (*See* Plaintiff's Response to Hospira's Motion to Dismiss, Doc. No. 14848). The PFS included extensive personal information and medical records. Defendant Hospira received notice of the PFS, reviewed the PFS, records and photographs. *Id*. Again, at no time during the discovery review did Hospira raise the issue of service of process; Plaintiff Thompson's case proceeded in the same fashion as all others, and Hospira was free to advantage of this Court's pretrial orders to challenge Plaintiff's discovery submissions.

In July 2022, the Court entered CMO 35 (Doc. No. 14456) directing plaintiffs to ensure service of process had been effected. At no time did Hospira notify Plaintiff Thompson of its position that there was no proper service. CMO 35 did not list cases in which Defendant alleged a lack of proper service. As such, Plaintiff Thompson was not given specific notice of a challenge

2

to service at any point prior to September 27, 2022, when Hospira filed their motion to dismiss.

When CMO 35 was issued, counsel's paralegal checked each of counsel's plaintiffs' files for service emails. Counsel's paralegal saw emails in Plaintiff's folder and inadvertently and mistakenly believed the emails included service on Hospira. As it turns out, the service emails were directed to the incorrect email taxoterecomplaints@shb.com, and a more thorough examination would have revealed that. Counsel admits his firm's mistake. However, counsel submits that the mistaken conduct did not have a contumacious nature or motive.

Plaintiff submits that there is an unfairness in, on the one hand, Hospira discovering the facts of Plaintiff's case, while all along believing service was lacking, but choosing not to inform Plaintiff as such. Hospira knows and has known (since, at least, 2018) not only of the existence of Plaintiff's claims but also the factual and medical background and support for those claims.

Further, Plaintiff would point out that Hospira has understood that Plaintiff's case has been pending and has reported upon its existence to the Court during status conferences and as part of the Joint Reports submitted. For example, on May 26, 2021, Joint Report No. 22 was submitted, stating:

> As of May 21, 2021, Plaintiffs have served 12,406 PFSs, and 922 are in progress. Based on the PFSs received as of May 21, 2021, they allege product ID among Defendants as follows: 5,151– Hospira before March 8, 2011; 1,606 – Hospira after March 8, 2011; 77 – Hospira (unknown treatment date); 1,749– Hospira; 607 – Hospira; 443 – Accord; 5 – Actavis; 24 – McKesson; 23 – Sagent; 9 – Sun; 5 – Pfizer; 1,046 – Unknown; 95 – Blank; 6– Other (Dr. Reddy's, Eagle, Teva); 255 – Defendant(s) + Unknown; 1,258 – multiple defendants + CMO 12 Upload[1]; 47 – multiple defendants + No CMO 12 Upload

The Joint Reports memorialize Defendants' knowledge of the number of Plaintiffs who identify each of them as a Defendant in their PFS. Prior to, and since, that report, Defendant had received notice of, had been aware of, and had been actively litigating, Plaintiff Thompson's case.

**I.      Legal Standard for Reconsideration**

Courts in the Eastern District of Louisiana have granted motions for reconsideration under the Rule 59(e) standard when one or more of the following four factors is present:

(1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;
(2) the movant presents newly discovered or previously unavailable evidence;
(3) the motion is necessary in order to prevent manifest injustice; or
(4) the motion is justified by an intervening change in controlling law

*Harang v. Schwartz*, CIVIL ACTION No. 13-58 (E.D. La. June 20, 2014) citing *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at *4 (E.D. La. Apr. 5, 2010).

## II.   Manifest Injustice

Dismissal based upon a technical defect in service, while Defendant possesses notice and knowledge of Plaintiff's case specifics and has actively engaged in case-specific discovery is unduly harsh and results in manifest injustice. The injustice is amplified in the MDL setting which is different from the setting of individual, stand-alone cases. MDLs operate with their own sets of rules. The efficiencies of many of these rules, including streamlined discovery and streamlined discovery challenges operate to the benefit of all parties. The MDL setting should be considered as the Court takes action, especially action with devastating ramifications. When exploring this very issue, another MDL Court (MDL No. 2327 IN RE ETHICON, INC. Pelvic Repair System Products Liability Litigation) conducted the analysis:

