**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN   RE:   TAXOTERE   (DOCETAXEL)     MDL NO. 2740
PRODUCTS LIABILITY LITIGATION          SECTION:  " H" (5)
                                       HON. JANE TRICHE MILAZZO

THIS DOCUMENT RELATES TO:

*Sharon Cockrum v. Sanofi S.A., et al.*
**Case No. 2:16-cv-17830**

### PLAINTIFF SHARON COCKRUM'S MEMORANDUM IN SUPPORT OF HER F.R.C.P 60(b) MOTION FOR RECONSIDERATION OF THE COURT'S DISMISSAL ORDER (DOC. 16341)

Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, Sharon Cockrum (MDL No. 2:16-cv-17830) (hereinafter "Plaintiff"), by and through counsel, respectfully asks the Court to reconsider its ruling in the Order dated August 30, 2023 (Doc. 25). Plaintiff further respectfully requests that the Court reconsider its effective denial of Plaintiff's Response to Sandoz's Motion to Dismiss Plaintiff's Claims for Failure to Comply with Case Management Order No. 35 and FRCP 4 (Doc. 14913). Plaintiff urges reconsideration to prevent manifest injustice.

### INTRODUCTION

Plaintiff requests that the Court reconsider her ruling in light of what Plaintiff submits would be manifest injustice under the specific circumstances of her case as well as the more general circumstances of the MDL. At the outset, Plaintiff states that the Court's ruling dismissing her case is effectively a dismissal with prejudice, given that refiling would be subject to a statute of limitations challenge. Plaintiff asks the Court to reconsider her ruling in light of its

1

harsh repercussions and to excuse counsel's technical mistake in an exercise of the Court's discretion and equity.

## I.   BACKGROUND

In March of 2017, this Court entered Pretrial Order No. 30 – Streamlined Service on Defendant Sandoz (Doc. No. 304) to govern service in this matter. PTO 30 opens by stating that Sandoz "agrees to waive formal service of process." PTO 30 provides for email service on Sandoz, which triggers an automatic email response and requires no other action or duties on behalf of Sandoz (Sandoz is not required to file an answer to the complaint or any other filing). As such, a Plaintiff is not placed on notice of any challenge to proper service in a given case. At no time prior to Sandoz's Motion to Dismiss did Sandoz give notice to Plaintiff Cockrum that proper service was lacking.

### A.   Case History and Inception

On December 28, 2016, Plaintiff filed her Complaint. She filed her Amended Short Form Complaint, including Defendant Sandoz as a party, on May 31, 2017. On May 26, 2017, Plaintiff submitted her original PFS via MDL Centrality. Plaintiff subsequently amended her PFS on March 26, 2018 and November 23, 2018, both being submitted on MDL Centrality.

Plaintiff filed a Request of Summons Issued to Sandoz on October 4, 2017 and Summons were issued as to Sandoz on October 17, 2017. Plaintiff utilized the process described in PTO 30 to email service of her Amended Complaint on October 18, 2017. Plaintiff successfully effectuated service of her complaint to Defendants Healthcare, Actavis LLC fka Actavis Inc., Actavis Pharma Inc., Hospira Inc., Hospira Worldwide LLC, Pfizer, Sun Pharmaceutical Inc. Plaintiff attempted

service on Defendant Sandoz, Inc. on the same day via email to Taxotere-complaints@gtlaw.com. *See* Ex. A.

B. **Sandoz Litigation Activity**

Defendant Sandoz Inc. has actively defended this suit and has been otherwise remained involved in and received notice of litigation activity throughout the case's pendency. Plaintiff submitted product identification for Sandoz on March 26, 2018. Plaintiff additionally filed a partial dismissal on September 10, 2018, dismissing all named Defendants except Defendant Sandoz. Defendant Sandoz received notice of this partial dismissal. Defendant Sandoz also participated in discovery practice. On March 18, 2018, Defendant Sandoz, as well as all other named Defendants in Plaintiff's original complaint, filed a Motion to Dismiss Pursuant to CMO No. 12. See Attached as Ex. B. Among the Plaintiffs listed in the motion was Plaintiff Sharon Cockrum at line 114. *Id.*

Finally, Sandoz reported upon existence of Plaintiff's case to the Court in Joint Reports and during status conferences. The Joint Reports memorialize Defendants' knowledge of the number of Plaintiffs who identify each of them as a Defendant in their PFS. Prior to, and since Plaintiff's PFS amendment on March 26, 2018, Defendant received notice of, had been aware of, and had been actively litigating, Plaintiff Cockrum's case.

