**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                              **MDL NO. 2740**
PRODUCTS LIABILITY LITIGATION

                                                         **SECTION "H" (5)**

**THIS DOCUMENT RELATES TO:**
**ALL CASES**

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR ENTRY OF AN ORDER REQUIRING PROOF OF DIAGNOSIS

The Sanofi Defendants have reached an agreement-in-principle with certain plaintiffs to settle a significant portion of the matters currently pending before this Court or previously remanded from these proceedings. In light of this agreement, the advanced age of this litigation, and the Plaintiffs' ongoing failure to seek, much less provide, evidence of their alleged injury and its cause, Defendants renew their Motion for Entry of an Order Requiring Proof of Diagnosis. The Court previously deferred Sanofi's Motion, but the time is now ripe for addressing Sanofi's request.

All Plaintiffs in this MDL allege that they have permanent chemotherapy-induced alopecia ("PCIA") caused by Taxotere.[1] In order to succeed, every Plaintiff has the burden to prove a diagnosis of that specific injury, by that specific cause. Yet, more than seven years into this MDL (after the Court has decided more than a dozen *Daubert* and dispositive motions and presided over two bellwether trials), at least 80 percent of Plaintiffs have no medical evidence of their alleged injury or its cause.[2] Indeed, more than 80 percent of the Plaintiffs who submitted fact sheets admit

---

[1]   *See* Second Am. Master Compl. ¶¶ 5–7, 181, 231, 247.

[2]   Rec. Doc. 15834 at 21 (Summary of MDL 2740 Proceedings Upon Suggestion of Remand or Transfer).

that they have *never been diagnosed with their claimed injury* and a majority of those admit that they have *never even inquired* with a medical provider as to what may have caused their hair loss. This failure to conduct even a minimal amount of investigation into the alleged injury and its alleged cause, after years of litigation, has been and continues to be a hurdle to evaluating and moving the remaining inventory forward.

Under these circumstances, Sanofi requests that the Court exercise its authority under Rule 16(c)(2)(L) and enter an order requiring each remaining Plaintiff to do the following:

(1)     Certify her willingness to proceed,

(2)     Provide updated authorizations and an updated Plaintiff Fact Sheet,

(3)     Submit an expert medical declaration by a qualified physician diagnosing the Plaintiff with PCIA caused by Taxotere, and

(4)     Participate in certain, limited discovery material to mediation of these cases.[3]

Such an order would "promote the just and efficient conduct" of cases in this MDL (28 U.S.C. § 1407), streamline the litigation, conserve judicial and party resources by avoiding additional expenditures on cases with no medical diagnosis, and advance efforts to resolve more cases.

## **LEGAL STANDARD**

Under Rule 16, the Court may "adopt[] special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." Fed. R. Civ. P. 16(c)(2)(L).  Consistent with the Court's discretion under Rule 16, orders requiring proof of injury and causation (often referred to as *Lone Pine* orders) are "routinely used by courts to manage mass tort cases."  *In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d 741, 743 (E.D. La. 2008) (citing *Acuna v. Brown & Root Inc.*, 200 F.3d

---

[3]     A proposed order is attached as **Exhibit A**.

335, 340 (5th Cir. 2000)), *aff'd*, 388 F. App'x 391 (5th Cir. 2010); *see also In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 2021 WL 493069, at *2 (E.D. La. Feb. 10, 2021) (same); *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 687 F. App'x 210, 214 (3d Cir. 2017) (such orders are "routine" and within the "wide latitude" of the MDL court); David F. Herr, Ann. Manual for Complex Lit. § 11.34 (4th ed. 2020) (noting that such orders are "widely used in mass torts to isolate spurious claims").

Although orders requiring such proof may vary in scope, they generally require plaintiffs "to make a *prima facie showing of injury and causation* by providing facts of an individual plaintiff's exposure to alleged toxic substances, combined with expert medical testimony supporting the claims of injury and causation by the alleged toxic substances." *Trujillo v. Ametek, Inc.*, No. 15-cv-1394, 2016 WL 3552029, at *1 (S.D. Cal. June 28, 2016) (emphasis added); *see also In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d at 743 (explaining that the purpose of a *Lone Pine* order is to allow litigants and courts "to identify and cull potentially meritless claims and streamline litigation in complex cases involving numerous claimants" (quoting *Baker v. Chevron USA, Inc.*, 2007 WL 315346, at *1 (S.D. Ohio Jan. 30, 2007))).

