UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL)  ) <br> PRODUCTS LIABILITY LITIGATION ) <br> ) <br> ) <br> THIS DOCUMENT RELATES TO:       ) <br> ALL ACTIONS                                     ) | MDL No. 2740 <br><br> SECTION: "H" (5) |

[PROPOSED] CASE MANAGEMENT ORDER NO. XX

(WAVE 3 ORDER)

This order governs the selection of and scope of discovery for Wave 3 cases. In support of this Order, the Court finds that it has held two bellwether trials and has addressed numerous discovery disputes, dispositive motions, and other pretrial issues involving factual and legal questions common to all cases in this MDL proceeding.[1]

Case Management Order No. 34 ("CMO 34") (R. Doc. 14045) identified 200 cases selected by the Court and parties for the Wave 1 remand process set forth in Case Management Order No. 33 ("CMO 33") (R. Doc. 13946). Four (4) cases resolved after this Court ordering a bellwether mediation process for Wave 1 cases, which took place on November 29, 2022. One additional Wave 1 case resolved following mediation. By April 3, 2023, only 93 plaintiffs' cases remained in Wave 1. (R. Doc. 15761) Plaintiffs in the balance of the originally nominated cases dismissed their lawsuits, asked to defer to a later wave, or were ruled or agreed to be ineligible for Wave 1. On May 22, 2023, the Court transferred 82 cases back to their designated venues in the district courts. (R. Doc. 15836) Since that time, approximately 20 additional Wave 1 cases have resolved or and three have been dismissed on remand to the transferor courts, with others remaining pending

---

[1] *See* Case Management Order No. 39 (outlining the proceedings that have occurred in the MDL since its 2016 inception and summarizing this Court's pretrial rulings applicable to all MDL cases).

1

there. Sanofi continued to resolve several dozen single-firm inventories of Taxotere hair loss cases.

Further on June 23, 2023, this Court identified a list of 1,000 additional cases selected to comprise Wave 2. (Rec. Doc. 16347)  After conferral, the parties identified 573 remaining cases potentially subject to remand and/or transfer to their respective district courts.  Over 427 cases were not amenable to transfer over questions of product identification, subject matter jurisdiction, applicability of prior fencepost rulings by the Court, and other concerns related to their candidacy for prosecution.  (Rec. Doc. 16511)  After recent settlements, less than 400 cases (under 40%) remain.

Based on available data, more than 80% of the case inventory in this MDL have never been diagnosed with "Permanent Chemotherapy Induced Alopecia," or "PCIA."  A similar percentage of plaintiffs—well over 80%—had never sought treatment for the alleged injury. "In preparation for remand, the court should consider Lone Pine [i.e., proof-of-injury] proceedings or other methods to cull meritless cases and ensure that only the viable cases may ultimately be eligible for remand." MDL Guidelines and Best Practices 104.  Courts often implement these orders before remand "to ensure that the transferor courts receive only viable cases." *Id.*  The Court has earlier been inclined, but deferred, measures for medical corroboration of the specific injury alleged in these lawsuits.  (Rec. Doc. 10908 (Order Deferring Sanofi's Mot. for Entry of an Order Requiring Proof of Diagnosis))

Finally, the Court has since been apprised that Sanofi and certain plaintiffs have reached an agreement in principle anticipated to dispose of approximately 2,500 matters pending before this Court and remanded previously from these proceedings. The Court now finds that at, this time, additional case management procedures are appropriate for the remaining, unsettled cases before they proceed to remand.  No remaining, unsettled case will be remanded from this MDL Court

2

until that case has complied with the requirements set out in this order. The Court accordingly orders as follows:

## Wave 3 Case Selection

On **[DATE]** the Court will identify all cases the court-appointed mediator in this matter indicates are not part of the settlement agreed to by other settling plaintiffs and Sanofi on **[DATE]**.

## Wave 3 Eligibility & Exclusion Criteria

Wave 3 cases are limited to the eligibility criteria set forth in Case Management Order No. 33 ¶ 3(a) (Sanofi-only Product Identification) and the exclusion criteria set forth in ¶ 4(a) (CMO 12A, Single-Manufacturer Product Identification). Absent dismissal or resolution, no other eligibility or exclusion criteria apply and the cases selected for Wave 3 shall complete the following discovery.

## Discovery Parameters

Discovery in Wave 3 cases shall consist of:

1. **Certificate of Willingness to Proceed.** Within 14 days of selection, Plaintiffs' counsel has a duty to certify that each selected Plaintiff is willing to proceed. Cases where the plaintiff is unwilling to proceed or cannot be contacted within this deadline are subject to dismissal with prejudice, *infra*.

2. **Updated Plaintiff Fact Sheet & Updated Authorizations.** Selected plaintiffs must physically sign updated authorizations within 30 days of selection. Selected plaintiffs also must review and update, if necessary, the Plaintiff Fact Sheet pursuant to Pretrial Order Nos. 55 (Rec. Doc. 688), 38 (Rec. Doc. 326), and Amended 22 (Rec. Doc. 325) within 30 days of selection. Selected plaintiffs must physically sign verification of any update to the

3

Plaintiff Fact Sheet. Cases where the plaintiff fails to comply with this requirement are subject to dismissal with prejudice, *infra*.

