## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE: TAXOTERE (DOCETAXEL)** | ) | **MDL No. 16-2740** |
| **PRODUCTS LIABILITY** | ) | |
| **LITIGATION** | ) | **SECTION: "H" (5)** |
| | ) | |
| **This document relates to:** | ) | |
| **All cases** | ) | |
| | ) | |
| | ) | |

## ORDER AND REASONS

Before the Court is the Motion for Reconsideration of the Court's Order Granting in Part Sanofi's Motion for Entry of an Order Requiring Proof of Diagnosis filed by Plaintiffs (Rec. Doc. 16861). For the reasons set forth herein, the Motion is **GRANTED IN PART.** The Court will amend the Order (*See* Case Management Order No. 40A) to extend the deadlines for Plaintiffs to submit an "Expert Medical Declaration" and "Certificate of Willingness to Proceed" as defined in the Order.[1] The Court denies Plaintiffs' request to vacate or otherwise modify the Order.

## BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel,[2] that Plaintiffs were administered for the treatment of cancer. Among these companies are Defendants Hospira

---

[1] *See* CMO 40A Section II(a), (c).

[2] Docetaxel is the generic version of Taxotere, although the Court uses the term "generic" loosely.

Worldwide, LLC f/k/a Hospira Worldwide, Inc., Hospira, Inc. (collectively, "Hospira"), Pfizer, Inc. ("Pfizer"), sanofi-aventis U.S. LLC and Sanofi US Services LLC (collectively, "Sanofi"), Sandoz Inc. ("Sandoz"), and Accord Healthcare, Inc. ("Accord"). Plaintiffs allege that the drug caused permanent chemotherapy-induced alopecia ("PCIA"). Plaintiffs bring claims of failure to warn, negligent misrepresentation, fraudulent misrepresentation, and more.

On February 21, 2024, this Court granted Sanofi's Motion for Entry of an Order Requiring Proof of Diagnosis and issued a *Lone Pine* Order.[3] The Order requires, among other things, that Plaintiffs obtain proof of the alleged injury, PCIA, via expert declaration, (the "Expert Medical Declaration") as well as submit a certification of Plaintiffs' willingness to proceed (the "Certificate of Willingness to Proceed").[4] A more comprehensive summary of the events leading up to Sanofi's Motion may be found in the Court's Order; however, the key points are as follows.

The parties in this case agreed to, and participated in, extensive discovery procedures. For example, pursuant to Pretrial Order No. 22, Plaintiffs were required to serve Defendants with a complete and verified Plaintiff Fact Sheet ("PFS") providing information on Plaintiff's alleged injuries, the dates upon which Plaintiff was diagnosed with cancer, and the chemotherapy regimen Plaintiff received.[5] Pursuant to Pretrial Order No. 68, Plaintiffs were required to produce dated photographs that depicted their hair within five years of starting chemotherapy, during chemotherapy (if available), within five years of completing chemotherapy, and recent photographs.[6]

---

[3] Rec. Doc. 16778.
[4] *Id.*
[5] Rec. Docs. 236-1, 270.
[6] Rec. Doc. 1085.

Despite extensive discovery, Plaintiffs do not dispute that approximately 80 percent of MDL Plaintiffs currently do not have medical evidence of their alleged hair loss injury and/or have never spoken to a doctor about their alleged injury.[7] Citing Plaintiffs' issues with proof, Sanofi initially filed a Motion for Entry of an Order Requiring Proof of Diagnosis in July 2020.[8] The proposed order would have required each Plaintiff to submit either evidence of a medical diagnosis of PCIA or state that Plaintiff did not intend to pursue such a diagnosis.[9] Following a discussion with the parties at the August 2020 lead and liaison conference, the Court deferred ruling on Sanofi's Motion subject to being re-urged after the third bellwether trial.[10]

After the Court dismissed the third bellwether Plaintiffs, the Court, with the assistance of the parties, entered Case Management Order No. 33 ("CMO 33") governing the selection and discovery for 200 cases to comprise the "Wave 1" remand.[11] Four cases resolved after this Court ordered a bellwether mediation, one case resolved following mediation, and several cases were either dismissed, deferred to a later wave, or found ineligible for Wave 1.[12] Ultimately, only 82 cases were remanded back to their transferor courts.[13]

---

[7] Rec. Doc. 16873 at 2. PCIA requires a differential diagnosis. Rec. Doc. 10808-1 at 6.

[8] Rec. Doc. 10808.

[9] *Id.* at 5.

[10] Rec. Doc. 10908.

[11] Rec. Doc. 13946. CMO 33 required that Plaintiffs update Plaintiff Fact Sheets and possess photographs complying with Amended Pretrial Order No. 22 and Pretrial Order No. 68, among other things. *Id.* at 4. The Order also provided that the parties meet and confer regarding additional issues with photographs and product identification and provided for additional, limited discovery, including depositions of plaintiff's prescribing and treating physicians. *Id.* at 3–5. Although Sanofi requested that Plaintiffs be required to obtain proof of diagnosis as part of their Remand Proposal, the Court declined to adopt such a provision. Rec. Doc. 13912.

[12] Rec. Doc. 16607-1 at 9.

[13] Rec. Doc. 15836. At oral argument held on May 7, 2024, Sanofi stated that 20 of these cases remain pending.

On June 23, 2023, this Court identified a list of 1,000 cases selected to comprise the "Wave 2" remand.[14] After conferral, the parties identified 427 cases that were not amenable to transfer due to questions of product identification, subject matter jurisdiction, applicability of prior fencepost rulings by the Court, and "other concerns related to their candidacy for prosecution."[15] Thus, 573 cases were ultimately amenable to transfer.[16]

Finally, the Court was recently apprised that Sanofi and certain plaintiffs had reached an agreement in principle, which was anticipated to dispose of 30% of the pending cases. In light of these settlements and the advanced stage of this litigation, Sanofi filed a Motion for Entry of an Order Requiring Proof of Diagnosis, which the Court granted in its Order & Reasons dated February 21, 2024. Plaintiffs now request that the Court vacate that Order. Sanofi opposes.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 54(b) states that: "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'"[17] "'[T]he power to reconsider or modify interlocutory rulings is committed to the

---

[14] Rec. Doc. 16778 at 3.
[15] *Id.*
[16] Rec. Doc. 16511. At oral argument, Sanofi stated that 200 Wave 2 cases remain pending.
[17] Austin v. Kroger Tex., L.P., No. 16-10502, 2017 WL 1379453, at *9 (5th Cir. 2017) (quoting Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 185 (5th Cir. 1990)).

discretion of the district court, and that discretion is not cabined by the heightened standards for reconsideration governing final orders.'"[18]

## LAW & ANALYSIS

### 1. Plaintiffs' Request to Vacate the Order

Plaintiffs argue that the *Lone Pine* Order is improper because it (1) is an "extraordinary procedure" that is unwarranted under the circumstances; (2) is unfair (in that it inequitably treats similarly situated plaintiffs); and (3) unnecessarily bifurcates expert discovery, which, in turn, will multiply costs and cause additional cross examination fodder at trial.

This Court already addressed the lion's share of Plaintiffs' arguments in its initial Order and found them unpersuasive. In issuing its Order, this Court, in striving to "strike a balance between efficiency and equity," considered the advanced stage of this litigation, ongoing settlement negotiations, the burden on Plaintiffs, and the "numerous roadblocks in both the bellwether selection and remand and/or transfer processes."[19] Critically, as stated above, no party disputes that 80 percent of Plaintiffs have not obtained a diagnosis of PCIA (or that many Plaintiffs may suffer from a different type of hair loss, rather than PCIA). Additionally, many plaintiffs, when called upon to prove causation, have dismissed their claims in lieu of proceeding.[20]

In its initial Motion, Sanofi illustrated Plaintiffs' issues with proof by citing to specific examples, including former bellwether Plaintiff Lisa Tuyes and former trial pool Plaintiff Shelia Crayton. Plaintiff Tuyes alleged that she suffered from PCIA but never received a diagnosis, and the photographs

---

[18] *Id.* (quoting Saint Annes Dev. Co. v. Trabich, 443 Fed. App'x 829, 831–32 (4th Cir. 2011)) (cleaned up).
[19] Rec. Doc. 16778.
[20] Rec. Doc. 16873 at 2.

Plaintiff Tuyes submitted in lieu of a diagnosis showed "no discernible hair loss."[21] When Plaintiff Tuyes received a scalp biopsy during "phase-two discovery," Plaintiffs' expert dermapathologist diagnosed Plaintiff Tuyes with androgenic alopecia, rather than PCIA.[22] Likewise, Plaintiff Crayton never received a diagnosis of PCIA and submitted photographs showing "no discernible hair loss."[23] After discovery, Plaintiff Crayton chose not to secure a diagnosis and ultimately withdrew from the trial pool.[24]

Given the above, Plaintiffs' argument that the *Lone Pine* Order is unnecessary because this "MDL has already been through extensive procedural safeguards" falls flat. Rather, Plaintiffs illustrate precisely why the Court found at this stage—rather than earlier in this litigation, when Sanofi first moved for relief—that a *Lone Pine* Order was necessary. Discovery procedures, case-specific bellwether trial workup, and the Wave 1 and 2 remand processes have revealed evidence that many plaintiffs may be unable sustain their burden of proof.

Nevertheless, rather than requiring proof of specific causation by way of a Rule 26 expert report, as Sanofi initially requested, the Court's Order requires only a diagnosis of PCIA in the form of an expert declaration.[25] The

---

[21] Rec. Doc. 16607-1 at 7.
[22] *Id.* at 8.
[23] *Id.*
[24] *Id.*
[25] Plaintiffs take issue with the provision of the Order stating that the expert must state that he or she "is prepared to testify that, to a reasonable degree of medical probability, Plaintiff has suffered PCIA." Specifically, Plaintiffs argue that the "Order requires proof of a different standard than at trial . . . [u]nder most product liability law, Plaintiffs need only present proof by a preponderance of the evidence of a substantial causing factor of their injury." Rec. Doc. 16861-1 at 6. First, although Sanofi, in its initial Motion, requested that the expert attest "within a reasonable degree of medical probability" that Plaintiff has suffered PCIA, Plaintiffs failed to raise the issue in their initial Opposition. Rec. Docs. 16607-11 at 4 and 16687. Second, generally, the "reasonable degree of medical probability" (or, in some jurisdictions, "reasonable degree of medical certainty") standard applies in the context of medical expert testimony. *See* 2 Steven E. Pegalis, AM. L. MED. MALP. § 8:7 (July 2023); *see also* Addington v. Texas, 99 S. Ct. 1804, 1811 (1979) (noting that, "[w]ithin the medical discipline, the traditional standard for 'factfinding' is a 'reasonable medical certainty'"). In

Order requires a scalp biopsy only where "the physician's normal practices would require the same in order to rule out other forms of alopecia."[26]

Plaintiffs argue that even this limited declaration is inappropriate because, unlike other cases in which a *Lone Pine* Order was issued, "there is no definitive/diagnostic test" to prove a person has PCIA.[27] As such, Plaintiffs are disproportionally burdened by the Order because it "improperly front-loads Plaintiffs' expert obligations to provide" a contested expert opinion by way of an in-person visit.[28] Plaintiffs do not argue, however, that such an opinion would not be required to prove causation if their cases are ultimately remanded.[29] Notably, this Court is not alone in mandating that plaintiffs produce such an expert declaration. Indeed, in issuing *Lone Pine* orders, district courts frequently require proof of causation in the form of expert affidavits and/or reports.[30]

---

this instance, however, the exact difference, if any, between "medical certainty" and "medical probability" appears to be immaterial, as "medical probability" is commonly understood as equating to a preponderance of the evidence standard. *See, e.g.*, Jeff L. Lewin, *The Genesis and Evolution of Legal Uncertainty About "Reasonable Medical Certainty"*, 57 Md. L. Rev. 380, 404 (1998) (explaining that the "medical probability standard" equates to a "preponderance of the evidence standard" and that the majority of courts equate "reasonable degree of medical certainty" and "reasonable degree of medical probability"). Notably, other MDL courts, presiding over products liability cases, have required plaintiffs to provide causation opinions from physicians or "other medical experts" that support their claims "to a reasonable degree of medical certainty." *In re* Zostavax Prods. Liab. Litig., No. 18-MD-2848, 2023 WL 8258533, at *2 (E.D. Penn. Nov. 29, 2023); *In re* Fosamax Prods. Liab. Litig., 06 MD 1789(JFK), 2012 WL 5877418, at *5 (S.D. N.Y. Nov. 20, 2012); *In re* Fresenius GranuFlo/Nautralyte Dialysate Prods. Liab. Litig., No. 13-02428, 2017 WL 11831712, at *3 (D. Mass Jan. 26, 2017); *In re* Avandia Mktg., Sales Pracs. and Prods. Liab. Litig., 687 Fed. App'x 210, 215 n.3 (3d Cir. 2017). Plaintiffs fail to argue that they would not otherwise be required to produce proof of their injury via medical expert testimony. Nevertheless, to the extent that any plaintiff contends that the relevant state's law allows Plaintiff to provide alternative proof of injury, such arguments may be presented at a show cause hearing contemplated by the Order.

[26] Rec. Doc. 16778 at 11. The Order further states that a plaintiff who fails to comply shall have her case dismissed with prejudice "absent a compelling reason." *Id.* at 12.

[27] Rec. Doc. 16886 at 2.

[28] *Id.*

[29] In fact, Plaintiffs' experts have opined that a diagnosis of PCIA cannot be made through photos. Rec. Doc. 16696 at 4.

[30] *See, e.g.*, In re *Zostavax*, 2023 WL 8258533, at *2.

At bottom, if they were ultimately remanded back to their respective transferor courts, Plaintiffs would be required to provide some proof of their alleged injury.[31] Thus, Plaintiffs' argument that the Order is intolerable or unfair because some plaintiffs, but not others, have already settled and/or been remanded is unpersuasive.[32]

As this Court has recognized, "[t]he basic purpose of a *Lone Pine* order is to identify and cull potentially meritless claims and streamline litigation in complex cases."[33] The Court finds, as it did before, that the Order comports with this basic purpose, is in line with the caselaw governing *Lone Pine* orders, and is appropriate under the circumstances.

### 2. Extension of Deadlines

In their briefings, Plaintiffs note that locating an expert may be difficult because of the "lack of widespread expertise" in diagnosing PCIA and suggest that the Order does not allow Plaintiffs sufficient time within which to comply.[34] At oral argument held on May 7, 2024, Plaintiffs reiterated their concerns and made an alternative request to stay the Order for some amount of time. Pursuant to the Federal Rules of Civil Procedure, the Court may modify the Order "for good cause."[35] As such, the Court will amend the Order to extend the deadlines to submit an Expert Medical Declaration and Certificate of Willingness to Proceed, as defined in Section II(a), (c) of the Order.

---

[31] Rec. Doc. 16778 at 7.

[32] Plaintiffs also suggest that the Order is inappropriate absent a global settlement. However, as other district courts have recognized, a global settlement is not necessary for the issuance of a *Lone Pine* order. In re *Fosamax*, 2012 WL 5877418, at *3. Further, district courts have considered settlements that are less than global as relevant (though not dispositive) to the inquiry of whether a *Lone Pine* order is warranted. *See* Rec. Doc. 16696 at 6–7 (collecting cases).

[33] *In re* Vioxx Prods. Liab. Litig., 557 F. Supp. 2d 741, 744 (E.D. La. 2008) (citing Baker v. Chevron USA, Inc., 2007 WL 315346, *1 (S.D. Ohio Jan. 30, 2007)).

[34] Rec. Docs. 16861-1 at 10 and 16886 at 1 n. 1.

[35] *See* FED. R. CIV. P. 16(b), 6(b).

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Reconsideration is **GRANTED IN PART.**

**IT IS ORDERED** that the deadlines for (1) filing a certificate of willingness to proceed and (2) uploading expert affidavits are **EXTENDED** as reflected in Case Management Order No. 40A, attached hereto. All other provisions of Case Management Order No. 40 remain unchanged.

New Orleans, Louisiana, this 21st day of May, 2024.

<br>

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**