> The defendants' assertion that the court does not have personal jurisdiction over them [based upon failure to timely serve] is inconsistent with their behavior thus far. While the defendants had not previously filed any motions or appeared before the court, their interaction with the plaintiffs clearly led the plaintiffs to believe that service of process was adequate. By acknowledging receipt of the PPF, demanding additional information, and threatening to pursue remedy in court if the plaintiff did not comply, the defendants acknowledged the court's jurisdiction over this case. Particularly considering the sensitive nature of the information contained in the PPF, the only reasonable conclusion is that the defendants manifested their intention to defend the suit and have waived the defense of untimely service of process. It would indeed be an absurd result, likely placing the defendants and their

counsel in an ethical hole, if this court allowed the defendants to request the plaintiff provide sensitive medical information and encourage the plaintiff to expend resources pursuing litigation, only for the defendants to assert, years later, that this court lacks jurisdiction. When the defendants indicate such a clear willingness to engage in litigation, they have waived any defense for failure to timely serve.

In re: Ethicon, Inc., No. 2327, 2016 WL 6436566, at *2 (S.D.W. Va. Oct. 27, 2016).

The Ethicon court based its analysis, in part, on the below:

Other courts also consider the defense of untimely service waived when the conduct of a defendant leads a plaintiff to believe that service is adequate. *See Blachy v. Butcher*, 221 F.3d 896, 910-11 (6th Cir. 2000); *Trustees of Cent. Laborers' Welfare Fund v. Lowery*, 924 F.2d 731, 732-733 (7th Cir. 1991); and *Rockwell Med., Inc. v. Yocum*, No. 13-10480, 2013 WL 4760971, at *4 (E.D. Michigan 2013). The Fifth Circuit adopted the rule that the defendants do not necessarily need to file an answer to waive personal jurisdiction, rather taking "some step or proceeding in the cause beneficial to himself or detrimental to the plaintiff other than one contesting only jurisdiction" can serve as an appearance and waiver of the requirement for personal jurisdiction. *Broadcast Music, Inc. v. M.T.S. Enterprises, Inc.*, 811 F.2d 278, 281 (5th Cir. 1987) (quoting *Cactus Pipe & Supply v. M/V MONTMARTRE*, 756 F.2d 1103, 1108 (5th Cir. 1985)). More specifically, the Second Circuit found that the defendant waived the defense of defect service of process by attending a conference with a magistrate and scheduling discovery and motion practice without mentioning the defect of service, which could have been cured within the limitations period had the defendant complained. *Datskow v. Teledyn, Inc., Cont'l Products Div.*, 899 F.2d 1298, 1303 (2d Cir. 1990). Thus, many circuits agree that defendants can waive objections to personal jurisdiction by indicating a willingness to defend the suit or taking other action that would lead the plaintiff to believe service was adequate.

In re: Ethicon, Inc., No. 2327, 2016 WL 6436566, at *2 (S.D.W. Va. Oct. 27, 2016).

Further, in the Fifth Circuit case cited above by the *Ethicon* court (a case involving an attorney's appearance in a case, followed by assertions of lack of personal jurisdiction based upon lack of service of process), the Fifth Circuit went on to say:

The Federal Rules do not in any way suggest that a defendant may halfway appear in a case, giving plaintiff and the court the impression that he has been served, and, at the appropriate time, pull failure of service out of the hat like a rabbit in order to escape default judgment. To countenance this train of events would elevate formality over substance and would lead plaintiffs to waste time, money, and judicial resources pursuing a cause of action. Indeed, that waste would result here if we void the district court's judgment for lack of service of process.

5

<u>Broad. Music, Inc. v. M.T.S. Enterprises, Inc.</u>, 811 F.2d 278, 281 (5th Cir. 1987).

As such, Hospira's actions in receiving and reviewing extensive, case-specific and personal discovery effectively waived objection to defective service. At the least, because of those circumstances and the lack of prejudice to Hospira, Hospira should not be permitted to, now, utilize lack of service as a sword, and the Court should reconsider its decision to terminate Plaintiff's case, and excuse counsel's mistake. To do otherwise would not be just under the circumstances.

**III.     Newly Discovered Independent Facts & Reasons Not Considered by the Court.**

Plaintiff's counsel includes herein further discovered details of the circumstances related to service in this matter.

1. On July 22, 2022, after the related status conference, counsel requested his assistant, Dawn Schneithorst, to confirm service for all Taxotere clients conforms to the service orders. The following week, it was relayed that the files were checked and service of all defendants in the cases was completed. (*See* Affidavit of Dawn Schneithorst, attached as Exhibit 1 hereto.)

2. Ms. Schneithorst has worked with counsel for more than a decade on MDL cases. *Id*. She has a history of doing excellent work.

3. One of Ms. Schneithorst's responsibilities is serving pleadings in accordance with court rules. This is standard operating procedure in counsel's office. Ms. Schneithorst took over responsibility for Taxotere cases in mid-2021. Prior to that time, a different paralegal (no longer with the firm) maintained that responsibility. *Id*.

4. When Ms. Schneithorst reviewed Ms. Thompson's file, she noted saved emails and presumed them to be correct service emails.

5. On October 3, 2022, Hospira filed a Motion to Dismiss for Failure to Comply with Case Management Order 35, listing Plaintiff Theatrice Thompson.

6. At that time, it was discovered that service of process mistakenly had not been effectuated on Hospira; the saved emails were sent to the incorrect email address (the service email address for Sanofi). Promptly thereafter, Plaintiff's counsel corrected the clerical error by properly serving Hospira, Inc. via e-mail at hospirataxoteremdl@wolterskluwer.com on October 11, 2022, and filed a Response to Defendant Hospira's Motion to Dismiss and Motion for Leave to Extend the Time to Comply with CMO 35. *Id.*

7. Neither Ms. Schneithorst's conduct, nor the conduct of the prior paralegal or counsel was, in any way, willful, intentional or contumacious. There was no intent to subvert this Court's orders. A, very regrettable, mistake was made for which counsel respectfully requests to be excused.

In a remarkably similar case, *Razvi v. Dall. Fort Worth Int'l Airport*, No. 21-10016, 2022 WL 4298141 (5th Cir. Sep. 16, 2022), an attorney's assistant's mistake in performing a task delegated was held excusable - "lawyers often delegate tasks to paralegals and secretaries which 'may well ensure greater accuracy in meeting deadlines.'" See also, *Pincay v. Andrews*, 389 F.3d 853, 856 (9th Cir. 2004), *cited with approval in Razvi* ("[T]he delegation of repetitive legal tasks to paralegals has become a necessary fixture.").

As further discussed below, in this instant case, counsel's reliance on his assistant's investigating and reporting back prior to responding to Hospira's Motion, like counsel's reasonable reliance on his assistant correctly checking the files to confirm service and reporting to counsel that service was accomplished, meets the test for excusable neglect. As such, the evidence here also meets the second *Harang* prong addressing newly discovered evidence as well as the third prong of avoidance of manifest injustice.

The United States Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507

U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) examined the meaning of "excusable neglect" in the context of late filings. The *Pioneer* analysis has been adopted and applied by the 5th Circuit in *Razvi*, *supra*, as well as in *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 820 (5th Cir. 2007), *Midwest Employers Cas. Co. v. Williams*, 161 F.3d 877, 879 (5th Cir. 1998), *United States v. Moreno*, No. 3:17-cr-468-D (10) (N.D. Tex. Nov. 30, 2018). The analysis should guide the Court here.

> As the *Pioneer* court explained:
>
> [B]y empowering the courts to accept late filings "where the failure to act was the result of excusable neglect," Rule 9006(b)(1), Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

*Pioneer* at 113 S.Ct. 1489 at 1494-95. *See also Razvi* at 4.

> The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include ... the danger of prejudice ..., the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id., Razvi* at 5*, Stotter* at 820*, Williams* at 879*, Moreno*, supra.

*Razvi* is on point with the instant matter. The *Razvi* court applied the requisite *Pioneer* analysis for "excusable neglect" resulting from an assistant's mistake. The *Razvi* court reversed the trial court's dismissal without prejudice after the statute of limitations had run calling the result "overkill." *Id*. at 16. The court concluded that the "attorney's omission was [not] due to a misunderstanding of the law, ignorance of local rules, gross carelessness, or a deliberate choice. Counsel did not deliberately act in reliance on an erroneous understanding of the law or rules, rather she mistakenly missed a deadline because of a calendaring error. We also cannot say that this error was 'gross carelessness' as lawyers often delegate tasks to paralegals and secretaries

which 'may well ensure greater accuracy in meeting deadlines.'" *Id*. at 10. *See also*, *Pincay*, 389 F.3d at 856.

After considering the *Pioneer* factors, the Fifth Circuit held the assistant's mistake was excusable neglect because: "there was no danger of unfair prejudice, the length of delay caused by his filing error did not adversely affect the proceedings, and while the reason for the delay, a calendaring error, was well within the reasonable control of *Razvi*'s counsel, it did not appear to be in bad faith. Moreover, there has been no trial on the merits in this case and the dismissal by the district court precludes such consideration. Accordingly, we reverse the district court's denial of *Razvi*'s motion for relief from judgment." *Razvi* at 2.

Just as in *Razvi*, the newly discovered facts here establish excusable neglect when applied to the *Pioneer* factors.

First, there is no danger here of unfair prejudice to Hospira. Counsel has fully complied with Court Orders regarding the exchange/uploading of records, photographs, fact sheets, and other information. As such, Hospira has had notice of Plaintiff Thompson's case, and has reviewed the discovery she has submitted, presumably concluding that discovery to be complete and not deficient. It, then, stretches the bounds of fairness to now dismiss Plaintiff Thompson's case based upon provisions whose sole purpose is to provide notice. Notice has been provided, received, and acted upon.

Second, the length of the delay will not affect the proceedings here. Hospira was served by email as soon as counsel recognized that there was an error. Hospira can point to no prejudice related to the delay in technical service.

Third, the mistakes were not made in bad faith. The mistake resulted from counsel and assistant's errors, despite having office policies in place to accomplish service, and does not

9

amount to contumacious conduct.

Fourth, there has been no resolution on the merits of the case, and the court's dismissal precludes such consideration.

Fifth, the Court's Order as to Sanofi defendants entered on August 22, 2023 (Doc. 16327), Section B, paragraph 1, states:

> Plaintiffs Karen Stone and Flora Smith argue that they technically, though deficiently, served Sanofi on January 18, 2019, and December 4, 2019, respectively. Although the emails correctly attached the complaints and summonses of Plaintiffs Stone and Smith, the subject lines erroneously reflected the names of other MDL Plaintiffs, thereby rendering service deficient.[36] Similarly, Plaintiff Anne Marie Past maintains that she served Sanofi on October 26, 2018, but Sanofi contends that she attached a complaint for a different MDL Plaintiff in her service email, rendering service ineffective.[37] Because Plaintiffs Stone, Smith, and Past made diligent attempts to timely serve Sanofi, the Court finds that there is no clear record of delay. Nor does the record reveal contumacious conduct; under the mistaken belief that service had been perfected, these Plaintiffs did not willfully disregard CMO 35's directive. Accordingly, the Court exercises its discretion to extend the time for Plaintiffs Stone, Smith, and Past to properly serve Sanofi.

In sum, the conduct here is a similar type of conduct that the Fifth Circuit found excusable when applying the *Pioneer* factors and emphasizing, as required by *Pioneer,* "that the determination is "'an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Razvi* at 4 quoting *Pioneer*, 507 U.S. at 395. In light of the above, it is respectfully requested that the Court reconsider Plaintiff's dismissal where the Court granted the Defendant's Motion without all of the specific facts underlying Thompson's counsel's failure to timely serve. It is respectfully submitted that recognition and consideration of the individual facts of Plaintiff's case as addressed herein is fundamentally required by due process and to avoid manifest injustice.

### IV.  Conclusion

Pursuant to Rule 59 and Rule 60, F.R.C.P., and Fifth Circuit and related law, Plaintiff

10

requests that the Court find the mistakes involved to be excusable. The case-specific facts establish that Theatrice Thompson's counsel's actual conduct was not contumacious. Dismissal of Plaintiff's case will result in a manifest injustice as it is a final adverse adjudication depriving the Plaintiff of her day in court.

For the above newly discovered and independent reasons, and in the interest of justice, it is respectfully requested that the Court reconsider the Order dismissing Ms. Thompson's case and allow her case to proceed. Doing so is within the Court's discretion to "strike the proper balance between the need for finality and the need to render just decisions on the basis of all the facts." *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995).

Dated:  September 21, 2023              Respectfully Submitted,

**NIEMEYER, GREBEL & KRUSE, LLC**

*/s/ Mark R. Niemeyer*
Mark R. Niemeyer     #42437
Michael S. Kruse     #57818
211 N. Broadway, Suite 2950
St. Louis, MO 63102
314-241-1919 phone
314-665-3017 fax
niemeyer@ngklawfirm.com
kruse@ngklawfirm.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2023, I electronically filed the foregoing document with the Clerk of Court using the ECF system, which sent notification of such filing to all counsel

of record.

                                                */s/ Mark R. Niemeyer*