C. **Technologically Flawed Attempts at Service and Discovery of Inadvertent Error**

Plaintiff held the good faith belief that she effectuated service of her complaint on Defendant Sandoz in accordance with PTO 30 on October 18, 2017, the day she perfected service via email on all other named Defendants. Counsel for Plaintiff, through office personnel, attempted service to Defendant Sandoz twice on October 18th, via email. Unfortunately, due to an oversight, there was a technical error as the email used was taxotere-complaints@gtlaw.com instead of

sandoz-taxotere-complaints@gtlaw.com. Pursuant to these emails, Plaintiff's Counsel believed service was perfected upon email transmittal. The listed individual perfecting service in 2017 departed the undersigned firm in 2019. Despite her job title as associate, her responsibilities and experience were that of a paralegal.

In the Summer of 2022, in an effort to comply with the Court's CMO 35 deadline, Plaintiff's Counsel conducted review of their case files and located the individual service transmittal emails from October 18, 2017 in Plaintiff's file. Among these emails was the first email to taxotere-complaints@gtlaw.com.  This transmittal email was categorized identically to all other successfully served transmittal emails. Unfortunately, the email address discrepancy was not recognized at that time and, as a result, Counsel for Plaintiff believed in good faith that Defendant Sandoz, Inc. had been successfully served via email on October 18, 2017. Therefore, Plaintiff's Counsel did not attempt additional service pursuant to CMO 35 following their review.

While preparing her Response to Sandoz's Motion to Dismiss for Failure to Comply with Case Management Order No. 35 and FRCP 4 on October 11, 2022, Plaintiff's Counsel requested IT services provide access to the previously closed email account of the departed paralegal/attorney in order to obtain the service confirmation email to attach to the response along with the transmittal email located in Plaintiff's file. It was only then that Counsel discovered the technical email address error for the first time. Plaintiff's mistake was entirely inadvertent and was in no way intended to circumvent the Court's orders in PTO 30 and CMO 35. Within hours of discovering this inadvertent mistake, Plaintiff's counsel transmitted the complaint and summons via email and requested to confer with Defendant Sandoz  in an effort to cure this mistake. *See* Ex. C.  Plaintiff did not receive a response from Defendant Sandoz.

## III. ARGUMENT

Contrary to Defendant's baseless assertions, Plaintiff's mistake was not a conscious, free, calculated, or deliberate decision to ignore or circumvent the CMO, but an inadvertent mistake. Diligent counsel did undertake an examination of their case files for service issues promptly after CMO 35 was issued, but Plaintiff's file indicated that service was successful. It was only upon IT services reviving a former inbox that there was awareness of two unsuccessful attempts at service. Immediately upon discovery of this error, Plaintiff's counsel transmitted the complaint and summons and explained via email the reason for this mistake. In addition, Plaintiff requested to meet and confer in an effort to cure this error, another diligent effort to comply with CMO 35.

Prior to discovery on October 11th, Plaintiff had a good faith belief that proper service had been effectuated on Defendant Sandoz. Plaintiff made diligent efforts to confirm compliance with CMO 35, conduct timely service, and there is no clear record of delay. In fact, discovery practice by both Plaintiff and Defendant Sandoz shows the basis of that good faith belief that service had been effectuated and that the failure to serve and comply with CMO 35 was inadvertent, mistaken and excusable. Moreover, if Plaintiff is not granted relief from this Court's dismissal, manifest injustice would result considering that her failure to successfully effectuate service is due to the conduct of her counsel and not her own conduct and that this would effectively dismiss her claims with prejudice.

### A. Legal Standard for Reconsideration

Fed. R. Civ. P. 60(b) provides the basis for the Court to relieve Plaintiff from its prior ruling. Fed.R. Civ. P. 60(b) establishes that the court may relieve a party . . . from a final judgment . . . for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to

move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief. *Rivera v. Garza*, 2022 U.S. App. LEXIS 19469, at *2-3 (5th Cir. July 14, 2022) (citing *Yesh Music v. Lakewood Church*, 727 F.3d 356, 363 (5th Cir. 2013)).

### B. Under the United States Supreme Court's Analysis, Plaintiff's Conduct Constitutes Excusable Neglect.

At most, Plaintiff's mistake constitutes excusable neglect that resulted from technical error rather than carelessness. As described above, Plaintiff genuinely believed she effected service of her complaint on Defendant Sandoz in accordance with CMO 30 on October 18, 2017, as per the requirements of PTO 30. Plaintiff's Counsel's diligent review of their case file did not reveal any unsuccessful service attempts. It was only in preparation for the Plaintiff's Response to Sandoz's Motion to Dismiss Plaintiff's Claims for Failure to Comply with Case Management Order No. 35 and FRCP 4 that it was discovered, through IT support involvement, that the electronic service had returned undelivered.

Plaintiff's inadvertent failure to perfect service was unquestionably the result of an inadvertent and excusable mistake, with absolutely no intent to circumvent this Court's orders. The United States Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 388, 113 S. Ct. 1489, 123 L.Ed.2d 74 (1993) examined the meaning of "excusable neglect" in the context of late filings. The *Pioneer* analysis has been adopted and applied by the 5th Circuit in *Razvi v. Dall. Fort Worth Int'l Airport*, 2022 U.S. App. LEXIS 26058 (5th Cir. Sep. 16, 2022), as well as in *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 820 (5th Cir. 2007), *Midwest*

6

*Employers Cas. Co. v. Williams*, 161 F.3d 877, 879 (5th Cir. 1998), *United States v. Moreno*, No.

3:17-cr-468-D (10) (N.D. Tex. Nov. 30, 2018). The analysis should guide the Court here.

As the *Pioneer* court explained:

> [B]y empowering the courts to accept late filings "where the failure
> to act was the result of excusable neglect," Rule 9006(b)(1),
> Congress plainly contemplated that the courts would be permitted,
> where appropriate, to accept late filings caused by inadvertence,
> mistake, or carelessness, as well as by intervening circumstances
> beyond the party's control.

*Pioneer* at 388. *See also Razvi* at 4.

> The determination of whether neglect is excusable "is at bottom an
> equitable one, taking account of all relevant circumstances
> surrounding the party's omission. These include ... the danger of
> prejudice ..., the length of the delay and its potential impact on
> judicial proceedings, the reason for the delay, including whether it
> was within the reasonable control of the movant, and whether the
> movant acted in good faith.

*Id. See also Stotter at 820*, *Williams* at 881, *Moreno* at 5.

*Razvi* is on point with the instant matter. In *Razvi v. Dall. Fort Worth Int'l Airport*, No. 21-

10016, 2022 WL 4298141 (5th Cir. Step. 16, 2022), an attorney's assistant's mistake in performing

a task was held excusable, as "lawyers often delegate tasks to paralegals and secretaries which

'may ensure greater accuracy in meeting deadlines." See also, *Pincay v. Andrews*, 389 F.3d 853,

856 (9th Cir. 2004), *cited with approval in Razvi* ("[T]he delegation of repetitive legal tasks to

paralegals has become a necessary fixture.").

The *Razvi* court applied the requisite *Pioneer* analysis for "excusable neglect" resulting

from an assistant's mistake. The *Razvi* court reversed the trial court's dismissal without prejudice

after the statute of limitations had run calling the result "overkill." *Id.* at 17. The court concluded

that the "attorney's omission was [not] due to a misunderstanding of the law, ignorance of local

rules, gross carelessness, or a deliberate choice. Counsel did not deliberately act in reliance on an erroneous understanding of the law or rules, rather she mistakenly missed a deadline because of a calendaring error. *Id*. at 10. We also cannot say that this error was 'gross carelessness' as lawyers often delegate tasks to paralegals and secretaries which 'may well ensure greater accuracy in meeting deadlines.'" *Id*. at 10. See also, *Pincay*, 389 F.3d at 856. Similarly, Plaintiff's error in this case resulted from reliance upon delegation to staff and not "gross carelessness," as technical issues involving electronic service are not uncommon.

After considering the *Pioneer* factors, the Fifth Circuit held the assistant's mistake was excusable neglect because:

> there was no danger of unfair prejudice, the length of delay caused by his filing error did not adversely affect the proceedings, and while the reason for the delay, a calendaring error, was well within the reasonable control of *Razvi*'s counsel, it did not appear to be in bad faith. Moreover, there has been no trial on the merits in this case and the dismissal by the district court precludes such consideration. Accordingly, we reverse the district court's denial of *Razvi*'s motion for relief from judgment.

*Razvi* at 1.

Just as in *Razvi*, the newly discovered facts here establish excusable neglect when applied to the *Pioneer* factors.

1. **Given Plaintiff Cockrum's Case Status, There is No Danger of Unfair Prejudice Against Defendant Sandoz.**

Defendant Sandoz has failed to identify any prejudice whatsoever that they would face if Plaintiff's inadvertence were excused. Counsel has fully complied with Court Orders regarding the exchange/uploading of records, photographs, fact sheets, and other information. As such, Sandoz has had notice of Plaintiff Cockrum's case, and has taken full advantage of that notice in, among other ways, challenging her claims. It, then, stretches the bounds of fairness to now dismiss

8

Plaintiff Cockrum's case based upon provisions whose sole purpose is to provide notice. Notice has been provided, received, and acted upon.

Inclusion of Plaintiff Sharon Cockrum in Defendant's Motion to Dismiss further supports the lack of unfair prejudice against Defendant Sandoz. All the above-filings indicate an effort by Plaintiff to comply with the Court's orders and proceed forward with the immediate case. At no point did Defendant Sandoz communicate to Plaintiff that service was incomplete while receiving the above filings nor provide notice of a technical defect in the attempted service as required by PTO 30 paragraph II.E. Plaintiff submits that the only prejudice is against Plaintiff and results from Sandoz, on the one hand, discovering the facts of Plaintiff's case, challenging the sufficiency of her PID, while on the other, all along believing service was lacking. Sandoz knows and has known (since, at least, 2017) not only of the existence of Plaintiff's claims but also the factual and medical background and support for those claims.

Defendant Sandoz filed their Motion to Dismiss Plaintiff's Claims for Failure to Comply with Case Management Order No. 35 and FRCP 4 on September 29, 2022, nearly six years after the commencement of this present suit and four years after Plaintiff dismissed all other named Defendants except for Defendant Sandoz. Defendant Sandoz clearly possessed prior knowledge of this suit and did not identify in their motion any single way that that they were prejudiced or delayed by Plaintiff's inadvertent mistake. The fact that they were able to wait so long into this litigation prior to even raise this issue further indicates that the Defendant is not remotely affected by the deficient attempts at service.

**2. There is No Clear Record of Delay.**

Any "delay" in effectuating service did not affect the proceedings here, especially considering that this litigation has had periods of stasis for reasons completely unrelated to Plaintiff's conduct.

Plaintiff has continued to pursue her case and comply promptly with other Court-imposed deadlines, including Product Identification, proof of injury submissions, an ESI Statement pursuant to PTO 71A, and PFS amendments in compliance with this Court. In that regard, Sandoz can point to no prejudice related to the delay in technical service. Plaintiff has not caused any delay in this litigation, particularly to Defendant.

### 3. The Record Does Not Reveal Any Contumacious Conduct on Part of the Plaintiff.

Plaintiff's inadvertent mistake was not made in bad faith. This mistake resulted from a former assistant's errors, despite having office policies in place to accomplish service. Following this, Plaintiff's Counsel made diligent efforts to ensure that their cases complied with CMO 35 and does not amount to contumacious conduct.

As this Court has stated, the Fifth Circuit has described contumacious conduct as "the stubborn resistance to authority which justifies a dismissal with prejudice" or a willful disobedience of a court's order." *Millan v. USAA Indem. Co*., 546 F.3d 321, 327 (5th Cir. 2008) (quoting *McNeal v. Papasan*, 842 F.2d 787, 792 (5th Cir. 1988)); *In re Deepwater Horizon*, 805 F. App'x 262, 265 (5th Cir. 2020). By this definition, Plaintiff's failure to comply with the CMO 35 deadline in of itself does not constitute contumacious conduct, as there was no stubborn resistance to authority nor willful disobedience of the Court's order. Similarly, Plaintiff's inadvertent failure to effectuate service within a certain number of years does not in of itself constitute contumacious conduct.

Plaintiff's counsel made a diligent effort to review their cases prior to the CMO 35 deadline. Their review of the case files in their electronic case management system did not uncover any deficiency, and therefore no additional service attempts were made at the time. Once the error was discovered, however, Plaintiff's counsel immediately attempted to promptly resolve this issue.

They have willingly submitted to and remain compliant with the many other requirements of this MDL, and this failure is an outlier in the history of Plaintiff's case. The fact that the paralegal's mistake was not discovered is not contumacious, but an unfortunate mistake that was made in good faith effort to comply with CMO 35.

Additionally, separate from Plaintiff's Counsel's conduct, Plaintiff herself has not exhibited any conduct remotely in proximity to contumacy. This Court has previously assessed Plaintiff's individual conduct when determining whether conduct is contumacious:

> The Court dismissed Mr. Burge's claims pursuant to Rules 41(b) and 37(b)(2) for noncompliance with this Court's orders relating to Plaintiff Fact Sheets. Therefore, the dismissal implicitly rested on a finding of contumacious conduct on the part of the plaintiff and a finding that the fault for the delay and/or noncompliance lay with the plaintiff himself. 3 Now, based on Mr. Burge's explanation of his situation, it is clear that Mr. Burge has engaged in no contumacious conduct and that he has complied with this Court's orders as fully as his circumstances permit. Thus, to this extent, it has become evident that the Court's prior ruling rests on a critical [*18] error of fact and that relief is therefore warranted at 17-18, The prejudice is slight, as is the potential impact on the MDL proceeding, the delay was short, and there is no evidence of bad faith. 19.

*In re Fema Trailer Formaldehyde Prods. Liab. Litig.*, No. 07-1873, 2012 U.S. Dist. LEXIS 30696 (E.D. La. Mar. 8, 2012). In this case, Plaintiff has always remained responsive and committed to complying with the Court's orders and deadlines as her circumstances permit. There is no record of any contumacious conduct specific to her. However, if her case is ultimately dismissed, she is the one who bears the consequences of this dismissal. She will effectively be barred from pursuing her claims against Sandoz, despite substantial injuries and resolute pursuit of her claims since 2016.

**4.  Plaintiff Acted in Good Faith**

Plaintiff has made diligent good faith attempts to serve Defendant Sandoz. Plaintiff's counsel diligently made efforts to review their cases and confirm that service was successfully effectuated for each plaintiff. Upon seeing the service email filed by counsel's former staff, Plaintiff's Counsel believed service had been affected and that Plaintiff was included in the Defendants' Motion to Dismiss in error. Preparation of the exhibits to Plaintiff's Opposition to the Motion to Dismiss, in which IT support had to revive the email box of the former employee to access emails not filed in the case management system as required by Firm procedures, ultimately led to the discovery of the failed service attempts due to technical error. Defendant Sandoz was contacted by email as soon as Plaintiff's Counsel recognized that there was an error. There has been no resolution on the merits of the case, and the Court's dismissal precludes such consideration.

In sum, the conduct here is a similar type of conduct that the Fifth Circuit found excusable when applying the *Pioneer* factors and emphasizing, as required by *Pioneer*, "that the determination is 'an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Razvi* at 4 quoting *Pioneer*, 507 U.S. at 395. In light of the above, it is respectfully requested that the Court reconsider Plaintiff's dismissal where the Court granted the Defendant's Motion. It is respectfully submitted that recognition and consideration of the individual facts of Plaintiff's case as addressed herein is fundamentally required by due process and to avoid manifest injustice.

**C.** **If Plaintiff's Motion for Reconsideration is Not Granted, Manifest Injustice Will Result.**

The expansive sixth "any other reason that justifies relief" prong of Rule 60(b), "requires a showing of 'manifest injustice' and will not be used to relieve a party from the 'free, calculated,

12

and deliberate choices he has made.'" *Id*. Dismissal based upon a diligent, albeit technically

defective service, while Defendant possesses notice and knowledge of Plaintiff's case specifics

and has actively engaged in case-specific litigation is unduly harsh and results in manifest injustice.

The injustice is amplified in the MDL setting, which is different from the setting of individual,

stand-alone cases. The efficiencies of many of these rules, including streamlined discovery and

streamlined discovery challenges operate to the benefit of all parties. The MDL setting should be

considered as the Court takes action, especially action with devastating ramifications. When

exploring this very issue, another MDL Court (MDL No. 2327 IN RE ETHICON, INC. Pelvic

Repair System Products Liability Litigation) conducted the analysis:

> The defendants' assertion that the court does not have personal jurisdiction over them [based upon failure to timely serve] is **inconsistent with their behavior thus far**. While the defendants had not previously filed any motions or appeared before the court, **their interaction with the plaintiffs clearly led the plaintiffs to believe that service of process was adequate. By acknowledging receipt of the PPF, demanding additional information, and threatening to pursue remedy in court if the plaintiff did not comply, the defendants acknowledged the court's jurisdiction over this case**. Particularly considering the sensitive nature of the information contained in the PPF, **the only reasonable conclusion is that the defendants manifested their intention to defend the suit and have waived the defense of untimely service of process.** It would indeed be an absurd result, likely placing the defendants and their counsel in an ethical hole, if this court allowed the defendants to request the plaintiff provide sensitive medical information and encourage the plaintiff to expend resources pursuing litigation, only for the defendants to assert, years later, that this court lacks jurisdiction. When the defendants indicate such a clear willingness to engage in litigation, they have waived any defense for failure to timely serve.

*Pelvic Repair Sys. Prods. Liab. Litig. v. Ethicon Inc. (In re Ethicon, Inc.)*, 2016 U.S. Dist. LEXIS

148765, at *6-7 (S.D. W. Va. Oct. 27, 2016)(emphasis added). In the case at bar, Defendants have

previously acknowledged that they are a party to this case, including in their Motion to Dismiss

13

for Failure to comply with CMO 12. They have access to and have reviewed extensive, case-specific and personal discovery regarding the nature of Plaintiff's claims and the extent to her injuries (especially given that Sandoz pursued PID challenges directed at Ms. Cockrum in March 2018). Plaintiff has provided sensitive medical information via MDL Centrality and has complied with other court orders in pursuit of this litigation for years. It is only reasonable to conclude that Defendants have manifested their intent to defend this suit and, as a result, have waived the defense of untimely service of process.

The *Ethicon* court based its analysis, in part, on the below:

> Other courts also consider the defense of untimely service waived when the conduct of a defendant leads a plaintiff to believe that service is adequate. See Blachy v. Butcher, 221 F.3d 896, 910-11 (6th Cir. 2000); Trustees of Cent. Laborers' Welfare Fund v. Lowery, 924 F.2d 731, 732-733 (7th Cir. 1991); and Rockwell Med., Inc. v. Yocum, No. 13-10480, 2013 WL 4760971, at *4 (E.D. Michigan 2013). The Fifth Circuit adopted the rule that the defendants do not necessarily need to file an answer to waive personal jurisdiction, rather taking "some step or proceeding in the cause beneficial to himself or detrimental to the plaintiff other than one contesting only jurisdiction" can serve as an appearance and waiver of the requirement for personal jurisdiction. Broadcast Music, Inc. v. M.T.S. Enterprises, Inc., 811 F.2d 278, 281 (5th Cir. 1987) (quoting Cactus Pipe & Supply v. M/V MONTMARTRE, 756 F.2d 1103, 1108 (5th Cir. 1985)). More specifically, the Second Circuit found that the defendant waived the defense of defect service of process by attending a conference with a magistrate and scheduling discovery and motion practice without mentioning the defect of service, which could have been cured within the limitations period had the defendant complained. Datskow v. Teledyn, Inc., Cont'l Products Div., 899 F.2d 1298, 1303 (2d Cir. 1990). Thus, **many circuits agree that defendants can waive objections to personal jurisdiction by indicating a willingness to defend the suit or taking other action that would lead the plaintiff to believe service was adequate.**

*Pelvic Repair Sys. Prods. Liab. Litig. v. Ethicon Inc. (In re Ethicon, Inc.)*, 2016 U.S. Dist. LEXIS 148765, at *5-6 (S.D. W. Va. Oct. 27, 2016)(emphasis added).

14

Further, in the Fifth Circuit case cited above by the *Ethicon* court (a case involving an attorney's appearance in a case, followed by assertions of lack of personal jurisdiction based upon lack of service of process), the Fifth Circuit went on to say:

> The Federal Rules do not in any way suggest that a defendant may halfway appear in a case, giving plaintiff and the court the impression that he has been served, and, at the appropriate time, pull failure of service out of the hat like a rabbit in order to escape default judgment. **To countenance this train of events would elevate formality over substance and would lead plaintiffs to waste time, money, and judicial resources pursuing a cause of action.** Indeed, that waste would result here if we void the district court's judgment for lack of service of process.

*Broad. Music, Inc. v. M.T.S. Enterprises, Inc.*, 811 F.2d 278, 281 (5th Cir. 1987)(emphasis added).

Following the same reasoning, the Eastern District of Louisiana has previously denied a motion for dismissal without prejudice because the defendants were aware of, and participated in, the lawsuit against them despite a lack of timely service. *Chenevert v. Algiers Charter Sch. Ass'n, Inc.*, No. CIV.A. 12-2099, 2013 WL 4710408, at *1 (E.D. La. Aug. 29, 2013). In response to the defendants' motion for dismissal, the plaintiffs argued that the defendants were not prejudiced because they had defended the case by submitting affidavits and briefs to the EEOC. *Id.* at *2. The court found that "Defendants' prior knowledge of the action mitigated any prejudice they might have suffered from untimely service." *Id.* at *17. It explained that the "delay in service has not resulted in Defendants missing any deadlines or conferences, or forced them to complete discovery in a more limited time than other parties … [the] trial date provides them with ample time to prepare this case and file any necessary motions." *Id.*

Given that refiling would be subject to a statute of limitations challenge, this Court's dismissal effectively eliminates the possibility of Plaintiff to pursue her claim. This is despite several years of compliance in this litigation with this Court's orders. Such a result is greatly unjust,

especially given that Defendants have not been remotely affected by this error. At the least, because of these circumstances and the lack of prejudice to Sandoz, Sandoz should not be permitted to utilize lack of service as a sword, and the Court should reconsider its decision to terminate Plaintiff's case, and excuse counsel's mistake. To do otherwise would not be just under the circumstances.

**D.** **This Court Has Recognized and Denied Dismissal of Cases for Similar Technical Error**

This Court's previous orders regarding compliance with CMO 35 have allowed for cases to survive when technically deficient, yet diligent, service attempts were made in an effort to comply with CMO 35. However, this Court has inconsistently applied this principle when determining whether a case should be dismissed for failure to effectuate service in compliance with CMO 35.

In the Court's Order as to Defendants Sanofi-Aventis U.S. LLC and Sanofi US Services Inc. entered on August 22, 2023 (Doc. 16327), this Court granted extension of the deadline *nunc pro tunc* because it found that other plaintiffs' attempts to perfect service, although ineffective, were sufficiently diligent. Section B, paragraph 1, of the above-mentioned Order (Doc. 16327) states:

> Plaintiffs Karen Stone and Flora Smith argue that they technically, though deficiently, served Sanofi on January 18, 2019, and December 4, 2019, respectively. Although the emails correctly attached the complaints and summonses of Plaintiffs Stone and Smith, the subject lines erroneously reflected the names of other MDL Plaintiffs, thereby rendering service deficient. Similarly, Plaintiff Anne Marie Past maintains that she served Sanofi on October 26, 2018, but Sanofi contends that she attached a complaint for a different MDL Plaintiff in her service email, rendering service ineffective. Because Plaintiffs Stone, Smith, and Past made diligent attempts to timely serve Sanofi, the Court finds that there is no clear record of delay. Nor does the record reveal contumacious conduct;

16

> under the mistaken belief that service had been perfected, these
> Plaintiffs did not willfully disregard CMO 35's directive.
> Accordingly, the Court exercises its discretion to extend the time for
> Plaintiffs Stone, Smith, and Past to properly serve Sanofi.

Unfortunately for Plaintiff, however, in the Court's Order relevant to Defendant Accord Healthcare entered on July 05, 2023 (Doc. 16053) and the Court's Order pertaining to Defendants Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., Hospira, Inc., and Pfizer, Inc. entered on August 25, 2023 (Doc. 16337), the MDL Court took a different approach. Rather than reviewing the specific actions taken by the individual plaintiffs, the Court provided little to no analysis concerning the individualized facts when determining that the Plaintiffs' actions contumacious conduct. The Court's succinct analysis merely relied on the failure to cure by the CMO 35 deadline or their failure to effectuate service within a number of years as a basis for their findings of contumacious behavior. The Court stated that although Plaintiffs believed the complaint was properly served, the Plaintiffs' argument did not satisfy the standard for good cause, which requires "at least as much as would be required to show excusable neglect," and that "inadvertence, mistake or ignorance of counsel are not excusable neglect." *Id*.

The MDL Court recognized in the above-mentioned Orders that courts normally require "some showing of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified . . ." However, it found that the Plaintiff's arguments provided "no explanation for their failure to timely serve" the Defendants and concluded that the Plaintiffs failed to "satisfy the standard for good cause." *Id*.

The excerpt above (Doc. 16327) demonstrates the Court's determination that the deficient service attempts were nonetheless diligent attempts to timely serve process on the Defendants, despite attempts sent with erroneous names reflected. Similarly, in the instance case, Plaintiff

Cockrum attempted to electronically serve Defendant Sandoz twice to the incorrect email address. This is a technical error made despite diligent and timely efforts to serve. Instead, this Court labeled the Plaintiff' Cockrum's mistake as "willful disregard of this court-ordered deadline." (Doc. No. 16341).

Furthermore, after the CMO 35 was issued, Plaintiff's Counsel diligently reviewed their case files to confirm service and relied upon the emails filed by former staff to form the conclusion that service had been perfected on all cases, including Plaintiff's case. Based on the documented proof of service, Plaintiff's was under the mistaken belief that service had been perfected. These facts most closely align with both the judicial interpretations of the inadvertent error and this Court's own determinations of permissible, diligent attempts at service.

## CONCLUSION

Pursuant to Rule 60, F.R.C.P. and Fifth Circuit and related law, Plaintiff requests that the Court find the mistakes involved to be excusable. The case-specific facts establish that Plaintiff's Counsel actual conduct was not contumacious. In response to CMO 35, Plaintiff's counsel acted appropriately and reviewed its case files to confirm that Defendants had been served. Plaintiff's failure to comply with CMO 35 was the result of an inadvertent and excusable mistake resulting from technical error, and they immediately followed up with an attempt to cure this issue upon discovery. There is no prejudice to Defendant Sandoz as a result of this error. Moreover, Plaintiff Cockrum and Defendant Sandoz both participated in discovery practice indicating both possessed an understanding that Plaintiff had complied with the proper service requirements. Dismissal of Plaintiff's case will result in a manifest injustice as it is a final adverse adjudication depriving the Plaintiff of her day in court.

For the above reasons, and in the interest of justice, it is respectfully requested that the Court reconsider the Order dismissing Ms. Cockrum's case and allow her case to proceed. Doing so is within the Court's discretion to "strike the proper balance between the need for finality and the need to render just decisions on the basis of all the facts." *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995) (citing *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993)).

WHEREFORE Plaintiff respectfully requests this Court reconsider its August 30, 2023 Order and Reasons (Doc. No. 16341).

Dated:  November 14, 2023                    Respectfully Submitted,


*/s/ Carasusana B. Wall*

Carasusana B. Wall - 0090234
Partner
Zoll & Kranz, LLC
6620 West Central Avenue, Suite 100
Toledo, Ohio 43617
Toll-free: (888) 841-9623
Fax: (419) 841-9719
Email: cara@toledolaw.com
*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 14, 2023, I electronically filed the foregoing document with the Clerk of Court using the ECF system, which sent notification of such filing to all counsel of record.

*/s/ Carasusana B. Wall*