In deciding whether to enter such an order, courts consider a number of factors, including (1) the posture of the action, *see In re Vioxx Prod. Liab. Litig.*, 557 F. Supp. 2d at 744 (citing the advanced state of the litigation as justification for entry of a *Lone Pine* order); (2) the particular case-management needs of the case, including litigation history that suggests many plaintiffs cannot establish causation, *see In re Fosamax Prod. Liab. Litig.*, No. 06 MD 1789 JFK, 2012 WL 5877418, at *3 (S.D.N.Y. Nov. 20, 2012) (entering *Lone Pine* order because "the Court ha[d] reason to believe that spurious or meritless cases are lurking in the some 1,000 cases on the MDL docket"); and (3) the availability and efficacy of more traditional case management procedures,

*see In re Digitek Prod. Liab. Litig.*, 264 F.R.D. 249, 259 (S.D.W. Va. 2010) (holding that existing case management tools were sufficient "at this [early] stage in [the] litigation," but warning that a *Lone Pine* order might be appropriate if those tools proved unable to "accommodate the unique issues of this litigation").

All of these considerations weigh heavily in favor of granting Defendants' Motion.

## ARGUMENT

This Court should enter Defendants' proposed order for at least three reasons. First, the order is appropriate given the advanced stage of the litigation and agreement-in-principle to settle a substantial portion of the cases. Second, there is evidence that many of the remaining Plaintiffs will not be able to prove causation, and no further resources should be wasted on such cases. And third, the order is appropriate because the Court's best case management efforts still have not persuaded Plaintiffs to investigate the validity of their allegations.

### A.     The proposed order is warranted given the advanced stage of this litigation.

Although courts routinely require proof of injury and causation at the outset of mass tort litigation,[4] *Lone Pine* orders stand on particularly firm ground when the litigation is well-advanced and a substantial portion of the cases have settled or an agreement-in-principle has been reached.

In *In re Vioxx*, the court recognized that, "[i]n crafting a *Lone Pine* order, a court should strive to strike a balance between efficiency and equity," and such orders may not be suitable at every stage in the litigation. 557 F. Supp. 2d at 744. The court reasoned that it may not have been

---

[4]     *See, e.g., Acuna*, 200 F.3d at 340–41 (affirming the district court's entry of an order requiring 1,600 plaintiffs to produce expert reports on injury and causation allegedly stemming from uranium exposure, before discovery); *see also Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 604 n.2 (5th Cir. 2006) (describing *Lone Pine* orders as "pre-discovery orders" designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation by requiring plaintiffs to produce some evidence to support a credible claim." (citation omitted)); *In re AET Inc. Ltd.*, No. 10-0051, 2018 WL 4203351, at *2 (E.D. Tex. Feb. 13, 2018) (same)); *Modern Holdings, LLC v. Corning Inc.*, No. 13-0405, 2015 WL 6482374, at *1 (E.D. Ky. Oct. 27, 2015) (same).

fair to enter a *Lone Pine* order before any discovery had taken place, as "little was known about the structure, nature and effect of Vioxx by anyone other than perhaps the manufacturer of the drug." 557 F. Supp. 2d at 744. But, as the case moved forward, the balance shifted. By the time the *Vioxx* court entered its *Lone Pine* order, the MDL had been under way for more than three years. The plaintiffs had ample access to the defendants' documents and deposition testimony and for years had been studying and exploring the effects of Vioxx on the human body. *Id.* The court had also conducted a number of bellwether trials, which highlighted expert testimony from the defendants and the plaintiffs on causation. *Id.* In light of the "advanced stage of the litigation," the court held that it was "reasonable to require Plaintiffs to come forward and show the basis for their beliefs and show some kind of basic evidence of specific causation." *Id.* Other courts have likewise cited the advanced stage of the litigation, particularly the availability of significant discovery, when ordering plaintiffs to submit proof of their injuries and alleged cause. *See In re Fosamax Prod. Liab. Litig.*, No. 06 MD 1789 JFK, 2012 WL 5877418, at *3; *Barrett v. Dresser, LLC*, No. 1:20-CV-01346, 2023 WL 6613163, at *4 (W.D. La. Oct. 10, 2023); *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 834 (9th Cir. 2011).

After seven years of litigation, the Taxotere MDL is even more advanced. Twenty-eight Sanofi witnesses were deposed during general discovery, and multiple additional Sanofi witnesses sat for deposition in case-specific workup.[5] Sanofi has also produced 576,100 documents totaling 6.3 million pages. The Court also permitted case-specific workup during a bellwether process that ended in two trials. As part of that process, both sides' expert opinions were vetted and subject to Rule 702 challenges.[6] Plaintiffs can no longer argue that a *Lone Pine* order would be unfair because

---

[5]   Rec. Doc. 15834 at 7–8 (Summary of MDL 2740 Proceedings Upon Suggestion of Remand or Transfer).

[6]   Rec. Doc. 15834 at 38–44 (Summary of MDL 2740 Proceedings Upon Suggestion of Remand or Transfer).

they have not had an opportunity to conduct discovery related to Taxotere and its alleged link to permanent hair loss. Those issues have been litigated by both sides for the past seven years.  At this late stage, "it is not too much to ask Plaintiff[s] to provide some kind of evidence to support their claim that [Sanofi] caused them personal injury." *See In re Vioxx*, 557 F. Supp. 2d at 744.

Furthermore, orders requiring evidence of injury and causation "may be particularly appropriate when a defendant has taken steps to settle a significant portion of the claims pending against it." *In re Testosterone Replacement Therapy Prod. Liab. Litig.,* No. 1:14-CV-01748, 2018 WL 6258898, at *3 (N.D. Ill. June 11, 2018). Sanofi recently agreed in principle to settle a substantial portion of the cases filed in this litigation and continues to resolve single-firm inventories of Taxotere hair loss cases. Entry of the order at this time will help facilitate moving the remaining claims forward and will also ensure that the cases have baseline merit. When litigation is advanced, and settlement has been achieved for some portion, requiring non-settling Plaintiffs to produce evidence of injury and causation will reduce the time and costs that all involved (the Courts and the parties) will incur in resolving the remaining claims.

**B.     The history of the litigation in this MDL suggests that many Plaintiffs will not be able to prove causation.**

It is also appropriate to require proof of injury and causation when, as here, the history of the litigation shows that "cases are more likely to result in dismissal once discovery focuses on issues related to causation."  *In re Fosamax Prod. Liab. Litig.*, No. 06 MD 1789 JFK, 2012 WL 5877418, at *3.  *In re Fosamax*, a pharmaceutical MDL much like this one, is instructive.  There, of the 35 cases selected for case-specific discovery, 11 were dismissed, and more than half of the remaining 12 cases that were set for trial were dismissed. *Id.* at *1.  Noting that the plaintiffs tended to dismiss their cases when required to provide evidence of causation, the court concluded it "ha[d]

reason to believe that spurious or meritless cases [were] lurking in the some 1,000 cases on the MDL docket." *Id.*

The statistics in this case far exceed those in *In re Fosamax*. Here, less than 5% of cases have proven amenable to prosecution. Approximately half of the cases selected as bellwethers were removed or disqualified from the pool for, among other things, failure to establish product identification or failure to provide requisite photographs of the alleged hair loss injury.[7] Another four cases were voluntarily dismissed with prejudice by plaintiffs.[8] Of the 19 bellwether cases to face dispositive motion practice, all but two (89%) were dismissed or are subject to dismissal.[9] Thus, even for cases *carefully* selected by both sides for bellwether treatment, more than 95% could not reach trial.

Former bellwether Plaintiff Lisa Tuyes is a prime example. Ms. Tuyes filed suit in October 2016 alleging she suffered from PCIA caused by Taxotere[10] but conceded in her Plaintiff Fact Sheet that she had received no diagnosis.[11] The photographs that Ms. Tuyes submitted in lieu of a diagnosis showed no appreciable hair loss.[12] In 2018, Ms. Tuyes was selected as one of four options for the first bellwether trial.[13] When Ms. Tuyes finally received a scalp biopsy during

---

[7]   **Ex. B,** Sanofi Bellwether Tracking Chart.

[8]   *Id.*

[9]   *Id.* The Court has granted summary judgment in Sanofi's favor in 10 bellwether cases. After the Court granted Sanofi's motion for judgment on the pleadings on the claims of bellwether plaintiff Juanita Greer, six Mississippi bellwether plaintiffs would be subject to dismissal under Sanofi's proposed show-cause order. *See* Rec. Doc. 13746 (Mot. for Rule to Show Cause Regarding Dismissal of Mississippi Pls.).

[10]  **Ex. C**, Tuyes Short Form Compl.

[11]  **Ex. D**, Tuyes Pl. Fact Sheet at 17.

[12]  *See* **Ex. E** (composite exhibit containing "before" and "after" photos – *filed under seal*).

[13]  Rec. Doc. 1819 (Case Management Order No. 13).

phase-two discovery, Plaintiff's expert dermapathologist diagnosed Ms. Tuyes not with PCIA, but rather with androgenetic alopecia,[14] an inherited form of hair loss affecting more than 40 percent of all women.[15]  By the time she was removed from the trial pool, the parties had collected records for 14 months and deposed 10 witnesses to prepare her case for trial—all of which could have been avoided had Ms. Tuyes been required to submit proof of diagnosis at an earlier time.

Similarly, former trial pool Plaintiff Sheila Crayton never received a diagnosis of PCIA caused by Taxotere.[16]  Like Ms. Tuyes, Ms. Crayton submitted photographs, which showed no discernible hair loss.[17]  After Ms. Crayton was selected for the trial pool, the parties conducted extensive discovery, collecting records for 26 months, deposing 10 witnesses, and proceeding with expert discovery.  Yet, Ms. Crayton was never examined by Plaintiffs' retained expert or any medical doctor for her alleged injury, and Plaintiffs chose not to secure a diagnosis even after selection. Ms. Crayton's case was later withdrawn from the trial pool,[18] and, on Sanofi's motion, this Court dismissed Ms. Crayton's case for failure to provide expert evidence that she had PCIA caused by Taxotere.[19]

Wave discovery has been no different.  The Court and the parties identified 200 cases for the Wave 1 remand process.[20]  Four cases resolved after this Court ordered a bellwether mediation

---

[14]   **Ex. F,** Apr. 27, 2018 Thompson Rpt. (Tuyes) at 2.

[15]   **Ex. G,** Oct. 9, 2020 Shapiro Rpt. at 6.

[16]   **Ex. H**, Crayton Pl. Fact Sheet at 16.

[17]   *See* Ex. E (composite exhibit containing "before" and "after" photos – *filed under seal*).

[18]   Rec. Doc. 8701 (Order).

[19]   Rec. Doc. 11824 at 4–5 (Order & Reasons Granting in Part and Denying in Part Sanofi's Mot. for Summ. J. on the Claims of Sheila Crayton) ("Under Louisiana law, 'expert medical testimony is required when the conclusion regarding medical causation is one that is not within common knowledge.'" (quoting *Burst v. Shell Oil Co*., Civil Action No. 14–109, 2014 WL 3893304, at *2 (E.D. La. Aug. 8, 2014))).

[20]   Rec. Doc. 14045 (CMO 34); Rec. Doc. 13946 (CMO 33) (setting forth the Wave 1 remand process).

process for Wave 1 cases. One additional Wave 1 case resolved following mediation. By April 3, 2023, only 93 plaintiffs' cases remained in Wave 1,[21] but Plaintiffs continued to dismiss their lawsuits, asked to defer to a later wave, or were ruled or agreed to be ineligible for Wave 1. Ultimately, the Court transferred 82 cases back to their designated venues in the district courts,[22] where fewer than fifty now remain pending—and many of those are or will be subject to dispositive motion practice.

On June 23, 2023, this Court identified 1,000 additional cases for Wave 2.[23] After the parties reviewed those cases, the number amenable for remand/transfer was reduced to 573 due to questions of product identification, subject matter jurisdiction, the Court's prior fence-post rulings, and other concerns related to their candidacy for prosecution.[24] At this point, fewer than 400 cases remain active, reinforcing prior experience with the difficulties in identifying viable claims in this litigation.

As in *In re Fosamax*, the litigation history of this case, particularly "Plaintiffs' habit of dismissing cases after both parties have expended time and money on [case-specific] discovery[,] demonstrates that this MDL is ripe for a *Lone Pine* order." 2012 WL 5877418, at *3. As noted, a full 80% or more of the thousands of remaining Plaintiffs admit they have never even *discussed* their claimed injury with a care provider, much less attempted to secure a diagnosis. It is likely many of these Plaintiffs will never receive a diagnosis of PCIA caused by Taxotere.

---

[21]   Rec. Doc. 15761 (CMO 34D).

[22]   Rec. Doc. 15836 (Transfer Order).

[23]   Rec. Doc. 16347 (Wave 2 Transfer Order).

[24]   Rec. Doc. 16511 (Amended Wave 2 Transfer Order).

Defendants' request is well-within this Court's discretion to grant. Defendants are simply asking that Plaintiffs be required to produce case-specific expert evidence on causation that complies with Rule 702—which would be required to move any single case forward. The injury alleged in this litigation is such that expert testimony as to the injury diagnosis and its cause is necessary in order to prove liability.[25] Defendants merely request that Plaintiffs be required to produce that evidence now so that additional time and resources are not wasted. The Ninth Circuit has recognized that use of a *Lone Pine* order under these circumstances is inherent to the court's "authority to determine when—and in what sequence—expert testimony must be disclosed." *See Avila*, 633 F.3d at 834 (citing Federal Rule of Civil Procedure 26(a)(2)(C)).

**C.    Plaintiffs' failure to even minimally investigate their claims persists despite the Court's substantial case management efforts.**

Even those courts that have expressed skepticism about the use of *Lone Pine* orders as pre-discovery tools have acknowledged that such orders may become necessary later in the litigation when other, more traditional MDL case-management tools have failed. *See, e.g.*, *In re Digitek*, 264 F.R.D. at 256 (holding that a *Lone Pine* order was premature because more traditional procedural mechanisms had yet to be exhausted). Here, entering a *Lone Pine* order is more than justified.

The Court has made substantial efforts to control this litigation and cull meritless lawsuits using more traditional case management tools. Under Pretrial Order No. 18, the Court directed each Plaintiff to submit a Plaintiff Fact Sheet, which requires each Plaintiff to identify her injuries, indicate whether she has received a diagnosis for her injuries, and submit medical records showing

---

[25] *See* Rec. Doc. 11824 at 4 (Order & Reasons Granting in Part and Denying in Part Sanofi's Mot. for Summ. J. on the Claims of Sheila Crayton) ("Under Louisiana law, 'expert medical testimony is required when the conclusion regarding medical causation is one that is not within common knowledge.'" (quoting *Burst v. Shell Oil Co.*, Civil Action No. 14–109, 2014 WL 3893304, at *2 (E.D. La. Aug. 8, 2014)).

proof of diagnosis *or* photographs showing hair before and after treatment.[26]  The Court later thinned the MDL pool by dismissing Plaintiffs with no proof of product ID and/or Plaintiffs who failed to submit photographs (and also had no proof of diagnosis).  The Court also ruled on many dispositive motions, the vast majority disposing of spurious lawsuits, and oversaw two trials, both of which resulted in verdicts finding medical causation lacking, or finding the warnings sufficient to warn of alopecia, by juries of the plaintiffs' peers.  These MDL proceedings were designed to identify and dispose of specific (but necessarily limited) claims of Plaintiffs whose cases could not succeed at trial and, more broadly, to help the parties value the cases that remained.  Yet, despite those efforts, likely thousands of meritless claims remain pending with Plaintiffs continuing to avoid even discussing their injury with care providers, much less securing a diagnosis.  Entry of Defendants' proposed order would save the Court and the parties the time and expense of addressing such meritless claims.

### D.     Sanofi's proposal offers a plan for complete disposition of the remaining cases in MDL No. 2740.

Sanofi's proposed order outlines a process for disposition of the remaining hair loss cases pending in MDL 2740. Sanofi specifically requests that, for the effective management of the remaining inventory, no further remands take place outside of the parameters of its proposed order. Other parameters of Sanofi's proposed order are as follows:

- ▪ *Wave 3 Case Selection.*  The Wave 3 Order is limited to non-settling plaintiffs' cases.

- ▪ *Wave 3 Eligibility & Exclusion Criteria.*  Only Sanofi/Winthrop cases are included.  The stay would remain in place as to 505(b)(2) defendants or mixed product identification/multi-manufacturer cases.  The Court could determine at a later date whether or how to apply the *Lone Pine* Order to other Waves.

- ▪ *Willingness to Proceed.* Sanofi proposes Certificates of Willingness to Proceed to vet the ongoing viability of the remaining, non-settling plaintiffs cases to better ascertain the total

---

[26]   *See generally* Rec. Doc. 236-1 (Pl. Fact Sheet).

number of remaining viable cases for potential resolution, as well as for proceeding with discovery. As we have seen many times in this litigation, a certain percentage of Plaintiffs will no longer wish to proceed with their case when it is selected to move forward. Plaintiffs will also inevitably be lost to follow-up and/or are no longer in contact with their attorneys.

- ▪ ***Updated Plaintiff Fact Sheet and Authorizations.*** Next, plaintiffs would update their PFSs and authorizations.

- ▪ ***Expert Medical Declaration.*** For the *Lone Pine* portion of the proposed order, Plaintiffs would undergo a physical examination by a qualified physician[27] (and if medically necessary, a punch biopsy) in order to provide a differential-diagnosis opinion sufficient to meet the requirements of Rule 702 and showings of specific causation, all as reflected by the Court's prior rulings.  Sanofi has included multiple safeguards aimed at protecting plaintiffs from mass tort abuse seen in prior women's health litigations.

- ▪ ***Limited Discovery.*** Sanofi proposes that the Court allows limited case-specific discovery and Rule 702 motion practice, focused on diagnosis of the alleged injury and other key factual/legal hurdles typically dispositive of cases in MDL 2740 based on the Court's prior experience through bellwether case work-up.  This would allow the parties an informed basis for mediating the case prior to any further remands.

- ▪ ***Dismissals.***  Where plaintiffs fail to complete the discovery described in the proposed order, Sanofi proposes a streamlined process for dismissal utilizing the Court's ordinary processes through Declarations of Attempted Attorney Contact and Rules to Show Cause. This proposal creates a complete framework for disposition of <u>all</u> remaining Sanofi/Winthrop cases in that the cases are either: (1) dismissed, (2) mediated, or (3) remanded with a sufficient Rule 702 diagnosis of injury but only after failed mediation.

- ▪ ***Mandatory Mediation.***  As indicated, Sanofi's proposal would require mediation after the requirements set out above are completed but prior to any further, future remands.  Sanofi believes the settlement values of these cases are well-established by prior mediation processes originated by this Court, including the existence of multiple, large inventory settlements totaling more than 2,500 cases.

Sanofi believes its proposal fairly and reasonably provides a complete framework for disposition of the remaining cases in MDL 2740.

---

[27]  This includes possessing the appropriate specialized qualifications required to diagnose the injury and its cause (such as certain dermatologists, dermatopathologists, or potentially, certain oncologists).  A general practitioner, for example, will not suffice.

## CONCLUSION

Defendants respectfully request that the Court grant this Motion and enter the proposed order (attached as Exhibit A).

Respectfully submitted,

/s/ Douglas J. Moore
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART
MOORE & DANIELS LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
dmoore@irwinllc.com

Harley Ratliff
Jon Strongman
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
hratliff@shb.com
jstrongman@shb.com
abyard@shb.com
***Counsel for sanofi-aventis U.S. LLC and
Sanofi U.S. Services Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2023, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ Douglas J. Moore

13