3. **Expert Medical Declaration Confirming Permanent Alopecia on Physical Examination and, if Medically Necessary, Scalp Biopsy.** Within 90 days of entry of this Order (or on the date that a Plaintiff Fact Sheet is due where one is not yet due), selected Plaintiffs must upload to MDL Centrality a signed expert declaration, authored by a qualified physician[2] in good standing with his or her state licensing authority, attesting within a reasonable degree of medical probability that Plaintiff has suffered permanent hair loss as alleged in her Complaint(s) and PFS (i.e., "permanent chemotherapy-induced alopecia") and that such permanent hair loss was caused by Taxotere. Such physician cannot have previously served as a testifying expert or consulting expert for any Plaintiffs' counsel bringing Taxotere claims. Plaintiff must provide the physician with high-quality copies, date-labeled, of all photographs she has uploaded to MDL Centrality, along with her dates of chemotherapy and/or anti-hormonal treatment, as well as the necessary medical records.

The expert declaration must include: (i) certification that the physician physically examined the plaintiff in person (not via telemedicine or other remote application), as well as a description of their physical findings; (ii) the physician's differential diagnosis (e.g., an explanation of the basis for the diagnosis, other causes considered, a description of specific medical findings); (iii) identification of all documents, including lab results,

---

[2] The expert must meet the requirements of Rule 702. This includes possessing the appropriate specialized qualifications required to diagnose the injury and its cause (such as certain dermatologists, dermatopathologists, or potentially, certain oncologists). A general practitioner, for example, will not suffice.

4

pathology reports, photographs, medical records, or physical examination reviewed; and (iv) the proposed treatment plan.

Where the physician's normal practices would require the same in order to rule out other forms of alopecia, said declaration must also include the gross and microscopic pathological findings, on scalp biopsy, of the plaintiff.

The expert medical declaration, along with any associated invoicing or billing documents in the Plaintiff's possession, must be uploaded to MDL Centrality using the "Proof of Injury – Post-Order Expert Medical Declaration" document-type field within the deadlines set forth in this Order. No physician may submit more than five such declarations, unless such physician already had an established doctor-patient relationship with Plaintiff on whose behalf the declaration is being submitted. The medical declaration shall be physically signed by the physician themselves under penalty of perjury. Cases where the plaintiff fails to comply with this requirement are subject to dismissal with prejudice, *infra*.

4. **Written Discovery.** The parties cannot serve written discovery in Wave 3 cases at this time and without further leave.

5. **Depositions.** After a compliant Medical Declaration has been served, up to four depositions in each case shall be allowed: (i) plaintiff, (ii) plaintiff's prescribing physician, (iii) plaintiff's treating physician, if any, and (iv) the physician signing the Expert Medical Declaration set out in ¶ 3.

6. **Physician Depositions.** Pretrial Order No. 70B (Rec. Doc. 5256) allows for the ex parte scheduling of depositions by non-attorney staff. It remains in effect. All parties' prior objections to said Order and stated in defendants' Motion to Amend (Rec. Doc. 9109) are expressly preserved.

7. **Rule 702 Motion Practice.** Defendants may challenge any Plaintiff submissions pursuant to ¶ 3 of this Order in a Rule 702 Motion to be decided by this Court, prior to any remand, and pursuant to further orders to be entered by this Court.

### Dismissals

Any plaintiff selected for Wave 3 may be removed within the first 90 days of selection by dismissal with prejudice. The provisions of Pretrial Order No. 54 (Rec. Doc. 671) otherwise remain in effect. The Court will award costs against dismissals more than 90 days after selection. All dismissals of Wave 3 cases shall be with prejudice.

### Enforcement

Any Plaintiff who fails to comply with the terms of this Order—including any Plaintiff who does not comply with ¶ 3—shall be listed for Non-Compliance and Show Cause Order Process following the ordinary procedures of Pretrial Order No. 22A (Rec. Doc. 3493) and her case shall be dismissed with prejudice. Plaintiffs' objections to entry of this order are noted and preserved for purposes of appeal of any dismissal pursuant to it.

### Rule 26(g) Certification

Any statements, declarations or certifications made by a Plaintiff or her attorney regarding information and documents produced in discovery in this litigation, including the medical declaration or certification and the disclosure required under ¶ 3 of this Order, shall be subject to Federal Rule of Civil Procedure 26(g)(3).

### Penalties for Fraud and Deception

Any Plaintiff (and/or her attorneys or physicians) who submits false or intentionally misleading information, or otherwise attempts to satisfy the documentation requirements of this Order through any form of deception, dishonesty, or fraud shall be subject to appropriate sanctions

(including monetary sanctions and costs) and dismissal with prejudice pursuant to Federal Rule of Civil Procedure 37. This provision explicitly includes physical signature of authorizations or verifications by anyone other than the party plaintiff to her lawsuit.

## Mandatory Mediation Prior to Remand

Following the discovery described in ¶¶ 1-7 above, any Wave 3 case must be mediated before it can be eligible for remand.

New Orleans, Louisiana, this _____ day of December, 2023.

_____
HON. JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE